**Westlaw Download Summary Report for REES,DAN 5835591**

Date/Time of Request:            Friday, December 08, 2006 09:16:00 Central
Client Identifier:               DRU
Database:                        US-PL
Citation Text:                   PL 109-148, 2005 HR 2863
Lines:                           7915
Documents:                       1
Images:                          0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.



### UNITED STATES PUBLIC LAWS
### 109th Congress - First Session
### Convening January 7, 2005

Copr. ©  2006 Thomson/West. No Claim to Orig. U.S. Govt.Works

Additions and Deletions are not identified in this database.
Vetoed provisions within tabular material are not displayed

PL 109-148 (HR 2863)
December 30, 2005
DEPARTMENT OF DEFENSE, EMERGENCY SUPPLEMENTAL APPROPRIATIONS TO ADDRESS
HURRICANES IN THE GULF OF MEXICO, AND PANDEMIC INFLUENZA ACT, 2006

  An Act Making appropriations for the Department of Defense for the fiscal year ending September 30, 2006, and
for other purposes.

Be it enacted by the Senate and House of Representatives of the United States
of America in Congress assembled,

DIVISION A
DEPARTMENT OF DEFENSE APPROPRIATIONS ACT, 2006

That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the
fiscal year ending September 30, 2006, for military functions administered by the Department of Defense and for
other purposes, namely:

TITLE I
MILITARY PERSONNEL
Military Personnel, Army
 For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station
travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between
permanent duty stations, for members of the Army on active duty, (except members of reserve components provided
for elsewhere), cadets, and aviation cadets;  for members of the Reserve Officers' Training Corps;  and for payments
pursuant to section 156 of Public Law 97-377, as amended (42 U.S.C. 402 note), and to the Department of Defense
Military Retirement Fund, $28,191,287,000.

Military Personnel, Navy
 For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station
travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between
permanent duty stations, for members of the Navy on active duty (except members of the Reserve provided for
elsewhere), midshipmen, and aviation cadets;  for members of the Reserve Officers' Training Corps;  and for
payments pursuant to section 156 of Public Law 97-377, as amended (42 U.S.C. 402 note), and to the Department of
Defense Military Retirement Fund, $22,788,101,000.

**\*2681**

Military Personnel, Marine Corps
 For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station
travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between

THIS

PL 109-148, 2005 HR 2863                                                                              Page 2
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

permanent duty stations, for members of the Marine Corps on active duty (except members of the Reserve provided for elsewhere);  and for payments pursuant to section 156 of Public Law 97-377, as amended (42 U.S.C. 402 note), and to the Department of Defense Military Retirement Fund, $8,968,884,000.

Military Personnel, Air Force

 For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between permanent duty stations, for members of the Air Force on active duty (except members of reserve components provided for elsewhere), cadets, and aviation cadets;  for members of the Reserve Officers' Training Corps;  and for payments pursuant to section 156 of Public Law 97-377, as amended (42 U.S.C. 402 note), and to the Department of Defense Military Retirement Fund, $23,199,850,000.

Reserve Personnel, Army

 For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Army Reserve on active duty under sections 10211, 10302, and 3038 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code;  and for payments to the Department of Defense Military Retirement Fund, $3,172,669,000.

Reserve Personnel, Navy

 For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Navy Reserve on active duty under section 10211 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty, and expenses authorized by section 16131 of title 10, United States Code;  and for payments to the Department of Defense Military Retirement Fund, $1,686,099,000.

Reserve Personnel, Marine Corps

 For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Marine Corps Reserve on active duty under section 10211 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified **\*2682** in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty, and for members of the Marine Corps platoon leaders class, and expenses authorized by section 16131 of title 10, United States Code;  and for payments to the Department of Defense Military Retirement Fund, $513,001,000.

Reserve Personnel, Air Force

 For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Air Force Reserve on active duty under sections 10211, 10305, and 8038 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code;  and for payments to the Department of Defense Military Retirement Fund, $1,296,646,000.

National Guard Personnel, Army

 For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Army National Guard while on duty under section 10211, 10302, or 12402 of title 10 or section 708 of title 32, United States Code, or while serving on duty under section 12301(d) of title 10 or section 502(f) of title 32, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code;  and for payments to the Department of Defense Military Retirement Fund, $4,912,794,000.

National Guard Personnel, Air Force

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Air National Guard on duty under section 10211, 10305, or 12402 of title 10 or section 708 of title 32, United States Code, or while serving on duty under section 12301(d) of title 10 or section 502(f) of title 32, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code;   and for payments to the Department of Defense Military Retirement Fund, $2,267,732,000.

TITLE II
OPERATION AND MAINTENANCE
Operation and Maintenance, Army

 For expenses, not otherwise provided for, necessary for the operation and maintenance of the Army, as authorized by law;  and not to exceed $11,478,000 can be used for emergencies and **\*2683** extraordinary expenses, to be expended on the approval or authority of the Secretary of the Army, and payments may be made on his certificate of necessity for confidential military purposes, $24,105,470,000:  *Provided*, That of funds made available under this heading, $2,000,000 shall be available for Fort Baker, in accordance with the terms and conditions as provided under the heading "Operation and Maintenance, Army", in Public Law 107-117:   *Provided further*, That notwithstanding any other provision of law, the Secretary of the Army may provide a grant of up to $10,000,000 from funds made available in this or any other Department of Defense Appropriations Act to the Army Distaff Foundation.

Operation and Maintenance, Navy

 For expenses, not otherwise provided for, necessary for the operation and maintenance of the Navy and the Marine Corps, as authorized by law;  and not to exceed $6,003,000 can be used for emergencies and extraordinary expenses, to be expended on the approval or authority of the Secretary of the Navy, and payments may be made on his certificate of necessity for confidential military purposes, $29,995,383,000.

Operation and Maintenance, Marine Corps

 For expenses, not otherwise provided for, necessary for the operation and maintenance of the Marine Corps, as authorized by law, $3,695,256,000.

Operation and Maintenance, Air Force

 For expenses, not otherwise provided for, necessary for the operation and maintenance of the Air Force, as authorized by law;  and not to exceed $7,699,000 can be used for emergencies and extraordinary expenses, to be expended on the approval or authority of the Secretary of the Air Force, and payments may be made on his certificate of necessity for confidential military purposes, $30,313,136,000.

Operation and Maintenance, Defense-Wide
(INCLUDING TRANSFER OF FUNDS)

 For expenses, not otherwise provided for, necessary for the operation and maintenance of activities and agencies of the Department of Defense (other than the military departments), as authorized by law, $18,500,716,000:  *Provided*, That not more than $25,000,000 may be used for the Combatant Commander Initiative Fund authorized under section 166a of title 10, United States Code: *Provided further*, That not to exceed $36,000,000 can be used for emergencies and extraordinary expenses, to be expended on the approval or authority of the Secretary of Defense, and payments may be made on his certificate of necessity for confidential military purposes: *Provided further*, That notwithstanding any other provision of law, of the funds provided in this Act for Civil Military programs under this heading, $500,000 shall be available for a grant for Outdoor Odyssey, Roaring Run, Pennsylvania, to support the Youth Development and Leadership program and Department of Defense STARBASE program: *Provided further*, That of the funds **\*2684** made available under this heading, $4,250,000 is available for contractor support to coordinate a wind test demonstration project on an Air Force installation using wind turbines manufactured in the United States that are new to the United States market and to execute the renewable energy purchasing plan: *Provided further*, That of the funds provided under this heading, not less than $27,009,000 shall be made available for the Procurement Technical Assistance Cooperative Agreement Program, of which not less than $3,600,000 shall be available for centers defined in 10 U.S.C. 2411(1)(D):  *Provided further*, That none of the funds appropriated or otherwise made available by this Act may be used to plan or implement the consolidation of a budget or

Copr. ©  West 2006 No Claim to Orig. Govt. Works

appropriations liaison office of the Office of the Secretary of Defense, the office of the Secretary of a military department, or the service headquarters of one of the Armed Forces into a legislative affairs or legislative liaison office:  *Provided further*, That $4,000,000, to remain available until expended, is available only for expenses relating to certain classified activities, and may be transferred as necessary by the Secretary to operation and maintenance appropriations or research, development, test and evaluation appropriations, to be merged with and to be available for the same time period as the appropriations to which transferred: *Provided further*, That any ceiling on the investment item unit cost of items that may be purchased with operation and maintenance funds shall not apply to the funds described in the preceding proviso:  *Provided further*, That the transfer authority provided under this heading is in addition to any other transfer authority provided elsewhere in this Act.

### Operation and Maintenance, Army Reserve

 For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Army Reserve;  repair of facilities and equipment;  hire of passenger motor vehicles;  travel and transportation;  care of the dead;  recruiting;  procurement of services, supplies, and equipment; and communications, $1,973,382,000.

### Operation and Maintenance, Navy Reserve

 For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Navy Reserve;  repair of facilities and equipment;  hire of passenger motor vehicles;  travel and transportation;  care of the dead;  recruiting;  procurement of services, supplies, and equipment; and communications, $1,244,795,000.

### Operation and Maintenance, Marine Corps Reserve

 For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Marine Corps Reserve;  repair of facilities and equipment;  hire of passenger motor vehicles;  travel and transportation;  care of the dead;  recruiting;  procurement of services, supplies, and equipment;  and communications, $202,734,000.

**\*2685**

### Operation and Maintenance, Air Force Reserve

 For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Air Force Reserve;  repair of facilities and equipment;  hire of passenger motor vehicles;  travel and transportation;  care of the dead;  recruiting;  procurement of services, supplies, and equipment;  and communications, $2,499,286,000.

### Operation and Maintenance, Army National Guard

 For expenses of training, organizing, and administering the Army National Guard, including medical and hospital treatment and related expenses in non-Federal hospitals;  maintenance, operation, and repairs to structures and facilities;  hire of passenger motor vehicles;  personnel services in the National Guard Bureau;  travel expenses (other than mileage), as authorized by law for Army personnel on active duty, for Army National Guard division, regimental, and battalion commanders while inspecting units in compliance with National Guard Bureau regulations when specifically authorized by the Chief, National Guard Bureau;  supplying and equipping the Army National Guard as authorized by law;  and expenses of repair, modification, maintenance, and issue of supplies and equipment (including aircraft), $4,491,109,000: *Provided*, That $8,500,000 shall be available for the operations and development of training and technology for the Joint Interagency Training Center-East and the affiliated Center for National Response at the Memorial Tunnel and for providing homeland defense/security and traditional warfighting training to the Department of Defense, other federal agency, and state and local first responder personnel at the Joint Interagency Training Center-East.

### Operation and Maintenance, Air National Guard

 For expenses of training, organizing, and administering the Air National Guard, including medical and hospital treatment and related expenses in non-Federal hospitals;  maintenance, operation, and repairs to structures and facilities;  transportation of things, of hire of passenger motor vehicles;  supplying and equipping the Air National Guard, as authorized by law;  expenses for repair, modification, maintenance, and issue of supplies and equipment, including those furnished from stocks under the control of agencies of the Department of Defense;  travel expenses

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(other than mileage) on the same basis as authorized by law for Air National Guard personnel on active Federal duty, for Air National Guard commanders while inspecting units in compliance with National Guard Bureau regulations when specifically authorized by the Chief, National Guard Bureau, $4,701,306,000.

### United States Court of Appeals for the Armed Forces

 For salaries and expenses necessary for the United States Court of Appeals for the Armed Forces, $11,236,000, of which not to exceed $5,000 may be used for official representation purposes.

**\*2686**

### Environmental Restoration, Army
### (INCLUDING TRANSFER OF FUNDS)

 For the Department of the Army, $407,865,000, to remain available until transferred:  *Provided*, That the Secretary of the Army shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of the Army, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Army, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred:  *Provided further*, That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation.

### Environmental Restoration, Navy
### (INCLUDING TRANSFER OF FUNDS)

 For the Department of the Navy, $305,275,000, to remain available until transferred:  *Provided*, That the Secretary of the Navy shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of the Navy, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Navy, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred:  *Provided further*, That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation.

### Environmental Restoration, Air Force
### (INCLUDING TRANSFER OF FUNDS)

 For the Department of the Air Force, $406,461,000, to remain available until transferred:  *Provided*, That the Secretary of the Air Force shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of the Air Force, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Air Force, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred:  *Provided further*, That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation.

**\*2687**

### Environmental Restoration, Defense-Wide
### (INCLUDING TRANSFER OF FUNDS)

 For the Department of Defense, $28,167,000, to remain available until transferred:  *Provided*, That the Secretary of Defense shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of Defense, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of Defense, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred:  *Provided further*, That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation.

### Environmental Restoration, Formerly Used Defense Sites

Copr. ©  West 2006 No Claim to Orig. Govt. Works

### (INCLUDING TRANSFER OF FUNDS)

 For the Department of the Army, $256,921,000, to remain available until transferred:  *Provided*, That the Secretary of the Army shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris at sites formerly used by the Department of Defense, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Army, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred:  *Provided further*, That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation.

### Overseas Humanitarian, Disaster, and Civic Aid

 For expenses relating to the Overseas Humanitarian, Disaster, and Civic Aid programs of the Department of Defense (consisting of the programs provided under sections 401, 402, 404, 2557, and 2561 of title 10, United States Code), $61,546,000, to remain available until September 30, 2007.

### Former Soviet Union Threat Reduction Account

 For assistance to the republics of the former Soviet Union, including assistance provided by contract or by grants, for facilitating the elimination and the safe and secure transportation and storage of nuclear, chemical and other weapons;  for establishing programs to prevent the proliferation of weapons, weapons components, and weapon-related technology and expertise;  for programs relating to the training and support of defense and military personnel for demilitarization and protection of weapons, weapons components and weapons technology and expertise, and for defense and military contacts, $415,549,000, to remain available until September 30, 2008:  *Provided*, That of the amounts provided under this heading, $15,000,000 shall be available only to support the dismantling and disposal of nuclear submarines, submarine reactor **\*2688** components, and security enhancements for transport and storage of nuclear warheads in the Russian Far East.

### TITLE III
### PROCUREMENT
### Aircraft Procurement, Army

 For construction, procurement, production, modification, and modernization of aircraft, equipment, including ordnance, ground handling equipment, spare parts, and accessories therefor;  specialized equipment and training devices; expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;  and other expenses necessary for the foregoing purposes, $2,653,280,000, to remain available for obligation until September 30, 2008:  *Provided*, That $75,000,000 of the funds provided in this paragraph are available only for the purpose of acquiring four (4) HH-60L medical evacuation variant Blackhawk helicopters for the Army Reserve:  *Provided further*, That three (3) UH-60 Blackhawk helicopters in addition to those referred to in the preceding proviso shall be available only for the Army Reserve.

### Missile Procurement, Army

 For construction, procurement, production, modification, and modernization of missiles, equipment, including ordnance, ground handling equipment, spare parts, and accessories therefor;  specialized equipment and training devices; expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;  and other expenses necessary for the foregoing purposes, $1,208,919,000, to remain available for obligation until September 30, 2008.

### Procurement of Weapons and Tracked Combat Vehicles, Army

 For construction, procurement, production, and modification of weapons and tracked combat vehicles, equipment, including ordnance, spare parts, and accessories therefor;  specialized equipment and training devices;  expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  and procurement

Copr. ©  West 2006 No Claim to Orig. Govt. Works

and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;  and other expenses necessary for the foregoing purposes, $1,391,615,000, to remain available for obligation until September 30, 2008.

**\*2689**

### Procurement of Ammunition, Army

 For construction, procurement, production, and modification of ammunition, and accessories therefor;  specialized equipment and training devices;  expansion of public and private plants, including ammunition facilities, authorized by section 2854 of title 10, United States Code, and the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  and procurement and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;   and other expenses necessary for the foregoing purposes, $1,733,020,000, to remain available for obligation until September 30, 2008.

### Other Procurement, Army

 For construction, procurement, production, and modification of vehicles, including tactical, support, and non-tracked combat vehicles;  the purchase of passenger motor vehicles for replacement only;  and the purchase of 14 vehicles required for physical security of personnel, notwithstanding price limitations applicable to passenger vehicles but not to exceed $255,000 per vehicle; communications and electronic equipment;  other support equipment;  spare parts, ordnance, and accessories therefor;  specialized equipment and training devices;  expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;   and other expenses necessary for the foregoing purposes, $4,594,031,000, to remain available for obligation until September 30, 2008.

### Aircraft Procurement, Navy

 For construction, procurement, production, modification, and modernization of aircraft, equipment, including ordnance, spare parts, and accessories therefor;  specialized equipment;  expansion of public and private plants, including the land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;   and procurement and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway, $9,774,749,000, to remain available for obligation until September 30, 2008.

### Weapons Procurement, Navy

 For construction, procurement, production, modification, and modernization of missiles, torpedoes, other weapons, and related support equipment including spare parts, and accessories therefor;  expansion of public and private plants, including the land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  and procurement and installation of equipment, appliances, and **\*2690** machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway, $2,659,978,000, to remain available for obligation until September 30, 2008.

### Procurement of Ammunition, Navy and Marine Corps

 For construction, procurement, production, and modification of ammunition, and accessories therefor;  specialized equipment and training devices;  expansion of public and private plants, including ammunition facilities, authorized by section 2854 of title 10, United States Code, and the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;   and procurement and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;   and other expenses necessary for the foregoing purposes, $851,841,000, to remain available for obligation until September 30, 2008.

### Shipbuilding and Conversion, Navy

 For expenses necessary for the construction, acquisition, or conversion of vessels as authorized by law, including armor and armament thereof, plant equipment, appliances, and machine tools and installation thereof in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;  procurement of critical,

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                          Page 8
 PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

long leadtime components and designs for vessels to be constructed or converted in the future;  and expansion of public and private plants, including land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title, as follows:

Carrier Replacement Program (AP), $626,913,000;

NSSN, $1,637,698,000;

NSSN (AP), $763,786,000;

SSGN, $286,516,000;

CVN Refuelings, $1,318,563,000;

CVN Refuelings (AP), $20,000,000;

SSBN Submarine Refuelings, $230,193,000;

SSBN Submarine Refuelings (AP), $62,248,000;

DD(X) (AP), $715,992,000;

DDG-51 Destroyer, $150,000,000;

DDG-51 Destroyer Modernization, $50,000,000;

LCS, $440,000,000;  LHD-8, $197,769,000;

LPD-17, $1,344,741,000;

LHA-R, $150,447,000;

LCAC Landing Craft Air Cushion, $100,000,000;

Prior year shipbuilding costs, $517,523,000;

Service Craft, $45,455,000;  and

For outfitting, post delivery, conversions, and first destination transportation, $369,387,000.


 In all:  $9,027,231,000, to remain available for obligation until September 30, 2010:  *Provided*, That additional obligations may be incurred after September 30, 2010, for engineering services, tests, evaluations, and other such budgeted work that must be performed in the final stage of ship construction:  *Provided further,* **\*2691** That none of the funds provided under this heading for the construction or conversion of any naval vessel to be constructed in shipyards in the United States shall be expended in foreign facilities for the construction of major components of such vessel:  *Provided further*, That none of the funds provided under this heading shall be used for the construction of any naval vessel in foreign shipyards.


Other Procurement, Navy

 For procurement, production, and modernization of support equipment and materials not otherwise provided for, Navy ordnance (except ordnance for new aircraft, new ships, and ships authorized for conversion);  the purchase of passenger motor vehicles for replacement only, and the purchase of 9 vehicles required for physical security of personnel, notwithstanding price limitations applicable to passenger vehicles but not to exceed $255,000 per vehicle; expansion of public and private plants, including the land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  and procurement and installation of

Copr. ©  West 2006 No Claim to Orig. Govt. Works

equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway, $5,444,294,000, to remain available for obligation until September 30, 2008.

### Procurement, Marine Corps

 For expenses necessary for the procurement, manufacture, and modification of missiles, armament, military equipment, spare parts, and accessories therefor; plant equipment, appliances, and machine tools, and installation thereof in public and private plants;  reserve plant and Government and contractor-owned equipment layaway; vehicles for the Marine Corps, including the purchase of passenger motor vehicles for replacement only;  and expansion of public and private plants, including land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title, $1,398,955,000, to remain available for obligation until September 30, 2008.

### Aircraft Procurement, Air Force

 For construction, procurement, and modification of aircraft and equipment, including armor and armament, specialized ground handling equipment, and training devices, spare parts, and accessories therefor;  specialized equipment;  expansion of public and private plants, Government-owned equipment and installation thereof in such plants, erection of structures, and acquisition of land, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  reserve plant and Government and contractor-owned equipment layaway;  and other expenses necessary for the foregoing purposes including rents and transportation of things, $12,737,215,000, to remain available for obligation until September 30, 2008.

**\*2692**

### Missile Procurement, Air Force

 For construction, procurement, and modification of missiles, spacecraft, rockets, and related equipment, including spare parts and accessories therefor, ground handling equipment, and training devices;  expansion of public and private plants, Government-owned equipment and installation thereof in such plants, erection of structures, and acquisition of land, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  reserve plant and Government and contractor-owned equipment layaway;  and other expenses necessary for the foregoing purposes including rents and transportation of things, $5,174,474,000, to remain available for obligation until September 30, 2008.

### Procurement of Ammunition, Air Force

 For construction, procurement, production, and modification of ammunition, and accessories therefor;  specialized equipment and training devices;  expansion of public and private plants, including ammunition facilities, authorized by section 2854 of title 10, United States Code, and the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  and procurement and installation of equipment, appliances, and machine tools in public and private plants;  reserve plant and Government and contractor-owned equipment layaway;   and other expenses necessary for the foregoing purposes, $1,016,887,000, to remain available for obligation until September 30, 2008.

### Other Procurement, Air Force

 For procurement and modification of equipment (including ground guidance and electronic control equipment, and ground electronic and communication equipment), and supplies, materials, and spare parts therefor, not otherwise provided for;  the purchase of passenger motor vehicles for replacement only, and the purchase of 2 vehicles required for physical security of personnel, notwithstanding price limitations applicable to passenger vehicles but not to exceed $255,000 per vehicle;  lease of passenger motor vehicles;  and expansion of public and private plants, Government-owned equipment and installation thereof in such plants, erection of structures, and acquisition of land, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon, prior to approval of title;  reserve plant and Government and contractor-owned equipment layaway, $14,060,714,000, to remain available for obligation until September 30, 2008.

### Procurement, Defense-Wide

 For expenses of activities and agencies of the Department of Defense (other than the military departments) necessary for procurement, production, and modification of equipment, supplies, materials, and spare parts therefor,

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                  Page 10
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

not otherwise provided for;  the purchase of passenger motor vehicles for replacement only, and the purchase of 5 vehicles required for physical security of personnel, notwithstanding prior limitations applicable to passenger **\*2693** vehicles but not to exceed $255,000 per vehicle;  expansion of public and private plants, equipment, and installation thereof in such plants, erection of structures, and acquisition of land for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title;  reserve plant and Government and contractor-owned equipment layaway, $2,573,964,000, to remain available for obligation until September 30, 2008.

### National Guard and Reserve Equipment

 For procurement of aircraft, missiles, tracked combat vehicles, ammunition, other weapons, and other procurement for the reserve components of the Armed Forces, $180,000,000, to remain available for obligation until September 30, 2008:  *Provided*, That the Chiefs of the Reserve and National Guard components shall, not later than 30 days after the enactment of this Act, individually submit to the congressional defense committees the modernization priority assessment for their respective Reserve or National Guard component.

### Defense Production Act Purchases

 For activities by the Department of Defense pursuant to sections 108, 301, 302, and 303 of the Defense Production Act of 1950 (50 U.S.C. App. 2078, 2091, 2092, and 2093), $58,248,000, to remain available until expended.

### TITLE IV
### RESEARCH, DEVELOPMENT, TEST AND EVALUATION
#### Research, Development, Test and Evaluation, Army

 For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, $11,172,397,000, to remain available for obligation until September 30, 2007.

#### Research, Development, Test and Evaluation, Navy

 For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, $18,993,135,000, to remain available for obligation until September 30, 2007:  *Provided*, That funds appropriated in this paragraph which are available for the V-22 may be used to meet unique operational requirements of the Special Operations Forces:  *Provided further*, That funds appropriated in this paragraph shall be available for the Cobra Judy program.

#### Research, Development, Test and Evaluation, Air Force

 For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, **\*2694** $21,999,649,000, to remain available for obligation until September 30, 2007.

#### Research, Development, Test and Evaluation, Defense-Wide

 For expenses of activities and agencies of the Department of Defense (other than the military departments), necessary for basic and applied scientific research, development, test and evaluation;  advanced research projects as may be designated and determined by the Secretary of Defense, pursuant to law; maintenance, rehabilitation, lease, and operation of facilities and equipment, $19,798,599,000, to remain available for obligation until September 30, 2007.

#### Operational Test and Evaluation, Defense

 For expenses, not otherwise provided for, necessary for the independent activities of the Director, Operational Test and Evaluation, in the direction and supervision of operational test and evaluation, including initial operational test and evaluation which is conducted prior to, and in support of, production decisions;  joint operational testing and evaluation;  and administrative expenses in connection therewith, $168,458,000, to remain available for obligation until September 30, 2007.

### TITLE V
### REVOLVING AND MANAGEMENT FUNDS
#### Defense Working Capital Funds

Copr. ©  West 2006 No Claim to Orig. Govt. Works

For the Defense Working Capital Funds, $1,154,940,000.

### National Defense Sealift Fund

 For National Defense Sealift Fund programs, projects, and activities, and for expenses of the National Defense Reserve Fleet, as established by section 11 of the Merchant Ship Sales Act of 1946 (50 U.S.C. App. 1744), and for the necessary expenses to maintain and preserve a U.S.-flag merchant fleet to serve the national security needs of the United States, $1,089,056,000, to remain available until expended:  *Provided*, That none of the funds provided in this paragraph shall be used to award a new contract that provides for the acquisition of any of the following major components unless such components are manufactured in the United States:  auxiliary equipment, including pumps, for all shipboard services;  propulsion system components (that is;  engines, reduction gears, and propellers); shipboard cranes;  and spreaders for shipboard cranes:  *Provided further*, That the exercise of an option in a contract awarded through the obligation of previously appropriated funds shall not be considered to be the award of a new contract:  *Provided further*, That the Secretary of the military department responsible for such procurement may waive the restrictions in the first proviso on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate that adequate domestic supplies are not available to meet Department of Defense requirements on a **\*2695** timely basis and that such an acquisition must be made in order to acquire capability for national security purposes.

### TITLE VI
### OTHER DEPARTMENT OF DEFENSE PROGRAMS
#### Defense Health Program

 For expenses, not otherwise provided for, for medical and health care programs of the Department of Defense, as authorized by law, $20,221,212,000, of which $19,299,787,000 shall be for Operation and maintenance, of which not to exceed 2 percent shall remain available until September 30, 2007, and of which up to $10,212,427,000 may be available for contracts entered into under the TRICARE program;  of which $379,119,000, to remain available for obligation until September 30, 2008, shall be for Procurement;  and of which $542,306,000, to remain available for obligation until September 30, 2007, shall be for Research, development, test and evaluation:  *Provided*, That notwithstanding any other provision of law, of the amount made available under this heading for Research, development, test and evaluation, not less than $5,300,000 shall be available for HIV prevention educational activities undertaken in connection with U.S. military training, exercises, and humanitarian assistance activities conducted primarily in African nations.

### Chemical Agents and Munitions Destruction, Army

 For expenses, not otherwise provided for, necessary for the destruction of the United States stockpile of lethal chemical agents and munitions, to include construction of facilities, in accordance with the provisions of section 1412 of the Department of Defense Authorization Act, 1986 (50 U.S.C. 1521), and for the destruction of other chemical warfare materials that are not in the chemical weapon stockpile, $1,400,827,000, of which $1,216,514,000 shall be for Operation and maintenance;  $116,527,000 shall be for Procurement to remain available until September 30, 2008;  $67,786,000 shall be for Research, development, test and evaluation, of which $53,026,000 shall only be for the Assembled Chemical Weapons Alternatives (ACWA) program, to remain available until September 30, 2007;  and no less than $119,300,000 may be for the Chemical Stockpile Emergency Preparedness Program, of which $36,800,000 shall be for activities on military installations and $82,500,000 shall be to assist State and local governments.

### Drug Interdiction and Counter-Drug Activities, Defense
#### (INCLUDING TRANSFER OF FUNDS)

 For drug interdiction and counter-drug activities of the Department of Defense, for transfer to appropriations available to the Department of Defense for military personnel of the reserve components serving under the provisions of title 10 and title 32, United States Code;  for Operation and maintenance;  for Procurement;  and for Research, development, test and evaluation, $917,651,000:  *Provided*, That the funds appropriated under this heading shall be available for obligation for the same time period and for the same **\*2696** purpose as the appropriation to which transferred:  *Provided further*, That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation:  *Provided further*, That the transfer authority provided under this heading is in addition to any other transfer authority contained elsewhere in this Act.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

Office of the Inspector General

For expenses and activities of the Office of the Inspector General in carrying out the provisions of the Inspector General Act of 1978, as amended, $209,687,000, of which $208,687,000 shall be for Operation and maintenance, of which not to exceed $700,000 is available for emergencies and extraordinary expenses to be expended on the approval or authority of the Inspector General, and payments may be made on the Inspector General's certificate of necessity for confidential military purposes;  and of which $1,000,000, to remain available until September 30, 2008, shall be for Procurement.

## TITLE VII
### RELATED AGENCIES
### Central Intelligence Agency Retirement and Disability System Fund

For payment to the Central Intelligence Agency Retirement and Disability System Fund, to maintain the proper funding level for continuing the operation of the Central Intelligence Agency Retirement and Disability System, $244,600,000.

### Intelligence Community Management Account
### (INCLUDING TRANSFER OF FUNDS)

For necessary expenses of the Intelligence Community Management Account,  $422,344,000, of which $27,454,000 for the Advanced Research and Development Committee shall remain available until September 30, 2007:  *Provided*, That of the funds appropriated under this heading, $39,000,000 shall be transferred to the Department of Justice for the National Drug Intelligence Center to support the Department of Defense's counter-drug intelligence responsibilities, and of the said amount, $1,500,000 for Procurement shall remain available until September 30, 2008 and $1,000,000 for Research, development, test and evaluation shall remain available until September 30, 2007:  *Provided further*, That the National Drug Intelligence Center shall maintain the personnel and technical resources to provide timely support to law enforcement authorities and the intelligence community by conducting document and computer exploitation of materials collected in Federal, State, and local law enforcement activity associated with counter-drug, counter-terrorism, and national security investigations and operations.

**\*2697**

## TITLE VIII
### GENERAL PROVISIONS

SEC. 8001. No part of any appropriation contained in this Act shall be used for publicity or propaganda purposes not authorized by the Congress.

### << 10 USCA §  1584 NOTE >>

SEC. 8002. During the current fiscal year, provisions of law prohibiting the payment of compensation to, or employment of, any person not a citizen of the United States shall not apply to personnel of the Department of Defense: *Provided*, That salary increases granted to direct and indirect hire foreign national employees of the Department of Defense funded by this Act shall not be at a rate in excess of the percentage increase authorized by law for civilian employees of the Department of Defense whose pay is computed under the provisions of section 5332 of title 5, United States Code, or at a rate in excess of the percentage increase provided by the appropriate host nation to its own employees, whichever is higher:  *Provided further*, That this section shall not apply to Department of Defense foreign service national employees serving at United States diplomatic missions whose pay is set by the Department of State under the Foreign Service Act of 1980:  *Provided further*, That the limitations of this provision shall not apply to foreign national employees of the Department of Defense in the Republic of Turkey.

SEC. 8003. No part of any appropriation contained in this Act shall remain available for obligation beyond the current fiscal year, unless expressly so provided herein.

SEC. 8004. No more than 20 percent of the appropriations in this Act which are limited for obligation during the current fiscal year shall be obligated during the last 2 months of the fiscal year:  *Provided*, That this section shall not apply to obligations for support of active duty training of reserve components or summer camp training of the Reserve Officers' Training Corps.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(TRANSFER OF FUNDS)

 SEC. 8005. Upon determination by the Secretary of Defense that such action is necessary in the national interest, he may, with the approval of the Office of Management and Budget, transfer not to exceed $3,750,000,000 of working capital funds of the Department of Defense or funds made available in this Act to the Department of Defense for military functions (except military construction) between such appropriations or funds or any subdivision thereof, to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred: *Provided*, That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress: *Provided further*, That the Secretary of Defense shall notify the Congress promptly of all transfers made pursuant to this authority or any other authority in this Act: *Provided further*, That no part of the funds in this Act shall be available to prepare or present a request to the Committees on Appropriations for reprogramming of funds, unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the **\*2698** item for which reprogramming is requested has been denied by the Congress: *Provided further*, That a request for multiple reprogrammings of funds using authority provided in this section must be made prior to June 30, 2006: *Provided further*, That transfers among military personnel appropriations shall not be taken into account for purposes of the limitation on the amount of funds that may be transferred under this section.

(TRANSFER OF FUNDS)

 SEC. 8006. During the current fiscal year, cash balances in working capital funds of the Department of Defense established pursuant to section 2208 of title 10, United States Code, may be maintained in only such amounts as are necessary at any time for cash disbursements to be made from such funds: *Provided*, That transfers may be made between such funds: *Provided further*, That transfers may be made between working capital funds and the "Foreign Currency Fluctuations, Defense" appropriation and the "Operation and Maintenance" appropriation accounts in such amounts as may be determined by the Secretary of Defense, with the approval of the Office of Management and Budget, except that such transfers may not be made unless the Secretary of Defense has notified the Congress of the proposed transfer. Except in amounts equal to the amounts appropriated to working capital funds in this Act, no obligations may be made against a working capital fund to procure or increase the value of war reserve material inventory, unless the Secretary of Defense has notified the Congress prior to any such obligation.

 SEC. 8007. Funds appropriated by this Act may not be used to initiate a special access program without prior notification 30 calendar days in session in advance to the congressional defense committees.

<< 10 USCA § 2306b NOTE >>

 SEC. 8008. None of the funds provided in this Act shall be available to initiate:  (1) a multiyear contract that employs economic order quantity procurement in excess of $20,000,000 in any 1 year of the contract or that includes an unfunded contingent liability in excess of $20,000,000;  or (2) a contract for advance procurement leading to a multiyear contract that employs economic order quantity procurement in excess of $20,000,000 in any 1 year, unless the congressional defense committees have been notified at least 30 days in advance of the proposed contract award: *Provided*, That no part of any appropriation contained in this Act shall be available to initiate a multiyear contract for which the economic order quantity advance procurement is not funded at least to the limits of the Government's liability: *Provided further*, That no part of any appropriation contained in this Act shall be available to initiate multiyear procurement contracts for any systems or component thereof if the value of the multiyear contract would exceed $500,000,000 unless specifically provided in this Act: *Provided further*, That no multiyear procurement contract can be terminated without 10-day prior notification to the congressional defense committees: *Provided further*, That the execution of multiyear authority shall require the use of a present value analysis to determine lowest cost compared to an annual procurement: *Provided further*, That none of the funds provided in this Act may be used for a multiyear contract executed after the date of the enactment of this Act unless in the case of any such contract--

**\*2699**

 (1) the Secretary of Defense has submitted to Congress a budget request for full funding of units to be procured through the contract;

(2) cancellation provisions in the contract do not include consideration of recurring manufacturing costs of the contractor associated with the production of unfunded units to be delivered under the contract;

(3) the contract provides that payments to the contractor under the contract shall not be made in advance of incurred costs on funded units;  and

(4) the contract does not provide for a price adjustment based on a failure to award a follow-on contract.

Funds appropriated in title III of this Act may be used for a multiyear procurement contract as follows:

UH-60/MH-60 Helicopters;

C-17 Globemaster;

Apache Block II Conversion;  and

Modernized Target Acquisition Designation Sight/Pilot Night Vision Sensor  (MTADS/PNVS).

<< 10 USCA §  401 NOTE >>

SEC. 8009. Within the funds appropriated for the operation and maintenance of the Armed Forces, funds are hereby appropriated pursuant to section 401 of title 10, United States Code, for humanitarian and civic assistance costs under chapter 20 of title 10, United States Code.  Such funds may also be obligated for humanitarian and civic assistance costs incidental to authorized operations and pursuant to authority granted in section 401 of chapter 20 of title 10, United States Code, and these obligations shall be reported as required by section 401(d) of title 10, United States Code:  *Provided*, That funds available for operation and maintenance shall be available for providing humanitarian and similar assistance by using Civic Action Teams in the Trust Territories of the Pacific Islands and freely associated states of Micronesia, pursuant to the Compact of Free Association as authorized by Public Law 99-239:  *Provided further*, That upon a determination by the Secretary of the Army that such action is beneficial for graduate medical education programs conducted at Army medical facilities located in Hawaii, the Secretary of the Army may authorize the provision of medical services at such facilities and transportation to such facilities, on a nonreimbursable basis, for civilian patients from American Samoa, the Commonwealth of the Northern Mariana Islands, the Marshall Islands, the Federated States of Micronesia, Palau, and Guam.

SEC. 8010. (a) During fiscal year 2006, the civilian personnel of the Department of Defense may not be managed on the basis of any end-strength, and the management of such personnel during that fiscal year shall not be subject to any constraint or limitation (known as an end-strength) on the number of such personnel who may be employed on the last day of such fiscal year.

(b) The fiscal year 2007 budget request for the Department of Defense as well as all justification material and other documentation supporting the fiscal year 2007 Department of Defense budget request shall be prepared and submitted to the Congress as if subsections (a) and (b) of this provision were effective with regard to fiscal year 2007.

(c) Nothing in this section shall be construed to apply to military  (civilian) technicians.

**\*2700**
SEC. 8011. None of the funds appropriated in this or any other Act may be used to initiate a new installation overseas without 30-day advance notification to the Committees on Appropriations.

SEC. 8012. None of the funds made available by this Act shall be used in any way, directly or indirectly, to influence congressional action on any legislation or appropriation matters pending before the Congress.

SEC. 8013. None of the funds appropriated by this Act shall be available for the basic pay and allowances of any

Copr. ©  West 2006 No Claim to Orig. Govt. Works

member of the Army participating as a full-time student and receiving benefits paid by the Secretary of Veterans Affairs from the Department of Defense Education Benefits Fund when time spent as a full-time student is credited toward completion of a service commitment: *Provided*, That this subsection shall not apply to those members who have reenlisted with this option prior to October 1, 1987:  *Provided further*, That this subsection applies only to active components of the Army.

 SEC. 8014. (a) LIMITATION ON CONVERSION TO CONTRACTOR PERFORMANCE.--None of the funds appropriated by this Act shall be available to convert to contractor performance an activity or function of the Department of Defense that, on or after the date of the enactment of this Act, is performed by more than 10 Department of Defense civilian employees unless--

 (1) the conversion is based on the result of a public-private competition that includes a most efficient and cost effective organization plan developed by such activity or function;

 (2) the Competitive Sourcing Official determines that, over all performance periods stated in the solicitation of offers for performance of the activity or function, the cost of performance of the activity or function by a contractor would be less costly to the Department of Defense by an amount that equals or exceeds the lesser of--

 (A) 10 percent of the most efficient organization's personnel-related costs for performance of that activity or function by Federal employees;  or

 (B) $10,000,000;  and

 (3) the contractor does not receive an advantage for a proposal that would reduce costs for the Department of Defense by--

 (A) not making an employer-sponsored health insurance plan available to the workers who are to be employed in the performance of that activity or function under the contract;  or

 (B) offering to such workers an employer-sponsored health benefits plan that requires the employer to contribute less towards the premium or subscription share than the amount that is paid by the Department of Defense for health benefits for civilian employees under chapter 89 of title 5, United States Code.

 (b) EXCEPTIONS.--

 (1) The Department of Defense, without regard to subsection (a) of this section or subsections (a), (b), or (c) of section 2461 of title 10, United States Code, and notwithstanding any administrative regulation, requirement, or policy to the contrary shall have full authority to enter into a contract for **\*2701** the performance of any commercial or industrial type function of the Department of Defense that--

 (A) is included on the procurement list established pursuant to section 2 of the Javits-Wagner-O'Day Act (41 U.S.C. 47);

 (B) is planned to be converted to performance by a qualified nonprofit agency for the blind or by a qualified nonprofit agency for other severely handicapped individuals in accordance with that Act;  or

 (C) is planned to be converted to performance by a qualified firm under at least 51 percent ownership by an Indian tribe, as defined in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450b(e)), or a Native Hawaiian Organization, as defined in section 8(a)(15) of the Small Business Act (15 U.S.C. 637(a)(15)).

 (2) This section shall not apply to depot contracts or contracts for depot maintenance as provided in sections 2469 and 2474 of title 10, United States Code.

 (c) TREATMENT OF CONVERSION.--The conversion of any activity or function of the Department of Defense under the authority provided by this section shall be credited toward any competitive or outsourcing goal, target, or

Copr. ©  West 2006 No Claim to Orig. Govt. Works

measurement that may be established by statute, regulation, or policy and is deemed to be awarded under the authority of, and in compliance with, subsection (h) of section 2304 of title 10, United States Code, for the competition or outsourcing of commercial activities.

### (TRANSFER OF FUNDS)

 SEC. 8015. Funds appropriated in title III of this Act for the Department of Defense Pilot Mentor-Protege Program may be transferred to any other appropriation contained in this Act solely for the purpose of implementing a Mentor-Protege Program developmental assistance agreement pursuant to section 831 of the National Defense Authorization Act for Fiscal Year 1991 (Public Law 101-510;  10 U.S.C. 2302 note), as amended, under the authority of this provision or any other transfer authority contained in this Act.

 SEC. 8016. None of the funds in this Act may be available for the purchase by the Department of Defense (and its departments and agencies) of welded shipboard anchor and mooring chain 4 inches in diameter and under unless the anchor and mooring chain are manufactured in the United States from components which are substantially manufactured in the United States:  *Provided*, That for the purpose of this section manufactured will include cutting, heat treating, quality control, testing of chain and welding (including the forging and shot blasting process): *Provided further*, That for the purpose of this section substantially all of the components of anchor and mooring chain shall be considered to be produced or manufactured in the United States if the aggregate cost of the components produced or manufactured in the United States exceeds the aggregate cost of the components produced or manufactured outside the United States:  *Provided further*, That when adequate domestic supplies are not available to meet Department of Defense requirements on a timely basis, the Secretary of the service responsible for the procurement may waive this restriction on a case-by-case basis by certifying in writing to the Committees on **\*2702** Appropriations that such an acquisition must be made in order to acquire capability for national security purposes.

 SEC. 8017. None of the funds available to the Department of Defense may be used to demilitarize or dispose of M-1 Carbines, M-1 Garand rifles, M-14 rifles, .22 caliber rifles, .30 caliber rifles, or M-1911 pistols.

 SEC. 8018. None of the funds appropriated by this Act available for the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) or TRICARE shall be available for the reimbursement of any health care provider for inpatient mental health service for care received when a patient is referred to a provider of inpatient mental health care or residential treatment care by a medical or health care professional having an economic interest in the facility to which the patient is referred:  *Provided*, That this limitation does not apply in the case of inpatient mental health services provided under the program for persons with disabilities under subsection (d) of section 1079 of title 10, United States Code, provided as partial hospital care, or provided pursuant to a waiver authorized by the Secretary of Defense because of medical or psychological circumstances of the patient that are confirmed by a health professional who is not a Federal employee after a review, pursuant to rules prescribed by the Secretary, which takes into account the appropriate level of care for the patient, the intensity of services required by the patient, and the availability of that care.

 SEC. 8019. No more than $500,000 of the funds appropriated or made available in this Act shall be used during a single fiscal year for any single relocation of an organization, unit, activity or function of the Department of Defense into or within the National Capital Region:  *Provided*, That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying in writing to the congressional defense committees that such a relocation is required in the best interest of the Government.

### << 15 USCA §  637 NOTE >>

 SEC. 8020. In addition to the funds provided elsewhere in this Act, $8,000,000 is appropriated only for incentive payments authorized by section 504 of the Indian Financing Act of 1974 (25 U.S.C. 1544):  *Provided*, That a prime contractor or a subcontractor at any tier that makes a subcontract award to any subcontractor or supplier as defined in section 1544 of title 25, United States Code or a small business owned and controlled by an individual or individuals defined under section 4221(9) of title 25, United States Code shall be considered a contractor for the purposes of being allowed additional compensation under section 504 of the Indian Financing Act of 1974 (25 U.S.C. 1544) whenever the prime contract or subcontract amount is over $500,000 and involves the expenditure of

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                 Page 17
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

funds appropriated by an Act making Appropriations for the Department of Defense with respect to any fiscal year: *Provided further*, That notwithstanding section 430 of title 41, United States Code, this section shall be applicable to any Department of Defense acquisition of supplies or services, including any contract and any subcontract at any tier for acquisition of commercial items produced or manufactured, in whole or in part by any subcontractor or supplier defined in section 1544 of title 25, United States Code or a small business owned and controlled by an individual or individuals defined under section 4221(9) of title 25, United States Code: *Provided further*, That, during the current fiscal year and hereafter, businesses certified as 8(a) by the Small **\*2703** Business Administration pursuant to section 8(a)(15) of Public Law 85-536, as amended, shall have the same status as other program participants under section 602 of Public Law 100- 656, 102 Stat. 3825 (Business Opportunity Development Reform Act of 1988) for purposes of contracting with agencies of the Department of Defense.

 SEC. 8021. None of the funds appropriated by this Act shall be available to perform any cost study pursuant to the provisions of OMB Circular A-76 if the study being performed exceeds a period of 24 months after initiation of such study with respect to a single function activity or 30 months after initiation of such study for a multi-function activity.

 SEC. 8022. Funds appropriated by this Act for the American Forces Information Service shall not be used for any national or international political or psychological activities.

 SEC. 8023. Notwithstanding any other provision of law or regulation, the Secretary of Defense may adjust wage rates for civilian employees hired for certain health care occupations as authorized for the Secretary of Veterans Affairs by section 7455 of title 38, United States Code.

 SEC. 8024. During the current fiscal year, the Department of Defense is authorized to incur obligations of not to exceed $350,000,000 for purposes specified in section 2350j(c) of title 10, United States Code, in anticipation of receipt of contributions, only from the Government of Kuwait, under that section: *Provided*, That upon receipt, such contributions from the Government of Kuwait shall be credited to the appropriations or fund which incurred such obligations.

 SEC. 8025. (a) Of the funds made available in this Act, not less than  $31,109,000 shall be available for the Civil Air Patrol Corporation, of which--

 (1) $24,288,000 shall be available from "Operation and Maintenance, Air Force" to support Civil Air Patrol Corporation operation and maintenance, readiness, counterdrug activities, and drug demand reduction activities involving youth programs;

 (2) $6,000,000 shall be available from "Aircraft Procurement, Air Force";  and

 (3) $821,000 shall be available from "Other Procurement, Air Force" for vehicle procurement.

 (b) The Secretary of the Air Force should waive reimbursement for any funds used by the Civil Air Patrol for counter-drug activities in support of Federal, State, and local government agencies.

 SEC. 8026. (a) None of the funds appropriated in this Act are available to establish a new Department of Defense (department) federally funded research and development center (FFRDC), either as a new entity, or as a separate entity administrated by an organization managing another FFRDC, or as a nonprofit membership corporation consisting of a consortium of other FFRDCs and other non-profit entities.

 (b) No member of a Board of Directors, Trustees, Overseers, Advisory Group, Special Issues Panel, Visiting Committee, or any similar entity of a defense FFRDC, and no paid consultant to any defense FFRDC, except when acting in a technical advisory capacity, may be compensated for his or her services as a member of such entity, or as a paid consultant by more than one FFRDC in a fiscal year: *Provided*, That a member of any such entity referred to previously in this subsection shall be allowed travel expenses and per diem as authorized under the Federal Joint Travel **\*2704** Regulations, when engaged in the performance of membership duties.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 (c) Notwithstanding any other provision of law, none of the funds available to the department from any source during fiscal year 2006 may be used by a defense FFRDC, through a fee or other payment mechanism, for construction of new buildings, for payment of cost sharing for projects funded by Government grants, for absorption of contract overruns, or for certain charitable contributions, not to include employee participation in community service and/or development.

 (d) Notwithstanding any other provision of law, of the funds available to the department during fiscal year 2006, not more than 5,517 staff years of technical effort (staff years) may be funded for defense FFRDCs:  *Provided*, That of the specific amount referred to previously in this subsection, not more than 1,050 staff years may be funded for the defense studies and analysis FFRDCs:  *Provided further*, That this subsection shall not apply to staff years funded in the National Intelligence Program (NIP).

 (e) The Secretary of Defense shall, with the submission of the department's fiscal year 2007 budget request, submit a report presenting the specific amounts of staff years of technical effort to be allocated for each defense FFRDC during that fiscal year.

 (f) Notwithstanding any other provision of this Act, the total amount appropriated in this Act for FFRDCs is hereby reduced by $46,000,000.

 SEC. 8027. None of the funds appropriated or made available in this Act shall be used to procure carbon, alloy or armor steel plate for use in any Government-owned facility or property under the control of the Department of Defense which were not melted and rolled in the United States or Canada:  *Provided*, That these procurement restrictions shall apply to any and all Federal Supply Class 9515, American Society of Testing and Materials (ASTM) or American Iron and Steel Institute (AISI) specifications of carbon, alloy or armor steel plate:  *Provided further*, That the Secretary of the military department responsible for the procurement may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate that adequate domestic supplies are not available to meet Department of Defense requirements on a timely basis and that such an acquisition must be made in order to acquire capability for national security purposes:  *Provided further*, That these restrictions shall not apply to contracts which are in being as of the date of the enactment of this Act.

<< 10 USCA § 101 NOTE >>

 SEC. 8028. For the purposes of this Act, the term "congressional defense committees" means the Armed Services Committee of the House of Representatives, the Armed Services Committee of the Senate, the Subcommittee on Defense of the Committee on Appropriations of the Senate, and the Subcommittee on Defense of the Committee on Appropriations of the House of Representatives.  In addition, for any matter pertaining to basic allowance for housing, facilities sustainment, restoration and modernization, environmental restoration and the Defense Health Program, "congressional defense committees" also means the Subcommittee on Military Quality of Life and Veterans Affairs, and Related Agencies of the Committee on Appropriations of the House of Representatives.

 SEC. 8029. During the current fiscal year, the Department of Defense may acquire the modification, depot maintenance and **\*2705** repair of aircraft, vehicles and vessels as well as the production of components and other Defense-related articles, through competition between Department of Defense depot maintenance activities and private firms:  *Provided*, That the Senior Acquisition Executive of the military department or Defense Agency concerned, with power of delegation, shall certify that successful bids include comparable estimates of all direct and indirect costs for both public and private bids:  *Provided further*, That Office of Management and Budget Circular A-76 shall not apply to competitions conducted under this section.

<< 41 USCA § 10b-2 >>

 SEC. 8030. (a)(1) If the Secretary of Defense, after consultation with the United States Trade Representative, determines that a foreign country which is party to an agreement described in paragraph (2) has violated the terms of the agreement by discriminating against certain types of products produced in the United States that are covered by the agreement, the Secretary of Defense shall rescind the Secretary's blanket waiver of the Buy American Act with

Copr. ©  West 2006 No Claim to Orig. Govt. Works

respect to such types of products produced in that foreign country.

 (2) An agreement referred to in paragraph (1) is any reciprocal defense procurement memorandum of understanding, between the United States and a foreign country pursuant to which the Secretary of Defense has prospectively waived the Buy American Act for certain products in that country.

 (b) The Secretary of Defense shall submit to the Congress a report on the amount of Department of Defense purchases from foreign entities in fiscal year 2006. Such report shall separately indicate the dollar value of items for which the Buy American Act was waived pursuant to any agreement described in subsection (a)(2), the Trade Agreement Act of 1979 (19 U.S.C. 2501 et seq.), or any international agreement to which the United States is a party.

 (c) For purposes of this section, the term "Buy American Act" means title III of the Act entitled "An Act making appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1934, and for other purposes", approved March 3, 1933 (41 U.S.C. 10a et seq.).

 SEC. 8031. Appropriations contained in this Act that remain available at the end of the current fiscal year, and at the end of each fiscal year hereafter, as a result of energy cost savings realized by the Department of Defense shall remain available for obligation for the next fiscal year to the extent, and for the purposes, provided in section 2865 of title 10, United States Code.

<< 10 USCA § 221 NOTE >>

 SEC. 8032. The President shall include with each budget for a fiscal year submitted to the Congress under section 1105 of title 31, United States Code, and hereafter, materials that shall identify clearly and separately the amounts requested in the budget for appropriation for that fiscal year for salaries and expenses related to administrative activities of the Department of Defense, the military departments, and the defense agencies.

<< 10 USCA § 374 NOTE >>

 SEC. 8033. Notwithstanding any other provision of law, funds available during the current fiscal year and hereafter for "Drug Interdiction and Counter-Drug Activities, Defense" may be obligated for the Young Marines program.

**\*2706**

(INCLUDING TRANSFER OF FUNDS)

 SEC. 8034. During the current fiscal year, amounts contained in the Department of Defense Overseas Military Facility Investment Recovery Account established by section 2921(c)(1) of the National Defense Authorization Act of 1991 (Public Law 101-510; 10 U.S.C. 2687 note) shall be available until expended for the payments specified by section 2921(c)(2) of that Act.

 SEC. 8035. (a) IN GENERAL.--Notwithstanding any other provision of law, the Secretary of the Air Force may convey at no cost to the Air Force, without consideration, to Indian tribes located in the States of North Dakota, South Dakota, Montana, and Minnesota relocatable military housing units located at Grand Forks Air Force Base and Minot Air Force Base that are excess to the needs of the Air Force.

 (b) PROCESSING OF REQUESTS.--The Secretary of the Air Force shall convey, at no cost to the Air Force, military housing units under subsection (a) in accordance with the request for such units that are submitted to the Secretary by the Operation Walking Shield Program on behalf of Indian tribes located in the States of North Dakota, South Dakota, Montana, and Minnesota.

 (c) RESOLUTION OF HOUSING UNIT CONFLICTS.--The Operation Walking Shield Program shall resolve any conflicts among requests of Indian tribes for housing units under subsection (a) before submitting requests to the Secretary of the Air Force under subsection (b).

 (d) INDIAN TRIBE DEFINED.--In this section, the term "Indian tribe" means any recognized Indian tribe included

on the current list published by the Secretary of the Interior under section 104 of the Federally Recognized Indian Tribe Act of 1994 (Public Law 103-454;  108 Stat. 4792;  25 U.S.C. 479a-1).

 SEC. 8036. During the current fiscal year, appropriations which are available to the Department of Defense for operation and maintenance may be used to purchase items having an investment item unit cost of not more than $250,000.

 SEC. 8037. (a) During the current fiscal year, none of the appropriations or funds available to the Department of Defense Working Capital Funds shall be used for the purchase of an investment item for the purpose of acquiring a new inventory item for sale or anticipated sale during the current fiscal year or a subsequent fiscal year to customers of the Department of Defense Working Capital Funds if such an item would not have been chargeable to the Department of Defense Business Operations Fund during fiscal year 1994 and if the purchase of such an investment item would be chargeable during the current fiscal year to appropriations made to the Department of Defense for procurement.

 (b) The fiscal year 2007 budget request for the Department of Defense as well as all justification material and other documentation supporting the fiscal year 2007 Department of Defense budget shall be prepared and submitted to the Congress on the basis that any equipment which was classified as an end item and funded in a procurement appropriation contained in this Act shall be budgeted for in a proposed fiscal year 2007 procurement appropriation and not in the supply management business area or any other area or category of the Department of Defense Working Capital Funds.

**\*2707**

<< 50 USCA §  403u NOTE >>

 SEC. 8038. None of the funds appropriated by this Act for programs of the Central Intelligence Agency shall remain available for obligation beyond the current fiscal year, except for funds appropriated for the Reserve for Contingencies, which shall remain available until September 30, 2007: *Provided*, That funds appropriated, transferred, or otherwise credited to the Central Intelligence Agency Central Services Working Capital Fund during this or any prior or subsequent fiscal year shall remain available until expended: *Provided further*, That any funds appropriated or transferred to the Central Intelligence Agency for advanced research and development acquisition, for agent operations, and for covert action programs authorized by the President under section 503 of the National Security Act of 1947, as amended, shall remain available until September 30, 2007.

 SEC. 8039. Notwithstanding any other provision of law, funds made available in this Act for the Defense Intelligence Agency may be used for the design, development, and deployment of General Defense Intelligence Program intelligence communications and intelligence information systems for the Services, the Unified and Specified Commands, and the component commands.

 SEC. 8040. Of the funds appropriated to the Department of Defense under the heading "Operation and Maintenance, Defense-Wide", not less than $10,000,000 shall be made available only for the mitigation of environmental impacts, including training and technical assistance to tribes, related administrative support, the gathering of information, documenting of environmental damage, and developing a system for prioritization of mitigation and cost to complete estimates for mitigation, on Indian lands resulting from Department of Defense activities.

 SEC. 8041. (a) None of the funds appropriated in this Act may be expended by an entity of the Department of Defense unless the entity, in expending the funds, complies with the Buy American Act.  For purposes of this subsection, the term "Buy American Act" means title III of the Act entitled "An Act making appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1934, and for other purposes", approved March 3, 1933 (41 U.S.C. 10a et seq.).

 (b) If the Secretary of Defense determines that a person has been convicted of intentionally affixing a label bearing a "Made in America" inscription to any product sold in or shipped to the United States that is not made in America,

the Secretary shall determine, in accordance with section 2410f of title 10, United States Code, whether the person should be debarred from contracting with the Department of Defense.

 (c) In the case of any equipment or products purchased with appropriations provided under this Act, it is the sense of the Congress that any entity of the Department of Defense, in expending the appropriation, purchase only American-made equipment and products, provided that American-made equipment and products are cost-competitive, quality-competitive, and available in a timely fashion.

 SEC. 8042. None of the funds appropriated by this Act shall be available for a contract for studies, analysis, or consulting services entered into without competition on the basis of an unsolicited proposal unless the head of the activity responsible for the procurement determines--

**\*2708**
 (1) as a result of thorough technical evaluation, only one source is found fully qualified to perform the proposed work;

 (2) the purpose of the contract is to explore an unsolicited proposal which offers significant scientific or technological promise, represents the product of original thinking, and was submitted in confidence by one source; or

 (3) the purpose of the contract is to take advantage of unique and significant industrial accomplishment by a specific concern, or to insure that a new product or idea of a specific concern is given financial support: *Provided*, That this limitation shall not apply to contracts in an amount of less than $25,000, contracts related to improvements of equipment that is in development or production, or contracts as to which a civilian official of the Department of Defense, who has been confirmed by the Senate, determines that the award of such contract is in the interest of the national defense.

 SEC. 8043. (a) Except as provided in subsection (b) and (c), none of the funds made available by this Act may be used--

 (1) to establish a field operating agency;  or

 (2) to pay the basic pay of a member of the Armed Forces or civilian employee of the department who is transferred or reassigned from a headquarters activity if the member or employee's place of duty remains at the location of that headquarters.

 (b) The Secretary of Defense or Secretary of a military department may waive the limitations in subsection (a), on a case-by-case basis, if the Secretary determines, and certifies to the Committees on Appropriations of the House of Representatives and Senate that the granting of the waiver will reduce the personnel requirements or the financial requirements of the department.

 (c) This section does not apply to--

 (1) field operating agencies funded within the National Intelligence Program;  or

 (2) an Army field operating agency established to eliminate, mitigate, or counter the effects of improvised explosive devices, and, as determined by the Secretary of the Army, other similar threats.

 SEC. 8044. The Secretary of Defense, acting through the Office of Economic Adjustment of the Department of Defense, may use funds made available in this Act under the heading "Operation and Maintenance, Defense-Wide" to make grants and supplement other Federal funds in accordance with the guidance provided in the Joint Explanatory Statement of the Committee of Conference to accompany the conference report on the bill H.R. 2863, and the projects specified in such guidance shall be considered to be authorized by law.

(RESCISSIONS)

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                                      Page 22
 PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

 SEC. 8045. Of the funds appropriated in Department of Defense Appropriations Acts, the following funds are hereby rescinded from the following accounts and programs in the specified amounts:

  "Missile Procurement, Army, 2004/2006", $20,000,000;

  "Missile Procurement, Army, 2005/2007", $14,931,000;

  "Other Procurement, Army, 2005/2007", $68,637,000;

  "Aircraft Procurement, Navy, 2005/2007", $16,800,000;

  "Shipbuilding and Conversion, Navy, 2005/2009", $42,200,000;

**\*2709**
  "Other Procurement, Navy, 2005/2007", $43,000,000;

  "Procurement, Marine Corps, 2005/2007", $4,300,000;

  "Missile Procurement, Air Force, 2005/2007", $92,000,000;

  "Other Procurement, Air Force, 2005/2007", $3,400,000;

  "Research, Development, Test and Evaluation, Army, 2005/2006", $4,300,000;

  "Research, Development, Test and Evaluation, Navy, 2005/2006", $32,755,000;  and

  "Research, Development, Test and Evaluation, Air Force, 2005/2006",  $63,400,000.

 SEC. 8046. None of the funds available in this Act may be used to reduce the authorized positions for military (civilian) technicians of the Army National Guard, the Air National Guard, Army Reserve and Air Force Reserve for the purpose of applying any administratively imposed civilian personnel ceiling, freeze, or reduction on military (civilian) technicians, unless such reductions are a direct result of a reduction in military force structure.

 SEC. 8047. None of the funds appropriated or otherwise made available in this Act may be obligated or expended for assistance to the Democratic People's Republic of North Korea unless specifically appropriated for that purpose.

 SEC. 8048. Funds appropriated in this Act for operation and maintenance of the Military Departments, Combatant Commands and Defense Agencies shall be available for reimbursement of pay, allowances and other expenses which would otherwise be incurred against appropriations for the National Guard and Reserve when members of the National Guard and Reserve provide intelligence or counterintelligence support to Combatant Commands, Defense Agencies and Joint Intelligence Activities, including the activities and programs included within the National Intelligence Program, the Joint Military Intelligence Program, and the Tactical Intelligence and Related Activities aggregate:  *Provided,* That nothing in this section authorizes deviation from established Reserve and National Guard personnel and training procedures.

 SEC. 8049. During the current fiscal year, none of the funds appropriated in this Act may be used to reduce the civilian medical and medical support personnel assigned to military treatment facilities below the September 30, 2003, level:  *Provided,* That the Service Surgeons General may waive this section by certifying to the congressional defense committees that the beneficiary population is declining in some catchment areas and civilian strength reductions may be consistent with responsible resource stewardship and capitation-based budgeting.

 SEC. 8050. Up to $2,000,000 of the funds appropriated under the heading  "Operation and Maintenance, Navy" may be made available to contract for the installation, repair, and maintenance of an on-base and adjacent off-base wastewater/treatment facility and infrastructure critical to base operations and the public health and safety of community residents in the vicinity of the NCTAMS.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

SEC. 8051. Notwithstanding any other provision of law, that not more than 35 percent of funds provided in this Act for environmental remediation may be obligated under indefinite delivery/indefinite quantity contracts with a total contract value of $130,000,000 or higher.

<< 10 USCA § 374 NOTE >>

SEC. 8052. (a) None of the funds available to the Department of Defense for any fiscal year for drug interdiction or counter-drug activities may be transferred to any other department or **2710** agency of the United States except as specifically provided in an appropriations law.

<< 50 USCA § 403f NOTE >>

(b) None of the funds available to the Central Intelligence Agency for any fiscal year for drug interdiction and counter-drug activities may be transferred to any other department or agency of the United States except as specifically provided in an appropriations law.

SEC. 8053. Up to $3,000,000 of the funds appropriated in title II of this Act under the heading "Operation and Maintenance, Army", may be made available to contract with the Army Historical Foundation, a nonprofit organization, for services required to solicit non-Federal donations to support construction and operation of the National Museum of the United States Army at Fort Belvoir, Virginia: *Provided*, That notwithstanding any other provision of law, the Army is authorized to receive future payments in this or the subsequent fiscal year from any nonprofit organization chartered to support the National Museum of the United States Army to reimburse amounts expended by the Army pursuant to this section: *Provided further*, That any reimbursements received pursuant to this section shall be merged with "Operation and Maintenance, Army" and shall be made available for the same purposes and for the same time period as that appropriation account.

(TRANSFER OF FUNDS)
<< 10 USCA § 2865 NOTE >>

SEC. 8054. Appropriations available under the heading "Operation and Maintenance, Defense-Wide" for the current fiscal year and hereafter for increasing energy and water efficiency in Federal buildings may, during their period of availability, be transferred to other appropriations or funds of the Department of Defense for projects related to increasing energy and water efficiency, to be merged with and to be available for the same general purposes, and for the same time period, as the appropriation or fund to which transferred.

SEC. 8055. None of the funds appropriated by this Act may be used for the procurement of ball and roller bearings other than those produced by a domestic source and of domestic origin: *Provided*, That the Secretary of the military department responsible for such procurement may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate, that adequate domestic supplies are not available to meet Department of Defense requirements on a timely basis and that such an acquisition must be made in order to acquire capability for national security purposes: *Provided further*, That this restriction shall not apply to the purchase of "commercial items", as defined by section 4(12) of the Office of Federal Procurement Policy Act, except that the restriction shall apply to ball or roller bearings purchased as end items.

SEC. 8056. None of the funds in this Act may be used to purchase any supercomputer which is not manufactured in the United States, unless the Secretary of Defense certifies to the congressional defense committees that such an acquisition must be made in order to acquire capability for national security purposes that is not available from United States manufacturers.

SEC. 8057. Notwithstanding any other provision of law, each contract awarded by the Department of Defense during the current fiscal year for construction or service performed in whole or in **2711** part in a State (as defined in section 381(d) of title 10, United States Code) which is not contiguous with another State and has an unemployment rate in excess of the national average rate of unemployment as determined by the Secretary of Labor, shall include a provision requiring the contractor to employ, for the purpose of performing that portion of the contract in such State

Copr. © West 2006 No Claim to Orig. Govt. Works

that is not contiguous with another State, individuals who are residents of such State and who, in the case of any craft or trade, possess or would be able to acquire promptly the necessary skills:  *Provided*, That the Secretary of Defense may waive the requirements of this section, on a case-by-case basis, in the interest of national security.

 SEC. 8058. None of the funds made available in this or any other Act may be used to pay the salary of any officer or employee of the Department of Defense who approves or implements the transfer of administrative responsibilities or budgetary resources of any program, project, or activity financed by this Act to the jurisdiction of another Federal agency not financed by this Act without the express authorization of Congress:  *Provided*, That this limitation shall not apply to transfers of funds expressly provided for in Defense Appropriations Acts, or provisions of Acts providing supplemental appropriations for the Department of Defense.

 SEC. 8059. (a) LIMITATION ON TRANSFER OF DEFENSE ARTICLES AND SERVICES.-- Notwithstanding any other provision of law, none of the funds available to the Department of Defense for the current fiscal year may be obligated or expended to transfer to another nation or an international organization any defense articles or services (other than intelligence services) for use in the activities described in subsection (b) unless the congressional defense committees, the Committee on International Relations of the House of Representatives, and the Committee on Foreign Relations of the Senate are notified 15 days in advance of such transfer.

 (b) COVERED ACTIVITIES.--This section applies to--

 (1) any international peacekeeping or peace-enforcement operation under the authority of chapter VI or chapter VII of the United Nations Charter under the authority of a United Nations Security Council resolution;  and

 (2) any other international peacekeeping, peace-enforcement, or humanitarian assistance operation.

 (c) REQUIRED NOTICE.--A notice under subsection (a) shall include the following:

 (1) A description of the equipment, supplies, or services to be transferred.

 (2) A statement of the value of the equipment, supplies, or services to be transferred.

 (3) In the case of a proposed transfer of equipment or supplies--

 (A) a statement of whether the inventory requirements of all elements of the Armed Forces (including the reserve components) for the type of equipment or supplies to be transferred have been met;  and

 (B) a statement of whether the items proposed to be transferred will have to be replaced and, if so, how the President proposes to provide funds for such replacement.

 SEC. 8060. None of the funds available to the Department of Defense under this Act shall be obligated or expended to pay a contractor under a contract with the Department of Defense **\*2712** for costs of any amount paid by the contractor to an employee when--

 (1) such costs are for a bonus or otherwise in excess of the normal salary paid by the contractor to the employee; and

 (2) such bonus is part of restructuring costs associated with a business combination.

(INCLUDING TRANSFER OF FUNDS)

 SEC. 8061. During the current fiscal year, no more than $30,000,000 of appropriations made in this Act under the heading "Operation and Maintenance, Defense-Wide" may be transferred to appropriations available for the pay of military personnel, to be merged with, and to be available for the same time period as the appropriations to which transferred, to be used in support of such personnel in connection with support and services for eligible organizations and activities outside the Department of Defense pursuant to section 2012 of title 10, United States Code.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

SEC. 8062. During the current fiscal year, in the case of an appropriation account of the Department of Defense for which the period of availability for obligation has expired or which has closed under the provisions of section 1552 of title 31, United States Code, and which has a negative unliquidated or unexpended balance, an obligation or an adjustment of an obligation may be charged to any current appropriation account for the same purpose as the expired or closed account if--

(1) the obligation would have been properly chargeable (except as to amount) to the expired or closed account before the end of the period of availability or closing of that account;

(2) the obligation is not otherwise properly chargeable to any current appropriation account of the Department of Defense;  and

(3) in the case of an expired account, the obligation is not chargeable to a current appropriation of the Department of Defense under the provisions of section 1405(b)(8) of the National Defense Authorization Act for Fiscal Year 1991, Public Law 101-510, as amended (31 U.S.C. 1551 note):  *Provided*, That in the case of an expired account, if subsequent review or investigation discloses that there was not in fact a negative unliquidated or unexpended balance in the account, any charge to a current account under the authority of this section shall be reversed and recorded against the expired account: *Provided further*, That the total amount charged to a current appropriation under this section may not exceed an amount equal to 1 percent of the total appropriation for that account.

SEC. 8063. (a) Notwithstanding any other provision of law, the Chief of the National Guard Bureau may permit the use of equipment of the National Guard Distance Learning Project by any person or entity on a space-available, reimbursable basis.  The Chief of the National Guard Bureau shall establish the amount of reimbursement for such use on a case-by-case basis.

(b) Amounts collected under subsection (a) shall be credited to funds available for the National Guard Distance Learning Project and be available to defray the costs associated with the use of equipment of the project under that subsection.  Such funds shall be available for such purposes without fiscal year limitation.

**\*2713**
SEC. 8064. Using funds available by this Act or any other Act, the Secretary of the Air Force, pursuant to a determination under section 2690 of title 10, United States Code, may implement cost-effective agreements for required heating facility modernization in the Kaiserslautern Military Community in the Federal Republic of Germany:  *Provided*, That in the City of Kaiserslautern such agreements will include the use of United States anthracite as the base load energy for municipal district heat to the United States Defense installations: *Provided further*, That at Landstuhl Army Regional Medical Center and Ramstein Air Base, furnished heat may be obtained from private, regional or municipal services, if provisions are included for the consideration of United States coal as an energy source.

SEC. 8065. None of the funds appropriated in title IV of this Act may be used to procure end-items for delivery to military forces for operational training, operational use or inventory requirements:  *Provided*, That this restriction does not apply to end-items used in development, prototyping, and test activities preceding and leading to acceptance for operational use: *Provided further*, That this restriction does not apply to programs funded within the National Intelligence Program:  *Provided further*, That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate that it is in the national security interest to do so.

SEC. 8066. Notwithstanding any other provision of law, funds available to the Department of Defense shall be made available to provide transportation of medical supplies and equipment, on a nonreimbursable basis, to American Samoa, and funds available to the Department of Defense shall be made available to provide transportation of medical supplies and equipment, on a nonreimbursable basis, to the Indian Health Service when it is in conjunction with a civil-military project.

SEC. 8067. None of the funds made available in this Act may be used to approve or license the sale of the F/A-22

advanced tactical fighter to any foreign government.

 SEC. 8068. (a) The Secretary of Defense may, on a case-by-case basis, waive with respect to a foreign country each limitation on the procurement of defense items from foreign sources provided in law if the Secretary determines that the application of the limitation with respect to that country would invalidate cooperative programs entered into between the Department of Defense and the foreign country, or would invalidate reciprocal trade agreements for the procurement of defense items entered into under section 2531 of title 10, United States Code, and the country does not discriminate against the same or similar defense items produced in the United States for that country.

 (b) Subsection (a) applies with respect to--

 (1) contracts and subcontracts entered into on or after the date of the enactment of this Act;  and

 (2) options for the procurement of items that are exercised after such date under contracts that are entered into before such date if the option prices are adjusted for any reason other than the application of a waiver granted under subsection (a).

 (c) Subsection (a) does not apply to a limitation regarding construction of public vessels, ball and roller bearings, food, and **\*2714** clothing or textile materials as defined by section 11 (chapters 50-65) of the Harmonized Tariff Schedule and products classified under headings 4010, 4202, 4203, 6401 through 6406, 6505, 7019, 7218 through 7229, 7304.41 through 7304.49, 7306.40, 7502 through 7508, 8105, 8108, 8109, 8211, 8215, and 9404.

 SEC. 8069. (a) PROHIBITION.--None of the funds made available by this Act may be used to support any training program involving a unit of the security forces of a foreign country if the Secretary of Defense has received credible information from the Department of State that the unit has committed a gross violation of human rights, unless all necessary corrective steps have been taken.

 (b) MONITORING.--The Secretary of Defense, in consultation with the Secretary of State, shall ensure that prior to a decision to conduct any training program referred to in subsection (a), full consideration is given to all credible information available to the Department of State relating to human rights violations by foreign security forces.

 (c) WAIVER.--The Secretary of Defense, after consultation with the Secretary of State, may waive the prohibition in subsection (a) if he determines that such waiver is required by extraordinary circumstances.

 (d) REPORT.--Not more than 15 days after the exercise of any waiver under subsection (c), the Secretary of Defense shall submit a report to the congressional defense committees describing the extraordinary circumstances, the purpose and duration of the training program, the United States forces and the foreign security forces involved in the training program, and the information relating to human rights violations that necessitates the waiver.

 SEC. 8070. None of the funds appropriated or made available in this Act to the Department of the Navy shall be used to develop, lease or procure the T-AKE class of ships unless the main propulsion diesel engines and propulsors are manufactured in the United States by a domestically operated entity:  *Provided*, That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate that adequate domestic supplies are not available to meet Department of Defense requirements on a timely basis and that such an acquisition must be made in order to acquire capability for national security purposes or there exists a significant cost or quality difference.

 SEC. 8071. None of the funds appropriated or otherwise made available by this or other Department of Defense Appropriations Acts may be obligated or expended for the purpose of performing repairs or maintenance to military family housing units of the Department of Defense, including areas in such military family housing units that may be used for the purpose of conducting official Department of Defense business.

 SEC. 8072. Notwithstanding any other provision of law, funds appropriated in this Act under the heading "Research, Development, Test and Evaluation, Defense-Wide" for any new start advanced concept technology demonstration project may only be obligated 30 days after a report, including a description of the project, the

Copr. ©  West 2006 No Claim to Orig. Govt. Works

planned acquisition and transition strategy and its estimated annual and total cost, has been provided in writing to the congressional defense committees: *Provided*, That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying **\*2715** to the congressional defense committees that it is in the national interest to do so.

 SEC. 8073. The Secretary of Defense shall provide a classified quarterly report beginning 30 days after enactment of this Act, to the House and Senate Appropriations Committees, Subcommittees on Defense on certain matters as directed in the classified annex accompanying this Act.

 SEC. 8074. During the current fiscal year, refunds attributable to the use of the Government travel card, refunds attributable to the use of the Government Purchase Card and refunds attributable to official Government travel arranged by Government Contracted Travel Management Centers may be credited to operation and maintenance, and research, development, test and evaluation accounts of the Department of Defense which are current when the refunds are received.

 SEC. 8075. (a) REGISTERING FINANCIAL MANAGEMENT INFORMATION TECHNOLOGY SYSTEMS WITH DOD CHIEF INFORMATION OFFICER.--None of the funds appropriated in this Act may be used for a mission critical or mission essential financial management information technology system (including a system funded by the defense working capital fund) that is not registered with the Chief Information Officer of the Department of Defense.  A system shall be considered to be registered with that officer upon the furnishing to that officer of notice of the system, together with such information concerning the system as the Secretary of Defense may prescribe.  A financial management information technology system shall be considered a mission critical or mission essential information technology system as defined by the Under Secretary of Defense (Comptroller).

 (b) CERTIFICATIONS AS TO COMPLIANCE WITH FINANCIAL MANAGEMENT MODERNIZATION PLAN.--

 (1) During the current fiscal year, a financial management automated information system, a mixed information system supporting financial and non-financial systems, or a system improvement of more than $1,000,000 may not receive Milestone A approval, Milestone B approval, or full rate production, or their equivalent, within the Department of Defense until the Under Secretary of Defense (Comptroller) certifies, with respect to that milestone, that the system is being developed and managed in accordance with the Department's Financial Management Modernization Plan.  The Under Secretary of Defense (Comptroller) may require additional certifications, as appropriate, with respect to any such system.

 (2) The Chief Information Officer shall provide the congressional defense committees timely notification of certifications under paragraph (1).

 (c) CERTIFICATIONS AS TO COMPLIANCE WITH CLINGER-COHEN ACT.--

 (1) During the current fiscal year, a major automated information system may not receive Milestone A approval, Milestone B approval, or full rate production approval, or their equivalent, within the Department of Defense until the Chief Information Officer certifies, with respect to that milestone, that the system is being developed in accordance with the Clinger-Cohen Act of 1996 (40 U.S.C. 1401 et seq.). The Chief Information Officer may require additional certifications, as appropriate, with respect to any such system.

**\*2716**
 (2) The Chief Information Officer shall provide the congressional defense committees timely notification of certifications under paragraph (1). Each such notification shall include, at a minimum, the funding baseline and milestone schedule for each system covered by such a certification and confirmation that the following steps have been taken with respect to the system:

 (A) Business process reengineering.

 (B) An analysis of alternatives.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

   (C) An economic analysis that includes a calculation of the return on investment.

   (D) Performance measures.

   (E) An information assurance strategy consistent with the Department's Global Information Grid.

  (d) DEFINITIONS.--For purposes of this section:

   (1) The term "Chief Information Officer" means the senior official of the Department of Defense designated by the Secretary of Defense pursuant to section 3506 of title 44, United States Code.

   (2) The term "information technology system" has the meaning given the term  "information technology" in section 5002 of the Clinger-Cohen Act of 1996 (40 U.S.C. 1401).

  SEC. 8076. During the current fiscal year, none of the funds available to the Department of Defense may be used to provide support to another department or agency of the United States if such department or agency is more than 90 days in arrears in making payment to the Department of Defense for goods or services previously provided to such department or agency on a reimbursable basis: *Provided*, That this restriction shall not apply if the department is authorized by law to provide support to such department or agency on a nonreimbursable basis, and is providing the requested support pursuant to such authority: *Provided further*, That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate that it is in the national security interest to do so.

  SEC. 8077. Notwithstanding section 12310(b) of title 10, United States Code, a Reserve who is a member of the National Guard serving on full-time National Guard duty under section 502(f) of title 32 may perform duties in support of the ground-based elements of the National Ballistic Missile Defense System.

  SEC. 8078. None of the funds provided in this Act may be used to transfer to any nongovernmental entity ammunition held by the Department of Defense that has a center-fire cartridge and a United States military nomenclature designation of "armor penetrator", "armor piercing (AP)", "armor piercing incendiary (API)", or "armor-piercing incendiary-tracer (API-T)", except to an entity performing demilitarization services for the Department of Defense under a contract that requires the entity to demonstrate to the satisfaction of the Department of Defense that armor piercing projectiles are either:  (1) rendered incapable of reuse by the demilitarization process; or (2) used to manufacture ammunition pursuant to a contract with the Department of Defense or the manufacture of ammunition for export pursuant to a License for Permanent Export of Unclassified Military Articles issued by the Department of State.

**\*2717**
  SEC. 8079. Notwithstanding any other provision of law, the Chief of the National Guard Bureau, or his designee, may waive payment of all or part of the consideration that otherwise would be required under section 2667 of title 10, United States Code, in the case of a lease of personal property for a period not in excess of 1 year to any organization specified in section 508(d) of title 32, United States Code, or any other youth, social, or fraternal non-profit organization as may be approved by the Chief of the National Guard Bureau, or his designee, on a case-by-case basis.

<< 10 USCA §  2488 NOTE >>

  SEC. 8080. None of the funds appropriated by this Act shall be used for the support of any nonappropriated funds activity of the Department of Defense that procures malt beverages and wine with nonappropriated funds for resale (including such alcoholic beverages sold by the drink) on a military installation located in the United States unless such malt beverages and wine are procured within that State, or in the case of the District of Columbia, within the District of Columbia, in which the military installation is located:  *Provided*, That in a case in which the military installation is located in more than one State, purchases may be made in any State in which the installation is located:  *Provided further*, That such local procurement requirements for malt beverages and wine shall apply to all

Copr. ©  West 2006 No Claim to Orig. Govt. Works

alcoholic beverages only for military installations in States which are not contiguous with another State: *Provided further*, That alcoholic beverages other than wine and malt beverages, in contiguous States and the District of Columbia shall be procured from the most competitive source, price and other factors considered.

 SEC. 8081. Funds available to the Department of Defense for the Global Positioning System during the current fiscal year may be used to fund civil requirements associated with the satellite and ground control segments of such system's modernization program.

(INCLUDING TRANSFER OF FUNDS)

 SEC. 8082. Of the amounts appropriated in this Act under the heading  "Operation and Maintenance, Army", $147,900,000 shall remain available until expended: *Provided*, That notwithstanding any other provision of law, the Secretary of Defense is authorized to transfer such funds to other activities of the Federal Government: *Provided further*, That the Secretary of Defense is authorized to enter into and carry out contracts for the acquisition of real property, construction, personal services, and operations related to projects described in further detail in the Classified Annex accompanying the Department of Defense Appropriations Act, 2006, consistent with the terms and conditions set forth therein:  *Provided further*, That contracts entered into under the authority of this section may provide for such indemnification as the Secretary determines to be necessary:  *Provided further*, That projects authorized by this section shall comply with applicable Federal, State, and local law to the maximum extent consistent with the national security, as determined by the Secretary of Defense.

<< 10 USCA §  113 NOTE >>

 SEC. 8083. Section 8106 of the Department of Defense Appropriations Act, 1997  (titles I through VIII of the matter under subsection 101(b) of Public Law 104- 208;  110 Stat. 3009-111;  10 U.S.C. 113 note) shall continue in effect to apply to disbursements that are made by the Department of Defense in fiscal year 2006.

**\*2718**
 SEC. 8084. In addition to amounts provided elsewhere in this Act, $2,200,000 is hereby appropriated to the Department of Defense, to remain available for obligation until expended:  *Provided*, That notwithstanding any other provision of law, these funds shall be available only for a grant to the Fisher House Foundation, Inc., only for the construction and furnishing of additional Fisher Houses to meet the needs of military family members when confronted with the illness or hospitalization of an eligible military beneficiary.

 SEC. 8085. (a) The Secretary of Defense, in coordination with the Secretary of Health and Human Services, may carry out a program to distribute surplus dental and medical equipment of the Department of Defense, at no cost to the Department of Defense, to Indian Health Service facilities and to federally-qualified health centers (within the meaning of section 1905(l)(2)(B) of the Social Security Act (42 U.S.C. 1396d(l)(2)(B))).

 (b) In carrying out this provision, the Secretary of Defense shall give the Indian Health Service a property disposal priority equal to the priority given to the Department of Defense and its twelve special screening programs in distribution of surplus dental and medical supplies and equipment.

 SEC. 8086. Amounts appropriated in title II of this Act are hereby reduced by  $265,000,000 to reflect savings attributable to efficiencies and management improvements in the funding of miscellaneous or other contracts in the military departments, as follows:

 (1) From "Operation and Maintenance, Army", $26,000,000.

 (2) From "Operation and Maintenance, Navy", $85,000,000.

 (3) From "Operation and Maintenance, Air Force", $154,000,000.

 SEC. 8087. The total amount appropriated or otherwise made available in this Act is hereby reduced by $100,000,000 to limit excessive growth in the procurement of advisory and assistance services, to be distributed as follows:

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                    Page 30
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

"Operation and Maintenance, Army", $25,000,000.

"Operation and Maintenance, Navy", $10,000,000.

"Operation and Maintenance, Air Force", $30,000,000.

"Operation and Maintenance, Defense-Wide", $35,000,000.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8088. Of the amounts appropriated in this Act under the heading "Research, Development, Test and Evaluation, Defense-Wide", $132,866,000 shall be made available for the Arrow missile defense program: *Provided*, That of this amount, $60,250,000 shall be available for the purpose of producing Arrow missile components in the United States and Arrow missile components and missiles in Israel to meet Israel's defense requirements, consistent with each nation's laws, regulations and procedures, and $10,000,000 shall be available for the purpose of the initiation of a joint feasibility study designated the Short Range Ballistic Missile Defense (SRBMD) initiative: *Provided further*, That funds made available under this provision for production of missiles and missile components may be transferred to appropriations available for the procurement of weapons and equipment, to be merged with and to be available for the same time period and the same purposes as the appropriation to which transferred: *Provided further*, That the transfer authority provided under this provision is in addition to any other transfer authority contained in this Act.

**\*2719**

(INCLUDING TRANSFER OF FUNDS)

SEC. 8089. Of the amounts appropriated in this Act under the heading "Shipbuilding and Conversion, Navy", $517,523,000 shall be available until September 30, 2006, to fund prior year shipbuilding cost increases: *Provided*, That upon enactment of this Act, the Secretary of the Navy shall transfer such funds to the following appropriations in the amounts specified: *Provided further*, That the amounts transferred shall be merged with and be available for the same purposes as the appropriations to which transferred:

To:

Under the heading "Shipbuilding and Conversion, Navy, 1998/2006":

New SSN, $28,000,000.

Under the heading "Shipbuilding and Conversion, Navy, 1999/2006":

LPD-17 Amphibious Transport Dock Ship Program, $95,000,000;

New SSN, $72,000,000.

Under the heading "Shipbuilding and Conversion, Navy, 2000/2006":

LPD-17 Amphibious Transport Dock Ship Program, $94,800,000.

Under the heading "Shipbuilding and Conversion, Navy, 2001/2006":

Carrier Replacement Program, $145,023,000;

New SSN, $82,700,000.

SEC. 8090. The Secretary of the Navy may settle, or compromise, and pay any and all admiralty claims under section 7622 of title 10, United States Code arising out of the collision involving the U.S.S. GREENEVILLE and the EHIME MARU, in any amount and without regard to the monetary limitations in subsections (a) and (b) of that

Copr. © West 2006 No Claim to Orig. Govt. Works

section: *Provided*, That such payments shall be made from funds available to the Department of the Navy for operation and maintenance.

 SEC. 8091. Notwithstanding any other provision of law or regulation, the Secretary of Defense may exercise the provisions of section 7403(g) of title 38, United States Code for occupations listed in section 7403(a)(2) of title 38, United States Code as well as the following:

 Pharmacists, Audiologists, and Dental Hygienists.

  (A) The requirements of section 7403(g)(1)(A) of title 38, United States Code shall apply.

  (B) The limitations of section 7403(g)(1)(B) of title 38, United States Code shall not apply.

 SEC. 8092. Funds appropriated by this Act, or made available by the transfer of funds in this Act, for intelligence activities are deemed to be specifically authorized by the Congress for purposes of section 504 of the National Security Act of 1947 (50 U.S.C. 414) during fiscal year 2006 until the enactment of the Intelligence Authorization Act for fiscal year 2006.

 SEC. 8093. None of the funds in this Act may be used to initiate a new start program without prior written notification to the Office of Secretary of Defense and the congressional defense committees.

 SEC. 8094. The amounts appropriated in title II of this Act are hereby reduced by $250,000,000 to reflect cash balance and **\*2720** rate stabilization adjustments in Department of Defense Working Capital Funds, as follows:

  (1) From "Operation and Maintenance, Army", $100,000,000.

  (2) From "Operation and Maintenance, Navy", $50,000,000.

  (3) From "Operation and Maintenance, Air Force", $100,000,000.

 SEC. 8095. (a) In addition to the amounts provided elsewhere in this Act, the amount of $5,100,000 is hereby appropriated to the Department of Defense for "Operation and Maintenance, Army National Guard". Such amount shall be made available to the Secretary of the Army only to make a grant in the amount of $5,100,000 to the entity specified in subsection (b) to facilitate access by veterans to opportunities for skilled employment in the construction industry.

 (b) The entity referred to in subsection (a) is the Center for Military Recruitment, Assessment and Veterans Employment, a nonprofit labor-management co-operation committee provided for by section 302(c)(9) of the Labor-Management Relations Act, 1947 (29 U.S.C. 186(c)(9)), for the purposes set forth in section 6(b) of the Labor Management Cooperation Act of 1978 (29 U.S.C. 175a note).

 SEC. 8096. FINANCING AND FIELDING OF KEY ARMY CAPABILITIES.--The Department of Defense and the Department of the Army shall make future budgetary and programming plans to fully finance the Non-Line of Sight Future Force cannon and resupply vehicle program (NLOS-C) in order to field this system in fiscal year 2010, consistent with the broader plan to field the Future Combat System (FCS) in fiscal year 2010: *Provided*, That if the Army is precluded from fielding the FCS program by fiscal year 2010, then the Army shall develop the NLOS-C independent of the broader FCS development timeline to achieve fielding by fiscal year 2010. In addition the Army will deliver eight (8) combat operational pre-production NLOS-C systems by the end of calendar year 2008. These systems shall be in addition to those systems necessary for developmental and operational testing: *Provided further*, That the Army shall ensure that budgetary and programmatic plans will provide for no fewer than seven (7) Stryker Brigade Combat Teams.

 SEC. 8097. Up to $2,125,000 of the funds appropriated under the heading  "Operation and Maintenance, Navy" in this Act for the Pacific Missile Range Facility may be made available to contract for the repair, maintenance, and operation of adjacent off-base water, drainage, and flood control systems, electrical upgrade to support additional

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                                          Page 32
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

missions critical to base operations, and support for a range footprint expansion to further guard against encroachment.

 SEC. 8098. In addition to the amounts appropriated or otherwise made available elsewhere in this Act, $33,350,000 is hereby appropriated to the Department of Defense, to remain available until September 30, 2006:  *Provided*, That the Secretary of Defense shall make grants in the amounts specified as follows: $3,850,000 to the Intrepid Sea-Air-Space Foundation;  $1,000,000 to the Pentagon Memorial Fund, Inc.;  $4,400,000 to the Center for Applied Science and Technologies at Jordan Valley Innovation Center;  $1,000,000 to the Vietnam Veterans Memorial Fund for the Teach Vietnam initiative;  $500,000 to the Westchester County World Trade Center **\*2721** Memorial;  $1,000,000 to the Women in Military Service for America Memorial Foundation;  $2,000,000 to The Presidio Trust;  $500,000 to George Mason University for the Clinic for Legal Assistance to Servicemembers;  $850,000 to the Fort Des Moines Memorial Park and Education Center;  $1,000,000 to the American Civil War Center at Historic Tredegar; $1,500,000 to the Museum of Flight, American Heroes Collection;  $1,000,000 to the National Guard Youth Foundation;  $2,550,000 to the United Services Organization;  $1,700,000 to the Dwight D. Eisenhower Memorial Commission;  $1,000,000 to the Iraq Cultural Heritage Assistance Project;  $1,350,000 to the Pacific Aviation Museum-Pearl Harbor;  $1,500,000 to the Red Cross Consolidated Blood Services Facility;  $150,000 to the Telluride Adaptive Sports Program;  $4,000,000 to T.H.A.N.K.S USA;  $1,500,000 to the Battleship Texas Foundation to Restore and Preserve the Battleship Texas;  and $1,000,000 to the Pennsylvania Veterans Museum Media Armory.

 SEC. 8099. Notwithstanding section 2583(a) of title 10, United States Code, but subject to the limitations of section 2583(e) of title 10, United States Code, during the current fiscal year the Secretary of the military department concerned may make a military working dog available for adoption by its former handler.

<< 10 USCA § 221 NOTE >>

 SEC. 8100. The budget of the President for fiscal year 2007 submitted to the Congress pursuant to section 1105 of title 31, United States Code shall include separate budget justification documents for costs of United States Armed Forces' participation in contingency operations for the Military Personnel accounts, the Operation and Maintenance accounts, and the Procurement accounts:  *Provided*, That these documents shall include a description of the funding requested for each contingency operation, for each military service, to include all Active and Reserve components, and for each appropriations account:  *Provided further*, That these documents shall include estimated costs for each element of expense or object class, a reconciliation of increases and decreases for each contingency operation, and programmatic data including, but not limited to, troop strength for each Active and Reserve component, and estimates of the major weapons systems deployed in support of each contingency:  *Provided further*, That these documents shall include budget exhibits OP-5 and OP-32 (as defined in the Department of Defense Financial Management Regulation) for all contingency operations for the budget year and the two preceding fiscal years.

 SEC. 8101. None of the funds in this Act may be used for research, development, test, evaluation, procurement or deployment of nuclear armed interceptors of a missile defense system.

 SEC. 8102. Of the amounts provided in title II of this Act under the heading  "Operation and Maintenance, Defense-Wide", $20,000,000 is available for the Regional Defense Counter-terrorism Fellowship Program, to fund the education and training of foreign military officers, ministry of defense civilians, and other foreign security officials, to United States military officers and civilian officials whose participation directly contributes to the education and training of these foreign students.

 SEC. 8103. None of the funds appropriated or made available in this Act shall be used to reduce or disestablish the operation of the 53rd Weather Reconnaissance Squadron of the Air Force Reserve, if such action would reduce the WC-130 Weather Reconnaissance mission below the levels funded in this Act:  *Provided*, **\*2722** That the Air Force shall allow the 53rd Weather Reconnaissance Squadron to perform other missions in support of national defense requirements during the non-hurricane season.

 SEC. 8104. None of the funds provided in this Act shall be available for integration of foreign intelligence information unless the information has been lawfully collected and processed during the conduct of authorized

Copr. ©  West 2006 No Claim to Orig. Govt. Works

foreign intelligence activities: *Provided*, That information pertaining to United States persons shall only be handled in accordance with protections provided in the Fourth Amendment of the United States Constitution as implemented through Executive Order No. 12333.

SEC. 8105. (a) From within amounts made available in title II of this Act, under the heading "Operation and Maintenance, Army", and notwithstanding any other provision of law, up to $7,000,000 shall be available only for repairs and safety improvements to the segment of Fort Irwin Road which extends from Interstate 15 northeast toward the boundary of Fort Irwin, California and the originating intersection of Irwin Road: *Provided*, That these funds shall remain available until expended: *Provided further*, That the authorized scope of work includes, but is not limited to, environmental documentation and mitigation, engineering and design, improving safety, resurfacing, widening lanes, enhancing shoulders, and replacing signs and pavement markings: *Provided further*, That these funds may be used for advances to the Federal Highway Administration, Department of Transportation, for the authorized scope of work.

(b) From within amounts made available in title II of this Act under the heading "Operation and Maintenance, Marine Corps", the Secretary of the Navy shall make a grant in the amount of $4,800,000, notwithstanding any other provision of law, to the City of Twentynine Palms, California, for the widening of off-base Adobe Road, which is used by members of the Marine Corps stationed at the Marine Corps Air Ground Task Force Training Center, Twentynine Palms, California, and their dependents, and for construction of pedestrian and bike lanes for the road, to provide for the safety of the Marines stationed at the installation.

SEC. 8106. None of the funds available to the Department of Defense may be obligated to modify command and control relationships to give Fleet Forces Command administrative and operational control of U.S. Navy forces assigned to the Pacific fleet: *Provided*, That the command and control relationships which existed on October 1, 2004, shall remain in force unless changes are specifically authorized in a subsequent Act.

SEC. 8107. (a) At the time members of reserve components of the Armed Forces are called or ordered to active duty under section 12302(a) of title 10, United States Code, each member shall be notified in writing of the expected period during which the member will be mobilized.

(b) The Secretary of Defense may waive the requirements of subsection (a) in any case in which the Secretary determines that it is necessary to do so to respond to a national security emergency or to meet dire operational requirements of the Armed Forces.

**\*2723**
                              (INCLUDING TRANSFER OF FUNDS)
SEC. 8108. The Secretary of Defense may transfer funds from any available Department of the Navy appropriation to any available Navy ship construction appropriation for the purpose of liquidating necessary changes resulting from inflation, market fluctuations, or rate adjustments for any ship construction program appropriated in law: *Provided*, That the Secretary may transfer not to exceed $100,000,000 under the authority provided by this section: *Provided further*, That the funding transferred shall be available for the same time period as the appropriation to which transferred: *Provided further*, That the Secretary may not transfer any funds until 30 days after the proposed transfer has been reported to the Committees on Appropriations of the Senate and the House of Representatives, unless sooner notified by the Committees that there is no objection to the proposed transfer: *Provided further*, That the transfer authority provided by this section is in addition to any other transfer authority contained elsewhere in this Act.

SEC. 8109. (a) The total amount appropriated or otherwise made available in title II of this Act is hereby reduced by $92,000,000 to limit excessive growth in the travel and transportation of persons.

(b) The Secretary of Defense shall allocate this reduction proportionately to each budget activity, activity group, subactivity group, and each program, project, and activity within each applicable appropriation account.

SEC. 8110. In addition to funds made available elsewhere in this Act,  $5,500,000 is hereby appropriated and shall remain available until expended to provide assistance, by grant or otherwise (such as, but not limited to, the

Copr. ©  West 2006 No Claim to Orig. Govt. Works

provision of funds for repairs, maintenance, construction, and/or for the purchase of information technology, text books, teaching resources), to public schools that have unusually high concentrations of special needs military dependents enrolled:  *Provided*, That in selecting school systems to receive such assistance, special consideration shall be given to school systems in States that are considered overseas assignments, and all schools within these school systems shall be eligible for assistance:  *Provided further*, That up to 2 percent of the total appropriated funds under this section shall be available to support the administration and execution of the funds or program and/or events that promote the purpose of this appropriation (e.g. payment of travel and per diem of school teachers attending conferences or a meeting that promotes the purpose of this appropriation and/or consultant fees for on-site training of teachers, staff, or Joint Venture Education Forum (JVEF) Committee members):  *Provided further*, That up to $2,000,000 shall be available for the Department of Defense to establish a non-profit trust fund to assist in the public-private funding of public school repair and maintenance projects, or provide directly to non-profit organizations who in return will use these monies to provide assistance in the form of repair, maintenance, or renovation to public school systems that have high concentrations of special needs military dependents and are located in States that are considered overseas assignments:  *Provided further*, That to the extent a Federal agency provides this assistance, by contract, grant, or otherwise, it may accept and expend non-Federal funds in combination with these Federal funds to provide assistance for the authorized purpose, if the non-**\*2724** Federal entity requests such assistance and the non-Federal funds are provided on a reimbursable basis.

 SEC. 8111. Of the funds appropriated or otherwise made available in this Act, a reduction of $361,000,000 is hereby taken from title III, Procurement, from the following accounts in the specified amounts:

  "Missile Procurement, Army", $9,000,000;

  "Other Procurement, Army", $297,000,000;  and

  "Procurement, Marine Corps", $55,000,000:

*Provided*, That within 30 days of enactment of this Act, the Secretary of the Army and the Secretary of the Navy shall provide a report to the House Committee on Appropriations and the Senate Committee on Appropriations which describes the application of these reductions to programs, projects or activities within these accounts.

                                        (INCLUDING TRANSFER OF FUNDS)
 SEC. 8112. (a) THREE-YEAR EXTENSION.--During the current fiscal year and each of fiscal years 2007 and 2008, the Secretary of Defense may transfer not more than $20,000,000 of unobligated balances remaining in the expiring RDT&E, Army, appropriation account to a current Research, Development, Test and Evaluation, Army, appropriation account to be used only for the continuation of the Army Venture Capital Fund demonstration.

 (b) EXPIRING RDT&E, ARMY, ACCOUNT.--For purposes of this section, for any fiscal year, the expiring RDT&E, Army, account is the Research, Development, Test and Evaluation, Army, appropriation account that is then in its last fiscal year of availability for obligation before the account closes under section 1552 of title 31, United States Code.

 (c) ARMY VENTURE CAPITAL FUND DEMONSTRATION.--For purposes of this section, the Army Venture Capital Fund demonstration is the program for which funds were initially provided in section 8150 of the Department of Defense Appropriations Act, 2002 (division A of Public Law 107-117;  115 Stat. 2281), as extended and revised in section 8105 of Department of Defense Appropriations Act, 2003 (Public Law 107-248;  116 Stat. 1562).

 (d)  ADMINISTRATIVE PROVISIONS.--The provisos in section 8105 of the Department of Defense Appropriations Act, 2003 (Public Law 107-248;  116 Stat. 1562), shall apply with respect to amounts transferred under this section in the same manner as to amounts transferred under that section.

 SEC. 8113. Of the funds made available in this Act, not less than $76,100,000 shall be available to maintain an attrition reserve force of 18 B-52 aircraft, of which $3,900,000 shall be available from "Military Personnel, Air Force", $44,300,000 shall be available from "Operation and Maintenance, Air Force", and $27,900,000 shall be

available from "Aircraft Procurement, Air Force": *Provided*, That the Secretary of the Air Force shall maintain a total force of 94 B-52 aircraft, including 18 attrition reserve aircraft, during fiscal year 2006: *Provided further*, That the Secretary of Defense shall include in the Air Force budget request for fiscal year 2007 amounts sufficient to maintain a B-52 force totaling 94 aircraft.

 SEC. 8114. The Secretary of the Air Force is authorized, using funds available under the heading "Operation and Maintenance, Air Force", to complete a phased repair project, which repairs may include upgrades and additions, to the infrastructure of the **\*2725** operational ranges managed by the Air Force in Alaska: *Provided*, That the total cost of such phased projects shall not exceed $32,000,000.

 SEC. 8115. For purposes of section 612 of title 41, United States Code, any subdivision of appropriations made under the heading "Shipbuilding and Conversion, Navy" that is not closed at the time reimbursement is made shall be available to reimburse the Judgment Fund and shall be considered for the same purposes as any subdivision under the heading "Shipbuilding and Conversion, Navy" appropriations in the current fiscal year or any prior fiscal year.

(TRANSFER OF FUNDS)
 SEC. 8116. Upon enactment of this Act, the Secretary of Defense shall make the following transfer of funds: *Provided*, That funds so transferred shall be merged with and shall be available for the same purpose and for the same time period as the appropriation to which transferred: *Provided further*, That the amounts shall be transferred between the following appropriations in the amounts specified:

 From:

 Under the heading "Shipbuilding and Conversion, Navy, 2003/2007":

 For outfitting, post delivery, conversions, and first destination transportation, $3,300,000;

 Under the heading "Shipbuilding and Conversion, Navy, 2004/2008":

 For outfitting, post delivery, conversions, and first destination transportation, $6,100,000;

 To:

 Under the heading "Shipbuilding and Conversion, Navy, 2003/2007":

 SSGN, $3,300,000;

 Under the heading "Shipbuilding and Conversion, Navy, 2004/2008":

 SSGN, $6,100,000.

 SEC. 8117. (a) FINDINGS.--The Senate makes the following findings:

 (1) The Department of Defense Appropriations Act, 2004 (Public Law 108-87), the Department of Defense Appropriations Act, 2005 (Public Law 108-287), and the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005 (Public Law 109-13) each contain a sense of the Senate provision urging the President to provide in the annual budget requests of the President for a fiscal year under section 1105(a) of title 31, United States Code, an estimate of the cost of ongoing military operations in Iraq and Afghanistan in such fiscal year.

 (2) The budget for fiscal year 2006 submitted to Congress by the President on February 7, 2005, requests no funds for fiscal year 2006 for ongoing military operations in Iraq or Afghanistan.

 (3) According to the Congressional Research Service, there exists historical precedent for including the cost of ongoing military operations in the annual budget requests of the President following initial funding for such

Copr. ©  West 2006 No Claim to Orig. Govt. Works

operations by emergency or supplemental appropriations Acts, including--

**\*2726**

  (A) funds for Operation Noble Eagle, beginning in the budget request of President George W. Bush for fiscal year 2005;

  (B) funds for operations in Kosovo, beginning in the budget request of President George W. Bush for fiscal year 2001;

  (C) funds for operations in Bosnia, beginning in the budget request of President Clinton for fiscal year 1997;

  (D) funds for operations in Southwest Asia, beginning in the budget request of President Clinton for fiscal year 1997;

  (E) funds for operations in Vietnam, beginning in the budget request of President Johnson for fiscal year 1966; and

  (F) funds for World War II, beginning in the budget request of President Roosevelt for fiscal year 1943.

  (4) In section 1024(b) of the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005 (119 Stat. 252), the Senate requested that the President submit to Congress, not later than September 1, 2005, an amendment to the budget of the President for fiscal year 2006 setting forth detailed cost estimates for ongoing military operations overseas during such fiscal year.

  (5) The President has yet to submit such an amendment.

  (6) In February 2005, the Congressional Budget Office estimated that fiscal year 2006 cost of ongoing military operations in Iraq and Afghanistan could total $85,000,000,000.

 (b) SENSE OF THE SENATE.--It is the sense of the Senate that--

  (1) any request for funds for a fiscal year after fiscal year 2006 for an ongoing military operation overseas, including operations in Afghanistan and Iraq, should be included in the annual budget of the President for such fiscal year as submitted to Congress under section 1105(a) of title 31, United States Code;

  (2) the President should submit a budget request for fiscal year 2006 setting forth estimates for ongoing military operations overseas during such fiscal year;  and

  (3) any funds provided for a fiscal year for ongoing military operations overseas should be provided in appropriations Acts for such fiscal year through appropriations to specific accounts set forth in such appropriations Acts.

 SEC. 8118. Section 351(a)(3) of the Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005 (Public Law 108-375;  118 Stat. 1858) is amended by striking "July 31, 2004" and inserting "April 1, 2006".

 SEC. 8119. (a) None of the funds appropriated by this Act may be used to transfer research and development, acquisition, or other program authority relating to current tactical unmanned aerial vehicles (TUAVs) from the Army.

 (b) The Army shall retain responsibility for and operational control of the Extended Range Multi-Purpose (ERMP) Unmanned Aerial Vehicle (UAV) in order to support the Secretary of Defense in matters relating to the employment of unmanned aerial vehicles.

 SEC. 8120. (a) REPORT.--Not later than February 15, 2006, the Secretary of Defense shall submit to the congressional defense committees a report on the status of the review of, and actions **\*2727** taken to implement, the

Copr. ©  West 2006 No Claim to Orig. Govt. Works

recommendations of the Comptroller General of the United States in the report of the Comptroller General entitled "Military and Veterans Benefits:  Enhanced Services Could Improve Transition Assistance for Reserves and National Guard" (GAO 05-544).

 (b) PARTICULAR INFORMATION.--If the Secretary has determined in the course of the review described in subsection (a) not to implement any recommendation of the Comptroller General described in that subsection, the report under that subsection shall include a justification of such determination.

 SEC. 8121. (a) The Secretary of the Navy may, subject to the terms and conditions of the Secretary, donate the World War II-era marine railway located at the United States Naval Academy, Annapolis, Maryland, to the Richardson Maritime Heritage Center, Cambridge, Maryland.

 (b) The marine railway donated under subsection (a) may not be used for commercial purposes.

 SEC. 8122. The Secretary of Defense may present promotional materials, including a United States flag, to any member of an Active or Reserve component under the Secretary's jurisdiction who, as determined by the Secretary, participates in Operation Enduring Freedom or Operation Iraqi Freedom, along with other recognition items in conjunction with any week-long national observation and day of national celebration, if established by Presidential proclamation, for any such members returning from such operations.

 SEC. 8123. Section 8013 of the Department of Defense Appropriations Act, 1994  (Public Law 103-139;  107 Stat. 1440) is amended by striking "the report to the President from the Defense Base Closure and Realignment Commission, July 1991" and inserting "the reports to the President from the Defense Base Closure and Realignment Commission, July 1991 and July 1993".

<< 37 USCA §  1009 NOTE >>

 SEC. 8124. (a) INCREASE IN RATE OF BASIC PAY.--

 (1) INCREASE.--Footnote 2 to the table on Enlisted Members in section 601(b) of the National Defense Authorization Act for Fiscal Year 2004 (Public Law 108-136;  37 U.S.C. 1009 note) is amended by striking "or Master Chief Petty Officer of the Coast Guard" and inserting "Master Chief Petty Officer of the Coast Guard, or Senior Enlisted Advisor to the Chairman of the Joint Chiefs of Staff".

 (2) EFFECTIVE DATE.--The amendment made by paragraph (1) shall take effect on September 1, 2005, and shall apply with respect to months beginning on or after that date.

<< 37 USCA §  414 >>

 (b) PERSONAL MONEY ALLOWANCE.--Section 414(c) of title 37, United States Code, is amended by striking "or the Master Chief Petty Officer of the Coast Guard" and inserting "the Master Chief Petty Officer of the Coast Guard, or the Senior Enlisted Advisor to the Chairman of the Joint Chiefs of Staff".

 SEC. 8125. Notwithstanding any other provision of this Act, to reflect savings from revised economic assumptions the total amount appropriated in title II of this Act is hereby reduced by $195,260,000, the total amount appropriated in title III of this Act is hereby reduced by $263,875,000, and the total amount appropriated in title IV of this Act is hereby reduced by $312,165,000: *Provided*, That the Secretary of Defense shall allocate this reduction proportionally to each budget activity, activity group, subactivity group, and each program, project, and activity, within each appropriation account.

**\*2728**

<< 36 USCA §  101 NOTE >>

 SEC. 8126. SUPPORT FOR YOUTH ORGANIZATIONS. (a) SHORT TITLE.--This Act may be cited as the

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                 Page 38
 PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

"Support Our Scouts Act of 2005".

<< 5 USCA §  301 NOTE >>

 (b) SUPPORT FOR YOUTH ORGANIZATIONS.--

 (1) DEFINITIONS.--In this subsection--

  (A) the term "Federal agency" means each department, agency, instrumentality, or other entity of the United States Government;  and

  (B) the term "youth organization"--

  (i) means any organization that is designated by the President as an organization that is primarily intended to--

       (I) serve individuals under the age of 21 years;

       (II) provide training in citizenship, leadership, physical fitness, service to community, and teamwork;  and

       (III) promote the development of character and ethical and moral values; and

  (ii) shall include--

       (I) the Boy Scouts of America;

       (II) the Girl Scouts of the United States of America;

       (III) the Boys Clubs of America;

       (IV) the Girls Clubs of America;

       (V) the Young Men's Christian Association;

       (VI) the Young Women's Christian Association;

       (VII) the Civil Air Patrol;

       (VIII) the United States Olympic Committee;

       (IX) the Special Olympics;

       (X) Campfire USA;

       (XI) the Young Marines;

       (XII) the Naval Sea Cadets Corps;

       (XIII) 4-H Clubs;

       (XIV) the Police Athletic League;

       (XV) Big Brothers--Big Sisters of America;  and

       (XVI) National Guard Youth Challenge.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(2) IN GENERAL.--

(A) SUPPORT FOR YOUTH ORGANIZATIONS.--

(i) SUPPORT.--No Federal law (including any rule, regulation, directive, instruction, or order) shall be construed to limit any Federal agency from providing any form of support for a youth organization (including the Boy Scouts of America or any group officially affiliated with the Boy Scouts of America) that would result in that Federal agency providing less support to that youth organization (or any similar organization chartered under the chapter of title 36, United States Code, relating to that youth organization) than was provided during the preceding fiscal year. This clause shall be subject to the availability of appropriations.

(ii) YOUTH ORGANIZATIONS THAT CEASE TO EXIST.--Clause (i) shall not apply to any youth organization that ceases to exist.

(iii) WAIVERS.--The head of a Federal agency may waive the application of clause (i) to any youth **\*2729** organization with respect to each conviction or investigation described under subclause (I) or (II) for a period of not more than 2 fiscal years if--

(I) any senior officer (including any member of the board of directors) of the youth organization is convicted of a criminal offense relating to the official duties of that officer or the youth organization is convicted of a criminal offense;  or

(II) the youth organization is the subject of a criminal investigation relating to fraudulent use or waste of Federal funds.

(B) TYPES OF SUPPORT.--Support described under this paragraph shall include--

(i) holding meetings, camping events, or other activities on Federal property;

(ii) hosting any official event of such organization;

(iii) loaning equipment;  and

(iv) providing personnel services and logistical support.

(c) SUPPORT FOR SCOUT JAMBOREES.--

<< 10 USCA § 2554 NOTE >>

(1) FINDINGS.--Congress makes the following findings:

(A) Section 8 of article I of the Constitution of the United States commits exclusively to Congress the powers to raise and support armies, provide and maintain a Navy, and make rules for the government and regulation of the land and naval forces.

(B) Under those powers conferred by section 8 of article I of the Constitution of the United States to provide, support, and maintain the Armed Forces, it lies within the discretion of Congress to provide opportunities to train the Armed Forces.

(C) The primary purpose of the Armed Forces is to defend our national security and prepare for combat should the need arise.

(D) One of the most critical elements in defending the Nation and preparing for combat is training in conditions that simulate the preparation, logistics, and leadership required for defense and combat.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(E) Support for youth organization events simulates the preparation, logistics, and leadership required for defending our national security and preparing for combat.

(F) For example, Boy Scouts of America's National Scout Jamboree is a unique training event for the Armed Forces, as it requires the construction, maintenance, and disassembly of a "tent city" capable of supporting tens of thousands of people for a week or longer.  Camporees at the United States Military Academy for Girl Scouts and Boy Scouts provide similar training opportunities on a smaller scale.

<< 10 USCA § 2554 >>

(2) SUPPORT.--Section 2554 of title 10, United States Code, is amended by adding at the end the following:

"(i)(1) The Secretary of Defense shall provide at least the same level of support under this section for a national or world Boy Scout Jamboree as was provided under this section for the preceding national or world Boy Scout Jamboree.

"(2) The Secretary of Defense may waive paragraph (1), if the Secretary--

**\*2730**
"(A) determines that providing the support subject to paragraph (1) would be detrimental to the national security of the United States;  and

"(B) reports such a determination to the Congress in a timely manner, and before such support is not provided.".

(d)  EQUAL  ACCESS  FOR  YOUTH  ORGANIZATIONS.--Section 109 of the Housing and Community Development Act of 1974 (42 U.S.C. 5309) is amended--

<< 42 USCA § 5309 >>

(1) in the first sentence of subsection (b) by inserting "or (e)" after "subsection (a)";  and

<< 42 USCA § 5309 >>

(2) by adding at the end the following:

"(e) EQUAL ACCESS.--

"(1) DEFINITION.--In this subsection, the term 'youth organization' means any organization described under part B of subtitle II of title 36, United States Code, that is intended to serve individuals under the age of 21 years.

"(2) IN GENERAL.--No State or unit of general local government that has a designated open forum, limited public forum, or nonpublic forum and that is a recipient of assistance under this chapter shall deny equal access or a fair opportunity to meet to, or discriminate against, any youth organization, including the Boy Scouts of America or any group officially affiliated with the Boy Scouts of America, that wishes to conduct a meeting or otherwise participate in that designated open forum, limited public forum, or nonpublic forum.".

<< 10 USCA prec. § 2601 NOTE >>

SEC. 8127. REGULATIONS TO CLARIFY GIFT ACCEPTANCE POLICY FOR SERVICE MEMBERS AND THEIR FAMILIES. (a) REGULATIONS.--The Secretary of Defense shall prescribe regulations to provide that, subject to such limitations as may be specified in such regulations, members of the Armed Forces described in subsection (c), and the family members of such a member, may accept gifts from non-profit organizations, private parties, and other sources outside the Department of Defense, other than foreign governments and their agents.  Such regulations shall apply uniformly to the Army, Navy, Air Force, and Marine Corps, and, to the maximum extent feasible, to the Coast Guard, and shall apply uniformly to the active and reserve components.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 (b) AUTHORITY.--A member of the Armed Forces described in subsection (c) may accept gifts as provided in the regulations authorized in subsection (a), notwithstanding section 7353 of title 5, United States Code.

 (c) COVERED MEMBERS.--A member of the Armed Forces is described in this subsection in the case of a member who is on active duty and who on or after September 11, 2001, and while on active duty, incurred an injury or illness--

 (1) as described in section 1413a(e)(2) of title 10, United States Code;  or

 (2) in an operation or area designated as a combat operation or a combat zone, respectively, by the Secretary of Defense in accordance with the regulations prescribed under subsection (a).

 (d) DEADLINE FOR REGULATIONS.--Regulations under subsection (a) shall be prescribed not later than 90 days after the date of the enactment of this Act.

**\*2731**
 (e) RETROACTIVE APPLICABILITY OF REGULATIONS.--Regulations under subsection  (a) shall, to the extent provided in such regulations, also apply to the acceptance of gifts during the period beginning on September 11, 2001, and ending on the date on which such regulations go into effect.

<< 15 USCA §  720d >>

 SEC. 8128. Section 106(g) of the Alaska Natural Gas Pipeline Act (15 U.S.C. 720d) is amended be striking "later" and inserting "earlier".

 SEC. 8129. The present incumbent Attending Physician at the U.S. Capitol shall be continued on active duty until ten years after the enactment of this Act.

TITLE IX
ADDITIONAL APPROPRIATIONS
MILITARY PERSONNEL
Military Personnel, Army
For an additional amount for "Military Personnel, Army", $4,713,245,000.

Military Personnel, Navy
For an additional amount for "Military Personnel, Navy", $144,000,000.

Military Personnel, Marine Corps
For an additional amount for "Military Personnel, Marine Corps", $455,000,000.

Military Personnel, Air Force
For an additional amount for "Military Personnel, Air Force", $508,000,000.

Reserve Personnel, Army
For an additional amount for "Reserve Personnel, Army", $138,755,000.

Reserve Personnel, Navy
For an additional amount for "Reserve Personnel, Navy", $10,000,000.

National Guard Personnel, Army
For an additional amount for "National Guard Personnel, Army", $234,400,000.

National Guard Personnel, Air Force
For an additional amount for "National Guard Personnel, Air Force",  $3,200,000.

PL 109-148, 2005 HR 2863                                                                Page 42
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

**\*2732**

OPERATION AND MAINTENANCE
Operation and Maintenance, Army
For an additional amount for "Operation and Maintenance, Army",  $21,348,886,000.

Operation and Maintenance, Navy
For an additional amount for "Operation and Maintenance, Navy",  $1,810,500,000.

Operation and Maintenance, Marine Corps
For an additional amount for "Operation and Maintenance, Marine Corps",  $1,833,126,000.

Operation and Maintenance, Air Force
For an additional amount for "Operation and Maintenance, Air Force",  $2,483,900,000.

Operation and Maintenance, Defense-Wide
 For an additional amount for "Operation and Maintenance, Defense-Wide",  $805,000,000, of which up to $195,000,000, to remain available until expended, may be used for payments to reimburse Pakistan, Jordan, and other key cooperating nations, for logistical, military, and other support provided, or to be provided, to United States military operations, notwithstanding any other provision of law:  *Provided*, That such payments may be made in such amounts as the Secretary of Defense, with the concurrence of the Secretary of State, and in consultation with the Director of the Office of Management and Budget, may determine, in his discretion, based on documentation determined by the Secretary of Defense to adequately account for the support provided, and such determination is final and conclusive upon the accounting officers of the United States, and 15 days following notification to the appropriate congressional committees:  *Provided further*, That the Secretary of Defense shall provide quarterly reports to the congressional defense committees on the use of funds provided in this paragraph.

Operation and Maintenance, Army Reserve
For an additional amount for "Operation and Maintenance, Army Reserve",  $48,200,000.

Operation and Maintenance, Navy Reserve
For an additional amount for "Operation and Maintenance, Navy Reserve",  $6,400,000.

Operation and Maintenance, Marine Corps Reserve
For an additional amount for "Operation and Maintenance, Marine Corps Reserve",  $27,950,000.

**\*2733**

Operation and Maintenance, Air Force Reserve
For an additional amount for "Operation and Maintenance, Air Force Reserve",  $5,000,000.

Operation and Maintenance, Army National Guard
For an additional amount for "Operation and Maintenance, Army National Guard",  $183,000,000.

Operation and Maintenance, Air National Guard
For an additional amount for "Operation and Maintenance, Air National Guard",  $7,200,000.

Iraq Freedom Fund
(INCLUDING TRANSFER OF FUNDS)
 For an additional amount for "Iraq Freedom Fund",  $4,658,686,000, to remain available for transfer until September 30, 2007, only to support operations in Iraq or Afghanistan and classified activities:  *Provided*, That the Secretary of Defense may transfer the funds provided herein to appropriations for military personnel;   operation and maintenance;  Overseas Humanitarian, Disaster, and Civic Aid;  procurement;  research, development, test and evaluation;   and working capital funds:  *Provided further*, That of the amounts provided under this heading, $3,048,686,000 shall only be for classified programs, described in further detail in the classified annex accompanying this Act:  *Provided further*, That up to $100,000,000 shall be available for the Department of

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863
PL 109-148, December 30, 2005, 119 Stat 2680
(Cite as: 119 Stat 2680)

Homeland Security, "United States Coast Guard, Operating Expenses": *Provided further*, That not less than $1,360,000,000 shall be available for the Joint IED Defeat Task Force: *Provided further*, That funds transferred shall be merged with and be available for the same purposes and for the same time period as the appropriation or fund to which transferred: *Provided further*, That this transfer authority is in addition to any other transfer authority available to the Department of Defense: *Provided further*, That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation: *Provided further*, That the Secretary of Defense shall, not fewer than 5 days prior to making transfers from this appropriation, notify the congressional defense committees in writing of the details of any such transfer: *Provided further*, That the Secretary shall submit a report no later than 30 days after the end of each fiscal quarter to the congressional defense committees summarizing the details of the transfer of funds from this appropriation.

## PROCUREMENT
### Aircraft Procurement, Army
 For an additional amount for "Aircraft Procurement, Army", $232,100,000, to remain available until September 30, 2008.

**\*2734**

### Missile Procurement, Army
 For an additional amount for "Missile Procurement, Army", $55,000,000, to remain available until September 30, 2008.

### Procurement of Weapons and Tracked Combat Vehicles, Army
 For an additional amount for "Procurement of Weapons and Tracked Combat Vehicles, Army", $860,190,000, to remain available until September 30, 2008.

### Procurement of Ammunition, Army
 For an additional amount for "Procurement of Ammunition, Army", $273,000,000, to remain available until September 30, 2008.

### Other Procurement, Army
 For an additional amount for "Other Procurement, Army", $3,174,900,000, to remain available until September 30, 2008.

### Aircraft Procurement, Navy
 For an additional amount for "Aircraft Procurement, Navy", $138,837,000, to remain available until September 30, 2008.

### Weapons Procurement, Navy
 For an additional amount for "Weapons Procurement, Navy", $116,900,000, to remain available until September 30, 2008.

### Procurement of Ammunition, Navy and Marine Corps
 For an additional amount for "Procurement of Ammunition, Navy and Marine Corps", $38,885,000, to remain available until September 30, 2008.

### Other Procurement, Navy
 For an additional amount for "Other Procurement, Navy", $49,100,000, to remain available until September 30, 2008.

### Procurement, Marine Corps
 For an additional amount for "Procurement, Marine Corps", $1,710,145,000, to remain available until September 30, 2008.

### Aircraft Procurement, Air Force

Copr. © West 2006 No Claim to Orig. Govt. Works

 For an additional amount for "Aircraft Procurement, Air Force", $115,300,000, to remain available until September 30, 2008.

### Missile Procurement, Air Force

 For an additional amount for "Missile Procurement, Air Force", $17,000,000, to remain available until September 30, 2008.

**\*2735**
### Other Procurement, Air Force

 For an additional amount for "Other Procurement, Air Force", $17,500,000, to remain available until September 30, 2008.

### Procurement, Defense-Wide

 For an additional amount for "Procurement, Defense-Wide", $182,075,000, to remain available until September 30, 2008.

### National Guard and Reserve Equipment

 For an additional amount for "National Guard and Reserve Equipment",  $1,000,000,000, to remain available until September 30, 2008.

## RESEARCH, DEVELOPMENT, TEST AND EVALUATION
### Research, Development, Test and Evaluation, Army

 For an additional amount for "Research, Development, Test and Evaluation, Army", $13,100,000, to remain available until September, 30, 2007.

### Research, Development, Test and Evaluation, Air Force

 For an additional amount for "Research, Development, Test and Evaluation, Air Force", $12,500,000, to remain available until September, 30, 2007.

### Research, Development, Test and Evaluation, Defense-Wide

 For an additional amount for "Research, Development, Test and Evaluation, Defense-Wide", $25,000,000, to remain available until September 30, 2007.

## REVOLVING AND MANAGEMENT FUNDS
### Defense Working Capital Funds

 For an additional amount for "Defense Working Capital Funds", $2,516,400,000.

## OTHER DEPARTMENT OF DEFENSE PROGRAMS
### Drug Interdiction and Counter-Drug Activities, Defense

 For an additional amount for "Drug Interdiction and Counter-Drug Activities, Defense", $27,620,000.

## GENERAL PROVISIONS

 SEC. 9001. Appropriations provided in this title are available for obligation until September 30, 2006, unless otherwise so provided in this title.

 SEC. 9002. Notwithstanding any other provision of law or of this Act, funds made available in this title are in addition to amounts provided elsewhere in this Act.

**\*2736**
### (TRANSFER OF FUNDS)

 SEC. 9003. Upon his determination that such action is necessary in the national interest, the Secretary of Defense may transfer between appropriations up to $2,500,000,000 of the funds made available to the Department of Defense in this title:  *Provided*, That the Secretary shall notify the Congress promptly of each transfer made pursuant to the authority in this section:  *Provided further*, That the authority provided in this section is in addition to any other transfer authority available to the Department of Defense and is subject to the same terms and conditions as the

Copr. ©  West 2006 No Claim to Orig. Govt. Works

authority provided in section 8005 of this Act.

 SEC. 9004. Funds appropriated in this title, or made available by the transfer of funds in or pursuant to this title, for intelligence activities are deemed to be specifically authorized by the Congress for purposes of section 504 of the National Security Act of 1947 (50 U.S.C. 414).

 SEC. 9005. None of the funds provided in this title may be used to finance programs or activities denied by Congress in fiscal years 2005 or 2006 appropriations to the Department of Defense or to initiate a procurement or research, development, test and evaluation new start program without prior written notification to the congressional defense committees.

 SEC. 9006. Notwithstanding any other provision of law, of the funds made available in this title to the Department of Defense for operation and maintenance, not to exceed $500,000,000 may be used by the Secretary of Defense, with the concurrence of the Secretary of State, to train, equip and provide related assistance only to military or security forces of Iraq and Afghanistan to enhance their capability to combat terrorism and to support United States military operations in Iraq and Afghanistan:   *Provided*, That such assistance may include the provision of equipment, supplies, services, training, and funding:   *Provided further*, That the authority to provide assistance under this section is in addition to any other authority to provide assistance to foreign nations:   *Provided further*, That the Secretary of Defense shall notify the congressional defense committees, the Committee on International Relations of the House of Representatives, and the Committee on Foreign Relations of the Senate not less than 15 days before providing assistance under the authority of this section.

 SEC. 9007. (a) From funds made available in this title to the Department of Defense, not to exceed $500,000,000 may be used, notwithstanding any other provision of law, to fund the Commander's Emergency Response Program, for the purpose of enabling military commanders in Iraq to respond to urgent humanitarian relief and reconstruction requirements within their areas of responsibility by carrying out programs that will immediately assist the Iraqi people, and to fund a similar program to assist the people of Afghanistan.

 (b) QUARTERLY REPORTS.--Not later than 15 days after the end of each fiscal year quarter (beginning with the first quarter of fiscal year 2006), the Secretary of Defense shall submit to the congressional defense committees a report regarding the source of funds and the allocation and use of funds during that quarter that were made available pursuant to the authority provided in this section or under any other provision of law for the purposes of the programs under subsection (a).

**\*2737**
 SEC. 9008. Amounts provided in this title for operations in Iraq and Afghanistan may be used by the Department of Defense for the purchase of up to 20 heavy and light armored vehicles for force protection purposes, notwithstanding price or other limitations specified elsewhere in this Act, or any other provision of law:   *Provided*, That the Secretary of Defense shall submit a report in writing no later than 30 days after the end of each fiscal quarter notifying the congressional defense committees of any purchase described in this section, including the cost, purposes, and quantities of vehicles purchased.

 SEC. 9009. During the current fiscal year, funds available to the Department of Defense for operation and maintenance may be used, notwithstanding any other provision of law, to provide supplies, services, transportation, including airlift and sealift, and other logistical support to coalition forces supporting military and stability operations in Iraq and Afghanistan: *Provided*, That the Secretary of Defense shall provide quarterly reports to the congressional defense committees regarding support provided under this section.

 SEC. 9010. (a) Not later than 60 days after the date of the enactment of this Act and every 90 days thereafter through the end of fiscal year 2006, the Secretary of Defense shall set forth in a report to Congress a comprehensive set of performance indicators and measures for progress toward military and political stability in Iraq.

 (b) The report shall include performance standards and goals for security, economic, and security force training objectives in Iraq together with a notional timetable for achieving these goals.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                      Page 46
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

(c) In specific, the report requires, at a minimum, the following:

(1) With respect to stability and security in Iraq, the following:

(A) Key measures of political stability, including the important political milestones that must be achieved over the next several years.

(B) The primary indicators of a stable security environment in Iraq, such as number of engagements per day, numbers of trained Iraqi forces, and trends relating to numbers and types of ethnic and religious-based hostile encounters.

(C) An assessment of the estimated strength of the insurgency in Iraq and the extent to which it is composed of non-Iraqi fighters.

(D) A description of all militias operating in Iraq, including the number, size, equipment strength, military effectiveness, sources of support, legal status, and efforts to disarm or reintegrate each militia.

(E) Key indicators of economic activity that should be considered the most important for determining the prospects of stability in Iraq, including--

(i) unemployment levels;

(ii) electricity, water, and oil production rates; and

(iii) hunger and poverty levels.

(F) The criteria the Administration will use to determine when it is safe to begin withdrawing United States forces from Iraq.

(2) With respect to the training and performance of security forces in Iraq, the following:

**\*2738**
(A) The training provided Iraqi military and other Ministry of Defense forces and the equipment used by such forces.

(B) Key criteria for assessing the capabilities and readiness of the Iraqi military and other Ministry of Defense forces, goals for achieving certain capability and readiness levels (as well as for recruiting, training, and equipping these forces), and the milestones and notional timetable for achieving these goals.

(C) The operational readiness status of the Iraqi military forces, including the type, number, size, and organizational structure of Iraqi battalions that are--

(i) capable of conducting counterinsurgency operations independently;

(ii) capable of conducting counterinsurgency operations with the support of United States or coalition forces; or

(iii) not ready to conduct counterinsurgency operations.

(D) The rates of absenteeism in the Iraqi military forces and the extent to which insurgents have infiltrated such forces.

(E) The training provided Iraqi police and other Ministry of Interior forces and the equipment used by such forces.

(F) Key criteria for assessing the capabilities and readiness of the Iraqi police and other Ministry of Interior forces, goals for achieving certain capability and readiness levels (as well as for recruiting, training, and equipping), and the

Copr. © West 2006 No Claim to Orig. Govt. Works

milestones and notional timetable for achieving these goals, including--

   (i) the number of police recruits that have received classroom training and the duration of such instruction;

   (ii) the number of veteran police officers who have received classroom instruction and the duration of such instruction;

   (iii) the number of police candidates screened by the Iraqi Police Screening Service, the number of candidates derived from other entry procedures, and the success rates of those groups of candidates;

   (iv) the number of Iraqi police forces who have received field training by international police trainers and the duration of such instruction;  and

   (v) attrition rates and measures of absenteeism and infiltration by insurgents.

   (G) The estimated total number of Iraqi battalions needed for the Iraqi security forces to perform duties now being undertaken by coalition forces, including defending the borders of Iraq and providing adequate levels of law and order throughout Iraq.

   (H) The effectiveness of the Iraqi military and police officer cadres and the chain of command.

   (I) The number of United States and coalition advisors needed to support the Iraqi security forces and associated ministries.

**\*2739**
   (J) An assessment, in a classified annex if necessary, of United States military requirements, including planned force rotations, through the end of calendar year 2006.

 SEC. 9011. Supervision and administration costs associated with a construction project funded with appropriations available for operation and maintenance, and executed in direct support of the Global War on Terrorism only in Iraq and Afghanistan, may be obligated at the time a construction contract is awarded: *Provided*, That for the purpose of this section, supervision and administration costs include all in-house Government costs.

 SEC. 9012. Amounts appropriated or otherwise made available in this title are designated as making appropriations for contingency operations related to the global war on terrorism pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

TITLE X--MATTERS RELATING TO DETAINEES
<< 42 USCA §  2000dd NOTE >>

SEC. 1001. SHORT TITLE.

 This title may be cited as the "Detainee Treatment Act of 2005".

<< 10 USCA §  801 NOTE >>

SEC. 1002. UNIFORM STANDARDS FOR THE INTERROGATION OF PERSONS UNDER THE DETENTION OF THE DEPARTMENT OF DEFENSE.

 (a) IN GENERAL.--No person in the custody or under the effective control of the Department of Defense or under detention in a Department of Defense facility shall be subject to any treatment or technique of interrogation not authorized by and listed in the United States Army Field Manual on Intelligence Interrogation.

 (b) APPLICABILITY.--Subsection (a) shall not apply with respect to any person in the custody or under the effective control of the Department of Defense pursuant to a criminal law or immigration law of the United States.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 (c) CONSTRUCTION.--Nothing in this section shall be construed to affect the rights under the United States Constitution of any person in the custody or under the physical jurisdiction of the United States.

<< 42 USCA §  2000dd >>

SEC. 1003. PROHIBITION ON CRUEL, INHUMAN, OR DEGRADING TREATMENT OR PUNISHMENT OF PERSONS UNDER CUSTODY OR CONTROL OF THE UNITED STATES GOVERNMENT.

 (a) IN GENERAL.--No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.

 (b) CONSTRUCTIO.n--Nothing in this section shall be construed to impose any geographical limitation on the applicability of the prohibition against cruel, inhuman, or degrading treatment or punishment under this section.

 (c) LIMITATION ON SUPERSEDURE.--The provisions of this section shall not be superseded, except by a provision of law enacted after the date of the enactment of this Act which specifically repeals, modifies, or supersedes the provisions of this section.

**\*2740**
 (d) CRUEL, INHUMAN, OR DEGRADING TREATMENT OR PUNISHMENT DEFINED.--In this section, the term "cruel, inhuman, or degrading treatment or punishment" means the cruel, unusual, and inhumane treatment or punishment prohibited by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, as defined in the United States Reservations, Declarations and Understandings to the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment done at New York, December 10, 1984.

<< 42 USCA §  2000dd NOTE >>

SEC. 1004. PROTECTION OF UNITED STATES GOVERNMENT PERSONNEL ENGAGED IN AUTHORIZED INTERROGATIONS.

 (a) PROTECTION OF UNITED STATES GOVERNMENT PERSONNEL.--In any civil action or criminal prosecution against an officer, employee, member of the Armed Forces, or other agent of the United States Government who is a United States person, arising out of the officer, employee, member of the Armed Forces, or other agent's engaging in specific operational practices, that involve detention and interrogation of aliens who the President or his designees have determined are believed to be engaged in or associated with international terrorist activity that poses a serious, continuing threat to the United States, its interests, or its allies, and that were officially authorized and determined to be lawful at the time that they were conducted, it shall be a defense that such officer, employee, member of the Armed Forces, or other agent did not know that the practices were unlawful and a person of ordinary sense and understanding would not know the practices were unlawful.  Good faith reliance on advice of counsel should be an important factor, among others, to consider in assessing whether a person of ordinary sense and understanding would have known the practices to be unlawful.  Nothing in this section shall be construed to limit or extinguish any defense or protection otherwise available to any person or entity from suit, civil or criminal liability, or damages, or to provide immunity from prosecution for any criminal offense by the proper authorities.

 (b) COUNSEL.--The United States Government may provide or employ counsel, and pay counsel fees, court costs, bail, and other expenses incident to the representation of an officer, employee, member of the Armed Forces, or other agent described in subsection (a), with respect to any civil action or criminal prosecution arising out of practices described in that subsection, under the same conditions, and to the same extent, to which such services and payments are authorized under section 1037 of title 10, United States Code.

<< 10 USCA §  801 NOTE >>

Copr. ©  West 2006 No Claim to Orig. Govt. Works

SEC. 1005. PROCEDURES FOR STATUS REVIEW OF DETAINEES OUTSIDE THE UNITED STATES.

 (a) SUBMITTAL OF PROCEDURES FOR STATUS REVIEW OF DETAINEES AT GUANTANAMO BAY, CUBA, AND IN AFGHANISTAN AND IRAQ.--

 (1) IN GENERAL.--Not later than 180 days after the date of the enactment of this Act, the Secretary of Defense shall submit to the Committee on Armed Services and the Committee on the Judiciary of the Senate and the Committee on Armed Services and the Committee on the Judiciary of the House of Representatives a report setting forth--

 (A) the procedures of the Combatant Status Review Tribunals and the Administrative Review Boards established by direction of the Secretary of Defense that are **\*2741** in operation at Guantanamo Bay, Cuba, for determining the status of the detainees held at Guantanamo Bay or to provide an annual review to determine the need to continue to detain an alien who is a detainee;  and

 (B) the procedures in operation in Afghanistan and Iraq for a determination of the status of aliens detained in the custody or under the physical control of the Department of Defense in those countries.

 (2) DESIGNATED CIVILIAN OFFICIAL.--The procedures submitted to Congress pursuant to paragraph (1)(A) shall ensure that the official of the Department of Defense who is designated by the President or Secretary of Defense to be the final review authority within the Department of Defense with respect to decisions of any such tribunal or board (referred to as the "Designated Civilian Official") shall be a civilian officer of the Department of Defense holding an office to which appointments are required by law to be made by the President, by and with the advice and consent of the Senate.

 (3) CONSIDERATION OF NEW EVIDENCE.--The procedures submitted under paragraph  (1)(A) shall provide for periodic review of any new evidence that may become available relating to the enemy combatant status of a detainee.

 (b) CONSIDERATION OF STATEMENTS DERIVED WITH COERCION.--

 (1) ASSESSMENT.--The procedures submitted to Congress pursuant to subsection  (a)(1)(A) shall ensure that a Combatant Status Review Tribunal or Administrative Review Board, or any similar or successor administrative tribunal or board, in making a determination of status or disposition of any detainee under such procedures, shall, to the extent practicable, assess--

 (A) whether any statement derived from or relating to such detainee was obtained as a result of coercion;  and

 (B) the probative value (if any) of any such statement.

 (2) APPLICABILITY.--Paragraph (1) applies with respect to any proceeding beginning on or after the date of the enactment of this Act.

 (c) REPORT ON MODIFICATION OF PROCEDURES.--The Secretary of Defense shall submit to the committees specified in subsection (a)(1) a report on any modification of the procedures submitted under subsection (a).  Any such report shall be submitted not later than 60 days before the date on which such modification goes into effect.

 (d) ANNUAL REPORT.--

 (1) REPORT REQUIRED.--The Secretary of Defense shall submit to Congress an annual report on the annual review process for aliens in the custody of the Department of Defense outside the United States.  Each such report shall be submitted in unclassified form, with a classified annex, if necessary.  The report shall be submitted not later than December 31 each year.

 (2) ELEMENTS OF REPORT.--Each such report shall include the following with respect to the year covered by

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                    Page 50
 PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

the report:

  (A) The number of detainees whose status was reviewed.

  (B) The procedures used at each location.

 (e) JUDICIAL REVIEW OF DETENTION OF ENEMY COMBATANTS.--

**\*2742**

<< 28 USCA §  2241 >>

  (1) IN GENERAL.--Section 2241 of title 28, United States Code, is amended by adding at the end the following:

 "(e) Except as provided in section 1005 of the Detainee Treatment Act of 2005, no court, justice, or judge shall have jurisdiction to hear or consider--

  "(1) an application for a writ of habeas corpus filed by or on behalf of an alien detained by the Department of Defense at Guantanamo Bay, Cuba;  or

  "(2) any other action against the United States or its agents relating to any aspect of the detention by the Department of Defense of an alien at Guantanamo Bay, Cuba, who--

   "(A) is currently in military custody;  or

   "(B) has been determined by the United States Court of Appeals for the District of Columbia Circuit in accordance with the procedures set forth in section 1005(e) of the Detainee Treatment Act of 2005 to have been properly detained as an enemy combatant.".

 (2) REVIEW OF DECISIONS OF COMBATANT STATUS REVIEW TRIBUNALS OF PROPRIETY OF DETENTION.--

  (A) IN GENERAL.--Subject to subparagraphs (B), (C), and (D), the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant.

  (B) LIMITATION ON CLAIMS.--The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit under this paragraph shall be limited to claims brought by or on behalf of an alien--

   (i) who is, at the time a request for review by such court is filed, detained by the Department of Defense at Guantanamo Bay, Cuba;  and

   (ii) for whom a Combatant Status Review Tribunal has been conducted, pursuant to applicable procedures specified by the Secretary of Defense.

  (C) SCOPE OF REVIEW.--The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit on any claims with respect to an alien under this paragraph shall be limited to the consideration of--

   (i) whether the status determination of the Combatant Status Review Tribunal with regard to such alien was consistent with the standards and procedures specified by the Secretary of Defense for Combatant Status Review Tribunals (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence and allowing a rebuttable presumption in favor of the Government's evidence);  and

   (ii) to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(D) TERMINATION ON RELEASE FROM CUSTODY.--The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit with respect to the claims of an alien under this paragraph shall cease upon the **\*2743** release of such alien from the custody of the Department of Defense.

(3) REVIEW OF FINAL DECISIONS OF MILITARY COMMISSIONS.--

(A) IN GENERAL.--Subject to subparagraphs (B), (C), and (D), the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of any final decision rendered pursuant to Military Commission Order No. 1, dated August 31, 2005 (or any successor military order).

(B) GRANT OF REVIEW.--Review under this paragraph--

(i) with respect to a capital case or a case in which the alien was sentenced to a term of imprisonment of 10 years or more, shall be as of right;  or

(ii) with respect to any other case, shall be at the discretion of the United States Court of Appeals for the District of Columbia Circuit.

(C) LIMITATION ON APPEALS.--The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit under this paragraph shall be limited to an appeal brought by or on behalf of an alien--

(i) who was, at the time of the proceedings pursuant to the military order referred to in subparagraph (A), detained by the Department of Defense at Guantanamo Bay, Cuba;  and

(ii) for whom a final decision has been rendered pursuant to such military order.

(D) SCOPE OF REVIEW.--The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit on an appeal of a final decision with respect to an alien under this paragraph shall be limited to the consideration of--

(i) whether the final decision was consistent with the standards and procedures specified in the military order referred to in subparagraph (A); and

(ii) to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to reach the final decision is consistent with the Constitution and laws of the United States.

(4) RESPONDENT.--The Secretary of Defense shall be the named respondent in any appeal to the United States Court of Appeals for the District of Columbia Circuit under this subsection.

(f) CONSTRUCTION.--Nothing in this section shall be construed to confer any constitutional right on an alien detained as an enemy combatant outside the United States.

(g) UNITED STATES DEFINED.--For purposes of this section, the term "United States", when used in a geographic sense, is as defined in section 101(a)(38) of the Immigration and Nationality Act and, in particular, does not include the United States Naval Station, Guantanamo Bay, Cuba.

(h) EFFECTIVE DATE.--

(1) IN GENERAL.--This section shall take effect on the date of the enactment of this Act.

(2) REVIEW OF COMBATANT STATUS TRIBUNAL AND MILITARY COMMISSION DECISIONS.-- Paragraphs (2) and (3) of subsection **\*2744** (e) shall apply with respect to any claim whose review is governed by one of such paragraphs and that is pending on or after the date of the enactment of this Act.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

<< 10 USCA § 801 NOTE >>

SEC. 1006. TRAINING OF IRAQI FORCES REGARDING TREATMENT OF DETAINEES.

 (a) REQUIRED POLICIES.--

 (1) IN GENERAL.--The Secretary of Defense shall ensure that policies are prescribed regarding procedures for military and civilian personnel of the Department of Defense and contractor personnel of the Department of Defense in Iraq that are intended to ensure that members of the Armed Forces, and all persons acting on behalf of the Armed Forces or within facilities of the Armed Forces, ensure that all personnel of Iraqi military forces who are trained by Department of Defense personnel and contractor personnel of the Department of Defense receive training regarding the international obligations and laws applicable to the humane detention of detainees, including protections afforded under the Geneva Conventions and the Convention Against Torture.

 (2) ACKNOWLEDGMENT OF TRAINING.--The Secretary shall ensure that, for all personnel of the Iraqi Security Forces who are provided training referred to in paragraph (1), there is documented acknowledgment of such training having been provided.

 (3) DEADLINE FOR POLICIES TO BE PRESCRIBED.--The policies required by paragraph (1) shall be prescribed not later than 180 days after the date of the enactment of this Act.

 (b) ARMY FIELD MANUAL.--

 (1) TRANSLATION.--The Secretary of Defense shall provide for the United States Army Field Manual on Intelligence Interrogation to be translated into arabic and any other language the Secretary determines appropriate for use by members of the Iraqi military forces.

 (2) DISTRIBUTION.--The Secretary of Defense shall provide for such manual, as translated, to be provided to each unit of the Iraqi military forces trained by Department of Defense personnel or contractor personnel of the Department of Defense.

 (c) TRANSMITTAL OF REGULATIONS.--Not less than 30 days after the date on which regulations, policies, and orders are first prescribed under subsection (a), the Secretary of Defense shall submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives copies of such regulations, policies, or orders, together with a report on steps taken to the date of the report to implement this section.

 (d) ANNUAL REPORT.--Not less than one year after the date of the enactment of this Act, and annually thereafter, the Secretary of Defense shall submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives a report on the implementation of this section.

 This division may be cited as the "Department of Defense Appropriations Act, 2006".

**\*2745**

DIVISION B
EMERGENCY SUPPLEMENTAL APPROPRIATIONS TO ADDRESS HURRICANES IN THE GULF OF MEXICO AND PANDEMIC INFLUENZA, 2006
 That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, to address hurricanes in the Gulf of Mexico and pandemic influenza for the fiscal year ending September 30, 2006, and for other purposes, namely:

TITLE I
EMERGENCY SUPPLEMENTAL APPROPRIATIONS TO ADDRESS HURRICANES IN THE GULF OF MEXICO
CHAPTER 1

Copr. ©  West 2006 No Claim to Orig. Govt. Works

DEPARTMENT OF AGRICULTURE
Executive Operations
WORKING CAPITAL FUND

 For necessary expenses of "Working Capital Fund" related to the consequences of Hurricane Katrina, $35,000,000, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Agricultural Research Service
BUILDINGS AND FACILITIES

 For an additional amount for "Buildings and Facilities", $9,200,000, to remain available until September 30, 2007, for necessary expenses related to the consequences of Hurricane Katrina: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Rural Development Programs
RURAL COMMUNITY ADVANCEMENT PROGRAM

 For the cost of grants for the water, waste disposal, and wastewater facilities programs authorized under section 306(a) and 306A of the Consolidated Farm and Rural Development Act, $45,000,000: *Provided*, That funds made available under this paragraph shall remain available until expended to respond to damage caused by hurricanes that occurred during the 2005 calendar year: *Provided further*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2746**

Rural Housing Service
RURAL HOUSING INSURANCE FUND PROGRAM ACCOUNT

 For gross obligations for the principal amount of direct and guaranteed loans as authorized by title V of the Housing Act of 1949 to respond to damage caused by hurricanes that occurred during the 2005 calendar year to be available from the Rural Housing Insurance Fund, as follows:  $1,468,696,000 for loans to section 502 borrowers, as determined by the Secretary, of which $175,593,000 shall be for direct loans and of which $1,293,103,000 shall be for unsubsidized guaranteed loans;  and $34,188,000 for section 504 housing repair loans.

 For the cost of direct and guaranteed loans, including the cost of modifying loans, as defined in section 502 of the Congressional Budget Act of 1974, as follows, to remain available until expended:  section 502 loans, $35,000,000, of which $20,000,000 shall be for direct loans, and of which $15,000,000 shall be for unsubsidized guaranteed loans;  and section 504 housing repair loans, $10,000,000: *Provided*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

RURAL HOUSING ASSISTANCE GRANTS

 For an additional amount for grants for very low-income housing repairs as authorized by 42 U.S.C. 1474 to respond to damage caused by hurricanes that occurred during the 2005 calendar year, $20,000,000, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006: *Provided further*, That these funds are not subject to any age limitation.

Rural Utilities Service
RURAL ELECTRIFICATION AND TELECOMMUNICATIONS LOANS PROGRAM ACCOUNT

 For gross obligations for the principal amount of direct rural telecommunication loans as authorized by section 306 of the Rural Electrification Act of 1936 to respond to damage caused by hurricanes that occurred during the 2005 calendar year, $50,000,000, as determined by the Secretary.

 For the cost of loan modifications to rural electric loans made or guaranteed under the Rural Electrification Act of 1936 to respond to damage caused by hurricanes that occurred during the 2005 calendar year, $8,000,000, to remain

Copr. ©  West 2006 No Claim to Orig. Govt. Works

available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2747**

Food and Nutrition Service
## COMMODITY ASSISTANCE PROGRAM

 For an additional amount for "Commodity Assistance Program" for necessary expenses related to the consequences of Hurricane Katrina, $10,000,000, to remain available until expended, of which $6,000,000 shall be for The Emergency Food Assistance Program and $4,000,000 shall be for the Commodity Supplemental Food Program: *Provided*, That notwithstanding any other provisions of the Emergency Food Assistance Act of 1983 (the "Act"), the Secretary may allocate additional foods and funds for administrative expenses from resources specifically appropriated, transferred, or reprogrammed to restore to states resources used to assist families and individuals displaced by the hurricanes of calendar year 2005 among the states without regard to sections 204 and 214 of the Act: *Provided further*, That such programs may operate in any area where emergency feeding organizations develop a program to provide temporary emergency nonprofit food service to families and individuals displaced by the hurricanes of calendar year 2005: *Provided further*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

General Provisions--This Chapter
 SEC. 101. EMERGENCY CONSERVATION PROGRAM. (a) IN GENERAL.--There is hereby appropriated $199,800,000, to remain available until expended, to provide assistance under the emergency conservation program established under title IV of the Agricultural Credit Act of 1978 (16 U.S.C. 2201 et seq.) for expenses resulting from hurricanes that occurred during the 2005 calendar year.

 (b) ASSISTANCE TO NURSERY, OYSTER, AND POULTRY PRODUCERS.--In carrying out this section, the Secretary shall make payments to nursery, oyster, and poultry producers to pay for up to 90 percent of the cost of emergency measures to rehabilitate public and private oyster reefs or farmland damaged by hurricanes that occurred during the 2005 calendar year, including the cost of--

 (1) cleaning up structures, such as barns and poultry houses;

 (2) providing water to livestock;

 (3) in the case of nursery producers, removing debris, such as nursery structures, shade-houses, and above-ground irrigation facilities;

 (4) in the case of oyster producers, refurbishing oyster beds;  and

 (5) in the case of poultry producers, removing poultry house debris, including carcasses.

 (c) POULTRY RECOVERY ASSISTANCE.--

 (1) IN GENERAL.--The Secretary shall not use more than $20,000,000 of the funds made available under this section to provide assistance to poultry growers who suffered uninsured losses to poultry houses in counties affected by hurricanes that occurred during the 2005 calendar year.

**\*2748**
 (2) LIMITATIONS.--The amount of assistance provided to a poultry grower under this subsection may not exceed the lesser of--

 (A) 50 percent of the total costs associated with the reconstruction or repair of a poultry house;  or

 (B) $50,000 for each poultry house.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(3) LIMIT ON AMOUNT OF ASSISTANCE.--The total amount of assistance provided under this subsection, and any indemnities for losses to a poultry house paid to a poultry grower, may not exceed 90 percent of the total costs associated with the reconstruction or repair of a poultry house.

(d) ASSISTANCE TO PRIVATE NONINDUSTRIAL FOREST LANDOWNERS.--

(1) ELIGIBILITY.--To be eligible to receive a payment under this section, a private nonindustrial forest landowner shall (as determined by the Secretary)--

(A) have suffered a loss of, or damage to, at least 35 percent of forest acres on commercial forest land of the forest landowner in a county affected by hurricanes that occurred during the 2005 calendar year, or a related condition; and

(B) during the 5-year period beginning on the date of the loss--

(i) reforest the lost forest acres, in accordance with a plan approved by the Secretary that is appropriate for the forest type;

(ii) use best management practices on the forest land of the landowner, in accordance with the best management practices of the Secretary for the applicable State; and

(iii) exercise good stewardship on the forest land of the landowner, while maintaining the land in a forested state.

(2) PROGRAM.--The Secretary shall make payments under this subsection to private nonindustrial forest landowners to pay for up to 75 percent of the cost of reforestation, rehabilitation, and related measures, except that the amount of assistance provided under this subsection shall not exceed $150 per acre.

(e) ELIGIBILITY.--Failure to comply with subtitle C of title XII of the Food Security Act of 1985 (16 U.S.C. 3821 et seq.) shall not prevent an agricultural producer from receiving assistance under this section.

(f) EMERGENCY DESIGNATION.--The amount provided under this section is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

SEC. 102. EMERGENCY WATERSHED PROTECTION PROGRAM. (a) IN GENERAL.--There is hereby appropriated $300,000,000, to remain available until expended, to provide assistance under the emergency watershed protection program established under section 403 of the Agricultural Credit Act of 1978 (16 U.S.C. 2203) to repair damages resulting from hurricanes that occurred during the 2005 calendar year.

(b) ASSISTANCE.--In carrying out this section, the Secretary shall make payments to landowners and land users to pay for up to 75 percent of the cost resulting from damage caused by **\*2749** hurricanes that occurred during the 2005 calendar year, or a related condition, including the cost of--

(1) cleaning up structures on private land; and

(2) reimbursing private nonindustrial forest landowners for costs associated with downed timber removal, except that the amount of assistance provided under this paragraph shall not exceed $150 per acre.

(c) Notwithstanding any other provision of law, the Secretary, acting through the Natural Resources Conservation Service, using funds made available under this section may provide financial and technical assistance to remove and dispose of debris and animal carcasses that could adversely affect health and safety on non-Federal land in a hurricane-affected county.

(d) EMERGENCY DESIGNATION.--The amount provided under this section is designated as an emergency

Copr. © West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                                   Page 56
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

SEC. 103. Notwithstanding any other provision of law, funds appropriated under this Act to the Secretary of Agriculture may be used to reimburse accounts of the Secretary that have been used to pay costs incurred to respond to damage caused by hurricanes that occurred during the 2005 calendar year if those costs could have been paid with such appropriated funds if such costs had arisen after the date of enactment of this Act.

SEC. 104. Funds provided for hurricanes that occurred during the 2005 calendar year under the headings, "Rural Housing Insurance Fund" and "Rural Housing Assistance Grants", may be transferred between such accounts at the Secretary's discretion.

SEC. 105. (a) Notwithstanding any other provision of this title, with respect to the counties affected by hurricanes in the 2005 calendar year and for any individuals who resided in such counties at the time of the disaster the Secretary of Agriculture may, for a 6-month period that begins upon the date of the enactment of this Act—

(1) convert rental assistance under section 521 of the Housing Act of 1949  (42 U.S.C. 1490a) allocated for a property that is not decent, safe, and sanitary because of the disaster into rural housing vouchers authorized under title V of the Housing Act of 1949;

(2) guarantee loans under section 502(h) of the Housing Act of 1949 (42 U.S.C. 1472(h)) to—

(A) repair and rehabilitate single-family residences;  and

(B) refinance any loan made to a single-family resident used to acquire or construct the single-family residence if such residence meets the requirements of subparagraphs (A), (B), and (C) of section 502(h)(4) of the Housing Act of 1949 (42 U.S.C. 1472(h)(4));

(3) waive the application of the rural area or similar limitations under any program funded through an appropriations act and administered by the Rural Development Mission Area;

(4) issue housing vouchers under section 542 of the Housing Act of 1949 (42 U.S.C. 1490r), except that—

(A) notwithstanding the first sentence of subsection (a) of section 542 of such Act, the Secretary may assist low-income families and persons whose residence has **\*2750** become uninhabitable or inaccessible as a result of a 2005 hurricane;  and

(B) subsection (b) of such section 542 of such Act shall not apply;

(5) provide loans, loan guarantees and grants from the Renewable Energy System and Energy Efficiency Improvements Program authorized in section 9006 of the Farm Security and Rural Investment Act of 2002 (7 U.S.C. 8106) to any rural business—

(A) with a cost share requirement not to exceed 50 percent;

(B) without regard to any limitation of the grant amount;  and

(C) which may include businesses processing unsegregated solid waste and paper, as determined by the Secretary;

(6) provide grants under the Value-added Agricultural Product Market Development Grant Program and Rural Cooperative Development Grant Program without regard to any grant amount limitations or matching requirements; and

(7) provide grants under the Community Facilities Grant Program without regard to any graduated funding requirements, grant amount limitations or matching requirements.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(b) The funds made available under this section are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

SEC. 106. Section 759 of the Agriculture, Rural Development, Food and Drug Administration and Related Agencies Appropriations Act, 2006 (Public Law 109- 97) is amended to read as follows:

"SEC. 759. None of the funds appropriated or otherwise made available under this or any other Act shall be used to pay the salaries and expenses of personnel to expend more than $12,000,000 of the funds initially made available for fiscal year 2006 by section 310(a)(2) of the Biomass Research and Development Act of 2000 (7 U.S.C. 7624 note).".

SEC. 107. EMERGENCY FORESTRY CONSERVATION RESERVE PROGRAM.

<< 16 USCA § 3831 >>

(a) Section 1231 of the Food Security Act of 1985 (16 U.S.C. 3831) is amended by adding at the end the following:

"(k) EMERGENCY FORESTRY CONSERVATION RESERVE PROGRAM.--

"(1) DEFINITIONS.--In this subsection:

"(A) MERCHANTABLE TIMBER.--The term 'merchantable timber' means timber on private nonindustrial forest land on which the average tree has a trunk diameter of at least 6 inches measured at a point no less than 4.5 feet above the ground.

"(B) PRIVATE NONINDUSTRIAL FOREST LAND.--The term 'private nonindustrial forest land' includes State school trust land.

"(2) PROGRAM.--During calendar year 2006, the Secretary shall carry out an emergency pilot program in States that the Secretary determines have suffered damage to merchantable timber in counties affected by hurricanes during the 2005 calendar year.

**\*2751**
"(3) ELIGIBLE ACREAGE.--

"(A) IN GENERAL.--Subject to subparagraph (B) and the availability of funds under subparagraph (G), an owner or operator may enroll private nonindustrial forest land in the conservation reserve under this subsection.

"(B) DETERMINATION OF DAMAGES.--Eligibility for enrollment shall be limited to owners and operators of private nonindustrial forest land that have experienced a loss of 35 percent or more of merchantable timber in a county affected by hurricanes during the 2005 calendar year.

"(C) EXEMPTIONS.--Acreage enrolled in the conservation reserve under this subsection shall not count toward--

"(i) county acreage limitations described in section 1243(b);  or

"(ii) the maximum enrollment described in subsection (d).

"(D) DUTIES OF OWNERS AND OPERATORS.--As a condition of entering into a contract under this subsection, during the term of the contract, the owner or operator of private nonindustrial forest land shall agree--

"(i) to restore the land, through site preparation and planting of similar species as existing prior to hurricane damages or to the maximum extent practicable with other native species, as determined by the Secretary;  and

"(ii) to establish temporary vegetative cover the purpose of which is to prevent soil erosion on the eligible

Copr. ©  West 2006 No Claim to Orig. Govt. Works

acreage, as determined by the Secretary.

"(E) DUTIES OF THE SECRETARY.--

"(i) IN GENERAL.--In return for a contract entered into by an owner or operator of private nonindustrial forest land under this subsection, the Secretary shall provide, at the option of the landowner--

"(I) notwithstanding the limitation in section 1234(f)(1), a lump sum payment; or

"(II) annual rental payments.

"(ii) CALCULATION OF LUMP SUM PAYMENT.--The lump sum payment described in clause (i)(I) shall be calculated using a net present value formula, as determined by the Secretary, based on the total amount a producer would receive over the duration of the contract.

"(iii) CALCULATION OF ANNUAL RENTAL PAYMENTS.--The annual rental payment described in clause (i)(II) shall be equal to the average rental rate for conservation reserve contracts in the county in which the land is located.

"(iv) ROLLING SIGNUP.--The Secretary shall offer a rolling signup for contracts under this subsection.

"(v) DURATION OF CONTRACTS.--A contract entered into under this subsection shall have a term of 10 years.

"(F) BALANCE OF NATURAL RESOURCES.--In determining the acceptability of contract offers under this subsection, the Secretary shall consider an equitable balance among the purposes of soil erosion prevention, water quality **\*2752** improvement, wildlife habitat restoration, and mitigation of economic loss.

"(G) FUNDING.--The Secretary shall use $404,100,000, to remain available until expended, of funds of the Commodity Credit Corporation to carry out this subsection.

"(H) DETERMINATIONS BY SECRETARY.--A determination made by the Secretary under this subsection shall be final and conclusive.

"(I) REGULATIONS.--

"(i) IN GENERAL.--Not later than 90 days after the date of enactment of this Act, the Secretary shall promulgate such regulations as are necessary to implement this subsection.

"(ii) PROCEDURE.--The promulgation of regulations and administration of this subsection shall be made without regard to--

"(I) the notice and comment provisions of section 553 of title 5, United States Code;

"(II) the Statement of Policy of the Secretary of Agriculture effective July 24, 1971 (36 Fed. Reg. 13804), relating to notices of proposed rulemaking and public participation in rulemaking; and

"(III) chapter 35 of title 44, United States Code (commonly known as the 'Paperwork Reduction Act').

"(iii) CONGRESSIONAL REVIEW OF AGENCY RULEMAKING.--In carrying out this subsection, the Secretary shall use the authority provided under section 808 of title 5, United States Code.".

(b) EMERGENCY DESIGNATION.--The amount provided under this section is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Copr. © West 2006 No Claim to Orig. Govt. Works

CHAPTER 2
DEPARTMENT OF DEFENSE
MILITARY PERSONNEL
Military Personnel, Army

 For an additional amount for "Military Personnel, Army", $29,830,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Military Personnel, Navy

 For an additional amount for "Military Personnel, Navy", $57,691,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency **\*2753** requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Military Personnel, Marine Corps

 For an additional amount for "Military Personnel, Marine Corps", $14,193,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Military Personnel, Air Force

 For an additional amount for "Military Personnel, Air Force", $105,034,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Reserve Personnel, Army

 For an additional amount for "Reserve Personnel, Army", $11,100,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Reserve Personnel, Navy

 For an additional amount for "Reserve Personnel, Navy", $33,015,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Reserve Personnel, Marine Corps

 For an additional amount for "Reserve Personnel, Marine Corps", $3,028,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2754**

Reserve Personnel, Air Force

 For an additional amount for "Reserve Personnel, Air Force", $2,370,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

National Guard Personnel, Army

 For an additional amount for "National Guard Personnel, Army", $220,556,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in

PL 109-148, 2005 HR 2863                                                                                    Page 60
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### National Guard Personnel, Air Force

For an additional amount for "National Guard Personnel, Air Force", $77,718,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## OPERATION AND MAINTENANCE
### Operation and Maintenance, Army

For an additional amount for "Operation and Maintenance, Army", $156,166,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Operation and Maintenance, Navy

For an additional amount for "Operation and Maintenance, Navy", $544,690,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2755**
### Operation and Maintenance, Marine Corps

For an additional amount for "Operation and Maintenance, Marine Corps", $7,343,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Operation and Maintenance, Air Force

For an additional amount for "Operation and Maintenance, Air Force", $554,252,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Operation and Maintenance, Defense-Wide

For an additional amount for "Operation and Maintenance, Defense-Wide", $29,027,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Operation and Maintenance, Army Reserve

For an additional amount for "Operation and Maintenance, Army Reserve", $16,118,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Copr. © West 2006 No Claim to Orig. Govt. Works

### Operation and Maintenance, Navy Reserve

For an additional amount for "Operation and Maintenance, Navy Reserve", $480,084,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2756**

### Operation and Maintenance, Marine Corps Reserve

For an additional amount for "Operation and Maintenance, Marine Corps Reserve", $16,331,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Operation and Maintenance, Air Force Reserve

For an additional amount for "Operation and Maintenance, Air Force Reserve", $2,366,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Operation and Maintenance, Army National Guard

For an additional amount for "Operation and Maintenance, Army National Guard", $98,855,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Operation and Maintenance, Air National Guard

For an additional amount for "Operation and Maintenance, Air National Guard", $48,086,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### PROCUREMENT
### Procurement of Weapons and Tracked Combat Vehicles, Army

For an additional amount for "Procurement of Weapons and Tracked Combat Vehicles, Army", $1,600,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2757**

### Procurement of Ammunition, Army

For an additional amount for "Procurement of Ammunition, Army", $1,000,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Other Procurement, Army

For an additional amount for "Other Procurement, Army", $43,390,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:

Copr. ©  West 2006 No Claim to Orig. Govt. Works

*Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Aircraft Procurement, Navy

 For an additional amount for "Aircraft Procurement, Navy", $3,856,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Procurement of Ammunition, Navy and Marine Corps

 For an additional amount for "Procurement of Ammunition, Navy and Marine Corps", $2,600,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Shipbuilding and Conversion, Navy

 For an additional amount for "Shipbuilding and Conversion, Navy",  $1,987,000,000, to remain available until September 30, 2010, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005, which shall be available for transfer within this account to replace destroyed or damaged equipment, prepare and recover naval vessels under contract;  and provide for cost adjustments for naval vessels for which funds have been previously appropriated:  *Provided*, That this transfer authority is in addition to any other transfer authority available to the Department of Defense: *Provided further*, That the Secretary of Defense shall, not fewer than 15 days prior to making transfers within this appropriation, notify the congressional defense committees in writing of the details of any such transfer: **\*2758** *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Other Procurement, Navy

 For an additional amount for "Other Procurement, Navy", $76,675,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Other Procurement, Air Force

 For an additional amount for "Other Procurement, Air Force", $162,315,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Procurement, Defense-Wide

 For an additional amount for "Procurement, Defense-Wide", $12,082,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

National Guard and Reserve Equipment

 For an additional amount for "National Guard and Reserve Equipment",  $19,260,000, to remain available until September 30, 2008, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

RESEARCH, DEVELOPMENT, TEST AND EVALUATION
Research, Development, Test and Evaluation, Navy

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 For an additional amount for "Research, Development, Test and Evaluation, Navy", $2,462,000, to remain available until September 30, 2007, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as **\*2759** an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Research, Development, Test and Evaluation, Air Force

 For an additional amount for "Research, Development, Test and Evaluation, Air Force", $6,200,000, to remain available until September 30, 2007, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109 Congress), the concurrent resolution on the budget for fiscal year 2006.

### Research, Development, Test and Evaluation, Defense-Wide

 For an additional amount for "Research, Development, Test and Evaluation, Defense-Wide", $32,720,000, to remain available until September 30, 2007, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## REVOLVING AND MANAGEMENT FUNDS
### Defense Working Capital Funds

 For an additional amount for "Defense Working Capital Funds", $7,224,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Trust Funds
### SURCHARGE COLLECTIONS, SALES OF COMMISSARY STORES, DEFENSE

 For an additional amount for "Surcharge Collections, Sales of Commissary Stores, Defense", $44,341,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## OTHER DEPARTMENT OF DEFENSE PROGRAMS
### Defense Health Program

 For an additional amount for "Defense Health Program", $201,550,000, of which  $172,958,000 shall be for Operation and Maintenance, and of which $28,592,000 shall be for Procurement, to remain available until September 30, 2006, for necessary **\*2760** expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Office of the Inspector General

 For an additional amount for "Office of the Inspector General", $310,000, to remain available until September 30, 2006, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## GENERAL PROVISIONS--THIS CHAPTER
### (TRANSFER OF FUNDS)

 SEC. 201. Upon his determination that such action is necessary to ensure the appropriate allocation of funds provided in this chapter, the Secretary of Defense may transfer up to $500,000,000 of the funds made available to the Department of Defense in this chapter between such appropriations:  *Provided*, That the Secretary shall notify

Copr. ©  West 2006 No Claim to Orig. Govt. Works

the Congress promptly of each transfer made pursuant to this authority:  *Provided further*, That the transfer authority provided in this section is in addition to any other transfer authority available to the Department of Defense: *Provided further*, That the amount made available by the transfer of the funds in or pursuant to this section is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

 SEC. 202. Notwithstanding section 701(b) of title 10, United States Code, the Secretary of Defense may authorize a member of the Armed Forces on active duty who performed duties in support of disaster relief operations in connection with hurricanes in the Gulf of Mexico in calendar year 2005 and who, except for this section, would lose any accumulated leave in excess of 60 days at the end of fiscal year 2005 to retain an accumulated leave total not to exceed 120 days leave.  Except as provided in section 701(f) of title 10, United States Code, leave in excess of 60 days accumulated under this section is lost unless used by the member before October 1, 2007.

 SEC. 203. Notwithstanding 37 U.S.C. 403(b), the Secretary of Defense may prescribe a temporary adjustment in the geographic location rates of the basic allowance for housing in a military housing area located within an area declared a major disaster under the Robert T. Stafford Disaster Relief and Emergency Act (42 U.S.C. 5121 et seq.) resulting from hurricanes in the Gulf of Mexico in calendar year 2005.

 (1) Such temporary adjustment shall be based upon the Secretary's redetermination of housing costs in an affected area and at a rate that shall not exceed 20 percent of the current rate for an affected area.

 (2) Members in an affected military housing area must certify that an increased housing cost above the current rate **\*2761** for an affected area has been incurred in order to be eligible for the temporary rate adjustment.

 (3) No temporary adjustment may be made after September 30, 2006.  No assistance provided to individual households under this heading may extend beyond January 1, 2007.  Further, the Secretary is authorized to reduce or eliminate any temporary adjustment granted under paragraph (1) prior to such date as appropriate.

 SEC. 204. Funds appropriated by this chapter may be obligated and expended notwithstanding section 504(a)(1) of the National Security Act of 1947 (50 U.S.C. 414(a)(1)).

 SEC. 205. (a) The total amount appropriated or otherwise made available in this chapter is hereby reduced by $737,089,000.

 (b) The Secretary of Defense shall allocate this reduction proportionately to each applicable appropriation account.

 (c) The reduction in subsection (a) shall not apply to budget authority appropriated or otherwise made available to the Defense Health Program account.

CHAPTER 3
DEPARTMENT OF DEFENSE--CIVIL
DEPARTMENT OF THE ARMY
Corps of Engineers--Civil
INVESTIGATIONS

 For an additional amount for "Investigations" to expedite studies of flood and storm damage reduction related to the consequences of hurricanes in the Gulf of Mexico and Atlantic Ocean in 2005, $37,300,000, to remain available until expended:  *Provided*, That using $10,000,000 of the funds provided, the Secretary shall conduct an analysis and design for comprehensive improvements or modifications to existing improvements in the coastal area of Mississippi in the interest of hurricane and storm damage reduction, prevention of saltwater intrusion, preservation of fish and wildlife, prevention of erosion, and other related water resource purposes at full Federal expense: *Provided further*, That the Secretary shall recommend a cost-effective project, but shall not perform an incremental benefit-cost analysis to identify the recommended project, and shall not make project recommendations based upon maximizing net national economic development benefits:  *Provided further*, That interim recommendations for near term improvements shall be provided within 6 months of enactment of this Act with final recommendations within 24 months of enactment:  *Provided further*, That none of the $12,000,000 provided herein for the Louisiana

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                                    Page 65
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

Hurricane Protection Study shall be available for expenditure until the State of Louisiana establishes a single state or quasi-state entity to act as local sponsor for construction, operation and maintenance of all of the hurricane, storm damage reduction and flood control projects in the greater New Orleans and southeast Louisiana area:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2762**

CONSTRUCTION

 For additional amounts for "Construction" to rehabilitate and repair Corps projects related to the consequences of hurricanes in the Gulf of Mexico and Atlantic Ocean in 2005, $101,417,000, to remain available until expended:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109 Congress), the concurrent resolution on the budget for fiscal year 2006.

FLOOD CONTROL, MISSISSIPPI RIVER AND TRIBUTARIES, ARKANSAS, ILLINOIS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, AND TENNESSEE

 For an additional amount for "Flood Control, Mississippi River and Tributaries, Arkansas, Illinois, Kentucky, Louisiana, Mississippi, Missouri, and Tennessee" to cover the additional costs of mat laying and other repairs to the Mississippi River channel and associated levee repairs related to the consequences of hurricanes in the Gulf of Mexico in 2005, $153,750,000, to remain available until expended:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

OPERATION AND MAINTENANCE

 For an additional amount for "Operation and Maintenance" to dredge navigation channels and repair other Corps projects related to the consequences of hurricanes in the Gulf of Mexico and Atlantic Ocean in 2005, $327,517,000, to remain available until expended:  *Provided*, That $75,000,000 of this amount shall be used for authorized operation and maintenance activities along the Mississippi River-Gulf Outlet channel:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

FLOOD CONTROL AND COASTAL EMERGENCIES

 For an additional amount for "Flood Control and Coastal Emergencies", as authorized by section 5 of the Flood Control Act of August 18, 1941, as amended (33 U.S.C. 701n), for emergency response to and recovery from coastal storm damages and flooding related to the consequences of hurricanes in the Gulf of Mexico and Atlantic Ocean in 2005, $2,277,965,000, to remain available until expended:  *Provided*, That in using the funds appropriated for construction related to Hurricane Katrina in the areas covered by the disaster declaration made by the President under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, Public Law 93-288, 88 Stat. 143, as amended (42 U.S.C. 5121 et seq.), the Secretary of the Army, acting through the Chief of Engineers, is directed to restore the flood damage reduction and hurricane and storm damage reduction projects, and related works, to provide the level of protection for which they were designed, at full Federal expense:  *Provided further*, That $75,000,000 of this amount shall be used to accelerate completion of unconstructed portions of authorized projects in the State of Mississippi along the Mississippi Gulf **\*2763** Coast at full Federal expense:  *Provided further*, That $544,460,000 of this amount shall be used to accelerate completion of unconstructed portions of authorized hurricane, storm damage reduction and flood control projects in the greater New Orleans and south Louisiana area at full Federal expense:  *Provided further*, That $70,000,000 of this amount shall be available to prepare for flood, hurricane and other natural disasters and support emergency operations, repair and other activities in response to flood and hurricane emergencies as authorized by law:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

GENERAL EXPENSES

 For an additional amount for "General Expenses" for increased efforts by the Mississippi Valley Division to oversee emergency response and recovery activities related to the consequences of hurricanes in the Gulf of Mexico in 2005, $1,600,000, to remain available until expended:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the

Copr. ©  West 2006 No Claim to Orig. Govt. Works

concurrent resolution on the budget for fiscal year 2006.

CHAPTER 4

DEPARTMENT OF HOMELAND SECURITY

Customs and Border Protection

SALARIES AND EXPENSES

 For an additional amount for "Salaries and Expenses" to repair and replace critical equipment and property damaged by hurricanes and other natural disasters, $24,100,000:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CONSTRUCTION

 For an additional amount for "Construction" to rebuild and repair structures damaged by hurricanes and other natural disasters, $10,400,000, to remain available until expended:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Immigration and Customs Enforcement

SALARIES AND EXPENSES

 For an additional amount for "Salaries and Expenses" to repair and replace critical equipment and property damaged by hurricanes and other natural disasters, $13,000,000:  *Provided*, That the amount provided under this heading is designated as an emergency **\*2764** requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

United States Coast Guard

OPERATING EXPENSES

 For an additional amount for "Operating Expenses" for necessary expenses related to the consequences of hurricanes and other natural disasters, $132,000,000, to remain available until expended, of which up to $400,000 may be transferred to "Environmental Compliance and Restoration" to be used for environmental cleanup and restoration of Coast Guard facilities;  and of which up to $525,000 may be transferred to "Research, Development, Test, and Evaluation" to be used for salvage and repair of research and development equipment and facilities:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

ACQUISITION, CONSTRUCTION, AND IMPROVEMENTS

 For an additional amount for "Acquisition, Construction, and Improvements" for necessary expenses related to the consequences of hurricanes and other natural disasters, $74,500,000, to remain available until expended, for major repair and reconstruction projects and for vessels currently under construction: *Provided*, That such amounts shall also be available for expenses to replace destroyed or damaged equipment;  prepare and recover United States Coast Guard vessels under contract;  reimburse for delay, loss of efficiency and disruption, and other related costs;  make equitable adjustments and provisional payments to contracts for Coast Guard vessels for which funds have been previously appropriated:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

United States Secret Service

SALARIES AND EXPENSES

 For an additional amount for "Salaries and Expenses" for equipment, vehicle replacement, and personnel relocation due to the consequences of hurricanes and other natural disasters, $3,600,000:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Office for Domestic Preparedness

STATE AND LOCAL PROGRAMS

For an additional amount for "State and Local Programs" for equipment replacement related to hurricanes and other

Copr. ©  West 2006 No Claim to Orig. Govt. Works

natural disasters, $10,300,000: *Provided*, That the amount provided under **\*2765** this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Federal Emergency Management Agency
ADMINISTRATIVE AND REGIONAL OPERATIONS

 For an additional amount for "Administrative and Regional Operations" for necessary expenses related to hurricanes and other natural disasters, $17,200,000, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

DISASTER RELIEF
(TRANSFER OF FUNDS)

 In addition, of the amounts appropriated under this heading in Public Law 109- 62, $1,500,000 shall be transferred to the "Disaster Assistance Direct Loan Program Account" for administrative expenses to carry out the direct loan program, as authorized by section 417 of the Stafford Act: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

General Provision--This Chapter

 SEC. 401. Notwithstanding 10 U.S.C. 701(b), the Secretary of the Department of Homeland Security may authorize a member on active duty who performed duties in support of Hurricanes Katrina or Rita disaster relief operations and who, except for this section, would lose any accumulated leave in excess of 60 days at the end of fiscal year 2005, to retain an accumulated leave total not to exceed 120 days leave. Leave in excess of 60 days accumulated under this section is lost unless it is used by the member before October 1, 2007.

CHAPTER 5
DEPARTMENT OF THE INTERIOR
United States Fish and Wildlife Service
CONSTRUCTION

 For an additional amount for "Construction" for response, cleanup, recovery, repair and reconstruction expenses related to hurricanes in the Gulf of Mexico in calendar year 2005, $30,000,000, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2766**

National Park Service
CONSTRUCTION

 For an additional amount for "Construction" for response, cleanup, recovery, repair and reconstruction expenses related to hurricanes in the Gulf of Mexico in calendar year 2005, $19,000,000, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

United States Geological Survey
SURVEYS, INVESTIGATIONS, AND RESEARCH

 For an additional amount for "Surveys, Investigations, and Research", for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005 and for repayment of advances to other appropriation accounts from which funds were transferred for such purposes, $5,300,000, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Minerals Management Service
ROYALTY AND OFFSHORE MINERALS MANAGEMENT

For an additional amount for "Royalty and Offshore Minerals Management", for necessary expenses related to the

Copr. ©  West 2006 No Claim to Orig. Govt. Works

consequences of hurricanes in the Gulf of Mexico in calendar year 2005 and for repayment of advances to other appropriation accounts from which funds were transferred for such purposes, $16,000,000, to remain available until expended:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## ENVIRONMENTAL PROTECTION AGENCY
### Leaking Underground Storage Tank Program
 For an additional amount for "Leaking Underground Storage Tank Program", not to exceed $85,000 per project, $8,000,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2767**

## DEPARTMENT OF AGRICULTURE
### Forest Service
### STATE AND PRIVATE FORESTRY
 For an additional amount for "State and Private Forestry", $30,000,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### NATIONAL FOREST SYSTEM
 For an additional amount for "National Forest System", $20,000,000, to remain available until expended, for necessary expenses, including hazardous fuels reduction, related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### CAPITAL IMPROVEMENT AND MAINTENANCE
 For an additional amount for "Capital Improvement and Maintenance",  $7,000,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## CHAPTER 6
### DEPARTMENT OF LABOR
### Employment and Training Administration
### TRAINING AND EMPLOYMENT SERVICES
 For an additional amount for "Training and Employment Services" to award national emergency grants under section 173 of the Workforce Investment Act of 1998 related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005, $125,000,000, to remain available until June 30, 2006: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006: *Provided further*, That these sums may be used to replace grant funds previously obligated to the impacted areas.

**\*2768**

### STATE UNEMPLOYMENT INSURANCE AND EMPLOYMENT SERVICE OPERATIONS
 Funds provided under this heading in Public Law 108-447 which have been allocated to the States of Alabama, Louisiana, and Mississippi for activities authorized by title III of the Social Security Act, as amended, shall remain available for obligation by such States through September 30, 2006, except that funds used for automation by such States shall remain available through September 30, 2008.

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

Copr. ©  West 2006 No Claim to Orig. Govt. Works

Administration for Children and Families
SOCIAL SERVICES BLOCK GRANT

 For an additional amount for "Social Services Block Grant", $550,000,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005, notwithstanding section 2003 and paragraphs (1) and (4) of section 2005(a) of the Social Security Act (42 U.S.C. 1397b and 1397d(a)): *Provided*, That in addition to other uses permitted by title XX of the Social Security Act, funds appropriated under this heading may be used for health services (including mental health services) and for repair, renovation and construction of health facilities (including mental health facilities): *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CHILDREN AND FAMILIES SERVICES PROGRAMS

 For an additional amount for "Children and Families Services Programs", $90,000,000, for Head Start to serve children displaced by hurricanes in the Gulf of Mexico in calendar year 2005, notwithstanding sections 640(a)(1) and 640(g)(1) of the Head Start Act, and to cover the costs of renovating those Head Start facilities which were affected by these hurricanes, to the extent reimbursements from FEMA and insurance companies do not fully cover such costs: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

DEPARTMENT OF EDUCATION

 For assisting in meeting the educational needs of individuals affected by hurricanes in the Gulf of Mexico in calendar year 2005, $1,600,000,000, to remain available through September 30, 2006, of which $750,000,000 shall be available to State educational agencies until expended to carry out section 102 of title IV, division B of this Act, $5,000,000 shall be available to carry out section 106 of title IV, division B of this Act, $645,000,000 shall be available to carry out section 107 of title IV, division B of this Act, and $200,000,000 shall be available to provide assistance under the programs authorized by subparts 3 and 4 of part A, part C of title IV, and part B of title VII of the Higher Education Act of 1965, for students attending institutions of higher education (as **\*2769** defined in section 102 of that Act) that are located in an area in which a major disaster has been declared in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act related to hurricanes in the Gulf of Mexico in calendar year 2005 and who qualify for assistance under subparts 3 and 4 of part A and part C of title IV of the Higher Education Act of 1965, to provide emergency assistance based on demonstrated need to institutions of higher education that are located in an area affected by hurricanes in the Gulf of Mexico in calendar year 2005 and were forced to close, relocate or significantly curtail their activities as a result of damage directly sustained by such hurricanes, and to provide payments to institutions of higher education to help defray the unexpected expenses associated with enrolling displaced students from institutions of higher education at which operations have been disrupted due to hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That of the $200,000,000 described in the preceding proviso, $95,000,000 shall be for the Mississippi Institutes of Higher Learning to provide assistance under such title IV programs, notwithstanding any requirements relating to matching, Federal share, reservation of funds, or maintenance of effort that would otherwise be applicable to that assistance; $95,000,000 shall be for the Louisiana Board of Regents to provide emergency assistance based on demonstrated need under part B of title VII of the Higher Education Act of 1965, which may be used for student financial assistance, faculty and staff salaries, equipment and instruments, or any purpose authorized under the Higher Education Act of 1965, to institutions of higher education that are located in an area affected by hurricanes in the Gulf of Mexico in calendar year 2005; and $10,000,000 shall be available to the Secretary of Education for such payments to institutions of higher education to help defray the unexpected expenses associated with enrolling displaced students from institutions of higher education directly affected by hurricanes in the Gulf of Mexico in calendar year 2005, in accordance with criteria as are established by the Secretary and made publicly available without regard to section 437 of the General Education Provisions Act or section 553 of title 5, United States Code: *Provided further*, That the amounts provided in this paragraph are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CHAPTER 7
DEPARTMENT OF DEFENSE
MILITARY CONSTRUCTION

Copr. © West 2006 No Claim to Orig. Govt. Works

### Military Construction, Navy and Marine Corps

For an additional amount for "Military Construction, Navy and Marine Corps",  $291,219,000, to remain available until September 30, 2010, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to **\*2770** section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Military Construction, Air Force

For an additional amount for "Military Construction, Air Force", $52,612,000, to remain available until September 30, 2010, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Military Construction, Defense-Wide

For an additional amount for "Military Construction, Defense-Wide",  $45,000,000, to remain available until September 30, 2010, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Military Construction, Army National Guard

For an additional amount for "Military Construction, Army National Guard",  $374,300,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Military Construction, Air National Guard

For an additional amount for "Military Construction, Air National Guard",  $35,000,000, to remain available until September 30, 2010, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2771**

### Military Construction, Naval Reserve

For an additional amount for "Military Construction, Naval Reserve",  $120,132,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### FAMILY HOUSING
### Family Housing Construction, Navy and Marine Corps

For an additional amount for "Family Housing Construction, Navy and Marine Corps", $86,165,000, to remain available until September 30, 2010, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th

Copr. ©  West 2006 No Claim to Orig. Govt. Works

Congress), the concurrent resolution on the budget for fiscal year 2006.

### Family Housing Operation and Maintenance, Navy and Marine Corps

 For an additional amount for "Family Housing Operation and Maintenance, Navy and Marine Corps", $48,889,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005, to remain available until September 30, 2007: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Family Housing Construction, Air Force

 For an additional amount for "Family Housing Construction, Air Force", $278,000,000, to remain available until September 30, 2010, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That such funds may be obligated or expended for planning and design and military construction projects not otherwise authorized by law: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Family Housing Operation and Maintenance, Air Force

 For an additional amount for "Family Housing Operation and Maintenance, Air Force", $47,019,000, to remain available until September 30, 2007, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year **\*2772** 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### DEPARTMENT OF VETERANS AFFAIRS
#### Veterans Health Administration
#### MEDICAL SERVICES

 For an additional amount for "Medical Services", $198,265,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

#### Departmental Administration
#### GENERAL OPERATING EXPENSES

 For an additional amount for "General Operating Expenses", $24,871,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

#### NATIONAL CEMETERY ADMINISTRATION

 For an additional amount for "National Cemetery Administration", $200,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

#### CONSTRUCTION, MAJOR PROJECTS

 For an additional amount for "Construction, Major Projects", $367,500,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

#### CONSTRUCTION, MINOR PROJECTS

 For an additional amount for "Construction, Minor Projects," $1,800,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of

H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2773**

RELATED AGENCY
Armed Forces Retirement Home

 For payment to the "Armed Forces Retirement Home" for necessary expenses related to the consequences of Hurricane Katrina, $65,800,000, to remain available until expended: *Provided*, That of the amount provided, $45,000,000 shall be available for the Armed Forces Retirement Home, Gulfport, Mississippi: *Provided further*, That of the amount provided, $20,800,000 shall be available for the Armed Forces Retirement Home, Washington, DC: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

GENERAL PROVISIONS--THIS CHAPTER

 SEC. 701. The limitation of Federal contribution established under section 18236(b) of title 10 is hereby waived for projects appropriated in this chapter.

<< 10 USCA § 5013 NOTE >>

 SEC. 702. For any real property expressly granted to the United States since January 1, 1980 for use as or in connection with a Navy homeport subject to a reversionary interest retained by the grantor and serving as the site of or being used by a naval station subsequently closed or realigned pursuant to the Defense Base Closure and Realignment Act of 1990 as amended, the right of the United States to any consideration or repayment for the fair market value of the real property as improved shall be released, relinquished, waived, or otherwise permanently extinguished.  The Secretary shall execute such written agreements as may be needed to facilitate the reversion and transfer all right, title, and interest of the United States in any real property described in this section, including the improvements thereon, for no consideration to the reversionary interest holder as soon as practicable after the naval station is closed or realigned. This agreement shall not require the reversionary interest holder to assume any environmental liabilities of the United States or relieve the United States from any responsibilities for environmental remediation that it may have incurred as a result of federal ownership or use of the real property.

 SEC. 703. (a) Notwithstanding 38 U.S.C. 2102, the Secretary of Veterans Affairs may make a grant to a veteran whose home was previously adapted with the assistance of a grant under chapter 21 of title 38, United States Code, in the event the adapted home which was being used and occupied by the veteran was destroyed or substantially damaged in the declared disaster areas as a result of hurricanes in the Gulf of Mexico in calendar year 2005, as determined by the President under the Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 et seq.). The grant is available to acquire a suitable housing unit with special fixtures or moveable facilities made necessary by the veteran's disability, and necessary land therefor.  This authority expires on September 30, 2006: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

 (b) The amount of the grant authorized by this subsection may not exceed the lesser of--

**\*2774**

 (1) the reasonable cost, as determined by the Secretary of Veterans Affairs, of repairing or replacing the adapted home in excess of the available insurance coverage on the damaged or destroyed home;  or

 (2) the maximum grant to which the veteran would have been entitled under 38 U.S.C. 2102 (a) or (b) had the veteran not obtained the prior grant.

 SEC. 704. In any case where the Secretary of Veterans Affairs determines that a veteran described in 38 U.S.C. 3108(a)(2) has been displaced as the result of hurricanes in the Gulf of Mexico in calendar year 2005, from the disaster area, as determined by the President under the Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 et seq.), the Secretary may extend the payment of subsistence allowance authorized by such paragraph for up to an additional two months while the veteran is satisfactorily following such program of employment services.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

This authority expires on September 30, 2006:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

SEC. 705. The annual limitation contained in 38 U.S.C. 3120(e) shall not apply in any case where the Secretary of Veterans Affairs determines that a veteran described in 38 U.S.C. 3120(b) has been displaced as the result of, or has otherwise been adversely affected in the areas covered by hurricanes in the Gulf of Mexico in calendar year 2005, as determined by the President under the Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 et seq.).  This authority expires on September 30, 2006:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

SEC. 706. Notwithstanding 38 U.S.C. 3903(a), the Secretary of Veterans Affairs may provide or assist in providing an eligible person with a second automobile or other conveyance under the provisions of chapter 39 of title 38 United States Code, if the Secretary receives satisfactory evidence that the automobile or other conveyance previously purchased with assistance under such chapter was destroyed as a result of hurricanes in the Gulf of Mexico in calendar year 2005, and through no fault of the eligible person:  *Provided*, That that person does not otherwise receive from a property insurer compensation for the loss.  This authority expires on September 30, 2006:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CHAPTER 8
DEPARTMENT OF JUSTICE
Legal Activities
SALARIES AND EXPENSES, UNITED STATES ATTORNEYS

For an additional amount for "Salaries and Expenses, United States Attorneys", $9,000,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar **\*2775** year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

United States Marshals Service
SALARIES AND EXPENSES

For an additional amount for "Salaries and Expenses", $9,000,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Federal Bureau of Investigation
SALARIES AND EXPENSES

For an additional amount for "Salaries and Expenses", $45,000,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Drug Enforcement Administration
SALARIES AND EXPENSES

For an additional amount for "Salaries and Expenses", $10,000,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Bureau of Alcohol, Tobacco, Firearms and Explosives
SALARIES AND EXPENSES

For an additional amount for "Salaries and Expenses", $20,000,000, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That the amount provided under

Copr. ©  West 2006 No Claim to Orig. Govt. Works

this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Federal Prison System
## BUILDINGS AND FACILITIES

For an additional amount for "Buildings and Facilities", $11,000,000, to remain available until expended, for necessary **\*2776** expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Office of Justice Programs
## STATE AND LOCAL LAW ENFORCEMENT ASSISTANCE

For an additional amount for "State and Local Law Enforcement Assistance", $125,000,000, for necessary expenses related to the direct or indirect consequences of hurricanes in the Gulf of Mexico in calendar year 2005, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006: *Provided further*, That the Attorney General shall consult with the Committee on Appropriations of the Senate and the Committee on Appropriations of the House of Representatives on the allocation of funds prior to expenditure.

DEPARTMENT OF COMMERCE
National Oceanic and Atmospheric Administration
## OPERATIONS, RESEARCH, AND FACILITIES

For an additional amount for "Operations, Research, and Facilities", $17,200,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## PROCUREMENT, ACQUISITION AND CONSTRUCTION

For an additional amount for "Procurement, Acquisition and Construction", $37,400,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

National Aeronautics and Space Administration
## EXPLORATION CAPABILITIES

For an additional amount for "Exploration Capabilities", $349,800,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2777**

Small Business Administration
## OFFICE OF INSPECTOR GENERAL

For an additional amount for the "Office of Inspector General" for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico in calendar year 2005, $5,000,000, to remain available until expended: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

## DISASTER LOANS PROGRAM ACCOUNT
### (INCLUDING TRANSFER OF FUNDS)

For an additional amount for the "Disaster Loans Program Account" authorized by section 7(b) of the Small Business Act, for necessary expenses related to hurricanes in the Gulf of Mexico in calendar year 2005 and other natural disasters, $264,500,000, to remain available until expended: *Provided*, That such costs, including the cost of modifying such loans shall be as defined in section 502 of the Congressional Budget Act of 1974.

Copr. © West 2006 No Claim to Orig. Govt. Works

 In addition, for administrative expenses to carry out the direct loan program authorized by section 7(b), $176,500,000, to remain available until expended, which may be transferred to and merged with "Salaries and Expenses":  *Provided*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006:  *Provided further*, That no funds shall be transferred to the appropriation for "Salaries and Expenses" for indirect administrative expenses.

### GENERAL PROVISIONS--THIS CHAPTER
### (INCLUDING TRANSFER OF FUNDS)

 SEC. 801. Of the unobligated balances available under "National Institute of Standards and Technology, Industrial Technology Services" for the Hollings Manufacturing Extension Partnership Program, $4,500,000 shall be used to assist manufacturers recovering from hurricanes in the Gulf of Mexico in calendar year 2005:  *Provided*, That only Manufacturing Extension Centers in States affected by hurricanes in the Gulf of Mexico in calendar year 2005 shall be eligible for hurricane recovery assistance funds:  *Provided further*, That these funds shall be allocated to the Manufacturing Extension Centers in these States based on an assessment of the needs of manufacturers in the counties declared a disaster by the Federal Emergency Management Agency:  Provided further, That employment and productivity shall be among the metrics used in developing the needs assessment:  *Provided further*, That the matching provisions of 15 U.S.C. 278(k) paragraph (c) shall not apply to amounts provided by this Act or by Public Law 109-108 to Manufacturing Extension Centers serving areas affected by hurricanes in the Gulf of Mexico in calendar year 2005.

 SEC. 802. The Attorney General shall transfer to the "Narrowband Communications/Integrated Wireless Network" account all funds made available in this Act to the Department of Justice for the purchase of portable and mobile radios and related **\*2778** infrastructure.  Any transfer made under this section shall be subject to section 605 of Public Law 109-108.

### CHAPTER 9
### DEPARTMENT OF TRANSPORTATION
### Federal Aviation Administration
### FACILITIES AND EQUIPMENT
### (AIRPORT AND AIRWAY TRUST FUND)

 For an additional amount for "Facilities and equipment", $40,600,000, to be derived from the Airport and Airway Trust Fund and to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico during calendar year 2005:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Federal Highway Administration
### EMERGENCY RELIEF PROGRAM

 For an additional amount for "Emergency relief program" as authorized under 23 U.S.C. 125, $2,750,000,000, to remain available until expended, for necessary expenses related to the consequences of Hurricanes Katrina, Rita, and Wilma: *Provided*, That of the funds provided herein, up to $629,000,000 shall be available to repair and reconstruct the I-10 bridge spanning New Orleans and Slidell, Louisiana in accordance with current design standards as contained in 23 U.S.C. 125:  *Provided further*, That notwithstanding 23 U.S.C. 120(e) and from funds provided herein, the Federal share for all projects for repairs or reconstruction of highways, roads, bridges, and trails to respond to damage caused by Hurricanes Katrina, Rita, and Wilma shall be 100 percent:  *Provided further*, That notwithstanding 23 U.S.C. 125(d)(1), the Secretary of Transportation may obligate more than $100,000,000 for such projects in a State in a fiscal year, to respond to damage caused by Hurricanes Dennis, Katrina, Rita or Wilma and by the 2004-2005 winter storms in the State of California: *Provided further*, That any amounts in excess of those necessary for emergency expenses relating to the above hurricanes may be used for other projects authorized under 23 U.S.C. 125:  *Provided further*, That such amounts as may be necessary but not to exceed $550,000,000 may be made available promptly from the funds provided herein to pay for other projects authorized under 23 U.S.C. 125 arising from natural disasters or catastrophic failures from external causes that occurred prior to Hurricane Wilma and that are ready to proceed to construction or are eligible for reimbursement: *Provided further*, That the amounts

Copr. ©  West 2006 No Claim to Orig. Govt. Works

provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2779**

Maritime Administration
OPERATIONS AND TRAINING

 For an additional amount for "Operations and training", $7,500,000, to remain available until September 30, 2007, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico during calendar year 2005: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
Public and Indian Housing
TENANT-BASED RENTAL ASSISTANCE

 For an additional amount for housing vouchers for households within the area declared a major disaster under the Robert T. Stafford Disaster Relief and Emergency Act (42 U.S.C. 5121 et seq.) resulting from hurricanes in the Gulf of Mexico during calendar year 2005, $390,299,500, to remain available until September 30, 2007: *Provided*, That such households shall be limited to those which, prior to Hurricanes Katrina or Rita, received assistance under section 8 or 9 of the United States Housing Act of 1937 (Public Law 93-383), section 801 or 811 of the Cranston-Gonzalez National Affordable Housing Act (Public Law 101-625), the AIDS Housing Opportunity Act (Public Law 101-625), or the Stewart B. McKinney Homeless Assistance Act (Public Law 100-77);  or those which were homeless or in emergency shelters in the declared disaster area prior to Hurricanes Katrina or Rita:  *Provided further*, That these funds are available for assistance, under section 8(o) of the United States Housing Act of 1937: *Provided further*, That in administering assistance under this heading the Secretary of Housing and Urban Development may waive requirements for income eligibility and tenant contribution under section 8 of such Act for up to 18 months:  *Provided further*, That all households receiving housing vouchers under this heading shall be eligible to reoccupy their previous assisted housing, if and when it becomes available:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Community Planning and Development
COMMUNITY DEVELOPMENT FUND

 For an additional amount for the "Community development fund", for necessary expenses related to disaster relief, long-term recovery, and restoration of infrastructure in the most impacted and distressed areas related to the consequences of hurricanes in the Gulf of Mexico in 2005 in States for which the President declared a major disaster under title IV of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 et seq.) in conjunction with Hurricane Katrina, Rita, or Wilma, $11,500,000,000, to remain available until expended, for activities **\*2780** authorized under title I of the Housing and Community Development Act of 1974 (Public Law 93-383): *Provided*, That no State shall receive more than 54 percent of the amount provided under this heading: *Provided further*, That funds provided under this heading shall be administered through an entity or entities designated by the Governor of each State:  *Provided further*, That such funds may not be used for activities reimbursable by or for which funds are made available by the Federal Emergency Management Agency or the Army Corps of Engineers:  *Provided further*, That funds allocated under this heading shall not adversely affect the amount of any formula assistance received by a State under this heading:  *Provided further*, That each State may use up to five percent of its allocation for administrative costs:  *Provided further*, That Louisiana and Mississippi may each use up to $20,000,000 (with up to $400,000 each for technical assistance) from funds made available under this heading for LISC and the Enterprise Foundation for activities authorized by section 4 of the HUD Demonstration Act of 1993 (42 U.S.C. 9816 note), as in effect immediately before June 12, 1997, and for activities authorized under section 11 of the Housing Opportunity Program Extension Act of 1996, including demolition, site clearance and remediation, and program administration:  *Provided further*, That in administering the funds under this heading, the Secretary of Housing and Urban Development shall waive, or specify alternative requirements for, any provision of any statute or regulation that the Secretary administers in connection with the obligation by the Secretary or the use by the recipient of these funds or guarantees (except for requirements related to fair housing, nondiscrimination, labor standards, and the environment), upon a request by the State that such waiver is required to facilitate the use of such funds or guarantees, and a finding by the Secretary that such waiver would not be inconsistent with the overall

Copr. ©  West 2006 No Claim to Orig. Govt. Works

purpose of the statute, as modified: *Provided further*, That the Secretary may waive the requirement that activities benefit persons of low and moderate income, except that at least 50 percent of the funds made available under this heading must benefit primarily persons of low and moderate income unless the Secretary otherwise makes a finding of compelling need: *Provided further*, That the Secretary shall publish in the Federal Register any waiver of any statute or regulation that the Secretary administers pursuant to title I of the Housing and Community Development Act of 1974 no later than 5 days before the effective date of such waiver: *Provided further*, That every waiver made by the Secretary must be reconsidered according to the three previous provisos on the two-year anniversary of the day the Secretary published the waiver in the Federal Register: *Provided further*, That prior to the obligation of funds each State shall submit a plan to the Secretary detailing the proposed use of all funds, including criteria for eligibility and how the use of these funds will address long-term recovery and restoration of infrastructure: *Provided further*, That each State will report quarterly to the Committees on Appropriations on all awards and uses of funds made available under this heading, including specifically identifying all awards of sole-source contracts and the rationale for making the award on a sole-source basis: *Provided further*, That the Secretary shall notify the Committees on Appropriations on any proposed allocation of any funds and any related waivers made pursuant to these provisions under this **\*2781** heading no later than 5 days before such waiver is made: *Provided further*, That the Secretary shall establish procedures to prevent recipients from receiving any duplication of benefits and report quarterly to the Committees on Appropriations with regard to all steps taken to prevent fraud and abuse of funds made available under this heading including duplication of benefits: *Provided further*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### Administrative Provisions

 SEC. 901. Notwithstanding provisions of the United States Housing Act of 1937 (Public Law 93-383), in order to assist public housing agencies located within the most heavily impacted areas of Louisiana and Mississippi that are subject to a declaration by the President of a major disaster under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 et seq.) in connection with Hurricane Katrina or Rita, the Secretary for calendar year 2006 may authorize a public housing agency to combine assistance provided under sections 9(d) and (e) of the United States Housing Act of 1937 and assistance provided under section 8(o) of such Act, for the purpose of facilitating the prompt, flexible and efficient use of funds provided under these sections of the Act to assist families who were receiving housing assistance under the Act immediately prior to Hurricane Katrina or Rita and were displaced from their housing by the hurricanes.

 SEC. 902. To the extent feasible the Secretary of Housing and Urban Development shall preserve all housing within the area declared a major disaster under the Robert T. Stafford Disaster Relief and Emergency Act (42 U.S.C. 5121 et seq.) resulting from Hurricane Katrina or Rita that received project-based assistance under section 8 or 9 of the United States Housing Act of 1937, section 801 or 811 of the Cranston-Gonzalez National Affordable Housing Act, the AIDS Housing Opportunity Act, or the Stewart B. McKinney Homeless Assistance Act: *Provided*, That the Secretary shall report to the Committees on Appropriations on the status of all such housing, including costs associated with any repair or rehabilitation, within 120 days of enactment of this Act.

### THE JUDICIARY
#### Courts of Appeals, District Courts, and Other Judicial Services
#### SALARIES AND EXPENSES

 For an additional amount for "Salaries and expenses, Courts of Appeals, District Courts, and Other Judicial Services", $18,000,000, to remain available until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico during calendar year 2005: *Provided*, That notwithstanding any other provision of law such sums shall be available for transfer to accounts within the Judiciary subject to approval of the Judiciary operating plan: *Provided further*, That the amount **\*2782** provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

### INDEPENDENT AGENCY
#### General Services Administration
#### FEDERAL BUILDINGS FUND

For an additional amount for "Federal buildings fund", $38,000,000, from the general fund and to remain available

Copr. ©  West 2006 No Claim to Orig. Govt. Works

until expended, for necessary expenses related to the consequences of hurricanes in the Gulf of Mexico during calendar year 2005:   *Provided*, That notwithstanding 40 U.S.C. 3307, the Administrator of General Services is authorized to proceed with repairs and alterations for those facilities:   *Provided further*, That the the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

TITLE II
EMERGENCY SUPPLEMENTAL APPROPRIATIONS TO ADDRESS PANDEMIC INFLUENZA
CHAPTER 1
DEPARTMENT OF AGRICULTURE
Office of the Secretary

 For an additional amount for the "Office of the Secretary", related to the detection of and response to highly pathogenic avian influenza, including research and development, $11,350,000, to remain available until September 30, 2007:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Agricultural Research Service
SALARIES AND EXPENSES

 For an additional amount for "Salaries and Expenses", related to the detection of and response to highly pathogenic avian influenza, including research and development, $7,000,000, to remain available until September 30, 2007: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2783**
Cooperative State Research, Education, and Extension Service
RESEARCH AND EDUCATION ACTIVITIES

 For an additional amount for "Research and Education Activities", related to the detection of and response to highly pathogenic avian influenza, $1,500,000, to remain available until September 30, 2007:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

Animal and Plant Health Inspection Service
SALARIES AND EXPENSES

 For an additional amount for "Salaries and Expenses", related to the detection of and response to highly pathogenic avian influenza, $71,500,000, to remain available until September 30, 2007:   *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Food and Drug Administration
SALARIES AND EXPENSES

 For an additional amount for "Food and Drug Administration, Salaries and Expenses", to prepare for and respond to an influenza pandemic, $20,000,000, to remain available until September 30, 2007:   *Provided*, That of the total amount appropriated $18,000,000 shall be for the Center for Biologics Evaluation and Research and for related field activities in the Office of Regulatory Affairs, and $2,000,000 shall be for other activities including the Office of the Commissioner and the Office of Management:   *Provided further*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CHAPTER 2
DEPARTMENT OF DEFENSE
OPERATION AND MAINTENANCE
Operation and Maintenance, Defense-Wide

For an additional amount for "Operation and Maintenance, Defense-Wide" for surveillance, communication

Copr. ©  West 2006 No Claim to Orig. Govt. Works

equipment, and assistance to military partner nations in procuring protective equipment, $10,000,000: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

**\*2784**

## OTHER DEPARTMENT OF DEFENSE PROGRAMS
### Defense Health Program
 For an additional amount for "Defense Health Program" for necessary expenses related to vaccine purchases, storage, expanded avian influenza surveillance programs, equipment, essential information management systems, and laboratory diagnostic equipment, $120,000,000: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.


## CHAPTER 3
## BILATERAL ECONOMIC ASSISTANCE
### Funds Appropriated to the President United States Agency for International Development
## CHILD SURVIVAL AND HEALTH PROGRAMS FUND
 For an additional amount for "Child Survival and Health Programs Fund" for activities related to surveillance, planning, preparedness, and response to the avian influenza virus, $75,200,000, to remain available until expended: *Provided*, That funds appropriated by this paragraph may be obligated and expended notwithstanding section 10 of Public Law 91-672: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.


## INTERNATIONAL DISASTER AND FAMINE ASSISTANCE
 For an additional amount for "International Disaster and Famine Assistance" for the pre-positioning and deployment of essential supplies and equipment for preparedness and response to the avian influenza virus, $56,330,000, to remain available until expended: *Provided*, That funds appropriated by this paragraph may be obligated and expended notwithstanding section 10 of Public Law 91-672: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.


### General Provision--This Chapter
 SEC. 2301. Within 30 days from the date of enactment of this Act and every six months thereafter, the Administrator of the United States Agency for International Development shall submit to the Committees on Appropriations a report which identifies, for all projects funded from amounts appropriated by this Act that are administered by that agency, the following:  the program objectives for each such project, the approximate timeline for achieving each of those objectives, the amounts obligated and expended for each project, and the current status of program **\*2785** performance with reference to identified program objectives and the timeline for achieving those objectives.


## CHAPTER 4
## DEPARTMENT OF HOMELAND SECURITY
### Office of the Secretary and Executive Management
 For an additional amount for "Office of the Secretary and Executive Management", $47,283,000, to remain available until expended, for necessary expenses to train, plan, and prepare for a potential outbreak of highly pathogenic influenza: *Provided*, That these funds may be transferred to other Department of Homeland Security appropriations accounts in accordance with section 503 of Public Law 109-90: *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.


## CHAPTER 5
## DEPARTMENT OF THE INTERIOR
### United States Fish and Wildlife Service

Copr. © West 2006 No Claim to Orig. Govt. Works

## RESOURCE MANAGEMENT

For an additional amount for "Resource Management" for the detection of highly pathogenic avian influenza in wild birds, including the investigation of morbidity and mortality events, targeted surveillance in live wild birds, and targeted surveillance in hunter-taken birds, $7,398,000, to remain available until September 30, 2007: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

National Park Service
## OPERATION OF THE NATIONAL PARK SYSTEM

For an additional amount for "Operation of the National Park System" for the detection of highly pathogenic avian influenza in wild birds, including the investigation of morbidity and mortality events, $525,000, to remain available until September 30, 2007: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

United States Geological Survey
## SURVEYS, INVESTIGATIONS, AND RESEARCH

For an additional amount for "Surveys, Investigations, and Research" for the detection of highly pathogenic avian influenza in wild birds, including the investigation of morbidity and mortality **\*2786** events, targeted surveillance in live wild birds, and targeted surveillance in hunter-taken birds, $3,670,000, to remain available until September 30, 2007: *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CHAPTER 6
## DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary
## PUBLIC HEALTH AND SOCIAL SERVICES EMERGENCY FUND

For an additional amount for "Public Health and Social Services Emergency Fund" to prepare for and respond to an influenza pandemic, including the development and purchase of vaccines, antivirals, and necessary medical supplies, and for planning activities, $3,054,000,000, to remain available until expended: *Provided*, That $350,000,000 shall be for Upgrading State and Local Capacity and $50,000,000 shall be for laboratory capacity and research at the Centers for Disease Control and Prevention: *Provided further*, That products purchased with these funds may, at the discretion of the Secretary, be deposited in the Strategic National Stockpile: *Provided further*, That notwithstanding section 496(b) of the Public Health Service Act, funds may be used for the construction or renovation of privately owned facilities for the production of pandemic influenza vaccines and other biologicals, where the Secretary finds such a contract necessary to secure sufficient supplies of such vaccines or biologicals: *Provided further*, That the Secretary may negotiate a contract with a vendor under which a State may place an order with the vendor for antivirals;  may reimburse a State for a portion of the price paid by the State pursuant to such an order;  and may use amounts made available herein for such reimbursement: *Provided further*, That funds appropriated herein and not specifically designated under this heading may be transferred to other appropriation accounts of the Department of Health and Human Services, as determined by the Secretary to be appropriate, to be used for the purposes specified in this sentence: *Provided further*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

For an additional amount for "Public Health and Social Services Emergency Fund" for activities related to pandemic influenza, including international activities and activities in foreign countries, related to preparedness planning, enhancing the pandemic influenza regulatory science base, accelerating pandemic influenza disease surveillance, developing registries to monitor influenza vaccine distribution and use, and supporting pandemic influenza research, clinical trials and clinical trials infrastructure, $246,000,000, of which $150,000,000, to remain available until expended, shall be for the Centers for Disease Control and Prevention to carry out global and domestic disease surveillance, laboratory diagnostics, rapid response, and quarantine: *Provided*, That funds appropriated herein and not specifically designated under this heading may be transferred to other appropriation accounts of the Department **\*2787** of Health and Human Services, as determined by the Secretary to be appropriate, to be used for the purposes specified in this sentence: *Provided further*, That the amounts provided under this

Copr. ©  West 2006 No Claim to Orig. Govt. Works

heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CHAPTER 7
DEPARTMENT OF VETERANS AFFAIRS
Veterans Health Administration
MEDICAL SERVICES

 For an additional amount for "Medical Services" for enhanced avian influenza surveillance programs, planning functions and preparations for the pandemic and to establish real-time surveillance data exchange with the Centers for Disease Control and Prevention, $27,000,000:  *Provided*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

CHAPTER 8
DEPARTMENT OF STATE AND RELATED AGENCY
DEPARTMENT OF STATE
Administration of Foreign Affairs
DIPLOMATIC AND CONSULAR PROGRAMS
(INCLUDING TRANSFER OF FUNDS)

 For an additional amount for "Diplomatic and Consular Programs" to support avian influenza country coordination, development of an avian influenza response plan, diplomatic outreach, and health support of United States Government employees, Peace Corps volunteers, and eligible family members stationed abroad, $16,000,000, to remain available until expended, of which $1,100,000 shall be transferred to and merged with appropriations for the Peace Corps:  *Provided*, That funds appropriated by this paragraph may be obligated and expended notwithstanding section 15 of the State Department Basic Authorities Act of 1956:  *Provided further*, That the amounts provided under this heading are designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

EMERGENCIES IN THE DIPLOMATIC AND CONSULAR SERVICE

 For an additional amount for "Emergencies in the Diplomatic and Consular Service" for emergency evacuation support of United States Government personnel, Peace Corps volunteers, and dependents in regions affected by the avian influenza, $15,000,000, to remain available until expended:  *Provided*, That funds appropriated by this paragraph may be obligated and expended notwithstanding **\*2788** section 15 of the State Department Basic Authorities Act of 1956:  *Provided further*, That notwithstanding section 402 of Public Law 109-108, upon a determination by the Secretary of State that circumstances related to the avian influenza require additional funding for activities under this heading, the Secretary of State may transfer such amounts to "Emergencies in the Diplomatic and Consular Service" from available appropriations for the current fiscal year for the Department of State as may be necessary to respond to such circumstances:  *Provided further*, That any transfer pursuant to the previous proviso shall be treated as a reprogramming of funds under section 605 of Public Law 109-108 and shall not be available for obligation or expenditure except in compliance with the procedures set forth in that section, except that the Committees on Appropriations shall be notified not less than 5 days in advance of any such reprogramming:  *Provided further*, That the amount provided under this heading is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

TITLE III
RESCISSIONS AND OFFSETS
CHAPTER 1
DEPARTMENT OF AGRICULTURE
Natural Resources Conservation Service
CONSERVATION OPERATIONS
(RESCISSION)

 Of the unobligated balances available under this heading, $10,000,000 are rescinded:  *Provided*, That funds for projects or activities identified in the Statement of Managers that accompanies House Report 109-255, pages 84 through 87, shall not be reduced due to such rescission.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

Rural Utilities Service
DISTANCE LEARNING, TELEMEDICINE, AND BROADBAND PROGRAM
(RESCISSION)
Of the unobligated balances available under this heading, $9,900,000 are rescinded.

Food and Nutrition Service
FOOD STAMP PROGRAM
(RESCISSION)
 Of unobligated balances available under this heading of funds provided pursuant to section 16(h)(1)(A) of the Food Stamp Act of 1977, $11,200,000 are rescinded.

**\*2789**

Foreign Agricultural Service
PUBLIC LAW 480 TITLE I OCEAN FREIGHT DIFFERENTIAL GRANTS
(RESCISSION)
Of the unobligated balances available under this heading, $35,000,000 are rescinded.

CHAPTER 2
DEPARTMENT OF DEFENSE
OPERATION AND MAINTENANCE
Disposal of Department of Defense Real Property
(RESCISSION)
Of the unobligated balances available under this heading, $45,000,000 are rescinded.

Lease of Department of Defense Real Property
(RESCISSION)
Of the unobligated balances available under this heading, $30,000,000 are rescinded.

Overseas Military Facility Investment Recovery
(RESCISSION)
Of the unobligated balances available under this heading, $5,000,000 are rescinded.

CHAPTER 3
EXPORT-IMPORT BANK OF THE UNITED STATES
Subsidy Appropriation
(RESCISSION)
 Of the unobligated balances available under this heading in Public Law 109-102 and Public Law 108-447, $25,000,000 are rescinded.

CHAPTER 4
DEPARTMENT OF HOMELAND SECURITY
United States Coast Guard
OPERATING EXPENSES
(RESCISSION OF FUNDS)
Of the funds appropriated under this heading in Public Law 109-90,  $260,533,000 are rescinded.

**\*2790**

Federal Emergency Management Agency
DISASTER RELIEF
(RESCISSION OF FUNDS)
Of the funds appropriated under this heading in Public Law 109-62,  $23,409,300,000 are rescinded.

CHAPTER 5
DEPARTMENT OF THE INTERIOR

Copr. ©  West 2006 No Claim to Orig. Govt. Works

Bureau of Land Management
MANAGEMENT OF LANDS AND RESOURCES
(RESCISSION)
Of the unobligated balances available under this heading, $500,000 are rescinded.

United States Fish and Wildlife Service
LANDOWNER INCENTIVE PROGRAM
(RESCISSION)
Of the unobligated balances available under this heading, $2,000,000 are rescinded.

COOPERATIVE ENDANGERED SPECIES CONSERVATION FUND
(RESCISSION)
Of the unobligated balances available under this heading, $1,000,000 are rescinded.

CHAPTER 6
DEPARTMENT OF COMMERCE
National Institute of Standards and Technology
INDUSTRIAL TECHNOLOGY SERVICES
(RESCISSION)
Of the unobligated balances available under this heading, $7,000,000 are rescinded.

DEPARTMENT OF STATE
Administration of Foreign Affairs
DIPLOMATIC AND CONSULAR PROGRAMS
(RESCISSION)
Of the unobligated balances available under this heading, $10,000,000 are rescinded.

**\*2791**

EMBASSY SECURITY, CONSTRUCTION, AND MAINTENANCE
(RESCISSION)
Of the unobligated balances available under this heading, $20,000,000 are rescinded.

CHAPTER 7
DEPARTMENT OF TRANSPORTATION
Federal Highway Administration
FEDERAL-AID HIGHWAYS
(HIGHWAY TRUST FUND)
(RESCISSION)
 Of the unobligated balances of funds apportioned to each State under chapter 1 of title 23, United States Code,
$1,143,000,000 are rescinded: *Provided*, That such rescission shall not apply to the funds distributed in accordance
with 23 U.S.C. 130(f), 23 U.S.C. 133(d)(1) as in effect prior to the date of enactment of Public Law 109-59, the first
sentence of 23 U.S.C. 133(d)(3)(A), 23 U.S.C. 104(b)(5), or 23 U.S.C. 163 as in effect prior to the enactment of
Public Law 109-59.

Federal Railroad Administration
EFFICIENCY INCENTIVE GRANTS TO THE NATIONAL RAILROAD PASSENGER CORPORATION
(RESCISSION)
 Of the unobligated balances of amounts made available under this heading in Public Law 109-115, $8,300,000 are
rescinded: *Provided*, That section 135 of title I of division A of Public Law 109-115 is repealed.

CHAPTER 8
GOVERNMENT-WIDE RESCISSIONS
 SEC. 3801. (a) ACROSS-THE-BOARD RESCISSIONS.--There is hereby rescinded an amount equal to 1 percent
of--

 (1) the budget authority provided (or obligation limit imposed) for fiscal year 2006 for any discretionary account of this Act and in any other fiscal year 2006 appropriation Act;

 (2) the budget authority provided in any advance appropriation for fiscal year 2006 for any discretionary account in any prior fiscal year appropriation Act;  and

 (3) the contract authority provided in fiscal year 2006 for any program subject to limitation contained in any fiscal year 2006 appropriation Act.

 (b) PROPORTIONATE APPLICATION.--Any rescission made by subsection (a) shall be applied proportionately--

 (1) to each discretionary account and each item of budget authority described in such subsection;  and

**\*2792**
 (2) within each such account and item, to each program, project, and activity (with programs, projects, and activities as delineated in the appropriation Act or accompanying reports for the relevant fiscal year covering such account or item, or for accounts and items not included in appropriation Acts, as delineated in the most recently submitted President's budget).

 (c) EXCEPTIONS.--This section shall not apply--

 (1) to discretionary budget authority that has been designated pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006;  or

 (2) to discretionary authority appropriated or otherwise made available to the Department of Veterans Affairs.

 (d) OMB REPORT.--Within 30 days after the date of the enactment of this section the Director of the Office of Management and Budget shall submit to the Committees on Appropriations of the House of Representatives and the Senate a report specifying the account and amount of each rescission made pursuant to this section.

TITLE IV--HURRICANE EDUCATION RECOVERY ACT
Subtitle A--Elementary and Secondary Education Hurricane Relief
SEC. 101. FINDINGS; DEFINITIONS.

 (a) FINDINGS.--Congress finds the following:

 (1) Hurricane Katrina and Hurricane Rita have had a devastating and unprecedented impact on students who attended schools in the disaster areas.

 (2) Due to the devastating effects of Hurricane Katrina and Hurricane Rita, a significant number of students have enrolled in schools outside of the area in which they resided, including a significant number of students who enrolled in non-public schools because their parents chose to enroll them in such schools.

 (3) 372,000 students were displaced by Hurricane Katrina.  Approximately 700 schools have been damaged or destroyed.  Nine States each have more than 1,000 of such displaced students enrolled in their schools.  In Texas alone, over 45,000 displaced students have enrolled in schools.

 (4) In response to these extraordinary conditions, this subtitle creates a one-time only emergency grant for the 2005-2006 school year tailored to the needs and particular circumstances of students displaced by Hurricane Katrina and Hurricane Rita.

 (5) The level and type of assistance provided under this subtitle, both for students attending public schools and students attending non-public schools, is made available solely because of the unprecedented nature of the crisis, the massive dislocation of students, and the short duration of the services or assistance.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

**\*2793**
(b) DEFINITIONS.--Unless otherwise specified in this subtitle, the terms used in this subtitle have the meanings given the terms in section 9101 of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 7801).

SEC. 102. IMMEDIATE AID TO RESTART SCHOOL OPERATIONS.

(a) PURPOSE.--It is the purpose of this section--

(1) to provide immediate services or assistance to local educational agencies and non-public schools in Louisiana, Mississippi, Alabama, and Texas that serve an area in which a major disaster has been declared in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170), related to Hurricane Katrina or Hurricane Rita;  and

(2) to assist school administrators and personnel of such agencies or non-public schools with expenses related to the restart of operations in, the re-opening of, and the re-enrollment of students in, elementary schools and secondary schools in such areas.

(b) PAYMENTS AUTHORIZED.--From amounts appropriated to carry out this subtitle, the Secretary of Education is authorized to make payments, on such basis as the Secretary determines appropriate, taking into consideration the number of students who were enrolled, during the 2004-2005 school year, in elementary schools and secondary schools that were closed on September 12, 2005, as a result of Hurricane Katrina or on October 7, 2005, as a result of Hurricane Rita, to State educational agencies in Louisiana, Mississippi, Alabama, and Texas to enable such agencies to provide services or assistance to local educational agencies or non-public schools serving an area in which a major disaster has been declared in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170), related to Hurricane Katrina or Hurricane Rita.

(c) ELIGIBILITY, CONSIDERATION, AND EQUITY.--

(1) ELIGIBILITY AND CONSIDERATION.--From the payment provided by the Secretary of Education under subsection (b), the State educational agency shall provide services and assistance to local educational agencies and non-public schools, consistent with the provisions of this section.  In determining the amount to be provided for services or assistance under this section, the State educational agency shall consider the following:

(A) The number of school-aged children served by the local educational agency or non-public school in the academic year preceding the academic year for which the services or assistance are provided.

(B) The severity of the impact of Hurricane Katrina or Hurricane Rita on the local educational agency or non-public school and the extent of the needs in each local educational agency or non-public school in Louisiana, Mississippi, Alabama, and Texas that is in an area in which a major disaster has been declared in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170), related to Hurricane Katrina or Hurricane Rita.

(2) EQUITY.--Educational services and assistance provided for eligible non-public school students under paragraph (1) shall **\*2794** be equitable in comparison to the educational services and other benefits provided for public school students under this section, and shall be provided in a timely manner.

(d) APPLICATIONS.--Each local educational agency or non-public school desiring services or assistance under this section shall submit an application to the State educational agency at such time, in such manner, and accompanied by such information as the State educational agency may reasonably require to ensure expedited and timely provision of services or assistance to the local educational agency or non-public school.

(e) USES OF FUNDS.--

(1) IN GENERAL.--A local educational agency or non-public school receiving services or assistance from the State educational agency under this section shall use such services or assistance for--

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(A) recovery of student and personnel data, and other electronic information;

(B) replacement of school district information systems, including hardware and software;

(C) financial operations;

(D) reasonable transportation costs;

(E) rental of mobile educational units and leasing of neutral sites or spaces;

(F) initial replacement of instructional materials and equipment, including textbooks;

(G) redeveloping instructional plans, including curriculum development;

(H) initiating and maintaining education and support services;  and

(I) such other activities related to the purpose of this section that are approved by the Secretary.

(2) USE WITH OTHER AVAILABLE FUNDS.--A local educational agency or non-public school receiving services or assistance under this section may use such services or assistance in coordination with other Federal, State, or local funds available for the activities described in paragraph (1).

(3) SPECIAL RULES.--

(A) PROHIBITION.--Services or assistance provided under this section shall not be used for construction or major renovation of schools.

(B) SECULAR, NEUTRAL, AND NONIDEOLOGICAL SERVICES OR ASSISTANCE.--Services or assistance provided under this section, including equipment and materials, shall be secular, neutral, and nonideological.

(f) SUPPLEMENT NOT SUPPLANT.--

(1) IN GENERAL.--Except as provided in paragraph (2), services or assistance made available under this section shall be used to supplement, not supplant, any funds made available through the Federal Emergency Management Agency or through a State.

(2) EXCEPTION.--Paragraph (1) shall not prohibit the provision of Federal assistance under this section to an eligible State educational agency,  local educational agency, or non-public school that is or may be entitled to receive, from another source, benefits for the same purposes as under this section if--

**\*2795**
(A) such State educational agency, local educational agency, or school has not received such other benefits by the time of application for Federal assistance under this section;  and

(B) such State educational agency, local educational agency, or school agrees to repay all duplicative Federal assistance received to carry out the purposes of this section.

(g) DEFINITION OF NON-PUBLIC SCHOOL.--The term "non-public school" means a non-public elementary school or secondary school that--

(1) is accredited or licensed or otherwise operates in accordance with State law;  and

(2) was in existence prior to August 22, 2005.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 (h) ASSISTANCE TO NON-PUBLIC SCHOOLS.--

 (1) FUNDS AVAILABILITY.--From the payment provided by the Secretary of Education under subsection (b) to a State educational agency, the State educational agency shall reserve an amount of funds, to be made available to non-public schools in the State, that is not less than an amount that bears the same relation to the payment as the number of non-public elementary schools and secondary schools in the State bears to the total number of non-public and public elementary schools and secondary schools in the State.  The number of such schools shall be determined by the National Center for Education Statistics Common Core of Data for the 2003-2004 school year.  Such funds shall be used for the provision of services or assistance at non-public schools, except as provided in paragraph (2).

 (2) SPECIAL RULE.--If funds made available under paragraph (1) remain unobligated 120 days after the date of enactment of this Act, such funds may be used to provide services or assistance under this section to local educational agencies or non-public schools.

 (3) PUBLIC CONTROL OF FUNDS.--The control of funds for the services and assistance provided to a non-public school under paragraph (1), and title to materials, equipment, and property purchased with such funds, shall be in a public agency, and a public agency shall administer such funds, materials, equipment, and property and shall provide such services (or may contract for the provision of such services with a public or private entity).

SEC. 103. HOLD HARMLESS FOR LOCAL EDUCATIONAL AGENCIES SERVING MAJOR DISASTER AREAS.

 In the case of a local educational agency that serves an area in which the President has declared that a major disaster exists in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170), related to Hurricane Katrina or Hurricane Rita, the amount made available for such local educational agency under each of sections 1124, 1124A, 1125, and 1125A of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 6333, 6334, 6335, and 6337) for fiscal year 2006 shall be not less than the amount made available for such local educational agency under each of such sections for fiscal year 2005.

SEC. 104. TEACHER AND PARAPROFESSIONAL RECIPROCITY; DELAY.

 (a) TEACHER AND PARAPROFESSIONAL RECIPROCITY.--

**\*2796**
 (1) TEACHERS.--

 (A) AFFECTED TEACHER.--In this subsection, the term "affected teacher" means a teacher who is displaced due to Hurricane Katrina or Hurricane Rita and relocates to a State that is different from the State in which such teacher resided on August 22, 2005.

 (B) RECIPROCITY.--

 (i) TEACHERS.--A local educational agency may consider an affected teacher hired by such agency who is not highly qualified in a core academic subject in the State in which such agency is located to be highly qualified in the same core academic subject or area, for purposes of section 1119 of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 6319), for the 2005-2006 school year, if such teacher was highly qualified, consistent with section 9101(23) of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 7801(23)), on or before August 22, 2005, in the State in which such teacher resided on August 22, 2005.

 (ii) SPECIAL EDUCATION TEACHERS.--A local educational agency may consider an affected special education teacher hired by such agency who is not highly qualified in the State in which such agency is located to be highly qualified, for purposes of section 612(a)(14) of the Individuals with Disabilities Education Act (20 U.S.C. 1412(a)(14)), for the 2005-2006 school year, if such teacher was highly qualified, consistent with section 602(10) of the Individuals with Disabilities Education Act (20 U.S.C. 1401(10)), on or before August 22, 2005, in the State in which such teacher resided on August 22, 2005.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(2) PARAPROFESSIONAL.--

 (A) AFFECTED PARAPROFESSIONAL.--In this subsection, the term "affected paraprofessional" means a paraprofessional who is displaced due to Hurricane Katrina or Hurricane Rita and relocates to a State that is different from the State in which such paraprofessional resided on August 22, 2005.

 (B) RECIPROCITY.--A local educational agency may consider an affected paraprofessional hired by such agency who does not satisfy the requirements of section 1119(c) of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 6319(c)) in the State in which such agency is located to satisfy such requirements, for purposes of such section, for the 2005-2006 school year, if such paraprofessional satisfied such requirements on or before August 22, 2005, in the State in which such paraprofessional resided on August 22, 2005.

 (b) DELAY.--The Secretary of Education may delay, for a period not to exceed 1 year, applicability of the requirements of paragraphs (2) and (3) of section 1119(a) of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 6319(a)(2) and (3)) and section 612(a)(14)(C) of the Individuals with Disabilities Education Act (20 U.S.C. 1412(a)(14)(C)) with respect to the States of Alabama, Louisiana, Texas, and Mississippi (and local educational agencies within the jurisdiction of such States), if any such State or local **\*2797** educational agency demonstrates that a failure to comply with such requirements is due to exceptional or uncontrollable circumstances, such as a natural disaster or a precipitous and unforeseen decline in the financial resources of local educational agencies within the State.

## SEC. 105. REGULATORY AND FINANCIAL RELIEF.

 (a) WAIVER AUTHORITY.--Subject to subsections (b) and (c), in providing any grant or other assistance, directly or indirectly, to an entity in an affected State in which a major disaster has been declared in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170), related to Hurricane Katrina or Hurricane Rita, the Secretary of Education may, as applicable, waive or modify, in order to ease fiscal burdens, any requirement relating to the following:

 (1) Maintenance of effort.

 (2) The use of Federal funds to supplement, not supplant, non-Federal funds.

 (3) Any non-Federal share or capital contribution required to match Federal funds provided under programs administered by the Secretary of Education.

 (b) DURATION.--A waiver under this section shall be for the fiscal year 2006.

 (c) LIMITATIONS.--

 (1) RELATION TO IDEA.--Nothing in this section shall be construed to waive or modify any provision of the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.).

 (2) MAINTENANCE OF EFFORT.--If the Secretary grants a waiver or modification under this section waiving or modifying a requirement relating to maintenance of effort for fiscal year 2006, the level of effort required for fiscal year 2007 shall not be reduced because of the waiver or modification.

## SEC. 106. ASSISTANCE FOR HOMELESS YOUTH.

 (a) IN GENERAL.--The Secretary of Education shall provide assistance to local educational agencies serving homeless children and youths displaced by Hurricane Katrina or Hurricane Rita, consistent with section 723 of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11433), including identification, enrollment assistance, assessment and school placement assistance, transportation, coordination of school services, supplies, referrals for health, mental health, and other needs.

Copr. © West 2006 No Claim to Orig. Govt. Works

(b) EXCEPTION AND DISTRIBUTION OF FUNDS.--

 (1) EXCEPTION.--For purposes of providing assistance under subsection (a), subsections (c) and (e)(1) of section 722 and subsections (b) and (c) of section 723 of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11432(c) and (e)(1), 11433(b) and (c)) shall not apply.

 (2) DISBURSEMENT.--The Secretary of Education shall disburse funding provided under subsection (a) to State educational agencies based on demonstrated need, as determined by the Secretary, and such State educational agencies shall distribute funds, that are appropriated under section 109 and available to carry out this section, to local educational agencies based on demonstrated need, for the purposes of carrying out section 723 of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11433).

**\*2798**

SEC. 107. TEMPORARY EMERGENCY IMPACT AID FOR DISPLACED STUDENTS.

 (a) TEMPORARY EMERGENCY IMPACT AID AUTHORIZED.--

 (1) AID TO STATE EDUCATIONAL AGENCIES.--From amounts appropriated to carry out this subtitle, the Secretary of Education shall provide emergency impact aid to State educational agencies to enable the State educational agencies to make emergency impact aid payments to eligible local educational agencies and eligible BIA-funded schools to enable--

 (A) such eligible local educational agencies and schools to provide for the instruction of students served by such agencies and schools;  and

 (B) such eligible local educational agencies to make immediate impact aid payments to accounts established on behalf of displaced students (referred to in this section as "accounts") who are attending eligible non-public schools located in the areas served by the eligible local educational agencies.

 (2) AID TO LOCAL EDUCATIONAL AGENCIES AND BIA-FUNDED SCHOOLS.--A State educational agency shall make emergency impact aid payments to eligible local educational agencies and eligible BIA-funded schools in accordance with subsection (d).

 (3) STATE EDUCATIONAL AGENCIES IN CERTAIN STATES.--In the case of the States of Louisiana and Mississippi, the State educational agency shall carry out the activities of eligible local educational agencies that are unable to carry out this section, including eligible local educational agencies in such States for which the State exercises the authorities normally exercised by such local educational agencies.

 (4) NOTICE OF FUNDS AVAILABILITY.--Not later than 14 calendar days after the date of enactment of this Act, the Secretary of Education shall publish in the Federal Register a notice of the availability of funds under this section.

 (b) DEFINITIONS.--In this section:

 (1) DISPLACED STUDENT.--The term "displaced student" means a student who enrolled in an elementary school or secondary school (other than the school that the student was enrolled in, or was eligible to be enrolled in, on August 22, 2005) because such student resides or resided on August 22, 2005, in an area for which a major disaster has been declared in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170), related to Hurricane Katrina or Hurricane Rita.

 (2) ELIGIBLE LOCAL EDUCATIONAL AGENCIES.--The term "eligible local educational agency" means a local educational agency that serves--

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                                              Page 90
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

(A) an elementary school or secondary school (including a charter school) in which there is enrolled a displaced student;  or

(B) an area in which there is located an eligible non-public school.

 (3) ELIGIBLE NON-PUBLIC SCHOOL.--The term "eligible non-public school" means a non-public elementary school or secondary school that--

 (A) is accredited or licensed or otherwise operates in accordance with State law;

 (B) was in existence on August 22, 2005;  and

**\*2799**
 (C) serves a displaced student on behalf of whom an application for an account has been made pursuant to subsection (c)(2)(A)(ii).

 (4) ELIGIBLE BIA-FUNDED SCHOOL.--In this section, the term "eligible BIA-funded school" means a school funded by the Bureau of Indian Affairs in which there is enrolled a displaced student.

 (c) APPLICATION.--

 (1) STATE EDUCATIONAL AGENCY.--A State educational agency that desires to receive emergency impact aid under this section shall submit an application to the Secretary of Education, not later than 7 calendar days after the date by which an application under paragraph (2) must be submitted, in such manner, and accompanied by such information as the Secretary of Education may reasonably require, including--

 (A) information on the total displaced student child count of the State provided by eligible local educational agencies in the State and eligible BIA-funded schools in the State under paragraph (2);

 (B) a description of the process for the parent or guardian of a displaced student enrolled in a non-public school to indicate to the eligible local educational agency serving the area in which such school is located that the student is enrolled in such school;

 (C) a description of the procedure to be used by an eligible local educational agency in such State to provide payments to accounts;

 (D) a description of the process to be used by an eligible local educational agency in such State to obtain--

 (i) attestations of attendance of eligible displaced students from eligible non-public schools, in order for the local educational agency to provide payments to accounts on behalf of eligible displaced students;  and

 (ii) attestations from eligible non-public schools that accounts are used only for the purposes described in subsection (e)(1);

 (E) the criteria, including family income, used to determine the eligibility for and the amount of assistance under this section provided on behalf of a displaced student attending an eligible non-public school;  and

 (F) the student count for displaced students attending eligible non-public schools.

 (2) LOCAL EDUCATIONAL AGENCIES AND BIA-FUNDED SCHOOLS.--An eligible local educational agency or eligible BIA-funded school that desires an emergency impact aid payment under this section shall submit an application to the State educational agency, not later than 14 calendar days after the date of the publication of the notice described in subsection (a)(4), in such manner, and accompanied by such information as the State educational agency may reasonably require, including documentation submitted quarterly for the 2005-2006 school year that indicates the following:

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(A) In the case of an eligible local educational agency--

 (i) the number of displaced students enrolled in the elementary schools and secondary schools (including charter schools and including the number **\*2800** of displaced students who are children with disabilities) served by such agency for such quarter;

 (ii) the number of displaced students for whom the eligible local educational agency expects to provide payments to accounts under subsection (d)(3) (including the number of displaced students who are children with disabilities) for such quarter who meet the following criteria--

      (I) the displaced student enrolled in an eligible non-public school prior to the date of enactment of this Act;

      (II) the parent or guardian of the displaced student chose to enroll the student in the eligible non-public school in which the student is enrolled;  and

      (III) the parent or guardian of the displaced student submitted, in a timely manner that allows the local educational agency to meet the documentation requirements under this paragraph, an application requesting that the agency make a payment to an account on behalf of the student;  and

 (iii) an assurance that the local educational agency will make payments to accounts within 14 calendar days of receipt of funds provided under this section.

 (B) In the case of an eligible BIA-funded school, the number of displaced students, including the number of displaced students who are children with disabilities, enrolled in such school for such quarter.

 (3) DETERMINATION OF NUMBER OF DISPLACED STUDENTS.--In determining the number of displaced students for a quarter under paragraph (2), an eligible local educational agency or eligible BIA-funded school shall include the number of displaced students served--

 (A) in the case of a determination for the first quarterly installment, during the quarter prior to the date of enactment of this Act;  and

 (B) in the case of a determination for each subsequent quarterly installment, during the quarter immediately preceding the quarter for which the installment is provided.

 (d) AMOUNT OF EMERGENCY IMPACT AID.--

 (1) AID TO STATE EDUCATIONAL AGENCIES.--

 (A) IN GENERAL.--The amount of emergency impact aid received by a State educational agency for the 2005-2006 school year shall equal the sum of--

 (i) the product of the number of displaced students (who are not children with disabilities), as determined by the eligible local educational agencies and eligible BIA-funded schools in the State under subsection (c)(2), times $6,000;  and

 (ii) the product of the number of displaced students who are children with disabilities, as determined by the eligible local educational agencies and eligible BIA-funded schools in the State under subsection (c)(2), times $7,500.

 (B) INSUFFICIENT FUNDS.--If the amount available under this section to provide emergency impact aid under this subsection is insufficient to pay the full amount that **\*2801** a State educational agency is eligible to receive under this section, the Secretary of Education shall ratably reduce the amount of such emergency impact aid.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(C) RETENTION OF STATE SHARE.--In the case of a State educational agency that has made a payment prior to the date of enactment of this Act to a local educational agency for the purpose of covering additional costs incurred as a result of enrolling a displaced student in a school served by the local educational agency, the State educational agency may retain a portion of the payment described in paragraph (2)(A)(ii) that bears the same relation to the total amount of the payment under such paragraph as the sum of such prior payments bears to the total cost of attendance for all students in that local educational agency for whom the State educational agency made such prior payments, except that a local educational agency shall not adjust the level of funding provided to accounts under this section based on the State's retention of such amount.

(2) AID TO ELIGIBLE LOCAL EDUCATIONAL AGENCIES AND ELIGIBLE BIA-FUNDED SCHOOLS.--

(A) QUARTERLY INSTALLMENTS.--

(i) IN GENERAL.--A State educational agency shall provide emergency impact aid payments under this section on a quarterly basis for the 2005-2006 school year by such dates as determined by the Secretary of Education.  Such quarterly installment payments shall be based on the number of displaced students reported under subsection (c)(2) and in the amount determined under clause (ii).

(ii) PAYMENT AMOUNT.--Each quarterly installment payment under clause (i) shall equal 25 percent of the sum of--

(I) the number of displaced students (who are not children with disabilities) reported by the eligible local educational agency or eligible BIA-funded school for such quarter (as determined under subsection (c)(2)) times $6,000;  and

(II) the number of displaced students who are children with disabilities reported by the eligible local educational agency or eligible BIA-funded school for such quarter (as determined under subsection (c)(2)) times $7,500.

(iii) TIMELINE.--The Secretary of Education shall establish a timeline for quarterly reporting on the number of displaced students in order to make the appropriate disbursements in a timely manner.

(iv) INSUFFICIENT FUNDS.--If, for any quarter, the amount available under this section to make payments under this subsection is insufficient to pay the full amount that an eligible local educational agency or eligible BIA-funded school is eligible to receive under this section, the State educational agency shall ratably reduce the amount of such payments.

(B) MAXIMUM PAYMENT TO ACCOUNT.--In providing quarterly payments to an account for the 2005-2006 school year on behalf of a displaced student for each quarter **\*2802** that such student is enrolled in a non-public school in the area served by the agency under paragraph (3), an eligible local educational agency may provide not more than 4 quarterly payments to such account (each of which shall be paid not later than 14 calendar days after the date of receipt of each quarterly installment payment received under subparagraph (A)), and the aggregate amount of such payments shall not exceed the lesser of--

(i)(I) in the case of a displaced student who is not a child with a disability, $6,000;  or

(II) in the case of a displaced student who is a child with a disability,  $7,500;  or

(ii) the cost of tuition and fees (and transportation expenses, if any) at the non-public school for the 2005-2006 school year.

(C) LIMITATION.--A non-public school accessing funds on behalf of a displaced student under this section must waive tuition, or reimburse tuition paid, in an amount equal to the amount accessed.

(3) DISPLACED STUDENTS.--Subject to the succeeding sentence, an eligible local educational agency or eligible

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

BIA-funded school receiving emergency impact aid payments under this section shall use the payments to provide services and assistance to elementary schools and secondary schools (including charter schools) served by such agency, or to such BIA-funded school, that enrolled a displaced student.  An eligible local educational agency that receives emergency impact aid payments under this section and that serves an area in which there is located an eligible non-public school shall, at the request of the parent or guardian of a displaced student who meets the criteria described in subsection (c)(2)(A)(ii) and who enrolled in a non-public school in an area served by the agency, use such emergency impact aid payment to provide payment on a quarterly basis (but not to exceed the total amount specified in subsection (d)(2)(B) for the 2005-2006 school year) to an account on behalf of such displaced student.

 (e) USE OF FUNDS.--

 (1) AUTHORIZED USES.--The authorized uses of funds are the following:

 (A) Paying the compensation of personnel, including teacher aides, in schools enrolling displaced students.

 (B) Identifying and acquiring curricular material, including the costs of providing additional classroom supplies, and mobile educational units and leasing sites or spaces.

 (C) Basic instructional services for such students, including tutoring, mentoring, or academic counseling.

 (D) Reasonable transportation costs.

 (E) Health and counseling services.

 (F) Education and support services.

 (2) VERIFICATION OF ENROLLMENT FOR NON-PUBLIC SCHOOLS.--Before providing a quarterly payment to an account, the eligible local educational agency shall verify with the parent or guardian of a displaced student that such displaced student is, or was, enrolled in the non-public school for such quarter.

 (3) PROHIBITION.--Funds received under this section shall not be used for construction or major renovation of schools.

**\*2803**
 (4) PROVISION OF SPECIAL EDUCATION AND RELATED SERVICES.--

 (A) IN GENERAL.--In the case of a displaced student who is a child with a disability, any payment made on behalf of such student to an eligible local educational agency or any payment available in an account for such student, shall be used to pay for special education and related services consistent with the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.).

 (B) SPECIAL RULE.--

 (i) RETENTION.--Notwithstanding any other provision of this section, if an eligible local educational agency provides services to a displaced student attending an eligible non-public school under section 612(a)(10) of the Individuals with Disabilities Education Act (20 U.S.C. 1412(a)(10)), the eligible local educational agency may retain a portion of the assistance received under this section on behalf of such student to pay for such services.

 (ii) DETERMINATION OF PORTION.--

      (I) GUIDELINES.--Each State shall issue guidelines, not later than 14 calendar days after the date of the publication of the notice described in subsection (a)(4), that specify the portion of the assistance that an eligible local educational agency in the State may retain under this subparagraph.  Each State shall apply such guidelines in a consistent manner throughout the State.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(II) DETERMINATION OF PORTION.--The portion specified in the guidelines shall be based on customary costs of providing services under such section 612(a)(10) for the local educational agency.

(C) DEFINITIONS.--In this paragraph:

(i) SPECIAL EDUCATION;  RELATED SERVICES.--The terms "special education" and "related services" have the meaning given such terms in section 602 of the Individuals with Disabilities Education Act (20 U.S.C. 1401).

(ii) INDIVIDUALIZED EDUCATION PROGRAM.--The term "individualized education program" has the meaning given the term in section 614(d)(2) of the Individuals with Disabilities Education Act (20 U.S.C. 1414(d)(2)).

(f) RETURN OF AID.--

(1) ELIGIBLE LOCAL EDUCATIONAL AGENCY OR ELIGIBLE BIA-FUNDED SCHOOL.--An eligible local educational agency or eligible BIA-funded school that receives an emergency impact aid payment under this section shall return to the State educational agency any payment provided to the eligible local educational agency or school under this section that the eligible local educational agency or school has not obligated by the end of the 2005-2006 school year in accordance with this section.

(2) STATE EDUCATIONAL AGENCY.--A State educational agency that receives emergency impact aid under this section, shall return to the Secretary of Education--

**\*2804**
(A) any aid provided to the agency under this section that the agency has not obligated by the end of the 2005-2006 school year in accordance with this section;  and

(B) any payment funds returned to the State educational agency under paragraph (1).

(g) LIMITATION ON USE OF AID AND PAYMENTS.--Aid and payments provided under this section shall only be used for expenses incurred during the 2005-2006 school year.

(h) ADMINISTRATIVE EXPENSES.--A State educational agency that receives emergency impact aid under this section may use not more than 1 percent of such aid for administrative expenses.  An eligible local educational agency or eligible BIA-funded school that receives emergency impact aid payments under this section may use not more than 2 percent of such payments for administrative expenses.

(i) SPECIAL FUNDING RULE.--In calculating funding under section 8003 of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 7703) for an eligible local educational agency that receives an emergency impact aid payment under this section, the Secretary of Education shall not count displaced students served by such agency for whom an emergency impact aid payment is received under this section, nor shall such students be counted for the purpose of calculating the total number of children in average daily attendance at the schools served by such agency as provided in section 8003(b)(3)(B)(i) of such Act (20 U.S.C. 7703(b)(3)(B)(i)).

(j) NOTICE.--Each State receiving emergency impact aid under this section shall provide, to the parent or guardian of each displaced student for whom a payment is made under this section to an account who resides in such State, notification that--

(1) such parent or guardian has the option of enrolling such student in a public school or a non-public school;  and

(2) the temporary emergency impact aid for displaced students provided under this section is temporary and is only available for the 2005-2006 school year.

(k) BYPASS.--For a State in which State law prohibits the State from using Federal funds to directly provide services on behalf of students attending non-public schools and provides that another entity shall provide such

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                              Page 95
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

services, the Secretary of Education shall make such arrangements with that entity.

(l) REDIRECTION OF FUNDS.--

(1) IN GENERAL.--If a State educational agency or eligible local educational agency is unable to carry out this section, the Secretary of Education shall make such arrangements with the State as the Secretary determines appropriate to carry out this section on behalf of displaced students attending an eligible non-public school in the area served by such agency.

(2) SPECIAL RULE.--If an eligible local educational agency does not make a payment to an account within 14 calendar days of receipt of funds provided under this section, then--

(A) the eligible local educational agency shall return the funds received that quarter for such account to the State educational agency;  and

(B) the State educational agency shall ensure that the proper payment to such account for such quarter is made not later than 14 calendar days after the date of the receipt of funds under subparagraph (A), before any **\*2805** further funds for such account are distributed to the eligible local educational agency.

(m) NONDISCRIMINATION.--

(1) PROHIBITION.--

(A) IN GENERAL.--A school that enrolls a displaced student under this section shall not discriminate against students on the basis of race, color, national origin, religion, disability, or sex.

(B) APPLICABILITY.--The prohibition of religious discrimination in subparagraph (A) shall not apply with regard to enrollment for a non-public school that is controlled by a religious organization or organized and operated on the basis of religious tenets, except that the prohibition of religious discrimination shall apply with respect to the enrollment of displaced students assisted under this section.

(2) SINGLE SEX SCHOOLS, CLASSES, OR ACTIVITIES.--

(A) IN GENERAL.--To the extent consistent with title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the prohibition of sex discrimination in paragraph (1)(A) shall not apply to a non-public school that is controlled by a religious organization or organized and operated on the basis of religious tenets if the application of paragraph (1)(A) would not be consistent with the religious tenets of such organization.

(B) SINGLE SEX SCHOOLS, CLASSES, OR ACTIVITIES.--Notwithstanding paragraph  (1)(A) and to the extent consistent with title IX of the Education Amendments of 1972, a parent or guardian may choose and a non-public school may offer a single sex school, class, or activity.

(3) GENERAL PROVISION.--Nothing in this subtitle may be construed to alter or modify the provisions of the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), and the Rehabilitation Act of 1973 (29 U.S.C. 701 et seq.).

(4) OPT-OUT.--A parent or guardian of a displaced student on behalf of whom a payment to an account is made under this section shall have the option to have such parent or guardian's displaced child opt out of religious worship or religious classes offered by the non-public school in which such student is enrolled and on behalf of whom a payment to an account is made under this section.

(5) RULE OF CONSTRUCTION.--The amount of any payment (or other form of support provided on behalf of a displaced student) under this section shall not be treated as income of a parent or guardian of the student for purposes of Federal tax laws or for determining eligibility for any other Federal program.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                          Page 96
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

(m) TREATMENT OF STATE AID.--A State shall not take into consideration emergency impact aid payments received under this section by a local educational agency in the State in determining the eligibility of such local educational agency for State aid, or the amount of State aid, with respect to free public education of children.

**\*2806**

SEC. 108. SEVERABILITY.

If any provision of this subtitle, an amendment made by this subtitle, or the application of such provision or amendment to any person or circumstance is held to be unconstitutional, the remainder of this subtitle, the amendments made by this subtitle, and the application of the provisions of such to any person or circumstance shall not be affected thereby.

SEC. 109. AUTHORIZATION OF FUNDS.

There are authorized to be appropriated such sums as may be necessary to carry out sections 102, 106, and 107.

SEC. 110. SUNSET PROVISION.

Except as provided in section 105, the provisions of this subtitle shall be effective for the period beginning on the date of enactment of this Act and ending on August 1, 2006.

Subtitle B--Higher Education Hurricane Relief

SEC. 201. SHORT TITLE.

This subtitle may be cited as the "Higher Education Hurricane Relief Act of 2005".

SEC. 202. GENERAL WAIVERS AND MODIFICATIONS.

(a) AUTHORITY.--Notwithstanding any other provision of law, unless enacted with specific reference to this section, the Secretary is authorized to waive or modify any statutory or regulatory provision applicable to the student financial assistance programs under title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.), or any student or institutional eligibility provisions in the Higher Education Act of 1965, as the Secretary deems necessary in connection with a Gulf hurricane disaster to ensure that--

(1) administrative requirements placed on affected students, affected individuals, affected institutions, lenders, guaranty agencies, and grantees are minimized to the extent possible without impairing the integrity of the higher education programs under the Higher Education Act of 1965, to ease the burden on such participants;  or

(2) institutions of higher education, lenders, guaranty agencies, and other entities participating in the student financial assistance programs under title IV of the Higher Education Act of 1965, that serve an area affected by a Gulf hurricane disaster, may be granted temporary relief from requirements that are rendered infeasible or unreasonable due to the effects of a Gulf hurricane disaster, including due diligence requirements and reporting deadlines.

(b) AUTHORITY TO EXTEND OR WAIVE REPORTING REQUIREMENTS UNDER SECTION 131(A).--The Secretary is authorized to extend reporting deadlines or waive reporting requirements under section 131(a) of the Higher Education Act of 1965 (20 U.S.C. 1015(a)) for an affected institution.

(c) CONSTRUCTION.--Nothing in this subtitle shall be construed--

(1) to allow the Secretary to waive or modify any applicable statutory or regulatory requirements prohibiting discrimination **\*2807** in a program or activity, or in employment or contracting, under existing law (in existence on the date of the Secretary's action);  or

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(2) to authorize any refunding of any repayment of a loan.

## SEC. 203. MODIFICATION OF PART A OF TITLE II GRANTS AUTHORIZED.

 The Secretary is authorized to approve modifications to the requirements for Teacher Quality Enhancement Grants for States and Partnerships under part A of title II of the Higher Education Act of 1965 (20 U.S.C. 1021 et seq.), at the request of the grantee--

 (1) to assist States and local educational agencies to recruit and retain highly qualified teachers in a school district located in an area affected by a Gulf hurricane disaster;  and

 (2) to assist institutions of higher education, located in such area to recruit and retain faculty necessary to prepare teachers and provide professional development.

## SEC. 204. AUTHORIZED USES OF TRIO, GEAR-UP, PART A OR B OF TITLE III, AND OTHER GRANTS.

 The Secretary is authorized to modify the required and allowable uses of funds under chapters 1 and 2 of subpart 2 of part A of title IV of the Higher Education Act of 1965 (20 U.S.C. 1070a et seq., 1070a-21 et seq.), under part A or B of title III (20 U.S.C. 1057 et seq., 1060 et seq.), and under any other competitive grant program, at the request of an affected institution or other grantee, with respect to affected institutions and other grantees located in an area affected by a Gulf hurricane disaster.  The Secretary may not, under the authority of this section, authorize any new construction, renovation, or improvement of classrooms, libraries, laboratories, or other instructional facilities that is not authorized under the institution's grant award, as in effect on the date of enactment of this Act, under part A or B of title III of such Act.

## SEC. 205. PROFESSIONAL JUDGMENT.

 A financial aid administrator shall be considered to be making an adjustment in accordance with section 479A(a) of the Higher Education Act of 1965 (20 U.S.C. 1087tt(a)) if the financial aid administrator makes the adjustment with respect to the calculation of the expected student or parent contribution (or both) for an affected student, or for a student or a parent who resides or resided on August 29, 2005, or was employed on August 29, 2005, in an area affected by a Gulf hurricane disaster.  The financial aid administrator shall adequately document the need for the adjustment.

## SEC. 206. EXPANDING INFORMATION DISSEMINATION REGARDING ELIGIBILITY FOR PELL GRANTS.

 (a) IN GENERAL.--The Secretary shall make special efforts, in conjunction with State efforts, to notify affected students and if applicable, their parents, who qualify for means-tested Federal benefit programs, of their potential eligibility for a maximum Pell Grant, and shall disseminate such informational materials as the Secretary deems appropriate.

 (b) MEANS-TESTED FEDERAL BENEFIT PROGRAM.--For the purpose of this section, the term "means-tested Federal benefit program" means a mandatory spending program of the Federal Government, other than a program under the Higher Education Act of **\*2808** 1965, in which eligibility for the program's benefits, or the amount of such benefits, or both, are determined on the basis of income or resources of the individual or family seeking the benefit, and may include such programs as the supplemental security income program under title XVI of the Social Security Act, the food stamp program under the Food Stamp Act of 1977, the free and reduced price school lunch program established under the Richard B. Russell National School Lunch Act, the temporary assistance to needy families program established under part A of title IV of the Social Security Act, and the women, infants, and children program established under section 17 of the Child Nutrition Act of 1966, and other programs identified by the Secretary.

## SEC. 207. PROCEDURES.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                    Page 98
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

(a) REGULATORY REQUIREMENTS INAPPLICABLE.--Sections 482(c) and 492 of the Higher Education Act of 1965 (20 U.S.C. 1089(c), 1098a), section 437 of the General Education Provisions Act (20 U.S.C. 1232), and section 553 of title 5, United States Code, shall not apply to this subtitle.

(b) NOTICE OF WAIVERS, MODIFICATIONS, OR EXTENSIONS.--Notwithstanding section 437 of the General Education Provisions Act (20 U.S.C. 1232) and section 553 of title 5, United States Code, the Secretary shall make publicly available the waivers, modifications, or extensions granted under this subtitle.

(c) CASE-BY-CASE BASIS.--The Secretary is not required to exercise any waiver or modification authority under this subtitle on a case-by-case basis.

SEC. 208. TERMINATION OF AUTHORITY.

The authority of the Secretary to issue waivers or modifications under this subtitle shall expire at the conclusion of the 2005-2006 academic year.

SEC. 209. DEFINITIONS.

For the purposes of this subtitle, the following terms have the following meanings:

(1) AFFECTED INDIVIDUAL.--The term "affected individual" means an individual who has applied for or received student financial assistance under title IV of the Higher Education Act of 1965, and--

(A) who is an affected student;  or

(B) whose primary place of employment or residency was, as of August 29, 2005, in an area affected by a Gulf hurricane disaster.

(2) AFFECTED INSTITUTION.--

(A) IN GENERAL.--The term "affected institution" means an institution of higher education that--

(i) is located in an area affected by a Gulf hurricane disaster;  and

(ii) has temporarily ceased operations as a consequence of a Gulf hurricane disaster, as determined by the Secretary.

(B) LENGTH OF TIME.--In determining eligibility for assistance under this subtitle, the Secretary, using consistent, objective criteria, shall determine the time period for which an institution of higher education is an affected institution.

**\*2809**
(C) SPECIAL RULE.--An organizational unit of an affected institution that is not impacted by a Gulf hurricane disaster shall not be considered as part of such affected institution for purposes of receiving assistance under this subtitle.

(3) AFFECTED STATE.--The term "affected State" means the State of Alabama, Florida, Louisiana, Mississippi, or Texas.

(4) AFFECTED STUDENT.--The term "affected student" means an individual who was enrolled or accepted for enrollment on August 29, 2005, at an affected institution.

(5) AREA AFFECTED BY A GULF HURRICANE DISASTER.--The term "area affected by a Gulf hurricane disaster" means a county or parish, in an affected State, that has been designated by the Federal Emergency

Copr. ©  West 2006 No Claim to Orig. Govt. Works

Management Agency for disaster assistance for individuals and households as a result of Hurricane Katrina or Hurricane Rita.

 (6) CANCELLED ENROLLMENT PERIOD.--The term "cancelled enrollment period" means any period of enrollment at an affected institution during the academic year 2005-2006, during which students were unable to attend such institution.

 (7) GULF HURRICANE DISASTER.--The term "Gulf hurricane disaster" means a major disaster that the President declared to exist, in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, and that was caused by Hurricane Katrina or Hurricane Rita.

 (8) INSTITUTION OF HIGHER EDUCATION.--The term "institution of higher education" means--

 (A) an institution covered by the definition of such term in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001);  and

 (B) an institution described in subparagraph (A) or (B) of section 102(a)(1) of such Act (20 U.S.C. 1002(a)(1)(A), (B)).

 (9) QUALIFIED STUDENT LOAN.--The term "qualified student loan" means any loan made, insured, or guaranteed under part B, D, or E of title IV of the Higher Education Act of 1965, other than a loan under section 428B of such title or a Federal Direct Plus loan.

 (10) QUALIFIED PARENT LOAN.--The term "qualified parent loan" means a loan made under section 428B of title IV of the Higher Education Act of 1965 or a Federal Direct Plus loan.

 (11) SECRETARY.--The term "Secretary" means the Secretary of Education.

Subtitle C--Education and Related Programs Hurricane Relief

SEC. 301. AGREEMENTS TO EXTEND CERTAIN DEADLINES OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT TO FACILITATE THE PROVISION OF EDUCATIONAL SERVICES TO CHILDREN WITH DISABILITIES.

 (a) AUTHORITY.--The Secretary of Education may enter into an agreement described in subsection (b) with an eligible entity to extend certain deadlines under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) related to providing special **\*2810** education and related services, including early intervention services, to individuals adversely affected by a Gulf hurricane disaster.

 (b) TERMS OF AGREEMENTS.--An agreement referred to in subsection (a) is an agreement with an eligible entity made in accordance with subsection (e) that may extend the applicable deadlines under one or more of the following sections:

 (1) Section 611(e)(3)(C)(ii) of such Act, by extending up to an additional 60 days the 90 day deadline for developing a State plan for the high cost fund.

 (2) Section 612(a)(15)(C) of such Act, by extending up to an additional 60 days the deadline for submission of the annual report to the Secretary of Education and the public regarding the progress of the State and of children with disabilities in the State.

 (3) Section 612(a)(16)(D) of such Act, by extending up to an additional 60 days the deadline for making available reports regarding the participation in assessments and the performance on such assessments of children with disabilities.

 (4) Section 614(a)(1)(C)(i)(I) of such Act, by extending up to an additional 30 days the 60 day deadline for the initial evaluation to determine whether a child is a child with a disability for purposes of the provision of special

Copr. ©  West 2006 No Claim to Orig. Govt. Works

education and related services to such child.

 (5) Section 616(b)(1)(A) of such Act, by extending up to an additional 60 days the deadline for finalization of the State performance plan.

 (6) Section 641(e)(1)(D) of such Act, by extending up to an additional 60 days the deadline for submission to the Governor of a State and the Secretary of Education of the report on the status of early intervention programs for infants and toddlers with disabilities and their families operated within the State.

 (c) RULE OF CONSTRUCTION.--Nothing in this section shall be construed--

 (1) as permitting the waiver of--

 (A) any applicable Federal civil rights law;

 (B) any student or family privacy protections, including provisions requiring parental consent for evaluations and services;

 (C) any procedural safeguards required under section 615 or section 639 of the Individuals with Disabilities Education Act;  or

 (D) any requirements not specified in subsection (b) of this section;  or

 (2) as removing the obligation of the eligible entity to provide a child with a disability or an infant or toddler with a disability and their families--

 (A) a free appropriate public education under part B of the Individuals with Disabilities Education Act;  or

 (B) early intervention services under part C of such Act.

 (d) DURATION OF AGREEMENT.--An agreement under this section shall terminate at the conclusion of the 2005-2006 academic year.

 (e) REQUEST TO ENTER INTO AGREEMENT.--To enter into an agreement under this section, an eligible entity shall submit a **\*2811** request to the Secretary of Education at such time, in such manner, and containing such information as the Secretary may require.

SEC. 302. HEAD START AND CHILD CARE AND DEVELOPMENT BLOCK GRANT.

 (a) HEAD START.--

 (1) TECHNICAL ASSISTANCE, GUIDANCE, AND RESOURCES.--From the amount made available for Head Start in this Act, the Secretary of Health and Human Services shall provide training and technical assistance, guidance, and resources through the Region 4 and Region 6 offices of the Administration for Children and Families (and may provide training and technical assistance, guidance, and resources through other regional offices of the Administration, at the request of such offices that administer affected Head Start agencies and Early Head Start entities) to Head Start agencies and Early Head Start entities in areas affected by a Gulf hurricane disaster, and to affected Head Start agencies and Early Head Start entities, to assist the agencies and entities involved to address the health and counseling needs of infants, toddlers, and young children affected by a Gulf hurricane disaster.  Such training and technical assistance may be provided by contract or cooperative agreement with qualified national, regional, or local providers.

 (2) WAIVER.--For such period up to September 30, 2006, and to such extent as the Secretary considers appropriate, the Secretary of Health and Human Services--

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 (A) may waive section 640(b) of the Head Start Act for Head Start agencies located in an area affected by a Gulf hurricane disaster, and other affected Head Start agencies and Early Head Start agencies;  and

 (B) shall waive requirements of documentation for individuals adversely affected by a Gulf hurricane disaster who participate in a Head Start program or an Early Head Start program funded under the Head Start Act.

 (b) CHILD CARE AND DEVELOPMENT BLOCK GRANT.--

 (1) CHILD CARE AND DEVELOPMENT BLOCK GRANT ACT OF 1990.--For such period up to September 30, 2006, and to such extent as the Secretary considers to be appropriate, the Secretary of Health and Human Services may waive, for any affected State, and any State serving significant numbers of individuals adversely affected by a Gulf hurricane disaster, provisions of the Child Care and Development Block Grant Act of 1990 (42 U.S.C. 9858 et seq.)--

 (A) relating to Federal income limitations on eligibility to receive child care services for which assistance is provided under such Act;

 (B) relating to work requirements applicable to eligibility to receive child care services for which assistance is provided under such Act;

 (C) relating to limitations on the use of funds under section 658G of the Child Care and Development Block Grant Act of 1990;

 (D) preventing children designated as evacuees from receiving priority for child care services provided under such Act, except that children residing in a State and **2812** currently receiving services should not lose such services to accommodate evacuee children;  and

 (E) relating to any non-Federal or capital contribution required (including copayment or other cost sharing by parents receiving child care assistance) to match Federal funds provided under programs administered by the Secretary of Health and Human Services;

 (2) TECHNICAL ASSISTANCE AND GUIDANCE.--The Secretary may provide assistance to States for the purpose of providing training, technical assistance, and guidance to eligible child care providers (as defined in section 658P of the Child Care and Development Block Grant Act of 1990) who are licensed and regulated, as applicable, by the States, to enable such providers to provide child care services for children and families described in paragraph (1). Such training and technical assistance may be provided through intermediary organizations, including those with demonstrated experience in providing training and technical assistance to programs serving school-age children up to age 13, involved in reinstituting child care services on a broad scale in areas affected by a Gulf hurricane disaster.

SEC. 303. DEFINITIONS.

 (a) IN GENERAL.--Unless otherwise specified in this subtitle, the terms used in this subtitle have the meanings given the terms in section 9101 of the Elementary and Secondary Education Act of 1965.

 (b) ADDITIONAL DEFINITIONS.--For the purposes of this subtitle:

 (1) AFFECTED HEAD START AGENCIES AND EARLY HEAD START AGENCIES.--The term  "affected Head Start Agencies and Early Head Start Agencies" means a Head Start agency receiving a significant number of children from an area in which a Gulf hurricane disaster has been declared.

 (2) AFFECTED STATE.--The term "affected State" means the State of Alabama, Florida, Louisiana, Mississippi, or Texas.

 (3) AREA AFFECTED BY A GULF HURRICANE DISASTER.--The term "area affected by a Gulf hurricane

disaster" means a county or parish, in an affected State, that has been designated by the Federal Emergency Management Agency for disaster assistance for individuals and households as a result of Hurricane Katrina or Hurricane Rita.

(4) CHILD WITH A DISABILITY.--The term "child with a disability" has the meaning given such term in section 602(3) of the Individuals with Disabilities Education Act.

(5) ELIGIBLE ENTITY.--The term "eligible entity" means--

(A) a local educational agency (as defined in section 602(19) of the Individuals with Disabilities Education Act) if such agency is located in a State or in an area of a State with respect to which the President has declared that a Gulf hurricane disaster exists;

(B) a State educational agency (as defined in section 602(32) of such Act) if such agency is located in a State with respect to which the President has declared that a Gulf hurricane disaster exists;  or

(C) a State interagency coordinating council established under section 641 of such Act if such council is located **\*2813** in a State with respect to which the President has declared that a Gulf hurricane disaster exists.

(6) GULF HURRICANE DISASTER.--The term "Gulf hurricane disaster" means a major disaster that the President declared to exist, in accordance with section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, and that was caused by Hurricane Katrina or Hurricane Rita.

(7) HIGHLY QUALIFIED.--The term "highly qualified"--

(A) in the case of a special education teacher, has the meaning given such term in section 602 of the Individuals with Disabilities Education Act;  and

(B) in the case of any other elementary, middle, or secondary school teacher, has the meaning given such term in section 9101 of the Elementary and Secondary Education Act of 1965.

(8) INDIVIDUAL ADVERSELY AFFECTED BY A GULF HURRICANE DISASTER.--The term  "individual adversely affected by a Gulf hurricane disaster" means an individual who, on August 29, 2005, was living, working, or attending school in an area in which the President has declared to exist a Gulf hurricane disaster.

(9) INFANT OR TODDLER WITH A DISABILITY.--The term "infant or toddler with a disability" has the meaning given such term in section 632(5) of the Individuals with Disabilities Education Act.

TITLE V
GENERAL PROVISIONS AND TECHNICAL CORRECTIONS

SEC. 5001. No part of any appropriation contained in this Act shall remain available for obligation beyond the current fiscal year unless expressly so provided herein.

<< 1 USCA §  1 NOTE >>

SEC. 5002. Except as expressly provided otherwise, any reference to "this Act" contained in either division A or division B shall be treated as referring only to the provisions of that division.

SEC. 5003. Effective upon the enactment of this Act, none of the funds appropriated or otherwise made available by the 2001 Emergency Supplemental Appropriations Act for Recovery from and Response to Terrorist Attacks on the United States (Public Law 107-38) shall be transferred to or from the Emergency Response Fund.

SEC. 5004. Title I of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006 (Public Law 109- 97) is amended in the paragraph under the heading "Cooperative State Research, Education, and Extension Service, Research and Education Activities" (109 Stat. 2126) by inserting ", to

PL 109-148, 2005 HR 2863                                                                    Page 103
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

remain available until expended" after "for a veterinary medicine loan repayment program pursuant to section 1415A of the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. 3101 et seq.), $500,000".

 SEC. 5005. Section 207 of division C of Public Law 108-447 is amended by inserting ", and any effects of inflation thereon," after the word "increase".

 SEC. 5006. The matter under the heading "Water and Related Resources" in Public Law 109-103 is amended by inserting before the period at the end the following:  ":  *Provided further*, That **\*2814** $10,000,000 of the funds appropriated under this heading shall be deposited in the San Gabriel Basin Restoration Fund established by section 110 of title I of appendix D of Public Law 106-554".

 SEC. 5007. The funds appropriated in Public Law 109-103 under the heading  "Bureau of Reclamation, Water and Related Resources" for the Placer County, California Sub-Regional Wastewater Treatment Project are hereby transferred to and merged with the amount appropriated in such public law under the heading "Corps of Engineers--Civil, Construction", and shall be used for the construction of such project under the same terms and conditions that would have been applicable if such funds had originally been appropriated to the Corps of Engineers.

 SEC. 5008. Section 118 of Public Law 109-103 is amended by striking "106-541" and inserting "106-53" in lieu thereof.

 SEC. 5009. Public Law 109-103 is amended under the heading "Corps of Engineers--Civil, Investigations", by striking "*Provided further*, That using $8,000,000" and all that follows to the end of the paragraph, and inserting in lieu thereof, "*Provided further*, That using $8,000,000 of the funds provided herein, the Secretary of the Army, acting through the Chief of Engineers, is directed to conduct a comprehensive hurricane protection analysis and design at full federal expense to develop and present a full range of flood control, coastal restoration, and hurricane protection measures exclusive of normal policy considerations for South Louisiana and the Secretary shall submit a preliminary technical report for comprehensive Category 5 protection within 6 months of enactment of this Act and a final technical report for Category 5 protection within 24 months of enactment of this Act:  *Provided further*, That the Secretary shall consider providing protection for a storm surge equivalent to a Category 5 hurricane within the project area and may submit reports on component areas of the larger protection program for authorization as soon as practicable:  *Provided further*, That the analysis shall be conducted in close coordination with the State of Louisiana and its appropriate agencies.".

 SEC. 5010. Funds made available under the heading "Construction, Rehabilitation, Operation and Maintenance, Western Area Power Administration" in Public Law 109-103 shall be available for the operation, maintenance, and purchase, through transfer, exchange, or sale, of one helicopter for replacement only.

 SEC. 5011. (a) In addition to the amounts provided elsewhere in this Act,  $50,000,000 is hereby appropriated to the Department of Labor, to remain available until expended, for payment to the New York State Uninsured Employers Fund for reimbursement of claims related to the September 11, 2001, terrorist attacks on the United States and for reimbursement of claims related to the first response emergency services personnel who were injured, were disabled, or died due to such terrorist attacks.

 (b) In addition to the amounts provided elsewhere in this Act, $75,000,000 is hereby appropriated to the Centers for Disease Control and Prevention, to remain available until expended, for purposes related to the September 11, 2001, terrorist attacks on the United States.  In expending such funds, the Director of the Centers for Disease Control and Prevention shall:  (1) give first priority to existing programs that administer baseline and follow-up screening, clinical examinations, or long-term medical health monitoring, analysis, or treatment for emergency services personnel or rescue and recovery personnel, as coordinated by the Mount **\*2815** Sinai Center for Occupational and Environmental Medicine of New York City, the New York City Fire Department's Bureau of Health Services and Counseling Services Unit, the New York City Police Foundation's Project COPE, the Police Organization Providing Peer Assistance of New York City, and the New York City Department of Health and Mental Hygiene's World Trade Center Health Registry;  and (2) give secondary priority to similar programs coordinated by other entities working with the State of New York and New York City.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

(c) Each amount appropriated in this section is designated as an emergency requirement pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.

SEC. 5012. The Flexibility for Displaced Workers Act (Public Law 109-72) is amended by striking "Hurricane Katrina" each place it appears and inserting "hurricanes in the Gulf of Mexico in calendar year 2005".

<< 10 USCA § 2821 NOTE >>

SEC. 5013. Section 124 of Public Law 109-114 is amended by inserting before the period at the end the following: ": *Provided further*, That nothing in this section precludes the Secretary of a military department, after notifying the congressional defense committees and waiting 21 days, from using funds derived under section 2601, chapter 403, chapter 603, or chapter 903 of title 10, United States Code, for the maintenance or repair of General and Flag Officer Quarters at the military service academy under the jurisdiction of that Secretary: *Provided further*, That each Secretary of a military department shall provide an annual report by February 15 to the congressional defense committees on the amount of funds that were derived under section 2601, chapter 403, chapter 603, or chapter 903 of title 10, United States Code in the previous year and were obligated for the construction, improvement, repair, or maintenance of any military facility or infrastructure".

SEC. 5014. Section 128 of Public Law 109-114 is amended as follows--

(1) by inserting after "support" the following: "a continuing mission or function at that installation or"; and

(2) by inserting after the last period the following: "This section shall not apply to military construction projects, land acquisition, or family housing projects for which the project is vital to the national security or the protection of health, safety, or environmental quality: *Provided*, That the Secretary of Defense shall notify the congressional defense committees within seven days of a decision to carry out such a military construction project.".

SEC. 5015. The amount provided for "Military Construction, Army" in Public Law 109-114 is hereby reduced by $8,100,000 for the Special Operations Free Fall Simulator at Yuma Proving Ground, Arizona.

The amount provided for "Military Construction, Army" in Public Law 109-114 is hereby increased by $8,100,000 for the Upgrade Wastewater Treatment Plant at Yuma Proving Ground, Arizona.

SEC. 5016. The last paragraph of Public Law 109-114 is amended by inserting  "Military Construction," before "Military Quality".

**\*2816**
SEC. 5017. (a) Section 613 of Public Law 109-108 is amended by striking  "$500,000 shall be for a grant to Warren County, Virginia, for a community enhancement project;"  and inserting "$250,000 shall be for a grant to Warren County, Virginia, for a community enhancement project;  $250,000 shall be for a grant to The ARC of Loudoun County for land acquisition and construction;".

(b) Section 619(a) of division B in Public Law 108-447 is amended by striking  "$50,000 shall be available for a grant for the Promesa Foundation in the Bronx, New York, to provide community growth funding;"  and inserting "$50,000 shall be available for a grant to the Promesa Foundation to provide financial assistance to New York area families and organizations under a youth sports and recreational initiative;".

(c) Section 621 of division B in Public Law 108-199 is amended by striking  "$200,000 shall be available for a grant for the Promesa Foundation in South Bronx, New York, to provide community growth funding;"  and inserting "$200,000 shall be available for a grant to the Promesa Foundation to provide financial assistance to New York area families and organizations under a youth sports and recreational initiative;".

(d) Section 625 of division B in Public Law 108-7 is amended by striking  "$200,000 shall be available for a grant for the Promesa Foundation in South Bronx, New York to provide community growth funding;"  and inserting

Copr. ©  West 2006 No Claim to Orig. Govt. Works

"$200,000 shall be available for a grant to the Promesa Foundation to provide financial assistance to New York area families and organizations under a youth sports and recreational initiative;".

 SEC. 5018. Public Law 109-108 is amended under the heading "State and Local Law Enforcement Assistance" in subparagraph 4 by striking "authorized by subpart 2 of part E, of title I of the 1968 Act, notwithstanding the provisions of section 511 of said Act".

(TRANSFER OF FUNDS)
 SEC. 5019. The unobligated and unexpended balances of the amount appropriated under the heading "United States-Canada Railroad Commission" by chapter 9 of title II of Public Law 107-20 shall be transferred as a direct lump-sum payment to the University of Alaska.

 SEC. 5020. The matter under the heading "Federal Transit Administration, capital investment grants" in title I of division A of Public Law 109-115 is amended by striking "Virginia, $26,000,000" and inserting "Virginia, $30,000,000";  by striking "Ohio, $24,770,000" and inserting "Ohio, $24,774,513";  and by striking "Metro, Pennsylvania, $2,000,000" and inserting "Metro, Pennsylvania, $4,000,000".

 SEC. 5021. For purposes of compliance with section 205 of Public Law 109-115, a reduction in taxpayer service shall include, but not be limited to, any reduction in available hours of telephone taxpayer assistance on a daily, weekly and monthly basis below the levels in existence during the month of October 2005.

 SEC. 5022. The referenced statement of the managers under the heading  "Community development fund" in Public Law 108-447 is amended with respect to item number 145 by striking "Putnam County, Missouri" and inserting "Sullivan County, Missouri".

**\*2817**
 SEC. 5023. The statement of the managers correction referenced under the second paragraph of the heading "Community development fund" in title III of Public Law 109-115 (as in effect pursuant to H. Con. Res. 308, 109th Congress) is deemed to be amended--

 (1) with respect to item number 65 by striking "$125,000 to Esperanza Mercado Project, California for the Esperanza Community Maple-Mae Project;"   and inserting "$125,000 to the Esperanza Community Housing Corporation, Los Angeles, California for the Mercado La Paloma project;";

 (2) with respect to item number 840 by striking "$100,000 to Gwen's Girls, Inc. in Pittsburgh, Pennsylvania for construction of a residential facility;" and inserting "$100,000 to the Bloomfield-Garfield Association in Pittsburgh, Pennsylvania for acquisition and demolition;";

 (3) with respect to item number 411 by striking "$200,000 to the City of Holyoke, Massachusetts for renovations of facility for Solutions Development Corporation;"   and inserting "$200,000 to Solutions Development Inc. of Holyoke, Massachusetts for facility renovations;";

 (4) with respect to item number 314 by striking "$225,000 to the City of Harvey, Illinois for demolition and redevelopment of property to aid the community;"  and inserting "$225,000 to the Village of Riverdale, Illinois for planning, design, acquisition, and demolition;";

 (5) with respect to item number 715 by striking "39th" and inserting "59th";

 (6) with respect to item number 26 by striking "Center" and inserting  "College";

 (7) with respect to item number 372 by striking "Fairview, Kansas" and inserting "Fairway, Kansas";

 (8) with respect to item number 584 by striking "City of Asheville, North Carolina for the renovation of the Asheville Veterans Memorial Stadium" and inserting "UNC Asheville Science and Multimedia Center, City of Asheville, North Carolina for the construction of a new science and multi-media building";  and

Copr. ©  West 2006 No Claim to Orig. Govt. Works

 (9) with respect to item number 341 by striking "Village of Northfield, IL" and inserting "Northfield Park District of Illinois".

 SEC. 5024. The referenced statement of the managers under the heading  "Community development fund" in title II of division I of Public Law 108-447 is deemed to be amended with respect to item 571 by striking "$575,000 to the Metropolitan Development Association in Syracuse, New York for the Essential New York Initiative" and inserting "$200,000 to the Monroe County Industrial Development Agency for streetscape and infrastructure improvements to the Medley Center in the Town of Irondequoit, New York;  $90,000 to the City of Syracuse, New York for facilities and equipment improvements for the Syracuse Food Bank;  $200,000 to the City of Syracuse, New York for renovations and infrastructure improvements to the Lofts on Willow Urban Village project; and, $85,000 to Cayuga County, New York for the CIVIC Heritage Historical Society for the construction of a history center;".

 SEC. 5025. Effective upon the enactment of this Act, none of the funds appropriated or otherwise made available by the 2001 Emergency Supplemental Appropriations Act for Recovery from and Response to Terrorist Attacks on the United States (Public Law *2818 107-38) shall be transferred to or from the Emergency Response Fund.

 This division may be cited as the "Emergency Supplemental Appropriations Act to Address Hurricanes in the Gulf of Mexico and Pandemic Influenza, 2006".

DIVISION C--PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT
<< 42 USCA § 201 NOTE >>

SEC. 1. SHORT TITLE.

 This division may be cited as the "Public Readiness and Emergency Preparedness Act".

SEC. 2. TARGETED LIABILITY PROTECTIONS FOR PANDEMIC AND EPIDEMIC PRODUCTS AND SECURITY COUNTERMEASURES.

 Part B of title III of the Public Health Service Act (42 U.S.C. 243 et seq.) is amended by inserting after section 319F-2 the following section:

<< 42 USCA § 247d-6d >>

"SEC. 319F-3. TARGETED LIABILITY PROTECTIONS FOR PANDEMIC AND EPIDEMIC PRODUCTS AND SECURITY COUNTERMEASURES.

 "(a) LIABILITY PROTECTIONS.--

 "(1) IN GENERAL.--Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

 "(2) SCOPE OF CLAIMS FOR LOSS.--

 "(A) LOSS.--For purposes of this section, the term 'loss' means any type of loss, including--

 "(i) death;

 "(ii) physical, mental, or emotional injury, illness, disability, or condition;

 "(iii) fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring;  and

Copr. ©  West 2006 No Claim to Orig. Govt. Works

"(iv) loss of or damage to property, including business interruption loss.

Each of clauses (i) through (iv) applies without regard to the date of the occurrence, presentation, or discovery of the loss described in the clause.

"(B) SCOPE.--The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

"(3) CERTAIN CONDITIONS.--Subject to the other provisions of this section, immunity under paragraph (1) with respect to a covered countermeasure applies only if--

**\*2819**
"(A) the countermeasure was administered or used during the effective period of the declaration that was issued under subsection (b) with respect to the countermeasure;

"(B) the countermeasure was administered or used for the category or categories of diseases, health conditions, or threats to health specified in the declaration;  and

"(C) in addition, in the case of a covered person who is a program planner or qualified person with respect to the administration or use of the countermeasure, the countermeasure was administered to or used by an individual who--

"(i) was in a population specified by the declaration;  and

"(ii) was at the time of administration physically present in a geographic area specified by the declaration or had a connection to such area specified in the declaration.

"(4) APPLICABILITY OF CERTAIN CONDITIONS.--With respect to immunity under paragraph (1) and subject to the other provisions of this section:

"(A) In the case of a covered person who is a manufacturer or distributor of the covered countermeasure involved, the immunity applies without regard to whether such countermeasure was administered to or used by an individual in accordance with the conditions described in paragraph (3)(C).

"(B) In the case of a covered person who is a program planner or qualified person with respect to the administration or use of the covered countermeasure, the scope of immunity includes circumstances in which the countermeasure was administered to or used by an individual in circumstances in which the covered person reasonably could have believed that the countermeasure was administered or used in accordance with the conditions described in paragraph (3)(C).

"(5) EFFECT OF DISTRIBUTION METHOD.--The provisions of this section apply to a covered countermeasure regardless of whether such countermeasure is obtained by donation, commercial sale, or any other means of distribution, except to the extent that, under paragraph (2)(E) of subsection (b), the declaration under such subsection provides that subsection (a) applies only to covered countermeasures obtained through a particular means of distribution.

"(6) REBUTTABLE PRESUMPTION.--For purposes of paragraph (1), there shall be a rebuttable presumption that any administration or use, during the effective period of the emergency declaration by the Secretary under subsection (b), of a covered countermeasure shall have been for the category or categories of diseases, health conditions, or threats to health with respect to which such declaration was issued.

"(b) DECLARATION BY SECRETARY.--

Copr. © West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                    Page 108
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

"(1) AUTHORITY TO ISSUE DECLARATION.--Subject to paragraph (2), if the Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency, or that there is a credible risk **\*2820** that the disease, condition, or threat may in the future constitute such an emergency, the Secretary may make a declaration, through publication in the Federal Register, recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that subsection (a) is in effect with respect to the activities so recommended.

"(2) CONTENTS.--In issuing a declaration under paragraph (1), the Secretary shall identify, for each covered countermeasure specified in the declaration--

"(A) the category or categories of diseases, health conditions, or threats to health for which the Secretary recommends the administration or use of the countermeasure;

"(B) the period or periods during which, including as modified by paragraph (3), subsection (a) is in effect, which period or periods may be designated by dates, or by milestones or other description of events, including factors specified in paragraph (6);

"(C) the population or populations of individuals for which subsection (a) is in effect with respect to the administration or use of the countermeasure (which may be a specification that such subsection applies without geographic limitation to all individuals);

"(D) the geographic area or areas for which subsection (a) is in effect with respect to the administration or use of the countermeasure (which may be a specification that such subsection applies without geographic limitation), including, with respect to individuals in the populations identified under subparagraph (C), a specification, as determined appropriate by the Secretary, of whether the declaration applies only to individuals physically present in such areas or whether in addition the declaration applies to individuals who have a connection to such areas, which connection is described in the declaration; and

"(E) whether subsection (a) is effective only to a particular means of distribution as provided in subsection (a)(5) for obtaining the countermeasure, and if so, the particular means to which such subsection is effective.

"(3) EFFECTIVE PERIOD OF DECLARATION.--

"(A) FLEXIBILITY OF PERIOD.--The Secretary may, in describing periods under paragraph (2)(B), have different periods for different covered persons to address different logistical, practical or other differences in responsibilities.

"(B) ADDITIONAL TIME TO BE SPECIFIED.--In each declaration under paragraph (1), the Secretary, after consulting, to the extent the Secretary deems appropriate, with the manufacturer of the covered countermeasure, shall also specify a date that is after the ending date specified under paragraph (2)(B) and that allows what the Secretary determines is--

"(i) a reasonable period for the manufacturer to arrange for disposition of the covered countermeasure, including the return of such product to the manufacturer; and

**\*2821**
"(ii) a reasonable period for covered persons to take such other actions as may be appropriate to limit administration or use of the covered countermeasure.

"(C) ADDITIONAL PERIOD FOR CERTAIN STRATEGIC NATIONAL STOCKPILE COUNTERMEASURES.--With respect to a covered countermeasure that is in the stockpile under section 319F-2, if such countermeasure was the subject of a declaration under paragraph (1) at the time that it was obtained for the stockpile, the effective period of such declaration shall include a period when the countermeasure is administered or used pursuant to a distribution or release from the stockpile.

Copr. © West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                                      Page 109
PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

"(4) AMENDMENTS TO DECLARATION.--The Secretary may through publication in the Federal Register amend any portion of a declaration under paragraph (1).  Such an amendment shall not retroactively limit the applicability of subsection (a) with respect to the administration or use of the covered countermeasure involved.

"(5) CERTAIN DISCLOSURES.--In publishing a declaration under paragraph (1) in the Federal Register, the Secretary is not required to disclose any matter described in section 552(b) of title 5, United States Code.

"(6) FACTORS TO BE CONSIDERED.--In deciding whether and under what circumstances or conditions to issue a declaration under paragraph (1) with respect to a covered countermeasure, the Secretary shall consider the desirability of encouraging the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, and use of such countermeasure.

"(7) JUDICIAL REVIEW.--No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection.

"(8) PREEMPTION OF STATE LAW.--During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that--

"(A) is different from, or is in conflict with, any requirement applicable under this section;  and

"(B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this Act, or under the Federal Food, Drug, and Cosmetic Act.

"(9) REPORT TO CONGRESS.--Within 30 days after making a declaration under paragraph (1), the Secretary shall submit to the appropriate committees of the Congress a report that **\*2822** provides an explanation of the reasons for issuing the declaration and the reasons underlying the determinations of the Secretary with respect to paragraph (2).  Within 30 days after making an amendment under paragraph (4), the Secretary shall submit to such committees a report that provides the reasons underlying the determination of the Secretary to make the amendment.

"(c) DEFINITION OF WILLFUL MISCONDUCT.--

"(1) DEFINITION.--

"(A) IN GENERAL.--Except as the meaning of such term is further restricted pursuant to paragraph (2), the term 'willful misconduct' shall, for purposes of subsection (d), denote an act or omission that is taken--

"(i) intentionally to achieve a wrongful purpose;

"(ii) knowingly without legal or factual justification;  and

"(iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.

"(B) RULE OF CONSTRUCTION.--The criterion stated in subparagraph (A) shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness.

"(2) AUTHORITY TO PROMULGATE REGULATORY DEFINITION.--

Copr. ©  West 2006 No Claim to Orig. Govt. Works

"(A) IN GENERAL.--The Secretary, in consultation with the Attorney General, shall promulgate regulations, which may be promulgated through interim final rules, that further restrict the scope of actions or omissions by a covered person that may qualify as 'willful misconduct' for purposes of subsection (d).

"(B) FACTORS TO BE CONSIDERED.--In promulgating the regulations under this paragraph, the Secretary, in consultation with the Attorney General, shall consider the need to define the scope of permissible civil actions under subsection (d) in a way that will not adversely affect the public health.

"(C) TEMPORAL SCOPE OF REGULATIONS.--The regulations under this paragraph may specify the temporal effect that they shall be given for purposes of subsection (d).

"(D) INITIAL RULEMAKING.--Within 180 days after the enactment of the Public Readiness and Emergency Preparedness Act, the Secretary, in consultation with the Attorney General, shall commence and complete an initial rulemaking process under this paragraph.

"(3) PROOF OF WILLFUL MISCONDUCT.--In an action under subsection (d), the plaintiff shall have the burden of proving by clear and convincing evidence willful misconduct by each covered person sued and that such willful misconduct caused death or serious physical injury.

"(4) DEFENSE FOR ACTS OR OMISSIONS TAKEN PURSUANT TO SECRETARY'S DECLARATION.-- Notwithstanding any other provision of law, a program planner or qualified person shall not have engaged in 'willful misconduct' as a matter of law where such program planner or qualified person acted consistent with applicable directions, guidelines, or recommendations by the Secretary regarding the administration or use of a covered countermeasure that is specified in the declaration **\*2823** under subsection (b), provided either the Secretary, or a State or local health authority, was provided with notice of information regarding serious physical injury or death from the administration or use of a covered countermeasure that is material to the plaintiff's alleged loss within 7 days of the actual discovery of such information by such program planner or qualified person.

"(5) EXCLUSION FOR REGULATED ACTIVITY OF MANUFACTURER OR DISTRIBUTOR.--

"(A) IN GENERAL.--If an act or omission by a manufacturer or distributor with respect to a covered countermeasure, which act or omission is alleged under subsection (e)(3)(A) to constitute willful misconduct, is subject to regulation by this Act or by the Federal Food, Drug, and Cosmetic Act, such act or omission shall not constitute 'willful misconduct' for purposes of subsection (d) if--

"(i) neither the Secretary nor the Attorney General has initiated an enforcement action with respect to such act or omission; or

"(ii) such an enforcement action has been initiated and the action has been terminated or finally resolved without a covered remedy.

Any action or proceeding under subsection (d) shall be stayed during the pendency of such an enforcement action.

"(B) DEFINITIONS.--For purposes of this paragraph, the following terms have the following meanings:

"(i) ENFORCEMENT ACTION.--The term 'enforcement action' means a criminal prosecution, an action seeking an injunction, a seizure action, a civil monetary proceeding based on willful misconduct, a mandatory recall of a product because voluntary recall was refused, a proceeding to compel repair or replacement of a product, a termination of an exemption under section 505(i) or 520(g) of the Federal Food, Drug, and Cosmetic Act, a debarment proceeding, an investigator disqualification proceeding where an investigator is an employee or agent of the manufacturer, a revocation, based on willful misconduct, of an authorization under section 564 of such Act, or a suspension or withdrawal, based on willful misconduct, of an approval or clearance under chapter V of such Act or of a licensure under section 351 of this Act.

"(ii) COVERED REMEDY.--The term 'covered remedy' means an outcome--

Copr. ©  West 2006 No Claim to Orig. Govt. Works

"(I) that is a criminal conviction, an injunction, or a condemnation, a civil monetary payment, a product recall, a repair or replacement of a product, a termination of an exemption under section 505(i) or 520(g) of the Federal Food, Drug, and Cosmetic Act, a debarment, an investigator disqualification, a revocation of an authorization under section 564 of such Act, or a suspension or withdrawal of an approval or clearance under chapter 5 of such Act or of a licensure under section 351 of this Act;  and

"(II) that results from a final determination by a court or from a final agency action.

**\*2824**
  "(iii) FINAL.--The terms 'final' and 'finally'--

"(I) with respect to a court determination, or to a final resolution of an enforcement action that is a court determination, mean a judgment from which an appeal of right cannot be taken or a voluntary or stipulated dismissal;  and

"(II) with respect to an agency action, or to a final resolution of an enforcement action that is an agency action, mean an order that is not subject to further review within the agency and that has not been reversed, vacated, enjoined, or otherwise nullified by a final court determination or a voluntary or stipulated dismissal.

 "(C) RULES OF CONSTRUCTION.--

 "(i) IN GENERAL.--Nothing in this paragraph shall be construed--

"(I) to affect the interpretation of any provision of the Federal Food, Drug, and Cosmetic Act, of this Act, or of any other applicable statute or regulation;  or

"(II) to impair, delay, alter, or affect the authority, including the enforcement discretion, of the United States, of the Secretary, of the Attorney General, or of any other official with respect to any administrative or court proceeding under this Act, under the Federal Food, Drug, and Cosmetic Act, under title 18 of the United States Code, or under any other applicable statute or regulation.

 "(ii) MANDATORY RECALLS.--A mandatory recall called for in the declaration is not a Food and Drug Administration enforcement action.

 "(d) EXCEPTION TO IMMUNITY OF COVERED PERSONS.--

 "(1) IN GENERAL.--Subject to subsection (f), the sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct, as defined pursuant to subsection (c), by such covered person.  For purposes of section 2679(b)(2)(B) of title 28, United States Code, such a cause of action is not an action brought for violation of a statute of the United States under which an action against an individual is otherwise authorized.

 "(2) PERSONS WHO CAN SUE.--An action under this subsection may be brought for wrongful death or serious physical injury by any person who suffers such injury or by any representative of such a person.

 "(e) PROCEDURES FOR SUIT.--

 "(1) EXCLUSIVE FEDERAL JURISDICTION.--Any action under subsection (d) shall be filed and maintained only in the United States District Court for the District of Columbia.

 "(2) GOVERNING LAW.--The substantive law for decision in an action under subsection (d) shall be derived from the law, including choice of law principles, of the State in which the alleged willful misconduct occurred, unless such law is inconsistent with or preempted by Federal law, including provisions of this section.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

PL 109-148, 2005 HR 2863                                                                      Page 112
 PL 109-148, December 30, 2005, 119 Stat 2680
 **(Cite as: 119 Stat 2680)**

**\*2825**
 "(3) PLEADING WITH PARTICULARITY.--In an action under subsection (d), the complaint shall plead with particularity each element of the plaintiff's claim, including--

 "(A) each act or omission, by each covered person sued, that is alleged to constitute willful misconduct relating to the covered countermeasure administered to or used by the person on whose behalf the complaint was filed;

 "(B) facts supporting the allegation that such alleged willful misconduct proximately caused the injury claimed; and

 "(C) facts supporting the allegation that the person on whose behalf the complaint was filed suffered death or serious physical injury.

 "(4) VERIFICATION, CERTIFICATION, AND MEDICAL RECORDS.--

 "(A) IN GENERAL.--In an action under subsection (d), the plaintiff shall verify the complaint in the manner stated in subparagraph (B) and shall file with the complaint the materials described in subparagraph (C).  A complaint that does not substantially comply with subparagraphs (B) and (C) shall not be accepted for filing and shall not stop the running of the statute of limitations.

 "(B) VERIFICATION REQUIREMENT.--

 "(i) IN GENERAL.--The complaint shall include a verification, made by affidavit of the plaintiff under oath, stating that the pleading is true to the knowledge of the deponent, except as to matters specifically identified as being alleged on information and belief, and that as to those matters the plaintiff believes it to be true.

 "(ii) IDENTIFICATION OF MATTERS ALLEGED UPON INFORMATION AND BELIEF.--Any matter that is not specifically identified as being alleged upon the information and belief of the plaintiff, shall be regarded for all purposes, including a criminal prosecution, as having been made upon the knowledge of the plaintiff.

 "(C) MATERIALS REQUIRED.--In an action under subsection (d), the plaintiff shall file with the complaint--

 "(i) an affidavit, by a physician who did not treat the person on whose behalf the complaint was filed, certifying, and explaining the basis for such physician's belief, that such person suffered the serious physical injury or death alleged in the complaint and that such injury or death was proximately caused by the administration or use of a covered countermeasure;  and

 "(ii) certified medical records documenting such injury or death and such proximate causal connection.

 "(5) THREE-JUDGE COURT.--Any action under subsection (d) shall be assigned initially to a panel of three judges.  Such panel shall have jurisdiction over such action for purposes of considering motions to dismiss, motions for summary judgment, and matters related thereto.  If such panel has denied such motions, or if the time for filing such motions has expired, such panel shall refer the action to the chief judge for assignment for further proceedings, including any trial.  Section 1253 of title 28, United States Code, and paragraph (3) of subsection **\*2826** (b) of section 2284 of title 28, United States Code, shall not apply to actions under subsection (d).

 "(6) CIVIL DISCOVERY.--

 "(A) TIMING.--In an action under subsection (d), no discovery shall be allowed--

 "(i) before each covered person sued has had a reasonable opportunity to file a motion to dismiss;

 "(ii) in the event such a motion is filed, before the court has ruled on such motion;  and

Copr. ©  West 2006 No Claim to Orig. Govt. Works

"(iii) in the event a covered person files an interlocutory appeal from the denial of such a motion, before the court of appeals has ruled on such appeal.

"(B) STANDARD.--Notwithstanding any other provision of law, the court in an action under subsection (d) shall permit discovery only with respect to matters directly related to material issues contested in such action, and the court shall compel a response to a discovery request (including a request for admission, an interrogatory, a request for production of documents, or any other form of discovery request) under Rule 37, Federal Rules of Civil Procedure, only if the court finds that the requesting party needs the information sought to prove or defend as to a material issue contested in such action and that the likely benefits of a response to such request equal or exceed the burden or cost for the responding party of providing such response.

"(7) REDUCTION IN AWARD OF DAMAGES FOR COLLATERAL SOURCE BENEFITS.--

"(A) IN GENERAL.--In an action under subsection (d), the amount of an award of damages that would otherwise be made to a plaintiff shall be reduced by the amount of collateral source benefits to such plaintiff.

"(B) PROVIDER OF COLLATERAL SOURCE BENEFITS NOT TO HAVE LIEN OR SUBROGATION.--No provider of collateral source benefits shall recover any amount against the plaintiff or receive any lien or credit against the plaintiff's recovery or be equitably or legally subrogated to the right of the plaintiff in an action under subsection (d).

"(C) COLLATERAL SOURCE BENEFIT DEFINED.--For purposes of this paragraph, the term 'collateral source benefit' means any amount paid or to be paid in the future to or on behalf of the plaintiff, or any service, product, or other benefit provided or to be provided in the future to or on behalf of the plaintiff, as a result of the injury or wrongful death, pursuant to--

"(i) any State or Federal health, sickness, income-disability, accident, or workers' compensation law;

"(ii) any health, sickness, income-disability, or accident insurance that provides health benefits or income-disability coverage;

"(iii) any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or income disability benefits;  or

"(iv) any other publicly or privately funded program.

**\*2827**
"(8) NONECONOMIC DAMAGES.--In an action under subsection (d), any noneconomic damages may be awarded only in an amount directly proportional to the percentage of responsibility of a defendant for the harm to the plaintiff. For purposes of this paragraph, the term 'noneconomic damages' means damages for losses for physical and emotional pain, suffering, inconvenience, physical impairment, mental anguish, disfigurement, loss of enjoyment of life, loss of society and companionship, loss of consortium, hedonic damages, injury to reputation, and any other nonpecuniary losses.

"(9) RULE 11 SANCTIONS.--Whenever a district court of the United States determines that there has been a violation of Rule 11 of the Federal Rules of Civil Procedure in an action under subsection (d), the court shall impose upon the attorney, law firm, or parties that have violated Rule 11 or are responsible for the violation, an appropriate sanction, which may include an order to pay the other party or parties for the reasonable expenses incurred as a direct result of the filing of the pleading, motion, or other paper that is the subject of the violation, including a reasonable attorney's fee.  Such sanction shall be sufficient to deter repetition of such conduct or comparable conduct by others similarly situated, and to compensate the party or parties injured by such conduct.

"(10) INTERLOCUTORY APPEAL.--The United States Court of Appeals for the District of Columbia Circuit shall have jurisdiction of an interlocutory appeal by a covered person taken within 30 days of an order denying a motion to dismiss or a motion for summary judgment based on an assertion of the immunity from suit conferred by

Copr. ©  West 2006 No Claim to Orig. Govt. Works

subsection (a) or based on an assertion of the exclusion under subsection (c)(5).

 "(f) ACTIONS BY AND AGAINST THE UNITED STATES.--Nothing in this section shall be construed to abrogate or limit any right, remedy, or authority that the United States or any agency thereof may possess under any other provision of law or to waive sovereign immunity or to abrogate or limit any defense or protection available to the United States or its agencies, instrumentalities, officers, or employees under any other law, including any provision of chapter 171 of title 28, United States Code (relating to tort claims procedure).

 "(g) SEVERABILITY.--If any provision of this section, or the application of such provision to any person or circumstance, is held to be unconstitutional, the remainder of this section and the application of such remainder to any person or circumstance shall not be affected thereby.

 "(h) RULE OF CONSTRUCTION CONCERNING NATIONAL VACCINE INJURY COMPENSATION PROGRAM.--Nothing in this section, or any amendment made by the Public Readiness and Emergency Preparedness Act, shall be construed to affect the National Vaccine Injury Compensation Program under title XXI of this Act.

 "(i) DEFINITIONS.--In this section:

 "(1) COVERED COUNTERMEASURE.--The term 'covered countermeasure' means--

 "(A) a qualified pandemic or epidemic product (as defined in paragraph (7));

 "(B) a security countermeasure (as defined in section 319F-2(c)(1)(B));  or

**\*2828**
 "(C) a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)), biological product (as such term is defined by section 351(i) of this Act), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564 of the Federal Food, Drug, and Cosmetic Act.

 "(2) COVERED PERSON.--The term 'covered person', when used with respect to the administration or use of a covered countermeasure, means--

 "(A) the United States;  or

 "(B) a person or entity that is--

 "(i) a manufacturer of such countermeasure;

 "(ii) a distributor of such countermeasure;

 "(iii) a program planner of such countermeasure;

 "(iv) a qualified person who prescribed, administered, or dispensed such countermeasure;  or

 "(v) an official, agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv).

 "(3) DISTRIBUTOR.--The term 'distributor' means a person or entity engaged in the distribution of drugs, biologics, or devices, including but not limited to manufacturers;  repackers;  common carriers;  contract carriers;  air carriers;  own-label distributors;  private-label distributors;  jobbers;  brokers;  warehouses, and wholesale drug warehouses;  independent wholesale drug traders;  and retail pharmacies.

 "(4) MANUFACTURER.--The term 'manufacturer' includes--

Copr. ©  West 2006 No Claim to Orig. Govt. Works

"(A) a contractor or subcontractor of a manufacturer;

"(B) a supplier or licenser of any product, intellectual property, service, research tool, or component or other article used in the design, development, clinical testing, investigation, or manufacturing of a covered countermeasure;  and

"(C) any or all of the parents, subsidiaries, affiliates, successors, and assigns of a manufacturer.

"(5) PERSON.--The term 'person' includes an individual, partnership, corporation, association, entity, or public or private corporation, including a Federal, State, or local government agency or department.

"(6) PROGRAM PLANNER.--The term 'program planner' means a State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

"(7) QUALIFIED PANDEMIC OR EPIDEMIC PRODUCT.--The term 'qualified pandemic or epidemic product' means a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)), biological product (as such term is defined by section 351(i) of this Act), or **\*2829** device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is--

"(A)(i) a product manufactured, used, designed, developed, modified, licensed, or procured--

"(I) to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic;  or

"(II) to limit the harm such pandemic or epidemic might otherwise cause;  or

"(ii) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in clause (i); and

"(B)(i) approved or cleared under chapter V of the Federal Food, Drug, and Cosmetic Act or licensed under section 351 of this Act;

"(ii) the object of research for possible use as described by subparagraph  (A) and is the subject of an exemption under section 505(i) or 520(g) of the Federal Food, Drug, and Cosmetic Act;  or

"(iii) authorized for emergency use in accordance with section 564 of the Federal Food, Drug, and Cosmetic Act.

"(8) QUALIFIED PERSON.--The term 'qualified person', when used with respect to the administration or use of a covered countermeasure, means--

"(A) a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed; or

"(B) a person within a category of persons so identified in a declaration by the Secretary under subsection (b).

"(9) SECURITY COUNTERMEASURE.--The term 'security countermeasure' has the meaning given such term in section 319F-2(c)(1)(B).

"(10) SERIOUS PHYSICAL INJURY.--The term 'serious physical injury' means an injury that--

Copr. ©  West 2006 No Claim to Orig. Govt. Works

   "(A) is life threatening;

   "(B) results in permanent impairment of a body function or permanent damage to a body structure;  or

   "(C) necessitates medical or surgical intervention to preclude permanent impairment of a body function or permanent damage to a body structure.".

SEC. 3. COVERED COUNTERMEASURE PROCESS.

 Part B of title III of the Public Health Service Act is further amended by inserting after section 319F-3 (as added by section 2) the following new section:

<< 42 USCA §  247d-6e >>

"SEC. 319F-4. COVERED COUNTERMEASURE PROCESS.

 "(a) ESTABLISHMENT OF FUND.--Upon the issuance by the Secretary of a declaration under section 319F-3(b), there is hereby established in the Treasury an emergency fund designated as the 'Covered Countermeasure Process Fund' for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration, which **\*2830** Fund shall consist of such amounts designated as emergency appropriations under section 402 of H. Con. Res. 95 of the 109th Congress, this emergency designation shall remain in effect through October 1, 2006.

 "(b) PAYMENT OF COMPENSATION.--

 "(1) IN GENERAL.--If the Secretary issues a declaration under 319F-3(b), the Secretary shall, after amounts have by law been provided for the Fund under subsection (a), provide compensation to an eligible individual for a covered injury directly caused by the administration or use of a covered countermeasure pursuant to such declaration.

 "(2) ELEMENTS OF COMPENSATION.--The compensation that shall be provided pursuant to paragraph (1) shall have the same elements, and be in the same amount, as is prescribed by sections 264, 265, and 266 in the case of certain individuals injured as a result of administration of certain countermeasures against smallpox, except that section 266(a)(2)(B) shall not apply.

 "(3) RULE OF CONSTRUCTION.--Neither reasonable and necessary medical benefits nor lifetime total benefits for lost employment income due to permanent and total disability shall be limited by section 266.

 "(4) DETERMINATION OF ELIGIBILITY AND COMPENSATION.--Except as provided in this section, the procedures for determining, and for reviewing a determination of, whether an individual is an eligible individual, whether such individual has sustained a covered injury, whether compensation may be available under this section, and the amount of such compensation shall be those stated in section 262 (other than in subsection (d)(2) of such section), in regulations issued pursuant to that section, and in such additional or alternate regulations as the Secretary may promulgate for purposes of this section.  In making determinations under this section, other than those described in paragraph (5)(A) as to the direct causation of a covered injury, the Secretary may only make such determination based on compelling, reliable, valid, medical and scientific evidence.

 "(5) COVERED COUNTERMEASURE INJURY TABLE.--

 "(A) IN GENERAL.--The Secretary shall by regulation establish a table identifying covered injuries that shall be presumed to be directly caused by the administration or use of a covered countermeasure and the time period in which the first symptom or manifestation of onset of each such adverse effect must manifest in order for such presumption to apply.  The Secretary may only identify such covered injuries, for purpose of inclusion on the table, where the Secretary determines, based on compelling, reliable, valid, medical and scientific evidence that administration or use of the covered countermeasure directly caused such covered injury.

Copr. ©  West 2006 No Claim to Orig. Govt. Works

"(B) AMENDMENTS.--The provisions of section 263 (other than a provision of subsection (a)(2) of such section that relates to accidental vaccinia inoculation) shall apply to the table established under this section.

"(C) JUDICIAL REVIEW.--No court of the United States, or of any State, shall have subject matter jurisdiction to **2831** review, whether by mandamus or otherwise, any action by the Secretary under this paragraph.

"(6) MEANINGS OF TERMS.--In applying sections 262, 263, 264, 265, and 266 for purposes of this section--

"(A) the terms 'vaccine' and 'smallpox vaccine' shall be deemed to mean a covered countermeasure;

"(B) the terms 'smallpox vaccine injury table' and 'table established under section 263' shall be deemed to refer to the table established under paragraph (4);  and

"(C) other terms used in those sections shall have the meanings given to such terms by this section.

"(c) VOLUNTARY PROGRAM.--The Secretary shall ensure that a State, local, or Department of Health and Human Services plan to administer or use a covered countermeasure is consistent with any declaration under 319F-3 and any applicable guidelines of the Centers for Disease Control and Prevention and that potential participants are educated with respect to contraindications, the voluntary nature of the program, and the availability of potential benefits and compensation under this part.

"(d) EXHAUSTION;  EXCLUSIVITY;  ELECTION.--

"(1) EXHAUSTION.--Subject to paragraph (5), a covered individual may not bring a civil action under section 319F-3(d) against a covered person (as such term is defined in section 319F-3(i)(2)) unless such individual has exhausted such remedies as are available under subsection (a), except that if amounts have not by law been provided for the Fund under subsection (a), or if the Secretary fails to make a final determination on a request for benefits or compensation filed in accordance with the requirements of this section within 240 days after such request was filed, the individual may seek any remedy that may be available under section 319F-3(d).

"(2) TOLLING OF STATUTE OF LIMITATIONS.--The time limit for filing a civil action under section 319F-3(d) for an injury or death shall be tolled during the pendency of a claim for compensation under subsection (a).

"(3) RULE OF CONSTRUCTION.--This section shall not be construed as superseding or otherwise affecting the application of a requirement, under chapter 171 of title 28, United States Code, to exhaust administrative remedies.

"(4) EXCLUSIVITY.--The remedy provided by subsection (a) shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses, except for a proceeding under section 319F-3.

"(5) ELECTION.--If under subsection (a) the Secretary determines that a covered individual qualifies for compensation, the individual has an election to accept the compensation or to bring an action under section 319F-3(d).  If such individual elects to accept the compensation, the individual may not bring such an action.

"(e) DEFINITIONS.--For purposes of this section, the following terms shall have the following meanings:

"(1) COVERED COUNTERMEASURE.--The term 'covered countermeasure' has the meaning given such term in section 319F-3.

"(2) COVERED INDIVIDUAL.--The term 'covered individual', with respect to administration or use of a covered countermeasure pursuant to a declaration, means an individual--

**2832**
"(A) who is in a population specified in such declaration, and with respect to whom the administration or use of the covered countermeasure satisfies the other specifications of such declaration;  or

PL 109-148, 2005 HR 2863                                                            Page 118
 PL 109-148, December 30, 2005, 119 Stat 2680
**(Cite as: 119 Stat 2680)**

  "(B) who uses the covered countermeasure, or to whom the covered countermeasure is administered, in a good faith belief that the individual is in the category described by subparagraph (A).

  "(3) COVERED INJURY.--The term 'covered injury' means serious physical injury or death.

  "(4) DECLARATION.--The term 'declaration' means a declaration under section 319F-3(b).

  "(5) ELIGIBLE INDIVIDUAL.--The term 'eligible individual' means an individual who is determined, in accordance with subsection (b), to be a covered individual who sustains a covered injury.".

 This Act may be cited as the "Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006".

Approved December 30, 2005.

 LEGISLATIVE HISTORY--H.R. 2863:

 HOUSE REPORTS: No. 109-119 (Comm. on Appropriations) and 109-359 (Comm. of Conference).

 SENATE REPORTS: No. 109-141 (Comm. on Appropriations).

 CONGRESSIONAL RECORD, Vol. 151 (2005):

 June 20, considered and passed House.

 Sept. 29, 30, Oct. 3-7, considered and passed Senate, amended.

 Dec. 19, House agreed to conference report.

 Dec. 21, Senate agreed to conference report.

 WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 41 (2005):

 Dec. 30, Presidential statement.

 PL 109-148, 2005 HR 2863

 END OF DOCUMENT

Copr. ©  West 2006 No Claim to Orig. Govt. Works