UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISAINA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K" (2),  (3) |
| _____ | * | |
| | * | |
| PERTAINS TO LEVEE AND MR GO: | * | JUDGE DUVAL |
| | * | |
| | * |  Mag. J. KNOWLES |
| | * | |
| NO. 06-5116 (SIMS) | * | NO. 06-5134 (CHRISTOPHE) |
| NO. 06-5118 (RICHARD) | * | NO. 06-5137 (WILLIAMS) |
| NO. 06-5142 (AUGUSTINE) | * | NO. 06-5127 (DEPASS) |
| NO. 06-5132 (FERDINAND) | * | NO. 06-5128 (ADAMS) |
| NO. 06-5131 (BOURGEOIS) | * | NO. 06-5140 (PORTER) |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO CONDUCT
SETTLEMENT RELATED DISCOVERY**

**NOW INTO COURT,** through undersigned counsel, come the Plaintiffs in Case No. 06-5116 (*Sims*), Case No. 06-5118 (*Richard*), Case No. 06-5142 (*Augustine*), Case No. 06-5132 (*Ferdinand*), Case No. 06-5131 (*Bourgeois*), Case No. 06-5134 (*Christophe*), Case No. 06-5137 (*Williams*), Case No. 06-5127 (*DePass*), Case No. 06-5128 (*Adams*), and Case No. 06-5140 (*Porter*), who filed Complaints under F.R.C.P. 20,  to file this Reply to the Opposition nominally filed by the Board of Commissioners of the Orleans Levee District, the Orleans Levee District, the Board of Commissioners of the Lake Borgne Basin Levee District, the Lake Borgne Basin Levee District, the Board of Commissioners of the East Jefferson Levee District, the East Jefferson Levee District, the Board of Commissioners of the Southeast Louisiana Flood

Protection Authority -East, the Southeast Louisiana Flood Protection Authority –East (sic)[1], and St. Paul Fire and Marine Insurance Company, "Settling Defendants" in opposition to the Motion for Leave to Conduct Settlement Related Discovery.

Settling Defendants argue that the Motion and or the Relief sought is precluded by Order of Preliminary Certification of a Settlement Class and . . . Stay of Certain Claims and Actions [Doc. 16721], citing the fact that it "includes a stay of all Federal Pending Actions." Settling defendants then complain that "counsel for Movants . . . is also undertaking action to conduct 'settlement related discovery in state court" proceedings. A litany of reasons are then offered; "no showing information they seek is unavailable"; citing "in point of fact, Class Counsel have completed substantial discovery", absence of a "showing that discovery is relevant", that "the number of objections is too few", and "the Movants' interest too ill defined." Settling defendants then suggest that FRCP 23e requires court approval and cite the six factors of *Reed v. General Motors Corp.,* 703 F.2d 170 (5th Cir. 1983), "that courts should consider when assessing the fairness of a proposed settlement. *In re Prudential-Bache Energy Income Partnerships Securities Litig.,* 815 F.Supp 177, 180 (E.D. La. 1993 170 (5 Cir.;1983). Defendants seek to test Movers' need for relief by these *six fairness factors.*

### *Law & Argument*

Movers fail to see how a Motion for Leave for relief from a preclusive order can be prohibited by that order. Furthermore, before filing the Motion for Leave, counsel for Movants inquired of Class Counsel, and was advised that settlement related discovery was not precluded, only liability discovery. The email exchange is attached. As to discovery in State Pending

---

[1] The apparent error in the Opposition tracts the error in the Notice, in repeating Southeastern Flood Protection Authority - East

Actions, such discovery, it is not prevented by the Stay Order [Doc. # 16721]. Furthermore, such an order would be precluded by the Anti-Injunction Act[2], 28 U.S.C. § 2283 (1994 ed.).

As to discovery, initiated by Movants' counsel in State Court Proceeding, those plaintiffs seek materials from the Levee Board insurance agency and seek to depose the person most knowledgeable. Before proceeding, Counsel confirmed with Class Counsel that Levee Board underwriting and Claims documents had not been obtained from the Morrison Insurance Agency and St. Paul Fire & Marine had not been deposed.

Objections are not due until March 13, 2009, so Movers fail to see how behavior of potential objectors can be accurately assessed on the basis of conduct to date. *Affiliated Ute Citizens v. United States,* 406 U.S.128, 153-54, 31 L. Ed. 2d 741, 92 S. Ct. 1456 (1972) ("Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." At 153, 4.

Finally, and most significantly the Settlement is not to be tested by the six part <u>fairness</u> test of *Reed v. General Motors Corp.* alone, as Settling Defendants suggest. It is also to be tested by the more rigorous criteria applicable to Limited Fund Settlements under FRCP 23(b)(1)(B) *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 834, 119 S. Ct. 2295, 144 L.Ed.2d 715 (1999), and the more general concern, the "jaundice eye" on Certifications of a Class for Settlement purposes under *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L.Ed.2d 689

---

[2] "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

(1997).  Referring to FRCP 23(e) *Achem* instructs that "courts must be mindful that the Rule as now composed sets the requirements they are bound to enforce." At 2248.

***Limited Fund;***

The Supreme Court in *Fibreboard* reversed the certification of a mandatory FRCP 23(b)(1)(B) class of plaintiffs suffering from exposure to asbestos, finding that certain premises essential to maintain such an action were unsupported in the record.  "Specifically, the record showed (1) no evidence of the inadequacy of the fund to pay all claims, other than the agreement of the parties; (2) that potential claimants were not treated equitably among themselves; and (3) that the defendant (as opposed to its insurers) made only a *de minimis* contribution to the settlement, retaining virtually its entire net worth.  In an action to certify a mandatory class under a 23(b)(1)(B) limited-fund theory, 'the settling parties must present not only their agreement, but evidence on which the district court may ascertain the limit and the insufficiency of the fund.' *Ortiz,* 527 U.S. at 849, 119 S.Ct. 2295." *Williams v. Nat. Sec. Ins. Co.* 237 F.R.D. 685 (M.D.Ala., 2006)

> "The cases forming this pedigree of the limited fund class action as understood by the drafters of Rule 23 have a number of common characteristics, despite the variety of circumstances from which they arose."  In *Ortiz v. Fibreboard Corp., supra,* "The first and most distinctive characteristic is that the totals of the aggregated liquidated claims and the fund available for satisfying them*, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims."* Id. E*mphasis added*. Ibid

Inquiry into "the fund available . . . for satisfying claims" is the "most distinctive characteristic", necessarily requires discovery from St Paul Fire & Marine and the Levee Boards' insurance agency.  As such it is necessary to examine insurance coverages, and investigate policy limits, defense cost exposure before St Paul is released.  The claims paying ability of the Settling defendants is also relevant, under this most "significant and distinctive characteristic."  Settling

4

defendants attribute great importance to the prohibition against collection of judgments by seizure of assets of political subdivisions citing LSA R.S. 13:5109[3]. The restriction is not absolute. Do the Settling defendants suggest that the Limited Fund Doctrine requires that the putative class members, victims of their fault, resign themselves to the view that they will make no reparation, that the legislature will not "appropriate funds", and they will not dedicate their recoveries on FTLA claims to the settlement of victim claims? What of the non flood assets, taxes the Settling defendants employed in assembling non flood assets, including the $51,059,083 in non flood assets of Board of Commission[4] of OLD now that the Board has been eliminated effective January 1, 2007? And even if collection by seizure is restricted or more likely limited[5], seizure of assets is not the only way in which a judgment creditor may obtain payment from a political subdivision. LSA R.S. 33:741, *Authority to issue Bonds*; *West Jefferson Levee District v. Mayronne*, 622 So.2d 832; (La.App. 5 Cir.,1993); *Cf. Haspel & Davis Milling & Planting Co. Ltd. v. Board Of Levee Commissioners of The Orleans* Levee Board, 493 F.3d 570 (C.A.5 (La.), 2007).

---

[3] Louisiana Revised Statute 13:5109, which states:
> Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, ... shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, *or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.*

[4] LSA R.S. 38:307A  A board of commissioners shall, in addition to the powers herein conferred, be constituted a body politic or a political corporation invested with the powers inherent in corporations.

[5] LSA-R.S. 13:5106(3)(a)  "In any suit for personal injury against a political subdivision wherein the court, pursuant to judgment, determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the court shall order that a reversionary trust be established for the benefit of the claimant and that all medical care and related benefits incurred subsequent to judgment be paid pursuant to the reversionary trust instrument." Cf LSA R.S. 33:741, *Authority to issue Bonds*; *West Jefferson Levee District v. Mayronne*, 622 So.2d 832; (La.App. 5 Cir.,1993);

As to Settling Defendant East Jefferson Levee Board, Movers made an informal request via email on January 23, 2009, essentially requesting just such information, as follows:

> . . .  off the top of my head 1. I would like to know how many settlement final judgments have been entered against EJLD, and how much it has paid out annually since 1990. 2.  I need your Form 95;  3.  Also I may want to depose C.J. Nettles, and get dredging docs. on off centerline dredging which was to be the subject of the Motion to Compel; 4. I  will look at the financials and let you know if I have further questions, talk to Postlewaite, 5. I want to depose St Paul, and I'd like to make sure about policies in force. 6. May want to talk to Morrison Agency;

Under *Fibreboard* the second most distinctive characteristic of a Limited Fund Settlement is that the "whole of the inadequate fund was to be devoted to the overwhelming claims."  The third is that the "claimants identified by a common theory of recovery were treated equitably among themselves." *Fibreboard* at 2211.  Thus there must be both the *whole of inadequate fund* and it must be *equitably distributed*.  "The cases assume that the class will comprise everyone who might state a claim on a single or repeated set of facts, invoking *a common theory of recovery*, to be satisfied from the limited fund as the source of payment." Id. Movers are concerned that the number of putative members of the settlement class, considered in comparison to the settlement fund, may make equitable apportionment impracticable, if not impossible, and the cost involved in apportionment render the proposal prudentially moot.

*Fibreboard* mandates that the "claimants invited by a common theory of recovery (be) treated *equitably among themselves*", citing *Guffanti v. National Surety Co.,* 196 N.Y. 452, 458, 90 N.E. 174, 176 (1909), and *National Surety Co. v. Graves,* 211 Ala. 533, 534, 101 So. 190 (1924).  This is a further burden against which the settlement is to be tested.  *Guffanti,* for example, cited by the Court in *Fibreboard* as authoritative involved the ratable distribution of a bond ratably among victims asserting identical claims of ticket purchasers, against the seller who was adjudged bankrupt, and absconded.  Over the defendant's objection, the New York Court of

6

Appeals sustained the equitable class suit, citing among other considerations the fact that all recovery had to come from a "limited fund out of which the aggregate recoveries must be sought" that was inadequate to pay all claims, and subject to pro rata distribution. *Id.,* at 458, 90 N.E. 174, 90 N.E., at 176.

*Graves* involved a suit against a surety company by stockholders "for the benefit of themselves and all others similarly situated who will join the suit" where it was alleged that individual suits were being filed on surety bonds that "would result in the exhaustion of the penalties of the bonds, leaving many stockholders without remedy" Ibid  The *Fibreboard* majority observed "*Graves, supra,* at 534, 101 So., at 190 ('The primary equity of the bill is the adjustment of claims and the equitable apportionment of a fund provided by law, which is insufficient to pay claimants in full').  *The equity of the limitation is its necessity.*" At 2211 *Emphasis Added*

### *Certification for Partial Settlement Only*

F.R.C.P. Rule 23(e), reads in its entirety: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." "*This prescription was designed to function as an additional requirement, not a superseding direction, for the "class action" to which Rule 23(e) refers* is one qualified for certification under Rule 23(a) and (b)." *Achem, supra*, at 621.  "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted-that if a settlement is "fair," then certification is proper." Id. at 622.  *Achem* then made this observation in fn. 17, particularly appropriate here.  "We do not inspect and set aside for insufficient evidence District Court findings of fact. (Citation omitted).  Rather, we focus on the requirements of

7

Rule 23, and endeavor to explain *why those requirements cannot be met for a class so enormously diverse and problematic as the one the District Court certified."* Id.

In addition under *Achem* "(t)he inquiry appropriate under Rule 23(e), . . . . protects unnamed class members "from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise. See 7B Wright, Miller, & Kane § 1797, at 340-341." Id.  This is not to suggest that the Committee is fainthearted; but in fact the Committee is not asserting claims against the Louisiana Department of Transportation & Development nor against Jefferson Parish, the Jefferson Parish Drainage District and Aaron Broussard, actors against whom claims whose conduct and/or *garde* is alleged to be a proximate cause of the failure of the 17th Street Canal are being successfully prosecuted[6] in *Bennett et al v. East Jefferson Levee District et al*, NO. 635-594, 24TH Judicial District Court, c/w *de la Houssaye v. Parish of Jefferson et al* NO. 624-894, 24th Judicial District Court[7]. Furthermore, *Rodriguez et al v. New Orleans Sewerage & Water Board*, 2006-9763, Diggs *Reith v. New Orleans Sewerage & Water Board*, 06-9744 all pending in the Civil District Court for the Parish of Orleans, all similarly assert claims against LDOT, Jefferson Parish, the City of New Orleans, and the Port of New Orleans, not being prosecuted in this action.

And what is the Committee's intention going forward, if Settling defendants are released. No claims are asserted against the LDOT, Jefferson Parish, Aaron Broussard, or the Jefferson

---

[6] The Trial Court has denied Peremptory Dilatory and Declinatory Exception filed by Orleans Levee District La Dept of Transportation and Development, East Jefferson Levee District, Jefferson Parish, The Parish Drainage District and  Aaron Broussard and the City of New Orleans ,. Writ Applications have been denied in each case except the City.  The City's writ was not perfected.

[7] In January 2009 St. Paul Fire removed Bennett for a second time Bennett See 09-cv-0146.

8

Drainage District. None are asserted against the City. All that would remain would be FTCA and Admiralty Act claims against the United States. What if no class is certified, particularly given *Lundsford v. United* States, 57 F2d 221 (8th Cir.; 1977). The approval of this Settlement must address these issues as well.

What is proposed here, is eerily similar to the settlement class rejected in *Achem:* "The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." At 2251.

> "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *In re Joint Eastern and Southern Dist. Asbestos Litigation,* 982 F.2d 721, 742-743 (1992), modified on reh'g *sub nom. In re Findley,* 993 F.2d 7 (1993)

Other matters not addressed in the Proposed Settlement are implicated by a Rule 23(e) Partial Settlement. It is said that claims against the state are not released. Respectfully, are not the South Eastern Levee District Authorities East and West the state? Their Financials define them "as component units of the state."[8] What is the effect of the release of the Settling Defendants which include such "state component units" on the ability to prosecute claims against other state component units like La. DOT and La.DOA. Are we so sure that the accountability for the fault of one component unit of the state, can be separated from the fault of another, so claims against one are released and those against another are not? May a claims for fault for OLD's involvement in "non centerline" east side dredging of

---

[8] http://app1.lla.state.la.us/PublicReports.nsf

9

the 17th Street Canal, two feet below sheet piling, and the failure to monitor the effect of increase in volume and rate of drainage outflow flow, be released without releasing claims against LDOT for its complicity in the same cause?  Your Movers claim these works proximately caused the failure of the 17th Street Canal Levee.  Movers claim LDOT was intimately involved, that it too shares in the same fault.  How can we release the state and not release it?  And how, Movers ask, will it be possible to deal with the division of obligation between the state and the levee districts, component units of the state, between LDOT and the Levee Districts?[9]

Finally, Movers contend that the State delegated its duty for Flood protection to the Levee District.  Judge Duval said in connection with two of these cases, *DePass* and *Sims:*

> "it appears that maintenance of the levees involved would be the duty of either the Orleans Levee District and/or the East Jefferson Parish Levee District, . . .  It is primarily the state's duty to protect citizens from damage by flood which is inherent within its police power.  Such power, however, belongs to the state; the police power may be exercised by agencies of the state only under a delegation of authority. . . .  Thus, a levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection . . " Doc. 8390, *Depass*, pp. 10-11; Doc. 8387, *Simms,* pp. 9-10.

Is the duty delegable[10]?  Does the release of the "creature of the state. . . brought into existence for the purpose of discharging the state's duties", release the state?

---

[9] Art. 2324. Liability as solidary or joint and divisible obligation;
 B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation.  A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032

[10] "There are no clearly defined criteria for identifying duties that are nondelegable.  Indeed, whether a particular duty is properly categorized as "nondelegable" necessarily entails a sui generis inquiry, since the conclusion ultimately rests on policy considerations....  The most often

10

*Conclusion*

For the foregoing reasons the Motion for Leave to Conduct Settlement related Discovery should be granted

Respectfully submitted,

/s/ William C. Gambel
William C. Gambel (LA Bar No. 5900)
MILLING BENSON WOODWARD L.L.P  909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Telecopier:  (504) 569-7001
wgambel@millinglaw.com

JOHN  J. CUMMINGS, III, Bar # 4652
CUMMINGS & CUMMINGS
416 Gravier Street
New Orleans, LA 70130
Telephone: (504) 586-0000
Fax (504) 522-8423

---

cited formulation is that a duty will be deemed nondelegable when "'the responsibility is so important to the community that the employer should not be permitted to transfer it to another.'" . . . This flexible formula recognizes that the "privilege to farm out [work] has its limits" and that those limits are best defined by reference to the gravity of the public policies that are implicated." *Faughnan v. Big Apple Car Service* 828 F.Supp. 155 (E.D. N. Y. 1993).

CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that he has this <u>2nd</u> day of February, 2009, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

<u>/s/ William C. Gambel</u>

W380302