UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER: 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: *Robinson* (No. 06-2268) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY**

**INTRODUCTION**

In submitting its Notice of Supplemental Authority, the Defendant implicitly argues that the recently issued decision in *Freeman v. United States,* __ F.3d ___ (5th Cir. 2009) 2009 WL 146579 (January 22, 2009) changes the relevant legal landscape or at least bolsters its argument that the discretionary function exception ("DFE") to the Federal Tort Claims Act applies in our case. *Freeman* is easily distinguishable based on the nature of the unique emergency decisions involved there. *Freeman* changes nothing.

Without explanation or leave of Court, the Corps also takes this opportunity to re-cite the 12-year-old decision in *National Union Fire Insurance v. United States,* 115 F.3d 1415, 1419 (9th Cir. 1997). *National Union*—an outlier in DFE jurisprudence—does not remotely bear on the issues raised by the mandates of NEPA and or the FWCA.

As demonstrated below, the Government's latest filing, if it does anything, reinforces Plaintiffs' position that the Government cannot avail itself of immunity for the torts associated with the harm incurred by the MR-GO's design, construction, operation, and maintenance. The

1

Fish and Wildlife Coordination Act ("FWCA") and National Environmental Policy Act ("NEPA") prescribed mandatory (nondiscretionary), specific actions on the part of the Army Corps before it could undertake the activities that Plaintiffs claim caused the destruction of their homes and neighborhoods. Indeed, the MR-GO should never have commenced construction—nor continued in operation for more than a half centuries—in light of the Corps' absolute duty to assess the ship channel's significant adverse effects on the natural and human environment *and* report to Congress. Simply put, the Corps had no discretion not to comply with FWCA and NEPA.

## THIS COURT'S DFE ANALYSIS PRIOR TO *FREEMAN*

Before *Freeman*, this Court has repeatedly addressed, analyzed and swiftly rejected DFE arguments similar to those advanced by the Government in its latest supplemental filing. This Court earlier distinguished the current Plaintiffs' claims from the claims raised under the National Response Plan ("NRP") and the Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act")—the very statutes upon which the *Freeman* plaintiffs relied.

In *McWaters v. FEMA,* 436 F.Supp.2d 802 (E.D. La. 2006), an after-the-storm emergency response case, this Court held that FEMA is not absolutely immune from all judicial review and confirmed its own authority to review FEMA's actions as to any statutorily-mandated conduct. *Id*. at 814. Ultimately, this Court concluded that FEMA's delayed provision of temporary housing was not actionable under the Stafford Act and the Government's decisions about modifying its policy were "purely discretionary." *Id.* at 822. Like *Freeman, McWaters* is a classic example of inappropriate second guessing of rules to regulate the official conduct in an *emergency situation*.

2

In *In re Katrina Canal Breaches Consolidated Litigation*, 2008 WL 218640 *(O'Dwyer)* (E.D. La. May 27, 2008), this Court upheld the Government's assertion of the DFE in a setting far removed from the *Robinson* case. Once again, this Court reviewed controlling case law regarding the applicability of the DFE to post-Katrina emergency response under the NRP and the Stafford Act. This Court concluded that the relevant Homeland Security Presidential Directive did not prescribe any *specific* course of conduct, but rather included *directives to formulate a plan* without any specific requirements otherwise. Neither the Stafford Act nor the NRP served as the source of a mandatory duty because the language of the statutes were "couched in discretionary language." *Id.* at p. 8, note 1.

More importantly, in *O'Dwyer,* this Court rejected the contention that it should wait until final determination of this lawsuit before dismissing O'Dwyer's Complaint under the NRP. With reasoning applicable to distinguishing *Freeman,* this Court unambiguously distinguished the lawsuit of the *Robinson* Plaintiffs from *O'Dwyer*:

> *Robinson*, however, is a case alleging negligence in the construction of the Mississippi River-Gulf Outlet that caused overflowing of various canals and resulted in damage caused by a barge moored in one of those canals. [Citation omitted]. Put simply, the two suits are apples and oranges. *Robinson* does not make any allegation concerning the preparedness of government officials and their *emergency response*, and nothing in *Robinson* prevents this Court from adjudicating the matter at hand.

*Id.* at p. 11 (emphasis added).

### *FREEMAN*

Consistent with *McWaters* and *O'Dwyer, Freeman* generally holds that since the plaintiffs had not identified a specific mandatory obligation under the NRP (a statute specifically designed for "response to disasters"), the defendant's conduct was discretionary and thus immunized by the DFE. *Freeman* at p. 2, note 2.

3

As a preliminary matter, it cannot be overemphasized that unlike the NRP, which by necessity involves situations (*i.e.*, disasters) requiring immediate discretionary decisions for real time events, the FWCA and NEPA are more forward-looking statutes aimed at fully disclosing long term environmental consequences and mandating deliberate, considered decision-making with ample time for public comment. The Fifth Circuit concluded that the responsibility for developing emergency plans associated with NRP is necessarily, discretionary. *Id.* at *14. In stark contrast, the Government cites no authority to condone the failure to obey the legal mandates of the nation's environmental laws. The present lawsuit, of course, is not premised on negligence during an emergency (Hurricane Katrina) (*see O'Dwyer*, *supra*, at p. 11), but on the decades-long negligence concerning the MR-GO's design, construction, operation, and maintenance that *preceded* that emergency. *Freeman* and *Robinson* are apples and oranges.

The factual setting in *Freeman* is grim. The opinion begins with the retelling of several independent scenarios. Ms. Freeman's story is illustrative. She was chronically ill and house-bound when Katrina hit and her home flooded. She was transported to dry land at the Convention Center where she was met with squalid conditions. The Center was not equipped to help her. She died the day after she arrived. *Freeman* at *1.

Plaintiffs argued that the vague general guidelines incorporated into the NRP for "tasks that the government was to undertake in a catastrophic incident," including "Planning Assumptions" and "guiding principles," created an express legal mandate the government was duty bound to follow. *Id.* at *2. The Fifth Circuit disagreed. The appellate court held that the general "directives that plaintiffs cite permit agents to exercise judgment or choice that is subject to policy analysis" and "that the government's conduct under the NRP—even its failure to

provide food, water, shelter, medical assistance, and transport to the Convention Center and to the Cloverleaf—qualifies under the Stafford Act's discretionary function exception." *Id.* at *8.

*Freeman* simply represents an attempt to visit liability on the United States for delayed enactment of regulations and procedures under the NRP by cabinet level members of the executive branch. Moreover, the lawsuit impermissibly attempted to second guess the Government's allocation of resources after a disaster. These claims challenged conduct which is of the "nature and quality" which the DFE was intended to prohibit. In a nutshell, these wrongful death plaintiffs could not articulate any statutorily-mandated, specific conduct which FEMA violated and (fatal to their claims) challenged delays by Secretary Chertoff, et al., in the formation of policy or enactment of procedures and regulations. Instead, the *Freeman* plaintiffs relied upon general Mission Assignments which did not prescribe any course of relevant conduct.

Significantly for the *Robinson* case, *Freeman* reaffirmed the two-part test of *Berkovitz v. United States,* 486 U.S. 531 (1954) and *United States v. Gaubert,* 499 U.S. 315 (1991), for determining whether the Government's conduct qualifies as a discretionary function or duty under the DFE. The *Freeman* court noted that under *Gaubert* "[i]f a statute, regulation, or policy leaves it to a federal agency or employee to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Freeman* at *10. Conversely, "the discretionary function exception does not apply where "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id. quoting Berkovitz*, 486 U.S. at 536.

The Fifth Circuit noted that the mandatory nature of the language that upon which Plaintiffs purport to rely, was merely "a large number of NRP provisions that contain generalized, precatory, or aspirational language that is too general to prescribe a specific course of action for an agency or employee to follow." *Freeman* at *9. Plaintiffs focused on numerous provisions in the Catastrophic Incident Annex ("Annex"). The key, however, was the *context* the Annex was designed to address:

> The ostensibly mandatory language 'is required,' when read in light of the broad goals of the Annex-which "establishe[d] the context and overarching strategy" – *did nothing more than explain the needs that arise in an emergency*. Satisfaction of those needs was a broad, implied goal allowing for significant choice in its implementation by federal agencies.

*Id.* (emphasis added, internal citations omitted).

The Fifth Circuit acknowledged that the NRP inherently required discretion in the exercise of response planning responsibilities and which accordingly "permit agents to exercise judgment or choice…." *Id.* at *8. This is only natural. Emergencies call for subjective, split second decisions where an easily charted course may not exist. Legal prescriptions made at this level of generality do not satisfy *Gaubert's* and *Berkovitz's* specificity requirements. As the court noted, "[w]ere the law otherwise, the discretionary function exception would be a dead letter." *Id.* at *9 *citing Shansky v. United States,* 164 F.3d 688, 691 (1st Cir. 1999) and *Rosebush v. United States,* 119 F.3d 438, 442 (6th Cir.1997). Thus, the court concluded that "[u]nder the first prong of the *Berkovitz* test, plaintiffs fail to identify any specific, nondiscretionary function or duty that does not involve an element of judgment or choice." *Freeman* at *9.

By contrast, the *Robinson* Plaintiffs have set forth in elaborate detail both the mandates and the Corps' specific violations of those mandates under NEPA and the FWCA. These statutes represent the nation's long term, *mandatory* environmental policy. As the Government

6

acknowledges, the Corps' conduct with regard to the MR-GO is subject to NEPA. *Compliance with NEPA and the FWCA is simply not optional.* With regard to NEPA, the Corps has no option but to adhere to the directives of these compulsory statutes, regulations, and policies, and the FWCA absolutely required consultation with the relevant state and federal agencies *before* submitting a proposed water development project to Congress.

FWCA and NEPA are the antithesis of laws designed to give choice in emergency situations where time is of the essence and the potential for mistake is acutely magnified. The distinction is even more clearly drawn in the FWCA where "consultation" is required during the MR-GO's prolonged *initial planning*, which the Defendant admits occurred before it submitted the 1951 MR-GO Report to Congress. This would be an absurd requirement during an emergency.

Similarly, NEPA compliance entails an extended, deliberate process with specified requirements for subjects meaningfully discussed in an EIS, public comment, agency responses to comments, and eventual presentation to Congress. Typically, this process can take more than a year—all the more reason to insist upon strict compliance with the letter of NEPA. Otherwise, the law is a tattered scarecrow easily mocked by agencies like the Corps which is prone to evade its mandates. *See* Matrix of Reported Decisions Finding Army Corps Violations of Federal Environmental Laws (Doc. No. 16510-5), attached as Attachment "A" to Plaintiffs' Motion of Partial Summary Judgment on the DFE (Doc. No. 16510-2).

*Freeman* ultimately does nothing more than reaffirm the familiar *Berkowitz/Gaubert* paradigm and turns on the nature of the decisions the Government has to make under exigent circumstances. The Defendant argues that "it would be astonishing if its activities" concerning the MR-GO were not subject to the DFE. *See* Notice at p. 4. In fact, it would be astonishing if it

were ever determined that the mandatory language of NEPA and the FWCA do not mean what they plainly say, thereby conferring on the Corps discretion not to follow their legal prescriptions and proscriptions.

It is difficult to imagine Congress legislating more clearly its command that these two laws *shall be obeyed in* toto!  The mandates, guidelines and requirements of NEPA set forth when and under what circumstances a government agency must prepare or supplement Environmental Impact Statements. Likewise, before proposing a major inland waterway to Congress, the Corps "first shall consult" with the federal and state environmental agencies and must submit their views to Congress.

In the end, the Corps has "no rightful option but to adhere to the[se] directive[s].'" *Berkovitz*, 486 U.S. at 536.

## *NATIONAL UNION*

In an apparent act of desperation, Defendant has impermissibly filed a supplemental brief on a case decided 12 years ago and fully briefed in its earlier filings. Not surprisingly, its argument is nothing more than old wine in an old bottle.  *National Union Fire Insurance v. United States*, 115 F.3d 1415, 1419 (9th Cir. 1997) is totally inapposite to this case.

The Government invokes *National Union* and 33 U.S.C. § 541 for the discredited proposition that agencies like the Corps are required "to exercise policy-based judgment and choice when prosecuting public works projects." Implicit in this argument is the assertion that the putative exercise of judgment somehow trumps the mandatory nature of NEPA and the FWCA.  *See* Notice at p. 5.  This argument fails for two reasons.

First, if the two-prong DFE test is to mean anything, the first prong must be applied *before* any consideration of whether the challenged decisions involved policy-based judgments

of the nature and quality that Congress sought to shield by the DFE. If (as Plaintiffs have shown) there is a mandatory legal duty requiring specific conduct by the agency and that duty was breached, that is the end of the analysis. The Court never proceeds to the second prong. *Berkovitz*, 486 U.S. at 536.

Second, as Plaintiffs have pointed out on previous occasions, the language of 33 U.S.C. § 541 does not support the Defendant's contention. That statute merely states "the Corps is required by this statute to make a judgment balancing these sometimes conflicting considerations: (1) how much commerce benefits from the project; (2) what kind of commerce; (3) how much the project will cost; (4) how necessary is the work; (5) should the work be built, continued or maintained by the federal government, or some other entity." The statute does not supplant, much less excuse the Corps from, Congressional mandates; rather it creates a Board of Engineers for Rivers and Harbors, and sets forth their duties and powers generally. The Corps offers no authority, and cites no case law, to support the contention that 33 U.S.C. § 541 was intended to be interpreted as overriding Congressional mandates.

Furthermore, *National Union* is readily distinguishable from our case. In *National Union*, the Corps, when confronted with the need to remedy a known defective condition, opted to leave the status quo, while it proceeded with studies directed toward more substantial improvement, delaying action until, in its discretion, it could roll smaller repair efforts into a larger scale improvement at a later date. As the Ninth Circuit noted, under the circumstances of that case, no immediate repair or other action was mandated of the Corps: "No regulation or policy required the Corps to do something that it failed to do. No individual violated any specific regulation or policy." *National Union,* 115 F.3d at 1421.

Quite to the contrary here, when confronted with the knowledge of a defective condition created by the Corps itself, separate from any obligation of repair, the agency was obliged under the requirements of NEPA to advise decision-makers of the direct and indirect consequences of its actions as well as the reasonably foreseeable impacts of its actions *prior* to engaging in additional harmful actions. Rather than satisfy the mandates of NEPA, the Corps stubbornly (and illegally) continued to engage in harmful conduct, exacerbating the harmful conditions with regard to the MRGO, without advising Congress or any relevant decision-makers of the consequences of its conduct through an obligatory Environmental Impact Statement or through supplementing any previous Environmental Impact Statements as required under the mandates of NEPA.

Finally, *National Union* should rightly be regarded as a sport on the law out of line with the consensus of federal courts which have ruled that failing to remediate known safety hazards is not the kind of decision that Congress intended to insulate with the DFE. Indeed, the continued viability of *National Union* in the Ninth Circuit is dubious as evidenced by the Ninth Circuit's later, well reasoned decision holding that the Government is liable for failure to remove debris from an irrigation canal, *i.e.*, "routine maintenance of its property," in *O'Toole v. United States*, 293 F.3d, 1029 1036 (9th Cir. 2002) ("We hold that an agency's decision to forego, for fiscal reasons, the routine maintenance of its property – maintenance that would be expected of any other landowner – is not the kind of policy decision that the discretionary function exception protects.")

For the foregoing reasons, this Court should deny the Defendant's motion to dismiss, and in the alternative, motion for summary judgment, and grant Plaintiffs' motion for summary judgment.

Dated: February 9, 2009                                             Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell

Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone: (213) 347-0290
Fax: (213) 347-0298

**Law Offices of Joseph M. Bruno**
By: s/ Joseph M. Bruno
Joseph M. Bruno (LSBA No. 3604)
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile: (504) 581-1493

**The Andry Law Firm, LLC**
By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504) 585-1788

**Domengeaux Wright Roy & Edwards LLC**
Bob F. Wright (LSBA No. 13691)
James P. Roy (LSBA No. 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile: (337) 233-2796

**Fayard & Honeycutt**
Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile: (225) 664-6925

**Girardi & Keese**
Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile: (213) 481-1554

**Ranier, Gayle & Elliot, LLC**
N. Frank Elliot III
1419 Ryan Street

**Levin, Papantonio, Thomas, Mitchell Echsner & Proctor, P.A.**
Clay Mitchell (*pro hac vice*)

Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile: (850) 436-6123

**McKernan Law Firm**
Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile: (225) 926-1202

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**
Gerald E. Meunier (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile: (504) 528-9973

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**
Elwood C. Stevens, Jr. (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile: (985) 385-4861

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**
Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Robinson, Calcagnie & Robinson, Inc.**
Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

The Honorable James D. "Buddy" Caldwell (No. 2211)
**ATTORNEY GENERAL,**
**STATE OF LOUISIANA**
James Trey Phillips (No.19978)
ASSISTANT ATTORNEY GENERAL,
STATE OF LOUISIANA
Sallie J. Sanders (No. 11703)
ASSISTANT ATTORNEY GENERAL,
STATE OF LOUISIANA

1885 North Third Street, 6th Floor
Baton Rouge, LA 70802
Telephone: (225)326-6040
Telefax: (225)326-6097
**By: /s/ James D. "Buddy" Caldwell**
**Attorney for Amicus, THE STATE OF LOUISIANA**

Craig P. Taffaro, Jr., St. Bernard Parish President
Wayne J. Landry, Chairman of the St. Bernard Parish Council
RICHARD A. TONRY (LSB #12859)
MICHAEL C. GINART, JR. (LSB#18910)
CULLEN A. TONRY (LSB#29457)
**LAW OFFICES OF TONRY & GINART**
2114 Paris Road
P.O. Box 32
Chalmette, Louisiana 70044-0032
Telephone: 504-271-0471
Facsimile: 504-271-6293
**By: /s/ RICHARD A. TONRY, Esq**
**Attorney for Amicus, St. Bernard Parish Government**

O.H. Storey (Arkansas Bar No. 69078)
Marcus V. Brown (La. Bar No. 18817)
Leila A. D'Aquin (La. Bar No. 18884)
Entergy Services, Inc.
639 Loyola Avenue, Suite 2600
New Orleans, LA  70113
Tel:  504-576-2765
Fax:  504-294-5302
and
Ewell E. Eagan Jr. (La. Bar No. 5239), T.A.
A. Gregory Grimsal (La. Bar No. 6332)
Wendy Hickok Robinson (La. Bar No. 25225)
Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P.
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana  70170-4000
Telephone: (504) 582-1111
Fax: (504) 582-1121

**By**: /s/ *Ewell Eagan, Jr Esq.,*
**Attorneys for Amicus, Entergy New**
**Orleans, Inc., Entergy Louisiana, L.L.C.,**
**Entergy Services, Inc., and Entergy**
**Corporation**

Elisa T. Gilbert, Esq (ETG 5713), T.A.
Brendan R. O'Brien (BO 9033)
The Gilbert Firm, LLC

325 East 57th Street
New York, NY 10022
Telephone (212) 286-8524
Fax: (212) 286-8522
and
Ernest Svenson, Esq. (17164)
The Svenson Law Firm, LLC
432 Henry Clay Avenue
New Orleans, LA 70118-5724
504-208-5199

**By: /s/** *Elisa T. Gilbert, Esq.*
**Elisa T. Gilbert, Esq.**
**Attorneys for Amicus, Hartford Steam Boiler**
**Inspection and Insurance Company a/s/o Entergy New Orleans, Inc., Entergy Louisiana, L.L.C.,**
**Entergy Services, Inc., and Entergy Corporation**

## **CERTIFICATE OF SERVICE**

I, Pierce O'Donnell, hereby certify that on February 9, 2009, I caused to be served **PLAINTIFFS' RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY**, upon Defendants' counsel, Robin D. Smith, George Carter, Keith Liddle, and Richard Stone by ECF and email at robin.doyle.smith@usdoj.gov; george.carter@usdoj.gov, keith.liddle@usdoj.gov, and richard.stone@usdoj.gov.

/s/ Pierce O'Donnell