UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| | * * | NO. 05-4182 and consolidated cases |
| PERTAINS TO: BARGE | * * | SECTION "K" (2) |
| *Boutte v. Lafarge* 05-5531 | * | |
| *Mumford v. Ingram* 05-5724 | * | |
| *Lagarde v. Lafarge* 06-5342 | * | JUDGE |
| *Perry v. Ingram* 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* 06-7516 | * | |
| *Parfait Family v. USA* 07-3500 | * * * | MAGISTRATE JOSEPH C. WILKINSON, JR. |

LAFARGE NORTH AMERICA INC.'S
SUPPLEMENTAL SURREPLY MEMORANDUM
AND CITATION OF SUPPLEMENTAL AUTHORITY IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs' "sur-surreply" memorandum, which purports to be primer on maritime law (Docs. 17422), is inaccurate or incomplete in every respect relevant to the class certification motion that it is supposed to support. Though LNA hesitates to burden the Court with further briefing, this short rejoinder is necessary to correct plaintiffs' false accusations of "material misstatements" and "misquotes" on the part of LNA. Doc. 17391 at 1; Doc. 17422 at 1-2.

**1. Allocation of liability.**

The need to allocate liability is relevant to class certification because of the individual issues raised by allocation. See Doc. 16675 at 6-7. Plaintiffs wrongly assert (at 1-5) that allocation of liability among defendants and third-party defendants would never be necessary in a trial of this action, even accusing LNA (at 2) of "misquot[ing] the law" by having referred to

this Court's prior ruling that "[i]f Lafarge is found partially negligent, it will be held liable *only for its proportional damage*." Doc. 16574 at 18 (emphasis added [by LNA])." In fact, however, LNA rendered the quotation just as this Court wrote it, noting where emphasis was supplied by LNA (Doc. 16675 at 7). Moreover, this Court's statement of the law is correct, as shown by the very cases plaintiffs cite in their "sur-surreply." Thus, in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979), the Supreme Court noted the maritime rule requiring the "division of damages between parties before the court on the basis of their comparative fault," and held that in maritime cases "damages are simply allocated accordingly" among any such parties. *Id.* at 271-72 & n.30 (citing *United States v. Reliable Transfer*, 421 U.S. 397 (1975)). In *Coats v. Penrod Drilling Corp.,* 61 F.3d 1113 (5th Cir. 1995) (en banc), the Fifth Circuit likewise acknowledged that "[i]n *Reliable Transfer*, the Supreme Court adopted a rule requiring the assessment of damages on the basis of proportionate fault" in maritime cases. *Coats,* 61 F.3d at 1128. And in *Becker v. Crounse Corp.*, 822 F. Supp. 386 (W.D. Ky. 1993), the third case quoted and relied upon by plaintiffs (at 4-5), the court held that "the liability of joint tortfeasors for maritime injury 'is to be allocated among the parties proportionately to the comparative degree of their fault.'" *Id.* at 392 (quoting *Reliable Transfer*). Though LNA cited *Reliable Transfer* in its opposition (Doc. 16405 at 22 n.51) and its surreply (Doc. 16675 at 7 n.12), plaintiffs have no answer to this governing authority requiring allocation of damages in maritime cases.

Instead, plaintiffs dwell on the irrelevant concept that under joint and several liability, "the risk of noncollection is borne by the defendants." Doc. 17422 at 2, 4-5. This concept is irrelevant because a rule governing who bears the risk of collecting a judgment has nothing at all to do with "how the proposed class-action trial will be conducted on the merits," which is the touchstone for class certification. *Gene & Gene LLC v. Biopay, LLC*, 541 F.3d 318, 327 (5th Cir.

2008). In the three cases plaintiffs cite and quote in this portion of their "sur-surreply" brief (at 3-5), the courts actually allocated liability between and among joint tortfeasors (*Edmonds*, 443 U.S. at 258; *Coats*, 61 F.3d at 1118), or explained that the trial would require an allocation of liability subject only to the possibility that, after the trial, the plaintiff might pursue collection of the entire amount from one defendant or another (*Becker*, 822 F. Supp. at 392 n.5). In short, a trial of this case would require the factfinder to evaluate and assess the relative contribution of all causes of plaintiffs' injuries, so that liability can be found (or not) and damages can be allocated among any parties held liable, raising individual issues. See Doc. 16405 at 22.

### 2. Divisibility of harm.

In *Edmonds*, the Supreme Court expressly stated that joint-and-several liability principles "of course, are inapplicable where the injury is divisible and the causation of each part can be separately assigned to each tortfeasor." 443 U.S. at 260 n.8. Thus, to sustain their position that joint and several liability applies, plaintiffs are forced to argue (at 5-6) that flood damages are "indivisible" – that is, "obviously incapable of any reasonable or practical division." This argument is flatly wrong, as shown (again) by the very sources plaintiffs cite. In particular, the Restatement (Second) of Torts expressly states that damage from "flooding" is a "divisible harm" that "may be apportioned" among tortfeasors. Restatement (Second) of Torts § 433A, comment d (copy attached to LNA's surreply, Doc. 16675). The Restatement also provides that "apportionment may be made where a part of the harm can fairly be assigned to an innocent cause, as where the defendant's dam or embankment combines with an unprecedented and unforeseeable rainfall to flood the plaintiff's land, and it is clear that a part of the flood would have resulted in any event from the rainfall alone." *Id.*, comment e.[1] Plaintiffs cite ***no*** case

---

[1]. The Prosser and Keeton treatise, also cited by plaintiffs (at 6), likewise provides that flooding is a divisible harm, such that the defendant is "liable only for such portion of the total damage as may properly be attributed to the

authority for the proposition that flooding damages are "indivisible," and have no answer for the many cases cited by LNA holding that flooding is a divisible harm. Doc. 16675 at 5-6 & n.10.

### 3. Substantial factor causation.

Plaintiffs pay lip service (at 6-7) to the "substantial factor" test for causation, but wrongly persist in asserting (at 2) that LNA can be held liable for all of their damages "regardless of the degree of fault." To the extent this assertion is meant to suggest that LNA is liable for the entire flood if it contributed "any degree of flooding" no matter how small, as plaintiffs previously argued (Doc. 16571 at 11, 31), it is flatly wrong. The Supreme Court in *Edmonds* expressly recognized that "[i]n many cases, of course, the shipowner whose act or omission contributed only a very small percentage of the total negligence will avoid liability on the ground of lack of causation." 443 U.S. at 265 n.15. Thus, "a very small percentage" would generally not suffice to render LNA liable for *any* of plaintiffs' damages, much less all of them. Though plaintiffs cite *Edmonds* and *Coats* (at 7-8) as examples of cases in which a tortfeasor was held liable based on a 20% contribution to the harm, these cases do not establish that any contribution will do, no matter how small. On that subject, plaintiffs have no answer for the many cases refusing to find *any* liability for defendants whose contributions to plaintiffs' injuries were quantifiable but de minimis. Doc. 16675 at 4-5 & n.8.[2] These cases establish that, in any trial of this case, individualized assessments will be required to determine whether LNA's contribution to the

---

defendant's negligence." W. Keeton et al., *Prosser & Keeton on Torts* § 52 at 349 (5th ed. 1984). The one case plaintiffs cite involved spoiled medicine, not flooding. *Project Hope v. M/V Ibn Sina* 250 F.3d 67, 76 (2d Cir. 2001).

[2] Moreover, the "substantial factor" test has more teeth than plaintiffs imply. See, *e.g.*, *Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1013 (5th Cir. 1980) ("A defendant's actions must be the cause in fact of a plaintiff's injuries in order for the plaintiff to be able to recover."); *American River Transp. Co. v. Kavo Kaliakra SS,* 148 F.3d 446, 450-51 (5th Cir. 1998) (barges moored abreast were not substantial factor because accident was dominated by other vessel's loss of power); 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5.3 at 189-90 (4th ed. 2004) ([A] "defendant's act cannot be a 'substantial factor' if the plaintiff's harm would have occurred without it.").

individual plaintiff's damages, if any, rises above the level necessary to impose liability in the first instance.[3]

### 4. Applicability of *McDermott v. AmClyde*

Finally, plaintiffs argue (at 8-10) that their joint-and-several liability theory is unaffected by the Supreme Court's decision in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994). In *McDermott*, the Supreme Court held that joint and several liability does not apply to the proportionate share of any settling defendant because the plaintiff's inability to recover from such defendant has been "limited not by outside forces, but by its own agreement to settle." *Id.* at 221. The same principles apply when a plaintiff's recourse against a particular entity has been limited by the plaintiff's "own decision" to voluntarily refrain from suit. *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 325 (3d Cir. 2003). Thus it is not true that LNA would be required to pay the share of a defendant with which the plaintiffs have settled or which the plaintiffs chose voluntarily not to sue. Allocation to such entities is required, raising individual issues.[4]

### 5. Effect on class certification.

The thrust of plaintiffs' "sur-surreply" memorandum is that a class action trial in this case would be a simple affair because maritime joint-and-several liability principles would obviate the need for individualized fault and causation determinations. This argument is wrong because: (1) Individualized determinations are required as to whether LNA's contribution to the plaintiff's harm (if any) was greater than a "small percentage" contribution (*i.e.,* that LNA was a

---

[3] Plaintiffs assert (at 6 & n.4) that "at the very least, the barge was a significant factor contributing to the breaches," citing an IPET "interim" report which says that "barge impact is a ***potential*** contributor to failure of a floodwall." (Emphasis added). As the Court is well aware, however, IPET and all the other public investigations ultimately concluded that the barge did ***not*** cause the floodwall failures, or that the failures resulted from other causes. See Doc. 16405 at 3 n.8.

[4] Plaintiffs draw no support from their citation to *Westinghouse Credit Corp. v. M/V New Orleans,* 39 F.3d 553 (5th Cir. 1994), in which the court found that the case involved "two distinct harms" and thus had no occasion to apply joint and several liability in the first place. *Id.* at 556.

5

"substantial factor" in the particular plaintiff's harm); (2) Even apart from causation, the factfinder must allocate damage and fault at each property, because there is no joint liability for divisible harms, and flood damage is a divisible harm; and (3) Even as to indivisible harm, the factfinder must allocate damage and fault because (a) there is no joint liability for defendants that have settled or have been placed beyond reach by plaintiffs' own conduct; and (b) allocation of liability among all defendants and third-party defendants that are before the Court is required by *Edmonds* and *Reliable Transfer*. In short, not a single argument in plaintiffs' "sur-surreply" has any merit.

### 6. Citation of supplemental authority.

LNA respectfully directs the Court's attention to the Third Circuit's recent decision in *In re: Hydrogen Peroxide Antitrust Litigation*, No. 07-1689, 2008 U.S. App. LEXIS 26871 (3d Cir. Dec. 30, 2008) (copy attached). This decision is relevant to the arguments in LNA's opposition (at 33-43) and surreply (at 10-13) regarding the burden of demonstrating that the requisite elements for class certification have been met and the standards for the court's review of expert evidence. Rather than invite yet another round of briefing, LNA will refrain from argument regarding this new authority, but will be prepared to answer questions about it at oral argument.

        Respectfully submitted,

        Robert B. Fisher, Jr., T.A. (#5587)
        Derek A. Walker (#13175)
        Ivan M. Rodriguez (#22574)
        **CHAFFE MCCALL, L.L.P.**
        2300 Energy Centre
        1100 Poydras Street
        New Orleans, LA 70163-2300
        Telephone: (504) 585-7000
        Facsimile: (504) 585-7075
        Fisher@chaffe.com
        Walker@chaffe.com

/s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4240
jaldock@goodwinprocter.com
rwyner@goodwinprocter.com
mraffman@goodwinprocter.com

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

*Attorneys for Lafarge North America Inc.*

### Certificate of Service

I do hereby certify that I have on this 5th day of February, 2009 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ John D. Aldock