UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | | |
|---|---|---|---|---|
| **IN RE:** | **KATRINA CANAL BREACHES** | * | **CIVIL ACTION** |
| | **CONSOLIDATED LITIGATION** | * | |
| | | * | **NO. 05-4182** |
| | | * | |
| **FILED IN:** | **09-0145** | *de la Houssaye* | * | **SECTION "K"(2)** |
| | **09-0146** | ***Bennett*** | * | |
| | | * | |
| **PERTAINS TO: LEVEE** | | * | |
| | | * | |

ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S
OPPOSITION TO MOTION TO REMAND

**NOW INTO COURT**, through undersigned counsel, comes St. Paul Fire and Marine

Insurance Company ("St. Paul") which respectfully submits this Opposition to the Motion to

Remand filed by the plaintiffs, Gayle T. Bennett, William T. Bennett, Donna S. Cummings,

Kenneth Gordan and Diane Gordan ("Plaintiffs"). As detailed below, St. Paul asserts that it is a

"primary defendant" under CAFA as it has been sued directly by the Plaintiffs under the

Louisiana Direct Action statute and the assets of its policyholders are immune from seizure,

making St. Paul the only defendant with potential exposure for any judgment that may be

obtained against the Orleans Levee District or East Jefferson Levee District. As St. Paul is a

"primary defendant," none of the limited exceptions to federal jurisdiction under CAFA apply.

## I.    FACTS AND PROCEDURAL HISTORY

On October 27, 2005, Maurice de la Houssaye ("de la Houssaye") filed suit in the

24th Judicial District Court for the Parish of Jefferson, State of Louisiana, No. 624-894, on behalf

of himself and as representative of the class of persons who were flood victims following Hurricane Katrina. Through the original petition and an amended petition filed on October 31, 2006, the named defendants were the Parish of Jefferson, a political subdivision of the State of Louisiana; Aaron Broussard; and American Alternative Insurance Corporation ("AAIC"), a foreign insurer. St. Paul was not originally named as a Defendant in the *de la Houssaye* case.

On August 28, 2006, Gayle T. Bennett, William T. Bennett, Donna Cummings, Kenneth Gordon and Diane Gordon ("Bennett") filed a similar suit in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Suit No. 635-594, on behalf of themselves and others similarly situated alleging that they sustained damages caused as a result of Hurricane Katrina-related flooding. Named as defendants in the *Bennett* lawsuit were the Board of Commissioners of the East Jefferson Levee District ("EJLD"), the Drainage Department of the Public Works Department of Jefferson Parish, Jefferson Parish, the Sewerage and Water Board of New Orleans, the Board of Commissioners of the Orleans Levee District ("OLD"), the City of New Orleans, the Louisiana Department of Transportation and Development, and the Board of Commissioners of the Port of New Orleans. St. Paul was not originally named as a defendant in the *Bennett* case.

On December 22, 2006, the *Bennett* and *de la Houssaye* matters were consolidated for discovery purposes. Thereafter, on May 29, 2007, a Master Consolidated Class Action Petition was filed by all of the named plaintiffs, which petition superseded and replaced the previously filed petitions. The Master Consolidated Class Action Petition added the Sewerage and Water Board of New Orleans ("SWB") as a defendant, but still did not name St. Paul.

On June 5, 2007, the SWB timely removed both actions pursuant to CAFA. On August 31, 2007 this Court remanded the matter finding that the Home State Exception to CAFA applied

to the action. This Court did not address the Plaintiffs' other abstention arguments with respect to remand. *Bennett v. Board of Comm. for East Jefferson Levee District*, 2007 WL 2571942 (E.D. La. 2007). The SWB sought review by the Fifth Circuit Court of Appeal, but on April 8, 2008, the Fifth Circuit denied the appeal on procedural grounds, specifically stating, "We do not reach, and express no opinion on, the merits of the appeal." (Ex. 1 to Rec. Doc. No. 18).

On December 8, 2008, over a year after this Court remanded the *Bennett* matter, a Second Amended Master Consolidated Class Action Petition was filed which named St. Paul as a defendant for the first time in this matter as the insurer of the OLD and EJLD. (See Ex. 5 to Rec. Doc. 1, Second Amendment to Master Consolidated Class Action Petition.) On December 26, 2008, St. Paul was served with the Second Amended Master Consolidated Class Action Petition and with discovery in the form of Requests for Admission and Requests for Production. On January 16, 2009, St. Paul timely removed both the *Bennett* and *de la Houssaye* matters to this Court. (Rec. Doc.1, Removal).

On January 19, 2009, Plaintiffs' counsel demanded that St. Paul withdraw its removal pleadings and indicated Plaintiffs' intent to file a Motion to Remand. (Ex. A, Correspondence of January 19, 2009). On January 21, 2009 St. Paul responded to the letter and filed its Answer to the Petition. Although St. Paul believes it was not obligated to do so at that time, out of an abundance of caution St. Paul also responded to the discovery propounded with the Petition on that date. St. Paul and Plaintiffs remain in dispute regarding the discovery propounded to St. Paul. However, during a Rule 37.1 teleconference, counsel for Plaintiffs' acknowledged that he had named St. Paul in *Bennett* and *de la Houssaye* and issued the discovery in order to explore matters related to the class settlement in *In Re Katrina Consolidated Litigation* and that the discovery was not propounded with respect to specific issues on the merits of the case in either

*Bennett* or *de la Houssaye*. Notably, if approved, the class settlement agreement reached with class plaintiffs in federal court will resolve all of the claims asserted by the *Bennett* and *de la Houssay*e plaintiffs against St. Paul, OLD and EJLD. (See Ex. 2, Rec. Doc. No. 16647-2, Case No. 05-4182, Class Settlement Agreement).

On February 3, 2009, Plaintiffs filed a Motion to Remand both the *Bennett* and *de la Houssaye* matters[1] reurging and incorporating by reference their arguments made in support of the Remand in *Bennett* and *de la Houssaye* when these matters were removed by the SWB. (Rec. Doc. Nos. 12 and 13 incorporating Rec. Doc. Nos. 8, 23, and 28)[2]. To the extent this Memorandum does not fully address all of the issues raised in Plaintiffs' papers, St. Paul incorporates by reference the responsive arguments in SWB's Opposition to Remand and Reply Memorandum. (Rec. Doc. Nos. 25, 34, 32 in Case Nos. 07-3131 and 07-3130).

## II.     LAW AND ARGUMENT

The crux of Plaintiffs' remand argument is that the majority of the class plaintiffs and the "primary defendants" are citizens of Louisiana and, therefore, CAFA's local controversy exceptions apply. However, St. Paul is a "primary defendant" within the meaning of CAFA because its insurance policies provide the ***only*** source of recovery should plaintiffs prevail on their claims against OLD and EJLD. Moreover, Plaintiffs have named St. Paul as a direct defendant pursuant to La. R.S. 22:1269. Under these circumstances, St. Paul is the only genuine "target" of Plaintiffs' claims against the OLD and EJLD, and it is a "primary defendant" within the meaning of CAFA.

### A.     This Court has Jurisdiction under CAFA's Jurisdictional Grant

---

[1]

[2] Although Plaintiffs simply cite to Rec. Doc. Nos. 8, 23, and 28, St. Paul assumes that these documents do not refer to documents filed in this captioned case but refer to docket numbers in the previously removed matters of Case Nos. 07-3131 and 07-3130.

CAFA, the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), provides this Court with jurisdiction over any action in which the matter in controversy exceeds the sum or value of $5,000,000 and is a class action where:

(A)     any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B)     any member of a class of plaintiffs is a foreign state or citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C)     any member of the class of plaintiffs is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign state.

This Court clearly has jurisdiction over this matter under CAFA. First, minimal diversity of citizenship exists here as St. Paul is a foreign insurer incorporated in Minnesota with its principal place of business in Minnesota and Class Plaintiffs are residents of Louisiana and Texas. Plaintiffs make no allegation in their Motion to Remand that minimal diversity does not exist.

Nor do plaintiffs allege that the amount in controversy fails to satisfy CAFA's requirements. CAFA allows for the aggregation of each class members claim to meet the jurisdictional amount. 28 U.S.C. § 1332(d)(6). The Master Consolidated Class Action Petition in this matter seeks damages ranging from property damage to mental anguish and future health risks for thousands allegedly harmed by Katrina-related flooding. The allegations of the Petition make it clear that at least $5 million is in controversy. *See e.g. Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545 (5th Cir. 2006). Further, St. Paul's policies with respect to the OLD provide $1,000,000 in primary coverage and $9,000,000 in excess coverage. With respect to EJLD, St. Paul's policy provides $1,000,000 in primary coverage and $4,000,000 in excess coverage. Thus, St. Paul's potential exposure – which Plaintiffs contend is a "drop in the

bucket" of the total claims at issue – alone exceeds the $5,000,000 jurisdictional requirement of CAFA. (See Ex. B, Policy Coverage Summaries).

In an effort to avoid federal court jurisdiction, the Plaintiffs rely on several limited exceptions to CAFA provided for in that statute. However, each of those exceptions are inapplicable to this suit.

**B.      The "Discretionary", "Home State", and "State Action" Exceptions to CAFA are Inapplicable because St. Paul is a "Primary Defendant"**

All but one of the exceptions to CAFA jurisdiction raised by the Plaintiffs hinge on the Court's interpretation of the term "primary defendant" as utilized in CAFA and whether or not St. Paul constitutes a "primary defendant" under CAFA. Specifically, Section 1332(d)(3) (the Discretionary Exception) states that a district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under CAFA over a class action "in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate *and the primary defendants* are citizens of the State in which the action was originally filed . . . ." 28 U.S.C. 1332(d)(3) (emphasis added).

Similarly, under Section 1332(d)(4)(B) (the Home State Controversy Exception), a district court shall decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, *and the primary defendants*, are citizens of the State in which the action was originally filed." 28 U.S.C. 1332(d)(4)(B) (emphasis added). Finally, Section 1332(d)(5)(A) (the State Action Exception), states that CAFA "shall not apply to any class action in which [] *the primary defendants* are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief . . . ." 28 U.S.C. 1332(d)(5)(A) (emphasis added). St. Paul submits that under the circumstances of this case – circumstances that distinguish this case from any of the prior CAFA decisions that we have

381543-1                                    6

located – St. Paul is a "primary defendant" and, consequently, none of these exceptions support, much less compel, remand.

> **1. Plaintiffs Bear the Burden of Proving the Applicability of an Exception**

As a threshold matter, it should be recognized that in order to avoid federal jurisdiction under CAFA, the Plaintiffs bear the burden of establishing that one of CAFA's specifically enumerated exceptions applies. In the few decisions thus far interpreting the Act, the Courts have placed the responsibility for demonstrating that an exception applies on the plaintiff. *See Frazier v. Pioneer Ams.*, LLC, 455 F.3d 542 (5th Cir.2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159 (11th Cir.2006); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675 (7th Cir.2006). Here, Plaintiffs have failed to carry their burden of proof.

> **2. *All* of the "Primary Defendants" Must Meet the Specified Criteria for Remand to Be Appropriate**

Importantly, the foregoing statutory provisions make clear that for the Court to abstain from exercising jurisdiction, *all* of the "primary defendants" must be citizens of Louisiana (28 U.S.C. 1332(d)(3): ". . . and *the* primary defendant*s* . . ."; 28 U.S.C. 1332(d)(4)(B): "and *the* primary defendant*s* . . .") or States, State officials, or other governmental entites against whom the district court may be foreclosed from ordering relief (28 U.S.C. 1332(d)(5)(A): ". . . and *the* primary defendant*s* . . ."). The language of the statute expressly contemplates not that there would exist one single "primary" defendant (such as one most prominent target of the suit), but rather that there may be many "primary defendants" and that each of them must meet the specified criteria for the exception to CAFA to apply. This is evident from the statute's use of the plural phrase "*the* primary defendant*s*" rather than "*a* primary defendant").

Indeed, at least two courts have expressly addressed this issue and reached this

conclusion. In *Robinson v. Cheetah Transportation*, 2006 WL 3322580 (W.D. La. 2006), that Court made clear that "the plain language of the statute indicates that remand is only required when *all* of the primary defendants are residents of the state in which the action was originally filed." *Id.* at 3. The U.S. Fifth Circuit reached the same conclusion in *Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006). Insightfully, the Fifth Circuit explained that "the plain text of 1332(d)(5)(A) using the definite article before the plural nouns, requires that all primary defendants be states. Had Congress desired the opposite, it would have used 'a' and the singular, or no article . . . . [T]hus it is clear – all primary defendants must be states" in order for the exception to CAFA to apply. Thus, the Court's inquiry is not to determine who is the principal or lead target in this suit and whether that lead target is a citizen of the State in which the suit was filed or is itself a State, but rather whether *all* of the "primary defendants" within the meaning of CAFA are such.

### 3. St. Paul is a Primary Defendant Within the Meaning of CAFA Under the Circumstances of this Case

As discussed above, the Discretionary Exception and the Home State Controversy Exception allow (or require, for the latter) a federal court to decline to exercise jurisdiction under CAFA if all of the primary defendants are citizens of the State in which the action was originally filed. In this matter, there is no question that St. Paul is not a citizen of Louisiana. Accordingly, if St. Paul is a "primary defendant" within the meaning of CAFA, then the exceptions cannot apply and Plaintiffs' arguments fail.[3]

### a. St. Paul Has Been Sued Directly Under the Louisiana Direct Action Statute and Its Potential Liability is Different from its Alleged Policyholders

---

[3] In adopting the arguments of the SWB, St. Paul also incorporates by reference the SWB's argument(s) regarding the Plaintiffs' failure carry their burden in establishing that two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of Louisiana with respect to USCA Section 1332(d)(3); (d)(4)(A) and (d)(4)(B).

"Primary defendant" as used in CAFA is not defined by the statute and, as noted by this Court in *Bennett I*, "[t]here is little guidance as to what constitutes a primary defendant..." *Bennett v. Board of Commissioners for East Jefferson Levee District, et al*, 2007 WL 2571942, p. 6 (E.D. La. 2007). St. Paul is aware that this Court in *Bennett I* found that AAIC was not a primary defendant because its liability was based on "indemnification or contribution" and its maximum exposure of liability was $4,000,000, which this Court found to be "minimal in comparison to the vast amount of damages sustained by the putative class." *Id.* at 6. However, there are several distinct differences between St. Paul and AAIC which distinguish the removal by St. Paul from the SWB's prior removal addressed in *Bennett I*.

As an initial matter, in order to properly analyze these distinctions, the congressional intent behind CAFA should be examined. At the outset, Congress enacted CAFA with the express intention of expanding diversity jurisdiction so that class actions within CAFA's scope will be litigated in federal court. The purpose behind the jurisdictional change was to limit the number of complex class action suits in state courts and to regulate plaintiffs' attempts to defeat federal diversity jurisdiction by naming token defendants. *See* S. Rep. No. 109-14, at 9 (2005). Indeed, the Legislative History clearly states that CAFA, "is intended to expand substantially federal court jurisdiction over class actions. **Its provisions should be read broadly**, with a strong preference that interstate class actions should be heard in a federal court if properly removed by **any defendant**." S. Rep. 109-12, 2005 U.S.C.C.A.N. 3 at 43 (emphasis added).

The term "primary defendants" is not defined in CAFA. The failure to provide a statutory definition was not merely an oversight. CAFA was signed into law in 2005, following seven years of congressional debate. As early as 1999, opponents to CAFA voiced their disapproval of the use of the term "primary defendants" as being too vague. They maintained that "primary

defendants" was a "new and undefined phrase[ ] with no antecedent in the U.S.Code or the case law" and that "[i]t will take many years and conflicting decisions before th[is] critical term[ ] can begin to be sorted out." S. REP. 106-420, September 26, 2000. The final Senate Judiciary Committee's Report was intended to provide "guidance regarding the term 'primary defendants'" to be applied by the courts in evaluating a defendant's status. 2005 U.S.C.C.A.N. at 42. The Report explains that:

> [T]he Committee intends that 'primary defendants' be interpreted to reach those defendants who are the real 'targets' of the lawsuit – i.e., **the defendants that would be expected to incur most of the loss if liability is found**. Thus, the term 'primary defendants' should include **any** person who has **substantial exposure to significant portions of the proposed class** in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members)."

S.Rep. No. 109-14, at 43, as reprinted in 2005 U.S.C.C.A.N. at 41 (emphasis added). Congress further recognized the difficulty in determining which defendants will suffer the largest proportions of liability at the outset of the litigations and therefore decided that, "**as long as there is some evidence to classify defendants as primary, they may be named as such for purposes of determining state or federal jurisdiction under 1332(d)**." *Amanda Coney*, "Defining 'Primary Defendants' In the Class Action Fairness Act of 2005, 67 La. L. Rev. 903.

In interpreting the meaning of "primary defendants," courts have taken varying approaches leading to some incongruency. Thus, it has been held that a primary defendant is one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action. *See e.g., Kendrick v. Standard Fire Ins. Co.*, 2007 WL 1035018, 5 (E.D.Ky. Mar. 31, 2007) (liable to the vast majority of class members); *In Matter of*

*Ingram Barge Co.,* 2007 WL 148647, at 2 (E.D.La. Jan. 10, 2007) (most able to bear potential judgment); *Hangarter v. Paul Revere Life Ins. Co.,* 2006 WL 213834 (N.D.Cal. Jan. 26, 2006) (only defendant named in one cause of action for injunctive relief, even though he was not named in several other claims seeking monetary relief); *Robinson v. Cheetah Transp.,* 2006 WL 3322580, at 2 (W.D.La. Nov. 14, 2006) (predominance of asserted claims); *Kearns,* 2005 WL 3967998, at 7-8 (C.D. Cal. Nov. 21, 2005) (any direct liability).

St. Paul is cognizant that some courts, including this Court, have held that the term "primary defendant" includes any defendant against whom direct liability is sought and, therefore, excludes a defendant whose liability is based on vicarious liability, indemnification, or contribution. *See Adams v. Federal Materials Company, Inc., et al.,* 2005 WL 1862378, 5 (W.D. Ky. July 28, 2005); *Kearns v. Ford Motor Co., et al.,* 2005 WL 3967998, 8 (C.D.Cal. Nov. 21, 2005); *Serrano v. Connect, Inc., et al.,* 2006 WL 2348888, 2 (N.D.Cal. August 11, 2006).   It should be noted however, that in at least one of these cases, *Adams, supra,* the district court classified a party as a "primary defendant" when the plaintiffs amended their complaint to name the party as a direct defendant, thus subjecting him to the same liability as the other defendants. There, the plaintiffs argued that because the defendant at issue, Rogers Group, initially entered the litigation via a Third-Party Complaint for indemnity, that it fell into the category of a "secondary defendant."   The Court rejected this notion stating:

> It may be that Rogers Group will ultimately be liable to Federal on the basis of a theory of indemnification; this does not, however, negate the fact that Plaintiffs amended their complaint to assert Rogers Group's liability directly to Plaintiffs for its supply of allegedly defective aggregate to Federal. . . In light of the lack of a principled distinction between the positions of Hanson and Rogers Group, and the fact that one count of Plaintiffs' complaint is directed against Hanson and Rogers explicitly, there is simply no basis for treating Rogers Group as a secondary defendant in this case.

*Id.* at 5.

Plaintiffs also rely heavily on jurisprudence interpreting the term "primary defendant" in the context of the Multiparty, Multiforum, Trial Jurisdiction Act of 2002 ("MMTJA") for support of their blanket contention that an insurer can never be a "primary defendant" under CAFA. Pretermitting the fact that the cases cited by Plaintiffs interpret an entirely different jurisdictional statute, Plaintiffs reliance on these cases is misplaced. For instance in the case of *Passa v. Derderian*, 308 F.Supp.2d 43 (D.R.I. 2004) the Court rejected a definition of primary defendant as those with the deepest pockets solely because the Court determined that "the measure of a particular defendant's ability to pay a judgment should have no bearing on this Court's evaluation of a Rule 12(b)(1) motion." Thus, the Court did not reject the notion of ability to pay as a factor in determining whether or not a defendant is primary for purposes of jurisdiction. Further, the Court in *Passa* succinctly held that, "the most appropriate definition of "primary defendants" in the context of § 1369(b)(1) [of the MMTJA] must include those parties facing direct liability in the instant litigation. Notably, the Court did not engage in "an in depth analysis of how each of the defendants is sued" because the out of state defendants in *Passa*, like St. Paul in the instant case, **had been sued directly.** *Id.* Plaintiffs reliance on *Kitson v. Bank of Edwardsville,* 2006 WL 3392752 (S.D. Ill. 2006) is likewise unpersuasive as the Court's determination of "primary defendant" there hinged on an analysis of vicarious liability via conspiracy and/or aiding or abetting and did not address any in depth analysis of whether or not an insurer can ever be a primary defendant for purposes of CAFA.

Moreover, those cases that support the conclusion that the term "primary defendant" does not include an insurer whose liability is based indemnification do not present the same factual situation present herein. Those cases all arose out of states that do not provide for a right of direct action against an insurer. *H. Alston Johnson,* "The Louisiana Direct Action Statute", 43

La. L. Rev. 1455, 1530 ("[T]he Louisiana Direct Action Statute is one of a very few such statutes in the United States."). In Louisiana, the Direct Action Statute, codified at La. R.S. 22:1269, grants injured parties **a separate and distinct cause of action** against an injuring party's insurer at the time of the injury which, once vested, cannot be limited by restrictive policy language. *F.D.I.C. v. Caplan*, 838 F.Supp. 1125 (W.D.La.1993); *Rollins v. Richardson*, 35,171 (La.App. 2 Cir. 12/7/01), 803 So.2d 1028. Further, this statute imposes a joint and solidary liability on insurer and insured. *Shockley v. Sallows*, 615 F.2d 233 (5th Cir. 1980); *Fulton v. White Cab Co.*, 305 F.Supp. 1333 (E.D.La.1969). Indeed, the Direct Action Statute creates a substantive right or new cause of action against liability insurance companies, which is different from what such companies undertake in their contracts.   *Hidalgo v. Fidelity & Cas. Co. of N. Y.*, 104 F.Supp. 230 (W.D.La.1952).

Most importantly, in the instant case, an insurer may not invoke the personal immunity of its insured governmental unit or employee in a direct action suit against the liability insurer. The reason for this rule is that the governmental immunity defense is personal, and the insurer cannot assert personal defenses of the insured. *Snell v. Stein*, 259 So.2d 876 (La.1972); *see also Brooks v. Bass*, 184 So. 222 (La. App. Orleans 1938) (any personal immunity of association based governmental immunity was not available to the association's insurance carrier); *Rome v. London & Lancashire Indem. Co. of America*, 169 So. 132 (La. App. Orleans 1936) (Defense of city park improvement association's immunity from suit for damages, caused by its employees' negligence in performance of governmental function, is personal to association, and does not extend to insurance carrier agreeing to indemnify association against loss because of liability imposed by law for damages on account of bodily injuries or death).   Accordingly, St. Paul is a direct defendant to the lawsuit, named separately by the plaintiffs, with a distinct set of obligations

separate from its insured.

### b. St. Paul's Policies Represent the Only Potential Recovery for Any Judgment Awarded Against OLD or EJLD as the Assets of the Latter are Immune from Seizure

The assets of St. Paul's insureds, OLD and EJLD, are immune from seizure under the Louisiana Constitution and Revised Statutes. As a result of this constitutional and statutory protection, St. Paul is certainly a primary target of the Plaintiffs' claims against OLD and EJLD. These claims encompass a large portion of Plaintiffs' allegations in the Petition(s) served on St. Paul. (See Exhibits 1, 2, and 4 to Rec. Doc. 1, Removal).[4]

As political subdivisions of the State of Louisiana[5], the levee districts are entitled to the protections of Louisiana's anti-seizure provisions of La. Const. art. XII § 10(c) and La. R.S. 13:5109(B)(2). *Vogt v. Board of Commissioners of the Orleans Levee District*, 2001-0089 (La. App. 4 Cir. 3/27/2002), 814 So.2d 648.

Section 10(c) of Article XII of the Louisiana Constitution makes clear that public property and public funds are not subject to seizure:

> [T]he legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kids and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but **no public property or public funds shall be subject to seizure.** The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefore by the legislature or by the political subdivision against which the

---

[4] See Ex 1 to Rec. Doc. 1, Class Action Petition ¶¶16-32,35,36,41,42,52-55; Ex. 2 to Rec. Doc. 1, ¶¶16,34, 40,41,46,47-59; Ex. 4, Rec. Doc. 1, ¶¶ 33.6, 33.8, 33.9-33.21, 33.32, 33.33.

[5] A "levee district" is a "political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental hereto with its territorial limits." La. R.S. 38:281(6). A "political subdivision" is defined as any parish, municipality, "special district", school board, sheriff, or "other public or governmental body of any kind which is not a state agency." La. R.S. 13:5102(B); *see also Wynat Development Co. v. Board of Levee Commissioners,* 710 So.2d 783, 789-90 (stating that the Orleans Levee District is a "special district" within the meaning of La. R.S. 13:5102(B).

judgment is rendered.

(emphasis added).  La. R.S. 13:5109 was enacted by the Louisiana legislature to effectuate this

prohibition:

> Any judgment rendered in any suit filed against the state, a state agency, or a
> political subdivision, or any compromise reached in favor of the plaintiff or
> plaintiffs in any such suit shall be exigible, payable, and paid only out of funds
> appropriated for that purpose by the legislature, if the suit was filed against the
> state or a state agency, or out of funds appropriated for that purpose by the named
> political subdivision, if the suit was filed against a political subdivision.

The policy behind this established principle was described by Judge Vance in a case

involving the City of New Orleans:

> [T]he government has limited resources, and the legislature expressly found that
> judgments have exceeded the government's ability to pay them on a current basis.
> Absent an anti-seizure provisions, the assets of state and local governments could
> be dissipated through seizure actions, which would impair the ability of
> governments to perform vital public functions.  Barring seizure and requiring any
> appropriation to pay judgments is a rational response to this predicament.

*Bennett v. City of New Orleans,* Not Reported in F.Supp.2d, 2004 WL 60316 (E.D. La. 2004).

The United States Fifth Circuit as well as several courts in this District have recognized

and enforced Louisiana's anti-seizure provisions.  For example, in *Specialty Healthcare

Management, Inc. v. St. Mary Parish Hospital,* the Fifth Circuit vacated a writ of execution

against the Parish Hospital defendant.  220 F.3d 650 (5th Cir. 2000).  This diversity case involved

enforcement of an arbitration award.  *Id.* at 652-53.  Specialty sued the hospital in federal district

court seeking monetary damages as well as declaratory and injunctive relief in connection with a

contractual dispute.  *Id. at 652.*  The hospital invoked a mandatory arbitration clause.  After

Specialty obtained a $750,000 arbitration award, the court confirmed the award in a judgment

requiring the hospital to pay within thirty (30) days, but the hospital refused.  Specialty then

sought and obtained from the district court a writ of execution pursuant to Fed.R.Civ. P. 69 over

the hospital's objection that the anti-seizure provisions controlled. *Id.* at 653. The Unites States Fifth Circuit reversed the district court and vacated the writ, holding that the Louisiana anti-seizure provisions applied and the district court could not issue a writ of execution. *Id.* at 653-56.

Similarly, *City of New Orleans v. Municipal Administrative Services, Inc.*, was a diversity action before Judge Africk in the Eastern District based on a contract dispute between the Municipal Administrative Services ("MAS") and the City of New Orleans. 2004 WL 2496202 (E.D. La) (Africk J.). MAS moved for contempt sanctions as a result of the City's non-payment of a judgment based on breach of contract. Judge Africk found that there was no dispute that the judgment was in effect, that it directed the City to pay a certain sum, and that the City had failed to pay. *Id* at 2. Despite this, the Court found the City could not be compelled by contempt order to satisfy a judgment as such order would conflict with the State's anti-seizure law and Louisiana jurisprudence. *Id.* at 4. As observed by the Court, MAS could not "accomplish indirectly what it [could no] accomplish directly." *Id.* In support of his decision, Judge Africk quoted with approval the recognition of the *Vogt* Court that the judiciary has no legal authority to compel payment by political subdivisions.

> This court recognizes and sympathizes with plaintiff['s] plight in getting judgment against the State or political subdivision satisfied. Nonetheless, **this court is without constitutional or statutory authority to compel [a political subdivision] to pay the judgment rendered against it.**

(emphasis added) *Id.* at 4, citing *Vogt*, 814 So.2d at 656.

In addition, the levee districts cannot be subject to a writ of mandamus to require them to appropriate additional funds to satisfy the potential judgments in this case. *Hoag v. Louisiana*, 2004-0857 (La. 12/1/2004), 889 So.2d 1019. The Louisiana Supreme Court in *Hoag* reaffirmed the long standing law in Louisiana that "judgment creditors cannot mandamus political

subdivisions to appropriate funds for payment of a judgment rendered against the respective political subdivisions." *Id.* at 1023.  In *Hoag*, a group of coroners filed suit against the State of Louisiana to collect past due and future compensation under then La. R.S. 33:1599, and obtained a judgment in their favor. *Id.* at 1021.  The Louisiana legislature never appropriated funds to satisfy the judgment. The plaintiffs thereafter filed suit seeking a writ of mandamus directing the state treasurer and the legislature to appropriate funds to satisfy the judgment. *Id.* at *1022.*  The Louisiana Supreme Court held that "a writ of mandamus directing the legislature to appropriate funds is an impermissible usurpation of legislative power by the judiciary. *Id.* at *1025.*

Finally, the reach of Louisiana's anti-seizure provisions precludes even recordation of a judgment from creating a judicial mortgage on the property of the governmental entity. *See, Holly & Smith Architects, Inc. v. St. Helena Congreate Facility, Inc.*, 2006-0582 (La. 11/29/06), 943 So.2d. 1037.

Accordingly, the Plaintiffs have no legal right or remedy by which they may enforce judicially any judgment they might obtain against St. Paul's insureds, OLD and EJLD.  The only avenue for recovery by Plaintiffs in the event a judgment against OLD and EJLD is against their insurer, St. Paul.

We have located no decision in which a court has dealt with the particular issue of whether an insurer that (1) has been sued directly under a state's Direct Action statute, and (2) whose insured's assets are protected from seizure by state constitutional and statutory provisions making the insurer's policy the only potential recovery in the event of a judgment in favor of plaintiffs constitutes a "primary defendant" within the meaning of CAFA. St. Paul submits that as a result of the operation of the Louisiana Direct Action Statute and the anti-seizure provisions of the Louisiana Constitution and Revised Statues, St. Paul could be fairly characterized as **the**

primary defendant of the Plaintiffs' allegations against OLD and EJLD. St. Paul bears the greater liability exposure, indeed the only liability exposure; is most able to satisfy a potential judgment; is sued directly, and is the subject of a significant portion of the claims asserted by plaintiffs (i.e. all of the claims asserted against EJLD and OLD). Furthermore, St. Paul's potential liability under its policies, $15,000,000 may be characterized by Plaintiffs as a "drop in the bucket" in comparison to the vast amount of alleged damages sustained by the members of punitive class, but, it is the only drop available to satisfy any potential judgment against OLD or EJLD. Under these circumstances, St. Paul is a "primary defendant" for purposes of CAFA jurisdiction. Accordingly, the discretionary, home state and state action exceptions to CAFA do not apply. *See* U.S.C.A. 28 1332(d)(3), (d)(4)(B), and (d)(5)(A).

### 4. The Local Controversy Exception is Also Inapplicable

The final exception to CAFA advanced by the Plaintiffs is also inapplicable. Under Section 1332(d)(4)(A), a district court shall decline jurisdiction if the plaintiffs establish that, "ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. 1332(d)(4)(A). To prevail under this section, Plaintiffs must establish that no class action with similar allegations against any of the defendants had been filed in the three years preceding the Plaintiffs' suit.

Plaintiffs simply cannot prove this element of the statute. Not only is St. Paul named in the *In re Katrina Consolidated Master Complaint* which would encompass the class as defined in *Bennett* and *de la Houssaye*, (see Case No. 05-4182 Rec. Doc. No., 3420 and 6941), Plaintiffs proposed class falls into the Settlement Class as defined in the Settlement Agreement which this Court has preliminarily approved. (See Ex. 2 to Rec. Doc. No. 16647-2, Case No. 05-4182,

381543-1                              18

Settlement Agreement). Moreover, St. Paul was named as a direct defendant in two purported class action lawsuits which pre-date both *Bennett* and *de la Houssaye, s*ee e.g. *Berthelot, et. al. v. Boh Bros.,et al.*, No. 05-4182, LAED filed on September 19, 2005 and *O'Dwyer v. U.S.A.*, NO. 05-4181, LAED filed on September 19, 2005, as well as numerous other suits pending before this Court. Thus, Plaintiffs cannot sustain their burden in establishing that this exception to CAFA jurisdiction applies even if St. Paul is not found by the Court to be a primary defendant.

**C.**     **Issue Preclusion Is Inapplicable to St. Paul's Removal**

Plaintiffs assert that this Court's prior ruling in *Bennett I* remanding the SWB's removal of this suit precludes St. Paul from now raising the issue of whether or not St. Paul is a primary defendant in the action.

As an initial matter, the U.S. Fifth Circuit has not ruled on the issue of whether or not an insurer can be a primary defendant under CAFA. Indeed, the Fifth Circuit in the instant case denied the SWB's appeal of this Court's remand order on procedural grounds and did not reach the merits of the appeal. The general rule is that if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court. *Hicks v. Quaker Oats Co.,* 662 F.2d 1158 (C.A. 5th 1981)(and cases cited therein), *see also, e.g., White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 149-52 (5th Cir.1981) (reciting "final judgment" requirement for both claim and issue preclusion).

Further, "[W]hen a federal court renders a decision in a diversity case, the decision's preclusive effect is measured by federal principles of preclusion." *Terrell v. DeConna,* 877 F.2d 1267, 1270 (5th Cir.1989). This Court has stated that the three traditional requirements for the application of the doctrine of collateral estoppel are: (i) the issue to be precluded must be identical to that involved in the prior action, (ii) in the prior action the issue must have been

actually litigated, and (iii) the determination made of the issue in the prior action must have been necessary to the resulting judgment. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458-59 (5th Cir. 1971), see also *18 C. Wright, A. Miller, Federal Practice and Procedure s* 4432 (1981).

As discussed in detail above, the claims presented by the SWB in *Bennett I* are different than those presented by St. Paul in a number of respects and, despite Plaintiffs' claims to the contrary, no privity between the SWB and St. Paul exists which would warrant application of issue preclusion. The term privity as utilized in determining issue preclusion represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion. *Vestal*, Preclusion/Res Judicata Variables: Parties, 50 Iowa L.Rev. 27 (1964).

Federal courts have deemed several types of relationships "sufficiently close" to justify preclusion. First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party. *Golden State Bottling Co. v. NLRB*, 1973, 414 U.S. 168, 179, (1973); *United States v. New York Terminal Warehouse Co.*, 233 F.2d 238, 241 (5th Cir. 1956). Second, a non-party who controlled the original suit will be bound by the resulting judgment. *Dudley v. Smith,* 504 F.2d 979 (5th Cir. 1974) (president and sole shareholder controls his corporation); *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 405 F.2d 958 (5th Cir. 1968) (parent corporation controls subsidiary). Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit. *Heckman v. United States*, 224 U.S. 413, 445-46 (1912)(United States represents interests of American Indians); *Kerrison v. Stewart*, 93 U.S. 155, 160 (1876), (trustee represents interests of beneficiaries); *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir. 1975) (state represents interests of a home-rule county);

*Berman v. Denver Tramway Corp.*, 197 F.2d 946 (10th Cir. 1952) (local government represents interests of the public).  Because res judicata denies a non-party his day in court, the due process clauses prevent preclusion when the relationship between the party and non-party becomes too attenuated.

Here, there is absolutely no relationship between the prior party which removed this action and St. Paul.  St. Paul was not a party to the suit at the time of the prior removal and the SWB is in no way tied to or related to St. Paul.  Moreover, Plaintiffs are incorrect in asserting that because this Court rejected the "primary defendant argument" with respect to AAIC's interests in the *Bennett I* removal, that this holding precludes St. Paul from raising the issue on its behalf herein.  In *Bennett I*, the SWB removed the matter and *argued* that AAIC was a primary defendant.  AAIC did not remove the matter, nor did it assert the primary defendant issue on its behalf.  Further, St. Paul has directly asserted in its removal that it is a primary defendant (AAIC did not, nor did the SWB on behalf of AAIC).  Finally, the SWB never addressed or raised any issue with respect to the legal prohibition of seizing OLD and EJLD's assets in satisfaction of a judgment, thus rendering St. Paul the "real" target of Plaintiffs' allegations against its insureds.  Accordingly, St. Paul is not precluded from removing this matter or asserting that it is a primary defendant for purposes of CAFA jurisdiction.

**D.  Sanctions and/or Costs and Fees Should Not Be Imposed**

Plaintiffs argue that they are entitled to an award of costs and attorney's fees incurred as the result of an improper removal under either 28 U.S.C. 1447 and/or F.R.C.P. Rule 11.  However, Plaintiff's request fails to comply with the requirements of Rule 11.

A motion for sanctions under Rule 11 "shall be made separately from other motions or requests."  Fed.R.Civ.P. 11(c)(1)(A).  "It shall be served as provided in Rule 5, but shall not be

filed with or presented to the court unless, within 21 days after service of the motion ... the challenged ... claim ... is not withdrawn or appropriately corrected." *Id.* Plaintiffs' request for sanctions was not set out in a separate motion, but was combined with the motion to remand. Further, Plaintiffs have not complied with the "safe harbor" provision of the Rule by serving his request for sanctions 21 days before filing with the Court.[6] "The 'safe harbor' provision added to Rule 11 contemplates such service to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention. The plain language of the rule indicates that this notice and opportunity prior to filling is mandatory." *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995).

With respect to Plaintiffs' request for attorneys' fees and costs for St. Paul's alleged improper removal, Courts have held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132 (2005) (citing *Hornbuckle v. State Farm Lloyds,* 385 F.3d 538, 541 (5th Cir.2004)) and *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290, 293 (5th Cir.2000)).

Here, the Plaintiffs assert that St. Paul has no objectively reasonable basis for removal because this Court has already squarely addressed the issue of what constitutes a "primary defendant" in *Bennett I,* and that therefore, St. Paul improperly removed this matter, "without adequate analysis." Plaintiffs' arguments in this regard are unfounded. As is fully addressed above, there are numerous distinctions between the removal herein filed by St. Paul, and the previous removal in *Bennett I,* which was filed by the Sewerage and Water Board of New

---

[6] Plaintiffs sent correspondence to St. Paul threatening sanctions on January 19, 2009 and filed the combined Motion to Remand and for Sanctions sixteen days following this correspondence on February 3, 2009.

Orleans. First and foremost, the Court's reasoning with respect to whether or not AAIC was a "primary defendant" in *Bennett I* did not address whether or not AAIC's insured's assets could be seized in satisfaction of an ultimate judgment, nor did the opinion address the implications of Louisiana's direct action statute on the definition of primary defendant under CAFA. Further, in *Bennett I*, AAIC did not remove the action itself, nor did it directly assert that it was a primary defendant in its removal pleadings as St. Paul did here. (See Rec. Doc. No. 1). In *Bennett I*, another defendant, the SWB, made this argument on behalf of AAIC and indeed, AAIC own insured sought remand of the matter. Moreover, AAIC's policy limits are significantly less that the exposure facing St. Paul. All of these factors demonstrate that this removal is distinctly different from the removal filed in *Bennett I*, and this Court should deny Plaintiffs' request for costs and attorney's fees.

## III.   CONCLUSION

St. Paul is a primary defendant for purposes of CAFA for two reasons: (1) because the Plaintiffs sued St. Paul directly pursuant to the Direct Action Statute; and (2) because the assets of St. Paul's insureds, OLD and EJLD, cannot be seized in satisfaction of any ultimate judgment that the Plaintiffs may obtain against them. Thus, St. Paul's policies are the only means by which Plaintiffs could obtain monetary redress for their claims. Under these particular circumstances, St. Paul constitutes a "primary defendant" within the meaning of CAFA.

Respectfully submitted,

*/s/ Rachel A. Meese*

RALPH S. HUBBARD III, T.A., Bar. #7040
JOSEPH P. GUICHET, Bar #24441
RACHEL A. MEESE, Bar #25457
**LUGENBUHL, WHEATON, PECK,**
**RANKIN & HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
**Attorneys for St. Paul Fire and Marine**
**Insurance Company**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing pleading has been filed electronically with the Clerk of Court by using the CM/ECF system; that the foregoing pleading has been mailed electronically by the Clerk of Court to all parties who have registered to receive electronic notification; that notice of the filing of the foregoing pleading has been delivered by other means by the Clerk of Court to all parties who have not registered to receive electronic notification; and that a true and correct copy of the foregoing pleading has been delivered either by facsimile, by hand delivery, or by placing same in the U.S. Mail, properly addressed and postage prepaid, to all counsel of record who are not registered to receive notice electronically, on this 10th day of February, 2009.

/s/ Rachel A. Meese