## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | | NO. 05-4182 |
| | | SECTION "K" (2) |

FILED IN:     05-4181, 05-4182, 05-4191, 05-4568, 05-5237,
05-6073, -5-6314, 05-6324, 05-6327, 05-6359,
06-0020, 06-1885, 06-0225, 06-0886, 06-11028,
06-2278, 06-2287, 06-2346, 06-2545, 06-3529,
06-4065, 06-4389, 06-4634, 06-4931, 06-5032,
06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
07-0647, 07-0993, 07-1284, 07-1286, 07-1288,
and 07-1289.

### LEVEE BREACH PLAINTIFFS' MEMORANDUM OPPOSING SEWERAGE AND WATER BOARD'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

## I. INTRODUCTION

This memorandum and a related Local Civil Rule 56.2 Statement are submitted by the

Levee Breach Plaintiffs ("Plaintiffs") in opposition to Sewerage & Water Board of New Orleans'

("SWB") motion for summary judgment.

1.      **Relevant facts:**

On July 15, 1974, SWB initiated its rainstorm-related "17th Street Drainage

Canal Improvement Project" by applying to the U.S. Army Corps of Engineers' Operations

Division for a "Permit to Discharge or Work in Navigable Waters and their Tributaries." When

the Louisiana Department of Public Works was not furnished with soil data substantiating the

stability of the canal's levees, on May 23, 1977, the Corps rejected the application.

SWB then retained Modjeski & Masters, Inc. ("M &M") to design and implement the

dredging project.  On January 28, 1981, M&M provided the Corps with a memorandum

addressing the stability of the existing levees and sheet pile walls along the canal.  At three of the

six test locations, the factors of safety fell below the minimum values required by the Corps.

This was SWB's <u>first</u> unheeded warning.[1]

On February 6, 1981, M&M provided the Corps with a stability analysis of the existing

sheet pile wall along the east (Orleans Parish) side of the canal, north of Old Hammond

Highway.  This report stated that *"[p]ortions of the wall are extremely unstable as they now*

*stand.  This instability, even under normal water level situations is due to...the soft to very soft*

*clays which make up the soil stratum...."*  This was SWB's <u>second</u> unheeded warning.

The Corps' March 5, 1981 internal memorandum acknowledged that factors of safety

were substantially below the minimum 1.30 factor of safety, and required a project  redesign.  At

a March 31, 1981 public hearing,  M&M admitted that not only were the levees already in

_____

[1] The 1978 contract between SWB and M&M (Exhibit No. 2 to SWB's motion for summary judgment) at Article 1.24 "ENGINEERING REPORTS" required that M&M "Review, correlate and evaluate all data collected and prepare report of findings for conferences with Board and its staff."  SWB contractually required M&M to keep it informed.

violation of the Corps' standards for levee stability, but also that dredging would only worsen the problem.  This was SWB's <u>third</u> unheeded warning.

On April 20, 1981, M&M announced plans to install sheet pile walls the entire length of the dredging project.  In response, the Corps' June 16, 1981 internal memorandum acknowledged that a number of levee and flood wall stability problems were likely if the SWB permit were granted.  Then, the Corps' February 12, 1982 internal memorandum noted the existence of a stability problem in the canal at a location where excavation would directly tap the sands underlying the levee.

In late 1981, Eustis Engineering ("Eustis") performed soil boring tests which revealed alternating layers of soft clay and black humus which substantially reduced the strength of the soil, particularly in resisting lateral pressure and its ability to support levees and flood walls under pressure from high water.  On August 23, 1982, Eustis provided M&M with a comprehensive report which recognized "[t]he possibility of a blow-out during extreme high water in the canal."  This [at least] was SWB's <u>fourth</u> unheeded warning.

On May 9, 1983, M&M submitted a new permit application with the project limits being from Pump Station No. 6 to 370.0 feet north of the Bucktown Pedestrian Bridge.  The project now envisioned 470,000 cubic yards of canal bottom being removed, whereas the original plan only called for removal of 85,000 cubic yards.  On July 27, 1983, Eustis submitted a revised soil stability report, which again confirmed the potential for a blow-out at the land side toe of the levee and extended the area of concern from Lake Pontchartrain to the pumping station.  This was [at least] SWB's <u>fifth</u> unheeded warning.

On June 13, 1984, the Corps nevertheless issued a permit to dredge the 17th Street Canal

from Pumping Station No. 6 to a point about 400 feet north of the Bucktown Pedestrian Bridge. The dredging project was divided into phases.[2]  Phase I extended from Pump Station No. 6 to Interstate 10 (on both sides), and was completed June 1, 1984.  Phase II-A, which included installation of sheet piles, extended from Interstate 10 to the Old Hammond Highway Bridge (Orleans side), and was completed on January 10, 1992.  The contractor for this part of the project was Boh Bros. Construction Co., LLC. ("Boh Bros.).  Phase III extended from the Old Hammond Highway Bridge to Lake Pontchartrain (on both sides) and was completed on December 6, 1989.

In 1993, C. R. Pittman Construction Company, Inc. ("Pittman") was retained to  construct concrete monoliths atop the steel sheet pile wall along the 17th Street Canal.  During construction, Pittman reported to the Corps that the supporting soil foundation was not of sufficient stability, and the sheet pile walls and monoliths were leaning towards the canal.

**2.     Jurisdiction:**

Five bases of *independent* original federal subject matter jurisdiction and one base for *supplemental* jurisdiction were asserted on pages three and four of the September 12, 2007 "Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint" (Doc. 7571).  Those bases for jurisdiction were:

1.     28 U.S.C. § 1346(b) (jurisdiction over the United States) and 28 U.S.C. § 2671 (Federal Tort Claim Act);

2.     28 U.S.C. § 1331 for claims asserted against the United States pursuant to 16 U.S.C. § 1451(Coastal Zone Management Act), 33 U.S.C. § 403 (River and

_____

[2] This  "bucket dredging" was accomplished from flex-float barges in the canal.

Harbors Act), and  33 U.S.C. § 1251 (Federal Water Pollution Control Act);

3.      28 U.S.C. § 1332(d)(2) over claims asserted against diverse defendants (*e.g.*,

Washington Group International)  pursuant to 28 U.S.C. 28 U.S.C. § 1711 (Class

Action Fairness Act);

4.      Maritime jurisdiction pursuant to 28 U.S.C. § 1333(1);

5.      Maritime jurisdiction against the United States under 46 U.S.C. § 741 (Suits in

Admiralty Act) and 46 U.S.C. § 752 (.Public Vessels Act), and/or under 46 U.S.C.

§ 740 (Admiralty Extension Act); and

6.      Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims against non-

diverse defendants (e.g., Sewerage & Water Board of New Orleans) asserted

under state law.

The Plaintiffs' federal law claims against the United States have been dismissed.  The

contractors and engineers were granted summary judgment on the basis of the five-year

peremption of La. R.S. 9:5607.  The defendant levee boards are attempting to settle with the

Plaintiffs.  Lastly, the Court found that maritime jurisdiction does not apply.  Thus, all that

remains is state law claims against SWB and no independent basis for federal jurisdiction.

**3.      Claims made against SWB.**

The Levee Breach Plaintiffs' claims against SWB are set forth at pages 37-38 of the

Corrected Restated Levee Master Consolidated Class Action Complaint" (Doc. 7571).  These are

state law negligence claims:

¶ 86.   The S&WB breached its legal responsibilities and duties to Plaintiffs in proposed

Subclasses One, Two, Four and Five by seeking the dredging permit for the 17th

Street Canal, and by failing to withdraw its application for the permit upon

learning of the flood protection dangers which might result from the requested

dredging activity.

¶ 87.    The S&WB was negligent in the following non-exclusive particulars:

a.    in requesting and causing the 17th Street Canal to be dredged to a depth lower than

the sheet piles;

b.    in requesting and causing the canal to be dredged only on the Orleans Parish side;

c.    in requesting and causing the canal to be dredged too close to the flood wall on

the Orleans Parish side;

d.    in requesting and causing the canal to be dredged in a manner that compromised

the safety of the canals/levee flood walls;

e.    in refusing to agree to the implementation of the High Level plan utilizing flood

gates and insisting on the adoption of the flawed, alternative "parallel plan" with

respect to the 17th Street Canal; and

f.    in having received reports from residents of water under-seeping the levee and

onto adjacent residential property and then failing to take any action on said

reports, including but not limited to actions to investigate the source or sources of

water, report the existence of the water on the adjacent properties to other

authorities and/or to take measurements to remedy the cause of the under seepage.

Additional claims are also set forth at p. 49 of the Corrected Restated Levee Master

Consolidated Class Action Complaint" (Doc. 7571).  These state law claims are as follows:

¶ 135.  Upon information and belief, reports of canal water in the yards of homes adjacent

to the 17ᵗʰ Street Canal were made to the Defendant SWB prior to Hurricane

Katrina.  The presence of canal water in adjacent yards is an indicator of under

seepage due to the flawed design and construction of flood walls.

¶ 136.   The Defendants Corps, OLD, and SWB, had a duty to Plaintiffs to design and

construct the I-walls at the 17ᵗʰ Street Canal in a manner that would not

compromise the safety of the canal's levee/flood wall system.

¶ 137.   The Defendants, SWB and OLD, were negligent in their rejection of the "Barrier

Plan," and insistence on the implementation of the flawed High Level parallel

plan implemented for the 17ᵗʰ Street Canal.

**4.   All of the "discretionary acts" in the relevant chronology occurred before 1985.**

All of the "discretionary acts" upon which SWB stakes its claim to statutory immunity

under La. R.S. 9:2798.1 occurred before 1985, the year that statute was enacted.  What follow are

the critical dates SWB self-identified in either its Local Civil Rule 56.1 Statement or in its

supporting memorandum:

1.   By the 1970's, it had become apparent that the 17ᵗʰ Street Canal was inadequate to
drain all of the land it served.
* * *
Because the area served by the 17ᵗʰ Street Canal was prone to flooding in heavy
rainstorms, the SWB in its discretion decided it was necessary to increase the
capacity of the 17ᵗʰ Street Canal.   (Memorandum in Support of Motion at p. 4)
(Doc. 16843-4)

2.   On July 15, 1974, SWB initiated its rainstorm-related "17ᵗʰ Street Drainage
Canal Improvement Project" by applying to the U.S. Army Corps of Engineers'
Operations Division for a "Permit to Discharge or Work in Navigable Waters and
their Tributaries."

2.   On August 22, 1978, the board contracted with Modjeski and Masters to design
hydraulic *improvements* to re-excavate the canal *to meet drainage requirements*

and to obtain permits necessary to complete the work.  Exhibit No. 2.  Pursuant to the River and Harbors Act, 33 U.S.C. § 403, Modjeski sought a permit from the United States Army Corps of Engineers *to complete improvements* to the 17th Street Canal.  (Memorandum in Support of Motion at p. 4) (Doc. 16843-4)

3.    Finally, on June 13, 1984, the SWB received a permit from the Corps of Engineers to make improvements to the canal.   (Memorandum in Support of Motion at p. 5) (Doc. 16843-4)

4.    As of June 1984, the dredging plan was set.     (Memorandum in Support of Motion at p. 5) (Doc. 16843-4)

Every event in which SWB could conceivably have "exercised discretion" between alternative choices occurred before 1985.  Further, as Plaintiffs will show, the words "improvement," "re-excavate," and "drainage requirements" each has critical legal significance.

## II.  LAW AND ARGUMENT

### 1.    Applicable summary judgment law.

Summary judgment should be granted only "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56 ( c );  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);  Patterson v. Mobil Oil Corp., 335 F.3d 476, 487 (5th Cir. 2003); Peel & Co., Inc. v. The Rug Market, 238 F.3d 391, 394 (5th Cir. 2001).  Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A genuine issue

of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the

non-moving party.' " Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000),

quoting Anderson, 477 U.S. at 248.

**2.      The Louisiana "discretionary acts" statute.**

La. R.S. 9:2798.1, which provides in pertinent part:

> B.      Liability shall not be imposed on public entities or their officers or
> employees based upon the exercise or performance or the failure to
> exercise or perform their policymaking or discretionary acts when such
> acts are within the course and scope of their lawful powers and duties.

This statute protects a governmental agency from liability at the policy making or

ministerial level, not at the operational level.  Gleason v. Nuco, Inc., 774 So.2d 1240, 1242 (La.

App. 1 Cir. 2000).  As explained in Hardy v. Bowie, 719 So.2d 1158, 1162-63 (La. App. 3 Cir.

1998), the Louisiana Supreme Court in  Fowler v. Roberts, 556 So.2d 1 (La. 1989) adopted the

two-prong test of Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531

(1988), used to determine "whether the discretionary function exception applies in specific fact

situations."  Fowler, 556 So.2d at 15, reiterates the federal test which governs the application of

La. R.S. 9:2798.1 and provides that the immunity exception is guided by two considerations:

> First, the exception does not apply when a statute, regulation or policy specifically
> prescribes a course of action, i.e., where there is no element of choice or discretion
> involved.[3]  Second, where discretion is involved, the exception confers immunity
> only where the discretionary action involves the permissible exercise of a policy

---

[3] SWB says it *"contracted with Modjeski and Masters to design hydraulic improvements
to re-excavate the canal to meet drainage requirements."*  How could SWB be exercising any
discretion when it was attempting to meet a requirement?

judgment grounded in social, economic or public policy.[4]

The first consideration contemplates that where an employee acts pursuant to a predetermined course of action, "the employee [has] no discretion or choice as to appropriate conduct" therefore the entity is not immune since it prescribes the conduct causing the harm.  Id. The second inquiry considers conduct that is discretionary, and as such independent, and grants immunity only if the discretion used by the employee is found to be guided by policy considerations. Simeon v. Doe, 618 So.2d 848 (La. 1993).

Thus, discretionary immunity will not apply when a specific course of action is prescribed because the agency (or its employee) has no rightful option but to adhere to the directive. However, when discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, or political activity. Gleason, 774 So.2d at 1242, Rick v. Sate Dep't of Transp., 630 So.2d 1271 (La. 1994); Fowler, 556 So.2d at 15.  When the doctrine applies, the employee or agency is insulated from liability; when it does not apply, the employee or agency is liable for any negligence.  Cormier v. T.H.E. Ins. Co., 745 So.2d 1 (La. 1999).

**4.      Whether SWB's actions were undertaken as a "matter of choice" is a factual finding which is properly determined at trial.**

Hardy v. Bowie, 719 So.2d 1158, 1163 (La. App. 3 Cir. 1998) provides the following critical guidance on applying the "matter of choice" portion test and on the policy-making versus operational question:

---

[4]Applying the Berkovitz/Fowler test here is easy.  Following devastating rainfall events in 1974, SWB had no choice.  It had to increase drainage.  More likely than not, the Mayor and City Council demanded immediate action.  And what element of choice was there?  SWB's only option was to deepen the 17th Street Canal; it did not have the could not simply do nothing.

Where there is no statute or regulation guiding the action at issue and the second prong of the *Berkovitz* test is invoked, another two-step analysis is appropriate. First, it must be considered whether the governmental action was undertaken as a matter of choice. **This is a factual finding which is properly determined at trial.** *Williams v. City of Monroe*, 27,065, 27,066 (La. App. 2 Cir. 7/3/95); 658 So.2d 820.   Next, the action at issue must be distinguished as either discretionary policy-making, thereby invoking the statute immunity, or whether the action is purely operational in nature. *Id.* If the action is simply operational, La. R.S. 9:2798.1 grants no immunity to the entity. **"[W]hether a public duty is policy-making rather than operational is a question of fact which precludes summary judgment."** *Jones v. New Orleans Aviation Board*, 572 So.2d 1191, 1193 (La. App. 5 Cir. 1990).  (Emphasis added)

In support of its immunity argument, SWB cites <u>Hontex Enterprises, Inc. V. City of Westwego</u>, 833 So.2d 1234 (La. App. 5 Cir. 2002), a case where flooding resulted after the West Jefferson Levee District closed a gap in a levee.   Obviously, the WJLD had the option <u>not</u> to close the gap.  Here, however, SWB had no choice <u>not</u> to increase drainage after the catastrophic 1974 rainfall events.  Indeed, all SWB does is claim *in vacuuo* that it exercised discretion.  What was its alternative choice?  Where is that alternative presented in its Local Civil Rule 56.1 statement of uncontested facts?

This absence of any showing by SWB that it actually exercised discretion – *i.e.*, that it chose between alternate courses of action – is critical.  It is the same problem that the Louisiana Third Circuit faced in <u>Hardy</u> where  *"..... no evidence was set forth detailing how the decisions of City were made, who made them, and what considerations were involved in making them."*  719 So.2d at 1163.   In reality, SWB had no choice but to move forward to increase drainage and it has presented no facts upon which any court cold determine whether it did or did not exercise any discretion.

**5.     Whether a public duty is policy-making or operational is a question of fact which precludes summary judgment.**

The Hardy court relied upon <u>Chaney v. National Railroad Passenger Corporation</u>, 583 So.2d 926 (La. App. 1 Cir. 1991) for guidance as to whether it was appropriate to determine the "policy-making" versus "operational activity" issue on motion for summary judgment. Answering in the negative, the Louisiana Third Circuit wrote:

> Of import to the present matter, the court in *Chaney* found that **the distinction of a decision as policy-making or operational, and whether the discretion used was the kind protected by the statute, to be a factual question and as such inappropriate for a Summary Judgment ruling.** (Emphasis added)

**6.     There is no immunity for operational negligence.**

At the conclusion of the section presenting the relevant SWB chronology, *supra*, Plaintiffs said that the words "improvement," "<u>re</u>-excavate," and "drainage requirements" had critical legal significance.   That's because a "drainage requirement" means SWB had no discretion.   Similarly, the words "improvement" and "re-excavate" connote maintenance in the operational decision sense.   In <u>Chaney</u>, 583 So.2d at 930, the First Circuit held:

> *"the only policy decision that a governmental authority can make relating to a roadway, is whether or not to construct it (or assume responsibility for it in some cases) in the first place.  Once that decision is made, related decisions such as the design, method of construction, number and placement of signals, level of maintenance, etc. are operational decisions."*

By analogy, the original 1850 decision to dig the 17th Street Canal was a "policy decision" but *re-dredging* it to meet *drainage requirements* was an operational decision for which La. R.S. 9:2798.1 affords no immunity.

Immunity for discretionary functions by a government entity under Louisiana law is similar to that found in the Federal Tort Claims Act.  In <u>Denham v. United States</u>, 834 F.2d 518, 520 (5th Cir. 1987), the Fifth Circuit held that the F.T.C.A. provides discretionary immunity at

the level of making the decision to provide a service, not at the level of implementing it. Therefore, even *if* SWB exercised discretion (*i.e.*, chose between drainage improvement versus doing nothing) – which is *totally unlikely* in light of the furor caused by the 1974 rain event – it does *not* have immunity for negligence committed at the level of *implementing* the drainage improvement (*i.e.*, initiating a dredging process which cut into the 17th Street Canal's underlying porous sand layer).

In Odom v. City of Lake Charles, 790 So.2d 51, 58 (La. App. 3 Cir. 2001), the Louisiana Third Circuit determined that decisions as to whether a curb and bridge railing should have been improved was an operational decision and not a policy-making or discretionary function decision. In reaching this decision, the court first turned to Valet v. City of Hammond, 577 So.2d 155, 166-167 (La. App. 1 Cir. 1991), which recognized that the duty of an entity to maintain roads in its jurisdiction was one imposed by law. Because La. R.S. 33:4071A(1) provides that *"the public drainage system of the city of New Orleans shall be constructed, controlled, maintained, and operated by a sewerage and water board,"* Plaintiffs suggest that any improvements to the 17th Street Canal – including the dredging at issue – were mandated by law and were merely operational decisions.

**7.      The SWB's alleged "discretionary acts" occurred before La. R.S. 9:2798.1 was enacted in 1985 by the Legislature.  That immunity is <u>not</u> retro-active.**

Plaintiffs suggest that the statutory immunity of La. R.S. 9L2798.1 is inapplicable to SWB because the dates of SWB's alleged "exercise of discretion" preceded the 1985 enactment of the

immunity statute.[5]  Underline Socorro v. The City of New Orleans, 579 So.2d 931, 944-45 (La. 1991), the

Louisiana Supreme Court specifically held that the statute, enacted in 1985 by Act No. 453 of the

Legislature, was not to  be given retroactive application to a 1983 accident.

Here, the statute was enacted *one year after* the last chronological event in which SWB

mentions itself as undertaking any activity in connection with the 17th Street Canal.  Based upon its

own time line, SWB "exercised its discretion" *before* the immunity statute was enacted.

In Peppard v. Hilton Hotels Corp., 482 So.2d 639 (La. App. 4 Cir. 1986), the court provided

a comprehensive discussion of when a law is held to be prospective or retrospective.  The court

stated:

> The general principle of non-retroactive laws is found in C.C. Art. 8 which provides:
> A law can prescribe only for the future; it can have no retrospective operation, nor
> can it impair the obligation of contracts.
> There are three exceptions to the general rule: laws that suppress or lessen penalties,
> laws that are interpretive of existing legislation[6] and laws which the legislature has
> expressly or impliedly declared to be retroactive.  *Ardoin v. Hartford Accident and*

---

[5] On pages two and three of its Statement of Uncontested Material Facts (Doc. 16843-2),
SWB stated:

> 4.     In 1974, due to flooding caused by heavy rains, the SWB first sought a permit
>        from the United States Army Corps of Engineers ("Corps of Engineers") *to
>        redredge* the 17th Street Canal *to improve* its hydraulic characteristics.
>
> 13.    On July 13, 1984, SWB receives permit from Corps of Engineers to proceed
>        with the dredging plan.

[6] In Sunlake Apartment Residence v. Tonti Dev. Corp., 522 So.2d 1298, 1304 (La. App. 5
Cir. 1988), the Louisiana Fifth Circuit found La. R.S. 9:2798.1 to be "interpretive," hence
retrospective.  In 1991, the Louisiana Supreme Court held that the statute was not retrospective in
effect, thus overruling Sunlake.

*Indemnity Co.*, 360 So.2d 1331 (La. 1978).

In <u>Socorro</u>, 579 So.2d at 943the Louisiana Supreme Court cited Civil Code article 6 which provides that *"[i]n the absence of contrary legislative expression, substantive laws apply prospectively only.  Procedural and interpretive laws apply both prospectively and retroactively, unless there is legislative expression to the contrary."*   Likewise, La. R.S. 1:2 provides that *"no section of the Revised Statutes is retroactive unless it is expressly so stated."*   Therefore, Plaintiffs suggest that insofar as no "discretionary act" immunity existed when SWB began the re-dredging process, SWB should not enjoy that protection now even though the harm flowing from its negligence manifested itself in 2005.

**8.      Response to SWB's argument that it owed no duty to Plaintiffs for the design and construction of the 17th Street Canal levees and flood walls.**

SWB first cites La. R.S. 33:4071A(1), which in 1903 added drainage to SWB's other  legal responsibilities for water and sewerage.  What SWB fails to say is that Section 4071A(1) made it the *de jure*  "drainage district" for  New Orleans/Orleans Parish.   Section 4071A(1)  provides:

> The public water system, the public sewerage system, **and the public drainage system of the city of New Orleans shall be constructed, controlled, maintained, and operated by a sewerage and water board ......** (Emphasis added)

SWB then claims that that La. R.S. 38:281(6) and 307 vest the Orleans Levee District ("OLD") with sole jurisdiction over Orleans Parish levees.  Section 281(6) provides:

> §281. Definitions
>
> As used in this Chapter, unless the context clearly indicates otherwise, the following terms shall have the meanings ascribed to them as follows:
>
> (6)      "Levee district" means a political subdivision of this state organized for the purpose

and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits.

Curiously, La. R.S. 38:281(7) provides:

> (7)  "Levee **and drainage district**" means **a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, drainage,[7] and all other things incidental thereto within its territorial limits**.

What is the upshot of this?  It's simple.  In some parishes, the levee and drainage districts are unified.  In Orleans Parish, however, separate boards supervise drainage and levees.[8]  Because of Section 4071A(1), SWB is the *de jure* drainage district for Orleans Parish.  As such, Section 281(7) gives it *responsibility* for constructing and maintaining both levees *and* drainage.

Section 307 specifically limits OLD's dredging authority *"along, over, and on the shores, bottom, and bed of Lake Pontchartrain."*  It provides:

§307. Orleans Levee District; powers of board of commissioners

A.(1) The board of commissioners of the Orleans Levee District shall have and exercise all and singular the powers now conferred upon that board by law, as well as such powers as are herein granted. **The board shall have full and exclusive right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embankments, sea walls, jetties, breakwaters, water-basins, and other works in relation to such projects and to conduct all dredging operations necessary in connection therewith or incidental thereto along, over, and on the shores, bottom, and bed of Lake Pontchartrain** in the parish of Orleans from its western boundary to the boundary line separating township 11 south, range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the board may determine, and along and on the shores adjacent to the lake and along the canals connected therewith.

---

[7] If, by statute, SWB is charged with the duty of maintaining drainage, it cannot argue that its post-1974 drainage improvements were based upon "discretionary acts."

[8] The civil district and criminal district courts are similarly separate in Orleans Parish whereas they are unified in every other parish.

Lastly, SWB overlooks La. R.S. 38:113, which vests drainage districts with control over outfall canals and the adjacent 100 feet on *both* sides of the banks .  Section 113 provides in pertinent that:

> **The various ..... drainage districts shall have control over all public .....**
> **outfall canals within the limits of their districts .....and for a space of one**
> **hundred feet on both sides of the banks of such ..... outfall canals** ..... whether
> the ..... outfall canals have been improved by the levee or drainage district, or have
> been adopted without improvement .....   (Emphasis added)

The conclusions one must draw after reading the foregoing are that (1) OLD had no authority to dredge in the 17th Street Canal because its dredging authority was limited by the Legislature to Lake Pontchartrain, (2) only SWB had authority "to construct, control, maintain, and operate" the Orleans Parish drainage system (*i.e.*, dredging in the 17th Street Canal outfall canal), (3) because it is a drainage district SWB is a political subdivision charged with the duty of constructing and maintaining levees, and (4) SWB also "has control" for a space of 100 feet on both sides of the 17th Street outfall canal.

Plaintiffs suggest that reading these several revised statutes together yields a clear picture: Section 281(7) empowers drainage districts to construct and maintain levees, Section 4071 made SWB a drainage district, and Section 113 vested SWB with  *control* over the outfall canals and the 100 foot spaces on their banks.  Therefore, because SWB alone could dredge in outfall canals, and it had control over the 100 foot spaces on either side of the 17th Street Canal, it cannot dodge responsibility for the flood wall collapse by arguing that third-parties designed and constructed the 17th Street Canal flood walls.

9.	**SWB and the "Barrier Plan."**

SWB argues that it has no jurisdiction over hurricane protection, and did not reject the

Barrier Plan.  However, SWB is a political subdivision  "charged with the duty of constructing

and maintaining levees, drainage, and all other things incidental thereto within its territorial

limits."  La. R.S. 38:281(7).  Thus, while not federally assigned the task of hurricane protection,

it is nonetheless responsible for maintaining levees.   Plaintiffs have alleged it breached its state

law duties toward them.

**10.      Negligent dredging of the 17th Street Canal.**

OLD had no authority to dredge in the 17th Street Canal.  In fact, the wording of La. R.S.

38:307 geographically limits its dredging authority to Lake Pontchartrain.  Under La. R.S.

38:281(7), SWB had that authority.  In an effort to dodge responsibility, SWB makes an

extraordinary statement on page 16 of its supporting memorandum.  It wrote:

> When the SWB received a permit from the Corps to dredge the canal, it was not
> contemplated that the canal bottom would be dredged below the sheet piles.[9]
> Instead, it was planned that sheet piles would be driven below the bottom of the
> canal.  The SWB had no control over this occurring, however, as levees and flood
> walls were not its province.

Levees and flood walls were not its province?  Really?  According to La. R.S. 38:281(7),

a "drainage district" means "a political subdivision of this state organized for the purpose and

*charged with the duty of constructing and maintaining levees*, drainage, and all other things

incidental thereto within its territorial limits."  Further,  La. R.S. 38:113 provides that "drainage

districts shall have control over all public ..... outfall canals within the limits of their districts

.....and for a space of one hundred feet on both sides of the banks of such ..... outfall canals .....

whether the ..... outfall canals have been improved by the levee or drainage district, or have been

---

[9] SWB does not contest the fact that the dredging improperly penetrated to a depth below
the sheet piles.  In light of this, one must ask how this occurred?  Who was statutorily charged
with the duty of constructing and maintaining the canal's levees?

adopted without improvement ....."   Therefore, because SWB was statutorily responsible, it had a duty to insure that the dredging was not done in a manner (*i.e.,* negligently) which penetrated into the porous sand layer below the existing canal bottom.

**11.    The dredging was not performed symmetrically.**

At page 16 of its supporting memorandum, SWB admits that the east and west "halves" of the 17th Street Canal bottom were dredged at different times.  For several years, only the Orleans Parish half had been dredged (60%), to a depth improperly below the sheet piles, and into the porous underlying sand layer.   Plaintiffs' allegation of Orleans Parish side-only dredging is factually correct.

**12.    Negligent compromise of the canal levees.**

SWB writes that "the SWB was not responsible for the levees."  According to La. R.S. 38:281(7), SWB was a "drainage district *charged with the duty of constructing and maintaining levees* within its territorial limits."  Further,  La. R.S. 38:113 provides that "drainage districts shall have control over all public ..... outfall canals  .....and for a space of one hundred feet on both sides of the banks of such ..... outfall canals "  Therefore, because SWB was statutorily responsible for maintaining the levees, it was in breach of this duty if it allowed others to construct faulty flood walls or dredge below sheet pile bottoms.

**13.    Under seepage along the 17th Street Canal.**

As the attached Affidavit of Beth LeBlanc shows, in late 2004 brackish water began emerging in at least two locations at 6780 and 6800 Bellaire Drive.  This process, which continued through August 29, 2005, was reported to SWB.  Further, the locations of the seepage was within the 100 foot space SWB controlled pursuant to La.R.S. 38:113.  SWB was statutorily

responsible and failed to correct the problem.

### III. CONCLUSION

In light of the pending challenge to the Court's supplemental subject matter jurisdiction, the Plaintiffs' claims against SWB should be dismissed without prejudice and this litigation should move forward in the Civil District Court for the Parish of Orleans.  If the Court maintains subject matter jurisdiction, SWB's motion for summary judgment should be denied.

Respectfully submitted,

 /s/ Joseph M. Bruno
Joseph M. Bruno (La. Bar# 3604)
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-1335
Plaintiffs' Liaison Counsel

Gerald E. Meunier (La. Bar# 9471)
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: (504) 522-2304
Liaison Counsel, Levee Plaintiffs' Sub-Group Litigation Committee

Darlene M. Jacobs (La. Bar # 7208)
Jacobs, Sarrat & Lovelace
823 St. Louis Street, New Orleans, LA 70112
Levee Plaintiffs' Sub-Group Litigation Committee

Richard M. Martin, Jr. (La. Bar #8998)
Law Office of Richard M. Martin, Jr., L.L.C.
20 Versailles Boulevard
New Orleans, LA 70125-4114
Telephone: (504) 861-8476
Levee Plaintiffs' Sub-Group Litigation

## CERTIFICATE OF SERVICE

I certify that on February 13, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all participating counsel of record.  I further certify that there are no non-CM/ECF participants that would require a first-class mailing to of the foregoing document and notice of electronic filing.

*/s/* Joseph M. Bruno