# EXHIBIT 61

MILLER (VOL 1), GREGORY

10/2/2008

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES      CIVIL ACTION

CONSOLIDATED LITIGATION              NO. 05-4182 K2

JUDGE DUVAL

PERTAINS TO:  MRGO AND ROBINSON

(No. 06-2268)


(V O L U M E   I)

Rule 30(b)(6) deposition of THE UNITED

STATES OF AMERICA, BY AND THROUGH THE UNITED

STATES ARMY CORPS OF ENGINEERS' DESIGNEE

GREGORY MILLER, given at the U.S. Army Corps of

Engineers New Orleans District offices, 7400

Leake Avenue, New Orleans, Louisiana

70118-3651, on October 2nd, 2008.


REPORTED BY:

JOSEPH A. FAIRBANKS, JR., CCR, RPR

CERTIFIED COURT REPORTER #75005

MILLER (VOL 1), GREGORY

10/2/2008

Page 2

```
 1   REPRESENTING THE PLAINTIFFS:

 2            BRUNO & BRUNO

 3            (BY:  JOSEPH M. BRUNO, ESQUIRE)

 4            (BY:  FLORIAN BUCHLER, ESQUIRE)

 5            855 Baronne Street

 6            New Orleans, Louisiana 70113

 7            504-525-1335

 8   - AND -

 9            THE GILBERT FIRM, LLC

10            (BY:  ELISA T. GILBERT, ESQUIRE)

11            (BY:  BRENDAN R. O'BRIEN, ESQUIRE)

12            325 E. 57th Street

13            New York, N.Y. 10022

14            212-286-8503

15   - AND -

16            ELWOOD C. STEVENS, JR., APLC

17            (BY:  ELWOOD C. STEVENS, JR., ESQUIRE)

18            1205 Victor II Boulevard

19            Morgan City, Louisiana 70380

20   - AND -

21            MCKERNAN LAW FIRM

22            (BY:  ASHLEY E. PHILEN, ESQUIRE)

23            8710 Jefferson Highway

24            Baton Rouge, Louisiana 70809

25            225-926-1234
```

MILLER (VOL 1), GREGORY

10/2/2008

Page 3

```
 1    - AND -

 2              ANDRY LAW FIRM

 3              (BY:  KEA SHERMAN, ESQUIRE)

 4              610 Baronne Street

 5              New Orleans, Louisiana 70113

 6              504-586-8899

 7

 8    REPRESENTING THE UNITED STATES OF AMERICA:

 9              UNITED STATES DEPARTMENT OF JUSTICE,

10              TORTS BRANCH, CIVIL DIVISION

11              (BY:  ROBIN SMITH, ESQUIRE)

12              (BY:  CONOR KELLS, ESQUIRE)

13              P.O. Box 888

14              Benjamin Franklin Station

15              Washington, D.C. 20044

16              202-616-4289

17

18    REPRESENTING THE U.S. ARMY CORPS OF ENGINEERS.

19              CORPS OF ENGINEERS, OFFICE OF COUNSEL

20              (BY:  JENNIFER LABOURDETTE, ESQUIRE)

21              7400 Leake Avenue

22              New Orleans, Louisiana 70118-3651

23              504-862-2843

24

25
```

MILLER (VOL 1), GREGORY

10/2/2008

```
                                                        Page 4
 1   ALSO PRESENT:

 2           JAIME CAMBRE, ESQ.

 3           WILLIAM D. TREEBY, ESQ.

 4           DARCY DECKER, ESQ.

 5           JOHN BALHOFF, ESQ.

 6           TIANA CHRISTOPHER, ESQ.

 7           BEN RODGERS, ESQ.

 8

 9   VIDEOGRAPHER:

10   GILLEY DELORIMIER (DEPO-VUE)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MILLER (VOL 1), GREGORY

10/2/2008

Page 5

1          E X A M I N A T I O N   I N D E X

2

3   EXAMINATION BY:                          PAGE

4

5   MR. BRUNO   ...............................9

6          E X H I B I T   I N D E X

7

8   EXHIBIT NO.                              PAGE

9   Exhibit 17   ..............................21

10   Exhibit 18   ..............................32

11   Exhibit 19   ..............................48

12   Exhibit 20   ..............................51

13   Exhibit 21   ..............................59

14   Exhibit 22   ..............................70

15   Exhibit 23   ..............................74

16   Exhibit 24   ..............................76

17

18

19

20

21

22

23

24

25

Johns Pendleton Court Reporters                    800 562-1285

MILLER (VOL 1), GREGORY

10/2/2008

Page 6

1                    S T I P U L A T I O N

2              IT IS STIPULATED AND AGREED by and

3    among counsel for the parties hereto that the

4    deposition of the aforementioned witness may be

5    taken for all purposes permitted within the

6    Federal Rules of Civil Procedure, in accordance

7    with law, pursuant to notice;

8              That all formalities, save reading

9    and signing of the original transcript by the

10   deponent, are hereby specifically waived;

11             That all objections, save those as to

12   the form of the question and the responsiveness

13   of the answer, are reserved until such time as

14   this deposition, or any part thereof, is used

15   or sought to be used in evidence.

16

17

18                       *   *   *

19

20

21

22             JOSEPH A. FAIRBANKS, JR., CCR, RPR,

23   Certified Court Reporter in and for the State

24   of Louisiana, officiated in administering the

25   oath to the witness.

1                UNITED STATES DISTRICT COURT

2                EASTERN DISTRICT OF LOUISIANA

3

4    IN RE: KATRINA CANAL BREACHES      CIVIL ACTION

5    CONSOLIDATED LITIGATION            NO. 05-4182 K2

6                                       JUDGE DUVAL

7    PERTAINS TO:  MRGO AND ROBINSON

8                      (No. 06-2268)

9

10              (V O L U M E   III)

11              Rule 30(b)(6) deposition of THE UNITED

12   STATES OF AMERICA, BY AND THROUGH THE UNITED

13   STATES ARMY CORPS OF ENGINEERS' DESIGNEE

14   GREGORY MILLER, given at the U.S. Army Corps of

15   Engineers New Orleans District offices, 7400

16   Leake Avenue, New Orleans, Louisiana

17   70118-3651, on October 14th, 2008.

18

19

20

21

22

23   REPORTED BY:

24              JOSEPH A. FAIRBANKS, JR., CCR, RPR

25              CERTIFIED COURT REPORTER #75005

```
1    REPRESENTING THE PLAINTIFFS:

2              BRUNO & BRUNO

3              (BY:  JOSEPH M. BRUNO, ESQUIRE)

4              (BY:  FLORIAN BUCHLER, ESQUIRE)

5              855 Baronne Street

6              New Orleans, Louisiana 70113

7              504-525-1335

8    - AND -

9              ELWOOD C. STEVENS, JR., APLC

10             (BY:  ELWOOD C. STEVENS, JR., ESQUIRE)

11             1205 Victor II Boulevard

12             Morgan City, Louisiana 70380

13   - AND -

14             MCKERNAN LAW FIRM

15             (BY:  ASHLEY E. PHILEN, ESQUIRE)

16             8710 Jefferson Highway

17             Baton Rouge, Louisiana 70809

18             225-926-1234

19   - AND -

20             ANDRY LAW FIRM

21             (BY:  KEA SHERMAN, ESQUIRE)

22             610 Baronne Street

23             New Orleans, Louisiana 70113

24             504-586-8899

25   - AND -
```

```
 1              THE GILBERT FIRM, LLC

 2                   (BY:  ELISA GILBERT, ESQUIRE)

 3              325 E. 57th Street

 4              New York, N.Y. 10022

 5              212-286-8503

 6

 7       REPRESENTING THE UNITED STATES OF AMERICA:

 8              UNITED STATES DEPARTMENT OF JUSTICE,

 9              TORTS BRANCH, CIVIL DIVISION

10                   (BY:  ROBIN SMITH, ESQUIRE)

11                   (BY:  CONOR KELLS, ESQUIRE)

12              P.O. Box 888

13              Benjamin Franklin Station

14              Washington, D.C. 20044

15              202-616-4289

16

17       REPRESENTING THE U.S. ARMY CORPS OF ENGINEERS.

18              CORPS OF ENGINEERS, OFFICE OF COUNSEL

19                   (BY:  DAVID DYER, ESQUIRE)

20              7400 Leake Avenue

21              New Orleans, Louisiana 70118-3651

22              504-862-2843

23

24       ALSO PRESENT:

25              R. SCOTT HOGAN, ESQ.
```

```
 1   PRESENT VIA I-DEP:

 2

 3            ELISA GILBERT, ESQ.

 4            BRENDAN O'BRIEN, ESQ.

 5            ELWOOD STEVENS, ESQ.

 6

 7   VIDEOGRAPHER:

 8            KEN HART

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          E X A M I N A T I O N   I N D E X

2

3     EXAMINATION BY:                              PAGE

4

5     MR. BRUNO    ..............................222

6              E X H I B I T   I N D E X

7

8     EXHIBIT NO.                                  PAGE

9     EXHIBIT 50    ..............................333

10    EXHIBIT 51    ..............................336

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                 S T I P U L A T I O N

 2              IT IS STIPULATED AND AGREED by and

 3     among counsel for the parties hereto that the

 4     deposition of the aforementioned witness may be

 5     taken for all purposes permitted within the

 6     Federal Rules of Civil Procedure, in accordance

 7     with law, pursuant to notice;

 8              That all formalities, save reading

 9     and signing of the original transcript by the

10     deponent, are hereby specifically waived;

11              That all objections, save those as to

12     the form of the question and the responsiveness

13     of the answer, are reserved until such time as

14     this deposition, or any part thereof, is used

15     or sought to be used in evidence.

16

17

18                        *   *   *

19

20

21

22              JOSEPH A. FAIRBANKS, JR., CCR, RPR,

23     Certified Court Reporter in and for the State

24     of Louisiana, officiated in administering the

25     oath to the witness.
```

MILLER (VOL 1), GREGORY

10/2/2008

Page 13

 1   United States to give counsel for the United

 2   States some heads up about what documents we'd

 3   be talking about, right?

 4       A.   I believe so.

 5       Q.   Well, I guess what I want to conform

 6   for the record, you did not select out any

 7   documents yourself.

 8       A.   No.

 9       Q.   Okay.  Did you speak to anybody who

10   may have been employed by the Corps in 1955 and

11   who is still with us?

12       A.   No.

13       Q.   Okay.

14       A.   No.

15       Q.   Well, how then would you be prepared

16   today to tell us anything about analyses and/or

17   evaluations of any modifications to the MRGO

18   deemed necessary to address impacts on the

19   health and safety of the human environment if

20   you didn't -- well, first, if you were n't born

21   yet, and secondly, if you didn't talk to

22   anybody, how would you do that?

23       A.   Well, as I do in a lot of things, I

24   deal with many subjects that are historic in

25   nature or that happened before my employment

MILLER (VOL 1), GREGORY

10/2/2008

Page 14

1    with the Corps of Engineers, because they're

2    relevant to the activities that we conduct, you

3    know, our ongoing activities that we conduct

4    today.

5        Q.    Right.

6        A.    And the source of information for that

7    are our files, reports that we've produced in

8    the past, interaction with other interested

9    parties, just as I would in any particular job

10   I currently work on.

11       Q.    All right.  So you have a great deal

12   of information about this subject based upon

13   your experience as a Corps employee, isn't that

14   true?

15       A.    Yes.

16       Q.    Okay.  All right.  Remember who took

17   your deposition in this case?

18       A.    I'm not sure what you mean by took it.

19       Q.    Well, the guy who was in my seat, the

20   guy who asked the questions.  How about that?

21       A.    I don't remember his name.

22           MR. SMITH:

23               The guy who took it?

24       (Off the record.)

25   EXAMINATION BY MR. BRUNO:

MILLER (VOL 1), GREGORY

1    Q.   All right.  Well, let me just -- for

2  this record, and you'll forgive me because I

3  didn't have that deposition, what is your

4  present job title?

5           MR. SMITH:

6                Then you obviously didn't take

7           it, did you?

8           MR. BRUNO:

9                I didn't take it, no.  I thought

10          we established.  You would have

11          remembered me.  Come on.

12  EXAMINATION BY MR. BRUNO:

13    Q.   What is your current position, sir?

14    A.   I'm a Senior Project Manager at the

15  New Orleans District for the Army Corps of

16  Engineers.

17    Q.   Okay.  And you are in which

18  department?

19    A.   I work in, um -- programs planning and

20  project management division in our coastal

21  restoration branch.  It's a subset of our

22  protection and restoration office.

23    Q.   Okay.  How long have you been there?

24    A.   I've worked with the Corps of

25  Engineers for, um -- since 2000.

 1    believe that in some of the comments in the

 2    division memorandum reviewing the draft there

 3    was a question about the use of that dollar

 4    amount.  I think the take-away point here from

 5    the Corps perspective is that they were able to

 6    demonstrate a value above unity and to make a

 7    recommendation that there be further

 8    investigation of pursuing the bank

 9    protection -- potential bank protection

10    measures.

11        Q.   What was the cost of bank protection

12    in this reconnaissance report?

13        A.   Do you have a page number for me or is

14    there something that you're --

15        Q.   I think it's the same page, wherever I

16    was, the table.

17             It ranges between 34 and 110 million?

18        A.   Do you have a page number?

19        Q.   47.

20        A.   Yeah.  I believe that is right.

21    That's what it says here in this table in the

22    first column.

23        Q.   All right.

24        A.   I don't actually remember the

25    scenario, but I assume that that's the cost of

1    bank protection measures.

2        Q.   All right.  And this reconnaisance

3    report really never went into a feasibility

4    study, and there was another reconnaisance

5    report done in '94, right?

6        A.   If I remember correctly --

7             MR. SMITH:

8                  Objection.  Asked and answered.

9    EXAMINATION BY MR. BRUNO:

10       Q.   You were answering?

11            MR. SMITH:

12                 This was covered in detail with

13            Mr. Podany.

14            MR. BRUNO:

15                 I know.  Just context, Robin.

16       A.   If I remember right, the '88 draft led

17   to subsequent drafts where there was a

18   recommendation to pursue a feasibility study.

19   EXAMINATION BY MR. BRUNO:

20       Q.   Right.

21       A.   And, um-- I don't believe that the

22   port, who was the project local sponsor, um--

23   wanted to cost share the study.

24       Q.   Exactly.

25       A.   And that there were other -- there

1   were efforts to identify other entities in

2   terms of a local sponsor and they were not

3   agreeable to cost sharing the --

4        Q.   Right.

5        A.   -- feasibility.

6        Q.   In the second reconnaisance report,

7   the evaluation of the cost of the project had

8   gone up pretty substantially, didn't it?

9        A.   I don't remember the details.  If you

10  you'll show it to me I'll look at it for us.

11            MR. SMITH:

12                 Objection.  Asked and answered.

13            (Off the record.)

14  EXAMINATION BY MR. BRUNO:

15       Q.   At Page 43, it suggests that the costs

16  are anywhere from as high as $195 million.

17  Right?  Isn't that true?

18       A.   Table 9 shows a range of 13, um--

19  first cost gross investment of 13 million to,

20  as you mentioned, 195 million.  I don't know

21  that the options presented here compare to the

22  scenarios presented here.  (Indicating.)  Um--

23  you have to make sure you're comparing apples

24  to apples in the sense -- in order to be able

25  to make the statement which you said, which is

1    that costs went up significantly.  This may

2    involve much further work, it may involve a

3    newly demonstrated technique on how to do this

4    work.  I don't know what -- the alternatives

5    comparison may be different.  And so I wouldn't

6    make that conclusion --

7        Q.   Okay.

8        A.   -- without reading --

9        Q.   Now, did the Corps undertake any

10   evaluation as to what the loss of the wetlands

11   bank erosion was worth in terms of dollars?

12           MR. SMITH:

13               Objection.  Asked and answered.

14       A.   You're asking again, I'm sorry, the

15   value -- I'm sorry?  Could you repeat it,

16   please?

17   EXAMINATION BY MR. BRUNO:

18       Q.   They put a dollar amount of the loss

19   to the environment, up to this point in time.

20   This is 1994.

21       A.   Just from a quick glance at this Table

22   17, it looks like they placed a potential value

23   on the acres of marsh saved, but not on lost.

24   I'm not sure in terms of date, you know, what

25   your starting point is for asking that.  But

 1              Because that falls squarely

 2       within --

 3       MR. SMITH:

 4              Come on, Joe.  Just because

 5       there's some overlap -- she can answer

 6       the question.  She will answer that

 7       question.  Let's just move on with

 8       this witness.

 9       MR. BRUNO:

10              You know, I don't --

11       MR. SMITH:

12              She knows about that.  And he

13       doesn't.

14       MR. BRUNO:

15              Hold the phone.

16              Where is Nancy Powell 's thing?

17       I don't even think that's something

18       that she's designated for.

19       MR. KELLS:

20              She's designated for evaluations

21       by the Corps regarding storm surges

22       with the MRGO.  Number 10.

23       MR. BRUNO:

24              Within the MRGO.

25       MR. KELLS:

1            It says with the MRGO.

2        MR. BRUNO:

3            Minimum says within.  All right.

4        Fine.  I'll ask her.

5    EXAMINATION BY MR. BRUNO:

6        Q.   All right.  What is the difference

7    between a reevaluation study and a

8    reconnaisance study?

9        A.   Reconnaisance study is part of the

10   two-part study process for, um-- potential new

11   water resources projects.  The reconnaisance

12   study in specific identifies whether there is a

13   federal interest in a particular problem and

14   the potential solutions and whether there

15   appears to be, um-- a cost effective solution

16   available -- or a technically feasible solution

17   available.  A reevaluation study would look at

18   an existing project, and it can look at it in

19   terms of the continuing need for the project,

20   potential changes in the economics of it.

21       Q.   Why wasn't a reevaluation study done

22   of the MRGO before this particular point in

23   time?

24       MR. SMITH:

25           Objection.  Vague as to time.

1          MR. BRUNO:

2               Sorry?

3          MR. SMITH:

4               Vague as to time.

5          MR. BRUNO:

6               I said at this point in time.

7               Prior to this point in time.  This

8               point in time is when the study was

9               done.  How vague is that as to time?

10     A.   Well, I believe that the local

11  sponsor, um -- you know, up until that point in

12  time the local sponsor had expressed strong

13  interest in continuing the MRGO as a navigation

14  project.

15  EXAMINATION BY MR. BRUNO:

16     Q.   Let me show you -- let's mark this,

17  please, Exhibit 50.  This is NPM 38-636 to 648

18  in seriatim.  It's entitled Mississippi River

19  Gulf Outlet Reevaluation Study, Study Plan.

20  (Tendering.)  Have you seen this before?

21          (EXHIBIT 50 was marked for

22  identification and is attached hereto.)

23     A.   I believe so, yes.

24  EXAMINATION BY MR. BRUNO:

25     Q.   Okay.  All right.  Well, if you look

MILLER (VOL IV), GREGORY

10/15/2008

Page 344

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES      CIVIL ACTION

CONSOLIDATED LITIGATION            NO. 05-4182 K2

                                   JUDGE DUVAL

PERTAINS TO:  MRGO AND ROBINSON

                   (No. 06-2268)


              (V O L U M E   IV)

         Rule 30(b)(6) deposition of THE UNITED

STATES OF AMERICA, BY AND THROUGH THE UNITED

STATES ARMY CORPS OF ENGINEERS' DESIGNEE

GREGORY MILLER, given at the U.S. Army Corps of

Engineers New Orleans District offices, 7400

Leake Avenue, New Orleans, Louisiana

70118-3651, on October 15th, 2008.


REPORTED BY:

         JOSEPH A. FAIRBANKS, JR., CCR, RPR

         CERTIFIED COURT REPORTER #75005

MILLER (VOL IV), GREGORY

10/15/2008

Page 345

1    REPRESENTING THE PLAINTIFFS:

2            BRUNO & BRUNO

3            (BY:  JOSEPH M. BRUNO, ESQUIRE)

4            (BY:  FLORIAN BUCHLER, ESQUIRE)

5            855 Baronne Street

6            New Orleans, Louisiana 70113

7            504-525-1335

8    - AND -

9            ELWOOD C. STEVENS, JR., APLC

10           (BY:  ELWOOD C. STEVENS, JR., ESQUIRE)

11           1205 Victor II Boulevard

12           Morgan City, Louisiana 70380

13   - AND -

14           MCKERNAN LAW FIRM

15           (BY:  ASHLEY E. PHILEN, ESQUIRE)

16           8710 Jefferson Highway

17           Baton Rouge, Louisiana 70809

18           225-926-1234

19   - AND -

20           SHER, GARNER, CAHILL, RICHTER, KLEIN &

21           HILBERT, L.L.C.

22           (BY:  MATTHEW CLARK, ESQUIRE)

23           909 Poydras Street, 28th Floor

24           New Orleans, Louisiana 70112

25           504-299-2100

MILLER (VOL IV), GREGORY

10/15/2008

Page 346

 1    - AND -

 2           THE GILBERT FIRM, LLC

 3           (BY:  ELISA GILBERT, ESQUIRE)

 4           325 E. 57th Street

 5           New York, N.Y. 10022

 6           212-286-8503

 7

 8    REPRESENTING THE UNITED STATES OF AMERICA:

 9           UNITED STATES DEPARTMENT OF JUSTICE,

10           TORTS BRANCH, CIVIL DIVISION

11           (BY:  ROBIN SMITH, ESQUIRE)

12           (BY:  CONOR KELLS, ESQUIRE)

13           P.O. Box 888

14           Benjamin Franklin Station

15           Washington, D.C. 20044

16           202-616-4289

17

18    REPRESENTING THE U.S. ARMY CORPS OF ENGINEERS.

19           CORPS OF ENGINEERS, OFFICE OF COUNSEL

20           (BY:  JENNIFER LABOURDETTE, ESQUIRE)

21           7400 Leake Avenue

22           New Orleans, Louisiana 70118-3651

23           504-862-2843

24

25

MILLER (VOL IV), GREGORY

10/15/2008

Page 347

```
 1   ALSO PRESENT:

 2          TIANA CHRISTOPHER, ESQ.

 3

 4   PRESENT VIA I-DEP:

 5          ELISA GILBERT, ESQ.

 6          BRENDAN O'BRIEN, ESQ.

 7

 8   VIDEOGRAPHER:

 9          GILLEY DELORIMIER (DEPO-VUE)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MILLER (VOL IV), GREGORY

10/15/2008

Page 348

```
 1        E X A M I N A T I O N   I N D E X

 2

 3    EXAMINATION BY:                          PAGE

 4

 5    MR. BRUNO    .............................350

 6            E X H I B I T   I N D E X

 7

 8    EXHIBIT NO.                              PAGE

 9    Exhibit 52    .............................373

10    Exhibit 53    .............................389

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Johns Pendleton Court Reporters                    800 562-1285

MILLER (VOL IV), GREGORY

10/15/2008

Page 349

1                    S T I P U L A T I O N

2              IT IS STIPULATED AND AGREED by and

3     among counsel for the parties hereto that the

4     deposition of the aforementioned witness may be

5     taken for all purposes permitted within the

6     Federal Rules of Civil Procedure, in accordance

7     with law, pursuant to notice;

8              That all formalities, save reading

9     and signing of the original transcript by the

10    deponent, are hereby specifically waived;

11             That all objections, save those as to

12    the form of the question and the responsiveness

13    of the answer, are reserved until such time as

14    this deposition, or any part thereof, is used

15    or sought to be used in evidence.

16

17

18                        *   *   *

19

20

21

22             JOSEPH A. FAIRBANKS, JR., CCR, RPR,

23    Certified Court Reporter in and for the State

24    of Louisiana, officiated in administering the

25    oath to the witness.

MILLER (VOL IV), GREGORY

10/15/2008

Page 359

```
 1    if you will, to look into the project in a
 2    different manner.  The port, as I mentioned,
 3    was expressing that they would move facilities
 4    from the Industrial Canal area to the river
 5    and, therefore, the future economics of the
 6    navigation channel could be in question.  And
 7    so the expression of the port's interest from
 8    that standpoint is something that the Corps
 9    would have considered in looking to initiate
10    the reevaluation.
11        Q.   Isn't it a fact that for a long period
12    of time within this office, the New Orleans
13    District office, there has been a difference of
14    opinion as to whether or not the channel should
15    remain open in the first instance?
16        A.   I'm not sure I understand what you
17    mean by first instance in that case.
18        Q.   In other words, that there was a
19    dialogue in this office for many, many years,
20    there were those in this office who wanted to
21    keep the channel open for navigation purposes
22    and there was another group in this office who
23    believed that the damage that was being done to
24    the environment was so great that there really
25    was a substantial need to close the channel and
```

MILLER (VOL IV), GREGORY

10/15/2008

Page 360

1    that the use of the channel was not sufficient

2    to justify keeping it open?  Isn't that what --

3    isn't that what was going on here for years and

4    years and years?

5         A.   I think, you know, that's kind of a

6    general characterization but, yeah, that is the

7    type of discussions that were ongoing between

8    staff level elements here at the district.

9         Q.   Right.

10        A.   The thing that is important about it,

11   though, is that it doesn't necessarily respond

12   to the authorization status and the

13   appropriations received by the Corps for the

14   project.  You know, if you're getting -- you

15   have an authorization to operate and maintain a

16   project and you're receiving funds to do that,

17   you have to carry out the direction of the

18   Congress in that sense.

19        Q.   When the Corps went to the Congress

20   for authorization -- I'm sorry.  For continued

21   funding for operations and maintenance, did it

22   tell -- and I don't want to couch this in terms

23   of what it told Congress, but did this office

24   tell higher-ups about all of the environmental

25   damages that were being caused by the channel,

MILLER (VOL IV), GREGORY

10/15/2008

Page 361

1   so that the Congress -- so that the higher ups

2   could ascertain whether or not this was a

3   project that would merit continued funding?

4        A.   I believe we went through, yesterday,

5   a number of the reconnaisance documents for

6   shore protection, and we had talked not

7   specifically but in general about other

8   evaluations of the channel that discussed

9   environmental aspects associated with it,

10  salinity, bank erosion --

11       Q.   Right.   We did.

12       A.   -- opportunities for environmental

13  protection, and those documents, in fact we

14  talked about some of them in specific, had

15  memorandums where there was review by higher

16  authorities within the Corps.   So yes, the

17  answer is the district would have informed

18  others about the environmental setting of the

19  project, as well as the other aspects that were

20  under evaluation for continuation of

21  maintenance.

22       Q.   We know that those in the office who

23  wanted to continue the use of the channel for

24  navigation purposes understood the need for

25  continued dredging because without continued

MILLER (VOL IV), GREGORY

Page 362

1    dredging you wouldn't use it for navigational

2    purposes.  Isn't that true?

3        A.   Well, it would limit the use of the

4    channel to the available draft.

5        Q.   All right.  So what I'm trying to

6    understand is whether or not the information

7    about the damages that the MRGO were causing

8    was tied to the request for money for continued

9    operation and maintenance, or was it separate?

10            MR. SMITH:

11                I'd just like to make a note that

12            John Saia was designated to address

13            the budgeting and funding issues which

14            were Topic Number 3.

15                But you can answer to the

16            extent --

17                To the extent of his knowledge

18            Mr. Miller can address that.

19            MR. BRUNO:

20                All right.

21        A.   I can't say specifically at the time,

22    um -- budgets are developed on a continuing

23    basis at the direction of the administration

24    and I don't know what the specific

25    requirement -- in fact, I'm not even sure