# EXHIBIT 64



**US Army Corps
of Engineers**
New Orleans District

# Mississippi River–Gulf Outlet
# St. Bernard Parish, La.

## Bank Erosion

## Reconnaissance Report



EXHIBIT
37

February 1988

RETURN TO

PROJECTS ENGINEERING SECTION

If you have questions or need additional information, please contact Mr. J. Warren, Study Manager, U.S, Army Corps of Engineers, New Orleans District, P.O. Box 60267, New Orleans, Louisiana  70160-0267, telephone (504) 862-2543.

CELMN-ED-SP                                    November 30, 1988

MEMORANDUM FOR RECORD

SUBJECT:  Mississippi River - Gulf Outlet, Bank Erosion, GDM
Supplement Design Conference

Date of Conference:  18 November 1988

Place of Conference:  New Orleans District Office New Orleans, LA

Attendance:  List of attendants is attached (Encl 1).

Conference Purpose:  The purpose of the Design Conference was to
discuss comments that were made on the Reconnaissance Report for the
subject project. The responses to these comments are to be
incorporated into the GDM supplement.

Brief Summary of Conference:  The meeting generally followed the
agenda shown on Encl 2 with attendants participation in the form of
comments or questions invited at any time during the course of the
meeting.

I. Overview

A packet containing copies of the comments on the Reconnaissance
Report and a copy of the current GDM schedule was distributed.  A
copy is attached as Encl 3.

The meeting began with a general overview of the project.  A
question was asked as to why no Feasibility study was being done for
the project.  The response was that since the benefits of the
project are primarily navigational it was felt that it would be
difficult to cost share the feasibility effort.  It was also stated
that any work that came out of the project could be done as an
extension of the unfinished MRGO project and authorization was not
needed.

II. Reconnaissance Report, LMVD Comments

All the comments were addressed in the approximate order shown on
the agenda.  Discussion on these comments is summarized below.

a. Comment 1a. A straight line projection was not used to determine
the expected increase in width.  Aerial photos were compared then
compared to as-built drawings and an erosion rate of 20 ft/yr was
obtained.  This was reduced to 15 ft/yr for the projections used.
The shoreline of Lake Borgne is also retreating toward the channel
at 15 ft/yr.  Ship waves cause most of the erosion along the channel
and wind waves cause most of the erosion in Lake Borgne. A question

was asked about the location of the proposed dike.  The dike is presently planned to be placed close to the existing marsh line. This location could change depending on GDM studies.

WES studies update.  A request was made that an explanation of what the studies that WES is currently performing in conjunction with this project are supposed to do.  It was explained that the studies will determine what will happen to the total system, circulation patterns, material, etc. if breaches do occur in the targeted critical areas.  A realistic prediction of projected maintenance dredging is the expected outcome of the study.  WES will look at incremental widths of breach openings starting with a fairly wide width.  If this wide width doesn't have much of an effect, then further studies would be unnecessary.  They will use historical data and are obtaining new data on suspended sediments, current velocities, and tides at the expected gap occurrences.  They anticipate the first information from these studies should be available around Apr or May 89.

b.  Comment 1b.  As stated earlier the erosion rate along Lake Borgne is about 15 ft/yr.  The proposed plans call for a minimum of 100 ft. of bank nourishment to be placed between the bank protection structure and Lake Borgne.

c.  Comment 1c.  Studies by the beach erosion board used in MRGO GDM No. 2 stated there was an unlimited supply of fine sediment available to cause shoaling problems.  If breaches occur the water can get in, stir the sediment up and take it into MRGO.  A question was asked as to whether the WES studies will be able to identify where the sediment comes from; the answer was no.  Another question asked was if the structures are built will ships start to erode the opposite bank.  WES says that this will not occur since the dikes will dissipate the energy from the ship waves.

d.  Comment 1d.  The rational for using the varying rates was that, using data gained from a single jetty reach, dredging decreases the further you get from the gaps.

e.  Comment 4d.  All alternatives will be looked at in more detail in the GDM.

f.  Comment 8c.  The methodology used to determine these requirements was that a reduced wave height for the slower ship speed was developed using guidance on ship speed and corresponding wave height, and the erosion rate was reduced proportionately.  Since it had such a low B/C ratio the reduced ship speed alternative will not be investigated in the GDM.  It was stated that a reduced speed — structure combination could be feasible.

g.  Comment 12.  Answered during discussion of an earlier comment.  *previous paragraph* —

h. <u>Comment 2.</u>  The alternative to completely close the MRGO should be addressed.  An alternative of closing it to ship traffic but leaving it open for recreational traffic should also be investigated.  <u>Comment 3</u> and <u>Comment 18</u> also go along with this comment.  It was stated that current studies indicate that there is no justification at this time for the deeper draft ship lock mentioned in comment 18.  It was stated that justification for the MRGO should be based on existing traffic and lock conditions.  Existing facilities along the MRGO would have to be considered.  LMVD stated they would check and see how they think these comment should be handled and provide guidance to NOD.

i. <u>Comment 4a.</u>  Other feasible alternatives will be looked at in the GDM and the four recommended alternatives will be investigated more fully.

j. <u>Comment 4b.</u>  The 100' length of bank nourishment is the design length to prevent breakthrough under 50 yr hurricane conditions.  There is a possibility that dredging specifically for this nourishment will have to be done.  This bank nourishment will provide an area for vegetation to grow, provide stability, and protect the back side from erosion.  Maintenance of this 100' area will be considered in the GDM.  It was recommended that placing dredged material disposal instead of building dikes be investigated in the GDM.

k. <u>Comment 4c.</u>  See above.  The 100' marsh buffer will help to abate problems from Lake Borgne.

l. <u>Comment 7.</u>  At this time it appears that the petition to the Coast Guard to reduce ship speed will be denied.  Further action on this may be necessary.

m. <u>Comment 8b.</u>  See earlier discussion on comment 8c.  This will be looked at in the GDM.

n. <u>Comment 16.</u>  The piles are not intended to be used for wave dissipation.  The piles are to hold the geotextile fabric in place.  This is a different situation than the one is Southwest Pass as we are not trying to eliminate flow into the marsh, but rather trying to reduce wave force.  The crest height of each alternative will be determined by economic justification.  Maintenance requirements of different plans will be considered.

o. <u>Comment 17.</u>  See response to comment 16.

p. <u>Comment 5.</u>  The cost estimate in the GDM will be presented in the requested format.

q. <u>Comment 6.</u>  This is a problem with terminology.  The rationale will be made clear in the GDM.

r. <u>Comment 8a.</u>  Cultural resource preservation dollars are tied
directly to construction impacts and don't relate to benefits
obtained from decreasing erosion.

s. <u>Comment 9.</u>  The bottom line figures are correct but there are
some errors in the tables.  These corrections will be made for the
GDM.

t. <u>Comment 10.</u>  The number was taken from a recently completed marsh
value analysis.  This analysis is being forwarded to LMVD.  Marsh is
defined as emergent vegetative wetlands.

u. <u>Comment 11.</u>  This information will be provided for the GDM.

v. <u>Comment 14.</u>  The cost includes funds for all these items but it
appears at this time that the funds will be inadequate.

w. <u>Comment 15.</u>  There is a 500' wide construction easement not 2000
ft.  This will be made clear in the GDM.

x. <u>Comment 13.</u>  Only those studies required for the 404 will be
done.

III. GDM

Milestone Decisions:  The need for and detail to which comments
                      relative to the closure of the MRGO will be
                      established by guidance from LMVD.
                      Decide if there is a viable project or not
                      (probably when the WES studies have
                      produced useful data, APR or MAY 89.

Need a project review meeting with OCE and LMV when the time comes
to make a decision on the viability of the project; this meeting
will also cover progress on the project up to that time.

There is a need to get more money transferred into the project.
This is not a holdup at the present time but could be if
difficulties are encountered in getting the money.

IV. Summary and Conclusions

1. The bulk of the comments will be addressed relative to work
included in the GDM.

2. LMV will provide guidance on the detail in which comments
relative to the closure of MRGO should be addressed.

3. A meeting of decision will be held when the WES model studies
have produced useful data (APR/MAY 89).




**ATTENDANCE RECORD**

| DATE(S) | SPONSORING ORGANIZATION | LOCATION |
|---|---|---|
| 18 NOV 88 | CELMN-ED-SP | NOD |

**PURPOSE** DISCUSSION OF LMVD COMMENTS ON THE MRGO BANK EROSION RECONNAISSANCE REPORT (FEB 88)

**PARTICIPANT REGISTER \***

| NAME | ORGANIZATION | TELEPHONE NUMBER |
|---|---|---|
| William R Hill | CELMV-ED-A | 601 634-5829 |
| Jim Miskelley | CELMV-ED-PG | 601-634-5922 |
| Norwyn Johnson | CELMV-PD-F | 601 634-5835 |
| Jesse K McDonald | CELMV-PD-E | 601-634-5847 |
| Henry G. Reed | CELMV-ED-PG | 601-634-5927 |
| FRED CAVER | CELMV-ED-P | 601-634-5904 |
| Van Button | CELMN-PD-RA | |
| Joe Dicharry | CELMN-ED-PN | 504-862-1929 |
| Suzanne Hawes | CELMN-PD-RE | 504-862-2518 |
| FRED SCHILLING | CELMN-OD-OC | (504)862-2321 |
| Hugh L. Bracey | CELMN-ED-DG | (504)862-2701 |
| MARILYN MORSE | CELMN-ED-DG | 504-862-2705 |
| L. F. Cook | CELMV-ED-WH | 601-634-5915 |
| BUDDY BOREN | CELMV-CO-O | 601 634-7148 |
| John Grieshaber | CELMN-ED-FS | 504 862 2979 |
| Jean E. McArthur | CELMN-ED-F6s | 504-862-1022 |
| RICH MANGUNO | CELMN-PD-E | 504 862-1923 |
| JESSICA FOX | CELMN-PD-E | 504 862-1922 |
| Jay Combe | CELMN-ED-HC | 504 862-2480 |
| JOE LETTER | CEWES-HE-S | 601-634-2845 |
| Barbara P. Donnell | CEWES-HE-S | 601-634-2730 |
| CECIL W. SOILEAU | CELMN-ED-H | 504-862-2420 |
| JAMES R TUTTLE | CELMV-ED-W | 601-634-5818 |

LMV FORM 583-R
(replaces LMN 906)
AUG 87   Encl 1

**\*** If you wish to be furnished a copy of the attendance record, please indicate so next to your name.

PROPONENT: CELMV-IM

| PARTICIPANT REGISTER  (CONTINUED) | | |
|---|---|---|
| **NAME** | **ORGANIZATION** | **TELEPHONE NUMBER** |
| Cecil W Grisham | CELMV-ED-TC | 601-634-5929 |
| Max S. Loeub | CELMV-ED-PL | 601-634-5911 |
| Pamela A Deloach | CELMN-ED-SP | 504-862-2621 |
| JAMES WARREN | CELMN-PD-FC | 504-862-2543 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

LMV FORM   583-R

Mississippi River - Gulf Outlet, Bank Erosion, GDM Supplement
Design Conference
18 Nov 88

## Agenda

I.   Overview

II.  Reconnaissance Report, LMVD Comments

    A.   Maintenance Dredging Requirements
       (Comments 1a, 1b, 1c, 1d, 8c)

       1).Model studies (Comment 12)

    B.   Design Options and Alternatives
       (Comments 2, 3, 4a, 4b, 4c, 7, 8b, 16, 17)

    C.   Economics & Cost Estimates
       (Comments 4d, 5, 6, 8a, 9, 10, 11, 14, 15)

    D.   Environmental (Comment 13)

III. GDM Supplement
    A.   Design Schedule
    B.   Design Milestones
    C.   Data Requirements

IV.  Summary and Conclusions

Encl 2

LMVD COMMENTS RELATIVE TO
THE MISSISSIPPI RIVER-GULF OUTLET BANK EROSION
RECONNAISSANCE REPORT

1. In view of the sensitivity of project justification to project maintenance dredging requirements, the District should furnish the rationale used for projecting annual maintenance dredging quantities. The discussion on page 24, Future MRGO Channel Maintenance, is inadequate to verify data on Plates 2 and 3. Additional discussion is needed to address the following:

a. The methodology used to project the location of the MRGO north bank by the year 2040. When the waterway was constructed in 1968, it had a top width of 650 feet which increased to approximately 1,500 feet by 1987. If New Orleans District used a straight-line projection using this past observed enlargement trend, then the future enlargement is vastly overstated. Waves from ships will decay in height over distance traveled (from the vessel) and also when they encounter a much shallower top bank than that which was originally constructed.

b. The erosion rate of Lake Borgne shoreline and the impact this erosion will have on the "buffering marshes."

c. The loss of the "buffering marshes" will reduce the erodible material that contributes to the maintenance dredging. However, maintenance dredging requirements are projected to increase significantly with the loss of these marshes. The rational for this increase is inadequate.

d. The projected increase in dredging for critical reaches 1 and 2 (see Table 4) is approximately three times as many cubic yards per mile as that of adjacent reaches. The increase in maintenance dredging quantities for non-critical areas is a substantial increase over present dredging requirements. The logic for determining the various rates of increase dredging quantities should be given.

2. Page 30, Alternative Plans. The alternative to completely close the MRGO waterway should be evaluated and a discussion of the evaluation should be included in the report. The closure should be located in the vicinity of mile 23 and could be constructed of dredged material from the existing waterway. This alternative will control all future channel maintenance problems by controlling bank erosion, preventing the associated biological resources problems, preventing saltwater intrusion, and lessening the recreational losses. In addition to solving the aforementioned problems, it will also reduce the possibility of catastrophic damage to urban areas by a hurricane surge coming up this waterway and also greatly reduce the need to operate (and could possibly eliminate) the control structures at Bayous Dupre and Bienvenue. Furthermore, the salinity level in Lake Pontchartrain will be reduced which, according to some parties, will be a great benefit. Plus, by making this closure the problems/concerns addressed by April 1984 Feasibility Study entitled, Mississippi and Louisiana Estuarine Areas, will be substantially reduced.

3. Page 30, Alternative Plans. Recommend the economic justification of continued maintenance of the existing project be demonstrated.

4.  Page 35 (Table 3) and Plates 8-11.  The District should furnish the rationale used in the development of the four design options.  Additional discussion is required on the following:

a.  The design parameters for the four erosion abatement structures (briefly described in Table 3) should be presented.  As shown on Plates 8 through 11, these four alternatives differ greatly in their structural configuration.  For example, three have riverside berms, whereas one does not, the ones with berms have berm lengths of 6, 9 or 10 feet.  The crest elevations are 2.5, 3.0 or 5.0 feet NGVD, and the riverside slope varies 1 on 2 to 1 on 3.  Therefore, these structures cannot be expected to produce similar results (bank scour prevention) if the same design parameters are applied uniformly.

b.  In the last sentence of the second paragraph on page 36, a statement is made that ". . . bank nourishment would be accomplished as opportunities to do so occur."  Plates 8 through 11 show that bank nourishment from MRGO dredged material will have a minimum length of 100 feet.  If dredging is not required in a certain reach of the waterway, it will be impossible to provide the "minimum length" unless it is specifically dredged for bank nourishment.  These conflicting points should be explained.

c.  The foreshore dike along critical reaches 1 and 2 could be subjected to wave erosion from the lakeside.  This erosion threat and structural design to counter the threat should be addressed.

d.  In Table 6, designs 3 and 4 are shown as producing identical benefits.  These two designs represent riprap structures whose crest elevations are 3.0 and 5.0 feet NGVD.  The lower crest structure (design 3) will permit more ship wave overtopping, thus it should produce less benefits, when compared to design 4 for maintenance dredging and marsh loss reduction.  This needs to be explained.

5.  Page 35, Table 3 and Page 47, Table 11.  The presentation of construction costs is unacceptable.  A cost estimate is not presented to reflect the project first costs.  Table 3 should be accompanied by unit prices and quantities used to develop the costs presented.  Table 11 should be accompanied by the breakdown of components which make up the first costs shown.

6.  Page 36, First Paragraph.  In the last sentence, it is stated that the increased cost of using this material to provide bank nourishment is accounted for as a reduction in the savings in future maintenance dredging.  The preceding statements indicate that bank nourishment will be a by-product of the maintenance dredging operation and, therefore, not part of the cost of the structure.  This discrepancy should be resolved.

7.  Page 40.  The non-structural alternative of imposition of speed limitation may be implemented by the Coast Guard based on the petition filed in October 1987 (Appendix B).  Should GDM Supplement studies be initiated, the status of the petition will impact future alternatives.

8. <u>Page 42, Speed Limitation Alternative.</u>

a. The speed limitation benefits should include (if not included in the estimate) cultural resource preservation dollars. This would be similar to the structural work bank protection benefits.

b. By reducing the vessel speed from 14 to 10 mph, the waves are reduced, thus a smaller structure should meet the design criteria. This design criteria should be presented and also the smaller structural alternative analyzed.

c. An explanation is needed of the methodology used to calculate the maintenance dredging requirements (presented on Plate 15) for the speed limitation alternative.

9. <u>Page 44, Table 7.</u> The average annual maintenance dredging costs for the without project condition should be $2,591,000, not $2,724,000 as presented in the report on Table 7. This changes the savings in average annual maintenance dredging costs for each of the 4 scenarios presented on Table 7. The total average annual benefits for scenario 1 on Table 12 becomes $2,095,000, not $2,228,000, with a benefit-cost ratio of 1.04 to 1 for design 3. Design 4 drops below unity.

10. <u>Page 45, Table 8.</u> There is no explanation for the derivation of the marsh values of $3,500 per acre. Derivation of marsh values require documentation and substantiation.

11. <u>Pages 47 and 48, Table 11.</u> Present values cannot be verified from the data as it is presented in the table.

12. <u>Page 55.</u> A discussion of the model study and what is to be gained from this task should be provided this office. A statement is made on page 15 that little sediment enters MRGO from sources other than bank erosion. Presently, little sediment movement in the relatively shallow confined bay of Lake Borgne should be occurring. Therefore, on the surface, it is not clear as to the need of this study and supporting documentation should be provided.

13. <u>Page 55.</u> Since it has been concluded that water quality will not be significantly affected by bank stabilization measures, why are extensive analyses of historical water quality data and studies of water quality impacts caused by marsh loss and bank erosion required? It appears that water quality studies should be limited to those required for complying with Section 404(b).

14. <u>Page 61, Table 13.</u> Do costs for the EIS line item include funds for preparation of the Section 404(b) evaluation, endangered species assessments, CZM consistency determination, and other environmental analyses?

15. <u>Appendix C.</u> The acreages for Options 1 and 2, Appendix C, do not coincide with area definitions. The limits are probably only to ordinary high water or tide lines, not 2,000 feet.

3

16. <u>Plate 10</u>. A stage duration curve for the gage at Intracoastal Waterway near Paris Road Bridge was developed for the 1963-1987 period. This data indicates that the still water elevations of 2.0 and 3.0 feet NGVD will be equalled or exceeded 33.4 and 7.6 percent of the time, respectively. With a ship produced wave of 4.0 feet (identical to that recommended in the Mississippi River Baton Rouge to Gulf GDM Supplement 2), the stone dike crest elevation of 3.0 feet NGVD will be greatly exceeded with the passage of every vessel. The piles (on 5.0 foot centers) placed in the dike will not reduce the wave overtopping. For the piles to be effective in reducing overtopping the ratio of closed area (diameter of pile) to total available for overtopping should be approximately 9 to 10. In other words, approximately 90 percent of the available overtopping area must be closed for wave reduction to be realized. Therefore, this plan, as presented, will not produce the desired results and should not have been recommended.

17. <u>Plate 11</u>. The foreshore dikes presented in Supplement No. 3 to the GDM entitled Mississippi River Baton Rouge to the Gulf of Mexico, Louisiana (southwest pass and bar channel) will serve the same purpose as the subject line of protection (Design No. 4). It is noted that the forwarded speed of vessels using these waterways are essentially identical (15 knots versus 14 knots); thus, the resulting bank erosion caused by the ship waves should be similar. Furthermore, it is noted that the crown elevation of the GDM foreshore dikes is 8.0 feet NGVD, whereas, the subject report recommends 5.0 feet NGVD. Clarification is needed as to why a smaller structure will function on this waterway, whereas, a larger structure is required on another waterway (especially since the design conditions are similar).

18. Should the GDM Supplement studies be initiated, the assumptions, data, analysis, and recommendations must be consistent with the ongoing MRGO-IHNC Shiplock study.

# DISPOSITION FORM

For use of this form, see AR 340-15; the proponent agency is TAGO.

| REFERENCE OR OFFICE SYMBOL | SUBJECT |
|---|---|
| CELMN-ED-PN | Mississippi River - Gulf Outlet, St. Bernard Parish, Louisiana (Bank Erosion) |

| TO | FROM | DATE | CMT 1 |
|---|---|---|---|
| C/Des Svcs Br | C/Proj Mgmt Br | 2 Jun 88 | |
| | | Mr. Naomi/jmb/2377 | |

1.  Reference CELMN-PD-FC DF dated 20 May 88 (Encl 1).

2.  It has been decided that the enclosed LMVD comments will be addressed in the proposed GDM supplement and no endorsement will be prepared by NOD.

3.  Please initiate work on the GDM supplement.  In-house charges may be made to account number BBH83304J10BE00.

4.  The enclosed cost estimate for the GDM supplement was included in the reconnaissance report.  Please review the estimate and provide a schedule of expenditures by fiscal year by 30 Jun 88.

2 Encls

Calvin W. Shelton
CALVIN W. SHELTON
Chief, Projects Management Branch

**DA** FORM AUG 80 **2496**                    PREVIOUS EDITIONS WILL BE USED                    GPO : 1987 O 191-043

# DISPOSITION FORM

| REFERENCE OR OFFICE SYMBOL | SUBJECT | Mississippi River–Gulf Outlet, St.Bernard Parish, Louisiana (Bank Erosion) |
|---|---|---|
| CELMN-PD-FC (10-1-7a) | | |

**TO:** C/Engr Div          **FROM:** C/Ping Div          20 May 88          **CMT 1**
Warren/2543

1. LMVD comments on the reconnaissance report for the subject study are enclosed for your consideration and reponse.

2. LMVD Planning Division has indicated that they do not require a formal response since most of the enclosed comments are related to engineering and design. Consequently, I request that you prepare and transmit the formal response to these comments directly to LMVD Engineering Division. Planning Div will assist in preparing responses to comments as required.

Encl

CLETIS R. WAGAHOFF
Chief, Planning Division

*We will address these comments in preparing the GDM.*

*Encl 1*

MISSISSIPPI RIVER-GULF OUTLET,

ST. BERNARD PARISH, LOUISIANA

RECONNAISSANCE REPORT

ON

CHANNEL BANK EROSION

This report presents the findings of a reconnaissance study of bank
erosion and erosion-related problems in the vicinity of the Mississippi
River-Gulf Outlet channel.   The reconnaissance study involved using
available data and field reconnaissance to establish existing conditions
in the study area.   Study efforts were directed to determining the
magnitude and extent of bank erosion and erosion-related problems, and to
developing alternative solutions.    Economically justifiable and
environmentally acceptable plans have been identified that warrant
proceeding to more detailed studies.

**STUDY AUTHORITY**

The study was authorized by a resolution adopted 23 September 1982 by the Committee on Public Works and Transportation of the United States House of Representatives at the request of Representative Robert L. Livingston, Jr., Louisiana 1st Congressional District. The resolution is as follows:

> "Resolved by the Committee on Public Works and Transportation of the House of Representatives, United States, that the Board of Engineers for Rivers and Harbors is hereby requested to review the report of the Chief of Engineers on the Mississippi River Gulf Outlet, Louisiana, published as House Document No. 245, 82nd Congress, 1st Session, and other pertinent reports, with a view to determining whether, in light of extensive erosion which has been occurring in St. Bernard Parish along the unleveed banks of the Gulf Outlet Channel, any modifications to the recommendations contained therein are advisable at this time with reference to the feasibility of bank protection measures."

**STUDY PURPOSE AND SCOPE**

This report contains the results of reconnaissance phase studies. The purpose of the reconnaissance study is to accomplish the following objectives:

 - define the extent of erosion and erosion-related problems occurring in the study area,

 - identify opportunities to implement potential solutions to the defined problems,

 - appraise the Federal interest in potential solutions to defined problems by evaluating the costs, benefits, and environmental impacts of the potential solutions,

2

- determine, based on the appraisal of Federal interest, whether planning should proceed beyond the reconnaissance phase into more detailed feasibility phase investigations,

- estimate the time and cost required to complete feasibility phase studies, if Federal interest is indicated, and

- assess the level of interest and support of non-Federal interests in the identified potential solutions to defined problems.

Study efforts in the reconnaissance phase involve the use of available information and data, ground reconnaissance of the study area, field surveys, and office studies.    Existing conditions and projected conditions with and without Federal improvements are assessed.  Problems, needs, and opportunities are identified.  The feasibility and performance of potential improvements are determined.   Social, cultural, economic, and environmental impacts are evaluated.

The affected study area is located in southeast Louisiana, and encompasses Orleans (City of New Orleans), St. Bernard, Jefferson, and Plaquemines Parishes.  The study specifically addresses a segment of the MR-GO navigation channel located in Orleans and St. Bernard Parishes.

The study area is shown on Plate 1.

PRIOR STUDIES, REPORTS, AND EXISTING WATER PROJECTS

Relevant studies and reports by the U.S. Army Corps of Engineers, and other Federal, state, and local agencies on water resources development in the study area are described in the following paragraphs.

[] The U.S. Army Corps of Engineers report , Mississippi River-Gulf Outlet, Louisiana, was published as House Document No. 245, 82nd Congress, 1st Session.   This report recommends an additional outlet channel from New Orleans to the Gulf of Mexico with dimensions of 36 feet

3

# APPENDIX  D

## STUDY MAILING LIST

**MRGO BANK EROSION**
**Mar 87**
**Congressional Delegation**

Hon. Lindy (Mrs. Hale) Boggs
2353 Rayburn House Ofc. Bldg.
Washington, D.C.  20515

MRGO 8

Honorable Jerry Huckaby
Washington Square Building
211 N. Third Street
Monroe, Louisiana  71201

MRGO 15

Honorable J. Bennett Johnston
United States Senate
Washington, D.C.  20510

MRGO 1

Hon. Lindy (Mrs. Hale) Boggs
1012 Hale Boggs Federal Bldg.
500 Camp Street
New Orleans, LA  70130

MRGO 9

Honorable Richard Baker
House of Representatives
Washington, D.C.  20515

MRGO 16

Honorable J. Bennett Johnston
1010 Hale Boggs Federal Bldg.
500 Camp Street
New Orleans, LA  70130

MRGO 3

Hon. William "Billy" Tauzin
House of Representatives
Washington, D.C.  20515

MRGO 10

Honorable Richard Baker
404 Europe Street
Baton Rouge, Louisiana  70802

MRGO 17

Honorable John B. Breaux
United States Senate
Washington, D.C.  20510

MRGO 4

Hon. William "Billy" Tauzin
2439 Manhattan Blvd.
Suite 304
Harvey, Louisiana  70058

MRGO 11

Honorable Jimmy A. Hayes
House of Representatives
Washington, D.C.  20515

MRGO 18

Honorable John B. Breaux
Hale Boggs Federal Bldg.
New Orleans, LA  70130

MRGO 5

Hon. Charles "Buddy" Roemer
House of Representatives
Washington, D.C.  20515

MRGO 12

Honorable Jimmy A. Hayes
P.O. Box 30476
Lafayette, Louisiana  70503

MRGO 19

Honorable Robert L. Livingston
House of Representatives
Washington, D.C.  20515

MRGO 6

Hon. Charles "Buddy" Roemer
228 Spring Street, Suite 100
Shreveport, Louisiana  71101

MRGO 13

Honorable Clyde Holloway
House of Representatives
Washington, D.C.  20515

MRGO 20

Honorable Robert L. Livingston
111 Veterans Blvd.
Suite 700
Metairie, Louisiana  70005

MRGO 7

Honorable Jerry Huckaby
House of Representatives
Washington, D.C.  20515

MRGO 14

Honorable Clyde Holloway
2310 MacArthur Drive
Alexandria, Louisiana  71301

MRGO 21

D-1

**FEDERAL AGENCIES**

Chairman
Committee on Public Works and
Transportation
House of Representatives
Washington, D.C.  20515

MRGO 28

U.S. Fish and Wildlife Service,
Field Supervisor, Lafayette
P.O. Box 4305
Lafayette, LA  70502

MRGO 35

HQDA (DAEN-CWP-C)
Washington, D.C.  20314

MRGO 22

Environmental Section
Department of Justice
2-3-4 Loyola Bldg., 7th Floor
New Orleans, LA  70112

MRGO 29

Mr. Dennis Jordan
U.S. Fish and Wildlife Service
300 Woodrow Wilson Avenue
Suite 3185
Jackson, MS  39213

MRGO 36

Board of Engineers for Rivers
and Harbors
Kingman Building
Fort Belvoir, VA  22060

MRGO 23

Asst. Secretary for Economic
Development
U.S. Department of Commerce
Washington, D.C.  20230

MRGO 30

David Cottingham
Actg Director, Ofc of Ecology
and Conservation (PP/EC)
U.S. Dept. of Comm., Rm 6814
14th and Constitution Avenue
Washington, D.C.  20230

Division Engineer
US Army Engineer Division
Lower Mississippi Valley
P.O. Box 80
Vicksburg, MS  39180

MRGO 24

State Director
Farmers Home Administration
USDA
3737 Government Street
Alexandria, LA  71301

MRGO 31

U.S. Dept. of Commerce
National Marine Fisheries Serv.
Southeast Region
9450 Kroger Boulevard
St. Petersburg, FL  33702

MRGO 38

Commanding Officer
New Orleans Army Terminal
4400 Dauphine Street
New Orleans, LA  70117

MRGO 25

Department of the Interior
Asst. Secretary for Program
Development and Budget
Ofc. of Env. Proj. Review
Rm 4241
18th and C Streets, NW
Washington, D.C.  20240

Administrator
U.S. Env. Protection Agency
Waterside Mall
4th & M Streets, SW
Washington, D.C.  20460

MRGO 39

Chairman
Environmental Committee
on Public Works
United States Senate
Washington, D.C.  20510

MRGO 26

District Chief, WRD
Geological Survey
U.S. Dept. of the Interior
P.O. Box 66492
Baton Rouge, LA  70896

MRGO 33

Reg. EIS Coordinator, Reg VI
U.S. Env. Protection Agency
1445 Ross Avenue
Dallas, TX  75270

MRGO 40

Water Resources Coordinator
Office of the Secretary/ORSPC
Room 5898C
Department of Commerce
Washington, D.C.  20230

MRGO 27

Ofc. of Management and Budget
Resources and Civil Works
Division (Natural Resources)
New Executive Office Building
Room 8026
Washington, D.C.  20503

MRGO 33

Ms. Peggy Keney
Nat'l Marine Fisheries Serv.
University Station
P.O. Box 25106
Baton Rouge, LA  70804

MRGO 41

**FEDERAL AGENCIES (continued)**

Stephen Margolis, Ph.D.
Chief, Env. Affairs Group
Dept. of Health & Human Svcs.
Centers for Disease Control
Atlanta, GA 30333

MRGO 48

Faye Talbot
Soil Conservation Service
555 Goodhope Street
Narco, LA 70079

MRGO 54.

Dr. Peter Smith
Dept. of Agriculture
Room 412A, Admin. Bldg.
14th & Independence Ave.
Washington, D.C. 20250

MRGO 42

Reg. Administrator, Reg. VI
DHUD
P.O. Box 2905
Fort Worth, TX 76113-2905

MRGO 49

Captain of the Port
U.S. Coast Guard
4640 Urquhart Street
New Orleans, LA 70117

MRGO 55

Reg. Forester, Forest Serv.
U.S. Dept. of Agriculture
Southern Region
1720 Peachtree Road, NW
Atlanta, GA 30367

MRGO 43

Executive Director
Advisory Council on Historic
  Preservation
1100 Pennsylvania Ave., N.W.
Suite 809
Washington, D.C. 20004

Director
Office of Env. Compliance
Department of Energy
Room 4G-085
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Division Administrator
Federal Highway Administration
P.O. Box 3929
Baton Rouge, LA 70821

MRGO 51

Mr. Laurence Zensinger
Federal Emergency Management
  Agency
Room 714, 500 C St., S.W.
Washington, D.C. 20472

MRGO 45

Horace J. Austin
State Conservationist
Soil Conservation Service
3737 Government Street
Alexandria, LA 71302

MRGO 52

Division Administrator
Federal Hwy. Administration
P.O. Box 3929
Baton Rouge, LA 70821

MRGO 46

Advisory Council on Historic
  Preservation
730 Simms Street, Room 450
Golden, CO 80401

MRGO 53

Mr. Charles Custard
Dept. of Health & Human Svcs.
Room 537F Humphrey Bldg.
200 Independence Ave., S.W.
Washington, D.C. 20201

MRGO 47

NOAA-NWS-LMRFC
1120 Old Spanish Trail
Slidell, LA 70458

MRGO 54

D-3