```
 1                   UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF LOUISIANA

 3
     ****************************************************************
 4
     IN RE:  KATRINA CANAL
 5   BREACHES CONSOLIDATED
     LITIGATION
 6
                              CIVIL ACTION 05-4182
 7                            SECTION "K"(2)
                              NEW ORLEANS, LOUISIANA
 8                            FRIDAY, JANUARY 30, 2009, 9:00 A.M.

 9   PERTAINS TO:  ROAD HOME
         LOUISIANA STATE,
10       C.A. #07-5528

11   ****************************************************************

12
                 TRANSCRIPT OF MOTIONS HEARING PROCEEDINGS
13        HEARD BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.
                       UNITED STATES JUDGE
14

15
     APPEARANCES:
16

17   ATTORNEYS FOR THE
     STATE OF LOUISIANA,
18   THROUGH THE HONORABLE
     JAMES D. "BUDDY" CALDWELL,
19   ATTORNEY GENERAL FOR
     THE STATE OF LOUISIANA,
20   INDIVIDUALLY AND ON
     BEHALF OF THE STATE OF
21   LOUISIANA, DIVISION OF
     ADMINISTRATION, AND
22   OFFICE OF COMMUNITY
     DEVELOPMENT:
23                            LOUISIANA DEPARTMENT OF JUSTICE
                              BY:  BRYAN K. McMINN, ESQUIRE
24                                 JAMES TREY PHILLIPS, ESQUIRE
                              1885 NORTH THIRD STREET
25                            POST OFFICE BOX 94005
                              BATON ROUGE, LOUISIANA 70804
```

```
 1   ATTORNEYS FOR ALLSTATE
     INSURANCE COMPANY,
 2   ALLSTATE INDEMNITY
     COMPANY, ENCOMPASS
 3   INSURANCE COMPANY,
     ENCOMPASS INSURANCE
 4   COMPANY OF AMERICA,
     AND ENCOMPASS PROPERTY
 5   AND CASUALTY COMPANY:        SONNENSCHEIN NATH & ROSENTHAL
                                  RICHARD L. FENTON, ESQUIRE
 6                                7800 SEARS TOWER
                                  CHICAGO, ILLINOIS 60606
 7

 8

 9   ATTORNEYS FOR STATE
     FARM FIRE AND
10   CASUALTY COMPANY AND
     STATE FARM GENERAL
11   INSURANCE COMPANY:          STONE PIGMAN WALTHER WITTMANN
                                 BY:  WAYNE J. LEE, ESQUIRE
12                                    ANDREA L. FANNIN, ESQUIRE
                                 546 CARONDELET STREET
13                               NEW ORLEANS, LOUISIANA  70130

14                                       AND

15                               PORTEOUS, HAINKEL & JOHNSON
                                 BY:  CHARLES CHASSAIGNAC IV, ESQUIRE
16                               343 THIRD STREET, SUITE 202
                                 BATON ROUGE, LOUISIANA 70801
17

18

19

20   ATTORNEYS FOR UNITED
     SERVICES AUTOMOBILE
21   ASSOCIATION, ALSO
     SEPARATELY NAMED
22   BY PLAINTIFFS AS
     USAA, USAA CASUALTY
23   INSURANCE COMPANY
     AND USAA GENERAL
24   INDEMNITY COMPANY
     AND THE HANOVER
25   INSURANCE COMPANY,
     THE HANOVER AMERICAN
```

```
 1   INSURANCE COMPANY,
     AND MASSACHUSETTS
 2   BAY INSURANCE COMPANY:        LUGENBUHL, WHEATON, PECK,
                                   RANKIN & HUBBARD
 3                                 BY:  SETH A. SCHMEECKLE, ESQUIRE
                                   601 POYDRAS STREET, SUITE 2775
 4                                 NEW ORLEANS, LOUISIANA 70130

 5

 6
     FIREMAN'S FUND INSURANCE
 7   COMPANY, AND THE AMERICAN
     INSURANCE COMPANY:            DUPLASS, ZWAIN, BOURGEOIS,
 8                                 PFISTER & WEINSTOCK
                                   BY:  KELLY CAMBRE BOGART, ESQUIRE
 9                                 THREE LAKEWAY CENTER, SUITE 2900
                                   3838 N. CAUSEWAY BOULEVARD
10                                 METAIRIE, LOUISIANA  70002

11

12   ATTORNEYS FOR SHELTER
     MUTUAL INSURANCE COMPANY
13   AND SHELTER GENERAL
     INSURANCE COMPANY:            SIMON, PERAGINE, SMITH & REDFEARN
14                                 BY:  THOMAS R. BLUM, ESQUIRE
                                   30TH FLOOR - ENERGY CENTRE
15                                 1100 POYDRAS STREET
                                   NEW ORLEANS, LOUISIANA 70163
16

17

18   ATTORNEYS FOR FIDELITY
     AND DEPOSIT COMPANY OF
19   MARYLAND, EMPIRE FIRE
     AND MARINE INSURANCE
20   COMPANY, EMPIRE
     INDEMNITY INSURANCE
21   COMPANY, CENTRE
     INSURANCE COMPANY,
22   ZC STERLING INSURANCE
     AGENCY, INC., AND ZC
23   STERLING CORPORATION:         HAILEY, MCNAMARA, HALL,
                                   LARMANN & PAPALE
24                                 BY:  SEAN P. MOUNT, ESQUIRE
                                   ONE GALLERIA BOULEVARD, SUITE 1400
25                                 P. O. BOX 8288
                                   METAIRIE, LOUISIANA 70011-8288
```

```
 1  ATTORNEYS FOR NATIONAL
    SECURITY FIRE AND
 2  CASUALTY COMPANY AND
    OMEGA ONE INSURANCE
 3  COMPANY:                    DEGAN, BLANCHARD & NASH
                                MARYANN G. HOSKINS, ESQUIRE
 4                              400 POYDRAS STREET, SUITE 2600
                                NEW ORLEANS, LA 70130
 5

 6

 7  ATTORNEYS FOR AMERICAN
    BANKERS INSURANCE
 8  COMPANY OF FLORIDA,
    AMERICAN SECURITY
 9  INSURANCE COMPANY,
    AMERICAN RELIABLE
10  INSURANCE COMPANY,
    STANDARD GUARANTY
11  INSURANCE COMPANY,
    VOYAGER INDEMNITY
12  INSURANCE COMPANY,
    AND VOYAGER PROPERTY
13  AND CASUALTY INSURANCE
    COMPANY:                    LAW OFFICES OF GORDON P. SEROU, JR.
14                              BY:  GORDON SEROU, JR., ESQUIRE
                                650 POYDRAS STREET, SUITE 1420
15                              NEW ORLEANS, LOUISIANA 70130

16

17  ALSO PRESENT:               DANIEL A. REES, ESQUIRE
                                KRISTEN SCHARP, ESQUIRE
18                              CALVIN FAYARD, ESQUIRE
                                MAURICE RUFFIN, ESQUIRE
19

20

21  OFFICIAL COURT REPORTER:    CATHY PEPPER, CCR, RPR, CRR
                                500 POYDRAS STREET, ROOM B406
22                              NEW ORLEANS, LOUISIANA  70130
                                (504) 589-7779
23
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
24  PRODUCED BY COMPUTER.

25
```

1                          **I N D E X**

2

3    <u>SPEAKERS</u>                                              <u>Page</u>

4

5    MR. McMINN...........................................      7

6    MR. LEE..............................................     20

7    MR. FENTON...........................................     31

8    MR. LEE..............................................     41

9    MR. McMINN...........................................     44

10   MR. FENTON...........................................     52

11   MS. BOGART...........................................     53

12   MR. McMINN...........................................     54

13   THE COURT............................................     54

14

15

16

17

18

19

20

21

22

23

24

25

1                    **P-R-O-C-E-E-D-I-N-G-S**

2                 FRIDAY, JANUARY 30, 2009

3              M O R N I N G   S E S S I O N

4                 (COURT CALLED TO ORDER)

5

6

7          THE DEPUTY CLERK:  All rise.

8          THE COURT:  Good morning.

9          THE DEPUTY CLERK:  This is Civil Action #05-4182,

10   Section "K", *In re Katrina* Canal Breaches Consolidated

11   Litigation, *Pertains to Road Home*, *Louisiana State,* Civil Action

12   #07-5528.  We're here on two motions, Document Number 16480, and

13   it's a Motion to Sever, and Document Number 16493, a Motion to

14   Dismiss.

15          THE COURT:  Okay.  Just to let you know, before you make

16   your appearances, I'm going to hear both of these motions today.

17   Depending on what I do on one may, of course, obviously relate as

18   to what I do with the other, but I'm going to hear them both.

19       Do you want to make your appearances.

20          MR. SCHMEECKLE:  Your Honor, Seth Schmeeckle on behalf

21   of the Defendants Liaison Counsel.  Appearing here with me is

22   Mr. Rick Fenton for Allstate, Mr. Wayne Lee for State Farm,

23   Mr. Chassaignac for State Farm, Ms. Kelly Bogart for Fireman's

24   Fund.

25       Your Honor, they've broken up the motions, and as you take

1   them up, we'll be happy to explain to you how the arguments will

2   be presented to you.

3           THE COURT:  Somebody might have to answer overarching

4   questions, but it's up to you.

5       Yes, sir.

6           MR. McMINN:  Good morning, Your Honor.  My name is

7   Bryan McMinn.  I represent the State of Louisiana.

8           THE COURT:  Why don't we take up the Motion to Sever and

9   Remand first.  Let me tell you one of the things I'm interested

10  in before you commence.  I'm interested in, if I did sever this

11  case, one, and remand, what would be here?  Who would be the

12  plaintiff?  Who would be the class representative, if any?  What

13  would the class be seeking?  How would the class be defined?

14  What would be the task of this court?  Where would the money go

15  in the event there was a recovery?  That's one of the questions I

16  have.

17      The other questions, just to give you a heads-up, is if I

18  did remand, I'm interested in the number of people who would be

19  involved.  It looks like, who knows, it would be those people who

20  have signed a Subrogation Agreement, and I assume that has not --

21  or has signed a Subrogation Agreement that has not been satisfied

22  with the Road Home, that you paid and they haven't gotten back,

23  or several groups, but it would be people who never brought a

24  suit, you would be bringing a suit for them, I'm wondering how in

25  the world, it would be at least 90 to a hundred thousand people,

1  how could that be done without a class action?

2      Those are the things I'm interested in, but, please,

3  commence with your remarks.

4      MR. McMINN:  Okay.  First of all, I would like to thank

5  Your Honor for letting me appear this morning.

6      First of all, before you is the State's Motion to Sever and

7  Remand.  Just a brief history.  Under the *In re Katrina*

8  litigation -- consolidated class action litigation, what I call

9  the *right side of the umbrella,* which is pretty much what we're

10  here about today, is we've got a private class action involving

11  approximately 40 defendants that have been sued, and we have the

12  Road Home class-action litigation currently before you where the

13  State has sued in excess of 200 independent insurance companies.

14  When the case was originally filed --

15      THE COURT:  There were 40 defendant cases.  Which one is

16  that we're talking about?

17      MR. McMINN:  I beg your pardon?

18      THE COURT:  The 40-defendant case, which one is that?

19      MR. McMINN:  That's -- I think it's the -- I forget the

20  name of the plaintiff.  Class counsel is, I think,

21  Frank Dudenhefer and in that group.

22      THE COURT:  You're talking about --

23      MR. McMINN:  *Chehardy*.

24      THE COURT:  You're talking about a class action that was

25  brought with the State involved?

1          MR. McMINN:  The State is not involved in that.  The way
2     I picture this is you've got -- you've got the umbrella Katrina
3     litigation --
4          THE COURT:  Now I'm understanding what you're saying.
5     We have, actually, a good many class actions involving insurance
6     and Katrina still pending; although, we're working on getting
7     those resolved.  Nonetheless, I understand what you're saying.
8     Then you have this class action.
9          MR. McMINN:  Yes, sir, Your Honor.  This class action is
10    the only class action that involves a sovereign, that is, the
11    State of Louisiana.
12          THE COURT:  I understand.  Certainly in this court.
13          MR. McMINN:  Okay.  So now we're here before you.  Back
14    in August of '07, when these cases were originally filed and the
15    Road Home Program was being developed, and it was, of course, a
16    massive -- the largest program of its kind in the history of the
17    United States -- so as it was developing, and that was to provide
18    grants to people to repair their homes, to get Louisiana back on
19    its feet after the hurricanes.
20         What happened is when we filed the case initially as a class
21    action, there were around 30, 40,000 grants that had been closed
22    at that time.  Now, fast forward to where we are here today in
23    January of '09, we have approximately -- don't hold me to these
24    numbers -- but we've got approximately 157,000 individuals that
25    have gone through a grant closing and signed the

1    Subrogation/Assignment Agreement assigning their rights to the

2    State of Louisiana to pursue claims that are listed, in large

3    part, in the complaint that's before you today, the breach of

4    contract, bad faith, and 22:1220 claims, 22:658 claims, breach of

5    fiduciary duty, so on and so forth.

6         What has happened is that over the last two years the case

7    has matured, it's grown, and it's changed, like all cases do, and

8    we've now got approximately 157,000 people who are closed, as I

9    said, and somewhere between 20 and 40,000 people that have

10   applied for grants but haven't formally closed.  So they are in

11   the process of trying to get their matters closed, and as I

12   understand it, the Road Home Program is working quickly to

13   facilitate that matter.

14        So now what we have is 157,000 people that have closed, and

15   they have assigned the Subrogation Agreement giving their rights

16   to the State of Louisiana as a result of the money we paid to

17   them that we believe were insured -- some of that loss was

18   insured, Coverage A claims, have now assigned their right to us.

19        So you've got really a small group of people that still

20   remain in what will be called the *Road Home State Class Action*,

21   20, 30,000 people.  If His Honor grants my motion today to sever

22   and remand 157,000 cases back to state court, it would take them

23   right out of the federal court and put them into state court.

24   We're not talking about a completely new complaint here.  It

25   would be an amended supplemental complaint that we will file and

1   hopefully be remanded to state court.

2       The way we plan on handling the 157,000 cases in state

3   court, I'm not prepared to give you the exact way we're going to

4   handle those.  They may be broken down into groups.  It may be a

5   bellwether-type situation where we break identifiable groups into

6   A, B, C, D, and E, 10,000, 18,000, 20,000 and pick a

7   representative from each one of those groups and try them on that

8   basis, or we could decide that we will start teeing up per

9   defendant each individual claim in state court and go forward

10  with each individual claim.

11      Pick the top six defendants, interview our clients, our

12  Road Home recipients, and tee those cases up and get discovery

13  going, get the experts hired, and get the experts that we will be

14  bringing on to talk about assignment, to talk about what the

15  language in the policy means with regard to being able to assign

16  a claim versus a policy and so on and so forth.

17          THE COURT:  We'll talk about that today, and the expert

18  is going to be you and the lawyers on the other side and me.  At

19  least for now.  There will be other experts, if I take it up.

20          MR. McMINN:  Yes, Your Honor.

21          THE COURT:  Go ahead.

22          MR. McMINN:  One of the things that would happen today

23  if you sever and remand, it's going to take a huge chunk of

24  cases, almost 160,000 of them, take them out of federal court and

25  put them in state court.

1       The reason I think that remand is appropriate, first, these

2   are individual claims now.  The 157,000 people that we're talking

3   about, they are no longer class-action claims.  As we sit here

4   today, they are still wrapped up as putative class members, but

5   when we file our amended new petition and go, they will be

6   individual cases in state court.  So they are not a class action.

7       THE COURT:  When you say *individual cases,* you've got

8   157,000, and all of them, I think, the defendants broke it out

9   into six categories -- there may be more -- but all of those,

10  then the State would have to, to the extent that out of the 157,

11  you may have received the full amount of the grant back from some

12  of those 157; isn't that correct?

13      MR. McMINN:  Some of them, but a small portion.

14      THE COURT:  A small portion.  So you would have to

15  prosecute a substantial portion of 157,000 claims?

16      MR. McMINN:  Yes, Your Honor.

17      THE COURT:  And to prosecute, and obviously if you get

18  back to a class action, you'll be here again under CAFA?

19      MR. McMINN:  I would --

20      THE COURT:  You would have to -- mechanically, I'm just

21  trying to think this through -- you could, as you say, do it all

22  individually, which certainly you could, but do you plan on

23  bringing one suit on behalf of the State, and then what happens

24  to the excess monies?  Let's assume you get a recovery, and it's

25  more than your grant.

1          MR. McMINN:  Yes, Your Honor.  As far as how the money

2     will be handled that is in excess of the -- let's say for reasons

3     for today, hypothetically that we issued Mr. Smith a grant for

4     the total amount, $150,000, what we will be seeking, as far as

5     the action, is $150,000 on Mr. Grant, plus attorney's costs and

6     fees.  We're not looking to seek more than $150,000 from

7     Mr. Smith.

8          If there are claims that are exemplary in nature and we get

9     in excess, what will be done with that money, that's really above

10    my pay grade, and --

11         THE COURT:  I guess what I'm wondering, wouldn't they be

12    parties in interest in that suit?  *They*, the property owner.

13         MR. McMINN:  The property owner will be the plaintiff in

14    that suit, along with the State of Louisiana.  Actually, the

15    State of Louisiana will be the party.  And Mr. Smith will be the

16    individual that will be testifying to all the facts and producing

17    his insurance policy and exactly what happened with regard to the

18    storm, did a tree blow over on his roof, and, you know, all of

19    the issues that, when we get into Coverage A of the policy, was

20    it a covered event, and was it wind related?  Did it blow off

21    shutters?  Did you get roof damage?  That is damages that were

22    covered that should have been paid by the insurance company, but

23    for whatever reason, adjusters didn't come out there, they didn't

24    respond to his phone calls, so on and so forth, and this

25    gentleman was left with the house in horrible disrepair that he

1   couldn't live in and so on and so forth.  This was an emergency

2   situation for the State of Louisiana, so we came in and evaluated

3   Mr. Smith's property damage and what his house was worth and paid

4   him a certain amount of money.

5       We're not looking to get rich off this, to do anything more

6   than what we deserve.  That's it.  If an excess judgment is

7   rendered in a part of the claim that would permit that, let's

8   say, under a potential bad-faith action, so on and so forth, what

9   happens with that excess money?  Again, that's above my pay

10  grade.  I don't know.  I don't know.

11      I'm sure we will figure out a way to put it somewhere to

12  help and facilitate the State with regard to continued rebuilding

13  as a result of the hurricanes.  It may go into a *cy pres* fund.

14  You could create that perhaps.  Again, those issues will have to

15  be dealt with sometime in future.  So if, you know, that's --

16  that will be a good thing to deal with, though.  If you get more

17  money, we'll somehow resolve that.

18          THE COURT:  No question.  I understand that.  So let's

19  assume I sever this, remand it.  I've got this class action here

20  with no class representatives.  I've still got the State in the

21  suit the State brought.  I've still got the same defendants.

22  What happens to this suit, assuming I sever and remand?

23          MR. McMINN:  If your question is what happens to the

24  remaining 20, 30,000 people that are wrapped up in the Road Home

25  class action, the State class action --

1    THE COURT:  My question is what happened to the suit in

2    every aspect and permutation; that is, would I still have a

3    Motion to Dismiss on behalf of the insurers based on the language

4    of the policy and the other arguments that they urged?

5    MR. McMINN:  My response -- and I hope this answers your

6    question -- on February 13th, before you was a motion to strike

7    the class allegations pertaining to the case we're talking about

8    right now, that is, the Road Home class action and the private

9    class action involving the suing of 40 insurance defendants.  So

10   I think that will be --

11   THE COURT:  That's not this Road Home.  That's, as you

12   said, the other side of the umbrella.  That's the private.

13   MR. McMINN:  Absolutely.  Yes.  Yes, sir.

14   THE COURT:  I'm aware of that.  Yes.

15   MR. McMINN:  But so February 13th, you're going to have

16   a Motion to Strike the class allegations.  That's going to be

17   briefed, that's going to be argued, and it will be before you,

18   and that will be, I think, the more appropriate time to decide

19   what exactly you're going to do with the remaining class action

20   that exists with the State of Louisiana, the Road Home State of

21   Louisiana class action, and what new representative we will pick

22   and how that will be framed in the complaint.

23   THE COURT:  I guess my question is, are you saying that

24   if I strike the class allegations, then clearly the State then

25   would be the only plaintiff, and I should remand the case?  Is

1    that what you're saying?

2              MR. McMINN:  Are you referring to the class action now?

3              THE COURT:  Yes.  The class action.  I'm referring to

4    this case.

5              MR. McMINN:  Yes.

6              THE COURT:  I have granted your Motion to Sever,

7    hypothetically, and Remand.  You're assuming that the defendants

8    are going to file a Motion to Strike your class allegations, and

9    assuming that I'm going to grant them, if that occurs, then

10   that's one scenario, the State is the only plaintiff at that

11   point because there is no class.  There is no named class

12   representative.

13             MR. McMINN:  Exactly.

14             THE COURT:  I guess, but as it stands now, my question

15   is, there is nothing involved in this case to strike the class

16   allegations.  There is a Motion to Dismiss based on the

17   nonassignability and other reasons set forth in the complaint.

18   Don't I still have to address that?  Since I do have

19   jurisdiction, they filed a Motion to Dismiss, would I still have

20   to address that Motion to Dismiss even if I severed and remand?

21             MR. McMINN:  First of all, I guess, there is a couple

22   questions there.  As far as what's going to happen on

23   February 13th with the pending Motion to Strike -- defendant's

24   pending Motion to Strike the class allegations, hypothetically if

25   you were to grant that, we will address that at that time, and

 1    exactly what -- what our position is and procedurally what we

 2    could do with those people.

 3        By that time, that is, between now and February 13th, we may

 4    have another six, eight, 10,000 people that closed that could be

 5    transferred into the State litigation and grouped in with the

 6    existing 157,000 people.  There is still Road Home grant

 7    recipients.  The facts are still the same with regard to their

 8    losses.

 9        So that's something that we could do, and to address it more

10    specifically than that, you know, I ask the Court maybe a couple

11    days to brief that, but --

12            THE COURT:  I don't need any briefing.  I've got a

13    Motion to Dismiss filed in this suit.  If I remand it, I still

14    have a suit.  There is still a Motion to Dismiss.  I'm not one to

15    just, oh, well, I'll wait another three or four months.  The

16    Motion to Dismiss is filed.

17        There has been no Motion to Dismiss the class allegations

18    here.  Perhaps for good reason.  Therefore, clearly, I have

19    jurisdiction.  So I might be deciding the very question you

20    prefer me not to decide regardless.

21        Now, what effect that would have on the State courts is

22    perhaps none.  I understand that.  If I keep it all and decide it

23    and decide it against you, then the whole issue goes back to the

24    Fifth Circuit to decide.  Either way.  I understand.

25            MR. McMINN:  All I'm asking here today right now with

1   the Motion to Sever and Remand is to take now those cases that

2   really were -- the 157,000 people that really were putative

3   members of a class, they've now essentially been converted to

4   individual claims that can be transferred to state court and

5   tried individually, and I would just refer the Court -- I know

6   you're aware of this discission -- *In re Katrina* Litigation v

7   AAA --

8           THE COURT:  I'm quite aware of the language.  I

9   understand it, looked at it, and, of course, that's what it is.

10  It's language from the Fifth Circuit.

11          MR. McMINN:  Your Honor, I think it's instructive in

12  that what I'm asking for is the same sort of instruction -- not

13  instructions, but what they suggest in that decision, which is

14  hoping that the district court will explore the possibility of

15  returning it to the State of Louisiana and retaining the class

16  suit.

17          That's all I'm asking for in the Motion to Sever and Remand.

18  You retain whatever is left of the Road Home litigation class

19  action, but of the cases where the grants have closed and been

20  settled and the State now owns the right to pursue that matter

21  individually on behalf of those -- well, the State owns those

22  rights to go against the insurance companies for that, that is

23  what is remanded to state court.

24          There is no federal issue involved in the 157,000 claims

25  that will be tried.  There is no federal question involved.  CAFA

1    is not involved.  It's not a class action, and it's a matter that

2    could probably be heard and addressed in state court.  There is

3    state law questions on the breach of contract.  Pretty simple,

4    straightforward state law questions.

5         THE COURT:  I can tell you this:  Let me make it clear

6    to you, even if I do that, I'm going to decide the Motion to

7    Dismiss as well because it's pending, and I don't know what

8    effect that would have on the remaining 20 to 40,000 people, if

9    any, except from a prescription standpoint.  I'm not sure, what

10   effect would that have?

11      Let's say that I transfer -- I sever those that have signed,

12   the number.  Let's assume that it's 157,000.  I keep the class.

13   I grant the Motion to Dismiss.  All of this is hypothetical.

14   What effect does that have on the 20 to 40,000 people?

15        MR. McMINN:  I think that that decision is dispositive

16   in nature, and it could end the lawsuit.  That's what it could

17   do.

18        THE COURT:  It would end the lawsuit here, but what

19   effect would it have on the rights of those persons, if any?

20   When I say *the rights of those persons*, the rights of the State.

21        MR. McMINN:  The rights of the State to those remaining

22   people, there would be -- there would be -- there would be time

23   on the people that -- between now and that -- that they would --

24   some of those individuals would be able to be grouped into the

25   State claim.  Notice would be granted to those individuals that

1    as far as the class action is concerned -- and again, it may be

2    completely dispositive to that case and it may not be a claim,

3    the Court being mindful that these people are still in the

4    process of trying to close.  The 20, 40,000 people we're talking

5    about, they are still in the process of attending closings to try

6    to get their Road Home money.

7         So hypothetically, most of that may go away by virtue of the

8    fact that their cases are closed, and there is a successful

9    recovery for them in the Road Home money.  If that's the case,

10   those individuals would have a claim, I believe, and can be

11   joined in with the 157,000.

12        THE COURT:  Okay.  Thank you, sir.  Anything else on the

13   Motion to Sever?

14        MR. McMINN:  No, sir, Your Honor.  You're well aware of

15   what's going on.  I just hope the judge recognizes that federal

16   jurisdiction is such that those cases really, I think they belong

17   in state court, and we're ready to pursue them in state court.

18        THE COURT:  Okay.

19        MR. McMINN:  Thank you, Your Honor.

20        THE COURT:  I understand your argument.

21        Okay.  Mr. Lee, you're going to tell me why I

22   shouldn't sever and remand these cases.

23        MR. LEE:  I hope to, Your Honor.  Thank you for the

24   opportunity to appear, Your Honor.

25        I think I heard Your Honor say that your intention is to

 1   hear the Motion to Dismiss, and I wanted to start with the first

 2   place that I think addressing the Motion to Dismiss is imperative

 3   before dealing with whether you sever, because if the case has no

 4   validity, if the State has no interest that is viable, there is

 5   nothing to sever and remand.

 6            THE COURT:  Let me just tell what my quandary is as a

 7   federal judge, and you might be able to help clear me up:  If I

 8   were to sever, I'm still going to rule on your Motion to Dismiss,

 9   but it would have a lot less meaning because 157,000 -- I'm using

10   those round numbers -- of the plaintiffs would be gone.  Let's

11   say I rule in your favor on the anti-assignability issue.  There

12   is a federal court ruling that applies to whoever is left, and

13   the case is dismissed.  The other 155 had been severed before I

14   made that ruling.  Let's assume I did that.

15        The quandary I'm in, I'll tell you, is because it is a state

16   law issue.  I think I'm obligated to decide it, but do I decide

17   it now and deprive these people of having it litigated in state

18   court or not?

19        I'm looking at the language of the Fifth Circuit.  I'm

20   looking at the 11th Amendment and trying to navigate through

21   that.  I know I have the discretion, absolutely, to refuse to

22   sever this, to take on the Motion to Dismiss, rule on it, and

23   then, if I rule in your favor, they will appeal and the

24   Fifth Circuit will have the whole shooting match, including

25   whether I've used my discretion or not, which I would have to

1    abuse it, in not severing and remanding.

2        So you might first tell me why I shouldn't sever and remand.

3    Tell me why that's not a good thing to do.  Based on the language

4    of the Fifth Circuit, based on the fact that these people have

5    executed the agreements, there is really no need, he says, for a

6    class; although, I'm wondering procedurally how they are going to

7    proceed in state court, but that's not my problem so you might

8    expound on that.

9        MR. LEE:  Let's put this back in perspective now.  This

10   case was filed as a class action.  The class is comprised of

11   all -- all insureds who are applicants at the time or who were to

12   become applicants in the Road Home, so the entire class is all

13   the insureds.  It includes, as it is defined, the people who have

14   signed up already and who have or will be signing up.

15       THE COURT:  That's why I'm asking the definition of the

16   so-called *class* if I did.

17       MR. LEE:  That's the definition of *class*.  Then there is

18   no motion -- this motion is not a motion to dismiss the class or

19   sever the class or redefine the class, so there is no way to send

20   these people back on the present motion.

21       THE COURT:  You're saying I can't send them half back.

22       MR. LEE:  You can't send half the class back.

23       THE COURT:  Or even if I were to send back the

24   Subrogation Agreement, the boot might still be here.  Remember we

25   talked about the boot before, any excess you're saying.  Is that

1   what you're saying?  If I were to send them back based on the

2   fact that they signed the agreement, there is still a class

3   against these insurer defendants for money for these people, and

4   *these people* meaning people who have already, as defined, already

5   signed the agreement.

6            MR. LEE:  The class is who have signed and will be

7   signing.

8            THE COURT:  Right.

9            MR. LEE:  There is no separate interest for the State

10  and the class.  We've demonstrated it in our briefs.  This is a

11  partial assignment.  They acknowledge it's a partial assignment.

12  Under both state and federal law, the State has no separate

13  interest that it can pursue without having these class members

14  join.  So they are all here, and they all have an interest.  They

15  are real parts in interest.  That's what gives rise to the

16  jurisdiction in the case, both the fact that is there an

17  assertion of a class, but also of the fact that these are real

18  parties in interest in the litigation, and they are diverse,

19  and this gives rise to CAFA jurisdiction.

20           The Fifth Circuit did say that we think you ought to take a

21  look at this, but they also recognized, they acknowledged, if

22  this had not been filed as a class, it may still be that the

23  class members would have to be joined because under Louisiana

24  law, they have been -- there is a partial assignment, and under

25  law Louisiana law, you would need to be joined in the claim.

1      Take it one step further, Judge --

2           THE COURT:  It changed.  If they were joined in the

3    claim but it was not denominated a class action, just simply they

4    were necessary parties but with CAFA jurisdiction.

5           MR. LEE:  *Caldwell v Allstate*.  That was the class

6    action.

7           THE COURT:  I've got it right here, *Caldwell* v Allstate.

8           MR. LEE:  It was filed as an antitrust claim by the

9    State against insurers.  It was not filed as a class action, but

10   the Court said, the insureds are really --

11          THE COURT:  They filed a *parens patriae* case.

12          MR. LEE:  It had aspects of *parens patriae* but also

13   asked for relief on behalf of the insured, as was done here, and

14   the Court said, "These are real parties in interest.  This gives

15   rise to a mass action which is removable, and there is CAFA

16   jurisdiction, and the case is here."

17       Then when it came up on the Motion to Dismiss, Judge Zainey

18   addressed the Motion to Dismiss, and the Motion to Sever, a

19   similar motion Motion to Sever and Remand as was presented here

20   was rendered moot.  In this court, Judge Fallon has cited cases

21   and other courts have recognized, if you want to talk about

22   severing, the first thing you have to do is look at what it is

23   you're supposed to be severing.  Is there something to sever?

24       If you've got issues as to what belongs to the insured and

25   what might belong to the class; for example, does the assignment

1   really affect bad-faith claims, include bad-faith claims?   That

2   should be resolved before there is a severance and a remand.

3        The plain fact is you can't separate the insureds' claim

4   from the State, and if they are joined and the Court clearly has

5   jurisdiction, you can't send the State back there -- the

6   suggestion that they've made that somehow the State can go out

7   there and prosecute the claims to the potential detriment of the

8   insureds is improper.

9        Under Federal Rules 17 and 19, all real parties in interest

10  must be joined in a lawsuit.   This Court recognized at the time

11  that this came up for hearing the first time that these are real

12  parties in interest.   The Fifth Circuit recognized the insureds

13  are real parties in interest.   The Fifth Circuit in *Caldwell*

14  recognized the insureds are real parties in interest.   They need

15  to be in the lawsuit.

16       Now, the real motion that's pending before the Court is to

17  separate the State and send the State back because they are

18  saying, we've got this sovereign interest.   Well, the fact is,

19  we've got individual insured's interest.

20            THE COURT:   They are indivisible, in essence.

21            MR. LEE:   That are indivisible and give rise to the CAFA

22  jurisdiction and are rightfully here in this Court.   So you can't

23  separate the two.

24       As I said, Your Honor, there is no Motion to Dismiss the

25  class pending.   Your Honor asked him before, "Are you dismissing

1    the class?"  They said, "We'll think about it."  You gave them

2    time to answer, and they haven't done it.  It still hasn't been

3    done.

4         The references to the hearing on the 13th of February is

5    about the *Chehardy* case, not this case.

6         So we have a class action, we have jurisdiction, and there

7    is absolutely no basis for having the State go back on its own,

8    and, indeed, if they went back, they would have to join everyone,

9    so we may very well have a recurrence of the *Caldwell* case where

10   the State is really promoting interest of the insureds, and we

11   need to have them back.  So we do need to address the Motion to

12   Sever now, and there is no basis for severing the claims in any

13   way, shape, or form.

14        Your Honor, you noted there is potential recoveries out

15   there that doesn't belong to the State.  Those need to be

16   addressed.  We again site the cases where people have gone out

17   and asserted a subrogation claim in some context and gotten an

18   adverse ruling, and then the insured comes along later and

19   attempts to assert a claim.  That was barred.

20        THE COURT:  You're saying the fallacy in the State's

21   argument is that I would really be sending the State back on

22   its -- I hate to use terms of art because we have another

23   motion -- I'll say assignments/subrogation/the right to recover

24   money they paid out against the insureds -- from the insureds and

25   ostensibly from any insurance -- I'm calling them *insureds* -- the

1    applicants had.  You're saying that there still would be a class

2    action here, and the class would still, in your mind, comprise

3    all of the persons because their claims are in excess of,

4    potentially, simply the State's right to recover the 150 or

5    whatever the grant was.

6              MR. LEE:  Your Honor, that's how they defined it.  The

7    class is not defined by how much money that might be recovered.

8    The class is defined as all insureds who had property damage

9    claims and who got a Road Home grant, and whether they signed up

10   before the suit was filed or whether they signed up later.

11   That's how the class is defined.

12        There is no motion to -- there is really no motion to sever

13   the class.  Their motion, as you read it, is the State has now

14   got to sign these people up, and now we're, the State, ready to

15   go back.

16        The complaint asks for declaratory relief, injunctive

17   relief, and damages.  The class -- the lawsuit didn't say --

18   wasn't filed with the relief being the right to sign the people

19   for the Road Home.  So now we're *finished that phase* is how they

20   refer to it.  That's not a phase of the lawsuit.  It has nothing

21   to do with the relief that the Court has been asked, other than

22   incidentally that that brings people in to -- ultimately it

23   brings them into the class.  It does not give rise to a basis for

24   sending any of those folks back, separating the class into

25   pieces.

1      Your Honor, quite frankly, I don't know how it can be done.

2   I don't think that there really is discretion when you've got a

3   situation where, under Rule 19, you've got relationships between

4   the State and the insureds that is such that you cannot have an

5   adjudication of the State's rights independently of the insureds

6   without that potentially affecting their rights or exposing the

7   defendants to multiple or inconsistent decisions.  So you can't

8   have the State go back and leave the insureds separate.

9      THE COURT:  I understand your argument.  Obviously, that

10  was one of my concerns when I posed my original question.  I have

11  a concern when a federal court, let's assume -- again, this is

12  all hypothetical.  We haven't heard the argument.  I've read the

13  briefs.  If I grant your motion, the motion of all of you, there

14  is no more Road Home suit, unless the Fifth Circuit reverses.

15  The Road Home suit is gone against the insurers, and all the

16  Road Home would have is individual suits against the individuals

17  to recover money.

18     So we're talking about a rather significant decision here

19  from a financial standpoint, and I've got to call the law as it

20  is.  The 11th Amendment and the admonition of the Fifth Circuit

21  does play on my mind, but your arguments are good in the sense

22  that, like I said, what is it I'm going to have here if I send

23  you back, and exactly what am I sending back?  And it gets very

24  foggy, and it may not be practical.  It may be so indivisible

25  that it doesn't make sense.

1          MR. LEE:  Quite frankly, Your Honor, if you remember at

2     the hearing, and I think we cited it at the hearing on the Motion

3     to Disqualify, the suggestion was made during that hearing by the

4     attorneys for the State at that point that, well, maybe we can

5     somehow separate this thing and, therefore, avoid the conflict.

6          Your Honor's comment was, "It seems to me that's trying to

7     divide a Siamese cat, and somebody is going to die or maybe even

8     both."  Your Honor, your observation is correct because you

9     really cannot separate the State's right because it doesn't have

10    it.  Under Louisiana law which gives rise to this, and as well as

11    under federal procedural law, you can't get an adjudication that

12    doesn't have an effect on the other, and there is no way to

13    separate them.

14         THE COURT:  I certainly understand your argument.

15         MR. LEE:  Your Honor, one last point.  We made the point

16    in our brief that even if there was a severance, that there still

17    would be jurisdiction over all aspects of the claim.  We cited

18    the *Burlington* case, Your Honor, *Bullard v Burlington* and the

19    *Pollay* (spelled phonetically) case that was cited by Your Honor,

20    you look at jurisdiction that attaches at the time of the

21    removal, subsequent actions that are given right -- that are made

22    during the course of the litigation doesn't deprive the Court of

23    jurisdiction over the entire dispute, even if there is aspects

24    that are not subject to -- otherwise subject to jurisdiction,

25    unless it was a discretionary assertion of jurisdiction in the

1    first place.  It states here under CAFA, "CAFA and jurisdiction

2    by virtue of diversity is not a discretionary jurisdiction.  It

3    all stays before the Court."

4         I understand the Fifth Circuit's recognition.  We're dealing

5    with sort of a different kind of lawsuit here.  You haven't seen

6    this much before, but applying the basic principles that the

7    Courts do encounter day in, day out lead to the inescapable

8    conclusion that we have got a lawsuit.  There is jurisdiction.

9    It should be addressed here.  There is no reason or basis or

10   ability to sever and send any or a portion of it back, and it

11   should be ruled upon at this time.

12        Thank you, Your Honor.

13            THE COURT:  Sir, do you want to do two or three minutes

14   in rebuttal?

15            MR. McMINN:  Yes, Your Honor.  If the Court will bear

16   with me, just very quickly, the State's right to -- and what

17   we're asking for, what we're asking this court to remand back

18   under sovereign agreement and in the 11th Amendment that the

19   State has the independent right to recover its money that it paid

20   under the Road Home Program on behalf of these people.  This is

21   an independent right owned by the State.  That's our position

22   pursuant to Subrogation Agreement that we have a right to have

23   heard in state court and have the jury hear it.

24            Thank you.

25            THE COURT:  Thank you, sir.

1              Let's hear the motion.  Are you dividing this one

2    up, the Motion to Dismiss?

3              MR. SCHMEECKLE:  Your Honor, Seth Schmeeckle again.

4    Mr. Fenton is going to handle the bulk of the motion; although,

5    Mr. Lee is going to handle the part related to prescription.

6              THE COURT:  All right.

7              MR. FENTON:  Good morning, Your Honor.

8              THE COURT:  The first question I have for you:  Do you

9    think your first argument is your best argument you made?  The

10   partial assignment argument, do you think that's your strongest

11   argument?

12             MR. FENTON:  I think the strongest argument on the

13   assignment, Your Honor, is the various policies prohibit --

14             THE COURT:  Why didn't you put that first?  I just was

15   curious.

16             MR. FENTON:  I'm sorry.

17             THE COURT:  That wasn't your first argument.  The first

18   argument in your brief was partial assignment, which is much

19   murkier under 2643, it seems to me, than the 2653 argument.

20             MR. FENTON:  I think the partial assignment argument may

21   get a little murky all the way.  I do think that --

22             THE COURT:  So you agree with me that it's not your

23   strongest argument.  I'm not saying it's weak, but do you agree

24   with me that that's your strongest argument?

25             MR. FENTON:  What I would say, Your Honor --

1          THE COURT:  If not, your other one's murky too.

2          MR. FENTON:  Well, in my view, Your Honor, the strongest

3    argument is that all of these policies prohibit a transfer or

4    assignment --

5          THE COURT:  That should have been your first argument,

6    in my opinion.  My humble opinion.  I only do this to badger you

7    a little bit to say:  Please start out, all of you, your

8    strongest arguments.

9          MR. FENTON:  For what it's worth, Judge, that's where I

10   was going to start today.

11         THE COURT:  That's where I wanted you to start because

12   we've got the following situation:  You've got the Code article

13   2653.  You've got all of the policies, and we've checked, and it

14   appears that all of them have an anti-assignment clause in one

15   form or another.  You've got the argument by the State that,

16   well, you can't assign a policy, but you can assign a claim.

17         You anticipated an argument in your brief that the State

18   really didn't make; that is, post-loss assignment, and I didn't

19   see it really argued robustly in the State's brief.  I know there

20   are a lot of other aspects to this, but if you went on this, you

21   win.  You seem to have a pretty good argument, I'm letting the

22   State know now, but you can embellish it, and then the State can

23   come in and try to convince me.

24         MR. FENTON:  I think it's covered pretty well in the

25   briefs, Your Honor.  I think that the real point is all of these

1   policies, as Your Honor said, in one way or another have an

2   anti-assignment provision.  The answer that, well, maybe the

3   whole contract can be assigned, but you can now assign out bits

4   and pieces is not a very satisfying argument.  There is a

5   prescription in this contract from the assignment.

6        Now, the State has tried to get around that by asserting go,

7   well, this isn't just an assignment.  This is a subrogation.

8             THE COURT:  We'll talk about subrogation.  Of course,

9   1827 specifies exclusively the rights of subrogation.

10            MR. FENTON:  For conventional subrogation, and then

11  there is also subrogation --

12            THE COURT:  Well, no, conventional subrogation I'm

13  regarding as -- the code article is clear that a conventional

14  subrogation is tantamount to an assignment, so it has to be a

15  legal subrogation for them to win, it seems to me.

16       I'm looking at how this might be legal subrogation.  1827,

17  as I recall, is the legal subrogation code article, or

18  thereabouts.  It has four categories and then otherwise provided

19  by law.

20            MR. FENTON:  I believe it's 1829, Your Honor, and the

21  only one that could conceivably apply is the as otherwise

22  provided by law, and perhaps Your Honor's research is more

23  thorough than mine, but I haven't seen any otherwise provided by

24  law.  I haven't seen in certainly the duplication of benefits

25  statutes, 42 U.S.C., any basis on which the State could claim a

1   right of subrogation.

2        The duplication of benefits statute simply creates a right

3   for the State to recoup funds from a grant recipient that are

4   received by a grant recipient to the extent that they duplicate

5   benefits.  It certainly doesn't create any subrogation rights in

6   the State.  So I think the State's attempt to avoid the

7   anti-assignment provisions through use of subrogation fails as

8   well.

9        Those are really threshold issues, as Your Honor noted.  I

10  do want to address, however, some of the other pleading

11  deficiencies in this complaint, particularly in light --

12            THE COURT:  Just for the record, why don't you think

13  this is not a legal subrogation?

14            MR. FENTON:  Well, I don't think it's a legal

15  subrogation, Your Honor, because the statute --

16            THE COURT:  Looking at 1829.

17            MR. FENTON:  I'm looking at 1829.  Let's take it step by

18  step.

19            THE COURT:  Let's do that.

20            MR. FENTON:  Subsection 1, "Subrogation takes place by

21  operation of law" -- I've reached the age where I have to take my

22  classes off to read, Your Honor.  I'm sorry -- "in favor of an

23  obligee who pays another obligee who's right is preferred to his

24  interest because of a privilege, pledge, mortgage, or security

25  interest."

1       Well, that's the classic example of a second mortgagee

2   paying off the first mortgage and becoming subrogated to the

3   first mortgagee's rights.  That's not the situation we're dealing

4   with here.

5       Number 2 is, "In favor of a purchaser of movable or

6   immovable property who uses the purchased money to pay creditors

7   holding any privilege, pledge, mortgage, or security interest on

8   the property."  That's not applicable.  There was no purchase of

9   property here, and there was no purchased money used to pay

10  creditors.  So that's inapplicable.

11      Number 3, "In favor of an obligor who pays his debt he owes

12  with others or for others and who has recourse against those

13  others as a result of the payment."  That's a joint obligation.

14  Okay.  I have a contract that Mr. Lee and myself, we're going to

15  pay Mr. Rees $50 next Friday.  We default -- sorry, Dan -- but I

16  feel bad, so I pay the $50.  I can recover some of that against

17  Mr. Lee.  That's not the situation we're dealing with here.

18      And Number 4, "In favor of a successor who pays estate debts

19  with his own funds."  Well, there is a lot of things in the

20  complaint, Judge.  I haven't seen any estates among them.

21      Then Number 5 is the catch-all, "In other cases provided by

22  law."  In all of the materials that the State has provided with

23  respect to the Road Home --

24          THE COURT:  You notice we made an inquiry, even though

25  it wasn't in the briefing, and hate to do that, but I wanted to

1  make sure we searched every potential.  That doesn't mean it's

2  going to necessarily come from Louisiana law, but potentially, if

3  there is anything in any document, there might be another law

4  that provided for legal subrogation.

5        MR. FENTON:  That's correct, Your Honor.  There is

6  absolutely no statutory authority, no case that's been brought to

7  my attention or the Court's attention that provides for a right

8  of legal subrogation in this circumstance.

9      The only thing we have is this document that was signed

10  between the Road Home Program and the grantee.  So if that

11  document is to create a subrogation, it would have to be a

12  conventional subrogation for the reasons Your Honor articulated.

13  Conventional subrogation doesn't apply here.

14        THE COURT:  When I cross-struck 1827 with 1829, the

15  Law Institute meddles with the Code -- I was on the Law Institute

16  at the time -- but 1827 says, "An obligee who receives

17  performance of a third person may subrogate that person to the

18  rights of the obligee even without the obligor's assent.

19  Subrogation is subject to the rules governing assignment of

20  rights."

21      The comment explains, "This article is new and changes the

22  law in support.  It eliminates the distinction between

23  conventional subrogation by the obligee and assignment of

24  rights."

25        I and the State, and we all are, there it is, and I'll be

1  interested to hear how they respond, but I do understand that the

2  conventional subrogation under Louisiana law is tantamount to an

3  assignment.  One would imply that then if there is a requirement

4  that there be permission from the assignment in the contract, it

5  would apply even if it is a conventional subrogation as well.

6         MR. FENTON:  That is correct, Your Honor.

7      One other thing I'll say about conventional subrogation is

8  that it also requires, in the *Cox* case, which the State said, it

9  requires that the payment be made for the precise purpose of

10  discharging the debt.  That wasn't the purpose of the payment

11  here.

12     The purpose of the payment of the Road Home grants was to

13  cover the gap between what insurance covered and what was

14  uninsured.  So that's another reason the conventional assignment

15  doesn't work, but as Your Honor said, the conventional

16  subrogation, -- but as Your Honor said, it is essentially

17  assignment; it is governed by the same rules.

18         THE COURT:  Now, there is not a lot of case law on this,

19  but the State's argued, Look, the insured may not be able to

20  assign the policy, but the insured can assign its right to

21  recover this post-assignment loss.  Why is the State incorrect on

22  that?

23         MR. FENTON:  Well, Your Honor, first of all, the statute

24  article 2653 which prohibits -- says a right cannot be assigned

25  when the contract from which it arises prohibits the assignment

 1  doesn't make a distinction between preloss and post-loss

 2  assignment, nor do the insurance policies at issue.

 3      There is no authority under Louisiana law for the

 4  proposition that, well, if you assign the loss -- if you assign

 5  something from the policy yesterday, you know, that's prohibited,

 6  but tomorrow it's okay.  It prohibits assignment.  It prohibits

 7  assignment, Your Honor, for a very good reason.

 8      Part of it, I think, Mr. Lee touched on when he was talking

 9  about the complexities of trying to litigate these split rights

10  which are really inextricably intertwined.  The insurance

11  carriers have an interest in not having to answer to the State or

12  some other assignee plus their own policyholder.

13      If you can divide it up two ways, you can divide it up five

14  ways.  That seriously increases the insurers' risk.  It seriously

15  increases the expense of claims and adjudication of claims, and

16  the insurers have a very valid interest in keeping their

17  relationship between themselves and their policyholder.  That's

18  the purpose of those clauses.  That's why you see them in each

19  and every insurance contract.

20      Your Honor, I also want to touch on the *Twombly* issues.

21  And, again, I think --

22          THE COURT:  Don't spend a heck of a lot of time on

23  those, because if I get to *Twombly*, I very possibly might allow

24  an amendment, just to let you know.

25      If I get to *Twombly*, it means you've got your 2653 argument,

```
 1   your 2643 argument.  In other words, I haven't dismissed --
 2   regarded the assignment as valid.  If I get to *Twombly*, I'm in
 3   the particularization, but you can go ahead and talk about it.
 4   I'm just letting you.
 5          MR. FENTON:  I won't dwell on it, Your Honor, but let me
 6   just make a few points.  When you look at the complaint as it is
 7   currently pleaded and as counsel suggested at the very beginning,
 8   there has been some water under the bridge, so to speak, since
 9   this complaint was filed.
10       At the time this complaint was filed, there had not been a
11   final resolution of the flood exclusion.  At the time that this
12   complaint was filed, there had not been a final resolution of the
13   effect of the Valued Policy Law.  Those things have come down
14   since, and the allegations of this complaint are extremely
15   general.  They are heavily dependent on allegations of the
16   insurers' failure to pay for flood losses, particularly in the
17   City of New Orleans as a result of a levee breach; heavily
18   dependent on the proposition that a total loss without law would
19   require payment under VPL.
20          THE COURT:  The *Sher* issue has been resolved.
21          MR. FENTON:  That's correct, Your Honor.
22          THE COURT:  *Twombly* or no *Twombly*, that's resolved.
23          MR. FENTON:  That's correct, Your Honor, but when you
24   take those out of the equation, there is very little in this
25   complaint that is left, and the allegations are very general
```

1  and --

2      THE COURT:  You mean if you take the VPL and the *Sher*

3  allegations out?

4      MR. FENTON:  I don't think it is overstatement to say

5  that this complaint, when you get down to it, if you take *Sher*

6  out, if you take VPL out, simply says, "The insureds have

7  contracts.  The insurers may owe money adjudicated."  They don't

8  say which insurers did.

9      The notion that each and every insurance company somehow,

10  some way underpaid each and every claim that was subject to a

11  Road Home grant is not terribly plausible, Your Honor.  There are

12  no factual allegations that support any kind of an inference that

13  that is, in fact, the case.

14      As a matter of fact, if you take a look at paragraph 13 of

15  the complaint, what it says is that if insurance companies didn't

16  pay and if you had a Road Home grantee, then in that

17  circumstance, there may be a claim.  So the complaint, as it is

18  currently pleaded, really doesn't allege anything factual from

19  which a court could determine that there is, in fact, a cause of

20  action on the part of the named plaintiff, let alone on the part

21  of the class.  So that's primarily the point that I wanted to

22  make on *Twombly*.

23      The other point I will make with respect to that is that as

24  to the breach of contract, breach of fiduciary duty counts, the

25  penalty counts, and so on, the State's papers concede that the

1   complaint is insufficient.  They said, well, we'll amend that at

2   some point.  Well, we're a year and a half into the litigation.

3        So unless Your Honor has any other questions on assignment

4   or subrogation or otherwise, I will take my seat.

5             THE COURT:  Not at this moment.

6             MR. FENTON:  And Mr. Lee will address the prescription

7   issues.

8             MR. LEE:  Your Honor, I'll do this, I think, very

9   briefly, unless Your Honor has particular questions on this

10  issue.  Obviously, we don't need to get to prescription if the

11  Court finds that the assignment has no effect.

12       What we're addressing in the Motion to Dismiss with regard

13  to prescription are those claims that were not assigned, no

14  assignment, no execution of assignment before --

15            THE COURT:  Before 2000.

16            MR. LEE:  -- before the deadlines established by Act 802

17  and Act 739 and for which there have been no lawsuit file.

18            THE COURT:  Do you think *Taylor v United Parcel Service*

19  sheds any light on this or has any obligation?  That's a

20  Fifth Circuit 2008 case discussing *American Pipe* class

21  certification tolling.  You may not be familiar with it.  If

22  you're not, don't worry about it.

23            MR. LEE:  I have not read that case, Your Honor, but I

24  will say this, we have cited several cases in our brief.

25            THE COURT:  It's a very recent case.  Very recent.

1          MR. LEE:  *Vaught v Showa Denko* and *In re Vioxx* which

2     have said that the determination of tolling and the effects of

3     tolling, you look back to state law.  In this situation, you have

4     to look back to Article 596 of the Code of Civil Procedure, which

5     says that liberative prescription upon claims arising out of the

6     transactions or occurrences described in petitions brought on

7     behalf of a class is suspended on the filing of petition as to

8     all members of the class as defined.

9          What the courts have said is liberative prescription is

10    what's provided by statute, established by law.  It has not

11    applied that suspension to limitations on actions that establish

12    by contract, and the case law has established that there is --

13    contract limitations are not subject to suspension or

14    interruption absent an agreement by the parties to extend the

15    time during which suit should be brought.  That has not happened

16    here.

17         Acts 802 and 739 did not purport to create an interruption

18    of contract limitations.  It simply extended the date for the

19    filing to a date certain and does not create any sort of

20    suspension, does not authorize the filing of the lawsuit or a

21    claim after those dates, September 1, 2007, and October 1, 2007,

22    for Katrina and Rita claims respectively.

23         And the *Katz* case that was decided by the Louisiana

24    Fourth Circuit in 2005 specifically addressed that suspension and

25    said that Act 596 does not interrupt the running of contract

1    limitations under the insurance policies.

2        We've also cited, Your Honor, the *Jones v UNUM* case, which

3    was an Arkansas cases that was decided in 2006, which obviously

4    was not a Louisiana case but addressed the question of similar

5    interruption of -- argument for interruption of contract

6    limitations by the filing of a class action, rejected that, and

7    expressly said that *American Pipe* does not provide an

8    interruption as to contract limitations.

9        So that's what we have here, Your Honor.  The plaintiffs

10   have -- I will acknowledge, Your Honor, there was a decision by

11   the Fourth Circuit in the *Pitts* case.  I think that's cited, and

12   we've noted that in our brief, which has taken a contrary opinion

13   from *Katz*; although, it didn't purport to reverse *Katz* and also

14   didn't engage in the analysis of *Katz*.

15       What it simply said was looking at the decision by the

16   Louisiana Supreme Court, when it was looking at whether or not

17   Acts 802 and 739 were constitutional, the Supreme Court said,

18   after conducting analysis, it said, We find that this is an

19   impairment of the contract.  We find that it does reach

20   constitutional limitations.  We find that there is a public need

21   for it, and it is very limited in scope because it has a time

22   specific."

23       The Court in *Pitts* said, Well, the court said you can

24   provide for an interruption; therefore, we have one here because

25   there was a class action filed, but what it fails to do -- what

1    the Fourth Circuit fails to do in *Pitts* was identify a statute

2    that provides for the interruption of suspension, because the

3    *Katz* case, which the Court did not reverse, have already said it

4    does not apply to contractual limitations, and all of the case

5    law that we cited in our brief indicates that there is no

6    suspension of contract limitations.

7         The only extension, the only thing that has been provided is

8    802 and 739, which gave a date certain which expired before the

9    claims that we're addressing here, Your Honor.  So we believe

10   that those claims have prescribed and would seek dismissal of

11   those claims.

12             THE COURT:  Thank you, sir.

13             You obviously know the contours of the argument

14   based on my comments and the comments of counsel, and as you

15   know, my concern is 2653, and I think when you get to partial

16   assignment, you can argue it, but I think you've made a decent

17   argument there.  Something that you may want to argue as an

18   alternative.

19        2653 seems straightforward, and the only argument you really

20   made in your brief is that, well, you can't assign the policy,

21   but you can assign rights, but you didn't really cite anything

22   overwhelming.  You may want to amplify that and talk about it and

23   anything else you want to talk about.

24             MR. McMINN:  Thank you, Your Honor.  I think I'll start

25   first with the limited Subrogation/Assignment Agreement which

1   we're executing in all of the Road Home grants, which is what the
2   2653 and the Article 1827 and Article 1829 deals with.

3       I agree fully that the law was changed such that
4   conventional subrogation is now relegated to the rules of
5   assignment.  It's pretty clear.  However, we have really, you
6   know, two creatures out here.  We've got subrogation and we've
7   got assignment.  They are not necessarily -- they aren't the same
8   thing.  We do have Article 1829, the subsection under paragraph D
9   or E, which is the language --

10          THE COURT:  -- the provision provided by law.

11          MR. McMINN:  Absolutely.  Simply because a case has not
12  been published in *Southern Second* yet doesn't mean that a court
13  can't find that this situation is the situation that should be
14  covered.

15      From a public policy standpoint and from an obligations
16  standpoint, I'll first quickly cover those because you've brought
17  up the 2653.  I think we do have an issue with the ambiguity and
18  with regard to the drafting of the policy.  We do have a
19  potential issue of ambiguity and vagueness in the policy as to
20  what the anti-assignment clause means.

21      Obviously, you can't get to -- it's difficult to understand
22  what the insured understood when he read that policy, what
23  anti-assignment means with regard to assigning rights.  Well,
24  they don't define what those rights are, and I think it was
25  briefed in my response that it's certainly, we are agreeing

1   100 percent that you cannot assign a policy.

2        THE COURT:  Right.

3        MR. McMINN:  That's gone.  That's gone.  That's over.

4        So can you assign a claim?  If you go back to -- and I'm

5   going to cover this briefly.  It's something for you to think

6   about.  With regard to the law of obligations, we've got an

7   obligation to perform, we've got an obligation to receive, and

8   we've got consideration, and we're going back to the original

9   principles of obligations.

10       In an assignment of a claim only, consideration is not

11  effective.  The risk has not been changed.  The occurrence has

12  already happened.  The insurance company is not out of pocket any

13  more money.  They've not been prejudiced in any way, shape, or

14  form by that situation.  The occurrence has happened.

15       The consideration should not have changed; i.e., if I'm a

16  triple A rating and have a great home that's got every modern

17  protection in it in the world, Allstate comes out and evaluates

18  me, and I've never made a claim, and they give me a policy for

19  $1,200 a year, okay, from property and casualty.  Three years

20  later I'm bored with the home, and I move.  I obviously can't

21  transfer that policy to the guy that just moved in simply because

22  I've got a great house.  They need to come out and evaluate that

23  individual and determine risk and then determine what the

24  consideration needs to be; that is, we need to up this guy's

25  premium an extra four or $600 a year, which is fair.  That's what

 1    should be done.  In an assignment of a claim situation, you don't

 2    have that.  You don't have any of those issues to look at.

 3            THE COURT:  So you're saying from a, I'm using the word

 4    *policy*, from a general policy standpoint -- and I'm not talking

 5    about the insurance policy -- that it's a lot different to assign

 6    a loss that's occurred to the entire policy rather than assign

 7    the entire policy and that the reasons for the nonassignability

 8    clause, you're arguing, don't seem to apply to that hypothetical

 9    situation, as best you can understand it?

10            MR. McMINN:  Yes, Your Honor.  At best, the language is

11    vague and ambiguous.  We all know, every lawyer sitting in here,

12    that's going to be construed against the insurance companies.

13            THE COURT:  I thought it was.  I'm sorry, that was an

14    aside.  It has nothing to do with this case.  Go ahead.

15            MR. McMINN:  Your Honor, they've had 3 years to file a

16    dec action before this Court and have you determine what that

17    language means, and they call their insurance experts and I call

18    my insurance experts and you decide it.  You hear testimony from

19    both, and you determine, in the proper vehicle, which would be a

20    dec action, whether or not you can do something like this,

21    because it's a coverage issue, in essence.

22        But, yeah, post occurrence assigning a claim, it does not

23    affect the obligation and the rules of obligation, particularly

24    with regard to consideration.  Again, an obligation to perform

25    and an obligation to receive, this is an obligation to receive.

1    It's not performance oriented.

2         So from a prejudice standpoint, from an economic standpoint,

3    there is no reason from -- using public policy, for this Court to

4    rule that you can't assign a claim, one.

5         Two, the language itself, in 5311, which is the generic

6    policy, I guess, that most of these insurance companies used in

7    these cases, at best is vague and ambiguous.  What is a poor

8    consumer to understand when he is reading that policy, what the

9    heck does that mean, assignment -- an anti-assignment clause?

10        I think historically, they have always been in there to

11   prevent the scenario I gave you where I have a home and then I

12   sell the home and assign it to somebody who is risky.  It's about

13   economics.  It's about money.  It's about equity.  It's about

14   fairness.  Certainly, it's unfair for me to do that, that is,

15   assign my policy to a stranger that they haven't evaluated.  This

16   does not involve any of that.

17        THE COURT:  That is an interesting argument.  There is,

18   unfortunately, a paucity of enlightenment on it from other

19   sources other than your very interesting argument, but I

20   certainly understand it, and it's something the Court will

21   consider.

22        MR. McMINN:  I'm not done yet.  I have another level on

23   that.

24        THE COURT:  Okay.  Go ahead.  Move on to the next level.

25        MR. McMINN:  That's level A, or A with regard assignment

1   and subrogation.

2       The next argument that I would like the Court to consider is

3   1829, paragraph D or E, which as otherwise provided by law.

4   Simply because there is not a case out there that the Court could

5   find, I could find, they could find that is right on point with

6   this doesn't mean that it doesn't exist.

7       This Court certainly has the discretion to interpret Code

8   Article 1829, subsection E, and from a policy standpoint look at

9   it and say, well, this again kind of runs back into A a little

10  bit and say, well, you know, this is a -- this is a situation

11  that I think the Legislature contemplated when they drafted Code

12  Article 1829(e).

13      Is it for situations that are not always -- you can't think

14  of every single possible situation out there that could be

15  covered in an Assignment/Subrogation.  It's impossible.

16  Therefore, the Legislature put in that catch-all phrase, and this

17  Court has the discretion and the authority and power and

18  jurisdiction to decide that issue.

19      Again, getting into consideration and obligation and the

20  type of obligation, this, I think, is a matter that the Court

21  should seriously consider as falling into a legal subrogation,

22  not conventional subrogation and, therefore, not relegated to the

23  rules of assignment.  We're not in assignment any more.  We're

24  into legal subrogation.

25          THE COURT:  There is no question we have a legal

1    subrogation.  I think you've bypassed 2653.  2643, to the extent

2    that it's problematic, I agree.

3         MR. McMINN:  I've covered that, I think, as much as I'm

4    going to cover the agreement right now.  There may be some

5    rebuttal, if the Court would allow me to get up again.  At this

6    point, I guess I'll jump to prescription.

7         THE COURT:  Okay.

8         MR. McMINN:  What I would bring to the Court's

9    attention, I've read *Taylor*.  *Taylor* -- tolling issues post

10   *American Pipe*, post *Cork*, post the hundreds of cases out that

11   that have tried to interpret, well, they have interpreted

12   *American Pipe*.  You know, there are different factual scenarios

13   in every tolling situation -- precert, decert, so on and so

14   forth.

15        In this particular situation, the people are covered.  They

16   did file in time, so their case is not prescribed.  So it's

17   whether or not it's tolled.

18        Until *Pitts*, January 7th of '09, and until *Taylor,* 12/30 of

19   '08, Louisiana didn't have a decision about tolling really.  Now

20   we do and it's new.

21        I direct the Court to the State decision, the Fourth Circuit

22   that just came out in *Pitts*.  If you will excuse me for a minute,

23   I brought a copy for you, and I brought copies for defense

24   counsel, if they would like to see it.  There is just one thing I

25   wanted to read in from.

1          THE COURT:  I think Mr. Lee did refer to the

2   Fifth Circuit case.

3          MR. LEE:  It's cited in our reply memo, Your Honor.

4          MR. McMINN:  Of interest here, Your Honor, is on page --

5   this is a printout from Westlaw, Page 4 of 5 of the decision.

6   They are talking about contractual obligations and whether they

7   are tolled in the context of Katrina and Rita.  They had to

8   specifically address that.

9          It said, "However, *State v All Property and Casualty*

10  *Insurance Carriers*," blah, blah, "held that Acts 739 and 802

11  constitutionally extended prescription for claims relating to

12  Hurricanes Katrina and Rita."  This is the important part.

13  "Therefore, the Louisiana Supreme Court found that contractual

14  prescriptive periods can be subject to interruption.  In the case

15  *sub judice,* however, the interruption of contractual prescription

16  period is irrelevant because their interests were covered."

17         This is the only decision that we have right now in

18  Louisiana that discusses *American Pipe* in the context of tolling.

19          THE COURT:  Vis-a-vis contract as well.

20          MR. McMINN:  Vis-a-vis contract.  This I know, Citizens

21  has already told me it's on its way to the Supreme Court.  Four,

22  six or eight months from now, we'll probably have an answer.

23          THE COURT:  Be enlightened.

24          MR. McMINN:  Yes, sir.  But right now, we do have a

25  prescriptive period in the context of -- and unfortunately,

1  *Taylor*, under the factual scenario of *Taylor* --

2         THE COURT:  No contract.

3         MR. McMINN:  So right now, we have good law that says

4  that it's prescribed.  We don't know --

5         THE COURT:  Not prescribed.

6         MR. McMINN:  That it's not prescribed.  That is

7  contractual obligations.  We don't know what it's going to be in

8  four to eight months from now, but that's my argument.  These

9  claims were prescribed pursuant to the *Pitts* decision.

10        With that, I rest, Your Honor.

11        THE COURT:  Thank you very much, sir.

12        Anything else from --

13        MR. FENTON:  Very briefly, Your Honor.  Your Honor, I

14  don't think I could disagree more with counsel with respect to

15  the proposition that as a matter of policy there are different

16  considerations preloss and post-loss.  The considerations may be

17  a little different, but there are any number of duties and

18  obligations that kick in at the time of loss that remain on both

19  sides of the insurance contract.  The insured has obligations to

20  provide certain proofs.  The insured has certain obligations to

21  mitigate.  The insured has certain obligations with respect to

22  cooperation.

23        Obviously, if there is a dispute with the insured, it is a

24  very different matter.  As I said earlier, to be litigating with

25  the State of Louisiana, have to third-party the insured in to get

1   discovery, if they are even available.  So it really does change

2   the equation, and certainly to the extent that the insurer has an

3   interest in keeping its relationship strictly with the

4   policyholder, that interest does not end and, in some cases,

5   really begins once a claim is made.

6       With respect to Section 1829, Counsel is urging the Court to

7   create, I guess, really ad hoc exception and create a right of

8   subrogation that otherwise does not exist.

9       THE COURT:  Sort of like our arguing equitable

10  subrogation which does not exist.  The Court is well aware it

11  exists in other places but not in our hallowed state.

12      I understand his argument, but to the extent it is

13  equitable, certainly I will not go there.

14      MR. FENTON:  I think Your Honor has my point.  Thank you

15  very much.

16      THE COURT:  This is really significant in the sense it

17  affects so much.  If you have anything else you want to say, I

18  don't want to shut anybody off.

19      MR. McMINN:  No, Your Honor.

20      THE COURT:  Hold on one second.

21      MS. BOGART:  Your Honor, I'm Kelly Bogart, and I

22  represent Fireman's Fund.  Just two seconds.  I want to point

23  out, I think, for all the reasons as set forth in briefs and as

24  argued by Mr. Fenton today, the post-loss issue is a distinction

25  that doesn't matter, but in footnote 2 of the reply, we call your

 1  attention to the fact that there are certain Fireman's Fund's
 2  policies that contain an anti-assignment clause which prohibits
 3  in addition policy claims.  I don't think it is a distinction
 4  that really matters, but to the extent any of your analysis
 5  hinges on that, I wanted to call it to your attention.
 6          THE COURT:  Thank you.
 7          MR. McMINN:  I would respond to that only briefly.  If
 8  there are a couple policies out there that specifically spelled
 9  that out, we're not dealing with vagueness and ambiguity.
10          THE COURT:  I understand.
11          MR. McMINN:  Thank you, Your Honor.
12          THE COURT:  I understand.  Well, you both presented fine
13  arguments.  I will take them under submission, and hopefully with
14  some alacrity -- we have a lot on our plate right now -- but
15  we'll try to get this out.  It's a significant decision, and
16  however I rule, the Fifth Circuit needs to look at it.  That's
17  our job, to get it up and moving.  We'll try to do that.
18      Thank you.  We will adjourn for the day.  Have a good
19  weekend.
20          (WHEREUPON, at 10:54 a.m., the proceedings were
21  concluded.)
22                      *    *    *
23
24
25

```
 1                       REPORTER'S CERTIFICATE

 2

 3       I, Cathy Pepper, Certified Realtime Reporter, Registered

 4   Merit Reporter, Registered Professional Reporter, Certified Court

 5   Reporter, Official Court Reporter for the United States District

 6   Court, Eastern District of Louisiana, do hereby certify that the

 7   foregoing is a true and correct transcript, to the best of my

 8   ability and understanding, from the record of the proceedings in

 9   the above-entitled and numbered matter.

10

11

12                            S/CATHY PEPPER
                              _____

13                            Cathy Pepper, CRR, RMR, CCR

14                            Official Court Reporter

15                            United States District Court

16

17

18

19

20

21

22

23

24

25
```

## #

**#05-4182** [1] - 6:9
**#07-5528** [2] - 1:10, 6:12

## $

**$1,200** [1] - 46:19
**$150,000** [3] - 13:4, 13:5, 13:6
**$50** [2] - 35:15, 35:16
**$600** [1] - 46:25

## '

**'07** [1] - 9:14
**'08** [1] - 50:19
**'09** [2] - 9:23, 50:18

## 0

**05-4182** [1] - 1:6

## 1

**1** [3] - 34:20, 42:21
**10,000** [2] - 11:6, 17:4
**100** [1] - 46:1
**10:54** [1] - 54:20
**11** [1] - 1:8
**1100** [1] - 3:15
**11th** [3] - 21:20, 28:20, 30:18
**12/30** [1] - 50:18
**13** [1] - 40:14
**13th** [5] - 15:6, 15:15, 16:23, 17:3, 26:4
**1400** [1] - 3:24
**1420** [1] - 4:14
**150** [1] - 27:4
**155** [1] - 21:13
**157** [2] - 12:10, 12:12
**157,000** [14] - 9:24, 10:8, 10:14, 10:22, 11:2, 12:2, 12:8, 12:15, 17:6, 18:2, 18:24, 19:12, 20:11, 21:9
**160,000** [1] - 11:24
**16480** [1] - 6:12
**16493** [1] - 6:13
**17** [1] - 25:9
**18,000** [1] - 11:6
**1827** [5] - 33:9, 33:16, 36:14, 36:16, 45:2

**1829** [9] - 33:20, 34:16, 34:17, 36:14, 45:2, 45:8, 49:3, 49:8, 53:6
**1829(e)** [1] - 49:12
**1885** [1] - 1:24
**19** [2] - 25:9, 28:3

## 2

**2** [2] - 35:5, 53:25
**20** [7] - 5:6, 10:9, 10:21, 14:24, 19:8, 19:14, 20:4
**20,000** [1] - 11:6
**200** [1] - 8:13
**2000** [1] - 41:15
**2005** [1] - 42:24
**2006** [1] - 43:3
**2007** [2] - 42:21
**2008** [2] - 1:8, 41:20
**2009** [1] - 6:2
**202** [1] - 2:16
**22:1220** [1] - 10:4
**22:658** [1] - 10:4
**2600** [1] - 4:4
**2643** [3] - 31:19, 39:1, 50:1
**2653** [9] - 31:19, 32:13, 37:24, 38:25, 44:15, 44:19, 45:2, 45:17, 50:1
**2775** [1] - 3:3
**2900** [1] - 3:9

## 3

**3** [2] - 35:11, 47:15
**30** [2] - 6:2, 9:21
**30,000** [2] - 10:21, 14:24
**30TH** [1] - 3:14
**31** [1] - 5:7
**343** [1] - 2:16
**3838** [1] - 3:9

## 4

**4** [2] - 35:18, 51:5
**40** [3] - 8:11, 8:15, 15:9
**40,000** [5] - 9:21, 10:9, 19:8, 19:14, 20:4
**40-defendant** [1] - 8:18
**400** [1] - 4:4
**41** [1] - 5:8
**42** [1] - 33:25

**44** [1] - 5:9

## 5

**5** [2] - 35:21, 51:5
**500** [1] - 4:21
**504** [1] - 4:22
**52** [1] - 5:10
**53** [1] - 5:11
**5311** [1] - 48:5
**54** [2] - 5:12, 5:13
**589-7779** [1] - 4:22
**596** [2] - 42:4, 42:25

## 6

**601** [1] - 3:3
**60606** [1] - 2:6
**650** [1] - 4:14

## 7

**7** [1] - 5:5
**70002** [1] - 3:10
**70011-8288** [1] - 3:25
**70130** [5] - 2:13, 3:4, 4:4, 4:15, 4:22
**70163** [1] - 3:15
**70801** [1] - 2:16
**70804** [1] - 1:25
**739** [5] - 41:17, 42:17, 43:17, 44:8, 51:10
**7800** [1] - 2:6
**7th** [1] - 50:18

## 8

**802** [5] - 41:16, 42:17, 43:17, 44:8, 51:10
**8288** [1] - 3:25

## 9

**90** [1] - 7:25
**94005** [1] - 1:24
**9:00** [1] - 1:8

## A

**a.m** [1] - 54:20
**A.M** [1] - 1:8
**AAA** [1] - 18:7
**ability** [2] - 30:10, 55:8
**able** [4] - 11:15, 19:24, 21:7, 37:19

**above-entitled** [1] - 55:9
**absent** [1] - 42:14
**Absolutely** [2] - 15:13, 45:11
**absolutely** [3] - 21:21, 26:7, 36:6
**abuse** [1] - 22:1
**acknowledge** [2] - 23:11, 43:10
**acknowledged** [1] - 23:21
**Act** [3] - 41:16, 41:17, 42:25
**action** [38] - 8:1, 8:8, 8:10, 8:12, 8:24, 9:8, 9:9, 9:10, 9:21, 12:3, 12:6, 12:18, 13:5, 14:8, 14:19, 14:25, 15:8, 15:9, 15:19, 15:21, 16:2, 16:3, 18:19, 19:1, 20:1, 22:10, 24:3, 24:6, 24:9, 24:15, 26:6, 27:2, 40:20, 43:6, 43:25, 47:16, 47:20
**Action** [3] - 6:9, 6:11, 10:20
**ACTION** [1] - 1:6
**actions** [3] - 9:5, 29:21, 42:11
**Acts** [3] - 42:17, 43:17, 51:10
**ad** [1] - 53:7
**addition** [1] - 54:3
**address** [8] - 16:18, 16:20, 16:25, 17:9, 26:11, 34:10, 41:6, 51:8
**addressed** [6] - 19:2, 24:18, 26:16, 30:9, 42:24, 43:4
**addressing** [3] - 21:2, 41:12, 44:9
**adjourn** [1] - 54:18
**adjudicated** [1] - 40:7
**adjudication** [3] - 28:5, 29:11, 38:15
**adjusters** [1] - 13:23
**ADMINISTRATION** [1] - 1:21
**admonition** [1] - 28:20
**adverse** [1] - 26:18
**affect** [2] - 25:1, 47:23
**affecting** [1] - 28:6
**affects** [1] - 53:17
**age** [1] - 34:21
**AGENCY** [1] - 3:22
**agree** [3] - 31:22, 31:23, 45:3, 50:2

**agreeing** [1] - 45:25
**Agreement** [7] - 7:20, 7:21, 10:1, 10:15, 22:24, 30:22, 44:25
**agreement** [5] - 23:2, 23:5, 30:18, 42:14, 50:4
**agreements** [1] - 22:5
**ahead** [4] - 11:21, 39:3, 47:14, 48:24
**alacrity** [1] - 54:14
**allegations** [12] - 15:7, 15:16, 15:24, 16:8, 16:16, 16:24, 17:17, 39:14, 39:15, 39:25, 40:3, 40:12
**allege** [1] - 40:18
**allow** [2] - 38:23, 50:5
**ALLSTATE** [2] - 2:1, 2:2
**Allstate** [4] - 6:22, 24:5, 24:7, 46:17
**almost** [1] - 11:24
**alone** [1] - 40:20
**ALSO** [2] - 2:21, 4:17
**alternative** [1] - 44:18
**ambiguity** [3] - 45:17, 45:19, 54:9
**ambiguous** [2] - 47:11, 48:7
**amend** [1] - 41:1
**amended** [2] - 10:25, 12:5
**amendment** [1] - 38:24
**Amendment** [3] - 21:20, 28:20, 30:18
**AMERICA** [1] - 2:4
**American** [5] - 41:20, 43:7, 50:10, 50:12, 51:18
**AMERICAN** [5] - 2:25, 3:7, 4:7, 4:8, 4:9
**amount** [3] - 12:11, 13:4, 14:4
**amplify** [1] - 44:22
**analysis** [3] - 43:14, 43:18, 54:4
**AND** [19] - 1:20, 1:21, 2:4, 2:5, 2:9, 2:10, 2:14, 2:23, 2:24, 3:1, 3:7, 3:13, 3:18, 3:19, 3:22, 4:1, 4:2, 4:12, 4:13
**ANDREA** [1] - 2:12
**answer** [5] - 7:3, 26:2, 33:2, 38:11, 51:22
**answers** [1] - 15:5
**anti** [8] - 21:11, 32:14, 33:2, 34:7, 45:20,

45:23, 48:9, 54:2
**anti-assignability** [1] -
21:11
**anti-assignment** [7] -
32:14, 33:2, 34:7,
45:20, 45:23, 48:9,
54:2
**anticipated** [2] - 32:17
**antitrust** [1] - 24:8
**appeal** [1] - 21:23
**appear** [2] - 8:5, 20:24
**APPEARANCES** [1] -
1:15
**appearances** [2] -
6:16, 6:19
**Appearing** [1] - 6:21
**applicable** [1] - 35:8
**applicants** [3] - 22:11,
22:12, 27:1
**applied** [2] - 10:10,
42:11
**applies** [1] - 21:12
**apply** [5] - 33:21,
36:13, 37:5, 44:4,
47:8
**applying** [1] - 30:6
**appropriate** [2] - 12:1,
15:18
**argue** [2] - 44:16,
44:17
**argued** [4] - 15:17,
32:19, 37:19, 53:24
**arguing** [2] - 47:8,
53:9
**argument** [33] - 20:20,
26:21, 28:9, 28:12,
29:14, 31:9, 31:10,
31:11, 31:12, 31:17,
31:18, 31:19, 31:20,
31:23, 31:24, 32:3,
32:5, 32:15, 32:17,
32:21, 33:4, 38:25,
39:1, 43:5, 44:13,
44:17, 44:19, 48:17,
48:19, 49:2, 52:8,
53:12
**arguments** [5] - 7:1,
15:4, 28:21, 32:8,
54:13
**arises** [1] - 37:25
**arising** [1] - 42:5
**Arkansas** [1] - 43:3
**art** [1] - 26:22
**Article** [6] - 42:4, 45:2,
45:8, 49:8, 49:12
**article** [5] - 32:12,
33:13, 33:17, 36:21,
37:24
**articulated** [1] - 36:12
**AS** [1] - 2:22

**aside** [1] - 47:14
**aspect** [1] - 15:2
**aspects** [4] - 24:12,
29:17, 29:23, 32:20
**assent** [1] - 36:18
**assert** [1] - 26:19
**asserted** [1] - 26:17
**asserting** [1] - 33:6
**assertion** [2] - 23:17,
29:25
**assign** [17] - 11:15,
32:16, 33:3, 37:20,
38:4, 44:20, 44:21,
46:1, 46:4, 47:5,
47:6, 48:4, 48:12,
48:15
**assignability** [1] -
21:11
**assigned** [5] - 10:15,
10:18, 33:3, 37:24,
41:13
**assignee** [1] - 38:12
**assigning** [3] - 10:1,
45:23, 47:22
**assignment** [46] -
11:14, 23:11, 23:24,
24:25, 31:10, 31:13,
31:18, 31:20, 32:4,
32:14, 32:18, 33:2,
33:5, 33:7, 33:14,
34:7, 36:19, 36:23,
37:3, 37:4, 37:14,
37:17, 37:21, 37:25,
38:2, 38:6, 38:7,
39:2, 41:3, 41:11,
41:14, 44:16, 45:5,
45:7, 45:20, 45:23,
46:10, 47:1, 48:9,
48:25, 49:23, 54:2
**Assignment/**
**Subrogation** [1] -
49:15
**assignments/**
**subrogation/the** [1] -
26:23
**ASSOCIATION** [1] -
2:21
**assume** [6] - 7:20,
12:24, 14:19, 19:12,
21:14, 28:11
**assuming** [3] - 14:22,
16:7, 16:9
**attaches** [1] - 29:20
**attempt** [1] - 34:6
**attempts** [1] - 26:19
**attending** [1] - 20:5
**attention** [5] - 36:7,
50:9, 54:1, 54:5
**ATTORNEY** [1] - 1:19
**attorney's** [1] - 13:5

**ATTORNEYS** [8] -
1:17, 2:1, 2:9, 2:20,
3:12, 3:18, 4:1, 4:7
**attorneys** [1] - 29:4
**August** [1] - 9:14
**authority** [3] - 36:6,
38:3, 49:17
**authorize** [1] - 42:20
**AUTOMOBILE** [1] -
2:20
**available** [1] - 53:1
**avoid** [2] - 29:5, 34:6
**aware** [5] - 15:14,
18:6, 18:8, 20:14,
53:10

## B

**B406** [1] - 4:21
**bad** [5] - 10:4, 14:8,
25:1, 35:16
**bad-faith** [3] - 14:8,
25:1
**badger** [1] - 32:6
**BANKERS** [1] - 4:7
**barred** [1] - 26:19
**Based** [1] - 22:3
**based** [5] - 15:3,
16:16, 22:4, 23:1,
44:14
**basic** [1] - 30:6
**basis** [6] - 11:8, 26:7,
26:12, 27:23, 30:9,
33:25
**BATON** [2] - 1:25,
2:16
**BAY** [1] - 3:2
**bear** [1] - 30:15
**become** [1] - 22:12
**becoming** [1] - 35:2
**BEFORE** [1] - 1:13
**beg** [1] - 8:17
**beginning** [1] - 39:7
**begins** [1] - 53:5
**behalf** [7] - 6:20,
12:23, 15:3, 18:21,
24:13, 30:20, 42:7
**BEHALF** [1] - 1:20
**bellwether** [1] - 11:5
**bellwether-type** [1] -
11:5
**belong** [3] - 10:16,
24:25, 26:15
**belongs** [1] - 24:24
**benefits** [3] - 33:24,
34:2, 34:5
**best** [5] - 31:9, 47:9,
47:10, 48:7, 55:7
**between** [9] - 10:9,

17:3, 19:23, 28:3,
36:10, 36:22, 37:13,
38:1, 38:17
**bit** [2] - 32:7, 49:10
**bits** [1] - 33:3
**blah** [2] - 51:10
**BLANCHARD** [1] - 4:3
**blow** [2] - 13:18, 13:20
**BLUM** [1] - 3:14
**Bogart** [2] - 6:23,
53:21
**BOGART** [2] - 3:8,
53:21
**BOGART................**
**......................... [1] -**
5:11
**boot** [2] - 22:24, 22:25
**bored** [1] - 46:20
**BOULEVARD** [2] -
3:9, 3:24
**BOURGEOIS** [1] - 3:7
**BOX** [2] - 1:25, 3:25
**breach** [6] - 10:3,
10:4, 19:3, 39:17,
40:24
**BREACHES** [1] - 1:5
**Breaches** [1] - 6:10
**break** [1] - 11:5
**bridge** [1] - 39:8
**brief** [10] - 8:7, 17:11,
29:16, 31:18, 32:17,
32:19, 41:24, 43:12,
44:5, 44:20
**briefed** [2] - 15:17,
45:25
**briefing** [2] - 17:12,
35:25
**briefly** [4] - 41:9, 46:5,
52:13, 54:7
**briefs** [4] - 23:10,
28:13, 32:25, 53:23
**bring** [1] - 50:8
**bringing** [3] - 7:24,
11:14, 12:23
**brings** [2] - 27:22,
27:23
**broke** [1] - 12:8
**broken** [2] - 6:25, 11:4
**brought** [9] - 7:23,
8:25, 14:21, 36:6,
42:6, 42:15, 45:16,
50:23
**BRYAN** [1] - 1:23
**Bryan** [1] - 7:7
**bulk** [1] - 31:4
**Bullard** [1] - 29:18
**Burlington** [2] - 29:18
**BY** [11] - 1:23, 2:11,
2:15, 2:22, 3:3, 3:8,
3:14, 3:24, 4:14,

4:23, 4:24
**bypassed** [1] - 50:1

## C

**C.A** [1] - 1:10
**CAFA** [8] - 12:18,
18:25, 23:19, 24:4,
24:15, 25:21, 30:1
**Caldwell** [4] - 24:5,
24:7, 25:13, 26:9
**CALDWELL** [1] - 1:18
**CALLED** [1] - 6:4
**CALVIN** [1] - 4:18
**CAMBRE** [1] - 3:8
**Canal** [1] - 6:10
**CANAL** [1] - 1:4
**cannot** [4] - 28:4,
29:9, 37:24, 46:1
**CARONDELET** [1] -
2:12
**carriers** [1] - 38:11
**Carriers** [1] - 51:10
**case** [42] - 7:11, 8:14,
8:18, 9:20, 10:6,
15:7, 15:25, 16:4,
16:15, 20:2, 20:9,
21:3, 21:13, 22:10,
23:16, 24:11, 24:16,
26:5, 26:9, 29:18,
29:19, 36:6, 37:8,
37:18, 40:13, 41:20,
41:23, 41:25, 42:12,
42:23, 43:2, 43:4,
43:11, 44:3, 44:4,
45:11, 47:14, 49:4,
50:16, 51:2, 51:14
**cases** [22] - 8:15, 9:14,
10:7, 10:22, 11:2,
11:12, 11:24, 12:6,
12:7, 18:1, 18:19,
20:8, 20:16, 20:22,
24:20, 26:16, 35:21,
41:24, 43:3, 48:7,
50:10, 53:4
**casualty** [1] - 46:19
**CASUALTY** [5] - 2:5,
2:10, 2:22, 4:2, 4:13
**Casualty** [1] - 51:9
**cat** [1] - 29:7
**catch** [2] - 35:21,
49:16
**catch-all** [2] - 35:21,
49:16
**categories** [2] - 12:9,
33:18
**Cathy** [2] - 55:3, 55:13
**CATHY** [1] - 4:21
**CAUSEWAY** [1] - 3:9

**CCR** [2] - 4:21, 55:13
**CENTER** [1] - 3:9
**CENTRE** [2] - 3:14, 3:21
**certain** [7] - 14:4, 42:19, 44:8, 52:20, 52:21, 54:1
**certainly** [9] - 12:22, 29:14, 33:24, 34:5, 45:25, 48:20, 49:7, 53:2, 53:13
**Certainly** [2] - 9:12, 48:14
**CERTIFICATE** [1] - 55:1
**certification** [1] - 41:21
**Certified** [2] - 55:3, 55:4
**certify** [1] - 55:6
**change** [1] - 53:1
**changed** [5] - 10:7, 24:2, 45:3, 46:11, 46:15
**changes** [1] - 36:21
**CHARLES** [1] - 2:15
**Chassaignac** [1] - 6:23
**CHASSAIGNAC** [1] - 2:15
**checked** [1] - 32:13
**Chehardy** [2] - 8:23, 26:5
**CHICAGO** [1] - 2:6
**chunk** [1] - 11:23
**Circuit** [17] - 17:24, 18:10, 21:19, 21:24, 22:4, 23:20, 25:12, 25:13, 28:14, 28:20, 41:20, 42:24, 43:11, 44:1, 50:21, 51:2, 54:16
**Circuit's** [1] - 30:4
**circumstance** [2] - 36:8, 40:17
**cite** [1] - 44:21
**cited** [9] - 24:20, 29:2, 29:17, 29:19, 41:24, 43:2, 43:11, 44:5, 51:3
**Citizens** [1] - 51:20
**City** [1] - 39:17
**CIVIL** [1] - 1:6
**Civil** [3] - 6:9, 6:11, 42:4
**claim** [26] - 11:9, 11:10, 11:16, 14:7, 19:25, 20:2, 20:10, 23:25, 24:3, 24:8, 25:3, 26:17, 26:19,

29:17, 32:16, 33:25, 40:10, 40:17, 42:21, 46:4, 46:10, 46:18, 47:1, 47:22, 48:4, 53:5
**claims** [27] - 10:2, 10:4, 10:18, 12:2, 12:3, 12:15, 13:8, 18:4, 18:24, 25:1, 25:7, 26:12, 27:3, 27:9, 38:15, 41:13, 42:5, 42:22, 44:9, 44:10, 44:11, 51:11, 52:9, 54:3
**Class** [2] - 8:20, 10:20
**class** [81] - 7:12, 7:13, 8:1, 8:8, 8:10, 8:12, 8:24, 9:5, 9:8, 9:9, 9:10, 9:20, 12:3, 12:4, 12:6, 12:18, 14:19, 14:20, 14:25, 15:7, 15:8, 15:9, 15:16, 15:19, 15:21, 15:24, 16:2, 16:3, 16:8, 16:11, 16:15, 16:24, 17:17, 18:3, 18:15, 18:18, 19:1, 19:12, 20:1, 22:6, 22:10, 22:12, 22:16, 22:17, 22:18, 22:19, 22:22, 23:2, 23:6, 23:10, 23:13, 23:17, 23:22, 23:23, 24:3, 24:5, 24:9, 24:25, 25:25, 26:1, 26:6, 27:1, 27:2, 27:7, 27:8, 27:11, 27:13, 27:17, 27:23, 27:24, 40:21, 41:20, 42:7, 42:8, 43:6, 43:25
**class-action** [2] - 8:12, 12:3
**classes** [1] - 34:22
**classic** [1] - 35:1
**clause** [5] - 32:14, 45:20, 47:8, 48:9, 54:2
**clauses** [1] - 38:18
**clear** [4] - 19:5, 21:7, 33:13, 45:5
**clearly** [3] - 15:24, 17:18, 25:4
**CLERK** [2] - 6:7, 6:9
**clients** [1] - 11:11
**close** [1] - 20:4
**closed** [8] - 9:21, 10:8, 10:10, 10:11, 10:14, 17:4, 18:19, 20:8
**closing** [1] - 9:25
**closings** [1] - 20:5

**Code** [5] - 32:12, 36:15, 42:4, 49:7, 49:11
**code** [2] - 33:13, 33:17
**commence** [2] - 7:10, 8:3
**comment** [2] - 29:6, 36:21
**comments** [2] - 44:14
**COMMUNITY** [1] - 1:22
**companies** [5] - 8:13, 18:22, 40:15, 47:12, 48:6
**company** [3] - 13:22, 40:9, 46:12
**COMPANY** [28] - 2:1, 2:2, 2:3, 2:4, 2:5, 2:10, 2:11, 2:23, 2:24, 2:25, 3:1, 3:2, 3:7, 3:7, 3:12, 3:13, 3:18, 3:20, 3:21, 3:21, 4:2, 4:3, 4:8, 4:9, 4:10, 4:11, 4:12, 4:13
**complaint** [18] - 10:3, 10:24, 10:25, 15:22, 16:17, 27:16, 34:11, 35:20, 39:6, 39:9, 39:10, 39:12, 39:14, 39:25, 40:5, 40:15, 40:17, 41:1
**completely** [2] - 10:24, 20:2
**complexities** [1] - 38:9
**comprise** [1] - 27:2
**comprised** [1] - 22:10
**COMPUTER** [1] - 4:24
**concede** [1] - 40:25
**conceivably** [1] - 33:21
**concern** [2] - 28:11, 44:15
**concerned** [1] - 20:1
**concerns** [1] - 28:10
**concluded** [1] - 54:21
**conclusion** [1] - 30:8
**conducting** [1] - 43:18
**conflict** [1] - 29:5
**consider** [3] - 48:21, 49:2, 49:21
**consideration** [6] - 46:8, 46:10, 46:15, 46:24, 47:24, 49:19
**considerations** [2] - 52:16
**Consolidated** [1] - 6:10
**consolidated** [1] - 8:8

**CONSOLIDATED** [1] - 1:5
**constitutional** [2] - 43:17, 43:20
**constitutionally** [1] - 51:11
**construed** [1] - 47:12
**consumer** [1] - 48:8
**contain** [1] - 54:2
**contemplated** [1] - 49:11
**context** [4] - 26:17, 51:7, 51:18, 51:25
**continued** [1] - 14:12
**contours** [1] - 44:13
**contract** [21] - 10:4, 19:3, 33:3, 33:5, 35:14, 37:4, 37:25, 38:19, 40:24, 42:12, 42:13, 42:18, 42:25, 43:5, 43:8, 43:19, 44:6, 51:19, 51:20, 52:2, 52:19
**contracts** [1] - 40:7
**contractual** [5] - 44:4, 51:6, 51:13, 51:15, 52:7
**contrary** [1] - 43:12
**Conventional** [1] - 36:13
**conventional** [12] - 33:10, 33:12, 33:13, 36:12, 36:23, 37:2, 37:5, 37:7, 37:14, 37:15, 45:4, 49:22
**converted** [1] - 18:3
**convince** [1] - 32:23
**cooperation** [1] - 52:22
**copies** [1] - 50:23
**copy** [1] - 50:23
**Cork** [1] - 50:10
**CORPORATION** [1] - 3:23
**correct** [7] - 12:12, 29:8, 36:5, 37:6, 39:21, 39:23, 55:7
**costs** [1] - 13:5
**Counsel** [2] - 6:21, 53:6
**counsel** [5] - 8:20, 39:7, 44:14, 50:24, 52:14
**counts** [2] - 40:24, 40:25
**couple** [3] - 16:21, 17:10, 54:8
**course** [5] - 6:17, 9:15, 18:9, 29:22, 33:8

**COURT** [94] - 1:1, 4:21, 6:4, 6:8, 6:15, 7:3, 7:8, 8:15, 8:18, 8:22, 8:24, 9:4, 9:12, 11:17, 11:21, 12:7, 12:14, 12:17, 12:20, 13:11, 14:18, 15:1, 15:11, 15:14, 15:23, 16:3, 16:6, 16:14, 17:12, 18:8, 19:5, 19:18, 20:12, 20:18, 20:20, 21:6, 22:15, 22:21, 22:23, 23:8, 24:2, 24:7, 24:11, 25:20, 26:20, 28:9, 29:14, 30:13, 30:25, 31:6, 31:8, 31:14, 31:17, 31:22, 32:1, 32:5, 32:11, 33:8, 33:12, 34:12, 34:16, 34:19, 35:24, 36:14, 37:18, 38:22, 39:20, 39:22, 40:2, 41:5, 41:15, 41:18, 41:25, 44:12, 45:10, 46:2, 47:3, 47:13, 48:17, 48:24, 49:25, 50:7, 51:1, 51:19, 51:23, 52:2, 52:5, 52:11, 53:9, 53:16, 53:20, 54:6, 54:10, 54:12
**Court** [37] - 17:10, 18:5, 20:3, 24:10, 24:14, 25:4, 25:10, 25:16, 25:22, 27:21, 29:22, 30:3, 30:15, 41:11, 43:16, 43:17, 43:23, 44:3, 47:16, 48:3, 48:20, 49:2, 49:4, 49:7, 49:17, 49:20, 50:5, 50:21, 51:13, 51:21, 53:6, 53:10, 55:4, 55:5, 55:6, 55:14, 55:15
**court** [27] - 7:14, 9:12, 10:22, 10:23, 11:1, 11:3, 11:9, 11:24, 11:25, 12:6, 18:4, 18:14, 18:23, 19:2, 20:17, 21:12, 21:18, 22:7, 24:20, 28:11, 30:17, 30:23, 40:19, 43:23, 45:12
**Court's** [2] - 36:7, 50:8
**COURT** ...................... [1] - 5:13
**courts** [3] - 17:21, 24:21, 42:9
**Courts** [1] - 30:7

**cover** [4] - 37:13, 45:16, 46:5, 50:4
**Coverage** [2] - 10:18, 13:19
**coverage** [1] - 47:21
**covered** [9] - 13:20, 13:22, 32:24, 37:13, 45:14, 49:15, 50:3, 50:15, 51:16
**Cox** [1] - 37:8
**create** [7] - 14:14, 34:5, 36:11, 42:17, 42:19, 53:7
**creates** [1] - 34:2
**creatures** [1] - 45:6
**creditors** [2] - 35:6, 35:10
**cross** [1] - 36:14
**cross-struck** [1] - 36:14
**CRR** [2] - 4:21, 55:13
**curious** [1] - 31:15
**cy** [1] - 14:13

**D**

**damage** [3] - 13:21, 14:3, 27:8
**damages** [2] - 13:21, 27:17
**Dan** [1] - 35:15
**DANIEL** [1] - 4:17
**date** [3] - 42:18, 42:19, 44:8
**dates** [1] - 42:21
**days** [1] - 17:11
**deadlines** [1] - 41:16
**deal** [1] - 14:16
**dealing** [5] - 21:3, 30:4, 35:3, 35:17, 54:9
**deals** [1] - 45:2
**dealt** [1] - 14:15
**debt** [2] - 35:11, 37:10
**debts** [1] - 35:18
**dec** [2] - 47:16, 47:20
**decent** [1] - 44:16
**decert** [1] - 50:13
**decide** [11] - 11:8, 15:18, 17:20, 17:22, 17:23, 17:24, 19:6, 21:16, 47:18, 49:18
**decided** [2] - 42:23, 43:3
**deciding** [1] - 17:19
**decision** [11] - 18:13, 19:15, 28:18, 43:10, 43:15, 50:19, 50:21, 51:5, 51:17, 52:9,

54:15
**decisions** [1] - 28:7
**declaratory** [1] - 27:16
**default** [1] - 35:15
**defendant** [2] - 8:15, 11:9
**defendant's** [1] - 16:23
**Defendants** [1] - 6:21
**defendants** [8] - 8:11, 11:11, 12:8, 14:21, 15:9, 16:7, 23:3, 28:7
**defense** [1] - 50:23
**deficiencies** [1] - 34:11
**define** [1] - 45:24
**defined** [8] - 7:13, 22:13, 23:4, 27:6, 27:7, 27:8, 27:11, 42:8
**definition** [2] - 22:15, 22:17
**DEGAN** [1] - 4:3
**demonstrated** [1] - 23:10
**Denko** [1] - 42:1
**denominated** [1] - 24:3
**DEPARTMENT** [1] - 1:23
**dependent** [2] - 39:15, 39:18
**DEPOSIT** [1] - 3:18
**deprive** [2] - 21:17, 29:22
**DEPUTY** [2] - 6:7, 6:9
**described** [1] - 42:6
**deserve** [1] - 14:6
**determination** [1] - 42:2
**determine** [5] - 40:19, 46:23, 47:16, 47:19
**detriment** [1] - 25:7
**developed** [1] - 9:15
**developing** [1] - 9:17
**DEVELOPMENT** [1] - 1:22
**die** [1] - 29:7
**different** [6] - 30:5, 47:5, 50:12, 52:15, 52:17, 52:24
**difficult** [1] - 45:21
**direct** [1] - 50:21
**disagree** [1] - 52:14
**discharging** [1] - 37:10
**discission** [1] - 18:6
**discovery** [2] - 11:12, 53:1

**discretion** [5] - 21:21, 21:25, 28:2, 49:7, 49:17
**discretionary** [2] - 29:25, 30:2
**discusses** [1] - 51:18
**discussing** [1] - 41:20
**Dismiss** [20] - 6:14, 15:3, 16:16, 16:19, 16:20, 17:13, 17:14, 17:16, 17:17, 19:7, 19:13, 21:1, 21:2, 21:8, 21:22, 24:17, 24:18, 25:24, 31:2, 41:12
**dismiss** [1] - 22:18
**dismissal** [1] - 44:10
**dismissed** [2] - 21:13, 39:1
**dismissing** [1] - 25:25
**dispositive** [2] - 19:15, 20:2
**dispute** [2] - 29:23, 52:23
**Disqualify** [1] - 29:3
**disrepair** [1] - 13:25
**distinction** [4] - 36:22, 38:1, 53:24, 54:3
**District** [3] - 55:5, 55:6, 55:15
**DISTRICT** [2] - 1:1, 1:2
**district** [1] - 18:14
**diverse** [1] - 23:18
**diversity** [1] - 30:2
**divide** [3] - 29:7, 38:13
**dividing** [1] - 31:1
**DIVISION** [1] - 1:21
**Document** [2] - 6:12, 6:13
**document** [3] - 36:3, 36:9, 36:11
**done** [8] - 8:1, 13:9, 24:13, 26:2, 26:3, 28:1, 47:1, 48:22
**down** [3] - 11:4, 39:13, 40:5
**drafted** [1] - 49:11
**drafting** [1] - 45:18
**Dudenhefer** [1] - 8:21
**DUPLASS** [1] - 3:7
**duplicate** [1] - 34:4
**duplication** [2] - 33:24, 34:2
**during** [3] - 29:3, 29:22, 42:15
**duties** [1] - 52:17
**duty** [2] - 10:5, 40:24
**DUVAL** [1] - 1:13
**dwell** [1] - 39:5

**E**

**Eastern** [1] - 55:6
**EASTERN** [1] - 1:2
**economic** [1] - 48:2
**economics** [1] - 48:13
**effect** [8] - 17:21, 19:8, 19:10, 19:14, 19:19, 29:12, 39:13, 41:11
**effective** [1] - 46:11
**effects** [1] - 42:2
**eight** [3] - 17:4, 51:22, 52:8
**Either** [1] - 17:24
**eliminates** [1] - 36:22
**embellish** [1] - 32:22
**emergency** [1] - 14:1
**EMPIRE** [2] - 3:19, 3:20
**ENCOMPASS** [3] - 2:2, 2:3, 2:4
**encounter** [1] - 30:7
**end** [3] - 19:16, 19:18, 53:4
**ENERGY** [1] - 3:14
**engage** [1] - 43:14
**enlightened** [1] - 51:23
**enlightenment** [1] - 48:18
**entire** [4] - 22:12, 29:23, 47:6, 47:7
**entitled** [1] - 55:9
**equation** [2] - 39:24, 53:2
**equitable** [2] - 53:9, 53:13
**equity** [1] - 48:13
**ESQUIRE** [16] - 1:23, 1:24, 2:5, 2:11, 2:12, 2:15, 3:3, 3:8, 3:14, 3:24, 4:3, 4:14, 4:17, 4:17, 4:18, 4:18
**essence** [2] - 25:20, 47:21
**essentially** [2] - 18:3, 37:16
**establish** [1] - 42:11
**established** [3] - 41:16, 42:10, 42:12
**estate** [1] - 35:18
**estates** [1] - 35:20
**evaluate** [1] - 46:22
**evaluated** [2] - 14:2, 48:15
**evaluates** [1] - 46:17
**event** [2] - 7:15, 13:20
**exact** [1] - 11:3

**exactly** [4] - 13:17, 15:19, 17:1, 28:23
**Exactly** [1] - 16:13
**example** [2] - 24:25, 35:1
**except** [1] - 19:9
**exception** [1] - 53:7
**excess** [8] - 8:13, 12:24, 13:2, 13:9, 14:6, 14:9, 22:25, 27:3
**exclusion** [1] - 39:11
**exclusively** [1] - 33:9
**excuse** [1] - 50:22
**executed** [1] - 22:5
**executing** [1] - 45:1
**execution** [1] - 41:14
**exemplary** [1] - 13:8
**exist** [3] - 49:6, 53:8, 53:10
**existing** [1] - 17:6
**exists** [2] - 15:20, 53:11
**expense** [1] - 38:15
**expert** [1] - 11:17
**experts** [5] - 11:13, 11:19, 47:17, 47:18
**expired** [1] - 44:8
**explain** [1] - 7:1
**explains** [1] - 36:21
**explore** [1] - 18:14
**exposing** [1] - 28:6
**expound** [1] - 22:8
**expressly** [1] - 43:7
**extend** [1] - 42:14
**extended** [2] - 42:18, 51:11
**extension** [1] - 44:7
**extent** [6] - 12:10, 34:4, 50:1, 53:2, 53:12, 54:4
**extra** [1] - 46:25
**extremely** [1] - 39:14

**F**

**facilitate** [2] - 10:13, 14:12
**fact** [11] - 20:8, 22:4, 23:2, 23:16, 23:17, 25:3, 25:18, 40:13, 40:14, 40:19, 54:1
**facts** [2] - 13:16, 17:7
**factual** [4] - 40:12, 40:18, 50:12, 52:1
**fails** [3] - 34:7, 43:25, 44:1
**failure** [1] - 39:16
**fair** [1] - 46:25

**fairness** [1] - 48:14
**faith** [4] - 10:4, 14:8, 25:1
**fallacy** [1] - 26:20
**falling** [1] - 49:21
**Fallon** [1] - 24:20
**familiar** [1] - 41:21
**FANNIN** [1] - 2:12
**far** [4] - 13:1, 13:4, 16:22, 20:1
**Farm** [2] - 6:22, 6:23
**FARM** [2] - 2:9, 2:10
**fast** [1] - 9:22
**favor** [6] - 21:11, 21:23, 34:22, 35:5, 35:11, 35:18
**FAYARD** [1] - 4:18
**February** [5] - 15:6, 15:15, 16:23, 17:3, 26:4
**Federal** [1] - 25:9
**federal** [10] - 10:23, 11:24, 18:24, 18:25, 20:15, 21:7, 21:12, 23:12, 28:11, 29:11
**fees** [1] - 13:6
**feet** [1] - 9:19
**FENTON** [24] - 2:5, 31:7, 31:12, 31:16, 31:20, 31:25, 32:2, 32:9, 32:24, 33:10, 33:20, 34:14, 34:17, 34:20, 36:5, 37:6, 37:23, 39:5, 39:21, 39:23, 40:4, 41:6, 52:13, 53:14
**Fenton** [3] - 6:22, 31:4, 53:24
**FENTON**....................
........................ [2] - 5:7, 5:10
**few** [1] - 39:6
**FIDELITY** [1] - 3:18
**fiduciary** [2] - 10:5, 40:24
**Fifth** [14] - 17:24, 18:10, 21:19, 21:24, 22:4, 23:20, 25:12, 25:13, 28:14, 28:20, 30:4, 41:20, 51:2, 54:16
**figure** [1] - 14:11
**file** [6] - 10:20, 12:5, 16:8, 41:17, 47:15, 50:16
**filed** [17] - 8:14, 9:14, 9:20, 16:19, 17:13, 17:16, 22:10, 23:22, 24:8, 24:9, 24:11, 27:10, 27:18, 39:9,

39:10, 39:12, 43:25
**filing** [4] - 42:7, 42:19, 42:20, 43:6
**final** [2] - 39:11, 39:12
**financial** [1] - 28:19
**fine** [1] - 54:12
**finished** [1] - 27:19
**FIRE** [3] - 2:9, 3:19, 4:1
**Fireman's** [3] - 6:23, 53:22, 54:1
**FIREMAN'S** [1] - 3:6
**first** [18] - 7:9, 12:1, 21:1, 22:2, 24:22, 25:11, 30:1, 31:8, 31:9, 31:14, 31:17, 32:5, 35:2, 35:3, 37:23, 44:25, 45:16
**First** [3] - 8:4, 8:6, 16:21
**five** [1] - 38:13
**flood** [2] - 39:11, 39:16
**FLOOR** [1] - 3:14
**FLORIDA** [1] - 4:8
**foggy** [1] - 28:24
**folks** [1] - 27:24
**following** [1] - 32:12
**footnote** [1] - 53:25
**FOR** [9] - 1:17, 1:19, 2:1, 2:9, 2:20, 3:12, 3:18, 4:1, 4:7
**foregoing** [1] - 55:7
**forget** [1] - 8:19
**form** [3] - 26:13, 32:15, 46:14
**formally** [1] - 10:10
**forth** [8] - 10:5, 11:16, 13:24, 14:1, 14:8, 16:17, 50:14, 53:23
**forward** [2] - 9:22, 11:9
**four** [4] - 17:15, 33:18, 46:25, 52:8
**Four** [1] - 51:21
**Fourth** [4] - 42:24, 43:11, 44:1, 50:21
**framed** [1] - 15:22
**Frank** [1] - 8:21
**frankly** [2] - 28:1, 29:1
**Friday** [1] - 35:15
**FRIDAY** [1] - 6:2
**full** [1] - 12:11
**fully** [1] - 45:3
**fund** [1] - 14:13
**FUND** [1] - 3:6
**Fund** [2] - 6:24, 53:22
**Fund's** [1] - 54:1
**funds** [2] - 34:3, 35:19

**future** [1] - 14:15

# G

**GALLERIA** [1] - 3:24
**gap** [1] - 37:13
**general** [3] - 39:15, 39:25, 47:4
**GENERAL** [4] - 1:19, 2:10, 2:23, 3:13
**generic** [1] - 48:5
**gentleman** [1] - 13:25
**given** [1] - 29:21
**GORDON** [2] - 4:13, 4:14
**governed** [1] - 37:17
**governing** [1] - 36:19
**grade** [2] - 13:10, 14:10
**grant** [14] - 9:25, 12:11, 12:25, 13:3, 16:9, 16:25, 17:6, 19:13, 27:5, 27:9, 28:13, 34:3, 34:4, 40:11
**Grant** [1] - 13:5
**granted** [2] - 16:6, 19:25
**grantee** [2] - 36:10, 40:16
**grants** [7] - 9:18, 9:21, 10:10, 10:21, 18:19, 37:12, 45:1
**great** [2] - 46:16, 46:22
**group** [2] - 8:21, 10:19
**grouped** [2] - 17:5, 19:24
**groups** [4] - 7:23, 11:4, 11:5, 11:7
**grown** [1] - 10:7
**GUARANTY** [1] - 4:10
**guess** [7] - 13:11, 15:23, 16:14, 16:21, 48:6, 50:6, 53:7
**guy** [1] - 46:21

# H

**HAILEY** [1] - 3:23
**HAINKEL** [1] - 2:15
**half** [3] - 22:21, 22:22, 41:2
**HALL** [1] - 3:23
**hallowed** [1] - 53:11
**handle** [3] - 11:4, 31:4, 31:5
**handled** [1] - 13:2

**handling** [1] - 11:2
**HANOVER** [2] - 2:24, 2:25
**happy** [1] - 7:1
**hate** [2] - 26:22, 35:25
**heads** [1] - 7:17
**heads-up** [1] - 7:17
**hear** [7] - 6:16, 6:18, 21:1, 30:23, 31:1, 37:1, 47:18
**heard** [4] - 19:2, 20:25, 28:12, 30:23
**HEARD** [1] - 1:13
**hearing** [5] - 25:11, 26:4, 29:2, 29:3
**HEARING** [1] - 1:12
**heavily** [2] - 39:15, 39:17
**heck** [2] - 38:22, 48:9
**held** [1] - 51:10
**help** [2] - 14:12, 21:7
**hereby** [1] - 55:6
**hinges** [1] - 54:5
**hired** [1] - 11:13
**historically** [1] - 48:10
**history** [2] - 8:7, 9:16
**hoc** [1] - 53:7
**hold** [1] - 9:23
**Hold** [1] - 53:20
**holding** [1] - 35:7
**HOME** [1] - 1:9
**Home** [28] - 6:11, 7:22, 8:12, 9:15, 10:12, 10:20, 11:12, 14:24, 15:8, 15:11, 15:20, 17:6, 18:18, 20:6, 20:9, 22:12, 27:9, 27:19, 28:14, 28:15, 28:16, 30:20, 35:23, 36:10, 37:12, 40:11, 40:16, 45:1
**home** [4] - 46:16, 46:20, 48:11, 48:12
**homes** [1] - 9:18
**Honor** [70] - 6:20, 6:25, 7:6, 8:5, 9:9, 10:21, 11:20, 12:16, 13:1, 18:11, 20:14, 20:19, 20:23, 20:24, 20:25, 25:24, 25:25, 26:14, 27:6, 28:1, 29:1, 29:8, 29:15, 29:18, 29:19, 30:12, 30:15, 31:3, 31:7, 31:13, 31:25, 32:2, 32:25, 33:1, 33:20, 34:9, 34:15, 34:22, 36:5, 36:12, 37:6, 37:15, 37:16, 37:23, 38:7, 38:20, 39:5,

39:21, 39:23, 40:11, 41:3, 41:8, 41:9, 41:23, 43:2, 43:9, 43:10, 44:9, 44:24, 47:10, 47:15, 51:3, 51:4, 52:10, 52:13, 53:14, 53:19, 53:21, 54:11
**Honor's** [2] - 29:6, 33:22
**HONORABLE** [2] - 1:13, 1:18
**hope** [3] - 15:5, 20:15, 20:23
**hopefully** [2] - 11:1, 54:13
**hoping** [1] - 18:14
**horrible** [1] - 13:25
**HOSKINS** [1] - 4:3
**house** [3] - 13:25, 14:3, 46:22
**HUBBARD** [1] - 3:2
**huge** [1] - 11:23
**humble** [1] - 32:6
**hundred** [1] - 7:25
**hundreds** [1] - 50:10
**hurricanes** [2] - 9:19, 14:13
**Hurricanes** [1] - 51:12
**hypothetical** [3] - 19:13, 28:12, 47:8
**hypothetically** [4] - 13:3, 16:7, 16:24, 20:7

# I

**i.e** [1] - 46:15
**identifiable** [1] - 11:5
**identify** [1] - 44:1
**ILLINOIS** [1] - 2:6
**immovable** [1] - 35:6
**impairment** [1] - 43:19
**imperative** [1] - 21:2
**imply** [1] - 37:3
**important** [1] - 51:12
**impossible** [1] - 49:15
**improper** [1] - 25:8
**IN** [1] - 1:4
**inapplicable** [1] - 35:10
**INC** [1] - 3:22
**incidentally** [1] - 27:22
**include** [1] - 25:1
**includes** [1] - 22:13
**including** [1] - 21:24
**inconsistent** [1] - 28:7
**incorrect** [1] - 37:21

**increases** [2] - 38:14, 38:15
**indeed** [1] - 26:8
**INDEMNITY** [4] - 2:2, 2:24, 3:20, 4:11
**independent** [3] - 8:13, 30:19, 30:21
**independently** [1] - 28:5
**indicates** [1] - 44:5
**individual** [10] - 11:9, 11:10, 12:2, 12:6, 12:7, 13:16, 18:4, 25:19, 28:16, 46:23
**INDIVIDUALLY** [1] - 1:20
**individually** [3] - 12:22, 18:5, 18:21
**individuals** [5] - 9:24, 19:24, 19:25, 20:10, 28:16
**indivisible** [3] - 25:20, 25:21, 28:24
**inescapable** [1] - 30:7
**inextricably** [1] - 38:10
**inference** [1] - 40:12
**injunctive** [1] - 27:16
**inquiry** [1] - 35:24
**Institute** [2] - 36:15
**instruction** [1] - 18:12
**instructions** [1] - 18:13
**instructive** [1] - 18:11
**insufficient** [1] - 41:1
**Insurance** [1] - 51:10
**insurance** [21] - 8:13, 9:5, 13:17, 13:22, 15:9, 18:22, 26:25, 37:13, 38:2, 38:10, 38:19, 40:9, 40:15, 43:1, 46:12, 47:5, 47:12, 47:17, 47:18, 48:6, 52:19
**INSURANCE** [23] - 2:1, 2:3, 2:3, 2:11, 2:23, 2:25, 3:1, 3:2, 3:6, 3:7, 3:12, 3:13, 3:19, 3:20, 3:21, 3:22, 4:2, 4:7, 4:9, 4:10, 4:11, 4:12, 4:13
**insured** [10] - 10:17, 10:18, 24:13, 24:24, 26:18, 37:19, 37:20, 45:22, 52:19, 52:20, 52:21, 52:23, 52:25
**insured's** [1] - 25:19
**insureds** [15] - 22:11, 22:13, 24:10, 25:8,

25:12, 25:14, 26:10, 26:24, 26:25, 27:8, 28:4, 28:5, 28:8, 40:6
**insureds'** [1] - 25:3
**insurer** [2] - 23:3, 53:2
**insurers** [6] - 15:3, 24:9, 28:15, 38:16, 40:7, 40:8
**insurers'** [2] - 38:14, 39:16
**intention** [1] - 20:25
**interest** [23] - 13:12, 21:4, 23:9, 23:13, 23:14, 23:15, 23:18, 24:14, 25:9, 25:12, 25:13, 25:14, 25:18, 25:19, 26:10, 34:24, 34:25, 35:7, 38:11, 38:16, 51:4, 53:3, 53:4
**interested** [5] - 7:9, 7:10, 7:18, 8:2, 37:1
**interesting** [2] - 48:17, 48:19
**interests** [1] - 51:16
**interpret** [2] - 49:7, 50:11
**interpreted** [1] - 50:11
**interrupt** [1] - 42:25
**interruption** [9] - 42:14, 42:17, 43:5, 43:8, 43:24, 44:2, 51:14, 51:15
**intertwined** [1] - 38:10
**interview** [1] - 11:11
**involve** [1] - 48:16
**involved** [7] - 7:19, 8:25, 9:1, 16:15, 18:24, 18:25, 19:1
**involves** [1] - 9:10
**involving** [3] - 8:10, 9:5, 15:9
**irrelevant** [1] - 51:16
**issue** [12] - 17:23, 18:24, 21:11, 21:16, 38:2, 39:20, 41:10, 45:17, 45:19, 47:21, 49:18, 53:24
**issued** [1] - 13:3
**issues** [8] - 13:19, 14:14, 24:24, 34:9, 38:20, 41:7, 47:2, 50:9
**itself** [1] - 48:5
**IV** [1] - 2:15

**J**

**JAMES** [2] - 1:18, 1:24
**January** [2] - 9:23, 50:18
**JANUARY** [1] - 6:2
**job** [1] - 54:17
**JOHNSON** [1] - 2:15
**join** [2] - 23:14, 26:8
**joined** [6] - 20:11, 23:23, 23:25, 24:2, 25:4, 25:10
**joint** [1] - 35:13
**Jones** [1] - 43:2
**JR** [3] - 1:13, 4:13, 4:14
**Judge** [5] - 24:1, 24:17, 24:20, 32:9, 35:20
**judge** [2] - 20:15, 21:7
**JUDGE** [1] - 1:13
**judgment** [1] - 14:6
**judice** [1] - 51:15
**jump** [1] - 50:6
**jurisdiction** [12] - 16:19, 17:19, 20:16, 23:16, 23:19, 24:4, 24:16, 25:5, 25:22, 26:6, 29:17, 29:20, 29:23, 29:24, 29:25, 30:1, 30:2, 30:8, 49:18
**jury** [1] - 30:23
**JUSTICE** [1] - 1:23

**K**

**K"(2** [1] - 1:7
**Katrina** [8] - 6:10, 8:7, 9:2, 9:6, 18:6, 42:22, 51:7, 51:12
**KATRINA** [1] - 1:4
**Katz** [5] - 42:23, 43:13, 43:14, 44:3
**keep** [2] - 17:22, 19:12
**keeping** [2] - 38:16, 53:3
**KELLY** [1] - 3:8
**Kelly** [2] - 6:23, 53:21
**kick** [1] - 52:18
**kind** [4] - 9:16, 30:5, 40:12, 49:9
**knows** [1] - 7:19
**KRISTEN** [1] - 4:17

**L**

**LA** [1] - 4:4

**LAKEWAY** [1] - 3:9
**language** [10] - 11:15, 15:3, 18:8, 18:10, 21:19, 22:3, 45:9, 47:10, 47:17, 48:5
**large** [1] - 10:2
**largest** [1] - 9:16
**LARMANN** [1] - 3:23
**last** [2] - 10:6, 29:15
**Law** [3] - 36:15, 39:13
**LAW** [1] - 4:13
**law** [31] - 19:3, 19:4, 21:16, 23:12, 23:24, 23:25, 28:19, 29:10, 29:11, 33:19, 33:22, 33:24, 34:21, 35:22, 36:2, 36:3, 36:22, 37:2, 37:18, 38:3, 39:18, 42:3, 42:10, 42:12, 44:5, 45:3, 45:10, 46:6, 49:3, 52:3
**lawsuit** [10] - 19:16, 19:18, 25:10, 25:15, 27:17, 27:20, 30:5, 30:8, 41:17, 42:20
**lawyer** [1] - 47:11
**lawyers** [1] - 11:18
**lead** [1] - 30:7
**least** [2] - 7:25, 11:19
**leave** [1] - 28:8
**LEE** [19] - 2:11, 20:23, 22:9, 22:17, 22:22, 23:6, 23:9, 24:5, 24:8, 24:12, 25:21, 27:6, 29:1, 29:15, 41:8, 41:16, 41:23, 42:1, 51:3
**Lee** [8] - 6:22, 20:21, 31:5, 35:14, 35:17, 38:8, 41:6, 51:1
**LEE.............................**
**.................** [2] - 5:6, 5:8
**left** [4] - 13:25, 18:18, 21:12, 39:25
**legal** [10] - 33:15, 33:16, 33:17, 34:13, 34:14, 36:4, 36:8, 49:21, 49:24, 49:25
**Legislature** [2] - 49:11, 49:16
**less** [1] - 21:9
**letting** [3] - 8:5, 32:21, 39:4
**levee** [1] - 39:17
**level** [3] - 48:22, 48:24, 48:25
**Liaison** [1] - 6:21
**liberative** [2] - 42:5,

42:9
**light** [2] - 34:11, 41:19
**limitations** [9] - 42:11, 42:13, 42:18, 43:1, 43:6, 43:8, 43:20, 44:4, 44:6
**limited** [2] - 43:21, 44:25
**listed** [1] - 10:2
**litigate** [1] - 38:9
**litigated** [1] - 21:17
**litigating** [1] - 52:24
**LITIGATION** [1] - 1:5
**litigation** [9] - 8:8, 8:12, 9:3, 17:5, 18:18, 23:18, 29:22, 41:2
**Litigation** [2] - 6:11, 18:6
**live** [1] - 14:1
**Look** [1] - 37:19
**look** [10] - 23:21, 24:22, 29:20, 39:6, 40:14, 42:3, 42:4, 47:2, 49:8, 54:16
**looked** [1] - 18:9
**Looking** [1] - 34:16
**looking** [8] - 13:6, 14:5, 21:19, 21:20, 33:16, 34:17, 43:15, 43:16
**looks** [1] - 7:19
**loss** [10] - 10:17, 32:18, 37:21, 38:1, 38:4, 39:18, 47:6, 52:16, 52:18, 53:24
**losses** [2] - 17:8, 39:16
**LOUISIANA** [16] - 1:2, 1:7, 1:9, 1:17, 1:19, 1:21, 1:23, 1:25, 2:13, 2:16, 3:4, 3:10, 3:15, 3:25, 4:15, 4:22
**Louisiana** [26] - 6:11, 7:7, 9:11, 9:18, 10:2, 10:16, 13:14, 13:15, 14:2, 15:20, 15:21, 18:15, 23:23, 23:25, 29:10, 36:2, 37:2, 38:3, 42:23, 43:4, 43:16, 50:19, 51:13, 51:18, 52:25, 55:6
**LUGENBUHL** [1] - 3:2

**M**

**MARCH** [1] - 1:8
**MARINE** [1] - 3:19

**MARYANN** [1] - 4:3
**MARYLAND** [1] - 3:19
**mass** [1] - 24:15
**MASSACHUSETTS**
[1] - 3:1
**massive** [1] - 9:16
**match** [1] - 21:24
**materials** [1] - 35:22
**matter** [9] - 10:13,
18:20, 19:1, 40:14,
49:20, 52:15, 52:24,
53:25, 55:9
**matters** [2] - 10:11,
54:4
**matured** [1] - 10:7
**MAURICE** [1] - 4:18
**McMinn** [49] - 1:23,
7:6, 7:7, 8:4, 8:17,
8:19, 8:23, 9:1, 9:9,
9:13, 11:20, 11:22,
12:13, 12:16, 12:19,
13:1, 13:13, 14:23,
15:5, 15:13, 15:15,
16:2, 16:5, 16:13,
16:21, 17:25, 18:11,
19:15, 19:21, 20:14,
20:19, 30:15, 44:24,
45:11, 46:3, 47:10,
47:15, 48:22, 48:25,
50:3, 50:8, 51:4,
51:20, 51:24, 52:3,
52:6, 53:19, 54:7,
54:11
**McMINN**......................
........................ [3] -
5:5, 5:9, 5:12
**MCNAMARA** [1] - 3:23
**mean** [5] - 36:1, 40:2,
45:12, 48:9, 49:6
**meaning** [2] - 21:9,
23:4
**means** [5] - 11:15,
38:25, 45:20, 45:23,
47:17
**MECHANICAL** [1] -
4:23
**mechanically** [1] -
12:20
**meddles** [1] - 36:15
**members** [5] - 12:4,
18:3, 23:10, 23:23,
42:8
**memo** [1] - 51:3
**Merit** [1] - 55:4
**METAIRIE** [2] - 3:10,
3:25
**might** [11] - 7:3, 17:19,
21:7, 22:2, 22:7,
22:24, 24:25, 27:7,
33:16, 36:3, 38:23

**mind** [2] - 27:2, 28:21
**mindful** [1] - 20:3
**mine** [1] - 33:23
**minute** [1] - 50:22
**minutes** [1] - 30:13
**mitigate** [1] - 52:21
**modern** [1] - 46:16
**moment** [1] - 41:5
**money** [9] - 7:14,
10:16, 13:1, 13:9,
14:4, 14:9, 14:17,
20:6, 20:9, 23:3,
26:24, 27:7, 28:17,
30:19, 35:6, 35:9,
40:7, 46:13, 48:13
**monies** [1] - 12:24
**months** [3] - 17:15,
51:22, 52:8
**moot** [1] - 24:20
**morning** [4] - 6:8, 7:6,
8:5, 31:7
**mortgage** [3] - 34:24,
35:2, 35:7
**mortgagee** [1] - 35:1
**mortgagee's** [1] - 35:3
**most** [2] - 20:7, 48:6
**Motion** [35] - 6:13, 7:8,
8:6, 15:3, 15:16,
16:6, 16:8, 16:16,
16:19, 16:20, 16:23,
17:4, 17:13, 17:14,
17:16, 17:17, 18:1,
18:17, 19:6, 19:13,
20:13, 21:1, 21:2,
21:8, 21:22, 24:17,
24:18, 24:19, 25:24,
26:11, 29:2, 31:2,
41:12
**motion** [16] - 10:21,
15:6, 22:18, 22:20,
24:19, 25:16, 26:23,
27:12, 27:13, 28:13,
31:1, 31:4
**MOTIONS** [1] - 1:12
**motions** [3] - 6:12,
6:16, 6:25
**MOUNT** [1] - 3:24
**movable** [1] - 35:5
**move** [1] - 46:20
**Move** [1] - 48:24
**moved** [1] - 46:21
**moving** [1] - 54:17
**MR** [97] - 5:5, 5:6, 5:7,
5:8, 5:9, 5:10, 5:12,
6:20, 7:6, 8:4, 8:17,
8:19, 8:23, 9:1, 9:9,
9:13, 11:20, 11:22,
12:13, 12:16, 12:19,
13:1, 13:13, 14:23,
15:5, 15:13, 15:15,

16:2, 16:5, 16:13,
16:21, 17:25, 18:11,
19:15, 19:21, 20:14,
20:19, 20:23, 22:9,
22:17, 22:22, 23:6,
23:9, 24:5, 24:8,
24:12, 25:21, 27:6,
29:1, 29:15, 30:15,
31:3, 31:7, 31:12,
31:16, 31:20, 31:25,
32:2, 32:9, 32:24,
33:10, 33:20, 34:14,
34:17, 34:20, 36:5,
37:6, 37:23, 39:5,
39:21, 39:23, 40:4,
41:6, 41:8, 41:16,
41:23, 42:1, 44:24,
45:11, 46:3, 47:10,
47:15, 48:22, 48:25,
50:3, 50:8, 51:3,
51:4, 51:20, 51:24,
52:3, 52:6, 52:13,
53:14, 53:19, 54:7,
54:11
**MS** [2] - 5:11, 53:21
**multiple** [1] - 28:7
**murkier** [1] - 31:19
**murky** [2] - 31:21,
32:1
**must** [1] - 25:10
**MUTUAL** [1] - 3:12

**N**

**name** [2] - 7:6, 8:20
**named** [2] - 16:11,
40:20
**NAMED** [1] - 2:21
**NASH** [1] - 4:3
**NATH** [1] - 2:5
**NATIONAL** [1] - 4:1
**nature** [2] - 13:8,
19:16
**navigate** [1] - 21:20
**necessarily** [2] - 36:2,
45:7
**necessary** [1] - 24:4
**need** [11] - 17:12,
22:5, 23:25, 25:14,
26:11, 26:15, 41:10,
43:20, 46:22, 46:24
**needs** [2] - 46:24,
54:16
**never** [2] - 7:23, 46:18
**New** [1] - 39:17
**NEW** [7] - 1:7, 2:13,
3:4, 3:15, 4:4, 4:15,
4:22
**new** [5] - 10:24, 12:5,

16:2, 16:5, 16:13,
16:21, 17:25, 18:11,
19:15, 19:21, 20:14,
20:19, 20:23, 22:9,
22:17, 22:22, 23:6,
23:9, 24:5, 24:8,
24:12, 25:21, 27:6,
29:1, 29:15, 30:15,
31:3, 31:7, 31:12,
31:16, 31:20, 31:25,
32:2, 32:9, 32:24,
33:10, 33:20, 34:14,
34:17, 34:20, 36:5,
37:6, 37:23, 39:5,
39:21, 39:23, 40:4,
41:6, 41:8, 41:16,
41:23, 42:1, 44:24,
45:11, 46:3, 47:10,
47:15, 48:22, 48:25,
50:3, 50:8, 51:4,
15:21, 36:21, 50:20
**next** [3] - 35:15, 48:24,
49:2
**nonassignability** [2] -
16:17, 47:7
**none** [1] - 17:22
**Nonetheless** [1] - 9:7
**NORTH** [1] - 1:24
**noted** [3] - 26:14,
34:9, 43:12
**nothing** [4] - 16:15,
21:5, 27:20, 47:14
**notice** [1] - 35:24
**Notice** [1] - 19:25
**notion** [1] - 40:9
**Number** [6] - 6:12,
6:13, 35:5, 35:11,
35:18, 35:21
**number** [2] - 7:18,
19:12, 52:17
**numbered** [1] - 55:9
**numbers** [2] - 9:24,
21:10

**O**

**obligated** [1] - 21:16
**obligation** [11] -
35:13, 41:19, 46:7,
47:23, 47:24, 47:25,
49:19, 49:20
**obligations** [9] -
45:15, 46:6, 46:9,
51:6, 52:7, 52:18,
52:19, 52:20, 52:21
**obligee** [5] - 34:23,
36:16, 36:18, 36:23
**obligor** [1] - 35:11
**obligor's** [1] - 36:18
**observation** [1] - 29:8
**obviously** [5] - 6:17,
12:17, 43:3, 44:13,
46:20
**Obviously** [4] - 28:9,
41:10, 45:21, 52:23
**occurred** [1] - 47:6
**occurrence** [3] -
46:11, 46:14, 47:22
**occurrences** [1] - 42:6
**occurs** [1] - 16:9
**October** [1] - 42:21
**OF** [13] - 1:2, 1:12,
1:17, 1:19, 1:20,
1:21, 1:22, 1:23, 2:4,
3:18, 4:8, 4:13
**OFFICE** [2] - 1:22,
1:25
**OFFICES** [1] - 4:13
**Official** [2] - 55:5,

55:14
**OFFICIAL** [1] - 4:21
**OMEGA** [1] - 4:2
**ON** [1] - 1:20
**once** [1] - 53:5
**One** [3] - 11:22, 37:3,
37:7
**ONE** [2] - 3:24, 4:2
**one** [21] - 6:17, 7:9,
7:11, 7:15, 8:15,
8:18, 11:7, 12:23,
16:10, 17:14, 24:1,
28:10, 29:15, 31:1,
32:14, 33:1, 33:21,
43:24, 48:4, 50:24,
53:20
**one's** [1] - 32:1
**operation** [1] - 34:21
**opinion** [3] - 32:6,
43:12
**opportunity** [1] -
20:24
**ORDER** [1] - 6:4
**oriented** [1] - 48:1
**original** [1] - 28:10,
46:8
**originally** [2] - 8:14,
9:14
**Orleans** [1] - 39:17
**ORLEANS** [7] - 1:7,
2:13, 3:4, 3:15, 4:4,
4:15, 4:22
**ostensibly** [1] - 26:25
**otherwise** [7] - 29:24,
33:18, 33:21, 33:23,
41:4, 49:3, 53:8
**ought** [1] - 23:20
**overarching** [1] - 7:3
**overstatement** [1] -
40:4
**overwhelming** [1] -
44:22
**owe** [1] - 40:7
**owes** [1] - 35:11
**own** [3] - 26:7, 35:19,
38:12
**owned** [1] - 30:21
**owner** [2] - 13:12,
13:13
**owns** [2] - 18:20,
18:21

**P**

**page** [1] - 51:4
**Page** [2] - 5:3, 51:5
**paid** [6] - 7:22, 10:16,
13:22, 14:3, 26:24,
30:19

**PAPALE** [1] - 3:23
**papers** [1] - 40:25
**paragraph** [3] - 40:14, 45:8, 49:3
**Parcel** [1] - 41:18
**pardon** [1] - 8:17
**parens** [2] - 24:11, 24:12
**part** [6] - 10:3, 14:7, 31:5, 40:20, 51:12
**Part** [1] - 38:8
**partial** [7] - 23:11, 23:24, 31:10, 31:18, 31:20, 44:15
**particular** [2] - 41:9, 50:15
**particularization** [1] - 39:3
**particularly** [3] - 34:11, 39:16, 47:23
**parties** [9] - 13:12, 23:18, 24:4, 24:14, 25:9, 25:12, 25:13, 25:14, 42:14
**parts** [1] - 23:15
**party** [2] - 13:15, 52:25
**patriae** [2] - 24:11, 24:12
**paucity** [1] - 48:18
**pay** [8] - 13:10, 14:9, 35:6, 35:9, 35:15, 35:16, 39:16, 40:16
**paying** [1] - 35:2
**payment** [5] - 35:13, 37:9, 37:10, 37:12, 39:19
**pays** [3] - 34:23, 35:11, 35:18
**PECK** [1] - 3:2
**penalty** [1] - 40:25
**pending** [6] - 9:6, 16:23, 16:24, 19:7, 25:16, 25:25
**people** [35] - 7:18, 7:19, 7:23, 7:25, 9:18, 10:8, 10:9, 10:14, 10:19, 10:21, 12:2, 14:24, 17:2, 17:4, 17:6, 18:2, 19:8, 19:14, 19:22, 19:23, 20:3, 20:4, 21:17, 22:4, 22:13, 22:20, 23:3, 23:4, 26:16, 27:14, 27:18, 27:22, 30:20, 50:15
**Pepper** [2] - 55:3, 55:13
**PEPPER** [2] - 4:21, 55:12

**per** [1] - 11:8
**PERAGINE** [1] - 3:13
**percent** [1] - 46:1
**perform** [2] - 46:7, 47:24
**performance** [2] - 36:17, 48:1
**Perhaps** [1] - 17:18
**perhaps** [3] - 14:14, 17:22, 33:22
**period** [2] - 51:16, 51:25
**periods** [1] - 51:14
**permission** [1] - 37:4
**permit** [1] - 14:7
**permutation** [1] - 15:2
**person** [1] - 36:17
**persons** [3] - 19:19, 19:20, 27:3
**perspective** [1] - 22:9
**pertaining** [1] - 15:7
**Pertains** [1] - 6:11
**PERTAINS** [1] - 1:9
**petition** [2] - 12:5, 42:7
**petitions** [1] - 42:6
**PFISTER** [1] - 3:8
**phase** [2] - 27:19, 27:20
**PHILLIPS** [1] - 1:24
**phone** [1] - 13:24
**phonetically** [1] - 29:19
**phrase** [1] - 49:16
**pick** [2] - 11:6, 15:21
**Pick** [1] - 11:11
**picture** [1] - 9:2
**pieces** [2] - 27:25, 33:4
**PIGMAN** [1] - 2:11
**Pipe** [5] - 41:20, 43:7, 50:10, 50:12, 51:18
**Pitts** [6] - 43:11, 43:23, 44:1, 50:18, 50:22, 52:9
**place** [3] - 21:2, 30:1, 34:20
**places** [1] - 53:11
**plain** [1] - 25:3
**plaintiff** [6] - 7:12, 8:20, 13:13, 15:25, 16:10, 40:20
**plaintiffs** [2] - 21:10, 43:9
**PLAINTIFFS** [1] - 2:22
**plan** [2] - 11:2, 12:22
**plate** [1] - 54:14
**plausible** [1] - 40:11
**play** [1] - 28:21

**pleaded** [2] - 39:7, 40:18
**pleading** [1] - 34:10
**pledge** [2] - 34:24, 35:7
**plus** [2] - 13:5, 38:12
**pocket** [1] - 46:12
**point** [12] - 16:11, 29:4, 29:15, 32:25, 40:21, 40:23, 41:2, 49:5, 50:6, 53:14, 53:22
**points** [1] - 39:6
**policies** [8] - 31:13, 32:3, 32:13, 33:1, 38:2, 43:1, 54:2, 54:8
**policy** [28] - 11:15, 11:16, 13:17, 13:19, 15:4, 32:16, 37:20, 38:5, 44:20, 45:15, 45:18, 45:19, 45:22, 46:1, 46:18, 46:21, 47:4, 47:5, 47:6, 47:7, 48:3, 48:6, 48:8, 48:15, 49:8, 52:15, 54:3
**Policy** [1] - 39:13
**policyholder** [3] - 38:12, 38:17, 53:4
**Pollay** [1] - 29:19
**poor** [1] - 48:7
**PORTEOUS** [1] - 2:15
**portion** [4] - 12:13, 12:14, 12:15, 30:10
**posed** [1] - 28:10
**position** [2] - 17:1, 30:21
**possibility** [1] - 18:14
**possible** [1] - 49:14
**possibly** [1] - 38:23
**post** [9] - 32:18, 37:21, 38:1, 47:22, 50:9, 50:10, 52:16, 53:24
**POST** [1] - 1:25
**post-assignment** [1] - 37:21
**post-loss** [4] - 32:18, 38:1, 52:16, 53:24
**potential** [5] - 14:8, 25:7, 26:14, 36:1, 45:19
**potentially** [3] - 27:4, 28:6, 36:2
**power** [1] - 49:17
**POYDRAS** [5] - 3:3, 3:15, 4:4, 4:14, 4:21
**practical** [1] - 28:24
**precert** [1] - 50:13

**precise** [1] - 37:9
**prefer** [1] - 17:20
**preferred** [1] - 34:23
**prejudice** [1] - 48:2
**prejudiced** [1] - 46:13
**preloss** [2] - 38:1, 52:16
**premium** [1] - 46:25
**prepared** [1] - 11:3
**pres** [1] - 14:13
**prescribed** [6] - 44:10, 50:16, 52:4, 52:5, 52:6, 52:9
**prescription** [11] - 19:9, 31:5, 33:5, 41:6, 41:10, 41:13, 42:5, 42:9, 50:6, 51:11, 51:15
**prescriptive** [2] - 51:14, 51:25
**PRESENT** [1] - 4:17
**present** [1] - 22:20
**presented** [5] - 7:2, 24:19, 54:12
**pretty** [4] - 8:9, 32:21, 32:24, 45:5
**Pretty** [1] - 19:3
**prevent** [1] - 48:11
**primarily** [1] - 40:21
**principles** [2] - 30:6, 46:9
**printout** [1] - 51:5
**private** [3] - 8:10, 15:8, 15:12
**privilege** [2] - 34:24, 35:7
**problem** [1] - 22:7
**problematic** [1] - 50:2
**procedural** [1] - 29:11
**procedurally** [2] - 17:1, 22:6
**Procedure** [1] - 42:4
**proceed** [1] - 22:7
**proceedings** [2] - 54:20, 55:8
**PROCEEDINGS** [3] - 1:12, 4:23, 6:1
**process** [3] - 10:11, 20:4, 20:5
**PRODUCED** [1] - 4:24
**producing** [1] - 13:16
**Professional** [1] - 55:4
**Program** [4] - 9:15, 10:12, 30:20, 36:10
**program** [1] - 9:16
**prohibit** [2] - 31:13, 32:3
**prohibited** [1] - 38:5
**prohibits** [5] - 37:24,

37:25, 38:6, 54:2
**promoting** [1] - 26:10
**proofs** [1] - 52:20
**proper** [1] - 47:19
**PROPERTY** [2] - 2:4, 4:12
**property** [8] - 13:12, 13:13, 14:3, 27:8, 35:6, 35:8, 35:9, 46:19
**Property** [1] - 51:9
**proposition** [3] - 38:4, 39:18, 52:15
**prosecute** [3] - 12:15, 12:17, 25:7
**protection** [1] - 46:17
**provide** [4] - 9:17, 43:7, 43:24, 52:20
**provided** [10] - 33:18, 33:22, 33:23, 35:21, 35:22, 36:4, 42:10, 44:7, 45:10, 49:3
**provides** [2] - 36:7, 44:2
**provision** [2] - 33:2, 45:10
**provisions** [1] - 34:7
**public** [3] - 43:20, 45:15, 48:3
**published** [1] - 45:12
**purchase** [1] - 35:8
**purchased** [2] - 35:6, 35:9
**purchaser** [1] - 35:5
**purport** [2] - 42:17, 43:13
**purpose** [4] - 37:9, 37:10, 37:12, 38:18
**pursuant** [2] - 30:22, 52:9
**pursue** [4] - 10:2, 18:20, 20:17, 23:13
**put** [6] - 10:23, 11:25, 14:11, 22:9, 31:14, 49:16
**putative** [2] - 12:4, 18:2**

## Q

**quandary** [2] - 21:6, 21:15
**questions** [8] - 7:4, 7:15, 7:17, 16:22, 19:3, 19:4, 41:3, 41:9
**quickly** [3] - 10:12, 30:16, 45:16
**Quite** [1] - 29:1

**quite** [2] - 18:8, 28:1

# R

**RANKIN** [1] - 3:2
**rather** [2] - 28:18, 47:6
**rating** [1] - 46:16
**re** [4] - 6:10, 8:7, 18:6, 42:1
**RE** [1] - 1:4
**reach** [1] - 43:19
**reached** [1] - 34:21
**read** [7] - 27:13, 28:12, 34:22, 41:23, 45:22, 50:9, 50:25
**reading** [1] - 48:8
**ready** [2] - 20:17, 27:14
**real** [9] - 23:15, 23:17, 24:14, 25:9, 25:11, 25:13, 25:14, 25:16, 32:25
**really** [27] - 10:19, 13:9, 18:2, 20:16, 22:5, 24:10, 25:1, 26:10, 26:21, 27:12, 28:2, 29:9, 32:18, 32:19, 34:9, 38:10, 40:18, 44:19, 44:21, 45:5, 50:19, 53:1, 53:5, 53:7, 53:16, 54:4
**Realtime** [1] - 55:3
**reason** [7] - 12:1, 13:23, 17:18, 30:9, 37:14, 38:7, 48:3
**reasons** [5] - 13:2, 16:17, 36:12, 47:7, 53:23
**rebuilding** [1] - 14:12
**rebuttal** [2] - 30:14, 50:5
**receive** [3] - 46:7, 47:25
**received** [2] - 12:11, 34:4
**receives** [1] - 36:16
**recent** [2] - 41:25
**recipient** [2] - 34:3, 34:4
**recipients** [2] - 11:12, 17:7
**recognition** [1] - 30:4
**recognized** [5] - 23:21, 24:21, 25:10, 25:12, 25:14
**recognizes** [1] - 20:15
**record** [2] - 34:12, 55:8

**RECORDED** [1] - 4:23
**recoup** [1] - 34:3
**recourse** [1] - 35:12
**recover** [6] - 26:23, 27:4, 28:17, 30:19, 35:16, 37:21
**recovered** [1] - 27:7
**recoveries** [1] - 26:14
**recovery** [3] - 7:15, 12:24, 20:9
**recurrence** [1] - 26:9
**redefine** [1] - 22:19
**REDFEARN** [1] - 3:13
**REES** [1] - 4:17
**Rees** [1] - 35:15
**refer** [3] - 18:5, 27:20, 51:1
**references** [1] - 26:4
**referring** [2] - 16:2, 16:3
**refuse** [1] - 21:21
**regard** [10] - 11:15, 13:17, 14:12, 17:7, 41:12, 45:18, 45:23, 46:6, 47:24, 48:25
**regarded** [1] - 39:2
**regarding** [1] - 33:13
**regardless** [1] - 17:20
**Registered** [2] - 55:3, 55:4
**rejected** [1] - 43:6
**relate** [1] - 6:17
**related** [2] - 13:20, 31:5
**relating** [1] - 51:11
**relationship** [2] - 38:17, 53:3
**relationships** [1] - 28:3
**relegated** [2] - 45:4, 49:22
**RELIABLE** [1] - 4:9
**relief** [5] - 24:13, 27:16, 27:17, 27:18, 27:21
**remain** [2] - 10:20, 52:18
**remaining** [4] - 14:24, 15:19, 19:8, 19:21
**Remand** [6] - 7:9, 8:7, 16:7, 18:1, 18:17, 24:19
**remand** [15] - 7:11, 7:18, 10:22, 11:23, 12:1, 14:19, 14:22, 15:25, 16:20, 17:13, 20:22, 21:5, 22:2, 25:2, 30:17
**remanded** [2] - 11:1, 18:23

**remanding** [1] - 22:1
**remarks** [1] - 8:3
**Remember** [1] - 22:24
**remember** [1] - 29:1
**removable** [1] - 24:15
**removal** [1] - 29:21
**rendered** [2] - 14:7, 24:20
**repair** [1] - 9:18
**reply** [2] - 51:3, 53:25
**Reporter** [6] - 55:3, 55:4, 55:5, 55:14
**REPORTER** [1] - 4:21
**REPORTER'S** [1] - 55:1
**represent** [2] - 7:7, 53:22
**representative** [4] - 7:12, 11:7, 15:21, 16:12
**representatives** [1] - 14:20
**require** [1] - 39:19
**requirement** [1] - 37:3
**requires** [2] - 37:8, 37:9
**research** [1] - 33:22
**resolution** [2] - 39:11, 39:12
**resolve** [1] - 14:17
**resolved** [4] - 9:7, 25:2, 39:20, 39:22
**respect** [5] - 35:23, 40:23, 52:14, 52:21, 53:6
**respectively** [1] - 42:22
**respond** [3] - 13:24, 37:1, 54:7
**response** [2] - 15:5, 45:25
**rest** [1] - 52:10
**result** [4] - 10:16, 14:13, 35:13, 39:17
**retain** [1] - 18:18
**retaining** [1] - 18:15
**returning** [1] - 18:15
**reverse** [2] - 43:13, 44:3
**reverses** [1] - 28:14
**rich** [1] - 14:5
**RICHARD** [1] - 2:5
**Rick** [1] - 6:22
**rightfully** [1] - 25:22
**rights** [19] - 10:1, 10:15, 18:22, 19:19, 19:20, 19:21, 28:5, 28:6, 33:9, 34:5, 35:3, 36:18, 36:20, 36:24, 38:9, 44:21,

45:23, 45:24
**rise** [7] - 6:7, 23:15, 23:19, 24:15, 25:21, 27:23, 29:10
**risk** [3] - 38:14, 46:11, 46:23
**risky** [1] - 48:12
**Rita** [3] - 42:22, 51:7, 51:12
**RMR** [1] - 55:13
**Road** [28] - 6:11, 7:22, 8:12, 9:15, 10:12, 10:20, 11:12, 14:24, 15:8, 15:11, 15:20, 17:6, 18:18, 20:6, 20:9, 22:12, 27:9, 27:19, 28:14, 28:15, 28:16, 30:20, 35:23, 36:10, 37:12, 40:11, 40:16, 45:1
**ROAD** [1] - 1:9
**robustly** [1] - 32:19
**roof** [2] - 13:18, 13:21
**ROOM** [1] - 4:21
**ROSENTHAL** [1] - 2:5
**ROUGE** [1] - 1:25, 2:16
**round** [1] - 21:10
**RPR** [1] - 4:21
**RUFFIN** [1] - 4:18
**rule** [6] - 21:8, 21:11, 21:22, 21:23, 48:4, 54:16
**Rule** [1] - 28:3
**ruled** [1] - 30:11
**Rules** [1] - 25:9
**rules** [5] - 36:19, 37:17, 45:4, 47:23, 49:23
**ruling** [3] - 21:12, 21:14, 26:18
**running** [1] - 42:25
**runs** [1] - 49:9

# S

**S/CATHY** [1] - 55:12
**satisfied** [1] - 7:21
**satisfying** [1] - 33:4
**scenario** [3] - 16:10, 48:11, 52:1
**scenarios** [1] - 50:12
**SCHARP** [1] - 4:17
**SCHMEECKLE** [3] - 3:3, 6:20, 31:3
**Schmeeckle** [2] - 6:20, 31:3
**scope** [1] - 43:21
**SEAN** [1] - 3:24

**searched** [1] - 36:1
**SEARS** [1] - 2:6
**seat** [1] - 41:4
**second** [2] - 35:1, 53:20
**Second** [1] - 45:12
**seconds** [1] - 53:22
**Section** [2] - 6:10, 53:6
**SECTION** [1] - 1:7
**security** [2] - 34:24, 35:7
**SECURITY** [2] - 4:1, 4:8
**see** [3] - 32:19, 38:18, 50:24
**seek** [2] - 13:6, 44:10
**seeking** [2] - 7:13, 13:4
**seem** [2] - 32:21, 47:8
**sell** [1] - 48:12
**send** [9] - 22:19, 22:21, 22:22, 22:23, 23:1, 25:5, 25:17, 28:22, 30:10
**sending** [3] - 26:21, 27:24, 28:23
**sense** [3] - 28:21, 28:25, 53:16
**separate** [9] - 23:9, 23:12, 25:3, 25:17, 25:23, 28:8, 29:5, 29:9, 29:13
**SEPARATELY** [1] - 2:21
**separating** [1] - 27:24
**September** [1] - 42:21
**seriously** [3] - 38:14, 49:21
**SEROU** [2] - 4:13, 4:14
**Service** [1] - 41:18
**SERVICES** [1] - 2:20
**set** [2] - 16:17, 53:23
**SETH** [1] - 3:3
**Seth** [2] - 6:20, 31:3
**settled** [1] - 18:20
**sever** [16] - 7:10, 10:21, 11:23, 14:19, 14:22, 19:11, 20:22, 21:3, 21:5, 21:8, 21:22, 22:2, 22:19, 24:23, 27:12, 30:10
**Sever** [10] - 6:13, 7:8, 8:6, 16:6, 18:1, 18:17, 20:13, 24:18, 24:19, 26:12
**several** [2] - 7:23, 41:24
**severance** [2] - 25:2,

29:16

**severed** [2] - 16:20, 21:13

**severing** [4] - 22:1, 24:22, 24:23, 26:12

**shape** [2] - 26:13, 46:13

**sheds** [1] - 41:19

**SHELTER** [2] - 3:12, 3:13

**Sher** [3] - 39:20, 40:2, 40:5

**shooting** [1] - 21:24

**Showa** [1] - 42:1

**shut** [1] - 53:18

**shutters** [1] - 13:21

**Siamese** [1] - 29:7

**side** [8] - 8:9, 11:18, 15:12

**sides** [1] - 52:19

**sign** [2] - 27:14, 27:18

**signed** [11] - 7:20, 7:21, 9:25, 19:11, 22:14, 23:2, 23:5, 23:6, 27:9, 27:10, 36:9

**significant** [3] - 28:18, 53:16, 54:15

**signing** [2] - 22:14, 23:7

**similar** [2] - 24:19, 43:4

**SIMON** [1] - 3:13

**simple** [1] - 19:3

**simply** [7] - 24:3, 27:4, 34:2, 40:6, 42:18, 43:15, 46:21

**Simply** [2] - 45:11, 49:4

**single** [1] - 49:14

**sit** [1] - 12:3

**site** [1] - 26:16

**sitting** [1] - 47:11

**situation** [16] - 11:5, 14:2, 28:3, 32:12, 35:3, 35:17, 42:3, 45:13, 46:14, 47:1, 47:9, 49:10, 49:14, 50:13, 50:15

**situations** [1] - 49:13

**six** [4] - 11:11, 12:9, 17:4, 51:22

**small** [3] - 10:19, 12:13, 12:14

**SMITH** [1] - 3:13

**Smith** [3] - 13:3, 13:7, 13:15

**Smith's** [1] - 14:3

**so-called** [1] - 22:16

**sometime** [1] - 14:15

somewhere [2] - 10:9, 14:11

**SONNENSCHEIN** [1] - 2:5

**sorry** [4] - 31:16, 34:22, 35:15, 47:13

**sort** [3] - 18:12, 30:5, 42:19

**Sort** [1] - 53:9

**sources** [1] - 48:19

**Southern** [1] - 45:12

**sovereign** [3] - 9:10, 25:18, 30:18

**SPEAKERS** [1] - 5:3

**specific** [1] - 43:22

**specifically** [4] - 17:10, 42:24, 51:8, 54:8

**specifies** [1] - 33:9

**spelled** [2] - 29:19, 54:8

**spend** [1] - 38:22

**split** [1] - 38:9

**STANDARD** [1] - 4:10

**standpoint** [8] - 19:9, 28:19, 45:15, 45:16, 47:4, 48:2, 49:8

**stands** [1] - 16:14

**STANWOOD** [1] - 1:13

**start** [6] - 11:8, 21:1, 32:7, 32:10, 32:11, 44:24

**State** [68] - 6:11, 6:22, 6:23, 7:7, 8:13, 8:25, 9:1, 9:11, 10:2, 10:16, 10:20, 12:10, 12:23, 13:14, 13:15, 14:2, 14:12, 14:20, 14:21, 14:25, 15:20, 15:24, 16:10, 17:5, 17:21, 18:15, 18:20, 18:21, 19:20, 19:21, 19:25, 21:4, 23:9, 23:12, 24:9, 25:4, 25:5, 25:6, 25:17, 26:7, 26:10, 26:15, 26:21, 27:13, 27:14, 28:4, 28:8, 29:4, 30:19, 30:21, 32:15, 32:17, 32:22, 33:6, 33:25, 34:3, 34:6, 35:22, 36:25, 37:8, 37:21, 38:11, 50:21, 51:9, 52:25

**state** [21] - 10:22, 10:23, 11:1, 11:2, 11:9, 11:25, 12:6, 18:4, 18:23, 19:2, 19:3, 19:4, 20:17, 21:15, 21:17, 22:7,

23:12, 30:23, 42:3, 53:11

**STATE** [6] - 1:9, 1:17, 1:19, 1:20, 2:9, 2:10

**State's** [10] - 8:6, 26:20, 27:4, 28:5, 29:9, 30:16, 32:19, 34:6, 37:19, 40:25

**states** [1] - 30:1

**STATES** [2] - 1:1, 1:13

**States** [3] - 9:17, 55:5, 55:15

**statute** [5] - 34:2, 34:15, 37:23, 42:10, 44:1

**statutes** [1] - 33:25

**statutory** [1] - 36:6

**stays** [1] - 30:3

**STENOGRAPHY** [1] - 4:23

**step** [3] - 24:1, 34:17, 34:18

**STERLING** [2] - 3:22, 3:23

**still** [22] - 9:6, 10:19, 12:4, 14:20, 14:21, 15:2, 16:18, 16:19, 17:6, 17:7, 17:13, 17:14, 20:3, 20:5, 21:8, 22:24, 23:2, 23:22, 26:2, 27:1, 27:2, 29:16

**STONE** [1] - 2:11

**storm** [1] - 13:18

**straightforward** [2] - 19:4, 44:19

**stranger** [1] - 48:15

**STREET** [8] - 1:24, 2:12, 2:16, 3:3, 3:15, 4:4, 4:14, 4:21

**strictly** [1] - 53:3

**strike** [3] - 15:6, 15:24, 16:15

**Strike** [4] - 15:16, 16:8, 16:23, 16:24

**strongest** [1] - 31:10, 31:12, 31:23, 31:24, 32:2, 32:8

**struck** [1] - 36:14

**sub** [1] - 51:15

**subject** [6] - 29:24, 36:19, 40:10, 42:13, 51:14

**submission** [1] - 54:13

**subrogate** [1] - 36:17

**subrogated** [1] - 35:2

**Subrogation** [7] - 7:20, 7:21, 10:15, 22:24, 30:22, 34:20,

36:19

**subrogation** [36] - 26:17, 33:7, 33:8, 33:9, 33:10, 33:11, 33:12, 33:14, 33:15, 33:16, 33:17, 34:1, 34:5, 34:7, 34:13, 34:15, 36:4, 36:8, 36:11, 36:12, 36:13, 36:23, 37:2, 37:5, 37:7, 37:16, 41:4, 45:4, 45:6, 49:1, 49:21, 49:22, 49:24, 50:1, 53:8, 53:10

**Subrogation/ Assignment** [2] - 10:1, 44:25

**Subsection** [1] - 34:20

**subsection** [2] - 45:8, 49:8

**subsequent** [1] - 29:21

**substantial** [1] - 12:15

**successful** [1] - 20:8

**successor** [1] - 35:18

**sued** [2] - 8:11, 8:13

**suggest** [1] - 18:13

**suggested** [1] - 39:7

**suggestion** [2] - 25:6, 29:3

**suing** [1] - 15:9

**suit** [15] - 7:24, 12:23, 13:12, 13:14, 14:21, 14:22, 15:1, 17:13, 17:14, 18:16, 27:10, 28:14, 28:15, 42:15

**SUITE** [6] - 2:16, 3:3, 3:9, 3:24, 4:4, 4:14

**suits** [1] - 28:16

**supplemental** [1] - 10:25

**support** [2] - 36:22, 40:12

**supposed** [1] - 24:23

**Supreme** [4] - 43:16, 43:17, 51:13, 51:21

**suspended** [1] - 42:7

**suspension** [6] - 42:11, 42:13, 42:20, 42:24, 44:2, 44:6

**T**

**tantamount** [2] - 33:14, 37:2

**task** [1] - 7:14

**Taylor** [6] - 41:18, 50:9, 50:18, 52:1

**tee** [1] - 11:12

**teeing** [1] - 11:8

**terms** [1] - 26:22

**terribly** [1] - 40:11

**testifying** [1] - 13:16

**testimony** [1] - 47:18

**THE** [102] - 1:13, 1:17, 1:18, 1:19, 1:20, 2:24, 2:25, 3:7, 5:13, 6:7, 6:8, 6:9, 6:15, 7:3, 7:8, 8:15, 8:18, 8:22, 8:24, 9:4, 9:12, 11:17, 11:21, 12:7, 12:14, 12:17, 12:20, 13:11, 14:18, 15:1, 15:11, 15:14, 15:23, 16:3, 16:6, 16:14, 17:12, 18:8, 19:5, 19:18, 20:12, 20:18, 20:20, 21:6, 22:15, 22:21, 22:23, 23:8, 24:2, 24:7, 24:11, 25:20, 26:20, 28:9, 29:14, 30:13, 30:25, 31:6, 31:8, 31:14, 31:17, 31:22, 32:1, 32:5, 32:11, 33:8, 33:12, 34:12, 34:16, 34:19, 35:24, 36:14, 37:18, 38:22, 39:20, 39:22, 40:2, 41:5, 41:15, 41:18, 41:25, 44:12, 45:10, 46:2, 47:3, 47:13, 48:17, 48:24, 49:25, 50:7, 51:1, 51:19, 51:23, 52:2, 52:5, 52:11, 53:9, 53:16, 53:20, 54:6, 54:10, 54:12

**themselves** [1] - 38:17

**thereabouts** [1] - 33:18

**therefore** [3] - 29:5, 43:24, 49:22

**Therefore** [3] - 17:18, 49:16, 51:13

**they've** [4] - 6:25, 18:3, 25:6, 47:15

**They've** [1] - 46:13

**third** [2] - 36:17, 52:25

**THIRD** [2] - 1:24, 2:16

**third-party** [1] - 52:25

**THOMAS** [1] - 3:14

**thorough** [1] - 33:23

**thousand** [1] - 7:25

**THREE** [1] - 3:9

**Three** [1] - 46:19

**three** [2] - 17:15, 30:13

**threshold** [1] - 34:9

**THROUGH** [1] - 1:18

**TO** [2] - 1:9, 6:4
**today** [12] - 6:16, 8:10, 9:22, 10:3, 10:21, 11:17, 11:22, 12:4, 13:3, 17:25, 32:10, 53:24
**tolled** [2] - 50:17, 51:7
**tolling** [7] - 41:21, 42:2, 42:3, 50:9, 50:13, 50:19, 51:18
**tomorrow** [1] - 38:6
**top** [1] - 11:11
**total** [2] - 13:4, 39:18
**touch** [1] - 38:20
**touched** [1] - 38:8
**TOWER** [1] - 2:6
**transactions** [1] - 42:6
**TRANSCRIPT** [2] - 1:12, 4:23
**transcript** [1] - 55:7
**transfer** [3] - 19:11, 32:3, 46:21
**transferred** [2] - 17:5, 18:4
**tree** [1] - 13:18
**TREY** [1] - 1:24
**tried** [4] - 18:5, 18:25, 33:6, 50:11
**triple** [1] - 46:16
**true** [1] - 55:7
**try** [5] - 11:7, 20:5, 32:23, 54:15, 54:17
**trying** [6] - 10:11, 12:21, 20:4, 21:20, 29:6, 38:9
**TUESDAY** [1] - 1:8
**Two** [1] - 48:5
**two** [7] - 6:12, 10:6, 25:23, 30:13, 38:13, 45:6, 53:22
**Twombly** [7] - 38:20, 38:23, 38:25, 39:2, 39:22, 40:22
**type** [2] - 11:5, 49:20

---

**U**

**U.S.C** [1] - 33:25
**ultimately** [1] - 27:22
**umbrella** [3] - 8:9, 9:2, 15:12
**under** [18] - 12:18, 14:8, 23:23, 23:24, 28:3, 29:11, 30:1, 30:18, 30:20, 31:19, 37:2, 38:3, 39:8, 39:19, 43:1, 45:8, 52:1, 54:13
**Under** [4] - 8:7, 23:12,

25:9, 29:10
**underpaid** [1] - 40:10
**understood** [1] - 45:22
**unfair** [1] - 48:14
**unfortunately** [2] - 48:18, 51:25
**uninsured** [1] - 37:14
**UNITED** [3] - 1:1, 1:13, 2:20
**United** [4] - 9:17, 41:18, 55:5, 55:15
**unless** [4] - 28:14, 29:25, 41:3, 41:9
**UNUM** [1] - 43:2
**up** [25] - 6:25, 7:1, 7:4, 7:8, 7:17, 11:8, 11:12, 11:19, 12:4, 14:24, 21:7, 22:14, 24:17, 25:11, 27:9, 27:10, 27:14, 31:2, 38:13, 45:17, 46:24, 50:5, 54:17
**urged** [1] - 15:4
**urging** [1] - 53:6
**USAA** [3] - 2:22, 2:23
**uses** [1] - 35:6

---

**V**

**vague** [2] - 47:11, 48:7
**vagueness** [2] - 45:19, 54:9
**valid** [2] - 38:16, 39:2
**validity** [1] - 21:4
**Valued** [1] - 39:13
**various** [1] - 31:13
**Vaught** [1] - 42:1
**vehicle** [1] - 47:19
**versus** [1] - 11:16
**viable** [1] - 21:4
**view** [1] - 32:2
**Vioxx** [1] - 42:1
**virtue** [2] - 20:7, 30:2
**Vis** [2] - 51:19, 51:20
**vis** [2] - 51:19, 51:20
**Vis-a-vis** [2] - 51:19, 51:20
**VOYAGER** [2] - 4:11, 4:12
**VPL** [3] - 39:19, 40:2, 40:6

---

**W**

**wait** [1] - 17:15
**WALTHER** [1] - 2:11
**water** [1] - 39:8

---

**WAYNE** [1] - 2:11
**Wayne** [1] - 6:22
**ways** [2] - 38:13, 38:14
**weak** [1] - 31:23
**weekend** [1] - 54:19
**WEINSTOCK** [1] - 3:8
**Westlaw** [1] - 51:5
**WHEATON** [1] - 3:2
**WHEREUPON** [1] - 54:20
**whole** [3] - 17:23, 21:24, 33:3
**win** [2] - 32:21, 33:15
**wind** [1] - 13:20
**WITTMANN** [1] - 2:11
**wondering** [3] - 7:24, 13:11, 22:6
**word** [1] - 47:3
**words** [1] - 39:1
**world** [2] - 7:25, 46:17
**worry** [1] - 41:22
**worth** [2] - 14:3, 32:9
**wrapped** [2] - 12:4, 14:24

---

**Y**

**year** [3] - 41:2, 46:19, 46:25
**years** [3] - 10:6, 46:19, 47:15
**yesterday** [1] - 38:5

---

**Z**

**Zainey** [1] - 24:17
**ZC** [2] - 3:22, 3:22
**ZWAIN** [1] - 3:7

---

**"**

**"BUDDY"** [1] - 1:18