UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, Robinson, No. 06-2268 | § | |
| _____ | § | |

DEFENDANT UNITED STATES' MEMORANDUM
IN SUPPORT OF MOTION TO RECONSIDER

The United States moves the Court to reconsider its Order granting Plaintiffs' Motion to Compel Discovery and requiring that "[a]ll materials upon which defendants' experts relied in preparing their reports or crafting their opinions must be produced to plaintiffs no later than February 27, 2009." R.D. 17816 (emphasis in original) .

The United States requests reconsideration, for four reasons.  First, the production deadline cannot be met.  As set forth more fully below and in the attached declarations of Joannes J. Westerink and Camille Henry, the data relied on by the United States' experts cannot be produced in a week's time because the volume of data is extraordinarily large: about 783 gigabytes, the equivalent of nearly 47 million pages of information.  Downloading and processing the data will require at least three weeks, if not more.

Second, more time for production is appropriate because the practice of the plaintiffs has been to produce only those reliance materials specifically requested by the United States. When Plaintiffs disclosed their experts' reports on July 14, 2008, they did not disclose all of the data and other information considered by their experts. Indeed, in the more than seven months since that Court-imposed deadline they have continued their practice of requiring the defendant to specifically identify reliance data and information before producing it. As of the present date, the plaintiffs have not yet fully disclosed even those specifically requested data and information despite repeated requests by Defendant. The United States' conduct, which the Order describes as "dilatory," was consistent with the pattern and practice established by the plaintiffs during the five months prior to the deadline for disclosing the defendant's expert reports.

Third, the parties' prior practice of producing only the reliance data and information specifically requested casts doubt upon the utility of disclosing "all" materials" generated by the experts. The shear volume of data—cumulatively the equivalent of hundreds of millions of pages of information—demonstrates the probability that neither party has the time or the resources to review "all materials" even if they were to be produced. The surpassing difficulty and expense attendant to even processing and storing data on the scale that this case uniquely presents was demonstrated by the Katrina litigants' request for relief from the CMO requirement that a joint repository be established. In the parties' estimation, the costs of storing and maintaining the data were greater than the benefits to be realized, and the Court acceded to the parties' wishes. To the knowledge of Defendant's counsel, no party

2

involved in the Katrina litigation has gone to the expense of processing and reviewing all of the data and other information that the United States has been continuously producing for nearly three years and, indeed, continues to produce.

Fourth and finally, reconsideration should occur because the plaintiffs obtained a favorable ruling on their motion by falsely describing their own conduct.  In their briefs, they unequivocally stated that "Plaintiffs complied with every request" from Defendant for reliance material.  Plt. Reply to Def. Opp. to Plt. Mot. to Compel (R.D. 17827) at 5.  Plaintiffs have not provided all reliance material specifically requested, much less "all materials" on which their experts relied.  Plaintiffs also falsely asserted that "[t]he defendant instigated this dispute by cavalierly disregarding" the Court's orders governing production of expert materials.  R.D. 17542-2 (Plt. Mem.) at 4.  Plaintiffs' patent misrepresentation of their own conduct and the defendant's conduct necessitates a reconsideration of the Court's ruling on Plaintiffs' motion.

At a minimum, the February 27 deadline should be reset to a later date, and in light of the plaintiffs' own extremely dilatory and contumacious conduct, the requirement that all reliance materials must be produced should also be reconsidered.

I. THE EXISTING DEADLINE FOR PRODUCTION CANNOT BE MET BECAUSE DOWNLOADING AND PROCESSING THE DATA FOR PRODUCTION WILL REQUIRE AT LEAST THREE WEEKS.

The materials on which the United States' experts relied cannot be produced in their entirety by February 27, 2009, because downloading and processing 783 gigabytes of data require at least three weeks and will require more if the resources necessary for downloading and processing are not immediately available.  The United States expects to be able to

produce the reliance materials of all but one of its experts on February 27. The computer files relied on by University of Notre Dame Professor Joannes J. Westerink cannot be produced by that date because they are too voluminous. The procedures that necessarily must precede production of the Westerink files are described in the declarations of Joannes J. Westerink and Camille Henry, which are attached as Exhibits 4 and 5. The United States notified the Plaintiffs on February 17, 2009, that it was trying to respond to their request for "all of the information and data that was used to set up [Dr. Westerink's] models. All input and output files." See Exh. 3. The United States informed the Plaintiffs that the requested information was exceedingly voluminous and provided a brief description of the size and difficulty of downloading the materials. Because of this, the United States asked the Plaintiffs to tailor their request so that the data would get to them faster and not include unnecessary data. See Exh. 3. The Plaintiffs did not respond to this request.

The Court's Order requires the production of all of the Westerink data. Downloading of this data will require at least one to two weeks under optimal conditions.[1] See Westerink Decl. (Exh. 4) ¶¶ 3-25. After downloading is complete, then an additional five days will be required to process the data before it is ready to be produced to the plaintiffs. See Henry Decl. (Exh. 5) ¶ 5. Access to the computers that are required for downloading this volume of data cannot be assured because they must also be used for other urgent matters. See

---

[1] This one-to-two-week period does not take into consideration the time required for non-Army Corps of Engineers ("Corps") personnel to gain permission to access and download the ESI from the Corps computers.

Westerink Decl. ¶¶ 24, 25.  For these reasons, the deadline for production should be moved to March 23, 2009.

II.  IN KEEPING WITH THE PRACTICE AND PATTERN ESTABLISHED BY THE PLAINTIFFS, DEFENDANT'S EXPERT RELIANCE MATERIALS WERE NOT DOWNLOADED AND PROCESSED FOR PRODUCTION PRIOR TO THE COURT'S ORDER.

In spite of Case Management Orders requiring that they comply with Rule 26(a)(2)(B) by disclosing all of "the data or other information considered by the[ir] [expert] witness[es] in forming" their opinions, see CMO No. 4 (Doc. 3299) at 37; Revised Robinson CMO No. 1 (Doc. 3603) at 5; cf. Min. Entry (Doc. 13438) at 3 (requiring production of "Computer Generated Evidence" with expert reports); Instant Order (R.D. 17816) at 1 (CMOs required compliance with Fed. R. Civ. P. 26(a)(2)(B)), the plaintiffs' expert reports that were produced on July 14, 2008, did not contain the requisite data and information, see Exh. 1 (Smith Decl.) ¶ 3.  Defendant promptly requested that Plaintiffs produce their experts' reliance materials.  See id. ¶¶ 4, 6.  Despite these requests and numerous additional requests during the following weeks and months, Plaintiffs failed to produce all of their experts' reliance materials or even all of the reliance materials specifically identified by Defendant.  See id. ¶¶ 4-15; Exhs. 2, 6, 7 (emails repeatedly requesting plaintiffs' experts' reliance materials).

Because of the plaintiffs' practice of producing only reliance materials specifically requested by the United States—a practice that became a pattern over the five months between the production of the plaintiffs' reports in July of 2008 and the deadline for production of the defendant's reports in December—the United States advised the plaintiffs that it would do as the plaintiffs themselves had done in producing expert reliance materials.

See U.S. Notice of Production (R.D. 16833) at 1.  The United States then diligently did just as it had promised to do, producing requested reliance documents as quickly as possible.  See Def. Opp. to Plt. Mot. to Compel (R.D. 17701) at 3-7.

Consistent with the parties' past practice, the computer-generated evidence of the United States' experts had not been processed for production prior to the Court's order.  Consequently, the pre-production processing that is described above should reasonably be taken into account in setting a deadline for production of this material.

III.  PRODUCING ALL DATA RELIED ON BY THE PARTIES' EXPERTS WILL NOT BENEFIT THE PARTIES.

Perhaps the most daunting aspect of this litigation has been searching for the needles in the haystacks of data and other information relevant to the litigation.  The parties are already buried in more documents and data than they can ever possibly review.  Wholesale production of an overwhelming quantity of data creates the very problems that the parties were trying to avoid by tacitly agreeing to request only the information needed by the parties and their experts.  As of mid-February, when the most recent accounting occurred, 1,668,185 images of hard copy pages had been produced in addition to 15.2 terabytes of electronically stored information (ESI).  The ESI volume equates to approximately 912,000,000 pages using the industry equivalency standard of 60,000 pages per gigabyte.  It is possible that the total production by the United States will surpass the equivalent of one billion pages.

Producing all reliance materials indiscriminately will cause unnecessary additional expense, wasted time, and poor use of manpower.  The parties' prior practice reflects the

reality: the surge and wave modeling (by each party's experts) can be analyzed by examining representative files. Producing every file does nothing more than furnish the repetitive details of a computer analysis and results in a production so voluminous as to exceed the capability of human examination and analysis.[2]

The ESI relied on by the United States' surge modelers consists of about 783 gigabytes, which, though a fraction of the total prior production, is nonetheless more data than can be humanly reviewed. See Westerink Decl. ¶ 15. Since the entry of the Court's order, Plaintiffs have informed Defendant that they do not want all of this data. Smith Decl. ¶ 19 at Exh. 1. Likewise, the United States is willing to accept less than all of the data relied on by the plaintiffs' experts if it can be relieved of the obligation imposed by the Court's order. What is needed is an order compelling prompt production of any expert reliance data or other information requested by the opposing party. Such an order would ensure that the parties are not unduly hampered in their preparation for trial.

IV. PLAINTIFFS' PIECEMEAL PRODUCTION OF THEIR EXPERTS' RELIANCE MATERIALS—SOME, NOT ALL OF THOSE MATERIALS— AND PLAINTIFFS' BALD MISREPRESENTATION OF THEIR OWN CONDUCT NECESSITATE RECONSIDERATION.

Plaintiffs have violated the CMOs governing production of information and data considered by experts. See Revised Robinson C.M.O. No.1 (R.D. 3408) at 5 (setting date when "Plaintiffs' Expert Reports Due including Computer Generated Evidence"); Min. Entry

---

[2]If all data are produced, either party foreseeably could complain of a "data dump" after receiving the other party's files. The Plaintiffs have previously accused the United States of providing an "unindexed 'data dump' of information as a Rule 26 disclosure." See Plaintiffs' Rule To Show Cause Why The United States Of America Should Not Be Ordered To Participate In Good Faith To Complete Discovery at 2 (R.D. 13402-2).

(R.D. 13438) at 3 (same); cf. C.M.O. No. 4 (R.D. 3299) at 37 ("All reports of expert witnesses concerning common liability issues must comply fully with the requirements of Fed. R. Civ. P. 26(a)(2)(B)."). Despite these orders, the plaintiffs did not disclose all of their experts' computer generated evidence when they disclosed their experts' reports on July 14, 2008. Exh. 1 (Smith Decl. ¶ 3); see also Exhs. 2, 6, 7 (emails from July to Oct. 2008 in which plaintiffs transmit or promise to later transmit their experts' reliance materials). In the more than seven months that have elapsed since the court-ordered deadline for the disclosure of the reliance materials of the plaintiffs' experts, Plaintiffs have only provided information responsive to specific requests. See Exhs. 2, 6, 7 (emails). Indeed, the Plaintiffs have not even provided all of the reliance materials specifically requested. Exh. 1 (Smith Decl.) ¶ 20. It is demonstrably untrue that they "have complied with every request."[3] Pls. Reply at 5 (R.D. Rec. No. 17827).

On September 4, 2008, the United States transmitted the following request to the plaintiffs regarding their experts:

> [W]e are requesting specifically that they provide all of the information and data that was used to set up their models. This is the information that scientists necessarily provide when they publish studies because it allows other scientists to replicate the experiments and confirm or disconfirm the authors' conclusions.

---

[3] See Memorandum in Support of United States' Motion to Compel Production of Plaintiffs' Experts' Reliance Materials filed with the Court today for a more complete list of Plaintiffs' expert reliance materials not provided to the United States. R.D. Rec. No. 17913.

Exh. 6 (Smith email to Bruno).  To date, the plaintiffs have not fully complied with this request, which was made more than six months ago.  Plaintiffs' cavalier attitude toward their own duty to disclose their expert reliance materials is demonstrated in an October 2008 email instructing counsel for the defendant to "[c]hill out" and wait patiently for the plaintiffs' to make their disclosures.  See Exh. 7 (Bruno email to Smith), at 1.

In January and February of 2009, the plaintiffs disclosed additional reports by their experts and made partial disclosure of data and other information considered by their experts in forming their opinions.  The following examples are illustrative:

1. During the February 3, 2009, deposition of John Crawford, Mr. Crawford produced several photographs that he relied on in drafting his expert opinion, but did not include these in his expert report.  See Exh. 8  (Crawford Dep. at 88:11-20, 96:20-97:11, 154:20 to155:15).

2. During the January 29, 2009, deposition of Gary Shaffer, Mr. Shaffer produced materials that he relied on in drafting his expert report.  See Exh. 9. (Shaffer Dep. at 10:15 to 14:18-20).

3. During the January 15, 2009, deposition of Paul Kemp, Mr. Kemp produced photographic material that he relied on in drafting his expert report.  See Exh. 10 (Kemp. Dep. at 66:6 to 67:22, 300:24 to 305:1).

Despite the plaintiffs' own unilateral establishment of a practice and pattern of providing only expert reliance materials specifically requested by the defendant, the plaintiffs falsely accused the United States of misleading the Court and engaging in "gamesmanship" in order to "skirt its discovery obligations."  Plt. Reply to Def. Opp. to Plt. Mot. to Compel (R.D.

9

17827) at 4.  Further, they falsely claimed to have complied with every request" from Defendant for reliance material.  Id. at 5; see also Exh. 1 (Smith Decl.) ¶ 20.  The use of these misrepresentations to obtain a favorable ruling on their motion necessitates reconsideration in light of the truth about plaintiffs' conduct.

## CONCLUSION

For these reasons, the Court should reconsider its Order compelling the United States to produce all of its experts' reliance materials by February 27, 2009.

Respectfully submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

ROBIN DOYLE SMITH
Senior Trial Counsel, Torts Branch

 s/ James F. McConnon, Jr.
JAMES F. McCONNON, JR.
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4400/ (202) 616-5200 (Fax)
Attorneys for the United States

CERTIFICATE OF SERVICE

I, James F. McConnon, Jr., hereby certify that on February 26, 2009, I served a true copy of the Defendant United States' Motion to Reconsider upon all parties by ECF.

s/ James F. McConnon, Jr.<br>JAMES F. McCONNON, JR.