# EXHIBIT 8

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES      CIVIL ACTION

CONSOLIDATED LITIGATION            NO. 05-4182 K2

                                   JUDGE DUVAL

PERTAINS TO:  ROBINSON (No. 06-2268)


      Deposition of JOHN CRAWFORD, given at the Law Offices of Joseph M. Bruno, 855 Baronne Street, New Orleans, Louisiana 70113, on February 3rd, 2009.


REPORTED BY:

      JOSEPH A. FAIRBANKS, JR., CCR, RPR

      CERTIFIED COURT REPORTER #75005

1  those different numbers?
2     A.   Yes.
3     Q.   How are they different?  And I'm not
4  trying to be cute.  I mean, I know that one
5  you're talking about the ground elevation
6  compared to the fence and the other one is the
7  elevations at the house.  So does that explain
8  a difference?
9     A.   Yes.
10    Q.   Okay.
11    A.   The elevation of the slab is different
12 than the elevation of the ground.  And also in
13 this case I relied on photographs provided to
14 me by the, um -- homeowners to render that
15 opinion of five or six feet.
16    Q.   Do you reference the photographs in
17 your report?
18    A.   No.
19    Q.   Why not?
20    A.   Its an oversight.
21    Q.   Are there any other oversights that
22 you've become aware of since the time you
23 submitted this report prior to today?
24    A.   No.  Not that -- no, not that I'm
25 aware of.  I mean, an oversight, when you're

```
 1        Q.   We're talking about the Franz
 2   property, right?
 3        A.   Yes.
 4        Q.   Okay.  And we've been talking about
 5   the -- we've been using the term basement.  And
 6   what we were referring to, I think, is the
 7   first floor of the property.  All right,
 8   there's an entrance to that level as well as to
 9   the second floor which you consider the main
10   level; is that right?
11        A.   Correct.  We can call that the second
12   story if you'd like.
13        Q.   So, but either way, the water in your
14   opinion was all the way filling the first level
15   which we've previously referred to as the
16   basement and then the first few inches up to
17   about a foot or so of the second level which
18   was the main level of the house.
19        A.   Correct.
20        Q.   Okay.  Do you have any photographs
21   pertaining to this property?
22        A.   Yes.
23        Q.   Did you include them in your report?
24        A.   No.
25        Q.   Why not?
```

1      A.   Um -- I didn't need to.  In this case
2   I reviewed the photographs and the house was
3   pretty much in the same condition as it was
4   post-Katrina.
5      Q.   Well, did you consider these
6   photographs in forming your opinions?
7      A.   Oh, yes.  Yes.  I mean, I looked to
8   make sure that -- I looked at the photographs
9   and saw that there was flood elevations that
10  were corroborating my elevation and what I
11  found, and they were consistent with it.
12     Q.   Right.  Well, you considered them so
13  they should have been included in your report.
14     A.   They should have been.  It was an
15  oversight.
16     Q.   All right.  Now you want to take a
17  look?
18     A.   Yes.
19     Q.   I'll mark these as composite 6A.  6A,
20  these are the photographs that Mr. Andry sent
21  to you?
22          (EXHIBIT 6A was marked for
23  identification and is attached hereto.)
24     A.   Yes.
25  EXAMINATION BY MR. EHRLICH:

JOHN CRAWFORD                                    February 3, 2009

Page 96

```
 1      Q.   First, this Exhibit 3B you just said
 2   was provided to you by Mr. Andry.
 3      A.   Uh-huh.
 4      Q.   Did you --
 5      A.   Sorry, yes.
 6      Q.   Did you look at this in the process of
 7   preparing your report?
 8      A.   Yes.
 9      Q.   Earlier I asked you whether counsel
10   assisted in the preparation of your report, and
11   you said no.  Is that correct?
12           MR. ANDRY:
13                Object to the form of the
14                question.
15      A.   Let's look at semantics here.  When
16   you say assisted, I see assisted as someone
17   sitting next to me helping me.  He provided
18   information.
19   EXAMINATION BY MR. EHRLICH:
20      Q.   Okay.  What information did he
21   provide?
22      A.   Photographs and the Scott Taylor
23   report.
24      Q.   Okay.  And why was this photograph not
25   included in your report?
```

1    A.   It was an oversight.

2    Q.   How many other photographs that
3  pertain to the Robinson residence did Mr. Andry
4  provide to you?

5    A.   I think they're -- I don't know if
6  this is in their file documentation, but these
7  photographs as well.

8    Q.   Did you examine all of these in the
9  course of preparing your Robinson report?

10   A.   Yes.  This one is the most important
11  to me.

12   Q.   Why is that?

13   A.   Because it describes exactly what I've
14  been trying to describe to you guys and clarify
15  about fact versus guessing and water elevation
16  discernment in what I do.  If you look, in this
17  photograph, I don't know if you want to put it
18  in front of the camera, but you can see -- all
19  right, a resting elevation right here.  This
20  shows me that water rested at this elevation,
21  which is approximately three quarters up a door
22  height from the floor of a slab foundation.

23   Q.   I tell you what, you want to mark --
24  put little note, resting elevation?

25   A.   Absolutely.  If you hand me a pen I'd