UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO.: 05-4182<br><br>SECTION "K" (2) |

FILED IN:   05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,
05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,
06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346,
06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,
06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647,
07-0993, 07-1284, 07-1286, 07-1288, 07-1289

PERTAINS TO: LEVEE

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF THE PUBLIC BELT RAILROAD COMMISSION FOR THE CITY OF NEW ORLEANS

Defendant, the Public Belt Railroad Commission for the City of New Orleans ("PBR"), has moved this Honorable Court for summary judgment in its favor, dismissing all claims against it herein, on the ground that there is no genuine issue as to any material fact and PBR is therefore entitled to a judgment as a matter of law in its favor and dismissing all claims against it with prejudice.

As this Court is well aware, summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to

judgment as a matter of law. *Condrey v. Sun Trust Bank of Georgia*, 429 F.3rd 556, 562 (5th Cir. 2005), *citing DIRECTV, INC. v. Budden*, 420 F.3rd 521, 529 (5th Cir. 2005), cited with approval in *In Re: Katrina Canal Breaches Consolidated Litigation,* Civil Action No. 05-4182 (pertaining to MRGO), Document No. 16723, filed 12/15/2008, at page 27.

I.

## THE CONTEXT OF THIS MOTION

The Superseding Master Consolidated Class Action Complaint (the "Master Complaint"), Doc. No. 3420, names the PBR as a defendant. *Id.*, ¶ 4(s). Its claims against PBR arise solely from a September 11, 2004 train derailment that allegedly caused damage to Floodgate W-30 near the western sea wall of the Industrial Canal. Master Complaint, ¶s 132 – 133, and 253 – 257. The Master Complaint does not allege any negligence or other fault of the Public Belt in causing the train derailment. It states only that "a New Orleans Public Belt Train derailment caused a thirty-two and a half foot wide gap in Floodgate W-30 . . ." *Id.* ¶ 256. The plaintiffs correctly allege that co-defendant, The Board of Commissioners of the Orleans Levee District ("OLD"), "had care, custody and control of the entire New Orleans levee and flood wall system at all times pertinent herein, . . ." Master Complaint, ¶ 270. The Plaintiffs have not alleged that PBR ever had care, custody, control or *garde* of any portion of any flood control system, including, but not limited to, Floodgate W-30.

Those claims against PBR were addressed by this Honorable Court on PBR's Motion to Dismiss previously filed herein pursuant to F.R.C.P. Rule 12(b)(6) (Doc. 3609). Its Order and Opinion entered on that Motion (Doc. 9858, attached hereto as Exhibit "A") addressed the principal issues in the case. There, the Court concluded:

> There is no legal basis for concluding that the Louisiana Supreme Court, if confronted with this question, would impose on the PBR a general duty to protect the plaintiffs from the hazard of flooding. Thus, the motion to dismiss is granted to the extent plaintiffs allege that PBR owed plaintiffs a general duty to protect them from flooding.
>
> Opinion, Exh. "A" attached, p. 6

On the second issue raised in the Motion, the Court held:

> The PBR had no duty to repair the damaged floodgate.
>
> * * *
>
> > In fact, the complaint specifically acknowledges that an entity other than the PBR [OLD] had care, custody, control and *garde* over the floodgates within the flood protection system and acknowledged that PBR paid the Orleans Levee District the full estimated cost to reconstruct the damaged floodgate. Therefore the motion to dismiss is granted to the extent that the plaintiffs seek to allege that the PBR had a duty to repair the damaged floodgate.
>
> Opinion Exh. "A," attached, p. 6-7.

PBR's motion to dismiss also addressed a third, and final, aspect of the plaintiffs' claim by pointing out that, even if PBR were negligent in a manner that caused damage to the floodgate, that negligence could not have been a legal cause of plaintiffs' damages because it was superseded by the independent, intervening negligence of OLD, in failing to repair or replace the floodgate in the eleven months between that accident and the time that Hurricane Katrina made landfall in the New Orleans area.

The Court left that issue for decision on another day. Its Opinion noted that there was no evidence before it, at that time, to show that "the repair was not made in a reasonable or timely manner". Opinion, Exh. " A," attached, p. 8.

Since then, PBR has been able to establish the undisputed, and indisputable, material fact that the repairs to the floodgate structure at issue could and should have been completed within the eleven month period at issue.

As demonstrated by the Affidavit of Wayne D. Wands, Exhibit "B," hereto, the work of repairing the damage at issue was not a large or complex project, and it did not involve unique or unusual undertakings, materials or techniques. It did not present unique unusual design problems. As Mr. Wands has opined, such a construction project could have been, and should have been bid, let, begun and completed prior to Hurricane Katrina making landfall in the New Orleans area.

## II.

## THE AFFIDAVIT OF WAYNE D. WANDS

Mr. Wands, is a graduate of Tulane University with a Bachelor of Science degree in Physics. He was employed by Boh Brothers Construction Company, L.L.C. ("Boh Bros.") from September 1970 until his retirement in May, 2008. From October, 1979 to May, 2008, a period of almost 30 years, he was employed by Boh Bros. as a Project Manager and worked in the construction industry in the metropolitan New Orleans area, where he became familiar with a broad range of public and private construction projects.

As a Project Manager, he was responsible for the estimating and project management of concrete, earthwork, structural steel, railroad and bridge repair projects, including planning, scheduling, purchasing and administration. In that capacity, he worked on dozens of public and private construction projects involving work of a size and scope approximating the project involving the repairs to Floodgate W-30 ("Floodgate") which is at issue in these proceedings. He is familiar with the steps necessary and the time required to issue and put out for bid the plans and specifications of such a project, to contract for such a project, and to mobilize and execute such a project. He participated in this process on many occasions throughout his employment. *See* Exh. "B," Paras. 2-5.

His affidavit is based on his extensive occupational experience in the construction industry in the New Orleans area and on a review of the construction documents relating to this project, including the scope of services prepared by Design Engineering Inc., the Contract Documents and Specifications prepared by Design Engineering Inc. and the As-Built Drawings relating to the completed project. Exh. "B," Par. 6.

His affidavit establishes that the damage at issue required the replacement of a damaged concrete monolith which supported the floodgate structure and the steel beam that the gate rolled on. *See* Exh. "B," Par. 7.[1] The project did not require the replacement of the floodgate itself. Id.. It did not involved unique or unusual construction methods, materials or designs. It was not a large construction project. It did not impose unusual procurement or mobilization problems. Exh. "B," Par. 8. Once the contract was awarded, mobilization occurred within approximately

---

[1] The Court will note that some paragraphs of the affidavit are hand-numbered. As this motion was prepared for filing, undersigned counsel noticed that the paragraphs had been mis-numbered and the numbering was hand-corrected. It was a non-substantive change made necessary by the oversight that there were two paragraphs 8 (now designated as paragraphs 8 and 8(a).

two weeks of the giving of notice to proceed. Exh. "B," Par. 8(a). The contract for this project called for a completion date within ninety days of the commencement of work. The work could and should have been completed within that time frame. Exh. "B," Par. 9.

But the project was not expeditiously begun. Such projects can be, and regularly are, designed, bid and awarded in much less than the time consumed by those phases of this project. Exh. "B," Par. 10. Thus, this project proceeded at a pace that was much slower than standard industry practice in this business community. Exh. "B," Par. 11. Had the work proceeded at a reasonable pace, it could and should have been completed by the time Katrina made landfall. *Id.*

### III.

### THE TRAIN DERAILMENT WAS NOT THE PROXIMATE CAUSE OF THE PLAINTIFFS' FLOOD DAMAGE

The train derailment at issue occurred on September 11, 2004. Katrina made landfall on August 29, 2005, eleven and a half months later. Any arguable chain of causation was broken by the delay which was an independent intervening breach of duty on the part of OLD to repair its floodgate within the long time span available.

There are two aspects to the analysis of causation in Louisiana. In order to give rise to a right of recovery, an act must be **both** a cause-in-fact of an injury[2] **and** a legally sufficient cause. *Perkins v. Entergy Corp.*, 2000-1372 (La. 3/23/01) 782 So. 2d 606, 611 and authorities cited therein. If either one of these requirements is not met, there is no liability. *Lemann v. Essen Lane Daiquiris*, 2005-1095 (La. 3/10/06) 923 So. 2d 627, 633 (chain of legal causation in case against EMS personnel called to the scene of a fistfight, for the subsequent death of an injured man who appeared to be in full possession of his faculties, was broken by the injured man's exercise of his legal right to refuse EMS assistance).

---

[2] PBR hastens to point out that the case against it is much weaker than the instant motion can convey. This motion focuses on the fact that there is an independent intervening event – the failure of OLD to timely and expeditiously repair the damaged floodgate mechanism – which can be shown, simply and unambiguously, to cut off PBR's responsibility. The instant motion does not address an over-riding question of whether Floodgate W-30 could have held back the storm surge and thereby prevented the flooding that wreaked havoc on this community. PBR believes that it would not have done so and that the damage to floodgate W-30 was no more a cause of the flood losses at issue than leaving a gate open in the walls of Pompeii would have been a cause of the destruction of that unfortunate city. But that issue need not be addressed here.

The initial determination is cause-in-fact, which is usually a "but for" issue of whether, as a matter of fact to be determined by the fact-finder, the loss would have been sustained but for the defendant's conduct. *Id.* at 611-612. In order for this requisite to be met, it must appear that the defendant's conduct was a substantial factor in bringing about the harm alleged. *Id.* The question is whether "the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm." *Id.*, citing with approval *LeJeune v. Allstate Ins. Co.*, 365 So. 2d 471, 475 (La. 1978). PBR submits that the natural course of its conduct did not persist up to the time of the harm because there was ample opportunity, as a matter of fact, for OLD to repair the damage.

The second element of the analysis, legal cause, presents a purely legal question. *Todd v. State*, 96-3090 (La. 9/9/97), 699 So. 2d 35, 39; *see also, Pickett v. RTS Helicopter*, 128 F.3d 925, 929 (5th Cir. 1997) ("Although [defendant] PSC may have established a prerequisite to the eventual injury by designing a seat belt that *could* be misassembled, PSC did not proximately cause the injury because, <u>as a matter of law</u>, the *actual* misassembly sufficiently intervened to break the causal chain." Italicized emphasis in original; underlined emphasis added). The Court must also determine whether, as a matter of law, the September 11, 2004 train derailment was a legal cause of the plaintiffs' flooding. PBR submits that it was not.

In *Sutton v. Duplessis*, 584 So. 2d 362 (La. App. 4th Cir. 1992), the Court defined legal, or proximate, cause as "any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* at 365; citations omitted. The *Sutton* Court stated that when an accident results from two negligent acts, "one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause." *Id.* at 365-66; citations omitted. The second negligent act, by definition, is a breach of an independent legal duty.

In *Sutton*, the Court of Appeal reversed a trial court judgment which found a mother to be at fault when her six year old son ran into the street and was struck by a car, because she was late in picking him up from school after classes ended. *Id.* at 364. The Court found there was factual causation – the child would not have been injured if his mother had been on time – but the mother's negligence did not constitute the <u>legal</u>, or proximate, cause of the child's injuries. *Id.* at

365. The school board's negligence superceded the mother's negligence in not picking up her child on time. *Id.* at 365-66.

In *Sutton*, the school board owed an independent <u>duty</u> which should have been fulfilled in the intervening gap between the mother's failure to pick up her child and the child's injury. That was the school board's duty to protect children by not allowing them to leave school unsupervised. *Id.* The breach of that duty was not a consequence that followed as a natural course on the heels of the mother's lateness. It was an act or omission that breached an independent, intervening and over-riding duty. The mother was not responsible for, and did not cause that breach.

OLD owed a duty to maintain and repair the floodgate at issue and it was the <u>only</u> entity that had the ability and the authority to do so. In essence, this Court has already found that to be the case. It has noted that the inherent police power of the State of Louisiana encompasses a duty to protect its citizens from flood. Opinion, Exh. "A" attached, p. 5. None of that power has been delegated to PBR. Instead, that duty was fully and exclusively delegated to OLD, pursuant to La. R.S. 38:307(A)(1).[3] *Id.* at 5-7.

It is now established in the record, in the accompanying affidavit of Mr. Wands, that there was ample time between the derailment of September 11, 2004 and the flooding which began after Hurricane Katrina made landfall on August 29, 2005, to repair the damages to the floodgate structure. It was standard industry practice in this community to accomplish projects of this nature in less than the time available to OLD.

---

[3]   La. R.S. 38:307(A)(1) provides, in pertinent part:

**Orleans Levee District; powers of board of commissioners**

> The board of commissioners of the Orleans Levee District ... <u>shall have full and exclusive right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embarkments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects</u> ... <u>along, over, and on the shores, bottom, and bed of Lake Pontchartrain in the parish of Orleans</u> from its western boundary to the boundary line separating township 11 south, range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the board may determine, <u>and along and on the shores adjacent to the lake and along the canals connected therewith</u>. The levees, embankments, seawalls, jetties, breakwaters, waterbasins, and other works shall be of such character and extent and of such height, width, slope, design, and material as the board determines, with power and authority to improve and to protect the same with such other structures as are deemed necessary and proper by the board.

Where there is a duty, such as the duty to maintain the flood protection system under the exclusive control of OLD, that duty must be discharged in a timely fashion. A duty that does not have to be discharged in a timely fashion is simply no duty at all. There was plenty of time to perform the needed repairs. Thus, the plaintiffs' injury, if it is the result of anything at issue in this suit, was certainly not the result of the train derailment. The intervening failure of OLD to repair the floodgate mechanism, within the time available, was the breach of a duty by an independent actor that cuts off PBR's responsibility as a matter of law under Louisiana's prevailing duty/risk analysis.

In *Brow v. Allstate Indemnity Co.*, 99-2319 (La. App. 1st Cir. 11/3/00), 771 So. 2d 268, the plaintiff alleged that the Louisiana Department of Transportation and Development ("DOTD") was among those at fault for his injuries in an automobile accident, alleging that DOTD failed to post "wrong way/do not enter" signs at a highway intersection. The co-defendant Cummings entered the wrong lane of traffic and collided head-on with the vehicle driven by the plaintiffs. *Id.* at 273-74. The Court found that DOTD's action was a cause-in-fact of the collision, in that Cummings would not have collided with the plaintiffs' vehicle if he had not entered the wrong lane of traffic. *Id.* at 273. But Cummings had traveled in the wrong lane for approximately 4.3 miles before the collision with plaintiff's vehicle, during which time eight or nine ongoing vehicles were forced off the highway to avoid Cummings' vehicle, and others attempted to alert Cummings by flashing their headlights and blowing their horns. *Id.* at 274.

The Court stated that the "wreck was the result of the events that had intervened between Cummings' entrance to Highway 61 and the scene of the accident and was not legally caused by DOTD." *Id.* at 274. The Court noted:

> Whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether too much else has intervened-time, space, people, and bizarreness.

*Id.*; internal citation omitted.

Cummings had a duty to operate his vehicle safely and he breached that duty by driving for miles in disregard of multiple and repeated warnings from other drivers.

In *Travelers Property Casualty Company of America v. Pratt*, No. 41,387 (La. App. 2 Cir. 9/27/06) 940 So. 2d 704, a lessee of a restaurant was sued by her lessor and the lessee of an adjoining shop, when her restaurant was broken into and set on fire resulting in extensive

damage to both premises. The lessee and her insurer moved for, and were granted, summary judgment. The motion for summary judgment was opposed on the theory that the restaurant had been broken into before and that this should have put the lessee on notice that her shop was subject to crime and that her business was a potential target for arson. The court applied the Louisiana duty/risk analysis and noted that an aspect of addressing the requirement of legal causation is to determine "whether there are legal or policy reasons which may excuse the defendant from the consequences of his negligence." *Id.* at 708. It noted that:

> The extent of protection owed by a defendant to a plaintiff is made [sic] on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms.

*Id.*

The record showed that the lessee had installed a burglar alarm and thus had taken reasonable steps to secure the premises but the court noted that no one could completely secure a premises against all intrusion. Although a lessee must protect others against the consequences of his or her own fault, it is not responsible for the fault of others – in this case, the criminal activities of an arsonist.

In *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So. 2d 656, the Louisiana Supreme Court applied the duty/risk analysis to a similar situation and held that the defendant Sheriff was not liable for the death of a juvenile detainee who was improperly held in an adult detention facility, improperly released without adult supervision (he should have been released to his parents' custody), and then killed by the criminal act of a third party some twelve hours after his release. The Court noted that a "duty owed by the sheriff does not render him liable for all consequences spiraling outward until the end of time." *Id.* at 662; internal citation omitted. In that case, the fault of an independent actor, who owed a legal duty not to kill, over-rode everything where that legal fault was not the natural consequence of the defendant's act of releasing the juvenile detainee.

The cases cited above show that the subsequent breach of an independent and intervening legal duty cuts off responsibility for a prior actor as a matter of law in Louisiana's duty/risk analysis. The undisputed material facts show that there was ample opportunity for OLD to repair the floodgate mechanism that had been damaged by PBR. The legal and policy reasons for granting summary judgment in favor of PBR are just as compelling as in the cases cited above.

OLD is the only entity that has a legal duty, and the authority, to maintain the flood protection system within its area of responsibility. The Court has correctly noted that this is a "statutorily imposed duty". Opinion, Exh. "A" at 7. That duty cannot be said to exist at all if it is not required to be discharged on a timely basis. OLD's failure to timely discharge its duty cuts the legal claim of causation between any act of PBR and the plaintiffs' ultimate injury.

## IV.
## CONCLUSION

PBR is not liable to the plaintiffs, as a matter of fact and of law, and it is therefore entitled to summary judgment dismissing the remaining claims against it.

Respectfully submitted,

HAMILTON, BROWN & BABST

*Galen S. Brown*
GALEN S. BROWN, T.A. (#3556)
PAN AMERICAN LIFE CENTER
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 566-1805
FAX: (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt
Railroad Commission for the City of New Orleans

-11-

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing Memorandum in Support of Motion for Summary Judgment has been served upon all counsel of record by electronic notice via the court's CM/ECF system, or by placing same in the United States mail, postage prepaid and properly addressed, this 3rd day of March, 2009.

                                          */s/ Galen S. Brown*
                                          GALEN S. BROWN