UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES         CIVIL ACTION
CONSOLIDATED LITIGATION
                                      NO. 05-4182
PERTAINS TO LEVEE:
                                      SECTION "K"(2)

FILED IN:    05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,
             05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,
             06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346
             06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,
             06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
             06-5771, 06-5786, 06-5937, 06-7682, 06-0206, 07-0647,
             07-0993, 07-1284, 07-1286, 07-1288, 07-1289

*ORDER AND OPINION*

Before the Court is a "Motion to Dismiss the Claims of the Plaintiffs Pursuant to F.R.C.P. Rule 12(b)(6)" filed on behalf of defendant Public Belt Railroad Commission for the City of New Orleans ("PBR") (Doc. 3609).[1] After reviewing the pleadings, memoranda, and relevant law, for the following reasons the Court grants the motion in part and denies it in part.

## I. BACKGROUND

The "Superseding Master Consolidated Class Action Complaint"[2] alleges that on August 29, 2005, extensive flooding occurred in the metropolitan New Orleans area due, in part, to water from the Inner Harbor Navigational Canal ("Industrial Canal") surging through a gap in the flood protection wall adjacent to the Industrial Canal. Specifically that complaint alleges in pertinent

---

[1] This motion supersedes the motion to dismiss for failure to state a claim filed on behalf of the PBR in *Paul*, No. 07-0993 (Doc. 3360) and *Speed*, No. 11208 (Doc. 3029). Therefore, the Court denies those motions as moot.

[2] Doc. 3420.

1



part:

132.

The first breach [of the flood protection system] within the metropolitan New Orleans Region occurred at approximately 5:00 a.m. at the CSX train Floodgate W-30 beside the Industrial Canal and immediately to the south of the Interstate-10 overpass. At this location, a steel storm gate on rollers had been damaged by a train several months prior to Hurricane Katrina. In lieu of this missing gate, a sandbag levee crest section had been constructed in the opening left by the missing floodgate. The sandbags completely washed out during Katrina.

. . .

254.

The following defendants had the legal responsibility and duty to these plaintiffs to protect against the harm and damages alleged herein resulting from the failure of the IHNC [Inner Harbor Navigation Canal]: the defendants Corps [ Army Corps of Engineers], OLD [the Board of Commissioners of the Orleans Parish Levee District], St. Paul's, CSX, PBR, and PNO [the Board of Commissioners of the Port of New Orleans].

255.

The City of New Orleans is the sole owner of the New Orleans Public Belt Railroad Commission, a non-profit switching railroad which operates switches and terminal services for over 100 miles of track in New Orleans, Louisiana.

256.

On or about September 11, 2004, a New Orleans Public Belt Railroad Train derailment caused a thirty-two and a half foot wide gap in Floodgate W-30, which is part of the flood wall system situated immediately west of, and running int [sic] a north-south direction parallel to, the INHC north of the Interstate 10 high-rise.

257.

> On December 14, 2004, the defendant PBR paid OLD $427,387.96, the full estimated cost of the reconstruction of Floodgate W-30, but, on information and belief, both PBR and OLD failed to assure these repairs were made, prior to the August 2005 catastrophe giving rise to this action.

(Doc. 3420).

PBR contends that plaintiffs' state law negligence claims against it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because it had no duty to protect the plaintiffs from flooding or to repair the damaged floodgate. Additionally, PBR asserts that even if it was negligent in a manner that resulted in the derailment of the train, that plaintiffs' claims must nonetheless be dismissed because the derailment was not the legal cause of the flooding that damaged plaintiffs.

## *LAW AND ANALYSIS*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1980). In *Bell Atlantic Corporation v. Twombly*, ____ U.S. ____, ____, 127 S.Ct. 1955, 1969 (2007) the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the

3

allegations of the complaint. *Id.* at ___, ___, 127 S.Ct. at 1969. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).

Article 2315 of the Louisiana Civil Code provides the basis for negligence liability in Louisiana. It provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The duty-risk analysis "is the standard negligence analysis employed in determining whether to impose liability under LSA-C.C. art. 2315." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 632-33 (La. 2006). To prevail on a claim of negligence, the plaintiff must satisfy all five elements of the duty-risk analysis: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the actual damages. *Id.*

Under a duty-risk analysis, absent a defendant owing a duty to the plaintiff, there can be no actionable negligence and therefore no liability. *Id.* Whether a defendant owes a duty to another presents a question of law. *Peterson v. Gibraltar Savings and Loan*, 733 So.2d 1198, 1204 (La. 1999). The relevant "inquiry is whether the plaintiff has any law - statutory, jurisprudential, or arising from general principles of fault - to support his claim." *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289, 292 (1993). "Duty varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff

4

involved." *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994).

Plaintiff's only factual allegations against PBR are as follows:

- it is a "switching railroad" and "operates switches and terminal services for over 100 miles of track in New Orleans, Louisiana";
- "On or about September 11, 2004, a New Orleans Public Belt Railroad Train derailment caused a thirty-two and a half foot wide gap in Floodgate W-30";
- that "[o]n December 14, 2004, the defendant PBR paid OLD $427,387.96, the full estimated cost of the reconstruction of Floodgate W-30; and
- that "PBR and OLD failed to assure these repairs were made, prior to the August 25 catastrophe giving rise to this action.

### Duty to Protect Plaintiffs from Flooding

Plaintiffs have not identified any statutory, jurisprudential, or common law imposing on a railroad a general duty to protect the public from flooding. Nor has the Court located any law which imposes such a duty. The lack of law imposing such a duty in not unexpected; the duty to protect the residents and citizens of New Orleans from flood has been statutorily imposed on other entities.

Congress has mandated that the Secretary of the Army, acting through the Corps of Engineers has the responsibility to provide flood protection for the City of New Orleans. *See* 33 U.S.C. §701, *et seq.* Additionally, the state owes its citizens a duty to protect them from flood. "[T]he state's duty to protect citizens from damage by flood is inherent within its police power." *The Board of Commissioners of the Orleans Parish Levee District v. The Department of Natural Resources*, 496 So.2d 281, 289 (La. 1986). The state has not delegated any responsibility for flood control or maintenance of the structures necessary for flood control to the PBR, a legislatively created political subdivision of the state.[3]

---

[3] *See Cooper v. Public Belt Railroad*, 886 So.2d 531, 537 (La. App. 4th Cir. 2004)("Supreme Court would likewise consider the Public Belt to be a local government unit

5

In the absence of any state law imposing a general duty on a railroad to protect the plaintiffs from flooding, the Court must attempt to predict how the Louisiana Supreme Court would decide the issue. It is significant that plaintiffs have not alleged that they have any special relationship, e.g., a contractual relationship, with the PBR. There is, at best, a tenuous relationship between plaintiffs and PBR. Plaintiffs are members of the general public who are residents and citizens of Orleans Parish, a parish in which PBR is authorized to operate. That relationship is insufficient to serve as the basis for concluding that PBR owed plaintiffs a general duty to protect them from flooding. There is no legal basis for concluding that the Louisiana Supreme Court, if confronted with this issue, would impose on the PBR a general duty to protect the plaintiffs from the hazard of flooding. Thus, the motion to dismiss is granted to the extent plaintiffs seek to allege that PBR owed plaintiffs a general duty to protect them from flooding.

### Duty to Repair Floodgate

Construing the complaint broadly, plaintiffs allege that PBR's negligence caused the September 11 train derailment which damaged Floodgate W-30; and that its negligence coupled with PBR's failure to ensure that the necessary repairs were made to the floodgate prior to August 29, 2005, resulted in the flooding from the Industrial Canal which damaged plaintiffs.

The PBR had no duty to repair the damaged floodgate. The Louisiana legislature has vested the Board of Commissioners of the Orleans Levee District with the "<u>full and exclusive right</u>, jurisdiction, power, and authority to locate, relocate, construct, <u>maintain</u>, extend, and improve levees, embankments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects" within the Parish of Orleans. La. Rev. Stat. 38:307A(1) (emphasis added).

---

consistent with the broad definition of 'political subdivision' found in La.R.S. 13:5106 B(1).").

6

The Louisiana legislature has granted the PBR exclusive authority for "[t]he control, operation, management and development of the public belt railroad system." La. Rev. Stat. 33:4530(C). Nothing in the statute creating the PBR and defining its scope of authority hints at imposing on it a duty to repair floodgates which form part of the flood control system for the metropolitan New Orleans area or a duty to oversee the Board of Commissioners of the Orleans Levee Board to ensure that it executes its statutorily imposed duty to maintain the flood protection system. Moreover, plaintiffs have not alleged that PBR had care, custody, control and *garde* over the damaged floodgate. In fact, the complaint specifically acknowledges that an entity other than the PBR had care, custody, control and *garde* over the floodgates within the flood protection system. and acknowledge that PBR paid the Orleans Levee District the full estimated cost to reconstruct the damaged floodgate. Therefore, the motion to dismiss is granted to the extent that the plaintiffs seek to allege that the PBR had a duty to repair the damaged floodgate.

## Legal Cause of Flooding

A party is liable for its negligence only when that negligence is both a cause in fact of the plaintiff's injury and a legal cause of the injury. *Graham v. Amoco Oil Company*, 21 F.3d 643, 648 (5th Cir. 1994); *Sinitiere v. Lavergne*, 391 So.2d 821, 826 (La. 1980). "[T]he determination of legal cause involves a purely legal question." *Todd v. State through Department of Social Services*, 699 So.2d 35, 39 (La. 1997).

The PBR contends that even if it were negligent in a manner that damaged the floodgate, its negligence was not a legal cause of plaintiffs' damages and therefore it is entitled to be dismissed. Specifically, PBR urges that any negligence on its part was superceded by the intervening negligence of the OLD in failing to repair or replace the floodgate in the eleven (11) months between

7

the train derailment and Hurricane Katrina.

The Court notes that it has been presented with no evidence that the repair was not made in a reasonable or timely manner. Assuming *arguendo* that the delay in repairing or replacing the damaged floodgate was a cause-in-fact of plaintiffs' damages, and that the failure to repair or replace the damaged floodgate constitutes a legal cause of plaintiff's damages, that subsequent negligence does not, as a matter of law, preclude a finding that PBR's negligence, in connection with the train derailment, if any, was a legal cause of the plaintiffs' damages.

> A defendant whose negligent act is a cause-in-fact of injury is not necessarily insulated from liability by the intervening negligence of another. Such intervening negligence may need to be *independent* of the original negligence, *Reeves v. Louisiana and Arkansas Ry. Co.*, 282 So.2d 503 (La. 1973), or must *supersede* the original negligence. *Mizell v. State through La. Dept. of Hwys.*, 398 So.2d 1136 (La. App. 1st Cir. 1980). Mere passage of even great periods of time between a cause-in-fact and resultant injury is not sufficient to cut off liability.

*Miller v. Louisiana Gas Service Company*, 601 So.2d 700, 705 (La. App. 5th Cir. 1992). Because a subsequent act of negligence that is a cause-in-fact and a legal cause of a plaintiff's damages does not as a matter of law exonerate from liability a party responsible for an earlier act of negligence that is a cause-in-fact and legal cause of plaintiff's damages, plaintiffs have stated a claim against PBR. Therefore, the Court denies PBR's motion to dismiss plaintiffs' claim that PBR's negligence in connection with the train derailment damaged plaintiffs. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that plaintiffs' claim that defendant Public Belt Railroad Commission for the City of New Orleans had a general duty to protect them from flooding is dismissed with prejudice;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that plaintiffs' claim that

defendant Public Belt Railroad Commission for the City of New Orleans had a duty to repair floodgate W-30 is dismissed with prejudice; and

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the defendant Public Belt Railroad Commission for the City of New Orleans's motion to dismiss plaintiffs' claim that Public Belt Railroad Commission for the City of New Orleans was negligent in connection with the September 10, 2004 train derailment and that such negligence resulted in the plaintiffs' damages is DENIED.

New Orleans, Louisiana this 27th day of December, 2007.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE