UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES          CIVIL ACTION
CONSOLIDATED LITIGATION
                                        NO.: 05-4182

                                        SECTION "K" (2)

FILED IN:   05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,
            05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,
            06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346,
            06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,
            06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
            06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647,
            07-0993, 07-1284, 07-1286, 07-1288, 07-1289

PERTAINS TO:  LEVEE

## AFFIDAVIT OF WAYNE D. WANDS

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, personally came and appeared:

**Wayne D. Wands**

of legal age, who, being by me, first duly sworn, did depose and say that:

1. I reside at 4037 Vincennes Pl., in the Parish of Orleans, State of Louisiana.

2. I graduated from Tulane University in May, 1973; I hold a Bachelor of Science degree in Physics.

3. I was employed by Boh Brothers Construction Company, L.L.C. from September 1970 until my retirement in May, 2008. During the period from October, 1979 to May, 2008, I was employed as a Project Manager and worked in the construction industry in the metropolitan New Orleans area, where I became familiar with a broad range of public and private construction projects.



4. As a Project Manager, I was responsible for the estimating and project management of concrete, earthwork, structural steel, railroad and bridge repair projects, including planning, scheduling, purchasing and administration.

5. In that capacity, I worked on dozens of public and private construction projects involving work of a size and scope approximating the project involving the repairs to Floodgate W-30 ("Floodgate") which is at issue in these proceedings. In that work, I became familiar with the steps necessary and the time required to issue and put out for bid the plans and specifications of such a project, to contract for such a project, and to mobilize and execute such a project. I participated in this process on many occasions throughout my employment.

6. I make this Affidavit on the basis of matters personally known to me, derived from almost thirty years of occupational experience in the construction industry in the New Orleans area and on the basis of the following documents relating to this project, produced during the course of this litigation by the Board of Commissioners of the Orleans Levee District ("OLD"), which I have reviewed:

   a. The scope of services prepared by Design Engineering, Inc. for OLD, submitted on September 22, 2004, including the manhour estimate, scope of services and costs proposal, which detailed the work necessary for a safe repair to the Floodgate;

   b. The Contract Documents and Specifications for that project, prepared by Design Engineering, Inc., being DEI Project No. 1058, dated January, 2005, which Contract Documents and Specifications were ultimately identified to Orleans Levee Board Contract No. 22807, dated June 15, 2005; and

   c. As-Built Drawings, Orleans Levee Board Project No. 22807, DEI Project No. 1058.

7. It is clear that the Floodgate project did not involve replacement of the floodgate itself. The damage was to a concrete monolith which supported the gate structure and the steel beam that the gate rolled on.

8. The Floodgate project was of a size and scope with which I have been occupationally familiar for almost thirty years. It involved construction undertakings, and materials and techniques with which I am familiar. It did not involved unique or unusual construction methods, materials or designs. It was not a large construction project. In my opinion, it did not impose unusual mobilization or procurement problems.

8(a). Once the contract was awarded, mobilization occurred within approximately two weeks of the giving of notice to proceed, on June 22, 2005, with work to have begun on July 5, 2005. This confirms that the project and mobilization for it did not present unusual or difficult problems.

9. The contract for this project called for a completion date within ninety days of the commencement of work and the work could and should have been completed within that time frame. This also confirms that the project was not unusually difficult or time-consuming. It is my opinion that, under ordinary working conditions, the work could have been completed in less than the ninety days allowed.

10. It is my opinion, based on my observation of the planning and execution of projects similar to the Floodgate project that such contracts can be, and regularly are, specified, bid and awarded in much less than the period of more than nine months (from the date of the accident at issue on or about September 11, 2004 through the date of the construction contract, on or about June 15, 2005) which were actually consumed in this process.

11. Thus, this project proceeded at a pace that was much slower than industry practice in this community. Had the process of developing the necessary specifications and contracting for the project proceeded at a reasonable pace, the project could, and should, have been completed by the time Hurricane Katrina made landfall on August 29, 2005.

12. The project did not proceed at such a pace and, as a consequence, it was not completed by August 29, 2005.

13. The foregoing statements are true, correct and complete to the best of my knowledge, information and belief.

_____
WAYNE D. WANDS

Sworn to and subscribed
before me, this 27th day
of February, 2009.

_____
NOTARY PUBLIC