**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | * | |
| **IN RE:  KATRINA CANAL BREACHES** | * | |
| **CONSOLIDATED LITIGATION** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 05-4182** |
| **PERTAINS TO:  BARGE** | * | **and consolidated cases** |
| | * | |
| | * | **SECTION "K"  (2)** |
| *Boutte v. Lafarge*         05-5531 | * | |
| *Mumford v. Ingram*     05-5724 | * | |
| *Lagarde v. Lafarge*      06-5342 | * | **JUDGE** |
| *Perry v. Ingram*           06-6299 | * | **STANWOOD R. DUVAL, JR.** |
| *Benoit v. Lafarge*         06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | **MAG.** |
| *Lafarge v. USA*            07-5178 | * | **JOSEPH C. WILKINSON, JR.** |
| *Weber v. Lafarge*         08-4459 | * | |

**MEMORANDUM IN SUPPORT OF BARGE PLAINTIFFS' FIRST MOTION TO**
**CONTINUE INDIVIDUAL TRIALS AND FOR MODIFICATION OF CASE**
**MANAGEMENT ORDER NO. 7**

## I.        INTRODUCTION

Barge Plaintiffs respectfully move this Court for a three month extension of

individualized test trials, currently set to commence on July 13, 2009, to October 13, 2009.

Plaintiffs base their request on the need by a critical Plaintiffs' expert, Gennaro G. Marino, Ph.D,

P.E. of Marino Engineering Associates, Inc., for additional time to complete analysis of an issue

that stands as the foundational cornerstone of the Barge Plaintiffs' case.  Dr. Marino's opinion

testimony, which is the lynchpin of the Plaintiffs' case on causation, is of critical importance to

this Court achieving the overarching objective of the test trials in producing a representative

verdict that can be used for resolving related cases.

Dr. Marino, who was retained by Plaintiffs to perform comprehensive analysis of the EBIA (Eastern Batture Industrial Area—the strip of land between the floodwall and the water) and eastern Industrial Canal floodwall breaches, and to opine as to the cause(s) and mechanics thereof, has advised that his expert report will not be ready until early June 2009 as a result of the incredible time intensiveness of analyzing soil boring data received from the Army Corps of Engineers.

Based on the significance of Dr. Marino's opinion testimony to the Barge Plaintiffs' case on causation, proceeding to trial absent such opinion testimony in strict adherence to CMO No. 7 would have the paradoxical effect of undermining the objectives underpinning CMO No. 7 itself.[1]  Thus, with this goal in mind, the potential for prejudice necessarily will occur, not in allowing a trial continuance, but rather, by disallowing it.  Such a result certainly is not warranted insofar as Plaintiffs' counsel and Dr. Marino have been, and continue to be, diligent in their efforts to prepare this matter for trial.[2]

For these reasons, as discussed in detail below, the Barge Plaintiffs propose that Case Management Order Number 7 be revised and that trial be reset to October 13, 2009—a nominal three month continuance.

---

[1] Proceeding to trial on the current schedule, in addition to the substantial risk of producing an anomalous result, will also pose substantial due process implications to those plaintiffs selected to have their cases heard first, inasmuch as they will not have the benefit of Dr. Marino's final report.

[2] Indeed, both Parties have been diligently preparing this case for trial. Most recently (since late December 2008), and following directly on the heals of the extensive briefing that the Parties submitted on issues of class certification, Plaintiffs' counsel have been engaged, on almost a daily basis in the taking and defending of fact witnesses on both Plaintiffs' and Defendant's witness lists.  This time intensive deposition work is being handled concurrent with finalization of a significant number of  experts' reports, revision and finalization of Plaintiffs' exhibit lists, developing a selection protocol of individual cases, should Class Certification be denied.  In short, all hands have been and will continue to be on deck  for the foreseeable future.

## II.    <u>ARGUMENT</u>

Rule 16(b) allows a scheduling modification upon a showing of good cause.  *See Fed Rules Civ Proc R 16(b)(4).*  "The good cause requirement for a modification of a scheduling deadline requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"  *See Curol v. Energy Res. Tech., Inc.*, 2004 U.S. Dist. LEXIS 23279, at 7 (E.D. La. Nov. 16, 2004).  In determining whether a party has demonstrated "good cause" for modifying a deadline for filing expert reports, the Fifth Circuit has concluded that the District Court should consider the following factors: (1) the explanation for the failure to submit a complete report on time; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure the prejudice.  *See Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. La. 1997), *citing  Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

As set forth below, examination of each of these factors warrant modification of the scheduling Order to extend trial and trial readiness deadlines.

### A.    THE CURRENT EXPERT DISCLOSURE DEADLINE CANNOT REASONABLY BE MET DESPITE THE DILIGENCE OF PLAINTIFFS' EXPERT, GENNARO MARINO, PH.D, P.E.

Critical to Plaintiffs' case with regard to floodwall breach causation will be the testimony of Gennaro G. Marino, Ph.D, P.E. of Marino Engineering Associates, Inc.  Plaintiffs have retained Dr. Marino to perform comprehensive analysis of the EBIA and eastern Industrial Canal floodwall breaches, and to opine as to the cause(s) and mechanics thereof.  As reflected in the *Declaration of Gennaro G. Marino, Ph.D, P.E.* ("Marino Dec."), filed concurrently herewith, a core component of Dr. Marino's investigation has focused on whether the ground supporting the INHC floodwall played any causal role in failure of these portions of the INHC floodwall.  *See*

*Marino Dec.*, at ¶ 3.  Evaluation of this issue, which entails a detailed analysis of massive quantities of soil boring data, has proven to be extremely time consuming insofar as the modeling employed by Dr. Marino requires that such data be inputted in segmented layers to achieve an accurate and reliable result. *See Marino Dec.*, at ¶ 3.  Based on the degree of time involved in this component of his analysis, Dr. Marino has advised that his soil density model has not been sufficiently developed to be included in his expert report, presently due on March 16, 2009 per CMO No. 7.  *See Marino Dec.*, at ¶ 3.

Significantly, the present issue is not attributable to a lack of diligence, as Dr. Marino's firm has been diligently been working on processing such information, which could not have been expedited insofar as the accuracy and reliability of the model requires that each variable be added and examined one layer at a time. *See Marino Dec.*, at ¶ 3.

Moreover, Dr. Marino has cautioned that submitting a partial report that excludes boring data analysis is not a workable solution, as soil density analysis plays a significant role in his overall causal analysis.  *See Marino Dec.*, at ¶ 4.  In his opinion, an extension of three months, while not enough time to perfect such modeling, will be sufficient to produce a model which is sufficiently developed to meet standards of reliability.  *See Marino Dec.*, at ¶ 4.

Based on these facts, the current expert disclosure deadline cannot reasonably be met despite the diligence of Plaintiffs and Dr. Marino.

**B.    DR. MARINO'S OPINION TESTIMONY, WHICH IN MANY WAYS IS THE LYNCHPIN OF THE BARGE PLAINTIFFS' CASE ON CAUSATION, IS OF CRITICAL IMPORTANCE TO PLAINTIFFS' CASE (AND THEREON, IS NECESSARY TO ACHIEVING THE OVERALL OBJECTIVE OF THE PROPOSED TEST TRIALS)**

There should be no doubt of the importance of Dr. Marino's testimony.  Without such testimony, trial will lack a basic and critical structural support, if not *the* most important lynchpin

element of the Barge Plaintiffs' case on causation.  Indeed, to the extent Dr. Marino has

cautioned that submitting a partial report that excludes boring data analysis is not a workable

solution due to the role that soil density analysis plays in his overall causal analysis  [*See Marino

Dec.*, at ¶ 4], absent a continuance, Plaintiffs will be forced to proceed at trial without the benefit

of Dr. Marino's testimony.  Even if a partial analysis by Dr. Marino were possible, the outcome

of such a trial would not inform the Court and Parties of anything substantive and applicable to

this litigation as a whole, and would likely result in a grossly lopsided, prejudicial and grievous

miscarriage of justice for the unfortunate plaintiff who was saddled with having to go through

the first trial "naked" as to the issue of causation.

Thus, Dr. Marino's opinion testimony, which in many ways is the lynchpin of the barge

Plaintiffs' case on causation, is of critical importance not only to Plaintiffs' case, but to the

ability of the Parties in achieving the overall objective of the proposed test trials.

### C.     A MINIMAL TRIAL CONTINUANCE IS NECESSARY, NOT ONLY TO PROTECT THE DUE PROCESS RIGHTS OF THOSE PLAINTIFFS SELECTED TO HAVE THEIR CASES HEARD FIRST, BUT ALSO TO SECURE THE OBJECTIVE OF THE PROPOSED TEST TRIALS

In evaluating Plaintiffs' instant Motion, it is important to recognize that the overarching

objective of conducting the proposed test trials in this case is to produce a representative verdict

that can be used for resolving related cases.  With this goal in mind, the potential for prejudice

necessarily will occur, not in allowing the testimony, but rather, by disallowing it.  Based on this

reality, a minimal trial continuance is not only necessary to protect the due process rights of

those plaintiffs selected to have their cases heard first, but also to secure the objective of the

proposed test trials in producing a representative verdict that can be used for resolving related

cases.

Indeed, to the extent Dr. Marino has cautioned that submitting a partial report that excludes boring data analysis is not a workable solution, in that soil density analysis plays a significant role in his overall causal analysis  [*See Marino Dec.*, at ¶ 4], Plaintiffs will be forced to proceed at trial without the benefit of Dr. Marino's testimony.  Such a result would not only prejudice those plaintiffs selected to have their cases heard first, but also the objective of the test trial itself in producing a representative verdict.

While Plaintiffs counsel are mindful that a trial continuance is not a remedy that should be pursued lightly, Plaintiffs seek wholesale continuance here because no other CMO modification makes sense under the circumstances.  In addition to the fact that a trial continuance is the only means available to avoid the issues described above, a trial continuance is also necessary to ensure that the incredible amounts of time and resources that will be expended at trial are meaningful.  It makes no sense to expend such resources in such a fashion, especially when the deficiencies detailed herein would undoubtedly be cured by the second wave of trials.  Thus, pushing this matter to trial for the sake of strict adherence to CMO No. 7 would not further the objectives of underpinning the justifications of CMO No. 7.

This situation mirrors that noted by this Court in *Robinson v. United States*, C.A. 06-2268, Record Doc. 15841 (copy attached as **Exhibit A**), in which this Court granted another trial continuance in that matter, in the latest instance *due to problems in generating required expert reports*.  The Court's actions in *Robinson* were well-founded in law, and were based upon good cause, shown here to also require continuance of the July 13, 2009 commencement of individual trials in the Barge Litigation.  In *Robinson*, the following exchange took place in Open Court on September 12, 2008 (Record Doc. 14942, pp. 63, et seq.):

4 MR. O'DONNELL: Can we talk about the trial?

5 THE COURT: Yes.
6 MR. O'DONNELL: Mr. Smith gave me a great segue. We
7 were going to have a trial at one point, and then our expert
8 work took longer than expected and we moved from September, I
9 think, October -- maybe we stopped at October, and we quickly
10 went to inauguration day, coincidentally, January 20, 2009.
11 I'm sure that was a coincidence. Now, Mr. Bruno and I have had
12 discussions with Mr. Smith, and we understand the government
13 needs some additional time for their expert reports. We
14 understand that.
15 Causation is probably the central point in this
16 case, and I think we all understand that. I think I'll
17 persuade you there was a duty, and I hope I will persuade you
18 there was a breach of duty. I think it's going to fall on the
19 issue of causation.
20 Our concern here is the Court -- I understand
21 you do Katrina and everything else, too, and it's a massive,
22 groaning docket. We would like to get a stationary target
23 first for the Court and secondly for us. Most of my life is
24 this case, and Mr. Smith and the government have other
25 responsibilities.
It's likely we are not going to have a
2 resolution until we are approaching the fourth year of Katrina,
3 so my effort to get this case tried in a short period of time
4 has been thwarted by understandable forces. We didn't take two
5 years to investigate. We filed I think the day after the six
6 months expired. We want a trial. We want a test decision. I
7 think the Court wants a complete record.
8 THE COURT: You did. April 25, 2006.

            …

21 MR. O'DONNELL: Because if a causation summary
22 judgment is brought, that's a one-sentence -- quintessentially,
23 an issue of fact, Your Honor. It should be denied. So if they
24 bring that motion, we will deal with that as well.
25 We want to go to trial. We want to know when
1 that trial is. We hope the Court says this is the last
2 continuance. We are not saying Mr. Smith is not entitled to
3 more time. We all want a complete record. It's the due
4 process for the litigants.

            …

MR. SMITH: Yes, Your Honor. I mentioned on the
5 phone a couple of weeks ago that we are running behind and

6 nothing has really changed since then. We are not farther
7 behind than we were then. We are having difficulties, but they
8 are not anything unexpected.
9 The supercomputers that do this modeling are the
10 same supercomputers they use to model these hurricanes that are
11 coming ashore. So when the Corps decides which order things
12 are going to get done, the project for this litigation is not
13 more important than Hurricane Gustave or Hurricane Ike, so our
14 things sit in a cue waiting to run on a supercomputer. We need
15 probably six weeks, Your Honor. I know that where that throws
16 us is right towards Christmas on this.
17 THE COURT: May I ask you this? The trial date is
18 when?
19 MR. SMITH: January 20.
20 THE COURT: When you say Christmas, the six weeks --
21 MR. SMITH: For our expert reports, Your Honor.
22 THE COURT: I said the last one was the last setting,
23 but I would like to say it and mean it this time. Let me throw
24 out a trial date. I've looked at our calendar. Our calendar
25 has been so screwed up by this case, frankly, I can't begin to
1 tell you because we do have other customers, although you are
2 some of our favorite customers.
3 MR. O'DONNELL: Repeat customers.
4 THE COURT: All of you. I enjoy it, I really do.
5 April 19, how does that fit with the guys and
6 ladies who -- April 20, I've been told.

The situation described above by Messrs. O'Donnell, Bruno and Smith aptly describes

factors giving rise to Dr. Marino's unfortunate yet unavoidable need for more time.

## III.    CONCLUSION

Good cause having been shown, the Barge Plaintiffs respectfully move for continuance of

trial, and corresponding modification of Case Management Order No. 7.

March 13, 2009                    Respectfully submitted,

/s/ Brian A. Gilbert
Brian A. Gilbert, Esq. (21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 885-7700
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
e-mail: bgilbert@briangilbertlaw.com

/s/Shawn Khorrami
SHAWN KHORRAMI  (CA Bar #180411)
DYLAN POLLARD  (CA Bar #180306)
MATT BAILEY  (CA Bar #218685)
444 S. Flower St., Thirty-Third Floor
Los Angeles, California 90071
Telephone:     (213) 596-6000
Facsimile:     (213) 596-6010
skhorrami@kpalawyers.com
dpollard@kpalawyers.com
mbailey@kpalawyers.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
e-mail: lawrence@wiedemannlaw.com,
          karl@wiedemannlaw.com,
          karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com

9

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:   202-549-1454
Facsimile:  800-805-1065 and 202-828-4130
e-mail: rick@rickseymourlaw.net

Attorneys for Barge Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing document, the accompanying Memorandum and its attachments, the accompanying proposed form of Order, and the accompanying Notice, have been served upon counsel of record, by ECF upload, this 13th day of March, 2009.

\s\Brian A. Gilbert