RECVD 09 MAR 11 13:32USDC-LAE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

PERTAINS TO LEVEE            Civil Action No. 05-4182

**OBJECTIONS OF CLASS MEMBERS MARY BRINKMEYER,
MICHELLE LeBLANC, AND THOMAS C. STUART**

Class members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart object to the proposed class action settlement agreement. For four reasons, the settlement agreement should not be approved in its current form. First, the notice is substantively defective because it fails to provide class members, including Objectors Brinkmeyer, LeBlanc, and Stuart, any means of calculating or even estimating their individual recoveries. This defect is particularly serious in a case such as this one, which seeks to disburse a relatively small fund of money to a relatively large group of people, and only after the fund is reduced by the payment of costs and expenses to lawyers, fees to a special master and his staff, fees to a court-appointed disbursing agent and his staff (if any), and escrow fees.

Second, the settling parties propose to resolve this case by designating the defendants' assets "limited funds," thereby binding all class members to the settlement without affording them a right to opt out. In fact, the defendant levee districts are not "limited funds." Although they cannot be

1

forced to satisfy a monetary judgment against them, they can choose to pay a judgment or to contribute to a settlement fund. Because the levee districts are not limited funds, the class action settlement should not be approved unless absent class members are given an opportunity to opt out.

Third, a class action settlement can be approved only if it is fair, adequate, and reasonable. Here, the settling parties have not provided enough information to enable the Court (or the class) to make such a finding, even assuming the certification under Rule 23(b)(1)(B) were proper. Specifically, the settling parties provided neither an estimate of the number of class members with claims against the defendant levee districts nor information adequate to assess the amount of the fund that will be awarded to class members—as opposed to distributed to lawyers, experts, the Special Master, and others, as costs and expenses. Without a basis for determining whether the proposed settlement will provide more than de minimis value to class members, the Court should not approve the proposed settlement.

Fourth, the notice and settlement agreement both indicate that counsel may seek an enhancement of their actual costs and expenses. This provision of the agreement runs counter to Louisiana's Rules of Professional Conduct and is unsupported in the case law. And in the context of a purported "limited fund" settlement, in which individual class members will receive far less than the value of their claims, class counsel's suggestion that lawyers may make a profit on costs is particularly ill-conceived. If the Court approves the settlement agreement, it should condition that approval on the settling parties' agreement that they will not seek an enhancement of costs or expenses and should state in its order that no fee or cost enhancements will be awarded.

## IDENTITY OF OBJECTORS

Mary Brinkmeyer is a member of the proposed settlement class as defined in the settlement agreement. At the time of Hurricane Katrina, Ms. Brinkmeyer resided at 4655 Marigny Street, New Orleans, LA 70122.

Michelle LeBlanc is a member of the proposed settlement class as defined in the settlement agreement. At the time of Hurricane Katrina, Ms. LeBlanc resided at 6734 Avenue A, New Orleans, LA 70124.

Thomas C. Stuart is a member of the proposed settlement class as defined in the settlement agreement. At the time of Hurricane Katrina, Mr. Stuart resided at 508 Passera Court, New Orleans, LA 70119.

## OBJECTIONS

### I. The Settlement Notices Are Deficient Because They Fail To Give Information Sufficient To Enable Class Members To Know Or Estimate Their Individual Recoveries.

Under Federal Rule of Civil Procedure 23, notice of a proposed class action settlement must be sent to "all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In addition to Rule 23's stringent requirements, notice must also satisfy constitutional standards imposed by the Due Process Clause. As the Supreme Court stated in *Mullane v. Central Hanover Bank & Trust Co.*, "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. 306, 315 (1950); *accord Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). This standard implicates two concerns: the dissemination of notice (that is, ensuring that the notice reaches class members) and the content of the notice (that is,

3

devising a notice that informs the class members of the content of the settlement and how it affects them).

Here, Objectors Brinkmeyer, LeBlanc, and Stuart agree that the notice program employs means well-crafted to reach the attention of absent class members and, in that regard, satisfies *Mullane* and due process. In terms of content, however, the notice is deficient.

As the settling parties' notice expert has explained, "the best notice practicable under the circumstances cannot stop with . . . generalities. It must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member." Hilsee, Wheatman, & Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More than Just Plain Language: a Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359, 1366 (2005) (quoting *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998)); *see also Phillips Petroleum*, 472 U.S. at 812 ("The notice should describe the action and the plaintiffs' rights in it."). A notice of proposed class action settlement should "provide information that will enable class members to calculate or at least to estimate their individual recoveries, including estimates of the size of the class and any sub-classes . . . ." *Manual for Complex Litigation* § 21.312, at 417-18 (4th ed. 2007); *see also* NCLC, *Consumer Class Actions* §10.1.5.2, at 162 (6th ed. 2006) (notice must include "information necessary to evaluate the settlement, costs and expenses, and attorney fees").

Accordingly, each of the model class action settlement notices prepared by the Federal Judicial Center explains how individual class members' awards will be calculated and/or specifies the range of awards. *See* Fed. Jud. Center, Class Action Notices Page, www.fjc.gov/public/home.nsf /autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/p

4

ages/816. Likewise, in each of the 2008 cases listed in the declaration of the settling parties' notice expert, Shannon Wheatman, the settlement notice describes the range of recovery for individual class members. *See, e.g.*, notices in *Lockwood v. Certegy Check Servs., Inc.* (M.D. Fla.), *available at* datasettlement.com/ (final approval Sept. 3, 2008); notices in *Shaffer v. Continenal Cas. Co.* (C.D. Cal.), *available at* www.ltcclassaction.com/ (final approval June 11, 2008) (non-monetary relief); notices in *Palace v. DaimlerChrysler Corp.* (Cir. Ct. Ill.), *available at* www.neonsettlement.com/ (final approval May, 29, 2008); notices in *Gray's Harbor v. Carrier Corp.* (W.D. Wash.), *available at* www.furnaceclaims.com/ (final approval April 22, 2008); *Sherrill v. Progressive NW Ins. Co.* (18th D. Ct. Mont.), *available at* http://www.uimclaims.com/ (final approval April 4, 2008); *Webb v. Liberty Mutual Ins. Co.* (Cir. Ct. Ark.), *available at* www.webbsettlement.com/ (final approval March 3, 2008).[1]

In contrast, here, both the long-form and short-form notices fail to give class members any indication of how much they can expect to recover from the settlement. The notices do not state an amount or range of amounts to be distributed to individual class members, do not provide a formula by which the distribution will be calculated, and do not even state or estimate the size of the class so that members can calculate an average recovery. The settlement agreement itself is likewise silent about how individual awards will be calculated and the range of any such awards. The agreement states that class members must submit written claims and that the Special Master may reject claims, but it includes no explanation of how awards will be calculated for any type of claim, the basis on

---

[1] Ms. Wheatman also lists a case entitled *Gunderson v. AIG Claim Services*, approved on May 29, 2008. Wheatman Decl., Exh. 1 at 6. We were unable to locate notices for that case.

which the Special Master can object to a claim, or the procedure for responding to an objection by the Special Master. *See* Sett. Agmt. at III, ¶ 12.

As discussed in part III, below, the Wheatman Declaration—which was not sent to class members and is not available on the website—states that the number of households to which notice will be sent is approximately 500,000 and the number of businesses is approximately 41,000. *But see* Hilsee, Intrepido, & Wheatman, *Hurricanes, Mobility, and Due Process: the "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 Tulane L. Rev. 1771, 1787 (2006) ("Hurricane Katrina displaced more than 1.36 million people from their former addresses"). These numbers suggest that if all class members made a claim, the proposed settlement would provide class members an average recovery of less than $40—if the entire fund were disbursed to class members.

Importantly, the entire fund will *not* be disbursed to class members. Instead, a large portion of the fund will be used to pay a variety of significant expenses. For example, the long-form notice (at 6) states that class counsel may seek reimbursement of costs and expenses "out of the settlement fund," but offers no estimate of the amount that counsel may seek. This omission is of special concern in a case such as this one, in which the docket lists more than 16,000 entries, suggesting that the costs may be quite high. Yet because neither notice gives class members any idea of how much class counsel's costs and expenses may be, or even gives notice of the many types of expenses to be paid from the fund, the class has no way to know or estimate by how much these costs and expenses will reduce the settlement fund. The notices' failure to provide even an estimated amount of costs that class counsel will seek further makes it impossible for class members to evaluate whether the settlement will afford them real value or merely a de minimis recovery. *Cf. In re Ford Motor Co.*

*Bronco II Products Liability Litigation*, 1995 WL 222177, *9 (E.D. La. 1995) (rejecting proposed settlement, where, among other things, "[w]hile plaintiffs receive no to little compensation for their claims, class counsel seek attorneys' fees and expenses of $4,000,000 . . . [and] [t]he class has never been notified of the amount of fees requested by class counsel"); *see also In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1130 (7th Cir. 1979) (without "reliable estimate of the aggregate amount of attorneys' fees and expenses," class members "could not determine the possible influence of attorneys' fees on the settlement in considering whether to object to it"); *General Motors Corp. v. Bloyed*, 616 S.W.2d 949, 957 (Tex. 1996) ("[T]he settlement must be set aside because the class members did not receive adequate notice of all the material terms of the proposed settlement, specifically the projected amount of attorney's fees and expenses.").

In addition to class counsel's costs and expenses (including filing fees, deposition costs, and expert fees, such as those of notice expert Wheatman), the settlement provides for "other counsel" to seek reimbursement of costs and expenses. Sett. Agmt. at III, ¶ 16. The filing fees alone for the 262 federal-court cases and 63 state-court cases listed in Exhibit A to the settlement agreement represent fees in excess of $100,000. The amount distributed to the class will be further reduced by the cost of the notice program, escrow fees, fees of the Special Master and the Court Appointed Disbursing Agent ("CADA"), fees of "any Person retained by the Special Master or CADA," and the costs of administering the settlement. *See* Sett. Agmt. at III, ¶¶ 12, 15-17. After all the many types of fees mentioned in the settlement agreement are deducted from the fund, the average payment to class members may be inconsequential. Yet this fact is impossible to discern from the notice.

As notice expert Wheatman stated in an article addressing notice to victims of Hurricane Katrina, adequate notice must "do[] everything possible truly to inform people." Hilsee, *et al.*,

7

*Hurricanes, Mobility, and Due Process*, 80 Tulane L. Rev. at 1805. The notice in this case fails to meet that standard. The notice is defective for failing to provide class members any way of assessing the amount of money, if any, that they will receive through this settlement of their claims.

## II. Because The Levee Districts' Assets Are Not Limited To The Amount Of The Settlement Fund, The Settlement Cannot Be Approved Under Rule 23(b)(1)(B), And Class Members Must Be Given An Opportunity To Opt Out.

The settling parties argue that the Court should certify a mandatory settlement class under Federal Rule of Civil Procedure 23(b)(1)(B) because the insurance proceeds are a limited fund insufficient to pay the class members' claims. They contend that the insurance policy is the only source available to compensate the class because the levee districts' assets are exempt from seizure under Louisiana law. *See* La. Const. Art. XII, § 10(C); La. R.S. 13:5109(B)(2). The settling parties are correct that, as political subdivisions of the State, the levee districts' property is not subject to seizure to satisfy a judgment. However, the limitations on collecting a judgment against the levee districts do not mean that the levee districts qualify as "limited funds." To the contrary, Louisiana law provides that "[a]ny judgment rendered in any suit filed against . . . a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only . . . out of funds appropriated for that purpose by the named political subdivision[.]" La. R.S. 13:5109(B)(2). Thus, the levee districts could appropriate funds to compensate the class, either as part of a settlement or to satisfy a judgment. Because the insurance proceeds are not the only way a judgment could be satisfied or a settlement funded, this case does not satisfy Rule 23(b)(1)(B).

A court should not certify a mandatory settlement class under a limited fund theory unless and until the proponents of certification demonstrate that the defendants have made the maximum

8

possible contribution to the settlement fund. As the Supreme Court explained in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999), to justify a Rule 23(b)(1)(B) class, the proponents of class certification must show "that the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims." The settling parties have failed to make this showing because they assume that all recovery must come from the proceeds of the insurance policy. In fact, however, the levee districts are authorized by law to appropriate funds for the purpose of satisfying judgments or making payments as part of a compromise agreement. La. R.S. 13:5109(B)(2). Accordingly, the insurance proceeds do not represent the maximum fund available to satisfy the class claims. Similarly, under *Ortiz*, the defendant in a limited fund case may not benefit by holding back assets that could be devoted to satisfying the claims. 527 U.S. at 839. Rather, the class must be "given the best deal[.]" *Id.* Here, the settling parties have failed to show that the levee districts could not make appropriations to enhance the settlement fund.[2]

In the absence of a true limited fund, a class action settlement must afford absent class members the right to opt out. Particularly where, as here, the settlement fund appears to be grossly inadequate to provide real benefit to the class, class members should not be stripped of their ability

---

[2] Further, the Court should not approve the settlement because, as a result of the settling parties' error in equating the levee districts' exempt-from-seizure status with a limited fund, the notice misinforms the class about its ability to receive compensation from the levee districts. Both the long-form and short-form notices state: "Please note that, under law, the Settlement Class can get no additional money or property in this settlement because the Settling Defendants are governmental bodies." This statement is misleading. The class can get no additional money or property "in this settlement" because the settlement does not provide for any additional recovery. However, "under law," the class could get additional recovery because the law does not preclude the levee districts from appropriating additional money to contribute to a settlement or to satisfy a judgment.

to opt out and proceed on their own. Although collecting a judgment from the districts or negotiating a higher settlement with them might be difficult, there is little downside risk for class members who opt out because their recovery from this settlement appears to be minimal. In addition, if class members obtain judgments against the levee districts, those judgments may provide an impetus for the appropriations necessary to provide meaningful relief. Thus, under Rule 23 and *Ortiz*, the class members must be given the choice of either (1) remaining in the settlement class, sharing in the distribution of the insurance proceeds, and releasing their claims against the levee districts, or (2) opting out of the settlement class, retaining their rights, including the right to pursue their claims against the districts, and taking their chances on collecting a judgment or settlement through appropriation by the levee districts.

### III. The Settlement Cannot Be Approved As Fair, Adequate, And Reasonable Unless It Provides Value To Class Members.

A proposed class action settlement can be approved only if it is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). And a settlement that provides little or no value to the class cannot meet this standard. As Congress noted when it enacted the Class Action Fairness Act: "Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where—(A) counsel are awarded large fees, while leaving class members with . . . awards of little or no value." 28 U.S.C. § 1711, note (Findings and Purposes at (a)(3)). In such circumstances, a proposed class action settlement must be rejected. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 221 (D. Me. 2003) ( "[A] settlement is not fair where all the cash goes to expenses and lawyers, and the members receive only discounts of dubious value."); *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 28 (D. Conn. 1997) (disapproving settlement

10

where "there is a strong danger that the settlement will have absolutely no value to the class"); *In re Ford Motor Co. Bronco II Products Liability Litigation*, 1995 WL 222177 at *6 (rejecting proposed settlement that would release claims "for no or highly speculative consideration" even where "plaintiffs may face serious and significant barriers to recovery").

In this case, the proposed settlement agreement appears to offer little to individual class members. As discussed in part I, above, the settling parties have offered no means by which the class or the Court can know or estimate the value that individual class members will obtain from the settlement. However, in light of the large number of class members and the many types of costs to be deducted from the fund before any awards are made to class members, the fund's value to the class appears to be very small. Accordingly, assuming that the limited fund concept of Rule 23(b)(1)(B) could be stretched to apply in a case where the defendants have significant assets but the plaintiffs' ability to enforce a judgment is restricted by law, the Court should order the settling parties to provide—in advance of a decision on final approval—an accounting or estimate of costs and expenses (including litigation costs, notice costs, special master fees, CADA fees, and other fees recoverable from the settlement fund) that will be deducted from the fund, and thus from the amount available to pay class members. If the proposed settlement will not provide real benefit to the class, applying the limited fund construct to this case would be even less reasonable, and the settlement should not be approved.

## IV.   The Court Should Not Approve The Proposed Settlement As Long As The Agreement Allows Counsel To Seek An Enhancement Of Actual Costs.

The settlement agreement provides that "Class Counsel and counsel of any Class Member shall have the right to seek an award from the Escrowed Funds for fees, costs and expenses

11

*(including any enhancement of costs and expenses* as may be awarded by the Court)[.]" Sett. Agmt. § III, ¶ 16 (emphasis added). Similarly, the class notice (at ¶ 16) states that Class Counsel and other counsel for individual class members may request costs and expenses, and "[t]he Court may award *more* or less than the actual costs and expenses" (emphasis added). In some circumstances, a court may enhance an award of *attorney fees. See, e.g., Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (listing factors for determining a reasonable attorney fee award). However, the settling parties' suggestion that the Court may award an enhancement of *costs* runs contrary to the Louisiana Rules of Professional Conduct and is unsupported in the case law. Because the agreement holds open the possibility of counsel recovering more than reimbursement of their actual costs, the Court should not approve the agreement with that provision in it.

First, an award of court costs and expenses of litigation is intended to reimburse counsel for sums actually incurred in the litigation. Class counsel has offered no rationale for allowing the Court to enhance an award of costs and expenses, and none is apparent. *See Billiot v. K-Mart Corp.*, 764 So.2d 329, 335 (La. App. 2000) (observing that rationales for award of attorney fees may not apply to litigation expenses). In the only case we could locate in which a trial court had applied a multiplier to both attorney's fees and costs, on appeal the prevailing party "conceded that applying the multiplier to costs was not appropriate." *Parks v. Eastwood Ins. Services, Inc.*, 240 Fed. Appx. 172, 176 (9th Cir. 2007).

Second, the Louisiana Rules of Professional Conduct allow a lawyer to "advance court costs and expenses of litigation, . . . provided that the expenses were reasonably incurred." R. Prof. Conduct 1.8(e)(1); *see also id.* at 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect . . . an unreasonable amount for expenses."). These rules make clear that although a lawyer

12

may seek repayment of expenses, such reimbursement may not include a profit for the lawyer. For example, Rule 1.8(e)(3) provides that a lawyer may charge certain items as recoverable costs "provided they are charged at the lawyer's actual, invoiced costs for these expenses." Similarly, Rule 1.8(e)(5)(i) provides that "[a]ny financial assistance provided directly from the funds of the lawyer to a client shall not bear interest, fees or charges of any nature." And where a lawyer borrows funds "to provide financial assistance to a client, the lawyer shall not pass on to the client interest charges, including any fees or other charges attendant to such loans, in an amount exceeding the actual charge by the third party lender[.]" Rule 1.8(e)(5)(ii). By providing that the Court may enhance an award of costs and expenses, the settlement agreement contemplates conduct that would violate the Louisiana Rules.

Further, the proposed settlement agreement should not be approved because the fees and costs provision is misleading to class members. Both the agreement and the notice declare that class counsel will seek no attorney fees from the settlement fund and will oppose any requests for attorney fees by other counsel for class members. *See* Sett. Agmt. § III, ¶ 16. However, allowing counsel to recover more than actual costs and expenses is the functional equivalent of allowing an attorney fee. The Court should not approve a settlement that on the one hand promises class members that no attorney fee will be awarded to counsel, while on the other hand provides an alternative mechanism for counsel to be awarded a reimbursement that contains a profit component. In the context of a purported "limited fund" settlement, in which individual class members will likely receive de minimis amounts, that counsel would contemplate a profit on expenses incurred is particularly inappropriate.

For these reasons, the Court should not approve the agreement unless the settling parties strike the provision allowing counsel to seek an enhancement of actual costs and expenses.

## CONCLUSION

For the foregoing reasons, the proposed class action settlement should not be approved.

Respectfully submitted this 11th day of March 2009,

*(signature)*

Jennifer J. Rosenbaum, Local Counsel
La. Bar No. 31946
New Orleans Workers' Center for Racial Justice
217 N. Prieur St.
New Orleans, LA 70112
(615) 423-0152
jjrosenbaum@gmail.com


*(signature)*

Michael T. Kirkpatrick, Trial Attorney
DC Bar No. 486293
*Pro Hac Vice Motion Pending*
Allison M. Zieve
DC Bar No. 424786
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202-588-1000
mkirkpatrick@citizen.org

Counsel for Objectors Mary Brinkmeyer,
Michelle LeBlanc, and Thomas C. Stuart

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2009, in accordance with the Order of Preliminary Certification of a Settlement Class, Preliminary Approval of Proposed Settlement and Stay of Certain Claims and Actions, a copy of the foregoing Objections was hand-delivered to the following counsel:

Joseph M. Bruno
LAW OFFICES OF JOSEPH M. BRUNO
855 Baronne Street
New Orleans, LA 70113

And

S. Ault Hootsell III
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534

Jennifer J. Rosenbaum, Local Counsel