UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | | NO. 05-4182 |
| | | SECTION "K" (2) |

FILED IN:  05-4181, 05-4182, 05-4191, 05-4568, 05-5237,
05-6073, -5-6314, 05-6324, 05-6327, 05-6359,
06-0020, 06-1885, 06-0225, 06-0886, 06-11028,
06-2278, 06-2287, 06-2346, 06-2545, 06-3529,
06-4065, 06-4389, 06-4634, 06-4931, 06-5032,
06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
07-0647, 07-0993, 07-1284, 07-1286, 07-1288,
and 07-1289.

### PLAINTIFFS' POST-HEARING SUBMISSION IN OPPOSITION TO
### SEWERAGE AND WATER BOARD'S MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes the Levee Plaintiffs'

Subgroup Litigation Committee, which in response to the Court's March 4, 2009 Order (Doc. #

18030), respectfully submits the following electronically-attached documents and things which

create genuine issues of material fact concerning whether the Sewerage & Water Board of New

Orleans ("S&WB") negligently dredged the 17th Street Canal.

Page 1 of 10

As the Court will recall, during the course of oral argument on March 4, 2008, it was represented by Sewerage & Water Board that it didn't "punch a hole" in the 17th Street Canal flood wall, and that the dredging returned the canal to a prior depth. These comments provoked an exchange about asymmetrical dredging and how such dredging removed a [then-existing] hydraulic barrier on the canal bottom and permitted the introduction of canal water into an underlying porous soil layer and resulted in the Orleans Parish-side flood wall's lateral displacement on the morning of August 29, 2005. Catastrophic flooding ensued.

In responding to the Court's Order, the Levee Breach Plaintiffs note that there are very many documents which could have been attached, but for purpose of responding directly and briefly, only as many as are need to prove the point are attached.

## I.  OFF-CENTER DREDGING

The "already of record" documents identified below and attached in copy show conclusively that the S&WB's dredging was off-center in the 17th Street Canal. Photographs show that canal water stopped part way up the flood wall on the Orleans Parish side whereas a substantial batture-type strip of earth existed *inside the canal* between the water and the flood wall on the Jefferson Parish side. Other documents identified below also show that the canal bottom was dredged off-center.

These photographs and documents fully support the Levee Breach Plaintiff's position that a genuine issue of material fact exists as to whether this off-center dredging (*i.e.*, changes in the dredging profile during dredging) caused the 17th Street Canal flood wall failure, and whether S&WB was negligent.

**Exhibits showing off-center dredging:**

1.      The National Geographic Channel photograph entitled *When the "Levee" broke (17th Street Canal)* is in part one of the July 22, 2007 Affidavit of expert Dr. Robert Bea, filed in connection with the Levee Breach Plaintiff's August 2, 2007 memorandum opposing a motion to dismiss.  *See* Doc. 6804-2, Fig. 2 at p. 10.  The photograph clearly shows vegetation growing out of the "batture" on the Jefferson Parish side of the 17th Street Canal.[1]  The only explanation is off-center dredging toward the Orleans Parish side.

2.      Also presented in part one of Dr. Bea's July 22, 2007 Affidavit, *see* Doc. 6804-2, Fig. 5 at. P. 12, is an aerial view of the 17th Street Canal showing "batture" and vegetation on the Jefferson Parish side, but only water to the flood wall on the Orleans Parish side.  The only explanation is off-center dredging toward the Orleans Parish side, which is why directly above this photograph, Dr. Bea wrote:

> **"Due to the off-centerline dredged profile of the canal, the top of the levee on the east canal side was approximately 6 feet lower than on the west side.  The west side would support vegetation while the east side was normally underwater."**

(Emphasis added)

Fig. 13 at p. 17 of Dr. Bea's expert Affidavit is a cross section diagram of the canal in the vicinity of the breach.  It clearly shows (the dark shaded areas) that dredging was off-center toward on the Orleans Parish side and extended all the way to the flood wall.  On the Jefferson

---

[1] The two other photos showing off-center dredging are entitled *17th Street Canal Levees – Jefferson Parish Side* (source: Bob Bea) and *After the breach (17th Street Canal) September 1, 2005*, which were presented as Power Point illustrations of the oral arguments made by Mr. Bruno at the hearing.  Upon information and belief, a copy of the presentation was given to the Court.

Parish side, however, a large "batture" strip was left in place which provided additional support for the flood wall.

3.      In part two of his expert Affidavit, Doc. 6804-3 at pages 46-47, Dr. Bea expands on his explanation for the failure, and relates it directly to off-center dredging and consequent under-levee seepage.  The pertinent portions of his expert opinions are:

> ¶ 13.   It is my expert opinion that important contributors to the failure of the FPS adjacent to the east side of the SSC were developed by dredging performed for the OSWB and permitted and approved by the USACE.  **The dredging resulted in substantial reductions in the cross section and elevation of the east side levee of the SSC compared with that of the west side levee thereby reducing the levee and flood wall capacities to resist flood waters.  Also, the dredging resulted in deepening the canal to elevations below the tips of the sheet piling thereby exacerbating under-levee and sheet piling seepage effects** resulting in reductions in the levee and flood wall capacities to resist flood waters.

> ¶ 14.   It is my expert opinion that multiple factors associated with the dredging permit and dredging operations – including but not limited to, any **changes in the dredging profile** from that contained in General Design Memorandum No. 20 – were **major contributing factors to the failure of the I-wall at the SSC.  The permitted dredging resulted in decreases in the east side levee cross section that led to reductions in the capacity of the FPS.  The permitted dredging resulted in decreases in the soil levee top elevation which led to early water intrusion into the tension gap that developed between the sheet piling and the supporting soils on the canal side.**  This development led to important and unanticipated increases in lateral water loadings and associated reductions in the soil levee capacity.  Further, the permitted dredging resulted in increasing the hydraulic conductivity between the SSC and the protected side which lead to further reductions in the lateral capacity of the FPS.

(Emphasis added)

4.      At ¶ 9 of his March 5, 1981 memorandum (Exhibit F 12, submitted manually in connection with Doc. 6804,  Plaintiffs' memorandum opposing the motion to dismiss), the U.S. Army Corps of Engineers' Frederic Chatry wrote about the application of the S&WB to dredge to

improve drainage in Metairie:

> The drawings indicate that some excavation is planned for the canal bank on the Jefferson Parish side. The applicant will be responsible for any erosion to the bank as a result of his operations. **The applicant should fertilize and seed the excavated bank above the water surface.** Other erosion protection at and below the water surface will be required if it is necessary.

(Emphasis added)

Here, it is plain to see that off-center dredging is contemplated. Otherwise, why would the Corps require the S&WB to "fertilize and seed" the Jefferson Parish side of the canal?

## II. THE PRE-DREDGING "CAP" ON THE CANAL BOTTOM

At the March 4, 2009 hearing, S&WB tried to focus the Court's attention on who designed, built, and was responsible for the 17th Street Canal flood walls. S&WB also told the Court its dredging did not "punch a hole" in the flood wall. Although the latter statement is literally true, it is a red herring. In response, Plaintiffs told the Court that while the S&WB's dredging did not "punch a hole" in the flood wall in a *Grubart*-like sense,[2] the dredging nevertheless punched through the existing "hydraulic cap" on the canal bottom (at S&WB's behest) and allowed the lateral "seepage effects" explained in Dr. Bea's Affidavit. The existence of this "cap" is referenced in documents which are already of record.

**Exhibits showing the existence of a "seal" through which S&WB dredged:**

**5.**      At page 7, ¶ 17, of its August 23, 1982 *Additional Subsoil Investigation Sewerage and Water Board of New Orleans Metairie Relief Canal* report prepared for Modjeski and Masters (Exhibit F 19, submitted manually in connection with Doc. 6804, Plaintiffs' memorandum

---

[2] *Grubart v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995).

opposing the motion to dismiss), Eustis Engineering Company discussed the likely "we're going

to create a problem where none now exists" impact of dredging through the "seal" on the sides

and bottom of the canal:

> **Although excess hydrostatic pressures are not presently evident in the sand stratum, the planned improvements to deepen and enlarge the canal may remove the seal that has apparently developed on the bottom and side slopes, thereby allowing a buildup of such pressure in the sand stratum.**

(Emphasis added)

In ¶ 19, at pages 7-8, the very problem which befell New Orleans was anticipated in

Eustis' report anticipated, which said:

> **Analyses were made to determine the potential for a blow-out at the landside toe of the levee due to hydrostatic uplift pressure from high water in the canal. The computations were based on the assumption that the planned improvements [*i.e.,* dredging] may allow development of excess hydrostatic pressure in the underlying sand stratum.**

(Emphasis added)

In ¶ 21 at p. 8, Eustis made an ominous prediction, writing that:

> **Between stations 617+50 and 663+00, computations indicate the possibility of a blow-out during extreme high water in the canal. Unless more definitive information can be developed regarding the potential hydrostatic uplift pressure at the levee toe through this reach, measures should be taken to prevent a blow-out during extreme high water conditions.**

(Emphasis added)

### III. UNSTABLE SOILS BELOW THE CANAL AND THE FLOOD WALLS

Not only was there a known danger posed by allowing "excess hydrostatic pressure" in

the underlying sand stratum, it was also well-known that unstable soils were present below the

canal and the adjoining areas.

**Exhibits showing the existence of unstable soils below the canal:**

6.      At ¶ 1 on p. 1 of the September 16, 1977 memorandum concerning the outfall canals, a

U.S. Army Corps of Engineers employee named Picciola addressed what was under the under the

outfall canals.  He wrote:

> We have completed a research of the available soil and geologic information.
> **This data indicates the presence of a buried beach sand deposit that
> underlies the outfall canals.  This sand deposit approaches the bottom of each
> outfall canal, creating the potential for excessive and dangerous hydrostatic
> uplift pressures during high stages in the canals.**  Additionally, there are
> reaches in each of the outfall canals that presently do not meet minimum stability
> requirements even during normal stages.

(Emphasis added)

7.      At p. 3 of its February 6, 1981 stability analysis for the sheet pile walls, (Exhibit F 19,

submitted manually in connection with Doc. 6804,  Plaintiffs' memorandum opposing the

motion to dismiss), Modjeski and Masters wrote:

> **This analysis indicates that portions of this wall <u>are extremely unstable</u> as
> they now stand.  This instability, even under normal water elevations, is due
> to several factors:  a) the soft to very soft clays which make up the soil
> structure.....**

(Emphasis added)

8.      At ¶ b. on p. 1 of his February 12, 1982 memorandum,  (Exhibit F 18, submitted

manually in connection with Doc. 6804,  Plaintiffs' memorandum opposing the motion to

dismiss), U.S. Corps of Engineers' Engineering Division Chief Frederic Chatry wrote:

> **According to our analysis, there appears to be a stability problem between
> sta. 625+00 ans sta. 670+00 where the excavation of the canal will directly tap
> the sands underlying the levee.**  A stability analysis should be done fore the
> landside of the canal incorporating the effects of seepage to determine what
> corrective action is needed.

(Emphasis added)

9.      At pages 54-55 of the transcript of the March 31, 1981 Public Hearing on the S&WB's

application to dredge the 17th Street Canal, (Exhibit F 13, submitted manually in connection with

Doc. 6804,  Plaintiffs' memorandum opposing the motion to dismiss), a Mr. Conway discussed

why the drainage volume problem couldn't be solved by raising the canal levees "so that we

could have  more capacity in the canal in a vertical manner rather than a horizontal manner."   He

testified:

> One approach to the problem and one that I said we're trying to explore is raising
> the levees, but we've found that – well, I won't say raising the levees so much as
> widening the canal adjacent to the levee, steepening their slopes.  We found we
> can't do that.  **The levees are currently – I won't say on the point of imminent
> collapse, because they're not – but they currently violate the Corps of
> Engineers standards for levee stability.**  These standards generally require a 1.3
> factor of safety on what is called slope stability.  They violate that standard
> virtually along the canal.  **Any attempt by us to dig more dirt away adjacent to
> those levees tends to worsen that stability problem.**  We're currently
> investigating this in great detail.  We're starting a detailed investigation.

(Emphasis added)

## IV.  CONCLUSION

The referenced and attached documents, all previously made of record, clearly show a

timely awareness by S&WB and others that unstable soils underlay the 17th Street Canal, and that

dredging the canal would remove a "seal" which had accreted on the canal bottom and sides.

The known consequences of removing this "seal" was the introduction of canal water into the

underlying beach-type sand layer and creating the potential for excessive and dangerous

hydrostatic uplift pressures during high stages in the canals.   Despite this knowledge, S&WB

engaged in off-center dredging which exacerbated this problem on the Orleans Parish side of the

17th Street Canal, and tragedy struck on August 29, 2005.

These documents clearly show that genuine issues of material fact exist concerning

whether the S&WB negligently dredged the 17th Street Canal, and that S&WB's motion for

summary judgment should be denied.

Respectfully submitted,

/s/ Joseph M. Bruno
Joseph M. Bruno (La. Bar# 3604)
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-1335
Plaintiffs' Liaison Counsel

Gerald E. Meunier (La. Bar# 9471)
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: (504) 522-2304
Liaison Counsel, Levee Plaintiffs' Sub-Group Litigation Committee

Darlene M. Jacobs (La. Bar # 7208)
Jacobs, Sarrat & Lovelace
823 St. Louis Street, New Orleans, LA 70112
Levee Plaintiffs' Sub-Group Litigation Committee

Richard M. Martin, Jr. (La. Bar #8998)
Law Office of Richard M. Martin, Jr., L.L.C.
20 Versailles Boulevard
New Orleans, LA 70125-4114
Telephone: (504) 861-8476
Levee Plaintiffs' Sub-Group Litigation

## CERTIFICATE OF SERVICE

I certify that on March 18, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all participating counsel of record. I further certify that there are no non-CM/ECF participants that would require a first-class mailing to of the foregoing document and notice of electronic filing.

/s/ Joseph M. Bruno

Joseph M. Bruno
