UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISAINA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K" (2), (3) |
| PERTAINS TO LEVEE AND MR-GO: | * | |
| | * | |
| NO. 06-5116 (SIMS) | * | |
| NO. 06-5118 (RICHARD) | * | JUDGE DUVAL |
| NO. 06-5127 (DEPASS) | * | |
| NO. 06-5128 (ADAMS) | * | MAG. J. KNOWLES |
| NO. 06-5134 (CHRISTOPHE) | * | |
| NO. 06-5137 (WILLIAMS) | * | |
| NO. 06-5131 (BOURGEOIS) | * | |
| NO. 06-5142 (AUGUSTINE) | * | |
| NO. 06-5132 (FERDINAND) | * | |
| NO. 06-5140 (PORTER) | * | |

******************************************

**MEMORANDUM IN SUPPORT OF OBJECTIONS
TO CLASS CERTIFICATION AND SETTLEMENT**

Plaintiffs in Case No. 06-5116 (*Sims*), Case No. 06-5118 (*Richard*), Case No. 06-5142 (*Augustine*), Case No. 06-5132 (*Ferdinand*), Case No. 06-5131 (*Bourgeois*), Case No. 06-5134 (*Christophe*), Case No. 06-5137 (*Williams*), Case No. 06-5127 (*DePass*), Case No. 06-5128 (*Adams*), and Case No. 06-5140 (*Porter*), who filed Complaints under F.R.C.P. 20 (the "Objecting Plaintiffs"), object to the proposed settlement submitted by the Board of Commissioners of the Orleans Levee District, the Orleans Levee District, the Board of Commissioners of the Lake Borgne Basin Levee District, the Lake Borgne Basin Levee District, the Board of Commissioners of the East Jefferson Levee District, the East Jefferson Levee

District, the Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East, the Southeast Louisiana Flood Protection Authority-East (sic), and St. Paul Fire and Marine Insurance Company (the "Joint Applicants") on the grounds set forth in Plaintiffs' Amended Objections to Proposed Certification of Settlement and Notice of Intent to Appear filed on March 13, 2009.  This Memorandum in Support is being filed with leave of court granted on March 10, 2009 (Dkt. No. 18,081).  We also adopt by reference as if incorporated herein the Objections of Class Members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart, filed on or about March 11, 2009.

**I.     Introduction**

The Joint Applicants consist of:  (1) a handful of individuals seeking to represent a class of plaintiffs who incurred monetary losses in Louisiana and/or suffered personal injuries due to levee failures following Hurricanes Katrina and Rita in 2005;  (2) the three separate settling defendant Levee Districts of Orleans, Lake Borgne Basin and East Jefferson, and each of their respective Boards of Commissioners;  (3) the settling defendant Southeast Louisiana Flood Protection Authority-East and its Board of Commissioners; and (4) the Joint Applicants' insurer, St. Paul Fire and Marine Insurance Company.  These Applicants are seeking certification of a mandatory, non-opt-out settlement class of all persons who were living in or owned property in the area of Louisiana affected by Hurricanes Katrina and Rita and who incurred monetary losses and/or personal injury damages as a result of any levee failures.  They are asking the Court to grant final approval of a settlement that would provide in the aggregate less than $21 million to

hundreds of thousands, perhaps more than a million, affected plaintiffs,[1] with no specified means or structure for distribution of the settlement proceeds. The Joint Applicants have alleged the existence of a limited fund, which they contend warrants class certification pursuant to Fed. R. Civ. P. 23(b)(1)(B).

On December 15, 2008, this Court preliminarily approved the proposed settlement, finding that the requisites of Fed. R. Civ. P. 23 (a), (b)(1)(B) and (e) were met and that this case

> present[s] a definable limited fund insufficient to satisfy the claims of Class Members such that prosecuting separate actions by or against individual Class Members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Dkt. No. 16,721, at 3, ¶¶ "J" & "M." The Court, however, did not set forth any basis for this finding nor did it specify the evidence upon which the Court's decision rested. With all due respect, we disagree with the Court's ruling.

The Joint Applicants have failed to make the requisite showing of entitlement to class certification under Fed. R. Civ. P. 23(a), they have not met their burden of proving the existence of a limited fund, they have not provided for allocation of proposed settlement funds to Class Members in a way that would account for inherent conflicts of interest among Class Members, they have failed to demonstrate that the settlement is fair, adequate and reasonable and that they can provide adequate representation, and the class notice issued in this case was inadequate and misleading. For these reasons, more fully set forth below, the Joint Motion should be denied.

---

[1] *See* T. Hilsee, G. Intrepido & S. Wheatman, *Hurricanes, Mobility, and Due Process: the "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE L. REV. 1771, 1787 (2006) ("Hurricane Katrina displaced more than 1.36 million people from their former addresses" and "'more than a third of the region's 1.7 million residents lived in areas that suffered flooding or moderate to catastrophic storm damage, according to FEMA.'").

3

**II.     The Joint Applicants Have Not Proven the Existence of a Limited Fund**

This proposed Settlement is not to be tested by the six part fairness test of *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983). It must instead be tested by the rigorous criteria applicable to limited fund class actions under Fed. R. Civ. P. 23(b)(1)(B) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834, 119 S. Ct. 2295, 2309 (1999), and by the more general concern -- the "undiluted, even heightened attention" -- that must be trained on the certification of a class for settlement purposes under *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997).

    A.     **This is Not a "Classic Limited Fund Case"**

Embedded in our jurisprudence is the "deep-rooted historic tradition that everyone should have his own day in court." *Martin v. Wilks*, 490 U.S. 755, 762, 109 S. Ct. 2180, 2184 (1989), *quoting* 18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE §4449, p. 417 (1981). Certification of a limited fund settlement class under Fed. R. Civ. P. 23(b)(1)(B), therefore, necessarily raises constitutional concerns about the mandatory resolution of individual legal claims. Where plaintiffs' Seventh Amendment right to a jury trial is taken away and where plaintiffs are bound *in personam* by the court's judgment even though they are absent parties, courts must be mindful of "the tension between the limited fund class action's pro rata distribution in equity and the rights of individual tort victims at law." *Ortiz v. Fibreboard Corp.*, *supra*, 527 U.S. at 845, 119 S. Ct. at 2313-14 (reversing certification of mandatory settlement class of asbestos personal injury claimants); *Amchem Prods., Inc. v. Windsor*, *supra*, 521 U.S. at 613, 117 S. Ct. at 2245; *see also Klein v. O'Neal, Inc.*, 2006 WL 325766 (N.D. Tex.) (refusing to certify mandatory limited fund class in mass tort action for drug).

The Rules Enabling Act instructs that rules of procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Accordingly, the United States Supreme Court has cautioned against an expansive use of the limited fund class action, holding that "applicants for certification [of a mandatory non-opt-out settlement class] must show that the fund is limited by more than the agreement of the parties, and has been allocated to claimants belonging within the class by a process addressing any conflicting interests of class members." *Ortiz*, 527 U.S. at 821, 119 St. Ct at 2302.

In *Ortiz,* the Supreme Court reversed the certification of a mandatory Fed. R. Civ. P. 23(b)(1)(B) class of plaintiffs suffering from exposure to asbestos, finding that the prerequisites to the maintenance of such an action were unsupported by the record. The defendant in that case had reached a global settlement of its personal injury liability with plaintiffs' counsel and its insurance providers, but there was no evidence that the fund was inadequate to pay all claims, other than the agreement of the parties. In *Ortiz*, the Supreme Court observed:

> The cases forming this pedigree of the limited fund class action as understood by the drafters of Rule 23 have a number of common characteristics, despite the variety of circumstances from which they arose.
> \* \* \*
> The first and most distinctive characteristic is that the totals of the aggregated liquidated claims and the fund available for satisfying them, *set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims.*
> \* \* \*
> Second, the whole of the inadequate fund [is to] be devoted to the overwhelming claims.
> \* \* \*
> Third, the claimants identified by a common theory of recovery [are] treated equitably among themselves. The cases assume that the class will comprise everyone who might state a claim on a single or repeated set of facts, invoking a common theory of recovery, to be satisfied from the limited fund as the source of payment.

527 U.S. at 838-39, 119 S. Ct. at 2311 (Emphasis added.)

*Ortiz* acknowledged that "there are good reasons to treat these characteristics as presumptively necessary, and not merely sufficient, to satisfy the limited fund rationale for a mandatory action." *Id*., 527 U.S. at 842, 119 S. Ct. at 2312. Thus, *Ortiz* held that in order to qualify for "mandatory class treatment through representative actions on a limited fund theory," there must be "a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution." 527 U.S. at 841, 119 S. Ct. at 2312; *In re Simon (II) Litig.*, 407 F.3d 125, 136-38 (2nd Cir. 2005).

The Joint Applicants here have failed to meet the requirements for certifying a limited fund class. At the outset, a proper inquiry into "the fund available…for satisfying" the "most distinctive characteristic" of a limited fund has not been made. The issue will remain in great doubt until there has been full discovery of St. Paul Fire & Marine and the Levee Boards' insurance agencies.

Moreover, contrary to their assertion, this is not "a classic limited fund case." J. A. Memo. in Support of Certification, at 5. As the Supreme Court observed in *Ortiz*, "it is clear that the [Rule 23] Advisory Committee did not contemplate that the mandatory class action codified in subdivision (b)(1)(B) would be used to aggregate unliquidated tort claims on a limited fund rationale." *Ortiz*, 527 U.S. at 843, 119 S. Ct. at 2313.[2] Unquestionably, "serious constitutional concerns [accompany] any attempt to aggregate individual tort claims on a limited fund

---

[2] As the Supreme Court explained: While the [Rule 23] Advisory Committee focused much attention on the amenability of Rule 23(b)(3) to [mass accident] cases, the Committee's debates are silent about resolving tort claims under a mandatory limited fund rationale under Rule 23(b)(1)(B). It is simply implausible that the Advisory Committee, so concerned about the potential difficulties posed by dealing with mass tort cases under Rule 23(b)(3), with its provisions for notice and the right to opt out, see Rule 23(c)(2), would have uncritically assumed that mandatory versions of such class actions, lacking such protections, could be certified under Rule 23(b)(1)(B). 527 U.S. at 843-44, 119 S. Ct. 2313-14.

rationale." *Id.*, 527 U.S. at 842, 119 S. Ct. at 2313.

This case is unlike the traditional limited fund examples outlined in *Ortiz*, each of which involved claimants' entitlement to a single pot of money based on their common claims arising from the same incident.[3] Under *Ortiz*, "[a]t the least, the burden of justification rests on the proponent of any departure from the traditional norm." *Id*. The Joint Applicants mistakenly assume that the existence of limited insurance in and of itself creates a limited fund warranting mandatory class certification. And, in this particular case, it is far from clear that the insurance is so limited.[4]

The Applicants have glossed over the requirements of Fed.R.Civ.P. 23(b)(1)(B) and governing Supreme Court law. Not only have they failed to demonstrate the existence of a limited fund, but the settlement agreement does not provide for any equitable allocation of the settlement proceeds among Class Members.

The Joint Applicants have not even met the threshold requirement for achieving a limited fund class action because they have not set forth any "totals of the aggregated liquidated claims" in this case, much less evidence of valuation with respect to any single plaintiff's claim(s). The proposed class definition includes claims for property damage, clean-up costs, restoration costs, diminution of property value, personal injuries, loss of income, loss of consortium, wrongful death, survival damages, medical monitoring, punitive damages, and the like. These are

---

[3] *Cf., e.g., Guffanti v. Nat'l Surety Co.*, 196 N.Y. 452, 458, 90 N.E. 174, 176 (1909) (limited fund appropriate to equitably distribute, pro rata, available bond money among defrauded steamship ticket purchasers where all claims "grow out of the same contract"); *Nat'l Surety Co. v. Graves*, 211 Ala. 533, 534, 101 So. 190 (1924) (limited fund appropriate to equitably apportion defrauded stockholders' interest in surety bonds); *Morrison v. Warren*, 174 Misc. 233, 234, 20 N.Y.S.2d 26, 27 (1940) (limited fund appropriate where plaintiffs' property was destroyed while in possession of bankrupt debtor and fire insurance proceeds were insufficient to satisfy all claims).

[4] The Joint Applicants specifically exclude National Union Fire Insurance Company as a Released Party under the settlement. *See* Class Settlement Agreement, section II, ¶ 54. And, the settlement preserves Class Members' claims against National Union and the National Union Insurance Policy. *Id*. at section III, ¶ 5.

unliquidated mass tort claims based on levee failures in three separate levee districts in Louisiana following two separate hurricanes. It is unclear that there is even a common theory of liability. And there is no way to predict or compute at this point the value of these various claims, which are obviously not uniform in the first place.

*Oritz* expressly observed that Rule 23(b)(1)(B) was not intended to apply to cases of this type. 527 U.S. at 843, 119 S. Ct. at 2313; *see also In re Complaint of River City Towing Services, Inc.*, 204 F.R.D. 94, 96 (E.D. La. 2001) (Judge Barbier) (In denying class certification, the court noted: "like the class in *Ortiz,* the instant proposed class has not demonstrated how the distribution of funds can be accomplished on an equitable pro rata basis, *as the suit involves an unknown amount of unliquidated tort damages*.") (Emphasis added); *Carnegie v. Mut. Sav. Life Ins. Co.*, 2002 WL 32989594, *26 (N.D. Ala. Nov. 1, 2002) (where plaintiff alleged race discrimination and brought claims for civil rights violations, fraudulent inducement, negligent misrepresentation, reformation and sought declaratory and injunctive relief, the court held: "There simply is no way for the court to determine, at least at this stage of proceedings, the value of class members' claims, or what the due process limits of a punitive damage award might be. Accordingly, the court concludes that plaintiff has failed to satisfy the requirements for certification of a punitive damages class under Rule 23(b)(1)(B)."); *In re Diet Drugs Products,* 1999 WL 782560, *8 (E.D. Pa. 1999) (in denying limited fund settlement of diet drug claims, the court held "the absence of trial experience fails to provide a basis to determine the amount of the claims to be measured against the fund to be tendered, which itself is, at this time, incapable of even general ascertainment.")

Accordingly, the Joint Applicants have failed to satisfy the initial burden imposed by *Ortiz*. Moreover, at this stage of the litigation, there is no way they can do so.

B.   **Louisiana Law Does Not Create a Limited Fund**

*Ortiz* further requires that the Joint Applicants compare the aggregate value of plaintiffs' claims, "set definitely at their maximums," to the value of the available fund, "set definitely at [its] maximum[ ]," in order to demonstrate the fund's inadequacy to satisfy all claims. *Ortiz*, 527 U.S. at 838, 119 S. Ct. at 2311. At a minimum, "the settling parties must present not only their agreement, but evidence on which the district court may ascertain the limit and the insufficiency of the fund." *Id.*, 527 U.S. at 849, 119 S. Ct. at 2316.

The only argument advanced in support of the "inadequacy of the fund to pay all the claims" in this case, other than the existence of $21 million of St. Paul insurance plus interest,[5] is the fact that Louisiana's Constitution and statutes contain anti-seizure provisions. *See* La. Const. art. XII, § 10(C) and La. R.S. 13:5109(B)(2). Far from creating a limited fund, however, these laws simply provide that the legislature must appropriate funds necessary to satisfy judgments against the state or its political subdivisions in order to protect the interests of the state. The Joint Applicants have not produced any evidence that the state of Louisiana will in fact refuse to appropriate funds necessary to satisfy the judgments plaintiffs may achieve in this litigation. In fact, the Louisiana legislature appropriates many millions of dollars each year to satisfy or settle judgments against the state and its political subdivisions, departments and agencies.

The Supreme Court in *Ortiz* made clear that objecting class members "are entitled to have the issue [of a fund's sufficiency] settled by specific evidentiary findings independent of the agreement of defendants and conflicted class counsel." 527 U.S. at 853, 119 St. Ct. at 2318. Without an adequate demonstration of the "upper limit" of the fund, "no showing of insufficiency is possible." 527 U.S. at 850, 119 S. Ct. at 2317.

---

[5] Objectors challenge the Joint Applicants' assertion of the limits of available insurance, because they have not provided any independent insurance evaluations.

**III.     There is No Intention to Allocate All Available Funds to Compensate the Plaintiffs**

Under the settlement, the escrowed St. Paul insurance proceeds will be used to pay for class notice, to compensate the Escrow Agent, the Court Appointed Disbursing Agent and the Special Master, and to pay tax liabilities.  Class Settlement Agreement, section III, ¶¶ 12(a)-15.  In addition, Class Counsel "shall have the right to seek an award from the Escrowed Funds for fees, costs and expenses (including any *enhancement* of costs and expenses as may be awarded by the Court)...." *Id*. at section III, ¶ 16.  (Emphasis added.)  Although Class Counsel have agreed not to ask for attorneys' fees, it is unclear what they mean by "an enhancement of costs and expenses."  At a minimum, estimated costs will total between $2 and $3 million, which amounts to more than ten (10%) percent of the settlement fund.  This is far from what the Supreme Court had in mind when it held in *Ortiz* that "the whole of the inadequate fund [must] be devoted to the overwhelming claims."  *Ortiz*, 527 U.S. at 839, 119 S. Ct at 2311; *See also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 221 (D. Me. 2003) ("[A] settlement is not fair where all the cash goes to expenses and lawyers, and the members receive only discounts of dubious value.").

In the instant case, members will not even receive that dubious benefit, but rather, pursuant to Section IV, paragraphs 4-6 of the Class Settlement Agreement, they will be obligated to indemnify St. Paul against virtually every eventuality, making the members of the class insurers of the protection provided to St. Paul by this agreement.  Moreover, in paragraph 7, the plaintiffs will release all Katrina-related claims they might have against St. Paul, *including claims arising from St. Paul's coverage of non-settling parties who could be found liable for the plaintiff's damages*!  Thus, by funding the settlement of its levee board insureds, St. Paul would eliminate its entire exposure resulting from the 2005 hurricanes.

10

**IV.     The Proposed Class Settlement Does Not Treat Class Members Equitably**

The proposed settlement creates three subclasses - - Lake Borgne, East Jefferson and Orleans - - based only upon the location of any loss as determined by the particular levee district at issue. Plaintiffs may belong to more than one subclass. Other than the distinction between levee districts, the agreement makes no attempt to differentiate the various types of claims involved, *i.e.*, property damage versus wrongful death, for example, or the particular hurricane that prompted the damage, *i.e.*, Katrina versus Rita. The Joint Applicants have not named any separate class representatives to prosecute these divergent claims, nor have they specified a structure for the valuation of claims.

The only provision in the settlement addressing the treatment of claims states that: "After the Effective Date of Class Settlement and subject to the terms of this Agreement, the Special Master shall provide to the Court a recommended disposition and protocol with regard to the remaining Escrowed Funds, and treatment of Claims of Class members." Class Settlement Agreement, section III, ¶ 12(a) ("Distribution of Escrowed Funds"). The treatment of claims under the settlement does not meet Rule 23's requirement that a limited fund class settlement agreement provide "an equitable, pro rata distribution" of all available proceeds to class plaintiffs. *Ortiz*, 527 U.S. at 841, 119 St. Ct. at 2312. At this juncture we have no idea how plaintiffs' claims will be treated, on what basis they will be evaluated, whether certain claims will be given priority over others, whether expert opinion will be used to make these determinations, or whether, in fact, the claims will be treated equitably.

Finally, in the section entitled "II. Definitions and Construction of Terms" (¶53), the proposed settlement lists the types of claims that would be released. This description of claims requires sixteen separate subsections, and encompasses virtually every claim cognizable under

11

Louisiana or federal law - - hundreds of different claims in all. It is obvious from this definition alone that an "equitable allocation" of settlement proceeds would require a review-of-claims process that would exhaust a settlement fund many times larger than the one here proposed. The Court need look no further than this itemization of the released claims to determine that this proposed settlement is not viable under the applicable law and cannot be made viable in any semblance of its currently proposed form. The settlement simply fails to meet the requirements of a limited fund under *Ortiz*.

**V.      Certification for Partial Settlement Only**

Fed. R. Civ. P. Rule 23(e), reads in its entirety:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

According to *Amchem*, "This prescription was designed to function as an additional requirement, not a superseding direction, because the "class action" to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b)." 521 U.S. at 621, 117 S. Ct at 2248. "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted - - that if a settlement is "fair," then certification is proper." 521 U.S. at 622, 117 S. Ct. at 2249. *Amchem* then made this observation in footnote 17, which is particularly appropriate here.

> We do not inspect and set aside for insufficient evidence District Court findings of fact. [Citation omitted]. Rather, we focus on the requirements of Rule 23, and endeavor to explain *why those requirements cannot be met for a class so enormously diverse and problematic as the one the District Court certified.*

*Id*. (Emphasis added.)

12

In addition, under *Amchem*, the inquiry appropriate under Rule 23(e) "protect[s] [unnamed] class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise…." 521 U.S. at 623, 117 S. Ct. at 2249. See 7B C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE & PROCEDURE § 1797, at 340-41. This is not to suggest that the class representatives and their counsel are fainthearted; but, in fact, many of these same class members are also asserting claims against the Louisiana Department of Transportation & Development, Jefferson Parish, the Jefferson Parish Drainage District and Aaron Broussard that, because of their conduct or *garde,* they were a proximate cause of the failure of the 17th Street Canal. These claims are being successfully prosecuted[6] in *Bennett, et al. v. East Jefferson Levee District, et al.*, NO. 635-594, 24th Judicial District Court, c/w *de la Houssaye v. Parish of Jefferson, et al.*, NO. 624-894, 24th Judicial District Court.[7] Furthermore, similar claims are being prosecuted in *Rodriguez, et al. v. New Orleans Sewerage & Water Board*, 2006-9763, and *Diggs Reith v. New Orleans Sewerage & Water Board*, 06-9744, all pending in the Civil District Court for the Parish of Orleans. These actions assert claims against the Louisiana Department of Transportation and Development ("LDTD"), Jefferson Parish, the City of New Orleans, and the Port of New Orleans, raising additional matters that are not addressed in the proposed Settlement, but are implicated by a Rule 23(e) partial settlement. For instance, it is said that claims against the state are not released. But are not the South Eastern Levee District Authorities East and West the state? Their financials define them "as component

---

[6] The Trial Court has denied Peremptory Dilatory and Declinatory Exception filed by Orleans Levee District La. Dept. of Transportation and Development, East Jefferson Levee District, Jefferson Parish, The Parish Drainage District and Aaron Broussard and the City of New Orleans. Writ Applications have been denied in each case except the one against the City. The City's writ was not perfected.

[7] In January 2009, St. Paul Fire removed Bennett for a second time. *See* 09-cv-0146.

units of the state."[8]  What is the effect of the release of the Joint Applicant defendants, which include such "state component units," on the ability to prosecute claims against other state component units like LDTD and the Louisiana Department of Administration?  Are we so sure that the accountability for the fault of one component unit of the state can be separated from the fault of another, so claims against one are released and those against another are not?

May claims based upon the fault of Orleans Levee District in its involvement in the "non-centerline" east side dredging of the 17th Street Canal, two feet below sheet piling, and the failure to monitor the effect of an increase in volume and rate of drainage outflow, be released without releasing claims against LDTD for its complicity in the same cause?  Objecting Plaintiffs contend that these works proximately caused the failure of the 17th Street Canal Levee and that LDTD was so involved that it, too, shares in the same fault.  How can we release the state and not release LDTD?  And, how will it be possible to deal with the division of obligations between the state and the levee districts, component units of the state?[9]

And what is the Joint Applicants' intention going forward if the Joint Applicant defendants are released?  As noted above, no claims are asserted against the LDTD, Jefferson Parish, Aaron Broussard, or the Jefferson Drainage District, and none are asserted against the City of New Orleans.  All that would remain would be FTCA and Admiralty Act claims against the United States.  And, what if no class is certified, particularly given *Lunsford v. United States*, 570 F.2d 221 (8th Cir. 1977)?  Any approval of this Settlement must address these issues as well.

---

[8] http://app1.lla.state.la.us/PublicReports.nsf

[9]  Art. 2324. Liability as solidary or joint and divisible obligation;  B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation.  A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032.

Finally, we contend that the State delegated its duty of flood protection to the Levee Districts. Judge Duval said in connection with two of these cases, *DePass* and *Sims:*

> …[I]t appears that maintenance of the levees involved would be the duty of either the Orleans Levee District and/or the East Jefferson Parish Levee District. …It is primarily the state's duty to protect citizens from damage by flood which is inherent within its police power. Such power, however, belongs to the state; the police power may be exercised by agencies of the state only under a delegation of authority. …Thus, a levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection….

Dkt. No. 8,390, *Depass*, pp. 10-11; Dkt. No. 8,387, *Simms*, pp. 9-10.

Is this duty truly delegable?[10] Does the release of the "creature of the state…brought into existence for the purpose of discharging the state's duties," release the state? All of these questions make the certification and approval sought by the Joint Applicants highly problematic.

The settlement agreement releases all of the class members' claims against the levee boards and their "parents." (¶ 54, p.17.) Who or what are the "parents" of the levee boards? Can they be anything but the State?

What is proposed here is eerily similar to the settlement class rejected in *Amchem:* "The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." 521 U.S. at 627, 117 S. Ct. at 2251.

> [W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought

---

[10] "There are no clearly defined criteria for identifying duties that are nondelegable. Indeed, whether a particular duty is properly categorized as 'nondelegable' necessarily entails a sui generis inquiry, since the conclusion ultimately rests on policy considerations…. The most often cited formulation is that a duty will be deemed nondelegable when the responsibility is so important to the community that the employer should not be permitted to transfer it to another….This flexible formula recognizes that the privilege to farm out [work] has its limits and that those limits are best defined by reference to the gravity of the public policies that are implicated." *Faughnan v. Big Apple Car Service*, 828 F. Supp. 155, 165 (E.D.N.Y. 1993) (internal quotation marks omitted).

15

> that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups.

*In re Joint Eastern and Southern Dist. Asbestos Litig.*, 982 F.2d 721, 742-43 (2d Cir. 1992), *modified on reh'g sub nom. In re Findley*, 993 F.2d 7 (2d Cir. 1993). Such consents have neither been achieved nor even proposed in this case.

## VI.     The Class Notice Was Inadequate and Deceptive

The Supreme Court in *Ortiz* acknowledged that "traditional limited fund class actions typically provided notice to all claimants and the opportunity for those claimants to establish their claims before the actual distribution took place." 527 U.S. at 841, n.19, 119 S. Ct at 2312. The notice in this case did not inform Class Members that a mandatory, non-opt-out class was sought. Moreover, the notice did not provide any means for Class Members to ascertain their recovery under the settlement, because the agreement itself would provide no structure or formula for the payment of claims, nor would it estimate the number of claims at issue. This omission is significant in that it would deprive Class Members of due process and their rights under the law.

The notice was misleading in that it claimed "the Court will confirm that this settlement fund represents all insurance money available to the Joint Applicants." There is no independent evidence of record evaluating the amount of available insurance. The notice further misled plaintiffs by stating that "the Settlement Class can get no additional money or property in this settlement because the Joint Applicants are governmental bodies." This simply is untrue. As noted above, the Louisiana Legislature may appropriate funds to satisfy or settle plaintiffs' judgments against these bodies. Finally, the notice was misleading in its failure to disclose the

breadth of the indemnity obligations and releases imposed by paragraphs 4 through 7 of Section IV of the proposed Settlement Agreement, discussed above.

## VII.     The Requirements of Rule 23(a) Have Not Been Met

In order to achieve a limited fund class, the Joint Applicants must also meet the requirements of Fed.R.Civ.P. 23(a).  In this case, they have simply asserted without any evidence that each element of the Rule is satisfied and, using circular reasoning, that the fairness of the settlement is "an overarching common question of law and fact."  *See* J.A. Memo in Support of Certification at 6.  This presentation is insufficient to warrant class certification.  *See Amchem*, 521 U.S. at 622, 117 St. Ct. at 2249  ("Federal courts ... lack authority to substitute for Rule 23's certification criteria a standard never adopted-that if a settlement is "fair," then certification is proper.").  The Supreme Court pointed out in *Amchem* that "[t]he standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind-class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness." 521 U.S. at 621, 117 S. Ct. at 2248.  The Applicants here provide no explanation as to how each Class Representative is typical of other Class Members, nor do they demonstrate that these representatives will vigorously pursue the interests of the class.

Moreover, they have not shown, and they cannot in these circumstances show, that the named representatives are adequate to pursue the myriad of claims in this case.  The claims here are not uniform; they range from property damage claims to wrongful death, medical monitoring, punitive damages, loss of income, loss of consortium, restoration and the like.  No single person in Orleans, for example, can adequately represent all of the plaintiffs in that levee district having claims arising from Hurricanes Katrina and Rita.

In sum, the Joint Applicants "ignore[ ] the fact that Rule 23 requires protections under subdivisions (a) and (b) against inequity and potential inequity at the precertification stage, quite independently of the required determination at post-certification fairness review under subdivision (e) that any settlement is fair in an overriding sense." *Ortiz*, 527 U.S. at 858, 119 S. Ct. at 2320.

## VIII.   Conclusion

This proposed settlement presents the exact situation prohibited by the United States Supreme Court in *Ortiz* and *Amchem*: a settlement that benefits plaintiffs' counsel and the settling defendants alone. If this settlement is approved, the Plaintiffs' Committee will receive reimbursement for expenses advanced with some, as yet unspecified, multiple or "enhancement." The defendant insurer, St. Paul will enjoy a release from the payment of defense costs that would otherwise reach many multiples of the policy limits, and it will be released from all claims against all of its insureds arising from both hurricanes.  The levee boards will receive a dismissal without expenditure of any of their own considerable assets. The individual plaintiffs will receive either nothing at all, or an amount so small as to be meaningless. For all of the foregoing reasons, the Joint Motion to certify a mandatory, non-opt-out limited fund class action and to grant final approval of the proposed class settlement should be denied.

Respectfully submitted,

/s/ James K. Irvin
James K. Irvin (#7166)
MILLING BENSON WOODWARD L.L.P
909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Facsimile:    (504) 569-7001
jirvin@millinglaw.com

John J. Cummings, III (#4652)
Cummings & Cummings
416 Gravier Street
New Orleans, LA  70130
Telephone: (504) 586-0000
Facsimile:  (504) 522-8423

## Certificate of Service

I hereby certify that on the 20th day of March, 2009, I electronically filed a Memorandum in Support of Objections to Class Certification and Settlement with the Clerk of Court by using CM/ECF system which will send a notice of electronic filing to all known counsel of record in this matter and caused copies to be hand-delivered to the Clerk of Court and counsel as directed by the Court's notice.

/s/ James K. Irvin

MBW 381594