UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES * | | CIVIL ACTION |
| CONSOLIDATE LITIGATION * | | |
| * | | NO. 05-4182 |
| * | | |
| PERTAINS TO: LEVEE & MR-GO * | | SECTION "K" (2) |
| * | | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH

**NOW INTO COURT**, through undersigned counsel, comes the Levee and MRGO PSLCs, which move this Honorable Court to quash the subpoena duces tecum issued by James K. Irvin ("Irvin" or "Irvin objectors"), and to contemporaneously stay records production pending a ruling on the Motion to Quash, for the following reasons:

### I.

### FACTS

In cases arising out of allegations of hurricane related flood damages sustained during hurricane Katrina after the levees broke, certain parties have entered into a Class Settlement Agreement. Those suits, as amended, named as defendants, among others, the Orleans, East Jefferson and Lake Borgne Basin levee districts, the Board of Commissioners for each Levee District, and St. Paul Fire and Marine Insurance Company (in its capacity as the insurer for any/or all of the Levee Defendants). These parties are the Settling Defendants under the Class Settlement Agreement. The Persons released under the Class Settlement Agreement are the Settling Defendants above, together with the Board of Commissioners of the Southeast Louisiana Flood Protection Authority - East, the Southeast Louisiana Flood Protection Authority - East, and related Persons.

The purposes and intentions of the proponents of the proposed settlement are (a) to provide a fund for the benefit of the Settlement Class; (b) to provide a process by which the Claims of Class Members can be dealt with fairly; ( c) to terminate and extinguish any liability of the Released Parties for all Released Claims of the Class Members; and (d) to dismiss on the merits and with prejudice all Claims against the Related Parties asserted in the Litigation.

Due to the staggering extent of damages sustained throughout the metropolitan region as a result of levee breaches during Hurricane Katrina, the total of the Class Members' asserted claims far exceeds the total aggregate insurance proceeds. Katrina was the worst natural disaster in our Nation's history, with flood damages alone in the terms of *billions* of dollars. The Levee Districts have denied any legal responsibility for any of the Class Members' claims. However, even were the Levee Districts ultimately found liable for as little as one (1%) percent of these asserted damages, the numbers are staggering. Once the insurance proceeds are exhausted, any Class Member with a judgment against a Levee Defendant will be unable to judicially enforce it. In the absence of a settlement, the potentially available insurance proceeds would necessarily be depleted by a very small percentage of claimants, to the direct prejudice of the vast majority of claimants to follow.

The assets of the Levee Districts are exempt from seizure. *See* La. Const. Art. XII, § 10 ( C); La. R.S. 13:5109(B)(2). *See* also Fed. Rule Civ. Proc. 69(a). As political subdivisions of the State of Louisiana, the Levee Districts are entitled to the protections of Louisiana's anti-seizure provisions of La. Const. Art. XII, § 10 ( C ) and La. R.S. 13:5109 (B)(2). In addition, the levee districts also cannot be subject to a writ of mandamus to require them to appropriate additional funds to satisfy the potential judgments in this case. Hoag v. State, 2004-0857 (La. 12/1/04), 889 So. 2d 1019. Finally, the reach of Louisiana's anti-seizure provisions precludes even

recordation of a judgment from creating a judicial mortgage on the property of the governmental entity.  Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 943 So. 2d 1037 (La. 11/29/06).

The proposed settlement fund is limited because the Levee Districts' assets are immune from seizure.  Beyond this, the Levee Districts will confirm that they will not pay any extraordinary damages from their own coffers.  The Levee Districts will also confirm that they cannot pay these extraordinary claims and fulfill their obligations to protect the citizens of New Orleans and the surrounding regions from future catastrophic flooding.

Finally, the Levee Districts are unique public bodies established for the protection of the people they represent, and those assets are primarily derived from taxing the people they represent.  The Levee Districts could not levy a tax to pay for damages alleged in this case.  Further, even were this possible, the tax would have to be voted on by essentially the same people who make up the Class, thereby resulting in the preposterous proposition that the Class Members should be asked to tax themselves to pay for their damages!

The Irvin objectors set forth the following bases for their objections (See Rec. Doc. 18138):

1. There is no evidence of the inadequacy of the funds available to the Settling Defendants to pay all claims, other then the agreement of the settling parties;

2. The defendants (as opposed to their insurers) are making no contributions to the limited fund;

3. There is no showing that the potential claimants will be treated fairly or equitably among themselves;

4. The proponents of the settlement have not shown through investigation or otherwise that the insurance proceeds being paid are the only insurance proceeds available for purposes of settlement; and

    5.    The proposed settlement with the levee boards fail to meet the tests set forth by the United States Supreme Court for the approval of a "limited fund" mandatory class, either with respect to adequacy of representation or due process of law.

Only in the Memorandum in Support of Objections to Class Certification and Settlement (rec. Doc. 18221) do the Irvin plaintiffs take issue with Class Counsel recouping their expenses.

On March 27, 2009, November 19, 2007, James K. Irvin of Milling Benson Woodward, L.L.P. issued a subpoena duces tecum commanding the production of "[a]ll documentation of fees, costs and expenses which you seek from the escrowed funds pursuant to paragraph 16, Section 3 of the proposed Class Settlement Agreement." This subpoena was served on Joseph Bruno on or about March 30, 2009. (See Exhibit 1).

Thus request has no rational relation to the purpose for the objection, and as such, the court should quash the subpoena.

## II.

## THE LEVEE & MRGO PSLCS HAVE STANDING TO BRING THIS MOTION

As a result of numerous and substantial levee breaches and overtoppings during Hurricane Katrina, numerous lawsuits filed in the United States District Court for the Eastern District of Louisiana against the United States Corps of Engineers and associated entities were consolidated before Judge Stanwood R. Duval Jr., Judge, Section "K," under the caption *In Re: Katrina Canal Breaches Litigation*, USDC, EDLA, No 05-4182. Judge Duval entered Case Management Order No. 4 (CMO No. 4) on March 1, 2007 to govern the conduct of the parties. (See Exhibit 3). CMO No. 4 established the LEVEE & MRGO PSLCs as the counsel management and coordination entity to manage that respective group of the consolidated litigation. CMO No. 4, § (I)(C)(2)(b).

## III.

## **THE COURT IS ENTITLED TO QUASH THE SUBPOENA AT ISSUE**

Federal Rules of Civil Procedure, Rule 45 (c)(3)(B) holds in pertinent part:

**(3) Quashing or Modifying a Subpoena.**

**(A)** *When Required*. On timely motion, the issuing court must quash or modify a subpoena that:

>( I) fails to allow a reasonable time to comply;

>**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

>**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

>**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

>( I) disclosing a trade secret or other confidential research, development, or commercial information;

>**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

>**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

A motion to quash or modify a subpoena duces tecum may be made by a party when the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena. Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588

(D.Kan.,2003).; <u>Norris Manufacturing Co. v. R. E. Darling Co.</u>, 29 F.R.D. 1 (D.Md.1961); <u>Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York</u>, 519 F.Supp. 668 (D.C.Del., 1981).

While a party ordinarily has no standing to object to a subpoena issued to a non-party, that general rule does not apply where, as here, "the party claims some personal right or privilege with regard to the documents sought." 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2459, at 41 (1995 ed.).  <u>Atlantic Inv. Management, LLC v. Millennium Fund I, Ltd.</u>, 212 F.R.D. 395, (N.D.Ill., 2002).

### IV.

### IRVIN'S SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS IRRELEVANT INFORMATION

As pointed out above, the scope of the Irvin objection is limited, with only the memorandum in support touching on a matter remotely associated with the subpoena duces tecum at issue.

It is well established that class members who object to a class action settlement do not have an absolute right to discovery; the Court may in its discretion allow discovery if it will help the Court determine whether the settlement is fair, reasonable, and adequate. <u>In re Ford Motor Co. Bronco II Prods. Liability Litig.</u>, 1994 WL 593998, *2-3 (E.D.La. Oct. 28, 1994); <u>In re Domestic Air Transp. Antitrust Litig.</u>, 144 F.R.D. 421, 424 (N.D.Ga.1992); <u>In re Lorazepam & Clorazepate Antitrust Litigation</u>, 205 F.R.D. 24 (D.D.C.,2001).  This rule regarding class objectors is consistent with other rules regarding the judge's discretion in regulating discovery.

Likewise, the extent of discovery and use of protective orders by a judge is within discretion of judge. <u>Chemical & Indus. Corp. v. Druffel</u>,  301 F.2d 126 (C.A.6 (Ohio) 1962).

The application of discovery orders is within discretion of the trial court and may be reversed only on clear showing of abuse of discretion. Galella v. Onassis, 487 F.2d 986 (C.A.2 (N.Y.) 1973); General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204 (C.A.Mo.1973), certiorari denied, 94 S.Ct. 926, 414 U.S. 1162, 39 L.Ed.2d 116.

Where relevancy is not apparent, it is the burden of the party seeking discovery to show the relevancy of the discovery request. Steil v. Humana Kansas City, Inc., 197 F.R.D. 442 (D.Kan.,2000), citing Employers Commercial Union Ins. Co. of America v. Browning-Ferris Industries of Kansas City, Inc., 1993 WL 210012 (D.Kan. Apr.5, 1993). Irvin's blanket request for all documentation of fees, costs and expenses can have no rational relation to the subject litigation at present.

Fed.R.Civ.P. 45 does not include relevance as an enumerated reason for quashing a subpoena. However, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34. Thus, this court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production. Digital Equipment Corp. v. Micro Technology, Inc., 142 F.R.D. 488, D.Colo.,1992.

The relevance of the subpoena in question is substantiated only by the ill-taken argument set forth on page 10 of the Irvin objector's memorandum, wherein the objectors take issue with Class Counsel's recovery of their expenses in prosecuting the litigation. However, the basis of the argument is premature.

Currently, the Court must approve the settlement based upon factors set forth in Rule 23 of the federal Rules of Civil Procedure. If the Court does not approve the settlement, any claim

for expenses by Class Counsel would be irrelevant. Should the Court approve such settlement, then a claim for expenses would be presented by Class Counsel. It is at that time that the Irvin objectors should contest the justiciability of Class Counsel's expense claim. To do so now simply allows the objectors to encroach upon judicial resources by revisiting matters on multiple occasions.

But more importantly, a review of the subpoena reveals that Irvin given little consideration to the relevance of his requests and simply demands that an entire universe of documents be produced. Clearly, Irvin has given no consideration to the dynamics of this peculiar settlement. The likelihood of recovering anything greater than the available insurance is remote. Any efforts by the Settling Defendants to pay a judgment would only result in an increase in assessments to operate those public agencies. Therefore, the intent of the United States Supreme Court in evaluating a limited fund settlement, that limited fund cases "ensure that the class as a whole was given the best deal; they did not give a defendant a better deal than *seriatim* litigation would have produced" is satisfied. Ortiz v. Fibreboard Corp., 527 U.S. 815, 839, 119 S.Ct. 2295, 2311 (1999).

## V.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Quash.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

   /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
The Law Offices of Joseph M. Bruno,
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

/s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar # 11511)
MR-GO PSLC LIAISON COUNSEL
Domengeaux Wright Roy & Edwards LLC
P.O.Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: (337) 233-2796
Email: jimr@wrightroy.com

For
**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

Jonathan Andry
Clay Mitchell
Pierce O'Donnell
James Parkerson Roy

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

/s/Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
Email: gmeunier@gainsben.com

For

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**
Gerald E. Meunier
Daniel E. Becnel, Jr.
Joseph M. Bruno
D. Blayne Honeycutt
Hugh P. Lambert
Darlene Jacobs
Walter Dumas

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 1st day of April, 2009.

  /s/ Joseph M. Bruno
    Joseph M. Bruno