UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, Robinson (06-2268) | § | |
| _____ | § | |

MEMORANDUM IN SUPPORT OF
DEFENDANT UNITED STATES' MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF MENTAL ANGUISH AND INCONVENIENCE

The United States moves to exclude all evidence of "mental anguish and inconvenience" on the grounds that such damages are not recoverable in the circumstances here presented.

STATEMENT OF FACTS

All of the Plaintiffs evacuated New Orleans well before any effects of Hurricane Katrina were felt and all of them understood that their property had been affected weeks before they saw the damage.

Anthony and Lucille Franz followed the news coverage's tracking of Hurricane Katrina from the "middle of the week" of August 22, 2005, and evacuated by car to Baton Rouge on Saturday, August 27 (Deposition of Anthony Franz (hereafter "A. Franz"), excerpted as Exhibit A, pp. 35-36, ll. 5-14; p. 37, ll. 16-23; p. 38, ll. 3-5). On Sunday, August 28, 2005, Tanya Smith drove Anthony Franz and his grandsons to Spring, Texas (Deposition of Tanya Smith (hereafter "Smith"), excerpted as Exhibit B, pp. 31-32, ll.14-22; A. Franz, p. 39, ll. 10-19). On Tuesday, August 30, 2005, the same group drove back to Baton Rouge (Smith, p. 33, ll. 4-19), where Anthony and Lucille Franz stayed for four to five weeks (Smith, p. 33, ll. 20-23; A. Franz, p. 41, ll. 2-6). During their stay in Baton Rouge, Anthony and Lucille Franz came to realize that their house at 5024-26 St. Claude Avenue had been flooded (A. Franz, pp. 42-43, ll. 17-2).

Norman Robinson evacuated New Orleans through an automobile trip to Jackson, Mississippi on Sunday, August 28, 2005.  He worked broadcasting news in Jackson for four weeks, then returned to New Orleans (Deposition of Norman Robinson (hereafter "N. Robinson"), excerpted as Exhibit C, pp. 27-43, ll. 14-1).  On the same day, Monica Robinson evacuated New Orleans by car to Mobile, Alabama, where she met her sister (Deposition of Monica Robinson (hereafter "M. Robinson"), excerpted as Exhibit D, pp. 22-25, ll. 2-11).  Norman and Monica Robinson heard from Monica's brother that their neighborhood had flooded, but did not understand the extent of the damage to the house until they each returned to New Orleans in October and visited the house (N. Robinson, pp. 45-51, ll. 12-10).

Kent Lattimore left New Orleans on a cruise ship on Saturday, August 27, 2005, headed for a seven-day vacation in the Caribbean (Deposition of Kent Lattimore (hereafter "Lattimore"), excerpted as Exhibit E, pp. 27-28, ll. 20; pp. 30-31, ll. 25-2). When Hurricane Katrina blocked the ship's intended track, it diverted to Galveston (Lattimore, p. 31, ll. 2-8).  Mr. Lattimore watched CNN on the cruise ship and heard conflicting reports about flooding in St. Bernard Parish (Lattimore, p. 30, ll. 11-23).  He returned to New Orleans on September 10, 2005, retrieved his pickup truck from a parking space on Burgundy Street, and drove to his house and business in Chalmette (Lattimore, pp. 32-33, ll. 21-19; p. 34, ll. 9-24).

Tanya Smith sent her sons to Baton Rouge on Saturday, August 27, 2005 (Smith, p. 29, ll. 3-25), then followed them later that day (Smith, pp. 30-31, ll. 1-13).  On Sunday, August 28, 2005, she drove her sons and her father to Spring, Texas (Smith, pp. 31-32, ll. 14-22). On Tuesday, August 30, 2005, the same group drove back to Baton Rouge (Smith, p. 33, ll. 4-19), where they stayed for four to five weeks (Smith, p. 33, ll. 20-23).  Tanya Smith understood that

her house had flooded on Tuesday, August 30, 2005, when she received a telephone call from a cousin, who said "the whole parish had been flooded." Ms. Smith then found an internet website with photographs showing the flooded neighborhood (Smith, pp. 38-39, ll. 1-3).

## ARGUMENT

Plaintiffs brought suit under the Federal Tort Claims Act ("FTCA"), which provides that the United States may be held liable according to the law of the state where the alleged negligence occurred "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674 (2008).  Louisiana law will therefore apply on all issues of damages.

The Fifth Circuit succinctly stated Louisiana's law concerning mental anguish and inconvenience damages as:

> We again apply the substantive law of Louisiana. That substantive law allows a plaintiff to recover for "fright, fear, or mental anguish" sustained while an ordeal is in progress, regardless whether the plaintiff is physically injured. Louisiana does not, however, allow recovery for mental anguish occasioned by another's injury or suffering.  The sole exceptions to the rule precluding recovery for mental anguish resulting from another's injuries are in cases of wrongful death and cases in which the anguish is in fact caused by the breach of a "primary and independent legal or contractual duty which is owed directly to the aggrieved plaintiff."
>
> Louisiana law also allows a plaintiff to recover for mental anguish suffered as a result of damage to property, but only in limited circumstances: (1) when property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result.  "[T]he mental anguish must be a real mental injury. The usual worry over the consequences of property damage (where a plaintiff suffers no direct mental injury from the negligent act) will not justify an award for mental anguish damages."

*Turgeau v. Pan American World Airways, Inc.*, 764 F.2d 1084, 1087, *rehr'g denied*, 770 F.2d

164  (5th Cir. 1985)(citations omitted).  *See also*, *Tudela v. Pan American World Airways, Inc.*, 764 F.2d 1082 (5th Cir. 1985); *Bode v. Pan American World Airways, Inc.*, 786 F.2d 669, 672 (5th Cir. 1986).  The Fifth Circuit further recognized that;

> The Louisiana decisions which have allowed recovery for mental anguish when property was damaged in the owner's presence typically involve situations in which the damage was sudden, the realization of damage on the part of the owner equally sudden, and the mental distress clearly caused by the property damage.

*Harper v. Illinois Central Gulf Railroad*, 808 F.2d 1139, 1141-42 (5th Cir. 1987).

The Louisiana Supreme Court defined the "mental anguish and inconvenience" for which recovery is allowed under Louisiana law as:

> The "mental anguish" which plaintiff experienced was the normal worry and distress that any owner is going to experience in some degree when his property is damaged- worry over possible financial loss, settlement of insurance claims, discomfort or inconvenience while repairs are made, having to attend to repairs and the like. Every incident of damage to property is necessarily accompanied by some degree of worry or mental upset on the part of the owner of the damaged property.
>
> Such minimal worry over the consequences of damage to one's property is not "damage" which one whose fault caused damage to the property is obligated to repair under LSA-C.C. Arts. 2315 and 2316.  Stated otherwise, the duty not to negligently cause damage to another's property does not protect against the risk of causing minimal and normal worry and inconvenience to the owner of the property as a consequence of the property damage.

*Farr v. Johnson*, 308 So.2d 884, 885 (La. 1975).

While the precedents quoted above generally analyze the availability of  "mental anguish" damages, the same criteria are applied to damages for "inconvenience" under Louisiana law.  They are awarded only upon a showing that the plaintiff was in a zone of danger or present to witness property damage.  *McDonald v. Illinois Central Gulf Railroad Co.*, 546 So.2d 1287, 1292 (La. App. 1st Cir.), *writ denied*, 551 So.2d 1340 (La. 1989).  Cleaning and repairs after the

4

immediate danger to persons and property has passed do not merit inconvenience damages. *Napolitano v. F.S.P., Inc*., 797 So.2d 111, 115 (La. App. 4th Cir. 2001).

Louisiana law provides no remedy for mental anguish or inconvenience where plaintiffs are neither physically injured by an ordeal in progress, *Tudela*, nor present when their property is damaged, seeing the damage only weeks later. *Harper*, 808 F.2d at 1142. That is the case here, as all of the Plaintiffs in this action evacuated New Orleans 24 to 48 hours prior to the arrival of the winds, rains, and/or flooding that damaged their homes. None of these Plaintiffs was ever threatened with physical injury or subjected to the sudden shock of seeing their property damaged. They learned of the damage visited on their homes by Hurricane Katrina through news reports and conversations with friends and family. Louisiana law does not recognize mental anguish or inconvenience in this situation and evidence on these topics is properly excluded where there is no proper basis for the recovery of such damages. *Harper*, 808 F.2d at 1142.

## CONCLUSION

For the foregoing reasons, all evidence of "mental anguish and inconvenience" should be excluded at the trial of this matter.

Respectfully submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR
Assistant Director, Torts Branch

   s/ Peter G. Myer
PETER G. MYER
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
(202) 616-4043 / (202) 616-4159 (Fax)

Attorneys for the Defendant United States

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was served by ECF on all parties of record on April 3, 2009.

   s/ Peter G. Myer
PETER G. MYER