UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____§ | | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| _____§ | | |

**MEMORANDUM OF LAW IN SUPPORT
OF THE UNITED STATES OF AMERICA'S MOTION IN LIMINE
TO BAR INTRODUCTION OF EVIDENCE RELATED TO VIOLATIONS OF NEPA**

In ruling on the Parties' discretionary function motions, the Court held that Plaintiffs cannot prevail on their NEPA claims unless they are able to establish that their damages were caused by the violated a mandatory provision of NEPA. Plaintiffs' pre-trial submissions, however, demonstrate that they do not intend to present any evidence to meet their causation burden. Without such evidence of causation, any evidence related to the claimed NEPA violations would no longer be relevant. Accordingly, the Court should exclude from trial any evidence related to the Corps's compliance or non-compliance with NEPA.[1]

---

[1] The Court has *already* dispensed with most of Plaintiffs' claimed NEPA violations. In its order, the Court rejected Plaintiffs' claims that the Corps (1) violated NEPA by failing to prepare an EIS within 30 days of authorizing legislation in 1976, 1986, and 1996, *see* Doc. 18212 at 41-43; (2) violated NEPA by failing to prepare an EIS for each request for appropriations from 1970 to 1979, *id.* at 43; (3) violated Executive Order 11990 relative to NEPA, *id.* at 43-44; (4) failed to prepare the 1976 in compliance with NEPA, *id.* at 44-45; and (5) violated NEPA by "improperly segment[ing] its filing of [Environmental Assessments]," *id.* at 46. Evidence of these claimed violations should also, therefore, be excluded from trial.

In its order, this Court held that even if it were demonstrated at trial that the Corps violated a mandatory provision of NEPA, "Plaintiffs [would] still bear the burden to prove that this failure [to comply with NEPA] caused the damages sought." *See* Doc. 18212 at 63; *see also id.* at 46.[2] To meet their causation burden, Plaintiffs would be required at trial to prove three points. First, Plaintiffs would have to show that a hypothetical EIS would have identified specific problems associated with the MRGO that, if remedied, would have prevented the damage caused by Hurricane Katrina.[3] Second, Plaintiffs would have to somehow show that Congress, in response to this hypothetical EIS, would have enacted legislation not only authorizing the Corps to correct the problems and but also funding the

---

[2] This Court's conclusion is unquestionably correct. *See, e.g.*, *Montijo-Reyes v. United States*, 436 F.3d 19, 26 (1st Cir. 2006) (holding that for the violation of prescribed conduct to negate discretionary function immunity, "there must be a causal connection between the violation and [the plaintiff's] asserted damages"); *id.* ("[W]e hold that the CWA and [Water Qaulity Standards Regulations ("WQSR")] do not overcome the discretionary function exemption where, as here, Plaintiffs fail to allege a causal connection between the Corps's failure to comply with the CWA and WQSR and the purported damages for which they seek recovery under the FTCA."); *Sloan v. United States Dep't of HUD*, 236 F.3d 756, 762 (D.C. Cir. 2001) (holding that immunity applied because "[t]he complaint does not allege any damages arising from the investigation itself, but only harm caused by the [discretionary] suspension to which it assertedly led"); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1133 (10th Cir. 1999) (holding that immunity applied because "[t]he complaint does not suggest that plaintiffs' multi-million-dollar injuries flow from a failure to perform the arguably nondiscretionary function of drafting memoranda listing alternatives, and not from neglect of the discretionary function of comprehensively and objectively weigh[ing] the alternative actions available").

[3] Additionally, Plaintiffs' causation evidence would have to distinguish between problems caused by the *design and construction* of the MRGO, for which the Court has held the United States has discretionary function immunity, and problems caused by the *maintenance* of the MRGO, for which the Court has not yet held that discretionary function immunity applies. Because there is ample evidence that saline intrusion into adjacent marshlands began soon after the MRGO was built, Plaintiffs would be even further hard-pressed to meet their causation burden. *See In re Ohio River Disaster Litig.*, 862 F.2d 1237, 1249 (6th Cir. 1989) (barring recovery in case involving both discretionary and non-discretionary acts because plaintiffs were unable to prove that non-discretionary acts, "standing alone," were "substantial factors in causing the disaster").

remedial measures. Third, Plaintiffs would have to prove that the remedial measures would have been completed prior to Hurricane Katrina.

On the first point, Plaintiffs simply have no evidence. Plaintiffs do not have any evidence that a supplemental EIS (at some unspecified time after 1976, when the initial EIS was issued) would have identified the problems that supposedly caused the Plaintiffs' alleged damage. When an SEIS would have been prepared and what it would have contained is wholly speculative. No one can know what a hypothetical SEIS, produced at some unspecified time, would have contained. Nor have any of Plaintiffs' experts attempted to "analyze" whether a hypothetical SEIS would have addressed the problems that were only identified after the storm.

On the second point, Plaintiffs fail both as a matter of fact and law. Plaintiffs, of course, have no evidence that Congress, had it been "properly" informed by the hypothetical SEIS, *would* have acted at all. Indeed, at the oral argument on the Parties' discretionary function motions, Plaintiffs' counsel frankly conceded as much, admitting that Plaintiffs would not be able to prove that had Congress been "appropriately" informed by another EIS, it would have acted to prevent the damages caused by Hurricane Katrina. *See* Ex. 1 (Hr'g Tr. Part I, 89, Jan.8, 2009) (Plaintiffs' counsel acknowledging that such a claim is "[t]oo speculative" to prove and that "nobody can prove that"); *id.* at Part II, 19 (Plaintiffs' counsel: "I'm the first one to tell you and to try to be intellectually honest that, who knows what would have happened.").[4]

---

[4] Citations to the transcript of the January 8, 2009 hearing refer to the "Clean Draft" copy provided to counsel. The court reporter has indicated that the final version of the transcript from this hearing is not yet available.

Perhaps recognizing that evidence was sparse and proof an impossibility, Plaintiffs' counsel argued that "the fact that it's *plausible* and reasonable that these things *could* have happened establishes the causal connection." *See id.* (emphasis added). Of course, the "preponderance of the evidence" standard requires more than mere plausibility.

But even if Plaintiffs could produce some evidence as to how Congress might have acted under conditions that did not exist, permitting the presentation of such evidence would run directly contrary to prevailing discretionary function jurisprudence.

Whether Congress decides to close the MRGO or to take other "corrective" action is plainly a matter of discretion that cannot be challenged in a lawsuit. *See Cato v. United States*, 70 F.3d 1103, 1110 (9th Cir. 1995) ("Legislative conduct is discretionary for purposes of the [discretionary function] exception."); *Brown v. United States*, 790 F.2d 199, 202 (1st Cir. 1986) ("How much equipment the [agency] is to possess, and how much money it is to spend, measured, necessarily, by Congressional appropriations, must be for the government's uncontrolled discretion.").

When a plaintiff claims as the direct cause of his injury such a discretionary act, he may not avoid application of discretionary function immunity by attempting to rely on a preceding mandatory act that may have been performed negligently. As the Third Circuit has explained:

> If plaintiffs injured by regulatory policy decisions were permitted to prosecute damage actions by challenging the manner in which the underlying data was collected, federal courts, of necessity, would be required to examine in detail the decisionmaking process of the policymaker to determine what role the challenged data played in the policymaking and what the policymaker's decision would have been if he or she had received the unchallenged data but not the challenged data (or had received other data in lieu of the challenged data). Without such an examination and all of the discovery that would necessarily precede it, a plaintiff in the position of these plaintiffs would be unable to prove a causal link between the alleged negligence and the alleged injury. Yet this is precisely the kind of inquiry that the Supreme Court sought

>to foreclose when it ruled out any inquiry into an official's "subjective intent in exercising the discretion conferred by statute or regulation."

*Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3rd Cir. 1995) (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991); *see also Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1132 n.11 (10th Cir. 1999) ("To allow plaintiffs to avoid the discretionary-function bar by alleging that RTC employees breached a specific duty to report information, even though the harmful decisions based on the information were themselves discretionary, would be in tension with precedent."); *Johnson v. United States*, 949 F.2d 332, 339-40 (10th Cir. 1991) (applying discretionary function exception to bar claim challenging agency's "information gathering activity," which was mandatory, because it was "inextricably tied to" and "a component of the overall policy decision," which was discretionary).  In other words, because Congress's decision, *vel non*, to take corrective action would itself have been discretionary, this Court is not permitted to entertain a suit examining whether that decision was based on complete and accurate information submitted by the Corps.

Finally, Plaintiffs cannot carry their burden of proving that remedial measures, even if authorized and funded, would have been completed prior to Hurricane Katrina.  Whether and when remedial measures would have been complete is too speculative to be subject to proof.  If anything, the lack of funding provided for the Lake Pontchartrain and Vicinity Hurricane Protection Project and the incompleteness of that project nearly half a century after its authorization would militate against any finding that MRGO remedial measures would have been authorized, funded, *and* completed in time to prevent the damage of which Plaintiffs complain.

## CONCLUSION

Because Plaintiffs cannot prove a causal connection between the Corps's failure to perform an EIS and Congress's failure to take corrective action that would have prevented the destruction caused by Hurricane Katrina, the Court should exclude from trial any evidence related to the Corps's supposed failure to comply with a mandatory requirement of NEPA, as such evidence is no longer relevant.

        Respectfully submitted,
        MICHAEL F. HERTZ
        Acting Assistant Attorney General

        PHYLLIS J. PYLES
        Director, Torts Branch

        JAMES G. TOUHEY, JR
        Assistant Director, Torts Branch

        s/ Jeffrey P. Ehrlich
        JEFFREY P. EHRLICH
        Trial Attorney
        ROBIN SMITH
        Senior Trial Counsel
        Civil Division, Torts Branch
        U.S. Department of Justice
        Benjamin Franklin Station, P.O. Box 888
        Washington, D.C.  20044
        (202) 353-2574 / (202) 616-5200 (Fax)

        Attorneys for the United States of America