UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____§ | | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| _____§ | | |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES'
MOTION IN LIMINE TO BAR EVIDENCE OF DAMAGE CAUSED
BY THE DESIGN AND CONSTRUCTION OF THE MRGO**

The Court has held "that as concerns the initial design and construction of the Mississippi River-Gulf Outlet, these actions are shielded by the discretionary function exception." (Doc. 18212 at 49).  As a consequence, the United States cannot be liable for any damage caused by the design and construction of the MRGO.  As designed and constructed, the inland reaches of the channel were 36 feet deep with a bottom width of 500 feet.  Inasmuch as the creation of such a deep-draft channel along the route of the Gulf Intracoastal Waterway eastward from the Inner Harbor Navigation Canal is immunized by the DFE, any evidence concerning damage caused by the mere existence of the channel, as opposed to its post-construction operation or maintenance, is irrelevant and should be excluded from admission at trial.

Plaintiffs allege that the MRGO had four flaws:  (1) by converging with the GIWW near Michoud it created a "funnel effect" that would increase surge and intensify waves;

(2) by connecting the Gulf of Mexico with the IHNC, it functioned as a conduit for hurricane surges to travel from the Gulf into "the heart of Greater New Orleans"; (3) it functioned as a conduit for saltwater to travel from the Gulf into the wetlands adjacent to the channel; (4) its banks were unarmored and therefore subject to erosion. *See* Doc. 18331 (proposed pretrial order) at 6-7. All of these flaws were features of the MRGO's design and were incorporated into the channel as constructed. In short, the flaws identified by Plaintiffs are *design* flaws. The construction simply gave effect to those flaws. This waterway—indeed, any waterway—is by definition a conduit. And digging this channel through wetlands, without barriers and without armored banks, and causing it to converge with the GIWW simply put in place what the design specified. The superficial widening of the channel, the changes in wetlands, and the supposed impact on the Lake Pontchartrain and Vicinity Hurricane Protection levees are all consequences of the design decisions. The United States cannot be held liable for the consequences of these decisions.

Plaintiffs argue, however, that at some unspecified point following construction, the United States was obligated to "maintain" the channel by adding features that were omitted from the initial design. Supposedly, proper "maintenance" would have entailed the placement of stones or concrete along the channel to keep it from expanding. Proper "maintenance," according to Plaintiffs, also would have included the design and construction of gates across the channel in as many places as necessary to keep saltwater from migrating into the wetlands and to keep storm surge from flowing into Greater New Orleans. This argument fails on its face, because it requires reclassifying design and construction operations as maintenance operations.

Moreover, even if this sort of taxonomic legerdemain were possible, the Court's ruling could not be so easily circumvented. The same policy considerations that drove the initial design decisions would have been at play in later consideration of the need to modify the initial design. Whether to block the channel and to confine it with armored banks involved consideration of the economical and political feasibility as well as the impact of such measures on shipping, on the environment, and on nearby landowners and residents.

Even if Plaintiffs were correct and the United States could be held liable for damage resulting from changes that occurred at some point *after* the initial construction of the channel, it would be their burden to establish when that point occurred in time and to prove what damages resulted from subsequent changes in the channel and the surrounding wetlands. Implicit in Plaintiffs' argument is the notion that at some point after construction, conditions became so threatening, so dangerous, that Louisiana law imposed a duty to ameliorate those conditions. Plaintiffs cannot, merely by proving that their properties were damaged as a result of changes caused by the initial design and construction, carry their burden of proving that their damages were the result of nondiscretionary conduct of the Army Corps of Engineers. Even assuming *arguendo* that the Corps conduct at some unspecified point in time became nondiscretionary, Plaintiffs could carry their burden, if at all, only by proving by proving that their properties were damaged as a result of these acts and omissions which occurred *after* the post-construction changes created risks, and after certain investigations gave the United States a reason to know that the initial design was deficient as a matter of Louisiana tort law and therefore required modification.

Plaintiffs' experts have expressed their opinions about how the Katrina event would have been different if the MRGO had not been constructed. As memorably expressed by

3

Plaintiffs' expert Paul Kemp, they contrived to "imagine a landscape in which the 1958 MRGO project never existed." Kemp Rpt. (July 11, 2008) at 69 (Doc. 18440-9). In this scenario, Plaintiffs' experts removed the MRGO from the landscape and returned the wetlands to their pre-MRGO condition. L. de Wit et. al, *Flow Modeling New Orleans - Mississippi River Gulf Outlet*, at 5, 37-63 (June 23, 2008) ("Plt. Surge Rep.") (Doc. 18440-4 through 6); C. Gautier et. al, *Wave Modeling New Orleans - Mississippi River Gulf Outlet*, at 17-24 (July 9, 2008) ("Plt. Wave Rep.") (Doc. 18440-7). *See generally* M. Kok. et. al, *Polder Flood Simulations for Greater New Orleans: the neutral MRGO scenario* (July 9, 2008) (modeling flooding that Hurricane Katrina would have caused if the MRGO had not been in existence) (Doc. 18440-8).

    Plaintiffs cannot prove any fact of consequence by adducing evidence of what would have happened if the MRGO had never been constructed. All that is even arguably relevant, given the Court's ruling on the discretionary function exception, is what harms could have been averted if the United States had taken remedial measures at some unspecified time *after* the MRGO came into existence. Plaintiffs do not (and cannot, consistent with this Court's ruling) contend that those remedial measures would have entailed eliminating the MRGO in its entirety and recreating "a landscape in which the 1958 MRGO project never existed." Kemp Rpt. (July 11, 2008) at 69 (Doc. 18440-9).

This motion *in limine* is respectfully submitted,

        MICHAEL F. HERTZ
        Acting Assistant Attorney General

        PHYLLIS J. PYLES
        Director, Torts Branch

        JAMES G. TOUHEY, JR
        Assistant Director, Torts Branch

        ROBIN DOYLE SMITH
        Senior Trial Counsel, Torts Branch

        _s/ Paul Levine_
        PAUL LEVINE
        Trial Attorney
        Civil Division, Torts Branch
        U.S. Department of Justice
        Benjamin Franklin Station, P.O. Box 888
        Washington, D.C. 20044
        (202) 353-2574 / (202) 616-5200 (Fax)
        Attorneys for the United States of America