UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER: 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: *Robinson* (No. 06-2268) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO BAR EVIDENCE OF DAMAGE CAUSED BY THE DESIGN AND CONSTRUCTION OF THE MR-GO (DOC. NO. 18442)**

**I. INTRODUCTION**

As a practical matter, if everything in Defendant's present motion were true, how would the Court frame an order? What would be excluded? In Defendant's Motion in Limine to Bar Evidence of Damage Caused by the Design and Construction of the MR-GO, the Government employs sleight of hand: everything that is the product of operation and maintenance—whether it is creating a funnel, widening a channel, destroying wetlands—becomes part of the initial design and construction, and voila!, immune from liability. The damages the government seeks to exclude, in essence, are *everything*. This is judgment by *in limine* motion.

This motion is based on a fundamental misreading of the Court's ruling on the competing DFE summary judgment motions filed by the parties. In its ruling, the Court specifically discussed of "actions and inactions that followed the creation of [the MR-GO]" as being the proper subject for a trial on the merits. (Doc. No. 18212 at p. 49.) The Government, however, freezes the continuum of time by relating everything to the initial Congressional authorization—

1

as if nothing of consequence happened thereafter and everything was according to plan. Nothing could be further from the truth.

For the reasons that follow, the Defendant's motion should be denied.

## II.  FACTUAL BACKGROUND

Plaintiffs' Proposed Findings of Fact and Conclusions of Law clearly show that the Plaintiffs' case is not focused solely on the MR-GO's design. (Doc. No. 18447, at ¶ 68). It is not the *initially approved design* that is at issue in this case, it is the Corps' unauthorized deviation from that design in its implementation of the project and ongoing maintenance and operations – and the resulting hazardous conditions. (Doc. No. 18447, at ¶¶ 70-72).

The evidence at trial will show that the Corps early on had knowledge of the hazards posed by the MR-GO. By the time Hurricane Katrina struck Southeast Louisiana, the MR-GO had widened far beyond any Congressionally authorized design. (Doc. No. 18447, at ¶ 75).

Both prior to , during, and following the design of the MR-GO, the Corps had direct knowledge of the potential for storm surge to be hydraulically transmitted up the MR-GO to the New Orleans, yet the Corps failed to implement any measures to prevent the transmission of storm surge into the New Orleans area. (Doc. No. 18447, at ¶¶ 85-93). The Corps simply ignored the hazards and safety of the people of New Orleans and St. Bernard Parish.

In addition, the Corps knew of the potential for wetlands destruction and the role of wetlands in counterbalancing the ill-effects of storm surge. (Doc. No. 18447 at ¶¶229-248). The Corps was equally aware of the fragile nature of wetlands and of their susceptibility to destruction. (Doc. No. 18447, at ¶102). Again, despite this knowledge, the Corps did nothing.

Moreover, the Corps has engaged in a systematic and historically dangerous and devastating procedure of dredging the MR-GO. Ongoing maintenance and operations dredging

significantly contributed to the widening of the Reach 2 channel over time -- far beyond its originally designed width of 650 feet. (Doc. No. 18447, at ¶ 117). Despite having dredged massive quantities of fill from the MR-GO, and despite having destroyed countless acres of wetlands, the Corps never sought to advise Congress of the Corps destructive practices upon the wetlands and channel itself. (Doc. No. 18447, at ¶¶ 119-20). The Corps even dredged in excess of the depth permitted by Congress–a prohibited act. (Doc. No. 18447, at ¶ 122). Wave wash further exacerbated the effects of erosion. (Doc. No. 18447, at ¶¶ 124-127). The Corps negligently failed to address any of these problems. (Doc. No. 18447, at ¶¶ 123, 130-31, 132).

Furthermore, the Corps' ongoing operation and maintenance of the MR-GO was conducted in violation of the National Environmental Policy Act ("NEPA"). This Court discussed at length the NEPA regulatory scheme in its ruling denying the parties motions for summary judgment. (Doc. No. 18212, at pp. 22-35). NEPA required action from the Corps. In particular, the Corps was required to prepare a full Environmental Impact Statement ("EIS") or Supplemental EIS. The Corps had continuing obligations under NEPA to report adverse conditions and the impact of the MR-GO from its maintenance and operations activities. (Doc. No. 18447, at ¶¶ 727-737). Violation of this regulatory scheme proximately caused the Plaintiffs' damages in this action.

The Corps' actions and inaction in handling the MR-GO do not constitute legitimate policy decisions. The Corps knew the risks presented by the MR-GO, and specifically, the growing risks over time from its flawed initial design, maintenance and operations. (Doc. No. 18447, at ¶ 740-742).

There are also significant issues of state law negligence which invariably must be decided at the trial of the merits. These considerations include the failure to exercise due care and the

3

causal connection between the Corps' failed implementation of competent operations and maintenance and the Plaintiffs' resulting damages. (Doc. No. 18447, at ¶¶ 743-774).

### III. ARGUMENT

#### A. <u>Defendant is Improperly Re-Litigating its Failed Summary Judgment Motion</u>

While the Government appears to be targeting one particular issue–damage arising solely from the initial design of the MR-GO–it is in fact seeking to defeat the entirety of the Plaintiffs' case by re-asserting its DFE immunity argument, rejected twice on summary judgment motion practice. Having lost its previous motions for summary judgment, the Government now asserts the Plaintiffs are attempting to "reclassify[] design and construction operations as maintenance operations." (Doc. No. 18442-2, at p. 2). This is a simple case of "projection."

The Government has already litigated and lost this issue. In its DFE summary judgment motion, the Government argued that the challenged flaws in the MR-GO were embedded in the initial design authorized by Congress. (Doc. No. 18212 at pp. 3-4). The Court expressly rejected this argument. (*Id.* at p. 55, 63-64). Indeed, the Court ruled that Defendant's motion for summary judgment was "**DENIED** with respect to the initial design and construction as there are material questions of fact as to these issues." *Id.* at p. 64.

More importantly, a motion *in limine* is a procedural device to limit the admission of inadmissible or prejudicial evidence. It is not a vehicle for attempting a second bite of the apple. Enumerable courts from around the country consistently hold that a motion in limine cannot be used as a substitute for a motion for summary judgment because it dispenses with the procedural safeguards of the former and is not meant to serve as a vehicle for determining disputed facts. *See*, Plaintiffs' concurrently filed Objection to Defendant's Seven Motions in Limine. Likewise, there is no basis for the Court to reconsider its prior ruling. *Id*.

**B.     The Defendant's Motion is Based on a Misreading of the Court's Ruling**

Defendant's motion is premised on an incomplete reading of this Court's ruling. The Government focuses in on the Court's ruling on immunity, while ignoring the balance of the decision. This is the operative paragraph in full:

> To that end, the Court finds that as concerns the initial design and construction of the MR-GO, these actions are shielded by the discretionary function exception. Clearly, there was no violation of any mandate and the decisions made were policy driven. *However, Plaintiffs have created substantial questions of fact with respect to the actions and inactions that followed the creation of the channel, particularly in light of the documents that demonstrate the knowledge of the Corps concerning the dangers that MR-GO was creating. In fact, the most glaring issue the Court sees is in the context of the state negligence claim itself.* There are substantial questions of fact as to whether the Corps failure to warn Congress of the allegedly life threatening harm which the MR-GO had created is the key.

Doc. No. 18212 at p. 49 (emphasis added).

Now compare what Defendant claims have already been adjudicated and is not the proper subject of trial:

> Plaintiffs allege that the MR-GO had four flaws: (1) by converging with the GIWW near Michoud it created a "funnel effect" that would increase surge and intensify waves; (2) by connecting the Gulf of Mexico with the IHNC, it functioned as a conduit for hurricane surges to travel from the Gulf into "the heart of Greater New Orleans;" (3) it functioned as a conduit for saltwater to travel from the Gulf into the wetlands adjacent to the channel; (4) its banks were unarmored and therefore subject to erosion. *See* Doc. 18331 (proposed pretrial order) at 6-7. All these flaws were features of the MR-GO's design and were incorporated into the channel as constructed. In short, the flaws identified by Plaintiffs are *design* flaws.

Gov't Motion at p. 2.

Plaintiffs' theory of the case is that the creation of the funnel presents a classic case of negligence that created a danger that should have been reported to Congress properly and ameliorated. Similarly, the connecting of the IHNC to the Gulf waters and the corresponding surge conduit that was created became a danger and should have been reported properly and

5

ameliorated. Likewise, the de-salinization and consequent destruction of the wetlands was the result of post-design negligent operation and maintenance that led to a dangerous condition requiring proper notification to Congress and remediation. Finally, the erosion of the unarmored channel banks was not something Congress authorized and once the erosive and dangerous effects were recognized, they should have be ameliorated because of their acknowledged risk to life and safety.

And what does the Government's attorneys rely upon in concluding that the foregoing is part of the design? *Iipse dixit*—the attorney's own words. There are no references to expert opinions, case law, or findings of fact.

Defendant simply ignores those portions of the Court's ruling concerning the "the actions and inactions that followed the creation of the channel" and the "dangers" the Army Corps knew about and, significantly, the "state negligence claim itself."

### C. The Government is Trying to Eliminate Legitimate Issues That Need to Be Tried

In its motion, the Government makes a curious argument:

> Even if Plaintiffs were correct and the United States could be held liable for damage resulting from changes that occurred at some point *after* the initial construction of the channel, it would be their burden to establish when that point occurred in time and to prove what damages resulted from subsequent changes in the channel and the surrounding wetlands.

Gov't Opp. at p. 3 (emphasis in original).

Precisely. These issues need to be proven (or disproven) by a trial on the merits; they simply cannot be dispensed with by the present motion. The liability, causation, and damages sought to be established by the Plaintiffs flow from some point in time proximate in time to the initial Congressional approval of the MR-GO's design and construction. The specific time period, acts, omissions and cause of any alleged damages along this time line continuum are

6

properly the subject of the trial to commence shortly. Once a fact, or a set of facts, is proven, then and only then can the Court evaluate whether or not the conduct related thereto is subject to an immunity or not under the DFE.

The MR-GO's story begins with its initial design. The Government's motion, as pled, would force the Plaintiffs to begin the story somewhere after the first chapter, even though the real proximate cause and damages may be found to result from actions and inaction occurring later this tale. Equally significant is the impact of the Corps' short-comings in implementation of its maintenance and operations procedures, and its failure to properly warn Congress of risks to persons, property and the environment arising from the MR-GO. Operation and maintenance necessarily implicates consideration of design and construction. While the damages may flow from the former rather than the latter, the exclusion of evidence relating to the latter will invariably prejudice consideration and findings of damages arising from the former. Therefore, the decision to exclude evidence relating to design should be addressed after a trial on the merits, so that no prejudice in any advance ruling would inadvertently prejudice the Plaintiffs' rights to present their case for damages arising from operations and maintenance.

Finally, there is great risk in excluding or limiting evidence of damages prior to trial. Even under the Government's strained view of the law, the same evidence may be admissible to prove one issue of law or fact, whereas it is inadmissible to prove another issue of law and fact. It is for this reason that motions *in limine* are not favored over advocacy and trial practice. Trial on the merits begins in less than two weeks and all of the parties are fully aware of the factual and legal issues to be presented in this case. After three years, this Court is well situated to address all aspects of proof and causation. Objections to any and all evidentiary issues are fully preserved and more properly addressed during the trial of this action.

7

## IV. CONCLUSION

For the foregoing reasons, the Government's motion should be denied.

Dated: April 7, 2009  Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell

Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone: (213) 347-0290
Fax: (213) 347-0298

**Law Offices of Joseph M. Bruno**
By: s/ Joseph M. Bruno
Joseph M. Bruno (LSBA No. 3604)
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile: (504) 581-1493

| | |
|---|---|
| **The Andry Law Firm, LLC**<br>By: s/ Jonathan B. Andry<br>Jonathan B. Andry (LSBA No. 20081)<br>610 Baronne Street<br>New Orleans, Louisiana 70113<br>Telephone: (504) 586-8899<br>Facsimile: (504) 585-1788 | **Domengeaux Wright Roy & Edwards LLC**<br>Bob F. Wright (LSBA No. 13691)<br>James P. Roy (LSBA No. 11511)<br>556 Jefferson Street, Suite 500<br>P.O. Box 3668<br>Lafayette, Louisiana 70502-3668<br>Telephone: (337) 233-3033<br>Facsimile: (337) 233-2796 |
| **Fayard & Honeycutt**<br>Calvin C. Fayard, Jr. (LSBA No. 5486)<br>Blayne Honeycutt (LSBA No. 18264)<br>519 Florida Avenue, S.W.<br>Denham Springs, Louisiana 70726<br>Telephone: (225) 664-4193<br>Facsimile: (225) 664-6925 | **Girardi & Keese**<br>Thomas V. Girardi (*pro hac vice*)<br>1126 Wilshire Boulevard<br>Los Angeles, CA 90017<br>Telephone: (213) 489-5330<br>Facsimile: (213) 481-1554 |
| **Ranier, Gayle & Elliot, LLC**<br>N. Frank Elliot III<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>Telephone: (337) 494-7171 | **Levin, Papantonio, Thomas, Mitchell Echsner & Proctor, P.A.**<br>Clay Mitchell (*pro hac vice*)<br>Matt Schultz (*pro hac vice*)<br>316 S. Baylen Street, Suite 600 |

Facsimile: (337).494.7218

Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**McKernan Law Firm**
Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**
Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**
Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**
Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Robinson, Calcagnie & Robinson, Inc.**
Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

## CERTIFICATE OF SERVICE

I, Pierce O'Donnell, hereby certify that on April 7, 2009, I caused to be served **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO BAR EVIDENCE OF DAMAGE CAUSED BY THE DESIGN AND CONSTRUCTION OF THE MR-GO (DOC. NO. 18442)**, upon Defendants' counsel, Robin D. Smith, George Carter, Keith Liddle, and Richard Stone by ECF and email at robin.doyle.smith@usdoj.gov; george.carter@usdoj.gov, keith.liddle@usdoj.gov, and richard.stone@usdoj.gov.

/s/ Pierce O'Donnell