**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE KATRINA CANAL BREACHES      CIVIL ACTION
CONSOLIDATED LITIGATION

     NO. 05-4182

     SECTION _K_ MAG _2_

PERTAINS TO: ROAD HOME
*State of Louisiana, C.A. No. 07-5528*      JUDGE DUVAL
     MAGISTRATE JUDGE WILKINSON

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
RECONSIDERATION**</u>

Defendants' Motion for Reconsideration is based almost entirely on the Louisiana 4th circuit

opinion in *R.L. Lucien Tile Company, Inc. v. American Security Insurance Company*, ---So.2d----

(La.App. 4 Cir. 3/11/09), 2008-1190, 2009 WL 617937.  In their attempt to persuade the Court,

Defendants state that *Lucien Tile* held that "an anti-assignment clause is enforceable under Louisiana

law as applied to a post-loss assignment."  [Defendants' Memorandum, p.1].  If the 4th Circuit had

actually made that ruling in *Lucien Tile*, the Defendants' argument would appear to merit some

"reconsideration."  The 4th Circuit opinion, however, does not serve to bar all post-loss assignments.

 Moreover, both the facts and the application of law in *Lucien Tile* differ significantly from the

instant case.  As will be discussed in the State's response, there have been two (2) decisions,

including a Louisiana Supreme Court ruling, that are factually very similar to the present case and

which hold that the anti-assignment clauses in insurance contracts do not prohibit the assignment of a

post-loss claim.[1]

---

1 *Geddes & Moss Undertaking & Embalming Company vs. Metro. Life Insurance Company*, 167 So. 209 (La. CT.
App. Orleans Cir. 1936); *LeMoyne's Restaurant, Inc. v. Axix Surplus Lines Insurance Company*., Civ. A. No. 07-
8445, 2008 WL 1988798, at \*1 (E.D. La. May 2, 2008) (Barbier, J.)

### *Lucien Tile* Procedural History

*Lucien* involved a quitclaim deed and two documents referencing assignments and the transfer of all rights and claims from the Cages to Lucien Tile.  In the quitclaim deed, the owners of the covered property, Joshua and Sandy Cage, transferred the property to Lucien Tile for $100.00 with no apparent notice to the mortgage holder, EMC Mortgage, or to the insurer, ASIC policy.

After Katrina, ASIC received notice of a loss regarding the covered "Green Street" property from Sandy Cage.  ASIC adjusted the claim on two separate occasions and paid benefits ($40,490.96) to both insureds, EMC and the Cages (additional insureds).  The 4th Circuit was quick to point out that based on the record, Lucien Tile  never received any of the insurance proceeds paid by ASIC to EMC and the Cages, yet sought recovery of same proceeds from insurer ASIC.

The 4th Circuit, in analyzing the first "assignment," clearly found that document to be simply a purported transfer of rights from the Cages to Lucien Tile to pursue an alleged fair debt collection practice case – more accurately a dispute over interest changes by EMC during a period of forbearance.  This document made no reference to ASIC or the transfer of any rights or obligations regarding insurance.  In fact, the Court found that this document was clearly intended to convey rights to Lucien Tile that were solely related to finance matters and not insurance.

The second "transfer of rights" document was conveyed to Lucien Tile by the Cages approximately three years after the first document.  Although this document is more broad in nature, it does not make any reference to insurance, ASIC, or the assignment of rights or obligations in the context of insurance claims or policies.  More specifically, there is no mention of an assignment involving a post-loss claim.

2

Lucien Tile, relying on these two documents above sought a ruling in its favor against ASIC for insurance benefits – the same benefits that ASIC had already paid to EMC and the Cages. *Lucien's* theory to establish a legal right to the insurance benefits was vaguely based on assignment. Significantly, Lucien Tile never paid any money to restore the "Green Street" property damaged by Katrina.

The 4th Circuit ruled in favor of defendant ASIC, finding that the "Cage documents" were legally insufficient to support an assignment of the ASIC insurance **policy** to Lucien Tile. Noteworthy is the fact that EMC was the named insured under the ASIC policy, but was never a party to any documents (or suit) seeking to transfer or assign the ASIC policy to Lucien Tile. The Court's opinion in Lucien Tile clearly was focused on whether the "Cage documents" were sufficient to assign the entire **policy** to Lucien Tile. The Court never mentioned or analyzed the current majority status of the law regarding the assignment of a loss or claim versus the assignment of a policy when an anti-assignment clause is at issue.

<u>**State's Argument**</u>

The Court, in its "Order and Reasons" opinion (pages 12-20) pertaining to Road Home, *Louisiana State,* 07-5528, March 5, 2009, very clearly and sufficiently analyzed the law regarding the assignment of post-loss insurance claims. Importantly, this Court recognized that there is precedent directly on point with regard to the Road Home assignments and recognized the factual similarity between such cases.

In *Gedde's & Moss Undertaking & Embalming Company v. Metro Life Insurance Company*, 167 So.209 (La. Ct. App. Orleans Cir 1936), Louisiana's highest court held that post-loss assignments are valid even when the policy contains an anti-assignment clause. This decision has not

3

been modified or overruled by the Louisiana Supreme Court and is the current law of the state with

regard to post-loss assignments in the area of insurance contracts.  The Courts decision was based on

an extensive review of how other states have decided this issue along with support from various

insurance Treatises (Couch on Insurance §§ 34:25 and 35:7). [2]

Note that the *Lucien* decision made no reference to the *Gedde's* decision or Civil Code

Article 2653 in analyzing the "Cage documents" and the purported assignment.  This is logical, and

obvious, when one considers the factual differences between *Gedde's*, *LeMoyne's Restaurant, Inc. v.*

*Axis Surplus Lines Insurance Company,*2008 WL 1988798 (E.D. La. 2008), *Road Home*, C.A. No.

07-5228 and *Lucien*.

In *LeMoyne's Restaurant*, Judge Barbier held that anti-assignment clauses in insurance

policies do not prohibit the assignment of post-loss claims.  This decision merits recognition because

it is the first decision that considered post-loss assignments following the enactment of Article

2653(1995) and upheld the ruling of the Louisiana Supreme Court in *Gedde's.*  The significance is

clear; *Gedde's* is still good law in Louisiana, Article 2653 has not affected the ruling in *Gedde's,* and

the great majority of other jurisdictions nationally are still finding post-loss claim assignments valid

even in the face of anti-assignment clauses.

Defendants have been quick to allege that because of the Road Home assignments and the

current Road Home litigation, they will be forced to litigate the same claims twice or pay the same

claims over again.  We strongly point out that this is a complete misrepresentation of the facts and

anyone even vaguely familiar with this case knows that the "paying twice" argument is entirely false.

---

2 ". . . while the general rule regards liability and indemnity policies as non-assignable personal contracts,
assignment is valid following occurrence of the loss insured against and is then regarded as **chose in action** rather
than transfer of actual policy."

The State's assignment is based entirely on the recovery of money paid *by the State* to Defendants' policy holders which *should* have been paid by the Defendants.  Defendants cannot possibly claim that they are being asked to re-pay the same claims but to a different assignee/party, as was the case in *Lucien Tile,* because Defendants have **not** paid the claims of their insureds.  Indeed, had the insureds' claims originally been paid by the Defendants, there would not have been any payment by the State and there would be no subrogation or assignment at issue.  Clearly, this entire situation has been created solely because of the Defendants' nonpayment.  Thus, there is no duplication of payment at issue, as was the case in *Lucien Tile*.

In *Lucien Tile*, the 4th Circuit states that "the provision…of the policy clearly and unambiguously prohibits the insured from assigning the **policy** without ASIC's written consent." [*Lucien* at p. 4, emphasis added].  This language reveals what is perhaps the largest distinction between *Lucien Tile* and the case at hand.  In *Lucien Tile,* the property was transferred **prior** to Hurricane Katrina.  At the time of the loss, *Lucien Tile* owned the property, but the Cages were still named as additional insureds on the policy, along with their mortgage company.  The parties in Lucien Tile were attempting to assign a **policy**.  They were attempting to assign **coverage**.  The fact that the named insured differed from the owner of the property at the time of the loss clearly reflects that.  The fact that the named insured was the *former* owner of the property reinforces that.  Although documents were executed post-loss in an attempt to rectify the situation, *Lucien Tile* is not truly about post-loss assignments.  Instead, *Lucien Tile* is about the assignment, prospectively, of a policy and its coverage due to the pre-loss transfer of ownership without any corresponding transfer of coverage or notice to the insurer. This situation is virtually inapposite to the facts in the Road Home Case.

The claims of the State in the instant case are not based upon ownership of property. They are not based upon transference of coverage. They are based upon the ancient and time-honored principles of assignment and subrogation (or, in the instant matter more appropriately a "chose in action")[3] by which a third party who pays the debt of another can stand in the shoes of the obligee and pursue that person's claim against the debtor. Unlike *Lucien Tile,* where ownership passed prior to the loss, the insureds in this case were still the custodians of the property in question at the time of the loss. The subsequent assignment of their unpaid claims does nothing to change the **risk** taken by Defendants in the original contract of insurance between the insured and the insurer.

One way Defendants attempt to argue that these insurance claims cannot be assigned is by describing the personal nature of the duties owed by the insureds. Defendants argue that this assignment unfairly injures their ability to adjust the claims, stating that "the insured must…provide access to the damaged property, provide documents requested…" and that "these duties are not assignable to a third party." [Defendants' memorandum at p. 7]. Certainly, the adjustment of a claim requires cooperation by the insured. It is preposterous, however, for Defendants to claim that the assignment of those claims and their litigation with the State for almost **four years** after the loss will damage their ability to adjust or investigate those claims. Moreover, **if** in fact there is some truth to this situation, which party-the State, policy holders or Defendant insurers-created it? Unquestionably, the Defendants are one-hundred percent responsible for any additional burden associated with the adjusting of claims years after the occurrence.

---

3 See Couch on Insurance, §§34:25 and 35:7 (3rd ed. 2008); Blacks Law Dictionary (8th ed. 2004), noting that the legal expression "chose in action" originates from the French word "chose" (shohz). Black's further defines chose in action as simply "the right to bring an action to recover a debt, money or a thing. . ."

Indeed, under the parameters of the insurance code, insurance companies are required to "adjust claims fairly and promptly and to make a reasonable effort to settle claims," as well as to "pay the amount of the claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss…" La. R.S. 22:1219. Clearly, at this point and at the time in which the assignments were executed, the insureds should have fulfilled all of the "personal" aspects of the insurance obligations owed by them to the insureds. Sadly, to date, the Defendants have still failed to fulfill their contracted obligation owned by them to their policy holder and yet ask this Court to ignore this breach and excuse them from legitimate, binding obligations.

In their attempt to portray *Lucien Tile* as controlling with regards to the Road Home case, Defendants direct attention away from *LeMoyne's Restaurant, Inc. v. Axis Surplus Lines Insurance Company,* 2008 WL 1988798 (E.D. La. 2008). Analysis of both cases, however, reveals that *LeMoyne's* is much more similar to the instant case.

First, the subrogation agreement at issue in *LeMoyne's* specifically references the insurance policy. In contrast, the documents used in *Lucien Tile* were generated to deal with the rights and duties associated with the mortgage held by EMC. The insurance policy was not specifically mentioned. There is no dispute that the subrogation agreement used by the Road Home program specifically assigns the insureds' rights under their homeowner's policies to the State.

Secondly, *LeMoyne's* articulates the difference between a pre-loss assignment, which would change the "risk" incurred by defendants, and a post-loss assignment, which does not. The transfer of rights in *LeMoyne's* clearly took place post-loss, as opposed to the situation in *Lucien Tile*, wherein the transfer of ownership giving rise to the assignment took place pre-loss. Holding that "an anti-assignment clause in an insurance policy does not prevent the assignment of rights under the

policy after a loss has occurred," Judge Barbier states in *LeMoyne's* that the majority rule of current

commentators and courts is that a distinction exists between pre-loss and post-loss assignments.

> "The great majority of courts adhere to the rule that general stipulations in policies
> prohibiting assignments thereof except with the consent of the insurer apply only to
> assignments before loss, and do not prevent an assignment after loss, for the obvious
> reason that the clause by its own terms ordinarily prohibits merely the assignment of
> the policy, as distinguished from a claim arising thereunder, and the assignment
> before loss involves a transfer of a contractual relationship while the assignment after
> loss is the transfer of a right to a money claim.  The purpose of a no assignment
> clause is to protect the insurer from increased liability, and after events giving rise to
> the insurer's liability have occurred, the insurer's risk cannot be increased by a
> change in the insured's identity." *Lemoyne's* at p. 2, quoting 3 Couch on Insurance §
> 35:7 (3d Ed.2007)

## Conclusion

The case law controlling Road Home has NOT been changed or been affected by the 4th

Circuit's opinion in *Lucien Tile*[4], a case with significant factual and legal distinctions that differ

greatly from a "classic" post-loss claim assignment.  Perhaps of greater import, is the simple fact the

Louisiana Supreme Court and one Louisiana Federal Court have provided legal guidance regarding

post-loss assignments under an insurance contract that includes an anti-assignment clause.  (See

*Geddes, LeMoyne's Restaurant*).

Should the insurance companies be permitted to walk away from what they owed their policy

holders simply because the State stepped in to assist its people?  Louisiana policy holders were

expected to pay all premiums in a timely manner.  They were expected to notify their insurers of a

---

4 The State notes with great interest that Defendants now urge this Court to find opinions originating from the
Louisiana 4th Circuit Court of Appeals to be controlling law in this Court, as opposed to their prior position with
regards to that court's decision in  *Pitts v. Louisiana Citizens Prop. Ins. Corp.*, No. 08-1024, 2009 WL 103979 (La.
App. 4th Cir. Jan. 7, 2009).  (See Defendants' Reply in Support of their Motion to Dismiss, footnote 16, stating "This
Court is not bound by decisions of an intermediate appellate court that are inconsistent with Louisiana codal law and
the decisions of the Louisiana Supreme Court.")

loss.  After holding up their end of the bargain, those insureds expected to have their claims

processed and paid, but the State of Louisiana ended up paying over 150,000 claims instead.

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL**

s/Bryan McMinn
Bryan McMinn (Bar Roll # 20520)
Sallie J. Sanders (Bar Roll # 11703)
James Trey Phillips (Bar Roll # 19978)
Stacie L. deBlieux (Bar Roll # 29142)
Assistant Attorney General
**LOUISIANA DEPARTMENT OF JUSTICE**
Post Office Box 94005
Baton Rouge, Louisiana  70804-9005
Telephone: (225) 326-6400 Telefax: (225) 326-6499

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2009, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record

in the captioned matter.

_____/s/Bryan McMinn_____
Bryan McMinn