UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES * | | CIVIL ACTION |
| CONSOLIDATED LITIGATION * | | |
| * | | NUMBER: 05-4182 "K"(2) |
| * | | |
| * | | JUDGE DUVAL |
| * | | |
| PERTAINS TO: MRGO, Robinson * | | MAG. WILKINSON |
| (No. 06-2268) * | | |

* * * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION TO THE UNITED STATES' MOTION *IN LIMINE*
TO BAR INTRODUCTION OF EVIDENCE WHICH REMOVES
THE MRGO FROM EXISTENCE (Rec. Doc. 18440)**

**NOW INTO COURT,** through undersigned counsel, comes the Plaintiffs Norman Robinson, Kent Lattimore, Lattimore & Associates, Tanya Smith, Anthony Franz, Jr., and Lucielle Franz, who oppose the United States' Motion in Limine to Bar the Introduction of Evidence Which Removes the MRGO From Existence (Rec. Doc. 18440), for reasons set forth in greater detail below.

I.

First and foremost, the court should evaluate the defendant United States's effort to bar the introduction of evidence via the above referenced Motion *in Limine* with a jaundiced eye. Jurisprudentially, it is well established that "unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial

interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (C.A.3 (Pa.),1990), *citing* In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom*. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1985).  Tactically, the defendant attempts to blur the line between the discretionary function argument it has raised through numerous pleadings and the Plaintiffs' burden of proof relative to causation.  Therefore, the objective sought via a motion *in limine* is not served by defendant's motion.

As this Court is aware, the March 20, 2009 ruling that the potential immunity associated with "the initial design and construction of the MRGO" was focused entirely on the decisions employed in the process of constructing the navigation channel. (Record Doc. 18212).  Whether that conduct was ultimately harmful to the residents of southeastern Louisiana was immaterial to the defendant's legal argument; the sole issue was the application of an exception to the Federal Tort Claims Act ("FTCA") to "bar[] this action and require[] it's dismissal for lack of subject matter jurisdiction." (Rec. Doc. 16511-2, p. 53 of 54).

Conversely, Plaintiffs modeling efforts are intended to demonstrate the causal connection between the deleterious effects of the MRGO channel over a 50 year period and the resulting catastrophic flooding suffered by the plaintiffs during Katrina.  To assess the impact of the MRGO, the plaintiffs first introduced the conditions that existed prior to the introduction of the conditions associated with the MRGO; a "before picture" parameter was set.  The plaintiffs next modeled the conditions as they existed on August 29, 2005, to demonstrate the actual effects that the MRGO had; an "after picture" parameter was set.  This contrast permits the Court to then evaluate the impact that the Corps, construction, operation and maintenance of the MRGO had on the area.

**II.**

The evidence demonstrates that the Corps designed and constructed the MRGO utilizing the professional engineering assessments that the channel would have ***no*** impact on the calculations and conditions relied upon in its design of the Lake Pontchartrain and Vicinity Hurricane Protection Plan (LPVHPP) (See Exhibit 1 - DM1Lake Pontchartrain, Louisiana and Vicinity Design memorandum No. 1, Hydrology and Hydraulic Analysis, Part 1 - Chalmette, p. 23, §8.d.(7)).  Indeed, the evidence will demonstrate that the professional engineering calculations relied upon by the Corps in designing the LPVHPP required fixed environmental conditions.

Plaintiffs' "No MRGO" scenario which reflects what the Corps assumed in 1966, that the MRGO would have no hurricane-related impacts on the environment of the LPVHPP. Accordingly, to demonstrate the effects of Katrina under the circumstances projected by the Corps' engineering decisions, Plaintiffs, with the assistance of scientifically verified modeling techniques animated the Katrina event with the topography, bathymetry and habitat in the Chalmette area fully intact.  This became Plaintiffs' Scenario 2c.[1]

Plaintiffs contrasted the pristine MRGO with scientifically verified models of the conditions that were ultimately presented on August 29, 2005.  These conditions reflected more than fifty years of degradation to the topography, bathymetry and habitat were introduced by the Corps'as a function of their construction, operation and maintenance of this channel.  This

---

[1] This technique adopted and mirrored the Corps' method of calculating the surge dynamics introduced by the channel as performed in 1966, by Bretschneider and Collins, in which they eliminated entirely the MRGO from their surge modeling.  See, Memorandum for Record Feb 6, 1973 at 2 b and c. annexed as Exhibit 2 incorporating by reference findings of NESCO report at pg. 44.

became known as Scenario 1.

To effectively evaluate the dynamics of flooding during hurricane Katrina, Plaintiffs undertook a systematic approach of studying the causes of various hydrologic ingressions, making the MRGO a variable; and then furthered that analysis to include an evaluation of the role of the MRGO to ultimately reach scientifically based conclusions.  These conclusions are set forth in Plaintiffs's expert reports.

To understand the conclusions, the Court must evaluate evidence of the inputs and the different computer models.  The first step in this analysis began with the origination of the waters that entered each of the three polders- Upper Ninth Ward, New Orleans East, and the Lower Ninth Ward/ St. Bernard.  Once the experts identified the cause of each failure, they next evaluated the potential contribution the MRGO played in these failures.

Wind, wind direction, waves, wave set up, fetch, topography and habitat of the land mass all influence "surge," which is the change in elevation of water that results from the movement of a hurricane on shore.  Plaintiffs' experts recreated surge characteristic by a computer modeling program referred to by academics by its acronym FINEL.  FINEL allowed the flexibility necessary to incrementally examine the effects of adding removing or modifying channels, wetlands, and flood protection elements within the landscape to gain a greater understanding of how each contributed to surge dynamics.

Plaintiffs' experts then utilized a different independently verified, academically and professionally accepted wave modeling program referenced as SWAN.  SWAN evaluated wave generation and dissipation in nearshore, inshore and inter-tidal areas.  Once the parameters of this program were established, another computer program, SOBEK, was utilized to simulate the flooding resultant from the outputs of the previous computer programs.

With these programs in place, Plaintiffs' experts ran a scenario that simulated the actual events that occurred during hurricane Katrina. Then to set the inverse parameter, a scenario was run that showed the results of Katrina had the MRGO had no effect on the environment. This became known as Scenario 2c.

Within these parameters, the various contributing factors could be independently analyzed, and ultimately the Plaintiffs were able to isolate the factors that the Corps could have controlled by operating and maintaining the MRGO in a non-negligent fashion. In short, by comparing the various conditions that were created and altered by the construction, operation and maintenance of the MRGO, the full impact of the deleterious effects of the MRGO can be analyzed.

The incontrovertible results are as follows:

1. The MRGO caused or substantially contributed to the exacerbation of hurricane *waves* such that those waves became powerful enough to erode the front side of the MRGO Reach 2 levees. (The Corps's Interagency Performance Evaluation Task Force (IPET) observed that wave heights during Katrina were typically similar to those assumed for the design of the structures, ***but the wave periods were three times longer than the design assumptions***; IPET failed to evaluate the effect this had on the structures).

2. The MRGO caused or substantially contributed to the exacerbation of hurricane storm surge; had this dynamic not occurred there would have been no (or substantially less) overtopping at the southern border of New Orleans East, the western wall of the Inner Harbor Navigational Canal (IHNC), the eastern wall of the IHNC, and the 40 Arpent levee of St. Bernard Parish. (These results allowed Plaintiffs' experts to opine as to whether the levees would have failed had the MRGO been designed constructed and maintained to the hurricane surge neutral).

5

### III.

### CONCLUSION

**WHEREFORE**, the Plaintiffs Norman Robinson, Kent Lattimore, Lattimore & Associates, Tanya Smith, Anthony Franz, Jr., and Lucielle Franz pray that this Court deny the United States' Motion in Limine to Bar the Introduction of Evidence Which Removes the MRGO From Existence.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
**Law Offices of Joseph M. Bruno**, **A PLC**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com


    /s/ Pierce O'Donnell
PIERCE O'DONNELL (pro hac vice)
**O'Donnell & Associates, P.C.**
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Telephone: (213) 347-0290
Facsimile: (213) 347-0298
Email: pod@oslaw.com

**MRGO SUBGROUP LITIGATION COMMITTEE LIAISON**
James P. Roy, *Approved Liaison Counsel*
John Andry
Joseph Bruno
Clay Mitchell
Pierce O'Donnell

**THE MRGO LITIGATION GROUP**

**The Andry Law Firm, LLC**
Jonathan B. Andry
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504) 585-1788

**Andry & Andry**
Jay Andry
Gilbert V. Andry
Arthur Landry
710 Carondolet Street
New Orleans, LA 70130
Telephone: (504) 581-4334
Facsimile: (504) 586-0288

**The Law Office of Joseph M. Bruno A PLC**
Joseph M. Bruno
Scott Joanen
855 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett
Philip L. Gregory
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

**Carlton Dunlap Olinde & Moore**
John B. Dunlap, III
Richard P. Ieyoub
One American Place, Suite 900
301 Main Street
Baton Rouge, LA 70825
Telephone: (225) 282-0600
Facsimile: (225) 282-0650

**Law Office of Frank J. D'Amico, Jr. APLC**
Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Facsimile: (504) 525-9522

**Domengeaux Wright Roy & Edwards LLC**
James P. Roy
Bob F. Wright
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile: (337) 233-2796

**The Dudenhefer Law Firm , LLC**
Frank C. Dudenhefer, Jr.
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Telephone: (504) 616-5226

**Dumas & Associates Law Firm, LLC**
Walter C. Dumas
Travis J. Turner
Lawyer's Comples
1261 Government Street
P.O. Box 1366
Baton Rouge, LA 70821-1366
Telephone: (225) 383-4701
Facsimile: (225) 383-4719

**Fayard & Honeycutt**
Calvin C. Fayard, Jr.
Blayne Honeycutt
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile: (225) 664-6925

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**
Gerald E. Meunier
2800 Energy Centre

7

1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile: (504) 528-9973

**Girardi & Keese**
Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile: (213) 481-1554

**Glen J. Lerner & Associates**
Glen J. Lerner
4795 S. Durango Drive
Las Vegas, NV 89147
Telephone: (702) 877-1500
Facsimile: (702) 968-7572

**Levin, Papantonio, Thomas, Mitchell Echsner & Proctor, P.A.**
Clay Mitchell
Matt Schultz
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile: (850) 436-6123

**McKernan Law Firm**
Joseph Jerry McKernan
John Smith
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile: (225) 926-1202

**O'Donnell & Associates P.C.**
Pierce O'Donnell
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone: (213) 347-0290
Fax: (213) 347-0298

**Michael C. Palmintier, A PLC**
Michael C. Palmintier
Joshua M. Palimintier
618 Main Street
Baton Rouge, LA 70801-1910
Telephone: (225) 344-3735
Facsimile: (225) 336-1146

**Robinson, Calcagnie & Robinson**
Mark P. Robinson, Jr.
Kevin F. Calcagnie
620 Newport Center Drive
7th Floor
Newport Beachm CA 92660

**Law Office of Elwood C. Stevens, Jr., A PLC**
Elwood C. Stevens, Jr.
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile: (985) 385-4861

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the above and foregoing Memo in Support of Motion to Compel upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 6th day of April, 2009.

                                                /s/ Joseph M. Bruno
                                                 Joseph M. Bruno