UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES         CIVIL ACTION
CONSOLIDATED LITIGATION
                                      No.: 05-4182
FILED IN:   05-4181, 05-4182, 05-4191, 05-4568,
            05-5237, 05-6073, 05-6314, 05-6324,
            05-6327, 05-6359, 06-0020, 06-1885,
            06-0225, 06-0886, 06-11208, 06-2278,
            06-2287, 06-2346, 06-2545, 06-3529,
            06-4065, 06-4389, 06-4634, 06-4931,
            06-5032, 06-5042, 06-5159, 06-5163,
            06-5367, 06-5471, 06-5771, 06-5786,
            06-5937, 06-7682, 07-0206, 07-0647,
            07-0993, 07-1284, 07-1286, 07-1288,
            07-1289.

PERTAINS TO: LEVEE AND MR-GO

### AFFIDAVIT OF EXPERT WITNESS
### EDWARD F. SHERMAN

I, Edward F. Sherman, being first duly sworn, depose and say the following:

1. I make the following statements from personal knowledge and belief that they are true and correct. I am over 18 years of age, have not been convicted of a felony or crime of moral turpitude, and am competent to render this affidavit.

2. I am a Professor of Law at Tulane University Law School in New Orleans, Louisiana. From 1996 to 2001, I was also Dean of Tulane Law School. From 1977 to 1996, I taught at the University of Texas School of Law, in Austin, Texas, where I was the Edward A. Clark Centennial Professor of Law. I have previously taught at Indiana University School of Law (1969-1977) and as a Teaching Fellow at Harvard Law School (1967-1969).

3. Upon graduation from Harvard Law School in 1962, I clerked for a federal district judge in the Western District of Texas and practiced with a law firm in El Paso, Texas for a total of three years. I served two years in the U.S. Army from 1965 to 1967.

1


EXHIBIT 86

4.  My areas of teaching and research are Complex Litigation, Civil Procedure, and Alternative Dispute Resolution, and I have published a large number of books and articles on these subjects. My casebooks (Marcus & Sherman, Complex Litigation: Advanced Civil Procedure (West Group, 4th ed. 2004); Marcus, Redish, & Sherman, Civil Procedure: A Modern Approach (West Group, 5th ed. 2009); and Rau, Sherman, & Peppet, Processes of Dispute Resolution: The Role of Lawyers (Foundation Press, 1989, 4th ed. 2006)) are used in law schools around the country.

5.  I have been on the members' consultative group of the American Law Institute's Complex Litigation, Transnational Civil Procedure, and Aggregate Litigation Projects. I served as a Reporter for the American Bar Association's 1994 Report on Civil Justice Reform, "Reaching Common Ground: A Summit on Civil Justice Systems Improvements;" 1995 Report on "Fee-Shifting under the Federal Rules of Civil Procedure;" and 2005-6 Task Force on Asbestos. I was Chair and Reporter for the 2002-2003 ABA Task Force on Class Action Legislation and the Reporter for the ABA Task Force on Disaster Insurance Coverage.

6.  I have served as counsel, consulted with counsel, or served as an expert witness in a number of class actions, in both federal and state courts and on both sides of the docket. In keeping my casebook on complex litigation current, I have read many of the opinions concerning class action issues that have been published in the last twenty-five years, as well as a number of unpublished opinions. I have testified as an expert witness on class certification issues in a number of cases, in both state and federal courts. Further information about my qualifications is contained in the attached Curriculum Vitae in the Appendix.

7.  I have been asked to give an opinion as to whether the settlement class in this case can properly be certified as a class action in light of objections that have been filed with the court and whether, under the circumstances, the settlement is fair, adequate, and reasonable. I have not been asked for an opinion on the amount of insurance coverage available in this suit. I base my opinions on all of the information concerning these cases that I have been provided, my knowledge of class action standards and precedents, and my experience with the conduct and administration of class actions. My testimony is not intended to usurp the role of the court in ruling on these issues. Rather it is simply to provide information concerning the manageability and feasibility of certifying this class settlement based on my twenty-five years of studying class actions, including talking with judges, law clerks, and attorneys, for purposes of my teaching and writing.

8. In preparing to render my opinion I have reviewed: Class Settlement Agreement (with exhibits); Joint Motion for Preliminary Certification/Approval (with exhibits); Preliminary Order; Second Supplemental Complaint; Notice documents; Objections to Settlement; Objections of Class Members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart; Objections to Proposed Certification and Settlement; Amended Objections to Proposed Certification and Settlement and Notice of Intent to Appear; Memorandum in Support of Objections to Class Certification and Settlement; and Memorandum in Support of Joint Movants' Request for Entry of Final Order and Judgment Certifying the Proposed Settlement Class and Approving the Proposed Settlement Class Settlement Agreement.

2

Rule 23(b)(1)(B) "Limited Fund" Class Action

8.      The settlement class under consideration is sought under Rule 23(b)(1)(B). That rule applies when the prosecution of separate actions by individual class members would create a risk of adjudications that, as a practical matter, will be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interest.

9.      A "limited fund" is a paradigm for a (b)(1)(B) class action because early judgments against the defendant by some class members could exhaust the fund, leaving nothing for the other class members. The traditional notion of a limited fund is when "a fixed asset or piece of property exists in which all class members have a preexisting interest, such as trust assets, a bank account, insurance proceeds, or company assets in a liquidation sale."[1] In this case the insurance proceeds constitute a limited fund because the defendant insurance companies have agreed to a settlement in which they will pay the policy limits plus interest and, pursuant to the anti-seizure provisions of the Louisiana Constitution, the public property and funds of the defendant levee boards are not subject to seizure to satisfy a judgment.

10.     The Brinkmeyer, LeBlanc, and Stuart objectors contend that there is no limited fund because "although [the levee boards] cannot be forced to satisfy a monetary judgment against them, they can choose to pay a judgment or to contribute to a settlement fund."[2] This reflects a misunderstanding of the limited fund doctrine. Assets which cannot be seized and are not subject to satisfy a judgment are just as limited as insurance proceeds that are subject to policy limits or the assets of a corporation with limited liability. These have routinely been considered by courts to be a limited fund. Without a means to enforce a judgment, a plaintiff has no realistic entitlement to impose liability upon a defendant. A right requires a means of enforcement, and the fact that a defendant might choose to pay a judgment, although there is no legal right to require it to do so, does not create a legally-enforceable right that would prevent limited fund status. Only if a defendant has a legal obligation to pay a judgment can his assets be said to constitute a fund that is not limited.

11.     This point is reflected in *Doe v. Karadzic*,[3] a class action on behalf of victims of acts of genocide in Bosnia-Herzegovina alleged to have been committed under the command of the defendant head of state. It was found not to be a (b)(1)(B) limited fund class because the plaintiffs had presented insufficient evidence as to the funds available to the individual defendant (and his attorneys admitted that there might be hidden assets). The court contrasted a judgment against an individual who is personally liable with a limited fund situation where the defendant's liability is restricted to the equivalent of a fund. Note that the court focuses on whether the judgment will be "enforceable" against the defendant:

---

[1] NEWBERG ON CLASS ACTIONS, § 4.09, at 4-33.
[2] Objections of Class Members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart, p. 1-2.
[3] 192 F.R.D. 133 (S.D.N.Y. 2000).

3

>Yet, in contrast to the traditional limited fund class action, the defendant here is neither a corporation with limited liability nor 'a fixed and limited fund in danger of depletion,' but rather an individual, living person subject to in personam claims. Any judgment against the defendant will be enforceable against him for at least twenty years, and any asset subsequently discovered by the plaintiffs or earned by the defendant will be subject to the judgment. Hence, the Doe plaintiffs must establish not only that defendant's current net worth is insufficient to satisfy a potential judgment but also a 'substantial probability' that the defendant will be unable to pay such claims over the life of the judgment.[4]

12.   Unlike the defendant in *Karadzic*, the defendant levee boards are not individuals, but governmental entities. Their limited liability is based on their constitutional immunity from enforcement of judgments. They satisfy the limited fund requirements by virtue of the fact that they possess legal immunity under Louisiana law from enforcement of judgments. In fact the Louisiana constitutional anti-seizure provision is supplemented by case law that judgment creditors cannot mandamus political subdivisions to appropriate funds to pay a judgment and that recording of a judgment will not create a judicial mortgage on their property.

13.   The Supreme Court in Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999) set out three requirements for a Rule 23(b)(1)(B) class – that the fund is inadequate to pay all claims; that the whole of the fund is devoted to claims; and that the claimants must be treated equitably among themselves. All three of these requirements are satisfied in this case.

14.   First, that the fund must be inadequate to pay all claims, is established by the fact that under the settlement the defendant insurance companies will pay full policy limits (thus having no further liability) and that the defendant boards have no legally-enforceable liability for any amount. Unlike *Ortiz*, it is not necessary to determine the value of all defendant assets and compare them to liabilities. There is only a small disagreement between the parties as to the amount of the policy limits, and this will be determined by the court. There is also no doubt that this amount is woefully inadequate to pay for the losses claimed by the class. Likewise, the fact of the defendant boards' immunity from enforcement of judgments is a matter of law to be determined by the court, and, if upheld, establishes that there is zero liability by the defendant boards. Thus there will be no uncertainty as to the amount of a fund available to pay the claims. This is different from *Ortiz* which particularly emphasized that there was insufficient evidence of the value of defendants' assets and that class counsels' figures as to values could not be relied on because they had conflicts of interest in negotiating for higher settlements for their own inventory cases. There is no such situation here.

15.   Second, that the whole fund must be devoted to the claims, is also shown here by the payment of policy limits and the zero enforcement liability of the boards. *Ortiz* emphasized that for a (b)(1)(B) class, plaintiffs "must show that the fund is limited by more than the agreement of the parties."[5] If the parties could create a limited fund under the circumstances in *Ortiz*, the court saw perverse incentives arising, allowing settlement for inadequate amounts that

---

[4] *Id.* at 140.
[5] 119 S.Ct. at 2302.

4

left defendants with assets that should properly have been reachable by the claimants. Here it is not the agreement of the parties but the limited liability created by Louisiana law that establishes the boards' immunity, and they are left with no assets that should be reachable by the class members. Likewise, the defendant insurance companies, by paying the full policy limits, receive no unfair benefits from the settlement.

16.     The objectors' amended objections to the settlement state: "2. The defendants (as opposed to their insurers) are making no contributions to the limited fund."[6] This is irrelevant. Unlike *Ortiz*, where the defendant Fibreboard had full liability, but the bulk of the settlement was to be paid by the insurers, here the boards have no legal liability and are not required to pay any amount in contrast to the full policy amounts paid by the insurers.

17.     Third, that the claimants must be treated equitably among themselves, is satisfied here. *Ortiz* involved a settlement that failed to treat present and "futures" class members differently, even though the Court found serious conflicts of interest between them. Likewise, class members whose insurance policies expired much earlier were treated the same as those with different expiration dates. In contrast, there is no need for separate class representatives and counsel in this case because the classes have been separated based on the defendant parish in which the class member resided or had property. The members of each class share the common characteristic that the water that caused them injury or damage came from the same breach or breaches of levees maintained by the same parish levee board. The fact that the injuries or damages might differ from class member to class member makes no difference for class certification where they were the result of the water of the same breaches for which the same parish levee board was responsible.

18.     It was the inequitable treatment of groups of class members whose interests conflicted that particularly troubled the Court in *Ortiz*, not that the exact amount of payments need necessarily be determined at the fairness stage of the litigation. Here payments to class members will be determined in the future pursuant to court supervision that can use grids or matrices to determine relevant differences (such as geographical location and nature of injury or damage) for a payment schedule. This can properly be accomplished in further phases of the settlement process. This should be a relatively manageable and inexpensive task in this case, as experts and counsel, under court supervision, can identify relevant factors that go into a matrix for distribution of the fund to the class members. Such matrices have been used in other class actions, particularly with settlement classes, and can serve as models.

## Whether the Settlement is Fair, Adequate, and Reasonable

19.     Objectors Brinkmeyer, LeBlanc, and Stuart contend that there is no evidence that the payments to which class members will be entitled are fair, adequate, and reasonable. They claim that after payments of costs, etc., an insufficient amount will be left for the class members.[7] Courts are often not in a position at the time of a fairness hearing on approval of a

---

[6] Objections to Proposed Certification and Settlement, p. 2.
[7] Objections of Class Members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart, p. 6, 10-11.

5

settlement to inform the class members as to the exact amounts they will receive. Claims procedures necessarily take place after a fairness hearing to determine exactly how many class members make claims and what each will receive. In a fairness hearing, the court determines if the proposed process is fair and reasonable, but all uncertainty as to amounts is impossible to dispel. It is for the court here to examine the proposed process. The affidavits and proposed testimony of the experts who conduct the notice phase of the litigation are before the court and show that the process used is consistent with what other courts have approved.

20. The settlement parties have not attempted to present the court with a single method of determining distribution of the settlement fund. It is for the court to determine what method will be used, and this may be an on-going process as developments occur.[8] Use of matrices to set out characteristics of class members' claims that will determine the amount of payment they receive is common.[9]

21. The objectors complain that the amount of the total settlement fund is too low to assure the class members adequate compensation.[10] It is the purpose of the fairness hearing for the court to determine, weighing the factors set out in court precedents, whether the settlement amount is fair under all the circumstances. The risk of going to trial and the attendant transaction costs are a factor. It is an unfortunate aspect of this litigation – in which the claims are massive and the liability of defendants very limited – that the settlement fund, based solely on insurance limits, will not compensate the class members for all their losses. But the alternative to a limited fund class action would be that claimants who are able to get a judgment first will exhaust the limited fund and leave nothing for the other class members.

22. If the court finds in the fairness hearing that the amount of settlement is reasonable under the circumstances, a method of allocation between the class members will be determined in a later phase. Information as to the exact amount to be received by class members is of less importance in a limited fund class action where there is no opt out, and courts have routinely allowed allocation and distribution of the fund to be a ministerial act in a later phase.

---

[8] The ultimate distribution to class members has been accomplished inexpensively by allowing sworn statements concerning eligibility to be made through the litigation's internet website. *See* In re Compact Disc Minimum Advertised Price Antitrust Litigation, 216 F.R.D. 197 (D.Me. 2003).

[9] *See* In re Monumental Life Insurance Co., 365 F.3d 408, 417, 419 (5th Cir. 2004), finding monetary restitution of past premium overcharges or benefit underpayments "virtually a mechanical task" through standardized formulas or grids, even if a large number of grids must be constructed. Grids or matrices for differentiating between class members as to payments are particularly common in settlement classes.

[10] Objections of Class Members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart, p. 6, 10-11.

Rule 23(a) Prerequisites

23.     The "Memorandum in Support of Objections to Class Certification and Settlement," filed on March 20, 2009, contends that "the requirements of Rule 23(a) have not been met."[11]

24.     Objectors state that there is "no explanation as to how each Class Representative is typical of other Class Members, nor do they demonstrate that these representatives will vigorously pursue the interests of the class."[12] (p. 17) The motion for class certification and supporting memoranda show that the class representatives are typical. The typicality requirement of Rule 23(a)(3) is met when the evidence shows that the claims of the class representatives have the same essential characteristics as those of the class as a whole, although the claims need not be identical or perfectly co-extensive, but only substantially similar.[13] The claims of the class representative here arise from the same conduct of the defendants (failing to maintain the levees) that affected all class members. The claims made by the class representatives allege the same form of injury suffered by all class members and seek the same remedies.

25.     The adequacy of representation requirement of Rule 23(a)(4) is also satisfied here. Representative plaintiffs must demonstrate "(1) they have no interests which are antagonistic to other members of the class, and (2) their attorney is capable of prosecuting the instant claim with some degree of expertise."[14]

26. First, there is no apparent conflict or antagonism between the interests of the named plaintiffs and the other class members. The class representatives have been actively involved in the conduct of this case and appear to be strongly motivated to insure that the interests of the class are served by this suit. There is no requirement that class representatives be sophisticated in their understanding of the technical or legal aspects of a case.[15]

27. Second, the court must be satisfied as to the competence and conscientiousness of class counsel in vigorously prosecuting the claims of the class members. The experience of class counsel here in complex litigation is extensive and varied, fully qualifying them to represent the class in this suit. Class counsel have adequate financial resources to pursue this case in the interests of the class.

---

[11] Memorandum in Support of Objections to Class Certification and Settlement, p. 17.
[12] *Id.* at 17.
[13] Adamson v. Bowen, 855 F. 2d 668, 676 (10th Cir. 1988)(the test is whether "the claims of class representatives and class members are based on the same legal or remedial theory").
[14] Wetzel v. Liberty Mutual Ins. Col., 508 F. 2d 239, 247 (3d Cir. 1975).
[15] *See* Piel v. National Semiconductor Corp., 86 F.R.D. 357 (E.D. Pa. 1980)("To require a person unschooled in the realm of our complex and abstract securities laws to have first-hand knowledge of facts cloaked in an alleged conspiratorial silence and which present themselves as a wrong-doing that may be actionable would render the class action device an impotent tool.").

28. The objectors further allege that it has not been shown:

> "that the named representatives are adequate to pursue the myriad of claims in this case. The claims here are not uniform; they range from property damage claims to wrongful death, medical monitoring, punitive damages, loss of income, loss of consortium, restoration and the like. No single person in Orleans, for example, can adequately represent all of the plaintiffs in that levee district having claims arising from Hurricanes Katrina and Rita.

29. This objection misunderstands the nature of the typicality and adequacy of representation requirements. Under Rule 23(a), the claims of representative plaintiffs need only arise out of the same conduct of the defendant and need not be based on identical injuries or damages. Class members here have been affected by the same conduct of defendants which resulted in the levee breaches. The class is cohesive in that there is a single wrong or violation affecting all the class members in a similar manner. The resolution of the issues common to the class in the settlement will settle the entire litigation for all class members, leaving only the determination of each class members' damages which can be accomplished by use of grids, matrices or other ministerial mechanisms in a later phase of the litigation. There are not the disparate fact questions undermining class cohesiveness which troubled the Supreme Court in *Amchem Products, Inc. v. Windsor*[16] where plaintiffs were exposed to asbestos in different products in different ways over different periods, resulting in vastly different damages, ranging from fatal lung cancers to asymptomatic pleural change.

Conclusion

30. It is my opinion that this settlement class meets the requirements of Rule 23(a) and Rule 23(b)(1)(B) and that, given the restrictive liability of defendants resulting in a limited fund, this settlement is fair, adequate, and reasonable.

Signed this 31 day of March, 2009.

*Edward F. Sherman*
EDWARD F. SHERMAN

Sworn to and subscribed before me
this 31st day of March, 2009.

_____
NOTARY PUBLIC

---

[16] 117 S.Ct. 2231 (1997).

8