# EXHIBIT 4

# Expert Report

of

# Robert Glenn Bea, Ph.D., P.E.

Prepared for Plaintiffs in:

Katrina Canal Breaches Consolidated Litigation
[Civil Action Number: 05-4182 "K" (2)]

United States District Court
Eastern District of Louisiana

## Pertains to: MR-GO, Robinson

(C. A. No. 06-2268)

Moraga, California

January 29, 2009

*Edits February 16, 2009*



Figure 26: Sheet piling overtopping erosion of EBSBs.

*Phase I Analyses*

134.    Our Phase I breach mechanism study identified all of the foregoing multiple breach mechanisms at play.  These analyses (Figure 27) indicated the following Reach 2 EBSB breach mechanisms, by percentages of the total length of EBSB breached:

- Surge overtopping initiated breaching (protected side to flood side) – 55%
- Wave initiated overtopping exploited breaching (flood side to protected side) – 45%

Contrary to the assertions made by the Defense Experts in their December 2008 Expert Reports, I did not attribute development of all of the major breaches in the Reach 2 EBSBs to wave initiated overtopping exploited breaching. This is another in the long list of the 'incorrect

90

attributions' contained in the cited December 2008 Expert Reports – an immature 'rush to judgement'.

135.   Breaches also developed at the sheet piling overtopped locations and at the Reach 2 EBSB interfaces with navigation – water control structures at Bayou Dupre and Bayou Bienvenue. These breaches are not included in the foregoing percentages.

136.   Contrary to the opinions expressed by the Defense Experts, I did not extrapolate the results from the EBSB Study Location to the remainder of the Reach 2 EBSBs based solely on results from the EBSB Wave Erosion model. Many other 'Demand' (loading) and 'Capacity' (resistance, ability to perform intended functions given the Demands) factors were considered to develop an assessment of how and when the major breaches developed during Hurricane Katrina. In addition, I did not conclude that all of the breaching that developed along Reach 2 was due to water side wave erosion.

137.   To demonstrate the breach development modes, example locations have been identified in Figure 12 along Reach 2 that show each of these breach mechanisms (Locations A – F).  In Figures 28 – 33 a photograph shows the post-Katrina condition, a three-part illustration depicts the erosion sequence (at 5 am, 7 am, and 9 am, CDT, during Hurricane Katrina) with the rising, peak, and falling storm surge, and a cross-section of the before (2000) and post (2005) Katrina profiles (based on LiDAR surveys) that confirm the resulting shape depicted in the three-series illustrations.

138.   Also shown are locations that were overtopped, but suffered no scour or erosion, represented by locations A and F were (No Breach).  Location B demonstrates features from wave and/or overtopping breaching mechanism (near Station 497+00).  Location C shows a sheet pile breach feature.  Overtopping is shown at Location D.  Wave-induced erosion (crenellation)

<u>Overall, Dr. Wolff's observations and comments are excellent contributions. These contributions identify improvements needed for the completed analyses to be 'perfect.' However, these comments apply equally to both the Plaintiffs and Defense Experts.</u> A primary reason that neither the Defense Experts or the Plaintiffs Experts can meet these 'ideal' criteria is the lack of required 'perfect' information and knowledge needed to perform and evaluate results from the analyses.

For example, Dr. Wolff states his opinion that the analyses do not directly prove that something DID happen, rather that the scenario was possible.  <u>What Dr. Wolff does not highlight, is that the required information by which to fully complete the analyses requires information not available, to either the Plaintiffs or the Defense Experts.</u>