**UNITED  STATES  DISTRICT  COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:   KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| _____ | § | |

**CORRECTED[1] CONSOLIDATED REPLY IN SUPPORT**
**OF THE UNITED STATES OF AMERICA'S MOTIONS IN LIMINE**

Although they profess to be interested in "streamlining" the trial when it suits their

purposes, Plaintiffs "object" to the motions in limine filed by the United States, which are

intended to exclude irrelevant, wasteful, and prejudicial evidence.  *See* Doc. 18472.

Plaintiffs' primary argument is that the motions merely attempt to relitigate issues already

presented in the Parties' summary judgment papers.  This is simply not true, as the only

relief sought by the motions in limine is the exclusion of inadmissible evidence.  For the

reasons stated below, the motions in limine filed by the United States should be granted, and

Plaintiffs' "objection" should be overruled.

**I.      Evidence Which Removes the MRGO From Existence (Docs. 18440 and 18482)**

Plaintiffs' contend that their "No MRGO" scenario reflects the Corps' LPV design

assumptions in 1966.  *See* Doc. 18482 at 3.  This argument, just like Plaintiffs' computer

_____

[1]  This corrected version eliminates a printing problem that resulted in each page printing
twice.  Otherwise, there are no changes.

modeling, is based on the flawed assumption that the MRGO never existed.  The MRGO had

been built to full project dimensions by 1965.

Obviously, the engineers who designed the LPV protection structures along Reach 2

of the MRGO were aware that the MRGO existed.  The LPV design memorandum cited by

Plaintiffs state that "[t]he procedures in this report were based on the assumption that the

Gulf Outlet had no effect on hurricane surge elevation."  *See* Doc. 18482-2 at 23, § 8.d.(7).

The causation issue confronted in the LPV design documents, like the issue before this

Court, is whether the *presence of the MRGO causes* additional hydrodynamic effects which

would lead to breaching.

Plaintiffs response is doubly flawed.  First, in an attempt to avoid the FTCA's

discretionary function exception, Plaintiffs steer their case onto the shoals of the Flood

Control Act.  Plaintiffs' theory is that evidence which removes the MRGO from existence is

somehow relevant because the Corps, in planning the LPV, wrongly assumed that the

MRGO would have no effect upon storm surge.  But this theory merely underscore that any

negligence on the part of the Corps in wrongly predicting the hydrological impact of the

MRGO would be negligence in the planning and design of a flood control project, a claim

that the Flood Control Act indisputably bars.

Second, this Court has already ruled that the United States cannot be held liable for

the initial design and construction of the channel: "[A]s concerns the initial design and

construction of the MRGO, these actions are shielded by the discretionary function

exception.  Clearly, there was no violation of any mandate and the decisions made were

policy driven."  *See* Doc. 18212 at 49.  Plaintiffs should be barred from introducing evidence

which, in contravention of this holding, rewrites history to "imagine a landscape in which

the 1958 MRGO project never existed." *See* G. Paul Kemp, Expert Rep. at 69 (July 11,

2008) (Doc. 18440-9).

## II.   Evidence Concerning Alternative Methods of Hurricane Protection (Docs. 18443 and 18474)

Plaintiffs wish to present evidence that the Corps should have employed alternative

methods of hurricane protection, including storm surge barriers, levee height enlargements,

salinity gates, and other alternative methods of hurricane protection. *See* Doc. 18474 at 2, 5.

Because this argument is barred as a matter of law, evidence relating to these measures

should be excluded from trial.

First, decisions to choose one method of flood protection (levees of a certain height)

over another (the ones advocated by Plaintiffs) are protected by the Flood Control Act.

When Plaintiffs claim their damages could have been remedied with another method of flood

protection, Plaintiffs are arguing that the *choice of flood protection* chosen by the United

States was inadequate.  The Flood Control Act bars such a claim.  Plaintiffs completely gloss

over this argument because they have no evidence to rebut the point that surge barriers,

levee height enlargements, and other similar measures are flood control projects.

Second, the implementation of any of these plans would have required additional

Congressional authorization and funding, and plainly would have been a discretionary

decision, for which the United States may not be sued.  *See Cato v. United States*, 70 F.3d

1103, 1110 (9th Cir. 1995) ("Legislative conduct is discretionary for purposes of the

[discretionary function] exception."); *Brown v. United States*, 790 F.2d 199, 202 (1st Cir.

1986)("How much equipment the [agency] is to possess, and how much money it is to spend,

measured, necessarily, by Congressional appropriations, must be for the government's

uncontrolled discretion.").  Similarly, Plaintiffs may not challenge in the courts the

Executive Branch's decisions whether to recommend any of these measures: the Constitution vests with the President the sole authority to determine whether to recommend to Congress "such Measures as he shall judge necessary and expedient."  U.S. Const. Art. II, § 4; *see also Medina v. Clinton*, 86 F.3d 155, 157-58 (9th Cir. 1996) (affirming denial of request to enjoin President to communicate and recommend particular measures to Congress).  Simply put, because the law does not permit this theory of liability, Plaintiffs should not be permitted to present evidence to support it.

III.    **Evidence of Damage Caused by the Design and Construction of the MRGO (Docs. 18442 and 18476)**

         This Court has already ruled that the United States cannot be held liable for the initial design and construction of the MRGO.  *See* Doc. 18212 at 49 ("[A]s concerns the initial design and construction of the MRGO, these actions are shielded by the discretionary function exception.").  Despite this ruling, Plaintiffs' Trial Brief reveals that they intend to proceed with theories of liability that are dependent on the MRGO never having been built:

   • "*If the MRGO channel had not cut through Bayou La Loutre ridge* then this northward directed surge from Breton Sound would not have added to the surge along the upper reaches of Reach 2."

   • "*Significantly, had the Reach 2 been restricted to a neutral condition* [i.e., no-MRGO], its surge contribution to the funnel would have been a mere 48,000 cfs.  Simply stated, plaintiffs will demonstrate that the operation and maintenance of the MRGO Reach 2 [i.e., existence of the channel] exacerbated surge delivery to the funnel by 578%."

   • "Additionally, had Reach 1 been maintained *at is pre-MRGO dimensions*, it would have conveyed only 157,000 cfs during Hurricane Katrina, about 36% of what was conveyed during the actual storm."

   • "Plaintiffs will demonstrate that at Chalmette close to the Paris Road Bridge the consequences of the dredging of the MRGO meant that during the actual storm 252,000 cubic feet of surge water overtopped the levee per linear foot (cubic ft/ft) compared to 76,500 cubic ft/ft *if the MRGO had not been constructed . . . .*"

4

- "Plaintiffs will demonstrate that at the Citrus Back Levee close to the Paris Road bridge the consequences of the dredging of the MRGO was that during Katrina 118,300 cubic feet of surge water overtopped the levee per linear foot compared to 17,600 cubic ft/ft *if the MRGO had not being [sic] constructed*."

- "Plaintiffs will similarly demonstrate that at the Lower Ninth of levee overtopping [sic] flooding from the Industrial Canal would have occurred for 100 minutes less *if the MRGO had not been built . . . .*"

- "Plaintiffs will also demonstrate that the area of Orleans East that faces the IHNC would have experienced levee overtopping from the IHNC for about 45 minutes less *if the MRGO had not been built . . . .*"

- "Plaintiffs will demonstrate that the depth of floodwaters at their respective properties– would have been significantly less *without the MR-GO's impact on LPV structures (Scenario 2c) . . . .*"

*See* Doc. 18492 at 23-25 (emphasis added).  Because the Court has held that the United States cannot be held liable for the initial design and construction of the MRGO, any evidence (such as that described above) comparing what occurred during Hurricane Katrina to what would have occurred *had the MRGO never been built* should be excluded from trial.

Searching for a new theory of liability now that their design and construction claims have been rejected, Plaintiffs claim that even though the initial defalcations associated with the MRGO were the result of Congress's design and construction decisions, the Corps had a later-arising duty to do something about those decisions:

> Plaintiffs' theory of the case is that creation of the funnel presents a classic case of negligence that created a danger that should have been reported to Congress properly and ameliorated.  Similarly, the connection of the IHNC to the Gulf waters and the corresponding surge conduit that was created became a danger and should have been reported properly and ameliorated.  Likewise, the de-salinization and consequent destruction of the wetlands was the result of post-design negligent operation and maintenance that led to a dangerous condition requiring proper notification to Congress and remediation.  Finally, the erosion of the unarmored channel banks was not something Congress authorized and once the erosive and dangerous effects were recognized, they should have be [sic] ameliorated because of their acknowledged risk to life and safety.

*See* Doc. 18476 at 5-6.

In other words, Plaintiffs' (new) theory of liability is that the Corps should have done something to correct all of the problems created by the initial design and construction of the MRGO.  But each of the alleged problems identified above originated with the Corps' execution of an Act of Congress.  As such, even if evidence on this point were not already precluded based on the Court's summary judgment decision with respect to the discretionary function exception, it would also be barred by the FTCA's due care exception.  *See In re Texas City Disaster Litig.*, 197 F.2d 771, 779 (5th Cir. 1952), *aff'd sub nom. Dalehite v. United States*, 346 U.S. 15 (1953) ("Many, if not all of the acts or omissions of employees in this group come also within the exception of 'any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid'.  Sec. 2680(a).  While the exercise of due care is required to come within this exception, the negligence or wrong cannot inhere in the statute or regulation itself but must be in some act or omission not expressly permitted thereby."); *Welch v. United States*, 409 U.S. 646, 652 (4th Cir. 2005) ("[Welch's] complaint is with the officers' decision to detain him in the first instance. However, this is a complaint regarding the statute itself, not with any of the particular officers' alleged deviation from its mandate. Absent any allegation of such a deviation it cannot be said that the officers acted with anything other than due care. We therefore conclude that the prerequisites of § 2680(a) are met on these facts and that the United States' sovereign immunity is not waived."); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950) ("An analysis of the complaints reveals that plaintiffs are in reality charging negligence of the United States acting through Congress, rather than any lack of due care by an employee of the United States. The allegations of the complaint mean no more than that Congress, in prohibiting the hunting of

6

migratory wild fowl, including geese, was negligent in not also providing for the protection of crops which such wild fowl might eat or destroy.").

## IV.     Evidence Concerning Supposed Violations of NEPA (Docs. 18441 and 18477)

Plaintiffs' arguments on this point plainly prove that they are seeking relief to which they are not entitled.  Plaintiffs assert that their evidence would show that: (1) the Corps failed "to report know, foreseeable consequences" of its MRGO maintenance activities to Congress, "preventing the relevant decision makers, i.e., Congress . . . from fully appreciating the harm that the Corps' O&M inflicted;" (2) the Corps' actions prevented Congress from making "informed decisions"; and (3) "Congressional inability to make an informed decision regarding environmental policy *caused Plaintiffs' harm*."  Doc. 18477 at 4 (emphasis added).

But even if Plaintiffs could prove all this, their claim would be barred by the discretionary function exception.  Significantly, Plaintiffs have finally recognized that "the relevant decision maker" was "Congress."  *Id.*  Indeed, the corrective action that Plaintiffs now claim should have been taken—whether it be armoring the banks of the MRGO or actually closing it—would have required an amendment to the MRGO authorizing legislation, which of course could be accomplished only by an Act of Congress.  And, as the United States previously made clear in its motion in limine on this point, the decision by Congress whether to take such action was plainly a matter of discretion that could never be challenged in a lawsuit.  *See Cato*, 70 F.3d at 1110 ("Legislative conduct is discretionary for purposes of the [discretionary function] exception."); *Brown*, 790 F.2d at 202 ("How much . . . money [a Federal agency] is to spend, measured, necessarily, by Congressional appropriations, must be for the government's uncontrolled discretion.").

Plaintiffs attempt to avoid this straightforward application of discretionary function immunity by trotting out an argument that has been repeatedly rejected by courts of appeals: they claim that their injuries were caused not by Congress's plainly discretionary acts, but rather by the Corps' antecedent failure to provide Congress with the information it needed to make an informed decision.  *See* Doc. 18477 at 4 ("Congressional inability to make an informed decision regarding environmental policy caused Plaintiffs' harm.").

As the United States made clear in its motion, however, a plaintiff may not avoid application of discretionary function immunity by attempting to rely on antecedent non-discretionary conduct (such as failure to comply with NEPA) that may have been performed negligently.  *See* Doc. 18441-2 at 4-5 (citing to *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3rd Cir. 1995) ("If plaintiffs injured by regulatory policy decisions were permitted to prosecute damage actions by challenging the manner in which the underlying data was collected, federal courts, of necessity, would be required to examine in detail the decisionmaking process of the policymaker to determine what role the challenged data played in the policymaking and what the policymaker's decision would have been if he or she had received the unchallenged data but not the challenged data (or had received other data in lieu of the challenged data). . . .  Yet this is precisely the kind of inquiry that the Supreme Court sought to foreclose when it ruled out any inquiry into an official's 'subjective intent in exercising the discretion conferred by statute or regulation.'") (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1132 n.11 (10th Cir. 1999) ("To allow plaintiffs to avoid the discretionary-function bar by alleging that RTC employees breached a specific duty to report information, even though the harmful decisions based on the information were themselves discretionary, would be in tension with precedent."); *Johnson v. United States*, 949 F.2d 332, 339-40 (10th

Cir. 1991) (applying discretionary function exception to bar claim challenging agency's "information gathering activity," which was mandatory, because it was "inextricably tied to" and "a component of the overall policy decision," which was discretionary)).

Because Plaintiffs' NEPA evidence, even if deemed conclusively true, would not permit them to overcome the discretionary function hurdle, such evidence is irrelevant, and should be excluded from trial.[2]

**V.      Evidence Concerning Breaches Along the IHNC (Docs. 18444 and 18473)**

This Court has already ruled that it is without jurisdiction to consider any cause of action concerning the breaches along the East Bank of the IHNC because Plaintiffs' administrative claims failed to provide adequate notice. *See generally* Doc. 15515. Despite this ruling, Plaintiffs persist in arguing that the East Bank IHNC breaches are still in this case. Indeed, Plaintiffs contend that the MRGO was a "substantial factor" in causing these specific breaches.

Plaintiffs cite to Dr. Bea's *January 29, 2009 supplemental expert report* to argue that Dr. Bea concluded the MRGO could be a factor in the breaches along the East Bank of the IHNC. But this argument, which Plaintiffs hope to press at trial, is directly contrary to Dr. Bea's own subsequent deposition testimony taken on *January 30, 2009*. Dr. Bea opined in no uncertain terms that the East Bank IHNC breaches would have occurred *even if the MRGO never existed*:

> Q.  At the bottom of page 21, where you discuss the north and south breach of the IHNC, is that section –

---

[2]  In their papers, Plaintiffs offer no response to the point made by the United States that most of Plaintiffs' NEPA evidence should be excluded because the Court has already held that it does not amount to a NEPA violation. *See* Doc. 18441-2 at 1 n.1. Accordingly, the Court should exclude this evidence for this reason as well.

MR. BRUNO:  What page?

THE WITNESS:  21.

MR. STONE:  Q.  Does that section essentially state that the north and the south breach of the IHNC on the east flood wall would have occurred under either the neutral [i.e., No-MRGO] or the as-was scenario?

A.  That's correct.

Bea. Dep. at 210:16-211:1 (Jan. 30, 2009) (Doc. 18444-5; *see also* Doc. 18444-6).  Because Dr. Bea has concluded that these breaches would have occurred even if the MRGO had never existed, Plaintiffs will be unable to prove that the MRGO was a "substantial factor" in causing the breaches along the east bank of the IHNC.  Any evidence or argument to that effect, then, should be excluded from trial as irrelevant.

## VI.   Evidence of Mental Anguish and Inconvenience (Docs. 18437 and 18478)

After three years of litigation and less than two weeks before trial, Plaintiffs pin their hopes on recovery for "mental anguish" on a brand new theory:  "vicinage" damages under Article 667 of the Louisiana Civil Code.  *See* Doc. 18478 at 3 ("In addition to the traditional tort causes of action, the Plaintiffs are also making a claim under Article 667 of the Louisiana Civil Code.").  As a threshold matter, the Court should rule that no such damages are permitted here because Plaintiffs have not pled a violation of Article 667 in their First Amended Complaint.

In any event, the cases cited by Plaintiffs in their response do not support their argument that violations of Article 667 permit the recovery of damages for mental anguish. Indeed, all of the cases cited by Plaintiffs involved damage to the property of a landowner *who was present* when the damage occurred, and the plaintiffs were awarded damages for enduring such ongoing nuisances.  *See*, *e.g.*, *Rodriguez v. Copland*, 475 So. 2d 1071 (La. 1985) (Al Copeland's Christmas lights); *Rizzo v. Nichols*, 867 So. 2d 73 (La. Ct. App. 2004)

(standing water caused by a neighbor's construction project); *Begnaud v. Camel Contractors, Inc.*, 721 So. 2d 550 (La. Ct. App. 1998) (dust and noise generated by a commercial dirt excavation company); *Branch v. City of Lafayette*, 663 So. 2d 216 (La. Ct. App. 1995) (drainage of rainwater through a below-ground study); *Arnold v. Town of Ball*, 651 So. 2d 313 (La. Ct. App. 1995) (clear-cutting of trees next to a landfill); *Acadian Heritage Realty v. City of Lafayette*, 434 So. 2d 182 (La. Ct. App. 1983) (stench of a landfill).  In each of these cases, unlike here, the plaintiffs were present on their property to suffer the mental anguish and inconvenience for which the damages were awarded.  In fact, in *Arnold*, damages for mental anguish were specifically *denied* to non-resident landowners who joined the suit.  *See Arnold*, 651 So. 2d at 321.

The Fifth Circuit awards mental anguish and inconvenience damages under Louisiana law only when "the mental anguish [is] a real mental injury."  *Turgeau v. Pan Am. World Airways, Inc.*, 764 F.2d 1084, 1087 (5th Cir. 1985) (citations omitted).  As that court has explained, "[t]he usual worry over the consequences of property damage (where a plaintiff suffers no direct mental injury from the negligent act) will not justify an award for mental anguish damages."  *Id.*; *see also Tudela v. Pan Am. World Airways, Inc*., 764 F.2d 1082 (5th Cir. 1985); *Bode v. Pan Am. World Airways, Inc*., 786 F.2d 669, 672 (5th Cir. 1986).  "The Louisiana decisions which have allowed recovery for mental anguish when property was damaged in the owner's presence typically involve situations in which the damage was sudden, the realization of damage on the part of the owner equally sudden, and the mental distress clearly caused by the property damage."  *Harper v. Illinois Cent. Gulf R.R.*, 808 F.2d 1139, 1141-42 (5th Cir. 1987).

In short, Plaintiffs were not present when their property was damaged and became aware of the damage while they remained hundreds of miles away.  While Plaintiffs suffered various personal tragedies as a result of Hurricane Katrina's passage through the New Orleans area, the damage to their property does not justify an award for mental anguish damages under Louisiana law.[3]

## VII.   Evidence of Injuries to Persons Other Than Plaintiffs (Docs. 18435 and 18480)

Plaintiffs argue without logical justification that evidence of damages suffered by persons not a party to this litigation is "clearly relevant to demonstrate the location and sources of the catastrophic flooding."  *See* Doc. 18480 at 1.  Of course, the only locations that matter in this case are the properties owned *by Plaintiffs*.  The damages that were suffered there are relevant; damages suffered by others, elsewhere, are not.  This case—*Robinson*—is between six Plaintiffs and the United States.  Evidence concerning other persons or entities is simply not relevant and should be excluded at trial.  This is especially true with respect to evidence so obviously prejudicial as that the damages suffered by others as a result of Hurricane Katrina.

---

[3] Plaintiffs' reliance on *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316 (D.D.C. 2008), is misplaced.  While that decision held that a motion in limine should not be used to address questions of *fact*, there are no facts in dispute with regard to the motion pertaining to damages for mental anguish and inconvenience.  Plaintiffs do not dispute that they evacuated New Orleans well before the arrival of Hurricane Katrina and that they each understood that their property had been affected weeks before they saw the damage.  The United States does not move to preclude claims of damages for lack of evidentiary support, but rather demonstrates that the undisputed evidence does not support an element of the damages claimed.  For this reason, such evidence should be excluded from trial as irrelevant and prejudicial.

## **CONCLUSION**

The motions in limine filed by the United States should be granted.

Respectfully submitted,
MICHAEL F. HERTZ
Acting Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR
Assistant Director, Torts Branch

 s/ Jeffrey P. Ehrlich
JEFFREY P. EHRLICH
PAUL LEVINE
Trial Attorneys
ROBIN SMITH
Senior Trial Counsel
Civil Division, Torts Branch
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 353-2574 / (202) 616-5200 (Fax)

Attorneys for the United States of America

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey P. Ehrlich, hereby certify that on April 9, 2009, I served a true copy of the foregoing upon all Parties by ECF.


<u>/s/ Jeffrey P. Ehrlich</u>
JEFFREY P. EHRLICH