UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES            CIVIL ACTION
CONSOLIDATED LITIGATION

NO. 05-4182

SECTION "K"(2)

PERTAINS TO: MRGO, *Robinson* C.A. No. 06-2268

### ORDER AND REASONS

Before the Court is Defendant United States' Motion for Summary Judgment (Doc. 15317) which came for hearing on December 18, 2008. By this motion, the United States sought judgment on the issue of damage caused by the negligent operation and maintenance of MRGO. At the time of the hearing, the Court orally denied the motion with the understanding that written reasons were to follow. This Order and Reasons constitutes its reasons for the denial.

### Government's Contentions

This motion concerns the proof available to support a portion of plaintiffs' claims with respect to damages caused by MRGO in the *Robinson* matter. In particular, plaintiffs contend, *inter alia,* that the negligent "operation and maintenance" of the MRGO caused plaintiffs' alleged damage. They contend that the dredging of the MRGO and the absence of adequate bank stabilization caused the flooding of their properties. These factors caused the channel to widen, weakening the levees and causing wetlands to deteriorate (Doc. No. 13527-2, First Amended Complaint, ¶¶ 53, 84. ("FAC"). Furthermore, they contend that the widening of the channel and loss of wetlands "intensified" and "accelerated" storm surge "triggering the collapse" of the levee system." *Id.* ¶¶ 1, 80.

The Government maintains that plaintiffs' own experts' testimony belies these allegations and as such summary judgment is warranted. They cite plaintiffs' Scenario 3–MRGO as designed–results for this proposition, and argue that plaintiffs' failure to run breach development and flooding models with the scenario of MRGO as designed has created a failure of proof that the maintenance and operation of the MRGO exacerbated the problems caused by MRGO itself.

|  | Scenario 1 Katrina Real Run | Scenario 2 No MRGO | Scenario 2c | Scenario 3 MRGO as designed |
|---|---|---|---|---|
| surge |  |  | Surge decreased by 274%; surge velocity diminished by 246%; | Compared to Real Run: Reach2: surge 2.4" higher l Reach 1: surge lower by 5" IHNC: surge lower by 6" |
| waves |  |  | Wave height reduce by more than 50%; wave period plummets about 60% Wave energy eroding the EBSBs along Reach 2 dissipates by 300 % | Compared to Real Run: Reach 2: significant wave height l' lower |
| breach |  |  |  | no report on breaching with "as designed" |
| flooding |  |  |  | no report on flooding with "as designed" |

_____

Thus, the Government contends that the MRGO as Designed (Run 3) model demonstrates:

1) the proper operation and maintenance of MRGO would have increased surge by an inch or two at Reach 2.

2) perfect maintenance would have reduced the largest significant waves at Reach 2 from seven feet to six.

It argues that the experts did not analyze whether the smaller waves would have resulted in less breaching or flooding than occurred during the storm. It states:

> Because they did not analyze the flooding that would have occurred in a "no negligence scenario" or a "but-for" scenario, plaintiffs cannot identify sufficient facts to sustain their claim. Without the assistance of expert opinion, the finder of fact cannot determine where, when, and how extensively Reach 2 levee would have breached if the surge had been a bit lower and the waves slightly higher. *Jones v. Hawkins*,731 So.2d 216 (La. 1999) (where expert opined that foliage prevented both boy and driver from viewing each other, expert testimony insufficient because the 'expert did not study scenario in which negligent conduct was "corrected" by removal of the foliage,' thus evidence did "not indicate that the accident more probably than not could have been avoided if the foliage had not been present."

(Doc. 15317 at 16).

The Court finds that in the *Jones* case the Louisiana Supreme Court held that the plaintiff had "simply" failed to prove by a preponderance of the evidence that foliage was a substantial factor. It stated:

> The only evidence that the plaintiff presented on the issue of whether the foliage caused the accident was the testimony of Duaine Evans, plaintiff's expert. Evans testified that the foliage prevented both Terrance and Mr. Hawkins forseeing each other until they were both in the intersection. Evans did not, however, reconstruct the accident, nor did he or anyone else testify as to what would have happened if the foliage had not be there. The evidence thus does not indicate that the accident more probably than not could have been avoided if the foliage had not bee present.

*Jones*, 731 So.2d at 220. The court did not discuss the legal burden in a concurrent cause case; it appears, rather, that plaintiff's proof in that case was found lacking because no reconstruction was done. Certainly in the case at bar, there has been substantial testing.

Nonetheless, the Government contends that because none of plaintiffs' reports includes a study of how the levees would have performed during Hurricane Katrina if the MRGO had been at its design dimensions and the wetlands had been in pristine condition with MRGO in existence, plaintiffs cannot carry their burden of proving that the alleged negligent operation and maintenance of the MRGO caused their alleged damage.

3

The Government also argues that "[t]o prove 'causation in fact' Plaintiffs must demonstrate that the alleged negligent operation and maintenance were substantial factors in bringing about the alleged damage **and** that "but for" the widening of the waterway and the loss of wetlands, the alleged damage would have been less or would not have occurred all." citing *Westchester Fire Ins Co. v. Haspel-Kansas Inv. P'ship*, 342 F.3d 416 , 420-21 (5th Cir. 2003); *Bonin v. Ferrelgas, Inc.,* 877 So.2d 89, 94 (La. 2004); *Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1992); *Fowler v. Roberts*, 556 So.2d 1,5 & n.6 (1990)." (Doc. 15317-2 at 9).  However, as the Court indicated during the hearing, this conjunctive requirement does not appear to be a correct statement of the law with respect to multiple factor cases.

The Government argues that only if  the widening of the waterway and the loss of wetlands were "necessary antecedents" of plaintiffs' damage, would these activities be considered cause-in-fact of the damages allege.  If the alleged damage "would have occurred irrespective of the negligence of the  [defendant], then his negligence was not a substantial factor or cause-in-fact." citing *Dixie Drive It Yourself System v. Amer. Bev. Co.*, 137 So.2d 298, 302 (La. 1962). "*Id.*

The Government also cites a Louisiana 4th Circuit case, *Boteler v. Rivera*, 700 So.2d 913, 916 (La. App. 4th Cir. 1997),  "A counter-factual hypothesis is recommended as a step in determining cause-in-fact....that is, assuming that the conduct of the tortfeasor was "corrected," is it probable that the plaintiff would still have sustained the damages complained of.  If so, then defendant's substandard conduct was not a cause-in-fact."         Thus, the Government concludes that since there is no proof adduced that if the MRGO had been properly maintained

4

that the breaching and flooding would have not have occurred, then the faulty operation and maintenance of the MRGO is not a cause in fact of the harm.

**Plaintiffs' Response**

   **Corps' Duty**

Plaintiffs first remind the Court of the duty which the Government owes to the plaintiffs –that is it has a duty as landowner and/or proprietor not to flood a neighbor's property. *Lombard v. Sewerage & Water Bd.*, 284 So.2d 905, 9214 (La. 1973) (damage to homes resulting from construction of drainage canal); *Branch v. city of Lafayette*, 663 So.2d 216, 220 (la. App. 1995) (water damages to home after heavy rainfall caused by defective drainage system). Furthermore, plaintiffs opine, " The persons at whose disposal society has placed the potent implements of technology owe a heavy moral obligation to use them carefully and to avoid foreseeable harm to present or future generations." *Pitre v. Opelousas Gen. Hosp.*, 530 So.2d 1151, 1157 (La. 1988).

Thus, they maintain that the Corps had a duty to assure that the MRGO did not enhance the risk of flooding during hurricanes. *Faucheaux v. Terrebonne Consol. Govt.* 615 So.2d 289, 293 (La. 1993); *Graci v. United States*, 435 F. Supp. 189, 195-96 (E.D.La. 1977). In addition , a landowner owes a plaintiff a duty to discover any unreasonably dangerous conditions and to either correct the condition or warn of its existence." *Socorro v. City of New Orleans*, 579 So.2d 931, 939 (La. 1991). Thus, there is a duty to repair as recognized in *Indian Towing co. v. United States*, 350 U.S. 61,69 (1955).

**Legal Standard–But For v. Substantial Factor**

As to the legal standard, plaintiffs maintain that in cases involving concurrent causes of damages, "the proper inquiry is whether the conduct in question was a substantial factor in bringing about" plaintiff's damages, *Chaisson v. Avondale Indust. Inc.*, 947 So.2d. 151, 187-88 (La. App. 2006), which inquiry ask whether "each of the multiple causes played so important a role in producing the result that responsibility should be imposed upon each item of conduct, *even if it cannot be said definitively that the harm would not have occurred 'but for' each individual case.'"* (Doc. 16063 at 6). This quotation comes from *Perkins v. Entergy Corporation*, 782 So.2d 606 (La. 2001). The *Perkins* court continued:

> *See also* Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law, § 4-3 at 86-88 (1996) (noting that the substantial factor test operates well in cases where there are multiple possible causes-in-fact, but the trial judge or jury may not be able to conclude that the accident most likely would not have happened but for any one of the causes). **Additionally, in *LeJeune v. Allstate Ins. Co.,* 365 So.2d 471, 475 (La.1978), the court, in describing the substantial factor test, stated that "one must consider whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm."**

*Perkins,* 782 So.2d at 612 (emphasis added) (plaintiffs failed to prove by preponderance of evidence that power disturbance was substantial factor in occurrence of flash fire as there was no showing that malfunctioning automatic pressure control valve, which indisputably was a substantial factor causing the fires was linked to the power outage). Furthermore, Plaintiffs disagree with the Government's attempt to make it necessary to employ the "but for" requirement.

In addition, they contend that summary judgment on causation is disfavored because it is an intensely fact sensitive issue reserved for trial. *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*,

1997 WL 543108 at *6-*7(E.D.La. 1997) (Vance) ; *See also Staff IT, Inc. v. United States*, 482 F3d 792, 798 (5th Cir. 2007) (Determination of the presence of the elements required to prove . . . cause . . is a question of law, but determination whether those elements are present in a given situation is a question of fact.").

**Facts at Issue**

As to questions of fact, plaintiffs maintain that the Government has improperly focused on only two of four factors on which plaintiffs' case is predicated; they contend that the Corps failed in its legal obligation to design, construct, operate and maintain the MRGO in a safe manner that did not enhance the risk of flooding during hurricanes–that is it should have been hurricane neutral.

They argue that to carve out only operations and maintenance ignores the reports filed by other experts as well as the synergistic causative effect of all four activities. The cumulative effect of MRGO's negligent design, construction, operation, and maintenance resulted in dangerous conditions caused by the unimpeded surge conduit from the Gulf of Mexico and Lake Borgne, the geometry of the funnel, destruction of the surge buffering wetlands and the channel widening by 300% to 400 % was a "substantial factor."

In addition, they maintain that it is inappropriate to separate out only the effects of two challenge activities from the complex and interdependent hydraulic system that was created by the project's design and construction. Specifically, they maintain that Dr. Kemp and Dr. Bea testify in their expert reports and explanatory declarations that absence of surge buffering wetlands and the three to four times expansion of the Reach 2 channel–even when evaluated in

isolation –(1) materially affected performance of the flood control structures along both Reach 1 and Reach 2 and the IHNC and (2) was a substantial factor in the overtopping and failures occurring during Hurricane Katrina and the inundation of New Orleans East, Lower 9th Ward and St. Bernard Parish with ten feet of more of water.    Specifically, Dr. Kemp states:

> The presence of the MRGO channel as it existed on 29 August 2005 . . . increased the **wave energy impinging on MRGO Reach 2 levees and led to greater surge discharges in the funnel, particularly in Reach 1 and the IHNC**, than would have occurred if the authorized dimensions had been maintained. . . MRGO channel size matters.  The operations and maintenance program executed by the USACE, consisting primarily of channel dredging, increased the total oceanographic stresses to which the LPV structures were exposed during Katrina, and significantly increased the likelihood of breaching and catastrophic flooding of Plaintiffs' properties.  PUF 18, 19.

Doc. 16063 at 15 n.11 (emphasis added).

Plaintiffs' also note that Government's own expert, Dr. Dalrymple, attributes over three feet of additional storm surge against Reach 2 EBSBs because of destroyed adjacent wetlands. Thus, on this record, Plaintiffs contend that it is established that if the forests and marshlands had not been destroyed by MRGO, nature's defenses would have reduced surge caused by Katrina by about three feet. (Doc. 16063 at 17 citing PUF 29).

In addition, Plaintiffs state that:

> Channel widening and resultant destruction of vegetation prolonged severe wave side attack of Reach 2 EBSBs.  PUF 30.  Scenario 1 and 3 also demonstrates that the waves crossing MRGO grew significantly due to the depth of the channel and "its fetch"   The widening "created a broader expanse and volume of water enabling the generation of higher and more intense waves and currents.  The wave side attack proved to by a primary mechanism that led to early and catastrophic breaching of the EBSBs.

(Doc. 16063 at 17).

As to increase in flooding levels, they contend that "waves generated by Katrina winds in Lake Borgne would have traversed a much narrower channel and buffering wetlands and been greatly diminished before striking the Reach 2 embankments if MRGO had not destroyed tens of thousands of acres of wetlands due to construction, bank erosion and saltwater intrusion . PUF 35. The data shows that the wider channel materially increased storm surge intensity and overtopping rates. PUF 36." (Doc 16063 at 17).

**Exclusive Focus on Maximum Surge and Wave Height is Incomplete Analysis**

Plaintiffs also cited Dr. Bea's testimony:

> [The MRGO's operation and maintenance] cannot be decomposed because of their interactive and interdependent effects on what existed at the time of Hurricane Katrina and on what could and should have existed at the time or Hurricane Katrina as performed "with the utmost care." The attempted decomposition of the life-cycle effects fo the MRGO by the Defendants is a classic mistake in development of accurate and realistic understanding of the behavior of real complex "systems." Synthesis–or understanding the behavior of the entire system (assembly of components) –must take place <u>before</u> there are attempts to decompose the system to develop additional insights into working of components and their interactive and interdependent relationships with other components. In the science of analysis of complex systems, the mistake of premature decomposition is expressed as "you can not cut a cow in half and have two cows."

(Doc. 16063 at 18 n. 14). Plaintiffs contend that to focus solely on surge and wave height ignores the "interactive hydrodynamics" during a hurricane. By evaluating the time of onset, duration and rate of structure overtopping by surge, plaintiffs experts concluded that the addition of the MRGO (whether perfect or imperfect) significantly increased the rate of surge into Reach I and the IHNC.

Plaintiffs also point to Dr. Kemp's conclusion that:

9

> our studies demonstrate that the cumulative impact of all four defects [no surge barriers, "funnel effect," loss of wetlands and channel widening] is synergistic, *i.e.* acting in combination, they not only significantly increased surge and waves but also materially influenced additional, more sensitive indicators of MRGO's impact such as time of onset, duration and rate of overtopping by surge. PUF 58.

(Doc. 16063 at 21).

**Analysis**

The Louisiana Supreme Court set forth the proper inquiry for causation for instances where there are multiple causes in *Bonin v. Ferrellgas, Inc.*, 877 So.2d 89 (La. 2004). The Court stated:

> Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis. The determination of liability under the duty/risk analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). *Perkins v. Entergy Corp.,* 00-1372 (La.3/23/01), 782 So.2d 606, 611; *Boykin v. Louisiana Transit Co., Inc.,* 96-1932 (La.3/4/98), 707 So.2d 1225, 1230 (citing David W. Robertson, et al., *Cases and Materials on Torts,* 83-84 (1989); *Fowler v. Roberts,* 556 So.2d 1 (La.1989) (on original hearing)).
>
> . . . Cause-in-fact is generally a "but for" inquiry, which tests whether the accident would or would not have occurred but for the defendant's substandard conduct. *Id.* However, where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. In this case, more than one party's conduct allegedly caused the fire, i.e., Ferrellgas, Empiregas, and Lanclos. In considering the substantial factor test, this Court has stated that cause-in-fact clearly exists when the plaintiff's harm would not have occurred absent the specific defendant's conduct. *Perkins, supra* at 612 (citing *Graves v. Page,* 96-2201 (La.11/7/97), 703 So. 566, 570). This Court has considered "whether each of the multiple causes played so important a role in producing the result that responsibility should be imposed upon each item of conduct, even if it cannot be said definitively that the

harm would not have occurred 'but for' each individual cause." *Perkins, supra* at 612 (citing *Graves, supra* ). Also considered is "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm." *Id.* (Quoting *LeJeune v. Allstate Ins. Co.,* 365 So.2d 471, 475 (La.1978)). Whether the defendant's conduct was a substantial factor in bringing about the harm, and thus, a cause-in-fact of the injuries, is a factual question to be determined by the fact finder. *Perkins, supra* at 612; *Theriot v. Lasseigne,* 93-2661 (La.7/5/94), 640 So.2d 1305, 1310.

*Id.* at 95. Thus, the issue is whether the MRGO was a substantial factor in bringing about the catastrophic flooding at issue in this suit.

Given the disputed facts as to causation as outlined in detail above, the Court finds that summary judgment is inappropriate at this time. To grant such a motion would require the Court to ignore these opposing views or to find them without merit which would be improper in the context of a motion for summary judgment. Accordingly,

**IT IS ORDERED** that Defendant United States' Motion for Summary Judgment (Doc. 15317) is **DENIED**.

New Orleans, Louisiana, this 15th day of April, 2009.

**STANWOOD R. DUVAL, JR.**  
**UNITED STATES DISTRICT COURT JUDGE**