RICHARD JAMES VARUSO                                April 1, 2008

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES          CIVIL ACTION

CONSOLIDATED LITIGATION                NO. 05-4182 K2

                                       JUDGE DUVAL

PERTAINS TO                            MAG. WILKINSON

(Robinson, No. 06-2268)


        Deposition of RICHARD JAMES VARUSO,
given at the U.S. Army Corps of Engineers New
Orleans District offices, 7400 Leake Avenue,
New Orleans, Louisiana 70118-3651, on April
1st, 2008.


REPORTED BY:

        JOSEPH A. FAIRBANKS, JR., CCR, RPR
        CERTIFIED COURT REPORTER #75005



EXHIBIT 1

RICHARD JAMES VARUSO																																															April 1, 2008

Page 70

1  marsh, trees, swamps and the like.
2      MR. BAEZA:
3          Objection. Vague and broad.
4      A.  I believe it to be true, but, again, I
5  think that a hydraulic engineer would be more
6  apt to answer that question a little more
7  fully.
8  EXAMINATION BY MR. BRUNO:
9      Q.  Okay. And that would be the --
10     A.  Ms. Powell.
11     Q.  Ms. Powell.
12     MR. BAEZA:
13         Nancy Powell.
14     MR. BRUNO:
15         Nancy Powell.
16 EXAMINATION BY MR. BRUNO:
17     Q.  But of course it's basic logic, is it
18 not, that if you're looking in the past and
19 you're trying to understand the potential for
20 future storm surge, and you've decided to use
21 past hurricanes, then you have to acknowledge
22 that the hurricanes did what they did to the
23 land and the marsh that was existent at that
24 time.
25     MR. BAEZA:

Page 71

1          Objection. Complex and
2          ambiguous.
3      A.  I'll prefer to relay those questions
4  to Ms. Powell.
5  EXAMINATION BY MR. BRUNO:
6      Q.  Okay. All right.
7          Would you at the very least agree with
8  me that the geography, the existence or
9  nonexistence of swamp, freshwater versus salt,
10 forest and the like, are different in 2005 than
11 they were in 1965 in the area of the MRGO?
12     A.  Yes.
13     Q.  Okay. And would you agree with me
14 that there's at least the potential that
15 because the geography, the forest, the swamps,
16 saltwater versus freshwater, are different in
17 2005 than they were in 1965 that, through no
18 fault of the Corps, predictions intended --
19 predictions that were made about past storms
20 may not have been applicable to a 2005 storm
21 because of the change in the geography and the
22 trees and the swamps and the like?
23     MR. BAEZA:
24         Objection. Overbroad, calls for
25         speculation, and the witness is not an

Page 72

1  expert.
2      A.  I think the way to answer that
3  question is to say that it's more than just
4  saying what the potential is. Is the potential
5  difference half an inch? Maybe.
6  EXAMINATION BY MR. BRUNO:
7      Q.  I didn't ask you to quantify it.
8      A.  Well, but I mean, that's an important
9  aspect of it. It may have changed, but by how
10 much?
11     Q.  Well, I understand that's a defense of
12 the Corps. All I want to know is whether or
13 not you agree with me whether or not there's
14 likely to be a difference, period. The extent
15 of the difference is what we're going to fight
16 about in the courtroom.
17     MR. BAEZA:
18         Objection. Asked and answered.
19 EXAMINATION BY MR. BRUNO:
20     Q.  Do you agree with me there's a
21 difference?
22     A.  I would prefer to defer that question
23 to Ms. Powell.
24     Q.  Fair. With that --
25     A.  I would defer to the expert for that.

Page 73

1          (Brief recess.)
2  EXAMINATION BY MR. BRUNO:
3      Q.  All right. Richard, let's see where
4  we were. We were talking about things that the
5  Corps relied on in connection with its design
6  of the hurricane protection along the MRGO.
7  And I think where we are is while we disagree
8  as to the extent to which land loss, marsh
9  loss, forest loss contributed to surge, and we
10 acknowledge that disagreement, we do agree, do
11 we not, that the data on which the Corps relied
12 to calculate the still water height was data
13 based upon past hurricanes which obviously
14 caused surges to then existent marshes, land,
15 trees and the like.
16     A.  Yes.
17     Q.  Okay. And we can also agree that the
18 design of the hurricane protection structure
19 did not take into consideration any deleterious
20 effects, whether or not they exist, from the
21 MRGO channel from the date of its construction
22 until 2005.
23     A.  I'm not aware of any, but Nancy Powell
24 would be the best person to ask that question
25 to.

19 (Pages 70 to 73)

JOHNS PENDLETON COURT REPORTERS																																														800   562-1285

RICHARD JAMES VARUSO                                          April 1, 2008

Page 74

1    Q. All right. But let's -- I'm not
2  asking you whether there were any, I'm asking
3  you whether or not we admit the obvious, that
4  MRGO didn't exist at the time --
5    A. Oh, I understand your question now.
6    Q. Okay?
7    A. All right. Yes.
8    Q. Yes.
9    A. All right.
10   Q. And we'll fight over whether or not
11 there are any deleterious effects from the MRGO
12 channel. Right? We'll duke it out in court
13 another day.
14   A. That's up to you.
15   Q. Well, we'll get there in a minute.
16 I'll find out. Maybe you don't agree. Who
17 knows? But again, not to beat a dead horse,
18 but the way the Corps did business was it did
19 not try to predict future land loss, future
20 marsh loss, future forest loss in coming up
21 with a still water height.
22      MR. BAEZA:
23         Objection, vagueness regarding
24      try to predict.
25   A. I would prefer to defer that question

Page 75

1  again to hydraulic engineers.
2  EXAMINATION BY MR. BRUNO:
3    Q. Okay. Well, you make me ask this
4  question, now:
5    A. Okay.
6    Q. Because we asked you these same
7  questions when you were the 30(b)(6) witness,
8  and you answered them.
9    A. Yes, I did.
10   Q. You did answer those questions, right?
11   A. My understanding is, um -- the type of
12 witness I am today is different than what I was
13 in that 30(b)(6) deposition. So --
14   Q. I agree.
15   A. -- if there is a person that is more
16 apt to answer that question and you can depose
17 that person and ask them those questions as
18 part of this litigation, that is more
19 appropriate.
20   Q. Well, and that's not exactly true,
21 Richard. Here's the problem:
22      MR. BAEZA:
23         Joe, can we just talk about what
24      Mr. Varuso knows, how he knew it, what
25      he saw, what he did?

Page 76

1      MR. BRUNO:
2         You are right on.
3  EXAMINATION BY MR. BRUNO:
4    Q. And let me tell you where I'm going
5  with this. Where I'm getting a little confused
6  is how you knew it when I took your deposition
7  in Murphy Oil and now you don't know it. Now,
8  either you know it or you don't know it. Now,
9  I understand that you are not today, and I
10 recognize and I'll stipulate that you are not a
11 30(b)(6) designee today. I'm taking your
12 deposition as a Corps employee. But, I'm
13 entitled to know what you know, and you're
14 entitled to tell me whether or not there are
15 limitations on that knowledge. You're also
16 entitled to tell me that there's somebody else
17 out there that's smarter than you or more
18 experienced than you or more knowledgeable than
19 you. But if you know something, you can't tell
20 me you don't know it. And if you know
21 something -- let me just finish because this is
22 in fairness to me, now, because we have to make
23 a record. If you know something, or you
24 believe something, I'm entitled to know what
25 you know and what you believe.

Page 77

1         Subject to all those caveats that I
2  gave you, which is, you know what? This person
3  is more knowledgeable, this person is more
4  experienced -- I can handle that. But I'm just
5  respectfully suggesting to counsel and you, I
6  got a record, man. And you've answered these
7  questions, and I don't want to put you in the
8  position where I get to go in court and say,
9  you said it on Tuesday and on Wednesday you're
10 not saying it. Okay? And I'll let you qualify
11 it because that's fair, you can qualify it, but
12 I think it's a bad play to say I don't know
13 today what I knew before.
14     MR. STONE:
15        The difference here is that when
16     he spoke to you in Murphy Oil he was
17     speaking for the Corps as a 30(b)(6)
18     witness with a script.
19     MR. BRUNO:
20        Whoa. With a script?
21     MR. LAMBERT:
22        That's fine. Let him go. Let
23     him talk.
24     MR. BAEZA:
25        It's the Corps' information that