UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| | § | |

**DEFENDANT UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF
ADMITTING THE DEPOSITION TESTIMONY OF SHEA PENLAND**

The Court should admit Shea Penland's deposition testimony from November 20, 2007 because his death on March 25, 2008 makes him unavailable for trial, his testimony constitutes Plaintiffs' admissions, and both parties had an opportunity to depose him in this litigation.

**STATEMENT**

Dr. Penland was identified by the Plaintiffs as an expert witness in *Robinson* on August 15, 2007. He produced an expert report dated September 15, 2007. *See* PX 0014. Dr. Penland was deposed on that report on November 20, 2007. Plaintiffs again identified Dr. Penland as an expert witness for trial on the merits. Unfortunately, Dr. Penland passed away on March 25, 2008, prior to the deadline for production of the Plaintiffs' final expert reports. Plaintiffs identified Dr. Duncan FitzGerald to serve as an expert in place of Dr. Penland, and Dr. FitzGerald produced an expert report on July 11, 2008, which lists Dr. Penland as a second author.

**ARGUMENT**

I.   *The Requirements of Fed. R. Civ. P. 32 and Fed. R. Evid. 801 and 804 are Satisfied*

Under Fed. R. Civ. P. 32, a deposition may be used at trial to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying. Fed. R. Civ. P. 32(a)(1)(B). Furthermore, use of the deposition must be permitted by Rules 32(a)(2)

through (8). *Id*. at 32(a)(1)(C).[1]  A party may use the deposition of a witness for any purpose if the witness is deceased. *Id*. at 32(a)(4)(A).

An expert witness's previous testimony is admissible as an admission against the party who retained him. *See* Fed. R. Evid. 801(d)(2)(C); *Collins v. Wayne Corp.*, 621 F.2d 777, 781-82 (5th Cir. 1980); *see also Steel Coils, Inc. v. M/V Lake Marion*, 2001 WL 1191055, at *2 (E.D. La. Oct. 5, 2001) (Vance, J.).

Moreover, statements of a deceased witness are admissible if they are from a deposition taken in the current proceeding, and if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. *See* Fed. R. Civ. P. 32(a)(4)(A); Fed. R. Evid. 804(a), (b)(1); *see also United States v. Avants*, 367 F.3d 433, 443-44 (5th Cir. 2004) (admission of deceased's statements at preliminary hearing thirty-four years prior was not an abuse of discretion); *cf. Dartez v. Fibreboard Corp.*, 765 F.2d

---

[1] Rule 32 demands that the deposition testimony satisfy both the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Rule 32 states in pertinent part:

(a) Using Depositions.

(1) In General.

   At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

   (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;

   (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

   (C) the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a).

456, 462-63 (5th Cir. 1985) (defendants in previous deposition of deceased expert had same motive as present defendants).

Dr. Penland's testimony satisfies both the Federal Rules of Civil Procedure and Federal Rules of Evidence. As an expert retained by the Plaintiffs and as a deponent in this litigation, Dr. Penland's testimony satisfies Fed. R. Civ. P. 32(a)(4) and Fed. R. Evid. 801(d)(1)(C) and 804(b)(1), respectively. His testimony also plainly falls within the unavailability provision of Fed. R. Civ. P. 32(a)(4)(A) and Fed. R. Evid. 804(b)(1).

## II.   *Relevance of Dr. Penland's Testimony*

Dr. Penland's September 15, 2007, expert report and deposition testimony regarding it are relevant to the reliability of Plaintiffs' storm surge modeling results. In both Scenario 2c and Scenario 3 run by Plaintiffs' storm surge modelers, the values used to represent "1958 Cypress forests" are based on a Figure titled, "Cypress Tree Map – 1930s" in the July 11, 2008, report by Dr. FitzGerald. *See* Vrijling Report at 41, Fig. 2.19, and 67, Fig. 2.30; FitzGerald Report at 4-21, Fig. 4.8. Dr. Penland's testimony is relevant to the reliability of these inputs to the storm surge modeling because it describes the "baseline" conditions of the environment in which the Mississippi River-Gulf Outlet was constructed and establishes changes that occurred between the 1930s and 1958, prior to construction of the MRGO. Specifically, Dr. Penland compares the 1932 map used to create the "1930s" Figure 4.8 in Dr. FitzGerald's report with a 1958 pre-MRGO photograph, establishing that the 1932 map is not representative of the baseline conditions in 1958:

> Q.   And what can you learn from comparing these two images?
>
> A.   I can see the position of the shoreline, the position of different types of drainage features that occur, ponds, you can also see the landscape characteristics, you can see the distribution of forest, kind of the edge of

>the forest the surveyor has indicated on the 1932.  And then if you look at the 1958 image you can see how there's a corresponding, you know, change in the photographic character that shows the different landscape types, you can see canals that were dredged, you can see bayous, you can see water bodies that didn't exist in 1932 that exist in 1958.  You can see changes in the landscape.

Penland Dep. At 55:4-55:19.  Dr. Penland's testimony further describes the "preexisting condition[s]" of "coastal land loss, habitat change, and saltwater intrusion," and the impact that construction of the MRGO had on those preexisting conditions.  *See* Penland Dep. at 71:21-72:17 ("[B]efore the Mississippi River Gulf Outlet was built, there was already changing -- the coastline is very dynamic and it's changing under, you know, hurricanes that occurred previous to the construction of MRGO, but what we've learned through our land loss studies, you know, with the Department of Interior, Corps of Engineers, is that there is -- sure, there's preexisting conditions of which soon as man showed up and started digging channels, started, you know, cutting down forest, started altering the landscape, all of a sudden the acceleration of these processes took off, and that's what you see in terms of the conditions in the Pontchartrain Basin.  Soon as MRGO was built, all of a sudden we saw an acceleration of saltwater intrusion, and all of a sudden we saw the massive landscape changes that were occurring at rates faster in the landscape post-construction, after the construction of MRGO versus before the construction of MRGO.").

Dr. Penland's testimony is directly relevant to the validity of the inputs to Plaintiffs' storm surge models, the baseline conditions at the time the MRGO was constructed, and changes that occurred as a result of construction, the deposition testimony should be admitted.

**III.**     *Plaintiffs' Objections Have No Merit*

Plaintiffs make four objections to the admission of Dr. Penland's testimony, all of which should be overruled.

Plaintiffs' first objection is that "Dr. Penland was retained as an expert by Plaintiffs and was deposed . . . relative to the class certification proceedings," and that he "is not designated as a testifying expert in Plaintiffs' case in chief and is not a material witness." Plaintiffs' first objection is plainly incorrect. Dr. Penland was retained as an expert for Plaintiffs in *Robinson*, and he was deposed in *Robinson*. As explained above, Dr. Penland's testimony is material to the Plaintiffs' case in chief. In fact, Plaintiffs have identified his expert report as an exhibit in *Robinson*. *See* PX 0014 (September 15, 2007, Report).

Plaintiffs' second objection is that "[t]he trial judge has discretion to exclude the deposition of an expert witness where the judge is not satisfied that the party proponent has made reasonable effort to secure the expert's presence at trial." Plainly, the United States is unable to secure the presence of a deceased witness.

Plaintiffs' third objection is that the United States did not identify Dr. Penland as a witness in the Pre-Trial Order. As Dr. Penland is deceased and unavailable pursuant to Federal Rule of Evidence 804(a), the United States submitted his deposition as an exhibit, JX 0123, and maintains that the testimony is admissible pursuant to Rule 402.

Plaintiffs' final objection is that "[t]there is no need to use Dr. Penland's previous testimony to prevent the loss of evidence because Dr. Fitzgerald [sic] is available to give similar testimony orally." This objection is without merit. The United States has established the relevance of Dr. Penland's testimony.

## **CONCLUSION**

For the foregoing reasons, the deposition testimony of Shea Penland in *Robinson v. United States* should be admitted.

> Respectfully Submitted,
>
> MICHAEL F. HERTZ
> Acting Assistant Attorney General
>
> PHYLLIS J. PYLES
> Director, Torts Branch
>
> JAMES G. TOUHEY, JR.
> Assistant Director, Torts Branch
>
>   /s/Daniel M. Baeza
> DANIEL M. BAEZA
> KARA MILLER
> Trial Attorney
> ROBIN D. SMITH
> Senior Trial Counsel
> Torts Branch, Civil Division
> U.S. Department of Justice
> P.O. Box 888
> Benjamin Franklin Station
> Washington, D.C. 20044
> (202) 616-4916 (tel.)
> (202) 616-5200 (fax)
> Dan.Baeza@usdoj.gov
> Attorneys for Defendant United States

Dated: April 16, 2009

## **CERTIFICATE OF SERVICE**

    I, Daniel M. Baeza, hereby certify that on April 16, 2009, I served a true copy of the United States of America's Brief in Support of Admitting the Deposition Testimony of Shea Penland on all parties by ECF.


                                                                      s/    Daniel M. Baeza
                                                                      DANIEL M. BAEZA