**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson,* No. 06-2268 | § | |
| _____ | § | |

**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**
**SUPPLEMENTAL REPORT OF DEFENDANT UNITED STATES'**
**EXPERT DONALD RESIO AND PRECLUDE DERIVATIVE TESTIMONY**

Lacking any meritorious argument as to why the United States' expert Donald Resio's supplemental report should be stricken, Plaintiffs dusted off the papers they filed over two months ago in support of a Motion to Compel Discovery (RD 17542) and re-filed them.  The tired, old arguments regurgitated by Plaintiffs offer no support for their current Motion to Strike. Plaintiffs resurrect their prior filing because the present facts relevant to their motion completely undermine their claims.  Indeed, the recent actions of Plaintiffs surrounding this motion demonstrate that it is they who have engaged in the conduct in which they accuse the United States of engaging.

Plaintiffs do not even attempt to recount the facts most pertinent to their motion.  They fail to mention that their own expert witnesses have recently produced exactly the same type of supplemental report that they now attempt to strike.  Plaintiffs' weak attempt to justify their current motion with arguments which this Court has already adjudicated demonstrates that

Plaintiffs have nothing new with which to support their current motion.  Their motion to strike should be denied.  Alternatively, the supplemental reports that Plaintiffs have produced by Dr. Johannes Vrijling, Dr. Bob Bea, Dr. Paul Kemp, and Drs. Gary Shaffer and John Day should likewise be stricken.

### I.  THE COURT HAS ALREADY ADDRESSED AND THE UNITED STATES HAS ALREADY RESPONDED TO THE ARGUMENTS PLAINTIFFS RECYCLE IN THEIR MOTION TO STRIKE

The entire first section of Plaintiffs' memorandum supporting their motion, which endeavors to outline the facts which allegedly support the motion, is nothing more than an amalgam of recycled argumentation.  This argument had its time– over two months ago in support of Plaintiffs' Motion to Compel (RD 17542).  That time has now passed.  The Court granted that motion and the United States has diligently complied with that order (RD 17816).  *See* RD 17915.  Accordingly, the United States will not re-visit these old arguments.[1]

### II.  THE PRESENT FACTS RELEVANT TO PLAINTIFFS' MOTION TO STRIKE SHOW THAT IT IS PLAINTIFFS, NOT THE UNITED STATES, THAT HAVE ENGAGED IN GAMESMANSHIP SURROUNDING THEIR OWN EXPERTS' SUPPLEMENTAL REPORTS.

It is telling that Plaintiffs' background section includes only one fact which has occurred since the Court's adjudication of the United States Motion to Reconsider (RD 18102) over a month ago: the United States' production of Dr. Resio's supplemental report on March 24, 2009.  Plaintiffs are forced to live in the past because their own conduct completely undercuts the arguments set forth in their motion to strike.

---

[1]  The United States has already responded to the facts asserted in Plaintiffs' current Motion to Strike.  *See* United States' Response to Motion to Compel (RD 17701); United States Motion to Reconsider (RD 17915).

A simple recitation of the facts sheds full light on Plaintiffs' gamesmanship.  The United States produced Dr. Resio's supplemental report on March 24, 2009.  The United States, however, heard not the slightest objection from Plaintiffs about the supplement until Plaintiffs' Motion to Strike was filed over *two weeks* after the production of the supplement.  Plaintiffs' loud arguments only now voiced are belied by their two weeks of silence.

Plaintiffs' reticence was planned with one goal in mind, the anticipated production of the newest part of Dr. Bob Bea's serialized expert report on April 3, 2009.  True to form, Dr. Bea's last portion of his 3,200 page serial report offered a wholly new opinion– that the MRGO caused quantifiable subsidence in half of the Reach 2 levees, beyond the subsidence that was caused by natural processes.  *See* Decl. of Robert G. Bea. (Apr. 3, 2009) (Ex. A).  Knowing full well that Dr. Bea's latest part would be produced a mere two weeks before trial, Plaintiffs purposefully kept silent about Dr. Resio's supplemental report.  Raising objections to Dr. Resio's report at the proper time, when it was produced, would have made production of Dr. Bea's report even more of a non-starter.

Unsurprisingly, in response to Dr. Bea's newest 525 page report, the United States moved to exclude his newest opinions.  *See* RD 18501.  Realizing the absurdity of producing a report with an entirely new theory of causation, Plaintiffs unilaterally withdrew Dr. Bea's latest expert report.  The day after the United States filed its motion to exclude Dr. Bea's latest report, Plaintiffs filed their Motion to Strike the Supplemental Report of the United States' Expert, Donald Resio.

In their memorandum supporting their Motion to Strike, however, Plaintiffs conspicuously fail to mention the multiple supplemental reports their own experts have produced.  Plaintiffs produced a first wave of supplemental reports at the commencement of their

3

own experts' depositions.  At each of the expert depositions of Dr. Paul Kemp, Dr. Joannes

Vrijling, Gary Shaffer and John Day, and Dr. Bob Bea, Plaintiffs produced a supplemental

report[2] to the United States the very moment each deposition started.[3]  By providing the

supplemental reports at the deposition, Plaintiffs intentionally prevented the United States from

conducting the deposition having read the supplemental reports to determine its contents and

providing the supplement to its experts for review.  Having prevented any meaningful review of

the supplement severely hampered inquiry of the supplemental report at the deposition.

　　　　In addition to this first barrage of supplemental reports, on April 04, 2009, Plaintiffs

produced a second supplemental report by their Dutch experts which seeks to address

deficiencies in their original analysis that were raised by the United States months ago.  *See*

Dutch Supplemental Rpt. Mar. 23, 2009. Ex. B; Email from Rob Warren Apr. 4, 2009. Ex. C.

　　　　In his original report, produced December 22, 2008, Dr. Resio noted that the Dutch

experts, who used a computer program, SWAN, to model waves, had incorrectly modeled the

landscape which existed prior to the construction of the MRGO by including a dense cypress

forest which, in fact, did not exist.  Resio Rpt. Dec. 21, 2008 at 12-13.  Ex. D.  As a result,

Plaintiffs' Dutch experts overly reduced the height of the waves and, therefore, made it less

likely for the waves to damage the front of the levees.  *Id.*  This finding is paramount to

Plaintiffs' theory that the MRGO increased the height of waves causing frontside erosion which

---

[2] Decl. of Dr. G Paul Kemp, Jan. 14, 2009; Joint Decl. Vrijling, Kok de Wit and Gautier, Jan 21, 2009; John W. Day Jr. and Gary P. Shaffer, *Supplemental Report to Expert Report Effects of the Mississippi River Gulf Outlet on Coastal Wetlands and Other Ecosystems in Southeastern Louisiana*, Jan. 27, 2009; Robert G. Bea, *Expert Report of Robert G. Bea*, Jan. 29, 2009.

[3] If Dr. Resio's expert report is stricken, all of Plaintiffs' experts supplemental reports should similarly be stricken and the United States will file a motion seeking exactly that relief.

they claim would not have occurred without the MRGO.

At the January 15, 2009, deposition of another of Plaintiffs' experts, Dr. Paul Kemp, the United States focused on the error which Dr. Resio had identified in Plaintiffs' wave modeling. Dr. Kemp confirmed the validity of Dr. Resio's critique. *See* Kemp. Dep. at 50:12-57:3.  Ex. E. Dr. Kemp stated that in some of Plaintiffs' scenarios which had sought to reconstruct a pre-MRGO landscape, the Dutch experts mistakenly included a dense cypress forest which did not exist at the time the MRGO was constructed.   By incorrectly assuming a cypress forest existed, Plaintiffs' wave modelers reduced the winds by 80%.  *Id.* at 50:12-51:12.  According to Dr. Kemp, he would have told the Dutch modelers not to apply this wind reduction in the SWAN where they did in their wave model.  *Id.*  However, by applying the reduction in the wrong area, the waves were massively reduced: "[y]ou take the wind off the waves, they're gone."  *Id.* at 54:3-10.

Realizing that the United States had uncovered a key mistake in their analysis, Plaintiffs produced a supplemental report accompanied with 348 GB of data to the United States on April 4, 2009– over three months after Dr. Resio first identified the error in his report.  *See* Email from Rob Warren Apr. 4, 2009.  Ex. C.  Plaintiffs readily admit that they were responding to the three-month old criticisim; the email that accompanied the production of Dutch experts' report noted that it was a "response to Resio's critique."  *Id.*  Although the report contains virtually no text explaining the method by which the Dutch experts conducted there new analysis, nor a summary of their results, it appears that the Dutch experts ran three different SWAN scenarios on three different grids.  *See generally*, Dutch Supplemental Rpt. Mar. 23, 2009.  Ex. B.  The scenarios specifically address the misplacement of the cypress forest in the first Dutch expert reports.  *Id.* It is unclear whether the report materially alters the Dutch experts' opinions because there is no

textual explanation.  The issue of wave reduction is obviously crucial to Plaintiffs' theory that

without the MRGO the Reach 2 levees would not have failed through front-side erosion.

Clearly, furnishing this new analysis on one of Plaintiffs theories of causation little more than

two weeks before trial is extremely prejudicial to the United States.

### III.  DR. RESIO'S SUPPLEMENT OFFERS NO NEW OPINIONS AND IS AKIN TO PLAINTIFFS' DUTCH EXPERTS' SUPPLEMENTAL REPORT PRODUCED AFTER DR. RESIO'S SUPPLEMENTAL REPORT.

On December 21, 2008, the United States produced Dr. Resio's expert report.  *See* Resio

Rpt. Dec. 21, 2008 at 5 Ex. D; Decl. of Donald T. Resio.  Ex. F.   Dr. Resio's report addressed

the near-shore wave conditions during Hurricane Katrina.  Taking input information on surge

levels from the United States' expert Dr. Joannes Westerink, Dr. Resio ran a computer program,

STWAVE, to compute the transformation and propagation of waves from the deep water of the

Gulf to the levee during Hurricane Katrina.  *See id.*  A different, computer model, COULWAVE,

was used, with input from STWAVE, to model wave propagation, wave run up, and overtopping

of the levees.  *See id.*  For the COULWAVE computer model Dr. Resio used a generic levee

profile.  *See* Resio Rpt. Dec. 21, 2008 at 46, Ex. D; Decl. of Donald T. Resio at 1.   Ex. F.

Dr. Resio ran six different scenarios with COULWAVE.  These scenarios sought to

isolate the effect of the MRGO and wetlands on the rate at which waves and surge overtopped

the generic levee profile.  *See* Resio Rpt. Dec. 21, 2008 at 6.  Ex. D.  Thus, because different

scenarios were used, the wave and surge conditions were slightly different.  However, the

generic levee was used for the entire length of Reach 2 and had exactly the same properties–

height, slope, and distance from the MRGO.  *See id.*

In one of his series of reports, Dr. Bea criticized Dr. Resio for using a generic levee.  *See*

Decl. of Robert G. Bea, Jan. 29, 2009, App. B 188-198.  Ex. G.  In that report, Dr. Bea suggested

that use of the generic profile failed to capture the great variability of the MRGO levees along Reach 2 of the MRGO. *Id.* at 193. Dr. Resio was also questioned about the applicability of the generic profile at his deposition. *See, e.g.*, Resio Dep. at 169:2-23 (Feb. 9, 2009) Ex. H. In response to questions about the use of the generic levee, Dr. Resio stated that he had previously run five different profiles or sites for Hurricane Katrina as part of his involvement in IPET. *See id.* at 171:1-20. Based upon those runs and his vast experience in the field of wave modeling, he had concluded that modeling additional profiles would not have increased the accuracy of his report. *See id.* at 171:21-172:4.

On March 22, 2009, Dr. Resio produced a supplemental report which merely confirmed his assumption, based on detailed prior examination and vast experience, that altering the levee profile would not alter the accuracy of his findings. *See generally*, Resio Rpt. March 22, 2009. Ex. I. For the supplemental report, Dr. Resio re-ran the COULWAVE model changing six factors which are variable along the Reach 2 levees: (1) wave heights; (2) levee slope; (3) levee toe elevation; (4) MRGO bank elevation; (5) distance between the MRGO and levee; and (6) wave period. *See generally id.* Dr. Resio concluded that all the results are merely "weakly influenced" by any of the changes either alone or in combination. *Id.* at 4. The barely more than five written pages of Dr. Resio's supplemental report which summarize the method of his analysis and results confirm that changes to the and wave characteristics and levee profile have little influence on the accuracy of the findings of his original report.[4]

---

[4] It is worth noting that striking Dr. Resio's report would deprive the United States of presenting Dr. Resio's most recent analysis at the *Robinson* trial. That same analysis, however, would not be barred from the courtroom; it would be presented in the MRGO case now scheduled for trial in September, 2009. Disallowing such testimony in *Robinson*, but allowing it in MRGO, would serve only to erode Robinson's purported status as a test case in which all issues relevant to the alleged affects of the MRGO on flooding during Hurricane Katrina are

The similarities between the most recent Dutch supplemental report and Dr. Resio's supplemental report are readily apparent.  Both supplemental reports address, through additional computer modeling, questions which were raised by the opposing party about the original expert report.

Plaintiffs paint United States' production of Dr. Resio's supplemental report as the worst kind of violation of Fed. R. Civ. P. 26.  However, it is clear that Plaintiffs themselves have produced exactly the same type of report only five days prior to filing their motion to strike. This fact along with the fact Plaintiffs' production and withdrawal of Dr. Bea's report is not even mentioned in their motion to strike Dr. Resio's report.  Omitting such crucial facts, all the while loudly complaining that they have suffered incurable prejudice is the height of hypocrisy. Furthermore, Plaintiffs failure to raise any objections to Dr. Resio's supplement until after they attempted to produce Dr. Bea's report demonstrates the insidious maneuvering to which Plaintiffs have now resorted.  Plaintiffs' resurrection of prior argumentation, omission of particularly relevant information, and overt gamesmanship offer no support for their motion to strike.  Indeed these tactics serve only to highlight the false foundation upon which Plaintiffs' argument is built.

## CONCLUSION

Plaintiffs Motion to Strike Supplemental Report of Defendant United States' Expert Donald Resio and Preclude Derivative Testimony should be denied.  Alternatively, Plaintiffs multiple supplemental reports should be likewise stricken.

---

presented and adjudicated.  If Plaintiffs' experts' supplemental reports are similarly stricken, multiple experts on both sides would bite their tongues during *Robinson* and wait until the MRGO trial, at which they would then fully explain their opinions.

8

Respectfully submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

ROBIN D. SMITH
Senior Trial Attorney

 s/ John A. Woodcock 
JOHN A. WOODCOCK
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4400/ (202) 616-5200 (Fax)
Attorneys for the United States

Dated: April 16, 2009

## <u>CERTIFICATE OF SERVICE</u>

I, John A. Woodcock, hereby certify that on April 16, 2009, I served a true

copy of the Reply to Plaintiffs' Opposition to Defendant United States' Motion to Compel upon

all parties by ECF.


 s/ John A. Woodcock

JOHN A. WOODCOCK