# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IN RE: KATRINA CANAL BREACHES**
**CONSOLIDATED LITIGATION**

**CIVIL ACTION**

**NO. 05-4182**

**PERTAINS TO: ROAD HOME**
**LOUISIANA STATE, 07-5528**

**SECTION "K"(2)**

## ORDER AND REASONS

Defendant insurance companies have filed a Motion for Reconsideration (Rec. Doc. 18207) ("Mot."). They seek reconsideration of this Court's March 5, 2009 Order and Reasons (Rec. Doc. 18033) denying Defendants' motion to dismiss. Defendants premise their motion on a subsequent Louisiana appellate authority rendered on March 11, 2009, *R.L. Lucien Tile Co. v. American Security Insurance Co.*, --- So.2d ----, 2009 WL 617937 (La. Ct. App. 4th Cir. 2009). Plaintiff, the State of Louisiana, has filed a memorandum in opposition (Rec. Doc. 18481) ("Opp."). Defendants were granted leave to file a reply (Rec. Doc. 18574) ("Reply"). For the following reasons, this Court will deny the Defendants' motion.

## I. FACTS

A brief recapitulation of the facts is as follows. Following Hurricanes Katrina and Rita, Congress appropriated funds to aid in disaster relief. These funds were administered through the Department of Housing and Urban Development to state governments. Louisiana created the Road Home program to administer these funds to homeowners in the form of grants. Consistent with federal law, if the homeowner was able to recover insurance payments for the same losses

1

covered by their Road Home grant, they were obligated to repay that amount to the State.  As part of the grant process, recipients were required to execute the Road Home Limited Subrogation/ Assignment Agreement ("Agreement"), in which the recipient agreed to repay duplicated payments that they received.  Recipients also assigned the right to such duplicate funds should they abandon, dismiss, or release their claims against their respective insurance companies.  Although the insurance contracts contained anti-assignment clauses, this Court found that the anti-assignment clauses did not encompass post-loss assignments of insurance claims (Rec. Doc. 18033).  *In re Katrina Canal Breaches Consol. Litig.*, --- F.Supp.2d ----, 2009 WL 546660, at *11 (E.D. La. 2009).  Defendant insurance companies seek reconsideration of that opinion in their present motion.

## II. ANALYSIS

The Fifth Circuit has made clear that in evaluating a motion for reconsideration, that either the Rule 59(e) or Rule 60(b) standards are applicable. As the appellate court has stated:

> The federal rules do not recognize a "motion for reconsideration" in haec verba. We have consistently stated, however, that a motion so denominated, provided that it challenges the prior judgment on the merits, will be treated as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b).

*Lavespere v. Niagara Mach, & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).  A motion to alter or amend a judgment "must be filed no later than 10 days after the entry of judgment."  Fed. R. Civ. P. 59(e).  If the motion is brought within ten days of the judgment it is subject to Rule 59(e), if filed after ten days it is subject to Rule 60(b).  *Harrington v. Runyon*, 98 F.3d 1337 (5th Cir.

1996) (citing *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 288 (5th Cir. 1989)).  In this case, it appears that Defendants' motion for reconsideration was filed within ten days of judgment and therefore this Court will apply Rule 59(e).

"This Court has recognized four grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which a judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, or (4) an intervening change in controlling law." *Johnson v. Cain*, Civ. A. No. 05-1943, 2007 WL 1741883, at *1, (E.D. La., June 14, 2007), *citing Peterson v. CIGNA Group Ins.*, Civ. A. No. 99-2112, 2002 WL 1268404, at *2 (E.D. La., June 5, 2002).  The Fifth Circuit Court of Appeals has instructed that the standard for Rule 59(e) "favors denial of motions to alter or amend a judgment." *Southern Contractors Group, Inc., v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).  A district court's denial of a Rule 59(e) motion is reviewed for an abuse of discretion. *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).  Defendants here seek reconsideration on the grounds of an intervening change in controlling law,[1] specifically the holding of *R.L. Lucien Tile Co. v. American Security Insurance Co.*, --- So.2d ----, 2009 WL 617937 (La. Ct. App. 4th Cir. 2009).

In that case, Lucien Tile Co., the plaintiff, bought a piece of property from the Cages by quitclaim deed[2] on March 31, 2004.  *Id.* at *1.  The insurance and mortgage remained in the

---

[1] An "intervening" change is not defined in Rule 59(e), although it appears that a change in controlling law is intervening as long as the district court maintains jurisdiction over a cause of action. *See Bryant v. N.J. Dep't of Transp.*, 998 F. Supp. 438, 441 (D.N.J. 1998) (permitting Rule 59(e) motion after granting motion to dismiss but prior to filing of notice of appeal).

[2] There is some confusion in *Lucien* concerning the date or dates on which quitclaim deeds were executed.  It appears that two quitclaims were issued, one on the original

Cages' name, while Lucien Tile took over the mortgage payments. *Id.* The insurance policy

listed the mortgage holder as the named insured, and the Cages as additional insureds. *Id.*

Hurricane Katrina struck Louisiana on August 29, 2005, allegedly causing damage to the

relevant property. On November 2, 2005 the Cages executed a document titled,

"ASSIGNMENT AND TRANSFER OF ALL RIGHTS AND CLAIMS."[3] *Id.* at *2. On

November 16, 2005, the insurer for the property received a notice that the property had sustained

---

date of purchase March 31, 2004, and another on November 2, 2005. *Id.* at *1-2. It appears that the first of two assignments occurred on same day as the second quitclaim was executed.

[3]      The pertinent language of that assignment is as follows:

> Be it know[n] that we Joshua and Sandy Cage do hereby for ourselves and our heirs, successors, and others transferees, transfer, assign, and convey all rights, claims, chose [sic] of actions whatsoever we may have against the company, officers and employees of EMC Mortgage Corporation, including any of its assigns, transferees arising out of the mortgage we executed in favor of EMC Mortgage Corporation to R.L. Lucien Tile Company. This assignment and transfer includes all claims whether legal or equitable including those arising out all state and federal laws applicable, including all that may arise out of any Fair Debt Collection Act, Consumer Protection Act, and Unfair [T]rade Practices Act we are expressly assigning all rights, claims and actions we may have pertaining to the mortgages themselves, the collection of those mortgages any attempt to foreclose those mortgages, or those arising out of the "Forbearance" of any such foreclosure.

> Included under this assignment and transfer to R.L. Lucien [T]ile Company, are all damages we may recover for general or special damages, punitive or exemplary damages, attorneys fees, cost or expenses, interest or any other equitable, legal or general relief we may be entitled to or granted.

> R.L. Lucien Tile Company is entitled to act in our stead to file suit, litigate, settle or otherwise dispose of our claims or actions, as if they were us.

*Lucien Tile*, 2009 WL 617937, at *2-3.

damage in Hurricane Katrina. *Id.* at *1. The insurer ultimately paid a total of $40,490.06 as a result of the damage, none of which was paid to Lucien Tile. *Id.* Lucien Tile then filed suit claiming that it had a right to policy benefits. *Id.* At a hearing on motion for summary judgment, Lucien Tile produced a second document executed by the Cages titled "Supplement to our November 2, 2005 Assignment." *Id.* at *3. The second assignment purported to assign to Lucien Tile "all claims . . . against anyone . . . arising out of the ownership of or related to our previous ownership of . . . 8833 Green Street." *Id.* Relying on these two assignments, Lucien Tile claimed to have a right to the insurance proceeds on the property that they had purchased. *Id.* The trial court granted the defendant's motion for summary judgment, and the plaintiff appealed.

On appeal, the Louisiana Fourth Circuit Court of Appeal affirmed the holding of the district court. Its holding was rested firmly on the insurance policy's anti-assignment clause that "clearly and unambiguously prohibits the insured from assigning the policy with ASIC's consent." *Id.* at *4. Because "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts," the court found that "absent a valid assignment of the rights to which the insurer, ASIC, consented, Lucien Tile had no standing to sue." *Id.* at *4. Notably, in the course of reaching its conclusion, the court of appeal explained in detail its view of the November 2, 2005 assignment:

> We note, that this assignment and transfer of all rights and claims did not purport to specifically assign any rights that the Cages may have had against ASIC to Lucien Tile. Nor does the language of this document assign any interest in the ASIC insurance policy to Lucien Tile. This document indicates that the Cages were assigning to Lucien Tile a claim arising under fair debt collection practice law pursuant to and pertinent to the EMC mortgage.

*Id.* at *3.

5

This Court's prior decision in this matter was an issue of state law, and this Court recognized that it was taking an "*Erie*" guess as to how the Supreme Court of Louisiana would treat the validity of a post-loss assignment of an insurance contract that includes an anti-assignment clause. *In re Katrina Canal Breaches*, 2009 WL 546660, at *4. However, "[i]n predicting how the Louisiana Supreme Court would rule on an issue of state law, the decisions of the intermediate state courts provide guidance to a federal court, but are not controlling." *Chevron USA, Inc., v. Vermilion Parish School Bd.*, 377 F.3d 459, 462 (5th Cir. 2004), *citing Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998). "In determining the proper regard to ascribe to decisions of intermediate state courts, a federal tribunal should be careful to avoid the danger of giving a state court decision a more binding effect than would a court of that state under the circumstances." *Potomac v. Woods*, 1996 WL 450687, at *5 (E.D. Tex. July 22, 1996). According to the Fifth Circuit, "although we may be guided by decisions rendered by the Louisiana appellate courts, we are not strictly bound by them, particularly when the jurisprudence has not developed to the status of *jurisprudence constante* (a series of decisions in accord on a given issue)." *Chevron*, 377 F.3d at 462; *see Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003) ("The primary sources of law in Louisiana are constitutions, codes, and statutes; judicial decisions acquire the force of law only when their numerosity and uniformity are sufficient to achieve the status of *jurisprudence constante*.").

For the following reasons, this Court is persuaded that the Louisiana Fourth Circuit Court of Appeal's decision in *Lucien Tile* does not require reconsideration of its prior order. While the Court gives this decision due regard, it is not strictly a "controlling" decision by the Louisiana

Supreme Court. The case is also is distinguishable from the instant matter as neither of the two assignments in *Lucien Tile* mentioned a specific loss that it purported to assign. The first assignment had nothing to do insurance, let alone post loss assignment of an insurance policy. Indeed this fact was acknowledged by the court: "Nor does the language of this document assign any interest in the ASIC insurance policy to Lucien Tile." *Lucien Tile*, 2009 WL 617937, at *3 (La. App. 4th Cir. 2009). Instead, the first assignment dealt with "fair debt collection practice law." *Id.* The second assignment in *Lucien Tile* is also distinguishable as it was not a discrete assignment of a specific loss, but rather an extremely broad assignment of rights, assigning "all claims . . . against anyone . . . arising out of the ownership." *Id.* The insurance company in *Lucien Tile*, ASIC, also had already paid the entire claim to the Cages, the original owners, and thus had presumably extinguished its duty. In the present case, however, the State is seeking those funds that have not been paid and are therefore due to the State by virtue of the assignment. *Id.* at *1.

While this Court has no quarrel with the Louisiana Fourth Circuit's resolution of its case, *Lucien Tile* is simply too broad in its holding to warrant reconsideration of this Court's prior opinion. There was no discussion in *Lucien Tile*, nor does it appear that any was necessary, concerning post-loss assignment of an insurance policy relating to a specific loss. Further, nowhere in the *Lucien Tile* decision does that court mention or discuss La. Civ. Code. art. 2653, which was discussed at length by this Court in its prior opinion. *In re Katrina Canal Breaches*, 2009 WL 546660, at *4, 6-8, 10-11. *Lucien Tile* would be a much more compelling case if it dealt with the assignment of a discrete loss; as it stands, the Louisiana Fourth Circuit's holding is simply too broad to warrant reconsideration here. This Court remains convinced that the state

court decision in *Geddes & Moss Undertaking & Embalming Co. v. Metro. Life Ins. Co.,* 167 So. 209 (La. Ct. App. Orleans Cir. 1936),[4] is the best guidepost for determining Louisiana law on this point. That decision was followed by Judge Barbier of this Court in *LeMoyne's Restaurant, Inc. v. Axis Surplus Lines Insurance Co.*, Civ. A. No. 07-8445, 2008 WL 1988798, at *1 (E.D. La. May 2, 2008). Defendants argue that because the Orleans Circuit Court of Appeal became the Louisiana Fourth Circuit, *Geddes & Moss* was effectively overruled by *Lucien Tile*. Reply at 6. *Lucien Tile*, however, makes no mention whatsoever of *Geddes & Moss*, and this Court otherwise would not ascribe such preclusive effect to a holding that addresses facts inapposite from the prior case. As such, *Geddes & Moss* appears to remain good law, and this Court still finds no persuasive reason in its own evaluation of the Civil Code to deviate from it.

Defendants in their reply argue that, from a policy perspective, permitting assignments of insurance claims could result in perverse incentives. Specifically, they suggest that an enterprising party of some financial means could purchase insurance claims from homeowners at a discount, and then sue the homeowners' insurance companies for a greater amount. Reply at 4. However, by operation of Civil Code Article 2652, "When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment." La. Civ. Code art. 2652. Accordingly, in Defendants' hypothetical, the enterprising third party could only win the interest from the purchase of a claim against an insurance company. If the third party purchased the

---

[4]It appears this Court referred to *Geddes & Moss* as a decision of the Louisiana Supreme Court in its prior decision on this issue, although the Court's previous citation to the case was correct. This error was inadvertent, and it does not affect the Court's resolution of this issue. *Geddes & Moss* represents the most relevant decision by a Louisiana court addressing facts most similar to this case.

cause of action at a discount, an insurance company should be all the merrier as it could extinguish the debt for the same discounted price. Moreover, if such third party is a lawyer, Article 2447 renders any such purchase null and "makes the purchaser liable for all costs, interest, and damages." La. Civ. Code art. 2447. The other cases addressing similar facts, *Geddes & Moss* and *LeMoyne's*, do not contain speculation on what could happen if a third party chose to purchase claims and sue at a profit, perhaps because of the strict barriers to profiteering in Articles 2447 and 2652. Accordingly, by virtue of the Civil Code, this Court is not persuaded by Defendants' dystopian conjecture. The motion for reconsideration shall be denied.

The extensive briefing on this issue has persuaded this Court that the issue addressed herein is ripe for appeal. Under 28 U.S.C. § 1292(b), "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b). The Court of Appeals then, in its discretion, may "permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order." *Id.* The proceedings in the district court are not stayed unless such a specific order is issued by this Court, the Court of Appeals or a judge of that court. *Id.*

This case indeed involves a controlling question of law. The validity of the post-loss assignments by Road Home grant recipients despite anti-assignment clauses either results in the State's case proceeding or coming to an abrupt end. The material facts are not in dispute considering that every insurance contract appears to contain a similar anti-assignment clause.

While most states do not invalidate a post-loss assignment of an insurance claim regardless of anti-assignment clauses, there are states that do enforce such clauses. *See Insurance Co. of Penn. v. Hutter*, 34 Fed. Appx. 963, 2002 WL 663778, at *1 (5th Cir. 2002) (unpublished opinion) (holding that Texas law precludes post-loss assignments of insurance claims with anti-assignment clauses). The difference of opinion and Louisiana's lack of controlling precedent on this point muster in favor of certifying this issue for appeal. It does not escape this Court that this case also concerns immense financial interests of Louisiana, apparently reaching upwards of eight billion dollars. Resolution of this issue will significantly impact the likelihood that Louisiana can recover those funds. Immediate determination of this issue will also materially advance the litigation in light of the fact that it is a dispositive issue that reaches every contract in the case. The Court finds that a stay is appropriate to prevent any unnecessary litigation while the issue is appealed. The Court shall render its order accordingly.

## III. CONCLUSION

For the following reasons, accordingly

**IT IS ORDERED** that the Defendants' Motion for Reconsideration (Rec. Doc. 18207) is **DENIED**; and

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1292(b), this Court is of the opinion that the order entered herein involves a controlling question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation. In accordance with 28 U.S.C. § 1292(b), an application for appeal must be made to the Court of Appeals within ten days after the entry of this order; and

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1292(b), this case is **STAYED** pending the resolution of the appeal.

New Orleans, Louisiana, this ___16th___ day of April, 2009.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**