## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | No.: 05-4182 "K" (2) |
| | JUDGE DUVAL |
| FILED IN: 05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346, 06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289. | MAG. WILKINSON |
| PERTAINS TO:    LEVEE AND MR-GO | |

## ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S
### POST-HEARING MEMORANDUM
### REGARDING APPLICABLE INSURANCE LIMITS

This Memorandum is respectfully submitted by St. Paul Fire and Marine Insurance Company ("St. Paul") pursuant to the briefing schedule established at the conclusion of the Class Certification and Fairness Hearings on April 2, 2009.

Class Counsel[1] and Mr. Pete Ligeros, accepted by this Court as an Expert in Insurance and Risk Management customs, industry and practice, have done an exhaustive analysis of all

---

[1] Except as otherwise expressly provided below or as the context otherwise requires, all capitalized terms used in this memorandum shall have the meanings and/or definitions given them in the Class Settlement Agreement filed on December 9, 2008 and appearing in the Record as Doc. 16647-2.

potential insurance coverage available for the Claims of Class Members against any of the Levee Districts. It is the position of Plaintiffs and Class Counsel that the total limits of all insurance coverage that may potentially respond to the Claims of Class Members is $19 million. For the reasons discussed below, it is St. Paul's position that the total limits of all coverage that may potentially respond to these Claims is only $17 million.[2]

## **BACKGROUND**

As this Court is well aware, the Parties have entered into a Class Settlement Agreement. Pursuant to the terms of that Agreement, on December 16, 2008, St. Paul deposited $17 million (plus over $4 million in judicial interest) into the Escrow Account. As discussed below, these funds represent the total amount of insurance proceeds potentially available to respond to the Claims of Class Members against the Levee Districts, subject to only one limited exception. As detailed by Mr. Bruno in his testimony at the April 2, 2009 hearings, Class Counsel reserved the right to argue that one of the insurance policies at issue – that policy issued by St. Paul to the Orleans Levee District ("OLD") bearing the policy number GP06300925 (Ex. 2)[3] – provides an additional $2 million in limits that is potentially available to satisfy Class Members' Claims.

Whether or not this additional $2 million is potentially available turns on a question of policy interpretation. Specifically, this Court must determine whether the OLD's flood control system constitutes one "premises" or three "premises" within the meaning of the St. Paul policy. The facts pertinent to the analysis and resolution of this issue are undisputed and have been stipulated among the Parties. *See* Ex. 60, Joint Stipulations, attached as Ex. A hereto.

---

[2] Each of these figures would bear judicial interest.

[3] Except as otherwise expressly provided, all exhibits referenced herein refer to the exhibits introduced into evidence during the April 2, 2009 hearings.

## ARGUMENT

St. Paul submits that the OLD's flood control system constitutes one "premises" within the meaning of the applicable St. Paul policy and that the $17 million plus judicial interest already tendered by St. Paul is the total amount of insurance proceeds potentially available to satisfy the Claims of the Class against the Levee Districts.

## I.   THE OLD'S FLOOD CONTROL SYSTEM IS A SINGLE "PREMISES" WITHIN THE MEANING OF THE ST. PAUL POLICY

As an initial matter, the policy at issue (the "OLD Policy") is a package policy that contains multiple coverage parts.[4]  However, it is undisputed that the only coverage forms that are potentially responsive to the Claims of the Class are the Public Entity General Liability Protection and the Umbrella Excess Liability Protection coverage parts.  The "premises" dispute concerns only the Public Entity General Liability Protection coverage part (the "GL Form"), appearing in Exhibit 2 at TRV-OLD-00034 – 00077.

Pursuant to the Coverage Summary of the GL Form, that coverage form has an "Each Event Limit" of $1,000,000 and a "General Total Limit" of $1,000,000.  Ex. 2 at TRV-OLD-00034.  However, the GL Form contains an endorsement that modifies the "General Total Limit" provided by that coverage form.  Specifically, that endorsement states in pertinent part:

> **PUBLIC SECTOR SERVICES**
> **CHANGE OF LIMITS ENDORSEMENT —**
> **GENERAL TOTAL LIMIT APPLIES PER PREMISES**
>
> This endorsement changes your Public Entity General Liability Protection.

**How Coverage Is Changed**

---

[4] The coverage parts  include Employee Benefit Plans Administration Liability Protection–Claims Made, Law Enforcement Liability Protection, Automobile Liability, Excess E&O Coverage, Public Entity General Liability Protection and Umbrella Protection.  *See* Ex. 2.

3

The following is added to the General total limit section. This change broadens coverage.

*General total limit applies per premises.* The General total limit applies separately to each premises you own, rent, or lease. But only for covered bodily injury, property damage, or medical expenses that result from such premises.

*    *    *    *    *

We'll consider all premises which:

- share a common boundary; or

- are divided only by a street or roadway, waterway, or railroad right-of-way;

to be one premises when applying the coverage provided by this endorsement.

**Other Terms**

All other terms of your policy remain the same.

Ex. 2 at TRV-OLD-00065, attached hereto as Ex. B.[5]  Applying this language to the undisputed facts, the OLD's flood control system clearly constitutes a single "premises" within the meaning of this endorsement.

### A.    General Principles of Policy Interpretation Under Louisiana Law

In Louisiana, insurance policies are interpreted in accordance with the ordinary rules of contract interpretation. *Peterson v. Schimek*, 98-1712 (La. 4/9/99) 729 So. 2d 1024, 1028.  When the language of an insurance policy is clear, expressing with clarity the parties' intent, courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation. *Edwards v. Daugherty*, No. 2003-2104 (La. 10/1/04), 883 So. 2d 932, 940-941. In other words, "[t]he rules of construction do not authorize a perversion of the words or the

---

[5]   The Change of Limits Endorsement does not modify coverage under the Umbrella Policy and, therefore, has no potential effect on the $9,000,000 limits tendered thereunder.

exercise of inventive powers ...." *Id.*; *see also, Reynolds v. Select Properties Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183.

An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988); La. Civil Code. art. 2050. Effect must be given to each element of a sentence in an insuring agreement. *Orazio v. Henderson*, 01-0028 (La. App. 3 Cir. 7/11/01), 790 So. 2d 754, 757.

Finally, the Civil Code requires that words used in contracts "must be given their generally prevailing meaning." La. Civ. Code art. 2047. This rule of contract construction has been expressly applied to contracts of insurance by the Louisiana Supreme Court:

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.

*Edwards v. Daugherty*, 883 So. 2d at 940-41. The Louisiana Supreme Court has further explained that the generally prevailing meaning of a word is the meaning used in "common parlance" by "a reasonable person, a person in the street or an average citizen . . . ." *Schroeder v. Bd. of Sup'rs of Louisiana State University*, 591 So. 2d 342, 346 (La. 1991); *Savoie v. Fireman's Fund Ins. Co.*, 347 So. 2d 188, 191 (La. 1977). *See also, Graham Resources, Inc. v. Lexington Ins. Co.*, 625 So. 2d 716, 721 (La. App. 1 Cir. 1993) (words used in insurance policies "should be given their general popular interpretation and not that which is strained and unusual.").

**B.    Under Established Principles of Policy Interpretation, the OLD Flood Control System is One "Premises" within the Meaning of the Premises Endorsement**

While the Premises Endorsement does not define "premises," that is immaterial under

Louisiana law. Under Louisiana law, undefined terms are given their generally prevailing meaning. *Am. Deposit Ins. Co. v. Myles*, 783 So. 2d 1282, 1287 (La. 2001) (term used in policy was "not defined in the policy itself, but this fact alone does not make the exclusion ambiguous; instead, we will give the term its generally prevailing meaning"); *Weeks v. Bossier Parish School Bd.*, 26,927 (La. App. 2 Cir. 5/10/95), 655 So. 2d 590 (fact that policy defined some terms and not others "does not render the contract ambiguous").

In *Cadwallader v. Allstate Insurance Company,* No. 2002-1637 (La. 6/27/03), 848 So. 2d. 577 (La. 6/27/03), the Louisiana Supreme Court reaffirmed that a simple word used in an insurance policy must be given its common meaning as generally understood. A lower court had concluded that the word "relative," as used in an uninsured motorist policy, was ambiguous because it might or might not include a foster child. *Id.* at 578-79. The Louisiana Supreme Court reversed, stressing that "relative" is "a rather simple word with a well-established common sense meaning which is referenced in the insurance policy in a clearly worded context," and that the lower court "was required to interpret the term using its plain, ordinary and generally prevailing meaning as set forth in the policy at hand." *Id.* at 583-84. The court held that the word "relative," as "commonly understood, used and defined," did not include a foster child. *Id.* at 584.

Here, Merriam-Webster's Online Dictionary defines "premises" as

> 3 *plural* [from its being identified in the premises of the deed] **a:**
> a tract of land with the buildings thereon **b:** a building or part
> of a building usually with its appurtenances (as grounds).

MERRIAM WEBSTER'S ONLINE DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/premises (2009). Similarly, *Webster's New Collegiate Dictionary* defines the word "premises" as

> **Prem′ise, prem′iss** (prĕm′ ĭs), n.
> *pl. Law* ...c.  The property conveyed in a deed; hence a piece of
> land or real estate; sometimes, esp . in fire insurance, a building;
> as, to lease *premises*

WEBSTER'S NEW COLLEGIATE DICTIONARY (2d ed. C&C Merriam Co., Publishers, 1959).  The

word "premises" is, thus, generally understood to refer to a tract of land and its appurtenances.

Importantly, the Premises Endorsement provides specific guidance regarding how the

number of "premises" within the meaning of the endorsement is to be ascertained.  The

endorsement expressly provides that all premises sharing a common boundary or separated only

by a street or roadway, waterway, or railroad right-of-way shall be deemed to be one premise.

Ex. 2 at TRV-OLD-00065; *see also,* this same policy language quoted above at p. 4.

The undisputed and jointly stipulated facts confirm that, at all pertinent times, the OLD

flood control system was (and remains) continuous in nature and separated only by waterways.

Specifically, the OLD flood control system was (and is) comprised of four component parts: the

New Orleans Metro flood control structure, the Lower Ninth Ward flood control structure, the

New Orleans East flood control structure, and the New Orleans West Bank flood control

structure.  Ex. 60, Joint Stipulations, Ex. A hereto, at ¶ 1.  Because the West Bank flood control

structure did not fail, that component part is not relevant here for purposes of ascertaining the

number of premises.  *Id.* at ¶ 2.

Further, the undisputed facts establish that the remaining three component parts at issue

each were separated only by waterways:

- First, each of the component flood control structures was a continuous earthen
  levee/fronting protection/flood wall structure that encircled the land it protected.[6]  *Id.* at ¶
  5.

---

[6] In addition to surrounding the land it protected, the Lower Ninth Ward flood control structure had one additional
levee connecting to and extending from the encircling structure along the southern bank of the Gulf Intracoastal
Waterway. *Id.*

- Second, the New Orleans Metro flood control structure was separated from the western side of the Lower Ninth Ward flood control structure only by the Inner Harbor Navigation Canal. *Id.* at ¶ 3.

- Third, the northern side of the Lower Ninth Ward flood control structure was separated from the southern side of the New Orleans East flood structure only by the Gulf Intracoastal Waterway. *Id.* at ¶ 4.

- Finally, the Gulf Intracoastal Waterway and the Inner Harbor Navigational Canal are both waterways. *Id.* at ¶ 6.

In short, each component part of the OLD levee system was a continuous structure and those component parts lay adjacent to one another, separated only by waterways. Therefore, there is only one "premises" within the meaning of the endorsement. Consequently, only $1,000,000 is potentially available under the GL Form, which amount St. Paul has already tendered.

## II.   THE $17 MILLION TENDERED BY ST. PAUL REPRESENTS THE TOTAL AMOUNT OF INSURANCE THAT POTENTIALLY RESPONDS TO THE CLASS MEMBERS' CLAIMS

As the Court is aware, the Parties introduced at the April 2, 2009 hearings fifty-seven policies issued to the respective Levee Districts. *See* Ex. 1. For the convenience of the Court and the completeness of the record, St. Paul briefly confirms here (as Class Counsel's expert Pete Ligeros testified during the April 2, 2009 hearings) that the funds tendered by St. Paul constitute all insurance funds potentially available to respond to the Class Members' Claims against the Levee Districts (subject to the Court's determination with regard to the premises issue).

### A.   The Vast Majority of the Levee Districts' Policies in Effect in 2005 Clearly Provide No Coverage for the Claims at Issue

As is readily apparent from a review of the policies, most of those policies could not possibly have any application to this matter. Indeed, many of the policies contain <u>no liability</u>

8

coverage of any kind and, therefore, could not possibly provide any coverage for any liability

that the Levee Districts might ultimately have to any Class Member.  Falling within this category

are the following policies:

- Exhibits 13 through 15 and 48 are first-party fire and extended peril property policies, which provide the OLD and the Lake Borgne Basin Levee District ("LBBLD") with coverage for their own property in the event it is damaged by fire or other perils, *see* Exs. 13-15, 48;

- Exhibits 18 through 40 are first-party flood coverage policies issued through the National Flood Insurance Program, which provide the OLD with coverage for its own property in the event it sustains direct physical loss by or from flood, *see* Exs. 18-40; and

- Exhibits 7-9,[7] 42, and 51 (inland marine policies), Exhibit 12 (a boiler and machinery policy), and Exhibit 52 (a contractors equipment coverage policy), provide coverage only for "direct physical loss" to specified, scheduled or described property belonging to the insured where caused by a "covered cause of loss," *see* Exs. 7-9, 12, 42, 52.[8]

Also inapplicable are policies and coverage forms that provide coverage only for

workplace or employer/employee liabilities.  Falling within this category are the following

policies:

- Exhibits 10, 43 and 49 are Workers' Compensation and Employer's Liability policies, which provide coverage only for bodily injury by accident or disease caused or aggravated by employment conditions of the insured or arising out of and in the course of employment by the insured, *see* Exs. 10, 43 and 49;

- Exhibit 47 is a Maritime Employer's Liability policy, which provides coverage for bodily injury or property damage of the insured's employees, *see* Ex. 47;[9]

---

[7]  The named insured under the Commercial Inland Marine Policies identified as Exhibits 7 through 9 is "New Orleans Lakefront Airport."

[8]  Certified copies of Exhibits 51 and 52, which had been subpoenaed at the time of the April 2, 2009 hearings, have been obtained and will be supplemented into the record which was held open for this limited purpose by Order of the Court.

[9]  A certified copy of Exhibit 47, which had been subpoenaed at the time of the April 2, 2009 hearings, has been obtained and will be supplemented into the record which was held open for this limited purpose by Order of the Court.

- Exhibit 11, an Employment Practices policy, and the Public Entity Employment Practices Liability Protection form in Exhibit 4 both provide coverage only for workplace torts, such as wrongful termination, discrimination, and sexual harassment, *see* Exs. 4 and 11; and

- Exhibit 44, a "Blanket Accident" policy issued to the East Jefferson Levee District ("EJLD"), only provides accidental death, dismemberment and medical benefits to volunteer policemen while participating in the policyholder's sponsored law enforcement activities, *see* Ex. 44.

Similarly inapplicable are those policies and coverages that provide coverage only for liabilities caused by automobiles or certain specified equipment, operations or premises. Falling within this category are:

- Exhibit 17, an Underground Storage Tanks Liability Policy, provides coverage only for "bodily injury" or "property damage" caused by "underground storage tank incidents," *see* Ex. 17;

- Exhibits 5 and 6 (primary and excess Marine General Liability policies) and Exhibit 16 (an Airport Owners and Operators Liability Policy) provide, respectively, coverage only for liabilities arising out of the OLD's mooring operations at the OLD's Orleans Marina/New Basin Canal and South Shore Harbor Marina and airport operations at the New Orleans Lakefront Airport, *see* Exs. 5, 6, 16, 62 and 65;

- The automobile coverages provided to the OLD and EJLD in Exhibits 2 and 3, respectively, cover only those liabilities arising out of the use of autos, *see* Exs. 2, 3;

- Exhibit 50, a Hull & Machinery and Protection and Indemnity policy, provides the LBBLD with coverage for damages resulting from certain specified vessels, *see* Ex. 50; and

- Exhibit 45 and the pertinent portion of Exhibit 2, through which both the OLD and EJLD had Law Enforcement Liability coverage, provide coverage only for liabilities arising from injuries resulting from the respective levee district's law enforcement activities, *see* Exs. 2 and 45.

Not falling squarely within any of the foregoing categories, but equally inapplicable to the Claims at issue in this Litigation are the following:

- Exhibit 46 is a Public Official's and Employer's Liability policy issued by National Union to EJLD, which policy this Court has already held provided

10

no coverage for the claims at issue in this litigation, *see* Ex. 46 and August 26, 2008 Order and Reasons, R. Doc. 14631;

- The Public Entity Management Liability Protection coverage provided in the package policy issued by St. Paul to LBBLD, Ex. 4 provides essentially the same coverage and employs nearly identical language to that appearing in the National Union policy at Exhibit 46 (specifically excluding coverage for loss resulting from bodily injury, personal injury or property damage), *see* Ex. 4 at TRV-LB-00103; *see also* Ex. 46 and August 26, 2008 Order and Reasons, R. Doc. 14631; and

- Exhibit 41 and the Government Crime Protection form in Ex. 3 provide Government Crime Protection coverage for liabilities resulting from employee theft, fraud, forgery and burglary, *see* Exs. 3 and 41.

As Mr. Ligeros concluded through his independent investigation, St. Paul submits that none of the foregoing policies and/or coverages are potentially responsive to the Claims of the Class.

**B.    The Levee Districts' post-Katrina Policies Provide No Coverage for the Claims at Issue**

In preparation for the April 2, 2009 hearings, Class Counsel and Mr. Ligeros went so far as to review those general liability policies issued to the Levee Districts *after* Katrina to ensure that none of those policies potentially provide coverage for the Claims at issue. As Mr. Ligeros testified, none do.   Exhibits 53 and 58 are commercial general liability policies issued by American Empire Surplus Lines ("American Empire") to EJLD and LBBLD, respectively, for the 2006-2007 policy period.   While both of those policies provide coverage for "bodily injury" and "property damage," it is not surprising that both also expressly exclude known bodily injury and property damage given the devastation of Katrina and Rita only one or two years prior.   The relevant language provides:

1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;

11

2. The "bodily injury" or "property damage" occurs during the policy period; and

3. Prior to the policy period, <u>no insured</u> listed under Paragraph 1 of Section II—Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, <u>knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.</u>

Ex. 53 at CG 00 01 10 01, p.1; Ex. 58 at CG 00 01 10 01, p.1  (emphasis added).  Here, the greater New Orleans metro-area flooded within hours of Hurricane Katrina, resulting in "property damage" and "bodily injury" immediately known to both LBBLD and the EJLD. Consequently, under the plain language of the American Empire policies, both LBBLD and EJLD are deemed to have known of any continuation, change, or resumption of the alleged "bodily injury" and/or "property damage" from the levee failures *before* the inception of their respective policies on June 8, 2006 and July 19, 2006.  As a result, coverage is precluded under the American Empire policies issued to LBBLD and EJLD post-Katrina.

In addition, Exhibits 54 through 57 are four commercial general liability policies issued by Illinois Union Insurance Company to OLD and EJLD for the 2007 – 2008 and 2008 – 2009 policy periods.  Each of those policies expressly requires that both the "occurrence" and "bodily injury" or "property damage" take place during the policy period, rendering them inapplicable to damages from the storms.  *See,* PE-19609c (09/06), p.1, in Exhibits 54-57.  Additionally, the language of each of those policies also expressly excludes coverage for claims arising from levee failures:

20. Any liability arising out of the performance, failure, or lack of performance of any levee, reservoir, dam or spillway, or any other similar or related structure including paths, including but not limited to:

12

a. Design, construction, maintenance, collapse, flooding, cracking, settling, seepage, underseepage, spillage, subsidence, breach, erosion, deterioration, overtopping, landslide or earth movement of any dam, spillway, levee or reservoir, or similar or related structure including paths; or

b. The failure of any equipment used in the operation or maintenance of any dam, spillway, levee or reservoir, or similar or related structure including paths.

*See,* Dam, Reservoir or Levee Exclusion Endorsement, CC1E15, in Exs. 54-57. Consequently, the foregoing policies provide no coverage for the Claims of Class Members arising out of the alleged levee failures.

## C. Only Exhibits 2, 3 and 4 Potentially Provide Coverage for the Claims at Issue, and St. Paul has Already Tendered all Potentially Available Limits

For the reasons detailed above, and as Mr. Ligeros concluded, only Exhibits 2, 3 and 4 – the three multi-form "package" policies issued by St. Paul to each of the Levee Districts – potentially respond to the Claims at issue. St. Paul has paid all of the limits potentially available under each of these policies for the Claims at issue.

### 1. Exhibit 2, The OLD Policy

The OLD Policy is a package policy containing the following coverage parts: (1) Public Entity General Liability Protection; (2) Employee Benefit Plans Administration Liability Protection – Claims Made; (3) Law Enforcement Liability Protection; (4) Automobile Liability Protection; (5) Umbrella Excess Liability Protection; and (6) Excess Errors and Omissions Liability Protection – Claims Made. *See* Ex. 2. The Law Enforcement Liability Protection coverage part (TRV-OLD-00090 – 00103) and the Automobile Liability Protection coverage part (TRV-OLD-00104 – 00132) were addressed above and are clearly irrelevant to the claims at issue. The remaining coverage parts are addressed here in turn.

The Public Entity General Liability Protection coverage part (the "GL Form") (TRV-OLD-00034 – 00077) was addressed at the outset of this memorandum. St. Paul is tendering as part of the Settlement the General Total Limit (of $1,000,000) provided by this form for bodily injury and/or property damage liability. *See* Ex. 2 at TRV-OLD-00034.

The GL Form does provide separate limits of coverage for "personal injury" liability coverage and/or "products and completed work" liability coverage. TRV-OLD-00034, 00042-43, and 00065. However, neither of those coverages is potentially triggered by the Claims of the Class. With regard to the "personal injury" liability coverage, no "personal injury offense" has been alleged in order to potentially trigger "personal injury" coverage. Further, the U.S. Fifth Circuit has held that the enumerated risks assumed by the insurer in the "personal injury" coverage require "active, intentional conduct by an insured;" this particular coverage does not extend to the consequences of negligent acts. *See Gregory v. Tennessee Gas Pipeline, Co.*, 948 F.2d 203, 209 (5th Cir. 1991). The OLD did not intentionally commit, and to our knowledge is not alleged to have intentionally committed a "personal injury" offense within the meaning of the GL Form.

With respect to the "your products" coverage, the Levee Districts did not "manufacture[], s[ell], handle[], distribute[], or dispose[] of" any "goods or products" so as to trigger this coverage. TRV-OLD-00043. Moreover, the GL Form specifically states that "real property" – such as the levees at issue – will not be considered the levee district's "products." *Id.* And, the GL Form also specifically states that "[a]ny premises or other real property that you own; any work done to a premises or other real property that you rent or lease from others; and any work while on a premises that you own, or rent, lease, or borrow from others" will not be considered

14

to be "your completed work." *Id.* Consequently, the "products and completed work" liability coverage provided by the GL Form is not potentially responsive to the claims at issue.

The Umbrella Excess Liability Protection coverage part (TRV-OLD-00133 - 00175) has a "General Total Limit" of $9,000,000 and, for all purposes relevant here, is excess over the GL Form in the OLD Policy. TRV-OLD-133, 135. St. Paul is tendering as part of the Settlement the full $9,000,000 potentially available under this coverage form.

The Employee Benefit Plans Administration Liability Protection – Claims Made coverage part (TRV-OLD-00078 – 00089) provides the OLD with an additional $1,000,000 in coverage, but that coverage only applies to liabilities "that result[] from the administration of [the OLD's] employee benefit plans." TRV-OLD-00079. Thus, that coverage is inapplicable here.

The Excess Errors and Omissions Liability Protection – Claims Made coverage part (the "Excess E&O Form") (TRV-OLD-00176 - 00181), by its express terms, provides excess coverage only over the Employee Benefit Plans Administration Liability Protection – Claims Made form which, as noted above, is not potentially triggered in this litigation. Specifically, the Excess E&O form states that it applies only to liabilities that, *inter alia*, "[are] covered by your Basic Insurance." TRV-OLD-00178. The term "Basic Insurance" is defined by the form to mean "only the insurance for which the Schedule of Basic Errors and Omissions Liability Insurance in the Coverage Summary shows: a description of coverage, and limits of coverage amounts." *Id.* The Schedule of Basic Errors and Omissions Liability Insurance in the Coverage Summary shows only the description of coverage and limits of coverage amounts from the Employee Benefit Plans Administration Liability Protection – Claims Made form from the OLD

Policy. TRV-OLD-00176. Thus, the coverage provided by the Excess E&O Form is inapplicable here.

## 2. Exhibit 3, The EJLD Policy

The EJLD Policy is a package policy containing the following coverage parts: (1) Property Protection; (2) Public Entity General Liability Protection; (3) Employee Benefit Plans Administration Liability Protection – Claims Made; (4) Automobile Liability Protection and Automobile Physical Damage Protection; (5) Government Crime Protection; (6) Umbrella Excess Liability Protection; and (7) Excess Errors and Omissions Liability Protection – Claims Made. *See* Ex. 3. The Automobile Liability Protection and Automobile Physical Damage Protection coverage part (TRV-LDE-00122 – 00166) and the Government Crime Protection coverage part (TRV-LDE-00167 – 00183) were addressed above and are clearly irrelevant to the claims at issue. The remaining coverage parts are addressed here in turn.

The Property Protection coverage part (TRV-LDE-00029 – 00068) provides EJLD with first-party property coverage to protect EJLD's interests in certain specified properties in the event such properties are damaged. This coverage is inapplicable to the claims at issue.

The Public Entity General Liability Protection coverage part (the "GL Form") (TRV-LDE-00069 – 112) is substantively the same as the GL Form in the OLD Policy, except that it does not contain a Premises Endorsement like that in the OLD Policy. In the EJLD Policy, the GL Form has a "General Total Limit" of $1,000,000. TRV-LDE-00069. St. Paul is tendering as part of the Settlement the full General Total Limit of $1,000,000 provided by this form for bodily

injury and/or property damage.[10]

The Employee Benefit Plans Administration Liability Protection – Claims Made coverage part (TRV-LDE-00113 – 00121) in the EJLD Policy is substantively the same as that in the OLD Policy. It provides coverage only for liabilities "that result[] from the administration of [the EJLD's] employee benefit plans." TRV-LDE-00114. Thus, that coverage is inapplicable here.

The Umbrella Excess Liability Protection coverage part (TRV-LDE-00184 – 00224) has a "General Total Limit" of $4,000,000 and, for all purposes relevant here, is excess over the GL Form in the EJLD Policy. TRV-LDE-184, 186. St. Paul is tendering as part of the Settlement the full $4,000,000 potentially available under this coverage form.

The Excess Errors and Omissions Liability Protection – Claims Made coverage part (TRV-LDE-00225 - 230) is substantively the same as the Excess E&O Form in the OLD Policy. Like the form in the OLD Policy, this form, by its express terms, provides excess coverage only over the Employee Benefit Plans Administration Liability Protection – Claims Made form, which is not applicable to the Claims at issue. TRV-LDE-00225, 00227.

### 3.    Exhibit 4, The LBBLD Policy

The LBBLD Policy is a package policy containing the following coverage parts: (1) Public Entity General Liability Protection; (2) Employee Benefit Plans Administration Liability Protection – Claims Made; (3) Public Entity Employment Practices Liability Protection – Claims Made; (4) Public Entity Management Liability Protection – Claims Made; and (5) Automobile

---

[10] In the EJLD Policy, any coverage for personal injury liability also falls within the same $1,000,000 General Total Limit; no additional limits are provided for personal injury offenses. TRV-LDE-00080. Additionally, as with the OLD Policy, the GL Form in the EJLD Policy does provide a separate $1,000,000 limit for liability for bodily injury or property damage that results from the policyholder's products or completed work. *See* TRV-LDE-00069, 00081. However, for the reasons stated above, the "products completed work" coverage is not potentially triggered by the claims at issue.

Liability Protection. *See* Ex. 4. The Public Entity Employment Practices Liability Protection – Claims Made form (TRV-LB-00086 – 00099), the Public Entity Management Liability Protection – Claims Made coverage part (TRV-LB-00100 – 114), and the Automobile Liability Protection coverage part (TRV-LB-00115 - 00144) were addressed above and are clearly irrelevant to the claims at issue. The remaining coverage parts are addressed here in turn.

The Public Entity General Liability Protection coverage part (the "GL Form") (TRV-LB-00029 – 00075) is substantively the same as the GL Form in the OLD and EJLD policies, except that it does not contain a Premises Endorsement like that in the OLD Policy. In the LBBLD Policy, the GL Form has an "Each Event Limit" of $1,000,000 and a "General Total Limit" of $2,000,000. TRV-LB-00029. <u>St. Paul is tendering as part of the Class Settlement the maximum amount potentially available under this form for bodily injury and/or property damage -- the full General Total Limit of $2,000,000.</u>[11] There is no umbrella policy or form.

The Employee Benefit Plans Administration Liability Protection – Claims Made coverage part (TRV-LB-00076 – 00085) in the LBBLD Policy is substantively the same as that in the other Levee Districts' policies. It provides coverage only for liabilities "that result[] from the administration of [the LBBLD's] employee benefit plans." TRV-LB-00077. Thus, that coverage is inapplicable here.

## CONCLUSION

As Mr. Ligeros concluded, only the Public Entity General Liability and Umbrella coverage parts issued to the respective Levee Districts afforded coverage for the Claims of the

---

[11] In the LBBLD Policy, any coverage for personal injury liability also falls within the same $2,000,000 General Total Limit; no additional limits are provided for personal injury offenses. TRV-LB-00040. Additionally, as with the OLD and EJLD policies, the GL Form in the LBBLD Policy does provide a separate $2,000,000 limit for liability for bodily injury or property damage that results from the policyholder's products or completed work. *See* TRV-LB-00029, 00041. However, for the reasons stated above, the "products completed works" coverage is not potentially triggered by the claims at issue.

Class Members.  On December 16, 2008, St. Paul deposited the limits of each of those respective policies, plus judicial interest, into the Escrow Account in accordance with the terms of the Settlement Agreement.

The only remaining question is how many premises comprise the OLD levee system.  As reflected in the  Joint Stipulations, the three component parts of the OLD levee system at issue – the New Orleans East flood control system, the New Orleans Metro flood control system, and the Lower Ninth Ward flood control system – are contiguous to one another and separated solely by waterways.  Consequently, the OLD levee system constitutes one premises, not three, within the meaning of the OLD Policy.  St. Paul is not liable for an additional $2,000,000 under the GL Form in the OLD Policy beyond the $1,000,000 General Total Limit it has already contributed to the Settlement Amount.

Respectfully submitted,

Ralph S. Hubbard III (# 7040)
Joseph P. Guichet (#24441)
Rachel Meese (#25457)
LUGENBUHL, WHEATON, PECK, RANKIN &
HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Telephone:  (504) 568-1990
Telecopier:  (504) 310-9195

and

S. Ault Hootsell III (# 17630)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130

**ATTORNEYS FOR ST. PAUL FIRE AND
MARINE INSURANCE COMPANY**

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2009, I electronically filed the foregoing with the Clerk of Court by using the CMECF system which will send a notice of electronic filing to all counsel of record.

*Ralph S. Hubbard III*