UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER:  05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO:  *Robinson* (No. 06-2268) | |

**PLAINTIFFS' MEMORANDUM TO PREVENT DEFENDANT FROM SEEKING TO PROVE THAT THE LPV STRUCTURES WERE NOT PROPERLY DESIGNED AND CONSTRUCTED AND DID NOT PERFORM AS EXPECTED**

I.      **INTRODUCTION**

Plaintiffs request that the Court not permit the Defendant to alter its consistent position throughout this litigation that the LPV structures were not negligently designed, constructed, or maintained and that they performed as expected.  Recently, the Government has claimed that only "bigger, stronger levees" would have prevented this calamity.[1]  This appears to be a poorly-disguised, 180-degree reversal prohibited by settled judicial estoppel principles.  If the Government is doing an about-face, this Court should bar such gamesmanship and preclude any argument or evidence—whether by affirmative proof by defense witnesses or cross-examination of Plaintiffs' experts—that the LPV structures were defective or did not perform as expected.

---

[1] "The only way in which the catastrophic flooding of the Lower Ninth Ward, St. Bernard, and New Orleans East could have been avoided would have been through the construction of a better hurricane protection system. . . .  This breach [in the New Orleans East Back Levee] could have been prevented only by the construction and maintenance of a stronger, more resilient levee. . . Bigger, stronger levees along the GIWW, the MRGO, and the IHNC could have prevented floodwaters from inundating Plaintiffs' properties."  Defendant's Trial Brief (Doc. No. 18448), at p. 8.

Most immediately, Plaintiffs seek to preclude any cross-examination of their expert Dr. Robert Bea who will testify on Friday. During the 702c proceedings, Dr. Bea prepared reports discussing the design and construction of the LPV structures along Reach 2—what he termed EBSBs (earthen berms/spoil banks)—in support of Plaintiffs' motion for summary judgment. Plaintiffs anticipate that defense counsel will seek to examine Dr. Bea about those reports and the putative defects in the Army Corps' LPV structures. This area of inquiry should be declared off limits.

II.   **FACTS**

A. Plaintiffs Have Never Alleged The LPV Structures Were Responsible
For Their Losses

At no time in this litigation have Plaintiffs maintained that the catastrophic flooding of their property was attributable to the negligent design, construction, or maintenance of the LPV structures. Nor have Plaintiffs ever predicated Defendant's liability on claims of breaches or failure of LPV structures or that their claims relate to a federal flood control project. *See* First Amended Complaint ¶¶1-4, 6, 29-30, 33-34, 47, 49-50, 52, 53-59, 70-75, 78-80, 82-84, 94, 102, 104. Plaintiffs' position has been consistent: It is the MR-GO, not the LPV structures, that destroyed their homes and business. *Id.* ¶¶ 1, 2, 5, 9, 91, 95, 97, 99, 102.

The Court has consistently recognized Plaintiffs' position. In the Section 702 summary judgment battle, Plaintiffs' winning argument on 702c was that they seek to hold the Army Corps accountable because of defects in the MR-GO that caused the demise of the LPV structures—the Coast Guard cutter analogy. Plaintiffs made explicit time and time again that "Plaintiffs are not predicating Defendant's liability on levee breaches or the failure, overtopping, or defective design, construction, operation or maintenance of other forms of flood protection works." Plaintiffs' 702c MSJ (Jan. 11, 2008) (Doc. No. 10337-2) at p. 1. Indeed, the Court so

recognized this in its decision.  *See* 702c Order and Reasons, Doc. No. 12946 (May 5, 2008) at pp. 2, 35-38[2]; *see also In re Katrina Canal Breaches Consol. Litig.*, 471 F.Supp.2d 684, 694 (E.D. La. 2007).

Dr. Bea's 702c report was prepared to support Plaintiffs' two alternative arguments (neither of which was successful).[3]  His essential conclusion was that the LPV flood works (particularly along Reach 2) were not true "levees" entitled to Section 702 immunity because they were not built consistent with the SPH criteria prescribed in the law authorizing the LPV. Dr. Bea did not opine that the catastrophic flooding was caused by defects in the LPV structures—and that is not his opinion in his reports on liability that will be the subject of his trial testimony.

B.   <u>Defendant Has Consistently Maintained That The LPV StructuresWere Properly Designed, Constructed, and Maintained and Performed As Expected During Katrina</u>

Throughout this case, the Government has defended its levee system, claiming that the federal levees were not a cause of the catastrophic flooding.  As a corollary, the Government's

---

[2] The Court further recognized that Plaintiffs "maintain that even if the flood control project had been built perfectly to specifications, that because of the surge created by mistakes made with respect to the MR-GO, these damages would have happened.  *Id.* at p. 34.

[3] Plaintiffs' alternative arguments were framed as follows:

2.  Section 702c is inapplicable here because it is undisputed that the flood control structures were not designed or constructed in accordance with the Congressional authorization of the Lake Pontchartrain and Vicinity Hurricane Protection Project ("LPVHPP") in the Flood Control Act of 1965, requiring the use of the Standard Project Hurricane design criteria for flood control structures.

3.  Section 702c is inapplicable here because it is undisputed that the Congressionally-mandated hurricane flood protection system ("HPS") was still substantially incomplete by the time of Hurricane Katrina, thereby not affording Greater New Orleans the level of hurricane protection mandated by Congress *forty years earlier.*

Plaintiffs' 702c MSJ (Jan. 11, 2008) (Doc. No. 10337-2) at pp. 1-2 (emphasis added).

lawyers and experts have repeatedly insisted that the LPV structures (with minor exceptions) performed as expected, *i.e.*, they failed after overtopping.  Their mantra has been: Katrina was such a powerful hurricane that its surge and waves exceeded the design limits of its flood protection structures designed according to SPH criteria.

In the IPET Report of August 22, 2007, the Government repeated that the levees performed as designed:

> Ironically, the structures that ultimately breached [the levees] performed as designed, providing protection until overtopping occurred…

Plaintiffs' Trial Exh. 20, IPET Report at p. I-3.

> The majority of the structures in the HPS were generally built as designed, and design approaches were consistent with local practice.

*Id.* at p. I-62.

> The levees largely performed as designed, withstanding the surge and waves until overtopping. . . .

*Id.* at p. I-65.

> The system was generally built as designed… using design approaches that were consistent with industry and local practices at the time of the design.

*Id.* at III-7.

Citing the IPET Report, the Government, in response to Plaintiffs' 702c summary judgment motion, stated that:

> The levees along the MRGO were not "water pervious" nor were they "highly vulnerable to severe erosion.

Defendant United States' Response to Plaintiffs' Revised Statement of Undisputed Facts (Feb. 1, 2008) (Doc. No. 11033-2) at p. 7, No. 13.

If there was any doubt as to the respective positions of the parties, it was removed by

their respective statement of the undisputed facts for that motion:

> **<u>Plaintiffs' Revised Fact No. 49</u>**
> The Government contends that there were no defects in the design
> and construction of the flood control structures along Reach 1 and
> Reach 2 of the MR-G) that contributed to flooding of Greater New
> Orleans.
>
> **<u>Response to Plaintiffs' Revised Fact No. 49</u>**
> Uncontested. . . .

*Id.* at p. 29.

Indeed, in its recently filed Trial Brief, the Government maintains that the levees the

Corps built were "[a]ccording to published guidelines for designing levees. . . ."  (April 3, 2009)

(Doc. No. 18448) at p. 5.

C.  <u>Plaintiffs Relied On The Government's Position</u>

In preparing their case, Plaintiffs have relied on the Government's position on—and

accepted—these facts.  As set forth in their Proposed Findings of Fact and Conclusions of Law,

Plaintiffs stated:

> 151.  The Government contends—and Plaintiffs accept as a fact—that
> there were no defects in the design or construction of the LPV flood control
> structures along Reach 1 and Reach 2 of the MR-GO that contributed to the
> catastrophic flooding of Greater New Orleans during Hurricane Katrina.  Exh.
> 2090, Mosher Depo. (Feb. 19, 2009) at 109:14-110:18; *see also* Defendant's
> Expert Thomas Wolff Report (Dec. 2008) at p. 38.
>
> 153.  The Government maintains—and Plaintiffs accept as fact—that the
> hurricane protection structures built by the Corps along the MR-GO between
> Bayou Dupre and Bayou LaLoutre performed as designed.  Exh. 27, Varuso
> 30(b)(6) Murphy Oil Depo. at 101:1-25.
>
> 154.  The Government maintains—and Plaintiffs accept as fact—that there
> was no inherent design defect or defect in the way the hurricane structures along
> the Reach 2 between Bayou Dupre and Bayou LaLoutre were constructed. Exh.
> 27, Varuso 30(b)(6) Murphy Oil Depo. at 102:7-20.

Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Doc. No. 18447-2), nos. 151, 153-54.

In reliance on the Government's position, Plaintiffs took no discovery on whether the levees themselves—as opposed to the oceanographic stresses created by the MR-GO—were a cause of the catastrophic flooding.  Nor did the Government submit an expert report staking out this position.  Indeed, to the contrary, Defendant's levee expert (Reed Mosher) opined that "it was within engineering standards of practice at the time the MRGO levees were designed and constructed to use hydraulic fill to construct levees."  Joint Trial Exhibit 212, Mosher Expert Report (Dec. 2008) at p. 25.  Similarly, Mosher testified in his deposition that the LPV structures along Reach 2 "performed as designed with a hurricane that severely overtopped them and it was much greater than what their design elevation was."  Joint Trial Exhibit 115, Mosher Depo. (February 19, 2009) at 110:10-13.

It would severely prejudice Plaintiffs at this late hour to have to defend the Government's newly-minted claim (if it is now their position) that somehow the Plaintiffs' losses were attributable to defective levees as opposed to a more powerful storm that contemplated by the SPH criteria.  Without fact or expert discovery and motion practice, Plaintiffs have no ability to defend against this radical shift in position.

As demonstrated below, federal courts routinely condemn such tactics.

III.   ARGUMENT

The doctrine of judicial estoppel has long been recognized as a preventative measure to preclude a party from changing a position that it previously asserted.  "Under general principles of judicial estoppel, a party cannot advance one argument and then, for convenience or

gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." *Hotard v. State Farm Fire and Casualty Co.*, 286 F.3d 814, 818 (5th Cir. 2002).

The Fifth Circuit recognizes the doctrine of judicial estoppel "because of its laudable policy goals. The doctrine prevents internal inconsistency, precludes litigants from 'playing fast and loose' with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment." *Ergo Science, Inc. v. Martin,* 73 F. 3d 595, 598 (5th Cir. 1996) (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)). For these reasons, judicial estoppel has long been recognized by both Louisiana state and federal law. *Hotard v. State Farm Fire and Casualty Co.*, 286 F.3d 814 at 816.

The Fifth Circuit traditionally has distinguished judicial estoppel from equitable estoppel by holding that reliance and injury are not required for judicial estoppel. *Johnson Service Company v. Transamerica Insurance Company,* 485 F.2d 164, 174 (5th Cir. 1973). "'Under the doctrine of judicial estoppels, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made.'" *Id.* (quoting 31 C.J.S. Estoppel sec. 121, p. 390.)

The Fifth Circuit has also held as a matter of law that a defendant is estopped from again raising an issue where it has previously attested to the facts in a prior proceeding, regardless of whether this is because of the defendant's prior pleadings or because it affected the court's holding. *See In the Matter of Double D Dredging Company, Inc.*, 467 F.2d 468, 469 (5th Cir. 1972) (Fifth Circuit held ship owner to its attestations that the waters in questions were the navigable waters of the United States and that the deceased was a Jones Act seaman).

In sum, settled estoppel principles designed to uphold the dignity of judicial proceedings require that the Government be held to its consistent prior position and not be allowed to change its arguments to defeat Plaintiffs' case.

## IV.   CONCLUSION

For the foregoing reasons, the Government should be precluded from introducing any evidence, or arguing that the LPV structures failed because, of design, construction, or maintenance defects or that they did not perform as expected.

Dated: April 23, 2009                               Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell

Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone:  (213) 347-0290
Fax:  (213) 347-0298

**Law Offices of Joseph M. Bruno**
By: s/ Joseph M. Bruno
Joseph M. Bruno (LSBA No. 3604)
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493

**The Andry Law Firm, LLC**            **Domengeaux Wright Roy & Edwards LLC**
By: s/ Jonathan B. Andry               Bob F. Wright (LSBA No. 13691)
Jonathan B. Andry (LSBA No. 20081)     James P. Roy (LSBA No. 11511)
610 Baronne Street                     556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113           P.O. Box 3668
Telephone: (504) 586-8899              Lafayette, Louisiana 70502-3668
Facsimile:  (504) 585-1788             Telephone: (337) 233-3033
                                       Facsimile:  (337) 233-2796

**Fayard & Honeycutt**                 **Girardi & Keese**
Calvin C. Fayard, Jr. (LSBA No. 5486)  Thomas V. Girardi (*pro hac vice*)
Blayne Honeycutt (LSBA No. 18264)      1126 Wilshire Boulevard

519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Ranier, Gayle & Elliot, LLC**
N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

**McKernan Law Firm**
Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Law Office of Elwood C. Stevens, Jr., a
Professional Law Corporation**
Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Law Office of Frank J. D'Amico, Jr. APLC**
Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.**
Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**Gainsburgh, Benjamin, David, Meunier &
Warshauer, LLC**
Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Robinson, Calcagnie & Robinson, Inc.**
Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

## <u>CERTIFICATE OF SERVICE</u>

I, Pierce O'Donnell, hereby certify that on April 23, 2009, I caused to be served

**PLAINTIFFS' MEMORANDUM TO PREVENT DEFENDANT FROM SEEKING TO**

**PROVE THAT THE LPV STRUCTURES WERE NOT PROPERLY DESIGNED AND**

**STRUCTED AND DID NOT PERFORM AS EXPECTED**, upon Defendants' counsel, Robin

D. Smith, George Carter, Keith Liddle, and Richard Stone by ECF and email at

robin.doyle.smith@usdoj.gov; george.carter@usdoj.gov, keith.liddle@usdoj.gov, and

richard.stone@usdoj.gov.

<u>/s/ Pierce O'Donnell</u>