**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re : KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____§ | | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, Robinson, No. 06-2268 | § | |
| _____§ | | |

**UNITED STATES OF AMERICA'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR**
**ORDER TO SHOW CAUSE WHY PLAINTIFFS' ATTORNEYS**
**<u>KEA SHERMAN AND JONATHAN B. ANDRY SHOULD NOT BE DISQUALIFIED</u>**

Within the last few days, the United States has become aware of a potential conflict of interest by one of the attorneys for Plaintiffs, Kea Sherman. On Thursday, April 23, 2009, undersigned counsel began investigating this potential conflict by reviewing documents and correspondence. That same day, undersigned counsel contacted the United States Department of Justice's Professional Responsibility Advisory Office to seek guidance concerning the rights and obligations of the United States and its attorneys with respect to this potential conflict. Earlier today, April 28, 2009, that office authorized the filing of this motion.

Our preliminary investigation has revealed that Ms. Sherman previously represented Jefferson Parish in this case, as well as in substantially related cases that are part of the Katrina Canal Breaches Consolidated Litigation. Additionally, the United States and Jefferson Parish are parties to a joint defense agreement, pursuant to which Ms. Sherman participated in at least one meeting where counsel for various defendants prepared a jointly-retained expert witness for his

1

deposition the next day. Ms. Sherman's representation of Plaintiffs, coming on the heels of her representation of a party engaged in a joint defense with the United States, appears to constitute a violation of the Louisiana Rules of Professional Conduct which would appear to require her disqualification in this matter. Moreover, under the applicable rules of professional conduct, Ms. Sherman's conflict is imputed to her firm, the Andry Law Firm. Disqualification of Jonathan B. Andry, also a member of that firm, would appear to be required as well.[1]

While sensitive to the fact that raising this issue now may delay resolution of this matter, undersigned counsel believe they have an ethical obligation to apprise the Court of Ms. Sherman's potential conflict of interest as soon as reasonably possible. *See In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976) ("When an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention.").

## BACKGROUND

Plaintiffs commenced this action, *Robinson v. United States*, in 2006. In July 2007, the United States entered into a Joint Defense and Cost Share Agreement ("JDA") with several of the defendants in various of the Hurricane Katrina cases, including Jefferson Parish. *See* App. at 1-27.[2]

---

[1] The United States is concerned that Ms. Sherman's conflicts of interest might also require the disqualification of Plaintiffs' other attorneys, as well. The United States reserves its right to seek an order to show cause why Plaintiffs' other attorneys should not be disqualified should further legal and factual research demonstrate that such a remedy is required to protect its rights.

[2] Pages 1-14 of the Appendix constitute a legible copy of the JDA; pages 15-27, while not as clear, contain the fully executed signature page, *see* App. at 26.

The JDA was "intended to govern the . . . parties['] conduct in the Litigation, each of the consolidated cases and any case otherwise governed by Case Management and Scheduling Order No. 4 issued in the Litigation on March 1, 2007." *Id.* at 1.[3] The parties to the JDA agreed "to share and exchange among themselves . . . witness statements and interview summaries, memorandum of law, debriefing memoranda, factual summaries, transcript digests, documents, legal strategies, intelligence, confidences, and other secrets." *Id.* at 3. They further agreed that "[a]ny communications or Protected Information shared between the parties [would be] within the 'joint defense privilege' and are, therefore, confidential and protected from disclosure to any third party by the attorney-client privilege and the work product doctrine, and/or any other applicable privilege." *Id.* Finally, the parties noted that "[c]ounsel of their respective clients expect[ed] that the communications and Protected Information exchanged pursuant to this Agreement w[ould] remain confidential and agree[d] that, but for this expectation, no exchange would [have taken] place." *Id.*

Pursuant to the JDA, Ms. Sherman, as counsel for Jefferson Parish, participated in at least one meeting with counsel for other defendants in the various Hurricane Katrina cases, where counsel prepared a jointly retained expert witness for his deposition the next day. *Id.* at 28.

Ms. Sherman also made several appearances at depositions on behalf of Jefferson Parish. *See, e.g., id.* at 29-42, 44-61, 64-69, 71-82. Most of these depositions were noticed only in the *Robinson* case. *See, e.g.*, *id.* at 31-38, 41-42, 44-47, 50-53, 56-61, 66-69, 71-76, 81-82.

---

[3] The JDA defines "Litigation" as "the action styled *In Re Katrina Canal Breaches Consolidated Litigation (Levee)*, which is pending in the United States District Court for the Eastern District of Louisiana as Civil Action No. 05-4182" and "various actions pending in the courts of the States of Louisiana seeking similar relief."

3

Subsequent to her work for Jefferson Parish, Ms. Sherman began working with the Andry Law Firm.  (Jonathan B. Andry, of course, is one of Plaintiffs' lead lawyers.)  Ms. Sherman attended several depositions in this case as an attorney with Mr. Andry's firm, representing Plaintiffs.  *See, e.g., id.* at 43, 62-63, 70.[4]

Also in furtherance of her representation of Plaintiffs, Ms. Sherman has been copied on several emails sent by other Plaintiffs' counsel, including Mr. Andry and Joseph M. Bruno, another of Plaintiffs' lead attorneys.  *See, e.g.*, *id.* at 88-91.

Finally, Ms. Sherman's association with the Andry Law Firm is demonstrated by a complaint recently filed by the Andry Law Firm in the United States District Court for the District of Nevada.  On the first page of that complaint, both Mr. Andry and Ms. Sherman are listed above the heading, "The Andry Law Firm."  *See id.* at 92.

## ARGUMENT

Pursuant to Rule 1.9 of the Louisiana Rules of Professional Conduct, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  La. R. Prof. Conduct 1.9(a).  That rule also provides that a lawyer "who has formerly represented a client in a matter . . . shall not thereafter . . . (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or

---

[4]  Indeed, Ms. Sherman attended the deposition of one witness on behalf of Jefferson Parish, and later attended a subsequent deposition of that same witness *on behalf of Plaintiffs*.  *Compare id.* at 41-42 (deposition of John W. Day on Nov. 19, 2007, where Ms. Sherman represented Jefferson Parish) *with id.* at 43 (deposition of John W. Day on January 28, 2009, where Ms. Sherman represented Plaintiffs).

require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client." La. R. Prof. Conduct 1.9(c).  Finally, Rule 1.10 provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." La. R. Prof. Conduct 1.10(a).

Consistent with these rules, Louisiana courts respect the "inherent attribute" of the legal profession that "an attorney may not represent different interests which are hostile, or in conflict with one another." *Brasseaux v. Girouard*, 214 So. 2d 401, 404 (La. Ct. App. 1968).  "When in violation of this principle . . . an attorney does represent conflicting interests[,] the court in which the proceeding is pending should, upon timely motion by former client who objects to such possible violation of his confidence, disqualify counsel from continuing with the conflicting representation of the subsequent client." *Id.* at 405.  To establish the need for disqualification, "the former client need prove only that matters embraced within the present suit are substantially related to the matters or cause of action wherein the attorney previously represented him." *Id.* at 406.  In such situations, "courts may then infer the receipt of confidences violatable by the subsequent representation." *Id.*  Finally, "[a]n entire law firm is subject to disqualification whenever grounds for disqualification exist against any of its partners or law associates." *Id.* at 407; *accord Tristem, Ltd. v. City of New Orleans*, No. Civ.A. 03-2882, 2003 WL 22852214, at *2 (E.D. La. Nov. 26, 2003).

Ms. Sherman's conflict of interest could not be more clear.  In this *very* case—*Robinson v. United States*—Ms. Sherman has represented both Plaintiffs and Jefferson Parish, with whom the United States was a party to the JDA.  Moreover, in substantially related cases also under the *In re Katrina* umbrella, Ms. Sherman has previously represented Jefferson Parish, at both depositions and in meetings with other defense counsel, and Plaintiffs, as demonstrated not only by her appearances at depositions, but also by the emails sent by Plaintiffs' lead counsel, Messrs. Andry and Bruno, which show her involvement in the internal workings associated with the preparation of Plaintiffs' case.  The invisible boundary between Ms. Sherman's work for a defendant and Plaintiffs requires her immediate disqualification under Rule 1.9.  Her subsequent work at the Andry Law Firm requires the disqualification of Jonathan B. Andry pursuant to Rule 1.10.

The United States, of course, has no way of knowing what confidences, secrets, or strategies that it might have shared with other parties to the JDA were subsequently shared with Plaintiffs' counsel.  Unfortunately, therefore, the only appropriate remedy for the conduct of Ms. Sherman and Mr. Andry would appear to be disqualification.  Further, the Court should hold an immediate hearing to determine the full extent of the ethical violations by Plaintiffs' counsel, including whether Ms. Sherman's interactions with them would require their disqualification, and to determine whether any additional relief is required to protect the rights of the United States and the sanctity of the judicial process.

## **CONCLUSION**

The Court should enter an order to show cause why Plaintiffs' attorneys Kea Sherman

and Jonathon B. Andry should not be disqualified, and provide further relief as the Court deems just.

        Respectfully submitted,

        MICHAEL F. HERTZ
        Deputy Assistant Attorney General

        PHYLLIS J. PYLES
        Director, Torts Branch

        JAMES G. TOUHEY, JR
        Assistant Director, Torts Branch

        s/ Jeffrey P. Ehrlich
        JEFFREY P. EHRLICH
        Trial Attorney
        ROBIN SMITH
        Senior Trial Counsel
        Civil Division, Torts Branch
        U.S. Department of Justice
        Benjamin Franklin Station, P.O. Box 888
        Washington, D.C.  20044
        (202) 353-2574 / (202) 616-5200 (Fax)

        Attorneys for the United States of America