# APPENDIX

## JOINT DEFENSE AND COST SHARE AGREEMENT

This Joint Defense and Cost Share Agreement ("Agreement") is entered into by and among: **United States of America (United States), Board of Commissioners of the Orleans Parish Levee District, Sewerage and Water Board of New Orleans, Board of Commissioners of the East Jefferson Levee District, State of Louisiana (Department of Transportation and Development), The Parish of Jefferson, and Board of Commissioners for the Port of New Orleans**, acting through and upon the advice of their respective counsel, in order to facilitate a common defense in the action styled *In Re Katrina Canal Breaches Consolidated Litigation (Levee)*, which is pending in the United States District Court for the Eastern District of Louisiana as Civil Action No. 05-4182 (the "Federal Litigation"), and various actions pending in the courts of the State of Louisiana seeking similar relief (the "State Litigation") (collectively referred to as "the Litigation").

The parties to this Agreement have been named defendants in numerous civil actions consolidated in certain respects within the Litigation. The terms of this Agreement are intended to govern the undersigned parties conduct in the Litigation, each of the consolidated cases and any case otherwise governed by Case Management and Scheduling Order No. 4 issued in the Litigation on March 1, 2007 and any amendments or modifications thereto (hereinafter, "CMO No. 4") issued in connection with the Federal Litigation and case management orders that may be issued in the State Litigation. Additional civil actions that are filed after the execution of this Agreement may be added to this Agreement without the necessity of an Amendment to this Agreement. Unless otherwise indicated, references in this Agreement to the Litigation shall include all cases governed by CMO No. 4, and the cases identified in Exhibit "A" attached hereto.

The United States District Court for the Eastern District of Louisiana has issued CMO No. 4 in the Federal Litigation, which limits the number of fact and expert witnesses whom the parties may offer in the class certification phase of the Litigation, thereby necessitating coordination and collaboration of expert testimony by the defendants to the Federal Litigation. The parties to this Agreement recognize that the outcome of the Federal Litigation may influence or impact the State Litigation, and vice versa, such that it is in their interest to coordinate a joint approach as to the Litigation. The purpose of this Agreement is to address the joint retention of experts in connection with the class certification phase of the Litigation by, between, and among the parties to this Agreement and their counsel in the course of and in furtherance of a joint defense in the Litigation. Nothing herein shall be deemed to modify, change, or alter the terms of any protective order that may be entered in the Litigation.

THEREFORE, the parties to this Agreement and their counsel wish to (1) formalize in writing their joint defense agreement with respect to the joint retention of experts in connection with the class certification phase of the Litigation, in order to avoid any suggestion of waiver of any applicable privileges, including but not limited to, the attorney-client privilege, investigative privilege, and the work product doctrine, and (2) confirm their agreement to share certain costs associated with the joint retention of experts in the class certification phase of the Litigation. This Agreement is intended to confirm and memorialize the joint defense privilege that exists by operation of law, and is not in any way intended to limit the scope and applicability of such joint defense privilege, except as expressly set forth herein.

[ 3 ]

Accordingly, the parties to this Agreement and their respective counsel agree as follows:

1. Counsel and their respective clients agree to share and exchange among themselves, as each counsel deems appropriate given the unique circumstances and concerns of each party, witness statements and interview summaries, memoranda of law, debriefing memoranda, factual summaries, transcript digests, documents, legal strategies, intelligence, confidences, and other secrets (hereinafter the "Protected Information") for the limited and restricted purpose of assisting counsel in protecting the rights and interests of their respective clients. The sharing and/or dissemination of Protected Information shall not be deemed to be a waiver of attorney-client, work product or other privileges otherwise applicable thereto.

2. Any communications or Protected Information shared between or among the parties is within the "joint defense privilege" and are, therefore, confidential and protected from disclosure to any third party by the attorney-client privilege and the work product doctrine, and/or any other applicable privilege.

3. Counsel of their respective clients expect that the communications and Protected Information exchanged pursuant to this Agreement will remain confidential and agree that, but for this expectation, no exchange would take place.

4. Counsel and their respective clients agree to mark all Protected Information exchanged pursuant to this Agreement:   PRIVILEGED AND CONFIDENTIAL PURSUANT TO JOINT DEFENSE AGREEMENT.

5. The parties recognize and agree that facts and other information which are not otherwise privileged from disclosure shall not gain any privilege simply because such

facts and other information may be shared in a joint defense communication. Notwithstanding, the joint defense privilege described herein shall protect the following from disclosure: (a) the fact that particular communications or Protected Information have been shared among parties to this Agreement; (b) the information or Protected Information shared; and (c) any part of memoranda or other work-product containing or referring to such communications or Protected Information.

6. Counsel for the parties to this Agreement may jointly request the assistance of an expert retained by a single party, to collect or analyze information for the purpose of developing or supporting a common legal defense or for the purpose of preparing expert testimony in the class certification phase of the Litigation. Such an expert shall be referred to herein as a "Joint Expert." For each Joint Expert, the party who originally retained the expert shall be referred to as the "Original Retaining Party."

7. For each Joint Expert, the Original Retaining Party shall obtain a signed Acknowledgement, as set out in Exhibit "B" attached hereto, from the Joint Expert expressly agreeing that the Joint Expert shall abide by the terms of this Agreement prior to any party's disclosure to the Joint Expert of any protected information.

8. All documents or information transmitted to any Joint Expert, as well as any work product generated by a Joint Expert in any form whatsoever, shall be subject to the access, use and disposal provisions of this Agreement; provided, however, that access shall be limited to parties to this Agreement, unless all such parties decide to permit disclosure to other parties who are not parties to this Agreement. If disclosure is made to other parties who are not parties to this Agreement, such disclosure shall be governed by the terms of this Agreement.

9.  Each Joint Expert shall publish or disseminate information furnished to him/her only at, or in aid of, trial or deposition testimony in the Litigation or as expressly authorized in advance in writing by the originating party or parties whose information formed the basis of the Joint Expert's work product or opinion. Furthermore, no Joint Expert shall publish or disseminate any theories, opinions or conclusions based upon information covered by this Agreement or his/her work in the Litigation, in any way other than at, or in aid of, trial or deposition testimony in the Litigation, without advance written approval of the parties to this Agreement. Approval may only be granted, however, after the termination of the Litigation in accordance with paragraph 15 below. Nothing herein is intended to diminish or waive the right of any party to refer to, publish or otherwise disseminate those theories, opinions or conclusions that are exchanged with or produced to plaintiffs' counsel in the Litigation or otherwise made a part of the Court public record of the Litigation.

10. In consideration of the services rendered to the parties, all parties agree to share on a pro-rata basis the costs and expert fees incurred by the Original Retaining Party in obtaining the services of a Joint Expert. The parties agree that each Original Retaining Party will obtain from each Joint Expert an Estimated Budget for the services and expenses that the Joint Expert estimates in good faith to reflect that expert's anticipated charges for services to be rendered in connection with the expert's retention. Within thirty (30) days of receipt of all of the budgets from the retained Joint Experts, the Board of Commissioners of the Orleans Parish Levee District, Sewerage and Water Board of New Orleans, Board of Commissioners of the East Jefferson Levee District and the Board of Commissioners for the Port of New Orleans (Contributing Parties) agree to pay their

pro-rata share of 50% of the combined total of the Estimated Budgets for each of the Joint Experts into an interest bearing bank account at Capital One, N.A., 3050 Severn Avenue, Metairie, Louisiana (the "Account"). The Account will be opened and maintained with each Contributing Party designating an authorized signatory to the Account. Thereafter, the Joint Expert will bill the Original Retaining Party who, after reasonable advance written notice to all parties, shall ensure that the charges for the expenses and services are in order, and the Original Retaining Party shall cause Contributing Parties' pro-rata shares of such bill to be paid from the Account. The United States, the State of Louisiana and the Parish of Jefferson (Non-Contributing Parties) shall contemporaneously receive a complete copy of the expert's bill from the Original Retaining Party, and each Non-Contributing Party shall ensure that their individual pro-rata shares of the expert's bill are paid directly to the expert within thirty (30) days of receipt of said bill. When the funds in the Contributing Parties' Account fall below $50,000, the Contributing Parties agree that they will each pay an additional pro-rata amount into the Account in an amount to be determined after discussion by the Contributing Parties. At the conclusion of the class certification proceedings, any money remaining in the account shall be distributed in a pro-rata amount to each of the Contributing Parties who have participated in the Account.

11. The parties and their respective counsel agree that this Agreement and the parties' decision to share the services of a Joint Expert do not disqualify any Joint Expert from subsequently consulting and/or testifying on behalf of the Original Retaining Party in any other phase of the Litigation. The parties and their counsel hereby expressly waive any right they may have in the Litigation to seek the disqualification of any Joint Expert

6

[6]

based on the Joint Expert's prior receipt of Protected Information and/or the Joint Expert's prior participation in the common legal defense of the class certification motion. The parties to this Agreement also expressly agree not to seek such disqualification under any applicable statute or code, whether existing or proposed, under any formal or informal rule of court, or under any state or federal common law rule, and/or the jurisprudence concerning expert witnesses, confidential information and conflicts of interest under the federal common law, including the "substantially related" test. Nothing in this paragraph is intended to restrict or limit the right of any party hereto to seek disqualification of any expert pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 504 U.S. 579 (1993), *Kummo Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and/or their progeny.

12. In the event that testimony of a Joint Expert is offered at trial by that expert's Original Retaining Party, the parties agree and stipulate that the Joint Expert may use the Original Retaining Party's Protected Information but may not use Protected Information from another party received pursuant to this Agreement absent written consent from that party. Moreover, in the event that testimony of a Joint Expert is offered at trial by that expert's Original Retaining Party, the parties agree and stipulate that they shall not make any reference to the prior joint retention of the Joint Expert by the parties hereto at trial, and the parties hereto expressly waive their right to cross examine the Joint Expert concerning the existence of this Agreement, including the fact that such Joint Expert has been or may have been privy to Protected Information, including attorney work product and/or other privileged communications pursuant to this Agreement.

13. The parties to this Agreement acknowledge that, while the parties have common interests, some rights, claims and defenses available to one party may not be available to

all. Except as to the waiver of the right to seek disqualification of a Joint Expert and counsel, based on the Joint Expert's prior receipt of Protected Information and/or the Joint Expert's prior participation in the common legal defense of the class certification motion, each party reserves all rights to assert any and all rights, claims and defenses available to that party with respect to this matter; provided, however, that a party asserting such rights, claims and defenses may not assert or rely on Protected Information obtained from another party pursuant to this Agreement as a basis for such rights, claims and defenses. The waiver of the right to seek disqualification of a Joint Expert and counsel, as set out expressly herein in paragraph 11, is effective regardless of whether any party develops or pursues adverse interests against any other party in the Litigation. Except as to the waiver of the right to seek disqualification of a Joint Expert and counsel, as set out expressly herein in paragraph 11, this Agreement shall not be deemed a waiver of any claim, or defense available to any party, nor a waiver of any right, claim, or defense any party may have against any other party; provided that a party asserting such rights, claims and defenses may not rely on Protected Information received from another party to this Agreement.

14. Except as otherwise agreed in writing by the Originating Party or parties, or as otherwise provided by any protective order and by this Agreement, none of the Protected Information obtained by any party pursuant to this Agreement shall be disclosed to any person outside the scope of this Agreement. Any party receiving a subpoena, discovery demand, or request for any document or information received from another party or jointly created by parties pursuant to this Agreement shall assert all privileges available with respect to such documents or information in order to protect fully each party's

attorney-client, work product, or other applicable privilege claims and shall expeditiously notify the originating party or parties and cooperate fully with them in any judicial or other proceeding relating to the disclosure of such documents or information.

15. To the extent that any party is dismissed with prejudice from the Litigation, that party shall thereafter (1) be denied access to Protected Information and (2) have no further financial responsibility for the services of the Joint Expert, but (3) shall continue to be bound by the Agreement to the extent that it had prior access to other Protected Information covered by this Agreement. All Protected Information received from other parties pursuant to this Agreement (including all copies, summaries, or excerpts thereof) shall be returned to the attorney or client-signatory who furnished them within ninety (90) days after the dismissal with prejudice is entered. At such originating party's option, a written statement by counsel for a party who has possession of an originating party's Protected Information may instead be supplied to the originating party, certifying that all such Protected Information and all copies, regardless of the format thereof, have been destroyed. Counsel for any party that is dismissed with prejudice from the Litigation shall also thereafter be denied access to Protected Information, unless such counsel is then or thereafter becomes counsel for another party that has not been dismissed from the Litigation. In any case, counsel for any party that is dismissed from the Litigation shall continue to be bound by this Agreement to the extent that counsel had prior access to Protected Information.

16. The obligations of the parties and their counsel not to disclose Protected Information, except in accordance with this Agreement, shall not be affected by the removal or replacement of counsel for any party.

17. Notwithstanding any legal presumption or other legal authority to the contrary, the parties do not intend for this Agreement to be construed so as to result in individual counsel for any party to be deemed or regarded as counsel for any other party or parties, and each party expressly acknowledges that it is not a client of counsel it has not formally retained in this matter, that no confidential or fiduciary relationship exists between it and counsel for any other party, and that counsel for any other party owes it no duties other than those expressly set out in this Agreement or in any other agreement in writing that may be made in the future. This paragraph shall not apply to any counsel who formally represents more than one party in this proceeding to the extent of such dual or multiple formal representations.

18. The Agreement shall not create third-party beneficiary status in any person or entity not a party to this Agreement.

19. It is expressly understood that nothing contained in this Agreement shall limit the right of any party to this Agreement to disclose to third parties any documents or information independently possessed or generated by that party or obtained from sources other than pursuant to this Agreement. Nor shall anything contained in this Agreement create an affirmative obligation on the part of any party to share such information or documents with other parties to this Agreement.

20. Any conflict of interest arising out of the sharing of Protected Information under this agreement is waived. Each party and its counsel expressly waive any right to seek the disqualification of counsel for any other party or parties to this Agreement in the Litigation or in any substantially related future litigation, on the grounds that such attorney has received Protected Information shared under this Agreement. The parties to

this Agreement expressly agree not to seek such disqualification of an attorney under any applicable statute or code, whether existing or proposed, under any formal or informal rule of court, or under any state or federal common law rule, including, but not limited to, the Louisiana Rules of Professional Conduct, and the jurisprudence concerning confidential information and conflicts of interest under the federal common law, including the "substantially related" test.

21. To the extent the parties to this Agreement have already been in communication with one another regarding the Litigation, all such communications and work-product are subject to this Agreement.

22. The terms of this Agreement shall remain in effect until the Litigation, including all appeals, is terminated and/or the applicable requirements of paragraph 15 have been satisfied. For purposes of this Agreement, the Litigation is terminated when a final judgment or order terminating the Litigation as to all parties has been entered and either (i) the time to appeal that judgment or order has expired without an appeal or (ii) if the judgment or order was appealed, there has been a final determination of the appeal as to all parties and a final termination of all proceedings resulting from the appeal.

23. Nothing in this Agreement shall establish any agency, joint venture, partnership or similar relationship among or between any of the parties to this Agreement.

24. All parties to this Agreement represent that they have authority to bind their respective clients to this Agreement.

25. The undersigned parties agree that they may seek an injunction to enforce this Agreement.

26. It is understood and agreed that this Agreement may be executed in multiple identical counterparts, each of which shall be deemed an original for all purposes.

Executed on the dates shown below, but effective as of the date of the initial filing of the Litigation.

| Signature | Date |
|---|---|
| On Behalf of the United States of America (United States) | 7/20/07 |
| On Behalf of Board of Commissioners of the Orleans Parish Levee District | 7/20/07 |
| On Behalf of Sewerage and Water Board of New Orleans | (Date) |
| On Behalf of Board of Commissioners of the East Jefferson Levee District | (Date) |
| On Behalf of The State of Louisiana (Department of Transportation and Development) | 7/9/07 |
| On Behalf of The Parish of Jefferson | (Date) |
| On Behalf of Board of Commissioners for the Port of New Orleans | (Date) |

12

[12]

[13]

# EXHIBIT A

## PENDING CASES SUBJECT TO THE AGREEMENT

1. *Christine Baudot*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9718;

2. *Gaye T. Bennett*, 24th Judicial District Court for the Parish of Jefferson, State of Louisiana; Docket No.: 635-594; c/w No.: 624-894;

3. *Benjamin Brubbacher*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9775;

4. *Gwendolyn Diggs*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9753;

5. *Karen Green*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9803;

6. *Harvey/Laurendine*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 2005-11660;

7. *In Re Katrina Canal Breaches Consolidated Litigation (Levee)*; United States District Court for the Eastern District, State of Louisiana; Civil Action No.: 05-4182;

8. *Yvonne Metters*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9796;

9. *New Investment, LLC*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-8203;

10. *Judy Paul*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 07-0993;

11. *Ray Rieth*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9744;

12. *Audrey Robinson*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9726;

13. *Lisa Rodriguez*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-9763; and

14. *West End Tennis and Fitness Club, Inc.*, Civil District Court for the Parish of Orleans, State of Louisiana; Docket No.: 06-13668.

[14]

## EXHIBIT B

## ACKNOWLEDGEMENT

I hereby agree that I have read, understand and shall abide by the terms of the Joint Defense and Cost Share Agreement executed by certain defendants in the Federal Litigation and State Litigation referenced therein in consideration of my retention and participation in said litigation.

Date: _____

Signature: _____

JOINT DEFENSE AND COST SHARE AGREEMENT

This Joint Defense and Cost Share Agreement ("Agreement") is entered into by and among United States of America (United States), Board of Commissioners of the Orleans Parish Levee District, Sewerage and Water Board of New Orleans, Board of Commissioners of the East Jefferson Levee District, State of Louisiana (Department of Transportation and Development), The Parish of Jefferson, and Board of Commissioners for the Port of New Orleans, acting through and upon the advice of their respective counsel, in order to facilitate a common defense in the action styled *In Re Katrina Canal Breaches Consolidated Litigation (Levee)*, which is pending in the United States District Court for the Eastern District of Louisiana as Civil Action No. 05-4182 (the "Federal Litigation"), and various actions pending in the courts of the State of Louisiana seeking similar relief (the "State Litigation") (collectively referred to as "the Litigation").

The parties to this Agreement have been named defendants in numerous civil actions consolidated in certain respects within the Litigation. The terms of this Agreement are intended to govern the undersigned parties conduct in the Litigation, each of the consolidated cases and any case otherwise governed by Case Management and Scheduling Order No. 4 issued in the Litigation on March 1, 2007 and any amendments or modifications thereto (hereinafter, "CMO No. 4") issued in connection with the Federal Litigation and case management orders that may be issued in the State Litigation. Additional civil actions that are filed after the execution of this Agreement may be added to this Agreement without the necessity of an Amendment to this Agreement. Unless otherwise indicated, references in this Agreement to the Litigation shall include all cases governed by CMO No. 4, and the cases identified in Exhibit "A" attached hereto.

1

[15]

The United States District Court for the Eastern District of Louisiana has issued CMO No. 4 in the Federal Litigation, which limits the number of fact and expert witnesses whom the parties may offer in the class certification phase of the Litigation, thereby necessitating coordination and collaboration of expert testimony by the defendants to the Federal Litigation. The parties to this Agreement recognize that the outcome of the Federal Litigation may influence or impact the State Litigation, and vice versa, such that it is in their interest to coordinate a joint approach as to the Litigation. The purpose of this Agreement is to address the joint retention of experts in connection with the class certification phase of the Litigation by, between, and among the parties to this Agreement and their counsel in the course of and in furtherance of a joint defense in the Litigation. Nothing herein shall be deemed to modify, change, or alter the terms of any protective order that may be entered in the Litigation.

THEREFORE, the parties to this Agreement and their counsel wish to (1) formalize in writing their joint defense agreement with respect to the joint retention of experts in connection with the class certification phase of the Litigation, in order to avoid any suggestion of waiver of any applicable privileges, including but not limited to, the attorney-client privilege, investigative privilege, and the work product doctrine, and (2) confirm their agreement to share certain costs associated with the joint retention of experts in the class certification phase of the Litigation. This Agreement is intended to confirm and memorialize the joint defense privilege that exists by operation of law, and is not in any way intended to limit the scope and applicability of such joint defense privilege, except as expressly set forth herein.

2

Accordingly, the parties to this Agreement and their respective counsel agree as follows:

1.  Counsel and their respective clients agree to share and exchange among themselves, as each counsel deems appropriate given the unique circumstances and concerns of each party, witness statements and interview summaries, memoranda of law, debriefing memoranda, factual summaries, transcript digests, documents, legal strategies, intelligence, confidences, and other secrets (hereinafter the "Protected Information") for the limited and restricted purpose of assisting counsel in protecting the rights and interests of their respective clients. The sharing and/or dissemination of Protected Information shall not be deemed to be a waiver of attorney-client, work product or other privileges otherwise applicable thereto.

2.  Any communications or Protected Information shared between or among the parties is within the "joint defense privilege" and are, therefore, confidential and protected from disclosure to any third party by the attorney-client privilege and the work product doctrine, and/or any other applicable privilege.

3.  Counsel of their respective clients expect that the communications and Protected Information exchanged pursuant to this Agreement will remain confidential and agree that, but for this expectation, no exchange would take place.

4.  Counsel and their respective clients agree to mark all Protected Information exchanged pursuant to this Agreement: PRIVILEGED AND CONFIDENTIAL PURSUANT TO JOINT DEFENSE AGREEMENT.

5.  The parties recognize and agree that facts and other information which are not otherwise privileged from disclosure shall not gain any privilege simply because such

facts and other information may be shared in a joint defense communication. Notwithstanding, the joint defense privilege described herein shall protect the following from disclosure: (a) the fact that particular communications or Protected Information have been shared among parties to this Agreement; (b) the information or Protected Information shared; and (c) any part of memoranda or other work product containing or referring to such communications or Protected Information.

6. Counsel for the parties to this Agreement may jointly request the assistance of an expert retained by a single party, to collect or analyze information for the purpose of developing or supporting a common legal defense or for the purpose of preparing expert testimony in the class certification phase of the Litigation. Such an expert shall be referred to herein as a "Joint Expert." For each Joint Expert, the party who originally retained the expert shall be referred to as the "Original Retaining Party."

7. For each Joint Expert, the Original Retaining Party shall obtain a signed Acknowledgement, as set out in Exhibit "B" attached hereto, from the Joint Expert expressly agreeing that the Joint Expert shall abide by the terms of this Agreement prior to any party's disclosure to the Joint Expert of any protected information.

8. All documents or information transmitted to any Joint Expert, as well as any work product generated by a Joint Expert in any form whatsoever, shall be subject to the access, use and disposal provisions of this Agreement; provided, however, that access shall be limited to parties to this Agreement, unless all such parties decide to permit disclosure to other parties who are not parties to this Agreement. If disclosure is made to other parties who are not parties to this Agreement, such disclosure shall be governed by the terms of this Agreement.

4

[18]