UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | No. 05-4182 |
| FILED IN:  05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346, 06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289. | SECTION "K"(2)  JUDGE DUVAL  MAG. WILKINSON |

PERTAINS TO: LEVEE AND MRGO

**POST-HEARING MEMORANDUM OF
OBJECTING CLASS MEMBERS MARY BRINKMEYER,
MICHELLE LeBLANC, AND THOMAS C. STUART**

Objectors Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart submit this

Memorandum pursuant to the briefing schedule established at the conclusion of the class certification

and fairness hearings on April 2, 2009.  *See* Doc. 18620.  As explained in detail below, the Court

should not certify a mandatory settlement class or approve the proposed settlement agreement

because 1) the proponents of the settlement have failed to show that the defendant levee districts

have made the maximum possible contribution to the fund; 2) certifying a mandatory settlement class

in a mass tort case violates the Due Process Clause; 3) the settlement does not benefit the class; 4) the content of the notice was deficient; and 5) the proposed settlement agreement allows counsel to seek an enhancement of any award of costs and expenses.

In denying certification of a mandatory settlement class and disapproving the proposed settlement, the Court should consider suggesting to the settling parties that they refashion the proposal as a Rule 23(b)(3) settlement, providing class members a right to opt out.  Even if the Court decides that a mass tort action can be resolved through a non-opt-out limited fund settlement under Rule 23(b)(1)(B), the Court should require the levee districts to contribute to the fund and prove that their contribution is the maximum that they can provide.  The Court should also order that no cost enhancement be requested and that none will be awarded.

## ARGUMENT

**I.     The Class Should Not Be Certified Or The Settlement Approved Under Rule 23(b)(1)(B) Because The Settling Parties Have Failed To Show That The Levee Districts Have Made Their Maximum Possible Contribution To The Fund.**

The settling parties urge the Court to certify a mandatory settlement class on a limited fund theory under Federal Rule of Civil Procedure 23(b)(1)(B) and to approve a settlement that would release the defendant levee districts and their insurer in exchange for the value of available liability insurance policies.  The Court should decline to certify the class or approve the settlement because the proponents of the settlement have failed to show that the defendant levee districts have made the maximum possible contribution to the settlement fund.

In *Ortiz v. Fibreboard Corp.*, the Supreme Court explained that the proponents of a limited fund class action must show "that the totals of the aggregated liquidated claims and the fund available for satisfying them, *set definitely at their maximums*, demonstrate the inadequacy of the

fund to pay all the claims."  527 U.S. 815, 838 (1999) (emphasis added); *see also id.* at 863 ("[A] limited fund rationale for mandatory class treatment of a settlement-only action requires assurance that claimants are receiving the maximum fund[.]").  The proponents of the settlement assert that the insurance proceeds constitute the maximum funds available because the levee districts' assets are immune from seizure to satisfy any judgment that the class might obtain.  *See* La. Const. Art. XII, § 10(C); La. R.S. 13:5109(B)(2).  Although the settling parties are correct that the levee districts' assets cannot be seized under Louisiana law, that fact does not establish that the levee districts' maximum possible contribution to the settlement fund is zero.   To the contrary, the levee districts are authorized by law to appropriate funds for the purpose of satisfying judgments or making payments as part of a compromise agreement.  La. R.S. 13:5109(B)(2).  Indeed, documents admitted in evidence at the certification/fairness hearing demonstrate that the levee districts have routinely appropriated significant funds for such purposes.  *See* Exhibit Nos. 88, 89, & 90.

    At the certification/fairness hearing, Timothy P. Doody testified that the levee districts do not intend to appropriate funds beyond the limits of the insurance policies to pay any judgments that class members may obtain against them.  Mr. Doody's testimony is insufficient to establish that the levee districts' maximum possible contribution to the settlement fund is zero.  First, Mr. Doody's testimony is nothing more than speculation about what the levee districts may or may not do in the future.  Whether to appropriate funds to satisfy judgments or contribute to a settlement fund is a political decision that must be made by each levee district's board of commissioners.  *See* La. R.S. 38:306.  Second, Mr. Doody's testimony that the levee districts cannot pay extraordinary damages without impeding their flood control obligations does not establish that a Rule 23(b)(1)(B)

certification is proper here.  A limited fund is not established by a defendant's desire not to pay more than a set amount in damages, but where the available amount is limited as a matter of fact.

The levee districts' argument mirrors the argument rejected by the Supreme Court in *Ortiz*. There, the Supreme Court held that a limited fund cannot be certified absent a searching inquiry into the "upper limit of the fund itself," 527 U.S. at 850, and noted that where a defendant retains "nearly all its net worth, it hardly appears that such a regime is the best that can be provided for class members." *Id.* at 860.  Like the settling parties' agreement about the size of the fund in *Ortiz*, Mr. Doody's testimony here is insufficient to establish the "upper limit" of what the levee districts can pay because he did not testify as to what that limit is.  As explained in *Ortiz*, without factual findings as to the total net worth of the levee districts and the maximum contribution that they could make to a settlement fund, a limited fund class action cannot be certified.  *Id*. at 849.

The settling parties' theory is essentially that a non-opt-out Rule 23(b)(1)(B) settlement is permissible here because a settlement fund larger than the offered amount could impede the levee districts' ability to protect the citizens of New Orleans and the surrounding regions from future catastrophic flooding.  Even assuming that a limited fund settlement can be approved on that basis, the settling parties have not shown—nor have they even attempted to show—that *any* appropriation in *any* amount would have such an effect.  To the contrary, Mr. Doody testified that the levee districts have substantial assets.  Specifically, he testified that the levee districts had revenue-generating non-flood-control assets at the time of the storm, including an airport, a casino, and marinas; and the settling parties introduced evidence showing that the levee districts maintained first-party flood insurance policies that paid the levee districts for post-Katrina flood damage to their property.  *See, e.g.,* Exhibits 18-40.  Because a limited fund settlement requires the defendants'

maximum contribution, *Ortiz*, 527 U.S. at 849-50, the proposed settlement cannot be approved without evidence demonstrating that $0 is the maximum that the levee districts can pay.

Further, the Court should not certify a mandatory settlement class based on the levee districts' asserted unwillingness to contribute anything more than the limits of their liability insurance policies. Unwillingness to pay has no place in the Rule 23(b)(1)(B) analysis. *See generally Ortiz*. Moreover, allowing a governmental entity whose assets are immune from seizure to force all injured parties into a limited fund settlement every time the aggregate claims of multiple injured parties exceed liability insurance coverage would encourage governmental entities to be under-insured.

## II.    Certifying A Non-Opt-Out Settlement Class In A Mass Tort Suit Would Violate The Due Process Clause.

When, as here, substantial money damages are at stake, certification of a mandatory settlement class would violate the Due Process Clause.  In class actions that seek to bind plaintiffs with respect to claims for money damages, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 & n.3 (1985); *accord Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 395 (1996) (Ginsburg, J., concurring in part and dissenting in part); 3 Newberg on Class Actions § 17.16, at 17-45 (3d ed. 1992) ("[W]hen unliquidated damages are involved, the exclusion right must be afforded as a constitutional matter.").  Because all members of a class have constitutionally-protected property rights in their claims for damages, the right to opt out "implicate[s] the due process 'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not

been made a party by service of process.'" *Ortiz*, 527 U.S. at 846 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).  In *Ortiz*, the Supreme Court further explained the need for providing class members a right to opt out with respect to their individual damages claims:

> The inherent tension between representative suits and the day-in-court ideal is only magnified if applied to damage claims gathered in a mandatory class.  Unlike Rule 23(b)(3) class members, objectors to the collectivism of a mandatory subdivision (b)(1)(B) action have no inherent right to abstain.  The legal rights of absent class members (which in a class like this one would include claimants who by definition may be unidentifiable when the class is certified) are resolved regardless either of their consent, or, in a class with objectors, their express wish to the contrary.  And in settlement-only class actions the procedural protections built into the Rule to protect the rights of absent class members during litigation are never invoked in an adversarial setting. . . . [W]e raised the flag on this issue of due process more than a decade ago in *Phillips Petroleum v. Shutts*. . . . [There] we also saw that before an absent class member's right of action was extinguishable due process required that the member "receive notice plus an opportunity to be heard and participate in the litigation," and we said that "at a minimum . . . an absent plaintiff [must] be provided with an opportunity to remove himself from the class."

*Id.* at 846-48 (citations and footnotes omitted).

Even before the Supreme Court's decision in *Ortiz*, the Fifth Circuit explained that, "[b]ecause it automatically provides the right of notice and opt-out to individuals who do not want their monetary claims decided in a class action, Rule 23(b)(3) is the appropriate means of class certification when monetary relief is the predominant form of relief sought."  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) (affirming denial of class certification under Rule 23(b)(2) because of the predomination of money damages in the case, and under Rule 23(b)(3) because of numerous individual-specific issues relating to damages).  Similarly, in rejecting a proposed "limited fund" certification under Rule 23(b)(1)(B), the Sixth Circuit recognized that the right to opt out is constitutionally guaranteed in cases involving money damages, and explained that "Rule 23(b)(3), with its notice and opt-out provisions, strikes a balance between the value of

aggregating similar claims and the right of an individual to have his or her day in court."  *In re Telectronics Pacing Sys.*, 221 F.3d 870, 881 (6th Cir. 2000).

In *Telectronics*, the court discussed the due process right to opt out as a means of constitutional avoidance: With due process in mind, a proposed Rule 23 certification that "does not include these [notice and opt-out] protections, must be carefully scrutinized and sparingly utilized." *Id.*  Similarly, the Civil Rules Advisory Committee explained that subdivision (b)(3) was drafted to accommodate the compelling due process interests of such class members:

> [T]he interests of the individuals in pursuing their own litigations may be so strong here as to warrant denial of class certification altogether.  Even when a class action is maintained under subdivision (b)(3), this individual interest is respected.  Thus the court is required to direct notice to the members of the class of the right of each member to be excluded from the class upon his request.

39 F.R.D. at 104-05); *see id.* at 107 ("This mandatory [Rule 23(b)(3)] notice . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject.") (*citing, e.g., Hansberry v. Lee*, 311 U.S. 32 (1940)); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-76 (1974) (similar).  As in *Ortiz*, certification of the mandatory class proposed by the settling parties here will undermine the "deep-rooted historic tradition that everyone should have his own day in court." *Ortiz*, 527 U.S. at 846 (*quoting Martin v. Wilks*, 490 U.S. 755, 762 (1989)).  For these reasons, as well, a Rule 23(b)(1)(B) settlement and certification should not be approved.[1]

## III.    The Settlement Should Not Be Approved Because It Does Not Benefit The Class.

A proposed class action settlement can be approved only if "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To meet this standard, a settlement must benefit the class.  As Congress noted when it enacted the Class Action Fairness Act: "Class members often receive little

---

[1]A Rule 23(b)(3) certification would avoid any due process concerns.  *See infra* at 9.

or no benefit from class actions, and are sometimes harmed, such as where—(A) counsel are awarded large fees, while leaving class members with . . . awards of little or no value."  28 U.S.C. § 1711, note (Findings and Purposes at (a)(3)).  In such circumstances, a proposed class action settlement must be rejected.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 221 (D. Me. 2003) ( "[A] settlement is not fair where all the cash goes to expenses and lawyers, and the members receive only discounts of dubious value."); *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 28 (D. Conn. 1997) (disapproving settlement where "there is a strong danger that the settlement will have absolutely no value to the class"); *In re Ford Motor Co. Bronco II Products Liability Litigation*, 1995 WL 222177, *6 (E.D. La. 1995) (rejecting proposed settlement that would release claims "for no or highly speculative consideration" even where "plaintiffs may face serious and significant barriers to recovery").

In this case, the proposed settlement provides some benefit to the lawyers, the levee districts, and the insurance company, but no benefit to class members.  If the settlement is approved, the insurance company will benefit by being relieved of its obligation under the policies to continue to pay defense costs and defense attorney fees.  The levee districts will benefit because they will not risk the political fallout of a finding that they are culpable for the levee breaches and overtoppings. Class counsel, who may have lost interest in prosecuting the case after the dismissal of the Army Corps of Engineers, will be reimbursed for their costs and litigation expenses (and may even seek an enhancement of costs incurred).  But the class members will very likely receive nothing of value from the settlement.  Indeed, class counsel told class members who inquired that "in view of the extraordinary number of claims it is highly unlikely that the Court will make any distribution of these funds directly to claimants."  *See, e.g.,* Exhibit 73 and related testimony of Joseph Michael Bruno.

8

The proponents of the settlement argue that it is fair, adequate, and reasonable because the levee districts' statutory immunity from asset seizure makes it unlikely that class members will collect judgments after the available insurance has been exhausted.  They also argue that in the absence of a limited fund settlement, the insurance proceeds will be claimed by the first parties to obtain judgments, resulting in other parties being shut out.  Neither situation is sufficient to justify a settlement that provides no benefit to class members, particularly without an opt-out right.

First, as explained above, the levee districts are authorized by law to appropriate funds for the purpose of satisfying judgments or making payments as part of a compromise agreement.  La. R.S. 13:5109(B)(2).  Such appropriations are political decisions, and obtaining judgments may provide the impetus for appropriations.  Second, although there may be considerable risk that judgments will not be collected, class members should have the ability to assess that risk for themselves and make their own decisions.  Because the settlement is unlikely to provide more than de minimis benefit to each class member, there is little downside risk for a class member who decides to pursue a claim to judgment.  Finally, the settling parties have offered no reason why a class could not be certified under Rule 23(b)(3), giving individual class members the choice whether to settle for the insurance proceeds or to opt-out of the settlement and take the risk of proceeding to judgment.

**IV.     The Class Should Not Be Certified Or The Settlement Approved Because The Content Of The Notice Was Deficient.**

Under both Rule 23(e) and constitutional standards of due process, class members are entitled to notice of the content of a proposed class action settlement and how it affects them.  The notice provided in this case was deficient because it failed to provide class members any way of estimating

the amount of money, if any, that they can expect to receive through the proposed settlement of their claims.  This deficiency is particularly egregious in this case because, as noted earlier, class counsel believes that "it is highly unlikely that the Court will make any distribution of [settlement] funds directly to claimants." *See, e.g.,* Exhibit 73 and related testimony of Joseph Michael Bruno.  Yet the notice made no such disclosure to the class.

As the settling parties' notice expert has explained, "the best notice practicable under the circumstances cannot stop with . . . generalities.  It must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member."  Hilsee, Wheatman, & Intrepido, *Do You Really Want Me to Know My Rights?  The Ethics Behind Due Process in Class Action Notice Is More than Just Plain Language: a Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359, 1366 (2005) (quoting *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998)); *see also Phillips Petroleum*, 472 U.S. at 812 ("The notice should describe the action and the plaintiffs' rights in it.").  A notice of proposed class action settlement should "provide information that will enable class members to calculate or at least to estimate their individual recoveries, including estimates of the size of the class and any sub-classes . . . ."  *Manual for Complex Litigation* § 21.312, at 417-18 (4th ed. 2007); *see also* National Consumer Law Center, *Consumer Class Actions* §10.1.5.2, at 162 (6th ed. 2006) (notice must include "information necessary to evaluate the settlement, costs and expenses, and attorney fees").

Accordingly, each of the model class action settlement notices prepared by the Federal Judicial Center explains how individual class members' awards will be calculated and/or specifies the range of awards.  *See* Fed. Jud. Center, Class Action Notices Page, www.fjc.gov/public/home.nsf

/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/p ages/816.  Likewise, in each of the 2008 cases listed in the declaration of the settling parties' notice expert, Shannon Wheatman, the settlement notice describes the range of recovery for individual class members.  *See*, *e.g.*, notices in *Lockwood v. Certegy Check Servs., Inc*. (M.D. Fla.), *available at* datasettlement.com/ (final approval Sept. 3, 2008); notices in *Shaffer v. Continenal Cas. Co.* (C.D. Cal.), *available at* www.ltcclassaction.com/  (final approval June 11, 2008) (non-monetary relief); notices in *Palace v. DaimlerChrysler Corp*. (Cir. Ct. Ill.), *available at* www.neonsettlement.com/ (final approval May, 29, 2008); notices in *Gray's Harbor v. Carrier Corp*. (W.D. Wash.), *available at* www.furnaceclaims.com/ (final approval April 22, 2008); *Sherrill v. Progressive NW Ins. Co.* (18th D. Ct. Mont.), *available at* http://www.uimclaims.com/ (final approval April 4, 2008); *Webb v. Liberty Mutual Ins. Co.* (Cir. Ct. Ark.), *available at* www.webbsettlement.com/ (final approval March 3, 2008).[2]

In addition to its failure to inform class members that they are unlikely to receive any distribution from the proposed settlement fund, the notice misinforms the class about its ability to receive compensation from the levee districts.  Both the long-form and short-form notices state: "Please note that, under law, the Settlement Class can get no additional money or property in this settlement because the Settling Defendants are governmental bodies."  This statement is misleading. The class can get no additional money or property "in this settlement" because the settlement does not provide for any additional recovery.  However, "under law," the class could get additional

---

[2]Ms. Wheatman also lists a case entitled *Gunderson v. AIG Claim Services*, approved on May 29, 2008.  Wheatman Decl., Exh. 1 at 6.  We were unable to locate notices for that case.

recovery because the law does not preclude the levee districts from appropriating additional money to contribute to a settlement or to satisfy a judgment.

**V.  The Court Should Strike From The Proposed Settlement Agreement The Provision Allowing Counsel To Seek An Enhancement Of Actual Costs.**

The settlement agreement provides that "Class Counsel and counsel of any Class Member shall have the right to seek an award from the Escrowed Funds for fees, costs and expenses (*including any enhancement of costs and expenses* as may be awarded by the Court)[.]" Sett. Agmt. § III, ¶ 16 (emphasis added).  Similarly, the class notice (at ¶ 16) states that Class Counsel and other counsel for individual class members may request costs and expenses, and "[t]he Court may award *more* or less than the actual costs and expenses" (emphasis added).  In some circumstances, a court may enhance an award of *attorney fees*.  *See, e.g., Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (listing factors for determining a reasonable attorney fee award). However, the settling parties' suggestion that the Court may award an enhancement of *costs* runs contrary to the Louisiana Rules of Professional Conduct and is unsupported in the case law.  Thus, the Court should strike from the proposed agreement the provision that holds open the possibility of counsel recovering more than reimbursement of their actual costs.

First, an award of court costs and expenses of litigation is intended to reimburse counsel for sums actually incurred in the litigation.  Class counsel has offered no rationale for allowing the Court to enhance an award of costs and expenses, and none is apparent.  *See Billiot v. K-Mart Corp.*, 764 So. 2d 329, 335 (La. App. 2000) (observing that rationales for award of attorney fees may not apply to litigation expenses).  In the only case we could locate in which a trial court had applied a multiplier to both attorney's fees and costs, on appeal the prevailing party "conceded that applying

12

the multiplier to costs was not appropriate." *Parks v. Eastwood Ins. Services, Inc.*, 240 Fed. Appx. 172, 176 (9th Cir. 2007).

Second, the Louisiana Rules of Professional Conduct allow a lawyer to "advance court costs and expenses of litigation, . . . provided that the expenses were reasonably incurred."  R. Prof. Conduct 1.8(e)(1); *see also id*. at 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect . . . an unreasonable amount for expenses.").  These rules make clear that although a lawyer may seek repayment of expenses, such reimbursement may not include a profit for the lawyer.  For example, Rule 1.8(e)(3) provides that a lawyer may charge certain items as recoverable costs "provided they are charged at the lawyer's actual, invoiced costs for these expenses."  Similarly, Rule 1.8(e)(5)(i) provides that "[a]ny financial assistance provided directly from the funds of the lawyer to a client shall not bear interest, fees or charges of any nature."  And where a lawyer borrows funds "to provide financial assistance to a client, the lawyer shall not pass on to the client interest charges, including any fees or other charges attendant to such loans, in an amount exceeding the actual charge by the third party lender[.]" Rule 1.8(e)(5)(ii).  By providing that the Court may enhance an award of costs and expenses, the settlement agreement contemplates conduct that would violate the Louisiana Rules.

Further, the proposed settlement agreement should not be approved because the fees and costs provision is misleading to class members.  Both the agreement and the notice declare that class counsel will seek no attorney fees from the settlement fund and will oppose any requests for attorney fees by other counsel for class members.  *See* Sett. Agmt. § III, ¶ 16.  However, allowing counsel to recover more than actual costs and expenses is the functional equivalent of allowing an attorney fee. The Court should not approve a settlement that on the one hand promises class members that no

13

attorney fee will be awarded to counsel, while on the other hand provides an alternative mechanism for counsel to be awarded a reimbursement that contains a profit component. In the context of a purported "limited fund" settlement, in which individual class members will likely receive, at most, de minimis amounts, that counsel would contemplate a profit on expenses incurred is particularly inappropriate.

At the certification/fairness hearing, class counsel suggested that any objections to the recovery of expenses were premature because, if the settlement is approved, objections can be made to specific requests for costs awards. However, the Court should not wait until a request is made to announce that no enhancements will be allowed. Rather, if the Court approves the parties' proposed settlement agreement, it should send a strong message that the agreement's enhancement provision is unacceptable by striking that provision at the outset.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the objections previously filed (Doc. 18179-2), the proposed limited fund settlement class should not be certified, and the proposed settlement should not be approved.

Respectfully submitted,

 /s/ Jennifer J. Rosenbaum
Jennifer J. Rosenbaum, Local Counsel
La. Bar No. 31946
New Orleans Workers' Center for Racial Justice
217 N. Prieur St.
New Orleans, LA 70112
(615) 423-0152
jjrosenbaum@gmail.com

/s/ Michael T. Kirkpatrick
Michael T. Kirkpatrick, Trial Attorney
DC Bar No. 486293
Admitted Pro Hac Vice
Allison M. Zieve
DC Bar No. 424786
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202-588-1000
mkirkpatrick@citizen.org

Counsel for Objectors Mary Brinkmeyer,
Michelle LeBlanc, and Thomas C. Stuart

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2009, I electronically filed the foregoing Post-Hearing Memorandum of Objecting Class Members Mary Brinkmeyer, Michelle Leblanc, and Thomas C. Stuart, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all known counsel of record in this matter.

/s/ Jennifer J. Rosenbaum
Jennifer J. Rosenbaum, Local Counsel