UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:   KATRINA CANAL BREACHES            CIVIL ACTION
         CONSOLIDATED LITIGATION

                                           NO. 05-4182

                                           SECTION "K"(2)

FILED IN: 05-4181, 05-4182, 05-4191, 05-4568, 05-5237,
          05-6073, 05-6314, 05-6324, 05-6327, 05-6369,
          06-0020, 06-1885, 06-0225, 06-0886, 06-11028,
          06-2278, 06-2287, 06-2346, 06-2545, 06-3529,
          06-4065, 06-4389, 06-4634, 06-4931, 06-5032,
          06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
          06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
          07-0647, 07-0993, 07-1284, 07-1286, 07-1288,
          and 07-1289

PERTAINS TO: LEVEE

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendant Sewerage and Water Board of New Orleans (Doc. 16843). Having reviewed the pleadings, memoranda, and relevant law, and having heard the oral argument of counsel, the Court, for the reasons assigned, grants the motion in part and denies it in part.

BACKGROUND

The Corrected Restated Levee Master Consolidated Class Action Complaint (Doc. 7571) names, among other defendants, the Sewerage and Water Board of New Orleans ("SWB") and alleges, in general, that the negligence of the SWB caused the breach of the 17th Street Canal levee and floodwall. Specifically, plaintiffs allege that the SWB was negligent in failing to properly

design and construct the 17th Street Canal levee and floodwall, in rejecting the "Barrier Plan," and in failing to take measures to remedy the underseepage or to report underseepage to other authorities. Additionally, plaintiffs allege that the SWB acted negligently in the following respects related to dredging: 1) having the Canal dredged to a depth lower than the sheet piles on the east (Orleans Parish) side of the Canal; 2) having the Canal dredged on only the east (Orleans Parish) side of the Canal; 3) having the Canal dredged in an "offset" manner resulting in dredging too close to the east (Orleans Parish) side of the Canal; and 4) having the Canal dredged in a manner that compromised the safety of the Canal and its flood walls.

The Canal constitutes part of the drainage system for the city of New Orleans. In the 1970s the SWB concluded that the capacity of the Canal needed to be increased to prevent flooding. In 1978 the SWB contracted with Modjeski and Masters ("Modjeski") to design hydraulic improvements to re-excavate the Canal to meet drainage requirements and to obtain the necessary permit to complete the work. Modjeski sought a permit from the U.S. Army Corps of Engineers ("Corps") and obtained the necessary permit in 1984.

Also in 1984, the Orleans Levee District ("OLD") contracted with Modjeski to develop plans to redesign and make changes to the levees and flood walls adjacent to the Canal. During that process, Modjeski sent the Corps several memoranda indicating that the stability of the existing levee and the sheet pile walls fell below the minimum safety factor values established by the Corps. During the planning stages of the levee project a number of design changes occurred which, among other things, shortened the required sheet pile penetration. On January 3, 1990, Modjeski submitted the final plans for the levee redesign to the Corps. The Corps approved the plans, including the raised tip elevation of the sheet piles.

2

In May 1990 OLD contracted with Boh Brothers to complete the excavation and flood protection work, which included dredging the eastern (Orleans Parish) half of the Canal. The Orleans Levee Board accepted that work in August, 1992. In May 1992, the East Jefferson Levee District contracted with Professional Construction Services, Inc. to make improvements to the levee on the west (Jefferson Parish) side of the Canal and to dredge the western (Jefferson Parish) half of the Canal. That work was completed in 1994.

In June 1993, the Corps of Engineers contracted with Pittman Construction Company, Inc. to redrive sheet piles and cap the floodwalls on the Canal levee. The Corps accepted that work in April 1995.

LAW AND ANALYSIS

A. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Mere allegations or denials in the non-movant's pleadings are not sufficient to defeat a well-supported motion for

summary judgment. Fed.R.Civ.P. 56(e)(2). The nonmoving party must come forward with "specific facts showing a genuine issue for trial." *Id.*

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B. Design and Construction of the 17th Street Canal Levee and Floodwall

1) Negligent Design, Construction and Maintenance of the Levee

There is no statutory authority vesting responsibility for the levee with the SWB. Louisiana Revised Statute 33:4071(A)(1) provides that "[t]he public water system, the public sewerage system, and the public drainage system in the city of New Orleans shall be constructed, controlled, maintained, and operated by a sewerage and water board . . .." That statute does not address responsibility for the maintenance and construction of levees in the city of New Orleans.

Reading La. Rev. Stat. 38:281(6) which defines "levee district" together with La. Rev. Stat. 38:281(7) which defines "levee and drainage district," plaintiffs assert that the SWB has responsibility not only for constructing and maintaining drainage for the city of New Orleans, but also for constructing and maintaining levees in the city of New Orleans. Title 38, Section 281 of the Louisiana Revised Statutes defines "[l]evee district" as a "political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits. La. Rev. Stat. 38:281(6). On the other

4

hand, the statute defines "levee and drainage district" as a "political subdivision of this state organized for the purpose and charged with the duty of construction and maintaining levees, **drainage**, and all other things incidental thereto within its territorial limits." La. Rev. Stat. 38:281(7)(emphasis added). Based on those definitions plaintiffs acknowledge that some parishes have a unified levee and drainage system while others, such as Orleans Parish, have separate boards. Plaintiffs reason that because La. Rev. Stat. 33: 4071(A)(1) recognizes the SWB as the *de jure* **drainage** district for the city of New Orleans, that La. Rev. Stat. 38:281(7) grants the SWB the authority and responsibility to construct and maintain both levees and drainage systems.

However, examination of La. Rev. Stat. 38:307, which sets forth the powers of the Orleans Levee District, reveals the flaw in plaintiffs' reasoning. Pursuant to La. Rev. Stat. 38: 307the board of commissioners of the Orleans Levee District "shall have full and exclusive right, jurisdiction, power, and authority to . . . construct, maintain, and improve levees. . ." Plaintiffs' interpretation of La. Rev. Stat. 38:281(7), negates the specific grant of authority in La. Rev. Stat. 38:307 over levees to the Orleans Levee District. It is axiomatic that specific statutes prevail over more general statutes. *See Smith v. The Berry Co.*, 198 F.3d 150, 152 (5th Cir. 1999) ("In Louisiana, . . . when two statutes conflict, the more specific statute prevails over the more general statute."). Thus, the specific provisions of La. Rev. Stat. 38:307, granting authority for levee construction and maintenance to OLD overrides the general provisions of La. Rev. Stat. 38:281(7). Moreover, this Court has previously held that the SWB does not have responsibility for the levees. *In Re: Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 (E.D. La. October 22, 2008)(Doc. 16050)("[i]n light of the statutory authority that has been iterated herein, this Court finds that [Paragraph] 71 of the original complaint should be dismissed because it specifically alleges that

5

SWB is liable for deterioration of the levees, for which SWB clearly does not have responsibility under La. Rev. Stat. §§33:4071, 38:1(6), and 38:307(A)(1))"; *see also In Re: Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 (E.D. La. September 13, 2006) (Doc. 1133) ("La. Rev. Stat. 38:307 provides that the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees and La. Rev. Stat. 38:301 provides that the levee districts have the right to maintain levees."). Because the SWB has no statutory duty with respect to levees, the Court grants the SWB's motion in part and dismisses plaintiffs' claims against it for negligent design, construction and maintenance of the levees adjacent to the Canal.

## 2) Rejection of the "Barrier Plan"

In furtherance of its role as the entity responsible for flood protection in the New Orleans area, the Corps proposed the "Barrier Plan" which provided for the Corps to construct barriers designed to stop storm surge from entering Lake Pontchatrain at the Rigolets and Chef Menteur. The Corps never implemented the "Barrier Plan." Instead, the Corps opted to proceed with the "High Level Plan."

Plaintiffs assert that the SWB acted negligently by rejecting the "Barrier Plan" and favoring the "High Level Plan." The SWB states that it supported the "Barrier Plan" and therefore contends that there is no factual basis for this claim. The Court need not determine whether the SWB in fact supported the "Barrier Plan." Even if the SWB explicitly and completely rejected "the Barrier Plan," the SWB cannot be held to be negligent for that act. The Corps, not the SWB, has been delegated the responsibility for flood protection.

> Congress has mandated that the Secretary of the Army, acting through the Corps of Engineers is responsible for providing flood protection for the City of New Orleans. *See* 33 U.S.C. §701, *et seq.* . . . .The Louisiana legislature has vested the Board of Commissioners of the

6

> Orleans Levee District, . . . . with the "<u>full and exclusive right</u>, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embankments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects" within the Parish of Orleans. La. Rev. Stat. 38:307A(1) (emphasis added).

*In Re: Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 (E.D. La. December 27, 2007)(Doc. 9856). Because the SWB is not charged with responsibility for providing flood protection for the city of New Orleans or for constructing and maintaining the levees within the city of New Orleans, it is entitled to summary judgment on plaintiffs' claim that it negligently rejected the Barrier Plan.

### C) Negligence With Respect to Reports of Underseepage

Plaintiffs contend that beginning in 2004 brackish water began emerging in the yards at 6780 and 6800 Bellaire Drive, that the SWB received notice of the seepage, that the brackish water emerged within 100 feet of the bank of the Canal, and that the SWB negligently failed to correct the seepage problem. Plaintiffs rely upon the affidavit of Beth LeBlanc, who resides at 6780 Bellaire Drive, which states:

- beginning around Thanksgiving 2004, she "noticed standing water near an oak tree located between the two separate slabs of [Peter Marcello's] double driveway" and that the "water, which was ankle deep in grassy areas, flowed onto the driveway area on the Bellaire side of [her] property";
- the water logged area never dried up before Hurricane Katrina struck on August 29, 2005;
- an "environmental consultant" who inspected the water-logged area told her that he had been hired by the SWB, that he said "I don't think it's a leak; its brackish levee water, and that the matter would be reported to the SWB;
- an oak tree near the 17th Street Canal levee in the rear of the Marcello property at 6800 Bellaire Drive fell on her property and struck her house;
- the uprooted area at the base of the fallen tree was filled with

7

>             brackish water; and
> •           the brackish water intrusion on her property also killed two
>             other trees.

Doc. 17700-3.

Plaintiff contends that the SWB was statutorily responsible for the seepage problem and acted negligently by failing to address the issue. The SWB denies having received notice of the underseepage problem, and asserts that even if it did receive notice of the underseepage that it is not responsible for the situation because the underseepage resulted from a levee condition for it is not responsible.

It appears undisputed that the underseepage originated from the Canal. As noted herein above, SWB is not responsible for maintenance of the levees. Additionally, plaintiffs have not submitted any competent Rule 56 evidence indicating that the SWB had *garde* over that levee. Citing La. Rev. Stat. 38:113, plaintiffs urge that the SWB had a statutory duty to correct the underseepage problem. The Court disagrees. Even assuming *arguendo* that the SWB received notice of the underseepage La. Rev. Stat. 38:113 does not obligate the SWB to correct the underseepage.

In pertinent part, La. Rev. Stat. 38:113 provides:

> The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for the space of one hundred feet on both sides of the banks of such channels or outfall canals . . ., whether the drainage canals or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary part of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.

Section 113 authorizes a "levy [sic] or drainage district to preserve and maintain the efficiency of public drainage channels and to enter private property along public drainage channels for a space of

100 feet on each side of the channel." *Williams v. City of Baton Rouge*, 731 So.2d 240, 248 n.3 (La. 1999); *see also Whipp v. Bayou Placquemine Brule Drainage Board*, 476 So.2d 1042, 1045 (La. App. 3rd Cir. 1985)(§113 grants to the levee and drainage districts a legal servitude to preserve and maintain the canal); *Coulee Kinney Drainage District v. Broussard*, 966 So.2d 1191, 1195 (La. App. 3rd Cir. 2007)(§113 grants a legal servitude over drainage channels within the district). The servitude granted by §113 permits the SWB to maintain the efficiency of the Canal; it does not charge the SWB with the responsibility for maintaining the levee adjacent to the Canal nor does it supersede La. Rev. Stat. 38:307's of grant of authority to OLD to maintain the levees.

Therefore, SWB's liability for underseepage, if any, can arise only from its failure to warn the party responsible for levee maintenance of the underseepage. Plaintiffs have not cited any statute obligating the SWB to report problems with the levee to OLD, the entity responsible for the maintenance of the levee. Absent such a statutory duty, there is no other basis for concluding that SWB had a duty to report the underseepage. *See George v. Western Auto Supply Co., Inc.,* 527 So.2d 428, 429 (La. App. 4th Cir. 1988).

This determination that SWB can have no liability for underseepage is limited however to claims for statutory liability only and does not address the issue of the SWB's liability for underseepage resulting from negligent dredging, if any, of the Canal.

### D) Dredging of the 17th Street Canal

Plaintiffs assert that the SWB acted negligently in several respects in connection with the dredging of the Canal:

- seeking a permit to dredge the Canal to a depth lower than the sheet piles;
- dredging only the east (Orleans Parish) side of the Canal;
- dredging too close to the east (Orleans Parish) floodwall; and

9

- dredging the Canal in a manner that compromised the safety of the Canal/levee floodwalls.

Because the Court finds that genuine issues of material fact exist concerning whether the SWB acted negligently with respect to the dredging of the Canal and whether the SWB is entitled to immunity under La. Rev. Stat. 9: 2798.1, if in fact it acted negligently with respect to dredging the Canal, the Court denies the SWB's motion to the extent it seeks to dismiss plaintiffs' claims of negligent dredging.

The SWB attempts to relieve itself of liability for its negligence, if any, arising from the dredging of the Canal contending that the dredging, as executed, complied with the parameters of the dredging permit issued to it by the Corps. Contrary to its contention, the SWB can be liable for negligent dredging even if the dredging, as completed, complied with the permit issued by the Corps. Because no government contractor defense is available to the SWB, compliance with the permit does not preclude a finding that the SWB negligently dredged the Canal.[1]

The Court recognizes that the SWB submitted documentation establishing that dredging occurred on both the east (Orleans Parish) and west (Jefferson Parish) sides of the Canal, albeit at different times.[2] However, photographs submitted by plaintiffs[3] reveal that there is a berm/batture on the west (Jefferson Parish) side of the Canal and no such land area on the east (Orleans Parish) side of the Canal. The absence of the berm/batture on the east (Orleans Parish) side of the Canal

---

[1] Even if the SWB acted negligently with respect to dredging the Canal, there may well be an issue concerning whether acts or omissions of the Corps subsequent to its issuance of the dredging permit constitute intervening negligence which is either independent of or supersedes the negligence, if any, of the SWB with respect to dredging the Canal.

[2] Doc. 16843-24 (Exhibits 26 and 28).

[3] Doc. 18191 (Exhibit 1).

creates a genuine issue of material fact concerning whether asymmetrical dredging of the Canal occurred and whether the SWB permitted dredging to occur too close to the Canal's east (Orleans Parish) levee/floodwall. Additionally, the declaration of Dr. Robert Bea[4] raises genuine issues of material fact concerning whether the SWB acted negligently in having the Canal dredged to a depth below the penetration of the sheet pilings and whether dredging adversely affected the soil at the bottom of the Canal thereby increasing the stability of the floodwall.

Dr. Bea's declaration states in pertinent part:

> The information made available by the [Corps] and reviewed by the author clearly indicates a high degree of correlation of the [Canal] dredging activities and the [sheet pile supported reinforced concrete floodwall] failure at this site. The configuration of the cross-section of the dredged canal 'favored' the Orleans Parish side (off-centerline cross section) and resulted in lowering the elevation of the top of the earth levee below normal water level (normal vegetation not possible) and reduction in the total cross section . In addition, the bottom of the canal was dredged to a depth greater than the penetration of the sheet piling which should have permitted have prevented the development of excessive and damaging underground water pressure and stresses from the canal to the protected side of the [Canal] during high water in the [Canal]. Lowering the elevation of the top of the levee allowed early water intrusion in a tension crack that opened up between the sheet piling and the supporting soil. This tension gap resulted in dramatic increases in the horizontal loadings and decreases in the capacity of the soils and levee to resist the imposed loadings. These dredging developments had important effects on the soils relied upon to provide stability for the [sheet pile supported reinforced concrete floodwall]. As a result of the developments associated with the dredging permitted by the [Corps], there were important compromises in public flood safety and reliability attributes.

Doc. 18191-3 (Exhibit 2, p.8). Additionally Dr. Bea opines in his declaration that:

> 13. It is my expert opinion that important contributors to the failure of the [sheet pile supported reinforced concrete floodwall] adjacent to the

---

[4] Doc. 18191-3 (Exhibit 2),

east side of the [Canal] were developed by dredging performed for the [SWB] and permitted and approved by the [Corps]. The dredging resulted in substantial reductions in the cross section and elevation of the east side levee of the [Canal] compared with that of the west side levee thereby reducing the levee and floodwall capacities to resist flood waters. Also, the dredging resulted in the deepening of the canal to elevations below the tips of the sheet piling thereby exacerbating under-levee and sheet pilling seepage effects resulting in reductions in the levee and floodwall capacities to resist flood waters.

14. It is my expert opinion that multiple factors associated with the dredging permit and dredging operations - including but not limited to, any changes in the dredging profile from that contained in General Design Memorandum No. 20 - were major contributing factors to the failure of the I-wall at the [Canal]. The permitted dredging resulted in decreases in the east side levee cross section that led to reductions in the capacity of the [sheet pile supported reinforced concrete floodwall]. The permitted dredging resulted in decreases in the soil levee top elevation which led to early water intrusion into the tension gap that developed between the sheet piling and the supporting soils on the canal side. This development led to important and unanticipated increases in lateral water loadings and associated reductions in the soil levee capacity. Further, the permitted dredging resulted in increasing the hydraulic conductivity between the [Canal] and the protected side which led to further reductions in lateral capacity of the [sheet pile supported reinforced concrete floodwall].

Doc. 18191-4 (Exhibit 2, p. 46-47). Because there are genuine issues of material fact concerning whether the SWB acted negligently with respect to the dredging of the Canal, the SWB is not entitled to summary judgment dismissing plaintiffs' claims of negligent dredging is precluded.

Alternatively, the SWB contends that even if it acted negligently with respect to the dredging of the Canal that La. Rev. Stat 9:2798.1 grants it immunity from liability for such negligence. In 1985 the Louisiana legislature enacted §2798.1B which states in pertinent part that "[l]iability shall not be imposed on public entities or their officers and employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within

the course and scope of their lawful powers and duties."

Plaintiffs urge that even if challenged acts of the SWB qualify as "discretionary acts" under the immunity statute, that the statute does not immunize the SWB from liability because the challenged acts all occurred prior to 1985 and the statute does not apply retroactively. It is undisputed that the statute does not apply retroactively. However, even assuming *arguendo* that plaintiffs are correct that all of the SWB's discretionary acts occurred prior to 1985, application of the statute is not necessarily barred. The non-retroactivity of the statute does not *per se* bar its application to immunize a public entity against damages occurring after the effective date of the statute as a result of discretionary acts taken prior to 1985. A cause of action for property damage arises when damages are incurred. It is only once the damages are incurred that the cause of action is considered to have vested. See *In Re: Katrina Canal Breaches Consolidated Litigation*, 2006 WL 3627749 (E.D. La. December 8, 2006). Here, plaintiffs' cause of action vested on August 29, 2005, when the breach of the Canal's levee/floodwall occurred and plaintiffs sustained damages. Because plaintiffs' cause of action vested after the effective date of the statute, it is of no moment that the alleged discretionary acts urged to have given rise to the breach preceded the enactment of the immunity statute.

Applying Louisiana law, the Court now turns to the analysis of the scope of the immunity statute. Unfortunately, the Louisiana Supreme Court has not consistently applied the same analytical framework in analyzing this immunity statute. In *Fowler v. Roberts,* 566 So.2d 1, 15 (La. 1990)(on rehearing)*,* the Louisiana Supreme Court concluded that "[t]he discretionary function exception to state governmental liability established by [La. Rev. Stat. 9:2798.1] is essentially the same as the exception in the Federal Tort Claims Act" and that "[d]iscretion exists only when a policy judgment has been made. . . . Thus, the exception protects the government from liability only at the policy

13

making or ministerial level, not at the operational level." (internal citations omitted). The *Fowler* court then went on to apply the two step inquiry set forth in *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), to determine whether the discretionary function exception applied under the facts of *Fowler*. Thereafter, in *Jackson v. State ex rel Department of Corrections,* 785 So.2d 803, 809 (La. 2001), the Louisiana Supreme Court summarized the immunity statute as follows:

> The immunity from liability for discretionary acts is essentially the same as the immunity conferred on the federal government by the exception in the Federal Tort Claims Act (FTCA). *Fowler v. Roberts*, 566 So.2d 1 (La. 1989)(on rehearing). In *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the United States Supreme Court developed the following two-step analysis to examine immunity under FTCA: (1) whether a statute, regulation, or policy specifically proscribes a course of action; and (2) whether the challenged action is grounded in political, economic, or social policy. This Court adopted the *Berkovitz* inquiry to analyze the applicability of La. Rev. Stat. 9:2798.1, describing it as follows:
>
>> "Discretion exists only when a policy judgment has been made. Judicial interference in executive actions involving public policy is restrained by the exception. Thus, the exception protects the government from liability only at the policy making or ministerial level, not at the operational level." *Fowler*, 566 So.2d at 15.

Thus, the *Berkovitz* framework has been employed by the Louisiana Supreme Court twice to analyze whether the act of a public entity is "discretionary" so as to entitle the public entity to immunity under §2798.1.

However, in *Gregor v. Argenot Great Central Insurance Company*, 851 So.2d 959, 967 (La. 2003), the plurality opinion found the reasoning of the *Fowler* rehearing opinion flawed because, contrary to the traditional analytical framework of civil law jurisdictions, the Court did not begin its analysis with the immunity statute itself, but rather began its analysis with the premise that "[t]he

14

discretionary function exception to state governmental liability established by the statute is essentially the same as the exception in the Federal Tort Claims Act." The plurality in *Gregor* then reviewed the language of both §2798.1 and the immunity language in the Federal Tort Claims Act and concluded that Louisiana's immunity statute was "not essentially the same" as the immunity language in the federal statute *Id.* The plurality stated:

> The Louisiana statute applies to "policymaking or discretionary acts when such acts are within the course and scope of . . . lawful powers and duties." The federal statute is limited to "the exercise or performance or the failure to exercise or perform a discretionary function or duty." Unlike the Louisiana statute, the federal statute does not provide that a "policymaking act" is separate and distinct from a "discretionary function or duty."
>
> The *Fowler* opinion did not utilize the rules for interpreting Louisiana statutes that are found in the Revised Statutes and the Civil Code. Instead, it went to federal jurisprudence to interpret a dissimilar Louisiana statute to reach the conclusion that the immunity provided for in Louisiana statute only exists when there is a discretionary act or function "grounded in social, economic or political policy." This quoted language is not found in the Louisiana statute. As indicated in the above cited quote for the *Jackson* case, the immunity has been further limited by the subsequent jurisprudence so that it now only applies "at the policy making or ministerial level, not at the operational level" A review of the Louisiana statute shows that it does not make a distinction between *operational acts* and *ministerial* or *policymaking acts.* Finally, the *Fowler* interpretation of La. R.S. 9:2798.1 improperly renders the word "or" meaningless and is an impermissible repeal of part of a substantive immunity right. Louisiana R.S. 9:2798.1 is clear and unambiguous. We are bound to follow it as written and give effect to all of its provisions.
>
> For the foregoing reasons, the analysis, given to La. R.S. 9:2798.1 by *Fowler* and its progeny is faulty.

*Id.* at 967 (internal citation omitted). The *Gregor* plurality opinion went on to deny the Department of Department of Health and Hospitals immunity concluding that:

> DHH is now attempting to escape liability for its failure to train its

> sanitarians by claiming that the untrained sanitarians are themselves exercising policymaking discretion. We reject this argument and conclude that [the sanitarian's] decision in this case, that the warning over the oyster bar was in compliance with §23:006-4, was not a decision grounded in social, economic, or political policy. It was operational negligence in enforcing the sanitary code. When the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures. *Archon* [*v. Union Pacific Railroad*,] 657 So.2d [987] at 996 [(La. 1995)].

*Gregor v. Argenot Great Central Insurance. Co.*, 851 So.2d at 968, Justice Calogero concurred with the findings of the plurality but disagreed with that portion of the plurality's decision to review the reasoning of *Fowler* stating:

> Whether or not this court should chose at some point to revisit *Fowler v. Roberts* and its discussion of La. Rev. Stat. 9:2798.1(B), I do not see any compelling reason for the court to do so in *this* case, where neither party has challenged the analytical framework in *Fowler v. Roberts*, regarding La. Rev. Stat. 9:2798.1(B), and where the plurality's criticism of the *Fowler v. Roberts* decision has no effect whatsoever either upon the legal analysis of the case before us or upon its outcome.

*Id*. at 970.

The Louisiana Supreme Court has not revisited the issue, and a number of lower courts have continued to apply the *Fowler* framework in analyzing whether a defendant is entitled to immunity. See *Wilson v. Davis*, 991 So.2d 1052, 1057 (La. App. 1st Cir. 2008); *Anderson v. Anderson*, 980 So.2d 15, 18 (La. App. 5th Cir. 2008); *Peterson v. City of Tallulah*, 981 So.2d 192, 194 (La. App. 2nd Cir. 2008), but see also *Smith v. Lafayette Parish Sheriff's Dept.*, 874 So.2d 863, 867 (La. App. 3rd Cir. 2004)(applying *Gregor* analysis). In *McIntosh v. McElveen*, 893 So.2d 986, 994 n.2 (La. App. 3rd Cir. 2005), the court stated:

> We note what seems to be somewhat of an inconsistency in the plurality opinion in the *Gregor* decision. The plurality in *Gregor* states that *Fowler v. Roberts* . . ., and its progeny are flawed because *Fowler*

"went to federal jurisprudence to interpret a dissimilar Louisiana state to reach the conclusion that the immunity provided for in the Louisiana statute only exists when there is a discretionary act or function '*grounded in social, economic, or political policy.*'" *Gregor*, 851 So.2d at 967 (emphasis added). The plurality noted that the quoted language is not found in the Louisiana statute. However, when ultimately deciding the issue of immunity the plurality states the "decision in this case, that the warning over the oyster bar was in compliance with §23:006-4, [of the sanitary code] was not a decision *grounded in social, economic, or political policy.* It was operational negligence in enforcing the sanitary code." *Id.* at 968 (emphasis added). The plurality then goes on to cite the proposition noted in the *Archon* case . . . one of the cases it stated was a flawed progeny of *Fowler*.

Another Louisiana state court of appeals has stated :

> The Louisiana Supreme Court has on at least two occasions considered the application of the discretionary acts doctrine. *See Fowler v. Roberts*, 556 So.2d 1 (La. 1989); *see also Gregor v. Argenot Great Cent. Ins. Co.,* 2002-1138 (La. 5/20/03), 851 So.2d 959. It is somewhat unclear under the current body of jurisprudence whether the correct inquiry utilizes the two-step test used in cases arising under the Federal Tort Claims Act as adopted by the Louisiana Supreme Court in *Fowler*, the plain language of the statute, or a hybrid combination of both.

*Brown v. ANA Insurance Group*, 965 So.2d 902, 916 n.20 (La. App. 1st Cir. 2007), rev'd other grounds 994 So.2d 1265 (La. 2008).

Considering the apparent inconsistency in the *Gregor* opinion, Justice Calogero's persuasive concurrence in *Gregor* noting that "by its own reasoning, the plurality's discussion of *Fowler* does not affect the legal analysis in this case and has not ultimate effect on the outcome" of the case which implies that the plurality's the analysis of the *Fowler* case may be considered to be dicta, and considering the continued adherence to *Fowler* by several Louisiana courts of appeal, the Court is unwilling to make an *Erie* based decision that *Gregor* applies in interpreting whether the SWB is entitled to immunity in this case, and therefore analyzes the immunity issue using *Fowler*. *Gregor*

17

*v. Argenot Great Central Insurance Company*, 851 S0.2d 959, 973

It is undisputed that La. Rev. Stat. 33:4071(A)(1) charges the SWB with the responsibility for drainage, but no regulations or statutes mandating how the SWB is to execute its duty with respect to drainage have been cited or located. Because there is no specific statutory or regulatory mandate as to how the SWB is to execute its responsibility for drainage, the Court moves to the second prong of the *Berkovitz* test to determine whether immunity applies. The second prong of *Berkovitz* analyzes whether the challenged action is grounded in political, economic, or social policy, i.e., whether the entity's judgment or choice was based on considerations of public policy.

> Where there is no statute or regulation guiding the action at issue and the second prong of the *Berkovitz* test is invoked, another two-step analysis is appropriate. First, it must considered whether the governmental action was taken as a matter of choice. This is a factual finding which is properly determined at trial. Next, the action at issue must be distinguished as either discretionary policy-making, thereby invoking the statute immunity, or whether the action is purely operational in nature. If the action is simply operational, La. Rev. Stat. 2798.1 grants no immunity to the entity. Whether a public duty is policy-making rather than operation is a question of fact which precludes summary judgment. (internal citations and quotations omitted)

*Hardy v. Bowie*, 719 So.2d 1158, 1163 (La. App. 3rd Cir. 1998), rev'd other grounds 744 so.2d 606 (La. 1999).

Given the lack of any statutory or regulatory pronouncement mandating how the SWB was to execute its responsibility with respect to drainage in the city of New Orleans, the SWB clearly had a choice as to how to accomplish its drainage mission. To put it another way, the SWB had discretion to select the manner in which it would fulfill its statutorily mandated responsibility for drainage. Having concluded that the SWB's challenged actions were taken as a matter of choice, the

Court must now examine the process by which the SWB decided on the action to be taken to fulfill its responsibility.

The SWB has not submitted any competent Rule 56 evidence indicating how it made its decision concerning dredging or what considerations were involved in making the decision. Moreover, the Court notes that "[w]hether a public duty is policy-making rather than operational is a question of fact which precludes summary judgment." *Hardy v. Bowie*, 719 So.2d at 1163. Accordingly, the SWB's motion for summary judgment is denied to the extent that it seeks summary judgment with respect to its claim that acted negligently with respect to the dredging of the Canal.

New Orleans, Louisiana, this  7th  day of May, 2009.

                                              STANWOOD R. DUVAL, JR.
                                   UNITED STATES DISTRICT JUDGE