UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | * <br> * <br> * <br> * | CIVIL ACTION<br><br>No.:  05-4182 "K" (2) |
| _____ | * <br> * | JUDGE DUVAL |
| FILED IN:   05-4181, 05-4182, 05-4191, 05-4568,<br>05-5237, 05-6073, 05-6314, 05-6324,<br>05-6327, 05-6359, 06-0020, 06-1885,<br>06-0225, 06-0886, 06-11208, 06-2278,<br>06-2287, 06-2346, 06-2545, 06-3529,<br>06-4065, 06-4389, 06-4634, 06-4931,<br>06-5032, 06-5042, 06-5159, 06-5163,<br>06-5367, 06-5471, 06-5771, 06-5786,<br>06-5937, 06-7682, 07-0206, 07-0647,<br>07-0993, 07-1284, 07-1286, 07-1288,<br>07-1289. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | MAG. WILKINSON |
| PERTAINS TO:   LEVEE AND MR-GO<br>_____ | * <br> * | |

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS POST-HEARING MEMORANDUM
<u>REGARDING APPLICABLE INSURANCE LIMITS</u>**

This Reply Memorandum is respectfully submitted by St. Paul Fire and Marine Insurance Company ("St. Paul") pursuant to the briefing schedule established at the conclusion of the Class Certification and Fairness Hearings on April 2, 2009 and in support of its position that the OLD flood control system constitutes one "premises" within the meaning of the OLD Policy.

In opposition to St. Paul's Post-Hearing Memorandum, Class Counsel for Plaintiffs (1) argue that the term "premises" is ambiguous because it is not defined, and (2) confuse the definition of "premises" with how the number of premises is to be ascertained under the

1

Premises Endorsement.  For the reasons discussed below, Class Counsel's arguments are without merit.

### A.  The Term "Premises" Is Not Ambiguous Because It Is Undefined

As an initial matter, Class Counsel contend that the term "premises" in the General Total Limits endorsement is ambiguous because it is undefined.  Class Counsel's argument that every term in an insurance policy must be defined fails as a matter of law.  As the Fifth Circuit Court of Appeals has previously recognized, the mere fact that a word is not defined in an insurance policy does not render the policy ambiguous.  *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 209 (5th Cir. 2007) ("[T]he fact that a term used in an exclusion is not defined in the policy itself alone does not make the exclusion ambiguous; instead, the court will give the term its generally prevailing meaning.") (internal quotations omitted); *see also, Am. Deposit Ins. Co. v. Myles*, 783 So. 2d 1282, 1287 (La. 2001) ("The term 'rewrite policy' is not defined in the policy itself, but this fact alone does not make the exclusion ambiguous; instead, we will give the term its generally prevailing meaning.")

It is well settled that in interpreting insurance policies, non-technical, undefined words are to be given their "plain, ordinary, and generally prevailing meaning." *Edwards v. Daugherty,* No. 2003-2104 (La. 10/1/04), 883 So. 2d 932, 940-941.  The generally prevailing meaning of a word is the meaning used in "common parlance" by "a reasonable person, a person in the street or an average citizen . . . ."  *Schroeder v. Bd. of Sup'rs of Louisiana State University*, 591 So. 2d 342, 346 (La. 1991); *Savoie v. Fireman's Fund Ins. Co.*, 347 So. 2d 188, 191 (La. 1977).

The word "premises" is generally understood to refer to a tract of land and its appurtenances — a generally prevailing meaning that is supported by the virtually identical definitions of "premises" presented by  both St. Paul and Class Counsel.

- MERRIAM WEBSTER'S ONLINE DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/premises (2009):

    3   *plural* [from its being identified in the premises of the deed] **a:** a tract of land with the buildings thereon **b:** a building or part of a building usually with its appurtenances (as grounds).

- WEBSTER'S NEW COLLEGIATE DICTIONARY (2d ed. C&C Merriam Co., Publishers, 1959):

    **Prem′ise, prem′iss** (prĕm′ ĭs), n.
      *pl. Law* …c.  The property conveyed in a deed; hence a piece of land or real estate; sometimes, esp. in fire insurance, a building; as, to lease *premises*

- *Black's Law Dictionary*, p. 1063 (5th ed. 1979):

    An estate, including land and buildings thereon.

Even accepting these common definitions, however, Class Counsel ignore when the policy endorsement applies. Specifically, the endorsement provides a methodology for calculating the number of "premises" at issue in order to ascertain when the General Total Limit applies more than once.

### B. The Premises Endorsement Establishes The Methodology For Calculating How The General Total Limit Applies To Multiple Premises

Class Counsel's argument that the Premises Endorsement is ambiguous because the term "premises" does not include "waterways" misapprehends how the Premises Endorsement works. Initially, the Coverage Summary provides that the General Total Limit for coverage under the Public Entity General Liability Protection ("GL") form is $1,000,000.  *See,* Ex. 2 introduced at the April 2, 2009 Class Action and Fairness Hearings, at TRV-OLD-00034.  The GL form further provides that the General Total Limit is the most St. Paul will pay for the combined total of all covered bodily injury, personal injury, and property damage during the policy period.  *Id.* at TRV-OLD-00042.  The Premises Endorsement "broadens" the coverage under the GL policy

3

by making the General Total Limit the most that St. Paul will pay for all covered loss or injury during the policy period for each "premises." Thus, the maximum potential coverage provided by this coverage form increased depending upon how many "premises" are at issue.

However, the Premises Endorsement explicitly explains *how* the number of premises should be calculated for purposes of applying the endorsement. The endorsement expressly provides that all premises sharing a common boundary or separated only by a street or roadway, waterway, or railroad right-of-way shall be deemed to be one premises. *See, Id.* at TRV-OLD-00065.

It is well-established under Louisiana law that "an insurer has the right to limit liability and impose conditions or restrictions under a policy provided such limitations do not conflict with statutory provisions or public policy." *LeBlanc v. Aysenne,* 2005-0297 (La. 1/19/06), 921 So. 2d 85 *citing Reynolds v. Select Properties, Ltd.* 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183. Thus, St. Paul acted within its rights to clearly and unambiguously restrict how the Premises Endorsement altered the amount of General Total Limits potentially available under the Policy.

Unfortunately, Class Counsel confuse the definition of "premises" with the methodology for calculating how the number of "premises" is to be ascertained for purposes of the Premises Endorsement. Specifically, Class Counsel suggest that, because the generally understood definitions of "premises" do not include "waterways," the language regarding "waterways" in the Premises Endorsement renders the entire provision ambiguous. Not so. Contrary to Louisiana principles of contract interpretation, Class Counsel completely disregard the language of the Premises Endorsement which provides *how* the number of "premises" is to be ascertained.

4

An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988); La. Civil Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."). Furthermore, effect must be given to each element of a sentence in an insuring agreement. *Orazio v. Henderson*, 01-0028 (La. App. 3 Cir. 7/11/01), 790 So. 2d 754, 757; La. Civil Code art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."). To accept Class Counsel's contention – that the generally understood meaning of "premises" does not include "waterways" and, therefore, the waterways provision in the Endorsement should be ignored – would completely disregard the plain language, purpose, and effect of an entire provision in the Premises Endorsement.

Moreover, contrary to Class Counsel's assertion, the inclusion of the methodology for calculating the number of premises to which the General Total Limit applies is not antithetical to the notion that the Premises Endorsement broadens coverage. Simply, where there are two premises that (1) do not share a common boundary or (2) are not divided solely by a street, roadway, waterway, or railroad right of way, the General Total Limit will apply separately to those premises. For instance, if one building owned by the insured were to catch fire from an explosion and another separate building across town were to also to catch fire, provided those buildings are not separated solely by a common waterway, street, roadway, or railroad right of way, then the General Total Limit of $1,000,000 would apply separately to those premises.

Here, the undisputed and jointly stipulated facts confirm that, at all pertinent times, the OLD flood control system was (and remains) continuous in nature and separated only by

5

waterways. There is no dispute that each of the component flood control structures—the New Orleans Metro flood control structure, the Lower Ninth Ward flood control structure, and the New Orleans East flood control structure—was a continuous earthen levee/fronting protection/flood wall structure that encircled the land it protected. Ex. 60, Joint Stipulation, at ¶ 5. The New Orleans Metro flood control structure was separated from the western side of the Lower Ninth Ward flood control structure only by the Inner Harbor Navigation Canal. *Id*. at ¶ 3. The northern side of the Lower Ninth Ward flood control structure was separated from the southern side of the New Orleans East flood structure only by the Gulf Intracoastal Waterway. *Id*. at ¶ 4. Both the Gulf Intracoastal Waterway and the Inner Harbor Navigational Canal are waterways. *Id*. at ¶ 6. Thus, based on the plain methodology set forth in the Premises Endorsement, the individual component parts of the OLD levee system were a continuous structure and those component parts lay adjacent to one another, separated only by waterways. Therefore, there is only one "premises" within the meaning of the endorsement.

## **CONCLUSION**

The facts are undisputed: the three component parts of the OLD levee system at issue – the New Orleans East flood control system, the New Orleans Metro flood control system, and the Lower Ninth Ward flood control system – are contiguous to one another and separated solely by waterways. Consequently, based on the method for calculating the number of premises within the meaning of the endorsement, the OLD levee system constitutes one premises, not three. St. Paul is not liable for an additional $2,000,000 under the GL Form in the OLD Policy beyond the $1,000,000 General Total Limit it has already contributed to the Settlement Amount.

Respectfully submitted,

/s/ Ralph S. Hubbard III
Ralph S. Hubbard III (# 7040)
Joseph P. Guichet (#24441)
Rachel Meese (#25457)
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Telephone:  (504) 568-1990
Telecopier:  (504) 310-9195

and

S. Ault Hootsell III (# 17630)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130

**ATTORNEYS FOR ST. PAUL FIRE AND MARINE INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2009, I electronically filed the foregoing with the Clerk of Court by using the CMECF system which will send a notice of electronic filing to all counsel of record.

/s/ Ralph S. Hubbard III