**MINUTE ENTRY**
**DUVAL, J.**
**May 14, 2009**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **CIVIL ACTION** |
| | **NO. 05-4182** |
| **PERTAINS TO:** *Robinson* **(06-2268)** | **SECTION "K"(2)** |

A status conference attended by counsel for all parties. At that time a briefing schedule was confected. Accordingly,

**IT IS ORDERED** that:

Briefing on the issue of the admissibility of **Dalrymple deposition**:

> Plaintiffs' brief shall be filed no later than **May 21, 2009.**
> Defendants' opposition shall be filed no later than **May 28, 2009.**

Briefing on the issue of the **proffers made during trial**:

> Party seeking admission of proffer shall file brief no later than **June 15, 2009.**
> Party opposed to admission of proffer shall file response no later than **June 22, 2009.**

**Post Trial Briefs**--no Findings of Fact or Conclusions of Law are required to be filed and are optional.

**Briefs cannot exceed 125 pages; this order partially amends a pre-trial conference Minute Entry of May 4, 2009 (Doc. 18756)**

> Plaintiffs' Post-Trial Memorandum shall be filed by **June 18, 2009.**
> Defendants' Post Trial Memorandum shall be filed by **July 20, 2009.**
> Plaintiffs' Reply Memorandum shall be filed by **August 3, 2009.**

The Court also noted that it would provide the parties briefing notes–that is ideas and questions that the Court believes the post-trial briefs need to address.  This list is not exclusive and focuses on issues raised by the testimony adduced at trial.  This list is illustrative and does not outline all of the legal and factual issues which the parties should brief as well.   Moreover, some of the issue overlap and the order of listing should not influence the order and organization of the respective briefs.  The questions and/or comments the Court has are as follows:

**Causation**

> **Front/Back Wave Attack/Lateral Subsidence**
>
> Grass Lift Off:  Why is Dr. Bea right and the Defendants wrong?
>
> Plaintiffs are to explain why Ebersole pictures are not indicative of backside erosion.
>
> Subsidence - settlement - lateral displacement:  Why is Dr. Bea right and the Defendants wrong and is the lateral displacement issue tied to the front wave attack issue?  If the Court does not agree with Plaintiffs on lateral displacement, does that in any way compromise the wave attack theory?
>
> Explain why some levees failed and others did not and how that supports the Plaintiffs' theory of front side erosion and lateral subsidence.
>
> Brief the differences between the Plaintiffs' theory of wave attack and the Defendants' theory and explain why one theory is better than the other.
>
> Explain what Plaintiffs' theory is and if the Court agrees with the lateral displacement theory, but disagrees with its wave attack theory, what effect would that have?
>
> Why is one set of elevations better than the other and what is the significance of the elevations, vis-a-vis the theories?
>
> What caused the disparity in levee subsidence when the soil was similar?
>
> Is there correlation between the widening of the MRGO, on both or either sides, and the cause of breaching?

**Surge**

Discuss the importance of the duration of the surge and whether there was a second surge; and discuss the significance if there was or was not a second surge and the significance of the duration to Plaintiffs' theories of the case.

Explain why the Plaintiffs' time of surge estimate is accurate and what it's significance is?

Explain with precision what the difference is if the surge reached the 40 Arpent levee at 8:30 or 7:30.

What is the significance of the duration of the water level being above 10 feet?

Brief precisely what effect the second surge had, if any, and why would it have had as much effect since the wind had diminished substantially at the time of the second surge.

Explain the gauge at the IHNC and why that gauge either supports or does not support the Defendants' theory of two (2) surges.

**Foreshore Protection–Preventive Measures**

When and where should foreshore protection have been placed?  How would it have prevented the harm?  When should it have been installed?

What other preventive measures do plaintiffs maintain should have been installed?  When should they have been put in place?

**Effects**

Explain, especially in reference to the New Orleans East polder, what the MRGO did to exacerbate the flooding in those areas.  How would it have been prevented? How much water would have been in those polders, regardless of the existence of the MRGO as widened.

Explain the Plaintiffs' theory as to what would have happened had there had just been overtopping and not breaching in St. Bernard, the 9th Ward and New Orleans East.

Dr. Westerink seems to agree that the water did get higher in the IHNC and what flooding does he attribute to the MRGO by virtue of that higher water.

**Levees**

The Court is interested in whether the parties agree as to the reasons some levees were left standing. Was it simply because of erosion, as testified to by the Defendants? Or, are there other factors?

Why weren't all the levees obliterated considering Ebersole's opinion as to the tremendous volume of overtopping?

Explain the significance of the chart shown that seemed to underestimate the height of the levees along Reach 2.

**Negligence/Discretionary Function**

The Plaintiffs should brief the alleged acts of negligence committed by the Corps and explain why the acts are not protected by the Discretionary Function Exception - in other words, why they are not policy

Discuss all preventative measures that should have been taken and explain why these measures are not grounded in policy.

Explain why the surge protection device, reference the IHNC and the New Orleans East polder, would not be subject to the Discretionary Function Exception.

**Mandate**

The Plaintiff should brief at what point should an EIS have been filed and explain why that would have ultimately prevented the harm caused by the MRGO (assuming causation is proved).

**Expert Testimony Issues**

What is prejudice caused by failure to provide underlying runs of FEMA report when FEMA report has been made part of DOJ report?

What is the effect if the lateral displacement was 20% - 30% as testified by Dr. Bea in his deposition, rather than the 50% contained in his report that was stricken?

    Brief the scaling factor and its appropriateness.

    Why was the IPET surge data wrong?

**Damages**

    Brief how the Court is supposed to allocate damages in New Orleans East and the 9th Ward, since there would have been flooding regardless of the MRGO.

JS-10: 45MINS.