UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER:  05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO:  *Robinson* (No. 06-2268) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES REGARDING ADMISSIBILITY OF DEPOSITION TESTIMONY OF DR. ROBERT A. DALRYMPLE**

**I.     INTRODUCTION**

A central causation issue before this Court is the overtopping and breaching of the LPV hurricane protective structures that Plaintiffs maintain occurred because of the amplification of storm surge and waves attributable to the MR-GO's defective conditions.  Plaintiffs have consistently contended—and their expert reports demonstrate—that there were significant hydrodynamic effects along the Reach 1 and Reach 2 channels, IHNC, and 40 Arpent Canal Levee due to the funnel effect, channel widening, and loss of wetlands caused by the MR-GO's defective, unmitigated conditions.  These effects include intensified waves causing flood side erosion as well as earlier onset, rate, and duration of flooding.

In the MR-GO proceedings, the Government designated several experts on what happened during Katrina.  One of them—Dr. Robert Dalrymple—testified during discovery in the MR-GO class action proceedings.  During his deposition, Dr. Dalrymple testified that the lost wetlands would have buffered surge and waves, the wetland destruction caused increased surge and waves along Reach 2, and the IPET study concluded that the loss of the wetlands resulted in a three foot increase in the surge at Reach 2.  Thus, the testimony of the Government's own

expert witness supports Plaintiffs' theory of the case.  While Dr. Dalrymple was not called as an expert witness by the Government in this *Robinson* trial, his deposition testimony in the main MR-GO Consolidated Class Action proceeding is admissible under Federal Rule of Civil Procedure 32(a)(8) and thus, should be considered as admissible evidence for this trial.[1]

## II.    FACTS

Dr. Dalrymple was designated by the Government and other defendants as an expert witness in a companion MR-GO lawsuit (No. 05-4182) – MR-GO Consolidated Class Action Complaint – in which Plaintiffs seek class certification.[2]  Defendant filed his expert report on August 29, 2007 (PX 29) (attached as Exhibit "A") which included a discussion of causes of damages to Plaintiffs' property by means of overtopping and breaching of LPV structures.  *Id.* at pp. 2-3, 5-7.  With Sarah K. Sojah representing the United States, Dr. Dalrymple was deposed on September 18, 2007.  Plaintiffs have offered his deposition transcript (PX 28) (attached as Exhibit "B") in this *Robinson* trial on several issues, the Government has objected, and the Court has provisionally accepted the testimony subject to briefing.

---

[1] The Government may argue that Dr. Dalrymple's deposition testimony is inadmissible because he was not timely disclosed as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2). Of course, that rule applies to a party designating *his own* expert; not a party relying on his opponent's expert, whether disclosed or not.  But the issue of whether the declaration testimony is admissible turns on *prejudice.*  For example, in *United States v. Bailey*, 516 F.Supp.2d 998 (D.Minn. 2007) defendant moved to exclude the Government's use of an expert report because the expert allegedly was not timely disclosed.  The trial court denied the motion and held that even if the disclosure was untimely, since the expert—a soils scientist in a Clean Water Act case—was already known to the defendant, there was no surprise or prejudice.  *Id.* at 1011. Obviously, since Defendant was aware of its own expert's testimony, there can be no prejudice. The fact that the Government elected not to ask their expert any questions was a conscious tactical decision.

[2] Dr. Dalrymple is a distinguished coastal and oceanographic engineer, a Professor (and former Chair) of the Johns Hopkins University Department of Civil Engineering, an elected member of the National Academy of Engineering, a member of the ILIT team, and prolific author.  Exhibit "A" (PX 29) curriculum vitae.

During his testimony, Dr. Dalrymple—without objection—testified "there's a strongly held belief that the wetlands provide a buffer between storm surges of the Gulf of Mexico and the uplands, including New Orleans.  So if you have wetlands in place, then, in part, you should have a lower storm surge at New Orleans."  Exhibit "B" (PX 28) at 35:23-36:4.  He expanded on his opinion as to how the wetlands can serve as a buffer:

> Q.  That the northeastern point, that there was vegetation in front of large portions of it.
>
> A.  Yes. Wetlands.  Yes.
>
> Q.  Wetlands.
>
> A.  Yes.
>
> Q.  And they had an ameliorating or buffering effect during and after Katrina on the 40 Arpent Canal, did it not?
>
> A.  Well, yes.  *You would expect that they would absorb some of the energy of the surge and some of the energy of the waves.  And they also provided a buffer area for the water going over the MRGO levees.  That is, they would fill up that area prior to going to populated areas.*

*Id.* at 108:1-16 (emphasis added).

Dr. Dalrymple also confirmed that the levees were directly exposed "along the MRGO to the Gulf of Mexico, they are directly exposed over the wetlands. . . ."  *Id.* at 53:10-14.  The Government's expert also acknowledged that the waves that flooded Chalmette, for example, came from water over the earthen berms along the MR-GO Reach 2.  *Id.* at 137:19-138:14. Finally, Dr. Dalrymple testified that the Government's own IPET team found that the absence of wetlands led to an increased surge of a meter (approximately three feet and three inches) at Reach 2:

Q.  Okay.  Have you done any study to determine what the surge height would have been in Reach 2 if the wetlands had not been destroyed?

A.  I have not.  IPET has done some sensitivities of the ADCIRC modeling with and without wetlands.

Q.  Have you studied those or have an opinion on those, one way or the other?

A.  Only to the extent that I know there's about a one meter of water difference with and without the wetlands.

*Id.* at 143:6-17.

In truth, Dr. Dalrymple appears mistaken about the IPET report.  Plaintiffs are unable to find any data in the IPET report that supports his one meter.  It may be that he was referring to increased *waves*, but to be forthcoming with the Court, IPET does not seem to support this part of his deposition testimony.  Nevertheless, his other conclusions quoted above are grounded in sound science and evidence.

As the Court well knows, Plaintiffs have consistently contended that the destruction of the natural marsh barrier along Reach 2—both in front on the flood side of the channel and in the Central Wetlands Unit on the protected side—hastened the onset of devastating surge and wave action that caused LPV structure failures before overtopping due to side wave attack, failures after overtopping, and overtopping that directly led to the catastrophic flooding of St. Bernard Parish and Lower 9th Ward.  Among other things, Plaintiffs have shown that the MR-GO project added significantly to overtopping volumes on the Reach 1 and Reach 2 channels as is shown in Table 6.2 from Dr. Kemp's July 11th expert report.  Exhibit "C" (PX 191) at p. 142.[3]

---

[3] For example, along Reach 2, the LPV structure forms the side of a bathtub, and the amount of water going over the top of the levees increases when the MR-GO is present.  For Reach 1, the volume overtopping through the course of the entire Katrina event is 118,300 cubic feet per linear foot of that levee.  The comparable volume for Scenario 2C, without the MR-GO project,

Dr. Kemp also concluded that the water level at the 40 Arpent Canal Levee (depending on the location) ranged from a critical 2.4 to approximately 4.7 additional feet due to the MR-GO.  Exhibit "C" (PX 191) at p. 123, 131-32.

Understandably, the Government is fighting the admission of Dr. Dalrymple's deposition testimony.  The Government contends that the transcript is inadmissible.  The Government is wrong.

### III.   ARGUMENT

Federal Rule of Civil Procedure 32(a)(8) expressly provides:

> A deposition lawfully taken and, if required, filed in any federal-or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

The case law has since dispensed with the requirement that the offering party be a party to the prior litigation so long as the issues were the same and the resisting party was a party to the earlier proceeding.  In the words of Professors Wright and Miller:

> Moreover, the rule requires that the earlier action must have been between the same parties or their representatives or successors in interest. The depositions can be admitted when this test is satisfied but they are also frequently admitted when it is not. Thus, many cases have held that a deposition can be offered against one who was a party to the former suit even though the party now using the deposition was not.
>
> In addition, the rule requires that the earlier action must have been one "involving the same subject matter." The courts look not to the subject matter as such but to the issues. Depositions in the earlier

---

is 17,600 feet, or less than 15 percent of the volume with the enlarged MR-GO channel for Reach 1.  For Reach 2, the differences are less because there is a lot less flow going over the higher levees there, ranging for Scenario 1 from 5,800 to 77,000 cubic feet per linear foot. Nevertheless, the overflow is materially reduced by 40 percent for Scenario 2C where the Reach 2 MR-GO channel is absent.  Exhibit "C" (PX 191) at p. 142, Table 6.2.

> action cannot be used if the issues were different, but a substantial
> identity of issues, rather than precisely the same subject matter, is
> all that is required.
>
> Under the influence of Dean Wigmore, the courts have come
> increasingly to recognize that the real test is whether the former
> testimony was given upon such an issue that the party-opponent in
> that case had the same interest and motive in his cross-examination
> that the present opponent now has.  On this view a deposition may
> even be offered against one who was not a party to the earlier
> action if there were parties to it who had the same interest in cross-
> examination as the present party has.

Wright & Miller, 8A *Federal Practice and Procedure Civil 2d*, § 2150; *see also Moultrie Nat. Bank v. Travelers Indem. Co.,* 181 F.Supp. 444, 445 (M.D. Ga. 1959) (deposition testimony from same witness taken in a different lawsuit ruled admissible in subsequent action against different defendant brought to recover for same losses asserted in earlier suit); *Tobacco & Allied Stocks v. Transamerica Corp.*, 16 F.R.D. 545, 547 (D.C. Del. 1954) (Plaintiffs would be allowed to examine deponents' testimony in earlier cases involving different plaintiffs against the same defendant on similar causes of action and, upon a showing of identity of issues or relevancy to present defenses, would be allowed to offer depositions in present action); *Rivera v. America Export Lines, Inc.*, 13 F.R.D. 27, 29-30 (S.D.N.Y. 1952) (Deposition of employee, taken in his action against employer for injuries, may be used against the employer in his wife's suit for employee's later death from those injuries); *Copeland v. Petroleum Transit Co.,* 32 F.R.D. 445, 447 (E.D.S.C. 1963) (Deposition taken for use in another case could be used in instant case, when substantially same issues were involved in the two cases and the defendant in instant case had had adequate opportunity to and did cross examine deponent with same motive and interest); *see also, Aileen Mills Co. v. Ojay Mills, Inc.*, 192 F.Supp. 131, 134-35 (S.D.N.Y. 1960) (Deposition taken in prior action by other plaintiffs against same defendants, was part of record where submitted to district court upon motion to quash service).

In the present trial, all the requirements of admissibility have been met.  First, the "prior proceeding" is actually a consolidated part of the present MR-GO proceeding.  It is an action against the Government based on the MR-GO's adverse and exacerbating effects during Hurricane Katrina.  Second, the Government was a party to that consolidated lawsuit.  Finally, the Government had the same interests and motives in the companion case as it does in the present case (*i.e.* to avoid liability due to the MR-GO).

## IV.   CONCLUSION

Pursuant to Rule 32(a)(8), Dr. Dalrymple's deposition testimony on central issues in this case is admissible.

Dated: May 21, 2009                                   Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell

Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone:  (213) 347-0290
Fax:  (213) 347-0298

**Law Offices of Joseph M. Bruno**
By: s/ Joseph M. Bruno
Joseph M. Bruno (LSBA No. 3604)
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493

**The Andry Law Firm, LLC**
By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899

**Domengeaux Wright Roy & Edwards LLC**
Bob F. Wright (LSBA No. 13691)
James P. Roy (LSBA No. 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668

Facsimile:  (504) 585-1788

**Fayard & Honeycutt**
Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Ranier, Gayle & Elliot, LLC**
N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

**McKernan Law Firm**
Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Law Office of Elwood C. Stevens, Jr., a
Professional Law Corporation**
Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

Telephone: (337) 233-3033
Facsimile:  (337) 233-2796

**Girardi & Keese**
Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.**
Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**Gainsburgh, Benjamin, David, Meunier &
Warshauer, LLC**
Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**
Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Robinson, Calcagnie & Robinson, Inc.**
Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

**Barron & Budd, P.C.**
Russell W. Budd
Thomas M. Sims
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Telephone:  (214) 521-3605
Fax: (214) 520-1181

<u>**CERTIFICATE OF SERVICE**</u>

I, Pierce O'Donnell, hereby certify that on May 21, 2009, I caused to be served

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES REGARDING**

**ADMISSIBILITY OF DEPOSITION TESTIMONY OF DR. ROBERT A. DALRYMPLE**,

upon Defendants' counsel, Robin D. Smith, George Carter, Keith Liddle, and Richard Stone by

ECF and email at robin.doyle.smith@usdoj.gov; george.carter@usdoj.gov,

keith.liddle@usdoj.gov, and richard.stone@usdoj.gov.

<u>/s/ Pierce O'Donnell</u>