

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   MAY 2 2 2009

LORETTA G. WHYTE
CLERK

No. 07-30706

United States Court of Appeals
Fifth Circuit

# F I L E D

April 30, 2009

Charles R. Fulbruge III
Clerk

D.C. Docket No. 2:05-CV-4182
D.C. Docket No. 2:05-CV-4181

In Re: KATRINA CANAL BREACHES LITIGATION

----------------------------------------

COLLEEN BERTHOLET, Etc; ET AL

      Plaintiffs

MAUREEN O'DWYER, ET AL.

      Plaintiffs - Appellants

  v.

B & K CONSTRUCTION COMPANY, inc; BOH BROS CONSTRUCTION
COMPANY LLC

      Defendants - Appellees

Appeal from the United States District Court for the Eastern District of Louisiana at New Orleans

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

_ Fee_____
_ Process_____
X Dktd_____
_ CtRmDep_____
_ Doc. No._____

# J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: 2 2 MAY 2009

A True Copy
Attest 2 2 MAY 2009

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 30, 2009

Charles R. Fulbruge III
Clerk

_____

No. 07-30771

_____

D.C. Docket No. 2:05-CV-4182
D.C. Docket No. 2:05-CV-4181
D.C. Docket No. 2:06-CV-4389
D.C. Docket No. 2:06-CV-5786
D.C. Docket No. 2:05-CV-4182
D.C. Docket No. 2:05-CV-4181
D.C. Docket No. 2:06-CV-4389
D.C. Docket No. 2:06-CV-5786

MAUREEN O'DWYER; SALLY EGERTON RICHARDS; STEPHANIE PORTER, doing business as Interior Specialties LLC; EVELYN JORDAN JORDAN; CHARLES EDWARD JORDAN; ET AL

      Plaintiffs - Appellants

  v.

B & K CONSTRUCTION COMPANY INC; BOH BROTHERS CONSTRUCTION CO; BURK KLEINPETER INC; C R PITTMAN CONSTRUCTION COMPANY INC; MODJESKI & MASTERS INC; EUSTIS ENGINEERING COMPANY INC; GOTECH INC

      Defendants - Appellees

Appeals from the United States District Court for the Eastern District of Louisiana at New Orleans

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE:   **2 2** MAY **2009**

A True Copy
Attest **2 2** MAY **2009**

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

# F I L E D

April 30, 2009

Charles R. Fulbruge III
Clerk

_____

No. 07-31141

_____

D.C. Docket No. 2:05-CV-4182
D.C. Docket No. 2:05-CV-4181
D.C. Docket No. 2:05-CV-4191
D.C. Docket No. 2:05-CV-4568
D.C. Docket No. 2:05-CV-5237
D.C. Docket No. 2:05-CV-6073
D.C. Docket No. 2:05-CV-6314
D.C. Docket No. 2:05-CV-6324
D.C. Docket No. 2:05-CV-6327
D.C. Docket No. 2:05-CV-6359
D.C. Docket No. 2:06-CV-20
D.C. Docket No. 2:06-CV-225
D.C. Docket No. 2:06-CV-886
D.C. Docket No. 2:06-CV-1885
D.C. Docket No. 2:06-CV-2278
D.C. Docket No. 2:06-CV-2287
D.C. Docket No. 2:06-CV-2346
D.C. Docket No. 2:06-CV-2545
D.C. Docket No. 2:06-CV-3529
D.C. Docket No. 2:06-CV-4065
D.C. Docket No. 2:06-CV-4389
D.C. Docket No. 2:06-CV-4634
D.C. Docket No. 2:06-CV-4931
D.C. Docket No. 2:06-CV-5032
D.C. Docket No. 2:06-CV-5042
D.C. Docket No. 2:06-CV-5159
D.C. Docket No. 2:06-CV-5161
D.C. Docket No. 2:06-CV-5163
D.C. Docket No. 2:06-CV-5260
D.C. Docket No. 2:06-CV-5308
D.C. Docket No. 2:06-CV-5367

D.C. Docket No. 2:06-CV-5471
D.C. Docket No. 2:06-CV-5771
D.C. Docket No. 2:06-CV-5785
D.C. Docket No. 2:06-CV-5786
D.C. Docket No. 2:06-CV-5937
D.C. Docket No. 2:06-CV-6473
D.C. Docket No. 2:06-CV-6642
D.C. Docket No. 2:06-CV-7682
D.C. Docket No. 2:06-CV-8708
D.C. Docket No. 2:06-CV-11208
D.C. Docket No. 2:07-CV-206
D.C. Docket No. 2:07-CV-647
D.C. Docket No. 2:07-CV-993
D.C. Docket No. 2:07-CV-1113
D.C. Docket No. 2:07-CV-1284
D.C. Docket No. 2:07-CV-1286
D.C. Docket No. 2:07-CV-1288
D.C. Docket No. 2:07-CV-1289
D.C. Docket No. 2:07-CV-1349

COLLEEN BERTHELOT, Wife of JACKIE BERTHELOT; HEBER DUNAWAY;
ERIC ANDERSON; AMY JANUSA, Wife of; ET AL

      Plaintiffs - Appellants

  v.

EUSTIS ENGINEERING COMPANY INC; MODJESKI & MASTERS INC;
BOH BROTHERS CONSTRUCTION CO;

      Defendants - Appellees

Appeal from the United States District Court for the Eastern District of Louisiana at New Orleans

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

# JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: 2 2 MAY 2009

A True Copy

Attest **2 2** MAY **2009**

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____

Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

# FILED

April 30, 2009

Charles R. Fulbruge III
Clerk

No. 07-30706

IN RE: KATRINA CANAL BREACHES LITIGATION

-----------------------------------------------------------------

COLLEEN BERTHELOT, Etc; ET AL

                                  Plaintiffs

MAUREEN O'DWYER, ET AL

                                  Plaintiffs-Appellants

v.

B & K CONSTRUCTION CO INC; BOH BROTHERS CONSTRUCTION CO
LLC

                                  Defendants-Appellees

CONSOLIDATED WITH

No. 07-30771

In Re: Katrina Canal Breaches Litigation

---------------------------------------------------------

COLLEEN BERTHELOT; ET AL

                                  Plaintiffs

v.

B & K CONSTRUCTION CO INC; BOH BROTHERS CONSTRUCTION CO
LLC;  BURK KLEINPETER INC; MODJESKI & MASTERS INC

Defendants-Appellees

---

MAUREEN O'DWYER; SALLY EGERTON RICHARDS; STEPHANIE
PORTER, doing business as Interior Specialties LLC; EVELYN JORDAN
JORDAN; CHARLES EDWARD JORDAN; ET AL

Plaintiffs-Appellants

v.

EUSTIS ENGINEERING COMPANY INC; MODJESKI & MASTERS INC; B
& K CONSTRUCTION COMPANY INC; BURK KLEINPETER INC;
GEOTECH INC

Defendants-Appellees

---

MAUREEN O'DWYER; HAROLD GAGNET; SALLY EGERTON RICHARDS;
SHANE PORTER; STEPHANIE PORTER; ET AL

Plaintiffs-Appellants

v.

EUSTIS ENGINEERING CO INC; MODJESKI & MASTERS INC; B & K
CONSTRUCTION CO INC; BURK KLEINPETER INC; GEOTECH INC;
BOH BROTHERS CONSTRUCTION CO LLC

Defendants-Appellees

---

MAUREEN O'DWYER, ET AL

Plaintiffs-Appellants

v.

2

EUSTIS ENGINEERING INC; MODJESKI & MASTERS INC; BOH
BROTHERS CONSTRUCTION CO LLC; B & K CONSTRUCTION CO INC;
BURK KLEINPETER INC; GEOTECH INC

                              Defendants-Appellees

---

PONTCHARTRAIN BAPTIST CHURCH; ARTHUR C SARGENT; LUCY T
SARGENT; PAMELA YOUNG SMALLPAGE; RICHARD MAITLAND
SMALLPAGE, JR; MR H J BOSWORTH; MRS H J BOSWORTH; ROTHFOS
CORPORATION; INTERAMERICAN COFEE INC; NOBLES AMERICAS
CORPORATION

                              Plaintiffs-Appellants

v.

MODJESKI & MASTERS INC; BOH BROTHERS CONSTRUCTION CO

                              Defendants-Appellees

—————

No. 07-31141

—————

In Re: Katrina Canal Breaches Litigation
---------------------------------------------------------

COLLEEN BERTHELOT, Wife of JACKIE BERTHELOT; HEBER
DUNAWAY; ERIC ANDERSON; AMY JANUSA; Wife of; ET AL

                              Plaintiffs-Appellants

v.

EUSTIS ENGINEERING COMPANY INC; MODJESKI & MASTERS INC;
BOH BROTHERS CONSTRUCTION CO LLC

                              Defendants-Appellees

3

---

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CV-4181

---

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Primarily at issue is a summary judgment rejecting Appellants' asserted admiralty jurisdiction over a claimed tort. The basis for that jurisdictional claim is a drainage canal's being dredged years before Hurricane Katrina. AFFIRMED.

## I.

Following Hurricane Katrina in 2005, thousands of claims seeking $400 billion in damages were filed against the United States Army Corps of Engineers (the Corps) and various private engineering (Engineers) and construction (Contractors) entities. Plaintiffs claimed Defendants were responsible for the negligent design, construction, and maintenance of the levees that were breached and caused the flooding of New Orleans, Louisiana.

At issue is the breach along the 17th Street Canal. Also known as the Metairie Relief Canal or Metairie Outfall Canal, it is a 2.4-mile-long, 220-foot-wide drainage canal whose levees separate New Orleans from Lake Pontchartrain. The canal is the main storm-water drainage outlet for both Orleans and Jefferson Parishes. It starts at Pump Station No. 6 at Highway 610 and empties into Lake Pontchartrain. Its northern part is filled with lake water

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and has been used as a mooring location for small fishing vessels. Its southern part is generally dry, but occasionally fills with rain water.

In 1974, the Sewerage and Water Board of New Orleans (the Board) initiated the 17th Street Drainage Canal Improvement Project, by applying to the Corps for a permit to dredge the canal to improve the stability of its existing levees. The Corps rejected the application in 1977.

Between 1981 and 1982, Defendants Eustis Engineering Company, Inc., and Modjeski & Masters, Inc., furnished the Corps with engineering and geotechnical reports on the canal's levee stability and possible consequences of its being dredged. The Board reapplied for a permit in 1983; and, after extensive debate between state and local authorities, experts, and the general public, the permit was issued in 1984.

Modjeski & Masters was retained to prepare drawings and specifications for the project, as well as to oversee its construction. Eustis Engineering was retained to conduct additional geotechnical analysis of the canal's walls. After the drawings and specifications were submitted in 1990, Boh Brothers was retained to execute the construction phase of the project.

Boh Brothers dredged the canal south of the Hammond Highway Bridge by using a "flexi float" barge trucked to the site and assembled with a crane on board. Boh Brothers then installed walls the entire length of the dredging project. The engineering and construction services were either completed, recorded, or accepted by the Corps at least five years prior to Hurricane Katrina (2005).

Several weeks after Hurricane Katrina, numerous actions began being filed in federal district court against the United States, federal governmental entities (such as the Corps), the State of Louisiana, Louisiana state and local agencies and officials (in their official and individual capacities), and others.

5

Most of the claims were either abandoned or dismissed based on sovereign immunity, or pursuant to Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim) and 56(c) (summary judgment). This appeal involves only the private engineering and construction entities that participated in the 17th Street Canal project. Plaintiffs claim negligent design, construction, and maintenance of those improvements.

In June 2006, Engineers moved for dismissal, asserting Plaintiffs' claims were barred by the five-year peremption provisions of LA. REV. STAT. ANN. § 9:5607 (five-year peremptive period for actions against engineers), because any work on the levees had taken place at least five years prior to the hurricane. Plaintiffs responded that the state peremption statute was not retroactive, and that further discovery was necessary to reveal possible fraud (the peremptive period does not apply where fraud is committed, *see* § 9:5607(E)). One Plaintiff claimed maritime jurisdiction.

Noting that the state peremption provision extinguished all rights to a claim arising from Engineers' conduct that took place more than five years prior to Hurricane Katrina, the district court concluded there was no genuine issue of material fact regarding when the services were performed:

> Plaintiffs argue that there are genuine issues of material fact as to when certain work was completed and if other work was performed and not revealed in preliminary discovery. Plaintiffs have not submitted any affidavits or other competent evidence indicating that the information submitted by the Engineering Defendants that the services and the acceptance of those services is incorrect. Plaintiffs hypothesize and speculate but do not overcome the prima facie evidence submitted by the engineers. Based upon the extensive documentary evidence submitted by the engineers, and the amount of public information available to plaintiffs as well as information supplied to them by defendants, the Court finds that further discovery is not warranted.

6

Likewise, the district court concluded there was no genuine issue of material fact regarding the work performed by Engineers *within* the peremptive period in areas other than where the breach occurred  because Plaintiffs failed to submit "competent evidence to indicate that any work performed on the remote area would have any bearing on any of the areas that failed". Because some Plaintiffs failed to assert fraud in their complaints, and others failed to submit competent evidence to support fraud claims, Plaintiffs' request for further discovery was also denied.

Finally, regarding the one Plaintiff claiming maritime jurisdiction, the district court ruled that the complaint was "indecipherable", and the claims invoking maritime jurisdiction were "conclusory, non-specific, and without context".

Therefore, Engineers' dismissal motions were granted on 8 December 2006, pursuant to Federal Rule of Civil Procedure 54(b) (permitting a district court to enter a final judgment on multiple claims or involving multiple parties "if the court expressly determines that there is no just reason for delay"). That same day, and essentially for the same reasons, the district court granted similar relief to Contractors, pursuant to  LA. REV. STAT. ANN. § 9:2772 (five-year peremptive period for actions "arising out of an engagement of planning, construction, design, or building immovable or movable property"). A final judgment in favor of all Defendants was also entered 8 December 2006.

Subsequently, new claims were filed against Defendants. The district court ordered additional motions submitted concerning those new claims. Defendants again filed  joint dismissal motions, including asserting *res judicata*/collateral estoppel. To manage the numerous claims presenting essentially the same issues, the district court ordered a court-approved Plaintiffs Liaison Committee (PLC) to file a Superseding Master Consolidated Class Action Complaint. That

complaint was filed on 15 March 2007. (Some Plaintiffs objected to this complaint, asserting that neither PLC nor the district court had authority to supersede original filings. Those Plaintiffs appeal separately from PLC. Both groups, however, raise the same claims.)

To avoid state-law peremption, PLC claimed admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) and the Admiralty Extension Act, 46 U.S.C. App. § 740 (current version at 46 U.S.C. § 30101). That jurisdiction would allow the action, *inter alia*, to proceed under the maritime doctrine of laches. In its consolidated complaint, PLC alleged: Eustis Engineering Company, Modjeski & Masters, and Boh Brothers contributed to negligent dredging that created a deeper channel, allowing seepage of water to weaken the 17th Street Canal and cause subsequent flooding. As discussed, each of those Defendants had been dismissed in December 2006, pursuant to the Louisiana peremption statutes.

In response to Defendants' joint dismissal motions, and regarding admiralty jurisdiction, Plaintiffs asserted they satisfied both the location and connection-to-maritime-activity tests for admiralty jurisdiction, discussed *infra*. They maintained the location test was satisfied because the canal was a navigable waterway governed by the Inland Navigation Rules, 33 U.S.C. §§ 2001-2073 (applying to all vessels upon the inland waters of the United States) and 33 C.F.R. §§ 329.1 and 329.4 (generally defining "navigable waters" as those that have been used "to transport interstate or foreign commerce"). Plaintiffs also claimed the canal was navigable because one could travel from it to Lake Pontchartrain to the Gulf of Mexico and because the canal had hosted a commercial fishing fleet. According to Plaintiffs, the second test, connection-to-maritime-activity, was satisfied because Defendants engaged in such activity – design and construction of flood walls for a navigable waterway system.

8

On 29 June 2007, the district court ruled there was no admiralty jurisdiction because the canal was not a "navigable body of water"; instead, it was a "drainage ditch". The court reasoned that "the concept of navigability is inexorably tied to the concept of the body of water in question being susceptible of being used for commercial purposes". It did so pursuant to *The Daniel Ball*, 77 U.S. 557, 564 (1870), *superseded by statute*, Clean Water Act, 33 U.S.C. §§ 1311(a) & 1362(7) (prohibiting discharge of pollutants into navigable waters and defining "navigable waters" as "waters of the United States, including the territorial seas"), *as stated in Rapanos v. United States*, 547 U.S. 715, 731 (2006) (noting that the meaning of "navigable waters" in CWA was broader than "the traditional understanding of that term").

In so ruling, and under Federal Rule of Evidence 201, the district court took judicial notice of the following:

> While there might exist a fishing fleet at the reach of the canal, commercial activity is blocked in the canal by virtue of the Old Hammond Bridge. That bridge acts . . . like [a dam because] it is so low that no commercial vessel would ever be able to traverse from the reach into the canal proper; indeed, the bridge substantially limits the amount of recreational traffic on the canal by virtue of the height restriction caused by that bridge. Also, . . . the property values around the canal would be adversely affected if there were an attempt to open the waters to commercial traffic. Moreover, the sole purpose of this waterway is to provide an outlet for drainage water being pumped from New Orleans and Jefferson Parish to be emptied into Lake Pontchartrain. There is simply no commercial activity involved along this body of water. Furthermore, the location of the dredging at issue is substantially farther inland than the location of the bridge, making it even more remote in character. Likewise, the breaches were substantially to the south of the Old Hammond Highway Bridge.

Having found that the Old Hammond Highway Bridge effectively bars commercial navigation of the canal, the court concluded it is *not* a navigable

9

body of water, relying on the rationale of *LeBlanc v. Cleveland*, 198 F.3d 353, 359 (2d Cir. 1999) (holding that subsequent damming of a previously navigable waterway rendered it non-navigable). And, having concluded that the canal is non-navigable, the district court did not reach the connection-to-maritime-activity test, discussed *infra*.

Accordingly, the district court dismissed all actions claiming admiralty jurisdiction related to the 17th Street Canal; granted Defendants' dismissal motions based on peremption; granted, for lack of competent evidence, Defendants' dismissal motions regarding the claims for fraud or failure to disclose the risks posed by the 17th Street Canal's levee system; and, because the court dismissed all actions against Defendants, it ruled that summary-judgment motions based on *res judicata*/collateral estoppel were moot. The final judgment was entered 11 September 2007.

## II.

A summary judgment is reviewed *de novo*, applying the same legal standards as the district court. *E.g., Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). Such judgment is proper when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(c). All evidence is viewed in the light most favorable to the non-movant. *E.g.,Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Summary judgment may be affirmed "on any ground supported by the record, even if it is different from that relied on by the district court". *E.g., Gray Law LLP v. Transcont'l Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009) (per curiam) (citation omitted).

Primarily at issue is whether admiralty jurisdiction exists. Not at issue is the district court's conclusion that, under state law, Plaintiffs' claims are barred by peremption. (In November 2008, some Plaintiffs moved for leave to file a

supplemental brief, claiming newly-discovered documents establishing that Defendants committed a continuing tort under Louisiana law preclude dismissal "on a summary basis". The motion was denied 14 November 2008. Oral argument was held on 5 December 2008, and the motion for reconsideration of the 14 November 2008 order was denied 15 January 2009.)

## A.

The claimed admiralty jurisdiction flows from Article III of the Constitution. *See* U.S. CONST. art. III, § 2. Pursuant to it, Congress vested federal courts with original and exclusive jurisdiction over "admiralty or maritime" matters. *See* 28 U.S.C. § 1333(1). In 1948, Congress extended admiralty jurisdiction to "all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land". *See* 46 U.S.C. App. § 740 (current version at 46 U.S.C. § 30101 ("cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated by land")). As discussed *supra*, for admiralty jurisdiction over the tort claim at issue, both the location and the connection-to-maritime-activity tests must be satisfied. *E.g., Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

The *location test* requires the tort to have occurred on navigable water or, for an injury suffered on land, to have been caused by a vessel on navigable water. *Id.* (citing 46 U.S.C. App. § 740); *see also Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carrol & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999). An artificial canal can constitute a navigable body of water, provided it is used as "a highway for commerce between ports and places in different states". *In re Boyer*, 109 U.S. 629, 632 (1884).

11

The *connection-to-maritime-activity test* has two sub-parts:

A court, first, must assess the general features of the type of incident involved to determine whether the incident has a *potentially disruptive impact on maritime commerce.* Second, a court must determine whether *the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.*

*Grubart,* 513 U.S. at 534 (emphasis added; internal citations and quotation marks omitted); *see also, e.g., Texaco Exploration & Prod. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 770-71 (5th Cir. 2006); *Strong v. B.P. Exploration & Prod., Inc.,* 440 F.3d 665, 669 (5th Cir. 2006). "The key inquiry is whether the allegedly tortious activity is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Strong,* 440 F.3d at 669 (citations and internal quotation marks omitted).

In claiming the district court erred in concluding that the canal is not a navigable body of water, Plaintiffs assert: the court based summary judgment on its own subjective beliefs, rather than facts not subject to reasonable dispute, *see* FED. R. EVID. 201; and, the canal is a navigable waterway because one can travel from it to Lake Pontchartrain to the Gulf of Mexico, and because it hosts a fishing fleet. (Along this line, Plaintiffs claim their request for further discovery should have been granted.)

Next, Plaintiffs claim the connection-to-maritime-activity test is met pursuant to the earlier-cited *Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527 (1995), because the instant actions involve injuries on land caused by the dredging activities of a barge on a navigable waterway. Pursuant to their claim that admiralty jurisdiction exists, Plaintiffs contend, *inter alia,* that the

12

doctrine of laches applicable to maritime torts, rather than the state peremption law, applies.

Defendants counter there is no admiralty jurisdiction because: regarding the location test, the canal is *not* a navigable body of water, due to the lack of any commercial activity; and, even if it can be considered navigable, its being dredged for flood-control purposes, without more, does not satisfy the connection-to-maritime-activity test. Concerning the latter, Defendants claim admiralty law should not preempt state law because the dredging project implicated only state and local interests. Finally, Defendants assert that, to the extent the district court's 8 December 2006 ruling was not appealed as to Engineers, all subsequent claims against them are subject to *res judicata*.

We will assume, *arguendo*, that the location test is met, *see, e.g., Egorov*, 183 F.3d at 456 (assuming, without deciding, that the claims had a sufficient connection-to-maritime activity to satisfy the "connection" prong of the admiralty-jurisdiction test, but concluding the "location" prong was not met). We will also assume, *arguendo*, that the first element of the connection-to-maritime-activity test is met: dredging and subsequent flooding had a potentially disruptive impact on maritime commerce. Nevertheless, for the second element of the connection-to-maritime-activity test, and as discussed below, Plaintiffs fail to establish that Defendants' actions bore a *substantial* (sometimes referred to in opinions as "significant") relationship to traditional maritime activity. This second element is not "easily analyzed". *See Egorov*, 183 F.3d at 456 (loss of a potential recovery of attorney's fees).

Our analysis for this second element is guided by four Supreme Court maritime-connection decisions. The requirement that a tort bear a substantial relationship to traditional maritime activity was first articulated in *Executive*

*Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972). *Executive Jet* involved an airplane's crashing on takeoff into navigable water. *Id.* at 250. Recognizing "the fact that an aircraft happens to fall on navigable waters, rather than on land, is wholly fortuitous", and noting extensive criticism of the locality rule as the sole test to determine admiralty jurisdiction, the Court held: the airplane accident did not bear a significant relationship to traditional maritime activity; and, therefore, it was not cognizable in admiralty. *Id.* at 253-68. Particularly relevant to our analysis is the Court's discussion on the development of admiralty law:

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules–rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.

*Id.* at 269-70.

Subsequent Supreme Court decisions further clarified the maritime-connection test. In *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 669 (1982), two pleasure boats collided on navigable waters. The Court ruled "there is no requirement that the maritime activity be an exclusively commercial one". *Id.* at 674 (internal quotation marks omitted). Because the tort at issue involved "negligent operation of a vessel on navigable waters", it had "a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction". *Id.* The Court explained:

14

> Not every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction. In *Executive Jet*, for example, we concluded that the sinking of the plane in navigable waters did not give rise to a claim in admiralty even though an aircraft sinking in the water could create a hazard for the navigation of commercial vessels in the vicinity. However, when this kind of potential hazard to maritime commerce arises out of activity that *bears a substantial relationship to traditional maritime activity, as does the navigation of the boats in this case*, admiralty jurisdiction is appropriate.

*Id.* at 675 n.5 (emphasis added).

*Sisson v. Ruby*, 497 U.S. 358 (1990), concerned a fire on a yacht moored at a marina; it and neighboring non-commercial vessels were damaged. *Id.* at 360. The Court provided additional guidance on how the connection-to-maritime-activity test should be analyzed.

First, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity". *Id.* at 363. In that regard, the relevant activity that gave rise to the incident must be defined "by the general conduct from which the incident arose". *Id.* at 364. In *Sisson*, the relevant activity was defined as "the storage and maintenance of a vessel at a marina on navigable waters". *Id.* at 365.

Second, the court must decide whether the relevant activity has a "substantial relationship to a traditional maritime activity". *Id.* (internal quotation marks omitted). In addition to navigation, such traditional maritime activities include "at least . . . any other activities traditionally undertaken by vessels, commercial or noncommercial". *Id.* at 367. The Court answered the second inquiry in the affirmative. *Id.* ("Clearly, the storage and maintenance of a vessel at a marina on navigable waters is substantially related to 'traditional

maritime activity' given the broad perspective demanded by the second aspect of the test."). Therefore, admiralty jurisdiction existed.

The most recent of the Court's maritime-activity decisions concerns an activity somewhat similar to the one at issue here – repair and maintenance work performed from a vessel. In *Grubart* (1995), a dredge and dock construction company used a crane positioned on its barge to replace wooden pilings around the piers of several bridges across the Chicago River. 513 U.S. at 530. Seven months after the work had been completed, the walls of a freight tunnel running under the river collapsed, allowing river water to run through the tunnel and flood buildings in downtown Chicago. *Id*. Replacing the pilings was claimed to have weakened the tunnel structure. At issue was whether admiralty jurisdiction existed. *Id*.

In *Grubart*, the location test was, of course, easily satisfied: the work was performed from a barge stationed in navigable water. *Id*. at 534. Turning to the maritime-connection test, and for the first of the two elements, the Court generally described the activity at issue as "damage by a vessel in navigable water to an underwater structure", and concluded that such activity had "a potentially disruptive impact on maritime commerce". *Id*. at 539 (reasoning that the incident "could lead to restrictions in the navigational use of the waterway during required repairs" and to "disruption of the watercourse itself").

Concerning the second element of the maritime-connection test, the Court determined that replacing pilings was substantially related to traditional maritime activity, "for barges and similar vessels have traditionally been engaged in repair work similar to what [the dredge and dock construction company] contracted to perform here". *Id*. at 540 (also noting "many cases hold[] that a dredge, or a barge with a pile driver, employed on navigable waters, is subject to maritime jurisdiction").

16

This circuit's maritime-connection decisions show we have properly exercised admiralty jurisdiction with caution. *See, e.g., Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634, 648-49 (5th Cir. 1985) ("Since exercise of admiralty jurisdiction may preempt state regulation of matters traditionally committed to local resolution, courts are to interpret congressional grants of admiralty jurisdiction restrictively."). *Woessner*, a pre-*Grubart* decision, held that tort claims of workers exposed to asbestos while aboard vessels did not bear a significant relationship to maritime activity because "[r]esolution of [those] claims [did] not require the expertise of an admiralty court as to navigation or water-based commerce". *Id.* at 649. *Woessner* also concluded there was no unique federal interest in uniform treatment of asbestos claims. *Id.* at 648.

Our post-*Grubart* decision in *Scarborough v. Clemco Industries*, 391 F.3d 660 (5th Cir. 2004), involved a seaman who claimed that the hoods he wore when sandblasting vessels were defective and caused him to inhale silica and develop silicosis. *Id.* at 662. After the activity at issue was defined as an "injury to a . . . seaman due to the negligence of a non-employer", our court analyzed whether the incident had a substantial relationship to maritime activity. *Id.* at 665 (internal quotation marks omitted). *Scarborough* concluded that it did for several reasons: the seaman's employer had already been found liable for negligence under the Jones Act; the employer failed to provide safe and protective gear to the seaman; and at least one of the tortfeasors (employer) was engaged in traditional maritime activity (sandblasting). *Id.* at 665-66.

Similarly, the earlier-referenced *Strong v. B.P. Exploration*, 440 F.3d 665 (5th Cir. 2006), held that failure to provide a safe workplace aboard a vessel was "a maritime tort". *Id.* at 669. In *Strong*, a wireline worker on an offshore oil-well platform was injured while loading equipment onto a liftboat jacked up next to

17

the platform. *Id.* at 667. Noting that "a shipowner, or a charterer in control of a vessel, owes a duty of care to those working on the vessel", and citing the Supreme Court's decisions that "applied maritime law to actions arising out of a failure adequately to satisfy that duty", our court concluded that, by alleging an unsafe condition on the liftboat, a maritime tort claim was stated. *Id.* at 669-70. Accordingly, our court found it unnecessary to analyze whether the activity of loading equipment onto a vessel constituted a traditional maritime activity. *Id.* at 670.

In *Texaco Exploration & Production v. AmClyde Engineered Products Co.*, 448 F.3d 760 (5th Cir. 2006), our court declined to exercise admiralty jurisdiction over a products-liability action against a crane manufacturer. *Id.* at 765. There, a defective crane allegedly caused a deck section to fall into the Gulf of Mexico as it was being placed on a support frame. *Id.* at 766. The activity at issue was part of a development project for the production of oil on the Outer Continental Shelf. *Id.* at 765. Our court held that, under *Grubart*, the claims were insufficiently connected to traditional maritime activity. *Id.* at 771. Unlike *Grubart*, where the alleged damage was "inextricably tied to the navigable waterway", the complaint in *AmClyde* arose "from the development of the resources of the Outer Continental Shelf, and [the] complaint would not exist but for the construction of [the development project]". *Id.* Therefore, "[t]o the extent that maritime activities surround[ed] the construction work underlying the complaint, any connection to maritime law [was] eclipsed by the construction's connection to the development of the Outer Continental Shelf". *Id.*

The above-cited authorities support our conclusion that Defendants' activity is *not* substantially related to traditional maritime activity. Plaintiffs' claims do not raise issues of navigation or other more traditional maritime

activities. *See Executive Jet*, 409 U.S. at 270. Similarly, Plaintiffs do not allege injuries to seamen, *see Scarborough*, 391 F.3d at 665, nor do they claim a violation of a duty to provide a safe workplace aboard a vessel, *see Strong*, 440 F.3d at 669-70.

Examining the "general character" of Defendants' activity, the dredging of the canal should be characterized as construction/repair work performed from a vessel to allow proper drainage of the City's flood water. Along that line, Plaintiffs' claim that *Grubart* is factually analogous is unpersuasive.

In *Grubart*, the repair and maintenance work was done to improve a navigable river. *See Grubart*, 513 U.S. at 540. Here, the canal-improvement project was carried out in essentially a drainage ditch, to improve local drainage and prevent local flooding. Indeed, the record reflects that dredging could have been performed from the levees.

Therefore, the improvement project implicated only local, land-based interests, and the connection, if any, to admiralty law is "wholly fortuitous". *Executive Jet*, 409 U.S. at 267. To the extent that Defendants' dredging implicates connection to maritime law, that connection is overshadowed greatly by the canal project's connection to the local interest of drainage and flood-prevention. *See AmClyde*, 448 F.3d at 771.

In this regard, Plaintiffs' claims raise questions traditionally governed by state law. As noted *supra*, Engineers' and Contractors' activities are amply regulated by such law. The resolution of those claims does not require, *inter alia*, "the expertise of an admiralty court as to navigation or water-based commerce". *Woessner*, 757 F.2d at 649. Therefore, we conclude that Defendants' activity involving local drainage cannot be said to be "so [substantially] related to

activity traditionally subject to admiralty law" that imposing admiralty jurisdiction would be warranted. *Strong*, 440 F.3d at 669.

### B.

Some Plaintiffs contest the district court's case-management and discovery rulings. They are reviewed for abuse of discretion, *see Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986) (discovery rulings); *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971) (case management rulings), and the record reveals none. In any event, the contentions were inadequately briefed, and are, therefore, deemed abandoned. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

### C.

Because Plaintiffs' other contentions hinge on the issue of admiralty jurisdiction, we need not address them. We also need not address whether the district court's use of judicial notice was inappropriate. In that regard, however, we note that Rule 201 should be exercised with caution. *See* Note to Subdivision (b) of FED. R. EVID. 201 ("[T]he tradition has been one of caution in requiring that the matter be beyond reasonable controversy".); *see also United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 698 (1899) ("It is reasonable that the courts take judicial notice that certain rivers are navigable and others not, for these are matters of general knowledge. But it is not so clear that it can fairly be said, in respect to a river known to be navigable, that it is, or ought to be, a matter of common knowledge at what particular place between its mouth and its source navigability ceases.").

### III.

For the forgoing reasons, the judgment is AFFIRMED; all pending motions are DENIED as moot.

20