## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  KATRINA CANAL BREACHES<br>            CONSOLIDATED LITIGATION | CIVIL ACTION NO. 05-4182 |

**FILED IN:  05-4181, 05-4182, 05-4191, 05-4568**
              **05-5237, 05-6073, 05-6314, 05-6324,**
              **05-6327, 05-6359, 06-0020, 06-1885,**
              **06-0225, 06-0886, 06-11208, 06-**
              **2278, 06-2287, 06-2346,  06-2545,**
              **06-3529, 06-4065, 06-4389, 06-4634,**
              **06-4931, 06-5032, 06-5042, 06-5159,**
              **06-5163, 06-5367, 06-5471,  06-5771,**
              **06-5786, 06-5937, 06-7682, 07-0206,**
              **07-0647, 07-0993, 07-1284, 07-1286,**
              **07-1288, 07-1289.**

**PERTAINS TO:  LEVEE AND MR-GO**

### JOINT MOVANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF JOINT MOVANTS' REQUEST FOR ENTRY OF FINAL ORDER AND JUDGMENT CERTIFYING THE PROPOSED SETTLEMENT CLASS AND APPROVING THE PROPOSED CLASS SETTLEMENT AGREEMENT

The proponents of the proposed class settlement respectfully submit this supplemental memorandum (i) in further support of their requests for certification of the Settlement Class and thereafter approval of the proposed Class Settlement Agreement and (ii) in response to the post-hearing memoranda of objecting Class Members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart (Doc. 18745, the "Brinkmeyer Objection"), and the plaintiffs in *Sims*, *et al.* (Doc. 18779, the "Sims Objection"). [1]

---

[1] Except as otherwise expressly provided below or as the context otherwise requires, all capitalized terms used in this memorandum shall have the meanings and/or definitions given them in the Class Settlement Agreement, the

As discussed fully in Joint Movants' Original Memorandum in Support (Doc. 18356), this is a valid limited fund settlement - one that clearly meets the criteria of Rule 23(b)(1)(B) and *Ortiz v. Fibreboard*.[2]

The fund is limited in that the Levee Districts' assets are unquestionably immune from seizure and therefore not available to Class Members, while the limits of all applicable insurance policies are made available. While the *Ortiz* Court disapproved the limited fund settlement at issue in that case, the Court simply was not faced with such facts. And as detailed later in this memorandum and in prior briefing, the *Ortiz* Court set forth criteria which, when applied here, demonstrate the propriety of the proposed settlement.

Not only does the settlement meet the requisites of *Ortiz* and Rule 23, but from a practical standpoint it is the best option for resolving the litigation. Indeed, during the April 2, 2009 fairness and certification hearing, the Court indicated that it wanted the objectors to "give out in some detail what's a better alternative . . . [w]hat's a better alternative than this limited fund."[3] The objectors have not done so. For all their suggestions regarding perceived inequities in the proposed settlement, the objectors have offered no viable alternative, much less an equitable one.

---

original of which, together with all exhibits, is attached to the Joint Motion for Certification of Settlement Class, for Approval of Proposed Settlement and for the Stay of Certain Claims and Actions as *in globo* Exhibit "1".

[2] The Memorandum in Support of Joint Movants' Request for Entry of Final Order and Judgment Certifying the Proposed Settlement Class and Approving the Proposed Class Settlement Agreement (Doc. 18356) ("Joint Movants' Original Memorandum in Support") is adopted herein by reference.

[3] Transcript, page 175, lines 5-8. (All transcript citations are to the draft transcript, as the final transcript was not available by the May 26 deadline for filing this memorandum.)

To be sure, the Brinkmeyer objectors suggest that the settlement could be re-structured as an opt-out settlement. That, of course, ignores one of the key equitable purposes behind the settlement – avoiding the feast-or-famine approach where a small number of litigants rush to judgment and deplete all of the potentially available funds, with the result that the lion's share of claimants receive nothing. For their part, the Sims objectors offer rank speculation; namely, that perhaps the legislature may one day amend La. R.S. 13:5109 to allow the *State* to appropriate funds to pay judgments entered against *political subdivisions* (a statutory amendment that would have to come on the heels of a constitutional amendment no less[4]). Suffice it to say that proceeding with serial, individual litigation with no more than a hope of obtaining judgments against the Levee Districts coupled with a prayer that the law may change to allow the State to pay such judgments is not a real alternative to the proposed limited fund settlement.

The objectors also suggest that the Levee Districts should make a contribution to the settlement beyond the limits of insurance proceeds. This is not a true alternative so much as a different way of stating the incorrect legal proposition that the settlement fund is not limited. Further, as a purely practical matter, this argument ignores entirely the testimony at trial that the Levee Districts cannot pay the disputed claims and still meet their public responsibilities with respect to the Hurricane Protection System. This and other arguments the objectors make are discussed in turn below. Because they have been made before and addressed in the Joint

---

[4] Were the State to pay funds it did not owe, it would amount to a prohibited donation in violation of Article 7, Section 14 of the Louisiana Constitution.

- 3 -

Movants' prior briefing, in the interest of efficiency much of that briefing is referenced but not repeated here.

### I.     This is Indeed a Valid Limited Fund Settlement Under Rule 23(b)(1)(B)

The objectors understate the significance of anti-seizure law, while also misapplying *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295 (1999).

There is no dispute that the Levee Districts' assets cannot be seized. Accordingly, they cannot be forced to pay anything. That reality, coupled with the undisputed payment of the limits of all applicable insurance policies, makes this a limited fund.

Moreover, Timothy T. Doody, President of the Southeast Louisiana Flood Protection Authority – East, testified that the Levee Districts cannot and will not appropriate money for judgments resulting from this litigation.[5] He explained that the Orleans Levee District, the East Jefferson Levee District, and the Lake Borgne Basin Levee District do not have the funds necessary to meet their obligations to pay both their existing debt and their share of future obligations towards proposed federal projects.[6] Indeed, the tax base of the respective levee districts has been decimated by the effects of Hurricane Katrina.[7] Surely the objectors do not mean to suggest that the Levee Districts should curtail efforts to meet their public responsibilities

---

[5] Transcript, page 93, lines 12-13.

[6] Transcript, page 92, line 17.

[7] Transcript, page 92, lines 24-25, page 93, lines 1-2.

- 4 -

with respect to the Hurricane Protection System to devote corresponding funds to the payment of disputed claims. Indeed, as Mr. Doody testified, the Levee Districts cannot do so.[8]

The objectors argue that proponents of the settlement cannot cite to any case approving a limited fund settlement to which an insured defendant contributed nothing. This argument presumes that the "insured defendant" has assets that are subject to levy by class members. That is plainly not the case here, as the objectors concede. In that regard, it should be noted that the objectors do not, and cannot, cite to any case denying approval of a limited fund settlement where the insured is a political subdivision whose assets are immune from seizure (and which lacks sufficient funds to meet its public responsibilities no less). The objectors' attempt to equate insureds which are commercial entities whose assets are subject to levy by creditors with governmental bodies whose assets are immune from seizure by law amounts to a true apples-to-oranges comparison. While the *Ortiz* criteria are instructive and satisfied here, it is important to recognize that the case itself did not involve governmental bodies -- entities in this case charged with the oversight of public funds to be used in the protection from flooding of the lives and property of over a million people who live in the Greater New Orleans area -- whose assets are by law immune from seizure.

Turning to the *Ortiz* criteria, first, it is clear that "the totals of the aggregate liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate

---

[8] *See* fn. 5, above.

NO.99949024.1

the inadequacy of the fund to pay all the claims."[9] As discussed above, the fund is indeed limited, with a ceiling tied to insurance policy limits of $17 million or $19 million (with which figure depending upon the Court's ruling on the premises coverage issue) plus interest. The objectors seem to suggest that the total of all claims must be calculated with exact precision and/or that each claimant's exact damages must be calculated under *Ortiz*. To the contrary, the issue is whether the joint movants have demonstrated that the claims exceed the limited fund, and indeed they have. The testimony of Gregory C. Rigamer established that quantifiable damage (not even including personal injury, death, or pain and suffering) far exceeds the limited fund. For example, the insurance assets available to persons having claims against the East Jefferson Levee District amount to $5 million. Even if the East Jefferson Levee District were held liable for only 1% of the quantifiable damages sustained by persons in Sub-Class 2, its exposure would exceed $118 million.[10] The damages that correspond with the other two subclasses also far exceed available insurance.[11]

Also consistent with *Ortiz*, the whole of the limited fund is devoted to Class Members' claims. As the *Ortiz* Court recognized, when dealing with insurance assets the fund is limited "in

---

[9] *Ortiz*, 527 U.S. at 838-839.

[10] This calculation and those that follow are based on Exhibit 61, Report of Gregory C. Rigamer, specifically the "Net Result" in the column for "Sub Class 2" of the report's final table, entitled "Quantifiable Damage Areas Affected by Breaches".

[11] For example, if the Lake Borgne Levee District were held liable for only 1% of the quantifiable damages sustained by persons in Sub-Class 1, its exposure would exceed $21 million. If the Orleans Levee District were held liable for only 1% of the quantifiable damages sustained by persons in Sub-Class 3, its exposure would exceed $71 million. *See* Rigamer Testimony and Exhibit 61.

the traditional sense" and "the way to demonstrate the limit [is] clear."[12]  Nor does *Ortiz* or any other authority require that no amount of the limited fund be devoted to claims administration or similar costs; indeed, such a requirement would be altogether impractical and undermine all limited fund settlements.

Whether couched in terms of *Ortiz's* requirement that class members be treated equitably among themselves or in terms of the settlement's overall fairness under the *Reed v. General Motors*[13] factors, the objectors' corresponding arguments miss the mark.  For example, they point to a provision in the Class Settlement Agreement allowing Class Counsel to apply for reimbursement of costs, including an enhancement of same.  However, the Class Settlement Agreement simply allows such an application, which the Court is of course free to reject in whole or in part. Had the Class Settlement Agreement expressly prohibited the mere application, it would likely be a first.  And it bears repeating that Class Counsel voluntarily waived the right to seek attorneys' fees.

Further, the Sims objectors state incorrectly that the Class Settlement Agreement does not treat Class Members equitably.  As discussed in Joint Movants' prior Memorandum, this is wrong.  The Class Settlement Agreement contains clear structural protections to insure that funds under the policy providing coverage for each Levee District will not be available to any Class Member who does not have a claim against that Levee District.[14]  In other words, there are no

---

[12] *Ortiz,* 527 U.S. at 851.

[13] 703 F.2d 170 (5th Cir. 1983).

[14] Class Settlement Agreement, § III(4)(c).

- 7 -

Class Members with greater rights to insurance proceeds that have been treated on the same basis as other Class Members with less valuable rights to insurance proceeds.[15]  It was this inequitable treatment of groups of class members whose interests conflicted that troubled the *Ortiz* Court, not that the exact amount each class member might receive need necessarily be determined at the certification/fairness hearing stage of the litigation.

## II.  The Objectors' Remaining Arguments Also Lack Merit

The objectors have thrown several other arguments against the wall in the hopes that one may stick.  These have already been addressed in the Joint Movants' Memorandum in Support, and are accordingly addressed in summary fashion below.

### A.   There is No Due Process Right to Opt-Out of a Limited Fund Settlement

First, the Brinkmeyer objectors incorrectly suggest that there should be a *right* to opt-out, citing to *Allison v. Citgo Petroleum Corp.*, 151 F.3d. 402 (5th Cir. 1998), which did not involve a limited fund settlement under Rule 23(b)(1)(B).  Cases such as *Allison* are inapposite.  The *Allison* Court addressed whether monetary relief improperly predominated over injunctive/declaratory relief in a Rule 23(b)(2) class action (designed for cases in which injunctive or declaratory relief is appropriate as to the class as a whole). That analysis does not bear on mandatory limited fund classes, which by their nature seek monetary relief.  Indeed, the *Allison* Court did not consider whether the plaintiffs' equitable claims could be certified under Rule 23(b)(1).   Further, as numerous authorities have recognized, the Supreme Court's opinion

---

[15] *Ortiz,* 527 U.S. at 857-858.

- 8 -

NO.99949024.1

in *Phillips Petroleum Co. v. Shutts*[16] was concerned with the due process implications of a state court in a non-limited fund case binding absent persons over whom the Court lacked personal jurisdiction.[17]  That issue is not presented in this federal action involving Class Members who were either domiciled within the Hurricane Affected Geographic Area, had an interest in property that was damaged within the Hurricane Affected Geographic Area, or otherwise claim to have been injured there.[18]  Moreover, as recognized by the Fifth Circuit in *In re Asbestos Litigation*, 90 F.3d 963, 986 (5th Cir. 1996), *Shutts* does not govern equitable limited fund cases.[19]  *See also, In re Orthopedic Bone Screw Prod. Liab. Litig.,* 176 F.R.D. 158, 180 (E.D. Pa. 1997) (finding that minimum contacts are not necessary in a mandatory limited fund class action); 6 Newberg on Class Actions § 20:14 (4th ed.) ("Nothing in *Shutts* suggests that the Supreme Court intended to go beyond common question Rule 23(b)(3)-type class actions and to emasculate all mandatory class actions or interpleader actions through the imposition of opt-out rights").

---

[16] 472 U.S. 797, 105 S.Ct. 2965 (1995).  The opinion ultimately concluded that the court improvidently granted the writ and dismissed it.

[17] *See,* authorities cited in the Joint Movants' Original Memorandum in Support, n. 6.

[18] *See, e.g., Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 342 (1940); *Hebert v. C.R. England, Inc.*, 2009 WL 1323038, *3 (E.D. La.), *citing, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

[19] This holding from *In re Asbestos Litigation* remains binding authority; the Supreme Court's subsequent reversal in *Ortiz* does not reject this conclusion.  *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 488 -89 (5th Cir. 2008) (holding that Fifth Circuit decisions reversed on other grounds by the Supreme Court remain binding authority); *Cen. Pines Land Co. v. United States*, 274 F.3d 881, 894 (5th Cir. 2001) (same).

The objectors also cite to the Sixth Circuit's opinion in *Telectronics Pacing Systems,* 221 F. 3d 870 (6th Cir. 2000), again in connection with suggesting there exists a due process right to opt-out. However, *Telectronics* supports the Joint Movants' position and undercuts the objectors' argument. The *Telectronics* Court stated that the entitlement to an opportunity to opt out "can be overcome only when individual suits would confound the interests of other plaintiffs, *such as with a limited fund that must be distributed ratably* or an injunction that affects all plaintiffs similarly."[20] The Court further stated that due process generally requires class members with particularized tort claims for monetary relief to have an opportunity to opt out, but noted that from a due process standpoint this opt-out choice is of less concern when there is a definite fund from which plaintiffs will receive damages at which point "the only question is how to divide up the pie."[21] In short, the lack of opt-out rights does not violate due process in this limited fund, Rule 23(b)(1)(B) settlement.

> **B.   Class Notice was Proper**

With respect to class notice, the objectors re-urge the same flawed arguments previously made. They again suggest that (a) notice was insufficient because it did not allow Class Members to estimate their individual recoveries, or (b) the absence of a specific allocation plan or formula prior to approval of the class settlement calls the adequacy of the settlement into

---

[20] 221 F.3d at 881 (emphasis added).

[21] *Id*. That the *Telectronics* Court declined to approve the proposed settlement at issue is of no moment because its decision was based on finding that the released parties appeared to have sufficient funds to compensate class members through individual litigation, circumstances clearly not present here. The objectors also cite to *Klein v. O'Neal,* 2006 WL 325766 (N.D. Tex.), but it too involved a finding that available funds may have been sufficient to satisfy claims.

question. As previously set forth in the Joint Movants' Memorandum in Support, the law plainly does not require that a distribution plan be formulated prior to class notification or class settlement approval.[22]

The Joint Movants have already addressed each of the objectors' remaining notice-related arguments, and accordingly incorporate their prior briefing as to same.[23] The only exception is the Brinkmeyer objectors' form-over-substance reliance upon a provision of the Class Settlement Agreement to the effect that the Fairness Hearing would be no less than forty-five calendar days after the Objection Deadline (contrary to the objectors' representation, this provision is not in the Preliminary Approval Order).[24] Ironically, that provision of the Class Settlement Agreement was of course designed to allow the proponents of the settlement sufficient time to respond to objections before the Fairness Hearing; transforming the proponents' willingness to forego that benefit into a basis for challenging the settlement approval process would turn the provision on its head.[25]

---

[22] *See, e.g.*, *In Re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695 (1988), *citing, In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 223-224 (5th Cir. 1981), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283 (1982); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999); *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910 (S.D.N.Y. 1991), *aff'd.*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); Exhibit 68, Wheatman Affidavit, ¶ 29. *S*ee also, Joint Movants' Original Memorandum in Support, pp. 24-27.

[23] Joint Movants' Original Memorandum in Support, pp. 27-28. *See also* Exhibit 68, Wheatman Affidavit ¶ 29.

[24] Class Settlement Agreement, § II(23).

[25] Additionally, the Joint Movants' actions in moving forward with the Fairness Hearing – including the submission of a jointly agreed form of preliminary order which was approved -- amounts to a permissible modification by agreement and Court approval of the forty-five day provision pursuant to Section V(7) of the Class Settlement Agreement (which again would have inured to their benefit rather than the objectors' benefit) in any event.

The Sims objectors further complain that they were not afforded sufficient pre-fairness hearing discovery. However, their vague motion for "settlement related discovery" was addressed by Magistrate Judge Knowles, who granted certain relief relating to applicable insurance and information on financial statements.[26] Objectors sought no review of Magistrate Knowles' ruling, although they could have. Further, the objectors do not have an automatic right to independent discovery, much less a right to essentially re-do all discovery and investigation conducted by Class Counsel on behalf of the Class.[27] Their similar arguments pertaining to the premises issue for insurance purposes are also of no moment, as that amounts to a legal issue to be decided by the Court based on stipulated facts.

### C. The Rule 23(a) Criteria are Met, as are the *Reed* Factors

In response to the objectors' renewal of their *same* arguments pertaining to the Rule 23(a) criteria, the Joint Movants adopt their prior briefing on the subject rather than repeat it here. [28]

---

[26] *See* February 17, 2009 Minute Entry, Doc. 17749.

[27] Objectors were of course given an opportunity to be heard, cross-examine witnesses, and offer evidence, but "they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'" *In re General Tire and Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084, n. 6 (6th Cir. 1984), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

[28] Joint Movants' Original Memorandum in Support, pp. 19-22. *See also* Exhibit 61 report of Gregory C. Rigamer; testimony of Gregory C. Rigamer, Transcript, pp. 62-80; Exhibit 74, Declaration of Jeanine Armstrong; Exhibit 75, Declaration of Kenneth Armstrong; Exhibit 76, Declaration of Thurman R. Kaiser; Exhibit 77, Declaration of Donna Augustine; Exhibit 78, Declaration of Gerald Edward Menuier; Exhibit 79, Declaration of Joseph M. Bruno; Testimony of Joseph Bruno, Transcript pp. 131-163; Exhibit 80, Declaration of James Parkerson Roy; Exhibits 81-84 Depositions of Class Representatives.

The Joint Movants similarly adopt their prior briefing on the application of the factors set forth in *Reed v. General Motors Corp.*,[29] and to the objectors' mistaken suggestion that the settlement may not provide value to the Class, based in large measure on a flawed analogy to cases that are easily distinguishable because none involved a limited fund.[30] In contrast to those cases cited by objectors which do not involve a limited fund, when a limited fund is involved the prevailing consideration is that reduced class member awards to the many is preferable to full awards to the few, as the former leaves nothing for the lion's share of class members.[31] Further, it cannot be said that the mere possibility of obtaining a paper judgment against the Levee Districts that has no realistic chance of being satisfied is more beneficial to the class than payment of the limits of all applicable insurance policies.

### D. Proposed Amendment to the Class Settlement Agreement

Finally, at pp. 13-14 of their objection, the Sims Objectors' take issue with certain provisions related to a limited indemnity by Class Members in favor of the insurer found in Section IV(5) of the Class Settlement Agreement, and the release contained in Section IV(7) of the Class Settlement Agreement.

---

[29] Joint Movants' Original Memorandum in Support, pp. 28-31.

[30] Joint Movants' Original Memorandum in Support, pp. 31-33 and n. 40.

[31] *Id.* Cases like *Clement v. American Honda Finance Corp.*, 176 F.R.D. 15, 23 (D. Conn. 1997), cited by the Brinkmeyer objectors, deal with a scenario where "[e]ach class member would unquestionably fare better by bringing an individual action . . ." That is not the case here, where all but the first individual actions would see no recovery due to the limited fund.

As to the limited indemnity found in Section IV(5) of the Class Settlement Agreement, the Parties have jointly agreed to remove these provisions from the Class Settlement Agreement rendering this argument moot. As contemplated by the Class Settlement Agreement, the parties will ask this Court to approve such modifications, along with any clarifying changes[32], as part of the Final Order and Judgment if the settlement is approved by the Court.

As to the release contained in Section IV(7) of the Class Settlement Agreement, the Sims Objectors simply misconstrue the language. The release is not, as the Sims Objectors suggest, a release granted by Class Members. Rather, this provision is nothing more than a standard release by the insured, here the Levee Districts, in favor of an insurer when policy limits are paid as part of a settlement.

## **CONCLUSION**

The proposed settlement satisfies applicable criteria for a limited fund settlement. The fund is plainly limited, and the claims clearly dwarf the fund. Further, Class Members are treated equitably through subclasses whose recovery is tied to the limits of the Levee District policies applicable to that subclass, rather than allowing a race to the courthouse that favors the first few who may secure judgments.

As stated at the outset, the objectors offer no real or viable alternative to the proposed settlement. That is because there is none.

---

[32] For example, Class Members have asked that the Final Order and Judgment include clarifying language recognizing that by law the settlement covers successors and assigns.

If the Court declined to approve the settlement and no class was ever certified, it would lead to the prosecution of thousands of individual suits, resulting in awards for the first few claimants, assuming the Levee Districts would be found liable for any percentage of fault, but nothing for the vast majority of claimants.  This vast majority would be left attempting to obtain paper judgments with the hope that somehow, someday there is an extraordinary influx of money into the Levee Districts' coffers that it opts to voluntarily use to pay judgments (notwithstanding the evidence that the Levee Districts will not and cannot do so), or the hope that the State treasury will receive a windfall and the Louisiana Constitution will be changed to allow the legislature to use such funds to pay judgments rendered against political subdivisions.

If the Court declined to approve the proposed settlement and later certified a litigation class with the option to opt out, the same situation would result, with a race to the courthouse among opt-outs and between opt-outs and the class.  Only in that case there would be no waiver of class counsel fees.  Nor would there be any increase in the funds available at the end of the day under any of these "alternatives".

In sum, the proposed settlement satisfies applicable law and is by far the best manner of addressing an unfortunate situation.

Respectfully submitted,

**LAW OFFICES OF JOSEPH M. BRUNO**

BY:   /s/ Joseph M. Bruno
   Joseph M. Bruno (#3604)
   855 Baronne Street
   New Orleans, Louisiana  70113
   Telephone:  (504) 525-1335
   Telecopier:  (504) 561-6775
   E-mail:  jbruno@brunolaw.com

ON BEHALF OF CLASS COUNSEL, AND AS LIAISON COUNSEL FOR LEVEE AND MR-GO-PLAINTIFF SUBGROUP LITIGATION COMMITTEES

**GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.**

BY:   /s/ Gerald E. Meunier
   Gerald E. Meunier (#9471)
   2800 Energy Centre
   1100 Poydras Street
   New Orleans, Louisiana  70163-2800
   Telephone:  (504) 522-2304
   Telecopier:  (504) 528-9973

LIAISON COUNSEL FOR LEVEE-PLAINTIFF SUBGROUP LITIGATION COMMITTEE

**DOMENGEAUX WRIGHT ROY & EDWARDS**


BY:    /s/ James P. Roy
       James P. Roy (#11511)
       556 Jefferson Street
       Lafayette, Louisiana 70502
       Telephone: (337) 593-4190
       Telecopier: (337) 233-2796

LIAISON COUNSEL FOR MR-GO-PLAINTIFF SUBGROUP LITIGATION COMMITTEE

**MCCRANIE, SISTRUNK, ANZELMO, HARDY, MAXWELL & MCDANIEL**


BY:    /s/ Thomas P. Anzelmo
       Thomas P. Anzelmo (#2533)
       3445 N. Causeway Boulevard, Suite 800
       Metairie, Louisiana 70002
       Telephone: (504) 831-0946
       Telecopier: (504) 831-2492

ATTORNEYS FOR THE BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT AND THE ORLEANS LEVEE DISTRICT

DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK


BY:   /s/ Gary M. Zwain
      Gary M. Zwain (#13809)
      Three Lakeway Center, Suite 2900
      3838 North Causeway Boulevard
      Metairie, Louisiana  70002
      Telephone:  (504) 832-3700
      Telecopier:  (504) 837-3119

ATTORNEYS FOR THE BOARD OF COMMISSIONERS FOR THE EAST JEFFERSON LEVEE DISTRICT, THE EAST JEFFERSON LEVEE DISTRICT, THE BOARD OF COMMISSIONERS FOR THE LAKE BORGNE BASIN LEVEE DISTRICT, AND THE LAKE BORGNE BASIN LEVEE DISTRICT

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**


BY:   /s/ Ralph S. Hubbard III
      Ralph S. Hubbard III (#7040)
      601 Poydras Street, Suite 2775
      New Orleans, Louisiana  70130
      Telephone:  (504) 568-1990
      Telecopier:  (504) 310-9195

**and**

                    **PHELPS DUNBAR LLP**


BY:    /s/ S. Ault Hootsell III
           S. Ault Hootsell III (#17630)
           Canal Place
           365 Canal Street, Suite 2000
           New Orleans, Louisiana  70130-6534
           Telephone:  (504) 566-1311
           Telecopier:  (504) 568-9130
           E-mail:  hootsela@phelps.com

ATTORNEYS FOR ST. PAUL FIRE AND
MARINE INSURANCE COMPANY


## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 26th day of May, 2009 I electronically filed the foregoing with the Clerk of Court by using the CMECF system which will send a notice of electronic filing to all counsel of record.


                     /s/ S. Ault Hootsell III