UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, Robinson (06-2268) | § | |
| | § | |

DEFENDANT'S OPPOSITION TO ADMISSION
OF DEPOSITION TESTIMONY OF ROBERT A. DALRYMPLE

In disregard of the Court's scheduling orders concerning deposition testimony, Plaintiffs requested the admission of the deposition testimony of Robert A. Dalrymple at the close of their case. At that time Plaintiffs made no attempt to justify their belated proffer of the Dalrymple testimony, and they have made no showing in their memorandum that would justify their noncompliance with the deadlines established by the Court. Dr. Dalrymple was deposed during the class action phase of discovery in another case (the MRGO track), in September 2007, because he was a designated expert of the MRGO defendants. He was retained by counsel for Washington Group International, Inc., and the United States at no time controlled him. He was not timely identified as a witness by either Plaintiffs or Defendant in this case.

Nevertheless, Plaintiffs have repeatedly misidentified him as Defendant's expert in this case and have repeatedly misrepresented his deposition testimony. In successfully opposing the United States' dispositive jurisdictional motions, Plaintiffs argued that Dr. Dalrymple's testimony was evidence creating a genuine issue of material fact, which would preclude the dismissal of this case. According to Plaintiffs, Dr. Dalrymple testified during his deposition that the Mississippi River-Gulf Outlet caused an additional three feet of storm surge along the Reach 2 levees. See, e.g., Doc. Rec. No. 16063 at 16; Doc. Rec. No. 16063-5 ¶ 27; Doc. Rec. No. 15317-7, Mar. 11, 2008 Hrg. Tr. regarding 702c immunity at 43-48, 56, 73-75.

Now, long after Defendant's motions were denied—indeed, after the conclusion of trial—Plaintiffs have finally informed the Court that Dr. Dalrymple's deposition testimony does not evidence the "fact" for which they long cited it. They now admit that Dr. Dalrymple was not expressing his own expert opinion, but was merely adverting—mistakenly adverting—to a conclusion that he erroneously attributed to the Interagency Performance Evaluation Task Force ("IPET"). In their memorandum Plaintiffs belatedly concede that neither Dr. Dalrymple nor the IPET concluded that three feet of storm surge during Hurricane Katrina was attributable the MRGO or to wetlands changes resulting from the channel. See Plt. Mem. 4. But remarkably, even as they furiously backpedal, Plaintiffs seek the admission of other parts of Dr. Dalrymple's deposition testimony and, in doing so, misrepresent it just as they previously

2

misrepresented his mistaken testimony concerning the IPET report's supposed conclusion.

The Court should refuse to admit Dr. Dalrymple's deposition testimony. First, the proffered deposition testimony is not probative of any issue before the Court. Plaintiffs proffer testimony concerning a "strongly held belief"—of unidentified persons in connection with the Louisiana Coastal Preservation and Restoration program, a post-Katrina federal-state effort—"that wetlands provide a buffer between storm surges out in the Gulf of Mexico and the uplands, including New Orleans." Pls. Ex. B, Dalrymple Dep. at 35:23 - 36:1. Implicitly recognizing the irrelevance of this testimony, Plaintiffs again misrepresent it, once again presenting the expert's comments about the hearsay beliefs of others as though it were an expression of the expert's own opinion.

Second, Plaintiffs have failed to demonstrate Dr. Dalrymple's testimony is admissible under Federal Rule of Civil Procedure 32. Dr. Dalrymple was not designated as an expert in this case, and his opinions elicited during the deposition in the MRGO case related to the propriety of certifying a class, specifically, whether causes of damage were uniform from property to property or were incapable of class-wide generalizations. Because Dr. Dalrymple's deposition testimony pertained to a different subject from those that were tried in this case, the United States had no motivation to question Dr. Dalrymple about the causation questions that remain to be resolved in this case.

Last, but not least, the deposition testimony should be excluded because Plaintiffs failed to apprise the Court and the United States of their intention to offer it into

evidence before trial, as they were required to do.  By failing to do so, Plaintiffs deprived the United States an opportunity to formulate a response to the Dalrymple testimony. When the United States contacted Dr. Dalrymple after being belatedly informed of Plaintiffs' intentions to offer his deposition testimony into evidence, the United States learned that Dr. Dalrymple was about to travel to the Netherlands and then to California, making his appearance at trial as a witness for Defendant impossible.

## BACKGROUND

Dr. Dalrymple was retained by counsel for Washington Group International, Inc., to testify on behalf of the MRGO defendants in class certification proceedings.  Pls. Ex. A at 1.  In preparing his expert report, he did not meet or even speak with any representative of the United States.  Ex. 1, Dalrymple Dep. at 11:7-11.  No one from the United States gave him any facts for his report.  Id. at 13:7-9.  Indeed, his only contact with attorneys for the United States or any Corps employee was a single telephone conference that he only vaguely recollected.  Id. at 10:24-15:12.

Dr. Dalrymple was deposed on September 18, 2007.  Pls. Ex. B.  Pierce O'Donnell, representing the MRGO plaintiffs, expressly informed Dr. Dalrymple that his questions pertained only to the MRGO Master Complaint. Ex.1 at 15:4-6.  During the year-and-a-half that intervened between the Dalrymple deposition and the trial of this case, Plaintiffs cited Dr. Dalyrymple's testimony to this Court on multiple occasions. But Plaintiffs did not designate any part of Dr. Dalyrmple's deposition for admission at trial.

4

The first time Plaintiffs even asked that the deposition testimony be admitted was at the conclusion of their case-in-chief.

Dr. Dalrymple testified that he had not done any study to determine what the surge height would havde been in Reach 2 if the wetlands had not been "destroyed," as counsel put it. Pls. Ex. B at 143:6-10. Dr. Dalrymple further testified that "IPET has done some sensitivities of the ADCIRC modeling with and without the wetlands." Id. at 143:10-12. And as Plaintiffs have recited in their memorandum, the unspecified IPET sensitivity study formed the basis of his "know[ledge] that there's about a meter of water level difference with and without the wetlands." Id. at 143:15-17. He made it clear that he understood that conclusion to be the IPET's, not his own. Id. at 143:18 – 144:6.

Nevertheless, in opposing multiple motions for summary judgment filed by the United States, Plaintiffs cited this testimony as evidence that the MRGO caused their damages. E.g., Doc. Rec. No. 15317-7, Mar. 11, 2008 Hrg. Tr. regarding 702c immunity at 47 ("[O]vertopping is what caused the catastrophic flooding in every location. Overtopping. It's undisputed in this record. And it's overtopped because of the three feet of excess surge caused by MRGO."); Doc. Rec. No. 16063 at 16 ("The Government's own expert, Dr. Robert Dalrymple, attributes over three feet of additional storm surge against Reach 2 EBSBs because of the destroyed adjacent wetlands."). This spurious "fact" was even cited by the Court in denying the United States' dispositive jurisdictional motions. See In re Katrina Canal Breaches Litig., 577 F. Supp. 2d 802, 806 (E.D. La. 2008); Doc. Rec. No. 18567 at 3.

Now, finally, after disingenuously touting Dr. Dalrymple's testimony for more than a year, Plaintiffs admit—after trial—what the evidence truly shows:

> In truth, Dr. Dalrymple appears mistaken about the IPET report. Plaintiffs are unable to find any data in the IPET report that supports his one meter. . . . IPET does not seem to support this part of his deposition testimony.

Pls.' Mem. at 4; see also Doc. 15317-2 at 12 n.3; Doc. 16361-4 at 26-27.

Although they have belatedly conceded that there is no foundation for Dr. Dalrymple's mistaken recollection of a study showing a meter's diminution in surge by wetlands buffering, Plaintiffs now turn to different testimony from Dr. Dalrymple's deposition and argue that it bears on some issue relevant to their claims in this case. The Court should refuse to admit the proffered deposition testimony because: (1) it is not probative of any issue in dispute between the parties; (2) Plaintiffs have failed to show the deposition is admissible under Rule 32; and (3) the untimeliness of Plaintiffs' request has prejudiced the United States.

## ANALYSIS

In an effort to show that Dr. Dalrymple's testimony is probative, Plaintiffs again misrepresent it. Plaintiffs claim that Dr. Dalrymple testified that "there's a strongly held belief that the wetlands provide a buffer between storm surges of the Gulf of Mexico and the uplands, including New Orleans. So if you have wetlands in place, then, in part, you should have a lower storm surge at New Orleans." Plt. Mem. at 4. But, as before, they fail to make it clear that Dr. Dalrymple was alluding to the hearsay opinions of others,

6

not his own, which he believed were a basis for shaping the scope of the LACPR project—a project framed after Hurricane Katrina.[1]  Pls. Ex. B. at 34:4-36:6.

They further seek the admission of testimony concerning why the levee design elevations along Reach 2 were several feet higher than the specified floodwall elevations in the IHNC: "when you look at exposure of the levees along the MRGO to the Gulf of Mexico, they are directly exposed over the wetlands and say the floodwalls are not."  Pls. Ex. B at 53:11-14.  But Plaintiffs do not give the context of this testimony, and they excerpt it in such as way as to create the impression that the testimony supports their arguments concerning the buffering effects of wetlands.  See Plt. Mem. at 4 (citing Pls. Ex. B at 53:10-14).  Plaintiffs' selective quotation omits any context for Dr. Dalrymple's testimony, which merely explained why the Reach 2 levees were built to a higher protective elevation than other floodwalls and levees.[2]  Pls.' Ex. B at 51:9-53:14.

Plaintiffs further claim that Dr. Dalrymple "also acknowledged that the waves that flooded Chalmette, for example, came from water over the earthen berms along the

---

[1] Even if Dr. Dalrymple's testimony could be read to indicate that he shared this belief, the testimony would be inadmissable because a "belief" which has not been verified by observation or scientific study is not competent proof.

[2] Plaintiffs' emphasis on the "'ameliorating or buffering effect [of wetlands] during and after Katrina on the 40 Arpent Canal,'" Plt. Mem. at 4, is a complete mystery.  The performance of the 40 Arpent Canal is not at issue in this case, and the storage capacity of the Central Wetlands Unit, the unpopulated area behind the federal levees, was the same regardless of the health of the wetlands within it.  Dr. Dalrymple's testimony that the Central Wetlands "provided a buffer area for the water going over the MRGO levees . . . [t]hat is, they would fill up that area prior to going to populated areas," Pls. Ex. B at 108:13-16, should not be admitted because it is duplicative of undisputed testimony in the record.

MR-GO Reach 2." Pls. Mem. at 3 (citing Pls.' Ex. B at 137:19-138:14) (emphasis added). At no time in his testimony did Dr. Dalrymple state that waves caused the flooding of Plaintiffs' properties. Instead, Dr. Dalrymple testified that in Plaintiffs' interior drainage model, the water flowing into Chalmette during the storm "came from the earthen structures along Reach 2, came across what was ever left of that wetlands, came over the 40 Arpent Canal and then flowed into Chalmette." Pls. Ex. B at 136:18-138:14. Neither the United States nor the Plaintiffs dispute these facts, and his testimony as to them should be excluded as cumulative.

The remainder of the deposition testimony cited by Plaintiffs concerns the effects of wetlands on storm surge. See Pls. Mem. at 3 (citing Pls. Ex. B at 35:23-36:4, 108:1-16).[3] Again, neither the United States nor the Plaintiffs dispute that wetlands can have some effect on reducing storm surge. Numerous witnesses, including Defendant's surge expert, Joannes J. Westerink, testified as to the effects of wetlands on Katrina's surge. The general ameliorative effects of wetlands are not in dispute. The key issue for the Court to decide is whether the specific wetlands changes attributable to the MRGO had any significant effect on the surge and waves that reached the Lake Pontchartrain and

---

[3] To the extent Dr. Dalrymple testified about the buffering effect wetlands had on waves, his testimony only concerned the waves reaching the 40 Arpent levee. Pls. Ex. B at 106:7-109:3. Dr. Dalrymple testified that wetlands did buffer the flood side of the Reach 2 levees, but he was not asked about the effect – if any – these wetlands would have on waves. See id. Moreover, Dr. Dalrymple specifically acknowledged that he did not study whether the wetlands buffering the Reach 2 levees were even alive. Id.

8

Vicinity Hurricane Protection Project levee along Reach 2. The proffered testimony of Dr. Dalrymple is irrelevant to this specific issue.

For more than a year prior to trial, Plaintiffs repeatedly pointed to Dr. Dalrymple's testimony (notably, instead of their own expert's surge simulations) as probative evidence that wetlands changes caused by the MRGO dramatically increased surge along the Reach 2 levee. Only after the conclusion of trial have Plaintiffs "come clean" and conceded that Dr. Dalrymple's recollection about an IPET sensitivity study was mistaken. The different testimony that they now proffer, in what can only be described as a futile attempt to save face, is by turns irrelevant and cumulative. After years of litigation, motions, argument, and nearly four weeks of trial, the opinion that additional wetlands would have had some general unspecified ameliorating effect on storm surge can only be described as banal. The proffered testimony should be excluded for this reason alone.

Even if Dr. Dalrymple's testimony were somehow probative of a material fact in dispute, Plaintiffs have failed to demonstrate its admissibility under Rule 32. Under that rule, a deposition may only be used if it involves the "same subject matter." Fed. R. Civ. P. 32(a)(8). Thus, in Kirk v. Raymark Indus., Inc., the plaintiffs unsuccessfully sought the admission of the deposition testimony of an expert witness who previously testified for the defendant in a similar case. 61 F.3d at 147, 162-63 (3d. Cir. 1995). But because the expert had not testified in the current case, the Third Circuit sustained the district court's exclusion of the testimony:

9

> We are unwilling to adopt the proposition that the testimony of an expert witness who is called to testify on behalf of a party in one case can later be used against that same party in unrelated litigation, unless there is a finding that the expert witness is an agent of the party and is authorized to speak on behalf of that party.

Id. at 164 (examining Fed. R. Evid. 801(d)(2)(C)).

Here, the situation is similar. Dr. Dalrymple was designated as an expert for the MRGO defendants in the MRGO class certification proceedings. Those class certification proceedings focused on the issues of commonality, typicality, and predominance. Fed. R. Civ. P. 23(a). Those issues are far different from the issues recently tried in this case. Because he was retained to express opinions relevant to the certification of a class, Dr. Dalyrymple's expert report did not discuss whether the MRGO has any causal effect on flooding. Rather, Dr. Dalyrymple's central opinion was that "[t]he nature and causes of damages to a particular property in New Orleans during Hurricane Katrina depended on a variety of factors, including the location of the property and the sequence of events." Pls. Ex. A. at 2. Because Dr. Dalrymple's deposition was noticed to explore the opinions set forth in his expert report, the United States had no motivation and no opportunity to question him concerning the causation issues that Mr. O'Donnell unexpectedly probed during the deposition.

Kirk also holds that Plaintiffs' must make "reasonable means" to bring an expert to trial before his deposition can be admitted into evidence. Kirk, 61 F.3d at 165. Plaintiffs made no such effort here. Dr. Dalrymple was not listed on Plaintiffs' witness list, and Plaintiffs did not request that the United States bring Dr. Dalrymple to testify live at

trial. In a similar situation, this Court excluded Plaintiffs' attempt to introduce deposition testimony when a witness was available to testify live at trial. Doc. Rec. No. 18604.

Finally, Plaintiffs inexcusably failed to designate portions of the Dalrymple deposition within the schedule set forth by the Court. The admissibility of the deposition testimony of other persons was litigated prior to trial on motions in limine, allowing the parties to plan their cases according to the Court's rulings which gave notice as to the evidence that would be received.[4] Instead of doing so, Plaintiffs sought to introduce Dr. Dalrymple's deposition testimony at the close of their case-in-chief. By failing to obey the Court's scheduling orders, Plaintiffs unfairly prevented the United States from having an adequate opportunity to evaluate Dr. Dalrymple's testimony, to determine if he should be called to testify at trial, or take any other steps to address the designated portions. Indeed, the United States' futile attempt to bring Dr. Dalrymple to trial shows the unmistakable prejudice that Plaintiffs' disobedience would effect if the deposition testimony were deemed to be probative of a material fact in dispute.

As Plaintiffs have also implied, their failure to designate the deposition prior to trial deprived the United States of an opportunity to issue objections that are otherwise reserved until the time of trial. Compare Fed. R. Civ. P. 32(d)(3)(b) (requiring only that

---

[4] Plaintiffs' have previously violated the Court's scheduling orders regarding the designation of deposition testimony. As this Court is aware, Plaintiffs had months and, in some cases, years to designate their depositions for use at trial in a timely fashion. However, Plaintiffs failed to do so and needed, yet again, additional relief from the Court.

11

objections to the form of a question be made during a deposition) with Pls. Mem. at 3 ("During his testimony, Dr. Dalrymple – without objection – testified . . . .") (emphasis added). For example, the testimony cited by the Plaintiffs regarding the "strongly held belief that the wetlands" provide a storm surge buffer are the opinions of the LaCPR project and not necessarily the opinions of Dr. Dalrymple. Pls. Ex. B. at 34:4-36:6. Therefore, this line of questioning is objectionable on grounds of hearsay, for being outside the scope of the expert report, and a number of other reasons.[5]

---

[5] In the event that the Court determines that the deposition is admissible, Plaintiffs should be required to designate portions of the transcript. The United States should then be permitted to issue counter designation and objections.

## CONCLUSION

For these reasons, Dr. Dalrymple's deposition testimony should not be admitted into evidence.

                    Respectfully submitted,

                    TONY WEST
                    Assistant Attorney General

                    PHYLLIS J. PYLES
                    Director, Torts Branch

                    JAMES G. TOUHEY, JR
                    Assistant Director, Torts Branch

                    ROBIN DOYLE SMITH
                    Senior Trial Counsel, Torts Branch

                    /s/ Paul Levine
                    PAUL LEVINE
                    Trial Attorney, Torts Branch
                    Civil Division
                    U.S. Department of Justice
                    Benjamin Franklin Station, P.O. Box 888
                    Washington, D.C.  20044
                    (202) 353-2574 / (202) 616-5200 (Fax)

Dated: May 28, 2008          Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I, Paul Levine, hereby certify that on May 28, 2009, I served a true copy of the foregoing upon all counsel of record by ECF.

/s/ Paul Levine
Paul Levine