# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO. 05-4182 |
| PERTAINS TO: ALL LEVEE | SECTION "K"(2) |

## ORDER AND REASONS

Before the Court is National Union's Motion for Summary Judgment (Doc. 17325) filed by National Union Fire Insurance Company of Pittsburgh, Pa ("National Union") seeking the dismissal on all remaining claims and complaints consolidated in this matter and designated as "Levee" on the grounds that plaintiffs' claim was first made during the 2006 Policy, against which all claims and complaints have been dismissed, and therefore no other National Union policy provides coverage. Having reviewed the pleadings, memoranda and the relevant law, the Court finds the motion to have merit.

### Background

On August 10, 2007, a First Supplemental and Amending Levee Master Consolidated Class Action Complaint ("Master Complaint") (Doc. 6941) was filed pursuant to Case Management Order No. 4 whereby all class actions that had been filed in the Katrina umbrella were consolidated and by which National Union was added as a defendant as the insurer of the Board of Commissioners of East Jefferson Levee District ("EJLD") (Master Complaint, ¶ 16(j)). Plaintiffs contended that EJLD had the legal responsibility and duty to conduct the dredging

activity of the 17th Street Canal "in a manner that would not compromise the safety of the canal's levee/flood wall system." (Master Complaint, ¶ 85).

In addition, National Union seeks dismissal in certain other suits filed, those being, *Gayle T. Bennett, et al. v. Board of Commissioners for the East Jefferson Levee District, et al.* C.A. No. 09-146 ("Bennett"), *Leslie Sims, Jr. et al. v. The Board of Commissioners of the Orleans Levee District, et al.*, C.A. No. 06-5116 and *Elizabeth H. and William Keith DePass, et al. v. The Board of Commissioners of the Orleans Levee District, et al.*, C.A. No. 06-5127. The *Bennett* class action suit was remanded on April 1, 2009 to the 24th Judicial District Court for the Parish of Jefferson; as such, the Court has no jurisdiction over this matter.

As to the *Simms* and *DePass* matters, both of which were filed in 2006 and are styled as "Complaint for Declaratory Judgment and Damages and Request for Jury Trial," plaintiffs allege that they owned property that was damaged and destroyed by flood water associated with Hurricane Katrina." (Appendix to Motion, at 86 ant 110, ¶ 8). Each group of plaintiffs reside in a different geographic area. But in essence, their claims arise out of EJLD's alleged failures with respect to preventing the flow of water from the canals which flooded their homes causing damage to their property and personal injuries.

On August 26, 2008, the Court granted National Union's motion to dismiss all claims against National Union Policy No. 625-29-23 that was issued to EJLD with a policy period from January 1, 2006 through January 1, 2007, that being the 2006 Policy. In analyzing that "claims made" policy, the Court interpreted certain provisions in the policy finding that no coverage was afforded to plaintiffs thereunder. In that decision, the Court stated as follows:

> Here, the pertinent exclusion states:

2

> This policy does not apply to any Damages or Claim:
>
> (d) Arising Out Of **(1) bodily injury to, or sickness, disease, or death of any person, (2) damage to or destruction of any property, including the loss of use thereof**, (3) any allegation relating to the foregoing exclusion (d)(1) through (d)(2) that an insured negligently employed, investigated, supervised or retained a person, or based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such Damages or Claim.

(Doc. 9171-3, Appendix of Exhibits, at 22) (emphasis added). Furthermore, "Arising Out Of" is defined as:

> 6. Arising Out Of means originating from, having its origin in, growing out of, flowing from, incident to or having connection with, whether directly or indirectly.

    Simply put, this provision is not susceptible to two different interpretations. While this provision certainly greatly restricts the coverage provided under this policy of insurance, the Court is constrained to apply its terms as written. To do otherwise would require the Court to rewrite the policy and ignore the definition of "Arising Out Of." While the argument that each individual plaintiff seeking damages should be examined since the alleged damage of such a person might not have to do with personal injury or property damage to that particular individual, the definition states unequivocally that arising out of –whether directly or indirectly. The damages that are sought arise either directly or indirectly from the person injury and/or property damage that occurred as a result of the flooding caused by the breaches of the floodwalls around the City of New Orleans. For example, business was interrupted for all persons since there was an enforced evacuation of New Orleans for a number of weeks. Certainly, those damages indirectly arise out of the property destruction caused by the floodwall breaches.

    Furthermore, the policy is not illusory. It does provide coverage to certain officials and employees under certain circumstances for wrongful acts such as liable, slander, wrongful employment practices and the like.

    However, to the extent that National Union seeks a blanket dismissal from this suit, the Court will not do so. It is unclear whether there are any other policies which may provide coverage for the damages sought and National Union has been sued directly under polices of liability insurance, under the terms, provisions, and conditions of which it assumed the liability for the acts and/or negligence of its insured the EJLD.

3

(Doc. 14631, Order and Reasons at 14-15). With this as background, the Court will now take up the instant motion.

**Standard for Summary Judgment**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.'" *Condrey v. Sun Trust Bank of Georgia,* 429 F.3d 556, 562 (5th Cir. 2005), *citing DIRECTV, inc. v. Budden,* 420 F.3d 521, 529 (5th Cir. 2005) Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *Condrey*, 429 F.3d at 562. Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex* . at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for

summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

**The Parties Contentions**

In this motion, National Union, through counsel, has attested to the Court that according to its available records, National Union issued only the following claims-made-and reported polices in which the named insured as East Jefferson Levee District:

(1) Policy No. 435-45-04, effective 1/9/90 to 1/1/91 ("the 1990 Policy") (App. pp.0134-0151).

(2) Policy No. 436-82-32, effective 1/9/91 to 1/1/92 ("the 1992 Policy") (App. pp.0152-0176).

(3) Policy No. 874-97-47, effective 1/1/02 to 1/1/03 ("the 2002 Policy") (App. pp.0177-0206).

(4) Policy No. 985-89-92, effective 1/1/03 to 1/1/04 ("the 2003 Policy") (App. pp.0207-238).

(5) Policy No. 661-53-60, effective 1/1/04 to 1/1/05 ("the 2004 Policy") (App. pp.0239-0274).

(6) Policy No. 978-27-27, effective 1/1/05 to 1/1/06 ("the 2005 Policy") (App. pp.0275-0309).

(7) Policy No. 625-49-23, effective 1/1/06 to 1/1/07 ("the 2006 Policy").[1]

(8) Policy No. 966-04-68, effective 1/1/07 to 1/1/0 ("the 2007 Policy") (App. pp.0310-340).[2]

National Union has also demonstrated that all of these policies are "claims-made-and reported" policies. All of the policies from 2002 to 2005 and 2007 include substantially the same insuring agreement. They provide:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any Claim first made against the Insured during the Policy Period or the Discovery period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public Entity.

(App. pp. 0289,0323, Policies 2005 & 2007).

The 1990 and 1991 National Union Policies state:

> A. the Company will pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims first made against them because of a Wrongful Act, provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.
>
> B. The Company will reimburse the Public Entity for all Loss which the public Entity shall be required by laws to indemnify the Insureds for any civil claim or claims first made against them because of a Wrongful Act, provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.
>
> C. The Company will pay on behalf of the Public Entity all Loss which the Public Entity shall be legally obligated to pay for any civil claim or claims first made against it because of a Wrongful Act, provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.

---

[1] This policy was the subject of the aforementioned motion and all claims lodged as to that policy have been dismissed.

[2] Reference to the Appendix ("App.") is that attached to the subject motion.

(App. pp. 0136& 0155, 1990 and 1991 Policies). Thus, National Union argues that because EJLD was served with the first lawsuit of this litigation on or about September 12, 2006, "the claim was therefore made when the 2006 Policy was in effect" and thus none of the other policies provide coverage. (Doc. 17325, Motion at 8).

Plaintiffs' opposition to this motion solely centers on the allegation that there is no representation made by counsel for National Union that an exhaustive and comprehensive search was undertaken and that the fact that the 1989 Policy cannot be found underscores that failure. Furthermore, plaintiffs argue that there is no proof that National Union did not issue occurrence policies. Plaintiffs contend, "Thus, there exists the possibility that National Union (1) issued an occurrence-based policy to EJLD, and (2) the EJLD engaged in negligent actions during that policy period that led, in whole or in part to Plaintiffs' alleged damages.. Accordingly, there exist disputes of material fact sufficient to defeat summary judgment." (Doc. 18804 at 4)

**Analysis**

"An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." La. Civ. Code art. 1983; *Edwards v. Daugherty*, 883 So.2d 932, 940 (La. 2004); *Peterson v. Schimek*, 729 So.2d 1024, 1028 (La. 1999). As such, the general rules of contract interpretation as set forth in the Louisiana Civil Code guide the Court in interpreting the subject insurance policies. *Peterson*, 729 So.2d at 1028. "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. *See* La. Civ. Code art. 2045; *Carbon* [*v. Allstate Ins. Co.,* 97-3085, p. 4 (La. 10/20/98, 719 So. 2d 437, 439]*; Louisiana Ins.* [*Guar. Ass'n v.*

7

*Interstate Fire & Cas. Co.* 03-0911, p. 5 (La. 1/14/94)], 630 So.2d 759, 763." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577 (La. 2003).

In *Cadwallader*, the Supreme Court of the State of Louisiana set forth succinctly the most important guiding principles:

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ Code art. 2047; *Peterson v. Schimek,* 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; *Carbon,* 719 So.2d at 440-441; *Reynolds,* 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Carrier v. Reliance Ins. Co.,* 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; *Peterson,* 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.,* 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; *Peterson,* 729 So.2d at 1029.
> . . .
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Fannaly,* 805 So.2d at 1137; *Louisiana Ins.,* 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Peterson,* 729 So.2d at 1029; *Louisiana Ins.,* 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. *Louisiana Ins.,* 630 So.2d at 764.

*Cadwallader*, 848 So.2d at 580 (coverage provided by UM policy for resident relative in household did not include foster children).

Before the Court are "claims made" policies rather than "occurrence" policies. In discussing the difference between an occurrence policy and a claims made policy, the Louisiana Supreme Court citing *Anderson v. Ichinose*, 760 So.2d 302 (La. 1999) in *Hood v. Cotter*, 5 So.3d 819 (La. 2008) noted:

> With the development of a more complex society, it became more reasonable, particularly with respect to the activities of professionals, to insure against the making of claims, rather than the happening of occurrences, and "claims made" insurance developed to meet a need for professionals to insure against the making of a claim as the insured event, rather than having to struggle with traditional concepts and difficulties inherent in determining whether the "event" insured against was the commission of an act, error or omission or the date of discovery thereof or the date of injury caused thereby. **The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.**
>
> *Anderson* at pp. 5-6, 760 So.2d at 305 (quoting Sol Kroll, The Professional Liability Policy "Claims Made", 13 Forum 842, 843 (1978)).

*Id.* (emphasis added). Thus, if no claim is made in the particular policy year, there can be no coverage.

Obviously, since the flooding at issue did not occur until August of 2005, no policy that is a claims made policy that predates the occurrence could be implicated. The 2005 Policy and 2007 Policy include substantially the same insuring agreement, and plaintiffs make no argument that any claim was made during that period or that National Union's contention that the first trigger, that being ELJD's being served on September 12, 2006, means that only that policy can be implicated with respect to coverage. Their only opposition is there may be some policy that National Union has not provided that might provide coverage.

National Union provided the affidavit of Martha S. Keane, who works for AIG domestic claims, Inc. in New York, New York, as a Complex Claims Director. AIG Domestic Claims, Inc. is the authorized claims handling agent for National Union. She avers that she "search the records of National Union to identify the public officials and employees' liability policies issued by National Union , in which the East Jefferson Levee District and/or its Board of Commissioners are named insureds." (App. at 0341-42) She avers that only the policies that have been discussed in here were found.

Plaintiffs' argument is not based on a single fact. Plaintiffs have not filed a motion to compel or taken advantage of any other discovery device to bolster this its contention. As such, the Court finds there is no reason to deny National Union the relief it seeks. Accordingly,

**IT IS ORDERED** that National Union's Motion for Summary Judgment (Doc. 17325) is **GRANTED** as to the claims against it contained in First Supplemental and Amending Levee Master Consolidated Class Action Complaint ("Master Complaint") (Doc. 6941), *Leslie Sims, Jr. et al. v. The Board of Commissioners of the Orleans Levee District, et al.*, C.A. No. 06-5116 and *Elizabeth H. and William Keith DePass, et al. v. The Board of Commissioners of the Orleans Levee District, et al.* , C.A. No. 06-5127 and **DENIED** with respect to *Gayle T. Bennett, et al. v. Board of Commissioners for the East Jefferson Levee District, et al.* C.A. No. 09-146 as that

matter was remanded on April 1, 2009 to the 24th Judicial District Court for the Parish of Jefferson.

New Orleans, Louisiana, this  29th  day of May, 2009.

                                         **STANWOOD R. DUVAL, JR.**
                            **UNITED STATES DISTRICT COURT JUDGE**