UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION<br><br>FILED IN:   05-4181, 05-4182, 05-4191, 05-4568,<br>05-5237, 05-6073, 05-6314, 05-6324,<br>05-6327, 05-6359, 06-0020, 06-1885,<br>06-0225, 06-0886, 06-11208, 06-2278,<br>06-2287, 06-2346, 06-2545, 06-3529,<br>06-4065, 06-4389, 06-4634, 06-4931,<br>06-5032, 06-5042, 06-5159, 06-5163,<br>06-5367, 06-5471, 06-5771, 06-5786,<br>06-5937, 06-7682, 07-0206, 07-0647,<br>07-0993, 07-1284, 07-1286, 07-1288,<br>07-1289. | CIVIL ACTION<br><br>No. 05-4182<br><br>SECTION "K"(2)<br><br>JUDGE DUVAL<br><br>MAG. WILKINSON |

PERTAINS TO: LEVEE AND MRGO

### BRINKMEYER OBJECTORS' REPLY TO
### JOINT MOVANTS' SUPPLEMENTAL MEMORANDUM

Objecting class members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart (the "Brinkmeyer Objectors") submit this reply to the supplemental memorandum of the proponents of the proposed limited fund class settlement (Doc. 18910).

In their opening brief, the Brinkmeyer Objectors explained that the Court should not certify a mandatory settlement class or approve the proposed settlement under a limited fund theory because the proponents have failed to show that the defendant levee districts have made the maximum

possible contribution to the settlement fund as required by *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999). Doc. 18745 at 2-5. The Brinkmeyer Objectors explained that, although the levee districts' assets are immune from seizure to satisfy a judgment, the limits of the levee districts' insurance policies do not constitute the maximum fund available because the levee districts *can* appropriate funds to settle claims, and the proponents have failed to show that the levee districts are incapable of making *any* contribution to the settlement fund. In response, the proponents assert that because the levee districts "cannot be forced to pay anything" they are entitled to the benefits of a limited fund settlement without making any contribution. Doc. 18910 at 4. The proponents' argument is contrary to the holding in *Ortiz* that "a limited fund rationale for mandatory class treatment of a settlement-only action requires assurance that claimants are receiving the maximum fund," 527 U.S. at 863, and the proponents have not cited any case holding that assets immune from seizure cannot be considered by the court in determining whether a defendant has made its maximum possible contribution.[1] To the contrary, the proponents concede that they "cannot cite to any case approving a limited fund settlement to which an insured defendant contributed nothing." Doc. 18910 at 5.

The proponents also assert that the levee districts' assets are not available for contribution to the settlement fund because Timothy P. Doody "testified that the Levee Districts cannot and will not appropriate money for judgments resulting from this litigation." Doc. 18910 at 4 (citing

---

[1] Indeed, if the proponents were correct that insurance proceeds constitute a limited fund where other assets are available but immune from seizure, it would provide a perverse incentive for governmental entities to be under-insured for mass torts, because they could force injured parties into a limited fund settlement any time aggregate claims exceeded policy limits. The Court should avoid such a result by forcing the levee districts to make the maximum possible contribution before being released.

Transcript, page 93, lines 12-13). The proponents have missed the point. Mr. Doody was never asked the relevant question under *Ortiz*: whether the levee districts are capable of making any contribution to the settlement fund. Thus, Mr. Doody's testimony that the levee districts "can't" and "won't" appropriate money to pay judgments awarded is inapposite. Transcript, pages 93-94, lines 25-3. Even if it were relevant, Mr. Doody's testimony that the levee districts "can't" appropriate money to pay judgments is wrong as a factual matter. The levee districts are authorized by law to appropriate funds to satisfy judgments or pay settlements, La. R.S. 13:5109(B)(2), and evidence admitted at the hearing demonstrates that the levee districts have routinely done so. *See* Exhibit Nos. 88, 89, 90. Moreover, even if it were relevant, Mr. Doody's testimony that the levee districts "won't" appropriate money to pay judgments in the future was speculation about future political decisions by each levee district's board of commissioners. Although the Brinkmeyer Objectors raised these issues in their opening brief (Doc. 18745 at 3), the proponents have offered no response.

The proponents also miss the point by arguing that the levee districts could not fully satisfy judgments against them without impeding their flood control obligations. Doc. 18910 at 4-6. The issue here is not whether the levee districts could fully satisfy judgments; rather, it is whether they have made the maximum possible contribution to the settlement fund. Although it is undisputed that the levee districts' potential liability far exceeds available insurance, the proponents have not even attempted to show the amount of contribution that the levee districts could make to the settlement fund and still meet their public responsibilities with respect to the hurricane protection system.

The proponents argue that the proposed limited fund settlement "is the best option for resolving the litigation" and that "the objectors have offered no viable alternative, much less an equitable one." Doc. 18910 at 2. The proponents dismiss the Brinkmeyer Objectors' suggestion that

a class be certified under Rule 23(b)(3) to give individual class members the choice whether to settle for the insurance proceeds or to opt out and take the risk of proceeding to judgment. *See* Doc. 18745 at 9. The proponents claim that this is a "feast-or-famine approach where a small number of litigants rush to judgment and deplete all of the potentially available funds, with the result that the lion's share of claimants receive nothing." Doc. 18910 at 3. The proponents have misunderstood. Under the suggested alternative, there would be no "race to the courthouse" to collect the insurance proceeds. Rather, the full amount of the available insurance would be devoted to the Rule 23(b)(3) settlement class; only the opt-outs would forgo a share of the insurance proceeds and take their chances on obtaining potentially uncollectable judgments. As the Brinkmeyer Objectors explained in their opening brief, because a settlement for the available insurance is unlikely to provide more than de minimis benefit to each class member, there is little downside risk in opting out to pursue a claim to judgment. Indeed, the Brinkmeyer Objectors noted that class counsel believes that class members who make a claim are unlikely to receive any distribution from the proposed settlement fund, a point that, given the settlement's small size, the proponents do not dispute.

Allowing opt-outs would have the further benefit of avoiding the issue of whether a mandatory settlement class in a mass tort suit is constitutional. *See Ortiz*, 527 U.S. at 845 (recognizing "the serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale"). In their opening brief, the Brinkmeyer Objectors explained that where substantial unliquidated money damages are at stake, certification of a non-opt-out settlement class violates the Due Process Clause. Doc. 18745 at 5-7. The proponents' only response is that no case binding on this Court has yet held that due process prohibits mandatory class action

treatment of mass tort cases, Doc. 18910 at 8-10, which is hardly reassuring given the Supreme Court recognition that such treatment raises serious constitutional issues.

Finally, in their opening brief, the Brinkmeyer Objectors offered several reasons why the provision of the proposed settlement agreement that holds open the possibility of counsel recovering an enhancement of costs and expenses is unfair, unethical, and should be struck from the agreement. Doc. 18745 at 12-14.  The proponents do not respond to any of those arguments, but only note that "the Class Settlement Agreement simply allows such an application, which the Court is of course free to reject in whole or in part." Doc. 18910 at 7.  But just as the proponents have agreed to remove from the settlement agreement the indemnity provision that was opposed by the Sims Objectors, *id.* at 13-14, the enhancement of costs provision should be removed at the outset.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the previously filed objections (Doc. 18179-2) and brief (Doc. 18745), the proposed limited fund settlement class should not be certified, and the proposed settlement should not be approved.

Respectfully submitted,

 /s/ *Jennifer J. Rosenbaum*  
Jennifer J. Rosenbaum, Local Counsel  
La. Bar No. 31946  
New Orleans Workers' Center for Racial Justice  
217 N. Prieur St.  
New Orleans, LA 70112  
615-423-0152  
jjrosenbaum@gmail.com  

 /s/ *Michael T. Kirkpatrick*  
Michael T. Kirkpatrick, Trial Attorney  
DC Bar No. 486293, *Pro Hac Vice*  
Allison M. Zieve  
DC Bar No. 424786  
Public Citizen Litigation Group  
1600 20th Street NW  
Washington, DC 20009  
202-588-1000  
mkirkpatrick@citizen.org  

Counsel for Objectors Mary Brinkmeyer,
Michelle LeBlanc, and Thomas C. Stuart

5

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June, 2009, I electronically filed the foregoing Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all known counsel of record in this matter.

*/s/ Jennifer J. Rosenbaum*
Jennifer J. Rosenbaum, Local Counsel