

William C. Gambel
A Professional Law Corporation
(504) 569-7210
wgambel@millinglaw.com

February 3, 2009

Thomas P. Anzelmo, Esq.
McCranie, Sistrunk, Anzelmo,
 Hardy, Maxwell & McDaniel
3445 N. Causeway Boulevard, Suite 800
Metairie, LA 70002

Ben L. Mayeaux, Esq.
Laborde & Neuner
P. O. Box 52828
Lafayette, LA 70503

Gary M. Zwain, Esq
3828 North Causeway Boulevard
3 Lakeway Center, Suite 2900
Metairie, LA 70002

Ralph S. Hubbard, III, Esq.
Lugenbuhl, Wheaton, Peck,
 Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

   Re: Katrina Canal Breaches – Consolidated Litigation
     CA No. 05-4182, Section "K" (2) and (3)
     *Sims*, No. 06-5116, et al

Gentlemen:

  We ask that the Levee Boards produce all documents related to (i) their respective claims-paying ability. This would include past claim-paying history, long term contracts settlement payouts, and debt liquidation plans and proposals; any consideration of proposing, or enriching St. Paul's offer by a payment over a term of years or via proceeds of a bond issue with the debt amortized out of future revenues or R.S. 13:5109 appropriations; (ii) Levee District Capital and Operating Budgets, with detail of possible tax rate and base projections, and anticipated tax revenues with tax rate and base methodologies; (iii) history of past bond issues contemplated and performance of those issues; (iv) any communication with St. Paul respecting Katrina/Rita claims, exposure, transition to SELA Authorities effective 1/1/2007;

New Orleans • 909 Poydras Street, Suite 2300 • New Orleans, Louisiana 70112 • (504) 569-7000 • Fax (50...
Lafayette • 101 LaRue France, Suite 200 • Lafayette, Louisiana 70508 • (337) 232-3929 • Fax (337) 23...
Baton Rouge • 339 Florida St., Suite 300 • Baton Rouge, Louisiana 70801 • (225) 291-7300 • Fax (225) 2...

EXHIBIT C

MILLING BENSON WOODWARD L.L.P.

February 3, 2009
Page 2

(v) supplemental responses to discovery propounded in the 24th Judicial District Court in Bennett/de la Houssaye, particularly as relates to non-centerline dredging; (vi) non-flood and surplus assets, asset utilization, highest and best use studies, development of plans and proposals, hotels, amusement parks, marinas, airport, casinos, UNO ventures, third party proposals; (vii) reports, communication and interface with DOA and ORM; (viii) status of post 1/1/07 division of OLD assets, East and West, with supporting data (ix) opinions on matters related to or respecting the fairness of the settlement proposal, St. Paul's exposure to future legal expense and cost, the seizability of district assets, *Reed* six factors, Limited Fund Factors, *Fibreboard* and Settlement only Certification under *Amchem*.

We ask St. Paul to produce (x) defense costs projection, loss reserves, defense cost incurred to date since August 28, 2005, response to discovery propounded in Bennett/de la Houssaye, documents respecting claims under Policy Form G0208 Ed. 10-97; Form G0209 Ed. 10-97; Form 47123, Ed. 04-91, Form 47123, Ed. 04-91 and/or Form E0113 995, Ed. 9-95, its underwriting and claims files, and that it will make persons most knowledgeable available for deposition, and provide any opinion on *Reed* Factors, under *Fibreboard's* Limited Fund, and/or Settlement Class Only requirements. See *Amchem*.

We assume that the obligation to produce or provide will be governed by the Rules of Initial Disclosure, FRCP 26, and that discovery conducted and Title V will be modified to substitute 15 days for 30 day requirement on the predicate of New Orleans good faith.

Very truly yours,

William C. Gambel

W380339

cc: John C. Cummings, Esq.
    Rachal Meese, Esq.

**Rachel Meese**

| | |
|---|---|
| From: | William Gambel [WGAMBEL@millinglaw.com] |
| Sent: | Thursday, February 05, 2009 3:13 PM |
| To: | Ralph Hubbard |
| Cc: | Rachel Meese |
| Subject: | Item x clarification; 2/3/09 letter; |

Ralph, looking again at my Letter of 2/3, item (x) regarding documents respecting claims I mean respecting claims under Policy form G0208 etc.
I only mean claims in excess of the General total Limit and Each Event Limit, and I neglected to list particularly where Form G0251 [Ed. 10-97].

I'd like explanatory materials * means information, however stored or accessed, serving to explain a term or concept, or to illustrate its meaning or application, as by example, or which is expository, illustrative, clarifying, informative, allegorical, interpretive, annotative, instructive, guiding, illuminating, declarative, descriptive, explicative, analytical, graphic, discursive, critical, or supplementary, and as such includes all manuals, Information releases, clarifications of underwriters, slides, teaching materials, drafting aids, referenced materials and discussion pieces;

William C. Gambel, Esq.
Milling Benson Woodward L.L.P.
909 Poydras, Suite 2300
New Orleans, LA  70112
Telephone:  (504) 569-7210
Fax: (504) 569-7001
E-mail:  wgambel@millinglaw.com

1

Ralph S. Hubbard III
Tel: (504) 568-1990, ext. 118
Direct: (504) 310-9118

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
A LAW CORPORATION
SUITE 2775 PAN AMERICAN LIFE CENTER
601 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130

Fax: (504) 310-9195
e-mail: rhubbard@lawla.com

February 13, 2009

BY E-MAIL & U.S. MAIL
William C. Gambel, Esq.
Milling Benson Woodward L.L.P.
909 Poydras, Suite 2300
New Orleans, LA 70112

  Re: *In Re Katrina Consolidated Litigation*
    Federal District Court for the Eastern District of Louisiana
    Case No. 05-4182

Dear Bill,

  This letter is in response to your correspondence of February 3, 2009 seeking certain discovery from St. Paul. I disagree that the documents you request in your letter fall within the scope of Fed. R. Civ. P. 26(a). Nonetheless, as we discussed during our meeting of February 2, 2009, St. Paul is willing to cooperate in reasonable settlement-related discovery.

  To that end, this letter responds to the specific requests in section (x) of your February 3, 2009 letter. Please note that the entirety of this letter and all of the responses provided herein are subject to and without waiving any objections, including but not limited to the objections stated in St. Paul's formal responses to the discovery propounded in *Bennett/De La Houssaye* which are hereby incorporated by reference.

1) **Defense costs projection, loss reserves, defense cost incurred to date since August 28, 2005.**

  St. Paul objects to this Request on the grounds that it is vague and ambiguous, overbroad, and is not relevant or reasonably calculated to lead to the discovery of admissible evidence for settlement purposes. St. Paul further objects to this Request on the grounds that the information requested is proprietary and confidential business information.

  Specifically, recognizing that loss reserves are *not* an insurer's internal assessment of amounts it owes the insured, courts have repeatedly refused to require insurers to produce such information because it is not relevant. *See, e.g., Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99 (D.N.J. 1989) (court refused to order production of reserve information); *Shelter Mut. Ins. Co. v. Culbertson's Ltd., Inc.*, 1999 WL 539520, at *4 (E.D. La. July 23, 1999) (holding that reserve information is inadmissible to prove bad faith); *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1188-89 (Colo. 2002) (finding that reserve amounts were only partially within the insurer's control; a particular reserve amount did not necessarily reflect the insurers' valuation of a particular claim); *Savoy v. Richard A. Carter Trucking, Inc.*, 176 F.R.D. 10, 12 (D. Mass. 1997) (refusing to allow

1



discovery of the actual amount of the reserve, as initially established or modified); *Federal Realty Inv. Trust v. Pacific Ins.*, 760 F. Supp. 533, 540 (D. Md. 1991) (denying discovery of reserves and describing them as "mere guesses at the outcome of litigation based on conservative accounting principles"); see also La. Rev. Stat. § 22:1214(20)(b) ("no insurer shall be required to provide loss reserve information, and no prospective insurer may refuse to insure an applicant solely because the prospective insurer is unable to obtain loss reserve information"). St. Paul's loss reserves are not relevant to the fairness of the settlement and will not lead to the discovery of admissible evidence.

In further response, St. Paul is not in possession of any formal "defense cost projection" and objects to any disclosure of its expended defense costs on the basis of relevance, proprietary and confidential business information, and attorney-client, work-product and joint defense privileges.

2)   Responses to discovery propounded by you in the *Bennett* and *De la Houssaye* cases.

St. Paul incorporates by reference, and attaches hereto, its responses to said discovery. St. Paul also incorporates by reference its response to your Motion to Compel this discovery. St. Paul reserves all objections to the requested documents as asserted therein, and subject to such objections supplements certain of those responses as follows:

In Requests for Production Nos. 1 and 2, you requested re-insurance information with respect to policies issued by St. Paul to its insureds Orleans Levee District ("OLD") and East Jefferson Levee District ("EJLD"). Information pertaining to any reinsurance is irrelevant. Whether there is reinsurance, or how the reinsurance placement may be structured, will disclose nothing about the fairness of the proposed settlement.

A reinsurance agreement is a separate contract between an insurer and a reinsurer that entitles the insurer to make a claim under that contract for a portion of a payment it has made under the policy it issued to the insured. The Louisiana Supreme Court has held that an insured has no legal interest in the contract between its insurer and its insurer's reinsurer. *Arrow Trucking*, 465 So. 2d 691, 695 (La. 1985). As the Louisiana Supreme Court explained:

> [The insurer] agrees to turn over to another insurer, usually one handling nothing but such reinsurance, a portion of its risks. The premium which it pays to the reinsurer for the risk the reinsurer assumes is not large in proportion to that which the ceding company retains, since the reinsurer does not bear like agency expenses and other similar overhead. The original insured has no contact with the reinsuring company and is not notified of the reinsurance. *The insured is not a party to the contract between the insurer/reinsured and the reinsurer, and has no legal interest therein.* A diversification or spread of risk is achieved with greater security, though less profit, to the ceding company.

*Id.* (emphasis added) (citing Appleman, *supra*, § 7681).

Most courts have consistently held that information concerning reinsurance is not discoverable. *See e.g. Occidental Chem. Corp. v. Hartford Acc. & Indem. Co.*, Index No. 41009/8D (N.Y. Sup. Ct. Dec. 4, 1990). *American Med. Sys., Inc. v. National Union Fire Ins.*

*Co. of Pitts., Inc.*, 1999 WL 781495 (E.D. La. Sept. 29, 1999) (Roby, Mag. J.) (holding that reinsurance information is not relevant and denying motion to compel disclosure of same); *Leksi, supra,* (holding that reinsurance information is not relevant); *Independent Petrochem. Corp.*, 117 F.R.D. 283, 288 (D.D.C. 1986) ("Reinsurance information . . . appears to be no more relevant than reserve information."). Disclosure of St. Pauls' reinsurance placement with respect to the Policy issued to OLD and EJLD is simply not relevant to the fairness of the proposed settlement.

In Requests for Production No. 3 through 8, you seek "explanatory materials" for the term "event." The word "event" is defined in the policies. Specifically, "event" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." There is no ambiguity in this definition and no reasonable relevant information which Plaintiffs could obtain from "explanatory materials" regarding the use of this defined term in the Policies. Further, in discussing this matter with St. Paul's attorneys on January 27, 2009, you admitted that you were not aware of the definition in the policies and, in light of same, that such materials were no longer needed.

With respect to Request for Production No. 9, you request explanatory material defining or describing the significance of "using or failure to use" in Form E0119, ed. 3-96. As we discussed during our January 27, 2009 discovery conference, the phrase "using or failure to use" does not appear in the identified form. Accordingly, no response to this request is necessary or possible.

In Requests for Production Nos. 3 through 10, you requested a variety of "explanatory materials" regarding certain terms employed in various forms in the St. Paul policies. Your definition of "explanatory materials" as outlined in your email correspondence of February 5, 2009 is vague, ambiguous and overly broad. You have not requested a specific document, or even a specific type of document, but instead have requested every shred of paper which may mention in any way, shape, or form the policy term or form that you have referenced. This is simply overly broad and gives St. Paul no indication of the specific document or documents that are being requested. Nonetheless, St. Paul is currently investigating whether it possesses certain categories of documents that might fall within your definition of "explanatory materials," and it will supplement this response should any responsive documents be located.

In Request for Production No. 13, you requested "all Applications for the OLD Policy inclusive of." This Request for Production is unintelligible as drafted. It was clearly not completed before being served, and therefore, St. Paul cannot respond to this request. However, to the extent this request was intended to ask for the 2005 application for the OLD Policy, see response to Request for Production No. 18 below.

In Request for Production No. 14, you requested any Predecessor OLD Policy. Subject to the objections already stated, St. Paul agrees to produce all policies it issued to the OLD for the five years prior to the storm. We have already requested and are currently awaiting receipt of certified copies of such policies from St. Paul. Upon our receipt of these policies, we will make them available to you for inspection and/or copying.

In Request for Production No. 15, you requested any Predecessor EJLD Policy. Subject to the objections already stated, St. Paul agrees to produce all policies it issued to the EJLD for the five years prior to the storm. We have already requested and are currently awaiting receipt of

certified copies of such policies from St. Paul. Upon our receipt of these policies, we will make them available to you for inspection and/or copying.

In Request for Production No. 16, you requested all correspondence, including notice of claims, between St. Paul and the OLD or EJLD post-Katrina. As the first lawsuit naming St. Paul and/or its insureds was filed just days following Hurricane Katrina, the claims file is almost entirely produced post-litigation and is therefore privileged. Nonetheless, subject to the objections already stated, St. Paul agrees to produce all non-privileged documents in its possession that are responsive to this request. Upon our receipt of these documents and review for privileged information, we will make all non-privileged portions of these documents available to you for inspection and/or copying.

In Request for Production No. 17, you requested all correspondence, including notice of claims, between St. Paul and any agent or broker for EJLD related to or respecting the issuance of any Policy or Predecessor Policy. Subject to the objections already stated, St. Paul agrees to produce the underwriting files for the EJLD policies for 2005 and the five years prior to the storm. Any correspondence with agents or brokers related to or respecting the issuance of the EJLD policies would be located in those underwriting files. Upon our receipt of these documents and review for privileged information, we will make all non-privileged portions of these documents available to you for inspection and/or copying.

In Request for Production No. 18, you requested all applications for insurance made by or for EJLD or OLD, including applications for renewal. Subject to the objections already stated, St. Paul agrees to produce its underwriting files for the OLD and EJLD policies for 2005 and the five years prior to the storm. Any applications for insurance in St. Paul's possession would be located in those underwriting files. Upon our receipt of these documents and review for privileged information, we will make all non-privileged portions of these documents available to you for inspection and/or copying. To the extent you seek applications submitted by OLD or EJLD to other insurers, St. Paul is not in possession of same and cannot therefore produce such documents.

3) **"Documents respecting claims under Policy Form G0208 Ed. 10-97; Form G0209 Ed. 10-97; Form 47123, Ed. 04-91; Form 47123, Ed. 04-91 and/or Form E0113 995, Ed. 9-95."**

As clarified by your email correspondence of February 5, 2008, this request is in respect of "claims in excess of the General total Limit and Each Event Limit."

St. Paul objects to this Request on the grounds that it is vague and ambiguous, overbroad, and is not relevant or reasonably calculated to lead to the discovery of admissible evidence for settlement purposes. Subject to said objection, St. Paul is endeavoring to obtain "loss runs" for claims under the policies at issue for the past five years. St. Paul will produce same upon receipt.

4) **"Underwriting and claims files"**

Please see response to No. 3 above. With respect to St. Paul's claims files, St. Paul further objects based on attorney-client privilege, joint defense privilege, and work-product

4

privilege. As the first lawsuit naming St. Paul and/or its insureds was filed just days following Hurricane Katrina, the claims file is almost entirely produced post-litigation and is therefore privileged. Nonetheless, subject to the objections already stated, St. Paul agrees to produce all non-privileged documents in its possession that are responsive to this request. Upon our receipt of these documents and review for privileged information, we will make all non-privileged portions of these documents available to you for inspection and/or copying.

With regard to the underwriting files, subject to the objections already stated and in response to Request for Production No. 17 and 18, St. Paul agrees to produce its underwriting files for the OLD and EJLD policies for 2005 and the five years prior to the storm.

5) **"Make persons most knowledgeable available for deposition"**

St. Paul requests that you clarify more specifically the topics of any proposed deposition so that St. Paul may produce the most knowledgeable person to respond to said topics. Pursuant to same, and the Court's order regarding settlement discovery, St. Paul requests that any such depositions be noticed in Case No. 05-4182, LAED pursuant to the Federal Rules of Civil Procedure.

6) **"Any opinion on *Reed* factors, under *Fibreboard's* Limited Fund, and/or Settlement Class only requirements. See *Amchem.*"**

St. Paul objects to this request on the grounds that it is vague and ambiguous and appears to request information protected by attorney client privilege or work product privilege. To the extent the request seeks expert opinions obtained by St. Paul for use in the Fairness Hearing, St. Paul currently has no such report(s) or opinion(s) in its possession. Should same be obtained, it will be disseminated as required by the Court.

Sincerely,

/s/ Ralph S. Hubbard, III

Ralph S. Hubbard, III

Enclosures

cc:
Ault Hootsell
Joseph Guichet
Rachel A. Meese
Thomas Anzelmo
Gary Zwain
Ben Mayeaux

5

Ralph S. Hubbard III
Tel: (504) 568-1990, ext. 118
Direct: (504) 310-9116

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
A LAW CORPORATION
SUITE 2775 PAN AMERICAN LIFE CENTER
601 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130

Fax: (504) 310-9195
e-mail: rhubbard@lawla.com

March 3, 2009

<u>BY FACSIMILE & U.S. MAIL</u>
Managing Partner
Milling, Benson, Woodward, L.L.P.
909 Poydras, Suite 2300
New Orleans, LA 70112

RE: *DelaHoussaye, et. al. v. The Parish of Jefferson, et. al., consolidated with Bennett, et. al. v. Board of Commissioners of the Orleans Levee District, et. al.*
United States District Court for the Eastern District of Louisiana Nos. 09-0145 and 09-0146 (Removed from Twenty Fourth Judicial District Court, Div. I, No. 635-594 No. 624-894)
Our File No.: 18730-09002

Dear Sir,

We are deeply sorry to hear of the loss of Mr. Gambel. I am writing because Judge Knowles had previously ordered St. Paul to provide supplemental responses to Requests for Production Nos. 3 through 10 issued in the captioned case by today's date. Specifically, said Requests sought "explanatory materials" regarding several of St. Paul's policy forms. By this letter, St. Paul advises that it has conducted a reasonable investigation into this matter and located no responsive materials.

Once again, I am sorry for your loss.

Sincerely,

Ralph S. Hubbard, III
Rachel A. Meese

bcc:
Ault Hootsell
Joseph Guichet
Rachel A. Meese
Thomas Anzelmo
Gary Zwain
Ben Maveaux

**EXHIBIT**
E