```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
 2

 3   *****************************************************************

 4   LOUISIANA STATE, ET AL
                                   CIVIL DOCKET NO. 07-5528 "J"
 5   V.                            NEW ORLEANS, LOUISIANA
                                   THURSDAY, MAY 28, 2009, 2:00 P.M.
 6   AAA INSURANCE, ET AL

 7   *****************************************************************

 8   IN RE:  KATRINA CANAL BREACHES
             CONSOLIDATED LITIGATION
 9                                 CIVIL ACTION NO. 05-4182 "K"

10   PERTAINS TO:  INSURANCE
                    CHEHARDY, 06-1672
11                  CHEHARDY, 06-1673
                    CHEHARDY, 06-1674
12

     *****************************************************************
13

14                 TRANSCRIPT OF MOTION PROCEEDINGS
            HEARD BEFORE THE HONORABLE CARL J. BARBIER
15                 UNITED STATES DISTRICT JUDGE

16

17   APPEARANCES:

18

     FOR THE PLAINTIFFS:      HERMAN HERMAN KATZ & COTLAR
19                            BY:  STEPHEN J. HERMAN, ESQUIRE
                              820 O'KEEFE AVENUE
20                            NEW ORLEANS LA  70113

21                            LAW OFFICES OF FRED HERMAN
                              BY:  FRED L. HERMAN, ESQUIRE
22                            1010 COMMON STREET, SUITE 3000
                              NEW ORLEANS LA  70112
23
                              BRUNO & BRUNO
24                            BY:  JOSEPH M. BRUNO, ESQ.
                              855 BARONNE STREET
25                            NEW ORLEANS LA  70113
```

```
 1   APPEARANCES CONTINUED:

 2

 3                              FAYARD & HONEYCUTT
                               BY:  CALVIN C. FAYARD, JR., ESQUIRE
 4                             519 FLORIDA AVENUE SOUTHWEST
                               DENHAM SPRINGS LA  70726
 5
                               BRYAN K. McMINN
 6                             ATTORNEY AT LAW
                               202 QUAYSIDE CIRCLE, SUITE 301
 7                             MAITLAND FL  32751

 8                             BEEVERS & BEEVERS
                               BY:  STEVEN M. MAUTERER, ESQUIRE
 9                             210 HUEY P. LONG AVENUE
                               GRETNA LA  70053
10
                               ATES LAW FIRM
11                             BY:  J. ROBERT ATES, ESQUIRE
                               PAULA ADAMS-ATES, ESQUIRE
12                             13726 RIVER ROAD, SUITE A
                               DESTREHAN LA  70047
13
                               THE DUDENHEFER LAW FIRM, LLC
14                             BY:  FRANK C. DUDENHEFER, JR., ESQUIRE
                               601 POYDRAS ST.
15                             SUITE 2655
                               NEW ORLEANS LA 70130
16

17

18   FOR THE DEFENDANTS:       LUGENBUHL, WHEATON, PECK, RANKIN &
                               HUBBARD
19                             BY:  SETH A. SCHMEECKLE, ESQUIRE
                               PAN-AMERICAN LIFE CENTER
20                             601 POYDRAS STREET, SUITE 2775
                               NEW ORLEANS LA  70130
21

22                             BERNARD, CASSISA, ELLIOTT & DAVIS, APLC
                               BY:  STEPHEN N. ELLIOTT, ESQUIRE
23                             1615 METAIRIE ROAD
                               P. O. BOX 55490
24                             METAIRIE LA 70055

25
```

```
 1   FOR LOUISIANA CITIZENS
     PROPERTY INSURANCE
 2   COMPANY:                    BREAZEALE SACHSE & WILSON
                                 BY:  EMILE C. ROLFS, III, ESQUIRE
 3                                    CHRIS D. BILLINGS, ESQUIRE
                                 ONE AMERICAN PLACE, 23RD Mr. Rolfs
 4                               POST OFFICE BOX 3197
                                 BATON ROUGE LA  70821
 5

 6   ALSO PRESENT:               MADRO BANDARIES, ESQUIRE

 7

 8   OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
                                 500 POYDRAS STREET, ROOM B406
 9                               NEW ORLEANS LA  70130
                                 (504) 589-7779
10
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
11   PRODUCED BY COMPUTER.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          **I N D E X**

2

3    <u>Examinations</u>                                    <u>Page</u>

4

5    MR. ROLFS............................................    6

6    MR. STEPHEN HERMAN..................................   14

7    MR. FRED HERMAN.....................................   27

8    MR. ROLFS...........................................   28

9    THE COURT...........................................   32

10   MR. ROLFS...........................................   32

11   MR. FRED HERMAN.....................................   32

12   MR. ROLFS...........................................   33

13   THE COURT...........................................   33

14   MR. BANDARIES.......................................   35

15   THE COURT...........................................   37

16   MR. FRED HERMAN.....................................   38

17   MR. BANDARIES.......................................   39

18   THE COURT...........................................   39

19   MR. FRED HERMAN.....................................   40

20   MR. BANDARIES.......................................   40

21   THE COURT...........................................   40

22

23

24

25

1               **P-R-O-C-E-E-D-I-N-G-S**

2               A F T E R N O O N   S E S S I O N

3                 THURSDAY, MAY 28, 2009

4                    (IN OPEN COURT)

5

6          THE DEPUTY CLERK:  All rise.

7          THE COURT:  Good afternoon, everyone.  Please be seated.

8    Eileen, you can call this matter.

9          THE DEPUTY CLERK:  Civil Action Number 07-5528,

10   Louisiana State versus AAA Insurance, et al.

11         THE COURT:  All right.  Counsel, has everyone who wanted

12   or needed to sign in, signed this appearance sheet?

13             The Court is hearing this afternoon the motion for

14   preliminary injunction by Citizens, Louisiana Citizens, and that

15   actually applies -- two similar motions or identical motions were

16   filed both in 07-5528 and also in the so-called umbrella

17   insurance cases, which are part of the *Katrina Canal Breaches*

18   litigation.  That case, the umbrella case is 05-4182, and then

19   the, I guess it's the insurance umbrella cases are the *Chehardy*

20   cases, 06-1672, 73 and 74, and at the request of Judge Duval, he

21   had asked me to handle this for him, too, since we would be

22   hearing and deciding exactly the same motions.

23             Okay.  Who is going to speak today?  Mr. Rolfs?

24         MR. ROLFS:  Yes, sir.

25         THE COURT:  Who else is planning on speaking or would

 1 | like to speak?  Mr. Rolfs represents Citizens?

 2 |         MR. ROLFS:  Yes, sir.

 3 |         MR. STEPHEN HERMAN:  Stephen Herman, Your Honor, for the

 4 | *Oubre* class.

 5 |         THE COURT:  Anyone else?  All right.  Mr. Rolfs.  I

 6 | believe I've read everything that you all have filed.  My

 7 | understanding is the parties have agreed that there are no

 8 | factual issues in dispute that need to be decided in conjunction

 9 | with this hearing; is that correct?

10 |         MR. ROLFS:  Yes, Your Honor.

11 |         THE COURT:  Does the other side agree with that?

12 |         MR. STEPHEN HERMAN:  Yes, Your Honor except as reflected

13 | in the exhibits that have already been submitted.

14 |         THE COURT:  What I mean is we don't need to take any

15 | testimony.

16 |         MR. STEPHEN HERMAN:  Correct, Your Honor.

17 |         THE COURT:  Can we just agree that the exhibits that

18 | were previously submitted and attached to the various memoranda

19 | have been filed, are considered as part of the evidence on this

20 | hearing also?

21 |         MR. ROLFS:  Yes, Your Honor.

22 |         MR. STEPHEN HERMAN:  We would appreciate that,

23 | Your Honor.

24 |         THE COURT:  Very well.  Okay, Mr. Rolfs.

25 |         MR. ROLFS:  Thank you, Your Honor, play may it please

1   the Court, my name is Emile C. Rolfs.  I'm here on behalf of

2   Louisiana Citizens Property Corporation.  Your Honor, my client's

3   position is that this is a very simple case.  What the client

4   needs is protection -- needs and wants is only protection from a

5   state court order that cannot be enforced against it in federal

6   court.  This Court has subject matter jurisdiction, Your Honor

7   please, over the actions before it and the claims asserted

8   therein as a consequence of the pending *In re:  Katrina* and

9   *Road Home* cases.

10          This Court has managed this complex litigation for

11   more than three years now by consolidating all of the hurricane-

12   damage related cases -- by -- in one division, by issuing

13   numerous case management orders, and meeting on a regular basis

14   with liaison counsel for the parties.  It has heard numerous

15   motions, conducted -- overseen and conducted abundant discovery.

16   Where necessary it has conducted trials of consolidated claims.

17   It has encouraged and overseen compromised settlement

18   negotiations.

19          If Your Honor, please, there is in place a global

20   settlement agreement between plaintiffs liaison counsel and a

21   number of the insurance company defendants.  These settlement

22   negotiations --

23          THE COURT:  Not including Citizens; right?

24          MR. ROLFS:  Not including Citizens.  And it's my

25   understanding, and I believe liaison counsel can verify to the

1   Court, that settlement notions, with a view towards achieving a

2   global settlement of all property damage claims as a consequence

3   of these hurricanes in this district court, have been underway

4   for about 18 months.

5           Up until approximately March, those negotiations

6   were confidential, and it wasn't until early March, that I, as

7   counsel for Louisiana Citizens, was apprised by liaison counsel

8   for the plaintiffs that they had a handshake or they had

9   exchanged and agreed-upon settlement documents with a number of

10  the insurance company defendants and that Louisiana Citizens was

11  a candidate in view of the fact that it is a defendant here, it

12  is subject to the claims -- for the various claims that have been

13  asserted in these class actions on behalf of all of the

14  policyholders against the insurance carriers, and we should

15  become involved.  Of course, we jumped at the opportunity.  The

16  company has been a defendant here in this litigation since

17  June 2, 2006.  Next Tuesday, that will be three years.

18          The -- Louisiana Citizens is prevented from

19  conducting global settlement negotiations for all of the penalty

20  claims by virtue of the injunction that has been issued in the

21  underlying Jefferson Parish lawsuit.  The net effect of which is

22  to say Louisiana Citizens, its agents, servants and employees,

23  may not undertake to compromise, settle or otherwise dismiss any

24  of the claims asserted in the Jefferson Parish case, which is one

25  penalty claim, in any other court but the 24th JDC.

1            Out of respect for that court's order, and in fear

2   of massive sanction claims, we refrained from discussing with

3   liaison counsel any possibility of compromising those penalty

4   claims.  We want to do it because of the concern that we had, we

5   came to this Court asking this Court for protection against and

6   restraint against imposition of penalties pursuant to that order.

7   We desire to participate.  We cannot, and we are asking this

8   Court for relief.

9            Previously, at the TRO hearing, the Court expressed

10  concern about whether or not it had subject matter jurisdiction.

11  My recollection was that it was concerned first about the penalty

12  claims asserted in the *Road Home* litigation.  The Court having

13  observed that Judge Duval, prior to deconsolidation of *Road Home*,

14  had granted an insurance carrier Motion to Dismiss the penalty

15  claims asserted by the state.  And I replied, well, Judge, we

16  weren't party to that lawsuit and you laughed and said, well,

17  that's a technical defense, and what I did not successfully bring

18  to the Court's attention was the fact that the dismissal was as

19  to the claims asserted by the state on its own behalf only.

20          The state also alleged a putative class on behalf

21  of all present and future policyholders, applicants for *Road Home*

22  benefits, *Road Home* grants.  The -- while it is true that -- and

23  taking the Court's view, that the claims for penalties asserted

24  by the state on its own are dismissed, they are not dismissed as

25  to the claims the state has asserted in the names of the

1   policyholders.  Those claims were dismissed upon, as the Court

2   knows, the basis that the limited subrogation agreement did not

3   include and could not include penalty claims.

4           The Court had another concern -- what was the other

5   thing.  I'm having a senior moment.  My recollection was that the

6   Court had another concern about the jurisdiction.  I think I

7   answered that.

8           The Court was also concerned about whether or not

9   it was appropriate to restrain the existing state court order,

10  and we, of course, assert that it very definitely is the -- an

11  action that the Court is justified in taking in aid of its

12  jurisdiction.  This Court has managed, as I have mentioned, this

13  complex litigation, this is complex litigation, it's managed it

14  for more than three years now.  It has overseen and encouraged

15  settlement agreements where appropriate.  There is one in place

16  now.

17          The insurance company, Louisiana Citizens, is

18  desirous of participating in that, those negotiations.  I cannot

19  do so by virtue of the existence of this order.  The United

20  States Supreme Court, years ago, has made it abundantly clear,

21  Your Honor please, that a state court may not enjoin a litigant

22  in federal court from pursuing causes of action and achieving

23  results that it desires to achieve in the federal court.

24          It is interesting to observe, may it please the

25  Court, that the *Oubre* class counsel do not contest this issue.

1  They are not in here telling you that what Rolfs says about the

2  state court being unable to sanction him and his client for

3  negotiating and settling in federal court is not true.  They've

4  not disputed that.

5       THE COURT:  Any reason you can't make that argument to

6  Judge Sullivan?  That they tried to?

7       MR. ROLFS:  Judge, I could, but I don't want to run the

8  risk of that.  They have -- what we did, in keeping with the

9  Judge's -- with the Court's suggestion last week was, we proposed

10  a modification to Judge Sullivan's order, a very simple

11  modification that limited the order to efforts to compromise in

12  any other state court.  And opposing counsel were unable to agree

13  to that.

14       The exchanges of e-mails are attached to our

15  submissions and they believe that all the negotiations ought to

16  take place in the state court.  The state court in Jefferson

17  Parish has before it one penalty claim, failure to timely

18  initiate loss adjustment.  There are other penalty claims

19  asserted against Louisiana Citizens in this federal court

20  litigation.  There are claims asserted against Louisiana Citizens

21  in this federal court litigation, improperly treating the policy

22  holders, in not agreeing to coverage, and the usual litany of the

23  insurance claims that the Court has seen asserted in these cases

24  since they began.

25       THE COURT:  I think you agreed when we talked by phone

 1   last time that there is nothing, as I recall -- I have

 2   Judge Sullivan's order right here -- there is nothing in that

 3   order that purports to prevent you from settling or attempting to

 4   settle any other claim other than the, I guess I call it a narrow

 5   class of, narrow type of claim that was involved in the -- is

 6   involved in the *Oubre* case, that is, the failure to initiate

 7   adjustment of the claims within 30 days.  That's the only claim

 8   that was certified and handled in part of the *Oubre* case; right?

 9              MR. ROLFS:  That is correct, sir.  You're correct.

10              THE COURT:  So this case, here in this court, there are

11   much broader claims, of course, as you've indicated.

12              MR. ROLFS:  Yes.

13              THE COURT:  As I appreciate it there are claims for just

14   failure to pay under -- contract claims plus a wide, a vast array

15   of penalty claims; right?

16              MR. ROLFS:  Yes, sir.

17              THE COURT:  So there is nothing in Judge Sullivan's

18   order that prevents Citizens from, if it wishes to, settling or

19   attempting to settle all these other claims?

20              MR. ROLFS:  That is correct, Your Honor, but what that

21   puts Louisiana Citizens in the position of doing is piecemeal

22   litigation, and that just increases by leaps and bounds the legal

23   expense and costs attendant upon doing that.

24              THE COURT:  Well, maybe, maybe not.  If you wanted to,

25   there also nothing that prevents Citizens, is there, from, at

1    some point, going back to the plaintiffs in the *Oubre* case and

2    trying to wrap it all up together.  The only thing that would be

3    required, as I see it, was you would have to get approval from

4    that court to settle the global claims, and as part of the global

5    settlement, you would have to get Judge Sullivan to sign off on

6    the settlement of the *Oubre* claims.  That's not unheard of

7    either.

8         MR. ROLFS:  Your Honor, you are quite correct and that's

9    what I'm attempting to do here.  I have, and I want to, I want

10   the Court to appoint your magistrate judge to conduct and oversee

11   settlement negotiations with counsel for *Oubre* here and counsel

12   for *Orrill* in the Orleans Parish matter here, and I want to wipe

13   out all of it at one time.

14         Now, it may be, because of differing views about

15   the work of the case and that sort of thing that the -- that end

16   will not be able to be achieved, but Your Honor please, this --

17   at least all of the claims are here in this court, and it makes

18   sense to attempt a global resolution of all of those claims in

19   this forum.  And that's what -- I'm not trying to exclude these

20   folks.  I have told them repeatedly that I want them at the

21   table.  We've got to come to terms with them, and we want to do

22   so, but this is the Court that's got all of the issues before it.

23         This is the Court that has managed the Katrina/Rita

24   litigation for more than three years now.  It makes sense to do

25   it all in one place.  And that's basically our position,

1    Your Honor please.  It saves legal fees, which have been

2    horrendous.  It saves out-of-pocket expense, which has been

3    horrendous.  This is the one forum that affords the opportunity

4    to achieve a global wrap-up, and we respectfully suggest,

5    Your Honor please, that this order is simply unenforceable.

6              THE COURT:  Okay.  Thank you, Mr. Rolfs.

7              MR. ROLFS:  Thank you, sir.

8              THE COURT:  Mr. Herman.

9              MR. STEPHEN HERMAN:  Good afternoon, Your Honor.  I

10   think that the Fifth Circuit has not directly ruled --

11             THE COURT:  What was the problem with, objection to or

12   agreeing to Mr. Rolfs' suggested approach to Judge Sullivan to

13   modify his order?

14             MR. STEPHEN HERMAN:  What was our objection to it?

15             THE COURT:  Yes.  He said there was an objection to it

16   or you didn't agree to it or something.

17             MR. STEPHEN HERMAN:  Well, what we did was, and I think

18   this is quoted verbatim in our brief, we responded to him with an

19   e-mail in which we said that we really don't understand what they

20   are trying to do because the way we see it, there is absolutely

21   nothing, at this point, jurisdictionally, that would prevent them

22   from entering into a global settlement with whomever they are

23   going to enter into a global settlement with, which would include

24   us, if it's going to include the *Oubre* claims, we presume, and

25   having that approved by Judge Sullivan.  It may have to be

1    approved in federal court as well.

2             I would frankly think it's appropriate to address

3    the jurisdictional issues first.  I don't want to say anything to

4    prejudice the other claims that are in federal court because

5    that's really not my concern.

6             THE COURT:  Let me ask you this:  How do you interpret

7    Judge Sullivan's order or injunction, restraining order, whatever

8    you want to call it, says, among other things, that Louisiana

9    Citizens Property Insurance Company is ordered, judged and

10   decreed that a preliminary injunction is issued, directed to the

11   defendant, Louisiana Citizens Property Insurance Company,

12   restraining, enjoining -- let me get the whole thing --

13   prohibiting defendant Louisiana Citizens, its agents, employees

14   and assigns from acting directly or indirectly from taking any

15   action whatsoever to dismiss, compromise or settle any claim or

16   claims of any member or members of the *Oubre* class as defined by

17   this Court, and he defines it, and specifically as to any

18   individual or individuals who were mailed the *Oubre* class notice

19   and did not opt out before a certain date for their claims or

20   claims for any penalties under -- and then he sites the

21   statute -- in any court on any matter other than that case --

22   that's the 24th JDC case -- this Court finding said claims can be

23   dismissed, compromised or settled only with approval of this

24   Court.

25             My question is:  I want to know how you interpret

1   that, how the *Oubre* attorneys -- do you interpret that as meaning

2   they can't even talk to anybody about settling all of this or

3   before they could consummate any settlement they'd have to go

4   back to Judge Sullivan and get his approval to compromise claims

5   that are subject to this order?

6          MR. STEPHEN HERMAN:  I think the latter is definitely

7   true.  I think that, I don't want to speak for Judge Sullivan,

8   but the problem with reading it in the more limited way or,

9   excuse me, the broader way, where they are trying to negotiate

10  settlement is that they could go and negotiate settlement with

11  some other group of attorneys, which they have a history of

12  doing, and then come to Your Honor and say, "Now we do have a

13  pending settlement," and so under the Anti-Injunction Act, we now

14  want to get what they might argue is an appropriate injunction of

15  the state court proceedings.

16          Our response to that, I guess, is really two

17  responses.  I don't know how to interpret the order.  I think

18  they absolutely have to get approval from Judge Sullivan for the

19  settlement or else the claims will not be released as a matter of

20  *res judicata*.

21          THE COURT:  That's the way I interpret it too, frankly.

22          MR. STEPHEN HERMAN:  Beyond that, I don't know what

23  jurisdiction Judge Sullivan has to stop them from talking to

24  people.

25          THE COURT:  I agree with Mr. Rolfs' suggestion that I

1   don't think Judge Sullivan can prohibit him or his client from

2   talking to someone about settlement in this court.  I think the

3   issue becomes, where the rubber would meet the road, is if they

4   wanted to confirm a settlement or get a settlement approved.

5                My view is any kind of global settlement in the

6   context of this case, based on what's happened so far, is it

7   would require an approval of this Court and Judge Sullivan.

8   That's the way I view this, but I don't read his order as

9   prohibiting anybody from talking to anybody.  I doubt that he has

10  authority to do that.

11          MR. STEPHEN HERMAN:  And Your Honor, that is one reason

12  why we filed a separate motion to --

13          THE COURT:  Excuse me.  I'm wondering why you all can't

14  agree on some clarification of that order if you don't dispute

15  what I just said.

16          MR. FRED HERMAN:  Your Honor --

17          THE COURT:  Wait, let this Mr. Herman first talk.

18          MR FRED HERMAN:  Sure.

19          MR. STEPHEN HERMAN:  We addressed that in Exhibit 1,

20  which is the e-mail that I sent to him and we made that exact

21  same suggestion, that we have global negotiations and in the

22  event that a global settlement is reached, there is almost

23  certainly a way that it can be approved and administered in a

24  jurisdiction or jurisdictions, pleural, such that all interests

25  can be adequately protected and accommodated.

1            To the extent that Citizens believes it is

2    necessary or desirable for binding res judicata effect, the

3    settlement could likely be approved by both Judge Sullivan and

4    the U.S. District Court.  If you believe that Judge Sullivan's

5    current preliminary injunction order precludes global

6    negotiations from taking place within the jurisdiction of the

7    24th Judicial District court, please advise of your concerns and

8    provide any suggested modifications you deem appropriate.

9            Their response was, "It is apparent we have

10   diametrically opposed views on the issue of subject matter

11   jurisdiction and the form most appropriate within which to pursue

12   global resolution of all claims."

13           So they said we won't agree with that and we won't

14   give you our suggestions and we won't tell you what we think the

15   problem is with the current preliminary injunction order.

16           THE COURT:  Mr. Herman, be seated for a while.

17           MR. FRED HERMAN:  I was going to ask the other

18   Mr. Herman --

19           THE COURT:  This Mr. Herman is doing fine.

20           MR. STEPHEN HERMAN:  Thanks, Judge.

21           MR. FRED HERMAN:  He really is.

22           MR. STEPHEN HERMAN:  I think initially, though, there is

23   an issue of subject matter jurisdiction.  I don't want to

24   prejudice anyone else that's in federal court that may have the

25   right to be in federal court but with respect to -- certainly

1   this motion and certainly with respect to the *Oubre* class, it's

2   their burden, under CAFA, to prove at least minimal diversity,

3   and they haven't identified, to my knowledge, they certainly

4   don't have evidence of, not an affidavit, not a declaration, not

5   a piece of evidence that establishes minimal diversity.  They

6   haven't identified a single *Oubre* class member who they contend

7   to be a citizen of some state other than the State of Louisiana.

8   So there is just no diversity.  There is not even minimal

9   diversity under CAFA.

10          There is no -- there are no conspiracy allegations

11   or joint and several allegations that I know of, or other basis

12   for claims against Citizens to be combined with claims against

13   Allstate or State Farm or some of the other diverse insurance

14   companies.

15          There was a legal theory, and Judge Duval said that

16   that legal theory no longer exists after the Fifth Circuit rule.

17   I think it was just an administrative thing to try to get

18   everything together in one complaint, which is fine but that

19   doesn't create jurisdiction.

20          So I don't think that there is even original

21   jurisdiction, but let's say that I'm wrong, let's say there was

22   original jurisdiction.  There is no argument from Citizens as to

23   why, at least the *Oubre* claims shouldn't be severed and remanded

24   under either 1367(c) or 1332(d)(4)(B), and that, with all due

25   respect, is not even really discretionary.  If more than

1   two-thirds of the class members are from the State of Louisiana

2   and the defendants are citizens of the State of Louisiana, it's

3   supposed to be remanded.

4            So at least the *Oubre* class claims, if not other

5   claims against Citizens, I could possibly make an argument that

6   all the claims against Citizens should be remanded, but I'll

7   leave that to liaison counsel to argue.

8            Let's assume that there is subject matter

9   jurisdiction which we object, then to get the writ that they want

10  or the relief that they want, they have to address several tiers

11  under the All Writs Act.

12           First, it has to be an aid of the jurisdiction of

13  the Court.  Let's assume there is subject matter jurisdiction.

14  It's still not clear that there is jurisdiction over these

15  specific claims.  As Your Honor noted last time, the State's

16  claims for these penalties, if, in fact, they ever were asserted,

17  which in my mind is very unclear, have been dismissed.  What

18  Citizens now put forward in their supplemental brief is an

19  amended petition in the *Chehardy* case from June 2nd, Exhibit C,

20  which they say creates jurisdiction in *Chehardy* in the insurance

21  tract cases.

22           Well, I sent, that afternoon, a communication to

23  Citizens asking them to identify, in paragraph 4 of this exhibit,

24  which is the amended and restated complaint, which of these

25  plaintiffs is a Citizens policyholder, if any?  To my knowledge,

1    I've never received a response, but even more importantly, which

2    count, if any, do the plaintiffs contend Citizens is liable for

3    the failure to timely initiate loss adjustment under former

4    Louisiana Revised Statute 22:658(A)(3).  And if you look at the

5    count, I guess it's count -- I never got a response to that, but

6    if you look at count four, they clearly aren't talking about the

7    same cause of action that's at issue in *Oubre*.  They are talking

8    about bad faith penalties under 1220 and under amended version

9    658.2 that are basically wind versus water issues.

10           They are saying that because you denied coverage

11   under, or delayed coverage under these homeowners policies on the

12   basis that it was excluded by a flood, therefore you're liable

13   for bad faith under 1220.  That has absolutely nothing to do with

14   the failure to timely initiate loss adjustment.  So it's not even

15   clear that anywhere within the federal court jurisdiction anybody

16   has asserted in pleadings the same cause of action that is at

17   issue in *Oubre.*

18           There is reference to a master complaint which

19   cited Judge Fallon's *Propulsid* decision in which he indicates

20   that a master complaint is purely for administrative purposes.

21   Then let's say that they get past that barrier.  They got an aid

22   of jurisdiction.  They have to show that this -- what they want

23   is not precluded under the Anti-Injunction Act.  We contend that

24   the Anti-Injunction Act prohibits any attempt to enjoin or stay

25   any part of the proceedings, but moreover, it's clear that what

1  they want to do is enjoin the state court proceedings.  I mean,
2  that's their goal.
3             I think they admitted it during the hearing on the
4  TRO.  They say, on Page 3 of their supplemental memo, "Louisiana
5  Citizens is not, at this time, asking this Court to enjoin all
6  proceedings."  But it's clear that they will.  That's their end
7  game.  That's their strategy.  And so this is just one step along
8  that continuum, and we believe it's barred by the Anti-Injunction
9  Act.
10            Let's say it's not barred by the Anti-Injunction
11 Act, then you still, under the All Writs Act, have to do
12 something that's necessary or appropriate.  It's not necessary.
13 You don't need to have a global settlement.  A party is not
14 entitled to a global settlement.  I could probably make a decent
15 argument that a global settlement would be inappropriate.  We've
16 cited a couple of cases on that.  I don't think we need to get
17 that far and I don't want to prejudice anybody else's rights or
18 even our rights if we end up getting there but there is a
19 question about that.
20            In addition, as I think we just went through, there
21 is no need because we could sit down with them, everybody in this
22 room could sit down at a table and negotiate a global settlement
23 right now, I think, as long as it were approved or at least the
24 *Oubre* part of it were approved by Judge Sullivan.
25            Then, in addition to not being necessary, it's not

1   even appropriate.  It's as the Court indicated last time, it's

2   completely backwards.  It's the opposite of the way that the

3   All Writs Act and the Anti-Injunction Act exception usually work.

4   They usually work to prevent litigants where something is done in

5   federal court from making an end run around the federal court to

6   the state court.

7            Here you have litigation that's going on in state

8   court.  Incidentally, my co-counsel points out that the *Oubre*

9   class was filed in state court on November 18th, 2005, which was

10  even before the case was filed in federal court, but they're

11  making an end run around state court proceedings in federal

12  court.  When we have a finally certified class, we have a final

13  judgment that's now on appeal, the *Orrill* counsel have a final

14  judgment that's now on appeal in the Louisiana Fourth Circuit,

15  and now Citizens is trying to make an end run around those

16  judgments to the federal court.

17           Part of the answer to Your Honor's question from

18  before about what Judge Sullivan might have intended with his

19  order is, I believe Judge Sullivan interpreted the Louisiana Code

20  of Civil Procedure 594(A) to require, once he certifies a class,

21  that that certification be approved within that court and that

22  issue is being litigated in the state courts.

23           Their remedy, if they thought Judge Sullivan was

24  wrong on that point, was to go to Louisiana Fifth Circuit on a

25  point of Louisiana law, which they did.  Writs were denied.  Then

1    they went to the Louisiana Supreme Court.  Writs were denied.

2    Writs were also denied in their corresponding writ applications

3    on *lis pendens* and so the state courts have said uniformly to

4    this point that Judge Sullivan is correct in his interpretation

5    of state law.

6            It's not appropriate for them to effectively appeal

7    an injunction that they don't like by coming to the United States

8    District Court, particularly where subject matter jurisdiction is

9    questionable at best, and it's questionable whether the case is

10   even within -- the claims are within the jurisdiction of the

11   court.

12           Finally, just looking at their own brief, their

13   supplemental brief, they talk about three issues that you look at

14   under the Anti-Injunction Act.  At page 8 of their brief, the

15   first is the nature of the federal action.  The nature of the

16   federal action in this case is state law claims between, if not

17   exclusively litigants in the State of Louisiana, then almost

18   exclusively litigants within the State of Louisiana.  With no

19   federal claims, there is no class certification order.

20           A lot of the attempts to certify classes in federal

21   court in Katrina cases, and I know this because I've been on the

22   unfortunate side of some of these decisions, have been denied.

23   And so it might not even be appropriate, but that's a question

24   for another day.  So that's the nature of the federal claims.

25           Then second, they talk about an impending

1  settlement and opposing counsel speaks of -- as if there is this

2  master settlement agreement between the plaintiffs and all of the

3  defendants except for Citizens and they are left out and

4  Mr. Fayard or Mr. Bruno can speak to that but that's not my

5  perception.  I don't want to violate anything that's

6  confidential, but that's not my perception.  Other people will be

7  better to speak on that.

8          THE COURT:  My recollection is they have some sort of

9  agreement or preliminary agreements with one company perhaps.  It

10 was Travelers I think it is.

11         MR. STEPHEN HERMAN:  My understanding is that that's not

12 even final but I'm not the best person to speak on that.

13             Then, every case they have here is either a

14 national class or at least a multistate class, or it's a federal

15 antitrust case.  So you don't want national or multistate or

16 federal claims to be undermined with an end run to what are

17 effectively supplemental state court claims.  We don't have that

18 here.  We have a completely -- a matter of state law between

19 parties of the same state.

20             One thing that I think is interesting in their

21 brief on page 10, they say where the district court has before it

22 a class action that is so complicated and so far advanced that

23 the litigation is the virtual equivalent of a race over which the

24 district judge has full control.

25             If that's true, then the race, at least with

1  respect to the *Oubre* claims, is in the 24th Judicial District

2  Court.  That's the Court where the class has been certified.

3  That's the Court where it's been litigated.  That's the Court

4  where there is a judgment that's on appeal, and then there is

5  another one in *Orrill* that's on appeal within the Fourth Circuit.

6           Here, to my knowledge, you have very vague class

7  claims.  To my knowledge there has never been a motion for

8  certification.  They clearly haven't been certified.  So if there

9  is a race or analogist -- analogy to a race, the race is in state

10 court, not federal court.

11          I would be happy to answer any of the court's

12 questions and otherwise.

13          THE COURT:  No, I want to let Mr. Rolfs respond.

14          MR. STEPHEN HERMAN:  Could I make one last point?  I

15 think, Your Honor asked me a question, and I tried to answer as

16 best I could, but one of the parts of the answer to that question

17 is the reason why we filed a separate motion to be appointed by

18 this Court to represent the *Oubre* class in any global

19 negotiations is that in the event that Judge Sullivan's

20 preliminary injunction order could be construed to allow

21 negotiations to go on, even if they had to be approved in the

22 24th Judicial District Court, which seems to be the way

23 Your Honor is interpreting that order, we think that we should be

24 part of those negotiations.  From everything I've heard, neither

25 Citizens objects to that nor -- and I don't think liaison counsel

1  for the insurance tract objects to that or the State of Louisiana

2  objects to that so we would ask that that order be entered.

3  Thank you.

4           MR. FRED HERMAN:  May I Your Honor?

5           THE COURT:  Now the other Mr. Herman.

6           MR. FRED HERMAN:  Very briefly Your Honor, I appreciate

7  the Court's indulgence.  You ask the question:  Why didn't

8  Citizens go to Judge Sullivan?  I think it's important that this

9  record reflect that, in fact, not only did they go to

10 Judge Sullivan, they didn't seek modification of the preliminary

11 injunction.

12            What they did was that they asked Judge Sullivan,

13 along with another district court judge in the state to delay

14 their rulings so that parties could, both in *Orrill* and *Oubre,*

15 have an opportunity to entertain a global resolution.  *Orrill* was

16 sitting already with what they believe to be an approved

17 settlement.  Oubre was moving forward on motions for summary

18 judgment.  Other counsel for Louisiana Citizens approached the

19 Court and said we would like to go to mediation.  We did that.

20 The problem is this, and Mr. Rolfs addressed it very offhandedly

21 in the teleconference, not only was there a negotiation, it

22 resulted in what we believed at the time, as did Citizens'

23 counsel, as did Citizens' chairman of the board or CEO, as did

24 Citizens' in-house attorneys, result in a compromise agreement.

25 The problem is that the Citizens board, contrary to what

1   Mr. Rolfs spoke to Your Honor, never voted on the proposals.

2           So what has happened, Your Honor, Citizens has a

3   way of coming to the table without any authority whatsoever,

4   making a deal, and then not being able to deliver on the deal.

5   So you ask, why would we object to modifications of

6   Judge Sullivan's order?  The modifications serve us nil, because

7   to move forward with Citizens, and I posed this question in an

8   e-mail to Mr. Rolfs, what has changed since the failed mediation

9   agreement that allows us to have a sense that Citizens can

10  deliver what it says it can deliver in a global resolution?  We

11  have yet to get an answer.  Because the answer is Citizens, as

12  Mr. Rolfs sits here today, has not approved $1 more of authority

13  to deal with *Oubre* or any other penalty claim.  If they have,

14  correct me, sir.

15          Thank you, Your Honor.

16          THE COURT:  All right.  Thank you.  Mr. Rolfs.

17          MR. ROLFS:  Your Honor please, this is the Court that

18  has all the claims before it.  The 24th JDC does not have

19  jurisdiction over all these other claims.  This Court does.

20          The suggestion that the order does not endanger

21  Citizens, the underlying order does not endanger Citizens or pose

22  a risk to it, Your Honor please, it says, "Hereby order, adjudge

23  and decree," blah, blah, blah, "Louisiana Citizens, its agents,

24  employees and assigns, prohibiting Louisiana Citizens, its

25  agents, employees and assigns, from acting directly or indirectly

1    from taking any action whatsoever to dismiss, compromise or
2    settle any claims of any member of the members of the *Oubre*" --
3    taking any action whatsoever.  Judge, that's compromised
4    settlement negotiations.
5            Now, what Citizens got for its good efforts from
6    *Oubre* counsel and the --
7            THE COURT:  Did you ever go back to Judge Sullivan and
8    say, "Judge Sullivan, would we violate your order if we talked
9    about a global settlement with the condition that we come back to
10   you before anything is approved?"
11           MR. ROLFS:  Did not, Your Honor.  As I indicated
12   previously, because of concerns about contempt, because of time
13   constraints.
14           THE COURT:  Contempt by asking Judge Sullivan that?
15           MR. ROLFS:  I beg your pardon?
16           THE COURT:  You would be in contempt if you approached
17   Judge Sullivan and asked him that question?
18           MR. ROLFS:  I don't think so, Judge, but you've heard my
19   distinguished opponents.  How far do you think I would get in
20   that discussion with him?  Zero.  I'm not going to waste my time.
21           The fact is they undertook compromise negotiations
22   in Orleans Parish for their pains and they got a $58 million
23   sanction motion against them filed by the *Oubre* class counsel in
24   Jefferson Parish.  This is a real threat.  This is not some pie
25   in the sky, Chicken Little, the-sky-is-falling issue that I'm

1   raising to the Court here.

2        But in keeping with Your Honor's suggestion, I

3   proposed a modification, a minor modification of the order of

4   Judge Sullivan, and it is attached, may it please the Court, to

5   my supplemental memorandum.

6        There are three changes, and the -- and the -- and

7   it's attached there, Your Honor.  To include the word "state"

8   before "court" when it's saying cannot compromise in any other

9   court.  Or any matter in state court.  In state court.

10       I sent them an e-mail and said, "In keeping with

11  the judge's suggestion, I propose that we ask Judge Sullivan to

12  modify his order in this minor way.  I feel like this would be --

13  give Louisiana Citizens the protection it needs and we would then

14  be in the position to withdraw our motion for temporary

15  injunction -- preliminary injunction."  And I get back a lot of

16  discourse about how it ought to be in Jefferson Parish,

17  et cetera, et cetera.

18       Clearly, *Oubre* class is not ever going to agree to

19  do anything but that.  What I'm proposing, Your Honor please, is

20  very simple.  I understand that they are mad at Louisiana

21  Citizens.  They thought they had a settlement agreement.  So did

22  Louisiana Citizens and other counsel in that case.  Louisiana

23  Citizens' board did not vote on it because they didn't like it.

24       Now, if they thought -- oh, I'm raising, my voice

25  Your Honor please.  I'm getting excited.  If they thought it was

1    a good settlement deal, the board of directors would say yes, we

2    endorse that, we're going to vote on it.

3            THE COURT:  Was that proposed settlement to settle what

4    you'd like to settle in this Court?

5            MR. ROLFS:  No, sir.

6            THE COURT:  Just the *Oubre* and *Orrill*?

7            MR. ROLFS:  Just the *Oubre* only please.  Just the claims

8    in *Oubre* only.

9            THE COURT:  That would not be a global settlement?

10           MR. ROLFS:  No, sir.  No, sir.  And it's ridiculous to

11   spend a lot of money in different courts trying to settle

12   different claims.  It's just -- from an insurance standpoint,

13   from a corporate risk management standpoint, it makes no sense,

14   and so they think they've got the company's feet to the fire in

15   Jefferson Parish on that one case, and they are unwilling to

16   consider compromise anywhere else.  That's fine.  They are

17   lawyers.  They are doing their job.

18           What I'm trying to do is tell this Court, Jefferson

19   Parish has jurisdiction over one, one penalty claim.  Your Honor

20   has jurisdiction over all the claims.  It is logical and

21   reasonable that a magistrate judge acting under appointment by

22   this Court to conduct a settlement conference is the way to go.

23   Inviting everybody.  Yes, it's got to be approved by this

24   honorable court.  Yes, it's got to be approved by the honorable

25   24th JDC, but this, to me, is the only way without rancor and

1 rhetoric.

2       THE COURT:  How would this satisfy you, without granting

3 an injunction, if I picked up the phone and called Judge Sullivan

4 and asked him if he had any problem if I refer the whole bunch of

5 you to one of our magistrate judges to conduct a global

6 settlement negotiation with the understanding that if the parties

7 reach a global settlement, it would be submitted to this Court

8 and to him?

9       MR. ROLFS:  Judge, I would be thrilled if you'd do that.

10 That would answer -- that would answer the legal prayer that

11 we've --

12       THE COURT:  I would doubt seriously that Judge Sullivan

13 would have any problem with that.  I don't know why he would

14 have.  I don't know why you'd have any problem with it.

15       MR. FRED HERMAN:  I would have one problem with it, Your

16 Honor, because the fund of money in the appeal in the *Orrill*

17 matter, it would not be resolved by that global settlement unless

18 what Mr. Rolfs proposes is that you make that invitation to

19 Judge Reese as well.

20       MR. ROLFS:  I do.

21       MR. FRED HERMAN:  And I would amend that --

22       THE COURT:  I could do that, too.

23       MR. FRED HERMAN:  I know Your Honor can and would and I

24 would have no objection to that but I would not, and I say for

25 the record, would not be interested in any further discussion

1    with anyone unless, one, all people are at the table, and, two,

2    Citizens comes with authority to do something because they come

3    without authority.  They come on a hope and a prayer.  And I'm

4    not spending any more time on hopes and prayers.  I can't

5    deliver --

6            THE COURT:  Okay, okay, I heard you.  I heard you.

7            MR. ROLFS:  Your Honor, if you would do that, that would

8    solve the problem.  Yes, sir.  In my humble opinion.

9            THE COURT:  All right.  Thank you.

10           MR. ROLFS:  Thank you, sir.

11           THE COURT:  All right.  Here is what I'm going to do:

12   I'm going to deny the motion for preliminary injunction.  I'll

13   issue some written reasons later, but essentially, I don't think

14   that it would be proper for this Court to basically enjoin

15   Judge Sullivan's injunction for essentially the same reasons I

16   said in denying the TRO that the federal Anti-Injunction Act,

17   which generally precludes a federal court from enjoining even

18   so-called "parallel litigation" pending in state court, would

19   preclude this Court from issuing such an injunction.

20           There are a couple of very narrow exceptions to the

21   Anti-Injunction Act, one of which being to protect a judgment or

22   order of this Court and I think counsel for Citizens has

23   acknowledged that there is no such order or judgment from this

24   Court that has to be protected here.  That's Number 1.

25           Secondly, the other so-called "exception" to the

1   Anti-Injunction Act, an aid of issuing an injunction against a

2   state court in aid of this Court's jurisdiction is by case law,

3   which I'll cite when I give my written reasons, very narrowly

4   construed by the courts and in particular by the Fifth Circuit.

5           All of the cases cited and relied upon by Citizens,

6   I think, are inapposite and can be distinguished from this

7   situation, from this case.  Although some of those cases include

8   language which sounds like a federal court can just enjoin these,

9   basically the language is broad enough that if you applied it on

10  its face, a federal court would have authority to enjoin

11  basically just about any parallel state court litigation in aid

12  of its own jurisdiction and we know that's not the case.

13          When you look at the cases that are relied upon by

14  this aid of jurisdiction, they can be distinguished either

15  because they, in fact, did not rely on the aid of jurisdiction

16  exception but rather relied on the protection of a judgment or

17  order exception.  In most cases, what happened was, for example,

18  the *Corrugated Container* case, which was an Alabama MDL where

19  there had been preliminary settlements approved and final

20  judgments were imminent in the federal MDL and then some of the

21  plaintiffs tried to run TO the state court in Alabama to do an

22  end run around the federal MDL and the Fifth Circuit affirmed a

23  federal court injunction against that maneuver.

24          That's not what we have here.  It really is sort of

25  backwards here from the usual situation.  This is where there has

1  been a judgment in state court, a final judgment.  As I
2  appreciate it, it's the final judgment from state court, although
3  it's subject to appeal but it nonetheless is a final trial court
4  judgment, and the defendant in that state court action is now
5  coming into federal court seeking to enjoin that action.  So it
6  is very different from the cases relied upon by Citizens, but
7  I'll more fully explain that in my written reasons.
8       I don't know if it's necessary, but I guess that
9  sort of moots the *Oubre* class' motion to dismiss, stay or sever
10 the restraining order, it seems to me; right?
11      MR. STEPHEN HERMAN:  I think so, unless they are
12 planning to go forward with the trial for a permit injunction.
13      THE COURT:  I'm going to deny that at this time because
14 I think it's largely moot but if something occurs and you all
15 want to reurge that, you're not precluded from reurging it.
16      MR. STEPHEN HERMAN:  Thank you, Your Honor.
17      THE COURT:  With regard to the motion to appoint counsel
18 for plaintiffs with respect to the *Oubre* class claims, I don't
19 know, no one here seems to object to the idea that everyone, when
20 I say "everyone", the *Oubre* claimants, the *Orrill* claims, and the
21 people in this court should all be involved in any global
22 settlement negotiations that might occur.
23      MR. BANDARIES:  Your Honor, may I be heard?  I'm
24 plaintiffs counsel for the *Orrill* matter.
25      THE COURT:  If you want to get into that matter that you

1   filed with the Court, I'm not hearing that, okay?

2          MR. BANDARIES:  No, no, sir.  I'm just referring to what

3   you just said as to the effect that somehow the *Orrill* matter --

4          THE COURT:  What is your name, sir?

5          MR. BANDARIES:  I'm sorry, sir, Madro Bandaries.

6          THE COURT:  Come forward for just a second.

7          THE COURT REPORTER:  Spell your last name, please.

8          MR. BANDARIES:  B-A-N-D-A-R-I-E-S.  Madro Bandaries,

9   938 Lafayette Street, New Orleans, Louisiana.  I'm class counsel

10  for the *Orrill* matter.  I would suggest to the Court that it's

11  already -- you would be unringing the bell, and if I'm hearing

12  the Court correctly, that you're more or less bringing us into

13  the matter also, and --

14         THE COURT:  I'm not bringing you into anything.  This is

15  what I propose to do:  I'm going to call Judge Sullivan and

16  Judge -- is it Kern Reese?

17         MR. BANDARIES:  Judge Reese.

18         THE COURT:  Both of whom I know very well, and I will

19  tell them that I would like to see if we could get global

20  settlement discussions going within the umbrella or within our

21  court using the services of one of our magistrate judges, and see

22  if they have any objection to that and, naturally, inviting all

23  parties to participate.  Obviously it would be voluntary.  I

24  wouldn't be ordering it.  I would be inviting everybody, but I'm

25  not going to do it until I talk to them and make sure neither of

1   them have any problems with it.

2          MR. BANDARIES:  That's my point, Your Honor, was

3   clarification of what you were saying and how it would effect us.

4   We would suggest that the matter, a fairness hearing, as you said

5   earlier, it's a final judgment, it may be on appeal but

6   regardless, it's a final judgment and I stand before you only for

7   clarification, which I think you have given me and I thank you

8   for that.

9          THE COURT:  All right.  Thank you.  Mr. Bandaries.

10          So I guess the point I was getting to, there is a

11  third motion that's pending, plaintiffs' ex parte motion to

12  appoint counsel for plaintiffs with respect to the *Oubre* class

13  claims.  I don't know if there is any need for me to rule on that

14  at this time.  Again, I guess I'll just deny that without

15  prejudice.

16          MR. STEPHEN HERMAN:  Thank you, Your Honor.

17          THE COURT:  Does anybody need to say anything else?

18          MR. ROLFS:  Other than thank you, no.

19          THE COURT:  Okay.  Well, I don't know if it's wishful

20  thinking or not, but I would hope that if everybody is in good

21  faith -- let me just ask Mr. Rolfs if he can tell us, I know

22  something about Citizens, having spent four years of my former

23  life on the Louisiana Insurance Rating Commission, but I don't

24  know the structure of it in terms of governance and all.  If

25  there is an agreement and if everybody can get together in one

1   room with a magistrate judge, is it possible to have somebody

2   from Citizens with some authority, not obviously you, but

3   somebody representing your client down here with some authority

4   that can --

5           MR. ROLFS:  Yes, Your Honor there is.

6           THE COURT:  -- that can do more than just what happened

7   last time around?

8           MR. ROLFS:  Yes, sir.

9           THE COURT:  Well, again, if this occurs, I would ask

10  that you see that whoever that is, that person or persons be

11  present too, okay.

12          MR. ROLFS:  Thank you, Your Honor.

13          THE COURT:  Anything else from anyone?  Mr. Bruno or

14  Mr. Fayard, do you guys have anything to say?

15          MR. BRUNO:  No, sir.

16          MR. FRED HERMAN:  Your Honor, I'm sorry, I had one thing

17  before we leave.  I misunderstood, perhaps, Mr. Bandaries'

18  inquiry and I'm not clear on whether or not his group would

19  participate.  I understand that Judge Reese may have no problem,

20  but if this gentleman simply refuses to have his group

21  participate, it undermines exactly what Your Honor is trying to

22  accomplish.

23          THE COURT:  I thought he said he would participate.

24          MR. FRED HERMAN:  I don't think that's what he said at

25  all.

1          THE COURT:  Maybe I misunderstood him.

2          MR. BANDARIES:  No, I did not say that.  I understood

3     that the Court was going to call the judge and ask for

4     permission.  I gave no opinion whatsoever other than the fact

5     that I said there is a final judgment there, Your Honor.

6          THE COURT:  There is a final judgment in their case,

7     too?

8          MR. BANDARIES:  Yes, sir, there has been a fairness

9     hearing.

10          THE COURT:  That doesn't preclude you from talking

11     settlement.

12          MR. BANDARIES:  I realize that.  Again, we're not

13     ambushed here but we're sort of brought into your court kicking

14     and screaming.

15          THE COURT:  With the understanding that I don't see any

16     way I can order you to participate or I can order you to

17     participate, and I'm not going to order him to participate.  It's

18     going to have to be voluntary on everybody's part.

19               I'm just suggesting that it may be a way to be able

20     to crack this nut and get things moving.  It seems like if there

21     is any forum where we can possibly get everybody together, I

22     agree with Mr. Rolfs, it would be here, and it makes sense if

23     it's doable but having said that, we do have one of the, I guess

24     you would say, unfortunate costs or consequences of a federal

25     system, federalism, is that we do have dual systems of justice

1  and parallel court systems and sometimes it's messy.  Sometimes

2  it's expensive, as maybe in this case, as Mr. Rolfs indicated,

3  and it doesn't make it the most efficient way to handle things

4  but that's just the way things are where you have parallel

5  federal and state systems.  So I think largely it's going to have

6  to be with the cooperation and agreement of everyone to sit down.

7          MR. FRED HERMAN:  Yes, Your Honor, and that was exactly

8  my point.  In other words, I hear Mr. Rolfs' willingness.  I

9  certainly have expressed our willingness.  I'm simply asking for

10  an expression of willingness from *Orrill*.

11          MR. BANDARIES:  I would like to say that, again, we were

12  sort of surprised to be here today, Your Honor, and did not even

13  get on the list.

14          THE COURT:  I'm not asking you to agree on anything

15  other than sit down and talk.

16          MR. BANDARIES:  Your Honor, we're always willing to do

17  that.

18          THE COURT:  I don't see your position as much

19  procedurally here any different than Mr. Herman's position.

20          MR. BANDARIES:  And I would concur with the Court's

21  understanding there.  No, we're most willing to sit down.  We

22  would like a settlement and a finality of that matter, too, but

23  we have a certified class and we have an obligation.

24          THE COURT:  They do, too.

25          MR. BANDARIES:  I understand that, Your Honor.

1          THE COURT:  You keep saying that but it's not

2    distinguishing you from them.

3          MR. BANDARIES:  No.  We're most willing to talk,

4    Your Honor.

5          THE COURT:  I imagine you have a long road ahead of you

6    before you collect anything on that judgment in state court, I

7    have a feeling.

8          MR. FRED HERMAN:  Both sides.

9          THE COURT:  You know the way things work in the system

10   here.  At some point somebody, I guess, the Louisiana

11   Supreme Court is going to have to get both of those cases

12   together and figure out what's what.

13         MR. FRED HERMAN:  Thank you, Your Honor.

14         MR. BANDARIES:  Thank you are, sir.

15         MR. BRUNO:  Thank you, Judge.

16         (WHEREUPON, at 2:40 p.m., the proceedings were

17   concluded.)

18                            *    *    *

19

20

21

22

23

24

25

```
 1                         REPORTER'S CERTIFICATE

 2

 3        I, Cathy Pepper, Certified Realtime Reporter, Registered

 4   Merit Reporter, Registered Professional Reporter, Certified Court

 5   Reporter, Official Court Reporter for the United States District

 6   Court, Eastern District of Louisiana, do hereby certify that the

 7   foregoing is a true and correct transcript, to the best of my

 8   ability and understanding, from the record of the proceedings in

 9   the above-entitled and numbered matter.

10

11

12                             s/Cathy Pepper
                               _____

13                             Cathy Pepper, CRR, RMR, CCR

14                             Official Court Reporter

15                             United States District Court

16

17

18

19

20

21

22

23

24

25
```

## $

$58 [1] - 29:22

## 0

05-4182 [2] - 1:9, 5:18
06-1672 [2] - 1:10, 5:20
06-1673 [1] - 1:11
06-1674 [1] - 1:11
07-5528 [3] - 1:4, 5:9, 5:16

## 1

1 [3] - 17:19, 28:12, 33:24
10 [1] - 25:21
1010 [1] - 1:22
1220 [2] - 21:8, 21:13
1332(d)(4)(B [1] - 19:24
1367(c [1] - 19:24
13726 [1] - 2:12
14 [1] - 4:6
1615 [1] - 2:23
18 [1] - 8:4
18th [1] - 23:9

## 2

2 [1] - 8:17
2005 [1] - 23:9
2006 [1] - 8:17
2009 [2] - 1:5, 5:3
202 [1] - 2:6
210 [1] - 2:9
22:658(A)(3) [1] - 21:4
23RD [1] - 3:3
24th [7] - 8:25, 15:22, 18:7, 26:1, 26:22, 28:18, 31:25
2655 [1] - 2:15
27 [1] - 4:7
2775 [1] - 2:20
28 [3] - 1:5, 4:8, 5:3
2:00 [1] - 1:5
2:40 [1] - 41:16
2nd [1] - 20:19

## 3

3 [1] - 22:4
30 [1] - 12:7
3000 [1] - 1:22

301 [1] - 2:6
3197 [1] - 3:4
32 [3] - 4:9, 4:10, 4:11
32751 [1] - 2:7
33 [2] - 4:12, 4:13
35 [1] - 4:14
37 [1] - 4:15
38 [1] - 4:16
39 [2] - 4:17, 4:18

## 4

4 [1] - 20:23
40 [3] - 4:19, 4:20, 4:21

## 5

500 [1] - 3:8
504 [1] - 3:9
519 [1] - 2:4
55490 [1] - 2:23
589-7779 [1] - 3:9
594(A [1] - 23:20

## 6

6 [1] - 4:5
601 [2] - 2:14, 2:20
658.2 [1] - 21:9

## 7

70047 [1] - 2:12
70053 [1] - 2:9
70055 [1] - 2:24
70112 [1] - 1:22
70113 [2] - 1:20, 1:25
70130 [3] - 2:15, 2:20, 3:9
70726 [1] - 2:4
70821 [1] - 3:4
73 [1] - 5:20
74 [1] - 5:20

## 8

8 [1] - 24:14
820 [1] - 1:19
855 [1] - 1:24

## 9

938 [1] - 36:9

## A

AAA [2] - 1:6, 5:10
ability [1] - 42:8
able [3] - 13:16, 28:4, 39:19
above-entitled [1] - 42:9
absolutely [3] - 14:20, 16:18, 21:13
abundant [1] - 7:15
abundantly [1] - 10:20
accommodated [1] - 17:25
accomplish [1] - 38:22
achieve [2] - 10:23, 14:4
achieved [1] - 13:16
achieving [2] - 8:1, 10:22
acknowledged [1] - 33:23
Act [13] - 16:13, 20:11, 21:23, 21:24, 22:9, 22:11, 23:3, 24:14, 33:16, 33:21, 34:1
acting [3] - 15:14, 28:25, 31:21
action [12] - 10:11, 10:22, 15:15, 21:7, 21:16, 24:15, 24:16, 25:22, 29:1, 29:3, 35:4, 35:5
Action [1] - 5:9
ACTION [1] - 1:9
actions [2] - 7:7, 8:13
ADAMS [1] - 2:11
ADAMS-ATES [1] - 2:11
addition [2] - 22:20, 22:25
address [2] - 15:2, 20:10
addressed [2] - 17:19, 27:20
adequately [1] - 17:25
adjudge [1] - 28:22
adjustment [4] - 11:18, 12:7, 21:3, 21:14
administered [1] - 17:23
administrative [2] - 19:17, 21:20
admitted [1] - 22:3
advanced [1] - 25:22
advise [1] - 18:7
affidavit [1] - 19:4

affirmed [1] - 34:22
affords [1] - 14:3
afternoon [4] - 5:7, 5:13, 14:9, 20:22
agents [4] - 8:22, 15:13, 28:23, 28:25
ago [1] - 10:20
agree [10] - 6:11, 6:17, 11:12, 14:16, 16:25, 17:14, 18:13, 30:18, 39:22, 40:14
agreed [3] - 6:7, 8:9, 11:25
agreed-upon [1] - 8:9
agreeing [2] - 11:22, 14:12
agreement [9] - 7:20, 10:2, 25:2, 25:9, 27:24, 28:9, 30:21, 37:25, 40:6
agreements [2] - 10:15, 25:9
ahead [1] - 41:5
aid [8] - 10:11, 20:12, 21:21, 34:1, 34:2, 34:11, 34:14, 34:15
AL [2] - 1:4, 1:6
al [1] - 5:10
Alabama [2] - 34:18, 34:21
allegations [2] - 19:10, 19:11
alleged [1] - 9:20
allow [1] - 26:20
allows [1] - 28:9
Allstate [1] - 19:13
almost [2] - 17:22, 24:17
ALSO [1] - 3:6
ambushed [1] - 39:13
amend [1] - 32:21
amended [3] - 20:19, 20:24, 21:8
AMERICAN [2] - 2:19, 3:3
analogist [1] - 26:9
analogy [1] - 26:9
answer [8] - 23:17, 26:11, 26:15, 26:16, 28:11, 32:10
answered [1] - 10:7
Anti [10] - 16:13, 21:23, 21:24, 22:8, 22:10, 23:3, 24:14, 33:16, 33:21, 34:1
Anti-Injunction [10] - 16:13, 21:23, 21:24, 22:8, 22:10, 23:3, 24:14, 33:16, 33:21, 34:1

antitrust [1] - 25:15
APLC [1] - 2:22
apparent [1] - 18:9
appeal [8] - 23:13, 23:14, 24:6, 26:4, 26:5, 32:16, 35:3, 37:5
appearance [1] - 5:12
APPEARANCES [2] - 1:17, 2:1
applicants [1] - 9:21
applications [1] - 24:2
applied [1] - 34:9
applies [1] - 5:15
appoint [3] - 13:10, 35:17, 37:12
appointed [1] - 26:17
appointment [1] - 31:21
appreciate [4] - 6:22, 12:13, 27:6, 35:2
apprised [1] - 8:7
approach [1] - 14:12
approached [2] - 27:18, 29:16
appropriate [10] - 10:9, 10:15, 15:2, 16:14, 18:8, 18:11, 22:12, 23:1, 24:6, 24:23
approval [5] - 13:3, 15:23, 16:4, 16:18, 17:7
approved [15] - 14:25, 15:1, 17:4, 17:23, 18:3, 22:23, 22:24, 23:21, 26:21, 27:16, 28:12, 29:10, 31:23, 31:24, 34:19
argue [2] - 16:14, 20:7
argument [4] - 11:5, 19:22, 20:5, 22:15
array [1] - 12:14
assert [1] - 10:10
asserted [13] - 7:7, 8:13, 8:24, 9:12, 9:15, 9:19, 9:23, 9:25, 11:19, 11:20, 11:23, 20:16, 21:16
assigns [3] - 15:14, 28:24, 28:25
assume [2] - 20:8, 20:13
AT [1] - 2:6
ATES [3] - 2:10, 2:11, 2:11
attached [4] - 6:18, 11:14, 30:4, 30:7
attempt [2] - 13:18, 21:24

**attempting** [3] - 12:3, 12:19, 13:9
**attempts** [1] - 24:20
**attendant** [1] - 12:23
**attention** [1] - 9:18
**ATTORNEY** [1] - 2:6
**attorneys** [3] - 16:1, 16:11, 27:24
**authority** [8] - 17:10, 28:3, 28:12, 33:2, 33:3, 34:10, 38:2, 38:3
**AVENUE** [3] - 1:19, 2:4, 2:9

# B

**B-A-N-D-A-R-I-E-S** [1] - 36:8
**B406** [1] - 3:8
**backwards** [2] - 23:2, 34:25
**bad** [2] - 21:8, 21:13
**BANDARIES** [16] - 3:6, 35:23, 36:2, 36:5, 36:8, 36:17, 37:2, 39:2, 39:8, 39:12, 40:11, 40:16, 40:20, 40:25, 41:3, 41:14
**Bandaries** [3] - 36:5, 36:8, 37:9
**Bandaries'** [1] - 38:17
**BANDARIES..............
..........................** [3]
- 4:14, 4:17, 4:20
**BARBIER** [1] - 1:14
**BARONNE** [1] - 1:24
**barred** [2] - 22:8, 22:10
**barrier** [1] - 21:21
**based** [1] - 17:6
**basis** [4] - 7:13, 10:2, 19:11, 21:12
**BATON** [1] - 3:4
**become** [1] - 8:15
**becomes** [1] - 17:3
**BEEVERS** [2] - 2:8
**BEFORE** [1] - 1:14
**beg** [1] - 29:15
**began** [1] - 11:24
**behalf** [4] - 7:1, 8:13, 9:19, 9:20
**believes** [1] - 18:1
**bell** [1] - 36:11
**benefits** [1] - 9:22
**BERNARD** [1] - 2:2
**best** [4] - 24:9, 25:12, 26:16, 42:7

**better** [1] - 25:7
**between** [4] - 7:20, 24:16, 25:2, 25:18
**beyond** [1] - 16:22
**BILLINGS** [1] - 3:3
**binding** [1] - 18:2
**blah** [3] - 28:23
**board** [4] - 27:23, 27:25, 30:23, 31:1
**bounds** [1] - 12:22
**BOX** [2] - 2:3, 3:4
**BREACHES** [1] - 1:8
**Breaches** [1] - 5:17
**BREAZEALE** [1] - 3:2
**brief** [6] - 14:18, 20:18, 24:12, 24:13, 24:14, 25:21
**briefly** [1] - 27:6
**bring** [1] - 9:17
**bringing** [2] - 36:12, 36:14
**broad** [1] - 34:9
**broader** [2] - 12:11, 16:9
**brought** [1] - 39:13
**BRUNO** [6] - 1:23, 1:24, 38:15, 41:15
**Bruno** [2] - 25:4, 38:13
**BRYAN** [1] - 2:5
**bunch** [1] - 32:4
**burden** [1] - 19:2
**BY** [12] - 1:19, 1:21, 1:24, 2:3, 2:8, 2:11, 2:14, 2:19, 2:22, 3:2, 3:10, 3:11

# C

**CAFA** [2] - 19:2, 19:9
**CALVIN** [1] - 2:3
**Canal** [1] - 5:17
**CANAL** [1] - 1:8
**candidate** [1] - 8:11
**cannot** [4] - 7:5, 9:7, 10:18, 30:8
**CARL** [1] - 1:14
**carrier** [1] - 9:14
**carriers** [1] - 8:14
**case** [27] - 5:18, 7:3, 7:13, 8:24, 12:6, 12:8, 12:10, 13:1, 13:15, 15:21, 15:22, 17:6, 20:19, 23:10, 24:9, 24:16, 25:13, 25:15, 30:22, 31:15, 34:2, 34:7, 34:12, 34:18, 39:6, 40:2
**cases** [15] - 5:17, 5:19,

5:20, 7:9, 7:12, 11:23, 20:21, 22:16, 24:21, 34:5, 34:7, 34:13, 34:17, 35:6, 41:11
**CASSISA** [1] - 2:22
**Cathy** [2] - 42:3, 42:13
**CATHY** [1] - 3:8
**causes** [1] - 10:22
**CCR** [2] - 3:8, 42:13
**CENTER** [1] - 2:19
**CEO** [1] - 27:23
**certain** [1] - 15:19
**certainly** [5] - 17:23, 18:25, 19:1, 19:3, 40:9
**CERTIFICATE** [1] - 42:1
**certification** [3] - 23:21, 24:19, 26:8
**Certified** [2] - 42:3, 42:4
**certified** [5] - 12:8, 23:12, 26:2, 26:8, 40:23
**certifies** [1] - 23:20
**certify** [2] - 24:20, 42:6
**cetera** [2] - 30:17
**chairman** [1] - 27:23
**changed** [1] - 28:8
**changes** [1] - 30:6
**Chehardy** [3] - 5:19, 20:19, 20:20
**CHEHARDY** [3] - 1:10, 1:11, 1:11
**Chicken** [1] - 29:25
**CHRIS** [1] - 3:3
**CIRCLE** [1] - 2:6
**Circuit** [7] - 14:10, 19:16, 23:14, 23:24, 26:5, 34:4, 34:22
**cite** [1] - 34:3
**cited** [3] - 21:19, 22:16, 34:5
**citizen** [1] - 19:7
**CITIZENS** [1] - 3:1
**citizens** [1] - 20:2
**Citizens** [53] - 5:14, 6:1, 7:2, 7:23, 7:24, 8:7, 8:10, 8:18, 8:22, 10:17, 11:19, 11:20, 12:18, 12:21, 12:25, 15:9, 15:11, 15:13, 18:1, 19:12, 19:22, 20:5, 20:6, 20:18, 20:23, 20:25, 21:2, 22:5, 23:15, 25:3, 26:25, 27:8, 27:18, 27:25, 28:2, 28:7,

28:9, 28:11, 28:21, 28:23, 28:24, 29:5, 30:13, 30:21, 30:22, 33:2, 33:22, 34:5, 35:6, 37:22, 38:2
**Citizens'** [4] - 27:22, 27:23, 27:24, 30:23
**CIVIL** [2] - 1:4, 1:9
**Civil** [2] - 5:9, 23:20
**claim** [8] - 8:25, 11:17, 12:4, 12:5, 12:7, 15:15, 28:13, 31:19
**claimants** [1] - 35:20
**claims** [63] - 7:7, 7:16, 8:2, 8:12, 8:20, 8:24, 9:2, 9:4, 9:12, 9:15, 9:19, 9:23, 9:25, 10:1, 10:3, 11:18, 11:20, 11:23, 12:7, 12:11, 12:13, 12:14, 12:15, 12:19, 13:4, 13:6, 13:17, 13:18, 14:24, 15:4, 15:16, 15:19, 15:20, 15:22, 16:4, 16:19, 18:12, 19:12, 19:23, 20:4, 20:5, 20:6, 20:15, 20:16, 24:10, 24:16, 24:19, 24:24, 25:16, 25:17, 26:1, 26:7, 28:18, 28:19, 29:2, 31:7, 31:12, 31:20, 35:18, 35:20, 37:13
**clarification** [3] - 17:14, 37:3, 37:7
**class** [27] - 6:4, 8:13, 9:20, 10:25, 12:5, 15:16, 15:18, 19:1, 19:6, 20:1, 20:4, 23:9, 23:12, 23:20, 24:19, 25:14, 25:22, 26:2, 26:6, 26:18, 29:23, 30:18, 35:18, 36:9, 37:12, 40:23
**class'** [1] - 35:9
**classes** [1] - 24:20
**clear** [6] - 10:20, 20:14, 21:15, 21:25, 22:6, 38:18
**clearly** [3] - 21:6, 26:8, 30:18
**CLERK** [2] - 5:6, 5:9
**client** [4] - 7:3, 11:2, 17:1, 38:3
**client's** [1] - 7:2
**co** [1] - 23:8
**co-counsel** [1] - 23:8
**Code** [1] - 23:19
**collect** [1] - 41:6
**combined** [1] - 19:12

**coming** [3] - 24:7, 28:3, 35:5
**Commission** [1] - 37:23
**COMMON** [1] - 1:22
**communication** [1] - 20:22
**companies** [1] - 19:14
**Company** [2] - 15:9, 15:11
**COMPANY** [1] - 3:2
**company** [5] - 7:21, 8:10, 8:16, 10:17, 25:9
**company's** [1] - 31:14
**complaint** [4] - 19:18, 20:24, 21:18, 21:20
**completely** [2] - 23:2, 25:18
**complex** [3] - 7:10, 10:13
**complicated** [1] - 25:22
**compromise** [9] - 8:23, 11:11, 15:15, 16:4, 27:24, 29:1, 29:21, 30:8, 31:16
**compromised** [3] - 7:17, 15:23, 29:3
**compromising** [1] - 9:3
**COMPUTER** [1] - 3:11
**concern** [5] - 9:4, 9:10, 10:4, 10:6, 15:5
**concerned** [2] - 9:11, 10:8
**concerns** [2] - 18:7, 29:12
**concluded** [1] - 41:17
**concur** [1] - 40:20
**condition** [1] - 29:9
**conduct** [3] - 13:10, 31:22, 32:5
**conducted** [3] - 7:15, 7:16
**conducting** [1] - 8:19
**conference** [1] - 31:22
**confidential** [2] - 8:6, 25:6
**confirm** [1] - 17:4
**conjunction** [1] - 6:8
**consequence** [2] - 7:8, 8:2
**consequences** [1] - 39:24
**consider** [1] - 31:16
**considered** [1] - 6:19
**consolidated** [1] - 7:16

**CONSOLIDATED** [1] - 1:8

**consolidating** [1] - 7:11

**conspiracy** [1] - 19:10

**constraints** [1] - 29:13

**construed** [2] - 26:20, 34:4

**consummate** [1] - 16:3

**Container** [1] - 34:18

**contempt** [3] - 29:12, 29:14, 29:16

**contend** [3] - 19:6, 21:2, 21:23

**contest** [1] - 10:25

**context** [1] - 17:6

**CONTINUED** [1] - 2:1

**continuum** [1] - 22:8

**contract** [1] - 12:14

**contrary** [1] - 27:25

**control** [1] - 25:24

**cooperation** [1] - 40:6

**corporate** [1] - 31:13

**Corporation** [1] - 7:2

**correct** [9] - 6:9, 6:16, 12:9, 12:20, 13:8, 24:4, 28:14, 42:7

**correctly** [1] - 36:12

**corresponding** [1] - 24:2

**Corrugated** [1] - 34:18

**costs** [2] - 12:23, 39:24

**COTLAR** [1] - 1:18

**counsel** [26] - 5:11, 7:14, 7:20, 7:25, 8:7, 9:3, 10:25, 11:12, 13:11, 20:7, 23:8, 23:13, 25:1, 26:25, 27:18, 27:23, 29:6, 29:23, 30:22, 33:22, 35:17, 35:24, 36:9, 37:12

**count** [4] - 21:2, 21:5, 21:6

**couple** [2] - 22:16, 33:20

**course** [3] - 8:15, 10:10, 12:11

**court** [68] - 7:5, 7:6, 8:3, 8:25, 10:9, 10:21, 10:22, 10:23, 11:2, 11:3, 11:12, 11:16, 11:19, 11:21, 12:10, 13:4, 13:17, 15:1, 15:4, 15:21, 16:15, 17:2, 18:7, 18:24, 18:25, 21:15, 22:1, 23:5, 23:6,

23:8, 23:9, 23:10, 23:11, 23:12, 23:16, 23:21, 24:11, 24:21, 25:17, 25:21, 26:10, 27:13, 30:8, 30:9, 31:24, 33:17, 33:18, 34:2, 34:8, 34:10, 34:11, 34:21, 34:23, 35:1, 35:2, 35:3, 35:4, 35:5, 35:21, 36:21, 39:13, 40:1, 41:6

**COURT** [70] - 1:1, 3:8, 5:4, 5:7, 5:11, 5:25, 6:5, 6:11, 6:14, 6:17, 6:24, 7:23, 11:5, 11:25, 12:10, 12:13, 12:17, 12:24, 14:6, 14:8, 14:11, 14:15, 15:6, 16:21, 16:25, 17:13, 17:17, 18:16, 18:19, 25:8, 26:13, 27:5, 28:16, 29:7, 29:14, 29:16, 31:3, 31:6, 31:9, 32:2, 32:12, 32:22, 33:6, 33:9, 33:11, 35:13, 35:17, 35:25, 36:4, 36:6, 36:7, 36:14, 36:18, 37:9, 37:17, 37:19, 38:6, 38:9, 38:13, 38:23, 39:1, 39:6, 39:10, 39:15, 40:14, 40:18, 40:24, 41:1, 41:5, 41:9

**Court** [61] - 5:13, 7:1, 7:6, 7:10, 8:1, 9:5, 9:8, 9:9, 9:12, 10:1, 10:4, 10:6, 10:8, 10:11, 10:12, 10:20, 10:25, 11:23, 13:10, 13:22, 13:23, 15:17, 15:22, 15:24, 17:7, 18:4, 20:13, 22:5, 23:1, 24:1, 24:8, 26:2, 26:3, 26:18, 26:22, 27:19, 28:17, 28:19, 30:1, 30:4, 31:4, 31:18, 31:22, 32:7, 33:14, 33:19, 33:22, 33:24, 36:1, 36:10, 36:12, 39:3, 41:11, 42:4, 42:5, 42:6, 42:14, 42:15

**court's** [2] - 9:1, 26:11

**Court's** [6] - 9:18, 9:23, 11:9, 27:7, 34:2, 40:20

**COURT**......................
......................[5] -

4:9, 4:13, 4:15, 4:18, 4:21

**courts** [4] - 23:22, 24:3, 31:11, 34:4

**coverage** [3] - 11:22, 21:10, 21:11

**crack** [1] - 39:20

**create** [1] - 19:19

**creates** [1] - 20:20

**CRR** [2] - 3:8, 42:13

**current** [2] - 18:5, 18:15

# D

**damage** [2] - 7:12, 8:2

**date** [1] - 15:19

**DAVIS** [1] - 2:22

**days** [1] - 12:7

**deal** [4] - 28:4, 28:13, 31:1

**decent** [1] - 22:14

**decided** [1] - 6:8

**deciding** [1] - 5:22

**decision** [1] - 21:19

**decisions** [1] - 24:22

**declaration** [1] - 19:4

**deconsolidation** [1] - 9:13

**decree** [1] - 28:23

**decreed** [1] - 15:10

**deem** [1] - 18:8

**defendant** [5] - 8:11, 8:16, 15:11, 15:13, 35:4

**DEFENDANTS** [1] - 2:18

**defendants** [4] - 7:21, 8:10, 20:2, 25:3

**defense** [1] - 9:17

**defined** [1] - 15:16

**defines** [1] - 15:17

**definitely** [2] - 10:10, 16:6

**delay** [1] - 27:13

**delayed** [1] - 21:11

**deliver** [4] - 28:4, 28:10, 33:5

**DENHAM** [1] - 2:4

**denied** [5] - 21:10, 23:25, 24:1, 24:2, 24:22

**deny** [3] - 33:12, 35:13, 37:14

**denying** [1] - 33:16

**DEPUTY** [2] - 5:6, 5:9

**desirable** [1] - 18:2

**desire** [1] - 9:7

**desires** [1] - 10:23

**desirous** [1] - 10:18

**DESTREHAN** [1] - 2:12

**diametrically** [1] - 18:10

**different** [4] - 31:11, 31:12, 35:6, 40:19

**differing** [1] - 13:14

**directed** [1] - 15:10

**directly** [3] - 14:10, 15:14, 28:25

**directors** [1] - 31:1

**discourse** [1] - 30:16

**discovery** [1] - 7:15

**discretionary** [1] - 19:25

**discussing** [1] - 9:2

**discussion** [2] - 29:20, 32:25

**discussions** [1] - 36:20

**Dismiss** [1] - 9:14

**dismiss** [4] - 8:23, 15:15, 29:1, 35:9

**dismissal** [1] - 9:18

**dismissed** [5] - 9:24, 10:1, 15:23, 20:17

**dispute** [2] - 6:8, 17:14

**disputed** [1] - 11:4

**distinguished** [3] - 29:19, 34:6, 34:14

**distinguishing** [1] - 41:2

**district** [4] - 8:3, 25:21, 25:24, 27:13

**DISTRICT** [3] - 1:1, 1:1, 1:15

**District** [8] - 18:4, 18:7, 24:8, 26:1, 26:22, 42:5, 42:6, 42:15

**diverse** [1] - 19:13

**diversity** [4] - 19:2, 19:5, 19:8, 19:9

**division** [1] - 7:12

**doable** [1] - 39:23

**DOCKET** [1] - 1:4

**documents** [1] - 8:9

**done** [1] - 23:4

**doubt** [2] - 17:9, 32:12

**down** [6] - 22:21, 22:22, 38:3, 40:6, 40:15, 40:21

**dual** [1] - 39:25

**DUDENHEFER** [2] - 2:13, 2:14

**due** [1] - 19:24

**during** [1] - 22:3

**Duval** [3] - 5:20, 9:13,

19:15

# E

**e-mail** [4] - 14:19, 17:20, 28:8, 30:10

**e-mails** [1] - 11:14

**early** [1] - 8:6

**EASTERN** [1] - 1:1

**Eastern** [1] - 42:6

**effect** [4] - 8:21, 18:2, 36:3, 37:3

**effectively** [2] - 24:6, 25:17

**efficient** [1] - 40:3

**efforts** [2] - 11:11, 29:5

**Eileen** [1] - 5:8

**either** [4] - 13:7, 19:24, 25:13, 34:14

**ELLIOTT** [2] - 2:22, 2:22

**Emile** [1] - 7:1

**EMILE** [1] - 3:2

**employees** [4] - 8:22, 15:13, 28:24, 28:25

**encouraged** [2] - 7:17, 10:14

**end** [8] - 13:15, 22:6, 22:18, 23:5, 23:11, 23:15, 25:16, 34:22

**endanger** [2] - 28:20, 28:21

**endorse** [1] - 31:2

**enforced** [1] - 7:5

**enjoin** [8] - 10:21, 21:24, 22:1, 22:5, 33:14, 34:8, 34:10, 35:5

**enjoining** [2] - 15:12, 33:17

**enter** [1] - 14:23

**entered** [1] - 27:2

**entering** [1] - 14:22

**entertain** [1] - 27:15

**entitled** [2] - 22:14, 42:9

**equivalent** [1] - 25:23

**ESQ** [1] - 1:24

**ESQUIRE** [12] - 1:19, 1:21, 2:3, 2:8, 2:11, 2:11, 2:14, 2:19, 2:22, 3:2, 3:3, 3:6

**essentially** [2] - 33:13, 33:15

**establishes** [1] - 19:5

**ET** [2] - 1:4, 1:6

**et** [3] - 5:10, 30:17

**event** [2] - 17:22,

26:19
**evidence** [3] - 6:19, 19:4, 19:5
**ex** [1] - 37:11
**exact** [1] - 17:20
**exactly** [3] - 5:22, 38:21, 40:7
**Examinations** [1] - 4:3
**example** [1] - 34:17
**except** [2] - 6:12, 25:3
**exception** [4] - 23:3, 33:25, 34:16, 34:17
**exceptions** [1] - 33:20
**exchanged** [1] - 8:9
**exchanges** [1] - 11:14
**excited** [1] - 30:25
**exclude** [1] - 13:19
**excluded** [1] - 21:12
**exclusively** [2] - 24:17, 24:18
**excuse** [2] - 16:9, 17:13
**Exhibit** [2] - 17:19, 20:19
**exhibit** [1] - 20:23
**exhibits** [2] - 6:13, 6:17
**existence** [1] - 10:19
**existing** [1] - 10:9
**exists** [1] - 19:16
**expense** [2] - 12:23, 14:2
**expensive** [1] - 40:2
**explain** [1] - 35:7
**expressed** [2] - 9:9, 40:9
**expression** [1] - 40:10
**extent** [1] - 18:1

## F

**face** [1] - 34:10
**fact** [7] - 8:11, 9:18, 20:16, 27:9, 29:21, 34:15, 39:4
**factual** [1] - 6:8
**failed** [1] - 28:8
**failure** [5] - 11:17, 12:6, 12:14, 21:3, 21:14
**fairness** [2] - 37:4, 39:8
**faith** [3] - 21:8, 21:13, 37:21
**falling** [1] - 29:25
**Fallon's** [1] - 21:19
**far** [4] - 17:6, 22:17, 25:22, 29:19
**Farm** [1] - 19:13

**FAYARD** [2] - 2:3, 2:3
**Fayard** [2] - 25:4, 38:14
**fear** [1] - 9:1
**federal** [34] - 7:5, 10:22, 10:23, 11:3, 11:19, 11:21, 15:1, 15:4, 18:24, 18:25, 21:15, 23:5, 23:10, 23:11, 23:16, 24:15, 24:16, 24:19, 24:20, 24:24, 25:14, 25:16, 26:10, 33:16, 33:17, 34:8, 34:10, 34:20, 34:22, 34:23, 35:5, 39:24, 40:5
**federalism** [1] - 39:25
**fees** [1] - 14:1
**feet** [1] - 31:14
**Fifth** [5] - 14:10, 19:16, 23:24, 34:4, 34:22
**figure** [1] - 41:12
**filed** [9] - 5:16, 6:6, 6:19, 17:12, 23:9, 23:10, 26:17, 29:23, 36:1
**final** [11] - 23:12, 23:13, 25:12, 34:19, 35:1, 35:2, 35:3, 37:5, 37:6, 39:5, 39:6
**finality** [1] - 40:22
**finally** [2] - 23:12, 24:12
**fine** [3] - 18:19, 19:18, 31:16
**fire** [1] - 31:14
**FIRM** [2] - 2:10, 2:13
**first** [5] - 9:11, 15:3, 17:17, 20:12, 24:15
**FL** [1] - 2:7
**flood** [1] - 21:12
**FLORIDA** [1] - 2:4
**folks** [1] - 13:20
**FOR** [3] - 1:18, 2:18, 3:1
**foregoing** [1] - 42:7
**form** [1] - 18:11
**former** [2] - 21:3, 37:22
**forum** [3] - 13:19, 14:3, 39:21
**forward** [5] - 20:18, 27:17, 28:7, 35:12, 36:6
**four** [2] - 21:6, 37:22
**Fourth** [2] - 23:14, 26:5
**FRANK** [1] - 2:14

**frankly** [2] - 15:2, 16:21
**FRED** [20] - 1:21, 1:21, 4:7, 4:11, 4:16, 4:19, 17:16, 17:18, 18:17, 18:21, 27:4, 27:6, 32:15, 32:21, 32:23, 38:16, 38:24, 40:7, 41:8, 41:13
**full** [1] - 25:24
**fully** [1] - 35:7
**fund** [1] - 32:16
**future** [1] - 9:21

## G

**game** [1] - 22:7
**generally** [1] - 33:17
**gentleman** [1] - 38:20
**given** [1] - 37:7
**global** [28] - 7:19, 8:2, 8:19, 13:4, 13:18, 14:4, 14:22, 14:23, 17:5, 17:21, 17:22, 18:5, 18:12, 22:13, 22:14, 22:15, 22:22, 26:18, 27:15, 28:10, 29:9, 31:9, 32:5, 32:7, 32:17, 35:21, 36:19
**goal** [1] - 22:2
**governance** [1] - 37:24
**granted** [1] - 9:14
**granting** [1] - 32:2
**grants** [1] - 9:22
**GRETNA** [1] - 2:9
**group** [3] - 16:11, 38:18, 38:20
**guess** [9] - 5:19, 12:4, 16:16, 21:5, 35:8, 37:10, 37:14, 39:23, 41:10
**guys** [1] - 38:14

## H

**handle** [2] - 5:21, 40:3
**handled** [1] - 12:8
**handshake** [1] - 8:8
**happy** [1] - 26:11
**hear** [1] - 40:8
**heard** [6] - 7:14, 26:24, 29:18, 33:6, 35:23
**HEARD** [1] - 1:14
**hearing** [10] - 5:13, 5:22, 6:9, 6:20, 9:9, 22:3, 36:1, 36:11,

37:4, 39:9
**hereby** [1] - 42:6
**Hereby** [1] - 28:22
**Herman** [7] - 6:3, 14:8, 17:17, 18:16, 18:18, 18:19, 27:5
**HERMAN** [37] - 1:18, 1:19, 1:21, 1:21, 6:3, 6:12, 6:16, 6:22, 14:9, 14:14, 14:17, 16:6, 16:22, 17:11, 17:16, 17:18, 17:19, 18:17, 18:20, 18:21, 18:22, 25:11, 26:14, 27:4, 27:6, 32:15, 32:21, 32:23, 35:11, 35:16, 37:16, 38:16, 38:24, 40:7, 41:8, 41:13
**Herman's** [1] - 40:19
**HERMAN..................**
**..................** [1] - 4:6
**HERMAN..................**
**..................** [4] -
    4:7, 4:11, 4:16, 4:19
**history** [1] - 16:11
**holders** [1] - 11:22
**Home** [5] - 7:9, 9:12, 9:13, 9:21, 9:22
**homeowners** [1] - 21:11
**HONEYCUTT** [1] - 2:3
**Honor** [53] - 6:3, 6:10, 6:12, 6:16, 6:21, 6:23, 6:25, 7:2, 7:6, 7:19, 10:21, 12:20, 13:8, 13:16, 14:1, 14:5, 14:9, 16:12, 17:11, 17:16, 20:15, 26:15, 26:23, 27:4, 27:6, 28:1, 28:2, 28:15, 28:17, 28:22, 29:11, 30:7, 30:19, 30:25, 31:19, 32:16, 32:23, 33:7, 35:16, 35:23, 37:2, 37:16, 38:5, 38:12, 38:16, 38:21, 39:5, 40:7, 40:12, 40:16, 40:25, 41:4, 41:13
**Honor's** [2] - 23:17, 30:2
**honorable** [2] - 31:24
**HONORABLE** [1] - 1:14
**hope** [2] - 33:3, 37:20
**hopes** [1] - 33:4
**horrendous** [2] - 14:2, 14:3
**house** [1] - 27:24

**HUBBARD** [1] - 2:18
**HUEY** [1] - 2:9
**humble** [1] - 33:8
**hurricane** [1] - 7:11
**hurricanes** [1] - 8:3

## I

**idea** [1] - 35:19
**identical** [1] - 5:15
**identified** [2] - 19:3, 19:6
**identify** [1] - 20:23
**III** [1] - 3:2
**imagine** [1] - 41:5
**imminent** [1] - 34:20
**impending** [1] - 24:25
**important** [1] - 27:8
**importantly** [1] - 21:1
**imposition** [1] - 9:6
**improperly** [1] - 11:21
**IN** [2] - 1:8, 5:4
**in-house** [1] - 27:24
**inapposite** [1] - 34:6
**inappropriate** [1] - 22:15
**incidentally** [1] - 23:8
**include** [6] - 10:3, 14:23, 14:24, 30:7, 34:7
**including** [2] - 7:23, 7:24
**increases** [1] - 12:22
**indicated** [4] - 12:11, 23:1, 29:11, 40:2
**indicates** [1] - 21:19
**indirectly** [2] - 15:14, 28:25
**individual** [1] - 15:18
**individuals** [1] - 15:18
**indulgence** [1] - 27:7
**initiate** [4] - 11:18, 12:6, 21:3, 21:14
**Injunction** [10] -
    16:13, 21:23, 21:24, 22:8, 22:10, 23:3, 24:14, 33:16, 33:21, 34:1
**injunction** [19] - 5:14, 8:20, 15:7, 15:10, 16:14, 18:5, 18:15, 24:7, 26:20, 27:11, 30:15, 32:3, 33:12, 33:15, 33:19, 34:1, 34:23, 35:12
**inquiry** [1] - 38:18
**INSURANCE** [3] - 1:6, 1:10, 3:1
**Insurance** [4] - 5:10,

15:9, 15:11, 37:23
**insurance** [12] - 5:17, 5:19, 7:21, 8:10, 8:14, 9:14, 10:17, 11:23, 19:13, 20:20, 27:1, 31:12
**intended** [1] - 23:18
**interested** [1] - 32:25
**interesting** [2] - 10:24, 25:20
**interests** [1] - 17:24
**interpret** [5] - 15:6, 15:25, 16:1, 16:17, 16:21
**interpretation** [1] - 24:4
**interpreted** [1] - 23:19
**interpreting** [1] - 26:23
**invitation** [1] - 32:18
**inviting** [3] - 31:23, 36:22, 36:24
**involved** [4] - 8:15, 12:5, 12:6, 35:21
**issue** [9] - 10:25, 17:3, 18:10, 18:23, 21:7, 21:17, 23:22, 29:25, 33:13
**issued** [2] - 8:20, 15:10
**issues** [5] - 6:8, 13:22, 15:3, 21:9, 24:13
**issuing** [3] - 7:12, 33:19, 34:1

## J

**JDC** [4] - 8:25, 15:22, 28:18, 31:25
**Jefferson** [7] - 8:21, 8:24, 11:16, 29:24, 30:16, 31:15, 31:18
**job** [1] - 31:17
**joint** [1] - 19:11
**JOSEPH** [1] - 1:24
**JR** [2] - 2:3, 2:14
**Judge** [48] - 5:20, 9:13, 9:15, 11:6, 11:10, 12:2, 12:17, 13:5, 14:12, 14:25, 15:7, 16:4, 16:7, 16:18, 16:23, 17:1, 17:7, 18:3, 18:4, 18:20, 19:15, 21:19, 22:24, 23:18, 23:19, 23:23, 24:4, 26:19, 27:8, 27:10, 27:12, 28:6, 29:7, 29:8, 29:14, 29:17, 29:18,

30:4, 30:11, 32:3, 32:12, 32:19, 33:15, 36:15, 36:16, 36:17, 38:19, 41:15
**judge** [9] - 11:7, 13:10, 25:24, 27:13, 29:3, 31:21, 32:9, 38:1, 39:3
**JUDGE** [1] - 1:15
**judge's** [1] - 30:11
**Judge's** [1] - 11:9
**judged** [1] - 15:9
**judges** [2] - 32:5, 36:21
**judgment** [16] - 23:13, 23:14, 26:4, 27:18, 33:21, 33:23, 34:16, 35:1, 35:2, 35:4, 37:5, 37:6, 39:5, 39:6, 41:6
**judgments** [2] - 23:16, 34:20
**judicata** [2] - 16:20, 18:2
**Judicial** [3] - 18:7, 26:1, 26:22
**jumped** [1] - 8:15
**June** [2] - 8:17, 20:19
**jurisdiction** [28] - 7:6, 9:10, 10:6, 10:12, 16:23, 17:24, 18:6, 18:11, 18:23, 19:19, 19:21, 19:22, 20:9, 20:12, 20:13, 20:14, 20:20, 21:15, 21:22, 24:8, 24:10, 28:19, 31:19, 31:20, 34:2, 34:12, 34:14, 34:15
**jurisdictional** [1] - 15:3
**jurisdictionally** [1] - 14:21
**jurisdictions** [1] - 17:24
**justice** [1] - 39:25
**justified** [1] - 10:11

## K

**Katrina** [3] - 5:17, 7:8, 24:21
**KATRINA** [1] - 1:8
**Katrina/Rita** [1] - 13:23
**KATZ** [1] - 1:18
**keep** [1] - 41:1
**keeping** [3] - 11:8, 30:2, 30:10
**Kern** [1] - 36:16

**kicking** [1] - 39:13
**kind** [1] - 17:5
**knowledge** [4] - 19:3, 20:25, 26:6, 26:7
**knows** [1] - 10:2

## L

**LA** [11] - 1:20, 1:22, 1:25, 2:4, 2:9, 2:12, 2:15, 2:20, 2:24, 3:4, 3:9
**Lafayette** [1] - 36:9
**language** [2] - 34:8, 34:9
**largely** [2] - 35:14, 40:5
**last** [7] - 11:9, 12:1, 20:15, 23:1, 26:14, 36:7, 38:7
**latter** [1] - 16:6
**laughed** [1] - 9:16
**LAW** [4] - 1:21, 2:6, 2:10, 2:13
**law** [5] - 23:25, 24:5, 24:16, 25:18, 34:2
**lawsuit** [2] - 8:21, 9:16
**lawyers** [1] - 31:17
**leaps** [1] - 12:22
**least** [7] - 13:17, 19:2, 19:23, 20:4, 22:23, 25:14, 25:25
**leave** [2] - 20:7, 38:17
**left** [1] - 25:3
**legal** [5] - 12:22, 14:1, 19:15, 19:16, 32:10
**less** [1] - 36:12
**liable** [2] - 21:2, 21:12
**liaison** [7] - 7:14, 7:20, 7:25, 8:7, 9:3, 20:7, 26:25
**LIFE** [1] - 2:19
**life** [1] - 37:23
**likely** [1] - 18:3
**limited** [3] - 10:2, 11:11, 16:8
**lis** [1] - 24:3
**list** [1] - 40:13
**litany** [1] - 11:22
**litigant** [1] - 10:21
**litigants** [3] - 23:4, 24:17, 24:18
**litigated** [2] - 23:22, 26:3
**litigation** [14] - 5:18, 7:10, 8:16, 9:12, 10:13, 11:20, 11:21, 12:22, 13:24, 23:7, 25:23, 33:18, 34:11

**LITIGATION** [1] - 1:8
**LLC** [1] - 2:13
**logical** [1] - 31:20
**LONG** [1] - 2:9
**look** [4] - 21:4, 21:6, 24:13, 34:13
**looking** [1] - 24:12
**loss** [3] - 11:18, 21:3, 21:14
**LOUISIANA** [4] - 1:1, 1:4, 1:5, 3:1
**Louisiana** [38] - 5:10, 5:14, 7:2, 8:7, 8:10, 8:18, 8:22, 10:17, 11:19, 11:20, 12:21, 15:8, 15:11, 15:13, 19:7, 20:1, 20:2, 21:4, 22:4, 23:14, 23:19, 23:24, 23:25, 24:1, 24:17, 24:18, 27:1, 27:18, 28:23, 28:24, 30:13, 30:20, 30:22, 36:9, 37:23, 41:10, 42:6
**LUGENBUHL** [1] - 2:18

## M

**mad** [1] - 30:20
**MADRO** [1] - 3:6
**Madro** [2] - 36:5, 36:8
**magistrate** [5] - 13:10, 31:21, 32:5, 36:21, 38:1
**mail** [4] - 14:19, 17:20, 28:8, 30:10
**mailed** [1] - 15:18
**mails** [1] - 11:14
**MAITLAND** [1] - 2:7
**managed** [4] - 7:10, 10:12, 10:13, 13:23
**management** [2] - 7:13, 31:13
**maneuver** [1] - 34:23
**March** [2] - 8:5, 8:6
**massive** [1] - 9:2
**master** [3] - 21:18, 21:20, 25:2
**matter** [22] - 5:8, 7:6, 9:10, 13:12, 15:21, 16:19, 18:10, 18:23, 20:8, 20:13, 24:8, 25:18, 30:9, 32:17, 35:24, 35:25, 36:3, 36:10, 36:13, 37:4, 40:22, 42:9
**MAUTERER** [1] - 2:8
**MAY** [2] - 1:5, 5:3

**McMINN** [1] - 2:5
**MDL** [3] - 34:18, 34:20, 34:22
**mean** [2] - 6:14, 22:1
**meaning** [1] - 16:1
**MECHANICAL** [1] - 3:10
**mediation** [2] - 27:19, 28:8
**meet** [1] - 17:3
**meeting** [2] - 17:3
**member** [3] - 15:16, 19:6, 29:2
**members** [3] - 15:16, 20:1, 29:2
**memo** [1] - 22:4
**memoranda** [1] - 6:18
**memorandum** [1] - 30:5
**mentioned** [1] - 10:12
**Merit** [1] - 42:4
**messy** [1] - 40:1
**METAIRIE** [2] - 2:23, 2:24
**might** [4] - 16:14, 23:18, 24:23, 35:22
**million** [1] - 29:22
**mind** [1] - 20:17
**minimal** [3] - 19:2, 19:5, 19:8
**minor** [2] - 30:3, 30:12
**misunderstood** [2] - 38:17, 39:1
**modification** [5] - 11:10, 11:11, 27:10, 30:3
**modifications** [3] - 18:8, 28:5, 28:6
**modify** [2] - 14:13, 30:12
**moment** [1] - 10:5
**money** [2] - 31:11, 32:16
**months** [1] - 8:4
**moot** [1] - 35:14
**moots** [1] - 35:9
**moreover** [1] - 21:25
**most** [5] - 18:11, 34:17, 40:3, 40:21, 41:3
**Motion** [1] - 9:14
**motion** [12] - 5:13, 17:12, 19:1, 26:7, 26:17, 29:23, 30:14, 33:12, 35:9, 35:17, 37:11
**MOTION** [1] - 1:14
**motions** [5] - 5:15, 5:22, 7:15, 27:17
**move** [1] - 28:7

moving [2] - 27:17, 39:20
MR [88] - 4:5, 4:6, 4:7, 4:8, 4:10, 4:11, 4:12, 4:14, 4:16, 4:17, 4:19, 4:20, 5:24, 6:2, 6:3, 6:10, 6:12, 6:16, 6:21, 6:22, 6:25, 7:24, 11:7, 12:9, 12:12, 12:16, 12:20, 13:8, 14:7, 14:9, 14:14, 14:17, 16:6, 16:22, 17:11, 17:16, 17:19, 18:17, 18:20, 18:21, 18:22, 25:11, 26:14, 27:4, 27:6, 28:17, 29:11, 29:15, 29:18, 31:5, 31:7, 31:10, 32:9, 32:15, 32:20, 32:21, 32:23, 33:7, 33:10, 35:11, 35:16, 35:23, 36:2, 36:5, 36:8, 36:17, 37:2, 37:16, 37:18, 38:5, 38:8, 38:12, 38:15, 38:16, 38:24, 39:2, 39:8, 39:12, 40:7, 40:11, 40:16, 40:20, 40:25, 41:3, 41:8, 41:13, 41:14, 41:15
multistate [2] - 25:14, 25:15

**N**

name [3] - 7:1, 36:4, 36:7
names [1] - 9:25
narrow [3] - 12:4, 12:5, 33:20
narrowly [1] - 34:3
national [2] - 25:14, 25:15
naturally [1] - 36:22
nature [3] - 24:15, 24:24
necessary [6] - 7:16, 18:2, 22:12, 22:25, 35:8
need [7] - 6:8, 6:14, 22:13, 22:16, 22:21, 37:13, 37:17
needed [1] - 5:12
needs [3] - 7:4, 30:13
negotiate [3] - 16:9, 16:10, 22:22
negotiating [1] - 11:3
negotiation [2] -

27:21, 32:6
negotiations [15] - 7:18, 7:22, 8:5, 8:19, 10:18, 11:15, 13:11, 17:21, 18:6, 26:19, 26:21, 26:24, 29:4, 29:21, 35:22
net [1] - 8:21
never [4] - 21:1, 21:5, 26:7, 28:1
New [1] - 36:9
NEW [7] - 1:5, 1:20, 1:22, 1:25, 2:15, 2:20, 3:9
next [1] - 8:17
nil [1] - 28:6
NO [2] - 1:4, 1:9
nonetheless [1] - 35:3
noted [1] - 20:15
nothing [6] - 12:1, 12:2, 12:17, 12:25, 14:21, 21:13
notice [1] - 15:18
notions [1] - 8:1
November [1] - 23:9
Number [2] - 5:9, 33:24
number [2] - 7:21, 8:9
numbered [1] - 42:9
numerous [2] - 7:13, 7:14
nut [1] - 39:20

**O**

O'KEEFE [1] - 1:19
object [3] - 20:9, 28:5, 35:19
objection [5] - 14:11, 14:14, 14:15, 32:24, 36:22
objects [3] - 26:25, 27:1, 27:2
obligation [1] - 40:23
observe [1] - 10:24
observed [1] - 9:13
obviously [2] - 36:23, 38:2
occur [1] - 35:22
occurs [2] - 35:14, 38:9
OF [3] - 1:1, 1:14, 1:21
offhandedly [1] - 27:20
OFFICE [1] - 3:4
OFFICES [1] - 1:21
Official [2] - 42:5, 42:14
OFFICIAL [1] - 3:8

once [1] - 23:20
ONE [1] - 3:3
one [27] - 7:12, 8:24, 10:15, 11:17, 13:13, 13:25, 14:3, 17:11, 19:18, 22:7, 25:9, 25:20, 26:5, 26:14, 26:16, 31:15, 31:19, 32:5, 32:15, 33:1, 33:21, 35:19, 36:21, 37:25, 38:16, 39:23
OPEN [1] - 5:4
opinion [2] - 33:8, 39:4
opponents [1] - 29:19
opportunity [3] - 8:15, 14:3, 27:15
opposed [1] - 18:10
opposing [2] - 11:12, 25:1
opposite [1] - 23:2
opt [1] - 15:19
order [39] - 7:5, 9:1, 9:6, 10:9, 10:19, 11:10, 11:11, 12:2, 12:3, 12:18, 14:5, 14:13, 15:7, 16:5, 16:17, 17:8, 17:14, 18:5, 18:15, 23:19, 24:19, 26:20, 26:23, 27:2, 28:6, 28:20, 28:21, 28:22, 29:8, 30:3, 30:12, 33:22, 33:23, 34:17, 35:10, 39:16, 39:17
ordered [1] - 15:9
ordering [1] - 36:24
orders [1] - 7:13
original [2] - 19:20, 19:22
Orleans [3] - 13:12, 29:22, 36:9
ORLEANS [7] - 1:5, 1:20, 1:22, 1:25, 2:15, 2:20, 3:9
Orrill [12] - 13:12, 23:13, 26:5, 27:14, 27:15, 31:6, 32:16, 35:20, 35:24, 36:3, 36:10, 40:10
otherwise [2] - 8:23, 26:12
Oubre [35] - 6:4, 10:25, 12:6, 12:8, 13:1, 13:6, 13:11, 14:24, 15:16, 15:18, 16:1, 19:1, 19:6, 19:23, 20:4, 21:7, 21:17, 22:24, 23:8, 26:1, 26:18, 27:14,

27:17, 28:13, 29:2, 29:6, 29:23, 30:18, 31:6, 31:7, 31:8, 35:9, 35:18, 35:20, 37:12
ought [2] - 11:15, 30:16
out-of-pocket [1] - 14:2
oversee - 13:10
overseen [3] - 7:15, 7:17, 10:14
own [4] - 9:19, 9:24, 24:12, 34:12

**P**

p.m [1] - 41:16
P.M [1] - 1:5
Page [2] - 4:3, 22:4
page [2] - 24:14, 25:21
pains [1] - 29:22
PAN [1] - 2:19
PAN-AMERICAN [1] - 2:19
paragraph [1] - 20:23
parallel [4] - 33:18, 34:11, 40:1, 40:4
pardon [1] - 29:15
Parish [9] - 8:21, 8:24, 11:17, 13:12, 29:22, 29:24, 30:16, 31:15, 31:19
part [9] - 5:17, 6:19, 12:8, 13:4, 21:25, 22:24, 23:17, 26:24, 39:18
parte [1] - 37:11
participate [8] - 9:7, 36:23, 38:19, 38:21, 38:23, 39:16, 39:17
participating [1] - 10:18
particular [1] - 34:4
particularly [1] - 24:8
parties [6] - 6:7, 7:14, 25:19, 27:14, 32:6, 36:23
parts [1] - 26:16
party [2] - 9:16, 22:13
past [1] - 21:21
PAULA [1] - 2:11
pay [1] - 12:14
PECK [1] - 2:18
penalties [5] - 9:6, 9:23, 15:20, 20:16, 21:8
penalty [11] - 8:19, 8:25, 9:3, 9:11, 9:14,

10:3, 11:17, 11:18, 12:15, 28:13, 31:19
pendens [1] - 24:3
pending [4] - 7:8, 16:13, 33:18, 37:11
people [4] - 16:24, 25:6, 33:1, 35:21
Pepper [3] - 42:3, 42:12, 42:13
PEPPER [1] - 3:8
perception [2] - 25:5, 25:6
perhaps [2] - 25:9, 38:17
permission [1] - 39:4
permit [1] - 35:12
person [2] - 25:12, 38:10
persons [1] - 38:10
PERTAINS [1] - 1:10
petition [1] - 20:19
phone [2] - 11:25, 32:3
picked [1] - 32:3
pie [1] - 29:24
piece [1] - 19:5
piecemeal [1] - 12:21
PLACE [1] - 3:3
place [5] - 7:19, 10:15, 11:16, 13:25, 18:6
PLAINTIFFS [1] - 1:18
plaintiffs [10] - 7:20, 8:8, 13:1, 20:25, 21:2, 25:2, 34:21, 35:18, 35:24, 37:12
plaintiffs' [1] - 37:11
planning [2] - 5:25, 35:12
play [1] - 6:25
pleadings [1] - 21:16
pleural [1] - 17:24
plus [1] - 12:14
pocket [1] - 14:2
point [10] - 13:1, 14:21, 23:24, 23:25, 24:4, 26:14, 37:2, 37:10, 40:8, 41:10
points [1] - 23:8
policies [1] - 21:11
policy [1] - 11:21
policyholder [1] - 20:25
policyholders [3] - 8:14, 9:21, 10:1
pose [1] - 28:21
posed [1] - 28:7
position [6] - 7:3, 12:21, 13:25, 30:14, 40:18, 40:19
possibility [1] - 9:3

**possible** [1] - 38:1
**possibly** [2] - 20:5, 39:21
**POST** [1] - 3:4
**POYDRAS** [3] - 2:14, 2:20, 3:8
**prayer** [2] - 32:10, 33:3
**prayers** [1] - 33:4
**preclude** [2] - 33:19, 39:10
**precluded** [2] - 21:23, 35:15
**precludes** [2] - 18:5, 33:17
**prejudice** [4] - 15:4, 18:24, 22:17, 37:15
**preliminary** [10] - 5:14, 15:10, 18:5, 18:15, 25:9, 26:20, 27:10, 30:15, 33:12, 34:19
**present** [2] - 9:21, 38:11
**PRESENT** [1] - 3:6
**presume** [1] - 14:24
**prevent** [3] - 12:3, 14:21, 23:4
**prevented** [1] - 8:18
**prevents** [2] - 12:18, 12:25
**previously** [3] - 6:18, 9:9, 29:12
**problem** [11] - 14:11, 16:8, 18:15, 27:20, 27:25, 32:4, 32:13, 32:14, 32:15, 33:8, 38:19
**problems** [1] - 37:1
**procedurally** [1] - 40:19
**Procedure** [1] - 23:20
**proceedings** [7] - 16:15, 21:25, 22:1, 22:6, 23:11, 41:16, 42:8
**PROCEEDINGS** [3] - 1:14, 3:10, 5:1
**PRODUCED** [1] - 3:11
**Professional** [1] - 42:4
**prohibit** [1] - 17:1
**prohibiting** [3] - 15:13, 17:9, 28:24
**prohibits** [1] - 21:24
**proper** [1] - 33:14
**property** [1] - 8:2
**PROPERTY** [1] - 7:1
**Property** [3] - 7:2, 15:9, 15:11

**proposals** [1] - 28:1
**propose** [2] - 30:11, 36:15
**proposed** [3] - 11:9, 30:3, 31:3
**proposes** [1] - 32:18
**proposing** [1] - 30:19
**Propulsid** [1] - 21:19
**protect** [1] - 33:21
**protected** [2] - 17:25, 33:24
**protection** [5] - 7:4, 9:5, 30:13, 34:16
**prove** [1] - 19:2
**provide** [1] - 18:8
**purely** [1] - 21:20
**purports** [1] - 12:3
**purposes** [1] - 21:20
**pursuant** [1] - 9:6
**pursue** [1] - 18:11
**pursuing** [1] - 10:22
**put** [1] - 20:18
**putative** [1] - 9:20
**puts** [1] - 12:21

### Q

**QUAYSIDE** [1] - 2:6
**questionable** [2] - 24:9
**questions** [1] - 26:12
**quite** [1] - 13:8
**quoted** [1] - 14:18

### R

**race** [5] - 25:23, 25:25, 26:9
**raising** [2] - 30:1, 30:24
**rancor** [1] - 31:25
**RANKIN** [1] - 2:18
**rather** [1] - 34:16
**Rating** [1] - 37:23
**RE** [1] - 1:8
**re** [1] - 7:8
**reach** [1] - 32:7
**reached** [1] - 17:22
**read** [2] - 6:6, 17:8
**reading** [1] - 16:8
**real** [1] - 29:24
**realize** [1] - 39:12
**really** [6] - 14:19, 15:5, 16:16, 18:21, 19:25, 34:24
**Realtime** [1] - 42:3
**reason** [3] - 11:5, 17:11, 26:17

**reasonable** [1] - 31:21
**reasons** [4] - 33:13, 33:15, 34:3, 35:7
**received** [1] - 21:1
**recollection** [3] - 9:11, 10:5, 25:8
**record** [2] - 27:9, 32:25, 42:8
**RECORDED** [1] - 3:10
**Reese** [4] - 32:19, 36:16, 36:17, 38:19
**refer** [1] - 32:4
**reference** [1] - 21:18
**referring** [1] - 36:2
**reflect** [1] - 27:9
**reflected** [1] - 6:12
**refrained** [1] - 9:2
**refuses** [1] - 38:20
**regard** [1] - 15:17
**regardless** [1] - 37:6
**Registered** [2] - 42:3, 42:4
**regular** [1] - 7:13
**related** [1] - 7:12
**released** [1] - 16:19
**relied** [4] - 34:5, 34:13, 34:16, 35:6
**relief** [2] - 9:8, 20:10
**rely** [1] - 34:15
**remanded** [3] - 19:23, 20:3, 20:6
**remedy** [1] - 23:23
**repeatedly** [1] - 13:20
**replied** [1] - 9:15
**REPORTER** [2] - 3:8, 36:7
**Reporter** [6] - 42:3, 42:4, 42:5, 42:14
**REPORTER'S** [1] - 42:1
**represent** [1] - 26:18
**representing** [1] - 38:3
**represents** [1] - 6:1
**request** [1] - 5:20
**require** [2] - 17:7, 23:20
**required** [1] - 13:3
**res** [2] - 16:20, 18:2
**resolution** [4] - 13:18, 18:12, 27:15, 28:10
**resolved** [1] - 32:17
**respect** [7] - 9:1, 18:25, 19:1, 19:25, 26:1, 35:18, 37:12
**respectfully** [1] - 14:4
**respond** [1] - 26:13
**responded** [1] - 14:18
**response** [4] - 16:16,

18:9, 21:1, 21:5
**responses** [1] - 16:17
**restated** [1] - 20:24
**restrain** [1] - 10:9
**restraining** [3] - 15:7, 15:12, 35:10
**restraint** [1] - 9:6
**result** [1] - 27:24
**resulted** [1] - 27:22
**results** [1] - 10:23
**reurge** [1] - 35:15
**reurging** [1] - 35:15
**Revised** [1] - 21:4
**rhetoric** [1] - 32:1
**ridiculous** [1] - 31:10
**rights** [2] - 22:17, 22:18
**rise** [1] - 5:6
**risk** [3] - 11:8, 28:22, 31:13
**RIVER** [1] - 2:12
**RMR** [2] - 3:8, 42:13
**road** [2] - 17:3, 41:5
**ROAD** [2] - 2:12, 2:23
**Road** [5] - 7:9, 9:12, 9:13, 9:21, 9:22
**ROBERT** [1] - 2:11
**ROLFS** [29] - 3:2, 5:24, 6:2, 6:10, 6:21, 6:25, 7:24, 11:7, 12:9, 12:12, 12:16, 12:20, 13:8, 14:7, 28:17, 29:11, 29:15, 29:18, 31:5, 31:7, 31:10, 32:9, 32:20, 33:7, 33:10, 37:18, 38:5, 38:8, 38:12
**Rolfs** [18] - 3:3, 5:23, 6:1, 6:5, 6:24, 7:1, 11:1, 14:6, 26:13, 27:20, 28:1, 28:8, 28:12, 28:16, 32:18, 37:21, 39:22, 40:2
**Rolfs'** [3] - 14:12, 16:25, 40:8
**ROLFS.....................
.................... [4] -
4:5, 4:8, 4:10, 4:12
**room** [2] - 22:22, 38:1
**ROOM** [1] - 3:8
**ROUGE** [1] - 3:4
**rubber** [1] - 17:3
**rule** [2] - 19:16, 37:13
**ruled** [1] - 14:10
**rulings** [1] - 27:14
**run** [7] - 11:7, 23:5, 23:11, 23:15, 25:16, 34:21, 34:22

### S

**s/Cathy** [1] - 42:12
**SACHSE** [1] - 3:2
**sanction** [3] - 9:2, 11:2, 29:23
**satisfy** [1] - 32:2
**saves** [2] - 14:1, 14:2
**SCHMEECKLE** [1] -
2:19
**screaming** [1] - 39:14
**seated** [2] - 5:7, 18:16
**second** [2] - 24:25, 36:6
**secondly** [1] - 33:25
**see** [7] - 13:3, 14:20, 36:19, 36:21, 38:10, 39:15, 40:18
**seek** [1] - 27:10
**seeking** [1] - 35:5
**senior** [1] - 10:5
**sense** [5] - 13:18, 13:24, 28:9, 31:13, 39:22
**sent** [3] - 17:20, 20:22, 30:10
**separate** [2] - 17:12, 26:17
**seriously** [1] - 32:12
**servants** [1] - 8:22
**serve** [1] - 28:6
**services** [1] - 36:21
**SETH** [1] - 2:19
**settle** [9] - 8:23, 12:4, 12:19, 13:4, 15:15, 29:2, 31:3, 31:4, 31:11
**settled** [1] - 15:23
**settlement** [45] - 7:17, 7:20, 7:21, 8:1, 8:2, 8:9, 8:19, 10:15, 13:5, 13:6, 13:11, 14:22, 14:23, 16:3, 16:10, 16:13, 16:19, 17:2, 17:4, 17:5, 17:22, 18:3, 22:13, 22:14, 22:15, 22:22, 25:1, 25:2, 27:17, 29:4, 29:9, 30:21, 31:1, 31:3, 31:9, 31:22, 32:6, 32:7, 32:17, 35:22, 36:20, 39:11, 40:22
**settlements** [1] -
34:19
**settling** [4] - 11:3, 12:3, 12:18, 16:2
**sever** [1] - 35:9
**several** [2] - 19:11,

20:10
**severed** [1] - 19:23
**sheet** [1] - 5:12
**show** [1] - 21:22
**side** [2] - 6:11, 24:22
**sides** [1] - 41:8
**sign** [2] - 5:12, 13:5
**signed** [1] - 5:12
**similar** [1] - 5:15
**simple** [3] - 7:3, 11:10, 30:20
**simply** [3] - 14:5, 38:20, 40:9
**single** [1] - 19:6
**sit** [5] - 22:21, 22:22, 40:6, 40:15, 40:21
**sites** [1] - 15:20
**sits** [1] - 28:12
**sitting** [1] - 27:16
**situation** [2] - 34:7, 34:25
**sky** [2] - 29:25
**so-called** [3] - 5:16, 33:18, 33:25
**solve** [1] - 33:8
**someone** [1] - 17:2
**sometimes** [2] - 40:1
**sorry** [2] - 36:5, 38:16
**sort** [6] - 13:15, 25:8, 34:24, 35:9, 39:13, 40:12
**sounds** [1] - 34:8
**SOUTHWEST** [1] - 2:4
**speaking** [1] - 5:25
**speaks** [1] - 25:1
**specific** [1] - 20:15
**specifically** [1] - 15:17
**Spell** [1] - 36:7
**spend** [1] - 31:11
**spending** [1] - 33:4
**spent** [1] - 37:22
**SPRINGS** [1] - 2:4
**ST** [1] - 2:14
**stand** [1] - 37:6
**standpoint** [2] - 31:12, 31:13
**State** [8] - 5:10, 19:7, 19:13, 20:1, 20:2, 24:17, 24:18, 27:1
**STATE** [1] - 1:4
**state** [40] - 7:5, 9:15, 9:19, 9:20, 9:24, 9:25, 10:9, 10:21, 11:2, 11:12, 11:16, 16:15, 19:7, 22:1, 23:6, 23:7, 23:9, 23:11, 23:22, 24:3, 24:5, 24:16, 25:17, 25:18, 25:19, 26:9, 27:13, 30:7, 30:9,

33:18, 34:2, 34:11, 34:21, 35:1, 35:2, 35:4, 40:5, 41:6
**State's** [1] - 20:15
**States** [4] - 10:20, 24:7, 42:5, 42:15
**STATES** [2] - 1:1, 1:15
**statute** [1] - 15:21
**Statute** [1] - 21:4
**stay** [2] - 21:24, 35:9
**STENOGRAPHY** [1] - 3:10
**step** [1] - 22:7
**Stephen** [1] - 6:3
**STEPHEN** [21] - 1:19, 2:22, 4:6, 6:3, 6:12, 6:16, 6:22, 14:9, 14:14, 14:17, 16:6, 16:22, 17:11, 17:19, 18:20, 18:22, 25:11, 26:14, 35:11, 35:16, 37:16
**STEVEN** [1] - 2:8
**still** [2] - 20:14, 22:11
**stop** [1] - 16:23
**strategy** [1] - 22:7
**Street** [1] - 36:9
**STREET** [1] - 1:22, 1:24, 2:20, 3:8
**structure** [1] - 37:24
**subject** [10] - 7:6, 8:12, 9:10, 16:5, 18:10, 18:23, 20:8, 20:13, 24:8, 35:3
**submissions** [1] - 11:15
**submitted** [3] - 6:13, 6:18, 32:7
**subrogation** [1] - 10:2
**successfully** [1] - 9:17
**suggest** [3] - 14:4, 36:10, 37:4
**suggested** [2] - 14:12, 18:8
**suggesting** [1] - 39:19
**suggestion** [6] - 11:9, 16:25, 17:21, 28:20, 30:2, 30:11
**suggestions** [1] - 18:14
**SUITE** [5] - 1:22, 2:6, 2:12, 2:15, 2:20
**Sullivan** [28] - 11:6, 13:5, 14:12, 14:25, 16:4, 16:7, 16:18, 16:23, 17:1, 17:7, 18:3, 22:24, 23:18, 23:19, 23:23, 24:4, 27:8, 27:10, 27:12, 29:7, 29:8, 29:14,

29:17, 30:4, 30:11, 32:3, 32:12, 36:15
**Sullivan's** [8] - 11:10, 12:2, 12:17, 15:7, 18:4, 26:19, 28:6, 33:15
**summary** [1] - 27:17
**supplemental** [2] - 20:18, 22:4, 24:13, 25:17, 30:5
**supposed** [1] - 20:3
**Supreme** [3] - 10:20, 24:1, 41:11
**surprised** [1] - 40:12
**system** [2] - 39:25, 41:9
**systems** [3] - 39:25, 40:1, 40:5

## T

**table** [4] - 13:21, 22:22, 28:3, 33:1
**technical** [1] - 9:17
**teleconference** [1] - 27:21
**temporary** [1] - 30:14
**terms** [2] - 13:21, 37:24
**testimony** [1] - 6:15
**THE** [78] - 1:14, 1:18, 2:13, 2:18, 4:9, 4:13, 4:15, 4:18, 4:21, 5:6, 5:7, 5:9, 5:11, 5:25, 6:5, 6:11, 6:14, 6:17, 6:24, 7:23, 11:5, 11:25, 12:10, 12:13, 12:17, 12:24, 14:6, 14:8, 14:11, 14:15, 15:6, 16:21, 16:25, 17:13, 17:17, 18:16, 18:19, 25:8, 26:13, 27:5, 28:16, 29:7, 29:14, 29:16, 31:3, 31:6, 31:9, 32:2, 32:12, 32:22, 33:6, 33:9, 33:11, 35:13, 35:17, 35:25, 36:4, 36:6, 36:7, 36:14, 36:18, 37:9, 37:17, 37:19, 38:6, 38:9, 38:13, 38:23, 39:1, 39:6, 39:10, 39:15, 40:14, 40:18, 40:24, 41:1, 41:5, 41:9
**the-sky-is-falling** [1] - 29:25
**theory** [2] - 19:15, 19:16

**therefore** [1] - 21:12
**therein** [1] - 7:8
**they've** [2] - 11:3, 31:14
**thinking** [1] - 37:20
**third** [1] - 37:11
**thirds** [1] - 20:1
**threat** [1] - 29:24
**three** [6] - 7:11, 8:17, 10:14, 13:24, 24:13, 30:6
**thrilled** [1] - 32:9
**THURSDAY** [2] - 1:5, 23:25
**tiers** [1] - 20:10
**timely** [3] - 11:17, 21:3, 21:14
**TO** [2] - 1:10, 34:21
**today** [5] - 5:23, 28:12, 40:12
**together** [5] - 13:2, 19:18, 37:25, 39:21, 41:12
**towards** [1] - 8:1
**tract** [2] - 20:21, 27:1
**transcript** [1] - 42:7
**TRANSCRIPT** [2] - 1:14, 3:10
**Travelers** [1] - 25:10
**treating** [1] - 11:21
**trial** [2] - 35:3, 35:12
**trials** [1] - 7:16
**tried** [3] - 11:6, 26:15, 34:21
**TRO** [3] - 9:9, 22:4, 33:16
**true** [5] - 9:22, 11:3, 16:7, 25:25, 42:7
**try** [1] - 19:17
**trying** [5] - 13:2, 13:19, 14:20, 16:9, 23:15, 31:11, 31:18, 38:21
**Tuesday** [1] - 8:17
**two** [4] - 5:15, 16:16, 20:1, 33:1
**two-thirds** [1] - 20:1
**type** [1] - 12:5

## U

**U.S** [1] - 18:4
**umbrella** [4] - 5:16, 5:18, 5:19, 36:20
**unable** [2] - 11:2, 11:12
**unclear** [1] - 20:17
**under** [17] - 12:14, 15:20, 16:13, 19:2,

19:9, 19:24, 20:11, 21:3, 21:8, 21:11, 21:13, 21:23, 22:11, 24:14, 31:21
**underlying** [2] - 8:21, 28:21
**undermined** [1] - 25:16
**undermines** [1] - 38:21
**understood** [1] - 39:2
**undertake** [1] - 8:23
**undertook** [1] - 29:21
**underway** [1] - 8:3
**unenforceable** [1] - 14:5
**unfortunate** [2] - 24:22, 39:24
**unheard** [1] - 13:6
**uniformly** [1] - 24:3
**UNITED** [2] - 1:1, 1:15
**United** [4] - 10:19, 24:7, 42:5, 42:15
**unless** [3] - 32:17, 33:1, 35:11
**unringing** [1] - 36:11
**unwilling** [1] - 31:15
**up** [5] - 8:5, 13:2, 14:4, 22:18, 32:3
**usual** [2] - 11:22, 34:25

## V

**vague** [1] - 26:6
**various** [2] - 6:18, 8:12
**vast** [1] - 12:14
**verbatim** [1] - 14:18
**verify** [1] - 7:25
**version** [1] - 21:8
**versus** [2] - 5:10, 21:9
**view** [5] - 8:1, 8:11, 9:23, 17:5, 17:8
**views** [2] - 13:14, 18:10
**violate** [2] - 25:5, 29:8
**virtual** [1] - 25:23
**virtue** [2] - 8:20, 10:19
**voice** [1] - 30:24
**voluntary** [2] - 36:23, 39:18
**vote** [2] - 30:23, 31:2
**voted** [1] - 28:1

## W

**wait** [1] - 17:17

**wants** [1] - 7:4
**waste** [1] - 29:20
**water** [1] - 21:9
**week** [1] - 11:9
**whatsoever** [5] - 15:15, 28:3, 29:1, 29:3, 39:4
**WHEATON** [1] - 2:18
**WHEREUPON** [1] - 41:16
**whole** [2] - 15:12, 32:4
**wide** [1] - 12:14
**willing** [3] - 40:16, 40:21, 41:3
**willingness** [3] - 40:8, 40:9, 40:10
**WILSON** [1] - 3:2
**wind** [1] - 21:9
**wipe** [1] - 13:12
**wishes** [1] - 12:18
**wishful** [1] - 37:19
**withdraw** [1] - 30:14
**wondering** [1] - 17:13
**word** [1] - 30:7
**words** [1] - 40:8
**wrap** [2] - 13:2, 14:4
**wrap-up** [1] - 14:4
**writ** [2] - 20:9, 24:2
**writs** [3] - 23:25, 24:1, 24:2
**Writs** [3] - 20:11, 22:11, 23:3
**written** [3] - 33:13, 34:3, 35:7

## Y

**years** [6] - 7:11, 8:17, 10:14, 10:20, 13:24, 37:22

## Z

**zero** [1] - 29:20