# APPENDIX E

474.   The attempted decomposition of the life-cycle effects of the MR-GO by the Defendants is a classic mistake in development of accurate and realistic understandings of the behavior of real complex "systems."  Exh. 90, Bea Supp. Decl. (Oct. 2008) at ¶10(b).

475. Synthesis—or understanding the behavior of the entire system (assembly of components)—must take place before there are attempts to decompose the system to develop additional insights into workings of components and their interactive and interdependent relationships with other components.  Exh. 90, Bea Supp. Decl. (Oct. 2008) at ¶10(b) (emphasis in original).

**Defendant's Experts Flawed Analysis**

476.   There are other flaws in the Defendant's criticism of Plaintiffs' modeling results. For example, Defendant focuses almost exclusively on only two measurements of the MR-GO's impact—maximum surge and wave height.  Exh. 93, Kemp Supp. Decl. (Oct. 2008) at ¶¶10, 12(a), 19-27, 29-32; Exh. 90, Bea Supp. Decl. (Oct. 2008) at ¶4; Exh. 81, Bea Expert Report (Jan. 2009) at pp. 22-34.

477.   Like IPET, Defendant's experts' modeling largely ignores waves and their adverse effects on the LPV system in the relevant area.  Exh. 94, Kemp Expert Decl. (Jan. 2009) at pp. 10-14; Exh. 91, Kemp Expert Report (July 2008) at p. 83.

478.   Defendant's expert's modeling—and conclusions about the MR-GO's impact on surge and significant wave height—are skewed by erroneous assumptions about the Reach 2 topography and relevant features (channel and land separating the channel from the LPV berm) and boundary conditions.  Exh. 94, Kemp Expert Decl. (Jan. 2009) at pp. 12-14, 25.

479.   Defendant's experts do not address the impact of progressive wetlands on the flooding consequences.  Exh. 94, Kemp Expert Decl. (Jan. 2009) at p. 30.

480. Defendant ignores three more reliable measurements—time of onset, duration, and rate of structure overtopping by surge. Exh. 93, Kemp Supp. Decl. (Oct. 2008) at ¶¶10, 12(a), 19-27, 29-32; Exh. 90, Bea Supp. Decl. (Oct. 2008) at ¶4.

481. Defendant also mischaracterizes Plaintiffs' modeling data demonstrating that the MR-GO had a direct effect on substantially increasing oceanographic stresses on the LPV flood control structures due to earlier onset and more prolonged duration of surge above a critical elevation. Exh. 93, Kemp Supp. Decl. (Oct. 2008) at ¶¶10, 12(a), 19-27, 29-32; Exh. 90, Bea Supp. Decl. (Oct. 2008) at ¶4.

482. Defendant further ignores the destructive role of wave side attack—before overtopping—in the failure of the EBSBs along Reach 2. Exh. 90, Bea Supp. Decl. (Oct. 2008) at ¶5(b).

483. There are numerous flaws in the computer modeling by Defendant's three experts— Westerink, Ebersole, and Resio—including use of a Beta version of ADCIRC (SL-15), random results, inaccurate input data, and others. Exh. 93, Kemp Supp. Decl. (Jan. 2009) at pp. 4-6, 13-14; Exh. 94, Kemp Expert Decl. (Jan. 2009) at pp. 25-30; Exh. 82, Bea Expert Report. (Jan. 2009) at pp. 167-199; Exh. 106, Vrijling, Joint declaration, Vrijling, Kok, de Wit, and Gautier concerning wave and flow modeling New Orleans -- MRGO for Hurricane Katrina, August 2005 (Jan. 2009) at p. 12.

## DAMAGE TO LPV STRUCTURES CAUSED BY MR-GO'S EXACERBATION OF STORM PARAMETERS

**Catastrophic Failures**

484. The LPV flood protection system failed catastrophically, producing the single most massive failure of an engineered system in United States history. Over 170 of the 350 miles of the LPV system were either destroyed or damaged at 50 different locations, primarily as a result