## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br>NO. 05-4182 |
| PERTAINS TO: *Robinson* (06-2268) | SECTION "K"(2) |

### ORDER AND REASONS

At the conclusion of the trial, the issue of the admissibility of eleven proffers made by the United States was raised by counsel. The Court established a briefing schedule which has concluded. (Doc. 18842). Having reviewed the briefs and the relevant materials, the Court is prepared to rule.

**Proffer Defense Number 1, Witness Tanya Smith, General Topic DX73, DX 74, DX 75**

The testimony and exhibits at issue concern the authenticated excerpts from the FEMA files of Anthony Franz, Kent Lattimore and Tanya Smith. The exhibits establish that FEMA awarded Disaster Assistance Grants under the Stafford Act to Anthony Franz in the amount of $21,842 in November of 2005; it awarded Kent Lattimore grants of $1,734 in October of 2005 and $17,487.29 in March of 2006; and FEMA initially awarded Tanya Smith grants totaling $4,358 but it notified her that the grants were miscalculated and that $1,818 should be returned. Ms. Smith apparently returned only $50.00. The Government contends that these "benefits" are like TRICARE and CHAMPUS, that the FEMA payments were funded by the United States without contributions from plaintiffs, and the payments therefore are not collateral source payments and should be deducted from any recovery made by these plaintiffs. *Kenney v. United States*, 750 F. Supp. 206 (W.D. La. 1990).

In Louisiana, the collateral source rule provides that "a torfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tort-feasor's procuration or contribution." *Bozeman v. State of Louisiana*, 879 S.2d 692, 698 (La. 2004). The moneys paid through the Stafford Act by FEMA were for emergency food and housing necessitated by plaintiffs' being displaced by the flooding of their properties. None of the these plaintiffs is seeking compensation for displacement losses; rather, they seek compensation for expenses such as mortgage payments and insurance payments for uninhabitable homes or offices. As such, a double recovery is neither being sought nor will it be awarded. Accordingly,

**IT IS ORDERED** that the request for the Admission of Defense Proffer Number 1 is **DENIED**.


**Proffer Defense Numbers 2 and 3, Witness Bruce Ebersole, Resio Supplement**

As plaintiffs have withdrawn their prior objections to these proffers,

**IT IS ORDERED** that the request for the Admission of Defense Proffer Numbers 2 and 3is **GRANTED**.


**Proffer Defense Numbers 4 and 5, Witness Reed Mosher, Lateral Deformation**

The Government seeks to have admitted the proffered testimony of witness Reed Mosher to address Dr. Bea's testimony that 50% of the central section of Reach 2 between Bayou Bienvenue and Bayou Durpe was subject to the MRGO-induced levee sinkage. (Tr. 1112:15-

24). This opinion as to the percentage of causation was contained in an April 3rd report of Dr. Bea which was withdrawn as untimely prior to trial.

Rather than filing an objection to these proffers, Plaintiffs filed "Plaintiffs' Counter-Proffer to Dr. Reed Mosher and Dr. Thomas Wolff's Proffers 4,5 and 10." This filing consists primarily of a six page declaration of Dr. Bea and a page of charts. In many respects, this document consists of argument and briefing; however, the Court will not allow it as a counter-proffer as it is in essence the un-cross-examined testimony of Dr. Bea.

While the Court believes that it was correct in its original ruling, considering the complexity of the issue and the fact that plaintiffs did not file a proper objection to this motion, the Court will allow Proffers 4 and 5 to be admitted. However, Plaintiffs will be allowed an additional five pages of briefing to address this additional testimony to the extent it is used by the United States in its briefing due on July 20, 2009. Accordingly,

**IT IS ORDERED** that the request for the Admission of Defense Proffer Numbers 4 and 5is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs will allowed an additional five pages of briefing in their Reply due on August 3, 2009 to address this additional testimony to the extent that it is referenced by the United States in its Post-Trial Brief due on July 20, 2009.

**Proffer Defense Numbers 6-9, Witness Johanes Westerink, Flux**

These proffers pertain to the flux plots that were generated from DX 1757 which is the ADCIRC output data file of storm surge simulations that formed the basis of the opinions set forth in the expert report of Johannes Westerink. In essence, the United States maintains these

proffers and the relevant exhibits should be allowed because "they simply combine the data from the elevation plots and the velocity plots into a single plot showing how the volume of surge varies throughout the region during the storm." (Doc. 1899 at 10). Indeed, they contend that the exhibits are nothing more than demonstrative evidence.

Nonetheless, it became clear to the Court at the time of trial that such a description in large part misses the mark. See Trial Transcript pp. 3761-3762. The United States stated that it was only with these documents that one "really begin[s] to appreciate what really delivers the water." *Id*. Plaintiffs objected to them because these documents were not included in the expert report and were not discussed during the deposition of Mr. Westerink. Indeed, in response to the direct questioning by the Court as to when the flux charts at issue were prepared, Dr. Westerink responded "five or six days ago." (Trial Transcript at 3773). This statement was made on May 12, 2009 which places the generation of these materials on May 6th or 7th; trial commenced on April 20, 2009. The prejudice to plaintiffs is patently obvious as there was no previous indication to plaintiffs that this kind of evidence as regards flooding generated by this expert's model was available or prepared. In addition, there was on-going conflict with whether the Government had even complied with prior orders of the Court concerning the production of the materials that were the basis for the Westerink report. Thus, and for the reasons stated in the record,

**IT IS ORDERED** that the request for the Admission of Defense Proffer Numbers 6, 7, 8 and 9 is **DENIED**.

**Proffer Defense Number 10, Witness Wolff, Kaufman and Weaver**

This proffer concerns testimony about a published article that discusses the testing conducted on levees at the Atchafalya River, DX3. The testimony contains a description of the authors' description of the potential influence of the GIWW on the Atchafalya levees demonstrating in the witness's opinion that the Corps was actually studying the stability of the levees next to a waterway. Plaintiffs have not filed an opposition to this proffer, only the afore-mentioned "Plaintiffs' Counter-Proffer to Dr. Reed Mosher and Dr. Thomas Wolff's Proffers." Any rebuttal by argument to this testimony may be included in the additional briefing pages allowed with respect to the testimony of Read Mosher. Accordingly,

**IT IS ORDERED** that the request for the Admission of Defense Proffer Number 10 is **GRANTED**.

**Proffer Defense Number 11, Witness Scott Taylor, DX 32 and 33**

As plaintiffs maintain no objection to this proffer,

**IT IS ORDERED** that the request for the Admission of Defense Proffer Number 11 is **GRANTED**.

**IT IS FURTHER ORDERED** that as a result of these rulings the following pages of testimony shall be considered part of the record:

| | |
|---|---|
| Defense Proffer 2 | Pages 2196-2198 |
| Defense Proffer 3 | Pages 2216-2224 |
| Defense Proffer 4 | Pages 2989-2991 |
| Defense Proffer 5 | Pages 3013-3055 |

Defense Proffer 10    Pages 3992

Defense Proffer 11    Pages 1655

New Orleans, Louisiana, this  30th  day of June, 2009.

                              **STANWOOD R. DUVAL, JR.**
                    **UNITED STATES DISTRICT COURT JUDGE**