**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: KATRINA CANAL BREACHES** | * | **CIVIL ACTION** |
| **CONSOLIDATED LITIGATION** | * | |
| | * | **NO. 05-4182** |
| | * | |
| **PERTAINS TO: INSURANCE** | * | **SECTION "K"(2)** |
| **Master Consolidated Class Action** | * | |
| **Complaint (Doc. 3413)** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**THE PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR RECONSIDERATION, OR ALTERNATIVELY, TO MODIFY**
**THE COURT'S ORDER STRIKING CLASS ALLEGATIONS**
**FROM THE MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

MAY IT PLEASE THE COURT:

Pursuant to Federal Rules of Civil Procedure 23(c)(1) and 59(e), the Plaintiffs, through

the Court's Appointed Liaison Counsel and Insurance Liaison Counsel, together with the Court's

Appointed Plaintiffs Steering Committee (collectively referred to as "the Insurance PSLC"),

submit this memorandum in support of their Motion for Reconsideration, or Alternatively, to

Modify this Honorable Court's June 16, 2009, *Order and Reasons* (Doc. 19005), granting the

Insurance Company Defendants' *Motion to Strike the Class Allegations* (Doc. 16711) contained

in the *Master Consolidated Class Action Complaint* (Doc. 3413).  Reconsideration and/or

modification of the Court's June 16, 2009, Order is warranted, and the Insurance Company

Defendants' *Motion* should be denied, because:

(1) the bad faith (or Louisiana statutory penalties) claims contained in the *Master Consolidated Class Action Complaint* (Doc. 3413) satisfy the predominance requirement for class action treatment;

(2) the United States Supreme Court's recent grant of a petition for writ of certiorari in a case involving the interplay between Federal Rule of Civil Procedure 23, CAFA and underlying state insurance penalty laws bears directly upon this Court's interpretation and application of federal and state law to determine the propriety of class treatment in this action; and, at the very least,

(3) justice compels this Court to modify its prior ruling reinstating the Plaintiffs' class allegations, at least in part, and referring this entire matter to Magistrate Judge Wilkinson for consideration and review as part of the ground-breaking coordinated effort with various state court judges to compromise several of the underlying insurance claims arising from Hurricanes Katrina and Rita contained in the *Master Complaint*, and which this Court has been instrumental in advancing with the Honorable Carl J. Barbier.

For the following reasons, the Plaintiffs respectfully request this Court grant their motion for reconsideration and/or modification.

## I.   FRCP 23 DOES NOT PROHIBIT CLASS CERTIFICATION OF STATUTORY INSURANCE PENALTY CLAIMS

The Plaintiffs respectfully request the Court reconsider or, in the alternative, modify its Order dated June 16, 2009, relating to the certification of this case as a class action for failure to satisfy the predominance requirement of Rule 23. The Court's Order, among other things, granted the Defendant Insurance Companies' *Motion to Strike Class Allegations* (Doc. 16711), striking the claims involving allegations of breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Louisiana laws prohibiting bad faith by insurers, and breach of fiduciary duty on the grounds that individual issues predominate over those common to the class. The Plaintiffs acknowledge that the Court wrote a carefully reasoned decision. While the

2

Plaintiffs do not challenge all of the arguments expressed in the Court's ruling, the Plaintiffs respectfully disagree with the finding that the bad-faith-type claims (or Louisiana statutory penalty claims) fail the predominance requirement for class action treatment. And, so the Plaintiffs ask the Court to reconsider or modify its June 16, 2009, Order, at least in part.

The linchpin of the Court's ruling is stated on page 11 of the June 16, 2009, Order: "A significant issue in all of these claims will include the *reasonableness* of the Defendants' conduct." *Id.* (emphasis added). Yet, the notion of "reasonableness" encompasses differing standards and outcomes depending upon the application to the underlying claim. The key insight that the Plaintiffs urge for reconsideration centers on the two distinct kinds of claims (contract-breach and bad-faith) stated in the *Master Complaint* that involve two very different kinds of "reasonableness." One kind might raise individualized issues, but the other merits class treatment.

At first glance, the Plaintiffs' argument turns on a facially subtle distinction, but yet an important distinction which triggers certification in one setting while denying it in another. This distinction is often overlooked; but when examined carefully, provides a clear basis for granting reconsideration and denying the Insurance Company Defendants' *Motion to Strike Class Allegations* (Doc. 16711).

## A.      The Law Uses "Reasonableness" in Two Very Different Senses

The legal concept of "reasonableness" is defined by the underlying claim and the facts and law associated with that claim. Sometimes the law requires a person to act reasonably. The law of negligence does this. The law of contract does as well, although it less commonly uses the

term "reasonable" to describe the required conduct.  What both negligence and contract laws do is to specify a certain conduct as the desired course of conduct—what the reasonable person would do—and then require the defendant to follow that course, at the very least.

In other situations, the law accords persons much greater freedom to act.  In those situations, the law does not require a desired course of conduct, but instead imposes only a bare minimum standard of conduct—the minimum that a rational person would do.  In such a case, the law asks only whether the defendant had a basis in reason for his or her conduct.  For example, an administrator must act reasonably, but a court will not actually dictate what the administrator must decide.  The court simply specifies a minimal standard of rationality or "reasonableness" for the administrator.  Unfortunately, this usage often times leads the law to use "rational" and "reasonable" as equivalents.  Yet, "rational" and "reasonable" are not truly equivalents, but rather purely context determinative.  And, it is the use of these competing terms in certain contexts and situations which leads to the confusion with the term "reasonableness" in the case at bar.

Thus, there are desired-conduct standards and minimal-conduct standards that both fall within the terminology of "reasonableness."  A standard of specified "reasonable conduct" is very different from a standard that requires conduct merely to have a "reasonable basis."  The former defines what a defendant must do in terms of how the reasonable person would act, while the latter simply requires the defendant to act with minimal rationality or, as it is confusingly phrased, with "reasonableness."

This distinction is clearly illustrated by considering this distinction in its more familiar context, namely, criminal law.  When courts ask whether probable cause exists for a stop and

search, they do not apply a standard of desired (and hence "reasonable") conduct on the police, but instead apply a lesser standard of whether there was some reason supporting the police conduct (making it "reasonable").  The two tests share the use of the word "reasonable," but they are very different.  A standard of specified "reasonable conduct" for the police is very different from a standard that requires police conduct merely to have a "reasonable basis."

Another common setting where this distinction is critical is a negligence jury trial.  When a jury finds negligence, it finds that the defendant failed to act "reasonably."  But when a judge faces the defendant's directed verdict motion in that case, the judge must ask whether a "reasonable" juror could find negligence.  The judge on that motion is looking for the minimal level of rational decision-making by the jury.

Accordingly, the determination of class certification (or whether to strike class allegations) is dependent upon the substantive law governing the underlying claim and the question of "reasonableness" placed upon the defendant's conduct.  Because the penalty claims contained in the *Master Complaint* raise minimal standards of "reasonableness," class certification of those claims is appropriate.  This conclusion is consistent with the state substantive law governing these claims and all applicable federal procedural law governing the question of certification.  As such, this Court should grant the Plaintiffs' motion for reconsideration, reinstate the Plaintiffs' class allegations, and deny the Insurance Company Defendants' *Motion to Strike Class Allegations.*

**B.     This Case Involves Some Claims Using Reasonable in One Sense and Other Claims Using Reasonable in the Other Sense—and They Are Markedly Different with Regard to Class Treatment**

The *Master Complaint* (Doc. 3413) asserts breach-of-contract claims, such as the one for the Insurance Company Defendants' failure to pay the full damages and losses suffered by the Plaintiffs or policyholders.  These claims fall under the desired-conduct form of "reasonableness."  The *Master Complaint*, however, also asserts a series of claims based on bad-faith, doing so on behalf of both the homeowners and the commercial policyholders classes. As previously noted, these claims are of the minimal-conduct sort, alleging that the insurers did not live up to the minimal demands of good-faith and fair dealing required by state substantive law. The allegations here are that the Insurance Company Defendants had no arguable or legitimate basis for denying the claims *en masse*, but instead acted in an arbitrary and capricious manner. There was an industry-wide approach to denying valid common claims for inappropriate reasons. For example, the Insurance Company Defendants gave the "flood" exclusion a broad reading so that they could just deny claims out of hand.  The result was that they unreasonably delayed in adjusting the claims and indeed neglected altogether to investigate or consider policyholders' valid common claims, even though the policyholders possessed uniformly covered claims (e.g., loss of use).  This action is separate and apart from the issue of whether coverage existed as a result of any levee breaches.  In sum, the *Master Complaint* alleges the group of insurers did not treat the class of insureds with that minimal standard that the law calls "reasonableness." Therefore, the dismissal of these claims was respectfully improper, and the Plaintiffs should be permitted to proceed with class discovery and eventually a certification hearing on these penalty claims.

Admittedly, claims of the desired-conduct sort can often be individualized and hence, class certification of such claims is often denied. But claims of the minimal-conduct sort (such as the penalty claims contained in the *Master Complaint*) present issues that are predominantly common to the whole class. The latter sort of penalty claims merit class treatment. Indeed, such claims are the sort of claims for which Federal Rule of Civil Procedure 23 was created.

Therefore, the Court should grant the Plaintiffs' Motion for Reconsideration.

**C.      The Court's June 16, 2009, Order Erroneously Struck the Plaintiffs' Class Allegations Relating to Their Penalty Claims**

The Plaintiffs respectfully suggest the Court erred in grouping all of the class allegations contained in the *Master Complaint* in considering whether the requirements of Rule 23 were satisfied. As noted above, the class allegations involving breaches of contract are clearly distinct from the penalties allegations for purposes of determining class treatment. In the very heart of the Court's June 16, 2009, Order, the Court explained its rationale for granting the Insurance Company Defendants' *Motion to Strike*, at pages 10-11, and found its reasoning applied to all of the Plaintiffs' remaining claims:

> . . . These claims inherently require individualized fact-specific inquiries because they depend upon whether the Defendants failed to properly adjust and pay for Hurricane Katrina-related property claims. As persuasively argued by Defendants, this Court would have to delve into individualized inquiries regarding the nature and extent of a property owner's damage, the source of damage (*i.e.*, wind versus flood), the timing and adjustment of claims, the market conditions when that claim was adjusted, whether each class member complied with his post-loss duties, how much each class member was paid and for what damage that payment was made, and whether any supplemental payments were timely and sufficient to satisfy the claim. Mot. at 6-7.

7

A significant issue in all of these claims will include the *reasonableness* of the Defendants' conduct. The Fifth Circuit has generally held that if a court must evaluate the reasonableness of a defendant's conduct towards individual plaintiffs, such issues predominate over issues that are common to the class.

*Order and Reasons,* June 16, 2009, pp. 10-11 (Doc. 19005) (emphasis added).

This Court's ruling has validity for a claim that turns on a defendant's desirable behavior, as perhaps in a breach-of-contract claim for failing to fully pay a valid Hurricane Katrina wind-related property damage claim. Nevertheless, the Plaintiffs respectfully suggest that the application of the same "reasonableness" standard to an insurance penalty claim is inappropriate. Furthermore, the Plaintiffs respectfully suggest the Court, at page 12 of its June 16, 2009, Order, erred in applying this same breach-of-contract "reasonableness" standard in ruling that Plaintiffs' penalty claims should also be stricken:

> . . . Plaintiffs' claim for bad faith under La. Rev. Stat. § 22:658, now codified at § 22:1892, "requires a showing that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1112-13 (La. 2008). The Louisiana Supreme Court explained in *Louisiana Bag* that "penalties [under § 22:1892] should be imposed only when the facts 'negate probable cause for nonpayment.'" *Id*. at 1114 (quoting *Guillory v. Travelers Ins. Co.*, 294 So.2d 215, 217 (La. 1974)). In assessing this *probable cause*, a court must assess the insurer's conduct, which "depends on the facts known to the insurer at the time of its action, and this court has declined to assess penalties 'when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense.'" *Id*. (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003)). Accordingly, this Court would be required to analyze the ***reasonableness*** of any insurer's denial of coverage in determining whether a claim for bad faith exists under § 22:1892.

*Order and Reasons,* June 16, 2009, p. 12 (Doc. 19005) (emphasis and bold added).

The Court similarly noted the same "reasonableness" standard would apply to other penalty claims contained in the *Master Complaint*. *Id.* at 13 ("Similarly individualized inquiries would

be needed for alleged violations of the implied covenant of good faith and fair dealing, as well as a statutory claim for violation of good faith and fair dealing under La. Rev. Stat. § 22:1220 (now § 22:1973 ")).

Yet, the standard of behavior applicable in these bad-faith-type penalty claims is not whether the insurers behaved "reasonably"—which would require the court to determine what a reasonable insurer would do in the individualized circumstances—but rather whether the group of insurers, in denying payment to the class members after Hurricane Katrina, lacked a reasonable basis for their behavior.  It is for this reason La. R.S. § 22:658 talks of behavior that "is arbitrary, capricious or without probable cause, " and why the *Louisiana Bag* case talks of the need to "negate probable cause for nonpayment."  *Louisiana Bag*, 999 So. 2d at 1114.  Louisiana law governing these types of insurance penalty claims specify a minimal standard of conduct–probable cause-type "reasonableness."  Hence, the question posed by these state insurance penalty statutes for this Court to consider at the certification stage is whether the industry satisfied the floor for acceptable insurer behavior.  Again, this inquiry of "reasonableness" is distinct from the common notion of "reasonableness" discussed at length in the Court's detailed and reasoned opinion, and more importantly, this form of "reasonableness" renders certification appropriate for the *Master Complaint*'s penalty claims.

Again, bad-faith or penalty-type claims are very different from the breach-of-contract claims discussed in this Court's ruling.  The Court should reconsider its findings and conclude that just because class treatment of the latter might be improper, class treatment of the former is still appropriate.  This conclusion is the only proper conclusion permitted through the application of both state substantive and federal procedural law.  One must consider independently the

appropriateness of class treatment for the bad-faith penalty-type claims in application of a

"reasonableness" standard distinct from all other contractual claims in the *Master Complaint*.

Moreover, it is the application of this standard that led to the certification of the *Oubre* and *Orrill*

class actions previously cited to this Court.

Therefore, although the Court may be right as to individualized issues on the breach-of-

contract claims, the Court has not yet fully determined whether class treatment is appropriate on

the bad-faith penalty-type claims. That is, although what the insurer should have done in settling

each contractual claim might be individualized, the issues of bad-faith penalties turn on whether

the industry as a whole was denying claims without investigation or consideration or with other

systemic shortcomings and so falling below the minimal standard of good faith.  These latter

questions cover the whole insurance industry after Hurricane Katrina in regard to its treatment of

the class members.

Accordingly, class treatment is appropriate for these bad-faith penalty-type claims, and

the Court should grant the Plaintiffs' motion to reconsider and deny the Insurance Company

Defendants' motion to strike.


### D.      The Class Action Case Law Distinguishes the Two Kinds of Claims

The distinctions outlined in this memorandum between contractual and penalty claims,

although arguably somewhat subtle, nevertheless distinguishes all the authorities that the Court

cited in support of its ruling striking the contractual and penalties class allegations in the *Master*

*Complaint*.  The Fifth Circuit and Louisiana federal decisions on class certification, even as the

Court described them, all turn on issues of the desired level of conduct similar to breach-of-

contract claims, and they do not turn on minimal-conduct claims (e.g., Louisiana statutory bad-

faith penalty claims) which now warrant reconsideration.  The various cases cited by the Court in

support of its ruling to strike the penalty class allegations are outlined below:

- *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521 (5th Cir. 2007) (the court denied certification to a class of uninsured patients alleging that they were overcharged for treatment received from the defendant hospital): "The amount patients were charged and the amount that is '*reasonable*' for the services they received is necessarily an individual inquiry that will depend on the specific circumstances of each class member, the time frame in which care was provided, and both Ochsner's and other hospitals' costs at that time." *Id.* at 523 (emphasis added);

- *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742 (5th Cir. 2003) (the court likewise denied certification to a class of consumers alleging that their mortgage broker required them to pay preparation fees to law firms, which would then pay kickbacks to the broker, because of the need to determine "the reasonableness of payments for goods and services . . . on a transaction-by-transaction basis");

- *Nguyen v. St. Paul Travelers Ins. Co.*, Civ. A. No. 06-4130, 2008 WL 4534395, at *1-2 (E.D. La. Oct. 6, 2008) (denying certification to a class action by customers of an insurance company alleging that it failed to include general contractor, overhead, and profit costs when adjusting customers' insurance claims for damage after Hurricane Katrina);

- *Jones v. Nat'l Sec. Fire & Cas. Co.*, Civ. A. No. 06-1407, 2006 WL 3228409, at *4 (W.D. La. Nov. 3, 2006) (denying certification to a similar class action against an insurer for underadjustment of insurance claims after Hurricane Katrina, finding that factual inquiries would need to be made into "each putative class member's claims, such as where and when materials and supplies were being purchased, what was the market price at the time, and when did the price of materials and supplies decrease"), *aff'd*, 501 F.3d 443 (5th Cir. 2007);

- *Aguilar v. Allstate Fire and Cas. Ins. Co.*, Civ. A. No. 06-4660, 2007 WL 734809, at *3 (E.D. La. Mar. 6, 2007) (denying certification to a similar class action against an insurer for underpayment because the "loss payment to each class member included a below market unit pricing on numerous items and non-payment of industry standard items, resulting in inadequate compensation to the class members");

- *Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 211-12 (E.D. La. 2007) (holding individual issues predominate in class action against insurers under Louisiana's Valued Policy Law);

- *Chetta v. State Farm & Cas. Co.*, Civ. A. No. 06-4662, 2007 WL 1233546, at *1 (E.D. La. Apr. 25, 2007) (identical to *Aguilar*);

- *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05 CV 436 LTD RHW, 2006 WL 1066645, at *3 (S.D. Miss. Feb. 23, 2006) (indicating that class treatment was inappropriate for a sprawling action essentially trying to collect on the plaintiffs' insurance contracts); and

- *Escoe v. State Farm Fire & Cas. Co.*, Civ. A. No. 07-1123, 2007 WL 2903048, at *3 (E.D. La. Sept. 27, 2007) (denying certification for being requested too late, but referring in dicta to predominance problem—but the plaintiff was asserting no more than that the class members "have not yet to have a proper loss adjustment of their property damage" or "have not been timely paid for their property damages after providing satisfactory proof of loss").

By contrast, and as noted, the Louisiana state class action cases, which the Plaintiffs cited and discussed at length in their original memorandum in opposition to the Insurance Company Defendants' *Motion to Strike* (Doc. 17332), are relevant to class treatment of minimal-conduct claims. The Plaintiffs refer to and cite those cases not to argue that state-law predominance standards trump federal-law predominance standards. Instead, the Plaintiffs cite them because those cases involved questions of the whole industry's unacceptable behavior toward class members (such as the failure to act within thirty days in *Oubre v. Louisiana Citizens Fair Plan*, 961 So.2d 504 (La. Ct. App. 5th Cir. 2007)). That is to say, these state cases illustrate the Plaintiffs noted distinction in the application of the "reasonable" standard to contractual versus penalty class action claims. As the Plaintiffs stated in their memorandum in opposition (Doc.

12

17332), at page 7: "Accordingly, there is no reasonable or rational basis for distinguishing the so-called 'bad faith allegations' contained in the Master Consolidated Complaint from those found to be properly certifiable in the *Oubre* and *Orrill* cases."  Both the penalty claims contained in the *Master Complaint* and those contained in the state court certified class actions are identical.  The penalty claims were certified in state court for the same reason they are certifiable in federal court: the "reasonableness" standard required for predominance is distinct in penalty cases from the "reasonable" test applied to contractual claims.  In fact, Louisiana's class action procedural rules are virtually identical to those found in Rule 23.  It is the underlying claims, and not the state or federal rules, which determine whether a claim is certifiable or not.  The Plaintiffs respectfully suggest this Court reconsider its prior ruling on this issue, and after due consideration, reinstate the Plaintiffs penalty class allegations and deny the Insurance Company Defendants' *Motion to Strike.*

The Plaintiffs' *Master Complaint* asserts two different kinds of claims respectively involving two different kinds of "reasonableness."  One kind is individualized but the other is not and merits class treatment.  This distinction between these types of claims merits a reconsideration of the Court's ruling, and also merits eventual denial of the Insurance Company Defendants' *Motion to Strike Class Allegations* as to the Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, and also violation of Louisiana laws prohibiting bad faith by insurers (e.g., the statutory penalties claims).

Accordingly, the Plaintiffs respectfully request this Court grant their Motion for Reconsideration and the relief prayed for therein.

**II.     RECENT ACTION TAKEN BY THE U.S. SUPREME COURT FURTHER**

**SUPPORTS GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION**

As explained in the previous section of this memorandum, the Plaintiffs fully believe

there are sufficient reasons for granting the Plaintiffs pending motion for reconsideration.

Nevertheless, if the Court remains concerned about the interrelationship between Louisiana

substantive insurance penalty law and federal procedural rules, then the Plaintiffs would

respectfully suggest that the Court set aside its prior ruling of June 16, 2009 (Doc. 19005), at

least in part, and stay a final decision on the Insurance Company Defendants' *Motion to Strike*

(Doc. 16711) and the Plaintiffs right to proceed with class certification against the Insurance

Company Defendants for statutory penalty claims.   Such action will ensure that no party is

completely prejudiced by the Court's actions at this time, and more importantly, is warranted by

the United States Supreme Court's recent decision to accept writ of certiorari in *Shady Grove

Orthopedic Assoc. v. Allstate Insurance Company*, 129 S. Ct. 2160 (May 4, 2009).

The United States Supreme Court's decision to grant a writ of certiorari in the *Shady

Grove* case is relevant to this action and to this Court's determination of the issues presented in

this motion for reconsideration.   The *Shady Grove* case involves an originally filed federal court

putative class action against Allstate Insurance Company.   *Shady Grove*, 466 F. Supp. 2d 467,

470 (E.D.N.Y. 12/5/06).  The plaintiffs in *Shady Grove* initiated the diversity jurisdiction class

action in federal court because state law did not permit certification of an identical insurance

penalty class action–the opposite scenario found by this Court in the matter at hand.  *Id.*  Further,

the *Shady Grove* case involves class allegations against Allstate for failure to timely pay

insurance benefits within a specified time period provided by state law.  *Id.*  In confronting

similar issues presented to this Court in the case at bar, the district court in *Shady Grove* noted that Rule 23 governed class certification under diversity jurisdiction cases, but "the right to bring a class action" was governed by state law.  *Id.* at 472.  Of utmost importance, the district court acknowledged the role of federal courts sitting in diversity jurisdiction and the implication of federalism in preserving a proper balance between state court and federal court litigants on like issues: "It would be patently unfair to allow a plaintiff an attempt at recovery in federal court for a state law claim that would be barred in state court."  *Id.*  Hence, the district court dismissed the action, because application of Rule 23 to the action would circumvent state law, and would provide an unfair benefit and advantage to the plaintiffs in federal court which they would not enjoy in state court.  *Id.* at 472-3.

On appeal, the Second Circuit examined the role of a federal court sitting in diversity jurisdiction under the *Erie* doctrine.  *Shady Grove*, 549 F.3d 137, 141-2 (2nd Cir. 11/19/08).  The court noted "[t]he rationale of [*Erie]* was, first, that federal courts should obtain results substantially similar to those reached by state courts considering the same cause of action, and second, that *federal courts should avoid application of federal law if that application would significantly encourage forum shopping by prospective out-of-state litigants*."  *Id.* at 142 (citations omitted) (emphasis added).  The court held that federal procedural rules would not be applied to certify a class in federal court which could not be maintained in state court.  To this end, the court stated "[a]ny other conclusion would contravene the mandates of *Erie* by allowing 'plaintiffs to recover on a class-wide basis in federal court when they are unable to do the same in state court.'"  *Id.* at 145.  Thus, the Second Circuit affirmed the district court's ruling.

The *Shady Grove* case presents two primary issues important to this Court's decision in regards to the pending motion for reconsideration and ultimately the Insurance Company Defendants' motion to strike.  First, implicit in the *Shady Grove* case is the recognition by both the district court and the Second Circuit that a class action against Allstate Insurance Company for failure to comply with a state statutory law compelling payment of insurance proceeds within a state legislature's specified time period–virtually identical to Louisiana law–would be certifiable in federal court–a minimal-conduct sort of class.  Second, federalism and the need to prevent "forum-shopping" by litigants weighed against certification.  That is, a litigant should essentially receive the same application of law regardless of whether their action is in state court or is removed to federal court.

The Plaintiffs respectfully suggest once again that there is no disparity between Louisiana Code of Civil Procedure 591 and Federal Rule of Civil Procedure 23 in a minimal-conduct sort of class.  The state court decisions previously cited to this Court certifying insurance penalty class actions are not granted pursuant to a more *liberal* state procedural rule than Rule 23.  They are identical.  It is not the application of state rather than federal procedural rules which allowed for certification of the *Oubre* and *Orrill* cases in state court, but the interpretation of the underlying statutory penalty laws as discussed in the previous section which permitted certification in a minimal-conduct class.  Had the state courts granted certification of contractual class allegations in *Oubre* and *Orrill* cases in state court, then this Court's decision not to act consistently with those decisions would likely be proper under federal law and Rule 23.  Yet, those state court actions were very limited in scope and applied only to limited minimal-conduct Louisiana statutory insurance penalty claims.  Of utmost importance, these state court cases

16

certified minimal-conduct classes involving the exact same type of insurance penalty claims involved in the *Shady Grove* case–failure to pay insurance benefits within a legislatively prescribed time period.   And, it is these very same or analogous Louisiana statutory penalty claims which are presented in the *Master Complaint*.  Had the federal courts in the *Shady Grove* case felt that the underlying minimal-conduct action was not certifiable in federal court, the courts would never have gone through the analysis they did.  Moreover, the Plaintiffs would suggest the United States Supreme Court would never have granted certiorari either.

Ultimately, the Plaintiffs suggest the Supreme Court's decision in *Shady Groves* will turn on the application of federalism in light of the Class Action Fairness Act and the need to constrain forum-shopping.  As the Plaintiffs have suggested, the *Erie* doctrine requires careful analysis of the underlying state law rather than mechanical application of "substantive" versus "procedural" labels.  To this end, the plain language of Louisiana's minimal-conduct statutory penalty claims dictate whether those claims are certifiable, and with all due deference to this Court's prior ruling, not the application of Rule 23 to the Plaintiffs' overarching contractual claims contained in the *Master Complaint*.

Of utmost importance, the lower courts in the *Shady Grove* case deferred to the states in refusing to certify the statutory insurance penalty cases.  Relevant to the issues presented in this motion for reconsideration, the Louisiana legislature has never sought to prohibit statutory insurance penalty class actions.  In fact, Louisiana courts, including its appellate courts, have uniformly held that such minimal-conduct actions are properly certifiable.  Thus, the relevant issue for this Court in the *Shady Grove* case now before the Supreme Court is the degree to which deference is shown to the states in statutory insurance penalty class actions.  In *Shady*

17

*Grove*, the courts thus far have deferred to the states.  The Plaintiffs suggest this Court should likewise defer to the State of Louisiana, its legislature and its courts.  But, if the Court is hesitant, then the Plaintiffs suggest deferring a final ruling until the Supreme Court rules in the *Shady Grove* case.  Obviously, the Supreme Court's decision will set forth the law and the appropriate standards for certification of state statutory insurance penalty class actions.

Moreover, the Plaintiffs also suggest the Insurance Company Defendants, and especially Allstate Insurance Company, must concede that the *Erie* doctrine must be applied in a manner to prevent "forum-shopping"," regardless of whether the attempted beneficiary of such action is a plaintiff or a defendant removing an action to federal court.  A contrary position would be disingenuous to this Court and to the United States Supreme Court in the *Shady Grove* case.

Accordingly, at the very least, the Plaintiffs respectfully suggest the Court follow the explicit and implicit reasoning of the lower courts in *Shady Grove* and set aside its June 16, 2009, ruling, finding certification of the minimal-conduct statutory insurance penalty claims appropriate for consideration, or alternatively, stay a final determination of the issues presented by the Motion for Reconsideration and *Motion to Strike* discussed herein until such time as the Supreme Court rules in the *Shady Grove* case.

## III.    AT THE VERY LEAST, THE COURT SHOULD REFER THIS MATTER TO MAGISTRATE JUDGE WILKINSON

The Plaintiffs acknowledge and commend this Court and Judge Barbier for their efforts to try to assist parties to the *Master Complaint* to globally compromise all pending issues arising from Hurricanes Katrina and Rita in both state and federal court.  This Court's and this District's

leadership in bridging gaps between state and federal courts is truly a monumental achievement. The Plaintiffs and the Insurance PSLC are fully committed to assisting this Court and the other courts involved in achieving a fair and just resolution mutually beneficial to the policyholders and the companies involved.

In furtherance of this effort, this Court has agreed to refer this matter and the other state court matters, by agreement, to Magistrate Judge Wilkinson for resolution. Judge Wilkinson has already begun the process of meeting with the underlying counsel involved, including members of the Insurance PSLC. Judge Wilkinson has set an initial meeting between all counsel in state and federal court for July 20, 2009. For the reasons stated herein, the Plaintiffs respectfully suggest this Court set aside its June 16, 2009, ruling and reinstate the class allegations struck in the *Master Complaint*. The Plaintiffs further request this Court refer the entire *Master Complaint* and all parties to Magistrate Wilkinson for possible resolution of all remaining claims in this action and any other relevant or competing action.

In particular, the Plaintiffs note the Court has already transferred the *Road Home* action, previously contained in the *In re: Katrina Canal Breaches Consolidated Litigation* umbrella to Judge Barbier. As this Court has recognized in the past, the class allegations contained in the *Road Home* litigation are identical to those contained in the *Master Complaint.* To this end, it makes sense to refer this action to Magistrate Wilkinson for consideration as part of this Court's and the District's efforts to assist parties in obtaining global resolution of all matters arising out of Hurricanes Katrina and Rita, and as alleged in the *Master Complaint* and the *Road Home* actions.

As such, the Plaintiffs respectfully request this Court set aside its June 16, 2009, ruling, and refer the *Master Complaint*, the parties and counsel to Judge Wilkinson for further consideration and determination of whether a resolution of some or all of the parties' claims in the *Master Complaint* may be achieved.  The Plaintiffs further suggest that there is no prejudice to the parties in the Court granting such relief.  In fact, if Judge Wilkinson is successful, the parties will only benefit from the action requested of this Court in relation to this matter.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request this Honorable Court grant their Motion for Reconsideration as pled herein, and that the Court refer the parties to Magistrate Judge Wilkinson for possible resolution of all or at least some of the claims set forth in the *Master Complaint*.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

_____/s/ Joseph M. Bruno_____
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

_____s/ Calvin C. Fayard, Jr._____
Calvin C. Fayard, Jr. (La. Bar #5486)
INSURANCE PSLC LIAISON COUNSEL
Fayard & Honeycutt, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Tel: (225) 664-4193
Fax: (225) 664-6925
calvinfayard@fayardlaw.com


For

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

John N. Ellison
James M. Garner
Joseph J. McKernan
Drew A. Ranier
Calvin C. Fayard, Jr.


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 30th day of June, 2009.

_____/s/ Joseph M. Bruno_____

Joseph M. Bruno,