UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | * <br> * <br> * | CIVIL ACTION |
| | * <br> * | NO. 05-4182 |
| PERTAINS TO: BARGE | * <br> * | and consolidated cases |
| | * | SECTION "K" (2) |
| *Weisler v. Seymour, et al.* 09-2737 | * <br> * | JUDGE |
| | * <br> * | STANWOOD R. DUVAL, JR. |
| | * <br> * | MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

### MEMORANDUM ON BEHALF OF PLAINTIFF IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

### INTRODUCTION

The Plaintiff in this matter, Dr. Richard H. Weisler, is one of six experts in the fields of psychiatry/psychology who were retained by the "Barge Plaintiffs' Subgroup Litigation Committee" ("Barge PSLC"), in the "Barge" litigation and one of four whom the Barge PSLC has refused to pay. The Barge PSLC includes all of the named Defendants, including the specific

1

individual attorneys who formally retained Dr. Weisler and entered into the agreement with him for his services, as well as their law firms. Given the present state of the economy, as well as the facts that the members of the Barge PSLC have claimed at various times that they have lost their funding for the litigation, that they have made false and outrageous allegations in a counter-claim they recently filed, and, one of them is in personal bankruptcy, it is imperative that all of the named Defendants remain before the court so as to ensure that Dr. Weisler is paid those amounts to which he should have been paid over one year ago.

The Defendants have now filed a Motion to Dismiss all claims against the individual attorneys. As will be shown below, because these individual attorneys never represented that they were acting for or on behalf of their law firms, and only indicated that they were part of "a small group of attorneys" which they would eventually describe alternatively as the d/b/a, Barge PSLC, these individual attorneys are not entitled to the protection afforded their separate corporate entities. Therefore, their Motion should be denied.

## FACTS

In early 2008, with the deadline for expert reports rapidly approaching, the Barge PSLC, acting for the Plaintiffs in the Barge case, decided, albeit belatedly, to retain medical experts in the fields of psychology and psychiatry in order to establish an "emotional injury" subclass within the larger class-action which was and is the subject of the Barge litigation. With less than 30 days until the expert report deadline, in mid-May, 2008, attorney Alan Fuchsberg, then a

member of the Barge PSLC, sent out an e-mail to various experts in those fields in an effort to find someone who could undertake the task of providing sufficient medical support for a subclass of approximately 5,000 people out of a total of 60,000 people such that a subclass could be certified.

Two of the experts he contacted were Dr. Richard H. Weisler, a psychiatrist who practices in Raleigh, North Carolina, who is also an adjunct faculty member at Duke University Medical Center and lectures nationally and internationally; and, Dr. Mark H. Townsend, a professor of psychiatry and a psychiatrist affiliated with the LSU Health Services Center here in New Orleans. In his e-mail to these experts[1], Mr. Fuchsberg specifically indicated that he was one of "a small group of attorneys" seeking an expert to provide a comprehensive expert report to help establish an emotional injury subclass. In subsequent discussions with Dr. Weisler and Dr. Townsend, Mr. Fuchsberg suggested that the subclass might consist of about 5,000 people of the total of approximate 60,000 people which made up the larger class-action or Barge case. As the original Complaint and the attached Affidavits of Dr. Weisler and Dr. Townsend reflect, Mr. Fuchsberg agreed to retain both experts and also agreed to their hourly rate of $600. He later would agree that additional experts in the field of psychiatry and psychology should be retained to assist in the overall effort given the enormous size of the project and the limited time constraints.[2] No formal contract was ever signed however.

---

[1] Exhibit No. 1(A)

[2] Principal Complaint; Exhibit No. 1 Affidavit of Dr. Richard Weisler

As the Affidavits of Dr. Weisler[3] and Dr. Townsend[4] also reflect, at no time did Mr. Fuchsberg ever indicate that the parties to the agreement he had reached with these experts included any law firms, even his own. In fact, as the Affidavits also reflect, the only entity other than the individual attorneys to which Mr. Fuchsberg or any of the other attorneys referred was the Barge PSLC, a d/b/a, and not even a real corporate entity or "person". Significantly, the mention of the Barge PSLC only came about when the experts were told to direct their invoices to the Barge PSLC[5] over one month after they were retained.[6] Also significant is the fact that the Barge PSLC, not any law firm, issued what few payments were made to the mental health experts.[7] Finally, it should also be noted that these individual attorneys often used their private e-mail systems, not just their firms, to communicate on the matter, particularly when squabbling among themselves, as the attached e-mail attorney from Brian Gilbert demonstrates.[8]

---

[3] Exhibit No. 1

[4] Exhibit No. 2

[5] Exhibit No. 1(B) E-mail from attorney, Richard Seymour to Dr. Jill Hayes

[6] Although they all indeed sent their invoices to the Barge PSLC, only 2 of the 6 experts has been paid to date: Dr. Jill Hayes because she refused to release her report until paid; the other, Dr. Mark Townsend, was paid this year when it appeared the Barge PSLC might need a mental health expert for trial. He was owed less than Dr. Weisler due to his limited involvement.

[7] Exhibit No. 2(1)(2) and (3)

[8] Exhibit No. 3

4

Consequently, this "small group of attorneys", who presumably would have knowledge of the law, including the fact that any principal for whom they purportedly are acting must be specifically identified, never identified their law firms as parties to the agreement with Dr. Weisler and Dr. Townsend at all. In fact, it would not be until the individual attorneys were named as Defendants that they attempted to assert the legal defenses and protections of their respective law firms in their pleadings, including the instant Motion to Dismiss. As will be shown below, under the applicable law when applied to this fact situation, the Defendants' Motion should be dismissed.

## APPLICABLE LAW

### SUMMARY

Plaintiff, Dr. Weisler, has attached both Affidavits and evidentiary documents to this response. As a result, this Motion should be treated as a Motion for Summary Judgment. These documents show that the Defendant attorneys acted only as individuals. Under basic agency law, the Defendants as attorneys, should have known that their failure to identify or even mention their law firms as putative parties to the agreement deprived them of any protection associated with their law firms. This failure on their part is fatal to their Motion.

### *I. This Motion should be converted to a Motion for Summary Judgment*

Under a Motion to Dismiss, "the question is whether in the light most favorable to the Plaintiff and with every doubt resolved in his behalf, the Complaint states any valid claim for relief."[9]

But under the jurisprudence interpreting Rule 12, when either or both parties presents extraneous materials as part of their motion to dismiss for failure to state a claim **or opposition**, the court has great discretion to accept the extraneous material and convert the motion to one for summary judgment. When a party submits affidavits or other evidence in connection with motion to dismiss, the court has two options: it may exclude additional materials and decide motion on basis of complaint alone, or it may convert motion to a motion for summary judgment and give all parties an opportunity to present supporting materials.

Generally, "matters outside the pleadings," when presented in connection with a motion to dismiss for failure to state a claim, require that motion to be treated as a motion for summary judgment. Such "matters" include both statements of counsel at oral argument raising new facts not alleged in pleadings, and any written or oral evidence in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings.[10] Likewise, when affidavits are submitted in response to a motion to dismiss for

---

[9] *Egan Nursing Services, Inc. v. Scheur, et al.*, 2003 WL 1701705 (E.D. La.) At 4 (quoting *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997)).

[10] *McAuley v. Federal Ins. Co.*, 500 F.3d 784 (8th Cir. 2007)

6

failure to state a claim, as here, and the court considers the material(s), the motion is typically treated as a motion for summary judgment and disposed of as provided by Rule 56 procedures.[11]

Where matters outside the pleadings are presented in connection with motion to dismiss for failure to state a claim, the court may either exclude the additional submissions and decide the motion on the pleadings only, or convert the motion to one for summary judgment.[12] In considering whether to convert a motion, the court considers if the conversion is likely to facilitate the disposition of the action, and when extra pleading material is comprehensive and will enable a rational determination of the summary judgment motion, courts will likely accept it.[13]

In fact, it has been said that when the court accepts and considers matters outside the pleadings the conversion of the motion into one for summary judgment is mandatory.[14]

---

[11] *International Longshoremen's Ass'n v. Virginia Intern. Terminals, Inc.*, 926 F.Supp. 655 (E.D. Va. 1996), *amended*, 932 F.Supp. 761

[12] *Estate of Lennon by Lennon v. Screen Creations*, 939 F. Supp. 297 (S.D.N.Y. 1996); see also *Sanders v. City of New York*, 692 F.Supp 308 (S.D.N.Y. 1988) (district court presented with affidavit containing additional factual allegations may exclude additional matter and decide motion to dismiss on face of complaint or may give notice to parties and convert motion to dismiss to one for summary judgment).

[13] Id.

[14] *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) (the conversion of a motion to dismiss for failure to state a claim into one for summary judgment when the court considers matters outside the pleadings is strictly enforced and mandatory); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982), *cert. denied*, 490 U.S. 1227 (where evidence outside record is submitted to and not excluded by district court, motion to dismiss for failure to state a claim upon which relief can be granted must be disposed of by way of summary judgment procedures specified in Rule 56 of these rules).

Accordingly, if, in resolving a motion to dismiss for failure to state a cause of action, the court considers matters outside the pleading(s), the motion shall be treated as one for summary judgment.[15] At that point, the Defendants have the burden to show there are no contested issues of fact and that the facts and law are in their favor. Defendants can do neither.

### II. The unsigned agreement between The Defendants and petitioner, Dr. Weisler, was a valid, enforceable contract.

Absent a signature or a signing of an agreement by one or both parties, the effect or validity of the agreement may be shown by the actions and conduct of the party.[16] Under this rule, courts have long held that it is possible that the agreement between the parties is in writing even though the parties have not signed the writing.[17] Further, courts have long recognized that an agreement may be written and the consent thereto given may be orally or by the action or inaction by the parties, and thus there is no signing requirement.[18]

In addition, the Defendants breached their contract or an implied contract with Dr. Weisler, in failing to compensate him for services rendered pursuant to the agreement. A contract may be implied from facts and circumstances showing mutual intention to contract; and

---

[15] *Hadges v. Yonkers Racing Corp.*, 733 F.Supp. 686 (S.D.N.Y. 1990), *aff'd*, 918 F.2d 1079, *cert. denied*, 499 U.S. 960; see also *Perkins v. Rich*, 204 F.Supp. 98 (D.C.Del. 1962), aff'd, 316 F.2d 236 (defendant's motion to dismiss complaint for failure to state a claim upon which relief can be granted would be treated as motion for summary judgment where affidavits of all parties had been presented and not excluded).

[16] *Hurley v. Fox*, 520 So.3d (La. App. 4th Cir. 1988).

[17] *Id.* at 469.

[18] *Id.*

8

when one avails himself of the services of another in performance of a task, he is obligated to compensate that person[19] Equity principles mandate that (Dr. Weisler) receive compensation for the reasonable value of (the work) performed pursuant to the valid contract agreement.

### III. The Defendants are personally liable due to their failure to disclose the existence of an agency relationship with the Barge PSLC at the time the contract was confected.

Under certain circumstances, Louisiana jurisprudence imposes personal liability on an agent who fails to follow certain formalities required in conducting company business with a third party.[20] In particular, Louisiana courts have long recognized that when an agent fails to fully disclose to a third party that he or she is acting as an agent for an undisclosed principal,[21] then, as a consequence of the omission, the agent becomes personally liable for what might otherwise be characterized solely as a debt of the principal.[22] Importantly, in *J.T. Dorion, Inc. v.*

---

[19] *Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569 (La. 1989). *See also*, *Dumas and Associates, Inc. v. Lewis Enterprises, Inc.*, 704 So.2d 433 (La. App. 2d Cir. 1997); *Tallulah Constr., Inc. v. Northeast Louisiana Delta Community Development Corp.*, 982 So.2d (La. App. 4th Cir. 2008); *Fogelman v. Cajun Bag & Supply Co.*, 638 So.2d 706 (La. App. 3rd Cir. 6/15/1994), *writ denied*, 644 So.2d 375.

[20] Generally, a member or agent of a limited liability company cannot be held personally liable for the debts of the company. La. R.S. 12:1320.

[21] Pursuant to the Restatement (Second) of Agency § 4(3), if the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal.

[22] *Andrus v. Bourque*, 442 So.2d 1383 (La. App. 3rd Cir. 1983) (holding that Louisiana law has long provided that an agent who fails to disclose his status, becomes personally liable for debts incurred at his request, even if the work is done to benefit the principal) *citing Prevost v. Gomez*, 251 So.2d 470 (La. App. 1st Cir. 1971); see also, *Pat's Furniture Showrooms, Inc. v. The Furniture*

*Lundin*,[23] the First Circuit noted that the general rule of disclosure places an affirmative duty on the agent to tell those with whom he is dealing that he is an agent acting for a certain principal. Absent disclosure of a special status, the law presumes that a person is acting in his individual capacity and holds him personally liable for his actions.

Generally, the imposition of personal liability on an agent for an undisclosed principal is not regarded as an extreme measure.[24] Louisiana jurisprudence is replete with decisions imposing individual liability on undisclosed agents.[25] In addition, the Louisiana legislature codified the rule in La. C.C. art. 3017, which provides that "[a] mandatary who contracts in his own name without disclosing his status as a mandatary binds himself personally for the performance of the contract."

For an agent of an undisclosed principal to avoid personal liability for the debt of the principal, the required disclosure of the agency relationship must occur contemporaneously with

---

*Warehouse of Houma, Inc.*, 392 So.2d 145 (La. App. 1st Cir. 1980) (holding that an agent has the duty to disclose his capacity as such if he is to escape personal liability for his acts).

[23]    385 So.2d 450, 452 (La. App. 1st Cir. 1980).

[24]    8 La. Civ. L. Treatise, Business Organizations §§ 33.04, 33.05.

[25]    See, e.g., *Pat's Furniture Showrooms, Inc.*, 392 So.2d at 145. *See also Eastin v. Ramey*, 257 So.2d 717 (La. App. 3rd Cir. 1972); *Chartres Corp. v. Twilbeck*, 305 So.2d 730 (La. App. 4th Cir. 1974); *G.T.M. Carpet Co. v. Richards*, 534 So.2d 539 (La. App. 5th Cir. 1988).

the creation of the contract with a third party; it follows, therefore, that disclosure cannot relieve the agent of liability if it comes at any point after the contract is formed.[26]

There is no question that the individual attorneys did not disclose the existence of an agency relationship with their respective firms or even with the Barge PSLC at the point of the contractual agreement with Dr. Weisler to provide expert witness services and prepare the reports. Moreover, Dr. Weisler, pursuant to relevant e-mail correspondence between himself and Mr. Fuchsberg, was under the reasonable belief that he was dealing with the Defendants attorneys in their individual capacities as they never indicated otherwise.

Applying the aforementioned rules set forth above to the matter at hand, the burden of fully disclosing agency rested on the Defendants at the time of contracting with Dr. Weisler; and, in light of the Defendants' failure to disclose an agency relationship with their firms or even the Barge PSLC at the point of contract formation, the Defendants are, as a result, liable in their individual capacities for the amount due for the work performed under the contract.

---

[26] *Melancon v. Keller*, 136 So.2d 67, 69 (La. App. 4th Cir. 1962) (holding that disclosure of agent was required "at the time of making the contract."); *Tri-State Oil Tool Co. of Southern La. v. Pioneer Oil & Gas, Inc.*, 135 So.2d 297 (La. App. 4th Cir. 1961) (holding that notice of the fact of agency and the identity of the principal must be given at the time of contract to be sufficient disclosure to avoid liability); *Williams v. O'Bryan*, 257 So.2d 174 (La. App. 3rd Cir. 1972) (holding that disclosure of agency years after establishing an open account was untimely).

11

IV. **The Defendants are personally liable for the debt because the Defendants cannot affirmatively prove that Dr. Weisler knew of the alleged agency relationship**

Pursuant to Louisiana law, the one exception to the actual disclosure requirement is that express notice of the agent's status and the principal's identity is not required to escape personal liability when *the agent proves* that sufficient evidence of the agency relationship was known by the third party so as to put him on constructive notice of the agency relationship.[27] Courts have consistently recognized that in the absence of express disclosure, the burden of proof falls on the party alleging agency to prove through a preponderance of the evidence that the third party otherwise had notice of the existence of the agency relationship at the time of contracting.[28]

It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only that he is acting in a representative capacity, but also the identity of the principal.[29] In *Curran*, the court found that in any event, it is not the plaintiff's duty to seek out the identity of the defendant's principal; it is the

---

[27] See, e.g., *G.T.M. Carpet Co.*, 534 So.2d at 541; *Black Equip. and Supply, Inc. v. Koehl and Associates, Inc.*, 571 So.2d 902 (La. App. 5th Cir. 1991), *writ denied*, 577 So.2d 12.

[28] *J.T. Dorion*, 385 So.2d at 452-53 (holding that the person who claims to have been acting as an agent bears the burden of proof at trial to show his special status, and that the status was disclosed). See also, *Marmedic, Inc. v. Int'l Ship Mgmt. & Agency Services*, 425 So.2d 878 (La. App. 4th Cir. 1983); *American Plumbing Co., Inc. v. Hadwin*, 483 So.2d 169 (La. App. 2nd Cir. 1986) *writ denied*, 486 So.2d 756; *Andrus v. Bourque*, 442 So.2d 1383 (La. App. 3rd Cir. 1983); *C.T. Traina Plumbing & Heating Contractors, Inc. v. Palmer*, 580 So.2d 525 (La. App. 4th Cir. 1991) *writ denied*, 584 So.2d 1166.

[29] See *Atlantic Salmon A/S v. Curran*, 591 N.E.2d 206 (Mass.App.Ct. 1992).

12

defendant's obligation to fully reveal it.[30] The *Curran* court held that it is not sufficient that the plaintiffs may have had the means, through a search of public records, to determine the identity of the defendant's principal; actual knowledge is the test.[31]

Thus, "[t]he duty rests upon the agent, if he would avoid personal liability, to disclose his agency, and not upon others to discover it. It is not, therefore, enough that the other party has the means of ascertaining the name of the principal; the agent must either bring to him actual knowledge or, what is the same thing, that which to a reasonable man is equivalent to knowledge or the agent will be bound. There is no hardship to the agent in this rule, as he always has it in his power to relieve himself from personal liability by fully disclosing his principal and contracting only in the latter's name. If he does not do this, it may well be presumed that he intended to make himself personally responsible."[32] The Defendants, as attorneys, should have known this.

## V.     The Barge PSLC was the only disclosed principal, albeit untimely.

In the unlikely event the Defendants establish that Dr. Weisler contracted with the fictitious entity Barge PSLC (and not The Defendants in their individual capacities), Plaintiff

---

[30]    *Id.* at 209.

[31]    *Id.* See also, *Saco Dairy Co. v. Norton*, 35 A.2d 857 (Me. 1944).

[32]    1 Mechem on Agency § 1413 (2d ed. 1914).

13

respectfully requests that the Court pierce the veil[33] of Barge PSLC and find the individual Defendants personally liable for the outstanding debt owed to Plaintiff. This d/b/a offers no legal protections whatsoever. Accordingly, the Defendants can't hide behind the Barge PSLC.

## CONCLUSION

Plaintiff, Dr. Weisler submits that this motion, whether treated as a Motion to Dismiss or a Motion for Summary Judgment, should be denied. The Defendants failed to timely disclose any involvement by their respective firms. In fact, the only putative "principal" disclosed at any time, was a fictitious entity, the Barge PSLC. Accordingly, the Motion fails.

Respectfully submitted,

/s/ Andrew C. Wilson
Daniel J. Caruso (3941)
Andrew C. Wilson (01162)
Charles E. Riley, IV (28200)
Christopher B. Conley (31674)
30th Floor– Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone (504) 569-2030
Facsimile (504) 569-2999
Attorneys for Plaintiff, Richard H. Weisler, M.D.

---

[33] "The 'veil' of the 'corporate fiction,' or the 'artificial personality' of the corporation is 'pierced,' and the individual or corporate shareholder exposed to personal or corporate liability, as the case may be, when a court determines that the debt in question is not really a debt of the corporation, but ought, in fairness, to be viewed as a debt of the individual or corporate shareholder or shareholders." Stephen B. Presser, *Piercing the Corporate Veil*, § 1.01 at 1-6 (1991 and supp.) (footnotes and emphasis omitted).

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Andrew C. Wilson

Opposition to Motion to Dismiss.doc