UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION |
| | No. 05-4182 |
| FILED IN:   05-4181, 05-4182, 05-4191, 05-4568,<br>05-5237, 05-6073, 05-6314, 05-6324,<br>05-6327, 05-6359, 06-0020, 06-1885,<br>06-0225, 06-0886, 06-11208, 06-2278,<br>06-2287, 06-2346, 06-2545, 06-3529,<br>06-4065, 06-4389, 06-4634, 06-4931,<br>06-5032, 06-5042, 06-5159, 06-5163,<br>06-5367, 06-5471, 06-5771, 06-5786,<br>06-5937, 06-7682, 07-0206, 07-0647,<br>07-0993, 07-1284, 07-1286, 07-1288,<br>07-1289. | SECTION "K"(2)<br><br>JUDGE DUVAL<br><br>MAG. WILKINSON |

PERTAINS TO: LEVEE AND MRGO

**BRINKMEYER OBJECTORS' RESPONSE TO JOINT MOVANTS'
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Objecting class members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart (the "Brinkmeyer Objectors") submit this response to the proposed findings of fact and conclusions of law submitted by the proponents of the proposed limited fund class settlement (Doc. 19072-2). Except as set forth below, the Brinkmeyer Objectors take no position on the proposed findings and conclusions.

**Objections to Proposed Findings of Fact**

**Proposed Finding of Fact No. 3:**

The Notices were clear, simple, substantive, and informative. No significant or required information was missing. The Notice Program and Notices were not misleading to Class Members. (Footnote omitted).

**Objection:**

The content of the notices was deficient and misleading for several reasons. First, the notices failed to provide information that would enable class members to estimate their individual recoveries. *See* Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 9-11; Objections (Doc. 18179-2) at 4-8. At a minimum, the notices should have stated the size of each subclass so that class members could calculate an average recovery, or they should have provided an estimate of the damages incurred by each subclass so that class members could calculate the fraction of damages covered by the settlement fund. These figures were available to the proponents of the settlement (*see* proposed findings of fact nos. 24-42), but they were not included in the notices. Further, the notices provided no estimate of the amount of costs and expenses that will reduce the settlement fund prior to any awards to class members. Moreover, class counsel believes that "it is highly unlikely that the Court will make any distribution of these [settlement] funds directly to claimants" (*see, e.g.,* Exhibit 73 and related testimony of Joseph Michael Bruno), yet the notices do not inform the class members that they are likely to receive nothing.

Second, the notices are misleading because they state that "under law, the Settlement Class can get no additional money or property in this settlement because the Settling Defendants are governmental bodies." The class can get no additional money or property "in this settlement"

because the settlement does not provide for any additional recovery. However, "under law," the class could get additional recovery because the law does not preclude the levee districts from appropriating additional money to contribute to a settlement or to satisfy a judgment. *See* Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 11-12; Objections (Doc. 18179-2) at 9 n.2.

Third, the notices are misleading because they state that "Class Counsel will not request any attorneys' fees from the settlement fund." But because the settlement agreement allows counsel to seek an enhancement of their costs and expenses, it provides an alternative mechanism for counsel to profit. *See* Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 13-14; Objections (Doc. 18179-2) at 13.

**Proposed Finding of Fact No. 14:**

The non-flood assets of the Levee Districts do not generate revenue. (Footnote omitted).

**Objection:**

Although Mr. Doody testified that the non-flood control assets of the levee districts, including an airport, a casino, and marinas, do not currently generate revenue, he testified that they are intended to generate revenue and that they did so before the storm. Thus, the levee districts have non-flood assets that may generate revenue in the future. Further, the non-flood control assets have value and could be sold to generate revenue. Indeed, the levee districts have substantial assets. For example, the Orleans Levee District has total assets, net of liabilities, valued at $132,785,082. *See* Exhibit 88.

**Proposed Finding of Fact No. 15:**

The respective Levee Districts could not (and responsibly would not) pay for judgments that could be returned in connection with this Litigation and still maintain the ability of each respective Levee District to fulfill its statutory obligations and maintenance and operational obligations for the Lake Pontchartrain and Vicinity Hurricane Protection System. (Footnote omitted).

**Objection:**

Whether the levee districts could satisfy judgments against them in this litigation is irrelevant. The relevant question is not whether the levee districts could or would satisfy judgments; it is whether they have made the maximum possible contribution to the settlement fund. Although Mr. Doody testified that the levee districts could not afford to fully satisfy such judgments, he did not testify that the levee districts are unable to make any contribution to the settlement fund. Moreover, Mr. Doody's testimony about future political decisions by each levee district's board of commissioners was speculative and without foundation. *See* Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum (Doc. 18958) at 2-3; Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 3-5.

**Proposed Finding of Fact No. 17:**

The Court finds credible the testimony of Timothy P. Doody, President of the Southeast Louisiana Flood Protection Authority – East, that the Authority and the Levee Districts cannot pay for judgments in excess of its available insurance limits that result from this Litigation, and will not appropriate funds for that purpose even for a single claimant. (Footnote omitted).

**Objection:**

See objection to proposed finding of fact no. 15. Mr. Doody's testimony was irrelevant, speculative, and without foundation. Further, Mr. Doody was unaware that the Orleans Levee District had $5,293,685 in a restricted fund allocable to the payment of judgments. *See* Exhibit 88.

**Objections to Proposed Conclusions of Law**

**Proposed Conclusion of Law No. 4:**

The form and content of the Class Notice, and the manner such Class Notice was given to Class Members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement and all related procedures and hearings, were reasonable and reasonably calculated under all the circumstances and have been sufficient, both as to form and content, to apprise interested parties of the pendency of the Litigation, the preliminary certification of the Settlement Class, the Class Settlement Agreement and its contents, the Certification Hearing, the Fairness Hearing, and Class Members' rights to hire counsel, to appear in Court to have their objections heard, and to afford Class Members an opportunity to object. Such notice complied with all requirements of federal and state laws and constitutions, including the due process clause and Federal Rule of Civil Procedure 23. Such notice constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential Class Members of the Settlement Class, as preliminarily certified and defined by the Preliminary Approval Order, and of the Certification Hearing and the Fairness Hearing. (Footnote omitted).

**Objection:**

The content of the class notice was deficient and misleading for the reasons set forth in the

objection to proposed finding of fact No. 3.

**Proposed Conclusion of Law No. 20:**

The Court finds the arguments of the objectors that the law might change, or that the State of Louisiana might misappropriate State funds to pay judgments against the Levee Defendants to be too speculative for limited fund analysis.  (Citation omitted).

**Objection:**

Proposed conclusion No. 20 misrepresents the arguments of the objectors.  The Brinkmeyer Objectors do not rest their arguments on speculation about future changes in the law or the misappropriation of State funds; rather, the Brinkmeyer Objectors have noted that the levee districts are authorized by law to appropriate funds to satisfy judgments or make payments as part of a compromise agreement, La. R.S. 13:5109(B)(2), and have argued that the Court should not certify a mandatory settlement class on a limited fund theory or approve the proposed settlement because the proponents have failed to show that the defendant levee districts have made the maximum possible contribution to the settlement fund as required by *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999) (explaining that the proponents of a limited fund class action must show "that the totals of the aggregated liquidated claims and the fund available for satisfying them, *set definitely at their maximums*, demonstrate the inadequacy of the fund to pay all the claims") (emphasis added); *see also id.* at 863 ("[A] limited fund rationale for mandatory class treatment of a settlement-only action requires assurance that claimants are receiving the maximum fund[.]").  The issue is not whether, absent settlement, the levee districts are likely to satisfy judgments.  The issue is whether the levee districts have made the maximum possible contribution to the settlement fund, as required for a limited fund settlement.  Because the proposed settlement is funded entirely by insurance proceeds,

6

the levee districts have contributed nothing, and the levee districts have failed to show that their maximum possible contribution to the settlement fund is zero, the settlement does not qualify for limited fund treatment and class members must be given a chance to opt-out. Class members who choose to opt-out will assume the risk that judgments obtained may not be satisfied because the levee districts' assets are immune from seizure, but that choice must be made by each class member. *See* Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum (Doc. 18958) at 1-4; Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 2-5; Objections (Doc. 18179-2) at 8-10.

**Proposed Conclusion of Law No. 23:**

The application of the factors set forth in *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) support approval of the Class Settlement Agreement. (Footnote omitted).

**Objection:**

*Reed* did not involve a proposed non-opt-out limited fund settlement under Rule 23(b)(1)(B), but rather involved a Rule 23(b)(3) class action settlement. Indeed, the Brinkmeyer Objectors have suggested that the settling parties refashion their proposal as a Rule 23(b)(3) settlement to give class members a chance to opt out. Under such an approach, the full amount of the available insurance could be devoted to the Rule 23(b)(3) settlement class, and only the opt-outs would forgo a share of the insurance proceeds and assume the risks of further litigation. Allowing opt-outs would have the further benefit of avoiding the issue of whether a mandatory settlement class in a mass tort suit is constitutional. *See Ortiz*, 527 U.S. at 845 (recognizing "the serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale").

**Proposed Conclusion of Law No. 24:**

Absent the settlement, prosecuting separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of the other Class Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Overcoming the risks attendant with this Litigation and successfully prosecuting the Class Members' Claims against the Settling Defendants would result in actual recovery on any money judgments that is no more than the amount already placed in escrow under the terms of the Class Settlement Agreement. Successful pursuit of individual claims against the Settling Defendants might at best result in a higher individual recovery from the available insurance proceeds for a few Class Members, but would likely exhaust those proceeds and leave nothing for the vast majority of Class Members' Claims after exhaustion of the limited fund. (Footnote omitted).

**Objection:**

The insurance proceeds that have been placed in escrow do not constitute a limited fund because the levee districts *can* appropriate funds to settle claims, and the proponents have failed to show that the levee districts are incapable of making *any* contribution to the settlement fund. Although the levee districts' assets are immune from seizure to satisfy a judgment, that fact alone does not entitle the levee districts to the benefits of a limited fund settlement without making any contribution. In *Ortiz*, the Supreme Court held that "a limited fund rationale for mandatory class treatment of a settlement-only action requires assurance that claimants are receiving the maximum fund," 527 U.S. at 863, and the proponents have not cited any authority to support their assertion that assets immune from seizure cannot be considered by a court in determining whether a defendant has

made its maximum possible contribution, or that a limited fund settlement can be approved where an insured defendant with substantial assets contributes nothing.  Any risk that pursuit of individual claims might exhaust the available insurance proceeds and leave other class members with potentially uncollectable judgments can be addressed by certifying a class under Rule 23(b)(3) to give individual class members the choice whether to settle for the insurance proceeds or to opt out and take the risk of proceeding to judgment.  *See* Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum (Doc. 18958) at 1-4; Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 2-5; Objections (Doc. 18179-2) at 8-10.

**Proposed Conclusion of Law No. 25:**

The Class Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Class Members and the Settlement Class in light of the complexity, expense and likely duration of this Litigation, the risk involved in seeking certification of a litigation class, and the risk involved in establishing liability and damages, as well as the limited funds available through the Settling Defendants. (Footnote omitted).

**Objection:**

The proposed settlement is not fair, reasonable, and adequate, because it does not benefit the class.  As explained in the Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 7-9, the proposed settlement provides some benefit to the lawyers, the levee districts, and the insurance company, but the class members will likely receive nothing of value from the settlement.  Indeed, class counsel told class members who inquired that "in view of the extraordinary number of claims it is highly unlikely that the Court will make any distribution of these funds directly to claimants." *See, e.g.,* Exhibit 73 and related testimony of Joseph Michael Bruno.

**Proposed Conclusion of Law No. 32:**

The Court finds that, absent settlement, there is a significant possibility that one or more Levee Districts may be found to have been free from fault in connection with the breaches or overtoppings of the flood control structures at issue in this Litigation.

**Objection:**

The proponents of the settlement have not cited any evidence or authority to support this proposed conclusion of law. Although pursuing this litigation may involve substantial risk, class members should have the ability to assess that risk for themselves and decide whether to remain in the settlement class, sharing in the distribution of the insurance proceeds, or opt out and assume the risks of litigation and collection. *See* Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum (Doc. 18958) at 4-5; Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 5-7; Objections (Doc. 18179-2) at 9-10.

**Proposed Conclusion of Law No. 34:**

Approximately 189 responses to the proposed settlement were filed into the record. Out of the entire Class of nearly 1,000,000 persons, only 76 objections were received prior to the Certification and Fairness Hearings; the remaining responses constituted neutral submissions or expressed support for the settlement. The extremely low number of objectors is a factor the Court takes into account as supportive of the proposed settlement. (Footnote omitted).

**Objection:**

Although some courts have found a small number of objections indicative of the fairness of a settlement, such an inference is not controlling, particularly where, as here, the settlement is sophisticated and the majority of absent class members are unrepresented by counsel and possess

insufficient knowledge to evaluate the fairness of the settlement.  Indeed, the relatively low number of objectors is likely the result of notices that were deficient and misleading for the reasons set forth in the objection to proposed finding of fact No. 3.  In particular, many more class members likely would have objected had the notices stated the size of each subclass so that class members could calculate an average recovery, or if the notices had provided an estimate of the damages incurred by each subclass so that class members could calculate the fraction of damages covered by the settlement fund.  Moreover, if the class had been informed of class counsel's belief that claimants are unlikely to receive any distribution from the settlement fund (*see, e.g.,* Exhibit 73 and related testimony of Joseph Michael Bruno), many more class members likely would have objected.

**Proposed Conclusion of Law No. 38:**

The characteristics the United States Supreme Court described in *Ortiz v. Fibreboard*, 527 U.S. 815, 119 S.Ct. 2295 (1999) for a mandatory limited fund class pursuant to Rule 23(b)(1)(B) are satisfied.

**Objection:**

The proposed mandatory settlement class and proposed settlement agreement do not satisfy the requirements of *Ortiz* for the reasons set forth in the Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum (Doc. 18958) at 2-5; Post-Hearing Memorandum (Doc. 18745) at 2-7; and Objections (Doc. 18179-2) at 8-10.

**Proposed Conclusion of Law No. 39:**

The whole of the Settlement Fund is devoted to the Claims, less only necessary fees and expenses.  (Footnote omitted).

**Objection:**

The proposed settlement agreement allows class counsel and counsel for any class member to seek an enhancement of costs and expenses. Such enhancement is not necessary and should not be allowed for the reasons set forth in the Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 12-14; and Objections (Doc. 18179-2) at 11-14.

**Proposed Conclusion of Law No. 40:**

The Settlement Fund is indeed a limited fund pursuant to Rule 23(b)(1)(B) and jurisprudence interpreting same. Unlike the settlement at issue in *Ortiz v. Fibreboard*, the limits of all applicable insurance policies are devoted to the settlement fund (with interest). Also, unlike the settlement in *Ortiz*, the assets of the settling Levee Defendants, who are unable to satisfy the Claims in any event, are immune from seizure.

**Objection:**

The settlement fund is not a limited fund within the meaning of Rule 23(b)(1)(B) and *Ortiz* for the reasons set forth in the Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum (Doc. 18958) at 2-5; Post-Hearing Memorandum (Doc. 18745) at 2-7; and Objections (Doc. 18179-2) at 8-10.

**Proposed Conclusion of Law No. 43:**

The Class as a whole will benefit from payment of the settlement funds.

**Objection:**

The class will receive only *de minimis* benefit from payment of the settlement funds. *See* Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 7-9; and Objections (Doc. 18179-2) at 6-8, 10-11. Indeed, class counsel told class members who inquired that "in view of the

extraordinary number of claims it is highly unlikely that the Court will make any distribution of these funds directly to claimants." *See, e.g.,* Exhibit 73 and related testimony of Joseph Michael Bruno.

**Proposed Conclusion of Law No. 44:**

All objections made to the certification of the Settlement Class and/or approval of the Class Settlement Agreement, due process, constitutionality, procedures and compliance with law (including, but not limited to, the adequacy of notice and the fairness of the proposed Class Settlement Agreement), lack merit.

**Objection:**

The objections submitted by class members Mary Brinkmeyer, Michelle LeBlanc, and Thomas C. Stuart (Doc. 18179-2) are meritorious for the reasons set forth in their Objections, Post-Hearing Memorandum (Doc. 18745), and Reply to Joint Movants' Supplemental Memorandum (Doc. 18958).

**Proposed Conclusion of Law No. 45:**

To the extent the Objection entered by Mary Brinkmeyer, Michelle LeBlanc and Thomas E. Stuart (Doc. No. 18179) ("the Brinkmeyer Objection") and any other Objections suggest that (a) notice was insufficient because it did not allow Class Members to estimate their individual recoveries, or (b) the absence of a specific allocation plan or formula prior to approval of the Class Settlement calls the adequacy of the settlement into question, the Court is not so persuaded. The law does not require that a distribution plan be formulated prior to class notification or class settlement approval, nor is there a compelling reason to do so under the circumstances. (Footnote omitted).

**Objection:**

The content of the notice was deficient because it failed to provide information that would

enable class members to estimate their individual recoveries, even though such information was readily available to the settling parties. *See* objection to proposed finding of fact No. 3; Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 9-11; and Objections (Doc. 18179-2) at 4-8.

**Proposed Conclusion of Law No. 47:**

To the extent the objectors suggest that the Court should require that the Class be converted to an opt-out class, this would frustrate the purpose behind the limited fund settlement pursuant to Rule 23(b)(1)(B).

**Objection:**

The proposed settlement class and agreement do not satisfy the requirements for a limited fund settlement under Rule 23(b)(1)(B) and *Ortiz* for the reasons set forth in the Brinkmeyer Objectors' Reply to Joint Movants' Supplemental Memorandum (Doc. 18958) at 2-5; Post-Hearing Memorandum (Doc. 18745) at 2-7; and Objections (Doc. 18179-2) at 8-10.  The Brinkmeyer Objectors have noted that, in denying certification of a mandatory settlement class and disapproving the proposed settlement, the Court could suggest that the settling parties refashion the proposal as a Rule 23(b)(3) settlement to give individual class members the choice whether to settle for the insurance proceeds or to opt out and take the risk of proceeding to judgment.  Such an approach would have the further benefit of avoiding the issue of whether a mandatory settlement class in a mass tort suit is constitutional.  *See Ortiz*, 527 U.S. at 845 (recognizing "the serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale"); *see also* Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 5-7.

**Proposed Conclusion of Law No. 48:**

To the extent the objectors challenge the propriety of Class Counsel seeking any

enhancement of costs and expenses, Section III(16) of the Class Settlement Agreement merely provides that Class Counsel and counsel of any other Class Member may seek same from the Court. No such application has been filed. Nor has the Court indicated how it will address such an application when and if filed.

**Objection:**

As explained in the Brinkmeyer Objectors' Post-Hearing Memorandum (Doc. 18745) at 12-14, any enhancement of an award of costs and expenses is unfair and unethical. Thus, the Court should strike from the proposed agreement the provision that holds open the possibility of counsel recovering more than reimbursement of their actual costs. The Court need not wait until a request is made to announce that no enhancements will be allowed. Rather, if the Court approves the parties' proposed settlement agreement, it should send a strong message that the agreement's enhancement provision is unacceptable by striking that provision at the outset.

Respectfully submitted,

 /s/ Jennifer J. Rosenbaum   
Jennifer J. Rosenbaum, Local Counsel  
La. Bar No. 31946  
New Orleans Workers' Center for Racial Justice  
217 N. Prieur St.  
New Orleans, LA 70112  
615-423-0152  
jjrosenbaum@gmail.com

 /s/ Michael T. Kirkpatrick   
Michael T. Kirkpatrick, Trial Attorney  
DC Bar No. 486293, *Pro Hac Vice*  
Allison M. Zieve  
DC Bar No. 424786  
Public Citizen Litigation Group  
1600 20th Street NW  
Washington, DC 20009  
202-588-1000  
mkirkpatrick@citizen.org

Counsel for Objectors Mary Brinkmeyer,
Michelle LeBlanc, and Thomas C. Stuart

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 10th day of July, 2009, I electronically filed the foregoing Brinkmeyer Objectors' Response to Joint Movants' Proposed Findings of Fact and Conclusions of Law with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all known counsel of record in this matter.

                 */s/ Jennifer J. Rosenbaum*
                 Jennifer J. Rosenbaum, Local Counsel