UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES * <br> CONSOLIDATED LITIGATION * <br> * <br> * <br> PERTAINS TO: INSURANCE * <br> Master Consolidated Class Action * <br> Complaint * <br> * <br> (Record Doc. No. 3413) * <br> * * * * * * * * * * * * * * * * * * * * * * * * | CIVIL ACTION NO.: 05-4182 <br><br> SECTION: "K" <br><br> MAGISTRATE: 2 <br><br> JUDGE DUVAL <br> MAGISTRATE JUDGE WILKINSON |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION, OR ALTERNATIVELY, TO MODIFY THE COURT'S ORDER STRIKING CLASS ALLEGATIONS FROM THE MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

**MAY IT PLEASE THE COURT:**

The Defendant Insurers, through their Liaison Counsel, Ralph S. Hubbard III, respectfully submit this Opposition to Plaintiff's Motion for Reconsideration, or Alternatively, to Modify the Court's Order Striking Class Allegations from the Master Consolidated Class Action Complaint.

**INTRODUCTION**

Plaintiffs' motion to reconsider is without merit. As the Fifth Circuit has stated, a motion for reconsideration "is an extraordinary remedy" that cannot be used to "rehash[] evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc*., 367 F.3d 473, 478-79 (5th Cir. 2004). Rather, reconsideration is reserved for cases in which there is: (1) an intervening change in controlling

-1-

law; (2) newly obtained evidence that was reasonably unknown; or (3) a need to correct a manifest error of law or fact. *Id.; see also Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Based on this standard, reconsideration is clearly unwarranted here because plaintiffs have presented no new controlling law and nothing that could not have been raised previously.

Initially, plaintiffs concede that the Court's order striking plaintiffs' class allegations with respect to their breach of contract claims was correct. (Plaintiffs' Brief at 6.) However, plaintiffs argue the cases on which this Court relied in striking the bad faith class allegations are inapposite because they, unlike the two state court cases plaintiffs cite, involved only contractual claims, not bad faith claims. As shown below, plaintiffs are in error: several of the cases on which this Court relied in fact involved the striking of bad faith class allegations. Moreover, because the Louisiana bad faith statutes necessarily involve an individualized inquiry into whether the insurer's conduct was arbitrary, capricious or without probable cause in each given instance, such claims are every bit as unsuitable for class treatment as claims for breach of contract. Indeed, since breach of the insurance contract is a prerequisite for asserting a bad faith claim, and since plaintiffs agree that common issues do not predominate with respect to the breach of contract claims, plaintiffs cannot reasonably argue that common issues nonetheless predominate with respect to bad faith claims.

Citing no case law whatsoever, plaintiffs invent an entirely new "reasonableness" standard that they insist this Court should have applied to their bad faith claims. They maintain that under Louisiana law, a so-called "minimal conduct" form of reasonableness should be applied to bad faith claims in lieu of a more exacting "desired-conduct" form of reasonableness typically applied to other claims, such as those for breach of contract. According to plaintiffs, because this Court applied the incorrect standard for "reasonableness," it erred in finding that

individualized questions as to whether defendants acted reasonably in adjusting their Hurricane Katrina claims predominated over any common questions. Plaintiffs are wrong on this point as well. There is simply no legal support for plaintiffs' "minimal conduct" theory, and, as demonstrated below, the Court's analysis regarding the individualized issues presented by plaintiffs' bad faith claims, thereby defeating class action treatment here, was entirely correct.

Plaintiffs' alternative argument, that the Court should either reinstate the class action allegations in light of the United States Supreme Court's decision to grant a writ of certiorari in *Shady Grove Orthopedic Association v. Allstate Insurance Co.,* 129 S. Ct. 2160 (May 4, 2009), or stay the matter until the Supreme Court rules in that case, also fails. As shown below, *Shady Grove* is completely inapposite.

Finally, the Court should reject plaintiffs' request that the class allegations be reinstated and the entire matter be referred to Magistrate Judge Wilkinson for resolution of all remaining claims. This Court has already determined, in its thorough and well reasoned June 16, 2009 Order, that plaintiffs have failed to satisfy the basic requirements for maintaining a class action. There is simply no reason to reinstate the class allegations, and no reason to refer this matter as a putative class action to Magistrate Judge Wilkinson.

## ARGUMENT

**I. The Court's Order Striking Plaintiffs' Bad Faith Class Allegations Was Entirely Proper.**

Plaintiffs contend that all the federal cases on which this Court relied involved only contractual claims, and that, unlike the state cases plaintiffs cite, none of the courts in these cases struck class allegations where class-wide statutory bad faith claims were asserted. As an initial matter, this is not a new argument and therefore is not one that would support reconsideration. Plaintiffs specifically referred to *Oubre v. Louisiana Citizens Fair Plan,* 961 So. 2d 504 (La. App. 5th 2007), *writ denied*; and *Orrill v. AIG, Inc.,* No. 05-11720 (Civil Dist. Ct., Parish of

New Orleans)¹ in their initial briefing, arguing that the cases are more on point than the federal cases defendants cited.  That argument fares no better than it did before.

In all events, plaintiffs' premise about the federal cases not involving bad faith allegations is simply incorrect.  For example, in *Caruso v. Allstate Insurance Co.*, 2007 WL 2265100, at *3-5 (E.D. La. Aug. 3, 2007), Judge Vance noted that the plaintiffs were asserting claims not only under Louisiana's Valued Policy Law and for breach of contract, but also for bad faith under La. Rev. Stat. §§ 22:658 and 22:1220.   In striking the class allegations, *including as to the bad faith claims,* Judge Vance specifically noted that the facts "certainly will vary from plaintiff to plaintiff, including the amount and type of damage sustained, [and] the specific cause of the damage (wind, rain, and/or flood)."  *Id.* at *4.

Judge Vance struck similar class allegations in *Markey v. Louisiana Citizens Fair Plan,* 2008 WL 5427708 (E.D. La. Dec. 30, 2008), another Hurricane Katrina case in which the plaintiffs asserted claims for statutory bad faith.  In language that fully supports this Court's order striking the class allegations here, Judge Vance wrote:

> Plaintiffs seek damages for breach of contract, as well as bad-faith penalties and attorney's fees.  These damages are not in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.  Rather, the Court will have to determine whether Citizens adjusted each class member's claim on a timely basis, and whether Citizens adjusted each claim in bad-faith.  Further, plaintiffs' claims will require a highly fact-intensive, "individualized determination" into the damages sustained by each of the members in the proposed class.

*Id.* at *3 (internal citations and quotations omitted).  Judge Vance further stated:

> Plaintiffs argue that Louisiana Citizens failed to timely adjust their policy and the policies of some 20,000 other similarly situated policyholders, and they assert bad-faith under  La. Rev. Stat. §§ 22:658 and 22:1220.   Plaintiffs have not, however, advanced a viable theory employing generalized proof to establish liability with respect to the class.  Defendant states, and plaintiffs do not

---

¹ Exhibit B to Plaintiffs' Original Opposition Brief (Doc. 17332).

> contradict, that each claim will require the Court to determine: the nature and extent of the damages sustained by the residence; the kind and quality of materials used in the original construction of the residence; the adjustment of loss made by Louisiana Citizens following the damage; the prices allowed for the repair in each residence; the cost of repair; whether the property sustained concurrent flood damage, and if so, the extent of such flood damage; the market conditions at the time the damages were assessed; the value of each of the damaged contents in the residence; and the different living expenses sustained by each insured. *In addition, the Court will have to determine whether Louisiana Citizens acted in bad-faith individually, in every case, and if so, the damages resulting from its bad-faith. In short, there is no class-wide proof available to determine Louisiana Citizens' liability to each member of the proposed class, "and only mini-trials can determine the issue." These highly individualized, case-by-case determinations are inappropriate for class treatment* under Rule 23(b)(3).

*Id.* at *4 (emphasis added, internal citations and quotations omitted).

Similarly, in *Aguilar v. Allstate Fire & Casualty Insurance Co.*, 2007 WL 734809 (E.D. La. Mar. 6, 2007), the plaintiffs asserted, *inter alia,* that the defendants "adjusted claims in bad faith subjecting them to state law penalty statutes" and engaged in a "wrongful scheme to delay, deny or underpay claims." *Id.* at *1. Judge Feldman found all plaintiffs' class allegations, including as to their bad faith claims, facially deficient, stating, in language equally applicable here:

> While Allstate's general internal policies for adjusting claims may arguably be one common issue of fact, demonstrating a wrongful pattern and practice of failing to adjust claims will require an intensive review of the individual facts of each class member's damage claim, including the nature and extent of damage, the timing and adjustment of each class member's claim, how much each class member was paid for his claim and for what damage, and whether that amount was sufficient and timely. On the face of the pleading, it is clear that those individualized and highly personal issues pertaining to each class member patently overwhelm any arguably common issues, rendering the claims inappropriate for class treatment.

*Id.* at *3.

Judge Feldman reached the same conclusion in *Henry v. Allstate Insurance Co.*, 2007 WL 2287817, at *4 (E.D. La. Aug. 8, 2007), yet another case in which the plaintiffs asserted statutory bad faith claims. He explained that the "plaintiffs allege that Allstate improperly adjusted hurricane property damage claims by utilizing software that undervalued the actual market cost of construction materials. This Court has *struck similar class allegations against an insurer based on its alleged corporate scheme and pattern and practice of bad faith and improper claims handling*." (emphasis added, internal quotation omitted). In so ruling, Judge Feldman agreed with the reasoning in *Pollet v. Travelers Property Casualty Insurance Co.*, 2001 WL 1471724 (E.D. La. Nov. 16, 2001), wherein Judge Clement found similar bad faith claims inappropriate for class treatment:

> *[E]ach of the thousands of allegations that [defendants] acted in bad faith by intentionally failing to pay legitimate claims will require an individual investigation into the damages, the type of insurance policy, and the defendants' actions*. Accordingly, the Court finds that maintaining the instant suit as a class action would result in several thousand mini-trials on individual issues, rather than a single comprehensive resolution of issues relevant to the class as a whole.

*Henry,* 2007 WL 2287817, at *4 n.6 (*quoting Pollet,* 2001 WL 1471724, at *2) (emphasis added). *See also Spiers v. Liberty Mut. Fire Ins. Co.*, 2006 WL 4764430, at *2 (E.D. La. Nov. 21, 2006) (Feldman, J.) (striking class allegations in yet another case involving statutory bad faith claims).

In short, contrary to plaintiffs' argument, the cases relied upon by this Court did in fact involve statutory bad faith claims asserted on a class-wide basis, not just breach of contract claims. These cases hold, as a matter of law, that there can be no class action treatment in a case such as this – *including with respect to bad faith claims* – and they directly support this Court's ruling striking the class allegations here. Indeed, by their very nature, bad faith claims, which require malicious intent and vexatious conduct on the part of the defendants, are even more

-6-

unsuitable -- not less -- for class treatment than breach of contract claims.  On these bases alone, plaintiffs' motion to reconsider should be denied.

Moreover, this Court should reject plaintiffs' attempt to save their class claims by concocting some sort of legal distinction between the standard for measuring the "reasonableness" of an insurer's conduct in connection with bad faith claims and the "reasonableness" of a defendant's actions in connection with other types of claims.  Plaintiffs insist that the former, which they describe as a "minimal-conduct sort" of "reasonableness," is susceptible to class action treatment.  Such an argument is specious.  According to plaintiffs, this supposed distinction between these two "reasonableness" standards is "subtle" and "often overlooked."  (Plaintiffs' Brief at 3, 10.)  In fact, the distinction is apparently so subtle that *no* court has recognized it, since plaintiffs fail to cite a single case in their lengthy discussion of "reasonableness" to support their argument.

In addition, plaintiffs' argument regarding the alleged distinction between contract and bad faith does not help them, because there can be no bad faith absent a breach of contract.  Louisiana law recognizes that bad faith claims "'do not stand alone,' but depend upon a 'valid underlying claim.'" *Edwards v. Allstate Prop. & Cas. Co.*, 2005 WL 221558, *9 (E.D. La. Jan. 27, 2005) (*quoting Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195 (La. Ct. App. 3d Cir. 2002)); *see also Hibbets v. Lexington Ins. Co.*, 2009 WL 1668505, at *4 (E.D. La. June 12, 2009) ("Claims for penalties under 22:658 and 22:1220 cannot stand alone and require that there be an underlying viable claim") (citing *Edwards*, 2005 WL 221558, at *2).  Thus, "absent a valid, underlying, insurance claim," the bad faith penalty statutes do not "provide a cause of action against an insurer[.]"  *Clausen v. Fidelity & Deposit Co.*, 660 So. 2d 83, 85 (La. Ct. App. 1st Cir. 1995).  *See also Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002).  Accordingly, not only do all the individualized issues that plaintiffs concede are inherent in a breach of contract

action necessarily render a bad faith action unsuitable for class treatment, but it would be illogical to certify plaintiffs' bad faith claims when they are derivative of plaintiffs' breach of contract class allegations which have already been properly stricken.

In any event, contrary to plaintiffs' contention, the Court's analysis regarding the individualized issues that plague plaintiffs' bad faith claims, thereby defeating class action treatment here, was entirely correct. This is borne out not only by all the above cases in which courts have stricken similar class claims, but also by the case law showing the highly individualized, case-specific nature of bad faith claims.

For example, in *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104 (La. 2008), cited by this Court, the Louisiana Supreme Court stated a "cause of action for penalties under La. R.S. § 22:658 requires a showing that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Id.* at 1112-13. In addition, the Court stated an insurer's conduct:

> depends on the facts known to the insurer at the time of its action, and this court has declined to assess penalties "when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. " * * * "[W]hen there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause.

*Id.* (*quoting Reed v. State Farm Auto. Ins. Co.,* 857 So. 2d 1012, 1021 (La. 2003)). The *Reed* Court discussed the same elements required to prevail on a statutory bad faith claim. 857 So. 2d at 1020-21. Both cases contemplate that courts will examine an insurer's actions in bad faith cases on an individualized basis.

So, when this Court referred to the need to consider the "reasonableness" of an insurer's conduct in evaluating a bad faith claim, it was clearly and correctly referring to the test for bad

faith set forth in Louisiana case law such as *Louisiana Bag* and *Reed*. And, contrary to plaintiff's contention, there is *nothing* "minimal" about that test, and nothing that would make a bad faith claim somehow more susceptible to class treatment. As this Court correctly noted, it would have to consider numerous individualized issues for each putative class member to determine defendants' liability for bad faith as to any given class member. (Order at 12-13.) Whether a defendant had a reasonable basis to deny a claim, which, as the *Louisiana Bag* Court specifically noted, "depends on the facts known to the insurer at the time of its action," 999 So. 2d at 1114, obviously cannot be determined on a class-wide basis.

For example, in *Louisiana Bag,* the Court considered the following highly case-specific facts in determining whether the insurer there acted in bad faith – *i.e.,* whether it had a reasonable basis for its actions: (a) the information the insurer had about the extent of the insured's loss and the scope of its insurance coverage; (b) reports provided by the insurer's own experts showing damages in excess of the policy limits; (c) whether the insurance coverage applied on a "blanket" basis; (d) whether the slab of the damaged structure could be reused; and (e) testimony by the insurer's representative that his reason for not tendering timely payment was that he "didn't feel comfortable." *See, e.g.,* 999 So. 2d at 1121-22. This Court would have to consider these same types of individualized factors in each and every case, for each and every putative class member, with respect to each and every defendant's adjustment of a particular claim to determine whether that defendant had a reasonable basis for its payment decision.

And that would be true regardless of plaintiffs' so-called minimal industry standard claim. Whatever the "industry standard," there can be no bad faith absent arbitrary or capricious conduct with respect to any particular claim. Accordingly, this Court, like the courts in all the federal cases discussed above, was entirely correct in striking plaintiffs' class allegations – including as to their bad faith claims.

Plaintiffs' insistence that the two state court cases they cite, *Oubre* and *Orrill*, control here also fails. Plaintiffs erroneously argue that, unlike in the federal cases relied on by this Court, the courts in *Oubre* and *Orrill* analyzed statutory bad faith claims under the "minimal conduct" standard for "reasonableness" that plaintiffs claim this Court failed to apply here. (Plaintiffs' Brief at 12-13.) As demonstrated above, plaintiffs' argument is groundless, because the federal cases striking class allegations also involved statutory bad faith claims. Moreover, neither the *Oubre* nor *Orrill* courts referred, explicitly or implicitly, to any sort of "minimal conduct" test for bad faith.

In any event, the certification analysis in *Oubre* and *Orrill* regarding commonality and predominance was necessarily flawed in light of the Louisiana Supreme Court's recent illustration in *Brooks v. Union Pacific R.R. Co.*, 2009 WL 1425972 (La. May 22, 2009). Both cases failed to properly apply the predominance analysis required by Rule 591(b)(3). In particular, the court in *Oubre* with regard to the Rule's predominance requirement reasoned that:

> The testimony at the certification hearing revealed that all of plaintiffs' claims against Citizens arise from damages caused by the same catastrophic events, i.e. Hurricanes Katrina and/or Rita, allege the same wrongful conduct, i.e., failure to timely initiate loss adjustment, and seek the same type of damages, i.e., penalties for violation of LSA-R.S. 22:658(A)(3). Considering the testimony and evidence regarding these and other common issues, we cannot say that the trial judge erred in finding that common questions of law and fact predominate over individual issues for the purpose of class action certification.

*Oubre*, 961 So.2d at 510; *see also Orrill,* No. 05-11720 (Civil Dist. Ct., Parish of New Orleans). As the Louisiana Supreme Court emphasized in *Brooks*, however, "[t]he predominance requirement 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'" *Brooks*, 2009 WL 1425972, at *9 (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)).

The reasoning in both *Oubre* and *Orrill* is contrary to what *Brooks* requires.  As illustrated by *Brooks*, the predominance requirement of Rule 591(b)(3) necessarily entails an individualized analysis of all the issues, and a specific determination of what issues are to be addressed at trial.  The courts in both *Oubre* and *Orrill* failed to properly conduct such an analysis in their determination of the propriety of the certification of plaintiffs' bad faith claims.[2]

Furthermore, commonality and predominance are two distinct elements, and satisfaction of commonality does not establish that predominance is also met.  As the *Brooks* court noted, "[t]he predominance requirement is more demanding than the commonality requirement and, as such, mandates caution, especially where 'individual stakes are high and disparities among class members great.'" *Id*. at *9 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997)).  Any situation in which each class member has to prove causation separately necessarily defeats the purpose of a class action.  *Id*. at *10.  As previously stated. such a situation readily exists with regards to bad faith claims where individualized factors would have to be considered in each and every case, for each and every putative class member.  *See, e.g.*, *Smith v. Audubon Ins. Co.*, 679 So. 2d 372, 377 (La. 1996) ("[T]he determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case.").

Consequently, even had the Court been compelled to follow Louisiana law regarding certification in the absence of the Class Action Fairness Act ("CAFA")[3], the cases cited by plaintiffs would not have provided a proper foundation on which to certify plaintiffs' bad faith

---

[2] Additionally, and importantly, neither *Oubre* nor *Orrill* stand for plaintiffs' proposition that "[i]t is the underlying claims, and not the state or federal rules, which determine whether a claim is certifiable or not." (Plaintiffs' Brief at 13.)  *Oubre* in particular makes specific reference to a case in which class certification of bad faith claims was denied precisely because of the individualized determinations necessitated by such claims.  *See Defraites v. State Farm Mut. Auto. Ins. Co.*, 864 So. 2d 254 (La. App. 5th Cir. 2004) (class certification of bad faith claims deemed inappropriate due to existence of individualized variables).

[3] Order at 8.

claims.  As it is, the Court properly applied controlling federal law on these issues, including the cases in which the courts specifically found that questions related to bad faith are unsuitable for class action treatment.

### II.  Plaintiffs' Reliance On *Shady Grove* Is Misplaced.

Nor is there any merit to plaintiffs' suggestion that this Court should "set aside" its class certification ruling and "stay a final decision" on class certification pending a decision by the U.S. Supreme Court in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.,* 129 S. Ct. 2160 (certiorari granted May 4, 2009).  (Plaintiffs' Brief at 14.)  Defendant Allstate, as it turns out, is uniquely qualified to speak to the issues in that case, because defendant Allstate is also the respondent in *Shady Grove*.  The bottom line is that the issues in *Shady Grove* have nothing to do with the issues in this case.

The thrust of plaintiffs' argument here is that this Court should decide class certification in this case by reference to Louisiana's class certification standards rather than the federal class certification standards set forth in Rule 23 of the Federal Rules of Civil Procedure.  This Court squarely, and correctly, rejected that argument in its June 16, 2009 Order.  (*See* Order at 8 ("[T]his Court is bound to follow the federal procedural rule when sitting in diversity under the Class Action Fairness Act ('CAFA')").  Indeed, as this Court recognized, any other conclusion would turn CAFA on its head, since the whole point of the statute was to expand federal jurisdiction over class actions to prevent abusive class certifications "under more liberal state procedural rules."  (*Id.* at 9.)

Nothing in *Shady Grove* remotely calls that conclusion into question.  No one is arguing in *Shady Grove* that state procedural standards for class certification apply in federal court; that is clearly territory covered by Rule 23.  Under *Hanna v. Plumer*, 380 U.S. 460 (1965), that is

effectively the beginning and the end of the matter, since federal courts are entitled and required to apply valid Federal Rules of Civil Procedure. At issue in *Shady Grove* is the distinct question whether a categorical state *prohibition* on class actions for certain state-law claims applies in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F.3d 137 (2d Cir. 2008); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 466 F. Supp. 2d 467 (E.D.N.Y. 2006). In particular, New York has a statute that provides: "Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. CPLR § 901(b). The question in *Shady Grove* is whether this substantive provision applies in federal court, not whether New York's procedural criteria for class certification apply in federal court. The question to be decided in *Shady Grove* has no bearing on this case.

### III. The Court Should Reject Plaintiffs' Alternative Argument That It Set Aside The June 16, 2009 Order And Refer This Case To The Magistrate Judge.

Finally, plaintiffs argue the Court should, at the very least, set aside its June 16, 2009 Order, reinstate the class allegations stricken from the Master Complaint and refer this case to Magistrate Judge Wilkinson for possible resolution of all remaining claims. (Plaintiffs' Brief at 19.) Defendants respectfully request the Court to decline plaintiffs' self-serving invitation to purportedly "assist[] the Court and the other courts involved in achieving a fair and just resolution mutually beneficial to the policyholders and the companies involved," by having the class allegations reinstated and submitted for further proceedings before Magistrate Judge Wilkinson. (Plaintiffs' Brief at 19.) There is simply nothing "fair" or "mutually beneficial" about burdening defendants or the judicial system with resolving litigation on a class basis when, as this Court correctly recognized, this case never should have been brought as a class action.

Moreover, it would be improper for the Court to reverse its June 16, 2009 Order based upon plaintiffs' suggestion that it might facilitate settlement. As the Fifth Circuit has stated:

> [P]laintiffs' attempts at piecemeal certification of a class action, which they refuse to limit voluntarily, distorts the certification process and ultimately results in unfairness to all because of the increased uncertainties in what is at stake in the litigation and in whether the litigation will ever resolve any significant part of the dispute. The plaintiffs have emphasized that class certification will "facilitate" settlement. We are not sure of such a result. In any event, we should not condone a certification-at-all-costs approach to this case for the simple purpose of forcing a settlement. Settlements should reflect the relative merits of the parties' claims, not a surrender to the vagaries of an utterly unpredictable and burdensome litigation procedure.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 422 n.17 (5th Cir. 1998).

This Court has already determined, in a thorough and well reasoned opinion, that there can be no class action here. Accordingly, there is simply no reason to reinstate the class allegations, and certainly no reason to refer this matter as a putative class action to Magistrate Judge Wilkinson.

## **CONCLUSION**

For all the foregoing reasons, defendants respectfully request that this Court deny Plaintiffs' Motion for Reconsideration, or Alternatively, To Modify the Court's Order Striking Class Allegations from the Master Consolidated Class Action Complaint.

    Respectfully submitted:

    */s/ Ralph S. Hubbard*
    Ralph S. Hubbard, III (La. Bar No. 7040)
    LUGENBUHL, WHEATON, PECK,
     RANKIN & HUBBARD
    601 Poydras Street, Suite 2775
    New Orleans, Louisiana  70130
    Telephone:  (504) 568-1990
    **Liaison Counsel for Insurer Defendants'**

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served upon all counsel of record by electronic notice from the Court's CM/EC Filing System, this 28th day of July, 2009.

                                    */s/ Ralph S. Hubbard III*
                                    Ralph S. Hubbard III