UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISAINA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K" (2), (3) |
| PERTAINS TO LEVEE AND MR-GO: | * | |
| | * | |
| NO. 06-5116 (SIMS) | * | |
| NO. 06-5118 (RICHARD) | * | JUDGE DUVAL |
| NO. 06-5127 (DEPASS) | * | |
| NO. 06-5128 (ADAMS) | * | MAG. J. KNOWLES |
| NO. 06-5134 (CHRISTOPHE) | * | |
| NO. 06-5137 (WILLIAMS) | * | |
| NO. 06-5131 (BOURGEOIS) | * | |
| NO. 06-5142 (AUGUSTINE) | * | |
| NO. 06-5132 (FERDINAND) | * | |
| NO. 06-5140 (PORTER) | * | |

******************************************

**OBJECTIONS TO THE PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW SUBMITTED BY THE PROPONENTS**

Plaintiffs in Case No. 06-5116 (*Sims*), Case No. 06-5118 (*Richard*), Case No. 06-5142 (*Augustine*), Case No. 06-5132 (*Ferdinand*), Case No. 06-5131 (*Bourgeois*), Case No. 06-5134 (*Christophe*), Case No. 06-5137 (*Williams*), Case No. 06-5127 (*DePass*), Case No. 06-5128 (*Adams*), and Case No. 06-5140 (*Porter*), who filed Complaints under F.R.C.P. 20 (the "Objecting Plaintiffs"), object to the Proposed Findings of Fact and Conclusions of Law submitted by the proponents of the settlement (Doc. 19072) on or about June 26, 2009, as follows.

While the *Sims*, et al plaintiffs generally object to all of the Proposed Findings and Conclusions on the ground that they were denied discovery and were given insufficient time for

discovery and investigation prior to the hearing, many of the proposed findings and conclusions are unobjectionable as written, and this record is already more than sufficiently voluminous. Accordingly, rather than submitting a separate set of proposed findings and conclusions, these plaintiffs believe that it would be more expedient simply to object to the proponents' proposed findings and conclusions with which the Objecting Plaintiffs take specific issue.

### Findings of Fact

1. The notice provided to all Class Members of the preliminary certification of the Settlement Class, the proposed settlement, the Certification Hearing, and the Fairness Hearing complies with the Preliminary Approval Order. The Preliminary Approval Order expressly reserved in favor of all Class Members the right to raise for *de novo* consideration by this Court objections to certification of the proposed Settlement Class, to approval of the Class Settlement Agreement and to all related issues at the Certification Hearing and/or the Fairness Hearing. (footnote omitted).

**Objection:** The Objecting Plaintiffs contend that the notice provided to all Class Members was inadequate for the reasons stated at pages 20-21 of their Post Hearing Brief (Doc. 18779). Moreover, the amount of the expenses being sought by certain plaintiffs' counsel was never disclosed in the Class Notice or otherwise. When the Objecting Plaintiffs attempted to obtain discovery respecting the amount of expenses at issue the Court denied them that opportunity. When the Objecting Plaintiffs attempted to examine Mr. Bruno on the same subject during the April 2, 2009 hearing, the Court allowed only limited cross-examination on the amount of costs at issue, and Mr. Bruno provided no meaningful information. (Tr.167-168). Finally, the proponents have offered no explanation of how the payment of these costs could conceivably benefit the Class Members.

3. The Notices were clear, simple, substantive and informative. No significant or required information was missing. The Notice Program and Notices were not misleading to Class Members. (footnote omitted).

**Objection:** See objection to Finding No. 1.

7. Projects that are underway and future projects contemplated that will be administered by the Levee District include the rebuilding of the entire levee protection system surrounding the Greater New Orleans Metropolitan area to bring it to a 100 year level of protection, as defined by the United States Army Corps of Engineers. Future projects will include T-walls constructed along the Mississippi River Gulf Outlet, a surge barrier and the raising of levees along the north side of the Gulf Intercoastal Waterway.

**Objection:** This Proposed Finding is irrelevant.

11. The respective Levee Districts do not have sufficient assets to meet their obligations to pay either existing debt or their share of future obligations for proposed federal projects.

**Objection:** Mr. Doody's testimony respecting this Proposed Finding was insufficient in that there was no evidence to support it.

15. The respective Levee Districts could not (and responsibly would not) pay for judgments that could be returned in connection with this Litigation and still maintain the ability of each respective Levee District to fulfill its statutory obligations and maintenance and operational obligations for the Lake Pontchartrain and Vicinity Hurricane Protection System. (footnote omitted).

**Objection:** It is inconceivable that an entity like the Orleans Levee District ("OLD") owning total assets, net of liabilities, valued at $132,785,082 (Exhibit 88, p.14) "could not" make a meaningful contribution - - or any contribution - - to a limited fund class settlement and still fulfill its statutory obligations. Mr. Doody's testimony cannot be considered credible in view of his lack of knowledge concerning the Orleans Levee District's financial statements.

17. The Court finds credible the testimony of Timothy P. Doody, President of the Southeast Louisiana Flood Protection Authority – East, that the Authority and the Levee Districts cannot pay for judgments in excess of its available insurance limits that result from this litigation and will not appropriate funds for that purpose even for a single claimant. (footnote omitted).

**Objection:** See objection to Finding No. 15. Mr. Doody's testimony was not supported by any evidence, and he was unaware that the Orleans Levee District had $5,293,685 in a restricted fund, some of which was specifically allocable to the payment of legal settlements. (Exhibit 88, p. 46.)

19. The State of Louisiana is not responsible for the payment of judgments or other debts of its political subdivisions. La. R.S. 13:5109. See also, La. Const. Art. XII, Section 10 and Art. VII, Sect. 14.

20. There is no evidence that the State of Louisiana has ever paid a money judgment or a debt for any of the Levee Districts. Rather, the record merely contains evidence that the Louisiana Legislature has appropriated funds for the payment of judgments and settlements involving the State and/or State agencies. (footnote omitted).

**Objection to Nos. 19 and 20:** There is evidence that the defendant Levee Boards routinely pay judgments and settlements, and the Fifth Circuit's opinion in *Vogt v. Board of Commissioners of the Orleans Levee District*, 294 F. 3d 684 (5th Cir. 2002), indicates that the OLD believed it could be successful in seeking the Louisiana Legislature's payment of a judgment against the Levee District.

53. Further, this Court takes judicial notice that the damages resulting from the flooding were so widespread and immediate that the entire populace of the Hurricane Affected Geographic Area had knowledge of the damages arising out of or resulting from the Levee failures.

**Objection:** There is no evidence that any person in the population affected by Hurricane Katrina had knowledge of the amount of damages resulting from the levee failures, much less any evidence that the "entire populous" did.

81. All operations related to the dredging of the 17th Street Canal were completed in 1992.

82. All operations performed pursuant to contracts and related to construction of the 17th Street flood walls were also completed by August, 1992.

**Objection to Nos. 81 and 82:** Although no work was done after August 1992, that is not to say that the work was "completed" by then, and, in fact, there was no evidence that the work was ever accepted.

88. Any additional insured coverage that may have been provided to any Levee District under any of the contractors or engineers insurance policies from the time of the dredging would potentially respond only to damages sustained during the policy period of those policies. And the court finds that none of the damages being claimed by Plaintiffs were

sustained prior to August 29, 2005.

**Objection:** This finding is speculative, and, if these were occurrence policies, they likely would have responded to damages sustained after the policy periods as a result of acts or omissions that were shown to have occurred during the policy periods.

### Conclusions of Law

4.   The form and content of the Class Notice and the manner such Class Notice was given to Class Members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement and all related procedures and hearings were reasonable and reasonably calculated under all the circumstances and have been sufficient, both as to form and content, to apprise interested parties of the pendency of the litigation, the preliminary certification of the Settlement Class, the Class Settlement Agreement and its contents, the Certification Hearing, the Fairness Hearing and Class Members' rights to hire counsel, to appear in Court to have their objections heard, and to afford Class Members an opportunity to object.  Such notice complied with all requirements of federal and state laws and constitutions, including the due process clause and Federal Rule of Civil Procedure 23.  Such notice constituted the best notice practical under the circumstances and constitute due and sufficient notice to all potential Class Members of the Settlement Class, as preliminarily certified and defined by the Preliminary Approval Order and of the Certification Hearing and the Fairness Hearing.

**Objection:**  See objection to Findings Nos. 1 and 3.

17.   The State of Louisiana has no obligation to and is precluded by law from paying judgments against political subdivisions such as the Orleans Levee District, the East Jefferson Levee District and the Lake Borgne Basis Levee District.  La. Const. Art. XII, Sect. 10 and Art. VII, Sect. 14; La. R.S. 13:5109 (B)(2).

**Objection:**  As noted at page 11 of the Objecting Plaintiffs' Post Hearing Brief, La. Const. Art. XII, Sect. 10(C) provides that the Legislature may appropriate funds to satisfy or settle judgments against both the state and its political subdivisions, and the legislature could amend section 5109(B)(2) so as to remove any statutory impediment to its enacting such an appropriation.

25.   The Class Settlement Agreement is fair, reasonable and adequate and in the best interests of the Class Members and the Settlement Class in light of the complexity, expense and likely duration of this litigation, the risk involved in seeking certification of a litigation class and

the risk involved in establishing liability and damages, as well as the limited funds available through the Settling Defendants. (footnote omitted).

**Objection:**  For the reasons stated at pages 12-15 of Objecting Plaintiffs' Post Hearing Brief, the Class Settlement Agreement is not fair, reasonable, adequate or in the best interest of the Class Members.  It benefits only the defendants by either eliminating or limiting their potential liability to the plaintiffs, and certain of the plaintiffs' attorneys by providing funds to reimburse them for costs they have advanced.  Additionally, these "reimbursements of costs" may be "enhanced" so as to provide those attorneys with an additional benefit, despite the Agreement's representation to the contrary.  The proponents have never explained how the payment of certain of plaintiffs' counsels' costs could provide a benefit to the plaintiff class members.

31.     The Levee Districts' defense will include that the flood control structures at issue were completely designed and constructed under the supervision of the United States Army Corps of Engineers and that operation and maintenance of those flood control structures had little or nothing to do with their breaches or overtoppings.  Indeed, this Court has recognized in connection with rulings on previous motions that the Army Corps of Engineers bears a substantial degree of fault in connection with the design and construction of flood control structures that are at least in this litigation.

**Objection:**  This is not a conclusion of law based upon facts that were developed at the hearing. There is no evidence of culpability or the absence of culpability, and there is no basis now for the Court to reach a conclusion suggesting the absence of culpability.

32.     The Court finds that absent settlement, there is a significant possibility that one or more Levee Districts may be found to have been free from fault in connection with the breaches or overtoppings of the flood control structures at issue in this litigation.

**Objection:**  While the possibility may theoretically exist, it is not a significant one.  Again, there is no supported finding of fact suggesting any basis for this conclusion as there was no evidence introduced at the hearing respecting fault.

33.     The Class Settlement Agreement is the result of extensive arms-length negotiations among highly experienced counsel, with sufficient discovery and full knowledge of the risks

inherent in this litigation. It was entered into in good faith, at arms-length and without collusion. (footnote omitted).

**Objection:**  As suggested in Objections to finding No. 25 above, a settlement that benefits only the defendants and some of the attorneys representing the plaintiffs is not likely to have been an arms-length transaction.

34. Approximately 189 responses to the proposed settlement were filed into the record. Out of the entire Class of nearly 1,000,000 persons, only 76 objections were received prior to the Certification and Fairness Hearings; the remaining responses constituted neutral submissions or expressed support for the settlement. The extremely low number of objectors is a factor the Court takes into account as supportive of the proposed settlement. (footnote omitted).

**Objection:** The relatively low number of objectors was a function of the inadequacy of the Class Notice and does not constitute a basis for supporting the Proposed Settlement. For example, had the Class Notice included an honest and frank explanation of the indemnity obligations imposed upon the Class by the proposed settlement agreement as it then existed, such that the Class Members would likely have understood the disclosure, it would have inevitably and greatly increased the number of objectors.

35. The Parties have made an informed decision as to the fairness and adequacy of the proposed Class Settlement Agreement. (footnote omitted).

36. The proposed settlement is not the result of collusion or inequitable treatment of any Class Members. (footnote omitted).

**Objection to Nos. 35 and 36:** For the reasons stated at pages 14-15 of the Objecting Plaintiffs' Post Hearing Brief, the proposed Class Settlement does not treat Class Members equitably. The fact that plaintiffs' counsel and St. Paul have agreed to a settlement in which the plaintiff Class Members receive nothing and, instead, would be saddled with the obligation to indemnify St. Paul is inconsistent with the absence of collusion, even though the indemnity provision has since been removed.

38. The characteristics the United States Supreme Court described in *Ortiz v. Fibreboard*, 527 U.S. 815, 119 S.Ct. 2295 (1999) for a mandatory limited fund class pursuant to Rule 23(b)(1)(B) are satisfied.

39. The whole of the Settlement Fund is devoted to the Claims, less only necessary fees and expenses.

40. The Settlement Fund is indeed a limited fund pursuant to Rule 23(b)(1)(B) and jurisprudence interpreting same. Unlike the settlement at issue in *Ortiz v. Fibreboard*, the limits of all applicable insurance policies are devoted to the Settlement Fund (with interest). Also, unlike the settlement in *Ortiz*, the assets of the settling Levee Defendants, who are unable to satisfy the Claims in any event, are immune from seizure.

**Objection to Nos. 38-40:** For all the reasons stated in pages 4-15 of the Objecting Plaintiffs' Post Hearing Brief, the proposed Class Settlement is completely inconsistent with the holdings of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295 (1999). Any findings or conclusions that purport to be consistent with the holdings of *Ortiz* must explain how the Class Members will benefit from the settlement and how the limited fund will be "devoted" to the Class Members' claims. The proponents of the Proposed Findings have acknowledged that there will likely be no "devotion" of funds to the claims of the plaintiff Class Members.

43. The class as a whole will benefit from payment of the settlement funds.

44. All objections made to the certification of the Settlement Class and/or approval of the Class Settlement Agreement, due process, constitutionality, procedures and compliance with law (including, but not limited to, the adequacy of notice and the fairness of the proposed Class Settlement Agreement), lack merit.

45. To the extent the objection entered by Mary Brinkmeyer, Michelle LeBlanc and Thomas Stuart (Doc. No. 18179) (the "Brinkmeyer Objection") and any other objections suggest that: (a) notice was insufficient because it did not allow Class Members to estimate their individual recoveries, or (b) the absence of a specific allocation plan or formula prior to approval of the Class Settlement calls the adequacy of the settlement into question, the Court is not so persuaded. The law does not require that a distribution plan be formulated prior to class notification or class settlement approval, nor is there a compelling reason to do so under the circumstances. (footnote omitted).

**Objection to Nos. 43-45:** Objections to these conclusions are supported by the points made above and by those made in the *Brinkmeyer* Plaintiffs' Post Hearing Briefs. (Doc. Nos. 18745 and 18958). There has been no showing whatever that any plaintiff Class Member will receive a benefit. Instead, certain plaintiffs' counsel will benefit from the reimbursement of their expenses, St. Paul will benefit from the limitation of its litigation costs, and the Levee Districts will benefit from their release from the litigation without paying anything in settlement.

47. To the extent the objectors suggest that the Court should require that the Class be converted to an opt-out class, this would frustrate the purpose behind the limited fund settlement pursuant to Rule 23(b)(1)(B).

**Objection:** While the proponents of the Class may find conversion to an opt-out class frustrating, absence of the ability to opt out of the class will result in a clear violation of the plaintiffs' due process rights, as enunciated in *Ortiz, supra*.

48. To the extent the objectors challenge the propriety of Class Counsel seeking any enhancement of costs and expenses, Section III(16) of the Class Settlement Agreement merely provides that Class Counsel and counsel of any other Class Member may seek same from the Court. No such application has been filed. Nor has the Court indicated how it will address such an application when and if filed.

**Objection:** For the reasons stated in the Objecting Plaintiffs' briefs, any "enhancement" of an award of costs would be both unlawful and unethical, as well as entirely inconsistent with the Class Notice's representation that none of the plaintiffs' counsel will seek attorneys' fees. There is no reason why the "enhancement" provision should be included in the settlement agreement or in any order approving it.

49. The *Sims* Objectors' Post Hearing Memorandum (Doc. 18779) misconstrues the import of provisions in the Class Settlement Agreement (Section II(6) and (23)) to the effect that the Certification and Fairness Hearings would be no less than forty-five calendar days after the Objection Deadline. This provision would have afforded proponents of the settlement more time to respond to objections before the Certification and Fairness Hearings, a benefit which they merely opted not to exercise. Further, this Court has the right to control its own docket and this Court set these hearings in the Preliminary Approval Order to which the settlement proponents agreed.

**Objection:**  This is not an appropriate conclusion of law, but simply an argument against the Objecting Plaintiffs' position.  The Objecting Plaintiffs should have been allowed to conduct the discovery that was denied them, and they should have been allowed the full forty-five days to do so.

                                    Respectfully submitted,

                                    /s/ James K. Irvin
                                    James K. Irvin (#7166)
                                    MILLING BENSON WOODWARD L.L.P
                                    909 Poydras Street, Suite 2300
                                    New Orleans, LA  70112-1010
                                    Telephone:  (504) 569-7000
                                    Facsimile:    (504) 569-7001
                                    jirvin@millinglaw.com

Of Counsel
John J. Cummings, III (#4652)
Cummings & Cummings
416 Gravier Street
New Orleans, LA  70130

## Certificate of Service

      I hereby certify that on the 10th day of July, 2009, I electronically filed Objections to the Proposed Findings of Fact and Conclusions of Law Submitted by the Proponents with the Clerk of Court by using CM/ECF system which will send a notice of electronic filing to all known counsel of record in this matter and caused copies to be hand-delivered to the Clerk of Court and counsel as directed by the Court's notice.

                                                          /s/ James K. Irvin

MBW 384409