UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| | § | |

UNITED STATES' MEMORANDUM IN SUPPORT
OF *ITS EX PARTE* MOTION TO CORRECT THE RECORD

The United States' Proposed Finding of Fact 362 states that: "Flooding would not have occurred without overtopping, and the overtopping would not have occurred without the loss of the Reach 2 levee's protective elevation. Bea 1092:12-1093:3; 1132:2-1133:20; 1579:9-16." Doc. 19139 ¶ 362.  Clearly, this is not the position of the United States, as made clear in its post-trial brief:

> The levees probably would not have withstood Katrina's surge even if they had been at full design specification when the storm struck. They were not designed to withstand prolonged overtopping, yet they would have been massively overtopped for hours even if they had been at the design grade of 17.5 feet. It may therefore be inferred that the levees—specifically those pertinent here, the MRGO Reach 2 and NOE Back—would have failed under Katrina's onslaught even if they had been at their full design specifications when the storm struck.

Doc. 19176 at 74. Later in the brief, the United States explained that the overtopping rates found by Dr. Donald Resio for a 17.5 foot levee would be powerful enough to cause massive damage:

> Dr. Resio analyzed the rates of overtopping that occurred when the contribution of waves was taken into account. He found that with the levee crest at 17.5 feet overtopping flow, when averaged over a thirty-minute period, reached a maximum ranging from 2.3 to 2.6 cubic feet per second per foot. JX-0193 (Resio Rpt.) at 50, Table 3. He also measured the length of time that overtopping flow exceeded internationally recognized thresholds for erosion of an earthen levee. *See generally* DX-1748 (Resio Supp. Rpt.). The lower threshold, for erosion onset, was exceeded for more than four hours where the levee crown stood at the LPV design grade of 17.5 feet. The upper threshold, for major damage, was exceeded for about thee hours. *Id.* at 6, Fig. 1. To discover how these periods would have been affected by smaller waves, simulating conditions comparable to those predicted by Plaintiffs under "No MRGO" or "Mitigated MRGO" conditions, he modeled overtopping with waves one and two feet smaller than those that were generated by Katrina. He found that these periods would have been reduced only minimally if the significant wave height had been two feet lower. In that scenario, the lower threshold would have been exceeded for slightly less than four hours and the upper threshold would have been exceeded for a little less than three hours. *Id.*

Doc. 19176 at 80-81. Plaintiffs' expert Professor Johannes Vrijling testified similarly.

Doc. 19176 at 81-82.

Instead of being the position of the United States, proposed finding of fact 362 is an artifact of the process undertaken to convert statements in the brief into findings of facts. Indeed, a statement similar to Proposed Finding of Fact 362 appears in the United States' brief: "Plaintiffs presented testimony that flooding resulted from overtopping, overtopping resulted from the loss of levee crest elevation, and the loss of crest elevation resulted from the proximity of the eroded banks of the MRGO. Bea 1092:12 – 1093:3; 1132:2 – 1133:20; 1579:9–16." Doc. 19176 at 91-92. This statement in the brief was a portion of a larger section explaining why Dr. Bea's lateral displacement theory is erroneous, and relies upon the same transcript citations as proposed finding of fact 362.

Therefore, it is clearly not the United States' position that overtopping would not have occurred without a reduction in levee elevation. Rather, the evidence presented by the United States' and Plaintiffs' expert teams shows that destructive overtopping rates would have eroded even a 17.5 foot leeve. Proposed Finding of Fact 362 was simply a mistake created out of the process used to draft the findings of fact.

This Memorandum in Support of the United States' *Ex Parte* Motion to Correct the Record is Respectfully Submitted,

                                        TONY WEST
                                        Assistant Attorney General

                                        PHYLLIS J. PYLES
                                        Director, Torts Branch

                                        MARY M. LEACH
                                        Assistant Director, Torts Branch

                                        ROBIN DOYLE SMITH
                                        Senior Trial Counsel, Torts Branch

                                        s/ Paul Levine
                                        PAUL LEVINE
                                        Trial Attorney, Torts Branch
                                        Civil Division
                                        U.S. Department of Justice
                                        Benjamin Franklin Station, P.O. Box 888
                                        Washington, D.C.  20044
                                        (202) 353-2574 / (202) 616-5200 (Fax)
Dated: August 10, 2009                 Attorneys for the United States of America