UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| PERTAINS TO: SEVERED MASS JOINDER CASES | NO: 05-4182 |
| | SECTION "K" (2) |
| *Severed from:* | |
| *Abadie I, 06-5164, and* | JUDGE DUVAL |
| *Abadie II, 07-5112* | |
| | MAG. WILKINSON |
| *APPLIES TO "FORCED PLACE INSURANCE"* | |
| | |
| | CIVIL ACTION |
| GARY ROBERT, MARY RYAN, ALTHEA HART-JENKINS, DOROTHY THREETON, and SANDRA WILLIAMS | NO. 09-2610 |
| | |
| VERSUS | |
| | |
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA | |

## OPPOSITION TO MOTION TO SEVER

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs in the above captioned matter, who oppose the defendant's Motion to Sever, for the following reasons:

**I.**

Pursuant to Court Order, the above referenced claims were severed from mass joinders incorporating homeowner insurance disputes resulting from hurricane Katrina, with the proviso that they be maintained in a group form relating strictly to "Force Placed Insurance" format. The above enumerated Complaint was timely filed.

**II.**

In each of the above referenced matters, Plaintiffs were named as additional insureds under the policy of insurance.

**III.**

This matter involves the rights of homeowners in relation to their mortgage companies and insurance policies called in question as result damages associated with Hurricane Katrina. In particular, the plaintiffs' cases had insurance policies obtained by the lender/mortgage company defendants directly, thereby naming as the insured in the respective policies the lender/mortgage company defendants, with the homeowner as an additional insured.

Generally, when a homeowner obtains financing from a lender/mortgage company, the debt is secured by the immovable property and governed by the terms of a mortgage agreement. In most instances, the lender requires the debtor to insure the immovable property, at the debtor's expense, to protect against catastrophic diminution of the security interest. When the homeowner fails to maintain this insurance, the lender has the option to obtain replacement coverage (referred to as "force placed" or "forced placed" coverage) through an insurer of its choosing, often at less than optimal rates, naming itself as the insured yet still passing the expense of the coverage to the homeowner.

Ideally, if the home (the security interest) is substantially damaged, the insurance company issues a settlement check to both the homeowner and the lender. These funds are available to either make repairs to the residence and return it to its prior value, or to be applied to the principle and reduce the outstanding debt. Based upon the competitive nature of the residential and commercial lending industry, the lender encourages the homeowner to make repairs, thereby maintaining the mortgage business with that customer.

However, as a result of the widespread destruction of Hurricane Katrina, the lender/mortgage company defendants ignored the needs of the homeowner and were unilaterally seeking to apply the tendered insurance proceeds to the outstanding debt. This tactic led to devastating effects on the homeowner.

Of particular importance to this Court's consideration is the unjust enrichment that the lender/mortgage companies defendants seek to gain. In essence, only because the catastrophic damage occasioned by the City of New Orleans has created a unique set of circumstances has the lender/mortgage companies defendants been able to do this.

As indicated above, the competitive nature of the lending industry has been erased from the local community. Of course, the lender/mortgage company defendants do nothing facilitate insurance recovery, leaving the homeowner faced with the following untenable situation:

1. The homeowner's property is substantially damaged, often a total loss;

2. The entire neighborhood in which comparable sales could be calculated has also been devastated, thereby reducing the loan value of the homeowner's property;

3. The homeowners' income stream may have been adversely affected, further limiting their ability to obtain a loan;

4. The homeowners' income and savings are being utilized to maintain alternative living arrangements;

5. Any new financing agreements will necessitate initiating a new insurance policy, which has now become impossible to obtain or prohibitively expensive.

6. Many insurance companies have only given unconditional tenders far less than the full amount of damage.

The homeowner is left in an untenable position because the insurance proceeds often will not pay off the outstanding debt. The end result is that the homeowner is left with a flooded out house, an outstanding debt to the lender, and the financial inability to rebuild their home. This leaves the homeowner with no recourse but to hire an attorney.

In the furtherance of this handling of the clients matter, the attorney is often able to procure substantial insurance proceeds over and above the initial insurance tender. However, these proceeds are going directly to the lender/mortgage company defendants without compensation to the attorney or the independent insurance adjusters who documented the full extent of the claim. However, the mortgage company, which has done nothing to procure these additional amounts, seeks to benefit from these outside labors.

Louisiana Civil Code, art. 3279 defines a mortgage as a nonpossessory right created over property to secure the performance of an obligation. A mortgage is a species of alienation, but not a sale. It is an alienation of a right on the property, not of the property itself, the title to which, as well as the possession, remains in the owner. Duclaud v. Rousseau, 2 La.Ann. 168 (1847). A mortgage gives the mortgagee, upon failure of the obligor to perform the obligation that the mortgage secures, the right to cause the property to be seized and sold in the manner provided by law and to have the proceeds applied toward the satisfaction of the obligation in preference to claims of others. La. Civil Code, art. 3279.

The mortgages at issue in the present case are conventional mortgages.[1] Because a conventional mortgage can only arise from a contract, the parties are bound by the express and implied conditions of any contract. As such, not all obligations arising out of contract need be

---

[1] A conventional mortgage may be established only by written contract. No special words are necessary to establish a conventional mortgage. La. C.C. art. 3287.

4

explicitly stated.  Into all contracts good faith performance is implied. La. Civil Code, art. 1983.

In the present cases, there is no dispute that the mortgagor homeowners continuously paid the premiums for the insurance policies at issue with the belief that the home (security interest) was insured for the benefit of the home(security interest), even though the policies had been obtained by the lender defendants.

Under the rule relating to permissive joinder of plaintiffs, the two specific requirements to joinder of parties are: right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of same transaction or occurrence, or series of transactions or occurrences, and some question of law or fact common to all parties must arise in action. Mosley v. General Motors Corp., C.A.8 (Mo.) 1974, 497 F.2d 1330. See, also, Desert Empire Bank v. Insurance Co. of North America, C.A.9 (Cal.) 1980, 623 F.2d 1371; League to Save Lake Tahoe v. Tahoe Regional Planning Agency, C.A.Cal.1977, 558 F.2d 914.

In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of rule governing permissive joinder of parties, a case by case approach is generally pursued; additionally, the court should consider whether a severance order would prejudice any party, or would result in undue delay. M.K. v. Tenet, D.D.C.2002, 216 F.R.D. 133.

Federal Rules of Civil Procedure require the trial court to examine all relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principle of fundamental fairness. Wynn v. National Broadcasting Co., Inc., C.D.Cal.2002, 234 F.Supp.2d 1067, dismissed 2002 WL 31681865.

The permissive joinder rule allowed borrowers who brought actions alleging that loans were usurious to join as party defendants all savings and loan institutions which had purchased

lender's loan paper in secondary market, even though not all institutions joined as party defendants held loan papers signed by any of the named class plaintiffs, where all loan transactions arose out of series of transactions or occurrences initiated by same lender and all claims involved same questions of law and fact. Moore v. Comfed Sav. Bank, C.A.11 (Ga.) 1990, 908 F.2d 834, rehearing denied 917 F.2d 570.

Where tort complained of by each plaintiff is the same and is claimed to have damaged each of the plaintiffs in the same manner, plaintiffs may join under subd. (a) of this rule or may maintain the suit as a spurious class suit under rule 23 of these rules, though judgments are several and no one is bound unless he is present. Kainz v. Anheuser-Busch, Inc., C.A.7 (Ill.) 1952, 194 F.2d 737, certiorari denied 73 S.Ct. 17, 344 U.S. 820, 97 L.Ed. 638.

## IV.

For the reasons assigned above the Court is well within its authority to maintain these action as a mass joinder.  Alternatively, if the Court is inclined to sever the cases, the Plaintiffs as that the severance be deferred until discovery common to all cases is completed.  Once common discovery is completed within consistent deadlines for all of the claims, the individual claims can be disseminated to various sections for trial purposes.

**WHEREFORE,** Plaintiffs pray that the Motion to Sever be denied.

        Respectfully submitted:

        LAW OFFICE OF JOSEPH M. BRUNO

        BY:   /s/ Joseph M. Bruno
        JOSEPH M. BRUNO (# 3604)
        L. SCOTT JOANEN (# 21431)
        855 Baronne Street
        New Orleans, LA   70113
        Telephone: (504) 525-1335
        Facsimile:  (504) 581-1493

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 12th day of August, 2009.

        /s/ Joseph M. Bruno
        Joseph M. Bruno