UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NO. 05-4182 AND CONSOLIDATED CASES |
| | SECTION "K" |
| APPLIES TO: BARGE THE COMPLAINT OF UNIQUE TOWING, INC. AND JOSEPH C. DOMINO, INC. 06-3313 | JUDGE DUVAL MAGISTRATE: (2) JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF MOTION FOR
ENTRY OF FINAL JUDGMENT ORDERING THE
DEPOSIT OF THE LIMITATION FUND AND
ABSOLVING LIMITATION PETITIONERS OF ANY
FURTHER LIABILITY ON BEHALF OF JOSEPH C.
DOMINO, INC. AND UNIQUE TOWING, INC.**

**MAY IT PLEASE THE COURT:**

On August 29, 2005, the Barge ING 4727 broke free of its moorings at the Lafarge North America Terminal located on the Inner Harbor Navigational Canal, and ultimately came to rest in a residential area in the Ninth Ward of the City of New Orleans. Litigation concerning the barge ensued shortly thereafter, when Ingram Barge Company ("Ingram") filed an action seeking exoneration from or

limitation of liability pursuant to 46 U.S.C. §183 *et seq.* on September 29, 2005.[1] This action was assigned C.A. 05-4419, and was assigned to Judge Berrigan. Parallel litigation was already pending in this section related to the numerous levee breaches which occurred in the City of New Orleans. In its complaint, Ingram sought to absolve itself from liability in connection with the breakaway of its 200' x 35' inland hopper barge ING 4727 from the Lafarge North America cement terminal located on the Industrial Canal in the City of New Orleans during Hurricane Katrina.

Several months later, various individuals and businesses filed claims against Unique Towing, Inc. ("Unique") and Joseph C. Domino, Inc. ("Domino") in the Ingram limitation proceeding, as well as in one of the class action suits filed on behalf of Ninth Ward residents.[2] These pleadings alleged that Unique and Domino's tug REGINA H and its crew had last contact with the barge prior to Hurricane Katrina, and had flipped two barges at the Lafarge facility, so that the empty ING 4727 would be outboard of the loaded ING 4745. In response to these actions, Unique and Domino filed their own action seeking exoneration from or

---

[1] This provision has since been recodified at 46 U.S.C. §30501 *et seq.* The Complaint is R.Doc. 1 in C.A. 05-4419.
[2] See C.A. No. 05-4419, R.Doc.No. 108; R.Doc. No. 110.

2

limitation of liability on June 28, 2006.[3] In the limitation complaint, Unique and Domino alleged that the value of the REGINA H following August 29, 2005 did not exceed $400,000.00 inclusive of pending freight, and attached a declaration under penalty of perjury from marine surveyor John Wiggins attesting to the value of the vessel. No party has ever challenged the accuracy of the valuation of the vessel stated in the limitation complaint.

Thereafter, numerous claims were filed against Ingram, Domino and Unique on behalf of various individuals claiming that the barge caused two of the breaches in the Industrial Canal levee wall and flooded the Lower Ninth Ward and other areas in Orleans and St. Bernard Parishes. As discovery progressed, Judge Berrigan elected to transfer all claims made against Lafarge North America to this section of court, and retained jurisdiction over the claims made against Ingram, Domino, and Unique. Judge Berrigan elected to try the case in phases. The focus of Phase 1 inverted the traditional inquiry in limitation cases by first trying the issue of whether the limitation plaintiffs could prove that they lacked privity and knowledge of the acts of negligence they allegedly committed.[4] In Phase 1, the

---

[3] This case was assigned C.A. 06-3313, and was consolidated with the Ingram limitation proceeding.
[4] Ordinarily, in a limitation action, the claimants initially bear the responsibility of

3

district court assumed that Ingram, Domino and Unique were negligent in the particulars alleged by the claimants in the Pre-Trial Order. After a bench trial was held on June 4th and 5th, 2007, Judge Berrigan issued her first opinion, finding that the limitation plaintiffs had failed to carry their burden of proving a lack of privity or knowledge. The district court identified three putative acts of negligence or unseaworthiness which Unique and Domino had failed to prove they lacked knowledge of. (C.A. 05-4419, R.Doc. No. 702).[5] Judge Berrigan, in this opinion, also made several key findings related to Domino and Unique's right to limitation of liability. First, the district court found that any negligence on the part of the captain and deckhand of the M/V REGINA H, or the Domino dispatcher, could not be imputed to Unique or Domino since these employees were not "managing agents" of the corporations. *Id.* Second, based on the factual evidence presented, the district court concluded that neither Unique nor Domino had privity or knowledge of the actual state of the moorings between the ING 4727 and the ING

---

establishing what acts of negligence or unseaworthiness proximately caused the casualty. The burden then shifts to the ship owner to establish his absence of privity or knowledge in those acts. *Farrel Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). The acts of negligence must be contributory and the proximate cause of the accident involved. *Hercules Carriers, Inc. v. Florida*, 768 F.2d 1558, 1566 (11th Cir. 1985).

[5] A copy of the opinion is attached as Exhibit 1.

4

4745. *Id.* The court also held that although Domino was a marine broker, it nevertheless could seek limitation of liability as an owner. *Id.*

The district court later determined that Phase 2 would focus on whether the limitation plaintiffs were negligent or their vessels unseaworthy with respect to those allegations against which they had failed to prove a lack of privity or knowledge. The Phase 2 trial was set for November 26, 2007, and by agreement of the parties, was submitted on the basis of the record of the Phase 1 trial. The district court rejected appellants' claims that Ingram was negligent, finding that Lafarge had sole responsibility for the ING 4727 at the time of the hurricane. (R.Doc. No. 928)[6] The district court rejected two of appellants' claims against Unique, finding that the vessel was not unseaworthy by reason of an unprepared crew or lack of required moorings, and also finding that the crew was not required to report to Unique's management that the ING 4727 was secured to the ING 4727 with single-part mooring lines. However, the district court imposed a duty on Unique to add rigging between the two barges sufficient to withstand a hurricane that would not arrive for over a day, and found that the crew breached this duty when they did not adjust the mooring lines between the barges. *Id.* However, as

---

[6] This second opinion is attached as Exhibit 2. See, also, 2008 WL 706303 (E.D. La. March 31, 2008).

5

Unique's management did not have privity or knowledge of the condition of these moorings, Unique's liability was limited to the value of the vessel.

A judgment exonerating Ingram and allowing Unique and Domino to limit was entered on April 8, 2008. (R.Doc. 930)[7] In the judgment, Judge Berrigan directed that the claims against Domino and Unique would be transferred to this section for resolution of the remaining issues of whether the negligence of Uniqe and Domino caused the breakaway, and whether the barge caused the breach in Inner Harbor Navigational Canal levee wall. The claimants filed a timely notice of appeal, and both Unique and Domino filed cross appeals. Following oral argument, in an unpublished opinion, the Fifth Circuit affirmed Unique and Domino's right to limitation, and rejected their claims that they were entitled to exoneration.

Following the Fifth Circuit's ruling, the case against Domino and Unique was remanded to this court for resolution. Trial is set in the spring of next year. Domino and Unique do not wish to litigate the issue of whether their negligence caused the barge's breakaway, nor the issue of whether the barge breached the levee wall. Domino and Unique are willing to forego these possible defenses and

---

[7] A copy is attached as Exhibit 3.

pay the limitation fund into the registry of court. This will foster judicial economy by avoiding the necessity of litigating difficult causation issues.

Accordingly, Domino and Unique are prepared to pay to the Registry of Court the $400,000.00 limitation fund together with interest at the rate of 6% from the date of the security in exchange for a judgment absolving them of any further liability in connection with the breakaway of the ING 4727. Through October 28, 2009, the interest due on this principal amount at 6% will be 20% of the principal, or $80,000.00. In exchange for this payment, Domino and Unique would request that the Court order that they shall have no further liability in these proceedings, and that the Ad Interim Stipulation filed with the Complaint be canceled, annulled, and of no further legal force and effect.

Under Rule F(8), once limitation is sustained, the Court is charged with the responsibility of discharging the funds to the claimants *pro rata*. At this time, as the claims have yet to be liquidated, the *pro rata* share due each claimant cannot be calculated. The funds would thus remain in the registry until such time as the claimants agree as to the amounts due each, or the Court makes that determination. During that time, the funds will accrue interest in the Clerk's account.

For the foregoing reasons, Domino and Unique pray that a final judgment, in

the form attached, be entered.

Respectfully submitted this 3rd day of September, 2009.

        WAITS, EMMETT & POPP

        BY:  s/John F. Emmettt
              JOHN F. EMMETT (La. 1861) T.A.
              1515 Poydras Street, Suite 1950
              New Orleans, Louisiana  70112
              Telephone: 504-581-1301
              Facsimile:   504-585-1796
        Attorneys for Unique Towing, Inc.

        HARRIS & RUFTY

        BY:  s/Jill S. Willhoft
              Rufus C. Harris, III (La. 6638), T.A.
              Jill S. Willhoft (La. 28990)
              650 Poydras St., Suite 2710
              New Orleans, Louisiana   70130
              Telephone:  (504) 525-7500
              Facsimile:  (504) 525-7222
        Attorneys for Joseph C. Domino, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel either by filing same with the Court's electronic filing system, or by e-mail or facsimile and/or by depositing same in the United States Mail, postage prepaid and properly addressed, this 3rd day of September, 2009.

s/John F. Emmett