## AMENDED CLASS SETTLEMENT AGREEMENT

The Parties hereto have reached agreement on the terms of a settlement of the Litigation, as set forth herein. This Class Settlement Agreement is dated as of the 21st day of November, 2008. (Capitalized terms not otherwise defined herein have the meaning set forth in Section II below.)

## I.    GENERAL PROVISIONS

1.    In entering into this settlement, each Party has taken into account the uncertainties, delays, expenses and exigencies of the litigation process, including litigation through appeals of whether a claim exists under Louisiana law, the limited funds available through the Settling Defendants, and depositions, document production and other discovery.

2.    The Settling Defendants have denied and continue to deny, any liability, wrongdoing or responsibility for the claims asserted in the Litigation and in the Pending Actions. The Settling Defendants reserve all defenses in the event that this Class Settlement Agreement is not finally approved by the Court, the claims asserted against them in the Litigation are not finally dismissed with prejudice and/or otherwise finally disposed of in a way that has the same force and effect as a final dismissal with prejudice, the Final Approval Order and Judgment is not entered, and/or this Class Settlement Agreement is terminated.

## II.    DEFINITION AND CONSTRUCTION OF TERMS

With respect to this Class Settlement Agreement, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. Unless the context requires otherwise, the following words and phrases will have the meanings set forth below when used in the initially-capitalized form in this Class Settlement Agreement. The use of the phrase "herein", "hereto" or "hereof" refers to the Class Settlement Agreement as a whole

**EXHIBIT**

_tabbies®_  1

and not to any particular section, sub-section or clause of the Class Settlement Agreement.  The word "including" (and with correlative meaning, "include") means including without limiting or restricting the generality of any description preceding the word "including" or "include", and shall mean "including but not limited to."  The use of the word "any" shall mean "any and all", and the use of the word "all" shall also mean "any and all."

1.      The term "Accrued Interest" shall mean the earnings and/or interest that accrues on any funds in the Escrow Account from the date of deposit into the Escrow Account until disbursement therefrom.

2.      The term "Amended Complaint" shall mean the pleading to be filed pursuant to Section III(2), which pleading shall be mutually acceptable to, and may not be modified without the mutual consent of, each of the Parties in their sole and absolute discretion, and shall be in substantially the form of attached Exhibit "E" which is hereby incorporated herein by reference.

3.      The term "Barge Consolidated Class Action" shall mean Civil Action No. 05-4182  pending in the United States District Court, Eastern District of Louisiana, Section "K", IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION, FILE IN:  05-5531, 05-4724, 05-5342, 06-6299, 06-7516, 07-3500, 07-5178: PERTAINS TO: BARGE.

4.      The term "Barrier Plan" means the Lake Pontchartrain and Vicinity Project approved October 27, 1965, Section 204 of Public Law 298, 89th Congress, 1st Session. substantially in accordance with the Report of the Chief of Engineers, dated March 4, 1964, contained in House Document No. 231, 89th Congress, 1st Session.

5.      The term "CADA" shall mean the Court Appointed Disbursing Agent appointed pursuant to Section III(14).

6.      The term "Certification Hearing" shall mean the hearing to be conducted by the Court, upon notice to the Class, in connection with a determination of, *inter alia,* the propriety of class certification for settlement purposes.  This hearing date shall be established by the Court in the Preliminary Approval Order and shall be no less than forty-five (45) calendar days after the Objection Deadline.

7.      The term "Claim" or "Claims" shall mean and include any and all claims, rights, demands, suits, actions, rights of action, interventions, liabilities, liens and causes of action, at law, equity, admiralty or otherwise, regardless of legal theory, whether known or unknown, filed or unfiled, asserted or as yet unasserted.    The term "Claim" or "Claims" includes those which are derivative of the claims of any Class Member or which may be asserted by an assignee, successor, executor, survivor, beneficiary (including beneficiary under La. C.C. arts. 2315.1 and 2315.2), third party beneficiary, heir, or representative of any Class Member, specifically including but not limited to the wrongful death of a Class Member.

8.      The term "Claims for Contribution, Indemnity, and/or Subrogation" shall mean any claim now or hereafter asserted in any court or tribunal, whether by complaint, cross claim, third party claim, or otherwise (or any judgment entered on such claim) by any Third Person alleging that any of the Released Parties is or may be liable to such Third Person for all or part of a claim for damages or other relief asserted against said Third Person by any Class Member or by any other person or entity in connection with or with respect to (a) the facts and circumstances giving rise to either the Litigation or any of the Pending Actions, or (b) any Released Claims.

9.     The terms "Class Member(s)", "Member(s) of the Class as Defined", or "Member(s) of the Settlement Class", shall mean and refer, individually and collectively, to those Persons who or which are, or will be, included within the Settlement Class.

10.     The terms "Class" or "Settlement Class" shall mean all Persons (a) who at the time of Hurricane Katrina and/or Hurricane Rita (i) were located, present or residing in the Hurricane Affected Geographic Area, or (ii) owned, leased, possessed, used or otherwise had any interest in homes, places of business or other immovable or movable property on or in the Hurricane Affected Geographic Area, and (b) who incurred any losses, damages and/or injuries arising from, in any manner related to, or connected in any way with Hurricane Katrina and/or Hurricane Rita and any alleged Levee Failures and/or waters that originated from, over, under or through the Levees under the authority and/or control of all or any of the Levee Defendants. The term "Class" or "Settlement Class" shall expressly include all Plaintiffs and putative class members of the Pending Actions. The Settlement Class shall include and be divided into the following subclasses of Class Members whose alleged Claims are based in any way on, or result in any way from, the acts, omissions, or any sources of liability whatsoever of: (a) *Subclass 1* - the Lake Borgne Basin Levee District, the Lake Borgne Basin Levee District Board of Commissioners, and St. Paul Fire and Marine Insurance Company, in its capacity as insurer of each of the foregoing; (b) *Subclass 2* - the East Jefferson Levee District, the East Jefferson Levee District Board of Commissioners, and St. Paul Fire and Marine Insurance Company, in its capacity as insurer of each of the foregoing; and (c) *Subclass 3* - the Orleans Levee District, the Orleans Levee District Board of Commissioners, and St. Paul Fire and Marine Insurance Company, in its capacity as insurer of each of the foregoing (collectively, the "Subclasses" and each a "Subclass"). A Class Member may be included in more than one Subclass. Excluded

from the Settlement Class are the judge and/or magistrate judge to whom the Litigation is assigned at the trial court or upon any appeal.

11.    The term "Class Counsel" shall mean the following persons: James P. Roy, Gerald Meunier and Joseph M. Bruno.

12.    The term "Class Notice" shall mean the notices to the Class of the proposed settlement, the Certification Hearing, the Fairness Hearing and related matters approved by the Court for publication and mailing, which Class Notice shall be mutually acceptable to each of the Parties in their sole and absolute discretion.

13.    The term "Class Representatives" shall mean and refer to those Class Members whose names will be submitted to the Court for consideration as adequate representatives of the Class.    Named as provisional Class Representatives for pre-certification purposes are the following persons: Kenneth & Jeannine Armstrong, 4016 Hamlet Place, Chalmette, LA  70043 (Subclass 1), Thurman R. Kaiser, 3801 N. Turnbull Dr., Metairie, LA  70002  (Subclass 2) and Donna Augustine, 2126 N. Broad Street, New Orleans, LA  70119 (Subclass 3).  Each Class Representative shall execute for submission with the joint motion for entry of the Preliminary Approval Order a sworn declaration in substance and form mutually acceptable to the Parties.

14.    The term "Class Settlement Agreement" or "Agreement" shall mean and refer to this Amended Class Settlement Agreement including the exhibits hereto, which exhibits are each hereby incorporated into and made part of this Amended Class Settlement Agreement as if copied herein *in extenso*.

15.    The term "Class Settlement Termination Event" shall have the meaning set forth in Section VI(2).

NO.99960878.1

16.     The term "Court" shall mean the United States District Court for the Eastern District of Louisiana, and specifically the division within the United States District Court for the Eastern District of Louisiana presiding over the Litigation.

17.     The term "Deposit Date" shall mean the first business day after all of the following events have occurred: (i) all Parties have executed this Agreement; (ii) the Court has entered the Preliminary Approval Order; (iii) the Court shall have approved the form and content of the Class Notice and the manner in which the notice of the Certification Hearing and the Fairness Hearing shall be provided to Class Members, either pursuant to the Preliminary Approval Order, or otherwise; (iv) the claims against all and/or any of the Settling Defendants in the federal Pending Actions (including but not limited to the Levee Consolidated Class Action, Barge Consolidated Class Action, and MR-GO Consolidated Class Action) shall have been stayed; (v) all Parties have executed the Escrow Agreement (with accompanying Investment Instructions).

18.     The term "Effective Date of Class Settlement" shall mean the first business day after the date the Final Approval Order and Judgment shall become a Final Judgment.

19.     The term "Escrow Account" shall mean the escrow account established pursuant to the Escrow Agreement, and each sub-account therein, into which the Insurance Policy Limits and Judicial Interest shall be deposited.  The Escrow Account shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986 and all rules and regulations thereunder.

20.     The term "Escrow Agent" shall mean U.S. Bank National Association, or any successor thereto as the Parties may chose mutual agreement, to be given in each Party's sole and absolute discretion.

21.     The term "Escrow Agreement" shall mean the escrow agreement to be negotiated and agreed to among the Parties and the Escrow Agent.  The Escrow Agreement shall be in form and substance satisfactory to each Settling Defendant in their sole and absolute discretion.

22.     The term "Escrowed Funds" shall mean any and all funds in the Escrow Account at any time, and each sub-account therein, including specifically the Insurance Policy Limits and Judicial Interest initially deposited into the Escrow Account, and\or sub-accounts therein, and the Accrued Interest on each of the foregoing (less only disbursements to be made, from time to time, in strict accordance with this Agreement).

23.     The term "Fairness Hearing" shall mean the hearing to be conducted by the Court, upon notice to the Class, in connection with a determination of, *inter alia*, the fairness, adequacy and reasonableness of this Class Settlement Agreement.  This hearing date shall be established by the Court in the Preliminary Approval Order and shall be no less than forty-five (45) calendar days after the Objection Deadline.

24.     The term "Final Judgment" or "Final Order" shall mean a judgment, order, ruling or decision of a court of competent jurisdiction with respect to said case or matter in which the judgment, order, ruling or decision is entered, and from which no appeals, writs, petitions for certiorari, or requests for court review, rehearing or extraordinary relief have been taken from or with respect to a judgment, order, ruling or decision and that if any such appeal, writ, petition or request for court review, rehearing or extraordinary relief has been taken from or with respect to the judgment, order, ruling or decision, the relevant judgment, order, ruling or decision has been affirmed without revision and there is no further right to appeal, petition, bring a petition for writ of certiorari or request court review, rehearing or extraordinary relief from or with respect to such judgment, order, ruling or decision, unless otherwise agreed in writing by Class Counsel

NO.99960878.1

and counsel for the Settling Defendants; provided however that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, may potentially be filed with respect to such judgment, order, ruling or decision shall not cause such judgment, order, ruling or decision not to be a Final Judgment or Final Order.

25.     The term "Final Approval Order and Judgment" shall mean a Final Order of the Court, *inter alia*, approving this Class Settlement Agreement; finally certifying the Settlement Class described in this Class Settlement Agreement pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedures; determining and declaring the policies of insurance in favor of the Levee Defendants under which coverage is potentially available to respond to the claims of the Class and the extent of said coverage; dismissing the claims asserted against the Settling Defendants in the Litigation as of the Effective Date of Class Settlement with prejudice; enjoining the Class Members from asserting against the Released Parties any and all Claims released by this Class Settlement Agreement; and reserving exclusive and continuing jurisdiction over, *inter alia*, the disposition of the Escrowed Funds and all matters related thereto, but providing for immediate appeal, which Final Order shall be in substantially the form of attached Exhibit "C". It is recognized that findings of fact and/or conclusions of law contained in Exhibit "C" may be set forth in a separate document issued by the Court. The Final Approval Order and Judgment shall be in form and substance satisfactory to each Settling Defendant in their sole and absolute discretion.

26.     The term "High Level Plan" means the Lake Pontchartrain and Vicinity Hurricane Protection Project Reevaluation Study, dated December 1983, approved February 7, 1985 authorizing construction and/or implementation of the High Level Plan, rather than the Barrier Plan.

27.     The term "Hurricane Affected Geographic Area" shall mean the entire area located within the Parishes of Jefferson, Orleans, Plaquemine and St. Bernard, Louisiana, together with any body of water that is, in whole or in part, adjacent to or within all or any portion of any of these Parishes.

28.     The term "Hurricane Katrina" shall mean the tropical cyclone named "Hurricane Katrina" by the National Weather Service's National Hurricane Center which made landfall in Louisiana on or about August 29, 2005 including, but not limited to, its classification as a tropical depression, storm, hurricane and/or other weather event and any and all effects due to, caused by, or relating to Hurricane Katrina regardless of whether same occurred prior to, concurrently with, or following Hurricane Katrina's landfall including, but not limited to, storm surge, flooding, rainfall, lightning, wind and/or tornados.

29.     The term "Hurricane Rita" shall mean the tropical cyclone named "Hurricane Rita" by the National Weather Service's National Hurricane Center which made landfall in Louisiana on or about September 24th, 2005 including, but not limited to, its classification as a tropical depression, storm, hurricane and/or other weather event and any and all effects due to, caused by, or relating to Hurricane Rita regardless of whether same occurred prior to, concurrently with, or following Hurricane Rita's landfall including, but not limited to, storm surge, flooding, rainfall, lightning, wind and/or tornados.

30.     The term "Insurance Policy Limits" shall have the meaning set forth in Section III(4).

31.     The term "Investment Instructions" shall have the meaning set forth in Section III(4)(d).

32.     The term "Joint Motion" shall mean the pleading to be filed pursuant to Section III(2), which pleading shall be mutually acceptable to, and may not be modified without the mutual consent of, each of the Parties in their sole and absolute discretion, and shall be in substantially the form of attached Exhibit "F" which is hereby incorporated herein by reference. This proposed Class Settlement Agreement will be *in globo* Exhibit "1" attached to and made part of the Joint Motion.

33.     The term "Judicial Interest" shall have the meaning set forth in Section III(4)(a).

34.     The term "Levees" shall include any and all levees, embankments, seawalls, jetties, breakwaters, water-basins, floodwalls, floodgates, gates, outfall canals, drainage canals, berms, spoil banks, and other works in relation to such projects, and/or any other flood or water control structure(s), whether man-made or natural.

35.     The term "Levee Consolidated Class Action" shall mean Civil Action No. 05-4182 pending in the United States District Court, Eastern District of Louisiana, Section "K", IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION, FILED IN: 05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346, 06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206,07-0647, 07-0993, 07-1284, 07-1286, 07-1288,07-1289: PERTAINS TO: LEVEE.

36.     The term "Levee Defendants" shall mean the Board of Commissioners of the Orleans Levee District, the Orleans Levee District, the Board of Commissioners of the Lake Borgne Basin Levee District, the Lake Borgne Basin Levee District, the Board of Commissioners of the East Jefferson Levee District, the East Jefferson Levee District, the Board

NO.99960878.1

of Commissioners of the Southeast Louisiana Flood Protection Authority-East, and the Southeast Louisiana Flood Protection Authority-East, and the respective parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legatees and/or assigns, together with the past, present and future officers, directors, board members, servants, shareholders, members, presidents, managers, partners, employees, agents, representatives, consultants, in-house or outside attorneys, insurers, and reinsurers of the foregoing; provided however, that the term Levee Defendants shall not include National Union.

37.   The term "Levee Failures" shall mean the actual or alleged breaching, overtopping, seepage, collapse, undermining, weakening or any other alleged failure of Levees regardless of cause, whether caused in whole or part by an alleged defect, error or neglect with respect to the ownership, garde, design, construction, maintenance, inspection, and/or operation of the Levees, or any dredging operations in connection therewith or incidental thereto, and/or whether caused in whole or part by any wind, waves, tide, rainfall, storm surge or other force or effect caused by or resulting from Hurricane Katrina and/or Hurricane Rita.

38.   The term "Levee Plans" shall mean all designs, proposals and/or Congressional Authorizations related in any way to the Levees, including but not limited to (i) all designs, proposals, and/or Congressional Authorizations calling for (a) the construction, installation and/or placement of flood gates at the mouth of the 17th Street Canal, at its junction with Lake Pontchartrain, and/or any other outfall or drainage canal, and/or (b) increasing the height of flood barriers on the east and west banks of any outfall or drainage canals by placement of concrete I-Wall monoliths on top of sheet pile inserted into earthen levees, (ii) the Barrier Plan, (iii) the High Level Plan, and/or (iv) any other hurricane protection or flood control plan or project.

39.     The term "Limited Fund Policies" shall mean the following insurance policies issued by St. Paul Fire and Marine Insurance Company: (1) Policy No. GP09312536 (Lake Borgne), Effective Dates 6/8/05 through 6/8/06, General Total Limits of $2,000,000, (2) Policy No. GP06300925 (Orleans Levee District), Effective Dates 11/01/04 through 11/01/05, General Total Limit $1,000,000, Umbrella Limit $9,000,000, and (3) Policy No. GP06301698 (East Jefferson), Effective Dates 01/01/05 through 01/01/06, General Total Limit $1,000,000, Umbrella Limit $4,000,000, individually and collectively.

40.     The term "Litigation" shall mean and refer to the Levee Consolidated Class Action and MR-GO Consolidated Class Action, as amended by the filing of the Amended Complaint as set forth in Section III(2) below.

41.     The term "MR-GO Consolidated Class Action" shall mean Civil Action No. 05-4182 pending in the United States District Court, Eastern District of Louisiana, Section "K", IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION, FILED IN: 05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6342, 05-6327, 05-6359, 06-0225, 06-0886, 06-1885, 06-2152, 06-2278, 06-2287, 06-2824, 06-4024, 06-4065, 06-4066, 06-4389, 06-4634, 06-4931, 06-5032, 06-5155, 06-5159, 06-5161, 06-5260, 06-5162, 06-5771, 06-5937, 07-0206, 07-0621, 07-1073, 07-1271, 07-1285: PERTAINS TO: MRGO.

42.     The term "National Union" shall mean National Union Fire Insurance Company of Pittsburgh, PA.

43.     The term "National Union Policy" shall mean, individually and collectively, any insurance policy issued by National Union to the East Jefferson Levee District and/or the Board of Commissioners of the East Jefferson Levee District.

44.    The term "Notice Costs" shall mean all costs, fees and expenses incurred in connection with providing any notice to the Settlement Class and/or to individual Class Members, including but not limited to the Class Notice.

45.    The term "Notice Date" shall mean the date to be set by the Court by which the last Class Notice to the Class Members must be mailed or published.

46.    The term "Objection' shall have the meaning set forth in Section III(8) of this Class Settlement Agreement.

47.    The term "Objection Deadline" shall mean the date by which a Class Member must file and serve an Objection in conformity with Section III(8) below.  This date shall be established by the Court in the Preliminary Approval Order and shall be no less than forty (40) calendar days after the Notice Date.

48.    The term "Party" or "Parties" shall mean individually and/or collectively the Plaintiffs and Settling Defendants.

49.    The term "Pending Actions" shall mean any and all lawsuits, administrative claims or other actions, however asserted (including but not limited to any and all petitions, complaints, third-party demands, cross-claims and counter-claims), in which a Released Claim has been, or is, asserted (including but not limited to those lawsuits identified on Exhibit "A" to this Agreement, as same shall be amended from time to time prior to the entry of the Final Approval Order and Judgment).

50.    The term "Person" shall mean an individual, marital community, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated organization, governmental entity, and any

NO.99960878.1

other type of legal person or entity, and their respective heirs, legatees, predecessors, successors, representatives and assigns.

51.    The term "Plaintiff(s)" shall mean each named plaintiff in the Litigation.

52.    The term "Preliminary Approval Order" shall mean the Court's order which shall, *inter alia*, conditionally certify the Settlement Class, appoint Class Counsel, preliminarily approve this Class Settlement Agreement, approve the form and means of dissemination of the Class Notice, stay the Claims asserted against all of the Settling Defendants in the federal Pending Actions, provide for the dismissal of the Amended Complaint without prejudice and without further order of the Court upon the termination of the Class Settlement Agreement, and set the Certification Hearing and the Fairness Hearing, which order shall be in substantially the form of attached Exhibit "B". The Preliminary Approval Order shall expressly reserve the rights of Class Members to raise objections to all issues, including but not limited to the certification of the Settlement Class, as well as to the approval of the settlement. It is recognized that findings of fact and/or conclusions of law contained in Exhibit "B" may be set forth in a separate document issued by the Court. The Preliminary Approval Order shall be in form and substance satisfactory to each Settling Defendant in their sole and absolute discretion.

53.    "Released Claim" or "Released Claims" shall mean any and all Claims whatsoever (a) arising out of, in any manner related to, or connected in any way with Hurricane Katrina, Hurricane Rita, any alleged Levee Failures, and/or the Levee Defendants' individual or collective mitigation of, preparation for, response to, and/or recovery from hurricanes, tornados, storms, floods, high winds, and other weather related events, and other events related thereto, and/or any act or failure to act related in any way to any of the foregoing, including but not limited to the ownership, garde, design, construction, maintenance, inspection and/or operation

- 14 -

of the Levees and/or other property, as well as the promulgation, adoption, and/or implementation of, and/or failure to promulgate, adopt and/or implement, the Levee Plans, and/or (b) for any losses, damages and/or injuries arising from, in any manner related to, or connected in any way with all and/or any of the foregoing, including but not limited to any and all Claims that a Class Member has, may have, or may have had, regardless of whether such Claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, whether asserted by petition, complaint, cross claim, third party demand, or otherwise (or any judgment or order entered on such Claims), based upon or alleging any act, conduct, status or obligation of any Person (including the Settling Defendants) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved. The term "Released Claim" or "Released Claims" specifically includes, but is not limited to, all Claims asserted in the Litigation or any other Pending Action.   The term "Released Claim" or "Released Claims" includes, but is not limited to, the following Claims arising out of, in any manner related to, or in any way connected with, Hurricane Katrina, Hurricane Rita, the Levee Failures, the Litigation, or the other Pending Actions:

> (i)     any and all Claims of injury, loss or damage or any element of damages, including, without limitation, Claims for all known or unknown injuries and/or damages; any and all Claims for mental, nervous, emotional or physical, partial or total, temporary or permanent disabilities; any and all Claims for any form of injury to any part of the person, mind or body, including without limitation, injuries from fear, fright, or mental anguish; any and all Claims for pain and suffering; any and all Claims for pecuniary loss or loss of earnings or impairment of earnings capacity; any and all Claims for loss of enjoyment of life, society, support, love, affection, comfort, association, care, sexual relations, consortium; any and all Claims for "hedonic damages" and damages subject to calculation by mass appraisal models and/or automated valuation methods; any and all Claims for damages due to cultural loss and social disruption; any and all Claims for medical monitoring, wrongful death, survival actions, compensatory, general or special damages, punitive or exemplary damages, consequential damages, attorneys' fees, costs or expenses;

(ii)     any and all Claims for damages or any element of damages, including but not limited to property damage, bodily or personal injury and/or wrongful death, survival damages, and punitive and exemplary damages;

(iii)    any and all Claims, demands, and/or damages including but not limited to property damages, loss of use of property,  takings, diminution of property value, stigma damages, expenses, unjust enrichment, restoration damages, cleanup and/or remediation damages, and causes of action of whatever nature;

(iv)     any and all Claims for or based upon illness, disease, condition or death;

(v)      any and all Claims for alleged or actual or risk or possibility or fear of suffering from any disease, injury, illness or condition, or death;

(vi)     any and all Claims for attorneys' fees or costs;

(vii)    any and all Claims for unpaid or future bills presented by any expert, physician, health care provider of any type, medical facility or pharmacy for treatment, examination or goods provided;

(viii)   any and all Claims for any other injury or damage, known or unknown, including, but not limited to, business interruption loss, loss of business opportunity, loss of profits, loss of income, wages, worker's compensation or other economic loss;

(ix)     any and all Claims for nuisance, trespass or inconvenience;

(x)      any and all Claims for expenses for evacuation, known or unknown;

(xi)     any and all Claims under any body of law whatsoever, including, but not limited to, statutory or case law, whether federal, state, or local;

(xii)    any and all Claims for any right legally assertable by any Person, whether the Claim is personal to such Person, derivative of the claim of any other Person or as an assignee, successor, executor, survivor, beneficiary, third party beneficiary, heir, or representative of any Person;

(xiii)   any Claims asserted or assertable under LSA-R.S. 22:1220, LSA-R.S. 22:655, LSA-R.S. 22:658, or any other law (including common law), and/or any and all Claims arising out of or related to indemnity, "duty to defend," claims handling, claims adjustment, breach of contract, breach of duty or duties, negligent inspection, negligent engineering, breach of warranty of uniformity, failure to warn, breach of implied warranty of fitness for an intended purpose, breach of good faith and fair dealing, bad faith, interference with contractual relationships, deceptive trade practices, unfair trade practices, unfair settlement practices, conduct in violation of

NO.99960878.1

> any insurance code, or any other alleged misconduct, omission, or wrongdoing of any kind;
>
> (xiv)   any and all Claims for conspiracy or concert of action;
>
> (xv)   any and all Claims for statutory damages or penalties under any state, local or federal law; and
>
> (xvi)   any and all liens, assigned Claims, subrogation interests or Claims, or other encumbrances of any third parties, including, but not limited to, those by federal, state or other health care providers, insurance carriers, health maintenance organizations, employers, experts, worker's compensation carriers, or attorneys or associated counsel, notwithstanding whether such claims have been timely and properly asserted or whether the Parties have notice of said Claims.

54.     The term "Released Party" or "Released Parties" shall mean St. Paul, the Board of Commissioners of the Orleans Levee District, the Orleans Levee District, the Board of Commissioners of the Lake Borgne Basin Levee District, the Lake Borgne Basin Levee District, the Board of Commissioners of the East Jefferson Levee District, the East Jefferson Levee District, the Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East, and the Southeast Louisiana Flood Protection Authority-East, and the respective parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legatees and/or assigns, together with the past, present and future officers, directors, board members, servants, shareholders, members, presidents, managers, partners, employees, agents, representatives, consultants, in-house or outside attorneys, insurers, and reinsurers of each of the foregoing; provided however, that the term Released Party or Released Parties shall not include National Union.

55.     The term "Settling Defendants" shall mean St. Paul Fire and Marine Insurance Company, the Board of Commissioners of the Orleans Levee District, the Orleans Levee District, the Board of Commissioners of the Lake Borgne Basin Levee District, the Lake Borgne Basin

NO.99960878.1

Levee District, the Board of Commissioners of the East Jefferson Levee District, and the East Jefferson Levee District.

56.    The term "Special Master" shall mean the Special Master appointed pursuant to Section III(13).

57.    The term "St. Paul" shall mean St. Paul Fire and Marine Insurance Company (in its capacity as the insurer for any and/or all of the Levee Defendants) and its predecessors and successors, and each of their past, present and future parent corporations, subsidiaries, affiliated entities, assigns, divisions, directors, officers, shareholders, agents, employees, in-house or outside attorneys, and representatives.

58.    "Tax" means, with respect to any Person, any federal, state or local income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, franchise, profits, capital gains, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value-added, ad valorem, alternative or add-on minimum, estimated, or other, tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not, and including any liability for any of the foregoing taxes or other items arising as a transferee, successor, by contract, or otherwise, for which such Person may be liable.

59.    The terms "Subclass" or "Subclasses" shall have the meaning set forth in section II(10) above.

60.    The term "Third Person" shall mean and refer to any and all Persons other than the Released Parties.

NO.99960878.1

## III.    IMPLEMENTATION OF SETTLEMENT

1.    Upon the execution of this Agreement by all Parties, (a) the Parties shall seek immediately to stay all Claims as to the Released Parties in the federal Pending Actions (including the Levee Consolidated Class Action, Barge Consolidated Class Action, and MR-GO Consolidated Class Action), and (b) the Parties shall seek to stay and/or enjoin (or both) at the discretion of the Settling Defendants all Claims as to the Released Parties in the state Pending Actions.  At the discretion of the Settling Defendants, the foregoing request for stay as to the Released Parties may be made as part of the joint motion seeking entry of the Preliminary Approval Order, or by separate motion.  Further, if at any time (and from time to time) all state Pending Actions are not fully stayed as to the Released Parties and all Claims against the Released Parties in said actions fully enjoined, Plaintiffs agree to assist in connection with, and if requested join, any subsequent request(s) for stay of such actions/injunction of such Claims as the Settling Defendants shall determine to make from time to time at their sole discretion.  The Parties agree, and both the Preliminary Approval Order and the Final Approval Order and Judgment shall provide, that no future finding, judgment, adjudication, or verdict rendered by any court and/or a jury in any proceeding or action that has been stayed or enjoined as to the Released Parties shall be binding or have any precedential effect on the Released Parties.

### Preliminary Approval and Funding of Limited Fund

2.    Upon the execution of this Agreement by all parties, Class Counsel shall promptly file the Amended Complaint on behalf of the Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(1)(B), against the Settling Defendants.  Once the Amended Complaint is filed, the Parties shall promptly file with the Court the Joint Motion seeking, *inter alia*, entry of the Preliminary Approval Order.

3.      The Preliminary Approval Order shall provide that the Released Parties shall not be required to file an answer or other response to the Amended Complaint in the Litigation, and that any deadline for the Released Parties to respond to the Amended Complaint shall be extended indefinitely pending the outcome of the settlement approval process. The Parties agree to take such additional actions as may be required, and to work jointly and in good faith, to properly place the settlement of the Litigation by this Class Settlement Agreement procedurally before the Court, to obtain entry of the Preliminary Approval Order, approval of the form and content of the Class Notice and the manner in which notice of the settlement, the Certification Hearing, and the Fairness Hearing are to be provided to the Class, as well as such other actions as may be necessary to obtain certification of the Settlement Class and approval of this Class Settlement Agreement.

4.      (a) Within fifteen (15) business days from the Deposit Date, St. Paul Fire and Marine Insurance Company shall deposit into the Escrow Account in accordance with the terms of the Escrow Agreement (i) the total sum of $17,000,000.00 (the "Insurance Policy Limits") along with (ii) legal interest pursuant to La. R.S. 13:4202(B) through September 24, 2008 in the amount of $3,839,114.85, plus (iii) legal interest pursuant to La. R.S. 13:4202(B) from September 25, 2008 through the date the Insurance Policy Limits are deposited into the Escrow Account at the rate of $3,948.08 per diem (the legal interest on the Insurance Policy Limits through the date of deposit into the Escrow Account as set forth in Sections III(4)(a)(ii) and (iii) above is hereafter collectively referred to as the "Judicial Interest"). At the time of the initial deposit into the Escrow Account, the Insurance Policy Limits and Judicial Interest set forth above shall be divided into three (3) sub-accounts, one for each Subclass, as follows:

     i.    Subclass 1 (Lake Borgne) - $2,000,000.00, consisting of a portion of the Insurance Policy Limits, together with that

portion of the Judicial Interest equal to $371,467.18 plus
$464.48 per diem from September 25, 2008 through the
date these funds are deposited into the Escrow Account;

ii.     Subclass 2 (East Jefferson) - $5,000,000.00, consisting of a
portion of the Insurance Policy Limits, together with that
portion of the Judicial Interest equal to $924,284.38 plus
$1,161.20 per diem from September 25, 2008 through the
date these funds are deposited into the Escrow Account;
and

iii.    Subclass 3 (Orleans) - $10,000,000.00, consisting of a
portion of the Insurance Policy Limits, together with that
portion of the Judicial Interest equal to $2,543,363.28 plus
$2,322.40 per diem from September 25, 2008 through the
date these funds are deposited into the Escrow Account.

Subject to the terms of this Agreement, the Accrued Interest shall accrue to the benefit of the

Settlement Class, and each respective Subclass, provided the Effective Date of Class Settlement

occurs.

(b) If a Class Termination Event occurs, the Escrowed Funds shall be returned to

St. Paul Fire and Marine Insurance Company as provided in Section VI(2).

(c) Subject to the terms of this Agreement, the funds in each sub-account shall be

used for the benefit of and to satisfy all Claims of any Class Member of the Subclass for which

each respective sub-account has been established in priority to the Claims of any other Class

Members.  Unless otherwise ordered by the Court, all amounts paid from the Escrowed Funds

pursuant to this Agreement other than awards to Class Members shall be paid from each of the

three sub-accounts on a proportional basis based on the percentage of the Insurance Policy

Limits initially deposited into each sub-account in relation to the total Insurance Policy Limits.

(d) The Escrow Agent shall initially invest the Escrowed Funds in the manner set

forth on Exhibit "D" to this Class Settlement Agreement (the "Investment Instructions"), which

Investment Instructions are hereby incorporated into this Agreement  by reference as if copied

NO.99960878.1

herein, and shall be incorporated into the Escrow Agreement as if copied therein, *in extenso*.
Execution of a the Escrow Agreement confirming the Investment Instructions between Class
Counsel, counsel for the Settling Defendants and the Escrow Agent in form and substance
satisfactory to each signatory thereto is a precondition to the deposit of the Insurance Policy
Limits and Judicial Interest into the Escrow Account by St. Paul Fire and Marine Insurance
Company. The Investment Instructions may only be modified by joint written agreement
between Class Counsel, counsel for the Settling Defendants and the Escrow Agent.

(e) The dates of first judicial demand on the Levee District Defendants are: (i) the
Orleans Levee District – September 19, 2005, (ii) the Lake Borgne Basin Levee District –
August 24, 2006, and (iii) the East Jefferson Levee District – August 28, 2006.

5.      Notwithstanding any provision of this Agreement to the contrary, the Claims of
all Class Members Against National Union and the National Union Policy are expressly
preserved. Further, for the avoidance of any doubt, all proceeds, if any, obtained by the East
Jefferson Levee District under or from the National Union Policy shall be placed into the Escrow
Account in the sub-account for Subclass 2, and shall be subject to the terms of the Escrow
Agreement.

6.      If the Court in the Litigation enters the Preliminary Approval Order, the Parties
shall proceed with due diligence to, and shall co-operate in the preparation for, the Certification
Hearing and the Fairness Hearing, at which the Parties shall jointly present such evidence as is
sufficient to justify the Court's certification of the Settlement Class pursuant to Federal Rule of
Civil Procedure 23(b)(1)(B) and approval of this Class Settlement Agreement.

**Objection Procedure**

7.      Unless otherwise ordered by the Court, a Class Member must make an objection
to certification of the Settlement Class and approval of this Class Settlement Agreement, any

- 22 -

terms hereof, and the approval process by the following procedure (the "Objection"): (a) the Objection must be in writing, (b) the Objection must be signed by the Class Member or his/her/its counsel, (c) the Objection must contain the caption of the Litigation and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the Class Member, (d) the Objection must be filed with, or mailed to, the "Clerk of Court for the United States District Court for the Eastern District of Louisiana", C151 Hale Boggs Federal Building, 500 Poydras Street, New Orleans, LA 70130, or as otherwise ordered by the Court, (e) the Objection must be filed with, or (if mailed) received by, the Clerk of Court by the Objection Deadline, and (f) copies of the Objection must be mailed according to the Class Notice to the counsel identified below:

> Joseph M. Bruno
> LAW OFFICES OF JOSEPH M. BRUNO
> 855 Baronne Street
> New Orleans, Louisiana 70113
> Telephone: (504) 525-1335
> Facsimile: (504) 561-6775
>
> ON BEHALF OF CLASS COUNSEL,
> AND AS LIAISON COUNSEL FOR
> LEVEE AND MR-GO-PLAINTIFF
> SUBGROUP LITIGATION COMMITTEES
>
> S. Ault Hootsell III
> PHELPS DUNBAR LLP
> Canal Place
> 365 Canal Street, Suite 2000
> New Orleans, LA 70130-6534
> Telephone: (504) 566-1311
> Telecopier: (504) 568-9130
>
> ATTORNEYS FOR ST. PAUL FIRE AND
> MARINE INSURANCE COMPANY

8.      Failure to comply timely and fully with these procedures shall result in the invalidity and dismissal of any Objection.  A Class Member who fails to file an Objection pursuant to the procedure set forth above will not be permitted to be heard at the Certification Hearing and/or the Fairness Hearing.

### Certification Hearing and Fairness Hearing

9.      At the Certification Hearing the Court shall, *inter alia*, (i) consider any properly filed Objections to certification, (ii) determine *de novo* whether the Settlement Class should be certified on the basis requested, and provide findings in connection therewith, (iii) enter a order certifying the Class for settlement purposes or, subject to approval of the Class Settlement Agreement at the Fairness Hearing, enter the Final Approval Order and Judgment, and (iv) enjoin all actions against the Released Parties based on the Released Claims.

10.     At the Fairness Hearing the Court shall, *inter alia*, (i) consider any properly filed Objections to the proposed settlement, (ii) determine *de novo* whether the settlement set forth in this Class Settlement Agreement is fair, reasonable, and adequate, entered into in good faith and without collusion, and should be approved, and provide findings in connection therewith, (iii) contemporaneously certify the Settlement Class as part of the Certification Hearing, if not previously certified, (iv) enter the Final Approval Order and Judgment, (v) enjoin all actions against the Released Parties based on the Released Claims, and (vi) dismiss the Claims asserted against any Released Party in the Litigation as of the Effective Date of Class Settlement, with prejudice.

11.     The Parties acknowledge and agree and hereby stipulate, and shall so stipulate to the Court at the hearing on the request for entry of the Preliminary Approval Order and at the Certification Hearing and the Fairness Hearing, that (i) the Settlement Class is being certified for settlement purposes only pursuant to the Class Settlement Agreement, (ii) the Released Parties

- 24 -

reserve the right to object to class certification *de novo* in the event this Class Settlement Agreement is terminated for any reason, including termination pursuant to Section VI, and (iii) this Class Settlement Agreement shall have no precedential effect with regard to certification of a litigation class that may arise if this matter is not fully and completely resolved through this settlement effort, or otherwise.

### Disposition of Escrowed Funds

12.     (a)     Except as set forth in Section 12(b) below, notwithstanding any other provision of this Class Settlement Agreement (or of any other document), prior to the Effective Date of Class Settlement the only costs, fees or other amounts that may be paid from the Escrowed Funds are (i) the Notice Costs, (ii) compensation due to the Escrow Agent under the Escrow Agreement for normal services, or other amounts that may otherwise be due the Escrow Agent as ordered by the Court, (iii) the amounts, if any, owed to the CADA as ordered by the Court, and (iv) the payment of any Tax liability of either the Escrow Account as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986 and all rules and regulations thereunder, as a result of the Escrowed Funds and/or any income generated by the Escrowed Funds through the Effective Date of Class Settlement.   Items 12(a)(i), 12(a)(iv) above and the compensation due to the Escrow Agent under the Escrow Agreement for normal services may be paid upon joint written instruction of Class Counsel and counsel for the Settling Defendants upon and after the entry of the Preliminary Approval Order without further Order of the Court.  After the Effective Date of Class Settlement and subject to the terms of this Agreement, the Special Master shall provide to the Court a recommended disposition and protocol with regard to the remaining Escrowed Funds, and treatment of Claims of Class members.  The Court shall approve the disposition of the remaining Escrowed Funds, and other appropriate matters related thereto (such as a protocol for the administration of

Claims), upon notice and an opportunity to be heard to the Class, to counsel in each of the Pending Actions and to any other Person requesting notice. Subject to approval by the Court, for a Claim to be considered the submission of the Class Member must include, at a minimum: (1) A written statement of the claim describing with particularity the asserted basis for the claim and which of the levee districts the Claim is asserted against. (2) The statement of claim must be signed by the claimant, and must contain the mailing address, and telephone number(s) of the Class Member. E-mail addresses may also be requested, but are not required. Class Members who have and who provide an e-mail address agree to electronic notification and service. (3) The statement of claim should be accompanied by all written materials supporting the Claim (copies only). (4) Submissions shall be limited to U.S. Mail or Federal Express (or other similar courier service), and shall be deemed delivered when sent (rather than when received). (5) Claims shall be deemed allowed unless objected to by the Special Master. The Parties each agree and understand that qualifying as a Class Member herein does not automatically or immediately entitle any Person to any monies pursuant to this Agreement. The Court shall retain exclusive and continuing jurisdiction over the Escrowed Funds and the disposition of same.

(b)      Notwithstanding any other provision of this Class Settlement Agreement or of any other document, at any time and from time to time, whether before or after the Effective Date of Class Settlement, St. Paul Fire and Marine Insurance Company may make one or more written demands on the Escrow Agent for payment from the Escrowed Funds of amounts sufficient to pay any Tax imposed, or that may be imposed, from time to time on St. Paul Fire and Marine Insurance Company, as reasonably determined in the sole and absolute discretion of St. Paul Fire and Marine Insurance Company, as a result of the Escrowed Funds and/or any income generated by the Escrowed Funds through the Effective Date of Class

- 26 -