UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | | CIVIL ACTION |
| | | NO. 05-4182 |
| PERTAINS TO: BARGE | | and consolidated cases |
| *Boutte v. Lafarge* | 05-5531 | SECTION "K" (2) |
| *Mumford v. Ingram* | 05-5724 | |
| Lagarde v. Lafarge | 06-5342 | JUDGE |
| *Perry v. Ingram* | 06-6299 | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | |
| *Parfait Family v. USA* | 07-3500 | MAGISTRATE |
| *Lafarge v. USA* | 07-5178 | JOSEPH C. WILKINSON, JR. |
| *Weber v. Lafarge* | 08-4459 | |

## STATEMENT OF UNCONTESTED MATERIAL FACTS

**NOW INTO COURT**, through undersigned counsel, come defendants, Zito Fleeting, L.L.C. and Zito Fleeting, Inc. ("Zito"), and submit the following Statement of Uncontested Material Facts:

1. Ingram Barge Company owned Barge ING 4727 (sometimes referred to as "the barge").

2. Lafarge North America, Inc.'s France Road cement terminal is located on the Inner Harbor Navigational Canal in New Orleans.

3. Ingram and Lafarge were parties to a contract whereby Ingram contracted

1

to transport cement by barge for Lafarge from Lafarge's cement terminal in Joppa, Illinois to Lafarge's France Road cement terminal.

4. On Wednesday, August 24, 2005, the loaded ING 4727 was en route to New Orleans and scheduled to be dropped off at Zito's Algiers fleet.

5. At 1435 hours on August 24, 2005, Lafarge's Assistant Terminal Manager, Ed Busch, called Zito to advise that Lafarge had an immediate need for the ING 4727's cargo and asked that Zito arrange for the barge to be delivered to Lafarge as soon as possible. (Barry Boudreaux's deposition, Exhibit "B", p. 60.)

6. The barge arrived at Zito's fleet on August 25 and Zito started to transport the barge to Lafarge's terminal at approximately 2300 hours that evening. (Boudreaux, Exhibit "B", pp. 63-64.)

7. When Zito set out to deliver the barge to Lafarge at 2300 hours on August 25, 2005, Hurricane Katrina's projected path remained over the Florida Peninsula with an anticipated landfall near the Florida Panhandle and the Alabama Coast. (Daniel Mecklenborg's deposition, Exhibit "C", pp. 65-67,.)

8. Zito delivered the barge to Lafarge at approximately 1125 hours on August 26, 2005. (Boudreaux, Exhibit "B", p. 64)

9. When the barge was delivered to Lafarge the Hurricane's projected path was not forecast to make landfall in Louisiana. (Ed Busch's deposition, Exhibit "D", p. 22.)

10. After the barge arrived at Lafarge's facility, Lafarge's employees moored the barge to the dock with mooring lines that belonged to Lafarge. (Earl Smith's deposition, Exhibit "H", p. 81.)

11. Lafarge finished unloading the barge at approximately 0900 hours on August 27, 2005. (Edward VanderMeulen's deposition, Exhibit "I", p. 105.)

12. Mr. Busch did not expect Zito or anyone else to pick up the barge before the storm. (Busch, Exhibit "D", pp. 38-39.)

13. Mr. Busch did not speak with anyone at Zito when he allegedly called Zito on the morning of August 27, 2005. (Busch, Exhibit "D", p. 36.)

14. After unloading, the barge was moored against Lafarge's dock and Barge ING 4745 was moored alongside Barge ING 4727.

15. At approximately 1000 hours on August 27, 2005, Mr. Busch telephoned Joseph C. Domino, Inc.'s, dispatcher, David Castaing, to have a tug to switch the positions of the barges. (David Castaing's deposition, Exhibit "J", p. 21.)

16. Domino arranged for Unique Towing, Inc., to send the M/V REGINA H to switch the position of the barges.

17. Zito had no knowledge of or responsibility for any of the decisions to position or secure the barge at Lafarge's terminal. (Donald Green's June 25, 2009 deposition, Exhibit "E", pp. 196-197; Mr. Green's November 8, 2008 deposition, Exhibit "F", p. 136, and Hector Pazos' deposition, Exhibit "G", pp. 327-328.)

18. Zito did not violate any rules or regulations in connection with Zito's involvement with the barge. ( Green, Exhibit "F", p. 137 and Pazos, Exhibit "G", p. 329.)

19. The incoming calls on Zito's telephone system must be answered by a person before the incoming call can be directed to a voice mailbox. (Boudreaux, Exhibit "B", p. 39, l. 18- p. 40, l. 13; p. 46, l. 4-10; and p. 47, l. 10-p. 48, l. 1.)

20. For at least a week before the storm, Lafarge's office telephone lines experienced systemwide problems and were undependable due to construction that was taking place at Lafarge's terminal. ( Busch, Exhibit "D", pp. 12-13.)

21. Zito's telephone number was 504-835-8531. ( Boudreaux, Exhibit "B", p. 126.)

22. On the morning of August 27, Mr. Busch was placing and receiving telephone calls from his Nextel telephone (985-397-3254). (See Lafarge's Answer to Interrogatory No. 2, attached as Exhibit "M".)

23. Domino's telephone number was 504-341-1122. (Raymond Grabert's deposition, Exhibit "L", p. 23.)

24. Mr. Busch also spoke with Lafarge's Safety Director, Jennifer Arnold, several times that morning to discuss the status of the efforts to secure the terminal for the approaching storm. (Busch, Exhibit "D", pp. 55-56; and Jennifer

Arnold's deposition, Exhibit "K", pp 31-32.)

25. According to Lafarge's telephone records, Mr. Busch only placed calls to Domino, Ms. Arnold, his voicemail and to another Lafarge telephone number on the morning of August 27, 2005. (See the Nextel billing records, in particular the Subscriber Activity Detail report on page A10, which was also labeled as Bates No. LNA001052, attached as Exhibit "N".)

26. There is no record of Mr. Busch's alleged August 27, 2005 call to Zito in any of the telephone records. (See the Nextel billing records, in particular the Subscriber Activity Detail report on page A10, which was also labeled as Bates No. LNA001052, attached as Exhibit "N"; Zito's telephone log, attached as Exhibit "O"; and Lafarge's Answer to Interrogatory No. 2, attached as Exhibit "M".)

27. The plaintiffs' expert agrees that in the absence of Mr. Busch's alleged voicemail message, Zito would not have known that the barge was empty and therefore, could not be negligent for failing to remove the barge. (Green, Exhibit "F", p. 50 and Green, Exhibit "E", p. 195.)

28. Zito closed its fleet on the morning of August 27 and had no available boats to pickup a barge on the Inner Harbor Navigational Canal. (Boudreaux, Exhibit "B", pp. 115-116.)

5

Respectfully submitted,

**s/C. William Emory**
ANDRÉ J. MOULEDOUX (LA Bar #9778)
C. WILLIAM EMORY (LA Bar #20179)
MOULEDOUX, BLAND, LEGRAND &
BRACKETT, L.L.C.
701 Poydras Street, Suite 4250
New Orleans, LA 70139
Telephone: (504) 595-3000
Facsimile:  (504) 522-2121
Fax:        504-522-2121
Email:      bemory@mblb.com
Attorneys for Zito Fleeting, L.L.C. and Zito Fleeting, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 2nd day of October, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record. I also certify that I have mailed the foregoing by United States Postal Service, First Class, to all non-CM/ECF participants.

**s/C. William Emory**