**DANIEL MECKLENBORG**                                                **MINIDEP by Kenson**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| IN THE MATTER OF THE | CIVIL ACTION NO. |
| COMPLAINT OF INGRAM BARGE | 05-4419 |
| COMPANY AS OWNER OF THE | C/W 05-4237 |
| ING4727, PETITIONING FOR | C/W 05-5531 |
| EXONERATION FROM OR | C/W 05-5724 |
| LIMITATION OF LIABILITY | |

SECTION "C" (2)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Deposition of DANIEL PAUL MECKLENBORG,
taken at the offices of Liskow & Lewis, located at
50th Floor, One Shell Square, New Orleans,
Louisiana, beginning on the 26th day of October,
2006.

Reported by:
Peter Caruso, CCR-CVR
Certified Court Reporter

Representing LaFarge North America, Inc.:

CHAFFE, McCALL, L.L.P.
Attorneys at Law
By: Robert B. Fisher, Jr., Esq.
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163

Representing Ingram Barge Company:

LISKOW & LEWIS
Attorneys at Law
By: Don Haycraft, Esq.
701 Poydras Street
50th Floor
New Orleans, Louisiana 70139

Representing New York Marine and
General Insurance Company:

SUTTERFIELD & WEBB, L.L.C.
Attorneys at Law
By: Daniel A. Webb, Esq.
650 Poydras Street
Suite 2715
New Orleans, Louisiana 70130

Representing American Owners Mutual
Protection and Indemnity Association:

MONTGOMERY, BARNETT, BROWN & READ,
HAMMOND & MINTZ
Attorneys at Law
By: Philip S. Brooks, Jr., Esq.

APPEARANCES:

Representing the Plaintiffs,
  Ethel Mumford, et al:

WIEDEMANN & WIEDEMANN
Attorneys at Law
By: Lawrence D. Wiedemann, Esq. (#13457)
821 Baronne Street
New Orleans, Louisiana 70113

LAW OFFICE OF BRIAN A. GILBERT
Attorneys at Law
By: Brian A. Gilbert, Esq. (#21297)
3232 Edenborn Avenue
Metairie, Louisiana 70002

MR. PATRICK J. SANDERS, ESQ. (#18741)
Attorney at Law
3316 Ridgelake Drive
Metairie, Louisiana 70002

Representing the Plaintiffs,
  The Parfait Family, et al:

LAW OFFICES OF ASHTON R. O'DWYER, JR.
Attorneys at Law
By: Ashton R. O'Dwyer, Jr., Esq. (#10166)
365 Canal Street
Suite 2670
New Orleans, Louisiana 70130

Representing Joseph C. Domino, Inc.
  and Unique Towing, Inc.:

EXAMINATION INDEX

Caption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Appearances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Stipulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Examination

  By Mr. Wiedemann . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Reporter's Page . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 164

Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165

- 4 -



EXHIBIT

C

tables'

DANIEL MECKLENBORG

MINIDEP by Kenson

1    boats.
2    BY MR. WIEDEMANN:
3        Q.  Well, who was in charge of deciding?  Is
4    there a manager in charge of barges in Louisiana?
5        MR. HAYCRAFT:
6            Object to the form.
7        THE WITNESS:
8            Barges, because they are, you know,
9        without motive power, are, you know, in
10       the custody of a particular boat or a
11       particular customer, such as Lafarge in
12       this case.
13   BY MR. WIEDEMANN:
14       Q.  So that the Vessel Operations Manager
15   would be the one who would be in charge
16   indirectly of the barges since he's in charge of
17   the vessels; is that --
18       A.  No, sir.
19       Q.  No?
20       A.  No.
21       Q.  Well, who's in charge of the barges to
22   determine where they go and what they do?
23       A.  Well, the -- in terms of where they go,
24   the barges are -- the movements of the barges are
25   managed by our Customer Service Barge Dispatch

- 62 -

1    Group.
2        Q.  That's in Reserve?
3        A.  We have a remote operation in Reserve.
4    We also have a larger operation in Nashville.
5        Q.  And who runs that, the barge dispatch in
6    Nashville?
7        A.  In Nashville it is run by Kaj, K-a-j,
8    Shah, S-h-a-h.
9        Q.  What about locally, in Reserve?
10       A.  Locally it -- the person in charge is
11   Patrick Morton, M o-r-t-o-n.
12       Q.  And how is their authority divided?  I
13   mean, you've got a man in Nashville and a man
14   here locally.
15       A.  Yeah.  The man locally reports to the
16   man in Nashville.
17       Q.  By e-mail, by fax, or --
18       A.  I'm talking about organizational
19   structure.  He -- he's -- the guy in Nashville is
20   his boss.
21       Q.  These people that you named, are they
22   still employed by -- that is Chris Feagley, Shah
23   and Morton.  Are they still employed by Ingram?
24       A.  Yes.
25       Q.  Is Feagley still in the same position or

- 63 -

1    is he in another position?
2        A.  He is in a different position with
3    Custom Fuel Service, which is an affiliate of
4    Ingram.
5        Q.  That's a separate company?
6        A.  It's a separate company which engages in
7    selling diesel fuel and other lubricants to
8    marine customers.
9        Q.  Both to Ingram and to others?
10       A.  Correct.  Both in-house and to outside
11   purchasers.
12       Q.  And what's the name of that company?
13       A.  Custom Fuel Services.
14       Q.  And where is that located?
15       A.  It's based in Reserve.
16       Q.  And it's a fully owned subsidiary of
17   Ingram or --
18       A.  Yes.
19           (Off the Record).
20   BY MR. WIEDEMANN:
21       Q.  Do you know how many empty barges that
22   Ingram had in the New Orleans area in the three
23   days prior to Katrina?
24       A.  I know that Ingram had a total of
25   approximately 600 barges in the New Orleans and

- 64 -

1    Gulf Coast vicinity ahead of Katrina.  You know,
2    how many of those were empty is -- I don't know
3    the exact number, but I imagine half.
4        Q.  And what was done to secure those
5    barges, the ones that were in the New Orleans and
6    Gulf area in anticipation of Hurricane Katrina?
7        MR. HAYCRAFT:
8            Larry, your question's unclear.
9        What was done?  I object to the form.
10       MR. WIEDEMANN:
11           What was done to secure the barges.
12       MR. HAYCRAFT:
13           By, whom?
14       MR. WIEDEMANN:
15           By Ingram or somebody at their
16       request.
17       THE WITNESS:
18           The hurricane was one that was very
19       dynamic.  And so the advance notice that
20       it would be -- as to where it was likely
21       to land was very, very ambiguous until
22       very late in the process.
23           You know, as late as Friday morning
24       the hurricane was being viewed as
25       probably hitting landfall in the Florida

- 65 -

DANIEL MECKLENBORG

1  Panhandle. And only later Friday
2  evening did the movement of the
3  projected path start to move over toward
4  Mobile and New Orleans.
5      Nevertheless, you know, in
6  anticipation of a hurricane Ingram does
7  several things. It reduces the number
8  of barges that are moving into the areas
9  that could conceivably be hit by the
10  storm.
11      And so what we will do is, you know,
12  keep barges at, you know, a safe
13  distance, like Reserve or Baton Rouge,
14  that are headed south. Ingram also does
15  its best to move barges that can be
16  moved out of the IMT lower Miss area,
17  back to the New Orleans area, and in
18  some cases, you know, up to Reserve.
19  That's if a hurricane is expected to
20  have a potential impact on the New
21  Orleans area, you know.
22      In the Mobile area we will -- if a
23  storm is headed for Mobile we will move
24  barges up the Mobile River to a
25  location. And, you know, at other

- 66 -

1  locations it depends on, you know,
2  whether the barges are in the care and
3  custody of a third party or whether
4  they're in Ingram's care and custody.
5  BY MR. WIEDEMANN:
6      Q. Well, I'm not really interested in
7  Mobile. But my question is basically, I guess,
8  when did the Ingram management people in
9  Tennessee or in Louisiana determine that a
10  hurricane policy or procedure should be put in
11  effect?
12      MR. HAYCRAFT:
13          Object to the form.
14      THE WITNESS:
15          With respect to Katrina or any
16  hurricane?
17  BY MR. WIEDEMANN:
18      Q. Yes, to Katrina.
19      A. Oh, with respect to Katrina, the focus
20  on Katrina began on Thursday, and which would
21  have been the 25th. And -- but it was, again,
22  viewed as a storm that was impacting southern
23  Florida at that time. And then only as we got
24  into Friday did the storm start to move westward.
25  And at that point, you know, our series of

- 67 -

1  meetings for hurricane purposes was triggered.
2      Q. On the 26th?
3      A. On Friday.
4      Q. That's the 26th; is it not?
5      A. Yes.
6      Q. When did the meeting take place on the
7  26th?
8      A. There was a meeting on Friday afternoon
9  to focus on Katrina and, you know, where it was
10  likely to make landfall.
11      Q. And is it your testimony that it was
12  after that meeting on Friday afternoon that you
13  began the process of instituting some protection
14  procedure for the 600 barges in New Orleans and
15  Gulf Coast?
16      A. Yes. Again, not so much protection
17  procedures, Mr. Wiedemann. But what we did was
18  do the things that I articulated, that we do in
19  advance of a hurricane, which is avoid putting
20  more barges into harm's way and also, you know,
21  remove those that, you know, are in the most
22  exposed area, such as Mile 55 down at IMT.
23      Q. What time did this meeting take place?
24      A. I believe it was at 3:00 o'clock.
25      Q. On the 26th?

- 68 -

1      A. Yes.
2      Q. In Nashville?
3      A. Yes.
4      Q. Were there other --
5      A. Yes. I'll let you finish.
6      Q. Were there other Ingram facilities
7  patched into the meeting by telephone or by video
8  or --
9      A. Yes.
10      Q. Who was patched into the meeting?
11      A. The Reserve office and the Paducah
12  office.
13      Q. And who was in the Tennessee office at
14  this meeting?
15      A. David Sehrt, Gary Holt.
16      Q. Holt, okay.
17      A. H-o-l-t.
18      Q. Yes.
19      A. And Kaj Shah, K-a-j, S-h-a-h. And Scott
20  Noble, N o-b-l-e.
21      Q. That's it?
22      A. Yes.
23      Q. Were you there?
24      A. I was not.
25      Q. Were minutes made of the meeting?

- 69 -