# EXHIBIT 29

Report of Donald Green



**KDON Marine Consulting**
**8876 Gulf Freeway, Suite 120**
**Houston, Texas 77017**

**(713) 944-0966**                    **Fax (713) 944-2546**

March 11, 2009

Lawrence D. Wiedemann
Wiedemann & Wiedemann
821 Baronne Street
New Orleans, Louisiana 70113

Ref:   In Re: Katrina Canal Breaches Consolidated Litigation, Civil Action No. 05-4182 and
       other Consolidated Cases; In the United States District Court, Eastern District of
       Louisiana
       KDON File:  06538

## 1.      INTRODUCTION

The following are my opinions regarding the circumstances surrounding the breakaway of the
barge *ING 4727* from the Lafarge North America Inc. (LNA) facility, Inner Harbor Navigation
Canal (IHNC) a/k/a Industrial Canal, New Orleans, Louisiana, during hurricane Katrina on or
about the morning of August 29, 2005.

## 2.      BASIS OF OPINION

In order to render my opinions outlined below I have reviewed and considered the following
information:

### 2.1     Information Reviewed

- Various photographs;
- Transportation Agreement: Ingram contract with Lafarge;
- Service Agreement: Zito Fleeting, LLC contract with Ingram Barge Company;
- Logs of Unique Towing;
- Joseph C. Domino, Inc. Invoice, dated 8/27/05;
- Joseph C. Domino, Inc., Policies and Procedures Manual;
- Certificate of Documentation for the *REGINA H;*
- Certificate of Insurance: Gulf Coast Marine, LLC;
- Hull Policy: Lizana/Unique Towing, Inc., Richard C. Heck & Joseph M. Lizana;
- Policy of Insurance: Heck/Lizana/Unique Towing, Inc.;
- Deposition of Gerald McNeill, Joe Domino, Inc., Tug Broker;
- Exhibits to McNeill deposition;
- Deposition of Captain Grabert, Captain of the *REGINA H;*

- Deposition of Eric Thigpen, deckhand;
- Deposition of Daniel Mecklenborg, Ingram Corporate Representative/House Counsel;
- Deposition of Terry Adams, eyewitness;
- Deposition of Ed VanderMuelen, Lafarge Corporation Representative;
- Deposition of Ed Busch, Lafarge Assistant Terminal Manager;
- Deposition of Earl Smith, Lafarge Employee;
- Deposition of Pankaj Shah, Ingram Barge Company Vice President;
- Deposition of Scott Nobles, Ingram Barge Company Vice President;
- Deposition of David Sehrt, Ingram Barge Company Senior Vice President;
- Deposition of David Feagley, Ingram Barge Company Operations Manager;
- Deposition of Jim Reed, resident of Saint Bernard's Parish
- Deposition excerpts of William Villavaso, Sewerage & Water Board employee;
- Coast Guard Sector New Orleans Maritime Hurricane Contingency Port Plan;
- Coast Guard Sector New Orleans Hurricane Plan;
- Greater New Orleans Barge Fleeting Association Guidebook;
- Records of National Hurricane Center;
- National Hurricane Center:  KATRINA Graphics Archive;
- U.S. Coast Guard documents:
  1. Press Release:  Media Advisory: Coast Guard Prepares for Hurricane Katrina, dated 8/27/05;
  2. Press Release:  Media Advisory:  Web site launched to provide latest Coast Guard Information on Hurricane Katrina Operations, dated 8/27/05;
  3. Press Release:  Coast Guard Urges Mariners to Prepare for Hurricane Katrina, dated 8/27/05;
  4. Marine Safety Bulletin:  Set Port Condition WHISKEY, XRAY, ZULU, and Hurricane Katrina Preparations dated August 2005;
  5. Marine Safety Information Bulletin 22-05, dated 8/27/05;
- Database printout of towing vessels used by Ingram (about 25 listed in Louisiana for August 2005);
- Daily barge position reports;
- State of Emergency/Parish Evacuation Orders;
- U.S. Coast Guard Local Notice to Mariners, dated August 24 and September 14, 2005;
- Weather Advisories from Impact Weather, Ingram Bates numbers: 0649, 1650, 0651, 0665, and 0668;
- Ingram Barge Company list of towing vendors utilized between June and December 2005;
- Lafarge North America Responses to Interrogatories/Request for Production of Documents;
- Lafarge Response to Request for Admissions with attachments:
  1. Barge *ING 4727*, Barge Unloading Report, dated 8/26/05;
  2. NWO Terminal Report, dated 8/22/05;
  3. Fleet Picture, dated 8/9/05;
  4. Lafarge Barge/Truck/Rail report, dated 5/16/05;
  5. Statement of Ed Busch;
  6. Statement of Earl L. Smith; and
  7. New Orleans Terminal Hurricane Preparation Checklist;
- Ingram Responses to Request for Admissions;

- Deposition of Louis Robin;
- Deposition of Roland Johnson;
- Various photographs;
- New Orleans Lakefront Airport weather data, LNA 001071-001078; and
- Analysis of ING 4727 Mooring Arrangement, by John Flory, Tension Technology International

## 2.2    Additional Considerations

In addition to the above, I have reviewed safety procedures, federal rules and regulations, the Coast Guard online database, conducted online research for information regarding Hurricane Katrina, reviewed Coast Guard Marine Safety Bulletins, and various news reports regarding Hurricane Katrina, visited and inspected the remnants of the mooring lines used to moor the *ING 4727* and the *ING 4745* together, visited the Lafarge waterfront facility, inspected the *ING 4727,* consulted with Mr. John Flory regarding mooring analysis of the ING 4727 and drawn on personal experience and training; all for the purpose of rendering opinions as to the cause or causes of the breakaway of barge *ING 4727*.

## 3.    CIRCUMSTANCES

This case involves the breakaway of the uninspected and undocumented hopper barge *ING 4727* from the Lafarge North America, Inc. cement facility, New Orleans, Louisiana during Hurricane Katrina.  The *ING 4727* is of the following particulars.

| | |
|---|---|
| Registration/VIN: | Unknown |
| Service: | Barge |
| Operator: | Ingram Barge Company |
| Date of Build: | 1990 |
| Propulsion: | Non-self-propelled |
| Hull Material: | Steel |
| Gross Tons: | 960 tons (Estimated) |
| Net Tons: | 960 tons (Estimated) |
| Length: | 200.0 ft. |
| Breadth: | 35 ft. |
| Depth: | 12 ft. |
| Light draft: | 1'4.5" |

At the time of the breakaway the *ING 4727* was empty and moored outboard and alongside the loaded *ING 4745*  at the Lafarge North America, Inc., facility located on the west side of the Inner Harbor Navigation Canal, between the Florida Avenue and Claiborne Avenue bridges, New Orleans, Louisiana.

## 3.1    Breakaway

## 3.1.2    General

During the early morning hours of August 29, 2005, the *ING 4727* broke free of its moorings during Hurricane Katrina and drifted south in the IHNC  The *ING 4727* passed through the

3

levee, eventually coming to rest in the adjacent residential neighborhood within the Lower Ninth Ward.

The National Hurricane Center, Hurricane Katrina Intermediate Advisory Number 26A, 6 AM CST Monday August 29, 2005, reported that the hurricane was located about 70 miles south-southeast of New Orleans, Louisiana. The Advisory indicated that maximum sustained winds were near 145 MPH with higher gusts, a category four hurricane, and that hurricane force winds extended outward up to 120 miles from the center.

The *ING 4727* had been delivered to the Lafarge facility, loaded with oil field grade cement, on the morning of August 26, 2005, at about 1125 hours by the towing vessel *CONNIE Z*, operated by Zito Fleeting, LLC, an agent for Ingram Barge Company. Lafarge completed unloading the *ING 4727* on the morning of August 27th. Mr. Ed Busch, Lafarge Assistant Terminal Manager, testified that he telephoned Zito Fleeting at about 0900 hours and, not having reached anyone, left a voice message that the *ING 4727* was ready to be picked up. The *ING 4727* was never picked up by Zito Fleeting, LLC before the onslaught of Hurricane Katrina.

Mr. Busch testified that, during the morning of the 27th, Lafarge personnel made preparations for the expected arrival of Hurricane Katrina. At that time there were 7 barges located at the Lafarge facility arranged in two (2) tiers; one tier of 5 loaded barges was secured to the north end of the facility dock; and the other tier, adjacent to the north tier, consisted of two (2) barges, one loaded and the *ING 4727*, which, by that time was empty and moored against the dock. Witness testimony indicates that the difference in freeboard (height) between the *ING 4727* and the *ING 4745* was about 6-8 feet. The two barges were reported secured together with 3 one-part mooring lines. Mr. Busch stated that he was concerned about having the empty *ING 4727* on the inside against the dock and the loaded barge on the outside fearing that the *ING 4727* would possibly rise over the dock with the expected storm surge. At about 1000 hours on August 27th, Mr. Busch called Joseph C. Domino, Inc., a towing vessel broker, and requested a towing vessel be dispatched to Lafarge to top around the *ING 4727* and *ING 4745*, placing the loaded *ING 4745* against the dock. He did not request them to add or supply additional mooring lines. Shortly thereafter, about noon on the 27th, Mr. Busch and other Lafarge personnel reportedly secured the facility and barges and evacuated the area.

Mr. Busch testified that prior to the onset of Hurricane Katrina the Lafarge facility's communication capabilities were limited. Mr. Busch stated that telephone service was limited, and email service had been down since some time before the storm. Communications were limited to Nextel cell phone service. Mr. Busch testified that he and other Lafarge personnel were alerted that Hurricane Katrina was heading for New Orleans by family via cell phone calls.

Mr. Gerald McNeill, Joseph C. Domino, Inc., dispatched the towing vessel *REGINA H* to the Lafarge facility to affect the top around of the barges at the Lafarge facility. At about 1425 hours on the 27th, the *REGINA H* arrived at the Lafarge facility, which was at that time abandoned. The *ING 4727* and the *ING 4745* were topped around and secured. Eric Thigpen, deckhand aboard the *REGINA H,* testified that he secured the loaded *ING 4745* to the dock using 3 or 4 mooring lines. Mr. Thigpen testified that he observed that the *ING 4745* and the *ING 4727* were moored together with 3 one-part 2-inch mooring lines; one (1) line on each end and one (1) line about amidships. Both Mr. McNeill and Captain Raymond Grabert, Jr., captain of the *REGINA H,* testified that, had they been asked to remove the ING *4727* from the Lafarge

4

facility, it could have been towed to a fleet in the Mississippi River. There was also testimony that rigging or mooring lines could have been added if requested.

Captain Grabert testified that he assumed the barges he was instructed to top around had sufficient rigging in place; therefore, he did not bring extra rigging. Deckhand Thigpen testified that he had to search the Lafarge dock for additional lines with which to secure the *ING 4745* to the dock. He, Thigpen, stated that he found one additional line on the dock, which he utilized in securing the two barge tier to the dock.

Mr. Busch testified that he instructed his personnel to secure the barges to the dock in such a manner as to allow for the expected storm surge. Mr. Busch described the arrangement as follows: The mooring was secured to a mooring bollard affixed to the dock then looped around the cement pilings with 3 loops thence to the cleats or bitts on the barge. Mr. Busch theorized that this method would allow a pay out of the mooring line as the water level rose in the canal. Aerial photographs of the Lafarge facility subsequent to the passage of Hurricane Katrina reveal that the northern most mooring line of the northern tier of the five (5) loaded barges apparently slipped over the piling allowing the northern tier to shift away from the dock toward the southern tier of barges. The Lafarge New Orleans Terminal Hurricane Preparation Checklist requires that all barges be cabled to shore. Mr. Busch's method of securing the barges to the facility dock was also contrary to Lafarge's published procedure.

Mr. Stanley Cook, Ingram Barge Company area maintenance manager testified that he was directed by an unidentified Ingram person to check Ingram barges in the area. Mr. Cook visited the Lafarge facility on the morning of August 27, 2005, ostensibly to only check barge covers. Mr. Cook testified "*I was instructed to go out and check the covers; make sure they were being tied down; if they did not have line, provide them with the line to do so.*" (Cook deposition: Page 69, line 25 to page 70, line 2). Mr. Cook, a retired Coast Guard officer, testified that he was not concerned with the safety of the barges.

### 3.1.3   Breakaway Event

Mr. William Villavaso, eyewitness, testified that on the morning of August 29, 2005, between the hours of 0400-0610, he witnessed a barge strike the floodwall resulting in a breach near the Florida Avenue Bridge. Mr. Villavaso was a Sewerage & Water Board employee stationed at the Sewerage & Water Board facility near the Florida Avenue Bridge. Mr. Villavaso was standing in a doorway when he heard an explosion and saw what appeared to him to be a barge, which broke the floodwall. Mr. Villavaso said the wall "*looked like a mouth with a tooth out*". After such time the area and facility proceeded to flood.

Mr. Terry Adams, eye witness, testified that on the morning of August 29, 2005, at about 0530-0600 hours, he witnessed a barge in the canal heading for the levee. Mr. Adams stated that he heard a bang followed within minutes by a tidal wave coming through the levee.

The *ING 4727* eventually came to rest within the Lower Ninth Ward (South breach). Post Katrina aerial photographs of the area show the *ING 4727* located in the area just east of the IHNC east levee near the Claiborne Street Bridge.

The *ING 4727* was subsequently cut up into sections and removed from the area.

### 3.1.4   Significant Events

The Coast Guard, the National Hurricane Center and national and local news organizations all issued a plethora of bulletins, broadcasts, warnings and advisories to the marine industry and to the public at large advising that Hurricane Katrina was a dangerous hurricane and that its expected trajectory would take it toward the Greater New Orleans area.

Mr. Busch, the interim Lafarge manager, called Zito Towing ostensibly to have them remove the empty *4727* to a fleet, but failed to follow-up and later failed to instruct Joseph C. Domino, Inc. to provide and install additional mooring.

The *REGINA H*, which was dispatched to top around the *ING 4745* and the *ING 4727*, did not carry extra mooring rigging even though it was evident that the mission to top around the barges was because of the expected hurricane force winds and surge expected in the New Orleans area. The testimony of Mr. Thigpen is that he had to search the Lafarge dock for additional lines with which to secure the barges once they were topped around.  Both Captain Grabert and Mr. Thigpen testified that the *ING 4727* and the *ING 4745* were moored together with only 3 one-part 2-inch polypropylene lines.

## 4.   APPLICABLE STANDARDS AND REGULATIONS

Coast Guard Sector New Orleans Hurricane plan, Annex C provides for task requirements at port conditions Whiskey, X-Ray, Yankee and Zulu, as set forth therein.  Particularly, port condition X-Ray requires that a facility: a) determine the special needs and attentions of vessels moored at the facility; and b) determine whether vessels desiring to remain moored at this facility during the hurricane will be allowed to do so.  Notify the vessel master, vessel agent, and the COTP of the facilities decision.

Title 33 Code of Federal Regulations (CFR) Part 6, PROTECTION AND SECURITY OF VESSELS, HARBORS, AND WATERFRONT FACILITIES, § 6.14-2 Condition of waterfront facility a danger to vessel, and § 6.19–1 Responsibility for Security of Vessels and Waterfront Facilities, Primary responsibility.  Both regulations cite conditions under which the Captain of the Port finds that the mooring of any vessel to a wharf, dock, pier, or other waterfront structure would endanger such vessel, or the harbor or any facility therein by reason of conditions existing on or about such wharf, dock, pier, or other waterfront structure; however, regardless of the Coast Guard's authority in this regard, the masters, owners, and agents of vessels or other waterfront facility have <u>primary</u> responsibility for the protection and security of such vessels.

Greater New Orleans Barge Fleeting Association's "Standard of Care & Streamlined Inspection Program Guide Book" – This guide book, although not a requirement for vessels moored in the IHNC, provides a comprehensive guide to the proper, safe and adequate mooring methods for fleet and facility operators.  On page 17, the guide advises that moorings from high to low fittings should be avoided if the fitting on the lower barge may allow the line to slip off.

Coast Guard Sector New Orleans Hurricane Plan; Enclosure (11) Maritime Hurricane Contingency Port Plan "A Guide to Port Planning and Preparation" Appendix 2- Recommended Precautionary Measures for Barges, Applies to Barges: Moored:

"*Mooring lines doubled up with due consideration given to the effects of predicted storm surge. **Special attention should be paid to barges moored in the proximity of bridges.**"* (Emphasis added) (Note: The Lafarge facility is located between two (2) major bridges used as primary evacuation routes from the Lower Ninth Ward of New Orleans.)

"*Spare mooring lines and/or wires should be readily available.*"

Coast Guard Sector New Orleans – Marine Safety Bulletin, Volume V, Issue XXXV, dated August 2005 – This bulletin notified the general maritime industry that <u>Port Condition WHISKEY</u> had been set.  The bulletin states:  "*All vessels operating below the Huey P. Long Bridge are <u>strongly urged</u> to implement these measures*".  The applicable measure, which applied to the *ING 4727* was: "*Mooring lines doubled up with due consideration given to the effects of predicted storm surge. Spare mooring lines and/or wires should be readily available*" The bulletin further recommended to marine operators:  "*You are encouraged to review your existing hurricane plan or develop a plan if you do not have one.*"  Lafarge did not have a hurricane plan, but only a single page Hurricane Checklist.

## 5.    OPINIONS

5.1    Subject to receiving additional information or records it is my opinion that the cause or causes of the breakaway of the *ING 4727* from its mooring at the Lafarge facility during Hurricane Katrina was most likely the combination of hurricane force winds and rising water levels in advance of Hurricane Katrina, known to all parties, and the acts and omissions of the parties discussed herein. Post hurricane aerial photographs reveal that the northern tier of five (5) loaded barges' northern mooring lines slipped or parted allowing the tier of barges to set down and allide with the southern tier of barges, *ING 4727* and *ING 4745*.  It is possible that the resultant forces of an allision between the tiers of barges would have caused the 3 single-part mooring lines between the *ING 4727* and the *ING 4745* to part allowing the *ING 4727* to drift uncontrollably in hurricane winds toward the levee.

5.2    It is my opinion that Lafarge North America, Inc.'s New Orleans facility failed to properly moor the *ING 4727* to the *ING 4745* to withstand the hurricane force winds and predicted storm surge expected upon the approach of Hurricane Katrina.  The testimony of witnesses indicates that the two barges were moored together with 3 one-part 2-inch polypropylene mooring lines and that the height difference between the two barges was about 6 feet.  This mooring arrangement, in my opinion, is totally inadequate to prevent a breakaway during hurricane force winds.  Further, it is my opinion that the decision to top around the barges, placing the empty *ING 4727* on the outboard side of the tier, was imprudent, unseamanlike and unnecessarily exposed the empty *ING 4727* to the likelihood of breaking away from its moorings.  Additionally, the fact that there were 7 barges moored at the Lafarge facility and the only barge that broke loose from its mooring was the empty *ING 4727* leads one to the conclusion that had Lafarge not discharged the *ING 4727* it is more likely than not that the breakaway would not have occurred.

5.3    It is my opinion that Lafarge North America, Inc. violated their own published "Hurricane Preparation Checklist" by not cabling the barges to shore.  The testimony of

Mr. VanderMuelen indicates that the mooring procedure was changed in practice some years ago to the procedure used by Mr. Busch to prepare the facility for Katrina. It is my opinion that had Lafarge personnel followed the published procedure to cable the barges to shore, as opposed to using soft line to secure the barges to the dock, the northern most mooring line on the 5 barge tier would have held the tier against the dock and not allowed the tier to shift south striking the adjacent 2 barge tier, which included the *ING 4727.*

5.4 It is my opinion that Lafarge's failure to order Joseph C. Domino, Inc., to provide additional rigging and to remove the *ING 4727* from the facility and tow it to a fleet in the Mississippi River rather than top the two barges around could and would have prevented this breakaway. The testimony of Mr. Gerald McNeill, Joseph C. Domino, Inc., indicates that *REGINA H* could have towed the *ING 4727* had Lafarge ordered it to do so.

5.5 It is my opinion that Lafarge failed to ensure that the *ING 4727* and *ING 4745* had sufficient rigging and or mooring lines to secure the two barges together at the Lafarge dock facility. It is my opinion that it was their duty and responsibility to ensure that the barges were secured in such a manner, i.e. doubled up mooring lines, to withstand the expected hurricane force winds and tides of Hurricane Katrina, which they did not do. Had Lafarge requested of Joseph C. Domino, Inc., at the time they requested a towing vessel top around the barges, to provide additional lines to double up the mooring lines between the *ING 4727* and the *ING 4745*, the *REGINA H* could and would have provided extra mooring lines.

5.6 It is my opinion that Lafarge North America, Inc., violated the provisions of 33 CFR 162.75 (b)(3)(ii) Anchoring and Mooring: for their failure to ensure that the *ING 4727* was adequately moored to withstand the anticipated hurricane force winds of Hurricane Katrina. The available testimony in this case clearly demonstrates this to be the case.

5.7 It is my opinion that Lafarge North America, Inc., violated the provisions of 33 CFR 6.19, Primary responsibility, for their failure to ensure that the *ING 4727* was secure and safe at the Lafarge facility. Again, the available testimony in this case clearly demonstrates this to be the case.

5.8 It is my opinion that Lafarge failed to adhere to the recommendations of the Coast Guard Sector New Orleans Hurricane plan, particularly Appendix 2 requiring that mooring lines be doubled up and that special attention be given to barges moored in the proximity of bridges. In addition, Lafarge failed to adhere to the recommendations of Annex C by failing to determine the special needs and intentions of vessels moored at the facility, failing to determine whether vessels desiring to remain moored at the facility during the hurricane would be allowed to do so and failing to notify the vessel master, vessel agent, and the COTP of the facilities decision. Had such notification taken place, it is clear that the vessel master, vessel, and the COTP would have been apprised that the *ING 4727* was released for pick-up and moored with only 3 single part lines. Such notification would have resulted in the vessel being moved and/or properly secured thus preventing the breakaway.

5.9     It is my opinion that Lafarge North America, Inc. failed to adequately monitor the progress of the storm. It is clear that as early as August 25, 2005, that Hurricane Katrina was expected to enter the Gulf of Mexico.  Given the proximity of the Lafarge Facility to hurricane conditions, good seaamanship mandates that storms should be closely monitored.  It is unacceptable for marine terminals to be advised of hurricane threats by phone calls from family members as described by Mr. Busch on Saturday, August 27, particularly in light of Governor Blanco's Declaration of  State of Emergency for the State of Louisiana on August 26, 2005.   Proper monitoring results in the ability to properly plan.

5.10    It is further my opinion that Lafarge North America, Inc.'s failure to properly monitor the storm resulted in improper planning to handle the *ING 4727*. As stated earlier, the barge should not have been unloaded, or loading should have been stopped.  Proper planning would have allowed for movement of the barge, proper mooring, ballasting or sinking of the barge at its berth.

5.11    In furtherance, mooring of the vessel with three single part lines was clearly a temporary mooring and insufficient for hurricane conditions.  The *ING 4727* had 5 cavels on each side, 1 spool on each corner, and 1 cavel on each end. Mr. Smith indicated that there was additional lines available after mooring, but not used.  There was wire rope available, and not used.  This vessel could have been moored to avoid breakaway and it was not. Had the vessel been adequately moored this breakaway could and would have been prevented.  This vessel was not moored for hurricane conditions.

5.12    It is my opinion while the exact time of the barge breakaway is unknown, given the temporary/inadequate mooring status of the *ING 4727*, it is estimated that moorings would have failed when sustained winds reached approximately 36 mph, which would have preceded the landfall of Hurricane Katrina by several hours.

5.13    It is my opinion that Lafarge North America, Inc. violated their own published "Hurricane Preparation Checklist" by not cabling the barges to shore.  It is my opinion that had Lafarge personnel followed the published procedure to cable the barges to shore, along with the U.S. Coast Guard recommendations of doubling up lines (which includes cable/wire rope) this breakaway could and would have been prevented.

5.14    As for Zito Fleeting, Assistant Terminal Manager, Ed Busch, testified that he called to release the barge to Zito Fleeting at approximately 9:00 am on August 27, 2005. However, Zito denies that any such phone call was made. Had there been a phone dcall, there clearly was enough time to move the *ING 4727* from the Lafarge facility to the Zito Fleeting facility on the Mississippi River prior to the storm.  Zito, per its contract with Ingram, (owner of the *ING 4727*) was entitled to priority service with regard to switching and fleeting of barges.  I am of the opinion that failure of Zito, had it received the call, to retrieve the *ING 4727*, knowing that it was empty, released and ready for pickup, constituted negligence.

5.15    It is my opinion that the breakaway of the *ING 4727* was preventable through the application of good seamanship and the maritime standards of care discussed in this report.

**6.      PROFESSIONAL SERVICE FEES**

Fees for my professional services are as follows:

      -     For review, investigation, issuing report or court appearance:  $350.00 per hour

Total compensation to-date is $66,878.00

**7.      CURRICULUM VITAE**

A copy of my Curriculum Vitae and List of Cases is attached hereto.

**8.      PUBLICATION, BOOKS, AND ARTICLES PUBLISHED**

I have not published or written any books, publications or articles during my career.

**9.      COMMENTS**

The above opinions are based on more than 40 years of marine experience, training, education, service aboard vessels, inspection and examination of vessels, and investigation of hundreds of marine casualties to determine cause, and enforcement of U.S. Statutes with regard to vessel and personnel safety.  I am a Commander in the U.S. Coast Guard (Retired).  I hold a Master 1600 Gross Ton Oceans, Second Mate Unlimited Tonnage and Master Towing Vessels Oceans and Western Rivers license issued by the U.S. Coast Guard.  I am also a Coast Guard certified instructor of navigation, seamanship, vessel safety, radar theory, collision avoidance and Navigation Rules (Rules of the Road).

This is a preliminary report and may be revised or amended upon receipt of further information.

Sincerely,

D. J. Green
Commander, USCG (Retired)
Marine Consultant

Attachments:   CV and List of Cases

**Violations**

| Source | Citation | Ingram | Lafarge | Unique |
|---|---|:---:|:---:|:---:|
| **Title 33, Code of Federal Regulations** | **Sec. 162.75 (b)(3)(ii) Waterways** — Anchoring or mooring: | | | |
| | • Moored by bow and stern lines | ✗ | | ✗ |
| | • Secured at sufficiently frequent intervals (against) winds, currents | ✗ | ✗ | ✗ |
| | • Lines shortened, barges close together | ✗ | ✗ | ✗ |
| | **2  Sec. 6.14-2  Condition of water-front facility a danger to vessel** — Whenever the captain of the port finds that the mooring of (a) vessel to a...dock ...would endanger...the harbor...by reason of conditions...including, but not limited to, inadequate guard service...or unsatisfactory operation, the captain of the port may prevent the mooring.... | | | |
| | **3  Sec. 6.19-1 Primary Responsibility** — [M]asters, owners, operators, and agents of vessels or other waterfront facilities [have] primary responsibility for the protection and security of such vessels or waterfront facilities. | ✗ | ✗ | ✗ |
| **USCG Sector New Orleans Hurricane Plan Enclosure 11** *(BCO 0070 ff)* | **4  Page D-7  Recommended Storm Preparations** *(BCO 0079)* | | | |
| | General: • [This guide does not] limit the right of facility owner, operator, person-in-charge to deny a vessel permission to remain moored during a hurricane. | | ✗ | |
| | Vessels: • All vessels that intend to remain in port should consider the appropriateness of taking on additional ballast ... fully loaded vessels normally fare better than light. | ✗ | ✗ | |
| | **5  Page D-8  Waterfront Facilities** *(BCO 0080)* | | | |
| | Waterfront • Initial decision to allow a vessel to remain moored rests primarily with the facility. | | ✗ | |
| | • The owner, operator, and/or person-in-charge of a facility and the masters, owners, operators, and/or agents of a vessel are primarily responsible fo r the safety and security of their facilities and vessels. | ✗ | ✗ | ✗ |
| | **6  Annex B, Storm Preparation Checklist for Vessels** *(BCO 0083-4)* | | | |
| | **I. Port Condition WHISKEY (72 hrs before landfall)** | | | |
| | (a) Review vessel's operational schedule. | ✗ | ✗ | |
| | (b) Review vessel heavy weather plans & take appropriate action. | ✗ | ✗ | |
| | (c) If unable to get underway, evaluate the safety of the present berth. If necessary, develop plans to shift to an alternate location or berth. | ✗ | ✗ | |
| | **II. Port Condition X-RAY (48 hrs before landfall)** | | | |
| | (a) Vessels intending to remain at their moorings during the hurricane should obtain the permission of the owner, operator, or person-in-charge of the waterfront facility and determine the conditions the facility will require. | ✗ | ✗ | |
| | **III. Port Condition YANKEE (24 hrs before landfall)** | | | |
| | (c) Vessels intending to remain moored at a waterfront facility during the hurricane should shift berths as needed prior to port closure. | ✗ | ✗ | ✗ |
| | **IV. Port Condition ZULU (12 hrs before landfall)** | | | |
| | (a) Ensure the vessel is securely moored or anchored and prepared for hurricane conditions. | ✗ | ✗ | ✗ |
| | (b) Report any hazardous conditions or breakaways of vessels directly to the COTP as soon as possible. | ✗ | ✗ | ✗ |
| | **7  Annex B, Appendix 2 - Recommended Precautionary Measures for Barges** *(BCO 0085)* | | | |
| | Moored: • Mooring lines doubled up | ✗ | ✗ | ✗ |
| | • Consider predicted storm surge | ✗ | ✗ | ✗ |
| | • Special attention to proximity of bridges | ✗ | ✗ | ✗ |
| | • Sufficient personnel available to respond to emergencies | ✗ | ✗ | ✗ |
| | • Spare mooring lines and/or wires should be readily available | ✗ | ✗ | ✗ |
| | **8  Annex C, Storm Preparation Checklist for Waterfront Facilities** *(BCO 0086)* | | | |
| | **I. Port Condition WHISKEY** | | | |
| | • Review contingency plans | ✗ | ✗ | ✗ |
| | • Have procedures for recovering breakaway barges | ✗ | ✗ | ✗ |
| | • Evaluate measures to reduce size of fleet | ✗ | ✗ | ✗ |
| | **II. Port Condition X-RAY** | | | |
| | • Determine the special needs & intentions of vessels moored at the facility | ✗ | ✗ | ✗ |
| | • Determine whether vessels will be allowed to remain moored | ✗ | ✗ | ✗ |
| | • Notify the vessel master, vessel agent, and the COTP of the facility's decision | ✗ | ✗ | |
| | • Ensure that vessel master have ample time to contract tugs & complete the transit | ✗ | ✗ | |
| **USCG Sector New Orleans Marine Safety Bulletin** | **9  Volume V, Issue XXXV, August 2005** | | | |
| | **Set Port Condition WHISKEY** | | | |
| | • Mooring lines doubled up | ✗ | ✗ | |
| | • Consider predicted storm surge | ✗ | ✗ | |
| | • Vessel ballasted to ensure maximum safety | ✗ | ✗ | |
| | • Continuous radio watch maintained | ✗ | ✗ | |
| | • Sufficient personnel available to respond to emergencies | ✗ | ✗ | |
| | • Spare mooring lines and/or wires should be readily available | ✗ | ✗ | ✗ |
| | • Review your existing hurricane plan or develop a plan | ✗ | ✗ | |
| **U.S. Coast Pilot 5, Gulf of Mexico Chapter 8.  Mississippi River** | **10  Extracts from the rules & regulations for the INHC:** — Vessels shall not be berthed two abreast alongside any wharves, bulkheads, or clusters except that small barges or other small craft may be moored two or more abreast when necessary clearances for proper operation of the canal can be maintained and permission of the Superintendent shall have been obtained. | | ✗ | |
| **GNO Barge Fleeting Association's Standards & Inspection Guide Book** | **11  Page 17** Moorings from high to low fittings should be avoided if the fitting on the lower barge may allow the line to slip off | | ✗ | ✗ |
| **Lafarge France Road Hurricane Preparation Checklist** | **12** | | | |



New Orleans Terminal
Hurricane Preparation Checklist

Name of Hurricane _____
Date _____

___ Move the barge unloader (Rambo) to the south end of the dock against the stops and tie barge ropes around the wheels.

___ **Cable all barges to shore.** *(Lafarge ✗)*

___ Disconnect power to the wharf

___ Remove all loose items from barge unloader (Rambo) and put inside the containers on the Rambo and lock the doors.

___ Remove all loose items from the wharf and store in the marine shed or under group IV silos.

___ Remove all equipment i.e. Welding machine, fork lift, Bobcat from the wharf and store in the marine shed or under group IV silos.

___ Remove all loose items (Tools, etc.) from group III & IV silo roofs and store in the elevators

___ Disconnect the power in the terminal (do this last)

(((((( Be SAFE))))))

Due to space limitations, contents may represent highlights or examples of the cited full original source text.



**WHISKEY** 72 hours from gale force winds — **8/26 Fri**
**X-RAY** 48hrs — **8/27 Sat**
**YANKEE** 24h — **8/28 Sun**
**ZULU** 12h — **8/29 Mon**

### 8/25 Thu

8/25/05 0830
Barge ING 4727 arrives at Algiers fleet.

8/25/05 1700
Communication equipment at Lafarge is disassembled for moving to new building.

8/25/05 2235
CONNIE 2 tug for Ingram, picks up Barge 4727, loaded with II grade cement for Lafarge France Road. Mecklenborg dep. p.75

**August 2005 • USCG Bulletin V.XXXV**

**Port Condition WHISKEY:**
- Mooring lines doubled up
- Consider predicted storm surge
- Vessel ballasted to ensure maximum safety
- Continuous radio watch maintained
- Sufficient personnel available for emergencies
- Spare mooring lines should be readily available
- Review your hurricane plan or develop one if you do not have one

**Pre Katrina** 2005 Hurricanes
Arlene · Cindy · Dennis · Bret · Jose · Gert · Emily · Franklin · Harvey · Irene

**Early Katrina**

### 8/26 Fri

8/26/05 0600
CONNIE 2 stby to dept for locks #6 @ 0600, 0959-1020 In & out locks, 1020-1100 to Lafarge. (BCG 0245)

8/26/05 0900
Impact Weather Hurricane Advisory 13: Westerly motion will continue, to Florida panhandle, [possible] Category 3.

8/26/05 1125
CONNIE 2 delivers ING 4727 to Lafarge France Road. (LM 0105)

8/26/05 1220
ING 4727 unloading begins.

8/26/05 1300
Louisiana Governor Blanco declares State of Emergency. (Gov's Letter to Congress 10/7/05)

8/26/05 1500
Impact weather advisory 14: Even a greater shift toward Louisiana & Miss. We may make another westward adjustment at 9pm. Continues to intensify, max sustained winds. 125-135 mph, storm surge 12-15' at landfall and 30-40 miles east.

8/26/05 1500
Impact site forecast for Reserve, LA: Possibly a category 4 at landfall Monday. Could move inland at SE Louisiana coast.

8/26/05 1500
Executives of Ingram Barge Co. hold hurricane meeting to discuss developing weather conditions. No written hurricane plan.

8/26/05 2100
Impact Advisory 15: Significant westward adjustment to mouth of Miss. River. Winds 130-140, surge 12-15'

8/26/05 2100
Impact Site Forecast for Reserve, LA: Katrina to move ashore Monday near Grand Isle as Category 4. Surge 12-16', rain 5-15'. Your location will be within 74 mph wind radius.

### 8/27 Sat

8/27/05 0730
Plaquemines Parish: State of Emergency

8/27/05 0730
Jefferson Parish: State of Emergency

8/27/05 0830
Ingram executives hold hurricane meeting.

8/27/05 0900
St. Charles Parish: Mandatory Evacuation

8/27/05 0900
Lafarge completes unloading ING 4727.

8/27/05 About this time
Busch, Assistant Terminal Manager, calls Zito. Leaves message; ING 4727 is released for pickup."

8/27/05 About this time
Ingram's Area Maintenance Manager, by directive from Nashville, goes to Lafarge "to instruct [them] to tie [the covers] down, if they needed assistance I was to help." (Cook dep p.86) ING 4727 has just completed discharging the barge. (p82)

8/27/05 0930
Lafarge employees make preparations for the arrival of Hurricane Katrina.

8/27/05 0954
Zito fleets at Mile 105, 103 and 95 (Algiers) are docked to incoming traffic. (BCG 0228)

8/27/05 1000
Busch calls broker Domino to request tow to Lafarge to top around the ING 4727 and ING 4745, placing the loaded ING 4745 against the dock.

8/27/05 1200
Busch & other Lafarge personnel secure the facility & barges & evacuate.

8/27/05 1320
Jefferson Parish News Release: Voluntary Evacuation of parish residents beginning at noon today.

8/27/05 1425
REGINA H arrives at the abandoned Lafarge facility. Deckhand Thigpen assists in tow around, searches dock for additional mooring lines, finds only one. ING 4727 & 4745 were secured with three one part 2" polypropylene lines, according to Thigpen & Capt Graeber.

**Emergency Declarations**

### 8/28 Sun

8/28/05 0830
Ingram executives hold hurricane meeting.

### 8/29 Mon

8/29/05 0500
Storm surge at MRGO levee. (tf Times Picayune)

8/29/05 about 0530-0600
Storm ING 4727 broke free of its moorings, drifted south in the INHC, and allided with the east side levee wall.

8/29/05 0600
Nat'l Hurricane Ctr Advisory 26a: Katrina is located 70 miles south-southeast of NOLA max sustained winds 145 MPH hurricane force winds extend outward up to 120 miles from center. Storm surge 18 to 22 feet.

8/29/05 0610
Katrina landfall at Buras, 21 ft surge inundates Plaquemines parish. (tf Times Picayune)

8/29/05 0611
Begin civil twilight

8/29/05 0636
Sunrise

8/29/05 0830
Ingram executives hold hurricane meeting.

8/29/05 time?
Buras small boat ramp to allow Ingram employee at Joppa to check on Ingram barges.

**Resume of:**   Donald J. Green                    Office: (713)944-0966
                 8876 Gulf Freeway, Suite 120       Mobile: (281)414-1954
                 Houston, Texas  77017              Fax: (713)944-2546


**Experience:**   Twenty-three years Coast Guard service which includes extensive experience in marine operations, investigations and Marine Safety programs.  This experience includes: Eleven years in inspection of hulls and machinery of commercial vessels during construction and repair, investigation of commercial vessel casualties and personnel complaints.  Possess in-depth knowledge of commercial vessel laws and regulations.  Eight years at sea experience in vessel operations.  Commander in the United States Coast Guard (Retired).  Extensive post military business experience in the maritime industry which includes:  Six years as a senior corporate officer of several marine companies and seventeen (17) years as a marine consultant.  Formed several successful start-up companies.  Holds Master 1600 Tons Oceans, Second Mate Oceans Unlimited and Master of Towing Vessels Oceans and Western Rivers Coast Guard License.


**Employment**                          KDON Marine Consulting
**Record:**                                Houston, Texas

1989 to
Present:       **Consultant**.  KDON Marine Consulting is a marine service firm which provides consulting and investigative services to attorneys and marine companies.  Qualified as a marine expert in federal, state and county jurisdictions.  Conducted numerous vessel casualty investigations, such as collisions, allisions, groundings, fires, and personal injuries, to determine cause and render expert opinions. Testified in court and by deposition. Ability to analyze complex marine casualties and provide expert opinion and advice. Excellent communication skills.  Extensive references available upon request.


                        Houston Exam-Prep Training Center, Inc
                                Houston, Texas


l986 to
Present:       **President**.  The principal business of the company is to prepare individuals for Coast Guard license examinations as Merchant Marine Officers, both Deck and Engineer licenses.  Teaches license candidates celestial, coastal and Inland navigation as well as other subjects necessary to successfully pass Coast Guard examinations.  Certified by the Coast Guard as a Navigation, Seamanship and Radar Instructor for Coast Guard approved courses.  During the past eleven years trained over 6,000 individuals in shiphandling, navigation, stability, and other marine subjects.

State Boat Corporation
Houston, Texas

l982 to l986   **Executive Vice President**.  State Boat Corporation, an international marine operator of large offshore service vessels, operated 36 vessels worldwide. As Executive Vice President was responsible for the management of three active subsidiaries including planning, financing, contract negotiations, and corporate development.  Managed the construction of six vessels worth $20 million.  Routinely conducted underway inspections of vessels owned and operated by the company. Responsible for vessel operations in the United States, Mexico, Egypt, Singapore, and Malaysia.


**Military
Service:**                        Marine Safety Division
Eighth Coast Guard District
New Orleans, Louisiana


1979 to 1982   **Offshore Operations Liaison Officer**. Rank: Commander.  Conducted in-depth research of marine transportation industry problems.  Liaison between Coast Guard and private industries such as supply boat companies, drilling contractors, shipyards, oil companies and supply vendors.  Consulted with individual companies on effective management techniques to comply with federal regulations.  Maintained expertise of industry technology and equipment.  Promoted and assisted public and private marine education programs throughout the Gulf Coast area.  Arranged and managed industry training for Coast Guard inspector trainees.  Extensive public speaking and lecturing on Coast Guard activities to public and private groups.


l978 to l979   **Assistant Program Manager of Merchant Vessel Inspection**.  Rank: Lieutenant Commander.  Developed and implemented vessel inspection policies and guidelines for six major Coast Guard field offices in the Gulf Coast area.  Member of key management team responsible for formulating formal planning proposals in response to congressional mandated for inspection of Outer Continental Shelf Activities.  Established and managed a four week upper level training course for offshore Marine Inspectors in drilling and petroleum production operations.  Conducted planning, budgeting and management supervision of commercial vessel inspection at the district staff level; managed an annual training budget of $100,000.

2

Coast Guard Marine Safety Office
Cincinnati, Ohio


1975 to l978   **Executive Officer**.  Rank: Lieutenant Commander.  Directed and supervised a staff of 13
military and civilian personnel.  Managed the day to day activities of the office such as
inspection and damage surveys of commercial vessels, marine casualty investigations,
licensing of marine personnel, marine terminal inspections and responses to pollution
incidents.  Awarded the Coast Guard Commendation Medal for Meritorious Achievement.


American Waterways Operators
Washington, D.C.


l974          As a Lieutenant Commander was assigned to the American Waterways Operators, a
towing industry association, for industry training.  Training included executive level
management of marine department operations, maintenance and repair, and marine
personnel.  Served aboard numerous towing vessels as observer on the Ohio and
Mississippi Rivers as well as the Gulf  Intracoastal Waterway.  Participated in all vessel
operations while on assignment.  Conducted in-depth study of commercial towing vessel
operations.


Coast Guard Marine Inspection Office
New Orleans, Louisiana


l969 to l974   **Marine Inspector**.  Rank:  Lieutenant.  Resident Coast Guard inspector at various
shipyards in the New Orleans area.  Conducted inspections of new vessel construction,
damage and repair surveys of all classes of commercial vessels.  Assigned as investigator
of marine casualties, water pollution, merchant marine personnel, and marine law
enforcement cases.  Prosecuted licensed merchant marine personnel involved in
misconduct and negligence cases.  Served as license examiner of all classes of deck
officers seeking professional Coast Guard credentials.

3

Coast Guard LORAN Station
Iwo Jima, Volcano Islands

1968 to l969    **Commanding Officer**.  Rank:  Lieutenant.  Commanded isolated LORAN station critical to navigation in the Far East Pacific area.  Managed technical staff in operation of transmitting activities.  Responsible to the Area Commander located in Tokyo, Japan.

Various Ports on the East and Gulf Coast
of the U.S. and Puerto Rico

l958 to l968    Served aboard five different Coast Guard ships in various positions from seaman to Executive Officer and temporary Commanding Officer.  Extensive management and supervisory experience in all shipboard departments.  Received Coast Guard Unit Commendation for Cuban Refugee Rescue Operation during l966.  Served six months as Assistant Rescue Coordinator, San Juan, Puerto Rico in l964.

**Education:**    M.A. Human Resource Management, Pepperdine University,   Los Angeles, California, April l981.

B.S. Business Administration, s*umma cum laude,* Urbana University, Urbana, Ohio l978.

**Professional
Schools:**    Coast Guard Officer Candidate School l965
Merchant Marine Safety School l969
Marine Environmental Protection School l975
Marine Investigation School l973
American Waterways Operators Industry Training Program
Crane Safety and Inspection School 1977
Offshore Marine Inspectors School 1978

**Licenses:**    Coast Guard license as Master Oceans 1600 Tons, Second Mate Oceans, Unlimited, and Master of Towing Vessels Oceans and Western Rivers.

**Donald J. Green**
Trial and Deposition Testimony
Since 2003

| Date/# | Case Name | Court | Remarks/Attorney |
|---|---|---|---|
| 02/06/2003 03289 | Stephen Counts vs. Kirby Marine Corporation | USDC Southern District Houston, Texas | Settled/report/depo/* Reich Chandler |
| 04/07/2003 03301 | Whittaker, et al v. Strunz, et al | Superior Court County of Orange, California | Settled/depo/* George T. Kelly |
| 05/15/2003 03303 | Andrew Chisholm vs. Hvide Marine, Inc., et al | 60th District Court Jefferson County, TX | Settled/depo/* Marvin Peterson |
| 05/16/2003 03304 | Eddie Patterson vs. Allseas USA, Inc., et al | USDC Eastern District Lufkin, TX | Report/trial/* David H. Burrow |
| 07/25/2003 03317 | Michael T. Leblanc vs. Trico Marine Operators, Inc. | USDC Eastern District Houma, LA | Settled/report/depo/** Thomas G. O'Brien |
| 08/18/2003 03319 | Galena Larionov, et al vs. North and South American Shipping, et al | 40th Judicial District Court Parish of St. John The Baptist, LA | Trial/report/depo/** Derek A. Walker |
| 10/02/2003 03326 | Richard K. Foreman vs. State of Louisiana DOT | 38th Judicial District Court Cameron Parish, Louisiana | Settled/depo/* J. Rock Palermo |
| 12/01/2003 03335 | Humberto Cantu, Sr. vs. Bean Dredging Corp., et al | 92nd Judicial District Court of Hidalgo County, Texas | Settled/report/depo/* Peter K. Taaffe |
| 12/15/2003 03336 | Julio Robles vs. Weeks Marine | USDC Southern District Galveston, Texas | Trial/report/* Peter K. Taaffe |
| 12/31/2003 03341 | Jorge Torres vs. LaQuay Dredging Co. | Judicial Court of Hidalgo County, Texas | Settled/report/depo* Peter K. Taaffe |
| 01/07/2004 04344 | Floyd Mark Long vs. Y&S Marine, Inc. | USDC Eastern District New Orleans, Louisiana | Trial/report/** Frank A. Courtenay, Jr. |
| 01/07/2004 04345 | Donald Sibley, et ux vs. Rainey Moore, Jr., et al | 16th Judicial District Court Saint Martin Parish, Louisiana | Settled/depo/** Charles C. Garrison |
| 01/26/2004 04348 | Cole Franklin vs. Bechtel Corporation | USDC Southern District Houston, Texas | Settled/depo/* John A. Carwile |
| 01/26/2004 04349 | Ocia Germain Langner vs. CHS Launch Services, Inc. | 212th Judicial District Court Galveston County, Texas | Settled/report/depo/* Donald H. Kidd |
| 02/02/2004 04352 | Capt. Gerald Joseph LaChute v. M/V GEORGETE K., et al | USDC Eastern District New Orleans, Louisiana | Settled/report/depo/* Robert G. Creely |
| 02/09/2004 04355 | Linda Gaitan v. Ultra Custom Boats, Et al | Los Angles, CA | Settled/depo/* John A. Girardi |

| Date/# | Case Name | Court | Remarks/Attorney |
|--------|-----------|-------|------------------|
| 02/27/2004 04356 | Injury to Richard Clark and Joseph Lopinto, M/V NEVA BELLE | USDC Eastern District New Orleans, Louisiana | Trial/report/** Michael W. McMahon |
| 02/27/2004 04357 | William Cleek, et al vs. City of Salyersville, et al | Magoffin Circuit Court Salyersville, Kentucky | Settled/report/depo/* C. Graham Martin |
| 05/06/2004 04362 | Alfred Savoy & Francis Etienne, Limitation of Elevating Boats, LLC | USDC Eastern District New Orleans, LA | Settled/report/depo/* Robert A. Preston, Jr. |
| 06/03/2004 04368 | Elaine Busby vs. American Commercial Barge Lines, LLC | USDC Western District Monroe, Louisiana | Trial/report/depo/* Paul B. Wilkins |
| 09/24/2004 04386 | Louis Kutil, IV vs. McKinney Marine, Inc., et al | USDC Southern District Corpus Christi, Texas | Settled/report/depo/* Sheadyn R. Rogers |
| 11/01/2004 04393 | Dexter Latulas vs. Montco Offshore, Inc., et al | USDC Eastern District New Orleans, Louisiana | Trial/Report/* Christopher K. Johns |
| 11/30/2004 04401 | Clement Matt vs. Alliance Offshore, et al | District Court, Lafourche Parish, Louisiana | Settled/trial/* Raleigh Newman |
| 01/12/2005 05410 | Terry Len Hoyt, et al vs. Berry Bros. Contractors, Inc., et al | USDC Western District of Louisiana Lafayette, Louisiana | Trial/report/depo/** Robert A. Mahtook, Jr. |
| 02/21/2005 05417 | Antoine Perez vs. Dean Equipment, Inc. | USDC Eastern District of Louisiana, New Orleans, Louisiana | Settled/report/depo/* William N. Gee, III |
| 03/30/2005 05425 | Nolan Broussard, Sr. vs. Stolt Offshore, Inc. | USDC Eastern District of Louisiana New Orleans, Louisiana | Trial/report/** Charles A. Mouton |
| 04/28/2005 05428 | Jacob C. Walker vs. Granite Construction Company | USDC Northern District of Florida, Tallahassee, FL | Settled/report/depo/* Bob Broussard |
| 07/05/2005 05437 | Cleveland Collins and Ulysse Girard, Jr. vs. ChevronTexaco Corp. | 212th Judicial District Court of Galveston County, Texas | Pending/depo* Bruce A. Craig |
| 08/12/2005 05443 | Percy J. Chatagnier vs. Broussard Landing , Inc. & Broussard Brother, Inc. | USDC Western District of Louisiana Lafayette, LA | Settled/report/depo/* Erik T. Haik |
| 09/26/2005 05448 | Faye Wieda vs. Philip Reed | Circuit Court of Franklin County Missouri | Settled/depo/* Marc S. Wallis |
| 10/12/2005 05452 | Reginald Simon, et al vs. Edwin Evers, et al | 17th Judicial District Court for the Parish of Lafourche, Louisiana | Settled/report/depo/* Carl. J. Hebert |
| 10/13/2005 05456 | Lonnie Potts vs. Cameron Offshore Boats, Inc. | USDC Southern District of Texas, Galveston, Texas | Settled/report/depo/* Joseph S. Jaworski |
| 10/25/2005 05462 | Jose Rivas vs. Atlantic Soundings & Weeks Marine | 229th Judicial District Court of Starr County, Texas | Pending/report/depo/* Chad Pinkerton |

* Plaintiff   ** Defendant

| Date/# | Case Name | Court | Remarks/Attorney |
|---|---|---|---|
| 10/28/2005 05463 | Michael Snow vs. Crowley Maritime Company, et al | Superior Court of Los Angeles County, Los Angeles, California | Trial/depo/** David H. Savidge |
| 11/02/2005 05464 | Gary Leon Moore vs. Tow Boat Services, et al | USDC for the District of Hawaii, Honolulu | Settled/report/depo/* Steve Gordon |
| 12/21/2005 05473 | Kelly Billiot vs. Caillou Island Towing, et al | 32nd Judicial District Court for The Parish of Terrebonne, LA | Settled/report/depo/** Robert A. Mahtook, Jr. |
| 01/24/2006 06483 | Juan Lozano vs. Goodloe Marine, Inc. | USDC Southern District of Texas, Galveston Division | Trial/report/* Joseph Jaworski |
| 01/24/2006 06485 | Francisco Hinojosa vs. King Fisher Marine Services, Inc. | 404 Judicial District Court, Cameron County, Texas | Settled/report/depo/* Chad Pinkerton |
| 09/06/2006 06522 | El Paso Productions GOM, Inc. vs. Latham C. Smith, et al | USCG Eastern District of Louisiana, New Orleans, Louisiana | Settled/report/depo/** Philip A. Buhler |
| 11/02/2006 06528 | Omega Protein, Inc., Limitation of Liability | USDC Western District of Louisiana, Lake Charles Division | Report/trial** Karen Waters Shipman |
| 11/08/2006 06531 | Chris Fisher vs. Nabors Drilling USA, Inc. et al | USDC Southern District of Texas, Galveston Division | Settled/report/depo/* Chris Johns |
| 11/21/2006 06537 | Harold Skipper vs. Laborde Marine, LLC | USDC Southern District of Texas, Galveston Division | Settled/report/depo* Christopher K. Johns |
| 11/21/2006 06538 | Ingram Barge Company, Petitioning for Exoneration from Liability | USDC Eastern District of Louisiana, New Orleans | Pending/report/trial* Lawrence D. Wiedemann |
| 3/19/2007 07561 | Keith Seal v. Tetra Technologies, Inc. | USDC, Southern District of Texas, Galveston Division | Pending/report/depo* Kurt Arnold |
| 11/21/2006 06538 | Ingram Barge Company, Petitioning for Exoneration from Liability | USDC Eastern District of Louisiana, New Orleans | Pending/report/trial/depo Lawrence D. Wiedemann |
| 10/13/2005 05455 | Laura Gonzalez vs. Weeks Marine, Inc., et al | 229th Judicial District Court of Starr County, Texas | Pending/report/depo/ trial* Christopher K. Johns |
| 10/16/2006 06527 | Ralph G. Smith vs. Tula, Inc., et al | 107th Judicial District Court, Cameron County, Texas | Pending/report/depo* Randall P. Crane |
| 06/26/2007 07590 | Magnolia Quarterbarges v. M/V Naples Royal Princess VII | USDC, Eastern District of Louisiana | Pending/report/depo George Vourvoulias |
| 09/01/2006 06521 | James Carey vs. Hercules Ocean Corporation, et al | USDC Eastern District of Louisiana, New Orleans, Louisiana | Trial/report/depo/* Charles C. Bourque |
| 6/22/2007 07588 | Juan Garza v. Weeks Marine | 381st Judicial District Court, Starr County, Texas | Pending/report/depo/* Peter Taaffe |

* Plaintiff   ** Defendant

| Date/# | Case Name | Court | Remarks/Attorney |
|--------|-----------|-------|------------------|
| 05/08/2007 07574 | Rogelio Salinas-Campos v. Weeks Marine, Inc. | 381st Judicial District Court of Starr County, Texas | Pending/Report/Depo* Aaron Vela |
| 03/29/2006 06495 | Alfred Slaughter vs. Seariver Maritime, Inc. | 9th Judicial District Court, Parish of Rapides, Louisiana | Trial/Affidavit/* David C. Hesser |
| 06/06/2006 06506 | Gregorio Vela vs. Weeks Marine, Inc. | 229th Judicial District Court of Starr County, Texas | Pending/report/depo* Sean O'Rourke |
| 04/20/2006 06498 | Arturo De La Cruz vs. King Fisher Marine Services, Inc. | 357th Judicial District Court of Cameron County, Texas | Pending/reports/depo* Christopher K. Johns |
| 08/31/2006 06520 | Joanne Edwards, Heir to James Edwards vs. Brown & Root, Inc. et al | Nueces County District Court | Pending/report/depo* Bruce A. Craig |
| 12/5/2007 07619 | Julian Mendez v. King Fisher Marine Services, Inc. | 103rd District Court of Cameron County, Texas | Pending/Report/depo* Chris Johns |
| 11/08/2007 07616 | Chris Martin v. JB Marine Service, Inc., et al | USDC, Southern District of Illinois, St. Louis Division | Pending/report/depo/* Cory Itkin |
| 08/02/2006 06513 | Marco Guerra vs. King Fisher Marine, Inc. | 332nd Judicial District Court of Hidalgo County, Texas | Pending/report/depo/* Chad Pinkerton |
| 08/04/2005 05440 | Jose Angel Torres and Evangelina Torres, et al v. Teleflex (Canada), Ltd. et al | 389th District Court, Hidalgo County, Texas | Trial/depo/* Luis M. Cardenas |
| 05/07/2007 07575 | Gary Vincent v. Rife Industrial Marine, Inc., et al | 58th Judicial District Court of Jefferson County, Texas | Pending/report/depo/* Kurt Arnold |
| 3/13/2007 07560 | Laurie Wilson, et al v. BNSF Railway Company, et al | Probate Court, Galveston County, Texas | Settled/report/depo** Douglas Poole |
| 02/27/2008 08640 | Albert Tull v. Savannah Marine Services | In the State Court of Chatham County, Georgia | Pending/report/depo* Micajah Boatright |
| 09/19/2007 07606 | Gerardo Gonzalez v. United States of America | USDC, Southern District of Texas, Brownsville Division | Pending/report/depo* Jason Itkin |