UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO.: 05-4182<br><br>SECTION "K"(2) |
| FILED IN: 05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346, 06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289 | |
| PERTAINS TO: LEVEE | |

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SEWERAGE AND WATER BOARD OF NEW ORLEANS WITHOUT PREJUDICE

**MAY IT PLEASE THE COURT:**

Defendant Sewerage and Water Board of New Orleans ("S&WB") opposes Levee plaintiffs' Motion to Dismiss the Sewerage and Water Board Without Prejudice. [Doc. 19275]. At this late point in the litigation, it would be error to dismiss the S&WB without prejudice.

S&WB undoubtedly would suffer substantial legal prejudice if it were dismissed *without prejudice*. After almost four years of litigation, Levee plaintiffs do not seek to end the litigation against S&WB, but instead wish to pursue their claims in state court. Much work, at great expense, has been done in federal court to narrow the issues against the

1

S&WB and move the case towards resolution. On the other hand, literally nothing has been done to move the state court litigation forward and the parties would have to begin litigation anew. For the reasons discussed herein, the Court should deny Levee plaintiffs' Motion to Dismiss S&WB Without Prejudice.

## I. INTRODUCTION

On September 30, 2005, the S&WB was first named as a defendant in a class action suit filed in federal court in connection with Hurricane Katrina. *See, Maureen O'Dwyer v. United States of America*, No. 05-4181 of United States District Court for the Eastern District of Louisiana. Thereafter, one by one, class action suits were filed in federal court naming the S&WB as a defendant.[1]

On March 15, 2007, pursuant to this Court's Case Management and Scheduling Order No. 4 [Doc. 3299], the S&WB was named as a party defendant in the Levee plaintiffs' Superseding Master Consolidated Class Action Complaint [Doc. 3420]. The Levee master complaint consolidated 41 different Katrina related class actions, including 25 class action suits in which the S&WB had been named as a defendant. The master complaint asserted claims on behalf of a broad class of people and businesses generally made up of all Orleans and Jefferson Parish flood victims.

---

[1] The first filed state court class action lawsuit arising out of Hurricane Katrina is *Laurendine v. The Board of Commissioners for the Orleans Levee District, Parish of New Orleans*, No. 05-11660 of Civil District Court for the Parish of Orleans, State of Louisiana. The S&WB was added as a defendant to that suit by the Second Supplemental and Amending Petition on July 10, 2006.

2

In addition to the class action litigation, at last count, the S&WB is a named defendant in approximately 162 individual lawsuits arising out of Hurricane Katrina pending in federal court.  Exhibit No. 1.  These suits are allotted to Section "K".

For four years, the S&WB has litigated in federal court both defending the allegations against it and seeking to defeat plaintiffs' attempts to certify a class.  During that time, it has filed responsive pleadings, reviewed countless pleadings (through October 16, 2009, the docket shows the filing of 19,237 separate pleadings in the consolidated litigation), made class certification and common liability issues disclosures, issued and updated preliminary witness and exhibit lists, issued and responded to class certification written discovery, pursued and defended motions to compel discovery, attended the class certification fact depositions of proposed class representatives, defendants, and others, hired and worked with class certification experts to identify and gather information necessary to prepare expert witness reports, participated in preparation for and attended expert witness depositions, participated in preparation of the opposition to Levee plaintiffs' motion for class certification pursuant to Fed.R.Civ.P 23, prepared for and participated in *Daubert* motions regarding experts, prepared for, participated in and monitored court conferences and numerous hearings on motions, issued and responded to common liability issues written discovery, and served subpoenas on non-parties for production of documents.

The S&WB also has prepared and pursued dispositive motions.  Plaintiffs alleged a number of liability theories against the S&WB.  Originally, plaintiffs made claims against the S&WB relative to the London, Orleans and 17th Street Canals.  Through motion practice,

the S&WB successfully obtained the dismissal of claims against it relative to the Orleans and London Avenue Canals. [Doc. 14613]. Additionally, plaintiffs sought to hold the S&WB responsible for alleged negligent design, construction and maintenance of levees and floodwalls. Through its motion for summary judgment, the Court dismissed those claims finding that the S&WB is not responsible for design, construction, and maintenance of levees and floodwalls. Further, plaintiffs sought to hold the S&WB responsible for rejection of the "Barrier Plan". The S&WB successfully obtained summary judgment in its favor dismissing the claim that it negligently rejected the Barrier Plan. Similarly, the Court further narrowed the remaining claims against the S&WB by dismissing claims that it had a statutory duty to report underseepage. [Doc. 18765].

As a result of the S&WB's motion practice, what once was a broad range of claims against it relating to various alleged duties at multiple locations has been narrowed down to one sole claim, an improper dredging claim, related to one sole outfall canal, the 17th Street Canal. And the Court has found, over plaintiffs' opposition, that policymaking or discretionary acts immunity may apply to immunize the S&WB from plaintiffs' remaining claims. [Doc. 18765]. The S&WB has successfully narrowed the focus of the litigation against it over plaintiffs' opposition and to plaintiffs' prejudice.

In addition to the work the S&WB has done to narrow the focus of the federal court litigation, this Court and other parties have toiled tremendously to move the litigation to resolution. As a result of this effort, rulings have been rendered that affect not only those that were party to the motions, but affect the S&WB's position in the litigation. This Court

has found the United States of America immune and granted its motion to be dismissed from the Levee master complaint.  In doing so, this Court made plain its belief that the cause of the flooding in main measure was the fault of the United States.  [Doc. 10984].  Similarly, in recently reviewing and approving the Motion for Approval of a Proposed Class Action Settlement with the levee districts, the Court again advised, "[i]t is this Court's opinion that the agency primarily responsible for the failure of the levees affecting this class was the Corps of Engineers." [Doc. 19255].

Additionally, this Court has reviewed and ruled on a motion to certify a class in the Barge litigation.  There, for some of the very same reasons the S&WB asserts a class should not be certified in Levee, the Court denied class certification.  The Court found plaintiffs cannot satisfy the predominance or superiority requirements of Rule 23(b)(3). [Doc.18852].  In recently granting and providing reasons for approval of the limited fund class settlement with the levee districts, the Court reminded the parties of its ruling in Barge and said a decision on certification of the Levee class action raises the same issues of predominance that prevented certification previously.  [Doc. 19255].

Thus, faced with unfavorable rulings in this forum on its claims against the S&WB, suggestion by the Court that it believes the immune Corps of Engineers is the main culprit for the flooding of the putative Levee class, and a ruling by this Court denying certification of a similar class in Barge, the Levee plaintiffs seek to take their claims elsewhere.  They are not surrendering, but instead seek fairer fields where none of their claims against the S&WB have been dismissed, an unfavorable class certification ruling has not been rendered, and the

5

Court is a blank slate having no familiarity with the issues because absolutely no time has been invested in the litigation.

## II.    LAW AND ARGUMENT

The Court should not dismiss the S&WB without prejudice. Plaintiffs chose this forum and have litigated their claims here for four years. The S&WB has gone to tremendous expense opposing plaintiffs' claims and successfully has had most of the claims against it dismissed. In its ruling on the S&WB's motion for summary judgment, this Court laid a roadmap for the defense and resolution of the remaining claims against the S&WB. The S&WB is prepared to follow that roadmap to obtain final dismissal of the claims against it.[2] Further, the parties have completed all of the work necessary for submission of plaintiffs' motion for class certification. Discovery and briefing of the class certification issue is complete. The issue of class certification is submitted to the Court for decision.

This Court should not send this litigation to state court where no work has been done and the S&WB will lose the benefit of its labors to reduce and narrow plaintiffs' claims. The litigation should not be sent back to square one.

### A.    The Court Should Retain the Claims Against the S&WB

The decision of the United States Court of Appeals for the Fifth Circuit in *Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009), *cert den.*, 129 S.Ct. 2865, 174 L.Ed.2d 578 (2009), precludes dismissal without prejudice of the S&WB at

---

[2] In May, 2009, the S&WB filed a motion to continue deadlines to, among other things, obtain a new deadline to file a second motion for summary judgment on the remaining claims brought against it. The Court demurred setting new deadlines pending the outcome of the proposed limited fund class action settlement. [Doc. 18862].

this stage in the litigation. In *Brookshire*, after almost four years of litigation, plaintiffs settled claims against some defendants and moved to remand their state law claims against the remaining defendants so they could be litigated in state court. The district court granted the motion and defendants appealed. The Fifth Circuit reversed, finding the failure to exercise supplemental jurisdiction, 28 U.S.C. § 1367, and retain the remaining state law claims was an abuse of discretion.

The *Brookshire* court reviewed the course of the litigation. It found the litigation had lasted more than three years and generated more than 1,300 entries in the district court docket; forty-one dispositive motions were decided, fourteen *Daubert* motions, and seven other motions *in limine*. Trial was continued four times and was set on February 11, 2008. Discovery had closed and the parties were making final preparations for trial.

> The Court of Appeals advised:
>
>> In assessing whether a district court abused its discretion by declining supplemental jurisdiction over state law claims under 28 U.S.C. §1367, this Court is guided by the statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity. . . . Section 1367(c) authorizes a court to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which it has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Brookshire*, 554 F.3d. at 601-02.

No single factor is dispositive and the Court must review the district court's decision in light of the specific circumstances of the case at bar. *Id.; and see Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999). The Court reasoned further:

> Our case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case, the court has abused its discretion under 28 U.S.C. § 1367.

*Brookshire*, 554 F.3d at 602.

Applying the law to the facts, the Court of Appeals in *Brookshire* determined it was an abuse of discretion not to retain jurisdiction over the remaining state law claims due to the significant amount of judicial resources invested by the district court and the significant risk plaintiff would attempt to re-litigate in state court rulings the federal district court made against it causing defendant significant prejudice. *Id.*, at 603.

Here, the Court and the parties have invested significant resources in the litigation. As indicated above, the litigation has lasted more than four years. Over 19,000 entries in the docket have been made. Numerous depositions have been taken. Over a million pages of documents have been produced. Dispositive motions have been filed and granted. Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure has been briefed and submitted for decision for almost a full year. The Court is intimately familiar with the issues and, as plaintiffs themselves have admitted, the state law claims against the S&WB are hardly novel or complex. [Doc. 17506-2]. Like in *Brookshire*, it would be an abuse of discretion at this point in the litigation to decline to finish the case and

8

decide the remaining state law claims. *See also Batiste*, 179 F.3d at 217 (abuse of discretion not to retain claims where there is an absence of difficult state law issues in the remaining claims and the court is intimately familiar with the claims as a result of over three years of litigation producing more than 16 volumes of record, numerous depositions and discovery disputes, and consideration of multiple motions to dismiss or for summary judgment); *Newport Ltd. v. Sears, Roebuck and Co.,* 941 F.2d 302, 308 (5th Cir. 1991); *Mendoza v. Murphy*, 532 F.3d 342, 346-47 (5th Cir. 2008); *and Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

**B.     Dismissing the S&WB Without Prejudice Does Not End the Litigation**

The proposed dismissal of the Sewerage and Water Board of New Orleans does not serve judicial economy. It does not end litigation.

Plaintiffs seek dismissal *without prejudice* for the sole purpose of pursuing their claims against S&WB in state court. The Court should not allow this forum shopping. *See Holmgren v. Massey-Ferguson, Inc*., 516 F.2d 856, 857n.1 (8th Cir. 1875) (a party is not permitted to dismiss merely to seek a more favorable forum). In addition, over 160 other suits against the S&WB remain pending in this section of the court. If this Court grants plaintiffs' motion to dismiss without prejudice, it will still have over 160 suits against the S&WB to resolve.

Litigation will continue under the Levee master complaint with or without the S&WB. Levee plaintiffs have indicated every intention of appealing this Court's ruling dismissing the United States of America. Further, multiple appeals to the approval of the

limited fund class settlement with the levee districts have been filed.  One or more of these appeals may be granted and the Levee class action litigation will return to district court.

The motion to dismiss without prejudice should be denied.

**C.      S&WB Will Suffer Legal Prejudice If It Is Dismissed Without Prejudice**

A motion for dismissal without prejudice should be denied "if the defendant would be prejudiced seriously by a dismissal of the action."   9 C. Wright & A. Miller, Federal Practice and Procedure: Civil 3d § 2364 at 503.  Examples of legal prejudice include:  effort and expense in preparing for trial, the filing of motions for summary judgment, cases when actual legal rights are threatened, and situations when monetary or other burdens are extreme. *See* 9 C. Wright & A. Miller, supra, § 2364 at 504 n. 39.  **"**When considering a dismissal without prejudice, the court should keep in mind the interests of the defendant, for it is his position which should be protected." *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976).

"Important in assessing prejudice is the stage at which the motion to dismiss is made. Where the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal." *Hartford Accident & Indemnity Company v. Costa Lines Cargo Services, Inc, et al.*, 903 F.2d 352, 360 (5th Cir. 1990).  *See also Davis v. Huskipower Outdoor Equipment Corporation*, 936 F.2d 193, 199 (5th Cir. 1991); and *Kramer v. Butler*, 845 F.2d 1291 (5th Cir 1988).

Levee plaintiffs assert that S&WB will not suffer substantial prejudice if the claims against it are dismissed without prejudice.  Plaintiffs are wrong.

First, Levee plaintiffs should not be allowed to dismiss their claims against S&WB without prejudice prior to a potentially unfavorable ruling on class certification. S&WB conducted extensive discovery, hired experts (which constituted a major expense), and prepared complex legal memorandum in order to respond to Levee plaintiffs' motion for class certification. Plaintiffs should not be allowed to dismiss their claims against S&WB without prejudice in the face of a potentially bad ruling.

A similar issue was recently addressed by the U.S. District Court for the Eastern District of Louisiana in *Braud v. Transport Services of Illinois*, 2009 WL 413505 (E.D. La.). In *Braud*, plaintiffs' motion for class certification was set for hearing following the determination of key issues in the case. The hearing on class certification was postponed when plaintiffs moved to dismiss the class claims without prejudice. The court realized that the specter of prejudice was great for the defendants as the class certification issue was fully briefed and the parties were poised for the certification hearing. The Court denied the motion to dismiss, finding that the defendants would be prejudiced by the dismissal of the class claims at such a late stage in the proceedings. "Justice delayed is justice denied; there has already been too much delay in this case. The basis of the dismissal sought is to recommence the action in state court which promises even more delay …." *Id* at *2.

Moreover, this Court has rendered a ruling on class certification in the Barge case. [Doc. 18852]. Given the similarity of issues, that ruling serves as a roadmap for the decision on class certification in Levee. It would be an abuse of discretion to allow plaintiffs to escape a ruling in Levee on class certification by moving to dismiss their claims against

11

S&WB without prejudice. *See Williams v. Ford Motor Credit Co.*, 627 F.2d 158, 159-60 (8th Cir.1980) (district court abused discretion in granting plaintiff's motion for voluntary dismissal where action pending 18 months, extensive litigation conducted, and a verdict in favor of the plaintiff was rendered but the plaintiff apparently feared trial court would grant the defendant's motion for JNOV); *and Holmgren*, 516 F.2d at 857n.1 (a party is not permitted to dismiss merely to escape an adverse decision).

Second, S&WB will suffer legal prejudice by the loss of dispositive rulings in its favor if it is dismissed without prejudice. Generally, the effect of a dismissal without prejudice is to put a plaintiff in a legal position as if he had never brought suit. *Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment, Inc.*, 434 F.3d 320 (5th Cir. 2005); *LeCompte*, 528 F.2d at 603. Thus, a dismissal without prejudice may render null and void the S&WB's successful and expensive efforts to defeat and narrow the claims brought against it. On the other hand, if rulings in the S&WB's favor become final, they bar further action against the S&WB in state court. *See Duffy v. Si-Sifh Corp.*, 1998-1400 (La.App. 4 Cir. 1/9/99); 726 So.2d 438; *writ den*, 99-0372 (La. 4/30/99); 741 So.2d 14. (where suits arise out of the same transaction of occurrence, dismissal of one putative class action has *res judicata* effect on second putative class action brought on behalf of the same class of people even though the named class representatives are not the same). The loss of defenses, dispositive rulings in its favor, is prejudicial to the S&WB.

Finally, S&WB has invested enormous time, money, energy and intellectual capital in reaching the current stage of this litigation. It will be prejudiced by the loss of time and

money it can not be recapture or re-use in any state court litigation. Different written discovery likely will be propounded; different depositions will be taken; some depositions may be repeated. Additionally, different scheduling orders will be issued in many instances requiring different compliance and rendering prior compliance with federal orders regarding disclosures, written discovery, experts, and a host of other tasks and deadlines wasted. Although the state court class action seeks to represent the same class of people, it involves different class representatives owning different properties in different locations. To analyze any class certification motion, an analysis of each proposed class representative must be undertaken. Further, class certification in federal court and state court are based upon different rules and require analysis of different jurisprudence. While concepts may be similar, the analysis of Rule 23 and federal jurisprudence cannot be re-used.

A significant portion of the S&WB's efforts and money expended over the past four years will be wasted if it is dismissed without prejudice. Such a result clearly constitutes legal prejudice to the S&WB.[3] *See Kramer v. Butler*, 845 F.2d at 1294-95 (no abuse of

---

[3] S&WB is uninsured and is footing the cost of its defense. The customers of S&WB, the people of New Orleans, provide the source of funding for that defense. If dismissed without prejudice, S&WB will have to begin litigation anew in a state court class action that has yet to even settle on a judge. The people will incur the cost of retracing the steps of the past four years. Because of this, if this Court were to grant plaintiffs' motion to dismiss, as a condition of that dismissal, this Court should award S&WB its reasonable attorney's fees and costs spent in litigating in federal court. This Court enjoys discretion to condition plaintiffs' voluntary motion to dismiss on the payment of such attorney's fees and expenses. See, e.g., *Coliseum Square Association, Inc., et al. v. Department of Housing and Urban Development*, 2002 WL 31886808 *4 (E.D. La. 12/18/02); *Cauley v. Wilson*, 754 F.2d 769 (7th Cir. 1985); *Hifin Realty Corp. v. The Pittson Co.*, 212 F.R.D. 461 (E.D.N.Y.) (courts often grant fee awards when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2)). The S&WB strenuously opposes a dismissal without prejudice, but if dismissal is granted, it should be conditioned on making the S&WB whole for the time and effort wasted in defending a claim rendered as though it was never filed. The S&WB is prepared to offer proof of its litigation expenses should the Court decide to grant dismissal conditioned upon payment of the S&WB's attorney's fees and costs.

discretion for district court to deny plaintiff's motion for voluntary dismissal where habeas corpus petition litigated for one year and full evidentiary hearing conducted "at significant expense to the state and federal governments"), *cert. denied*, 488 U.S. 865, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988); *and Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969) (no abuse of discretion in denying plaintiff's motion to dismiss where case was pending one and one-half years prior to submission of motion, considerable discovery was undertaken, and defendant had briefed motion for summary judgment).

The motion to dismiss without prejudice should be denied.

### III. CONCLUSION

It is not in the interest of plaintiffs or their counsel to further pursue claims against the S&WB. Continued pursuit of the S&WB only hurts the very people on whose behalf the suit is filed. Because the S&WB is uninsured for the claims against it, plaintiffs, the citizens of New Orleans and the people of Jefferson served by the 17th Street Canal, stand behind the S&WB. The continued pursuit of claims against the S&WB only exhausts limited resources delaying recovery of a governmental entity devastated by Katrina and vital to the wellbeing of the community.

Rather than dismissing Levee plaintiffs' claims without prejudice and kicking the litigation up the street, the interests of the community--plaintiffs, the S&WB, and the Court--call for expeditious resolution of the litigation in this forum. Given the Constitutional ban on enforcement of judgments against the S&WB and, even if there were no such ban, the confusion that would be caused by seeking funds from plaintiffs to pay any theoretical award

in their favor, it is not beyond reason to expect that the parties, with the aid of the Court, can bring this litigation to a worthy conclusion that is in the best interests of all.

>Respectfully submitted,
>
>/s/ Charles M. Lanier, Jr.
>
>**CHARLES M. LANIER, JR. - #18299, T.A.**
>**J. WARREN GARDNER, JR. - #5928**
>**KEVIN R. TULLY - #1627**
>**CHARLOTTE JANE SAWYER - #28493**
>**CHRISTOVICH & KEARNEY, LLP**
>601 Poydras Street, Suite 2300
>New Orleans, Louisiana 70130-6078
>Telephone: (504) 561-5700
>
>**GEORGE R. SIMNO III - #12271**
>**GERARD M. VICTOR - #9815**
>625 St. Joseph Street, Room 201
>New Orleans, Louisiana 70165
>Telephone:  (504) 585-2242
>Facsimile:   (504) 585-2426
>
>ATTORNEYS FOR DEFENDANT SEWERAGE AND WATER BOARD OF NEW ORLEANS

## **CERTIFICATE**

I do hereby certify that on the 20th day of October 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.  I also certify that I have mailed the foregoing by United States Postal Services, First Class, to all non-CM/ECF participants.

>/s/Charles M. Lanier, Jr.
>
>**CHARLES M. LANIER, JR.**