```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3

 4   RE:  IN THE MATTER OF THE COMPLAINT  *   CIVIL ACTION
     OF INGRAM BARGE COMPANY, AS OWNER    *   No. 05-4419
 5   OF THE ING4727, PETITIONING FOR      *
     EXONERATION FROM OR LIMITATION OF    *   Section C(2)
 6   LIABILITY                            *
                                          *   June 5, 2007
 7   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

 8

 9                    NONJURY TRIAL BEFORE THE
                    HONORABLE HELEN G. BERRIGAN
10                  UNITED STATES DISTRICT JUDGE

11                          TESTIMONY OF

12                          ERIC THIGPEN

13
     APPEARANCES:
14

15   For Group A Claimants          Wiedemann & Wiedemann, PLC
     (Ethel Mumford, et al)         (BY:  LAWRENCE WIEDEMANN, ESQ.)
16                                  4240 Canal Street
                                    New Orleans, LA 70190-0648
17
                                    Law Office of Brian Gilbert, PLC
18                                  (BY:  BRIAN ARTHUR GILBERT, ESQ.)
                                    821 Baronne Street
19                                  New Orleans, LA 70113

20                                  PATRICK J. SANDERS, ESQ
                                    3200 Ridgelake Drive
21                                  Suite 100
                                    Metairie, LA 70002
22

23   For Ingram Barge Company       Liskow & Lewis
                                    (BY: SHERMAN GENE FENDLER, ESQ.
24                                       DON KELLER HAYCRAFT, ESQ.)
                                    701 Poydras Street
25                                  Suite 5000
                                    New Orleans, LA 70139-5099
```

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 2 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7047-1   Filed 07/13/2007   Page 2 of 18

2

```
 1  APPEARANCES CONTINUED:

 2
    For Joseph C. Domino, Inc.      Emmett, Cobb, Waits & Henning
 3      and Unique Towing, Inc.     (BY:  JOHN F. EMMETT, ESQ.)
                                    1515 Canal Street
 4                                  Suite 1950
                                    New Orleans, LA 70112
 5
                                    Abbott Simses & Kuchler
 6                                  (BY:  JILL S. WILLHOFT, ESQ.)
                                    400 Lafayette Street
 7                                  Suite 200
                                    New Orleans, LA 70130
 8
 9  OFFICIAL COURT RECORDER:        BONNIE HEBERT
                                    500 Poydras Street, B-406
10                                  New Orleans, Louisiana 70130
                                    (504) 589-7778
11
12  Proceedings recorded by electronic sound recording.
13  Transcription produced by transcription service.
14
15                             I N D E X
16                                                          Page
17
    ERIC THIGPEN
18      Direct Examination by Mr. Gilbert                     3
19      Cross-Examination by Mr. Emmett                      14
20      Redirect Examination by Mr. Gilbert                  16
21
22
23
24
25
```

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 2 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7047-1   Filed 07/13/2007   Page 2 of 18

2

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 3 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7047-12   Filed 07/13/2007   Page 3 of 18

3

```
 1                          PROCEEDINGS
 2           MR. GILBERT:  Your Honor, Group A calls Eric Thigpen.
 3           THE COURT:  All right.
 4           MR. GILBERT:  Let's see if he's here.
 5           (WHEREUPON, ERIC THIGPEN, having been duly sworn,
 6   testified as follows.)
 7                       DIRECT EXAMINATION
 8   BY MR. GILBERT:
 9   Q    Would you state your name for the record, please.
10   A    Yes.  My name is Eric Thigpen.
11   Q    And what's your address?
12   A    35 Althea Drive.
13   Q    Okay.
14   A    Carriere, Mississippi.
15   Q    Are you currently employed?
16   A    Yes, sir.
17   Q    By whom?
18   A    Associated Terminal in St. Bernard.
19   Q    At some point you were employed by Unique Towing; correct?
20   A    Yes, sir.
21   Q    And you were a member of the crew of the REGINA H; is that
22   correct?
23   A    Yes, sir.
24   Q    When were you hired on by Unique?
25   A    Before -- I don't know.
```

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 4 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7047-12   Filed 07/13/2007   Page 4 of 18

4

```
 1   Q    Roughly.  What year was it?
 2   A    2005, I guess.  The same year of the hurricane.  I was
 3   probably added on four or five months before the hurricane.
 4   Q    Did you say about four or five months before the
 5   hurricane?
 6   A    Yes, sir.
 7   Q    Can I just ask you a favor to speak into the microphone?
 8   Because it's not you; it's me.  I don't hear very well
 9   sometimes.
10        Did you receive any training when you were hired on
11   by Unique?
12   A    The first day that I was hired, I worked with a deckhand,
13   you know, learning how to tie different knots and --
14   Q    What were you hired on to do?  What was the position you
15   were hired for?
16   A    Deckhand.
17   Q    Did you know you were going to be a deckhand on the
18   REGINA H?
19   A    Yes, sir.
20   Q    Assuming you completed your training; correct?
21   A    Yes, sir.
22   Q    Who trained you?
23   A    I can't recall the guy's name.  It was a guy off a
24   tugboat, THE JET.  I worked with him a couple of days.
25        The REGINA was out of town.  Then, when the REGINA
```

1  came back, they kept a deckhand on for an extra seven days, I
2  think, and he worked beside me.  So, probably about nine or ten
3  days, I had another deckhand beside me the whole time while I
4  was learning what to do.
5  Q    Did Mr. Heck -- that was the owner of the REGINA H;
6  correct?
7  A    I believe so.
8  Q    Did Mr. Heck have anything to do with your training?
9  A    No, sir.
10 Q    Did anybody from Domino oversee your training?
11 A    No, sir.
12 Q    Training just came really hands-on.  You know, while
13 you're on the boat, you learn.  The captain is watching you.
14 And I had a deckhand beside me for maybe -- I'm not -- maybe
15 two weeks; 10, 12 days, 14.  I'm not sure.
16           Okay.  Was there any written material provided to you
17 in connection with your training?
18 A    Every -- we have a little -- I wouldn't call it a safety
19 meeting.  It's kind of like a safety meeting you have every
20 week.  And then -- they have a little book on the REGINA that
21 you read teaching you how to tie knots and, you know, just --
22 Q    Do you know what that little book -- was that the end of
23 your answer?  I don't want to -- I don't want to step on your
24 answer.
25 A    I don't know what it was called.  It was a little-bitty --

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 6 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7047-12   Filed 07/13/2007   Page 6 of 18

6

```
 1  it's called a deckhand manual or something.  I'm not sure.
 2  Q    Do you recognize what I'm holding?
 3  A    I don't think that's it.
 4  Q    Have you ever seen this before?
 5            MR. GILBERT:  And for the record, I'm holding up a
 6  copy of the Joseph C. Domino policies and procedures manual.
 7  BY MR. GILBERT:
 8  Q    Have you seen this before?
 9            MR. EMMETT:  Your Honor, if I may, could he at least
10  get it close to the witness so the witness can tell what it is?
11            THE COURT:  Yeah.  Take a look at the three-ring
12  binder there that has "Volume II" written on it.  Yeah, look at
13  Exhibit 4.
14  BY MR. GILBERT:
15  Q    Please just take a look through there to assure yourself
16  that you know what you're looking at.
17  A    I don't -- I don't think I had ever seen this, you know,
18  on the boat.  I've seen it since, but I don't think I had ever
19  read this when I sitting on the boat.  This ain't the book I
20  looked at.
21  Q    Had you seen it before you took your position on the
22  REGINA H?
23  A    No, sir.
24  Q    Let's talk about August 27, 2005.  Do you remember doing a
25  job that day at the Lafarge terminal?
```

1  A    Yes, sir.
2  Q    Okay. Tell me just in your own words and narrative
3  description what took place.
4           THE COURT: Very quickly.
5  BY MR. GILBERT:
6  Q    Yeah. It doesn't have to be extremely detailed.
7  A    We got called in to the Industrial Canal to flip a barge
8  around. A load was on the outside; the empty on the inside.
9           MR. FENDLER: Your Honor, I apologize for
10 interrupting. I object that this doesn't go to privity or
11 knowledge of the facts.
12          THE COURT: Well, it does if the captain is
13 considered to be comparable to the owner. So let's go quickly
14 through it.
15 A    They just had a load and a empty. We got called in to
16 flip the load around, put it against the dock. That's what we
17 did and we left.
18          THE COURT: Thank you. That was perfect.
19          MR. FENDLER: I withdraw the objection.
20 BY MR. GILBERT:
21 Q    Did you know at the time that there was a storm coming?
22 A    Yes, sir.
23 Q    How did you find out about the storm coming?
24 A    How would you not know? I don't know. Everybody knew.
25 Q    Did you know it was a hurricane?

1   A    Yes, sir.
2   Q    Okay.
3   A    They went like, "one," "two," "three," "four," "five," and
4   everybody left.
5   Q    Is it true that, when you arrived at the Lafarge facility,
6   there was nobody there?
7   A    Nobody.
8   Q    So there was nobody to talk to about the job?
9   A    Nobody.
10   Q    And when you arrived there, what was the configuration of
11   the barges? What did you see?
12   A    What do you mean? Like the empty was up against the --
13   Q    Yeah.
14   A    -- the empty up against the dock; load was on the outside.
15   Q    Okay. And y'all flipped that; right?
16   A    Yeah. I just flipped it around.
17   Q    Okay. And I understand that you -- is it correct that you
18   were the one that actually laid hands on the barge to do the
19   operation, untie the lines, and --
20   A    Yes, sir.
21   Q    -- and that sort of thing?
22   A    Yes, sir.
23   Q    Is that correct?
24   A    Yes, sir.
25   Q    What lines did you untie?

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 9 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7047-12   Filed 07/13/2007   Page 9 of 18

9

```
 1   A      I untied the lines that was between the empty and the
 2   dock.  I put the lines onto the dock.  We pulled the barge out,
 3   flipped it around.  I retied the lines from the load to the
 4   dock.
 5   Q      Did you observe any line between the two barges?
 6   A      No, sir.  It was three one-part blue lines.
 7   Q      And what does "one-part" mean?
 8   A      The rope goes from one barge to another.  Two-part would
 9   mean that it came back.
10   Q      So a single-part line means that it's just one -- one
11   line?
12   A      Yes, sir.
13   Q      Not doubled up.
14   A      Not doubled.
15   Q      Okay.  What was your impression when you saw that?
16              MR. EMMETT:  Objection, Your Honor.  Relevance.
17              MR. FENDLER:  Objection.
18              THE COURT:  Overruled.
19              MR. FENDLER:  Doesn't go to --
20              THE COURT:  Overruled.
21              MR. EMMETT:  State of --
22              THE COURT:  Overruled.  Go ahead.
23   BY MR. GILBERT:
24   Q      What was your impression when you saw that?  Did you have
25   an impression?
```

Case 2:05-cv-04182-SRD-JCW Document 19347-12 Filed 11/02/09 Page 10 of 18
Case 2:05-cv-04419-HGB-JCW Document 7017-12 Filed 07/13/2007 Page 10 of 18

10

```
 1  A     A one-part line, you see it all the time.  It's -- I don't
 2  know.
 3              THE COURT:  Ask the next question.
 4  BY MR. GILBERT:
 5  Q     Did you have any impression about the lines in connection
 6  with your knowledge of the storm?
 7              THE COURT:  Why don't you just ask if he said
 8  anything to the captain.  That's what's of interest.
 9              THE WITNESS:  Yes.  I told the captain there was
10  one-part lines.
11  BY MR. GILBERT:
12  Q     Okay.  What did the captain respond to you?
13  A     Was there enough rope to make a two-part.
14  Q     Enough rope where?
15  A     Between, you know, from where was the blue line that was
16  there already, could I -- did they have enough slack to make it
17  two-part.
18  Q     Was there enough?
19  A     No, sir.
20  Q     So what did you do?
21  A     So I told the captain.  And he asked me was there enough
22  to make a two-part line.  I told him no.  That was it.
23  Q     Didn't you actually go looking for some more line?
24  A     Yeah.  But I don't think I looked for lines for that.  I
25  looked for lines because one of the lines that was right under
```

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 11 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7017-12   Filed 07/13/2007   Page 11 of 18

11

1  where they unloaded the cement, I'm not sure if it had not
2  enough -- like, it wasn't very many parts or I think the rope
3  was already kind of frayed out.  So I looked for another line
4  to replace that one.
5  Q    Didn't you add a line -- I'm sorry.  Didn't you add a line
6  between the two barges?
7  A    Yeah.  Right there under where the cement was, I added
8  like a -- like a Mardi Gras-looking rope.  It's kind of black
9  and got different colors in it.
10 Q    Okay.  So we're clear, you added line between the barges,
11 not between the barge and the shore; is that correct?
12         MR. EMMETT:  Objection.  It misstates his testimony.
13         THE COURT:  Well, let him --
14 A    No.  I put the line from the load to the dock.
15 BY MR. GILBERT:
16 Q    Oh, you didn't add an extra line between the barges?
17 A    No.
18 Q    When you have a load and an empty next to each other, is
19 it true that it's -- that you don't put it together because
20 it's too hard to put rope parts between them?
21         MR. FENDLER:  Objection, Your Honor.  Lack of
22 foundation for this witness to give that testimony.
23         THE COURT:  Overruled.
24         THE WITNESS:  I just know, when you go in a fleet,
25 they put loads with loads and empties with empties.

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 12 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7017-12   Filed 07/13/2007   Page 12 of 18

12

1  BY MR. GILBERT:
2  Q    Do you know why?
3  A    You can -- a load and an empty is just a lot different,
4  you know.  I'm not going to say that because of the length.
5  You know, when they build tows going up the river, they have
6  loads and empties, and they build tows.
7  Q    Well, let me ask you to just direct yourself to the
8  question:  why are loads with loads and why are empties with
9  empties in a fleet?
10 A    It's easier to put them together.
11 Q    If you have a lead and an empty together, does that pose a
12 problem?
13 A    You see it all the time.  It's not something --
14 Q    My question is:  Does it pose a problem?
15 A    I guess not.  They did it.  I don't know.  I'm not the one
16 who made that decision.
17 Q    Is that a decision that you would have made?
18 A    Probably not.
19 Q    So I'm clear, because I'm a little bit confused, you found
20 a piece of Mardi Gras line and you put it where?  Between the
21 two barges, or between the barge and the dock?
22 A    Between the load and the dock.
23 Q    Okay.
24 A    Right underneath where the cement -- where they unload it
25 at.  They have a big structure on the dock, and the rope should

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 13 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7017-12   Filed 07/13/2007   Page 13 of 18

13

1  have been found right up underneath it.  The rest of the lines
2  were blue ropes.
3  Q    Was there more line needed between the empty and the load,
4  more than what you saw?
5           MR. EMMETT:  Objection, Your Honor.  It goes to the
6  issue of negligence.
7  A    That's not...
8           THE COURT:  Yes.  Let me ask the question.  When you
9  mentioned to the captain that there was one-part line, did you
10 say anything to him about whether that was a good idea, a bad
11 idea; safe, unsafe?  Or did you just say, "Captain, it's a
12 one-part line"?
13          THE WITNESS:  That's it.  I had no idea what was
14 going on, if they were coming to get the empty or if maybe they
15 were coming back to unload that one more barge of cement.  I
16 just told him what I saw.  That's...
17          THE COURT:  Okay.
18 BY MR. GILBERT:
19 Q    Mr. Thigpen --
20          MR. GILBERT:  Can I approach the witness, Your Honor?
21          THE COURT:  Yes.
22 BY MR. GILBERT:
23 Q    I want to show you your deposition.  We're on page 44,
24 line 14.  I'm just going to ask you to read the question at
25 line 14 and the answer which follows beginning on line 16.

Case 2:05-cv-04182-SRD-JCW Document 19347-12 Filed 11/02/09 Page 14 of 18
Case 2:05-cv-04419-HGB-JCW Document 7017-12 Filed 07/13/2007 Page 14 of 18

14

```
 1   A     14?
 2   Q     Yeah.  Here's the question and this is the answer.
 3   A     It says:
 4              "Q   And would you put four parts between two barges?
 5              "A   Common sense, most of the time, in all fleets
 6         anywhere, you just don't put loads and empties together.
 7         That's why, because it's too hard to put parts between
 8         them."
 9   Q     Thank you.
10              MR. GILBERT:  I'm going to tender.
11              THE COURT:  All right.  Anything from Ingram?
12              MR. FENDLER:  No, ma'am.
13              THE COURT:  Domino.
14              MR. EMMETT:  Just a couple of questions.
15                          CROSS-EXAMINATION.
16   BY MR. EMMETT:
17   Q     Do you know how to do your job --
18   A     Yes, sir.
19   Q     -- Mr. Thigpen?
20   A     Yes, sir.
21   Q     And how did you tie the loaded barge to the dock that day?
22   A     With as many parts as the rope would allow.
23   Q     Do you know whether that barge stayed there during the
24   hurricane?
25   A     From what I hear, it stayed.
```

1 Q     Let's talk about the rigging carried aboard the vessel.
2 Did the vessel have adequate rigging aboard that day for you to
3 do your job?
4 A     Yes, sir.
5 Q     And in the four or five months that you worked with the
6 company, did you ever use any of the vessels' rigging and leave
7 it aboard a barge that you were dropping at fleet or at dock?
8 A     No, sir.  Usually, when you go to a fleet, if you build a
9 tow and you leave it in their fleet, you go to the fleet boat
10 and you get your cables back, 35-, 45-foot cables, whichever.
11 Q     And in the four or five months that you worked as a
12 deckhand, who always supplied the line that was used to tie up
13 barges at a dock?
14 A     Mostly the ropes on the dock.
15 Q     The Mardi Gras line that you told us about, whose line was
16 that?
17 A     That was on the dock.
18 Q     Was this job unusual in any way?
19 A     No, sir.
20 Q     Were you capable of doing what you were assigned to do?
21 A     Yes, sir.
22 Q     And as I understand it, all you were assigned to do was to
23 loosen the empty from the dock, let the captain turn it around,
24 and then retie the load to the dock.
25 A     Yes, sir.

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 16 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7017-12   Filed 07/13/2007   Page 16 of 18

16

```
 1  Q    And did you do your job that day?
 2  A    Yes, sir.
 3            MR. EMMETT:  Thank you.  No first questions.
 4            THE COURT:  All right.  Any redirect?
 5                      REDIRECT EXAMINATION
 6  BY MR. GILBERT:
 7  Q    Mr. Thigpen, you said that there was nothing unusual about
 8  this job today, but that's not entirely true, is it?  Because
 9  there's a hurricane coming; correct?
10  A    I have been -- when Tropical Cindy came through, I was on
11  a tugboat.  I worked during tropical storms.  And I done --
12  let's say...  When you worked in the river, you have high
13  river, and there is nothing more powerful than a high river.
14  Q    Well, let's talk about the Industrial Canal, because
15  that's where this job was; correct?
16  A    Right.
17  Q    And with the storm coming, you had to tie this thing up?
18            THE COURT:  Okay.  Are you arguing with the witness?
19            MR. GILBERT:  Well, I going to have a question mark
20  at the end of the statement.
21            THE COURT:  Yeah.  I don't think -- I don't think
22  this witness -- I mean, yes, there's a storm coming and that's
23  for your argument.  I don't think -- you know, it's not an
24  appropriate recross question.
25  BY MR. GILBERT:
```

Case 2:05-cv-04182-SRD-JCW Document 19347-12 Filed 11/02/09 Page 17 of 18
Case 2:05-cv-04419-HGB-JCW Document 7017-12 Filed 07/13/2007 Page 17 of 18

17

1  Q    You tied this thing more thoroughly knowing that there was
2  a storm coming, didn't you.
3         MR. EMMETT:  Objection:  Beyond the scope of the
4  cross.
5         MR. FENDLER:  Argumentative.
6         THE COURT:  You can ask the question.
7         THE WITNESS:  I'm going to -- any time I tie a barge
8  up, and I have ropes, I'm going to put as many parts as it
9  allows me to.
10 BY MR. GILBERT:
11 Q    Okay.
12 A    I don't care -- a storm coming, not a storm coming:  The
13 more parts, the stronger.
14 Q    If you could have, would you have put more parts between
15 the two barges?
16 A    Yes, sir, I probably would have.  If there would have been
17 enough rope, I would have put more parts.
18 Q    Thank you.
19        THE COURT:  All right.  May this witness be excused?
20        MR. EMMETT:  Yes, ma'am.
21        MR. GILBERT:  Yes.
22        THE COURT:  Okay. You are finished.  Please don't
23 talk about your testimony, though, until the case is over,
24 which will be, hopefully, sometime today.  So you're free to go
25 about your business.

Case 2:05-cv-04182-SRD-JCW   Document 19347-12   Filed 11/02/09   Page 18 of 18
Case 2:05-cv-04419-HGB-JCW   Document 7017-12   Filed 07/13/2007   Page 18 of 18

18

1 * * * * *
2
3
4 <u>CERTIFICATE</u>
5
6
7     I certify that the foregoing is a correct transcript to
8 the best of my ability and understanding from the electronic
9 sound recording of the proceeding in the above-entitled and
10 numbered matter.
11
12
13
14
   /S/Johnna B. Barron                                July 13, 2007
15 JOHNNA B. BARRON                                        DATE
16
17
18
19
20
21
22
23
24
25