UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * * | SECTION "K" (2) |
| *Boutte v. Lafarge*   05-5531 | * | |
| *Mumford v. Ingram*   05-5724 | * | |
| *Lagarde v. Lafarge*   06-5342 | * | JUDGE |
| *Perry v. Ingram*   06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*   06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | MAGISTRATE |
| *Weber v. Lafarge*   08-4459 | * | JOSEPH C. WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF LAFARGE NORTH AMERICA INC.'S
MOTION TO STRIKE NEW FACT AND EXPERT WITNESS
STATEMENTS FILED IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO LNA'S MOTION FOR SUMMARY JUDGMENT**

In their opposition to Lafarge North America, Inc.'s ("LNA's") Motion for Summary Judgment ("Pl. Mem.") (Doc. 19352), plaintiffs rely on (a) the affidavits of two fact witnesses who were not included on plaintiffs' Final Witness List, even though plaintiffs had long known about them; and (b) declarations from five expert witnesses that both include new opinions that are outside the scope of their expert reports and are laden with argument rather than expert testimony.  The Court should strike those materials and not consider them when it rules on LNA's Motion for Summary Judgment.

As discussed more fully in LNA's Reply Memorandum in support of its Motion for Summary Judgment, plaintiffs' opposition brief radically changes plaintiffs' theory as to how and when the Barge ING 4727 moved from LNA's terminal on the west bank of the IHNC to the eastern side of the IHNC.  Although plaintiffs previously asserted, and their experts concluded,

LIBW/1722640.3

that the Barge broke free from its moorings on the morning of August 29, 2005, they now contend (Pl. Mem. at 10) that the Barge was "by itself in the IHNC" on the "morning" of "Sunday, August 28, 2005." Their *only* alleged support for this new theory is the affidavit testimony of two individuals, Gertrude LeBlanc and Frazier Tompkins, and interviews that Ms. LeBlanc and Mr. Tompkins gave to an investigator. See Pl. Mem. at 9-10 and Exhs. 22-25 thereto. But plaintiffs, who have known the identities of these witnesses and what they had to say since 2008, did not identify them on plaintiffs' Final Witness List, and did not include the interview notes on their Final Exhibit List, in April 2009. This Court's Case Management Order No. 7, however, bars the introduction of witness testimony or documents that were not identified on a party's Final Lists, absent a showing of "good cause" (which plaintiffs have made no attempt to show here). The Court should therefore strike that evidence from the record.

Further, presumably because plaintiffs' expert reports (served after a three-and-a-half month extension) were insufficient to overcome summary judgment, plaintiffs have now submitted declarations from their expert witnesses that both attempt to inject new expert opinions on a wide range of subjects and make a series of arguments as to why LNA has somehow misconstrued their prior expert reports and deposition testimony. See Pl. Mem. at Exhs. 41 (Spinks declaration), 43 (Marino declaration), 51 (Bartlett declaration), 59 (Green declaration), and 87 (Pazos declaration). The new expert opinions violate the expert disclosure deadlines in CMO No. 7. And the attempts to rehash the prior expert reports and dispute LNA's use of the reports and deposition testimony are not themselves admissible expert opinions. The Court should strike the expert declarations.

**BACKGROUND**

Case Management and Scheduling Order No. 7 required the parties to exchange "a Final List of Witnesses who may or will be called to testify at any trial on the merits" no later than February 16, 2009, and "a Final List of Exhibits that may or will be introduced at any merits trial" no later than April 29, 2009.  Doc. 12935 at 7-8.[1]  CMO No. 7 also stated that "[t]he Court will not permit any witness (expert or fact) to testify or any exhibits to be introduced unless they are identified on the respective Final Lists absent a showing of good cause by the party seeking to introduce the testimony or exhibit."  *Id.* at 8.  See also Fed. R. Civ. P. 16(b)(4) (scheduling orders "may be modified only for good cause and with the judge's consent").

CMO No. 7 further required plaintiffs to submit their merits expert reports by March 16, 2009, and defendants to serve theirs by April 13, 2009.  Doc. 12935 at 9.  Plaintiffs moved to extend those deadlines and to continue the trial date because one of their experts, Genarro Marino, allegedly could not complete his report by the deadline, which they contended was "good cause" justifying the amendment to the CMO.  See Doc. 18130.  The Court granted the motion and delayed both the trial date and the expert report deadline, requiring plaintiffs to serve their expert reports on July 1, 2009, and defendants to do so on August 3, 2009.  See Doc. 18467.

The parties subsequently exchanged the pre-trial materials that CMO No. 7 required them to produce.  Plaintiffs' Final Witness List included 130 witnesses or categories of witnesses, but did not identify either Gertrude LeBlanc or Frazier Tompkins.  See Doc. 18390.  Further, plaintiffs' Final Exhibit List identified 965 documents or categories of documents, but did not include the documents submitted as Exhibits 23 and 25 to plaintiffs' opposition brief, which were records of interviews by Centanni Investigative Agency ("Centanni") with Ms. LeBlanc

---

[1] The date for exchanging Final Witness Lists was extended by consent to April 1, 2009.

and Mr. Tompkins.  See Doc. 18728.  Plaintiffs also submitted various expert reports, which LNA attached as exhibits to its Motion for Summary Judgment.  See Doc. 19293-24, at Exhs. 2 (Marino), 12 (Pazos), 16 (Spinks), 29 (Green), and 37 (Bartlett).

## ARGUMENT

### I.  THE COURT SHOULD STRIKE AFFIDAVITS FROM WITNESSES NOT INCLUDED ON PLAINTIFFS' WITNESS LIST, AS WELL AS THE TRANSCRIPTS OF INTERVIEWS WITH THOSE WITNESSES.

In their opposition brief, plaintiffs claim (at 9-10) that the Barge was "by itself in the IHNC" at approximately 11:00 a.m. on "Sunday, August 28, 2005."  Their sole factual support for this new theory comes from October 21, 2009, affidavits that they obtained from Frazier Tompkins and Gertrude LeBlanc, and the transcriptions of interviews that Centanni conducted in 2005 and 2006 with Mr. Tompkins and Ms. LeBlanc, respectively.  See Pl. Opp. at Exhs. 22-25.  That evidence is not admissible, and the Court should exclude it.

The law relating to summary judgment evidence is straightforward.  "It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence."  *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991).  Courts assess summary judgment evidence "to the same rules that govern admissibility of evidence at trial."  *Turner v. Kansas City So. Ry. Co.*, 622 F. Supp. 2d 374, 384 (E.D. La. 2009) (quotation omitted).  Courts routinely strike summary judgment affidavits by witnesses that a party did not list on its final witness list.  See, *e.g.*, *Dutton v. Univ. Healthcare Sys., L.L.C.*, No. 03-2084, 2004 U.S. Dist. LEXIS 8493, at *6-7 (E.D. La. May 12, 2004); *Vesom v. Atchison Hosp. Ass'n*, No. 06-3353, 2008 U.S. App. LEXIS 10634, at *14-17 (10th Cir. May 15, 2008); *Hubbard v. Edwards*, No. 3:04-CV-118, 2006 U.S. Dist. LEXIS 62856, at *4-6 (M.D. Ga. Sept. 1, 2006).

4

Here, the LeBlanc and Tompkins affidavits and Centanni's transcriptions of its interviews with them are not admissible evidence, and the Court should strike them. CMO No. 7 is clear that the testimony of witnesses not included on the Final Witness Lists, and documents not listed on the Final Exhibit Lists, cannot be introduced "absent a showing of good cause by the party seeking to introduce the testimony or exhibit." See also Fed. R. Civ. P. 16(b)(4). Plaintiffs did not identify Mr. Tompkins or Ms. LeBlanc on their Final Witness List. See Doc. 18390 (plaintiffs' Final Witness List). Plaintiffs also did not list the transcriptions of Centanni's interviews with Mr. Tompkins and Ms. LeBlanc on their Final Exhibit List. See Doc. 18728.[2]

Nor is there "good cause" to modify the CMO and permit plaintiffs to attempt to defeat summary judgment by relying on this evidence. First, plaintiffs have not filed a motion asking the Court to find "good cause" to permit them to rely on this evidence now. Absent such a motion by plaintiffs, there is no basis for the Court to find that "good cause" exists. See, *e.g.*, *Bodin v. Butler*, No. 07-3505, 2008 U.S. Dist. LEXIS 110872, at *10 (E.D. La. Dec. 4, 2008) (documents not included on exhibit list excluded because "Plaintiffs also have not filed a motion to allow the exhibits 'for good cause'").[3]

Second, even if they had filed a motion, plaintiffs could not show that there is good cause to allow them to rely upon witnesses and documents that they did not identify on their Final

---

[2] Plaintiffs will inevitably argue that they should be permitted to use Tompkins and LeBlanc as witnesses because LNA knew about the statements they gave to Centanni. But the purpose of final witness and exhibit lists is to make a party decide which among the thousands of documents and hundreds of witnesses the party finds helpful and intends to use to prove its case, so the other side is on notice of the evidence against which it has to defend. Based on plaintiffs' preliminary and final witness lists, LNA has understood that plaintiffs chose not to rely on the accounts of Tompkins and LeBlanc, which are inconsistent with their oft-repeated allegation that the Barge broke free due to Katrina's high winds, with their experts' conclusions adopting that allegation, and with the testimony of lay witnesses included on their witness list who said the Barge was *not* present in the canal on Sunday, August 28. LNA therefore did not depose Tompkins and LeBlanc, did not factor their statements into its expert reports, did not depose plaintiffs' experts on their statements, and prepared its summary judgment motion based on the factual record from discovery, which is exactly what it was supposed to do.

[3] This is in contrast to the proceedings from earlier this year, when plaintiffs sought to delay the trial by three months in order to permit Dr. Marino to finish his expert report. At that time, plaintiffs filed a motion to modify the CMO and a lengthy brief explaining why there was "good cause" for that amendment. Doc. 18130.

5

Lists.  In assessing whether there is good cause to modify a CMO, the Court considers:  "(1) the explanation for the failure to [comply with the CMO]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997).  See also Doc. 18671 (recognizing this standard).  Here, plaintiffs have provided no explanation for their failure to identify these witnesses on their Final Witness List or to identify the interview transcriptions on their Final Exhibit List.  Nor is there any possible reasonable explanation, because plaintiffs have had the documents that provided these witnesses' accounts since mid-2008, when LNA produced them following the Court's April 21, 2008, Order requiring LNA to produce the Centanni witness interviews.  See Doc. 12605.  In short, plaintiffs knew who these witnesses were and what they had to say many months before the deadline to submit Final Witness Lists and Final Exhibit Lists.

Further, LNA would be prejudiced if the Court permitted plaintiffs to rely on these witnesses and documents now.  Throughout the discovery period in this case, plaintiffs and their experts consistently espoused the position that the barge broke free from its moorings under the influence of high winds during Hurricane Katrina or just before Hurricane Katrina made landfall on August 29, 2005.[4]  Plaintiffs' Final Lists identified no witness or document that would say otherwise.  Now that fact discovery has closed, it is too late for LNA to take the depositions of

---

[4] See Hector Pazos Report at 8 ("In the early hours on August 29,2005, barge ING 4727 broke loose from its moorings.") (Exh. 12 to LNA's Motion for Summary Judgment); Donald Green Report at 3, 7 ("During the early morning hours of August 29, 2005, the ING 4727 broke free of its moorings during Hurricane Katrina and drifted south in the IHNC." … cause of breakaway "was most likely the combination of hurricane force winds and rising water levels in advance of Hurricane Katrina);") (Exh. 29 to LNA's Motion for Summary Judgment); Robert Bartlett Report at 4 ("The hopper barge, ING4727 … was docked at the LaFarge [sic] North America Terminal prior to and at the time that Hurricane Katrina made landfall on August 29, 2005.") (Exh. 37 to LNA's Motion for Summary Judgment); see also www.bargecase.com (visited Nov. 4, 2009) ("As anticipated, the barge was unable to sustain the storm that hit the coast of Louisiana with winds upwards of 100 miles per hour and eventually broke away from its moorings.").

6

plaintiffs' two new witnesses, to depose any of plaintiffs' expert witnesses on the question of why their reports disagree with the statements of Mr. Tompkins or Ms. LeBlanc on this fundamental issue, or to depose other fact witnesses whose testimony would be relevant to the question of where the barge was located on Sunday, August 28. Moreover, LNA filed extensive summary judgment briefing based on the factual and expert record developed during the discovery period in this case, and would be prejudiced if plaintiffs were permitted to inject new witnesses and evidence not included on their Final Lists in opposing LNA's motion.[5]

Nor is a continuance feasible at this point. The Court has made clear that the trial date is firm. When the Court set the current trial date – which it did only because one of plaintiffs' experts could not complete his report in time – plaintiffs were in possession of the accounts of these two witnesses, but plaintiffs never hinted at that time or thereafter that they were going to change their entire theory as to when the Barge broke loose based on their accounts. If the Court were to permit plaintiffs to rely on that evidence now as a basis to defeat summary judgment, besides making a mockery of the rules of evidence and procedure, it would require the reopening of fact and expert discovery and a new round of summary judgment briefing based on the newly-developed record. That is not only not feasible, but it is not a burden that LNA should have to bear given that this situation was created only because plaintiffs failed to abide by the Court's Case Management Order.

Finally, the Court should look askance at the type of gamesmanship that plaintiffs are attempting here. Fully aware of the accounts of Ms. LeBlanc and Mr. Tompkins as of mid-2008, plaintiffs chose not to rely on those accounts or to inform their experts about them. Instead, plaintiffs' witness list included only witnesses who testified that they had viewed the IHNC on

---

[5] LNA's reply memorandum in support of its summary judgment motion shows that plaintiffs' new lay and expert evidence does not suffice to prevent summary judgment. Obviously, if the Court considers the evidence and nevertheless grants LNA's motion, then any prejudice would be alleviated.

7

Saturday August 28 and that the barge was *not present in the canal* at that time, and they only provided their experts with those accounts.[6]  This decision can only have been strategic, given the heavy focus placed by plaintiffs' experts on criticizing LNA's hurricane preparations, based on their conclusion that the barge broke free during "the hurricane winds and predicted storm surge expected upon the approach of Hurricane Katrina."[7]  Plaintiffs only chose to inject the accounts of these two witnesses when it became clear that they could not defeat summary judgment based on the record developed during discovery, and that they would have to scrap their previous approach and adopt a new theory in order to have any hope of defeating LNA's motion.

## II.   THE COURT SHOULD STRIKE PLAINTIFFS' EXPERT DECLARATIONS.

As noted above, after plaintiffs claimed that there was "good cause" to move the trial date and extend the expert disclosure deadline in the CMO because Dr. Marino could not complete his report on time, the Court modified the schedule and gave plaintiffs three extra months to produce their expert reports.  See Doc. 18467.  Plaintiffs' opposition brief, however, places virtually no reliance on those reports.  Instead, they now rely upon new reports, in the form of "declarations," that they attached to their opposition to LNA's Motion for Summary Judgment.

These declarations essentially serve two purposes for plaintiffs:  (a) they provide new opinions on subjects that the experts did not cover in their initial reports, in a disingenuous attempt to create a factual dispute where none exists, and (b) they make arguments challenging LNA's summary judgment brief on grounds that LNA has somehow misconstrued the experts'

---

[6] See LNA Reply Memorandum in Support of Motion for Summary Judgment at 8-9 (citing testimony of Arthur Murph, Andrew Sartin, and Michael Bickham); Doc. 18390 (plaintiffs' Final Witness List) items 46, 62, 119; Hector Pazos Report at 3-7 (Exhibit 12 to LNA's Motion for Summary Judgment) (listing depositions reviewed, including Sartin and Murph).

[7] Don Green Report at 7 (Exhibit 29 to LNA's Motion for Summary Judgment).

8

reports and deposition testimony. The new declarations both improperly attempt to introduce new expert opinions after the expert report deadline, and improperly attempt to rehash and restate the experts' opinions set forth in their reports. The Court should strike the declarations.

### A.     The Rules Regarding Expert Disclosures

Under Fed. R. Civ. P. 26(a)(2)(B)(i), an expert disclosure must include "a complete statement of all opinions the witness will express and the basis and reasons for them." Under the CMO, plaintiffs were required to make their expert disclosures by July 1, 2009. See Doc. 18467. If plaintiffs wanted to extend that deadline (which had already been extended at their request), they were required to provide "good cause" for the schedule modification (see CMO No. 7, Doc. 12935), which they never did. The CMO did not authorize plaintiffs to file rebuttal expert reports, and plaintiffs did not seek leave to file rebuttal reports.

Once a party makes its expert disclosures, the experts may not provide "supplemental" reports or statements that expand upon the subjects covered by the expert reports. For example, in *Cleave v. Renal Care Group, Inc.*, No. 2:04CV161, 2005 WL 1629750 (N.D. Miss. July 11, 2005), a party filed a "supplemental" expert report "in the form of an affidavit" that was "submitted as an exhibit to plaintiff's response to the defendant's Motion for Summary Judgment." *Id.* at *1. The court struck the report and held that "[a] new expert affidavit which is submitted to rebut a summary judgment motion should be stricken if the new opinions differ from the earlier Rule 26 report," even where the affidavit is called "a 'clarification' of her previously disclosed opinions."[8] That a party may have wanted to include additional subjects in its expert reports, but failed to do so, is no reason to permit the party to file supplemental reports.

---

[8] See also *Culbertson v. Shelter Mut. Ins. Co.*, No. 97-1609, 1999 WL 135297, at *4 (E.D. La. Mar. 2, 1999) (expert report discussing issues not included in initial report is not "supplementary"); *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1247, 1252 (11th Cir. 2007) (party had timely filed expert reports, but in response to a motion for summary judgment filed "new affidavits from his four experts"; court found that the affidavits were properly excluded for failure to comply with the expert disclosure deadline).

9

*Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (affirming district court refusal to allow late supplemental expert reports, because "District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case."); *Simmons v. Johnson*, No. 06-325, 2008 U.S. Dist. LEXIS 11074, at *11 (M.D. La. Feb. 14, 2008) (new expert reports may not be used to "fix" earlier reports).

> **B.   Plaintiffs' Expert Declarations Improperly Seek to Give Opinions Other Than Those Contained in the Experts' Reports.**

As noted above, experts are limited to giving opinions on the subjects properly disclosed in their expert reports. Here, however, they still seek to add major new opinions in their summary judgment declarations that were not included in the expert reports. Plaintiffs' expert declarations seek to introduce the following new opinions:

| <u>Expert</u> | <u>New Subjects</u> |
|---|---|
| Green | ● The declaration concerns the movement of the Barge ING 4727 across the IHNC, allegedly due to tidal flow. Plaintiffs' expert witness disclosure does not identify tides or Barge movement as subjects of Green's expert testimony. See Doc. 18390, at 19. Green's expert report makes no mention of any study of tides or tide records. See Exh. 29 to LNA's Motion for Summary Judgment. And his new reliance on Tompkins/LeBlanc testimony to find that the Barge was in the IHNC "for at least 18 hours … before Hurricane Katrina made landfall" contradicts his expert report (at 3) that the Barge broke free "[d]uring the early morning hours of August 29, 2005." |
| Pazos | ● Challenge to Cushing's conclusions that a barge impact would result in only localized concrete cap damage, relying on new affidavits of LeBlanc and Tompkins. Decl. at ¶¶ 12-16. These are new opinions not covered by his expert report. |

10

|  | ● Opinion as to wind direction and its contribution to the movement of Barge, based on Villavasso testimony.  Decl. at ¶¶ 20-28.  His expert report contains no such discussion, even though it relies heavily on Villavasso's testimony on other topics.<br>● Opinion as to the contribution of a "water surge" or "Meteotsunami" on the movement of the Barge.  Decl. at ¶¶ 29-30.  No discussion of this in his expert report.  Again, sole support is the testimony of Villavasso. |
|---|---|
| Marino | ● Challenge to Dr. Cushing's Barge impact calculations.  Decl. at 10-17.  At his 2008 deposition, Marino testified that he "plan[ned] to" undertake impact calculations (LNA Summary Judgment Exh. 9 at 100-01) but his 2009 merits expert report did not contain any such calculations because, he testified, "[t]hat analysis never got finished" despite his having been given three extra months to complete it.  LNA Summary Judgment Exh. 8 at 31-32; see also *id.* at 35-36, 127.<br>● Challenge to LNA's identification of other floodwalls that did not fail when impacted by barges.  Decl. at 17-18.  Marino's report does not address this subject, and the declaration relies only on new analysis and opinion.<br>● New calculations concerning enlargement of gap between sheetpile and soil due to Barge impact.  Decl. at 18.  These are new calculations, not part of his expert report. |

Because the experts did not give these opinions prior to the expert disclosure deadline, the Court should strike them now.

**C. Plaintiffs' Expert Declarations Improperly Seek to Rehash the Expert Reports and Make Arguments Against LNA's Summary Judgment Brief.**

In addition to the new areas of expert testimony that plaintiffs seek to introduce with their expert declarations, the declarations include, in whole or in part, myriad arguments attempting to

11

LIBW/1722640.3

rehabilitate the experts' earlier reports by claiming that LNA has misconstrued the reports or the experts' depositions. The portions of the declarations that include this defect are as follows:

| Expert | Argumentative Sections |
|---|---|
| Pazos | ● Argument that ING 4727 "caused the initial failures that eventually resulted in" the North and South Breaches, rehashing conclusions in his expert report. Decl. at ¶¶ 7-8.<br>● Argument that contact by ING 4727 with the floodwall in the area of the North Breach "initiated the rupture of a defective weld." Decl. at ¶ 9. This assertion actually *contradicts* his deposition testimony. See Pazos Dep. at 83-85, 155. Regardless, it is argumentation, not expert evidence.<br>● Argument that the North and South IHNC breaches were not the result of soil failures, and that the floodwalls would not have failed without the impact of a barge. This is either rehash of the conclusions of his expert report (with no citation to the report) or simply unsupported argument against LNA's motion. Decl. at ¶¶ 10-11.<br>● Argument that LNA misrepresented his opinions and that his opinions are consistent with those of Dr. Marino. Decl. at ¶¶ 17-19. This merely rehashes his report and argues against LNA's motion, a task properly left to plaintiffs' brief. |
| Marino | ● Argument rehashing the work that he did in order to prepare his expert report and the conclusions that he reached. Decl. at 2-4.<br>● Argument that LNA misrepresented his deposition testimony and his expert report. Decl. at 5-8.<br>● Argument contesting various statements in LNA's brief about topics such as breach timing, evidence concerning wind direction, results of independent studies, effects of a barge impact on embedded sheetpile, barge impact at south end of the South Breach, |

|  |  |
|---|---|
|  | and "boom" sounds.  Decl. at 8-10, 18-20.  This is rehash of the opinions from his expert report, and is pure argumentation.. |
| Bartlett | ● The entire declaration consists of his review of LNA's summary judgment brief and his attempt to argue against it.  See Decl. at ¶ 5 (he read LNA's brief and "found several statements which the available information was not utilized so that the conclusion presented was not correct").  This is not expert opinion. |
| Spinks | ● The entire declaration either repeats or provides commentary on his expert report, and is merely another brief masquerading as expert opinion.  See Decl. at ¶ 6 (he read LNA's brief and "found numerous erroneous statements therein, including mischaracterizations of my deposition testimony and professional opinions and conclusions, as detailed herein").  This too is not expert opinion, but just argument that is properly left to plaintiffs' brief, not a new expert declaration. |

The Court should strike these portions of the expert declarations, which are improper for various reasons.  To the extent that the declarations merely rehash the experts' reports and deposition testimony, the Court should strike them as redundant and unnecessary.  On the flip side, any opinion in the declarations that is not included in the expert reports is new opinion that the Court should strike as violative of the CMO, Rule Fed. R. Civ. P. 16(b)(4), and the caselaw (cited above) holding that parties may not offer new expert opinion after the deadline for submitting expert disclosures.

Moreover, the Court should strike as beyond the scope of proper expert testimony the portions of the expert declarations that merely challenge LNA's use of the expert reports and depositions in its summary judgment papers.  If plaintiffs dispute the way that LNA has

13

discussed the evidence, they should so argue in their brief. But that is no basis for permitting experts to lob in additional reports claiming that LNA has it wrong.

Under Fed. R. Evid. 702, expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." But "it is well grounded in the law that testimony may not be conclusory or argumentative in nature." *Eve v. Sandoz Pharm. Corp.*, No. IP 98-1429-C-Y/S, 2001 U.S. Dist. LEXIS 4531, at *50 (S.D. Ind. Mar. 7, 2001). See also *Washington v. Am. Overseas Marine Corp.*, NO. 04-2882, 2006 U.S. Dist. LEXIS 35323, at *3 (E.D. La. June 1, 2006) (striking expert report in whole because a portion was improper expert opinion, and "[m]uch of the remainder of the report and opinions is argumentative"). Likewise, courts do "not consider any argumentative statements [in expert affidavits] in ruling on a summary judgment motion; such statements should be stricken." *Eve*, 2001 U.S. Dist. LEXIS 4531, at *50. And "when an expert's affidavit 'essentially rebuts points made in [opposing party's] motion for summary judgment' that affidavit 'is really an argumentative brief in response to [the opposing party's] motion for summary judgment,' thereby the affidavit does not comply with Rule 56 and should be stricken." *Id.* (citation omitted).

This is exactly what plaintiffs are trying to do with their expert declarations. The experts are merely arguing against LNA's Motion for Summary Judgment by rehashing the conclusions from their expert reports. If plaintiffs believe that LNA has misconstrued or misapplied their expert reports or deposition testimony, plaintiffs may so argue in their brief. But they may not submit expert declarations in order to attempt to bolster their defense of their experts.[9]

> **D.     There is No "Good Cause" to Allow Plaintiffs to Oppose Summary Judgment by Relying on the Expert Declarations.**

---

[9] The only portions of the expert declarations that are not either new opinions or arguments are the sections that provide the experts' qualifications. But those largely rehash the qualifications sections in the expert reports. The Court should strike those sections as redundant. And new qualifications should be stricken as having been disclosed after the expert disclosure deadline.

14

Finally, the Court should not amend the CMO in order to permit plaintiffs to submit new expert reports in the form of expert "declarations." As noted above, when considering whether "good cause" exists to permit a party to rely on evidence produced after the deadlines in a CMO, the Court is to consider why the party did not comply with the CMO, the importance of the testimony, prejudice if the court allows the testimony, and whether a continuance is available. See *Reliance Ins. Co.*, 110 F.3d at 257.

Once again, plaintiffs have not asked the Court to find "good cause" for their failure to timely produce the expert declarations. Nor have they explained why they made these new disclosures after the expert deadline. If the expert testimony was important to plaintiffs, they should have timely requested leave to amend the CMO to permit them to file additional expert reports covering new areas of study. They never did so. Further, permitting the new declarations now would prejudice LNA, which prepared its summary judgment briefing based on the opinions and expert testimony adduced during the period provided by the Court's Case Management Order. Finally, a continuance is not possible, nor should LNA be required to engage in further expert discovery and then refile its summary judgment motion simply because plaintiffs failed to timely make all of their expert disclosures.

## CONCLUSION

The Court should strike (a) the LeBlanc and Tompkins affidavits and the Centanni interview transcriptions for LeBlanc and Tompkins (Exhibits 22-25 to plaintiffs' Opposition to LNA's Motion for Summary Judgment), and (b) plaintiffs' summary judgment declarations of Dr. Marino and Messrs. Spinks, Pazos, Green, and Bartlett (Exhibits 41, 43, 51, 59, and 87 to plaintiffs' Opposition to LNA's Motion for Summary Judgment).

Dated: November 9, 2009                    Respectfully submitted,

                                                        Robert B. Fisher, Jr., T.A. (#5587)
                                                        Derek A. Walker (#13175)
                                                        **CHAFFE MCCALL, L.L.P.**
                                                        2300 Energy Centre
                                                        1100 Poydras Street
                                                        New Orleans, LA  70163-2300
                                                        Telephone:  (504) 585-7000
                                                        Facsimile:  (504) 585-7075
                                                        Fisher@chaffe.com
                                                        Walker@chaffe.com

                                                      /s/ John D. Aldock
                                                        John D. Aldock
                                                        Richard M. Wyner
                                                        Mark S. Raffman
                                                        **GOODWIN PROCTER LLP**
                                                        901 New York Avenue, N.W.
                                                        Washington, DC  20001
                                                        Telephone:  (202) 346-4240
                                                        jaldock@goodwinprocter.com
                                                        rwyner@goodwinprocter.com
                                                        mraffman@goodwinprocter.com

                                                        Daniel A. Webb (#13294)
                                                        **SUTTERFIELD & WEBB, LLC**
                                                        Poydras Center
                                                        650 Poydras Street, Suite 2715
                                                        New Orleans, LA  70130
                                                        Telephone:  (504) 598-2715

                                                        ***Attorneys for Lafarge North America Inc.***