UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO: BARGE | and consolidated cases |
| *Boutte v. Lafarge*           05-5531 | SECTION "K" (2) |
| *Mumford v. Ingram*      05-5724 | |
| *Lagarde v. Lafarge*      06-5342 | JUDGE |
| *Perry v. Ingram*            06-6299 | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*          06-7516 | |
| *Parfait Family v. USA*   07-3500 | MAGISTRATE |
| *Lafarge v. USA*              07-5178 | JOSEPH C. WILKINSON, JR. |
| *Weber v. Lafarge*         08-4459 | |

## REPLY MEMORANDUM IN SUPPORT OF ZITO FLEETING, L.L.C. AND ZITO FLEETING, INC.'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Zito Fleeting, L.L.C. and Zito Fleeting, Inc. ("Zito") respectfully submit this reply memorandum in response to the opposition memorandum presented by plaintiffs in opposition to Zito's motion for summary judgment.

## OVERVIEW

Plaintiffs' sole response to Zito's arguments is found in the opening paragraph of plaintiffs' memorandum:

"There exists a material issue as to whether Lafarge Asst. Terminal Manager

1

Edward Busch notified Zito of the release of ING 4727, and/or requested its removal."

What follows over the remaining 12 pages of the rather perfunctory and hollow opposition is the total absence - a deafening and complete void - of any explanation of: 1) why this is a material fact; and/or 2) even if the fact is resolved in favor of plaintiffs, how or why this can possibly be grounds for holding Zito responsible for the catastrophic flooding of New Orleans following the most devastating storm to strike the American continent.

Even more telling is the fact that plaintiffs' opposition does not address the legal or factual arguments presented by Zito. Plaintiffs do not address the collateral estoppel issue: the findings of Judge Berrigan that neither the delivery of the barge to Lafarge nor the lack of retrieval of the barge prior to the storm were a "proximate cause" of the plaintiffs' damages.

A review of the 13 page opposition memorandum reveals that it is long on historical data (9 pages of generalized facts leading up to the breaches of the Industrial Canal floodwalls) but totally lacking on material facts relevant to this motion. The opposition is long on generic summary judgment rules (3 pages) but totally lacking on persuasive legal argument germane to the pending motion. In sum, there is a complete void of any compelling legal principles or purported material facts that could even remotely justify the assessment of any legal responsibility against Zito for the catastrophic flooding of the City of New Orleans in the wake of Katrina.

Plaintiffs have provided no basis for denying Zito's motion. The claims against Zito

are ripe for dismissal. Zito's motion should be granted and the claims against Zito should be dismissed.

## BACKGROUND

Zito's sole involvement in this matter is the fact that Zito delivered the loaded Barge ING 4727 to Lafarge on the morning of August 26, 2005. Zito had no further involvement with the barge after that. Plaintiffs admit that it was Lafarge - not Zito - that moored the barge to the dock with mooring lines that belonged to Lafarge.[1] Moreover, plaintiffs admit that Zito had no knowledge of any of the decisions that were subsequently made with respect to the positioning and securing of the barge at Lafarge's terminal for the approaching storm.[2]

The only reason that Zito is even a party in this litigation is because of a statement that Lafarge's terminal manager, Edward Busch, made during his November 14, 2006 deposition.[3] Notwithstanding the fact that Mr. Busch has suggested that he attempted to leave a telephone message with Zito on the morning of August 27, 2005 concerning the barge's status, **Mr. Busch went on to testify in no uncertain terms that he did not expect Zito to remove the barge from Lafarge's terminal prior to the storm.**[4]

---

[1] See plaintiffs' Response No. 10 to Zito's Statement of Uncontested Facts, Doc. 19347-2.

[2] See plaintiffs' Response No. 17, Doc. 19347-2.

[3] Zito was not a party at that time and no one was present at the deposition to protect Zito's interests.

[4] See pages 38-39 of Mr. Busch's deposition, attached as Exhibit "D" to Zito's memorandum in support and Exhibit "5" to plaintiffs' opposition memorandum (Q. Did you expect them to pick it up before the storm arrived? A. **No**; Q. ...What did you expect to happen? A. I expected to release the barge, and **I didn't expect anyone to pick it up.**)

3

## PLAINTIFFS CANNOT ESTABLISH A QUESTION OF *MATERIAL* FACT

Zito has presented this Honorable Court with a motion for summary judgment that does not require the Court to even consider Mr. Busch's alleged call to Zito. Any questions concerning the call are not material to the foreseeability, proximate cause and collateral estoppel arguments that are the primary grounds for granting Zito's motion Nevertheless, the plaintiffs' opposition focuses on the alleged call and attempts to maintain some significance to an issue that is not only not material, but that is no longer a true or genuine issue. The plaintiffs' silence on the foreseeability, proximate cause and collateral estoppel arguments is deafening and should be interpreted as an acknowledgment that these arguments are correct.

The alleged call is the sole basis that plaintiffs would have this Honorable Court rely upon to deny Zito's motion. For the reasons set forth in this reply memorandum, together with the reasons previously set forth in the original memorandum submitted in support of this motion, Zito respectfully submits that the alleged call is not a material fact for purposes of Zito's motion and the motion should be granted. Nevertheless, and out of an abundance of caution, Zito submits that the Court has the full factual scenario surrounding the alleged call and that the only reasonable conclusion is that there was no call to Zito.

## ZITO'S ACTIONS WERE NOT A PROXIMATE CAUSE

Plaintiffs have asserted two theories of alleged negligence against Zito - 1) Zito should not have delivered the barge to Lafarge on the morning of August 26, 2005[5] and

---

[5] As discussed in the original memorandum in support of this motion, Zito submits that plaintiffs have withdrawn and/or abandoned this claim.

4

2) Zito should have removed the barge from Lafarge's terminal prior to the storm. Zito's motion for summary judgment provides the legal and factual basis for the Court to find, as a matter of law, that Zito's actions (delivering the barge and not removing the barge prior to the storm) were not proximate causes of the flooding in New Orleans. The fact that the plaintiffs' opposition does not address this should be interpreted as a tacit acknowledgment by the plaintiffs that Zito's actions were not proximate causes of the flooding. Moreover, plaintiffs do not dispute that there is no evidence to support the negligent delivery claim or that the plaintiffs have effectively abandoned that claim against Zito. In fact, plaintiffs' opposition actually provides further support as to why it was reasonable to deliver the barge on the morning of August 26, 2005. [6]

For the reasons set forth, Zito respectfully submits that Zito's actions were not a "proximate cause" of the flooding and the claims against Zito should be dismissed.

### FLOODING WAS NOT A FORESEEABLE CONSEQUENCE OF ZITO'S ACTIONS

Even if Zito was somehow negligent in delivering and not retrieving the barge prior to the storm (which is denied), it would be absurd to suggest, much less find, that the flooding experienced in New Orleans was a foreseeable consequence of Zito's limited involvement with the barge. It bears noting that plaintiffs offered no argument, much less any proof, that the flooding was a foreseeable consequence of Zito's actions (delivering and not retrieving the barge prior to the storm). The fact that so many separate and

---

[6] The National Weather Service records that plaintiffs' attached to their opposition as Exhibit "2", confirm that when Zito delivered the barge to Lafarge at approximately 1130 hours on August 26, 2005, the storm's forecasted path was for landfall in or around the Florida panhandle. **In fact, the forecasted path had actually shifted East when the barge was delivered to Lafarge.**

5

independent things had to occur well after Zito delivered the barge (all of which were without any knowledge or involvement on the part of Zito), in order for the barge to even be considered as a possible cause of the flooding, makes it ludicrous to suggest that the flooding was a reasonably anticipated consequence of Zito's actions.

Zito respectfully submits that this Honorable Court should find, as a matter of law, that the plaintiffs' injuries were not a foreseeable consequence of Zito's actions. The likelihood that Zito's delivery and/or failure to retrieve the barge would in turn cause Lafarge to allegedly negligently moor the barge, which in turn would cause Unique Towing to allegedly improperly secure the barge, which in turn would cause the barge to break free from its moorings, which in turn would cause the barge to breech the flood wall, all of which would ultimately lead to catastrophic flooding in New Orleans, was not, as a matter of law, a consequence which might have been reasonably foreseen as a result of the delivery and/or failure to retrieve the barge prior to the storm.

## THE CLAIMS AGAINST ZITO ARE CONTROLLED BY THE DOCTRINE OF COLLATERAL ESTOPPEL

The arguments and reasons why the claims are controlled by the doctrine of collateral estoppel are set forth in Zito's memorandum in support of this motion. Again, it is significant to note that plaintiffs' opposition does not address, much less dispute, that the negligent delivery and failure to remove claims against Zito are controlled by the doctrine of collateral estoppel.

The plaintiffs have already litigated these issues to **final judgment** before Judge Berrigan. The negligent delivery and failure to remove claims - whether asserted against Zito or Ingram - are the same, and were expressly presented to Judge Berrigan for

consideration by these very plaintiffs. These issues were fully tried before and conclusively resolved by Judge Berrigan. Judge Berrigan's ruling that neither the delivery nor failure to remove the barge were proximate causes of the plaintiffs' injuries is the controlling "law of the case" and entitled to preclusive effect in this matter and binding upon plaintiffs. **This alone is sufficient grounds to grant Zito's motion and dismiss the claims against Zito.**

### MR. BUSCH'S ALLEGED CALL IS NOT A *MATERIAL* FACT

Contrary to the plaintiffs' contention, whether Mr. Busch did or did not leave a message is not a material fact for purposes of granting Zito's motion. In fact, plaintiffs agree that the alleged call can only be material to this motion if it "might affect the outcome of the suit".[7] Mr. Busch acknowledged that the purpose of his call was simply to notify Zito that the barge had been unloaded and was available for pick up at some indefinite time in the future. The purpose of the call was not to request Zito to remove the barge prior to the storm. Indeed, Mr. Busch had no expectation that the barge would be retrieved prior to the storm. He knew that Lafarge would be responsible for barge when the storm hit.

Since this motion does not require the Court to determine whether Mr. Busch did or did not call and/or leave the message, the alleged call is not material to this motion. In fact, this Honorable Court can as Judge Berrigan did, assume for purposes of the motion that Mr. Busch called and left a message. Even when allowed to make this assumption and the putative negligence that plaintiffs contend follows from this assumption, the flooding that New Orleans experienced was not a foreseeable consequence of Zito's failure

---

[7] See p. 10 of Plaintiffs' Memorandum in Opposition, Doc. 19347.

to remove the barge nor was the failure to remove the barge a proximate cause of the plaintiffs' injuries.

Mr. Busch's alleged call is not material to this motion and, therefore, any dispute that may even arguably exist concerning the call is not grounds for denying Zito's motion.

## THERE IS NO *GENUINE* ISSUE REGARDING THE ALLEGED CALL

A dispute over a material fact is genuine only if a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. (1986) Putting aside for the moment that the alleged call is not a material fact for purposes of Zito's motion for summary judgment, the dispute concerning the alleged call only amounts to a real or *genuine* dispute if a reasonable jury could find that Mr. Busch did in fact call and leave a message with Zito that morning. There is no real or *genuine* dispute because the only reasonable conclusion to be drawn from the evidence is that Mr. Busch did not call and leave a message with Zito.

Notwithstanding the fact that Mr. Busch has suggested that he left a telephone message with Zito on the morning of August 27, 2005, the court is faced with a record that clearly and unequivocally supports only one conclusion - Mr. Busch did not call and leave a message with Zito that morning. There were no witnesses to the purported phone call. There is no corroborating evidence. In fact, plaintiffs admit that there is no record of Mr. Busch's alleged call on any of the phone records of that day.[8] All of the other calls that he made or received are as one would expect, documented in the phone records. On the other hand, the alleged call to Zito is conspicuously missing from the records. Plaintiffs

---

[8] See plaintiffs' Response No. 26, Doc. 19347-2.

make no attempt to explain why or how the critical call ended up being the only call that is missing from the records.

Moreover, the record shows that it was impossible for Mr. Busch to have left a message on Zito's phone system without someone at Zito having first answered the call and then transferred the call to an extension. This is significant because plaintiffs admit that Mr. Busch did not speak with anyone at Zito that morning.[9] Other then simply relying on Mr. Busch's uncorroborated suggestion that he was able to accomplish the impossible, plaintiffs offer no theories, arguments or explanation to explain this feat.

Furthermore, and even if Mr. Busch was able to do the impossible and leave a message without having first spoken with someone at Zito, his call should appear on both the Nextel and Zito's call history from that day. It does not. The only reasonable conclusion that can be drawn from the above is that the call does not appear on the records because there was no such call.

In that there is only one reasonable conclusion to the question of whether he did or did not call and leave a message with Zito that morning, there is no real or *genuine* dispute over this fact. Accordingly, and even if the Court feels compelled to consider this nonmaterial issue, the only reasonable conclusion is that Mr. Busch did not call Zito that morning.

---

[9]See plaintiffs' Response No. 13, Doc. 19347-2.

## CONCLUSION

Accordingly, and for the reasons more fully set forth above, together with the reasons set forth in Zito's original memorandum in support of this motion, Zito respectfully submits that this summary judgment should be granted and all claims against Zito should be dismissed, with prejudice.

Respectfully submitted,

**s/C. William Emory**
ANDRÉ J. MOULEDOUX (LA Bar #9778)
C. WILLIAM EMORY (LA Bar #20179)
MOULEDOUX, BLAND, LEGRAND &
BRACKETT, L.L.C.
701 Poydras Street, Suite 4250
New Orleans, LA 70139
Telephone: (504) 595-3000
Facsimile:  (504) 522-2121
Fax:         504-522-2121
Email:       bemory@mblb.com
Attorneys for Zito Fleeting, L.L.C. and Zito Fleeting, Inc.
Zito - Reply Memo in Support MSJ 11-5-09 cwe.wpd

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 9th day of November, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record. I also certify that I have mailed the foregoing by United States Postal Service, First Class, to all non-CM/ECF participants.

**s/C. William Emory**