**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| In Re: | KATRINA CANAL BREACHES | § | |
| | CONSOLIDATED LITIGATION | § | CIVIL ACTION |
| _____ | § | NO. 05-4182 "K" (2) |
| | | § | JUDGE DUVAL |
| | PERTAINS TO:  MRGO | § | MAG. WILKINSON |
| _____ | § | |

**UNITED STATES OF AMERICA'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND**
**RESPONSE TO THE MOTIONS TO INTERVENE AND CONSOLIDATE**

In its Motion to Dismiss (Doc. 19323), the United States, relying on this
Court's prior holding in *Robinson*, demonstrated that the three named EBIA
Plaintiffs in this case—Ethel Mae Coates, Kenneth P. Armstrong, Sr., and
Jeannine B. Armstrong—all failed to satisfy the FTCA's presentment requirement
prior to filing suit, thus depriving this Court of subject-matter jurisdiction over
their EBIA claims and requiring the dismissal of Count Three.

Plaintiffs have responded on two fronts.  First, they half-heartedly attempt
to defend the validity of their own administrative claims by arguing that "the
Court's decision in *Robinson* was in error."  But the Court's dismissal of the EBIA

1

claims in *Robinson* was compelled by Fifth Circuit precedent; this same precedent requires dismissal of Plaintiffs' claims in this case.

Second, essentially conceding the failure by Plaintiffs to exhaust their administrative remedies, Plaintiffs' counsel proposes to substitute in their stead thousands of intervenors who, he suggests, timely presented EBIA claims over which the Court would have jurisdiction. But the Court would lack jurisdiction over these EBIA claims, as well, because the proposed intervenors presented them too late, more than two years after they accrued, rendering them time-barred by the FTCA's statute of limitations.

The proposal by the Entergy Companies to consolidate their separately-filed lawsuit with this one likewise would fail to solve the jurisdictional problem in this case. Some of the Entergy plaintiffs did not present administrative claims at all, and those who did present claims filed suit before six months expired. In both instances, the Court lacks subject-matter jurisdiction.

Alternatively, assuming *arguendo* that class actions are maintainable against the United States under the FTCA, the Court lacks jurisdiction over the claims of the proposed intervenors and the Entergy Companies because suit already had been instituted on their behalf, by virtue of a still-pending class action filed by other plaintiffs, before any of the proposed intervenors or the Entergy Companies

2

had completely exhausted their administrative remedies under the FTCA.  Simply

put, even if the proposed intervenors and the Entergy Companies were permitted

to become involved in this lawsuit, the Court would still have no basis to exercise

its jurisdiction over any claim relating to the EBIA.

As Justice Holmes observed almost a century ago:  "Men must turn square

corners when they deal with the Government.  If it attaches even purely formal

conditions to its consent to be sued those conditions must be complied with."[1]  Try

as they might, Plaintiffs have been unable to identify anyone who has complied

with the conditions required for this Court to have subject-matter jurisdiction over

the EBIA claim asserted in this lawsuit.  Count Three must therefore be dismissed.

## I.    Plaintiffs cannot escape this Court's holding in *Robinson*.

As Plaintiffs concede, to prevail in *this* case, they must establish that the

Court erred in *Robinson*, where it was confronted with this identical issue.  In

*Robinson*, the Court ruled that a claim based on defects in the MRGO was

"distinct" from a claim based on negligence committed with respect to the lock

---

[1] *Rock Island, Ark. & La. R.R. v. United States*, 254 U.S. 141, 143 (1920).

replacement project at the IHNC.[2]   Accordingly, the Court there held that because the plaintiffs' administrative claims discussed only the MRGO, they could not support a lawsuit based on work performed at the EBIA.[3]

Contrary to Plaintiffs' contention that "the Court's decision in *Robinson* was in error,"[4] that decision was squarely based on Fifth Circuit precedent. Indeed, the Court discussed at length the Fifth Circuit's decision in *Portillo v. United States*[5]—a case which it found "highly analogous to the instant one."[6]

In *Portillo*, the plaintiff, who was injured while at a VA hospital for a surgical operation, timely presented an administrative claim alleging that the hospital's failure to properly monitor him resulted in a chronic urinary tract infection.[7]   The plaintiff later sought to amend his lawsuit to assert that the hospital's negligent administration of anesthesia caused an injury to his lower

---

[2]   *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4449970, at *6 (E.D. La. Sept. 29, 2008) (Duval, J.).

[3]   *Id.*

[4]   *See* Doc. 19346 at 2.

[5]   No. 93-8275, 1994 WL 395174 (5th Cir. June 30, 1994).   Pursuant to Fifth Circuit Rule 47.5.3, this decision is precedent.

[6]   *In re Katrina*, 2008 WL 4449970, at *6.

[7]   816 F. Supp. 444, 446 (W.D. Tex. 1993).

4

spine.[8]  The district court dismissed the anesthesia claim, and the Fifth Circuit

affirmed.[9]  It reasoned that "[b]ecause the administrative claim did not give the

government notice of any facts that would have led it to investigate the

circumstances surrounding the administration of Portillo's anesthesia, the

exhaustion requirement was not satisfied, leaving the district court without

jurisdiction to address the claim; its dismissal was not error."[10]

Citing to *Portillo*, and also to the Fifth Circuit's decision in *Cook v. United

States*,[11] this Court in *Robinson* held that the plaintiffs' administrative claims,

which alleged defects in the MRGO, could not support a lawsuit alleging

negligence at the EBIA:

> Just as the plaintiff in *Portillo* sought compensation for damages caused by the negligence of one agency based on two distinct and different actions, so it is with the instant plaintiffs.  While it is beyond cavil that flooding caused plaintiffs' damages, there is a distinct difference between lodging a claim based on the defalcations concerning a navigable waterway—the MRGO and the storm surge it allegedly caused—and a lock replacement project that concerned different contracts and a different waterway—the Industrial Canal.[12]

---

[8]  *Id.* at 445.

[9]  1994 WL 395174, at *4.

[10]  *Id.*

[11]  978 F.2d 164 (5th Cir. 1992).

[12]  *In re Katrina*, 2008 WL 4449970, at *6.

5

The Court's reliance upon this Fifth Circuit precedent and its application of it to the EBIA claims in *Robinson* was unquestionably correct.  And yet, rather than attempt to distinguish this Court's decision in *Robinson*, or even the Fifth Circuit's decisions in *Portillo* or *Cook*, Plaintiffs point to a single decision from the Second Circuit, *Johnson v. United States*,[13] and argue that it somehow calls for a different result here.

But even ignoring its non-binding nature, *Johnson* is plainly distinguishable on its facts.  There, the court held that the plaintiff's administrative claim, which alleged a sexual assault by a government employee, sufficed to support a cause of action for negligent supervision by the government.  The court reasoned that "[b]y stating the cause of the injury, the name of the employee who committed the assault, and the date and location of the attack, the claim notified the agency of sufficient factual circumstances to enable it to investigate the matter."[14]  Unlike the administrative claim in *Johnson*, the administrative claims in this case (and in *Robinson*, too) not only failed to identify "the cause of the injury" (negligence at the EBIA that affected the integrity of the floodwalls along the IHNC), but also specifically pointed to an *alternate* cause:  the MRGO.  For this reason, the Court

---

[13]  788 F.2d 845 (2d Cir. 1986).

[14]  *Id.* at 849.

6

in *Robinson* was compelled to dismiss the plaintiffs' EBIA claims.[15]  The same result is required here.

## II.     The proposed intervention would fail to solve the jurisdictional problem.

Plaintiffs' counsel suggests that the jurisdictional defect in this case can be cured by permitting intervention by more than 30,000 new plaintiffs who, counsel contends, properly presented their EBIA claims prior to filing suit.  But the proposed intervenors' EBIA claims would fare no better than those asserted by the current Plaintiffs.  The proposed intervenors did not attempt to present their EBIA claims until more than two years after they accrued, rendering them untimely. Additionally, the request for intervention should be denied because the proposed intervenors fail to satisfy the requirements for intervention of right, and permissive intervention would not be appropriate here, given the significant delay that would result from the addition of more than 30,000 new plaintiffs at this time.

---

[15]  *In re Katrina*, 2008 WL 4449970, at *6 ("The *Robinson* claim as filed with the Corps focuses on the alleged harm caused and defalcations surrounding MRGO.  There is simply no indication that the EBIA, and the work of WGI would be the subject of this lawsuit. Furthermore, with respect to the individual claimant's allegations in the Form 95s included in the Notice, there is not a single mention of WGI, the failure of the Industrial Canal floodwall, the EBIA project or the like.  All of the claims are in terms of the detriment caused by the MRGO with flood waters emanating from the MRGO.").

**A.      The Court would lack subject-matter jurisdiction over the proposed intervenors' EBIA claims because they were presented too late.**

The proposed intervenors' claims accrued on August 29, 2005.  As they concede in their motion to intervene, however, the proposed intervenors did not attempt to present their EBIA claims until 2008.[16]  Indeed, on September 22, 2008, the Army Corps of Engineers received a letter from Joseph M. Bruno purporting to amend Box 8a of the Standard Form 95s submitted by thousands of the proposed intervenors.[17]  More than a month later, the Corps received another letter, from Jonathan B. Andry, purporting to amend the Standard Form 95s of thousands of additional intervenors.[18]  In short, all of the proposed intervenors first presented their EBIA claims more than two years after they accrued.

The FTCA provides that a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."[19]  Because the proposed intervenors

---

[16]  *See* Doc. 19344-2 at 6 (stating that all intervenors' EBIA claims were "filed in 2008").

[17]  *See* Exhibit 1 (Letter from Joseph M. Bruno to Angela Jean Drinkwitz (Sept. 19, 2008) (without attachment)).

[18]  *See* Exhibit 2 (Letter from Jonathan B. Andry to Angela Jean Drinkwitz (Oct. 28, 2008) (without attachment)).

[19]  28 U.S.C. 2401(b); *see McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989) (holding that district court lacked jurisdiction where plaintiff had failed timely to present claim prior to filing suit); *Torjagbo v. United States*, 285 Fed. Appx. 615, 617 (11th Cir. 2008)

(continued...)

8

first presented their EBIA claims more than two years after they accrued, those claims are "forever barred," and the Court would lack jurisdiction over any lawsuit based on them.

Last year, the Eleventh Circuit decided a case involving facts substantially identical to those here. In *Torjagbo v. United States*, the plaintiff, a licensed pilot who was injured when forced to make an emergency landing after experiencing engine trouble, had two claims against the United States: one for negligence in the maintenance and repair of his airplane, and one for negligence by air traffic controllers.[20]  Torjagbo presented his first claim, for negligent maintenance, within the two years provided by 28 U.S.C. 2401(b).[21]  But he did not present his second claim, for negligent air-traffic control, until *after* the two-year statute of limitations had expired.[22]  The court held that notwithstanding the timely

---

[19](...continued)
("[A] claim that is not filed properly with the appropriate agency within two years of accrual is subject to dismissal in the district court for lack of subject matter jurisdiction."); *In re Katrina*, 2008 WL 4449970, at *6 (recognizing that the FTCA "requires a claimant to file an administrative claim within two years of . . . accrual").

[20]  *See* 285 Fed. Appx. at 617.

[21]  *Id.*

[22]  *Id.*

presentment of his first claim for negligent maintenance, Torjagbo's untimely

claim for negligent air-traffic control was "forever barred" by section 2401(b).[23]

Other courts have similarly ruled that untimely substantive amendments are

not permitted under the FTCA.[24]  The Eighth Circuit, in *Manko v. United States*,

seems to have summed it up best:  "Section 2401(b) permits [amendments which

add new claims] for up to two years after the claim accrues, but after that time, we

think that Congress intended all claims already submitted to become final in their

material respects."[25]

Because the proposed intervenors presented their EBIA claims more than

two years after they accrued, those claims are "forever barred," and this Court

would lack subject-matter jurisdiction over any cause of action based on them.

---

[23]  *See id.* at 618.

[24]  *See, e.g.*, *Wardsworth v. United States*, 721 F.2d 503, 505 (5th Cir. 1983) (holding that although plaintiff had presented her claim within two-year period, because she did not provide sum certain until after that period had expired, 28 U.S.C. 2401(b) required dismissal); *Lee v. United States*, 980 F.2d 1337, 1338-39 (10th Cir. 1992) (holding that even though plaintiffs had timely presented claim on behalf of their minor daughter, district court lacked jurisdiction over claims parents presented on plaintiffs' *own* behalf, because they were presented more than two years after negligent medical treatment); *Withrow v. United States*, No. Civ.A. 5:05-152-JMH, 2005 WL 2403730, at *8 (E.D. Ky. Sept. 28, 2005) (holding that although plaintiffs had presented their claim within two-year period, district court lacked jurisdiction over amended claim, which was not presented until after two-year period had expired).

[25]  *See* 830 F.2d 831, 841-42 (8th Cir. 1987).

**B.      Even if the proposed intervenors had valid EBIA claims, their request for intervention must be denied.**

The proposed intervenors rely upon Rule 24(a) to argue that they are entitled to intervention of right.[26]  To prevail on this point, the proposed intervenors must show, among other things, that (1) they have an interest relating to the property or transaction at issue in this case; (2) the disposition of this case may impair or impede the proposed intervenors' own interest; and (3) Plaintiffs in this case will not adequately represent the proposed intervenors' interest.[27]  The proposed intervenors fail on all three counts.

First, the proposed intervenors have no interest in the property or transaction that forms the basis for the controversy in this case.  The instant case involves claims for damage caused to the property of three Plaintiffs—Ethel May Coates, Kenneth P. Armstrong, Sr., and Jeannine B. Armstrong.  Specifically at issue now is whether the Court has subject-matter jurisdiction over the claims asserted by *these Plaintiffs*.  Because none of the proposed intervenors claims an interest in Ms. Coates's or the Armstrongs' allegedly damaged property, it cannot be said that they have an interest in the property or transaction at issue in this case.

---

[26]  *See* Doc. 19344 at 1; Doc. 19344-2 at 2.

[27]  *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc).

11

Second, dismissal of *Plaintiffs'* claims would in no way impair or impede the proposed intervenors' own interests.  The impending dismissal of Plaintiffs' lawsuit is required because they did not present administrative claims pertaining to the EBIA.  Notwithstanding the dismissal of Plaintiffs' claims in this suit, the proposed intervenors, assuming they have themselves satisfied the FTCA's presentment and exhaustion requirements, would still be free to press their *own* EBIA claims in their *own* lawsuits later, just as they are under the status quo.

Third, and finally, the proposed intervenors cannot satisfy the inadequate-representation requirement for intervention of right.  On this point, all that the proposed intervenors argue is that dismissal of Plaintiffs' lawsuit for lack of subject-matter jurisdiction "will remove from the litigation all theories of liability relating to the Count Three EBIA claims," leaving the proposed intervenors' interest in these claims "completely unrepresented."[28]  But while it is true that dismissal would be fatal to the claims of the Plaintiffs in this case, that decision, based on irremediable defects in the three named Plaintiffs' administrative claims, would have no bearing on the proposed intervenors, who could still adequately assert their own interests in their own lawsuits later.

---

[28] Doc. 19344-2 at 7.

Because the proposed intervenors are unable to satisfy the requirements of Rule 24(a), their request for intervention of right must be denied.

In addition, the Court should be equally wary of granting permissive intervention. If for no other reason, permissive intervention must be denied because the Court would lack subject-matter jurisdiction over any suit brought by the proposed intervenors.[29] But practically speaking, permissive intervention makes no sense.

Most fundamentally, as discussed above, there is no reason why the proposed intervenors need to be parties to *this* lawsuit. Whatever the result here, the proposed intervenors will remain free to assert their own claims later. On the other hand, the addition of more than 30,000 new plaintiffs in this lawsuit would impose a tremendous burden on the Court and the United States. At a minimum, the United States (and the Court) would require a substantial amount of time to examine each of the proposed intervenors' originally-filed administrative claims to

---

[29] *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) ("It is well-established . . . that a party must have 'independent jurisdictional grounds' to intervene permissively under Rule 24(b).") (citations omitted); *EEOC v. Transit Mgmt. of Se. La.*, No. Civ.A. 97-2245, 1998 WL 118120, at *3 (E.D. La. Mar. 13, 1998) (Duval, J.) (holding that to grant permissive intervention, proposed intervenor "would have to demonstrate a basis for federal jurisdiction independent of the court's jurisdiction over the underlying action"); 6 Edward J. Brunet & Jerry E. Smith, *Moore's Federal Practice* § 24.22 (3d ed. 1997) ("As part of a federal case, petitions to intervene must have an independent basis of subject matter jurisdiction.").

determine whether they satisfy the FTCA's prerequisites to waiving sovereign immunity.  With more than 30,000 Standard Form 95s to examine, this process would undoubtedly delay the resolution of this lawsuit, and would be better left to some future date when, *if* ever, the proposed intervenors file their own lawsuits.

III.    **The Court lacks subject-matter jurisdiction over the Entergy Companies' lawsuit.**

"The Entergy Companies" (defined to include "Entergy New Orleans, Inc., Entergy Louisiana, L.L.C., Entergy Services, Inc., Entergy Corporation, and Hartford Steam Boiler Inspection and Insurance Company")[30] seek to consolidate their separately-filed lawsuit with this one.[31]  But the Entergy Companies' lawsuit suffers from its own jurisdictional defects, as it was filed before some of the Entergy plaintiffs presented any claim at all, and before the remainder of them had fully exhausted their administrative remedies.  So rather than consolidate the Entergy Companies' lawsuit with this one, the Court must dismiss it for lack of subject-matter jurisdiction.

---

[30]  *See* Doc. 19345 at 1.

[31]  *Id.*

14

**A.**     **The Court lacks subject-matter jurisdiction over the lawsuit brought by Entergy Services, Inc. and Entergy Corporation because neither of them presented an administrative claim.**

Two of the Entergy plaintiffs—Entergy Services, Inc. and Entergy

Corporation—never submitted an administrative claim to the Army Corps of

Engineers.[32]  These parties must therefore be dismissed from the Entergy

Companies' separately-filed lawsuit.[33]

**B.**     **The other Entergy plaintiffs filed their lawsuit too soon, without waiting six months from the date they presented their administrative claims**.

Two of the other Entergy plaintiffs—Entergy New Orleans, Inc. and

Entergy Louisiana, L.L.C.—presented administrative claims on February 28,

2007.[34]  A third—Hartford Steam Boiler Inspection and Insurance

Company—presented its administrative claim on August 22, 2007.[35]  All three

---

[32]  *See* Exhibit 3 (Decl. of Lorenzo Ferguson (Nov. 9, 2009)).

[33]  *See* 28 U.S.C. 2675(a); *McAfee*, 884 F.2d at 222-23 (affirming denial of leave to amend as futile because plaintiff "failed timely to file an administrative claim with the appropriate government agency as required by 28 U.S.C. § 2675(a)").

[34]  *See* Doc. 19345 at 3 (stating that "[o]n February 28, 2007 the Entergy Companies filed Form 95s" with the Army Corps of Engineers).

[35]  *See* Exhibit 4 (filed under seal).

filed suit without waiting for the expiration of the full six-month waiting period provided by 28 U.S.C. 2675(a).

Section 2675(a) requires claimants to wait for their claims to be "finally denied by the agency" before filing suit.  Because the Corps has never "finally denied" the claims presented by the Entergy Companies, they rely upon language in section 2675(a) that permits claimants to "deem" their claims to have been denied if, after six months, the agency has taken no final action.[36]  On this point, specifically, the statute provides:   "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time *thereafter*, be deemed a final denial of the claim for purposes of this section."[37]  None of the Entergy Companies complied with this statute.

Plainly, Hartford Steam Boiler did not wait six months from the date it presented its claim before filing suit.  It presented its claim on August 22, 2007, and filed suit just six days later, on August 28.[38]  Hartford Steam Boiler's premature lawsuit must therefore be dismissed.[39]

---

[36]  *See* Doc. 19345 at 9.

[37]  28 U.S.C. 2675(a) (emphasis added).

[38]  *See* Doc.19345-3.

[39]  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that where complaint
(continued...)

The same is true with respect to the lawsuit of the remaining Entergy

plaintiffs.  They presented their claims on February 28, 2007.[40]  The sixth-month

period in section 2675(a) thus would have expired on August 28, 2007, *after*

which (or, in the language of the statute, "thereafter") the Entergy Companies'

lawsuit would have been ripe for filing.  This reading of section 2675(a) is

supported by Fifth Circuit precedent and by the decisions of other courts that have

considered the question.  In *McAllister v. United States*, the Fifth Circuit held that

"if . . . *after* six months from filing, the agency has not finally ruled, the claimant

may treat the agency's failure to act as a final denial and he may file his suit at any

time *thereafter*."[41]  The FTCA's legislative history also supports this reading of

---

[39](...continued)

was filed before administrative claim has been denied, dismissal is required); *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir. 1981) ("Although appellants have filed an administrative claim for relief against the FDIC as required by the FTCA, they concede they did not await the required six month period prior to bringing this action, nor was there the required formal denial. Lacking jurisdiction, the district court was required to dismiss the suit against the United States."); *Berthelot v. Boh Bros. Constr.*, No 05-4182, 2007 WL 1239132, at *3 (E.D. La. Apr. 27, 2007) (Duval, J.) (observing that "a suit filed before the six-month interval must be dismissed even after the six-month period had run").

[40]  *See* Doc. 19345 at 3, 5, 9.

[41]  925 F.2d 841, 844 (5th Cir. 1991); *see also, e.g., Bawa v. United States*, No. C 07-00200 WHA, 2007 WL 1456040, at *3 (N.D. Cal. May 17, 2007) ("If plaintiff did indeed file his claim on December 19, as he alleges, he should have waited until June 20, 2007, to file this action, assuming USCIS did not issue a final denial of his claim before the six-month period expired."); *Gonzales v. United States*, No. Civ.A. B-06-103, 2006 WL 2827052, at *1 (S.D. Tex. Sept. 27, 2006) ("This claim was received on January 17, 2006. . . .  The record contains no indication that the USPS ever made a final disposition on the claim.  Therefore, Plaintiff was

(continued...)

section 2675(a).  The Senate Report supporting that section explained that "[a]fter

the claim has been presented to the agency and 6 months *passes* without final

disposition of the claim, the claimant is expressly given the option to consider the

claim as denied and to file suit."[42]

The fact that the Entergy Companies filed their suit on August 28,

2007—the last day of the six-month period and before it fully expired—renders

their suit premature.  The Entergy Companies' separately-filed lawsuit must

therefore be dismissed.


**IV.   Alternatively, the pendency of a still pending class action precluded the proposed intervenors and the Entergy Companies from complying with section 2675(a).**

Throughout the course of this litigation, the United States has steadfastly

maintained that Rule 23 class actions are incompatible with the FTCA, and that

one set of plaintiffs cannot institute an action on behalf of other claimants without

---

[41](...continued)
required by the statute to wait until July 18, 2006 before she could deem the claim rejected.")
(citation omitted); *Socialist Workers Party v. Att'y Gen.*, 642 F.2d 1357, 1414 (S.D.N.Y. 1986)
("The administrative claim . . . was filed with the FBI on July 17, 1975.  The period of six
months from that date expired on January 17, 1976. . . .  Under the statute plaintiffs were free to
sue on their claim . . . any time *after* January 17, 1976.") (emphasis added).

[42]  S. Rep. No. 1327, at 7 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 2515, 2521)
(emphasis added).

their express permission to do so.[43]   The Court, however, has expressed its

disagreement with this position, and declined to strike Plaintiffs' class-action

allegations.[44]   The upshot of this ruling, considering that both the proposed

intervenors and the Entergy Companies are members of a would-be class in a

putative class action that has been pending against the United States since 2006, is

that neither the proposed intervenors nor the Entergy Companies could have

exhausted their administrative remedies under the FTCA, at least during the

pendency of the putative class action that was brought on their behalf.

As discussed above, 28 U.S.C. 2675(a)  requires plaintiffs to completely

exhaust their administrative remedies prior to instituting an action under the

FTCA.[45]   In order to do so, the plaintiff must first present a claim to the

---

[43]   *See, e.g.*, Doc. 8284 at 2 ("*Each claimant must . . . decide for himself or herself whether to commence suit* or allow the claim to remain pending before the agency to which it was presented if it is not disposed of within the allotted time.") (emphasis added); Doc. 17195 at 10 ("Once their claims have been pending for six months, *each claimant individually* must decide whether to 'opt in' to a lawsuit or to allow the claim to remain pending before the agency. To permit a class action under Rule 23 of the Federal Rules of Civil Procedure—which provides for the inclusion of putative plaintiffs unless they opt out of the class—would violate the FTCA's 'opt-in' scheme, and is therefore prohibited.") (emphasis added).

[44]   *See* Doc. 18977.

[45]   *See McNeil*, 508 U.S. at 112 ("The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."); *id.* at 113 ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

19

appropriate Federal agency and wait until the agency either denies the claim in

writing or six months pass without a final disposition of the claim by the agency.[46]

The purpose of this requirement is to afford the agency the opportunity to

settle the claim before a lawsuit has been filed.[47]  Once an action on the claim has

been filed, however, the agency is deprived of its authority to settle the claim (at

least during the pendency of the suit), and that authority instead is vested

exclusively with the Attorney General.[48]  Thus, by foreclosing the possibility of

any settlement by the agency, the filing of a premature suit frustrates the purpose

of the administrative exhaustion requirement.  It follows, therefore, that during the

_____

[46] *See Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995) (holding that action may not be instituted under FTCA "unless the plaintiff has filed an administrative claim and either obtained a written denial or waited six months"); *Adams v. United States*, 615 F.2d 284, 286 (5th Cir. 1980) ("Only after the claim has been denied or six months have passed may plaintiff bring suit in federal court on the claim.").

[47] *See McNeil*, 508 U.S. at 112 n.7 (quoting S. Rep. No. 1327, at 3 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 2515, 2517).

[48] *See* 28 U.S.C. 2677 ("The Attorney General or his designee may arbitrate, compromise, or settle any claim cognizable under section 1346(b) of this title, after the commencement of an action thereon."); *see also United States v. Reilly*, 385 F.2d 225, 229 (10th Cir. 1967) ("We take it to be settled that where Congress has set out a statutory procedure for the compromise of matters involving the United States, it implicitly negatives the use of any other procedure."); *Hearings before Judiciary Committee on H.R. 5373 and H.R. 6463*, 77th Cong., 2d Sess. 28 (1942) ("Settlement of claims before suit is left to the Federal agency.  If suit has been instituted, however, only the Attorney General may compromise the claim in question."); *id.* at 32 ("The Attorney General has exclusive power to compromise or settle claims after suit has been brought."); *id.* at 44 ("Once suit has been started on a claim[,] only the Attorney General would have the authority to compromise or settle that claim, and the Federal Agency concerned could no longer adjust or determine it[.]").

pendency of a prematurely filed suit, the six-month period that section 2675(a) gives the agency to finally dispose of the claim does not run.

To determine whether a particular plaintiff has exhausted his administrative remedies under the FTCA prior to filing suit, as section 2675(a) requires, a court must first determine the date on which the action on the plaintiff's claim was instituted.  That determination, in the context of class actions, is controlled by the Supreme Court's decision in *American Pipe*.[49]

*American Pipe* held that "the filing of a timely class action complaint commences the action for *all members of the class* as subsequently determined."[50] Assuming *arguendo* that a class action may be maintained under the FTCA, it follows that once such a class action has been filed, the Attorney General's settlement authority is exclusive with respect to the claims of all the members of the putative class, and the Federal agency is deprived of its authority to settle the claims of these putative class members.

With respect to the claims now being asserted by the proposed intervenors and the Entergy Companies, an action was instituted no later than August 28, 2006—the date on which counsel for the current Plaintiffs filed a class-action

---

[49] *Amer. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974).

[50] *Id.* (emphasis added).

lawsuit against the United States in this district in Civil Action No. 06-5161.[51]

Among other things, this suit seeks to hold the United States liable for failing (1)

to armor the banks of the IHNC; (2) to prevent damages caused by the "vices

and/or defects in the Industrial Canal," to the surrounding area during the repair,

improvement, and maintenance of "the Industrial Canal and structures thereupon";

and (3) "to disclose to the Plaintiffs and the Class Members" that "during the

course of building the Industrial Canal and/or conducting their improvement or

maintenance activities in and around the Industrial Canal," "such activities caused

damage to the protective levees and floodgates and increased the risk of flooding

to Orleans Parish."[52]

> The complaint defines the proposed class to include:
>
> All residents, domiciliaries, and property owners of the Parish or
> Orleans and Parish of St. Bernard in the State of Louisiana who
> sustained damages as a result of water intrusion caused by the failure
> of the hurricane protection levees and flood walls on the east side of
> the Industrial Canal at an area known as the "Ninth Ward" in New
> Orleans, Louisiana on or about August 29, 2005, and thereafter, such
> damages including but not limited to personal property, and personal
> injury.[53]

---

[51] *See* Complaint for Damages - Class Action in Civil Action No. 06-5161 (Doc.1-1).

[52] *See id.* ¶¶ 59, 62, 64, 65, 68

[53] *See id.* ¶ 6.

Clearly, the class-action complaint in Civil Action No. 06-5161, which remains pending, includes the claims now being asserted by the thousands of proposed intervenors and the Entergy Companies.  First, both the proposed intervenors and the Entergy Companies fall within the definition of the class.  The proposed intervenors specifically allege that they all reside in the area described in the 2006 class-action complaint.[54]  Likewise, the Entergy Companies describe themselves as having "sustained damage in the Lower Ninth Ward and St. Bernard areas."[55]  Second, the administrative claims that both the proposed intervenors and the Entergy Companies attempted to present cover the same subject matter as the complaint in Civil Action No. 06-5161—damages caused by construction and maintenance work at the EBIA along the Industrial Canal.

In short, assuming that class actions are permitted under the FTCA, *American Pipe* compels the conclusion that the class-action complaint in Civil Action No. 06-5161 commenced the actions of the proposed intervenors and the Entergy Companies in 2006, and rendered ineffective their later attempts, in 2007 and 2008, to exhaust their administrative remedies.  By then, the Corps of Engineers, as the result of the filing of the 2006 class action, had already been

---

[54] *See* Doc. 19344-5 ¶ 6.

[55] Doc. 19345 at 8.

deprived of its authority to settle the claims of the proposed intervenors, the Entergy Companies, and the other putative class members.

Consequently, even if the Court were to conclude that the proposed intervenors' EBIA claims are not "forever barred," and that the Entergy Companies' own lawsuit was not itself premature, it must conclude that they all have failed to comply with 28 U.S.C. 2675(a), which required them to completely exhaust their administrative remedies *before* commencing suit.  Until they comply with section 2675(a), they may not proceed with lawsuits against the United States.

## CONCLUSION

As the Supreme Court has observed, "[t]he oft-quoted observation [by Justice Holmes] that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook.  It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury."[56]  Those "conditions defined by Congress" have not been met by any party seeking to assert an EBIA claim against the United States.  Accordingly, the Court lacks subject-matter jurisdiction over the EBIA claim expressed in Count

---

[56] *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947) (Frankfurter, J.).

24

Three, which must be dismissed.  Additionally, the Court should deny the request

for intervention and the Entergy Companies' motion to consolidate, as neither of

these measures would solve the Plaintiffs' jurisdictional problem in this case.

Finally, because it also lacks subject-matter jurisdiction over the Entergy

Companies' prematurely-filed lawsuit, the Court should dismiss that case, as well.

Respectfully Submitted,

TONY WEST
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

ROBIN D. SMITH
Senior Trial Counsel, Torts Branch

s/ Jeffrey Paul Ehrlich
Jeffrey Paul Ehrlich
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4400 / (202) 616-5200 (Fax)
Attorney for the United States

## CERTIFICATE OF SERVICE

I, Jeffrey Paul Ehrlich, hereby certify that on November 12, 2009, I served a true copy of the foregoing upon all Parties by ECF.


s/ Jeffrey Paul Ehrlich