

Slip Copy, 2009 WL 3254903 (E.D.La.)
 **(Cite as: 2009 WL 3254903 (E.D.La.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Louisiana.
In re KATRINA CANAL BREACHES CONSOLIDATED LITIGATION.
Pertains To: MRGO, Robinson C.A. No. 06-2268.
**Civil Action No. 05-4182.**

April 21, 2009.

Named Expert: Dr. Donald Thomas Resio, M.S., Ph.D.

### *ORDER AND REASONS*

STANWOOD R. DUVAL, JR., District Judge.

**\*** Before the Court is a Motion to Strike Supplemental Report of Defendant United States' Expert Donald Resio and Preclude Derivative Testimony (Doc. 18514) filed by Plaintiffs in the *Robinson* matter. In essence, Plaintiffs contend that this " Supplemental Report on Waves and Overtopping Characteristics Along the MRGO" issued by Donald Resio was received by Plaintiffs on March 24, 2009, "long after" his February 9, 2009 deposition was taken. They maintain that they will be unduly prejudiced in the event he is allowed to testify to these findings:

(1) because the materials relied upon should have been produced more than a month prior to his deposition under Fed.R.Civ.P. 26, and the United States unduly delayed in its production of these materials, Plaintiffs arguing that the "the defendant fought production of these materials consistently until Dr. Resio was educated at his deposition of the flaws in his analysis and a new approach was created" (Doc. 18514 at 8); and

(2) because of the manner in which the underlying information in the " supplemental report" was delivered to Plaintiffs, it has been impossible to determine whether "any testimony obtained at deposition can be relied upon" (Doc. 18514 at 8) as the supporting data is contained on seven 500 gigabyte hard drives without sufficient direction as to the proper manner to examine that material.

Plaintiffs filed a detailed affidavit of Dr. Ivor Van Heerden in which he opines that it appears that

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3254903 (E.D.La.)
 (Cite as: 2009 WL 3254903 (E.D.La.))

3456 new COULWAVE runs have been produced in which it appears that entirely different values from the material referenced in his initial expert report of December 2008 were used. Moreover, the supplemental report "adds an entirely new analysis of front side velocities that was not presented in his original report to present the argument that frontside wave attack did not affect the levees." *Id.* (Doc. 18514). Plaintiffs contend that because of the failure of the Corps to supply a proper explanation on how the hard drives were organized, to provide the format of the data, to provide any notes on the software needed to read the data, and to provide instructions on reading the data," it is practically impossible for them to evaluate the supplemental report.

The United States responds that this report is a proper supplemental report that simply responds to criticism by Dr. Bea of Dr. Resio's report for using generic levees in his runs. These new runs changed six factors which are variable along the Reach 2 levees: (1) wave heights; (2) levee slope; (3) levee toe elevation; (4) MRGO bank elevation; (5) distance between the MRGO and levee; and (6) wave period. They contend that Plaintiffs' arguments concerning their "delaying tactics" are old and irrelevant and that Plaintiffs have behaved in a similar matter. The United States further asserts that the supplemental report of Dr. Vrijling, Dr. Bea, Dr. Kemp and Drs. Shaffer and John Day should likewise be stricken if the Court were to strike the Resio supplemental report.

**\*2** There is no question that this Court was forced to continue this trial for a second time based on the Government's need to prepare its defense, making it practically four years since Hurricane Katrina struck this city to adjudicate this issue. Furthermore, it unquestionably ordered on October 9, 2008 that Defendant's Expert Reports **and computer generated evidence** were to be produced on **December 22, 2008.** (Doc. 15841). The Court further ordered at that time that the depositions of all Plaintiffs' and Defendant's Experts were to be completed by February 6, 2009.

From these facts, what is also pellucidly clear is that neither side complied with the deadlines set forth to complete this discovery. There has been a wild scramble to provide the Court with expert reports, depositions and exhibits that has resulted in an unfortunate piecemeal manner of preparation-including the Government's unilateral decision to forego objections to exhibits because it was too onerous a task. In addition, ruling on deposition objections have had to be deferred as the depositions were received on the Thursday and Friday prior to trial leaving the Court with the herculean task of reading thousands of pages of expert reports and deposition testimony in far too truncated a period of time. To put it succinctly, the Court has been faced with last minute motions and objections that under normal circumstances would not be entertained as they are being filed long after normal deadlines would have passed. The Court has accommodated the parties and has not arbitrarily enforced deadlines in light of the extremely important issues for trial and will continue to do so. That being said, the Court will address the motion before it now.

[Rule 26(a)(2) of the Federal Rules of Civil Procedure](#) states that any expert written report must be disclosed to other parties at least 90 days before trial, or otherwise as the court directs. [Fed.R.Civ.P. 26(a)](#). The Court here ordered **all expert reports and computer generated evidence produced on December 22, 2008,** practically 120 days before trial which is set to com-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3254903 (E.D.La.)
 (Cite as: 2009 WL 3254903 (E.D.La.))

mence on April 20, 2009. However, as late as February 20, 2009, this Court, through Magistrate Judge Wilkinson, had to order the United States to produce these materials, finding that the United States had been dilatory with its disclosure obligations for almost two months under Fed.R.Civ.P. 36(a)(2)(B)(ii). (Doc. 17816). The United States further delayed by filing a motion for reconsideration which was summarily denied on March 11, 2009. Clearly, while the United States in its opposition makes much about the "rehashing" of Plaintiffs' previous arguments, it is unclear from the record whether the information at issue herein might have been subject to that March 11, 2009 order. The Supplemental Report is undated.

Supplemental reports are permitted under Rule 26(e), but only if "the party learns that in some material respect the disclosure was incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," or as ordered by the court. In addition, Rule 37(c) provides that where a party fails to provide information as required under Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was **substantially justified or is harmless.**" Fed.R.Civ.P. 37(c) (emphasis added).

**\*3** Although virtually indecipherable to the Court, it appears that no new opinion has been offered; however, Plaintiffs argue that a new theory supporting the previous opinion is in the supplemental report and its appendices. In order to determine whether this theory is a substantial deviation from the underlying opinion and the supporting data, this Court will hold a brief hearing before Dr. Resio is allowed to testify to determine exactly what was withheld, why this opinion was so late in being provided and the degree of prejudice Plaintiffs would experience should the Court allow this testimony. Furthermore, the Court will examine Dr. Resio to determine exactly what changes have occurred and satisfy itself that this is indeed a truly supplemental report.

In a footnote, the Government states:

> [S]triking Dr. Resio's report would deprive the United States of presenting Dr. Resio's most recent analysis at the *Robinson* trial. That same analysis, however, would not be barred from the courtroom; it would be present in the MRGO case now scheduled for trial in September, 2009. Disallowing such testimony in *Robinson,* but allowing it in MRGO, would serve only to erode *Robinson's* purported status as a test case in which all issues relevant to the alleged affects of the MRGO on flooding during Hurricane Katrina are presented and adjudicated. If Plaintiffs' experts' supplemental reports are similarly stricken, multiple experts on both sides would bite their tongues during *Robinson* and wait until the MRGO trial, at which they would then fully explain their opinions.

(Doc. 18585 at 7-8, n. 4).

This argument of concern for the failure of *Robinson* to be the paradigm might be viewed with some skepticism. A little more than two years ago in March of 2007, it was agreed by all parties

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3254903 (E.D.La.)
 **(Cite as: 2009 WL 3254903 (E.D.La.))**

that the most efficient manner for the trial of the issue of liability arising from MRGO would be through the trial of a single, multiparty test case with each plaintiff residing in a distinct area of flooding. Indeed, the Government benefitted from this approach as all of the multitudinous cases filed against it were stayed as this paradigm progressed. While the Court recognizes that the United States opined that it had in all truth tried to meet previous deadlines, it was its experts that caused this delay in trial. In addition, while technically the case against the United States for damages arising out of the work at the EBIA had not been included in the *Robinson* matter, but were in the MRGO class action suit, the United States successfully thwarted the effort to include that issue in this trial. Thus it is arguably double speak to infer that the ruling on Dr. Resio's testimony may disrupt the *Robinson* paradigm. Furthermore, the United States ensured this "erosion" when it moved to strike a supplemental report of Dr. Bob Bea's expert report of April 3, 2009, which was ultimately withdrawn by Plaintiffs.

Nonetheless, the Court hopes that the level of professionalism which had been the hallmark of this litigation returns during trial. Rank accusations of shell games and trial tactics do not serve justice or the reputations of all the hard-working and highly qualified attorneys that are involved in this case. This approach is not concomitant to the actual stature and nature of the attorneys that have appeared to date before the Court. Accordingly,

**\*4 IT IS ORDERED** that Motion to Strike Supplemental Report of Defendant United States' Expert Donald Resio and Preclude Derivative Testimony (Doc. 18514) is **DENIED** provided that the Court is satisfied at a hearing prior to his testimony that it is admissible under the rules as stated.

E.D.La.,2009.
In re Katrina Canal Breaches Consolidated Litigation
Slip Copy, 2009 WL 3254903 (E.D.La.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.