**United States 5th Circuit Court of Appeals Reports**

CHIASSON v. ZAPATA GULF MARINE CORP., 988 F.2d 513 (5th Cir. 1993)

BETTY U. CHIASSON, PLAINTIFF-APPELLANT, v. ZAPATA GULF MARINE CORPORATION, DEFENDANT-APPELLEE.

No. 91-3766.

United States Court of Appeals, Fifth Circuit.

March 31, 1993.

**Page 514**

William Walsh Miles, Lymann, O'Hara & Miles, New Orleans, LA, for plaintiff-appellant.

Caroline Maria Broers, Richard M. Simses, Abbott, Best & Meeks, New Orleans, LA, for defendant-appellee.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before JONES and BARKSDALE, Circuit Judges, and JUSTICE[fn1], District Judge.

[fn1] District Judge for the Eastern District of Texas, sitting by designation.

BARKSDALE, Circuit Judge:

[1] Concerning reversible error *vel non* in the admission of a surveillance videotape, at issue is a district court rule allowing non-disclosure of evidence to be used solely for impeachment, if approved through an *in camera* proceeding (non-disclosure procedure). Because we find that the tape was relevant to substantive issues, as well as possibly serving to impeach, we need not determine whether the non-disclosure procedure is inconsistent with Federal Rule of Civil Procedure 26(b)(1). Finding reversible error, we VACATE and REMAND for a new trial.

I.

[2] Betty Chiasson, an employee of Zapata Gulf Marine Corporation, sued her employer under the Jones Act, claiming negligence and unseaworthiness of the vessel on which she served. Chiasson alleged that, while attempting to board the vessel, she suffered permanent injuries from an unwitnessed accident.

[3] By interrogatory during discovery Chiasson asked Zapata whether it had "any still or motion pictures taken of [Chiasson] either before, on, or after the date of the occurrence in this cause of action". In response, Zapata objected on the basis of the "attorney work-product *privilege*" (emphasis added),[fn2] but nonetheless answered that it did not have any. However, surveillance that produced such pictures began less than two months after the response, which was never supplemented.[fn3]

[4] On the first day of trial, Chiasson moved *in limine* to exclude any surveillance evidence, on the basis of the negative interrogatory answer. The court did not then rule, stating instead that, when the issue arose, it would be handled in accordance with the Federal Rules of Evidence and the relevant local rules. At the end of the next day, the court ruled that

Zapata would be allowed to show a surveillance videotape to the jury; and Chiasson's request to review it in advance was denied.**[fn4]** The following morning, after Chiasson's continuing objection was noted, the tape was played. It

**Page 515**

showed Mrs. Chiasson's activities on four separate dates: sweeping the carport, working under a car, entering a store, and buying food.

[5] The jury found that the vessel was seaworthy, but returned a verdict for Chiasson on her negligence claim. It attributed only 10% of the fault to Zapata, however, finding Chiasson contributorily negligent and 90% responsible for the accident. Chiasson's motion for a new trial, based in part on the admission of the film, was denied.

II.

[6] Chiasson contends that the admission of the surveillance film was reversible error, asserting that it was of a substantive, as well as an impeachment, nature, and, alternatively, that, even if only the latter, the non-disclosure procedure violates the Federal Rules of Civil Procedure. We review for abuse of discretion both the admission of the film and the denial of a new trial. *Dixon v. International Harvester Co.,* **754 F.2d 573** (5th Cir. 1985).

[7] Federal Rule of Civil Procedure **26** addresses the broad boundaries of discovery.

> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

[8] Fed.R.Civ.P. **26**(b)(1). This general rule, and the specific provisions that follow, have been described as "one of the most significant innovations" of the federal rules. *Hickman v. Taylor,* **329 U.S. 495**, **500**, **67 S.Ct. 385**, **388**, 91 L.Ed. 451 (1947). The discovery rules serve to "narrow and clarify the basic issues between the parties" and function as a vehicle for locating the sources of relevant facts and eventually, ascertaining those facts. Because of these tools, "civil trials in the federal courts no longer need be carried on in the dark". *Id.* at 501, **67 S.Ct. at 389**.

[9] The federal civil rules generally govern discovery; but the district courts' power to control it is evidenced by Rule 26(c), allowing protective orders to limit or compel discovery. In addition, Rule 83 establishes the procedure for enactment of local rules "not inconsistent with these rules" and further allows district courts to regulate practice before them "in any manner not inconsistent with these rules" or the local rules of the district in which they sit.

[10] This action involves both a local rule and, more directly, a standing order for practice in the Eastern District of Louisiana. Local Rule 9, applicable in the Eastern, Middle and Western Districts of Louisiana, provides that no party to pending litigation may confer with a judge unless notice is first given

to the opposing party. This rule, however, does not apply to "applications normally considered and acted upon *ex parte*." Unif.Dist.Ct.R. 9.

[11] *Ex parte* review of the videotape in issue falls within the exception to Rule 9, as a result of the Eastern District's Pre-Trial Notice, which guides preparation of the pretrial order. *See Andras v. Pontchartrain Materials, Inc.,* 1990 W.L. 19817 (E.D.La. 1990). The Notice requires each party to list the exhibits to be presented at trial. However, "[i]f a party considers he has good cause not to disclose exhibits to be used *solely for the purpose of impeachment,* he may ex parte request a conference with the Court and make his position known to the Court in camera". Pre-Trial Notice, IX., ¶ 10.b. (emphasis added). This is the non-disclosure procedure referred to at trial, when the court stated that "defense counsel in accordance with the Local Rule . . . did the necessary paperwork to have an in camera review of certain videotapes . . . [and] the Court perceived that it was the sort of evidence that is considered by the Rule as far as permitting counsel to hold it out of the notice of witnesses who would be testifying". Implicitly, then, the

**Page 516**

district court had found the videotape to be solely for impeachment and, as such, immune, *inter alia,* from discovery.

[12] The non-disclosure procedure, excluding from discovery in all cases a category of relevant, otherwise discoverable**[fn5]** evidence may well be inconsistent with the Federal Rules of Civil Procedure and precluded under Rule 83.**[fn6]** As stated, because the tape is also relevant to substantive issues, and should have been disclosed on that basis, we need not reach this broader, and most troubling, issue. However, as a backdrop to our finding the tape admissible because of its substantive nature, we first review the law on non-disclosure of impeachment evidence.

[13] There are surprisingly few cases on the discoverability of impeachment evidence; and, until now, apparently none in the federal arena have reached the appellate level.**[fn7]** Those courts requiring that such evidence be disclosed in discovery cite, primarily, the policy of broad discovery, *see, e.g., Daniels v. National R.R. Passenger Corp.,* 110 F.R.D. 160 (S.D.N.Y. 1986), the need of the party seeking disclosure to evaluate the authenticity of such evidence (particularly when, as here, the impeachment evidence is in the form of photographs or videotape), *see, e.g., Snead v. American Export-Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D.Pa. 1973), and the reality that revealing all evidence will probably promote settlement.**[fn8]** *See, e.g., Martin v. Long Island R.R. Co.,* 63 F.R.D. 53 (E.D.N.Y. 1974).

[14] Courts protecting impeachment evidence from disclosure have done so because "[t]he only practical way to preserve the prophylactic effect of impeachment evidence . . . is to keep its existence as well as its contents unknown". *MacIvor v. Southern Pacific Transp. Co.,* No. 87-6424-E, 1988 WL 156743, *2 (D.Or. June 9, 1988). Others, however, have countered this potential problem by requiring that the party to be impeached commit to his position through deposition before the impeachment evidence must be produced. *E.g., Martin,* 63 F.R.D. 53; *Blyther v. Northern Lines, Inc.,* 61 F.R.D. 610 (E.D.Pa. 1973).

[15] In the context of a defendant's surveillance of a personal injury plaintiff, the argument for non-disclosure is that the plaintiff seeks the disclosure of such evidence only when it will probably show that the injury is fabricated or exaggerated. In those cases, it has been said that the potential perjurer has "no cause to complain of surprise if defendants elect to disprove the case on trial instead of in the conference room". *Hikel v. Abousy,* 41 F.R.D. 152, 154 n. 1 (D.Md. 1966) (citing *Thorne v. Good*

**Page 517**

*Humor Ice Cream Co.,* Daily Record (Sup.Ct. of Baltimore, March 26, 1964)). Although that argument has a certain logical appeal, we must recognize that it "proceeds on the premise that . . . witnesses whose testimony is designed to impeach invariably have a monopoly on virtue and that evidence to which the attempted impeachment is directed is, without exception, fraudulent." *Boldt v. Sanders,* **261 Minn. 160**, **111 N.W.2d 225**, **227** (1961).

[16] That premise may well be a faulty one, because it flies directly in the face of the very purpose of discovery. The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial "less a game of blind man's b[l]uff and more a fair contest", *United States v. Procter & Gamble Co.,* **356 U.S. 677**, **682**, **78 S.Ct. 983**, **986**, 2 L.Ed.2d 1077 (1958), where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success.

[17] Furthermore, we note that most of the cases prohibiting discovery of impeachment evidence rely on local rules similar to the pretrial notice at issue here. *See Bogatay v. Montour R.R. Co.,* **177 F. Supp. 269** (W.D.Pa. 1959). One commentator has opined that "[t]o the extent that [*Bogatay*] relied on a local rule it is unsound. It is wholly clear that the scope of discovery provided by the Civil Rules cannot be narrowed by local rule." 8 Wright & Miller, Federal Practice and Procedure: Civil § 2015 n. 45 (1970).

[18] As stated, we need not determine the validity of the Pre-Trial Notice, however, because we conclude that the videotape does not fall within its purview. Even if the non-disclosure procedure is ultimately held consistent with Fed.R.Civ.P. **26**(b), the district court abused its discretion in concluding that the tape was solely for impeachment, rather than being substantive evidence, at least in part.

[19] Substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact. *See,* John P. Frank, *Pretrial Conferences and Discovery — Disclosure or Surprise?,* 1965 Ins. Law J. 661, 664 (1965). Chiasson claims that she has suffered "great physical and mental pain and anguish" and seeks damages for "loss of enjoyment from the activities of her normal life". Certainly, then, the severity of her pain and the extent to which she has lost the enjoyment of normal activity are among the key issues a jury must decide in calculating her damages. Evidence which would tend to prove or disprove such losses must be considered "substantive". *Accord, Crist v. Goody,* **31 Colo. App. 496**, **507 P.2d 478** (1972); *Zimmerman v. Superior Court,* **98 Ariz. 85**, **402 P.2d 212** (1965) (en banc).

[20] Impeachment evidence, on the other hand, is that which is offered to "discredit a witness . . . to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony." Frank, *supra,* at 664. Chiasson testified at trial that her injuries have interfered with her daily activities because she "can't do anything for too long of a period of time. If [she does], then it starts acting up." She reiterated that activity "starts to aggravate [her] problem." Zapata contends that the videotape of Chiasson shopping and working under her car contradicts these statements and, therefore, discredits her testimony. As such, it labels the tape impeachment evidence.

[21] Having reviewed the videotape, as well as Chiasson's testimony, we are not convinced that the former makes the latter less believable. Chiasson testified only that she is unable to carry on daily activities without pain, not that she is entirely unable to do so. The tape shows her carrying on daily activities. It was

taken at some distance and has no sound component. It requires quite a leap to conclude that because she engages in routine activities, *ergo,* she does so without pain. In short, we question whether the proffered videotape discredits her testimony at all. Assuming, however, that the tape is of some impeachment value, it is also of a substantive nature. Because the tape is, at the very least in part substantive, it should have been disclosed prior to trial, regardless

**Page 518**

of its impeachment value. The district court abused its discretion by allowing non-disclosure and admitting the tape into evidence.

[22] Zapata contends that admission of the tape, if erroneous, was harmless. *See* Fed.R.Evid. **103** (not reversible error unless substantial right affected). We disagree. Its importance is obvious.**[fn9]** Moreover, at oral argument here, both sides conceded that the case would, in all probability, have settled if Chiasson had known about the video. Any error having such a fundamental effect on the outcome of the litigation cannot be considered harmless.**[fn10]**

III.

[23] Accordingly, the judgment is VACATED and the case is REMANDED for a new trial.

[24] VACATED AND REMANDED.

[fn2] The work product doctrine, first articulated by the Supreme Court in *Hickman v. Taylor,* **329 U.S. 495**, **67 S.Ct. 385**, 91 L.Ed. 451 (1947), was codified in 1970 as Federal Rule of Civil Procedure **26**(b)(3). The rule provides that attorney work product is discoverable "only upon a showing [of] substantial need . . . and [inability to obtain the substantial equivalent] without undue hardship." This doctrine creates a form of qualified immunity from discovery for such materials, *see, e.g.,* Elizabeth Thomburg, *Rethinking Work Product,* 77 Va.L.Rev. 1515, 1519 (1992), but does not label them "privileged" and, thus, outside the scope of discovery under Rule 26(b)(1).

[fn3] Of course, there is a duty to seasonably supplement "if the party obtains information upon the basis of which . . . the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment". Fed.R.Civ.P. **26**(e)(2). Zapata apparently believed that the pretrial notice in issue, discussed *infra,* allowed non-disclosure and therefore, the failure to supplement did not constitute a "knowing concealment".

[fn4] The private investigator who conducted the surveillance testified that he (or members of his firm) observed Chiasson over a nine-month period, for a total of 129 hours. Approximately four hours of activity were taped. From that, a 27-minute tape was prepared for trial. Chiasson was not given an opportunity to view the entire four hours and select additional portions to be shown.

[fn5] As noted, as part of its response to Chiasson's interrogatory, Zapata claimed that any surveillance material need not be disclosed, because it was protected attorney work-product. *See* Rule 26(b)(3). That claim is not made here.

[fn6] We recognize, of course, that Rule 26(c) allows the scope of discovery to be limited upon a showing of good cause.

[fn7] This court, however, was presented with a closely analogous situation in *Morgan v. Commercial Union Assurance Cos.,* [606 F.2d 554](#) (5th Cir. 1979), which involved an award of damages for back injuries allegedly sustained in an accident. At trial, the plaintiff testified that he had never experienced back trouble before the accident. The defendant sought to introduce the testimony of a doctor who had treated the plaintiff for a back disorder before the accident, but the testimony was excluded because it had not been disclosed before trial.

   The defendant asserted disclosure was not required, because the pretrial order called only for identification of potential witnesses other than "rebuttal witnesses". We affirmed, holding that the doctor was not a "rebuttal witness", and noting that "a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a `rebuttal witness,' or anything analogous to one". *Id.* at 556.

   We acknowledged that *Morgan,* like this case, might sometimes yield questionable results: "Our discovery and disclosure laws and rules, designed to end trial by ambush, do provide hiding places for modern `bushwackers.' They are, however, the law." *Id.* at 556.

[fn8] Courts allowing discovery of impeachment evidence have done so in varying degrees. Some have held that both the existence and the substance of impeachment evidence are, in all instances, discoverable, *e.g., Daniels,* 110 F.R.D. 160; others have held that while the existence of such evidence is discoverable, the substance need be disclosed only if it will be used at trial, *e.g., DiGiacobbe v. National R.R. Passenger Corp.,* No. 86-534, 1987 WL 11227 (E.D.Pa. May 21, 1987); *Dodson v. Persell,* [390 So.2d 704](#) (Fla. 1980).

[fn9] Indeed, Zapata conceded the tape's importance at oral argument:

  We thought that if we would show the videotape to the
  jury without disclosure to the other side, it would
  have much greater impact on any verdict and it came
  out as we thought it would — we had a real low
  judgment against us.

[fn10] This is further evidence of the Pre-Trial Notice's possible inconsistency with the Federal Rules of Civil Procedure. Rule 1 states that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action". Fed.R.Civ.P. [1](#). If disclosure would have prompted settlement, then the non-disclosure procedure seems to thwart the policy articulated in Rule 1.

Copyright © 2009 Loislaw.com, Inc. All Rights Reserved