**United States 3rd Circuit Court of Appeals Reports**

CURTIS v. A. GARCIA Y CIA., 272 F.2d 235 (3rd Cir. 1959)

Margaret Jean CURTIS, Administratrix d.b.n. of the Estate of William Thomas, Deceased; Luther Montgomery, George Hudson, Willie Wilson, Robert Brown, Anthony Taylor, Daniel Seawright, et al., Plaintiffs, v. A. GARCIA Y CIA., Ltda., Defendant and Third-Party Plaintiff-Appellee (Jarka Corporation of Philadelphia, Third-Party Defendant-Appellant).

Nos. 12472-12479.

United States Court of Appeals, Third Circuit.

Argued October 23, 1958.

Decided February 24, 1959.

Reargued October 5, 1959.

Decided on Rehearing December 9, 1959.

**Page 236**

George E. Beechwood, Philadelphia, Pa. (Michael A. Foley, Beechwood, Lovitt & Murphy, Philadelphia, Pa., on the brief), for appellant.

Mark D. Alspach, Philadelphia, Pa. (Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This proceeding is a third-party action by a defendant shipowner, A. Garcia y Cia, seeking indemnity from a stevedoring company, Jarka Corporation, named as a third-party defendant, for the shipowner's loss in the form of damages recovered by longshoremen for shipboard injuries suffered during the course of their employment by Jarka. The accident occurred when the longshoremen were unloading one hundred pound bags of sugar from the hold of Garcia's ship. A part of the stowage collapsed and the heavy bags fell upon the men working nearby.

At the trial of the principal claim of the longshoremen against Garcia a jury found that negligence on the part of Garcia was a responsible cause of the accident. In seeking indemnity in the present third-party proceeding Garcia has claimed and undertaken to prove that negligent procedure of Jarka in unloading cargo was the direct cause of the accident, while Garcia's own negligence consisted merely in failure either to prevent Jarka from making the hold an unsafe place for working or to observe and
**Page 237**
correct the hazard created by Jarka's operation.

If Garcia has succeeded in proving the occurrence of the accident in the manner it claims, it is as a matter of law entitled to be indemnified by Jarka. It is established and conceded that Jarka contracted with Garcia to unload the cargo in question. Such a general undertaking of an independent contractor to perform a job carries with it a promise, implied in fact, that the operation will be conducted in a safe, skillful and generally workmanlike manner. Though such a contract may contain no express

agreement to indemnify, a breach of this warranty of workmanlike performance, which results in loss to the owner by way of liability to a third person in damages, is redressed by imposing an obligation to indemnify upon the responsible contractor. This is the essential holding of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Co., 1956, **350 U.S. 124**, 76 S.Ct. 232, 100 L.Ed. 133. It matters not, as between the parties to the indemnity claim, that in such a case the shipowner's duty to shipboard workers to use care to provide a safe working place may have been breached by failure to prevent the workmen's own employer from making the place unsafe. Here again the Ryan case is precisely in point:

> "Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense. Respondent's failure to discover and correct petitioner's own breach of contract cannot here excuse that breach." 350 U.S. 134-135, 76 S.Ct. 232, 238.

But there is an additional factor in the present case which Jarka views as significant. While the jury found in answer to a specific interrogatory that the method of unloading used by Jarka was negligent, answering another interrogatory it also found that this was a customary method of unloading at the port in question, and that Garcia was aware of the practice. Jarka argues that the finding as to accepted usage negatives the finding of negligence. However, such custom, though it may be evidence of reasonableness, is not conclusive. The jury here had sufficient basis in the testimony to support a conclusion that the unloading procedure used by Jarka did not satisfy the standard of reasonable care, despite the fact that it was a method often used.

Beyond this it is argued that in employing Jarka to unload the ship Garcia impliedly agreed to the use of customary procedure, particularly that which is said to have caused the accident here. Thus, it is reasoned that there could have been no implied warranty to follow a different safer procedure. But this argument overlooks the essential nature of the relation between a person having work done and an independent contractor he engages for that purpose. The person having the job done is normally not an expert in the work to be performed. He does not have the contractor's competence to direct and control the method of performance. Thus, the fact that he does not stipulate against a method widely used in the past does not mean that he directs the use of that method or accepts any responsibility for it. He is simply taking no position on a matter which is the independent contractor's business and within the special knowledge and skill of his calling. Cf. Jeffries v. De Hart, 3 Cir., 1900, 102 F 765; Cornec v. Baltimore & Ohio R., 4 Cir., 1931, **48 F.2d 497**.

It remains to be considered whether Garcia's theory of the way the accident occurred is supported by the evidence and established by the verdict. More particularly, has it been adequately established that Garcia's liability to the longshoremen resulted from its failure either to prevent Jarka from making the ship's hold an unsafe place to work or to correct the dangerous situation after Jarka

**Page 238**
had created it? The jury to which the third-party claim was submitted on special interrogatories found, in accord with Garcia's contention, that prior to the unloading the stowage of the cargo in the area of the accident was safe and proper. A separate interrogatory asked: "Did the negligence of the plaintiff shipowner, which was a contributing factor in bringing

about the accident, result from any failure of the stevedoring company to perform its obligation to discharge cargo in a reasonably safe manner?" To this question the jury answered: "Yes". Thus, the jury's findings, if acceptable, sustained Garcia's contention as to the nature and the interrelation of the negligent acts and omissions of the parties.

Seeking to avoid these findings Jarka argues that a contrary finding as to the nature of Garcia's negligence was the basis of the original judgment against Garcia, entered after a trial in which both Garcia and Jarka participated. The argument continues that this finding became res judicata, so that the question was not open for relitigation at the trial of the third-party claim. Cf. Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, **206 F.2d 784**. However, an examination of the findings in the first case does not show that they are inconsistent with the above stated findings in the present proceeding.

At the end of the first trial the jury found, without specifying the nature of the negligence, that there was some "negligence on the part of the defendant [Garcia] which was a contributing factor in bringing about the accident." The jury also found that no "unseaworthiness on the part of the ship was a contributing factor in bringing about this accident." Of course improper or dangerous stowage would constitute an unseaworthy condition. Thus, these findings can reasonably be read and understood as reflecting a conclusion that the accident resulted solely from the manner of unloading and the unnecessary creation of an unsafe condition in that process. True, this court in its opinion on appeal from that decision indicated its view that on the evidence it was difficult to escape the conclusion that the stowage had been unseaworthy before the unloading began. See Curtis v. A. Garcia Y Cia., 3 Cir., 1957, **241 F.2d 30**, 34. But we were not and are not the triers of fact. And the conclusion which we might have drawn on the evidence may well not have been the conclusion of the jury, as the foregoing analysis of the verdict shows. Thus, the failure of the jury in the first case to specify or clearly indicate what conduct of Garcia constituted negligence prevented the judgment in that case from providing any proper basis for a claim that this issue as to the nature of Garcia's negligence had become res judicata. The matter was properly submitted to the jury which heard the third-party claim and its findings must now be accepted as conclusive.

All other points made in support of this appeal have been considered, but we find no reversible error.

The judgment will be affirmed.

KALODNER, Circuit Judge (dissenting).

I disagree with the majority for these reasons:

The jury's verdict at the first trial, in which both Garcia (owner of the vessel) and Jarka (the stevedore) were parties, established Garcia's negligence. It is true that the jury, in its answer to the interrogatories submitted to it, did not disclose the specific premise of its finding of negligence, but on appeal we affirmed that finding on our determination that the evidence established that the vessel's cargo had been negligently stowed so as to "create a danger to those who attempted its removal by the same method as had been previously employed on this vessel at this port." Curtis v. A. Garcia Y Cia, 3 Cir., 1957, **241 F.2d 30**, 34.

At the first trial, brought by the injured longshoremen against Garcia, and in which Jarka had been impleaded on the ground that it was liable to Garcia by way of contribution or indemnity, both Garcia and Jarka actively defended.

**Page 239**

Garcia's defense was proper stowage, improper discharge of the cargo by Jarka, and absence of negligence on its part; Jarka's position was that the cargo had been improperly stowed by others, its discharge of the cargo was in accordance with customary and established practice and there was no negligence on its part. Due to the fact that the trial judge, at the first trial, at the close of all of the evidence by all parties, granted Jarka's motion to dismiss as to it, there was no finding by the jury as to Jarka. Subsequently the trial judge granted Garcia's motion to vacate, set aside the dismissal of its third-party complaint against Jarka and granted a new trial which resulted in a verdict for indemnity and this appeal.

What we said in Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, [206 F.2d 784], requires reversal of the judgment in the indemnity action on the ground that the jury's verdict in the first trial became res judicata.

We there said (At page 795):

> "Where * * * the indemnitee and the indemnitor are co-defendants actively participating in the defense of the original action * * * then in subsequent litigation between them both indemnitor and indemnitee are bound by the findings necessary to the judgment in the action."[fn1]

To the same effect see 30A Am.Jur., Judgments, § 424.[fn2]

Independent of the foregoing, I am of the opinion that Garcia cannot recover against Jarka because it had knowledge of and acquiesced in what the jury in the instant case found to be a negligent method of discharging the cargo. It was Garcia's duty to see to it that the cargo was discharged in a proper manner and as counsel for Jarka has pointed out "If Jarka was at fault in the method used, Garcia was equally at fault with Jarka" and "was in pari delicto."

What we said in Hagans v. Farrell Lines, Inc., 3 Cir., 1956, [237 F.2d 477], 482, is applicable here:

> "Knowledge of and acquiescence in the existence of a defective appliance or condition may prevent the fruition of the right to indemnity. Restatement, Restitution, Sections 93 and 95, and Reporters' Notes * * *.
>
> "Where the parties have violated similar duties to the injured person, neither is entitled to relief against the other."

The Supreme Court of the United States in Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., 1958, [355 U.S. 563], 78 S.Ct. 438, 2 L.Ed.2d 491 has indicated that negligence on the part of the indemnitee vessel precludes recovery from the indemnitor.

Said the Court (At page 567 of 355 U.S., at page 441 of 78 S.Ct.):

> "If in that regard respondent [stevedore] rendered a substandard
> **Page 240**
> performance which led to forseeable liability of petitioner [vessel], the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery."* (emphasis supplied)

Here the evidence, earlier stated, established Garcia's knowledge of the methods used in the discharge of the cargo by Jarka. Garcia's captain noted in the ship's log that:

> "The discharge was carried out in the manner accustomed in the Port of Philadelphia on this ship in the many trips of the last four years and several times in the same pier 27 North on the north side * * *."

Moreover, the jury in the instant case found as a fact in answer to Interrogatory No. 7 that the method used by Jarka was known to Garcia in the early part of January, 1952 — about a month before the discharge of the cargo on February 14, 1952.

The fact that Garcia, a month in advance of the discharge of the cargo, was advised by Jarka that the discharge would be accomplished in the precise method and manner used, makes the reliance of the majority on Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, **350 U.S. 124**, 76 S.Ct. 232, 100 L.Ed. 133, misplaced. In the Ryan case, the vessel had failed to discover and correct the stevedore's negligent stowage of the cargo and it was held that such failure could not excuse the breach of the stevedore's contractual duty to the vessel to properly perform its duties. Here, on the other hand, Garcia "discovered" not only at the time of the actual discharge of the cargo, but a month in advance of it, the methods to be used by Jarka which the jury found to be negligent.

These principles are well-settled:

Indemnity actions are based on the violation of some contractual duty, expressed or implied.**[fn3]**

The cardinal rule in the interpretation of contracts is that the intention of the parties should be ascertained and enforced; in the absence of specific provision, or in the case of ambiguity, recourse may be had to circumstances surrounding the transaction, the conduct of the parties, and the practical construction given to the contract by the parties as evidenced by their course of dealing under it.**[fn4]**

In the instant case the parties concede that the written contract for the discharge of the cargo did not even mention the subject of indemnity as between Garcia and Jarka. It is also undisputed that the contract did not specify the method or manner of discharge of the cargo. That being so, in application of the principles stated, recourse must be had to the circumstances surrounding the negotiation of the contract and the practical construction given to it by the parties as evidenced by their conduct with respect to it.

As previously stated, the jury specifically found, in response to Interrogatory No. 7, that when the contract was entered into on January 17, 1952, both Garcia and Jarka knew of the "usages" followed by Jarka in the discharge of the cargo on February 14, 1952. Buttressing this fact finding is the undisputed evidence that Garcia's captain noted in the ship's log that "the discharge was carried out *in the manner accustomed in the Port of Philadelphia on this ship in the many trips of the last four years and several times in the same pier* 27 North on the north side." (Emphasis supplied.)

In view of the foregoing it must be found that the contract contemplated the use by Jarka of the methods it applied in the discharge of the cargo. That being so, it cannot be said that Jarka violated a contractual duty which afforded Garcia a right to indemnity. The mere circumstance that the jury found, in answer to

**Page 241**
Interrogatory No. 2 that the "method of unloading * * * was unsafe and improper" and was the "primary and active cause of the accident" had no relation to, nor bearing on, the issue of indemnity as between Garcia and Jarka.

In sum, Garcia got what it bargained to get from Jarka and cannot recover indemnity for a breach which did not occur.

For the reasons stated I would reverse the judgment of the District Court.

[fn1] See also Moyer v. Aetna Life Insurance Co., 3 Cir., 1942, **126 F.2d 141**, 143, where we said:

"These contentions need not be discussed again. The law of the case with respect to them was settled by this court upon the first appeal."

[fn2] "§ 424. Judgment as Conclusive Against Indemnitee in Action Against Indemnitor. —

"The authorities which have considered the distinct question hold unanimously that an indemnitee, in his action to recover from the indemnitor the amounts paid in satisfaction of a judgment obtained against him by an injured person, is bound by all findings without which the judgment could not have been rendered, and that, if the judgment in the earlier action rested on a fact fatal to recovery in the action over against the indemnitor, the latter action cannot be successfully maintained. The rule applies particularly where the indemnitee himself places the former judgment in evidence in his action against the indemnitor. These rules have been aplied where the right to indemnity was based upon an express agreement, irrespective of whether the earlier action was founded on contract or on tort. The rules have also been applied where the right to indemnity was claimed to arise from operation of law."

[fn3] Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., 1958, **355 U.S. 563**, 565, 78 S.Ct. 438; Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, **350 U.S. 124**, 130, 76 S.Ct. 232; Brown v. American-Hawaiian S.S. Co., 3 Cir., 1954, **211 F.2d 16**, 18, rehearing denied.

[fn4] Restatement, Contracts, § 235; Chesapeake & Ohio Canal Company v. Hill, 1872, 15 Wall. 94, 99-100.

On Rehearing.

Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN, KALODNER, STALEY, HASTIE and FORMAN, Circuit Judges.

HASTIE, Circuit Judge.

On rehearing before the court en banc the reasoning and the conclusion of the division which originally considered and decided this appeal seem sound to a majority of the court. Accordingly, we adhere to the original opinion and decision. At the same time additional observations on two points seem appropriate.

The original opinion on this appeal has already dealt with and rejected the argument that language used by this court in an appeal on the principal claim in this three-party litigation negatives the explicit finding of the jury which originally heard the three-party controversy that the ship upon which the accident occurred was seaworthy. We point now to a separate and additional consideration which reinforces that conclusion.

While the third-party claim now under consideration was actually litigated in an original three-party trial, it was

dismissed at the end of that trial.[fn1] Thereafter, only the original plaintiff and defendant were parties to an appeal upon which the judgment as between those parties was affirmed. Curtis v. A. Garcia y Cia, 3 Cir., 1957, 241 F.2d 30. In these circumstances no mere comment on that occasion by the appellate court about the trial evidence should bind the third-party defendant who was not and could not have been a party to the appeal. While the original judgment on the principal claim, as affirmed, left the jury's finding of negligence of the original defendant as an authoritatively established fact for purposes of the retrial of the third-party claim, it would be unfair to go further and employ mere judicial comment on the evidence made on the original appeal in the absence of the third-party defendant as a pronouncement binding against the absentee.

A second point which was considered on the first hearing but not discussed in the court's opinion has again been urged strongly and, therefore, is analysed here. Appellant says that the only evidence of negligence on its part appears in incompetent testimony of an expert witness.

In fact there was substantial evidence of negligence in the unloading operation apart from and independent of the testimony of the expert in question. There was evidence of inadequate supervision of the unloading by the two supervisory employees of appellant assigned to this job. It was testified that during the period which immediately preceded the collapse of the stow in the course of unloading these supervisors had diverted their attention from this unloading to a separate job of loading railroad cars being performed by the appellant on the pier nearby. There was also testimony by a second expert that the method of unloading which left a high unsupported wall of sugar bags standing near the working stevedores was dangerous and created an unnecessary and unreasonable risk of collapse at any time. None of this involved or depended upon the allegedly incompetent testimony of the first expert witness, a Captain Andersen.

In addition, we find no prejudicial error in the testimony of Captain Andersen. He qualified as an experienced

**Page 242**

marine surveyor and superintendent who, among other experiences, had instructed military and naval personnel in stevedoring operations during the second World War. A hypothetical question was put to him, stating and assuming conditions and circumstances indicated by the testimony, and asking his opinion as to the cause of the collapse of the stow. He replied: "My opinion is that the wall of sugar that collapsed was due (*sic*) to it being struck by an outside force, or foreign force."

On direct examination the witness offered no opinion as to what "outside force" caused the collapse. However, on cross-examination counsel for appellant sought to have the witness identify the specific outside force which in his opinion struck the sugar. In response to this inquiry Captain Andersen stated that in his opinion it was the cargo runner loaded with sugar being lifted from the hold which swung against the face of the stow. After this had been elicited on cross-examination he was asked on re-direct examination how he arrived at the "belief that such a thing would happen during this discharge." He then explained the construction and operation of the lifting structures and tackle, how the load was pulled sideways as well as vertically, that no guy lines were used and that in these circumstances it was unavoidable that the load being lifted would frequently strike the adjacent standing wall of sugar bags.

The first noteworthy circumstance in connection with this testimony is that the direct examination of the witness elicited no more than the opinion that in the circumstances revealed in the evidence some outside force would be necessary to cause the

collapse of the piled bags of sugar. Certainly an expert would have meaningful judgment beyond that of a layman as to the stability of a described stow standing without lateral support. His opinion that an outside force was needed to dislodge the stow was a meaningful and proper aid to the jury's fact finding. Cf. Bram v. United States, 1897, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568; Hartford Fire Ins. Co. v. Empire Coal Min. Co., 8 Cir., 1929, 30 F.2d 794; 7 Wigmore, Evidence, 3d ed. 1940, § 1976. In addition, it seems more helpful to the defense than hurtful for the jury to hear an opinion that some outside force would be required to cause the stow from which the defendant had removed lateral support to collapse. A contrary opinion would certainly have been very damaging.

What may well have been damaging to the defendant was the opinion of the witness as to the particular outside force which operated in this case. But the defense itself asked for that identification after the direct examination of the witness had ended and, having received it, cannot complain that it was hurtful. Thereafter, all plaintiff's counsel did on redirect examination was to obtain a more detailed explanation and justification of the answer the defense had elicited in terms of structures and forces present in this case.

Finally, having asked for and obtained this damaging testimony, the defense sought to nullify it by presenting the operator of a winch during this unloading who testified that he had not noticed any striking of the stow by moving drafts of cargo. Though this was far from a categorical statement that no striking had occurred, the court in its charge specifically told the jury to disregard the opinion of the expert if the testimony of persons present at the unloading was persuasive that there had been no striking of the stow. Beyond that there was a correct general charge as to the role and significance of expert testimony.

In these circumstances, we are satisfied that the court committed no prejudicial error, but rather that any hurt the defense may have suffered was self inflicted. We adhere to our affirmance of the judgment of the district court.

[fn1] Later, the trial judge concluded that he should not have dismissed the third-party claim. Accordingly, he reinstated it and directed that it be tried again in the separate proceeding which has led to the present appeal.


KALODNER, Circuit Judge (dissenting).

I adhere to my dissent to the original opinion and decision in this case, but in
**Page 243**
view of the "additional observations" presently made by the majority on the score of the jury's findings at the first trial which resulted in a recovery by the injured longshoreman against Garcia (owner of the vessel) I should like to add these further observations:

The jury at the first trial allowed recovery to the injured longshoreman on the ground that Garcia was negligent. The majority, in its original opinion, speculated that the jury's finding of negligence was based on its "conclusion that the accident resulted solely from the manner of unloading and the unnecessary creation of an unsafe condition in that process." In doing so it rejected this Court's earlier conclusion in Curtis v. Garcia y Cia, 3 Cir., 1957, 241 F.2d 30, 33, that the jury's finding of negligence was based on Garcia's permitting the original stowage of the cargo to have been negligently made.

Whether the jury's verdict of Garcia's negligence in the longshoreman's case was based on Garcia's permitting faulty

stowage or faulty discharge of the cargo is irrelevant.

What is critical is that Garcia was guilty of negligence with respect to the injuries suffered by the longshoreman. Garcia's officers were present when the cargo was stowed and they were present when it was discharged. They should have seen to it that proper methods were used on both occasions, and their failure to do so constituted negligence, and negligence either in stowage or discharge barred Garcia's right to indemnity against the third-party defendant (stevedore) in the instant appeal.

Assuming, arguendo, that Garcia's negligence consisted in its permitting faulty discharge of the cargo, as the jury specifically found in answer to a separate interrogatory, if a jury of laymen could ascertain negligence in the method of discharge, Garcia could certainly have made a similar determination and the undisputed evidence established that it had knowledge of the method to be used in the discharge more than a month before it occurred and its officers were present when the discharge took place. The entry made in the vessel's log by Garcia's captain established the latter fact beyond question.

No proposition is better settled than that restitution is denied one who "from his knowledge of the facts, should have been aware that * * * a risk existed."

The rule was well stated as follows under Comment *a* of § 95 of the Restatement of Restitution:

> "In all of these situations the payor is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable. *On the other hand, if the condition was such as to create a grave risk of serious harm to third persons or their property and the payor was or, from his knowledge of the facts, should have been aware that such a risk existed, his failure to make the condition safe is reckless and he is not entitled to restitution* (see § 88(b))." (Emphasis supplied.)

If the third-party defendant "rendered a substandard performance which led to foreseeable liability" of Garcia, as the jury specifically found in the instant case, Garcia's knowledge of the substandard methods used in discharging the cargo, both prior to and at the time of the accident, constituted "conduct on its part sufficient to preclude recovery" against the third party defendant. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., 1958, **355 U.S. 563**, 78 S.Ct. 438, 2 L.Ed.2d 491.

Judge STALEY notes his concurrence with this dissent and that previously filed.

**Page 396**

Copyright © 2009 Loislaw.com, Inc. All Rights Reserved