**United States 8th Circuit Court of Appeals Reports**

JOHNSON v. DAYTON ELECTRIC MANUFACTURING CO., 140 F.3d 781 (8th Cir. 1998)

Melissa Johnson, individually and as Executor of the Estates of Marissa and Shari Williams, and as next friend of Antonio, Sherice, and Michael Williams, minors; Mildred Jackson, as next friend of Tamica Jackson, a minor, Plaintiffs-Appellees, v. Dayton Electric Manufacturing Company, Defendant-Appellant.

No. 97-2586

United States Court of Appeals, Eighth Circuit.

Submitted December 12, 1997

Decided April 3, 1998

Rehearing and Suggestion for Rehearing

En Banc Denied May 7, 1998.

Appeal from the United States District Court for the Eastern District of Arkansas.

**Page 782**

Paul E.B. Glad, San Francisco, CA, argued (Nancy A. Solotkin and Donald H. Bacon, on the brief), for Defendant-Appellant.

Barry A. Bryant, Texarkana, TX, argued (Michael C. Angel, on the brief), for Plaintiffs-Appellees.

Before BOWMAN, WOLLMAN, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

[1] Dayton Electric Manufacturing Company ("Dayton Electric") appeals the district court's order refusing to set aside an entry of default. Concluding there is good cause to set aside a default caused by Dayton Electric's negligent failure to file a timely answer, we reverse.

[2] In August 1994, a fire killed and injured children at Melissa Johnson's home in Little Rock. The fire apparently started in a window fan. In March 1996, Johnson's attorney, Barry Bryant, wrote Dayton Electric suggesting settlement of a products liability claim that Dayton Electric had manufactured the defective fan's motor. His letter was referred to Jane Hinton-Kedo, an in-house attorney for Dayton Electric's parent company, W.W. Grainger, Inc., located in Lincolnshire, Illinois. Hinton-Kedo contacted Bryant and later asked him to provide "the report of your product identification expert." She contacted the Little Rock fire marshal and arranged for a Grainger product support specialist to examine the window fan and motor on April 17. The product specialist reported to her that the motor he examined was not a Dayton Electric/Grainger product. She also initiated contact with possible manufacturers of the fan, including Lasko Metal Products, Inc., which reported in July that the fan in the fire was at least twenty-five years old and was not manufactured by Lasko.

[3] On August 12, Bryant sent Hinton-Kedo a copy of a complaint against Dayton Electric and Lasko. He filed the complaint on August 15 and served Dayton Electric's agent

**Page 783**

for service in Arkansas. In September, Hinton-Kedo informally asked Bryant for a six-month extension to file Dayton Electric's answer. Bryant wrote confirming a thirty-day extension to October 18. On November 4, with no answer filed, Bryant filed a motion for default judgement against Dayton Electric, serving only local counsel for Lasko. Hinton-Kedo first learned of this motion on November 25 when she called Bryant to "make sure we . . . do not have a default problem." Bryant refused to withdraw the motion. Dayton Electric retained local counsel and filed an answer the next day, one day after the district court entered an order granting "the motion for default judgment." The court deferred a hearing on damages until after trial of the claim against Lasko. Johnson immediately filed a motion for non-suit as to Lasko.

[4] On January 2, 1997, Dayton Electric filed a motion to set aside the default judgment. It first argued that the court's order should be considered an entry of default under Fed.R.Civ.P. **55**(a) that may be set aside "[f]or good cause shown" under Rule 55(c). Turning to the merits, Dayton Electric argued that Johnson was not prejudiced by the relatively brief delay and that Dayton Electric had evidence of a meritorious defense, namely, that it did not manufacture the fan or motor in question. Dayton Electric further argued that the default was not willful or culpable. It explained that Hinton-Kedo notified Grainger's product liability insurer of Johnson's claim in April 1996, kept the insurer informed of Grainger's investigation, and notified the insurer when Bryant granted an extension of time to answer to October 18. On October 11, the insurer tendered Dayton Electric's defense to Lasko, which refused the tender on October 22. Hinton-Kedo assumed the insurer would hire local counsel who would file a timely answer, based upon her experience under long-standing guidelines for the insurer's handling of lawsuits against Grainger and its subsidiaries. However, the insurer had recently been acquired, and this file was assigned to a technical specialist from the acquiring insurer's work force who thought his work was done when he told Hinton-Kedo that Lasko had refused the tender of defense. Hinton-Kedo did not realize Dayton Electric had defaulted until her November 25 phone call to Bryant.

[5] The district court denied Dayton Electric's motion to set aside. The court agreed its initial order should be construed as an entry of default. But the court concluded that Dayton Electric "showed a sufficient disregard of a deadline to constitute willfulness," that setting aside the default would prejudice plaintiffs because of "their expectations concerning the default [and] their belief in the integrity of the system," and that these factors outweighed Dayton Electric's showing of a meritorious defense. The court granted plaintiffs' motion to non-suit Lasko and advised that it would schedule a jury trial of damages against Dayton Electric. We granted Dayton Electric permission to take this interlocutory appeal on the default issue under **28 U.S.C. § 1292**(b).

[6] When a party "has failed to plead or otherwise defend" against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgement under Rule 55(b). See generally 10 Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d § 2682 (1983). Thus, Bryant was wrong to move for a default judgment and was rather underhanded to make that motion without notice to an attorney with whom he had been in contact for seven months and to whom he had furnished a "courtesy" copy of the complaint. The district court properly construed its initial order as an entry of default.

[7] Rule 55(c) provides that the district court may set aside an entry of default "[f]or good cause shown," and may set aside a default judgment "in accordance with Rule 60(b)." Although the same factors are typically relevant in deciding whether to set aside entries of default and default judgments, "[m]ost decisions . . . hold that relief from a default judgement requires a stronger showing of excuse than relief from a mere default order." Connecticut Nat'l Mortgage Co. v. Brandstatter, **897 F.2d 883**, **885** (7th Cir. 1990); accord Shepard Claims Serv., Inc. v. William Darrah & Assocs., **796 F.2d 190**, **193-94** (6th Cir. 1986); Meehan v. Snow, **652 F.2d 274**,

**Page 784**
276-77 (2d Cir. 1981). This is a sound distinction. There is a "judicial preference for adjudication on the merits," Oberstar v. F.D.I.C., **987 F.2d 494**, **504** (8th Cir. 1993), and it
is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits. Dayton Electric is entitled to the more lenient "good cause" standard in considering the denial of its motion to set aside.

[8] Traditionally, in deciding issues of this kind, our court and others have looked at whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused. See Hoover v. Valley West D M, **823 F.2d 227**, **230** (8th Cir. 1987). The Supreme Court recently addressed this subject in Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership, **507 U.S. 380** (1993).

[9] Applying the more stringent standard in Rule 60(b)(1),**[fn1]** the Court held: (i) "excusable neglect" includes "late filings caused by inadvertence, mistake or carelessness" (thereby resolving a conflict in the circuits by overruling decisions of this court requiring proof of circumstances beyond the moving party's control); and (ii) whether conduct is excusable is an equitable determination that "tak[es] account of all relevant circumstances surrounding the party's omission." **507 U.S. at 388**, **395**; see Fink v. Union Central Life Ins. Co., **65 F.3d 722**, **723-24** (8th Cir. 1995). The Court specifically enumerated some factors, which we applied in In re Jones Truck Lines, Inc., **63 F.3d 685**, **687** (8th Cir. 1995): "the danger of prejudice to the [plaintiff], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the [Rule 60(b)] movant, and whether the movant acted in good faith." **507 U.S. at 395**. In addition, we believe the existence of a meritorious defense continues to be a relevant factor after Pioneer. Such a showing "underscore[s] the potential injustice of allowing the case to be disposed of by default," 10 Wright, Miller, and Kane at § 2697, thus triggering "the incessant command of a court's conscience that justice be done in light of all the facts.'" Hoover, **823 F.2d at 230**, quoting Rosebud Sioux Tribe v. A & P Steel, Inc., **733 F.2d 509**, **515** (8th Cir.), cert denied, 469 U.S. 1072 (1984).

[10] 1. In applying this standard, we focus heavily on the blameworthiness of the defaulting party. The district court found no bad faith but concluded Dayton Electric's disregard of a deadline constituted willfulness. But "willful" is too ambiguous a term to define this inquiry. Our cases have consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a "marginal failure" to meet pleading or other deadlines. We have rarely, if ever, excused the former. See Hall v. T.J. Cinnamon's, Inc., **121 F.3d 434** (8th Cir. 1997); Inman v. American Home Furniture Placement, Inc., **120 F.3d 117** (8th Cir. 1997); McMillian/McMillian, Inc. v. Monticello Ins. Co., **116 F.3d 319** (8th Cir. 1997); Ackra Direct Mktg. Corp. v. Fingerhut Corp., **86 F.3d 852** (8th Cir. 1996). But we have often granted Rule 55(c) and Rule 60(b) relief for marginal failures when there were meritorious defenses and an absence of prejudice. See In re Jones Truck Lines, **63 F.3d at 687-88** (thirty-two day delay caused by a mistake; default judgement reversed); United States v. Harre, **983 F.2d 128**, **130** (8th Cir. 1993) (marginal failure to meet a deadline; default judgement reversed); Hoover, **823 F.2d at 230**; Swink v. City of Pagedale, **810 F.2d 791** (8th Cir.), cert. denied, 483 U.S. 1025 (1987).

[11] In this case, we have a good faith, relatively brief default in the filing of an initial pleading, caused by poor communication between Dayton Electric and its insurer, and cured within one day once Dayton Electric learned of its mistake. Without attempting
**Page 785**
to fix blame, the combined conduct of Dayton Electric's in-house attorney and its insurer was careless, risking precisely the adverse

result rendered by the district court. But it was not contumacious, it did not exhibit an intentional flouting or disregard of the court and its procedures, and it only briefly delayed the litigation. Thus, while we do not approve of this sort of cavalier approach to litigation, we conclude that Dayton Electric was guilty of only a marginal failure for which relief from default should be granted if it has a meritorious defense and Johnson will not suffer significant prejudice.

[12] 2. The district court concluded that Dayton Electric satisfied the meritorious defense factor when it presented an affidavit by the Grainger employee who inspected the fan and motor that allegedly caused the fire opining they did not match Grainger or Dayton Electric parts. We agree. Johnson argues this conclusion is contradicted by her expert, but the issue is whether the proffered evidence "would permit a finding for the defaulting party," not whether it is undisputed. See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., **843 F.2d 808**, **812** (4th Cir. 1988); 10 Wright, Miller, and Kane at § 2697.

[13] 3. However, the district court concluded that the prejudice factor favors Johnson. Relying on Widmer-Baum v. Chandler-Halford, 162 F.R.D. 545, 555-56 (N.D. Iowa 1995), the court concluded that granting Dayton Electric relief would prejudice Johnson's "expectations concerning the judgment" and her "belief in the integrity of the system and the court's authority." We reject this legal standard. Entry of default raises no protectible expectation that a default judgement will follow, and a party's belief in the integrity of the system must include, to be reasonable, knowledge that a system of integrity makes exceptions "for good cause shown." As numerous decisions make clear, prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits. See Swink, **810 F.2d at 792** n. 2. Setting aside a default must prejudice plaintiff in a more concrete way, such as "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." Berthelsen v. Kane, **907 F.2d 617**, **621** (6th Cir. 1990).

[14] Attempting to identify more traditional prejudice, Johnson argues that setting aside the default would prejudice her because she has non-suited Dayton Electric's co-defendant, Lasko. But this "prejudice" was self-inflicted. When the district court ruled it would enter default judgment against Dayton Electric after trial of the claim against Lasko, Johnson's attorneys decided she should not try to prove Lasko manufactured the fan in question. Since Johnson has shown no other prejudice from setting aside the default, this factor favors Dayton Electric.

[15] For the foregoing reasons, we conclude that the factors identified in Pioneer and our prior cases weigh heavily in Dayton Electric's favor. Although Rule 55(c) issues are committed to the district court's discretion, "when the grant of a default judgement precludes consideration of the merits of a case, even a slight abuse of discretion may justify reversal." Shepard Claims, **796 F.2d at 193**, quoting Williams v. New Orleans Pub. Serv., Inc., **728 F.2d 730**, **733-34** (5th Cir. 1984). Accordingly, the judgement of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

[fn1] At issue in Pioneer was Bankruptcy Rule 9006(b)(1), but the Court based its analysis in part on the parallel language in Rule 60(b)(1). See **507 U.S. at 391-94**.

Copyright © 2009 Loislaw.com, Inc. All Rights Reserved