**United States District of Columbia Circuit Court of Appeals Reports**

---

MULDROW v. RE-DIRECT, 493 F.3d 160 (D.C. Cir. 2007)

Sonya MULDROW, Individually, and on Behalf of the ESTATE and Next of Kin

of Kenneth N. MULDROW, Jr., Deceased, Appellee v. RE-DIRECT, INC.,

Appellant.

No. 05-7169.

United States Court of Appeals, District of Columbia Circuit.

Argued January 12, 2007.

Decided July 3, 2007.

**Page 161**

[EDITORS' NOTE:  THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.]
**Page 162**

   Appeal from the United States District Court for the District of Columbia, (No. 01cv02537).

   David F. Grimaldi, argued the cause and filed the brief, for appellant.

   Andrew D. Roth, argued the cause, for appellee. With him on the brief was Laurence
**Page 163**
Gold. W. Gary Kohlman entered an appearance.

   Before: GINSBURG, Chief Judge, and HENDERSON and GARLAND, Circuit Judges.

   Opinion for the court filed by Circuit Judge GARLAND.

   GARLAND, Circuit Judge:

   Defendant Re-Direct, Inc. began providing residential programs for juvenile delinquents in the District of Columbia in 1998. By the end of 1999, four youths had been murdered while in the defendant's care. In 2000, the plaintiff's son, Kenneth, became the fifth. Thereafter, the plaintiff filed this civil suit, alleging violations of Kenneth's constitutional rights under **42 U.S.C. § 1983** and negligence under District of Columbia law. A jury found for the plaintiff on both claims, and awarded her compensatory and punitive damages.

   The defendant now appeals from the district court's denial of its post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. Re-Direct insists that it was entitled to the former because Kenneth's conduct "constituted contributory negligence and proximate cause as a matter of law." Appellant's Br. 13. Re-Direct asserts that it was entitled to a new trial because the district court committed three trial errors. According to Re-Direct, the court: (1) improperly excluded testimony by a police witness regarding the motive behind Kenneth's murder; (2) improperly admitted expert testimony that was not contained in the expert's pretrial report; and (3) improperly instructed the jury regarding the standard for contributory negligence. We reject all of Re-Direct's arguments and affirm the judgment of the district court.

I

   In 1999, the Superior Court of the District of Columbia adjudged

Kenneth Muldrow, Jr. a delinquent and committed him to the custody of the Youth Services Administration, a division of the District of Columbia's Department of Human Services.**[fn1]** Pursuant to the court's order, he was placed in a psychiatric hospital. In June 2000, just before Kenneth's nineteenth birthday, the court modified the conditions of his commitment, ordering him placed in a "transitional living program" operated by Re-Direct.**[fn2]**

Re-Direct's transitional living program offered "specialized residential treatment services" to juvenile delinquents, under a contract with the Youth Services Administration. *Muldrow v. Re-Direct, Inc.*, No. 01-2537, Mem. Op. at 2 (D.D.C. May 3, 2005) (denying defendant's motion for summary judgment). The program was essentially a halfway house, intended to provide a structured and supervised environment where youths could receive various rehabilitative services. The company also operated a separate "independent living program," where youngsters received some supervision, but lived in apartments by themselves.

Re-Direct's relatively brief contractual relationship with the District was marred by a series of violent assaults on the youths who were committed to its care. In February 1999, a youth enrolled in Re-Direct's independent living program was

**Page 164**
"murdered while visiting his family during a home visit made in violation of [Re-Direct's] rules." *Smith v. District of Columbia*, **413 F.3d 86**, **92** (D.C. Cir. 2005). In April 1999, two more youths in the same program were shot in the head and killed by a visitor to their apartment. *Id.***[fn3]** Another minor in Re-Direct's care was murdered later that year. *Id.*

Kenneth's "discharge information" sheet from the psychiatric hospital instructed that he was to continue taking three different medications, and was to participate in several treatment programs related to his psychiatric and substance abuse problems. Pl's Ex. 5. This treatment plan, however, was not fully implemented during Kenneth's time in the Re-Direct program. He did not participate in many of the treatment programs, and he frequently missed his appointments for individual therapy. Re-Direct also failed to maintain records regarding whether Kenneth consistently received his prescribed course of medications.

In October 2000, another youth at the Re-Direct residence made verbal threats against Kenneth. In response, the Re-Direct staff gave Kenneth a "pass," permitting him to leave the facility and stay at his mother's house "until further notice." *Muldrow*, Mem. Op. at 3. The following day, he was brutally assaulted by several unidentified attackers in southeast Washington. Kenneth's injuries required him to spend three full days in intensive care, and approximately three weeks in the hospital. After his release from the hospital, the Superior Court returned him to the Re-Direct residence.

At trial, Kenneth's mother testified that her understanding with Re-Direct was that Kenneth would "only be allowed to leave [the residence] with me, my daughter, or his father. . . . [I]f he was to leave that house other than to go to school by school transportation, . . . one of us [was] supposed to be with him to sign out." Trial Tr. 139. Nonetheless, Re-Direct's log book indicates that, on December 8, 2000, Kenneth was permitted to leave the residence unaccompanied at 5:20 p.m. He did not return for the rest of the evening. Later that night, Kenneth was again assaulted in the same neighborhood where he had been attacked in October. His assailants beat him for twenty to thirty minutes with bottles, trash cans, buckets, and a metal pole. He died shortly thereafter.

Kenneth's mother, Sonya Muldrow, filed suit against Re-Direct in the United States District Court for the District of Columbia, individually and on behalf of Kenneth's estate and next of kin. Relying on **42 U.S.C. § 1983** for her cause of action, she alleged that, having been "charged by Court Order with sole legal custody and responsibility for" Kenneth, Re-Direct "acted with deliberate indifference" to his "right to safe conditions and security from physical harm, a right guaranteed by the due process clause of the U.S. Constitution." Compl. ¶ 68. (The

parties later stipulated that "Re-Direct was acting under color of state law or as a state actor with respect to its actions towards Kenneth N. Muldrow, Jr." PL's Ex. 28, at 1.)**[fn4]** The complaint also alleged that
**Page 165**
Re-Direct was liable for the District of Columbia common law tort of negligence.

A jury returned a verdict for the plaintiff. On the § 1983 claim, the jury found that Re-Direct violated Kenneth's constitutional rights and that this violation proximately caused his death. Verdict Form at II A On the tort claim, it found that Re-Direct was negligent and that its negligence also proximately caused Kenneth's death. *Id.* at I.A. 1-2. The jury rejected Re-Direct's defense of contributory negligence with respect to this claim because, although it found that Kenneth was himself negligent, it concluded that his negligence was not the proximate cause of his death. *Id.* at I.A.3-4. The jury awarded the plaintiff compensatory damages of $200,000 and punitive damages of $797,160. *Id.* at III.

After the verdict, Re-Direct moved for judgment as a matter of law under Federal Rule of Civil Procedure **50** or, in the alternative, for a new trial under Rule 59. The district court denied both motions. *See Muldrow v. Re-Direct, Inc.*, **397 F.Supp.2d 6** (D.D.C. 2005). Re-Direct now appeals. It raises one challenge to the denial of its motion for judgment as a matter of law, which we address in Part II, and contends that the district court committed three errors requiring a new trial, which we address in Part III.

II

This court reviews "de novo a trial court's denial of a motion for judgment as a matter of law. We do not, however, lightly disturb a jury verdict. Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *McGill v. Muńoz*, **203 F.3d 843**, **845** (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Re-Direct's sole argument for judgment as a matter of law focuses on the jury's rejection of its contributory negligence defense. Although the jury concluded that Kenneth was negligent, it also found that his negligence was not the proximate cause of his death. Verdict Form at I.A.3-4. We must overturn the latter finding, Re-Direct insists, because "reasonable [j]urors could not differ concerning the actions of the minor plaintiff being a proximate cause of his death." Appellant's Br. 21.

But even if we were to assume that Kenneth's negligent conduct did proximately cause his death, such contributory negligence would not warrant overturning the jury's verdict if Re-Direct acted with reckless disregard for Kenneth's safety. Under District of Columbia law, "in cases of reckless conduct by the defendant[,] . . . the plaintiff's contributory negligence will not bar his action." *Sinai v. Polinger Co.*, **498 A.2d 520**, **525** n. 7 (D.C. 1985); *see also Santiago v. Lane*, **894 F.2d 218**, **224** (7th Cir. 1990); RESTATEMENT (SECOND) OF TORTS § 482 (1965); W. PAGE KEETON ET AL PROSSER & KEETON ON THE LAW OF TORTS 462 (5th ed. 1984). Without objection from Re-Direct, the district court so charged the jury, instructing it that:

> A defendant is not liable for a plaintiff's injuries if the plaintiff's own negligence is a proximate cause of the injuries. *However, if you find that the plaintiff has proven that defendant acted with reckless disregard for Kenneth Muldrow's safety*, as opposed to mere negligence, *then Kenneth's own negligence is not relevant*, unless you find that Kenneth
> **Page 166**
> also recklessly disregarded his own safety.

Trial Tr. 745-46 (emphasis added).

In returning a verdict for the plaintiff on her § 1983 claim, and in further awarding her punitive damages, the jury effectively found that Re-Direct's behavior was at least reckless. On the issue of § 1983 liability, the district court instructed the jury that the plaintiff could not prevail unless it found that Re-Direct acted with "deliberate indifference" to Kenneth's "right under the Fifth Amendment of the United States Constitution[, as] an individual who is in state custody[,] to safe conditions and security from physical harm," and that such indifference was the proximate cause of his death. Trial Tr. 747-48. The court went on to define "deliberate indifference" as "the conscious or reckless disregard of the consequences of one's acts or omissions. Deliberate indifference requires more than negligence or ordinary lack of care." *Id.* at 749. On the issue of punitive damages, the court informed the jury that it could award such damages only if it found that "the conduct of Re-Direct . . . was maliciously, or wantonly, or oppressively done." *Id.* at 754. In short, to arrive at these verdicts, the jury necessarily found that Re-Direct was (at the very least) reckless.

Re-Direct offers no grounds for concluding that it was unreasonable for the jury to find that Re-Direct recklessly disregarded Kenneth's safety, and we therefore affirm that finding. Nor does Re-Direct assert that Kenneth was himself reckless, *see* Oral Arg. Recording at 5:55, which, if it were true, would have permitted Re-Direct to rely on a contributory negligence defense notwithstanding its own recklessness, *see* RESTATEMENT (SECOND) OF TORTS § 482 (stating that "a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety," except where the plaintiff's conduct was "in reckless disregard of his own safety"); Trial Tr. 745 (contributory negligence instruction) (same). Accordingly, even if Kenneth were contributorily negligent and his negligence proximately caused his death, Re-Direct's reckless disregard for his safety would render it liable for his death and ineligible for judgment as a matter of law.

### III

Re-Direct also contends that the district court committed three trial errors that warrant a new trial. The defendant raised two of these alleged errors in its unsuccessful motion for a new trial in the district court, and it raises the third for the first time on this appeal.

#### A

We review the district court's denial of Re-Direct's motion for a new trial "only for an abuse of discretion." *Daskalea v. District of Columbia*, 227 F.3d 433, 443 (D.C. Cir. 2000). We review the court's evidentiary rulings under an abuse of discretion standard as well. *Whitbeck v. Vital Signs, Inc.*, 159 F.3d 1369, 1372 (D.C. Cir. 1998). We find no merit in either of the assertions of error that Re-Direct raised in the district court, and therefore hold that the court did not abuse its discretion in denying Re-Direct's motion for a new trial.

Re-Direct asserts, first, that the district court erred when it excluded the testimony of a Metropolitan Police Department detective, Ray Crawford, regarding the motive of Kenneth's attackers, one of whom the detective had apparently interviewed. Specifically, it complains that Crawford "was not permitted to testify . . . that [Kenneth] had stolen drugs and money

**Page 167**
from the assailants." Appellant's Br. 11.

The district court excluded the proffered testimony as inadmissible hearsay. *See* 397 F.Supp.2d at 10. At his pretrial deposition, Crawford acknowledged that he did not have any independent evidence regarding the motive for Kenneth's murder. *See* Crawford Dep. 18, 37 (Aug. 30, 2004). The only thing that Crawford did have was the attacker's statement that "he beat [Kenneth] because [Kenneth] had stolen money from his coat in September or October of last year." Aff. in Supp. of Arrest Warrant. This kind of out-of-court statement, "offered in evidence to prove the truth of the matter asserted," constitutes hearsay, FED.R.EVID. 801(c), which

is inadmissible at trial unless it comes within an authorized exception, see FED.R.EVID. **802**. Because Re-Direct suggested no exception that would have rendered the detective's recitation of the assailant's interview statement admissible, the district" court was plainly correct in excluding such testimony. And because the detective had no other information regarding the motive for the attack, the court was correct to exclude his testimony on the general subject as well. *See* FED.R.EVID. **602** (providing that a "witness may not testify to a matter unless . . . the witness has personal knowledge of the matter"); *id.* advisory committee's notes to 1972 proposed rules (explaining that Rule 602 "prevent[s]" a witness "from testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it"). Indeed, at oral argument, Re-Direct essentially conceded that exclusion was proper. *See* Oral Arg. Recording at 9:21.

   Second, Re-Direct asserts that the district court erred in permitting the plaintiff's juvenile justice expert, Paul DeMuro, "to testify to a pattern of `deliberate indifference'" on the part of Re-Direct, because DeMuro "did not render an opinion" on that point in the expert report the plaintiff filed pursuant to Federal Rule of Civil Procedure **26**. Appellant's Br. 11. But DeMuro never gave any such opinion testimony; in fact, he never used the term "deliberate indifference" at all. Because Re-Direct does not cite any transcript pages to support its argument, the best we can do is guess that it is referring to DeMuro's descriptive (and somewhat ambiguous) testimony that, in Re-Direct's transitional living program, he "saw the same kinds of issues, both with lack of staff training [and] lack of accountability," that surrounded the murders of youths in Re-Direct's independent living program. Trial Tr. 388.

   Under Rule 26(a)(2)(B), a party using an expert witness must disclose a report containing, inter alia, "a complete statement of all opinions to be expressed and the basis and reasons therefor." FED. R.Civ.P. **26**(a)(2)(B). The purpose of the rule is to eliminate "unfair surprise to the opposing party." *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, **47 F.3d 277**, **284** (8th Cir. 1995). But it "does not limit an expert's testimony simply to reading his report. . . . The rule contemplates that the expert will supplement, elaborate upon, [and] explain . . . his report" in his oral testimony. *Thompson v. Doane Pet Care Co.*, **470 F.3d 1201**, **1203** (6th Cir. 2006); *see Minebea Co. v. Papst*, 231 F.R.D. 3, 8 (D.D.C. 2005). Under Rule 37(c)(1), if a party fails to disclose the information required by Rule 26(a), its expert may not testify as to that information — "unless such failure is harmless." FED.R.CIV.P. **37**(c)(1).

   DeMuro's testimony did not run afoul of Rules 26 or 37 — or if it did, the testimony was nonetheless admissible because any transgression was harmless under Rule 37. *See* FED.R.CIV.P. **37**(C)(1). The expert's testimony could hardly have been an unfair surprise to Re — Direct, as it was largely

**Page 168**

an elaboration of DeMuro's written report, which noted that he reviewed fatality reports regarding two of the youths who had died while enrolled in Re-Direct's independent living program. Moreover, DeMuro was deposed before trial, and during his deposition discussed his testimony in an earlier case that involved one of those deaths. *See supra* note 3. Hence, as the district court held, "defense counsel had adequate warning that DeMuro had observed earlier problems with the Re-Direct program and an adequate opportunity to question whether those observations factored into the conclusions expressed in his written report." **397 F.Supp.2d at 11**.

   We further agree with the district court that, even if it should not have admitted DeMuro's testimony, the testimony was harmless within the meaning of Federal Rule of Civil Procedure **61**. That rule directs courts to disregard any error or defect in the proceeding that does not "affect the substantial rights" of the parties, FED.R.CIV.P. **61**, which "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings," *United States v. Olano*, **507 U.S. 725**, **734**, **113 S.Ct. 1770**, 123 L.Ed.2d 508 (1993) (defining "affect☐ substantial rights" as used in FED.R.CRIM.P. **52**(b)). As the district court found, Re-Direct "has failed to show that DeMuro's

testimony, even if surprising, was unfairly prejudicial." 397 F.Supp.2d at 11. For one thing, before DeMuro even took the stand, the former CEO of Re-Direct had already testified about the murders that occurred at Re-Direct's independent living program. *See* Trial Tr. 261-62. Moreover, "the jury had ample evidence" other than DeMuro's challenged testimony "from which to conclude that Re-Direct was `deliberately indifferent' to Kenneth's safety and that its failure to properly care for Kenneth was part of a `custom' or `practice.'" 397 F.Supp.2d at 11. Among other things, the jury heard testimony that Re-Direct: failed to maintain proper records on whether Kenneth had received his medications, Trial Tr. 181-82, 196; falsely represented that it was providing services to Kenneth when it was not, *id.* at 132-34; *see also* Pl's Ex. 7; and did not feel obligated to monitor Kenneth's attendance at court-ordered treatment programs, Trial Tr. 287. "In light of these and the many other examples of Re-Direct's persistent failings," we, like the district court, "cannot assume that DeMuro's testimony regarding the prior deaths of youths in Re-Direct's care was a crucial element in the jury's decisionmaking process." 397 F.Supp.2d at 11.

B

The third alleged trial error asserted by Re-Direct is its claim that the district court incorrectly instructed the jury regarding the standard for finding Kenneth contributorily negligent. Because Re-Direct failed to object to the instruction at trial, we may only consider this claim if the instruction constitutes "a plain error . . . affecting substantial rights." FED.R.CIV.P. 51(d)(2). As the notes of the Advisory Committee indicate, review under this provision — which was added to the Federal Rules of Civil Procedure in 2003 — is reserved for "exceptional circumstances." FED.R.CIV.P. 51 advisory committee's notes to 2003 amendments. The language of the provision "is borrowed from [Federal Rule of Criminal Procedure] 52." *Id.*[fn5] And as "[t]he Supreme Court

**Page 169**

has summarized[,] application of" that rule "involve[s] four elements: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *Johnson v. United States*, 520 U.S. 461, 466-67, 469-70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

Re-Direct contends that the district court erred when it instructed the jury regarding contributory negligence as follows:

> You should use the same basic rules that you used to decide whether Re-Direct was negligent to decide whether Kenneth was negligent. In considering whether Kenneth exercised "ordinary care," you should consider whether Kenneth's actions were those of a reasonable person . . . *with similar mental health problems.*

Trial Tr. 746 (emphasis added). According to Re-Direct, "[t]here was no justification for the [j]ury being instructed that the plaintiff had `mental health problems'" because there was "no evidence of `mental health problems.'" Appellant's Br. 23.

We need not belabor the plain error test to resolve this contention, as Re-Direct plainly cannot satisfy it. First, we reject Re-Direct's claim of error — and, a fortiori, of plain error. Re-Direct's assertion that there was "no evidence" that Kenneth had "mental health problems," Appellant's Br. 23, is simply wrong. In fact, the record is replete with such evidence: DeMuro testified that Kenneth had "mental health problems," Trial Tr. 383, and had spent "two or three periods of time in a psychiatric hospital," *id.* at 382; a psychiatrist who reviewed Kenneth's medical records testified that he was diagnosed with both conduct disorder and depression, *id.* at 185; the psychiatrist further testified that Kenneth was being treated with an antidepressant and an "atypical antipsychotic," *id.* at 186; and a progress report filed with the Superior Court during Kenneth's inpatient stay at the psychiatric hospital showed that he had received treatment for a "history of mental, emotional, and behavioral issues" that manifested themselves in "suicidal and homicidal

ideations," "auditory hallucinations and unstable mood," and "depress[ion]," PL's Ex. 2, at 5.

Second, even if the instruction were erroneous, we do not understand why Re-Direct thinks it was injurious. The court's command to "consider whether Kenneth's actions were those of a reasonable person . . . with similar mental health problems" may have made it harder for the jury to conclude that Kenneth was negligent. But in the end, the jury *did* conclude that he was negligent. Verdict Form at I.A.3. The third element of the plain error test requires that the alleged error "`affect☐ substantial rights,'" *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544 (quoting *Olano*, 507 U.S. at 732, 113 S.Ct. 1770), which, as we have noted above, "means that the error must have been prejudicial," *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. Since the jury found Kenneth negligent notwithstanding the instruction, Re-Direct could not have been prejudiced by the error it assertedly contained.[fn6]

IV

Because Re-Direct's challenges — both to the jury's verdict and to the district

**Page 170**

court's rulings — are wholly without merit, the judgment of the district court is

*Affirmed.*

[fn1] Because Re-Direct appeals from the denial of its motion for judgment as a matter of law, we view the evidence in the light most favorable to the plaintiff. *See, e.g., Borgo v. Goldin*, 204 F.3d 251, 254 (D.C. Cir. 2000); *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 734 n. 1 (D.C. Cir. 1998).

[fn2] The defendant was originally named "Educational Solutions Academy," but changed its name in 2000. *See* PL's Ex. 28, at 1-2.

[fn3] In *Smith*, we affirmed a jury verdict finding the District of Columbia liable for violating the substantive due process rights of one of those youths by "virtue of its deliberate indifference in selecting and monitoring" Re-Direct. 413 F.3d at 89.

[fn4] Section 1983 provides a cause of action for monetary damages against "[e]very person who, under color of [state or District of Columbia law,] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . ." 42 U.S.C. § 1983. *See generally Smith*, 413 F.3d at 93-97.

[fn5] "[A]ctual application" of the provision, however, should "take☐ account of the differences" between civil litigation and criminal prosecution. FED.R.CIVP. 51 advisory committee's notes to 2003 amendments; *see Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir. 2006).

[fn6] As noted in Part II, although the jury concluded that Kenneth was negligent, it also found that his negligence was not the proximate cause of his death. Re-Direct does not contend that the asserted error in the negligence instruction affected the jury's finding regarding proximate cause.

Copyright © 2009 Loislaw.com, Inc. All Rights Reserved