**United States District of Columbia Circuit Court of Appeals Reports**

UNITED STATES v. MARSHALL, 132 F.3d 63 (D.C. Cir. 1998)

United States of America, Appellee v. Marlon Marshall, Appellant

No. 96-3053

United States Court of Appeals, District of Columbia Circuit.

Argued October 31, 1997

Decided January 6, 1998

As Amended on Grant of Rehearing

in part March 6, 1998

**Page 64**

[EDITORS' NOTE:  THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN
OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.]

**Page 65**

AT    Robert S. Becker, appointed by the court, argued the cause
and filed the brief for appellant.

    Michael W. Wright, Assistant United States Attorney, argued
the cause for appellee, with whom Eric H. Holder, Jr.,
United States Attorney at the time the brief was filed, John
R. Fisher, Thomas J. Tourish, Jr., and M. Evan Corcoran,
Assistant United States Attorneys, were on the brief.

    Appeal from the United States District Court for the District
of Columbia.

    (No. 95cr00201-01).

    Before: SILBERMAN, SENTELLE and GARLAND, Circuit Judges.

    Opinion for the court filed by Circuit Judge SENTELLE.

    SENTELLE, Circuit Judge:

[1] Marlon Marshall appeals his conviction for distributing
more than five grams of crack cocaine. Marshall argued to
the district court that the government's disclosure of evidence
during trial was untimely under Rule **16** of the Federal Rules of
Criminal Procedure. On appeal, he argues that the district court
abused its discretion when it declined to suppress the evidence
or declare a mistrial. We conclude that the district court did
not abuse its discretion, and consequently affirm Marshall's
conviction.

[2]                         I. Background

[3]                         A. The Offense

[4] The Drug Enforcement Administration ("DEA") believed
Marlon Marshall was a drug dealer, and orchestrated a
controlled drug transaction to catch him in the act. Under
the supervision of a DEA Special Agent, a confidential informant
attempted to contact Marshall by calling what the
informant claimed was Marshall's pager number. Marshall
returned several of these pages. During one telephone conversation,
which was recorded on audiotape, Marshall agreed
to sell the informant approximately 42 grams of crack for
$1,350. Marshall and the informant further agreed to conduct

the transaction at a McDonald's restaurant in the District
of Columbia. The transaction, which was recorded on
videotape, took place as planned: Marshall handed the informant
a french fry box containing crack, and the informant
gave him $1,350 cash in return.

[5] At the government's request, the informant attempted to
arrange another transaction with Marshall. The informant
contacted Marshall again by using the same pager number.
This time, Marshall agreed to sell the informant 62 grams of
crack for $1,750. Marshall drove a dark-colored, four-door
Buick to the designated location, but did not go through with
the transaction, apparently because he noticed a DEA surveillance
vehicle in the area. (At trial, a witness testified that
Marshall told his companion to "put the s___ back in the car
because the place is too hot for me.")

[6] Marshall was indicted for distributing more than 5 grams
of crack cocaine in violation of **21 U.S.C. §§ 841**(a)(1) and
**841**(b)(1)(B)(iii). The district court ordered Marshall to be
detained pending trial.

[7]                              B. The Trial

[8] During voir dire examination, defense counsel announced
that the defense might call Sabrina Shorter as a witness.
This name was familiar to the government: when Marshall
returned the informant's pages, caller identification equipment
revealed that he had done so on at least one occasion
from Ms. Shorter's residence. Also, before trial had commenced,
the government retrieved records which revealed
that Ms. Shorter had visited Marshall when he was incarcerated
and awaiting trial. Significantly, the government turned
over the caller identification records to the defense before
trial, but did not disclose the jail visitation records.

[9] In his opening statement, defense counsel raised a defense
of misidentification. He told the jury that Marshall was not
the person seen selling drugs on the videotape. He also said
that the government had no evidence to link Marshall to any
of the phones from which the informant's pages had been
returned:

**Page 66**

   The evidence is going to show that though phone calls
   are placed repeatedly to a pager number, that there are
   no records or anything from the United States to say
   that that was Mr. Marshall's pager. The evidence is
   going to show that those phone calls were made back in
   response to those pages and they got phone numbers
   from the places where those phone calls came from.
   They've got this caller I.D. system so that if you get a
   phone call you can see who is calling you. Look at the
   number. The evidence is going to show that those phone
   calls came in from places not associated with Mr. Marshall,
   from homes where the people don't know Mr.
   Marshall, because Mr. Marshall is not the person who
   made those phone calls. That's what the evidence is
   going to show here, ladies and gentlemen. The evidence
   is going to show Marlon Marshall is not the person who
   sold the drugs on May 16th, 1994.

[10] Marshall's lawyer also claimed that the government would
offer no evidence linking Marshall to the pager number called
by the informant, and asserted that the evidence would show
"nothing to corroborate" Marshall's alleged involvement with
drug dealing.

[11] The first government witness to testify at trial was Frank
Suarez, the DEA agent who supervised the informant who

arranged the drug transactions at issue. After Agent Suarez
finished testifying, the government notified the court that it
wanted to introduce Marshall's previously undisclosed jail
visitation records into evidence. Such records were relevant,
the government explained, because they showed that Marshall
knew Sabrina Shorter — this fact, of course, supported
the proposition that Marshall had returned a page from Ms.
Shorter's residence. Defense counsel responded that the jail
visitation records should be excluded from evidence because
they had not been timely disclosed as required by Federal
Rule of Criminal Procedure **16**. In relevant part, that rule
states:

> Upon request of the defendant the government shall
> permit the defendant to inspect and copy or photograph
> books, papers, documents, . . . or copies or portions
> thereof, which are within the possession, custody or
> control of the government, and which are material to the
> preparation of the defendant's defense or are intended
> for use by the government as evidence in chief at the
> trial. . . .

[12] Fed.R.Crim.P. **16**(a)(1)(C). Also, as Marshall pointed out,
the government is under a continuing duty to turn over
evidence subject to disclosure under Rule 16 that it discovers
before or during trial. Fed.R.Crim.P. **16**(c).

[13] The district court adjourned for a long weekend without
resolving the dispute over the admissibility of the jail visitation
records. During the recess, the parties filed motions
addressing whether a records custodian from the District of
Columbia Department of Corrections would be permitted to
testify about the jail visitation records. In its motion, the
government also sought to introduce additional evidence resulting
from an investigation that the government had conducted
during the trial: (1) pager records indicating that the
pager number called by the informant was registered to
Marshall; (2) the pager itself; and (3) Prince George's County,
Maryland ("P.G. County") police records indicating that an
officer had stopped Marshall in the same Buick that Marshall
used during the second, aborted drug transaction. Marshall
opposed the introduction of this additional evidence, again
citing Rule 16.

[14] The government explained how it had come to discover this
additional evidence during trial. After Agent Suarez completed
his testimony, the prosecutor instructed him to conduct
further investigation. As a result, Agent Suarez looked "in
more detail" at some of Marshall's prior arrest records in
P.G. County. He discovered that Marshall had a P.G. County
arrest record under a different name, and contacted the P.G.
County officer who had arrested him previously. That officer
confirmed that Marshall was driving the Buick when the P.G.
County arrest took place, and brought the pager (which had
been confiscated during that arrest) with him to court.
Agent Suarez then used the serial number from the pager to
obtain records from the pager company.

[15] After the four-day adjournment, the district court ruled on
the disputed evidence. The court concluded that the records
should have been turned over "at least after opening
**Page 67**
statement." However, it then held that Marshall was not
prejudiced by the late disclosure of the records, and declined to
exclude them. As a result of this ruling, the parties agreed to
stipulate that Marshall knew Sabrina Shorter, and that she had
visited him on two dates in November and December of 1995.

[16] With respect to the P.G. County records concerning the
Buick, the district court criticized the government for "sloppy

police work [and] insufficient investigation," but found that its
decision to conduct an additional investigation in the middle
of the trial was not a product of bad faith. Accordingly, the
court found no violation of Rule 16, and permitted the P.G.
County officer to testify that he had stopped Marshall in the
Buick. (The officer, however, did not testify that he had
arrested Marshall.)

[17] The district court excluded testimony concerning pager
records that revealed that Marshall was responsible for the
pager number, and excluded the pager as well. When making
this ruling, the district court noted that the government
had promised not to introduce the pager records in its
case-in-chief. Finally, the district court denied Marshall's
alternative motion for a mistrial.

[18] The jury found Marshall guilty of distributing more than
five grams of crack cocaine. The district court subsequently
sentenced him to 135 months of incarceration.

[19]                              II. Discussion

[20]                              A. Materiality

[21] Rule 16(a)(1)(C) mandates disclosure of certain evidence
which is (1) "material to the preparation of the defendant's
defense" or (2) "intended for use by the government as
evidence in chief at the trial." The district court ruled that
the disputed evidence in this case was "material to the
preparation of [Marshall's] defense," and thus potentially
subject to disclosure under prong one of Rule 16(a)(1)(C).
We agree.

[22] The government takes issue with the district court's conclusion
that the disputed evidence was "material" under Rule 16.
It notes first that all of the disputed evidence — the jail
visitation records, the P.G. County records, the pager records — tends
to incriminate Marshall. It then reads the term
"material" in Rule 16 to refer to "evidence that is favorable
and helpful to a defendant's defense, not as evidence that
impeaches or rebuts his defense." Govt. Br. at 35 n. 15; see
also id. at 22 n. 10. Stressing that the disputed evidence in
this case is not "helpful" or "exculpatory," id.; the government
concludes that such evidence is not subject to disclosure
as "material" under Rule 16.

[23] The plain language of Rule 16(a)(1)(C) does not support the
government's interpretation. This rule covers evidence which
is material "to the preparation of the defendant's defense."
(emphasis added). The government ignores the words we
have just italicized, reading the rule to refer to evidence
which is "favorable or helpful to a defendant's defense." See
Govt. Br. at 35 n. 15. The rule as written does not compel the
conclusion that inculpatory evidence is immune from disclosure.
Inculpatory evidence, after all, is just as likely to assist
in "the preparation of the defendant's defense" as exculpatory
evidence.**[fn1]**  In other words, it is just as important to the
preparation of a defense to know its potential pitfalls as it is
to know its strengths.

[24] Take the facts of this case as an example: the government
says it had no obligation under Rule 16 to disclose the jail
visitation records to the defense because the records were not
exculpatory. Defense counsel, flying blind, asked Agent Suarez
on cross-examination if he had any information connecting
Marshall to any of the returned phone calls. He received the
unexpected and perhaps damaging answer that the agent
"now believe[d] that . . . at least one address [on the list of
names connected with the returned phone calls] is in fact
connected with Mr.

**Page 68**

Marshall." With the jail visitation records in hand, counsel
would have known to avoid this minefield.

[25] Additionally, we note that the discovery obligations mandated
by Rule 16 "contribute[ ] to the fair and efficient
administration of criminal justice by providing the defendant
with enough information to make an informed decision as to
plea." Fed.R.Crim.P. **16** advisory committee note to 1974
amendment. The government's interpretation of Rule 16 is
at loggerheads with this policy. If the government is excused
from its obligation to disclose incriminating evidence (and
does not intend to introduce such evidence during its
case-in-chief), the defense must make any pre-trial plea decisions
without knowing the true strength of the government's evidence.

[26] To support its reading of Rule 16, the government unpersuasively
points to isolated language from our prior opinions.
We have observed that the government must disclose Rule 16
evidence only if such evidence "enable[s] the defendant significantly
to alter the quantum of proof in his favor." United
States v. Graham, **83 F.3d 1466**, **1474** (D.C. Cir. 1996) (quoting
United States v. Caicedo-Llanos, **960 F.2d 158**, **164** n. 4
(D.C. Cir. 1992)), cert. denied sub nom. Terrell v. United
States, 117 S.Ct. 993 (1997). But this language does not
mean that inculpatory evidence may never be material. To
the contrary, a defendant in possession of such evidence may
"alter the quantum of proof in his favor" in several ways: by
preparing a strategy to confront the damaging evidence at
trial; by conducting an investigation to attempt to discredit
that evidence; or by not presenting a defense which is
undercut by such evidence.

[27] The government also reads one of our opinions as requiring
evidence to be "materially exculpatory" to be subject to
disclosure under Rule 16. See Govt. Br. at 22 n. 10. The
government misreads that opinion. In United States v.
Lloyd, we said that evidence is material under Rule 16 "as
long as there is a strong indication that it will play an
important role in uncovering admissible evidence, aiding witness
preparation, corroborating testimony, or assisting impeachment
or rebuttal." **992 F.2d 348**, **351** (D.C. Cir. 1993)
(internal quotation marks and citation omitted). Although we
used the phrase "materially exculpatory" in Lloyd,
**992 F.2d at 351**, we did so by way of illustration, not limitation. We
did not, as the government urges, articulate a rule of general
application that exculpatory evidence alone is subject to Rule
16 disclosure. In any event, we see no reason why inculpatory
evidence could not serve the functions mentioned in Lloyd
as well as exculpatory evidence, and the government has not
articulated any such reason.

[28]       B. Evidence the Government Acquired During Trial

[29] As we explained above, the government began a new line of
investigation after its first witness had testified. That
investigation bore fruit: among other things, the government
discovered that Marshall had been arrested in P.G. County in
the same Buick he had used during the second, aborted drug
transaction in this case. Here, Marshall challenges the district
court's decision to permit the P.G. County officer to
testify that he had stopped Marshall in the Buick.

[30] To be subject to disclosure under Rule 16(a), evidence must
be "within the possession, custody or control of the government."
Fed.R.Crim.P. **16**(a)(1)(C). Put another way, the
government cannot be required to disclose evidence that it
neither possesses nor controls. See, e.g., United States v.
Pinto, **905 F.2d 47**, **50** (4th Cir. 1990). In this case, it is not
disputed that the government turned over the P.G. County

records to the defense as soon as it discovered them. Thus
there is no violation unless the term "government" as used in
Rule 16 encompasses local law enforcement offices, such as
the P.G. County Police Department. There is ample authority
that it does not. See, e.g., United States v. Brazel,
**102 F.3d 1120**, **1150** (11th Cir.), cert. denied, ___ U.S. ___ ,
118 S.Ct. 79 (1997); United States v. Hamilton, **107 F.3d 499**, **509** n. 5
(7th Cir.), cert. denied, ___ U.S. ___ 117 S.Ct. 2528 (1997). We
therefore hold that the United States did not violate Rule 16 when
it failed to turn over evidence it neither possessed nor controlled.
See also United States v. Cannington, **729 F.2d 702**, **712**
(11th Cir. 1984) ("[A] party cannot produce what it doesn't have.").
**Page 69**

[31] We hasten to add that our ruling is not an invitation for the
United States to engage in gamesmanship in discovery matters.
To the contrary, a prosecutor may not sandbag a
defendant by "the simple expedient of leaving relevant evidence
to repose in the hands of another agency while utilizing
his access to it in preparing his case for trial." Brazel,
**102 F.3d at 1150** (quoting United States v. Trevino, **556 F.2d 1265**,
**1272** (5th Cir. 1977)). Under such circumstances, that
evidence is "plainly within [the prosecutor's] Rule 16 `control.'"
Id. In this case, there is no evidence that the
government purposely ambushed the defense when it proffered
the P.G. County records during trial. Indeed, the
district court specifically found that the government had not
acted in bad faith, and this determination is not challenged on
appeal.

[32] We need not address the pager records and pager, which
the government also uncovered in the investigation it conducted
during trial: Marshall could not have been prejudiced
by the discovery of these items because they were never
introduced into evidence.

[33]        C. Evidence the Government Acquired Before Trial

[34] The government acknowledges that prior to trial it possessed
records showing that Sabrina Shorter had visited
Marshall in jail, and that it did not disclose them to the
defense until after the government's first witness completed
his testimony. Was the government obligated under Rule 16
to disclose the records earlier than that? Our answer is
"yes."

[35] It could be argued that even before trial commenced, the government
should have realized that the jail visitation records were
"material to the preparation of [Marshall's] defense" under
Rule 16(a)(1)(C). It knew then that Sabrina Shorter could
play a significant role in its case-in-chief; caller identification
equipment revealed that one or more of the informant's calls
were returned from her residence. It also could be argued that the
government knew or should have known that the jail visitation records
mentioning Ms. Shorter would bear more than "some abstract logical
relationship to the issues in the case." Caicedo-Llanos,
**960 F.2d at 164** n. 4 (quoting United States v. Ross, **511 F.2d 757**, **762** (5th Cir.
1975)).**[fn2]** And, as we have discussed above, the fact that the
evidence was incriminating did not relieve the government of its
Rule 16 obligations.

[36] From the government's perspective, the materiality picture
came into even sharper focus during voir dire examination,
when the defense identified Sabrina Shorter as a potential
witness. At that point, the government knew it had records
relating to a person the defense had just identified as a
potential witness. That fact alone plainly triggered the government's
disclosure obligations under Rule 16. The defense
counsel's opening statement, telling the jury that the government
would present no evidence linking Marshall to the

phone numbers from which the informant's pages had been
returned, shows that the disclosure came too late. The
government knew the statement was not true. The jail
records in its possession provided this link, yet it waited until
Agent Suarez had completed his testimony to disclose the
records. By waiting too long to disclose the jail visitation
records, the government violated its disclosure obligations
under Rule 16.

[37] It does not follow, however, that the district court abused
its discretion by failing to impose any sanctions as a result of
the violation. The district court has wide discretion in imposing
a sanction if it finds that Rule 16 has been violated. The
court may grant a continuance; prohibit the violating party
from introducing the evidence at issue; or "enter such other
order as it deems just under the circumstances."
Fed.R.Crim.P. **16**(d)(2). A trial judge should impose "the least
severe sanction that will accomplish the desired result — prompt
and full compliance with the court's discovery orders." United
States v. Sarcinelli, **667 F.2d 5**, **7** (5th Cir. 1982); see also
United States v. Gee, **695 F.2d 1165**, **1169** (9th Cir. 1983).
**Page 70**

[38] To begin, we note that although literally true, it is slightly
misleading to say that the district court imposed no sanction
for the government's Rule 16 violation. Because the court
deferred its ruling on the admissibility of the jail records
during its adjournment period, the defense received what
amounted to a four-day continuance to ponder how it would
confront that evidence. Ordinarily, a continuance is the
preferred sanction for a discovery delay because it gives the
defense time to alleviate any prejudice it may have suffered
from the late disclosure. See United States v. Euceda-Hernandez,
**768 F.2d 1307**, **1312** (11th Cir. 1985).

[39] Marshall complains that a continuance was not a sufficient
sanction here because the jail visitation records disproved
comments he had already made to the jury in his opening
statement. He says it was "extremely damaging" to his case
to have his lawyer promise something in his opening statement
which turned out to be false. Marshall's argument,
then, amounts to this: the district court should have excluded
the evidence to keep the jury from thinking that the defense
had told it a lie.

[40] We reject this argument. To persuade us to reverse a
conviction due to the government's discovery violation, an
appellant must demonstrate that the violation prejudiced his
substantial rights. United States v. McCrory, **930 F.2d 63**,
**69-70** (D.C. Cir. 1991), cert. denied, 502 U.S. 1037 (1992).
Marshall has not done so here. Marshall's attorney may not
have known that Sabrina Shorter had visited him in jail, but
Marshall did. He knew that his counsel's statement — "those
phone calls came in from places not associated with Mr.
Marshall, from homes where the people don't know Mr.
Marshall, because Mr. Marshall is not the person who made
those phone calls" — was false. Thus, to the extent Marshall
suffered any prejudice because the government was able to
disprove this false statement, the defendant — not the government — is
to blame. To the extent the government's Rule 16
violation caused Marshall any prejudice, the district court did
not abuse its discretion by in effect giving the defense a
continuance to regroup and reconsider its trial strategy.

[41] Before us, Marshall argues that trial counsel told the jury
that the government would not be able to link Marshall to the
returned telephone calls "in reliance on [trial counsel's] reasonable
belief that the government had fully complied with
Rule 16." Marshall Br. at 14. But Rule 16 does not prevent
the government from introducing any new evidence after a

trial begins; indeed, Rule 16 itself contemplates that evidence may be disclosed "during trial." Fed.R.Crim.P. **16**(c). Knowing that the government might legitimately acquire and introduce new evidence during trial, the defense knew that there was a risk in telling the jury that the government would not link Marshall to the phone numbers from which the informant's pages were returned. This fact supports our conclusion that any prejudice Marshall suffered was self-inflicted.

[42] Finally, we note that although Rule 16 gives trial judges the option of suppressing evidence as a result of the government's discovery violations, such a severe sanction would seldom be appropriate where — as here — the trial court finds that the government's violation did not result from its bad faith and that a less drastic remedy (such as a continuance) will mitigate any unfair prejudice. Such a sanction would have been particularly inappropriate in this case because the effect of the disputed evidence was to disprove a statement that the defendant knew to be false. If the district court had accepted Marshall's invitation in this case to suppress the jail visitation records as a result of the government's discovery violation, that ruling would have subverted one of Rule 16's goals: "contributing to an accurate determination of the issue of guilt or innocence." Fed.R.Crim.P. **16** advisory committee note to 1974 amendment. As we have said before, "there is . . . no right to deceive a jury as to the true facts." McCrory, **930 F.2d at 70**.

[43]                          III. Conclusion

[44] Marshall's remaining arguments do not warrant extended discussion. For essentially the same reasons already stated, we conclude that the district court did not abuse its discretion when it denied Marshall's motion for a mistrial. We also reject as insufficiently developed Marshall's cursory arguments concerning the government's disclosure of a

**Page 71**

surveillance report and certain tape recordings. See Fed.R.App.P. **28**(a)(6); United States v. Clarke, **24 F.3d 257**, **262** (D.C. Cir. 1994). Finally, our decision in United States v. Holton, **116 F.3d 1536**, **1548** (D.C. Cir. 1997), forecloses Marshall's argument that mandatory minimum sentences for the distribution of crack cocaine violate the equal protection clause of the Fifth Amendment.

[45] For the foregoing reasons, we affirm Marshall's conviction.

[fn1] The Supreme Court recently clarified the meaning of the phrase "material to the preparation of the defendant's defense." The phrase "authorizes defendants to examine government documents material to the preparation of their defense against the Government's case-in-chief. . . ." United States v. Armstrong, **116 S.Ct. 1480**, **1485** (1996).

[fn2] To give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor. The prosecutor need not guess that evidence may become material as a consequence of a defendant's not-yet-revealed stategic decisions. Nor must the prosecutor assume  that the defense will make false assertions about the facts, hence making relevant contrary evidence that would not have been relevant had the defense adhered to the truth.

Copyright © 2009 Loislaw.com, Inc. All Rights Reserved