# UNITED STATE DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Boutte v. LaFarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | |
| *Lagarde v. LaFarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL,  JR. |
| *Benoit v. LaFarge* | 06-7516 | * | |
| *Parfait Family v. USA* | 07-3500 | * | MAG. |
| *LaFarge v. USA* | 07-5178 | * | JOSEPH C. WILKINSON,  JR. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ERRATA TO BARGE PLAINTIFFS' OPPOSITION TO LAFARGE NORTH AMERICA, INC.'S MOTION TO STRIKE NEW FACT AND EXPERT WITNESS STATEMENTS FILED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO LNA'S MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

I.      LAFARGE IS NOT PREJUDICED BY THE PLAINTIFFS ...………...……...………...4

    A.  The Statements of Gertrude LeBlanc, Frazier Tompkins, Genarro Marino,
      Melvin Spinks, Robert Bartlett, Hector Pazos and Don Green are <u>Rebuttal
      Evidence Offered for Impeachment.</u>…………………..………………………….…4

    B.  Lafarge is Not Prejudiced by Expert Rebuttal Offered to Impeach False
      Characterizations in its Motion for Summary Judgment of Plaintiffs'
      Experts' Analyses and Conclusions. …………………..…………………………...6

    C.  Lafarge is Not Prejudiced by Rebuttal Witnesses Offering Impeachment
      Testimony Based Upon Factual Observations which Lafarge Itself
      Investigated and Documented in 2005 and 2006...…………….…..……...……..6

    D.  Rebuttal Evidence for Impeachment is Exempt from Disclosure...………..….…..7

    E.  Any prejudice Lafarge claims is self-inflicted...…………….…..……...………...9

        i.   Lafarge withheld factual information from its own .pert...……..………..9

        ii.  Lafarge has declined the opportunity to cure any possible
           prejudice, though none actually exists...…………….…..……..….……10

        iii. What Lafarge now calls prejudice does not warrant the Court's
           attention.………………………………...……………………….…..11

II.     LAFARGE HAS NOT BEEN CONFRONTED WITH ANYTHING NEW …………...12

    A.  The Impeachment Affidavits of Gertrude LeBlanc and Frazier Tompkins
      Contain Only the Accounts Centanni Investigative Agency Secretly
      Recorded During Ex Parte Interviews…………….…………………………..12

    B.  The Plaintiffs' Expert Declarations contain no new opinions, only rebuttal.……13

        i.   Lafarge's contention as to Plaintiffs' maritime expert, Cmdr.
           (Ret.) Don Green…………….…………………….………………..15

        ii.  Lafarge's contentions as to Plaintiffs' maritime expert and
           breach causation expert, Hector V. Pazos…………….……………..17

        iii. Lafarge's contentions as to Plaintiffs' breach causation expert,
           Genarro Marino, P.E., Ph.D…………….…………….……………20

i

III.     PLAINTIFFS' EXPERT DECLARATIONS ARE ADMISSIBLE ……………….....24

IV.     LAFARGE HAS PROVIDED LATE EXPERT DISCLOSURES WITHOUT
         LEAVE OF COURT, AND HAS THUS WAIVED ANY GROUND FOR
         COMPLAINT DIRECTED AT THE BARGE PLAINTIFFS……………………..…27

V.      LAFARGE FAILS TO DEMONSTRATE THAT PLAINTIFFS' DISCLOSURES
         WERE LATE, OR THAT THEY WERE EVEN REQUIRED.  NEVERTHELESS,
         JURISPRUDENTIAL CONSIDERATIONS CONCERNING LATE DISCLOSURES
         REQUIRE DENIAL OF LAFARGE'S MOTION…………..……….………………28

         A.     Explanation for Extent and Timing of Disclosure…………..………..……..29

         B.     Prejudice to Lafarge…………..……………..…………..………………31

         C.     The Possibility of Curing Any Prejudice…………..…………………………32

         D.     Importance of the Evidence……………………………………………...32

VI.     CONCLUSION..………………………..………………………………………33

## TABLE OF AUTHORITIES

CASES                                                                                                          PAGE

*Alexander Binzel Corporation And Alexander Binzel Gmbh & Co., KG, v. Nu-Tecsys
        Corporation And Karl-Heinz  Binzel*,
        No. 91 C 2092, United States District Court, N.D. Illinois, Eastern Division (2000) …....8

*Arold J. Hoyle v. Power Offshore Service, L.L.C.*
        USDC EDLA C.A. No. 01-1698 (July 12, 2002) ...…………………...………………4

*Baker v. Silver Oak Senior Living Management Co., L.C.*,
        581 F.3d 684, 690-91 (8th Cir. 2009) ...……………….…………………………..…20

*Barrett v. Atlantic Richfield Co.*,
        95 F.3d 375, 380 (5th Cir. 1996) ...………………..…………….…………………29

*Chiasson v. Zapata Gulf Marine Corp.*,
        988 F.2d 513, 517 (5th Cir. 1993) ...……………….…...…………….…….…..4, 5

*City Of Owensboro v. Kentucky Utilities Company*
        No.: 4:04-CV-87-M  (W.D. Ky. 10-14-2008) ...……………….…..…………...26, 27

*Curtis v. A. Garcia y Cia., Ltda.*,
        272 F.2d 235, 242 (3d Cir. 1959) ...……………..……………………………11

*Design Strategies, Inc. v. Davis,*
        No. 02 Civ. 5329 (VM), 228 F.R.D. 210, 212 (S.D.N.Y. 2005) ..………………..…..8, 29

*Emcore Corp. v. Optimum Corp.,*
        008 WL 3271553, at *4 (W.D. Pa. Aug. 5, 2008) …………….…..……………..……14. 26

*Equal Employment Opportunity Commission V. Freemen*,
        3:06-0593 (M.D. Tenn. 6-15-2009) ...…………….….…………………………..26

*Eve v. Sandoz Pharm. Corp.*,
        No. IP 98-1429-C-Y/S, 2001 U.S. Dist. LEXIS 4531, at *50 (S.D. Ind. Mar. 7, 2001) ..27

*Ferguson v. National Broadcasting Co., Inc.*,
        584 F.2d 111, 114 (5th Cir. 1978) ...…………….….…………………...………25

*Frazin v. Haynes & Boone, LLP (In re Frazin),*
        Ch. 13 Case No. 02-32351-bjh-13, Adv. No. 08-3021-bjh, 2008 Bankr.
         LEXIS 2373, at *102 n. 39 (Bankr. N.D. Tex. Sept. 23, 2008) ..………………………26

*Hughes V. Boston Scientific Corporation,*
    C.A. No. 2:08cv79KS-MTP, (S.D. Miss. November 12, 2009) ...…………………………25

*In Re MTBE Products Liability Litigation,*
    00 MDL 1898 (SAS), 04 Civ. 3417 (SAS) (S.D.N.Y. 7-20-2009) ...……………...……26

*In Re Municipal Bond Reporting Antitrust Lit.,*
    672 F.2d 436, 440 (5th Cir. 1982) ...……………...…………………...……………25

*In re Vioxx Products Liability Litigation,*
    401 F. Supp. 2d 565, 593 (E.D. La. 2005) ...………………...…...………………26

*Johnson v. Dayton Elec. Mfg. Co.,*
    140 F.3d 781, 785 (8th Cir. 1998) ...…………………………………………………11

*Kovalic v. DEC Int'l, Inc.,*
    855 F.2d 471, 474 (7th Cir. 1988) ...…………………………………………………11

*Maldonado v. Ramirez,*
    757 F.2d 48, 51 (3d Cir. 1985) ...……………………………………...……………25

*Minebea Co. v. Papst,*
    231 F.R.D. 3, 8 (D.D.C. 2005) ...………………...…………………………………26

*Minter v. Prime Equipment Co.,*
    451 F.3d 1196, 1211 (10th Cir. 2006) ...…………………...….……………………11

*Muldrow v. Re-Direct,*
    493 F.3d 160, 167-168 (D.C. Cir. 2007) ...……………………...…………………14, 26, 27

*Orduna S.A. v. Zen-Noh Grain Corp.,*
    913 F.2d 1149 (5th Cir. 1990) ...………………………...………………………….4

*Paton v. La Prade,*
    524 F.2d 862, 871 (3d Cir. 1975)...…..…………..............……………………………25

*PNC Bank Nat'l Ass'n v. Liberty Mut. Ins. Co.,*
    912 F. Supp. 169, 177 (W.D. Pa. 1996) ...…………..…………...…………….…25

*Pritchard v. Dow Agro Sciences,*
    Civil Action No. 07-1621, (W.D. Pa. 11-12-2009) ...…………………...…………….…13

*Public Loan Co., Inc. v. Federal Deposit Ins. Corp.,*
    803 F.2d 82, 87 (3d Cir. 1986) ...……………..………...……………………………......11

*Richardson v. Rodrigue*,
    1996 WL 476603, at *5 (E.D. La. Aug. 22, 1996) ...…………..…...…..……….....…5

*Robinson* Track of *In re Katrina Canal Breaches Consolidated Litigation*,
    C.A. No. 05-4182, 2009 WL 3254903 (E.D. La. April 21, 2009) ..……………..…32, 33

*Shaw by Strain v. Stackhouse*,
    920 F.2d 1135, 1144 (3d Cir. 1990) ...……………………..………..……….……….25

*Smith v. Surjaamadja*,
    USDC EDLA Civil Action No. 02-2994...…..……………..……….…………...……....5

*Stein v. Foamex Intern, Inc.*,
    No. Civ. A. 00-2356, 2001 WL 936566 (E.D.Pa. 2001)……...……….….……...… 14

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*,
    47 F.3d 277, 284 (8th Cir. 1995) ...……………………..…………………………26

*Szuchon v. Lehman*,
    273 F.3d 299, 315-16 (3rd Cir. 2001) ...……………..…………………….....11

*Thompson v. Doane Pet Care Co.*,
    470 F.3d 1201, 1203 (6th Cir. 2003) ...……………..........................................14, 26

*Tramonte v. Fibreboard Corp.*,
    947 F.2d 762 (5th Cir. 1991) ...…………….……..…………………………....…4

*United States v. Lentz*,
    524 F.3d 501, 529 (4th Cir. 2008), *cert. denied*, 129 S.Ct. 303 (2008) ...…………....11

*Union Planters Nat. Leasing v. Woods*,
    687 F.2d 117, 119 (5th Cir. 1982)……...……………………………..……………25

*United States v. Marshall*,
    132 F.3d 63, 70 (D.C. Cir. 1998) ...…………….……..…...………………………....11

## RULES

Fed.R.Civ.P. 26…..….....………………..………………………..…..…..……………2, 26, 27

Fed.R.Civ.P. 26(a)(1)(A) ..…………………..…..…………………………………………….8

Fed.R.Civ.P. 26(a)(2)(B) ..………………………..…………………………………………26

Fed.R.Civ.P. 26(a)(2)(B)(i) ..…………………………..…………………………………26

Fed.R.Civ.P. 26(a)(3) ..…………………………..………….....……………......7, 8, 10, 29, 31

Fed.R.Civ.P. 26(a)(3)(i) and (ii) ..……………..…..…..………………………………..6, 7

Fed.R.Civ.P. Rule 26(b)(3) ..…………………………………………..……………….....13

Fed.R.Civ.P. Rule 26(b)(2)(B)(1) ..……………..……………………………..…..……13

Fed.R.Civ.P. Rule 26(e)(1)(A) ..…………………………..…………………………….....31

Fed.R.Civ.P. Rule 26(e)(2) ..…………..…..……………………………………………31

Fed.R.Civ.P. Rule 56(e) ..…..…………………………..…………………………………25

**MAY IT PLEASE THE COURT:**

Lafarge's Motion to Strike should be denied for several reasons. *First*, the proof subject of Lafarge's instant motion is for impeachment and rebuttal, and need not have been disclosed (notwithstanding that Lafarge *has,* in fact, been afforded abundant notice of this proof).

*Second*, Lafarge is not prejudiced in the least. Lafarge manufactures the pretense and appearance of prejudice solely as a means of attacking legitimate proof. This is readily apparent in light of Lafarge's refusal of the Barge Plaintiffs' offer to allow the immediate depositions of all persons whose statements Lafarge now claims are prejudicial, including Plaintiffs' experts who Lafarge already deposed.

*Third*, though Lafarge incorporates the word "new" into the title of their instant Motion, there is nothing "new" contained in any of the proof Lafarge attacks. Lafarge has known ever since their surreptitious recording of *ex parte* interviews two fact witnesses - Gertrude LeBlanc and Frazier Tompkins - observed ING 4727 at a location and time which, if shared with Lafarge's experts, would be detrimental to their statements that the barge could not have possibly traveled to the eastern IHNC floodwall breach locations before the breaches occurred. Likewise, Lafarge has had consistent notice of the Plaintiffs' intention to introduce computer models of the barge's impact with and effect on the eastern IHNC floodwall.

*Fourth*, contrary to Lafarge's assertions, the Plaintiffs' experts' Declarations are admissible, anticipated by Fed. R. Civ. P. 26, and are not argumentative or conclusory as Lafarge claims. The Declarations are rebuttal in the form of elaborations and

explanations of the experts' already-stated conclusions that the ING 4727 caused the eastern IHNC floodwall breaches by making contact with the floodwall.

*Fifth*, Lafarge has not abstained from late disclosure and full-blown supplementation of Dr. Bea's report.  Lafarge did not seek Leave of Court to supplement Dr. Bea's report.  Lafarge, as such, has unclean hands, and cannot rightfully complain about impeachment and rebuttal via Plaintiffs' experts' Declarations.

*Sixth*, the Plaintiffs have not failed to disclose anything, and therefore the jurisprudential considerations for exclusion of late disclosures are not even germane.[1]  Despite this, Lafarge fails to demonstrate that any of the factors can be resolved in their favor.

*Seventh*, final witness and exhibit lists are ordinarily compiled simultaneously with the compilation of issues to be tried, and after the parties have been through summary judgment, so that both sides have fair notice of all issues before they are locked into their final witness and exhibit lists.  Here, the final witness and exhibit lists had to be compiled fourteen months before trial, and months prior to the submission of expert reports and expert depositions.  In these circumstances, it would violate due process to bar plaintiffs from using fact and expert testimony that directly impeach the contentions of the defendant.

*Eighth*, the entire purpose of the test case to be tried starting on  June 21, 2010 is to provide information to the parties and the Court that will permit more efficient handling of further test cases with jury trials, leading hopefully to settlement or to the most efficient litigated resolution of cases.  It would not make sense to waste the time of

---

[1] (1) Any explanation for the party's failure to comply with the rule requiring disclosure; (2) Prejudice to the opposing party of including the evidence; (3) The possibility of curing such prejudice; and (4) The importance of the evidence.

3

the Court in a full-blown trial without the benefit of evidence that will figure prominently in every other trial, or to pretend that critical evidence cannot be considered on summary judgment even though it would clearly be appropriate at trial.

**I.      LAFARGE IS NOT PREJUDICED BY THE PLAINTIFFS**

**A.      *The Statements of Gertrude LeBlanc, Frazier Tompkins, Genarro Marino, Melvin Spinks, Robert Bartlett, Hector Pazos and Don Green are* <u>Rebuttal Evidence Offered for Impeachment</u>.**

"Initially, it may be observed that questions as to order of proof are committed to the sound discretion of the trial judge.[fn1] And we may also note the rule that rebuttal evidence is generally admissible only to meet the evidence brought out in defendant's case in chief. *McVey v. Phillips Petroleum Company*, 288 F.2d 53 (5th Cir. 1961). See 6 Wigmore, Evidence § <u>1867</u> (1940); 88 C.J.S. Trial § 96 (1955). [fn2] See 6 Wigmore, Evidence § <u>1873</u> (1940); 53 Am.Jur., Trial § 121 (1945)." *Tramonte v. Fibreboard Corp.*, 947 F.2d 762 (5th Cir. 1991);  *Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149 (5th Cir. 1990).

"Substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact. *See,* John P. Frank, *Pretrial Conferences and Discovery — Disclosure or Surprise?,* 1965 Ins. Law J. 661, 664 (1965). Impeachment evidence, on the other hand, is that which is offered to "discredit a witness . . . to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony." Frank, *supra,* at 664." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513 (5th Cir. 1993)[2]

---

[2] *Arold J. Hoyle v. Power Offshore Service, L.L.C*. USDC EDLA C.A. No. 01-1698 (July 12, 2002) (allowance of plaintiff's rebuttal witness is based upon defendant's case in chief).

In *Smith v. Surjaamadja*, USDC EDLA Civil Action No. 02-2994, Section "K"(2) (2003), this Court found that surveillance tapes the plaintiff sought to exclude were both substantive and impeachment evidence.  Quoting *Chiasson*, <u>988 F.2d at 517</u>, Your Honor wrote that "[i]mpeachment evidence . . . is that which is offered to `discredit a witness . . . to reduce the effectiveness of his testimony by bringing forth evidence which explains why the jury should not put faith in him or his testimony.'"[3]  This Court's ruling was that the defendant could use the tapes as impeachment evidence if the plaintiff testified that he did not perform the acts captured on the video.  This ruling recognizes that rebuttal or impeachment evidence derives its probative value from the contrast it affords against an opposing litigant's case in chief.

Here, the Barge Plaintiffs contend that ING 4727 broke the floodwall.  This is based upon a wealth of eye and ear-witness accounts, and visible damage to both the barge and floodwall.  The Plaintiffs' case in chief relies on the inescapable conclusion that whatever force(s) motivated the barge to the floodwall - be it wind, waves, current, tide, or other forces - that such force was capable of doing so.  Likewise, the Plaintiffs' case in chief relies upon first-hand accounts of the barge breaching the floodwall as proof that the barge's impact with the floodwall was capable of breaching it.[4]  It is Lafarge whose experts go out on a very narrow limb to claim that it was ***impossible*** for the barge to move to the breach locations before they occurred, and ***impossible*** for the barge to cause the damages observed at the breach locations.   Plaintiffs present only affirmative proof in their case in chief, in the form of factual accounts - corroborated by expert

---

[3] *See also Richardson v. Rodrigue*, 1996 WL 476603, at *5 (E.D.La. Aug. 22, 1996), cited by this Court in *Smith*.

[4] This point is bolstered by Dr. Bea's video account (Opp. MSJ Exh. 55) and App. 17 of the IPET Report (Opp. MSJ Exh. 82).

opinion - resulting in the *certainty* that ING 4727 substantially and proximately caused or contributed to the breaches.

To allow this case to go forward and be decided on the basis of an "impossibility" hypothesis that, based upon the Tompkins and LaBlanc interviews, Lafarge knew to be false when it presented this expert testimony would deprive the June 2010 test-trial plaintiffs of their right to due process either on summary judgment or trial and destroy any informative value in the upcoming trial.

> **B.**     ***Lafarge is Not Prejudiced by Expert Rebuttal Offered to Impeach False Characterizations in its Motion for Summary Judgment of Plaintiffs' Experts' Analyses and Conclusions.***

Lafarge additionally complains about Plaintiffs' experts' Declarations submitted in rebuttal of Lafarge's and Lafarge's experts' blatant and repetitive misrepresentations that Plaintiffs' experts' testimony supports Lafarge's defenses. These Declarations are **Exhibits 41** (Spinks Declaration), **43** (Marino Declaration, **51** (Bartlett Declaration), **59** (Green Declaration) and **87** (Pazos Declaration) to the *Plaintiffs' Opposition to Motion for Summary Judgment*.   Lafarge claims now that these declarations contain new opinions.  They do not.  They consist entirely of rebuttal, to be used for *impeachment purposes.*  Barge Plaintiffs are not obligated to disclose witnesses or evidence for impeachment.  Fed. R. Civ. P. 26(a)(3)(i) and (ii).

> **C.**     ***Lafarge is Not Prejudiced by Rebuttal Witnesses Offering Impeachment Testimony Based Upon Factual Observations which Lafarge Itself Investigated and Documented in 2005 and 2006.***

In its Motion to Strike, Lafarge takes issue with Exhibits 22 through 25 to the *Barge Plaintiffs' Opposition to Motion for Summary Judgment*.  These exhibits consist of two interviews transcribed by Centanni Investigative Agency - hired by Lafarge to

conduct *ex parte*, surreptitiously recorded interviews of putative class members and undersigned's clients - and two Affidavits attesting to the contents of these two interviews.  These interviewees are Gertrude LeBlanc and Frazier Tompkins.   Lafarge has had abundant notice of these witnesses' accounts, which were obtained by Lafarge long before Lafarge disclosed them to the Plaintiffs. Lafarge has known since December 2, 2005 of Mr. Tompkin's account, and since July 31, 2006 of Ms. LeBlanc's account, yet did not reveal them to the plaintiffs until after much wrangling over Lafarge's evasive discovery responses, followed by Mag. Wilkinson's imposition of sanctions and orders that Lafarge disclose all Centanni interviews of putative class members.  These written accounts (and witnesses) are offered to *impeach* Lafarge's experts.  Barge Plaintiffs are not obligated to disclose witnesses or evidence for impeachment.  Fed. R. Civ. P. 26(a)(3)(i) and (ii).

### D.   *Rebuttal Evidence for Impeachment is Exempt from Disclosure.*

Fed R. Civ. P. 26(a)(3) relieves litigants from pretrial disclosure of impeachment witnesses and evidence.  Pertinent parts of Fed R. Civ. P. 26(a)(3) state:

> **(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

> **(i)** the name and, if not previously provided, the address and telephone number of each witness — separately identifying those the party expects to present and those it may call if the need arises;

> **(iii)** an identification of each document or other exhibit, including summaries of other evidence — separately identifying those items the party expects to offer and those it may offer if the need arises.

7

The discovery rules do not require pretrial disclosure of impeachment witnesses. See Fed.R.Civ.P. 26(a) (1) (A) (exempting from initial disclosure requirements the identity of individuals possessing discoverable information that would be used "solely for impeachment"); Fed R. Civ. P. 26(a) (3) (exempting from pretrial disclosure requirements any evidence to be used "solely for impeachment") *Design Strategies, Inc. v. Davis,* No. 02 Civ 5329 (VM), 228 F.R.D. 210   (S.D.N.Y. 2005).  "The Federal Rules, likewise, require pretrial disclosure of all exhibits to be used "other than solely for impeachment," see FED. R. Civ. P. 26(a)(3)."  *Alexander Binzel Corporation And Alexander Binzel Gmbh & Co., KG, v. Nu-Tecsys Corporation And Karl-Heinz  Binzel*, No. 91 C 2092, United States District Court, N.D. Illinois, Eastern Division (2000). *See* Exhibit B attached hereto.

The Barge Track of the *Katrina Canal Breaches Consolidated Litigation* is governed by Case Management Orders Nos. 4 (Record Doc. 3299), 5 (Record Doc. 7724, and amendments at Docs. 9004 and10881), and 7 (Record Doc. 12935 and modifications thereof), which require at the time of the Final Pretrial Conference that the parties prepare a joint Pretrial Order in accord with – and to the extent practicable - the Eastern District of Louisiana's standard Final Pretrial Notice.  The Case Management Orders do not contain any provisions altering the timing or extent of pretrial disclosure obligations contained in the standard Final Pretrial Notice. The  Eastern  District  of  Louisiana's standard Final Pretrial Notice requires at Section 10 that each party provide an exhibit list.  Section 10(a) affords a party which considers itself to have good cause not to disclose impeachment evidence the right to request *ex parte* an *in camera* conference concerning the party's position.  Section 13(b) of the standard Final Pretrial Notice states

that omission of rebuttal witnesses from the exhibit lists required by Section 13 is not grounds for excluding such witnesses at trial. The Case Management Orders require the listing of all witnesses and exhibits before trial, but recognize that the lists may be supplemented for good cause. Plaintiffs have shown good cause.

> ### E. *Any prejudice Lafarge claims is self-inflicted.*

Lafarge has had notice and opportunity to avoid what it deems to be prejudice, but has forgone any of the available remedies.

> #### i. **Lafarge withheld factual information from its own experts.**

Lafarge has known since December 2, 2005 of Mr. Tompkins' account, and since July 31, 2006 of Ms. LeBlanc's account, the dates on which Centanni secretly recorded them. There is no indication whatsoever that Lafarge told its own experts about the accounts of Gertrude LeBlanc and Frazier Tompkins before those experts formulated conclusions. Lafarge's experts' reports and testimony are devoid of any mention of Ms. LeBlanc's or Mr. Tompkin's observations of the barge adrift on the East side of the IHNC on Sunday, August 28, 2005. This is consistent with Lafarge's experts' explicit and purposeful disregard (or purposeful ignorance) of a wealth of first-hand eye- and ear-witness testimony that the barge scraped and grinded along, crashed into with a great "boom," and breached the eastern IHNC floodwall.

> Lafarge wrote in its Memorandum in support of its Motion to Strike:
>
> "Now that fact discovery has closed, it is too late for LNA to take the depositions of plaintiffs' two new witnesses, to depose any of plaintiffs' expert witnesses on the question of why their reports disagree with the statements of Mr. Tompkins or Ms. LeBlanc on this fundamental issue, or to depose other fact witnesses whose testimony would be relevant to the question of where the barge was located on Sunday, August 28. Moreover, LNA filed extensive summary judgment briefing based on the factual and expert record developed during the discovery period in this case, and

would be prejudiced if plaintiffs were permitted to inject new witnesses and evidence not included on their Final Lists in opposing LNA's motion."

Had Lafarge disclosed Ms. LeBlanc's and Mr. Tompkins' accounts to its experts, Lafarge could not now complain of any effect on their experts' contentions based on the assumption that ING 4727 left its berth during Katrina's dawn-Monday , August 29, 2005 onslaught.

Had Lafarge submitted its expert reports on its "impossibility" defense before the April 1, 2009 deadline for submission of Final Witness Lists and the April 30, 2009 deadline for submission of Final Exhibit Lists, plaintiffs could have listed LeBlanc and Tomkins by the deadline.  Instead, Lafarge decided to hold its "impossibility" defense in reserve and now seeks to have the Court enforce an unfair advantage.

ii.     **Lafarge has declined the opportunity to cure any possible prejudice, though none actually exists.**     The plaintiffs have caused no prejudice to Lafarge.  The Plaintiffs have no obligation to disclose impeachment witnesses or exhibits.  Fed. R. Civ. P. 26(a)(3); USDC EDLA Standard Final Pretrial Notice.  Nonetheless, after Lafarge filed its Motion to Strike, the Plaintiffs extended in writing to Lafarge the opportunity to immediately depose Mr. Tompkins, Ms. Frazier, Dr. Marino, and Messrs. Pazos, Bartlett and Spinks, concerning matters that Lafarge contends in its Motion to be "new" or "prejudicial," and to introduce and file the resulting transcripts into the record of Lafarge's Motion for Summary Judgment hearing.  Please see **Plaintiffs' Exhibit A,** November 10, 2009 correspondence from Barge Plaintiffs' Co-Liaison, Shawn Khorrami, to Defense Counsel John Aldock and Mark Raffman.  Lafarge flatly declined the offer.

       **iii.**    **What Lafarge now calls prejudice does not warrant the Court's**

**attention.** Self-inflicted prejudice is not "undue" prejudice. It is black-letter law that

courts are not concerned with avoiding self-inflicted prejudice. *United States v.*

*Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998) ("This fact supports our conclusion that any

prejudice Marshall suffered was self-inflicted."); *Curtis v. A. Garcia y Cia., Ltda.*, 272

F.2d 235, 242 (3d Cir. 1959) ("In these circumstances, we are satisfied that the court

committed no prejudicial error, but rather that any hurt the defense may have suffered

was self inflicted."); *Szuchon v. Lehman*, 273 F.3d 299, 315-16 (3rd Cir. 2001) ("We

would be hard-pressed, at the least, to distinguish the self-inflicted harm that Szuchon

caused by refusing to continue the trial from any prejudice that might have resulted from

his not having had more notice that this was a death penalty case."); *Public Loan Co.,*

*Inc. v. Federal Deposit Ins. Corp.*, 803 F.2d 82, 87 (3d Cir. 1986) ("Any prejudice the

appellants suffered therefrom resulted from a self-inflicted wound."); *United States v.*

*Lentz*, 524 F.3d 501, 529 (4th Cir. 2008), *cert. denied*, 129 S.Ct. 303 (2008) ("'any

potential prejudice arising out of the statements is entirely self-inflicted'"); *Kovalic v.*

*DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir. 1988) ("DEC must establish concrete

prejudice beyond the mere self-inflicted deprivation of a federal forum"); *Johnson v.*

*Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998) ("But this 'prejudice' was self-

inflicted."); *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1211 (10th Cir. 2006)

("Whatever harm befalls Prime Equipment as a result of entering into the Joint

Stipulation is of its own making, and therefore does not qualify as prejudice under Rule

15(a)."). There is no prejudice in the Plaintiffs' witnesses' Affidavits or experts'

Declarations, but for that which Lafarge manufactures and embraces it as a tactic in

response to probative, admissible impeachment evidence detrimental to their defenses. The Barge Plaintiffs are neither responsible nor accountable if Lafarge favors a guise of prejudice at the expense of a remedy.

> ## II.   LAFARGE HAS NOT BEEN CONFRONTED WITH ANYTHING NEW.
>
> ### A.   The Impeachment Affidavits of Gertrude LeBlanc and Frazier Tompkins Contain Only the Accounts Centanni Investigative Agency Secretly Recorded During Ex Parte Interviews.

Shortly after Katrina, Centanni Investigative was hired by counsel for Lafarge in order to surreptitiously tape-record Lower Ninth Ward residents' oral accounts of the barge ING 4727's role in breaching the eastern Inner Harbor Navigation Canal floodwall. Centanni scavenged a community scarred and traumatized by the sudden and still painful loss of friends and family, and of property and a lifestyle going back generations. Centanni placed signs around the Lower Ninth Ward luring residents to call a 1-800 number if they knew anything about the breaches. Many called. Centanni's investigators exploited this vulnerable population, often evading straight-forward questions by interviewees seeking greater disclosure of the unknown caller's role other than, "we're just trying to find out what happened." In truth, these investigators were working for defense counsel, which fact was uniformly omitted from any response to interviewees' queries. In no instance were interviewees told that they were being recorded. Centanni proceeded upon defense counsel's mandate with no apparent regard for the fact that many interviewees were represented by counsel. Centanni built upon this base, following as many leads and contacting as many residents as possible. Two such residents were Gertrude LeBlanc and Frazier Tompkins, who told Centanni's investigators that they saw ING 4727 loose on the East side of the IHNC as late as mid-afternoon on Sunday, August

28, 2005, the day before Katrina arrived.  Lafarge knew of these accounts long before the

Plaintiffs did, yet resisted disclosure.  Exhibits 22 – 25 to the Plaintiffs Opposition to

Motion for Summary Judgment consist of nothing more than the fruits of Lafarge's,

Defense Counsel's, and Centanni's illegitimate exploits.[5]   Lafarge has held these

accounts in their possession since they were recorded in December 2005 (Frazier

Tompkins) and July 2006 (Gertrude LeBlanc).

### B. The Plaintiffs' Expert Declarations contain no new opinions, only rebuttal.

Lafarge argues in Section II.B of its Motion to Strike that the Barge Plaintiffs'

Experts' Declarations contain "new" material.[6]   Defendants also argue that the

declaration contains "new opinions" which were not expressed by Dr. Omalu in his

expert report. (Docket No. 138 at 5-12). Defendants maintain that the new opinions were

therefore not disclosed as required under Rule 26(b)(2)(B)(1), and request that the

declaration be stricken. *(Id.* at 12-13). As noted above, Plaintiffs contend that the

declaration is merely rebuttal and provides an "amplification" of Dr. Omalu's opinions

previously expressed in his report and during his deposition. (Docket No. 139 at 3)."

*Pritchard v. Dow Agro Sciences*, Civil Action No. 07-1621, (W.D.Pa. 11-12-2009). *See*

---

[5]  In rulings (Record Docs. 12605 and 15206) on motions concerning Lafarge's conduct through Centanni Investigative Agency, Magistrate Wilkinson wrote:  ""Nonetheless, like other courts, this court disapproves of the secret tape-recording of witnesses and finds that the investigators' conduct in surreptitiously taping conversations vitiates the qualified protection of Rule 26(b)(3)."   "Although private investigators, not lawyers, conducted the surreptitious tape recording of these statements, the investigators were working as an extension of counsel of record in this case and the work of the investigators directly the benefited counsel."  "I have stated my disapproval of the Centanni investigators' evasions, particularly as to the identity of their client, while taking witness statements. In addition, questionable conduct of the Centanni investigators concerning their "collection" of the personal property of putative class members is discussed below."  "I find that the conduct of Centanni's investigators, directed by Lafarge's attorneys, in entering the homes of evacuated victims of the Hurricane Katrina levee failures and removing their personal property without the owners' permission or the express warrant of any governmental authority was outrageous, offensive, unwarranted and arguably criminal."

[6]  But see Lafarge Motion to Strike, Section II.C, wherein Lafarge claims that the expert declarations "rehash" the experts' original reports.

**Exhibit G** attached hereto.  "Caselaw establishes that a declaration should be stricken if it contains new opinions or information which is contradictory to that set forth in the expert report, *see Stein v. Foamex Intern, Inc.,* No. Civ. A. 00-2356, 2001 WL 936566 (E.D.Pa. 2001)[fn9], but it need not be stricken if it contains merely "an elaboration of and consistent with an opinion/issue previously addressed" in the expert report, *Emcore Corp. v. Optimum Corp.,* 2008 WL 3271553, at *4 (W.D.Pa. Aug. 5, 2008) (citing *Thompson v. Doane Pet Care Co.,* 470 F.3d 1201, 1203 (6th Cir. 2003))."  *Id.*

"The expert's testimony could hardly have been an unfair surprise to Re-Direct, as it was largely an elaboration of DeMuro's written report..." "defense counsel had adequate warning that DeMuro had observed earlier problems with the Re-Direct program and an adequate opportunity to question whether those observations factored into the conclusions expressed in his written report." *Muldrow v. Re-Direct*, 493 F.3d 160 (D.C. Cir. 2007).

All of the plaintiffs' experts rendering any opinion about ING 4727 have opined repeatedly, in class certification reports and depositions, and in merits reports and depositions, that ING 4727 broke away due to unsafe mooring, went adrift in the IHNC, and was a substantial causative factor of the eastern IHNC floodwall breaches.  Their Declarations submitted as exhibits to the Plaintiffs' Opposition to Motion for Summary Judgment deviate in no respect whatsoever from these long-standing, and long-discussed conclusions.   Likewise, it has been Melvin Spinks' conclusion, also fully articulated in class certification and merits reports and depositions, that the IHNC breaches caused the flooding of and consequent damage to, the area between the IHNC and Paris Road.  His Declaration deviates in no respect from this conclusion.

Lafarge objects to the Plaintiffs' experts' efforts to resist being saddled by Lafarge with opinions they did not render, by which pretense Lafarge hopes to characterize the Plaintiffs' experts' opinions as consistent with Lafarge's defenses. This is attempted through a pattern of misconstruction, mischaracterization, and mis-application of the Plaintiffs' experts' reports and testimony in order to fit a context manufactured solely by Lafarge. Lafarge hopes to advance its case in chief through this artifice, which Plaintiffs' experts rebut by impeachment in their Declarations. Specific explanations or emphasis Plaintiffs' experts express in their Declarations are not new, but are elaborations of, explanations of, and fully commensurate with, their long-expressed opinions about the roles which ING 4727 and the IHNC breaches played in giving rise to the Plaintiffs' causes of action, and causing the Plaintiffs' damages. As well, they are rebuttals of Lafarge's case in chief, which Plaintiffs are not even obligated to disclose (though they have) unless ordered to in accord with the EDLA standard Final Pretrial Notice.

Lafarge presents a chart at pp 11 – 12 of its Motion to Strike which characterizes as "new" contents of Plaintiffs' experts' Declarations. Plaintiffs respond in kind to each chart entry.

      **i.**    **Lafarge's contention as to Plaintiffs' maritime expert, Cmdr. (Ret.) Don Green:**

> "The declaration concerns the movement of the Barge ING 4727 across the IHNC, allegedly due to tidal flow. Plaintiffs' expert witness disclosure does not identify tides or Barge movement as subjects of Green's expert testimony. See Doc. 18390, at 19. Green's expert report makes no mention of any study of tides or tide records. See Exh. 29 to LNA's Motion for Summary Judgment. And his new reliance on Tompkins/LeBlanc testimony to find

> that the Barge was in the IHNC "for at least 18 hours … before Hurricane Katrina made landfall" contradicts his expert report (at 3) that the Barge broke free "[d]uring the early morning hours of August 29, 2005."

At this point in the litigation, Plaintiff's Case in Chief concerns the end result – ING 4727's contact with the floodwall - not the means by which the barge got there. The Plaintiffs have consistently maintained that - regardless of when the barge broke away, regardless of the forces that moved it from its berth and across the canal, and regardless of the route it took across the canal - barge ING 4727 was seen and heard to crash into, lean upon, and cause the failures of the eastern IHNC floodwall on August 29, 2005. Plaintiffs posses ample proof that it *actually was there and caused the breaches*. Lafarge parses the events leading to the end result, in order to construct a defense, for its Case in Chief.

The time at which the barge became adrift became material only when Lafarge presented its expert "impossibility" defense—without revealing to its own experts or the Court that it knew the underlying assumption to be false—long after Commander Green issued his earlier Report. Lafarge cannot be heard to complain that, once its subsequent defense made the testimony of these eyewitnesses material, Commander Green examined the evidence it had tried to conceal and explained the significance of the testimony.

Ms. LeBlanc and Mr. Tompkins observed the barge adrift in the IHNC on Sunday, the day before Katrina made landfall. Lafarge's experts assume that the barge broke away during the storm, at a time at which they claim that the operative physical forces could not have carried it from Lafarge's terminal to the eastern IHNC floodwall breach locations. The earlier breakaway would expose the barge for a longer period, to

motivating forces other than those during Katrina (such as the Sunday, August 28, 2009 tides). The portions of Cmdr. Green's Declaration with which Lafarge takes issue are rebuttal opinion, based upon rebuttal evidence, to refute Lafarge's experts' strained conclusion that the barge could not have been at the breach locations before they occurred.

> ### ii. Lafarge's contentions as to Plaintiffs' maritime expert and breach causation expert, Hector V. Pazos.

>> Challenge to Cushing's conclusions that a barge impact would result in only localized concrete cap damage, relying on new affidavits of LeBlanc and Tompkins. Decl. at ¶¶ 12-16. These are new opinions not covered by his expert report."

Any challenge in the Plaintiffs' Opposition to Motion for Summary Judgment by Plaintiffs' experts of any of Lafarge's experts' conclusions contained in the Motion is - *by its very nature and timing* – *REBUTTAL to Dr. Cushing's report and testimony*. "Disingenuous" and "misleading" do not adequately describe Lafarge's criticism of the absence of such challenge in Mr. Pazos' report, when Mr. Pazos' report was *due one month before Cushing's.* Moreover, Lafarge's attempt to censure this rebuttal is nothing less than audacious when Lafarge itself did not ask Mr. Pazos – *not even once during his two-day deposition* - whether he took issue with any of Mr. Cushing's pronouncements about localized damage to the concrete cap.

The next item is Lafarge's artificial relation of Mr. Pazos' Cushing-rebuttal with the accounts of Ms. LeBlanc and Mr. Tompkins concerning the adrift ING 4727 on the day before Katrina. An intellectually honest reading of Sections 12 – 16 of Mr. Pazos' declaration reveals that Mr. Pazos does not base his rebuttal of Cushing's concrete cap allegation on these witnesses, but that they are mentioned only in Section 14, and only in

the context of the barge's location on August 28, 2005.  Only a forcefully obtuse reading of Section 14 can create any actual connection between these witnesses and the concrete cap, to which their accounts are wholly irrelevant.  Lafarge criticizes Mr. Pazos based only upon the topical heading several sections above Section 14, but again ignores context and substance in order to foist an invalid point.

Lafarge criticizes Mr. Pazos' discussion of wind direction in his Declaration, and his reliance on the Villavasso deposition in discussing it Lafarge has known since December 2005 that ING 4727 was observed loose in the IHNC before the storm.

> ▪ Opinion as to wind direction and its contribution to the movement of Barge, based on Villavasso testimony. Decl. at ¶¶ 20-28. His expert report contains no such discussion, even though it relies heavily on Villavasso's testimony on other topics.

Lafarge placed wind direction at issue.  The Plaintiffs did not.  The supposed impossibility of barge movements in any direction other than prevailing wind direction is Lafarge's invention and a cornerstone of their Case-in-Chief, as advocated by their experts Cushing and Dooley in their reports submitted *after* Mr. Pazos' report.  It is not an element of Plaintiffs' case.  It is to be borne in mind that Plaintiffs possess proof that the barge caused the breaches, whether motivated by one force or another, and regardless of the path the barge took to the breach locations.   Evidence of winds moving things (in this case, water and waves) in directions other than the prevailing wind – on which force Lafarge hangs its defense -  is for rebuttal and impeachment, and not subject to the restrictions Lafarge would have the Court impose.

Lafarge was present at Mr. Villavasso's December 18, 2007 deposition, cross examined him extensively, and has been aware since that date that he observed the wind

splashing water over the eastern IHNC floodwall in a direction other than that which Lafarge contends is the only direction in which the wind could move an object in the Canal. Lafarge's experts should have had access to Mr. Villavasso's deposition. When Lafarge and its experts attempt in Lafarge's Motion for Summary Judgment to convolute and rewrite Mr. Villavasso's testimony, or to undermine his abundant candor and honesty about what he observed, rebuttal is entirely legitimate and appropriate. And given Lafarge's admitted recognition that Mr. Pazos relied heavily upon Mr. Villavasso's testimony in his report, before Lafarge's experts disclosed their reports, there is absolutely nothing new in rebuttal evidence taken from Mr. Villavasso's deposition.

- Opinion as to the contribution of a "water surge" or "Meteotsunami" on the movement of the Barge. Decl. at ¶¶ 29-30. No discussion of this in his expert report. Again, sole support is the testimony of Villavasso.

Again, Lafarge - not the Plaintiffs - rests its case in chief on the supposed theory that no force during the storm could have moved the barge to the breach locations before the breaches occurred. Mr. Villavasso was questioned extensively in his deposition about his account of a "twenty foot" wave moving from north to south in the IHNC just before the barge was seen through the gap it created in the floodwall at the North Breach location. Plaintiffs listed Mr. Villavasso as a witness in their April 1, 2009 Final Witness List (# 42) and listed his deposition in their April 30, 2009 Final Exhibit List (# 282). What Mr. Villavasso saw, and what it represents scientifically, are for rebuttal and impeachment.

The words "wave" and "waves" appear over 90 times in Mr. Pazos' deposition taken by Lafarge. Lafarge questioned Mr. Pazos extensively concerning the effects of waves on the barge.[7]

Lafarge contends that storm surge proximately caused or contributed to the breaches. Plaintiffs do not claim that surge was a proximate cause. Lafarge made this claim in their Answer(s) and through their experts long before it became basis for rebuttal. Lafarge could have questioned Plaintiffs' experts about storm surge, but did not. A party cannot complain when a witness provides a post-deposition declaration in opposition to summary judgment, concerning matters not enquired into at the witness's deposition. *Baker v. Silver Oak Senior Living Management Co., L.C.*, 581 F.3d 684, 690-91 (8th Cir. 2009).

### iii. Lafarge's contentions as to Plaintiffs' breach causation expert, Genarro Marino, P.E., Ph.D.

> Challenge to Dr. Cushing's Barge impact calculations. Decl. at 10-17. At his 2008 deposition, Marino testified that he "plan[ned] to" undertake impact calculations (LNA Summary Judgment Exh. 9 at 100-01) but his 2009 merits expert report did not contain any such calculations because, he testified, "[t]hat analysis never got finished" despite his having been given three extra months to complete it. LNA Summary Judgment Exh. 8 at 31-32; see also *id.* at 35-36, 127.

The parties and Court are aware - but Lafarge makes no mention in its Motion to Strike - of the fact that the Barge Plaintiffs are the only litigants in the *In Re Katrina Canal*

---

[7] Although Plaintiffs' counsel objected to lines of questioning concerning waves, his deposition occurred before Lafarge put its expert's contentions before the Court via its Motion for Summary Judgment. Although Plaintiffs' counsel stated at that time that Mr. Pazos was not being offered as a wave expert, Lafarge was allowed to question him extensively on this topic, thus establishing his expertise, and thus negating claims of prejudice. Accordingly, Plaintiffs will seek to qualify him to the extent necessary to rebut Lafarge's contentions about waves being incapable of moving the barge.

*Breaches Consolidated Litigation* who will present proof that ING 4727 caused the IHNC floodwall breaches.  What this means is that Lafarge has at its disposal all of the work performed by experts in other litigation tracks whose plaintiffs seek to prove that the IHNC floodwall broke for reasons other than barge contact.  Genarro Marino was retained by the Barge Plaintiffs' in late 2008 - after transfer from Section "C" - and put to the task of analyzing the eastern IHNC floodwall breaches.  He approached this task by trying to ***disprove*** that the barge caused the breaches until he could rule out all other causes.  Mr. Marino received countless terabytes of United States Government data on dozens of hard drives, and all of the MRGO experts' data and conclusions, and had to sift through it all, as well as the IPET, ILIT and Team Louisiana materials, to find the raw data needed to fully perform his study.  He found that all other impact load calculations and soil stability analyses did not incorporate all available data, and did not use actual conditions present at the most likely breach times.  Even with the most sophisticated software and the most powerful computer processors, the computer calculations as to each scenario modeled takes weeks and months to generate.  Mr. Marino and the Barge Plaintiffs' did not have three years' worth of other experts' calculations to simply reiterate as proof of wall breach causation.  As Lafarge acknowledges, and as Dr. Marino clearly expressed, Lafarge has been fully aware of Mr. Marino's impact models, which are not new, and which were discussed in testimony, but were not completed yet.  Dr. Marino testified in his August 7, 2009 deposition (emphasis added):

```
                           31
1          GENNARO G. MARINO, PH.D., P.E.       31
2     A.  Yes.
3     Q.  As of the time that you issued your
4     preliminary report, you identified some of the work
5     that you had done as of September 2008.  Do you
```

6  remember that?
7     A.  Yes.
8     Q.  And -- and among the work you had done was to
9  review public reports, eyewitness depositions,
10  technical publications and photographs.  Do you see
11  that you had done that in the first paragraph of the
12  first page of the preliminary report?
13     A.  Yes.
14     Q.  And *you also said that you were performing*
15  *certain engineering calculations*.  Do you also see
16  that in that same segment?
17     A.  Yes.
18     Q.  The *engineering calculations that you were*
19  *performing at that time related to a barge impact on a*
20  *floodwall.*  Do you remember that?
21     A.  Yes.
22     Q.  Would you agree with me that there are no
23  such engineering calculations in the report that you
24  issued in 2009?
25     A.  Yes.

32

1          GENNARO G. MARINO, PH.D., P.E.          32
2     Q.  What happened to the engineering
3  calculations?
4     A.  That analysis never got finished.
5     Q.  Why not?
6     A.  We're still working on it.  It's basically
7  taking longer than we expected.
8     Q.  What work have you done on the engineering
9  calculations of barge impact since 2008?
10     A.  Basically, we have set up three distinct
11  models, 3D models, and we're working on getting them
12  to run appropriately.


70

12  Q.  In the analysis that you began to do about a
13  hypothetical barge load and then stopped doing and
14  that you may return to, won't you be required to
15  perform calculations to determine the wind load on the
16  barge?
17     A.  Are you talking about the work that we have
18  ongoing?

114

10 Q. What do you mean by "a significant force"?
11    A. Like I said, we haven't completed our impact
12 analysis. So I wouldn't be able to tell you what that
13 level of force was, but it was enough to cause it to
14 tear.
15    Q. The barge has to be traveling in the
16 direction of the floodwall with sufficient velocity to
17 impart that energy to the wall to cause the thing to
18 tear; right?
19    A. Yes.

Lafarge also fails to mention that Dr. Bea was filmed alongside ING 4727 saying that the barge caused the eastern IHNC floodwall breaches, and that the IPET calculated that contact between the barge and the floodwall would cause it to breach. Dr. Marino's impact analyses say the same. The video of Dr. Bea, the IPET analysis in Appendix 17, ***and Dr. Marino's impact analyses*** are included in the Barge Plaintiffs' Final Exhibit List.[8] Lafarge cannot claim that the analyses are new or prejudicial.

> Challenge to LNA's identification of other floodwalls that did not fail when impacted by barges. Decl. at 17-18. Marino's report does not address this subject, and the declaration relies only on new analysis and opinion.

Please see Figures 73 and 74 of Cushing's report, concerning other barges impacting other floodwalls.

175
18 Q. As you sit here today, having reviewed
19 Dr. Cushing's analysis --
20    A. I haven't.
21    Q. You haven't reviewed his analysis?
22    A. No. I got it -- I got it Monday afternoon.[9]
23    Q. All right.
24    A. I was in Kentucky giving a talk on Wednesday

---

[8] 226. Expert reliance animations of reconstruction of movements of ING 4727 and impacts with eastern IHNC floodwall, and floodwall failures;

[9] Mr. Cushing's report was provided on July 29, 2009, just days before Dr. Marino's August 7, 2009 deposition.

25   at Kentucky University.  I didn't have time to do

176

1          GENNARO G. MARINO, PH.D., P.E.        176
2   that.

Moreover, Dr. Marino's brief comment that alleged damage pattern on other floodwalls does not prove that ING 4727 did not breach the eastern IHNC floodwall is purely rebuttal.  It contains no "analysis" as Lafarge contends, but merely the observation and corroboration of Dr. Bea's and the IPET's conclusions that barges are capable of exerting great force on floodwalls.

> New calculations concerning enlargement of gap between
> sheetpile and soil due to Barge impact. Decl. at 18. These
> are new calculations, not part of his expert report.

This section of Dr. Marino's Declaration with which Lafarge takes issue contains the heading, "LNA's Motion Misconstrues My Gap Formation Investigation," and begins, "LNA's Motion states that no calculations were made regarding the formation of a gap from water pressure (p. 9, 44). This statement misconstrues the analysis I performed regarding the formation of a gap...etc."  Lafarge's claim that any calculations are new is ***not correct***, and Dr. Marino's statement in his Declaration is purely rebuttal of Lafarge's claim that he did not perform a gap analysis.  It is contained in Section 5 of his report, Plaintiffs' Exhibit 42 Parts 1 and 2 to *Plaintiffs' Opposition to Motion for Summary Judgment.*

## III.    PLAINTIFFS'    EXPERT    DECLARATIONS    ARE    ADMISSIBLE

Lafarge argues in Section II.B of its Motion to Strike that the Barge Plaintiffs' Experts' Declarations contain "new" material.  But in Section II.C., Lafarge argues that the declarations are inadmissible because they "rehash" the original expert reports.

24

Lafarge's mutually inconsistent arguments fail to inform the Court of applicable jurisprudence, and are unpersuasive.  The Barge Plaintiffs have not only the option, but the obligation in opposing Lafarge's Motion for Summary Judgment to come forward with fact-intensive expert rebuttal in the form of the sworn declarations submitted here.

The use of opinion evidence in the form of an affidavit is appropriate to support or oppose a motion for summary judgment. Opinion testimony that would be admissible at trial may be considered. *Paton v. La Prade,* 524 F.2d 862, 871 (3d Cir. 1975). A court must disregard an expert affidavit where the affidavit is "essentially conclusory" and lacks specific facts. *Shaw by Strain v. Stackhouse,* 920 F.2d 1135, 1144 (3d Cir. 1990) (quoting *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir. 1985)).  *PNC Bank v. Liberty Mut. Ins. Co.*, 912 F. Supp. 169  (W.D.Pa. 1996).

"However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward `significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119." *Hughes V. Boston Scientific Corporation*, C.A. No. 2:08cv79KS-MTP, (S.D. Miss. November 12, 2009). *See* **Exhibit**

**E** attached hereto.    "Under Rule 26, a party using an expert witness must disclose a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i). "The purpose of the rule is to eliminate `unfair surprise to the opposing party.'" Muldrow ex rel. Muldrow v. Re-Direct, Inc., 493 F.3d 160, 167 (D.C. Cir. 2007) (citing Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995)). However, "[s]ection 26(a)(2)(B) does not limit an expert's testimony simply to reading his report." Thompson, 470 F.3d at 1203. Instead, *"[t]he rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."* Id. These courts were not concerned with experts that merely elaborate upon their expert report, but experts that testify as to "a wholly new, previously unexpressed opinion." Frazin v. Haynes & Boone, LLP (In re Frazin), Ch. 13 Case No. 02-32351-bjh-13, Adv. No. 08-3021-bjh, 2008 Bankr. LEXIS 3273, at *102 n. 39 (Bankr. N.D. Tex. Sept. 23, 2008)." *City Of Owensboro v. Kentucky Utilities Company*, (*See* **Exhibit C** attached hereto), No.: 4:04-CV-87-M  (W.D.Ky. 10-14-2008) (emphasis added). [10] [11]

---

[10]  The Court went on to say:  "Therefore, it is clear that Shepard may not offer any new expert opinions. However, it is equally clear that he may elaborate and explain the opinions and findings contained in his expert report. It is not clear what Shepard's testimony will be at trial and therefore, the Court is unable to conclude at this time whether such testimony will be admissible. Therefore, the Court will rule on the admissibility of Shepard's testimony at trial." *City Of Owensboro.*

[11] *Cf.  In re Vioxx Products Liability Litigation*, 401 F. Supp. 2d 565, 593 (E.D. La. 2005) (refusing to exclude plaintiff's expert testimony although the expert report was `quite short and conclusory" where the defendant could cross-examine the expert at trial);  *IN RE MTBE Products Liability Litigation*, 00 MDL 1898 (SAS), 04 Civ. 3417 (SAS)  (S.D.N.Y. 7-20-2009)(*See* **Exhibit F** attached hereto)("There is no doubt that Tallett's report is  imperfect. Ideally, an expert report would contain every fact, conclusion, and detail of the planned testimony. However, "[s]ection 26(a)(2)(B) does not limit an expert's testimony simply to reading his report. . . . The rule contemplates that the expert will supplement, elaborate, explain and subject himself to cross-examination upon his report.");      *Emcore Corp. v. Optimum Corp.,* 2008 WL 3271553, at *4 (W.D.Pa. Aug. 5, 2008); *Equal Employment Opportunity Commission V. Freemen*, 3:06-0593 (M.D.Tenn. 6-15-2009) (See **Exhibit D** attached hereto); *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006); *Minebea Co. v. Papst*, 231 F.R.D. 3, 8 (D.D.C. 2005);

Lafarge's complaints that the Plaintiffs' expert's Declarations contain rebuttal flies in the face of jurisprudence recognizing that expert rebuttal is not only anticipated under Fed. R. Civ. P. 26, but embraced.  Lafarge's reliance upon *Eve v. Sandoz Pharm. Corp.*, No. IP 98-1429-C-Y/S, 2001 U.S. Dist. LEXIS 4531, at *50 (S.D. Ind. Mar. 7, 2001) detracts from great weight of this jurisprudence.     Furthermore,     Lafarge's aspersions characterizing the Plaintiffs' experts' Declarations as conclusory and argumentative is hardly compelling given the soundly reasoned explanations Plaintiffs' experts offer the Court in their Declarations.   Lafarge cites **no authority** for the proposition that the Plaintiffs' experts cannot correct Lafarge's mischaracterizations of their opinions.  In Lafarge's view, the only persons capable of doing so are Plaintiffs' Counsel, which is not counsel's role.   Fed. R. Civ. P. 26 "*contemplates that the **expert** will supplement, elaborate upon, explain and subject himself to cross-examination upon his report*."   *City Of Owensboro v.  Kentucky Utilities Company*, No.: 4:04-CV-87-M (W.D.Ky. 10-14-2008). *See* **Exhibit C** attached hereto

## IV   LAFARGE HAS PROVIDED LATE EXPERT DISCLOSURES WITHOUT LEAVE OF COURT, AND HAS THUS WAIVED ANY GROUND FOR COMPLAINT DIRECTED AT THE BARGE PLAINTIFFS.

Lafarge's expert, Dr. Robert Bea, submitted his initial report on or about August 1, 2009.  On September 4, 2009, after Genarro Marino's deposition, Bea issued a supplemental report **after the deadline for such** in efforts to rebut Dr. Marino's deposition testimony.  Though counsel for Lafarge expressed a vague reservation of

---

*Muldrow v. Re-Direct*, 493 F.3d 160 (D.C. Cir. 2007) ("The expert's testimony could hardly have been an unfair surprise to Re — Direct, as it was largely an elaboration of DeMuro's written report..." "defense counsel had adequate warning that DeMuro had observed earlier problems with the Re-Direct program and an adequate opportunity to question whether those observations factored into the conclusions expressed in his written report.");

rights with respect to three soil samples upon which Dr. Marino relied from Washington Group International's expert reports, not present at Dr. Marino's deposition, Deposition of Genarro Marino, p. 240, lines 10 - 20 (please see footnote 7, below), the WGI reports were available to Dr. Bea, and to Lafarge, and to all other entities concerned with the causes of the IHNC floodwall breaches.  Lafarge did not seek leave or assert any intention to have Dr. Bea submit a 17 page supplement after the deadline for his report.[12] Lafarge cannot rightfully complain about Plaintiffs' rebuttal evidence for impeachment.

### V.   LAFARGE FAILS TO DEMONSTRATE THAT PLAINTIFFS' DISCLOSURES WERE LATE, OR THAT THEY WERE EVEN REQUIRED.  NEVERTHELESS, JURISPRUDENTIAL CONSIDERATIONS CONCERNING LATE DISCLOSURES REQUIRE DENIAL OF LAFARGE'S MOTION.

Barge Plaintiffs' posit that the following analysis is unnecessary, and not germane to the two fact witness statements or expert declarations Lafarge complains-of in the instant motion.  The analysis has nothing to do with rebuttal evidence for impeachment. Nonetheless, in the event that the Court deems any of Lafarge's contentions to have merit, the Barge Plaintiffs present the following.

> "When a district court excludes expert testimony as a sanction for a violation of a discovery order, we determine whether the court's action is an abuse of discretion by examining four factors:

---

[12]       240
10  MR. RAFFMAN:  All right.  We have -- for the
11  record, we have tried to ascertain the source of the
12  three boring samples that Dr. Marino relied on for
13  that lobe at the north breach.  We're told that the
14  results appear somewhere in the Washington Group
15  reports that are referenced at Page 5-9 of
16  Dr. Marino's report.  These Washington Group materials
17  were not included among Dr. Marino's reliance
18  materials, and, therefore, we've not had an
19  opportunity to examine them, and, therefore, we will
20  reserve all our rights in that regard.

"(1) the explanation, if any, for the party's failure to comply with the discovery order;

"(2) the prejudice to the opposing party of allowing the witnesses to testify;

"(3) the possibility of curing such prejudice by granting a continuance; and

"(4) the importance of the witnesses' testimony.

*Barrett v. Atlantic Richfield Co.*, 95 F.3d 375 (5th Cir. 1996);

A.     **Explanation for Extent and Timing of Disclosure:**  The Barge Plaintiffs *did not fail* to comply with the discovery order.  The Barge Plaintiffs are not required to disclose proof for rebuttal and impeachment. "The discovery rules do not require pretrial disclosure of impeachment witnesses. See Fed R. Civ. P. 26(a)(3), exempting from initial disclosure requirements the identity of individuals possessing discoverable information that would be used "solely for impeachment" and  exempting from pretrial disclosure requirements any evidence to be used "solely for impeachment." *Design Strategies, Inc. v. Davis,*  No. 02 Civ. 5329 (VM), 228 F.R.D. 210   (S.D.N.Y. 2005).  Plaintiffs did not fail to disclose anything to which Lafarge was entitled.[13]

However, by way of explanation alone, the proof subject of Lafarge's present motion *was* disclosed, *at least eight months before trial*, but not sooner, because the

---

[13] From *Barge Plaintiffs' Final Exhibit List (April 1, 2009):* 226. Expert reliance animations of reconstruction of movements of ING 4727 and impacts with eastern IHNC floodwall, and floodwall failures; 964. Any and all for *impeachment, rebuttal*, refreshment of recollection; Barge Plaintiffs *reiterate and incorporate by reference their Interim Exhibit Lists* to the extent that any item(s) is inadvertently omitted from this Final Exhibit List. Barge Plaintiffs further incorporate witness lists submitted at any time(s) by Lafarge North America, Inc., Zito entities, Domino/Unique, Ingram Barge Company, and/or the United States. Barge Plaintiffs reserve the right of, and anticipate, supplementation and/or amendment of this list in light of continuing discovery, expert opinion production, depositions, and in light of matters which arise as a result of ongoing Robinson and/or EBIA trials or appeals.

From *Barge Plaintiffs' February 2009 Exhibit List* (unnumbered): Any and all tapes and/or transcripts Centanni Interviews, including those produced as LNA 001605- LNA004143, 05778-05801;

29

barge's particular path from the Lafarge terminal to the eastern IHNC floodwall was not material.  Ms. LeBlanc's and Mr. Tompkins' accounts were ***not*** within the body of proof Plaintiffs contemplated introducing, nor the proof Plaintiffs' experts needed to consider – <u>not until</u> Lafarge filed its Motion for Summary Judgment and expert testimony, alleging that the barge could not possibly have moved to the breach locations before they occurred.  Prior to Lafarge's merits expert disclosures in late July and August 2009, there was no palpable notice of any theory that the barge could not travel to the breach locations, or impart sufficient force to cause the breaches, and no unequivocal notice that Lafarge would advance a defense constructed around such a theory.[14]   Though it did not, Lafarge might have found reason to abandon this approach after deposing the Plaintiffs' experts.  Prior to Lafarge formally pleading its experts' suppositions, through its Motion or Summary Judgment, the issue was not fully raised for resolution.  Given the timing by which Lafarge's defenses were put on record, the Plaintiffs' experts' Declarations, and Ms. LeBlanc's and Mr. Frazier's statements lacked any relevant context for their earlier existence.

It is noteworthy as well that the Scheduling Orders in the Barge Litigation call for final witness and exhibit lists long before the Pretrial Order is due, and long before trial, which is not the usual procedure.  Typically, final witness and exhibit lists are due ***after*** dispositive motions, and in connection with the Joint Pretrial Order and Pretrial Conference.  In this case, the difference may have resulted from several continuances of the original trial date resulting in final exhibit and witnesses lists having been tendered

---

[14] Lafarge did not argue in its class certification opposition that the barge could not have moved to the breach locations before they occurred.  Lafarge's Answers herein contain general denials and some allegations, but none to the effect that the barge could not have moved to the breach locations before they occurred.

over a year in advance of the current trial date.  Rule 26(e)(2), Fed. R. Civ. P., allows supplementation of expert reports **and depositions** up until the time of Final Pretrial Disclosures under Rule 26(a)(3).  The curing of misperceptions and misdescriptions of the expert's evidence is just as important as the curing of any errors or incomplete responses, matters specifically allowed in general supplementations under Rule 26(e)(1)(A).

By contrast, the rebuttal here refers directly to Lafarge's representations and explains why they are incorrect.  In addition, Mr. Marino provided the one part of his report that he had previously stated in his Report and in his deposition was not yet done, meeting the alternative requirement in Rule 26(e)(1)(A) that the supplementation address as aspect of the prior disclosure that was "incomplete." The Plaintiffs must be afforded the ability to reasonably respond to Lafarge's Motion for Summary Judgment without any prejudicial effect of the unusual timing or sequence of the Case Management Orders herein.

**B.     Prejudice to Lafarge:**  The greater part of this Opposition is dedicated to demonstrating why Lafarge is not prejudiced, or if Lafarge is, why it is Lafarge's own fault.

**C.     The Possibility of Curing Any Prejudice:**  Lafarge is not prejudiced. Plaintiffs nonetheless offered to make Ms. LeBlanc, Mr. Tompkins and the Plaintiffs' experts available for immediate deposition, with the added incentive that the transcripts would be immediately placed into the record for the Court's consideration of Lafarge's Motion for Summary Judgment.   This was done to alleviate Lafarge's *claims* of prejudice.  Lafarge declined the offer.

**D.     Importance of the Evidence:**   *First*, **t**his litigation is to proceed via test case trials.  Though the Plaintiffs withhold for the time-being any formal response to the Court's admonition that collateral estoppel, *res judicata*, or other preclusive doctrine could affect subsequent trials or motions for summary judgment, the Court has expressed as much.  The purpose of test case trials is to obtain accurate results based upon all available proof, so as to inform both the Court and parties of the likely outcome of successive trials.  To strike any proof as purportedly untimely, eight months before trial, is to doom the first bellwether because it will not resemble subsequent test case trials in which the stricken proof will be offered.  It would also deprive the plaintiffs in the June 2010 test-case trial of the due process of law, by allowing Lafarge to spring its "impossibility" defense without allowing plaintiffs a reasonable opportunity to meet it.

This Court confronted related questions in the *Robinson* Track of *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182, 2009 WL 3254903 (E.D.La. April 21, 2009), when the Plaintiffs sought to strike a supplemental report of the United States' expert, Dr. Donald Resio.[15]  That case involved an extensive and difficult supplementation - supporting data contained on seven 500 gigabyte hard drives without sufficient direction as to the proper manner to examine that material - *id.* at p. *1 - but the same principle is applicable here.  In *Robinson*, the Court carefully considered the goal of having a test case which would include all of the evidence that would be included in later MRGO cases.  While the Court described the supplementation there as "virtually indecipherable," noting also a "wild scramble" of last minute, post-deadline, piecemeal disclosures increasing the Court's trial-preparation burdens, and also noted that *Robinson's* effect on MRGO as posited by the United States in its opposition to the

---

[15] A copy is attached at **Exhibit H**.

Motion to Strike was questionable in absence of the EBIA controversy in *Robinson*,  the Court nonetheless denied the *Robinson* Plaintiffs' Motion to Strike in favor of a pre-testimony hearing to determine through Dr. Resio's own live testimony what was withheld, why the opinion was so late in being provided, and the degree of prejudice Plaintiffs would experience should the Court allow this testimony.

*Second,* the cornerstone of Lafarge's defense is the premise that no forces during Katrina could move the barge from Lafarge's terminal to the breach locations before the breaches occurred.   Gertrude LeBlanc and Frazier Tompkins told Lafarge in December 2005 and July 2006 that they saw the barge adrift in the IHNC no later than mid-afternoon on Sunday, August 28, 2009, the day before Katrina struck the Louisiana coast. Their accounts are important to the trier of fact's duty to evaluate the validity of the absolute position Lafarge posits.

*Third,* Lafarge states through its experts that the barge could not have exerted sufficient force against the eastern IHNC floodwall to have caused the failures that occurred.  The IPET and Dr. Bea have stated otherwise, yet Dr. Bea has reversed himself since his retainer by the MRGO plaintiffs, and Dr. Mosher has denounced the IPET load impact calculation.   It is incumbent upon the trier of fact to evaluate the Plaintiffs' scientific proof that the IPET and Dr. Bea were correct in their initial statements on this point.

## VI.   CONCLUSION

A self-generated, closely held veneer of prejudice is not prejudice.  Lafarge must not be permitted to eviscerate the logical underpinnings of the bellwether trials by

exclusion of impeachment and rebuttal evidence of which Lafarge has been afforded ample and timely notice.  Lafarge's Motion to Strike must be denied.

November 15, 2009

Respectfully submitted,

_**s/Brian A. Gilbert**_ (21297)
Law Office Of Brian A. Gilbert, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 885-7700
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
e-mail: bgilbert@briangilbertlaw.com

Shawn Khorrami (CA SBN #14011)
Dylan Pollard (CA SBN # 180306)
Matt C. Bailey (CA SBN #218685)
Khorrami, Pollard & Abir, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimilie: (213) 596-6010
e-mail: Skhorrami@kpalawyers.com;
        Dpollard@kpalawyers.com;
        Mbailey@kpalawyers.com

Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Wiedemann & Wiedemann
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
e-mail: lawrence@wiedemannlaw.com;
k a r l @ w i e d e m a n n l a w . c o m;
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com

Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C. 20036-4129
Voice: 202-862-4320
Cell: 202-549-1454
Facsimile: 800-805-1065 and 202-828-4130
e-mail: rick@rickseymourlaw.net

Lawrence A. Wilson (N.Y.S.B.A. #2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
Telephone: (212) 608-4400
Facsimile: (212) 227-5159
e-mail: lwilson@wgdnlaw1.com;

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 17th day of November, 2009.


\s\Brian Gilbert, Esq.