**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| | * |
| IN RE: KATRINA CANAL BREACHES | * |
| CONSOLIDATED LITIGATION | *   CIVIL ACTION |
| | * |
| | *   NO. 05-4182 |
| | *   and consolidated cases |
| PERTAINS TO: BARGE | * |
| | *   SECTION "K" (2) |
| *Boutte v. Lafarge*          05-5531 | * |
| *Mumford v. Ingram*     05-5724 | * |
| *Lagarde v. Lafarge*      06-5342 | *   JUDGE |
| *Perry v. Ingram*          06-6299 | *   STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*        06-7516 | * |
| *Parfait Family v. USA*   07-3500 | *   MAGISTRATE |
| *Weber v. Lafarge*        08-4459 | *   JOSEPH C. WILKINSON, JR. |

**REPLY IN SUPPORT OF LAFARGE NORTH AMERICA INC.'S**
**MOTION TO STRIKE NEW FACT AND EXPERT WITNESS**
**STATEMENTS FILED IN SUPPORT OF PLAINTIFFS'**
**OPPOSITION TO LNA'S MOTION FOR SUMMARY JUDGMENT**

Before addressing some (but by no means all) of the many deficiencies in plaintiffs' 33-page opposition memorandum, we note that, as LNA explained in its reply in support of summary judgment (Doc. 19370-3), nothing in plaintiffs' untimely new statements would warrant denying LNA's motion for summary judgment even if they were considered.  Thus, plaintiffs submit the LeBlanc and Tompkins testimony to show that the Barge broke away on Sunday, August 28, 2005, but the timing of the Barge breakaway is not a material fact with respect to LNA's motion.  The reason is simple:  even if the Barge had been present in the IHNC on August 28, the prevailing hurricane-force wind would have pushed the Barge *away from* the floodwalls on the east side of the INHC during the critical early morning hours of August 29 when the breaches occurred.  Likewise, though plaintiffs' untimely expert submissions speculate about tidal flows and meteotsunamis and the like, they offer nothing that

would raise a genuine issue of material fact, as shown in LNA's reply.  Thus, the battle over LNA's motion to strike should not obscure that LNA would be entitled to summary judgment even if the Court were to consider the plaintiffs' untimely evidence.

Still, plaintiffs' opposition fails to supply any grounds for the Court to allow their untimely evidence:

**1.     LeBlanc and Tompkins are not "rebuttal" or "impeachment" witnesses.**[1]

Plaintiffs' primary argument is that Ms. LeBlanc and Mr. Tompkins are just "rebuttal" or "impeachment" witnesses whom they were not required to include on their Final Witness List. That is patently incorrect.  "Rebuttal is a term of art, denoting evidence introduced by a Plaintiff to meet new facts brought out in his opponent's case in chief."  *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 555 (5th Cir. 1979).  Rebuttal evidence "is not to be used as a continuation of the case-in-chief."  *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991).  Therefore, rebuttal evidence cannot be used to establish any "issue of potential importance to the outcome of [a party's] case in chief."  *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991).  Nor can a party use a rebuttal witness "to remedy what [the attorneys] perceived to be a defect in their case-in-chief."  *Page v. Barko Hydraulics*, 673 F.2d 134, 140 (5th Cir. 1982).

Here, the timing of the Barge breakaway is a question that ***plaintiffs*** have put at issue in their case-in-chief.  For example, the *Weber* complaint (No. 08-4459, at Doc. 1) alleges (at ¶ 34):

> "***Hurricane Katrina made landfall on the morning of August 29, 2005. Sometime that morning, the mooring lines holding ING 4727 parted or broke***, setting ING 4727 adrift in the Industrial Canal, and subjecting it to the effects of Katrina's wind and storm surge" (emphasis added).

---

[1] Plaintiffs have moved for leave to name LeBlanc and Tompkins on their Final Witness List.  See Doc. 19388.  The hearing date on that motion is December 9, 2009, and LNA's opposition thereto is not yet due.  The arguments in this section, however, adequately respond to that motion.

Plaintiffs cannot possibly claim that the timing of when the Barge broke from its moorings is mere rebuttal to LNA's defenses, when one of the operative complaints makes allegations as to when the Barge broke free.[2]

Further, the initial reports by *three* of plaintiffs' experts, presented on the merits of plaintiffs' case-in-chief, state opinions as to when the Barge entered the IHNC – all concluding that it did so on August 29, 2005.[3]  Plaintiffs produced those reports pursuant to Fed. R. Civ. P. 26(a)(2)(B), which requires expert reports to contain "a complete statement of all opinions the witness *will express* and the basis and reasons for them" (emphasis added).  It is therefore disingenuous for plaintiffs to assert that the timing of the breakaway did not become an issue until LNA presented its expert reports, when plaintiffs' own experts "will express" opinions as to that very issue.  Plaintiffs cannot reserve their fact witnesses on that issue for "rebuttal" or "impeachment."  As such, they were obligated to identify on their Final Witness Lists any witness on the question of the timing of when the Barge entered the IHNC.[4]

## 2.     Plaintiffs' argument that LNA has known about the LeBlanc and Tompkins accounts is irrelevant.

---

[2] The briefing in connection with plaintiffs' request for class certification further confirms that the question of when the Barge broke free is central to plaintiffs' case-in-chief, not just a rebuttal point.  See Plaintiffs' Motion to Certify Class (Doc. 11005) at para. 5(l) (allegedly common question "[w]hether the aforesaid actions of defendants … was a substantial cause of, and/or contributed to the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005"); *id.* at paras. 5(m), 5(p), 5(s); Proposed Seventh Amended Consolidated Class Action Complaint For Damages (Doc. 16572-3), at 15 (allegedly common issue was "[w]hether Barge ING 4727 broke free of its moorings on Monday, August 29, 2005"); *id.* at 23.

[3] See Hector Pazos Report at 8 ("In the early hours on August 29, 2005, barge ING 4727 broke loose from its moorings.") (Exh. 12 to LNA's Motion for Summary Judgment ("MSJ")); Donald Green Report at 3, 7 ("During the early morning hours of August 29, 2005, the ING 4727 broke free of its moorings during Hurricane Katrina and drifted south in the IHNC.") (Exh. 29 to LNA's MSJ); Robert Bartlett Report at 4 ("The hopper barge, ING4727 … was docked at the LaFarge [sic] North America Terminal prior to and at the time that Hurricane Katrina made landfall on August 29, 2005.") (Exh. 37 to LNA's MSJ).

[4] For these same reasons, because evidence as to when the Barge entered the IHNC is part of plaintiffs' case-in-chief, testimony by Ms. LeBlanc and Mr. Tompkins on that issue is not merely "impeachment" of the conclusions of LNA's experts.  If that testimony would impeach anyone, it would be *plaintiffs'* experts who opined that the Barge broke free on August 29, 2005.

Plaintiffs argue (at 12) that they are excused from complying with the CMO because LNA knew of the accounts of LeBlanc and Tompkins through their interviews with Centanni. LNA's knowledge of the witnesses' accounts is irrelevant, however.  Instead, as LNA noted in its opening brief (Doc. 19379-2, at 5 n.2), the CMO required the parties to file Final Witness and Exhibit Lists in order to make each side identify which of the countless potential witnesses and exhibits they actually intended use to support their claims, so that the other side could prepare its case accordingly during the period set aside for discovery.  Once plaintiffs identified fact witnesses who said that the Barge was *not* in the IHNC on August 28 (see LNA's Summary Judgment Reply (Doc. 19370-3, at 8-9)) and submitted expert reports based on the accounts of those witnesses, LNA was entitled to focus its discovery efforts and expert reports on plaintiffs' case-in-chief, *including* plaintiffs' timely-listed fact and expert witnesses who uniformly maintained that the Barge broke free under high winds during the approach of Katrina.  That the accounts of Mr. Tompkins and Ms. LeBlanc may have been part of the universe of evidence that the parties produced in discovery provides no basis for plaintiffs to ignore the CMO by omitting them from the Final Witness List, if they wanted to introduce testimony from them at trial.

**3.     LNA is not required to reopen discovery in order to cure the prejudice that plaintiffs are attempting to create.**

Plaintiffs contend (at 10) that after they received LNA's Motion to Strike, they offered to permit LNA to depose Ms. LeBlanc and Mr. Tompkins and to redepose all of plaintiffs' experts, which offer somehow cures the prejudice that would be created if the Court considered their accounts now.  Initially, plaintiffs' argument is inconsistent with the CMO, which provides an orderly process if a party wishes to introduce witnesses and documents that are not on the party's Final Lists – that is, to ask the Court to find "good cause" for doing so (which plaintiffs did not do).  The Court also set forth discovery deadlines in this case.  Nothing in the Court's orders

managing this action permits a party to use "self help" to cure its failure to comply with the CMO by demanding that the other side take additional discovery after the discovery deadline. Plaintiffs' "offer" of additional belated discovery also raises the specter of a new round of summary judgment briefing after the additional discovery has been completed, as well as an extension on *Daubert* briefing currently due on December 1, 2009, all of which would interfere with the Court's pretrial schedule – a schedule the Court has warned it will *not* further extend.

### 4. Admission of the Tompkins and LeBlanc testimony is not necessary to a representative "test case" trial.

In a belated attempt to satisfy the standard for "good cause" to modify a CMO, plaintiffs assert (at 32) that the testimony of Ms. LeBlanc and Mr. Tompkins is important to permit the trial to be a representative "test case" trial. In essence, plaintiffs are asking the Court to throw out the deadlines in the CMO because they get in the way of plaintiffs' notion of a fair "test case" trial, and ignore that LNA filed for summary judgment by justifiably relying on the disclosures that plaintiffs made in their Final Lists. By omitting these witnesses from their Final Lists, plaintiffs *elected* to present a "test case" based on the testimony of fact witnesses and experts who would testify that the Barge broke free on August 29, 2005. Indeed, ***plaintiffs did not even give the LeBlanc and Tompkins affidavits or interview notes to their own experts***, three of whom opined that the Barge broke free on August 29, 2005. See *supra* at n.3.[5] Having made that election, plaintiffs should live with it now. The notion of a fair "test case" does not require the Court, or LNA, to set aside the Federal Rules of Civil Procedure every time plaintiffs become dissatisfied with their evidence.

---

[5] Don Green, for example, opined that it would have taken "sustained winds [of] approximately 36 mph" to break the Barge from its moorings (see Exh. 29 to LNA's MSJ (Green Report at 9 ¶ 5.12)), and the meteorological data from the Army Corps lockmaster shows that on the morning of August 28, 2005, winds in the IHNC did not exceed 16 mph. See Exh. 1 to LNA's MSJ (Cushing Report, App. B at B-10).

LIBW/1723886.3

5.    **Plaintiffs wrongly assert that the Federal Rules of Civil Procedure permit them to**
      **oppose summary judgment with new expert reports.**

Plaintiffs argue (at 30-31) that under Fed. R. Civ. P. 26(e)(2), they were entitled to
supplement their expert reports "up until the time of Final Pretrial Disclosures under Rule
26(a)(3)."  To the contrary, plaintiffs' deadline to file expert reports was July 1, 2009.  That
deadline would be totally meaningless if the plaintiffs were permitted to "supplement" at will
after the fact.  See LNA's Opening Brief at 9-10 (Doc. 19379-2) (citing cases rejecting
supplemental expert reports in opposition to summary judgment).  Moreover, to the extent
plaintiffs claim that the expert declarations are just "rebuttal" to the reports of LNA's experts,
then the declarations violated Rule 26(a)(2)(C)(ii), which requires parties to file rebuttal expert
reports "within 30 days after the other party's disclosure."  Finally, plaintiffs' argument is
inconsistent with Rule 26(e)(1)(A), which provides that if a Rule 26(a) disclosure is "incomplete
or incorrect," the party must make its supplemental disclosure "in a timely manner."  Plaintiffs'
new expert declarations, made long after the close of discovery and after summary judgment
briefing was already under way, were not "timely."

6.    **LNA did not waive the right to object to plaintiffs' untimely expert disclosures.**

Plaintiffs argue (at 27-28) that LNA has "unclean hands" because it produced a
supplemental report from Dr. Bea.  But plaintiffs fail to disclose that the reason Dr. Bea
produced a supplemental report was because plaintiffs failed to timely produce reliance materials
from Dr. Marino until late August 2009, nearly two months after they were due.  See Exh. 8 to
LNA's MSJ (Marino 2009 Dep. at 240 (noting non-production of Marino reliance materials)).
Upon receiving Dr. Marino's untimely reliance materials in late August 2009, Dr. Bea produced

a supplemental report within a matter of weeks, on September 4, 2009.[6]  Plaintiffs did not move

to strike that report, nor would they have had any good faith basis for doing so.  Instead, they

questioned Dr. Bea about that aspect of his report at his deposition on September 11, 2009.  See

Exh. 19 to LNA's MSJ (Bea Dep. at 201).  In short, Dr. Bea produced his supplemental report as

quickly as possible after receiving plaintiffs' untimely production of reliance materials, and in

advance of his deposition.  That report simply provides no basis for plaintiffs to submit new and

untimely expert opinions after the close of discovery and without any justification.[7]

> **7.    Plaintiffs cannot justify their belated expert declarations.**

Plaintiffs try to justify their expert declarations as either being rebuttal to LNA's expert

reports, the product of additional work that the experts had not completed when they submitted

their expert reports, or as amplification of their expert reports.  LNA's opening brief already

refuted those arguments.[8]

We note, however, that plaintiffs primarily try to justify their submission of new expert

reports in the form of "expert declarations" by claiming that the declarations "rebut" the opinions

given by LNA's experts.[9]  But, as noted above, under Rule 26(a)(2)(C)(ii), the deadline to file

---

[6] Dr. Bea's supplemental report (Exh. A hereto) explains:  "This report documents supplemental seepage and stability analyses at the northern end of the North breach on the IHNC during Hurricane Katrina in August 2005.  The objective of the calculations presented here is to update the previous cross section by Bea and Cobos-Roa (2008) using *additional soil boring information provided by Dr. Marino (2009)*" (emphasis added).

[7] Plaintiffs mischaracterize (at 23) a video of Dr. Bea recorded before he had investigated the causes of the IHNC floodwall failures.  For Dr. Bea's discussion of the video, and plaintiffs' mischaracterization of it, see Exh. 19 to LNA's MSJ (Bea Deposition at 45-48).

[8] For example, LNA's opening brief noted that Dr. Marino's opinions in his expert declaration concerning barge impacts are new, as he admitted at deposition that those opinions were not in his report, even though he had begun work on them no later than 2008.  Plaintiffs do not dispute that.  E.g., Pl. Opp. at 21.  Instead, they claim that he finished his work only after discovery had closed.  Such an approach to Court deadlines is, to put it mildly, cavalier.  Neither plaintiffs nor Dr. Marino were entitled to disregard the Court's deadlines because they could not be troubled to get around to the work during the period allowed.

[9] See Pl. Opp. at 17 (Green declaration is "rebuttal opinion" and Pazos declaration was "REBUTTAL to Dr. Cushing's report and testimony"); at 18 (Pazos declaration on wind "is for rebuttal and impeachment"); at 19 (Pazos "meteotsunami" testimony is "for rebuttal and impeachment").

rebuttal expert reports would have been 30 days after LNA filed its expert reports.  Plaintiffs

filed no rebuttal reports by that deadline.  For this reason and those stated in LNA's opening

brief, the Court should strike plaintiffs' untimely expert declarations.

<u>**CONCLUSION**</u>

The Court should grant LNA's motion to strike.

Dated: November 17, 2009                    Respectfully submitted,

                                            Robert B. Fisher, Jr., T.A. (#5587)
                                            Derek A. Walker (#13175)
                                            **CHAFFE MCCALL, L.L.P.**
                                            2300 Energy Centre
                                            1100 Poydras Street
                                            New Orleans, LA  70163-2300
                                            Telephone:  (504) 585-7000
                                            Facsimile:  (504) 585-7075
                                            Fisher@chaffe.com
                                            Walker@chaffe.com


                                             /s/ John D. Aldock
                                            John D. Aldock
                                            Richard M. Wyner
                                            Mark S. Raffman
                                            **GOODWIN PROCTER LLP**
                                            901 New York Avenue, N.W.
                                            Washington, DC  20001
                                            Telephone:  (202) 346-4240
                                            jaldock@goodwinprocter.com
                                            rwyner@goodwinprocter.com
                                            mraffman@goodwinprocter.com


                                            Daniel A. Webb (#13294)
                                            **SUTTERFIELD & WEBB, LLC**
                                            Poydras Center
                                            650 Poydras Street, Suite 2715
                                            New Orleans, LA  70130
                                            Telephone:  (504) 598-2715

                                            ***Attorneys for Lafarge North America Inc.***

LIBW/1723886.3