UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION
NUMBER:  05-4182 "K"(2)
JUDGE DUVAL
MAG. WILKINSON

PERTAINS TO:  *Robinson*
(No. 06-2268)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE,
MOTION TO AMEND THE JUDGMENT**

## I.      INTRODUCTION

Plaintiffs have moved for a new trial or, in the alternative, to amend the judgment in only one specific ground:  the amount of damages awarded to Plaintiffs Lucille and Anthony Franz ("Franzes") for the destruction of their home.  In its Findings of Fact and Conclusions of Law ("Findings") (Doc. No. 19415), the Court determined that the Franzes were not entitled to recover damages for loss of their home by floodwaters "because the Court finds that the destruction of their home was caused by the six feet of water that rushed through the breaches of the IHNC floodwall causing destruction of the foundation of the Franz home."  Findings at p. 153.  The Court reasoned that since "the east walls of the IHNC would have failed regardless of the MRGO," the Franz home was not destroyed by waters from Reach 2.  *Ibid.*  The Court's ruling is based on an implicit finding that the IHNC waters reached the Franz home before the torrent of water from Reach 2.  As demonstrated below, the record does not support a finding that the six feet of water from the IHNC—or a heavy object propelled by the IHNC floodwaters that destabilized the foundation—was the *sole* cause of the destruction of the Franz home.

1

In addition, the Court in its Findings did not rule upon three related causation/damages issues:  concurrent cause, indivisibility of the waters, and allocation of flooding sources.  These issues were raised by the Court in the Court's Question No. 32:  "Damages:  Brief how the Court is supposed to allocate damages in New Orleans East and the 9th Ward, since there would have been flooding regardless of the MRGO."  Order (Doc. No. 18842) at p. 5.  Plaintiffs provided a seven-page response to this inquiry.  *See* Plaintiffs' Post Trial Brief (Doc. No. 19012-4) at Appendix A, pp. 15-21.  Plaintiffs also discussed these issues in their Post Trial Brief (Doc. No. 19012-3) at pp. 63-66 and in their Reply Brief (Doc. No. 19202) at pp. 55-59.

Plaintiffs respectfully request that the Court amend its Findings and the Judgment in the following respects:  (1) there is no factual or legal basis for finding that the IHNC floodwaters were the sole cause of the destruction of the Franz home; (2) the floodwaters from Reach 2, on the undisputed facts, were a substantial factor in the destruction;  (3) the floodwaters from the IHNC and Reach 2 are indivisible; (4) there should be no allocation between these two catastrophic sources; and (5) the Franzes are therefore entitled to additional damages of $284,128 for the cost of tearing down and rebuilding their residence.

## II.   THE COURT HAS JURISDICTION TO DECIDE AN IMPORTANT UNRESOLVED ISSUE

The Federal Rules of Civil Procedure envision circumstances where, as here, a trial court can reopen a case for the limited purpose of resolving an issue that was not decided in its Findings of Fact and Conclusions of Law.  Rule 59 (a) (1) permits a new trial motion to be granted after a jury and nonjury trial, while Rule 59 (e) authorizes a motion to amend or alter a judgment.  Both motions must be filed within ten days of entry of judgment.  Fed. R. Civ. P. 59(b), (e).  (Since the Judgment here was entered on November 18, 2009, this motion is timely. *See* Fed. R. Civ. P. 6(a)(2)).  In both instances, this Court is permitted to amend its decision.  As

2

Rule 59 (a)(2) states: "after a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."

Whether a party proceeds under 59(a) or 59(e) is generally unimportant because "[s]urely, the parties are not to be hamstrung in the Federal courts by such trivial distinctions without differences. The important point is that the error was called to the attention of the trial court and it refused to grant the relief to which appellant was entitled." *Hutches v. Renfroe*, 200 F.2d 337, 340-341 (5th Cir. 1953). Typically, however, "'any motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label.'" *Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 669-70 (5th Cir. 1986) (quoting 9 Moore's Federal Practice ¶ 204.12[1], at 4-67 (1985)).

Courts in this district hold that a moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *Marine & Indus. Healthcare Services, Inc. v. LaVie*, 2003 WL 21284106, *2 (E.D. La. 2003) (citing cases); *see also In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4003023, *2 (E.D. La. 2008). The showing required for a successful Rule 59(a) motion is essentially identical to that of the 59(e) motion. *See Genova v. Town of Independence*, 1998 WL 337891, *1 (E.D. La. 1998) (Duval, J.) (finding that "a motion for a new trial in a non-jury case…should be based upon manifest error of law or mistake of fact….") (citing 11 Wright et al.*, Federal Practice & Procedure*, Section 2804 (1995)). In addition, a Rule 59(e) motion "'cannot be used to raise arguments which could, and should, have

been made before the judgment issued'" or to "'relitigate prior matters … that simply have been resolved to the movant's dissatisfaction.'" *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4003023, *2 (E.D. La. 2008) (citation omitted).

In this case, the Court indicated to the parties that it desired to decide all of the issues presented so that the Fifth Circuit would have the benefit of this Court's determination.  At the outset, Plaintiffs want to be crystal clear that they are not criticizing this Court's handling of the trial or its prodigious work in crafting the meticulously detailed Findings.  Nevertheless, we do believe that it is in the interests of justice that an important issue bearing on damages for the Franzes (and potentially many other Lower 9th Ward residents) be expressly decided by this Court.  This Court has the discretion to reopen the case for the limited purpose of ruling on this issue.  *See, e.g.*, *Combe v. Life Ins. Co. of North America*, 2007 WL 2668747, *3 (E.D. La. 2007) (Livaudais, J.) (granting defendant's 59(e) motion for limited purpose of amending court's prior judgment to include a provision allowing defendant to "periodically review [plaintiff's] claim in the future to determine his continued disability under the [insurance] Plan.").

The circumscribed reopening here would not necessitate any additional testimony, evidence, or trial proceedings.  As noted below, the evidence concerning causation and damages is already in the record.  Similarly, the parties have already extensively briefed the law on damages.  Plaintiffs simpy request that the Court, in deciding the appropriate damages for loss of the Franz home, expressly take into account the undisputed facts and governing legal principles in its Findings.

### III.   UNDISPUTED FACTS

The facts necessary to decide the issues presented are not in dispute.

1.      The Franz home was located at 5924/26 St. Claude Avenue in the Lower Ninth Ward portion of the St. Bernard Polder approximately 1 mile from the IHNC and 1.32 miles

from the 40 Arpent Canal Levee adjacent to the Central Wetlands Unit.  PX 115, Scott Taylor Damage Report, p. 1.

2.      Several feet of floodwaters reached the second floor of the Franz home, and the water remained there for about three weeks.  Findings at p. 153; TT at pp. 552:19-21, 552:22-25, 555:22-25 (Lucille Franz); TT at p. 1912:1-12 (Junior Rodriquez).

3.      The Franz two-story home was a total loss that could not be rebuilt and required demolition due in part to the breaches of the foundation causing the integrity of the structure to be at risk.  The cost of tearing down and rebuilding the Franz residence is $284,128.  Scott Taylor Final Loss Report for Anthony and Lucille Franz; PX 115; PX 1714; TT at pp. 554:19-555:1; 556:4-6; 557:23-558:10 (Lucille Franz).

4.      The Franz home was a total loss for another reason—severe, irreparable water damage caused by over ten feet of floodwaters that stagnated in the Franz home for three weeks. TT at pp. 1602:17-1603:5, 1603:22-1604:7 (Taylor); Findings at p. 153; TT at pp. 552:19-21, 552:22-25, 555:22-25 (Lucille Franz); TT at p. 1912:1-12 (Junior Rodriquez);.

5.       By 7:30 a.m., there was about two feet of water at the Franz home; by 9 a.m., there was about seven feet of water there; and by 10 a.m., flooding from all sources reached over ten feet at the Franz home.  TT at pp. 840:2-842:11 (Vrijling); PX 1771, Vrijling Supplemental Report (January 27, 2009) at Figure 5.

6.      The flooding of some of the Lower Ninth Ward attributable to the north and south breaches along the eastern IHNC floodwall occurred before that area was flooded due to breaches along Reach 2.  Findings, at p. 90; Appendix at pp. 24-26 (Delft hydrographs).

7.      When the Central Wetlands Unit filled to capacity, the 40 Arpent Canal Levee overtopped at around 8:30 a.m., the St. Bernard Polder was subsequently overwhelmed, and

catastrophic flooding of St. Bernard Parish and Lower 9th Ward then occurred. "The trigger for filling the Central Wetlands Unit was the failure of the Reach 2 Levee." Findings at pp. 59-60, 66-67, 72.

8.      It took about one hour (9:30 a.m.) for the Reach 2 floodwaters to reach the vicinity of the Franz home after the 40 Arpent Canal Levee was overtopped at 8:30 a.m.. Findings, Appendix A, at p. 25 (Flood simulations of Greater New Orleans).

9.      Plaintiffs' and Defendant's witnesses agreed that "the north and south breaches of the east side of the IHNC did not contribute greatly to the Lower Ninth Ward flooding. TT at pp. 1225-26 (Bea); Findings at p. 90.  The two IHNC breaches contributed a much smaller amount of water to the flooding than did the breaches from Reach 2.  PX 53, Polder Flood Simulation for Greater New Orleans, Hurricane Katrina 2005 (July 2007) at pp. 46-50; TT at pp. 2745:10-14; 2754:9-22; 2755:5-9 (S. Fitzgerald); TT at pp. 1546:16-1547:11; 1223:24-1224:19; 1545:1-1546:3, 1097:8-17 (Bea); PX 1487, S. Fitzgerald Expert Report (Dec. 2008) at p. 4.

10.     Dr. Bea testified that plaintiffs and defendants agreed that about 88 to 90 percent of the Lower Ninth Ward was caused by the Reach 2 breaches (TT at pp. 1224, 1259 (Bea)), and Mr. Fitzgerald testified that they do not disagree in a significant level. TT at p. 2745 (S. Fitzgerald).  *See* Findings at p. 90.  Predominantly all of the flooding came from Reach 2 since the polder would have filled up entirely within a few hours.  TT at p. 1063:4-14 (Vrijling); TT at pp. 1223:9-1224:19 (Bea).

11.     The ultimate water levels in the Lower 9th Ward would have been the same with or without the north and south breaches along the eastern IHNC floodwalls.  TT at p. 2750:13-21 (S. Fitzgerald); PX 1487, S. Fitzgerald Expert Report (Dec. 2008) at p. 21 (Table 4). In other words, the Lower 9th Ward (and the Franz home) would have sustained catastrophic flooding of

10-12 feet from floodwaters emanating from the Reach 2 breaches without any contribution from the IHNC.   TT at pp. 2754:9-22, 2755:5-9 (S. Fitzgerald); TT at pp. 1223:22-1224:19, 1545:1-1546:4 (Bea)  (Ultimately, the north and south breaches in the IHNC were irrelevant in terms of final water depths because the Lower  9th Ward (even without the north and south breaches of the IHNC) would have flooded to the same 10-12 feet depth in a few hours anyways as a result of waters flowing through the primary breaches in the Reach 2 levees.)

12.     Without the IHNC breaches, almost the same volume of floodwater would have entered the populated area of the St. Bernard bowl—upper St. Bernard Parish and Lower 9th Ward—compared with the scenario of MR-GO breaches plus overtopping plus rain.  Without the IHNC breaches, it would take a little longer in the western part of bowl to reach the peak water level, but the peak itself was only marginally lower.  In the eastern part of the bowl, the influence of the IHNC breaches on the development of the water level is even smaller. Thus, even without the floodwater originating in the IHNC, the Lower 9th Ward—and the Franz home—would have catastrophically flooded. PX 53, Delft University Flood Report (July 2007) at p. 45.

13.     With respect to Lower 9th Ward flooding, both Plaintiffs' and Defendant's experts agreed that floodwaters from the IHNC were indistinguishable from those emanating from Reach 2.  PX 53, Delft University Flood Report (July 2007) at p. 45; TT at pp. 2754:9-22, 2755:5-9 (S. Fitzgerald) (Once the floodwaters from Reach 2 and IHNC interacted in Lower 9th Ward, it would be very difficult to distinguish one from the other.)

14.     The Army Corps is the only tortfeasor whose conduct was a substantial factor in causing the destruction of the Franz home.

15.      If it were appropriate to make an allocation between § 702c immune and non-immune sources of flooding of the Franz home, the record reflects that 88 to 90% of the water

came from Reach 2 which is not a § 702c immune cause. Findings at p. 90; *see also In re Katrina Canal Breaches Consolidated Litigation,* 471 F. Supp.2d 684, 694-95 (E.D. La. 2007) ("*Central Green* opened the possibility of a segregation of damages—those for which the Government would be immune under § 702c and those for which immunity would not attach. Indeed, the Government even concurred with this reading at oral argument. (See Transcript of Hearing, October 27, 2006, at 33).")  The 88% portion of the total loss equals $250,032.

IV.    **THERE IS NO EVIDENCE THAT A HEAVY OBJECT OR REACH 1 FLOODWATERS ALONE DESTROYED THE FRANZ HOME**

The Court determined that "the destruction the home was caused by the six feet of water that rushed through the breaches of the IHNC floodwall causing the destruction of the foundation of the Franz home."  Findings at p. 153.  While there is evidence that about six feet of water came from the direction of the IHNC (TT at pp. 841:21, 846 (Vrijling); PX 1771, Vrijling Supplemental Report (Jan. 2009) at p. 4), Plaintiffs have searched the record in vain to find any support for the fact that it was the IHNC waters *alone* that destroyed the foundation.  Actually, the record supports a finding of three causes—a heavy object propelled by floodwaters, six feet of water from the IHNC, and ten feet of water from Reach 2.  Any one of these three—and certainly any combination—was sufficient to render the home a total loss.

The evidence shows that a floating vehicle or some large, heavy object crashed into a side of the house about four feet above the ground level, leaving a huge hole in the wall on the Gordon Street side. TT at pp. 554:19 to 555:14 (Lucille Franz); PX 1501, Franz Property Damage Photographs, at p. 53; Scott Taylor Final Loss Report for Anthony and Lucille Franz, PX 115 at p. 1.  The Gordon Street side faces east toward Reach 2 and *away from the IHNC*, and the Franz home is almost equidistant from the IHNC (1 mile) and 40 Arpent Canal Levee (1.3 miles).  PX 115, PX 1714 Scott Taylor Final Loss Report at p. 1.

This breach in the wall was enough that a large portion of the side foundation was at risk of collapse.  Scott Taylor Final Loss Report for Anthony and Lucille Franz, PX 115, PX 1714 Scott Taylor Final Loss Report at p. 1.  There is no indication in the record, however, whether the Reach 1 or Reach 2 waters (or both) propelled the heavy object into the house. Thus, no basis exists for finding that it is more probable than not that the IHNC floodwaters *solely* caused the destruction of the Franz home by transporting the heavy object that rammed their home.

There is one certainty here: without the IHNC floodwaters, ten feet of water from Reach 2 would still have inundated the Franz home.  Excluding the IHNC breaches, it takes a little longer in the western part of the polder to reach the peak water level, but the peak itself is only marginally lower.  In the eastern portion, as you move away from the IHNC toward the Franz home and the 40 Arpent Canal Levee, the IHNC breaches' influence on ultimate water level is even smaller. Thus, even without the floodwater originating in the IHNC, the Lower 9th Ward— and the Franz home—would have catastrophically flooded.  PX 53, Delft University Flood Report (July 2007) at p. 45.

The evidence also shows that a home flooded during Katrina becomes uninhabitable when it is inundated by more than four feet of water and the water remains there for several weeks. TT at pp. 1602:17-1603:5, 1603:22-1604:7 (Taylor).  Water reached the second floor and stagnated in the Franz home for three weeks.  Findings at p. 153; TT at pp. 552:19-21, 552:22-25, 555:22-25 (Lucille Franz); TT at p. 1912:1-12 (Junior Rodriquez). The house was a total loss from this water damage, and either six feet or ten feet of water would have been catastrophic. TT at pp. 1602:17-1603:5, 1603:22-1604:7 (Taylor).  At a minimum, even if the foundation had not been compromised or six feet of water had not hit the home, ten feet of water alone was more

than sufficient to make the house a total loss.[1]  PX 115, Taylor Final Loss Report for Anthony and Lucille Franz at p. 1; TT at pp. 1602:17-1603:5, 1603:22-1604:7 (Taylor).

Thus, the record can support a finding of three independent causes of the total loss of the Franz home—a heavy floating object, six feet of water from Reach 1, and ten feet of water from the Reach 2.  What the record cannot support is a finding that only the heavy object was the sole cause or that the heavy object was propelled exclusively by IHNC floodwaters.  Accordingly, Plaintiffs respectfully request that the Court amend its Findings on page 153 to reflect that the Franz home was likely destroyed by one or a combination of these three causes and that therefore 100% of the loss ($284,128) should be awarded in damages.

## V.   THE GOVERNMENT IS LIABLE FOR THE DESTRUCTION OF THE FRANZ HOME BECAUSE THE REACH 2 FLOODWATERS WERE A SUBSTANTIAL CAUSE OF ITS TOTAL DESTRUCTION

### A.   If A Defendant's Conduct Is One Of Two Of More Substantial Factors, Defendant Is 100% Liable For The Damages

While the Findings do not discuss the applicable legal standard for cause-in-fact, the Court has previously set forth its conclusion that where, as here, there are multiple potential causes, Louisiana law applies the substantial factor test.  *See In re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 1033783**6-7 (E.D. La. April 15, 2009) (citing *Bonin v. Ferrellgas, Inc.*, 877 So.2d 89 (La. 2004) ) ("Thus, the issue is whether the MRGO was a substantial factor in bringing about the catastrophic flooding at issue in this suit.")  In *Bonin,* the Louisiana Supreme Court held that the relevant inquiry for determining whether a negligent act is a substantial causal factor is:

> whether each of the multiple causes played so important a role in producing the result that responsibility should be imposed upon each item of conduct, even if it cannot be said definitively that the harm would not have occurred 'but for' each individual cause.' *Perkins, supra* at 612

[1]The Government offered no expert testimony on the cause of the destruction of the Franz home.

(citing *Graves, supra*). Also considered is "whether the actor's conduct
has created a force or series of forces which are in continuous and active
operation up to the time of the harm." *Id.* (Quoting *LeJeune v. Allstate
Ins. Co.*, 635 So.2d 471, 475 (La. 1978)).

*Bonin*, 877 So.2d at 94.

Thus, "'[i]f two causes concur to bring about an event, and *either one of them, operating
alone, would have been sufficient to cause the identical result*, some other test is needed....' In
such cases it is quite clear that each cause has in fact played so important a part in producing the
result that *responsibility should be imposed upon it*; and it is equally clear that neither can be
absolved from that responsibility upon the ground that the identical harm would have occurred
without it, or there would be no liability at all.'" *LeJeune v. Allstate Ins. Co.*, 365 So. 2d 471,
477 (La. 1978). (emphasis added) (quoting Prosser on Torts, Section 41 at p. 239 (4th ed. 1971).

Defendant is liable for 100% of the damages to the Franz home for at least two reasons.

### 1.  The Reach 2 Flooding Was A Substantial Causative Factor

The first pertinent question is whether the flooding from Reach 2 played an important
role in destroying the Franz home and was therefore a substantial causative factor. In other
words, did the Reach 2 floodwaters contribute to the destruction? *See* Wex S. Malone,
*Ruminations on Cause-in-Fact*, 9 Stanford L. Rev. 60, 90 (l956-57) ("If each cause contributed
to the injury, that is enough to bind both."). The answer is decidedly "yes" because the Reach 2
torrent of 10 to 12 feet of waters *alone* was concededly more than enough to destroy the
residence—*i.e.*, the Reach 2 waters "operating alone, would have been sufficient to cause the
identical result . . . ." *Lejeune v. Allstate Ins. Co., supra,* 365 So. 2d at 477. Indeed, it is
sufficient for cause-in-fact if the cause "only increase[s] the risk of harm." *Hennigan v.
Cooper/T.Smith Stevedoring Co., Inc.¸* 837 So.2d 96, 102 (La. App. 2002). In light of the

Findings, it is beyond dispute that the Corps' negligent operation and maintenance palpably enhanced the risk of catastrophic flooding.

The fact that the IHNC floodwaters got to the Franz home first and could have irreparably damaged its foundation is legally irrelevant in imposing 100% liability on the Government.  Typically, where there are concurrent causes, they do not operate simultaneously. So long as each is a substantial factor contributing to the harm, however, each force is 100% responsible for the damages.  *See, e.g., In re Manguno,* 961 F.2d 533 (5th Cir. 1992) (Under Louisiana concurrent causation law, cigarette smoking and asbestos exposure could both be substantial contributing factors for plaintiff's lung cancer, and plaintiff did not have to prove that asbestos alone caused the harm (*i.e.,* asbestos was the "but for" cause-in-fact.)); *Brantley v. Tremont & Gulf Ry. Co.*, 75 So. 2d 236, 238 (La. 1954) (railroad fully liable for cutting hole in dam and resulting loss of minnows escaping from the pond notwithstanding other potential causes such excessive rains and fresh fill on the breached side of the pond because the deliberate breaching was a proximate cause of the loss sustained).

The same conclusion is reached by the Restatement (Second) of Torts § 433A: "Such entire liability is imposed . . . where two or more of the causes [of a fire] are culpable. It is imposed where either cause would have been sufficient in itself to bring about the result, as in the case of *merging fires which burn a building* . . .  It is not necessary that the misconduct of two or more tortfeasors be simultaneous."  Comment on Section (2) (emphasis added).  Courts applying Louisiana law have approvingly cited the causation provisions of Restatement (Second) of Torts.  *See, e.g., Banks v. Hyatt Corp.,* 722 F.2d 214, 221 (5th Cir. 1984); *Olsen v. Shell Oil Co.,* 365 So.2d 1285, 1293 n. 15 (La. 1979) (citing Sections 440-453). In *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1989), the Fifth Circuit recognized that Louisiana

law uses a "duty/risk" analysis in negligence claims and this doctrine is not inconsistent with the Restatement Second of Torts approach of "legal cause" used in federal law because both standards involve a concept of duty or a legally-protected interest. (citing *Hill v. Lundin & Associates, Inc.,* 260 La. 542, 256 So.2d 620 (1972); Malone, *Ruminations on Cause-In-Fact,* 9 Stan. L. Rev. 60, 72-75 (1956)); *Floyd v. El Paso Production GOM, Inc.*, 2006 WL 1539784 (E.D. La. May 17, 2007).  Obviously, the same result obtains for merging floodwaters, either of which is sufficient to bring about the result.  It is not necessary that the floodwaters be simultaneous.

### 2.   There Should Be No Apportionment of Damages

The second pertinent question is whether there should be any allocation of damages between the Reach 1 and Reach 2 floodwaters.  The answer is clearly "No."

Under Louisiana law, there is no apportionment of liability unless there is more than one tortfeasor whose conduct is a substantial factor in causing the injury.  Where there is a single tortfeasor whose conduct is a substantial factor in causing the injury, Louisiana law (in a situation not involving workers compensation) has never given a discount for the portion of its conduct that is ostensibly immune.  Article 2324 (B) of the Louisiana Civil Code applies only if there are "*two* or more persons" liable for the injury—in which case liability for damages shall be a joint and divisible obligation.  Indeed, the inapplicability of Article 2324 (B) here is buttressed by the fact that the second sentence speaks of a joint tortfeasor not being "solidarily liable with *any other person* for damages attributable to the fault for *such other person* . . . ." (Emphasis added.)  Thus, where a single defendant is the cause of an injury and the only negligent actor, it is 100% liable for the damages, and no apportionment is appropriate.  *See Ourso v. Grimm,* 630 So.2d 963, 966 (La. App.1994) (a sole actor must be found 100% at fault).

The Army Corps here is responsible for 88% from one cause (Reach 2) and 12% from another cause (Reach 2), *but it is the only tortfeasor*. Thus, because the Corps is the only negligent actor, Louisiana law dictates that the Defendant's actionable negligence (88%) versus its immune negligence (12%) does relieve it of 100% responsibility for damages.  That amount is $284,128.

### B.   The Government Conceded That The Second Source of Flooding Is A Substantial Cause of the Damages To A Home Catastrophically Flooded From Two Sources

In analyzing similar facts, the Government conceded that this conclusion is correct.

Discussing the flooding of the Robinson home in New Orleans East, Defendant stated:

> While it is true that *the MRGO* did raise the surge elevation within Reach 1 and thereby *did contribute substantially to* the overtopping of the Citrus Back Levee and *initial flooding* of the Robinson property, several additional facts reveal why the operation and maintenance of the MRGO was not a substantial causative factor. . . . Second, the floodwaters from the overtopping of the Citrus Back Levee peaked and had begun to recede from the Robinson property when the floodwaters from the New Orleans East Back Levee breach reached the property *and raised the elevation of the floodwaters ever higher than the prior peak.*

Defendant United States' Post-Trial Memorandum of Law (Doc. No. 19160-3) at pp. 113-14 (emphasis added).  *See* PX 1771, Vrijling Supplemental Report (January 27, 2009) at Figure 2 (Robinson flood depths *at over nine feet* at 9:15 a.m, receding to slightly over 8 feet at 10:30 a.m., and then peaking at nearly 13 feet at 6 p.m.)

Under this scenario where there are two sources of flooding separated by some period of time, the Government agrees that the second source is a substantial—indeed, in its view, the determinative—factor in the destruction of the residence.[2]

---

[2] As noted in Section V.A.2 *supra*, this is not a correct analysis of Louisiana law of multiple or concurrent causation because if either source of floodwaters is a substantial cause of the property's destruction, the defendant is liable for 100 % of the damages.  Under the undisputed

> In the final analysis, the arrival first of floodwaters from Reach 1 made no difference whatsoever.  Regardless of the MRGO, *the Robinson property was going to be flooded to its maximum extent by floodwaters attributable solely to force majeur:  Hurricane Katrina.*  The MRGO therefore cannot properly be regarded as a substantial factor.

*Id.* at p. 114 (emphasis added).

Applying the same reasoning to the Franz home, it was the ten feet of raging floodwaters arriving from Reach 2 that flooded their residence "to its maximum extent . . . ."  The fact that the first waters to arrive came from the IHNC (and were sufficient to destroy the home) is not dispositive.  As the Government acknowledges, there is no "first to arrive" causation rule when it comes to flood damages and both sources are catastrophic.

### C.  <u>The Damages To The Franz Home Are Not Divisible</u>

The damages here are not divisible.  Each source of water—the six feet from the IHNC and the 10 feet from Reach 2—was indisputably catastrophic.  TT at pp. 1602:17-1603:5, 1603:22-1604:7 (Taylor).  Under these circumstances, the harm is indivisible.  This conclusion is buttressed by the fact that both sides' experts agree that that floodwaters from the IHNC and Reach 2 merged in the Lower 9th Ward, rendering them indistinguishable from each other.  PX 53, Delft University Flood Report (July 2007) at p. 45; TT at pp. 2754:9-22, 2755:5-9 (S. Fitzgerald) (Once the floodwaters from Reach 2 and IHNC interacted in Lower 9th Ward, it would be very difficult to distinguish one from the other.)  If the harm is indivisible, a defendant whose negligence is a substantial causal factor is liable for all the harm.

The Restatement (Second) of Torts § 433A reaches the same conclusion:

> Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to

---

facts here, both sources—IHNC and Reach 2—were substantial factors in destroying the Franz home, thereby rendering the Government fully liable for all losses.

> make an arbitrary apportionment for its own sake, and *each of the causes is charged with responsibility for the entire harm.* The typical case is that of two negligently driven vehicles which collide and kill a bystander. The two drivers have not acted in concert, . . .but the entire liability of each rests upon the obvious fact that each has caused the single result, and that no rational basis for division can be found.

Comment on Section (2) (emphasis added).  Harms to property (such as destruction of a house by fire) are normally considered single and indivisible.  *Ibid.*

### D.  If The Damages Are Divisible, 88% Are Attributable to Reach 2

While Plaintiff maintains that the loss of the Franz home is an indivisible harm and 100% responsibility is allocable to the Government, the Court may decide to make a finding allocating damages between the IHNC and Reach 2 floodwaters.  In that case, the Court should attribute 88% to the Reach 2 floodwaters.[3]  As noted above, the Court has found that 88 to 90% of the floodwaters in the Lower 9th Ward emanated from Reach 2 whose breaching was caused by the Army Corps' negligence.  Under this approach, 88% of the $284,128 ($250,032) for the cost of tearing down and rebuilding their residence should be assessed against Defendant.  Under no circumstances, however, is the just result no recovery at all for the destroyed Franz home.

Finally, to the extent that the Court determined that the cause-in-fact of the IHNC eastern floodwall failure was not the MR-GO but defective flood control works, this consideration does not dictate that the Government get a complete pass on damages for destroying the Franz home. As this Court has previously ruled, it can make an allocation between § 702c immune and non-immune sources of flooding of the Franz home, and as noted above, 88 to 90% of the water came

---

[3] Restatement (Second) of Torts § 433 (A) recognizes that some harms may be divisible. Illustration No. 4 notes:

> Through the negligence of A, B, and C, water escapes from irrigation ditches on their land, and floods a part of D's farm. There is evidence that 50 per cent of the water came from A's ditch, 30 per cent from B's and 20 per cent from C's. On the basis of this evidence, A may be held liable for 50 per cent of the damages to C's farm, B liable for 30 per cent, and C liable for 20 per cent.

from Reach 2 which this Court has ruled is not a § 702c immune cause. Findings at p. 90; *In re Katrina Canal Breaches Consol. Litig.*, 471 F. Supp.2d 684, 694-95 (E.D. La. 2007) ("*Central Green* opened the possibility of a segregation of damages—those for which the Government would be immune under § 702c and those for which immunity would not attach.  Indeed, the Government even concurred with this reading at oral argument.  (See Transcript of Hearing, October 27, 2006, at 33).")  While Plaintiffs do not believe that any allocation is appropriate as noted above, the Court may conclude otherwise.  In that case, the Court may want to make this allocation in its Revised Findings and award $250,032 to the Plaintiffs Anthony and Lucille Franz.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion, reopen the case, and amend its Findings and Judgment in the following respects:  (1) there is no factual or legal basis for finding that the IHNC floodwaters were the sole cause of the destruction of the Franz home; (2) the floodwaters from Reach 2, on the undisputed facts, were a substantial factor in the destruction; (3) the floodwaters from the IHNC and Reach 2 are indivisible; (4) there should be no allocation between these two catastrophic sources; and (5) the Franzes are therefore entitled to additional damages of $284,128 for the cost of tearing down and rebuilding their residence.

Dated: November 30, 2009                                 Respectfully submitted,


                                                    **O'Donnell & Associates P.C.**

                                                    By: s/ Pierce O'Donnell

                                                    Pierce O'Donnell (*pro hac vice*)
                                                    550 S. Hope St., Suite 1000

Los Angeles, California 90071
Phone:  (213) 347-0290
Fax:  (213) 347-0298

**Law Offices of Joseph M. Bruno**
By: s/ Joseph M. Bruno
Joseph M. Bruno (LSBA No. 3604)
Plaintiffs' Liaison Counsel
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493

**The Andry Law Firm, LLC**
By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile:  (504) 585-1788

**Domengeaux Wright Roy & Edwards LLC**
By: s/ James P. Roy
Bob F. Wright (LSBA No. 13691)
James P. Roy (LSBA No. 11511)
MR-GO PSLC Liaison Counsel
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile:  (337) 233-2796

**Fayard & Honeycutt**
Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Girardi & Keese**
Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**McKernan Law Firm**
Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.**
Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**Law Office of Elwood C. Stevens, Jr., a
Professional Law Corporation**
Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard

**Gainsburgh, Benjamin, David, Meunier &
Warshauer, LLC**
Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre

P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Michael C. Palmintier, A.P.L.C.**
Michael C. Palmintier
Joshua M. Palmintier
618 Main Street
Baton Rouge, LA  70801-1910
Telephone:  (225) 344-3735
Telefax:  (225) 336-1146

1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**
Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Robinson, Calcagnie & Robinson, Inc.**
Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

**Baron & Budd, P.C.**
Russell W. Budd
Ann Saucer
Thomas M. Sims
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Telephone:  (214) 521-3605
Fax: (214) 520-1181

**Andry & Andry**
Jay Andry
Gilbert V. Andry
Arthur Landry
710 Carondelet Street
New Orleans, LA  70130
Telephone:  (504) 581-4334
Fax:  (504) 586-0288

**Carlton Dunlap Olinde & Moore**
John B. Dunlap, III
Richard P. Ieyoub
One American Place, Suite 900
301 Main Street
Baton Rouge, LA  70825
Telephone:  (225) 282-0600
Telefax:  (225) 282-0650

**The Dudenhefer Law Firm, L.L.C.**
Frank C. Dudenhefer, Jr.
601 Poydras Street, Suite 2655
New Orleans, LA  70130
Telephone:  (504) 616-5226

**Dumas & Associates Law Firm, LLC**
Walter C. Dumas

**Glen J. Lerner & Associates**
Glen J. Lerner

Lawyer's Complex
1261 Government Street
P. O. Box 1366
Baton Rouge, LA  70821-1366
Telephone:  (225) 383-4701
Telefax:  (225) 383-4719

4795 S. Durango Drive
Las Vegas, NV  89147
Telephone:  (702) 877-1500
Telefax:  (702) 968-7572

## <u>CERTIFICATE OF SERVICE</u>

I, Pierce O'Donnell, hereby certify that on November 30, 2009, I caused to be served

**PLAINTIFFS' MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, MOTION**

**TO AMEND THE JUDGMENT**, upon Defendants' counsel, Robin D. Smith, George Carter,

Keith Liddle, and Richard Stone by ECF and email at robin.doyle.smith@usdoj.gov;

george.carter@usdoj.gov, keith.liddle@usdoj.gov, and richard.stone@usdoj.gov.

<u>/s/ Pierce O'Donnell</u>