**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL | * | |
| BREACHES | | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*          05-5531 | * | |
| *Mumford v. Ingram*          05-5724 | * | |
| *Lagarde v. Lafarge*         06-5342 | * | JUDGE |
| *Perry v. Ingram*            06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*          06-7516 | * | |
| *Parfait Family v. USA*      07-3500 | * | MAGISTRATE |
| *Weber v. Lafarge*           08-4459 | * | JOSEPH C. WILKINSON, JR. |

**LAFARGE NORTH AMERICA INC.'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY**
**BY MELVIN SPINKS**

Defendant Lafarge North America Inc. ("LNA") moves to exclude expert opinion testimony by Melvin Spinks, a hydrologist designated by the plaintiffs to testify, among other things, about the "timing and causes of [the] IHNC wall breaches," Doc. 18390 at 20, to the extent that Mr. Spinks' testimony purports to establish the times of the North Breach and South Breach of the eastern floodwall on the Inner Harbor Navigation Canal ("IHNC").

Mr. Spinks used a computer model ("Sobek") to opine about the sources of flooding in the Lower Ninth Ward and St. Bernard Parish. Although LNA disagrees with several aspects of Mr. Spinks' methodology and conclusions,[1] this motion focuses on his statistical "sensitivity analysis" purporting to pinpoint the time of the North Breach and the South Breach based on a

---

[1] *See* Exhibit 17 to LNA's Motion for Summary Judgment (Doc. 19309) ("LNA SJ Exh."), Report of Joseph Suhayda. For the convenience of the Court and the parties, LNA refers to the summary judgment exhibits previously submitted to the Court, rather than submitting them again in connection with this motion. At the Court's request, LNA will re-submit any or all of these exhibits.

comparison of his modeling results with supposed "observed levels" of flooding at various times. This analysis does not meet the standards for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) because Mr. Spinks refused to analyze the error rate associated with his input data, which renders the output of the analysis statistically unreliable.  Accordingly this aspect of Mr. Spinks' testimony should not be admitted at the June 2010 bench trial.[2]

## ARGUMENT

### I.  LEGAL STANDARDS UNDER RULE 702 AND DAUBERT

This motion is governed by the same legal standards discussed in detail in LNA's motion to exclude the expert causation testimony of Hector Pazos, which LNA incorporates here by reference.  Doc. 19437.  Of particular note for this motion are *Daubert*'s focus on whether expert opinion has "an acceptable known or potential rate of error" and, in particular, whether there is "too great an analytical gap between the data and the opinion proffered."  *Daubert*, 509 U.S. at 593-94; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1977); *see Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 425 (7th Cir. 2000) (statistical analysis must be reliable).

### II.  MELVIN SPINKS' TESTIMONY REGARDING HIS "SENSITIVITY ANALYSIS" OF BREACH TIMES SHOULD BE EXCLUDED.

Mr. Spinks used computer modeling to study the sources and sequence of flooding in the Lower Ninth Ward and St. Bernard Parish.  His work includes a "sensitivity analysis" which purports to determine the times at which the North Breach and South Breach must have occurred, based on a statistical comparison between (a) the results of his model under various breach time scenarios and (b) the "observed" water levels and flood times that he derived based on witness

---

[2] The Court's case management orders (Docs. 19112, 19201) request *Daubert* briefing notwithstanding that the June 2010 trial is a bench trial, not a jury trial.  All non-*Daubert* objections to Mr. Spinks' testimony are reserved.

accounts.  This "sensitivity analysis" should be excluded because Mr. Spinks' analysis omitted any consideration of uncertainty and rates of error, which would, if included, have shown that the relevant breach time scenarios are statistically indistinguishable from each other.

Mr. Spinks' "sensitivity analysis" is set forth in Appendix I to his report.[3]  There, he compares the results of his model for various breaching scenarios (times) against the "observed water depth" at various locations to see which scenario provides the best match.  Thus, for instance, Mr. Spinks analyzed the scenario of "Case 1," which sets the North Breach at 4:00 a.m. and the South Breach at 5:30 a.m., and also analyzed the scenario of "Case 2," which sets the North Breach at 4:00 a.m. and the South Breach at 7:00 a.m.,[4] to compare the model results for each set of breach times against the "observed" results.  Based on that comparison, Mr. Spinks carried out a "relative error calculation," which he described as a "statistical inference," to determine which scenario was a better match.[5]

The problem with Mr. Spinks' analysis is that the values for "observed water depth" in his Appendix I are based on his interpretation of witness reports estimating water depth and time, with no account taken for the inherent uncertainty surrounding the witnesses' observations.  Although Mr. Spinks had assigned "error bars" to the witness observations in other portions of his report,[6] he did not include those error bars in his Appendix I.[7]  Instead, he included the values for "observed water depth" in increments down to **one tenth of a foot**, and then keyed his entire

---

[3] Exh. 1, Spinks Report Appendix I.

[4] Case 2 is similar to the breach times reported by Ebersole and Fitzgerald for the government in the MRGO case. LNA SJ Exh. 15, Spinks Dep. at 103.  By contrast, Case 1 is inconsistent with the breach times reported by the independent investigations (IPET, ILIT, Team Louisiana), the MRGO plaintiffs' modeling expert (Kok), and the barge plaintiffs' experts Dr. Marino (6:00 a.m., 6:30 a.m.) and Mr. Pazos (5:00 a.m., 6:00 a.m.). *See* LNA SJ Exh. 17, Suhayda Report at 4-5.

[5] LNA SJ Exh. 15, Spinks 2009 Dep. at 47.

[6] *See, e.g.*, LNA SJ Exh. 16, Spinks Report at 27, Fig. 10 (showing error bars).

[7] LNA SJ Exh. 15, Spinks 2009 Dep. at 91-92 (admitting he did not "do a statistical analysis that included the error bars").

sensitivity analysis to those artificially-precise values without ever asking what the result would be if the range of error or uncertainty inherent in the witnesses' observations were incorporated into his analysis.

In fact, the witness observations to which Mr. Spinks attributed these precise values were subject to massive uncertainty as to both the relevant time of day and the observed water level. As Mr. Spinks acknowledged, the witnesses were making their observations in "difficult conditions" during a storm, in some cases, in the dark.[8]  None of the witnesses had the benefit of measuring instruments to help them determine water depth, and some of them did not even have a timepiece to help them ascertain the time.[9]  Many of the "observed values" reported in Mr. Spinks' sensitivity analysis were based on recollections made years after the storm.[10]  And Mr. Spinks acknowledged that in order to arrive at a value for "observed water depth," it was sometimes necessary for him to make his own "judgments or assumptions," such as the level of the floor from which a witness made an observation.[11]

The inclusion of error bars is a way to express, in a scientific manner, the uncertainty inherent in the data.  As Mr. Spinks admitted, "[t]here are uncertainties in all the numbers" and "[t]hat's why, again, we have error bars."[12]  Indeed, Mr. Spinks included error bars when he reported the individual data points, and some of those error bars amounted to over an hour (time) and a couple of feet (depth).[13]  Moreover, Mr. Spinks admitted that he could have included those

---

[8] LNA SJ Exh. 15, Spinks 2009 Dep. at 73-74.

[9] LNA SJ Exh. 15, Spinks 2009 Dep. at 73, 78.  Mr. Spinks omitted from his sensitivity analysis data taken from a time-stamped videograph taken at the St. Bernard Courthouse.  *Id*. at 51-52.

[10] LNA SJ Exh. 15, Spinks 2009 Dep. at 79.

[11] LNA SJ Exh. 15, Spinks 2009 Dep. at 88-89.

[12] LNA SJ Exh. 15, Spinks 2009 Dep. at 89.

[13] LNA SJ Exh. 15, Spinks 2009 Dep. at 98.

4

error bars in his sensitivity analysis as well as his reporting of individual data points, but he chose not do so.[14]

Mr. Spinks' omission of uncertainty from his sensitivity analysis totally undermines the statistical validity and reliability of his conclusions.  Without incorporating uncertainty into his analysis, Mr. Spinks is unable to conclude that the results of the analysis, which purport to favor "Case 1" over "Case 2," are statistically significant.  Indeed, as shown by Dr. Joseph Suhayda, who studied the effect of uncertainty that Mr. Spinks chose to ignore, the introduction of even a small amount of uncertainty (+/- 0.5 ft. or 1 ft.) shows that the rate of error for the sensitivity analysis (0.2 to 0.4 units) is much larger than the differences between the Cases (0.04 to 0.2 units), rendering the Cases "statistically indistinguishable" from each other.[15]  The lack of statistical power in Mr. Spinks' analysis is also evident from a comparison of Mr. Spinks' results with those obtained by the MRGO plaintiffs' expert, Mr. Kok, who used the very same model but used different breach time inputs – hours later than those used by Mr. Spinks – and yet generated virtually identical modeling results.[16]

In short, by performing a sensitivity analysis that omitted uncertainties in the underlying data – uncertainties that Mr. Spinks candidly acknowledged in other portions of his report – Mr. Spinks employed an unreliable methodology.  Accordingly, his testimony on this subject should be excluded.  *See Watkins v. Telsmith, Inc.,* 121 F.3d 984, 992 (5th Cir. 1997) ("The district court appropriately noted the lack of testing of any of the proposed alternatives."); *Adams*, 231

---

[14] LNA SJ Exh. 15, Spinks 2009 Dep. at 92.

[15] LNA SJ Exh. 17, Suhayda Report at 6.

[16] *Compare* LNA SJ Exh. 16, Spinks Report at 25 (Spinks results) *with* Exh. 2, Spinks 2009 Dep. Exh. 8 at 40 (Kok results); *see* LNA SJ Exh. 15, Spinks 2009 Dep. at 134 (modeling results are "similar" in terms of scope and depth of flooding); *see also* LNA SJ Exh. 17, Suhayda Report at 7 (similarity of modeling results shows that "the model is not capable of discriminating between the IHNC breach timings").

F.3d at 425 (under *Daubert*, statistical evidence must be prepared in a reliable and statistically sound way).

## **CONCLUSION**

LNA's motion to exclude expert testimony from Melvin Spinks should be granted as set forth above.

Dated: December 1, 2009                   Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

 /s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC  20001
Telephone:  (202) 346-4240
jaldock@goodwinprocter.com
rwyner@goodwinprocter.com
mraffman@goodwinprocter.com

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA  70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 1, 2009.

<u>/s/ John D. Aldock</u>

LIBW/1724446.1