UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * * | CIVIL ACTION NO. 05-4182 and consolidated cases |
| PERTAINS TO: BARGE |  * * | SECTION "K" (2) |
| *Boutte v. Lafarge*    05-5531 | * |  |
| *Mumford v. Ingram*    05-5724 | * |  |
| *Lagarde v. Lafarge*    06-5342 | * | JUDGE |
| *Perry v. Ingram*    06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*    06-7516 | * |  |
| *Parfait Family v. USA*    07-3500 | * | MAGISTRATE |
| *Weber v. Lafarge*    08-4459 | * | JOSEPH C. WILKINSON, JR. |

### LAFARGE NORTH AMERICA INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY BY ROBERT BARTLETT

Defendant Lafarge North America Inc. ("LNA") moves to exclude certain expert opinion by Robert Bartlett, a metallurgist designated by the plaintiffs to testify about the "nature and causes of [the] IHNC wall breaches." Doc. 18390 at 20. Mr. Bartlett studied the damage to the barge and at the south end of the South Breach and concluded that the barge had contacted the wall at the south end of the South Breach. LNA does not seek to exclude this aspect of Mr. Bartlett's testimony, which is confined to causation of the specific damage found at the very southern end of the South Breach, rather than causation of the breach itself. However, Mr. Bartlett deviated from scientific inquiry, and with no basis, went on to opine about the "plausibility" of the barge having caused the North Breach, even though he admitted he found no damage on the barge or the floodwall connecting the barge to any feature of that breach.

1

Mr. Bartlett's opinions regarding the North Breach fail to meet the standards for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Instead, Mr. Bartlett's opinions related to the North Breach are unsupported by any scientific analysis or data, and should be excluded on that basis from the bench trial scheduled to begin in June 2010.[1]

## ARGUMENT

### I. LEGAL STANDARDS UNDER RULE 702 AND DAUBERT

This motion is governed by the same legal standards discussed in detail in LNA's motion to exclude the expert causation testimony of Hector Pazos, which LNA incorporates here by reference. Doc. 19437. Of particular note for this motion are the requirements that the expert's conclusions have "scientific support" and constitute "more than subjective belief or unsupported speculation." *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 (5th Cir. 1998) (en banc); *Paz v. Brush Engineered Materials,* 555 F.3d 383, 388 (5th Cir. 2009).

### II. ROBERT BARTLETT'S TESTIMONY REGARDING THE NORTH BREACH SHOULD BE EXCLUDED.

Mr. Bartlett studied the pattern of damage at the southern end of the South Breach and on the barge, and concluded that the damage he observed at the southern end of the South Breach must have resulted from contact between the barge and the floodwall.[2] LNA's expert, Dr. Cushing, reached a similar conclusion about the damage at that location, and further explained why this same evidence shows that the breach must have occurred before the barge came into

---

[1] The Court's case management order (Doc. 19201) calls for *Daubert* briefing notwithstanding that the June 2010 trial is a bench trial, not a jury trial. LNA reserves all non-*Daubert* objections to Mr. Bartlett's testimony.

[2] *See* Exhibit 37 to LNA's Motion for Summary Judgment (Doc. 19309) ("LNA SJ Exh."), Bartlett Report at 8. For the convenience of the Court and the parties, LNA refers to the summary judgment exhibits previously submitted to the Court, rather than submitting them again in connection with this motion. At the Court's request, LNA will re-submit any or all of these exhibits.

2

contact with the floodwall.[3]  Had Mr. Bartlett confined his opinions to the origins of the damage at the south end of the South Breach, LNA would not seek to exclude his testimony.

Mr. Bartlett stretched further, however, and extrapolated from his observations about the damage at the south end of the South Breach to draw unsupported conclusions about the "plausibility" of the barge having caused *the North Breach*.  In particular, Mr. Bartlett opined that the evidence of damage at the south end of the South Breach "confirms the plausibility of the testimony by Mr. Villavasso that he observed a barge create the initial damage to the north breach of the IHNC east floodwall."[4]  This conclusion is baseless and entirely lacking in scientific support or analysis.  It does not even begin to satisfy the requirements of *Daubert* and Rule 702.

Mr. Bartlett's unsupported opinion regarding the North Breach contrasts starkly with his discussion of the damage at the southern end of the South Breach.  There, Mr. Bartlett pointed to specific evidence of damage to the concrete cap and the rebar, and telltale signs of contact between the barge and the bent rebar including the angle of the rebar, the scratches on the bottom of the barge, and the shape of the concrete damage at the far limit of the breach.[5]  Mr. Bartlett had nothing to say, however, about any similar observations regarding the North Breach.  To the contrary, Mr. Bartlett freely admitted in his deposition that:

---

[3] *See* LNA SJ Exh. 1, Cushing Report at 88-99, 127-28.  In fact, Mr. Bartlett's report underscores the evidence that the barge did ***not*** cause the South Breach.  As Mr. Bartlett wrote, "[t]he fact that the wall fractured at this location demonstrates that when the impact occurred, the wall foundation had sufficient strength to resist the force required to cause the fracture, rather than fall over."  LNA SJ Exh. 37, Bartlett Report at 6.  In other words, a barge impact would shear the concrete cap rather than causing the embedded sheet pile to deflect, a phenomenon that plaintiffs' other experts ignored in reaching their conclusions.  *See also* LNA SJ Exh. 30, Bartlett Dep. at 60 (Q:  "And you would agree with me that that [construction joint] is intrinsically a weaker location."  A: "Absolutely.").

[4] LNA SJ Exh. 37, Bartlett Report at 8.

[5] LNA SJ Exh. 37, Bartlett Report at 6-7.

- he saw no similar damage at the North Breach that he could associate with a barge impact;[6]

- based on photographs alone, he did *not* conclude the barge had any involvement with the North Breach;[7]

- he could identify "no physical evidence that demonstrates contact by the barge" at the North Breach.[8]

LNA's experts arrived at the same conclusion: there is no evidence at the North Breach suggestive of impact by a barge.[9]

Accordingly, Mr. Bartlett had no basis at all to opine on the "plausibility" of the barge having caused the North Breach – an opinion he admits is at odds with the physical evidence that he considered. His opinion bears none of the hallmarks of scientific inquiry and methodology that Rule 702 and *Daubert* require, and should be excluded. *See Moore*, 151 F.3d at 278 (contrasting evidence that is "genuinely scientific" from "unscientific speculation offered by a genuine scientist").

## CONCLUSION

LNA's motion to exclude Mr. Bartlett's testimony should be granted as set forth above.

---

[6] LNA SJ Exh. 30, Bartlett Dep. at 63 (Q: "You saw no damage at the north breach that would lead you to believe that a barge had anything to do with that damage; correct?" A: "We did not see – that's correct.").

[7] LNA SJ Exh. 30, Bartlett Dep. at 62-63 (Q: "Based in the photographs alone, you did not reach any opinion or conclusion regarding the barge and any involvement it may or may not have had with the north breach." A: "That's correct.").

[8] LNA SJ Exh. 30, Bartlett Dep. at 96 ("[W]e have no physical evidence that demonstrates contact by the barge" at the North Breach).

[9] LNA SJ Exh. 19, Bea Dep. at 72, 75-77 ("There were no signs of barge impact, general or local" at the North Breach. …We walked every inch of that North Breach repeatedly."); LNA SJ Exh. 27, Bakeer Dep. at 118-19 ("You would see damage on the barge itself, and you would see signs of damage on the wall that indicates that the wall was impacted by the barge with enough sufficient force to fail the wall. You don't see either one.").

Dated: December 1, 2009								Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

 /s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC  20001
Telephone:  (202) 346-4240
jaldock@goodwinprocter.com
rwyner@goodwinprocter.com
mraffman@goodwinprocter.com


Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA  70130
Telephone:  (504) 598-2715

***Attorneys for Lafarge North America Inc.***

5

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 1, 2009.

                                              /s/ John D. Aldock