UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| PERTAINS TO: BARGE | * * * * | NO. 05-4182 and consolidated cases |
| | * | SECTION "K" (2) |
| *Boutte v. LaFarge*     05-5531 | * | |
| *Mumford v. Ingram*    05-5724 | * | |
| *Lagarde v. LaFarge*    06-5342 | * | JUDGE |
| *Perry v. Ingram*       06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. LaFarge*     06-7516 | * | |
| *Parfait Family v. USA* 07-3500 | * | MAG. |
| *LaFarge v. USA*        07-5178 | * | JOSEPH C. WILKINSON, JR. |

## MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT, D. PHILLIP SKAER, II

MAY IT PLEASE THE COURT:

As this court is well aware, ING 4727 broke away from the Lafarge terminal sometime between the afternoon of Saturday, August 29, 2005 and the times at which the eastern IHNC floodwall breaches occurred. One likely scenario is that the moorings failed or broke. Defendant, Lafarge North America, seeks to introduce the testimony of its proposed rope expert, D. Phillip Skaer, II to rebut the contention that ING 4727 was inadequately moored (with only three lines) for hurricane conditions. (Exhibit 1, Skaer Report)

In summary, Mr. Skaer provides opinions regarding the breaking strength of three ropes - yet cannot identify which three ropes of the 10-20 he reviewed were used to moor the barge ING 4727. In addition, Mr. Skaer further opines that additional ropes would not have prevented the breakaway. Mr. Skaer provides this opinion despite:

1. Having no expertise in mooring barges;

2. Having admitted that he does not know how the barge at issue was tied;

3. Having no knowledge of the size and quality of other available cable and rope;

4. Having no knowledge of the total number of mooring points available on the barge for mooring;

5. Having no knowledge of the forces which would have affected the barge and its breakaway including the winds, waves, tide and storm surge;

6. That there were six other barges at the facility (moored differently) that did not breakaway;

7. Having admitted that he has "no idea" why the six other barges moored at Lafarge did not breakaway.

Plaintiffs move to strike, exclude or limit Mr. Skaer's opinions, conclusions and testimony on the grounds that (1) Mr. Skaer's findings are absent any valid consideration of which ropes were used to moor the ING 4727, and that (2) Mr. Skaer's opinion - that the barge would have broken its moorings even if additional ropes were used - is based upon conjecture and speculation; he has no knowledge of how the barge was moored, nor of the forces (wind, wave, surge and tide) which would have affected the ING 4727 in the Inner Harbor Navigational Canal.

I.   **THE LEGAL STANDARD**

The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, **if (1) the testimony is based upon**

>**sufficient facts or data,** (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
>(Emphasis Added)

Once the proponent of the evidence proves that the offered testimony is based on sufficient facts or data, he or she must then "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). This process is governed by the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In *Daubert,* the Supreme Court made clear that the district courts must act as gatekeepers to ensure that expert testimony is both relevant and reliable and identified the following non-exclusive factors a district court may consider in evaluating an expert's testimony: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the theory or technique's degree of acceptance in the scientific community. *Daubert,* 509 U.S. 593-94; *Moore,* 151 F.3d at 275; *In re Propulsid Prods. Liab. Litig.,* 261 F. Supp. 2d 603, 605-06 (E.D. La. 2003). *In Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999) the Supreme Court explained that the overarching goal of *Daubert's* gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

The court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Daubert* at p. 592-93, 113 S.Ct.

barges were moored, did not consider other available mooring techniques, did not consider the existence or absence of additional available mooring lines and cable, or why six other barges at the facility did not break free.

### No knowledge as to the identity of ropes

Mr. Skaer cannot opine on the strength of ropes used to moor ING 4727. This is because there is no evidence to indentify the ropes used. In developing his opinion, Mr. Skaer did not rely upon admissible facts to identify the ropes which were used to moor the barge. In fact, Mr. Skaer admitted that upon inspecting the ropes, some 4 years after the storm, there were some 10-20 ropes available,[2] some of which were not involved in the incident. Mr. Skaer testified:

> Q. How many ropes were there?
> A. Well, there were quite a few. Some of them were not germane to the thing, they just pulled in all the ropes they could. So some were just pieces of trash that were up there. So the ones that we looked at probably were six or seven that had any real meaning, that we could really relate to the barges. (Exhibit 2, p. 22-23)

Mr. Skaer did not rely upon any statements, depositions, other witnesses, or other experts to identify the ropes involved in the incident[3]. During his examination of the ropes only Lafarge attorneys were present. When questioned about how he identified the ropes used to moor the ING 4727, Mr. Skaer admitted that he was directed to the ropes by defense counsel from Chaffe McCall[4]. Even though there were some photos known to exist, Mr. Skaer could not use the photos to identify the ropes:

> Q. Well, tell me. Was it the attorneys that told you which ropes broke, or did you know from the photos?
> A. I did not know directly from the photos, I had to use the information that they also supplied me. (Exhibit 2, p. 26-27)

---

[2] At first Mr. Skaer says there were 10-12 ropes/later 10-20 (Exhibit 2, Skaer depo. p. 23 and 29)
[3] Exhibit 2, p. 30-32
[4] Exhibit 2, p. 23-24

The "information" supplied to Mr. Skaer was a sketch generated by a Chaffe McCall attorney[5].

## No knowledge of mooring or even as to how the barge was moored

Mr. Skaer has no knowledge of mooring barges or even how ING 4727 was in fact moored[6]. Mr. Skaer never determined the ING 4727's mooring capabilities. That is, Mr. Skaer did not know the number of cavils and bitts on the barge at issue, which is the hardware dispersed along the hull of the barge in order to moor it from multiple points to a stationary object or dock,[7] In addition, Mr. Skaer was unaware of the safe working load limits of the lines allegedly used to moor the vessel[8].

Mr. Skaer's opinion that the barge would have broken away even with additional lines is pure guesswork.

> Q. See, you're giving an opinion that you felt it would have broken away anyway when you don't even know what the wind speed was. Is that correct?
> A. That is correct.
> Q. And you don't know what the wave action was, is that correct?
> A. That is correct.
> Q. You don't know the height of the surge is that correct?
> A. That's correct.
> Q. And all of these are factors which affect whether a barge breaks away, is that correct?
> A. That is correct.
> Q. So is that opinion that it would have broken away anyway, is that speculation or is that a guess?
> A. It's looking at the ropes and the way they broke and how they melted and fused. It was the worse situation on a piece of rope I've ever seen. And I -- from that, and having looked at hundreds of ropes in my life, I decided that probably nothing could have saved it at that point.
> Q. What saved the other six barges?
> A. I have no idea. They were loaded.
> Q. So that's a factor, having a loaded barge versus an empty?

---

[5] Exhibit 2, Sketch of Mr. Forbes attached to depos., see also p. 51-53, 77-78
[6] Exhibit 2, p. 25
[7] Exhibit 2, p. 69
[8] Exhibit 2, p. 42

> A. I don't know that.
> Q. You don't' know.
> A. I don't know. It would appear –
> **Q. So let me get this straight: You feel there's no amount of rope that could have stopped this break away, but we have six barges all within twenty feet that did not break away. Is that correct?**
> **A. That is correct. (Exhibit 2, p. 108-110) (Emphasis added)**

### No knowledge of the weather conditions

As for whether the use of additional ropes would have prevented the breakaway, common sense would indicate that one would have to know the forces presented by the weather. Mr. Skaer's opinion is speculation. Mr. Skaer admits that he did not do an investigation of conditions affecting the barge. Mr. Skaer further admits that he has no expertise in mooring[9]. Mr. Skaer admits that a barge in a hurricane would be affected by the forces of wind, waves, surge and tide[10]. However, Mr. Skaer had no knowledge of the conditions presented by Hurricane Katrina. In particular, Mr. Skaer stated:

> Q. Okay. Let me ask you about -- I think I know the answer, but with regard to Hurricane Katrina you have no opinion or knowledge as to the winds which may have affected the barges in the Industrial Canal?
> A. No, I do not.
> Q. No knowledge of any of the factors involved in a hurricane in that area.
> A. No.
> Q. Okay. So you have no knowledge of the surge?
> A. Direct amount of surge, no.
> Q. Wave action?
> A. No.
> Q. Winds involved?
> A. I'm not sure of the wind velocity, no.
> Q. Okay. And you didn't review any weather or wind records, is that correct?
> A. No, I did not. (Exhibit 2, p. 50)

---

[9] Exhibit 2, p. 8
[10] Exhibit 2, p. 39

### III. MR. SKAER'S OPINION THAT THE ADDITIONAL USE OF TWO NEW ROPES ALONG WITH A USED ROPE, "TRIPLED THE ORIGINAL STRENGTH OF THE MOORING SYSTEM" SHOULD BE EXCLUDED AS THERE IS NO EVIDENCE TO IDENTIFY THE ROPES.

Mr. Skaer's opinion as to the strength of ropes involved in the incident lacks scientific procedure, lacks foundation and is unreliable.

Mr. Skaer's opinion that Lafarge "tripled the strength" is based upon Mr. Skaer's evaluation of ropes and their tensile strength allegedly used at the time of the incident. However, before one could evaluate the tensile strength of various ropes used to moor the barge, one must identify which ropes were used to moor the ING 4727. Mr. Skaer admits that he has not reviewed any statement, deposition or other expert report which identifies which three ropes (out of the 10-20 available for his inspection) were used to moor ING 4727. In rendering his opinion as to tensile strength of ropes, Mr. Skaer relies exclusively upon defense counsel to the identity which ropes they perceive as the ones at issue. Attorney-generated "data" is not admissible, nor is it evidence.

Accordingly, under principals dictated by _Daubert_ and Federal Rule of Evidence 702(1), expert testimony must be based upon sufficient facts or data. Mr. Skaer's testimony is not based upon facts or data and is unreliable.

### IV. MR. SKAER'S OPINION THAT "IF ADDITIONAL ROPES HAD BEEN USED, IT IS LIKELY THEY, TOO, WOULD HAVE PARTED" SHOULD BE EQUALLY EXCLUDED AS CONJECTURE AND SPECULATION.

Mr. Skaer's opinion that additional ropes would not have prevented the breakaway lacks scientific procedure, lacks foundation, is pure speculation and is unreliable.

Mr. Skaer opines that additional ropes probably would not have prevented the breakaway. Mr. Skaer provides this opinion despite:

    1) Having admitted that he has no expertise in mooring;

    2) Having admitted he does not know how the barge was tied;

3) Having no knowledge the size and quality of other available cable and rope;

4) Having no knowledge of the total number of mooring points on the ING 4727 to tie wire or rope;

5) That he was unaware of the hurricane conditions in the IHNC affected the barge including the winds, waves and storm surge;

6) That there were six other barges (moored differently) that did not breakaway;

7) Having admitted that he has "no idea" why the six other barges moored at Lafarge did not breakaway.

Mr. Skaer's conclusion that additional ropes probably would not have prevented the breakaway is pure supposition unsupported by fact or in devoid of any analysis. Mr. Skaer made no effort to determine how the barge was moored, how the barge could have been moored. Additionally, Mr. Skaer performed no investigation as to the size, quality and strength of other available cable and rope which could have been used to moor the barge. Likewise, Mr. Skaer performed no investigation as to why six other barges moored probably within 20 feet did not break free[11]. It is perplexing as to how Mr. Skaer can provide an opinion that additional ropes would not have prevented the breakaway.

Mr. Skaer has no factual data to support this opinion. Further, his testimony is based upon unreliable principals and methods (speculation).

## V. THE OPINION OF MR. SKAER DOES NOT ASSIST THE TRIER OF FACT

Expert opinion must be "grounded in the methods and procedures of science,"and "more than subjective belief or unsupported speculation." *Daubert* at p. 590. Mr. Skaer used no scientific methodology in arriving at his opinion. He employed no analyses, tests,

---

[11] Had Mr. Skaer performed any rudimentary investigation as to why the other six barges did not break free, he would have determined that those barges were moored differently, at available mooring point.

measurements or other scientific or forensic methodology in arriving at his conclusion. His opinions lack scientific foundation, are speclulative and unreliable.

Mr. Skaer's opinions will not assist the trier of fact and may spawn many more questions than it answers. For example, how can one opine as to the strength of lines when the lines used are unknown? How can one say that additional lines would not have prevented the breakaway when one has no expertise in mooring techniques or the forces of nature at play? Lastly, how can one opine that the ING 4727 could not have been safely moored when six other barges moored at the facility did not breakaway? Mr. Skaer's answer that he has "no idea" is representative of his analysis and methodology as a whole.

WHEREFORE, Movers pray that this court grant its Motion to Exclude the Testimony of Defendant's Expert, D. Phillip Skaer, II.

Respectfully Submitted,

Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
e-mail: lawrence@wiedemannlaw.com,
karl@wiedemannlaw.com,

Shawn Khorrami (CA SBN #14011)
Matt C. Bailey (CA SBN #218685)
Dylan Pollard (CA SBN #180306)
Khorrami, Pollard & Abir, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimilie: (213) 596-6010
e-mail: Skhorrami@kpalawyers.com;
Mbailey@kpalawyers.com

Brian A. Gilbert (21297)
BEST KOEPPEL TRAYLOR
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 885-7700
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
e-mail: bgilbert@briangilbertlaw.com

Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:    202-549-1454
Facsimile:  800-805-1065 and 202-828-4130
e-mail: rick@rickseymourlaw.net,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
Patrick J. Sanders, LLC
3123 Ridgelake Drive
Suite B
Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com