**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA**

_____

|  |  | § |  |
|---|---|---|---|
| In Re: | KATRINA CANAL BREACHES | § | CIVIL ACTION |
|  | CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
|  | _____ | § | JUDGE DUVAL |
|  |  | § | MAG. WILKINSON |
|  | PERTAINS TO:  MRGO, | § |  |
|  | *Robinson* (06-2268) | § |  |

_____

**DEFENDANT UNITED STATES' MEMORANDUM IN SUPPORT
OF ITS MOTION TO ALTER THE JUDGMENT OR,
IN THE ALTERNATIVE, FOR A NEW TRIAL**

Over the objection of the United States, the Court admitted into evidence at trial a previously undisclosed opinion of Plaintiffs' expert Robert G. Bea.  Dr. Bea testified that the Reach 2 levee would not have been breached during Hurricane Katrina if the MRGO had been in its idealized "Scenario 3" footprint.  This surprise opinion was not timely disclosed under Rule 26(a) or the Court's case management orders.  Indeed, this opinion was not even held by Dr. Bea prior to trial.  It was *formed during trial,* based on analyses that Dr. Bea performed over the Jazzfest weekend, after the first day of his direct examination.  Prior to its disclosure on the following

Monday morning, Plaintiffs had not disclosed any expert opinion about the performance of the Reach 2 levee under Scenario 3 conditions.

This omission was not an oversight.  It was intentional.  The United States pointed out this hole in the Plaintiffs' proof more than six months before trial.  In September of 2008, the United States moved for a partial summary judgment based on Plaintiffs' lack of any evidence showing that the Reach 2 levee would have survived the hurricane intact if the MRGO had been maintained at its authorized design dimensions, *i.e.,* the dimensions set forth in Plaintiffs' counterfactual Scenario 3.[1]  In support of the motion for partial summary judgment, the United States explained that the lack of such evidence prevented Plaintiffs from proving that maintenance and operation of the MRGO, separate and distinct from the channel's design and construction, caused the alleged flood damage.[2]

In response to the summary judgment motion, Plaintiffs did not make any attempt to remedy the omission.  They took a different tack.  They adduced a declaration by Dr. Bea in which he insisted that Scenario 3 comprised "the wrong conditions" for determining negligence.[3]  Further, he described the United States'

---

[1] Doc.  15317 (United States' Motion for Partial Summary Judgment).

[2] *See* Doc.  15317-2 (United States' Memorandum in Support of Partial Summary Judgment) at 3, 5-6, 12-14, 17-20.

[3] JX 69, Doc. 16063-2 (Bea Oct. 7, 2008 Decl.) at 16.

2

"reference to Scenario 3 Conditions" as "erroneous" and "misplaced because such reference would *necessarily* result in an inaccurate, incomplete, and distorted understanding of how the defects and deficiencies introduced during the life-cycle of the MRGO negatively impacted the performance of the adjacent hurricane flood protection and navigation structures during Hurricane Katrina."[4]  Instead of analyzing levee performance under Scenario 3, which inserted the channel "as designed" into the regional topography, Dr. Bea analyzed levee performance under Plaintiffs' Scenario 2C, which eliminated the channel in its entirety.[5]  At no time between the filing of that declaration and the onset of trial did Plaintiffs proffer any opinion concerning the performance of the Reach 2 levee under Scenario 3 conditions.

During Dr. Bea's direct examination, however, it became apparent that the Court viewed Scenario 3 to be the proper counterfactual scenario for purposes of establishing the impact of the MRGO's maintenance.  Consequently, at the behest of Plaintiffs' counsel, Dr. Bea performed additional analyses over the Jazzfest weekend, after Plaintiffs' counsel had concluded his direct examination and passed the witness to Defendant.  Based on this new study, Dr. Bea concluded that the Reach 2 levee would not have been breached by Katrina-driven surge if the MRGO had been

---

[4] *Id.* (emphasis added).

[5] *See id.* at 17.

maintained at its original design dimensions. Without any warning to the United States of this newly developed opinion, Plaintiffs' counsel seized the podium when the proceeding recommenced on Monday, April 27, and requested an opportunity to continue the direct examination of Dr. Bea for the purpose of eliciting a "summary" of his prior testimony. But when Dr. Bea took the stand, he did not confine his testimony to a summary but instead used the opportunity to put forward his newly formed opinion about the performance of the Reach 2 levee in Scenario 3.

The Court erred in admitting Dr. Bea's surprise opinion testimony over the repeated objections of the United States, and this error prejudiced the United States. Based on Plaintiffs' opposition to the United States' motion for partial summary judgment on the negligent operation and maintenance claims, the United States could not have anticipated that Plaintiffs would controvert the opinions of the United States' experts that the Reach 2 levee would have been destroyed by Hurricane Katrina even if the MRGO had been maintained at its authorized dimensions. In their opposition Plaintiffs had contended that the effects of channel operation and maintenance could not be "carve[d] out" and separated "from the complex and interdependent hydraulic system that was created by the project's design and construction."[6] And in his supplemental expert reports following the Court's denial

---

[6] Doc. 18567, at 7.

of the United States' motion,  Dr. Bea continued to emphasize that Plaintiffs' case was based on "the *cumulative* adverse effects associated with design, construction, maintenance, *and* operation" of the MRGO.[7]

The Court's admission of Dr. Bea's surprise opinion testimony, which did just what Plaintiffs had previously insisted could not be done—carve out the effects of channel maintenance from the effects of design and construction—filled a yawning gap in Plaintiffs' fatally flawed case.  Without this opinion, the Court could not have found that negligent maintenance and operation caused the flooding of St. Bernard Parish and the Lower Ninth Ward.  It could not have so found, because absent this illicit opinion the record evidence fails to establish that MRGO *operation and maintenance,* separate and distinct from design and construction, caused Plaintiffs' flood damage.  Admitting this testimony allowed Plaintiffs to transform Dr. Bea's pre-trial "straw man" into the capstone of their case.[8]  The prejudice became palpable when the Court issued its findings of fact, and relied on Dr. Bea's opinion that Plaintiffs' properties in St. Bernard Parish and the Lower Ninth Ward would not have

---

[7] PX-81 (Bea Jan. 2009 expert report summary (Feb. 16 ed.)) at 3 (emphasis added); *accord id.* at 4.

[8] JX 69, Doc. 16063-2, at 16.

been flooded by floodwaters from the MRGO if the channel had been maintained at

its authorized dimensions.[9]

The Federal Rules of Civil Procedure are designed to prevent a "trial by

ambush."[10]  Plaintiffs' presentation of surprise opinion testimony based on a back-of-

the-envelope mid-trial analysis of Scenario 3 amounted to nothing less.  Given their

vehement denunciation of the United States' reliance on Scenario 3 and their explicit

rejection of it, this conclusion is inescapable.  Therefore, pursuant to Federal Rule of

Civil Procedure 59(e), the United States requests that the Court strike Dr. Bea's illicit

opinion testimony and alter the judgment so that it is for the United States based on

Plaintiffs' failure to prove that operation and maintenance of the MRGO caused

Plaintiffs' flood damage.  In the alternative, the Court should order a new trial.

---

[9] Doc. 19415-1, at 64-66.

[10] *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978).

## BACKGROUND

On July 11, 2008, Dr. Bea timely produced his expert report.[11]  Despite authoring more than 1,100 pages, Dr. Bea failed to opine as to whether the Reach 2 levee would have breached in Scenario 3.[12]  On September 24, 2008, the United States filed a motion for partial summary judgment.[13]  The United States contended that Plaintiffs and their experts had failed to demonstrate that the Reach 2 levee would have survived in Scenario 3.[14]

In response, Dr. Bea filed a declaration, which also failed to set forth any opinion as to whether the Reach 2 levee would have breached in Scenario 3.[15]  On the contrary, Dr. Bea criticized the United States' reliance on Scenario 3, describing it as "the wrong set of conditions for their non-negligence MRGO condition (Scenario 3) instead of the set of conditions for 'do no harm' established by Plaintiffs' experts (Scenario 2C)."[16]  Dr. Bea further opined that:

---

[11] *E.g.*, DX 451; JX 208.

[12] Doc. 15317-3 ¶ 15 (United States' Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment).

[13] Doc. 15317.

[14] A hearing on the motion was held on December 18, 2008.  The Court ultimately ruled that material facts were at issue which precluded the entry of partial summary judgment.  Doc. 18567 (noting that the motion for summary judgment was denied orally at the hearing); Doc. 16810.

[15] JX 69, Doc. 16063-2.

[16] *Id.* ¶ 11 at 16.

>  [T]he erroneous reference to Scenario 3 Conditions and the lack of
>  breaching and flooding analyses of those conditions is misplaced
>  because such reference would necessarily result in an inaccurate,
>  incomplete, and distorted understanding of how the defects and
>  deficiencies introduced during the life-cycle of the MRGO negatively
>  impacted the performance of the adjacent hurricane flood protection
>  and navigation structures during Hurricane Katrina.  In short, the
>  Defendant is knocking down a "straw man" in using Scenario 3 as its
>  self-appointed "no negligence" set of conditions.[17]

At his January 29, 2009 deposition, Dr. Bea provided the United States yet another 500 page expert report.[18]  Dr. Bea again failed to opine whether the Reach 2 levee would have breached in Scenario 3.[19]  On March 27, 2009, Plaintiffs filed a pre-trial exhibit list containing over 243 exhibits.[20]  This exhibit list failed to list any reports from Dr. Bea opining whether the Reach 2 levee would have breached in Scenario 3.  Plaintiffs filed another exhibit list on March 30, 2009.[21]  As with their prior exhibit list, this revised exhibit list—which contained 2,148 exhibits—also failed to list any report from Dr. Bea opining whether the Reach 2 levee would have breached in Scenario 3.

---

[17] *Id.* ¶ 11(b) at 16.

[18] JX 207.  The United States was granted an additional deposition day with Dr. Bea because his supplemental report was so voluminous.

[19] Dr. Bea produced another expert report just two weeks before trial.  PX 2118.  This report, while ultimately withdraw, still failed to address whether the Reach 2 levee would have breached in Scenario 3.  Doc. 18511.

[20] Doc. 18331-4.

[21] Doc. 18508.

During his direct testimony on Friday, April 24, 2009, Dr. Bea was unable to say whether the Reach 2 levee would have breached in Scenario 3 because he had not performed an analysis of the effects of waves on the Reach 2 levee in that scenario.[22] Plaintiffs concluded Dr. Bea's direct testimony, and trial recessed for the weekend.[23]

On Monday, April 27, 2009, Plaintiffs asked the Court to re-open Dr. Bea's direct testimony to conduct a summary before the United States' cross examination. During this summary, the Plaintiffs introduced a new, never-produced exhibit and accompanying testimony, over the United States repeated objections, stating that breaching would not have occurred in Scenario 3.[24]  During this "summary," Dr. Bea made clear that this new analysis was conducted over the weekend.[25]  On cross-examination, Dr. Bea conceded that he had not prepared a report prior to trial

---

[22] *Compare* Tr. 1211:23–1212:22 (Friday testimony that witness had not quantified difference between wave effects in Scenario 1 and effects in Scenario 3) *with* Tr. 1474:22–1475:2-8 (Monday testimony that his work over the weekend enabled him to compare the erosive breaching effects in Scenario 3 with those in Scenario 2C).

[23] Tr. 1243:20.

[24] Tr. 1249:1–1258:15 ("Mr. Stone: Your Honor, I would like to raise a point about this summary that counsel is about to speak about.  He'll provide you the summary, but in the last line seems to have a study done by Dr. Bea, the purpose of which was to determine wave characteristics with MRGO design dimensions as they were originally were.  And I have not received any data from this study and this seems to be a complete new analysis done during the litigation at trial.  So it's objectionable in and of itself.  The rest of the summary is reasonably acceptable, but that last line there is adding something that is brand new in this litigation as far as I know.").

[25] Tr. 1257:9-1257:16 ("Well, we were able this weekend to step polder by polder, case by case. . . .").

opining whether the Reach 2 levee would breach during Scenario 3.[26]  Dr. Bea also

conceded that he had developed his new analysis during the weekend between his

direct examination and his cross examination.[27]

     In finding that MRGO operation and maintenance caused Plaintiffs' flood

damage, the Court relied on this weekend opinion that was hastily generated by Dr.

Bea after his direct testimony had ostensibly been completed.[28]

## ARGUMENT

     The Court erred in admitting, over the United States' objections,  Dr. Bea's

new opinion that the Reach 2 levee would not have breached in Scenario 3.  Plaintiffs

were put on notice of this hole in their case in September of 2008—six months

before trial—when the United States filed a motion for summary judgment on the

issue of causation.[29]  The motion was premised on Plaintiffs' failure to adduce any

expert opinion concerning levee performance in Scenario 3.[30]  But instead of

attempting to fill the hole, Plaintiffs dug in their heels and argued that the United

States' position concerning the vital importance of Scenario 3 was mistaken.  Indeed,

---

[26] Tr. 1478:23-1479:15.

[27] Tr. 1481:24-1482:15.

[28] Doc. 19415, at 64-66.

[29] Doc. 15317.

[30] *See* Doc. 15317-2, at 5-6, 12-13, 17-20.

they filed a declaration from Dr. Bea in which he decried the United States'
"erroneous reference to Scenario 3 conditions" and asserted that basing a
comparative analysis on Scenario 3 "would *necessarily* result in an inaccurate,
incomplete, and distorted understanding of how" MRGO maintenance affected the
performance of the Reach 2 levee.[31]

Federal Rule of Civil Procedure 59(e) allows a Court to alter or amend a
judgment to correct a manifest error of law.[32]  Federal Rule of Civil Procedure
37(c)(1) requires the Court to exclude evidence, such as expert opinions, which were
not produced during discovery.[33]  Four factors are examined to determine whether an
expert's opinion should have been excluded: (1) the explanation for why the opinion
was not disclosed; (2) the importance of the evidence; (3) the prejudice suffered by
the United States in admitting the evidence; and (4) the availability of a continuance.[34]

Plaintiffs' untimely disclosure of Dr. Bea's opinion about Reach 2 levee
performance in Scenario 3 mandates exclusion of this opinion testimony.  In *Tenbarge*

---

[31] JX 69 ¶ 11(b) at 16.

[32] *E.g.*, *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 247 (5th Cir. 2006).

[33] *See also* Fed. R. Civ. P. 26(a)(2) (requiring expert witnesses to provide a complete statement of all opinions, the data considered by the expert, and any exhibits used to support an expert's opinions); Fed. R. Civ. P. 26(e) (mandating supplementation of expert reports prior to the time of a party's Rule 26(a)(3) disclosures); Fed. R. Civ. P. 26(a)(3) (ordering all disclosures within 30 days of trial).

[34] *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 277 (5th Cir. 2009); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380-82 (5th Cir. 1996).

11

*v. Ames Taping Tool System, Inc.*, the Eighth Circuit ruled that allowing an expert to render a new opinion contradictory to his prior deposition testimony was reversible error.[35]  The court recognized that the defendant's untimely disclosure of the new opinion had prejudiced the plaintiff by depriving him of an adequate opportunity for cross examination.[36]  In ruling that the district court had erroneously admitted the evidence, the Court of Appeals explained that untimely disclosure of expert opinions allows litigation to descend "into a game of evasion."[37]  The Court of Appeals therefore ordered a new trial to remedy the prejudice.[38]

Courts have recognized that exclusion is mandated when a party attempts to introduce an expert opinion at trial that has not been previously disclosed.  The Fourth Circuit, for example, sustained a district court's exclusion of expert testimony that was first disclosed during voir dire.[39]  The court evaluated the district court's exclusion in the light of five "factors: (1) the surprise to the party against whom the

---

[35] 190 F.3d 862, 865 (8th Cir. 1999); *see also Torres v. Los Angeles*, 548 F.3d 1197, 1212-13 (9th Cir. 2008) (reversing district court's refusal to bar testimony of expert witness who had not prepared an expert report, and requiring party challenging sanction to demonstrate harmlessness); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 951-954 (10th Cir. 2002) (reversing district court's failure to strike incomplete expert reports).

[36] *Id.*

[37] *Id.* (citing *Vogeli v. Lewis*, 568 F.2d 89, 97 (8th Cir. 1977)).

[38] *Id.*

[39] *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 594-95 (4th Cir. 2003).

evidence would be offered; (2) the ability of that party to cure the surprise; (3) the

extent to which allowing the evidence would disrupt the trial; (4) the importance of

the evidence; and (5) the nondisclosing party's explanation for its failure to disclose

the evidence."[40]  Upon considering these factors, the Court of Appeals sustained

exclusion as the proper sanction in order to prevent prejudice to the defendant.  The

defendant had been prejudicially deprived of an opportunity to rebut the new opinion

with its own expert analysis, and this prejudice could not have been remedied through

a contemporaneous cross-examination.  Further, the prejudice could not have been

eliminated by a continuance, because trial was ongoing and witnesses were traveling

from distant places.  Finally, the plaintiff could not adduce a sufficient reason for not

having disclosed the opinion at the prescribed time.[41]

---

[40] *Id.* at 597.

[41] *Id.* at 598-99; *accord Miksis v. Howard*, 106 F.3d 754, 759-61 (7th Cir. 1997) (excluding expert opinions disclosed just three days before trial); *see also Romero v. Drummond Co.*, 552 F.3d 1303, 1323-24 (11th Cir. 2008) (excluding testimony of three experts who failed to provide opinions with "sufficient specificity to allow [the defendant] to prepare for rebuttal or cross-examination"); *Primus v. United States*, 389 F.3d 231, 234-36 (1st Cir. 2004) (striking expert witness who was disclosed after both expert deadlines and after the United States filed a motion for summary judgment relying on the plaintiff's expert disclosures); *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004) (excluding expert's testimony which did not include all bases for opinion in accordance with Court's scheduling deadline); *Lohnes v. Level 3 Comm'ns, Inc.*, 272 F.3d 49, 59-61 (1st Cir. 2001) (striking expert identified after opposing party filed for summary judgment); *Lampe Berger USA, Inc. v. Scentier, Inc.*, Civ. A. No. 04-354, 2008 WL 3386716, at *2-4 (M.D. La. Aug. 8, 2008) (barring supplemental expert opinion when all data necessary to render opinion was available prior to initial report); *Thames v. Pensacola*, No. 303/CV/586, 2005 WL 1876175, at *5-6 (N.D. Fla. Aug. 1, 2005) (barring inclusion of expert declaration rendering new opinion produced in response to motion for summary judgment); *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 794-96 (D. Minn. 2000) (excluding supplemental expert report produced too close to trial).

These factors mandate exclusion of Dr. Bea's surprise Scenario 3 opinion. First, Plaintiffs have no satisfactory explanation for not timely disclosing an expert opinion concerning Reach 2 levee performance under Scenario 3 conditions.  The vital importance of such an opinion was the crux of the United States' motion for summary judgment in September of 2008.  But Plaintiffs not only failed to adduce such an opinion, they took the position that basing an opinion of Scenario 3 would be a mistake.  In a sworn statement, Dr. Bea roundly criticized the United States' reliance on Scenario 3, calling it the "wrong set of conditions for [the] 'non-negligent MRGO condition."[42]  He swore that Scenario 3 could not be used to ascertain the impact of MRGO maintenance on the performance of the Reach 2 levee because doing so "would necessarily result in an inaccurate, incomplete, and distorted understanding."[43]  Defendant's surprise to be confronted with just such an opinion by Dr. Bea at trial could not have been greater.

Second, the Dr. Bea's surprise opinion became the keystone of the Plaintiffs' case.  As the United States explained in its motion for partial summary judgment, Plaintiffs could not show the effects of operation and maintenance, separate from design and construction, without expert opinions based on a counter-factual scenario

---

[42] JX 69, Doc. 16063-2, at 16.

[43] *Id.*

14

in which the MRGO was properly maintained.[44]  Prior to trial, Dr. Bea had rendered

no such opinion.  Only when it became apparent that the Court viewed Scenario 3 as

the appropriate counterfactual scenario for evaluating the effects of MRGO

maintenance did Plaintiffs hastily implore Dr. Bea to do what he had previously

denounced.  As Plaintiffs belatedly recognized, they were unable to demonstrate that

negligent maintenance and operation caused the levee breaches without an expert

opinion addressing Reach 2 levee performance in Scenario 3.

Third, the prejudice to the United States is plain.  The United States moved for

a summary judgment before trial based on Plaintiffs' critical failure of proof that

existed until the sudden surprise testimony presented by Dr. Bea after spending a

weekend in the midst of trial conducting further analysis of the data.  Defense

counsel could not conduct an adequate cross-examination extemporaneously, and a

continuance was out of the question given the considerable resources that the Court

and the parties had marshaled for trial.  Numerous experts for both parties had

arranged their schedules to be able to testify, making a continuance a practical

impossibility.

Despite these several factors militating against admission, Dr. Bea's Scenario 3

opinion was admitted at trial over the United States' objections.  The United States

---

[44] Doc. 15317-2 at 9-10 (quoting *Boteler v. Rivera*, 700 So. 2d 913, 916 (La. Ct. App. 1997).

was deprived of a fair opportunity to cross-examine Dr. Bea.  Time did not allow an

adequate opportunity for the United States' experts to scrutinize Dr. Bea's new

opinion and evaluate the soundness of his data and analysis.  The United States had

no opportunity to probe this opinion at a deposition, as the Court's case management

orders contemplated.  And there was no opportunity for the United States' own

experts to respond with their own opinions and analyses.  In short, the United States

was denied every single expert disclosure protection afforded by the Federal Rules of

Civil Procedure.

Finally, a continuance was not available to the United States.  The trial was

beginning its second week, and witnesses were traveling from across the country to

testify.  A significant continuance would have been necessary to ameliorate the

prejudice suffered by the United States.

## CONCLUSION

For the reasons stated herein, the United States respectfully requests that the Court grant its Motion to Amend the Judgment.

Respectfully Submitted,

TONY WEST
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

ROBIN D. SMITH
Senior Trial Counsel, Torts Branch

s/ Paul Levine
Paul Levine
Trial Attorney, Torts Branch,
Civil Division
U.S. Department of Justice
Benjamin Franklin Station,
P.O. Box 888
Washington, D.C.  20044
(202) 616-4400 / (202) 616-5200 (Fax)
Attorney for the United States

Date: December 3, 2009