UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*   05-5531 | * | |
| *Mumford v. Ingram*   05-5724 | * | |
| *Lagarde v. Lafarge*   06-5342 | * | JUDGE |
| *Perry v. Ingram*   06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*   06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | MAGISTRATE |
| *Weber v. Lafarge*   08-4459 | * | JOSEPH C. WILKINSON, JR. |

**LAFARGE NORTH AMERICA INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE, EXCLUDE, AND/OR LIMIT
TESTIMONY, OPINIONS, FINDINGS, AND CONCLUSIONS
OF DANIEL F. RYAN II**

Defendant Lafarge North America Inc. ("LNA") hereby opposes plaintiffs' motion (Doc. 19448) to strike the expert testimony of Daniel F. Ryan II. Even though plaintiffs' motion asks the Court to bar Mr. Ryan from testifying at trial, their brief in fact challenges only *one* of his opinions, that is, his opinion that in tying up ING 4727 prior to Hurricane Katrina, LNA "doubled up" the mooring lines holding the barge consistent with Coast Guard recommendations. Plaintiffs do not even attempt to explain why the Court should strike *all* of Mr. Ryan's opinions. In fact, there is no basis to exclude *any* of his opinions, because Mr. Ryan's testimony that LNA "doubled up" the mooring lines merely rebuts the opinion of plaintiffs' expert Donald Green on the same issue. Further, despite plaintiffs' argument that the trier of fact can determine what the Coast Guard meant by "doubled up," courts routinely admit

expert testimony to explain the meaning of words that are terms of art in a specialized field. The Court should therefore deny plaintiffs' motion.

## BACKGROUND

On July 1, 2009, plaintiffs produced an expert report for Donald Green. One of his opinions was that LNA "failed to adhere to the recommendations of the Coast Guard Sector New Orleans Hurricane plan, particularly Appendix 2 requiring that mooring lines be doubled up and that special attention be given to barges moored in the proximity of bridges." Green Report at 8 (Opinion 5.8) (Exh. 29 to LNA's motion for summary judgment (Doc. 19309)).[1]

In response, LNA produced an expert report from Mr. Ryan, whose qualifications include, among others, 34 years in the Coast Guard (attaining the rank of Captain), including 24 years working in marine safety and security, and almost 3 years as Chief of Marine Safety, Security and Environmental Protection for the Eighth Coast Guard District in New Orleans. *See* Exh. 1 hereto, Ryan Report at 1. In his report, Mr. Ryan provided various opinions, including that:

- Coast Guard recommendations for Port Conditions WHISKEY, X-RAY, and YANKEE were inapplicable to ING 4727 because they apply only to self-propelled oceangoing vessels over 500 GT and oceangoing barges and their support tugs (Exh. 1, Ryan Report at 6 ¶ F, 7 ¶¶ i and j);

- LNA complied with Coast Guard recommendations that during hurricane conditions, only barges and ships that cannot operate under their own power should be moored to wharves (Exh. 1, Ryan Report at 8 ¶ l);

- contrary to Mr. Green's declaration, ING 4727 was not "undocumented" and had a Registration/VIN (Exh. 1, Ryan Report at 8 ¶ a);

- the Greater New Orleans Barge Fleeting Association "Barge Fleeting Standard of Care & Streamlined Program Guide Book" did not apply to the mooring of ING 4727 (Exh. 1, Ryan Report at 9 ¶ c);

---

[1] LNA has moved to strike that opinion as an improper legal conclusion to the extent that plaintiffs claim the Coast Guard recommendations are legal "requirements," as opposed to "recommended measures." Doc. 19446-2 at 3 n.4.

- LNA properly moored ING 4727 "by having three one-part mooring lines, including added and replaced lines of greater strength, and by topping around the ING 4727 in preparation for hurricane Katrina" (Exh. 1, Ryan Report at 11 ¶ l); and

- LNA acted properly in not moving, ballasting, or sinking ING 4727 prior to hurricane Katrina (Exh. 1, Ryan Report at 11 ¶ k).

Mr. Ryan also gave an opinion concerning the Coast Guard's recommendation that during Port Condition ZULU, "[m]ooring lines [be] doubled up with due consideration given to the effects of predicted storm surge" (Exh. 1, Ryan Report at 7-8 ¶ k). Mr. Ryan opined that LNA "doubled up" the mooring lines holding ING 4727 consistent with that recommendation:

> Doubling up lines is a common marine industry term that in general means to double the strength of the mooring connections, as by doubling up the number of lines being used to moor the vessel. Doubling up is usually accomplished by running additional lines, or using the excess length of the original mooring line. The ING 4727 was moored with extra lines of double strength, and with due consideration for the predicted storm surge. Therefore, the ING 4727 was in compliance with the Marine Safety Bulletin for Port Condition ZULU.

*Id.*[2]

Plaintiffs dispute Mr. Ryan's interpretation of "doubled up." At Mr. Ryan's deposition, plaintiffs' counsel berated him for refusing to agree with their position that "doubled up" must mean to use twice the normal number of mooring lines. *See, e.g.*, Exh. 2 hereto, Ryan Dep. at 79:7-84:3. Despite those efforts, Mr. Ryan testified that doubling the number of lines is "not the only way" for lines to be "doubled up"; that doubling up does not mean "two instead of one" or "four instead of two"; that "doubled up" "could be the same line re-led back to a different mooring point"; and that "you can use the same lines" instead of merely doubling the number of lines. *Id.* at 79-81. Mr. Ryan testified that he came to this conclusion based on his "years in the

---

[2] *See also id.* at 10 ¶ g (LNA complied with Coast Guard recommendation by "using more lines than required, with at least double the total strength over the required two mooring lines"; LNA "had the ING 4727 topped around in anticipation of a storm surge"; and the barge "was moored in a protected slip well away from the IHNC channel").

Coast Guard"; that it is a "common practice" to either "doubl[e] the lines or us[e] the same line twice"; and that if, as a port captain, someone approached him "and said that they wanted to increase the strength of the mooring lines and not go with double lines," he would approve that request "because it achieves the same thing." *Id.* at 83:4-84:23; *see also id.* at 85:25-86:8 (LNA complied by "using lines of greater strength and increasing the number of lines").

The instant motion represents plaintiffs' attempt to get the Court, in the context of a motion to strike, to agree with their position that "doubled up" must mean using twice the normal number of lines. As we show below, the Court should permit Mr. Ryan to give his opinion that plaintiffs' argument is wrong.

**ARGUMENT**

**I.   PLAINTIFFS PROVIDE NO GROUNDS FOR EXCLUDING MR. RYAN FROM TESTIFYING AT TRIAL.**

Plaintiffs' motion (Doc. 19448) asks the Court to bar Mr. Ryan from testifying at trial. But plaintiffs' brief complains about only *one* of Mr. Ryan's opinions:  that LNA's method of tying up ING 4727 prior to Hurricane Katrina complied with the Sector New Orleans Maritime Hurricane Contingency Port Plan's recommendation that when the Coast Guard sets Port Condition ZULU,[3] mooring lines on barges should be "doubled up." Doc. 19448-2.  Plaintiffs' brief does not argue that the Court should exclude any of Mr. Ryan's other opinions, including his opinion that, regardless of what the Coast Guard recommendations say, LNA properly tied up ING 4727 prior to Hurricane Katrina (Exh. 1, Ryan Report at 11 ¶ l).  Therefore, plaintiffs' motion is in fact only a *partial* motion to strike, and their requested relief – that the Court bar Mr. Ryan from testifying – should be denied.

---

[3] As Mr. Ryan's report explains (Exh. 1 at 7 ¶ k), the New Orleans Coast Guard District sets Port Condition ZULU "when gale force winds (sustained winds of 39mph) are predicated to arrive at Southwest Pass Entrance Sea Buoy within 12 hours."

4

## II. THE COURT SHOULD PERMIT MR. RYAN TO TESTIFY THAT LNA "DOUBLED UP" THE MOORING LINES ATTACHED TO ING 4727 CONSISTENT WITH COAST GUARD RECOMMENDATIONS.

Plaintiffs challenge Mr. Ryan's opinion that LNA complied with the Coast Guard's recommendation that during Port Condition ZULU,[4] mooring lines on barges should be "doubled up." But plaintiffs' brief does not provide *any* authority to support that argument.

In fact, Mr. Ryan's opinion is admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Under Rule 702, an expert may give opinion testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Under *Daubert*, expert testimony is admissible where it is "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Voth v. State Farm Fire & Cas. Ins. Co.*, No. 07-4393, 2009 WL 411459, at *3 (E.D. La. Feb. 17, 2009) (Duval, J.) (quoting *Daubert*, 509 U.S. at 592).

Here, Mr. Ryan's opinion is admissible for two basic reasons. First, the opinion merely responds to Mr. Green's opinion that LNA did not comply with the Coast Guard's recommendation that mooring lines be "doubled up." *See* LNA SJ Exh. 29, Green Report at 8. Plaintiffs cannot offer Mr. Green to give that opinion and then turn around and seek to bar LNA from offering responsive expert testimony on the same issue.[5]

Second, one basic function of expert testimony is to help the trier of fact to understand the meaning of words that are terms of art in a particular field. *See, e.g.*, *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-81 (5th Cir. 1987) (question arose concerning the meaning of

---

[4] As Mr. Ryan's report explains (Exh. 1 at 7 ¶ k), the New Orleans Coast Guard District sets Port Condition ZULU "when gale force winds (sustained winds of 39 mph) are predicated to arrive at Southwest Pass Entrance Sea Buoy within 12 hours."

[5] *Cf. United States v. Alexander*, 816 F.2d 164, 169 (5th Cir. 1987) (error to exclude experts on photographic comparison of objects to testify that robbery defendant was not the man seen in a picture in order to rebut fact witness testimony that the defendant was in the picture).

5

accounting provisions in oil and gas lease; affirming trial court's decision to permit "the expert testimony of the individuals experienced in the oil and gas accounting field for the purpose of obtaining explanation of the technical meaning of terms" used in the contract); *Jeanes v. Henderson*, 703 F.2d 855, 861 (5th Cir. 1983) (question arose concerning the meaning of "equipment" in a contract; affirming trial court's admission of expert testimony to "the meaning of the term 'equipment' in the oil and gas industry").[6]

That is exactly what Mr. Ryan is doing in giving an opinion on the meaning of "doubled up" in the Coast Guard recommendations. The recommendations do not define "doubled up." Nor do the recommendations say "doubled up by using twice the normal number of lines." In order to determine what "doubled up" means, and therefore whether LNA acted consistent with the recommendations, the Court should admit expert testimony as to what the term means in the marine industry. That is what Rule 702 contemplates when it states that the standard for admissibility of expert testimony is whether "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Here, specialized knowledge will help the trier of fact to understand what "doubled up" means in the marine industry. Mr. Ryan's opinion on that issue is therefore admissible.[7]

---

[6] *See also, e.g.*, *Crisalli v. ARX Holding Corp.*, No. 05-41016, 2006 U.S. App. LEXIS 24373, at *12 (5th Cir. Apr. 20, 2006 (affirming admission of expert testimony to define the term "operation" as used in the insurance industry, because "it is common for a specialized industry or trade term to require extrinsic evidence to shed light on the commonly understood meaning of a term within a particular industry"); *United States v. York*, 572 F.3d 415, 423 (7th Cir. 2009) ("the Rules of Evidence allow expert law enforcement witnesses to translate drug jargon and code words that might seem entirely innocuous to an untrained jury"); *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1350 (8th Cir. 1989) ("[c]ourts have frequently recognized the value of expert testimony defining terms of a technical nature").

[7] Plaintiffs also "argue" (in the form of a rhetorical question) that Mr. Ryan lacks the "scientific, or Coast Guard background" to give this opinion. Pl. Mem. at 4. The Court can easily reject that assertion. Mr. Ryan's qualifications are similar to those of plaintiffs' expert Mr. Green (who also opined on LNA's compliance with the Coast Guard's "doubled up" recommendation), except that Mr. Ryan had a longer tenure with the Coast Guard and attained a higher rank. As noted above, Mr. Ryan spent 34 years in the Coast Guard, attained the rank of Captain, and devoted decades to issues of marine safety and security. He knows what "doubled up" means in the marine industry based on his "years in the Coast Guard." Exh. 2, Ryan Dep. at 83:4-7. His report states that he has "become familiar with and ha[s] applied the U.S. Coast Guard's regulations and recommendations concerning

## CONCLUSION

The Court should deny plaintiffs' motion to strike the testimony of Daniel F. Ryan II.

Dated: December 18, 2009

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

 /s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4240
jaldock@goodwinprocter.com
rwyner@goodwinprocter.com
mraffman@goodwinprocter.com


Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

*Attorneys for Lafarge North America Inc.*

---

maritime procedures and waterways management, including preparations in advance of severe weather." Exh. 1, Ryan Report at 2. He is therefore qualified under Rule 702.

7

8

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 18, 2009.

/s/ John D. Aldock

LIBW/1725640.3