UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
|  | * | |
|  | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
|  | * | |
|  | * | SECTION "K" (2) |
| *Boutte v. LaFarge*        05-5531 | * | |
| *Mumford v. Ingram*     05-5724 | * | |
| *Lagarde v. LaFarge*    06-5342 | * | JUDGE |
| *Perry v. Ingram*           06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. LaFarge*        06-7516 | * | |
| *Parfait Family v. USA* 07-3500 | * | MAG. |
| *LaFarge v. USA*            07-5178 | * | JOSEPH C. WILKINSON, JR. |

## MEMORANDUM IN OPPOSITION TO LAFARGE NORTH AMERICA, INC.'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DON GREEN

MAY IT PLEASE THE COURT:

Defendant's motion to strike sections of the expert report of Maritime Expert,

Commander Don Green (USCG Ret.) should be denied for many reasons:

1. Defendant's motion does not question Cdr. Green's science or methodology under *Daubert,* but is in reality an evidentiary objection which is best left for trial;

2. The facts and legal standards are so intertwined that expert testimony may assist the trier of fact given Defendants strained interpretation of various regulations and standards of care. The objections are best left for trial.

3. By requesting that the court strike entire sections of the expert's report, Defendant's request is too broad and seeks to exclude other clearly admissible testimony.

For the sake of organization, each argument will be presented in turn.

I.  **LAW**

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." See *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir., 2002). In this gate-keeping role, the court's overarching objective is "to ensure that only reliable and relevant expert testimony is presented to the jury." See *Rushing v. Kansas City Southern Ry.*, 185 F.3d 496, 506 (5th Cir., 1999); *Pipitone*, 288 F.3d at 243.

Contrary to Defendant's approach, a motion to exclude is not intended to be an all-purpose vehicle to rid itself of expert testimony that relies on competing versions of the facts and/or arrives at competing conclusions. Such conflict exists in all litigation, and as such, the Advisory Committee Notes to Rule 702 specifically rejects this construction:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

See *Fed. R. Evid. 702* (Notes of Advisory Committee on 2000 amendments); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249 (5th Cir. La. 2002).

Importantly, a court must be mindful that "the rejection of expert testimony is the **exception** rather than the rule" See *Fed. R. Evid. 702* (Notes of Advisory Committee on 2000 amendments). The "court's role as gatekeeper is **not** intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" See *United States v.*

*14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir., 1996) (quoting *Daubert*, 509 U.S. at 596); *Pipitone*, 288 F.3d at 250.

Moreover, the Fifth Circuit has concluded that where, as here, the judge is to sit as the trier of fact, court's overarching objective to pre-screen expert testimony is diminished. *See Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir., 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."). In this context, "the Daubert gatekeeping obligation is less pressing because the gatekeeper and the trier of fact are the same[,]" and as such, "it is preferable to admit 'shaky but admissible evidence and permit vigorous cross-examination, presentation of contrary evidence, and careful weighing of the burden of proof to test' such evidence." *See Maravi v. United States*, 2008 U.S. Dist. LEXIS 54387, at 3-4 (W.D. La. July 11, 2008).

On the other hand, a motion in limine is a request for the court's guidance concerning an evidentiary question; the court may give such guidance by issuing a preliminary ruling regarding admissibility or defer the matter to trial. Judges have broad discretion when ruling on motions in limine. <u>Eymard v. Pan American World Airways</u>, 795 F.2d 1230 (5th Cir. 1986) While there are arguments in support of motions in limine, a strong argument against granting motions in limine is that evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Specifically,

> Because the relevance, weight, and admissibility of evidence depends on developments at trial such as the arguments made and evidence introduced, decisions on the admissibility of evidence made without the benefit of the context of the trial are more likely to be wrong, despite grater time and effort spent on them.[1]

Whether testimony is allowed is considered on a case by case basis on whether the testimony will assist the trier of fact. Courts have allowed so called legal testimony to assist the

---

[1] Federal Practice and Procedure, 2005, Wright and Graham, Section 5037.10, p. 765

trier of fact in the customary meaning and usage of terms. <u>U.S. v. Weitzenhoff</u>, 35 F.3d 1275 (9th Cir. 1993) (Allowed testimony of meaning of technical terms in permit.); <u>Phillips vs. Calhoun</u>, 956 F.2d 949, 952 (10th Cir. 1992) (Expert testimony allowed on the customary meaning and usage of terms in a contract or manual).

Also, courts are open to the admission of expert legal opinions where the subject is the application of some legal standard to a specific factual background. In such a context, the opinions often involve questions of law and fact that overlap to the extent they are virtually indistinguishable. See <u>U.S. v. Van Dyke</u>, C.A. 8th 1994, 14 F.3d 415, 422 (in prosecution for bank fraud, trial court committed reversible error in precluding defense expert from testifying as to meaning of lengthy and detailed banking regulation; <u>U.S. v. Barnette</u>, C.A. 11th 1986, 800 F.2d 1558, 1568 (The trial court did not err in admitting the testimony as to the income-tax-law implication of defendant's activities).

**II.  DEFENDANT'S MOTION SHOULD BE DENIED AS IT IS NOT A DAUBERT MOTION AND IT INVOLVES EVIDENTIARY MATTERS WHICH ARE BEST LEFT FOR OBJECTION AT TRIAL SO THAT COURT CAN DETERMINE QUESTIONS OF FOUNDATION, RELEVANCY, AND POTENTIAL PREJUDICE RESOLVED IN PROPER CONTEXT**

As stated, Defendant cites no objection under <u>Daubert</u> as to the admissibility of testimony of Maritime Expert, Cdr. Don Green, based upon principals of science and/or methodology. Defendants sole objection is based upon a conclusion reached by Cdr. Green based upon the facts which may, or may not become relevant at the trial of this matter. It is suggested that as Defendant has failed to set forth grounds to exclude the testimony of Cdr. Green on any grounds under <u>Daubert</u>, the motion should be denied. The question of whether

Cdr. Green might be asked an objectionable question is best left for the trial as questions of relevance, weight and admissibility will depend on development at trial.[2]

### EXPERT TESTIMONY ON STANDARDS OF CARE AND MARITIME DEFINITIONS WILL ASSIST THE TRIER OF FACT

The Code of Federal Regulations sets forth various mandates of the United States Coast Guard. These mandates provide rules, regulations, standards of care and notice of the foregoing. In particular, Defendants are claiming that they abided by all US Coast Guard regulations and recommendations. Plaintiffs disagree. In particular, expert testimony on standards set forth by the Code of Federal Regulations will assist the trier of fact, as Defendant disputes, among other things, the definition of "Doubled up" lines and the applicability of other regulations/recommendations by claiming that the barge ING 4727 does not fall within the definition of a "vessel." In detail:

### DEFENDANTS ACTIONS HAVE OPENED THE DOOR TO THE NEED FOR EXPERT TESTIMONY ON INTERPRETATION OF UNITED STATES COAST GUARD RECOMMENDATIONS

Defendant's experts, through strained and incredible interpretations, will testify that even though there was notice of a Category 5 hurricane that Lafarge abided by all US Coast Guard Regulations/Recommendations by evacuating the facility leaving the ING 4727 moored with only three single part lines, despite being fully aware that the barge was in close proximity to the Florida Avenue Bridge, Claiborne Avenue Bridge, Corp. of Engineers Locks and floodwalls protecting residence of the City of New Orleans.[3]

---

[2] Federal Practice and Procedure, Supra.
[3] This argument may be moot if the court disallows the testimony of Defense Expert, Daniel Ryan.

The United States Coast Guard Sector New Orleans Hurricane Plan states in pertinent part:

**APPENDIX 2 – RECOMMENDED PRECAUTIONARY MEASURES FOR BARGES**

Applies to barges:

| Moored | Anchored | | |
|---|---|---|---|
| | X | 1. | All available anchors are deployed. |
| X | | 2. | Mooring lines doubled up with due consideration given to the effects of predicted storm surge. Special attention should be paid to barges moored in the proximity of bridges. |
| X | | 3. | Sufficient personnel are available ashore to respond to emergencies. |
| X | X | 4. | All hatches, portholes and other openings are closed and secured. |
| X | | 5. | Fire fighting equipment is available and ready for immediate use. |
| | X | 6. | At least one (1) fire warp is rigged on the bow and another on the stern. In order to expedite the establishment of an emergency tow, a portion of each fire warp should be draped overboard and allowed to hang no more than six (6) feet above the waterline. |
| X | X | 7. | Spare mooring lines and/or wires should be readily available. |

Despite having been moored with only three single part lines, Lafarge argues that its mooring lines were "doubled up", explaining that they substituted two of the three mooring ropes with new rope, thus increasing the total mooring strength. Defendant's expert therefore indicates that Lafarge complied with this Coast Guard recommendation, despite the fact that it is opposite of every text found by the undersigned which explains that doubling up lines means to add extra bites of line or additional lines[4]. For example:

---

[4] Krietemeger, G. Captain (1991) The Coast Guardsman's Manual, Naval Institute Press (Double up: to increase the number of ship-to-pier turns of a mooring line) The mooring lines are normally *doubled up;* a bight of line is passed to the pier or other ship, giving two parts of line each taking an equal strain, instead of only one part. "Double up." – Pass an additional bight on all mooring lines from the ship to the shore so that there are three parts of each mooring line fastened to the pier instead of only one part of each line. (p. 258-259); Cutler, T. (2002) The Blue Jackets Manual, United States Navy; Dodge, D. (1981) Seamanship Fundamentals for the Deck Officer, Naval Institute Press, When the ship is secured, the mooring lines are normally doubled up which means that a bight of line is passed to the pier or another ship, giving three parts of line each taking an equal strain, instead of only one part. Figure 6-4 shows a correctly secured mooring line which has been properly "doubled up." Notice that the strain is equally divided among each part of line. (p. 173); Crenshaw, R. Naval Shiphandling, Naval Institute Press, When the ship is secured, the mooring lines are normally "doubled up," which means that an extra bight of line is passed to the pier or other ship, giving three parts of line instead of only one part. (p. 69); Clissold, P. Dictionary of Old Sea Terms, "Double up. To duplicate mooring ropes."; Knight, A. (1941) Knights Modern Seamanship: (Double up: to double a vessel's securing lines) "Double up and secure" run any additional lines and double all of them, as necessary. (p. 514); Marshall, R. (2006) Rough Weather Seamanship for Sail and Power (the foregoing was not attached but can be supplied if the court requires)



Figure 19.7. Correct method of doubling up.

Also, the Sector New Orleans plan required that a waterfront facility notify the Commander of the Port if a vessel was to remain moored at a facility. It stated in pertinent part:

> II. **PORT CONDITION X-RAY**
> **(48 HOURS BEFORE ANTICIPATED LANDFALL)**
>
> **DATE/INITIALS**　　　　　　　　　**TASK REQUIREMENT**
>
> (a) Determine the special needs and intentions of vessels moored at the facility.
>
> (b) Determine whether vessels desiring to remain moored to the facility during the hurricane will be allowed to do so. Notify the vessel master, vessel agent, and the COTP of the facility's decision.
>
> NOTE: The COTP may direct the vessel or facility to take certain precautions to correct conditions that threaten the port or the environment, one of which may be to direct the vessels to proceed to sea or anchor.
>
> (c) Set a time for the voluntary suspension of cargo handling operations. In doing so, ensure that vessels have ample time to hire and schedule labor, arrange pilots, contract tugs/towboats, and safely complete the transit to sea or a hurricane anchorage prior to the setting of Port Condition ZULU. Notify the COTP of the time established.

Lafarge's experts provide opinion that this section of the Sector New Orleans Hurricane Plan referring to "vessels" does not include barges. This, again, strains credibility as virtually every definition in the maritime area defines a vessel as "Every description of water craft…" or "All floating craft."[5] which clearly include barges.

The above is just an example of Defendant's strained interpretations of maritime standards of care which open the door to the need for expert testimony to assist the trier of fact this determinations.

---

[5] 33 CFR 95.010, 33 CFR 160.3 (Ports and Waterway Safety), USCG website definition, Inland Rules/Rule 3, Coast Pilot 5.

### III. DEFENDANT SURREPITIOUSLY SEEKS TO EXCLUDE CLEARLY ADMISSIBLE TESTIMONY

Under the guise of seeking to preclude Plaintiff's expert from giving "legal opinion" or testimony which does not require an expert, Defendant improperly seeks to strike entire sections of Cdr. Green's report, which contain other admissible opinions and explanations.

Defendant's motion should be denied on additional grounds that it seeks to strike entire sections of Cdr. Don Green's report, even though sections which contain admissible opinion and explanation. While citing the Honorable Tucker Melancon in *Butler v. Ensco Offshore,* No. 07-1700, 2009 WL 859290 (W.D. La.) for the proposition supporting an order precluding testimony of "legal conclusions", Defendant does not seek such an order from this court but rather **an order striking entire sections** of expert, Cdr. Green's report, particularly Sections 5.3, 5.6, 5.7 and 5.8 and 5.13.

A plain reading of sections 5.3, 5.6, 5.7, 5.8 and 5.13 clearly contain admissible opinion and explanation, as well as arguable inadmissible opinion depending upon its use at trial. Again, the matter is best left for trial.

### IV. CONCLUSION

In conclusion, Defendants motion should be denied as it is not a motion to exclude testimony of Plaintiff's expert Cdr. Don Green on grounds of *Daubert* as it fails to question any science or methodology utilized by Cdr. Green. Questions of admissibility of evidence, or best deferred to trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Secondly, the motion should be denied as Defendant's own experts present strained interpretation as expert testimony, of various regulations and recommendations. Lastly, the motion should be denied as Defendants request is overly broad and misleading and

would be overly prejudicial as the request to strike entire sections of the report contain other admissible opinions.

                                            Respectfully Submitted,

Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
e-mail: lawrence@wiedemannlaw.com,
karl@wiedemannlaw.com,

Shawn Khorrami (CA SBN #14011)
Matt C. Bailey (CA SBN #218685)
Dylan Pollard (CA SBN #180306)
Khorrami, Pollard & Abir, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimilie: (213) 596-6010
e-mail: Skhorrami@kpalawyers.com;
Mbailey@kpalawyers.com

Brian A. Gilbert (21297)
BEST KOEPPEL TRAYLOR
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 885-7700
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
e-mail: bgilbert@briangilbertlaw.com

Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C. 20036-4129
Voice: 202-862-4320
Cell:   202-549-1454
Facsimile: 800-805-1065 and 202-828-4130
e-mail: rick@rickseymourlaw.net,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
Patrick J. Sanders, LLC
3123 Ridgelake Drive
Suite B
Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com

**CERTIFICATE OF SERVICE**

I CERTIFY that a copy of the above and foregoing has been forwarded to all counsel of record by depositing the same in the U.S. Mail, postage prepaid, and/or via ECF upload, this 18th day of December, 2009.

/S/ Patrick J. Sanders