# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * * | CIVIL ACTION NO. 05-4182 and consolidated cases |
| PERTAINS TO: BARGE | * * | SECTION "K" (2) |
| *Boutte v. Lafarge*  05-5531 | * | |
| *Mumford v. Ingram*  05-5724 | * | |
| *Lagarde v. Lafarge*  06-5342 | * | JUDGE |
| *Perry v. Ingram*  06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*  06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAGISTRATE |
| *Weber v. Lafarge*  08-4459 | * | JOSEPH C. WILKINSON, JR. |

### LAFARGE NORTH AMERICA INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF LNA'S EXPERT D. PHILLIP SKAER, II

D. Phillip Skaer, II is Lafarge North America Inc.'s (LNA) rope expert. Mr. Skaer has been involved in the rope industry for 45 years.[1] He served for 12 years as the President of Wall Industries, the nation's oldest manufacturer of twisted and braided ropes.[2] He is a past president and current member of the Technical Committee of the Cordage Institute, which is the North America Rope Manufacturers Trade Association.[3] For the past 10 years he has directed his business experience to the investigation of rope failures and/or accidents as President of Ropetech, Inc.[4] Mr. Skaer has testified at trial as an expert on rope failures and has never been denied

---

[1] *See* Mr. Skaer's June 12, 2009 expert report ("Skaer Report"), which is attached as Exhibit 1.
[2] *See* Mr. Skaer's CV ("Skaer CV"), which is attached as Exhibit 2.
[3] Exh. 2, Skaer CV at 2; *see also* July 15, 2009 Deposition of D. Phillip Skaer, II ("Skaer Dep."), which is attached as Exhibit 3 at 45.
[4] Exh. 2, Skaer CV at 1.

qualifications as an expert on rope issues.[5]  Plaintiffs do not challenge Mr. Skaer's qualifications as an expert on ropes.  Instead they focus their challenge primarily on his supposed inability to "identify which three ropes of the 10-20 he reviewed were used to moor the ING 4727" (Doc. 19449-3, Pl. Mem. at 1; *see also id.* at 2, 4, 7), despite his having explained at his deposition how he identified those very ropes from among the ones inspected.  *See* Section B below.

Mr. Skaer's expert opinions are that (1) synthetic poly rope (rather than wire rope) was the correct type of rope for securing ING 4727 in anticipation of Hurricane Katrina, (2) LNA tripled the total strength of the pre-storm mooring arrangement by replacing it with two 6 inch circumference ropes plus the existing 4½ inch circumference rope immediately prior to Hurricane Katrina's approach, (3) the use of wire rope to secure the barge was impractical in this case and not appropriate or effective, and (4) based on the melted and fused condition of the mooring rope remnants caused by the tension and strain exerted on them by the hurricane force conditions, even if LNA had added more ropes to moor the barge, those ropes would have likely parted as well.[6]

Plaintiffs seek to exclude Mr. Skaer's opinions on the basis that there is "no evidence" identifying the ropes actually used to moor the barge during Hurricane Katrina. They also argue that Mr. Skaer's opinions are speculative.  Plaintiffs are wrong on both counts.  Mr. Skaer's opinions rely on proper facts and assumptions and his testimony is admissible under Federal Rules of Evidence 702 and 703 and this Court should deny plaintiffs' motion.

## LEGAL ARGUMENT

### A.  Standards for admissibility of expert testimony.

If expert testimony is sufficiently reliable and relevant, it is presumptively admissible unless excluded on some other ground.  *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078

---

[5] Exh. 3, Skaer Dep. at 15.
[6] Exh. 1, Skaer Report at 2-3.

(5th Cir. 1996), *citing Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S.Ct. 2786, 2791 (1993).  Under Rule 702, evidence is admissible if it is based on sufficient facts or data, is the product of reliable principles and methods, and results from reliable application of those principles and methods to the facts of the case.

Facts do not have to be agreed or uncontested to form the basis of an expert opinion. Indeed the same facts may be interpreted differently by different experts, or experts may rely on different facts.  Regardless, an expert has "sufficient facts or data" to support his opinions under Rule 702 even if the facts are disputed or if the Court believes one version of the facts over another.[7]  Even where experts rely on conflicting sets of facts, it is not the role of the Court to evaluate the correctness of facts underlying one expert's testimony.  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002); *Legier & Materne v. Great Plains Software, Inc.*, No. 03-0278, 2005 WL 2037346, at *4 (E.D. La. Aug. 3, 2005) (Duval, J.) (refusing to disqualify expert based on acceptance of one version of facts).

The facts or data upon which an expert bases an opinion may be those perceived by the expert or made known to the expert at or before trial.  *See* Fed. R. Evid. 703.  An expert may even rely on inadmissible evidence in support of his opinions; so long as that information is of "a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  Fed. R. Evid. 703; *Johnson v. Big Lot Stores, Inc.*, No. 04-3201, 2008 U.S. Dist. LEXIS 35316, at *16 (E.D. La. April 29, 2008).  Mr. Skaer's expert opinions in this case easily satisfy the Rule 702 and 703 standards for admissibility.

### B. Mr. Skaer's opinions relate to the types of ropes used to secure ING 4727 during Hurricane Katrina.

Mr. Skaer did not rely on cursory assumptions regarding the identification of the ropes.  He

---

[7] *See* Fed. R. Evid. 702(1) advisory committee's notes.

3

personally inspected the ropes salvaged after the hurricane that were tied to, and/or found about, barges ING 4727 and 4745.[8] He also reviewed photographs of the parted ropes, including photographs of ropes still tied to the mooring kevels on the barge.[9] These are the same ropes and photos inspected by plaintiffs' counsel and their experts. Based on the photographs, Mr. Skaer was able to match the remnants of broken ropes at the storage facility to each other, and to their locations on the barges.[10]

Mr. Skaer also reviewed Shipyard Supply, Inc.'s invoices[11] to LNA dated shortly before Katrina concerning the ropes used.[12] He then contacted Shipyard Supply and obtained the identity of the rope manufacturer (Garware Wall). He contacted Garware Wall to obtain information on the ropes supplied to Shipyard Supply and discovered that Garware Wall sold only Garfil types of rope to Shipyard Supply.[13]

The ropes that Mr. Skaer inspected at the storage facility contained a tape in the center of the rope that identified the ropes as Garfil, which matched the information he obtained from Garware Wall. Thus, the physical evidence, including the location of the ropes on the barges and at the terminal, the type and size of the rope, the matching of the rope remnants, and the correlation of the remnants to the rope sold to LNA, all provide a sufficiently reliable basis for Mr. Skaer's identification of the actual ropes used to moor ING 4727 during Katrina.[14]

Plaintiffs nonetheless argue (at 4-5, 7, 9) that there is insufficient "admissible" evidence that the ropes that Mr. Skaer opines upon were the ropes that were used to secure the barge. Plaintiffs are again wrong. LNA provided to plaintiffs copies of the photographs and listed these

---

[8] *See* Exh. 3, Skaer Dep. at 16-17.
[9] *See* Exhibit 4 hereto.
[10] *See* Exh. 3, Skaer Dep. at 23-25, 29.
[11] *See* Exhibit 5 hereto, Shipyard Supply, Inc. invoices.
[12] LNA purchased the mooring ropes from Shipyard Supply, Inc. *See* Exhibit 6, Deposition of Edward Busch at 67-68.
[13] *See* Exh. 3, Skaer Dep. at 88-89.
[14] *See* Exh. 3, Skaer Dep. at 89, 103.

4

photographs on its Exhibit List.[15] LNA has also listed various witnesses who will authenticate these photographs at trial, if plaintiffs actually contest their admissibility.[16] Moreover, plaintiffs' counsel and their experts inspected the ropes, and have issued reports that do not question the types of ropes used, the origin of the ropes or where they were found. Plaintiffs' experts do not contest or question the facts upon which Mr. Skaer relies.

In any event, Mr. Skaer's testimony relating to the ropes need not be based on admissible evidence so long as his testimony is based on the type of information reasonably relied upon by experts in the rope field. *See* Fed. R. Evid. 703. Rules 702 and 703 also allow the expert to base his opinions or inferences on facts or data made known to him. For instance, Mr. Skaer testified that the broken ropes he inspected were subject to extreme forces that caused them to melt and fuse.[17] It is appropriate for Mr. Skaer to conclude that the ropes he inspected were the ones used to secure the barge during Katrina based on the extreme forces exerted on those ropes.

After identifying types of ropes used, Mr. Skaer explained that he obtained information on the original tensile strength of the Garfil ropes from Garware Wall.[18] He determined the tensile strength of the two 6 inch ropes that LNA added, and the total tensile strength of all three ropes actually used to secure the barge during the storm. Mr. Skaer then properly concluded that LNA tripled the total strength of the mooring arrangement in anticipation of the storm.[19]

Finally, plaintiffs contend that Mr. Skaer's identification of the ropes is based solely on what LNA's counsel told him.[20] Even if that were correct (it is not), an expert may render his

---

[15] *See* LNA's Final Exhibit List, which is attached as Exhibit 7, Nos. 47-48.
[16] *See* LNA's Final Witness List, which is attached as Exhibit 8, Nos. 40-41.
[17] *See* Exh. 3, Skaer Dep. at 107-109.
[18] *See* Exh. 1, Skaer Report at 1; Exh. 3, Skaer Dep. at 19-20.
[19] Exh. 1, Skaer Report at 1-2.
[20] Even if Mr. Skaer had not inspected the actual ropes used to moor ING 4727 during Katrina, his opinion that LNA tripled the total strength of the ropes used to secure the barge in advance of the storm is admissible expert testimony. Mr. Skaer had information on the types of ropes from the Shipyard Supply invoices and information he obtained from Garware Wall.

5

opinions based on information supplied by counsel. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989) (the fact that plaintiff's expert relied upon information supplied by plaintiffs' counsel in reaching his opinions did not affect admissibility of those opinions); *see also Rice v. Gordon Trucking*, No. 3:08cv42, 2009 U.S. Dist. LEXIS 66716, *5 (N.D. Miss. July 16, 2009) (an expert may base his opinions on information obtained by others); *United States v. Avants,* 367 F.3d 433, 447 (5th Cir. 2004) (Rule 703 does not require a personal examination of the object of the expert's testimony).

Plaintiffs' challenge to the admissibility of Mr. Skaer's opinions concerning the strength of the rope mooring systems fails.

### C. Mr. Skaer's testimony that if LNA had use of additional ropes to moor the barge those ropes would have also failed during the storm is proper expert testimony.

Plaintiffs next argue (at 7-9) that Mr. Skaer should not be allowed to offer his opinion that even if additional ropes had been used to secure the barge, those ropes would also have broken during Katrina. They argue that Mr. Skaer has no knowledge on mooring techniques or weather conditions during the storm. Plaintiffs misunderstand the scope of Mr. Skaer's testimony. LNA has not offered Mr. Skaer as an expert on mooring or the weather. He is offered solely as an expert on ropes, and has offered opinions in that area.

Mr. Skaer explained that his opinion is based on "the way they [the ropes] broke and how they melted and fused. It was the worst situation on a piece of rope I've ever seen. And … from that, and having looked at hundreds of ropes in my life. I decided that probably nothing could have saved it at that point."[21] From his inspection of the ropes he concluded that any other number of ropes exposed to the same conditions would have failed. He is qualified, as a rope expert, to give that opinion.

---

[21] *See* Exh. 3, Skaer Dep. at 109.

6

Mr. Skaer's opinion is based on his expertise in ropes, which plaintiffs do not contest. Essentially, plaintiffs are challenging Mr. Skaer's conclusion – not his expertise or the methodology or data used to give it.  This is the proper subject of cross-examination at trial, not exclusion under Rules 702 or 703.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion to exclude Mr. Skaer's opinions.

Respectfully submitted,

**CHAFFE McCALL, L.L.P.**

DEREK A. WALKER (#13175)
ROBERT B. FISHER, JR. (#5587)
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2300
Telephone: (504) 585-7000
walker@chaffe.com

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

  /s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC 20001
Tel.: (202) 346-4240

*Attorneys for Lafarge North America Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 18, 2009.

                                                /s/ John D. Aldock