**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA**

_____

| | | |
|---|---|---|
| | § | |
| In Re:      KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| PERTAINS TO:  MRGO, | § | |
| *Robinson* (06-2268) | § | |
| | § | |

_____


**DEFENDANT UNITED STATES' REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION TO ALTER
THE JUDGMENT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Plaintiffs' response argues that Robert Bea's belated opinion was merely a "recapitulation" of the data, analyses, and modeling results developed in his prior reports.  Plaintiffs also argue that the Court's ruling is supported by the testimony of Johannes Vrijling and Paul Kemp and the Court's the findings regarding the timing of the peak surge, the deleterious effects caused by the widening of the MRGO, and the rejection of the United States' causation theory.

Plaintiffs' response, however, ignores the critical issue posed by the United States' motion: whether Plaintiffs presented admissible evidence demonstrating that the Reach 2 levee would have survived in Scenario 3.  The only evidence Plaintiffs

1

presented to meet this burden was Dr. Bea's Scenario 3 surprise opinion, which was anything but a recapitulation. Dr. Bea's new opinion contradicted his previous declaration opining that Scenario 3 was an improper method of analyzing the effects of the MRGO. Dr. Bea conducted new computations to render this opinion, and Plaintiffs' belated disclosure of this opinion deprived the United States of an opportunity to conduct expert discovery.

Plaintiffs' remaining arguments do not address whether the Reach 2 levee would have survived in Scenario 3. Neither Dr. Kemp nor Professor Vrijling opined whether the Reach 2 levee would have breached in any scenario. The other findings cited by Plaintiffs detail why the levee breached in Scenario 1, but these findings do not independently support a conclusion that the Reach 2 levee would not have failed in Scenario 3.[1] Plaintiffs still needed to present expert testimony from Dr. Bea opining that, for example, the Reach 2 levee would have survived in Scenario 3 without the deleterious effects caused by the widening of the MRGO.

Plaintiffs had ample time to disclose such an expert opinion before trial but they and Dr. Bea chose to attack the United States' reliance on Scenario 3. Dr. Bea's new opinion was developed only after it became abundantly clear to Plaintiffs that an expert Scenario 3 breaching analysis was an indispensable part of their case. Plaintiffs

---

[1] The United States respectfully disagrees with these findings but does not challenge these findings for purposes of this motion.

should not be rewarded for ignoring such a critical issue for months and then conducting a "trial by ambush."[2]  Therefore, the Court should grant the United States' motion, strike Dr. Bea's surprise opinion testimony, and alter its judgment to award judgment in favor of the United States.

## ARGUMENT

Plaintiffs raise five arguments in response to the United States' motion: (1) Dr. Bea's new Scenario 3 opinion was not a surprise to the United States; (2) Dr. Kemp's and Professor Vrijling's opinions also support Plaintiffs' causation theory; (3) the timing of the peak surge was the Court's primary basis for accepting Plaintiffs' causation theory; (4) the widening of the MRGO caused increased lateral displacement and wave fetch; and (5) the Court rejected the United States' expert testimony and causation theory.  These arguments largely address issues unrelated to whether the Reach 2 levee would have breached in Scenario 3.  Instead, Plaintiffs' arguments conveniently ignore the undisputed fact raised in the United States' motion – prior to trial, Dr. Bea never disclosed a written opinion analyzing whether the Reach 2 levee would have survived in Scenario 3.

---

[2] *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978).

Plaintiffs' contention that "Dr. Bea's Opinion Was Hardly a Surprise" is almost as surprising as Dr. Bea's new opinion.[3]  Plaintiffs knew their lack of a Scenario 3 breaching analysis was an important causative issue when the United States filed its summary judgment motion six months before trial.[4]  Plaintiffs could have responded with a new opinion by Dr. Bea addressing this deficiency but chose to criticize the United States' reliance on Scenario 3.  Dr. Bea even called Scenario 3 "the wrong set of conditions for their non-negligence MRGO condition."[5]  At trial, Dr. Bea decided to contradict his sworn declaration and provide an undisclosed opinion about the supposed "wrong set of conditions."  This new opinion could not be called anything but a surprise.

Plaintiffs argue that Dr. Bea's Scenario 3 opinion was substantially similar to his Scenario 2c opinion and that Dr. Bea did not perform any new computer modeling.  Yet Plaintiffs concede, in the very next sentence of their brief, that Dr. Bea needed to conduct new computations over the weekend to render this opinion.[6]  Plaintiffs also state that the United States' failure to cross examine Dr. Bea

---

[3] Doc. 19479 (Pls.' Resp.) at 13.

[4] Doc.  15317 (United States' Motion for Partial Summary Judgment).

[5] JX 69, Doc. 16063-2 (Bea Oct. 7, 2008 Decl.) ¶ 11 at 16.

[6] *Id.* at 14 ("Dr. Bea testified without contradiction that his opinion about Scenario 3 was not based on any new computer run or research.  Using 'the input provided by [Professor] Vrijling,' Dr. Bea merely took time over the weekend to do the computations that had been requested by the Court.") (citation omitted).

demonstrates the lack of prejudice caused by the new opinion.  If anything, the United States' supposed failure only proves the extreme prejudice caused by Dr. Bea's new opinion.  As discussed in its opening brief, the United States was denied the opportunity to:  (1) probe Dr. Bea's new opinion at a deposition; (2) review Dr. Bea's new opinion and analyses; and (3) respond with its own expert reports.[7]  Under these circumstances, the United States was deprived of the opportunity to conduct a meaningful cross examination of Dr. Bea concerning such an important issue.

In addition, Dr. Kemp and Professor Vrijling failed to opine whether the Reach 2 levees would have breached in Scenario 3.  Dr. Kemp testified that he relied upon Dr. Bea's analysis to determine whether the Reach 2 levee would breach.[8]  Professor Vrijling testified that he did not conduct any breaching analyses and relied upon Dr. Bea's conclusions.[9]  In fact, Dr. Bea distanced himself from Professor Vrijling's work.  Dr. Bea testified Professor Vrijling's studies were incomplete because they failed to include foreshore vegetation.[10]

---

[7] Doc. 19457-2 at 15-16 ("In short, the United States was denied every single expert disclosure protection afforded by the Federal Rules of Civil Procedure.").

[8] Trial Tr. (Kemp) at 1933:15-20.

[9] Trial Tr. (Vrijling) 826:15-23, 835:12-836:5, 837:23-838:15, 1030:17-1031:16, 1048:14-25; 1060:5-14, 1061:16-1062:3; *see also* Trial Tr. (Vrijling) 1077:11-27 (Plaintiffs' concession that Dr. Vrijling did not conduct his own breaching analysis).

[10] Trial Tr. (Bea) 1174:5-23, 1203:21-1206:5.

The timing of the peak surge also fails to address whether the Reach 2 levee would have breached in Scenario 3.  The Court determined that Plaintiffs' causation theory was correct because Plaintiffs' modeling had the peak surge arrive at the Reach 2 levee at 8:30 a.m. and the flooding arrive at the 40 Arpent levee at approximately the same time.  The Court also found that it would take two hours for the flooding to inundate the Central Wetlands Unit and, accordingly, breaching must have occurred through front-side wave attack prior to overtopping. [11]

These findings relate only the timing of the Scenario 1 peak surge and flooding to the front-side wave attack breaching mechanism.  These findings alone, however, cannot explain whether the Reach 2 levee would have breached in Scenario 3.  For example, an analysis based solely on the timing of the peak surge tends to suggest that front-side wave attack could have caused the Reach 2 levee to fail in Scenarios 1, 2c, and 3 because the peak surge occurred along Reach 2 at approximately 8:30 a.m. in all three scenarios.[12]  Therefore, Plaintiffs still needed to present other evidence demonstrating that the Reach 2 levee would have survived in Scenario 3 to sustain their burden of proof, and Dr. Bea was the only expert who could have bridged this gap in proof for Plaintiffs.

---

[11] Doc. 19415 at 66-68.

[12]  Trial Tr. (Kemp) at 1942:23-1947:12; JX 204, PX 91 (Kemp July 11, 2008 Expert Rep.) at 117-118, 127.

The widening of the MRGO likewise fails to answer whether the Reach 2 levee would have survived in Scenario 3. The Court found that the widening of the MRGO caused: (1) the Reach 2 levee to laterally displace and lose elevation; and (2) an increased wave fetch so that waves could regenerate across a longer distance.[13] These findings demonstrate how the Reach 2 levee breached in Scenario 1 but, once again, do not prove whether the levee would have survived in Scenario 3. Dr. Bea could have rendered an opinion before trial analyzing the effects lateral displacement and increased wave fetch had on the Reach 2 levee in Scenario 3. Dr. Bea chose not to do so and, instead, limited his opinions to Scenario 2c.[14]

Finally, the Court's rejection of the United States' causation theory and corresponding expert testimony does not satisfy Plaintiffs' burden of demonstrating the Reach 2 levee would have survived in Scenario 3.[15] Plaintiffs vastly overstate the import of these findings. The Court's findings did not absolve Plaintiffs of their burden of proof, and Plaintiffs were still require to present evidence that the Reach 2 levee would not have breached in Scenario 3.[16]

---

[13] *E.g.*, Doc. 19415 at 88-89.

[14] JX 69, Doc. 16063-2 (Bea Oct. 7, 2008 Decl.) at 16-17.

[15] Doc. 19415 at 68-88.

[16] *E.g.*, *Matthieu v. Imperial Toy Corp.*, 646 So. 2d 318, 322 (La. 1994)

The only evidence Plaintiffs presented to show the Reach 2 levee would have survived in Scenario 3 was Dr. Bea's belated opinion.  Prior to trial, Plaintiffs consistently argued that the Court should not rely upon Scenario 3 to determine causation.  As best stated by Dr. Bea:

> [T]he erroneous reference to Scenario 3 Conditions and the lack of breaching and flooding analyses of those conditions is misplaced because such reference would necessarily result in an inaccurate, incomplete, and distorted understanding of how the defects and deficiencies introduced during the life-cycle of the MRGO negatively impacted the performance of the adjacent hurricane flood protection and navigation structures during Hurricane Katrina.  In short, the Defendant is knocking down a "straw man" in using Scenario 3 as its self-appointed "no negligence" set of conditions.[17]

Plaintiffs and Dr. Bea computed a new analysis during the middle of trial only when it became manifestly apparent to them that they needed to use Scenario 3 to demonstrate the operation and maintenance effects of the MRGO.  Plaintiffs offered no explanation for this extremely late disclosure, and the United States suffered extreme prejudice which could not have been remedied, as Plaintiffs remarkably suggest, by a more extensive cross examination of Dr. Bea.  The Court should not allow Plaintiffs to conduct a "trial by ambush" and eviscerate the expert disclosure protections provided by the Federal Rules of Civil Procedure.

---

[17] JX 69, Doc. 16063-2 at 16.

## CONCLUSION

For the reasons stated herein, the United States respectfully requests that the Court grant its Motion to Amend the Judgment.

Respectfully Submitted,

TONY WEST
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

ROBIN D. SMITH
Senior Trial Counsel, Torts Branch

s/ Paul Levine
Paul Levine
Trial Attorney, Torts Branch,
Civil Division
U.S. Department of Justice
Benjamin Franklin Station,
P.O. Box 888
Washington, D.C.  20044
(202) 616-4400 / (202) 616-5200 (Fax)
Attorney for the United States

Date: December 23, 2009

9