UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES                                    CIVIL ACTION
CONSOLIDATED LITIGATION
                                                                NO. 05-4182

PERTAINS TO: *Robinson v. United States*                        SECTION "K"(2)
C.A. No. 06-2268

# ORDER AND REASONS

Before the Court is Defendant United States' Motion to Amend the Judgment or, in the Alternative, For a New Trial (Doc. 19457) brought pursuant to Fed. R. Civ. Pro. 59(e). The primary thrust of the motion concerns the Court's allowing testimony by Dr. Robert G. Bea with respect to whether the Reach 2 levee would not have been breached during Hurricane Katrina if the MRGO had been in its idealized "Scenario 3" footprint–that is maintained as designed. Having reviewed the testimony, exhibits and the relevant law, the Court finds no merit in the motion.

**Standard of Review**

As previously noted by this Court, there are:

> four grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, or (4) an intervening change in controlling law. *Peterson v. CIGNA Group Ins.,* 2002 WL 1268404, at *2. The Court has further recognized that "[r]econsideration of a judgment is an extraordinary remedy which courts should use sparingly," and the Fifth Circuit has instructed that the standard for Rule 59(e) "favors denial of motions to alter or amend a judgment." *Id.* (quoting *Southern Contractors Group, Inc., v. Dynalectric Company,* 2 F.3d 606, 611 (5th Cir.1993); *Fields v. Pool Offshore, Inc.,* 1998 WL 43217 (E.D.La.1998); *Bardwell v. Sharp,* 1995 WL 517120, at 1

(E.D.La.1995); *see also* Wright, Miller & Kane, *Federal Practice & Procedure* § 2810.1, at 124.

*Toga Society, Inc. v. Lee,* 2005 WL 3541118, 1 (E.D.La. October 13, 2005). In this instance, the only ground which might arguably be applicable is to correct a manifest error of procedure–that is letting in testimony that the Government maintains was not in Dr. Bea's reports. None of the other grounds is applicable.

The United States maintains that error occurred because the contested opinion testimony had not been timely disclosed under Fed. R. Civ. Pro. 26(a) or the Court's case management orders. Indeed, it argues that the prejudicial testimony was based on calculations performed during the trial. In *Genomoora Corporation v. Moore Business Forms, Inc.*, 939 F.2d 1149 (5th Cir. 1991), the United States Court of Appeals for the Fifth Circuit noted:

> A new trial may be ordered when the testimony of an expert witness, who has not bee identified prior to trial, results in prejudicial surprise "inconsistent with substantial justice." *Conway v. Chemical Leaman Tank Lines, Inc.* , 687 F.2d 108, 111-12 (5th Cir. 1982). We have "limited reversible error from unfair surprise," however "to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify." *Id*. at 112.

*Genmoora Corp.*, 939 F.2d at 1156. In this case, there was no "completely new issue raised" and certainly Dr. Bea was an identified witness that was scheduled to testify.

**Analysis**

This Court in conducting the 19-day trial of this complex matter concerning whether the Corps' failure to operate and maintain the MRGO properly caused the inundation of St. Bernard Parish, the lower Ninth Ward and New Orleans East at the time of Hurricane Katrina heard from a plethora of experts from both plaintiffs and defendant. The Court also had the benefit of some

lay testimony and thousands of graphic and photographic exhibits which were highly informative and compelling. Dr. Bea, the expert at issue in this motion, filed several expert reports consisting of many thousands of pages including illustrations in addition to many more thousands of pages of reliance materials. Dr. Bea's testimony was very encompassing and principally was directed to the mechanisms that caused the flooding of plaintiffs' homes. Like many of the other principal experts, he relied on information provided to him by other experts on plaintiffs' team. The general subject of his testimony, that is whether the MRGO destroyed the Reach 2 levee, is certainly no surprise.

The specific objection was to one entry in a summary exhibit–specifically Plaintiffs' Exhibit No. 2153. During the trial, counsel for the Government took issue with the "last entry" of the summary as follows:

> Your honor, I would like to raise a point about this summary that counsel is about to speak about. He'll provide you the summary, but in the last line seems to have a study done by Dr. Bea, the purpose of which was to determine wave characteristics with MRGO design dimensions as they originally were.
> And I have not receive any data from this study and this seems to be a complete new analysis done during the litigation at the trial. So it's objectionable in and of itself. The rest of the summary is reasonably acceptable, but that last line there is adding something that is brand new in this litigation as afar as I know.

(Trial Transcript at 1250). It appears to the Court that the entry about which counsel objected was actually the second to last row designated as "Alternate Parametric Studies 'Scenario 3' (Dr. Bea)." Dr. Bea testified that he had performed this analysis over the weekend as to this row of information as a result of questions asked by the Court in reference to Scenario 3 using data which was in his reports and was available to defendant. *See* Trial Transcript at 1167-1168.

To begin, at the time the objected to testimony was elicited, the Government had a number of experts at trial to assist them in a response. At no time did the Government request or seek a continuance in order to prepare any type of rebuttal testimony or to prepare for cross-examination. Furthermore, this "surprise" occurred on day six of a nineteen day trial giving the Government ample time to address the issue. The phalanx of lawyers and experts present at trial were more than adequate to allow the Government to rectify any alleged surprise; however, it never requested any such relief.

The specific subject matter involved in the contested testimony concerned wave regeneration. That subject is replete throughout the expert reports and the testimony of various experts. Dr. Bea was simply examining the wave regeneration in Scenario 3 as a result of questions posed earlier by the Court. Therefore, the subject matter of wave regeneration increased by the widened and deteriorated MRGO was in no way "new information." *See, e.g.,* Trial Transcript 946- 950. The testimony of Dr. Bea is simply a permutation of that subject and the previous analyses of wave regeneration that had been performed by other experts, including Dr. Bea. Furthermore, the testimony at issue was but five to ten minutes in three days of examination, cross-examination and re-direct testimony.

More significantly, the Court had an abundance of other evidence to arrive at its conclusion and can say beyond cavil that plaintiffs proved by a preponderance of evidence that the failure of the Corps to operate and maintain the MRGO properly caused the destruction of plaintiffs' homes who prevailed in these proceedings. Common sense is not yet dead in the judiciary. The Court observed through the many exhibits introduced by plaintiffs the continuing deterioration of the wetlands, the continuing loss of berm on the west side of the MRGO, the

resulting lateral displacement causing the lowering of the levees and the vast erosion of the bank of the east side of the MRGO. There is no dispute that the wider the fetch of a body of water, the larger the waves. Likewise, the larger the waves, the more destructive they are. This fact was specifically and convincingly discussed by Prof. Vrijling and Dr. Kemp.

During this trial, there were numerous objections by both sides that testimony was beyond the scope of the expert reports. The Court, in an attempt to be even handed but at the same time practical because of the breadth and scope of these reports, established a protocol that if an opinion was within the penumbra of the report, the testimony would be allowed. The Court believes that indeed Dr. Bea's contested testimony is within the penumbra of his reports.

Furthermore, the Government benefitted from this approach at least as much as plaintiffs did. As an example, with respect Proffer Defense Numbers 4 and 5 concerning the testimony of Reed Mosher and lateral deformation, the Court allowed this proffer to be admitted into evidence, although it was the Court's opinion that it doubtful that such testimony was within the penumbra of Dr. Mosher's expert report. This decision was made in an attempt to provide a full record of this significant and complex trial. Likewise, with respect to Dr. Wolf, another Government witness, a proffer concerning testimony about the Atchafalya levees and their stability when located next to a waterway was admitted.

In addition, the Government eschewed any significant examination on this contested wave regeneration point and had ample time in its case in chief to have one of its battery of experts point out the error of Dr. Bea's ways. This was not done. The Court cannot emphasize enough this particular testimony is a grain of sand on the vast beach of negligence of the Corps as is fully documented in the Court's original opinion. As the Court has previously noted, its

decision was based on the totality of circumstances as demonstrated by all of the evidence and not on the testimony focused upon by the Government in the instant motion. Simply put, the Court would have found and finds now, based on the ample evidence in the record, had the MRGO been properly maintained and remained in its "as designed" condition, this tragedy would not have occurred. Accordingly,

**IT IS ORDERED** that Defendant United States' Motion to Amend the Judgment or, in the Alternative, For a New Trial (Doc. 19457) is **DENIED**.

New Orleans, Louisiana, this  29th  day of December, 2009.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**