UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |  |
|---|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | | * * * * | CIVIL ACTION |
| | | * * | NO. 05-4182 and consolidated cases |
| PERTAINS TO: BARGE | | * * | SECTION "K" (2) |
| *Boutte v. Lafarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | |
| *Lagarde v. Lafarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * | |
| *Parfait Family v. USA* | 07-3500 | * | MAGISTRATE |
| *Weber v. Lafarge* | 08-4459 | * | JOSEPH C. WILKINSON, JR. |

LAFARGE NORTH AMERICA INC.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO EXCLUDE
EXPERT TESTIMONY BY ROBERT BARTLETT

Defendant Lafarge North America Inc. ("LNA") has moved to exclude Robert Bartlett's opinion as to the "plausibility" of the barge having caused the North Breach of the IHNC east floodwall.  *See* Doc. 19445.  Mr. Bartlett gave that opinion based on nothing more than the testimony of William Villavasso and his own conclusions about physical evidence at the South Breach, and despite having found that there is "no physical evidence that demonstrates contact by the barge" at the North Breach site.[1]  Mr. Bartlett's attempt to vouch for Mr. Villavasso's testimony lacks "scientific support" and is nothing more than "subjective belief or unsupported speculation," which is inadmissible.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998) (*en banc*).

---

[1] Exhibit 1 hereto, Deposition of Robert Bartlett ("Bartlett Dep.") at 62-63, 96.

As stated in his report, the entire basis for Mr. Bartlett's conclusion that Mr. Villavasso's testimony is "plausib[le]" comes from only two sources:  Mr. Villavasso's testimony itself (Report at 7) and "[t]he evidence demonstrating that the ING 4727 created a breach at the south end of the IHNC east floodwall" (Report at 8).  Plaintiffs' brief argues (Pl. Opp. at 4) that Mr. Bartlett also relied on "photographs depicting rust-colored scrape marks on the canal-side" of the North Breach area of the IHNC floodwall, even though Mr. Bartlett's report does not claim any reliance on floodwall scrape marks as support for his opinion.[2]

A closer look at that alleged evidence shows that Mr. Bartlett's opinion as to the cause of the North Breach is not based on any scientific knowledge or method, and should be excluded.

### A. That Mr. Bartlett Reviewed Mr. Villavasso's Testimony Does Not Make Mr. Bartlett's Opinion About that Testimony Reliable.

Plaintiffs claim that Mr. Villavasso's testimony itself provides support for Mr. Bartlett's opinion that Villavasso's account is "plausib[le]."[3]  The Court should reject that circular argument.

As plaintiffs acknowledge (Pl. Opp. at 2, 10), the *Daubert* inquiry focuses on the methodology that the expert used to reach his or her opinions.  Mr. Bartlett's methodology was to read Mr. Villavasso's testimony and deem it plausible.  But that begs the question:  what criteria, methods, or procedures did Mr. Bartlett employ to reach that conclusion?  Mr. Bartlett's

---

[2] Although Mr. Bartlett made passing reference to scrape marks at his deposition, his report does not mention them at all.  In their opposition memorandum, plaintiffs simply make up support for Mr. Bartlett's opinions on which he never claimed to rely.  For example, plaintiffs assert (Pl. Opp. at 7) that the scrape marks "are at a height Mr. Bartlett expects the barge to have been"; that the Barge necessarily made scrape marks in travelling between the North Breach and South Breach; that there is alleged fact witness testimony concerning scraping noises; and that the ING 4727 was the only barge adrift in the IHNC.  But Mr. Bartlett never relied on any of those alleged facts to support his conclusions.  That is nothing more than argument by counsel, which obviously does not serve to make Mr. Bartlett's opinions reliable.

[3] Plaintiffs assert that Mr. Villavasso "testified fluently and confidently" and that "the Court has already recognized [him] as a highly reliable and credible witness."  Pl. Opp. at 4, 9.  To the contrary, in its decision denying class certification, the Court acknowledged the dubious nature of Mr. Villavasso's account, noting that he had "admitted his vision was obscured by rain and darkness and described what he saw as a 'silhouette,' and '[n]ot a clear focused picture.'"  Doc. 18852 at 21.

2

review of Mr. Villavasso's deposition transcript involved no "methods and procedures of science," as *Daubert* requires. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589-90 (1993). He simply read the transcript and offered his views about Mr. Villavasso's account. His opinion is "no more than [Villavasso's] testimony dressed up and sanctified as the opinion of an expert." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987). Rule 702 does not permit that type of testimony to be admitted. *See Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (if "an expert's opinion is based on insufficient information, the analysis is unreliable").

   Plaintiffs also cannot rely on Mr. Villavasso's testimony itself as support for Mr. Bartlett's opinion that the testimony is plausible because Bartlett's opinions are ***at odds with*** Villavasso's account. Mr. Bartlett opined that the barge did not pass through the floodwall at the North Breach because "[i]f the barge impacted lower on the floodwall, the toughness of the sheetpile reinforced portion of the wall, would have reduced the likelihood that a barge strike would be able to make a large clean penetration."[4] But according to Mr. Villavasso, the barge ***did*** penetrate the wall at the North Breach.[5] If Mr. Villavasso's account provides the basis for Mr. Bartlett's opinions, then the opinions should at least be consistent with the account, which they are not.

---

[4] LNA SJ Exh. 37, Bartlett Report at 7.

[5] *See, e.g.*, Plaintiffs' Summary Judgment Opposition (Doc. 19352) at 13 ("[Villavasso] testified that he saw the tip simultaneously with the floodwall falling down: 'When it fell down, it splashed and I seen massive amounts of water and I seen something that appeared to be a barge protruding, the tip protruding through the wall.'"); at 14-15 ("It was during the wall break. When it reached that point, that's when I heard a boom, the wall broke, I seen the tip of what appeared to be a barge and the water rushing."); at 15 ("you could see this part of the wall tumble down and I seen to appear to be part of a -- something steel.") (all quoting Villavasso deposition testimony); LNA SJ Exh. 12, Pazos Report at 10 (interprets Villavasso testimony and concludes: "He heard like an explosion then he saw sections of the concrete panels of the floodwall tumbling, and he saw a portion of a barge protruding thru the concrete panels and massive amounts of water pouring thru the concrete panels.").

3

For all of these reasons, Mr. Villavasso's testimony cannot serve as the basis for an opinion from Mr. Bartlett supporting the supposed "plausibility" of that same account.

### B. The Evidence of Scrapes on the IHNC Floodwall Does Not Make Mr. Bartlett's Testimony Reliable.

Likewise, Mr. Bartlett's deposition testimony that he saw scrape marks on the eastern IHNC floodwall does not render reliable his opinion as to the cause of the North Breach. This is so for at least three reasons.

First, if an expert metallurgist such as Mr. Bartlett were trying to use scientific methods to reach reliable conclusions as to what created the scrape marks on the floodwall, he would have conducted a metallurgical examination of the floodwall to determine whether or not the scrapes were made by material or paint from the barge. Mr. Bartlett never did that, nor did he ever even examine the scrape marks.[6] In fact, he concluded that there is "no physical evidence that demonstrates contact by the barge" at the North Breach site.[7] The utter lack of any real analysis of the scrape marks makes Mr. Bartlett's opinions about them wholly unreliable.

Second, Mr. Bartlett wrongly assumes that the scrape marks that he observed in photographs were created *during* Hurricane Katrina, not *before* it. Mr. Bartlett admitted, however, that he does not know the date of the photograph that he relied on in giving an opinion about the scrape marks.[8] Had he undertaken any real scientific inquiry at all, he would have seen that the scrape marks on the floodwall were present *before* the storm. *See* LNA SJ Exh.1, Cushing Report at 135 Fig. 98. Mr. Bartlett's faulty assumption that the scrape marks were not

---

[6] *See* Exh. 1, Bartlett Dep. at 98-99.

[7] Exh. 1, Bartlett Dep. at 96:17-22.

[8] *See* Exh. 1, Bartlett Dep. at 98:5-7.

present on the IHNC floodwall prior to Hurricane Katrina renders his opinion about the scrape marks totally unreliable.  *See Daubert*, 509 U.S. at 590.[9]

Finally, although at his deposition Mr. Bartlett testified that he saw pictures of "rusty colored" scrape marks on the canal side of the floodwall at the North Breach area,[10] the scrape marks in the referenced photographs are most clearly ***not*** "rusty colored."[11]  Mr. Bartlett's obvious misinterpretation of the pictures further undermines the reliability of his opinion as to the cause of the scrape marks.

Mr. Bartlett's "scrape mark" opinions therefore provide no support for his conclusion that Mr. Villavasso's testimony is "plausible."

### C. Mr. Bartlett's Opinions as to the Cause of the Damage at the South End of the South Breach Provide no Support for His Opinions as to the Cause of the North Breach.

The only other potential support for Mr. Bartlett's opinion that Mr. Villavasso might have seen a barge at the North Breach site is Bartlett's conclusion that the barge contacted the floodwall at the extreme southern end of the South Breach.  LNA SJ Exh. 37, Bartlett Report at 8.  At his deposition, Mr. Bartlett did not disagree with the characterization that his opinion means nothing more than that because the barge made contact with the south end of the South Breach, it might have also been at the North Breach site.[12]  This is the type of "subjective belief or unsupported speculation" that does not satisfy *Daubert*.  *Moore*, 151 F.3d at 279.  Mr. Bartlett undertook no scientific inquiry in order to determine whether the presence of a barge at the south

---

[9] Mr. Bartlett's unsupported opinion about the scrape marks is in stark contrast to the opinion offered by plaintiffs' expert Dr. Gennaro Marino, who looked at the scrape marks and did not conclude that the Barge caused the marks. *See* LNA SJ Exh. 8, Marino Dep. at 141, 179-80.

[10] *See* Exh. 1, Bartlett Dep. at 98.

[11] The photograph of scrapes on the floodwall from the North Breach site can be found at Figure 2 to Mr. Bartlett's Report (LNA SJ Exh. 37).  A color version of the photograph is included in Doc. 19482-4.

[12] Exh. 1, Bartlett Dep. at 64.

5

end of the South Breach means that the barge also could have contacted the North Breach area. He just speculated.

Plaintiffs argue that LNA cannot challenge Mr. Bartlett's methodology in reaching his opinions as to the North Breach because LNA has not challenged his opinions concerning the South Breach. This argument makes no sense. As LNA noted in its opening brief (Doc. 19445-2), in determining that the barge contacted the wall at the extreme southern end of the South Breach, Mr. Bartlett studied the damage to both the barge and the southern end of the South Breach. He identified specific damage to the concrete cap and rebar, scratches on the bottom of the barge, and the type of damage to the concrete at the far end of South Breach.[13] By contrast, he did no such work in reaching opinions on the plausibility of Mr. Villavasso's testimony, and admitted that there is "no physical evidence that demonstrates contact by the barge."[14] Plaintiffs cannot use the fact that Mr. Bartlett did work to reach his conclusions as to the South Breach to justify his total lack of any scientific analysis to opine on the cause of the North Breach. His speculation as to the cause of the North Breach should be excluded.

## CONCLUSION

LNA's motion to exclude expert testimony from Robert Bartlett should be granted.

---

[13] LNA SJ Exh. 37, Bartlett Report at 6-7.

[14] Exh. 1, Bartlett Dep. at 96. *See also id.* at 63:14-17 ("Q. You saw no damage at the north breach that would lead you to believe that a barge had anything to do with that damage; correct? A. We did not see – that's correct.").

Dated: December 30, 2009                    Respectfully submitted,

                                            Robert B. Fisher, Jr., T.A. (#5587)
                                            Derek A. Walker (#13175)
                                            **CHAFFE MCCALL, L.L.P.**
                                            2300 Energy Centre
                                            1100 Poydras Street
                                            New Orleans, LA  70163-2300
                                            Telephone:  (504) 585-7000
                                            Facsimile:  (504) 585-7075
                                            Fisher@chaffe.com
                                            Walker@chaffe.com

                                            /s/ John D. Aldock
                                            John D. Aldock
                                            Richard M. Wyner
                                            Mark S. Raffman
                                            **GOODWIN PROCTER LLP**
                                            901 New York Avenue, N.W.
                                            Washington, DC  20001
                                            Telephone:  (202) 346-4240
                                            jaldock@goodwinprocter.com
                                            rwyner@goodwinprocter.com
                                            mraffman@goodwinprocter.com

                                            Daniel A. Webb (#13294)
                                            **SUTTERFIELD & WEBB, LLC**
                                            Poydras Center
                                            650 Poydras Street, Suite 2715
                                            New Orleans, LA  70130
                                            Telephone:  (504) 598-2715

                                            ***Attorneys for Lafarge North America Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 30, 2009.

                                    /s/ John D. Aldock

LIBW/1726765.2