IN RE KATRINA CANAL BREACHES                    CIVIL ACTION
CONSOLIDATED LITIGATION

                                                 NO. 05-4182

PERTAINS TO:                                     SECTION "K"(2)
MRGO
C.A. No. 07-4608
C.A. No. 10-77


## ORDER AND REASONS

Before the Court are the following motions which were filed in the MRGO Master Class

Action:

    (1)     United States of America's Motion to Dismiss (Doc. 19323);

    (2)     Plaintiffs' Motion to Intervene (Doc. 19344); and

    (3)     Motion to Consolidate Entergy Companies' Individual Case with the MR-GO
          Master Consolidated Class Action (Doc. 19345).

Oral argument was held on December 16, 2009. The salient issue presented is what constitutes

sufficient notice to fulfill the requirements of the Federal Tort Claims Act, §§ 2401(b), 2675(a)

to vest this Court with jurisdiction. The United States maintains that the three named class

action representatives in the Amended MRGO Master Consolidated Class Action Complaint who

bring claims based on alleged defalcations which occurred in the vicinity of the Industrial

Canal/Inner Harbor Navigational Canal ("IHNC") have not properly complied with these

requisites, and thus their claims should be dismissed. This position is partly based on a previous

decision of the Court which was rendered in the exemplar MRGO case, *Robinson v. United*

*States*[1]. In response, plaintiffs[2] contend that the Government's position is misplaced. In addition, plaintiffs' Class Counsel has moved to have thousands of individuals intervene. Finally, certain related companies also seek to have their claims be consolidated with the Master Class Action.

These procedural issues arise in the context of complex litigation surrounding the failure of the levee system, including the flood walls at the IHNC, at the time of Hurricane Katrina, the fact of which the United States Army Corps of Engineers was acutely aware and indeed about which it undertook its own independent study of its causes *vis* the IPET reports. *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182, has had under its umbrella, literally thousands of cases that have been categorized for pre-trial purposes and in some instances trial management purposes into at least eight different categories. Case Management Orders have been filed in an attempt to administer this mammoth litigation in a logical manner. Indeed, Master Class Action Complaints were filed in March of 2007 pursuant to the Court's direction in both the LEVEE (Doc. 3420) and MRGO (Doc. 3415) categories. Each of these master complaints amalgamated all of the pending class action suits and the allegations contained in each individual lawsuit in each category as to all defendants, including the United States, so that all allegations would proceed in a logical and forthright manner as to all the defendants.

---

[1] *Robinson, et al. v. United States*, C.A. No. 06-2268, concerned six individual plaintiffs and was tried to determine the causation issues with respect to the MRGO as it impacted St. Bernard Parish, the Lower Ninth Ward and New Orleans East. That trial was concluded in 2009 with an opinion issuing on November 18, 2009. (Doc. No. 19415). The *Robinson* case proceeded on a "fast track" and focused solely on the harm caused by the MRGO.

[2] Plaintiffs' primary response focuses on the misguided nature of the Court's decision in *Robinson*; however, the Court will not reconsider its decision or reasoning. In the context of that litigation, the *Robinson* case was presented to the Court from its inception as the exemplar trial for the MRGO allegations against the United States Corps of Engineers; the EBIA claims were not contained in the initial complaint and the attempt to expand the *Robinson* case was made too late; the statute of limitations had run.

The cases against the United States which were consolidated in the LEVEE category were dismissed on January 30, 2008, pursuant to the United States' Motion to Dismiss based on the Flood Control Act of 1928, 33 U.S.C. § 702(c). (Doc. No. 10984). The MRGO category is that in which the issues concerning the alleged failures of the Corps with respect to the MRGO and the IHNC were to be adjudicated. With the decision rendered in the *Robinson* case, the only factual issues left with respect to the Corps' alleged defalcations in the MRGO category concern the IHNC failures. The IHNC breaches affected all of the residents of the Lower Ninth Ward–that is thousands of individuals.

It is in that light that the purpose and application of the FTCA notice requirements shall be examined herein. Having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court is prepared to rule. As background, the Court will first discuss its decision in *Robinson* concerning the notice requirements of the FTCA and the EBIA claim.

**Background**

On June 13, 2008, in the *Robinson* matter, plaintiffs amended their complaint to include the East Bank Industrial Area ("EBIA") claim against the United States. The EBIA claim concerned the alleged negligent remediation of land by the Washington Group International, Inc. ("WGI") pursuant to a contract with the Corps which land was adjacent to the floodwalls along the east bank of the Industrial Canal abutting the Lower Ninth Ward.[3] Plaintiffs contended that

---

[3]The claims against WGI, which were solely raised in the MRGO Master Class Action context, have been dismissed on a motion for summary judgment based on the government contractor defense on December 15, 2008 (Doc. 16721) and are on appeal.

the Corps' negligence as it pertains to that remediation activity was a major factor with respect to the two major breaches in the Industrial Canal floodwalls which devastated the Ninth Ward.

In response to the *Robinson* Amended Complaint, the United States moved to dismiss the EBIA claim based on jurisdictional deficiencies. The Corps maintained that plaintiffs never presented a claim based on the alleged EBIA defalcations and thus did not satisfy the administrative claim requirement of 28 U.S.C. § 2675(a). *Portillo v. United States*, 816 F. Supp.444 (W.D. Tex. 1993), *aff'd* 1994 WL 395174 (5th Cir. 1994). In addition, it argued that the claim was barred by the statute of limitations 28 U.S.C. §2401(b) as the EBIA claims was not presented in writing within two years after such claim accrued. *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001); *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985). The Court examined the documents filed by plaintiffs and concluded that the United States' motion had merit since there was no mention of the EBIA claim therein.

As a result, on September 29, 2008, the Court found that the administrative claim filed by plaintiffs was not broad enough to trigger jurisdiction over their EBIA claim. Examining in detail the provisions of § 2675 and relying on *Portillo v. United State*, 816 F. Supp. at 446, *aff'd* 1994 WL 395174, the Court stated:

> The Notice of a Class Claim that was filed on behalf of plaintiffs did not include sufficient facts to place the Corps on notice that these particular plaintiffs sought recovery for the alleged defalcations that occurred at the EBIA. The *Robinson* claim as filed with the Corps focuses on the alleged harm caused and defalcations surrounding MRGO. There is simply no indication that the EBIA, and the work of WGI would be the subject of this lawsuit. Furthermore, with respect to the individual claimant's allegations in the Form 95s included in the Notice, there is not a single mention of WGI, the failure of the Industrial Canal floodwall, the EBIA project or the like. All of the claims are in terms of the detriment caused by the MRGO with flood waters emanating from the MRGO. In addition, in the statement of the case, the only mention of the Inner Harbor Navigational Canal/Industrial Canal is to define the geographical boundaries of

the class which is not being pursued in this action or to explain where the
terminus of the MRGO occurs.

Just as the plaintiff in *Portillo* sought compensation for damages caused
by the negligence of one agency based on two distinct and different actions, so it
is with the instant plaintiffs. ***While it is beyond cavil that flooding caused
plaintiffs' damages, there is a distinct difference between lodging a claim based
on the defalcations concerning a navigable waterway–the MRGO and the storm
surge it allegedly caused–and a lock replacement project that concerned
different contracts and a different waterway–the Industrial Canal.*** See Cook v.
United States*, 978 F.2d 164 (5th Cir. 1992) (failure to provide *specific* information
about claim in timely manner so as to allow investigation bars suit); *Dynamic
Image Technologies v. United States*, 221 F.3d 34 (1st Cir. 2000) (where claim did
not contain "hint" about alleged false arrest, amended claim seeking to add same
exceeded scope of the administrative was properly dismissed).

*Id.* at *6 (emphasis added). Thus, the Court found that the administrative claim did not provide

adequate notice. In addition, the Court found that the EBIA claim was also barred by the 2 year

statute of limitations as the claim would not "relate back" under Fed. R. 15(c) since the EBIA

claims did not arise out of the conduct, transaction or occurrence of concerning the MRGO. The

Court reasoned:

This Court has already determined that the issue of liability for any
damages arising from the EBIA was not raised in the initial Complaint. (Doc.
13438-3 at 2). This determination was based on the fact that the initial complaint
focused entirely on allegations of negligence by the United States in the way it
designed, constructed, and maintained the MRGO. The Court concurs in the
Government's argument that the EBIA claim is wholly distinct and separate
from their MRGO claims in several respects:

1.   EBIA involves conduct pertinent to a different waterway from the
     one at issue in the original complaint;

2.   EBIA claim involves a discrete period shortly before Hurricane
     Katrina-2000 to 2005. The original complaint "concerns conduct
     that for the most part occurred in the twentieth century; " and

3.   EBIA concerns the manner the United State supervised a
     contractor. "Although the MRGO Project, like the Lock
     Replacement Project, was largely prosecuted by contractors, the
     original complaint did not challenge the manner in which the

5

United States supervised contractors, but instead focused on
decisions by the United States regarding how the project would be
prosecuted." Doc. 13653-2 at 12.

*In re Katrina,* 2008 WL 4449970 at 8-9. The Court continued:

> [W]hile it is the same actor involved–the Corps–the MRGO claim spans 50 years
> of activity on one waterway, whereas the EBIA claim concerns the failure of the
> Corps to properly implement another project on a different waterway. It is a
> different focus altogether. Plaintiffs have added allegations concerning a
> different project, focusing on a different technique or defalcation occurring at a
> different time. Thus, the Court finds that the claim contained in Count 2 is time
> barred as well.

*Id.* at *9. Thus, where the attempted, non-related amendment was filed more than two years

after the occurrence, the claim was barred. With this as background, the Court will now examine

the Government's allegations concerning the MRGO Master Class Action Complaint and the

Form 95s as presented in the United States's Motion to Dismiss (Doc. No. (Doc. 19323) in the

MRGO Master Class Action.


**United States' Motion to Dismiss**

The United States contends that the Court lacks jurisdiction over the claims pertaining to

the EBIA in the MRGO Master Class Action because none of the named three plaintiffs/class

representatives who resided in the Lower Ninth Ward or St. Bernard Parish presented their EBIA

claims to the Corps before filing suit; rather their Form 95s were based solely on the MRGO.

The subject plaintiffs are Ethel Mae Coates, Kenneth P. Armstrong, and Jeannine B. Armstrong.

The United States maintains that the claims on file for these individuals were like those filed in

*Robinson* pertaining solely to damages caused by MRGO; thus the EBIA claims should be

dismissed as filed in the Amended MRGO Master Consolidated Class Action Complaint which

was lodged on February 28, 2008 (Doc. 11471) beyond the two year statute of limitations relying on the *Robinson* rationale. In addition, they contend that the Armstrongs filed the original MRGO Master Consolidated Class Action Complaint on March 15, 2007 (Doc. 3415) only 15 days after having filed an amended claim, thus the United States maintains that their suit was prematurely filed rendering the Court without jurisdiction to adjudicate any of the Armstrong claims because of prematurity.

However, the Government's analysis fails to make clear that there were five filings in total made by all or some of the individuals concerning their claims against the United States, four filings of which were within the two year statute of limitations–the two original Form 95s, the Armstrongs' Amended Form 95 and the **original** MRGO Master Consolidated Class Action Complaint filed on March 15, 2007, which contained for the first time allegations concerning the EBIA claim. The fifth filing was a Court ordered Amended MRGO Master Consolidated Class Action Complaint filed on February 28, 2008. These facts make the procedural posture of this case inapposite to the *Robinson* scenario and require a close analysis.

### Chronology of Salient Facts

On August 29, 2005, Hurricane Katrina struck the Louisiana and Mississippi Gulf Coast. In its wake, the levee system known as the Lake Pontchartrain and Vicinity Hurricane Protection Project ("LPV") was compromised in a catastrophic manner. Two of those breaches as noted occurred at the IHNC. These breaches allegedly caused damage to Ms. Coats and the Armstrongs.

On June 5, 2006, a Form 95 was filed by Ethel Mae Coats which stated:

> Since the Mississippi River Gulf Outlet navigational/shipping structure was cut
> into the marshes of St. Bernard and Orleans Parishes, the Corps of Engineers has
> had a legal duty under Louisiana law to maintain, operate, design and/or construct
> the MRGO in a manner so as to prohibit the flooding of St. Bernard and Orleans
> Parishes. The Corps breached that duty by improperly designing, constructing,
> operating and/or maintaining the MRGO which flooded St. Bernard and Orleans
> parishes and my property.

(Doc. 19323, Exhibit 1). On June 26, 2006, the Armstrongs filed the identical Form 95 basis of

claim.[4] These claim forms which do not mention the EBIA in any way are analogous in terms

of information to the forms filed in *Robinson* and thus are deficient to put the United States on

notice as to the EBIA claims.

On February 27, 2007, the Armstrongs filed a second claim which broadened the

allegations to include "federal law" as a basis of the Corps' legal duty and implicating the

Admiralty Jurisdiction Extension Act. It stated:

> Since the Mississippi River Gulf Outlet navigational/shipping structure was cut
> into the marshes of St. Bernard and Orleans parishes, the Corps of Engineers has
> had a legal duty **under federal and** Louisiana Law to maintain, operate, design
> and/or construct the MRGO in a manner so as to prohibit the flooding of St.
> Bernard and Orleans Parishes. The Corps breached that duty by improperly
> designing, constructing, operating and/or maintaining the MRGO which flooded
> St. Bernard and Orleans Parish and my property, **and is responsible for any and
> all damages and losses sustained or incurred by me as a result of these
> actions, inactions, and/or breaches under applicable law including but not
> limited to the Admiralty Jurisdiction Extension Act.**

Doc. 19335 (sealed). Again, this form is silent with respect to the EBIA and does not put the

Government on notice as to the EBIA claim.

---

[4]Perhaps one of the most confounding problems with the issues before the Court is the immensity of notice
in general that the Corps certainly had with respect to these defalcations–that is the failure of the IHNC floodwalls
allegedly caused by its activities at the EBIA. For example, a premature suit was filed by Fred Holmes and Alvin
Livers on August 28, 2006 which states unequivocally the theory of negligence as to the Corps and WGI. C.A. 06-
5161.

On March 15, 2007, more than 6 months after the initial Form 95s were filed in June but before the two year deadline, the MR-GO Master Consolidated Class Action Complaint was filed.  All three plaintiffs are named as class representatives.  In this complaint, the EBIA claim is set forth (Doc. 3415, ¶¶ 39-50) and clearly outlines in great detail plaintiffs' contentions with respect to the defalcations at the IHNC/EBIA.  It states that the negligence of the Corps consisted of the following non-exclusive particulars:

> (1) allowing the work [at the EBIA] to proceed; (2) failing to caution the Washington Group about the potential damage to the levee and/or floodwall system by its work; (3) failing to monitor and/or properly inspect the work of the Washington Group; (4) failing to adequately evaluate the potential damage to the levee and/or flood wall structure by the work of Washington Group; (5) failing to correct the damage caused by the actions of the Washington Group; [and] (6) failing to discharge its duty to maintain the integrity of the levee and/or flood wall system of the IHNC/Industrial Canal.

(Doc. 11471, ¶47).   This filing was only 15 days after the Armstrong's second Form 95 filing which only added a Suits in Admiralty claim. Nonetheless, this document clearly put the Corps on notice of the EBIA claim prior to the August 29, 2007 anniversary date of the failure of the levee system.

On January 30, 2008, the Court ordered the aforementioned dismissal of the suit against the Corps with respect to the outfall canals in the LEVEE Superseding Master Consolidated Class Action Complaint concerning the Corps's alleged liability with respect to the failure of the floodwalls of the 17th Street, London Avenue and Orleans Avenue outfall canals.  In that motion, the Government sought dismissal of certain claims contained in the LEVEE matter which it maintained should have been in the MRGO matter under Case Management Order No. 4.  (Doc. 6380 at 15).

The Court in response to this argument and by agreement of the parties ordered the MRGO Master Complaint (Doc. 3415) (that March 2007 filing) to be amended. This action was necessitated by the fact that circumstances had demonstrated that the IHNC/EBIA claims against the United States would be better adjudicated in the MRGO suit as all of the LEVEE[5] claims against the United States had been dismissed and the flooding of the Ninth Ward was allegedly caused both by the IHNC floodwall collapse as well as the MRGO's alleged destruction of the MRGO levee system. It must be noted that never during any of these proceedings did the United States ever raise an issue with respect to the prematurity of the filing of the original MRGO Master Complaint or that the Form 95s were inadequate so as to deprive the Court of jurisdiction over the EBIA claim. In ordering the filing of the Amended MRGO Master Complaint, the Court stated:

> . . .with respect to Count V[6] [of the LEVEE Master Complaint (Doc. 3420)] as it pertains to allegations of legal fault regarding the Inner Harbor Navigational Canal and names the Corps in ¶ 254, it should be contained in the MRGO Master Complaint as well. However, there are no specific allegations of fault alleged with respect to the Corps in the remainder of that count. Therefore, the Motion to Dismiss will be granted as to the Corps with respect to Count V as it appears it was erroneously added in the subject defendants. If this assumption is incorrect, then whatever claims plaintiffs have with respect to the Corps that are not already

---

[5]The INHC/EBIA floodwall claim has two distinct causation issues: (1) the Corps' negligence with respect to the construction of the floodwalls themselves and (2) the Corps' negligence with respect to the remediation of the EBIA. By virtue of the Court's dismissal of liability in LEVEE for Corps' negligence arising out of the floodwalls themselves based on § 702(c) immunity pursuant to the Flood Control Act of 1928, the issue was rendered moot in MRGO for all intents and purposes. However, the EBIA claim as to the contractor WGI had been lodged and was litigated in the MRGO category. As noted previously, the claim against WGI was dismissed on December 15, 2008. (Doc. 16723). It is partly for this reason that there was confusion with respect to the IHNC claims existing in both MRGO and LEVEE Class Action Complaints.

[6]Count V concerned the **west side** of the IHNC, which concerned sub-classes 4 and 5 (Gentilly and City Park area). Thus, the residents of the Ninth Ward were never included in the LEVEE complaint. However, there were factual allegations concerning flooding on the **east side** of the IHNC (¶ ¶ 103, 109, 126) which caused confusion as well.

alleged in the MRGO Master Complaint as it pertains to the INHC (sic), those
claims are to be amended into the MRGO Master Complaint as well."

Doc. 10984 at 42-43. As a result, on February 28, 2008, the Amended MRGO Master

Consolidated Class Action Complaint was filed. (Doc. 11471). This Complaint is **identical** to

the initial master complaint with respect to the allegations of the Corps' alleged negligence as to

Ms. Coates and the Armstrongs. (Doc. 11471, ¶47). And it is that complaint which is the one

sought to be dismissed by the instant motion.


### Rule 12(b)(1) Standard and the Jurisdictional Provisions of the FTCA

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the

subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule

12(b)(1) motion is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158

(5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances:

(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the

record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts." *Id.* at 161 citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.

1996).

Plaintiffs invoke this Court's jurisdiction pursuant to the Federal Torts Claim Act, 28

U.S.C. § 2675(a) which provides:

> (a) An action shall not be instituted upon a claim against the United States for
> money damages for injury or loss of property or personal injury or death caused
> by the negligent or wrongful act or omission of any employee of the Government
> . . . unless the claimant shall have been finally denied by the agency in writing
> and sent by certified or registered mail. **The failure of an agency to make final
> disposition of a claim within six months after it is filed shall, at the option of**

**the claimant any time thereafter be deemed a final denial of the claim for purposes of this section.**

28 U.S.C. § 2675(a) (emphasis added).  The FTCA has a two year statute of limitations.  Section 2401(b) reads in relevant part:

> (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless such action is begun within six months after the date of mailing by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. §2401(b).   In the case at bar, a denial of the claims by plaintiffs was never sent.

In addition, there are a series of regulations promulgated by the Attorney General as contemplated under 28 U.S.C. §2672.  *See* 28 C.F.R. § 14.1-14.11.  Section 14.2(c) of the regulations provides:

> A claim presented in compliance with paragraph (a) of this section may be amended by the claimant at any time prior to final agency action **or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a).**  Amendments shall be submitted in writing and signed by the claimant or his duly authorized agent or legal representative.  **Upon the timely filing of an amendment to a pending claim, the agency shall have six months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. § 2675(a) shall not accrue until six months after the filing of an amendment**.

28 C.F.R. §14.2(c) (emphasis added).  A review of the history of § 2675 and case law interpreting this statute and the effect of this administrative regulation sheds light on the course of action this Court must take.

**Section 2675–Its Purpose and Congressional Intent**

12

Prior to the enactment of § 2675, there was no notice to agency requirement. A claimant first filed suit, then the United States Attorney referred his or her complaint to the agency. This process was found to:

> "artificially crowd [ ] the dockets of district courts with claims that would be settled once the United States Attorney conferred with the relevant agency." The situation thus unnecessarily consumed the time of the United States Attorneys and subjected deserving plaintiffs to needless delays and attorneys' fees in processing their claims through federal courts. [S. Rep. No. 1327, 89th Cong. 2d Sess.] at 5-6, reprinted in (1966) U.S.Code Cong. & Admin. News at pp. 2515-16.

*Adams v. United States*, 615 F.2d 285, 288-89 (5th Cir. 1980). Thus, examining the legislative history, the *Adams* court recognized that there were two reasons for this statute's enactment. The first Congressional purpose behind the notice requirement was "'to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S. Rep. No. 1327, 89th Cong. 2d Sess. 6, . . . reprinted in (1966) U.S. Code Cong. & Admin. News. pp. 2515, 2516. The second was to provide "'for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government.'" *Adams,* 615 F.2d at 288 (citation omitted).

Thus, the *Adams* court concluded:

> An individual with a claim against the United States, therefore, satisfies section 2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim. . . . This information alone allows the claimant to maintain a subsequent action in the district court following the denial of his or her claim by the agency or the passage of six months. Noncompliance with section 2675 deprives a claimant of federal court jurisdiction over his or her claim.

*Id.* at 289. In a subsequent application of these precepts, the Fifth Circuit clearly stated:

13

Under the FTCA, a plaintiff must give notice of his claim to the
appropriate federal agency. 28 U.S.C. §2675(a); *Transco Leasing Corp. v. United
States*, 896 F.2d 1435, 1441, *amended on other grounds,* 905 F.2d 61 (5th Cir.
1990). Furnishing notice is a jurisdictional prerequisite to filing suit under the
FTCA. *Id.* A claimant gives proper notice within the meaning of § 2675(a) only
when the agency obtains sufficient written information to begin investigating and
the claimant places a value on his claim. *Id*. at 1442. **No particular method of
giving notice is required.** *Williams v. United States*, 693 F.2d 555, 557 (5th Cir.
1982); *Crow v. United States,* 631 F.2d 28, 30 (5th Cir. 1980). The usual method,
however, is by filing a Form 95 with the agency.

*Cook v. United States*, 978 F.2d 164, 165-66 (5th Cir. 1992) (emphasis added). Thus, while the

Form 95 is the usual method for fulfilling §2675's requisites, it is not necessarily the only way.

The Fifth Circuit employed this holding, that jurisdictional prerequisites are met when

notice of a claim sufficient to enable the agency to investigate is provided and a value is placed

thereon, in *Williams v. United States*, 693 F.2d 555 (5th Cir. 1982). In that case, an individual

was injured in an automobile accident when he was struck by a vehicle driven by a Postal

Service employee on June 20, 1978. Plaintiff filed a state court action on June 12, 1979. The

petition, filed against the postal worker individually, described "the property damage to

Williams' car, contained an itemized listing of damages which Williams sought to recover for

personal injuries suffered as a result of the accident, and specified that the total amount of

damages sought was $218,000." *Id.* at 556.The suit was referred to an assistant U.S. attorney

who notified Williams of the necessity to file first an administrative claim with the Postal

Service for jurisdictional purposes. As a result, Williams dismissed the state suit on August 31,

1979.

On June 5, 1980 (prior to the expiration of the two year period), plaintiff filed a Form 95

that detailed **only** the property damage, but not his personal injuries. On August 5, 1980, more

than two years after the accident, the plaintiffs' lawyer sent a letter detailing of the personal and

14

property damages.  The Postal Service denied the claim on June 25, 1981, and Williams filed suit in October 1981.

The district court dismissed the suit for lack of jurisdiction reasoning that the June 5, 1980 Form 95 "did not constitute a proper administrative claim because, by omitting an amount for the personal injuries, it did not contain a sum certain as required by the applicable statue and regulation."  *Id* at 556.  The district court also held that "the filing of the state suit could not be used to satisfy the sum certain requirement and that the letter from Williams' attorney dated August 5, 1980, was filed more than two years after the alleged tort."  *Id.* at 556-67.

The Fifth Circuit Court of Appeals reversed the district court. It found that the specificity of the state suit taken together with the Form 95 satisfied the notice requirement of § 2675 of the Tort Claims Act.  *Id.* at 558.  In doing so, the appellate court relied on the *Adams* rationale and discussion of the purpose of § 2675 as noted above.  It continued:

> Moreover, we have held that no particular form or manner of giving such notice is required as long as the agency is somehow informed of the fact of and amount of the claim within the two year period prescribed by § 2401(b).
>
>> Under 28 U.S.C. §§2401(b), 2675(a) (1976), a person with a tort claim against the United States my not bring suit on his claim unless he first presents it in writing to the appropriate agency.  The usual procedure for this is to file a Standard Form 95 *See* 28 C.F.R. § 14.2(a).  *It is clear, however, that neither a Form 95 nor any other particular form of claim is required,* as the district court held with respect to the claim for rents.  This Court has held, for example, that a simple letter from the claimant's attorney, enclosing receipts for the alleged items of damages, is a sufficient written demand under section 2401(b).  This is so even though the letter itself contains no statement as to the amount of the claim, and even though the attorney inadvertently includes receipts for expenses totally unrelated to the claim.  *Molinar v. United States,* 5 Cir. 1975, 515 F.2d 246.  Similarly, we have held that if a claimant filed a written demand sufficient under section 2401(b) and 2675, he is not barred from bringing suit because he does not provide any

> additional information required under section 2672 to enable the
> agency to consider an administrative settlement. *Adams v. United
> States*, 5 Cir. 1980, 615 F.2d 284.

*Williams*, 693 F.2d at 557. The *Williams* court then concluded:

> In this case it is clear that Williams filed an administrative claim within two years
> of the date he was injured; it is also clear that the government was apprised of the
> specifics of that claim by the information contained in his state court complaint.
> Both of these acts, taken together, satisfy the notice requirement of § 2675 of the
> Tort Claims Act. A "sum certain" had been specifically enumerated for that
> particular claim and brought to the attention of the government, in writing within
> the two year period. *See Molinar v. U.S.*, 515 F.2d 246 (5ᵗʰ Cir. 1975). Notice in
> such a form complies with the spirit of our holdings in *Adams* and *Crow* dictating
> the manner in which a federal agency may be apprised of a tort claim.

*Williams*, 693 F.2d at 558. *See also Cook v. United States*, 978 F.2d 164 (5ᵗʰ Cir. 1992) (court

reiterates rule but finds that plaintiff did not inform government sufficiently within the two year

period; second suit which provided sufficient information was brought after the two year statute

of limitations); *Brunson v. Runyon*, 1993 WL 388986 (D. N. J. Sept. 22, 1993) (Form 95s plus

cover letter which contained information of the date and location of the incident was sufficient to

fulfill § 2675 requirements).


### Regulation 28 C.F.R. §14.2 and Effect on Jurisdictional Grant to Federal Courts

Section § 14.2(c) of the regulations found in Title 28 provides in essence that a plaintiff

loses his right to amend a claim after he files a complaint; however, a number of Courts have

found this regulation cannot strip a court of its congressionally conferred jurisdiction under §

2675. *See Vinzant v. United States*, 2007 WL 2993857 (E.D. Oct. 10, 2007) (Feldman, J.); *Seals

v. United States*, 319 F. Supp.2d 741 (W.D. Tex. 2004). As the *Seals* court stated:

> Additionally, this court has grave doubts concerning whether an agency
> may, by regulation, divest a federal district court of jurisdiction. *See e.g. Miller v.*

> *FCC*, 66 F.3d 1140, 1144 (11th Cir. 1995)("[I]t is axiomatic that Congress has not
> delegated, and could not delegate, the power to any agency to oust state courts
> and federal district courts of subject matter jurisdiction. . . ."); *United States v.
> Mitchell*, 18 F.3d 1355, 1360 n. 7 (7th Cir. 1994) (questioning whether
> Constitution's language "would permit Congress to delegate such a core
> legislative function as this control over federal court jurisdiction to any agency or
> commission"); *Neves v. Kolaski*, 602 F. Supp. 645, 652 (D.R.I. 1985) ("While
> congress may delegate certain legislative functions to agencies, it is dubious that
> it may constitutionally authorize the administrative usurpation of one of its
> exclusive and explicitly enumerated functions–to shape the jurisdiction of the
> lower federal courts).

*Seals*, 319 F. Supp 2d at 745.  Indeed, the Fifth Circuit has stated "that the jurisdictional question

of whether a plaintiff has properly 'presented' the claim to the agency under § 2675 is

determined without reference to whether that plaintiff has complied with all settlement related

requirements in the Attorney General's regulations."  *Vinzant*, *supra*, at *2 n. 2 citing *Adams*, 65

F.2d at 290.


### Other Issue Presented–Prematurity Under *McNeil*

In addition to these specific statutes, there is another issue to consider. This Court has

granted a number of motions to dismiss filed by the United States based on prematurity where a

Form 95 was filed, no denial was forthcoming, and plaintiffs filed suit prior to the six month

waiting period set forth in § 2675.  This course of action is mandated by *McNeil v. United States*,

508 U.S. 106, 113 S.Ct. 1980 (1993).

In *McNeil*, the Supreme Court addressed a split in the courts concerning whether a case

must be dismissed where it is filed prematurely because of the failure to present a claim prior to

filing but then did present a claim before substantial progress was made in the litigation. A

prisoner, William  McNeil, proceeding *pro se*, filed his complaint in federal court on March 6,

1989 for injuries allegedly caused by the United States Public Health Service.  Four months later, on July 7, 1989, he submitted a claim for damages to the Department of Health and Human Services.  The claim was denied on July 21, 1989.  On August 7, 1989 a letter was sent to the District Court enclosing a copy of the denial and the prisoner sought appointment of counsel and asked "that the court accept the letter 'as a proper request, whereas plaintiff can properly commence his legal action accordingly.'" *Id.* at 107-108, 1981-1982.  The United States was not served until July 30, 1990.

The United States moved to dismiss the claim based on its assumption that the complaint had been filed on April 15, 1990 when the petitioner paid the court filing fee and that date was more than six months after the denial of the petitioner's administrative claim.  However, the plaintiff responded that he had filed the suit on March 6, 1989 since it was at that time the complaint was docketed and given a case number.  The district court concurred with the plaintiff's position as to the time of filing but dismissed the suit concluding that it was prematurely filed under the exhaustion requirements of § 2675.  The Seventh Circuit affirmed and furthermore concluded that none of the plaintiff's actions constituted a recommencing of the suit.[7]

The Supreme Court thus was faced with the narrow issue of whether to permit a prematurely filed FTCA action to proceed if no substantial progress had taken palace before the administrative remedies as other circuit courts allowed such an approach, although the Fifth Circuit apparently applied the same rule as the Seventh Circuit.  *Id.* at 110, 1983 n. 6. In

---

[7]The Supreme Court noted in the opinion that "its grant of certiorari did not encompass the question whether a new action had been filed in August" and thus no opinion was expressed as to the correctness of the Court of Appeals' ruling on that issue.  *Id.* at 110, 1982 n. 5.

addition, as a denial had issued in thr case, the Court also was confronted with whether the suit

should be viewed as having been "instituted" on the date when his administrative claim was

denied.

The Court found that the text of § 2675 required the rejection of the idea that a

prematurely filed suit can nonetheless proceed.  It stated:

> The command that an "action shall not be instituted . . . unless the claimant shall
> have first presented the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and sent by certified or
> registered mail" is unambiguous.  We are not free to rewrite the statutory text.  As
> of March 6, 1989, petitioner had neither presented his claim to the Public Health
> Service, nor had his claim been "finally denied" by that agency.  As the Court of
> Appeals held, petitioner's complaint was filed too early.

*Id.* at 111, 1983.  In addition, the Supreme Court found that the receipt of a subsequent denial did

not breath life into the suit.  "The most natural reading of the statute indicates that Congress

intended to require complete exhaustion of Executive remedies before invocation of the judicial

process."  *Id.* at 112, 1983-84.

Nonetheless, where suit has been filed prematurely, but notice has been received timely,

courts have dismissed the suit without prejudice to refile in a timely manner.  *Tarafa v. B.O.P.*

*MDC Brooklyn,* 2007 WL 2120358, *3 (E.D.N.Y. July 23, 2007).  Indeed, during the early stages

of this litigation, when the United States was under an order to file motions to dismiss with

respect to all cases that were premature that had been filed up to that time, this Court took the

same action.

### Analysis

As noted, in the case at bar, the United States focuses on the application of the Court's

decision in *Robinson*.  It maintains that the Form 95 administrative claims as filed by all three

plaintiffs are devoid of mention of the EBIA activities; focusing on the 2008 amended complaint which was filed after the two year statute of limitations, the United States then argues that the EBIA claims must be dismissed just as they were in *Robinson. In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4449970, at *6 (E.D.La. Sept. 29, 2008) (Duval, J.). In addition, because of the amended Form 95 filed by the Armstrongs, the Government argues that this suit as it pertains to the Armstrongs should be dismissed in its entirety because the initial MRGO Master Complaint was filed 15 days after the amended Form 95 was filed. The Court will first address the EBIA claim.

### Notification under § 2675 With Respect to the EBIA Claims and Jurisdiction

As to the Government's contention that the EBIA claims should be dismissed for plaintiffs' failure to provide sufficient and timely notice, as demonstrated by the facts above, the procedural posture of *Robinson* case is inapposite to the procedural facts before the Court in the instant motion. In *Robinson*, there was no claim (either by Form 95 or by complaint) made concerning the EBIA defalcations prior to the two year statute of limitations found in § 2410(b). It was for this specific reason the Court granted the United States' motion.

However, in the case of Ms. Coates and the Armstrongs, there were documents which taken together give the United States sufficient notice of the claim to meet the requirements of §2675: (1) albeit silent as to the EBIA claims, Form 95s filed by the three named representatives in June of 2006; (2) the Armstrongs' Amended Form 95 filed February 27, 2007 which simply added another legal basis for the claim but still did not include the EBIA claim; and (3) a MRGO Master Consolidated Class Action Complaint containing exact detail concerning the

EBIA contentions.  All of these were filed within the two year limitation on notification.  So as to the EBIA claim, the Master Consolidated Class Action Complaint  was the first indication that these three individuals were pursuing that claim.  As such, using the *Williams* rationale, that pleading indeed gave the United States specific notice of their claim for damages arising out of the EBIA to satisfy the jurisdictional requirements of §2675.  However, under *McNeil*, the filing of the 2007 suit would be premature especially since that suit did not confer jurisdiction over the EBIA claim as explained *supra*.  Thus, the Court lacks jurisdiction over the EBIA claims as stated in the March 2007 complaint, because there was no prior specific notification as to these three plaintiffs.  Furthermore, where a court lacks jurisdiction from a suit's inception, it is axiomatic that the amendment of that suit cannot cure that deficiency.  *Reynolds v. United States*, 748 F.2d 291, 293 (5th Cir. 1984);  *see, generally,  McNeil*, *supra.*  Thus, the Amended Complaint would be deficient as well.

Thus, unless the Court were to construe the Amended MRGO Master Consolidated Class Action Complaint (Doc. 11471) as a newly filed suit, rather than an amendment, the Court must dismiss the EBIA claims in this suit.  For the plaintiffs to pursue the EBIA claims, they would have to file a new suit which would could then be consolidated hereunder.  Unlike *McNeil*, there has never been any denial of these claims to the Court's knowledge which would prevent such a filing.  Furthermore, it is clear that the Attorney General through his regulation, 28 C.F.R. § 14.2, cannot limit the subject matter jurisdiction of the Court.  Thus, any argument that once these plaintiffs filed their Master Complaint, they were precluded from enlarging their claims within the two year period is without merit.   Indeed, given the facts as presented herein, plaintiffs' claims can be deemed exhausted because more that six months has passed since the

2007 complaint was filed placing the Corps on notice that the EBIA claim was being made by these three plaintiffs, just as in *Williams*. *Tarafa v. B.O.P. MDC Brooklyn*, 2007 WL 2120358, *3, n. 1 (E.D.N.Y. July 23, 2007).

The Court notes that considering the procedural history of this matter, there could be justification, as Judge Feldman found justification in *Viznant*, to deem the Amended Master Consolidated Class Action Complaint a new suit. The "Amended Complaint," which contained the exact same EBIA allegations, was filed after the two year limitation on February 28, 2008, but more than sixth months after sufficient notification was received. This Court ordered its filing in light of the confusion surrounding under which Master Complaint the entirety of IHNC/EBIA claims was to be adjudicated. In essence plaintiffs were required to set forth clearly and unequivocally all of their claims that were being pursued under the MRGO category albeit captioned as an "Amended Complaint" including specifically all of those involving the IHNC/EBIA issues.

This approach would be further justified in light of the history of this litigation. As a practical manner, the United States had ample notice that there existed a large number of class actions filed concerning the alleged defalcations concerning the EBIA. For example, as previously noted, as early as August 28, 2006, a suit styled *Fred Holmes, et al. v. United States*, C.A. No. 06-5161 was filed outlining the EBIA claims against the United States. Moreover, as evidenced by the March 1, 2007, Case Management Order No.4, and the litigation management

discussions had at the time, including the on-going discovery therein, the Corps was deeply aware of the IHNC issues. (Doc. 3299).[8]

The original Master Consolidated Class Action Complaint of March 15, 2007 was filed pursuant to that order and Ethel Mae Coates and the Armstrongs were named as class representatives at that time. At no time between its filing on March 15, 2007 and the Court ordered filing of February 28, 2008 "Amended MRGO Master Consolidated Class Action Complaint" was any motion filed concerning this jurisdictional question. Moreover, the United States filed a Motion to Stay All cases Apart from Barge, Robinson, and the Levee and MRGO Master Class Action Cases (Doc. 9057) on November 15, 2007. No mention of any jurisdictional deficiency was made then. The Government was present at innumerable conferences concerning this MRGO Master Class Action and this issue was never raised prior to the filing of the new complaint in 2008. Nonetheless, *McNeil* discourages this Court from deeming that Amended MRGO Master Consolidated Complaint and as such the Court must dismiss the EBIA claims as to Ms. Coates and the Armstrongs without prejudice to refile them.

In addition, the Court recognizes that the United States has consistently from the on-set of this litigation taken the position that under the Federal Tort Claims Act that it was not subject to a class action. Indeed, the Court requested consistently that this issue be presented for swift determination, which for some reason the United States chose not to do. It was not until an Amended Motion to Certify Class (Doc. 16497) was filed on March 20, 2008, that the opportunity to address that issue was presented. In opposition to that motion, the United States

[8]In addition, on August 29, 2007, a "mass-joinder" case, *State of Louisiana and Orleans Parish School Board, et al. v. United States*, 07-5023, which has named thousands of individual plaintiffs was filed. This complaint again outlines with great specificity the alleged defalcations of the Corps with respect to the EBIA project.

argued that the certification motion must be denied because no class action could be maintained against the United States under the FTCA.

Based on that position, the Court in March of 2009 informed the parties that it would address this argument separately and ruled on that issue on June 9, 2009. (Doc. 18977).[9] *See In re Katrina Canal Breaches Consolidated Litigation (MRGO)*, 2009 WL 1649501. Again, at no time during this portion of the litigation did the United States contend that plaintiffs had not met their jurisdictional requirements because of deficient Form 95s. The Court ruled that it would not strike the class allegations; however, it also made clear that in the event a class action were certified, it would require each individual to have exhausted his or her or its administrative remedies. *Id.* at *2-4, 6. ("To be clear, this Court's opinion concludes only that (1) a class action can be maintained against the United States under the FTCA if that class is comprised of those who have complied with all of the FTCA's administrative claims requirements. . . .") . The instant motion to dismiss was not filed until 10 months later–October 16, 2009.

Finally, this litigation is not at all analogous to the typical FTCA suit where an individual suit is brought for harm done by a government actor. As the cases cited indicate, these suits generally focus on harm to one person by virtue of the negligence of one actor–a hospital, an air traffic controller or the like. Here, it was clear from the onset of this litigation by the United States' actions that at no time was it going to settle any of the claims filed based on the failure of the Lake Pontchartrain and Vicinity Levee Protection Project, the defalcations which occurred with respect to the MRGO, or the alleged errors made at the EBIA. It has consistently

[9]The Court has deferred ruling on the certification issue in MRGO. As the causation and immunity issues were decided in the *Robinson* case, until that judgment is affirmed, a decision on the class certification is premature. It should be noted that plaintiffs' have also filed a number of "mass joinder" suits which purport to bring individual suits on behalf of thousands of claimants.

maintained that it is immune from suit.  Furthermore, apparently, the United States recognized

what would indeed have become a log-jam of unheard of proportions had it denied within six

months all of the claims filed against it for the harm experienced as a result of the flooding after

Hurricane Katrina.  The United States did not issue those immediate denials which action or

inaction  has helped in the administration of this litigation for both the Government, the

plaintiffs' counsel and the court system.

All of these facts further underscore the necessity based on the dictates of *McNeil* that the

proper course of action is to grant the United States' motion to dismiss without prejudice the

EBIA claims as the EBIA claims had not been raised when the initial Master MRGO Complaint

was filed, but allow the refiling of the claims forthwith.


### The Armstrongs' MRGO Claims

As to the United States' claim that it should dismiss the MRGO portion of the

Armstrongs' claims, the Court finds no merit in such a contention.  The Court finds the holding

in *Seals,* 319 F. Supp. 2d 741 (W.D. Tex. 2004) compelling in that regard. In *Seals*, the mother

of a child who died on February 14, 2002,  filed a Standard Form 95 on February 4, 2003,

naming two claimants (herself and the estate of the deceased child) but only one claim amount,

$20,000,000.00.  The United States sent her a letter on February 10, 2003, stating that if she

wanted to pursue two separate claims, an amended claim form  with one signed by the mother in

her individual capacity with a sum certain and another  by the representative of the estate with a

sum certain must be filed.  On March 11, 2003, counsel filed the two separate claim forms-each

with an asserted value of $20,000,000.00 in essence doubling the amount sought against the

Government.  On August 28, 2003, Seals filed suit and the United States filed a motion to dismiss based on prematurity. The Government argued in that case that Seal's action was filed prematurely because while her initial administrative claim form was filed more than sixth months thereafter, the complaint  was filed less than sixth months after the amended claim form based on the provisions of 28 U.S.C. § 14.2 which provides, "upon the timely filing of an amendment to a pending claim, the agency shall have six months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. 2674(a) shall not accrue until six months after the filing of an amendment." Thus, as previously noted, the *Seals* court rejected the contention that the regulation could reduce the jurisdictional grant of Congress.

In the case at bar, the facts are even more compelling.  The only change or amendment contained in the Armstrongs' Amended Form 95 had to do with the legal basis for the pursuit of the identical claim–the MRGO.  They simply sought to include the Admiralty Extension Act as part of the legal basis for the claim.  There was absolutely no difference in the damages sought or the Governmental acts claimed to have harmed them.   Thus, the Motion to Dismiss will be denied in that respect.  Accordingly,

**IT IS ORDERED** that the United States of America's Motion to Dismiss (Doc. 19323) with respect to the **EBIA claims** lodged by **Ethel Mae Coats,  Kenneth P. Armstrong, and Jeannine B. Armstrong** contained in the Amended MRGO Master Consolidated Class Action Complaint filed on February 28, 2008 (Doc. 11471) is **GRANTED** without prejudice to refile same.

**IT IS FURTHER ORDERED** that the United States of America's Motion to Dismiss (Doc. 19323) with respect to the **dismissal of the MRGO claims** contained in the Amended MRGO Master Consolidated Class Action Complaint filed on February 28, 2008 (Doc. 11471) as to **Kenneth P. Armstrong and Jeannine B. Armstrong** is **DENIED.**

**IT IS FURTHER ORDERED** that this Court finds pursuant to 28 U.S.C. § 1292(b) that this order involves a controlling question of law as to which there is substantial ground for difference and that an immediate appeal from the order would materially advance the ultimate termination of the litigation. An application for appeal must be made to the Court of Appeals within ten days after the entry of this order.

**Motion to Intervene**

Plaintiffs' counsel in MRGO has moved pursuant to Fed. R. Civ. P. 24(a)(2) to intervene as of right on behalf of approximately 30,000 unnamed class members with respect to the EBIA claim to "cure" the jurisdictional defect. However, plaintiffs have provided no proof that any of these potential intervenors meet the necessary notice requirements of §2675 as set forth in detail above. As noted above, the Court has stated that it would require each individual to have exhausted his or her or its administrative remedies. *See In re Katrina Canal Breaches Consolidated Litigation (MRGO)*, 2009 WL 1649501 *2-4, 6. Simply put, the Court is unpersuaded that these 30,000 plaintiffs have met criteria and this such a course of action would serve any purpose other than unnecessarily and unreasonably complicate the course of this matter. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Intervene (Doc. 19344) is **DENIED.**

**Motion to Consolidate Entergy Companies' Individual Case with the MR-GO Master Consolidated Class Action (Doc. 19345).**

A Motion to Consolidate Entergy Companies' Individual Case with the MR-GO Master Consolidated Class Action (Doc. 19345) was filed by Entergy New Orleans, Inc., Entergy Louisiana, L.L.C., Entergy Services, Inc., Entergy Corporation, and Hartford Steam Boiler Inspection and Insurance Company (referred to collectively as "Entergy Companies"). Defendants contend that such a consolidation would serve the interest of judicial economy in light of the Government's Motion to Dismiss the named plaintiffs' EBIA claims. Thus, the Entergy Companies pray that the Court would lift the stay on their individual claims and allow them to be tried jointly with the Master Consolidated Class Action ("MCAA").

Reviewing the claims made, Entergy New Orleans, Inc. ("ENOI") and Entergy Louisiana, L.L.C. ("ELL"), which corporations sustained the physical damage for which suit was filed, both filed identical Form 95s on February 28, 2007. As to Entergy Corporation and Entergy Services, no Form 95s were filed. As explained at oral argument, these companies were named because Entergy Corporation is the primary named insured in the Hartford Steam Boiler Inspection and Insurance Company ("Hartford") policy which is subrogated to the Entergy Companies claims, and Entergy Services is the administrator of the insurance system and as such was included in the pleadings. Hartford as excess insurer is subrogated to the Entergy claims and is named in both ENOI and ELL's Form 95s as such. Hartford filed a separate Form 95 seeking its claim for subrogation on August 17, 2007.

All three forms are identical and read in relevant part as follows:

The breaches and failure of the hurricane protection levees and walls were a result of the Corps of Engineers' negligence. . . in the design and construction of the

levee walls, including without limitation the alleged failure of the . . . Industrial
Canal. . . .

Theses breaches and failures of the hurricane protection levees and walls were a
result of the Corps' negligence in permitting the dredging of the 17th Street Canal,
and the design and construction of the hurricane protection system, including
without limitation the levees and walls of the 17th Street Canal, the London
Avenue Canal, the Industrial Canal and the MRGO. . . .

The Corps knew or reasonably should have known that the maintenance of these
waterways was performed in a negligent or dangerous manner and resulted in the
levees, I-walls, spoilbanks, floodwalls and waterways that were supposed to
protect and serve the New Orleans metropolitan area in fact undermining these
very structures.

(Motion to Consolidate, Doc. 19345, Ex.2).  On August 28, 2007, the Entergy Companies filed

their individual complaint in this Court.  C.A. No. 07-4608.

In this motion, Entergy Companies seek to have this case consolidated with the MRGO

Master Class Action so that the  issues related to the EBIA can be resolved on the merits. They

do not want to be made class representative, and they do not seek to become class counsel in the

Master Class Action.

In response, the United States contended that this lawsuit likewise suffers from

jurisdictional defects because Entergy Corporation and Entergy Services, Inc. did not file Form

95s and the other parties filed prematurely before they had fully exhausted their administrative

remedies.  Thus, they maintain that the case should be dismissed.  As noted, as to the non-filing

entities, the parties that failed to file administrative claims were the holding company (and

primary named insured) of ENOI and ELL and the administrator of the insurance program

respectively.  However, with respect to those who did file, in particular ENOI and ELL, the

Government maintains that they filed suit one day too early. They rely on the plain language of

§ 2675 which states in relevant part:

> The failure of an agency to make final disposition of a claim within six months
> after it is filed shall, at the option of the claimant any time thereafter, be deemed a
> final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a) (emphasis added). Thus, as these claims were filed on February 28, 2007,

and were not denied within sixth months (from February 28, 2007 to August 28, 2007), the

United States contends that the suit should not have been filed until any time after six months

had run, that being August 29, 2007. It also argues that because another class action suit had

been instituted prior to this suit, *Fred Holmes and Alvin Livers*, *et al. v. United States,* C.A. No.

06-5161, the United States has no ability to administratively deny a claim because with that

filing it lost all ability to do so.

Entergy maintains that the Government's argument is based on *McCallister v. U.S.* , 925

U.S. 841 (5th Cir. 1991), which does not actually discuss the computation of time. However, a

number of courts have interpreted the "within" language in the context of 28 U.S.C. § 2401(b)

which reads:

> A tort claim against the United States shall be forever barred unless it is presented
> in writing to the appropriate Federal agency within two years after such claim
> accures or unless action is begun within six months after the date of mailing, by
> certified or registered mail, of notice of final denial of the claim by the agency to
> which it was presented.

In *Scott v. United States Veterans Administration*, 929 F.2d 146, 147 (5th Cir. 1991), the court

found that "the six month limitation period begins the day after the denial notice is sent and ends

the day before the same calendar date six months later." In that case, the court held that the

"within six months" period "began on October 3, 1989 and ended on April 2, 1990."

In *Murray v. U.S. Postal Service*, 569 F. Supp. 794, 796 (N.D.N.Y. 1983) the court explained: "The limitation period began to run on the day following mailing: October 27th. The last day of the first month is therefore November 26 and *not* November 27, which is the first day of the second month. Accordingly, the last day of the sixth month is April 26- not April 27th." Using this calculation method in the instant case, the filing on the 28th of August would be appropriate. In addition, Entergy maintains that to require refiling would be futile, idle formality citing *Socialist Workers party v. Atty Gen.*, 642 F.2d 1357, 1414 (S.D.N.Y. 1986).

Also, as to the claim that Hartford's claim was premature, there is case law that as Hartford is noted subrogee on ENOI and ELL's Form 95s, it is the real party in interest and its claim survives on its own. *Interboro Mutual Indemnity Ins. Co. v. U.S.*, 431 F. Supp. 1243, 1246 (EDNY 1977)*; Cummings v. U.S.* , 704 F.2d 437, 439 (9th Cir. 1983).

On January 12, 2010, the Entergy Companies filed another complaint, *Entergy New Orleans, Inc., et al. v. United States*, C.A. No. 10-77, which appears to be identical to C.A. No. 07-4608. As no claim has been denied, and certainly at this point, far more than six months has run since the Entergy claims were filed, any alleged infirmity under § 2675 with the respect to the 2007 suit is absent as to this newly filed suit. As such, the Court finds that the issue of prematurity is rendered moot by this filing and thus will not address that issue herein. Rather it will recognize the later filed suit as timely filed and treat this motion as one to consolidate the later filed suit with the Master Consolidated Class Action complaint. Nonetheless, as no Form 95 was filed by Entergy Corporation and Entergy Services, Inc., the Court will dismiss these entities. *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980 (1993).

As to the argument that somehow the filing of one class action deprives the United States from administratively settling any other case that would be subsequently filed is without basis in any case law and is ethereal at best. The Court finds no merit in the motion in this regard. Thus, as the Court finds that any alleged infirmities with the first filed suit have been dispensed with by the subsequent filing of the second suit,

**IT IS ORDERED** that the Motion to Consolidate Entergy Companies' Individual Case with the MR-GO Master Consolidated Class Action (Doc. 19345) is **GRANTED** in part in so far as the newly filed *Entergy New Orleans, Inc., et al. v. United States*, C.A. No. 10-77 is now **CONSOLIDATED** with the MRGO Master Consolidated Class Action; this particular suit is not subject to the blanket stay that is in effect with respect to all other individual suits filed in the MRGO category.

**IT IS FURTHER ORDERED** that the Motion to Consolidate Entergy Companies' Individual Case with the MR-GO Master Consolidated Class Action (Doc. 19345) is **GRANTED** insofar as the claims of Entergy Corporation and Entergy Services, Inc. are **DISMISSED without prejudice** as to both *Entergy New Orleans, Inc., et al. v. United States*, C.A. No. 10-77 and *Entergy New Orleans, Inc., et al. v. United States*, C.A. No. 07-4608.

**IT IS FURTHER ORDERED** that *Entergy New Orleans, Inc., et al. v. United States*, C.A. No. 07-4608 is hereby **STATISTICALLY CLOSED.**

New Orleans, Louisiana, this __2nd__ day of February, 2010.

 

 

_____
      **STANWOOD R. DUVAL, JR.**
    **UNITED STATES DISTRICT COURT JUDGE**