U. S. DISTRICT COURT
Eastern District of Louisiana

FILED   FEB - 9 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LORETTA G. WHYTE
Clerk

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| Plaintiff | * | NO. 05-4182 "K" (2) |
| | * | |
| PERTAINS TO:  INSURANCE | * | |
| Abadie II, 07-5112 | * | |
| Claim of Sheryl McBride | * | |

* * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION TO MOTION TO ENFORCE
CONTRACT AND AWARD OF ATTORNEY'S FEES**

**NOW INTO COURT,** comes plaintiff, Sheryl McBride, who responds to The Law Office of Joseph M. Bruno's (hereinafter "Bruno") Motion and Memorandum in Support of Motion to Enforce Contract and Award Attorney's Fees pursuant to the Court's Order dated December 11, 2009 (Rec. Doc. 19474), as follows, to-wit:

I.   **FACTS**

December 2006, plaintiff, moved from Houston, Texas to New Orleans. Plaintiff secured employment with the Frilot, LLC as an independent contractor

\_\_ Fee_____
\_\_ Process_____
_X_ Dktd_____
_X_ CtRmDep_____
\_\_ Doc No._____

from December 2006 to on or about January 14, 2007. On January 16, 2007, plaintiff accepted full-time employment with Frilot, LLC as a legal assistance/paralegal. Plaintiff continued living in New Orleans to-date.

Plaintiff sought assistance from Bruno to handle the following matters as her individual claim.

1. A claim against Allstate Insurance Company for reducing her policy limits after Hurricane Katrina from $110,000.00 in structure to $80,000.00 and $50,000.00 in contents to $10,000.00; and

2. To assist in the collection of insurance proceeds from Louisiana Citizens Insurance Company for wind damage sustained by Hurricane Katrina. Plaintiff had only received ALE from La. Citizens while living out-of-state at the time of Hurricane Katrina.

Bruno contacted plaintiff with a date and time that the inspector could meet with her to evaluate the damage to her home. Plaintiff met with Bruno's inspector on March 12, 2007 and reiterated her needs for assistance in handling the above insurance matters. Plaintiff advised Bruno's inspector, that her property only received approximately three (3') feet of

water, due to the levee breaches; and walk through the property indicating where the wind had damage other areas of the property.

Bruno inspector took pictures of the property. Bruno's inspector never discussed the relative damages but instead advised plaintiff that Bruno would notify her upon completion of the report. Plaintiff signed the Insurance Adjusting Contract on the same day that she met with the inspector. There was no final analysis at that time. Instead, the inspector advised plaintiff that Bruno would notify her upon completion of the analysis. Plaintiff provided Bruno's inspector with a copy of the payoff from the flood policy with Allstate. At the time plaintiff met with the inspector, plaintiff did not have a copy of a Home's Declaration sheet from Louisiana Citizens because the flood destroyed those documents.

After months passed, plaintiff contacted Bruno to determine whether they were working on her claims against Allstate and Louisiana Citizens. A few weeks later, Bruno's inspector returned plaintiff's call. It was then he stated Bruno had only accepted the claim against Louisiana Citizens and not Allstate. When asked, why not pursue Allstate, since they reduced plaintiff's policy limits after Hurricane Katrina by $70,000.00, he replied, it had prescribed.

Plaintiff contacted Bruno on several occasions, but no one would return the calls. Months passed without any contact, written or oral, from Bruno regarding the claim against Louisiana Citizens.

The next time plaintiff heard from Bruno was October 21, 2008. At that time, Bruno scheduled an appointment with plaintiff for October 27, 2008 to come into their office to review and sign the settlement documents and checks.

Plaintiff arrived at Bruno on October 27, 2008. Plaintiff met with Mr. Daniel Smart. Mr. Smart proceeded to explain the particulars of the settlement. After his presentation, plaintiff asked him "why her case settled without her consent." Plaintiff stated that she had been living in New Orleans since December 2006 and was available to answer any questions they may have had. Plaintiff also stated that she was available to discuss any particulars of her settlement. Mr. Smart stated they worked very hard and here it is. Plaintiff also questioned the 40% attorney's fees since it was a "class action" lawsuit. Mr. Smart stated it was not a class action lawsuit.

When Bruno presented the settlement distribution for structure, Mr. Smart stated that it was just a formality to send the documents to the Road Home. The Road Home would review the check, endorse it, and return the check back to Bruno.

Bruno never included plaintiff in any settlement negotiations. Bruno settled Plaintiff's claims without her consent.

Bruno never advised Plaintiff that the Road Home filed a subrogation claim against the funds received from Louisiana Citizens. Bruno never notified plaintiff as to how the subrogation would affect her personal situation.

The Road Home subrogation guaranteed Bruno attorney's fees. Therefore, the motivation to represent plaintiff no longer existed. **Bruno's contract clearly stated that if plaintiff received no money, they would not receive a fee as well.**

Plaintiff knew there was no recourse with the Road Home as well as Louisiana Citizens. Bruno knew when they asked plaintiff to sign the settlement documents that plaintiff would not receive any funds from that settlement. They were only interested in collecting their attorney's fees for work not performed on behalf of plaintiff.

Whether Bruno and his staff had numerous meetings is not the concern of plaintiff. Considering the amount of plaintiffs that Bruno collected attorney's fees from, the numerous meeting were not all on behalf of **this Plaintiff**. The way in which a law firm conducts its practice is their own business. A plaintiff or person cannot tell a lawyer or anyone else how

to conduct their business. Therefore, it is not fair for plaintiff to pay for the way in which Bruno wishes to practice law.

Plaintiff attaches a copy of her entire file as Exhibit "A". The breakdown of the file is as follows:

A-1   Insurance Adjusting Contract dated 3/12/07;

A-2   Mortgage Cancellation faxed on 10/21/08;

A-3   Date Bruno process settlement checks – 10-13-08;

A-4   Settlement package w/original checks dated 10/27/08;

A-5   Letter from HomeEq. Servicing dated 11/3/08;

A-6   Bruno Fax transmittal sheet attaching original checks dated 11/6/08;

A-7   Letter to Mike Casey enclosing $27,427.33 & $572.67 checks;

A-8   Letter from HomeEq. dated 12/10/08 acknowledging settlement and distribution of checks;

A-9 – Bruno's settlement document in the amount of $572.67 dated 6/1/2009;

A-10  Letter from Bill Birdsall enclosing settlement documents with no date, nor signature; and

A-11  Unexecuted Recipient Acknowledgement from Bruno.

Bruno notified plaintiff on or before November 2009, and advised her that, the Road Home was keeping the entire property structure settlement, excluding attorney's fees. Plaintiff stated that she would not accept this agreement and wanted a hearing before the Court. **It clearly states in the contract, that if plaintiff did not receive a fee then, Bruno would not receive a fee.**

Plaintiff is disgusted with Bruno's repeated statements indicating how hard they worked; and the countless meetings their staff had on plaintiff's individual matter. There were hundred's of plaintiffs' claims, which Bruno represented at the same time. Bruno wishes to mislead this Court with their contentions. Plaintiff has yet to receive or view a copy of the petition for damages that Bruno filed on her behalf.

Bruno had no obligation to forward proceeds on behalf of plaintiff to HomeEq. Plaintiff did not owe HomeEq. any further money. At that time, plaintiff had no mortgage on her home. Plaintiff attaches as Exhibit "B", an agreement with HomeEq., dated December 5, 2005, wherein HomeEq. accepted the plaintiff's policy limits of $80,000.00. At that time, plaintiff owed HomeEq. $79,682.24, excluding, interests, penalty and early-payoff.

Bruno indicated in their letter to HomeEq. that they would forward to them, plaintiff's proceeds, in the amount of, $16,838.18 as Exhibit "C"

(copy of which I never received). Bruno knew that the Road Home would receive the balance due to plaintiff; therefore, there would be no recovery for HomeEq. or plaintiff. Again, Bruno exercises the right to misrepresent plaintiff's settlement funds.

Bruno at no time asked plaintiff to produce documents showing that she was sole owner of her property. Instead, they took it upon themselves, to notify HomeEq. Servicing to have them to endorse settlement checks without plaintiff's knowledge. They were interested in the payment of their attorney's fees **only**.

Had Bruno notified plaintiff prior to notifying HomeEq., Bruno would have known that plaintiff owed HomeEq. no money and that they had settled with plaintiff in December 2005. (See Exhibit "B" attached). Plaintiff also attaches letters from Bruno to HomeEq. advising them that they would forward plaintiff's portion of the settlement to them.

As you can see from these documents, Bruno fraudulently presented to HomeEq. that they would receive the balance of the funds due to plaintiff. Bruno previously stated that they spent countless hours working with the Road Home therefore, they knew the Road Home had subrogated the recovery of funds that plaintiff would have received. Bruno did not care about what they said or who they said it to, they were only interested in

taking out attorney's fees for work they did not perform. Had Bruno contacted the plaintiff who hired them, they would have known that it was unnecessary to contact HomeEq. and plaintiff would have produced the necessary documents that she had in her possession.

Plaintiff also enclosed as Exhibit "D", documents from Allstate evidencing payments to plaintiff dated 4/8/2008 and 6/17/2008 (with plaintiff as sole owner of her property) in connection with the Increased Cost of Compliance (ICC) funds received to elevate the flood damage home.

Plaintiff also produced to Bruno the attached cancellation of mortgages and other documents showing there were no liens against her property.

Had Bruno communicated with the plaintiff, who hired them to represent her personal interest, this process was again, unnecessary.

The refusal to execute the subrogation documents from the Road Home was due to the fraudulent misrepresentation from Bruno. Plaintiff wanted this Honorable Court to witness the injustice she experience from Bruno; therefore, setting a hearing before this Honorable Court.

Bruno cited research and case law that is totally contrary to the services they afforded plaintiff.

Bruno received to-date $6,286.37 in attorney's fees from plaintiff. As evidenced by the attached documents, Bruno were overpaid in fees and should not be allowed to receive any more fees from plaintiff but instead should reimburse plaintiff for work not performed on her behalf. Plaintiff received to-date a total of $12,763.65. If, Bruno is, allowed, to receive the additional attorney's fees they are seeking, there total attorney's fees paid to-date would be $17,257.86.

Plaintiff never received copies of any documents or correspondence evidencing work performed by Bruno.

Plaintiff requested a copy of her file from Bruno on or about January 27, 2010. After reviewing the file, plaintiff discovered the attached documents and correspondence listed as Exhibit "A".

An attorney who entered into a contract to represent an individual party has a duty to do so. Bruno had a duty to inform plaintiff of the conflict.

The Road Home attorney told plaintiff after the December 2009 hearing, "their payment to Bruno was in comparison to a workman's compensation claims, whereas, the attorney's fees were, paid, by the compensation carrier". Plaintiff learned at that time, the Road Home guaranteed Bruno attorney's fees on behalf of each individual claimant they

represented. Therefore, the representation of plaintiff became void. Plaintiff entered into an individual claim and contract with Bruno, not a third-party claim. Once the situation changed, Bruno had a duty to advise plaintiff of the changes in the Rules.

Plaintiff should have been able to decide whether she wanted to terminate, the contract with Bruno.

Pursuant to the preponderance of the evidence submitted by plaintiff, Sheryl L. McBride, Bruno is in total violation of Rule 1.5 of the Rules of Professional Conduct; therefore, **no additional fees, in whole, or in part, are due and owing to Bruno and, plaintiff may be eligible for a reimbursement of fees previously received by BRUNO.**

**WHEREFORE**, plaintiff, Sheryl L. McBride, prays that the Motion to Enforce Contract and Awarded Attorney's Fees be and is hereby **DENIED**; and for such other relief as this Honorable Court deems necessary.

Respectfully submitted,

*[signature: Sheryl L. McBride]*

SHERYL L. MCBRIDE,
**PRO SE PLAINTIFF**
4564 Piety Drive
New Orleans, LA  70126
Telephone:  (504) 283-8846
Cell Phone:  (504) 908-4237

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing **Opposition to Motion to Enforce Contract and Award Attorney's Fees,** has been served, upon attorney of record, The Law Firm of Joseph Bruno, on this 9th day of February 2010, by depositing a copy in the United States mail, properly addressed and postage prepaid.

*[signature: Sheryl L. McBride]*