UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| | § | |

**DEFENDANT UNITED STATES OF AMERICA'S OPPOSITION TO PLAINTIFFS'
MOTION TO TAX COSTS**

Pursuant to Local Rule 7.5E defendant United States of America, by and through undersigned counsel, opposes Plaintiffs' Motion to Tax Costs because it disregards Judge Duval's Order that plaintiffs Norman and Monica Robinson bear their own costs. Plaintiffs' motion is brought on behalf of all the plaintiffs in *Robinson* and requests taxation of costs incurred by all plaintiffs, including the two who did not prevail. Second, plaintiffs request costs that are excessive, duplicative, or otherwise not recoverable under 28 U.S.C. § 1920.

**BACKGROUND**

On November 18, 2009, the Court issued its Findings of Fact and Conclusions of Law in *Robinson v. United States*. Doc. No. 19415. Both Plaintiffs and the United States were prevailing parties, with the Court entering judgment for Anthony and Lucille Franz, Tanya Smith, Kent Lattimore, and Lattimore and Associates; and for the United States with respect to Norman and Monica Robinson. *Id*. at 155-156.

Both sides filed motions to amend the judgment or for a new trial. During the pendency of these motions, plaintiffs filed a consent motion to extend the deadlines to file a Motion to Tax Costs. Doc. No. 19486. By order dated December 22, 2009, the Court extended the deadline to file a Motion to Tax Costs to thirty days after the entry of judgment relative to a ruling on the

pending motions for new trial. Doc. No. 19506. On December 29, 2009, the Court denied both sides' motions for new trial. Doc. No. 19518. Plaintiffs filed a Motion to Tax Costs on January 28, 2010. Doc. No. 19601; *see also* Ex. 1 (Itemization of plaintiffs' bill of costs).

## ARGUMENT

### I. PLAINTIFFS' BILL OF COSTS SHOULD NOT BE TAXED BECAUSE IT SEEKS RECOVERY OF EXPENSES INCURRED BY NON-PREVAILING PARTIES

Federal Rule of Civil Procedure 54(d)(1) permits the recoupment of costs other than attorneys' fees to a prevailing party in a civil action. Fed. R. Civ. P. 54(d)(1). A litigant who obtains some relief from the litigation is a prevailing party for purposes of Rule 54. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 604 (2001); *Hirczy de Mino v. Achenbaum*, 81 Fed. Appx. 819, 821 (5th Cir. 2003); *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978).

Plaintiffs Norman and Monica Robinson are not entitled to costs because the Court explicitly declined to award them any damages and entered judgment in favor of the United States on their claims. In doing so, the Court ruled that Norman and Monica Robinson bear their own costs. Doc. No. 19415, at 156. Plaintiffs' bill of costs disregards the Court's ruling. Plaintiffs' motion to tax costs is not only brought on behalf of the prevailing plaintiffs, but also the Robinsons. In cases where there are multiple claims, parties can only be compensated for those claims on which they prevailed. *See C&E Services, Inc. v. Ashland, Inc.*, 601 F. Supp. 2d 262, 279-280 (D.D.C. 2009) (citing *Brown v. Bolger*, 102 F.R.D. 849, 856 (D.D.C. 1984). Here, costs are sought on behalf of *all* the plaintiffs even though not all of them are prevailing parties. This attempt to seek costs for the non-prevailing plaintiffs requires denial of plaintiffs' motion to

tax costs.

A prevailing party seeking costs bears the burden of demonstrating that its costs were necessarily obtained for use in the case. *See Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991); *see also*, *e.g.*, *Walker v. Bozeman*, 243 F. Supp. 2d 1298 (N.D. Fla. 2003) (denying costs when prevailing party lumped taxable with nontaxable costs). Plaintiffs have not carried this burden. Their aggregated costs do not separate the recoverable costs – i.e., the costs incurred by the prevailing plaintiffs – from the non-recoverable costs incurred by the non-prevailing plaintiffs. By failing to meet the threshold burden that the costs to the *prevailing parties* were necessarily obtained for use in the case, plaintiffs' motion to tax costs is facially deficient and must be denied in its entirety.

Plaintiffs' submission provides no basis for ascertaining the prevailing plaintiffs' recoverable costs. Any attempt to fractionalize plaintiffs' costs, such as reducing plaintiffs' bill by two-sevenths of the final costs, would be improper because the claims of the Robinsons were factually distinct from the claims of the prevailing plaintiffs. Though all these claims arise out of one singular event, this is where the similarities end. The Robinsons' property was in New Orleans East. The prevailing plaintiffs' properties were in the Lower Ninth Ward and Saint Bernard Parish. Consequently, the cause and nature of the flooding of the Robinsons' property differed from the other plaintiffs' flooding. The evidence and testimony pertinent to the Robinsons' claims – and the costs incurred in marshalling this evidence and testimony – was in large part separate and distinct from that of the prevailing parties.

Moreover, plaintiffs posited a different theory of negligence for the Robinsons, further underscoring the necessity of a segregation of their costs. Plaintiffs attributed the flooding in St.

3

Bernard Parish and the Lower Ninth Ward to waves, lowered levee elevations and poor grass cover on the levee. In contrast, the Robinsons asserted that increased surge elevation caused the flooding of their property. This distinct theory of causation led the Court to enter judgment against the Robinsons. *See* Doc. No. 19415, at 85. While failure to install foreshore protection was found to cause the flooding in St. Bernard Parish and the Lower Ninth Ward, the failure to build a surge barrier is what the Court found to be the basis of the Robinsons' claim.

Plaintiffs' theory of flooding at the Robinson property relied on separate and distinct factual bases for negligence and causation than the flooding in the St. Bernard polder. Consequently, plaintiffs fail to meet their burden that the costs they seek were necessarily obtained for the prevailing parties *only*; nor can the costs be proportionally reduced. Accordingly, plaintiffs' motion to tax costs should be denied in its entirety.

## II.     PLAINTIFFS' COSTS ARE EXCESSIVE

In taxing costs to a prevailing party, a district court is expressly cabined by the language of § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 437 U.S. 437, 441 (1986). To stray from this statutory language would render § 1920 superfluous. *Id.* (describing the esemplastic effect of § 1920 in explicating the "costs" permitted under Rule 54(d)).

### A.     Witness Trial Attendance

Section 1920(3) permits recovery of fees and disbursements for witnesses and is cabined by the statutory amounts authorized under 28 U.S.C. § 1821. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987) ("[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary."); *accord Louisiana power & Light Co. v.*

*Kellstrom*, 50 F.3d 319, 332 (5th Cir. 1995).  These taxable costs include $40 for each day of the witness's attendance and traveling, in addition to travel expenses, lodging and meals.  28 U.S.C. § 1821(b)-(d).  Witnesses traveling by common carrier must utilize "the most economical rate reasonably available."  28 U.S.C. § 1821(c)(1).  Furthermore, witnesses requiring overnight hotel stays shall be paid a subsistence allowance "in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services."  28 U.S.C. § 1821(d)(2).[1]  The Fifth Circuit has held that a district court may assess costs for witness travel expenses who reside more than 100 miles from the court and in which special circumstances justify their presence at trial.  *Nissho-Iwai Co., Ltd.*, 729 F.2d 1530, at 1551-1552 (5th Cir. 1984) (citing *Goodwin Brothers Leasing v. Citizens Bank*, 587 F.2d 730 (5th Cir. 1979).

> The statutory language of § 1821(b) bases recoupment of witness fees not simply for the days that they are testifying, but also for the days they are in attendance, expecting to testify.  As the Supreme Court has stated:

> [Section] 1821 does not speak in terms of 'physical' or 'actual' attendance, and we decline to engraft such a restriction upon the statute.  Rather, the statute reaches those witnesses who have been summoned and are in necessary attendance on the court, in readiness to testify.

*Hurtado v. United States*, 410 U.S. 578, 584 (1973).  Thus, § 1821 attendance expenses are limited to 1) days spent traveling to and from the courthouse; 2) days waiting in readiness to testify; 3) days testifying; and 4) reasonable hotel, meal and travel expenses if circumstances warrant them.  Consequently, an expert's attendance at trial in an observational capacity is not

---

[1] The fiscal year 2009 per diem rates in New Orleans per the General Services Administration were $140 for hotels, $59 for meals, and $44.25 for meals on the first and last day of the trip.  Louisiana – FY 2009 Per Diem Rates, http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear=2009&contentType=GSA_BASIC

recoverable under § 1821.

Most of the trial attendance expenses for plaintiffs' experts are either not recoverable under § 1821, not itemized, or in excess of the General Services Administration's per diem rates. Furthermore, plaintiffs offer no explanation as to their methodology for determining what is taxable on each expert's invoice. With the exception of Dr. Bea and Professor Vrijling, none of plaintiffs' expert witnesses resided far enough from the courthouse to warrant hotel expenses being taxed as costs. Nevertheless, plaintiffs' consistently requested costs for expert expenses that are wholly inconsistent with what is recoverable under § 1821:

- Plaintiffs request $4,462.61 in trial attendance expenses for Chad Morris, whose expert invoices place his business in Baton Rouge. Mr. Morris testified and was released on the first day of trial, but stayed for the duration to assist plaintiffs. Ex. 2 (Morris invoices).

- Plaintiffs request $2,088.00 in trial attendance expenses for Dr. Duncan Fitzgerald, whose invoices place his business in Denham Springs, Louisiana near Baton Rouge. Dr. Fitzgerald testified on the second day of trial and was subsequently released. Ex. 3 (Fitzgerald invoices).

- Plaintiffs request $592.59 for John Day's expenses though he testified for only two days and was released. Ex. 4 (Day invoices).

- Plaintiffs request $1,889.49 in trial attendance expenses for Dr. G. Paul Kemp, whose invoices place his residence in Baton Rouge. Dr. Kemp testified on April 29-30 and was released. Plaintiffs are seeking Dr. Kemp's hotel expenses from April 24-28 when he was preparing his "trial script" with plaintiffs' attorneys. *See* Ex. 5 (Kemp invoices).

---

&contentId=17943&queryState=Louisiana&noc=T (last visited Feb. 19, 2010).

- Plaintiffs request $5,151.68 in witness expenses for Dr. Robert Bea. Though his travel expenses can be recoverable under § 1821(c)(1) for his flights to and from San Francisco and New Orleans, Dr. Bea did not use the "most economical rate reasonably available" because he traveled in first class. *See* Ex. 6 (Bea invoices). Dr. Bea's hotel expenses are recoverable for the period he was in attendance and testifying from April 24-28, but not for the time spent before his testimony preparing with plaintiffs' attorneys. Furthermore, Dr. Bea's hotel expenses exceed the GSA per diem.

- Plaintiffs request $6,201.76 in expenses for Professor Johannes Vrijling. Because Professor Vrijling's invoice contains no itemization for any recoverable expenses under § 1821, these costs should be denied in their entirety. *See* Ex. 7 (Vrijling invoices).[2]

Accordingly, plaintiffs' requests for expert witness expenses should be reduced subject to the aforementioned objections.

    **B.    Deposition Costs**

Plaintiffs' deposition costs are excessive because the majority of their costs were incurred in deposing witnesses whose testimonies were not necessarily obtained for use in the case, and because they seek costs not enumerated in § 1920.

Plaintiffs list seventy-one depositions that are taxable as costs. Of these seventy-one depositions, thirty-eight witnesses testified at trial. Portions of fifteen designated transcripts were admitted as exhibits at trial; the majority of which were from 30(b)(6) depositions.[3] The

---

[2] A collateral defect with plaintiffs' bill of costs in this regard is that Professor Vrijling's invoice is in Euros, and plaintiffs offer no explanation for the conversion rate employed.

[3] These prior designations were from the depositions of Gatien Livaudais, Nancy Powell, Alred Naomi, Keith O'Cain, Dr. Shea Penland, Walter Baumy, Tom Podany, John Saia, Richard

7

disparity between the number of depositions and the number of witnesses at trial punctuates that many of these depositions were not necessarily obtained for use in the case and costs for these depositions should be summarily denied. This is further compounded by the fact that many of the depositions not used at trial pertained in whole or in part to the excavations at the EBIA – a category of claims dismissed both in *Robinson* and the MR-GO track.[4] Costs related to depositions are taxable "as long as there is a reasonable expectation that the deposition may be used in trial preparation." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999). At the very least, the deposition transcripts related to the EBIA should not be taxable as costs because some of these depositions preceded when plaintiffs amended the *Robinson* complaint[5] and there was no reasonable expectation that the depositions would be used in trial preparation because of the abject deficiencies of that claim in satisfying the administrative claim requirement of the FTCA.

Plaintiffs' bill of costs also seeks recoupment for expenses incurred during the deposition that are not recoverable under § 1920(2). Accoutrements such as expedited delivery, rough drafts, video syncs, ASCII files, real time reporting, and internet deposition log-in fees are incidental costs generally not recoverable. *See Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684 (E.D. Tex. 2007) (stating that prevailing party is not entitled to costs under §

---

Broussard, Greg Miller, Zoltan Montvai, Gib Owen, General Elvin Heiberg (Ret.), Dr. Reed Mosher, and John Huerkamp.

[4] These include, but are not limited to, the depositions of Richard Varuso, Gerard Colletti, Alvin Clouatre, John Grieshaber, Lee Guillory, Richard Pinner and James Montegut.

[5] Plaintiffs' First Amended Complaint in *Robinson* was filed on June 13, 2008. Doc. No. 13529. Prior to that, the depositions of Richard Varuso and Gerard Colletti had already been taken.

1920(2) for real time reporting); *see also West v. Perry*, 2009 WL 2225579, at *2 (E.D. Tex. Jul. 23, 2009) (collecting cases). Though plaintiffs' deposition invoices were not itemized, the United States' often were, and paint a clearer picture as to the excessiveness of plaintiffs' bill of costs in this regard. Exhibit Eight compares the itemized costs for transcripts, exhibits, and video for each of the listed depositions on plaintiffs' bill of costs as they appear on the United States' invoices. Ex. 8 (comparison of USA and plaintiffs' deposition invoices); *see also* Ex. 11 (manual attachment of deposition invoices). As can be readily seen, plaintiffs' deposition costs are consistently higher, with minimal exceptions.

Accordingly, plaintiffs' request for costs of deposition transcripts should be reduced subject to the aforementioned objections.

### C. Plaintiffs' Copying Costs Are Excessive

Plaintiffs' bear the burden of proving that their costs are necessarily obtained for use in the case. *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (vacating district court's awarding of photocopying costs because there was no necessity finding). Absent this showing, the district court is unable to distinguish between what costs were necessarily obtainable for use in the case and which were simply for the convenience of counsel. *See Fogleman*, 920 F.2d at 286 (remanding district court's award of costs for prevailing party's failure to show that copies were necessarily obtained for use in the case). Expenses incurred for making multiple copies of documents or copies for the personal use of counsel are not recoverable. *Id*.

Plaintiffs have offered nary an explanation as to why any of their copying costs were necessarily obtainable for use in the case. *See* Ex. 1 (Plaintiffs' Trial Costs); Ex. 9 (Plaintiffs'

Copying Costs).  Plaintiffs' copying expenses list eleven different invoices.  Five of these invoices preceded trial, and two were billed for copies made *after* trial.  The final invoice for printing the United States' exhibits are especially indescribable considering that the United States provided plaintiffs with binders of its exhibits that it intended to use at trial.  In fact, aside from handwritten notes on each invoice describing what was copied, there is nothing to distinguish which copies were actually for use in the case – whether at trial or in post-trial briefing – and which were simply for the convenience of the almost two dozen law firms litigating these claims on behalf of the plaintiffs.

Furthermore, plaintiffs fail to offer any justification for why color copies were needed or whether $0.99 per color-copied page represents the reasonable cost for such services.  *See Fogleman* 920 F.2d at 286-87 (remanding for determination of whether copies were necessarily obtained for use in the case and for whether copying costs were the actual costs of such copies on the open market).

Finally, plaintiffs' copying invoices seek recoupment of office supplies that are not recoverable under § 1920(4).  "[T]he costs of office supplies, such as binders and tabs, are overhead and are not recoverable."  *Chevron U.S.A. Inc. v. Aker Mar., Inc.*, 2008 WL 594650, at *16 (E.D. La. Jan. 2, 2008) (Wilkinson, Mag.); *see also Hertz Corp. v. Caulfield*, 796 F. Supp. 225, 230 (E.D. La. 1992).

Accordingly, plaintiffs' request for copying costs under § 1920(4) should be denied in its entirety because they are excessive and plaintiffs failed to meet their burden in explaining what copies were necessarily obtained for use in the case.

### D.     Trial Transcripts

Plaintiffs' trial transcript costs are excessive.  Though transcripts are generally taxable as costs, there is no support for the recoupment of costs for the real time reporting appurtenant to the official daily transcripts.

The transcript was obtained to assist in the preparation of the proposed findings; it also potentially assisted the Court in its own review of the case and in the preparation of any order to be entered.  However, the same cannot be said for the real time reporting.  *See* Ex. 10 (PLTs' Transcript Invoices with Itemization for Real Time Reporting).  In *Zapata Gulf Marine Corp. v. Puerto Rico Mar. Shipping Auth.*, 133 F.R.D. 481 (E.D. La. 1990), the Eastern District of Louisiana approached the taxation of daily court reporter transcripts with skepticism, viewing them as for the convenience of the attorneys rather than necessarily obtained for use in the case. *Id*. at 484 ("Considering that the trial lasted eight weeks, it is likely that the lawyers personally used the daily transcripts to refresh their memories of past testimony.  Any one of the lawyers sitting with trial counsel could have taken notes for that purpose.").  In the current case the daily transcripts served as the original transcripts whereas the real time reporting is closely analogous to what was met with derision in *Zapata*.  *See also Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684 (E.D. Tex. 2007) (stating that prevailing party is not entitled to costs under § 1920(2) for real time reporting).

Accordingly, plaintiffs' request for costs with respect to real time reporting expenses should be denied.

## **CONCLUSION**

For the foregoing reasons plaintiffs' Motion to Tax Costs should be denied or, in the alternative, plaintiffs' bill of costs should be reduced subject to the aforementioned objections.

>Respectfully Submitted,
>
>TONY WEST
>Assistant Attorney General
>
>PHYLLIS J. PYLES
>Director, Torts Branch
>
>JAMES G. TOUHEY, JR.
>Assistant Director, Torts Branch
>
>  /s/Daniel M. Baeza                                   
>DANIEL M. BAEZA
>Trial Attorney
>ROBIN D. SMITH
>Senior Trial Counsel
>Torts Branch, Civil Division
>U.S. Department of Justice
>P.O. Box 888
>Benjamin Franklin Station
>Washington, D.C. 20044
>(202) 616-4916 (tel.)
>(202) 616-5200 (fax)
>Dan.Baeza@usdoj.gov
>Attorneys for Defendant United States

Dated: February 23, 2010

## **CERTIFICATE OF SERVICE**

  I, Daniel M. Baeza, hereby certify that on February 23, 2010, I served a true copy of United States of America's Opposition to Plaintiffs' Motion to Tax Costs upon all parties by ECF.

               s/ Daniel M. Baeza
               DANIEL M. BAEZA

13