UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * * | |
| CONSOLIDATED LITIGATION | * * | CIVIL ACTION |
| | * * | NO. 05-4182 and consolidated cases |
| PERTAINS TO: ALL BARGE | * * * * | SECTION "K" (2) |
| | * * * | JUDGE STANWOOD R. DUVAL, JR. |
| | * * * | MAGISTRATE JOSEPH C. WILKINSON, JR. |

### LAFARGE NORTH AMERICA INC.'S REPLY
### IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
### EXCERPTS FROM INTERVIEW OF ARTHUR MURPH

LNA has moved to bar plaintiffs from using at trial, for any purpose, excerpted portions of an interview that attorney Richard Guidry conducted with Arthur Murph, his potential client, which interview was recorded without Mr. Murph's knowledge and forwarded to plaintiffs' counsel Mr. Gilbert without Mr. Murph's consent.  Plaintiffs' opposition brief makes a series of charges that are both inaccurate and irrelevant to the question of whether the excerpted interview may be introduced at the June 2010 trial.[1]  As we discuss below, plaintiffs' complaints about LNA's conduct are meritless, and there is no legal basis for permitting plaintiffs to use the excerpted interview for any purpose at trial.

---

[1] This motion applies to both the interview transcript and the excerpted recording that plaintiffs have manually attached to their opposition to this motion.

LIBW/1734364.1

## BACKGROUND

Plaintiffs accuse LNA of "witness tampering and coercion."  Pl. Opp. at 1.  This sensational but baseless accusation derives from a confidentiality clause in LNA's settlement agreement with Mr. Murph which, according to plaintiffs, has left Mr. Murph "tongue-tied and indentured."  Pl. Opp. at 11.  The Court is already familiar with this settlement agreement, which has been the subject of discovery motion practice that was resolved largely in LNA's favor,[2] notwithstanding similarly-overblown accusations of misconduct against LNA in plaintiffs' discovery motion papers.[3]  In fact, plaintiffs' accusations against LNA are unfounded – there has been no coercion, witness tampering, or anything of the sort.  Instead, as discussed below, the excerpted transcript is itself the product of numerous ethical violations by Mr. Murph's erstwhile counsel, Mr. Guidry, with the participation of plaintiffs' counsel in this case.

The confidentiality provision in Mr. Murph's settlement agreement easily refutes plaintiffs' accusations of witness tampering and coercion.  Far from attempting to silence Mr. Murph from relating his experiences during Hurricane Katrina, as plaintiffs imply (Pl. Opp. at 2-3, 7-8), the confidentiality provision extends only to the terms of the settlement itself and the negotiation of the agreement.  Pl. Opp. Exh. B, Settlement Agreement ¶ 8.1.[4]  ***The confidentiality provision does not encompass Mr. Murph's account of his experience during***

---

[2] Doc. 535 in No. 05-4419 (granting production of settlement agreement but not settlement amount); Doc. 12605 at 12-14 (denying further discovery of Murph settlement); Doc. 13596 at 5 ("Plaintiffs have plenty of information on which to question Mr. Murph's bias, interest, or credibility."); Doc. 13711 (denying Rule 30(b)(6) deposition on settlement-related topics).

[3] *See* Doc. 13413 at 4-5 (accusing LNA of "oppression, threats and sequestration"); Doc. 13416 at 19 (alleging "oppression, threats, and attempted sequestration and intimidation of a witness").

[4] The confidentiality provision states:  "The Murphs understand and agree that the terms of this Receipt, Release, and Settlement Agreement, the fact and the amount of the settlement they have received in accordance with this Receipt, Release and Settlement Agreement, and all of the negotiations and discussions that they have had with Lafarge North America Inc., New Jourdan LLC, New Berkley LLC, and/or Ingram Barge Company, either directly or through their representatives and/or legal counsel, and whether verbal or written, shall forever remain completely confidential, except as disclosed by the public record through filings approved by Lafarge North America Inc."

*Hurricane Katrina*.[5]  Plaintiffs have no basis to allege any suppression, or attempted suppression, by LNA of Mr. Murph's account of his experiences during Hurricane Katrina.

Similarly, plaintiffs' unfounded speculation (at 2, 4) about LNA's motives in settling with Mr. Murph does not advance their cause.[6]  Mr. Murph and his wife were the only persons who, in the immediate aftermath of the storm, could show that the barge had landed *on their house*.  Although LNA believed it had legitimate legal defenses, LNA decided to settle his claims if this could be done on a confidential basis to avoid encouraging other similar claims.  To protect LNA's anonymity and confidentiality, the agreement included two newly-created entities, New Jourdan LLC and New Berkley LLC, to effectuate the property transactions in the public record.  In short, the record reflects that LNA took measures to maintain the confidentiality *of its settlement* with the Murph family.  There is nothing to support plaintiffs' baseless allegation that LNA acted improperly in any way by settling with Mr. Murph.

By contrast, the record shows that the circumstances under which plaintiffs procured Mr. Murph's partial transcript are fraught with misconduct and ethical violations.  At the time the partial transcript was recorded, Mr. Murph was the "prospective client" of Mr. Guidry's firm and was "seeking advice" from the firm about his potential settlement with LNA.  Guidry Dep. at 20:16-24.  However, Mr. Guidry was, at the same time, representing other claimants asserting

---

[5] Mr. Murph consulted counsel regarding the issue of settlement confidentiality before signing the settlement agreement. Guidry Dep. at 46 (LNA Br. at Exh. 1) ("I do recall that [*i.e.*, confidentiality] being a subject of the issue that we were giving him advice about.").  Moreover, if Mr. Murph was ever under a misimpression about what the confidentiality agreement required of him, plaintiffs concede that it was corrected through discussions with his lawyer at or around the time he gave his deposition in this case.  *See* Doc. 13416 (conceding Mr. Murph had been "advised otherwise by counsel"); Murph Dep. at 240-41 (LNA Br. at Exh. 4) (settlement did not limited his ability to give his account of the facts).

[6] In particular, there is no basis for plaintiffs to suggest that LNA settled with Mr. Murph because it suspected him "of having witnessed the Barge breach the Industrial Canal Floodwall." Pl. Opp. at 2.  To the contrary, by the time LNA settled with Mr. Murph and his wife, it had become clear, to everyone except plaintiffs' counsel in this case, that the barge had nothing to do with the floodwall breaches.  See, *e.g.,* Doc. 19293-4 at Exh. 13 (Bea Report at 11) (Congressional testimony in November 2005 concluded barge did not cause breaches).  Mr. Murph's account, as later reflected in both his deposition and the partial interview transcript produced by plaintiffs, makes clear that he did not, in fact, witness the barge breach the floodwall. See below at 5.

3

barge-related claims who had not received any settlement overtures from LNA.  *Id.* at 42:13-16.
Mr. Guidry never informed Mr. Murph of this conflict of interest.  *Id.* at 42:17-43:4.  Nor did Mr.
Guidry inform Mr. Murph, his prospective client, that his words were being recorded.  *Id.* at
40:22-24.  Even afterward, Mr. Guidry did not give Mr. Murph a copy of the transcript so that he
could confirm the statements contained in it.  *Id.* at 41:24-42:4.  Instead, Mr. Guidry shared
portions of the recording and transcript with Mr. Gilbert, whom he was "working with" in
furtherance of the interests of claimants who had not received a settlement offer, after editing out
portions deemed by Mr. Guidry to be "covered by the attorney-client privilege," including
discussions regarding the settlement.  *Id.* at 28:8-29-18.[7]  **Mr. Guidry never obtained informed
consent from Mr. Murph before sharing the transcript with Mr. Gilbert.**  *Id.* at 70:17-22.  Nor
did Mr. Guidry inform Mr. Murph that the partial transcript might be used to cross-examine or
impeach him at trial.  *Id.* at 59:24 to 60:12.  Mr. Guidry's conduct, in which plaintiffs' counsel in
this case played a role, violated numerous ethical rules relating to preserving client confidences
and avoiding conflicts of interest.[8]  Although the many ethical violations involved in plaintiffs'
procurement of the excerpted interview form no basis of LNA's motion to exclude it, they
underscore that it is plaintiffs, not LNA, who are overreaching in this motion.

Finally, and in any event, Mr. Murph has consistently denied having witnessed the barge
breach the floodwall, both in his deposition and in the excerpted interview transcript.  In his

---

[7] Of course, by editing out the portions that pertained to the settlement, Mr. Guidry merely confirmed the existence of the settlement (or potential settlement) to Mr. Gilbert, violating Mr. Murph's confidences with respect to the settlement as well.

[8] *See, e.g.*, La. R. Prof. Resp. 1.18 (duties to prospective client, including prohibitions on using or revealing "information learned in the consultation"); La. R. Prof. Resp. 1.9(c) (prohibition on using "information relating to the representation" to disadvantage of prospective client, incorporated in Rule 1.18); La. R. Prof. Resp. 1.6(a) (requiring informed consent before revealing "information relating to the representation," incorporated into Rule 1.9 and Rule 1.18).  Significantly, these ethical rules extend not only to matters subject to attorney-client privilege, but also to *all* information "learned in the consultation."  La. R. Prof. Resp. 1.18.  Therefore, Mr. Guidry's attempt to edit out supposedly-privileged portions of the communications did not cure the ethical violations inherent in his disclosure of the partial transcript.

deposition, Mr. Murph testified that he first saw the barge "on the front of the house" when he "looked out of the roof" after the neighborhood had flooded. Murph Dep. at 59:25-62:17. Likewise, in the partial transcript (at 8), Mr. Murph said that he did not see barge until after he had "chopped me a hole in the roof" following the flooding of his home. Thus the most important particulars of Mr. Murph's account have not changed from the excerpted interview to the deposition. In the circumstances, plaintiffs cannot point to any basis on which the partial transcript might or should be introduced at trial for any purpose.

## ARGUMENT

Putting plaintiffs' rhetoric aside, there is no legal basis for permitting plaintiffs to use the excerpted interview for any purpose at trial.

### 1. LNA Has Not Waived The Right To Object To The Admission Of The Document At Trial.

Plaintiffs first argue (at 12) that because LNA did not file an evidentiary objection when plaintiffs attached the partial interview transcript to their opposition to LNA's motion for summary judgment, LNA thereby waived the right to object to the admission of the document at trial. But they provide no authority supporting that assertion.[9] The summary judgment proceedings are irrelevant to the admissibility of evidence at trial. Further, it was not necessary for LNA to object to the document at that time because in its summary judgment papers, LNA explained that Mr. Murph did not claim to have seen the barge strike the eastern IHNC floodwall, and therefore even the partial transcript provided no basis to defeat summary judgment. *See* Doc. 19309-2 at 35-36; Doc. 19370-3 at 16. When it came time to object to plaintiffs' proposed trial exhibits, LNA timely objected to the admission of the partial interview transcript. *See* Doc. 19651 at 30; Doc. 19697 at 30-31. Further, LNA timely filed the instant

---

[9] For example, they cite *Blackwell v. St. Charles Parish*, 2009 U.S. Dist. LEXIS 67903 (E.D. La. Aug. 3, 2009), which was a decision on summary judgment and said nothing about the admission of documents at trial.

5

motion *in limine*.  LNA therefore has not waived its right to object to the admission of the excerpted interview at trial.

### 2. The Document Cannot Be Authenticated.

LNA's opening brief noted (at 5-7) that the excerpted interview recording and transcript cannot be authenticated because it is incomplete, with Mr. Guidry having selectively deleted and/or redacted portions of the interview, and that even if the document could be authenticated, the Court should exclude it under Rule 403 because the prejudice from admitting only portions of the interview outweighs any benefit from its admission (citing *United States v. Wardlaw*, 977 F. Supp. 1481 (N.D. Ga. 1997)).  Plaintiffs ignore this argument, and do not even try to distinguish *Wardlaw*.

Plaintiffs instead try to blame LNA for the incompleteness of the document.  But LNA had nothing to do with the preparation of the document.  That Mr. Guidry's discussion with a potential client contained privileged information which he considered it necessary to delete is simply a function of the type of communication involved, and cannot be blamed on LNA.  *See* LNA Br. at 3.  Plaintiffs' offer to now subpoena the unredacted version of the recording is of no moment now, since LNA made its objection to the partial transcript clear the first time it was provided to LNA at Mr. Murph's deposition on December 17, 2007 (*see* Murph Dep. at 69).  Moreover, and in any event, plaintiffs have no basis to assume that the entire document could be procured by subpoena from Mr. Guidry, who would be required to assert the attorney-client privilege that caused him to redact portions of the interview in the first instance.[10]

---

[10] Plaintiffs cite *United States v. Norman*, 415 F.3d 366 (5th Cir. 2005), where the issue was whether the defendant's voice could be identified on the recording.  Here, that is not the issue.  Instead, the issue is the authentication of an excerpted interview from which portions were deleted at the discretion of an attorney with an interest in the outcome of the litigation.  They also cite *Sports Center, Inc. v. Riddell, Inc.*, 673 F.2d 786 (5th Cir. 1982), but there the court considered whether to admit a complete audio recording, not a redacted document.

### 3. The Document Is Hearsay, Not Subject To Any Exception.

LNA's opening brief noted that the excerpted interview is an out-of-court statement that plaintiffs seek to use to prove the matters asserted therein (*i.e.*, that its contents represent Mr. Murph's "true" account of events). As such, it is hearsay. See Fed. R. Evid. 801(c). Plaintiffs now identify a litany of hearsay exceptions, none of which allows the admission of the partial recording and transcript for purposes of proving the truth of the matters asserted therein.

Rule 801(d)(1) does not apply. Plaintiffs claim that the partial interview is not hearsay because under Rule 801(d)(1)(B), it is "consistent with [Mr. Murph's] testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." But plaintiffs cannot satisfy either requirement. First, plaintiffs want the Court to admit the statement because they claim that it is *inconsistent* with Mr. Murph's sworn testimony. Second, they do not seek to admit the document to "*rebut*" a charge of "recent fabrication or improper influence or motive"; they want to *make* that charge. Rule 801(d)(1) therefore does not apply.

Rule 801(d)(2) does not apply. This rule permits the use against a party of a statement by the party or a statement "of which the party has manifested an adoption or belief in its truth." But the excerpted interview is certainly not a statement by LNA. And plaintiffs' argument (at 17-18) that LNA "manifested a belief in the truth of Mr. Murph's account of the barge breaking the floodwall" by virtue of its settlement with him is both illogical and contrary to the Rules of Evidence. To begin, the settlement cannot possibly be deemed to "manifest an adoption or belief" in the matters stated in the excerpted interview because the excerpted interview was not produced to LNA until after the settlement. Moreover, and more fundamentally, the mere fact that a party has entered into a settlement with another party cannot possibly deemed to "manifest an adoption or belief" in the other party's account because parties settle claims for numerous

7

reasons other than because they believe the other party's account. See comments to Fed. R. Evid. 408 ("The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position."). In fact, in the settlement, LNA specifically denied any liability to Mr. Murph. The settlement therefore could not possibly be construed as an adoption of the statement by LNA.[11]

Rule 803(2) does not apply. Under Rule 803(2), a statement is an "excited utterance" if made "while the declarant was under the stress of excitement caused by the event or condition." The January 25, 2006, interview was conducted almost *five months* after Hurricane Katrina. Mr. Guidry, who took the statement from Mr. Murph, described his demeanor as "pretty matter of fact." Guidry Dep. at 43-44. Mr. Murph's statements during the interview were therefore not excited utterances for purposes of Rule 803(2). *See* Fed. R. Evid. 803(2) advisory committee's note (1972) ("The theory of [Rule 803(2)] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. Spontaneity is the key factor … ." (citation omitted).[12]

Rule 803(5) does not apply. A document constitutes a "recorded recollection" under Rule 803(5) if the witness "now has insufficient recollection to enable to witness to testify fully and accurately." Plaintiffs claim (at 22) that they want to use the document to refresh Mr. Murph's recollection. But as LNA noted in its opening brief (at 7-9), they cannot satisfy Rule

---

[11] As support for the argument that by settling with a plaintiff, a defendant thereby adopts the plaintiff's statement for purposes of Rule 801(d)(2), plaintiffs cite only *Weatherly v. State Farm Fire & Casualty Insurance Co.*, 2009 U.S. Dist. LEXIS 41415 (E.D. La. May 4, 2009). But there, the party sought to exclude statements from its own employee, which attempt the court rejected because it was "the party's own statements." *Id.* at *2. Here, by contrast, Mr. Murph was not an LNA employee.

[12] Plaintiffs claim that Mr. Murph was angry and excited during the interview. Even if true, that would not make his statements excited utterances. *See, e.g., Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1028 (N.D. Cal. 2006) ("Emotionalism in recounting a distressing event hours, days, or even years later is not uncommon, but it does not make the recounting an excited utterance."); *United States v. Lentz*, 282 F. Supp. 2d 399, 414 (E.D. Va. 2002) ("The fact that Ms. Lentz was visibly upset when she was recalling the events is irrelevant to the admission of her statements of such factual occurrences, under the excited utterance exception, because Ms. Lentz had time to reflect and it would only show Ms. Lentz's then existing state of mind as to a past fact.").

8

612 because (a) Mr. Murph's recollection required no refreshment, (b) he testified that the document did not refresh his memory, (c) Mr. Guidry made the recording in anticipation of litigation against LNA, and such documents are unreliable and cannot be used to refresh recollection, and (d) the document is incomplete and therefore its use to refresh Mr. Murph's recollection would violate LNA's right to have the entire transcript produced and use it for cross-examination.[13]  Plaintiffs ignore these points.

Rule 803(6) does not apply.  This Rule applies to certain records "kept in the ordinary course of a regularly conducted business activity."  Plaintiffs suggest that Mr. Guidry's interview with Mr. Murph is admissible because "[i]t is customary for a law firm to memorialize information given to it by a prospective client or witness."  But Mr. Guidry *denied* that this was his custom.  Guidry Dep. at 23 (Q: "Was it your practice to record all conversations with prospective clients?" A: "No.").  Plaintiffs have no authority to support their outlandish suggestion that if a lawyer interviews a client, the interview is admissible even though it is not under oath; the other side is not present; the transcript is prepared by the attorney's legal assistant and not a certified court reporter; and the transcript is produced only in redacted form.[14]

---

[13] Plaintiffs quote (at 21) an out-of-context statement from Mr. Murph's deposition in which he was presented with the document, asked "[d]oes it help refresh your memory," and he responded: "Somewhat."  As LNA noted in its opening brief, and plaintiffs ignore, prior to being asked that question, Mr. Murph had testified that he did not recall having given an interview to Mr. Guidry.  The question then posed to him, and on which plaintiffs now rely, is unclear as to whether what was being refreshed was his memory of the fact that he had given the interview or his memory of events on August 29, 2005 (of which he expressed no failures of recollection).  But when asked directly whether the partial transcript helped refresh his recollection of facts relating to Hurricane Katrina, he was unequivocal that it did not.  *See* LNA Br. at 4-5 (Doc. 19649-1).

[14] *See, e.g., In re Agribiotech, Inc.*, 2005 U.S. Dist. LEXIS 6467, at *21, 24 (D. Nev. Mar. 2, 2005) (refusing to admit attorney interview notes under Rule 803(6), and noting that "few courts have been inclined to treat attorney witness interview notes or memos as business records" and that "documents prepared in anticipation of litigation generally are not admissible as business records because they lack the ordinary controls for accuracy and trustworthiness upon which the business records exception rests").

9

Rule 807 does not apply. The residual hearsay exception applies only when a statement is not covered by Rules 803 and 804, but has "equivalent circumstantial guarantees of trustworthiness." As the Fifth Circuit has stated:

> "The exception is to be used only rarely, in truly exceptional cases. The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force. In order to find a statement trustworthy, a court must find that the declarant of the … statement was particularly likely to be telling the truth when the statement was made." *United States v. Phillips*, 219 F.3d 404, 419 n. 23 (5th Cir. 2000) (citations and internal quotations omitted).

Plaintiffs cannot meet their heavy burden for several reasons. First, as noted, the recording was made by Mr. Guidry in anticipation of litigation against LNA (*see* Guidry Dep. at 20:16-24), and throughout Mr. Guidry used highly suggestive and improper questions and declarations to elicit statements from Mr. Murph (*see* LNA Br. at 7 n. 21). Therefore, the contents of the partial interview transcript have no "circumstantial guarantees of trustworthiness."

Second, the document has been altered by Mr. Guidry in order to exclude statements that he chose to omit. It lacks any guarantee of trustworthiness for this reason as well.

Third, the document has no probative force because in the portions of the interview that have been produced to LNA in discovery, Mr. Murph does not claim to have seen the barge strike or break through the eastern IHNC floodwall. *See* Doc. 19649-1 at Exh. 2.

Finally, in the cases that plaintiffs cite, courts admitted otherwise hearsay statements because they were so reliable that cross-examination of the witness would matter little. *See* Pl. Br. at 24. But here, Mr. Murph will testify at trial and has been deposed. Therefore, there is no reason to admit the partial interview transcript in order for the Court to have the benefit of Mr. Murph's account of events during Hurricane Katrina. *See Elizarraras v. Bank of El Paso*, 631

10

F.2d 366, 374 n.24 (5th Cir. 1980) (residual hearsay exception inapplicable when party seeking to admit document could not show "that reasonable efforts could not have resulted in having the [individuals who made the hearsay statement] testify" about the underlying facts).

## CONCLUSION

The Court should grant LNA's motion *in limine*.

Dated: April 8, 2010                                    Respectfully submitted,

                                                Robert B. Fisher, Jr., T.A. (#5587)
                                                Derek A. Walker (#13175)
                                                **CHAFFE MCCALL, L.L.P.**
                                                2300 Energy Centre
                                                1100 Poydras Street
                                                New Orleans, LA  70163-2300
                                                Telephone:  (504) 585-7000
                                                Facsimile:  (504) 585-7075
                                                Fisher@chaffe.com
                                                Walker@chaffe.com

                                                 /s/ John D. Aldock
                                                John D. Aldock
                                                Richard M. Wyner
                                                Mark S. Raffman
                                                **GOODWIN PROCTER LLP**
                                                901 New York Avenue, N.W.
                                                Washington, DC  20001
                                                Telephone:  (202) 346-4240
                                                jaldock@goodwinprocter.com
                                                rwyner@goodwinprocter.com
                                                mraffman@goodwinprocter.com

                                                Daniel A. Webb (#13294)
                                                **SUTTERFIELD & WEBB, LLC**
                                                Poydras Center
                                                650 Poydras Street, Suite 2715
                                                New Orleans, LA  70130
                                                Telephone:  (504) 598-2715

                                                ***Attorneys for Lafarge North America Inc.***

LIBW/1734364.1

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 8, 2010.

                                                /s/ John D. Aldock

LIBW/1734364.1