# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **CIVIL ACTION** |
| | **NO. 05-418** |
| **PERTAINS TO BARGE** | |
| | **SECTION "K"** |

| | | |
|---|---|---|
| *Mumford* | **C.A. NO. 05-5724** | *as to plaintiffs Josephine Richardson and Holiday Jewelers, Inc. - ONLY* |
| *Benoit* | **C.A. NO. 06-7516** | *as to claims of plaintiffs John Alford and Jerry Alford - ONLY* |

## JOINT PRE-TRIAL ORDER

NOW INTO COURT, through undersigned counsel, come **Plaintiffs, JOHN AND JERRY ALFORD, JOSEPHINE RICHARDSON and HOLLIDAY JEWELERS, INC**., and **Defendant LAFARGE NORTH AMERICA, INC.,** who in accord with the provisions of Federal Rule of Civil Procedure 16, and pursuant to the Court's April 15, 2010 Order, submit their Pre-Trial Order.

1.      **A PRE-TRIAL CONFERENCE IS SCHEDULED FOR JUNE 10, 2010 AT 3:00 P.M.**

2.      **ATTORNEYS**

    **For the Plaintiffs**:

    1.  Laurence E. Best, Best Koeppel Traylor;
    2.  Peter S. Koeppel, Best Koeppel Traylor;
    3.  Brian A. Gilbert, Best Koeppel Trayor and Law Office of Brian A. Gilbert;
    4.  Lawrence D. Wiedemann, Wiedemann & Wiedemann;
    5.  Karl Wiedemann, Wiedemann & Wiedemann;
    6.  Shawn Khorrami, Khorrami, Pollard and Abir;
    7.  Dylan F. Pollard, Khorrami, Pollard and Abir;

8. Patrick Sanders, Patrick Sanders, LLC;
9. Richard T. Seymour, Law Office of Richard T. Seymour.

**For Lafarge North America, Inc.:**

John D. Aldock
Mark S. Raffman
Adam M. Chud
Kirsten V.K. Robbins
Eric I. Goldberg
GOODWIN PROCTER LLP

Derek A. Walker
Robert B. Fisher, Jr.
Charles P. Blanchard
Thomas D. Forbes
CHAFFE MCCALL, L.L.P.

Daniel A. Webb
SUTTERFIELD & WEBB, LLC

3. **DESCRIPTION OF THE PARTIES**

**Plaintiffs:**

**John and Jerry Alford**, adult citizens of the Eastern District of Louisiana, formerly residing and domiciled at 2423 Deslonde Street, New Orleans, Louisiana, married to each other in accord with the Louisiana community property regime of acquets and gains.

**Josephine Richardson** - an adult citizen of the Eastern District of Louisiana, residing and domiciled at 1321 Egania, Street, New Orleans, Louisiana, widow of Joseph Richardson, to whom she was married in accord with the Louisiana community property regime of acquets and gains.

**Holliday Jewelers, Inc**. - a Louisiana corporation, having its former place of business at 8400 West Judge Perez Drive, Chalmette, Louisiana, within the Eastern District of Louisiana.

**Defendants:**

Defendant is **Lafarge North America Inc.**[1]

4.    **JURISDICTION**

**Plaintiffs:**

Personal Jurisdiction over the parties is undisputed.

This Court has jurisdiction of the parties, and under 28 USC §1332, General Maritime Law under 28 USC §1333; and the surrogate law of the State of Louisiana under the saving to suitor's clause of 28 USC §1333, has subject matter jurisdiction over this suit against Lafarge. (*Mumford Complaint*, at 1).   Plaintiffs maintain that maritime jurisdiction governs the instant action. In addition to the fact Section 1 of Plaintiffs" operative Complaint specifically alleges maritime jurisdiction under 28 USC §1333, maritime jurisdiction necessarily applies insofar as the facts of this case implicate both the "locations" and "connections" tests set forth in *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Significantly, the Court in *In re Ingram Barge*, 435 F. Supp. 2d 524 (E.D. La. 2006) has already concluded that the facts of this case implicates maritime law. *See In re Ingram Barge Co.*, 435 F. Supp. 2d at 528 (reasoning that "[t]he barge-related claims are similar to those of Grubart itself where jurisdiction was found arising under the AEA[,]" but that "claimants have alleged the classic situation to which the AEA was intended to apply: a vessel that collides with a land-based structure causing damage on land."). The Courts" determination is consistent with the conclusions of other cases involving identical facts. *See e.g. Bd. of Comm'rs of the Orleans Levee Dist. v. M/V Belle of Orleans*, 535 F.3d 1299, 1313 (11th Cir.,2008) (reasoning that "[t]he Belle of Orleans was a vessel; she was operating in South Shore Harbor, a navigable waterway; she broke free from imperfect moorings; she had the potential to and actually did disturb commercial activity; and she is alleged to have caused damage when she struck property alongside a navigable waterway" and as such "the district court improperly concluded that there was no admiralty jurisdiction over the Board's tort claim.").

Supplemental jurisdiction over all claims arising under the laws of the State of Louisiana is asserted pursuant to 28 U.S.C. 1367.

---

[1] LNA asserted third-party claims against the United States, which claims the Court severed and stayed on June 22, 2009 (Doc. 19026).  Those claims are not part of the trial scheduled to commence on June 21, 2010, and therefore the United States is not a party to that trial.

Further, in view of the Court's orders dated August 29, 2008 and October 9, 2008, it is understood that the Bellwether trial scheduled to commence on June 21, 2010 will be limited in scope to a determination of legal causation, fault, and damages with respect to specific claims asserted by John and Jerry Alford, Josephine Richardson and Holiday Jewelers, Inc. against Lafarge North America Inc.  Primary and Excess Insurance coverage issues framed by the pleadings will be addressed after the Bellwether trial at such time that the Court deems appropriate.  All parties respectfully reserve all of their rights and/or defenses with respect to the adjudication of such coverage issues.

**LNA:**

Personal jurisdiction is undisputed.  LNA does not concur with plaintiffs' arguments concerning maritime law.  Nonetheless, maritime law governs plaintiffs' claims because plaintiffs have so pled and the Court has so ordered.  See Doc. 18799, at 2 (trial is "pursuant to the Court's maritime jurisdiction, which these plaintiffs have invoked").

5.    **MOTIONS**

   **a.  Pending:**

   LNA has filed a motion to quash the trial subpoenas that plaintiffs served upon Wayne Centanni and Robert Garcia (Doc. 19823).

   Plaintiffs have filed a motion to continue the trial in order to allow Plaintiffs counsel to secure more funding and manpower for proceedings beyond the first trial.

   **b.  Contemplated:**

   **Plaintiffs:**

   Evidentiary motions depending upon trial testimony and defensive arguments.

   Plaintiffs will object to testimony based upon, and will move to strike, the untimely Supplemental Report of Reda Bakeer.  This supplementation is not in accord with any agreement or stipulation of the parties.

   **LNA:**

   LNA intends to file a motion to strike Louis Colin from plaintiffs' witness list. Plaintiffs have listed Louis Colin as a trial witness, but Mr. Colin was not identified during discovery and therefore was not deposed.  Plaintiffs should not be permitted to call him to testify at trial.

**c.  Special issues appropriate for determination in advance of trial on the merits:**

<u>Plaintiffs:</u>

>  Plaintiffs intend to discuss with the Court and Defendant at the Pretrial Conference the potential benefits of bifurcating trial of liability and causation from that of individual plaintiff damages.

<u>Defendant:</u>

>  LNA opposes any change in the trial plan at this late date, including plaintiffs' proposal to bifurcate liability and damages.

**6.  SUMMARY OF MATERIAL FACTS**

**a.  Plaintiffs'**

*PLEASE NOTE:  In accord with the Court's instruction in its April 15, 2010 Order, Record Doc. 19728, that "...the pretrial order must set out with particularity the claims of these individuals as the pre-trial order shall supersede any allegations contained in either complaint as to these plaintiffs and Lafarge North America, Inc.," Plaintiffs' summary is more particularized, both factually and legally, than is typical in the Eastern District of Louisiana.  Though it provides a particularized statement of the Plaintiffs' claims, it is not necessarily exhaustive of each fact or application of law to be urged in trial .*

Plaintiffs pursue a single claim of negligence, based on both Louisiana State law and Maritime law, arising out of Lafarge's inappropriate handling of Barge ING 4727. (*Mumford Complaint*).  Plaintiffs allege that Lafarge's cumulative decisions and negligent conduct leading up to and through Hurricane Katrina resulted in Barge ING 4727 to become unmoored – permitting the ING 4727 to float adrift during the course of the Hurricane – causing two separate breaches to the eastern floodwall of the Inner Harbor Navigation Canal ("IHNC").   Plaintiffs allege that Lafarge's negligent conduct led to the catastrophic flooding of New Orleans' Lower Ninth Ward and St. Bernard Parish, **(1)** on the *West* by the Industrial Canal, **(2)** on the *North* by the Public Belt or other Railway adjacent to and immediately north of Florida Avenue, and the east-west channel or canal extending from the aforesaid railway to Paris Road (Florida Walk

Canal and Forty Arpent Canal), and **(3)** on the *South* by the Mississippi River. In so doing, Lafarge's negligent conduct caused Plaintiffs to incur damage, as set forth herein. Lafarge's negligence caused the southern and northern breaches of the IHNC, which resulted in catastrophic flooding of each Plaintiffs" property, and therefore is responsible for each Plaintiffs' loss.

### Conditions At Lafarge Before Hurricane Katrina

At the time before Hurricane Katrina, Lafarge had no written hurricane preparation plan, in violation of standard practices and Coast Guard requirements. [*Testimony Edward VanderMuelen* (Lafarge Area Distribution Supervisor and FRCP 30(b)(6) designee); *Plaintiffs' Exh. 371* (VanderMuelen Depo.); *Testimony of Jennifer Arnold* (LNA Area Safety Advisor )]. Lafarge had a one-page "New Orleans Terminal Hurricane Preparation Checklist" that consists mostly of blank space ("Name of Hurricane: ____") and contains a few very elementary precautions ("Cable all barges to shore," etc.). [*Plaintiffs' Exh. 37* (Lafarge "Hurricane Preparation Checklist.")]. Lafarge's one-page "New Orleans Terminal Hurricane Preparation Checklist" fell far short of the requirements of a written hurricane preparation plan, and was no longer in effect by the time of Hurricane Katrina. [*Testimony of VanderMuelen; Plaintiffs' Exh. 371* (VanderMuelen Depo.); *Testimony of Arnold*]. In addition, the Lafarge France Road terminal lacked communications, and had disabled its equipment receiving weather reports, due to an ongoing construction project. [*Testimony of Edward Busch* (Lafarge North America Asst. Terminal Manager)]. Lafarge did nothing to remedy this defect during the 2005 hurricane season, not even when a possibility emerged that New Orleans was in a zone that Hurricane Katrina might reach. [*Testimony of Edward Busch*]. Although public information advising of the nature and approach of Hurricane Katrina was available as early as Friday, August 26, 2005

[*Plaintiffs' Exh. 19* (Proclamation by Gov. Kathleen Blanco); *Plaintiffs' Exh. 18* (National Hurricane Center Advisories and tracking maps); *Plaintiffs' Exh. 15*(Impact Weather Advisories)], Lafarge did not notify its personnel before Saturday, August 27, of the increased risk or provide any instructions as the predicted track of Hurricane Katrina focused more tightly on the New Orleans area. [*Testimony of Busch*]. The personnel working at the Lafarge France Road terminal dock did not receive notice of Hurricane Katrina"s approach until around 9:00 a.m. on Saturday, August 27, 2005, in the form of phone calls from employees' family members. [*Testimony of Busch*]. Around 9:00 or 10:00 A.M. on Saturday, August 27, 2005, Lafarge Safety Manager Jennifer Arnold called Mr. Busch, which Busch described as follows: "She was more not telling me about the storm, she was calling to ask if our employees, how many employees we had at the plant, what we were doing, how long we were going to be there, and basically said do what you got to do to get that plant tied up, locked up, and get the hell out of there." [*Testimony of Busch*]. Mr. Busch testified that he told Jennifer Arnold that he had "released the barge," but no further details were discussed. [*Testimony of Busch*]. Mr. Busch did not inform Jennifer Arnold, or any other Lafarge official, that the terminal's weather reporting service had been disabled. [*Testimony of Busch*].

### Lafarge's Negligent Failure To Remove or Secure Barge ING 4727

On Friday, August 26, 2005, Lafarge proceeded to unload Barge ING 4727, continuing overnight despite the prior issuance of governmental and weather service warnings of the impending storm, and completed the unloading at 9:00 a.m. on Saturday, August 27, 2005. [*Plaintiffs' Exh. 62* (Lafarge North America Barge Unloading Report); *Testimony of VanderMuelen*; *Plaintiffs' Exh. 371*(VanderMuelen Depo.)]. The unloaded barge was much more susceptible to winds, in a situation in which winds could reasonably be expected to be high.

[*Testimony of Maritime Expert, Don Green*].  Lafarge did not make a reasonable, timely effort to remove the unloaded Barge ING 4727 from the IHNC and get it out of harm"s way. Lafarge Assistant Manager, Edward Busch, claims to have left a voice mail message without speaking to a live person. [*Testimony of Busch*]. However, Zito denies receiving any such call, denies voicemail capability exists such that Mr. Busch could have left a message, and has provided an automated telephone system log reflecting the absence of a call from Mr. Busch. [*Testimony of Barry Boudreaux*; *Plaintiffs' Exh. 425* (Nextel invoice of calls by Ed Busch); *Plaintiffs' Exh. 50* (Daily Calling Log of Zito)].   Mr. Boudreaux testified in the trial of the limitation action that if Zito had been notified of a desire to move Barge ING 4727 out of the IHNC and fleet it, this would have been possible. [*Testimony of Boudreaux*].  Had Lafarge ordered Joseph C. Domino, Inc., to remove the ING 4727 from the facility and tow it to a fleet in the Mississippi River rather than top the two barges around, Lafarge would have prevented the breakaway. [*Testimony of Donald Green* (Plaintiff Maritime Expert); *Plaintiffs' Exh. 386* (Green Report); *Plaintiffs' Exh. 389* (Green Declaration)].   Despite a height differential of about eight feet above water level between the empty Barge ING 4727 and the loaded Barge ING 4745, Lafarge moored these barges together with three single strands of rope (single part lines). [*Testimony of Earl Smith* (Lafarge Maintenance Supervisor); *Testimony of Eric Thigpen* (Unique Towing deckhand)]. Lafarge"s mooring violated the United States Coast Guard Sector New Orleans Hurricane Plan (mooring lines to be doubled up) and accepted standards of maritime care. [*Testimony of Donald Green* (Plaintiff Maritime Expert); *Plaintiffs' Exh. 386* (Green Report); *Plaintiffs' Exh. 389* (Green Declaration)].

Lafarge did not perform or request any mooring of the Barge ING 4727 to the dock (per its own Hurricane Checklist "cable all barges to shore"), and did not perform or request any

examination or strengthening of any connection such as would increase the moorings affixed to ING 4727. [*Testimony of Busch*].  To avoid damage to its dock in the event of a hurricane surge, Lafarge decided to unmoor the unloaded Barge ING 4727 from the dock, and switch the two barges around. [*Testimony of Smith; Testimony of Bush*].  Lafarge Manager, Ed Busch, called Joe Domino, Inc./Unique Towing on the morning of Saturday, August 27, 2005 to have the empty Barge ING 4727 moved outboard of the Barge ING 4745. Busch did not request any mooring of the Barge ING 4727 to the dock, or any examination or strengthening of any connection between other services such as would increase the moorings affixed to ING 4727. Domino was not instructed to modify, or even to check, the moorings between the two barges. [*Testimony of Raymond Grabert* (Captain of the REGINA H); *Testimony of Busch*].  Lafarge abandoned its facility on Saturday, August 27, prior to the arrival of  tugboat Regina H. [*Testimony of VanderMuelen*; *Testimony of Grabart*].   On Saturday, August 27, 2005 at approximately 2:25 p.m., The REGINA H tug boat arrived at the Lafarge France Road facility. Unique Towing employee, Raymond Grabert, Captain of the REGINA H, testified that he would have taken the empty 4727 out of the Industrial Canal on the 27th if he had been requested to do so. [*Testimony of Earl Smith*; *Testimony of Thigpen*].  Lafarge did not instruct Unique Towing to secure the resulting outboard Barge ING 4727 to the dock, in violation of Lafarge"s own Terminal Hurricane Preparation Checklist. [*Testimony of Louis Robin* (Lafarge Terminal Attendant); *Testimony of Thigpen*].   Prior to Lafarge abandoning its facility, Lafarge made no arrangement for anyone to monitor the barges it had left in the IHNC, or instruct any towing company to station a tug in the IHNC to monitor the barges it had in the IHNC, to ensure that none would become loose and endanger lives and property. [*Testimony of Earl Smith*].   Unique Towing"s deck hand saw three single strands of two-inch line connecting Barge 4727 and Barge 4745, two

ropes at the ends and one at an angle in the middle. [*Testimony of Thigpen*].   Although Lafarge employee Earl Smith testified that extra line was left out for Unique Towing to use [*Testimony of Earl Smith*], Unique Towing personnel saw no such line. [*Testimony of Thigpen*].   Lafarge also did not authorize Unique Towing to use the extra lines it carried on its vessel, to secure the Barge 4727 more effectively. [*Testimony of Grabert*].   Lafarge"s failure to order Joseph C. Domino, Inc. to provide additional rigging violated the United States Coast Guard Sector New Orleans Hurricane Plan (mooring lines to be doubled up) and accepted standards of maritime care. [*Testimony of Donald Green* (Plaintiff Maritime Expert); *Plaintiffs' Exh. 386* (Green Report); *Plaintiffs' Exh. 389* (Green Declaration)].

### Observations Of Wind Direction and Wave Height Prior to Breaches

Within the time of the North and South breaches, at times when Lafarge asserts that wind was not blowing from west to east, water was observed splashing over the eastern IHNC floodwall, from west to east. [*Testimony of Michael Bickham*; *TestimonyTerry Adams*; *Plaintiffs' Exh.372* (December 18, 2007 Deposition of William Villavasso ); *Plaintiffs' Exh.372*; *Plaintiffs' Exh. 264* (Transcription of January 25, 2006 audio statement of Lower Ninth Ward resident Arthur Murph to attorney Richard Joseph Guidry)].   Wind was observed blowing Southeast to Northwest in the Lower Ninth Ward at a time when Lafarge asserts that it was from the Northeast. [*Testimony* of *Andrew Sartin*].   South-to-north wind was observed in Chalmette, west of Paris Road, at a time when Lafarge asserts that wind direction was from north to south. [*Testimony of Dennis Martinez*].   Unpowered vessels in the Intracoastal Waterway were observed being blown from west to east at times at which Lafarge asserts that wind was not blowing from west to east. [*Testimony of Capt. James Hall*].   "Prevailing wind" was not the only force capable of motivating ING 4727; ING 4727 could move in directions other than

"prevailing wind." [*Testimony of Cmdr. (Ret.) Don Green*; *Testimony of Hector Pazos, PE, testimony of Dr. David Mitchell*].    William Villavasso, a 23-year employee of the Water and Sewer Board and Chief Operator of Pump Station 5 at the time of Hurricane Katrina, testified to seeing four to five foot  high waves splashing over the INHC at Pump Station 5 (located at Florida Avenue and the Industrial Canal) during the time leading up to the North Breach. [*Plaintiffs' Exh.372* (December 18, 2007 Deposition of William Villavasso)].

### The North Breach

The North Breach occurred in floodwalls along the east bank of the south segment of the IHNC, between east-west streets Florida Ave. and Law Street, just south of the Florida Ave. Bridge, and was about 250 ft long. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)].   The IHNC North breach occurred at or before 4:30 a.m. CDT. [*Testimony of Spinks*; *Plaintiffs' Exh. 421* (Spinks Report at p. 37); *Plaintiffs' Exh. 424* (Spinks Decl. at ¶ 12)].   That the IHNC North breach occurred at or before 4:30 a.m. CDT is corroborated by two eyewitnesses who reported seeing Barge ING 4727 in the IHNC on Sunday afternoon, August 28, 2005, the day before the breach. [*Testimony of Gertrude LeBlanc*; *Plaintiffs' Exh. 375* (Centanni Investigative Agency Transcription of July 31, 2006 Recorded Telephone Conversation With LeBlanc); *Testimony of Frazier Tompkins*; *Plaintiffs' Exh. 376* (Centanni Investigative Agency Transcription of December 2, 2005 Recorded Telephone Conversation With Tompkins)]. The first witness, Gertrude LeBlanc attested that she saw the barge in the IHNC on Sunday morning, August 28, 2005, while she was on the Claiborne Avenue Bridge crossing the IHNC. [*Testimony of LeBlanc*]. According to her account, the Barge was near the East side (the Lower Ninth Ward side), between the Claiborne Avenue and Florida Avenue. [*Testimony of   LeBlanc*]. Ms. LeBlanc"s October 21, 2009 Affidavit stated that she saw the

Barge next to the East floodwall for the Lower Ninth Ward, between the Claiborne Avenue and Florida Avenue bridges, between 11:00 A.M. and Noon on Sunday, August 28, 2005. [*Testimony of LeBlanc*].   Frazier Tompkins, the second witness, stated that on Sunday, August 28, 2005, he saw an unattended barge by itself in the vicinity of Derbigny, Roman and Prieur streets on the east side of the canal. [*Testimony of Frazier* Tompkins; *Plaintiffs' Exh. 376*].  In addition to this eyewitness testimony, a total of 20 different people have been identified as having perceived sounds, such as booms, explosions, grinding and metallic screeching on the Eastern side of the IHNC on the day in question between the time period of 3:00a.m. and 7:00 a.m. [*Testimony of Arthur M. Anderson*; *Testimony of Arcola Sutton*; *Testimony of Patrina Peters*; *Testimony of Dakeia Johnson; Testimony of Anthony Dunn*; *Testimony of Dolores St. Cyr – Butler*; *Testimony of Ronald McGill*; *Testimony of Ernest Edwards*; *Testimony of Daniel Weber*; *Testimony of Earl Lackings*; *Testimony of Andrew Sartin*; *Testimony of Christopher Weaver*; *Testimony of Kevin McFarland*; *Testimony of Arthur Murph*; *Testimony of Michael Bickham*; *Testimony of Carolyn Berryhill*; *Testimony of Towanda Schexnayder*; *Testimony of Joe Edwards; Testimony of Wm. Villavasso; Testimony of Terry Adams*].    Most compelling is the testimony of William Villavasso – an individual who routinely observed barges on the INHC during his 23 years working for the Sewerage and Water Board – who testified repeatedly at deposition that he personally witnessed the tip of a barge impact and cause the Northern floodwall breach. [*Testimony of William Villavasso*; *Plaintiffs' Exh. 372* (December 18, 2007 Depo. of Villavasso at 24:9-25:13, 64:21-24, 71:5-9, 81:12-22, 85:2-8, 86:2-5, 86:9-16, 89:3-20, 97: 6-16, 98:14-17, 128:2-24, 186:23 -187:18, 191:12-25,  202:6-203:7, 203:8-204:18)].   Defendant's contention that Mr. Villavasso's testimony is not plausible because "the object [he] allegedly saw was sticking up out of the water only one to four feet above the top of the floodwall," is incorrect.

Contrary to Defendant's assertion, Mr. Villavasso's testimony repeatedly refers to the fact he only saw what he perceived was the tip of the barge protruding from the floodwall, not to the height of the barge above the water. [*Testimony of Villavasso*; *Plaintiffs' Exh. 372* (Depo. of Villavasso at 24:9-25:13, 64:21-24, 71:5-9, 81:12-22, 85:2-8, 86:2-5, 86:9-16, 89:3-20, 97: 6-16, 98:14-17, 128:2-24, 186:23 -187:18, 191:12-25, 202:6-203:7, 203:8-204:18)].

### The South Breach

The South Breach occurred in f1oodwalls along the east bank of the south segment of the IHNC, between east-west streets N. Galvez St. and N. Prieur St., and was about 850 ft long. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)].  The IHNC South breach occurred at or before 6:00 a.m. CDT on Monday, August 29, 2005. [*Testimony of Spinks*; *Plaintiffs' Exh. 421* (Spinks Report at p. 37); *Plaintiffs' Exh. 424* (Spinks Decl. at ¶ 12)]. This fact is first corroborated by two eyewitnesses who reported seeing Barge ING 4727 in the IHNC on Sunday afternoon, August 28, 2005, the day before the breach. [*Testimony of Gertrude LeBlanc*; *Plaintiffs' Exh. 375* (Centanni Investigative Agency Transcription of July 31, 2006 Recorded Telephone Conversation With LeBlanc); *Testimony of Frazier Tompkins*; *Plaintiffs' Exh. 376* (Centanni Investigative Agency Transcription of December 2, 2005 Recorded Telephone Conversation With Tompkins)].  The first witness, Gertrude LeBlanc attested that she saw the barge in the IHNC on Sunday morning, August 28, 2005, while she was on the Claiborne Avenue Bridge crossing the IHNC. [*Testimony of LeBlanc*]. According to her account, the Barge was near the East side (the Lower Ninth Ward side), between the Claiborne Avenue and Florida Avenue Bridges. [*Testimony of LeBlanc*]. Ms. LeBlanc's October 21, 2009 Affidavit stated that she saw the Barge next to the East floodwall for the Lower Ninth Ward, between the Claiborne Avenue and Florida Avenue bridges, between 11:00 A.M. and Noon on Sunday, August 28,

2005. [*Testimony of LeBlanc*].   Frazier Tompkins, the second witness, stated that on Sunday, August 28, 2005, he saw an unattended barge by itself in the vicinity of Derbigny, Roman and Prieur streets on the east side of the canal. [*Testimony of Frazier Tompkins*].    In addition to this eyewitness testimony, a total of 21 different people have been identified as having perceived sounds, such as booms, explosions, grinding and metallic screeching on the Eastern side of the IHNC on the day in question between the time period of 3:00a.m. and 7:00 a.m. [*Testimony of Arthur M. Anderson*; *Testimony of Arcola Sutton*; *Testimony of Patrina Peters*; *Testimony of Dakeia Johnson; Testimony of Anthony Dunn*; *Testimony of Dolores St. Cyr – Butler*; *Testimony of Ronald McGill*; *Testimony of Ernest Edwards*; *Testimony of Daniel Weber*; *Testimony of Earl Lackings*; *Testimony of Andrew Sartin*; *Testimony of Christopher Weaver*; *Testimony of Kevin McFarland*; *Testimony of Arthur Murph*; *Testimony of Michael Bickham*; *Testimony of Carolyn Berryhill*; *Testimony of Towanda Schexnayder*; *Testimony of Joe Edwards; Testimony of Wm. Villavasso; Testimony of Terry Adams*].   Moreover, the direct eyewitness testimony of Lower Ninth Ward resident Terry  Adams who testified at deposition that he personally witnessed the Barge impact and cause the Southern floodwall breach is persuading. Adams, who had evacuated to the roof of his home at 2604 Deslonde Street between 5:30 A.M. and 6:00 A.M. on Monday, August 29, 2005, witnessed the Barge impact and break through the floodwall from about five blocks away. [*Testimony of Terry Adams*].   Additionally, two other eyewitnesses, Arthur Murph and Sidney Williams, both rendered statements that they witnessed the Barge impact and penetrate the floodwall as the location or the Southern breach. [*Testimony of Sidney Williams*; *Testimony of Arthur Murph*; *Plaintiffs' Exh. 264* (Arthur Murph"s January 25, 2006 recorded statement to Attorney Richard Joseph Guidry)].

**Physical Evidence of Barge Impact**

While concrete monoliths on the London and 17th Street Canals fell intact, concrete monoliths at the eastern Inner Harbor Navigation Canal breaches display significant pulverization of concrete. [*Testimony of Hector Pazos*, P.E.; *Plaintiffs' Exh. 402*]. This distinction is unique to the eastern IHNC floodwall breaches. [*Testimony of Hector Pazos*, P.E.; *Plaintiffs' Exh. 402*].   Exposed rebar protruding from area where concrete floodwall cap was at southern end of South Breach is a feature not present at any other breach. [*Testimony of Pazos*; *Plaintiffs' Exh. 402; Testimony of Marino; Plaintiffs' Exh. 397*; *Testimony of Bartlett; Plaintiffs' Exh. 378*]. This rebar left a corresponding pattern on the bottom of ING 4727. [Plaintiffs" Exh. 419 (Harbor Photo of ING 4727); *Testimony of Pazos*; *Plaintiffs' Exh. 402; Testimony of Marino; Plaintiffs' Exh. 397*; *Testimony of Bartlett; Plaintiffs' Exh. 378*]. This feature is unique to the  South Breach of the Eastern IHNC floodwall. [*Testimony of Pazos*; *Plaintiffs' Exh. 402; Testimony of Marino; Plaintiffs' Exh. 397*; *Testimony of Bartlett; Plaintiffs' Exh. 378*].   Barge ING 4727 contains scratches on its bottom which are spaced at intervals consistent with the 9 inch design spacing of the vertical rebars in one face of the floodwall, assuming the barge traveled in a somewhat straight path through the wall at a slight angle off perpendicular to the live of the wall. [*Testimony of Robert Bartlett, P.E.*; *Plaintiffs' Exh. 378* (Report of Robert Bartlett, P.E.)]. Some of the scratches on the bottom of the barge extended approximately three-fourths the length of the barge." [*Testimony of Bartlett*; *Plaintiffs' Exh. 378*].   Dr. Reed Mosher of the Corps of Engineers, who was in charge of Volume V of the IPET Report, admitted in his deposition that it appeared the barge had struck part of the floodwall at the South breach, and that there was evidence on the barge that it had scraped against a floodwall. [*Plaintiffs' Exh. 364* (July 22, 2009 Deposition of Reed Mosher, at 90:23-91:6)].   Moreover, scrape marks also appear along the inner expanse of the eastern IHNC floodwall from a point north of both the

North Breach to the location of the South Breach. [*Testimony of Hector Pazos*, P.E.; *Plaintiffs' Exh. 402*; *Plaintiffs' Exh. 241* (ABC News video interview of Joseph Edwards)]. This is consistent with witnesses who heard scraping, screeching and grinding noises. [*Testimony of Michael Bickham; Testimony of Carolyn Berryhill; Testimony of Towanda Schexnayder*].

**Accident Reconstruction Analysis Confirms Barge Impact was the Cause**

Plaintiffs' Expert, Gennaro G. Marino, Ph.D., P.E. ("Dr. Marino"), conducted a forensic investigation of the failure of the North and South breaches, and as a result of that investigation, "ruled-in" the Barge as a direct cause. The relevant factors considered by Dr. Marino included:

- An examination of the failure manifestations of the North breach, including the tearing of the I-wall and the relationship of such tearing to the lack of significant scouring of the landside levee, and the relationship of overall failure relative to eyewitness observations;

- An examination of the failure manifestations of the South breach, including the wall displacement and other characteristics (such as the exceptionally bent ends, bowed or coiled wall at the south end, and an unusual irregular shape of the laid out I-wall), examination of the sheetpile, and the relationship of overall failure relative to eyewitness observations;

- Comparative analysis of the failure manifestations of the North and South breaches in relation to other breaches attributed to soil related causes; AND

- An examination of the reported damage of the ING4727 in relation to the failure manifestations at the South breach.

[*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino); *Plaintiffs' Exh. 401* (October 30, 2009 Declaration of Gennaro Marino)].

Prior to Katrina, the floodwalls along the south segment of the navigational canal consisted mainly of T-wall along the west bank and I-wall along the east bank. The I-wall is essentially made of steel sheetpile driven to a design l depth, with upper floodwall of reinforced

concrete. The steel sheets are embedded into the concrete to provide a structural connection. The constructed I-wall is based on the design analyses which considered seepage effects and lateral support of floodwater. The I-wall was not designed, however, for barge impact(s). [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)].   Dr. Marino concludes that the floodwall damage at the North Breach is consistent with witness observations/reports of Barge impact. At the North Breach location, the I-wall was  torn out of the ground and twisted 270 degrees to the south end of the breach. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino, Photo 4.10)]. To cause the sheetpile to be displaced out of the ground would require significant upper force on the wall, such as a barge impact. At the time of failure there was no overtopping and, thus, no significant backside scour to undermine the floodwall, although there is no evidence that if there was overtopping at the time of failure that undermining would result. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino, Sections 4.1 and 5.6.3)].   Similarly, Dr. Marino also concludes that the floodwall damage at the North Breach is consistent with witness observations/reports of Barge impact. Because of the bowed and "linear" deformed layout of the displaced floodwall, it is likely that the failure occurred in two main stages. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino, Photo 4.24)]. As with the North Breach, the floodwall was displaced out of the ground as much as 195 ft which would require an upward impact force on the wall. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)]. At the south end of the breach, the floodwall was literally sheared off, a result that would require a significant impact force consistent with impact by a barge. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)]. Consequently, from the general nature of the damage, there would have been several areas of impact. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of

Marino,Section 4.2)]. This is consistent with the number of impact-like noises heard and barge observations by those in the area. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)].  Moreover, unlike other I-wall breaches that were examined, which revealed the f1oodwall remained in the ground and tended to settle and exhibit little concrete wall damage, the contrary was the case for the North and South Breaches. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino, Section 4.4)]. Moreover, several of these other I-wall breaches, where the protection level was reduced from tilting, contained significant washout of the levee on the inboard side from overtopping. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)]. At the time of failure, however, no overtopping would be expected at the North and South Breaches. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)].  The potential for significant seepage to result under the f1oodwall during the storm was assessed for both the North Breach and South Breach, and subsequently, seepage-induced instability was ruled out as a potential factor. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino, Sections 5.6.1 and 5.7.1)]. Based on the modeled conditions for both the North and South Breaches, it was determined that the permabilities of the subsoils are too low to allow surge seepage pressures to reach the earth on the supporting (protection) side during the limited time of the storm induced surge. [*Testimony of Marino*; *Plaintiffs' Exh. 397* (July 1, 2009 Report of Marino)].  Moreover, it is well established that impact by or contact with ING 4727 was sufficient to cause the eastern IHNC floodwall failures. [*Testimony of Pazos*; *Plaintiffs' Exh. 402; Testimony of Marino; Plaintiffs' Exh. 397*; *Testimony of Bartlett; Plaintiffs' Exh. 378; Plaintiffs' Exh. 252* (IPET Final Report Vol. IV (March 26, 2007), Technical Appendix 17, "Consideration of Wind-Induced Barge Motions and Associated Forces in the Inner Harbor Navigation Canal"); *Plaintiffs' Exh. 256* (National

Institute of Standards and Technology, Technology Administration, U.S. Department of Commerce (hereinafter "NIST"), Technical Note 1746, "Performance of Physical Structures in Hurricane Katrina and Hurricane Rita: A  Reconnaissance Report" (June 2006)); *Plaintiffs' Exh. 257* (NIST Technical Note 1746, "Performance of Physical Structures in Hurricane Katrina and Hurricane Rita: A Reconnaissance Report" (June 2006), Chapter 3, pp. 42-44); *Plaintiffs' Exh. 258* (NIST Technical Note 1746, "Performance of Physical Structures in Hurricane Katrina and Hurricane Rita: A Reconnaissance Report" (June 2006), Chapter 4, pp. 98-99)].

### Subsequent Flooding Caused By North and South Breaches

The IHNC North breach occurred at or before 4:30 a.m. CDT and the South breach occurred at or before 6:00 a.m. CDT on Monday, August 29, 2005. [*Testimony of Spinks*; *Plaintiffs' Exh. 421* (*Spinks Report*); *Plaintiffs' Exh. 424* (October 28, 2009 Declaration of Spinks)].   Witness accounts described the flooding to forceful and sudden, similar to tidal wave or tsunami. [*Testimony of Daniel Weber*; *Testimony of Terry Adams*].   Prior to 9:00 a.m. CDT, the North and South breaches along the IHNC floodwall accounted for over 90% of the total water in the Lower Ninth Ward and St. Bernard Parish. [*Testimony of Spinks*; *Plaintiffs' Exh. 421*]. After 9:00 a.m. CDT, the IHNC floodwaters and MRGO floodwaters combined to contribute to the maximum flood levels experienced in the Lower Ninth Ward and St. Bernard Parish during Hurricane Katrina. [*Testimony of Spinks*; *Plaintiffs' Exh. 421*].   Flooding resulting from the North and South Breaches in the East wall of the Industrial Canal was confined **(1)** on the *West* by the Industrial Canal, **(2)** on the *North* by the Public Belt or other Railway adjacent to and immediately north of Florida Avenue, and the east-west channel or canal extending from the aforesaid railway to Paris Road (Florida Walk Canal and Forty Arpent Canal), and (3) on the *South* by the Mississippi River. [*Testimony of Spinks*; *Plaintiffs' Exh. 421*].   Although water from

the MRGO levee breaches was *theoretically capable* of causing the massive flooding in the Lower Ninth Ward and St. Bernard Parish, *in reality*, the maximum level of flooding was achieved through a combination of waters from both the IHNC levee breaches and the MRGO levee breaches.  [*Testimony of Spinks*; *Plaintiffs' Exh. 421*].

### Damages of Plaintiff Josephine Richardson

Plaintiff Josephine Richardson was born on March 19, 1928. Joseph Richardson, Sr. was born on March 28, 1928. [*Plaintiffs' Exh.341* (Death Certificate of Joseph Richardson)]. Joseph Richardson, Sr. and Josephine Richardson were married on October 8, 1947. [*Plaintiffs' Exh. 320* (Marriage Certificate); *Testimony of Josephine Richardson*]. They purchased their home at 1321 Egania Street in the Lower Ninth Ward in 1954. [*Testimony of Richardson, Plaintiffs' Exh. 318* (Real Property Ownership Documents); *Plaintiffs' Exh. 319* (Real Property Ownership Documents); *Plaintiffs' Exh. 321* (Judgment of Possession)]. The property was paid-for in full at the time of Katrina, and owned entirely by Mr. and Mrs. Richardson. [*Testimony of Richardson, Plaintiffs' Exh. 318*; *Plaintiffs' Exh. 319*; *Plaintiffs' Exh. 321*]. They lived together at this residence at the time of Hurricane Katrina. [*Testimony of Richardson*]. The house was, leading up to Katrina, a single story, brick-faced, raised structure. [*Testimony of Richardson, Plaintiffs' Exh. 318*; *Plaintiffs' Exh. 319*; *Plaintiffs' Exh. 321*].

On August 28, 2005, Ms. Richardson left 1321 Egania and went to her brother"s home at 3800 Clermont Drive, New Orleans, Louisiana. [*Testimony of Richardson*]. Mrs. Richardson left because a prior hip injury would have caused difficulty if it was necessary to get Mrs. Richardson into the attic during the storm. [*Testimony of Richardson*]. Mr. Richardson remained at 1321 Egania to care for the property. [*Testimony of Richardson*]. Mrs. Richardson recalled her experiences in Hurricane Betsy, and expected that any flooding during Katrina

would be limited. [*Testimony of Richardson*]. To Mrs. Richardson" knowledge, Mr. Richardson was in good health. [*Testimony of Richardson*]. Mrs. Richardson believed that Mr. Richardson would be safe if flooding occurred. [*Testimony of Richardson*]. At around 11:30 Sunday night, August 28, 2005, she and Mr. Richardson spoke by telephone. [*Testimony of Richardson*].

Mrs. Richardson remained at safely at her brother"s home through Hurricane Katrina, as flooding at that location went only half-way up the house. [*Testimony of Richardson*]. Three days after the storm, the National Guard took Mrs. Richardson from 3800 Clermont to the Superdome, whereafter, she was transported to a shelter in Dallas, Texas, and then to Stone Mountain, Georgia, where Mr. and Mrs. Richardson's son, Jeffery Richardson, resided. [*Testimony of Richardson*].

The Richardson's 1321 Egania Street home was subjected to severe flooding which submerged the entire structure at the time leading up to Mr. Richardson's death. [*Testimony of Spinks*, *Plaintiffs' Exh. 421* (Spinks Report)]. Mr. Richardson's body was subsequently found in the attic of the Richardson 1321 Egania Street home. [*Testimony of Louis Colin*]. Mrs. Richardson learned this fact while in Stone Mountain, Georgia. [*Testimony of Richardson*]. Mr. Richardson"s Death Certificate, issued by the State of Louisiana and signed by Orleans Parish Coroner Dr. Frank Minyard on April 18, 2006, lists as causes of death "Hurricane Katrina related death," and "Asphyxia due to drowning." [*Plaintiffs' Exh.341* (Death Certificate of Joseph Richardson)].

"The cause of death, and the manner or mode in which the death occurred, as incorporated in the death certificate as provided in the Vital Statistics Laws, R.S. 40:32 et seq., filed with the division of vital records of the Department of Health and Hospitals, shall be the legally accepted cause of death, unless the court of the parish in which the death occurred, after a

hearing, directs otherwise." La. Rev. Stat. 33:1563 E(3). The Louisiana Supreme Court would agree with the Louisiana Third Circuit Court of Appeal in *Mckelvey v. DeQuincy*, 2007-604 (La.App. 3 Cir. 11/14/07); 970 So.2d 682, which reasoned, based upon the Louisiana Supreme Court"s holdings in *State v. Winzer*, 354 So.2d 533 (La. 1978); *State v. Trahan*,543 So.2d 984 (La.App. 3 Cir.1989), *rev'd on other grounds*, 551 So.2d 1303 (La. 1989); *State v. Outley*, 629 So.2d 1243 (La.App. 2 Cir.1993), *writ denied*, 94-410 (La. 5/20/94), 637 So.2d 476, that *prima facie* proof of cause of death is not limited in a civil case to an autopsy report, especially when corroborated by additional competent evidence. The cause of death identified by the Death Certificate, said Certificate bearing the State Registrar"s certificate that it was recorded in the Vital Registry records pursuant to La. Rev. Stat. 40:32, et seq, in the manner prescribed by La. Rev. Stat. 33:1563 E(3), is competent evidence of death, and its cause. This evidence, coupled with the undisputed fact that Mr. Richardson was found in the attic of a structure completely immersed by flooding, establishes the cause of death. The negligence of Lafarge North America, Inc. was the cause in fact and legal cause of all of Mr. and Mrs. Richardson"s damages subject of this action.

Survival Action Damages: Louisiana Civil Code article 2315.1 vests Mrs. Richardson with a cause of action for all damages to Mr. Richardson"s person and property. Under the "saving to suitors" clause codified at 28 USC § 1333 (1), state courts have concurrent jurisdiction with the admiralty jurisdiction of federal courts to entertain *in personam* claims based on maritime causes of action. *Offshore Logistics, Inc. v. Tallentire*, 477 U. S. 207, 222 (106 SC 2485, 91 LE2d 174) (1986).

Based on the facts above, Mr. Richardson was present to witness and experience the destruction of his immovable and movable property. Thus, Mrs. Richardson is entitled to Mr.

Richardson"s damages for his mental anguish caused by his having witnessed the destruction of his property. Such damages are available to property owners under Louisiana law when the owner is present or nearby and suffers psychic trauma as a result *Williams* v. *City of Baton Rouge*, 98-1981 (La. 4/13/99), 731 So.2d 240; *1900 Partnership v. Bubber, Inc.*, 27,475 (La. App. 2 Cir. 11/1/95), 662 So.2d 808, *writ denied*, 96-0037 (La. 2/28/96), 668 So.2d 369; *Freyou v. Iberia Parish Sch. Bd.*, 94-1371 (La. App. 3 Cir. 5/3/95), 657 So.2d 161; *Blache v. Jones*, 521 So.2d 530 (La. App. 4 Cir. 1988). "Although the plaintiff does not suffer contemporaneous personal injury or property damage, he or she nevertheless may recover for negligently inflicted emotional distress if the defendant's conduct placed the plaintiff in fear or concern for his or her safety.... [In] Louisiana ... an award is proper when the conduct is directed at the mental anguish victim and the circumstances show an "especial likelihood of genuine and serious mental distress." Cases in which a plaintiff fears for his personal safety or in which he watches his property destroyed probably are the most common." *Johnson v. First National Bank of Shreveport,* 00-870, at p. 21(La.App. 3rd Cir.6/20/01), 792 So.2d 33, 51,*writs denied*, 01-2770, 01-2783 (La.1/4/02), 805 So.2d 212, 213, 00-870 at p. 21,792 So.2d at 51 (quoting Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 5-8 at pp. 124-125 (1996)).

Mrs. Richardson is entitled to damages for Mr. Richardson"s pre-death physical and mental pain and suffering endured while in the attic of 1321 Egania. "Whether or not the estate can recover damages for pain and suffering should abide trial, there being no inflexible rule that where death occurs from drowning the period between accident and death is not sufficiently appreciable to afford a basis for the claim." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148 (1964). In cases involving drowning, the courts generally have required evidence of a struggle or other post-accident consciousness on the part of the decedent before awarding damages for his pain

and suffering prior to death. *See, e.g., Barton v. Brown (The Corsair),* 145 U.S. 335, 348, 12 S.Ct. 949, 36 L.Ed. 727 (1892); *Petition of United States Steel Corp., supra* at 1275-76; *Grantham v. Quinn Menhaden Fisheries, Inc.,* 344 F.2d 590 (4th Cir. 1965); *Davis v. Parkhill-Goodloe Co.,* 302 F.2d 489, 495 (5th Cir. 1962); *Gardner v. National Bulk Carriers, Inc.,* 221 F. Supp. 243, 246 (E.D.Va. 1963), *aff'd,* 333 F.2d 676 (4th Cir. 1964). Although eyewitness evidence is not necessary, there must be evidence supporting a finding that the decedent was conscious when drowned. *Cook v. Ross Island Sand and Gravel Co.,* 626 F.2d at 750; *Petition of United States Steel Corp.,* 436 F.2d 1256, 1276 (6th Cir. 1970). "There is dicta in *Davis v. Parkhill-Goodloe Co.* suggesting that evidence supporting consciousness must be "substantial," 302 F.2d at 495, but a more accurate statement of the rule is that there must be evidence to support a reasonable inference of consciousness." *Deal v. A.P. Bell Fish Co.*, 728 F.2d 717 (5th Cir. 1984). Cf. *Neal v. Barisich, Inc*., (E.D.La. 1989) 707 F. Supp. 862. The absence of evidence of a skull fracture in Mr. Richardson"s autopsy report establishes that he was conscious for a period sufficient for awareness of his impending death, and sufficient to permit his physical suffering. *Cook v. Ross Island Sand And Gravel Co*., 626 F.2d 746 (9th Cir. 1980).

Wrongful Death Damages: Louisiana Civil Code article 2315.2 vests Mrs. Richardson with a cause of action for the wrongful death of Mr. Richardson.

Mrs. Richardson's grief and loss associated with the death of her husband is evidenced by the fact that she was hospitalized twice in Georgia for physical symptoms caused by learning of Mr. Richardson's death. [*Plaintiffs' Exh. 339* (Certified Medical Records of DeKalb Medical Center, admission date of 9/27/05, 9/28/05, Richardson 000120 – 000170); *Testimony of Richardson*]. She is not only entitled to damages for her mental and physical suffering due to Mr.

Richardson"s death, but also to damages for lost service, support and society, and damages for her related medical expenses.

Mr. Richardson owned his own business, and was gainfully self-employed as a snack salesman at the time of his death. [*Testimony of Richardson*]. Mrs. Richardson is entitled to compensation for income lost as a result of his death. "A survivor may recover under DOHSA, the Jones Act and the general maritime law for the actual financial contributions the decedent would have made during his normal anticipated life span. *Sea-Land Services v. Gaudet,* 414 U.S. 573, at 584-85, 94 S.Ct. 806, 39 L.Ed.2d 9; *Davis v. Parkhill-Goodloe Co.,* 302 F.2d 489, 494 (5th Cir. 1962); *Petition of the United States,* 418 F.2d 264, 272 (1st Cir. 1969). The proper measure of damages for such loss of support is the reasonable pecuniary expectancy of each survivor over the remainder of the life expectancy of the decedent or the survivor, whichever is shorter. *The Complaint of Cambria Steamship Co.,* 505 F.2d 517 (6th Cir. 1974), *cert. denied,* 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975). In determining a reasonable expectancy, "a guide is set by determining first how much money the decedent would have had available, and how much of that sum he would have contributed to his beneficiaries." *In re Sincere Navigation Corp.,* 329 F. Supp. 652, 659 (E.D.La. 1971).

Mrs. Richardson also incurred $8978.69 in funeral expenses to bury her husband, Mr. Richardson. [*Plaintiffs' Exh. 342* (Funeral Expenses of Joseph Richardson); *Testimony of Richardson*].

Property Loss Damage: Mrs. Richardson is entitled to compensation for her own loses, including damage to, and loss and destruction of the property and contents at 1321 Egania Street.

Mrs. Richardson incurred expenses in effecting repairs to 1321 Egania, as well as in replacing lost contents. [*Testimony of Richardson*; *Plaintiffs' Exh. 338* (Home Inventory List); *Plaintiffs' Exh. 337* (Invoices, Receipts, Reports reflecting repair/replacement of 1321 Egania structure and contents); *Plaintiffs' Exhs. 323-336* (Interior/ Exterior Damage Photos)]. According to an appraisal by Peter Canizzaro of G&C Appraisers, properties comparable to Mrs. Richardsons" 1321 Egania Street property were valued in the range of $90,000.00 – $146,000.00 prior to August 28, 2005. [*Testimony of Peter Canizzaro* (C&C Appraisals); *Plaintiffs' Exh. 343* (G&C Appraisal Report)]. Mrs. Richardsons" 1321 Egania Street property was valued at $110,000.00 on August 28, 2005, prior to Katrina, compared to a value of $9500.00 one year later. [*Testimony of Peter Canizzaro*; *Plaintiffs' Exh. 343* ; *Testimony of Richardson*]. Mrs. Richardson is entitled to an award for depreciation of the value of 1321 Egania caused by Defendant"s conduct, and for repair and replacement costs of her immovable and movable property.

### Damages Plaintiff Holiday Jewelers Inc.

Plaintiff Holiday Jewelers, LLC is a Louisiana corporation organized in 1984. Jacob Robert Glaser and his wife, Dianne Glaser, are the sole shareholders of the corporation. [*Testimony of Jacob Robert Glaser*]. In the twenty plus years prior to Katrina, Holiday Jewelers, LLC operated as a retail jewelry business. [*Testimony of Glaser*]. The business was run entirely by Mr. And Mrs. Glaser, with the exception of Holiday season when a seasonal employee was brought on. [*Testimony of Glaser*].

Holiday Jewelers occupied a rented storefront, located in a strip shopping mall at 8400 West Judge Perez Drive. [*Testimony of Glaser*; Plaintiffs" Exh. 291]. The storefront was

approximately 1000 square feet. [*Testimony of Glaser*; Plaintiffs" Exh. 291]. Holiday Jewelers"
entire inventory was contained in the store. [*Testimony of Glaser*].

Mr. and Mrs. Glaser evacuated St. Bernard Parish on August 27, 2005, in advance of
Hurricane Katrina. [*Testimony of Glaser*]. After securing the jewelry store, the Glaser"s drove to
Daphne, Alabama, and later to Panama City, Florida. While in Florida, the Glaser"s learned of
the inundation of St. Bernard Parish, and the flooding of their business. [*Testimony of Glaser*].

The 8400 West Judge Perez Drive store was subjected to severe flooding, which
submerged the entire structure. [*Testimony of Spinks*, *Plaintiffs' Exh. 421* (Spinks Report)]. Upon
returning subsequent to Katrina, the Glaser"s discovered that floodwater had submerged the
store and all fixtures and inventory. [*Testimony of Glaser*; *Plaintiffs' Exhs. 296-315* (Damage
photos for Holiday Jewelers)]. Recovery of anything was impossible. [*Testimony of Glaser*;
*Plaintiffs' Exhs. 296-315*].

Mr. Glaser has estimated that the loss of inventory, furniture, equipment and fixtures
exceeded $250,000. [*Testimony of Glaser*; *Plaintiffs' Exh.292* (Contents Inventory for Holiday
Jewelers)]. Other losses included the loss of over 8000 customer contact information contained
within the business" computer. [*Testimony of Glaser*].

The Glaser"s relocated to St. Tammany Parish, and have not reopened the Jewelry
business. [*Testimony of Glaser*]. John W. Theriot, CPA, undertook a calculation of lost profits.
After reviewing the business and tax records of the Glaser"s and Holiday Jewelers, Mr. Theriot
concluded that Holiday Jewelers had lost an average of $44,264.71 for calendar years 2005
through 2011. The total lost profit after discounts through December 31, 2011 was $309,854.
[*Testimony of Glaser; Testimony of Theriot; Plaintiffs' Exh. 293* (Business Income Records for
Holiday Jewelers)].

Holiday Jewelers, LLC is entitled to recover from Defendants, as a consequence of their negligence, the following damages: $250,000 loss of inventory, tools, equipment, and fixtures; $150,000 loss of client contact information; $309,845 lost profit 2005 through 2011.

### Damages of Plaintiffs John and Jerry Alford

Mrs. Jerry D. Alford, and Mr. John Alford, Jr. are a married couple with five grown children. [*Testimony of Jerry Alford*; *Testimony of John Alford, Jr.*]. Leading up to Katrina, Mr. and Mrs. Alford resided at a single family residence located at 2423 Deslonde Street, New Orleans, Louisiana. [*Testimony of Jerry Alford*; *Testimony of John Alford, Jr.*; *Plaintiffs' Exh. 274*]. Mr. and Mrs. Alford purchased the 2423 Deslonde Street home on August 27, 1981, as joint owners under their community estate, for the price and sum of $29,000. [*Testimony of Jerry Alford*; *Testimony of John Alford, Jr.*; *Plaintiffs' Exh. 275* (Real Property Ownership Documents)]. The Alfords raised their children in the family home. [*Testimony of Jerry Alford*; *Testimony of John Alford, Jr.*].

At the time of Hurricane Katrina, Mrs. Alford was sixty years of age and was employed as a desk clerk at the St. Marie Hotel on Toulouse Street in the French Quarter. [*Testimony of Jerry* Alford]. Mrs. Alford has been employed at that hotel and the Embassy Suites Hotel as a desk clerk for an uninterrupted period of twenty-eight years. [*Testimony of Jerry* Alford].

At the time of Hurricane Katrina, Mr. Alford was sixty-four. [*Testimony of John Alford, Jr.*]. He retired in 1991 due to disability from a surgically repaired lumbar defect. [*Testimony of John Alford, Jr.*].

Prior to Katrina, on Saturday August 27, 2005, Mrs. Alford and her husband, packed food and clothing in anticipation of moving to the St. Marie Hotel, as the hotel had a policy of

providing rooms to their employees during hurricanes. [*Testimony of Jerry D. Alford; Testimony of John Alford*]. Mrs Alford went to work on Sunday, August 28, 2005, at approximately 7:00 a.m., and her husband went to the hotel at approximately 10:00 a.m. on the same day. [*Testimony of Jerry D. Alford*; *Testimony of John Alford*]. However, on Sunday afternoon the Alfords decided to go to Mississippi because of deteriorating weather conditions, leaving the hotel at about 6:00 p.m. [*Testimony of Jerry D. Alford*; *Testimony of John Alford.*]. The Alfords resided in Mrs. Alfords" parent"s home for approximately one month, contributing $300 for room and board. [*Testimony of Jerry D. Alford*; *Testimony of John Alford.*]. Thereafter, the Alfords moved in with their granddaughter in Algiers so that Mrs. Alford could continue her employment with the hotel, continuing their payment of $300 per month toward room and board. [*Testimony of Jerry D. Alford*; *Testimony of John Alford*].

The Alford's 2423 Deslonde Street home was subjected to severe flooding, with floodwaters reaching the roof line of the structure. [*Testimony of Spinks*, *Plaintiffs' Exh. 421* (Spinks Report)]. As a result, the Alford home and all of its contents, including a lifetime of mementos and two family dogs, were destroyed. [*Testimony of Jerry D. Alford*; *Testimony of John Alford; Plaintiffs' Exh.276* (Contents Inventory); *Plaintiffs' Exh. 277-289* (Damage Photos)]. The remains of the irreparable house and its unrecoverable contents were demolished and removed by the City of New Orleans and only a vacant lot and memories remain. [*Testimony of Jerry D. Alford; Testimony of John Alford*]. The replacement value of the family home was appraised at $105,851.11. [*Testimony of Peter Canizzaro* (C&C Appraisals); *Plaintiffs' Exh. 290* (appraisals and reports and attachments of G&C Appraisals)]. The replacement value of the contents of the family home, including the lost mementoes and the two family pets, are estimated at $40,000. [*Testimony of Jerry D. Alford; Testimony of John Alford; Plaintiffs' Exh..276*].

Moreover, Mrs. Alford suffered a post traumatic stress disorder secondary to the loss of the family home, pets, and mementoes, and her displacement for over three years necessitating medical intervention and pharmacological management for which she and her husband are entitled to recover damages. [*Testimony of Jerry D. Alford; Testimony of John Alford.*].

The Alfords are entitled to recover of Defendants, as a consequence of their negligence, the following damages to wit: $145,851.11 property damage; $11,100 substitute residence; Mrs. Alford $7,500.00 for mental anguish and Mr. Alford $3,000 for mental anguish secondary to his wife's emotional trauma and the effects thereof.

### Punitive Damages

There can no longer be doubt that punitive damages are an available remedy under general maritime law. *Atlantic Sounding Co., Inc. v. Townsend*, __ U.S. __, 129 S.Ct. 2561, 2569, 174 L.Ed.2d 382 (2009), a maritime claim involving bad faith failure to provide maintenance and cure, stated: "The settled legal principles discussed above establish three points central to resolving this case. First, punitive damages have long been available at common law. Second, the common-law tradition of punitive damages extends to maritime claims." (Footnote omitted.) *Exxon Shipping Co. v. Baker*, __ U.S. __, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008), a general maritime law negligence case, held that the ratio of punitive to compensatory damages should be no greater than 1:1 where the compensatory-damages award exceeded half a billion dollars.

*Atlantic Sounding* did not describe the standard to be used for punitive-damage claims, but held that such damages should be available "for the willful and wanton disregard of the maintenance and cure obligation." 129 S.Ct. at 2574. In *Exxon Shipping Co.*, the Court was evenly divided over whether the reckless acts of its managerial employees could expose the

defendant to punitive damages, so this must be regarded as an open question.  128 S.Ct. at 2616.

Thus, the punitive-damages claim should remain so that retrial can be avoided.  *Rogers v.*

*Resolve Marine*, 2009 WL 2984199 (E.D.La. Sept. 11, 2009) (No. CIV.A. 09-4141) (Barbier, J.).

The general Federal rule is that punitive damages are available "when the defendant's

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983)

(§ 1983 case).

The failure to secure the barge, as shown by eyewitness testimony that it was drifting free

in the IHNC the day before Hurricane Katrina hit New Orleans, showed reckless conduct and

callous indifference to the rights of plaintiffs under the general maritime laws.

### Insurance Coverage[2]

In view of the Court's orders dated August 29, 2008 and October 9, 2008, it is understood

that the Bellwether trial scheduled to commence on June 21, 2010 will be limited in scope to a

determination of legal causation, fault, and damages with respect to specific claims asserted by

John and Jerry Alford, Josephine Richardson and Holiday Jewelers, Inc. against Lafarge North

America Inc.  Primary and Excess Insurance coverage issues framed by the pleadings will be

addressed after the Bellwether trial at such time that the Court deems appropriate.  All parties

respectfully reserve all of their rights and/or defenses with respect to the adjudication of such

coverage issues.

**b.     LNA:**

---

[2] Please note that after the Barge Litigation Track lawsuits were commenced, Lafarge North America, Inc., until such time traded publicly on the New York Stock Exchange, was optioned and acquired in its entirety by its French parent, The Lafarge Group, S.A.  This acquisition was accomplished through one or more shell corporations through which the assets and/or purchase funds were channeled to the French parent.  Its stock is no longer traded in the United States after 2006, and the location of its former and present assets are in question.  These machinations, coupled with disputed insurance coverage, result in issues which are unresolved at this time.

As LNA explained in its pre-trial brief (Doc. 19653), the barge ING 4727 had nothing to do with either breach of the eastern IHNC floodwall.  After Hurricane Katrina, the barge ended up inside the Lower Ninth Ward after it was sucked through the southernmost end of the already-formed IHNC South Breach.   Plaintiffs' case consists of a combination of equivocal, inconsistent, and impossible fact witness testimony, and speculation by expert witnesses, in order to try to prove something that simply did not happen.  Because this case hinges largely on the testimony of expert witnesses, below we have explained how expert testimony supports each of LNA's major defenses in this action.

<u>LNA acted reasonably in securing the barge for the storm.</u>  LNA will show that it exercised reasonable care in the handling of ING 4727 prior to Hurricane Katrina.  LNA's terminal personnel took a number of steps to minimize, to the extent possible, the chance that the barge would break free during the hurricane, including (a) completely unloading the barge because, at the time LNA learned that the storm had changed course and that New Orleans was in its projected path, the barge was partially unloaded and sitting unbalanced in the water; (b) adding and replacing mooring connections to increase their strength by more than double; and (c) mooring the barge using polypropylene line and not cable, which increased the strength of the connections and allowed the barge to rise with the storm surge and thereby reduced the chance of a breakaway.

LNA could not have moved the barge out of the IHNC after it learned that the storm was approaching New Orleans because, although LNA tried to contact Zito Fleeting Company to remove the barge, Zito did not answer the call and, in any event, had stopped accepting new traffic into its fleet on the morning of August 27, 2005.  LNA then contacted Joseph Domino Towing to arrange for the barges to be "topped around" such that the ING 4727 (which was

empty) would be further from the dock, and the ING 4745 (which was loaded and tied to the ING 4727) would be next to the dock.  That was done in order to minimize the chance that the lighter barge would ride up over the dock and potentially cause it to become separated from the outboard loaded barge, allowing both to break free.

There were no other actions that LNA could have taken to prevent the barge from breaking away during the hurricane; indeed, many, many barges, boats, and other vessels, moored in a variety of ways with a variety of materials, broke from their moorings during the storm.  The actions that LNA did take, however, were reasonable and prudent under the circumstances.  LNA therefore did not act negligently.

LNA will show that its storm preparations were appropriate through testimony from individuals who were involved in securing the barge, and also from the testimony of the following expert witnesses:

- *D. Philip Skaer II* of Ropetech, Inc., who has 45 years of experience with wire, synthetic, and natural fiber ropes, will testify that the type of synthetic rope that LNA used to tie up the barge was used industry wide and was proper under the circumstances, and was superior to wire rope, which would have been less likely to prevent the barge from breaking free and would have been impractical under the circumstances.

- *Capt. Larry E. Strouse*, a professional marine surveyor, will testify that LNA adequately and properly secured ING 4727 prior to Hurricane Katrina, and that ING 4727 was one of hundreds of barges, boats, and vessels that were adequately moored but nonetheless broke free due to the strength of the storm.

- *Daniel F. Ryan II, PE*, who spent thirty-four years as a Coast Guard Captain, most of it in marine safety, security and environmental protection, will testify concerning LNA's compliance with U.S. Coast Guard recommendations regarding hurricane preparation and the mooring of barges.

### The barge was not present at the eastern IHNC floodwall when the breaches occurred.

LNA will also show that the barge did not cause either breach of the eastern IHNC floodwall because the barge was not present at the floodwall when either breach occurred.  The scientific

evidence, including the meteorological data, will show that there was no force acting on the barge that could have moved it in the direction of the eastern IHNC floodwall before the breaches occurred. In particular, a barge with a sail area of 20 feet would have been heavily influenced by the direction of the prevailing wind, which at all relevant times would have pushed the barge *away from* the eastern IHNC floodwall. Plaintiffs have belatedly tried to apply unscientific meteorological theories to speculate as to how the barge might have moved counter to the prevailing wind, none of which holds up upon any real scrutiny.

LNA will offer expert testimony from two individuals on these issues:

- *Dr. Austin Dooley* of Dooley SeaWeather Analysis, Inc., will testify that based on the application of scientific principles (including that hurricane winds blow counterclockwise around the center of the storm), an official hindcast, and local observed weather data, the winds in the IHNC were blowing away from the east floodwall and away from the breaches prior to the hurricane's passage and that there was no wind with a component from the west until after 7:45 a.m. CDT on the morning of August 29, 2005.

- *Leslie R. Lemon* is a research meteorologist at the Warning Decision Training Branch, a division of the National Weather Service (NWS)/National Oceanographic and Atmospheric Administration (NOAA), and has over forty years of experience studying severe storms. He will testify that the Doppler radar data from August 29, 2005, show that the wind direction at the IHNC prior to the occurrence of the breaches was from the northeast and would have tended to move the barge away from the eastern IHNC floodwall. He will further testify that there were no super cells, mesocyclones, microburst winds, or winds with multidirectional winds at the IHNC on the morning of August 29 and that even if these phenomena had been present, the wind direction at the Canal would not change.

The barge could not have caused the breaches. LNA will show at trial that even if the barge had impacted the eastern IHNC floodwall, it would have damaged only the concrete cap on the floodwall and would not have deflected the sheetpile supporting the floodwall. Further, there is no physical evidence that the barge impacted either breach site before the breaches occurred. The only evidence of a barge impact is that the barge struck, and went through, the southern end

of the already-formed South Breach.

In support of these facts, LNA will offer testimony from the following expert:

- *Dr. Charles Cushing* has for over 40 years been the President of C. R. Cushing & Co., Inc., a firm of naval architects, marine engineers, and transportation consultants.  Dr. Cushing will testify that a barge impact with the floodwall would not dislodge the deeply-embedded sheetpile, and that the markings on the barge itself show that the barge entered the Lower Ninth Ward through the southern end of the already-formed South Breach and did not impact the floodwall in any other area.  He will also testify that at all relevant times, neither wind, current, nor waves could have moved the barge toward the North or South Breach sites.

The breaches were not caused by a barge impact with the floodwall.  LNA will also offer evidence showing that the breaches occurred because of a combination of factors that had nothing to do with a barge impact, and that the breaches would have occurred even if the barge had remained moored at LNA's terminal.  In particular, the North Breach occurred because of (a) the formation of a gap between the canal side levee and the sheet pile leading to added hydraulic pressure and seepage; (b) inadequate soil foundation at the levee toe; (c) failure of the sheet pile at a transition point near the Florida Avenue Bridge, where there was a strength differential between two sections and a faulty field weld connecting them; and (d) underseepage and hydraulic uplift effects caused in part by sand-filled excavations in the vicinity of the floodwall at the North Breach site.  The South breach occurred because of (a) the formation of a gap leading to increased hydrostatic pressure on the floodwall; (b) overtopping and severe scouring of the landside soils leading to loss of soil support; (c) variations from straight-line wall alignment creating weak points coinciding with the limits of the breach; (d) variations in subsoil conditions causing the area of the South Breach to have a lower wall top elevation; and (e) sand-filled excavations that exacerbated seepage and hydraulic uplift.

These facts are supported by the testimony of the following experts:

- *Dr. Robert G. Bea* was the co-leader of the Independent Levee Investigation

Team (ILIT) and has spent well over 10,000 hours conducting forensic engineering studies of the breaches, failures, and gaps in the hurricane flood protection system that led to the catastrophic flooding of Greater New Orleans during and after Hurricane Katrina. He will testify about the causes of the North and South Breaches; that the barge ING 4727 could not have caused either breach; and that the barge did not arrive at the location of the South Breach until after that breach had already occurred.

- *Dr. Reda Bakeer*, a professor in the Department of Civil and Environmental Engineering at Tulane University for over 20 years, has done a geotechnical analysis of the IHNC floodwall breaches. Dr. Bakeer will testify that the breaches occurred at the weakest links in the floodwall due to unique features of the soil and floodwall at these locations without any involvement by a barge. He will also testify that he performed an analysis which shows that the floodwall, as designed, fails during the surge conditions experienced during Hurricane Katrina.

- *Dr. G. Paul Kemp* was the primary drafter of the Team Louisiana report. He will testify concerning that group's conclusion that the barge did not cause either IHNC floodwall breach.

- *Dr. Joseph N. Suhayda* is the Interim Director of the LSU Hurricane Center. He will testify concerning hydrologic issues relating to Hurricane Katrina, and explain why the flood modeling by plaintiffs' expert Melvin Spinks cannot show either the timing of either IHNC floodwall breach or the water levels at plaintiffs' properties.

- *Dr. Jason Weiss* is the associate head of the School of Civil Engineering at Purdue University. He will testify concerning the acoustic properties of failing concrete, and in particular that the "boom"-like sounds that various witnesses in the Lower Ninth Ward reported hearing were likely caused by the failures of the floodwall itself, not from the impact of a barge with the floodwall.

Plaintiffs' damages are limited. Finally, LNA will show that even if plaintiffs could prove their claims against LNA, plaintiffs can recover little or no damages. The Alfords and Ms. Richardson are seeking to recover for their property damages, but they have already been fully compensated for those losses by the substantial payments that they received from the Road Home program and from wind damage payments that they received from their insurance companies. Ms. Richardson is also seeking to recover damages arising out of the death of her husband, who allegedly drowned in their attic, but the evidence will show that the floodwaters

from the IHNC never reached that high.  Plaintiff Holiday Jewelers Inc. seeks to recover its alleged lost profits, but it was not a profitable business before the storm and there is no reasonable certainty that it would have made a profit after the storm.  It therefore cannot recover any alleged lost profits.

LNA will support these points with the testimony from two experts:

- *Dr. Wade R. Ragas* is the preeminent real estate appraiser in the New Orleans area.  He will be providing testimony concerning the value of the Alford and Richardson properties both before and after the storm, and the increase in the value of their real estate holdings after the storm on account of payments they have already received for their property damages.

- *Dr. Kenneth J. Boudreaux* is a professor of economics and finance Tulane University.  He will testify that Holiday Jewelers Inc. was not a profitable business before Hurricane Katrina and was not likely to be profitable after the storm.

For these reasons, and others that LNA detailed in its Pre-Trial brief, LNA will show at trial that the barge did not cause the IHNC floodwall to fail, and LNA is not liable for negligence.

## 7.    UNCONTESTED MATERIAL FACTS

### a.  Plaintiffs:

1. The Inner Harbor Navigational Canal (IHNC)/Industrial Canal is a navigable waterway of the United States.

2. Lafarge North America operates the cement distribution facility on the INHC.

3. The barge, ING 4727, is a vessel more fully described as follows:

   | Type: | Hopper |
   | Length: | 200 feet |
   | Width: | 35 feet |
   | Height: | 12 feet (without covers) |

4. At all pertinent times the ING 4727 was owned by Ingram Barge Company (notwithstanding any bailment, and/or interest acquired or held by Lafarge).

5. The ING 4727 and 4745 were loaded with cement by LNA at its facility in Joppa, IL.

6.   ING 4727 was diverted from Westlake to New Orleans;

7.   The Lafarge distribution facility on the IHNC was at the time of diversion of the barges undergoing a stock shortage of H-grade cement.

8.   The ING 4727 and 4745 were delivered to the Zito Fleet on the Mississippi River.

9.   After delivery to the Zito Fleet, the ING 4727 and 4745 were delivered to the LNA facility on the IHNC on August 26, 2005 at around 12:00 p.m.

10.   Lafarge completed unloading operations of the ING 4727 at around 9:00 a.m. on Saturday, August 27, 2005.

11.   At around 10:00 a.m. on Saturday, August 27, 2005, Lafarge assistant terminal manager, Ed Busch, telephoned Joe Domino, Inc./Unique Towing to have the ING 4727 and ING 4745 "topped around."

12.   At the request of Joe Domino, Inc., the M/V Regina H was dispatched to the IHNC facility to top the barges around.

13.   The M/V Regina H completed this task at around 14:25 (2:25 p.m.).

14.   At around noon, Lafarge evacuated its facility on the IHNC.

15.   At all pertinent times, the following were employees of Lafarge North America, acting within the course and scope of the employment:

> Ed Busch
> Earl Smith
> Roland Johnson
> Louis Robin
> Annette Gaskin
> Rachel Burnett-Mays

16.   At all pertinent times, the following were employed by Unique Towing, Inc. as crew of the M/V Regina H, acting within the course and scope of the employment.

> Captain – Raymond Grabert
> Deckhand – Eric Thigpen

17.   Lafarge did not ask Joseph C. Domino, Inc. or Unique Towing to add any mooring lines between ING 4727 and ING 4725;

18.   Mr. and Mrs. John and Jerry Alford were married, and owned community property bearing municipal address 2423 Deslonde, New Orleans, LA at the time of the storm.

19. Josephine Richardson owned the property bearing municipal address 1321 Egania, New Orleans, LA at the time of the storm.

20. Holliday Jewelers, Inc. had its place of business at municipal address 8400 West Judge Perez, Chalmette, LA at the time of the storm.

21. The testimony of Plaintiff's trial witness Tommy Duplessis is as follows:

> Tommy Duplessis is an adult and of sound mind;

> Tommy Duplessis was at the time of Katrina a St. Bernard Parish Sheriff's Deputy;

> Tommy Duplessis was present at the St. Bernard Parish Courthouse on the morning of August 29, 2005;

> Tommy Duplessis filmed the video footage referred to previously in this litigation as the "Gutierrez video," and described by Sal Gutierrez in his February 28, 2008 deposition in this litigation as having been filmed by Tommy Duplessis;

22. The Tommy Duplessis St. Bernard Courthouse video is authentic.

**b. LNA:**

1. The plaintiffs in this case are three individuals, John and Jerry Alford and Josephine Long Richardson, and a corporation, Holiday Jewelers, Inc.

2. The IHNC provides a connection between the Mississippi River at its southern end and Lake Ponchartrain 5.8 miles to the north.  The southern half of the IHNC, approximately between the Florida Avenue Bridge and the Mississippi River, separates the city to the west from the Lower Ninth Ward to the east.  The IHNC is oriented in a roughly north-south direction.

3. The IHNC is bisected by Reach 1 of the Mississippi River – Gulf Outlet ("MRGO"), which enters the IHNC at a point just above the Florida Avenue Bridge.

4. The Lafarge North America cement terminal ("LNA Terminal") is located on the west side of the IHNC, between the Florida Avenue Bridge and the Claiborne Avenue Bridge.

5. The LNA Terminal serves as a distribution point for the company's cement products. Cement products arrive at the terminal by barge and are unloaded into silos for distribution by truck to LNA customers in the region.

6. To be delivered to the LNA Terminal for unloading, barges must pass through the IHNC lock from the Mississippi River. LNA does not have its own tugs at the terminal, and thus it relies on fleeting services to deliver full barges and to remove empty barges after they have been unloaded. Once the barges are unloaded, they must again pass through the IHNC lock to the Mississippi River upon retrieval by the fleeting service.

7. Upon unloading a barge, LNA terminal personnel call the relevant fleeting service to "release" the barge for pickup.

8. During the period in question, LNA had a Transportation Agreement with Ingram Barge Company ("Ingram") to deliver LNA's cement products to the LNA terminal via barge from its production facility in Joppa, Illinois. Ingram employed Zito Fleeting Company to receive barges at its fleet in the Mississippi River, deliver them to the LNA Terminal, and then retrieve empty barges from the LNA Terminal and return them to the fleet, where they would be held before moving on to their next destination. Zito was the only designated fleeting service for delivering Ingram barges to the LNA Terminal and for retrieving them after unloading and fleeting them pending their next assignment by Ingram.

9. The Barge ING 4727 arrived at the LNA Terminal, laden with cement, at approximately 12:20 p.m. CDT on August 26, 2005, together with another loaded barge, the ING 4745. The two barges were delivered by Zito on behalf of Ingram, which owned both barges.

10. At the time the two barges arrived at the LNA Terminal, there were five loaded barges moored in a tier at the dock immediately to the north of the unloading apparatus where the ING 4727 and ING 4745 were docked.

11. Upon its delivery to LNA, the ING 4727 was tied up with two strands of 4.5-inch circumference (1.5-inch diameter) polypropylene line, both of which had previously been in use.

12. LNA personnel began to unload the ING 4727 upon its arrival at the LNA Terminal. Unloading continued throughout the afternoon of August 26, and into the next morning.

13. LNA's Terminal personnel completed the unloading of ING 4727 on Saturday morning, August 27.

14. At the southern end of the protected slip where the LNA Terminal is located, there is a gantry shed that projects over the water.

15. ING 4727 was a hopper barge with no motor or other means of self-propulsion.

16. ING 4727 required an external force to propel it from the west side to the east side of the IHNC.

17. ING 4727 was over twenty feet high from top to bottom (including hatch covers).

18. In the northern hemisphere, the counterclockwise cyclonic motion of a hurricane means that the area of low-pressure (the eye of the storm) is to the left of a person standing with his back to the wind.

19. The eye of Hurricane Katrina did not pass through the latitude of New Orleans and the IHNC until after 8:00 a.m. CDT on the morning of August 29, 2005.

20. The IHNC below the Florida Avenue Bridge was a "closed system" in the sense that the lock at its southern end prevented the flow of water to or from the Mississippi River.

21. The levee and floodwall structure protecting the Lower Ninth Ward extends along the eastern shore of the southern section of the IHNC and is part of the 320 miles of levees and floodwalls protecting the New Orleans and surrounding areas. The IHNC levee and floodwall extends from the Florida Avenue Bridge in the north to the Claiborne Avenue Bridge and the lock system to the south. It runs parallel to Jourdan Avenue in the Lower Ninth Ward.

22. The levee system along the IHNC consisted of an earth embankment with a crest of approximately 7.5 feet according to the North American Vertical Datum of 1988 (NAVD-88) and side slopes of 2.4:1 and 2.8:1 on the land and water side, respectively. The elevation of the levee toe decreased toward Florida Avenue.

23. On the morning of August 29, 2005, two breaches occurred in the floodwall on the east side of the IHNC.

24. The IHNC "North Breach" occurred just south of the Florida Avenue Bridge, at a location to the north and east of the Lafarge Terminal and on the opposite side of the IHNC from the terminal.

25. The North Breach occurred at a location of structural discontinuity between deeper and longer I-wall sheet piles on the north side of the breach and shorter I-wall sheet piles within the displaced section of the breach.

26. The IHNC "South Breach" occurred closer to the Claiborne Avenue Bridge, at a location to the south and east of the Lafarge Terminal and on the opposite side of the IHNC from the terminal.

27. The barge passed through the floodwall at the extreme southern end of the South Breach, at a location where bent rebar was found which matched scratches found in the bottom of the barge.

28. The North Breach was approximately 215 feet in length.

29. The South Breach was more than 800 feet in length.

30. The distance from 2604 Deslonde Street to the location of the South Breach is over 2950 feet.

31. Civil twilight was at 6:11 a.m. CDT and sunrise was at 6:36 a.m. CDT on the morning of August 29, 2005.

32. The earthen levees along MRGO Reach 2 protect the same area ("polder") as the floodwalls on the east side of the IHNC.

33. After Hurricane Katrina, the Alfords received a wind damage insurance payment in the amount of $27,796.

34. After Hurricane Katrina, the Alfords received funds from the Road Home program in the amount of $120,000 for flood damage.

35. After Hurricane Katrina, Mrs. Richardson received a wind damage insurance payment of $10,489.71.

36. After Hurricane Katrina, Mrs. Richardson received funds from the Road Home program in the amount of $119,010 for flood damage.

**8.     CONTESTED ISSUES OF FACT**

**a.     <u>Plaintiffs</u>**

1.     Organizational structure and ownership of Lafarge North America, Inc.;

2.     Whether, and at what point in time, LNA knew or should have known of Hurricane Katrina's projected path and forecasted strength;

3.     Whether LNA knew or should have known of Hurricane Katrina's potential for storm surge, wind, or other water and weather effects;

4.     Whether LNA knew or should have known that a Hurricane Katrina's effects could cause a vessel to breakaway;

5.     Whether LNA knew or should have known that a breakaway vessel could cause damages to persons and property;

6.      Whether LNA breached a duty to prevent entry of ING 4727 into the IHNC;

7.      Whether LNA breached a duty to prevent unloading of ING 4727;

8.      Whether LNA breached a duty to ballast or scuttle ING 4727;

9.      Whether LNA breached a duty to moor ING 4727;

10.     Whether LNA breached a duty to not moor ING 4727 abreast of another barge;

11.     Whether LNA breached a duty not to moor an empty barge to a full barge;

12.     Whether LNA violated any of its own policies relative to mooring ING 4727;

13.     Whether LNA had in effect adequate policies concerning mooring of ING 4727;

14.     Whether LNA violated 33 CFR 162.75 (b)(3)(ii);

15.     Whether LNA violated 33 CFR 6.19;

16.     Whether LNA implemented United States Coast Guard Recommended
        Policies and Procedures including without limitation the US Coast
        Guard Sector New Orleans, Hurricane Plan;

17.     Lafarge North America, Inc. was custodian of ING 4727 at 72 hours, 48 hours, 24
        hours, and 12 hours before Hurricane Katrina's projected landfall.

18.     Whether LNA undertook reasonable measures to prevent ING 4727
        from leaving its berth, and/or from causing damages to persons and
        property;

19.     Whether LNA could have reasonably prevented ING 4727 from leaving
        its berth;

20.     Foreseeability of barge breakaway, allision or collision, damage to or
        destruction of  IHNC floodwall, damages sustained by plaintiffs;

21.     Whether ING 4727, under the conditions then extant, was physically
        able to cause the Northern and/or Southern IHNC eastern floodwall
        breaches;

22.   Whether ING 4727 was a substantial cause of one or both eastern IHNC floodwall breaches;

23.   Timing, source, direction and location of IHNC floodwaters affecting plaintiffs;

24.   Whether floodwater from one or both eastern IHNC floodwall breaches was a substantial cause of any damages to the plaintiffs;

25.   Personal and property damages and/or losses sustained by plaintiffs;

26.   Indistinguishability/non-differentiation of floodwaters at plaintiffs' locations;

27.   Whether LNA, directly or through its attorneys or agents, has exerted any undue influence over the accounts or testimony of fact witnesses;

28.   Role and activities of Centanni Investigative Agency, to the extent not privileged and/or to the extent privilege is waived pursuant to orders of the Court;

29.   Credibility of fact and expert witnesses;

30.   Nature and existence of any policies of insurance issued to LNA (reserved for later proceedings in accord with the Court's August 29, 2008 and October 9, 2008 Orders);

31.   Whether LNA was wanton, reckless, and/or callously indifferent to the federally protected rights of others;

32.   Any and all others inherent in the facts, law, and proof adduced.


**b.**     **LNA**


**i.**     **Disputed facts.**


1.   Whether, at the time LNA terminal personnel began to unload the ING 4727, Hurricane Katrina was projected to strike the New Orleans area.

2.   Whether the United States Coast Guard issued the first of its port condition alerts for the New Orleans area ("Port Condition WHISKEY") after 10:00 p.m. on August 26.

3.   Whether LNA's terminal personnel took reasonable safety precautions in securing the ING 4727 for Hurricane Katrina.

4.   Whether there are any witnesses to the breakaway of the ING 4727 from the LNA

Terminal.

5. Whether there was anything LNA could have done that would have prevented the ING 4727 from breaking from its moorings during Hurricane Katrina.

6. Whether prior to the breakaway of the ING 4727, LNA had experienced any breakaway barges from its New Orleans terminal.

7. Whether hundreds of barges broke away from their moorings under the force of wind during Hurricane Katrina.

8. Whether numerous barges broke away from their moorings during Hurricane Katrina even though they had been secured with both soft ropes and/or wire cable.

9. The Coast Guard issued its alert for "Port Condition XRAY," directing that port operations be shut down in anticipation of the storm's arrival, on August 28.[3]

10. Whether the ING 4727 broke from its moorings at LNA's IHNC terminal under heavy winds and storm surge on August 29, 2005, or during relatively calm weather conditions prior to the storm.

11. Whether the LNA Terminal is located in a protected "inset" away from the main channel of the IHNC, and this protected inset is about 1200 feet long (north-south) and 850 feet wide (east-west).

12. Whether the gantry shed projecting over the water at the southern end of the protected slip where the LNA Terminal is located would have prevented the ING 4727 from entering the IHNC if it had broken away during the early morning hours of August 29.

13. Whether at the southern end of the IHNC, a lock system lifts vessels from the IHNC to the Mississippi River, and because of the lock system, there is no direct hydrologic connection between the IHNC and the Mississippi River.

14. Whether the prevailing wind was the primary force acting upon the ING 4727.

15. Whether at all relevant times before the IHNC floodwall breaches occurred, the prevailing wind was blowing in a direction towards the west side of the IHNC and away from the eastern IHNC floodwall.

16. Whether there was any significant current in the IHNC during Hurricane Katrina.

17. Whether any current in the IHNC during Hurrricane Katrina would have moved the ING 4727 from the LNA Terminal to either breach site before the breaches occurred.

---

[3] Plaintiffs dispute this fact on the basis of a Coast Guard advisory pertaining to a *different* warning stage ("Port Condition Whiskey").  LNA believes there is no legitimate grounds for dispute on this issue.

18. Whether wave heights in the IHNC during Hurricane Katrina were approximately 1-3 feet before 5:30 a.m. CDT on August 29, 2005, and two to three feet after that.

19. Whether there were 20-foot waves in the IHNC during Hurricane Katrina.

20. Whether the waves in the IHNC during Hurricane Katrina propagated in the direction of the prevailing wind.

21. Whether the waves in the IHNC during Hurricane Katrina could have moved the ING 4727 across the canal or caused it to come into contact with the eastern IHNC floodwall.

22. Whether the eastern IHNC floodwall derived its strength from the supporting soils into which the sheet pile was embedded and anchored; the failures that occurred at the North Breach and South Breach required a failure in the soil into which the steel sheet pile was sunk; and the floodwall failed when it lost the support of the soils on the protected side of the floodwall.

23. The time that the North Breach initiated, and the period of time that it took for the breach to fully form.

24. Whether the ING 4727 contacted the eastern IHNC floodwall at the North Breach site at any time.

25. Whether the ING 4727 contacted the eastern IHNC floodwall at the North Breach site before the breach occurred.

26. Whether the North Breach occurred for reasons that had nothing to do with the presence of a barge.

27. Whether there was damage on the barge consistent with an impact at the site of the North Breach.

28. Whether there was any damage at the site of the North Breach that could be uniquely associated with impact from a barge.

29. The time that the South Breach initiated, and the period of time that it took for the breach to fully form.

30. Whether the South Breach initiated at the location of the larger "bow" section within the breach, centered approximately on North Johnson Street.

31. Whether the ING 4727 impacted the eastern IHNC floodwall at the South Breach site before the breach occurred.

32. Whether the South Breach occurred for reasons that had nothing to do with the presence of a barge.

33. Whether, if the barge had caused the South Breach, it would have been immediately drawn into and propelled in an easterly direction with the inrushing waters, deep into the Lower Ninth Ward.

34. Whether the ING 4727 entered the already-formed South Breach and clipped the southernmost end of the South Breach before it entered the Lower Ninth Ward.

35. Whether, apart from the localized damage observed at the extreme southern end of the South Breach, there was any damage at the site of the South Breach that could be uniquely associated with impact from a barge.

36. Whether a barge impact with the eastern IHNC floodwall would be sufficient to cause a floodwall to fail in the manner observed at the IHNC North Breach and South Breach.

37. Whether the conditions present during Hurricane Katrina were sufficient to create tension cracks on the eastern IHNC floodwall without any impact from a barge.

38. Whether the IPET, ILIT, and Team Louisiana investigations were correct in concluding that the ING 4727 played no role in causing either IHNC floodwall breach.

39. Whether, even if the IHNC North Breach and South Breach had not occurred, the MRGO levee breaches would have flooded the Lower Ninth Ward and St. Bernard Parish to the same maximum level on August 29, 2005.

40. Whether there is any value associated with several hours' use of property during hurricane conditions and in the face of a mandatory evacuation order.

41. Whether the IHNC floodwaters reached levels sufficient to cause the death of Joseph Richardson.

42. Whether the IHNC floodwaters caused damage to the property of Holiday Jewelers Inc.

43. Whether the personal property loss of Holiday Jewelers Inc. was caused by flooding from the IHNC floodwaters, flooding from other sources, or looters.

44. Whether plaintiffs Richardson and Alford have already been fully compensated for their property damages from sources other than LNA.

45. Whether plaintiff Holiday Jewelers Inc. was a profitable corporation prior to Hurricane Katrina and would have been a profitable corporation after Hurricane

Katrina.

### ii. **Disputed facts for which LNA requested stipulations from plaintiffs, but plaintiffs refused because they claim they "demand proof."[4]**

1.    On the morning of August 29, 2005, the unloaded ING 4727 had a draft of approximately one-and-a-half feet.  [Pazos Dep. at 100; Marino 2009 Dep. at 65-66; Marino Report at 2-34]

2.    As a result of its unloaded condition, on August 29, 2005, ING 4727 was sticking out of the water over 20 feet above the waterline.  [Pazos Dep. at 103-04; Marino 2009 Dep. at 66]

3.    The fact that the ING 4727 was sticking out of the water over 20 feet above the waterline made the barge particularly susceptible to being moved in the direction of the prevailing wind during Hurricane Katrina.  [Pazos Dep. at 104 ("wind is the predominant item" acting on the barge)]

4.    According to Buys Ballot's law, hurricane winds in the northern hemisphere blow counterclockwise around the center (or "eye") of the hurricane.   Thus, the direction of the prevailing wind at a given time and location during a hurricane can be determined by comparing that location to the location of the eye of the storm at that same time.  [Pazos Dep. at 107-08, 117 ("the hurricanes in the Gulf of Mexico have a counterclockwise rotation"; agreeing that "hurricane winds swirl counterclockwise along the storm eye")]

5.    Hurricane Katrina made landfall near Buras, Louisiana, southeast of New Orleans and the IHNC, at approximately 6:10 a.m. CDT on the morning of August 29, 2005.  [Spinks 2008 Dep. at 60; Spinks 2009 Report at 8]

6.    After 6:10 a.m. CDT and continuing until after at least 8:30 a.m. CDT, the eye of Hurricane Katrina followed a south-to-north course, passing to the east of New Orleans and the IHNC.  [Pazos Dep. at 118-19; Pazos Report at 37]

7.    Prior to 7:45 a.m. CDT on August 29, 2005, Hurricane Katrina's prevailing winds included no component blowing across the IHNC from the LNA Terminal toward the east bank of the IHNC.  [Marino Report at 3-11 (prior to 9:00 CST, winds were "essentially parallel" to the IHNC)]

8.    Wind-activated waves tend to propagate in the direction of the prevailing wind. [Spinks 2009 Dep. at 23 (this is a matter of "common sense")]

---

[4] Many of these facts were attested to by plaintiffs' expert witnesses, as shown by the citations below.  Plaintiffs' demand that LNA offer evidence to prove these points will only prolong the trial of this action.

9.     The Interagency Performance Evaluation Task Force ("IPET") concluded that wave heights in the IHNC during Hurricane Katrina reached approximately 1 foot before 5:30 a.m. CDT on August 29, 2005, and two to three feet after that. [Spinks 2009 Dep. at 17-18 (acknowledging that IPET reached those conclusions)]

10.    The levees on the IHNC were topped by floodwalls ("I-Walls") comprised of a twenty-foot-long steel sheet pile driven into an earthen levee and subsoil to a depth of approximately seventeen feet and capped by a six-foot concrete monolith (cap) sticking up out of the ground.   The concrete cap was poured in two segments, the first encasing the top of the sheet pile (three feet), and the second extending three feet above.   The upper "pour" consisted of three feet of concrete and reinforcing bar ("rebar") extending above the sheet pile.   The floodwall had a horizontal construction joint between the two "pours" of concrete.  [Marino 2009 Dep. at 58-59 (floodwall had a six-foot concrete monolith, with a construction joint three feet below the top of the monolith); Pazos Report at 35-36 (floodwall "is a flexible cantilever (I type) structure) embedded in a soil of soft saturated clay"; sheetpile extends 5 feet into the 8 foot wall); Marino Report Fig. 2.3 (dimensions of I-wall); Marino Report at 2-23 (describing two pours of concrete on monoliths); Bartlett Report App. A & B (schematic of floodwall and concrete cap)]

11.    Both the North Breach and the South Breach had already occurred before the prevailing winds came to include any component blowing from the direction of the LNA Terminal toward the east bank of the IHNC.  [Marino Report at 3-11 (prior to 9:00 CST, winds were "essentially parallel" to the IHNC)]

12.    Hurricane Katrina's storm surge caused over 35,000 feet of breaches in the earthen levees along Reach 2 of the Mississippi River Gulf Outlet.  [Spinks 2009 Report at 17 Table 1]

13.    If the eastern IHNC floodwall had not breached, the levee breaches along MRGO would have inundated the Lower Ninth Ward and St. Bernard Parish to the same level several hours later than what actually happened during Hurricane Katrina. [Spinks 2009 Report at 33 ("The model simulations show that the levee breaches along MRGO could have inundated the Lower Ninth Ward and St. Bernard Parish approximately 3 to 4 hours later than what actually happened during Hurricane Katrina."); Spinks 2008 Dep. at 202-03; Spinks 2009 Dep. at 147-48, 206]

## 9.     CONTESTED ISSUES OF LAW

### a.     Plaintiffs

1.     Whether Plaintiffs are entitled to an adverse presumption for spoliation of evidence (Failing to preserve the identity of the ropes used to moor the vessel).

2.      Whether Plaintiffs are entitled to punitive damages;

3.      Application of presumption of negligence (***The Louisiana*** Rule);

4.      Application of presumption of causation (***The Pennsylvania*** Rule);

5.      Application of pure maritime joint and several liability applies (***Edmonds v. Compangnie***, ***Coats v. Penrod***, etc.);

6.      Legal causation;

7.      Legal duties attendant to care, custody, control and possession as to ING 4727;

8.      Whether Lafarge had a duty of reasonable care to prevent ING 4727 from leaving its berth;

9.      Whether Lafarge had a duty to ballast or scuttle ING 4727, by refraining from unloading, or otherwise;

10.     Whether Lafarge had a duty to remove ING 4727 from the IHNC;

11.     Whether Lafarge had a duty to prevent ING 4727's entry into the IHNC;

12.     Whether Lafarge had a duty to moor ING 4727 in any manner different from that actually employed;

13.     Whether Lafarge had a duty to follow the USCG Sector New Orleans Hurricane Plan;

18.     Whether Lafarge had a duty to adhere to 33 CFR 162.75 (b)(3)(ii) and 33 CFR 6.19;

19.     Whether Lafarge had a duty to devise and implement any safety and/or hurricane preparation policies and procedures other than any it claims to have had;

20.     Force majeure;

21.     Collateral Source Doctrine;

22.     Any and all others inherent in the facts, law, and proof adduced.


**b.      <u>LNA</u>**

1.      Whether the risk of catastrophic flooding of the Lower Ninth Ward and St. Bernard Parish was a foreseeable risk of a breakaway barge, given that no previous incident of such type had ever occurred prior to Hurricane Katrina.

2.      Whether LNA satisfied any duty of care that it owed the plaintiffs by acting reasonably in preparing the ING 4727 for Hurricane Katrina.

3.      Whether LNA complied with all applicable statutes, codes, or regulations in its mooring of the ING 4727 prior to Hurricane Katrina.

4.      Whether, even if LNA breached a duty to plaintiffs, whatever LNA neglected or failed to do would have, if done, prevented the ING 4727 from breaking away.

5.      Whether LNA's conduct was the cause-in-fact of plaintiffs' injuries.

6.      Whether LNA's actions were a substantial factor in causing plaintiffs' injuries even though plaintiffs would have sustained those injuries even if LNA had not been negligent.

7.      Whether LNA's actions could constitute a "concurrent cause" of the eastern IHNC floodwall breaches even though the ING 4727, acting alone, was not and would not have been sufficient to cause the IHNC floodwall breaches.

8.      Whether LNA can be held liable for damages caused by the eastern IHNC floodwall breaches if the ING 4727 was only an insignificant or *de minimus* cause of the breaches.

9.      Whether the ING 4727 was the proximate cause of plaintiffs' injuries even though plaintiffs' damages were not the reasonably probable consequence of LNA's conduct.

10.     Whether subsequent events, such as the inevitable flooding of their properties due to flooding from the MRGO breaches, operate to cut off plaintiffs' damages arising out of the IHNC floodwall breaches.

11.     Whether compensation that plaintiffs received from the Road Home Program or their insurers should be deducted from any amounts the Court might otherwise award them for property damage in this action.

12.     Whether plaintiff Holiday Jewelers can recover its alleged lost profit damages even though it was not profitable before Hurricane Katrina.

13.     Whether plaintiff Josephine Richardson can recover any wrongful death damages arising out of the death of her husband during Hurricane Katrina.

14.     Whether joint and several liability applies to plaintiffs' claims even though most

or all of their damages are attributable to the United States, an entity which plaintiffs chose not to sue.

15.     Whether the Pennsylvania Rule applies to plaintiffs' claims even though plaintiffs cannot show that their damages were caused by a statutory or regulatory violation.

16.     Whether the Louisiana Rule applies even though the barge did not allide with the home of any plaintiff.

## 10.     LIST AND DESCRIPTION OF EXHIBITS INTENDED TO BE INTRODUCED:

### Plaintiffs':

P1.     Ingram - Lafarge Transportation Agreement, IBCO 001-005;

P2.     USCG ING4727 Vessel Documentation;

P3.     8/16/05 email from Rachel Burnett Mays to Carrie Jenks, etc., re MidSouth Gulf Coast Terminal Inventory; LNA 115 - 116;

P4.     Terminal Inventory Analysis documents, updated 8/16/05, 8/23/05 and 8/24/05, LNA 117, 134 and 137;

P5.     Lafarge South Daily Ash Inventory August 29, 2005, LNA 258;

P6.     Multi-page email from Carrie Jenks discussing stock shortages, LNA 268 - 274;

P7.     8/17/05 email from Rachel Burnett Mays to John Haverkamp, etc., re ING 4727; LNA 120;

P8.     8/17/05 email from Rachel Burnett Mays to A.J. Guthrie, etc., re 2 HOT loads of "H" for NOLA/Wlake; LNA 119;

P9.     8/18/05 email from Rachel Burnett Mays to Carrie Jenks, etc., re MidSouth Gulf Coast Inventory 8/18/05; LNA 121;

P10.    8/22/05 email from Brad Adkins to Jay Darlington re HOT HOT HOT BARGES; LNA 125;

P11.    8/22/05 email from Rachel Burnett Mays to A.J. Guthrie re "H" Plans for Gulf; LNA 127;

P12.    8/23/05 email from Rachel Burnett Mays to Brad Adkins re "H" Update for the Gulf; LNA 128;

P13.    Policies and procedures of Lafarge;

P14.    Records produced by TECO in response to Lafarge's Rule 45 subpoena;

P15.    OBJECTION SUSTAINED -  Impact Weather notices, IBCO 649, 650, 651, 665, 668, 671;

P16.    U.S. Department of Commerce, Certified True Copies of Meteorological records of the National Climatic Data Center for the period of 08/25/2005 - 08/30/2005 dated January 17, 2007 and certified by Thomas R. Karl, *In globo;*

P17.    National Weather Service, National Hurricane Center, Katrina Graphics Archives,web content http://www.nhc.noaa.gov/archive2005/KATRINA graphics.shtml frames 8 - 31;

P18.    National Weather Service, National Hurricane Center, Hurricane Katrina Forecast/Advisory B u l l e t i n s f o r A u g u s t 2 6 - 2 9 , 2 0 0 5 , w e b c o n t e n t http:/www.nhc.noaa.gov/archive/2005/mar/all22005.fstadv;

P19.    State of Emergency proclamation by Kathleen Blanco, Proclamation No.: 48 KBB 2005, dated August 26, 2005;

P20.    OBJECTION SUSTAINED - The Brookings Institute Hurricane Katrina Timeline, pp. 1-5;

P21.    8/25/05 email from David North re "East Canal Info Update - Tropical Storm Katrina," with attached Daily Position Report(s), IBCO 1454 - 1465;

P22.    OBJECTION SUSTAINED - CNN.com three page article, "Forecasters: Katrina to aim for Mississippi, Louisiana;" Exhibit 362 in Phase I, Benchbook;

P23.    Storm track animation .gif identified as at200512_verify.gif;

P24.    IHNC Lockmaster log of Lockmaster Michael O'Dowd for period preceding and including Katrina, including ERD-014-0000000 produced by U.S. on Vol. KC815;

P25.    U.S. Army Corps of Engineers, New Orleans District – Inner Harbor Navigation Canal Lock Shift Log 8/27/05 shift 8/4, 4/12, 12/8; 8/28/05,

shift 12-8,

P26.    U.S. Army Corps of Engineers, New Orleans District – Inner Harbor Navigation Canal Lock Shift Log subsequent to the preceding entry

P27.    GNOBFA Barge Fleeting Standard of Care & Streamlined Inspection Program Guide Book, IBCO 158 - 226;

P28.    U.S. Coast Guard Sector New Orleans Hurricane Plan, including but not limited to Enclosure 11, "A Guide to Port Planning and Preparation," / "Maritime Hurricane Contingency Port Plan / Recommended Storm Preparations," Annex B, Annex B Appendices 1 and 2, and Annex C (handwritten markings not included in exhibit);

P29.    United States Coast Guard Sector New Orleans Marine Safety Bulletin, Volume V, Issues XXXIII, XXXIV, XXXV;

P30.    USCG log setting Port Condition Whiskey and/or X-Ray, Yankee, Zulu;

P31.    USCG Press Release, "Coast Guard Urges Mariners to Prepare for Hurricane Katrina;" dated August 27, 2005 08:43:54 CST, LNA 00106;

P32.    USCG Press Release, "Media Advisory - Website Launched to Provide Latest Coast Guard Information On Hurricane Katrina Operations," dated August 27, 2005, 09:11:13 CST;

P33.    USCG Press Release, "Media Advisory - Coast Guard Prepares for Hurricane Katrina, dated August 27, 2005 18:17:22 CST;

P34.    U.S. National Oceanic and Atmospheric Administration, Coast Pilot V (33rd edition), cover and pp. 429-430;

P35.    U.S. Department of Commerce Nautical Chart No. 11367 "Intracoastal Waterway" showing locations of Lafarge North America and Lone Star;

P36.    Shipyard Supply's "Response to Records Subpoena," pleading and attached invoice for 2" x 720' blue mooring line sold to Lafarge, invoice date August 8, 2005;

P37.    Lafarge New Orleans Terminal Hurricane Preparation Checklist, LNA 113;

P38.    8/29/05 email from Jon Erbes to John Caldwell re "NOLA?" inquiring as to NOLA terminal emergency plan, LNA 275;

P39.    8/29/05 email from Carrie Jenks to Jon Erbes, etc., re "NOLA
        Barges in Gulf," LNA 148;

P40.    OBJECTION SUSTAINED - 8/29/05 email from Rachel Burnett Mays to Rich Corzine
        re "Ingram Coming to Joppa Plant," LNA 278;

P41.    8/25/05 and 8/26/05 Daily Boat Logs of Connie Z, IBCO 244,
        245;

P42.    Zito Service Agreement, IBCO 716 - 727;

P43.    Zito Fleeting invoice, service date 8/25/05, re ING 4727, IBCO
        243;

P44.    Zito Dispatch Log Reports(Barges in Fleet)- IBCO 1405-1506;

P45.    Zito Fleeting invoices, IBCO 1287, 1290, 1304, 1336;

P46.    8/27/05 email from Zito Dispatch to Anthony Gex, Ingram
        manager Patrick Morton etc., IBCO 0728, describing Zito fleet
        closures;

P47.    Zito Dispatch records of 8/24/05 - 8/26/05 re ING 4727 produced
        at Barry Boudreaux deposition;

P48.    Zito Algiers Fleet dispatch reports 8/25/05 - 8/28/05 produced at
        Barry Boudreaux deposition;

P49.    Six pages of handwritten 8/27 notes produced at Barry Boudreaux deposition;

P50.    Detailed Calling By Day logs produced at Barry Boudreaux
        deposition, to include pages 15, and 25-30 of 38 total pages;

P51.    OBJECTION SUSTAINED - Joseph C. Domino, Inc. Policies and Procedures manual,
        DOM 00014 - 149;

P52.    Regina H Daily Log, DOM 10 - 13;

P53.    Invoice for services of Regina H to top around ING 4727 on
        8/27/05;

P54.    Certificate of Documentation, Regina H, DOM 150;

P55.    Diagram, DOM 00009;

P56.    Joseph C. Domino invoice produced as Domino 000008;

P57.    Vessel Status History for ING 4745, IBCO 1372-1375;

P58.    Vessel Status History for ING 4747, IBCO 0231-0238;

P59.    OBJECTION SUSTAINED (Duplicate of P58) ING 4727 Vessel Status History, IBCO 0231 - 0238;

P60.    Daily position Report- David North, generated on August 26, 2005 IBCO 1376-1381;

P61.    Ingram Traffic Report, IBCO 0241;

P62.    Barge Unloading Report, LNA 105, 106;

P63.    Written Statement of Ed Busch;

P64.    Written Statement of Earl Smith;

P65.    Mooring lines presented by Lafarge for inspection;

P66.    LNA New Orleans Terminal Mooring Lines Photo PSLC000752;

P67.    LNA New Orleans Terminal Mooring Lines Photo PSLC000753;

P68.    LNA New Orleans Terminal Mooring Lines Photo PSLC000754;

P69.    LNA New Orleans Terminal Mooring Lines Photo PSLC000755;

P70.    LNA New Orleans Terminal Mooring Lines Photo PSLC000756;

P71.    LNA New Orleans Terminal Mooring Lines Photo PSLC000757;

P72.    LNA New Orleans Terminal Mooring Lines Photo PSLC000758;

P73.    LNA New Orleans Terminal Mooring Lines Photo PSLC000759;

P74.    LNA New Orleans Terminal Mooring Lines Photo PSLC000760;

P75.    LNA New Orleans Terminal Mooring Lines Photo PSLC000761;

P76.    LNA New Orleans Terminal Mooring Lines Photo PSLC000762;

P77.    LNA New Orleans Terminal Mooring Lines Photo PSLC000763;

P78.    LNA New Orleans Terminal Mooring Lines Photo PSLC000764;

P79.    LNA New Orleans Terminal Mooring Lines Photo PSLC000765;

P80.    LNA New Orleans Terminal Mooring Lines Photo PSLC000766;

P81.    LNA New Orleans Terminal Mooring Lines Photo PSLC000767;

P82.    LNA New Orleans Terminal Mooring Lines Photo PSLC000768;

P83.    LNA New Orleans Terminal Mooring Lines Photo PSLC000769;

P84.    LNA New Orleans Terminal Mooring Lines Photo PSLC000770;

P85.    LNA New Orleans Terminal Mooring Lines Photo PSLC000771;

P86.    LNA New Orleans Terminal Mooring Lines Photo PSLC000772;

P87.    LNA New Orleans Terminal Mooring Lines Photo PSLC000773;

P88.    LNA New Orleans Terminal Mooring Lines Photo PSLC000774;

P89.    LNA New Orleans Terminal Mooring Lines Photo PSLC000775;

P90.    LNA New Orleans Terminal Mooring Lines Photo PSLC000776;

P91.    LNA New Orleans Terminal Mooring Lines Photo PSLC000777;

P92.    LNA New Orleans Terminal Mooring Lines Photo PSLC000778;

P93.    LNA New Orleans Terminal Mooring Lines Photo PSLC000779;

P94.    LNA New Orleans Terminal Mooring Lines Photo PSLC000780;

P95.    LNA New Orleans Terminal Mooring Lines Photo PSLC000781;

P96.    LNA New Orleans Terminal Mooring Lines Photo PSLC000782;

P97.    LNA New Orleans Terminal Mooring Lines Photo PSLC000783;

P98.    LNA New Orleans Terminal Mooring Lines Photo PSLC000784;

P99.    LNA New Orleans Terminal Mooring Lines Photo PSLC000785;

P100.   LNA New Orleans Terminal Mooring Lines Photo PSLC000786;

P101.   LNA New Orleans Terminal Mooring Lines Photo PSLC000787;

P102.   LNA New Orleans Terminal Mooring Lines Photo PSLC000788;

P103.   LNA New Orleans Terminal Mooring Lines Photo PSLC000789;

P104.   LNA New Orleans Terminal Mooring Lines Photo PSLC000790;

P105.   LNA New Orleans Terminal Mooring Lines Photo PSLC000791;

P106.   LNA New Orleans Terminal Mooring Lines Photo PSLC000792;

P107.   LNA New Orleans Terminal Mooring Lines Photo PSLC000794;

P108.   LNA New Orleans Terminal Mooring Lines Photo PSLC000795;

P109.   LNA New Orleans Terminal Mooring Lines Photo PSLC000796;

P110.   LNA New Orleans Terminal Mooring Lines Photo PSLC000797;

P111.   LNA New Orleans Terminal Mooring Lines Photo PSLC000798;

P112.   LNA New Orleans Terminal Mooring Lines Photo PSLC000799;

P113.   LNA New Orleans Terminal Mooring Lines Photo PSLC000800;

P114.   Lafarge Terminal Photo, PSLC 000680;

P115.   Lafarge Terminal Photo, PSLC 000681;

P116.   Lafarge Terminal Photo, PSLC 000682;

P117.   Lafarge Terminal Photo, PSLC 000683;

P118.   Lafarge Terminal Photo, PSLC 000684;

P119.   Lafarge Terminal Photo, PSLC 000685;

P120.   Lafarge Terminal Photo, PSLC 000686;

P121.   Lafarge Terminal Photo, PSLC 000687;

P122.   Lafarge Terminal Photo, PSLC 000688;

P123.   Lafarge Terminal Photo, PSLC 000689;

P124.   Lafarge Terminal Photo, PSLC 000690;

P125.   Lafarge Terminal Photo, PSLC 000691;

P126.   Lafarge Terminal Photo, PSLC 000692;

P127.   Lafarge Terminal Photo, PSLC 000693;

P128.   Lafarge Terminal Photo, PSLC 000694;

P129.   Lafarge Terminal Photo, PSLC 000695;

P130.   Lafarge Terminal Photo, PSLC 000696;

P131.   Lafarge Terminal Photo, PSLC 000700;

P132.   Lafarge Terminal Photo, PSLC 000701;

P133.   Lafarge Terminal Photo, PSLC 000701;

P134.   Lafarge Terminal Photo, PSLC 000702;

P135.   Lafarge Terminal Photo, PSLC 000703;

P136.   Lafarge Terminal Photo, PSLC 000704;

P137.   Lafarge Terminal Photo, PSLC 000705;

P138.   Lafarge Terminal Photo, PSLC 000706

P139.   Lafarge Terminal Photo, PSLC 000707;

P140.   Lafarge Terminal Photo, PSLC 000708

P141.   Lafarge Terminal Photo, PSLC 000709;

P142.   Lafarge Terminal Photo, PSLC 000710

P143.   Lafarge Terminal Photo, PSLC 000711

P144.   Lafarge Terminal Photo, PSLC 000712

P145.   Lafarge Terminal Photo, PSLC 000713

P146.   Lafarge Terminal Photo, PSLC 000714

P147.   Lafarge Terminal Photo, PSLC 000715

P148.   Lafarge Terminal Photo, PSLC 000716

P149.   Lafarge Terminal Photo, PSLC 000717

P150.   Lafarge Terminal Photo, PSLC 000718

P151.   Lafarge Terminal Photo, PSLC 000719

P152.   Lafarge Terminal Photo, PSLC 000727

P153.   Lafarge Terminal Photo, PSLC 000728;

P154.   Lafarge Terminal Photo, PSLC 000729;

P155.   Lafarge Terminal Photo, PSLC 000730;

P156.   Lafarge Terminal Photo, PSLC 000731;

P157.   Lafarge Terminal Photo, PSLC 000732;

P158.   Lafarge Terminal Photo, PSLC 000733;

P159.   Lafarge Terminal Photo, PSLC 000734;

P160.   Lafarge Terminal Photo, PSLC 000735;

P161.   Photos and video of Lafarge Facility and dock,
        produced as LNA001118-001125, 001128-001135;

P162.   Aerial Photo (Five Barge Tier), PSLC 747;

P163.   Aerial Photo, PSLC 000749;

P164.   Aerial Photo, PSLC 000750;

P165.   Aerial, satellite imaging of the Industrial
        Canal, Ingram Barge ING 4727, eastern Industrial Canal floodwall, breaches including
        those LNA 009533-009535;

P166.   Photo of IHNC floodwall, breaches, and vicinity produced as
        LNA 001155;

P167.   Video taken by Tommy Duplesis and provided by Sal Gutierrez,
        taken at St. Bernard Parish Courthouse;

P168.   OBJECTION TO OMNIBUS DESCRIPTION SUSTAINED - Maps and/or charts of the geographical area;

P169.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55772729, PSLC 000919;

P170.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55772555, PSLC 000920;

P171.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55831691, PSLC 000921;

P172.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55832357, PSLC 000922;

P173.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55764823, PSLC 000923;

P174.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55772721, PSLC 000924;

P175.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55759542, PSLC 000925;

P176.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55759540, PSLC 000926

P177.   Lower Ninth Ward ING 4727 Photo, Getty image number: 55764762, PSLC 000927

P178.   Lower Ninth Ward ING 4727 Photo, Getty image number: 71545243, PSLC 000928

P179.   Lower Ninth Ward ING 4727 Photo, PSLC 000748;

P180.   Photos of ING 4727 produced as 000874, 000877, 000919-000928;

P181.   IHNC Floodwall Photo PSLC 000736;

P182.   IHNC Floodwall Photo PSLC 000737;

P183.   IHNC Floodwall Photo PSLC 000738;

P184.   IHNC Floodwall Photo PSLC 000739;

P185.   IHNC Floodwall Photo PSLC 000740;

P186.   IHNC Floodwall Photo PSLC 000741;

P187.   IHNC Floodwall Photo PSLC 000742;

P188.   IHNC Floodwall Photo PSLC 000743;

P189.   IHNC Floodwall Photo PSLC 000744;

P190.   IHNC Floodwall Photo PSLC 000745;

P191.   IHNC Floodwall Photo PSLC 000746;

P192.   Stan Guidry Photos, PSLC 000974;

P193.   Stan Guidry Photos, PSLC 000975;

P194.   Stan Guidry Photos, PSLC 000976;

P195.   Stan Guidry Photos, PSLC 000977;

P196.   Stan Guidry Photos, PSLC 000978;

P197.   Stan Guidry Photos, PSLC 000979;

P198.   Stan Guidry Photos, PSLC 000980;

P199.   Stan Guidry Photos, PSLC 000981;

P200.   Stan Guidry Photos, PSLC 000982;

P201.   Stan Guidry Photos, PSLC 000983;

P202.   Stan Guidry Photos, PSLC 000985;

P203.   Stan Guidry Photos, PSLC 000986;

P204.   Stan Guidry Photos, PSLC 000987;

P205.   Stan Guidry Photos, PSLC 000988;

P206.   Stan Guidry Photos, PSLC 000989;

P207.   Stan Guidry Photos, PSLC 000990;

P208.   Stan Guidry Photos, PSLC 000991;

P209.   Stan Guidry Photos, PSLC 000992;

P210.   Stan Guidry Photos, PSLC 000993;

P211.   Stan Guidry Photos, PSLC 000994;

P212.   Stan Guidry Photos, PSLC 000995;

P213.   Stan Guidry Photos, PSLC 000996;

P214.   Stan Guidry Photos, PSLC 000997;

P215.   Stan Guidry Photos, PSLC 000998;

P216.   Stan Guidry Photos, PSLC 000999;

P217.   Stan Guidry Photos, PSLC 001000;

P218.   Stan Guidry Photos, PSLC 001001;

P219.   Stan Guidry Photos, PSLC 001002;

P220.   Stan Guidry Photos, PSLC 001003;

P221.   Stan Guidry Photos, PSLC 001004;

P222.   Stan Guidry Photos, PSLC 001005;

P223.   Stan Guidry Photos, PSLC 001006;

P224.   Photo (Reed) 001;

P225.   Photo (Reed) 002;

P226.   Photo (Reed)003;

P227.   Photo (Reed) 004;

P228.   Photo (Reed) 005;

P229.   Photo (Reed) 006;

P230.   Photo (Lagarde) 000078

P231.   Photo (Lagarde) 000107;

P232.   Photo (Lagarde) 000111;

P233.   Photo (Lagarde) 000112;

P234.   Photo (Lagarde) 000113;

P23.   Photos of WGI borrow pits along the eastern side of the IHNC.
        PSLC 000083000086;

P236.   WGI borrow pits(East) Photo IHNC. PSLC 000083;

P237.   WGI borrow pits(East) Photo IHNC. PSLC 000084;

P238.   WGI borrow pits(East) Photo IHNC. PSLC 000085;

P239.   WGI borrow pits(East) Photo IHNC. PSLC 000086;

P240.   Quicktime movie content from:
        http://www.washingtonpost.com/wpdyn/
        content/panorama/2005/09/29/PA2005092900922.html and
        http://www.washingtonpost.com/wpdyn/
        content/panorama/2005/10/03/PA2005100301672.html

P241.   ABC News broadcast - David Muir's interview of Joe Edwards -
        containing images of scrape marks along inside of eastern IHNC
        floodwall near south breach;

P242.   Web content at http://www.americanbridge.net/Experience/experience_detail.php?prj_
        ab_id=FlorNew%2029062004110711670, and
        http://www.modjeski.com/projects/detail.aspx?florida-avenue, depicting Florida Avenue
        Bridge in "down" position (web address
        updated).

P243.   Tropical Cyclone Report, Hurricane Katrina 23-30 August 2005,
        Richard D. Knabb, Jamie R. Rhome, and Daniel P. Brown, National
        Hurricane Center, December 20, 2005, updated August 10, 2006 for
        tropical wave history, storm surge, tornadoes, surface observations,
        fatalities and damage cost estimates.

P244.   IPET interim, draft and final Reports with supplements,
        appendices, attachments, in whole or in part, for the limited purpose of
        showing the underlying data and conclusions, but not for the truth of
        any conclusion as to the movement of Barge ING 4727 or the causation
        of the North or South Breaches in the IHNC;

P245. IPET Final Report Vol. IV (March 26, 2007), "The Storm—Findings and Lessons Learned," p. IV-34, and Appendix I, pp. IV-1-75 and IV-1-76;

P246. IPET Final Report Vol. IV (March 26, 2007), "The Storm—Findings and Lessons Learned," pp. IV-193 through IV-200;

P247. IPET Final Report Vol. IV (March 26, 2007), "The Storm—Findings and Lessons Learned," p. IV-261;

P248. IPET Final Report Vol. IV (March 26, 2007), Technical Appendix 1, "Hydrograph and High Water Mark Analysis", pp. IV-1-1 through IV-1-2 and IV-1-66 through IV-1-82;

P249. IPET Final Report Vol IV (March 26, 2007), Technical Appendix 7, "Eyewitness Accounts of Flooding Caused by Hurricane Katrina," pp. IV-7-1, IV-7-6, and IV-7-50 through IV-7-54;

P250. IPET Final Report Vol. IV (March 26, 2007), Technical Appendix 14, "Detailed-Scale STWAVE Modeling";

P251. IPET Final Report Vol. IV (March 26, 2007), Technical Appendix 15, "Boussinesq Modeling";

P252. IPET Final Report Vol. IV (March 26, 2007), Technical Appendix 17, "Consideration of Wind-Induced Barge Motions and Associated Forces in the Inner Harbor Navigation Canal";

P253. IPET Final Report Vol. V (June 2007), "The Performance — Levees and Floodwalls," pp. V-89 through V-102;

P254. IPET Final Report Vol. V (March 26, 2007), Technical Appendix 16, "Concrete I-Wall and Sheet Piling Material Recovery, Sampling and Testing: IHNC";

P255. IPET Performance Evaluation Plan and Interim Status, Report 1 of a Series, "Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System," January 10, 2006, pp. 79-81;

P256. National Institute of Standards and Technology, Technology Administration, U.S. Department of Commerce (hereinafter "NIST"), Technical Note 1746, "Performance of Physical Structures in Hurricane Katrina and Hurricane Rita: A Reconnaissance Report"(June 2006);

P257. NIST Technical Note 1746, "Performance of Physical Structures in

Hurricane Katrina and Hurricane Rita: A Reconnaissance Report"
(June 2006), Chapter 3, pp. 42-44;

P258. NIST Technical Note 1746, "Performance of Physical Structures in
Hurricane Katrina and Hurricane Rita: A Reconnaissance Report"
(June 2006), Chapter 4, pp. 98-99;

P259. NIST Technical Note 1746, "Performance of Physical Structures in
Hurricane Katrina and Hurricane Rita: A Reconnaissance Report"
(June 2006), Chapter 4, p. 116;

P260. June 30, 1994 National Transportation Safety Board Safety
Recommendation Concerning Barge Allision with N. Claiborne
Avenue Bridge, M-94-10 and -11;

P261 Independent Levee Investigation Team Final Report and
Appendices, for the limited purpose of showing the underlying data
and conclusions, but not for the truth of any conclusion as to the
movement of Barge ING 4727 or the causation of the North or South
Breaches in the IHNC;

P262. Team Louisiana Report, Appendices, and Letter of Transmittal,
for the limited purpose of showing the underlying data and
conclusions, but not for the truth of any conclusion as to the movement
of Barge ING 4727 or the causation of the North or South Breaches in
the IHNC;

P263.  Sewerage & Water Board Central Control Log, 8/29/05;

P264.  Recorded and/or transcribed statement of Arthur Murph
referenced in his deposition and previously produced to counsel;

P265.  Murph House Closing Papers, 000001-000016;

P266. New Jourdan, LLC Articles of Organization, web content from
Secretary of State website, corporations database;

P267. February 9, 2006 act of sale ("Cash Sale" of 105 Berkley Drive,
New Orleans, Louisiana, from Hummel Construction, LLC to Jeanne
Church Murph and Arthur Murph, Jr.;

P268. H.U.D. Settlement Statement;

P269. May 11, 2006 correspondence from True Title, Inc. to Harry R.
Holladay, re 105 Berkley Drive;

P270.   Crescent Bank and Trust Official Check No. 794153976;

P271.    Murph transactional document concerning 105 Berkley Drive
         labeled True Title 000035;

P272.   Compromise Documents and affidavits, statements, and
         attachments reflecting agreements between Lafarge North America, its
         agents, insurers and Arthur and/or Jeanne Church Murph relative to
         damage sustained during Hurricane Katrina (redacted in accord with
         confidentiality provisions LNA refused to waive);

P273.   City of New Orleans property ownership/property tax records
         pertaining to 105 Berkley Drive, 1739 Jourdan Avenue;

P274.   Google Map of Alford Residence at 2423 Deslondes Street, New
         Orleans;

P275.   Real Property Ownership Documents (Alford), Alford 000006-
         000009;

P276.   Contents Inventory (Alford) 000026-000081;

P277.   Damage photos(Alford) 000026;

P278.   Damage photos(Alford) 000027;

P279.   Damage photos(Alford) 000028;

P280.   Damage photos(Alford) 000029;

P281.   Damage photos(Alford) 000030;

P282.   Damage photos(Alford) 000031;

P283.   Damage photos(Alford) 000032;

P284.   Damage photos(Alford) 000033;

P285.   Damage photos(Alford) 000034;

P286.    Damage photos(Alford) 000035;

P287.    Damage photos(Alford) 000036;

P288.    Damage photos(Alford) 000037;

P289.   Damage photos(Alford) 000038;

P290.   Expert property appraisals and reports and attachments of G&C
Appraisals, for Alford;

P291.   Google Map of Holiday Jewelers Store at 8400 W. Judge Perez Drive,
Chalmette;

P292.   Contents Inventory for Holiday Jewelers, Glaser 000071-000072;

P293.   Business Income Records for Holiday Jewelers, Glaser 000001-
000044;

P294.   Insurance Documents for Holiday Jewelers, Glaser 000066-
000067

P295.   Blank.

P296.   Damage photos for Holiday Jewelers, Glaser 000045;

P297.   Damage photos for Holiday Jewelers, Glaser 000046;

P298.   Damage photos for Holiday Jewelers, Glaser 000047;

P299.   Damage photos for Holiday Jewelers, Glaser 000048;

P300.   Damage photos for Holiday Jewelers, Glaser 000049;

P301.   Damage photos for Holiday Jewelers, Glaser 000050;

P302.   Damage photos for Holiday Jewelers, Glaser 000051;

P303.   Damage photos for Holiday Jewelers, Glaser 000052;

P304.   Damage photos for Holiday Jewelers, Glaser 000053;

P305.   Damage photos for Holiday Jewelers, Glaser 000054;

P306.   Damage photos for Holiday Jewelers, Glaser 000055;

P307.   Damage photos for Holiday Jewelers, Glaser 000056;

P308.   Damage photos for Holiday Jewelers, Glaser 000057;

P309.   Damage photos for Holiday Jewelers, Glaser 000058;

P310.   Damage photos for Holiday Jewelers, Glaser 000059;

P311.   Damage photos for Holiday Jewelers, Glaser 000060;

P312.   Damage photos for Holiday Jewelers, Glaser 000061;

P313.   Damage photos for Holiday Jewelers, Glaser 000062;

P314.   Damage photos for Holiday Jewelers, Glaser 000063;

P315.   Damage photos for Holiday Jewelers, Glaser 000064;

P316.   Expert business loss evaluation report and attachments of John
         Theriot for Holiday Jewelers;

P317.   Google Map of Richardson Residence at 1321 Egania Street, New
         Orleans;

P318.   Real Property Ownership Ownership Documents (Richardson)
         000006-000010;

P319.   WITHDRAWN AS DUPLICATE OF PAGES INCLUDED IN 318 - Real Property
         Ownership Documents (Richardson) 000045-000049;

P320.   Marriage Certificate, Joseph Richardson, Sr. and Josephine
         Richardson, Richardson 000001;

P321.   Judgment of Possession, Succession of Joseph Richardson, Sr.,
         Richardson 000006-000007;

P322.   Act of Sale of 1321 Egania to Joseph and Josephine Richardson,
         Richardson 000008-000010;

P323.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson
         000011 – 000026

P324.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000012;

P325.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson
         000013;

P326.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson
         000014;

P327.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson
         000015;

P328.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000016;

P329.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000017;

P330.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000018;

P331.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000019;

P332.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000022;

P333.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000023;

P334.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000024;

P335.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000025;

P336.   Interior/ Exterior Damage Photo, 1321 Egania Street, Richardson 000026;

P337.   Invoices, Receipts, Reports reflecting repair/replacement of 1321 Egania structure and contents, Richardson 0000045-0000049, and 000056 – 000115;

P338.   Home Inventory List, Richardson 000184 – 000211;

P339.   Certified Medical Records of DeKalb Medical Center, admission date of 9/27/05, 9/28/05, Richardson 000121-000171;

P340.   Insurance Documents (Richardson) 000020;

P341.   Death Certificate and Autopsy of Joseph Richardson, Sr. (Richardson) 000021;

P342.   Funeral and Burial Expenses of Joseph Richardson;

P343.   Expert property appraisals and reports and attachments of G&C Appraisals, for Richardson;

P344.   August 1, 2009 Report of Reda M. Bakeer, Ph.D., with appendices, for
limited purposes of admissions, impeachment and rebuttal;

P345.   September 10, 2009 Deposition of Reda M. Bakeer, Ph.D., with
exhibits, for limited purposes of admissions, impeachment and rebuttal

P346.   January 26, 2007 Deposition of Rachel Burnett Mays with exhibits;

P347.   August 1, 2009 Report of Robert M. Bea, Ph.D., with appendices, for
limited purposes of admissions, impeachment and rebuttal;

P348.   September 4, 2009 Supplemental Report of Robert M. Bea, Ph.D., with
appendices, for limited purposes of admissions, impeachment and
rebuttal;

P349.   September 14, 2009 Deposition of Robert M. Bea, Ph.D., with all
exhibits thereto, for limited purposes of admissions, impeachment and
rebuttal;

P350.   Video of Robert Bea from
http://berkeley.edu/news/berkeleyan/2005/10/20_New_Orleans.shtml "Levees Destroyed
by Barges, Saved by Wetlands."

P351.   July 29, 2009 Report of Charles R. Cushing, Ph.D., with all appendices
thereto, for limited purposes of admissions, impeachment and rebuttal;

P352.   August 6, 2009 Deposition of Charles R. Cushing, Ph.D., with all
exhibits thereto, for limited purposes of admissions, impeachment and
rebuttal

P353.   July 27, 2009 Report of Austin Dooley, with all appendices thereto, for
limited purposes of admissions, impeachment and rebuttal

P354.   August 5, 2009 Deposition of Austin Dooley with all exhibits thereto,
for limited purposes of admissions, impeachment and rebuttal

P355.   May 12, 2009 Deposition of Richard J. Guidry with all exhibits thereto,
if unavailable for trial

P356.   September 24, 2009 Deposition of G. Paul Kemp with all exhibits
thereto, for limited purposes of admissions, impeachment and rebuttal

P357.   June 17, 2009 Rule 30(b)(6) Deposition of Lafarge through Arthur J.
Guthrie with all exhibits thereto, for limited purposes of admissions,
impeachment and rebuttal

P358.   November 30, 2006, Deposition of Richard Heck with all exhibits
        thereto, for limited purposes of admissions, impeachment and rebuttal

P359.   WITHDRAWN AS INADVERTENT DUPLICATE OF 346 - January 26, 2007
        Deposition of Rachel Burnett Mays with exhibits;

P360.   October 11, 2006 Rule 30(b)(6) Deposition of Joseph C. Domino, Inc.,
        through Gerald Thomas McNeill;

P361.   Exhibits to October 11, 2006 Rule 30(b)(6) Deposition of Joseph C.
        Domino, Inc. through Gerald Thomas McNeill;

P362.   October 26, 2006 Rule 30(b)(6) Deposition of Ingram Barge Co.
        through Daniel Paul Mecklenborg;

P363.   Documents identified in the October 26, 2006 Rule 30(b)(6) Deposition of Ingram Barge
        Co. through Daniel Paul Mecklenborg;

P364.   July 22, 2009 Deposition of Reed Mosher, Ph.D., with all exhibits
        thereto, for limited purposes of admissions, impeachment and rebuttal ((Please see
        deposition designations previously submitted to the Court, for purposes beyond
        impeachment or rebuttal.);

P365.   All other depositions or trial testimony of Reed Mosher, Ph.D., with all
        exhibits thereto, for limited purposes of admissions, impeachment and
        rebuttal;

P366.   September 3, 2009 Deposition of Wade Ragas with all exhibits thereto,
        for limited purposes of admissions, impeachment and rebuttal;

P367.   All other depositions or trial testimony of Wade Ragas, with all
        exhibits thereto, for limited purposes of admissions, impeachment and
        rebuttal;

P368.   July 15, 2009 Deposition of Philip D. Skaer with all exhibits thereto,
        for limited purposes of admissions, impeachment and rebuttal;

P369.   September 26, 2009 Deposition of Joseph Suhayda, Ph.D., with all
        exhibits thereto, for limited purposes of admissions, impeachment and
        rebuttal;

P370.   All other depositions or trial testimony of Joseph Suhayda, Ph.D., with
        all exhibits thereto, for limited purposes of admissions, impeachment
        and rebuttal;

P371.   November 10, 2006 Rule 30(b)(6) Deposition of Lafarge through

Edward VanderMeulen with all exhibits thereto, for limited purposes
of admissions, impeachment and rebuttal ((Please see deposition designations
previously submitted to the Court, for purposes beyond impeachment and rebuttal.);

P372.   December 18, 2007 Deposition of William Villavasso (Please see deposition
designations previously submitted to the Court.);

P373.   Exhibits 1-6, 8, and 10-11 to December 18, 2007 Deposition of
William Villavasso     (Please see deposition designations previously submitted to
the Court.);

P374.   September 1, 2009 Deposition of William J. Weiss, Ph.D., for limited
purposes of admissions, impeachment and rebuttal;

P375.   Centanni Investigative Agency Transcription of July 31, 2006
Recorded Telephone Conversation With Lower 9th Ward Resident
Gertrude LeBlanc;

P376.   Centanni Investigative Agency Transcription of December 2, 2005
Recorded Telephone Conversation With Lower 9th Ward Resident
Frazier Tompkins;

P377.   Depositions of any witness unavailable for trial by death or otherwise,
with all exhibits thereto;

P378.   June 27, 2008 Report of Robert D. Bartlett with attachments;

P379.   March 16, 2009 Supplemental Report of Robert D. Bartlett;

P380.   Exhibits to July 21, 2009 Deposition of Robert D. Bartlett;

P381.   October 30, 2009 Declaration of Robert Bartlett;

P382.   June 24, 2009 Report of Peter L. Cannizzaro III with attachments;

P383.   Exhibits to July 17, 2009 Deposition of Peter L. Cannizzaro III;

P384.   August 10, 2006 Report of Hugh F. Fossier, Aurora Environmental,
with attachments;

P385.   Exhibits to July 30, 2009 Deposition of Hugh F. Fossier;

P386.   Report of Commander Donald Green, U.S. Coast Guard (retired);

P387.    Exhibits to June 25, 2009 Deposition of Commander Donald Green,
U.S. Coast Guard (retired);

P388.  Photos in Exhibit G to June 25, 2009 Deposition of Commander Donald Green;

P389.  October 29, 2009 Declaration of Commander Donald Green, U.S. Coast Guard (retired), with attachments;

P390.  Krietemeger, G., Captain, The Coast Guardsman's Manual, Naval Institute Press ((1991), pp. 258-59;

P391.  Cutler, T., The Blue Jackets Manual, United States Navy (2002), Figure 19.7 and associated text;

P392.  Dodge, D., Seamanship Fundamentals for the Deck Officer, Naval Institute Press (1981), p. 173 and Figure 6-4;

P393.  Crenshaw, R. Naval Shiphandling, Naval Institute Press, p. 69;

P394.  Clissold, P., Dictionary of Old Sea Terms;

P395.  Knight, A., Knight's Modem Seamanship (1941), p. 514;

P396.  WITHDRAWN - Marshall, R., Rough Weather Seamanship for Sail and Power (2006);

P397.  July 1, 2009 Report of Gennaro Marino, Ph.D., P.E.;

P398.  October 2009 Curriculum Vitae of Gennaro Marino, Ph.D., P.E.;

P399.  WITHDRAWN as duplicative of other exhibits - Rule 26 Disclosures of Gennaro Marino, Ph.D., P.E.;

P400.  Exhibits to August 7, 2009 Deposition of Gennaro Marino, Ph.D., P.E.;

P401.  October 30, 2009 Declaration of Gennaro Marino, Ph.D., P.E., with attached exhibits including Figures 1 through 4 and Model of Barge Impacting Floodwall prepared by Dr. Issam Harik in his office;

P402.  June 29, 2009 Report of Hector Pazos, P.E., with appendices;

P403.  Exhibits to July 20, 2009 Deposition of Hector Pazos, P.E.;

P404.  November 1, 2009 Declaration of Hector Pazos, P.E., with attachments, except the expert report of R. Lee Wooten, which is excluded and references to it;

P405.   Lower Ninth Ward ING 4727 Photo, Pazos Group 5, p. 1;

P406.   Lower Ninth Ward ING 4727 Photo, Pazos Group 5, p. 2;

P407.   Lower Ninth Ward ING 4727 Photo, Pazos Group 5, p. 3;

P408.   Lower Ninth Ward ING 4727 Photo, Pazos Group 5, p. 4;

P409.   Lower Ninth Ward ING 4727 Photo, Pazos Group 5, p. 5;

P410.   Lower Ninth Ward ING 4727 Photo, Pazos Group 5, p. 6;

P411.   Kye Harbor Photo of ING 4727, Pazos Group 6, p. 2;

P412.   Kye Harbor Photo of ING 4727, Pazos Group 6, p.3;

P413.   Kye Harbor Photo of ING 4727, Pazos Group 6, p.4;

P414.   Kye Harbor Photo of ING 4727, Pazos Group 6, p.5;

P415.   Kye Harbor Photo of ING 4727, Pazos Group 6, p.6;

P416.   Kye Harbor Photo of ING 4727, Pazos Group 6, p.7;

P417.   Kye Harbor Photo of ING 4727, Pazos Group 7, p.1;

P418.   Kye Harbor Photo of ING 4727, Pazos Group 7, p.2;

P419.   Kye Harbor Photo of ING 4727, Pazos Group 7, p.3;

P420.   Kye Harbor Photo of ING 4727, Pazos Group 7, p. 4;

P421.   June 30, 2009 Report of Melvin Spinks, P.E., with appendices;

P422.   Sobek flood animation incorporating Barge plaintiffs' experts' inputs
        (All Causes only). Included in Spinks' Expert Report and attachments;

P423.   Exhibits to August 14, 2009 Deposition of Melvin Spinks, P.E.,;

P424.   October 28, 2009 Declaration of Melvin Spinks;

P425.   Nextel invoice of calls by Ed Busch;

P426.   Any document listed by defendant;

P427.   Any document necessary or permitted for purposes of impeachment or rebuttal, including
        but not limited to photos and pleadings from EDLA Civil Action;

P428.  Any demonstrative exhibit to illustrate the testimony of any expert
witness;

**b.**     **LNA**

LNA's Exhibit List is attached hereto.  The Exhibit List notes the exhibits for which the

Court sustained plaintiffs' objections, in part or in whole.  LNA intends to provide plaintiffs with

an electronic copy of its trial exhibits, not a hard copy.

**11.     DEPOSITION TESTIMONY TO BE OFFERED AT TRIAL**

**a.     List of deposition testimony*:***

**By Plaintiffs:**  The parties continue to collaborate in good faith to create a list of a witness

to be called via deposition at trial in an effort to streamline and narrow the issues.  Thus

far, the Plaintiffs will offer the following witnesses testimony at trial via deposition:

Rachael Burnett-Mays;

Arthur J. Guthrie;

Roland Johnson;

Edward Vandermeulen (unless called by Lafarge);

Ronald McGill - 3005 Shannon Drive, Violet, LA 70092;

Wilson Matthew Simmons - 800 Iberville St., New Orleans, LA 70112;

Arthur Anderson, Jr. - 1310 Jourdan Avenue, New Orleans, LA 70117

Richard Joseph Guidry - 4436 Santa Fe Lane, McKinney, TX;

William Villavasso (deceased);

D'Antoinette Johnson -

Ernest Offray - 2175 Pinehurst Drive, LaPlace, LA 70068;

Delores St. Cyr Butler - 12276 East Glenhaven Road, Baton Rouge, LA 70815;

Ernest Edwards - 64404 Wicker Lane, Roseland, LA 70456;

Patrina Peters -

Earl Lackings -

Arcola Sutton -

Dakeia Johnson - 134 East 14th Street, Reserve, LA 70084;

Anthony Dunn

Emile Goetz - 118 Pebble Beach Drive, Slidell, LA;

John Vincent Meyers - 3420 Van Cleave Drive, Mereaux, LA;

Dennis Martinez - 2404 Nancy Drive, Mereaux, LA;

Mark Madary - 11 Brittany Place, Arabi, LA 70032;

Major Pete Tufaro - St. Bernard Parish Sheriff's Department, 401 East Judge Perez Drive, Chalmette, LA 70043;


James Ruiz - 507 E.Second Street, Lockport, LA 70032;

James Reed - 4024 Kings Drive, Chalmette, LA 70043;

Sidney Williams - 4564 Candy Lane, Lilburn, GA 30047

**LNA:**

LNA intends to offer into evidence at trial deposition testimony from the individuals

identified below, unless plaintiffs call them to testify live.  LNA's exhibit list includes all

deposition transcripts designated by either party, along with counterdesignations, so the record at

trial will be clear as to which deposition testimony has been designated and counterdesignated.

Depositions designated by LNA:
1.      Jennifer Arnold
2.      Paul Best
3.      Jackie Campbell
4.      David Castaing
5.      Glenn Cross
6.      Ernest Edwards
7.      Arthur Foley
8.      Raymond Grabert, Jr. (may testify live)
9.      AJ Guthrie
10.     Darion Hunter
11.     D'Antoinette Johnson
12.     Roland Johnson
13.     Aaron Lee
14.     Rachael Burnett Mays
15.     Helen McNeal
16.     Raymond McNeal
17.     Reed Mosher
18.     Wallace Rainey (may testify live)
19.     Andrew Sartin
20.     Earl Smith
21.     Edward VanderMeulen
22.     Lula Watson

Depositions designated by plaintiffs and counterdesignated by LNA:

1.      Arthur Anderson Jr.
2.      Colleen Bordelon
3.      Donald Bordelon
4.      Donna Bordelon
5.      Delores St. Cyr Butler
6.      Anthony Dunn
7.      Ernest Edwards
8.      Emile Goettz
9.      Richard Guidry
10.     Dakeia Johnson
11.     Roland Johnson
12.     Earl Lackings
13.     Mark Madary
14.     Ronald McGill
15.     John Vincent Meyers
16.     Ernest Offray
17.     Patrina Peters
18.     James Reed
19.     James Ruiz
20.     Wilson Simmons

21.    Arcola Sutton
22.    William Villavasso
23.    Sidney Williams (two depositions, ***with counterdesignated documents***)


**b.**    **Specific Designations:**

Please see deposition designations previously submitted to the Court.

## 12.   LIST OF CHARTS, GRAPHS, MODEL, SCHEMATIC DIAGRAMS, ETC.

**<u>Plaintiffs' List of Demonstrative Exhibits</u>** *(does not imply withdrawal from Plaintiffs' Exhibit List of exhibits to be offered into evidence):*

1.    Timeline created by Cmdr. Don Green;

2.    Maritime Standards of Care chart created by Don Green, to exclude legal conclusions;

3.    PowerPoint presentation by Genarro Marino;

4.    3-D IHNC floodwall breach animation by Genarro Marino;

5.    Delft software-based ALL CAUSES hydrological model animation by Melvin Spinks;

6.    Photos, charts and graphs included in Plaintiffs' Experts' Reports, IPET, ILIT, and/or Team Louisiana Reports;

7.    Any and all items included in Plaintiffs' Exhibit List;

8.    Any and all listed, used, published or relied upon by Defendant.

**<u>LNA:</u>**

LNA proposes that the parties be permitted to make short opening statements, of 20

minutes or less.  LNA intends to use one or two demonstratives during its opening statement,

which will be overhead photographs or diagrams of the LNA Terminal and the eastern

IHNC floodwall breaches.  LNA proposes that in lieu of closing arguments, all arguments be

reserved for post-trial briefing.

Nonetheless, LNA has shared with plaintiffs the models, videos, and other demonstratives that LNA intends to offer during the trial.  Those include:

       (a) an animation to be used by Dr. Cushing;

       (b) a video to be used by Dr. Bea;

       (c) a soil sample; and

       (d) physical models.

LNA will also utilize PowerPoint presentations with the testimony of its expert witnesses, which presentations will be developed based on plaintiffs' presentation of their case at trial.  Those PowerPoints will include trial exhibits and summary slides.

The parties have agreed to follow the procedure that the utilized for the *Robinson* trial, which was that the exhibits and demonstratives (including PowerPoint slides) to be used with a witness be provided to the other side 48 hours in advance of the witness's testimony.

**13.**    **PARTIES' LISTS OF WITNESSES**:

<u>**Plaintiffs' Fact Witnesses**</u> with *general* description of anticipated testimony (will or may call):

    Ed Busch
    409 Magnolia Lane
    Slidell, LA

    Acts, omissions, conditions, circumstances and information relevant to breakaway of ING 4727;

    Earl Smith
    6761 Downman Road
    New Orleans, LA

    Acts, omissions, conditions, circumstances and information relevant to breakaway of ING 4727;

    Louis Robin
    5913 N.Oak Street
    Marrerro, LA

Acts, omissions, conditions, circumstances and information relevant to breakaway of ING 4727;

Captain Raymond Grabert, Jr.
810 Lake Arthur Court
Slidell, LA

Acts, omissions, conditions, circumstances and information relevant to breakaway of ING 4727;

Eric Thigpen
35 Althea Drive
Carriere,  LA

Acts, omissions, conditions, circumstances and information relevant to breakaway of ING 4727;

Barry Boudreaux
431 Bellview St.
River Ridge, LA 70123

Acts, omissions, conditions, circumstances and information relevant to breakaway of ING 4727;

Jacob Robert "Bob" Glaser
308 Sweet Gum Lane
Madisonville, LA 70447

Destruction of and damages to Holiday Jewelers.

Josephine Richardson
1321 Egania Street
New Orleans, LA 70117

Destruction of and damages to 1321 Egania Street; facts and damages relevant to death of Joseph Richardson;

Terry Adams
2165 Carol Sue
Gretna, LA 70056

Observations of ING 4727 on August 29, 2005; facts, observations and circumstances relevant to breach of IHNC floodwall and resulting damages;

Daniel Weber
2522 Lavender St.

New Orleans, LA  70112

Observations of ING 4727 on August 29, 2005; facts, observations and circumstances relevant to breach of IHNC floodwall and resulting damages;

Wayne Centanni
Centanni Investigative Agency
5736 Citrus Blvd.
River Ridge, LA 70123

Methods, scope and nature of interviews and/or contacts with putative class members and others; property taken from homes in the Lower Ninth Ward;

Robert Garcia
Centanni Investigative Agency
5736 Citrus Blvd
River Ridge, LA 70123

Methods, scope and nature of interviews and/or contacts with putative class members and others; property taken from homes in the Lower Ninth Ward;

Arthur Murph
105 Berkley Drive
 New Orleans, LA 70131

Observations of ING 4727 on August 29, 2005; facts, observations and circumstances relevant to breach of IHNC floodwall and resulting damages;  facts relative to settlement with Lafarge, post-Katrina contact with Lafarge; Scraping/grinding/clanging/hitting sounds, sounds of the "explosion," coupled with appearance of floodwater and/or the barge.

Carolyn Berryhill

Scraping/grinding/clanging/hitting sounds, sounds of the "explosion," coupled with appearance of floodwater and/or the barge.

Andrew Sartin
5428 North Roman Street
New Orleans, LA 70117

Scraping/grinding/clanging/hitting sounds, sounds of the "explosion," coupled with appearance of floodwater and/or the barge.

John Alford
1827 East Homestead Drive
Algiers, LA 70114

Damages due to flooding at 2423 Deslonde.

Jerry Alford
1827 East Homestead Drive
Algiers, LA 70114

Damages due to flooding at 2423 Deslonde.

Kenrick Harding (in absence of stipulation as to authenticity and
admissibility of photos and video)
821 Baronne Street
New Orleans, LA 70113

Stan Guidry (in absence of stipulation as to authenticity and admissibility of
photos)
2548 Mississippi Avenue
Metairie, LA 70003

Towanda Shexnayder
7101 Northgate Drive
New Orleans, LA

Scraping/grinding/clanging/hitting sounds, sounds of the "explosion," coupled
with appearance of floodwater and/or the barge.

Arthur Anderson, III
9001 Dwyer Road
New Orleans, LA

Scraping/grinding/clanging/hitting sounds, sounds of the "explosion," coupled
with appearance of floodwater and/or the barge;   prior statements of Arthur
Murph concerning ING 4727 and the South Breach;

Michael Bickham
2407 Rose Drive
Gretna, LA

Scraping/grinding/clanging/hitting sounds, sounds of the "explosion," coupled
with appearance of floodwater and/or the barge.

Kevin McFarland
4803 Lakeshore Drive A-203
Shreveport, LA 70119

Scraping/grinding/clanging/hitting sounds, sounds of the "explosion," coupled with appearance of floodwater and/or the barge.

Captain James Hall
34220 Cane Market Road
Walker, LA 70785
Conditions at or near the MRGO/ICWW Junction during Katrina;

Louis Colin
1320 Egania Street
New Orleans, LA 70117

Discovery, location and recognition of Joseph Richardson's body within the Richardson residence; tender of body to law enforcement.

Gertrude LeBlanc
1738 Tennessee Street
New Orleans, LA 70117

Observations of ING 4727 on Sunday, August 28, 2005;

Frazier Tompkins
1310 Tricou Street
New Orleans, LA 70117

Observations of ING 4727 on Sunday, August 28, 2005;

Joel Dupre
Southern Recylcling/Southern Scrap
912 Julia Street
New Orleans, Louisiana

In absence of stipulation,  concerning debris depicted on the north side of the Florida Bridge (barge on top) and on south side of Florida Bridge (on western IHNC bank), produced by Lafarge during this proceeding);

Tommy Duplessis – via Stipulation contained in Uncontested Facts
2605 Meadow Lark Drive
Poydras, LA 70085

Authentication of August 29, 2005 video from St. Bernard Parish Courthouse.

## Plaintiffs' Experts

Lt. Commander Donald Green, USCG (Ret.)
K-Don Marine Consulting

8876 Gulf Freeway, Ste. 120
Houston, TX 77017

Expert in the areas of marine vessel operations, maritime regulations, seamanship, safe operating practices, mooring, maritime hurricane precautions;

Hector Pazos, P.E.
Ocean-Oil International Corp.
P.O. Box 47188
St. Petersburg, FL 33743

Naval architect, marine surveyor, marine engineer to testify concerning maritime standards of care, maritime regulation, maritime hurricane preparations, maritime industry standards, eastern IHNC floodwall breach causation;

Robert Bartlett, P.E.
Bartlett Engineering
2617 Edenborn Avenue, Ste. D
Metairie, LA 70002

Civil and structural engineering, metallurgic analysis expert, to testify concerning nature and causes of IHNC wall breaches, damages to ING 4727, saline pollution and resulting damages;

Melvin Spinks, P.E.
CivilTech Engineering, Inc.
11821 Telge Road
Cyprus, TX 77249

Professional engineering, hydrology, computer aided flood modeling, nature, extent, sources, timing, location and causes of flooding;

Gennaro Marino, Ph.D, P.E.
Mohamed Gamal Abdel_Maksoud, Ph.D, P.E.
Marino Engineering Associates, Inc.
1101 E. Colorado Avenue
Urbana, IL 61801

Geotechnical, structural and civil engineering to testify concerning nature and causes of IHNC wall breaches;

Hugh Fossier
Aurora Environmental Consultants, LLC
236 Lavosier Street
Gretna, LA

Expert testimony re saline pollution/contamination

John Theriot, CPA
701 Metairie Road, Ste. 2A301
Metairie, LA 70005

Expert business loss appraisal relative to Holiday Jewelers, Inc.;

Peter L. Cannizzarro, III
4724 Hermann Street
Metairie, LA 70006

Expert property appraisal relative to Alford and Richardson properties;

Dr. David Mitchell
PO Box 70
Daypon, Texas 77535

Expert meteorologist relative to weather effects of Hurricane Katrina.

**Additionally** (may call):

Any and all needed for authentication;

Any and all for rebuttal or impeachment, including but not limited to Joel Dupre.


**LNA:**

LNA intends to call the following witnesses at trial:

LNA's fact witnesses to testify live:

1.    Jerome Aguillard.  2221 Vickers Drive, Baton Rouge, LA 70815.  Mr. Aguillard will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

2.    Larry Arnold.  24193 Highway 435, Abita Springs, LA 70420.  Mr. Arnold will testify concerning the loss of barges due to breakaways during Hurricane Katrina at the Lone Star facility in New Orleans, despite measures taken to secure those barges.

3.    Debra Blackwell.  5733 Wickfield Drive, New Orleans, LA 70122.  Ms. Blackwell will testify concerning her personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall

breaches, similar to sounds reported by Lower Ninth Ward residents.

4.  Ed Busch.  409 Magnolia Lane, Slidell, LA 70461.  Mr. Busch will testify regarding facts related to procedures and practices at LNA's New Orleans Terminal including unloading of barges, hurricane preparation, and other practices and procedures; terminal practice and experience relating to barge fleets; arrival, unloading and handling of the ING 4727 while at LNA's terminal; release of the ING 4727 to Zito fleeting; method and rationale for mooring and other hurricane preparation activities in advance of Hurricane Katrina, including type and configuration of lines and rationale therefor; timing of receipt of information relative to Hurricane Katrina and response thereto; barge movements; and any and all other facts relating to the exercise of due care by LNA in the handling of ING 4727.

5.  Gregory Campbell.  8005 Warsaw Street, Metairie, LA 70003.  Mr. Campbell will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

6.  Raymond Cross.  3929 Imperial Drive, Chalmette, LA 70043.  Mr. Cross will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

7.  Joy Davis.  6801 Dorchester Street, New Orleans, LA 70126.  Ms. Davis will testify concerning her personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

8.  Captain James Hall.  26384 Wax Road, Lot 29, Denham Springs, LA  70726.  Captain Hall will testify concerning his personal experience during Hurricane Katrina aboard a vessel at New Orleans Bulk Terminal in Gulf Intracoastal Waterway on August 29, 2005.  He will also testify regarding his experiences and observations prior to and on the morning of the storm in the vicinity of the GIWW and the IHNC, including how his vessel was moored, weather (precipitation, wind, and visibility), seas and storm surge, as well as his observations of other vessels in the vicinity.

9.  Carrie Jenks.  c/o Lafarge North America, 12950 Worldgate Drive, Suite 600, Herndon, VA 20170.  Ms. Jenks will testify regarding LNA's distribution procedures and practices, including communications regarding supply of cement and transport of ING 4727.  (Depending on plaintiffs' case, may not be called.)

10.  Steven Lentz.  409 LeGardeur Drive, Slidell, LA 70460.  Mr. Lentz will testify regarding personal experience during and after Hurricane Katrina including but not limited to testimony of "boom" sound made by failure of floodwall at 17th

Street Canal location, similar to sounds reported by individuals at breach locations in Lower Ninth Ward.

11.  Don McCrosky.  13572 Bluff Point Drive, Geismar, LA 70734.  Mr. McCrosky will testify concerning his personal experience during and after Hurricane Katrina, including wind direction and timing and authentication of photographs taken at Entergy plant and showing storm surge.

12.  Alfred McRoyal.  5749 Wickfield Drive, New Orleans, LA 70122.  Mr. McRoyal will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

13.  Michael O'Dowd.  3404 Maryland Avenue, Kenner, LA 70065.  Mr. O'Dowd will testify concerning his personal experience before, during, and after Hurricane Katrina, including visibility, measurements taken, and photographs from USCOE lock on IHNC.

14.  Sarah Price.  2300 Edenborn Avenue, Building 2, Apt. 214, Metairie, LA 70001.  Ms. Price will testify concerning her personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

15.  Richard Riess.  40145 Taylors Trail, Apt. 105, Slidell, LA 70461.  Mr. Riess will testify regarding his personal experience during and after Hurricane Katrina, including events at Pump Station No. 5.


LNA's fact witnesses to testify by deposition:

1.  Jennifer Arnold.  61 Graham Drive, Mayfield, KY 42066.  Ms. Arnold will testify regarding facts related to communications with LNA personnel at LNA's New Orleans Terminal in advance of Hurricane Katrina regarding hurricane preparation and release of barges, and LNA safety procedures and practices.

2.  Paul Best.  6967 Colbert Street, New Orleans, LA 70124.  Mr. Best will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

3.  Jackie Campbell.  8005 Warsaw Street, Metairie, LA 70003.  Ms. Campbell will testify concerning her personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

4.  David Scott Castaing.  124 Rue Holiday, Slidell, LA 70461.  Mr. Castaing will

testify concerning the handling of ING 4727 prior to Hurricane Katrina.

5.  Glen Cross.  1968 Carnot Street, New Orleans, LA 70122.  Mr. Cross will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

6.  Ernest Edwards.  2175 Pinehurst Drive, LaPlace, LA 70068.  Mr. Edwards will testify regarding his personal experience during and after Hurricane Katrina.

7.  Arthur Foley.  4309 Van Drive, New Orleans, LA 70122.  Mr. Foley will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

8.  Raymond Grabert, Jr.  810 Lake Arthur Court, Slidell, LA 70461.  Mr. Grabert will testify concerning the handling of ING 4727 prior to Hurricane Katrina. (Depending on plaintiffs' case, may testify live.)

9.  A.J. Guthrie.  1211 Habersham Way, Franklin, Tennessee 37067.  Mr. Guthrie will testify regarding facts related to LNA distribution procedures and practices, including timing of upgrades to LNA's New Orleans Terminal dock.

10.  Darion Hunter.  501 Wallace Drive, New Orleans, LA 70122.  Mr. Hunter will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

11.  D'Antionette Johnson.  2418 George Nick Connor Drive, New Orleans, LA 70119.  Ms. Johnson will testify regarding her personal experience during and after Hurricane Katrina, including witnessing the breach of the floodwall without the involvement of a barge.

12.  Roland Johnson.  717 Silver Hills Drive, Prattville, AL 36066.  Mr. Johnson will testify regarding facts related to procedures and practices at LNA's New Orleans Terminal including unloading of barges, hurricane preparation, and other practices and procedures; terminal practice and experience relating to barge fleets; arrival, unloading and handling of the ING 4727 while at LNA's terminal; release of the ING 4727 to Zito fleeting; method and rationale for mooring and other hurricane preparation activities in advance of Hurricane Katrina, including type and configuration of lines and rationale therefor; and any and all other facts relating to the exercise of due care by LNA in the handling of ING 4727.

13.  Aaron Lee.  4821 New Orleans Street, New Orleans, LA 70122.  Mr. Lee will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

14.     Rachael Burnett Mays.  3420 Sierra Drive, West Paducah, KY.  Ms. Burnett will testify regarding LNA's distribution procedures and practices, including communications regarding supply of cement and transport of the ING 4727.

15.     Helen McNeal.  613 East Hamilton Street, Gonzales, LA 70737.  Ms. McNeal will testify concerning her personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breach(es), similar to sounds reported by Lower Ninth Ward residents.

16.     Raymond McNeal.  613 East Hamilton Street, Gonzales, LA 70737.  Mr. McNeal will testify concerning his personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

17.     Reed Mosher.  c/o U.S. Army Engineering Research and Development Center. Dr. Mosher will testify concerning the creation and genesis of the IPET Report, including the various studies, analyses, and conclusions detailed in the IPET Report concerning the flooding of the Greater New Orleans area on or around August 29, 2005, and including but not limited to the causes of the failures of the IHNC floodwall and the lack of involvement by the ING 4727.

18.     Wallace Rainey.  2323 West Bay Area Blvd., Apt. 709, Webster, TX 77598.  Mr. Rainey will testify regarding his personal experience during and after Hurricane Katrina, including events at Pump Station No. 5.  (Depending on plaintiffs' case, may testify live.)

19.     Andrew Sartin.  5428 North Roman, New Orleans, LA.  Mr. Sartin will testify regarding his personal experience during and after Hurricane Katrina.

20.     Earl Smith.  6761 Downman Road, New Orleans, Louisiana.  Mr. Smith will testify regarding procedures and practices at LNA's New Orleans Terminal including unloading of barges, hurricane preparation, and other practices and procedures; terminal practice and experience relating to barge fleets; arrival, unloading and handling of the ING 4727 while at LNA's terminal; release of the ING 4727 to Zito fleeting; method and rationale for mooring and other hurricane preparation activities in advance of Hurricane Katrina, including type and configuration of lines and rationale therefor; timing of receipt of information relative to Hurricane Katrina and response thereto; and any and all other facts relating to the exercise of due care by LNA in the handling of ING 4727.

21.     Edward VanderMeulen.  13774 Rockwood Court, Morrison, Illinois 61270.  Mr. VanderMeulen will testify regarding facts related to procedures and practices in LNA's Distribution Department relative to handling and delivery of barges, barge safety, responsibility of terminal personnel, and similar issues; and New Orleans terminal changes/upgrades.

22.     Lula Watson.  4309 Van Drive, New Orleans, LA 70122.  Ms. Watson will testify concerning her personal experience during and after Hurricane Katrina, including "boom" noises occurring at other floodwall breaches, similar to sounds reported by Lower Ninth Ward residents.

LNA's expert witnesses:  (A brief description of each witness's testimony is identified in Part 6.b *supra*.)

1.     Reda Bakeer.  4624 Pike Drive, Metairie, LA 70003.

2.     Robert G. Bea.  212 McLaughlin Hall, Berkeley, CA  94720-1710.

3.     Kenneth J. Boudreaux.  1424 Bordeaux Street, New Orleans, LA  70115.

4.     Charles Cushing.  C.R. Cushing & Co., Inc., 30 Vesey Street, 7th Floor, New York, NY 10007.

5.     Austin Dooley.  Dooley SeaWeather Analysis, Inc., P.O. Box 63, City Island, NY 10464.

6.     G. Paul Kemp.  National Audubon Society, 633 Magnolia Wood Ave., Baton Rouge, LA 70808.  (Depending on plaintiffs' case, may not be called.)

7.     Leslie R. Lemon.  L.R. Lemon Meteorological Services, 16416 Cogan Drive, Independence, MO  64055.

8.     Wade R. Ragas.  Real Property Associates, Inc., 3017 Harvard Avenue, Suite 204, Metarie, LA  70006.

9.     Daniel F. Ryan II, PE.  DR Maritime Consulting, 210 Tiger Tail Road, Houma, LA  70360.

10.     D. Philip Skaer II.  Ropetech, Inc., 10712 Scioto Lane, Austin, TX 78747.

11.     Capt. Larry E. Strouse.  Dufour, Laskay & Strouse, Inc., 3939 N. Causeway Blvd., Suite 300, Metairie, LA 70002.

12.     Joseph N. Suhayda.  Joseph Suhayda & Associates, 285 Sunset Blvd., Baton Rouge, LA 7080.

13.     W. Jason Weiss.  550 Stadium Mall Drive, West Lafayette, IN 47907.


***THE WITNESS LIST WAS FILED IN ACCORD WITH PRIOR COURT ORDERS.***

14.  **NON-JURY TRIAL**

**Plaintiffs:**  This is a non-jury trial.  Plaintiffs' suggested findings of fact and conclusions of law have already been filed.  Record Docs. 19644

**LNA:**  The claims of John and Jerry Alford, Josephine Richardson, and Holiday Jewelers, Inc. will be tried to the Court, not to a jury.  LNA has previously submitted to the Court its proposed findings of fact and conclusions of law (Doc. 19652), its Pre-Trial Brief (Doc. 19653), and its response to plaintiffs' proposed findings of fact and conclusions of law (Doc. 19696).

15.  **THIS IS A CASE IN WHICH THE PLAINTIFFS SEEK COMPENSATORY AND PUNITIVE DAMAGES.  THE ISSUE OF LIABILITY _____ BE TRIED SEPARATELY FROM THAT OF QUANTUM.**

**LNA** disputes that plaintiffs may seek punitive damages in this action.

16.  **OTHER MATTERS:**

**Plaintiffs:**

Lafarge agrees via email to Plaintiffs' counsel not to offer proof, but refuses Plaintiffs' request for a binding stipulation, that a large piece of metallic debris depicted in various photographs of the western batture of the IHNC below the Florida Avenue Bridge is a piece of scrap, and not what William Villavasso saw through the North breach of the Eastern IHNC floodwall during Katrina. Plaintiffs have provided Lafarge with photos of this thing, along with ample reference from *In The Matter Of Southern Scrap Material Co., L.L.C., As Owner Of The Southern Scrap Drydock, In A Cause Of Exoneration From Or Limitation Of Liability*, USDC EDLA Civil Action 06-1860, Sect. F, Mag. 1. This information provided to Lafarge demonstrates that the thing in question is actually a piece of the drydock, which became lodged against the North face of the Florida Avenue Bridge during Katrina, and that the thing in the photos is a dismantled portion of the drydock placed on the western batture below the Florida Avenue Bridge after Hurricane Rita.   Plaintiffs reserve the right to offer proof that this item is not what Mr. Villavasso saw, should Lafarge renege on its assurances.

**LNA:**

1.    Plaintiffs have stated in their inserts for the Pre-Trial Order that they may file a motion seeking a continuance.  LNA strongly opposes such a request.  This case has been pending for nearly five years and has already been continued multiple times.  As the Court is well aware, the Court and the parties have spent significant time and resources preparing for the June 2010 trial.  The Court has set aside three weeks of its time for the trial.  And many, many witnesses and attorneys have similarly blocked out the time for trial, and prepared for trial, in reliance on the June 2010 trial setting.  A continuance is simply impossible at this time.

2.    LNA objects to plaintiffs' attempt to raise several issues in the Pre-Trial Order that they did not raise in any earlier briefing, including in their pre-trial proposed findings of fact and conclusions of law (Doc. 19644).  These issues include:

(a)    The alleged "spoliation" by LNA of the ropes that secured the barge.  This is a brand new assertion.  If plaintiffs attempt to offer evidence on this issue at trial, LNA reserves the right to submit fact witness affidavits, and testimony from counsel, concerning the chain-of-custody of the ropes and other facts relevant to this issue.

(b)    Punitive damages.  Plaintiffs contend in their statement of facts in the Pre-Trial Order that LNA is liable for punitive damages because the barge was allegedly free in the IHNC on August 28, 2005.  That argument is brand new, and allegedly supported only by the testimony of two of plaintiffs' *rebuttal* witnesses.  The Court should dismiss that claim.[5]

(c)    LNA's corporate organization.  Plaintiffs' listing of contested fact issues in the Pre-Trial Order states that LNA's "[o]rganizational structure and ownership" is contested.  There is no dispute over that issue, and it is wholly irrelevant to this case.  In fact, the Court denied discovery on this issue because it is irrelevant.  See Doc. 14534 (these issues are "in no way relevant to any claim or defense asserted in this matter" and "irrelevant to the subject matter of this action").[6]  The Court should not permit plaintiffs to litigate this

---

[5] Plaintiffs' contend that their claim for punitive damages is not new, is alleged in the original Mumford complaint, and is based upon far more than the testimony of two witnesses or allegations that the barge was free on August 28, 2005.

[6] The specific deposition subjects that the Court found irrelevant were:

"Any and all facts and circumstances relevant to nature, timing, purpose, occurrence and effects of 2006 stock reacquisition, divestiture, merger, sale, acquisition of Lafarge North America, Inc., to, through and/or involving Efalar, Inc., Lafarge SA, Lafarge Group, Cementia Holding Company, Blue Circle North America; the owners, directors, structure, relationships and purposes of any and all of the foregoing; and any and all facts and circumstances surrounding and/or contained in Year 2006 SEC filings by any or all of the foregoing; purpose, intent and effects of any and all of the foregoing relative to this litigation and/or to any laws, statutes or regulations governing the afore

issue at trial.

2.  Plaintiffs' exhibit list in the Pre-Trial Order includes two types of documents that are objectionable. First, plaintiffs have kept on their exhibit list a large number of exhibits for which the Court sustained LNA's objections, and which are therefore inadmissible. See Pl. Exh. Nos. 29, 133, 136, 137, 161, 165, 180 (objection sustained in part), 235, 243, 255, 264, 346, 355, 364, 375, and 376. Those exhibits should be removed from plaintiffs' exhibit list, or the list should reflect that the exhibits are inadmissible. Second, plaintiffs' exhibit list includes a "catch all" exhibit that does not specifically identify the document covered by the exhibit – *e.g.*, No. 13 ("policies and procedures of Lafarge"). The Court should require plaintiffs to specifically identify the documents they intend to include as part of that exhibit.

3.  At this morning's teleconference, Your Honor expressed concern about the number of lay witnesses scheduled to testify live at the trial. Specifically, the Court indicated that there should be no need for witnesses to testify live concerning "boom"-like sounds that they heard and that such witnesses should testify by designated deposition testimony. LNA agrees that there is no need for these witnesses to testify live and has proposed to plaintiffs that if plaintiffs submit designated deposition testimony for their "sound" witnesses (Daniel Weber, Carolyn Berryhill, Andrew Sartin, Towanda Shexnayder, Arthur Anderson III, Michael Bickham, and Kevin McFarland), LNA will submit designated deposition testimony for its "sound" witnesses (Jerome Aguillard, Debra Blackwell, Gregory Campbell, Raymond Cross, Joy Davis, Steven Lentz, Alfred McRoyal, and Sarah Price).

In addition, LNA has proposed that Earl Smith and Louis Robin, who have previously been deposed and whose testimony relates only to alleged negligence and not causation, also testify by deposition and not live. Plaintiffs had previously agreed in writing that these individuals would testify by deposition, but they have changed their minds.

LNA is also willing to permit the following witnesses on issues of alleged negligence, not causation, testify by deposition: Raymond Grabert, Eric Thigpen, and Barry Boudreaux.

Plaintiffs have listed Joel Dupre as a witness to testify live at trial. He is superfluous at this point, however, because LNA is not offering any proof that he is needed to rebut.

---

described conduct; any and all facts and circumstances surrounding Rice et al. v. Lafarge North America Inc. et al., Civil Action 268974V, and consolidated cases, Circuit Court for Montgomery County, Maryland." Doc. 13343 (amended 30(b)(6) deposition notice), at 6.

**17.  THE TRIAL COMMENCES ON JUNE 21, 2010, AND IS ANTICIPATED TO LAST APPROXIMATELY 3 WEEKS**

**LNA:**

LNA is preparing to fit its own case within the Court's trial schedule (i.e., seven trial days), but is concerned that plaintiffs' list of planned witnesses remains too long to fit within seven trial days.[7]  LNA requests, therefore, that the Court establish and enforce a "chess clock" protocol to divide trial time between the parties, to ensure that each side has an equal amount of time to present its own witnesses and cross-examine the witnesses for the other side.  Moreover, because the July 4 holiday weekend falls during the period when LNA expects to be presenting its case, there is a need for planning and predictability to facilitate the orderly presentation of witnesses, particularly those who must travel from out of town.  Given that there will be a total of fourteen (14) trial days, LNA anticipates that plaintiffs will rest their case at the close of the day on June 29, 2010 (the seventh trial day), and that LNA will begin presenting its witnesses on June 30, 2010 (the eighth trial day).[8]

**18.  THIS PRE-TRIAL ORDER HAS BEEN FORMULATED AFTER CONFERENCE AT WHICH COUNSEL FOR THE RESPECTIVE PARTIES HAVE APPEARED IN PERSON.  REASONABLE OPPORTUNITY HAS BEEN AFFORDED TO ALL COUNSEL FOR CORRECTIONS, OR ADDITIONS, PRIOR TO SIGNING.  HEREAFTER THIS ORDER WILL CONTROL THE COURSE OF THE TRIAL AND MAY NOT BE AMENDED EXCEPT BY CONSENT OF THE PARTIES AND THE COURT, OR BY ORDER OF THE COURT TO PREVENT MANIFEST INJUSTICE.**

**19.  Possibility of settlement of this case was considered.**

The **Plaintiffs** abstain from any representation that Lafarge considered the possibility of

---

[7]  By way of example, the parties had agreed that plaintiffs would offer the testimony of Earl Smith and Louis Robin by deposition.  Plaintiffs have apparently changed their minds and now intend to call them to testify live.

[8]  LNA notes that at least one its expert witnesses, Leslie R. Lemon, is not available after July 1, 2010, and therefore must testify on or before that date (which would represent the ninth trial day).

settlement.

Respectfully submitted, this 7th day of June, 2010.

**BY:**

Laurence E. Best (3012)
Peter S. Koeppel (1465)
**BEST KOEPPEL TRAYLOR**
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
E-mail: lebest@bestkoeppel.com
peterklaw@aol.com


/s/Brian A. Gilbert
Brian A. Gilbert (21297)
**LAW OFFICE OF BRIAN A. GILBERT, P.L.C.**
(Of Counsel to **BEST KOEPPEL TRAYLOR**)
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
E-mail: bgilbert@briangilbertlaw.com,
 bgilbert@bestkoeppel.com


/s/Shawn Khorrami
Shawn Khorrami (CA SBN #14011)
**KHORRAMI, POLLARD & ABIR, LLP**
444 S. Flower Street, 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
e-mail: Skhorrami@kpalawyers.com


Lawrence A. Wilson (N.Y.S.B.A. #2487908)
**WILSON, GROCHOW, DRUKER & NOLET**
233 Broadway, 5th Floor
New York, NY  10279
Telephone:  (212) 608-4400

Facsimile:  (212) 608-0746
e-mail:  lwilson@wgdnlaw1.com


Lawrence D. Wiedemann (#13457)
Karl Wiedemann (18502)
**WIEDEMANN AND WIEDEMANN**
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: 504-581-6180
Facsimile: 504-581-4336
e-mail: ldwiedeman@aol.com
karlwied@bellsouth.net

Patrick J. Sanders (18741)
**PATRICK J. SANDERS, LLC**
3316 Ridgelake Drive, Suite 100
Metairie, Louisiana 70002
Telephone: (504) 834-0646
e-mail: pistols42@aol.com


Richard T. Seymour (D.C. Bar #28100)
**LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C.**
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C. 20036-4129
Telephone: 202-862-4320
Cell: 202-549-1454
Facsimile: 800-805-1065 and 202-828-4130
e-mail: rick@rickseyourlaw.net


*Attorneys for the Plaintiffs*

AND


Derek A. Walker (#13175)
Robert B. Fisher, Jr., T.A. (#5587)
Charles P. Blanchard (#18798)
Thomas D. Forbes (#5682)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000

Facsimile:  (504) 585-7075

 /s/ John D. Aldock
John D. Aldock
Mark S. Raffman
Adam M. Chud
Kirsten V.K. Robbins
Eric I. Goldberg
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC  20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA  70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

**APPROVED AND RENDERED** this 10th day of June, 2010, New Orleans, Louisiana,
subject to a Minute Entry of this date.

_____
**HON. STANWOOD R. DUVAL, JR.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile and/or ECF upload, this 7th day of June, 2010.

<u>/s/ Brian A. Gilbert</u>

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| **IN RE: KATRINA CANAL BREACHES** | * | |
| **CONSOLIDATED LITIGATION** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 05-4182** |
| | * | |
| **PERTAINS TO: BARGE** | * | **SECTION "K"** |
| | * | |

| | | |
|---|---|---|
| *Mumford* | **C.A. No. 05-5724** | *as to claims of plaintiffs Josephine Richardson and Holiday Jewelers, Inc. ONLY* |
| *Benoit* | **C.A. No. 06-7516** | *as to claims of plaintiffs' John Alford and Jerry Alford – ONLY\** |
| | | * |


## LAFARGE NORTH AMERICA INC.'S EXHIBIT LIST PREPARED FOR

## BELLWETHER TRIAL SCHEDULED FOR JUNE 21, 2010

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 1 | LNA/Ingram Transportation Agreement | LNA 000001-000005 | |
| 2 | Barge unloading report | LNA 000105 | |
| 3 | New Orleans terminal shipping document | LNA 000106 | |
| 4 | Fleet picture | LNA 000107 | |
| 5 | New Orleans terminal report | LNA 000108 | |
| 6 | Invoices for mooring line | LNA 000481-84 | |
| 7 | Schematics of IHNC levees and floodwall as designed and as built | LNA 000723-38 | |
| 8 | Overhead/aerial photograph of the IHNC and Lower Ninth Ward After Hurricane Katrina | LNA 000739 | |
| 9 | Overhead/aerial photograph of the IHNC and Lower Ninth Ward Before Hurricane Katrina | LNA 000740 | |
| 10 | Photos of the IHNC levee and floodwall after Hurricane Katrina, showing the Southern end of the Southern Breach | LNA 000741-46, LNA 000748, LNA 000750-51, LNA 000754-57 | |
| 11 | Photo of the IHNC levee and floodwall after Hurricane Katrina, showing the trench at the Southern Breach | LNA 000752 | |

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 12 | Photos of the IHNC levee and floodwall after Hurricane Katrina, showing scour trenching and gapping | LNA 000758-59 | |
| 13 | Photos of other barges and vessels in the Greater New Orleans area that broke free during Hurricane Katrina and impacted other levees and floodwalls | LNA 000760-69 | |
| 14 | Photos of the ING 4727 in the Lower Ninth Ward, including the bottom of the barge | LNA 000774-90 | |
| 15 | Photo of a barge on top of the Florida Avenue Bridge after Hurricane Katrina | LNA 000797 | **SUSTAINED**, unless at trial it is proven that an expert relied thereon in giving an opinion as one barge lying on another barge has no apparent relevance to the Court. |
| 16 | Photo of other barges at the LNA Terminal on 9/20/05 | LNA 000801 | |
| 17 | Photos of other barges and vessels that broke free during Hurricane Katrina and impacted levees and floodwalls near Southern Scrap | LNA 000802-07 | |
| 18 | Drawing and schematics of LNA's New Orleans terminal | LNA 001053-65 | |
| 19 | U.S. Coast Guard documents showing timing of Port Conditions Whiskey, X-Ray, Yankee, and Zulu | LNA 001066-69 | |
| 20 | Promulgation of Emergency Orders, Mayor of New Orleans | LNA 001070 | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 21 | Lakefront Airport Weather Data from August 29, 2005. showing the path of Hurricane Katrina and weather conditions during Katrina, including wind speed and direction at locations of interest | LNA 001071-78 | |
| 22 | G. Russell, Nagin orders first-ever mandatory evacuation of New Orleans, Times-Picayune, August 28, 2005 | LNA 001079-80 | |
| 23 | Nautical Charts, depicting junction of GIWW and IHNC, Michaud Canal, and the junction of MRGO with GIWW | LNA 001081-84 | |
| 24 | Schematics of IHNC levees and floodwall at the Florida Avenue Bridge Complex as Designed and as Built | LNA 001085-87 | |
| 25 | Photos of the bottom 1/3 of ING 4727 taken after its removal from the Lower Ninth Ward | LNA 001088-94, LNA 001098-99, LNA 001103, LNA 001109-10, LNA 001112 | |
| 26 | Photos of LNA's New Orleans Terminal and vicinity after Hurricane Katrina | LNA 001118-19, LNA 001121, LNA 001124, LNA 001135 | |
| 27 | Photo of the IHNC levee and floodwall after Hurricane Katrina showing shell road | LNA 001136 | |
| 28 | Photo of the IHNC floodwall and levee after Hurricane Katrina showing chain-link fence built on the IHNC floodwall | LNA 001137 | |

3

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 29 | Photo of the IHNC levee and floodwall after Hurricane Katrina showing scour trenching and gapping | LNA 001138 | |
| 30 | Photos of the IHNC levee and floodwall after Hurricane Katrina, showing the North Breach | LNA 001139-61 | |
| 31 | Overhead/aerial photos Plaquemines Parish East Bank levees and floodwalls after Hurricane Katrina showing breach | LNA 001162-65 | |
| 32 | Overhead/aerial photos MRGO Reach 2 levees and floodwalls after Hurricane Katrina showing breach | LNA 001171 | |
| 33 | Photos of other barges in the Greater New Orleans area that broke free during Hurricane Katrina and impacted other levees and floodwalls | LNA 001172-78 | **OVERRULED**. |
| 34 | Photos of Damage in the Lower Ninth Ward | LNA 001246, LNA 001258, LNA 001264, LNA 001271, LNA 001273, LNA 001305, LNA 001326, Cushing Figures G-1, G-3 | |
| 35 | Photos taken at the IHNC Lock during Hurricane Katrina showing weather conditions and visibility | LNA 001344-60 | **OVERRULED**, provided a proper foundation is laid.  After reviewing these photographs, the Court notes the relevance of some of these is not manifestly evident. |
| ~~36~~ | ~~U.S. Coast Guard Report of Investigation into the Circumstances Surrounding the Incident Involving Hurricane Katrina ING 4727~~ | ~~LNA 001361-75~~ | **SUSTAINED**.(see order RD 19739 at 1-2 for details) |

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| ~~37~~ | ~~Breakaway Grounding, including Investigative Report: Grounding of Hopper Barge ING 4727, and including all attachments or exhibits~~ | ~~LNA 001376-90~~ | SUSTAINED. |
| 38 | Astronomical data | LNA 001389 | |
| 39 | Hydrograph showing water levels in IHNC, including that produced as LNA | LNA 001390 | |
| 40 | U.S. Army Corps of Engineers Technical Report No. 1; E-99 Sheet Pile Wall Field Load Test Report | LNA 001391-1473 | |
| 41 | U.S. Army Corps of Engineers Lake Pontchartrain, La. and Vicinity Chalmette Area Plan, Design Memorandum No. 3 General Design | LNA 004144-383 | |
| 42 | National Engineering Science Co. Storm Surge Effects of the Mississippi River Gulf Outlet Prepared for USACE | LNA 004403-529 | |
| 43 | U.S. Army Corps of Engineers New Orleans District Mississippi River - Gulf Outlet St. Bernard Parish, La. Bank Erosion Reconnaissance Report (January 1994) | LNA 004530-779 | |
| 44 | U.S. Army Corps of Engineers New Orleans District, Mississippi River-Gulf Outlet St. Bernard Parish, La. Bank Erosion Reconnaissance Report (February 1988) | LNA 004780-989 | |
| 45 | U.S. Army Corps of Engineers Disposition Form, Exhibit US 202(c)  #23 | LNA 004990-96 | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 46 | Corps' Response to a St. Bernard's citizen's concern re "funnel," Exhibit US 202(c)  # 33 (Nov. 26, 1969) | LNA 004997-5006 | |
| 47 | Memorandum, Hurricane Protection Louisiana, Exhibit US 202(c) #37 (June 28, 2002) | LNA 005007-41 | |
| 48 | War Department Corps of Engineers Mississippi River Commission, Code for Utilization of Soils Data for Levees (April 1947) | LNA 005375-5412 | |
| 49 | Photos showing high water marks and water depths | LNA 005498-5500 | |
| 50 | Overhead/aerial photos MRGO Reach 2 levees and floodwalls after Hurricane Rita showing breach | LNA 007246-49 | |
| 51 | Overhead/aerial photos of MRGO Reach 2 levees and floodwalls after Hurricane Rita showing breaches | LNA 007257-59 | |
| 52 | Overhead/aerial photos of ING 4727 in the Lower Ninth Ward | LNA 007489, LNA 007529-30 | |
| 53 | Photos of the IHNC levee and floodwall after Hurricane Katrina, showing scour trenching and gapping and cyclone fence | LNA 007783-89 | |
| 54 | Photos of LNA's New Orleans Terminal and vicinity after Hurricane Katrina | LNA 007791-92, LNA 007794-96 | |
| 55 | Photo of School Bus after Hurricane Rita | LNA 007806 | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 56 | Photos of the IHNC levee and floodwall after Hurricane Katrina showing scour trenching and gapping | LNA 007807-08 | |
| 57 | Photos of the IHNC levee and floodwall after Hurricane Katrina | LNA 007809 | |
| 58 | Photos of the IHNC levee and floodwall after Hurricane Katrina showing shell road | LNA 007811-12 | |
| 59 | Photo of the IHNC levee and floodwall after Hurricane Katrina | LNA 007813 | |
| 60 | Photos of other barges impacts with levees and floodwalls in the Greater New Orleans area | LNA 007814-15 | |
| 61 | Overhead/aerial photo of New Orleans after Hurricane Katrina | LNA 007817 | |
| 62 | Map of the Greater Louisiana Area | LNA 007818 | |
| 63 | Map of the Gulf Area Depicting the Path of Hurricane Katrina | LNA 007819 | |
| 64 | Photo of School Bus prior to Hurricane Rita | LNA 007820 | |
| 65 | Schematics of IHNC levees and floodwall Florida Bridge Complex as designed and as built | LNA 007833-80 | |
| 66 | Overhead/aerial photos of the IHNC and Lower Ninth Ward after Hurricane Katrina | LNA 007883, LNA 007886 | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 67 | Photos of levees and floodwalls after Hurricane Gustav | LNA 009509-14, LNA 009517, LNA 009519, LNA 009521, LNA 009524 | **OVERRULED**. However, the Court notes that Hurricane Gustav was a different storm that had a different course, and certainly was not Hurricane Katrina. Moreover, the floodwalls and levees shown in these pictures are in all likelihood not the floodwalls that existed at time of Hurricane Katrina. to the extent any opinion relies on the dynamics vis-s-vis Hurricane Gustav and the floodwalls and levees. |
| 68 | Photo of levees and floodwalls after Hurricane Gustav | LNA 009528 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 67. |
| 69 | Photo of levees and floodwalls after Hurricane Gustav | LNA 009531 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 67. |
| 70 | Photos the IHNC levee and floodwall and Lower Ninth Ward after Hurricane Katrina | LNA 009533-35 | |
| 71 | National Oceanic and Atmospheric Association Hurricane Katrina Base Map Index and Photographs | LNA 009536 | |
| 72 | Photos of barges along Paris Road levees and floodwalls after Hurricane Katrina | LNA 009537-62 | **OVERRULED**. The Court notes that in this bench trial, the possibility of confusion is diminished. The Court further notes that the photographs in question are of a different location, with damage that was the result of different forces and are of different barges. The Court assumes that expert testimony will attempt to establish the probative value of the photographs. The situation may be so dissimilar that the photos have no probative value; however, the Court will hear the evidence. |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 73 | Overhead and aerial photos of the IHNC and Lower Ninth Ward after Hurricane Katrina | LNA 009563-64 | |
| 74 | Photos of LNA's New Orleans Terminal and Buzz-Unicem New Orleans East Cement Plant after Hurricane Katrina | LNA 009565-67 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 72. |
| 75 | Photos of Buzz-Unicem barges that broke free during Hurricane Katrina and impacted other levees and floodwalls | LNA 009568-71 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 72. |
| 76 | Map showing location of LNA's New Orleans Terminal, Buzz-Unicem New Orleans East Cement Plant and location of Buzz-Unicem barges that broke free during Hurricane Katrina and impacted other levees and floodwalls | LNA 009572 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 72. |
| 77 | Photos of the IHNC lock station in non-storm conditions | LNA 009573 | |
| 78 | A. Graumann, T. Houston, J. Lawrimore, et al., NOAA's Climatic Data Center, "Hurricane Katrina: A Climatological Perspective, Updated August 2006 | LNA 009574-009601 | |
| 79 | Drawings of the locations of barges that broke free during Hurricane Gustav | LNA 009602-03 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 67. |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 80 | Photos of levees and floodwalls after Hurricane Gustav | LNA 009612-15, LNA 009623, LNA 009633, LNA 009641, LNA 009646-48, LNA 009650, LNA 009654-55, LNA 009675, LNA 009687, LNA 009690, LNA 009693, LNA 009703 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 67. |
| 81 | Photo of the IHNC levee and floodwall after Hurricane Katrina showing scour trenching and gapping | LNA 009741 | |
| 82 | Photos of the IHNC levee and floodwall after Hurricane Katrina showing scour trenching and gapping | LNA 009744-45, LNA 009768-69 | |
| 83 | Photo of the IHNC levee and floodwall after Hurricane Katrina showing southern end of South Breach | LNA 009746 | |
| 84 | Photos of the IHNC levee and floodwall after Hurricane Katrina showing scratches on the floodwall | LNA 009751-53 | |
| 85 | Photos of the IHNC levee and floodwall after Hurricane Katrina taken from pump station #5 | LNA 009760 | |
| 86 | Overhead/aerial photos of the IHNC and Lower Ninth Ward after Hurricane Katrina | LNA 009801-03, LNA 009807-08, LNA 009811 | |
| 87 | Overhead/aerial photo of LNA's New Orleans Terminal and vicinity after Hurricane Katrina | LNA 009813 | |
| 88 | Photos of other barges in the Greater New Orleans area that broke free during Hurricane Katrina and impacted other levees and floodwalls | LNA 009896, LNA 009904-05, LNA 009914, LNA 009916 | **OVERRULED** for the reasons stated in the ruling on Plaintiffs' Exhibit No. 72. |

10

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 89 | Photo taken in the Greater New Orleans area depicting damage after Hurricane Katrina | LNA 010088 | |
| 90 | Photos of the IHNC levee and floodwall after Hurricane Katrina showing South Breach | LNA 010124-25, LNA 010128, LNA 010134, LNA 010145, LNA 010153-54, LNA 010163, LNA 010170-71 | |
| 91 | Photo of the IHNC floodwall and levee showing scouring | LNA 010139 | |
| 92 | Photograph of the barge in the LNW after Hurricane Rita | LNA 010160, LNA 010168-69, LNA 010173 | |
| 93 | Photo of the IHNC levee and floodwall showing the southern end of the South Breach | LNA 010163 | |
| 94 | Photo of the fence along the protected side of the IHNC floodwall | LNA 010164 | |
| 95 | Photos taken aboard the Ariake Star during Hurricane Katrina depicting visibility and weather conditions | LNA 010176, LNA 010181, LNA 010183, LNA 010187-88 | |
| 96 | R. Kayen, B. Collins & H. Gibbons, United States Geological Survey, *Soundwaves*, "USGS Scientists Investigate New Orleans Levees Broken by Hurricane Katrina" | LNA 010194-200 | |
| 97 | Overhead/aerial photos of the IHNC and Lower Ninth Ward | LNA 010201-06 | |

11

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 98 | Overhead/aerial photo of the IHNC and Lower Ninth Ward after Hurricane Katrina | LNA 010207 | |
| 99 | Map of Greater New Orleans Area showing locations of levees, levee breaches, man-made and natural geographical features, locations of property, LNA's New Orleans terminal, and similar points of interest | LNA 010208 | |
| 100 | Photos of the barge in the Lower Ninth Ward settled against houses and on top of phone lines | LNA 010209-15 | |
| 101 | Nathaniel Bowditch, *The American Practical Navigator: An Epitome of Navigation,* including the passages produced as | LNA 010216-48 | **OVERRULED** as the document has now been produced and it is an exception to the hearsay rule Fed. R. Evid. 803(8) as it was produced by the National Imagery and Mapping Agency of the United States Government. |
| 102 | Photo of LNA's New Orleans Terminal and vicinity | LNA 010249 | |
| 103 | National Weather Service National Hurricane Center warnings regarding Hurricane Katrina, available at the following web address: http://www.nhc.noaa.gov/archive/2005/pub/all22005.public.001.shtml? (includes documents produced as LNA 010251-10262), and graphics regarding projected storm track of Hurricane Katrina, available at: http://www.nhc.noaa.gov/archive/2005/KATRINA_graphics.shtml | LNA 010251-62 | |
| 104 | R. Knabb, J. Rhome & D. Brown, National Hurricane Center, Tropical Cyclone Report Hurricane Katrina 23-30 August 2005, Updated August 10, 2006 | LNA 010263-010305 | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 105 | Line of Sight Survey performed by Gandolfo Kuhn, L.L.C. with photos | LNA 010306-12, LNA 010361-82, LNA 010397-407 | |
| 106 | Overhead photo of the North Breach showing Pump Station No. 5. | LNA 0103408 | |
| 107 | Photo of crack in London Avenue Canal Floodwall | LNA 0103409 | |
| 108 | Photo of the North Breach showing location of sheet pile tear | LNA 0103410 | |
| 109 | Photo of the North Breach showing scour | LNA 0103411 | |
| 110 | Photo showing excavation of soils near pilings | LNA 0103412 | |
| 111 | Photo of Pump Station No. 5. | LNA 0103413 | |
| 112 | Photo of torn sheet pile at Air Products Breach | LNA 0103414 | |
| 113 | Joseph C. Domino invoice | DOM 000008 | |
| 114 | Illustrations/Schematics of ING 4727 | IBCO 0618-42 | |
| 115 | Email from Zito Dispatch, Hurricane Katrina, dated August 27, 2005, 9:54AM | IBCO 0728 | |
| 116 | Sewage and Water Board of New Orleans central control and pump station log books covering August 29, 2006 | SWB-ED-M0001-000146 | |

13

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 117 | Photos of the IHNC levee and floodwall after Hurricane Katrina showing sheet pile from the vicinity of the North Breach | WGI 082930-36, WGI 082941-47, WGI 082980 | |
| 118 | Photos of the IHNC levee and floodwall after Hurricane Katrina showing scour trenching and gapping near the North Breach | WGI 082990-91, WGI 082993, WGI 082995 | |
| 119 | Zito Fleet Records 8/10/05-8/26/05 | Barry Boudreaux Deposition Exhibit 1 | |
| 120 | Zito Dispatch Report 8/24/05-8/30/05 | Barry Boudreaux Deposition Exhibit 2 | |
| 121 | Mooring ropes used at LNA New Orleans Terminal during Hurricane Katrina, as previously made available to the plaintiffs for inspection | n/a | |
| 122 | Satellite image of Southern Louisiana showing path of Hurricane Katrina | ILIT Figure 2.2 | |
| 123 | Map of greater New Orleans Area | ILIT Figure 2.3 | |
| 124 | Map of main flood protection rings in the New Orleans area | ILIT Figure 2.4 | |
| 125 | Map showing the design flood stage elevation in the New Orleans area | ILIT Figure 2.6 | |
| 126 | Photo of scouring at Michoud Canal | ILIT Figure 7.19 | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 127 | Photos of 17th Street Canal Breach | ILIT Figures 8.24, 8.28, 8.29 | |
| 128 | Photos of London Avenue Canal Breaches | ILIT Figures 8.89, 8.90, 8.110, 8.111, 8.112, 8.113 | |
| 129 | Outline of the New Orleans and Southeast Louisiana Hurricane Protection System | IPET Volume I Figure 2 | |
| 130 | Street map showing the IHNC | IPET Volume II  Figure 51 | |
| 131 | Map Showing 17th Street, Orleans  Avenue, and London Avenue Canals and IHNC | IPET Volume III Figure 6 | |
| 132 | Overhead photo of the North Breach | IPET Volume IV Appx. 9 Figure IV- 9-7 | |
| 133 | Overhead photo of the South Breach | IPET Volume IV Appx. 9 Figure IV-9-8 | |
| 134 | Satellite image showing 17th Street, Orleans Avenue, and London Avenue Canals, and IHNC | IPET Volume IV Figure 114 | |
| 135 | Satellite image showing Lower Ninth Ward and St. Bernard Parish | IPET Volume IV Figure 115 | |
| 136 | Photos of 17th Street Canal Breach | IPET Volume V Appx. 15, Figure 15-1, Volume V Appx 22, Figure 11 | |
| 137 | Aerial Photo showing the 4 breaches in the IHNC | IPET Volume V Figure 50 | |

15

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 138 | Photos of London Avenue Canal Breaches | IPET Volume V Figures 35, 36 | |
| 139 | Final Report of the Select Bipartisan Committee to Investigate the Preparation for and Response to Hurricane Katrina, "A Failure of Initiative" (February 15, 2006) | http://katrina.house.gov/full_katrina_report.htm | |
| 140 | American Society of Civil Engineers External Review Panel, The New Orleans Hurricane Protection System: What Went Wrong and Why (2007), including underlying data | http://www.asce.org/static/hurricane/whitehouse.cfm | |
| 141 | Independent Levee Investigation Team, Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina on August 29, 2005, Final Report, including underlying data and previous draft versions of the report | http://www.ce.berkeley.edu/~new_orleans/ | |
| 142 | Special Report of the Committee on Homeland Security and Governmental Affairs, U.S. Senate, "Hurricane Katrina – A Nation Still Unprepared" (2006) | http://www.gpoaccess.gov/serialset/creports/katrinanation.html | |
| 143 | Woolley, Douglas and Leonard Shabman, "Decision Making Chronology for the Lake Ponchartrain & Vicinity Hurricane Protection Project," Draft Final Report for the Headquarters, U.S. Army Corps of Engineers, June 2007, including all underlying material and previous version | http://www.iwr.usace.army.mil/inside/products/pub/hpdc/hpdc.cfm | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 144 | "Team Louisiana" Final Report: The Failure of the New Orleans Levee System during Hurricane Katrina, including underlying data and previous draft versions of the report | http://www.publichealth.hurricane.lsu.edu/TeamLA.htm | |
| 145 | U.S. Army Corps of Engineers, Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System, Final Report of the Interagency Performance Evaluation Task Force (Mar. 26, 2007), including underlying data and previous draft versions of the report | https://ipet.wes.army.mil/ | |
| 146 | The New Orleans Hurricane Protection System Assessing Pre-Katrina Vulnerability and Improving Mitigation and Preparedness (June 2009) | n/a | |
| 147 | London Avenue Site Specific Load Test (August 2008) | n/a | |
| 148 | U.S. Army Corps of Engineers, Checklist Construction in the Critical Area of Flood Control Projects Constructed by the Corps of Engineers | n/a | |
| 149 | U.S. Army Corps of Engineers, Excavation and Backfill Guidelines | n/a | |
| 150 | U.S. Army Corps of Engineers, Guidance for Work Proposed Near or Within a Federal Constructed Flood Control Projects | n/a | |
| 151 | Arrival Report from the IHNC Lock | n/a | |

17

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 152 | US Army Corps of Engineers, New Orleans District, IHNC Lock Shift Log | n/a | |
| 153 | Photos of WGI Digging | PSLC 000083-86 | |
| 154 | Azalea fleet diagrams of 8/27/05 and 9/10/05 | Produced in response to LNA's Rule 45 subpoena | |
| 155 | Log of  M/V ANITA for August 26-29, 2005, | Produced in response to LNA's Rule 45 subpoena | |
| 156 | Log of M/V ANN PETERS for August 26-29, 2005 | Produced in response to LNA's Rule 45 subpoena | |
| 157 | Log of M/V MICHAEL 8/27/05 to 9/28/05 | Produced in response to LNA's Rule 45 subpoena | |
| 158 | Notes of barge locations at Azalea fleet, 9/1/05 | Produced in response to LNA's Rule 45 subpoena | |
| 159 | Elmwood Dockside Fleet diagrams for 8/28/05 and 9/01/05 | Produced in response to LNA's Rule 45 subpoena | |
| 160 | Photographs of the United Bulk (Teco) fleet | Produced in response to LNA's Rule 45 subpoena | |
| 161 | Deposition Exhibits of John and Jerry Alford | n/a | |
| 162 | Deposition of Jerry Alford | n/a | |
| 163 | Deposition of John Alford | n/a | |

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 164 | Letter Regarding SBA Disaster Loan | Alford 000001 | |
| 165 | Determination of Request for Disaster Assistance from FEMA | Alford 000002 | |
| 166 | Letters from Balboa Insurance Group | Alford 000003-04 | |
| 167 | Documents Regarding Cancellation of Mortgage | Alford 000005-09 | |
| 168 | Adjuster Summary from Pasco Claims Service | Alford 000010-25 | |
| 169 | Photos of Damage Provided by John and Jerry Alford | Alford 000026-38 | |
| 170 | Alford SF-95 Form | Alford Deposition Exhibit 10 | |
| 171 | Alford Road Home Materials | n/a | |
| 172 | Map showing 2423 Deslonde, New Orleans, LA | n/a | |
| 173 | Deposition and deposition exhibits of J. Robert Glaser | n/a | |
| 174 | Tax Records of Holiday Jewelers and Mr. and Mrs. Jacob Glaser | Glaser 000001-44, Glaser 000079-000214, Theriot Deposition Exhibits 2 and 3 | |
| 175 | Photos of damages to 8400 West Judge Perez Drive, Chalmette, LA | Glaser 000045-64 | |
| 176 | Insurance Documents for Holiday Jewelers from Jeweler Mutual Insurance Co. | Glaser 000065-000066, Glaser 000070-72 | |

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 177 | Insurance Documents for Holiday Jewelers from Travelers Insurance | Glaser 000067 | |
| 178 | Estimate of Loss for Holiday Jewelers sent to SBA | Glaser 000068-69 | |
| 179 | Determination of Request for Disaster Assistance from FEMA | Glaser 000073 | |
| 180 | SF-95 Form for Mr. and Mrs. Jacob R. Glaser | Glaser 000074-75 | |
| 181 | Documents regarding cancellation of mortgage for Holiday Jewelers | Glaser 000076-78 | |
| 182 | Petition Regarding Murphy Oil | Glaser Deposition Exhibit 8 | |
| 183 | Map showing 8400 W. Judge Perez Drive, Chalmette, LA | n/a | |
| 184 | Deposition and deposition exhibits of Josephine Richardson | n/a | |
| 185 | Property records for 1321 Egania, New Orleans, LA | Richardson 000008-10 | |
| 186 | Photos of damage provided by Josephine Richardson | Richardson 000011-19, Richardson 000022-26 | |
| 187 | Insurance claim | Richardson 000020 | |
| 188 | Application for Disaster Assistance from FEMA | Richardson 000027-28 | |

20

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 189 | Insurance Documents from First American Title Insurance Co. of Louisiana | Richardson 000029-30 | |
| 190 | Richardson Road Home Application and Related Documents | Richardson 000031-52 | |
| 191 | FEMA Check - Richardson | Richardson 000052 | |
| 192 | Richardson Invoices Regarding Repairs | Richardson 000053-114 | |
| 193 | SF-95 Form – Richardson | Richardson Deposition Exhibits 7 and 8 | |
| 194 | Map showing 1321 Egania, New Orleans, LA | n/a | |
| 195 | Videotaped Interview of Marenthia Lagarde | Marenthia Lagarde Deposition Exhibit 18 | |
| 196 | C.R. Cushing & Co., Inc., *Analysis of the Transit of the Barge ING 4727 During Hurricane Katrina and Reasons Why It Did Not Cause the Failure of the Inner Harbor Navigation Canal Floodwall* (July 29, 2009) | n/a | |
| 197 | Photo of the IHNC floodwall prior to Hurricane Katrina showing scratches | Cushing Figure 98 | |
| 198 | Dooley SeaWeather Analysis, Inc., *Re: Hurricane Katrina - Weather Analysis* (July 27, 2009) | n/a | |
| 199 | Expert Report of D. Philip Skaer, II (June 12, 2009) | n/a | |

21

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 200 | Photos of mooring ropes used to secure barges at LNA New Orleans Terminal during Hurricane Katrina | Skaer Deposition Exhibit 5, LNA 010415-50 | **OVERRULED** as Lafarge has represented to the Court that these materials have been produced. |
| 201 | Expert Report of Daniel F. Ryan, II (June 12, 2009) | n/a | |
| 202 | Expert Report of G. Paul Kemp, Ph.D. (July 31, 2009) | n/a | |
| 203 | Expert Report of Kenneth J. Boudreaux (August 3, 2009) | n/a | |
| 204 | Expert Report of Larry F. Strouse (June 12, 2009) | n/a | |
| 205 | Expert Report of Reda M. Bakeer, Ph.D., P.E., Re: LNA-Barge ING 4727 - Levee Failures during Hurricane Katrina, New Orleans (August 1, 2009) | n/a | |
| 206 | Expert Report of Robert Glenn Bea, Ph.D., P.E. (August 3, 2009) | n/a | |
| 207 | Robert Bea, *Supplemental Analyses of the Floodwall Failure at the North Breach on the Inner Harbor Navigation Canal During Hurricane Katrina on August 29, 2005* (September 4, 2009) | n/a | |
| 208 | Photograph of South Breach showing scour | Bea Appx. C Figure 64 | |
| 209 | Photograph of South Breach showing scour | Bea Figure 12 | |
| 210 | Photographs of seepage during EBIA excavations | Bea Appx. C Figures 23, 24, 34 | |

22

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 211 | Photos of WGI Digging | Bea Declaration 7/15/08 Figures 19a, 19b, 20, 21, 22 | |
| 212 | Photos of WGI Digging | Bea Declaration 9/17/07 Figures 12, 13 | |
| 213 | Expert Report of W. Jason Weiss, Liu-Weiss LLC (August 1, 2009) | n/a | |
| 214 | Expert Report of Wade R. Ragas (August 3, 2009) | n/a | |
| 215 | Reply Expert Report of Joseph N. Suhayda, Ph.D. Re: Katrina Canal Breaches Litigation (September 3, 2009) | n/a | |
| 216 | Deposition of Donald J. Green (June 25, 2009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 217 | Deposition of Peter L. Cannizzaro, III (July 17, 2009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 218 | Deposition of Hector V. Pazos (July 20-21, 2009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 219 | Deposition of Robert D. Bartlett (July 21, 2009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |

23

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 220 | Deposition of Hugh Fossier (July 30, 3009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 221 | Deposition of Gennaro G. Marino (August 7, 2009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 222 | Deposition of Melvin Spinks (August 14, 2009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 223 | Deposition of John Theriot (September 1, 2009), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 224 | Deposition of Donald J. Green (November 21, 2008), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 225 | Deposition of Gennaro Marino (September 12, 2008), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 226 | Deposition of Melvin Spinks (September 25, 2008), with exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 227 | Aurora Environmental Consultants, L.L.C., Post-Katrina Sludge & Water Sampling (August 10, 2006), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 228 | Report of Robert Bartlett (June 27, 2008), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 229 | Supplemental Report of Robert Bartlett (March 16,2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 230 | Valuation Reports of Peter L. Cannizzaro, III (June 24, 2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| ~~231~~ | ~~Report of Donald Green (January 2007), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions.~~ | n/a | **SUSTAINED**; however the material may be used for impeachment purposes with the proper foundation as required by Fed. R. Evid. 613. |
| ~~232~~ | ~~Report of Donald Green (September 2007), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions.~~ | n/a | **SUSTAINED**; however the material may be used for impeachment purposes with the proper foundation as required by Fed. R. Evid. 613. |
| ~~233~~ | ~~Report of Donald Green (June 13, 2008), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions.~~ | n/a | **SUSTAINED**; however the material may be used for impeachment purposes with the proper foundation as required by Fed. R. Evid. 613. |
| 234 | Report of Donald Green (March 11, 2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| ~~235~~ | ~~Preliminary report of Gennaro Marino (2008), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions.~~ | n/a | **SUSTAINED**; however the material may be used for impeachment purposes with the proper foundation as required by Fed. R. Evid. 613. |

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| ~~236~~ | ~~Report of Hector Pazos (June 25, 2008), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions.~~ | n/a | **SUSTAINED**; however the material may be used for impeachment purposes with the proper foundation as required by Fed. R. Evid. 613. |
| 237 | Report of Gennaro Marino (July 1, 2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 238 | Report of Hector Pazos (June 29, 2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| ~~239~~ | ~~Preliminary Report of Melvin Spinks (June 27, 2008), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions.~~ | n/a | **SUSTAINED**; however the material may be used for impeachment purposes with the proper foundation as required by Fed. R. Evid. 613. |
| ~~240~~ | ~~Revised Report of Melvin Spinks (March 2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions.~~ | n/a | **SUSTAINED**; however the material may be used for impeachment purposes with the proper foundation as required by Fed. R. Evid. 613. |
| 241 | Final Report of Melvin Spinks (June 2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 242 | Report of John Theriot (June 29, 2009), with appendices and/or exhibits, for the limited purposes of impeachment, rebuttal, and admissions. | n/a | |
| 243 | Deposition and exhibits of Donald McCrosky | n/a | |

26

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 244 | Responses to discovery, including responses to interrogatories, requests to admit, and document requests, made by Barge Plaintiffs, the United States, and any other party as permitted by the Federal Rules of Civil Procedure. | n/a | |
| 245 | Demonstrative exhibits to be used by experts as support for / summary of opinions, potentially including models, recreation, or animation, to be pursuant to parties agreement 30 days before trial | n/a | |
| 246 | Depositions and deposition exhibits of witnesses unavailable at trial as permitted by the Federal Rules of Civil Procedure. | n/a | |
| 247 | Any document listed or proffered by any other party | n/a | |
| 248 | Any document necessary / permitted for purposes of impeachment | n/a | |
| 249 | Google Maps and Images of Lower Ninth Ward | LNA 010451--56 | |
| 250 | Map of Louisiana | LNA 010457 | |
| 251 | Photo taken by D. McCrosky | LNA 010458 | |
| 252 | Exhibits to the Deposition of D. Phillip Skaer, II | Skaer Deposition Exhibits | |
| 253 | Map of the Greater New Orleans Hurricane and Storm Damage Risk Reduction System (USACE) | LNA 010459 | |

27

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 254 | Photo of LNW during Hurricane Ivan | LNA 010460 | |
| 255 | Photo of floodwall prior to Hurricane Katrina | LNA 010461 | |
| 256 | Photos of flooding due to levee failure | LNA 010462-64 | |
| 257 | Photos of tension crack testing | LNA 010465-66 | |
| 258 | Photo of a sand boil | LNA 010467 | |
| 259 | Photo of 17th Street Canal Breach | LNA 010468 | |
| 260 | Photo of London Avenue Canal Breach | LNA 010469 | |
| 261 | Photo of London Avenue Canal | LNA 010470 | |
| 262 | Photos of Atchafalaya Basin Testing (USACE) | LNA 010471-73 | |
| 263 | Photo of IHNC floodwall and Lower Ninth Ward after Hurricane Katrina | LNA 010474 | |
| 264 | Overhead Photo of South Breach (IPET) | https://ipet.wes.army.mil/ | |
| 265 | Overhead Photo of North Breach (IPET) | https://ipet.wes.army.mil/ | |
| 266 | Overhead Photo of North Breach (IPET) | https://ipet.wes.army.mil/ | |
| 267 | LNA Deposition Designations for Jennifer Arnold and Plaintiffs' Counterdesignations thereto | | |

28

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 268 | LNA Deposition Designations for Paul Best and Plaintiffs' Counterdesignations thereto | | |
| 269 | LNA Deposition Designations for Jackie Campbell and Plaintiffs' Counterdesignations thereto | | |
| 270 | LNA Deposition Designations for David Castaing and Plaintiffs' Counterdesignations thereto | | |
| 271 | LNA Deposition Designations for Glenn Cross and Plaintiffs' Counterdesignations thereto | | |
| 272 | LNA Deposition Designations for Ernest Edwards and Plaintiffs' Designations and LNA's Counterdesignations thereto | | |
| 273 | LNA Deposition Designations for Arthur Foley | | |
| 274 | LNA Deposition Designations for Raymond Grabert | | |
| 275 | LNA Deposition Designations for AJ Guthrie and Plaintiffs' Designations | | |
| 276 | LNA Deposition Designations for Darion Hunter and Plaintiffs' Counterdesignations thereto | | |
| 277 | LNA Deposition Designations for D'Antoinette Johnson | | |

29

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 278 | LNA Deposition Designations for Roland Johnson and Plaintiffs' Designations and LNA's Counterdesignations thereto | | |
| 279 | LNA Deposition Designations for Aaron Lee and Plaintiffs' Counterdesignations thereto | | |
| 280 | LNA Deposition Designations for Rachel Mays and Plaintiffs' Counterdesignations thereto | | |
| 281 | LNA Deposition Designations for Helen McNeal and Plaintiffs' Counterdesignations thereto | | |
| 282 | LNA Deposition Designations for Raymond McNeal and Plaintiffs' Counterdesignations thereto | | |
| 283 | LNA Deposition Designations for Reed Mosher and Plaintiffs' Counterdesignations thereto | | |
| 284 | LNA Deposition Designations for Wallace Rainey | | |
| 285 | LNA Deposition Designations for Andrew Sartin | | |
| 286 | LNA Deposition Designations for Earl Smith | | |
| 287 | LNA Deposition Designations for Ed VanderMuelen and Plaintiffs' Counterdesignations thereto | | |
| 288 | LNA Deposition Designations for Lula Watson and Plaintiffs' Counterdesignations thereto | | |

30

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 289 | LNA Deposition Counter-Designations for Arthur Anderson Jr. (including plaintiffs' designations) | | |
| 290 | LNA Deposition Counter-Designations for Colleen Bordelon (including plaintiffs' designations) | | |
| 291 | LNA Deposition Counter-Designations for Donald Bordelon (including plaintiffs' designations) | | |
| 292 | LNA Deposition Counter-Designations for Donna Bordelon (including plaintiffs' designations) | | |
| 293 | LNA Deposition Counter-Designations for Anthony Dunn (including plaintiffs' designations) | | |
| 294 | LNA Deposition Counter-Designations for Emile Goettz Jr. (including plaintiffs' designations) | | |
| 295 | LNA Deposition Counter-Designations for Richard Guidry (including plaintiffs' designations) | | |
| 296 | LNA Deposition Counter-Designations for Dakeia Johnson (including plaintiffs' designations) | | |
| 297 | LNA Deposition Counter-Designations for Earl Lackings (including plaintiffs' designations) | | |
| 298 | LNA Deposition Counter-Designations for Mark Madary (including plaintiffs' designations) | | |

31

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
|---|---|---|---|
| 299 | LNA Deposition Counter-Designations for Ronald McGill (including plaintiffs' designations) | | |
| 300 | LNA Deposition Counter-Designations for John Meyers (including plaintiffs' designations) | | |
| 301 | LNA Deposition Counter-Designations for Ernest Offray (including plaintiffs' designations) | | |
| 302 | LNA Deposition Counter-Designations for Patrina Peters (including plaintiffs' designations) | | |
| 303 | LNA Deposition Counter-Designations for James Reed (including plaintiffs' designations) | | |
| 304 | LNA Deposition Counter-Designations for James Ruiz (including plaintiffs' designations) | | |
| 305 | LNA Deposition Counter-Designations for Wilson Simmons (including plaintiffs' designations) | | |
| 306 | LNA Deposition Counter-Designations for Dolores St. Cyr Butler (including plaintiffs' designations) | | |
| 307 | LNA Deposition Counter-Designations for Arcola Sutton (including plaintiffs' designations) | | |
| 308 | LNA Deposition Counter-Designations for William Villavasso (including plaintiffs' designations) | | |

LIBW/1729693.9

| Exhibit Number | Exhibit Description | Bates Number | Result of Objection (if any) |
| --- | --- | --- | --- |
| 309 | LNA Deposition Counter-Designations for Sidney Williams, February 2008 (including plaintiffs' designations) | | |
| 310 | LNA Deposition Counter-Designations for Sidney Williams, October 2008 (including plaintiffs' designations) | | |

33

Dated:  June 7, 2010                    Respectfully submitted,

                                        Robert B. Fisher, Jr., T.A. (#5587)
                                        Derek A. Walker (#13175)
                                        **CHAFFE MCCALL, L.L.P.**
                                        2300 Energy Centre
                                        1100 Poydras Street
                                        New Orleans, LA 70163-2300
                                        Telephone:  (504) 585-7000
                                        Facsimile:  (504) 585-7075
                                        Fisher@chaffe.com
                                        Walker@chaffe.com

                                         /s/ John D. Aldock
                                        John D. Aldock
                                        Mark S. Raffman
                                        **GOODWIN PROCTER LLP**
                                        901 New York Avenue, N.W.
                                        Washington, DC 20001
                                        Telephone:  (202) 346-4240
                                        jaldock@goodwinprocter.com
                                        mraffman@goodwinprocter.com

                                        Daniel A. Webb (#13294)
                                        **SUTTERFIELD & WEBB, LLC**
                                        Poydras Center
                                        650 Poydras Street, Suite 2715
                                        New Orleans, LA 70130
                                        Telephone:  (504) 598-2715

                                        ***Attorneys for Lafarge North America Inc.***