**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** — **CIVIL ACTION**

**NO. 05-418**

**PERTAINS TO BARGE**

**SECTION "K"**

| | | |
|---|---|---|
| ***Mumford*** | **C.A. NO. 05-5724** | ***as to plaintiffs Josephine Richardson and Holiday Jewelers, Inc. - ONLY*** |
| ***Benoit*** | **C.A. NO. 06-7516** | ***as to claims of plaintiffs John Alford and Jerry Alford - ONLY*** |

**OBJECTION TO LAFARGE NORTH AMERICA'S ATTACHMENT TO DEPOSITION DESIGNATIONS OF SIDNEY WILLIAMS**

Barge Plaintiffs object to the admission of Centanni Investigative Agency's surreptitiously recorded interview of plaintiff Sidney Williams attached by Lafarge North America to Mr. Williams' deposition designations.

When the Plaintiffs sought to admit the Centanni Investigative Agency interview transcripts of Gertrude LeBlanc and Frazier Tompkins, the Court, in response to Lafarge's Motion In Limine (Doc. 19646), ruled (at Doc. 19733) that the interview transcripts are in fact hearsay (though Plaintiffs will be permitted to examine LNA's "barge-trajectory experts" as to whether they were made aware of the transcripts, in which Ms. LeBlanc and Mr. Frazier describe seeing ING 4727 adrift in the IHNC on Sunday, August 28, 2005). The Centanni interview transcript of Sidney Williams is no less impermissible hearsay than are the LeBlanc and Frazier transcripts. This Court's prior ruling dictates the same result now.

Lafarge will argue that Mr. William's Centanni interview transcript is an inconsistent statement that can be used to impach Mr. Williams' deposition testimony

that he saw and heard ING 4727 strike the IHNC at the soon-to-occur southern breach in the early morning of Monday, August 29, 2005. This anticipated argument is wrong. The Centanni transcript is not a statement. Mr. Williams did nothing but eagerly vent his suspicions that the Government detonated the levee and placed the barge in the neighborhood to cover its path. He did not know that anything he said was being memorialized, or that it might be used against him later. He did not know who he was speaking with or why, other than the Centanni investigator's pretense of disinterest.

RG: And, um, what we're doing is investigating the- the levee breaches over there in the 9th Ward.

SW: Right.

RG: And, uh, we're just trying to talk with- with any residents that may have been out there during the time of Hurricane Katrina that might…

The interview transcript is unreliable, and prejudicial. Mr. Williams went twice under oath in a room full of attorneys and stated in two depositions that he saw and heard a barge strike the eastern IHNC floodwall. Mr. Williams professes in the secret interview his weak recollection.

RG: And- And- And on the bridge, was- was there a man with, uh, with one leg, like an older man with one leg?

SW: Mm. Maybe so. I don't even remember, man. I'm still having bad dreams about that thing, you know. I can't remember right now.

In contrast, he states in his depositions his certainty of what he saw, and that the trauma of the event affected his ability to recount accurately to Centanni. From page 23 of Mr. Williams' October 2008 deposition:



2:

Q. Do you expect that when this gentleman came to you and asked you questions, that you told him the truth?

A. I don't know because I wasn't in a right state of mind.

Q. Really?

A. No.

Q. What kind of state of mind were you in?

A. I was terrified from this storm and it took me some time to get over it. I mean --

Q. Did you lie to anybody else?

A. Lie. I wouldn't say it was lying.

Q. Did you tell him the truth?

A. I don't know.

Q. Have you read the transcript of what you told him?

A. I have seen it and what I read, it is not even believable to me.

Q. Really?

A. Really. I can't believe I said them things that is on the transcript.

Plaintiffs cannot reiterate enough that all of Lafarge's transcripts obtained from Centanni Investigative are ill-gotten, through Centanni's deceptive practices typified by

the following excerpts.[1] Lafarge will not deny that the following are excerpted from the transcripts supplied to plaintiffs' counsel.

Ernest Edwards No. 1:

RG: And um…. I just want to know, you know, what you know about it or what…what…

EE: What do I know about it?

RG: About about how how the levees broke or why they did or if you saw anything or heard anything…or…

EE: What's your name again?

RG: My name's Robert Garcia.

EE: Garcia…Who you investigating for, though? Who are you working for?

RG: I'm working for Centanni. We're an independent investigative agency.

RG: And uh, we don't work for the government or nothing like that. And we're just talking to a lot of people because, I mean, the stories I've heard um, I'm sure that you heard the same stories about uh different things that happened out there.

EE: Is we gonna hear any results of this conversation? Is we gonna get anybody to speak for us behind this?

RG: Uh, I'm not sure.

EE: Okay.

RG: I'm just….what I'm a private investigator and what we do is we just collect the information.

[1] RG is Centanni Investor Robert Garcia.

EE: You know.....so uh, I sure hope somebody can do something about this here, 'cause that's a shame the way they did us.

RG: Yeah, well we're just trying to find out just trying to find out what happened.

EE: Is it gonna be told like this?

RG: Well I'm...what I do is as a private investigator, we just we collect the information and the facts, and whatever you tell me, ya know, that's that's the way I tell it. I don't change the story around or nothing. And then....

Ernest Edwards No. 2:

EE: What you- what you think I done forgot what I told you the other day?

RG: Huh?

EE: You don't think I forgot what I told you the other day, huh?

RG: Well I was just making sure to get . . . to get the times and all right and . . . and exactly what you said, you know . . . 'cause I want to make sure that I'm right. Because I was just trying to figure out the . . . the exact area where y'all were . . .

EE: Who you working for though? You an- you a investigator . . . who you working for?

RG: I'm working for Centanni.

EE: Centanni?

RG: Uh huh.

EE: And . . . and who . . .who are those people?

RG: Who- who are the people Centanni? We- we're just an investigative agency.

Nancy Conerly:

NC: Hello?

RG: Hi. Is Nancy Conerly in?

NC: Who's calling?

RG: Uh, Robert Garcia.

NC: From where?

RG: Uh, New Orleans.

Michael Reed:

MR: Okay. Let me- let me, uh... What's your name again?

RG: My name is Robert Garcia.

MR: Robert Garcia?

RG: Yes, sir.

MR: And who are you working for, Robert?

RG: Uh, Centanni.

MR: Is that a, uh, an attorney or?

RG: It's an- it's an investigative agency.

RG: Yeah, I'd- I'd appreciate it. We're just trying to find out, you know, what- what really happened over there, you know.

MR: Yeah.

RG: We don't work- we don't work for like a government agency or nothing like that.

MR: Okay.

RG: We're independent private investigators and, uh, we're just trying to find out what happened.

MR: Oh, okay. Yeah, it would be good if the truth would come out about that whole situation.

RG: Yeah, 'cause, uh, I mean, the rumors we're hearing, I've- I've heard that, you know, it was blown.

Stevens Keith:

RG: And, uh, and what- what we're just trying to do is- is to find out the truth.

SK: Okay.

RG: What I do as a private investigator is I, um, I- I collect the facts.

SK: All right. Okay.

RG: And, um, and I- and I've heard that, from several people, that, uh, certain, uh, entities are kind of covering it up.

SK: Right. Right.

RG: And, uh, and- and we're just trying to find out the truth to- to what happened.

Linda Ambrose:

RG: Okay. Well I appreciate it, and if you think of anybody else I'd appreciate you giving us a call. We're just trying to figure out exactly what happened out there and-

LA: Okay. Who are- who is we?

RG: Oh, I'm a- I'm a private investigator.

LA: Uh-huh.

RG: We're investigating the- the levee breaks over there.

LA: So, who is trying- who else is- who is it that you're working for that's trying to get the story- the in-depth story that probably won't ever come out?

RG: Yeah, well we don't know- we don't know what, you know…

LA: I know.

RG: …what will come of it or anything if it- it may go, uh, eventually to, uh, court or- or something like that.

LA: Or some attorney has it?

RG: Yeah.

LA: With the class action suit?

RG: No, it's not, uh, we're not- we're not working with- with like a plaintiff attorney or anything…

LA: Oh.

RG: …like that for a class-action lawsuit, but we're just working for attorneys that are just investigating it right now.

LA: Oh.

RG: Trying to- trying to figure out exactly what occurred and, uh, just trying to figure out the truth.

Andrea Burns:

AA: Well, I know there's a class action lawsuit or something, right?
KN: Uh, I'm not involved with that personally, but, um. I think there is.
AA: The agency?
KN: I don't know about - about all that. I mean, we don't - we don't get to, you know, we're at the lo-I'm at the low - low end of the totem pole so I basically am just kind of talking to people.
AA: Oh, okay. (p. 14)

Roderick Pyatt:

RP: For who?
RG: Uh, independently right now.
RP: Who are you working for?
RG: Uh, myself.
RP; Who's this for? Who is this compilation going to?
RG: Uh, we're not - I'm not -
RP: Who's the end user?
RG: I'm not sure yet, sir. I just, uh, collect all the information.
RP: You're being evasive.
RG: I'm sorry, sir?
RP: You're being evasive.
RG: Well, I'm just - I just collect the information and then -
RP: Who do you think its's going to?
RG: I'm sorry, sir?
RP: Who do you think its's going to?
RG: I'm not sure whether this is going to be used somewhere on down the line, possibly to write a book or possibly for any type of lawsuit that may arise. I'm not sure, sir.

Lorena Dillon:

LD: Now wait a minute. Who are you?

RG: I'm a private investigator.

LD: Uh-huh.

RG: And we're trying to get in touch with people that were, uh, living in the area during the time of Hurricane Katrina to find out what actually happened out there.

LD: Yeah.

RG: And we're just trying to talk with, uh.

LD: Wait a minute. You're private investigator for who, babe?

RG: I'm sorry, babe?

LD: For who?

RG: Well we're- we're just investigating the- the levee break, trying to find out what happened.

XX: But who y'all working for?

RG: I'm- I'm sorry. Is this Miss...? Am I on a speakerphone or anything?

LD: Just my daughter- my daughter, yeah.

RG: I'm working for Centanni.

LD: Yeah.

XX: You're working for "Centami?"

RG: Centanni.

XX: Okay, who are they?

RG: Uh, investigative agency.

XX: Okay, but you investigating what, the Army Corps of Engineers or who are y'all- I mean…

LD: Is there a way they can give us any help?

XX: No, they investigating the break. Trying to see what happened, right?

RG: Yes, ma'am. We don't- we don't work for FEMA or the government or anything like that.

XX: Right. Y'all trying to just find out what caused the break.

RG: Yes, ma'am.

Lafarge and Centanni evade, deceive and exploit a traumatized population. They hide their true identity and intentions. They are predators hunting for someone like Sidney Williams, traumatized, "terrified from the storm," and suspicious that he is a victim of a massive effort to sacrifice his neighborhood for the sake of more affluent areas. He does not even understand his state of mind when he spoke with Robert Garcia, and twice under oath firmly and unequivocally repudiates those surreptitiously recorded fears and speculation. The interview is hearsay, is ill-gotten, is not a statement, is unreliable, is prejudicial, and is inadmissible.

Respectfully submitted,

/s/Laurence E. Best
Laurence E. Best (3012)
Peter S. Koeppel (1465)
**BEST KOEPPEL TRAYLOR**
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
E-mail: lebest@bestkoeppel.com
peterklaw@aol.com

/s/Brian A. Gilbert
Brian A. Gilbert (21297)
**LAW OFFICE OF BRIAN A. GILBERT, P.L.C.**

(Of Counsel to **BEST KOEPPEL TRAYLOR**)
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
E-mail: bgilbert@briangilbertlaw.com,
bgilbert@bestkoeppel.com

Shawn Khorrami (CA SBN #14011)
**KHORRAMI, POLLARD & ABIR, LLP**
444 S. Flower Street, 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
e-mail: Skhorrami@kpalawyers.com

Lawrence A. Wilson (N.Y.S.B.A. #2487908)
**WILSON, GROCHOW, DRUKER & NOLET**
233 Broadway, 5th Floor
New York, NY 10279
Telephone: (212) 608-4400
Facsimile: (212) 608-0746
e-mail: lwilson@wgdnlaw1.com

Lawrence D. Wiedemann (#13457)
Karl Wiedemann (18502)
**WIEDEMANN AND WIEDEMANN**
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: 504-581-6180
Facsimile: 504-581-4336
e-mail: ldwiedeman@aol.com
karlwied@bellsouth.net

Patrick J. Sanders (18741)
**PATRICK J. SANDERS, LLC**
3316 Ridgelake Drive, Suite 100
Metairie, Louisiana 70002
Telephone: (504) 834-0646
e-mail: pistols42@aol.com

Richard T. Seymour (D.C. Bar #28100)
**LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C.**
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C. 20036-4129

Telephone: 202-862-4320
Cell: 202-549-1454
Facsimile: 800-805-1065 and 202-828-4130
e-mail: rick@rickseyourlaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile and/or ECF upload, this 20th day of June, 2010.

/s/ Brian A. Gilbert