UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |  |
|---|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
|  | * | NO. 05-4182 |
|  | * |  |
| PERTAINS TO: BARGE | * * | SECTION "K" |
| *Mumford*    C.A. No. 05-5724 | *as to claims of plaintiffs Josephine Richardson and Holiday Jewelers, Inc. ONLY* |
| *Benoit*    C.A. No. 06-7516 | *as to claims of plaintiffs' John Alford and Jerry Alford – ONLY* |
|  | * |  |

**OPPOSITION OF LAFARGE NORTH AMERICA INC.
TO PLAINTIFFS' OBJECTION TO USE OF SIDNEY WILLIAMS STATEMENT**

Defendant Lafarge North America Inc. ("LNA") hereby opposes plaintiffs' Objection to LNA's use of the recorded interview statement of Sidney Williams (Doc. 19885, filed June 20, 2010). Plaintiffs' objection should be overruled for three separate reasons: (1) because it is untimely and LNA would be severely prejudiced if it were granted now; (2) because it is based on the same arguments that the Court specifically rejected in earlier orders; and (3) because it is meritless in any event, since the statement is plainly admissible for the purpose of impeaching Mr. Williams' direct testimony.

**Background**

LNA's investigator interviewed Mr. Williams on March 20, 2006. The interviewer told Mr. Williams that "what we're doing is investigating the – the levee breaches over there in the 9th Ward" and that "we're … just trying to find out what really happened out there." Doc. 11765-4, at 2. Mr. Williams thereupon gave the following account:

1492094-1

- ► He saw water about to enter his home and evacuated to his attic and then his roof. *Id*. at 2.

- ► The water was into his attic before he got up onto his roof. *Id*.

- ► He heard three booms <u>after</u> he reached the roof, <u>after</u> the water was up into his attic. *Id*. at 2-3.

- ► He did not see the barge for <u>another hour or more after that</u>, at which time it was already in the neighborhood and the water was high enough for the barge to float over the wall. *Id*. at 3, 7-9, 12.

- ► He does <u>not</u> believe that the barge broke the floodwall. *Id*. at 8-12.

- ► Based on his experience handling barges, empty barges "don't make that much noise" when they strike objects. *Id*. at 4.

However, apparently after speaking to and retaining plaintiffs' counsel, Mr. Williams testified at his deposition that, immediately upon reaching his roof, he saw the barge knocking against the floodwall, causing three loud booms, right before the levee failed. Doc. 12831-2, at 41, 47-50.

It is vital to the basic purpose of this trial – enabling the Court to determine the <u>truth</u> – that the Court consider Mr. Williams' original statement, and not only his later, coached testimony. For that reason, LNA asked Mr. Williams about his statement at his deposition (where the transcript was marked as an exhibit) and included the transcript in LNA's deposition designations (DX309 and 310). Now, on the literal eve of trial (June 20, 2010), plaintiffs have filed a belated objection to that statement.

**Argument**

There are three separate reasons why the objection should be overruled.

1. The objection is untimely, and sustaining the belated objection on the very eve of trial would seriously prejudice LNA.

The objection is plainly out of time. Motions in limine were due on March 4, 2010. Plaintiffs did not file any such motion concerning Mr. Williams' witness statement. Moreover,

2

1492094-1

under the Pre-Trial Notice issued by the Court (Doc. 19728, at 4), any objection by plaintiffs to LNA's deposition designations was due by May 21, 2010.  Plaintiffs did not file any such objection to Mr. Williams' prior statement.  As such, plaintiffs' June 20, 2010 objection is far out of time.  Indeed, the June 10, 2010 Minute Entry confirmed that any objection to a deposition designation that had not been timely filed "will be considered waived."  (Doc. 19856, p. 2). Moreover, the Pre-Trial Order at page 79 states that LNA had counterdesignated testimony for Mr. Williams for "two depositions, *with counterdesignated documents*" (emphasis in original). Plaintiffs made no timely objection to that designation.

    Not only is plaintiffs' objection untimely, but sustaining the belated objection, which was filed literally on the day before trial, would severely prejudice LNA, which has prepared its case based on the availability of the statement.  Plaintiffs have submitted Mr. Williams' deposition testimony.  In the prior recorded statement, Mr. Williams said (1) that he heard three booms <u>after</u> he reached the roof, and <u>after</u> the water was up into his attic; (2) he did not see the barge for another hour or more after that, at which time it was already in the neighborhood and the water was high enough for the barge to float over the wall; and (3) that he did not believe that the barge broke the floodwall.  Mr. Williams' prior statement accordingly is directly relevant to impeaching his deposition testimony.  Moreover, it is striking that plaintiffs' counsel will not have Mr. Williams, their client, appear at trial to testify live before the Court, subject to cross-examination.  Under these circumstances, LNA would face severe prejudice if stripped of its previously-granted authority to use Mr. Williams' recorded statement once trial had already begun.

    2.    Even if plaintiffs' objection was not waived, it is foreclosed by the Court's prior rulings rejecting the same argument that plaintiffs advance in their new objection.

On March 25, 2008, plaintiffs filed a motion seeking to bar LNA from using the recordings or transcripts of witness statements obtained by the Centanni Agency – specifically including the statement by Mr. Williams. Doc. 11765. On May 14, 2008, Magistrate Judge Wilkinson specifically rejected plaintiffs' argument that LNA should be barred from using transcripts of the Centanni Agency interviews, including the statement by Mr. Williams, at trial (Doc. 13149, at 15-16). The Magistrate Judge held, first, that his order requiring production of the interview transcripts had "provide[d] an adequate remedy for the only ethical infringement that plaintiffs have proved, i.e., the surreptitious tape recordings of putative class members by Lafarge's investigators without identifying themselves as working for an attorney." The Magistrate Judge also held that LNA's counsel had not violated Louisiana Rules of Professional Conduct Rule 4.2 or 4.3 and that "[i]n the absence of proof of any violations of Rule 4.2 or Rule 4.3, no sanctions are warranted." *Id*. at 15. Furthermore, the Magistrate Judge held that "[e]ven if there had been any violations of Rule 4.2 or 4.3, plaintiffs have cited no case law for the proposition that relevant evidence should be precluded, thus punishing the client, as a disciplinary sanction for ethical misconduct by its attorneys. The cases cited by Lafarge hold to the contrary." *Id*. at 15-16 (citing numerous cases refusing to exclude evidence).

On November 20, 2008, this Court affirmed the Magistrate's order denying plaintiffs' motion to bar LNA from using the witness statements at trial (Doc. 16484, at 8-9). Specifically, this Court noted that plaintiffs "request this Court to issue a more expansive order that ... restricts [LNA] from making any direct use of the transcripts or recordings or referring to those materials during depositions or at trial." *Id*. at 8. In rejecting that request, the Court held that "[i]t is the opinion of this Court that the remedy of receiving all recorded statements by any putative class member, along with the clear restrictions on any future contact by Lafarge's investigators with

any putative class member, is a measured and appropriate response for the alleged violations and is the least severe means of ensuring future compliance with discovery orders." *Id.*

Plaintiffs' arguments in their new objection are the same as the arguments they previously made and that this Court previously rejected, and there are no changed circumstances that would warrant reconsideration of the Court's prior orders. See *Leclerc v. Webb,* 419 F.3d 405, 412 n.13 (5th Cir. 2005) ("A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments.").

In sum, even if plaintiffs' objection were timely – which it is not – the Court has already rejected the arguments made by plaintiffs in the objection, and no basis exists for reconsideration, much less reversal, of that prior ruling.

3.      In any event, plaintiffs' objection to LNA's designation of Mr. Williams' interview statement is plainly mistaken on the merits.

First, Mr. Williams acknowledged at his deposition that he in fact made the statements in question. Williams Dep. Tr. Oct. 9, 2008 at 38 ("Q: That is your voice saying those words? A: That is my voice."). As such, plaintiffs' assertions (at 2) that "[t]he Centanni transcript is not a statement" or is unreliable are patently untrue. See Fed. R. Evid. 801.[1]

Second, the recorded statement plainly is admissible for purposes of impeachment, since it is used to impeach Mr. Williams' direct testimony. See Fed. R. Evid. 607 and 613(a) and (b). Because the prior statement is being offered for purposes of impeachment, it by definition is not

---

[1] Plaintiffs' position that the Williams interview transcript is not a "statement" is directly contrary to their position on the surreptitiously recorded statement that attorney Richard Guidry made of his conversation with Arthur Murph. Plaintiffs contend that that statement, despite the circumstances of its recording, can be used as a prior inconsistent statement to impeach Mr. Murph.

5

hearsay – unlike the LeBlanc and Tompkins transcripts that plaintiffs improperly offered for the truth of the out-of-court statements contained in those transcripts.[2]

Third, plaintiffs' arguments as to the circumstances of the interview go to the weight that the statement should be accorded by the Court, not to its admissibility for purposes of impeachment. As set forth above, the interviewer simply told Mr. Williams that "what we're doing is investigating the – the levee breaches over there in the 9th Ward" and that "we're … just trying to find out what really happened out there." Doc. 11765-4, at 2. Moreover, when Mr. Williams gave his statement in March 2006, his memory of the events of August 2005 was far fresher than his memory during his deposition in 2008.

Fourth, plaintiffs' expert Gennaro Marino **_relied on Mr. Williams' statement_** in his expert report. See Marino Report at Table 3.1 (Map Location 10, row 11 of the chart, citing "Sidney Williams transcription on March 20, 2006"). That plaintiffs provided the statement to their expert, and he subsequently relied on it, is an acknowledgement by plaintiffs that the statement is a reliable rendering of Mr. Williams' account. Moreover, it would be fundamentally unfair for plaintiffs' expert to rely on a document, but then to bar LNA from introducing the document into the record in order to impeach the very witness who gave the statement.

Finally, as Magistrate Judge Wilkinson correctly held in rejecting plaintiffs' prior motion to exclude this and other transcripts, overwhelming authority rejects plaintiffs' argument that the Court should exclude relevant evidence as a sanction for an investigator's or attorney's alleged conduct:

---

[2] The LeBlanc and Tompkins interviews were taken by the same agency – Centanni – that took a statement from Mr. Williams. Plaintiffs' proposed use of those transcripts makes clear that they only object to the use of Centanni transcripts when plaintiffs do not like their contents. In fact, with respect to LeBlanc and Tompkins, plaintiffs claim that those transcripts are so probative and reliable that LNA should have provided the transcripts to its experts for them to review. The Williams transcript is equally reliable.

1492094-1

> An exclusionary policy frustrates truth and does not punish the ethical violation, but works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned. An ethical violation ought to be dealt with by sanctions against the errant attorney, except in special cases....
>
> An exclusionary rule is an indirect sanction that sacrifices truth on the altar of advocacy rather than a more functional approach of imposing a direct sanction on the errant attorneys. It leads to excessive quibbling, tactical maneuvering and possible frustration of justice.... Suppression and exclusion in this case effects little benefit to the profession and is not directly corrective of misconduct.

Doc. 13149, at 15-16, quoting *Weider Sports Equip. Co. v. Fitness First, Inc.*, 912 F. Supp. 502, 510 (D. Utah 1996), and also citing *United States v. Ryans*, 903 F.2d 731, 740 (10th Cir. 1990); *United States v. Hammad*, 858 F.2d 834, (2nd Cir. 1988); *United States v. Dennis*, 843 F.2d 652 (2d Cir. 1988); *United States v. Thomas*, 474 F.2d 110, 112 (10th Cir. 1973)); *Calloway v. DST Sys., Inc.*, No. 98-1303-CV-W-6, 2000 WL 230244 (W.D. Mo. Feb. 28, 2000) (citing *Plan Comm. in Driggs Reorg. Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998)); and *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1141 (N.D. Ala. 2005) (citing *United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999)). That is particularly so here given that, as both the Magistrate Judge and this Court have already held, the order requiring that the interviews be made available to the plaintiffs fully remedied any alleged harm from the recording of the interviews.

### Conclusion

Plaintiffs' belated and meritless objection should be overruled.

Dated:  June 22, 2010                    Respectfully submitted,

/s/ Derek A. Walker
Derek A. Walker, T.A. (#13175)
Robert B. Fisher, Jr. (#5587)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

7

1492094-1

Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Walker@chaffe.com
Fisher@chaffe.com


John D. Aldock
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240
jaldock@goodwinprocter.com
mraffman@goodwinprocter.com


Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 22, 2010.

　　　　　　　　　　/s/ Derek A. Walker