UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO: BARGE | SECTION "K" |
| *Mumford*  C.A. No. 05-5724 | *as to claims of plaintiffs Josephine Richardson and Holiday Jewelers, Inc. - ONLY* |
| *Benoit*  C.A. No. 06-7516 | *as to claims of plaintiffs John Alford and Jerry Alford -- ONLY* |

LAFARGE NORTH AMERICA INC.'S RESPONSE TO
PLAINTIFFS' OBJECTIONS TO TESTIMONY
ON CROSS EXAMINATION OF JOEL DUPRÉ

Plaintiffs have objected to the questions that counsel for LNA asked during the deposition of Joel Dupré. Because those questions were proper, the Court should overrule plaintiffs' objections.

By way of background, at the time of Hurricane Katrina, Mr. Dupré was the President of Southern Scrap Material Company, which had a facility just north of the Florida Avenue bridge on the IHNC, on the east side of the Canal. During Hurricane Katrina, two things happened at Southern Scrap that are relevant here. First, a dry dock secured by soft lines and four anchor chains at Southern Scrap broke from its moorings. Dupré Dep. at pp. 14-15 (LNA Exh. 364). Second, two barges under the control of Southern Scrap broke free, one of which ended up

directly on top of the loose dry dock. Dupré Dep. at pp. 15-18.[1] Those were not the only barge breakaways that Southern Scrap has experienced: during Hurricane Gustav, over fifty barges secured by steel cables broke free from Southern Scrap's fleet in the MRGO. Dupré Dep. at p. 18.

Even though Mr. Dupré was not identified by plaintiffs during discovery as an individual with relevant knowledge, and was therefore never deposed by LNA, plaintiffs sought to take Mr. Dupré's deposition during trial in order to adduce testimony that the unmoored dry dock was not the object that William Villavasso claimed to have seen at the North Breach site.[2] LNA agreed to permit plaintiffs to take Mr. Dupre's deposition out of time, but never agreed to any limitations on the scope of the deposition. Once Mr. Dupré was sitting for deposition, LNA was entitled to ask him about any fact that is relevant to this action.

The Court should overrule plaintiffs' objection to the scope of LNA's examination for four reasons. First, Mr. Dupré is a fact witness. At Mr. Dupré's deposition, LNA was not limited to asking questions only about the location of the dry dock that broke from its moorings at Southern Scrap during Hurricane Katrina. When it agreed to permit plaintiffs to take Mr. Dupré's deposition out-of-time and in the middle of trial, LNA never agreed to the limitation on the scope of the deposition that plaintiffs are now seeking to impose.

Second, questions concerning the mooring of the dry dock by Southern Scrap were within the scope of the questions that plaintiffs' counsel asked at Mr. Dupré's deposition. Plaintiffs' counsel asked Mr. Dupre about "a study done on the mooring arrangements as to the dry dock"

---

[1] Two other barges under the control of Southern Scrap broke from Southern Scrap's fleet in the MRGO during Hurricane Katrina. Dupré Dep. at pp. 17-18.

[2] Plaintiffs insisted on taking Mr. Dupré's deposition even though LNA has never claimed that Mr. Villavasso saw the Southern Scrap dry dock. To the contrary, that dry dock, like the ING 4727, was too large to have been the object that Mr. Villavasso described having seen sticking up only one or two feet above the floodwall.

and who conducted the investigation. Dupré Dep. at pp. 13-14. Plaintiffs' counsel therefore opened the door to questions by LNA about the mooring of the dry dock by Southern Scrap.

Third, LNA's questions about the mooring of barges by Southern Scrap were also within the scope of plaintiffs' counsel's examination. During the deposition, plaintiffs' counsel showed Mr. Dupré several pictures (deposition exhibits 2-4) of the dry dock that broke free from Southern Scrap during Katrina. ***Those pictures showed an empty barge sitting on top of the loose dry dock.*** The barge had broken loose from Southern Scrap during Hurricane Katrina. LNA was certainly entitled to question Mr. Dupré about the objects seen in the pictures that plaintiffs' counsel showed Mr. Dupré during his deposition.

Finally, there is no merit to plaintiffs' claim that evidence concerning the mooring of the drydock or barges at Southern Scrap is irrelevant. The fact that hundreds of barges in the New Orleans area, tied up with synthetic rope and/or metal cables, broke free during Hurricane Katrina and other storms supports LNA's defenses that (a) it was appropriate for LNA to moor the ING 4727 using polypropylene line and not metal cables, and (b) regardless of the type of line that LNA used to moor the ING 4727, the barge would have broken free under the force of the storm.

## CONCLUSION

The Court should overrule plaintiffs' objection to the questions that LNA's counsel asked Mr. Dupré at his deposition.

Dated:  July 20, 2010

                Respectfully submitted,


                Derek A. Walker (#13175)
                Robert B. Fisher, Jr., T.A. (#5587)
                CHAFFE MCCALL, L.L.P.
                2300 Energy Centre
                1100 Poydras Street
                New Orleans, LA  70163-2300
                Telephone:  (504) 585-7000
                Facsimile:  (504) 585-7075
                Fisher@chaffe.com
                Walker@chaffe.com

                 /s/ John D. Aldock
                John D. Aldock
                Mark S. Raffman
                GOODWIN PROCTER LLP
                901 New York Avenue, N.W.
                Washington, DC  20001
                Telephone:  (202) 346-4240
                jaldock@goodwinprocter.com
                mraffman@goodwinprocter.com

                Daniel A. Webb (#13294)
                SUTTERFIELD & WEBB, LLC
                Poydras Center
                650 Poydras Street, Suite 2715
                New Orleans, LA  70130
                Telephone:  (504) 598-2715

                *Attorneys for Lafarge North America Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 20, 2010.

                                                                  /s/ John D. Aldock