UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO:<br>MRGO | SECTION "K"(2) |

## ORDER AND REASONS

Before the Court is a Motion For An Order That All Fees Be Subject to Court Review Per CMO No. 4 (Doc. 19568) filed by the Katrina Canal Breaches Litigation Plaintiffs Liaison Counsel, MRGO Subgroup Liaison Counsel, *Robinson* Trial Counsel on behalf of themselves and other interested attorneys ("Movers"). In this motion, counsel request that the Court enter a Case Management Order establishing an organizational system for the compensation of common benefit plaintiffs' attorney fees and expenses. In doing so Movers seek recognition of the "extensive and valuable professional services [that] have been performed and expenses incurred for the common benefit of all individual plaintiffs" by them. (Doc. 19568). No opposition to this motion was filed by any attorney other than Daniel Becnel, Jr., and the relevant part of that opposition focuses solely on a listing of the activities taken by his firm in the MRGO litigation. In order to rule on the motion, a review of the history of the *Robinson/* MRGO litigation is required.

**Background**

The United States Court for the Eastern District of Louisiana determined that the goal of judicial economy was furthered by the creation of the *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182 (*In re Katrina*). In its Case Management Order No. 4 (Doc. 3299) issued on March 1, 2007 in the *In re Katrina* matter, the Court noted that:

> . . . a group of attorneys from nine law firms organized into a MRGO Litigation Group, which Group has performed extensive research on litigation of the MRGO claims. This Group of attorneys filed the *Robinson* case, C.A. No. 06-2268, alleging that the negligent design, construction, operation, and/or maintenance of the MRGO by the United States Army Corps of Engineers caused vast damage in the Greater New Orleans area. . . .
> 
> The Court has been advised that this Group of attorneys has committed substantial time and monetary resources toward research regarding the development of the MRGO and the Federal Tort Claims Act, reviewed tens of thousands of pages of documents from the Corps, interviewed dozens of eyewitnesses, engaged the services of many expert scientists, established financial structure to the Group, and devised a litigation plan for individuals to seek reparations for their damages. Further, the Group has expanded in number of participating attorneys and each participating attorney has entered into a funding and representation agreement.
> 
> The Court recognizes the work performed by this Group in prosecuting this litigation to date and encourages these attorneys and other attorneys interested in the MRGO litigation to continue to work together. The work performed to date may, at the appropriate time be submitted to the Court for approval as compensable work performed as if performed with the approval and direction of the PSLC-MRGO.

(Doc. 3299 at 8). In that same order, it was also noted that the *Robinson* case was appropriate for a separate scheduling order, including trial of all issues. (Doc. 3299 at 2). This determination was in recognition that the *Robinson* matter was to be tried as an exemplar case on a "fast track" for purposes of determining the alleged liability of the United States Army Corps of Engineers.

In addition, the Court noted in CMO No. 4 as follows concerning the Control of Fees:

> The Court shall to the maximum extent allowed under the law control the fees and expenses that may be ultimately awarded in these proceedings. The Court will discharge its obligation and insure that the parties to the litigation will be treated fairly and justly. In order to assist the Court in discharging this obligation, all counsel shall keep a daily record of the time spent and expenses incurred in connection with this litigation, indicating with specificity the hours, the location and particular activity.

(Doc. 3299 at 12). On March 15, 2007, the Court entered the *Robinson* Case Management Order No. 1 (Doc. 3408). On January 17, 2008, the Court granted the United States' Motion for a Stay of All Cases Apart from Barge, Robinson, and the Levee and MRGO Master Class Action Cases. (Doc. 10620).

As a result, all of the substantive issues concerning the immunity of the United States' for its actions concerning the MRGO were litigated in the *Robinson* matter for the benefit of the MRGO Master Class Action Cases. Finally, a final adjudication on the merits of plaintiffs' claims came to trial in the spring of 2009 for 19 days. The Court entered its written opinion finding liability on the part of the United States on November 18, 2009 (Doc. 19415). This matter is on appeal at this time.

**Common Benefit Doctrine**

Movers seek recognition that through the efforts of Movers and others, extensive professional services have been performed and expenses incurred for the common benefit of all individual plaintiffs, their counsel, and all *pro se* plaintiffs with claims against the United States for claims as defined in the MRGO Master Amended and Supplemental Class Action Complaint. Judge Fallon explained in succinct detail in *Turner v. Murphy Oil USA, Inc.,* 422 F. Supp.2d 676

(E.D.La. 2006), the basis for and requirements surrounding the establishment of a common benefit fund. He stated:

> Under what is generally termed the "American rule," every litigant is responsible for the payment of his or her own attorney's fees. If there is no attorney-client relationship, no attorney's fees are generally owed. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, in certain settings, the American rule creates the problem of free riding, that is, when individuals who benefit from the litigation avoid sharing the full burden and expense of litigation by relying on the work of others. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (citing *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881) and *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885)).
> 
> Thus, to avoid the problem of free-riding, the U.S. Supreme Court over 125 years ago approved the common benefit doctrine, which provides that when the efforts of a litigant or attorney create, preserve, protect, increase, or discover a common fund, all who benefit from that fund must contribute proportionately to the costs of the litigation. *Boeing,* 444 U.S. at 479, 100 S.Ct. 745; *Pettus,* 113 U.S. at 123, 5 S.Ct. 387; *Greenough,* 105 U.S. at 532-33, 105 U.S. 527. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing,* 444 U.S. at 478, 100 S.Ct. 745. *See also* Manual for Complex Litigation (Fourth) § 14.121 (2004) (discussing the American Rule and the common-benefit exception in complex cases).
> 
> The Louisiana Supreme Court has recognized the common benefit doctrine and has developed the following test to determine whether attorneys are owed funds under the doctrine. *Kirkpatrick v. Young,* 456 So.2d 622, 625 (La.1984). First, the attorney must demonstrate that he acted 1) on his own and 2) at his own expense. *Id.* Second, the attorney must show that he maintained a successful suit for the preservation, protection, or increase of a common fund. *Id.*
> 
> The Fifth Circuit Court of Appeals has applied this doctrine in class actions and multi-district litigation cases. *Forbush v. J.C. Penney Co.,* 98 F.3d 817, 823-25 (5th Cir.1996) (approving of district court's use of common benefit doctrine in ERISA class action); *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1021 (5th Cir.1977) (finding the doctrine could apply to an MDL).

*Id.* at 681. Certainly, it is clear to this Court that the prosecution of the *Robinson* trial has indeed been for the common benefit of all plaintiffs in the MRGO category under the *In re Katrina* umbrella.

4

In addition, Judge Fallon discussed the practice of creating "set-asides" in the instant context.

> In accordance with the common benefit doctrine, it has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds for later distribution. *See, e.g., In re Linerboard Antitrust Litig.,* 292 F.Supp.2d 644, 668-69 (E.D.Pa.2003) (imposing percentage set-aside in antitrust MDL for lead counsel for plaintiffs); *In re MGM Grand Hotel Fire Litig.,* 660 F.Supp. 522, 525 (D.Nev.1987) (imposing set-aside for costs and expenses of plaintiffs' liaison *681 committee); *In re Diet Drugs prod. Liab. Litig.,* No. 1203, 1999 WL 124414, at *2 (E.D.Pa. Feb. 10, 1999) (providing for a 9% set-aside in a pharmaceutical MDL for common benefit work); *In re Orthopedic Bone Screw Prod. Liab. Litig.,* MDL No. 1014, 1996 WL 900349, at *3 (E.D.Pa. June 17, 1996) (imposing 5% assessment for common benefit costs). It is important to note that these are set-asides, not disbursements: no amounts are paid to attorneys from the set-aside fund until the attorneys demonstrate that they have worked for the common benefit. *See Florida Everglades,* 549 F.2d at 1021 (rejecting assessment for common benefit because the district court did not determine the common benefit and reasonableness of liaison counsel's services).
> 
> In class action suits filed in federal court, the district court's power to set aside funds derives from the court's inherent power to manage its own docket and its power under Rule 23(d) of the Federal Rules of Civil Procedure to make such orders as necessary to manage the class action. *Id.* at 1012-13. Because the district court has the power to designate lead counsel for the class, the court has the complementary power to ensure that lead counsel are compensated for their work for the common benefit. *Id.* at 1016 ("if lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation"). However, prior to distribution to attorneys, the Court also must evaluate the reasonableness of the set-aside funds and the value of the attorneys' work product. *Id.* at 1021.

*Id.* Clearly, as this matter is on appeal and there is no settlement of which the Court is aware, the funds from which a set-aside might be carved is illusory at this time. However, in the event any settlement is confected by any party, such party shall inform the Court within 24 hours. At that time, the Court shall order Movers to file a Proposed Case Management Order establishing an organizational system for the compensation of common benefit plaintiffs' attorney fees and

5

expenses.  Such a proposal shall be served on all counsel and after a period for written comment, the Court will conduct a hearing at which time all parties may be heard.  Likewise, in the event that the *Robinson* decision is affirmed on appeal, the appropriate action shall be taken. Accordingly,

**IT IS ORDERED** that the Motion for an Order That All Fees Be Subject to Court Review per CMO No. 4 is **DENIED** as premature; however, the Court hereby recognizes that the efforts of the Movers entitle them to the establishment of a common fund for their compensation and remuneration of expenses as to be proven at the appropriate time as delineated above.

New Orleans, Louisiana, this  28th  day of July, 2010.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**