UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Weisler v. Seymour, et al.* **09-2737** | * | |
| | * | JUDGE |
| | * | STANWOOD R. DUVAL, JR. |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |

**OPPOSITION OF PLAINTIFF TO DEFENDANTS'
EX PARTE MOTION FOR FORMAL EXTENSION OF TIME
TO RESPOND TO FIRST REQUEST FOR PRODUCTION**

**MAY IT PLEASE THE COURT:**

## SUMMARY

This matter arises from the outright refusal on the part of the "Barge Plaintiffs Litigation Steering Committee, the Defendants herein, (the Defendants or at times "BPSLC")," to compensate the expert psychiatrist they retained, Dr. Richard Weisler ("Dr. Weisler"), the

1

Plaintiff, herein, in accordance with the services he performed in connection with this litigation (the "Barge Case").  After various dilatory tactics that have gone on for over a year and a half, the Defendants have now filed what they have labeled as an "Ex Parte" Motion for Extension of Time to respond to one small Request for Production, which contains just one item[1].   Dr. Weisler opposes this extension for a number of reasons.

First, contrary to the commonly understood import of the term "ex parte" as it applies to Motions, which usually implies the consent of the opposing party or that no such consent is required, in this instance the consent clearly *would* be required, was *not* obtained, and undersigned counsel for Dr. Weisler repeatedly attempted to contact counsel for the Defendants by telephone to find out why he had called.  Contrary to the Defendants Rule 37.1 Certificate, those calls were never returned.

Now that the Motion has been made available, Dr. Weisler formally opposes the Motion for several specific reasons:

1. His discovery request simply asks for the e-mails and other documents evidencing communication between and among the Defendant/Attorneys, as well as between the Defendant/Attorneys and any medical experts, who, like Dr. Weisler were

---

[1]     Exhibit "A".

      retained as experts in the "Barge Case", and, for the most part, have not been paid to date;

2. The Defendants have been on notice for nearly *two years* that Dr. Weisler wished to obtain copies of these materials;

3. The Defendants have deliberately stalled in providing these documents, as they will facilitate Dr. Weisler's recovery of all that he is owed by the Defendants;

4. Dr. Weisler has already provided his disclosures, including all such e-mails he received or generated related to his involvement in the Barge Case;

5. Until very recently, the Defendants have deliberately refused to disclose and provide these documents as required under Rule 26, a rule with which these Defendants, as attorneys, are well familiar, which should result in sanctions under this Rule;

6. Yesterday, realizing they were completely in the wrong and that Dr. Weisler would oppose this Motion, the Defendants provided an initial wave of the long sought e-mails but have redacted them by "Blacking Out" nearly all the relevant information; and

7. To allow these Defendants to abuse the discovery process and refuse to provide basic information for over a year and a half, then belatedly respond by providing "blacked out" e-mails, and, then ask for an additional 60 days to respond, is unconscionable.

Accordingly, Dr. Weisler seeks to have all of the redacted e-mails produced on an immediate basis. In addition, Dr. Weisler prays that sanctions should be awarded for the Defendants' deliberate refusal to provide these critical documents which they have had in their possession for years.

## DR. WEISLER'S SERVICES

This suit was originally filed on February 11, 2009, when the Defendants made it clear that they would not pay Dr. Weisler *anything* for the services he provided as an expert witness, after he had been retained on an emergency basis less than thirty (30) days before the expert report deadline by the BPSLC. No explanation was given for their delay in seeking an expert. Dr. Weisler was then asked to proceed on an expedited basis at an agreed rate of $600 per hour to provide whatever expert witness services were needed to establish an "emotional injury subclass" in the Barge Case, which was to consist of approximately 5,000 persons emotionally affected by the Katrina flooding as alleged in the "Barge Case".

The services the BPSLC requested included: (1) conducting psychiatric examinations at the Defendants' specific request of numerous Plaintiffs from the Barge Case hand, picked by the BPSLC; (2) retaining, with the permission and instructions of the BPSLC, various other medical providers who also were to serve as expert witnesses, several of whom were also to be compensated at a rate of $600 per hour; (3) supervising the efforts of all of those additional medical providers; (4) correlating all of these experts' findings into a comprehensive report and generating a final comprehensive report which was released to the Defendants in a timely

fashion despite their delays in retaining Dr. Weisler; (5) continuing to thereafter work for the Defendants at their specific request after they saw and accepted his invoice for services through June 30, 2008 which amounted to $152,000; (6) thereafter reviewing numerous documents and preparing for a deposition which the Defendants had scheduled in early August in order for him to defend the report and the "emotional injury subclass" supposedly consisting of some 5,000 members; and, (7) participating in various conference calls with the Defendants at their request to discuss strategy associated with the proposed subclass.

### END OF SERVICES

On or about August 15, 2009, Dr. Weisler was abruptly told by e-mail from the BPSLC to cease all efforts when the Defendants belatedly decided that they could not establish an "emotional injury subclass"; and therefore, unilaterally abandoned the concept.  The information that is just beginning to appear shows that the BPSLC chose to forego the "emotional injury subclass" because of the comments of attorney, Shahin F. Khorrami, who had just joined the BPSLC.  Mr. Khorrami refused to pay Dr. Weisler anything and encouraged the other members of the BPSLC to do the same, despite the fact that they continued to list Dr. Weisler and another then unpaid psychiatrist, Dr. Mark Townsend, as expert witnesses.  Mr. Khorrami took this position despite the fact that Dr. Weisler had done everything he was instructed to do, but simply failed to demand payment prior to releasing his report to the BPSLC, as he trusted them, which was, obviously a mistake in hindsight.

## PAYMENT ISSUES

Indeed, early on, the Defendants had been forced to pay one of the medical providers, psychologist, Dr. Jill Hayes, over $21,000.00 for her limited involvement in this project, which consisted of administering tests to just *one* Plaintiff.  But the BPSLC paid her only because she refused to release her report until she was paid.  The Defendants also eventually paid another psychiatrist retained by the Defendants, Dr. Mark Townsend, but only after he threatened litigation, and they began to consider him as a substitute witness for the BPSLC's litigation efforts.  Dr. Townsend was paid nearly $54,000.00, for his limited involvement, an amount based on the same $600 hourly rate which Dr. Weisler charged.  His involvement was limited to assisting Dr. Weisler in evaluating 11 patients and his involvement ended in June.  As the supervising expert and author of the comprehensive expert report, Dr. Weisler's involvement was far more comprehensive then these other two consultants and lasted for a much longer period.  It should be noted that the Defendants have also refused to pay another $30,000 to other psychiatric consultants involved in the Defendants' aborted "emotional injury subclass" project.[2]

Again, this is all because the Defendants unilaterally chose to forego pursuing a subclass within the class certification proceeding for those persons who had allegedly sustained emotional injuries as a result of the levee breaches.  Significantly, this decision was made after the Defendants had praised Dr. Weisler for both the timeliness of his report (despite the untimeliness

---

[2]   See attached invoices amounting to $29,300.  (Exhibit "B").

of the Defendants' request), as well as the quality and content of the report.[3]  Again, the Defendants' decision to jettison the subclass was made after Dr. Weisler had already provided his comprehensive report and services and Dr. Weisler was not involved in that decision. Further, after they received the report, and each time Dr. Weisler had requested payment for his services, the Defendants suggested that they could not afford to pay him, despite their respective Affidavits to the Court as proposed class counsel indicating that they all had the resources to finance the litigation.  The Defendants also continued to ask Dr. Weisler to reduce his fees because of their unilateral change in strategy which he refused to do, as his fees had not been arranged on a "contingency basis" which would have been unethical, if not illegal.

## STALL TACTICS

Since the Defendants can't or won't pay, the Defendants have done everything they can to stall this litigation.  For instance, after Dr. Weisler initially had filed suit, the Defendants obtained an extension of time and, then instead of filing an answer, filed a Motion to Dismiss. This caused an initial delay in the proceedings, however, until such time as the Motion could be briefed.  The Court eventually ruled on the Motion which was denied on March 2, 2010. Meanwhile, the Defendants then filed an Answer and a Counter-Claim alleging that Dr. Weisler was somehow negligent in the performance of his expert services, despite all of the contemporaneous, glowing e-mail reviews he had received from these same Defendants.[4]

---

[3] Exhibit "C".

[4] *See e.g.,* Exhibit "C"

That counter-claim will eventually be the subject of a Rule 11 Motion. This is because the Defendants' counter-claim is obviously specious and just another attempt to get Dr. Weisler to reduce his fees, through intimidation, or to create further delays until such time as the Defendants might have the unlikely contingency of some recovery from the Barge Case which is now in a briefing scheduling according to the Defendants. The status of that case is irrelevant to these proceedings and presents no basis for the Defendants to avoid producing documents they should have gathered two years ago.

In addition, as the Defendants' initial disclosures reflect,[5] their attorneys listed as documents to be produced, all those documents which Dr. Weisler had already produced to them the day before! No mention is made of all of the e-mails between and among the Defendants which form the core issue in the case. This is also despite the fact that the correspondence from the Defendants' attorneys make references to spoliation and preservation of e-mails in their earlier correspondence, but attempt to limit this solely to Dr. Weisler.[6] This is more than odd, as at least one of their attorneys *from the same office* already admitted he had such e-mails from among the Defendants, in fact, two discs of them.[7] Again, since this was the case, the Defendants' attorneys had already obtained the documents and should have disclosed if not produced them long ago, but deliberately withheld them.

---

[5]  Exhibit "D"

[6]  Exhibit "E"

[7]  Exhibit "F"

As a result, Dr. Weisler was forced to send a formal Request for Production for just these communications.[8]  In response, the Defendants instantly stonewalled and refused to produce the documents speciously claiming that there had been no "Rule 26(f) preliminary conference,"[9] which was completely false as confirmed by the prior correspondence *from the office of the same attorneys*.[10]

Meanwhile, since they had no good faith basis in fact or law for the position they were taking, in subsequent correspondence, the same attorneys began to also assert more specious privileges, demand further delays, and also claimed "you have all of our response materials"[11]. In reality, much like the tacky custom of "regiftin" those attorneys had only produced Dr. Weisler's documents as their own Rule 26 disclosures.  This was not only insulting but done in bad faith.

As to their hollow claims of privilege, none of the Defendants had retained counsel at the time they exchanged e-mails between and among themselves in August 2008, and simply because they are attorneys does not clothe their e-mail communications as fact witnesses with any privilege: in fact, it is just the opposite.  These are core documents which will decide the

---

[8]    Exhibit "A" and "G"

[9]    Exhibit "H"

[10]   Exhibit "I"

[11]   See Exhibit "I"

case. This is particularly so if the e-mails contain the real reason they are attempting to avoid paying Dr. Weisler's fees.

Yesterday, apparently realizing that they have no good faith basis in fact or law for keeping those documents from production, they began to release select documents. But as the attached example shows, these documents are being "blacked out" to the point where they are useless.[12] Responses such as these are not responses at all and therefore, no extension should be granted. Further, this type of protracted discovery abuse is sanctionable.

## CONCLUSION

In sum, as is apparent the Defendants would have the Court permit them to delay their responses for another 60 days on top of the year and a half that they have refused to respond to the basic Rule 26 disclosure requirements. After the delay, they will, no doubt, continue to assert specious claims of privilege and provide only hopelessly redacted documents. Dr. Weisler submits that this case has dragged on long enough through the Defendants' dilatory tactics, and that no extensions should be permitted whatsoever. Sanctions under Rule 11, 26, and 37 of the

---

[12]   Exhibit "J"

Federal Rules of Civil Procedure should also be awarded against these Defendants for these obvious and willful discovery abuses.

                Respectfully submitted,

                /s/ Andrew C. Wilson
                Daniel J. Caruso (3941)
                Andrew C. Wilson (01162)
                Charles E. Riley, IV (28200)
                Christopher B. Conley (31674)
                30th Floor– Energy Centre
                1100 Poydras Street
                New Orleans, Louisiana 70163
                Telephone (504) 569-2030
                Facsimile (504) 569-2999
                Attorneys for Plaintiff, Richard H. Weisler, M.D.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on August 24, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                      /s/ Andrew C. Wilson

Opposition to Ex Parte Extension.wpd