## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | |
| _____ | § | |
| | § | JUDGE DUVAL |
| PERTAINS TO:  MRGO | § | |
| *Armstrong,* No. 10-866 | § | |
| *Entergy,* No.  10-77 | § | MAG. WILKINSON |
| _____ | § | |

## DEFENDANT UNITED STATES' RESPONSE AND OBJECTIONS TO ENTERGY'S STATEMENT OF UNDISPUTED FACTS (Doc. 20033-2)

1.     Undisputed.

2.     Undisputed.

3.     Undisputed.

4.     Disputed to the extent that the plaintiffs are arguing that the source of

Congressional appropriations is material for 33 U.S.C. § 702c purpose.

Irrelevant for purposes of the discretionary function exception.  Otherwise,

undisputed.

-1-

5.    Objection:  vague and ambiguous.  Otherwise, undisputed.

6.    Undisputed.

7.    Disputed insofar as it implies that the fill material for design of the levees at the IHNC extended to the East Bank Industrial Area ("EBIA"). Sources of fill material for the design and construction of IHNC levees was addressed in the LPVHPP GDM.

8.    Undisputed.

9.    Undisputed, but irrelevant for purposes of the discretionary function exception analysis.

10.    Objection with respect to emphasis on "navigation" in subsection (1); otherwise, undisputed.

11.    Objection; vague and ambiguous.  Irrelevant for purposes of the discretionary function exception analysis because the extent of Congressional funding, or lack thereof, because the exception applies to conduct that involves a "matter of choice for the acting employee" and is "susceptible to policy analysis."  *United States v. Gaubert,* 499 U.S. 315, 322, 325 (1991) (internal citations omitted).  Otherwise, undisputed.

12.    Irrelevant for purposes of the discretionary function exception analysis because the extent of Congressional funding, or lack thereof, was conduct that

involves a "matter of choice for the acting employee" and is "susceptible to policy analysis." *Gaubert,* 499 U.S. at 322, 325 (internal citations omitted). Otherwise, undisputed.

13.   Irrelevant for purposes of the discretionary function analysis; otherwise, undisputed.

14.   Undisputed.

15.   Objection; vague and ambiguous with respect to the Port of New Orleans's sole determination being dispositive for placement of the bypass channel; otherwise, undisputed.

16.   Disputed.

17.   Undisputed.

18.   Undisputed.

19.   Undisputed.

20.   Undisputed.

21.   Irrelevant for purposes of the discretionary function analysis because NEPA is a strictly procedural statute, prescribing only the process by which an agency should comply and not limiting its discretion to make substantive decisions. *See Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350 (1989); *City of Shoreacres v. Waterworth,* 420 F.3d 440, 450 (5th Cir. 2005).

Disputed to the extent that the plaintiffs are implying that the impact of the construction of the bypass channel and proposed remedial excavations on the LPVHPP levees' and floodwalls' integrity was not analyzed.  The existing bypass channel design was analyzed in the Evaluation Report, and was determined to not affect the stability of the floodwalls.  See Doc. No. 19988-4, at ¶ 24.  The Court has already found that the effects of the excavations on the floodwalls "were contemplated by the Corps—ergo the use of cofferdams . . . ." *In re Katrina Canal Breaches,* 2008 WL 5234369, at *20.  Moreover, the fact that "Corps did do an independent examination of the McDonough site where a cofferdam designed by a Louisiana civil engineer was not used demonstrates this fact." *Id.*  The Corps, working with WGI, took an individualized review of each excavation to determine its effect on the floodwalls.

22.    Irrelevant for purposes of the discretionary function analysis because NEPA is a strictly procedural statute, prescribing only the process by which an agency should comply and not limiting its discretion to make substantive decisions.  *See Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350 (1989); *City of Shoreacres v. Waterworth,* 420 F.3d 440, 450 (5th Cir. 2005). Disputed to the extent that the plaintiffs are implying that the impact of the construction of the bypass channel and proposed remedial excavations on the

LPVHPP levees' and floodwalls' integrity was not analyzed.  The existing bypass channel design was analyzed in the Evaluation Report, and was determined to not affect the stability of the floodwalls.  See Doc. No. 19988-4, at ¶ 24.  The Court has already found that the effects of the excavations on the floodwalls "were contemplated by the Corps—ergo the use of cofferdams . . . ." *In re Katrina Canal Breaches,* 2008 WL 5234369, at *20.  Moreover, the fact that "Corps did do an independent examination of the McDonough site where a cofferdam designed by a Louisiana civil engineer was not used demonstrates this fact." *Id.*  The Corps, working with WGI, took an individualized review of each excavation to determine its effect on the floodwalls.

23.     Undisputed.

24.     Undisputed.

25.     Disputed to the extent that the plaintiffs are arguing that the characterization of a project is material for 33 U.S.C. § 702c purpose. Irrelevant for purposes of the discretionary function exception.  Otherwise, undisputed.

26.     Undisputed.

27.     Undisputed.

28.    Disputed to the extent that a Supplemental EIS was required.  An EIS is subject to supplementation when "significant new circumstances or information relevant to environmental concerns. . . bearing on the proposed action or its impacts" arises.  40 C.F.R. § 1502.9(c)(1)(ii); *see also La. Crawfish Prods. Ass'n-West v. Rowan,* 463 F.3d 352, 358 (5th Cir. 2006).  "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized."  *Marsh v. Ore. Natural Res. Council,* 490 U.S. 360, 373 (1983); *see also Coker v. Skidmore,* 941 F.2d 1306, 1310 (5th Cir. 1991). Failure to prepare an SEIS when one was warranted can be an abuse of discretion; but, the DFE expressly protects such decision-making.  See 28 U.S.C. § 2680(a) (immunity extends to"the exercise or performance or the failure to exercise or perform a discretionary function . . . whether or not the discretion involved be abused") (emphasis added); *see also In re Katrina Canal Breaches,* 647 F. Supp. 2d 644, 701 (E.D. La. 2009), *appeal pending.*

29.    Irrelevant to the discretionary function exception analyses; otherwise, undisputed.

30.    Disputed to the extent that the August 2001 modification constituted a significant alteration of the physical conditions of the foundation at the EBIA.

31.    Disputed.  This is a negligent supervision case.  The interplay between

the Corps and WGI is emblematic of the Fifth Circuit's unequivocal statement

that "[s]upervision of a contractor's work, including the degree of oversight to

exercise, is inherently a discretionary function."  *Guile v. United States,* 422

F.3d 221, 231 (5th Cir. 2005) (citing *Kirchmann v. United States,* 8 F.3d 1273,

1276-77 (8th Cir. 1993)).  The decisions as to the extent of supervising WGI,

including the extent of any engineering analyses that the Corps elected to

perform, involved an intention to place confidence in the expertise and

competence of its contractor.  *See Kirchmann,* 8 F.3d at 1278 (quoting *United

States v. Varig Airlines,* 467 U.S. 797, 820 (1984)); *see also Duff v. United States,*

999 F.2d 1280, 1281 (8th Cir. 1993).  This interplay involved "certain

calculated risks," *Kirchmann,* 8 F.3d at 1278 (quoting *Varig Airlines,* 467 U.S. at

820), driven by a policy "to obtain the best value for the American taxpayer,"

*Wood v. United States,* 290 F.3d 29, 39 (1st Cir. 2002).  The existing bypass

channel design was analyzed in the Evaluation Report, and was determined to

not affect the stability of the floodwalls.  See Doc. No. 19988-4, at ¶ 24.  The

Court has already found that the effects of the excavations on the floodwalls

"were contemplated by the Corps—ergo the use of cofferdams . . . ."  In re

Katrina Canal Breaches, 2008 WL 5234369, at *20.  Moreover, the fact that

"Corps did do an independent examination of the McDonough site where a cofferdam designed by a Louisiana civil engineer was not used demonstrates this fact." *Id.*  The Corps, working with WGI, took an individualized review of each excavation to determine its effect on the floodwalls.

32.     Disputed to the extent that the project constituted a substantial size increase warranting supplementation of the EIS.  The scope of the project notwithstanding, the decision to prepare a supplemental EIS is discretionary. "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized."  *Marsh v. Ore. Natural Res. Council,* 490 U.S. 360, 373 (1983); *see also Coker v. Skidmore,* 941 F.2d 1306, 1310 (5th Cir. 1991).  Failure to prepare an SEIS when one was warranted can be an abuse of discretion; but, the DFE expressly protects such decision-making.  See 28 U.S.C. § 2680(a) (immunity extends to "the exercise or performance or the failure to exercise or perform a discretionary function . . . whether or not the discretion involved be abused"); *see also In re Katrina Canal Breaches,* 647 F. Supp. 2d 644, 701 (E.D. La. 2009).  The lack of explication for "substantial changes" and "significant new circumstances" is quintessential regulatory language conferring discretion on agency decision-making.  *See, e.g., Sierra Club v. Babbitt,* 65 F.3d 1502, 1512 (9th Cir. 1995) (procedural requirements

of NEPA are triggered by a discretionary federal action); *Nevada v. United States,* 221 F. Supp.2d 1241 (D. Nev. 2002) (stating that NEPA applies only to discretionary agency actions).

33.     Disputed to the extent that the project constituted a substantial size increase warranting supplementation of the EIS.  The scope of the project notwithstanding, the decision to prepare a supplemental EIS is discretionary. "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized." *Marsh v. Ore. Natural Res. Council,* 490 U.S. 360, 373 (1983); *see also Coker v. Skidmore,* 941 F.2d 1306, 1310 (5th Cir. 1991).  Failure to prepare an SEIS when one was warranted can be an abuse of discretion; but, the DFE expressly protects such decision-making.  *See* 28 U.S.C. § 2680(a) (immunity extends to "the exercise or performance or the failure to exercise or perform a discretionary function . . . whether or not the discretion involved be abused"); *see also In re Katrina Canal Breaches,* 647 F. Supp. 2d 644, 701 (E.D. La. 2009).  The lack of explication for "substantial changes" and "significant new circumstances" is quintessential regulatory language conferring discretion on agency decision-making.  *See, e.g., Sierra Club v. Babbitt,* 65 F.3d 1502, 1512 (9th Cir. 1995) (procedural requirements of NEPA are triggered by a discretionary federal action); *Nevada v. United States,* 221 F.

Supp.2d 1241 (D. Nev. 2002) (stating that NEPA applies only to discretionary agency actions).

34.     Disputed to the extent that the project constituted a substantial size increase warranting supplementation of the EIS.  This is a negligent supervision case.  The interplay between the Corps and WGI is emblematic of the Fifth Circuit's unequivocal statement that "supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function."  *Guile v. United States,* 422 F.3d 221, 231 (5th Cir. 2005) (citing *Kirchmann v. United States,* 8 F.3d 1273, 1276-77 (8th Cir. 1993)).  The decisions as to the extent of supervising WGI, including the extent of any engineering analyses that the Corps elected to perform, involved an intention to place confidence in the expertise and competence of its contractor.  *See Kirchmann,* 8 F.3d at 1278 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 820 (1984)); *see also Duff v. United States,* 999 F.2d 1280, 1281 (8th Cir. 1993).  This interplay involved "certain calculated risks," *Kirchmann,* 8 F.3d at 1278 (quoting *Varig Airlines,* 467 U.S. at 820), driven by a policy "to obtain the best value for the American taxpayer," *Wood v. United States,* 290 F.3d 29, 39 (1st Cir. 2002).  The existing bypass channel design was analyzed in the Evaluation Report, and was determined to not affect the

stability of the floodwalls.  *See* Doc. No. 19988-4, at ¶ 24.  The Court has

already found that the effects of the excavations on the floodwalls "were

contemplated by the Corps—ergo the use of cofferdams . . . ."  *In re Katrina*

*Canal Breaches,* 2008 WL 5234369, at *20.  Moreover, the fact that "Corps did

do an independent examination of the McDonough site where a cofferdam

designed by a Louisiana civil engineer was not used demonstrates this fact."

*Id*.  The Corps, working with WGI, took an individualized review of each

excavation to determine its effect on the floodwalls.

35.    The scope of the project notwithstanding, the decision to prepare a

supplemental EIS is discretionary. "[A]n agency need not supplement an EIS

every time new information comes to light after the EIS is finalized."  *Marsh v.*

*Ore. Natural Res. Council,* 490 U.S. 360, 373 (1983); *see also Coker v. Skidmore,*

941 F.2d 1306, 1310 (5th Cir. 1991).  Failure to prepare an SEIS when one was

warranted can be an abuse of discretion, but the DFE expressly protects such

decision-making.  *See* 28 U.S.C. § 2680(a) (immunity extends to "the exercise

or performance or the failure to exercise or perform a discretionary function

. . . whether or not the discretion involved be abused"); *see also In re Katrina*

*Canal Breaches*, 647 F. Supp. 2d 644, 701 (E.D. La. 2009).  The lack of

explication for "substantial changes" and "significant new circumstances" is

quintessential regulatory language conferring discretion on agency

decision-making.  *See, e.g., Sierra Club v. Babbitt,* 65 F.3d 1502, 1512 (9th Cir.

1995) (procedural requirements of NEPA are triggered by a discretionary

federal action); *Nevada v. United States,* 221 F. Supp.2d 1241 (D. Nev. 2002)

(stating that NEPA applies only to discretionary agency actions).

36.     Undisputed.

37.     Disputed to the extent that a Supplemental EIS was required.  An EIS is

subject to supplementation when "significant new circumstances or

information relevant to environmental concerns. . . bearing on the proposed

action or its impacts" arises.  40 C.F.R. § 1502.9(c)(1)(ii); *see also* La. Crawfish

Prods. Ass'n-West v. Rowan, 463 F.3d 352, 358 (5th Cir. 2006).  "[A]n agency

need not supplement an EIS every time new information comes to light after

the EIS is finalized."  *Marsh v. Ore. Natural Res. Council,* 490 U.S. 360, 373

(1983); *see also Coker v. Skidmore,* 941 F.2d 1306, 1310 (5th Cir. 1991).

Failure to prepare an SEIS when one was warranted can be an abuse of

discretion; but, the DFE expressly protects such decision-making.  See 28

U.S.C. § 2680(a) (immunity extends to "the exercise or performance or the

failure to exercise or perform a discretionary function . . . whether or not the

discretion involved be abused"); *see also In re Katrina Canal Breaches,* 647 F. Supp. 2d 644, 701 (E.D. La. 2009).

38.     Irrelevant for purposes of the discretionary function exception analysis. Disputed to the extent that no judgment or choice susceptible to policy analysis was exercised.  This is a negligent supervision case.  The interplay between the Corps and WGI is emblematic of the Fifth Circuit's unequivocal statement that "[s]upervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function."  *Guile v. United States,* 422 F.3d 221, 231 (5th Cir. 2005) (citing *Kirchmann v. United States,* 8 F.3d 1273, 1276-77 (8th Cir. 1993)).  The decisions as to the extent of supervising WGI, including the extent of any engineering analyses that the Corps elected to perform, involved an intention to place confidence in the expertise and competence of its contractor.  *See Kirchmann,* 8 F.3d at 1278 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 820 (1984)); *see also Duff v. United States,* 999 F.2d 1280, 1281 (8th Cir. 1993).  This interplay involved "certain calculated risks," *Kirchmann,* 8 F.3d at 1278 (quoting *Varig Airlines,* 467 U.S. at 820), driven by a policy "to obtain the best value for the American taxpayer," *Wood v. United States,* 290 F.3d 29, 39 (1st Cir. 2002).

39.     Undisputed.

40.     Disputed insofar as it implies that the excavation of the sewer lift station constituted a significant alteration of the physical condition of the foundation of the EBIA.

41.     Disputed insofar as it implies that NEPA mandated preparation of additional documents for the sewer lift station excavation.  An EIS is subject to supplementation when "significant new circumstances or information relevant to environmental concerns . . . bearing on the proposed action or its impacts" arises.  40 C.F.R. § 1502.9(c)(1)(ii); *see also La. Crawfish Prods. Ass'n-West v. Rowan,* 463 F.3d 352, 358 (5th Cir. 2006).  "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized"  *Marsh v. Ore. Natural Res. Council,* 490 U.S. 360, 373 (1983); *see also Coker v. Skidmore,* 941 F.2d 1306, 1310 (5th Cir. 1991).  Failure to prepare an SEIS when one was warranted can be an abuse of discretion, but the DFE expressly protects such decision-making.  *See* 28 U.S.C. § 2680(a)

42.     Undisputed.

43.     Disputed that the policy considerations for backfilling the excavation involved no policy considerations.  The document cited by Entergy was created by WGI, not the United States and therefore is not probative of the policies that the Corps may have considered.  As the Court has previously

found, the Corps engaged in a  thorough review of WGI's workplans.  *See In re*

*Katrina,* 2008 WL 5234369, at \*12, *rev'd on other grounds,* — F.3d — (5th Cir.

Sep. 14, 2010).  Further, there is evidence that the Corps did consider the

impact of some of WGI's deep excavations.  See USA Opening Brief 22 (fact

nos. 71, 72).  In any event, this fact is immaterial.  The discretionary-function

exception does not turn on whether policies were in fact considered but on

whether the decisions were "susceptible to policy analysis."  *Gaubert*, 499 U.S.

at 325.  Guillory's consideration of the potential community impact of other

excavations demonstrates that decisions concerning the backfilling of these

excavations are susceptible to policy analysis.

44.    Disputed to the extent that NEPA mandated preparation of additional

documents for the sewer lift station excavation.  An EIS is subject to

supplementation when "significant new circumstances or information

relevant to environmental concerns . . . bearing on the proposed action or its

impacts" arises.  40 C.F.R. § 1502.9(c)(1)(ii); *see also La. Crawfish Prods.*

*Ass'n-West v. Rowan,* 463 F.3d 352, 358 (5th Cir. 2006).  "[A]n agency need not

supplement an EIS every time new information comes to light after the EIS is

finalized."  *Marsh v. Ore. Natural Res. Council,* 490 U.S. 360, 373 (1983); *see also*

*Coker v. Skidmore,* 941 F.2d 1306, 1310 (5th Cir. 1991).  Failure to prepare an

SEIS when one was warranted can be an abuse of discretion, but the DFE expressly protects such decision-making. *See* 28 U.S.C. § 2680(a) (immunity extends to "the exercise or performance or the failure to exercise or perform a discretionary function . . . whether or not the discretion involved be abused); *see also In re Katrina Canal Breaches,* 647 F. Supp. 2d 644, 701 (E.D. La. 2009).

45.    Undisputed.

46.    Disputed.  The Court has already recognized that cofferdams do not deleteriously impact the surrounding soils and flood control structures. *See In re Katrina Canal Breaches,* 2008 WL 5234369, at *9 (noting that the proposed cofferdam systems do not allow soil movement to occur that would adversely affect a flood control structure).

47.    Disputed to the extent that the engineering manuals dictated a particular course of action, or whether they were even applicable to the challenged conduct.  The LRP was a construction project for a new lock, bypass channel, and extension of existing levees to the new lock.  Doc. No. 19988-4, at ¶¶ 18, 22, 32.  The remediation and excavations at the EBIA did not contemplate redesign or new construction of the floodwalls.  Each of these will be addressed in turn:

The manual titled "Engineering"and Design: Retaining and Flood Walls," EM 1110-2-2502, states its purpose is to provide "guidance for the safe design and economical construction of retaining and flood walls." Entergy Ex. 20, at 3 (manual attachment) (emphasis added). It does not apply to the challenged conduct.

The manual titled "Engineering Design: Seepage Analysis and Control for Dams," EM 1110-2-1901, states its purpose is to present "the fundamental design principles and guidance concerning seepage considerations for design of new dams and the evaluation of existing projects." Entergy Ex. 21, at 4 (manual attachment) (emphasis added). It is patently absurd to now identify the floodwalls at the EBIA as new or existing dams. Accordingly, this manual is inapplicable.

The manual titled "Engineering and Design: Design of Sheet Pile Walls," EM 1110-2-2504, states its purpose is to provide "information on foundation exploration and testing procedures, analysis techniques, allowable criteria, design procedures, and construction consideration for the selection, design, and installation of sheet pile walls." Entergy Ex. 22, at 3 (manual attachment). Not only is this a manual dealing with design and installation, but it also states that the "manual is intended to provide examples and procedures of what has

been proven successful" and does not act as the "last nor final word on the state of the art for this technology."  Id.  This manual does not apply to the challenged conduct.

The manual titled "Engineering and Design: Design and Construction of Levees," EM 1110-2-1913 , states its purpose is to "present basic principles used in the design and construction of earth levees."  Entergy Ex. 11, at 4 (manual attachment) (emphasis added).  Further, the "manual is intended as a guide for designing and constructing levees and not intended to replace the judgment of the design engineer on a particular project."  Id.  Thus, this manual is inapplicable to the challenged conduct and, assuming arguendo that it does apply, affords considerable discretion to the design engineer.

48.    Objection:  vague and ambiguous.  Irrelevant for purposes of the discretionary function analysis.  Undisputed to the extent that the Soil Remediation Area was the area fifteen feet west of the floodwall so that heavy machinery was not placed closer to the floodwall.

49.    Objection:  vague and ambiguous.  Irrelevant for purposes of the discretionary function exception analysis.  Disputed to the extent that engineering analyses of the proposed excavations were performed by the Corps, WGI, and WGI's subcontractors.  The existing bypass channel design

was analyzed in the Evaluation Report, and was determined to not affect the

stability of the floodwalls.  See Doc. No. 19988-4, at ¶ 24.  Lee Guillory, the

Corps's Contracting Officer Representative, had guidance on a "minimum

control line," which informed him as to what excavations could impact the

stability of the floodwall.  *Id.* at ¶ 25.  Dr. John Grieshaber, Geotechnical

Branch, Engineering Division, described the minimum control line thus:

> If the slope is a 1 on 3 slope, you just follow it underground as far
> down as – you know, you just continue on that 1 on 3 slope.  And
> you would say any excavations that does (sic) not violate that line
> will not impact the stability of the wall.

*Id.* at ¶ 26.  This general guidance on the stability of the flood

control structure vis-à-vis extending the slope of the levee was an

appropriate tool within Guillory's discretion.  *Id.* at ¶ 27.  Braced

excavation, or cofferdam, designs were implemented for this

project at the Saucer and Boland Marine sites.

The challenged excavations at the Saucer and Boland Marine sites were

analyzed for their effects on the surrounding soils.  The plan for the excavation

of the sewer lift station at the Saucer Marine site was a cofferdam, designed by

a licensed professional engineer in Louisiana.  See Doc. No. 19988-4, at

¶¶ 78-79.  The Corps reviewed, critiqued and commented on the proposed

plan several times before approval, concluding that the proposed braced

excavation would not affect the floodwall because of its distance from the

floodwall and because the bracing had been designed by a licensed

professional engineer, with installation by experienced contractors under

Corps supervision.  *Id.* at ¶¶ 80-81.

The same was true for the Boland Marine excavation of the "wedding

cake" structure.  WGI submitted a proposal for a cofferdam in that area, and

the Corps subsequently approved the plan.  *Id.* at ¶ 86.  Again, the Corps was

not concerned that the cofferdam would affect the floodwall because

experienced engineers and contractors were carrying out the work, the site

was further away than the Saucer Marine excavations, and the cofferdam was

within the footprint of the bypass channel, which the Corps had already

analyzed for its effect on the neighboring floodwalls.  *Id.* at ¶¶ 88-90.

The Court has already found that the effects of the excavations on the

floodwalls "were contemplated by the Corps—ergo the use of cofferdams . . . ."

*In re Katrina Canal Breaches,* 2008 WL 5234369, at *20.  Moreover, the fact

that "Corps did do an independent examination of the McDonough site where

a cofferdam designed by a Louisiana civil engineer was not used demonstrates

this fact." *Id.* The Corps, working with WGI, took an individualized review of each excavation to determine its effect on the floodwalls.

50.    Objection; vague and ambiguous. Disputed to insofar as it implies that engineering manuals dictated a particular course of action, or that they were applicable to the challenged conduct. On its face, the statement plaintiff cites from this engineering manual lacks the mandatory and specific language necessary to defeat prong one of the discretionary function exception.

51.    Irrelevant for purposes of the discretionary function exception analysis. Undisputed to the extent that EM 1110-2-5027 states what is quoted in plaintiff's statement of facts.

52.    Irrelevant for purposes of the discretionary function exception analysis. Undisputed to the extent that EM 1110-2-5027 states what is quoted in plaintiff's statement of facts.

53.    Objection; vague and ambiguous. Disputed insofar as it implies that the Corps disregarded engineering "technical consideration[s]." The Court has already found that the effects of the excavations on the floodwalls "were contemplated by the Corps – ergo the use of cofferdams , , , ," *In re Katrina Canal Breaches,* 2008 WL 5234369, at *20. Moreover, the fact that "Corps did do an independent examination of the McDonough site where a cofferdam

designed by a Louisiana civil engineer was not used demonstrates this fact."

*Id.*  The Corps, working with WGI, took an individualized review of each

excavation to determine its effect on the floodwalls.

54.    Objection; vague and ambiguous.

55.    Undisputed to the extent that as the Corps's Contracting Officer

Representative, Lee Guillory was required to exercise judgment and choice in

overseeing WGI's performance.  *See* 48 C.F.R. § 1.602-2 (stating that

contracting officers should be allowed wide latitude to exercise business

judgment); *see also id.* at § 1.602-2(c) (stating that contracting officers shall

request and consider engineering advice as appropriate).  Guillory's tasks

were couched in general terms, *see In re Katrina Canal Breaches,* 2008 WL

5234369, at *3-*4, that included, inter alia, verifying WGI performed the

technical requirements of the project, conduct technical inspections of the

work site, and correct any observed deficiencies.

56.    Undisputed to the extent that as the Corps's Contracting Officer

Representative, Lee Guillory was required to exercise judgment and choice in

overseeing WGI's performance.  See 48 C.F.R. § 1.602-2 (stating that

contracting officers should be allowed wide latitude to exercise business

judgment"); see also id. at § 1.602-2(c) (stating that contracting officers shall

request and consider engineering advice as appropriate). Guillory's tasks were couched in general terms, *see In re Katrina Canal Breaches,* 2008 WL 5234369, at \*3-\*4, that included, *inter alia,* verifying WGI performed the technical requirements of the project, conduct technical inspections of the work site, and correct any observed deficiencies.

57.   Irrelevant for purposes of the discretionary function exception, because the situs of the engineering analyses involves conduct that involves a "matter of choice for the acting employee" and is "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 322, 325 (1991) (internal citations omitted). Undisputed to the extent that the Engineering Division analyzed the borrow pit vis-à-vis its effects on the structural stability of the levees. The Court has already found that the effects of the excavations on the floodwalls "were contemplated by the Corps—ergo the use of cofferdams . . . ." *In re Katrina Canal Breaches*, 2008 WL 5234369, at \*20. Moreover, the fact that "Corps did do an independent examination of the McDonough site where a cofferdam designed by a Louisiana civil engineer was not used demonstrates this fact." *Id.* The Corps, working with WGI, took an individualized review of each excavation to determine its effect on the floodwalls.

58.    Irrelevant for purposes of the discretionary function exception, because decisions with respect to whether the Engineering Division should conduct a particular evaluation is discretionary and susceptible to policy analysis.  The Corps's Contracting Officer Representative, Lee Guillory was required to exercise judgment and choice in overseeing WGI's performance.  *See* 48 C.F.R. § 1.602-2 (stating that contracting officers should be allowed wide latitude to exercise business judgment); *see also id.* at § 1.602-2(c) (stating that contracting officers shall request and consider engineering advice as appropriate).  Guillory's tasks were couched in general terms, *see In re Katrina Canal Breaches*, 2008 WL 5234369, at *3-*4, that included, *inter alia,* verifying WGI performed the technical requirements of the project, conduct technical inspections of the work site, and correct any observed deficiencies.  The Court has already found that the effects of the excavations on the floodwalls "were contemplated by the Corps—ergo the use of cofferdams . . . ."  *In re Katrina Canal Breaches,* 2008 WL 5234369, at *20.  Moreover, the fact that "Corps did do an independent examination of the McDonough site where a cofferdam designed by a Louisiana civil engineer was not used demonstrates this fact."  *Id.*  The Corps, working with WGI, took an individualized review of each excavation to determine its effect on the floodwalls.

59.     Undisputed to the extent that engineering analyses of the cofferdams
were performed.  The existing bypass channel design was analyzed in the
Evaluation Report, and was determined to not affect the stability of the
floodwalls.  *See* Doc. No. 19988-4, at ¶ 24.  Lee Guillory, the Corps's
Contracting Officer Representative, had guidance on a "minimum control line,"
which informed him as to what excavations could impact the stability of the
floodwall.  *Id.* at ¶ 25.  Dr. John Grieshaber, Geotechnical Branch, Engineering
Division, described the minimum control line thus:

> If the slope is a 1 on 3 slope, you just follow it underground as far
> down as – you know, you just continue on that 1 on 3 slope.  And
> you would say any excavations that does (sic) not violate that line
> will not impact the stability of the wall.

*Id.* at ¶ 26.  This general guidance on the stability of the flood control structure
vis-à-vis extending the slope of the levee was an appropriate tool within
Guillory's discretion.  *Id.* at ¶ 27.  Braced excavation, or cofferdam, designs
were implemented for this project at the Saucer and Boland Marine sites.

The challenged excavations at the Saucer and Boland Marine sites were
analyzed for their effects on the surrounding soils.  The plan for the excavation
of the sewer lift station at the Saucer Marine site was a cofferdam, designed by
a licensed professional engineer in Louisiana.  *See* Doc. No. 19988-4, at

¶¶ 78-79.  The Corps reviewed, critiqued and commented on the proposed plan several times before approval, concluding that the proposed braced excavation would not affect the floodwall because of its distance from the floodwall and because the bracing had been designed by a licensed professional engineer, with installation by experienced contractors under Corps supervision.  *Id.* at ¶¶ 80-81.  The same was true for the Boland Marine excavation of the "wedding cake" structure.  WGI submitted a proposal for a cofferdam in that area, and the Corps subsequently approved the plan.  Id. at ¶ 86.  Again, the Corps was not concerned that the cofferdam would affect the floodwall because experienced engineers and contractors were carrying out the work, the site was further away than the Saucer Marine excavations, and the cofferdam was within the footprint of the bypass channel, which the Corps had already analyzed for its effect on the neighboring floodwalls.  *Id.* at ¶¶ 88-90.

The Court has already found that the effects of the excavations on the floodwalls "were contemplated by the Corps—ergo the use of cofferdams . . . ." *In re Katrina Canal Breaches,* 2008 WL 5234369, at *20.  Moreover, the fact that "Corps did do an independent examination of the McDonough site where a cofferdam designed by a Louisiana civil engineer was not used demonstrates

this fact." *Id.*  The Corps, working with WGI, took an individualized review of each excavation to determine its effect on the floodwalls.

60.     Undisputed.  The challenged excavations at the Saucer and Boland Marine sites were analyzed for their effects on the surrounding soils.  The plan for the excavation of the sewer lift station at the Saucer Marine site was a cofferdam, designed by a licensed professional engineer in Louisiana.  *See* Doc. No. 19988-4, at ¶¶ 78-79.  The Corps reviewed, critiqued and commented on the proposed plan several times before approval, concluding that the proposed braced excavation would not affect the floodwall because of its distance from the floodwall and because the bracing had been designed by a licensed professional engineer, with installation by experienced contractors under Corps supervision.  *Id.* at ¶¶ 80-81.  The same was true for the Boland Marine excavation of the "wedding cake" structure.  WGI submitted a proposal for a cofferdam in that area, and the Corps subsequently approved the plan. *Id.* at ¶ 86.  Again, the Corps was not concerned that the cofferdam would affect the floodwall because experienced engineers and contractors were carrying out the work, the site was further away than the Saucer Marine excavations, and the cofferdam was within the footprint of the bypass channel,

which the Corps had already analyzed for its effect on the neighboring

floodwalls. *Id.* at ¶¶ 88-90.

61.     Objection; vague and ambiguous.  Irrelevant for purposes of the

discretionary function exception.  Undisputed to the extent that the Corps's

quality assurance ("QA") inspectors ensured that backfill was appropriate and

put in under the appropriate conditions.

62.     Objection; vague, ambiguous and argumentative.  Disputed insofar as it

implies that the fill material for design of the levees at the IHNC extended to

the East Bank Industrial Area ("EBIA").

63.     Objection; vague, ambiguous and argumentative.  Objection to the

characterization of backfill material being "any material in the vicinity."

Disputed to the extent that removal of the cofferdams lacked geotechnical or

policy considerations.  The existing bypass channel design was analyzed in the

Evaluation Report, and was determined to not affect the stability of the

floodwalls. *See* Doc. No. 19988-4, at ¶ 24.  Lee Guillory, the Corps's

Contracting Officer Representative, had guidance on a "minimum control line,"

which informed him as to what excavations could impact the stability of the

floodwall.  Id. at ¶ 25.  Dr. John Grieshaber, Geotechnical Branch, Engineering

Division, described the minimum control line thus:

> If the slope is a 1 on 3 slope, you just follow it underground as far
> down as – you know, you just continue on that 1 on 3 slope.  And
> you would say any excavations that does (sic) not violate that line
> will not impact the stability of the wall.

*Id.* at ¶ 26.  This general guidance on the stability of the flood control structure

vis-à-vis extending the slope of the levee was an appropriate tool within

Guillory's discretion.  *Id.* at ¶ 27.  Braced excavation, or cofferdam, designs

were implemented for this project at the Saucer and Boland Marine sites.

The challenged excavations at the Saucer and Boland Marine sites were

analyzed for their effects on the surrounding soils.  The plan for the excavation

of the sewer lift station at the Saucer Marine site was a cofferdam, designed by

a licensed professional engineer in Louisiana.  *See* Doc. No. 19988-4, at ¶¶

78-79.  The Corps reviewed, critiqued and commented on the proposed plan

several times before approval, concluding that the proposed braced

excavation would not affect the floodwall because of its distance from the

floodwall and because the bracing had been designed by a licensed

professional engineer, with installation by experienced contractors under

Corps supervision.  *Id.* at ¶¶ 80-81.

The same was true for the Boland Marine excavation of the "wedding

cake" structure.  WGI submitted a proposal for a cofferdam in that area, and

the Corps subsequently approved the plan. *Id.* at ¶ 86.  Again, the Corps was

not concerned that the cofferdam would affect the floodwall because

experienced engineers and contractors were carrying out the work, the site

was further away than the Saucer Marine excavations, and the cofferdam was

within the footprint of the bypass channel, which the Corps had already

analyzed for its effect on the neighboring floodwalls. *Id.* at ¶¶ 88-90.

The Court has already found that the effects of the excavations on the

floodwalls "were contemplated by the Corp—ergo the use of cofferdams . . . ."

*In re Katrina Canal Breaches*, 2008 WL 5234369, at *20.  Moreover, the fact

that "Corps did do an independent examination of the McDonough site where

a cofferdam designed by a Louisiana civil engineer was not used demonstrates

this fact." *Id.*  The Corps, working with WGI, took an individualized review of

each excavation to determine its effect on the floodwalls.

64.    Objection; vague and ambiguous with respect to Hurricane Katrina's

storm surge hydraulically connecting to the IHNC; otherwise, undisputed.

65.    Objection; vague and ambiguous with respect to the proximity of the

excavations to the north and south breaches; otherwise, undisputed.

66.    Objection; vague, ambiguous and argumentative.  Disputed insofar as it

implies that the Corps's negligence caused plaintiffs' damages.

67.    Undisputed, but irrelevant for purposes of the discretionary function exception.

68.    Undisputed, but irrelevant for purposes of the discretionary function exception.

69.    Undisputed, but irrelevant for purposes of the discretionary function exception.

70.    Undisputed, but irrelevant for purposes of the discretionary function exception.

Respectfully Submitted,

TONY WEST
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

 s/ Robin Doyle Smith
ROBIN DOYLE SMITH
Senior Trial Counsel, Torts Branch
DAN BAEZA
Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
Benjamin Franklin Station,
P.O. Box 888
Washington, D.C.  20044
(202) 616-4400/616-5200 (fax)
robin.doyle.smith@usdoj.gov
Attorneys for the United States

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served upon all counsel of

record by ECF on September 23, 2010.

/s  Robin Doyle Smith
ROBIN DOYLE SMITH