UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NUMBER: 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO: *Entergy*<br>(No. 10-0077) | |

**PLAINTIFFS' REPLY TO DEFENDANT UNITED STATES'
OMNIBUS REPLY AND OPPOSITION**

**Plaintiffs, Entergy New Orleans, Inc. and Entergy Louisiana, L.L.C. (the "Entergy Companies") and Hartford Steam Boiler Inspection and Insurance Company ("Hartford") (collectively "Entergy Plaintiffs")** jointly submit this Reply to Defendant United States' Omnibus Reply and Opposition (Doc. 20061).

**I.   § 702(c) Immunity Does Not Apply to the Corps' Negligent Site Preparation for the IHNC Lock Expansion Project and Connection Channels Project.**

In the course of the *In re Katrina* litigation, this Court has examined two Army Corps of Engineers' projects to determine whether Defendant is entitled to § 702(c) immunity for the Corps' negligence. In one examination, *Levee*, this Court found immunity where the outfall canals had been specifically and legally identified as part of a flood control project.[1] In the other, *Robinson*, this Court refused to find immunity where there were "two projects, with two

---

[1]   *In re Katrina Canal Breaches Consolidated Litigation*, 533 F. Supp. 2d 615, 639 (E.D. La 2008) ("*Levee Ruling*").

different funding methods and two different concerns driving each"—one of which was a flood project and one of which was a navigational project.[2]

The project that is currently before the Court—the IHNC Lock Expansion Project—falls squarely into the latter category. First, Congress authorized the design and construction of the LPV and MRL, both flood-control projects.[3] Well after the levees and floodwalls along the IHNC were constructed, the site for the new navigational lock on the IHNC was selected, with the express purpose of improving *navigation* on the IHNC.[4] It was the Corps' negligent site preparation for the new lock navigation project that caused the undermining of the LPV and the subsequent flooding of the Ninth Ward.

Both the IHNC and the IHNC Lock Expansion Project were authorized as navigation projects. They were not authorized or funded by flood control legislation, did not have flood control as their purpose, and have never been redefined as part of the LPV or "wrapped into" the LPV.[5] Instead, like the MRGO, the IHNC Lock Expansion Project was designed to eliminate delays in navigation.[6] The LPV, by contrast, was enacted and funded as a "project for hurricane-flood protection."[7] Because the IHNC new lock project and the LPV were "two projects, with two different funding methods and two different concerns driving each," § 702(c) immunity does not apply to the Corps' negligent site preparation in connection with the IHNC lock expansion.[8]

---

[2] *In re Katrina Canal Breaches Consolidated Litigation*, 577 F. Supp. 2d 802, 825 (E.D. La 2008) ("*Robinson Ruling*").
[3] Entergy Plaintiffs' Statement of Undisputed Facts in Support of Plaintiffs' Motion for Partial Summary Judgment on Discretionary Function Exception and in Opposition to United States' Motion to Dismiss or Alternative Motion for Summary Judgment and Memorandum in Support of Motion for Partial Summary Judgment on Discretionary Function Exception, ("PSUF") (Doc. Number 20033-2), at ¶¶ 2, 6.
[4] PSUF ¶ 8.
[5] PSUF ¶ 10.
[6] PSUF ¶ 4, 9.
[7] *Levee Ruling,* 533 F. Supp. 2d at 637.
[8] *Robinson Ruling,* 577 F. Supp. 2d at 825.

### A. This Court has Looked to Federal Law to Determine Whether a Project is a Flood Control Project or a Navigational Project.

Defendant does not dispute that the congressional authorization for the IHNC and the lock project was not flood control legislation. Instead, Defendant dismisses federal law as insignificant and characterizes as "formalism" the Entergy Plaintiffs' examination of the legislation authorizing the construction of the IHNC and its new lock. Yet, such formal acts of Congress are precisely what this Court has found dispositive in making § 702(c) determinations in both *Levee* and *Robinson*.

In *Levee*, this Court examined in depth the form and purpose of the legislation that defined the outfall canals as part of the flood protection for the city, noting that Congress "directed the Corps to 'treat the outfall canals as part of the overall hurricane protection project.'"[9] This Court also took "judicial notice of the fact that Congress enacted the LPV in 1965 as a 'project for hurricane-flood protection on Lake Ponchartrain, Louisiana.'"[10] Through Congressional authorization, this Court found that the 17th Street Canal was "incorporated into LPV, which is undoubtedly a flood control project."[11] Thus, the fact that the levees/floodwalls were part of the LPV created immunity for the Corps for whatever defalcations it might have made in permitting the dredging of the 17th Street Canal.[12]

By contrast, this Court found in *Robinson* that MRGO and the LPV were two different projects with two different funding methods and two different concerns.[13] Therefore, the MRGO was not a flood project and § 702(c) did not prevent recovery for the Corps' negligent acts that

---

[9] *Levee Ruling,* 533 F. Supp. 2d at 637.
[10] *Robinson Opinion,* 577 F. Supp. 2d at 820 – 821 (discussing *Peterson v. U.S.,* 367 F.2d 271 (9th Cir.1966), *Parks v. U.S.*, 370 F.2d 92 (2nd Cir.1966) and *Valley Castle Co. v. U.S.*, 258 F. Supp. 12 (D. Hawaii 1966) all of which examined—in the context of making a 702(c) determination—the Acts of Congress authorizing the expenditure of funds for the respective projects in question).
[11] *Levee Ruling,* 533 F. Supp. 2d at 638-39.
[12] *Id.* at 638-39.
[13] *Robinson Ruling,* 577 F. Supp. 2d at 825.

occurred outside of the flood control project even though those acts implicated a flood control project.[14] Defendant's outright dismissal of federal authorizing law as "formalism" is contrary to this Court's past analysis in its § 702(c) determinations.

### B. There is No 702(c) Immunity for Negligent Acts that Occur Outside of a Flood Control Project Simply Because the Damage Impacts a Flood Control Project.

Having dismissed the authorizing federal laws as "formalism," Defendant argues that immunity should attach because the alleged damage is from floodwaters that a flood control project failed to control.

In support of its flawed position, Defendant cites the Ninth Circuit's decision in *Central Green*, and argues "just as 702(c) provided immunity for damage caused by floodwaters escaping from the Madera Canal…so too is immunity provided for damage caused by the floodwaters that escaped from the IHNC during Hurricane Katrina." However, as this Court has discussed in detail, the Supreme Court **reversed** the Ninth Circuit and rejected the Ninth Circuit's conclusion that immunity attached to the floodwaters emanating from the Madera Canal even though the canal served no flood-control purpose. The Supreme Court's opinion, as interpreted by this Court, stands for the proposition that § 702(c) immunity is available only "where damage is caused by flood waters *emanating from a flood control project*."[15] The IHNC lock project is decidedly not such a project.

Moreover, this Court has repeatedly explained that *Central Green* requires an examination into the "cause of the damage," rather than basing a decision on the "mere fact that a flood control project was involved."[16] And under settled Fifth Circuit precedent, §702(c) does not bar an action against the United States where the flooding is unconnected to a flood control

---

[14] *Id.* at 821.
[15] *Levee Ruling,* 533 F. Supp. 2d at 634.
[16] *Robinson Ruling, 577* F. Supp. 2d at 824.

project.[17] Here, as in *Robinson*, the cause of the damage is "not for any negligence that occurred in the construction or maintenance of the flood control project."[18] Rather, the Corps' excavation decisions were extrinsic acts made in the context of the new lock project, not within the context of the LPV.[19] While Defendant argues that the negligent action taken by the Corps somehow "concerned" the LPV, this vague assertion is unsupported.

In *Robinson*, this Court distinguished the relationship between the outfall canals and the LPV from the relationship between MRGO and the LPV. This Court noted:

> However, the facts at issue with respect to the outfall canals made clear that Congress had acquiesced and had funded a program designed to protect New Orleans from storm surge using the "High Level" plan as opposed to the "Barrier Plan" and that the design used failed miserably. **The failure of the outfall canals were at the center of the discussion.** Here, however, it is not so clear . . . . [Plaintiffs'] maintain that even if the flood control project had been built perfectly to specifications, that because of the surge created by the mistakes made with respect to MRGO, these damages would have happened.[20]

Similarly, here, even if the LPV levees were built perfectly, it was the subsequent, extrinsic and independent action by the Corps—of the negligent site preparation adjacent to the LPV levees—that caused the levees to fail. This Court has concluded that §702(c) does not prevent recovery for the defalcations that occur outside of the flood control project simply because the result of those defalcations impacts a flood control project.[21]

The undisputed facts are that the LPV levees along the IHNC were built; years later, the independent act of excavating the EBIA for navigational purposes began. The Corps' negligent

---

[17] *Graci v. U.S.*, 456 F.2d 20 (5th Cir. 1971).
[18] *Robinson Ruling,* 577 F. Supp. 2d at 825.
[19] *Id.* at 825.
[20] *Robinson Ruling,* 577 F. Supp. 2d at 824.
[21] *Robinson Ruling,* 577 F. Supp. 2d at 821-22.

site preparation for this excavation work was the "Navy vessel" that collided with the LPV and caused the undermining of the levees and the subsequent destruction of the Ninth Ward.

### C. Defendant Has Failed to Show any Nexus Between the IHNC New Lock Project and the LPV.

Defendant also argues that § 702(c) immunity applies to extrinsic conduct that has a nexus to a flood control project and as such, § 702(c) should immunize Defendant from the Corps' negligent site preparation of the EBIA as part of the new lock project. The flaw in the government's argument is that it has not demonstrated what nexus the navigational new lock project had to the LPV flood control project.

While this Court reluctantly granted immunity in *Levee*, the Court remarked:

> [H]ad these outfall canals not been **wrapped into the LPV** and had the levees failed solely, or in part, as a result of the Corps' permitting the scouring of the east bank of the 17th Street Canal levee, § 702(c), in all likelihood, would not have provided the United States refuge.[22]

The nexus existed because the outfall canals were legally "wrapped into the LPV" and were a "part of the LPV."[23] Here, there is no such direct congressional designation of the new lock project as a "flood control project." Contrary to the government's conclusory and unsupported representations, the IHNC was never "wrapped into the LPV."[24] The distinguishing fact with the outfall canals was that they were legally redefined as part of the LPV. This simply never occurred with the IHNC.[25]

---

[22] *Levee Ruling, 533* F. Supp. 2d at 638-39 (emphasis added).
[23] *Robinson Ruling,* 577 F. Supp. 2d at 821.
[24] As discussed in more detail in Plaintiffs' opening brief, while the Lock Expansion Project contemplated the eventual "tying in" of the Mississippi River Levees to the newly created shape of the IHNC expanded Lock, the Corps has admitted that this did not render the Lock project a "flood control project." Moreover, the only activity that had been funded at the time of Hurricane Katrina was the (1) assessment of the existing conditions of the IHNC and (2) site preparation of the EBIA. PSUF at ¶ 11. The construction of new levees and floodwalls tying in to the new expanded lock was never funded or accomplished. PSUF at ¶ 12.
[25] Plaintiffs dispute that the citations in government's footnote 15 provide support for the assertion that "the Court has already taken note of the IHNC's incorporation into the LPV." Noting on pages 638-39 of the Court's

### D. The Policy Behind § 702(c) Immunity is Not Supported by a Grant of Immunity with Respect to the IHNC New Lock Project.

The recognized purpose of § 702(c) immunity:

> was to place a limit on the amount of money that Congress would spend in connection with flood control programs . . . . The immunity from liability for floodwater damage arising in connection with flood control works was the condition upon which the government decided to enter into the area of nationwide flood control programs.[26]

Certainly, the government did not contemplate immunity in its planning of the new lock project—as the lock system was designed and built solely to enhance navigational interests and not connected to the expenditure of funds to construct the flood control project. Thus, Defendant should not be afforded immunity for the Corps' negligence simply because the failure of the navigational project caused damage to the city *via* a flood control project. Indeed, this Court has already noted that such a result would lead to absurd consequences.[27]

## II. The Corps' Failure to Comply With NEPA Constitutes a Violation of a Mandate and Precludes the Application of the DFE.

The Defendant's Reply and Opposition has failed to properly put forth facts and law sufficient to challenge the Entergy Plaintiffs' argument that the Corps failed to comply with the mandatory obligations set out under National Environmental Policy Act (NEPA); and thus, immunity cannot attach.[28] The Entergy Plaintiffs support their argument with 30 undisputed facts[29] that Defendant has failed to rebut.[30]

---

*LEVEE* decision provides this support. In addition, note 4 on page 620 discusses the *original* barrier plan, which was considered, and rejected, by the Corps and Congress.
[26] *Robinson Ruling,* 577 F. Supp. 2d at 820 (quoting *Graci v. U.S.*, 456 F. 2d 20, 25-26 (5th Cir. 1971) (internal citations omitted).
[27] *Robinson Ruling,* 577 F. Supp. 2d at 825.
[28] *See* Plaintiffs Opposition to United States' Motion to Dismiss or Alternative Motion for Summary Judgment and Plaintiffs Memorandum in Support of Motion for Partial Summary Judgment on Discretionary Function Exception (Doc. 20033-1) ("Entergy's Opposition and Motion for Partial Summary Judgment"), at 9-18.
[29] PSUF at ¶¶ 10-12, 15, 18-24, 27, 29, 31- 45, 55.

Defendant concedes that "NEPA imposes a process that the Corps must follow before it acts,"[31] but remains silent as to whether this process was observed with regard to the conduct challenged by the Entergy Plaintiffs. In short, nothing in Defendant's Reply and Opposition masks the Corps' failure to comply with the Corps mandatory obligations under NEPA.

Tellingly, Defendant does not dispute that the potential hazards to the floodwalls near the IHNC were omitted from in its 1997 EIS; it does not dispute that no EA or FONSI was ever created to later highlight these known hazards; it does not dispute that no EIS, EA, FONSI, or SEIS regarding the work done under Task Order 26 of the TERC was created; and significantly, it does not dispute that no EIS, EA, FONSI, or SEIS was submitted when the work done pursuant to the TERC underwent drastic changes that posed a potential threat to the nearby floodwalls. Simply put, the Corps does not dispute that it failed to warn Congress via **any reporting mechanism** of the potential threat posed to the floodwalls and neighboring people and property by its site work— in clear violation of NEPA.

### A. NEPA is a Mandate that Defeats Prong One of the DFE.

Having failed to comply with NEPA's mandates, Defendant now attempts to undermine the ability of the NEPA statute itself to overcome the DFE. Defendant argues that because there are several ways to comply with NEPA, and because the Corps had discretion in deciding which method to choose, the DFE can still apply.[32] This argument, however, ignores the fact that while a federal agency like the Corps may have some liberty to decide **how** to comply with NEPA, it cannot decide **if** it will comply with NEPA. In other words, while there are several ways to

---

[30]   *See* Defendant United States' Response and Objections to Entergy's Statement of Undisputed Facts (Doc. 20033-2) at ¶¶, 11, 12, 15, 18-24, 27, 29, 31-45, 55.
[31]   *See* Defendant United States' Omnibus Reply In Support of Its Motion To Dismiss or, In the Alternative, for Summary Judgment and Opposition to Entergy's Motion for Partial Summary Judgment (Doc. 20061) ("Defendant's Reply and Opposition") at 16.
[32]   *Id.*

comply with NEPA's mandates—*i.e.* preparing an EIS, EA and FONSI, and/or an SEIS—prong one of the DFE cannot be satisfied where a defendant simply fails to utilize any of these available mechanisms.[33] Defendant does not, and cannot, cite any authority to the contrary. The Corps did not have discretion to simply ignore NEPA's mandates, as it did. The failure to comply with NEPA constitutes a clear violation of a mandate and precludes the application of the DFE in this case.[34]

Defendant similarly resurrects its failed argument that NEPA is merely procedural statute and cannot "prohibit the undertaking of federal projects [that are] patently destructive of the environment."[35] As this Court has already held, however, the failure to follow NEPA's procedural dictates flatly defeats the Government's invocation of the DFE.[36] In *Robinson*, this Court adopted the holding in *Adams v. United States*, which concluded that the "failure to comply with NEPA meant that the agency had no discretion and could not proceed until it complied with NEPA."[37] Thus, regardless of the outcome of any NEPA reporting on the authority to proceed with a project,[38] settled precedent and the prior ruling of this Court reveal that the procedural requirements of NEPA were still mandatory. Moreover, the Entergy Plaintiffs' NEPA argument does not, as Defendant suggests, rest on a presumption of a specific outcome. Rather, the Entergy Plaintiffs argue that the Corps' failure to conduct the analysis— whatever the outcome—precludes the application of the DFE. The Corps violated a mandate in this case, even if that mandate was procedural in nature.

---

[33]   *In re Katrina Canal Breaches Consolidated Litigation*, 647 F. Supp. 2d 644, 732 (E.D. La. 2009) ("*Robinson Opinion*") (holding that "a mandate does apply because of the Corps' failure to comply with NEPA and therefore the Corps cannot avail itself of the discretionary function exception").
[34]   *Robinson Opinion*, 647 F. Supp. 2d at 717 (holding that the failure to comply with NEPA constitutes a clear violation of a mandate that precludes that application of the DFE).
[35]   *See* Defendant's Reply and Opposition, at 17 (citing *Gaubert v. U.S.*, 499 U.S. 315, 322-23).
[36]   *Robinson Opinion*, 647 F. Supp. at 717 (E.D. La. 2009)(citing *Adams v.United States*, 2006 WL 3314571 (D. Idaho Nov. 14, 2006) (Winmill, J.).
[37]   *Adams,* 2006 WL 3314571, at 1-2.
[38]   *See* Defendant's Reply and Opposition, at 17.

NEPA procedures are designed "to inform decision makers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment."[39] When a federal agency like the Corps fails to comply with NEPA's mandates, the decision makers and the public remain uninformed and powerless to prevent activity by a federal agency that could, as here, destroy life and property. This Court has already acknowledged that the omission, via NEPA's reporting mechanisms, of the adverse consequences of an agency's proposed conduct is causally connected to that outcome when the omitted harm is suffered.[40] Here, the harm suffered is directly connected the Corps' failure to comply with NEPA.

It is well settled and undisputed that the Corps is obligated under NEPA to produce an EIS where a major federal action significantly affects the human environment and is under a continuous obligation to update its environmental evaluation in response to substantial changes to the proposed action or significant new circumstances.[41] In this case, **the Corps' excavation plan grew from a simple 3 foot skimming of the top soil to the removal of a minimum of 8 solid structures at the Boland site to depths of -25 feet, plus an additional solid structure at Saucer measuring nearly 70 feet wide, 80 feet long and approximately 20 feet deep, all in the proximity of a floodwall.**[42]

The Corps' failed to illustrate any of these actions in any environmental reporting mechanism. Indeed, the Corps neglected to highlight these risks despite its purported knowledge that site was "slated for excavation to a far greater extent to create a deep-draft shipping

---

[39] *Robinson Opinion*, 647 F. Supp. 2d at 717 (citing *Calvert Cliffs' Coordinating committee, Inc. v. Atomic Energy Comm.*, 449 F.2d 1109 (D.C. Cir. 1971): 40 C.F.R. § 1502.1).
[40] *Robinson Opinion*, 647 F. Supp. 2d at 730-31.
[41] *Robinson Opinion*, 647 F. Supp. 2d at 723.
[42] *See* Entergy's Opposition and Motion for Partial Summary Judgment, at 16.

channel."[43] As discussed more fully in the Entergy Plaintiffs' Opposition and Motion for Partial Summary Judgment, the Corps was obligated to assess the dangers posed to the floodwalls in an EIS, and was obligated either to supplement that EIS or produce a new EIS when the work done pursuant to Task Order 26 of the TERC substantially changed.[44] The Corps utterly failed in this regard, especially in light of the fact that Defendant concedes that the Corps had prior knowledge of the potential danger to the floodwalls posed by excavations.[45] Had the Corps adequately reported under NEPA, the effect on the floodwalls and the safety of thousands of people could have been considered as along with reasonable alternatives to the proposed actions.

### B.  The Entergy Plaintiffs Do Not Seek Relief under the APA.

Defendant incorrectly cites *Noe v. Metro. Atlanta Rapid Transit Auth*. for its argument that NEPA cannot "serve as the basis for defeating the discretionary function exception."[46] *Noe*, however, does not stand for any such proposition. The Fifth Circuit in *Noe* held that NEPA does not provide a private right of action to private plaintiffs seeking injunctive relief as well as money damages.[47] The decision does not implicate the DFE or the FTCA and Defendant's characterization of *Noe* should be rejected by this Court. The Entergy Plaintiffs do not seek to recover under NEPA. Rather, they have filed a claim under the FTCA and argue that NEPA constitutes a mandatory duty that was ignored by the Corps precluding the application of the DFE. This Court has already held that this "is not an improper use of NEPA."[48]

Defendant yet again misperceives the Entergy Plaintiffs' application of NEPA in this case when it argues that NEPA does not apply because the Entergy Plaintiffs failed to comply with

---

[43] *See* Defendant's Reply and Opposition, at 19.
[44] *See* Entergy's Opposition and Motion for Partial Summary Judgment, at 10-16.
[45] *See* Defendant United States' Memorandum of Law in Support of Motion to Dismiss, or, in the Alternative, for Summary Judgment. (Doc. 19993). ("U.S. Motion to Dismiss") at 21-22, 24-27.
[46] Defendant's Reply and Opposition, at 20 (citing *Noe v. Metro. Atlanta Rapid Transit Auth*., 644 F.2d 434 (5th Cir. 1981)).
[47] *Noe*, 644 F.2d at 436, 439.
[48] *Robinson Opinion*, 647 F. Supp. at 717 (E.D. La. 2009)(citing *Adams,* 2006 WL 3314571, at 1-2).

11

the Administrative Procedures Act ("APA"). As this Court has noted, "the posture is not one where the Court is reviewing the appropriateness of the Corps' EIS, EAS and FONSIs under the APA."[49] Instead, the Court must "determine whether the actions or non-actions of the Corps were of a nature such that the first test in the DFE inquiry precludes its application—that is whether NEPA and the regulations cited above prescribes a course of action for the Corps such that it had no choice but to produce and EIS or SEIS with respect to the number of individual actions it took."[50] Accordingly, Defendant's argument that the Entergy Plaintiffs should have exhausted administrative remedies under the APA again misperceives the use of NEPA in this case and should accordingly be rejected.

### III. Summary Judgment is Appropriate Where Defendant Has Failed to Oppose The Entergy Plaintiffs' Motion.

The Supreme Court held in *Lujan v. National Wildlife Federation* as follows:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [*Celotex*], at 322, 106 S.Ct., at 2552. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." [*Celotex*], at 323, 106 S.Ct., at 2552.[51]

As has been demonstrated, the Corps has not met the mandates necessary to claim immunity under the prong one analysis of its obligations under NEPA. Additionally, The Entergy Plaintiffs' have carried their burden under Rule 56(c) as to prong two of the DFE. The Entergy Plaintiffs' have demonstrated through admissible evidence that the Corps' improper actions and failures to act were not based on considerations of public policy and therefore prong

---

[49] *In re Katrina, Order and Reasons,* 05-cv-04182 at 32. (Doc. 18212) (E.D. La. 2009).
[50] *Id*.
[51] *Lujan v. National Wildlife* Federation, 497 U.S. 871, 884 (U.S. 1990).


two of the DFE cannot be satisfied.[52] To support their argument and to satisfy their initial burden under Rule 56, the Entergy Plaintiffs' set forth 17 undisputed facts with record support regarding the Corps' failure to follow its own professional standards and/or general industry-wide professional engineering standards.[53] Given that the Entergy Plaintiffs' have met their burden, that burden now shifts to the Defendant.

Defendant's Reply and Opposition, however, does not in any way respond to or address the Entergy Plaintiffs' prong two arguments. Rather, Defendant addresses only the *Armstrong* Plaintiffs' Motion for Partial Summary Judgment, which alleges that the Corps' own engineering standards constitute mandates and the failure to comply with these mandates defeat the application of the DFE under a prong one analysis.[54] While the Armstrong Plaintiffs' argument has merit, this argument differs from the theory advanced by the Entergy Plaintiffs.

The Entergy Plaintiffs have demonstrated that regardless of the "mandatory" nature of these engineering guidelines or standards, the Corps' failure to adhere to these well-established engineering parameters was the result of basic professional negligence and not the result of even arguably social or governmental policy analysis, which defeats prong two of the DFE test. The Corps has not disputed that its improper actions and failures to act were not based on considerations of public policy; therefore prong two of the DFE cannot be satisfied. Defendant simply does not validly contest the Entergy Plaintiffs' contentions. Put differently, the Government's objections do not address the prong two arguments contained in the Entergy Plaintiffs' Motion and do rise to a showing of "metaphysical doubt as to the material facts."[55]

---

[52] Entergy's Opposition and Motion for Partial Summary Judgment, at 18-25.
[53] PSUF, at ¶¶ 7, 43, 48, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63.
[54] Defendant's Reply and Opposition, 11-15.
[55] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (U.S. 1986).

The Fifth Circuit holds that Summary Judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant."[56]  Thus, where the nonmoving party fails to meet the burden set out by *Lujan*, "the motion for summary judgment must be granted."[57]

## IV.    This Court Should Again Reject Defendant's Prematurity Argument and Maintain Subject Matter Jurisdiction Over the Instant Lawsuit.

The Entergy Plaintiffs have met their burden under Rule 56(c) regarding Defendant United States' argument that the Entergy Plaintiffs' cause of action is premature and thus this Court lacks subject matter jurisdiction.[58]  In support of their Motion, the Entergy Plaintiffs submitted four undisputed statements of fact.[59]

The United States has long conceded "that there is no time limit from filing an FTCA action when an administrative claim is deemed to be denied under 28 U.S.C. § 2675(a) by virtue of an agency's failure to finally dispose of a claim within six months."[60]  Defendant's Reply and Opposition evidently concedes the facts and law presented by the Entergy Plaintiffs' in their Opposition and Motion for Partial Summary Judgment.  Defendant's final brief addresses only the *Armstrong* Plaintiffs' Motion, and the issues unique to those Plaintiffs.[61]  Defendant does not address the Entergy Plaintiffs' position regarding its prematurity argument.[62]

This Court rendered its ruling that the Entergy Plaintiffs' action was not premature. Thus, for reasons contained in (1) this Court's February 2, 2010 Order and Reasons and (2) the

---

[56]    *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir. 1993).
[57]    *Little v. Liquid Air Corp.,* 37 F.3d 1069, at 1076 (5th Cir. 1994).
[58]    Entergy's Opposition and Motion for Partial Summary Judgment, at 25-28.
[59]    PSUF at ¶¶ 67- 70.
[60]    *McCallister v. U.S.*, 925 F.2d  841, 843 (5th Cir. 1991) (citing *Taumby v. U.S.*, 919 F.2d 69 (8th Cir. 1990)).
[61]    Defendant's Reply and Opposition.
[62]    Defendant United States' Response and Objections to Entergy's Statement of Undisputed Facts (Doc. 20033-2) at ¶¶ 67, 70.

14

Entergy Plaintiffs' Reply Memorandum in Support of Motion to Consolidate,[63] this Court should again reject Defendant's prematurity argument and maintain subject matter jurisdiction over the instant lawsuit.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Entergy Plaintiffs' Opposition and Motion for Partial Summary Judgment, this Court should deny Defendant's claim of immunity under both 702(c) of the Flood Control Act and the discretionary function exception to the Federal Tort Claims Act.  Additionally, this Court should again reject Defendant's prematurity argument and maintain subject matter jurisdiction over the instant lawsuit.  This Court should also grant Plaintiffs' Motion for Partial Summary Judgment on discretionary function exemption.

Respectfully submitted on October __06__, 2010,

Ewell E. Eagan Jr. (La. Bar No. 5239), T.A.
Nina Wessel English (La. Bar No. 29176).
Brian L. Guillot (La. Bar No. 31759)
Gordon, Arata, McCollam,
 Duplantis & Eagan, L.L.C.
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana  70170-4000
Telephone: (504) 582-1111
Fax: (504) 582-1121

By:_____/s/Brian L. Guillot_____

and

Marcus V. Brown (La. Bar No. 18817)
Wendy Hickok Robinson (La. Bar No. 25225)
Entergy Services, Inc.
639 Loyola Avenue, Suite 2600
New Orleans, LA  70113
Tel:  504-576-2765

---

[63] Entergy Companies' Reply Memorandum in Support of Motion to Consolidate, 05-cv-4180 (Doc. 19458).

Attorneys for Plaintiffs, **Entergy New Orleans, Inc., Entergy Louisiana, L.L.C.,**

and

Elisa T. Gilbert (ETG 5713), T.A.
Brendan R. O'Brien (BO 9033)
Kea Sherman, Esq (La. Bar No. 30299)
The Gilbert Firm, LLC
325 East 57th Street
New York, NY 10022

Attorneys for Hartford Steam Boiler Inspection and Insurance Company

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing was served by ECF on October   06  , 2010.

By:          /s/Brian L. Guillot          
           BRIAN L. GUILLOT