### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
|  | * | NO. 05-4182 |
| PERTAINS TO: ALL BARGE | * * | and consolidated cases |
|  | * | SECTION "K" (2) |
| *Boutte v. LaFarge*     05-5531 | * | |
| *Mumford v. Ingram*     05-5724 | * | |
| *Lagarde v. LaFarge*    06-5342 | * | JUDGE |
| *Perry v. Ingram*       06-6299 | * | STANWOOD R. DUVAL, |
| *Benoit v. LaFarge*     06-7516 | * | JR. |
| *LaFarge v. USA*        07-5178 | * | |
|  | * | MAG. |
| *Weisler v. Seymour, et al.*  09-2737 | * | JOSEPH C. WILKINSON, |
|  | * | JR. |

**WEISLER DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c) TO PREVENT DISCLOSURE OF INFORMATION PROTECTED FROM DISCLOSURE BY THE ATTORNEY-CLIENT PRIVILEGE, THE WORK-PRODUCT DOCTRINE, AND HEALTH CARE PROVIDER-PATIENT PRIVILEGE WITH REGARD TO RICHARD H. WEISLER'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS (REC. DOC. 20013-1)**

**NOW COME** improperly named and joined defendant Brian A. Gilbert, Esq.; improperly named and joined defendant Lawrence Wilson, Esq.; Law Office of Brian A. Gilbert, P.L.C.; and Wilson, Grochow, Druker and Nolet (hereinafter "Weisler Defendants"), and additionally, for limited purposes of intervention as respondents to discovery propounded by Richard H. Weisler (hereinafter "Plaintiff"), **NOW COME** the Barge

Plaintiffs, the Barge Plaintiff's Subgroup Litigation Committee, by and through its members and its Liaison, Brian A. Gilbert, in his official capacity as such, and in his official capacity as Master Committee Barge Liaison (hereinafter "Interveners"), who respectfully move this Honorable Court for the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c) for the following reasons:

The federal discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Kiln Underwriting, Ltd., et al. v. Jesuit High School of New Orleans*, 2008 U.S. Dist. LEXIS 1635, p. 8 (E.D. La. 2008)(Citations omitted). However, discovery has ultimate and necessary boundaries. *Id.* at pp. 8-9. (Citations omitted). Ultimately, the scope of discovery is within the sound discretion of the trial court. *Id.* at p. 9. (Citations omitted).

Federal Rule of Civil Procedure 26(c) states in pertinent part:

[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending....The motion must include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense, including one or more of the following:

...

(B)     specifying terms, including time and place, for the disclosure or discovery;

...

(D)     forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

On July 15, 2010, Plaintiff propounded the following First Request for Production of Documents on the Weisler Defendants:

REQUEST FOR PRODUCTION NO. 1:

> Please produce a copy of any and all documents evidencing communication of any kind between or among Defendants related to mental health care professionals and/or to experts, contacted during the pendency of CA No. 05-4182, including, Dr. Richard Weisler, Dr. Mark Townsend, Dr. Jill Hayes, Dr. Howard Osofsky, Dr. Phillip Griffin and/or other medical experts who worked with or for the Defendants with the "Barge Case", the "emotional injury subclass", and/or the assessment of mental health issues, injuries and/or damages sustained by any Plaintiffs resulting from Katrina.

(Rec. Doc. 20013-1, Exhibit "A" at pp. 3 - 4).

The case at bar presents the Weisler Defendants with a "Catch 22" dilemma. On one hand, the interest of justice is furthered by the open and free disclosure of information. This principle is embodied in Federal Rule of Civil Procedure 26(b)(1) that states in pertinent part, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - - including the existence, description, nature, custody, condition, and location of any documents or other tangible things...." On the other hand, the Weisler Defendants must take appropriate measures to prevent the disclosure of privileged information to prevent injustice to their clients in the "Barge" litigation.

The Weisler Defendants are all attorneys or law firms currently engaged in prosecuting the "Barge" case on behalf of residents of the lower ninth ward and St. Bernard Parish. Richard H. Weisler, Plaintiff, requests the production of e mail communications between the Weisler Defendants concerning their representation of plaintiffs in the "Barge" case and e mail communications between the Weisler Defendants and plaintiffs' experts in the "Barge" case. (Rec. Doc. 20013-1, Exhibit "A" at pp. 3 - 4). The Weisler Defendants object to the relevance of such documents and seek to preserve attorney-client privilege,

work-product protection, and health care provider-patient privilege with regard to documents produced in response to Plaintiff's First Request for Production of Documents (Rec. Doc. 20013-1).

Further, the Weisler Defendants seek to preserve attorney-client privilege and work-product protection by virtue of being attorney co-defendants in the "Weisler" case who created and authored such documents in the course of giving legal advice to each other and in the course of sharing their mental impressions, legal theories, legal strategies, legal opinions, and legal conclusions with each other with the purpose of developing an identical legal strategy in furtherance of their common interest to defend themselves against pending litigation against Plaintiff.

A.      **GENERAL OBJECTION TO PLAINTIFF'S REQUEST FOR PRODUCTION BASED ON RELEVANCE**

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any nonprivleged matter that is relevant to any party's claim or defense...." Information sought does not become relevant merely because a party speculates that it might reveal useful material. *Thomas v. IEM, Inc.*, 2008 U.S. Dist. LEXIS 19186, p. 10 (M.D. La. 2008)(Citations omitted). Where a party fails to produce any specific fact whatsoever to support an allegation, a district court, in its discretion, may refuse to permit discovery. *Id.*

A reading of Plaintiff's July 15, 2010 request for production shows the request seeks information not reasonably calculated to lead to the discovery of admissible evidence. For instance, the request seeks, "all documents...related to mental health care professionals

-4-

and to experts...who worked with or for Defendants with the "Barge Case"...[concerning] the assessment of mental health issues, injuries and/or damages sustained by any Plaintiffs resulting from Katrina." Supposedly, these documents will help Plaintiff discover the reasons why the Weisler Defendants chose to dispute Plaintiff's expert fee charged in connection with evaluating and diagnosing a handful of the Weisler Defendants' clients' mental health conditions and preparing an expert report that was never used. Plaintiff fails to demonstrate the documents requested are relevant to either his claims or the Weisler Defendants' defenses. The sole issue Plaintiff raises in this case is whether Plaintiff's expert fees are reasonable and, if not, the market value of Plaintiff's services and work to which he is entitled compensation by the Weisler Defendants. The Weisler Defendants respectfully submit that Plaintiff already has the evidence he needs to attempt to prove his case. Plaintiff already has all of his time records, his notes, and other documents relevant to his work for the Weisler Defendants. These documents go to the crux of Plaintiff's claims, not the e mails in question. Accordingly, Plaintiff's July 15, 2010 request for production seeks information that will not tend to prove Plaintiff's claims and, therefore, the documents requested in Plaintiff's July 15, 2010 request for production (Rec. Doc. 20013-1, Exhibit "A" at pp. 3 - 4) are not relevant for the purpose of proving Plaintiff's claims.

## B.   THE ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege is the oldest privilege regarding confidential communications known to the common law. *Upjohn Co., et al. v. U.S., et al.*, 449 U.S. 383, 389 (1981)(Citations omitted). The attorney-client privilege is an exception to the general rule that the law is entitled to every man's evidence. *In Re: Vioxx Products Liability*

*Litigation*, 501 F. Supp.2d 789, 795 (E.D. La. 2007).  The privilege's purpose is to encourage full and frank communications between attorneys and their clients, thereby promoting broad public interests in the observance of law and administration of justice. *Upjohn*, 449 U.S. at 389.  The privilege recognizes sound legal advice or advocacy serves a strong public purpose and such advice or advocacy depends on the attorney being fully informed by his or her client.  *Id.*  (Citations omitted).

Confidential communications may occur between any combination of the following persons: the client, the client's representative, the lawyer, the lawyer's representative, **and different lawyers representing the same client.**  (Please see Moore's Federal Pamphlet § 501.7[3][a] (2008 ed.)(Emphasis added).  The privilege also attaches to communications made by the client or lawyer to another lawyer representing a person **"in a matter of common interest."**  *Id.*  (Citing *U.S. v. Newell*, 315 F.3d 510 (5th Cir. 2002))(Emphasis added).  In order for documents and communications shared among those who may participate in a common interest scheme to be considered confidential, there must exist an agreement, written or oral, embodying a cooperative and common enterprise towards an identical legal strategy. *The Children First Foundation, Inc. v. Martinez, et al.*, 2007 U.S. Dist. LEXIS 90723, p. 50 (N.D. NY 2007)(Citations omitted).  Paramount to the common interest doctrine is a commonality of interest among the parties to the agreement and each party must reasonably understand that the communications are provided in confidence. *Id.*  (Citations omitted).  Because the communications are made in confidence among the agreement's allies, they ought to be deemed confidential pursuant to the attorney-client privilege.  *Id.*  (Citations omitted).  A written communication, including an e mail, is

accorded the same protection as an oral communication. (Please see Moore's Federal Pamphlet § 501.7[3][b] (2008 ed.)(Citing *Pritchard v. County of Erie*, 473 F.3d 413 (2nd Cir. 2007)).

In a diversity action, such as the case at bar, the Court must apply the state law of attorney-client privilege. *Kiln Underwriting*, 2008 U.S. Dist. LEXIS 1635, p. 9. (Citing Fed. R. Evid. 501). Louisiana Code of Evidence Article 502(C) states, "[w]here two or more persons are joint holders of a privilege, a waiver of the right of one joint holder to claim the privilege does not affect the right of another joint holder to claim the privilege." Louisiana Code of Evidence Article 506(B) states in pertinent part:

> [a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication...made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the **mental, emotional, or physical condition of the client** in connection with such a communication, when the communication is:
>
> (1) Between the client or a representative of the client and the client's lawyer or representative of the lawyer.
>
> (2) Between a lawyer and a representative of the lawyer.
>
> (3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party **concerning a matter of common interest.**
>
> ...
>
> (5) **Among lawyers and their representatives representing the same client.**

(Emphasis added). Louisiana Code of Evidence Article 506(D) states in pertinent part, "[t]he person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege on behalf of the client."

Louisiana Code of Evidence Article 506(A)(1) defines "client" as "a person...to whom professional legal services are rendered by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer." Louisiana Code of Evidence Article 506(A)(3) defines "lawyer" as "a person authorized...to practice law in any state or nation." Louisiana Code of Evidence Article 506(A)(4) defines "representative of the lawyer" as "a person engaged by the lawyer to assist the lawyer in the lawyer's rendition of professional legal services." Such representatives must be considered to be so interrelated with the rendition of legal services by the attorney that communications to them are considered within the privilege. *Kiln Underwriting*, 2008 U.S. Dist. LEXIS 1635, pp. 11-12. (Citations omitted). Louisiana Code of Evidence Article 506(5)(a) defines "confidential communications" as communications not intended to be disclosed to persons other than, "[t]hose to whom disclosure is made in furtherance of obtaining or rendering professional legal services for the client."

The Weisler Defendants respectfully submit, in this particular case with this particular request for production, there is no need to make a document by document assertion of privilege, because the request for production, on its face, requests information protected from disclosure by the attorney-client privilege. For instance, on its face, the request for production requests the following: (1) documents evidencing communication; (2) related to mental health and other medical experts; (3) contacted during the pendency of CA No. 05-4182; (4) such experts who worked with or for the Defendants with the "Barge Case"; (5) concerning mental injuries and/or damages sustained by any plaintiffs.

First, none of the Weisler Defendants' clients in the "Barge" case have waived attorney-client privilege concerning communications with mental health and other medical

experts who were contacted by the Weisler Defendants and who worked with or for the Weisler Defendants during the pendency of CA No. 05-4182. Second, even assuming one or some of the clients have waived the privilege, which they have not, the waiver of the privilege by some of the clients does not operate as a waiver for all of the clients. Third, communications with and regarding the before-mentioned mental health and other experts would have necessarily been for the exclusive purpose of facilitating the rendition of professional legal services to the Weisler Defendants' clients, because the purpose of the communications was to create a mental damages sub-class within the "Barge" plaintiffs, who the Weisler Defendants represent. Fourth, the communications were either between different lawyers representing the same clients for a common purpose (i.e., to obtain compensation from the owner of a barge that breached a flood wall during Hurricane Katrina) or the communications were between the before-mentioned lawyers and experts retained by those lawyers to perform mental health evaluations on clients for the sole purpose of creating a mental damages sub-class within the "Barge" plaintiffs. Finally, the communications were not intended to be disclosed to persons other than the attorneys representing the same plaintiffs or the experts retained by those attorneys for the purpose of creating a mental damages sub-class within the "Barge" plaintiffs.

Furthermore, Plaintiff's July 15, 2010 request for production (Rec. Doc. 20013-1, Exhibit "A", pp. 3 - 4) seeks information protected by the attorney-client privilege in the "Weisler" case, because it requests production of documents evidencing communications among the Weisler Defendants concerning "Dr. Richard Weisler." Common sense dictates that the Weisler Defendants, being attorneys, would communicate among themselves concerning legal theories and strategies in contemplation of litigation with Plaintiff, Dr.

Richard Weisler. Attorneys who are co-defendants in the same litigation bounce ideas off of each other as a necessary process to vet, test, and strengthen their legal theories and strategies. Would any reasonable person expect them to do otherwise? The Weisler Defendants used these communications (the vast majority of which are e mails) to engage in a cooperative and common enterprise towards an identical legal strategy; to wit, the best ways to defend themselves in imminent litigation in which they, as lawyers, all expected to be sued by the same person asserting the same causes of action and the same set of operative facts. The same is equally true of the counterclaims asserted by the Weisler Defendants and now pending before this Court.

The Weisler Defendants knew Plaintiff's fee dispute would most probably wind up in litigation, because Dr. Weisler demanded one hundred cents on the dollar to "settle" the matter out of court and the Weisler Defendants could not and would not accept such onerous terms. Since the Weisler Defendants were going to be co-defendants in the same litigation, they, as lawyers, shared a commonality of interest to develop common legal theories and strategies to defend themselves against Plaintiff's law suit. While the agreement to provide a joint defense was never reduced to writing, the agreement is certainly discernable from the various redacted e mails that will be produced in response to Plaintiff's July 15, 2010 request for production. The redacted e mails are replete with statements that contain the wording "we should", "we must", and "we need to" as opposed to "I should", "I must", and "I need to."[1]

---

[1] This distinction is not meant to imply that a singularly-originated thought or intention by one Weisler Defendant is any less protected, as it still constitutes attorney-client communication and attorney mental impressions with respect to the claims or defenses herein.

Plaintiff knows the e mails reflect the Weisler Defendants' common legal strategies and theories and that is exactly why he wants the e mails so badly. Plaintiff's July 15, 2010 request for production of documents does not even attempt to conceal the fact that it is fishing for just this kind of protected information. The Weisler Defendants authored the e mails with the understanding that the communications were provided in confidence and the Weisler Defendants, as lawyers, had a reasonable expectation that e mails reflecting their legal theories and strategies communicated between themselves and other co-defendants would not be discoverable by an adverse party. Accordingly, the documents requested in Plaintiff's request for production of documents (Rec. Doc. 20013-1, Exhibit "A" at pp. 3 - 4) are protected from disclosure based on attorney-client privilege in both the overall "Barge" litigation and the "Weisler" litigation.

The verbiage in Plaintiff's request for production is, to say the least, bothersome. The Weisler Defendants contend this language is so offensive to the principles embodied in Louisiana Code of Evidence Article 506, that the Weisler Defendants would be well within their right to object to the entire request for production and refuse to produce any documents whatsoever. However, the Weisler Defendants are desirous of quickly resolving this issue with minimal litigation, so that they can focus their resources and energy on prosecuting their clients' claims in the "Barge" case. Therefore, to move the "Weisler" litigation along and to demonstrate good faith to Dr. Weisler, the Weisler Defendants will produce all currently known documents responsive to Plaintiff's July 15, 2010 request for production of documents with the proviso that information protected from disclosure by the attorney client privilege is redacted prior to production.

C.    **THE WORK-PRODUCT DOCTRINE**

The work-product doctrine was created by the United States Supreme Court to preserve the adversarial nature of the trial process. *In Re: Vioxx Products Liability Litigation*, 501 F. Supp.2d at 813. (Citing *Hickman v. Taylor*, 329 U.S. 495 (1943)). The doctrine establishes a "zone of privacy" in which an attorney can prepare and develop theories and strategies with an eye towards litigation without unnecessary intrusion by his or her adversaries. *The Children First Foundation*, 2007 U.S. Dist. LEXIS 90723, p. 42. (Citations omitted).

The work-product doctrine gives qualified immunity to communications that are created in preparation for litigation. *In Re: Vioxx Products Liability Litigation*, 501 F. Supp.2d at 813. (Citing *Hickman v. Taylor*, 329 U.S. 495 (1943)). The application of the immunity requires the following: (1) that the litigation anticipated be identified; and (2) that it be proven that the communication in question was in preparation of that litigation. *Id*. The work-product doctrine is distinct from and broader than the attorney-client privilege. *The Children First Foundation*, 2007 U.S. Dist. LEXIS 90723, p. 41. The work-product doctrine exists to protect attorneys' mental impressions, opinions, and legal theories concerning litigation. *Id*. at pp. 41-42. The burden of proving the applicability of the work-product doctrine rests with the party invoking the doctrine. *Kiln Underwriting*, 2008 U.S. Dist. LEXIS 1635, p. 12. (Citations omitted). Unlike the attorney-client privilege in which state law applies in diversity cases, considerations of the work-product doctrine are governed by Federal law. *Id*. at 11. (Citations omitted).

Federal Rule of Civil Procedure 26(b)(3)(A) states in pertinent part: "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (**including the other party's attorney...or agent**)." (Emphasis added). Federal Rule of Civil Procedure 26(b)(3)(B) states, "[i]f a court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

In this case, Richard H. Weisler, Plaintiff, has propounded a very unusual request for production of documents, because the request for production appears targeted to snag protected information in its web. The request specifically demands production of documents "evidencing communication" among the Weisler Defendants during "the pendency of CA No. 05-4182" concerning "experts who worked with or for [the Weisler Defendants] with the "Barge Case...." Plaintiff's request for production appears to be crafted to capture documents that, by their very nature, contain mental impressions, conclusions, opinions, or legal theories of attorneys regarding ongoing litigation. This attempt runs afoul of Federal Rule of Civil Procedure 26(b)(3) and further places the Weisler Defendants in a "Catch 22" to provide for the open and free disclosure of information, while at the same time, not disclosing protected information by responding to a request for production of documents that was very likely crafted to capture just such protected information. The undersigned submits that if a law professor were to issue an assignment to his students to draft a request for production of documents that requests information protected by the work-product doctrine without actually stating "produce

-13-

information protected by the work-product doctrine", the model answer would look very similar to the request for production drafted by the Plaintiff in this case.

Furthermore, Plaintiff's July 15, 2010 request for production seeks information protected by the work-product doctrine in the "Weisler" litigation.  In the case *Hickman v. Taylor*, the United States Supreme Court rejected an attempt, without purported necessity or justification, to secure written statements, private memoranda, and personal recollections prepared by an adverse party's counsel in the course of his legal duties. 329 U.S. 495, 510 (1947).  The Court noted "it is essential that a lawyer work with a certain degree of privacy" and reasoned that if discovery of the material sought were permitted:

> much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advise and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511.  The undersigned respectfully submits that e mail communications between attorneys who anticipate being co-defendants in a law suit contain, by their very nature, mental impressions, conclusions, opinions, and legal theories authored by those co-defendant attorneys in anticipation of the expected litigation.  Would a reasonable person expect otherwise? At issue are e mails between co-defendant attorneys.  What would one expect those e mails to discuss?  Plaintiff's request for production even goes as far as unequivocally requesting e mails concerning "Dr. Richard Weisler."

The Weisler Defendants were in their "zone of privacy" at the time they authored the e mails.  The Weisler Defendants freely and openly expressed their legal theories, strategies, conclusions, and opinions concerning the pending "Weisler" litigation with the

reasonable expectation that such communications between themselves and other co-defendant attorneys in the "Weisler" litigation would be protected from disclosure to an adverse party. If the Weisler Defendants would have thought otherwise, they surely would have chosen conference calls as opposed to e mail. As attorneys, they were bouncing ideas off of other co-defendant attorneys to develop an  identical legal strategy in furtherance of their common interest to defend themselves against the pending litigation threatened by Plaintiff.[2] The Weisler Defendants authored the e mails in confidence that the emails would stay within the group and not fall into the hands of an adverse party. Accordingly, the work-product doctrine protects the emails in the overall "Barge" case as well as the "Weisler" case.

The Weisler Defendants respectfully submit that, in this particular case with this particular request for production, these is no need to make a document by document assertion of privilege, because the request for production, on its face, requests information protected from disclosure by the work-product doctrine.  For instance, on its face, the request for production requests the following: (1) documents evidencing communication; (2) between or among the Defendants [all attorneys or law firms representing plaintiffs in the "Barge" case][3]; (3) during the pendency of CA No. 05-4182 [the "Barge" case]; (4)

---

[2]

The "common interest doctrine" is an extension of both the attorney-client privilege and the work-product doctrine. *The Children First Foundation, Inc. v. Martinez, et al.*, 2007 U.S. Dist. LEXIS 90723, p. 48 (N.D. NY 2007)(Citations omitted).  Therefore, the common interest doctrine is discussed in this Motion in the context of both attorney-client privilege and the work-product doctrine.

[3]

Please see the first paragraph on the second page in Plaintiff's Request for Production of Documents that reads as follows, "Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant [sic], Richard H. Weisler, requests that Defendants, Richard T. Seymour, **Esq.**, Richard T. Seymour, **P.L.L.C.**, Alan L. Fuchsberg, **Esq.**, The Jacob D. Fucshberg **Law Firm**, Brian A. Gilbert, **Esq.**, **Law Office** of Brian A. Gilbert, P.L.C., Wiedemann & Wiedemann, **P.L.C.**, Lawrence Wilson, **Esq.**, and Wilson, Grochow, Druker, & Nolet

-15-

concerning mental health care professionals and/or to experts who worked with or for the Defendants in the "Barge" case; (5) concerning assessment of mental health issues, injuries, and or damages sustained by any plaintiffs resulting from Katrina.

The request for production speaks for itself and it speaks loudly. The litigation anticipated is clearly identified by its docket number. Only attorneys and law firms working for the plaintiffs in the "Barge" litigation are the target of the request. The documents requested concern mental health experts and other medical experts working with or for those attorneys and law firms, and the documents requested concern the assessment of mental health issues, injuries, and/or damages sustained by the plaintiffs who the Weisler Defendants represent. Therefore, the communications in question clearly were in preparation for the "Barge" case. The Weisler Defendants do not need to meet the burden that the documents requested fall under the work-product doctrine, because the Plaintiff has kindly met that burden for the Weisler Defendants by the very language contained in his request for production of documents.

The Weisler Defendants contend this language is so offensive to the principles embodied in Federal Rule of Civil Procedure 26(b)(3), that the Weisler Defendants would be well within their right to object to the entire request for production and refuse to produce any documents whatsoever. However, for the same reasons the Weisler Defendants have previously given for producing all currently known documents responsive to Plaintiff's request for production notwithstanding the attorney-client privilege issue, the Weisler

---

("Defendants"), produce and permit inspection.... (Rec. Doc. 20013-1, Exhibit "A" at p. 2)(Emphasis added).

Defendants will produce all currently known documents responsive to Plaintiff's request for production with information constituting protected work-product redacted.

## D.   HEALTH CARE PROVIDER-PATIENT PRIVILEGE

The Weisler Defendants represent that communications between themselves concerning their client's private health information may not be protected; with "may" being the operative word.  However, out of an abundance of caution and in consideration of the consequences associated with the disclosure of private health information, the Weisler Defendants do not concede that the information is not protected and the Weisler Defendants will not disclose such information without an order compelling them to disclose such information[4].

This is a diversity case and, therefore, state law concerning privilege applies.  *U.S. ex Rel. Stewart, et al. v. The Louisiana Clinic, et al.*, 2002 U.S. Dist. LEXIS 24062, p. 6 (E.D. La. 2002)(Citing Fed. R. Evid. 501).  Louisiana Code of Evidence Article  510(B)(1) states:

> [i]n a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.

Louisiana Code of Evidence Article 510(A)(1) defines a "patient" as "a person who consults or is examined or interviewed by another for the purpose of receiving advise, diagnosis,

---

[4] Of particular note is Louisiana Rule of Professional Conduct 1.6(a) that states, "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)." Louisiana Rule of Professional Conduct 1.6(b)(6) states in pertinent part, "[a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary...to comply with...a court order."

or treatment in regard to that person's health." Louisiana Code of Evidence 510(A)(5) defines "representative of patient" as "any person who makes or receives a confidential communication for the purpose of effectuating diagnosis or treatment of a patient." Louisiana Code of Evidence Article 510(A)(2) states that the term "health care provider" includes "a physician and psychotherapist...." Louisiana Code of Evidence Article 510(A)(3) defines "physician" as a person licensed to practice medicine in any state or nation." Louisiana Code of Evidence Article 510(4)(a)(b) defines "psychotherapist" as "[a] physician engaged in the diagnosis or treatment of a mental or emotional condition...." or "[a] person licensed or certified as a psychologist under the laws of any state or nation." Louisiana Code of Evidence Article 510(A)(8)(a)(ii) defines "confidential communication" as "the transmittal or acquisition of information not intended to be disclosed to persons other than...[t]hose reasonably necessary for the transmission of the communication." Louisiana Code of Evidence 510(A)(8)(b) further defines "confidential communication" as "any information...or tangible object, obtained incidental to the communication process and any opinion formed as a result of the consultation, examination, or interview...." Louisiana Code of Evidence Article 510(A)(9) defines "health condition" as "a physical, mental, or emotional condition...."

In a civil proceeding, there is no privilege under Louisiana Code of Evidence Article 510 when the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial proceeding. La. C.E. Art. 510(B)(2)(a). The privilege also does not apply when "the communication is relevant to an issue of the health condition of the patient in any proceeding **in which the patient is a party** and relies upon the condition as an element of his claim...." La. C.E. Art. 510(B)(2)(c)(Emphasis added).

-18-

The communications at issue in this matter involve a "patient", because the clients were interviewed and examined to for the purpose of receiving a diagnosis regarding their mental health for the purpose of creating a mental damages sub-class in the "Barge" plaintiffs.  The communications at issue involve a "health care provider", because the mental health experts are all either physicians or licensed psychologists.   The communications at issue are "confidential", because they involve opinions rendered by the "health care providers" formed as a result of those "health care providers" consultation, examination, and interview with the client "patients".  Further, the communications at issue were not intended to be disclosed to persons other than the mental health experts in the "Barge" case and the clients' attorneys in the "Barge" case.  The Weisler Defendants respectfully submit that they were persons "reasonably necessary for the transmission of the communication[s]", because they were tasked with processing the various diagnoses of their clients mental health into legal strategies and theories to create a mental damages sub-class in the "Barge" plaintiffs.

Nevertheless, the communications may fall under an exception to the health care provider-patient privilege, because the "patients" have brought personal injury claims in the "Barge" case.  However, whether or not the exception applies is not clear, because the documents are not being requested in the "Barge" case.  The documents are being requested in the "Weisler" case.  The Weisler Defendants are not asserting any defense in this litigation based on their clients' **individual** mental conditions.  Nor is Plaintiff asserting a claim based on his patients' **individual** mental conditions.  Therefore,

disclosing **individual** clients' personal medical information may not be proper in this litigation.

Further, regardless of whether the documents requested by Plaintiff's July 15, 2010 requests for production of documents are protected from disclosure pursuant to Louisiana Code of Evidence Article 510(A)(B), Plaintiff fails to establish relevance. Federal Rule of Civil Procedure Article 26(b)(1) limits the scope of discovery to any information that is relevant to any party's claim or defense. The information sought does not become relevant merely because a party speculates that it might reveal useful material. *Thomas v. IEM, Inc.*, 2008 U.S. Dist. LEXIS 19186, p. 10. (Citations omitted). Where a party fails to produce any specific fact whatsoever to support an allegation, a district court, in its discretion, may refuse to permit discovery. *Id.* Therefore, Plaintiff's request for production seeks to enlarge the scope of discovery in this litigation to include individual client's and/or patient's mental health information based on Plaintiff's speculation that such production might reveal useful information relating to his fee dispute claim and this attempt to enlarge the scope of discovery is contrary to Federal Rule of Civil Procedure 26(b)(1) which limits discovery to information relevant to any party's claims or defenses.

E.      **WEISLER DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER**

The Weisler Defendants seek a common sense and practical solution that attempts to balance the principles embodied in Federal Rule of Civil Procedure 26(b)(1) with the principles embodied in Louisiana Code of Evidence Article 506, Federal Rule of Civil Procedure 26(b)(3), and Louisiana Code of Evidence Article 510. Of course, the ideal common sense and practical solution is one that has this Honorable Court's learned

approval, because the scope of discovery is within the sound discretion of this Court. *Kiln Underwriting*, 2008 U.S. Dist. LEXIS 1635, p. 9. (Citations omitted). To the extent this Honorable Court sees fit to modify the manner in which the Weisler Defendants respond to Plaintiff's July 15, 2010 request for production of documents (Rec. Doc. 20013-1), the Weisler Defendants will warmly embrace this Court's guidance and wisdom concerning the manner of production and the information disclosed. With this deference to the Court in mind, the Weisler Defendants must insist that any protective order mandate any documents produced in response to Plaintiff's July 15, 2010 request for production not be produced, shared, or discussed with any defendants in the "Barge" case.

In the meantime, for the purpose of avoiding delay and to comply with Plaintiff's request for production as much as possible, the Weisler Defendants will produce a bates numbered copy of all known documents requested by Plaintiff with the privileged and protected information redacted. As opposed to a privilege log alone, this manner of production and disclosure will allow the Plaintiff to immediately see the documents at issue. Hopefully, this manner of production will help move this matter along at a faster pace then a privilege log alone would allow. In the probable event Plaintiff objects to certain redactions, the Weisler Defendants propose producing an unredacted copy of the documents at issue to this Court for an *in camera* review in addition to a privilege log stating the grounds (i.e., either attorney-client privilege, work-product, or health care provider privilege) on which the Weisler Defendants assert protection from disclosure. Hopefully, this manner of resolving the discovery dispute will minimize the number of documents this Court will have to review.

Production of documents with privileged information redacted is not without precedent in the Eastern District of Louisiana. Quite the contrary, in the case *In Re: Vioxx Products Liability Litigation*, Judge Fallon adopted a Special Master's Report that rejected Merck's assertion that certain documents were privileged, but allowed Merck to redact certain information contained in the documents such as "comments of the attorney" and "edits and comments of the attorneys." 501 F.Supp. 2d 789, 810-11, 815-16 (E.D. La. 2007)[ applying redaction to e mail communications]. Therefore, the *Vioxx* case sets precedent for redaction and demonstrates the utility of redaction to prevent the disclosure of protected information. As stated previously, if Plaintiff, after reviewing the redacted documents, objects to the redaction, Plaintiff can file a motion to compel with this Court identifying by bates number the specific documents at issue and the basis on which he asserts relevancy with regard to each particular document. In other words, Plaintiff must clearly specify each document at issue and provide the Court with a reason for compelling production, besides merely believing the document might reveal useful information. In the event Plaintiff files such a motion to compel, the Weisler Defendants will provide this Court with an unredacted copy of such documents for *in camera* review along with a privilege log identifying, by bates number, the basis on which privilege is asserted. This proposed method of production will allow this Honorable Court to make an informed ruling on Plaintiff's motion to compel. Further, this proposed method of production will hopefully reduce the number of documents this Court will have to review, thereby promoting a speedy resolution of the controversy and promoting judicial economy and efficiency.

Finally, the Weisler Defendants propose the following language be incorporated into any protective order issued by this Court:

> All information produced in accordance with this order must be kept confidential and used only for purposes of this litigation and must not be disclosed to any one except parties to this litigation (*Weisler versus Seymour*, et al), the parties' counsel of record, no more than two paralegals employed by counsel of record and one expert per party retained in connection with this litigation. All persons to whom such information is disclosed must sign an affidavit that must be filed into the record, agreeing to the terms of the protective order and submitting to the jurisdiction of this Court for enforcement of those terms.

(Please see *U.S. Ex Rel. Stewart, et al.* v. *The Louisiana Clinic, et al.*, 2002 U.S. Dist. LEXIS 24062, p. 20 (E.D. La. 2002). The Weisler Defendants have attached a proposed protective order for this Honorable Court's consideration. As stated before, the Weisler Defendants will warmly embrace any wisdom and guidance this Court may deem necessary concerning the final provisions of any protective order, with the proviso that the information not be disclosed, produced, or discussed with any defendant in the "Barge" case.

## CONCLUSION

If Plaintiff retained his notes, time records, and other documents relevant to his work for the Weisler Defendants, then Plaintiff already possesses all the information he needs to attempt to prove his claim and attempt to rebut the Weisler Defendants' defenses. Therefore, all of this is quite unnecessary and, unfortunately, may push this case past its shelf life, to the detriment of all parties and the Court. This is a fee dispute case, and the sole issue in this case is whether Dr. Richard Weisler's expert fees are reasonable and, if not, the market value of Plaintiff's services and work to which he is entitled

compensation by the Weisler Defendants.  The e mails in question do not tend to either prove or disprove Plaintiff's claim that his fees are reasonable for the work he performed for the Weisler Defendants.

The July 15, 2010 request for production (Rec. Doc, 20013-1, Exhibit "A" at pp. 3 - 4) appears, on its face, to request information protected from disclosure by the attorney-client privilege (both in the "Barge" case and the "Weisler" case), the work-product doctrine (both in the "Barge" case and the "Weisler" case), and the health care provider-patient privilege (in the "Barge" case only).  The Weisler Defendants would be well within their right to refuse to provide any documents responsive to Plaintiff's facially offensive request. Nevertheless, the Weisler Defendants are not interested in making a point just because they can.  The Weisler Defendants are interested in moving this case along.  For this purpose and to demonstrate good faith to all, the Weisler Defendants will produce all known documents responsive to Plaintiff's request with the privileged and protected information redacted.

Accordingly, the Weisler Defendants move this Honorable Court for the entry of a protective order pursuant to Federal Rule of Civil Procedure 26© and attach the proposed protective order as Exhibit "A" to this Motion.

Respectfully Submitted:

/s/ Peter S. Koeppel
**Best, Koeppel & Traylor**
Peter S. Koeppel (LSBA # 1465)
W. Scarth Clark (LSBA # 22993)
Jonathan H. Adams (LSBA # 29061)
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024

peterklaw@aol.com
sclark@bestkoeppel.com
jadams@bestkoeppel.com

*Attorneys for Brian A. Gilbert,
Esq., Lawrence Wilson, Esq.,
Law Office of Brian A. Gilbert,
P.L.C., and Wilson, Druker,
Grochow and Nolet*

**LAW OFFICE OF BRIAN A.
GILBERT, P.L.C.**

**/s/Brian A. Gilbert**
Brian A. Gilbert (21297)
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
bgilbert@briangilbertlaw.com,

*Counsel for Barge Plaintiffs,
Barge Plaintiff Liaison, Barge
Liaison to Master Committee*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been served on all

counsel of record via ECF upload, this 22nd day of October, 2010.

/s/ Peter S. Koeppel, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| PERTAINS TO: ALL BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |

| | | * | |
|---|---|---|---|
| *Boutte v. LaFarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | |
| *Lagarde v. LaFarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, |
| *Benoit v. LaFarge* | 06-7516 | * | JR. |
| *LaFarge v. USA* | 07-5178 | * | |
| | | * | MAG. |
| *Weisler v. Seymour, et al.* | 09-2737 | * | JOSEPH C. WILKINSON, |
| | | * | JR. |

## WEISLER DEFENDANTS' CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1)

The undersigned does hereby certify that he has attempted to confer with Andrew C. Wilson, Esq., counsel for Plaintiff, concerning the production of the e mails at issue in this case. The undersigned believes privileged and protected information should be redacted. Mr. Wilson believes no redactions should be allowed and that his client is entitled to all information contained in the e mails. As of October 22, 2010, the parties have attempted to confer and they are at an impasse concerning this issue.

/s/ Peter S. Koeppel, Esq.