UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Weisler v. Seymour, et al.*  **09-2737** | * | |
| | * | JUDGE |
| | * | STANWOOD R. DUVAL, JR. |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |

**MEMORANDUM ON BEHALF OF
PLAINTIFF, DR. RICHARD H. WEISLER,
IN OPPOSITION TO WEISLER DEFENDANTS'
<u>MOTION FOR A PROTECTIVE ORDER</u>**

**MAY IT PLEASE THE COURT:**

As predicted, rather than produce the documents responsive to the Plaintiff's Request for Production on October 15, 2010, in line with the Court's prior Order, the Defendants instead seek to produce "redacted" documents similar to the trickle of "blacked-out" the Defendants begrudgingly produced two months ago, to which Plaintiff objected.  In addition, rather than

1

timely produce a proposed Protective Order which would have allowed them to release unredacted documents, the Defendants have instead produced two Protective Orders, neither of which will result in the production of unredacted documents.  Instead, it is apparent that the Defendants intend to drag this process out even further now demanding that, the Plaintiff must file a Motion to Compel, just as was predicted in July 2010, when the Defendants sought an extension of time to supposedly provide meaningful discovery responses which they never intended to provide.

Plaintiff, Dr. Richard Weisler, opposes the Defendants' Motion on three separate grounds.  First, the information Dr. Weisler seeks does not involve any attorney-client communication, nor does he seek to obtain medical information concerning the Plaintiff's mental health or other medical information. Dr. Weisler had obtained that information himself from the Barge Case Plaintiffs and given it to the Defendants.  None of that information is relevant to these proceedings or Dr. Weisler's discovery request.

Second, none of the information Dr. Weisler seeks constitutes "work product."  Rather, any e-mails exchanged by and/or among the Defendants could have only involved legal strategies related to the Barge Case, not Dr. Weisler's litigation.  Work product is associated

with information obtained or generated in anticipation of the future litigation for which it is used as a strategy, not for *any* litigation, and does not involve billing questions.

Finally, the Defendants have placed their communications at issue and waived any privileges by attempting to falsely assert that their belated and unilateral decision to abandon the "mental injury subclass" was based on anything other than their belated and unilateral realization that they had made an error in judgment in the manner in which they attempted to establish the subclass. Consequently, all of the Defendants' e-mails should be produced. Dr. Weisler cites additional facts and authorities in support of his position below.

## FACTS

The Defendants contacted Dr. Weisler in early 2008, advising that they had waited until shortly before their deadline for expert reports to attempt to establish a "mental injury subclass" ("the Subclass"). Defendant, Alan Fuschsberg, on behalf of all of the Defendants agreed to pay both Dr. Mark Townsend and Dr. Weisler at the same standard university rate for the evaluation of putative representative Plaintiffs for the proposed Subclass.

In addition, the Defendants placed Dr. Weisler in charge of the entire project such that he was responsible for: (1) coordinating the efforts of several mental health professionals retained by the Defendants to evaluate the representative Plaintiffs; (2) evaluating eleven representative Plaintiffs; (3) obtaining all of the information received from the other mental health professionals; (4) writing a comprehensive report which would support the creation of the

3

Sublass; and, (5) thereafter appearing for a deposition to defend the report and the efforts of all of the mental health professionals to establish the Subclass which was estimated to involve some 5,000 persons. Dr. Weisler performed all of these tasks, but within days of Dr. Weisler's scheduled deposition, the Defendants contacted him by e-mail and advised him to stop all further work which he did. They then refused to pay him a dime.

As Dr. Weisler has previously pointed out, the Defendants praised him for the content and quality of his report which he generated despite the multiple and inconsistent instructions and information he received from the various Defendants. In addition, when Dr. Weisler generated his report, which also included his invoice and the invoices of the other mental health care providers, none of the Defendants objected. In fact, they then simply asked him to prepare to defend the report and to prepare for his deposition.

It would only be after their litigation funding source apparently dried up and their new funding source, Shawn Khorami, entered the scene and refused to pay for Dr. Weisler's services, that the Defendants then decided to abandon the proposed Subclass. Consequently, this litigation is not about the value of Dr. Weisler's services. Indeed, the Defendants already paid Dr. Townsend approximately $54,000.00 based upon the same hourly rate for performing a fraction of the work which Dr. Weisler performed all at the Defendants' direction. In addition, the Defendants paid psychologist, Dr. Jill Hayes, approximately $22,000.00 for performing a

very small amount of testing related to just one representative Plaintiff.  Accordingly, the relevant issue is the true reason why the Defendants chose not to pay Dr. Weisler.

The answer to this inquiry lies only within the Defendants' e-mails among each other. One strain of e-mails clearly demonstrates that Mr. Khorami apparently convinced all of the other Defendants not to pay Dr. Weisler.  As Mr. Khorami states at one point:

> Weisler can go f____ himself - - he should be in jail.  I want to set up an acting group call sometime today and concentrate on Weisler & Company.  I have a number of issues and concerns to address.  As you all know, I have very strong feelings about this issue - - I don't have any memory of something making my blood boil more than this issue.[1]

Defendant, Richard Seymour, then replies:

> I share Mark's views on this.  By the way, Rick Weisler has been calling me, but I have not been taking or returning his calls because there is nothing good I can tell him, and he is getting frustrated.  As soon as the call is made to Mark Townsend, Mark will likely call Rick Weisler and things can become worse.
>
> As to Weisler, one useful thing to say is that we have to submit all the bills to the court for reimbursement from class member's recoveries if we win and it is lack of day-by-day detail make it very chancy that the court would approve it.  One can point out that the court can [blacked-out].[2]

---

[1]     E-mail from Khorami, 8/28/08 (Exhibit "A").

[2]     E-mail from Seymour, 8/28/08 (Exhibit "A").

Then at one point, Mr. Khorami indicates that the Defendants should simply make a decision between whether to have Dr. Townsend or Dr. Weisler testify. As he states:

> 1. I think we have Townsend testify to the extent we want a psych. Even if we were satisfied W/Weisler, there is a strong argument to use Townsend;
>
> 2. As for the continuance, does Joe want to have individual trials and then go to class cert? Is that what he is saying? If so, we are concerned that [blacked-out] that we can vent our concerns and then make a decision? Like I said, my position would be that [blacked-out] we don't need to disclose that we will be until we want to make a deal.[3]

Then, Mark Ravis, apparently another attorney in Mr, Khorami's office, states:

> Is there any stomach for a less confrontational approach with these shrinks - - one which would, of course, involve negotiation of their fees? I think we can [blacked-out] should be able to show [blacked-out] do we enhance our chances for classes?[4]

Mark Ravis then sends out another e-mail stating:

> I will certainly be happy to join Larry and speak to Townsend. I am concerned about our chances of substituting Townsend for Weisler and enraging Weisler who will later be deposed and testify to God knows what. Is there any stomach for a less confrontational approach with these shrinks - - one which would of course involve negotiation of their fees?

---

[3]   E-mail from Khorami, 8/27/08 (Exhibit "B").

[4]   Exhibit "B".

> I think we can present the emotional distress damages as [blacked-out] we can use a [blacked-out] we should be able to show [blacked-out] do we enhance our chances for class cert?[5]

Finally, Defendants, Brian Gilbert, chimes in on the situation and states:

> It is entirely unrealistic and fundamentally wrong to suggest or believe that [blacked-out] we don't agree with his fees, [blacked-out]. This has nothing to do with whether he is entitled to some fee. His fee must be reduced in plain view of the fact that the amount undermines his credibility and the fact that [blacked-out] Lafarge [blacked-out]. But either way, it is high time that we make some movement toward compromise because the merits of the case depend on it. I give more credence to this type of malpractice then I do obtaining expert results that [blacked-out].[6]

In sum, from this small sampling of e-mail from the trickle of e-mails produced to date by the Defendants, it is apparent that the Defendants' refusal to pay Dr. Weisler is not based upon quality of services. To the contrary, they simply did not pay what they had promised to pay, and then, well after the fact, planned to use Dr. Weisler's work product with another psychiatrist, Dr. Townsend, in place of Dr. Weisler. Consequently, issues associated with attorney-client communication, work product associated with the lawsuit filed by Dr. Weisler, or any other broad privilege provides no basis for the Defendants not to produce their e-mails in

---

[5] E-mail from Mark Ravis, 8/28/08 (Exhibit "C")

[6] E-mail from Brian Gilbert, 8/28/08 (Exhibit "D").

unredacted form.  As the discussion of the applicable law will show below, the Defendants have no right to a Protective Order under these circumstances.

## APPLICABLE LAW

In their Motion, the Defendants offered to "warmly embrace this Court's guidance and wisdom concerning the manner of production and any information disclosed."[7]  Yet at the same time, the Defendants attempt to hide behind a totally inapplicable privilege associated with health care information.  This is absurd, since Dr. Weisler never requested medical or health information, and would never do so since it was he who provided that information to Defendants.  The Defendants then somehow claim that their emails to and among each other are privileged attorney-client communication.   Dr. Weisler has absolutely no interest in any communications between the Defendants and the Barge Case Plaintiffs, and there is absolutely no reason why he should. There is no request to this effect on the table.  Thus, the Defendants assertion of both of these privileges is disingenuous at best.  The Defendants' real motive is to somehow prevent the release of all of the communications that will reveal the true reason they refused to pay Dr. Weisler.

---

[7]     Defendants' Memorandum at p. 21.

8

Likewise, the Defendants' assertion of the work-product privilege is also disingenuous. The mental impressions of the Defendants as to their strategy for avoiding payment to Dr. Weisler as part of their "litigation strategy" in the Barge Case has nothing to do with any eventual litigation with Dr. Weisler and in reality would have, at best been related to legal strategies associated with the Subclass. If the Defendants feel that this information should be sealed within this litigation, Dr. Weisler is amenable to that. If the Defendants only had presented the proper Protective Order weeks if not months ago, this could have been addressed. In fact, undersigned counsel for Dr. Weisler had sent a proposed Protective Order to the Defendants' prior counsel in February of 2010 and was told that the Defendants' attorneys would prepare the Protective Order. More recently, the Defendants' attorneys and Defendant, Brian Gilbert, said the same thing. Instead, the Defendants produced their first proposed Protective Order attempting to reserve the privileges to the extent they might be inadvertently waived and Dr. Weisler agreed to this Protective Order. But the second Order that they seek to obtain now will allow them to redact all of the relevant documents and render them *ir*relevant. Consequently, Dr. Weisler objects.

As set forth above, Dr. Weisler opposes the proposed Protective Order for three basic reasons. First, none of the Defendants' communication is subject to the attorney-client or health care privileges. The jurisprudence is clear that, "in considering whether a proponent of the privilege is entitled to protection, the courts must place the burden of proof squarely upon the

9

party asserting privilege."[8]  Here, there has been no suggestion in anything the Defendants have provided to date to the Court that Dr. Weisler seeks either communications between the Defendants and their clients or any information related to health care.  Thus the Defendants have failed to present any need or basis for an attorney-client privilege, or health care privilege and therefore any relief associated with such privileges should be denied.  Thus, the only remaining possibility of a privilege is the work-product doctrine which is also inapplicable.

The work-product doctrine shields material prepared by or for an attorney in preparation for litigation.[9]  It protects two categories of materials: "ordinary work-product and opinion-work product."[10]  Parenthetically, it should be noted that "ordinary" work product will be ordered produced upon a showing of "substantial need" and an "inability to obtain such information" from another source,[11] as is the case here.  So to the extent the work-produce is "ordinary" it should be produced.

The work-product doctrine is also not an umbrella for avoiding production of all materials prepared by a lawyer or an agent of the client.  The law of the Fifth Circuit is that "as

---

[8] *Nutmeg Insurance Co. v. Atwell Vogel & Sterling, a division of Equifax Services, Inc.*, 120 F.R.D. 504, 510 (W.D. La. 1988).

[9] *Blockbuster Entertainment Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 403 (M.D. La. 1992).

[10] *See Upjohn Co. v. U.S.*, 449 U.S. 383, 400-02 (1981).

[11] *Conoco, Inc. v. Boh Bros Construction Co.*, 191 F.R.D. 107, 118 (W.D. La. 198).

long as the primary motivating purpose behind the creation of the document was to aid in potential future litigation," the work-product privilege is implicated.[12]  Significantly, if the materials were assembled or came into being in the ordinary course of business, work-product protection does not reach that far.[13] Moreover, the work-product privilege does not extend to underlying facts relevant to the litigation.[14]  Lastly, the burden of showing the documents were prepared in anticipation of litigation, and therefore, constitute work-product, falls on the party seeking to protect the documents from discovery.[15]

The Defendants cannot meet this burden since their comments were not generated in anticipation of Dr. Weisler's future litigation; their comments were generated in litigation associated with the Barge Case, and were comments made during their ordinary business amongst themselves in formulating strategy to avoid paying Dr. Weisler.  The Defendants' major

---

[12]     See *In Re Kaiser Aluminum & Chemical Co.,* 214 F. 3d 586, 5983 (5th Cir. 2000).

[13]     See *United States v. El Paso Co.*, 682 F. 2d 530 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984); *Beal v. Treasure Chest Casino*, 1999 W.L. 461970 *3 (E.D. La. 7/1/99).

[14]     *Upjohn,* 449 U.S. at 395-396.

[15]     *St. James Stevedoring Co., Inc. v. Femco Machine Co.*, 173 F.R.D. 431, 432 (E.D. La. 1997).

issue with Dr. Weisler is a billing issue, not a major legal issue and consequently whether to pay him is not subject to the work-product privilege.[16] Simply put, there is no privilege.

The final alternative basis Dr. Weisler presents for the denial of the Defendants' Protective Order is that the Defendants waived any privilege under the "placing-at-issue waiver" rule. As the Louisiana Supreme Court indicates, a placing-at-issue waiver occurs when a privilege-holder pleads a claim or a defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. Consequently, he places at issue and waives his privilege as to communications on the same subject under his control. As the Court has stated:

> Placing-at-issue waiver is an application of the 'anticipatory waiver' principle. An allegation, which anticipates a disclosure that will inevitably occur at trial creates the same type of unfairness as a pre-trial partial disclosure: delaying waiver until trial could hamper settlement evaluation and effective trial preparation. [citations][17]

The "placing-at-issue" doctrine has been described on a federal level as follows:

> [U]nder the 'placing-at-issue' doctrine, a privilege holder waives his privilege if the holder 'pleads a claim or defense in such a way

---

[16] See, *In Re Central Gulf Lines*, 2001 W.L. 30675 *2 (E.D. La. 2001); *Tonti Properties v. The Sherwin-Williams Company*, 2000 W.L. 506015 (E.D. La. 2000); *C.J. Calamia Construction Co., Inc. v. Artco/Traverse Lift Co., L.L.C.*, 1998 W.L. 395130 *2 (E.D. La. 1998).

[17] *Petition of Smith v. Kavanaugh Pierson & Talley*, 18 So. 2d 1138, 1140 (La. 1987).

>that he will be forced inevitably to draw upon a privileged communication at trial . . . to prevail.[18]

The Court's inquiry should therefore, come down to whether a party's pleadings have caused the information sought to become "at issue", and as to such information any such privileges are waived.[19] Obviously, by denying in their Answer the fact that the Defendants refused to pay Dr. Weisler solely because they abandoned the Subclass unilaterally and by filing a counter-claim against him, the Defendants placed at issue their refusal to pay Dr. Weisler as evidenced by their contemporaneous e-mails. Therefore, all of these emails should be produced.

## CONCLUSION

Based upon the foregoing, Dr. Weisler submits that the Defendants have failed to establish the existence of any privilege whatsoever, and therefore, have failed in their burden of proof. Alternatively, Dr. Weisler submits that any such privilege is waived by placing-at-issue all of their e-mails which reflect the actual reasons for their arbitrary refusal to pay Dr. Weisler.

---

[18] *Acid Funding Group, L.L.C. v. Adams & Reese, L.L.P.,* 2008 W.L. 927937 (E.D. La. 4/4/08).

[19] *Conoco, Inc. v. Boh Bros Construction Co.,* 11 F.R.D. 107, 117 (W.D. La. 1998)

It should also be noted that these e-mails are the only possible source for this contemporaneous information and Dr. Weisler has no other means of getting the information which is solely under the control of the Defendants.

                              Respectfully submitted,

                              /s/ Andrew C. Wilson
                              Daniel J. Caruso (3941)
                              Andrew C. Wilson (01162)
                              Charles E. Riley, IV (28200)
                              Christopher B. Conley (31674)
                              30th Floor– Energy Centre
                              1100 Poydras Street
                              New Orleans, Louisiana 70163
                              Telephone (504) 569-2030
                              Facsimile (504) 569-2999
                              Attorneys for Plaintiff, Richard H. Weisler, M.D.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                        /s/ Andrew C. Wilson

N:\DATA\N\50182001\Pleadings\Opposition to Defendants Protective Order.wpd