UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES   CIVIL ACTION
CONSOLIDATED LITIGATION

               NO. 05-4182 "K"(2)

PERTAINS TO:  BARGE       JUDGE DUVAL
  Weisler v. Seymour, 09-2737   MAG. J. WILKINSON

## ORDER AND REASONS ON MOTION

This action involves a dispute between medical and legal professionals over money.  Specifically, plaintiff, Richard H. Weisler, M.D., a psychiatrist, filed this complaint against several attorneys and law firms:  Richard T. Seymour; Richard T. Seymour, P.L.L.C.; Alan L. Fuchsberg; The Jacob D. Fuchsberg Law Firm, L.L.P.; Brian A. Gilbert; Law Office of Brian A. Gilbert, P.L.C.; Wiedemann & Wiedemann, P.L.C.; Lawrence Wilson; and Wilson, Grochow, Druker & Nolet (the "Weisler defendants"). Dr. Weisler alleges breach of an oral contract and asserts an action on an open account. He seeks to recover fees and expenses that he claims the defendants, as members of the Barge Plaintiffs' Litigation Steering Committee and/or the Barge Plaintiffs' Subgroup Litigation Committee, owe to him for professional services he rendered to them as a retained expert witness in the Barge Litigation, a subcategory of the cases consolidated under the umbrella of the Katrina Canal Breaches Consolidated Litigation, Civil Action 05-4182.  Complaint, Record Doc. No. 1, in Civil Action No. 09-2737.

The Weisler Defendants' Motion for a Protective Order was previously deferred pending my in camera review of the voluminous contested materials, although substantial production was ordered to proceed, subject to an interim protective order.  Record Doc. Nos. 20096, 20121 and 20124.   Having reviewed and considered the record, the applicable law, the oral argument and stipulation of counsel during the hearing held on November 10, 2010, defendants' supplemental written response to the production request and the in camera materials, **IT IS ORDERED** that the motion is GRANTED IN PART AND DENIED IN PART, as follows.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The Barge Litigation consists of individual cases and a putative class action, in which plaintiffs seek to recover damages allegedly caused when a barge came loose from its moorings in the Industrial Canal during Hurricane Katrina. The Barge Litigation plaintiffs alleged that the barge breached a floodwall/levee and caused massive flooding throughout the Lower Ninth Ward of New Orleans.  One trial has already occurred, resulting in a judgment of this court, finding that the barge did not cause the flooding. Emotional distress, mental anguish and psychological injury to a large class of persons affected by the serious and widespread flooding that was endemic to the victims of Hurricane Katrina was a substantial component of the cases that were filed and

prosecuted by the plaintiffs' lawyers, who are now defendants in Dr. Weisler's complaint.

There is no dispute that Dr. Weisler, a North Carolina psychiatrist, was hired, orally with no written contract, to assist with preparing the Barge Litigation plaintiffs' case for emotional injuries damages, including a putative sub-class of claimants who allegedly suffered such injuries. It is clear from the materials I have reviewed in camera that Dr. Weisler and a number of other experts did substantial work on the emotional injuries damages issues before the Weisler Defendants directed the experts, via electronic communication, to cease their work on August 12, 2008, and that the Weisler Defendants ultimately – though not initially – expressed extreme dissatisfaction with both the content and the cost of the experts' work.

In addition to asserting affirmative defenses, the Weisler Defendants filed a counterclaim against Dr. Weisler, alleging breach of contract, failure of consideration in the oral contract, negligence, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and breach of confidentiality. The Weisler Defendants also claim a credit or setoff for amounts they may already have paid Dr. Weisler. Record Doc. No. 13 in Civil Action No. 09-2737.

In this motion, the Weisler Defendants seek entry of a detailed protective order that would give them broad discretion to redact a large category of documents responsive

to Dr. Weisler's Request for Production No. 1. I found their proposed order unacceptable. Dr. Weisler's Request for Production No. 1 seeks all materials evidencing communication between or among the Weisler Defendants related to mental health care professionals and/or experts who were contacted during the pendency of the Barge Litigation, including Dr. Weisler, Dr. Mark Townsend, Dr. Jill Hayes, Dr. Howard Osofsky, Dr. Joy D. Osofsky and Dr. Phillip Griffin, regarding the "emotional injury subclass" and/or the assessment of mental health issues, injuries or damages sustained by any plaintiffs in the Barge Litigation.  A large number of these communications were accomplished by electronic mail.  The Weisler Defendants contend that the responsive materials are protected from discovery by the attorney-client privilege, the work product doctrine and/or the joint defense privilege.

At the hearing before me on November 10, 2010, counsel stipulated on the record in open court that responsive materials arising from the underlying Barge Litigation, generated before the date on which Dr. Weisler's counsel was retained to pursue his fee and costs claims, as to which privilege or work product protection might apply, would nevertheless be produced, subject to a protective order restricting their use to the Weisler case.  Thus, the parties have stipulated that Dr. Weisler's Request for Production No. 1 does not cover, and the Weisler Defendants will not produce, any documents dated after

October 8, 2008, which is when Dr. Weisler retained counsel in connection with the instant dispute and this subsequent lawsuit.  Record Doc. No. 20121.

II.   LEGAL STANDARDS

Although the scope of discovery is presumptively broad, it is also subject to many restrictions.  For example, "good cause" must be established to expand the scope of discovery to that which is relevant to the "subject matter" of the case, as opposed to the claims and defenses of the parties.  Fed. R. Civ. P. 26(b)(1).  The court may further restrict discovery by employing the cost-benefit analysis contemplated by Fed. R. Civ. P. 26(b)(2)(C), including consideration of the burden or expense of the proposed discovery, its benefit to the case and the amount in controversy.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  Of particular importance to the current dispute, privileged matters, attorney work product and trial preparation materials are presumptively protected from discovery or disclosure, Fed. R. Civ. P. 26(b)(1) and 26(b)(3), subject to certain exceptions.

When a party from whom discovery is sought seeks to invoke any of the restrictions on discovery, a protective order may be an appropriate remedy.  Fed. R. Civ. P. 26(c) provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms, . . . for the . . . discovery" (emphasis added).

The requirement "of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting U.S. v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); see also U.S. v. Talco Contractors, Inc., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

The instant discovery dispute centers upon privilege and work product limitations on discovery. In a diversity case, such as this one, in which state law supplies the rule of decision, privilege questions are governed by the forum state's law on privilege; in this case, the law of Louisiana. Fed. R. Evid. 501; Int'l Ins. Co. v. RSR Corp., 426 F.3d 281, 299 n.26 (5th Cir. 2005); In re Avantel, S.A., 343 F.3d 311, 323 (5th Cir. 2003).

Louisiana's Code of Evidence provides that a "client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client." La. Code Evid. art. 506(B). A communication is "confidential" if it is not intended to be disclosed except "in furtherance of obtaining or rendering professional legal services for the client." Id. art. 506(A)(5).

6

In addition to communications between a lawyer and the client (or representatives of either one), the Louisiana attorney-client privilege covers communications by the client or his lawyer to a lawyer who represents another party concerning a matter of common interest.  Id. art. 506(B)(3).  This provision establishes a "joint defense" privilege for co-defendants, and their counsel, who exchange information in order to formulate a defense in a single proceeding.  In re Succession of Manheim, 734 So.2d 119, 125 (La. App. 4th Cir. 1999).  "The 'joint defense' privilege, sometimes called the 'common interest' or 'community of interest' rule[,] is not an independent privilege, but merely an exception to the general rule that no privilege attaches to communications that are made in the presence of or disclosed to a third party."  U.S. v. Impastato, No. 05-325, 2007 WL 2463310, at *4 n.9 (E.D. La. Aug. 28, 2007) (Duval, J.) (citing In re Auclair, 961 F.2d 65, 69 (5th Cir. 1992)).

Communications with attorneys made for purposes other than giving or obtaining an opinion on the law or legal services are not protected by the attorney-client privilege. La. Code Evid. art. 506(B); Soriano v. Treasure Chest Casino, Inc., No. 95-3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996); In re Shell Oil Ref., 812 F. Supp. at 661; State v. Montgomery, 499 So. 2d 709, 712-13 (La. App. 3d Cir. 1986); accord U.S. v. Bornstein, 977 F.2d 112, 116-17 (4th Cir. 1992) (citing U.S. v. Davis, 636 F.2d 1028,

1043 (5th Cir. 1981)); In re Grand Jury Subpoena, 831 F.2d 225, 227-28 (11th Cir. 1987) (citing Davis, 636 F.2d at 1044).

Moreover, "it is axiomatic that the attorney-client privilege only protects disclosure of confidential communications between the client and his attorney; it does not protect underlying facts." Consolidated. Health Plans, Inc. v. Principal Performance Group, Inc., No. 02-1230, 2003 WL 1193663, at *5 (E.D. La. Mar. 14, 2003) (Knowles, M.J.) (citing U.S. v. Edwards, 39 F. Supp. 2d 716, 735 (M.D. La.1999); Boyd v. St. Paul Fire & Marine Ins. Co., 775 So. 2d 649, 655 (La. App. 3d Cir. 2000)) (quotation omitted); accord Succession of Smith v. Kavanaugh, Pierson & Talley, 513 So. 2d 1138, 1150 (La. 1987).

The work product doctrine is codified by Rule 26(b)(3), which, as of December 1, 2010, provides as follows:

> (A)  Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B)  Protection Against Disclosure.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A), (B).

As to experts like Dr. Weisler in the underlying Barge Litigation, Fed. R. Civ. P. 26(b)(4) (also effective December 1, 2010), provides in pertinent part:

(B)  Trial Preparation Protection for Draft Reports or Disclosures.  Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded. (C)  Trial Preparation Protection for Communications Between a Party's Attorney and Expert Witness.   Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
(i) relate to compensation for the expert's study or testimony;
(ii) identify facts or data that the party's expert considered in forming the opinions to be expressed; or
(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Although the foregoing rules concerning expert draft reports and communications did not become effective until shortly after the hearing on the instant motion, the order of the United States Supreme Court enacting them provided that they "shall govern . . . insofar as just and practicable, all proceedings then pending" as of their effective date. U.S. Supreme Court, Order Amending Federal Rules of Civil Procedure (Apr. 28, 2010).[1]

---

[1]http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/PendingRules/ ProposedSupCt1210.aspx (follow "Supreme Court Orders and Transmittal Letters" hyperlink) (last visited Feb. 7, 2011).

I see no reason why these amendments, which are particularly useful in illuminating the instant dispute, cannot be justly and practicably applied in this matter.

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  United States v. Nobles, 422 U.S. 225, 238-39 (1975).  However,

> the work product doctrine does not protect from disclosure everything that a party or its agent knows. . . .  By its clear language, the rule "only protects 'documents and tangible things' produced by or for an attorney preparing for litigation and . . . it does not protect [against] the disclosure of underlying relevant facts."  Blockbuster Entertainment v. McComb Video, 145 F.R.D. 402, 403-04 (M.D. La.1992) (emphasis added) (citation omitted); accord Bonneau v. F & S Marine, Inc., No. 09-3336, 2010 WL 1254552, at *2 (E.D. La. Mar. 25, 2010) (Knowles, M.J.) (citing Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981)); Bross v. Chevron U.S.A. Inc., No. 06-1523, 2009 WL 854446, at *5 (W.D. La. Mar. 25, 2009) (Methvin, M.J.) (citing 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2026 (2d ed. 2007) (hereafter "Wright & Miller"); Freeport-McMoran Sulphur, LLC v. Mike Millen Energy Equip. Resource, Inc., No. 03-1496, 2004 WL 1299042, at *5 (E.D. La. June 3, 2004) (Roby, M.J.) (citing Upjohn Co., 449 U.S. at 395-96).
>
> Nonetheless, when a party is ordered to produce its work product because the discovering party has made the showing mandated by Rule 26(b)(3)(A)(i) and (ii), Rule 26(b)(3)(B) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B) (emphasis added).  Thus, tangible materials that contain the mental impressions, conclusions, opinions or legal theories of a party's attorney or representative, otherwise known as "opinion work product," are afforded a high degree of protection.  Bross, 2009 WL 854446, at *5; Sec. & Exch. Comm'n v. Brady, 238 F.R.D. 429, 442 (N.D. Tex. 2006) (citing Dunn v. State Farm Fire & Cas. Co., 927 F.2d

869, 875 (5th Cir. 1991); <u>In re Int'l Sys. & Controls Corp. Sec. Litig.</u>, 693 F.2d 1235, 1240 (5th Cir. 1982)) (additional citations omitted).

<u>In re Katrina Canal Breaches Consolidated. Litig.</u>, No. 05-4182, 2010 WL 2522968, at *1 (E.D. La. June 14, 2010) (Duval, J.). Opinion work product generally includes "'such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses.'" <u>Frazier v. Se. Pa. Transp. Auth.</u>, 161 F.R.D. 309, 318 (E.D. Pa. 1995) (quoting <u>Sporck v. Peil</u>, 759 F.2d 312, 316 (3d Cir. 1985)).

Materials that are prepared in anticipation of litigation or for trial in one case (here, the Barge Litigation) do <u>not</u> lose their protected character simply because they are sought in another case, as long as the materials were prepared by or for a party to the subsequent litigation (here, the Weisler lawsuit). <u>Fed. Trade Comm'n v. Grolier, Inc.</u>, 462 U.S. 19, 25 (1983); <u>In re Grand Jury Proceedings</u>, 43 F.3d 966, 971 (5th Cir. 1994); <u>So. Scrap Mat'l Co. v. Fleming</u>, No. 01-2554, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003) (Knowles, M.J.).

On the other hand, both privileged and work product or trial preparation materials may lose their protected character when "at issue" waiver occurs. "Under Louisiana law, a party waives the attorney-client privilege when he pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication in order to prevail. Consequently, he places the communication in issue and waives the privilege

11

as to communications regarding the same subject under his control."  <u>Consolidated.</u>
<u>Health Plans, Inc.</u>, 2003 WL 1193663, at *6 (citing <u>Conoco, Inc. v. Boh Bros. Constr.</u>
<u>Co.</u>, 191 F.R.D. 107, 110 (W.D. La.1998) (Trimble, J.); <u>Dixie Mill Supply Co. v. Cont'l</u>
<u>Cas. Co.</u>, 168 F.R.D. 554, 555-56 (E.D. La. 1996) (Wilkinson, M.J.); <u>Succession of</u>
<u>Smith</u>, 513 So. 2d at 1145; <u>Stumpf v. Stumpf</u>, 613 So. 2d 683, 685 (La. App. 5th Cir.
1993); <u>Merhige v. Gubbles</u>, 657 So. 2d 1098, 1101 (La. App. 4th Cir. 1995)).

"A litigant's pleading of a claim or defense to which his attorney-client
communications are relevant does not by such pleading alone waive his attorney-client
privilege." <u>Succession of Smith</u>, 513 So. 2d at 1141; <u>accord</u> <u>Rhone-Poulenc Rorer Inc.</u>
<u>v. Home Indem. Co.</u>, 32 F.3d 851, 863 (3d Cir. 1994) (citing traditional principles of
attorney-client privilege and holding that attorney advice "is not in issue merely because
it is relevant, and does not necessarily become an issue merely because the attorney's
advice might affect the client's state of mind in a relevant manner").  Thus, "placing at
issue" waiver does not depend upon the relevance of the privileged communications or
on the adversary's need, no matter how strong, for the privileged matters.  <u>Stumpf v.</u>
<u>Stumpf</u>, 613 So. 2d 683, 685 (La. App. 5th Cir. 1993) (citing <u>Succession of Smith</u>, 513
So. 2d 1146).  Instead, this kind of waiver occurs only when the party waiving the
privilege has "'committed himself to a course of action that will require the disclosure
of a privileged communication.'" <u>Id.</u> (quoting <u>Succession of Smith</u>, 513 So. 2d at 1146).

12

A waiver must be founded on an affirmative act by the privilege holder that creates some further detriment to the truth-seeking process in addition to that already taken into account in the creation of the privilege itself.  <u>Succession of Smith</u>, 513 So. 2d at 1143 (citations omitted).

In <u>Succession of Smith</u>, the Louisiana Supreme Court ratified the concept of "at issue" waiver because of the unfairness that would arise from permitting a client to insist on the privilege when he intends to use privileged information at trial.  <u>See generally</u> <u>id.</u> at 1143-45.  However, the Court rejected an overly broad formulation of "at issue" waiver, adopted by some courts, which premises waiver on the relevance of the privileged information to the privilege-holder's opponent and on the opponent's vital need for the material.  <u>Id.</u> at 1145-46.  Waiver occurs only when the privilege-holder "will be <u>forced inevitably to draw upon a privileged communication</u> at trial in order to prevail."  <u>Id.</u> at 1145 (emphasis added).  The focus in the instant case, then, must be on <u>defendants'</u> intended use of the protected communications, <u>i.e.</u>, on "whether the privilege holder[s] ha[ve] committed [themselves] to a course of action that will require the disclosure of a privileged communication."  <u>Id.</u> at 1146.

Like the attorney-client privilege, work product protection can be waived by placing protected materials at issue.  <u>In re Stone Energy Corp.</u>, No. 05-2088, 2008 WL 4868086, at *4-5 (W.D. La. Nov. 4, 2008) (Melancon, J.); <u>Liberty Mut. Ins. Co. v.</u>

Tedford, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) (citing Cincinnati Ins. Co. v.

Zurich Ins. Co., 198 F.R.D. 81 (W.D.N.C. 2000)); Trestman v. Axis Surplus Ins. Co., No.

06-11400, 2008 WL 1930540, at *3 (E.D. La. Apr. 29, 2008) (Knowles, M.J.) (citing

Conoco, Inc., 191 F.R.D. at 110); Estate of Manship v. U.S., 236 F.R.D. 291, 296 (M.D.

La. Apr. 13, 2006) (Noland, M.J.), vacated in part on reconsideration on other grounds,

237 F.R.D. 141 (M.D. La. June 8, 2006).

In summary, when privileged matter has been placed at issue and when work

product is a basis for a claim or defense, they are not protected from discovery or

disclosure because the protection is implicitly waived.  See generally Edna Selan Epstein,

The Attorney-Client Privilege and the Work Product Doctrine 625-27, 628-29, 639-40

(ABA Section of Litig. 4th ed. 2001).

Parties resisting discovery by asserting any privilege or work product protection,

in this instance the Weisler Defendants, ordinarily bear an evidentiary burden to

substantiate their privilege claim and cannot rely merely on a blanket assertion of

privilege.  High Tech Commc'ns, Inc. v. Panasonic Co., No. 94-1447, 1995 WL 45847,

at * 1 (E.D. La. Feb. 2, 1995) (Vance, J.) (citing Hodges, Grant & Kaufman v. U.S., 768

F.2d 719, 721 (5th Cir. 1985)); In re Shell Oil Ref., 812 F. Supp. 658, 661 (E.D. La.

1993) (Mentz, J.).  "This is usually done through supporting affidavits from individuals

with personal knowledge of the relevant facts, exhibits attached to the motion and briefs,

14

discovery responses, pleadings and other undisputed facts."  P. Rice, <u>Attorney-Client</u>

<u>Privilege in the United States</u> § 11:10 at 977-80 (Lawyers Cooperative 1993).  Similarly,

the discovering party asserting "at issue" waiver bears the evidentiary burden of proving

the waiver.  <u>Taita Chem. Co. v. Westlake Styrene Corp.</u>, 246 F.3d 377, 388 (5th Cir.

2001) (citing <u>Fed. Deposit Ins. Corp. v. Duffy</u>, 47 F.3d 146, 150 (5th Cir. 1995); <u>Tate v.</u>

<u>Charles Aguillard Ins. & Real Estate, Inc.</u>, 508 So. 2d 1371, 1373 (La. 1987)).

Occasionally, however, as in the instant case, it is possible to determine the protected or

waived nature of the materials from the content and context of their four corners upon

in camera review.

III.   <u>EVALUATION OF THE MATERIALS</u>

The materials in dispute that have been produced to me for in camera review can

be divided essentially into two categories.  The first category is all <u>un</u>redacted materials

that the Weisler Defendants have already produced, subject to the previously entered

protective order:  Bates Nos. BargePSLCWeisSeym000001-001737, 1740-1771, 1776-

1779, 181-1821, 1823, 1834-1856, 1870-2904, 2910-3010, 3017-3194 and 3197-3672.[2]

With the two exceptions noted below, the motion is (a) granted in part, in that I find that

the production of these materials, subject to the interim protective order, is both sufficient

---

[2]The Weisler Defendants noted in their First Amended Response to Request for Production No. 1 that Bates Nos. 2074-2086 were not produced in either category of documents because defendants determined, after the documents had been numbered, that they are not responsive to plaintiff's Request for Production No. 1.

and appropriate, and (b) denied in part to whatever extent, if any, that the motion may seek additional protective measures.  A few of these documents are neither privileged nor work product.[3]  However, the majority of them clearly are subject to work product protection within the context of the Barge Litigation, but the protection must be deemed waived within the context of the Weisler litigation because they are "at issue" and are essential to the parties' claims and defenses in the Weisler litigation.

I can attest, based upon my in camera review of these materials, to the extreme burden and difficulty of culling through them and attempting to separate and differentiate between what might be protected and what might not.  The expense to the litigants (not to mention the burden on the court) of imposing upon them the obligation to remove or redact from this data base those items as to which some sort of protection might, in other circumstances, be warranted would far outweigh the benefits to the Weisler lawsuit, which by itself is <u>not</u> a complex case and does not involve anything approaching a staggering amount in controversy.  In this context, the stipulation reached by the parties, and implemented by the court through the previously entered protective order, was a

---

[3]For example, I cannot conceive how or why the biographical sketch, curriculum vitae or resumes of Drs. Weisler or Townsend, Bates Nos. 3581-3628, 3659-3672, or unsigned, unexecuted, blank medical information release authorization forms, Bates Nos. 3216-3218, are privileged, work product or otherwise proprietary or confidential.  In my view, however, it does no harm and results in no prejudice to include these innocuous materials within the strictures of the existing protective order, particularly given the extreme burden to both the parties and the court of sifting through and segregating these voluminous materials.

reasonable and sensible solution.  The very nature and scope of the contractual relationship at issue in the Weisler litigation makes the kinds of communications about and between the lawyers and experts in the underlying Barge Litigation both subject to the protections from discovery contemplated by Fed. R. Civ. P. 26(b)(3) as to the underlying Barge Litigation and so necessary to the truth-seeking process in the oral contract fee dispute that the need for its discovery in the Weisler litigation based upon "at issue" waiver, subject to its protection from discovery in the Barge Litigation, is obvious.

For example, Dr. Weisler's draft expert reports, Bates Nos. 3444-3543, are clearly protected from disclosure in the underlying Barge Litigation.  Fed. R. Civ. P. 26(b)(4)(B).  On the other hand, the numerous communications between the Weisler Defendants/Barge Litigation plaintiffs' lawyers and Drs. Weisler, Townsend, Hayes and others concern some protected exchanges and some that are unprotected because they relate to compensation or facts or data that the expert considered in forming his or her opinions.  Fed. R. Civ. P. 26(b)(4)(C).  See, e.g., Bates Nos. 1421-1422, 1504-1546. Sometimes, both protected and unprotected material is contained in the same e-mail or runs through a complex thread of e-mails.  See, e.g., Bates Nos. 1397-1404, 1723-1751. Similarly, the "medical plan," Bates Nos. 3545-3547, and numerous other evaluation and planning notes and memoranda of counsel included in these materials are core work

product in the underlying Barge Litigation, reflecting the mental impressions or legal theories of lawyers as to <u>those</u> cases.  <u>See, e.g.</u>, Bates Nos. 1376-1396, 2074-2086.[4]  Yet, all of these materials are essential to the claims and defenses fundamentally at issue in the Weisler litigation, where the parameters of the parties' oral contract, the scope of each side's obligations, and the extent, quality and value of Dr. Weisler's work as an expert, among other issues, are all involved.

The unredacted documents have already been produced to plaintiff, subject to the interim protective order already in place in the Weisler Litigation.  The protective order permits Dr. Weisler, his counsel of record, experts retained for this case and Drs. Townsend, Hayes, Howard Osofosky, Joy Osofosky and Griffin to use the materials for purposes of the Weisler Litigation only.  Record Doc. No. 20124.  That production, subject to the existing protective order continued in force, should be sufficient to satisfy plaintiff's need for the requested information in connection with his specific claims, while balancing the Weisler Defendants' interest in maintaining the confidentiality of these materials in connection with the underlying Barge Litigation.  With the two exceptions noted in the following paragraphs, I will order neither any further production

---

[4]The fact that <u>some</u> of the language used by counsel in these materials is obnoxious and offensive does not mean that these communications are stripped of their privileged or work product nature. It means that counsel acted unprofessionally in these instances, an unfortunate characteristic of the uninhibited, spontaneous and informal communication method offered by e-mail. <u>See, e.g.</u>, Bates Nos. 1788, 1794, 1811, 1812, 1815, 1816. Lawyers especially should be more careful in their use of e-mail for professional purposes.

of documents in this category nor any additional protective order concerning these documents.

The two exceptions are as follows:  First, this voluminous set of materials consists of the unredacted materials as to which defendants asserted privilege and work product protection, but which they nevertheless agreed to produce to plaintiff, subject to the protective order limiting their use to certain persons and purposes of the Weisler Litigation only.  These were supposed to include only materials dated <u>before</u> October 8, 2008, as to which defendants claimed protection from discovery on privilege or work product grounds arising from the Barge Litigation (not the Weisler fee suit).  For the most part, that is what they are.

However, it appears from my in camera review that some small portion of materials in this first category was inadvertently produced.  Such apparently inadvertently produced material either falls outside of the dates agreed upon by the parties for the unredacted production, or is directly related to Dr. Weisler's claim in the instant litigation, rather than to the Barge Litigation.  For example, Bates No. 1405 is clearly an attorney-client privileged communication dated July 22, 2009, from Weisler Defendant Brian Gilbert to his attorney, who represented Gilbert in the instant litigation at that time concerning Dr. Weisler's claim against him, but was <u>not</u> counsel in the Barge Litigation itself.  I find that the clawback and non-waiver provisions of Fed. R. Evid.

502(b) and Fed. R. Civ. P. 26(b)(5)(B) and the parties' stipulated protective order of October 22, 2010, Record Doc. No. 20102, apply to this document.  While no other material of this sort is blatantly obvious to me, I cannot find with certainty that the remaining materials are entirely free of any similar kinds of inadvertent disclosure. Accordingly, **IT IS ORDERED** that, no later than **February 23, 2011**, defendants must notify plaintiff's counsel in writing, specifically identifying by Bates No. description any other previously produced material whose return, sequestration or destruction they seek. Thereafter, the procedures of Fed. R. Civ. P. 26(b)(5)(B) apply and plaintiff's counsel must file a motion no later than **March 4, 2011**, in compliance with Local Rules 5.6 and 7.2, to "present the information to the court under seal for determination of the claim."

Second, the materials bearing Bates Nos. 442, 443 and 444, which were provided to me in this first category of materials, are in fact redacted.  I cannot locate an unredacted version of these three documents in the materials provided to me in camera to determine whether unredacted versions should be produced to plaintiff, subject to the protective order.  Accordingly, **IT IS ORDERED** that, no later than **February 23, 2011**, defendants must produce to me for in camera review hard copies of the unredacted materials bearing Bates Nos. 442, 443 and 444, so that a further order concerning them may be entered.

The second category of responsive documents produced to me for in camera review is much smaller in volume and contains those materials that the Weisler Defendants produced to plaintiff in redacted form because, as to these documents, defendants claim the protection of the attorney-client privilege, work product doctrine and/or joint defense privilege within the context of the Weisler Litigation itself. These documents are Bates Nos. 1738-1739, 1772-1775, 1780-1817, 1822, 1824-1833, 1857-1869, 2905-2909, 3011-3016 and 3195-3196. Both redacted (as produced) and unredacted versions of these materials have been provided to me in camera for comparison purposes.

Comparing the unredacted documents with the redacted documents in camera and trying to differentiate between what is protected by privilege or work product doctrine, and what is merely factual, or what has been waived because it is "at issue" or must be relied upon in connection with the claims and defenses in the Weisler litigation, is extremely difficult. The difficulties are caused in part because the Weisler Defendants are attorneys currently representing themselves and in part because of the threaded, multiple-recipient and informal nature of e-mail communications. During the relevant time period, the Weisler Defendants were acting both as attorneys representing individual plaintiffs and the Barge Plaintiffs' Subgroup Litigation Committee in the Barge Litigation and as the actual participants in the alleged contractual relationship (i.e, parties

to the alleged oral contract) that is in dispute in this case. They were also acting as attorneys representing themselves in the initial stages of their dispute with Dr. Weisler and in anticipation of a breach of contract lawsuit by him against them. Thus, I have attempted to differentiate between what they agreed to or otherwise did as parties to the contract, i.e., that which is at issue, as opposed to their work product or legal theories or impressions of the potential lawsuit in which they now find themselves involved with Dr. Weisler.

Some of the materials submitted for in camera review on their face do not by themselves establish that the requested information is privileged in any way. Some of what the Weisler Defendants communicated to each other, as actors involved in the contractual dispute with Dr. Weisler, is their action, pure factual matter or merely the recitation of facts and therefore is not protected from discovery. On the other hand, some of the materials on their face (even in the absence of extraneous supporting evidence) are clearly privileged or protected work product because they reveal the communications by or between the lawyer/defendants for purposes of giving or obtaining legal advice from each other or their mental impressions, legal theories and strategies of the attorneys, in anticipation of or related directly to Dr. Weisler's current lawsuit against them and/or to the Barge Litigation.

Applying the general principles of law described above to this extremely difficult situation, I have reviewed the documents in camera.  I find that some of the redacted documents contain purely factual information relevant to the claims and defenses of the parties and should be produced.  Nonetheless, I will permit redaction of those parts of the documents that contain privileged communications or pure core work product, as Fed. R. Civ. P. 26(b)(3) and the case law instruct.

Accordingly, **IT IS ORDERED** that defendants must produce to plaintiff's counsel, no later than **February 23, 2011**, the following portions of previously redacted documents, <u>subject to the protective order already in place</u>.  Record Doc. No. 20124.

| <u>Bates No.</u> | <u>Description of Document to Be Produced</u> |
|---|---|
| 1772 | In the paragraph numbered 2, the five-word phrase beginning with "Chet" and ending with "appearance" |
| 1773 | (a) The entire paragraph numbered 8; (b) In the last, unnumbered paragraph, the second sentence (beginning with "The New" and ending with "expenses.") |
| 1774 | The entire first paragraph (beginning with "The" and ending with "difficulties.") |
| 1797 | In the first paragraph of the e-mail from Richard Seymour dated August 28, 2008 at 10:32 a.m., the second and third sentences (beginning with "By" and ending with "worse.") |
| 1822 | The first sentence of the e-mail from Shawn Khorrami dated September 3, 2008 at 7:27 p.m. (beginning with "Folks," and ending with "call.") |

23

1824 In the e-mail from Richard T. Seymour dated September 3, 2008 at 15:14:24, (a) The first three paragraphs (beginning with "Rick" and ending with "time."); (b) In the last paragraph of the e-mail on the same page, the first sentence and the first clause of the second sentence (beginning with "Our" and ending with "others,")

1826 (a) The first five paragraphs on the page (beginning with "I do" and ending with "problem."), **except** the last sentence of the fifth paragraph (beginning with "Alan" and ending with "us."); (b) In the sixth paragraph, the first sentence (beginning with "Weisler" and ending with "point.")  (c) In the seventh paragraph, the first sentence and the first four words of the second sentence (beginning with "Weisler" and ending with "because of"); (d) The last sentence of the seventh paragraph and the entire eighth paragraph (beginning with "Now" and ending with "somewhere."), **except** the last sentence of the eighth paragraph (beginning with "If" and ending with "litigation."); (e) In the e-mail from fishkat@cox.net dated September 3, 2008 at 4:21 p.m., the first four sentences (beginning with "The letter" and ending with "have.")

1827 Under the heading "Richard T. Seymour . . . wrote:," the first three full paragraphs (beginning with "Rick" and ending with "their time.")

1828 In the second paragraph, the first sentence and the first clause of the second sentence (beginning with "Our" and ending with "others,")

1829 (a) The entire e-mail from Richard T. Seymour dated September 4, 2008 at 13:24:13; (b) The four paragraphs under the heading "Richard T. Seymour . . . wrote:," (beginning with "I do" and ending with "experts.")

1830 The first paragraph (beginning with "Weisler" and ending with "problem."), **except** the last sentence of the first paragraph (beginning with "Alan" and ending with "us."); (b) The first sentence of the second paragraph (beginning with "Weisler" and ending with "point."); (c) In the third paragraph, the first sentence and the first four words of the second sentence (beginning with "Weisler" and ending with "because of"); (d) The last sentence of the third paragraph and the entire fourth paragraph (beginning with "Now" and ending with "somewhere."), **except** the last sentence of the fourth paragraph (beginning with "If" and ending with

"litigation."); (e) In the e-mail from fishkat@cox.net dated September 3, 2008 at 4:21 p.m., the first four sentences (beginning with "The letter" and ending with "have.")

1831    Under the heading "Richard T. Seymour . . . wrote:," the first three full paragraphs (beginning with "Rick" and ending with "their time.")

1832    In the third paragraph, the first sentence and the first clause of the second sentence (beginning with "Our" and ending with "others,")

1858    In the e-mail from Karen Wiedemann dated September 11, 2008 at 10:42:39 a.m., (a) The first sentence and the first clause of the second sentence (beginning with "If" and ending with "paid,"); (b) The third and fourth sentences (beginning with "I am" and ending with "call.")

1860    In the e-mail from Karen Wiedemann dated September 11, 2008 at 11:43 a.m. (the message header is on the previous page, Bates No. 1859), (a) The first sentence and the first clause of the second sentence (beginning with "If" and ending with "paid,"); (b) The third and fourth sentences (beginning with "I am" and ending with "call.")

1861    Under the heading "Original Message from 'Brian A. Gilbert,'" the first sentence (beginning with "Any" and ending with "hats.")

1862    In the e-mail from Karen Wiedemann dated September 11, 2008 at 11:43 a.m., (a) The first sentence and the first clause of the second sentence (beginning with "If" and ending with "paid,"); (b) The third and fourth sentences (beginning with "I am" and ending with "call.")

1864    (a) In the e-mail from rick@rickseymourlaw.net on September 13, 2008 at 18:14:14, the first paragraph (beginning with "Do" and ending with "payments?"); (b) In the e-mail from karenwiedemann@bellsouth.net dated September 13, 2008 at 17:26:34, the first sentence (beginning with "Come" and ending with "serious?"; and (c) The third sentence (beginning with "As" and ending with "people.")

1865    In the e-mail from Karen Wiedemann dated September 11, 2008 at 11:43 a.m., (a) The first sentence and the first clause of the second sentence

(beginning with "If" and ending with "paid,"); (b) The third and fourth sentences (beginning with "I am" and ending with "call.")

1866        In the e-mail from Brian A. Gilbert on September 13, 2008 at 11:32:20 [neither a.m. nor p.m. is specified], the first sentence (beginning with "Any" and ending with "hats.")

2905        In the e-mail from Richard T. Seymour dated September 23, 2008 at 8:57 p.m., the following words in the first sentence: "based on" and the last six words of the sentence (beginning with "our" and ending with "Weisler.")

In all other respects, I find that the redactions appropriately protect the core work product mental processes of lawyers acting as such, rather than as mere participants in the disputed contractual transaction, and/or privileged communications for the purpose of giving or obtaining legal advice. Thus, defendants' motion for a protective order is granted in part in that the redacted portions of these materials not listed above need not be produced.

New Orleans, Louisiana, this _____9th_____ day of February, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. STANWOOD R. DUVAL, JR.**

26