U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   FEB - 2 2011

LORETTA G. WHYTE
CLERK

United States Court of Appeals
Fifth Circuit

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**F I L E D**

December 16, 2010

Lyle W. Cayce
Clerk

No. 09-31156

D.C. Docket No. 2:05-CV-4182

IN RE: KATRINA CANAL BREACHES LITIGATION

------------------------------------------------------------------------

PLAINTIFFS CLASS,

Plaintiffs - Appellees

v.

BOARD OF COMMISSIONERS OF THE ORLEANS PARISH LEVEE
DISTRICT; ORLEANS LEVEE DISTRICT; BOARD OF COMMISSIONERS
OF THE LAKE BORGNE BASIN LEVEE DISTRICT; LAKE BORGNE
BASIN LEVEE DISTRICT; BOARD OF COMMISSIONERS OF THE EAST
JEFFERSON LEVEE DISTRICT; EAST JEFFERSON LEVEE DISTRICT;
ST PAUL FIRE & MARINE INSURANCE COMPANY

Defendants - Appellees

v.

MARY BRINKMEYER; MICHELLE LEBLANC; THOMAS C. STUART,

Interested Parties - Appellants

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, GARWOOD, and DAVIS,  Circuit Judges.

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No._____

## J U D G M E N T

   This cause was considered on the record on appeal and was argued by
counsel.

It is ordered and adjudged that the judgment of the District Court is reversed.

IT IS FURTHER ORDERED that appellees pay to appellants the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE:   FEB 0 1 2011

A True Copy
Attest

FEB 0 1 2011

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

# F I L E D

December 16, 2010

No. 09-31156

Lyle W. Cayce
Clerk

IN RE: KATRINA CANAL BREACHES LITIGATION

-----------------------------------

PLAINTIFFS CLASS,

Plaintiffs - Appellees

v.

BOARD OF COMMISSIONERS OF THE ORLEANS PARISH LEVEE
DISTRICT; ORLEANS LEVEE DISTRICT; BOARD OF COMMISSIONERS
OF THE LAKE BORGNE BASIN LEVEE DISTRICT; LAKE BORGNE
BASIN LEVEE DISTRICT; BOARD OF COMMISSIONERS OF THE EAST
JEFFERSON LEVEE DISTRICT; EAST JEFFERSON LEVEE DISTRICT;
ST PAUL FIRE & MARINE INSURANCE COMPANY,

Defendants - Appellees

v.

MARY BRINKMEYER; MICHELLE LEBLANC; THOMAS C. STUART,

Interested Parties - Appellants

-----------------------------------

consolidated w/
No. 09-31188

IN RE: KATRINA CANAL BREACHES LITIGATION

No. 09-31156
No. 09-31188

------------------------------------

LESLIE SIMS, JR.; ROSA MARQUEZ; FLOYD AARON III; HASSAR
SLEEM; MADELINE BERTUCCI; ET AL,

Plaintiffs - Appellants

vs.

BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT;
SEWERAGE AND WATER BOARD OF NEW ORLEANS; EAST
JEFFERSON LEVEE DISTRICT; ORLEANS LEVEE DISTRICT; UNITED
STATES ARMY CORPS OF ENGINEERS; ST. PAUL FIRE & MARINE
INSURANCE COMPANY,

Defendants - Appellees

------------------------------------

VERA D. RICHARD; ET AL,

Plaintiffs - Appellants

vs.

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

Defendants - Appellees

------------------------------------

ELIZABETH H. DEPASS; ET AL,

Plaintiffs - Appellants

vs.

BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT;
SEWERAGE AND WATER BOARD OF NEW ORLEANS; EAST
JEFFERSON LEVEE DISTRICT; ORLEANS LEVEE DISTRICT; UNITED
STATES ARMY CORPS OF ENGINEERS; ST. PAUL FIRE & MARINE
INSURANCE COMPANY,

Defendants - Appellees

2

No. 09-31156
No. 09-31188

------------------------------------

MARIE ADAMS; ET AL,

Plaintiffs - Appellants

vs.

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

Defendants - Appellees

------------------------------------

LINDA C. BOURGEOIS; ET AL,

Plaintiffs - Appellants

vs

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

Defendants - Appellees

------------------------------------

KEITH C. FERDINAND, M.D., A.P.M.C.; ET AL,

Plaintiffs - Appellants

vs.

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

Defendants - Appellees

------------------------------------

MARY CHRISTOPHE; ET AL,

Plaintiffs - Appellants

vs.

3

No. 09-31156
No. 09-31188

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

                              Defendants - Appellees

----------------------------------

SUSAN WILLIAMS; ET AL,

                              Plaintiffs - Appellants

vs.

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

                              Defendants - Appellees

----------------------------------

RHEALYNDA PORTER; ET AL,

                              Plaintiffs - Appellants

vs.

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

                              Defendants - Appellees

----------------------------------

XIOMARA AUGUSTINE, doing business as Bright Minds Academy; ET AL,

                              Plaintiffs - Appellants

v.

ORLEANS LEVEE DISTRICT; UNITED STATES ARMY CORPS OF
ENGINEERS,

                              Defendants - Appellees

No. 09-31156
No. 09-31188

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before KING, GARWOOD, and DAVIS, Circuit Judges.

KING, Circuit Judge:

Appellants, objecting members of a proposed settlement class of plaintiffs damaged or injured by Hurricanes Katrina or Rita, seek review of the district court's certification of a limited fund mandatory class under Federal Rule of Civil Procedure 23(b)(1)(B) and its approval of a final class settlement. We hold that the Supreme Court's opinion in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), requires decertification of the mandatory class because the settlement fails to provide a procedure for distribution of the settlement fund that treats class claimants equitably amongst themselves. We further hold that the settlement is not fair, reasonable and adequate because its proponents fail to show that the class members will receive some benefit in exchange for the divestment of their due process rights in a mandatory class settlement. We therefore reverse.

## I.  BACKGROUND

In the wake of Hurricanes Katrina and Rita, a plethora of lawsuits were filed against public and private entities by residents of the greater New Orleans area who were harmed by the catastrophic flooding caused by levee and floodwall failures. These complaints were consolidated in the District Court for the Eastern District of Louisiana as *In re Katrina Canal Breaches Consolidated*

No. 09-31156
No. 09-31188

*Litigation*, and divided for case management purposes into several categories. This appeal involves the "Levee" and "MRGO" categories.[1]

Following the dismissals of various defendants, the Levee and MRGO plaintiffs sought certification of a limited fund mandatory settlement class under Rule 23(b)(1)(B) and concomitant approval of a settlement with the defendant levee districts, their respective Boards of Commissioners, and their insurer, St. Paul Fire and Marine Insurance Company.[2]  The putative class consisted of

> all Persons (a) who at the time of Hurricane Katrina and/or Hurricane Rita (i) were located, present or residing in the Hurricane Affected Geographic Area [Jefferson, Orleans, Plaquemine, and St. Bernard Parishes], or (ii) owned, leased, possessed, used or otherwise had any interest in homes, places of business or other immovable or movable property on or in the Hurricane Affected Geographic Area, and (b) who incurred any losses, damages and/or injuries arising from, in any manner related to, or connected in any way with Hurricane Katrina and/or Hurricane Rita and any alleged Levee Failures and/or waters that originated from, over, under or through the Levees under the authority and/or control of all or any of the Levee Defendants.

The class was further divided into three geographical subclasses corresponding to the particular levee defendant that allegedly caused its damages. A claimant could be a member of more than one subclass by virtue of some overlap among these three areas.

---

[1] The Levee litigation concerns breaches of floodwalls around the outfall canals in and around New Orleans.  The settling levee districts and Boards of Commissioners are the only remaining defendants in the Levee action.

The MRGO litigation concerns the various failures and overtopping of the levees and floodwalls along the Mississippi River Gulf Outlet, the east bank of the Inner Harbor Navigational Canal, and the area bordering New Orleans East.  The MRGO action continues to proceed in the district court against the U.S. Army Corps of Engineers and Washington Group International, Inc., which are not parties to this settlement.

[2] The three levee district defendants are the Orleans Levee District, the Lake Borgne Basin Levee District, and the East Jefferson Levee District.

No. 09-31156
No. 09-31188

Under the relevant terms of the settlement, the class would receive roughly $21 million—representing the limits of the available insurance proceeds, plus interest—in exchange for releasing all claims against the settling defendants related to the hurricanes and/or levee failures. The levee districts themselves would not contribute to the settlement. The settlement fund would be administered and distributed by a special master under the court's supervision. Finally, class counsel would waive their attorneys' fees, while retaining the right to seek "enhanced costs."

The district court issued a preliminary order of certification for settlement purposes, to which Appellants—two groups of dissenting class members—objected. First, Appellants argued that the proposed class did not qualify as a Rule 23(b)(1)(B) class under the standards established by the Supreme Court in *Ortiz v. Fibreboard Corp.* Second, Appellants averred that certifying a mandatory settlement class in a mass tort damages action violates due process. Finally, Appellants opposed the settlement on the grounds that the content of the notice was deficient and misleading, and that the settlement itself provided no benefit to the class while allowing counsel to seek an enhancement of costs.

Following the subsequent class certification and settlement fairness hearing, the district court certified the class and approved the settlement. In certifying the class, the court first determined that the Rule 23(a) prerequisites for all class actions had been met.[3] The court next analyzed whether the class complied with the "stringent standards" for 23(b)(1)(B) classes set by the

---

[3] These prerequisites are numerosity, commonality of issues, typicality of the class representatives' claims in relation to the class, and the adequacy of the representatives and their counsel to represent the class. *See* FED. R. CIV. P. 23(a); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 n.10 (5th Cir. 2007). The parties do not dispute that these requirements are met in this case.

No. 09-31156
No. 09-31188

Supreme Court in *Ortiz*. Noting that the Supreme Court had explicitly refrained from deciding the constitutionality of a mandatory mass tort class certification, the district court held that certification under Rule 23(b)(1)(B) was proper because all three *Ortiz* requirements—a fund demonstrably insufficient to satisfy all claims, devotion of that fund to the payment of claims, and intra-class equity in distribution of the fund—had been met. Finally, the district court approved the settlement based on its determination that notice was reasonable and that the settlement was fair, adequate, and reasonable under this circuit's six-factor test in *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983): the court found no evidence of fraud or collusion behind the settlement; litigation would be immensely complex; the cases had been proceeding for nearly four years; success on the merits would be difficult; plaintiffs were settling for the maximum amount they could win through litigation; and class counsel and class representatives all agreed to the settlement.

In this consolidated appeal, Appellants renew their challenges to the district court's class certification and approval of the settlement.

## II.  DISCUSSION

### A.  Certification of the Class Under Rule 23(b)(1)(B)

We review a district court's decision to certify a class for abuse of discretion. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007) (citation omitted). A district court abuses its discretion, inter alia, when it "rests its legal analysis on an erroneous understanding of governing law." *Id.* (citation omitted).

In addition to satisfying the prerequisites of Rule 23(a), a class must also meet the requirements of one of the subdivisions of Rule 23(b) in order to be certified. At issue here is subdivision (b)(1)(B), which provides for certification of a mandatory class, whose members have no right to opt out, when

8

No. 09-31156
No. 09-31188

> prosecuting separate actions by or against individual class members
> would create a risk of . . . adjudications with respect to individual
> class members that, as a practical matter, would be dispositive of
> the interests of the other members not parties to the individual
> adjudications or would substantially impair or impede their ability
> to protect their interests . . . .

FED. R. CIV. P. 23(b)(1)(B). A "limited fund" action, which aggregates numerous claims against a fund insufficient to satisfy them all, is one type of class action traditionally encompassed by Rule 23(b)(1)(B). *Ortiz*, 527 U.S. at 834; 2 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 4.9 at 33–34 (4th ed. 2002) (hereinafter "NEWBERG").

The nub of this case, as it was in *Ortiz*, is the certification of the class under Rule 23(b)(1)(B) on a limited fund rationale. We do not decide the general constitutional question, left open in *Ortiz*, whether a mandatory limited fund rationale could—under some circumstances—be applied to a settlement class of tort claimants. 527 U.S. at 864. Such circumstances do not exist here because the settlement does not "seek equity by providing for procedures to resolve the difficult issues of treating . . . differently situated claimants with fairness as among themselves," *id.* at 856, and thereby fails to satisfy one of "the essential premises of mandatory limited fund actions," *id.* at 848.

*Ortiz* involved a large class of asbestos claimants suing a manufacturer, Fibreboard, which had in turn sued its two insurance carriers for funds to pay the claimants. *See id.* at 821–23. Eleventh hour negotiations between class counsel, Fibreboard and the two insurance companies produced a settlement fund of $1.525 billion, funded nearly entirely by the insurance companies and contingent on certification under Rule 23(b)(1)(B) as a mandatory limited fund class. *See id.* at 823–25. The district court certified the class under Rule 23(b)(1)(B), reasoning that, without certification and settlement, the class ran the risk that the insurance companies would prevail against Fibreboard in their

No. 09-31156
No. 09-31188

pending coverage cases, leaving a much smaller fund available to the class. *See id.* at 827–28. We affirmed. *Flanagan v. Ahearn (In re Asbestos Litig.),* 90 F.3d 963 (5th Cir. 1996), *vacated and remanded,* 521 U.S. 1114 (1997). On remand for further consideration in light of *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997), we again affirmed. *Flanagan v. Ahearn (In re Asbestos Litig.),* 134 F.3d 668 (5th Cir. 1998), *reversed by Ortiz,* 527 U.S. 815.

The Supreme Court reversed. The Court expressed "serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale," *Ortiz,* 527 U.S. at 845:

> First, the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent class members.
> . . .
>
> Second, and no less important, mandatory class actions aggregating damages claims implicate the due process "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process," it being "our 'deep-rooted historic tradition that everyone should have his own day in court.' "

*Id.* at 845–46 (quoting *Hansberry v. Lee,* 311 U.S. 32, 40 (1940); *Martin v. Wilks,* 490 U.S. 755, 762 (1989)) (citations omitted).

In light of these concerns, the Court counseled against "adventurous application of Rule 23(b)(1)(B)," *id.* at 845, stressing that a limited construction of the Rule, "stay[ing] close to the historical model . . . avoids serious constitutional concerns raised by the mandatory class resolution of individual legal claims . . . ." *Id.* at 842; *see also* 5 NEWBERG § 17:15 at 339. The Court described this "historical model" of a limited fund as "a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata

10

No. 09-31156
No. 09-31188

distribution." *Ortiz*, 527 U.S. at 841. From its discussion of the historical model, the Court identified three "presumptively necessary" characteristics of a traditional limited fund. *Id.* at 842. Those characteristics are:

(1) "the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims," *id.* at 838;

(2) "the whole of the inadequate fund [is] to be devoted to the overwhelming claims," *id.* at 839; and

(3) "the claimants identified by a common theory of recovery [are] treated equitably among themselves," *id.*

The Court's phrasing and discussion of this third requirement differs noticeably from the other two requirements in that it departs from a strict interpretation of the traditional limited fund. To cleave to the traditional model of a true limited fund, the third element of intra-class equity should require that the class claims be capable of liquidation and pro rata distribution. *See id.* at 841 (describing classic limited fund actions as "present[ing] straightforward models of equitable treatment, with the simple equity of a pro rata distribution providing the required fairness"). However, the Court contemplated that the unattainability of straightforward pro rata distribution would not necessarily disqualify a class action from adhering to the historical model, as long as the settlement otherwise provided for fair distribution amongst the claimants in the class:

> Fair treatment in the older cases was characteristically assured by straightforward pro rata distribution of the limited fund. While equity in such a simple sense is unattainable in a settlement covering present claims not specifically proven, . . . at the least such a settlement must seek equity by providing for procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves.

*Id.* at 855–56 (internal citation omitted).

11

No. 09-31156
No. 09-31188

The settlement proponents argue, and we agree, that this class does not suffer from the particular defects that led the *Ortiz* Court to find the "procedures to resolve the difficult issues" unsatisfactory in that settlement. The Court identified two structural conflicts obstructing the fairness of distributions within that class. The first conflict was between present claimants—whose interest was in generous immediate payments—and future claimants, whose interest was to ensure an ample fund for the future. *Id.* at 856. This type of temporal conflict between present and future classes is not applicable in this case, which involves an identified class that has suffered a presently identifiable harm. The other conflict in *Ortiz* was between class members whose claims accrued before the lapse of the insurance policy providing the bulk of the insurance funds, giving them more valuable rights to the insurance proceeds, and those who were injured after this policy lapsed. *Id.* at 857. The settlement before us avoids this second concern through the creation of sub-classes providing that the funds from one insurance policy providing coverage to a particular levee district will not be available to any class member who does not have a claim against that levee district. Nevertheless, freedom from the particular infirmities identified in *Ortiz* is insufficient to issue a clean bill of health for intra-class equity here.

The class members in this case suffered a wide variety of injuries, ranging from property damage to personal injury and death, and no method is specified for how these different claimants will be treated vis-à-vis each other. The district court acknowledged that fairness of distribution was a significant concern in this settlement. The issue was addressed during the fairness hearing, where the court received an amicus brief, and heard testimony, from Dean Edward Sherman—a class action expert—who suggested the use of grids or matrices to differentiate between the various class members, using factors such as the particular kind of damage suffered—death, personal injury, property

12

No. 09-31156
No. 09-31188

damage—to create, in essence, subclasses of claimants. Sherman suggested that these categories could be further subdivided; for example, by partitioning the category of property damage according to the extent of damage, as measured by the depth of water that caused the damage. While opining that such a method would be fairly inexpensive given the existence of certain data already available to the court, Sherman also stated that, should the administrative costs associated with this differentiation threaten to consume the fund, the court might find that the class would benefit more from a cy pres distribution that was related in some way to the levees, such as levee protection or beautification.

None of these procedures made their way into the settlement agreement. Instead, the settlement provides for the appointment of a special master to "provide to the Court a recommended disposition and protocol with regard to the remaining [settlement fund], and treatment of Claims of Class members." This arrangement simply punts the difficult question of equitable distribution from the court to the special master, without providing any more clarity as to how fairness will be achieved.  The lack of any "procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves," *id.* at 856, leads us to reverse the district court's order certifying this class.  By failing to meet one of the three "essential premises of mandatory limited fund actions" identified by the Supreme Court in *Ortiz, id.* at 848, this settlement class strays too far from the historical model to avoid the Court's constitutional concerns.

## B.  Approval of the Settlement under Rule 23(e)[4]

The objecting class members separately challenge the district court's approval of the class action settlement on the grounds that the settlement does

---

[4] We address Appellants' challenges to the settlement to deal with the possibility that the problem with certification is somehow remedied and the settlement is reinstated.

No. 09-31156
No. 09-31188

not benefit the class, allows counsel to seek an enhancement of actual costs, and provided inadequate and misleading notice to the class members. We review the district court's approval of the settlement for an abuse of discretion. *Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004) (citation omitted).

    1.    *Benefit to the Class*

    Rule 23(e)(2) states that a court may approve a settlement proposal that would bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Six factors guide our review of a decision to approve a class action settlement agreement:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby*, 394 F.3d at 301 (citing *Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). Based on its wealth of experience in Hurricane Katrina litigation and the evidence it received before and during the certification and settlement hearing, the district court found that all six factors weighed in favor of approving the settlement.

    Without quarreling with the district court's findings, we nevertheless conclude that this settlement is not fair, reasonable, and adequate under Rule 23(e) because there has been no demonstration on the record below that the settlement will benefit the class in any way, either through the disbursement of individual checks or through a cy pres distribution. "The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." 4 NEWBERG § 11:46 at 133; *see also id.* at 142–43 ("Often, the settlement benefits are somewhat speculative in nature and capable of only approximate valuation. Nevertheless,

No. 09-31156
No. 09-31188

the settlement may be approved *if it is clear that it secures some adequate advantage for the class.*" (emphasis added)); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 221 (D. Me. 2003) (holding that "a settlement is not fair where all the cash goes to expenses and lawyers, and the [class] members receive only discounts of dubious value," even when the lawsuit itself has dubious value).

The settlement provides that the following administrative costs may be paid out of the $21 million settlement fund:

> Notice Costs, Special Master fees and costs, Escrow Agent costs and fees, CADA [Court Appointed Disbursing Agent] fees and costs, the fees and costs of any Person retained by the Special Master or CADA, and other costs, fees and expenses incurred in the implementation of the Class Settlement Agreement (including but not limited to the costs and fees of all experts of the Parties up to an amount to be agreed to by the Settling Defendants in their sole and absolute discretion).

No estimate was given as to what these costs might be. Nevertheless, the court recognized that "[i]t is a reasonable fear that the mere cost of adjudicating individual claims may swallow the entire settlement." *In re Katrina Canal Breaches Consol. Litig.*, 263 F.R.D. 340, 358 (E.D. La. 2009).

The settlement further provides class counsel with the right to seek reimbursement of "enhanced" costs and expenses, and counsel of any class member with the right to seek attorneys' fees:

> Class counsel and counsel of any Class Member shall have the right to seek an award from the [settlement fund] for fees, costs and expenses (including any enhancement of costs and expenses as may be awarded by the Court) and shall have the right to make an application to the Court for same . . . . Class Counsel agree to recommend to the Court that no attorneys' fees should be awarded from the [settlement fund], and shall oppose any such request(s).

15

No. 09-31156
No. 09-31188

There is no indication in the record as to what these attorneys' costs and expenses will be. At the certification and fairness hearing, class counsel could not provide any estimate of the costs incurred thus far, other than to admit that litigation had been "expensive." Class counsel conceded, and the court accepted, that "a lot of depositions were taken, a lot of costs were incurred, and we don't know what the plaintiffs are going to seek."

We have previously affirmed a district court's approval of a settlement in which costs and attorneys' fees had not been determined as of the date of settlement. *See Newby*, 394 F.3d at 300. However, we were able to definitively state in that case, upon a record that was "exceptionally well-developed," *id.* at 307, that the class would receive some monetary benefit from the settlement. *See id.* at 304 ("It is untrue that there will be nothing left in the [settlement fund] for the class members."). This was in part because there was a separate sub-fund of $15 million set apart for past and future litigation expenses. Here, we are unable to definitively state, based on the record below, that the class will receive any benefit from the settlement. Moreover, *Newby* did not concern a mandatory class. "Because limited-fund classes do not permit opt-outs, certification for settlement imposes particularly stringent standards." Federal Judicial Center, *Manual for Complex Litigation* § 21.132 at 252 (4th ed. 2007).

We hold that the district court erred by approving the settlement without any assurance that attorneys' costs and administrative costs will not cannibalize the entire $21 million settlement. In doing so, we express no opinion as to whether such a result would occur; but the burden is on the settlement proponents to persuade the court that the agreement is fair, reasonable, and adequate for the absent class members who are to be bound by the settlement. 4 Newberg § 11:42 at 118; American Law Institute, Principles of the Law: Aggregate Litigation § 3.05(c) at 204 (2010) (hereinafter "Aggregate

No. 09-31156
No. 09-31188

LITIGATION"). In our judgment, the settlement proponents have not met this burden because they have failed to provide any basis for their assertion that there will be money remaining after payment of these costs to effect even a cy pres distribution, let alone a monetary distribution.

Nor do we consider whether a cy pres distribution of the settlement fund, without any monetary distribution, would be fair, reasonable, and adequate under Rule 23(e). That decision would be premature here, where the very possibility of such a distribution is in question. Furthermore, without any specific proposal for a cy pres distribution before us, we are unable to determine whether such a distribution would be "for the next best use which is for indirect class benefit," 4 NEWBERG § 11:20 at 28, and would be for uses "consistent with the nature of the underlying action and with the judicial function," *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 186 (2d Cir. 1987).

2.    *Enhancement of Costs*

We agree with Appellants that any "enhancement" of costs is the functional equivalent of a fee. *See Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991) ("To the extent that counsel charges a party more than actual cost for any service, be it reproduction of documents or telephone calls, counsel is recovering additional fees."). We have repeatedly held that a district court abuses its discretion if it approves a class action settlement without determining that any attorneys' fees claimed as part of the settlement are reasonable and that the settlement itself is reasonable in light of those fees. *See, e.g., Strong v. BellSouth Telecomm. Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees." (citation omitted)); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (holding that the district court has a "responsibility to assess the reasonableness of attorneys' fees

proposed under a settlement of a class action," and that, where it abdicates its responsibility to do so, "its approval of the settlement must be reversed on this ground alone").

As noted above, we have also previously affirmed a district court's approval of a settlement agreement in which attorneys' fees were unknown at the time of approval. *See Newby*, 394 F.3d at 300. In that agreement, as here, attorneys retained the right to request fees and reimbursement of past and future litigation expenses, to be paid from the gross settlement fund upon approval of the district court. Again, however, we were able to definitively state in that case that there would be money remaining in the settlement fund after payment of those costs and fees. *See id.* at 304. Because there is no such assurance here, it was error for the district court to approve the settlement.

   3. *Notice to the Class*

Rule 23(e) states that a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal" before approving a settlement.[5] FED. R. CIV. P. 23(e)(1). Appellants argue that the notice apprising the class of the proposed certification and settlement was inadequate and misleading because it: (i) failed to provide class members with any way of estimating the amount of money that they could expect to receive in exchange for releasing their claims, nor warned them that it was unlikely that they would receive any recovery at all; (ii) wrongly represented that class counsel would not

---

[5] Rule 23(c), which relates to class certification, separately states that "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct *appropriate* notice to the class." FED. R. CIV. P. 23(c)(2)(A) (emphases added). Rule 23 therefore does not specify any notice requirement for 23(b)(1)(B) actions beyond that required by subdivision (e) for settlement purposes. *See* 3 NEWBERG § 8:21 at 230; *but see In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 327 n.11 (3d Cir. 2001) (stating that "*Ortiz* seems to imply (although it specifically declined to rule) that the level of notice required for a [mandatory settlement] is the same as is required in a Rule 23(b)(3) [opt-out] action: the best notice practicable").

No. 09-31156
No. 09-31188

be seeking attorneys' fees from the settlement fund; and (iii) incorrectly informed class members that they were barred by law from receiving compensation from the levee districts.

Under Rule 23(e), a settlement notice need only satisfy the "broad reasonableness standards imposed by due process." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (citation and internal quotation marks omitted); 3 NEWBERG § 8:18 at 223 ("[T]he court's formulation of an adequate notice procedure under Rule 23(e) is limited only by constitutional due process considerations."). The minimum of due process, as interpreted by the Supreme Court, is that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Notice of a mandatory class settlement, which will deprive class members of their claims, therefore requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement.

a.    *Possibility of Cy Pres Distribution*

We have previously held, in the context of non-mandatory class settlements, that a notice "is not required to provide a complete source of settlement information," *Maher v. Zapata Corp.*, 714 F.2d 436, 452 (5th Cir. 1983) (citations and emphasis omitted), and that a court does not abuse its discretion by omitting estimates of unit recovery if it concludes that such estimates were "too unreliable to submit," *Adams Extract Co. v. Pleasure Hours, Inc. (In re Corrugated Container Antitrust Litig.)*, 643 F.2d 195, 224 (5th Cir. 1981). However, we find that the court did not direct reasonable notice to the class here because—assuming that a cy pres distribution was permissible and feasible—the notice did not inform class members of the possibility that they would not receive any direct benefit from the settlement. *See* AGGREGATE

No. 09-31156
No. 09-31188

LITIGATION § 3.07 at 220, comment b ("Nothing in this Section [on cy pres settlements] would require that a settlement actually recover money for class members, *so long as the class is apprised of that fact in a properly constructed settlement notice.*" (emphasis added)). By failing to apprise class members of this information, the notice did not provide interested parties with knowledge critical to an informed decision as to whether to object to class certification and settlement.

Under the heading "Who's Included?" the class notice described the membership of the proposed settlement class as all those who either lived or had property in the greater New Orleans area and were harmed by Hurricanes Katrina and Rita. Under the heading "What Does the Settlement Provide?" the notice then stated:

> A settlement fund that includes all insurance money available to the Settling Defendant will be established in the amount of $20,839,115 (plus any additional interest) for the benefit of the Settlement Class, as well as to cover costs, and expenses. The settlement fund (plus any interest) will be divided among the Subclasses as follows: Subclass 1 - $2,371,467; Subclass 2 - $5,924,284; and Subclass 3 - $12,543,363. . . .

> If the settlement receives final Court approval, an independent "Special Master" appointed by the Court will recommend how to administer the settlement fund for the benefit of the Settlement Class. The Court may request that a second notice be issued to Settlement Class members explaining how the settlement fund will be used or administered.

This language does not clearly inform class members of the real possibility, acknowledged by all parties, that there may be a cy pres distribution in lieu of any direct distribution of funds to the class members. This is particularly problematic because no estimate is given of the costs and expenses that will be paid out of the settlement fund, a sum that may greatly reduce the amount available for distribution to the class. Stating that the fund will be administered

20

No. 09-31156
No. 09-31188

"for the benefit of the Settlement Class," and hinting that the settlement fund may be "used" rather than "administered," is insufficient to communicate the possibility of a cy pres distribution, which is a key aspect of the settlement that might have led more members to object. Therefore, contrary to the district court's judgment, the notice did not contain "all necessary information for any class member to become fully apprised and make any relevant decisions." *In re Katrina*, 263 F.R.D. at 360.

   b.   *Attorneys' Fees*

We also find that the notice was misleading insofar as it informed class members that class counsel and other counsel for class members would not seek any attorneys' fees from the settlement. Under the heading "How will the lawyers be paid?" the notice stated:

> Class counsel will not request any attorneys' fees from the settlement fund. However, Class Counsel may ask the Court for reimbursement of their costs and expenses out of the settlement fund. Other counsel for Settlement Class members may also request costs and expenses. Requests for costs and expenses will be made after the settlement is granted final approval by the Court. The Court may award more or less than the actual costs and expenses.

The settlement agreement, however, provides both class counsel and other counsel with the right to seek "enhanced" costs. As explained above, an enhancement of actual costs and expenses is essentially a fee, and unless class counsel will not seek any such "enhanced" costs, it is inaccurate to assert that they will not request any attorneys' fees from the settlement fund. *See Fogleman*, 920 F.2d at 286; 3 Newberg § 8:32 at 265 ("In regard to attorneys' fees, the [Rule 23(e)] notice should at a minimum generally apprise class members that fees will be sought and awarded by the court at the settlement hearing or a subsequent hearing and indicate whether the defendants or the

No. 09-31156
No. 09-31188

settlement fund will bear such costs."). Moreover, it is unfaithful to the settlement agreement to omit the fact that all counsel may *seek* such fees; simply stating that the court "may award more . . . than the actual costs and expenses" implies that any such action would be entirely *sua sponte*.

     c.    *Legal Limits to the Fund*

In the same section describing the settlement fund, the class notice stated: "Please note that, under law, the Settlement Class can get no additional money or property in this settlement because the Settling Defendants are governmental bodies."

Appellants are correct that this statement is slightly misleading, although in our judgment the district court's approval of this language does not rise to the level of abuse of discretion. As political subdivisions of the State of Louisiana, the levee districts' assets are statutorily exempt from seizure to satisfy a judgment against them. LA. CONST. art. XII, §10(C); LA. REV. STAT. § 13:5109(B)(2); *see Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650 (5th Cir. 2000) (recognizing and enforcing the Louisiana anti-seizure provisions). Nor are the levee districts subject to a writ of mandamus requiring them to appropriate additional funds to satisfy potential judgments in this case. *See Hoag v. Louisiana*, 889 So. 2d 1019, 1023 (La. 2004) (citations omitted). However, Louisiana law does not *prevent* the levee districts from appropriating additional money to contribute to the settlement. *See* LA. REV. STAT. § 13:5109(B)(2)). Therefore, perhaps a more precise statement would have been that, "under law, the Settlement Class can *exact* no additional money or property from the Settling Defendants in this settlement because the Settling Defendants are governmental bodies."

However, the statement as written is accurate in its essential point: that $21 million is the most that the class can expect to receive in the settlement.

22

No. 09-31156
No. 09-31188

The choice of words, while less than one hundred percent accurate, does not render the notice so clearly misleading that the district court abused its discretion in approving this portion of the notice.

### III. CONCLUSION

For the reasons stated above, we reverse the district court's order certifying this mandatory limited fund class and approving the class settlement. The judgment of the district court is therefore REVERSED.

Print Form

Case: 09-31156 Document: 00511327247 Page: 1 Date Filed: 12/20/2010

## UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

## BILL OF COSTS

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

In Re: Katrina Canal Breaches, Plaintiffs Class    v. Board of Comm'rs of the Orleans Levee District, et al.    No. 09-31156

The Clerk is requested to tax the following costs against: Appellees

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($450.00) | | | | 450 | | | | 450.00 |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | 7 | 52 | 0.1 | 36.4 | 7 | 52 | .10 | 30.40 |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | 7 | 25 | 0.1 | 17.5 | 7 | 20 | .10 | 17.50 |
| Other: | | | | | | | | |
| | | | Total $ | 503.9 | | | | 503.40 |

Costs are hereby taxed in the amount of $ 503.00    this   1st   Costs are taxed in the amount of $ 503.40

State of    day of   February    2011
County of Washington, DC

LYLE W. CAYCE, CLERK

By _____
      Deputy Clerk

I   Michael T. Kirkpatrick   , do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 20th   day of   December   , 2010

/s/ Michael T. Kirkpatrick
_____
(Signature)

Attorney for Appellants Brinkmeyer, LeBlanc, & Stuart

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

*FIFTH CIRCUIT RULE 39*

*39.1 Taxable Rates. The cost of reproducing necessary copies of the brief, appendices, or record excerpts shall be taxed at a rate not higher than $0.15 per page, including cover, index, and internal pages, for any for of reproduction costs. The cost of the binding required by 5ᵀᴴ CIR. R. 32.2.3 that mandates that briefs must lie reasonably flat when open shall be a taxable cost but not limited to the foregoing rate. This rate is intended to approximate the current cost of the most economical acceptable method of reproduction generally available, and the clerk shall, at reasonable intervals, examine and review it to reflect current rates. Taxable costs will be authorized for up to 15 copies for a brief and 10 copies of an appendix or record excerpts, unless the clerk gives advance approval for additional copies.*

*39.2 Nonrecovery of Mailing and Commercial Delivery Service Costs. Mailing and commercial delivery fees incurred in transmitting briefs are not recoverable as taxable costs.*

*39.3 Time for Filing Bills of Costs. The clerk must receive bills of costs and any objections within the times set forth in FED. R. APP. P. 39(b). See 5ᵀᴴ CIR. R. 26.1.*

FED. R. APP. P. 39.        COSTS

**(a)** *Against Whom Assessed.* The following rules apply unless the law provides or the court orders otherwise;

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

**(b)** *Costs For and Against the United States.* Costs for or against the United States, its agency or officer will be assessed under Rule 39(a) only if authorized by law.

**©** *Costs of Copies* Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by rule 30(f). The rate must not exceed that generally charged for such work in the area where the clerk's office is located and should encourage economical methods of copying.

**(d)** *Bill of costs; Objections; Insertion in Mandate.*

(1) A party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

(2) Objections must be filed within 10 days after service of the bill of costs, unless the court extends the time.

(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must – upon the circuit clerk's request – add the statement of costs, or any amendment of it, to the mandate.

**(e)** *Costs of Appeal Taxable in the District Court.* The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.

# *United States Court of Appeals*
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

February 01, 2011

Ms. Loretta Whyte
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

> No. 09-31156,  In Re: Katrina Canal Breaches
>       USDC No. 2:05-CV-4182
>
>             consolidated with
>
> No. 09-31188,  In Re: Katrina Canal Breaches
>       USDC No. 2:05-CV-4182
>       USDC No. 2:06-CV-5116
>       USDC No. 2:06-CV-5118
>       USDC No. 2:06-CV-5127
>       USDC No. 2:06-CV-5128
>       USDC No. 2:06-CV-5131
>       USDC No. 2:06-CV-5132
>       USDC No. 2:06-CV-5134
>       USDC No. 2:06-CV-5137
>       USDC No. 2:06-CV-5140
>       USDC No. 2:06-CV-5142

Enclosed, for the Eastern District of Louisiana, New Orleans
only, is a copy of the judgment issued as the mandate.

Enclosed, for the Eastern District of Louisiana, New Orleans
only, is a copy of the court's opinion.

Record/original papers/exhibits to be returned.

Enclosed for the Eastern District of Louisiana, New Orleans and
counsel is an approved bill of costs.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Misty Fontenot*
                    By:
                    Misty L. Fontenot, Deputy Clerk
                    504-310-7716

```
cc w/encl:
        Honorable Stanwood R. Duval Jr.
        Mr. Thomas P Anzelmo Sr.
        Mr. Joseph M. Bruno
        Mr. Lawrence J. Duplass
        Mr. Joseph P. Guichet
        Mr. Sessions Ault Hootsell III
        Mr. Ralph S. Hubbard III
        Mr. James Kee Irvin
        Mr. Michael T. Kirkpatrick
        Mr. Charles Munson Lanier Jr.
        Ms. Rachel Ann Meese
        Mr. Gerald Edward Meunier
        Ms. Jennifer May Morris
        Ms. Jennifer Jean Rosenbaum
        Mr. James Charles Roy
        Mr. Robin D Smith
        Mr. Andrew D. Weinstock
        Ms. Allison M. Zieve
        Mr. Gary Mark Zwain
```

P.S. to Judge Duval:  A copy of the opinion was sent to your office via email the day it was filed.