UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
| | * * | NO. 05-4182 |
| PERTAINS TO: BARGE | * * | and consolidated cases |
| | * * | SECTION "K" (2) |
| | * * | |
| *Weisler v. Seymour, et al.*   09-2737 | * * | JUDGE STANWOOD R. DUVAL, JR. |
| | * * * | MAG. JUDGE JOSEPH C. WILKINSON, JR. |
| | * | |

## DEFENDANTS RICHARD T. SEYMOUR'S AND (MISNAMED) RICHARD T. SEYMOUR, P.L.L.C.'S, FIRST REQUESTS FOR DISCOVERY FROM PLAINTIFF RICHARD H. WEISLER

To:   Andrew C. Wilson, Esq.
      Simon, Peragine, Smith & Redfearn, L.L.P.
      30th Floor - Energy Centre
      1100 Poydras Street
      New Orleans, LA 70163-3000

PLEASE TAKE NOTICE that pursuant to Rules 33, 34, and 36, Fed. R. Civ. Pro.,

improperly joined defendant Richard T. Seymour and improperly named defendant "Richard T.

Seymour P.L.L.C.," hereinafter referred to as the "Seymour Defendants," make the following

discovery requests.

### A.   Uniform Definitions of Terms

The following definitions of terms apply to all discovery requests:

1



    e.   that, during the expert study, Mr. Fuchsberg told Plaintiff and Dr. Townsend that the Barge P.S.L.C. was completely tied up litigating some major things, and that they should not distract the Barge P.S.L.C. by sending it an interim statement.

26.    All drafts of any invoice or statement submitted by Plaintiff or his counsel to any defendant or their counsel.

27.    All e-mails sent or received by Plaintiff on August 14 or 15, 2008, when he alleges he missed sixteen hours of work opportunities for which he seeks compensation.

28.    All appointment books or appointment lists maintained by Plaintiff or his staff, showing his appointments in each week of 2008.

29.    All documents concerning cancellations of appointments on August 14 or 15, 2008.

30.    All documents concerning any effort to schedule any work for August 14 or 15, 2008, after Plaintiff was informed his deposition was being canceled.

31.    All documents created or revised on August 14 or 15, 2006.

32.    To the extent Defendant fails to admit any of the Requests for Admissions set forth below, all documents concerning the subject matter of the requests.

### D.    Requests for Admissions from Plaintiff

Pursuant to Rule 36, Fed. R. Civ. Pro., improperly joined defendant Richard T. Seymour and improperly named defendant "Richard T. Seymour P.L.L.C.," hereby request that Plaintiff Richard Weisler admit the truth of the following matters, for purposes of this action only:

### 1.    Documents

1.    The document marked as Attachment A hereto is a true and correct copy of the expert report submitted by Plaintiff in the Barge case identified in ¶ 6 of Plaintiff's Complaint.

2.       The document marked as Attachment B hereto is an e-mail thread containing a true and correct copy of the July 29, 2008 e-mail from Sherry Cofield transmitting Plaintiff's message, instructions for payment, Bates-stamped BargePSLCWeisSeym001445, and the attached invoice Plaintiff submitted to Defendants, bearing the date "7/7/08."

3.       At the time the invoice attached hereto as Attachment B was submitted, it purported to contain a complete statement of Plaintiff's time and activities from the start of his involvement in the Barge case identified in ¶ 6 of Plaintiff's Complaint, through July 28, 2008.

4.       At the time the invoice attached hereto as Attachment B was submitted, the information represented in this invoice purportedly reflected all of Plaintiff's records then in existence, for his work in the Barge case identified in ¶ 6 of Plaintiff's Complaint.

5.       At the time the invoice attached hereto as Attachment B was submitted, Plaintiff did not have any time records or statements of activities that were not reflected in this invoice, for his work in the Barge case identified in ¶ 6 of Plaintiff's Complaint.

6.       The majority of the time entries in the invoice attached hereto as Attachment B do not have any associated statements of activities for the time billed.

7.       Some of the descriptions of activities in the invoice attached hereto as Attachment B do not have any associated time entries.

8.       Plaintiff's invoice attached hereto in Attachment B represents that Plaintiff performed 300.25 hours of compensable work in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from the start of his involvement in that case through and including July 6, 2008.

9.       Plaintiff's invoice attached hereto in Attachment B represents that the amount Plaintiff was billing for his time in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from the start of his involvement in that case through and including July 6, 2008, was $180,090.00.

10.     The document attached hereto as Attachment C is a true and correct copy of the letter Plaintiff's counsel, Andrew Wilson, sent to Brian Gilbert on or about February 4, 2009.

11.     The document attached hereto as Attachment D is a true and correct copy of an exhibit to the letter Plaintiff's counsel, Andrew Wilson, sent to Brian Gilbert on or about February 4, 2009.

12.     The document attached hereto as Attachment D is an invoice for the time of Dr. Mark Townsend for his work in the Barge case identified in ¶ 6 of Plaintiff's Complaint, through June 6, 2008.

13.     The document attached hereto as Attachment E is a true and correct copy of an exhibit to the letter Plaintiff's counsel, Andrew Wilson, sent to Brian Gilbert on or about February 4, 2009.

14.     The document attached hereto as Attachment E is an invoice for the work Plaintiff purportedly performed in the Barge case identified in ¶ 6 of Plaintiff's Complaint, updated through July 28, 2008.

15.     The document attached hereto as Attachment E represents that Plaintiff performed 310.25 hours of compensable work in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from the start of his involvement in that case through and including July 6, 2008.

16.     Plaintiff added ten hours to his statement of compensable time, from the start of his involvement in that case through and including July 6, 2008, from the invoice attached hereto as Attachment B to the invoice attached hereto as Attachment E.

17.     The document attached hereto as Attachment E represents that Plaintiff performed 360.75 hours of compensable work in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from the start of his involvement in that case through and including July 28, 2008.

12

18.     The document attached hereto as Attachment E represents that the amount Plaintiff was billing for his time in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from the start of his involvement in that case through and including July 6, 2008, was $186,090.00.

19.     Plaintiff added $6,000.00 to his billing statement, from the start of his involvement in that case through and including July 6, 2008, from the invoice attached hereto as Attachment B to the invoice attached hereto as Attachment E.

20.     Plaintiff added ten hours of time, and billed an additional $6,000.00, from the start of his involvement in that case through and including July 6, 2008, from the invoice attached hereto as Attachment B to the invoice attached hereto as Attachment E, by adding ten hours and $6,000.00 for ten hours he contends he spent on June 2, 2008, while engaging in "Data review, analysis, and meeting with B. Gilbert."

21.     The document attached hereto as Attachment B does not contain any time entry for June 2, 2008.

22.     The document attached hereto as Attachment B does not contain any statement of activity, for any date, for "Data review, analysis, and meeting with B. Gilbert."

23.     The document attached hereto as Attachment E contains purported descriptions of the activities of Plaintiff in the Barge case identified in ¶ 6 of Plaintiff's Complaint through July 6, 2008, which were not contained in the invoice attached hereto as Attachment B.

24.     The document attached hereto as Attachment E contains purported descriptions of the activities of Plaintiff in the Barge case identified in ¶ 6 of Plaintiff's Complaint through July 6, 2008, which differ from the statements of activities on that date contained as Attachment B.

13

25.     The document attached hereto as Attachment E contains purported descriptions of the activities of Plaintiff in the Barge case identified in ¶ 6 of Plaintiff's Complaint through July 6, 2008, which were not contained in the invoice attached hereto as Attachment B.

26.     The document attached hereto as Attachment F is a true and correct copy of an exhibit to the letter Plaintiff's counsel, Andrew Wilson, sent to Brian Gilbert on or about February 4, 2009.

27.     The document attached hereto as Attachment F is an August 13, 2008 invoice for the work Dr. Townsend performed in the Barge case identified in ¶ 6 of Plaintiff's Complaint, updated through June 30, 2008.

28.     The document attached hereto as Attachment G is a true and correct copy of an exhibit to the letter Plaintiff's counsel, Andrew Wilson, sent to Brian Gilbert on or about February 4, 2009.

29.     The document attached hereto as Attachment G is a "Final Invoice" dated "12/02/08" invoice for the work Dr. Townsend purportedly performed in the Barge case identified in ¶ 6 of Plaintiff's Complaint, updated through August 15, 2008.

30.     The document attached hereto as Attachment G represents that Plaintiff performed 73.0 hours of compensable work or "missed work opportunity" in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from August 1, 2008 through August 15, 2008.

31.     The sum of 360.75 hours and 73.0 hours is 433.75 hours.

32.     The document attached hereto as Attachment G purports to bill $43,800.00 for his time in the time period from August 1, 2008, through August 15, 2008, excluding a purported $150.00 expense for an airline cancellation fee.

33.     The sum of $186,090.00 and $43,800.00 is $230,750.00.

14

34.     The document attached hereto as Attachment G purports to bill $9,600.00 for

sixteen hours of "missed work opportunity" because of cancellation of deposition "at the last

minute."

35.     The document attached hereto as Attachment H, Bates-numbered

BargePSLCWeisSeym001736, contains a true and accurate copy of an e-mail sent by Brian

Gilbert to Plaintiff and Dr. Townsend, asking them to suspend all work on the case.

36.     The e-mail sent by Brian Gilbert to Plaintiff and Dr. Townsend, asking them to

suspend all work on the case, in Attachment H was transmitted at 11:29 P.M. Central Daylight

Time on August 12, 2008.

37.     Dr. Weisler received the e-mail sent by Brian Gilbert to Plaintiff and Dr.

Townsend, asking them to suspend all work on the case, at approximately 12:29 P.M. Eastern

Daylight Time on August 12, 2008.

38.     The document attached hereto as Attachment G purports to bill 3.0 hours,

amounting to $1,800.00, on August 12, 2008, for "Deposition preparation review prior to

notification of cancellation."

39.     The document attached hereto as Attachment I is a true and accurate copy of a

letter sent by Andrew Wilson to Brian Gilbert on or about February 4, 2009.

40.     The document attached hereto as Attachment J is a true and accurate copy of

Exhibit 1 to Attachment I, the letter sent by Andrew Wilson to Brian Gilbert on or about

February 4, 2009.

41.     The document attached hereto as Attachment J is a statement of Plaintiff's

purported compensable time and expenses in the Barge case identified in ¶ 6 of Plaintiff's

Complaint, from the start of his involvement through August 15, 2008, including sixteen hours of "missed work opportunity."

42.     The descriptions in Attachment J of the time spent by Plaintiff were based on a reconstruction by Plaintiff.

43.     The total amount of time billed by Plaintiff in Attachment J is 448.75 hours.

44.     The total amount of time billed by Plaintiff in Attachment J is fifteen hours more than the time he billed, for the same time period, in Attachments E and G.

45.     The total amount Plaintiff billed for his time in Attachment J is $269,250.00.

46.     The total amount Plaintiff billed for his time in Attachment J is $38,500.00 more than Plaintiff billed for his time, for the same time period, in Attachments E and G.

47.     The addition of fifteen hours to a time statement, at Plaintiff's purported rate of $600 an hour, could add only $9,000.00 to the amount billed for time.

48.     Plaintiff has provided no explanation for the additional $29,500.00 he billed for his time in Attachment J, compared to the amounts he billed for his time in Attachments E and G for the same time period.

49.     Plaintiff's statement in Attachment J of the amounts of time he spent differ in dates and amounts, as well as in descriptions of activity, from his statements of the time he spent in Attachments E and G.

50.     Plaintiff has provided no explanation for the differences in dates and time for the work he purportedly performed in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from the start of his involvement through August 15, 2008, as between his statements in Attachment J, and his statements in Attachments E and G, for the same time period.

16

51.     On August 1, 2008, Richard Seymour and Brian Gilbert authorized Plaintiff to spend no more than fifteen to twenty hours preparing for his deposition.

52.     At $600 an hour, fifteen hours would amount to $9,000.00.

53.     At $600 an hour, twenty hours would amount to $12,000.00.

54.     Plaintiff is claiming 117.5 hours for deposition preparation.

55.     Plaintiff's claim for deposition preparation is entirely for time he chose to spend on his own, without the involvement of a lawyer for any part of the time.

56.     Plaintiff is claiming $100,500 for his deposition preparation.

57.     Plaintiff is claiming more than two hundred hours for reading professional literature.

58.     At $600 an hour, Plaintiff is claiming more than $120,000 for reviewing professional literature.

59.     The document attached hereto as Attachment K is a true and accurate copy of Exhibit 2 to Attachment I, the letter sent by Andrew Wilson to Brian Gilbert on or about February 4, 2009.

60.     The document attached hereto as Attachment K purports to be a summary of all of Plaintiff's activity in the Barge case identified in ¶ 6 of Plaintiff's Complaint, from the start of his involvement through August 15, 2008, and of Plaintiff's efforts to bill and collect from Barge plaintiff's counsel.

61.     The document attached hereto as Attachment L is a true and accurate copy of Exhibit 3 to Attachment I, the letter sent by Andrew Wilson to Brian Gilbert on or about February 4, 2009.

62.    The document attached hereto as Attachment L purports to be a list of "most of the identified articles, books and materials" that Plaintiff contends he "reviewed either in full or in part secondary [sic] to Barge PSLC Attorney instructed "'examination and discussion of peer-review articles and peer accepted methodologies of the entire area of Disaster Mental Health . . . ."

63.    The majority of the "identified articles, books and materials" listed in Attachment L are not identified in Attachment A, Plaintiff's expert report.

64.    The document attached hereto as Attachment M is a true and accurate copy of Exhibit 4 to Attachment I, the letter sent by Andrew Wilson to Brian Gilbert on or about February 4, 2009.

65.    The document attached hereto as Attachment M purports to be a "Table of Contents" of e-mail messages from and to various persons, with everything omitted except a subject line, a date (sometimes with, and sometimes without, time), sometimes with, and sometimes without, a "from" line, sometimes with, and sometimes without, a "CC" line, always without the body of the message if any, always without an indication of any attachment, and always without any attachment.

66.    The document attached hereto as Attachment M does not show which e-mails involved any nontrivial time and which involved trivial time.

67.    The document attached hereto as Attachment M includes three messages with a person named Alex Crosby.

68.    Neither Attachment M nor any other document submitted by Plaintiff explains who Alex Crosby is, or why communication with him or her was compensable activity.

18

69.    The document attached hereto as Attachment M includes fifteen messages with a person named Fran H. Norris.

70.    The document attached hereto as Attachment A, Plaintiff's Report, states at pp. 14 and 15 that a Fran Norris was a "consultant."

71.    The document attached hereto as Attachment A, Plaintiff's Report, states at p. 15:

Fran Norris, PhD is a professor at the National Center for PTSD/Dartmouth University also consulted with us on mental health screening and disaster mental health issues. Dr. Norris also provided material for the methods section attachment about the (SPRINT-E) and its use in screening post-disaster populations.

72.    Fran Norris did some of the work for which Plaintiff seeks compensation in this lawsuit.

73.    The document attached hereto as Attachment M includes nineteen pages of messages with a person named Kara Koehrn.

74.    The document attached hereto as Attachment A, Plaintiff's Report, states at pp. 14 and 16 that a Kara Koehrn was a "consultant."

75.    The document attached hereto as Attachment A, Plaintiff's Report, states at p. 16:

Kara Koehrn, B.S., and Masters of Environmental Management Candidate 2009 at Duke University and a Stanback Intern; Assisted greatly in editing, gathering of articles, and data searches of public health records.

76.    Kara Koehrn did some of the work for which Plaintiff seeks compensation in this lawsuit.

77.    The document attached hereto as Attachment M reflects one or more disclosures of information about the Barge case identified in ¶ 6 of Plaintiff's Complaint with a person named R. Dalton.

78.    The document attached hereto as Attachment A, Plaintiff's Report, states at pp. 14 and 15 that a Richard Dalton was a "consultant."

19

79.     The document attached hereto as Attachment A, Plaintiff's Report, states at p. 15:

Richard Dalton, MD, a Tulane University professor of Psychiatry, and the new Louisiana State Medical Director of the Louisiana Department of Mental Health.  Dr. Dalton helped write and provide material on child and adolescent mental health concerns and prevalence estimates after Hurricane Katrina for the group.

80.     Dr. Richard Dalton did some of the work for which Plaintiff seeks compensation in this lawsuit.

81.     The document attached hereto as Attachment M reflects one or more disclosures of information about the Barge case identified in ¶ 6 of Plaintiff's Complaint with a person with an e-mail address of david011@notes.duke.edu.

82.     Barge plaintiff's counsel had not authorized any disclosure of information about the Barge case with an e-mail address of david011@notes.duke.edu.

83.     None of the attorneys in the Barge case identified in ¶ 6 of Plaintiff's Complaint authorized Plaintiff or any member of the medical team to spend compensable time in consultation with a person with an e-mail address of david011@notes.duke.edu.

84.     The document attached hereto as Attachment M reflects one or more disclosures of information about the Barge case identified in ¶ 6 of Plaintiff's Complaint with a person with an e-mail address of dsheehan@health.usf.edu.

85.     The document attached hereto as Attachment A, Plaintiff's Report, states at pp. 14 and 15 that a Dr. David Sheehan was a "consultant."

86.     The document attached hereto as Attachment A, Plaintiff's Report, states at p. 15:

David Sheehan, MD, an internationally renowned psychiatrist, created the Mini International Neuropsychiatric Interview (MINI) PLUS and the MINI 6.0 as well as the Sheehan Disability Scale. He advised as to the use of these scales in this pilot study and in possible future class representative mental health large scale screening evaluations and studies.

87.     Dr. David Sheehan did some of the work for which Plaintiff seeks compensation in this lawsuit.

88.     The document attached hereto as Attachment M reflects one or more disclosures of information about the Barge case identified in ¶ 6 of Plaintiff's Complaint with a person with an e-mail address of chris014@mc.duke.edu.

89.     Barge plaintiff's counsel had not authorized any disclosure of information about the Barge case with an e-mail address of chris014@mc.duke.edu.

90.     The document attached hereto as Attachment M reflects one or more disclosures of information about the Barge case identified in ¶ 6 of Plaintiff's Complaint with a person with an e-mail address of Jessica.hamblen@dartmouth.edu.

91.     The document attached hereto as Attachment A, Plaintiff's Report, states at pp. 14 and 15 that a Dr. Jessica Hamblen was a "consultant."

92.     The document attached hereto as Attachment A, Plaintiff's Report, states at p. 16:

Jessica Hamblen, PhD. at the National Center for PTSD/ Dartmouth University also provided us information about a cognitive therapy program that she and Dr. Norris consulted on in the Baton Rouge area for evacuees from New Orleans or other parts of Louisiana who developed psychiatric problems.

93.     Dr. Jessica Hamblen did some of the work for which Plaintiff seeks compensation in this lawsuit.

94.     The document attached hereto as Attachment A, plaintiff's Report, reflects an additional "consultant" named Jonathan Davidson, M.D.

95.     The document attached hereto as Attachment A, Plaintiff's Report, states at p. 15:

Jonathan Davidson, MD, is a Professor of Psychiatry at Duke University Medical Center and the developer of the Davidson Trauma Scale, the SPRINT, and co-Developer of the Short Post-Traumatic Disorder Rating Interview-Expanded (SPRINT-E) screening instrument with Fran Norris, PhD.

21

96.     Dr. Jonathan Davidson did some of the work for which Plaintiff seeks compensation in this lawsuit.

97.     The document attached hereto as Attachment A, plaintiff's Report, reflects an additional "consultant" named Allan Chrisman, M.D.

98.     The document attached hereto as Attachment A, Plaintiff's Report, states at p. 15:

Allan Chrisman, MD at Duke University Medical Center expert in child and adolescent Psychiatry who provided guidance about the needs of children and information on disaster mental health. [sic]

99.     Dr. Allan Chrisman did some of the work for which Plaintiff seeks compensation in this lawsuit.

100.    The document attached hereto as Attachment A, plaintiff's Report, reflects an additional "consultant" named Narayan Sastry, Ph.D.

101.    The document attached hereto as Attachment A, Plaintiff's Report, states at p. 16:

Narayan Sastry, PhD at University of Michigan/Rand Corporation and expert in population studies. He provided us with additional information regarding the impact of property damage, educational levels, and ethnic background from work that he and VanLandingham did in New Orleans after the hurricane. Dr. VanLandingham was out of the country, but he also sent us a reply and encouraged us to call Dr. Sastry.

102.    Dr. Narayan Sastry did some of the work for which Plaintiff seeks compensation in this lawsuit.

103.    The document attached hereto as Attachment M includes numerous e-mails from the Seymour defendants, repeatedly attempting to get responses from Plaintiff on topics on which he had not responded.

104.    The document attached hereto as Attachment N is a true and accurate copy of Exhibit 5 to Attachment I, the letter sent by Andrew Wilson to Brian Gilbert on or about February 4, 2009.

105.    The document attached hereto as Attachment N purports to include a complete set

record of Plaintiff's time records for the time he spent working in the Barge case identified in ¶ 6

of Plaintiff's Complaint, from the start of his involvement through August 15, 2008

106.    The vast majority of time entries in Attachment N are on scraps of paper or

prescription blanks.

107.    Attachment G purported to bill $43,800 for time Plaintiff purportedly worked

after July 28, 2008.

108.    There are no time entries in Attachment N for any time after July 28, 2008.

109.    Some of the time entries in Attachment N are incomplete, with some scraps of

paper or prescription blanks obscuring what is on other scraps of paper or prescription blanks.

110.    Some of the time entries in Attachment N are incomplete, with the documents

copied so as to be cut off at the edges.

111.    Some of the time entries in Attachment N are merely e-mails or other statements

from Plaintiff to his staff to add various numbers of hours on various dates.

112.    The vast majority of time entries in Attachment N do not have a description of the

activity on which the time was spent.

113.    The time entries in Attachment N do not contain any descriptions of activities in

May 2008 except for five time entries from May 22 to May 26, 2008, and 13 hours for travel on

May 31, 2008.

114.    The time entries in Attachment N do not contain any descriptions of activities in

June 2008.

115.    The time entries in Attachment N do not contain any descriptions of activities in

July 2008.

23

116.    The vast majority of time entries in Attachment N do not have either a starting time or an ending time.

117.    The vast majority of time entries in Attachment N show an integer number of hours or half-hours.

118.    Some of the time entries in Attachment N do not correspond with the time entries and descriptions of time in Plaintiff's invoices.

119.    The second page in Attachment N shows 13 hours billed for "(travel)" on May 31, 2008.

120.    The same prescription blank showing a billing of 13 hours for travel on May 31, 2008 states; "Date errors by 1 day 2/3/09 SC".

121.    The document attached hereto as Attachment B states that Plaintiff spent 13.15 hours on May 31, 2008, with no description of time.

122.    The document attached hereto as Attachment B does not show a 13-hour entry on May 30 or June 1, 2008.

123.    The document attached hereto as Attachment E states that Plaintiff spent 13.15 hours on June 1, 2008, on "Client interviews and data collection and analysis."

124.    The document attached hereto as Attachment E does not show a 13-hour entry on May 31 or June 2, 2008.

125.    The document attached hereto as Attachment E does not show any time entry for travel.

126.    The document attached hereto as Attachment J states that Plaintiff spent 13.25 hours on June 1, 2008, on "Claimant evaluations in New Orleans, data collection and analysis –

(Multiple electronic correspondences with R. Seymour, P. Griffin, R. Dalton) See Individual Table of Contents for detailed description."

127.   The document attached hereto as Attachment J does not show any time spent on travel on June 1, 2008.

128.   The document attached hereto as Attachment J states that Plaintiff spent 7.5 hours on various activities, including "Travel time to Phoenix, New Orleans for client interviews."

129.   Without regard to the Barge case identified in ¶ 6 of Plaintiff's Complaint, Plaintiff had intended to travel to Phoenix for a professional meeting and to return.

130.   Plaintiff would have traveled to Phoenix for a professional meeting and would have returned even if he had never been asked to perform any work in the Barge case identified in ¶ 6 of Plaintiff's Complaint.

131.   There are numerous discrepancies between the time entries on the scraps of paper or prescription blanks or e-mails in Attachment N and the time entries on Plaintiff's various invoices in Attachments B, E, and G.

132.   The document attached hereto as Attachment O is a true and accurate copy of Exhibit 6 to Attachment I, the letter sent by Andrew Wilson to Brian Gilbert on or about February 4, 2009.

133.   The document attached hereto as Attachment O purports to be copies of documentation of expenses incurred by Plaintiff while working on the Barge case identified in ¶ 6 of Plaintiff's Complaint.

134.   The document attached hereto as Attachment O purports to bill $1,163.00 for a trip by Dr. Weisler from Grand Rapids, Michigan to New Orleans and later from New Orleans to Raleigh-Durham, North Carolina.

135.    No defendant had asked Plaintiff to be in Grand Rapids, Michigan.

136.    The document attached hereto as Attachment O purports to bill $694.00 for a trip by Dr. Weisler from Raleigh/Durham to Salt Lake City and Phoenix, and from Phoenix to Salt Lake City and New Orleans, and then returning to Raleigh/Durham.

137.    No defendant had asked Plaintiff to be in Phoenix, Arizona.

138.    Plaintiff traveled to Phoenix for a professional meeting.

139.    Plaintiff did not travel to Phoenix for any purpose connected to the Barge case identified in ¶ 6 of Plaintiff's Complaint.

140.    Plaintiff would have traveled to Phoenix and returned even if he had never been asked to perform any work in the Barge case identified in ¶ 6 of Plaintiff's Complaint.

141.    The document attached hereto as Attachment P is a true and accurate copy of a letter from Richard T. Seymour to Andrew Wilson dated February 8, 2009, except for the lack of a signature.

142.    Plaintiff received a copy of the document attached hereto as Attachment P on or shortly after February 8, 2009.

143.    Plaintiff never made any changes in his billings as a result of anything in the contents of the document attached hereto as Attachment P.

144.    The document attached hereto as Attachment Q is an e-mail thread Bates-numbered BargePSLCWeisSeym000461 through BargePSLCWeisSeym000463, with the top e-mail sent by Brian Gilbert at 3:47 P.M. on May 29, 2008, to Plaintiff and others on the medical team and co-counsel.

145.    Plaintiff received the top e-mail in Attachment Q, in the ordinary course of business, at or about the date and time it was sent.

26

146.   The e-mail stated that the Barge PSLC was the entity responsible for expenses, and not Karen Wiedemann.

147.   Plaintiff did not express any disagreement with the statement in the top e-mail in Attachment Q, at the time it was sent and received.

148.   The second e-mail in Attachment Q was an e-mail sent by Dr. Mark Townsend on May 29, 2008, at 2:32 P.M., stating that invoices should be sent to Karen Wiedemann.

149.   Plaintiff received the second e-mail in Attachment Q, in the ordinary course of business, at or about the date and time it was sent.

150.   Karen Wiedemann was known to Plaintiff on May 29, 2008 as one of the attorneys working with the Barge PSLC.

151.   Plaintiff did not respond to the e-mail and disagree that invoices should be sent.

152.   The document attached hereto as Attachment R is an e-mail thread Bates-numbered BargePSLCWeisSeym000466 through BargePSLCWeisSeym000468, with the top e-mail sent by Mark Townsend at 5:26 P.M. on May 29, 2008, with Plaintiff and others addressed or cc'd.

153.   Plaintiff received the e-mail thread in Attachment R, in the ordinary course of business, at or about the date and time it was sent.

154.   The e-mail thread in Attachment R contains e-mails referring to invoices being sent, and contains the statement that the Barge PSLC, not Karen Wiedemann, is the entity responsible for paying bills.

155.   Plaintiff did not respond to the e-mail thread in Attachment R and disagree that invoices should be sent at that time.

27

156.    The document attached hereto as Attachment S is an e-mail thread Bates-numbered BargePSLCWeisSeym000526 through BargePSLCWeisSeym000528, with the top e-mail sent by Richard Seymour addressed or cc'd to Jill Hayes, Plaintiff, Dr. Mark Townsend, and co-counsel at 4:36 P.M. Eastern Daylight Time on June 2, 2008.

157.    The top e-mail in Attachment S stated in part that it was important that invoices "be made to the Barge P.S.L.C."

158.    The second e-mail in Attachment S was sent by Dr. Jill Hayes on June 2, 2008 at 4:16 P.M., with a copy to Plaintiff, discussing the First Interim Invoice she had just sent out.

159.    Plaintiff received the e-mail thread in Attachment S, in the ordinary course of business, at or about the date and time it was sent.

160.    Plaintiff did not respond to the e-mail thread in Attachment S and disagree that invoices should be sent at that time.

161.    The e-mail thread in Attachment S contains e-mails referring to invoices being sent, and contains the statement that the Barge PSLC, not Karen Wiedemann, is the entity responsible for paying bills.

162.    The document attached hereto as Attachment T is an e-mail thread Bates-numbered BargePSLCWeisSeym000521 through BargePSLCWeisSeym000523 with the top e-mail sent by Karen Wiedemann addressed to Dr. Mark Townsend, and co-counsel at 5:18 P.M. on June 2, 2008.

163.    The second e-mail in Attachment T was sent by Dr. Mark Townsend and addressed or copied to Plaintiff, Dr. Hayes, and co-counsel, stating that Dr. Townsend wanted to send an interim statement.

164.    Plaintiff received the e-mail thread in Attachment T, in the ordinary course of business, at or about the date and time it was sent.

165.    Plaintiff did not respond to the e-mail thread in Attachment T and disagree that invoices should be sent at that time.

166.    The document attached hereto as Attachment U is an e-mail thread Bates-numbered BargePSLCWeisSeym000469 through BargePSLCWeisSeym000472 with the top e-mail sent by Dr. Mark Townsend and addressed or copied to Dr. Jill Hayes, Plaintiff, others on the medical team, and counsel at 7:47 P.M. on May 29, 2008.

167.    The second e-mail in Attachment U was sent by Dr. Jill Hayes at 6:09 P.M. on May 29, 2008, addressed or cc'd to Plaintiff, others on the medical team, and counsel stating that she had sent out her first invoice already.

168.    Plaintiff received the second e-mail in Attachment U, in the ordinary course of business, at or about the date and time it was sent.

169.    Plaintiff did not respond to the second e-mail in Attachment U and disagree that payments on invoices should be made at that time, or that invoices should not be sent at that time.

170.    The fourth e-mail in Attachment U was sent by Brian Gilbert on May 29, 2008 at 3:47 P.M. and addressed or cc'd to Plaintiff, others on the medical team, and counsel, and stated:

   Invoices should actually be addressed to Barge PSLC, 821 Baronne Street, New Orleans, LA 70113, not to Karen Wiedemann, as the Barge PSLC is responsible for expenses, not Karen.

171.    The natural reading of the fourth e-mail in Attachment U is that the Barge PSLC was responsible for paying invoices, not individual attorneys.

172.    Plaintiff received the fourth e-mail in Attachment U, in the ordinary course of business, at or about the date and time it was sent.

29

173.    Plaintiff did not respond to the fourth e-mail in Attachment U and disagree that the Barge PSLC was responsible for paying invoices, not individual attorneys.

174.    The document attached hereto as Attachment V is an e-mail thread Bates-numbered BargePSLCWeisSeym000534 through BargePSLCWeisSeym000538 with the top e-mail sent by Richard Seymour and addressed or copied to Dr. Jill Hayes, Plaintiff, Dr. Mark Townsend, and co-counsel at 2:52 P.M. on June 3, 2008.

175.    The top e-mail in Attachment V stated: "Jill, a check for your bill is going out to you today."

176.    Plaintiff received the e-mail thread in Attachment V, in the ordinary course of business, at or about the date and time it was sent.

177.    Plaintiff did not respond to the e-mail thread in Attachment V and disagree that payments on invoices should be made at that time, or that invoices should not be sent at that time.

178.    The document attached hereto as Attachment W is an e-mail thread Bates-numbered BargePSLCWeisSeym000594 through BargePSLCWeisSeym000597 with the top e-mail sent by Richard Seymour and addressed or copied to Dr. Mark Townsend, Plaintiff, others on the medical team, and co-counsel at 5:46 P.M. on June 6, 2008, with the subject line "Re: Barge Cases: Conference Call on Draft Report."

179.    The third e-mail in Attachment W is an e-mail sent by Richard Seymour and addressed or copied to Plaintiff, others on the medical team, and co-counsel at 4:10 P.M. Eastern Daylight Time on June 6, 2008, stating in part that it was time for the draft report and continuing:

> We need to see the draft this weekend or Monday. Remember, this is not a report to diagnose anyone with anything; it's a report on range and commonality and what makes sense going forward, informed by what you have seen and studied but without needing to pin everything down.

180.    Plaintiff received the e-mail thread in Attachment W, in the ordinary course of business, at or about the date and time it was sent.

181.    Plaintiff received the third e-mail in the thread in Attachment W, in the ordinary course of business, at or about the date and time it was sent.

182.    The document attached hereto as Attachment X is an e-mail thread Bates-numbered BargePSLCWeisSeym001254 through BargePSLCWeisSeym001259 with the top e-mail sent by Richard Seymour and addressed or copied to Dr. Mark Townsend, Plaintiff, others on the medical team, and co-counsel at 2:34 P.M. Eastern time on June 29, 2008, with the subject line "Re: Barge Medical: Expert Report."

183.    The third e-mail in Attachment X is an e-mail sent by Richard Seymour and addressed or copied to Plaintiff, others on the medical team, and co-counsel at 12:21 A.M. Eastern time on June 29, 2008, listing "the questions I expect the judge would like to see information about in the medical report, whether or not complete answers are in," and listing a number of questions.

184.    The second e-mail in Attachment X is a reply by Dr. Mark Townsend sent on June 29, 2008 at approximately 2:07 P.M., stating:

> I don't recall whether you all said you were amenable to using a third-party to assist us in gathering and assembling documents, e.g. FirmLogic?  Although Rick, Jill and I have no reason not to believe we cannot complete [sic] the work report by COB tomorrow, FirmLogic would work with us (under separate contract with you) to re-sort and re-compile the information.
> Thanks,
> Mark

185.    The first e-mail in Attachment X is an e-mail sent by Richard Seymour and addressed or copied to Plaintiff, others on the medical team, and co-counsel at 2:34 P.M. Eastern time on June 29, 2008, rejecting the idea of hiring a contractor to help Plaintiff and the medical team prepare the expert report.

31

186.   Plaintiff received each part of the e-mail thread in Attachment X, in the ordinary course of business, at or about the date and time it was sent.

187.   When Plaintiff was retained, he did not inform any of the attorneys working with the Barge P.S.L.C. that he needed a contractor such as FirmLogic in order to help complete his report.

### 2.   The Tasks Given to the Medical Team

188.   The task Plaintiff and the others on the medical team were given was to come up with instruments that would inexpensively evaluate the mental health of a large number of people after a disaster.

189.   Plaintiff and the others on the medical team were informed, at or near the start of his and their work on the Barge case, that the medical team needed to show, for persons who had mental problems, whether the flooding caused their problems or an escalation of any pre-existing problems.

190.   Plaintiff and the others on the medical team were informed, at or near the start of his and their work on the Barge case, that the medical team needed to be able to show that there was a means of identifying any faking of symptoms.

191.   Plaintiff and the others on the medical team were informed, at or near the start of his and their work on the Barge case, that we needed to test the instruments they identified on a small number of plaintiffs and class members.

192.   The first task given to the medical team was to identify the instruments to be used.

193.   The second task was to field-test the instruments.

194.   The third task given to the medical team was to prepare the written report.

### 3.    The Existence of an Adequate, Field-Tested Instrument

195.    Plaintiff and the members of the medical team never informed any of the Defendants in this case that instruments that would accomplish this purpose had already been developed and field-tested by the Centers for Disease Control.

196.    The Centers for Disease Control and Prevention developed a "Mental Health Survey Instrument."

197.    The Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention was at all relevant times available on-line.

198.    The Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention had explanatory notes that were available at all relevant times.

199.    The Centers for Disease Control and Prevention were prepared and ready at all relevant times to help professionals implement the Mental Health Survey Instrument.

200.    The CDC summary said of the Mental Health Survey Instrument at all relevant times:

> This data instrument provides health departments and other decision-makers with core data useful for investigating the psychological symptoms associated with a mass casualty event.  Specifically, the instrument assesses symptoms of anxiety, depression, acute and posttraumatic stress disorders, and problematic drinking.  The instrument was adapted from several tools.  Its contents or format can be modified to accommodate the circumstances of a particular mass casualty event.  Each data element is defined in the Explanatory Notes, so that local or state health departments can quickly train and dispatch workers to collect comparable mental health data.  The tool may be administered during phone interviews, face-to-face interviews, or paper-and-pencil assessments.  These data can then be provided to decision-makers to help guide public health responses to the mass casualty event or provide the basis for more in-depth investigations.  For further guidance about implementing the data instrument or assistance with data analysis, send an e-mail to CDC's Injury Center at OHCINFO@cdc.gov.

> See the discussion and links at http://www.bt.cdc.gov/masscasualties/mhsurvey.asp.

33

### 4.     Plaintiff's Familiarity with the Existing, Adequate Instrument

201.     A psychiatrist of Plaintiff's stature, as alleged in his Complaint, should have known, at all relevant times, of the existence of the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention to assess the mental health of persons in mass disasters.

202.     Plaintiff did in fact know that the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention had been field-tested and found to be adequate to assess the mental health of persons in mass disasters.

203.     A psychiatrist of Plaintiff's stature, as alleged in his Complaint, should have known, at all relevant times, that the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention had been field-tested and shown to be accurate for assessment of the mental health of persons in mass disasters.

204.     Plaintiff did in fact know of the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention had been field-tested and shown to be accurate for assessment of the mental health of persons in mass disasters.

### 5.     Plaintiff's Concealment of the Existence of an Adequate, Field-Tested Instrument, and the Performance of Unnecessary Work

205.     Plaintiff did not inform counsel for the Barge plaintiffs of the existence of the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention.

206.     Plaintiff did not inform counsel for the Barge plaintiffs that the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention had been field-tested and shown to be accurate for assessment of the mental health of persons in mass disasters.

207.     Plaintiff's representation that his rate was $600 an hour necessarily implied that he knew the field.

208.     Plaintiff's representation that his rate was $600 an hour necessarily required him to be candid and inform the Barge P.S.L.C. about the availability of any instrument that had already been field-tested and that would have a material mount of the medical team's work unnecessary.

209.     Plaintiff's failure to mention to Defendants the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention resulted in a large increase in the time spent by the medical team.

210.     Plaintiff's failure to mention to Defendants the Mental Health Survey Instrument developed by the Centers for Disease Control and Prevention resulted in a material increase in the fees he filed the Complaint in order to collect.

211.     The knowing performance of unnecessary work is only make-work.

212.      The knowing performance of unnecessary work is not compensable.

### 6.     The January 2, 2009 Meeting of Counsel

213.     Plaintiff listened on a telephone to the January 2, 2009 meeting Plaintiff's counsel had with a group of Defendants in the office of Plaintiff's counsel.

214.     Plaintiff heard his counsel state to Defendants in that January 2, 2009 meeting that defendants were incompetent to have trusted a retained expert not to do unnecessary work.

215.     Plaintiff did not interrupt and correct the statement of his counsel described in paragraph 148 above.

216.     Plaintiff heard his counsel state to Defendants in that January 2, 2009 meeting that Defendants were incompetent to have trusted a retained expert not to cheat Defendants.

217.     Plaintiff did not interrupt and correct the statement of his counsel described in paragraph 150 above.

218.    Plaintiff heard his counsel state to Defendants in that January 2, 2009 meeting that Plaintiff had the right to do whatever he wanted, because Defendants had not put an explicit constraint on Plaintiff.

219.    Plaintiff did not interrupt and correct the statement of his counsel described in paragraph 152 above.

220.    Plaintiff heard his counsel state to Defendants in that January 2, 2009 meeting that Plaintiff had the right to charge us for as much time as much as he wanted, because Defendants had not put an explicit constraint on Plaintiff.

221.    Plaintiff did not interrupt and correct the statement of his counsel described in paragraph 154 above.

### 7.   Plaintiff's Knowledge that Funds for Expert Work Were Limited

222.    Defendants informed the medical team, including Plaintiff, at various relevant times during their tasks that funds for the project were limited.

223.    Defendants informed the medical team, including Plaintiff, at various times during their tasks that it was important that the work be done as inexpensively as possible.

224.    At the outset of their involvement in the case, Plaintiff was informed by the Barge P.S.L.C. that plaintiffs were representing a putative class of residents of the Lower Ninth Ward and the part of St. Bernard Parish West of Paris Road.

225.    At the outset of their involvement in the case, Plaintiff was informed by the Barge P.S.L.C. that many members of the putative class had low or no incomes.

226.    At the outset of their involvement in the case, Plaintiff was informed by the Barge P.S.L.C. that there were other experts in the case whose fees also had to be paid.

227.    At the outset of their involvement in the case, Plaintiff was informed by the Barge P.S.L.C. that payment of expert fees was not contingent on plaintiffs' winning the case.

228.     At the outset of their involvement in the case, Plaintiff was informed by the Barge
P.S.L.C. that plaintiffs would ask the Court to reimburse the fees from the judgment for the class,
or for plaintiffs if the case did not proceed as a class action.

229.     At the outset of their involvement in the case, Plaintiff was informed by the Barge
P.S.L.C. that their expert fees would need to be reviewed by the Court in the event that plaintiffs
won, in order to support an award of fees from the judgment for plaintiffs and/or their class.

230.     At the outset of their involvement in the case, Plaintiff was informed by the Barge
P.S.L.C. that the Barge P.S.L.C. did not want to incur any fees that could not reasonably be
included in a request for reimbursement from the class award.

231.     It was thus clear to Plaintiff at all relevant times that his fees may ultimately come
from the plaintiffs and/or their class.

### 8.     Limits on Plaintiff's Authorization to Work

232.     The Barge P.S.L.C. never authorized Plaintiff to spend time unreasonably.

233.     The Barge P.S.L.C. never authorized Plaintiff to spend unlimited amounts of time.

234.     The Barge P.S.L.C. never authorized Plaintiff to spend time unreasonably.

235.     The Barge P.S.L.C. never authorized Plaintiff to spend unlimited amounts of time.

236.     The Barge P.S.L.C. only authorized Plaintiff to perform specific tasks.

237.     The Barge P.S.L.C.'s authorization of Plaintiff to perform specific tasks did not
reasonably imply that Plaintiff was free to act unreasonably.

### 9.     Plaintiff's Knowledge of the Consequences of Submitting False or Inflated Time Statements

238.     At all relevant times, Plaintiff had actual knowledge that submitting false time
statements could, in the event that plaintiffs won the case, cheat plaintiffs and class members out
of part of their recoveries.

239.    At all relevant times, Plaintiff had actual knowledge that submitting inflated time statements could, in the event that plaintiffs won the case, cheat plaintiffs and class members out of part of their recoveries.

240.    At all relevant times, Plaintiff had actual knowledge that submitting unjustified time statements could, in the event that plaintiffs won the case, cheat plaintiffs and class members out of part of their recoveries.

### 10.    Plaintiff's Difficulty In Writing the Expert Report

241.    Plaintiff informed Defendants, when the deadline for the report was imminent, that he did not have experience in writing reports of the type required for expert reports in Federal court.

242.    Plaintiff attempted to persuade Defendants, when the deadline for the report was imminent, that Defendants should approve his hiring of a company to do the actual writing of the report on which he was supposed to testify.

243.    Defendants refused to pay to have third parties, with no prior connection to the case, prepare Plaintiff's expert report.

### 11.    The Inadequacy of Plaintiff's Expert Report

244.    Plaintiff produced a 56-page expert report, Attachment A hereto, excluding the blank page 57 and the appendices.

245.    Plaintiff produced his 56-page report just before the deadline.

246.    At the time Plaintiff produced the report, there was no time for substantial changes to be made.

247.    Part U of the Report, entitled "List of all documents and materials reviewed of considered, began near the top of page 46 and ended on page 56.

248.    Eleven pages among the Plaintiff's 56-page expert report were a list of references.

38

249.   Excluding the references, only 45 pages remained in the body of Plaintiff's expert report for Plaintiff's discussion of substance.

250.   Part I of Plaintiff's expert Report, Attachment A hereto, is entitled "Expert Opinions on the Mental Health Evaluation and Treatment Needs of Children and Adolescents.

251.   Part I of the Report consists of more than thirteen pages, beginning on the bottom of page 22 and ending on page 36.

252.   Part I of the Report was written by Dr. Jill Oshofsky and Dr. Howard Oshofsky.

253.   Plaintiff inserted the 13-page contribution of Dr. Jill Oshofsky and Dr. Howard Oshofsky in the expert report.

254.   Excluding formatting, Plaintiff did not make any material changes in the 13-page contribution of Dr. Jill Oshofsky and Dr. Howard Oshofsky before inserting it in his expert report.

255.   Excluding the references and the work of Dr. Jill Oshofsky and Dr. Howard Oshofsky, only 32 pages remained in the body of Plaintiff's expert report for Plaintiff's discussion of substance.

256.   Part B of Plaintiff's expert Report, Attachment A hereto, is entitled "Independent Studies."

257.   Part B of the Report begins in the middle of page 5, and ends on the middle of page 12.

258.   The seven pages of Part B of Plaintiff's expert report were simply descriptions of independent studies.

259.   Plaintiff performed no material original work in his seven pages of descriptions of independent studies performed by others.

260. Excluding the references and the materially unchanged work of Dr. Jill Oshofsky and Dr. Howard Oshofsky and the descriptions of independent work performed by others, only 25 pages remained for Plaintiff's discussion of substance.

261. Part C of Plaintiff's expert Report, Attachment A hereto, is entitled "Collaborators and Consultants."

262. Part C of the Report begins in the middle of page 12, and ends past the middle of page 16.

263. The four pages of Part C of Plaintiff's expert report were simply descriptions of others and their qualifications.

264. Plaintiff performed no material original work in his four pages of descriptions of others and their qualifications.

265. Excluding the references and the materially unchanged work of Drs. Jill and Howard Oshofsky and the descriptions of independent work performed by others and the list of collaborators and their qualifications, only 21 pages remained for Plaintiff's discussion of substance.

266. The remaining 21 pages of Plaintiff's expert report were dictated.

267. The remaining 21 pages of Plaintiff's expert report do not intrinsically indicate that any substantial amount of time was spent in their preparation.

268. Plaintiff seeks in this lawsuit approximately $12,954.74 for each of these 21 pages in the body of Plaintiff's Report in which he discussed substance.

269. There is a substantial question whether Plaintiff's expert report could have been admitted in evidence under the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

40

**12.**   **Plaintiff's Duty to Barge Counsel, His Breach of That Duty, sand its Consequences**

270.   A covenant of good faith and fair dealing applied to Plaintiff's work for the Barge P.S.L.C.

271.   Plaintiff's submission of interim statements would have informed the Barge P.S.L.C. of the extent of the fees he was charging.

272.   Plaintiff's submission of interim statements would have allowed the Barge P.S.L.C. to limit Plaintiff's expert fees by direct him to perform his tasks differently or more efficiently.

273.   Plaintiff's submission of interim statements would have allowed the Barge P.S.L.C. to limit Plaintiff's expert fees by discharging him and having someone else do the necessary work.

274.   Dr. Weisler did not provide the Barge P.S.L.C. with any interim statements.

275.   The Barge P.S.L.C. never asked Plaintiff not to submit interim statements.

276.   On the medical team, Dr. Jill Hayes submitted interim statements.

277.   On the medical team, Dr. Mark Townsend submitted an interim statement.

278.   Nothing prevented Plaintiff from informing the Barge P.S.L.C. of the extent of the fees he was charging.

**13.**   **The August 1, 2008 Telephone Conference on Plaintiff's Billing**

279.   On or about August 1, 2008, Plaintiff participated in a telephone conversation with representatives of the Barge P.S.L.C. about his billing.

280.   In that August 1, 2008, telephone conversation, Plaintiff represented that, during the expert study, Plaintiff and Dr. Townsend had repeatedly offered to provide interim statements so that the Barge P.S.L.C. could see the extent of the expert fees piling up and make

41

any changes it wanted in its requests to the medical experts, and that Alan Fuchsberg told them not to submit interim statements.

281.    Plaintiff's statement described in paragraph 280 above was false.

282.    Plaintiff knew when he made the statement described in paragraph 280 above that it was false.

283.    In that August 1, 2008, telephone conversation, Plaintiff represented that, during the expert study, Mr. Fuchsberg explicitly told Plaintiff and Dr. Townsend that "money was no object."

284.    Plaintiff's statement described in paragraph 283 above was false.

285.    Plaintiff knew when he made the statement described in paragraph 283 above that it was false.

286.    In that August 1, 2008, telephone conversation, Plaintiff represented that, during the expert study, Mr. Fuchsberg had explicitly told Plaintiff and Dr. Townsend that "the size of the bill did not matter."

287.    Plaintiff's statement described in paragraph 286 above was false.

288.    Plaintiff knew when he made the statement described in paragraph 286 above that it was false.

289.    In that August 1, 2008, telephone conversation, Plaintiff represented that, during the expert study, Mr. Fuchsberg had explicitly told Plaintiff and Dr. Townsend that "there would be no problem paying any statement."

290.    Plaintiff's statement described in paragraph 289 above was false.

291.    Plaintiff knew when he made the statement described in paragraph 289 above that it was false.

292.     In that August 1, 2008, telephone conversation, Plaintiff represented that, during the expert study, Mr. Fuchsberg told Plaintiff and Dr. Townsend that the Barge P.S.L.C. was completely tied up litigating some major things, and that they should not distract the Barge P.S.L.C. by sending it an interim statement.

293.     Plaintiff's statement described in paragraph 292 above was false.

294.     Plaintiff knew when he made the statement described in paragraph 292 above that it was false.

### 14.     The January 2, 2009 Meeting

295.     During the January 2, 2009, meeting of Plaintiff's counsel and a group of Defendants in the office of Plaintiff's counsel, Plaintiff heard his counsel state that Plaintiff had turned over to his counsel e-mails or other documentation supporting the statements on or about August 1, 2008 that are described above.

296.     During the January 2, 2009, meeting of Plaintiff's counsel and a group of Defendants in the office of Plaintiff's counsel, Plaintiff heard his counsel refuse to provide Defendants with copies of the e-mails or other documentation he claimed supported the statements on or about August 1, 2008 that are described above.

297.     During the January 2, 2009, meeting of Plaintiff's counsel and a group of Defendants in the office of Plaintiff's counsel, Plaintiff heard his counsel state that he would wait until formal discovery in order to provide Defendants with copies of the e-mails or other documentation that he claimed supported the statements on or about August 1, 2008 that are described above.

298.     Plaintiff does not have any e-mails or other documentation that support the statements on or about August 1, 2008 that are described above.

299.    Plaintiff never turned over to his counsel any e-mails or other documentation that support the statements on or about August 1, 2008 that are described above.

300.    Plaintiff never had any e-mails or other documentation that support the statements on or about August 1, 2008 that are described above.

301.    Plaintiff did not tell the truth when he told representatives of the Barge P.S.L.C. that he had e-mails or other documentation that support the statements on or about August 1, 2008 that are described above.

### 15.    Plaintiff's Hourly Rate

302.    Attachment Y hereto is an e-mail Plaintiff sent on August 4, 2008 at 12:31 P.M. to counsel working on the Barge case identified in ¶ 6 of Plaintiff's Complaint herein, and to Dr. Mark Townsend, Bates-numbered BargePSLCWeisSeym001530 through BargePSLCWeisSeym001533 containing information about expert witness fees.

303.    Attachment Z hereto is an attachment to Plaintiff's e-mail in Attachment Y, Bates-numbered BargePSLCWeisSeym001529, and entitled "Private Diagnostic Clinic, PLLC / Medical-Legal Fee Guide."

304.    Plaintiff is not a full-time staff member of the ""Private Diagnostic Clinic, PLLC" referenced in Attachment Z.

305.    Plaintiff is not a part-time staff member of the ""Private Diagnostic Clinic, PLLC" referenced in Attachment Z.

306.    The "Medical-Legal Fee Guide" in Attachment Z refers to Bonnie Mincey-PDC Finance.

307.    The "Medical-Legal Fee Guide" in Attachment Z states in part: "Physicians are to notify Bonnie Mincey regarding deposition logistics.  All billing for the above services will be processed through her office."

44

308.     Plaintiff did not involve Bonnie Mincey in any of his work in the Barge case identified in ¶ 6 of Plaintiff's Complaint herein.

309.     Plaintiff did not notify Bonnie Mincey of his scheduled deposition in the Barge case identified in ¶ 6 of Plaintiff's Complaint herein.

310.     Plaintiff did not process any of his billing, for his services in the Barge case identified in ¶ 6 of Plaintiff's Complaint herein, through Bonnie Mincey's office.

### 16.     Legal Contentions

311.     Expert witnesses are only entitled to reasonable compensation.

312.     The fees of an expert may be reduced if expenses were needlessly or excessively incurred.

313.     Every demand made by Plaintiff has been for a different total amount.

314.     Every demand made by Plaintiff has increased over the amount demanded previously for the same time period.

315.     Every statement of time submitted by Plaintiff to any Defendant has stated days on which work was assertedly performed that differ from the days stated in other statements of time.

316.     Every statement of time submitted by Plaintiff to any Defendant has asserted amounts of time spent on specific days that differ from the amounts of time spent on specific days that are asserted in other statements of time.

317.     Every description of compensable activities on specific days submitted by Plaintiff to any Defendant has asserted compensable activities on specific days that differ from the compensable activities on specific days that are asserted in other statements of time.

318.    Every statement of time submitted by Plaintiff to any Defendant has stated a daily

block of time, and has not broken down the time by different activities within the days for which

compensation was claimed.

Respectfully Submitted,


Richard T. Seymour
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
rick@rickseymourlaw.net
  (202) 862-4320 – Telephone
  (202) 549-1454 – Cell
  (800) 805-1065 – Facsimile

*Attorney for Defendants Richard T. Seymour and
"Richard T. Seymour P.L.L.C."*

Dated:  February 23, 2011

46

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2011, I served a copy of Defendants

Richard T. Seymour and (Misnamed) Richard T. Seymour, P.L.L.C.'s First Requests for

Discovery from Plaintiff Richard H. Weisler on counsel of record for Plaintiff, as shown below,

by e-mail, facsimile, and first-class mail, postage prepaid and addressed as shown below:

> Andrew C. Wilson, Esq.
> Simon, Peragine, Smith & Redfearn, L.L.P.
> 30th Floor - Energy Centre
> 1100 Poydras Street
> New Orleans, LA 70163-3000

Richard T. Seymour
*Attorney for Defendants Richard T. Seymour*
*and "Richard T. Seymour P.L.L.C."*