## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Katrina Canal Breaches | § | Civil Action |
| Consolidated Litigation | § | No.05-4182 "K" (2) |
| _____ | § | Judge Duval |
| | § | Mag. Wilkinson |
| Pertains to MRGO and | § | |
| *Armstrong*, No. 10-866 | § | |
| _____ | § | |

## REPLY MEMORANDUM IN SUPPORT OF
## <u>DEFENDANT UNITED STATES' MOTION TO DISMISS</u>

In their response, Fred Holmes, Alvin Livers, and Clifford Washington (hereafter referred to collectively as "Plaintiffs-Intervenors") urge this Court to ignore their claims' jurisdictional deficiencies, and accuse the United States of "elevat[ing] form over substance to the detriment of all of the parties and the participants."[1]

To the contrary, the United States implores the Court to deal with the very real jurisdictional issues it has raised, and thereby avoid the disruption and tremendous waste of resources that are certain to occur

_____

[1] Doc. 20249 at 3.

-1-

if these problems are not confronted and dealt with now.  Neither the

parties nor the Court may ignore the jurisdictional defects the United

States has identified, which foreclose the Court from adjudicating the

merits of Plaintiffs-Intervenors' claims.  *See Plyler v. United States*, 900

F.2d 41, 42-43 (4th Cir. 1990) (vacating judgment entered against

United States after trial on merits, and remanding with instructions to

dismiss action for lack of jurisdiction because plaintiffs had failed to

exhaust administrative remedies before instituting suit as required by

28 U.S.C. § 2675(a)).

## ARGUMENT

Relying primarily on this Court's prior rulings that the Armstrong

plaintiffs (*i.e.*, Kenneth P. Armstrong, Jeanine B. Armstrong, and Ethel

Mae Coates) exhausted their administrative remedies with respect to

their EBIA claims by filing the MRGO Master Consolidated Class

Action Complaint in this litigation (Doc. 3415), *see In re Katrina Canal

Breaches Consol. Litig.*, Civil Action No. 05-4182 (Doc. 19611), 2010 WL

487431 at *12-15 (E.D. La. Feb. 2, 2010), and *In re Katrina Canal

Breaches Consol. Litig.*, Civil Action No. 10-866 (Doc. 20164), 2011 WL

651946 at *11 (E.D. La. Feb. 11, 2011), Plaintiffs-Intervenors argue that they too have satisfied with the FTCA's administrative exhaustion requirement.

1.  As a threshold matter, the United States again urges this Court to abandon its novel reading of *Williams v. United States*, 693 F.2d 555 (5th Cir. 1983), upon which it relied in holding that the Armstrong plaintiffs had exhausted their administrative remedies by filing the MRGO Master Consolidated Class Action Complaint in this litigation. *See In re Katrina Canal Breaches Consol. Litig.*, 2010 WL 487431 at *12-15.  We respectfully suggest that this Court's reading of *Williams* is directly contrary to a binding Fifth Circuit precedent, namely, *Bailes v. United States*, 988 F.2d 1209 (table), 1993 WL 82030 (5th Cir. Mar. 11, 1993).[2]

In *Bailes*, the Court of Appeals affirmed the dismissal of an FTCA suit on the grounds that the plaintiff, a federal prisoner seeking damages for loss of his property by prison officials, had failed to exhaust

---

[2] Although an unpublished opinion, under 5th Circuit Rule 47.5.3 *Bailes* is binding precedent since the case was decided prior to January 1, 1996.  *See Macktal v. U.S. Dept. of Labor*, 171 F.3d 323, 328 n.3 (5th Cir. 1999).

his administrative remedies before instituting the action.  In seeking dismissal of the suit, the United States relied on affidavits from several Bureau of Prisons employees attesting that they had found no administrative claim related to the subject matter of the plaintiff's suit after searching the pertinent files and records.  In response, although the plaintiff submitted some evidence that the claim had been mailed to BOP, he proffered no evidence that the agency actually had received the claim.  Since a claim is not "presented" under the FTCA until it is received by the concerned Federal agency, the Court of Appeals held that the district court's dismissal of the prisoner's suit was proper.  *See Bailes*, 1993 WL 82030 at *1 (citing 28 C.F.R. § 14.2(a)).

Of critical significance here, the Fifth Circuit then went on to reject the plaintiff's alternative argument that he had satisfied the FTCA's administrative prerequisites by attaching a copy of an administrative claim form to his federal court complaint.  Noting that "[section] 2675(a) by its plain language requires that a claim be presented to the agency *before* an action is commenced," *id.* at *1 (emphasis in original), the Court of Appeals held:

-4-

> The statutory purpose is to facilitate settlement of tort claims without litigation.  Simultaneous filing of the administrative claim and the judicial complaint comports with neither the letter nor the spirit of the statute.

*Id.* (footnotes omitted) (citing with approval *Eure v. U.S. Postal Service*, 711 F.Supp. 1365, 1369 (S.D. Miss. 1989) ("Plaintiffs argue that the complaints themselves served as written notification of a claim.  If this argument were true, the simple filing of a lawsuit would effectively circumvent the FTCA procedural prerequisite.")).  *Accord, e.g., Medina v. City of Philadelphia*, 219 Fed. App'x 169, 173 (3d Cir. 2007); *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000); *Schaeffer v. A.O. Smith Corp.*, 36 F.3d 1097 (table), 1994 WL 520853 at *2 (6th Cir. Sept. 21, 1994).

Thus, the Court of Appeals in *Bailes* specifically refused to countenance what this Court, relying on its erroneous reading of *Williams*, has ruled is a permissible way for a plaintiff to exhaust his administrative remedies, *i.e.*, by filing in federal court a complaint which prematurely institutes an action against the United States under

the FTCA.  *Bailes*, in short, establishes that the FTCA's administrative exhaustion requirement may not be satisfied in this way.

Permitting a plaintiff to exhaust his administrative remedies by filing such a pleading in a federal court action under the FTCA not only violates the letter of the statute, but also frustrates the administrative exhaustion requirement's statutory purpose, which – as the Fifth Circuit specifically recognized in *Bailes* – "is to facilitate settlement of tort claims *without litigation*."  1993 WL 82030 at *1 (emphasis added).

Indeed, as the Supreme Court subsequently recognized when it decided *McNeil v. United States*, 508 U.S. 106 (1993), when Congress amended the FTCA in 1966 to require exhaustion of the administrative remedies before an action could be instituted under the statute, it was seeking (1) " to reduce unnecessary congestion in the courts," and (2) to relieve the Department of Justice of the burden of defending FTCA suits involving claims that "c[ould] be settled . . . without the need for filing suit and possible time-consuming litigation."  *See id.*, at 112 nn. 7 & 8 (quoting S.Rep. No. 1327, 89th Cong., 2d Sess. 3-4 (1966), *reprinted in* 1966 U.S. Code Cong. & Admin. News 2515, 2517-2518).

Allowing the administrative exhaustion requirement to be satisfied by the filing of a pleading that prematurely institutes an FTCA suit clearly conflicts with these objectives, as the Supreme Court itself recognized. *See id.* at 112 ("Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions."). It was for this reason that the Supreme Court concluded in *McNeil* that "Congress intended to require *complete exhaustion* of the Executive remedies *before* invocation of the judicial process." *Ibid.* (emphasis added).

Furthermore, as we have endeavored to explain in our earlier submissions, the very pendency of litigation under the FTCA itself precludes any administrative settlement of the tort claims that are the subject of that litigation. This is because under the FTCA the Attorney General (or his designee) has the *exclusive* authority to settle a tort claim once an action on that claim has been commenced. *See* 28 U.S.C. § 2677 ("The Attorney General or his designee may arbitrate, compromise, or settle any claim cognizable under section 1346(b) of this title,

after the commencement of an action thereon); *United States v. Reilly*, 385 F.2d 225, 229 (10th Cir. 1967) (construing § 2677) ("We take it to be settled that where Congress has set out a statutory procedure for the compromise of matters involving the United States, it implicitly negatives the use of any other procedure.").

Not only does the FTCA's legislative history amply support the conclusion that Federal agencies lose their authority to administratively settle tort claims once litigation on those claims has begun,[3] but extensive case law construing similar statutory schemes (such as those governing tax refunds and government contract disputes) also make it

_____

[3] As we have explained previously, the relevant provisions of the FTCA were drafted by the Department of Justice, and a representative of the Department testified before Congress to explain how these provisions would operate. *See Hearings before Judiciary Committee on H.R. 5373 and H.R. 6463*, 77th Cong., 2d Sess. 28 (1942) ("Settlement of claims before suit is left to the Federal agency.  If suit has been instituted, however, only the Attorney General may compromise the claim in question."); *id.* at 32 ("The Attorney General has exclusive power to compromise or settle claims after suit has been brought."); *id.* at 44 ("Once suit has been started on a claim[,] only the Attorney General would have the authority to compromise or settle that claim, and the Federal Agency concerned could no longer adjust or determine it[.]").

clear that while a claim is the subject of litigation, the authority to

settle the claim resides exclusively with the Attorney General.[4]

The upshot, of course, is that by instituting litigation under the

FTCA, a plaintiff makes it impossible for the concerned Federal agency

to administratively settle tort claims which are the subject of the suit

while the litigation remains pending. This fact alone explains why the

filing of a complaint instituting a suit under the FTCA cannot serve to

satisfy the statute's administrative exhaustion requirement, which is

---

[4] *See, e.g., Computervision Corp. v. United States*, 445 F.3d 1355,
1372 (Fed. Cir. 2006) (once taxpayer files suit for refund, IRS's authority
to allow or disallow claim necessarily terminates since Department of
Justice has been given exclusive authority to compromise claims in
litigation); *Cencast Services, L.P. v. United States*, 94 Fed.Cl. 425, 450 &
n.27 (2010) (allowing plaintiff to cure jurisdictional defect by filing new
administrative tax refund claim after case already has been brought in
court would effectively read administrative exhaustion requirement out
of tax refund statute since authority to compromise dispute is
transferred from IRS to Department of Justice once lawsuit has been
filed in court); *Universal Shelters of America, Inc. v. United States*, 87
Fed.Cl. 127, 145-46 (2009) (if claim is already pending in litigation,
contracting officer has no authority to issue a final decision on claim
because exclusive authority to settle the claim then rests with
Department of Justice); *Sipco Services & Marine, Inc. v. United States*,
30 Fed.Cl. 478, 485 (1994) (once contractor's claim becomes subject of
litigation, contracting officer is divested of authority to resolve claim
and under such circumstances contracting officer's failure to issue a
decision cannot be deemed a denial of claim for purposes of Contract
Disputes Act "deemed denial" provision).

intended to afford the concerned Federal agency with the opportunity to administratively settle tort claims *before* litigation is begun.

Finally, nothing in *Williams*, when properly read, is inconsistent with the United States' position here.  The plaintiff in *Williams* initially had brought an action in state court against an employee of the Postal Service who was driving the vehicle that collided with his automobile. The state court complaint described the property damage to the plaintiff's car, contained an itemized listing of damages which the plaintiff sought to recover for personal injuries suffered as a result of the accident, and specified that the total amount of damages sought was $218,000.

Although the complaint was filed against the Postal Service employee individually, it apparently was referred to an Assistant U.S. Attorney.  After the U.S. Attorney notified the plaintiff that an administrative claim would have to be filed with the Postal Service in order for the federal courts to have jurisdiction over a suit filed pursuant to the FTCA, the plaintiff voluntarily dismissed his state court

suit so that he could pursue an administrative claim with the Postal
Service.

Following the dismissal of his state court suit against the Postal
Service employee, but still within two years after the date of the
accident, the plaintiff filed a Standard Form 95 with the Postal Service,
which sought $7,000 for property damage, but did not indicate any
amount sought for personal injuries, or the total amount claimed.  The
Postal Service subsequently denied the claim, and the plaintiff then
filed a suit in federal district court under the FTCA seeking $187,000 in
damages for personal injuries and $8,000 for property damage.

The district court dismissed the plaintiff's suit for lack of subject
matter jurisdiction, concluding that the plaintiff had failed to file a
proper administrative claim within two years of the accident.  The
district court held that the Standard Form 95 filed by the plaintiff did
not constitute a proper administrative claim because it failed to indicate
an amount sought for personal injuries and the total amount claimed,
and declined to use the itemization of damages contained in the

plaintiff's state court complaint to supplement the information
contained in the plaintiff's Standard Form 95.

On appeal, the plaintiff contended that the district court had erred
in dismissing his action because the itemized claim for damages
contained in the complaint filed in his state suit should have been
considered together with his Standard Form 95 to determine whether
the plaintiff's administrative claim had satisfied the FTCA's notice
requirements.  The Court of Appeals agreed, and reversed the dismissal
of the plaintiff's suit.

The critical differences between *Williams* and the instant
litigation are obvious.  The complaint that the Court of Appeals allowed
to be used to supplement the plaintiff's Standard Form 95 in *Williams*
was not one which instituted an action against the United States in
federal court under the FTCA, but instead one which was filed in a state
court suit against an individual employee of the Postal Service.  That
state court suit was never converted into one against the United States
under the FTCA, or removed to federal court.  Instead, it was
voluntarily dismissed by the plaintiff, who then proceeded to file a

Standard Form 95 with the concerned Federal agency, which then proceeded to dispose of the claim by finally denying it. Only then for the first time did the plaintiff in *Williams* institute an action against the United States under the FTCA in federal court.

Thus, utilizing the information contained in the state court complaint to supplement the plaintiff's Standard Form 95 in *Williams* did not violate either the letter or the spirit of the FTCA's administrative exhaustion requirement since that state court complaint did not institute a premature suit against the United States. Furthermore, the state court suit which the plaintiff had brought against the individual Postal Service employee had been dismissed by the time that the plaintiff filed his timely Standard Form 95 with the Postal Service. Thus, no litigation (let alone litigation against the United States under the FTCA) was pending when the plaintiff presented his claim to the Postal Service, and an administrative settlement of the plaintiff's claim by Postal Service therefore was not foreclosed by the pendency of such litigation.

On the other hand, if this Court's reading of *Williams* were correct, then the Court of Appeals would have been required to decide *Bailes* differently than it did.  If, as this Court has concluded is permissible based on its reading of *Williams*, a complaint which prematurely institutes an FTCA action against the United States in federal court can itself serve to satisfy the statute's administrative exhaustion requirement, then the Court of Appeals in *Bailes* should have reversed the district court's judgment dismissing the plaintiff's action, or at the very least vacated that judgment and remanded the case with instructions that the plaintiff be granted leave to file a new action following the dismissal of the prematurely instituted suit.  The Fifth Circuit took neither course, and instead simply affirmed the dismissal of the suit, demonstrating that this Court's reading of *Williams* is incorrect.

For all the foregoing reasons, this Court should abandon its erroneous reading of *Williams*, rather than compounding that error by applying it to the claims of the Plaintiffs-Intervenors in this case.

2.  Even if the Court were inclined to adhere to its prior rulings concerning the Armstrong plaintiffs' exhaustion of their administrative remedies under the FTCA, the logic of those prior rulings nevertheless would compel the dismissal of the Plaintiffs-Intervenors' claims in their current procedural posture.

While the Court ruled that the Armstrong plaintiffs had satisfied the FTCA's administrative exhaustion requirement by filing the original MRGO Master Consolidated Class Action Complaint (Doc. 3415) in this litigation, it also went on to rule that the Armstrong plaintiffs' EBIA claims nevertheless were subject to dismissal because the indisputable prematurity of their suit could not be cured by filing an amended complaint.  *See In re Katrina Canal Breaches Consol. Litig.*, 2010 WL 487431 at *12 ("[W]here a court lacks jurisdiction from a suit's inception, it is axiomatic that the amendment of the suit cannot cure that deficiency.") (citing, *inter alia*, *Reynolds v. United States*, 748 F.2d 291, 293 (5th Cir. 1984)).

In so ruling, the Court specifically declined to treat the filing of the Amended MRGO Master Consolidated Class Action Complaint (Doc.

11471) as having instituted a new action against the United States under the FTCA, and it instead granted the United States' motion to dismiss the EBIA claims asserted by the Armstrong plaintiffs in that pleading, but did so without prejudice to their right to institute a new action to assert their EBIA claims. *See In re Katrina Canal Breaches Consol. Litig.*, 2010 WL 487431 at *15.

The Armstrong plaintiffs thereafter did institute a new civil action to assert their EBIA claims against the United States. *See Kenneth Paul Armstrong, et al. v. United States*, Civil Action No. 10-866 (E.D. La.) (filed March 12, 2010).

Plaintiffs-Intervenors, however, did not seek to intervene in that newly filed action instituted by the Armstrong plaintiffs. Instead, their motion to intervene, which has now been granted by the Court (*see* Doc. 20269), sought intervention to assert on their own behalf the claims asserted in the Amended MRGO Master Consolidated Class Action Complaint (Doc. 11471).[5]

---

[5] As set forth in paragraph 6 of Plaintiffs-Intervenors Complaint in Intervention (Doc. 20242-2):

(continued...)

-16-

In granting their motion to intervene, however, the Court specifically "reserv[ed] to Defendants all rights and defenses, including but not limited to prescription, peremption, and lack of both personal and subject matter jurisdiction." *See* Order dated June 8, 2011 (Doc. 20269).

As already noted, this Court already has ruled that the original MRGO Master Consolidated Class Action Complaint (Doc. 3415) was prematurely filed, a jurisdictional defect that was not cured by the filing of the Amended MRGO Master Consolidated Class Action Complaint (Doc. 11471).

Where, as here, the original suit has been prematurely filed, the intervention by new plaintiffs into that prematurely filed suit likewise does not cure the prematurity of the original suit, nor may it be treated

---

[5](...continued)

> The action into which Intervenors seek to intervene is styled as a class action. The Intervenors seek to intervene into the class action to assert claims on their own behalf for all claims made in the AMENDED MR-GO MASTER CONSOLIDATED CLASS ACTION COMPLAINT, as it is believed that Intervenors will not be adequately represented as to Count III claims.

as the institution of a new action by the intervenors. *See United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 163-64 (1914). Accordingly, the EBIA claims being asserted herein by the Plaintiffs -Intervenors against the United States are subject to dismissal in any event.

## <u>CONCLUSION</u>

Because Plaintiffs-Intervenors have failed to satisfy the FTCA's

exhaustion requirement, the Court must dismiss their claims against

the United States.

Respectfully submitted,

Tony West
Assistant Attorney General

Phyllis J. Pyles
Director, Torts Branch

James G. Touhey, Jr.
Assistant Director, Torts Branch

Robin D. Smith
Senior Trial Counsel, Torts Branch

 s/ Jeffrey Paul Ehrlich
Jeffrey Paul Ehrlich
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4400 / (202) 616-5200 (Fax)
Attorneys for Defendant United States