UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER: 05-4182 "K"(2) JUDGE Duval MAG. Wilkinson |
| PERTAINS TO: MRGO *Armstrong*, No. 10-866 | |

## MEMORANDUM IN SUPPORT TO OVERRULE OBJECTIONS TO PLAINTIFFS' WRITTEN DISCOVERY TO DEFENDANT WGI

### A.    *Introduction*

WGI contends that discovery is limited to facts surrounding its removal of the "wedding cake" structure at the Boland Marine Site and the sewer lift station at the Saucer Marine Site. WGI says res judicata bars liability for any work done on the EBIA except for its work relating to the removal of these two structures. (Ex. A at 2 & n.3; Ex. B at 2 & n.3.) WGI is wrong.

Plaintiffs' negligence claims concern the Defendants' joint undertaking of the Total Environment Restoration Contract, Task Order 26, and all related work throughout the EBIA. WGI has acknowledged as much: "This case concerns demolition, excavation and remediation work WGII did at an abandoned industrial site bounded by a flood control levee and incorporated floodwall in New Orleans." (WGI Mtn. for Recon. at 2 (5th Cir. Doc. No. 00511247118.)) Federal courts have long and often recognized the plaintiff "is the master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). WGI may not rewrite

Plaintiffs' complaint in order to artificially restrict the scope of discovery, including any supplemental discovery responses that may be forthcoming pursuant to Fed. R. Civ. P. 26(e).

Plaintiffs' respectfully request an order overruling WGI's res judicata objection and clarifying that its discovery obligations are not limited to the facts surrounding the removal of the wedding cake structure and sewer lift station. There are two reasons such an order is appropriate:

1.     Plaintiffs did not limit their claims or immunity arguments to these two discrete acts; nor did they concede that all other acts undertaken by WGI were protected by the doctrine of Government Contractor's Immunity ("GCI"). Neither Plaintiffs' complaint nor their summary judgment papers are so limited.

2.     Even if they had, WGI is wrong in arguing that res judicata/claim preclusion controls this question or supports its objections.[1]

**B.      *Plaintiffs Did Not Limit Their Claims to the Saucer & Boland Sites.***

Plaintiffs' complaint does not limit their negligence claims against WGI to the excavations at Boland and Saucer Marine. To the contrary, the Complaint alleges negligence with respect to the extensive work that WGI undertook along the entire eastside of the IHNC between Florida Avenue and Claiborne Avenue pursuant to Task Order 26. For example:

- The Corps hired WGI to "level and clear abandoned industrial sites along the IHNC/Industrial Canal between the flood wall and the canal itself for the purposes of clearing acreage to make way for the digging of a new canal...." (Am. MRGO Master Consolidated Class Action Compl. at 23, ¶ 40 (Doc. No. 11471.))

---

[1] Res judicata and claim preclusion are interchangeable terms. *See Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 704 (5th Cir. 2005) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). Because WGI uses the term "res judicata," Plaintiffs do the same.

- WGI's work included "demolition and site preparation of what was referred to as the East Bank Industrial Area—a 32-acre site located between Florida Avenue and Claiborne Avenue and extending from the canal to the floodwall." (*Id.* at 24, ¶ 41.)

- WGI's "tasks included, but were not limited to, the removal of wharfage, salvage, debris, and other materials from the IHNC…and/or its banks." (*Id.*)

- More specifically, WGI's acts "included, but were not limited to: demolition of abandoned industrial structures on the east side of the canal; removal of underground structures described in Defendant's own recommendation reports as 'extensive excavation and subsurface activity'…removal of canal side obstructions; removal of the Jordan Street Wharf, which included the removal of a concrete deck and support pilings to a depth of 36 feet below mean water level; removal of all electrical, sewer, gas, water, and telephone facilities on the site, including Boland sewer lift station; 'bank removal' that included the vibratory extraction of bulkheads along the canal water's edge; removal of more than fifty structures and more than forty concrete slabs; grid trenching of the entire East Bank Industrial Area; removal of ten sunken or partially sunken barges; removal of an estimated 3,000 pilings at the site, both on land and in the canal, by use of a vibratory extractor (to a depth of 30 feet for land-based pilings and 40-50 feet for canal/water-based pilings); grading and hydro-mulching the site; and other such work…." (*Id.* at 24, ¶ 42.)

- "In performing the work" described in the preceding paragraph, WGI "undermined the integrity of the levee and/or flood wall along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish [which] resulted in underseepage-induced erosion and other damage to the levee and/or flood wall(s), ultimately causing and/or contributing to its/their catastrophic failure." (*Id.* at 25, ¶¶ 43-44.)

- The complaint repeatedly describes WGI's negligence in terms of "its work" as described above and is in no way limited to the sewer lift station or wedding cake structure. (*Id.* at 25, ¶ 46.)

Summary judgment proceedings did not eradicate these claims. WGI's summary judgment motion embraced all five phases of Task Order 26, including Phase Three, which included not only the Boland and Saucer Marine excavations, but also demolition and piling removal, submerged fuel tank cars, soil remediation, the borrow pit at the McDonough Marine site, and the excavation under Surekote Road at the McDonough Marine site, i.e., the

acts described in Plaintiffs' complaint. (WGI MSJ Memo. at 21-42 (Doc. No. 15861-1).)  In

opposing WGI's summary motion, Plaintiffs' reiterated the broad scope of their claims:

> The significant details and critical design choices that are at issue in the
> present case *encompass geotechnical evaluations of the subsurface
> excavations at the EBIA*, as well as the *failure to prevent under-seepage
> erosion that would reduce the integrity of the flood wall*.  WGI has failed to
> prove that the Corps performed any substantive review of these critical design
> choices.

(Pltfs. MSJ Opp. at 23 (Doc. No. 16216)) (emphasis added).

Plaintiffs' opposition also pointed to various data gaps that WGI acknowledged but

failed to address sufficiently with the Corps with respect to WGI's work along the EBIA.  In

particular, Plaintiffs described WGI providing false assurances to the Corps as well as WGI's

failure to provide reasonably precise geotechnical specifications for WGI's work as it related

to "the removal of bank materials from the Industrial Canal, the removal of a sewer lift

station at the Saucer Marine site, the removal of a submerged railroad car from the Industrial

Canal bank, the removal of a concrete anchor foundation at the Boland Marine site, as well

as any additional subsurface structures encountered." (*Id.* at 16.)  Consistent with their

complaint, Plaintiffs argued that these false assurances and data gaps "resulted in substantial

excavations *throughout the EBIA* that altered the flow of sub-surface ground water, opened

portals to sub-surface permeable layers, and allowed the unabated under-seepage through

permeable soils below the flood wall during hurricane Katrina when the EBIA was covered

with high water." (*Id.* at 17) (emphasis added); *see also Id.* at 30 (detailing WGI's failure to

properly specify the sheet pile depth that would have eliminated the destructive underseepage

issues related to "the work at the EBIA").  Plaintiffs' statement of disputed facts employed

similar language, again asserting that "WGI's conduct resulted in substantial excavations

*throughout the EBIA* that altered the flow of sub-surface ground water ... and allowed the unabated under-seepage through the permeable soils below the flood wall...." (Pltfs. Stmt. of Dispute Facts at 7, ¶ 28 (Doc. No. 16216-2)) (emphasis added).

Plaintiffs used the excavations at Boland and Saucer Marine as but two examples of Defendants' negligence with respect to WGI's extensive throughout the EBIA: "Because of the adverse affect under-seepage could have on the integrity of the flood wall, the Corps considers it mandatory that a geotechnical evaluation be performed on excavations *such as the two at the Saucer Marine and Boland Marine sites.*" (*Id.* at 24) (emphasis added). Plaintiffs' statement of disputed facts referred to the sewer lift and wedding cake sites as "two particularly deep excavations" among many excavations "throughout the EBIA." (Pltfs. Stmt. of Undisputed Facts at 7, ¶ 29 (Doc. No. 16216-2)).   WGI cannot wish away these facts and claims.  Even if it could, its res judicata arguments would fall wide of the mark.

### C.    *Res Judicata Does Not Support WGI's Objections.*

Res judicata does not apply because there has been no final judgment on the merits and successive actions are not involved.  Res judicata precludes the same parties from litigating the same cause of action in a subsequent lawsuit if (1) the parties to the later action are identical to, or in privity with, the parties to the prior action; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action concluded with a final judgment on the merits; and (4) the same claim or cause of action was involved in both the prior and the instant action. *Vines*, 398 F.3d at 704-05. [2]

---

[2] Analyzing the issue in terms of collateral estoppel/issue preclusion does not yield a different result.  Collateral estoppel/issue preclusion also requires an earlier judgment between successive actions: "Res Judicata also encompasses a separate preclusive doctrine, collateral estoppel or issue preclusion. *St. Bernard Citizens for Environmental Quality Inc. v. Chalmette Refining, LLC,* 500 F. Supp. 2d 592, 603

Of course, there is neither a final judgment nor a successive action in this instance. Summary judgment was entered in WGI's favor, but it was reversed, resulting in the continued prosecution of the same action. The Fifth Circuit opinion reversing the judgment does not restrict Plaintiffs' claims in any manner; it acknowledges their breadth: "The plaintiffs sued WGI, claiming that its negligent and improper actions in fulfilling the contract were a cause of flood damage resulting from Hurricane Katrina." *In re Katrina Consol. Litig.*, 620 F.3d 455, 457 (5th Cir. 2010). It held that WGI is not entitled to GCI—a holding at odds with WGI's current objection that it enjoys GCI for all of its acts except those related to the Saucer and Boland sites. *Id.*[3]

If the Court construes WGI's res judicata argument as one that Plaintiffs somehow abandoned the broad negligence claims detailed in their complaint, the argument again fails. In order to successfully contend that a party has abandoned a particular claim, a defendant must show that the plaintiff "completely failed even to refer" to that particular claim. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (finding claim abandonment where plaintiff "completely failed even to refer" to a theory of recovery in summary judgment opposition and "never mentioned" same at the hearing or on appeal).[4]

---

(E.D.La.2007). Three elements are required: (1) the issue at stake must be identical to the one involved in the earlier action; (2) the issue must be actually litigated in the prior action; and (3) the determination of the issue in the prior action must be a necessary part of the judgment in that action." *Matthews v. IHOP*, Case No. 08-3595, 2010 WL 254963 (E.D. La. Jan. 19, 2010).

[3] *See* Doc. No. 20248 (Plaintiffs' Opp. to Def. WGI's Memo. in Support of the Continued Availability of the Government Contractor Defense).

[4] While the caselaw addresses abandonment of *claims*, even WGI does not argue Plaintiffs have abandoned their negligence claim or that the entire negligence issue is resolved by estoppel. Rather, WGI

Both WGI's and Plaintiffs' summary judgment papers addressed matters beyond the wedding cake and sewer lift station. *See supra* at 4-6.  Plaintiffs discussed WGI's negligence along the entire east side of the EBIA with respect to not only the excavations at Boland and Saucer Marine, but also WGI's negligent failure to perform (among other things) any geotechnical evaluations of its subsurface excavations, its failure to prevent under-seepage erosion, which ultimately reduced the integrity of the adjacent flood wall, and its failure to address the significant data gaps and resulting misrepresentations to the Corps that caused Plaintiffs' damages. (Pltfs. MSJ Opp. at 16, 17, 23, 30 (Doc. No. 16216.))

In short, WGI can muster neither factual nor legal support for its argument that Plaintiffs claims (or their discovery rights) are limited to removal of the wedding cake structure and sewer lift station.  Its objection should be overruled.

### D.     *Conclusion*

Substantively, WGI's responses indicate that all responsive information was previously produced to Plaintiffs.  But that substantive response is hedged by WGI's objection that Plaintiffs' negligence claims have been reduced to only WGI's activities at the Boland and Saucer Marine locations.  Plaintiffs respectfully seek an order overruling WGI's res judicata objections to Plaintiffs' discovery.


Dated: July _____, 2011

---

appears to argue that Plaintiffs are estopped from relying on certain facts in pursuing a claim it acknowledges is alive and well.

Respectfully Submitted,

**PLAINTIFFS LIAISON COUNSEL**

_____/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB GROUP LITIGATION
COMMITTEE**

Jonathan Andry (The Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served upon all counsel of

record by ECF on July 15, 2011.

/s/ Joseph M. Bruno