UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | §<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO:<br><br>MRGO<br>*Armstrong*, No. 10-866 | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

**DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANT WGI'S
*RES JUDICATA* AND PRECLUSION DEFENSE**

Plaintiffs claim that they are entitled to an order striking defendant Washington Group International, Inc.'s ("WGII") *res judicata* and/or claim preclusion affirmative defense. Plaintiffs are wrong. Because they failed to oppose, either in this Court or on appeal, WGII's Motion for Summary Judgment with respect to all work WGII performed at the EBIA other than the so-called "Wedding Cake" excavation located at the EBIA's Boland Marine site, or the Sewer Lift Station excavation located at the EBIA's Saucer Marine site, the doctrines of *res judicata* and/or claim preclusion bar them from challenging this Court's entry of final judgment in favor of WGII in that respect. At the very least, their prior actions indicate that they have abandoned their claims against WGII except insofar as they relate to WGII's work at those two excavations. Accordingly, this Court should deny Plaintiffs' motion.

1065149v.1

## BACKGROUND

***WGII Moves for Summary Judgment With Respect to All Work It Performed at the EBIA Under Task Order 26; Plaintiffs Oppose Only With Respect to the Sewer Lift Station and the "Wedding Cake" Excavations.***

WGII filed its Motion for Summary Judgment in October 2008, arguing that in light of "admitted facts and facts that are not genuinely disputed," WGII was entitled to immunity from suit under "the well-established federal government contractor defense." Mem. In Supp. of WGII's Motion for Summary Judgment ("S.J. Mot.") at ES-1 (Doc. 15861-2). In support of this claim, WGII presented undisputed evidence demonstrating that, through each step of WGII's work at the EBIA pursuant to Task Order 26—which took place over the course of more than five years—the work was supervised and ultimately approved by the Corps.[1] *See generally id*. at 12-42.

In particular, WGII argued that "[b]etween February 2001 and May 2005, WGII performed . . . seven DFOWs [definable features of work]" for the Corps, all of which "were completed in accordance with the guidelines developed with and approved by the Corps, and with the work plans and specifications reviewed by the Corps during the Preparatory Phase Meetings." *Id*. at 21. Those seven DFOWs related to:

- Demolition and Piling Removal;
- Removal of the Sewer Lift Station at Saucer Marine;
- Removal of Concrete Block #004 (the so-called "Wedding Cake") at Boland Marine;
- Removal of a Submerged Fuel Tanker Car;
- Soil Remediation (Including Remediation of the Canal Bank);

---

[1] Broadly defined, that work included: "Recommendation Report for Demolition and Site Preparation" (S.J. Mem. at 12-14); "Development of Eight Major Work Plans" (*id*. at 14-21); "Performance of DFOWs Per Corps-Approved Plans" (*id*. at 21-41); and "Close Out of EBIA Work Site In May 2005" (*id*. at 41-42).

- The Borrow Pit at McDonough Marine Site; and
- Excavation Under Surekote Road at McDonough Marine.

*Id*. at 21-42.  For each of these seven DFOWs, WGII presented evidence demonstrating that WGII's plans for carrying out the project were reviewed and approved by the Corps, and that WGII's work confirmed with approved plans/specifications and was ultimately accepted by the Corps.  *Id*.  WGII argued that these undisputed and admitted facts compelled the conclusion that Plaintiffs' claims against it must fail because WGII had satisfied the requisites for government contractor immunity.  *Id*. at 52-60.

Plaintiffs' opposition to WGII's motion addressed only two projects that WGII performed during the course of its more than five-year work at the EBIA.  After observing that the floodwall on the east side of the IHNC suffered "two failures" during Hurricane Katrina, plaintiffs unambiguously claimed that those breaches were brought about by WGII's work on two specific projects:

> "these two breaches occurred because WGI and the Corps improperly backfilled *two excavations*: each of which were approximately 20-22 feet in depth, one the result of *the removal of a buried lift station on the Saucier* [*sic*] *Marine site*, the other from *the removal of a concrete structure called the 'wedding cake' at the Boland Marine* [*sic*]."

MRGO PSLC's Opposition Brief at 1-2 (Doc. 16209) (emphasis added).  Plaintiffs asserted that WGII was not entitled to claim immunity under the government contractor defense with regard to either of these two excavations because "WGI's work plans [for the Sewer Lift and Wedding Cake excavations] did not contain any prescriptive specifications for backfill and compaction" but rather "contained only <u>general specifications</u> for backfill, which were broad enough to permit the use of anything from sand or clay to be used [*sic*] as long as the fill was not contaminated."  *Id*. at 2 (emphasis in original); *see also id.* at 25.

-3-

In its reply brief, WGII took note of the fact that Plaintiffs had limited the scope of their opposition to challenge WGII's work at only those two sites:

> "[I]t is now clear that Plaintiffs challenge WGII's entitlement to summary judgment with respect to only three specific features of work that WGII undertook on behalf of the [Corps] pursuant to Task Order 26: (1) the sewer lift station excavation at Saucer Marine; (2) the "wedding cake" structure excavation at Boland Marine; and (3) WGII's alleged failure to obtain a permit for its excavation activities from the Orleans Levee District ("O.L.D.").

WGII's Reply Brief at 1 (Doc. 16296-3) (emphasis added and citation omitted). Plaintiffs sought and received the opportunity to file a sur-reply brief in response, but nowhere in that brief did Plaintiffs deny that they contested WGII's entitlement to immunity regarding its work at those two excavations. *See* MRGO PSLC's Sur-Reply at 5 (Doc. 16320) (addressing only Sewer Lift Station and Wedding Cake excavations).

### *This Court Enters Summary Judgment for WGII With Respect to All Work At the EBIA.*

This Court also recognized that, notwithstanding the allegations in Plaintiffs' Amended Master Complaint, the parties' dispute regarding WGII's entitlement to summary judgment was limited to the excavations of the Sewer Lift Station and the Wedding Cake. At argument on WGII's motion, the Court noted:

> "It looks like *this has boiled down to, in this vast remediation project, two specific parts of the project. I'll call them the sewer lift station excavation and the wedding cake excavation at the Boland site.* It appears that the allegations are that, as a result of the excavations, permeable material was placed in the void, allowing the migration of water to ultimately undermine the floodwall. That seems to be, in a simplistic way, what I understand the plaintiffs' claim to be."

Tr. of Summary Judgment Hearing at 4-5 (Nov. 13, 2008) (emphasis added).

At no point during the hearing did Plaintiffs indicate that this Court's understanding of their argument was erroneous. Instead, Plaintiffs continued to limit their argument to the work

-4-

WGII performed with respect to the Wedding Cake and Sewer Lift Station excavations, and made no mention of WGII's work at any part of the EBIA other than those two excavations:

> "Here's what's important, though, and here's why WGI has liability in this case. WGI was hired to go out to the site, evaluate the site, and locate these underground items or things. When they first got the contract, *they didn't even know that the wedding cake structure existed*. They didn't know it. *They knew that the lift station existed, but there was no indication as to precisely where it was.*" Tr. at 78 (emphasis added).

> \* \* \*

> "Did they tell the levee board that they were going to dig a hole 22 feet deep to remove this lift station? Did they tell the OLD that they were going to dig a hole to remove the wedding cake structure? Answer: No. Or, at the very least, there certainly is a conflict of fact on that point." Tr. at 79.

> \* \* \*

> "THE COURT: [A]ll we are talking about is the stuff you put back in the hole. That's it. That's what this case is about. Isn't it what it's about, when you boil it down, what was the stuff that was put in the hole?
>
> MR. BRUNO: With respect, no. Two issues. The stuff you put in the hole and the way you put it in the hole are critical.
>
> THE COURT: Exactly. The stuff you put in the hole and the way, that's this case; right?
>
> MR. BRUNO: That's this case, Judge." Tr. at 99.

Finally, in its Order and Reasons granting WGII's motion in its entirety, the Court once again noted that:

> Plaintiffs allege that the two levee/floodwall failures on the east side of the IHNC occurred near the south end, Saucer Marine site, and at the north end, Boland Marine site. . . . Plaintiffs maintain that because WGI and the Corps improperly backfilled these two excavations, the floodwall at the Lower Ninth Ward was compromised. Thus *these two sites are the focus of plaintiffs' claims against WGI*."

Order and Reasons at 2-3 (Doc. 16723) (emphasis added). This Court ultimately granted WGII's motion for summary judgment with respect to each step of all phases of WGII's work at the EBIA pursuant to Task Order 26, and subsequently entered final judgment in favor of WGII. *See id*; Order dated April 13, 2009 (Doc. 18541).

### *Plaintiffs Ask The Fifth Circuit to Reverse Entry of Summary Judgment Only With Respect to WGII's Work at the Sewer Lift Station and Wedding Cake Excavations.*

Following entry of judgment in WGII's favor, Plaintiffs filed an appeal in the Fifth Circuit. In so doing, they clearly stated that only "WGI's excavation *at two of the EBIA's facilities* is at issue on this appeal: *Saucer Marine and Boland Marine*" Huey Br. at 9.[2] Specifically, they argued that this Court had "failed to fully address the record evidence that WGI failed to advise the [Corps] that the work *in the vicinity of the Boland Marine and Saucer Marine sites*" required geotechnical analysis (Liaison Br. at 2) (emphasis added); and that it "failed to address the record evidence that presents a question of fact as to whether WGI's *evacuation and back filling of the Boland and Saucer sites* was performed negligently and in violation of the Louisiana state law negligence standards such that summary judgment should have been precluded." *Id.* at 3 (emphasis added); *see also id*. at 9-10, 15, 20-23; Huey Br. at 14-17, 45-50.

Once again, WGII observed that rather than challenging this Court's entry of summary judgment with respect to *all* of WGII's work at the EBIA, "Appellants focus on WGII's excavation work in the demolition and removal of *two structures,* known as the 'Sewer Lift Station' and the 'Wedding Cake.'" WGII's Original Brief at 4-5 (emphasis added). Once again,

---

[2] Three separate groups of Appellants filed notices of appeal in the Fifth Circuit. Two filed substantive briefs: One was filed by Appellants Quintessa Huey et al., hence "Huey Br."; and the other was filed by Plaintiffs' Liaison Counsel, hence "Liaison Br." A third group, Appellants Betty Lundy et al., filed a brief adopting by reference the argument of the Liaison Brief.

Plaintiffs did not challenge this description of the scope of their appeal.  Instead, they reiterated their claim that summary judgment was improper only insofar as "[t]he design and implementation of the cofferdam *excavations at Saucer Marine and Boland Marine* were left to the discretion of WGI and its engineers" (Huey Reply Br. at 14 (emphasis added)) and "WGI neglected to perform the necessary underseepage stability analysis of *the excavation work at the Boland and Marine* [*sic*] *sites* despite their known proximity to the flood walls" (MRGO PSLC's Reply Brief at 6 (emphasis added)).

The Fifth Circuit's opinion also recognized the limited scope of Plaintiffs' arguments on appeal:  "Two of the breaches in the levees were near areas that were part of the zone where WGI had conducted extensive work.  The plaintiffs claim that the failure of those levees was a result of the negligent and improper backfilling and compaction of the excavated locations by WGI . . . ."  *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 (5th Cir. 2010).

## ARGUMENT

Because Plaintiffs failed to oppose, either in this Court or on appeal, WGII's motion for summary judgment with respect to all work it performed apart from the Sewer Lift Station and Wedding Cake excavations, they are barred by the doctrines of *res judicata* and/or collateral estoppel from disputing this Court's final order granting WGII's motion for summary judgment for that work.  Moreover, by failing to raise any material factual dispute regarding the balance of WGII's work at the EBIA, Plaintiffs abandoned those allegations and are prevented from resurrecting them at this stage of the proceedings.

**I.   Plaintiffs' Claims Against WGII for Work Other Than That Performed at the Sewer Lift Station and Wedding Cake Excavations Are Barred by *Res Judicata* and/or Collateral Estoppel.**

The related doctrines of *res judicata* and claim preclusion operate to bar parties from relitigating claims or issues that were (or should have been) finally decided by a court of competent jurisdiction. *Test Masters Educ. Svcs. v. Singh*, 428 F.3d 559, 571-72 (5th Cir. 2005).

While *res judicata* and collateral estoppel are most commonly invoked when one party improperly seeks to reopen an issue decided in a prior action between the same parties or their privies, it is well settled that the doctrines may also arise "within the confines of a single claim or cause of action." 18 C. Wright & A. Miller, *Federal Practice & Procedure*, Juris. § 4418 (2d ed. 2011). Indeed, a request to apply collateral estoppel and/or claim preclusion "in the same, not a subsequent action," is "proper [where] the Court has issued judgments necessarily based on th[o]se issues." *United States ex rel. Roberts v. Aging Care Home Health, Inc.*, No. 02-2199, 2008 WL 2945946, *6 (W.D. La. July 25, 2008) (holding that collateral estoppel prevented sole remaining defendant from contesting court's rulings on issues necessary to court's prior entry of partial summary judgment against other defendants); *see also Schwartzberg v. Califano*, 480 F. Supp. 569, 574 n.7 (S.D.N.Y. 1979) ("Collateral estoppel is applicable despite the fact that it is being applied within the confines of one action. . . . [W]hen plaintiffs failed to perfect their appeal as to the dismissed claims and it was discontinued with prejudice, my determination as to these claims became a final judgment.").

In particular, where a party fails to appeal a portion of an adverse judgment, the issues decided in the unappealed portion can become binding on that party by means of *res judicata* and/or collateral estoppel. *See, e.g.*, *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 529 (4th Cir. 1987); *Hurley v. Beech Aircraft Corp.*, 355 F.2d 517, 522-23 (7th Cir. 1966), *cert. denied*, 385 U.S. 821 (1966); *accord Perryton Wholesale, Inc. v. Pioneer Distrib. Co.*, 353

F.2d 618, 623 (10th Cir. 1965) ("The decision of the injunction claim finally determined all issues common both to it and the claim for damages. It is unimportant whether this operates by way of *res judicata* or collateral estoppel. *The important consideration is that the question of a violation of § 1 was tried and determined.* Perryton was not entitled to a retrial of this issue before another judge") (emphasis added).

These principles compel the conclusion that Plaintiffs are precluded from challenging any aspect of WGII's work at the EBIA other than the two excavations they opposed in the prior summary judgment briefing. Plaintiffs acknowledge that WGII's summary judgment motion "embraced all . . . phases of Task Order 26." Pls. Mot. at 4. Plaintiffs' opposition to that motion, however, challenged *only* whether WGII's work at the Sewer Lift Station and Wedding Cake excavations satisfied the prerequisites for government contractor immunity. This Court granted WGII's motion in its entirety, and entered summary judgment in WGII's favor. In order to reach that conclusion, it was necessary for this Court to determine that the undisputed material facts demonstrated that WGII was entitled to government contractor immunity with respect to *all* work it performed under Task Order 26, not simply the two projects that Plaintiffs challenged.[3]

When Plaintiffs appealed this Court's judgment to the Fifth Circuit, they disputed WGII's entitlement to government contractor immunity *only* with respect to the Sewer Lift Station and Wedding Cake excavations. Plaintiffs' failure to appeal the balance of this Court's entry of summary judgment—holding that WGII was entitled to government contractor immunity for all other work it performed at the EBIA under Task Order 26—rendered that remaining portion of

---

[3] Indeed, because Plaintiffs failed to identify any specific factual disputes regarding the balance of WGII's work under Task Order 26, this Court properly accepted as true the facts as set forth in WGII's motion. *Eversly v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988) (citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

this Court's order a final judgment.[4] Accordingly, Plaintiffs are now precluded from challenging WGII's work at the EBIA other than the excavations of the Sewer Lift Station and the Wedding Cake.

## II. Plaintiffs Abandoned Their Claims Against WGII With Respect to Work Other than The Sewer Lift Station and Wedding Cake Excavations.

In addition to triggering the preclusive doctrines of *res judicata* and collateral estoppel, Plaintiffs' failure to oppose WGII's motion for summary judgment with respect to any work other than the excavations of the Sewer Lift Station and the Wedding Cake clearly indicates that they have abandoned the balance of their factual allegations against WGII. Controlling law does not permit them to resurrect those claims at this late stage of the litigation.

Courts in the Fifth Circuit have long recognized that "[w]here the moving papers do not reveal the presence of a factual controversy on a material issue, the adversary cannot simply assent by silence to the factual theory presented in the motion—and on which the parties stand in the Trial Court—and then assert thereafter . . . a purported factual disagreement never before revealed." *DeBardeleben v. Cummings*, 453 F.2d 320, 324 (5th Cir. 1972); *accord Locque v. Allstate Ins. Co.*, 314 F.3d 776, 779 n.1 (5th Cir. 2003) ("As a general rule, a party may not allude to an issue in the district court, abandon it at the crucial time when the district court might have been called to rule upon it, and then resurrect the issue on appeal.").

As set forth above, in opposing WGII's summary judgment motion Plaintiffs failed to raise any disputed material facts with respect to any work WGII performed apart from the excavations of the Wedding Cake and Sewer Lift Station, and so abandoned their claim that

---

[4] Plaintiffs attempt to avoid this conclusion by arguing that "the Fifth Circuit reversed the summary judgment in its entirety." Pls. Br. at 2. But as set forth above, the record is clear that the Fifth Circuit's opinion was limited only to the extent Plaintiffs challenged the decision on appeal, *i.e.*, the Sewer Lift Station and Wedding Cake excavations.

WGII was not entitled to government contractor immunity for that work. The anodyne statements in their brief that WGII's work at the EBIA also involved "removal of bank materials" and "a submerged railroad car," *see, e.g.* MRGO PSLC's Opposition Brief at 16, standing alone, do not raise any *material* factual dispute addressing WGII's immunity argument. *Cf. Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) ("The vague language in the City's Original Answer coupled with the complete absence of the issue in all subsequent documents filed with the district court convinces us that the City abandoned its limitations defense.").

Similarly, Plaintiffs' lengthy citations to various allegations in their Complaint (*see* Pls. Br. at 3-4) are irrelevant, since in their opposition to WGII's motion for summary judgment, Plaintiffs abandoned them all except as they related to the Sewer Lift Station and Wedding Cake excavations. Indeed, *Hargrave v. Fibreboard Corp.*, on which Plaintiffs rely, expressly instructs that "a party in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings[,] resurrect the abandoned issue." 710 F. 2d 1154, 1164 (5th Cir. 1983) (citation and internal quotations omitted).

## CONCLUSION

For the foregoing reasons, WGII respectfully submits that this Court should deny Plaintiffs' motion to strike WGII's *res judicata* and/or collateral estoppel defense.

Dated: August 2, 2011                                    Respectfully submitted,


  /s/ *William D. Treeby*
William D. Treeby, Bar No. 12901
James C. Gulotta, Jr., Bar No. 6590
Heather S. Lonian, Bar No. 29956
STONE PIGMAN WALTHER WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361

Adrian Wager-Zito
Debra S. Clayman
Christopher R. Farrell
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: 1-202-879-3939
Fax: 1-202-626-1700

*Attorneys for Defendant*
*Washington Group International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Opposition to Plaintiffs' Motion to Strike Defendant WGI's *Res Judicata* and Preclusion Defense has been served upon all counsel of record through the Court's CM/ECF electronic filing system or by placing same in the United States mail, postage prepaid and properly addressed, this 2nd day of August, 2011.

                                                                                  __/s /William D. Treeby___

1065149v.1