UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER:  05-4182 "K"(2) JUDGE Duval MAG. Wilkinson |
| PERTAINS TO:   MRGO *Armstrong*, No. 10-866 | |

**ARMSTRONG PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE DEFENDANT WGI'S RES JUDICATA AND PRECLUSION DEFENSE**

This case is about WGI and the Army Corps's work performed pursuant to the TERC and Task Order 26.  Plaintiffs allege Defendants were negligent when they failed to perform any geotechnical analysis on the potential impact their massive excavations along the eastern side of the IHNC between Florida and Claiborne Avenue could have on the adjacent floodwall. Plaintiffs also allege that Defendants were negligent with respect to their selection and compaction of backfill material used to fill up these substantial excavations.

WGI is now attempting to erase from Plaintiffs' complaint all allegations about their negligent work in this area, with the exception of the two excavations at Boland and Saucer Marine.  WGI contends that Plaintiffs' purported failure to address in their summary judgment and appellate papers any of WGI's work other than that at Boland and Saucer Marine resulted in Plaintiffs completely abandoning or otherwise being precluded from addressing any WGI work in this area.  WGI Opp. at 7 (Doc. No. 20355).[1]

---

[1] WGI erroneously assumes that statements made by one set of plaintiffs can be used to bind a different set of plaintiffs.  *See* Response at 6-7 (quoting brief by the "Huey" plaintiffs).  Federal courts reject such a broad application of preclusive doctrines.  In *S. Cent. Bell Tel. Co. v. Ala.*,

WGI is wrong and their preclusion defense should be stricken from their answer because (1) Plaintiffs' and WGI's summary judgment and appellate papers discuss all of WGI's negligent work, and the damage that negligent work caused, when it was performed pursuant to Task Order 26; (2) WGI cannot establish the necessary elements of res judicata and/or collateral estoppel, (3) WGI cannot establish that Plaintiffs abandoned their claim concerning WGI's negligent work beyond Boland and Saucer Marine, and (4) limiting Plaintiffs' claims against WGI to only the work at Boland and Saucer Marine would be manifestly unjust.

### A.   *Plaintiffs' and WGI's Pleadings Reveal That Plaintiffs Did Not Limit Their Negligence Claims Against WGI to Only the Boland & Saucer Marine Sites*

The parties' summary judgment and appellate papers are replete with discussions about not only WGI's negligent work at Boland and Saucer Marine, but also all its other work at the other locations along the IHNC.  *See* Plts. Brf. at 4-7 (Doc. No. 20327).  And it is telling that WGI's dedicates a single sentence in their opposition memorandum in a half-hearted attempt to downplay the significance of the language cited in Plaintiffs' brief (which included language from WGI's own appellate papers).  WGI Opp. Mem. at 11.  A review of the relevant language makes clear that as per their complaint, (1) Plaintiffs are challenging *all work* performed along

---

526 U.S. 160 (U.S. 1999), the Supreme Court held that there must be privity or some other special relationship between two plaintiffs before a judgment against one plaintiff can be used as res judicata against the other plaintiff.  526 U.S. At 167-168; *see also Walls v. MiraCorp, Inc.*, 2011 U.S. Dist. LEXIS 10716 (D. Kan. Feb. 3, 2011) (res judicata has no application to cases involving different plaintiffs).  Simply establishing that plaintiffs share the same type of claim is insufficient, particularly where the statements that allegedly give rise to a preclusive effect were not made by plaintiffs in a class action.

In addition, WGI's claim that its preclusion defense should apply to all other plaintiffs' cases (Answer at 5, ¶ R (Doc. No. 20302)) should fail similarly for the reasons detailed above and because in virtually every other case, WGI failed to even plead this preclusion defense in its Answers.  *See* Exhibit "A" (chart detailing cases where WGI is defendant and whether they plead preclusion defense).

IHNC under Task Order 26, and (2) Plaintiffs used the Boland and Saucer Marine locations as

but two examples of WGI's (and the Corps's) negligence.

The following passages from Plaintiffs' and WGI's summary judgment and appellate

papers detail the broad scope of Plaintiffs' negligence claims against WGI.

<u>Plaintiffs' Summary Judgment Opposition</u>

In their summary judgment opposition, Plaintiffs detailed the scope of their negligence

claims against WGI for *all* work performed along the EBIA:

> The significant details and critical design choices that are at issue in the present
> case *encompass geotechnical evaluations of the subsurface excavations at the
> EBIA*, as well as the *failure to prevent under-seepage erosion that would reduce
> the integrity of the flood wall*.  WGI has failed to prove that the Corps performed
> any substantive review of these critical design choices.

Pltfs. MSJ Opp. at 23 (Doc. No. 16216) (emphasis added); *see also* MRGO PSLC'S Statement

of Disputed Facts at p. 1, ¶ 2 (Doc. No. 16216-1) ("WGI failed to provide reasonably precise

geotechnical specifications…[which] contributed directly to the under-seepage erosion during

hurricane Katrina.")

Plaintiffs further described the significant data gaps with respect to WGI's work along

the entire expanse of the eastern side of the IHNC, which included:

> the removal of bank materials from the Industrial Canal, the removal of a sewer
> lift station at the Saucer Marine site, the removal of a submerged railroad car from
> the Industrial Canal bank, the removal of a concrete anchor foundation at the
> Boland Marine site, as well as any additional subsurface structures encountered.

Pltfs. MSJ Opp. at 16 (Doc. No. 16216).

WGI's description of these critical data gaps involving massive excavations adjacent to

the IHNC floodwall as "anodyne"[2] is akin to calling the iceberg-induced hole in the Titanic a

---

[2] Anodyne:  (*adj.*) unlikely to cause offense or disagreement; bland.  Oxford English Dictionary,
Oxford University Press, 2d Ed. (2003).

"ding."  It is especially inappropriate considering the impact such gaps had on compromising the floodwall's integrity.  In particular:

> WGI's conduct resulted in substantial excavations *throughout the EBIA* that altered the flow of sub-surface ground water, opened portals to sub-surface permeable layers, and allowed the unabated under-seepage through permeable soils below the flood wall during hurricane Katrina when the EBIA was covered with high water.

*Id.* at 17 (emphasis added).

This description of WGI's negligence in Plaintiffs' summary judgment opposition is completely consistent with Plaintiffs' negligence claims against WGI (and the Corps) in their complaint.  *See* Am. MRGO Master Consolidated Class Action Compl. at 23, ¶ 40; 24-25, ¶¶ 41-46; (Doc. No. 11471).

WGI's opposition also completely ignores the language in Plaintiffs' summary judgment opposition that shows Plaintiffs are using the Boland and Saucer Marine locations as just two examples of WGI's negligent work under Task Order 26:

> Because of the adverse affect under-seepage could have on the integrity of the flood wall, the Corps considers it mandatory that a geotechnical evaluation be performed on excavations *such as* the two at the Saucer Marine and Boland Marine sites.

*Id.* at 24 (emphasis added); *see also* Pltfs. Stmt. of Disputed Facts at 7, ¶¶ 28-29 (Doc. No. 16216-1) (the sewer lift and wedding cake sites were "two particularly deep excavations" among many "substantial excavations throughout the EBIA.")

<u>Plaintiffs' Summary Judgment Sur-Reply</u>

WGI's contention that Plaintiffs' sur-reply "address[ed] only [the] Sewer Lift Station and Wedding Cake excavations" is complete fiction.  WGI Opp. Mem. at 4.  Just as they did in their summary judgment opposition, Plaintiffs' sur-reply described WGI's negligent acts with respect to all excavation work along the IHNC under Task Order 26:

As shown throughout Plaintiffs' Opposition, and as now conceded by WGI in its Reply Brief, *WGI failed to evaluate the potential for under seepage that could have affected the integrity of the flood wall during high water conditions*.

Pltfs. Sur-Reply at 3 (Doc. No. 16320-3) (emphasis added).

As addressed in the Plaintiffs' Opposition to WGI's Motion for Summary Judgment, the only work plan involving excavations that could have been presented to the CORPS and LADOTD as of January 2001 *was the Project Work Plan, a plan that had significant data gaps in it*.

*Id.* at 5 (emphasis added).

Geotechnical analysis was required to understand the effects of groundwater migration and under seepage potential of the adjacent flood wall.  Both WGI and the Corps failed to ensure that this analysis was performed. This neglect allowed institutional errors to propagate unchecked, ultimately contributing to the catastrophic failure of the flood walls adjacent to the EBIA.

*Id.* at 8.

### Plaintiffs' Fifth Circuit Opening Brief

Plaintiffs' opening brief on appeal once again describes in broad terms—consistent with

their complaint—WGI's negligent work along the entire eastern portion of the IHNC between

Florida and Claiborne Avenue.  In particular, on appeal, Plaintiffs contended that:

[T]he record reflects that the Statement of Work for Task Order 26 for the EBIA remediation required WGI to: '*furnish all engineering services, ...as required, in connection with the technical review of site documents ... associated with the demolition and remediation of the [EBIA]*.'

Pltfs. Opening Brief at 5-6 (Doc. No. 0051953247) (record citation omitted) (emphasis added).

The Statement of Work also required WGI to 'prepare a comprehensive report recommending the scope and duration of the remediation and demolition that will be required, *including any data gaps that may need to [sic] filled by sampling or other investigation*.'

*Id.* at 6 (record citation omitted) (emphasis added).

WGI was required to provide complete architectural-engineering services to support the implementation of the *remedial action in the area adjacent to the levees in this area*.

*Id.* at 6 (record citation omitted) (emphasis added).

5

The record reflects that in *performing its contract*, WGI negligently failed to evaluate engineering principle that related to excavation at or near a Flood Control Structure.

[T]he record reflects that WGI was contractually obligated to perform an engineering evaluation *of the resulting effects on flood control structures* of creating subsurface holes when *excavating the subsurface structures*.

*Id.* at 7 (emphasis added).

*Id.* at 8 (record citation omitted) (emphasis added).

The record reflects that *Task Order 26* imposed upon WGI the duty to comply with and obtain all state and local permits.  []  The permitting process that *WGI was required to undertake mandated that its work meet 'approval as to soundness of engineering practice,' including a full stability analysis of its impact on the flood control structure*.

*Id.* at 8 (record citation omitted) (emphasis added).

<u>WGI Fifth Circuit Motion For Reconsideration</u>

When WGI filed a motion for reconsideration in the Fifth Circuit, it expressly acknowledged the scope of Plaintiffs' claims against it as it related to WGI's work under Task Order 26.  Specifically, WGI stated that "[t]his case concerns *demolition, excavation and remediation work WGII did at an abandoned industrial site bounded by a flood control levee and incorporated floodwall in New Orleans*."  (WGI Mtn. for Recon. at 2 (5th Cir. Doc. No. 00511247118.)  (emphasis added).

In fact, contrary to WGI's interpretation, the Fifth Circuit's opinion also recognized the scope of Plaintiffs' negligence claims against WGI when it stated that "[t]wo of the breaches in the levees were near areas that were part of the zone where *WGI had conducted extensive work*. The plaintiffs claim that the failure of those levees was a result of the negligent and improper backfilling and compaction of the excavated locations by WGI…."  *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 (5th Cir. 2010).  This language is entirely consistent with

Plaintiffs' position: WGI's "extensive" excavations, which took place near the north and south breaches, were a substantial factor in causing the north and south breaches.

Accordingly, a careful review of the operative pleadings at issue in this matter reveals that—consistent with their complaint—Plaintiffs discussed not only WGI's negligent work at Boland and Saucer Marine, but also all other negligent work WGI performed pursuant to Task Order 26 along IHNC's entire eastern border between Florida Avenue and Claiborne Avenue. As a result, WGI' preclusion defense should be stricken.

### B.  The Doctrines of Res Judicata and Collateral Estoppel Cannot Be Applied Here

Binding United States Supreme Court Fifth Circuit precedent provides unequivocally that there must be a valid final judgment and successive actions in order for res judicata and/or collateral estoppel to apply.  *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 171 (1984) (collateral estoppel can "preclude[s] relitigation of both issues of law and…fact if those issues were conclusively determined *in a prior action*." (emphasis added); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (with claim preclusion, a final judgment forecloses "'*successive litigation* of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'") (citation omitted) (emphasis added). *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) ("[c]laim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised *in an earlier suit*.") (emphasis added).

In this case, there has been no final judgment and the *Armstrong* matter is not a successive action.  The Fifth Circuit's reversal of WGI's summary judgment resulted in the continued prosecution of the same action, which continues to date.

WGI relies on the unpublished decision of *United States ex rel. Roberts v. Aging Care Home Health, Inc.*, No. 02-2199, 2008 WL 2945946, *6 (W.D. La. July 25, 2008) and

*Schwartzberg v. Califano*, 480 F.Supp. 569, 574 n.7 (S.D.N.Y. 1979) for the proposition that res judicata and/or collateral estoppel can apply in the same case. First, those are non-binding authorities that run afoul of U.S. Supreme Court and Fifth Circuit precedent. Second, in both cases, the grant of summary judgment was upheld which resulted in a valid final judgment.

Here, as discussed, there has been no final judgment because the Fifth Circuit reversed summary judgment and, with the exception of WGI's ability to argue the GCI at trial, it "impose[d] no limitations on what matters the district court can consider on remand…." 620 F.3d at 465. As a result, WGI' res judicata/collateral estoppel defense fails and should be stricken.

### C. Plaintiffs Never Abandoned Their Broad Negligence Claims Against WGI

WGI failed to establish the difficult standard a party must show to establish claim abandonment. To abandon a claim a party must "completely failed even to refer" to that particular claim. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983); *see also Griffin v. Hardick*, 604 F.3d 949, 956 (6th Cir. 2010) (claim abandonment when brief and oral argument failed to mention battery claim); *Mauco v. United States Attorney General*, 222 Fed.App. 919, 921 (11th Cir. 2007) (claim abandonment when party "advances no arguments" in brief regarding issue).

As discussed, *supra*, Plaintiffs (and WGI) detailed in their summary judgment and appellate papers the scope of their negligence claims against WGI for its work not only the excavations at Boland and Saucer Marine, but also its work along entire east side of the EBIA, which included other significant excavations as well as a failure to do any analysis about whether those excavations could compromise the nearby flood protection.

The two cases WGI relies on to support its abandonment argument only further support the difficult showing a party must make to prove the opposing party abandoned a claim. WGI

Opp. Memo. at 10.  In *Debardeleben v. Cummings*, 453 F.2d 320 (5th Cir. 2003), the Fifth Circuit addressed whether appellant had raised any genuine issues of material fact to merit reversing the trial court's grant of summary judgment.  453 F.2d at 324.  In affirming the trial court's order, the Fifth Circuit found that, on appeal, appellant argued "what is in effect an *entirely new theory* of the case, *never presented* to the District Court..." and that appellant never gave the trial court the "*slightest indication*" about his current theory on funding raised for the first time on appeal.  *Id.* at 324-25.  Similarly, in *Locque v. Allstate Ins. Co.*, 314 F.3d 776 (5th Cir. 2003), the Fifth Circuit found that Allstate failed to preserve an issue concerning the award of attorney's fees that it "did not raise" and "failed to brief" in the trial court below.  314 F.3d at 779 n.1.

In this case, both WGI's and Plaintiffs' summary judgment papers specifically addressed matters beyond the Boland and Saucer Marine excavations.  *See supra* at 2-6.  In particular, Plaintiffs' briefs detailed (1) WGI's negligent failure to perform (among other things) any geotechnical evaluations of its subsurface excavations, (2) its failure to prevent under-seepage erosion, which ultimately reduced the integrity of the adjacent flood wall, and (3) its failure to address the significant data gaps and resulting misrepresentations to the Corps that caused Plaintiffs' damages.  *See* Pltfs. MSJ Opp. at 16, 17, 23, 30 (Doc. No. 16216.).

Accordingly, WGI's abandonment claim fails and its preclusion defense should be stricken from its answer.

### D.  Limiting Plaintiffs' Claims Against WGI To Only Boland And Saucer Marine Would Be Manifestly Unjust

Despite WGI's current claims of res judicata and abandonment, all parties have proceeded in this litigation as though all work Plaintiffs contend was negligently performed

pursuant to Task Order 26 remains at issue.  To find now that, with respect to WGI, Plaintiffs are restricted only to the excavations at Boland and Saucer Marine would be a manifest injustice.

All parties have jointly committed and contracted to spend hundreds of thousands of dollars in testing and sampling locations spanning the entire eastern stretch of the IHNC between Florida and Claiborne Avenue.  The parties' experts have spent (and continue to spend) several weeks conducting their investigations along all of the eastern side of the IHNC at issue in order to prepare their respective expert reports to determine whether WGI and the Corps's work in this area caused Plaintiffs' damages.

Moreover, WGI's counsel has also confirmed that despite their discovery objections and preclusionary affirmative defense, they are not withholding any documents or other information that are responsive to Plaintiffs' discovery requests; and WGI's expert investigations deal with *all* of WGI and/or the Corps's work performed at the IHNC pursuant to Task Order 26.  As a result, Plaintiffs' experts have continued drafting their findings and their reports based on this belief shared by all parties.  To now limit Plaintiffs' claims against WGI to Boland and Saucer Marine would not only cost Plaintiffs (and Defendants) substantial time and money already committed and spent on expert discovery, but also unfairly rewrite Plaintiffs' complaint that has put WGI on notice for years of the broad negligence claims against it for its work performed pursuant to Task Order 26.

### E.  Conclusion

Accordingly, WGI's preclusion defense is insufficient as a matter of law and should be stricken from the answer.  Plaintiffs respectfully request such an order.

Dated:  August 5, 2011

**Respectfully Submitted,**
**PLAINTIFFS LIAISON COUNSEL**

_____/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB GROUP LITIGATION**
**COMMITTEE**

Jonathan Andry (The Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing was served upon all counsel of

record by ECF on August 5, 2011.

/s/ Joseph M. Bruno