UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NUMBER: 05-4182 "K"(2)<br>JUDGE Duval<br>MAG. Wilkinson |
| PERTAINS TO: MRGO<br>*Armstrong*, No. 10-866 | |

### ARMSTRONG PLAINTIFFS' SUR-REPLY IN SUPPORT OF MOTION TO STRIKE DEFENDANT WGI'S RES JUDICATA AND PRECLUSION DEFENSE

*1. WGI's Sur-Reply Is Procedurally Improper*

WGI fails to make the requisite showing for leave to file a sur-reply. The Fifth Circuit denies leave to file sur-reply briefs when those briefs raise new arguments for the first time. *See Jefferson v. Christus St. Joseph Hosp.*, 374 Fed. Appx. 485, 492(5th. Cir. 2010) (party "may not rely on new claims raised for the first time in a response-let alone a sur-reply…."); *United States v. Jackson*, 426 F.3d 301, 304 (5th Cir. 2005) ("[a]rguments raised for the first time in a reply brief…are waived."). Courts typically allow sur-reply briefs "to afford a party an opportunity to address new issues raised for the first time in the reply." *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010); *In re WorldCom, Inc.*, 2007 WL 1989262, *5 (S.D.N.Y. 2007) (motion to file sur-reply denied where the moving party had "'ample opportunity to address [the opposing party's] arguments….'" (citation omitted).

WGI does not contend that Plaintiffs raised new arguments in their reply brief. Rather, WGI's argument for leave to file is that it somehow did not have enough time to read and understand the Court's 6 1/2 page order denying WGI's motion for the continued availability of

1

the GCI before it filed its opposition brief the day after that order issued. WGI Sur-Reply Mtn. at 1. This is an insufficient showing. WGI had "ample time" (a whole day) to digest the Court's brief order denying the continued availability of the GCI and to incorporate its new sur-reply argument into its opposition. It chose not to; and the decision to not include this new argument in the opposition when it had plenty of time to do so should not be rewarded by allowing WGI to file a sur-reply brief that is—in effect—a motion for reconsideration of the Court's August 1st order.

Accordingly, WGI's motion for leave to file a sur-reply brief is procedurally improper.

2. ***The Specifications That Governed Backfill and Compaction at Boland and Saucer Marine Are The Same Specifications that Governed Backfill and Compaction at the Other Excavations Along the EBIA***

WGI contends that the Fifth Circuit's opinion addressed only the backfill and compaction at Boland and Saucer Marine, but "not the remainder of WGI's work pursuant to Task Order 26…." Sur-Reply at 2. And, because of this purportedly narrow scope, WGI should be allowed to argue that somehow the specifications for backfill and compaction that governed all other work along the EBIA were miraculously different than the general specifications for backfill and compaction at Boland and Saucer Marine. This argument fails for two reasons:

First, as WGI acknowledges, the Fifth Circuit's opinion concerned "'backfill material used and the method of compaction employed by WGI' *at the challenged sites*." Sur-Reply at 3 (emphasis added). As Plaintiffs' briefs in support of their motion to strike make clear, the "challenged sites" include not only Boland and Saucer Marine, but also all other locations along the IHNC where WGI and/or the Corps performed work pursuant to Task Order 26. *See, e.g.*, Pltfs. Mtn. at 4 (Doc. No. 20327-1) ("the significant details and critical design choices that are at issue in the present case encompass geotechnical evaluations of the subsurface excavations *at the EBIA*…."); Pltfs. Reply at 4 (Doc. No. 20362-3) ("WGI's conduct resulted in substantial

excavations *throughout the EBIA* that altered the flow of sub-surface ground water, opened portals to sub-surface permeable layers, and allowed the unabated under-seepage through permeable soils below the flood wall during hurricane Katrina when the EBIA was covered with high water."). As a result, because Plaintiffs' and WGI's summary judgment and appellate papers were not limited to Boland and Saucer Marine, the Fifth Circuit's opinion was similarly not limited and covered all challenged areas at issue in Plaintiffs' complaint.

Second, WGI and the Fifth Circuit have acknowledged that the same general specifications that governed backfill and compaction at Boland and Saucer Marine were the same general specifications that governed backfill and compaction at other disputed locations along the EBIA. In particular, WGI stated:

- "Thus, the 'primary source' of backfill *at the EBIA* was the borrow pit on the McDonough Marine site; however, if there was insufficient borrow pit material, WGII could import backfill material with Corps' approval as to source, quality and cost."

WGI MSJ at 36-37 (Doc. No. 15861-1) (emphasis added) (citation to record omitted).

- "Indeed, the Project Engineer for the Corps *on Task Order 26* testified that he considered and approved the type of backfill material and method of compaction…."

WGI MSJ Reply at 10 (Doc. No. 16296-2) (emphasis added).

The Fifth Circuit's opinion also recognized a general specification for backfill and compaction for areas other than just Boland and Saucer Marine. For example, the opinion discusses Technical Analysis of Proposal #113 and the final version of this proposal as approved by the Corps. 620 F.3d at 458. These proposals dealt with the "excavation and disposal of

3

additional subsurface foundations, ACM and concrete wastes as the [EBIA], [IHNC] Lock Replacement Project New Orleans, Louisiana." WGI MSJ Exh. 29 at 3. In particular, these proposals concerned the International Tank Terminal site as well as Boland Marine. *Id.* at 6. With respect to these locations, the Fifth Circuit recognized the same general specifications for the excavated areas when it stated that with respect to the backfill, "'[t]he excavations ... will be backfilled with borrow material obtained from either the on-site borrow source or an off-site source.'" 620 F.3d at 458. Concerning compaction, the "final approved proposal also stated that the backfill 'material will be placed in lifts and compacted; however, no compaction testing will be required.'" *Id*. at 458-59. This proposal gave way to work plans that detailed compaction at these locations should occur in 2 foot lifts. *Ibid.*

Accordingly, because the general specifications for backfill and compaction for Boland and Saucer Marine were the same for the other excavation locations at the EBIA, WGI should not be allowed to invoke the GCI with respect to all other challenged work along the EBIA.

Dated: August 12, 2011

                        **Respectfully Submitted,**
                        **PLAINTIFFS LIAISON COUNSEL**

                            /s/ Joseph M. Bruno
                        JOSEPH M. BRUNO (La. Bar # 3604)
                        Bruno & Bruno, LLP
                        855 Baronne Street
                        New Orleans, Louisiana 70113
                        Telephone: (504) 525-1335
                        Facsimile: (504) 561-6775
                        Email: jbruno@brunobrunolaw.com

                        **MR-GO PLAINTIFFS SUB GROUP LITIGATION**
                        **COMMITTEE**

                        Jonathan Andry (The Andry Law Firm, New Orleans, LA)
                        Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
                        James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served upon all counsel of record by ECF on August 12, 2011.

　　　　　　　　　　　　　　　　 /s/ Joseph M. Bruno