# EXHIBIT 1



## U.S. Department of Justice

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

_____

| | |
|---|---|
| Robin D. Smith | P.O. Box 888, Benjamin Franklin Station |
| Senior Trial Counsel | Washington, DC  20044 |
| | Tel.: (202) 616-4289   Fax: (202) 616-5200 |
| | robin.doyle.smith@usdoj.gov |

PJP:JT:RDSmith
157-0-272

March 15, 2011

<u>VIA EMAIL & FEDEX</u>

The Honorable Stanwood R. Duval, Jr.
United States District Court
500 Poydras Street, Room C-368
New Orleans, LA 70130

     Re:   <u>In re Katrina Canal Breaches Litigation, Civ. No. 05-4182</u>
            Pertains to MRGO

Dear Judge Duval:

   We are writing to request that the Court continue the May 4, 2009, stay of the MRGO litigation.[1]  At that time the Court announced that "[i]t was and has always been the intention of this Court once the *Robinson* matter was adjudicated to stay all other proceedings concerning the liability of the United States for the MRGO until the Court's decision would be made final through the appeals process."[2]  We believe that the reasons cited by the Court are as valid today as they were then:  "To do otherwise would undoubtedly result in an extreme waste of judicial resources, as well

---

[1] *See* Doc. 18756.

[2] *Id.* at 1.

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 2

as those of the litigants."[3]  The Court and the parties have acknowledged that the *Robinson* appeal will be dispositive of the subject-matter jurisdiction issues presented in the MRGO litigation.  Indeed, the *Entergy* plaintiffs recently told the Court of Appeals that "the *Robinson* Trial will function as the *de facto* bellwether trial on liability, [and therefore] the outcome of this appeal will have a direct effect on the Entergy *Amici*, as well all other litigants whose cases are stayed in the consolidated *Katrina Canal Breaches Litigation*."[4]  A trial of the East Bank Industrial Area claims is expected to cost at least $5 million, and if a trial were to include *Entergy* or issues related to the Mississippi River-Gulf Outlet, the costs would probably be far greater.  As we explain below, in addressing issues raised by the Court's February 16 Minute Entry and the February 19 "Talking Points" email, a trial of the EBIA claims must cover much of the ground previously litigated in *Robinson,* and will not necessarily advance the ball very much.  Because the cost of trying the claims of a few plaintiffs far exceeds the overall benefit in terms of advancing the ultimate termination of the litigation, we respectfully request that the stay remain in place until the conclusion of *Robinson.*

The Talking Points email proposes bifurcating the proceedings and limiting the issues for trial to whether the Corps or WGI or both were negligent with respect to the EBIA and whether that negligence was a substantial factor in causing injury to any and all of the plaintiffs independent of any hydrological impacts of the MRGO.[5]  Under this proposal, the Court envisions a trial that would "only consider the hydrological effects of the IHNC breaches, not the effects of the water attributable to the MRGO."[6]  The Court hypothesizes that bifurcating the trial in this manner would

---

[3]*Id.*

[4]*Robinson v. United States* (5th Cir. No. 10-20249), Doc. 511395023, at 11).

[5]To date, the individual Plaintiffs have not been selected or disclosed to the United States, a problem which will have jurisdictional significance if those who are selected did not timely present administrative claims or presented deficient claims.  In addition, the location of Plaintiffs' respective properties and damages will have a significant impact on the issue of causation as discussed below.

[6]Talking Points email ¶ 2.

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 3

involve "no money judgment and no allocation of fault involving the MRGO," with any such allocation perhaps requiring a second trial to determine the impact of the MRGO on Plaintiffs' properties.[7]

We do not think this proposal is tenable, either as a matter of Louisiana substantive tort law, or as a reflection of the reality of the complex and interrelated hydrological conditions that resulted in the inundation of St. Bernard Parish and the Lower Ninth Ward from multiple directions and sources of water, each of which may have had overlapping impacts on Plaintiffs' properties both during and following Hurricane Katrina. Proof of causation underlying *any* determination of liability with respect to the United States or WGI in this case simply cannot be ascertained without examining the MRGO's impacts on storm surge, waves, levees, floodwalls, and any associated degradation of flood control structures. Additionally, determining what quantities of water reached plaintiffs' properties—and when—is a critical element of determining whether the IHNC breaches, the MRGO, or both were substantial factors in causing Plaintiffs' damages.

As a matter of Louisiana law, "plaintiff[s] must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty."[8] "[A]ll four inquiries must be affirmatively answered for plaintiff[s] to recover."[9] Importantly, "[n]ot every act of negligence gives rise to a cause of action against the negligent party. . . . Negligence is only actionable where it is both a cause-in-fact of the injury and a legal cause of the injury."[10]

---

[7] *Id.*

[8] *See Oubre v. Eslaih,* 869 So. 2d 71, 77 (La. 2004). *Accord Pitre v. Louisiana Tech Univ.,* 673 So. 2d 585, 589-90 n.7 (La. 1996).

[9] *Oubre,* 869 So. 2d at 77.

[10] *Carter v. Dr. Pepper Bottling Co. of Baton Rouge, Inc.,* 470 So. 2d 496, 499-500 (La. App. 1st 1985).

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 4

Crucial to any trial concerning the EBIA and its impact on the IHNC breaches and associated flooding is whether the negligence alleged by Plaintiffs was a cause-in-fact of the damages to their respective properties. In Louisiana, "[t]ort liability . . . encompasses both fault and causation . . . . Fault and causation as elements of liability are too closely interrelated to be tried separately, and sound policy reasons dictate that a defendant should not be subjected to a determination of his fault before the court even considers whether that fault caused the plaintiffs' damages."[11] "In a tort action, plaintiff bears the burden of proving by a preponderance of the evidence both the injury and a causal connection between the injury and the tort."[12]

In *Brown*, the court was confronted with a mass tort litigation involving a potential class, the putative members of which all were potentially affected by negligence of the New Orleans Public Service, Inc (NOPSI). Assuming that the issue of negligence was resolved, each plaintiff would be required to prove that NOPSI's fault caused his individual damages and the amount of those individual damages.[13] Complicating the matter was that the causative link between the defendant's conduct and the plaintiffs' injuries was not obviously the same as to each plaintiff—there existed a meaningful possibility that other causes for which the defendant could not be held liable were responsible—preventing the court from simply adjudicating the questions of negligence and liability without reference to the specific damages that may be attributable to causes other than those for which the defendant was responsible. *Brown*, 506 So. 2d at 623; *see also Banks*, 737 So. 2d at 1282-83 (explaining *Brown* and discussing the problem that inheres in trying to isolate a trial on liability as to a single cause where proof of causation and injury in fact necessarily involves complex and individualized determinations on the cause of a plaintiff's injury).

For several reasons, the challenges that inhere in a trial to determine the causes of the IHNC breaches, the specific causes of each plaintiff's damages, and the respective liability of WGI and the United States—if any—simply do not allow for a trial that

---

[11] *Brown v. New Orleans Public Service,* 506 So. 2d 621, 624 (La. App. 4th 1987).

[12] *Banks v. New York Life Ins. Co.,* 737 So. 2d 1275, 1282 (La. 1999).

[13] *Brown,* 506 So. 2d at 623.

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 5

"only consider[s] the hydrological effects of the IHNC breaches, not the effects of the water attributable to the MRGO."[14]  First, determining whether any alleged negligence pertaining to the EBIA was a cause-in-fact of plaintiff's damages necessarily requires analysis of hydrological impacts beyond the IHNC breaches.  This is because the cause-in-fact inquiry will require proof that any negligence alleged was a "necessary condition," even if insufficient on its own to impose liability, for the plaintiff's injuries.[15]  Put another way, proof that the IHNC breaches were a cause-in-fact requires the plaintiffs to prove that their damages would not have occurred had the negligence they assert with respect to the EBIA never occurred.[16]  If the alleged negligence is removed from the analysis and plaintiff's damages would have occurred *anyway*, then plaintiffs cannot recover.

Answering this complex question will require analysis beyond the hydrological effects in and around the IHNC breaches.  It will likely require running models that remove EBIA excavations from the analysis to determine whether the IHNC breaches would inevitably have occurred as the result of storm surge and wave run-up attributable to the MRGO or simply because the floodwall was inadequate to the task of withstanding Hurricane Katrina's peak surge intensity, even absent impacts from the MRGO or the EBIA project.  Indeed, as Louisiana courts have noted, "[a] hurricane that causes unexpected and unforeseeable devastation with unprecedented wind velocity, tidal rise, and upriver tidal surge, is a classic case of an 'Act of God' or force majeure. . . . Clearly, Hurricane Katrina, with its unprecedented flooding and devastation, was a force majeure or Act of God that was unforeseen and unavoidable."[17]  While a defendant is not necessarily absolved of liability when a force

---

[14] Talking Points email ¶ 2.

[15] *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 833 n.9 (1985) (Brennan, J., concurring), citing Prosser & Keeton, Law of Torts, § 41 at 265-66.

[16] *Cf. Allums v. Parish of Lincoln,* 15 So. 3d 1117, 1124-25 (La. App. 2d 2009) ("Cause-in-fact is a 'but for' inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct.").

[17] *Dollar Thrifty Auto Group, Inc. v. Bohn-DC, L.L.C.,* 23 So. 3d 301, 304 (La. App. 5th 2008) (citations omitted).

majeure or act of God occurs—liability may still be imposed for damages that would not have occurred but for its *own* conduct—ascertaining whether the conduct alleged caused damage beyond what would otherwise have occurred cannot be accomplished without full factual development of the impact of MRGO waters.[18]

In addition, this Court has already recognized that liability cannot be established simply by proving that floodwaters from a particular breach or breaches inundated a plaintiff's property. If a plaintiff's claimed injury would have occurred regardless of the negligence alleged, the claimed negligence cannot, by definition, be considered a "substantial factor" necessary for imposing liability.[19] Determining whether floodwaters from the IHNC or the MRGO were to blame for damages to Plaintiffs' property will be necessary once again to determine whether alleged negligence pertaining to the EBIA was a substantial factor here. Without accurate modeling of the timing and impact of various floodwaters moving from east to west or north to south across St. Bernard Parish and the Lower Ninth Ward, it is simply not possible to ascertain, with the degree of accuracy required, the damages for which each defendant might plausibly be held liable under Louisiana law.

The Court's Talking Points email alludes to the government's *Robinson* appeal brief as a basis for concluding that the Court's *Robinson* findings are beyond dispute or, at least, that the United States does not dispute them. Neither conclusion is warranted. We welcome an opportunity to have the Court re-examine the causes, physical processes, timing, and effects of the levee breaches along the MRGO. Having analyzed the Court's *Robinson* opinion, we understand what evidence to present in future trials to support findings that differ materially from those that were made in *Robinson.* But if the Court's bifurcation proposal stems from a notion that the

---

[18] *See Saden v. Kirby,* 660 So. 2d 423, 428 (La. 1995) (holding that defendant may be held liable for damages that would not have occurred but for its own conduct even where act of God or force majeure was primarily responsible).

[19] *See In re Katrina Canal Breaches Consol. Litig.,* 647 F. Supp. 2d 644, 735 (E.D. La. 2009) (finding that damage caused to first floor of plaintiff's home would have been caused regardless of negligence attributable to maintenance of the MRGO and, therefore, that the MRGO floodwaters were not a "substantial factor" in those damages).

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 7

*Robinson* findings are dispositive and binding on the United States in a subsequent trial, then the proposal is legally unsound.

The Supreme Court has definitively held that the United States is not subject to non-mutual offensive collateral estoppel and is free to relitigate issues that arose in a prior case so long as the cause of action is brought by different parties.[20]  In *Mendoza*, the plaintiff, a Filipino national, filed a petition for naturalization under a statute that had expired 32 years earlier based on the assertion that the government's administration of the Nationality Act denied him due process of law.[21]  A district court previously had found that Filipino nationals had been denied due process of law, and although the government sought to challenge the issue anew in plaintiff's case, both the district court and the Ninth Circuit concluded that the due process issue had been decided against the government in a decision that had not been appealed and, therefore, held that the government was collaterally estopped from relitigating the issue.[22]

The Supreme Court unanimously reversed, holding that collateral estoppel cannot be used to preclude the government from relitigating issues when the party seeking to use it was not a party to the earlier litigation.[23]  The Fifth Circuit has applied *Mendoza*, to prevent the use of non-mutual offensive collateral estoppel against the

---

[20] *See United States v. Mendoza,* 464 U.S. 154, 162-63 (1984).

[21] *Id.* at 155.

[22] *Id.* at 155-57.

[23] *Id.* at 159-62.

United States.[24]  Indeed, the Fifth Circuit has ruled that *Mendoza*'s holding extends to *all* issues, not just those of constitutional importance.[25]

Under this controlling case-law, then, the *Robinson* findings do not bind the United States here or prevent the United States from presenting evidence concerning the flooding of Plaintiffs' properties from levee breaches along the MRGO.  The parties now suing for EBIA negligence were not parties in *Robinson* and therefore cannot brandish the *Robinson* findings as a sword in this litigation.  The United States cannot be foreclosed from fully litigating all relevant issues related to MRGO hydrology, because MRGO-related findings must be made in order to assess liability for any EBIA-related negligence.

The Court's Talking Points email proposes bifurcating or otherwise limiting trial so that the EBIA claims can be tried soon, which is the Court's desire.  To further that end, the Court has "ordered that there will be no more than 6 plaintiffs."[26]  Plaintiffs' counsel, however, has not yet identified the individual Plaintiffs, frustrating the United States' efforts and impeding the progress toward trial.  Although the Court has adamantly stated that it will not entertain any more dispositive motions," Plaintiffs' counsel has advised the undersigned counsel that the selected Plaintiffs will rely on letters by Plaintiffs' counsel that were presented more than two years after the Hurricane Katrina flood as the basis for claiming that the Plaintiffs timely presented administrative claims of EBIA negligence.[27]  These letters were before the Court when

---

[24] *See, e.g., Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 397 n.61 (5th Cir. 2004) (noting that "mutuality" is required for a party to assert collateral estoppel against the United States).

[25] *See Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 322-23, n.9 (5th Cir. 1984) (discussing Mendoza and holding that the Supreme Court's reasoning extends to "all issues, not just constitutional ones.").

[26] Min. Entry at 5.

[27] *Id.* at 4.

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 9

it denied Plaintiffs' Motion to Intervene.[28]  The Court implicitly rejected these letters as sufficing to exhaust administrative remedies, concluding that "plaintiffs have provided no proof that any of these potential intervenors meet the necessary notice requirements of § 2675."[29]  When Plaintiffs' counsel eventually provide names and addresses of proposed Plaintiffs, the United States will need time to vet those names to determine whether they have truly exhausted their administrative remedies.  And if compliance with § 2675 is questionable, a motion or motions to dismiss the claims of these plaintiffs must be heard, because compliance with the statute is a jurisdictional requisite.  The Court's suggested schedule makes no allowance for these motions.[30]

If Plaintiffs' counsel can adduce no plaintiffs who have complied with 28 U.S.C. §§ 2401(b) and 2675, other than the *Armstrong* plaintiffs, who the Court ruled exhausted their administrative remedies by filing suit (*i.e.,* the MRGO Consolidated Master Class Action), then trying only these three Plaintiffs' claims is especially problematic.  In ordering the dismissal of the EBIA claims from the MRGO Consolidated Class Action, and requiring the *Armstrong* plaintiffs to file a new suit, the Court has recognized that these Plaintiffs' exhaustion of administrative remedies "involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate" appellate resolution "would materially advance the ultimate termination of the litigation."[31]  No party sought permission to appeal from that Order, but the Order itself failed to specify what issue was being certified and it was therefore unclear as to which party or parties could seek an immediate appeal.

Recently, the Fifth Circuit "strongly suggest[ed] to district judges the advisability of stating more than an abstract description of the legal questions involved or a bare

---

[28] *See* Doc. 19390 (USA Opp. to Entergy Intervention) at 8-10; Doc. 19390–2 (Bruno letter); Doc. 19390-3 (Andry letter).

[29] 2010 WL 487431, at *15.

[30] *See* Minute Entry at 5.

[31] 2010 WL 487431, at 15.

finding that the statutory requirements of section 1292(b) have been met."[32] As the Court noted, "[t]hough it will often be evident why the question presented by the certified order is 'controlling,' elaboration by the district judge will normally be helpful in understanding why the judge believes that there is a 'substantial ground for difference of opinion' and that 'immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id.* The February 2, 2010, Order addressed numerous questions, and the certification appears at the end of an analysis of the administrative exhaustion of the Armstrong and Coates EBIA claims. The Court concluded that they had not exhausted and therefore granted the United States' motion to dismiss to dismiss those claims from the MRGO Consolidated Master Class Action Complaint. In it discussion, however, the Court expressed its belief that "[f]or the plaintiffs to pursue the EBIA claims, they would have to file a new suit . . . ." If anyone was aggrieved by this ruling, it was the Plaintiffs, whose claims were dismissed for failure to exhaust. As the prevailing party, the United States did not have standing to seek an immediate appeal of the reasoning that invited the Plaintiffs to file a new suit.

The United States again sought dismissal based on the Plaintiffs' noncompliance with § 2675(a). The Court ruled against the United States, holding that the Plaintiffs had exhausted their administrative remedies before filing this suit.[33] Although the Court recognized that this ruling addressed the same exhaustion issue as had been addressed in the prior ruling that contained the § 1292(b) certification, the recent ruling contains no certification. The recent ruling, however, does make plain what was originally unclear: that the February 2, 2010, certification had been intended to give the government an opportunity to seek an immediate appeal.[34] We raise this subject here simply to point out that the Court's subject-matter jurisdiction over the EBIA claims is doubtful not only because of 33 U.S.C. § 702c and 28 U.S.C. § 2680(a) but also because of 28 U.S.C. §§ 2401(b) and 2675. If it is ultimately determined that the plaintiffs did not exhaust their administrative remedies before filing suit, then

---

[32] Linton v. Shell Oil Co., 563 F.3d 556, 558 (5th Cir. 2009).

[33] Doc. 20164 (Feb. 2, 2011, Order) at 20.

[34] *See id.* at 19.

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 11

trying the EBIA claims will prove to have "result[ed] in an extreme waste of judicial resources, as well as those of the litigants."

 The United States strongly opposes including *Entergy* in the next trial.  The *Entergy* administrative claims comprise hundreds of pages.  The claims are voluminous, filling a four-inch-thick loose-leaf binder.  Because we believed that *Entergy* would be stayed until *Robinson* becomes final, we had not begun the analysis of those claims that will need to be done in order to determine what experts would need to be retained to defend against the *Entergy* claims.  Until experts have been retained, it is impossible to say when expert reports and related discovery can be completed.  The Court has already noted that the *Entergy* claims are not only vast but also vastly different from the claims of other plaintiffs.  In denying the *Entergy* plaintiffs' motion to intervene in the MRGO class action, the Court emphasized that allowingthem to participate would be both inefficient and prejudicial to the United States: "Entergy—as a power utility—is an unique claimant whose damages likely bear little resemblance to the damages suffered by the vast majority of members of the proposed class. Granting this purely permissive intervention into the MRGO Master Class Action by these unique claimants who seek neither class certification nor class representative status at this late date would be useless duplication that would serve merely to complicate, confuse and impede the orderly progress both of class certification proceedings and, if and when appropriate, trial of individual cases in this consolidated litigation, all to the prejudice of the existing parties."[35]  Although the next trial will not be a class trial, the prejudice to the United States would be pronounced if a trial of the *Entergy* claims, which differ dramatically from other Plaintiffs' claims and which have not been subject to any discovery whatsoever, were to be held anytime soon.  *Entergy* should be excluded from the next trial.

 Based on costs expended in *Robinson* and a rough estimate of the cost of producing expert reports for the two IHNC breaches, we anticipate that a trial will cost not less than $5 million and will cost perhaps twice that much if *Entergy* is included and the trial involves *Robinson* issues.  No reliable estimate of the additional cost of a trial including Entergy can be made at this time, but it is clear that numerous experts

---

[35]Doc. 15020, at 3-4.

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 12

would have to be hired just to evaluate Entergy's damage claims. Here again we stridently assert that what was true nearly two years ago remains true today: a trial of the EBIA claims while the *Robinson* appeal is pending and the class-certification motion remains undecided, would "result in an extreme waste of judicial resources, as well as those of the litigants."[36]

The Court has already decided that there are no disputed facts which are material to Flood Control Act immunity.[37] Whether FCA immunity applies depends on statutory construction, not factual resolution. Here, as in *Robinson,* the Court has invoked the metaphor of "the Navy vessel hitting the levee." *Id.* at 10. Here too, the alleged damage resulted from floodwaters that a federal flood-control project failed to control. It is therefore all but certain that the *Robinson* appeal will determine the applicability of 33 U.S.C. § 702c to the cases that this Court is now poised to try.

The *Robinson* appeal may well also determine the applicability of the discretionary-function exception to these cases. Here, as in *Robinson,* the claims challenge safety-related engineering decisions. This Court held in *Robinson* and holds here that § 2680(a) does not exclude such claims and does not exclude claims of gross negligence. That holding is one of the issues presented by the *Robinson* appeal. This Court has opined that a Corps employee's "failure" to know the depth of the IHNC floodwall sheetpiling is "a material question of fact" that warrants a trial.[38] In the Court's view the "extreme negligence" of "failure to undertake a stability analysis of the existing floodwall . . . might fall in that [unprotected] category as well. The *Robinson* appeal may reveal that those factual issues are immaterial to the discretionary-function exception, rendering a trial unnecessary.

Trying the EBIA claims now would indeed "result in an extreme waste of judicial resources, as well as those of the litigants." Because the plaintiffs cannot rely on the

---

[36]May 5, 2009, Letter from the Hon. Stanwood R. Duval, Jr,. to the Hon. Charles R. Fulbruge III, Clerk, United States Court of Appeals for the Fifth Circuit, at 2.

[37]*See* Doc. 20164, at 11 (granting Entergy's motion for partial summary judgment).

[38]*See* Doc. 20164, at 16.

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 13

*Robinson* findings, a trial of the EBIA claims promises to be "*Robinson* plus." The causes and effects of the MRGO breaches must be established anew. And the causes and effects of the IHNC breaches must be established as well. Moreover, the findings made after an EBIA trial will have no preclusive effect in subsequent litigation brought by other parties. Requiring the government to spend millions of dollars to defend the claims of a few individuals cannot be justified, since the *Robinson* appeal promises at the very least to focus future trials if not to obviate them entirely. If the government prevails on immunity grounds in *Robinson*, that appellate ruling will constitute controlling precedent that may establish governmental immunity to all Katrina claims and foreclose further trials involving the United States. We therefore respectfully submit that *Armstrong* and the Entergy actions should be stayed until the *Robinson* appeal has been decided.[39]

   As noted above, we had understood that the Court's stay of MRGO proceedings would remain in effect "until the appeal of the Court's [*Robinson*] decision is made final."[40] Accordingly, we had made no preparations for any further trials, since *Robinson* will not be finally decided any time soon. The February 16 Minute Entry was the first indication that the Court intends to try the EBIA claims as soon as possible. We immediately began contacting experts to discuss their availability and willingness to assist us in the defense of these claims. We have sent materials for these experts to review and they are evaluating them so that they can let us know whether they are willing to be retained. Consequently, we do not have any estimate from our potential experts concerning the time they will require to prepare the necessary reports. Although we are including with this letter proposed schedules for trials with and without Entergy, we would request that the Court consider these as

---

[39] As it stands, the United States is the sole defendant in *Armstrong* and in *Entergy*. The Court dismissed the EBIA claims against the United States in the MRGO Consolidated Class Action. *See* 2010 WL 487431, at 15.

[40] *In re Katrina Canal Breaches Lit.* (5th Cir. No. 09-30302), Doc. 51779919, at 2; Doc. 18756, at 1).

Letter to Hon. Stanwood R. Duval, Jr.
March 15, 2011
Page 14

tentative proposals that are based on our best estimates without our having received proposals from our prospective experts.

Respectfully submitted,

Robin Doyle Smith
Senior Trial Counsel
U.S. Department of Justice

Encl.

cc: Mr. Joseph M. Bruno (w/encl.)
    Mr. James P. Roy (w/encl.)
    Mr. Ewell P. Eagan (w/encl.)
    Mr. William D. Treeby (w/encl.)
    Ms. Elisa Gilbert (w/encl.)