UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re:  KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION
NUMBER:  05-4182 "K"(2)
JUDGE Duval
MAG. Wilkinson

PERTAINS TO:   MRGO
                         *Armstrong*, No. 10-866

## PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED STATES' MOTION FOR STAY AND EXPEDITED HEARING

### INTRODUCTION

In requesting a stay of the *Armstrong* lawsuit, the Government advances the same meritless arguments that this Court has already rejected.  First, the United States argues that if the Fifth Circuit reverses this Court's decision in *Robinson v. United States*, based on either Flood Control Act immunity or discretionary function immunity, Plaintiffs will be barred from any recovery, and there will be no trial.  This is wrong.  Washington Group International ("WGI")—a private contractor not entitled to invoke any governmental immunity—will still be potentially liable and face trial.  What the Government thus proposes (since there are no grounds to stay a trial against WGI) is that the trial be bifurcated (or, more appropriately, severed).  This makes no sense because the liability of the Government is inextricably intertwined with WGI for the excavation work that occurred at the EBIA.

Second, the Government's fall-back position is that if this Court is affirmed by the Fifth Circuit on both immunity issues, the trial in the present case makes no economic sense because the Government is not subject to issue preclusion by way of collateral estoppel (a highly dubious

proposition as discussed *infra*), and the individual claims do not outweigh the cost of separate trials for every plaintiff.  But this tautology is not an argument for a stay at all—it is an argument to *never proceed* with the present trial.  Indeed, under the Government's "heads we win, tails you lose" logic, it would never be economically feasible to adjudicate the tens of thousands of pending similarly situated claims.

Finally, the Government has offered no reason why this Court should revisit its decision in March not to stay this case pending appellate resolution of *Robinson*.  In its March 15, 2011 Letter to the Court, the Government made the same arguments about the flood damage and discretionary function exception immunities, non-mutual offensive collateral estoppel under *United States v. Mendoza,* 464 U.S. 154 (1984) and *Sun Towers, Inc. v. Heckler,* 725 F.2d 315 (5th Cir 1984), and the purported $5 million cost to litigate.  After Plaintiffs submitted their opposition,[1]  this Court rejected the Government's first request.  *See* March 17, 2011 Minute Entry (Doc. No. 20200).

What has changed in the intervening five months that justifies the Government to seek a second bite at the judicial apple?  Nothing.  There have been no new case authorities or facts suggesting that this Court—after full briefing—erred in determining that this case should proceed to trial.  Indeed, the Court has been afforded no explanation for the defendant's *five month delay* in seeking Fifth Circuit intervention in the management of this complex litigation that has cost the parties millions of dollars of legal time and costs since March.

The request for stay should be denied.

---

[1] For convenience, Plaintiffs attach as Exhibit "A" their letter of March 17, 2011 in response.

**ARGUMENT**

1.    <u>A Reversal of *Robinson* Does Not Dispose of This Litigation</u>

WGI is a private entity not protected by government immunity under 33 U.S.C. § 702c (flood damage immunity) or the discretionary function exception to the government's waiver of sovereign immunity under the Federal Tort Claims Act (28 U.S.C. § 2680). No decision by the Fifth Circuit in *Robinson* regarding immunity will affect WGI whatsoever. In this Court's Talking Points email of February 19, 2011 it offered the suggestion of possibly limiting the trial in the present lawsuit (*Armstrong*) to issues of joint liability of the Army Corps and WGI. This is how the Government summarized the Court's suggestions:

> The Talking Points email proposes bifurcating the proceedings and limiting the issues for trial to whether the Corps or WGI or both were negligent with respect to the EBIA and whether that negligence was a substantial factor in causing injury to any and all of the plaintiffs independent of any hydrological impacts of the MRGO.

March 15, 2011 Letter at p. 2.

Implicit in the Court's suggestions is that *both* the Corps and WGI were potentially negligent or perhaps neither was or only one was. Of course, the only way to know is to try them both together. Moreover, the "substantial factor" test comes into play only when there is potentially more than one cause. *See In re Manguno*, 961 F.2d 533, 535 (5th Cir. 1992). This Court has correctly stated: "regardless of the outcome of the appeal in the *Robinson* matter which concerns the MRGO floodwaters and the liability of the United States Army Corps of Engineers for damage caused by those waters, the alleged liability of WGI and the United States for damages caused by the activity at the EBIA must be addressed." March 17, 2011 Minute Entry at p. 2 (Doc. No. 20200).

Since there is no basis for a stay of the trial against WGI because the *Robinson* appeal will not affect WGI, what the Government is essentially seeking is a severed trial. But this could only render incomplete justice and inefficiency at best.

### 2.      An Affirmance of *Robinson* is Not Grounds for a Stay

With all the enticement of a Chinese finger trap, the Government argues that *Armstrong* should be stayed because *Robinson* could be reversed and that *Armstrong* should be stayed because *Robinson* could be affirmed. This is, of course, circular reasoning based on a faulty premise.

The premise is that whatever result obtains in *Robinson* will not be binding on the Army Corps in the present lawsuit because collateral estoppel does not apply against the United States absent the perfect identity of the plaintiffs. The doctrine that the Government is not subject to non-mutual offensive collateral estoppel first arose in *United States v. Mendoza, supra* 464 U.S. 154. Nearly 40 years after a court decision against the Government based on a denial of due process to a Filipino national in a naturalization revocation proceeding, another Filipino national sought to argue the unconstitutionality of the revocation of his naturalization based on the binding effect of the earlier decision. The Supreme Court held that the Government was not collaterally estopped because a "rule allowing non-mutual collateral estoppel against the government in such cases would substantially thwart the development of important questions of law by freezing the first and final decision rendered on a particular legal issue." *Id.* at 160.

*Mendoza* involved serious issues of constitutional consequence that may not have been fully litigated (or even considered) in light of the succeeding four decades of constitutional expansion. This may have been the reason that the *Mendoza* court went on to carve out an exception:

> In *Nevada v. United States*, 463 U.S. 110 … we applied principles of res judicata against the United States as to one class of claimants who had not been parties to an earlier adjudication, *id.*, at 2925, but we recognized that this result obtained in the unique context of '*a comprehensive adjudication o*f water rights *intended to settle once and for all the question* of how much of the Truckee River each of the litigants was entitled to.' *Ibid.*

*Id.* at 163, n. 8 (emphasis added).[2]

Thus, controlling case law rejects the Government's belief in an absolute rule that collateral estoppel cannot be applied to it under any circumstances. If the subsequent litigation involves the same causes of action litigated in the earlier case, and the parties seeking to invoke collateral estoppel against the Government fall within the same 'class of claimants,'—especially where the first cases was intended to establish the rights of all similarly-situated claimants 'once and for all,'—collateral estoppel can and must be invoked against the Government.

In *Robinson*, the Court determined issues of the MRGO's impact on the levees as well as the geographic areas inundated as a result of the flooding, and the Government is therefore precluded from relitigating those issues against the same "class of claimants" in the *Armstrong* litigation.

The present lawsuit begs for the exception, not the rule, because of the comprehensive nature of relief that all the similarly situated plaintiffs in these *In Re Katrina Canal Breaches Consolidated Litigation* cases seek and the commonality of the critical legal and factual issues. The Court and all parties intended the *Robinson* case to be the lead case "for resolving not only the immunity issues, but also liability for the flooding of the Lower Ninth Ward, St. Bernard

---

[2] In *Nevada v. United States,* the Supreme Court noted that collateral estoppel relates to "issue preclusion," which can be invoked in the context of an "[o]ffensive use of collateral estoppel when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully *against the same or different party*." *Id.* at 158, n. 3, 4 (emphasis added).

Parish, and New Orleans East.  That is precisely what the trial and findings of fact and conclusions of law adjudicated."  Exh. "A," Plaintiffs' March 17 Letter at p. 2.

In any event, the Government's contention is that since Plaintiffs in *Armstrong* will have to begin from square one (if *Robinson* is affirmed) and since there are only a few individual Plaintiffs in *Armstrong,* the alleged $5 million cost outweighs the benefit of any recovery.  But this is not an argument for a stay, or at least a temporary stay—it is an argument for never having a trial at all (a permanent stay) since this situation will never change.[3]  Because if the Government is, in fact, not subject to collateral estoppel under the present circumstances, then *Armstrong* will always be uneconomic—now and forever.  If collateral estoppel does apply, then a judgment in *Armstrong* sets precedent for all those who were similarly situated by Defendants' negligence at the EBIA, making an *Armstrong* trial efficient as opposed to uneconomic.

The Government's argument that it is not subject to collateral estoppel here leads to an absurd result.  Every one of the tens of thousands of plaintiffs waiting for trial must try their cases individually from scratch because they are unable to benefit from the findings of fact and conclusions of law that this Court entered in favor of their fellow plaintiffs in the prior trials.  At

---

[3] This argument that the courts cannot accommodate tens of thousands of separate trials exposes the fallacy of the Government's position—rejected by this Court and others—that claims under the Federal Tort Claims Act cannot be afforded class action treatment even when all class members have timely filed their administrative claims.  *See In re Katrina Canal Breaches Consol. Litig.*, WL 1649501, **3-5 (E.D. La. 2009).  Under the Government's fallacious reasoning, federal courts could never resolve mass tort litigation against the United States because (1) favorable rulings for the first litigated cases are not collateral estoppel in favor of the next set of similarly-situated plaintiffs, and (2) a class of tens of thousands of similarly-situated victims cannot be certified.  Actions speak louder than words, however, as witnessed by the Government's agreement to settlement classes in two recent high profile cases involving tens of thousands of claims for billions of dollars in the Indian Trust and Black Farmers cases.  *See* http://www.nytimes.com/2010/11/20/us/politics/20farm.html; http://nlpc.org/stories/2010/12/01/congress-approves-455-billion-settle-pigford-indian-land-trust-suits.

the optimistic rate of six trials a year, resolution of all the pending cases would take centuries. Not only will justice for Katrina victims be forever delayed (and thus denied), this Court (and its countless successors) will begin to feel like Sisyphus, endlessly trying Katrina cases only to have to try more and more and more *ad infinitum*. In the Court's case, however, it will not be a myth—it will be an administrative nightmare.

## CONCLUSION

For the foregoing reasons, this Court should adhere to the Scheduling Order contained in its March 17, 2011 Minute Entry, continue on the path to trial charted five months ago, and deny Defendant's Motion for Stay.

Dated:  August 19, 2011

**Respectfully Submitted,**
**PLAINTIFFS LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB GROUP LITIGATION**
**COMMITTEE**

Jonathan Andry (The Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

**Respectfully Submitted,**
**PLAINTIFFS LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
Bruno & Bruno, LLP

855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB GROUP LITIGATION
COMMITTEE**

Jonathan Andry (The Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was served upon all counsel of

record by ECF on August 19, 2011.

<u>/s/ Joseph M. Bruno</u>