# IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION
(USDC, E.D. La. No. 05-4182 "K")

PLAINTIFFS'
LIAISON COUNSEL
JOSEPH M. BRUNO

LEVEE SUBGROUP
LITIGATION
COMMITTEE
Gerald E. Meunier,
Liaison
Daniel E. Becnel, Jr.
Joseph M. Bruno
Walter C. Dumas
Darleen M. Jacobs
Hugh P. Lambert

MRGO SUBGROUP
LITIGATION
COMMITTEE
James P. Roy,
Liaison
John B. Andry
Joseph M. Bruno
Clay H. Mitchell

INSURANCE
SUBGROUP
LITIGATION
COMMITTEE
Calvin C. Fayard,
Jr., Liaison
Joseph M. Bruno
John N. Ellison
James M. Garner
Joseph J. McKernan
Drew A. Ranier

LITIGATION
COORDINATOR
J. Robert Warren, II

855 BARONNE
STREET
NEW ORLEANS, LA.
70113
(504) 525-1335
(504) 561-6775
FACSMILE

March 17, 2011

**VIA EMAIL AND HAND DELIVERY**
The Honorable Stanwood R. Duval, Jr.
United States District Court
500 Poydras Street, Room C-368
New Orleans, Louisiana 70130

    Re:   *In Re Katrina Canal Breaches Consolidated Litigation*
           Civil Action No. 05-4182
           Pertains to: MRGO

Dear Judge Duval:

We write to respond to the Government's letter to you, dated March 15, 2010.

In its letter, the Government requests that the Court continue its stay of the MRGO litigation and vacate its decision to hold an October 2011 trial of Plaintiffs' lawsuit against the Government and WGI relating to the breach of the eastern floodwalls along the IHNC in the vicinity of the EBIA excavation. A primary basis for this request is the Government's claim that the Court's extensive findings after over four years of litigation and a four-week trial are not "dispositive and binding on the United States in a subsequent trial . . . ." (Letter, p. 7). In support of its bold assertion that the *Robinson* findings and judgment have no preclusive effect in the forthcoming EBIA trial, the Government cites *United States v. Mendoza*, 464 U.S. 154, 162-63 (1984) for the holding that "United States is not subject to non-mutual offensive collateral estoppel and is free to litigate issues that arose in a prior case so long as the cause of action is brought by different parties." (*Ibid.* (footnote omitted)). Therefore, the Government argues, "the *Robinson* findings do not bind the United States here or prevent the United States from presenting evidence concerning the flooding of Plaintiffs' properties *from levee breaches along the MRGO* . . . because MRGO-related findings must be made in order to assess liability for any EBIA-related negligence." (*Id.*, p. 8).

The Government's position is erroneous. Indeed, the very Supreme Court decision on which it relies refutes its position. *Mendoza* expressly carves out an exception to its holding that applies in our case:

> In *Nevada v. United States*, 463 U.S.110, 103 S.Ct. 2906, 77 L.Ed. 2d 509 (1983), *we applied principles of res judicata against the United States* as to one *class of claimants* who had not been parties to an

The Honorable Stanwood R. Duval, Jr.
March 17, 2011
Page 2 of 4

> earlier adjudication, *id.*, at 2925, but we recognized that this result obtained in the unique context of 'a comprehensive adjudication of water rights *intended to settle once and for all the question of how much of the Truckee River each of the litigants was entitled to.*' *Ibid.*

*Mendoza*, 464 U.S. at 163, n.8 (emphasis added).[1]

Thus, contrary to the Government's sweeping assertion, controlling case law rejects any notion of an absolute rule of applying collateral estoppel against the Government in all circumstances. So long as the subsequent litigation involves the same causes of action litigated in the earlier case and the parties seeking to invoke collateral estoppel against the Government fall within the same "class of claimants," and particularly where the first case was intended to establish the rights of all similarly-situated claimants "once and for all," collateral estoppel can and must be invoked against the Government. Here, the issues of the causes and effects of the Reach 2 levees being overwhelmed and the geographical areas inundated as a result of the flooding have been determined in the *Robinson* case, and the Government is therefore precluded from relitigating those issues against the same "class of claimants"—Katrina flooding victims—in this EBIA litigation.

The *Robinson* case was intended by the Court and the parties to be the lead case for resolving not only the immunity issues, but also liability for the flooding of the Lower Ninth Ward, St. Bernard Parish, and New Orleans East. That is precisely what the trial and findings of fact and conclusions of law adjudicated. Indeed, the Government adopts the *Entergy* plaintiffs' characterization of the *Robinson* trial as "function[ing] as the *de facto* bellwether trial on liability . . . ." (Letter, p.2 (citation omitted).

The Government bluntly admits that it wants to retry the *Robinson* case— "cover much of the ground previously litigated in *Robinson* ("*Robinson* plus") since "[t]he causes and effects of the MRGO breaches must be established anew." (*Id.* at p.13) Because the legal underpinning of this extreme position (*Mendoza*) is inapplicable here, the Government has no right to relitigate issues that were actually litigated—or could have been litigated—in *Robinson*. *See Nevada v United States*, 463 U.S. 110, 130 (1983) ("Simply put, the doctrine of *res judicata* provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy [and conclusive as to all] parties *and to those in privity with them*, not only as to every matter which was offered and received to

---

[1] The Supreme Court noted that the doctrine of collateral estoppel relates to "issue preclusion" which can be invoked in the context of an "[o]ffensive use of collateral estoppel when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully *against the same or different party*." *Id.* at 158, notes 3 & 4 (emphasis added).

The Honorable Stanwood R. Duval, Jr.
March 17, 2011
Page 3 of 4

sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'")

The Government bemoans the profligate waste of judicial resources as well as those of the parties if the path charted by the Court is pursued. Apparently, the irony of this argument is lost on the Government. Relitigation of the issues determined in *Robinson* would be a colossal waste of time and money. Moreover, affording the Government a second bite of the judicial apple is starkly contrary to the bedrock principles underlying the doctrine of estoppel by judgment:

> '[I]t ensures the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if . . . conclusiveness did not attend the judgments of such tribunals.'

*Nevada v. United States*, 463 U.S. at 129 (citation omitted).

The consolidation of the MRGO litigation before one court was designed to promote judicial economy in the wake of a catastrophe that literally drowned New Orleans and flooded the District Court with thousands of cases. The Government agreed to the procedures that led to the trial of the *Robinson* case as the test case for issues common to all MRGO claimants (both those who filed suit and tens of thousands who filed Form 95s): Flood Control Act immunity, Discretionary Function immunity, and liability (duty, breach of duty, legal cause, cause-in-fact, and resulting damages). The Government had four years to build its defense and vigorously defended and briefed the case before, during, and after trial. On appeal, the Government raises no issues as to the fairness of the trial, and its election not to challenge the findings of fact was a strategic decision for which it must accept the collateral (estoppel) consequences.

Finally, since the trial was to a judge who mastered the complex record as evidenced by the 93-page published decision, it is difficult to imagine how the outcome would vary after a retrial of the same issues. The same expert opinion offered by the Government will undoubtedly garner the same unfavorable outcome. And new expert opinion by the Government will be highly suspect since it will inevitably contradict the former Government experts and beg the question why it was not offered in the *Robinson* trial when it could have been tendered. In short, the Government's invitation to reprise *Robinson* should be declined.

The Honorable Stanwood R. Duval, Jr.
March 17, 2011
Page 4 of 4

       Based on the foregoing, we respectfully submit that the doctrine of collateral estoppel can and should be applied against the United States with respect to all matters that were or could have been adjudicated in the *Robinson* trial.

cc:    Robin D. Smith
        James P. Roy
        Ewell P. Regan
        William D. Treeby
        Elisa Gilbert

                              Very truly yours,

                              PLAINTIFF'S LIAISON COUNSEL

                              Joseph M. Bruno