UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| **IN RE KATRINA CANAL BREACHES** | | * | **CIVIL ACTION** |
| **CONSOLIDATED LITIGATION** | | * | |
| | | * | **NO. 05-4182** |
| | | * | **and consolidated cases** |
| **PERTAINS TO: BARGE** | | * | |
| | | * | **SECTION "K"(2)** |
| *Boutte v. Lafarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | **JUDGE** |
| *Lagarde v. Lafarge* | 06-5342 | * | **STANWOOD R. DUVAL, JR.** |
| *Perry v. Ingram* | 06-6299 | * | |
| *Benoit v. Lafarge* | 06-7516 | * | **MAG.** |
| *Parfait Family v. USA* | 07-3500 | * | **JOSEPH C. WILKINSON. JR.** |
| *Lafarge v. USA* | 07-5178 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), submits the following memorandum in support of its Motion for Summary Judgment.

The issue of whether the American Club owed coverage for any flooding of the Lower Ninth Ward which might have been caused by Ingram Barge ING 4727 has been exhaustively litigated in the United States District Court for the Southern District of New York in the action entitled *American Steamship Owners Mutual Protection and Indemnity Association, Inc. versus Lafarge North America, Inc.*, bearing Civil Action No. 06-3123 before the Honorable Charles S. Haight, Jr. (hereinafter the "New York Coverage Action"). Judge Haight held the American Club did not insure

Ingram Barge ING 4727,[1] a decision which has been affirmed by the United States Court of Appeals for the Second Circuit.[2]

This Court previously recognized the duplicative coverage question presented by the New York Coverage Action and the plaintiffs' direct action claim against the American Club in this litigation and stated that "two federal courts should not be adjudicating the same issues."[3] After giving the parties an opportunity to submit written briefs on the proper forum to hear the insurance coverage issue, this Court determined that this issue should be litigated in the New York Coverage Action and that "this Court will not undertake a second look at the precise same issues."[4] The New York Coverage Action which resulted in a finding of no coverage is final. Accordingly, the American Club requests a judgment dismissing the American Club from this litigation.

## I.  Background

Plaintiffs brought the above referenced litigation against Lafarge North America, Inc. ("Lafarge") contending, among other items, that Lafarge's negligent handling of Ingram Barge ING 4727 (hereinafter referred to as the "ING 4727") was a substantial cause of the north and south breaches of the eastern flood walls along the Inner-Harbor Navigation Canal ("IHNC") resulting in the flooding of the Lower Ninth Ward of New Orleans, Louisiana during the passage of Hurricane

---

[1]  *American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc.*, 2008 AMC 2343, 2008 WL 4449353 (S.D.N.Y. 2008).

[2]  *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102 (2nd Cir. 2010).

[3]  Rec. Doc. 15860.

[4]  Rec. Doc. 15860.

Katrina over the city.[5]  Specifically, plaintiffs alleged that Lafarge's cumulative decisions and negligent conduct leading up to and through Hurricane Katrina resulted in the Barge causing both breaches.[6]  On February 6, 2006, Ethel Mumford, individually and on behalf of a purported class of persons with common claims, filed her Second Supplemental and Amended Complaint wherein she named the American Club as a party to the consolidated cases alleging "negligence of defendants in breeching [sic] the east side wall of the Industrial Canal with the barge under their supervision, management, control, and responsibility..."[7]

On April 21, 2006, the American Club filed a declaratory judgment action against Lafarge in the United States District Court for the Southern District of New York.  In the New York Coverage Action, the American Club sought a declaration that Lafarge was not afforded coverage by the American Club for claims brought against it for property damage and/or personal injury relating to the ING 4727 and arising from the Hurricane Katrina disaster.  The American Club filed the New York Coverage Action in response to Lafarge's continued attempts to press its claims for coverage despite the American Club's denial thereof.

Shortly after the initiation of the New York Coverage Action, the American Club filed an Answer to the Amended Complaint filed in the action initiated by Ethel Mumford, which action was subsequently consolidated with the instant litigation.

With both actions pending, Lafarge attempted to force the American Club to litigate the coverage issues in New Orleans and moved to transfer the New York Coverage Action to this Court or otherwise requested a stay pending the conclusion of this litigation.  After the parties to the New

---

[5]   Rec. Doc. 20149, p. 1.

[6]   *Id.*

[7]   Rec. Doc. 43, Civil Action No. 05-4419.

York Coverage Action briefed the issues, Judge Haight issued his order wherein he found venue to be proper for the coverage dispute in the Southern District of New York and denied Lafarge's motion to transfer or stay on January 29, 2007. The United States Court of Appeals for the Second Circuit found that Judge Haight did not abuse his discretion in denying Lafarge's motion to transfer or stay.[8]

Concerned about maintaining the forward progress of the instant consolidated litigation and after receiving some complaints from plaintiffs regarding their inability to pursue the American Club in this litigation via a summary judgment motion while the New York Coverage Action was pending, this Court issued its July 1, 2008 Order requiring plaintiffs and the American Club, among others, to brief the issue as to why the coverage issue should not be heard in this Court.[9] After briefing, this Court determined that motion practice on the coverage issue would "make[] no sense in terms of judicial economy" and decided that the Southern District of New York should be the final judge of the coverage issue.[10]

In its October 9, 2008 Order and Reasons, this Court noted Judge Haight's decision in Civil Action No. 06-3123 "wherein he found that the American Club policy did not provide coverage for the barge ING4727."[11] Regarding the American Club decision, among others, this Court stated:

> Thus, it is clear that this coverage matter has been and will be adjudicated in New York and in the Second Circuit Court of Appeals in a timely fashion. For reasons of comity and judicial economy, this Court will not undertake a second look at the

---

[8]  *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102 (2nd Cir. 2010).

[9]  *See*, Rec. Doc. 13701.

[10]  *See*, Rec. Doc. 14719.

[11]  *See*, Rec. Doc. 15860, pp. 1-2.

precise same issues. Judge Haight determined that the first to file rule was not applicable to these disputes and as such, the Court will not take any action to create any potential conflict. Simply put, two federal courts should not be adjudicating the same issues. The consequences of such a situation could result in two different results that both of which might be binding if upheld by the respective circuits involved. Therefore, this Court will not be complicit in creating such a legal quagmire.[12]

A copy of Judge Haight's Order and Reasons wherein he found that no coverage is owed to Lafarge by the American Club is attached hereto.[13] The United States Court of Appeals for the Second Circuit has affirmed Judge Haight's October 27, 2008 Judgment.[14] As such, the coverage issue existing between the American Club and Lafarge has been conclusively determined; the American Club did not insure Ingram Barge ING 4727.

Notwithstanding the foregoing events, this Court conducted a 13-day bench trial concerning the negligence claims brought in two suits by four specific plaintiffs as stipulated by the parties against Lafarge.[15] After a review of the testimony and evidence offered, this Court issued its Findings of Facts and Conclusions of Law on January 20, 2011 wherein it found:

> The horror and tragedy of the flooding that occurred in the Lower Ninth Ward is one that must not be taken lightly. The testimony of those caught in the maelstrom is heartbreaking and defies belief that such a catastrophe could occur. However, where as here there is overwhelming evidence that the ING 4727 did not cause in any manner cataclysmic flooding of the Lower Ninth Ward, the Court must so find.

---

[12] *Id*. at p. 2.

[13] See, Exhibit A, *American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc.*, 2008 AMC 2343, 2008 WL 4449353 (S.D.N.Y. 2008).

[14] See, Exhibit B, *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102 (2nd Cir. 2010).

[15] *See*, Rec. Doc. 20149, p. 1.

> Accordingly, there is no just reason for delay, pursuant to Fed. R. Civ. P. 54(b), IT IS ORDERED that judgment be entered in favor of [Lafarge]...[16]

This Court's decision holding that the ING 4727 did not cause the flooding of the Lower Ninth Ward is the law of the case. While the Plaintiffs initially appealed the January 20, 2011 Judgment, they thereafter withdrew and dismissed the appeal.

As such, the American Club now moves for dismissal of all claims asserted against it in this action pursuant to Fed. R. Civ. P. 56 as (1) Lafarge was exonerated from liability for the flooding of the Lower Ninth Ward due to the overwhelming evidence that the ING 4727 did not cause that flooding and, therefore, the American Club can have no liability for the said flooding under its policy of insurance issued to Lafarge; and (2) even had this Court found that Lafarge was liable for the flooding of the Lower Ninth Ward as a result of Ingram Barge ING 4727, the American Club did not insure Ingram Barge ING 4727 and that American Club is therefore entitled to judgment as a matter of law.

## II. Law and Argument

### A. Plaintiffs do not have a right of direct action against the American Club.

The Louisiana direct action statute provides that "[t]he injured person or his or her survivors or heirs... shall have a right of direct action against the insurer within the terms and limits of the policy."[17] In a suit on an insurance contract, the burden is on the plaintiff to prove every fact

---

[16] *See*, Rec. Doc. 20149, pp. 41-42.

[17] LA. REV. STAT. ANN. art. 1269(B)(1) – formerly LA. REV. STAT. ANN. art. 655.

essential to show that his claim is within the coverage provided by the policy.[18]  When there exists no set of facts which demonstrate liability of the insured under the policy, dismissal of the insurer is appropriate.[19]

In the instant litigation, plaintiffs seek recovery from the American Club based upon the policy of insurance issued to Lafarge.  Any coverage which might have been due under the policy would have to be based on a finding that Ingram Barge ING 4727 caused the flooding of the Lower Ninth Ward.[20]  However, this Court has held that "there is overwhelming evidence that the ING 4727 did not cause in any manner cataclysmic flooding of the Lower Ninth Ward."[21]

Since there is no liability on the part of the insured, Lafarge, plaintiffs have no direct right of action against the American Club for the damages alleged in their Complaint.  Summary judgment is appropriate and this Court should dismiss the American Club from this litigation, with prejudice.

---

[18]   *Fielding v. Casualty Reciprocal Exchange*, 331 So.2d 186 (La. App. 3 Cir. 1976); citing *Talazac v. Phoenix of Hartford Ins. Co.*, 259 So.2d 636 (La. App. 4 Cir. 1972).

[19]   *Barber v. Lamarca*, 542 So.2d 664 (La. App. 5 Cir. 1989).

[20]   In asserting this argument, the American Club does not waive the benefit of the finding of Judge Haight, as affirmed by the United States Court of Appeals for the Second Circuit, that even should ING 4727 have been the cause of the "flooding of the Lower Ninth Ward," coverage would not be due under the American Club policy issued to Lafarge.  This argument is only asserted to conclusively demonstrate that there are no facts under which the American Club could be liable to plaintiffs herein.

[21]   *See*, Rec. Doc. 20149, pp. 41-42.

    **B.    Summary Judgment is appropriate based upon principles of comity and the decision of the United States District Court for the Southern District of New York in the New York Coverage Action.**

Summary judgment is appropriate dismissing the American Club based upon principles of comity as the United States District Court for the Southern District of New York has found that the American Club did not insure Ingram Barge ING 4727, a decision affirmed by the United States Court of Appeals for the Second Circuit.

Federal courts have long since recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs.[22] "As between federal courts, ... the general principle is to avoid duplicative litigation."[23] "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[24]

As recognized by this Court, the issue of whether insurance coverage is owed under the American Club policy to Lafarge is precisely the type for which the principle of comity applies:

> For reasons of <u>comity</u> and <u>judicial economy</u>, this Court will not undertake a second look at the precise same issues... two federal courts should not be adjudicating the

---

[22]     *West Gulf Marine Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985); citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Covell v. Heyman*, 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390 (1884).

[23]     *West Gulf Marine Ass'n*, 751 F.2d at 728-729, quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

[24]     *Id*. at 729 (citations omitted).

same issues. The consequences of such a situation could result in two different results that both of which might be binding if upheld by the respective circuits involved... this Court will not be complicit in creating such a legal quagmire.[25]

(emphasis supplied).

As this Court previously acknowledged, the coverage issue pending in the New York Coverage Action is precisely the same as in the instant litigation.[26] Lafarge vigorously sought a finding of coverage with the American Club in the New York Coverage Action. Considerable discovery on the coverage issue was conducted and the issue was thoroughly briefed and argued in that litigation. The principles of judicial economy and comity suggest that this Court not reconsider the very same issue which has already been adjudicated.

Indeed, if this Court were to hear the insurance coverage issue which was decided in the New York Coverage Action and came to a different conclusion, the very legal quagmire which this Court desires to avoid would occur and the authority of its sister court – the United States District Court for the Southern District of New York – would be trounced upon. To avoid such an outcome, this Court should grant Summary Judgment on the coverage issue based upon the principle of comity and dismiss the American Club as the United States Second Circuit Court of Appeals has affirmed the decision in the New York Coverage Action.

---

[25] Rec. Doc. 15860.

[26] "For reasons of comity and judicial economy, this Court will not undertake a second look at the precise same issues." See, Rec. Doc. 15860, pp. 1-2.

### C. Summary Judgment is appropriate because the Plaintiffs are precluded from relitigating the coverage issue between Lafarge and the American Club for Ingram Barge ING4727

Finally, the doctrine of issue preclusion necessitates a finding that the American Club did not insure Ingram Barge ING 4727. Therefore, any liability attributed to Lafarge for negligence "in breeching [sic] the east side wall of the Industrial Canal with the barge under their supervision, management, control, and responsibility" is not covered by the American Club policy and this Court should grant the American Club's Motion for Summary Judgment.

Under the doctrine of issue preclusion, there is no need to re-hash the same legal issue which has already been fully adjudicated. Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.[27] The relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings.[28] It is irrefutable that the same facts which existed in the litigation before Judge Haight concerning the coverage issue are the same facts which are present in the instant litigation.

The legal standard utilized in the New York Coverage Action is the same standard utilized in the instant motion: the summary judgment standard. As such, the facts and legal standard used to analyze the coverage issue would be the same in both proceedings and this court may adopt the judgment of the Southern District of New York, as affirmed by the United States Second Circuit

---

[27] *Pace v. The Bogalusa City School Board*, 403 F.3d 272, 290 (5th Cir. 2005); citing *In re: Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999).

[28] *In re: Southmark Corp.*, 163 F.3d at 932; quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

Court of Appeal, and grant summary judgment herein, dismissing the American Club from this consolidated litigation, with prejudice.

The coverage issue has actually been litigated. Plaintiffs filed their Second Supplemental and Amended Complaint[29] against the American Club alleging "negligence of defendants in breeching [sic] the east side wall of the Industrial Canal with the barge under their supervision, management, control and responsibility."[30] Plaintiffs' basic allegation is that the American Club covered the losses brought about by Lafarge's alleged negligence in breaching the east side wall of the Industrial Canal.

Necessary to any ultimate judgment by this Court that the American Club can be liable under the policy issued to Lafarge for any alleged damages caused by the ING 4727 is the necessary conclusion that the ING 4727 was a vessel covered by the American Club policy at the time the barge allegedly breached the east levee wall of the Industrial Canal. Whether the ING 4727 was a vessel covered by the American Club policy was exhaustively litigated before the United States District Court for the Southern District of New York and the United States Second Circuit Court of Appeals. Both courts found that Ingram Barge ING 4727 was <u>not</u> covered under the terms of the American Club policy.[31] This factor clearly favors the application of issue preclusion and dismissal of the American Club from the instant litigation.

---

[29] Rec. Doc. 43, Civil Action No. 05-4419.

[30] *Id.* at paragraph II.

[31] See, *American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc.*, 2008 AMC 2343, 2008 WL 4449353 (S.D.N.Y. 2008).

The second consideration is whether the issue was actually litigated before the other tribunal. This consideration also weighs in favor of finding that the coverage issue is precluded from relitigation. As seen from Judge Haight's opinion[32] and that of the Second Circuit,[33] there can be no doubt that the coverage issue was actually litigated before the New York tribunals. As such, this factor also weighs in favor of finding that this issue is precluded from relitigation.

The final issue concerns whether the previous determination was necessary to the decision issued therein. The coverage issue, itself, was central to the determination of the litigation between Lafarge and the American Club in the New York litigation. As such, the previous determination was not only necessary to the decision rendered by Judge Haight, as affirmed by the United States Court of Appeals for the Second Circuit, it was the core of the decision of the United States District Court for the Southern District of New York as affirmed by the Second Circuit. This factor also strongly favors the application of issue preclusion and dismissal of the American Club from this litigation, with prejudice.

The decision of the coverage issue should also be binding on Plaintiffs herein. Federal courts have repeatedly held that judgments can bind persons not party to the litigation in question.[34] A non-party will be considered "in privity, or sufficiently close to a party in the prior suit so as to justify preclusion," where the party to the first suit is so closely aligned with the nonparty's interests as to

---

[32] *Id.*

[33] See, *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102 (2nd Cir. 2010).

[34] *Southwest Airlines Co. v. Texas Int'l Airlines, Inc., et al*, 546 F.2d 84 (5th Cir. 1977).

be his "virtual representative."[35]  The term "privity" denotes a legal conclusion rather than a judgmental process.[36]  Thus, the term privity in itself does not state a reason for either including or excluding a person from the binding effect of a judgment, but rather it represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of issue preclusion.[37]  Federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.[38]

In the instant litigation, it is difficult to contemplate that any party would have litigated the issue as to whether Ingram Barge ING 4727 was covered by the American Club policy any more strongly than Lafarge.  Plaintiffs could have arguably had an interest in the American Club policy in the event this Court found that the ING 4727 was the direct cause of the breach of the side wall of the Industrial Canal.  However, Lafarge's interest in the American Club policy was even greater as that policy may have provided for defense costs regardless of a finding of liability.  As such, even had this Court determined that the ING 4727 was responsible for the east wall breach, which it did not, Lafarge would still have had a stronger interest in recovering its costs of defense from the American Club to the extent allowable under the policy.  Therefore, Lafarge had a greater interest than even Plaintiffs in contending that the coverage issue was resolved in its/their favor.

---

[35]  *Royal Insurance Company of America v. Quinn-L Capital Corp., et al*, 960 F.2d 1286 (5th Cir. 1992); citing *Benson & Ford, Inc. v. Ward Petroleum Co.*, 833 F.2d 1172, 1174-75 (5th Cir. 1987). *See also Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

[36]  *Southwest Airlines*, 546 F.2d at 95.

[37]  *Id.*

[38]  *Id.*

As seen, the United States District Court for the Southern District of New York has decided the precise issue as to whether the American Club provided coverage for the ING 4727; that court ruled that the American Club did not provide coverage. That issue was actually litigated in that proceeding and the determination of that issue was necessary to the outcome. In fact, the determination of that issue was the outcome. The decision that the American Club does not provide coverage for the ING 4727 was reviewed by the United States Second Circuit Court of Appeals and affirmed.[39]

Having met the requirements for issue preclusion, Plaintiffs cannot validly argue that any interest they may have had in the American Club policy issued to Lafarge was not adequately represented by Lafarge. As discussed above, the interest of Lafarge in contending that coverage was afforded for any interest it may have had in the ING 4727 was stronger than the interest of Plaintiffs insofar as a finding of coverage may, arguably, have reimbursed Lafarge for the costs of defense even in the absence of Lafarge's liability.

### III.   Conclusion

For the foregoing reasons, this Court should grant the American Club's Motion for Summary Judgment finding that no coverage was afforded by the American Club for Ingram Barge ING 4727 and dismiss any and all claims asserted against the American Steamship Owners Mutual Protection and Indemnity Association, Inc. with prejudice.

---

[39]  *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102 (2nd Cir. 2010).

Respectfully Submitted,

MONTGOMERY BARNETT, L.L.P.

  *A. Gordon Grant, Jr.*
A GORDON GRANT, JR. (#6221)(T.A.)
PHILIP S. BROOKS, JR. (#21501)
3300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    (504) 585-3200
Facsimile:     (504) 585-7688

AND

CLYDE & CO
John M. Woods, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone:    (212) 710-3900
Facsimile:     (212) 710-3950

*Attorneys for American Steamship Owners*
*Mutual Protection and Indemnity Association, Inc.*

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 30th day of August, 2011, electronically filed a copy of the foregoing and with the Clerk of Court using the CM/ECF system, which then sent notification of such filing to counsel of record.

  *A. Gordon Grant, Jr.*