351

1                          UNITED STATES DISTRICT COURT
2                          EASTERN DISTRICT OF LOUISIANA
3

4

5        IN RE:  KATRINA DREDGING       *   Civil Action
         LIMITATION ACTION              *
6        CONSOLIDATED LITIGATION        *   No. 05-4182
                                        *
7                                       *   Section K(2)
         PERTAINS TO:                   *
8        BARGE                          *   New Orleans, Louisiana
                                        *
9        MUMFORD, C.A. NO. 05-5724, AS  *   June 22, 2010
         TO PLAINTIFFS JOSEPHINE        *
10       RICHARDSON AND HOLLIDAY        *   Afternoon Session
         JEWELERS, INC., ONLY           *
11       AND                            *
         BENOIT, C.A. NO. 06-7516, AS   *
12       TO PLAINTIFFS JOHN ALFORD AND  *
         JERRY ALFORD ONLY              *
13       * * * * * * * * * * * * * *
14                              DAY TWO
                        BENCH TRIAL BEFORE THE
15                    HONORABLE STANWOOD R. DUVAL, JR.
                        UNITED STATES DISTRICT JUDGE
16

17

         APPEARANCES:
18

         For the Plaintiffs:        Best Koeppel
19                                  BY:  LAURENCE E. BEST, ESQ.
                                    BY:  PETER S. KOEPPEL, ESQ.
20                                  2030 St. Charles Avenue
                                    New Orleans, Louisiana 70130
21

22       For the Plaintiffs:        Law Offices of Brian A. Gilbert
                                    BY:  BRIAN A. GILBERT, ESQ.
23                                  2030 St. Charles Avenue
                                    New Orleans, Louisiana  70130
24

25

              JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA

## 352

APPEARANCES:

For the Plaintiffs:     Wiedemann & Wiedemann
                        BY:  KARL WIEDEMANN, ESQ.
                        BY:  LAWRENCE WIEDEMANN, ESQ.
                        821 Baronne Street
                        New Orleans, Louisiana  70113

For the Plaintiffs:     Patrick J. Sanders, LLC
                        BY:  PATRICK J. SANDERS, ESQ.
                        3316 Ridgelake Drive
                        Suite 100
                        Metairie, Louisiana  70002

For the Plaintiffs:     Law Office of Richard T. Seymour,
                        P.L.L.C.
                        BY:  RICHARD T. SEYMOUR, ESQ.
                        1150 Connecticut Avenue N.W.
                        Suite 900
                        Washington, D.C.  20036-4129

For the Plaintiffs:     Khorrami, Pollard & Abir, LLP
                        BY:  SHAWN KHORRAMI, ESQ.
                        444 S. Flower Street
                        33rd Floor
                        Los Angeles, California  90071

For the Plaintiffs:     Wilson, Grochow, Druker & Nolet
                        BY:  LAWRENCE A. WILSON, ESQ.
                        233 Broadway
                        5th Floor
                        New York, New York  10279

For the Defendant:      Chaffe, McCall, L.L.P.
                        BY:  DEREK A. WALKER, ESQ.
                        BY:  CHARLES P. BLANCHARD, ESQ.
                        1100 Poydras Street, Suite 2300
                        New Orleans, Louisiana 70163

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 353

APPEARANCES:

For the Defendant:      Goodwin Procter, L.L.P.
                        BY:  JOHN ALDOCK, ESQ.
                        BY:  MARK RAFFMAN, ESQ.
                        BY:  ADAM CHUD, ESQ.
                        BY:  KIRSTEN ROBBINS, ESQ.
                        BY:  ERIC I. GOLDBERG, ESQ.
                        901 New York Avenue, NW
                        Washington, D.C. 20001

For the Defendant:      Sutterfield & Webb
                        BY:  DANIEL A. WEBB, ESQ.
                        650 Poydras Street, Suite 2715
                        New Orleans, Louisiana 70130

For the Defendant:      Lafarge North America, Inc.
                        BY:  PETER KEELY, ESQ.
                        12950 Worldgate Drive
                        Herndon, Virginia  20170

Official Court Reporter:   Jodi Simcox, RMR, FCRR
                        500 Poydras Street
                        Room HB-406
                        New Orleans, Louisiana 70130
                        (504) 589-7780

Proceedings recorded by mechanical stenography, transcript
produced by computer.

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 354

I N D E X

|                         | Page |
|-------------------------|------|
| ROBERT BARTLETT         |      |
|   Cross-Examination     | 355  |
| GERTRUDE LEBLANC        |      |
|   Direct Examination    | 366  |
|   Cross-Examination     | 379  |
|   Redirect Examination  | 385  |
| FRAZIER TOMPKINS, III   |      |
|   Direct Examination    | 387  |
|   Cross-Examination     | 404  |
|   Redirect Examination  | 409  |
| DONALD JOSEPH GREEN     |      |
|   Direct Examination    | 417  |
|   Voir Dire             | 424  |
|   Direct Examination    | 431  |
|   Voir Dire             | 437  |
|   Direct Examination    | 441  |
|   Direct Examination    | 452  |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 355

12:44:21          AFTERNOON SESSION

12:44:21          (June 22, 2010)

12:44:21          * * * * *

12:44:46          THE DEPUTY CLERK:  All rise.

13:08:34          THE COURT:  Be seated.  Okay.  Are you ready to

13:08:41     proceed?

13:08:42          MR. ALDOCK:  I am.  John Aldock for Lafarge.

13:08:47          (WHEREUPON, Robert Bartlett, having been previously

13:08:47     duly sworn, testified as follows.)

13:08:48          CROSS-EXAMINATION

13:08:48     BY MR. ALDOCK:

13:08:49     Q.  Dr. Bartlett, let me show you a slide from your report --

13:08:55     well, actually, it's Defendant's 70, page 2, a familiar slide

13:09:02     to all of us.

13:09:02          The area we're talking about throughout your direct

13:09:07     testimony, Dr. Bartlett, is this little thing between the end

13:09:13     of the wall here and where it starts to curve; right?  It's

13:09:18     this piece?

13:09:19     A.  That's correct.  And if I could just -- I'm not

13:09:22     Dr. Bartlett.  It's Mr. Bartlett.

13:09:25     Q.  Okay.  Thank you.  Promotion.  You don't want it?

13:09:27     A.  That's fine.  Thank you.

13:09:29     Q.  Okay.

13:09:30          So that means, does it not, that you didn't concern

13:09:36     yourself with any of this?

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

364

| | | |
|---|---|---|
| 1 | 13:20:19 | you then open the gate to this witness answering as best he |
| 2 | 13:20:22 | can, regardless of his tendered area of expertise. |
| 3 | 13:20:26 | You may continue your answer, sir. |
| 4 | 13:20:28 | THE WITNESS:  Oh, I believe that I'm finished, |
| 5 | 13:20:32 | Your Honor.  Thank you. |
| 6 | 13:20:32 | THE COURT:  All right.  Thank you. |
| 7 | 13:20:33 | BY MR. ALDOCK: |
| 8 | 13:20:33 | Q.  The force by which the barge struck the cap, it was not |
| 9 | 13:20:35 | enough to break the rebar.  It only bent it; right? |
| 10 | 13:20:40 | A.  It's unlikely that you would break rebar by any force, |
| 11 | 13:20:45 | because it's typically not dull enough to bend without |
| 12 | 13:20:52 | fracturing it. |
| 13 | 13:20:54 | Q.  And the force in the area that we're discussing was not |
| 14 | 13:20:57 | enough to cause the sheet pile to separate; correct? |
| 15 | 13:21:03 | A.  Well, you have to get the force down to the sheet pile. |
| 16 | 13:21:06 | And that was, of course, one of the things we talked about in |
| 17 | 13:21:11 | our report, that the force was enough to cause the -- a cap to |
| 18 | 13:21:16 | come loose.  But the force could not be transferred down to the |
| 19 | 13:21:21 | sheet pile to cause the sheet pile to be disturbed. |
| 20 | 13:21:28 | So that, again, is another thing that says that the |
| 21 | 13:21:31 | wall was -- that the foundation of the wall, the soil, was |
| 22 | 13:21:33 | intact. |
| 23 | 13:21:45 | MR. ALDOCK:  That's all I have, Your Honor. |
| 24 | 13:21:47 | THE COURT:  Thank you, sir. |
| 25 | 13:21:47 | MR. BEST:  Nothing, Your Honor. |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

366

| | | |
|---|---|---|
| | 13:25:16 | L-E-B-L-A-N-C. |
| | 13:25:24 | DIRECT EXAMINATION |
| | 13:25:25 | BY MR. BEST: |
| | 13:25:32 | Q.  Good afternoon, ma'am.  How old are you?  And I hate to |
| | 13:25:40 | start with that question, and I apologize. |
| | 13:25:42 | A.  74. |
| | 13:25:43 | Q.  74.  And where do you live today? |
| | 13:25:45 | A.  1738 Tennessee Street, New Orleans. |
| | 13:25:47 | Q.  And is that the same Tennessee Street that's in the Ninth |
| | 13:25:52 | Ward? |
| | 13:25:53 | A.  Yes. |
| | 13:25:53 | Q.  The Lower Ninth Ward? |
| | 13:25:55 | A.  Yes. |
| | 13:25:56 | Q.  How long have you lived at that address? |
| | 13:25:58 | A.  About 45 years.  It might be longer. |
| | 13:25:59 | Q.  So you lived at that address before Hurricane Katrina? |
| | 13:26:01 | A.  Yes. |
| | 13:26:03 | Q.  And since the storm, you've come back and rebuilt and |
| | 13:26:04 | moved in again? |
| | 13:26:05 | A.  Yes. |
| | 13:26:06 | Q.  All right. |
| | 13:26:08 | And at the time of Hurricane Katrina, who lived with |
| | 13:26:11 | you at that address? |
| | 13:26:13 | A.  Jennifer, my oldest daughter, and my granddaughter, |
| | 13:26:18 | Leaura.  And my grandsons go and come. |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

365

| | | |
|---|---|---|
| 1 | 13:21:48 | THE COURT:  Thank you, sir. |
| 2 | 13:21:49 | And thank you, sir. |
| 3 | 13:21:51 | THE WITNESS:  Thank you very much. |
| 4 | 13:22:46 | THE COURT:  Okay. |
| 5 | 13:22:52 | MR. BEST:  One moment, Your Honor. |
| 6 | 13:22:54 | THE COURT:  Sure. |
| 7 | 13:22:55 | MR. BEST:  I'm assembling my materials. |
| 8 | 13:23:10 | Your Honor, we call Gertrude LeBlanc as our next |
| 9 | 13:23:13 | witness. |
| 10 | 13:23:15 | THE COURT:  Thank you, sir. |
| 11 | 13:23:20 | While Ms. LeBlanc is coming, just as a matter of |
| 12 | 13:23:27 | inquiry, is the -- has the Villavaso deposition been vetted? |
| 13 | 13:23:31 | Because we'll probably get to it today. |
| 14 | 13:23:36 | MR. SNYDER:  We're working on it, Your Honor. |
| 15 | 13:23:38 | THE COURT:  You're still working on it? |
| 16 | 13:23:40 | MR. SNYDER:  Yes, Your Honor. |
| 17 | 13:23:55 | THE COURT:  Okay. |
| 18 | 13:23:55 | Mr. Gilbert, I think you have a witness coming |
| 19 | 13:23:57 | in here.  There you go.  It's sort of hard to find your way up |
| 20 | 13:24:01 | here, ma'am. |
| 21 | 13:24:02 | (WHEREUPON, Gertrude LeBlanc, having been duly sworn, |
| 22 | 13:24:02 | testified as follows.) |
| 23 | 13:25:04 | THE DEPUTY CLERK:  Please state your full name and |
| 24 | 13:25:04 | correct spelling for the record. |
| 25 | 13:25:08 | THE WITNESS:  Gertrude LeBlanc, it's G-E-R-T-R-U-D-E, |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

367

| | | |
|---|---|---|
| | 13:26:27 | Q.  All right.  As Hurricane Katrina approached, what plans |
| | 13:26:29 | did you make to deal with the storm? |
| | 13:26:30 | A.  Well, I was -- like you see, you fill a container with |
| | 13:26:36 | different things, items, but I didn't do that.  I really sat |
| | 13:26:42 | down and watched what was going on in the Gulf. |
| | 13:26:51 | MR. WALKER:  Your Honor, may I ask Mrs. LeBlanc to |
| | 13:26:57 | come a little closer to the mic? |
| | 13:26:59 | THE COURT:  Yes.  You were perfectly positioned a |
| | 13:27:00 | little while ago. |
| | 13:27:00 | THE WITNESS:  All right. |
| | 13:27:00 | THE COURT:  That's good.  That's great.  Just stay |
| | 13:27:00 | right there. |
| | 13:27:00 | Go ahead, Mr. Best. |
| | 13:27:00 | BY MR. BEST: |
| | 13:27:01 | Q.  Before I get too far down that road, let us pull up again |
| | 13:27:05 | the map of the neighborhood that we've been using.  That was |
| | 13:27:10 | Plaintiffs' Exhibit 274. |
| | 13:27:11 | And you have it on the screen in front of you as |
| | 13:27:14 | well, Mrs. LeBlanc, so you can look at it.  I think you told us |
| | 13:27:18 | you lived on Tennessee Street. |
| | 13:27:19 | A.  Uh-huh. |
| | 13:27:20 | Q.  Whereabouts on Tennessee? |
| | 13:27:22 | A.  Between Derbigny and -- Roman does not go all the way |
| | 13:27:31 | through, but Prieur would be the next street that goes through. |
| | 13:27:34 | Q.  Okay.  So on Tennessee Street between the cross-street |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**368**

1  13:27:37  North Derbigny and the cross-street North Prieur?
2  13:27:41  A.  Yes.
3  13:27:41  Q.  And which side of the street did you live on?  In other
4  13:27:44  words, did your house face the canal or did it face away from
5  13:27:48  the Industrial Canal?
6  13:27:50  A.  My backyard was to the canal, yeah.
7  13:27:53  Q.  Your backyard was to the canal?
8  13:27:55  A.  Yeah.
9  13:27:55  Q.  All right.  So about how many blocks were you from North
10  13:27:57  Claiborne Avenue?
11  13:27:59  A.  I'm about a block and a half from Claiborne.
12  13:28:03  Q.  All right.  Now, you told us you were -- you were
13  13:28:06  following the weather as the storm approached.
14  13:28:09  A.  Yes, I was watching the television.
15  13:28:11  Q.  And what did you finally decide to do about whether to
16  13:28:15  stay or to go?
17  13:28:17  A.  All right.  That -- when I saw that the hurricane covered
18  13:28:21  the whole Gulf -- I mean, the whole Gulf, I said, "We better
19  13:28:26  get out."
20  13:28:28  Q.  Okay.
21  13:28:28  A.  "Because something is going to happen."
22  13:28:29  Q.  And did you evacuate?
23  13:28:31  A.  Yeah.  We evacuated that Sunday morning.
24  13:28:34  Q.  And whom did you evacuate with?
25  13:28:38  A.  My oldest daughter, Jennifer, and my granddaughter.

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**369**

1  13:28:41  Q.  And where did you-all evacuate to?
2  13:28:44  A.  We was on our way to Pensacola, Florida.
3  13:28:46  Q.  And when did you leave your home?
4  13:28:47  A.  We left home about -- between 11:00 and 12:00, I would say
5  13:28:52  that time.
6  13:28:52  Q.  On what day?
7  13:28:54  A.  Sunday morning.
8  13:28:56  Q.  Sunday, between 11:00 and 12:00.  And who did you leave
9  13:28:59  your home with?
10  13:29:00  A.  Well, we left Chris there.  He came home for a while.
11  13:29:05  Q.  I'm sorry, I --
12  13:29:05  A.  Chris, my grandson.
13  13:29:05  Q.  Your grandson.  So whose car did you leave in?
14  13:29:07  A.  My own.
15  13:29:07  Q.  And who drove your car?
16  13:29:09  A.  My daughter, Jennifer.
17  13:29:10  Q.  And you were in the car?
18  13:29:11  A.  Yes.
19  13:29:11  Q.  With -- your daughter, Jennifer, was driving.  Was anybody
20  13:29:15  else in the car?
21  13:29:16  A.  My granddaughter was in the backseat.
22  13:29:18  Q.  Okay.  And when you-all left, where were you headed to?
23  13:29:22  A.  I was headed to Pontchartrain Park.
24  13:29:24  Q.  Why were you going there?
25  13:29:26  A.  To my sister-in-law's house, because my other daughter was

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**370**

1  13:29:30  going to meet us there.
2  13:29:32  Q.  And then you were all going to head to Florida together?
3  13:29:36  A.  Yeah.
4  13:29:36  Q.  And I'm sorry, you said this was about what time that you
5  13:29:39  left your home?
6  13:29:40  A.  I would say between 11:00 and 12:00.
7  13:29:43  Q.  Between 11:00 and 12:00.  And what route did you take when
8  13:29:46  you left your house on Tennessee Street to go to the home of
9  13:29:48  your other family members?
10  13:29:50  A.  We went down Tennessee, made a right turn at Claiborne, to
11  13:29:56  go over the Claiborne bridge.
12  13:29:58  Q.  All right.  And where in the automobile were you seated?
13  13:30:01  A.  Passenger side.
14  13:30:02  Q.  Front seat or back seat?
15  13:30:04  A.  Front.
16  13:30:05  Q.  Front seat.
17  13:30:11      And tell us what you remember about your ride over
18  13:30:13  the North Claiborne Avenue bridge over the Industrial Canal.
19  13:30:20  A.  Well, we was gong over the Industrial Canal, and I looked
20  13:30:21  to the right, and there was a barge in the canal.
21  13:30:24  Q.  All right.  Now before you go any further, you can see
22  13:30:27  here on the map, of course, that the Claiborne Avenue -- the
23  13:30:29  North Claiborne Avenue bridge is over the canal.  But the canal
24  13:30:33  extends quite a distance to the north; is that right?
25  13:30:37  A.  Uh-huh.

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**371**

1  13:30:37  Q.  You have to speak your answers.
2  13:30:39  A.  Yes.
3  13:30:40  Q.  And is there another bridge further up the canal from the
4  13:30:43  North Claiborne Avenue bridge?
5  13:30:45  A.  Yes, the Florida bridge.
6  13:30:45  Q.  The Florida bridge.  With respect to the North Claiborne
7  13:30:48  Avenue bridge and the Florida bridge, where was this barge that
8  13:30:51  you saw that you were talking about?
9  13:30:54  A.  I'd say it was more near the Claiborne Avenue bridge.
10  13:30:58  Q.  All right.
11  13:31:03  A.  About Derbigny Street.
12  13:31:03  Q.  North Derbigny Street here, down there where you told us
13  13:31:07  was --
14  13:31:08  A.  North Derbigny.
15  13:31:09  Q.  That's the same one that's the cross-street near your
16  13:31:12  house on Tennessee?
17  13:31:13  A.  Right.
18  13:31:13  Q.  So if we take North Derbigny Street and we draw a line
19  13:31:16  straight to the canal, the barge was in this vicinity; is that
20  13:31:19  correct?  In that area?
21  13:31:25      THE COURT:  You might want to look on the screen
22  13:31:26  right in front of you.
23  13:31:27      THE WITNESS:  All right.
24  13:31:27  BY MR. BEST:
25  13:31:28  Q.  You can't see my red dot on your screen.

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 372

```
 1   13:31:31   A.  No.
 2   13:31:32   Q.  But if you draw an imaginary line from Derbigny Street
 3   13:31:35   across the Industrial Canal.
 4   13:31:37   A.  All right.  Yeah, it was near Derbigny.
 5   13:31:40   Q.  Okay.
 6   13:31:41   A.  Uh-huh.
 7   13:31:46   Q.  Now can you tell us what you remember, if you do, about
 8   13:31:48   how the barge was positioned in the waterway at that location?
 9   13:31:54   A.  All right.  This is the levee, and the barge was like
10   13:31:58   this.
11   13:31:58   Q.  Parallel to the levee, running in the same direction as
12   13:32:01   the levee?
13   13:32:01   A.  Yeah.
14   13:32:03   Q.  North/south?  I'm sorry, in the same direction as the
15   13:32:06   levee?
16   13:32:06   A.  Yeah.
17   13:32:07   Q.  Okay.  And when you're talking about "the levee," you're
18   13:32:09   talking about the floodwall?
19   13:32:11   A.  The floodwall, yes.
20   13:32:14   Q.  All right.  Now, how long had you lived in the
21   13:32:17   neighborhood?
22   13:32:17   A.  About 45 years.
23   13:32:19   Q.  Had you been across that bridge before?
24   13:32:21   A.  Many times.
25   13:32:21   Q.  Have you seen barges before?
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 373

```
 1   13:32:23   A.  Yes, sir.
 2   13:32:25   Q.  Was there anything unusual or different about this barge
 3   13:32:29   in particular?
 4   13:32:32   A.  No.
 5   13:32:32   Q.  Okay.  Do you remember anything about the color or any --
 6   13:32:37   A.  Yeah.  It was a rust-orangey -- rust-colored barge.
 7   13:32:43   Q.  Was it --
 8   13:32:46   A.  Oval top.
 9   13:32:48   Q.  I'm sorry?  What kind --
10   13:32:49   A.  Oval top.
11   13:32:50   Q.  Oval top, meaning -- you're using your hand to indicate it
12   13:32:51   was a curved top?
13   13:32:53   A.  Yeah.
14   13:32:53   Q.  Okay.  So am I understanding you correctly that it was a
15   13:32:56   barge that had covers on top?
16   13:32:59   A.  Nah, it had to be -- it wasn't an open barge.
17   13:33:04   Q.  It was not an open barge?
18   13:33:06   A.  No.
19   13:33:06   Q.  And it had a curved top?
20   13:33:09   A.  Yeah.
21   13:33:09   Q.  Okay.  All right.  Now, when you saw the barge there,
22   13:33:12   was -- did you see any other vessels anywhere in the canal in
23   13:33:17   that vicinity?
24   13:33:18   A.  All right.  No, because -- what do you call this
25   13:33:22   peripheral vision, when you look at something --
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 374

```
 1   13:33:26   Q.  Your peripheral vision?
 2   13:33:29   A.  Yeah.  You can see something, you know, out of the side of
 3   13:33:30   your eyes.  No, nothing was in the water but that barge.
 4   13:33:34   Q.  Had you -- at other times in the past, when you had seen
 5   13:33:35   barges in the canal, had you seen barges being pushed or towed
 6   13:33:40   through the canal with towboats?
 7   13:33:43   A.  Yes.
 8   13:33:43   Q.  Was there any towboat at either end of this barge?
 9   13:33:49   A.  No, sir.
10   13:33:50   Q.  Could you tell whether the barge was moving or not?
11   13:33:54   A.  Looking down at it I'd say no, I couldn't tell if it was
12   13:33:59   moving.
13   13:33:59   Q.  So is it fair to say that it didn't appear to be moving?
14   13:34:03   A.  No, it didn't appear to be moving.
15   13:34:05   Q.  Okay.  Now, was it -- as it's sitting in the canal and
16   13:34:08   it's running in the same direction as the floodwall, is it
17   13:34:10   closer to one side of the canal than the other, it's the
18   13:34:13   middle?  Whereabouts is this barge that you saw situated?
19   13:34:17   A.  It was not close to the floodwall.  It was a little
20   13:34:21   distance, but it wasn't in the center of the canal.  There was
21   13:34:26   a little distance.
22   13:34:27   Q.  Okay.  So it was off center?
23   13:34:29   A.  Yes.
24   13:34:29   Q.  To which side?  To the --
25   13:34:31   A.  The Ninth Ward side.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 375

```
 1   13:34:34   Q.  To the Lower Ninth Ward side?
 2   13:34:36   A.  Yes, sir.
 3   13:34:37   Q.  Did you take any particular notice of the water level in
 4   13:34:39   the canal that Sunday morning?
 5   13:34:41   A.  I'd say it was about halfway to the floodwall.
 6   13:34:45   Q.  Okay.  Was it -- how did it compare that Sunday morning
 7   13:34:49   with the way it usually was?  The water level, did you notice
 8   13:34:54   if it was higher or lower than usual?
 9   13:35:00   A.  It was higher than usual, yes.
10   13:35:01   Q.  All right.  And you said it was -- I'm sorry, with respect
11   13:35:04   to the floodwall, you said the water level was what?
12   13:35:08   A.  I'd say it was about halfway up the floodwall.
13   13:35:11   Q.  Halfway up the floodwall?
14   13:35:13   A.  Yeah.
15   13:35:13   Q.  Okay.  Just to be clear, when you say it was not in the
16   13:35:29   center, it was more one side or the other, it was towards the
17   13:35:34   Ninth Ward side, that means it's about where I'm pointing now
18   13:35:38   with the red pointer; is that fair?
19   13:35:45   A.  It -- it was -- let's see.  It wasn't close to the wall.
20   13:35:47   It was a distance from the wall.
21   13:35:49   Q.  Okay.  But we're talking about the wall on the north -- on
22   13:35:50   the Lower Ninth Ward side?
23   13:35:52   A.  Yeah.
24   13:35:53   Q.  On the Jourdan Avenue side?
25   13:35:55   A.  Yes.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**376**

1   13:35:55   Q.   Okay.  And that's the wall it was closer to?

2   13:35:58   A.   Yes.

3   13:36:07   Q.   Okay.  I just wanted to make sure I got that right.

4   13:36:07        And just to be clear, this barge that you saw was one

5   13:36:10   barge as opposed to multiple barges?

6   13:36:12   A.   One barge.

7   13:36:21        THE COURT:  It would be helpful for the record, and I

8   13:36:23   don't want to tax the witness -- and I won't do this often --

9   13:36:25   but, ma'am, if you touch that screen in front of you, it makes

10  13:36:30   a little mark.

11  13:36:31        Could you, as best you can -- and if it doesn't

12  13:36:34   work, I'll eliminate it -- could you touch the screen where you

13  13:36:37   think -- where you saw the barge as you were going over the

14  13:36:39   Claiborne Avenue bridge?  As best you can.

15  13:36:44        And if it's not right, we can try it again, and

16  13:36:47   I won't belabor it too much.  I just want to give the Court of

17  13:36:50   Appeals some record here.

18  13:36:51        THE WITNESS:  All right.  About right there.

19  13:36:53        THE COURT:  Okay.  It should be showing up on there.

20  13:36:57   BY MR. BEST:

21  13:36:57   Q.   You might have to press a little harder.

22  13:37:00   A.   It was right about here.

23  13:37:19        THE COURT:  Okay.  Is that about right, looking at

24  13:37:21   it?

25  13:37:21        THE WITNESS:  Yes, sir.

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**377**

1   13:37:22        THE COURT:  Okay.  Now -- and about how far was it

2   13:37:26   into the -- from the floodwall?  Can you judge feet very --

3   13:37:33   well, you might show that.  Just a little.

4   13:37:37        THE WITNESS:  That's -- all right.  The floodwall

5   13:37:39   would be where that mark I just made is.

6   13:37:42        THE COURT:  Yes.

7   13:37:42        THE WITNESS:  All right.  I'd say it was about -- I'd

8   13:37:50   say, distance, it was about -- because I could see the water

9   13:37:52   before the floodwall.  So I'd say it was a little distance

10  13:37:56   away.  Not even a car distance away.  Not even that.

11  13:38:00        THE COURT:  So it was fairly close to the floodwall?

12  13:38:02        THE WITNESS:  It was near it, yeah.

13  13:38:04   BY MR. BEST:

14  13:38:04   Q.   And you could see water of the canal between the side of

15  13:38:06   the barge?

16  13:38:08   A.   And the floodwall, yeah.

17  13:38:09        THE COURT:  Okay.  I'm going to ask -- at least that

18  13:38:11   gives me -- the Court of Appeals a location of where the barge

19  13:38:16   was in the canal.  You just have to move it over.

20  13:38:21        MR. BEST:  Even though the mark that's -- are you

21  13:38:24   preserving this?

22  13:38:25        THE COURT:  Yes.

23  13:38:26        MR. BEST:  For the record, it appears, at least, that

24  13:38:28   it's outside of the water on the drawing.

25  13:38:30        THE COURT:  Yes, it is.  That's not where --

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**378**

1   13:38:33   obviously, you saw it in the water --

2   13:38:35        THE WITNESS:  Yes.

3   13:38:35        THE COURT:  -- and it was close to the wall?

4   13:38:37        I think that's about as best as we can do, and

5   13:38:39   I'm going to capture this, so I'll have something.

6   13:38:43   BY MR. BEST:

7   13:38:43   Q.   Just one more question, ma'am:  Did you ever see that

8   13:38:46   barge again?

9   13:38:46   A.   No.  That particular barge -- well, there's plenty of

10  13:38:50   barges that look like that.

11  13:38:52   Q.   Did you see one that looked like that?

12  13:38:54   A.   I've seen others on the Industrial Canal.

13  13:38:56   Q.   I'm talking about after you left and after the evacuation,

14  13:39:00   did you see that barge again?

15  13:39:01   A.   Yes, I did.

16  13:39:02   Q.   Where?

17  13:39:02   A.   Not too far from my backyard, when we went and saw the

18  13:39:06   destruction.

19  13:39:07   Q.   Sitting in the neighborhood?

20  13:39:08   A.   In the neighborhood.

21  13:39:10        MR. BEST:  Thank you, ma'am.

22  13:39:13        THE COURT:  Cross-examination?

23  13:39:36        Go ahead, sir.

24  13:39:38        MR. WALKER:  Thank you, Your Honor.

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**379**

1   13:39:15        CROSS-EXAMINATION

2   13:39:40   BY MR. WALKER:

3   13:39:40   Q.   Hello, Ms. LeBlanc.  How are you?

4   13:39:43   A.   How are you?

5   13:39:44   Q.   Can we see each other?

6   13:39:46   A.   Yeah.

7   13:39:46   Q.   So at the time of Katrina, you were about 69 years old; is

8   13:39:49   that right?

9   13:39:50   A.   At the time of Katrina, I was 69.  No -- well, I guess

10  13:39:54   about that.

11  13:39:55   Q.   About that?

12  13:39:56   A.   Yeah.

13  13:39:56   Q.   Okay.  And how long have you suffered glaucoma in the

14  13:40:02   eyes?

15  13:40:04   A.   Oh, it's been a while.

16  13:40:08   Q.   Did you have that at the time of Katrina?

17  13:40:10   A.   Yes.  Uh-huh.

18  13:40:14   Q.   All right.  And the night before, Saturday night, you

19  13:40:17   stayed up most of the night concerned about the hurricane

20  13:40:19   watching TV; is that right?

21  13:40:21   A.   That's right, yeah.

22  13:40:26   Q.   And you packed your car Sunday morning with Jennifer, your

23  13:40:29   daughter, and Leaura, your granddaughter; is that right?

24  13:40:33   A.   Yeah.

25  13:40:33   Q.   And the three of you then crossed the Claiborne Avenue

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**380**

| | |
|---|---|
| 1 | 13:40:38  bridge; is that right? |
| 2 | 13:40:38  A.  Yes, sir. |
| 3 | 13:40:39  Q.  And that was about 11:00 a.m.? |
| 4 | 13:40:41  A.  Between 11:00 and 12:00. |
| 5 | 13:40:43  Q.  And the weather that day, do you remember? |
| 6 | 13:40:45  A.  Pleasant. |
| 7 | 13:40:46  Q.  Pleasant, wasn't it? |
| 8 | 13:40:47  A.  A nice summer day. |
| 9 | 13:40:48  Q.  Not windy? |
| 10 | 13:40:49  A.  Not windy. |
| 11 | 13:40:56  Q.  And the bridge was pretty empty when you crossed it; |
| 12 | 13:40:58  right? |
| 13 | 13:40:59  A.  It -- we had a clear crossing. |
| 14 | 13:41:01  Q.  You just went right on by; right? |
| 15 | 13:41:04  A.  Yes, uh-huh. |
| 16 | 13:41:04  Q.  And just off to your right, as you went by, you saw this |
| 17 | 13:41:08  barge? |
| 18 | 13:41:08  A.  Sitting there. |
| 19 | 13:41:08  Q.  Right.  You didn't stop, did you? |
| 20 | 13:41:11  A.  No. |
| 21 | 13:41:11  Q.  You went right on by? |
| 22 | 13:41:12  A.  That's right. |
| 23 | 13:41:13  Q.  Did Jennifer see it? |
| 24 | 13:41:15  A.  Jennifer saw it too. |
| 25 | 13:41:17  Q.  Did you come back to take a look or did you drive on off |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**382**

| | |
|---|---|
| 1 | 13:42:23  Q.  Okay.  But isn't that right?  To the best of your |
| 2 | 13:42:25  calculation, what you remember seeing was that barge within one |
| 3 | 13:42:28  car length of the wall? |
| 4 | 13:42:31  A.  I wouldn't say that, because you could see the water, then |
| 5 | 13:42:35  you seen the wall, and the barge was there.  I wouldn't say a |
| 6 | 13:42:40  whole car length. |
| 7 | 13:42:41  Q.  So less than a car length? |
| 8 | 13:42:43  A.  Yeah. |
| 9 | 13:42:44  Q.  It was closer than that? |
| 10 | 13:42:45  A.  Yeah. |
| 11 | 13:42:45  Q.  Okay.  So nearly touching the wall.  You could still see |
| 12 | 13:42:50  the water, but it was right up to the wall? |
| 13 | 13:42:52  A.  No, it was not. |
| 14 | 13:42:53  Q.  It was one car length or less from the wall? |
| 15 | 13:42:55  A.  A car length -- less than a car length. |
| 16 | 13:42:58  Q.  Okay. |
| 17 | 13:42:59  A.  All right. |
| 18 | 13:42:59  Q.  I just wanted to make sure. |
| 19 | 13:43:03       And do you know what those mooring pilings are, |
| 20 | 13:43:09  mooring buoys are, in the middle of the river? |
| 21 | 13:43:11  A.  Yes.  I've seen barges attached there. |
| 22 | 13:43:13  Q.  And barges go there all the time, don't they? |
| 23 | 13:43:15  A.  Yes, sir. |
| 24 | 13:43:15  Q.  It's pretty common.  You've seen it, having been a Ninth |
| 25 | 13:43:18  Ward resident, quite a bit.  That's where the tugs come and tie |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**381**

| | |
|---|---|
| 1 | 13:41:20  to Pensacola? |
| 2 | 13:41:22  A.  Kept going to Pensacola, yeah.  We got out of the city. |
| 3 | 13:41:25  Q.  So it's fair to say, isn't it, with the bridge empty and |
| 4 | 13:41:29  you wanting to evacuate, what you did was cross the North |
| 5 | 13:41:32  Claiborne Avenue bridge, looked off to your right and saw this |
| 6 | 13:41:36  barge, and kept on going? |
| 7 | 13:41:37  A.  Yes, sir. |
| 8 | 13:41:38  Q.  So you saw it for a couple of seconds; right? |
| 9 | 13:41:41  A.  Yeah. |
| 10 | 13:41:42  Q.  All right. |
| 11 | 13:41:42  A.  You couldn't miss it. |
| 12 | 13:41:43  Q.  All right.  You didn't see any numbers, any markings, any |
| 13 | 13:41:54  identification on this barge, did you? |
| 14 | 13:41:56  A.  I'm looking down at it.  No, sir. |
| 15 | 13:41:58  Q.  Did you see any piping? |
| 16 | 13:41:59  A.  No. |
| 17 | 13:41:59  Q.  Any red flags on it? |
| 18 | 13:42:01  A.  No, sir. |
| 19 | 13:42:03  Q.  Now, the barge was not in the middle of the canal, was it? |
| 20 | 13:42:06  A.  No, sir. |
| 21 | 13:42:07  Q.  In fact, it was located right next to the wall when you |
| 22 | 13:42:10  saw it about a car length away that you measured -- |
| 23 | 13:42:15  A.  Yeah. |
| 24 | 13:42:15  Q.  -- by your Grand Am; right? |
| 25 | 13:42:18  A.  Not as far as -- I have a small Grand Am.  Not that far. |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**383**

| | |
|---|---|
| 1 | 13:43:23  up to wait for the locks? |
| 2 | 13:43:24  A.  Uh-huh. |
| 3 | 13:43:24  Q.  Okay. |
| 4 | 13:43:25       THE COURT:  You have to say yes or no, ma'am. |
| 5 | 13:43:29       Was that a yes to Mr. Walker's question? |
| 6 | 13:43:33       THE WITNESS:  Yes. |
| 7 | 13:43:33       THE COURT:  Okay.  Thank you. |
| 8 | 13:43:33       MR. WALKER:  Thank you, Your Honor. |
| 9 | 13:43:34  BY MR. WALKER: |
| 10 | 13:43:34  Q.  And the barge as you saw it angled, looked to you like it |
| 11 | 13:43:37  might be tied to one of those mooring buoys; right? |
| 12 | 13:43:43  A.  Well, I saw it sitting there.  And normally you would see |
| 13 | 13:43:46  the barges connect to these things, but I'm going across, I |
| 14 | 13:43:49  just saw the barge, that's it. |
| 15 | 13:43:50  Q.  Right.  You're going so fast, you didn't see the ropes |
| 16 | 13:43:53  that usually -- |
| 17 | 13:43:53  A.  I wasn't going fast. |
| 18 | 13:43:55  Q.  I didn't mean you were speeding.  Of course not.  You were |
| 19 | 13:44:00  just crossing and you didn't pay any attention to the ropes or |
| 20 | 13:44:02  anything like that? |
| 21 | 13:44:03  A.  No, sir.  Just had my eye on the barge. |
| 22 | 13:44:04  Q.  Right.  And you just saw it at that mooring buoy where you |
| 23 | 13:44:07  would normally see it? |
| 24 | 13:44:09  A.  Yes, sir. |
| 25 | 13:44:09  Q.  Okay. |

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

384

```
13:44:38        THE COURT:  Just one second.  I'm sorry to interrupt
13:44:38    you.
13:44:38            (OFF THE RECORD)
13:44:39        THE WITNESS:  Go ahead.
13:44:42        MR. WALKER:  Thank you, Judge.
13:44:44        THE COURT:  This is a systems issue --
13:44:47        MR. WALKER:  We've had some of those.
13:44:50        THE COURT:  -- that my Alabama friend and I've
13:44:53    discussed.
13:44:56        MR. WALKER:  I'm happy to take a break, Your Honor.
13:44:59        THE COURT:  No, no.  That's okay.
13:45:02    BY MR. WALKER:
13:45:03    Q.  And Ms. LeBlanc, when you were telling the judge how close
13:45:06    the barge was, this car length, the water that you described
13:45:11    earlier, it was sort of halfway up the wall; is what you said?
13:45:14    A.  I'd say about halfway up that wall.
13:45:18    Q.  Okay.  Now, you don't know what happened to that barge
13:45:29    after you drove off to Pensacola, do you?  You never saw it
13:45:33    that day?
13:45:34    A.  Not that day.
13:45:34    Q.  Okay.  You don't know if the tug that left it there came
13:45:38    and picked it up that afternoon, do you?
13:45:40    A.  No.  I was gone.
13:45:57        MR. WALKER:  Your Honor, I think that's all I have
13:45:59    for Ms. LeBlanc.  Thank you very much.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

385

```
13:46:02        THE COURT:  All right.  Thank you, sir.
13:46:03            Any redirect?
13:46:04        MR. BEST:  Just very briefly.
13:46:05            REDIRECT EXAMINATION
13:46:05    BY MR. BEST:
13:46:06    Q.  Counsel asked you about your eyes.  Just for completeness,
13:46:09    that Sunday when you were going over the bridge with your
13:46:12    family, what was the weather like that Sunday morning as you
13:46:15    crossed the bridge?
13:46:16    A.  It was pleasant.
13:46:17    Q.  And what about sunshine, clouds, rain?
13:46:20    A.  No, there was no clouds, no rain.  It was a summer's day.
13:46:24    Q.  Sunny day?  Was it a sunny day as well?
13:46:27    A.  Yes, sunny day, uh-huh.
13:46:28    Q.  Did you have any trouble seeing this barge?
13:46:30    A.  No, sir.
13:46:32    Q.  Did -- did you see the entirety of this barge, that is
13:46:35    from one end to the other and side to side?
13:46:38    A.  I saw the whole barge sitting there.
13:46:40    Q.  And when you saw the whole barge sitting there, did you
13:46:44    see any other vessels moving around in the waterway at all?
13:46:48    A.  No, sir.
13:46:51    Q.  And I take it you don't know what time the waterway was
13:46:54    closed or the locks were closed to traffic?
13:46:56    A.  The locks?
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

386

```
13:46:57    Q.  Yeah.
13:46:57        You don't know what time they closed the locks?
13:47:00    A.  No, sir, I don't.
13:47:01        MR. BEST:  Thank you, ma'am.
13:47:02        THE COURT:  Thank you, ma'am.  You may step down.
13:47:04    You're released and thank you very much.
13:47:06        THE WITNESS:  You're welcome, sir.
13:47:11            (OFF THE RECORD)
13:48:28        MR. BEST:  Your Honor, our next witness is
13:48:30    approaching, Frazier Tompkins, III.
13:48:38        THE COURT:  Yes.
13:48:38        (WHEREUPON, Frazier Tompkins, III, having been duly
13:48:38    sworn, testified as follows.)
13:49:44        THE DEPUTY CLERK:  Please state your full name and
13:49:44    correct spelling for the record.
13:50:00        THE WITNESS:  Frazier Tompkins.
13:50:04        THE DEPUTY CLERK:  I need you to speak into the
13:50:06    microphone.  Could you move it a little bit?
13:50:08        THE WITNESS:  Frazier Tompkins.
13:50:10        THE COURT:  Perfect.  Do you want to spell it, sir,
13:50:12    just to make sure that we get your name right for posterity.
13:50:15        THE WITNESS:  Frazier, F-R-A-Z-I-E-R, Tompkins,
13:50:19    T-O-M-P-K-I-N-S.
13:50:21        THE COURT:  Thank you.
13:50:25        Mr. Walker, is the microphone there because he's
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

387

```
13:50:28    speaking --
13:50:28        THE DEPUTY CLERK:  It sounds like it's --
13:50:29        MR. WALKER:  I think he just has a very deep and
13:50:31    quiet voice, Your Honor.
13:50:33        THE COURT:  I don't know.  Check that mic there,
13:50:36    Sheena.
13:50:48        MR. WALKER:  It doesn't sound like the system is on,
13:50:52    Your Honor.
13:50:53        THE COURT:  Oh, that's because the judge turned it
13:50:55    off.  The judge is, unfortunately, all too fallible himself.
13:50:58    Go ahead.
13:50:59            DIRECT EXAMINATION
13:50:59    BY MR. BEST:
13:51:00    Q.  Mr. Tompkins, as I understand it, it is Frazier Tompkins,
13:51:05    III?
13:51:05    A.  Correct.
13:51:05    Q.  And your address, sir?
13:51:06    A.  1310 Tricou, T-R-I-C-O-U, Street.
13:51:10    Q.  Where is that located?
13:51:11    A.  The Lower Ninth Ward.
13:51:12    Q.  How long have you lived there?
13:51:13    A.  Thirty-one years.
13:51:15    Q.  And did you -- obviously you lived there before Hurricane
13:51:18    Katrina?
13:51:19    A.  Correct.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA