UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES      CIVIL ACTION NO. 05-4182
CONSOLIDATED LITIGATION

     SECTION "K"

PERTAINS TO BARGE

OPPOSITION TO LAFARGE NORTH AMERICA'S
MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

Defendant Lafarge North America, Inc.'s ("LNA") Motion for Summary Judgment improperly attempts to apply the Court's Findings of Fact and Conclusions of Law ("FFCL") [Dkt. No. 20149] in the trials of four plaintiffs to each of the remaining Plaintiffs in this action. LNA's Motion, however, ignores the applicable standards for summary judgment, the applicable standards for the introduction of evidence in a motion for summary judgment, and the doctrines governing the applicability of collateral estoppel and *res judicata*. More importantly, however, LNA's Motion ignores the fact that the FFCL itself demonstrates that a reasonable jury could reject the Court's findings favorable to LNA and find in favor of Plaintiffs as the majority of the findings presented in the FFCL require the weighing of evidence, evaluation of experts and determination of the credibility of witnesses.

LNA's Motion centers around the issue of causation of the two floodwall breaches during Hurricane Katrina.  It is well-settled, however, that the issue of causation is a question of fact to be determined at trial.  In addition, summary judgment on the issue of causation is necessarily precluded as a matter of law where, as here, the moving party seeks to disprove causation by

1

challenging the credibility of direct eyewitness testimony.  The only possible way to grant LNA's Motion requires that the Court apply credibility determinations and previous findings weighing the evidence to determine the truth of the matter.   However, the Court is precluded from evaluating the credibility of witnesses, weighing the evidence, or resolving factual disputes in a ruling on a motion for summary judgment.  Nor is the Court permitted to determine whether an expert's conclusions are correct.  As such, LNA's Motion applies the wrong standard for ruling on a motion for summary judgment.

Second, LNA's Motion relies exclusively on evidence presented in the trial of a prior action.  However, as evidenced by applicable authority, LNA has not met established that the testimony and evidence is admissible for purposes of the remaining Plaintiffs' litigation.  LNA fails to demonstrate that the testimony taken at an earlier judicial proceeding should be admissible in this proceeding.  Furthermore, LNA effectively requests that the Court take judicial notice of the FFCL.  Judicial notice of an "adjudicative fact" is only permitted, however, when the accuracy of that fact cannot be questioned.  Here, the accuracy of the facts presented in LNA's Motion give rise to numerous questions which involve weighing the credibility of each side's experts and weighing the evidence presented.  As such, the evidence relied upon in LNA's Motion is inadmissible in this action and LNA's Motion should be denied.

Finally, the doctrines of due process, collateral estoppel and res judicata preclude the application of the FFCL to the Plaintiffs in this matter.  Due process requires that every litigant have his or her day in court, and be permitted to present their evidence in order to support their claims.  Here, Plaintiffs have not conducted any discovery and have not been permitted to present their best evidence to support their claims.  For each of these reasons, LNA's Motion should be denied.

**ARGUMENT**

**I.    SUMMARY JUDGMENT STANDARD**

      **a.  General Standard**

      Summary judgment is not only an instrument of "just, speedy and inexpensive" resolution, but also a "lethal weapon" capable of "overkill."  *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1123 (5th Cir. 1978) (*quoting Albatross Shipping Corp. v. Stewart,* 326 F.2d 208, 211 (5th Cir. 1964).  Summary judgment should only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Fed.R.Civ.P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

      Summary judgment is appropriate against a party who, "*after adequate time for discovery[,]* . . . fails to make a showing sufficient to establish the existence  of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added). Conversely, "[i]f the evidence would permit a reasonable trier of fact to find for the non-moving party, then summary judgment should not be granted." *Anaya v. Traylor Bros., Inc.,* 478 F.3d 251, 253 (5th Cir. 2007). Moreover, courts may deny a motion for summary judgment where a party has not had an opportunity to conduct the discovery necessary to oppose the motion. *See Haydell Indus., LLC v. Petrucci,* 702 F. Supp. 2d 688, 698 (2010).

      "The issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *See Pyland v. Hartford Life & Accident Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007) (*citing First Nat'l. Bank v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

Importantly, the "court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial." *See Pylant v. Hartford Life & Accident Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "In reviewing the evidence, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes[.]" *See International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264 (5th Cir. 1991). Moreover, the court may not determine the correctness of an expert's conclusions or soundness of facts on which the conclusion is based. *Determination Corp. v. Eltec Instruments, Inc.,* 2005 U.S. Dist. LEXIS 46128 (M.D. La. Aug. 4, 2005) (citing *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir. 2000) ("It is not the responsibility of the trial court to determine whether the expert's opinion is correct. The factual underpinning of the analysis and the correctness of the conclusions are matters to be determined by the trier of fact."); s*ee also Glover v. Hester,* 2011 U.S. Dist. LEXIS 39093 (W.D. La. Apr. 11, 2011) ("The weight to be given to [the expert's] testimony is the sole province of the jury.")

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *See Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547, 548 (5th Cir. 1987). "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Id.*

### b.  Causation Is a Question for the Trier of Fact

It is well-settled that causation is a question for the trier of fact. *See Wilson v. State, Department of Public Safety and Corrections,* 576 So. 2d 490 (1991); see also *Poland v. Glenn*, 623 So. 2d 227, 232 (1993).[1] As such, summary judgment as to causation is inappropriate as it constitutes the court improperly taking on the role of the fact finder.

Moreover, summary judgment on the issue of causation is necessarily precluded as a matter of law where, as explicitly discussed in the FFCL, the moving party seeks to disprove causation by challenging the credibility of direct eyewitness testimony.  *See e.g. Perez-Trujillo v. Volvo Car Corp.,* 137 F.3d 50, 53-54, 56 (1st Cir. 1998) (concluding that "eyewitness testimony from Pagan [that the airbag deployed prior to the accident] could not be dismissed as incredible without resorting to impermissible factfinding").   Indeed, applicable Supreme Court authority precludes a trial court from making determinations regarding the credibility of direct eyewitness testimony, even on purported "implausibility" grounds, in the confines of a motion for summary judgment.  *See Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir. 1994) ("the Supreme Court in *Matsushita,* 475 U.S. at 587, authorized an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence, … not an inquiry into the credibility of direct evidence.").

Moreover, the issue of LNA's burden on causation implicates the Pennsylvania Rule.  In maritime collision cases, the "[Pennsylvania] rule allocates the burden of proof [on causation], transferring it to the party in violation of a statute of regulation." *See Pennzoil Producing Co. v. Offshore Express, Inc.,* 943 F.2d 1465m 1472 (5th Cir. 1991).   When invoked, "[t]he

---

[1] In addition, questions of negligence and causation in admiralty cases are treated as fact questions. *Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1353 (5th Cir. 1988).

Pennsylvania rule applies a higher standard of proof" [*In re Quality Marine Servs.,* 2005 U.S. Dist. LEXIS 9201, 7 (E.D. La. 2005)], which "imposes a heavy burden" on the defendant. *See Pennzoil, supra,* 943 F.2d at 1472; *Candies Towing Co. v. M/V B&C Eserman,* 673 F.2d 91, 94 (5th Cir. 1982) ("where are vessel is guilty of a statutory violation, the defaulting ship must show 'not merely that her fault might not have been one of the causes, or that it probably was not, but that **it could not have been.'"**) (emphasis added).   Significantly, as the issue of whether LSA engaged in a statutory violation and/or whether an allision occurred is a question reserved for the trier of fact, the presence of this issue alone requires the denial of LNA's instant Motion. *See e.g. Dover Barge Co. v. Tug "Crow",* 2009 U.S. Dist. LEXIS 67970, at 17 (S.D.N.Y. July 30, 2009) (concluding that "the motion for summary judgment is denied … because whether the Pennsylvania Rule applies turns on the jury's findings [on whether the defendant committed a statutory violation].").[2]

### c. Summary Judgment May NOT Be Based on the Trial Record of a Separate Action

LNA argues that a motion for summary judgment may be based upon the trial record in a prior action. However, the cases relied upon by LNA are distinguishable in that they represent situations where the court relied upon the testimony from a prior trial where a new trial has been granted in the *same* action [3], testimony from an administrative or judicial proceeding that occurred in the *same* action[4], testimony from a medical provider (other than the defendant) of the

---

[2] As demonstrated throughout this Opposition, LNA's argument that the Pennsylvania Rule does not apply because no allision occurred improperly relies on a finding of fact from a prior proceeding, and requires that the Court, in ruling on this Motion, make a credibility determination on evidence that has not even been presented by the remaining Plaintiffs.

[3] *See Kelley v. Price-Macemon, Inc*., 992 F.2d 1408 (5th Cir. 1993); *see Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22 (1989)

[4] *See Langston v. Johnson*, 478 F.2d 915 (1973)

injured party in a medical malpractice action, where *both* parties sought to rely on the testimony[5], trial testimony from the trial in a state court action in a subsequent federal action to determine the narrow issue of scope of liability, or testimony from the criminal trial of a defendant in a civil case, which *both* sides sought to rely upon.[6] Each of these situations is distinct from the situation at bar, where LNA seeks to rely upon testimony from a separate and distinct action involving different Plaintiffs and where Plaintiffs do not simultaneously seek to rely on such evidence in opposing LNA's motion.

Furthermore, it is clear that pursuant to the specific facts here, consideration of expert testimony from the prior trial is wholly inappropriate. In order for testimony taken at an earlier judicial proceeding to be admissible at a subsequent proceeding, there must be a showing that: (1) there exists an identity of parties between the two proceedings; (2) there exists an identity of issues between the two proceedings; and (3) the witness whose testimony is sought to be introduced is unavailable for production at the later trial. *See Stutts v. Humphries*, 408 So. 2d 940, 945 (1981); *see* also *Bulk Transport, Inc. v. Louisiana Public Service Com.*, 252 La. 9 (1968)[7]. Here, the expert testimony relied upon by LNA to support its motion are from experts in a separate trial, involving separate plaintiffs, who have not yet been designated in the instant case. Clearly, such testimony does not meet the aforementioned criteria, as the parties are not identical and the experts are not unavailable for production at the later trial. As such, the evidence relied upon by LNA would *not* be admissible at trial in this action, and a party may not

---

[5] *See Deen v. Egleston*, 601 F.Supp.2d 1331 (2009), reversed on other grounds

[6] *Kraft Gen. Foods v. Cattell*, 18 F. Supp. 2d 280 (1998)

[7] *See also Ramirez v. Berkel, Inc.,* 2005 U.S. Dist. LEXIS 14324, 3-4 (S.D.N.Y. July 14, 2005) ("a court cannot simply rely upon a Daubert ruling from a prior case in determining whether opinion evidence should be presented to a jury in the case before it. This is so even where the issues and expert witnesses are the same in both cases.").

rely on evidence that would be inadmissible at trial to support a summary judgment motion. *See Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990) ("[m]aterial that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless."); *see* also *Miller v. Gaston*, 358 Fed. Appx. 573, 574-575 (5th Cir. 2009).

> **d.  Under *Fed. R. Evid*. 804(1)(b), Prior Testimony Relied Upon by LNA Is Inadmissible Hearsay Because the Plaintiffs from the Prior Trial Were Not Predecessors in Interest to Plaintiffs in the Instant Action**

LNA's motion for summary judgment improperly seeks to exclusively rely on prior testimony from the June 2010 trial. Such testimony is only admissible "if the party against whom the testimony is now offered, or, in a civil action or proceeding, *a predecessor in interest*, had an opportunity and similar motive to develop the testimony." Fed. R. Evid. 804(b)(1) (emphasis added); *see also Federal Rules of Evidence Manual,* § 804.04 (Matthew Bender 9th Ed.) (2011) (noting that the House Committee on the judiciary found that it would be "generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party."). However, the plaintiffs of the June 2010 trial were not predecessors in interest to the Plaintiffs in the instant action. *See Id.* (discussing the meaning of language of *Fed R. Evid.* 804(b)(1) and noting that, in a hypothetical involving a plane crash and a series of plaintiffs, testimony favorable to the airline would not be admissible against subsequent plaintiffs.). Moreover, the mere fact that plaintiffs are represented by the same group of lawyers does not make the earlier plaintiffs predecessors in interest. *See Pollard v. Cockrell,* 578 F.2d 1002, 1009 (5th Cir. 1978) ("Representation by the same attorneys cannot furnish the requisite alignment of interests in light of the well established ethical rule that, in areas affecting the merits of the cause or substantially affecting the rights of

the client, the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer") (internal quotation marks omitted).

In sum, LNA's position that the court may rely on the trial record in a prior action in reviewing LNA's motion is wholly without merit. In fact, to do so would conflict with clearly established law of this circuit.

## II.   NEW EVIDENCE

The Plaintiffs subject of Lafarge's Motion object strenuously to any proposition that their causes of action may be subject to scrutiny upon Motion for Summary Judgment based upon a proceeding in which they were not participants, and without the benefits of discovery and other procedural rights and protections normally available.   The Plaintiffs subject to this Motion further object to the extent that the Court denied class certification, yet Lafarge is proceeding now as if any matter addressed at trial of four Plaintiffs' claims might be legally effective as to any other Plaintiffs who, as stated above, were not party to that trial.   Subject to and without waiver of these or any other objections, and without agreement that they may be lawfully subject of a Motion for Summary Judgment such as that *sub judice,* the Plaintiffs, absent other safeguards to which they are entitled before Lafarge's Motion can be submitted, adopt, reiterate and incorporate by reference the Plaintiffs' Proposed Findings of Fact and Conclusions of Law, and Plaintiffs' original PostTrial Brief and Post Trial Reply from the bellwether trial upon which Lafarge bases its Motion.

Additionally, the Plaintiffs present the following.

*a.*     ***ING 4727 Adrift on Sunday, August 28, 2005.***

Please see ***In Globo Exhibit A***, consisting of the Affidavit and *Curriculum Vitae* of Biswadev (Dev) Roy, Ph.D., an accomplished and well-qualified physicist, describing the nature

of and general methodology underlying the also included satellite-generated microwave image of ING 4727 positioned just north of the Claiborne Avenue Bridge, a bit closer to the west side of the IHNC than the east, on Sunday, August 28, 2005 at 6:52 p.m., a time when, according to Lafarge and its experts, the barge was snugly secure in its berth.  This evidence is additional corroboration of eyewitnesses who saw the barge loose in the IHNC on Sunday afternoon (Gertrude LeBlanc and Frazier Tompkins), those who saw it loose just before seeing it break the eastern IHNC floodwall (William Villavasso and Terry Adams, for example), and those who heard it scraping and grinding along the eastern IHNC floodwall for a time before the massive, violent release of floodwaters in areas previously dry or only barely flooded.  This evidence also corroborates the Plaintiffs prior experts, and guts the very foundation of Lafarge's theories as to when and why the barge broke loose, where and how it traveled, and what its effects could and could not be.   This is a genuine and highly material issue of fact for trial which, it is presumed, Lafarge will dispute.

b.      *Erratic Hurricane Winds at Ground Level.*

Also within Dr. Roy's Affidavit is data and other proof describing the occurrence, location and effects of various nearby mesocyclones - tornadic weather phenomena which produce winds significantly stronger than and aligned otherwise from the synoptic winds Lafarge and its experts testified were the only wind forces present when ING 4727 was not at its berth. Lafarge argues that no wind could have motivated the barge in the direction of the floodwall breaches.  Considering that Lafarge's experts' calculations rely entirely upon the barge having begun its sojourn from its berth - where it was not - and rely entirely upon the barge having been influenced only by synoptic winds, which were in fact accompanied by mesocyclonic downdrafts, microbursts and shear which Lafarge's experts denied at trial, and which the

Plaintiffs' expert David Mitchell did describe at length, this too presents a disputed and genuine issue of exceedingly material fact for the jury to consider.

## III.   LNA'S MOTION IS PREMATURE

Although Rule 56 permits the parties to move for summary judgment before discovery is completed, summary judgment motions usually are not appropriate at the very outset of litigation.  In fact, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000);  *see also Deere & Co. v. Ohio Gear,* 462 F.3d 701, 706-708 (7th Cir. 2006) (in light of pending discovery motions, district court abused its discretion by granting summary judgment).  If the motion seems premature, Fed.R.Civ.P. 56(d) allows the court to deny the motion, or defer ruling on it.  *Fed. R. Civ. P. 56(d).*  In fact, requests for additional time for discovery "are broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motios that they cannot oppose." *Raby v. Livingston,* 600 F.3d 552, 561-562 (5th Cir. 2010).

Here, Plaintiffs have submitted a declaration outlining the specific reasons why, at the present time, LNA's motion is premature.  Please see ***Exhibit B***.  Specifically, evidence related to satellite images showing the barge adrift in the Industrial Canal at pertinent times would negate the underpinnings of LNA's experts' testimony related to the barge's movements, trajectory, and times and conditions salient to the pertinent claims and defenses  ¶ 7, 9. Similarly, Plaintiffs have uncovered evidence related to mesocyclones affecting the barge's movement which would also affect the findings of fact made by the trial court in the prior litigation.  *Id.*  Plaintiffs have been diligent in pursuing their claims pursuant to the Court's

scheduling orders in this case.  In fact, Plaintiffs were nonparticipants in the earlier proceedings and discovery accompanying those proceedings.  *Id.* at ¶4.  As Plaintiffs have not been afforded the opportunity to conduct discovery to prove their claims in this litigation, and have provided a declaration testifying to the specific evidence required to defeat LNA's Motion, Plaintiffs have met the requirements of Rule 56(d).  As such, LNA's Motion should be denied.

## IV.   LNA'S MOTION REQUIRES THAT THE COURT MAKE AN IMPROPER CREDIBILITY DETERMINATION ON MOTION FOR SUMMARY JUDGMENT

LNA's motion requests that the court consider and apply the evidence from the trial of four separate plaintiffs to the remaining Plaintiffs' claims.  However, the "court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial."  *See Pylant v. Hartford Life & Accident Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).   "In reviewing the evidence, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes[.]"  *See International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264 (5th Cir. 1991).  Moreover, the court may not determine the correctness of an expert's conclusions or soundness of facts on which the conclusion is based.  *Determination Corp. v. Eltec Instruments, Inc.,* 2005 U.S. Dist. LEXIS 46128 (M.D. La. Aug. 4, 2005) (citing *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir. 2000) ("It is not the responsibility of the trial court to determine whether the expert's opinion is correct.  The factual underpinning of the analysis and the correctness of the conclusions are matters to be determined by the trier of fact."); s*ee also Glover v. Hester,* 2011 U.S. Dist. LEXIS 39093 (W.D. La. Apr. 11, 2011) ("The weight to be given to [the expert's] testimony is the sole province of the jury.")  Despite these steadfast rules governing the court's ability to evaluate the

evidence presented in its motion, LNA improperly requests that the court make just such a determination.

In fact, the court's FFCL explicitly demonstrates that granting LNA's motion for summary judgment would run afoul of these well-established principles.  Indeed, the FFCL is replete with examples of the numerous credibility determinations made by the court:

- The court gave greater weight to Defendant's witness testimony than Plaintiff's on the presence and location of the barge at the time of the hurricane. ("Finally, the testimony of two persons who were in the vicinity from Sunday through the storm and whose primary focus was the IHNC and vicinity must be given greater weight than individuals who were transient through the area and only saw the area as they passed by in their respective cars".) FFCL at 14-15.

- The Court determined the testimony of Plaintiff's expert, Dr. David Mitchell, was "unconvincing." Id. at 18.

- The Court determined the Defendant's expert testimony was more convincing than Plaintiff's expert testimony as to causation. ("The Court found the testimony of Mr. Leslie Lemon, a meteorologist who works for the University of Oklahoma, more informative and more convincing." Id. at 19).

- The court determined the testimony of Plaintiff's witnesses was not credible as to causation.  ("However, as to the contention that Mr. Villavasso saw the tip of the Barge, there is less reason to credit this testimony. One of Mr. Villavasso's co-workers testified that Mr. Villavasso had never spoken to him about seeing a barge until about two years after the storm, raiding the question as to whether the testimony concerning "seeing a barge" is credible."  Id. at 22. "Taking all of these circumstances into consideration, Mr. Murph's demeanor and his lack of reasonable specificity in his testimony, this Court will not consider or credit his testimony with respect to causation." Id. at 32).

- The Court determined that the testimony of Plaintiff's expert, Hector Pazos, was "not persuasive."  Id. at 24.

These examples of the court's credibility determinations in the FFCL demonstrate that summary judgment is inappropriate at this stage of the proceedings.  Moreover, these factual determinations establish that a reasonable jury could reject each of the trial court's findings

favorable to LNA and find in favor of the Plaintiffs.  As such, summary judgment of these issues is improper.

## V.    IMPROPER CLASS TREATMENT

The crux of LNA's Motion attempts to apply class treatment to an action where the Court has already denied certification.  In fact, in denying certification, the Court explicitly held that that "[c]ausation, therefore, is plainly not a common issue here."  Order and Reasons [Dkt No. 18852] at 21.  It is contrary to applicable authority to allow LNA to avail itself of the class action mechanism when the Court has already denied its application to this matter.

Although Fed.R.Civ.P. 23(c)(4) does permit a court to certify "a class action with respect to particular issues", the Fifth Circuit has held that in order to do so, it must be shown that the predominance requirement of Rule 23(b)(3) has been met.  *See Castano v. American Tobacco Co.,* 84 F.3d 734, 745 n. 21 (5th Cir. 1996).  Where a court previously holds that predominance is defeated by individual-specific issues, a party may not avail itself of issue certification. *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 421-422 (5th Cir. 1998) (deeming issue certification improper where the court already held that individual issues predominated); *see also Kemp v. Metabolife Int'l., Inc.,* 2002 U.S. Dist. LEXIS 2435, 12-14 (E.D. La. Jan. 25, 2002) (issue certification improper where individual issues predominate).  Here, the Court has already determined that individual issues predominate in this matter and denied certification under Rule 23(b)(3).  DF #  (Order on cert, p. 26) ("individualized issues…predominate over those that are common to the class…class certification must be denied for failure to fulfill Rule 23(b)(3)'s predominance requirement.")  As such, issue certification is unwarranted and LNA's Motion must fail.

**VI.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE DOCTRINES OF *RES JUDICATA* OR COLLATERAL ESTOPPEL**

LNA's Motion attempts to apply the doctrines of *res judicata* and/or collateral estoppel to Plaintiffs' claims.  However, Plaintiffs' claims depend on scientific knowledge and hypotheses which, in and of itself, militates against applying collateral estoppel or *res judicata*.  *Coburn v. Smithkline Beecham Corp.,* 174 F.Supp.2d 1235, 1240 (N.D.Utah 2011) ("the issue of general causation will be decided upon the basis of scientific knowledge as it exists at the time of trial. When a scientific hypothesis is at issue in a trial, the evidence is likely to be different at a later trial.")

Moreover, the FFCL in the prior trial does not meet the requirements of collateral estoppel or *res judicata* permitting it to be applied in the instant action.  In order for *res judicata* to apply, *all* of the following four requirements must be met. First, the parties in the instant action must be the same as or in privity with the parties in the prior action in question. *See United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994) (emphasis added). Second, the court that rendered the prior judgment must have been a court of competent jurisdiction. *Id*. Third, the prior action must have terminated with a final judgment on the merits. *Id*. Fourth, the same claim or cause of action must be involved in both suits. *Id.*; *see* also *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994).  Here, Plaintiffs are not in privity with the previous plaintiffs and therefore, *res judicata* does not apply. *See Gulf-Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, *supra*, at 747 (finding "[b]ecause [plainitiff] does not meet the first requirement of *res judicata*, it is unnecessary to review the arguments presented by the parties as to the other requirements of *res judicata***."**)**.**

In order for collateral estoppel to bar a particular issue, the following four conditions must be met: (1) the issue under consideration is identical to that litigated in the prior action; (2)

the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) *there is no special circumstance that would make it unfair to apply the doctrine. See Black v. Arceneaux,* 1998 U.S. Dist. LEXIS 450, 10-11 (1998); *see* also *Enlund v. British Petroleum Oil Co*., 1993 U.S. Dist. LEXIS 5541 *4 (1993). The failure to meet any one of the four conditions precludes the application of collateral estoppel. *See id.*

### a. There Is a Lack of Privity Between Plaintiffs and the Plaintiffs in the Prior Trial

"Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy…". *See Bernhard v. Bank of America National Trust & Savings Ass'n,* 19 Cal.2d 807 (1942); *see* also *Benson v. Wanda Petroleum Co*., 468 S.W.2d 361, 362-364 (1971); *see* also *Parklane  Hosiery v. Shore.,* 439 U.S. 322, 327 (1979) ("[a]n underlying principle is that it is a violation of due process for a judgment [in a prior suit] to be binding on a litigant who was not a party or a privy and therefore  has never had an opportunity to be heard.").  A finding that a party stands in privity with a party or parties to a prior action, "requires more than a showing of parallel interests or, even, a use of the same attorney in both suits". *See id*; *see* also *Hardy v. Johns-Manville Sales Corp*., 681 F.2d 334, 340 (5th Cir. 1982) ("…privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts").

This Circuit has consistently held that finding privity between parties requires more than a shared interest in the issues or facts of the case.  For example, in *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978), the defendant sought to preclude the plaintiffs from litigating their claims, arguing that the plaintiffs in a prior case had identical interests and thus "virtually represented" the latter plaintiffs, collaterally estopping the latter plaintiffs from re-raising the issue of whether

16

a particular ordinance was constitutional. Despite the fact that both sets of plaintiffs were massage parlor owners and masseuses who were represented by the same attorneys, filed virtually identical complaints, and had identical interests in a determination of the constitutionality of an ordinance, the court rejected the defendant's "virtual representation" argument. In so holding, the court found that "[v]irtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Id*. at 1008-1009. The court noted that in reviewing cases where a "virtual representation" relationship was found, the types of relationships included "estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee". *Id*. Unlike these "virtual representation" scenarios, the plaintiffs in the prior case had no legal accountability to the plaintiffs in the subsequent case, and thus a "virtual representation" relationship was not established. As such, the plaintiffs in the two suits were not in privity and precluding Plaintiffs from litigating their claims would violate their right to due process. *See id*.

Similarly, in *Freeman v. Lester Coggins Trucking Co*., 771 F.2d 860 (5th Cir. 1985), the plaintiff appealed the dismissal of his wrongful death claim and those of four other wrongful death claimants for the death of his infant daughter. The dismissal was based upon collateral estoppel as the plaintiff had already brought suit against the defendants for his own personal injuries and the court dismissed the suit pursuant to a jury verdict exculpating the defendants of negligence. Relying on the court's holding in *Pollard*, the court found that the wrongful death claimants, other than Freeman himself whose personal injury claim was tried, were *not* estopped from litigating their claims because they had no control over the prior litigation, the claimants in

17

the prior litigation had no legal accountability to them and thus the parties were not in privity. *See id*. As such, "they [had] never had a chance to present their evidence and arguments on the claim" and precluding them from so doing would violate their due process rights *Id*. at 866. In so holding, the *Freeman* court emphasized the paramount importance of preserving due process rights noting that "[t]he price of due process… may include the possibility of conflicting adjudications in order to assure each litigant his or her day in court". *See id*.[8]

This Circuit's authority overwhelming establishes that Plaintiffs are *not* in privity with the plaintiffs involved in the previous trial. Plaintiffs did not participate in, or exercise any control over, the previous trial. Plaintiffs had no beneficial interest in the recovery of damages for injuries on behalf of the prior plaintiffs. Moreover, the prior plaintiffs had no accountability to Plaintiffs. Instead, Plaintiffs seek to litigate their separate and distinct claims arising from their individual rights and individual damages.

### b. Because Plaintiffs Do Not Stand In Privity With Plaintiffs of the Prior Action, The Doctrine of *Res Judicata* Does Not Bar Their Claims

As addressed above, the instant action manifestly fails the first, essential element necessary for a claim to be precluded under the doctrine of *res judicata,* as the instant Plaintiffs

---

[8] See also *Benson v. Wanda Petroleum Co*., 468 S.W.2d 361 (1971), reversing a trial court's order granting summary judgment based upon the fact findings and judgment of a previous party's suit arising out of the same collision:

> The suit at bar is a separate and distinct action for redress for personal injuries. Mrs. Benson was not a party to the former action instituted by the Porters … It was not shown that Mrs. Benson participated in, or exercised any control over, the trial in the Porter suit, or that she had any right to do so. She was not shown to have any beneficial interest in the recovery of damages for personal injuries on behalf of the Porters. In our view, the requirements of due process compel the conclusion that a privity relationship which will support application of the rules of res judicata does not exist under these circumstances. Accordingly, we hold that the fact findings and judgment in the Porter suit do not bar Mrs. Benson, and that she is entitled to her day in court in prosecuting this action in her own right. *Id*. at 364.

were not parties to the prior action, nor do they stand in privity with Plaintiffs in the prior action. As such, *res judicata* does not bar the instant Plaintiffs' claims. *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, *supra*, at 747 (finding "[b]ecause [plainitiff] does not meet the first requirement of **res judicata**, it is unnecessary to review the arguments presented by the parties as to the other requirements of **res judicata**.").

### c. Because Plaintiffs Are Not In Privity With the Prior Plaintiffs, Plaintiffs Are Not Collaterally Estopped From Litigating The Issue of Causation

Further, collateral estoppel binds only those who have already 'had their day in court' regarding the particular issue in question. Any other application of collateral estoppel would "…result in a denial of due process for those neither party nor privy to the prior action." *See Jones v. Southern Marine & Aviation Underwriters*, 888 F.2d 358, 363 (5th Cir. 1989); *see* also *American Casualty Co. v. United Southern Bank*, 950 F.2d 250, 254 (5th Cir. 1992).  Plaintiffs here were not parties to the prior action nor in privity with the prior plaintiffs and thus clearly have not "had their day in court" as to the issue of causation. A finding that a party has not had the opportunity to litigate their own claims and issues related to those claims is *prima facie* "unfair" and precludes the application of the doctrine of collateral estoppel. *See Black v. Arceneaux*, *supra*, at 11 (finding "[b]ecause these defendants were not parties to the earlier criminal action, they were not able to assert any rights or defenses. It would be manifestly unjust to bind them to an earlier judgment in which they played no part.).

In sum, the application of the collateral estoppel doctrine requires that four conditions be met, and the failure to meet any one of the four conditions precludes application of the doctrine. Here, the fourth condition, that application of the doctrine not create an unfair result, cannot be met. Plaintiffs, who were not parties, nor in privity with parties in the prior action, have not had

their day in court as to the issue of causation. As such, it is contrary to public policy to allow the

FFCL to bar the claims of all of the Plaintiffs.  *See Coburn, supra,* 174 F.Supp.2d at 1241.

## VII.   LNA'S MOTION IMPROPERLY ASKS THE COURT TO TAKE JUDICIAL NOTICE OF FINDINGS OF FACT

*Federal Rule of Evidence* 201 states that a court may only take judicial notice of an

"adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally

known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

determination by resort to sources *whose accuracy cannot be questioned*." *Fed.R.Evid.* 201(b)

(emphasis added).  In fact, "'were [it] permissible for a court to take judicial notice of a fact

merely because it had been found to be true in some other action, the doctrine of collateral

estoppel would be superfluous.'" *Taylor v. Charter Medical Corp.,* 162 F.3d 827, 830 (5th Cir.

1998) (*citing United States v. Jones,* 28 F.3d 1549, 1553 (11th Cir. 1994).  "Thus, Rule 210

authorizes the court to take notice only of 'adjudicative facts,' not legal determinations or

findings of fact[.]"  *Dietz v. Dietz,* 2009 U.S. Dist. LEXIS 103087, *9-10 (W.D. La. Nov. 3,

2009) (*citing Taylor, supra,* 162 F.3d at 831).

> The application of a previous finding to a latter proceeding must be beyond
> reasonable dispute before a court may take judicial notice because "the effect of
> taking judicial notice under Rule 201 is to preclude a party from introducing
> contrary evidence and, in effect, directing a verdict against him as to the fact
> noticed."  *Jones,* 29 F.3d at 1553.  "'The key to a fair trial is opportunity to use
> the appropriate weapons (rebuttal evidence, cross-examination, and argument) to
> meet adverse materials that come to the tribunal's attention.'"  *Fed.R.Evid.* 201(b)
> advisory committee's note [cites].  If a court takes judicial notice of a fact whose
> application is in dispute, the court removes these weapons from the parties and
> raises doubt as to whether the parties received a fair hearing.

*General Electric Capital Corporation v. Lease Resolution Corporation,* 128 F.3d 1074, 1083

(7th Cir. 1997).

The same is true in the instant matter.  LNA improperly seeks to apply a previous finding to the remaining Plaintiffs' claims, despite the fact that the findings are not beyond reasonable dispute.  The FFCL is filled with disputes of fact including, but not limited to, eyewitness testimony, expert witness testimony, and physical evidence.  The Court openly weighs these disputes of fact to come to its determination with regard to those four plaintiffs' claims.  However, applying these ultimate determinations of fact to the cases of the remaining Plaintiffs would eliminate their right to a fair trial as it "removes these weapons from the parties and raises doubt as to whether the parties received a fair hearing."  *Id.*  As such, LNA's Motion should be denied as judicial notice of the trial record is inappropriate.

## VIII.   GRANTING SUMMARY JUDGMENT IN THIS MATTER WOULD VIOLATE PLAINTIFFS' RIGHT TO DUE PROCESS

The 14th Amendment of the United States Constitution, Section 1 provides, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of law".  *See* U.S. Const. amend. XIV, § 1; *see* also *King v. Armstrong World Indus.*, 906 F.2d 1022, 1029 (5th Cir. 1990); *see* also *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982) (finding "[t]he right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution.").  In addition, the right to a jury trial is guaranteed by the United States Constitution[9] and is inherent in a party's inalienable right to due process of the law.  *See* U.S. Const. amend. VII; *See Melancon v. McKeithen*, 345 F. Supp. 1025, 1027 (E.D. La. 1972) ("[a] party may demand a trial by jury of any issue triable of right by a jury…").

---

[9] Although the Louisiana Constitution contains no guarantee of the right to a trial by jury in civil cases, Articles 1731-33 of the Louisiana Code of Civil Procedure require a jury trial on the timely demand of either party to an action. *Melancon v. McKeithen*, 345 F. Supp. 1025, 1027 (E.D. La. 1972).

Here, Defendant seeks to have Plaintiffs' action summarily dismissed despite the fact that Plaintiffs have had **no** opportunity to present their case. To grant, or even consider, LNA's motion, would represent a clear violation of Plaintiffs' constitutionally protected right to due process of the law. In fact, this Circuit has found that summary judgment against a party who has not had an opportunity to develop their case is inappropriate and against public policy. *See Marcus v. St. Paul Fire & Marine Ins. Co*., 651 F.2d 379, 382 (5th Cir. 1981) (finding "[e]ven if St. Paul were entitled to summary judgment, the sound exercise of judicial discretion dictates that the motion should be denied to give the parties an opportunity to fully develop the case… [a] district judge can perform this 'negative discretionary function' and deny a Rule 56 motion that may be justifiable under the rule, if policy considerations counsel caution."). To the extent that LNA may argue that Plaintiffs have had the opportunity to present their case as a party in privity with the plaintiffs in the prior litigation or that the prior bench trial represented a "bellwether" trial that is binding on the instant Plaintiffs, such arguments are unavailing for the reasons set forth herein.

> a. **Applicable Case Law Clearly Establishes That Plaintiffs Do Not Stand in Privity With the Plaintiffs in the Prior Trial And Thus Are Not Collaterally Estopped From Litigating Their Claims**

As discussed above [*see* Section IV. a., *supra*] it is well-settled that "it is a violation of due process for a judgment [in a prior suit] to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery v. Shore.,* 439 U.S. 322, 327 (1979). In addition, finding that a party in a subsequent litigation is in privity with the party or parties in a prior litigation, "requires more than a showing of parallel interests or, even, a use of the same attorney in both suits". *See id*; *see* also *Hardy v. Johns-Manville Sales*

*Corp.*, 681 F.2d 334, 340 (5th Cir. 1982) ("…privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts").

Plaintiffs in this action are not in privity with the plaintiffs in the prior trial, and applying the previous judgment, findings of fact and/or weighing the credibility of the evidence presented in the previous trial would violate Plaintiffs' due process rights. Plaintiffs did not participate in, or exercise any control over, the previous trial. Plaintiffs did not have any beneficial interest in the recovery of damages for personal injuries on behalf of the previous plaintiffs. As such, the parties are not in privity and any application of the factual determinations made in the previous action would violate Plaintiffs' due process rights. *Freeman, supra,* 771 F.2d at 866. In addition, Plaintiffs cannot be deemed to have been "virtually represented" in the prior litigation as "[v]irtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Pollard*, *supra,* 578 F.2d at 1008-1009.   Thus, the principles of due process mandate that LNA's Motion be denied.

### b. The Prior Trial Does Not Constitute an Appropriate Bellwether Trial Because the Court Did Not Pre-Determine That The Cases Constitute a Representative Sample

As an initial point, "…denial of both Seventh Amendment jury trial rights and Fifth Amendment due process principles regarding the right to a 'day in court' are implicated in aggregating mass torts". *Klein v. O'Neal, Inc.*, 2006 U.S. Dist. LEXIS 5436 (2006). As such, in order for the trial of one plaintiff to have bearing on the rights of any other plaintiff, certain requirements must first be satisfied. More specifically, before determining that any particular trial or trials may serve as a "bellwether" for purposes of extrapolating the findings from those trials as bearing on the outcome of other litigants, the court must establish that the trial or trials

so designated constitute a representative sample of the claims at issue for the broader class of plaintiffs. *See In re Chevron U.S.A.*, 109 F.3d 1016, 1020-1021 (5th Cir. 1997); *see* also *In re Complaint of Clearsky Shipping Corp.*, 1998 U.S. Dist. LEXIS 8569 (E.D. La. 1998).

In *In re Chevron U.S.A.*, 109 F.3d 1016 (5th Cir. 1997), the court held that "…before a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried, it must, prior to any extrapolation, find that the cases tried are representative of the larger group of cases or claims from which they are selected." *See id*. at 1021. The court noted that, "[t]ypically, such a finding must be based on competent, scientific, statistical evidence that identifies the variables involved and that provides a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from trials of the whole." *See. id*. The *Chevron* court ultimately concluded that the 30 "bellweather" cases had not been found to be an appropriately representative sample and could not be binding on the other plaintiffs, finding, "[o]ur substantive due process concerns are based on the lack of fundamental fairness contained in a system that permits the extinguishment of claims or the imposition of liability in nearly 3,000 cases based upon results of a trial of a non-representative sample of plaintiffs".

Here, the court has not made any scientifically reliable determination, or any determination whatsoever, as to whether or not the cases represented in the prior trial are appropriately representative of the claims of the instant Plaintiffs or any of the remaining litigants. In fact, the findings the court has made relating to this issue indicate that just the opposite is true in that the individual claims raise distinct, individualized issues. *See* Court's May 21, 2009 Order Denying Certification at p. 26, finding "the proposed class suffers from individual issues of measuring various types of property damage (including real property,

24

business loss, and personal property), measuring personal injury damage, determining causation, and assessing affirmative defenses".

In sum, as the court did not make any determination as to the representative nature of the claims tried in the previous trial, to use such findings as grounds to dismiss Plaintiffs' claims would impermissibly deprive Plaintiffs of their due process rights.

## IX.    CONCLUSION

For the foregoing reasons, Barge Plaintiffs pray the Lafarge's Motion for Summary Judgment be denied.


September 20, 2011

Respectfully submitted,

*/s/Brian A. Gilbert*
Brian A. Gilbert (21297)
**LAW OFFICE OF BRIAN A. GILBERT, P.L.C.**
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
E-mail: bgilbert@briangilbertlaw.com

Shawn Khorrami (CA SBN #14011)
**KHORRAMI, POLLARD & ABIR, LLP**
444 S. Flower Street, 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
e-mail: Skhorrami@kpalawyers.com

Lawrence A. Wilson (N.Y.S.B.A. #2487908)
**WILSON, GROCHOW, DRUKER**
233 Broadway, 5th Floor
New York, NY  10279

Telephone:  (212) 608-4400

Facsimile:  (212) 608-0746

e-mail:  lwilson@wgdnlaw1.com

Lawrence D. Wiedemann (#13457)

Karl Wiedemann (18502)

**WIEDEMANN AND WIEDEMANN**

100 Veterans Memorial Blvd., Ste.

Metairie, Louisiana 70005

Telephone: 504-581-6180

e-mail: ldwiedemann@gmail.com

karlwiedemannlaw@gmail.com

Patrick J. Sanders (18741)

**PATRICK J. SANDERS, LLC**

3316 Ridgelake Drive, Suite 100

Metairie, Louisiana 70002

Telephone: (504) 834-0646

e-mail: pistols42@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile and/or ECF upload, this 20th day of September, 2011.

/s/ Brian A. Gilbert