## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: KATRINA CANAL BREACHES** | * | **CIVIL ACTION** |
| **CONSOLIDATED LITIGATION** | * | |
| | * | **NO.    05-4182 "K"(2)** |
| | * | |
| | * | **JUDGE DUVAL** |
| | * | |
| | * | **MAG. WILKINSON** |
| | * | |
| _____ | * | |
| | * | |
| **PERTAINS TO:** | * | |
| | * | |
| **BEVERLY J. MEREDITH, ET AL.** | * | |
|     **Plaintiff** | * | |
| | * | |
|  **v.** | * | |
| | * | |
| **ELECTRIC INSURANCE COMPANY** | * | |
|     **Defendant** | * | |
| | * | |
| | * | |
|   **C.A. No. 2:10-cv-03022-SRD-JCW** | * | |
| _____ | * | |

## <u>MEMORANDUM OF ELECTRIC INSURANCE COMPANY<br>IN SUPPORT OF RE-URGED MOTION<br>TO DISMISS COMPLAINT</u>

**MAY IT PLEASE THE COURT:**

## I.  <u>INTRODUCTION</u>

After more than two years of total inactivity, plaintiff sues Electric Insurance Company ("Electric") as an individual, alleging that Electric underpaid her Katrina property insurance claim as a consequence of its bad faith. *See* Doc. #1, ¶¶ XXVIII, *et seq*. *See also Millan v. USAA Gen. Indemn. Co.*, 546 F.2d 321, 326-27 (5th Cir. 2008) (Fifth Circuit precedent has generally reserved dismissals with prejudice for cases involving significant periods of total inactivity judged egregious or outrageous; in such cases, plaintiff's conduct is judged to threaten integrity of judicial process, often to prejudice of defense, leaving court no choice but to deny plaintiff benefit of process); *Veazey*, *infra*, at 478 ("Delay in serving a complaint is a particularly serious failure because it [prejudicially] affects all the defendant's preparations.");  *Ramsay v. Bailey*, 531 F.2d 706, 709 (5th Cir. 1976) (characterizing significant period of inactivity prejudice factor deemed sufficient to justify dismissal under Rule 41(b)); *Conway v. Dunbar*, 448 F.2d 765 (9th Cir. 1971) (nearly two years of non-prosecution justifies dismissal); *Price v. Housing Authority of New Orleans*, 2010 U.S. Dist. LEXIS 136642, *12 (E.D.La. Sept. 20, 2010) (Vance, J.) (when significant period of total inactivity is plaintiff's response to court order, dismissal with prejudice may be justified), *quoting Sealed Appellant*, *infra*, at 419.

Electric re-urges dismissal *with prejudice*, *see* Doc. #5, because prejudice is more acutely that when, in a suit seeking punitive damages like the present one, the plaintiff's actions prejudice the defendant's evidence. *See* Doc. #1, ¶ XXXIV ("defendant's persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for Petitioners' (sic) rights so as to warrant the imposition *of punitive damages* against the defendant.") (emphasis added). *Cf*. *Global Petrotech, Inc. v. Engelhard Corp.*, 58 F.3d 198,

202 (5th Cir. 1995) (excluded evidence "was sufficiently prejudicial [as] to . . . [defendant's] substantial rights . . . to require a new hearing on the issue of punitive damages.").

After more than two years disobedience of a Court Order requiring her, on penalty of dismissal, to timely file an individual lawsuit concerning her insurance claim, the only result that would be just is dismissal of the present action. *See* Exhibit C, attached hereto.[1] *See also Veazey*, *infra*, at 478 (in case such as this, lesser sanctions do not "better serve" justice interest).

Just so, this Court dismissed a suit for a two year failure to prosecute in *Finley v. FedEx Ground Package System, Inc.*, 2009 U.S. Dist. LEXIS 20068, *1 (E.D. La. March 5, 2009). Under Rule 41(b), the Court's dismissal order, which did not specify otherwise, "operate[d] as an adjudication on the merits." *See* Fed. R. Civ. P. 41(b) (West Pamph. 2011).

This Court should dismiss again for the reasons stated in the balance of this memorandum. Dismissal *without prejudice* serves no purpose valued by Rule 1. *See Veazey*, *infra*, at 478; Fed. R. Civ. P. 1 (West Pamph. 2011), 1993 Advisory Committee Notes (federal rules must be so construed as to promote just, speedy and inexpensive determination of every action and counsel as officers of Court share this responsibility with Judge).

When the failure to prosecute is longer than the applicable prescriptive period, as it is here,[2] not only is actual prejudice presumed, so is *intentional* delay. *See Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006) (". . . the delay could only have been

---

[1] Exhibit C, the Order at the center of this motion practice, was published by this Court on February 28, 2008 during this suit's earlier *Bailey* incarnation, which is discussed below in text. At that time, Judge Vance ordered plaintiffs to: ". . . within 30 days of this Order, file an amended complaint for each plaintiff and that plaintiff's individual property claim. . . ." *See* Exhibit C, attached hereto. Judge Vance granted "Plaintiffs" a 30 day extension on March 31, 2008. *See* Exhibit D, attached hereto. Judge Vance's Order also read: "The caption of the Amended Complaint shall contain only the individual plaintiff(s) and defendant(s) which are the subject of that specific claim. . . . Upon filing, the Clerk shall assign a new docket number and will allot it at random among the judges of this court. . . . *Any claims not timely brought before the court by amended complaint as ordered herein will be dismissed without further notice.*" *See* Exhibit C, attached hereto (emphasis added).

[2] In the present case, the applicable prescriptive period is the 24 month period for Hurricane Katrina-related claims established by La. R.S. 22:1894(A) (West Supp. 2010) (period for such claims extended to September 1, 2007).

intential."); *Veazey v. Young's Yacht Sale and Service Inc.*, 644 F.2d 475, 477 (5th Cir. 1981) ("Delay alone can infuse an adverse element into the proper flow of litigation; evidence deteriorates or disappears, memories fade and witnesses die or move away.").

Electric will now examine a line of cases demonstrating that the Fifth Circuit has little tolerance for protracted delays in serving process. *See*, *e.g.*, *Veazey*, *supra*, at 478.[3] While the present case involves a suit unfiled and therefore unserved for more than two years rather than a suit only unserved for more than two years, on reflection, the difference is purely metaphysical, proving the distinction unimportant.

This is so because Rule 41(b)'s concern is with notice. *See Sealed Appellant*, *supra*, at 418, *quoting Veazy*, *supra*, at 478. *See also* footnote 3, *supra*. "'[I]n [either] situation[,] the defendant is not put on formal notice" of a lawsuit's existence and is equally prejudiced under both scenarios by the lack of "'a full opportunity to discover and preserve relevant evidence when the matter is still relatively fresh . . .'" *Id*. These are insights to remain mindful of as the balance of this memorandum is considered. Before turning to the substance of the argument, however, a procedural review is in order.

## II.   PROCEDURAL BACKGROUND

### i.   Plaintiff Violated Court Order for More than 800 days

The subject Order was announced by Judge Vance, not in the above captioned case, but rather in this suit's immediate ancestor, *Bailey v. State Farm Fire and Casualty Company*, suit

---

[3] "We underscore the necessity for reasonable and diligent pursuit of all cases and claims initiated, and we emphasize our concern that undue delay is to be avoided, particularly delay in those instances in which the defendant does not have knowledge of an outstanding claim. We view a delay between filing and service as being more likely to result in prejudice than a delay occurring after service . . . A delay between filing and service ordinarily is to be viewed more seriously than a delay of a like period of time occurring after service of process. In this type of situation, 'a lesser sanction would not better serve the interests of justice.'" (Citation omitted).

no. 08-00941–SSV-ALC on the docket of this Court, on February 28, 2008. *See* Exhibit C, attached hereto; footnote 1, *supra*.

Because records are attached to this brief to illustrate its long history, it is important to note, before discussing *Bailey* in more detail, that the Court's authority extends, under Rule 201, to taking cognizance of its own records:

> Courts have the power to judicially recognize their own records of prior litigation closely related to the present case. Although not required to take judicial notice, courts often recognize part of the record of the same proceeding or in an earlier stage of the same controversy. (Footnote omitted). The records that have been noticed in this context include the following:
> - Documents filed with the court. (Footnote citing numerous Fifth Circuit authorities omitted).
> - Orders and judgments of the court. (Footnote citing numerous Fifth Circuit authorities omitted).

*See* 1 *Weinstein's Federal Evidence*, § 201.12[3] (Matthew Bender 2d Ed.).

This Court may therefore judicially notice the attached Exhibits, A – D.[4]  Exhibits A – D, which are records either of this Court or of the Middle District, which transferred the suit to this Court, prove that *Bailey* was this action's direct ancestor. *Id*.

*Bailey*, as the exhibits prove, was originally filed in the 19th Judicial District Court for the Parish of East Baton Rouge by persons seeking to interrupt the waning prescriptive period for Katrina-based, insurance suits. *See* Exhibits A and B, attached hereto. After the suit was filed, *Bailey* was removed to the United States District Court for the Middle District of Louisiana by the defendant property insurers, one of whom was Electric, which filed, in the record, a consent to the removal. *Id*. Thereafter, the Middle District transferred the action to this District. *Id*.

---

[4] Exhibit A, attached hereto *in globo*, is the *Bailey* docket sheet in this Court. Exhibit B, *in globo*, is an excerpt from the *Bailey*, Middle District docket sheet. Exhibit C is Judge Vance's initial order in *Bailey*, and Exhibit D is the Order by which Judge Vance granted 30 day extension in *Bailey* for compliance with Exhibit C. Exhibit B shows that undersigned counsel appeared in the removed action as counsel of record for defendant Electric Insurance Company and that Electric filed a corporate disclosure statement, among other things.

In this Court, as the attached docket sheet reflects, the Clerk allotted ***Bailey*** to Judge Vance and Magistrate Chasez. ***Id***. It is undisputed that one of the plaintiffs in ***Bailey*** was Beverly Meredith, the plaintiff in the present case. ***See*** Exhibit B, attached hereto (Beverly Meredith recognized as plaintiff in ***Bailey***). This history demonstrates that the above captioned action is a later stage of ***Bailey***, a later stage "of the same controversy . . ." ***See*** 1 ***Weinstein's Federal Evidence***, ***supra***, at § 201.12[3].

As for the reason for the Order, when ***Bailey*** arrived in Judge Vance's Section, she immediately ordered the suit disentangled pursuant to Rule 21.[5] It is evident that Judge Vance concluded that ***Bailey*** violated the joinder principles of Rule 20(a).[6] Judge Vance was authorized to act "on [her] own, . . . at any time, on just terms . . ." ***See*** footnote 5, ***supra***. Judge Vance accordingly issued the Order to which this motion pertains *ex proprio motu* on February 28, 2008. ***See*** Fed. R. Civ. P. 21, ***supra***. ***See also*** Exhibit C, attached hereto. The justice of the Order's terms are not in issue here. ***See Hanna v. Plumer***, 380 U.S. 460, 463-464, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965).

Thereafter, as also stated earlier, on March 31, 2008, Judge Vance granted "Plaintiffs" a 30 day extension to file their new, individual lawsuits. ***See*** Exhibit D, attached hereto. Plaintiffs had already been cautioned that untimely compliance would lead to unnoticed dismissal. The

---

[5] In February of 2008, Fed. R. Civ. Proc. 21 read: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." ***See*** Fed. R. Civ. P. 21 (West Pamph. 2011). ***See also*** 4 Moore's Federal Practice, § 21.06, ***infra***.

[6] Judge Vance prefaced her February 28, 2008 Order with the observation, "the Court has determined that plaintiffs' claims in the captioned case will be severed into individual suites (sic), each addressing one distinct property." In February of 2008, Rules 20(a)(1)(A)-(B), concerning Permissive Joinder, read: "Persons may join in one actions as plaintiffs if: they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and, any question of law or fact common to all plaintiffs will arise in the action." ***See*** Fed. R. Civ. Proc. 20(a)(1)(A)-(B) (West Pamph. 2011). It is apparent from Judge Vance's Order that Judge Vance concluded that each separate home damaged by Hurricane Katrina constituted a separate occurrence for the purposes of Rule 20(a) analysis and that the mass joinder in ***Bailey*** was therefore improper. It is also evident from Judge Vance's actions that Judge Vance concluded that the appropriate remedy was the brand of severance that results in truly separate actions with new docket numbers. ***See*** Fed. R. Civ. P. 21, ***supra***. ***See also*** 4 Moore's Federal Practice, § 21.06 (Matthew Bender 3d ed.).

same warning was accordingly implicit in Exhibit D. Thus, plaintiffs were twice warned. In summary, however, the present suit is nothing more than the individual suit ordered filed by Judge Vance.

In spite of the extended period for compliance and the two warnings, plaintiff violated Judge Vance's order for almost two and one-half years, for approximately 28 months or approximately 850 days -- from May 1, 2008 to September 12, 2010. *See* Doc. #1.

No motion for relief was filed during the intervening years by the plaintiff nor was any statement placed in the record to explain or excuse the disobedience. *Cf.* Fed. R. Civ. P. 4(m) (West Pamph. 2011). The apparent assumption was that disobedience could unfurl with impunity. *See Veazey*, *supra*, at 478 ("[W]e emphasize our concern that undue delay is to be avoided, particularly delay in those instances in which the defendant does not have knowledge of an outstanding claim."); *Sealed Appellant*, *supra*, at 419 (party bound by acts of attorney);[7] *Finley*, *supra*, at *1 (dismissing suit with prejudice for over two years of inactivity).

### i.   Prescription Not Raised as Issue

When the present suit was finally served on Electric, Electric moved for its dismissal on non-prosecution grounds. *See* Doc. #5. Thereafter, however, on plaintiff's motion, this action was stayed to await the Louisiana Supreme Court's decision in *Taranto v. Louisiana Citizen's Property Ins. Corp.*, 11-0105 (La. 3/15/11), 62 So.3d 721, *reh'g denied*. *See* Doc. #8.[8]

---

[7] "Appellant contends that he was not informed about the delay by his attorney. It is well established, however, that a party is bound by the acts of his attorney. . . . One does not have to be legally sophisticated to understand that if [s]he is the only plaintiff in the case and does not hear from [her] attorney for almost two years, [her] case is not being diligently prosecuted. . . . [T]he issue of whether the delay was the result of intentional conduct does not depend [moreover] on whether the intentional conduct was by the party as distinguished from his attorney. Rather, as explained, conduct by the attorney is sufficient. There is a separate aggravating factor dealing with delay attributable to the party, rather than [her] attorney." (Internal citations and footnote omitted). *See also Sealed Appellant*, *supra*, at 419 ("Appellant has not missed the 120-day deadline by only a day or a week or two, but by almost 600 days. Therefore, the delay is not a 'simple inadvertence.'");

[8] Doc. #8 states: "IT IS HEREBY ORDERED that this matter is stayed pending the Louisiana Supreme Court's ruling in <u>Taranto</u> . . . Defendants' rights and defenses are preserved . . ."

The issues discussed in this brief are now obviously ripe for consideration. More importantly, this motion does not allege that ***Taranto*** dictates a dismissal; Electric does not claim that the plaintiff's suit is barred by prescription or that prescription accrued during the period of inactivity. Neither, however, are such allegations necessary to justify dismissal with prejudice. ***Cf***. ***Veazey***, ***supra*** (dismissing diversity-based redhibition suit originating in this Court with regard to two manufacturers on basis of Rule 41(b) for nearly 21 months of failure to prosecute with no suggestion that prescription accrued during interim period of inaction); ***Fournier***, ***supra***, at 533-34 (dismissing personal injury suit originating in this Court arising from crash of helicopter in Gulf of Mexico on basis of Rule 41(b) for 32 month delay with no suggestion that prescription accrued during interim).

While the caselaw admittedly shows that courts considering Rule 41(b) defects consider prescription law to determine whether the consequence of a dismissal without prejudice will be extinguishment of the obligation, ***cf***. ***Sealed Appellant, supra***, ***Taranto*** has no bearing on the present motion. This is so because of the way this motion is configured. On Rule 1 grounds, this motion expressly disavows any interest in a without prejudice dismissal. The usual concern with whether the lesser sanction of a dismissal without prejudice will have the practical effect of extinguishing the plaintiff's action is therefore of purely academic interest in this case. As a consequence, there is no reason for this Court to concern itself with ***Taranto***. (Electric reserves the right to consider the issue of prescription in the future if this action is not dismissed with prejudice).

### III.    APPLICABLE LAW

#### i.    Delay Exceeding Period of Limitation Justifies With Prejudice Dismissal

Electric therefore now turns to the substance of its argument. The rule of decision in this case is not Fed. R. Civ. P. 4(m) (West Pamph. 2011) in light of the specific failure in this case but rather Rule 41(b), which in relevant part reads:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, . . . operates as an adjudication on the merits.

*See* Fed. R. Civ. P. 41(b) (West Pamph. 2011).[9]

The law construing Rule 41(b) includes this Court's opinion in ***Reyes v. Cleggett***, 2002 U.S. Dist. LEXIS 5788 (E.D.La. March 28, 2002) (Duval, J.). There, this Court dismissed an apparent medical malpractice suit without prejudice for failure to prosecute. Counsel for plaintiff was granted leave to withdraw. Thereafter, the Court found that it could not cause the plaintiff to represent herself at a show cause hearing. On the road to concluding that a dismissal was warranted without prejudice, this Court explained:

> Federal Rule of Civil Procedure Rule 41(b) permits a district court to dismiss a cause of action for failure to prosecute on defendant's motion and authority for such dismissal is based on the court's power to manage and administer its own affairs, and to ensure the orderly and expeditious disposition of cases. (Citation omitted). However, dismissal with prejudice is an 'extreme sanction' that deprives a litigant of the opportunity to ever pursue his claim and is only permitted under Rule 41(b) when (1) there is a clear record of delay or contumacious conduct by the plaintiff and (2) the court has expressly determined that lesser sanctions would not prompt

---

[9] ***See also Chambers v. Nasco, Inc.***, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991) (federal court has inherent authority to dismiss case for disobedience of order of court); ***Quagliano v. United States***, 293 F. Supp. 670, 672 (S.D.N.Y. 1968) ("The sanction is necessary if the thousands of other litigants are to have their day in court and if the rules and directions of the court are ever to be followed.") (citation omitted).

>diligent prosecution or the record shows that the court employed
>lesser sanctions which proved to be futile. (Citation omitted).

*See id.*, at \*3-\*4.

As evidenced, however, by this Court's opinion in ***Finley***, ***supra***, the jurisprudence involving "'egregious [or] outrageous delays'" in serving legal process on the defendant constitute a special genre of Rule 41(b) jurisprudence in the Fifth Circuit. ***See Millan***, ***supra***, at 326-27. When a case presents a period of outrageous delay, as this one obviously does, critical things happen: delay is presumed to, for example, be intentional. ***See Sealed Appellant***, ***supra***, at 418. Actual prejudice is presumed. ***See Veazey***, ***supra***, at 478. Lesser sanctions seem ineffective. ***See id.***, at 477. If "aggravating factors" are considered relevant, they are basically deemed to be present. ***See Sealed Appellant***, ***supra***, at 418.

***Veazey*** involved a 21 month delay and hence a period of nonprosecution shorter, even, than the 28 month delay in the present case. ***Sealed Appellant*** involved an almost 600 day delay. ***Fournier*** involved a 32 month delay and ***Ramsay*** six months. ***See also Veazey***, ***supra***, at 477 (collecting cases involving clear record of delay and ineffective and therefore unjust lesser sanctions).

***Sealed Appellant*** emphasizes that the need for aggravating factors is attenuated when the failure to prosecute is this prolonged. ***See Sealed Appellant***, ***supra***, at 418 (emphasis added and internal citations omitted). There, the Fifth Circuit also concluded that when the failure to prosecute is this egregious, aggravating factors emerge, virtually as a matter of law, actual prejudice and contumacious delay.

***Veazey***, a diversity case originating in this Court, was a redhibition case. ***Veazey*** proves that the Rule 41(b) defendant need not show, to secure a with prejudice dismissal, that the suit prescribed during the long failure to prosecute. ***Veazey*** stressed that for the purposes of Rule

41(b), the purpose of prescription is more pivotal than the accrual of prescription. When the failure to prosecute is longer than the applicable period of limitation, the failure defeats the prescriptive period's public policy underpinning, which is prejudice mitigation, a purpose likewise served by Rule 41(b). *See Veazey*, *supra*, at 477-78 (failure to prosecute exceeding applicable prescriptive period justifies dismissal with prejudice whether or not underlying suit prescribed because delay defeats purposes of statutes of limitation, repose and prescription).

Prescription in Louisiana does exist, the Louisiana Supreme Court observed in *Stenson*, to prevent the prejudice caused by a stale claim resting on proof not well preserved.[10] *Veazey's* rationale is therefore applicable to cases originating in Louisiana courts or controlled by Louisiana law. A delay longer than the period of prescription is inherently prejudicial in the Fifth Circuit, in summary, whether or not prescription itself has actually accrued.

*Sealed Appellant* recapitulates *Veazy* and in doing so powerfully supports the dismissal of the present action. *Sealed Appellant* was a *qui tam* action filed in Texas federal court. *See Sealed Appellant*, *supra*, at 416. The United States reported, in due course, that it would not intervene. Thereafter, the Court ordered the action unsealed and served on the defendant. *See id.*, at 416-17. "Appellant, however, never served the complaint or any other documentation on Appellee . . . during the *two years* that the case remained unsealed and pending." *See id.*, at 417. Appellee independently learned of the filed but unserved action from a United States source and subsequently moved to dismiss the action on the basis of Rules 41(b), 12(b)(6) and 9(b). *Id*. At one point, the Fifth Circuit noted that the plaintiff had missed his deadline to serve the action "by almost 600 days. Therefore, the delay [was] not," the Fifth Circuit stressed, "a 'simple inadvertence.'" *See id.*, at 419.

---

[10] "'The fundamental purpose of prescription is only to afford a defendant security of mind if no claim is made timely, and to protect against stale claims and *the non-preservation of* relevant proof.'" *Stenson v. City of Oberlin*, 10-0826 (La. 3/15/11), 60 So.2d 1205, 1209 (emphasis added and citation omitted).

The District Court granted the motion but stipulated that dismissal was without prejudice. *Id*. Dismissal nonetheless implied the extinction of "some" of the claims by reason of the statute of limitations applicable to the False Claims Act and the Fifth Circuit treated the District Court's order accordingly. ***See Sealed Appellant***, ***supra***, at 417.

The Fifth Circuit ultimately affirmed the District Court, observing, with reference to *Veazey*: "We found similar actual prejudice resulting from failure to serve process ***within the statute of limitations period*** in *Veazey* . . ., although we did not use the term, 'aggravating factor.' . . . (Footnote omitted). In *Veazey*, we explained that failure to serve process ***within the statute of limitations period*** is extremely prejudicial because it affects all of the defendant's preparations: . . ." ***See Sealed Appellant***, ***supra***, at 418 (emphasis added, internal citations and footnotes omitted).

Fascinatingly, in ***Sealed Appellant***, the Fifth Circuit also said:

> We disagree with Appellant's contention that, to affirm a dismissal with prejudice, an aggravating factor must be present; the presence of the requisite factors 'can alone justify dismissal.' We have stated that aggravating factors must 'usually' be found; we have not said they must 'always' be found. (Footnote omitted).
>
> In any event, at least two aggravating factors are present in this case. First, there is actual prejudice to the defendant. We have found similar actual prejudice resulting from failure to serve process within the statute of limitations period in *Veazey* . . .
>
> * * *
>
> Another aggravating factor that is present here is that ***the delay could only have been intentional***.

***See Sealed Appellant***, ***supra***, at 418 (emphasis added and internal citations omitted).

Earlier, in ***Veazey***, the Fifth Circuit emphasized: "Delay ***alone*** can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade,

and witnesses die or move away. If the delay is unjustified, the court can and must act to redress the balance." *See id.*, at 477-78 (emphasis added). There, the Fifth Circuit added: "***Delay in serving a complaint is a particularly serious failure*** because it affects all ***the defendant's preparations***." *See id.*, at 478 (emphasis added and citations omitted). *Cf*. *Stenson*, *supra* (prescription protects against stale claims and non-preservation of relevant proof).

*Veazey* also remarked, critically, given the Fifth Circuit's general devotion to "lesser sanctions": "Although lesser sanctions are clearly preferred, dismissal is appropriate when there is 'a clear record of delay or contumacious conduct.' . . . We find no abuse of discretion by the district court in reaching this conclusion." *See id.*, at 477 (citation omitted).

Years later, *Sealed Appellant* echoed this sentiment, stressing that in a case involving a delay in service lasting "almost 600 days . . .," *see Sealed Appellant*, *supra*, at 419: "there [is] no abuse of discretion in dismissing a case for failure to prosecute, ***even if the district court judge did not previously employ a lesser sanction or expressly determine[] that lesser sanctions would not prompt diligent prosecution***." *Sealed Appellant*, *supra*, at 420 (emphasis added).

The Fifth Circuit has even addressed the lawyer/client dichotomy and the issue of responsibility for the failure to prosecute when a failure is this protracted. ***Sealed Appellant*** cautions that the Rule 41(b) analysis is more subtle with regard to blame when the failure to prosecute is this prolonged. Explains ***Sealed Appellant***: "[T]he issue of whether the delay was the result of intentional conduct ***does not depend on*** whether the intentional conduct was by the party as distinguished from his attorney. Rather, as explained, conduct by the attorney is sufficient. There is a separate aggravating factor dealing with delay attributable to the party, rather than [her] attorney." ***See Sealed Appellant***, ***supra***, at 419 (emphasis added, internal citations and footnote omitted).

The lesson of these cases is that a failure to prosecute as long as or longer than the applicable prescriptive period is inherently inordinate, contumacious and prejudicial, whether or not prescription actually accrued during the period of inactivity. Lesser sanctions are deemed ineffective and therefore unjust, and aggravating factors undergo a metamorphosis, becoming, if not ephemeral, present by definition. *See Sealed Appellant*, *supra*, at 418.

Nor must defendant argue that prescription accrued during the intervening silence. In *Veazey*, the defendant made no prescription argument under Louisiana redhibition law. *Veazey* nonetheless concluded that dismissal with prejudice was not an abuse of discretion. *See id*., at 476, 477 ("The dismissal was with prejudice.").

When the failure to prosecute exceeds the period of limitation, with all the prejudice that implies, proceeding with the lawsuit is manifestly unjust. *See Veazey*, *supra*, at 478 ("To require the manufacturers of the hull and motor of the sailboat to defend a redhibitory action under the circumstances presented here, would be manifestly unjust.").

Nor, in this respect, is *Veazey* an isolated precedent. To the contrary, *Fournier v. Textron, Inc.* likewise originated in the Eastern District of Louisiana and likewise affirmed the suit's dismissal for years of non-prosecution without an argument that prescription accrued in the interim. *See Fournier v. Textron, Inc.*, 776 F.2d 532, 534 (5th Cir. 1985).

Prejudice is also proportionally more severe in the Rule 41(b) context when punitive damages are at stake. *See Global Petrotech, Inc.*, *supra*. It is manifestly unjust to excuse the plaintiff's failure to prosecute in this case when the failure prejudiced Electric's evidentiary posture. *See Veazey*, *supra*, at 478. As Electric will momentarily show, excusing the plaintiff's failure, in the presence of a jury, implies magnifying Electric's exposure to punitive damages. Therefore, the plaintiff's failure cannot be excused. Therefore, in this case, *Veazey* and *Sealed*

*Appellant* symbolize the correctness of with prejudice dismissal. *Cf*. *Lindsey v. Normet*, 405 U.S. 56, 66, 92 S. Ct. 862, 870-71, 31 L. Ed. 2d 36 (1972) ("'Due process requires that there be an opportunity to present every available defense.'"); *In re: Eisenberg*, 654 F.2d 1107, 1111 (5th Cir. 1981) (full and fair hearing implies right to rebut other side's evidence); *Tylicki v. Ryan*, 244 F.R.D. 146, 147-48 (N.D.N.Y. 2006) (dismissing suit for noncompliance with order requiring *pro se* plaintiff to file Amended Complaint; plaintiff also failed to keep court apprised of current address); footnote 3, *supra*.

## IV.   <u>KATRINA INSURANCE DISPUTE</u>

As stated earlier, plaintiff contends that Electric underpaid her Katrina based property insurance claim, further alleging that Electric did so in bad faith. *See* Doc. #1, ¶¶ XIV, *et seq*., ¶¶ XXVIII, *et seq*. *Cf. Bayle v. Allstate Insurance Co.*, 615 F.3d 350, 358 (5th Cir. 2010) (under Louisiana law it is plaintiff's burden to prove "that [the] uncompensated (or under-compensated) damage was caused by a covered peril."). Electric does not dispute insuring the plaintiff's home on August 29, 2005. On the other hand, plaintiff does not allege that her insurance claim was rejected. She claims instead that Electric "refused to pay *the full extent* of damages sustained . . ." *See* Doc. #1, ¶ XXII (emphasis added).

Electric knows better than to ask the Court to judicially notice that it adjusted this loss on October 5, 2005; that the insured received a payment for damage, for example, to her roof, caused by wind; that the adjuster determined that the home was flooded by 35 inches of water or that Electric paid the insured $2,000.00 for additional living expenses in spite of the extensive flooding. Electric asks only that the Court recognize, as the Fifth Circuit did in *Veazey*, *supra*, that a period of inactivity lasting longer than the period established by La. R.S. 22:1894(A) prejudiced Electric, as Electric now shows.

## V.   **PLAINTIFF'S VIOLATION PREJUDICES ELECTRIC**

Before discussing prejudice, which is magnified by the prayer for punitive damages, Electric must discuss the facts in more detail because they illuminate **the depth of** Electric's prejudice. In the present case, the Court may take judicial notice of many, key facts. **Cf**. 5 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) (under Rule 12(b)(6), district courts possess power to consider "matters of which the judge may take judicial notice.").[11]

The property in the present case, for example, is in Gentilly. This, the Court can notice judicially as a consequence of Doc. #1's Exh. A, which identifies 4330 Cartier Dr., New Orleans LA 70122 as the plaintiff's address at the time of the Hurricane. The address is one the Court can judicially recognize, is in an area bounded by Mirabeau to the north, St. Bernard to the west, Paris (and the London Ave. Canal) to the East and Harrison to the South. From these facts, the Court can deduce that the plaintiff's home almost certainly flooded severely for a period of weeks. From this it follows that the plaintiff's home almost certainly flooded badly and that the present claim is therefore facially dubious owing to its presumptively non-covered nature. **See Sher v. Lafayette Ins. Co.**, 07-2441 (La. 04/08/08), 988 So.2d 186. **Cf**. Fed.R.Evid. 201 (West Pamph. 2011); Exhibit E, attached hereto; **Joshua**, **infra** (in suit instituted in September of 2006 against State Farm concerning insurance dispute arising from Hurricane Katrina, Judge Barbier conceded defendant's right to have countervailing opinion evidence with which to meet the insured's opinion evidence).

It is unquestionably the plaintiff's burden to prove "that [the] uncompensated (or under-compensated) damage was caused by a covered peril." **See Bayle**, **supra**, at 358. This

---

[11] This Court is perfect for this species of judicial notice. **Cf**. Fed. R. Evid. 201 (West Pamph. 2011). This Court's management of the Hurricane Katrina litigation heretofore consolidated in this Section has armed it with intimate knowledge of innumerable Hurricane Katrina-related facts. Among those many commonly known facts is that Gentilly was hard hit by flooding and that the flooding subsided for weeks as the City was de-watered. This particular property, for example, was about a mile from the London Ave. breach.

accentuates Electric's prejudice, because the plaintiff cannot satisfy this burden without expert testimony. ***Betzel v. State Farm Lloyds***, 480 F.3d 704, 707 (5th Cir. 2007);[12] ***Matthews v. Allstate Ins. Co.***, 731 F. Supp.2d 552, 557  (E.D.La. 2010) (Fallon, J.);[13] ***Imperial Trading Co.***, ***supra***, at 521 (Katrina insurance dispute presents technical issues that benefit from expert testimony concerning causation); ***Denley v. Hartford Ins. Co. of the Midwest***, 2008 U.S. Dist. LEXIS 57243, *11 (E.D.La. July 29, 2008) (Berrigan, J.);[14] ***Joshua***, ***infra***, at *11 (in insurance dispute arising from Hurricane Katrina, defendant has right to have effective, countervailing opinion evidence with which to meet insured's opinion evidence).[15]

Electric has a corresponding right to meet the plaintiff's opinion testimony with equivalent expert testimony of its own, ***see Lindsey***, ***supra***, but Electric has been prejudicially prevented from timely harvesting such opinion evidence in this case. This is not an injury the Court cannot be confident of curing with an instruction to the jury. Electric therefore finds itself in a manifestly unjust posture. ***See Veazey***, ***supra***, at 478 (same). ***Cf***. ***Joshua***, ***infra*** (conceding defendant's right to opinion evidence with which to meet insured's opinion evidence).

This case must accordingly be dismissed. ***Cf. Bayle***, ***supra***, at 358 (plaintiff faces initial burden of proving nature and scope of loss caused by covered peril) & 353 (". . . the Bayles' expert's report was silent on both issues.").

---

[12] "Putting aside State Farm's contention that neither expert is qualified to segregate covered [mold] losses from non-covered losses, the two experts are still necessary to [prove] the cost to rebuild . . ."

[13] Plaintiffs "d[id] not dispute their burden to prove damage by a covered loss. In fact, they are relying upon Mr. Kotter's [expert] report to support their argument that their home suffered from wind damage, a covered loss and to demonstrate the cost of this damage."

[14] Here, Judge Berrigan's discussion of the question of whether two experts for the plaintiff were qualified to scientifically address "the causation of damages" in a Hurricane Katrina insurance dispute proves that Judge Berrigan concluded that the plaintiff could not satisfy his burden without qualified and competent expert testimony concerning "the causation of damages."

[15] In ***Joshua***, Judge Barbier also said, ***see id.***: "[In this first-party, property insurance dispute arising from Hurricane Katrina] it is assumed that [expert] will testify as to the cause of the damage to the property. ***Such a witness is undoubtedly an important witness to the Plaintiff's cause***." (Emphasis added).

This argument is made more compelling yet by an additional factor. ***Bayle*** warns that the burden shifts back to Electric to prove the applicability of its water exclusion once the insured has shown damage caused by a covered peril. ***See Bayle***, ***supra***, at 358. This means that Electric likewise has a burden that can only be satisfied with expert testimony. ***Imperial Trading Co.***, ***supra***, at 521. However, the plaintiff's expert report, which is at the heart of this litigation, is dated 12/5/09. This indicate that plaintiff's causation expert will testify to an inspection performed on that date. ***See*** Exhibit E, attached hereto.[16] That is a date Electric cannot now hope to match. ***Cf***. ***Bayle***, ***supra***. This underscores the genuineness of the prejudice to which the plaintiff has subjected Electric.

Electric had a constitutional right to an opportunity to marshal evidence of a quality rivaling the plaintiff's evidence. This is the point of the Fifth Circuit's discussion of the purpose of a period of limitation. ***See Stenson***, ***supra*** (in Louisiana purpose of prescription is to safeguard right of the defendant to find evidence that is not stale, i.e., evidence that has been well preserved). ***See also Lindsey***, ***supra*** (due process implies opportunity to present every available defense); ***In re: Eisenberg***, ***supra*** (due process implies meaningful right to rebut other side's evidence).

By failing to prosecute this case for a period in excess of the period of limitation, plaintiff has rendered it impossible for Electric to harvest such expert testimony. This is evidenced by the date of the plaintiff's nominal expert report. ***See*** Exhibit E, attached hereto. Plaintiff has therefore prejudiced Electric irretrievably. ***Cf***. ***Joshua v. State Farm Fire & Cas. Co.***, 2008 U.S. Dist LEXIS 2639, *9 (E.D.La. Jan. 14, 2008) (Barbier, J.) (in suit instituted in September of 2006 against State Farm concerning insurance dispute as to Hurricane Katrina in which no one

---

[16] Facially, this report constitutes a relational admission under Fed. R. Evid. 801(d)(2). If the plaintiff wants to ***reasonably*** challenge the Exhibit's authenticity, she will doubtless do so in her opposition.

would assume State Farm failed to adjust loss, Court conceded that defendant would be prejudiced by having less than one month before end of discovery to depose plaintiff's expert, "**hire its own**, **and obtain a report written from that one**.") (emphasis added); ***Imperial Trading Co. v. Travelers Property Cas. Co. of America***, 654 F. Supp.2d 518, 521 (E.D.La. 2009) (Vance, J.) ("This [Katrina insurance dispute] presents a few technical issues that would benefit from expert testimony, ***such as causation***.") (emphasis added).

In this case, Electric had ample reason for desiring a reinspection of the insured's property as close to the date of the insured's inspection as possible. No other inspection could harvest opinion evidence by a method not less reliable than the one employed by the plaintiff's expert. ***Cf***. Fed. R. Evid. 702 (West Pamph. 2011);[17] ***Bayle***, ***supra***, at 358; ***Imperial Trading Co.***, ***supra***. This is precisely what the plaintiff has prejudiced irretrievably.

This is not a matter of opinion. To the contrary, for the purposes, crucially, of Rule 702 and related ***Daubert*** analysis, the Louisiana legislature has determined, as a matter of public policy and hence law, that loss inspection, in Louisiana, within 30 days of notice of a catastrophic loss, i.e., as proximate to the date of loss as possible, is inextricably intertwined with the question of whether a factually and hence scientifically valid, loss evaluation is occurring. ***See*** La. C.C. art. 1 (West Pamph. 2011) (legislation is source of law).

La. R.S. 22:1892(A)(3) expressly provides for rapid loss evaluation on penalty of a monetary fine; the statute is the definition of a penal statute.[18] ***Cf***. ***McClendon v. Economy Fire***

---

[17] ***See*** Fed. R. Evid. 702 (West Pamph. 2011): "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case."

[18] Currently, La. R.S. 22:1892(A)(3) reads in relevant part, as it did in 2005, in every, material respect, when it was § 658: "In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant . . . Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties . . ."

*& Casualty Ins. Co.*, 98-1537 (La. App. 3rd Cir. 4/7/99), 732 So. 2d 727 (statute concerning prompt adjustment of property loss requires insurer to take some substantive and affirmative step to accumulate facts necessary to evaluate claim after notice).

Because inspection as proximate to the date of the loss as possible is therefore deemed conducive, as a matter of law, *see id.*, to a more scientifically reliable understanding of the scope of an insured claim, and because this plaintiff intentionally prejudiced Electric's ability to harvest such evidence in this case,[19] dismissal with prejudice is the only just result, as the Fifth Circuit acknowledged in *Veazey* and *Sealed Appellant*.

In summary, when plaintiff unilaterally and unlawfully imposed a period of excessive delay on Electric, prejudicing Electric's right to seasonably inspect the property insured by Electric, § 1892, previously § 658, and Rule 702, both underscored the significance of the prejudice suffered by Electric, mandating dismissal.

There is no need for Electric to belabor the self-evident point that an inspection of the property now would be inherently compromised as a matter of fact and law and worse, would likely be seen that way by a jury considering the competing claims of experts in this case.[20] These factors underscore *Veazey's* wisdom with regard to lesser sanctions. *See Veazey*, *supra*, at 478 (lesser sanctions do not serve ends of justice when situation is at it is here).

The reasons Electric's prejudice is actual and significant do not arise solely, however, from the staleness of the evidence available to Electric, *cf*. *Joshua*, *supra*. Electric's prejudice also arises from Exhibit C and from what could be the destruction of Electric's resulting expectation that Electric would not confront this plaintiff in property insurance litigation. When Electric was not served with legal process in response to Exhibit C for 90, 120, 180, 400, 600 or

---

[19] *See Sealed Appellant*, *supra*, at 418 (delay of this length "could have only been intentional").
[20] If this suit is not dismissed and Electric is forced to Answer, it will pray for trial by jury.

800 days, the jurisprudence directly and unmistakably authorized Electric's presumption that the plaintiff chose to forego further litigation against Electric. *Cf*. *Veazey*, *supra*, at 478.

Crucially, when Electric's reasonable expectation arose, Electric was under no obligation to spend a seemingly unnecessary sum of money on a seemingly pointless reinspection of the plaintiff's property. *Id*. *Cf*. Fed. R. Civ. P. 1, *supra*. Allowing the plaintiff to resurrect her suit now in the face of the relevant Order's language and the Fifth Circuit's jurisprudence on the subject, *see*, *e.g.*, *Sealed Appellant*, *supra*, at 419 n. 7 (collecting similar cases), would be grossly unfair; it would subjecting Electric to the prejudice repudiated by the Fifth Circuit in *Veazey* and *Sealed Appellant*. Against this background, a lesser sanction is not feasible, as the Fifth Circuit found both in *Veazey* and *Sealed Appellant*.

Even if the Court were prepared to instruct the jury that it is not to consider any fact that might, through the medium of expert testimony, confer an advantage on the plaintiff with regard to causation and liability and even if the Court were likewise prepared to both exclude any temporal challenge to the admissibility of Electric's opinion testimony and instruct the jury not to consider the temporal distance between reinspection and testimony in weighing the value of Electric's evidence, such measures are unlikely to be truly curative or feasible. As *Veazey* recognizes, the interests of justice are therefore only served in this case by a dismissal with prejudice. *Id*.

Claimant may speciously object that Electric could have inspected the property at the time of the filing of *Bailey*. This ignores the sequence of events in *Bailey*; the alacrity with which Judge Vance issued her severance Order following *Bailey's* removal; Judge Vance's warning that "[a]ny claims not timely brought before the court by amended complaint as ordered herein *will be dismissed without further notice*," and the way in which that warning and the

other factors justified Electric's expectation that it would never again see this plaintiff with regard to her insurance claim in light of her prolonged failure to do anything. *See Exhibit C*, attached hereto, at p. 2.

## VI.   DISMISSAL WITH PREJUDICE IS WARRANTED

The length of the violation in this case and the plaintiff's abject silence "betokened" willfulness, as *Sealed Appellant* emphasized. *See Sealed Appellant*, *supra*, at 419.[21] As stated earlier, moreover, delay this protracted is charged to the client whether the delay is actually attributable to the client or the lawyer. Consequently, the present case exhibits most of the aggravating factors required by the Fifth Circuit, i.e., prejudice and intentional delay, even though *Sealed Appellant* stresses, as stated earlier, that the need for such factors is attenuated when the failure to prosecute is as egregious as it was in this case. *See id.*, at 418. In the present case, there is also no need to inquire into whether the delay was literally attributable to the client. *See id.*, at 419 ("Rather, as explained, conduct by the attorney is sufficient.").

## VII.   CONCLUSION

In *Sealed Appellant*, the Fifth Circuit parenthetically characterized *Fournier*, *supra*, a case that originated in this Court that did not prescribe during the failure to prosecute, as a suit "citing *Veazey* and holding that failure to serve within limitations period *creates actual prejudice and justifies dismissal with prejudice*." *See Sealed Appellant*, *supra*, at 418 n. 5 (emphasis added). The reasons for dismissing this suit are both legion and compelling. In the alternative,

---

[21] In *Sealed Appellant*, a delay of almost 600 days was deemed "not a 'simple inadvertence.'" *Id*. Also, in the canon of film beloved by lawyers, no film, with the possible exception of *To Kill a Mockingbird*, is more cherished than *A Man for All Seasons*. Though Electric is paraphrasing the film's sacred script, the third act culminates in a riveting trial scene. During Sir Thomas' cross-examination by Cromwell and the Court concerning the marriage, Sir Thomas is challenged to deny that his silence "betokened" his opposition to the marriage. Sir Thomas replies that this is not an inference the Court is at liberty to countenance, for the maxim of the law is "*Qui Tacet Consentire.*" "If you choose to wonder what my silence betokened," Sir Thomas reminds the Court, "you must construe that it betokened consent, not opposition." *See* Black's Law Dictionary 1414 (1968) ("He who is silent is supposed to consent. The silence of a party implies his consent.").

Electric prays for a § 1292(b) certificate. Such a certificate is warranted in light of **Finley**, **Sealed Appellant**, **Veazey**, **Fournier**, **Ramsay** and **Millan**, among other precedents.[22]

<div style="margin-left:40%">

Respectfully submitted,

*s/Alan Dean Weinberger*
Dominic J. Gianna, #6063
Alan Dean Weinberger # 13331
**MIDDLEBERG, RIDDLE & GIANNA**
201 St. Charles Avenue, Suite 3100
New Orleans, Louisiana  70170-3100
Telephone:  (504) 525-7200
***Attorneys for Electric Insurance Company***

</div>

### CERTIFICATE OF SERVICE

I hereby certify that on 28th day of September, 2011, I electronically filed the foregoing Memorandum in Support with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this matter that accept service via the electronic filing system.  I further certify that I mailed the foregoing document and notice of electronic filing by first-class mail to all counsel of record who are not participants in the CM/ECF system.

<div style="margin-left:40%">

*s/Alan Dean Weinberger*

</div>

ND: 4826-2539-1115, v.  1

---

[22] The controlling question of law is the interpretation of Rule 41(b) examined in this brief. With regard to the criterion concerning "substantial ground for difference of opinion," if this Court is inclined to deny this motion in spite of the many cases discussed in this brief, the juxtaposition of this brief and that fact are indicative of the fulfillment of the condition. As for, finally, the criterion of "ultimate termination," satisfaction of this criterion is self-evident from this motion's configuration, i.e., seeking only dismissal with prejudice. *See* 28 U.S.C. § 1292(b) (West Pamph. 2011); *Veazey*, *supra*, at 477 (dismissal with prejudice only just sanction generally when failure exceeds period of limitation).