# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
|  | * | NO. 05-4182 |
|  | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
|  | * | SECTION "K" (2) |
| *Boutte v. Lafarge*          05-5531 | * | |
| *Mumford v. Ingram*     05-5724 | * | |
| *Lagarde v. Lafarge*      06-5342 | * | JUDGE |
| *Perry v. Ingram*             06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*         06-7516 | * | |
| *Weber v. Lafarge*         08-4459 | * | MAGISTRATE |
| *Parfait Family v. USA*  07-3500[1] | * | JOSEPH C. WILKINSON, JR. |

## LAFARGE NORTH AMERICA INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

[1] *Parfait Family v. United States,* No. 07-3500, remains stayed and administratively closed. Doc. 13525. However, this motion would apply equally to that case if it were ever to be reopened. *See* Doc. 32 in No. 07-3500 (granting summary judgment to Zito Fleeting, LLC and Zito Fleeting, Inc.).

**TABLE OF CONTENTS**

I.  PLAINTIFFS HAVE NOT ADDUCED EVIDENCE TO WITHSTAND SUMMARY JUDGMENT. .......................................................................................1

    A.  Summary Judgment on Causation is Appropriate. ..................................................1

    B.  Plaintiffs Have Not Adduced Evidence Establishing a Genuine Dispute of Material Fact. .........................................................................................................2

    C.  Plaintiffs' "New Evidence" Does Not Raise Any Genuine Dispute.......................3

        1.  Dr. Roy's reading of a satellite image raises no genuine fact dispute. ....................................................................................................... 3

        2.  Dr. Roy's interpretation of radar weather data raises no genuine fact dispute. ............................................................................................... 4

    D.  No Credibility Determinations are Required to Rule in LNA's Favor....................6

II. PLAINTIFFS' EVIDENTIARY AND PROCEDURAL OBJECTIONS ARE WITHOUT MERIT. ..............................................................................................................7

    A.  The Trial Record Is Properly Before the Court. ......................................................7

    B.  Plaintiffs Have Had Ample Opportunity for Discovery and "Due Process." ..........9

    C.  LNA's Motion Does Not Implicate Judicial Notice, "Class Treatment," Collateral Estoppel or Res Judicata. .....................................................................10

LIBW/1798052.6

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................2

*Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976) .......................................................................8

*Beiswenger Enters. Corp. v. Carletta*, 46 F. Supp. 2d 1297 (M.D. Fla. 1999) .............................8

*Berry v. Armstrong Rubber Co.*, 989 F.2d 822 (5th Cir. 1993) .....................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................2

*Dartez v. Fiberboard Corp.*, 765 F.2d 456 (5th Cir. 1985) ...........................................................8

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) ......................................................................5

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997)..........................................................10

*Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306 (5th Cir. 1998) (en banc) .................................4

*Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408 (5th Cir. 1993) .....................................................7

*Kraft Gen. Foods, Inc. v. Cattell*, 18 F. Supp. 2d 280 (S.D.N.Y. 1998) .........................................7

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ...................................................... *passim*

*Love v. Nat'l Med. Enters.*, 230 F.3d 765 (5th Cir. 2000) ..............................................................8

*Marcus v. St. Paul Fire & Marine Insurance Co.*, 651 F.2d 379 (5th Cir. 1981) ........................10

*Meza v. MSC Ship Mgmt. HK Ltd.,* 345 Fed. App'x 19 (5th Cir. 2009)..........................................4

*Michaels v. Avitech, Inc.*, 202 F.3d 746 (5th Cir. 2000) ................................................................4

*Poulis-Minott v. Smith*, 388 F.3d 354 (1st Cir. 2004) ....................................................................2

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998) ....................................................2

*Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606 (N.D. Ill. 2003),
    aff'd sub nom, *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664
    (7th Cir. 2004)..........................................................................................................................8

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 899 F. Supp. 974 (E.D.N.Y. 1994), *aff'd*, 47 F.3d 1158 (2d Cir. 1995) ............................................................... 8

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) .............................................................. 4

*Washington v. Allstate Ins. Co.*, 901 F.2d 1281 (5th Cir. 1990) ...................................................... 9

*Wells v. SmithKline Beecham Corp.*, 601 F.3d 375 (5th Cir. 2010) ................................................. 5

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004) (Sotomayor, J.) .................................... 2

**RULES:**

Fed. R. Civ. P. 30(b)(6) .................................................................................................................. 9

Fed. R. Civ. P. 56(c)(1)(A) ............................................................................................................. 7

Fed. R. Civ. P. 56(d) ...................................................................................................................... 9

Plaintiffs' opposition memorandum does not even begin to come to grips with the overwhelming evidence showing that the Barge ING 4727 did not cause, and could not possibly have caused, either of the two floodwall breaches on the Inner Harbor Navigation Canal ("IHNC") during Hurricane Katrina.  Because no reasonable jury could find in plaintiffs' favor, summary judgment in favor of Lafarge North America Inc. ("LNA") is appropriate and warranted on all remaining claims.  After six years, it is time to bring this litigation to a close.

Plaintiffs' opposition fails in every respect.  Despite having had six years to muster evidence to support their claims, plaintiffs are unable to respond to LNA's overpowering evidence with any of their own that would allow a reasonable jury to find in their favor.  Their only attempt – what plaintiffs call "new evidence" – takes the form of a conclusory expert affidavit that raises no genuine disputes of material fact and relies on the same theories the Court found "unreliable" in the June/July 2010 trial.  Though plaintiffs argue that "credibility determinations" are improper on summary judgment, LNA's motion does not require any such determinations.  Lacking supporting evidence, plaintiffs are reduced to asserting meritless evidentiary objections, pretending that they have not had an opportunity for discovery, and raising legal red herrings.  None of plaintiffs' arguments provides a basis to deny LNA's motion.

## I. PLAINTIFFS HAVE NOT ADDUCED EVIDENCE TO WITHSTAND SUMMARY JUDGMENT.

### A. Summary Judgment on Causation is Appropriate.

Plaintiffs initially argue (at 1, 5) that summary judgment on causation is improper because causation is "a question of fact."  Like any fact question, however, the issue of causation is amenable to summary judgment when the evidence would not allow a reasonable jury to find that the defendant's conduct caused the harm alleged by the plaintiff.  *E.g.*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-79 (5th Cir. 1994).  Thus, summary judgment on causation has been

granted and upheld in countless cases, including the ones cited in LNA's opening memorandum (at 5 & n.6), which plaintiffs' opposition simply ignores.[2]

### B. Plaintiffs Have Not Adduced Evidence Establishing a Genuine Dispute of Material Fact.

A party facing a motion for summary judgment must adduce *proof* sufficient to permit a reasonable jury to rule in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (party must "go beyond the pleadings" and produce evidence to support its claims); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("evidence" must be "such that a reasonable jury could return a verdict for the nonmoving party"). In particular, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Celotex Corp.*, 477 U.S. at 324 (party must "designate specific facts"). As the Fifth Circuit held in *Little*: "[i]f, after adequate time for discovery, a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point, and this is true irrespective of the type of case." 37 F.3d at 1076.

Apart from a single expert affidavit addressed below (at 3-5), plaintiffs' opposition makes no effort to adduce proof of any "specific facts" to support their position on any issue. Instead, plaintiffs completely abandon that responsibility, hiding behind the fiction that six years has not been enough time for them to develop their case. Opp. at 2, 11-12, 22.[3] Though

---

[2] Contrary to plaintiffs' argument (at 5-6), plaintiffs' attempted invocation of the burden-shifting *Pennsylvania* Rule does not affect the result. Courts regularly grant summary judgment in cases where plaintiffs attempt to invoke the *Pennsylvania* Rule. *E.g., Wills v. Amerada Hess Corp.*, 379 F.3d 32, 43-44 (2d Cir. 2004) (Sotomayor, J.); *Poulis-Minott v. Smith*, 388 F.3d 354, 364 (1st Cir. 2004). Plaintiffs cite no cases applying the *Pennsylvania* Rule to deny summary judgment where, as here, the plaintiff has not established an injury-causing allision, or where the defendant has shown that no reasonable jury could find for the plaintiff on causation *See* LNA Br. at 20-23.

[3] As we discuss below (at 9-10), all of the plaintiffs were full participants throughout the entire discovery period. Regardless, these plaintiffs have been litigants in these cases for nearly six years, more than enough time for them to have developed evidence sufficient to withstand summary judgment, if such evidence exists.

plaintiffs' response to LNA's statement of undisputed material facts purports to "dispute" every single fact, it does not cite even one single "specific fact" to form the basis for any purported "dispute." Plaintiffs' opposition thus reflects a complete failure of proof on their part.

### C. Plaintiffs' "New Evidence" Does Not Raise Any Genuine Dispute.

The only specific evidence cited in plaintiffs' opposition is an affidavit from Biswadev Roy, Ph.D., a "senior consultant" with a firm called "Data & Image Processing Consultants" in North Carolina. Opp. Ex. A ("Roy Aff."). Though plaintiffs tout Dr. Roy's affidavit as "new evidence" which provides "corroboration" of their case (Opp. at 10), in fact the affidavit raises not a single genuine fact dispute. Instead, Dr. Roy's affidavit provides only (1) a vague and conclusory interpretation of an unintelligible satellite image that would not affect the outcome in any event; and (2) a partial rehash of Dr. Mitchell's discredited meteorological testimony that, likewise, does not create any genuine fact dispute.

#### 1. Dr. Roy's reading of a satellite image raises no genuine fact dispute.

Dr. Roy's affidavit purports to conclude that a "high intensity pixel" in a satellite image taken on Sunday, August 28, represents the location of the ING 4727 "north and west of the Claiborne Avenue Bridge." Roy Aff. ¶ 15. However, no such conclusion or inference can be drawn from the graphic rendering of the satellite image accompanying the affidavit. Roy Aff. Ex. C. That image is nothing more than a series of low-resolution shaded squares which, according to Dr. Roy, distinguish between "water and man-made objects." Roy Aff. ¶ 13. Taking Dr. Roy at his word, the most that can be said about the dark pixels at the bottom of the page is that there may be a man-made object where the dark pixels are. But the dark pixels are situated where the Claiborne Avenue Bridge – a man-made object – appears in the corresponding picture, with the darkest pixel located at the site of the bridge pier. There is no basis to infer that

the darkest pixel must be a barge.[4] Unwarranted expert inferences are no basis to resist summary judgment. *Little*, 37 F.3d at 1077 (rejecting inference of causation where alternate inference was equally plausible); *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753-54 (5th Cir. 2000) (same).[5]

But even if plaintiffs had any real evidence that the barge was present in the IHNC on Sunday August 28, that would not raise a genuine dispute of material fact. To the contrary, Katrina's hurricane winds blowing from the northeast and then the north throughout the early morning hours on August 29 would have prevented the barge from being present at the floodwall when the breaches occurred, regardless of where it was the day before. As this Court wrote:

> "[E]ven if the Barge had been loose, … there is ***no possible way*** for a Barge without motor power to travel north from close to the Claiborne Bridge along the canal to near the Florida Avenue Bridge with the wind blowing from the north. Plaintiffs' contentions belie physics and common sense." Findings of Fact and Conclusions of Law ("FFCL"), Doc. 20149 at 17 (emphasis added).

In short, whether or not the barge was present in the IHNC on Sunday is not "material" because it was impossible for the barge to have been present at the IHNC floodwall when the breaches occurred on Monday.

      2.    <u>Dr. Roy's interpretation of radar weather data raises no genuine fact dispute.</u>

The second part of Dr. Roy's affidavit purports to interpret "NEXRAD level III wind data from the National Climatic Data Center (NCDC) Radar data archive for August 28 and 29, 2005" and to conclude that "mesocyclones created winds in all directions" at the IHNC on the

---

[4] LNA has strong grounds to believe that not even Dr. Roy has made that inference. *See* Doc. 20445 (requesting denial of privileged status for original version of Dr. Roy's graphic filed with the Court); *see Meza v. MSC Ship Mgmt. HK Ltd.,* 345 Fed. App'x 19, 21 (5th Cir. 2009) (affirming summary judgment where plaintiff's evidence showed only that condition was "possible"). Moreover, undisputed evidence shows that the weather on Sunday was calm, and that the mooring ropes on the ING 4727 came apart under forces so extreme that the strands melted and fused as they parted. *See* LNA Statement of Undisputed Material Facts ("SMF") ¶ 10. Thus Dr. Roy's speculation about what a dark pixel might mean creates no basis to infer that the barge broke free on Sunday in calm weather.

[5] *See also Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306, 318 (5th Cir. 1998) (en banc) (rejecting "conclusory, unsupported assertions") (citation omitted); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (same).

morning of August 29 that could have moved the barge to the breach sites. Roy Aff. ¶¶ 16, 24. In this respect, Dr. Roy's affidavit merely rehashes opinions expressed by Dr. Mitchell at the June 2010 trial and found "unreliable" by the Court. FFCL at 18.[6] Such evidence provides no basis to resist summary judgment. *E.g., Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 381 (5th Cir. 2010) ("unreliable" scientific evidence cannot forestall summary judgment).[7]

Moreover, taken on its own terms, the Roy affidavit proves nothing. Even assuming mesocyclones were present near the IHNC at the times reported in the Roy affidavit, his own data shows that those supposed mesocyclones passed through the area hours before the IHNC floodwall breaches occurred. Roy Aff. ¶¶ 17-20 (mesocyclones from 2:15 a.m. to 3:42 a.m.); FFCL at 22, 28-29 (North Breach at 6:00 a.m., South Breach at 7:00 a.m.). Thus Dr. Roy's affidavit provides no basis to conclude that the barge was present when the breaches occurred. Indeed, plaintiffs' theory requires the barge to have loitered in the vicinity of the breaches for several hours, resisting the prevailing hurricane winds from the north and northeast, and then somehow to have moved against the direction of the hurricane winds to strike the floodwall – a scientific impossibility. As the Court found, there is "no proof in the record that there was a force at work that could have propelled the Barge to hit the floodwall" at the time the breaches occurred. FFCL at 29. Certainly, Dr. Roy's affidavit supplies no such proof.[8]

---

[6] LNA has supplied a declaration from Mr. Lemon (Ex. 1 hereto) addressing points raised in Dr. Roy's affidavit and showing that: (a) Dr. Roy has not considered any "new" data; (b) Dr. Roy has no basis to opine that the Level III radar data for Katrina were dealiased; (c) Dr. Roy relies exclusively on a Level III algorithm that generates large numbers of "false alarms," whereas the Level II base data show there were no mesocyclones in the IHNC; (d) Dr. Roy's opinion regarding multidirectional winds at the IHNC is contradicted by the Level II base data showing winds from the north and northeast at all relevant times, with no multidirectional winds; and (e) Dr. Roy's opinion does not establish that any purported mesocyclonic winds reached ground level, and his data suggests the contrary.

[7] *See also Hathaway v. Bazany*, 507 F.3d 312, 318-19, 323 (5th Cir. 2007) (summary judgment warranted where specific factual support for the reliability of an expert's initial assumptions was lacking); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 824-25 (5th Cir. 1993) ("unreliable" expert opinion insufficient on summary judgment motion).

[8] Indeed, Dr. Roy's affidavit provides no scientific basis to permit a finding that any mesocyclones near the IHNC would have been capable of moving the barge at all. As the Court noted, "[m]icroburst winds last only three to five seconds, and … there is no way to calculate which way winds would blow after a microburst event," and thus there

### D. No Credibility Determinations are Required to Rule in LNA's Favor.

Plaintiffs' opposition argues (at 12-14) that LNA's summary judgment motion requires the Court to make "improper credibility determination[s]," citing certain comments on the evidence set forth in the Court's Findings of Fact and Conclusions of Law. Far from relying on credibility determinations, however, the Court based its findings on an "overwhelming" record of scientific, physical and photographic evidence which demonstrates that it was physically impossible for the barge to have caused either of the breaches. FFCL at 41. In particular:

- The Court found that scientific evidence including "fundamental laws of physics" established "beyond peradventure" the direction of the prevailing hurricane winds from the northeast and north. FFCL at 15, 17, 24.

- The Court found that "the physical evidence indicates overwhelmingly that the floodwall cataclysmically failed prior to the Barge coming into contact with the floodwall." *Id.* at 25-26.

- The Court found that "photographic evidence proves that the breaching had already occurred prior to the Barge hitting the floodwall." *Id.* at 36.

The Court's rejection of plaintiffs' theories was not based on "credibility," but rather because plaintiffs' contentions "belie physics and common sense" (FFCL at 17), their expert evidence was "unreliable" (*id.* at 18), and their fact testimony was both "equivocal" and "physically impossible" (*id.* at 23).[9] The record firmly supports these conclusions, and no reasonable jury could find otherwise, rendering summary judgment appropriate. *See* LNA Br. at 7-20.[10]

---

is "no evidence … that a three to five second wind burst(s) [would have been] sufficient to move the Ingram Barge in the manner which is required for plaintiffs' theory of the case to be based in reality." FFCL at 18-19.

[9] For example, plaintiffs mischaracterize the Court's opinion in suggesting (at 13) that the Court made a credibility determination in finding that their expert Mr. Pazos was "not persuasive," when in fact the Court's opinion makes clear that the Court rejected his theory as "impossible." FFCL at 24.

[10] Plaintiffs have no answer for the ample case law cited in LNA's opening brief (at 2-7, 9) showing that summary judgment is appropriate, even if the plaintiff purports to have testimony supporting its position, where that testimony is "impossible" or "equivocal" or, in the case of experts, "unreliable." Though plaintiffs cite cases (at 5, 12) which recite boilerplate propositions about credibility determinations and weighing of evidence, those cases do not disavow the propriety of summary judgment in the circumstances presented here and in the cases cited by LNA.

## II. PLAINTIFFS' EVIDENTIARY AND PROCEDURAL OBJECTIONS ARE WITHOUT MERIT.

### A. The Trial Record Is Properly Before the Court.

Plaintiffs claim (at 6-7) that it is improper to base summary judgment on the prior trial's record, but disregard the seven expert declarations provided by LNA (Exs. 36-42) *specific to this motion.* Each expert declared that he would provide the same opinions and testimony in any future trial. For this simple reason, LNA has overcome any objection plaintiffs might have had to the Court's consideration of these experts' opinions, which form the core of LNA's motion. *See* Fed. R. Civ. P. 56(c)(1)(A) (party may rely on "affidavits" to support summary judgment).[11]

Moreover, and in any event, it is entirely proper for LNA to rely on testimony from the prior trial because, as shown by the numerous cases cited in LNA's opening brief (at 5-6), such testimony is sworn evidence, just like affidavits, and thus may be used to support a summary judgment motion. Though plaintiffs attempt (at 6-7) to distinguish LNA's cases on their facts, they offer no principled basis for treating sworn trial testimony differently from sworn affidavits. In any event, plaintiffs' attempt to distinguish LNA's cases fails because the cases place no weight on the distinctions plaintiffs draw (*i.e.*, whether the prior testimony was taken in the "same action" or was relied upon by "both sides" to the later action). *E.g., Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993); *Kraft Gen. Foods, Inc. v. Cattell*, 18 F. Supp. 2d 280, 284 (S.D.N.Y. 1998) (prior trial transcript and affidavit are "comparable in that each form of testimony is sworn and submitted without cross-examination by the adverse party").[12] Many other cases make clear that prior trial testimony can be used to support a motion

---

[11] Moreover, LNA's experts' depositions and reports are admissible because all plaintiffs were represented at the expert depositions at which the experts testified about the reports. See below at 9-10.

[12] If it were relevant whether the prior testimony was taken in the "same action" and/or was relied upon by "both sides," LNA notes that both conditions are satisfied here because the prior testimony is from *In re Katrina* and because plaintiffs' opposition relies upon the trial record in opposing summary judgment (*e.g.*, at 9).

7

for summary judgment "even when from a proceeding in which the parties, subject matter, and counsel are not the same." *Beiswenger Enters. Corp. v. Carletta*, 46 F. Supp. 2d 1297, 1299 (M.D. Fla. 1999).[13] Plaintiffs' argument (at 6-9) that prior testimony would be inadmissible hearsay in a later trial is irrelevant because the prior testimony is proffered in support of summary judgment, not as trial testimony, and "summary judgment evidence need not be in 'a form that would be admissible at trial.'" *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000) (citation omitted).[14] For their part, plaintiffs cite no cases holding that it is improper to use prior trial testimony to support a summary judgment motion in another matter.

Finally, plaintiffs' argument that the Court must ignore the previous trial record flies in the face of everything they have previously told this Court about the purpose of those trial proceedings, and confounds common sense. In 2009, plaintiffs requested a three-month continuance of the trial date to allow their expert Dr. Marino to finish his work, promising that his work would be "of critical importance to this Court achieving the overarching objective of the test trials in producing a representative verdict ***that can be used for resolving related cases***." Doc. 18130-1 at 2, 5 (emphasis added). By contrast, plaintiffs' current argument would require the parties and the Court to jettison all the work that has been done to date and start over from scratch, as if no evidence had been taken during these past six years – a nonsensical result.

---

[13]*See also Askew v. Bloemker*, 548 F.2d 673, 679 (7th Cir. 1976) (defendant may cite transcripts from prior trial that did not involve the plaintiff); *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606, 614 (N.D. Ill. 2003) ("Prior testimony under oath … may be considered on summary judgment because the person is likely to provide the same testimony if called to testify at trial. It is well settled that testimony given at the trial of a different case may be considered on summary judgment."), *aff'd sub nom*, *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664 (7th Cir. 2004); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 899 F. Supp. 974, 985 (E.D.N.Y. 1994) (rejecting argument that parties must be same), *aff'd*, 47 F.3d 1158 (2d Cir. 1995).

[14] Moreover, contrary to plaintiffs' argument (at 8-9), prior trial testimony ***would*** be admissible at a subsequent trial if any witnesses became unavailable because the four bellwether plaintiffs had identical interests in developing the testimony to those of the remaining plaintiffs. *E.g., Dartez v. Fiberboard Corp.*, 765 F.2d 456, 462-63 (5th Cir. 1985) (prior testimony admissible based on opportunity and similar motive for other defendant to cross-examine).

8

### B.     Plaintiffs Have Had Ample Opportunity for Discovery and "Due Process."

Plaintiffs attempt a "due process" argument by falsely asserting that they were "nonparticipants" during the years that discovery proceeded in these cases and thus, after six years, that they "have not conducted any discovery" and "ha[ve] not had an opportunity to develop their case." Opp. at 2, 11-12, 22 & Ex. B. The record easily refutes plaintiffs' assertion. Pursuant to this Court's orders, discovery proceedings in these cases expressly and explicitly included "each and every named plaintiff in any of the referenced cases." Doc. 12824 at 2-3; *see also* Docs. 7724, 12935 (setting discovery deadlines for all parties). Throughout the discovery period, plaintiffs' written discovery requests and deposition notices for fact and expert witnesses were captioned and served in ***all*** of the pending cases and were noticed on behalf of "the Barge Plaintiffs." *E.g.*, Doc. 12871 (Rule 30(b)(6) deposition notice on LNA); Ex. 2 hereto (examples of deposition notices and transcripts of fact and expert depositions); Ex. 3 hereto (examples of written discovery requests and responses by LNA). Indeed, the four bellwether trial plaintiffs were not even selected until March 16, 2009 (*see* Doc. 18164) – a week ***after*** discovery had closed in all of the pending cases (*see* Doc. 12935 at 9). In short, the remaining plaintiffs have had every opportunity to participate in discovery and to develop their evidence over the past six years, and cannot now be heard to suggest otherwise.[15]

Similarly, there is no merit to plaintiffs' argument (at 23-25) that granting summary judgment to LNA would deny plaintiffs their "day in court" or constitute inappropriate reliance on the "results from a bellwether trial." The Fifth Circuit in *Little* handily dismissed the "day in

---

[15] Leaving aside the falsity of plaintiffs' position that they have had no opportunity to take discovery, their Rule 56(d) affidavit does not even begin to satisfy the requirements of that rule for opposing a summary judgment motion on the ground that more discovery is needed. Under the case law, plaintiffs must explain specifically what discovery they need and how it might overcome summary judgment. *E.g., Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (plaintiffs "may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts"). Plaintiffs' affidavit (Opp. Ex. B) identifies no such discovery, but rather focuses only on generalities and/or their own expert evidence, which they have already had six years to develop.

court" argument, holding that "no one … should be heard to question the fairness of requiring a party to meet basic evidentiary and procedural burdens" and that "[s]ummary judgment requires no more."  37 F.3d at 1076.[16]  Regarding bellwether trials, the Fifth Circuit noted in *In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997) that "[t]he notion that the trial of some members of a large group of claimants may provide a basis for … resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar."  *Id.* at 1019.  Granting summary judgment in favor of LNA would be entirely consistent with these principles.

### C. LNA's Motion Does Not Implicate Judicial Notice, "Class Treatment," Collateral Estoppel or Res Judicata.

Finally, there is no merit to plaintiffs' arguments that LNA is somehow seeking improper "class treatment" (Opp. at 14), or "improperly ask[ing] the Court to take judicial notice" (Opp. at 20), or "attempt[ing] to apply the doctrines of *res judicata* and/or collateral estoppel to Plaintiffs' claims" (Opp. at 15-20).  None of these concepts appears anywhere in LNA's motion papers, and all of them are legal straw men set up by the plaintiffs in the hope of avoiding their burden of adducing evidence to support their claims.  LNA's motion does not appeal to legal doctrines as a way to avoid consideration of the evidence.  Rather, LNA's motion asks the Court for nothing more than a straightforward assessment of the evidence, which overwhelmingly proves that "the Barge did not do it" (FFCL at 41), such that no reasonable jury could find otherwise.

### CONCLUSION

The Court should enter summary judgment in favor of Lafarge North America Inc. on the claims of all remaining plaintiffs in all "Barge Track" cases.

---

[16] Plaintiffs' citation (at 22) to *Marcus v. St. Paul Fire & Marine Insurance Co.*, 651 F.2d 379 (5th Cir. 1981) is unavailing.  There, the Fifth Circuit held that a district court may deny summary judgment for "policy

Dated: October 4, 2011                    Respectfully submitted,

                                                       Derek A. Walker (#13175)
                                                      Robert B. Fisher, Jr., T.A. (#5587)
                                                       **CHAFFE MCCALL, L.L.P.**
                                                       2300 Energy Centre
                                                       1100 Poydras Street
                                                       New Orleans, LA  70163-2300
                                                       Telephone:  (504) 585-7000
                                                       Facsimile:  (504) 585-7075
                                                       Fisher@chaffe.com
                                                       Walker@chaffe.com

                                                       /s/ John D. Aldock
                                                       John D. Aldock
                                                       Richard M. Wyner
                                                       Mark S. Raffman
                                                       **GOODWIN PROCTER LLP**
                                                       901 New York Avenue, N.W.
                                                       Washington, DC  20001
                                                       Telephone:  (202) 346-4240
                                                       jaldock@goodwinprocter.com
                                                       rwyner@goodwinprocter.com
                                                       mraffman@goodwinprocter.com


                                                       Daniel A. Webb (#13294)
                                                       **SUTTERFIELD & WEBB, LLC**
                                                       Poydras Center
                                                       650 Poydras Street, Suite 2715
                                                       New Orleans, LA  70130
                                                       Telephone:  (504) 598-2715

                                                       ***Attorneys for Lafarge North America Inc.***

---

considerations" if plaintiffs have not had "an opportunity to fully develop [their] case." *Id.* at 382.  Here, plaintiffs have had six years and full discovery, and thus *Marcus* has nothing to say to the current motion.

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 4, 2011.

                                           /s/ John D. Aldock