UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
| PERTAINS TO: ALL BARGE | * * * | NO. 05-4182 and consolidated cases |
| AND | * * | SECTION "K" (2) |
| WEISLER V. SEYMOUR, ET AL NO. 09-2737 | * * * * * | JUDGE STANWOOD R. DUVAL, JR. |
| | * * | MAG. JOSEPH C. WILKINSON, JR. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT.

Improperly named defendant Brian A. Gilbert and the Law Office of Brian A. Gilbert, P.L.C. respectfully move for summary judgment as to the issues of agency, disregard of corporate status, and amenability of the Louisiana Open Account statute to the claims of Dr. Weisler.

*Agency*

See *Blann v. Aldige*, 712 So.2d 1052, 97-1080 (La.App. 5 Cir. 5/27/98) [(1) evidence supported finding that no oral contract existed between expert and co-counsel; (2) trial attorney was not acting as co-counsel's agent]. Louisiana courts have long recognized that when an agent fails to fully disclose to a third party that he or she is

1

acting as an agent for an undisclosed principal,[1] then as a consequence of the omission, the agent becomes personally liable for what might otherwise be characterized solely as a debt of the principal.[2], [3]

Importantly, in *J.T. Dorion, Inc. v. Lundin*,[4] the First Circuit noted that the general rule of disclosure places an *affirmative duty on the agent* to tell those with whom he is dealing that he is an agent acting for a certain principal. Absent disclosure of a special status, the **law presumes that a person is acting in his individual capacity and holds him personally liable for his actions**. Generally, the imposition of personal liability on an agent for an undisclosed principal is not regarded as an extreme measure.[5] Louisiana jurisprudence is replete with decisions imposing individual liability on undisclosed agents.[6]

In addition, the Louisiana legislature codified the rule in LA. C.C. art. 3017, which provides that "[a] mandatary who contracts in his own name without disclosing his status as a mandatary binds himself personally for the performance of the contract." For an agent of an undisclosed principal to avoid personal liability for the debt of the

---

[1] Pursuant to the Restatement (Second) of Agency § 4(3), if the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal.

[2] *Andrus v. Bourque*, 442 So.2d 1383 (La. App. 3rd Cir. 1983) (holding that Louisiana law had long provided that an agent who fails to disclose his status, becomes personally liable for debts incurred at his request, even if the work is done to benefit the principal) *citing Prevost v. Gomez*, 251 So.2d 470 (La. App. 1st Cir. 1971); see also, *Pat's Furniture Showrooms, Inc. v. The Furniture Warehouse of Houma, Inc.*, 392 So. 2d 145 (La. App. 1st Cir. 1980) (holding that an agent has the duty to disclose his capacity as such if he is to escape personal liability for his acts).

[3] See also Exhibit A, Weisler Deposition at 207-208 wherein he states that Shawn Khorrami was to pay his bill.

[4] 385 So.2d 450, 452 (La. App. 1st Cir. 1980)

[5] 8 La. Civ. L. Treatise, Business Organizations §§ 33.04, 33.05

[6] See, e.g., *Pat's Furniture Showrooms, Inc..*, 392 So.2d at 145. *See also Eastin v. Ramey*, 257 So.2d 717 (La. App. 3rd Cir. 1972); *Chartres Corp. v. Twilbeck*, 305 So.2d 730 (La. App. 4th Cir. 1974); *G.T.M. Carpet Co. v. Richards*, 534 So.2d 539 (La. App. 5th Cir. 1988).

principal, the required disclosure of the agency relationship *must occur contemporaneously with the creation of the contract* with a third party; it follows, therefore, that disclosure cannot relieve the agent of liability if it comes at any point after the contract is formed.[7]

There is no question that Mr. Fuchsberg did not disclose the existence of an agency relationship with any of the individual named attorneys, any of the law firms that comprise the Barge PSLC or even with the Barge PSLC at the point of the alleged oral agreement with Dr. Weisler.

> Q.  *On that day Alan Fuchsberg didn't tell you that the Barge PSLC was going to pay your bill, correct?*
> A.  *No,* he said the small group of attorneys.
> Q.  Okay, so the answer is correct, he didn't tell me the Barge PSLC, he told me that the small group of attorneys was going to pay my bill?
> A.  That's correct.
> MR. WILSON: On May 16th.
> A.  On May 16th.
> Q.  And that's when you came to a meeting of the minds with Alan Fuchsberg about the work you were going to perform, correct?
> A.  That date is the correct date, yes. And again I do have a hearing problem.
> Weisler 60:11 to 61:3
>
> Q.  At that time did Mr. Fuchsberg say to you that *all the persons, all the firms listed on the class certification* are going to pay your bill?
> A.  I don't remember that.
>
> Q.  But Mr. Fuchsberg didn't say the people listed on the class certification are going to pay your bill, correct? He entered into an

---

[7] *Melancon v. Keller*, 136 So.2d 67, 69 (La. App. 4th Cir. 1962) (holding that disclosure of agent was required "at the time of making the contract."); *Tri-State Oil Tool Co. of Southern La. V. Pioneer Oil & Gas, Inc.*, 135 So.2d 297 (La. App. 4th Cir. 1961) (holding that notice of the fact of agency and the identity of the principal must be given at the time of contract to be sufficient disclosure to avoid liability); *Williams v. O'Bryan*, 257 So.2d 174 (La. App. 3rd Cir. 1972) (holding that disclosure of agency years after establishing an open account was untimely).

> oral agreement with you on behalf of himself and what he represented was a small group of attorneys, correct?
> A.   He did say a small group of attorneys, yes.
> Weisler 38:7-13

Applying the aforementioned rules set forth above to the matter at hand, the burden of fully disclosing agency rested on Mr. Fuchsberg at the time of contracting with Dr. Weisler; and, in light of Mr. Fuchsberg failure to disclose an agency relationship his firm or any other firm or even the Barge PSLC at the point of contract formation, Mr Fuchsberg, as a result, is liable in his individual capacity for the amount due for the work performed under the contract.

Courts have consistently recognized that in the absence of express disclosure, the burden of proof falls on the party alleging agency to prove through a preponderance of the evidence *that the third party had notice of the existence of the agency relationship at the time of contracting*.[8]  Dr. Weisler can not establish, that he had notice of an agency relationship between Mr. Fuchsberg and any of the named defendants or named law firms in the within lawsuit.  It is clear that Mr. Fuchsberg never disclosed to Dr. Weisler the names of the alleged "small group of attorneys" that he was contracting on behalf, or the names of the law firms, that he was allegedly acting as agent for.

---

[8] *J.T. Dorion*, 385 So.2d at 452-53 (holding that the person who claims to have been acting as an agent bears the burden of proof at trial to show his special status, and that the status was disclosed). See also, *Marmedic, Inc. v. Int'l Ship Mgmt. & Agency Services*, 425 So.2d 878 (La. App.4th Cir. 1983); *American Plumbing Co., Inc. v. Hadwin*, 483 So.2d 169 (La. App. 2nd Cir. 1986) *writ denied*, 486 So.2d 756; *Andrus v. Bourque*, 442 So.2d 1383 (La. App. 3rd Cir. 1983); *C.T. Traina Plumbing & HeatingContractors, Inc. v. Palmer*, 580 So.2d 525 (La. App. 4th Cir. 1991) *writ denied*, 584 So.2d 1166.

It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only that he is acting in a representative capacity, but also the identity of the principal.[9]

> Q. Okay, but he didn't say who those attorneys were, correct?
> A. A group of attorneys.
> Q. Is it correct that he didn't say who they were, he just said a group of attorneys?
> A. He didn't know.
> Q. And that would be Alan Fuchsberg didn't know, correct?
> A. No, I didn't say Alan Fuchsberg didn't know, what I'm trying to say is that --
> Q. Is you didn't know?
> A. *He told us it was a group of attorneys.*
> Q. *Right, nothing more, nothing less, correct?  Correct?*
> A. *That's correct.*

Weisler 41:2 to 42:5(emphasis added).

### *Corporate Status*

Dr. Weisler has alleged breach of contract and open account causes of action against individual attorneys including but not limited to Brian A. Gilbert.  However, at all times pertinent, Brian A. Gilbert acted in his corporate capacity through Law Office of Brian A. Gilbert, P.L.C., a Louisiana corporation established in 2005 and in existence through the present.  Weisler, as a matter of fact and law, has no basis for asking the Court to disregard this corporate status.

**12:807. Liability of incorporators, subscribers, shareholders, directors, officers and agents**

A. A subscriber to, or holder of, shares of a professional law corporation shall be under no liability to the corporation with respect to such shares, other than the obligation of complying with the terms of the subscription therefor, and said obligation shall continue whether or not his rights or shares have been assigned or transferred.

---

[9] See *Atlantic Salmon A/S v. Curran*, 591 N.E.2d 206 (Mass. App. Ct. 1992).

B. A shareholder shall not be personally liable for any debt or liability of the corporation.

C. Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against an incorporator, subscriber, shareholder, director, officer or agent of the corporation, because of any fraud practiced upon him, or because of any breach of professional duty or other negligent or wrongful act, by such person, or in derogation of any right which the corporation may have against any of such persons because of any fraud practiced upon it by him.

Added by Acts 1964, No. 354, § 1. Renumbered from R.S. § 12:907 by Acts 1968, No. 105, § 3, eff. Jan. 1, 1969.

Weisler does not allege fraud. Weisler was never a client to whom any professional duty was owed. Weisler does not allege negligence or wrongful act. He alleges a breach of contract and an open account. The statute affording protection to owners of professional law corporations admit of no disregard of corporate status and protection predicated upon the matters Weisler alleges. Jurisprudence is in accord.

> "Professional law corporations are subject to all of the general provisions of the Louisiana Business Corporation Law except when those general provisions are inconsistent with the specific provisions found in La.R.S. 12:801, et. seq. Those specific provisions regard the fact that a PLC is also governed by the laws related to the practice of law and is subject to the discipline of the Supreme Court. La.R.S. 12:802 and 815. Like shareholders in an ordinary corporation, a shareholder in a PLC "shall not be personally liable for any debt or liability of the corporation." La.R.S. 12:807(B). But, by specific provision, that rule does not affect claims against the attorney-shareholder for fraud, negligent or wrongful act, or breach of professional duty. La.R.S. 12:807(C)."
>
> *Davenport V. Bellsouth Corp.*, 07-0691 (W.D.La. 9-17-2007) (R and R)
>
> "A lawyer may own all of the stock in the PLC, but the PLC is still a legal entity separate and distinct from the individual who owns its shares. P. Charles Callahan, APLC v. Scottsdale Ins. Co., 903 So.2d 1251, 1257-58 (La.App. 3rd Cir. 2005). A right of action possessed by the PLC "lies solely with the corporation, even though only one person owns the stock." Id."

6

*Id.*

"Under Louisiana law, 'corporations are distinct legal entities, separate from the individuals who comprise them.' As such, shareholders are not liable for the debts of the corporation as a general rule." *Huard* v. *Shreveport Pirates, Inc.,* 147 F.3d 406 (5th Cir. 1998) at 409. "Under Louisiana law, 'corporations are distinct legal entities, separate from the individuals who comprise them.' As such, shareholders are not liable for the debts of the corporation as a general rule." *Huard* v. *Shreveport Pirates, Inc.,* 147 F.3d 406 (5th Cir. 1998) at 409. As put more succinctly by the court, "Louisiana courts are reluctant to hold a shareholder, officer, or director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrong-doing." *ld.* When fraud has not been alleged, a plaintiff seeking to pierce the corporate veil **bears a heavy burden of proof in** demonstrating that the corporate form has been disregarded by the shareholders to the extent that the corporation and shareholders are indistinguishable. *Chisholm at* 3. (emphasis added) In the present instance, Dr. Weisler's complaint contains no allegations of fraud, malfeasance or criminal wrong-doing.[10]

Weisler likewise has no proof that the Law Office of Brian A. Gilbert, P.L.C. failed to maintain a corporate footing. The five factors that the courts typically evaluate in order to determine if the corporation is merely an "alter ego" are: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular

---

[10] See also Smart v. Gold, 955 So.2d 263 (La. App. 3 Cir. 4/4/07), cert denied, 959 So.2d 497 (6/22/07) (affirmaing dismissal of individual members of law firm where plaintiff did not plead any acts of deception or misleading acts on their part).

7

shareholder and director meetings. *Huard* citing *Riggins* at 409, 410. Weisler has no proof of any of the foregoing.

Attached exhibits include excerpts of the firm's 2008 corporate tax return, evidence of separate corporate and personal accounts which have been unchanged and active throughout the corporate existence, public information available on the Secretary of State's website, as well as information Dr. Weisler admits in his deposition that he gleaned from the Barge PSLC's website demonstrating that Law Office of Brian A. Gilbert, P.L.C. was and still is the means by which its shareholder does business. ***Exhbits C*** through ***E***. Weisler is expected to respond with reference to a defunct email address that the Law Office of Brian A. Gilbert sometimes used in 2008. While it is true that this was a personal email account serving Brian A. Gilbert's residence at the time, it is unreasonable to fathom that an attorney working from home after hours or weekends or during times out of the office sheds his corporate identity. ***Exhibit F*** is one such example. Please note that the corporate email account is included also, and that the subject of the email concerns strictly professional matters involving the Barge Litigation. Note the earlier email from Weisler directed only to the office account. Weisler has no proof whereby he can claim that he did not know that any involvement was that of Law Office of Brian A. Gilbert. There is no material fact posing any question as to shifting identities. Moreover, the fact that he claims not to know who he was allegedly contracting-with relieves those whose identities he did not know.

## *Open Account*

Dr. Weisler's open account claim is without merit. First, "[f]or there to be an action on an open account, there must necessarily be a contract which gave rise to the debt." *Blackie's Rental Tool & Supply v. Vanway*, 563 So.2d 350, 353 (La.App. 3 Cir.1990). A creditor suing on open account must prove that the debtor contracted for the sales on open account. *Id*; *Advertiser Div. v. Southwest Mortg. & Inv*., 424 So.2d 1284 (La.App. 3 Cir.1982). When there is no meeting of the minds between the parties, there is no consent, thus no enforceable contract. La.Civ.Code art.1927. To prevail on suit on open account, *the creditor must prove that the debtor contracted* for services on open account, and thus there must necessarily be a contract which gave rise to debt. *Dixie Mach. Welding & Metal Works, Inc. v. Gulf States Marine Technical Bureau, Inc*., App. 5 Cir.1997, 692 So.2d 1167, 96-869 (La.App. 5 Cir. 3/12/97).

That there was no written contract, and that there was no meeting of the minds as to whom was contracting at the time an oral contract was formed with Mr. Fuchsberg, are undisputed. A "meeting of the minds" is necessary to establish an open account. *Dixie Machine v. Gulf States Marine Technical Bureau, Inc.,* 692 So.2d at 1170.[11] *See Kenner Industries, Inc. v. Sewell Plastics, Inc.,* 451 So.2d 557, 560 (La.1984). *See also Barco Projection Systems, Inc. v. Alliance Business Projects, Inc.,* 2003 WL 21355467 (E.D. La. June 6, 2003); *Freedom Alarm Service, Inc. v. Simplex Time Recorder Co.,* 1999 WL 319212 (E.D.La. May 19, 1999)). Where there is *no contractual relationship between parties, there can be no recovery on open account basis*. F. Christiana & Co., Inc. v. Matt's Grocery, Inc., No. 2, App. 4 Cir.1996, 674 So.2d 419, 1995-2073 (La.App. 4 Cir.

---

[11]The evidence does not establish "a meeting of the minds" to establish an open account. The dealings between defendants and Pipeworks constitute a construction contract. Jacobs contracted for Pipeworks to provide materials for use in specific construction project. The parties did not agree to a course of dealings over a period of time. Rather, they agreed on specific contracts for a specific project-albeit a contract and project that would take considerable time to complete. Such an agreement is a construction contract.

5/8/96). To prevail on a suit on open account, the *creditor must prove that the debtor contracted* for the services on an open account. There must necessarily be a contract which gave rise to the debt. *Vezina and Associates v. Gottula*, 94-593 (La.App. 5 Cir. 3/1/95), 652 So.2d 85; writ denied 95-825 (La.5/5/95), 654 So.2d 332. *One who sues on open account has the burden of proving the contract*. *Deubler Elec. v. Knockers of Louisiana,* 95-372 (La.App. 5 Cir. 11/15/95), 665 So.2d 481.

Please see *Greenfield Commercial Credit V. Catlettsburg Refining*, C.A. 03-3391 K(2) (E.D.La. 1-29-07), in which Your Honor wrote:

> La.Rev.Stat. 9:2871 A. The statute defines "open account" to include "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of the contracting the parties expected future transactions." La.Rev.Stat. 9:2781 D.
>
> The party seeking a judgment under the open account statute has the burden of proving the open account contract. *Dixie Machine Welding & Metal Workers, Inc. v. Gulf States Marine Technical Bureau*, 692 So.2d 1167, 1169 (La.App. 4th Cir. 1997). It is well established that an open account is analogous to a credit account. *Id.*; *Tyler v. Haynes*, 760 So.2d 559, 562 (La.App. 3rd Cir. 2000). In determining whether a course of dealings constitutes an open account, courts have consistently examined the following factors:
>
> • whether there were other business transactions between the parties;
>
> • whether a line of credit was extended by one party to the other;
>
> • whether there are running or current dealings; and
>
> • whether there are expectations of other dealings.
>
> *Salley & Salley v. Stoll*, 864 So.2d 698, 704 (La.App. 5th Cir. 2003); *Dixie Machine v. Gulf States Marine Technical Bureau*, 692 So.2d at 1169.
>
> An open account is an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings. Services are recurrently granted over a period of time.

> A contract, however, is an agreement between two or more parties in which an offer is made by one of the parties and acceptance is made by the other party, thereby establishing a concurrence in understanding the terms. *Tyler v. Haynes*, 760 So.2d at 563.
>
> The contract for the Catlettsburg project was not the only contract between Pipeworks and Jacobs; those parties also had a contract for the Valero project. However, the parties did not have a continuous business relationship, and there is no evidence that either party anticipated future business dealings. There is also no evidence suggesting that any formal line of credit was extended.

A "meeting of the minds" is necessary to establish an open account. *Dixie Machine v. Gulf States Marine Technical Bureau, Inc.*, 692 So.2d at 1170. The evidence does not establish "a meeting of the minds" to establish an open account. The dealings between defendants and Pipeworks constitute a construction contract. Jacobs contracted for Pipeworks to provide materials for use in specific construction project. The parties did not agree to a course of dealings over a period of time. Rather, they agreed on specific contracts for a specific project — albeit a contract and project that would take considerable time to complete. Such an agreement is a construction contract. *See Kenner Industries, Inc. v. Sewell Plastics, Inc.*, 451 So.2d 557, 560 (La. 1984). *See also Barco Projection Systems, Inc. v. Alliance Business Projects, Inc.*, 2003 WL 21355467 (E.D. La. June 6, 2003); *Freedom Alarm Service, Inc. v. Simplex Time Recorder Co.*, 1999 WL 319212 (E.D. La. May 19, 1999)). This is not a suit on an open account, consequently, Greenfield is not entitled to attorneys fees on this claim.

Dr. Weisler's invoice must be capable of precise accounting, a definite figure, for open account to serve as a remedy. Dr. Weisler admits in his deposition that this is not the case. **Exhibit A**, Weisler Deposition, 217-225. He admits that he estimated, rounded-off, and reconstructed time he claims to have spent and for which he billed. No

11

Affidavit of Correctness can overcome such testimony. Jurisprudence is widespread on this point. See for example *Frank L. Beier Radio v. Black Gold Marine*, 449 So.2d 1014 (La. 1984):

> [13] La.R.S. 9:2781 is now such a statute. *A Better Place Inc. v. Giani Investment Co.,* 445 So.2d 728 (1984). In A *Better Place, Inc.,* 445 So.2d at 734 we said that La.R.S. 9:2781 "entitles a person seeking debt collection on an open account to recover reasonable attorney fees only if he [has] sent written demand 'correctly setting forth the amount owed.'" In *A Better Place,* the demand letter sought payment for several items of drug paraphernalia for which no lawful obligation was owed. Because of our decision rejecting part of the claim on the open account, we found that A Better Place was not entitled to attorney fees under La.R.S. 9:2781. *Accord, Rodriguez-Farr Ins. Agency, Inc. v. Sharp,* 431 So.2d 889 (La.App. 2d Cir. 1983) [Demand letter contained a bookkeeping error and service charges not legally owed.]; *Texas Industries Inc. v. Roach,* 426 So.2d 315 (La.App. 3d Cir. 1983) [Demand letter was for $11,885.84; the trial judge concluded the correct balance due on the account was $9,240.70.] *Scarborough v. Nelson,* 371 So.2d 1261 (La.App. 3d Cir. 1979) [The amount demanded was $6,021.87, excessive by $1,187.68.]
>
> [14] Counsel for Beier Radio suggests that this case differs from *A Better Place* and from the several appellate cases which strictly construed the language in La.R.S. 9:2781. Counsel for Beier Radio suggests a dispositive difference because, in this case, the principal amount demanded was found due and owing and it was only the demanded interest which was disallowed in court. We find that it makes no difference that the excessive amount billed to Black Gold was interest rather than principal. La.R.S. 9:2781 strictly construed requires no inquiry into the reason for the error in the amount demanded. It simply requires "written demand . . . correctly setting forth *amount owed* . . . ", as a prerequisite to liability for attorney fees.
>
> [15] In this case the demand letter asserted that the amount due and owing was $21,361.11. Litigation was threatened if $21,361.11 were not paid in full within thirty days. $21,361.11 was not the correct amount owed. Accordingly attorney fees under La.R.S. 9:2781 should not have been awarded.

Statutes authorizing attorney fees are construed strictly because an award of attorney fees is exceptional and penal in nature. *White v. Elizabeth*, 986 So.2d 202

(La.App. 2 Cir. 6/4/08).  *Cf. Newman v. George*, 968 So.2d 220 (La.App. 4 Cir. 9/26/07), which stated:

> In *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014, (La. 1984), the Supreme Court stated the amount due must be correctly stated in the demand letter. *Id.* at 1015. Moreover, because the award of attorney's fees is penal in nature, the Supreme Court concluded that La.R.S. 9:2781 must be strictly construed. *Id.* Incorrectly adding interest to the principal amount due in the demand letter was enough to disallow a claim for attorney's fees. *Id.* at 1016. The Supreme Court noted that the reason for the error in the demand letter is immaterial. *Id.; See also, Southern Nights, Inc. v. Barnett*, 04-0411, p. 4 (La.App. 4 Cir. 8/18/04), 881 So.2d 1225, 1229.

Dr. Weisler's services for which Mr. Fuchsberg contracted were a one time litigation expense, not susceptible of open account status.  Please see *Greenfield*, *supra* (whether there were other business transactions between the parties; whether a line of credit was extended by one party to the other; whether there are running or current dealings; and whether there are expectations of other dealings.)   Please also see *Brooks-Harbour & Associates Inc. v. Mustakas*, 562 So.2d 1089 (La.App. 4 Cir.,1990) (Deposition of opposing party's expert witness is not "professional service" within meaning of open account statute; although expert may be deposed and customarily charges fee, fee should be handled as any other litigation cost and does not fall within scope of open account statute.)

> Please See ***Exhibit A***, Weisler deposition at p. 241:3-16:
>
> > Q.   This was the contract for services in
> > support of litigation, correct?
> > MR. SEYMOUR:  A contract -- let me
> > repeat.  Brian Gilbert asked was this a contract for
> > services to support litigation.
> > A.   Yes, I was part of this case so it would
> > be related to the litigation that you were doing.
> > Q.   Okay.  So it would be in support of
> > litigation, correct?

13

> A. Yeah, I certainly would not have done this on my own going down to New Orleans and evaluating people?
> Q. Is it fair for you to say the answer is yes?
> A. Yes

Here, as Dr. Weisler's testimony reveals, and as the Court is aware, Dr. Weisler was asked for litigation support activity, which should not be amenable to open account status under the undisputed facts and circumstances.

Finally, undersigned Defendants adopt and incorporate to an extent not inconsistent herewith, not inconsistent with defenses personal to undersigned Defendants, and not inconsistent with undersigned Defendants' rights to dismissal, or to reduction, shifting or limitation of liability, if any, the dispositive or other motions and attachments brought by co-defendants in this matter. Undersigned Defendants reserve all rights and defenses, notwithstanding any of the foregoing.

So moved this October 18, 2011.

Respectfully submitted,

**LAW OFFICE OF BRIAN A. GILBERT, P.L.C.**

*/s/Brian A. Gilbert*
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
bgilbert@briangilbertlaw.com

**CERTIFICATE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record via ECF upload, this 18th day of October 2011.

*\s\Brian A. Gilbert*
