DEPOSITION OF RICHARD H. WEISLER, M.D.
CONDUCTED ON SUNDAY, OCTOBER 9, 2011

1 (Pages 1 to 4)

---

**Page 1**

```
 1       UNITED STATES DISTRICT COURT
 2       EASTERN DISTRICT OF LOUISIANA
 3  --------------------------------x
 4  IN RE: KATRINA CANAL BREACHES   :
 5  CONSOLIDATED LITIGATION         : CIVIL ACTION NO.:
 6  RICHARD H. WEISLER, M.D.        : 05-4182 (09-2737)
 7  v.                              :
 8  RICHARD T. SEYMOUR, ESQ.,       : SECTION "K" (2)
 9  RICHARD T. SEYMOUR, P.L.L.C.,   :
10  ALAN L. FUCHSBERG, ESQ., THE    : JUDGE STANWOOD R.
11  JACOB D. FUCHSBERG LAW FIRM,    : DUVAL, JR.
12  BRIAN A. GILBERT, P.L.C.,       :
13  WIEDEMANN & WIEDEMANN, P.L.C.,  : MAGISTRATE JUDGE
14  LAWRENCE WILSON, ESQ., AND      : JOSEPH C.
15  WILSON, GROCHOW, DRUKER & NOLET : WILKINSON, JR.
16  --------------------------------x
17          Deposition of RICHARD H. WEISLER, M.D.
18                 Raleigh, North Carolina
19                 Sunday, October 9, 2011
20                      10:30 a.m.
21  Pages: 1 - 260
22  Reported by: Marian E. Cummings, LSR
```

**Page 2**

```
 1      Deposition of RICHARD H. WEISLER, M.D., held at
 2  the offices of:
 3
 4
 5      CaseWorks, Inc.
 6      8601 Six Forks Road
 7      Suite 460
 8      Raleigh, North Carolina 27615
 9      (919) 676-5300
10
11
12
13
14      Pursuant to Notice, before Marian E. Cummings,
15  Notary Public in and for the State of North Carolina.
```

**Page 3**

```
 1              A P P E A R A N C E S
 2  ON BEHALF OF THE PLAINTIFF:
 3      ANDREW C. WILSON, ESQUIRE
 4      Simon, Peragine, Smith
 5      & Redfearn, LLP
 6      1100 Poydras Street
 7      30th Floor
 8      New Orleans, Louisiana 70163
 9      (504) 569-2030
10
11
12  ON BEHALF OF THE DEFENDANTS:
13      RICHARD T. SEYMOUR, ESQUIRE
14      PRO SE
15      Law Office of Richard T. Seymour, PLLC
16      Suite 900
17      888 17th Street, NW
18      Washington, DC 20006
19      (202) 785-2145
```

**Page 4**

```
 1       A P P E A R A N C E S  C O N T I N U E D
 2  ON BEHALF OF THE DEFENDANTS:
 3      LAWRENCE A. WILSON, ESQUIRE
 4      PRO SE
 5      Wilson Grochow Druker & Nolet
 6      233 Broadway
 7      5th Floor
 8      New York, New York 10279
 9      (212) 608-4400
10
11
12  ON BEHALF OF THE DEFENDANTS:
13      BRIAN A. GILBERT, ESQUIRE
14      PRO SE
15      Law Offices of Brian A. Gilbert, PLC
16      2030 St. Charles Avenue
17      New Orleans, Louisiana 70130
18      (504) 598-1000
19      (Present via telephone)
```

Page 5

```
 1              CONTENTS
 2    EXAMINATION OF RICHARD H. WEISLER, M.D.     PAGE
 3        By Mr. Seymour                  10
 4        By Mr. Wilson                   14
 5        By Mr. Seymour                  92
 6        By Mr. Wilson                  207
 7        By Mr. Seymour                 226
 8        By Mr. Gilbert                 240
 9        By Mr. Seymour                 242
10
11
12              E X H I B I T S
13         (Attached to transcript)
14    WEISLER DEPOSITION EXHIBIT              PAGE
15    Exhibit 1   Affidavit of Dr. Richard Weisler    29
16    Exhibit 2   Memorandum on Behalf of Plaintiff
17              in Opposition to Defendants'
18              Motion to Dismiss             61
19    Exhibit 3   Affidavit of Dr. Mark H. Townsend   75
20    Exhibit 4   Barge Case Activity Sheet 7-7-08    75
21    Exhibit 5   Barge Case Activity Sheet 7-28-08   79
22    Exhibit 6   Barge Case Activity Sheet 7-28-08   79
```

Page 6

```
 1           EXHIBITS CONTINUED
 2    WEISLER DEPOSITION EXHIBIT              PAGE
 3    Exhibit 7   Barge Case Activity Sheet 7-28-08   79
 4              Deposition Preparation and Case
 5              Activity
 6    Exhibit 8   Summary of Activity - Attachment K  81
 7    Exhibit 9   Email dated 5-16-08 from Fuchsberg  99
 8    Exhibit 10  Email chain - first email 5-10-08  101
 9    Exhibit 11  Sprint-E                           107
10    Exhibit 12  Preliminary Technical Report       107
11              10-24-05
12    Exhibit 13  M.I.N.I. Plus Version 5.0.0        110
13    Exhibit 14  Email 5-19-08 from Fuchsberg       112
14    Exhibit 15  Email 5-19-08 from Fuchsberg       112
15    Exhibit 16  Article "A Psychometric Analysis
16              Of Project Liberty's Adult
17              Enhanced Services Referral Tool  112
18    Exhibit 17  Email chain - first email 5-19-08  116
19    Exhibit 18  Email 5-14-08 from Fuchsberg       117
20    Exhibit 19  Email 6-5-08 Re: Sprint-E          117
21              description
22
```

Page 7

```
 1           EXHIBITS CONTINUED
 2    WEISLER DEPOSITION EXHIBIT              PAGE
 3    Exhibit 20  Clinician-Administered PTSD Scale  120
 4              for DSM-IV
 5    Exhibit 21  Expert Report by Weisler -         121
 6              Attachment A
 7    Exhibit 22  Answers to Interrogatories of      136
 8              Richard Weisler
 9    Exhibit 23  Sheehan Disability Scale           255
10    Exhibit 24  Email 7-30-08 from Fuchsberg       181
11    Exhibit 25  Email chain - first email 6-12-08  189
12    Exhibit 26  Email 5-16-08 with redactions      195
13    Exhibit 27  Email 1-9-09 from Townsend         195
14    Exhibit 28  Email chain - first email 5-29-08  197
15    Exhibit 29  Email 6-9-09 - Attachment B        197
16    Exhibit 30  Letter 12-12-08 - Attachment C     198
17    Exhibit 31  Invoice - Attachment D             199
18    Exhibit 32  Letter 8-13-08 - Attachment F      201
19    Exhibit 33  Final Invoice 12-2-08 -            201
20              Attachment G
21    Exhibit 34  Email chain - first email 8-12-08  206
22              - Attachment H
```

Page 8

```
 1           EXHIBITS CONTINUED
 2    WEISLER DEPOSITION EXHIBIT              PAGE
 3    Exhibit 35  Letter 2-4-09 - Attachment I       212
 4    Exhibit 36  Barge Plaintiff's Amended Motion   209
 5              to Certify the Class and Subclasses
 6    Exhibit 37  Barge PLSC Proposed Emotional      216
 7              Distress Subclass Class
 8    Exhibit 38  Barge Class Activity Sheet         228
 9              7-28-08 - Attachment E
10    Exhibit 39  Weisler Expert Witness Barge       228
11              Case Reading List
12    Exhibit 40  Table of Contents - Attachment M   229
13    Exhibit 41  Email 5-27-08 from Weisler -       231
14              Attachment N
15    Exhibit 42  Barge Expense Invoice -            233
16              Attachment O
17    Exhibit 43  Letter 2-8-09 - Attachment P       236
18    Exhibit 44  Email chain - first email 5-29-08  237
19    Exhibit 45  Email chain - first email 6-6-08   238
20    Exhibit 46  Private Diagnostic Clinic          242
21              Medical-Legal Fee Guide
22
```

9

1    EXHIBITS CONTINUED
2    WEISLER DEPOSITION EXHIBIT                    PAGE
3    Exhibit 47  Email chain - first email 5-19-08    245
4    Exhibit 48  Dr. Weisler's Research              245
5    Exhibit 49  Response to Request for Production  250
6         of Documents of Richard H. Weisler
7         to Defendants
8    Exhibit 50  Email chain - first email 5-18-08    255

10

1              PROCEEDINGS
2              DIRECT EXAMINATION
3    BY MR. SEYMOUR:
4        Q.  Please state your name and address, for
5    the record.
6        A.  **Richard Weisler and my address is 700**
7    **Spring Forest, Suite 125, Raleigh, North Carolina.**
8        Q.  Is that your business address?
9        A.  **That's the business address.**
10            BY MR. SEYMOUR:  Fine.  Could whoever is on
11   the phone please identify yourself?
12            MR. GILBERT:  Brian Gilbert.
13            MR. SEYMOUR:  Is there anyone else on the
14   phone?
15            MR. GILBERT:  No.
16            MR. SEYMOUR:  All counsel and defendants in
17   this case were given notice of this deposition and the
18   call-in number so that anyone who is not present has
19   waived their right to participate unless they come in
20   as the deposition is taking place.
21       I have a few preliminary questions to ask and
22   then we'll turn it over to Mr. Wilson so that he can

11

1    ask his questions and depart.  Dr. Weisler?
2            MR. WILSON:  Before we do that.  The
3    deposition was set for 10:00.  It's now 10:30 a.m.
4    The plaintiffs have been here since quarter of 10:00
5    and counsel Larry Wilson was here already as well.
6       This is being taken for all purposes.  Usual
7    stipulations?
8            MR. SEYMOUR:  The stipulations that except
9    as to the form of the question are preserved.
10   Objections except as to form of the question are
11   reserved until such time as an effort is made to make
12   use of the question.
13           MR. WILSON:  Also because of the nature of
14   some of the questioning it has to be subject to the
15   existing protective order because of the medical
16   information and patients' names and whatnot, is that
17   agreed?
18           MR. SEYMOUR:  Yes, to the extent that we get
19   into that.  I'm not sure that we will.
20           MR. WILSON:  I just want to make sure that's
21   clear.
22           MR. L. WILSON:  That's fine with me.

12

1            MR. WILSON:  And then he's going to read it
2    and sign.
3            MR. SEYMOUR:  Very good.
4    BY MR. SEYMOUR:
5        Q.  Dr. Weisler, have you been deposed
6    before?
7        A.  **Yes, I have.**
8        Q.  Have you testified in court before?
9        A.  **Yes, I have.**
10       Q.  Have you testified in federal court
11   before?
12       A.  **I don't think so.  I may have -- I had one**
13   **trial which I sent you a copy of -- Mr. Fuchsberg a**
14   **copy of.**
15           MR. GILBERT:  Excuse me.  Is it possible to
16   move the phone closer to the witness or whatever?
17       A.  **I think it was actually a state court**
18   **though rather than federal court.**
19           MR. GILBERT:  That's perfect.
20           BY MR. SEYMOUR:
21       Q.  Okay.  Are you under any physical
22   condition that would limit your ability to remember

**Page 93**

1  statement or was that counsel?
2  A.  I would say that was my statement as well
3  as counsel.
4  Q.  Now, in discussing that you said that
5  someone told you that there was supposed to be a
6  random sample of class members; do I have that
7  correctly?
8  A.  It's actually in the certification so let
9  me pause for a second.
10  Q.  I'm not asking about the certification,
11  I'm asking about what was said to you.
12  A.  That's what I'm talking about.  So you're
13  not asking what y'all wrote in your May 15th
14  pleadings?
15  Q.  That's correct, I'm asking what was said
16  to you.
17  A.  Well, again, I ultimately ended up reading
18  the May 15 pleadings, but at the same time as it was
19  so late it was determined -- it was determined by
20  y'all that you would just have class representatives
21  be evaluated and I think y'all also said that was part
22  of what y'all were supposed to do.

**Page 94**

1  Q.  Did you understand that some of the
2  persons who were being evaluated were not class
3  representatives?
4  A.  Uh-huh.
5  Q.  Could you say yes or no?
6  A.  Yes.
7  Q.  Did you understand that you were asked to
8  evaluate some people who were present at the time --
9      (Phone interruption.)
10  BY MR. SEYMOUR:
11  Q.  Let me start that one over again.  Did you
12  understand that you were to evaluate one or more
13  persons who were present for the hurricane but did
14  suffer physical injury from the hurricane?
15  A.  Yeah in fact, we actually talked about it
16  in the attachment.  You wrote me an email about that
17  as well the latter part of June 2008 which clarified
18  it and we did talk about different levels of
19  exposure.
20      And I was not able to -- whether Mr. Gilbert had
21  sent an email to me around that same time, latter part
22  of June 2008, about saying that these were not, excuse

**Page 95**

1  me, not to say that the attorneys selected the people
2  that we interviewed or the sample and then you
3  clarified it with another email, you know, not imply,
4  again let me phrase it differently.
5      What I got was the first email from Mr. Gilbert
6  saying not to state that the people that we evaluated,
7  the plaintiffs that we evaluated had been selected by
8  their attorneys and to imply randomness.  And then you
9  and I talked eventually and you wrote me an email as
10  well which clarified it and talked about the fact that
11  there was different levels of exposures, some had been
12  there, some hadn't been there, some lost people, some
13  didn't lose people.  I could go find that email if you
14  wish.
15  Q.  And some had physical injuries and some
16  did not?
17  A.  Right, and that was an email you wrote to
18  me.
19  Q.  And do you recall at the time of setting
20  up the interviews and scheduling people for the
21  interviews that there were telephone calls in which we
22  talked about having these different levels of

**Page 96**

1  exposure?
2  A.  That is indeed correct.
3  Q.  Did you understand that we were trying to
4  have illustrative types of people as opposed to a
5  random sample of the class?
6  A.  Well, I understood that part at the same
7  time what y'all had talked about at that point in the
8  pleadings, I guess pleading is the right term?
9  Q.  Not pleading, I'm talking about our
10  conversations.
11  A.  I understand.  What y'all had written and
12  had in the document was that it would be a random
13  sample, but what we talked about is that it would
14  indeed be a mixture of exposures and outcomes.
15  Q.  And did you understand that the purpose of
16  the interviews was to find an inexpensive instrument
17  by which people could be screened to determine whether
18  or not they needed to have therapy?
19  A.  That was one of the purposes.  You were
20  also asking for diagnosable so I could pull the email
21  then, maybe that might be best.
22      MR. WILSON:  Don't pull it.

241

1  understand what you mean by litigation expense.
2      Q.    This was the contract for services in
3  support of litigation, correct?
4          MR. SEYMOUR:  A contract -- let me
5  repeat.  Brian Gilbert asked was this a contract for
6  services to support litigation.
7      A.    Yes, I was part of this case so it would
8  be related to the litigation that you were doing.
9      Q.    Okay.  So it would be in support of
10 litigation, correct?
11     A.    Yeah, I certainly would not have done this
12 on my own going down to New Orleans and evaluating
13 people?
14     Q.    Is it fair for you to say the answer is
15 yes?
16     A.    Yes.
17         MR. GILBERT:  Okay, thank you.  I need
18 to go.  I can't explain why on the record, I just
19 can't stay on the phone anymore.  Thank you all very
20 much.
21         (Mr. Gilbert left the proceedings.)
22         (Discussion off the record.)

242

1          (Exhibit 46 was marked for identification.)
2                  REDIRECT EXAMINATION
3          BY MR. SEYMOUR:
4      Q.    Dr. Weisler, when you entered into your
5  oral contract with Mr. Fuchsberg did you enter into it
6  as an individual or as your corporate entity?
7      A.    Actually I entered into it as a corporate
8  entity because I told him that I worked as Richard H.
9  Weisler, M.D., P.A. and we talked about the fee
10 schedule and while I used a Duke schedule it was for
11 me privately and for my corporation.
12     Q.    I've marked as Exhibit 45 to the
13 deposition an email thread starting with the top email
14 June 6, 2008 at 5:46 p.m.
15     Excuse me, we've already talked about that.  I've
16 marked as Exhibit 46 to the deposition a one-page
17 document titled private diagnostic clinic PLSC
18 medical-legal fee guide?
19     A.    That's correct.
20     Q.    Did you rely on this document in setting
21 your fee at $600 per hour?
22     A.    That's the fee that I chose in part as due

243

1  to this because this was what my colleagues, a lot of
2  them were doing in relation to this type of work so
3  that's -- that seemed to be the median range for the
4  university area.
5      Q.    When you refer to colleagues are you
6  referring to colleagues that are associated with a
7  private diagnostic clinic?
8      A.    Those, plus other people in the community
9  but since I, as I said, I do work at Duke.  I'm on the
10 faculty, I'm on the staff of one of the Duke
11 Hospitals.  I figured if they recommended this as the
12 guide that's what I would go with.
13     Q.    Do you have any connection yourself with
14 the private diagnostic clinic?
15     A.    I do not.  And that was the template I
16 used and that schedule is the same schedule I've used
17 for a while.  Mr. Seymour, if I may, I found what I
18 was looking for earlier in that case.
19     Q.    I'm sorry, there are a lot of things that
20 we've talked about in the course of the day.
21     A.    I apologize.  This is the case you were
22 asking about early as far as work goes, the 1999 case

244

1  that I worked on.
2      Q.    The Aardel case?
3      A.    No, that would be this is the one Sovern,
4  SOVERN, and here is the section highlighted in the
5  news article where they asked about how many hours I
6  put in.  And I shared this -- you'll notice this is an
7  email I sent to Mr. Fuchsberg early on and while I
8  telling him to evaluate all these people more
9  importantly my report would be very expensive.
10     Q.    We'll mark this as 47.
11     A.    That has 80 hours.  What does it say in
12 the blue area, 80 to 120 hours.
13     Q.    And you said that included your
14 deposition -- did you have a deposition in this case?
15     A.    I did have a deposition, but how many
16 hours did it say, 80 to --
17     Q.    80 to a hundred?
18     A.    80 to a hundred.
19     Q.    And you testified at trial?
20     A.    Yeah, that didn't necessarily include all
21 the trial time, that included up to that time, but
22 that was back in the '90s.