UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge* | 05-5531 | * |
| *Mumford v. Ingram* | 05-5724 | * |
| *Lagarde v. Lafarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * |
| *Parfait Family v. USA* | 07-3500 | * | MAG. JOSEPH C. WILKINSON, JR. |
| *Lafarge v. USA* | 07-5178 | * |
| | * |

# PLAINTIFF'S MOTION TO CERTIFY THE CLASS AND SUBCLASSES, TO APPOINT CLASS COUNSEL, AND TO APPROVE PLAINTIFF'S PROPOSED TRIAL PLAN

Pursuant to the May 1, 2008, Case Management and Scheduling Order No. Seven (doc. 12935) and Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Barge plaintiffs move to certify the class and subclasses described below as to the issues specified below, to appoint the counsel listed below as class counsel, to approve the proposed trial plan, and to approve the proposed class notice. The grounds of this Motion and the details of plaintiffs' request are specified below.

A.     **The Proposed Class**

1.     The proposed class consists of all persons and entities whose buildings, personal

- 1 -

property, or businesses within the class area were damaged or destroyed, or who resided or conducted within the class area and lost income, or who were personally and/or emotionally injured within the class area, or who have the legal right to pursue wrongful death actions with respect to persons who died within the class area, as a result of the flooding of the class area in connection with Hurricane Katrina on August 29, 2005, proximately caused and caused in fact by the fault of defendants Lafarge North America, Inc., Zito Towing, Inc., and by limited defendants Unique Towing, Inc. ("Unique") and Joseph C. Domino, Inc. ("Domino").[1]   This flood is hereinafter called "the August 29, 2005, flood," or "the flood."

2.   The proposed class area is bounded by the Industrial Canal floodwall on the West, Paris Road on the East, the Mississippi River on the South, and is bounded on the North by the Public Belt or other Railway adjacent to and immediately north of Florida Avenue, and the east-west channel or canal extending from the aforesaid railway to Paris Road (Florida Walk Canal and Forty Arpent Canal). It consists of the following Census Tracts and parts of Census Tracts:

      a.   In Orleans Parish, Census tracts 7.01, 7.02, 8, 9.01, 9.02, 9.03, and 9.04;[2] and

      b.   In St. Bernard Parish, Census tracts 303, 304, 305, 306.1, 306.2, 306.3, and the portions of Census tracts 307 and 308 that lie West of Paris Road.[3]

3.   **The Proposed Class Representatives:** Plaintiffs propose the following class representatives for the class for a whole: plaintiffs Ethel Mae Coleman Mumford, Josephine Long

---

[1] Barge Plaintiffs will shortly move for permission to file a Seventh Amended Complaint conforming the class allegations to those of this Motion, consolidating the various earlier versions of the Complaint into one, and integrated document, and clarifying the allegations.  This Motion is without prejudice to Barge Plaintiffs' pending appeal from the judgment in the limitations action.

[2] See Attachment A hereto, maps of these Census tracts in Orleans parish, downloaded from the U.S. Bureau of the Census by Richard Seymour, one of the undersigned attorneys.

[3] See Attachment B hereto, maps of these Census tracts in St. Bernard parish, downloaded from the U.S. Bureau of the Census by Richard Seymour, one of the undersigned attorneys.

Richardson, Jimmie Donnell Harris, Michael Joseph Riché, and Jacob Robert "Bob" Glaser.  The

proposed representatives for the subclasses are also identified below:

a.  **Ethel Mae Coleman Mumford:**

(1)     Current Address: 1423 Feliciana Street, New Orleans, LA

70117.

(2)     Occupation: Babysitter.  She was formerly a Cleaning Service

Provider.

(3)     Age: 81.

(4)     Street Addresses of Properties for Which Damages Are Sought,

with Detailed Information:

(a)  4829 Burgundy Street, New Orleans, Louisiana 70117, in

the Lower Ninth Ward.  She resided there at the time of Hurricane

Katrina, and owned the property.  It was a single-family, one-story

house of approximately 1,200 square feet, on a 45' x 115' lot, together

with a carport, garage, and patio. It was damaged in the flood.

(b) 6105-07 N. Robertson Street, New Orleans, Louisiana

70117, within the class area, on a 30' x 90' lot, including a single-story

double residence of an estimated 1,700 square feet containing two rental

units.  Both units were occupied and rented at the time of the flood.

(c)  6113-15 N. Robertson Street, New Orleans, Louisiana

70117, within the class area, on a lot of 30' x 120', including a single-

story double of an estimated 2,100 square feet residence containing two

rental units. Both units were occupied and rented at the time of the

- 3 -

flood.

    (d)  6101 N. Robertson Street, New Orleans, Louisiana 70117. She owned this empty lot of 30' by 90', which has lost value as a result of the flood.

  (5)  She also lost personal property in the flood.

  (6)  Ms. Mumford is a proposed Class Representative for the Property Damage, Business Damage, and Emotional Distress Subclasses, as well as for the class as a whole.

 b. **Josephine Long Richardson:**

  (1)  Current Address: 1321 Egania Street, New Orleans, LA 70117.

  (2)  Occupation: Retired.  She was formerly a Cashier for K & B.

  (3)  Age:   80.

  (4)  Street Addresses of Properties for Which Damages Are Sought, with Detailed Information: 1321 Egania Street, New Orleans, Louisiana 70117, in the Lower Ninth Ward.  She owns this residence, a single-family, one-story house on a lot approximately 120' x 30'.  It was damaged in the flood.

  (5)  She also lost personal property in the flood.

  (6)  At the time of the storm, her husband, Joseph Richardson, sent Mrs. Richardson to safety, while he remained to secure their family home. Mr. Richardson became trapped in the attic and drowned due to the flooding caused by ING 4727.

  (7)  Mrs. Richardson is also bringing a wrongful death claim on behalf of her late husband, Joseph Richardson.

- 4 -

(8)      Mrs. Richardson is a proposed Class Representative for the

Property Damage, Wrongful Death, and Emotional Distress subclasses, as well

as for the class as a whole.

c.  **Jimmie Donnell Harris:**

(1)      Current Address: 924 Lamanche Street, New Orleans, LA

70117.

(2)      Occupation: Firefighter with the New Orleans Fire Department

and member of the U.S. Army Reserve.

(3)      Age: 41.

(4)      Street Addresses of Properties for Which Damages Are Sought,

with Detailed Information:  He owns his 942 Lamanche Street residence, where

he lived with his wife and daughter until the flood. The house was a two-story

single-family residence, of approximately 2,400 square feet on a lot

approximately 90' x 120', and had been improved by the addition of about one-

thousand square feet in 2002, plus addition of a new shed and carport.

(5)      He also lost personal property in the flood.

(6)      Mr. Harris is a proposed Class Representative for the Property

Damage subclass, as well as for the class as a whole.

d. **Kismit Bougere:**

        (1)        Current Address: 794 13th Street, Plano, TX 75074.

        (2)        Occupation:   Unemployed.  Formerly Credit Executive at Harrah's Casino in New Orleans.

        (3)        Age:  38.

        (4)        Street Addresses of Properties for Which Damages Are Sought, with Detailed Information:  None.

        (5)        She lost personal property in the flood.

        (6)        Ms. Bougere is a proposed Class Representative for the Emotional Distress subclass.

e. **Michael Joseph Riché:**

        (1)        Current Address: 31028 Torres Drive, Lacombe, Louisiana, 70445

        (2)        Occupation: Self-employed in sales.  Prior to the flood, he owned Mr. Ribbon, described below.  Mr. Riché has been financially unable to re-establish or repair his business, and lost his clientele.  Now, Mr. Riché attempts to operate his business from his van, in efforts to sell wholesale ribbon to would-be purchasers.

        (3)        Age:  63.

        (4)        Street Addresses of Properties for Which Damages Are Sought, with Detailed Information:

                (a)  Mr. Ribbon, a wedding supply business located at 8825-27 W. Judge Perez Drive, Chalmette, Louisiana, 70043, in the Village

- 6 -

Square Shopping Center. The business property, which he owned, included approximately 4,000 square feet of showroom, sales, office, and warehouse. All of it was destroyed by the August 29, 2005, flood. His business property within this enterprise was also destroyed.

(b)  128-130 W. Phillip Court, Chalmette, Louisiana, 70043, which he owned, consisting of a two-story townhouse duplex of approximately 2,400 square feet. The property was rented at the time of the flooding.

(5)    Mr. Riché is a proposed Class Representative for the Property Damage and Business Damage Subclasses, as well as for the class as a whole.

f.  **Jacob Robert "Bob" Glaser:**

(1)        Current Address: 308 Sweet Gum Lane, Madisonville, LA 70447.

(2)        Occupation: Real estate agent with Century 21.

(3)        Age: 58.

(4)        Street Addresses of Properties for Which Damages Are Sought, with Detailed Information: None.

(5)        Mr. Glaser and his wife plaintiff Dianne Glaser owned Holiday Jewelers, a retail jewelry business located at 8400 W. Judge Perez Drive, Chalmette, Louisiana 70043. They leased the property where the business was located, which consisted of approximately 1,000 square feet of showroom, office, and workshop space. Their inventory, equipment, and fixtures were destroyed in the flood.

- 7 -

(6)      Jacob Glaser is a proposed Class Representative for the

Business Damage Subclass, as well as for the class as a whole.

g. **Herman Koch:**

(1)      Current Address: 506 Country Club Drive, Picayune, MS 39466.

(2)      Occupation:  Retired and managing rental property,

(3)      Age:  66.

(4)      Street Addresses of Properties for Which Damages Are Sought,

with Detailed Information (all jointly owned by Herman Koch and plaintiff Ida

Koch, his wife):

(a) 3409-11 Shangri La Lane, Chalmette, Louisiana, 70043, was

a one-story double residence of approximately 2,400 square feet on a

60' x 120' lot.  Mr. and Mrs. Koch owned the property and had made

recent improvements before the flood, including new flooring and paint.

Both units were rented at the time of the flooding, and were damaged

therein.

(b) 3619 Shangri La Lane, Chalmette, Louisiana, 70043, was a

party-wall double residence, half of which was owned by Mr. and Mrs.

Koch.   It has approximate interior space of 1,250 square feet, and sits

on a 60' x 125' lot with a shed. It was newly painted in 2004, and was

rented at the time of the flooding, and damaged therein.

(c) 6317-19 Douglass Street, New Orleans, Louisiana 70117, in

the Lower Ninth Ward was a single-story double residence located in an

historic district.  They owned it.  It was approximately 3,000 square feet

- 8 -

on a lot of approximately 45' x 200', plus two outbuildings containing carport and laundry space. New floors were installed in 2003. Both units were rented at the time of the flooding, and were damaged therein.

(d) 6035-37 Burgundy Street, New Orleans, Louisiana 70117 in the Lower Ninth Ward was a single-story shotgun double residence of approximately 2,500 square feet on a 50' x 120' lot with a double shed and carport.  They owned it.  Extensive improvements and renovations in early 2005 included new kitchens, plumbing, and floors. Both units were rented at the time of the flooding, and were damaged therein.  Mr. and Mrs. Koch sold this property in unrepaired condition at a substantial diminution in value from its pre-Katrina value because of the flooding.

(e) 8547 Deerfield, Chalmette, Louisiana 70043 is one-half of a single-story house, consisting of approximately 4000 square feet, on a 55' x 120' lot with two outbuildings. Mr. and Mrs. Koch formerly resided in the other half of the property.  The entire property was newly painted and carpeted in 2005.  This property was also damaged in the flood

(5)      Herman Koch is a proposed Class Representative for the Property Damage, Business Damage, and Emotional Distress Subclasses.

h. **Rico Terrence Sutton:**

(1)      Current Address: 2101 Fred Banks Drive, Denham Springs, LA 70726.

(2)     Current Occupation: Employed at Popeye's Chicken restaurant; self-employed Pressure Washer; former Truck Driver and will drive trucks again on August 31, 2008.

(3)     Age: 30.

(4)     Street Addresses of Properties for Which Damages Are Sought, with Detailed Information:  2523 ½ Jourdan Avenue, New Orleans, Louisiana 70117, in the Lower Ninth Ward. Mr. Sutton is 30 years old.  His mother owns it, and he was leasing it from her.  He lived there with his family and had a carport for his cars.  He also owned Big Shot Trucking, operated his business from the property, and had a roofed truckport for the truck that was open at the sides.

(5)      He also lost personal property, his 1993 Freightliner semi-hauler, and other business property other than the building.

(6)     Mr. Sutton is a proposed Class Representative for the Business Damages Subclass.

4.  **Numerosity of the Class as a Whole:**  The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable. The 2000 Census reports the following information as to the Census tracts in the class area:[4]

_____

[4]  Source: U.S. Bureau of the Census, Table QT-H3, "Household Population and Household Type by Tenure: 2000 Data Set: Census 2000 Summary File 4 (SF 4) - Sample Data," downloaded January 16, 2008 and tabulated by Mr. Seymour. Census tracts 307 and 308 in St. Bernard Parish were given a 60% weight so as to exclude the areas East of Paris Road, which visually appeared to Mr. Seymour to be approximately 40% of the land area.

| Census Tract | Occupants in Residences |
|---|---|
| **A. Orleans Parish Census Tracts** | |
| 7.01 | 3,272 |
| 7.02 | 2,921 |
| 8 | 2,498 |
| 9.01 | 2,675 |
| 9.02 | 2,990 |
| 9.03 | 2,710 |
| 9.04 | 2,339 |
| **Total for Orleans Parish:** | 19,405 |
| **B. St. Bernard Parish Tracts** | |
| 303 | 2,127 |
| 304 | 2,476 |
| 305 | 3,361 |
| 306.1 | 2,742 |
| 306.2 | 4,107 |
| 306.3 | 3,330 |
| 307 | 2,106 |
| 307 (60% weight) | 1,264 |
| 308 | 5,159 |
| 308 (60% weight) | 3,095 |
| **Total for St. Bernard Parish, weighing tracts 307 and 308 at** | |

| Census Tract | Occupants in Residences |
|---|---|
| **60% of their full values:** | 22,502 |
| **C. Total Class Area** | 41,907 |

It would be impracticable to join 41,907 class members in this action.

5. **Commonality:** The class meets the requirements of Rule 23(a)(2), Fed. R. Civ. Pro., because there are questions of law or fact common to the class. These include but are not limited to the following:

        a. Whether defendants and the insureds of defendant insurance companies were negligent in allowing the loaded Barge ING 4727 to be docked at the LaFarge North America facility on the Industrial Canal on Friday, August 26, 2005;

        b. Whether defendants and the insureds of defendant insurance companies were negligent in refusing and/or failing to remove the loaded Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Friday, August 26, 2005, and thereafter prior to its unloading;

        c. Whether defendants and the insureds of defendant insurance companies were negligent in unloading and unballasting Barge ING 4727 on Friday and Saturday, August 26 and 27, 2005;

        d. Whether defendants and the insureds of defendant insurance companies were negligent in failing to remove or cause the removal of the unloaded Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Saturday, August 27, 2005, and thereafter prior to the advent of Hurricane Katrina on August 29, 2005;

        e. Whether defendants and the insureds of defendant insurance companies were

- 12 -

negligent in failing to reballast the unloaded Barge ING 4727 at the LaFarge North America facility on the Industrial Canal on Saturday, August 27, 2005, and thereafter prior to the advent of Hurricane Katrina on August 29, 2005;

f.   Whether defendants and the insureds of defendant insurance companies were negligent in improperly mooring an empty high barge to a loaded low barge at the LaFarge North America facility on the Industrial Canal on Saturday, August 27, 2005, and thereafter prior to the advent of Hurricane Katrina on August 29, 2005;

g.   Whether defendants and the insureds of defendant insurance companies were negligent in switching the unloaded Barge ING 4727 on Saturday, August 27, 2005, from inboard of a loaded barge that could act as a sea anchor even if the barges broke away from the LaFarge North America facility on the Industrial Canal;

h.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to moor or cable Barge ING 4727 directly to the shore as provided in the Lafarge North America Hurricane Preparation Checklist;

i.   Whether defendants and the insureds of defendant insurance companies were negligent in mooring Barge ING 4727 to the loaded barge using two single-part nylon lines, and thus to the dock of the LaFarge North America facility on the Industrial Canal, in violation of U.S. Coast Guard standards for hurricane preparation;

j.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to provide sufficient mooring lines to moor barges securely to docks in conformance with U.S. Coast Guard standards for hurricane preparation;

k.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to arrange in advance that tugboats could use whatever additional

lines were available on tugboats and necessary to moor barges securely to docks in conformance with U.S. Coast Guard standards for hurricane preparation, with payment for the lines to be made subsequently;

l.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to implement Port Condition Whiskey X-Ray Yankee Zulu in conformance with U.S. Coast Guard standards for hurricane preparation;

m.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to communicate with the Commander of the Port and/or the vessel owner concerning their intentions that Barge ING 4727 would remain moored at the LaFarge North America facility on the Industrial Canal during Hurricane Katrina, in violation of the U.S. Coast Guard standards for hurricane preparation;

n.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to inspect all moorings among Barge ING 4727, the loaded barge next to it, and the dock at the LaFarge North America facility on the Industrial Canal, to ensure that Barge ING 4727 was securely moored to the dock at the LaFarge North America facility on the Industrial Canal and/or other barges securely moored to this dock, in conformance with U.S. Coast Guard standards for hurricane preparation;

o.   Whether defendants and insureds are liable for failure to implement Congressional statutes and regulations, and/or for failure to implement United States Coast Guard standards of maritime care and recommendations contained in the Sector New Orleans Hurricane Plan, with respect to communications, mooring, and hurricane planning as to vessels intended to remain in the Industrial Canal or affected areas during hurricanes such as Hurricane Katrina;

- 14 -

p.   Whether defendants and the insureds of defendant insurance companies were negligent in abandoning the LaFarge North America facility on the Industrial Canal on Saturday, August 27, 2005, despite their knowledge that the unloaded Barge ING 4727 was at the facility and that Hurricane Katrina was forecast to affect New Orleans severely;

q.   Whether defendants and the insureds of defendant insurance companies were negligent in failing adequately to train, instruct, supervise, and/or oversee the activities of their employees and/or agents;

r.   Application of the doctrine of *respondeat superior*;

s.   Application of the Louisiana Rule, Pennsylvania Rule, and/or legal presumptions of fault in collision / allision cases;

t.   Whether the aforesaid actions of defendants and the insureds of defendant caused, were a substantial cause of, and/or contributed to the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005;

u.   Whether the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005, caused, was a substantial cause of, and/or contributed to the North Breach in the East wall of the Industrial Canal on that date;

v.   Whether the North Breach in the East wall of the Industrial Canal caused, was a substantial cause of, and/or contributed to injury to the buildings, personal property, business property other than buildings, earnings, income, physical or emotional distress, or bodies of class members, or caused their deaths;

- 15 -

w.  The extent of the injury to the buildings, personal property, business property other than buildings, earnings, income, physical or emotional distress, or bodies of class members, and the extent of the deaths of class members, caused by the North Breach in the East wall of the Industrial Canal;

x.  Whether the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005, caused, was a substantial cause of, and/or contributed to the South Breach in the East wall of the Industrial Canal on that date;

y.  Whether the North and South Breaches in the East wall of the Industrial Canal contributed to each other, or to their severity, on that date;

z.  Whether the South Breach in the East wall of the Industrial Canal caused, was a substantial cause of, and/or contributed to injury to the buildings, personal property, business property other than buildings, earnings, income, physical or emotional distress, or bodies of class members, or caused their deaths;

aa.  The extent of the injury to the buildings, personal property, business property other than buildings, earnings, income, physical or emotional distress, or bodies  of class members, and the extent of the deaths of class members, caused, substantial caused and/or contributed to by the South Breach in the East wall of the Industrial Canal;

bb.  Whether the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005, caused, was a substantial cause of, and/or contributed to both the North and South Breaches in the East wall of the Industrial Canal on that date;

cc.  Whether the combined North and South Breaches in the East wall of the

Industrial Canal caused, were a substantial cause of, and/or contributed to injury to the buildings, personal property, business property other than buildings, earnings, income, physical or emotional distress, or bodies of class members, or caused their deaths;

    dd. The extent of the injury to the buildings, personal property, business property other than buildings, earnings, income, physical or emotional distress, or bodies of class members, and the extent of the deaths of class members, caused, substantially caused, and/or contributed to by the combined North and South Breaches in the East wall of the Industrial Canal;

    ee. Application of general maritime law respecting joint and several liability and apportionment of fault and damages;

    ff.  The sources, geographic extent and timing of the flooding in the Class Area;

    gg. The definition of the Class Area as determined by the physical evidence of the sources, geographic extent and timing of the flooding in the Class Area;

    hh. Combining the efforts of class members and their counsel so as to obtain as complete and prompt relief as possible for all class members, including those too poor or disabled to be able to take action on their own;

    ii.  Insurance coverage; and

    jj.  Obtaining remedies as promptly and completely as possible for the injuries caused by the negligence of defendants and the insureds of defendant insurance companies.

6.   The class meets the requirements of Rule 23(a)(3), Fed. R. Civ. Pro., because the claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiffs have been affected by the same events as other class members, have been affected at the same time as other

class members, have had the same difficulties as other class members in recovering from defendants'
negligence, have suffered the same spectrum of injuries as class members, and cannot recover on their
own claims in any manner other than by prevailing for the class as a whole.

7.   The class meets the requirements of Rule 23(a)(4), Fed. R. Civ. Pro., because the
representative parties will fairly and adequately protect the interests of the class:

        a.   The proposed class representatives have no connection with defendants other
than the events giving rise to this lawsuit, and there are no conflicts of interest between
the named plaintiffs and other class members.

        b.   Plaintiffs have assembled a team of attorneys with substantial experience in
prosecuting class actions, mass torts, torts, and maritime law. They have no conflicts of
interest with the class. Original and expanded counsel have expended thousands of hours
of professional time in this matter, have spent more than $550,000 in out-of-pocket
expenses, and have prosecuted it diligently and capably.  Additionally, the entire team
stands ready to expend additional and substantial quantities of money in furtherance of
this cause.

8.   The class meets the requirements of Rule 23(b)(1)(A), Fed. R. Civ. Pro., because the
prosecution of separate actions by or against individual members of the class would create a risk of
inconsistent or varying adjudications with respect to individual members of the class which would
establish incompatible standards of conduct for the party opposing the class. In addition to the
monetary remedy sought in this case, it is important that these defendants receive a single, clear
message that their actions in connection with any future severe storm must be far different from their
actions in the days leading up to August 29, 2005. If the defendants win some cases and lose some
cases, they will readily repeat their actions in the future, in New Orleans or in any other area afflicted

- 18 -

by substantial storm danger, and many others will suffer as this class has suffered.

9.   The class meets the requirements of Rule 23(b)(1)(B), Fed. R. Civ. Pro., because the prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. No class member has the personal stake that would enable him or her or it to prosecute a claim successfully against defendants, because the time and expenses of litigation would dwarf the potential recovery. Only by grouping their claims together can class members have a fair opportunity to litigate their claims.

10. The class meets the requirements of Rule 23(b)(2), Fed. R. Civ. Pro., because defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Plaintiffs will shortly seek to amend and supplement their Complaint to seek injunctive and declaratory relief against defendants.  Injunctive relief is important to ensure that defendants do not again endanger the class members by taking similarly negligent action in the future. Declaratory relief is also important to class members, to affix responsibility for the August 29, 2005, flood in the class area, which may also help to restrain defendants' conduct in the future.  Finally, plaintiffs will seek an order requiring defendants to establish a clinical program to evaluate and treat ongoing emotional distress caused by their actions, without charge to the class members, or in the alternative the creation of a fund to accomplish these goals.

11. The class meets the requirements of Rule 23(b)(3), Fed. R. Civ. Pro., because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the

fair and efficient adjudication of the controversy.

a.    Members of the class do not have a strong interest in individually controlling the prosecution or defense of separate actions, because the time and expense of prosecuting successful individual litigation against defendants would be much greater than their individual stakes in such litigation. Only by grouping their claims together can class members have a fair opportunity to litigate their claims. In addition, the geographic dispersion of class members means that it would be difficult for all of them to learn of defendants' negligence, and the negligence of defendant insurance companies' insureds, in time to take effective action.

b.    There are only six other cases in the Barge Subgroup. The vast majority of the almost 42,000 class members have not filed individual cases. The undersigned counsel have retainers from thousands of clients who would pursue their own claims with the assistance of the undersigned counsel if class certification is denied. These clients understand that their interests are protected by the instant class action, but will have no choice but to pursue individual litigation if that is their only option. Even so, the vast majority of class members have not signed retainers and may obtain no relief in the absence of a class action.

c.    It is highly desirable to concentrate discovery and motion practice for the efficient resolution of this class action in this forum. The litigation of thousands of individual cases would add severely to the time required to obtain relief, even if individual plaintiffs managed to succeed. It would also impose severe burdens on the judicial system, with individual trials taking years to complete.

d.    Managing this litigation through the class device would pose fewer difficulties

than the difficulties likely to be encountered in the management of literally thousands of individual actions arising out of this common catastrophe. Discovery, scheduling, trying representative flights of class members to inform the expectations of both sides, are easier to organize by use of the class device, and have the added advantage of not leaving the vast majority of the class unrepresented.

e.   In addition, class certification provides the ability to have judicial supervision of any settlements. Defendants' highly irregular settlement with Arthur Murph,[5] including a confidentiality provision backed up by a five-year contingent collateral mortgage (with no associated promissory note) threatening the loss of their house if they breach confidentiality, implemented by one special-purpose entity having the effect of concealing defendants' involvement and another special-purpose entity not licensed to do business in Louisiana, underscores the need for open and aboveboard settlements under judicial supervision.

**B.**      **Coordination with Other Cases**

12. The proposed class does not exclude any person who is a plaintiff in another case making claims as to any defendant other than those in this case, and does not exclude any person who is a member of a putative or certified class in any other case.

**C.**      **The Subclass of Class Members with Property Damage**

13. The proposed Property Damage subclass consists of all class members who owned residential and associated buildings, business and associated buildings, personal property, or business property other than buildings, within the class area.  All buildings and other property within the class area were damaged or destroyed in the flooding of the class area in connection with Hurricane Katrina

- 21 -

on August 29, 2005.

14. There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

15. The proposed class representatives for this subclass are plaintiffs Mumford, Harris, Riché, and Herman Koch.

16. The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable. The 2000 Census reports the following information as to housing units in the Census tracts in the class area:[6]

| Census Tract | Occupied Housing Units |
|---|---|
| **A. Orleans Parish Census Tracts** | |
| 7.01 | 1,137 |
| 7.02 | 1,109 |
| 8 | 873 |
| 9.01 | 956 |
| 9.02 | 999 |
| 9.03 | 929 |
| 9.04 | 799 |
| **Total for Orleans Parish:** | 6,802 |

[5] He is the class member on whose property the barge came to rest.
[6] Source: U.S. Bureau of the Census, Table QT-DP-4, "Profile of Selected Housing Characteristics: 2000 Data Set: Census 2000 Summary File 4 (SF 4) - Sample Data" downloaded January 16, 2008 and tabulated by Richard Seymour, undersigned. Census tracts 307 and 308 in St. Bernard Parish were given a 60% weight so as to exclude the areas East of Paris Road, which visually appeared to Mr. Seymour to be approximately 40% of the land area.

- 22 -

| Census Tract | Occupied Housing Units |
|---|---|
| **B. St. Bernard Parish Tracts** | |
| 303 | 1,008 |
| 304 | 1,120 |
| 305 | 1,361 |
| 306.1 | 995 |
| 306.2 | 1,730 |
| 306.3 | 1,247 |
| 307 | 914 |
| 307 (60% weight) | 548 |
| 308 | 2,124 |
| 308 (60% weight) | 1,274 |
| **Total for St. Bernard Parish, weighing tracts 307 and 308 at 60% of their full values:** | 9,284 |
| **C. Total Class Area** | 16,086 |

While the above figures do not include nonresidential properties, they are sufficient to show numerosity.

17.     With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5- 11 above.

**D.     The Subclass of Class Members with Business Damage**

18.     The proposed Business Damage subclass consists of all class members who owned

- 23 -

businesses within the class area. All businesses within this area were either destroyed or lost

substantial income in the flooding of the class area in connection with Hurricane Katrina on August

29, 2005.

19.     There is no conflict between this subclass and any other subclass, or between this

subclass and the class as a whole.

20.     The proposed class representatives for this subclass are plaintiffs Mumford, Riché,

Glaser, Koch, and Sutton.

21.     The class representatives' properties within the class area had zip codes of 70117 in

the Lower Ninth Ward and 70043 in St. Bernard Parish West of Paris Road. While these zip codes are

not coterminous with the class area, they provide an indication of numerosity.

22.     The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class

is so numerous that joinder of all members is impracticable. The 2002 Economic Census reports the

following information as to businesses in zip codes 70117 and 70043:[7]

| Zip Code | 2004 Business Establishments | Number of Employees | Annual Payroll |
|---|---|---|---|
| 70117 | 437 | 5,646 | $125,668,000 |
| 70043 | 721 | 10,092 | $301,268,000 |
| **C. Total Class Area** | 1,158 | 15,738 | $426,936,000 |

While the above figures do not include noncommercial nonresidential properties, they are sufficient to

show numerosity.

---

[7] Source:  U.S. Bureau of the Census, ZIP Code Business Patterns (NAICS) for 2004 for the selected zip codes, downloaded and tabulated on January 31, 2008, by Mr. Seymour.  The information for Zip Code 70117 is attached hereto as Attachment C, and the information for Zip Code 70043 is attached hereto as Attachment D.

23. With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5-11 above.

**E.      The Subclass of Class Members with Emotional Distress**

24. The proposed Physical or Emotional Distress Subclass consists of all class members who:

    a.  respond to a class notice stating that they wish to make a physical or emotional-distress claim and are willing to provide discovery and individual testimony if needed; and

    b.  who suffered physical injury or emotional distress as a result of the August 29, 2005 flood and its aftermath, whether

        (1)      as a result of the wrongful death of a family member;

        (2)      personally experiencing the flooding and its aftermath;

        (3)      physical injuries suffered during the flood and its aftermath;

        (4)      the loss of a home whether owned or rented;

        (5)      the loss of income;

        (6)      resulting from evacuation and/or displacement from home, family, friends, community, culture and lifestyle; and/or

        (7)      the loss of a business or injury to a business.

25.      The failure to include a class emotional-distress claim would provide an incentive for class members to opt out of this lawsuit entirely and pursue such claims independently, with a great loss of efficiency and a great increase in transaction costs.

26.      There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

27.     The proposed class representatives for this subclass are plaintiffs Mumford,

Richardson, Riché, Bougere, and Koch.

28.     With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and

23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5-

11 above.

29.     Plaintiffs are aware of controlling law as to class certification and emotional distress

damages, and in their eventual Memorandum will address the reasons why the certification of a

subclass for emotional-distress damages in this case can be reconciled with this controlling law.

30.     In the event that the class described in ¶ 24 above is certified, plaintiffs would be

willing:

      a.  to try the claims of a statistically valid random sample of class members

asserting such claims to obtain bellwether values for each of the six categories above; and

then either

      (1)     have a classwide trial using those bellwether values; and/or

      (2)     inform class members and defendants of the bellwether values

of the claims of each of the remaining class members asserting such claims,

allow the class member to "opt out" of the classwide trial and have an individual

jury trial within this case of the damages claims for physical or emotional

distress, and allow the defendants to show good cause why a particular class

member have an individual trial rather than be part of the class trial.

31. In the event that the Court denies certification of the class proposed by plaintiffs, plaintiffs

would only then move for certification of a subclass of all class members who:

      a.  respond to a class notice stating that they wish to make a physical or emotional-

- 26 -

distress claim and are willing to provide discovery and individual testimony if needed; and

b.  who suffered physical injury or emotional distress as a result of the August 29, 2005 flood and its aftermath, whether

(1)      as a result of the wrongful death of a family member;

(2)      personally experiencing the flooding and its aftermath; or

(3)      physical injuries suffered during the flood and its aftermath.

Such a limited subclass would include far fewer claims for emotional distress damages.  The proposed class representative for this subclass is plaintiff Richardson.

32. The failure to include a class physical- or emotional-distress claim would provide an incentive for class members to opt out of this lawsuit entirely and pursue such claims independently, with a great loss of efficiency and a great increase in transaction costs.

33. There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

F.      **The Wrongful Death Subclass**

34.      The proposed Wrongful Death Subclass consists of all class members who respond to a class notice stating that they wish to make a wrongful death claim, and are willing to provide discovery and individual testimony if needed.

35.      There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

36.      The proposed class representative for this subclass is plaintiff Richardson.

37.      With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5-

11 above. While there would not be many wrongful death claims compared to the size of the class, it is important to include this Subclass and these claims so that class members will not have an incentive to opt out of this lawsuit.

### G. Class Counsel

38.   Plaintiffs move to appoint Barge P.S.L.C. counsel as class counsel.

### H. Class Notice

39.   Plaintiffs move that the Notice to class members, in addition to informing them of the matters explicitly required to be covered by Rule 23(c)(2), Fed. R. Civ. Pro., provide them with an explanation of the various types of claims in language worked out with defendants or decided by the Court, an opportunity to meet with class counsel at designated times and places to ask questions and receive information, and an opportunity to state:

     a.   whether they wish to take themselves outside of a classwide approach to determining claims for damages to contents of dwellings or businesses, and to proceed individually on such claims;

     b.   whether they wish to take themselves outside of a classwide approach to determining claims for emotional-distress damages;

     c.   whether they wish to press claims for individualized determinations of their emotional-distress damages as part of this action;

     d.   whether they wish to take themselves outside of a classwide approach to determining claims for wrongful death, and to proceed individually on such claims; and

     e.   whether they want to opt out of this action for all claims.

40.   Plaintiffs propose to tabulate the responses and provide them to defendants and the Court.

I.      **Plaintiff's Proposed Trial Plans**

41.      Plaintiffs move that the Court reserve its consideration of the most desirable trial plan until plaintiffs have provided the tabulation described immediately above.

42.      Thereafter, in the event that the Court decides to proceed with bellwether trials not based on a statistical random sample of class members but which will still provide useful information to the Court and the parties for settlement and other purposes, plaintiffs will of course proceed as the Court directs.

43.      Thereafter, in the event that the Court decides to proceed with bellwether trials based on a statistical random sample of class members, to obtain results that can consistently with due process be used to estimate total damages in this action, for any or all of the categories of damages claimed, plaintiffs move that there be separate random samples for each type of damages claimed, to ensure adequate coverage of the lower-volume claims.

44.      Plaintiffs move that the trial of this action be separated into three parts:

      a. A classwide trial of defendants' liability and of classwide damages for losses to residential or other buildings, and for losses to personal property or business property, with the evidence presented on behalf of the class as a whole to fix defendants' liability to the class as a whole, and relying substantially on public records, except as to class members whose claims for particular types of damages are severed for more individualized treatment;

      b. In the event that the Court decides to use bellwether trials of a statistical random sample of class members with emotional-distress or wrongful-death claims, then in the original classwide trial or a subsequent classwide trial, claims for emotional distress or for wrongful death would be tried except as to class members whose claims for particular

types of damages are severed for more individualized treatment;

     c.  Stage II individualized proceedings as appropriate, similar to those in an

employment discrimination class action, in which any questions as to particular

individuals' membership in the class or any special questions of calculations or property

ownership are determined; and

     d.  Individual jury trials of any remaining class members' claims for emotional

distress or for wrongful death, where the class member has opted out of the classwide trial

and wants to have his or her claim determined individually in this case, or where

defendants show good cause to try that particular class member's claim individually.

WHEREFORE, plaintiffs pray that their Motion be granted.

          Respectfully submitted,

          /s/ Brian A. Gilbert
          Brian A. Gilbert, Esq. (21297)
          LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
          821 Baronne Street
          New Orleans, Louisiana 70113
               Telephone: (504) 885-7700
               Telephone: (504) 581-6180
               Facsimile: (504) 581-4336
               e-mail: bgilbert@briangilbertlaw.com

          /s/ Lawrence D. Wiedemann,
          Lawrence D. Wiedemann.(13457)
          Karl Wiedemann (18502)
          Karen Wiedemann (21151)
          WIEDEMANN & WIEDEMANN
          821 Baronne Street
          New Orleans, Louisiana 70113
               Telephone: (504) 581-6180
               Facsimile: (504) 581-4336
               e-mail: lawrence@wiedemannlaw.com,
               karl@wiedemannlaw.com, karen@wiedemannlaw.com,

- 30 -

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:   202-549-1454
            Facsimile:  800-805-1065 and 202-828-4130
            e-mail: rick@rickseymourlaw.net,

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
Telephone: (212) 608-4400
Facsimile: (212) 227-5159
e-mail: lwilson@wgdnlaw1.com, ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
Telephone: 212-869-3500 ext. 235
Facsimile:  212-398-1532
            e-mail: a.fuchsberg@fuchsberg.com,
            l.kelmachter@fuchsberg.com

Dated: May 15, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing document has been served upon

counsel of record, by ECF upload, or by facsimile or e-mail or First Class mail, this 15th day of May,

2008.

<u>/s/ Richard T. Seymour</u>
Richard T. Seymour
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
            Voice: 202-862-4320
             Cell:   202-549-1454
        Facsimile:  800-805-1065 and 202-828-4130
        e-mail: rick@rickseymourlaw.net