UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES <br> CONSOLIDATED LITIGATION | CIVIL ACTION <br><br> NO. 05-4182 |
| PERTAINS TO: BARGE | and consolidated cases <br><br> SECTION "K" (2) |
| *Weisler v. Seymour, et al.* **09-2737** | |

\* \* \* \* \* \* \* \*

## AFFIDAVIT

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

 **BEFORE ME,** notary public, personally came and appeared:

### ALAN FUCHSBERG

a competent person of the full age of majority, who after being duly sworn, did depose and state that:

1.  I have been admitted to practice law in the courts of New York State, as well as the Federal courts of the Southern and Eastern Districts of New York, since 1980, continuously in good standing.

2. I am a partner of the Jacob D. Fuchsberg Law Firm named as a co-defendant in this litigation.

3. On just about every case I've handled, large and small, I engage experts.

4. In other cases that I have handled involving the use of experts, the experts and I proceed with each other on a basis of mutual good faith and reasonableness. There was no sense of good faith and reasonableness with plaintiff, Richard Weisler.

5. I was formerly one of the counsel for plaintiffs in the Barge litigation.

6. I was a member of the Barge P.S.L.C. from of its inception until approximately August 30, 2008.

7. Members of the Barge P.S.L.C., including Alan Fuchsberg, Rick Seymour, Brian Gilbert, Larry Wilson and Larry Weidemann, agreed to contact individuals for interviews for experts in the Barge litigation.

8. Indeed, on May 15, 2008, we had filed a motion related to the certification of the proposed emotional injury subclass. This was on or before the time Dr. Weisler was contacted. The motion, drafted by Richard Seymour, was based on an idea, raised and discussed among said counsel that we should attempt to certify a subclass for injunctive relief for the cost of psychological therapy for those suffering emotional injuries due to the trauma caused by the flooding due to the barge breaching the canal wall. Part of that discussion included that expert support for that aspect of the motion would be needed.

9.  I did not assume that this limited project would result this unimaginably large expense claimed by Dr. Weisler.

10. In acting as a member of the Barge P.S.L.C., on May 15, 2008, based upon having found their names in an article about the psychological trauma to Katrina victims, I e-mailed Dr Townsend and Dr. Weisler separately to see if either would be available as experts in this litigation.

11. Thereafter, I heard first from either Dr Townsend or Dr Weisler, who recommended that they both should work on this project. Shortly afterward we had a short telephone conversation with all three of us on the line.  During this telephone conversation, one or the other mentioned that they normally bill on an hourly rate.

12. Plaintiff provided no estimate of the cost of his services.

13. There were no discussions as to the cost of plaintiff's services.

14. I did not agree then, or at any time afterward, to any specific rate. Indeed, I told them that the next step was to set up a telephone conference call with co-counsel to continue the interview before retention.

15. I did not ever agree, individually or on behalf of the Jacob D. Fuchsberg Law Firm, to become personally liable for any debt to plaintiff.

16. This next telephone conference took place in May 2008, and involved Dr. Townsend, Dr. Weisler, and co-counsel.  Following that conversation, I did not have any further discussion with either Dr. Weisler or Dr. Townsend about either a contract or a billing rate.

3

17. At no time did I enter into a contract with Dr. Weisler.

18. During and following the interview process, the parties discussed that Dr. Weisler and Dr. Townsend would perform services including a psychological evaluation of anecdotal clients, which would enable him and Dr. Townsend to configure an abridged efficient methodology to examine other Katrina victims potentially in the class. They interviewed approximately a dozen people. How much effort/time beyond that it would take to prepare the report was not quantified. Significantly, the terms of their retention were not confirmed.

19. Indeed, from the outset we told them that we had limited resources.

20. Immediately following the above referenced conference call between co-counsel, Dr. Townsend and Dr. Weisler, there were numerous other phone calls that I did not participate in, but one or more co-counsel did participate in those other calls.

21. I was unaware of any terms of retention.

22. I was not senior to co-counsel, and I did not lead this litigation.

23. I never agreed to Dr. Weisler's bill.

24. I never agreed to Dr. Weisler's billing rate.

25. I never agreed to the scope of services performed by Dr. Weisler. I never fathomed he would put in so much time, or run so far afield.

26. From the receipt of plaintiff's invoice, all counsel objected to it, as the invoice was much more than we expected or could afford.

27. I never told Dr. Weisler that his first invoice should be presented at the time of his report. The timing of Dr. Weisler's invoicing was not discussed with me.

4

28. Dr. Weisler never advised me how large of a bill he was running up.

29. I did not tell Dr. Weisler that his report would serve as an interim invoice.

30. Dr. Weisler did not tell me that his services were going to be very expensive.

31. Dr. Weisler did not tell me that he was not a forensic psychiatrist.

32. Dr. Weisler was not "open and honest" about his limited experience.

33. I never had a discussion with Dr.Weisler about assembling a large volume of reading materials, or his reading a large volume of materials. I never told him to expand his bibliography. I told him that his report should be consistant with peer reviewed science. I believed he had knowledge of this field.

34. I never told Dr. Weisler that we were prepared to spend substantial sums of money. To the contrary, I consistently advised him from the outset that we had very limited resources.

35. Dr Weisler never offered to provide bills early on.

36. I did not ask Dr. Weisler to be an expert in multiple fields.

37. I never told Dr. Weisler that he did not have to control his expenses. I told Dr. Weisler the opposite – that we had very limited resources.

38. To my knowledge, no writing was ever drafted or executed agreeing to retain plaintiff as an expert in the Barge P.L.S.C.

39. To my knowledge, no agreement was made, either in writing, orally, or otherwise, to formally retain the services of plaintiff, Richard Weisler as an expert in the Barge P.L.S.C.

5

40. To my knowledge, no agreement was made, either in writing, orally, or otherwise, regarding the billing rate that plaintiff, Richard Weisler would charge for services as an expert in the Barge P.L.S.C.

41. To my knowledge, no agreement was made, either in writing, orally, or otherwise, regarding the scope of services that plaintiff, Richard Weisler, would conduct as an expert in the Barge P.L.S.C.

Sworn to and subscribed before me on this 25 day of October, 2011.

*s/Alan Fuchsberg*
_____
**ALAN FUCHSBERG**
**Affiant**

*s/Bradley S. Groce*
_____
**NOTARY PUBLIC**

6