UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K"(2) |
| *Boutte v. Lafarge*        05-5531 | * | |
| *Mumford v. Ingram*        05-5724 | * | JUDGE |
| *Lagarde v. Lafarge*       06-5342 | * | STANWOOD R. DUVAL, JR. |
| *Perry v. Ingram*          06-6299 | * | |
| *Benoit v. Lafarge*        06-7516 | * | MAG. |
| *Parfait Family v. USA*    07-3500 | * | JOSEPH C. WILKINSON. JR. |
| *Lafarge v. USA*           07-5178 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendant, American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), submits the following reply memorandum in support of its Motion for Summary Judgment. Plaintiffs' assertion that the Louisiana Direct Action Statute, LA. REV. STAT. ANN. art. 22:655,[1] gives them the right to re-litigate the insurance coverage issue is incorrect.

In their Opposition, Plaintiffs inappropriately attempt to frame the issue as a conflict of law question and blur the distinction between the law that applies to the underlying action against Lafarge North America, Inc. ("Lafarge") and the law which governs the interpretation of the P & I insurance contract. The case law cited by Plaintiffs in their opposition memorandum is inapposite

---

[1] At the time this litigation was filed, the Louisiana Direct Action Statute was found at LA. REV. STAT. ANN. art. 22:655. Title 22 was renumbered by Acts 2008, No. 415. The correct citation is now LA. REV. STAT. ANN. art. 22:1269.

Page 1 of 15

and misapplied.[2] Earlier this year, Judge Berrigan of this Court made it clear that the Court will enforce the governing law clause in a marine insurance policy even when a plaintiff asserts a claim against an insurer under the Direct Action Statute.

I. **The Louisiana Direct Action Statute does not create an independent cause of action against the American Club and does not expand the scope of coverage afforded.**

The Direct Action Statute, LA. REV. STAT. ANN. art. 22:655, does not grant an independent cause of action; it only grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured.[3] The Direct Action Statute specifically states that its intent is that "all liability policies *within their terms and limits* are executed for the benefit of all injured persons..."[4]

In *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, Judge Berrigan determined that a non-signatory to a marine insurance policy is bound by the terms and conditions of that policy, including a governing law clause, when it files a direct action against the insurer pursuant to Louisiana's Direct Action Statute.[5] In *Todd*, the plaintiff initially filed suit and obtained a judgment against the insured,

---

[2] Plaintiffs rely on *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991); *Bordelon Marine, Inc. v. F/V Kenny Boy*, 780 F.Supp.2d 497 (E.D. La. 2011); *Transco Exploration Co. v. Pacific Employers Ins. Co.*, 869 F.2d 862 (5th Cir. 1989); *St. Paul Fire and Marine Ins. Co. v. Pham*, 2007 WL 1466747 (E.D. La. 2007); and *Truehart v. Blandon*, 884 F.2d 223 (5th Cir. 1989). None of those cases involved the application of a governing law clause contained in the insurance policy. Here, the P & I insurance contract specifically states that it shall be governed by and construed in accordance with New York law.

[3] *Hood v. Cotter*, 5 So.3d 819, 829 (2008), citing *Cacamo v. Liberty Mut. Fire Ins.*, 764 So.2d 41, 43 (La. 2000); *Descant v. Adm' of Tulane Educ. Fund*, 639 So.2d 246 (La. 1994).

[4] *Hood*, 5 So.3d at 829 (emphasis theirs).

[5] 2011 AMC 1126, 1137, 2011 WL 1226464 (E.D. La. 2011).

which judgment was never satisfied.[6] As a result, the plaintiff filed suit against the insurer under the Direct Action Statute.[7]

Based upon the terms of the insurance policy, the insurer moved to compel arbitration with the plaintiff which the District Court initially denied.[8] On appeal, the United States Court of Appeals for the Fifth Circuit reversed the District Court and remanded the case to determine which law should apply to establish whether the plaintiff must arbitrate, focusing on the effect of a governing law clause in the insured's policy selecting English law to govern the policy, among other issues.[9]

On remand, Judge Berrigan followed Louisiana choice-of-law principles and determined that the law contractually agreed to by the principal parties to the insurance policy would govern the interpretation of that insurance policy in a direct action:

> In Louisiana, choice-of-law clauses in contracts are given effect unless there is law or strong public policy justifying the refusal to enforce the contract as written. *Prescott v. Northlake Christian School*, 369 F.3d 491, 496 (5 Cir. 2004)... Because the policy between [the insurer] and [the insured] specifically selected English law to control the interpretation of the policy, English law will govern both whether [direct action plaintiff] may be bound to the arbitration agreement between [the insurer and insured] as well as whether [direct action plaintiff]'s claims fall within the scope of the arbitration agreement.[10]

Addressing the plaintiff's argument that he could not be bound to an agreement to which he was not a party, Judge Berrigan noted that "[w]hile it is true that [direct action plaintiff] is not a party

---

[6]    *Id.* at 1127.

[7]    *Id.*

[8]    *Id.* at 1127-1128.

[9]    *Id.* at 1128.

[10]   *Id.* at 1134-35.

to the insurance policy between [the Insurer] and [the Insured], he is enforcing the terms of that policy by virtue of the Louisiana Direct Action Statute."[11] Observing the legal precept that the Direct Action Statute does not create an independent cause of action against the insurer, the Court found:

> that [direct action plaintiff] does not have an independent cause of action under the Direct Action Statute, but rather as a direct-action plaintiff Todd merely stands in the shoes of [the Insured] and is bound by the terms of its policy with [the Insurer] – provided the conditions of the policy do not violate Louisiana law. Therefore, even though [direct action plaintiff] did not agree to arbitrate his dispute with [the Insurer], he is bound by the arbitration agreement in [the Insured]'s policy with [the Insurer]. [12]

As a result, Judge Berrigan found that the Direct Action Statute did not vitiate the terms of the insurance policy inasmuch as the plaintiff was "seeking to enforce the terms of the contract" and had "embraced that contract such that... he is estopped from repudiating... that contract."[13]

Similarly here, Plaintiffs do not have an independent cause of action under the Direct Action Statute against the American Club. Instead, as direct-action plaintiffs, Plaintiffs herein merely stand in the shoes of Lafarge and are bound by the terms of its P & I insurance contract with the American Club.

Attached as Rec. Doc. 20494-4 to Plaintiffs' Opposition, the very terms and limits of the American Club's Rules which form part of the P & I insurance contract with Lafarge explicitly (and admittedly by Plaintiffs) provide for the application of New York law:

> 1.4.45. These Rules and any contract of insurance between the Association and a Member shall be governed and construed in

---

[11]   *Id* at 1137.

[12]   *Id.*

[13]   *Id.* at 1139.

> accordance with the law of the State of New York. This provision is not, in any way, to be construed as a waiver of any rights, claims or defenses available to the Association under any other Rule set forth herein, including, but not limited to, Rule 1.4.46.[14]

Acknowledging the governing law clause contained in the P & I insurance contract between Lafarge and the American Club, Plaintiffs argue that "[t]his provision concerns only first-party claims between Insurer and Insured, and has nothing whatsoever to do with, and no binding or even guiding effect upon, injured or otherwise damaged third parties bringing an action for negligence against the Insured, Lafarge North America, Inc."[15] It is true that the quoted provision does not bind Plaintiffs as to their negligence claims against Lafarge. However, that provision does bind Plaintiffs in enforcing the terms of the P & I insurance contract against the American Club. As previously stated, this Court has held that a third party to the insurance agreement stands in the shoes of the insured and is bound by the terms of the policy when it asserts a claim under the Direct Action Statute.

Section 22:655(D) of the Direct Action Statute plainly states this principle:

> It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor ***within the terms and limits of said policy.*** (Emphasis supplied)

Plaintiffs' argument also ignores Section 655(C) of the statute which provides that any direct action "shall be subject to all lawful conditions of the policy or contract... which could be urged by

---

[14]   See, Rec. Doc. 20494-4 at p. 22.

[15]   Rec. Doc. 20494 at pp. 4-5.

the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state." Plaintiffs have not suggested and have no basis to argue that the terms and conditions of the subject P & I insurance contract in this case violate the laws of this State.

Louisiana, New York and the general maritime law all expressly allow parties to a contract to choose the law relied upon by them in forming their agreement.[16] *Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049 (5th Cir. 1982)("Louisiana courts, however, permit parties to stipulate in their contract which state's law will govern the contract... Courts favor and tend to uphold choice of law provisions in contracts, [citation omitted], especially when such provisions are used in interstate transactions."); *Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2nd Cir. 1996)("New York law is unambiguous in the area of express choice of law provisions in a contract. Absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction."); *Great Lakes Insurance (UK) PLC v. Durham Auctions, Inc.*, 2010 AMC 185 (5th Cir. 2009)("Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable. Thus, Schoenbaum states: 'A choice of law provision in a marine insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust.'")

---

[16] LA. CIV. CODE ANN. art. 3540 provides: "All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."

Plaintiffs confuse the law which applies to their cause of action against Lafarge with the appropriate law governing the obligations arising under the P & I insurance contract between Lafarge and the American Club. While it may be true that maritime law gives rise to the Plaintiffs' cause of action against Lafarge, the P & I insurance contract between Lafarge (in whose shoes Plaintiffs stand) and the American Club requires the application of New York law to determine the scope and extent of coverage. It is inconsequential which choice of law rules are applied insofar as all require application of the New York law clause contained in the insurance contract at issue here. Plaintiffs are seeking to enforce the insurance contract directly for their benefit and are bound by the same contractual provisions which are binding on Lafarge and the American Club. Indeed, Lafarge agreed to the application of New York law in the coverage action litigated in New York and never argued otherwise.

If Plaintiffs' argument is accepted, it would materially change the terms of the P & I insurance contract negotiated between Lafarge and the American Club, which terms the American Club relied on in assessing risks and in setting the premium. If their argument is followed to its necessary conclusion, it would lead to the absurd result that the policy could be interpreted under fifty different state laws. More incongruously, a direct action plaintiff could obtain greater rights by filing a lawsuit directly against an alleged tortfeasor's insurer than the tortfeasor who paid for the insurance coverage would have against its own insurer. That was not the purpose of the Louisiana Legislature in enacting the Direct Action Statute and Plaintiffs have not cited any cases which support such a proposition.

Clearly, while the Direct Action Statute may provide a procedural right of action against the American Club, Plaintiffs cannot validly claim greater rights than Lafarge can claim under the P & I insurance contract that it purportedly bought and paid for. Such a result would expand an insurance policy beyond its terms and limits and would violate the stated purpose of the Direct Action Statute: to provide an injured party a procedural right of action against the insurer of an alleged tortfeasor *within the terms and limits* of the insured's policy.

Just as in *Todd*, this Court should reject Plaintiffs' flawed and unsupported interpretation of the Direct Action Statute.

## II. The New York court decisions recognized and considered the bailment finding by Judge Berrigan.

Plaintiffs devote considerable effort arguing that the decisions of the New York courts do not apply to them. In support of their argument, Plaintiffs cite to the bailment finding of Judge Berrigan in the Ingram Barge limitation proceeding as having been ignored by the New York courts while boldly asserting that bailment is the equivalent of a charter party. Plaintiffs are wrong on both counts.

Judge Haight initiated the "Background" portion of his decision by stating that "[t]he circumstances giving rise to the underlying third-party claims involving the barge ING4727, Ingram, Lafarge, and Hurricane Katrina are set forth in Judge Berrigan's opinion in *Ingram Barge Company (Petition for Exoneration from or Limitation of Liability)*, Civ. No. 05-4419, 2008 WL 906303 (E.D.La. March 31, 2008)."[17]

---

[17]  See, *American Steamship Owners Mut. Protection and Indemnity Ass'n, Inc. v. Lafarge North America, Inc.*, 2008 AMC 2343, 2008 WL 4449353, *1 (S.D.N.Y. 2008).

Later in that opinion, Judge Haight explicitly considered the bailment argument:

> In these circumstances, and as Judge Berrigan correctly held in *Ingram*, Lafarge's relationship to the barge ING4727 was that of a bailee and its duty that of a wharfinger. (citation omitted). If Lafarge negligently failed to secure the ING4727 at its wharf as Hurricane Katrina bore down, its negligence was that of a wharfinger... In the case at bar, Lafarge has wharfinger's insurance, but the catastrophic amount of damages far exceeds the coverage, and Lafarge would like to claim under additional policies. Understandable enough: but *ejusdem generis*, together with "the attendant circumstances in which the agreement was made," (citation omitted), preclude Lafarge from seeking coverage under its P & I policy with the American Club.[18]

The United States Court of Appeals for the Second Circuit left even less leeway for confusion regarding whether Plaintiffs' bailment argument fit within the terms of the American Club policy:

> Although the record does not clearly inform us of the precise limits of the term "otherwise," it is absolutely clear what "otherwise" is not: "otherwise" does not include the kind of relationship associated with a shipowner's bailment to a terminal operator – the relationship Ingram had with Lafarge for Barge ING4727.[19]

Furthermore, it is well settled that the type of bailment that is attributed to a terminal operator or wharfinger, such as Lafarge, is not equivalent to a charter agreement.[20] Interestingly, Plaintiffs have not asserted that the coverage decision reached by the New York courts was wrong. Nor do Plaintiffs argue that Judge Haight or the Second Circuit failed to address any of the potential issues that Plaintiffs may raise concerning the relevant questions of interpretation of the insurance contract.

---

[18] *Id*. at *9.

[19] *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 2011 AMC 90, 599 F.3d 102, 118 (2nd Cir. 2010).

[20] *Id.* at 118; *Dow Chem. Co. v. Barge UM-23B*, 424 F.2d 307, 311 (5th Cir. 1970); *Am. River Transp. Co. v. Paragon Marine Servs., Inc.*, 213 F.Supp.2d 1035, 1059 (E.D.Mo.2002); *accord Burns Bros. v. Long Island R.R. Co.*, 176 F.2d 406, 409 (2nd Cir. 1949).

Indeed, it is clear the New York courts closely considered the relevant questions of interpretation, such as the intent of the parties, the plain meaning of the words of the insurance contract, and the impact of any ambiguity in the wording of the insurance contract. Both Judge Haight and the Second Circuit agreed unequivocally that the American Club's P & I insurance contract did not cover the Barge ING4727. The New York decisions were well reasoned with the benefit of full discovery, briefing, oral argument and should be adopted by this Court.

### III. The doctrine of collateral estoppel weighs in favor of this Court accepting and adopting the decision by the New York courts.

Although the American Club does not rely on collateral estoppel as a basis for summary judgment, Plaintiffs have interestingly chosen to address this issue in their Opposition Memorandum. In doing so, Plaintiffs set forth a four prong test which must be met in order for collateral estoppel to apply, as follows:

1) The issue under consideration is identical to that litigated in the prior action;

2) The issue was fully and vigorously litigated in the prior action;

3) The issue was necessary to support the judgment in the prior case; and

4) There is no special circumstance that would make it unfair to apply the doctrine.[21]

If these elements are applied to the case at hand, one could argue that collateral estoppel should apply in this instance.

It is beyond dispute that the coverage issue involved in this litigation – whether the American Club P & I insurance contract provides coverage for the Barge ING4727 – is the same coverage issue

---

[21] Rec. Doc. 20494 at p. 11, citing *Black v. Arceneaux*, 1998 U.S. Dist. LEXIS 450, 10-11 (1998); *Enlund v. British Petroleum Oil Co.*, 1993 U.S. Dist. LEXIS 5541 *4 (1993).

which was decided by the New York courts. That coverage issue certainly was necessary to support the judgment in the prior case. The coverage issue was, itself, the core of the New York Coverage Action. Nor do Plaintiffs contend that the coverage issue was not fully litigated in the prior action. It was fully and vigorously litigated. Further, there is no special circumstance which would make it unfair to apply the doctrine of collateral estoppel in this instance.

It should be noted that satisfaction of the four elements of the test further demonstrates why this Court should be persuaded and accept the resolution of the coverage issue by the New York courts. As the Fifth Circuit has stated, a court might find the results of an arbitration proceeding between an insurer and insured to be persuasive, if not binding, and thus rely thereon in determining policy coverage.[22] If an appellate court may find such an arbitration decision to be persuasive, if not binding, this Court clearly may accept and adopt the coverage decision of a sister district court whose decision has been reviewed and affirmed by a federal appellate court, and find that decision to be persuasive, if not binding. Such a result would avoid duplicative re-litigation of the exact same issue.

**IV.    This is the very type of situation for which the legal doctrine of comity exists – to prevent a legal quagmire.**

Plaintiffs' Opposition simply advances an argument, which has already been decided by the New York courts, in a transparent effort to obtain a third bite at the apple.[23] Such an effort is precisely the reason why the doctrine of comity developed.

---

[22]    *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 378 n. 7 (5th Cir. 2006).

[23]    This effort to obtain a third bite at the apple is seen in their request for additional time to "examine and discover parol and extrinsic evidence, [which] may be 'helpful' to determine the intent of the parties to the Club's contract." See, Rec. Doc.20494 at p. 18.

Federal courts have long recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs.[24] "As between federal courts, ... the general principle is to avoid duplicative litigation."[25] "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[26]

Prior to the decision of either the Southern District of New York or the Second Circuit, Lafarge and the American Club engaged in exhaustive and comprehensive discovery which was completed prior to any decision being rendered. In considering the argument advanced by Lafarge that Plaintiffs would engage in this very tactic, Judge Haight satisfied himself that these exact issues would not be re-litigated by looking to Fifth Circuit precedent before stating that "[c]ertainly, if the roles were reversed I would be inclined to accept the determination by the Eastern District of Louisiana on the extent of coverage of a Louisiana insurance policy governed by Louisiana law."[27]

---

[24] *West Gulf Marine Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985); citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Covell v. Heyman*, 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390 (1884).

[25] *West Gulf Marine Ass'n*, 751 F.2d at 728-729, quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

[26] *Id*. at 729 (citations omitted).

[27] *American Steamship Owners Mut. Protection and Indemnity Association, Inc.*, 474 F.Supp.2d at 488.

In upholding the coverage decision, the Second Circuit reviewed Judge Haight's decision denying Lafarge's motion to transfer or stay the coverage action.[28] In upholding the District Court decision, the appellate court noted that "the District Court reasonably relied on Fifth Circuit precedent to conclude that it was unlikely that two inconsistent judgments on the merits would result from the court's denial of Lafarge's transfer motion."[29]

In spite of the faith placed in the legal principles binding the courts within this Circuit, Plaintiffs now ask this Court to do exactly that which runs counter to the legal precedent relied upon by the Second Circuit: Plaintiffs stand before this Court asking it to interpret an insurance agreement governed by New York law while advancing an argument that has already been considered by a sister district court, after exhaustive discovery, motion practice, oral argument, and subsequently affirmed after review by a United States Court of Appeals.

Your Honor previously stated it best:

> Simply put, two federal courts should not be adjudicating the same issues. The consequences of such a situation could result in two different results that both of which might be binding if upheld by the respective circuits involved. Therefore, this Court will not be complicit in creating such a legal quagmire.[30]

It is clear that Plaintiffs seek that which this Court has expressly stated is its desire to avoid[31] and that which is diametrically opposed to the principle of comity and respect for the decisions rendered by a sister court. Plaintiffs' request should be refused.

---

[28]  *New York Marine and General Ins. Co.*, 599 F.3d at 113.

[29]  *Id.*

[30]  See, Rec. Doc. 15860, p. 2.

[31]  *Id.*

## IV.     Conclusion

For the foregoing reasons, this Court should grant the American Club's Motion for Summary Judgment finding that the American Club did not insure Ingram Barge ING4727 and dismiss any and all claims asserted against American Steamship Owners Mutual Protection and Indemnity Association, Inc. with prejudice.

Respectfully Submitted,

MONTGOMERY BARNETT, L.L.P.

  *A. Gordon Grant, Jr.*
A GORDON GRANT, JR. (#6221)
PHILIP S. BROOKS, JR. (#21501)
3300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    (504) 585-3200
Facsimile:    (504) 585-7688

AND

CLYDE & CO. US LLP
John M. Woods, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone:    (212) 710-3900
Facsimile:    (212) 710-3950

*Attorneys for American Steamship Owners Mutual Protection and Indemnity Association, Inc.*

## CERTIFICATE OF SERVICE

      I do hereby certify that I have on this 31st day of October, 2011, electronically filed a copy of the foregoing and with the Clerk of Court using the CM/ECF system, which then sent notification of such filing to counsel of record.

                                          *A. Gordon Grant, Jr.*