[Fwd: FW: Barge Cases: RE: Dr. Weisler]

**Subject:** [Fwd: FW: Barge Cases: RE: Dr. Weisler]
**From:** "Brian A. Gilbert" <fishkat@cox.net>
**Date:** Sun, 17 May 2009 12:14:47 -0500
**To:** "Brian A. Gilbert" <fishkat@cox.net>

──FW: Barge Cases: RE: Dr. Weisler.eml───────────────────────────────────

**Subject:** FW: Barge Cases: RE: Dr. Weisler
**From:** "Richard T. Seymour" <rick@rickseymourlaw.net>
**Date:** Fri, 8 Aug 2008 13:46:13 -0400
**To:** "'Law Office of Brian A. Gilbert'" <bgilbert@briangilbertlaw.com>, "'Brian A. Gilbert'"
<fishkat@cox.net>, "'Shawn Khorrami'" <SKhorrami@kpalawyers.com>, "'Danny Abir'"
<DAbir@kpalawyers.com>

───────────────────────────────────────────────────────────────────────

**From:** Richard T. Seymour [mailto:rick@rickseymourlaw.net]
**Sent:** Friday, August 08, 2008 1:34 PM
**To:** 'Shawn Khorrami'; 'Law Office of Brian A. Gilbert'; 'Danny Abir'
**Subject:** Barge Cases: RE: Dr. Weisler
**Importance:** High

There is no question in any of our minds that Dr. Weisler needs good preparation for his testimony. The timing allowed virtually no time to refine and reshape the report, but it is still useful for us.

We have to keep in kind that there will be a Rule 23(f) petition for permission to appeal the class certification order, whichever way it goes, so we have to meet Fifth Circuit standards, not just those of Judge Duval. That is one reason why it is so critical that Dr. Kilpatrick beef up his work prior to the hearing on class certification.

The first part of the legal backdrop for his testimony is that the Fifth Circuit has allowed a class to be certified that included emotional distress injuries, where the main claims of the class involved property damage. See <u>Watson v. Shell Oil Co.</u>, 979 F.2d 1014 (5th Cir. 1992), rehearing granted, 990 F.2d 805 (5th Cir. 1993), appeal dismissed by agreement, 53 F.3d 663 (5th Cir. 1994). <u>Castano</u> held that Watson has no weight in the Fifth Circuit. ("he panel opinion in Watson has no precedential weight in this circuit. While the case was awaiting rehearing en banc, it settled. According to the Internal Operating Procedure accompanying 5TH CIR.R. 35, "the effect of granting a rehearing en banc is to vacate the previous opinion and judgment of the Court and to stay the mandate." See de Aguilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir.), cert. denied, 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995).") <u>Castano v. American Tobacco Co.</u>, 84 F.3d 734, 740 n. 12 (5th Cir. 1996). However, <u>Mullen v. Treasure Chest Casino, LLC</u>, 186 F.3d 620, 628 (5th Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000), relied on <u>Watson</u> in approving a bifurcated class ("In fact, unlike the "Frankenstein's monster" feared in Castano, 84 F.3d at 745 n. 19, this class is akin to other bifurcated class actions this Court has approved. See Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir.1992) (finding no abuse in the district court's certification of a bifurcated class action arising from an oil refinery explosion where liability and punitive damages would be resolved commonly and injury, causation, and actual damages would be resolved individually); Jenkins, 782 F.2d 468 (finding no abuse of discretion in district court's certification of a bifurcated class action where asbestos producers' "state of the art defense" as well as product identification, product defectiveness, negligence, and punitive damages would be resolved commonly and causation, actual damages, and comparative fault would tried individually); Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (S.D.Fla.1973), aff'd, 507 F.2d 1278-79 (5th Cir.1975) (unpublished) (certifying bifurcated class action on behalf of 350 passengers who were fed contaminated food aboard cruise ship where negligence would be tried commonly and causation and damages would be tried individually)." <u>Steering Committee v. Exxon Mobil Corp.</u>, 461 F.3d 598, 603 (5th Cir. 2006), also treated <u>Watson</u> as a live precedent, stating: "This court has likewise approved mass tort or mass accident class actions when the district court was able to rely on a manageable trial plan--including bifurcation and/or subclasses--proposed by counsel. See, e.g., Watson, 979 F.2d at 1017-18 & n. 9, 1024.").

<u>Turner v. Murphy Oil USA, Inc.</u>, 234 F.R.D. 597 (E.D.La. 2006), is our model. The court certified a class in

PRIVILEGED AND CONFIDENTIAL       BargePSLCWeisSeym001614

**Exhibit 52**      10/11/2010 3:28 PM

[Fwd: FW: Barge Cases: RE: Dr. Weisler]

which mass appraisal was used for the property damage claims, and an emotional-injury subclass of persons who did not evacuate was allowed because they were a small proportion of the class. Our retainer form does not allow a similar limitation to evacuees, so our motion to certify the class has a broad emotional-injury component and a fallback position with a comparable limitation. That enables us to satisfy our duty to the class while not sacrificing the approach the Fifth Circuit has previously approved. Our proposal is that those making an emotional-distress claim respond to a question on the class notice form and let us know. That can also be done at the end of the case, where it is more traditional, but the hope is to have a number of such claims that is considerably smaller than the size of the class, and at least to have the court contemplate this.

The second and more significant part of the legal backdrop for his testimony is that the Fifth Circuit requires that the predominance and superiority inquiries involve all claims in the class, not just those issues on which class certification is sought. E.g., Steering Committee v. Exxon Mobil Corp., 461 F.3d 598 (5th Cir. 2006). As part of this rubric, the Fifth Circuit will not allow any class to be certified that allows emotional-distress damages to be determined without any individualized consideration. It considers that an abuse of Rule 23. If we are to get class certification, we have to have a method and a trial plan that allows for individualized consideration. That element is already in our motion to certify the class. Dr. Weisler and his team spent their time and effort building and field-testing on 11 persons a model for the evaluation of large numbers of people, using scales that can be administered to these persons and that enable them to sort class members into groups that seem to have suffered no injury, suffered injury but have already wholly or largely recovered from it, or suffered injury and have ongoing problems of PTSD or other mental distress. The latter would be the larger-value claims, and can be tried individually as part of the overall class structure, just as some Rule 23(b)(2) back pay claims are heard individually without defeating the class. The second group might be able to be handled on a class basis after some bellwether trials are held, picking up on the suggestion in Castano v. American Tobacco Co., 84 F.3d 734, 747 (5th Cir. 1996) ("Our specific concern is that a mass tort cannot be properly certified without a prior track record of trials from which the district court can draw the information necessary to make the predominance and superiority analysis required by rule 23 . This is because certification of an immature tort results in a higher than normal risk that the class action may not be superior to individual adjudication."). We will in fact have some bellwether trials next year.

In the legal landscape with which we must deal, then, we have to have expert testimony admitting that there are significant differences among class members, and proposing a classwide means of sorting them out and obtaining an injunction requiring the creation and funding of such a screening mechanism and treatment program, with individualized determinations for higher-damage people and possible classwide trials of subgroups with claims that are over, probably preceded by bellwether trials.

It would have been fatal to pretend that there are no such differences, or that no individualized treatment would be necessary.

Richard T. Seymour
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W.
Suite 900
Washington, D.C. 20036-4129
   Voice: 202-862-4320
   Cell:   202-549-1454
   Facsimile: 800-805-1065
   e-mail: rick@rickseymourlaw.net
   Web Site: www.rickseymourlaw.com

"We represent the dispossessed of the Earth, and executives recently shown the door."

Mediation

Arbitration: Listed on American Arbitration Association Commercial Arbitration Roster and Employment Panel Roster.

CONFIDENTIALITY: Please note that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or some computer unconnected to either of us which this e-mail passed through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know AT ONCE.

PRIVILEGED AND CONFIDENTIAL     BargePSLCWeisSeym001615

                                        10/11/2010 3:28 PM