IMPORTANT 8/25/08 EMAIL FROM KHORRAMI"S FIRM RE EMOTIONAL INJURY CLASS

**From:** Matt Bailey [MBailey@kpalawyers.com]
**Sent:** Monday, August 25, 2008 10:16 PM
**To:** Barge Litigation
**Subject:** RE: Barge Cases (Memo Re Emotional Injury Claims)
**Attachments:** Memo re Mental Anguish [final 8. 25.08].doc; evacuation.pdf
Counsel:
Attached is KPA's memo regarding the various issues relating to emotional injury claims. The memo addresses the following in significant detail:
First, I believe we have a very strong argument that emotional distress claims must necessarily be limited to persons who failed to evacuate prior to Katrina hitting. Louisiana law contains a temporal/proximity limitation for each of the different theories. Moreover, we have found authority that would seem to go against the interesting television argument raised by Larry.
Second, I believe we can use the above limitation coupled with statistics regarding the number of persons who failed to evacuate to assert to the court that a emotional/personal injury subclass will be limited to a small universe of people. Statistics cited in Congress' Final Report on Katrina state that between 90% and 92% of New Orleans residents evacuated before Katrina hit (the report is attached). Such numbers may be extrapolated to put a cap on potential emotional injury claimants (and even persons who sustained physical injuries). Based on our proposed class size of 41,000 people, these statistics would cap the injury subclass to approximately 4100 people, less individuals who subsequently died. Of course, if we found better statistics, we could use those instead.
Third, the issue of whether we are required to submit expert testimony to recover emotional distress damages is subject to debate. We have not been able to find authority that conclusively goes one way over the other. I have done my best to highlight the issues and now submit this issue to the group for consideration. However, in my opinion I think there may be a strong argument that we can establish our burden based on evidence of the extreme nature of the event itself (rather than by way of an expert who essentially would be relying on the same facts). In other words, evidence demonstrating the extreme severity of the flooding, the physical isolation of class members, the high number of fatalities is more or less proof that people within the zone of the flooding reasonably experienced fear relating to their personal safety.
In any event, I encourage everyone to skim the memo and welcome any questions and/or concerns that you may have with regard to the analysis contained therein.
PRIVILEGED AND CONFIDENTIAL BargePSLCWeisSeym001786

---

```
From: Shawn Khorrami  [mailto:SKhorrami@kpalawyers.com]
Sent: Thursday, August 28, 2008 10:39 AM
To: Barge Litigation
Subject: Re: PLEASE READ AND RESPOND TO ME PROMPTLY
I don't know about the substitution issue. Our designation allows for
townsend and we won't really be relying on Weisler's report. At the same
time, if we're not relying on the report, we're going to have trouble
because of that.
I think we need to talk to the MRGO group and negotiate a continuance of our
individual trial as part of the filing to continue class cert. I want to be
on that call and we need to have it asap. That's our best chance here.
As to the modeling, I just want to be very clear, we are NOT certifying an
emotional distress class. Having said that, we ned to construct modeling
for the purpose of showing the court a summary way to resolve the individual
issues and reach an end game on the litigation.
```

**Exhibit 53**