

```
West E-Transcript Bundle Viewer
File  Edit  View  Tools  Help
Save As    Properties

WEISLER, M.D., RICHARD H.
WEISLER, M.D., RICHARD H.

                          UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF LOUISIANA
    ------------------------------------x
    IN RE: KATRINA CANAL BREACHES        :
    CONSOLIDATED LITIGATION              :  CIVIL ACTION NO.:
    RICHARD H. WEISLER, M.D.             :  05-4182 (09-2737)
    v.                                   :
    RICHARD T. SEYMOUR, ESQ.,            :  SECTION "K" (2)
    RICHARD T. SEYMOUR, P.L.L.C.,        :
    ALAN L. FUCHSBERG, ESQ., THE         :  JUDGE STANWOOD R.
    JACOB D. FUCHSBERG LAW FIRM,         :  DUVAL, JR.
    BRIAN A. GILBERT, P.L.C.,            :
    WIEDEMANN & WIEDEMANN, P.L.C.,       :  MAGISTRATE JUDGE
    LAWRENCE WILSON, ESQ., AND           :  JOSEPH C.
    WILSON, GROCHOW, DRUKER & NOLET      :  WILKINSON, JR.
    ------------------------------------x
            Deposition of RICHARD H. WEISLER, M.D.
                     Raleigh, North Carolina
                     Sunday, October 9, 2011
                            10:30 a.m.
    Pages: 1 - 260
    Reported by: Marian E. Cummings, LSR
           Deposition of RICHARD H. WEISLER, M.D., held at
    the offices of:



                CaseWorks, Inc.
                8601 Six Forks Road
                Suite 460
                Raleigh, North Carolina 27615
                (919) 676-5300
```

**Exhibit 59**

WEISLER, M.D., RICHARD H.

```
 3    Q.    Now, you mentioned Ronnie Montgomery?
 4    A.    Uh-huh.
 5    Q.    Was Ronnie Montgomery a runner who was
 6  simply going around collecting medical records?
 7    A.    Ronnie Montgomery was the medical
 8  investigator or runner that you hired and promised to
 9  pay and still hadn't been paid, but he was promised by
10  you to be paid and you hired him back when we first
11  began doing the evaluations and he was pulling the
12  records, medical records together.
13    Q.    Do you recall that when the evaluations
14  were just beginning you and Dr. Townsend got on the
15  telephone with me and said that you needed to have
16  this person that one of you knew, Ronnie Montgomery --
17    A.    I did not.
18    Q.    -- collect, collect medical records so you
19  would get them faster, do you remember that?
20    A.    That's correct.
21    Q.    And do you remember that there was a
22  discussion of the fact that it would cost a couple of
184:1 hundred dollars for him to do that?
 2    A.    I wasn't party to that discussion.
 3    Q.    Are you sure about that?
 4    A.    I don't remember hearing that discussion.
 5  You know, Dr. Hayes had worked with him before, but
 6  you were trying to get him to places because of the
 7  flooding in New Orleans it was very complicated to get
 8  records.
 9        There was a lot of places and doctor's offices
10  that didn't exist anymore or moved around or changed
11  names and they told you it was going to be very
12  complicated.
```

<960;1139m





**West E-Transcript Bundle Viewer**

File Edit View Tools Help

Save As | Properties

WEISLER, M.D., RICHARD H.

WEISLER, M.D., RICHARD H.

```
     21       Q.    I'm not asking you that, did it ever come
     22   to your attention?
186:1         A.    No.
      2       Q.    Dr. Townsend never told you that?
      3       A.    No.
      4       Q.    You never received an email about that?
      5       A.    I don't remember receiving an email about
      6   that personally.
      7       Q.    If that had ever come to your attention
      8   would that have informed you that there was a sharp
      9   limit on what could be spent and done in the case?
     10             MR. WILSON:  Objection, speculation.
     11       A.    I can't answer that.
     12       Q.    You don't know one way or the other
     13   whether the difficulty of approving a couple of
     14   hundred dollars meant that you could not go off and do
     15   a general library-wide search for documents?
     16             MR. WILSON:  Objection, still more
     17   speculation.
     18       A.    All I can tell you is I was asked to be an
     19   expert in multiple areas by you and by Mr. Gilbert and
     20   Mr. Fuchsberg and the other members of the team to
     21   cover all broad area of medicine and psychiatry all
     22   ages and to be knowledgeable about the field and be
187:1   able to defend it against cross-examination, to
      2   prepare for a deposition that was certainly going to
      3   happen.
      4             And as I said, after my sending this expert
      5   attachment, compensation attachment, I heard nothing
      6   for a month other than from you to prepare more data
      7   to send things to them on 7-22, if I remember
      8   correctly, the other side was asking for more
```

```
        8  correctly, the other side was asking for more
        9  information and prepare that, but nobody said anything
       10  and do you remember I guess I shouldn't ask you a
       11  question, but at any rate I don't remember hearing
       12  anything about that.
       13       Q.    Did you ever conceive that there were any
       14  practical limits on what was appropriate to do and to
       15  charge for in this case?
       16       A.    What I was told was this is not about one
       17  person, this is about 5,000 claimants.
       18       Q.    And you made your own judgement about what
       19  that meant?
       20            MR. WILSON:  Objection.  He didn't finish
       21  his answer.  Don't cut him off.
       22            MR. GILBERT:  Objection, responsiveness.
    188:1       A.    I was asked to prepare for 5,000 people
        2  that I would potentially have to be able to speak
        3  for.
        4       Q.    You made your own judgment about what was
        5  appropriate in light of the fact that 5,000 people
        6  were involved; is that correct?
        7       A.    No, you told me, your group told me to do
        8  that.  Mr. Fuchsberg instructed me and you instructed
        9  me to become an expert in multiple areas that I was
       10  not an expert in because you were only allowed one
       11  expert and one shot at it and you had a lot on the
       12  line and to do it right basically.
       13       Q.    Were you asked to become an Ph.D. in
       14  multiple areas?
       15       A.    Be an expert.
       16       Q.    Were you asked to be a Ph.D. in multiple
       17  areas, yes or no?
```