**INCLUDES PERSONAL GUARANTEE INFO, FINANCING INTEREST RATE IN BULLET 9, AND INFO ON MY BILL**
**From:** Richard T. Seymour [rick@rickseymourlaw.net]
**Sent:** Wednesday, August 20, 2008 7:09 PM
**To:** 'a.fuchsberg@fuchsberg.com'; 'Kelmachter, Leslie'
**Subject:** Barge Cases: Withdrawal and Agreement
**Importance:** High

Alan and Leslie, the New Orleans team and I have met on your
proposal. We need to know the numbers we're dealing with and don't want to
leave avoidable room for disagreement at the other end, so here is what we
counter-propose:
1. The withdrawal motion needs to be filed this week.
2. You provide us with an all-inclusive number of what you want for
fees and expenses, separately stating lodestar, expenses, and desired
adjustment to the lodestar. Chet never entered an appearance (and so could
not make a petition), and most of what he did involved the effort to sell us
financing services (which from the standpoint of the seller is not
compensable even if your time as counsel trying to get financing is
compensable), rather than things advancing the case. If you want to include
his time as part of your firm's number, that's okay.
3. Time descriptions would be useful, but if you cannot have them
ready shortly, just give us the number, subject to downward adjustments only
if you find that the detailed records do not support the number.
4. (a) If the number you submit now looks low enough to the NOLA team,
the NOLA team will simply pay you the number out of the fee award when it is
received and
the remaining parts of this paragraph will not apply.
(b) If the number is more substantial but still looks reasonable to
the NOLA team, if we win the case your lodestar and expenses would
eventually have to be backed up in a submission to the court along
with our time, for purposes of deciding the amount of the fees to be
awarded from the class recovery, or for deciding what service on the
PSLC should be compensated, or for any other purpose.
(c) If the court does not reject the time or rates as improper or
inadequately described, then you will get the number you submit
(taking any future downward adjustment into account) from the fee
recovery from the fee recovery of the NOLA team to the extent your fee
recovery does not support it.
(d) If the court accepts some time as adequately supported but does
not make an award for the time because it was not administrative time
on the PSLC or because it was spent trying to arrange financing, the
NOLA team would regard the time as accepted and as supporting the
number you submit to us.
(e) If the court rejects some of your lodestar for any other reason,
you will get the proportion of the number corresponding to the
proportion of your lodestar found proper, along with your expenses,
from the fee recovery from the fee recovery of the NOLA team to the
PRIVILEGED AND CONFIDENTIAL BargePSLCWeisSeym001772
extent your fee recovery does not support it. That's an incentive for
you to spend the same care we will have to spend in preparing this

**Exhibit 66**

submission.
(f) If the case turns out to involve the litigation of individual claims with court supervision of the fees, the provisions of paragraphs 5(a), (b), and (c) will control as if this were a class action.
(g) If the case turns out to involve the litigation of individual claims without court supervision of the fees, then your submission of time would be made to the NOLA team and any time not reasonably challenged by the NOLA team would be accepted as supporting the number. Either side could take a dispute as to reasonable time to arbitration by a single-arbitrator retired judge on the JAMS list under the JAMS commercial rules, or before any retired Louisiana Federal or State judge agreed by the parties, with the loser paying all fees and expenses for the forum and the arbitrator, and both sides would accept the result without further litigation. The provisions of paragraphs 5(a), (b), and (c) will control as to all time ultimately accepted, as if this were a class action. Payment would be made at the same time as other counsel are paid from the recoveries, to the extent possible.
5. You would be held harmless as to any possible liability for any expenses or malpractice that happens after your withdrawal, but you do not seek to be held harmless for any malpractice that occurred during the time you were involved in the case even if the effects are felt afterward.
6. The $175,000 Chet Kerns sent to the Barge committee would be reimbursed out of any award at the agreed interest rate of 36% per annum simple interest.
7. The $25,000 Chet Kerns paid to the other lawyers would be reimbursed out of any award at the agreed interest rate of 36% per annum simple interest if we receive the documentation this week. It is essential to have the statements and documentation of payment for the lawyers Chet consulted. We were not able to get it from them.
8. The medical expert bills are a potential problem. We are trying to negotiate a lower amount, and are not sure where this will wind up. See the discussion below. It would be helpful to get your number, and then I can talk with everyone again.
9. Every firm on the NOLA team, and you, Leslie and Chet would sign the agreement.
I also want to respond further to a question you asked last week about the new arrangements. The New Orleans firms and I have all signed agreements under which we are personally liable, alongside our firms, to repay all funds advanced for case expenses.
It would be great to put it all in one motion.
Rick
Richard T. Seymour We have gone from the goal of full non-recourse, to full individual recourse. The fact that everyone has gone into a much worse position as a result of the failure to obtain nonrecourse
funding from DiNardo or another source may lead to some difficulty in accepting your proposal. Another major difficulty may be that the practical effect of your proposal is that no one but your firm and Chet will ever receive even their lodestars without bearing a large financial risk.
PRIVILEGED AND CONFIDENTIAL BargePSLCWeisSeym001773
The $216,000 bill from Dr. Weisler is another point of difficulty. Neither I nor anyone in New Orleans was on any call or e-mail in which the doctors were pressing you for an engagement letter specifying the compensation or range of compensation, or discussing how much time was being spent, or pressing you to send in interim statements so that the team would