UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Weisler v. Seymour, et al. 09-2737* | * | |
| | * | JUDGE |
| | * | STANWOOD R. DUVAL, JR. |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |

********************* *** **** *** **********************

**MEMORANDUM OF PLAINTIFF, DR. RICHARD H. WEISLER IN
OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

**MAY IT PLEASE THE COURT:**

Defendants, Richard T. Seymour and Richard T. Seymour, P.L.L.C. (collectively "Seymour") and Defendants, Alan Fuchsberg and the Jacob D. Fuchsberg Law Firm (collectively "Fuchsberg") have now filed a Motion to Strike the Answer filed by Plaintiff, Dr. Richard H. Weisler, ("Dr. Weisler") to the Defendants' Counter-Claims. Dr. Weisler submits that the Defendants' Motion is submitted purely for tactical reasons, that the Defendants have suffered no prejudice whatsoever by the filing of same, and, that under the applicable jurisprudence, the Defendants are not entitled to the relief they seek.

1

**FACTS**

*Initial Pleadings*

On February 11, 2009, Dr. Weisler filed his original Complaint [1] against the present Defendants seeking recovery of over $272,000.00 in unpaid invoices.  He also sought recovery of attorney's fees since the contractual relationship with the Defendants constituted an "Open Account" under applicable Louisiana law.   All of his factual and legal theories of recovery were set out in great detail.

On May 29, 2009, the Defendants filed a Motion to Dismiss [18959] all of the claims against the individual attorneys named as Defendants.  On July 7, 2009, Dr. Weisler filed a detailed Opposition Memorandum to that Motion [19119, see p. 6].  The Court eventually converted the Motion to a Rule 56 Motion for Summary Judgment on January 21, 2010, and denied it [Doc. 19582].  But previously on the same day the Motions to Dismiss was filed, May 29, 2009, the Defendants had also filed their "Answer, Affirmative Defenses, Counter-Claims and Request for Trial by Jury [Doc. 18946]".  Undersigned counsel focused only on the Motion for Dismiss which efforts were successful; however, no Answer was filed at that time.  Neither Seymour nor any of the other Defendants would ever mention the missing Answer to the Counter-Claim until their eventual default pleadings.

*Discovery Efforts*

Meanwhile in early 2009, undersigned counsel arranged for a Rule 26(f) Conference

2

with opposing counsel representing all Defendants, and also arranged for an exchange of initial disclosures.  While all of Dr. Weisler's e-mails were provided by hand to opposing counsel on a CD as per agreement, opposing counsel refused to do so and instead, reproduced and "Bates stamped" many of Dr. Weisler's own materials as the Defendants' initial disclosures and sent them back to undersigned counsel.   Under these circumstances, a formal Request for Production was served on the Defendants, simply asking for their e-mails exchanged between and among themselves, as well as with any of the medical experts.  The Defendants refused to do this and instead of responding, filed an "Ex Parte Motion for Formal Extension of Time to Respond [Doc. No. 20003]."  This Motion was set for hearing on September 1, 2010.  In the meantime, the Defendants provided some of the e-mails, but most of the information was literally "blacked out" such that the e-mails were, for all intent and purposes, relatively useless.

On September 1, 2010, the Magistrate granted an extension of time until October 18, 2010, for the Defendants to respond to the simple discovery request.  On October 15, 2010, the Defendants filed a Motion for Protective Order to which Dr. Weisler consented.  On October 22, 2010, the Defendants filed for another Protective Order, which Dr. Weisler vehemently opposed as this would have led to more "blacked out" e-mails [Doc. No. 20110].  On November 15, 2010, the Magistrate Judge issued a "Protective Order [Doc. No. 20124].  Eventually, the Magistrate would rule that the Defendants had to produce

3

most of their e-mails and Dr. Weisler continued in his efforts to obtain unredacted copies of same and to vigorously pursue his claim.

### *Plaintiff's Discovery Efforts*

Eventually the e-mails produced by the Defendants would reveal, as Dr. Weisler had anticipated, that the Defendants knew that they owed Dr. Weisler his fees, but were taking a litigation position that was completely contrary to the content of their e-mails.   For instance, Fuchsberg had praised Dr. Weisler's report.[1]   Likewise, Defendant, Brian A. Gilbert, praised Dr. Weisler's report, but regretted the fact that the Defendants had not provided him sufficient time to refine the report.[2]  Finally, the Seymour Defendants issued an e-mail admitting that Dr. Weisler's position on its invoice was the correct one, and that the Defendants owed him his fees for professional services rendered.  As the Seymour Defendants wrote on September 3, 2008:

> I do not know who has been paid what.  Weisler thought none of them had been paid anything by KPA.
>
> We need to keep in mind the actual situation.  Weisler had to research fields of expertise that were NOT his own, in order to be able to sign a report that included fields of expertise NOT his own.

---

[1]     Exhibit No. 1.

[2]     Exhibit No. 2.

4

Weisler had to oversee the activities of people in fields of expertise that were NOT his own, for the same reason.

We asked him to do these things, because of the hard limit on the number of experts.

Weisler says that he told Alan (Fuchsberg) he wanted to send interim statements, to make sure that all of the lawyers knew how much work was being done, and the kind of work that was being done, so they would not be surprised. He says that Alan told him not to because we were tied up in other things and could not pay attention to it at the time, and assured him there would be no problem.

Weisler says that Alan never mentioned the limit or the need to hold costs down at any point.

Weisler and Townsend tried a couple of times to get a reporter - writer into the mix at the end, with the explanation that it would save time to let someone who knew how to do it quickly handle the job. Now we see that, whatever the other concerns, this might have saved money.

Did they actually work long hours in the last week? I expect so. Were they efficient? Probably not. We can talk about the lack of detail and we can talk about efficiency (they will respond with the point in the paragraph above) and one can have civilized conversation that might lead somewhere. [redacted]

As I've said before, I think we will lose as to the bulk of Weisler's bill under these circumstances if there is litigation.

I do NOT think it was a good idea to call Shawn (Khorammi) and ask him to do any negotiation, unless our goal is to guarantee litigation. We are at risk, not Shawn, and Shawn is far too convinced with perspectives that are contrary to those

a judge and jury will take.

Negotiating this mess is our job, if we want to have any hope of success.

Rick.[3]

Likewise, Defendants, Brian Gilbert, also admitted that the Defendants owed Dr. Weisler his fees:

It is entirely unrealistic and fundamentally wrong to suggest or believe that we can simply tell Weisler 'P- - - off.  You get nothing.'  ***Whether we are satisfied with the result or not, he did what we considered to be the proper approach to emotional damages***.  We don't agree with his fees, but we assume risk any time we engage an expert, that the expert will reach conclusions we don't like, or that we later second-guess.[4] (Emphasis added)

With e-mails such as these, it was apparent that Dr. Weisler would likely prevail on summary judgment as to the Defendants' breach of contract, the Louisiana "Open Account" theory and the dismissal of the Defendants' Counter-Claim.  Consequently, it was unnecessary for Dr. Weisler to obtain any more discovery.  This was particularly so since all of the medical experts involved in this project would support his case if it went to trial.

---

[3]      Exhibit No. 3

[4]      Exhibit No. 4.

Dr. Weisler therefore awaited conclusion of the Defendants' discovery efforts to file his Motion for Partial Summary Judgment on these issues in accordance with the Court's scheduling deadlines.

### Defendants' Belated Discovery Efforts

For reasons that remain unclear, the Defendants conducted little in the way of discovery themselves. The most notable was Seymour who attempted service of over three hundred Requests for Admission.  The Magistrate would rule on April 13, 2011 that this was harassment and that Dr. Weisler did not need to respond [Doc. No. 20224].   Finally, with the discovery period rapidly drawing to a close,  Seymour  indicated a sudden interest in deposing Dr. Weisler as well as representatives of the University of North Carolina ("UNC") and Duke University ("Duke") where Dr. Weisler teaches, as well as the Center for Disease Control ("CDC"), all as is evidenced by the attached correspondence from Seymour dated September 9, 2011.[5]

Once again the Defendants' poor timing, particularly that of Seymour, would create another deadline crisis, as there was little time left to schedule the deposition on the requested dates of October 10-14, 2011, just days before the discovery deadline.  Another issue was that the deadline for filing dispositive motions was October 18, 2011, but if Dr.

_____

[5]        Exhibit No. 5.

Weisler did not appear for a deposition prior to that date regardless of the poor timing of the Defendants' request, the Defendants would no doubt argue that Dr. Weisler's planned Motion for Partial Summary Judgment should be denied since the Defendants had not taken his deposition.

Consequently, despite the Defendants' belated request, Dr. Weisler still agreed to appear for a deposition on **Sunday morning**, October 9, 2011 in Raleigh, North Carolina. In the meantime, the Defendants apparently waived the depositions of UNC, Duke and the CDC, as these were never scheduled. Dr. Weisler's deposition went forward as scheduled, however.

### The Motions

On October 18, 2011, undersigned counsel filed the long planned Motion for Partial Summary Judgment on behalf of Dr. Weisler in accordance with the Court's scheduling order. This Motion addressed the issues of: (1) the Defendants' breach of contract; (2) the "Open Account" status of Dr. Weisler's oral contract with the Defendants; and (3) the dismissal of the Defendants' Counter-Claim. The next day, undersigned counsel received a copy of the Defendants' various pleadings seeking a default against Dr. Weisler on their Counter-Claim. This was the first time that undersigned counsel realized that no Answer to the Counter-Claim had been filed, despite the fact that a timely response to the Defendants' Motion to Dismiss had been filed and a timely Motion for Partial Summary

Judgment on the Defendants' Counter-Claim had been filed. Dr. Weisler had also been vigorously pursuing Motion practice on discovery to eventually obtain all of those e-mails which were necessary for a successful Motion for Partial Summary Judgment, not only on the Counter-Claim but on the "Open Account" and the Defendants' obvious Breach of Contract.

It should be noted that at no time did counsel for any of the Defendants, particularly Seymour, who filed the Defendants' Motions, ever apprise undersigned counsel ahead of time of this situation or of the Defendants' intentions, as a courtesy or otherwise. Significantly, Dr. Weisler's Motion for Partial Summary Judgment was filed *before* the Defendants' Default Motions were filed.

Having been apprised by the filings of the situation, undersigned counsel immediately filed an Preliminary "Opposition to the Defendants' Application for Entry of Default" [20500], indicating that a responsive pleading addressing the Counter-Claim, i.e. a timely filed Motion for Partial Summary Judgment had been filed *before* that Application was filed. At the same, an Answer was filed to the subject Counter-Claim, also setting forth specific denials of all of the Defendants' allegations and affirmative defenses consistent with the original Complaint, as well as the Plaintiff's Opposition to the Defendants' earlier Motion to Dismiss, and the newly filed Motion for Partial Summary Judgment. Consequently, the Answer added no new issues or claims. Subsequently, undersigned

9

counsel filed a formal Opposition to both the Application for Entry of Default [20507], as well as a separate Memorandum in Opposition to the Defendants' Motion for Entry of Default [20503], addressing the separately implicated sections of FRCP Rule 55.  The Defendants then filed the instant Motion to Strike Dr. Weisler's Answer in an effort to reactivate their default Motions.

### *Motion to Strike*

The Defendants' contentions in support of their Motion to Strike boil down to:

1.    (I)t is now too late for Defendants to conduct discovery on the Counter-Claims and on their own General Allegations 2, 5-8 and 12-16."

2.    The Defendants "did not take discovery to establish the uncontroverted facts set forth in the General Allegations in support of the Counter-Claims."

3.    The Seymour Defendants did not depose the other members of the medical team to establish the facts set forth in General Allegations 2, 3, 4, 7, and 8 of their Counter-Claims.

4.    The Seymour Defendants did not take a trial deposition of the Centers for Disease Control to establish the facts set forth in (sic) General Allegations 5, 6 and 7 of their Counter-Claims.

5.    The Seymour Defendants did not move to compel discovery of the bodies of these E-mails (from Dr. Weisler's list), which would have helped establish the

"facts set forth in General Allegations 12 and 13."

First off, the Defendants' contentions in their Motion clearly establish that their Counter-Claim presents a blatant violation of FRCP Rule 11.  The Defendants admittedly filed their Counter-Claim with no facts to support it and apparently had planned to pursue discovery to find facts to support the Counter-Claim.  This is the exact opposite of what is supposed to take place under Rule 11, which requires "a reasonable inquiry" before filing a pleading, which the Defendants admit  never took place. Moreover, as Dr. Weisler's filings with attached e-mails from the Defendants show, the Defendants contentions are entirely false and any discovery would have simply further established the Defendants' bad faith.

The Defendants also suggest a supposed casual nexus between the late Answer and their lack of discovery. This makes no sense.  For months before the Answer to the Counter-Claim was filed,  nothing prevented the Defendants from pursuing discovery to find at least some facts to support the Counter-Claims which they had filed.  Instead, the collection of their own e-mails which they reluctantly produced only after a Court Order, clearly shows that the Counter-Claim was brought in bad faith and should be the subject of Rule 11 sanctions. In any event, the timing of the Plaintiff's Answer to the Counter-Claim had nothing to do with the Defendants' unilateral decision to conduct no discovery until the last week of the discovery period and then forego most of those discovery efforts as well, including the proposed depositions mentioned by Seymour in his correspondence.

## APPLICABLE LAW

Putting aside the lack of logic or any causal nexus between the Defendants' failure to conduct discovery and the Plaintiff's Answer, the jurisprudence related to situations such as these clearly requires that the Defendants' Motion to Strike be denied.

### *Motions to Strike, Generally*

Motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed.[6]  This is because a motion to strike a defense is considered a "drastic remedy which is disfavored by the Courts and infrequently granted."[7] It is a such drastic remedy that it should be  resorted to only when required for the purposes of justice.[8]  Certainly, as set forth above, the Plaintiff's defenses to the Defendants' Counter-Claim were extremely likely to succeed.

The Courts of Appeal have also expressed on numerous occasions their preference that "litigation disputes be resolved on the merits, not by default."[9]  "Even where technically appropriate and well-founded, a motion to strike defenses as insufficient are often denied

---

[6]     *Conn v. City of New York*, 230 F.Supp. 2d 432, 438 (S.D. N.Y. 2002)

[7]     *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W. Va. 1993); *United States v. Fairchild Industries, Inc.*, 766 F.Supp. 405, 408 (D. M.D. 1991)

[8]     *N. Penn Transfer, Inc. v. Victuaualic Company of America*, 859 F. Supp. 154, 158 (E.D. PA. 1994).

[9]     *Marfia v. T.C. Zirant Bankasi*, 100 F.3d. 243, 249 (2nd Cir. 1996)

in the absence of a showing of prejudice by the moving party."[10]  As shown above, no such prejudice exists here as the Defendants' problems with discovery were of their own making.

### Late Answers

Similarly, with regard to late answers, "courts that have considered a motion to strike based on the late filing of an answer have rejected the motion as a remedy unjustified by the circumstances."[11]  This is largely because the Courts "strongly favor resolution of disputes on their merits,"[12] and a motion to strike "should not be granted absent a showing of undue prejudice."[13] Significantly, where a party seeking to strike a pleading claims to have been precluded from conducting discovery, but it is a problem of their own making, as here, that party cannot claim prejudice as a result.[14]  Finally, on the basis of this same reasoning one court has held that where a party "thoroughly litigated a potentially dispositive motion on behalf of his clients, simply neglected to file an answer to a complaint

---

[10]        *Clark*, 152 F.R.D. at 70.

[11]        *Khadka v. Rajamani*, 2009 WL 910849 (E.D. Va. 4/1/09)

[12]        *Jackson v. Beech*, 636 F.2d. 831, 835 (D.C. Cir. 1980); *United States v. Marz*, 274 F. Supp. 2d. 750, 756 (D. M.D. 2003); *See*, also, *United States v. Shaffer Equipment Co.*, 11 F.3d. 450, 453 (4th Cir. 1993).

[13]        *Provident Life & Accident Insurance Co. v. Cohen*, 137 F.Supp. 2d. 631, 632 (D. M.D. 2001)

[14]        *Kirola v. City and County of San Francisco*, 2011 WL 89722 (M.D. Cal. 1/11/11)

thereafter," the "failure to act was a result of excusable neglect", and the opposing party "never moved for entry of default" for months while a "party's answer was outstanding," a motion to strike should not be granted.[15]

With regard to late Answers to Counter-Claims, the applicable law is even more strongly shaded against Motions to Strike.    In the seminal case of *Canady v. ErbElktromedizen GMVH*,[16] the Court denied the Defendants' Motions to Strike the Plaintiff's late Answer to the Defendants Counter-Claims and for an entry of a default judgment on those counter-claims.  In its reasons, the Court first noted that granting the Motion would "contravene the established policies disfavoring Motions to Strike . . . and favoring resolution of cases on their merits."[17]   The Court also noted that, "this line of reasoning rhymes with the Federal Rules of Civil Procedure, which generally embody an effort to ensure that courts decide cases based on the strength of the adversaries' arguments rather on the skillful use of technicalities."[18]  Finally, along the lines of the latter,

---

[15]    *Romero v. Barnett*, 2011 WL 1938147 (D. MD. 5/20/11).

[16]    307 F.Supp. 2d 2 (D.D.C. 2004).

[17]    307 F.Supp. at 7-8, citing *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribus Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981); *Jackson v. Beech,* 636 F.2d 831, 835 (D.C. Cir. 1980); *Llewellyn v. North M American Trading,* 1996 WL 715532 *2 (S.D. M.Y. 12/11/96).

[18]    307 F.Supp. at 9.

14

the Court stated:

> The court therefore declines the Defendants' invitation to play
> 'a game of skill in which one mis-step by counsel may be
> decisive to the outcome,' accepting instead the well-founded
> precept disfavoring default judgments. (Citations)[19]

Finally, in denying the Motion to Strike in anticipation of denying all of the Defendants'

default motions, the Court observed:

> The defendants would like to strike the plaintiffs' answer so
> that the court can declare the plaintiffs in default and proceed
> toward default judgment.  Such a result, however, would
> contravene the established policies disfavoring motions to
> strike (*Stabilisierungsfonds Fur Wein*, 647 F.2d at 201), and
> favoring the resolution of cases on their merits.  *See*, *Jackson
> v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) (emphasizing
> that courts 'strongly favor resolution of disputes on their merits'
> and 'it seems inherently unfair to . . . enter judgment as a
> penalty for filing delays.  (Internal quotations omitted)).  The
> court therefore denies the defendants' motion to strike and
> moves on to address the defendants' motion for default
> judgment.[20]

Most, if not all, courts follow the Court's decision in *Canady,* denying Motions to

Strike and related default motions.  For example, stating that, a Motion to Strike is an

"extreme and awesome remedy that is highly disfavored by the courts," the Court in

---

[19]    *Id.*

[20]    307 F.Supp. at 8.

15

*Mitchell v. First Central Bank, Inc.*,[21] denied a defendant's motion to strike the late answer of the plaintiff to the defendant's counter-claim and default motions.  Likewise, in *AT&T Corp. v. Dataway, Inc.*,[22] the Court denied the defendant's motion to strike a plaintiff's late answer to a counter-claim for reasons which have immediate application here.  The Court noted, *inter alia*, that the plaintiff had been prosecuting and defending this action from the inception of the case; the plaintiff had filed a summary judgment related to the counter-claim; the plaintiff had been involved in numerous discovery motions which also involved the merits of the case; and, also as here, the defendants never raised the plaintiff's failure to answer previously and seemed to have avoided bringing the matter to the plaintiff's attention "in order to seek a tactical advantage."[23]  All of these reasons apply here, particularly the Defendants' transparent effort to obtain a tactical advantage.

---

[21]     2008 WL 4145449 (M.D. W. Va. 9/8/08).

[22]     577 F.Supp. 2d 1099 (N.D. Cal. 2008).

[23]     5577 F.Supp. 2d. at 1103.

16

## CONCLUSION

Based on the foregoing, including the long-standing federal policy against Motions to Strike and Default Motions, as well as the jurisprudence which consistently disfavors same, Plaintiff submits that the Defendants' Motion to Strike as well as the related Default Motions should all be denied.

Respectfully submitted,

___/s/ Andrew C. Wilson___
Daniel J. Caruso (3941)
Andrew C. Wilson (01162)
Susan F. Clade (1033)
Christopher B. Conley (31674)
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
30th Floor - Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone (504) 569-2030
Facsimile (504) 569-2999
Attorneys for Plaintiff, Richard H. Weisler, M.D.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

___/s/ Andrew C. Wilson_____

N:\DATA\N\50182001\Pleadings\Opposition to Motion to Strike.wpd