UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION<br><br><br>PERTAINS TO:<br><br>MRGO<br>*Armstrong*, No. 10-866 | § CIVIL ACTION NO. 05-4182 "K"(2)<br>§ JUDGE DUVAL<br>§ MAG. WILKINSON<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED HEARING
AND INCORPORATED MEMORANDUM ON THEIR
<u>MOTION TO AMEND SCHEDULING ORDER REGARDING EXPERT DEADLINES</u>**

Defendant Washington Group International, Inc. ("WGII") respectfully submits this opposition to Plaintiffs' Motion for Expedited Hearing and Incorporated Memorandum on their Motion to Amend Scheduling Order Regarding Expert Deadlines (the "Motion"). While the parties and experts have been able to agree on many adjustments to the schedule that would not affect the *Daubert* hearing date and potentially affect the trial setting itself, WGII must oppose these proposals because, as proposed, they do both, and in the process are prejudicial to WGII's defense. However, WGII and the United States offered to ask the parties' respective experts to pursue a compromise on these issues, and Plaintiffs' counsel, as of today, November 7, 2011 proposed a telephone conference between the key experts to see if a compromise was still feasible. Those efforts to compromise the matter will be ongoing.

Plaintiffs assert that an expedited hearing on their underlying motion would "conserve what time remains for pretrial efforts, saving the delays inherent in waiting for these Motions to be heard on the next available motion date" and that "economic conditions justify expedited

consideration" of their request for yet another extension of the parties' expert report deadlines. Mot. at 1. The first of these purported justifications is dubious at best; the second is demonstrably false. Moreover, an expedited hearing would prejudice WGII's ability to properly respond to erroneous or misleading factual assertions in Plaintiffs' Motion. For these reasons, and those set forth in more detail below, Plaintiffs' Motion should be denied.

## ARGUMENT

### I. The Factors That Plaintiffs Claim Justify an Expedited Hearing Do Not Exist.

It strains credulity for Plaintiffs to claim that this Court should decide, on an expedited basis, a motion to *extend deadlines* in order to "conserve . . . time." The result of Plaintiffs' underlying motion, if granted, would be to delay even further the beginning of an already limited discovery schedule, particularly of the significant experts to be called in this matter. Plaintiffs cannot credibly argue that every second counts and simultaneously claim they need more time. Even assuming, counterfactually, that time was of the essence and that Plaintiffs needed every available minute to perform the tests set forth in their Motion, their demand for an expedited hearing puts the cart before the horse. Plaintiffs claim, for example, that they need additional time to redevelop the observation wells and conduct a new round of pump tests at the EBIA (pumping test sites selected by Defendants), which "will yield information that is crucial to the rebuttal of Defendants' expert opinions." Motion to Amend Scheduling Order Regarding Expert Deadlines ("Motion to Extend") at 6. But even the Defendants' own experts do not know what their own opinions will be at this time: the parties will not receive the results of the tests that have already been performed until November 17, two weeks from the date that Plaintiffs filed their motion to expedite. Any time "conserved" by an expedited hearing would thus be minimal if not ephemeral.

More importantly, Plaintiffs also urge that an expedited hearing is necessary because a "$1,600 per diem will likely be required . . . to keep the test well instrumentation in place." Mot. at 1 (emphasis added). Not only does this purported cost have no basis in fact, Plaintiffs knew or should have known that it had no factual basis when they filed their Motion.

As of November 3—the same day they filed their motion to expedite—Plaintiffs' designated point-of-contact expert, Rune Storesund, had agreed that all test well instrumentation would be removed from the site on the following day. (See Nov. 3, 2011 e-mail from R. Storesund to A. Marr et al. (attached hereto as Ex. **A**).) Specifically, all parties (including the Plaintiffs) agreed to the protocol governing demobilization from the EBIA testing site, which included the following provision:

> 2. **On November 4th, remove all pump test and readout equipment from the site**. Secure the pump wells and monitoring wells for possible future access. Lock all wells with Fugro [the third-party contractor jointly retained by the parties] holding the only access key to these wells. All wells are to be left in a secure and operating condition until further notice from the Department of Justice.[1]

(*See* Ex. A at pp. 1, 1(a), 2, and 3 (Nov. 3, 2011 e-mail from A. Marr to R Storesund, et al.) (emphasis added).)

On November 4—the day after they submitted their motion to expedite—Plaintiffs unilaterally contacted Fugro to "discuss[] the costs associated with leaving the pump test equipment at the site of the Defendants' selected pump test sites (with associated security costs), removing the equipment and storing it with Fugro, or returning the equipment to the rental company." (See Nov. 4, 2011 e-mail from T. Sims to B. Cotton, et al. (attached hereto as Ex. **B**).)

---

[1] Subsequent exchanges between the three controlling experts (one for the United States, one for WGII and one for the Plaintiffs) agreed that the notice would have to come from all three parties.

After Fugro informed Plaintiffs that the rental cost for the equipment in question was $400/day, and that security costs to maintain the equipment at the site was "in the range on [sic] $1000-$1500 per day," Plaintiffs initially considered having Fugro "remove the equipment from the . . . sites and store it at a Fugro facility," id., but ultimately instructed Fugro to return the test equipment to the rental company.

In short, when they filed their Motion, Plaintiffs had already agreed that the pump test equipment would be removed from the site. And after they filed their Motion, Plaintiffs once again instructed Fugro to remove the equipment and return it to the vendor. They cannot now legitimately claim that an expedited hearing is necessary in order to minimize the costs associated with keeping that same equipment at the EBIA site.

### II. An Expedited Hearing Would Prejudice WGII's Ability to Respond to Plaintiffs' Motion to Extend, Given the Intertwined Nature of Plaintiffs' Extension Request and the Merits of the Case.

Quite apart from the fact that their putative justifications for an expedited hearing are utterly baseless, an accelerated hearing on Plaintiffs' Motion to Extend would deprive WGII of the ability to properly address the incorrect factual issues Plaintiffs' raise in that motion. Indeed, it is WGII's position (and the position of its experts) that the pumping tests for which Plaintiffs seek yet more time to conduct are as complete as they will ever be. Additional tests will not address the issues Plaintiffs raise in their Motion to Extend because their objections to the test results to date are a direct consequence of the low permeability of the soils at the EBIA.

Plaintiffs' proffered grounds for an extension are therefore bound up with the merits of the underlying litigation, and rebutting those contentions is essential. However, to do so will require evidence from WGII's own experts and the results of their work to date, including the results of soils testing that the parties will not receive until later this month. For example:

- Many of Plaintiffs' factual representations regarding "delays" in the soils testing performed over the summer and fall (see Motion to Extend at 4-6) are simply wrong. In its opposition to the Motion to Extend, WGII will demonstrate, with evidence from its experts, that the real reason for any purported delay was related to the low permeability of the soils themselves;

- WGII will also demonstrate, with evidence from its experts, that none of the Plaintiffs' pumping tests to date (at its own selected sites) have fully complied with the parties' agreed-upon standard operating procedure ("SOP"); that the Plaintiffs' opposition to proceeding with pumping tests at the sites selected by the Defendants was based on deviations from the SOP similar to the deviations agreed by all parties as necessary to allow pumping tests to proceed at the sites selected by the Plaintiffs; and that the reason that none of the pumping tests could comply with the explicit terms of the SOP by the deadline set forth in the Scheduling Order relates directly to the low permeability of the soils;

- WGII will further show, through evidence from its experts, that because of the low soil permeability and the deficiencies in Plaintiffs' pumping tests, the work that Plaintiffs propose in their Motion to Extend are not only entirely unnecessary, but would also require, at a minimum, much longer than the six weeks they propose. In fact, strict compliance with the SOP in these low permeability soils would require a minimum of four additional months, assuming no weather delays whatsoever.

Plaintiffs' proposed alternative relief, which WGII believes is the primary goal of the Plaintiffs—giving *only* Dr. Robert Bea an additional six weeks to complete his report—is also not feasible. WGII will demonstrate, with evidence from its experts, that its hydrological, geotechnical, and standard-of-care experts are addressing interrelated issues and their individual work is dependent on one another's findings in such a way that a delay in one expert's report would require similar delays in the deadlines for the other experts' reports, as well as related depositions, *Daubert* hearings, and this Court's time to evaluate and decide these critical *Daubert* issues. Indeed, Plaintiffs seem to acknowledge as much in Exhibit A to their Motion to Extend, which shows that regardless of whether this Court extends all expert deadlines or only those of Dr. Bea, Plaintiffs propose that all expert-related deadlines—from Plaintiffs' rebuttal reports through the hearing on *Daubert* motions—be extended by six weeks, suggesting that the *Daubert* hearings, which are critical in this case, be held in "early" June. Giving the Court a

reasonable time to evaluate these issues, particularly in light of the fact that no extensive geotechnical study of the EBIA has been done in prior litigation, would result, at best, in an inability to prepare for trial until after those decisions have been made.

In order to properly prove Plaintiffs' claims to be in error, however, WGII needs sufficient time to prepare its opposition to extension of deadlines, with the resulting consequence, even under Plaintiffs unnecessary and more than ambitious assumptions, of having significant *Daubert* hearings virtually on the eve of trial.  Plaintiffs' request for an expedited hearing on their Motion to Extend would prejudice WGII by denying it the ability to properly rebut the inaccurate contentions in the Motion to Amend.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: November 7, 2011               Respectfully submitted,

                                              _/s/ *Heather S. Lonian*_
William D. Treeby, Bar No. 12901
James C. Gulotta, Jr., Bar No. 6590
Heather S. Lonian, Bar No. 29956
STONE PIGMAN WALTHER WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone:  504-581-3200
Fax:  504-581-3361

Adrian Wager-Zito
Debra S. Clayman
Christopher R. Farrell
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone:  1-202-879-3939
Fax: 1-202-626-1700

*Attorneys for Defendant*
*Washington Group International, Inc.*

1074980v.1

# **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Defendant Washington Group International, Inc.'s Opposition to Plaintiffs' Motion for Expedited Hearing and Incorporated Memorandum on Their Motion to Amend Scheduling Order Regarding Expert Deadlines has been served upon all counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 7th day of November, 2011.

                                                      */s/ Heather S. Lonian*