**UNITED STATE DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | * | |
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  ALL BARGE | * | and consolidated cases |
| | * | |
| AND | * | SECTION "K" (2) |
| | * | |
| WEISLER V. SEYMOUR, ET AL | * | |
| NO.  09-2737 | * | JUDGE |
| | * | STANWOOD R. DUVAL,  JR. |
| | * | |
| | * | MAG. |
| | * | JOSEPH C. WILKINSON,  JR. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## GILBERT DEFENDANTS'[1] REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Gilbert Defendants reply as follows in support of their Motion for Summary Judgment.

### I.      INTRODUCTION

Gilbert Defendants did not create this situation, were not a party to an oral agreement, had no meeting of the minds with Dr. Weisler, and were unaware of the charges Dr. Weisler was generating.  It is plainly unfair that either Brian A. Gilbert or his corporation be held to answer for any of Dr. Weisler's allegations where there is only an absence of proof that Gilbert Defendants did anything to form or ratify the contract Dr.

---

[1] The phrase "Gilbert Defendants" is used here and in other papers in which both Brian A. Gilbert and the Law Office of Brian A. Gilbert, P.L.C. maintain that only Law Office of Brian A. Gilbert, P.L.C. is a proper party, any inference to the contrary notwithstanding.  The reference is a convenience, and is not to be construed as a waiver of corporate status at any time pertinent or in any respect.

Weisler alleges, or that Gilbert Defendants, by rendering legally insignificant assistance to Dr. Weisler or co-counsel, did or could ratify acts or omissions undertaken without reason, and without Gilbert Defendants' knowledge. There is no dispute that Gilbert Defendants were not funding sources for the underlying litigation, and accordingly, were not in a position, and did not undertake, to bind the Barge Plaintiffs or co-counsel to any potentially significant monetary expense such as expert retention costs.  Consistent with this, Gilbert Defendants did not enjoy or undertake a supervisory role with respect to any of Dr. Weisler's activities.  Dr. Weisler alleges an unduly large bill is owed for activities which were taken at a time he was allegedly in an oral agreement NOT formed with Gilbert Defendants.  It is notable that this meeting of the minds occurred when, as has always been the case, Gilbert Defendants were NOT a funding source for the litigation, but relied solely upon orally-contracting co-counsel's representations that he/his firm would secure or provide funding.

Moreover, facilitating requested meetings with clients, attending a meeting Dr. Weisler requested concerning nothing of contract formation or terms, or attempting to mitigate the unduly large and unexpected bill of Dr. Weisler, DO NOT equate with participation or ratification of the oral agreement Dr. Weisler alleges that he reached with one or more Fuchsberg Defendants.  The evidence does not support a finding that Gilbert Defendants are liable.

## II.       AGENCY/MANDATE

*1.      Extent of Authority*

Fuchsberg Defendants, as counsel agreeing to provide or secure litigation funding, had undertaken to contact, select and pay for an expert for certification of an emotional

damages subclass. This was to have been accomplished *with reasonable prudence*.
Gilbert defendants relied upon Fuchsberg Defendants' funding commitment, and upon
Fuchsberg Defendants greater experience, to ensure that the effort would not go awry.
No authority was granted for anyone to bind Gilbert personally.   The issue, as framed in
Fuchsberg Defendants opposition by counsel for Mr. Fuchsberg (and, disturbingly, also
former counsel for Gilbert Defendants), is not the issue at all:

> However, should this court find that a contract exists, it is clear that Brian Gilbert was
> involved as a member of the Barge P.L.S.C., and that Brian Gilbert agreed collectively
> with the co-defendants, including the Fuchsberg defendants, to contact potential experts

Extract from R. Doc. 20521.

> **WHEREFORE,** to the extent that the Gilbert defendants assert that Alan
> Fuchsberg had no authority to contact plaintiff regarding expert witness services in the
> Barge P.L.S.C., the Fuchsberg defendants oppose the Gilbert defendants' Motion for
> Partial Summary Judgment.

*Id.*

Whether Mr. Fuchsberg had authority to contact Dr. Weisler is not at issue.  Dr.
Weisler has not established through testimony or otherwise that Allen Fuchsberg (or any
one else, for that matter) was authorized to say that Brian Gilbert or his law office were
entering into a contract with or financially responsible to Dr. Weisler.  ***Nobody has
established even that this was said at all.***   Gilbert Defendants did not and would not
make any such representation in view of the fact that Gilbert Defendants were not
funding the Barge Litigation.  While it is true that Gilbert Defendants agreed with co-
counsel that Barge Plaintiffs should undertake a *reasonable* attempt to certify an
emotional damages subclass, this threshold premise does not equate to an expansive

conclusion that Gilbert Defendants were therefore responsible for funding the alleged oral contract with Dr. Weisler, especially that which may not have been reasonable, that which was undertaken without Gilbert Defendants' knowledge of the terms, and that without Gilbert Defendants' involvement in either a funding role, or as a party forming any contract with Weisler.

Indeed, it is and was reasonable to expect that counsel motivating this effort, Mr. Fuchsberg, who was also committed to fund the litigation (**Exhibit H,** in connection with funding), and who more experience with expert retention and governance in large-scale litigation (R. Doc. 20521-2, Affidavit of Alan Fuchsberg), would act reasonably. See **Exhibit G** which, notably, reflects that Gilbert Defendants were not cast into a role of providing governance over Dr. Weisler.  See also **Exhibit I and J**, both of which reflect the respective roles of counsel at the time.   Gilbert Defendants accepted assignments to facilitate the general premise of attempting to certify an emotional damages subclass. None of this equates with plenary authority to bind the non-funding Gilbert Defendants. None of this equates with Gilbert Defendants' alleged direct obligation to Dr. Weisler.

2.      *It is Dr. Weisler's burden to proven ratification, according to a **clear, absolute and unequivocal** standard of intent.*

Neither Dr. Weisler nor the Fuchsberg Defendants have presented admissible evidence that the Gilbert Defendants clearly, unequivocally and intentionally ratified the alleged oral agreement entered into between Weisler and the Fuchsberg Defendants, or its purported terms.    Accordingly, the claims against the Gilbert defendants must be dismissed.

> "* * * In either case the intention to ratify by the party against whom the
> act is opposed must be clearly and unequivocally shown. Celeste Sugar

Co. v. Dunbar-Dukate Co., supra (160 La. 694. 107 So. 493); Wells v. Files, 136 La. [126] at page 133, 66 So. 749; Sims v. Jeter, supra (129 La. 262, 55 So. 877); Breaux v. Savoie, 39 La. Ann. 243, 1 So. 614, *No intention to ratify will be inferred when the act can be otherwise explained*. Sims v. Jeter, supra. And in case of doubt the party against whom ratification or voluntary execution is claimed *must have the benefit of the doubt*.  Succession of Easum, 49 La. Ann. 1345, 22 So. 364." (Italics and parentheses [the Court's])."

***Derouen's Estate v. General Motors Acceptance Corp***., 245 La. 615 (1964).

"The burden of proving ratification is upon the party asserting it, and to find ratification of an unauthorized act, the facts must indicate ***a clear and absolute intent to ratify the act***, and no intent will be inferred when the alleged ratification can be explained otherwise. *Nationwide Finance Co. of Gretna, Inc. v. Pitre*, 243 So.2d 326, 328 (La.App. 4 Cir.1971). *See Bamber Contractors*, 385 So.2d at 331."

***Florida v. Stokes***, 2005-2004 (La.App. 1 Cir. 9/20/06); 944 So.2d 598 (emphasis added).

"For ratification of an unauthorized act, the facts must indicate a clear and absolute intent to ratify the act, and no intent will be inferred when the alleged ratification can be explained otherwise. *Lacaze v. Ketsoe,* 185 So. 676 (La.App. 2 Cir. 1939); *Derouen's Estate v. General Motors Acceptance Corp.,* 245 La. 615, 159 So.2d 695 (1964); *Williams v. Arkansas Louisiana Gas Company,* 193 So.2d 78 (La.App. 2 Cir. 1966)."

***First National Bank v. Ordoyne***, 528 So.2d 1068 (La.App. 5 Cir. 1988).

Any party seeking to prove Gilbert Defendants' intent to ratify a purported agreement as to Dr. Weisler's price, activities, the amount of hours he allegedly tallied, or any acceptance of any financial responsibility to him, bears the burden of proving that such intent was *absolute*.  In fact, and beyond dispute, Gilbert defendants did not know what Dr. Weisler was charging, or the hours he was allegedly amassing, and no proof reflects that Gilbert Defendants unequivocally acceded to or accepted at any time these untenable bases for the amount Dr. Weisler claims. It is undisputed that throughout Mr.

Fuchsberg's tenure as counsel for Barge Plaintiffs, Mr. Fuchsberg was responsible for his

dealings with Dr. Weisler.

> Q.  Did you say that you felt Alan Fuchsberg was responsible
>      for paying your bill?
> A.  I did say that.
> Weisler Deposition, 67:21 to 68:1

The following is extracted from R. Doc. 20499-19 (see also extract below from R.

Doc. 20499-4), and reflects Mr. Fuchsberg's continuing funding-related and Dr. Weisler-

related role during his enrollment in the underlying litigation.

Subj:    Invoice question
Date:    7/30/2008 10:02:22 A.M. Eastern Daylight Time
From:    a.fuchsberg@fuchsberg.com
To:      RWeisler@aol.com
CC:      fishkat@cox.net, rick@rickseymourlaw.net, karenwiedemann@bellsouth.net, pistols42@aol.com, karlwied@bellsouth.net, ldwiederman@aol.com

Dear Rick W,
We are in receipt of your invoice.
It's much more than we expected or can afford.
For example. Mark Townsend's invoice is about one-fifth of yours;
also, his billing rate is one-half.
We are operating on a shoe string budget and if you could
bring this down to Mark's area, it would be much appreciated.
Sincerely
Alan


Alan L. Fuchsberg, member
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
New York, New York 10110
tel:  212 869-3500
fax:  212 398-1532
cell: 914 473-5102
http://www.fuchsberg.com

Nor is there evidence of an unequivocal, intentional and absolute ratification that

the Gilbert Defendants would be personally or in any manner financially responsible for

the payment of Weisler's claimed bills when (or if) they became due.  Gilbert Defendants

were not funding-counsel at any time pertinent to Dr. Weisler's suit.   In the same vein, a

meeting requested by Dr. Weisler while he was in town, one which concerned nothing

related to his volume of work or payment, does not equate with ratification.  Likewise,

the fact that Gilbert Defendants attempted to obtain a reduction of Weisler's bill after Mr. Fuchsberg withdrew from the underlying litigation belies any claim of ratification by Gilbert Defendants.   Gilbert Defendants' receipt of copied email messages, does not equate with ratification, particularly when, as Dr. Weisler claims, Mr. Fuchsberg was responsible. Please see *Exhibit G.*

The fact that Gilbert Defendants became aware of Dr. Weisler's billed amount on the eve of class certification expert report deadlines, and had at that point no ability to undo what was already done (even though the effort was doomed by Dr. Weisler's report), the fact that Gilbert Defendants later observed privately to other lawyers that Dr. Weisler *might* recover *something* for his efforts, or the fact that Gilbert Defendants attempted to persuade Dr. Weisler to reduce his bill, is not a clear, unequivocal and absolute (or any) intent to ratify anything.  If anything, it is the opposite.  To suggest that Gilbert Defendants unequivocally and absolutely ratified anything in any way, shape or form is baseless and radically contradicted by the proof.

*3.      Gilbert Defendants cannot ratify that of which they had not been informed, and that which they did not know.*

Ratification is precluded as a matter of law, and was never intended, as the proof (and lack thereof) bears out.  It is undisputed that Gilbert Defendants did not and still do not know anything of the following (extract from R.Doc. 20499-4).


[intentionally blank]


7

-----Original Message-----
From: RWeisler@aol.com [mailto:RWeisler@aol.com]
Sent: Mon 8/4/2008 11:31 AM
To: bgilbert@briangilbertlaw.com; fishkoz@cox.net, rick@rickseymourlaw.net; a.fuchsberg@fuchsberg.com;
LDWIEDEMAN@aol.com; karenwiedemann@bellsouth.net
Cc: Townsend, Mark
Subject: Duke Legal fee schedule I have used for over 2 years&national data(bold underlin

Alan,Rick, and Brian

When I first spoke with Alan I quoted your group my $ 600/ hour rate that we have used at Duke. I also noted that the only difference for me was that because of my adjunct faculty status the payment for expert work would go to my office rather than the Duke PDC. The $600 rate is also the same rate that Drs. Townsend and Oscofsky charged which was also approved by Alan and reflected in the Expert Compensation section sent to the court a little over a month ago.

We need to have a conference call with Mark Townsend later today around 4 or 5 if possible.

Rick

It is undisputed that Gilbert Defendants were not involved with, not told, and had no knowledge of Dr. Weisler's charges for evaluation and reporting until after they were incurred.  It is undisputed that Gilbert Defendants took no part in selecting Dr. Weisler or negotiating any terms at the time of the making of the alleged oral agreement with Weisler.[2]  It is undisputed that nobody ever informed Gilbert Defendants of Dr. Weisler's rate, what oversight he was receiving, what limits were placed on him, or what the terms of the oral contract were.

> "[172] Ratification in the law of agency is the adoption by one person of an act done on his behalf by another without authority. *Roberson Advertising Service, Inc. v. Winnfield Life Insurance Company,* 453 So.2d 662 (La.App. 5th Cir. 1984); *Bamber Contractors, Inc. v. Morrison Engineering & Contracting Company, Inc.,* 385 So.2d 327 (La.App. 1st Cir. 1980). In order for ratification to occur, the person to be bound must**, _with full knowledge of all material facts,_** express an interest to adopt the unauthorized acts. *Collins Dozer Service, Inc. v. Gibbs,* 502 So.2d 1174 (La.App. 3rd Cir.), *writ denied,* 504 So.2d 881 (La. 1987); *Joseph v. Greater New Guide Baptist Church, Inc.,* 194 So.2d 127 (La.App. 1st Cir. 1966), *writ denied,* 250 La. 379, 195 So.2d 647 (1967).

---

[2] There was only effort after Dr. Weisler's termination in August 2008 and thereafter to bring his alleged bill in line with reason

"[173] The record is devoid of facts which show ODECO ratified the acts of Nunez. At trial, Nunez admitted that no one at ODECO was aware of his ownership in Dixie and Dynamic. Although Nunez's supervisors approved many of the invoices for generator rentals and navigational aid repairs submitted to them by Nunez, there is no evidence whatsoever showing that the supervisors knew that Nunez had an interest in the companies on the invoices. ODECO did not ratify the acts of Nunez."

***Odeco Oil & Gas Co. v. Nunez***, 532 So.2d 453 (La.App. 1 Cir. 1988) (emphasis added).

Even had authority been delegated by the Gilbert Defendants to bind them for payment - though it had NOT - it cannot be disputed that any such authority relieved no one of the ever-present duty to act reasonably in litigating the underlying barge matter. If Fuchsberg was Gilbert Defendants' mandatary, it was not without an obligation to behave reasonably and responsibly, rather than to seek to meld Gilbert Defendants into a debacle not of their creation and which they did not countenance. If Fuchsberg Defendants went beyond reason in any act or omission respecting Weisler, it was not on Gilbert Defendants' behalf.

At the request of the principal, ***or when the circumstances so require***, the mandatary is bound to ***provide information*** and render an account of his performance of the mandate. The mandatary is bound to notify the principal, without delay, of the fulfillment of the mandate.

La. C. C. art. 3003. Acts 1997, No. 261, § 1, eff. Jan. 1, 1998 (emphasis added).

No party avers or bears any competent proof that Fuchsberg Defendants or anyone stated at any time pertinent to the alleged contract with Weisler that the Gilbert Defendants would be responsible for his alleged bill. The claim that Fuchsberg agreed to the oral contract on behalf of himself and "a small group of attorneys" is significant in this regard. Gilbert Defendants were not identified.

9

"It is well settled that an agent becomes personally responsible to those with whom he contracts when he fails to disclose fact of his agency ***and name of his principal*** at the time of making the contract. LSA-C.C. Art. 3013; *Tri-State Oil Tool Company of Southern Louisiana v. Pioneer Oil & Gas Co., Inc.,* 135 So.2d 297 (La.App., 4th Cir., 1961); *Bush v. Saucier,* 197 So.2d 907 (La.App., 1st Cir., 1967); *Wilson v. McNabb,* 157 So.2d 897 (La.App., 1st Cir., 1963)."

***Travis v. Hudnall***, 517 So.2d 1085 (La.App. 3 Cir. 1987) (emphasis added).

Neither has anyone come forward with evidence that the Gilbert Defendants clearly and unequivocally ratified the alleged oral agreement with Fuchsberg and assumed financial responsibility for Weislser's alleged contract, as such never could or would happen.

"In order for ratification to occur, the person to be bound must with full knowledge of all material facts express an interest to adopt the unauthorized acts. *Pargas,* 416 So.2d at 1362. There was no showing that the defendant corporations' representatives fully appreciated what Sidney Gibbs is alleged to have done; additionally, no agent of the defendant corporations expressed a desire to ratify the purported contract with Mr. Collins. The actions of Sidney Gibbs were not ratified."

***Collins Dozer Service, INC. v. Gibbs***, 502 So.2d 1174 (La.App. 3 Cir. 1987).

To be clear, while Mr. Fuchsberg may have contacted this expert, this does not bind Gilbert Defendants to all things Weisler.

"A party claiming the existence of a contract has the burden of proving the contract existed. *Pennington Construction., Inc. v. RA Eagle Corp.,* 652 So.2d 637 (La.App. 1 Cir. 3/3/95). "The law has long been clear that in order to find that there was an agreement between the parties and have consent pursuant to La.C.C. art. 1927, the court must find that there was a meeting of the minds of the parties." *Al J. Philips, Jr. v. Berner,* 789 So.2d 41, 45 (La.App. 4 Cir. 5/16/01). "`Where testimony clearly establishes that minds of both parties to contract did not meet touching primary matters involved, consent was absent and contract is invalid.'" *Blann v. Aldige,* 712 So.2d 1052, 1053 (La.App. 5 Cir. 5/27/98)."

***Legier & Materne v. Great Plains Software, Inc***. 03-0278 Section "K" (1) (E.D.La. 2005)

Please see ***Blann v. Aldige***, 712 So.2d 1052 (La.App. 5 Cir. 5/27/98) (cited by this Court in ***Legier & Materne***, above), in which an expert witness' appeal, to the effect that co-counsel was liable for his bill rather than the attorney who hired him pursuant to an oral contract, was rejected.

> Q.   At that time did Mr. Fuchsberg say to you
>      that all the persons, all the firms listed on the
>      class certification are going to pay your bill?
> A.   I don't remember that.
> Q.   Okay.
> A.   I'm not sure.
> Weisler Deposition 30:19 to 31:2
>
> Q.   Did you say that you felt Alan Fuchsberg was responsible
>      for paying your bill?
> A.   I did say that.
> Weisler Deposition, 67:21 to 68:1

The fact that when asked, Gilbert Defendants facilitated such things as arranging schedules and transport for putative class member psychiatric evaluations, or that Gilbert Defendants complied when Dr. Weisler was in town and asked to meet and discuss exam results, does not impute or equate with knowledge, responsibility to Dr. Weisler, his governance, his assignments to Dr. Weisler, or ratification of the pricing, payment and invoicing matters upon which Dr. Weisler bases his lawsuit.   See Gilbert message, R. Doc. 20499-10.  This was responsibility that the Fuchsberg Defendants assumed, while the Gilbert defendants essentially facilitated some logistics.  In fact, Gilbert Defendants were only endowed with knowledge of Dr. Weisler's account when presented with an exorbitant bill (after, unfortunately, Fuchsberg Defendants funding efforts did not bear fruit), and accordingly, told Dr. Weisler to cease work.  ***Exhibit K.***  It is again notable for purposes of this motion that the record is devoid of representations to Dr. Weisler that the Gilbert Defendants would be directly responsible to him for payment of the work

performed under the alleged oral contract with the Fuchsberg Defendants, the same who were to fund the Barge Litigation.

3.       *Reliance by Dr. Weisler.*

Even if Dr. Weisler informed Fuchsberg Defendants of his rate and other terms and conditions (which is denied), he had a duty to determine whether it was reasonable to rely upon any of the assertions he alleges Fuchsberg Defendants to have made on anyone else's alleged behalf.

> "A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent. *Freeman v. Royal Shield Entertainment,* 411 So.2d 559, 561 (La.App. 1st Cir. 1982)."
>
> ***Collins Dozer Service, Inc. v. Gibbs***, 502 So.2d 1174 (La.App. 3 Cir. 1987) writ den., 504 So.2d 881 (La. 1987).
>
> "The burden of proving apparent authority is on the party seeking to bind the principal. A third party may not blindly rely upon the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent. *Collins Dozer Service, Inc. v. Gibbs,* 502 So.2d 1174 (La. App. 3 Cir. 1987), writ den., 504 So.2d 881 (La. 1987)."
>
> ***Desormeaux v. Lalonde***, 578 So.2d 226 (La.App. 3 Cir. 1991).

The record is devoid of any evidence that Dr. Weisler made any effort to determine whether the agency purportedly granted by the principal even permitted the alleged acts of the agent.  ***Collins Dozer Service, Inc. v. Gibbs***, 502 So.2d 1174 (La.App. 3 Cir. 1987) writ den., 504 So.2d 881 (La. 1987).  Even the statistical hourly expert witness rates Dr. Weisler advocates in his email of August 4, 2008, ***Exhibit L***, are markedly less than what Dr. Weisler says he quoted.  Rather than an opportunistic forward lurch, a reasonable person would have determined whether unfettered freedom to

incur billable hours he now alleges actually existed - especially in light much lower national averages, and especially in a place as economically different from the rest of the country as New Orleans is and was post-Katrina.

## II. CORPORATE STATUS

To suggest that an extremely busy attorney who must of necessity work after hours and on weekends, from home, waives corporate status because of an email address is preposterous.  If Dr. Weisler posits that he made any assumption based upon an email address, then he has much to answer for relative to his very recent and previously unknown allegation that he contracted in this case not as an individual, but as Weisler, P. A.[3]   If Dr. Weisler suggests that the law should accommodate his failure to inquire had he harbored an actual question about anyone's corporate status (which, it is urged, he **had not**), then he should be prepared for drastic changes.  In terms of establishing precedent, lending countenance to such a proposition would affect much more than this suit.  Doing so upsets the fundamental principles underlying limited liability business enterprise formation.   Doing so affects the practices of law and medicine, the insurance and investment industries, energy production, shipping and transportation, and already, with just these few examples, the United States' economy no longer exists.  Dr. Weisler's suggestion is untenable, and purely self-serving.

## III.    OPEN ACCOUNT

Gilbert Defendants do not rely upon rejected or overruled jurisprudence as Dr. Wiesler posits. Gilbert Defendants rely upon, *inter alia*, this Court's holding in *Greenfield Commercial Credit V. Catlettsburg Refining*, C.A. 03-3391 K(2) (E.D.La. 1-

---

[3] Plaintiff in this action is Richard Weisler, not Weisler, P.A.

29-07), an opinion rendered six years after the Louisiana Fourth Circuit ruling which Dr. Weisler claims impairs Gilbert Defendants open account defense.    Additionally, Dr. Weisler's baffling statement that civil construction contract litigation and a civil suit on open account are subject to different standards of proof needs much in the way of explanation, but none is given.

## CONCLUSION

It is contrary to law, contrary to undisputed material fact, and contrary to basic principles of fairness and equity, to lay this situation not of Gilbert Defendants' creation, and which they never ratified, at Gilbert Defendants' feet.    For the above stated reasons, and because there is no evidence that the Gilbert Defendants entered into an oral agreement with Weisler, had a meeting of the minds with Weisler, assumed governance of Weisler, or agreed to pay Weisler, and because the record is devoid of absolute, unequivocal and clear evidence that the Gilbert Defendants intentionally ratified anything on which Dr. Weilser bases his suit, partial summary judgment in Gilbert Defendants' favor, dismissing them from this suit, with prejudice and at Plaintiff's cost, is warranted.

October 30, 2011

Respectfully submitted,

**LAW OFFICE OF BRIAN A. GILBERT, P.L.C.**

*/s/Brian A. Gilbert*
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
bgilbert@briangilbertlaw.com,

14

15

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon all

counsel of record via ECF upload, this 30th day of October 2011.

*\s\Brian A. Gilbert*