UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * | |
| | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| Weisler v. Seymour, et al. 09-2737 | * | |
| | * | JUDGE |
| | * | STANWOOD R. DUVAL, JR. |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PRE-TRIAL ORDER

### Table of Contents

## I.   PRETRIAL CONFERENCE

The pre-trial conference in the above referenced matter is presently set for November 17 2011, at 2:00 p.m.

## II.   APPEARANCE OF COUNSEL:

Richard Weisler - Plaintiff

> Represented by:
> Andrew C. Wilson, T.A.
> Peter S. Thriffiley, Jr.
> Daniel J. Caruso
> SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
> 30th Floor – Energy Centre
> 1100 Poydras Street
> New Orleans, LA  70163
> > andreww@spsr-law.com
> > (504) 569-2030

Alan Fuchsberg and the Jacob D. Fuchsberg Law Firm - Defendants

> Represented by:
> David V. Batt, T.A.
> Bradley S. Groce, T.A.
> LOBMAN, CARNAHAN, BATT, ANGELLE & NADER
> 400 Poydras Street
> Suite 2300
> New Orleans, LA  70130
> > dvb@lcba-law.com
> > bsg@lcba-law.com
> > (504) 586-9292

Richard T. Seymour and Richard T. Seymour, P.L.L.C. - Defendants

> Represented by:
> Richard T. Seymour, T.A.
> LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C.
> Suite 900, Brawner Building
> 888 17th Street, N.W.
> Washington, DC 20006-3307
> > rick@rickseymourlaw.net
> > (202) 785-2145 – Telephone
> > (202) 549-1454 – Cell
> > (800) 805-1065 – Facsimile

2

Brian Gilbert and Law Office of Brian A. Gilbert, P.L.C. - Defendants

Represented by:
Brian A. Gilbert, T.A.
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
bgilbert@briangilbertlaw.com

Wiedemann & Wiedemann, P.L.C. – Defendant

Represented by:
Lawrence D. Wiedemann, T.A.
WIEDEMANN & WIEDEMANN, P.L.C.
110 Veterans Boulevard
Suite 444
Metairie, LA 70005-4910
ldwiedemann@gmail.com
(504) 581-6180

## III.    DESCRIPTION OF THE PARTIES:

Plaintiff, Dr. Richard H. Weisler, a resident and citizen of Durham, North Carolina.

Defendants, Richard T. Seymour, Esq., Richard T. Seymour, P.L.L.C., Alan L. Fuchsberg, Esq., The Jacob D. Fuchsberg Law Firm, L.L.P., Brian A. Gilbert, Esq., Law Office of Brian A. Gilbert, P.L.C., and Wiedemann & Wiedemann, A.P.L.C. (collectively "Defendants")

The Defendants have filed Counter-Claims against the Plaintiff.  No cross-claims or third-party complaints have been filed.

3

## IV.    JURISDICTION:

Plaintiff asserts that this court has jurisdiction over this matter based upon the parties' diversity of citizenship, 28 U.S.C. §1332.

Defendants assert that plaintiff lacks standing to bring this action in that he testified in his deposition that the party contracting with defendants was his professional corporation, but the only plaintiff is Dr. Weisler suing in his individual capacity, and that this Court is therefore without Article III jurisdiction.

The Plaintiff, Dr. Richard H. Weisler, brought this action for breach of contract and "Open Account" seeking to collect fees for professional services associated with his work as an expert witness for the Defendants in the Barge Case. The parties are diverse in citizenship from each other and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

Defendants brought counterclaims against plaintiff for (1) material breach of contract; (2) failure of consideration; and (3) poor performance and misdeed in connection with performance of the contract. Jurisdiction over these counterclaims is dependent on the Court's jurisdiction over the case as a whole.

## V.    MOTIONS:

### A.    Pending Motions:

As of the date of this submission, the Parties have filed the following Motions that had not yet been decided:

1.    Plaintiff has filed the following motions:

4

a.   Motion for Partial Summary Judgment [20499] seeking a determination that the Defendants breached their original contract for professional services with Dr. Weisler; that Dr. Weisler's contract with the Defendants constitutes an "Open Account" under applicable Louisiana law; and, that the Defendants' Counter-Claim lacks any merit whatsoever and should be dismissed. Plaintiff is not aware of an opposition filed by Defendant Wiedemann & Wiedemann, A P.L.C.

2.   Defendants, Richard T. Seymour, and Richard T. Seymour, PLLC, have filed the following motions:

a.   Motion for Partial Summary Judgment [20504] as to whether the Plaintiff's claim constitutes an "Open Account" under applicable Louisiana law;

b.   Motion for Judgment on the Pleadings and for a Default Judgment on Counter-Claims, pursuant to Rule 8(b)(6), 12(c) and 55(b)(2) [Doc. 20501], on behalf of the Seymour and Fuchsberg defendants.

c.   Motion to Strike Plaintiff's Answer to Counterclaims, on behalf of Seymour, Fuchsberg, and Gilbert Defendants [Doc. 20515].

d.   Consented *Ex Parte* / Consent Motion To Allow Their Participation in the November 15, 2011 Pretrial Conference by Telephone, and Alternative Consented Motion to Reschedule the Pretrial Conference for November 16, 2011 at 3:00 P.M. or Later, or to Reschedule the

Pretrial Conference for November 17, 2011 [Doc. 20557].

3.      Defendants, Brian A. Gilbert and Brian A. Gilbert, P.L.C., have filed the following motions:

   a.      Motion for Partial Summary Judgment [Doc. 20502] seeking a Judgment that there is no "Open Account", that agency principles do not expose movers to liability, and granting additional dismissal.

   b.      Motion to Withdraw Inclusion in Motion for Default Judgment as to Plaintiff Richard H. Weisler, M.D. [Doc, 20503].

4.      Defendant Wiedemann and Wiedemann, A.P.L.C., join in defendants' motion for summary judgment. Plaintiff objects as no such motion has been filed by Wiedemann & Wiedemann, A P.L.C. Defendants, Alan Fuchsberg and the Jacob D. Fuchsberg Law Firm, have joined in the Seymour Defendants' Motion for Summary Judgment on Plaintiff's "Open Account" claim [Docs. 20504, 20512, 20518], and have filed an opposition to the Gilbert claim that agency principals do not expose the Gilbert defendants to liability [Doc. 20522].

**B.      Anticipated Motions:**

1.     Both Plaintiffs and Defendants intend to file one or more Motions in Limine seeking the exclusion of inadmissible evidence, and limits to witness testimony. Defendants intend to file a Motion to Dismiss for lack of Article III standing. In response Plaintiff intends to file a motion to add Weisler's professional corporation as a party plaintiff pursuant to FRCP 15, and specifically 15(C)(1)(A) which incorporates applicable Louisiana law specifically Art. 1153 and the "relation back doctrine." See, e.g., Judge Zainey's Opinion in *Nastasi v. Swift Transportation Co.,* CANO 08-677 [56] (E.D. La. 6/10/09). Plaintiff also intends to file a motion to strike the Defendants' newly raised opposition defense of an alleged breach of a covenant of good faith and fair dealing.

## VI.    SUMMARY OF MATERIAL FACTS:

### A.    On behalf of Plaintiff:

Plaintiff, Dr. Richard H. Weisler, is a practicing psychiatrist, who also publishes, lectures and teaches, nationally and internationally.  Defendants, Alan Fuchsberg and the Jacob D. Fuchsberg Law Firm ("the Fuchsberg Defendants") contacted Dr. Weisler on or about May 16, 2008, by e-mail indicating that the Fuchsberg Defendants were acting on behalf of a "group of attorneys" involved in the Barge Litigation who were seeking an expert witness to establish an "emotional injury subclass."  Dr. Weisler thereafter conferred with the Fuschberg Defendants by telephone and, given the size of the project as described by the

Fuchsberg Defendants, brought in another psychiatrist, Dr. Mark Townsend, to confer with the Fuchsberg Defendants on the details of the proposed subclass.

The Fuchsberg Defendants thereafter retained both Dr. Weisler and Dr. Townsend, agreeing to pay them their $600.00 hourly rate. The Fuchsberg Defendants then, via e-mail, immediately contacted the other members of the "group of attorneys" who describe themselves as the "Barge Subclass Plaintiff's Litigation Committee ("BSPLC") an unincorporated alter ego for their "Barge Case" website they created and used in connection with the Katrina Barge Litigation. The "group of attorneys" includes the Fuchsberg Defendants; Richard T. Seymour and Richard T. Seymour, P.L.L.C. ("the Seymour Defendants"); Brian A. Gilbert and Brian A. Gilbert, P.L.C. ("the Gilbert Defendants"); and, the Law Firm of Wiedemann & Wiedemann, P.L.C. ("Wiedemann").

During subsequent communications with Dr. Weisler and Dr. Townsend, the Fuchsberg Defendants indicated that costs were not an issue, but that time was, as the Defendants had waited until less than thirty days before the deadline for producing expert reports to commence the project. As a result, both Dr. Weisler and Dr. Townsend were instructed to work around the clock, including weekends, in an effort to produce a comprehensive expert report which would assist the Defendants in their efforts to establish their proposed "emotional injury subclass."

Throughout the period of time beginning on or about May 16, 2011,

through the date of July 1, 2008, when the comprehensive expert report would be timely produced, Dr. Weisler, Dr. Townsend and several other mental health care professionals retained by the Defendants to assist in the project worked at the direction of the Defendants who instructed the project team as to which representative plaintiffs should be interviewed/evaluated; how the report should be written; what the report should contain; and what attachments should be included with the report.  All the while, each time Dr. Weisler and Dr. Townsend would raise billing issues, the Defendants indicated that the project team needed to focus on the report instead.

Eventually, when the report was produced, the report contained an attachment indicating the fees that had been incurred by the Defendants as of the date of the report. Dr. Weisler, who was designated by the Defendants as the representative of the project team, testifying witness and author of the comprehensive report, had substantially greater fees and activity given his expert financially greater role. In addition, one member of the project team, Dr. Jill Hayes, had previously submitted her invoices for over $21,000.00, which was paid, as she would not release her report until such time as she was paid.  In addition, Dr. Townsend also issued his invoices which the Defendants promised to pay, but did not at that time.

After the report was released to the Defendants, they, in turn, presented it to opposing counsel for the Barge Defendants in the Barge Case.    The

9

Defendants also congratulated Dr. Weisler on the content of the report at that time. The Defendants then told Dr. Weisler to prepare for a deposition at which he would appear as the testifying expert on behalf of all of the mental healthcare professionals who made up the project team. The Defendants also told him to review the articles which formed the basis for the report, review all of the medical records generated by the project team during the course of the project, and, gather additional information from the project team who were still providing medical information and interviewing representative plaintiffs as late as the first week of August, 2008. Meanwhile, Dr. Weisler's deposition remained set for August 14, 2008.

On July 30, 2008, Dr. Weisler furnished a detailed invoice setting forth all of his fees and expenses as of that date. At that time, the Defendants claimed that they did not have the funds to pay the invoice, as they were operating on a "shoe-string" budget. This is despite the fact that all of the Defendants had filed Affidavits with the Court indicating that they had the resources to properly represent the members of the putative class. Although the Defendants had praised the report and had determined it would be useful for their intended purposes, a new law firm which had agreed to "bank roll" the litigation determined that the Defendants had incorrectly interpreted the applicable law related to class actions and class certification and chose to abandon the "emotional injury subclass". Shortly thereafter, the project team was told to cease all efforts on the

project and Dr. Weisler's deposition was abruptly cancelled, two days before the scheduled date. Dr. Weisler had scheduled no appointments for those three days and lost income for which he would eventually bill the Defendants.

Shortly thereafter, the Defendants began to create fictitious reasons for not paying Dr. Weisler and the other mental healthcare professionals. In February, 2009, however, the Defendants determined that they might need an expert psychiatrist for the Barge Case and therefore, decided to pay Dr. Townsend in full, i.e. $54,000.00, an amount less then what was owed to Dr. Weisler. The Defendants also refused to pay Dr. Phillip Griffin, Dr. Howard Osovosky and Dr. Joy Osovosky, as well as investigator, Ronnie Montgomery. As a result, Dr. Weisler filed this lawsuit for breach of contract and "Open Account" under applicable Louisiana law, La. R.S. 9:2781 and other seeking to recover his fees of $272,049.56 as well as interest, costs and attorneys' fees under Louisiana law and FRCP Rule 11.

**B.      On behalf of the Seymour and Wiedemann and Wiedemann, APLC, Defendants**:

Plaintiff has no standing to maintain this action, and it should be dismissed. The statute of limitations has already expired as to the Open Account claim, and an amendment of the Complaint cannot cure the failure to name a plaintiff with standing.

11

Plaintiff and the members of the medical team were given specific tasks to perform, in support of a claim for injunctive relief under Rule 23(b)(2), Fed. R. Civ. Pro.

If plaintiffs had prevailed on liability, the injunctive relief would have consisted of an order requiring the Barge defendant to establish or fund a program whereby class members could be screened inexpensively for need to consult a mental health professional and could receive therapy at the Barge defendant's expense.

Given the difficulties of obtaining certification of an emotional-distress class seeking damages, this was one means of potentially obtaining class certification.

Unfortunately, despite the repeated guidance given by Barge plaintiff's counsel, Dr. Weisler and the medical team failed to focus on their task, and Dr. Weisler ultimately produced a report that was not adequate for the needed purpose, was not competently done, and was not persuasive.

Dr. Weisler's failure to produce a draft until the last minute made it impossible to resurrect value from his work, and Barge counsel ultimately determined that his work and analysis were so poor that there was no point in continuing to hold him out as an expert witness to be deposed, canceled his deposition, and were forced to abandon the claim for injunctive relief.

As a result, no value was obtained from plaintiff's work.

12

Plaintiff's work was not accepted within any recognizable meaning of the term.

Plaintiff's claim is further undermined by practices demonstrating violations of the covenant of good faith and fair dealing, and showing a complete lack of billing judgment:

(a) his having ignored repeated instructions to hold expenses down because resources were limited;

(b) by his extraordinarily aggressive billing practices;

(c) by his failures to keep accurate contemporaneous time records, and aggressive estimates of his time;

(d) by his charging for 106.25 hours—at $600 an hour—for which he has no time record at all, not even his usual little slips of paper with his estimates; and

(e) by his churning the file to no purpose.

Richard T. Seymour is not a proper defendant in this action.  To the extent that there is any obligation to Plaintiff or his company, it would be the obligation of the Law Office of Richard T. Seymour, P.L.L.C., a professional limited liability corporation and the entity under which Richard T. Seymour practices law.

The Seymour defendants never participated in any acceptance of Dr. Weisler's hourly rate, never told him not to make contemporaneous time records, never told him to perform the extent of activities for which he claims

13

compensation, never told him to contact the large numbers of persons he contacted, never told him to read the large number of sources he claims to have read, never told him to delay submission of invoices, and never told him anything that could reasonably be construed as meaning that charges or activity on the scale of his charges were acceptable, or would be paid, or could reasonably have been paid from any funds awarded to the class or to the clients,

Plaintiff's charges are excessive, and violate the covenant of good faith and fair dealing.

Plaintiff has already been paid $10,000.


C.    **On behalf of the Gilbert defendants:**

Brian A. Gilbert practices law strictly as Law Office of Brian A. Gilbert, P.L.C., a duly formed and maintained Louisiana law corporation.  Brian A. Gilbert is not a proper party to this suit.  Gilbert Defendants were at not responsible for funding Dr Weislers bill.  Gilbert Defendants were not party to any agreement with Dr. Weisler, and took no part in entering into same.  Gilbert Defendants were not informed of any terms of Dr. Weisler's retainer other than that he would serve as expert relative to a proposed emotional damages subclass.  Gilbert Defendants had no meeting of the minds with Dr. Weisler, and were unaware of the charges Dr. Weisler was generating.  Gilbert Defendants' conduct respecting any of Dr. Weilser's allegations consisted only of complying with a request to

14

assist with scheduling mental health evaluations, attending one meeting with him when he so requested, critiquing his report, reacting negatively to his bill, and after finding out of his bill asking him to cease activities, and attempting to obtain a reduction of his excess bill.  Gilbert Defendants never told anyone they would be directly responsible for Dr. Weisler's bill.  Gilbert Defendants did not ratify the contract with Dr. Weisler.  Gilbert Defendants nonetheless maintain that Dr. Weisler's bill is unjustified, that he is not the proper party to this suit, and that his bill does not satisfy the open account statute.  Gilbert Defendants additionally reiterate by reference their factual contentions included in their Motion for Summary Judgment, Reply In Support of Motion for Summary Judgment, and in their Opposition to Dr. Weisler's Motion for Summary Judgment.

**D.     On behalf of the Fuchsberg defendants:**

This suit arises from an alleged contract dispute involving plaintiff, Richard Weisler, and the defendants.  The defendants, are previously members of the Barge P.S.L.C., including: Alan Fuchsberg, Rick Seymour, Brian Gilbert, Larry Wilson, and Larry Weidemann, agreed to contact individuals for interviews for experts in the Katrina Barge litigation.

On May 15, 2008, a motion related to the certification of a proposed emotional injury subclass in the Barge litigation was drafted and filed.  The motion was based on an idea, raised and discussed among counsel, that an

15

attempt should be made to certify a subclass for injunctive relief for the cost of psychological therapy for those suffering emotion injuries due to the trauma caused by the flooding due to the barge breaching the canal wall.  Part of that discussion included that expert support for that aspect of the motion would be needed.

The defendants collectively decided to obtain such an expert.  In acting as a member of the Barge P.S.L.C., on May 15, 2008, based upon having found their names in an article about the psychological trauma to Katrina victims, Alan Fuchsberg e-mailed Dr. Townsend and Dr. Weisler separately to see if either would be available as experts in the litigation.

Thereafter, Alan Fuchsberg first heard either from Dr. Townsend or Dr. Weisler, who recommended that both should work on this project.  Afterward, a short telephone conversation was had with Dr. Townsend, Dr. Weisler, and Alan Fuchsberg on the line.  During this telephone conversation, either Dr. Townsend or Dr. Weisler mentioned that they normally bill at an hourly rate.  There were no discussions as to the costs of plaintiff's services and Plaintiff provided no estimate as to the cost of his services.  Alan Fuchsberg did not agree then, or at any time afterward, to any specific rate.  In this conversation, Alan Fuchsberg told Dr. Weisler and Dr. Townsend that the next step would be to set up a telephone conference call with co-counsel to continue the interview before retention.  Alan Fuchsberg did not agree, individually or on behalf of the Jacob D.

16

Fuchsberg Law Firm to become personally liable for any debt to plaintiff.

This next telephone conference took place in May of 2008 involving Dr. Townsend, Dr. Weisler, and co-counsel.   Following this conversation, the Fuchsberg defendants did not have any further discussions with either Dr. Weisler or Dr. Townsend about either a contract or a billing rate.

During and following the interview process, the parties discussed that Dr. Weisler and Dr. Townsend would perform services including a psychological evaluation of anecdotal clients, which would enable Dr. Weisler and Dr. Townsend to configure an abridged efficient methodology to examine other Katrina victims potentially in the class. The doctors interviewed approximately 12 people. How much time and effort beyond the 12 person interview was not quantified. Significantly, the terms of their retention were not confirmed. Dr. Weisler and Dr. Townsend were informed from the outset that limited resources were available. Immediately following this May 2008 conference call between co-counsel, Dr. Townsend and Dr. Weisler, there were numerous other phone conferences that the Fuchsberg defendants did not participate in, but one or more co-counsel did participate in those other calls.

The Fuchsberg defendants were not senior to co-counsel, and did not lead the litigation. The Fuchsberg defendants never agreed to Dr. Weisler's bill, or his billing rate. The Fuchsberg defendants never agreed to the scope of services performed by Dr. Weisler, and never anticipated that Dr. Weisler would put in so

17

much time.

From the receipt of plaintiff's invoice, all counsel objected to it, as the invoice was much more than expected, and was much more than could be afforded. The Fuchsberg defendants never told Dr. Weisler that his first invoice should be presented at the time of his report. The timing of Dr. Weisler's invoicing was not discussed. Dr. Weisler never advised as to how large of a bill he was running up. Also, the Fuchsberg defendants did not tell Dr. Weisler that his report would serve as an interim invoice. Dr. Weisler did not advise that he was not a forensic psychiatrist. Dr. Weisler was not "open and honest" about his limited experience.

The Fuchsberg defendants never had a discussion with Dr. Weisler about assembling a large volume of reading materials, or his reading a large volume of materials. The Fuchsberg defendants never told Dr. Weisler to expand his bibliography. Also, the Fuchsberg defendants never told Dr. Weisler that anyone was prepared to spend substantial sums of money. To the contrary, Dr. Weisler was consistently advised from the outset that very limited resources were available. Dr. Weisler was not asked to be an expert in multiple fields.

No writing was ever drafted or executed agreeing to retain plaintiff as an expert in the Barge P.L.S.C. No agreement was made, either in writing, orally, or otherwise, to formally retain the services of plaintiff, Richard Weisler as an expert in the Barge P.L.S.C. Similarly, no agreement was made, either in writing, orally,

18

or otherwise regarding the billing rate that plaintiff, Richard Weisler would charge for his servicesas an expert in the Barge P.L.S.C.   Also, no agreement was made, either in writing, orally, or otherwise, regarding the scope of services that plaintiff, Richard Weisler, would conduct as an expert in the Barge P.L.S.C.

There is no contract between the plaintiff and the defendants.  No meeting of the minds occurred.  Therefore, plaintiff's suit is without merit.


## VII.   UNCONTESTED MATERIAL FACTS:

1.    On May 15, 2008, the Fuchsberg Defendants sent an e-mail to Dr. Weisler and Dr. Townsend seeking their participation in an effort to establish an "emotional injury subclass."

2.    On May 16, 2008, the Fuchsberg Defendants e-mailed the other Defendants advising of the "good news" that the Fuchsberg Defendants had spoken with psychiatrists, Dr. Mark Townsend and Dr. Richard Weisler, with a view to their acting as experts to establish an emotional injury subclass.

3.    Dr. Mark Townsend was paid the full amount owed to him of $52,662.25.

4.    Dr. Jill Hayes was paid the full amount owed to her.

5.    Defendants have not paid Dr. Phillip Griffin, Dr. Joy Osovosky and Dr. Howard Osovosky anything.  [Uncontested fact, but defendants dispute materiality and relevance.]

6.    Defendants have not paid anything to Ronnie Montgomery.  [Uncontested

fact, but defendants dispute materiality and relevance.]

7.      To the extent that any of the above uncontested facts are contested, they should be considered contested facts.  To the extent that any of the below contested facts are uncontested, they should be considered uncontested facts.


## VIII.   CONTESTED ISSUES OF FACT:

**All parties (1) reserve their right to challenge the admissibility of evidence bearing on the contested issues of fact, (2) reserve their right to challenge the materiality, relevance, prejudice, or other problems of evidence going to these issues, and (3) reserve their right to challenge the issues themselves as immaterial, irrelevant, unduly prejudicial, or to challenge them on other grounds. The listing of issues shall not be considered a waiver of any rights.**

1.      Whether, in the e-mail to Dr. Weisler and Dr. Townsend, the Fuchsberg Defendants indicated they were acting on behalf of a "group of attorneys."

2.      Whether Plajntiff and defendants ever entered into a written contract specifying the work to be performed, or the hourly rates to be paid for Plaintiff's work, or the persons or entities responsible for paying for Plaintiff's work.

3.      Whether Plajntiff informed the Fuchsberg defendants that he charged $600 an hour because that was the standard rate charged by the faculty of Duke University Medical School for faculty members involved with its Clnic.

4.      Whether Plaintiff was a faculty member of Duke University Medical

School, and was not involved with its Clnic.

5.      Whether Plaintiff informed any other defendant of his hourly rate, or of his basis for using that rate, until he submitted Attachment 16 to his report in this case, shortly before the date the report was due,

6.      Whether the Fuchsberg Defendants agreed that Dr. Townsend and Dr. Weisler would be paid at a rate of $600.00 per hour.

7.      Whether the Defendants have ever paid Dr. Richard Weisler anything.

8.      Whether Dr. Jill Hayes was paid over $21,000.00 at a rate of $350.00 per hour as a treating psychologist for primarily administering tests to just one plaintiff.

9.      Whether Plaintiff ever informed any defendants, until he submitted a bill so stating on July 7, 2008, that he rounded even an additional minute of time after a quarter-hour mark to the next higher quarter-hour.

10.     Whether Plaintiff never informed any defendants that he would bill for time without keeping contemporaneous time records.

11.     Whether Plaintiff never informed any defendants that he would bill for large amounts of time based on rough estimates of his daily time.

12.     Whether Plaintiff charged for two days of expert time at $600 a day for his canceled deposition.

13.     Whether Plaintiff did not inform any defendants of the amount of time he was spending or charging until he submitted billing information as part of his report.

14.     Whether the Seymour Defendants "personally guaranteed" the fees of

investigative/courier, Ronnie Montgomery.

15.     Whether Ronnie Montgomery was simply a messenger who was supposed to pick up copies of medical records and deliver the, to Plaintiff.

16.     Whether the Seymour defendants guaranteed the fees of Ronnie Montgomery only up to a limit of $300.

17.     Whether Ronnie Montgomery ultimately submitted an invoice more than five times the amount agreed.

18.     Whether Plaintiff assembled much of his report by cutting and pasting from submissions made by others.

19.     Whether Plaintiff's report addressed the questions he had been asked to address.

20.     Whether Plaintiff's report was never used for any purpose in the Barge litgation.

21.     Whether the plaintiffs in the Barge litigation withdrew their tender of Plaintiff as an expert after receiving his report.

22.     Whether the plaintiffs in the Barge litigation withdrew their tender of Plaintiff as an expert after Shawn Khorrami rejected the analysis of the Seymour defendants and the basis for the proposed emotional injury subclass.

23.     Whether, if Plaintiff had informed defendants about his billing practices, he would have been used in the project.

24.     Whether Plaintiff was instructed that he should assemble his reliance

22

materials as he went along, to make it inexpensive to produce them to the defendant in the Barge litigation.

25.    Whether Plaintiff failed to follow this instruction, and spent unnecessary time in gathering his reliance materials.

26.    Whether Plaintiff was instructed that he should keep informed on what the other psychiatric and psychological researchers were doing, so that he could fairly describe their activites in his report.

27.    Whether Plaintiff failed to follow this instruction, and instead tried to teach himself the fields of the other psychiatric and psychological researchers, and spent unnecessary time in doing so.

28.    Whether Plaijntiff's report could be used for the purpose of answering the questions he had been asked to address.

29.    Whether Plaintiff continued to charge for large amounts of time after submission of his report.

30.    Whether, to the extent Plaintiff suffered any damages, Plaintiff made any effort to mitigate his damages.

31.    Whether Plaintiff could have worked in his office on the same kinds of tasks on which he ordinarily worked in his office, on the days that had previously been set aside for his deposition preparation and deposition.

32.    Whether Plaintiff has provided information on the income he would ordinarily have made from seeing patients at the time of his scheduled deposition.

33.     Whether, at the time of the discussion as to the use of Ronnie Montgomery as a runner to pick up medical records, the Seymour defendants cautioned Plaintiff and the other medical researchers that funds were very tight and they needed to be as efficient and inexpensive as possible.

34.     Whether Plaintiff ignored that instruction.

35.     .Whether the Fuchsberg defendants cautioned Plaintiff and the other medical researchers that funds were very tight and they needed to be as efficient and inexpensive as possible.

36.     Whether Plaintiff ignored that instruction.

37.     Whether the Gilbert Defendants were asked to, or agree to, fund amounts for emotional damages subclass experts.

38.     Whether the Gilbert Defendants retained Dr. Weisler.

39.     Whether the Gilbert Defendants asked Dr. Weisler to enter into a contract.

40.     Whether the Gilbert Defendants asked anyone to act as agent in entering a contract with Dr. Weisler.

41.     Whether the Gilbert Defendants participated in asking Dr. Weisler to enter into a contract.

42.     Whether the Gilbert Defendants participated in negotiating any contract terms with Dr. Weisler.

43.     Whether the Gilbert Defendants, the Seymour defendants, or the defendant Wiedemann & Wiedemann P.L.C., were identified when Dr. Weisler

24

assertedly entered into a contract.

44.     Whether the Gilbert Defendants, the Seymour defendants, or the defendant Wiedemann & Wiedemann P.L.C., knew Dr. Weisler's rate until he produced Attachment 16 to his report.

45.     Whether the Gilbert Defendants, the Seymour defendants, or the defendant Wiedemann & Wiedemann P.L.C., agreed at any time to Dr. Weisler's rate.

46.     Whether the Gilbert Defendants, the Seymour defendants, or the defendant Wiedemann & Wiedemann P.L.C., agreed at any time to be directly responsible for Dr. Weisler's bill.

47.     Whether the individual Defendants Brian A. Gilbert or Richard T. Seymour agreed at any time to be directly responsible for Dr. Weisler's bill.

48.     Whether, other than to critique his report, and to cease work, the Gilbert Defendants gave any instruction to Dr. Weisler.

49.     Whether the Gilbert Defendants retained any emotional damages expert.

50.     Whether the Law Office of Brian A. Gilbert, P.L.C. is a professional law corporation at all times pertinent authorized to do and doing business, in good standing, and duly registered with the Louisiana Secretary of State.  Whether the Law Office of Richard T. Seymour, P.L.L.C., is a professional limited liability corporation at all times pertinent authorized to do and doing business, in good standing, and duly registered with the District of Columbia.

51.     Whether the Gilbert Defendants told Dr. Weisler that Brian A. Gilbert, an