UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES                                    CIVIL ACTION
         CONSOLIDATED LITIGATION
                                                                 NO. 05-4182

PERTAINS TO:       BARGE                                         SECTION "K"(2)

*Weisler v. Seymour, et al*.  C.A. No. 09-2737

## ORDER AND REASONS

Before the Court are the following motions:

1.  A Motion for Partial Summary Judgment filed by plaintiff Dr. Richard H. Weisler (Doc. 20499);

2.  Seymour, Gilbert and Fuchsberg Defendant's Motion for Judgment on the Pleadings and Default Judgment on their Counterclaims, and to Deem the Allegations of the Counterclaims Admitted, Pursuant to Rules 8(b)(6), 12(c) and 55(b)(2), Fed. R. Civ. Pro. (Doc. 20501);[1]

3.  A Motion for Partial Summary Judgment filed by Brian A. Gilbert and the Law Office of Brian A. Gilbert, P.L.C. (Doc. 20502);

4.  An Ex Parte Motion for Leave to Withdraw Inclusion in Motions for Default in Doc. 20500, 20501 has been filed by Brian A. Gilbert and the Law Office of Brian A. Gilbert. P.L.C. referred to collectively herein as "Gilbert Defendants." (Doc. 20503);

5.  Seymour Defendants' Motion for Summary Judgment on Plaintiff's Open Account Claim (Doc. 20504); and

6.  Seymour, Fuchsberg and Gilbert Defendants' Motion to Strike Plaintiff's Untimely Answer to Defendants' Counterclaims.  (Doc. 20515).

The Court will address each of these in the appropriate order.

---

[1]

**Background**

This case arises out of litigation in the BARGE category of the *In re Katrina Canal Breaches Consolidated Litigation*. The Barge Plaintiffs Subgroup Litigation Committee ("BPSLC") was preparing to move to certify a class in the BARGE matter. In doing so, Alan Fuchsberg ("Fuchsburg") on behalf of "a small group of attorneys" contacted Dr. Richard Weisler ("Weisler") by e-mail on or about May 14, 2008, to request that he act as an expert to establish an emotional injury subclass. The class was described in that e-mail as comprised of approximately "60,000 residents in the 9th Ward, St. Bernard's (sic), New Orleans, due to the uniquely swift and traumatic nature of flood damage to their neighborhood." (Doc. 20499-3, Weisler Dep. Exh. 18, Oct. 9, 2011).

In an e-mail from Fuchsberg to the BPSLC including defendants Rick Seymour and Brian Gilbert, Fuchsberg wrote:

> I just got off a conference call with two psychiatrists professors (from LSU school of mental health and Duke University) who together have worked with Katrina victims, and are populist psychiatrists. They have agreed to coauthor a report by June 12. They want to interview the class reps in New Orleans next Saturday. Their names are Dr. Mark Townsend and Dr. Richard Weisler. Theu (sic) will send a plan summary after the weekend for our review.

(Doc. 20541-16, e-mail from Richard Seymour, dated May 16, 2008). Suffice it to say there is overwhelming and clear evidence that Weisler along with other participants prepared a report which was filed by the July 1, 2008 deadline which task was accomplished under the direction of certain lawyers of the BPSLC. Attached to that expert report, Weisler indicated the expert compensation for all six experts involved; as to himself, it stated that Weisler was being

reimbursed at a rate of $600 an hour and had worked to that point "over 260 hours" or $156,000 (Doc. 20508-10).  Weisler actually billed defendants for 287.75 hours.[2]

During the month of July, Weisler apparently spent 88.5 hours preparing for his deposition which exercise included reviewing literature and data, proofing plaintiff evaluations, and corresponding with the Defendants.  This work was be billed at $600 an hour for a total of $53,100.  Then in the month of August, the billing continued for another 72.5 hours which included 8/0 for cancelled patients because deposition cancelled at the last minute and 8.0 because of missed work opportunities.  Thus, Weisler charged another $43,500 for the month of August.  These figures do not take into account any costs apparently amounted to $2,799.56.

It is unclear exactly what invoices were sent at what time, but by July 30, 2008, Fuchsberg acknowledged the receipt of an invoice and stated that it was much more than they expected or could afford and basically requested that Weisler slash his bill. Indeed, on July 29, 2008, Seymour wrote:

> Alan, Dr. Weisler submitted his invoice today for $216,390.00 at $600 an hour, and it is fair to say the amount is a shock.  It's about five times what Mark Townsend charged and twice his rate.[3]
>
> When you were discussing the case with him or e-mailing with him, was their (sic) a retainer or a budget, if so, please send it to us.
>
> Did you ever have a discussion with him about his rate or about the need to keep expenses low?  If that was memorialized in an e-mail or letter, please send it to us.

---

[2]The Court has used Doc. 20499-17 which purports to be the Weisler hours spent from 5/16/08 through 8/15/08 with enhanced explanations plus all merged travel expenses that were outstanding to calculate the hours billed.

[3]This statement appears confusing as Dr. Townsend allegedly charged at the same billing rate.  Weisler maintains that because he was the lead expert in the group, he necessarily spent substantially more time than any of the other experts.

> This is a huge problem, and we need to make sure we are on top of the facts
> before the NOLA people and/or I talk to Dr. Weisler about a major adjustment.

(Doc. 20499-20 e-mail dated July 29, 2008 from Seymour to Fuchsburg).  Nonetheless, Weisler continued to prepare for a deposition that was scheduled for August 15, 2008 until August 12, 2008 at which point Brian Gilbert advised that these efforts in connection with the Weisler deposition were to cease.  (Doc. 20499-21).

It must be noted that in an e-mail dated July 30, 2008 at 10:33 a.m. from Alan Fuchsberg to Rick Seymour, Fuchsberg explained Weisler's explanation of his charges and noted, "He has spent over 300 hours.  We did not cap his time or costs of the project." (Doc. 2054-17 P. 1 of 2).  Then in a subsequent e-mail dated July 30, 2008 at 12:51, Fuchsberg states, "There was no agreement except that he indicated that his hourly rate was $600."  (Doc. 20541-17 page 2 of 2).

Weisler filed the instant suit against Richard T. Seymour, Esq., Richard T. Seymour, P.L.L.C., Alan L. Fuchsberg, Esq., Alan L. Fuchsberg Law Firm, Brian Gilbert, Esq., Law Office of Brian Gilbert, P.L.C., and Wiedemann & Wiedemann P.L.C.[4] (referred to collectively as "Defendants")  Counterclaims were then filed by these attorneys maintaining that there was a material breach of contract, there was a failure of consideration in the contract and that Weisler failed to diligently engage in the work he was contracted to do, was grossly negligent, and a myriad of other defalcations including his billing practices.  With that background, the Court will first address Dr. Richard Weisler Motion for Partial Summary Judgment.

---

[4]Lawrence Wilson and Wilson Grochow, Druker and Noblet were also sued, but they have settled with plaintiff.

**Standard for Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor."  *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

**A. Motion for Partial Summary Judgment filed by plaintiff Dr. Richard H. Weisler (Doc. 20499) and Seymour Defendants' Motion for Summary Judgment on Plaintiff's Open Account Claim (Doc. 20504)**

Weisler has filed the instant Motion for Partial Summary Judgment seeking judgment in his favor with respect to Defendants' breach of contract, the existence of an open account and the dismissal of dismissal of Defendants' counter-claims. Having reviewed the pleadings, the memoranda, the exhibits and the relevant law, the Court finds for the reasons that follow that there exists a contract for services and that it is in the nature of an open account. All other issues presented are not subject to judgment as there are questions of fact that remain.

**Contract**

Louisiana Civil Code art. 1927 states:

> A contract is formed by the consent of the parties established through offer and acceptance.
>
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
>
> Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

La. Civ. Code art. 1927. From the foregoing explanation of events, it is clear that Dr. Weisler was hired by the Defendants to produce and an expert report. Clearly, the e-mails and course of

conduct with Fuchsburg and Seymour demonstrate that Dr. Weisler was hired to perform this work at a cost of $600.00 an hour on behalf of the BPSLC.  At the very least Fuchsburg and Seymour acquiesced to that rate as there is n document or declaration that there was a different rate.  The question remains, however, whether that agreement goes so far as to bind all of the named  BPSLC defendants, both individually, and/or in their respective corporate capacities.  That question will remain for the jury to determine.  In addition, the question of the reasonableness of these charges will remain.  The Court must note that the fact that Weisler's deposition preparation took more than 150 additional hours from the time that the expert report was confected is curious.  The Court is reminded once again of the adage, "Pigs get fed, hogs get slaughtered."

### Open Account

As noted in *Frey Plumbing Co., Inc. v. Foster*, 996 So.2d 969 (La. 2008), La. Rev. Stat. 9:2781(D) must be applied as written.  It states that an "open account" includes:

> any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions.  "Open" account shall include debts incurred for professional service, including but not limited to legal and medical services.

La. Rev. Stat. 9:2781(D).  The *Frey* court  stated, "Under a plain reading of that statute, there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions.  To the extent the prior case law has imposed any requirements which are inconsistent with the clear language of La. R.S. 9:2781(D), those cases are overruled."

The Court of Appeal of Louisiana for the First Circuit applied this analysis in *Blanchard v. Cors & Bassett*, 2010 2WL 3496263 (Sept. 8, 2010). It wrote:

> Although an open account need not involve more than one transaction between the parties nor contemplate future transactions, open accounts ordinarily contemplate a series of transactions between the parties over an indefinite future period. *See Frey Plumbing Co., Inc.* 996 So.2d at 972; *Mid-South Analytical Labs, Inc.*, 912 So. 2d at 107. The total cost, unlike a contract is generally left open or undetermined, although the rate fro specific services may be fixed, such as an hourly rate. Finally, the service provider generally requests that the vendee or client keep current on payment of charges through regular billing, and usually sends monthly invoices.

*Blanchard*, at *3. Here, Weisler's services were performed over time and involved different aspects of establishing an emotional injury subclass expert report and the deposition preparation in conjunction thereto. No lump sum payment was set and billing apparently occurred after the first two months of service. At the outset, it was clearly contemplated that Weisler would be involved in the on-going class certification process and thus extended credit to the Defendants when he delivered a report without receiving payment for same. The BPSLC discontinued his services after the apparent decision to not pursue certification of this class.

Thus, this suit is properly brought as an open account and Weisler could be entitled to a reasonable attorney fee unless Defendants are successful with their defenses including non-compliance with the statute's requirements and/or with their counter-claim. The trier of fact will have to determine whether the requirements to prevail in a suit on open account are met by plaintiff. As stated in *Terra Indus., Inc. v. Meeks Disposal Corp.*, 2009 WL 2601302 (E.D.La. Aug. 20, 2009) (Engelhardt, J.):

> In order to prevail in a suit on an open account, the creditor must first prove the account by showing that the record of the account was kept in the course of business and by introducing evidence regarding its accuracy. Once a prima facie case has been established by the creditor, the burden shifts to the

8

>  debtor to prove the inaccuracy of the account or to prove the debtor is entitled to certain credits.  *CAVC of Colorado, LLC v. Spiehler,* 11 So.3d 673, 675 (La.App. Cir. 2009); *Metal Coating, L.L.C. v. Petroquip Energy Services L.P.* 970 So.2d 695, 698 (La. App. 2007); *Newman v. George* 968 So.2d 220, 224 (La. App. 2007).

*Id.* Clearly, there are question of fact in that regard and the Court will leave these issues for the trier of fact to determine.  Likewise there are material questions of fact concerning Defendants counterclaims; judgment shall not be entered in that regard as well.

Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment filed by plaintiff Dr. Richard H. Weisler (Doc. 20499) is **GRANTED** insofar as the Court finds that there exist a contract between Weisler and one or more of the Defendants and that the contract is in the nature of an open account and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Seymour Defendants' Motion for Summary Judgment on Plaintiff's Open Account Claim (Doc. 20504) is **DENIED**.

**B.** **Seymour, Gilbert and Fuchsberg Defendant's Motion for Judgment on the Pleadings and Default Judgment on their Counterclaims, and to deem the Allegations of the Counterclaims Admitted, Pursuant to Rules 8(b)(6), 12(c) and 55(b)(2), Fed. R. Civ. Pro. (Doc. 20501); An Ex Parte Motion for Leave to Withdraw Inclusion in Motions for Default in Doc. 20500, 20501 has been filed by Brian A. Gilbert and the Law Office of Brian A. Gilbert. P.L.C. referred to collectively herein as "Gilbert Defendants."  (Doc. 20503); and Seymour, Fuchsberg and Gilbert Defendants' Motion to Strike Plaintiff's Untimely Answer to Defendants' Counterclaims**

The Seymour, Gilbert and Fuchsberg defendants filed the instant motion on October 18, 2011, seeking judgment on "the three unanswered counterclaims" filed by all Defendants on May 29, 2009.[5]  They claim that a default judgment should be entered because no answer to the counterclaims had been filed to that date.  Weisler filed on the same day the above-noted motion for summary judgment on the counterclaims.  Thus, the entry of a preliminary default would have been improper.  Furthermore, and as a practical matter, default judgments are a drastic remedy, not favored by the federal rules and resorted to by courts only in extreme situations. *Sun Bank v. Pelican Homestead & Savings Assoc.*, 874 F.2d 274, 276 (5th Cir. 1989).  As noted by the United States Court of Appeals for the Fifth Circuit with respect to the appropriateness to enter a default:

> Relevant factors include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

---

[5] An Ex Parte Motion for Leave to Withdraw Inclusion in Motions for Default in Doc. 20500, 20501 was been filed by Brian A. Gilbert and the Law Office of Brian A. Gilbert. P.L.C. referred to collectively herein as "Gilbert Defendants."  (Doc. 20503).  Finding no reason to not grant this request,
   **IT IS ORDERED** that the Ex Parte Motion for Leave to Withdraw Inclusion in Motions for Default in Doc. 20500, 20501 has been filed by Brian A. Gilbert and the Law Office of Brian A. Gilbert. P.L.C. referred to collectively herein as "Gilbert Defendants."  (Doc. 20503) is **GRANTED**.

*Id.* at 893. Clearly, there has been no prejudice, the grounds for default are not clearly established and the court would be obliged to set aside the default on defendant's motion. This case and the respective positions of all parties has been clear from the outset. This case does not present an instance where there is no appearance by a party. Defendants filed a counterclaim and those issues will be tried along with the main demand. These same reasons apply equally to Defendants' Motion to Strike Plaintiff's Untimely Answer to Defendants' Counterclaims. Accordingly,

**IT IS ORDERED** that Seymour and Fuchsberg Defendant's Motion for Judgment on the Pleadings and Default Judgment on their Counterclaims, and to deem the Allegations of the Counterclaims Admitted, Pursuant to Rules 8(b)(6), 12(c) and 55(b)(2), Fed. R. Civ. Pro. (Doc. 20501) is **DENIED.**

**IT IS FURTHER ORDERED** Seymour, Fuchsberg and Gilbert Defendants' Motion to Strike Plaintiff's Untimely Answer to Defendants' Counterclaims. (Doc. 20515) is **DENIED.**

**C.    A Motion for Partial Summary Judgment filed by Brian A. Gilbert and the Law Office of Brian A. Gilbert, P.L.C. (Doc. 20502)**

Brian A. Gilbert ("Gilbert") and the Law Office of Brian A. Gilbert, P.L.C. moved for summary judgment dismissing him individually, finding no open account, finding that agency principles do not expose movers to liability. There are questions of fact with respect to whether Brian Gilbert can be held personally liable and that issue will be decided by a jury. Likewise for the reasons stated above, summary judgment will not be entered finding no open account.

These decisions leave one issue to be addressed here–whether agency principles relieve movers of liability.

As stated in *Foshee v. Hand-Enis Realty Co.*, 237 So.2d 437(La. App. 1970):

> An agent who contracts for a principal without disclosing that fact is personally liable to the party with whom he contracts.  The undisclosed principal is also liable Louisiana Civil Code art. 3013; *Bush v. Saucier*, 197 So.2d 907 (La. App. 1st Cir. 1967); *LaBella Insulation, Inc. v. Connolly*, 182 So.2d 117 (La. App. 4th Cir. 1966).

*Id.* at 440.  The Fifth Circuit in addressing this issue went further in its analysis of the *LaBella Insulation* case and noted that a plaintiff may indeed sue both the agent and his principal in a single suit in order to obtain a judgment binding them in solido.  *Intercontinental Engineering-Manufacturing Corp. v. C.F. Bean Corp.*, 647 F.2d 621 (5th Cir. 1981).  *See also Frank's Door & Bldg. Supply, Inc. v. Double H. Construction Company, Inc.*, 459 So.2d 1273 (La. App. 1st Cir. 1984) (approving *Intercontinental Engineering* analysis).   Thus, just because there was arguably an undisclosed agent involved, the principles remain liable.  In addition, a "principal is bound to compensate the mandatary for loss the mandatary sustains as a result of the mandate, but not for loss caused by the fault of the mandatary."  La. Civ. Code art. 3013.

Thus, there are questions of fact for the jury to determine with respect to the issue of who is liable for the payment for the work performed by Weisler subject to the defenses raised by the defendants.  Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment filed by Brian A. Gilbert and the Law Office of Brian A. Gilbert, P.L.C. (Doc. 20502) is **DENIED**.

New Orleans, Louisiana, this  16th day of November, 2011.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**