UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | *<br>*  CIVIL ACTION<br>*<br>*  NO. 05-4182 |
| PERTAINS TO: BARGE | *  and consolidated cases<br>* |
| | *  SECTION "K" (2)<br>* |
| *Weisler v. Seymour, et al.* 09-2737 | *<br>*  JUDGE<br>*  STANWOOD R. DUVAL, JR.<br>*  MAGISTRATE JUDGE<br>*  JOSEPH C. WILKINSON, JR. |

*********************************************************

## AMENDED PRE-TRIAL ORDER

I.   **PRETRIAL CONFERENCE**

The pre-trial conference in the above referenced matter is presently set for November 17 2011, at 2:00 p.m.

II.   **APPEARANCE OF COUNSEL:**

Richard Weisler - Plaintiff

     Represented by:
     Andrew C. Wilson, T.A.
     Peter S. Thriffiley, Jr.
     Daniel J. Caruso
     SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
     30th Floor – Energy Centre
     1100 Poydras Street
     New Orleans, LA  70163
         andreww@spsr-law.com
         (504) 569-2030

1

Alan Fuchsberg and the Jacob D. Fuchsberg Law Firm - Defendants

    Represented by:
    David V. Batt, T.A.
    Bradley S. Groce, T.A.
    LOBMAN, CARNAHAN, BATT, ANGELLE & NADER
    400 Poydras Street
    Suite 2300
    New Orleans, LA 70130
        dvb@lcba-law.com
        bsg@lcba-law.com
        (504) 586-9292


Richard T. Seymour and Richard T. Seymour, P.L.L.C. - Defendants

    Represented by:
    Richard T. Seymour, T.A.
    LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C.
    Suite 900, Brawner Building
    888 17th Street, N.W.
    Washington, DC 20006-3307
        rick@rickseymourlaw.net
        (202) 785-2145 – Telephone
        (202) 549-1454 – Cell
        (800) 805-1065 – Facsimile

Brian Gilbert and Law Office of Brian A. Gilbert, P.L.C. - Defendants

    Represented by:
    Brian A. Gilbert, T.A.
    LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
    2030 St. Charles Avenue
    New Orleans, Louisiana 70130
        Telephone: (504) 598-1000
        Facsimile: (504) 524-1024
        bgilbert@briangilbertlaw.com

    and

>Jonathan H. Adams, T.A.
>E. Alexis Bevis, T.A.
>Koeppel Traylor
>2030 St. Charles Avenue
>New Orleans, Louisiana  70130
>>Telephone: (504) 598-1000
>>Facsimile:  (504) 524-1024
>>jadams@koeppeltraylor.com
>>abevis@koeppeltraylor.com

>Wiedemann & Wiedemann, P.L.C. – Defendant

>Represented by:
>Lawrence D. Wiedemann, T.A.
>WIEDEMANN & WIEDEMANN, A. P.L.C.
>110 Veterans Boulevard
>Suite 444
>Metairie, LA 70005-4910
>>ldwiedemann@gmail.com
>>(504) 581-6180

## III. DESCRIPTION OF THE PARTIES:

Plaintiff, Dr. Richard H. Weisler, a resident and citizen of Durham, North Carolina.

Defendants, Richard T. Seymour, Esq., Richard T. Seymour, P.L.L.C., Alan L. Fuchsberg, Esq., The Jacob D. Fuchsberg Law Firm, L.L.P., Brian A. Gilbert, Esq., Law Office of Brian A. Gilbert, P.L.C., and Wiedemann & Wiedemann, A.P.L.C. (collectively "Defendants")

The Defendants have filed Counter-Claims against the Plaintiff.  No cross-claims or third-party complaints have been filed.

IV.  **JURISDICTION:**

Plaintiff asserts that this court has jurisdiction over this matter based upon the parties' diversity of citizenship, 28 U.S.C. §1332.

Defendants assert that plaintiff lacks standing to bring this action in that he testified in his deposition that the party contracting with defendants was his professional corporation, but the only plaintiff is Dr. Weisler suing in his individual capacity, and that this Court is therefore without Article III jurisdiction.

The Plaintiff, Dr. Richard H. Weisler, brought this action for breach of contract and "Open Account" seeking to collect fees for professional services associated with his work as an expert witness for the Defendants in the Barge Case.  The parties are diverse in citizenship from each other and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

Defendants brought counterclaims against plaintiff for (1) material breach of contract; (2) failure of consideration; and (3) poor performance and misdeed in connection with performance of the contract.  Jurisdiction over these counterclaims is dependent on the Court's jurisdiction over the case as a whole.

V.  **MOTIONS:**

  A.  **Pending Motions**:

As of the date of this submission, the Parties have filed the following Motions that had not yet been decided:

  1.  Plaintiff has filed the following motion: Motion in Limine to Documentation

4

Associated with Settlement Negotiations [Doc. 20555], seeking the exclusion of inadmissible evidence, including, but not limited to, any settlement correspondence exchanged by the parties, such as the correspondence issued by the Seymour Defendants on or about February 8, 2009.

**B.    Anticipated Motions**:

1.    Both Plaintiff and Defendants intend to file one or more Motions in Limine seeking the exclusion of inadmissible evidence, and limits to witness testimony. Plaintiff also intends to file a motion to strike the Defendants' newly raised opposition defense of an alleged breach of a covenant of good faith and fair dealing.

**VI.    SUMMARY OF MATERIAL FACTS:**

**A.    On behalf of Plaintiff:**

Plaintiff, Dr. Richard H. Weisler, is a practicing psychiatrist, who also publishes, lectures and teaches, nationally and internationally. Defendants, Alan Fuchsberg and the Jacob D. Fuchsberg Law Firm ("the Fuchsberg Defendants") contacted Dr. Weisler on or about May 16, 2008, by e-mail indicating that the Fuchsberg Defendants were acting on behalf of a "group of attorneys" involved in the Barge Litigation who were seeking an expert witness to establish an "emotional injury subclass." Dr. Weisler thereafter conferred with the Fuchsberg Defendants by telephone and, given the size of the project as described by the Fuchsberg Defendants, brought in another psychiatrist, Dr. Mark Townsend, to

5

confer with the Fuchsberg Defendants on the details of the proposed subclass.

The Fuchsberg Defendants thereafter retained both Dr. Weisler and Dr. Townsend, agreeing to pay them their $600.00 hourly rate. The Fuchsberg Defendants then, via e-mail, immediately contacted the other members of the "group of attorneys" who describe themselves as the "Barge Subclass Plaintiff's Litigation Committee ("BSPLC") an unincorporated alter ego for their "Barge Case" website they created and used in connection with the Katrina Barge Litigation. The "group of attorneys" includes the Fuchsberg Defendants; Richard T. Seymour and Richard T. Seymour, P.L.L.C. ("the Seymour Defendants"); Brian A. Gilbert and Brian A. Gilbert, P.L.C. ("the Gilbert Defendants"); and, the Law Firm of Wiedemann & Wiedemann, P.L.C. ("Wiedemann").

During subsequent communications with Dr. Weisler and Dr. Townsend, the Fuchsberg Defendants indicated that costs were not an issue, but that time was, as the Defendants had waited until less than thirty days before the deadline for producing expert reports to commence the project. As a result, both Dr. Weisler and Dr. Townsend were instructed to work around the clock, including weekends, in an effort to produce a comprehensive expert report which would assist the Defendants in their efforts to establish their proposed "emotional injury subclass."

Throughout the period of time beginning on or about May 16, 2011, through the date of July 1, 2008, when the comprehensive expert report would be

6

timely produced, Dr. Weisler, Dr. Townsend and several other mental health care professionals retained by the Defendants to assist in the project worked at the direction of the Defendants who instructed the project team as to which representative plaintiffs should be interviewed/evaluated; how the report should be written; what the report should contain; and what attachments should be included with the report. All the while, each time Dr. Weisler and Dr. Townsend would raise billing issues, the Defendants indicated that the project team needed to focus on the report instead.

Eventually, when the report was produced, the report contained an attachment indicating the fees that had been incurred by the Defendants as of the date of the report. Dr. Weisler, who was designated by the Defendants as the representative of the project team, testifying witness and author of the comprehensive report, had substantially greater fees and activity given his expert financially greater role. In addition, one member of the project team, Dr. Jill Hayes, had previously submitted her invoices for over $21,000.00, which was paid, as she would not release her report until such time as she was paid. In addition, Dr. Townsend also issued his invoices which the Defendants promised to pay, but did not at that time.

After the report was released to the Defendants, they, in turn, presented it to opposing counsel for the Barge Defendants in the Barge Case. The Defendants also congratulated Dr. Weisler on the content of the report at that

7

time. The Defendants then told Dr. Weisler to prepare for a deposition at which he would appear as the testifying expert on behalf of all of the mental healthcare professionals who made up the project team. The Defendants also told him to review the articles which formed the basis for the report, review all of the medical records generated by the project team during the course of the project, and, gather additional information from the project team who were still providing medical information and interviewing representative plaintiffs as late as the first week of August, 2008. Meanwhile, Dr. Weisler's deposition remained set for August 14, 2008.

On July 30, 2008, Dr. Weisler furnished a detailed invoice setting forth all of his fees and expenses as of that date. At that time, the Defendants claimed that they did not have the funds to pay the invoice, as they were operating on a "shoe-string" budget. This is despite the fact that all of the Defendants had filed Affidavits with the Court indicating that they had the resources to properly represent the members of the putative class. Although the Defendants had praised the report and had determined it would be useful for their intended purposes, a new law firm which had agreed to "bank roll" the litigation determined that the Defendants had incorrectly interpreted the applicable law related to class actions and class certification and chose to abandon the "emotional injury subclass". Shortly thereafter, the project team was told to cease all efforts on the project and Dr. Weisler's deposition was abruptly cancelled, two days before the

scheduled date. Dr. Weisler had scheduled no appointments for those three days and lost income for which he would eventually bill the Defendants.

Shortly thereafter, the Defendants began to create fictitious reasons for not paying Dr. Weisler and the other mental healthcare professionals. In February, 2009, however, the Defendants determined that they might need an expert psychiatrist for the Barge Case and therefore, decided to pay Dr. Townsend in full, i.e. $54,000.00, an amount less then what was owed to Dr. Weisler. The Defendants also refused to pay Dr. Phillip Griffin, Dr. Howard Osofosky and Dr. Joy Osofosky, as well as investigator, Ronnie Montgomery. As a result, Dr. Weisler filed this lawsuit for breach of contract and "Open Account" under applicable Louisiana law, La. R.S. 9:2781 and other seeking to recover his fees of $272,049.56 as well as interest, costs and attorneys' fees under Louisiana law and FRCP Rule 11.

B. **On behalf of the Seymour and Wiedemann and Wiedemann, APLC, Defendants**:

Plaintiff has no standing to maintain this action, and it should be dismissed. The statute of limitations has already expired as to the Open Account claim, and an amendment of the Complaint cannot cure the failure to name a plaintiff with standing.

Plaintiff and the members of the medical team were given specific tasks to

9

perform, in support of a claim for injunctive relief under Rule 23(b)(2), Fed. R. Civ. Pro.

If plaintiffs had prevailed on liability, the injunctive relief would have consisted of an order requiring the Barge defendant to establish or fund a program whereby class members could be screened inexpensively for need to consult a mental health professional and could receive therapy at the Barge defendant's expense.

Given the difficulties of obtaining certification of an emotional-distress class seeking damages, this was one means of potentially obtaining class certification.

Unfortunately, despite the repeated guidance given by Barge plaintiff's counsel, Dr. Weisler and the medical team failed to focus on their task, and Dr. Weisler ultimately produced a report that was not adequate for the needed purpose, was not competently done, and was not persuasive.

Dr. Weisler's failure to produce a draft until the last minute made it impossible to resurrect value from his work, and Barge counsel ultimately determined that his work and analysis were so poor that there was no point in continuing to hold him out as an expert witness to be deposed, canceled his deposition, and were forced to abandon the claim for injunctive relief.

As a result, no value was obtained from plaintiff's work.

Plaintiff's work was not accepted within any recognizable meaning of the

10

term.

Plaintiff's claim is further undermined by practices demonstrating violations of the covenant of good faith and fair dealing, and showing a complete lack of billing judgment:

    (a) his having ignored repeated instructions to hold expenses down because resources were limited;

    (b) by his extraordinarily aggressive billing practices;

    (c) by his failures to keep accurate contemporaneous time records, and aggressive estimates of his time;

    (d) by his charging for 106.25 hours—at $600 an hour—for which he has no time record at all, not even his usual little slips of paper with his estimates; and

    (e) by his churning the file to no purpose.

Richard T. Seymour is not a proper defendant in this action. To the extent that there is any obligation to Plaintiff or his company, it would be the obligation of the Law Office of Richard T. Seymour, P.L.L.C., a professional limited liability corporation and the entity under which Richard T. Seymour practices law.

The Seymour defendants never participated in any acceptance of Dr. Weisler's hourly rate, never told him not to make contemporaneous time records, never told him to perform the extent of activities for which he claims compensation, never told him to contact the large numbers of persons he

11

contacted, never told him to read the large number of sources he claims to have read, never told him to delay submission of invoices, and never told him anything that could reasonably be construed as meaning that charges or activity on the scale of his charges were acceptable, or would be paid, or could reasonably have been paid from any funds awarded to the class or to the clients,

Plaintiff's charges are excessive, and violate the covenant of good faith and fair dealing.

Plaintiff has already been paid $10,000.

C. **On behalf of the Gilbert defendants:**

Brian A. Gilbert practices law strictly as Law Office of Brian A. Gilbert, P.L.C., a duly formed and maintained Louisiana law corporation. Brian A. Gilbert is not a proper party to this suit. Gilbert Defendants were at not responsible for funding Dr Weisler's bill. Gilbert Defendants were not party to any agreement with Dr. Weisler, and took no part in entering into same. Gilbert Defendants were not informed of any terms of Dr. Weisler's retainer other than that he would serve as expert relative to a proposed emotional damages subclass. Gilbert Defendants had no meeting of the minds with Dr. Weisler, and were unaware of the charges Dr. Weisler was generating. Gilbert Defendants' conduct respecting any of Dr. Weilser's allegations consisted only of complying with a request to assist with scheduling mental health evaluations, attending one meeting with him

when he so requested, critiquing his report, reacting negatively to his bill, and after finding out of his bill asking him to cease activities, and attempting to obtain a reduction of his excess bill. Gilbert Defendants never told anyone they would be directly responsible for Dr. Weisler's bill. Gilbert Defendants did not ratify the contract with Dr. Weisler. Gilbert Defendants nonetheless maintain that Dr. Weisler's bill is unjustified, that he is not the proper party to this suit, and that his bill does not satisfy the open account statute. Gilbert Defendants additionally reiterate by reference their factual contentions included in their Motion for Summary Judgment, Reply In Support of Motion for Summary Judgment, and in their Opposition to Dr. Weisler's Motion for Summary Judgment, and factual contentions of other parties, to the extent not consistent herewith.

**D.    On behalf of the Fuchsberg defendants:**

This suit arises from an alleged contract dispute involving plaintiff, Richard Weisler, and the defendants. The defendants, are previously members of the Barge P.S.L.C., including: Alan Fuchsberg, Rick Seymour, Brian Gilbert, Larry Wilson, and Larry Weidemann, agreed to contact individuals for interviews for experts in the Katrina Barge litigation.

On May 15, 2008, a motion related to the certification of a proposed emotional injury subclass in the Barge litigation was drafted and filed. The motion was based on an idea, raised and discussed among counsel, that an

13

attempt should be made to certify a subclass for injunctive relief for the cost of psychological therapy for those suffering emotion injuries due to the trauma caused by the flooding due to the barge breaching the canal wall. Part of that discussion included that expert support for that aspect of the motion would be needed.

The defendants collectively decided to obtain such an expert. In acting as a member of the Barge P.S.L.C., on May 15, 2008, based upon having found their names in an article about the psychological trauma to Katrina victims, Alan Fuchsberg e-mailed Dr. Townsend and Dr. Weisler separately to see if either would be available as experts in the litigation.

Thereafter, Alan Fuchsberg first heard either from Dr. Townsend or Dr. Weisler, who recommended that both should work on this project. Afterward, a short telephone conversation was had with Dr. Townsend, Dr. Weisler, and Alan Fuchsberg on the line. During this telephone conversation, either Dr. Townsend or Dr. Weisler mentioned that they normally bill at an hourly rate. There were no discussions as to the costs of plaintiff's services and Plaintiff provided no estimate as to the cost of his services. Alan Fuchsberg did not agree then, or at any time afterward, to any specific rate. In this conversation, Alan Fuchsberg told Dr. Weisler and Dr. Townsend that the next step would be to set up a telephone conference call with co-counsel to continue the interview before retention. Alan Fuchsberg did not agree, individually or on behalf of the Jacob D.

Fuchsberg Law Firm to become personally liable for any debt to plaintiff.

This next telephone conference took place in May of 2008 involving Dr. Townsend, Dr. Weisler, and co-counsel. Following this conversation, the Fuchsberg defendants did not have any further discussions with either Dr. Weisler or Dr. Townsend about either a contract or a billing rate.

During and following the interview process, the parties discussed that Dr. Weisler and Dr. Townsend would perform services including a psychological evaluation of anecdotal clients, which would enable Dr. Weisler and Dr. Townsend to configure an abridged efficient methodology to examine other Katrina victims potentially in the class. The doctors interviewed approximately 12 people. How much time and effort beyond the 12 person interview was not quantified. Significantly, the terms of their retention were not confirmed. Dr. Weisler and Dr. Townsend were informed from the outset that limited resources were available. Immediately following this May 2008 conference call between co-counsel, Dr. Townsend and Dr. Weisler, there were numerous other phone conferences that the Fuchsberg defendants did not participate in, but one or more co-counsel did participate in those other calls.

The Fuchsberg defendants were not senior to co-counsel, and did not lead the litigation. The Fuchsberg defendants never agreed to Dr. Weisler's bill, or his billing rate. The Fuchsberg defendants never agreed to the scope of services performed by Dr. Weisler, and never anticipated that Dr. Weisler would put in so