UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * CIVIL ACTION <br> * <br> * NO. 05-4182 <br> * |
| PERTAINS TO: MRGO | * SECTION "K" (2) <br> * <br> * JUDGE DUVAL <br> * <br> * MAGISTRATE JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

### DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE REGARDING ECONOMIC LOSS CLAIMS

Washington Group International, Inc.[1] ("WGII") respectfully submits this memorandum in support of its motion to exclude as irrelevant evidence pertaining to the economic loss claims of plaintiffs Fred Holmes, Jeneen Holmes,[2] and Jeannine Armstrong (collectively "Plaintiffs"). Because Plaintiffs' economic loss claims do not arise from damage to their property or persons, they are precluded from recovering these damages by the "economic-loss" rule, and thus any evidence relating to these claims is not probative as to any fact or issue that is to be determined by the Court in the trial on this matter. Eliminating this legally irrelevant evidence, the related expert discovery, and potential *Daubert* motions, memoranda and hearings

---

[1] Subsequent to the activities alleged in Plaintiffs' Complaint, WGII was acquired by URS Corporation, a Delaware Corporation. WGII, now known as URS Energy & Construction, Inc., is a subsidiary of URS E&C Holdings, Inc., a Delaware Corporation. URS E&C Holdings, Inc. is a subsidiary of URS Holdings Inc., a Delaware Corporation. URS Holdings Inc. is a subsidiary of URS Corporation.

[2] For ease of reference, Jeneen Holmes is referred to as a "plaintiff" herein; however, Mrs. Holmes has never been added as a party to this litigation.

1077488v.1

will result in savings of time and resources for the legitimate issues in this case. For these reasons and those set forth more fully below, WGII's motion should be granted.[3]

I.  **STATEMENT OF FACTS**

In their Complaint, Plaintiffs allege that WGII and/or the United States undermined the floodwall adjacent to the Inner Harbor Navigational Canal ("IHNC") as a result their activities at the East Bank Industrial Area ("EBIA"). Plaintiffs further contend that their residences and personal property were damaged by floodwaters released by breaches of the floodwall. Plaintiffs evacuated in advance of Hurricane Katrina, and are not asserting claims for personal injury.[4]

   A.  **Fred and Jeneen Holmes**

On August 28, 2005, Mr. and Mrs. Holmes resided at 1250 Perrin Drive, Arabi, Louisiana, 70032. Mr. Holmes was employed as an office supply manager at the University of New Orleans ("UNO").[5] Mrs. Holmes worked at Delgado Community College ("Delgado") as a financial aid counselor.[6]

The Holmes residence suffered damage from floodwaters, wind, and wind-driven rain on August 29, 2005.[7] Mr. Holmes' employer, UNO, also suffered damage as a result of

---

[3]  In filing this motion, WGII does not waive, and hereby explicitly reserves its right, to file a *Daubert* motion challenging the methodology and opinions of Plaintiffs' economic loss expert, Dr. Randy Rice, in accordance with the deadlines established by the Court.

[4]  Excerpts of Dep. of Jeannine Armstrong, dated September 13, 2011, attached hereto in globo as Ex. A, at 63:10-13; 95:42-96:3. *See also* Excerpts of Dep. of Fred Holmes, dated September 24, 2011, attached hereto in globo as Ex. B, at 57:3-6; 105:34-106:7.

[5]  Fred Holmes Dep. at 27:23-28:1; 35:24-36:2 (Ex. B herein).

[6]  Excerpts of Dep. of Jeneen Holmes, dated September 25, 2011, attached hereto in globo as Ex. C, at 17:18-18:1.

[7]  Following the initial denial of their claim by their homeowners insurer, the Holmes filed suit against their insurer, alleging, *inter alia*, that their house and personal property

flooding that was not and could not have been caused by the breaches that are the subject of this litigation.

The damage to his residence and UNO notwithstanding, Mr. Holmes testified at his deposition that he did not lose his job at UNO in the immediate aftermath of Hurricane Katrina. On the contrary, he continued to be employed by UNO, working in a satellite capacity from Houston and receiving his salary until January 2006.[8] In January 2006, UNO informed Mr. Holmes that, as a condition of his employment, he needed to return to work at its campus in New Orleans.[9] Mr. Holmes did not attempt to obtain replacement or temporary housing in the greater New Orleans area in January 2006, and consequently did not return to work at UNO's campus. As a result, he was furloughed.[10] Mr. Holmes testified that, had he obtained replacement or temporary housing in the greater New Orleans area in January 2006, he would not have lost his job at UNO.[11]

Similarly, Mrs. Holmes' employer, Delgado, also suffered damage from flooding that was not and could not have been caused by any alleged action or inaction on the part of WGII. And like Mr. Holmes, Mrs. Holmes did not lose her job as a result of the damage to her residence or of the damage to her employer. Mrs. Holmes continued to be employed by Delgado

---

(continued…)

"suffered extensive wind damage as a result of Hurricane Katrina" for which they had not been adequately compensated. The Holmes later settled with their insurer for $20,000. *See* Fred Holmes Dep. at 260:23-261:21; 270:16-271:18 (Ex. B herein).

[8] Fred Holmes Dep. at 44:25- 46:10 (Ex. B herein).

[9] Fred Holmes Dep. at 46:15- 47:1 (Ex. B herein).

[10] Fred Holmes Dep. at 44:25-45:3 (Ex. B herein).

[11] Fred Holmes Dep. at 53:4-12 (Ex. B herein).

until January 2006, and received her base salary during this time.[12] In January 2006, Delgado informed Mrs. Holmes that she needed to return to work at its campus as a condition of her employment. When she did not return, she was furloughed.[13] Mrs. Holmes testified that, had she obtained replacement or temporary housing in the greater New Orleans area in January 2006, she would not have lost her job at Delgado.[14]

The Holmes relocated to Houston and sold their home through the Road Home program. They are now both employed at Rice University.

### B. Jeannine Armstrong

On August 28, 2005, Mrs. Armstrong was employed by Universal Health Services, Inc. as a registered nurse at Chalmette Medical Center.[15] On August 29, 2005, her residence in Chalmette was damaged by floodwaters, wind, wind-driven rain, and other sources.[16] The Chalmette Medical Center where Mrs. Armstrong worked also was damaged and has not reopened.[17]

In June 2006, the Armstrongs established a residence in Covington. Shortly thereafter, Mrs. Armstrong began experiencing medical problems and was hospitalized in

---

[12] Jeneen Holmes Dep. at 32:19-33:14; 34:20-35:8 (Ex. C herein).

[13] Jeneen Holmes Dep. at 36:15-21 (Ex. C herein).

[14] Jeneen Holmes Dep. at 38:4-9 (Ex. C herein).

[15] Excerpts of Dep. of Jeannine Armstrong, dated July 9, 2007, attached hereto in globo as Ex. D, at 11:7-16.

[16] The Armstrongs received approximately $35,700.00 for damage to their immovable and movable property in the initial adjustment of their claim. Following this adjustment, the Armstrongs filed suit against their homeowners insurer alleging, *inter alia*, that they had not been adequately compensated for wind and wind-driven rain damage to their house and contents. They later settled with their insurer for approximately $30,000. *See* Armstrong Liberty Mutual Ins. File, Bates No. LM-ARMSTRONG 229-334.

[17] Armstrong 2007 Dep. at 81-82 (Ex. D herein).

September 2006. Per her doctor's advice, she was unable to return to work until the summer of 2007.[18] In August 2007, Mrs. Armstrong began work at Houma Outpatient Surgery Center, and has worked there to the present. In order to spend more time with her daughter, Mrs. Armstrong opted to work part-time, and has not sought a full-time position.[19]

### C. Dr. Rice's Reports

On September 8, 2011, Plaintiffs produced a report from Dr. Randy Rice purporting to calculate the economic damages Mrs. Armstrong had suffered as a result of the alleged conduct of the Defendants. This report was later revised on November 21, 2011.[20] In his revised report, Dr. Rice calculates her damages as the wages and retirement benefits she would have received over her work-life had she continued to be employed at Chalmette Medical Center. Dr. Rice does not take into account the fact that, by her own admission, Mrs. Armstrong opted not to pursue full-time employment for personal reasons when she returned to the workforce in 2007.

On September 19, 2011, Plaintiffs produced a report from Dr. Randy Rice purporting to calculate the economic damages Mr. and Mrs. Holmes had suffered as a result of the alleged conduct of the Defendants. This report was later revised on November 10, 2011.[21] Similarly, Dr. Rice calculates their damages as the lost wages and retirement benefits they would

---

[18] Armstrong 2011 Dep. at 76:21-80:7 (Ex. A herein). Mrs. Armstrong does not have any claims in this lawsuit for personal injury relating to her medical condition. Armstrong 2011 Dep. at 96 (Ex. A herein).

[19] Armstrong 2011 Dep. at 51:12-25 (Ex. A herein).

[20] A copy of Dr. Rice's original report for Mrs. Armstrong is attached hereto as Ex. E. His revised report is attached as Ex. F.

[21] A copy of Dr. Rice's original report for the Holmes is attached hereto as Ex. G. His revised report is attached as Ex. H.

have received over their work-lives had they returned to their respective employers in January 2006.

Setting aside for the moment the flaws in Dr. Rice's methodology and assumptions, which WGII will necessarily address in due course if this motion is denied, Dr. Rice's testimony, opinions, and all evidence regarding Plaintiffs' alleged economic losses should be excluded because they are wholly irrelevant to these proceedings. It is well settled that a plaintiff may not recover economic losses when the alleged damage did not arise from injury to the plaintiff's person or property.

## II.     LAW & ARGUMENT

### A.     Standard of Review

Federal Rule of Evidence 402 prohibits the admission of evidence that is not relevant. An item of evidence is relevant if it "tends to prove or disprove the matter sought to be proved." Fed. R. Evid. 401 advisory committee's note. To be admissible, evidence must have some "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Implicit in that definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *U.S. v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981). It is well-settled that the trial court is afforded wide discretion in assessing the relevance and prejudicial effect of evidence. *U.S. v. Seale*, 600 F.3d 473, 494 (5th Cir. 2010).

### B.     Evidence Regarding Plaintiffs' Alleged Economic Losses is Irrelevant Because These Losses Are Not Recoverable.

Evidence regarding Plaintiffs' alleged economic losses is irrelevant, and should therefore be excluded. "[T]he 'economic-loss rule' bars recovery in tort when a party suffers economic loss unaccompanied by harm to his own person or property." *Wiltz v.*

- 6 -

1077488v.1

*Bayercropscience, Ltd. P'ship.*, 645 F.3d 690, 695 (5th Cir. 2011) (citing *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1072 (5th Cir. 1985) and *Great Sw. Fire Ins. Co. v. CNA Ins. Co.*, 557 So. 2d 996, 970 (La. 1990)).  "[F]or 'policy reasons,' the law does not 'require that a party who negligently causes injury to property must be held legally responsible to *all* persons for *all* damages flowing in a 'but-for' sequence from the negligent conduct." *Wiltz*, 645 F.3d at 697 (citing *PPG Indus., Inc. v. Bean Dredging*, 447 So. 2d 1058 (La. 1984)) (emphasis in original).

In order to prevail on their economic loss claims, the Plaintiffs must establish (1) that the Defendants had a duty to conform their conduct to a specific standard; (2) the Defendants failed to conform their conduct to this standard; (3) the Defendants' conduct was the cause-in-fact of the Plaintiffs' injuries; (4) the Defendants' conduct was a legal cause of the Plaintiffs' injuries; and (5) the Plaintiffs suffered actual damages.  La. Civ. Code art. 2315.  The alleged damages, however, are beyond the scope of the doctrine of any duty WGII has assumed. Plaintiffs did not suffer any harm to their persons as a result of Katrina, and the damage to their residence and personal property that WGII is alleged to have caused did not result in the economic losses they are seeking to recover.  Thus, they cannot recover these alleged damages from WGII.

In *PPG*, the Louisiana Supreme Court addressed claims for indirect economic loss and/or negligent interference with a contract similar to those asserted by Plaintiffs.  The defendant's dredging operations had damaged a pipeline owned by Texaco.  PPG, which had a contract with Texaco to obtain gas from the pipeline, filed suit against the dredging contractor for the increased cost of obtaining fuel from another supplier.  The Louisiana Supreme Court held that the defendant dredging contractor could not be held liable because its duty not to

damage Texaco's pipeline did not encompass a risk that those in Texaco's supply chain would be injured.  "It is highly unlikely that the moral, social, and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will therefore suffer an economic loss."  *PPG Indus.*, 447 So. 2d at 1061.

> The Louisiana Supreme Court went on to note that:
>
> imposition of responsibility on the tortfeasor for such damages could create liability 'in an indeterminate time to an indeterminate class'.  *If any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant, they arguably sustained damages which in all likelihood would not have occurred but for the defendant's negligence.*

*Id*. at 1062 (emphasis added).  The court implicitly rejected the inclusion of such employees within the category of persons who could recover damages for the defendant's alleged conduct.

As the Fifth Circuit observed in *Wiltz*, the Louisiana Supreme Court's decision in *PPG* "is 'a policy decision in purest form' that does not turn on fine distinctions between 'proximate cause, legal cause, or duty.'"  645 F.3d at 699.  In *Wiltz*, the Fifth Circuit recently had occasion to examine and apply the Louisiana economic-loss rule in the context of the Louisiana Products Liability Law.  In that case, a pesticide manufacturer alleged to have damaged a crawfish crop was sued by crawfish purchasers.  The purchasers had no proprietary interest in the crops themselves, but contended that that they had suffered an economic loss as a result of the reduced crop size.

In a well-reasoned decision examining the history of the economic-loss rule in Louisiana and other jurisdictions, the Fifth Circuit ruled in favor of the manufacturer, finding that the economic-loss rule was a "pragmatic limitation on the tort doctrine of foreseeability."  *Id*. at 696.  The Fifth Circuit stated:

1077488v.1

> As the Louisiana Supreme Court has recognized, '[b]ecause the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a decision on the limitation of recovery of damages.' It is generally agreed that the line must be drawn somewhere, and the economic-loss rule has the virtue of being predictable and generally applicable.

*Id*. (internal citations omitted).

Similarly, this Court followed *PPG* and applied the economic-loss rule to dismiss claims for lost income by plaintiff employees of a printing company, whose plant was contaminated by propane and carbon monoxide during an allegedly negligent installation of a new printing press by the defendant installing contractor. *Anderson v. T&D Machine Handling, Inc.*, 94-3188, 1996 WL 684449 (E.D. La. Nov. 22, 1996) (Duval, J.). In *Anderson*, this Court reasoned as follows from *PPG*:

> As we read the Supreme Court decision in *PPG*, it is based purely on the policy consideration under a duty-risk analysis that the damages to the economic interests of a contract purchaser of natural gas did not fall within the scope of the protection intended by the laws' imposition of a duty.

*Id.* at *2.

Based on its reading of *PPG*, this Court dismissed the plaintiff employees' claims and concluded with the following statement of the applicable rule of law:

> The defendant had a duty to use and operate their forklift in a non-negligent and safe manner. The defendant had no duty to avoid economic loss to uninjured employees of the person to whom that duty was owed. Thus, [the printing company's] employees cannot recover purely economic losses resulting from defendants' alleged negligence.

*Id.* at *3.

1077488v.1

### 1. Plaintiffs' Alleged Economic Losses Do Not Arise from Damage to Their Persons or Properties.

Although Plaintiffs' residences were damaged on August 29, 2005 by various causes, it was not this damage which led to the termination of their employment with their respective employers.

In the case of Mr. and Mrs. Holmes, both spouses remained employed on August 30, 2005, in the same positions and with the same benefits they had received on August 28, irrespective of any damage that occurred to their property on August 29. They continued to be employed, with the same salary and benefits, until January 2006, when their respective employers instructed them to return to work in New Orleans and they did not do so. (Even assuming *arguendo* that Plaintiffs could recover for damages to their employer, WGII did not and could not possibly have damaged the Holmes' employers. UNO and Delgado are both located well to the west of the IHNC. Water from the breaches along the east bank of the IHNC did not cause damage to either campus.)

In the case of Mrs. Armstrong, it was not the damage to her residence, but rather the damage to a facility owned by her employer, Chalmette Medical Center, that led to the interruption of her employment. Even if she had lived in an area completely unaffected by flooding and her residence had been completely spared from damage, she would have lost her job at the Chalmette Medical Center. Hers are precisely the type of damages for which *PPG* and *Anderson* preclude recovery. "Put simply, the duty not to damage someone else's property does not encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss." *Anderson*, 1996 WL 684449 at *2.

### 2. The Risk That Mr. and Mrs. Holmes Would Not Return to Their Jobs in New Orleans Is Not Encompassed by Any Duty Owed by WGII.

As they testified in their depositions, Mr. and Mrs. Holmes' jobs were available to them had they obtained replacement or temporary housing in New Orleans in January 2006. Citing a shortage of available housing in the New Orleans area, they did not return to their jobs. The Holmes admit, however, that they did not attempt to locate substitute housing in the New Orleans area.[22] Their failure to return was a voluntary decision, and resulted in their loss of their employment, which had been held open to them until sometime in January 2006.

As an initial matter, the post-Katrina housing market was affected by breaches that WGII did not and is not even alleged to have caused. The risk that other unrelated breaches would simultaneously and independently develop along other levees and floodwalls for which WGII had absolutely no responsibility is certainly not encompassed within any duty that WGII assumed. Further, Mr. and Mrs. Holmes made no effort to locate substitute housing in the New Orleans area after Hurricane Katrina. They cannot hold WGII liable for their purported inability to obtain housing in the greater New Orleans area in January 2006.

### 3. Mrs. Armstrong's Loss of Full-Time Benefits Are a Result of a Personal Choice Rather Than WGII's Alleged Conduct.

As she testified in her deposition, Mrs. Armstrong is currently employed on a part-time basis in order to spend more time with her daughter. She has not sought full-time employment since she returned to the workforce in 2007 following her illness. She has made the independent determination to forego the benefits of full-time employment in order to obtain the benefit of more time with her family. Plaintiffs cannot hold WGII liable for Mrs. Armstrong's personal decisions.

---

[22] Fred Holmes Dep. at 49:21-52:15 (Ex. B herein); Jeneen Holmes Dep. at 102:14-24 (Ex. C herein).

Regardless of the choice Mrs. Armstrong made regarding replacement employment, her employment at the Chalmette Medical Center was interrupted by damage to that facility.  The economic loss rule prevents recovery by Mrs. Armstrong against WGII for any claimed loss of income, even assuming WGII's alleged negligence damaged the Chalmette Medical Center.

### III.  CONCLUSION

Because Plaintiffs cannot recover for economic losses, the Court should exclude any evidence pertaining to this issue as irrelevant.  It is not probative of any fact or issue that the Court must determine at trial, and granting the relief sought herein will conserve party and judicial resources.  The exclusion of this evidence at this time will obviate the necessity of deposition discovery of Plaintiffs' and Defendants' witnesses on these issues, and avoid the necessity of filing and briefing *Daubert* hearing motions as well.  For the foregoing reasons, the Court should grant WGII's motion.

Dated:  December 13, 2011                     Respectfully submitted,

                                                  */s/ William D. Treeby*
William D. Treeby, 12901
James C. Gulotta, Jr., 6594
Heather S. Lonian, 29956
    Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:   (504) 581-3361

and

Adrian Wager-Zito
James E. Gauch
Debra S. Clayman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Attorneys for Washington Group International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion to Exclude Evidence Regarding Economic Loss Claims has been served upon all counsel of record through the Court's CM/ECF electronic filing system, this 13th day of December, 2011.

                                                  */s/ William D. Treeby*

1077488v.1