# G. RANDOLPH RICE, PH. D.

ECONOMICS
7048 MONITEAU COURT
BATON ROUGE, LOUISIANA 70809

PROFESSOR EMERITUS
ECONOMICS
LOUISIANA STATE UNIVERSITY
BATON ROUGE, LOUISIANA

(225) 927-4546
(225) 921-7071
Fax (225) 927-2568
grrice12@yahoo.com

November 22, 2011

Mr. Elwood C. Stevens, Jr.
Attorney at Law
P.O. Box 3668
Lafayette, LA 70502

Re: Ms. Jeanine Armstrong

Dear Mr. Stevens:

The following is a summary of some economic calculations that I have prepared pursuant to the trial in which you represent Ms. Jeanine Armstrong, scheduled for July 20, 2012.

Ms. Armstrong was born November 8, 1962; Hurricane Katrina hit Louisiana in the latter days of August 2005. According to a recent study (1986) provided by the Bureau of Labor Statistics, U.S. Department of Labor, Ms. Armstrong's future work-life expectancy from the trial date is given as 10.45 years. I should note, however, that these latest work-life statistics do not distinguish among women in varying labor market and personal circumstances. For example, no distinction is made between those who might find a continuous career desirable or necessary versus those who participate in a work force activity outside the home on a rather irregular or non-essential basis. Also, it is noteworthy that since the sample was taken for the basis of this study (during the years 1979-80) the labor force participation rate for women has dramatically increased, implying that a more contemporaneous reading of this issue would certainly lengthen the statistical work-life. For these reasons, I have alternatively considered the possibility of Ms. Armstrong working uninterrupted until age sixty-seven (i.e., when "full" Social Security benefits are available), or for an additional 17.32 years from the trial date. Results for both time frames are presented.

EXHIBIT
F

Mr. Elwood C. Stevens, Jr.
November 22, 2011
Page 2

The 2004 tax return as provided shows that Ms. Armstrong's earnings equaled $54,728.00. This pre-hurricane pay can readily be adjusted to account for cost-of-living changes since. The Consumer Price Index (CPI) is an often used metric for making these year-to-year adaptations. The calculations accordingly present "constant dollar" equivalents; for example, via this methodology, the "current" (2011) annual counterpart is $65,453.99. These data are used as the bases for making the calculations below.

The potential economic losses in this case are comprised of both past and future amounts. The prospective past earnings foregone can be represented by those wages which Ms. Armstrong might have received for 2005 and yearly until the trial date in 2012 … but did not. Assuming the income levels as explained in the preceding paragraph in this regard (but "crediting" against such the 2005/2006 "unemployment compensation" and those monies actually earned by Ms. Armstrong by virtue of securing employment with Houma Outpatient Surgery Center in August 2007), an estimate of the past wage "losses" is $270,560.00.

In viewing future earning capacity (as if Ms. Armstrong were still employed at her pre-hurricane rate of pay), it is not to be expected that she would receive constant amounts over time. Thus, in this spirit and attributable primarily to anticipated inflationary pressures, I have applied an average annual rate of growth in nominal earnings of 3.0 percent, beginning with the "current" base income noted above, for each year of Ms. Armstrong's future work-life.

After these increases, we can reduce the year-to-year "projections" to a lump-sum equivalent (at trial) by applying a discount rate. Three factors determine the choice of a fair rate of discount: (1) safety for the "invested" monies; (2) "liquidity" sufficient to permit replacing the dollars on a schedule coincident with the point-in-time when they would have been earned; and (3) availability in today's financial markets. Accordingly, a discount rate of 3.5 percent is used.

With these data, the alternative discounted/present values of Ms. Armstrong's future earning capacity (assuming continued employment with Chalmette Medical Center) are:

Mr. Elwood C. Stevens, Jr.
November 22, 2011
Page 3

>    --For 10.45 subsequent years of work-
>       life expectancy, DOL statistics..................................................$665,362.00
>
>    --For 17.32 future years of work-life,
>       or chronologically to age sixty-seven .......................................$1,084,791.00

As noted, Ms. Armstrong secured employment with Houma Outpatient Surgery Center in August 2007 and maintains this employment today; given that this latter pay is less than the pre-hurricane version, the issue in this context becomes the diminution of earnings during the remainder of her work-life expectancy (discounted to the trial date). It was advised that the 2011 Houma Outpatient Surgery Center's current pay is $35,880.00/annum (i.e., $28.75 per hour x 24 hours per week)...albeit no pay records have confirmed such; considering continued work at this level, the present values (applying the same wage growth factor and discount factor as used with the higher income option) are: (1) $364,732.00 (+10.45 years) and $594,652.00 (+17.32 years). Thus, the net future discounted wage "losses" per the circumstances here are: (1) $300,630.00 (i.e., $665,362.00 less $364,732.00 for the shorter/work-life expectancy period); and (2) $490,139.00 (i.e., $1,084,791.00 less $594,652.00 for the work-consecutively-to-age-sixty-seven version). Adding our past estimate of $270,560.00 and these future "differentials" give overall values, in turn, of $571,190.00 and $760,699.00.

In addition to these wage concerns, you outlined some further economic issues in this case that we can address as follows:

>    –the employer contribution to Ms. Armstrong's "retirement account" was given as 4.0% vis-à-vis gross wages. Using the Chalmette Medical Center wage expectations from above, the past and discounted future values of this "benefit" are: $45,185.00 (with the +10.45 years of future work-life); and (2) $61,962.00 (assuming a future work-life to age sixty-seven); and
>
>    –you indicated that Ms. Armstrong enjoyed "other benefits" (e.g., medical insurance, etc.) with Chalmette Medical Center; if you can identify the out-

Mr. Elwood C. Stevens, Jr.
November 22, 2011
Page 4

of-pocket replacement cost for such, we can readily address for presentation at trial.

I appreciate your contacting me in this matter. If you have any questions, please give me a call.

Sincerely,

*Randy Rice*

G. Randolph Rice

GRR:mjn