UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * CIVIL ACTION * * NO. 05-4182 * |
| PERTAINS TO: MRGO | * SECTION "K" (2) * * JUDGE DUVAL * * MAGISTRATE JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF MOTION TO
EXCLUDE EVIDENCE REGARDING ECONOMIC LOSS CLAIMS**

Washington Group International, Inc. ("WGII") respectfully submits this reply brief in support of its motion to exclude evidence regarding economic loss claims. Plaintiffs' opposition memorandum does not present any substantive legal or factual disputes that would preclude the resolution of the issues raised in WGII's motion now, and Plaintiffs offer no compelling justification for delaying this resolution. The evidence Plaintiffs seek to introduce is wholly irrelevant to these proceedings, and granting WGII's motion at this stage in the litigation will conserve party and judicial resources.

**I.    LAW & ARGUMENT**

   **A.   Granting WGII's Motion Will Prevent Needless Depositions and Allow the
         Parties and the Court to Devote Time and Resources to Substantive Issues.**

As the Court is well aware, this litigation was initiated more than six years ago. The trial on the merits is currently scheduled to begin in September, and the trial will involve extensive expert testimony regarding not only the timing, cause, and mode of failure for both the North and the South Breaches of the IHNC floodwall, but also the timing and depth of

floodwaters from multiple sources.  In addition, there will probably be numerous fact witnesses testifying as to the history and nature of work performed by the defendants in the EBIA over several years.  Given the anticipated complexity of the trial, WGII respectfully submits that it would benefit the Court and all parties to resolve preliminary issues prior to trial rather than deferring them, especially where, as here, the factual record has already been established and the legal issues are relatively straightforward.

Plaintiffs do not and cannot argue that it would be an abuse of the Court's discretion to rule on the admissibility of Plaintiffs' economic loss evidence prior to trial.  A district court's evidentiary rulings are reversed only upon a finding that the court has abused its discretion.  *See, e.g., Kirksey v. City of Jackson*, 663 F.2d 659 (5th Cir. 1981)(judge conducting bench trial did not abuse discretion by excluding testimony of three witnesses).  In their opposition, Plaintiffs concede that "such motions are generally found to be within the court's authority to manage the order and the efficiency of the trial".[1]  Granting WGII's motion at this stage in the proceedings would further the interests of judicial efficiency, and as any pre-trial ruling by the Court on WGII's motion would be issued more than six years after this litigation was filed, it can hardly be labeled as premature.

Furthermore, granting WGII's motion prior to trial would prevent needless depositions of the parties' economic loss experts.  Under the Court's Scheduling Order, as amended, all discovery must be completed no later than April 13, 2012.  The parties are presently engaged in expert discovery regarding geotechnical, standard of care, and hydrological issues, in addition to the expert discovery regarding the physical damage to Plaintiffs' residences.

---

[1]  Pls. Opp. at 3.

Granting WGII's motion would conserve party resources and allow them to devote their time and efforts to relevant matters.

### B. The Property Damage at Issue Did Not Cause Plaintiffs' Alleged Economic Losses.

In their opposition memorandum, Plaintiffs fail to establish that the damage to Plaintiffs' property caused the economic losses for which they seek recovery. Nor do they challenge the salient facts set forth in WGII's motion. Many New Orleans residents suffered damaged to their homes during Hurricane Katrina, but did not lose their jobs as a result. For illustration of this fact, the Court need look no further than the case of Kenneth Armstrong. Mr. Armstrong resided in the same house as Mrs. Armstrong and suffered the same damage to his movable and immovable property on August 29, 2005 that his wife experienced. Yet his employer, Southern Eagle, did not terminate his employment after Katrina. On the contrary, he remains employed by Southern Eagle to the present date.[2]

Similarly, Mr. and Mrs. Holmes had the same jobs (with the same benefits) on August 30, 2005 that they had on August 28, 2005. They did not lose their jobs as a result of the damage to their property on August 29, 2005. In fact, they continued to be employed for several months thereafter. Plaintiffs do not and cannot contest the fact that Mr. and Mrs. Holmes did not suffer any alleged economic loss until the point in time at which they did not return to New Orleans as a condition of their continued employment.

Plaintiffs incorrectly argue that this fact is relevant to the mitigation,rather than the cause of their alleged economic losses. But WGII is not arguing that Mr. and Mrs. Holmes should have mitigated their economic losses by returning to New Orleans in January 2006.

---

[2] Excerpts of Dep. of Kenneth Armstrong, dated July 9, 2007, attached hereto as Ex. 1, at 9:1-3; 9:23-10:10. *See also* Excerpts of Dep. of Kenneth Armstrong, dated September 12, 2011, attached hereto as Ex. 2, at 18:25-20:13.

Rather, the record shows that they did not suffer any alleged economic loss until January 2006, and that this loss was not caused by the damage that occurred to their property on August 29, 2005. Had they obtained alternate housing in the New Orleans area in January 2006, they would be in exactly the same position as Kenneth Armstrong, regardless of any damage that occurred to their property on August 29, 2005. And Plaintiffs concede that Kenneth Armstrong does not have a claim for economic losses.[3]

In their opposition memorandum, Plaintiffs appear to suggest that Mrs. Armstrong's unemployment was the result of her displacement, rather than the physical damage suffered by her employer, Chalmette Medical Center. The record is clear that Mrs. Armstrong lost her job at Chalmette Medical Center when the hospital suffered extensive damage that resulted in its closure.[4] Had she lived in an area that was completely unaffected by the flooding from the IHNC breaches, she still would have lost her job at Chalmette Medical Center in the aftermath of Katrina.

While Plaintiffs attempt to characterize Mrs. Armstrong's acceptance of a part-time nursing position following her return to the workforce in 2007 as resulting from an inability to find a full-time job,[5] Mrs. Armstrong clearly testified that she has not sought a full-time job because she does not want one.[6] She has made a personal choice to forego the financial benefits of full-time employment in order to spend more time with her daughter. WGII cannot be held legally responsible for any losses resulting from Mrs. Armstrong's personal choices.

---

[3]   Pls. Opp. at 10.

[4]   *See* Ex. D to WGII's Mot. at 81-82.

[5]   Pls. Opp. at 10.

[6]   Ex. A to WGII's Mot. at 51:12-25.

1078834v.1

### C. There Is No Ease of Association Between the Damages Plaintiffs Seek and WGII's Alleged Conduct.

In their opposition memorandum, Plaintiffs exert a good deal of effort in order to establish the fairly unremarkable proposition that there is no "blanket rejection of pure economic damages in all tort claims under Louisiana law." [7]  Rather than applying the relevant jurisprudence to the facts at hand, Plaintiffs engage in a lengthy discourse on general legal principles that are not really in dispute.  Regardless of whether there exists a categorical rule regarding pure economic damages in all Louisiana tort cases, it is clear under the facts of this case that the damages Plaintiffs seek are precluded.[8]

Plaintiffs' efforts to discredit *Wiltz v. Bayercropscience, Ltd. P'ship.*, 645 F.3d 690 (5th Cir. 2011) are entirely meritless.  Because they cannot distinguish *Wiltz* from the instant case, they urge the Court to conclude that the Fifth Circuit's well-reasoned analysis of *PPG Indus., Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984) and its progeny is simply wrong as a matter of law.  They urge the Court to ignore *Wiltz* on the hope that the Louisiana Third Circuit might issue a ruling in the *Phillips v. G&H Seed Co.* litigation in the next few weeks, and that the Louisiana Supreme Court might then issue writs and decide the issue in the near future.  (As Plaintiffs acknowledge[9], the Louisiana Third Circuit has issued conflicting opinions on this very question within the *Phillips* case, thereby calling into question Plaintiffs' certainty that *Wiltz* was wrongly decided.)

---

[7]  Pls. Opp. at 12.

[8]  The "multitude" of tort cases cited by Plaintiffs on p. 16-17 are wholly irrelevant to the facts of this case.  Plaintiffs did not rely upon any representations made to their employers or upon any negligent services performed by the defendants on their employers' behalf.

[9]  Pls. Opp. at Fn. 18.

As an initial matter, the *Wiltz* court was aware of the *Phillips* litigation and not only addressed the case at length, but denied the plaintiffs' motion to stay *Wiltz* pending resolution of *Phillips*. *Wiltz*, 645 F.3d at 694 n.6. In any event, neither this court nor the Fifth Circuit is bound by a ruling of an Louisiana intermediate appellate court in making an *Erie* guess. *See Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 565 (5th Cir. 2004)(federal courts not bound by state intermediate decisions if they are convinced by other persuasive data that the state supreme court would decide otherwise). Furthermore, there is no guarantee that the Louisiana Third Circuit will rule quickly, or that the Louisiana Supreme Court will ultimately hear the case. Absent a contrary ruling from the Louisiana Supreme Court or the United States Fifth Circuit, *Wiltz* is the law of the Circuit.

Plaintiffs' efforts to distinguish the Court's ruling in *Anderson v. T&D Machine Handling, Inc.*, 1996 WL 684449 (E.D. La. 1996) are similarly unavailing. Plaintiffs contend that *Anderson* is not applicable because that case involved an "a third party who has **contracted with the owner of the injured property**".[10] Plaintiffs are third parties who had employment contracts with their employers (*i.e.,* the owners of the injured property). To the extent Plaintiffs suffered damage to their own property and incurred additional living expenses as a result, those recoveries are already the subject of Plaintiffs' compensation claims. To allow them to proceed with claims for alleged economic losses resulting from damage to the property of others would result in the precisely the sort of double recovery and endless chain of liability that the "economic loss rule" was designed to prevent.

---

[10]   Pls. Opp. at 19 (emphasis in original).

- 6 -

1078834v.1

- 7 -

D. **The Risk That a Homeowner Would Relocate Hundreds of Miles Away from His Employer Is Not Encompassed by Any Duty Owed by WGII.**

WGII did not and is not alleged to have caused all the flooding the impacted the greater New Orleans area. Plaintiffs do not and cannot identify any duty assumed by WGII that encompassed the risk that breaches far removed from WGII's work site would simultaneously and independently inundate large portions of the city with floodwaters, thereby leading to a tighter housing market, thereby causing Mr. and Mrs. Holmes to establish a permanent residence hundreds of miles away from their employer, thereby causing them to lose their jobs.

This is exactly the sort of indefinite, indeterminate liability *PPG* and its progeny intended to foreclose. As *Wiltz* recognizes, there must be some sort of "pragmatic limitation on the tort doctrine of foreseeability". 645 F.3d at 696. It does not logically or necessarily follow that a person whose house is damaged must permanently relocate to another city and lose his job as a result. Many New Orleans residents suffered damage to their homes and located alternate housing in New Orleans or in surrounding communities. The Armstrongs, for example, ultimately relocated to Covington, thereby allowing Mr. Armstrong to commute to his job. But regardless of what efforts a plaintiff made to return or why they ultimately did not return, the failure to return (and any resulting economic harm) was not a foreseeable result of WGII's alleged conduct, and this evidence must therefore be excluded as irrelevant.

1078834v.1

## II. CONCLUSION

For the foregoing reasons and those set forth in WGII's original memorandum, the Court should grant WGII's motion and exclude and evidence or testimony pertaining to Plaintiffs' alleged economic losses.

Dated: February 22, 2012

Respectfully submitted,

*/s/ William D. Treeby*
William D. Treeby, 12901
James C. Gulotta, Jr., 6594
Heather S. Lonian, 29956
   Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

and

Adrian Wager-Zito
Debra S. Clayman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Attorneys for Washington Group International, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Reply Brief in Support of Motion to Exclude Evidence Regarding Economic Loss Claims has been served upon all counsel of record through the Court's CM/ECF electronic filing system, this 22nd day of February, 2012.

*/s/ William D. Treeby*