## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: | § § § | |
| MRGO *Armstrong*, No. 10-866 | § § § § | |

## PLAINTIFFS' RESPONSES TO DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSIONS

Pursuant to the Federal Rules of Civil Procedure 33, 34 and 36, Plaintiffs hereby object and respond to Defendant Washington Group International, Inc.'s ("WGII") First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions as follows:

### RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

State the age, current and/or former occupation, and current employer of each Plaintiff, if any, and include in your response the name and address of each Plaintiff's current employer.

### ANWER TO INTERROGATORY NO. 1:

Plaintiff Fred Holmes, Jr. was born on October 7, 1970. He is currently employed by Rice University located at 6100 Main Street, Houston, Texas, 77005. At the time of Hurricane



Katrina he was employed by the University of New Orleans located at 2000 Lakeshore Drive, New Orleans, Louisiana, 70148.

Plaintiff Ethel Coats was born on October 12, 1951.  Ms. Coats is deceased.  She was unemployed at the time of Hurricane Katrina.

Plaintiff Alvin Livers was born on September 20, 1941.  Mr. Livers retired prior to Hurricane Katrina.

Plaintiff Jeannine Armstrong was born on November 8, 1962. She is a registered nurse and works at East Jefferson Outpatient Facility located at 4200 Houma Boulevard, Metairie, Louisiana, 70006.  At the time of Hurricane Katrina she was working at Chalmette Medical Center which is currently located at 9001 Patricia Street, Chalmette, Louisiana, 70043.

Plaintiff Kenneth Armstrong was born on February 21, 1963.  Mr. Armstrong is employed Southern Eagle Sales & Service, L.P. located at 5300 Blair Drive, Metairie, Louisiana, 70003.  He also worked for Southern Eagle at the time of Hurricane Katrina.

Plaintiff Clifford Washington was born on September 10, 1952.  He is currently retired. At the time of Hurricane Katrina he worked for Weiser Security New Orleans, 3308 Tulane Ave, 5th Floor, New Orleans, Louisiana, 70119.

**INTERROGATORY NO. 2:**

Identify and describe, for each Plaintiff, all real/immovable property owned or leased by you that you claim sustained damage as a result of Hurricane Katrina.  Include in your response whether the Plaintiff owned or leased the property and/or continues to own or lease the property, whether the property was used for residential and/or business purposes and/or continues to be used for residential and/or business purposes, and the alleged damage to the property as a result of Hurricane Katrina.

**ANWER TO INTERROGATORY NO. 2:**

Plaintiff Fred Holmes, Jr. and his wife, Jeneen Boudoin-Holmes, owned residential property that sustained damage due to flooding on or about August 29, 2005, located at 1205 Perrin Drive, Arabi, Louisiana, 70032.  Plaintiffs refer WGII to the Loss Report for the Holmes property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Mr. and Mrs. Holmes no longer own this property. Mr. and Mrs. Homes currently reside at 30231 Glenboro Drive, Spring, Texas, 77386.

Plaintiff Clifford Washington and his wife, Patricia Washington, owned two residential properties that sustained damage due to flooding on or about August 29, 2005, located at 1910-1190 ½ Charbonnet Street, New Orleans, Louisiana 70117 and at 5027 N. Derbigny, New Orleans, Louisiana 70117.  Plaintiffs refer WGII to the Loss Report for the Washington properties drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Mr. and Mrs. Washington renovated and currently reside at the 1910 Charbonnet Street property.  Mr. and Mrs. Washington no longer owns the property at 5027 N. Derbigny.

Plaintiffs Jeannine and Kenneth Armstrong owned residential property that sustained damage due to flooding on or about August 29, 2005, located at 4016 Hamlet Place, Chalmette, Louisiana, 70043.  Plaintiffs refer WGII to the Loss Report for the Armstrong property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Plaintiffs also refer WGII to the deposition transcripts of the depositions of Mr. and Mrs. Armstrong in this matter held on July 9, 2007.  Mr. and Mrs. Armstrong no longer own this property. Mr. and Mrs. Armstrong currently reside at 2400 Aramis Drive, Meraux, Louisiana 70075.

Plaintiff Ethel Coats owned residential property that sustained damage due to flooding on or about August 29, 2005, located at 1020-1022 Charbonnet Street, New Orleans, Louisiana,

70117. Plaintiffs refer WGII to the Loss Report for the Coats property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011. Plaintiffs also refer WGII to the deposition transcript of the deposition of Ethel Coats in this matter held on July 17, 2007. Ms. Coasts is deceased. The property located at 1020-1022 Charbonnet Street, New Orleans, Louisiana, 70117 is now owed by her daughter, Lintoi Franklin, with a usufruct to her former fiancé, Nathan Morgan.

Plaintiff Alvin Livers and his wife, Barbara Livers, owned residential property that sustained damage due to flooding on or about August 29, 2005, located at 4924 St. Claude Avenue, New Orleans, Louisiana 70117. Plaintiffs refer WGII to the Loss Report for the Livers property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011. Mr. and Mrs. Livers no longer own this property. Mr. and Mrs. Livers currently reside at 13492 Paces Point, Gonzales, Louisiana, 70737.

**INTERROGATORY NO. 3:**

Identify and describe, for each Plaintiff, all personal/movable property in your possession that you claim sustained damage as a result of Hurricane Katrina.  Include in your response the alleged damage to the property as a result of Hurricane Katrina.

**ANWER TO INTERROGATORY NO. 3:**

Plaintiff Fred Holmes, Jr. and his wife, Jeneen Boudoin-Holmes, owned personal property that sustained damage due to flooding on or about August 29, 2005, located at 1205 Perrin Drive, Arabi, Louisiana, 70032.  Plaintiffs refer WGII to the Loss Report for the Holmes property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.

Plaintiff Clifford Washington and his wife, Patricia Washington, owned personal property that sustained damage due to flooding on or about August 29, 2005, located at 1910-1190 ½ Charbonnet Street, New Orleans, Louisiana 70117.  Mr. and Mrs. Washington also owned personal property that sustained damage due to flooding on or about August 29, 2005, located at 5027 N. Derbigny, New Orleans, Louisiana 70117. Plaintiffs refer WGII to the Loss Report for the Washington properties drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.

Plaintiffs Jeannine and Kenneth Armstrong owned personal property that sustained damage due to flooding on or about August 29, 2005, located at 4016 Hamlet Place, Chalmette, Louisiana, 70043.  Plaintiffs refer WGII to the Loss Report for the Armstrong property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Plaintiffs also refer WGII to the deposition transcripts of the depositions of Mr. and Mrs. Armstrong in this matter held on July 9, 2007.

Plaintiff Ethel Coats owned personal property that sustained damage due to flooding on or about August 29, 2005, located at 1020-1022 Charbonnet Street, New Orleans, Louisiana, 70117. Plaintiffs refer WGII to the Loss Report for the Coats property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Plaintiffs also refer WGII to the deposition transcript of the deposition of Ethel Coats in this matter held on July 17, 2007.

Plaintiff Alvin Livers and his wife, Barbara Livers, owned personal property that sustained damage due to flooding on or about August 29, 2005, located at 4924 St. Claude Avenue, New Orleans, Louisiana 70117.  Plaintiffs refer WGII to the Loss Report for the Livers

property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.

**INTERROGATORY NO. 4:**

Identify and describe every time each Plaintiff evacuated, relocated, and if applicable, returned to New Orleans as a result of Hurricane Katrina. Include in your response the date when the Plaintiff evacuated, the address where the Plaintiff relocated, the date when the Plaintiff returned to New Orleans, and the address in New Orleans where the Plaintiff returned.

**ANWER TO INTERROGATORY NO. 4:**

Plaintiff Fred Holmes, Jr. evacuated on August 28, 2005 to Houston, Texas with his wife and pets. Mr. and Mrs. Holmes rented a room at the Motel 6 and lived there for approximately four months. In January 2006, Mr. and Mrs. Holmes moved into their home located at 30231 Glenboro Drive, Spring, Texas, 77386 which they later purchased and currently reside.

Plaintiff Clifford Washington did not evacuate prior to landfall of Hurricane Katrina. Mr. Washington's wife and fifteen children evacuated from their home to other locations around New Orleans. Mr. Washington remained alone at the property located at 5027 N. Derbigny during Hurricane Katrina. When the area flooded, Mr. Washington was forced to climb on to his roof and remain there until a neighbor with a boat came and rescued him. The neighbor dropped Mr. Washington off on the interstate at Elysian Fields were he found several of his family members. They were then sent to the Convention Center. Other members of his family were at the New Orleans Superdome. A police officer assisted Mr. Washington and his family to secure a nine passenger van from a rental car company in the city. Mr. Washington and his family drove to Houston, Texas, and rented a hotel room for several months. Mr. Washington does not remember the name of the hotel at this time. For a short period of time, Mr. Washington, his

wife and three of his younger children moved into a community for senior citizens, Aldine Bender. The rest of his family remained at the hotel. Eventually the entire family moved into a house located at 14126 Mysville Drive, in Houston, Texas. They lived in that house for approximately two years before returning to New Orleans. After returning to New Orleans, Mr. Washington first rented an apartment on Villery Street and then an apartment on Prier Street as he and his family waited for the renovations on the 1910 Charbonnet property to be completed. Mr. Washington and his family are now living in the house at 1910 Charbonnet Street.

Plaintiff Alvin Livers evacuated on August 28, 2005 to a relative's home in Baton Rouge, Louisiana. Mr. and Mrs. Livers lived with their daughter in Gretna, Louisiana for a few months before renting an apartment at Forest Isle Apartments on Woodland Drive in Algiers, Louisiana. Mr. and Mrs. Livers then moved to 13492 Paces Point, Gonzales, Louisiana, 70737 where they currently reside.

Plaintiffs Jeannine and Kenneth Armstrong evacuated the morning of August 28, 2005 to their daughter's house in Baton Rouge. On or about August 30, 2005, Mr. and Mrs. Armstrong moved into The Cook Hotel on the campus of Louisiana State University and stayed there until September of 2005. From September 2005 until the beginning of December 2005, Mr. and Mrs. Armstrong lived in Prairieville with Mrs. Armstrong's sister. On October 13, 2005 Mr. and Mrs. Armstrong returned to New Orleans for a day to view the property at 4016 Hamlet Place in Chalmette. From December 2005 to June of 2006, they rented an apartment in Prairieville. From June 2006 until March of 2008, Mr. and Mrs. Armstrong lived in Mandeville. In June of 2010, Mr. and Mrs. Armstrong moved into the home at 2400 Aramis Drive, Meraux, Louisiana 70075 where they currently reside. Plaintiffs refer WGII to the deposition transcripts of the depositions of Mr. and Mrs. Armstrong in this matter held on July 9, 2007.

Plaintiff Ethel Coats evacuated to Hammond, Louisiana, to her sister's house. She made several attempts to return to her house in New Orleans but was unable to get there. Around February of 2006, Ms. Coats moved to 756 Louisiana Avenue in New Orleans, Louisiana. Plaintiffs refer WGII to the deposition transcript of the deposition of Ethel Coats in this matter held on July 17, 2007. Ms. Coats was still residing at the 756 Louisiana Avenue location at the time of her deposition. She is now deceased.

**INTERROGATORY NO. 5:**

Identify and describe each separate type of injury alleged by every Plaintiff in this lawsuit. Include in your response the nature and extent of each injury, when and where each injury occurred, the amount of monetary damages being sought for each injury, and all facts that form the basis for your contention that WGII proximately caused each injury.

**ANWER TO INTERROGATORY NO. 5:**

Plaintiffs object to this interrogatory as overbroad and as premature because liability discovery in this case is ongoing. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Plaintiffs also object to the extent that it seeks information that is protected by the attorney-client privilege or is information prepared in anticipation of litigation that is privileged. Further, Plaintiffs object on work product grounds to the extent this request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy.

Subject to the above objections, as stated in Section 68 of Plaintiffs' Complaint, plaintiffs seek damages for loss of property (real and personal), immovable and movable; diminution of property value; loss of income; costs of relocation; loss of business opportunities and business

interruption; evacuation expenses; personal injury; wrongful death; survival damages; fear; fright; emotional distress; grief; mental anguish; inconvenience; pain and suffering; loss of capacity to enjoy life; and loss of consortium.  For the loss of property (real and personal), immovable and movable for Plaintiff Fred Holmes, Jr., Plaintiffs refer WGII to the Loss Report for the Holmes property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  For the loss of property (real and personal), immovable and movable for Plaintiff Clifford Washington, Plaintiffs refer WGII to the Loss Report for the Washington properties drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  For the loss of property (real and personal), immovable and movable for Plaintiffs Jeannine and Kenneth Armstrong, Plaintiffs refer WGII to the Loss Report for the Armstrong property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Plaintiffs also refer WGII to the deposition transcripts of the deposition of Mr. and Mrs. Armstrong in this matter held on July 9, 2007.  For the loss of property (real and personal), immovable and movable for Plaintiff Ethel Coats, Plaintiffs refer WGII to the Loss Report for the Coats property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011. Plaintiffs also refer WGII to the deposition transcript of the deposition of Ethel Coats in this matter held on July 17, 2007.  For the loss of property (real and personal), immovable and movable for Plaintiff Alvin Livers, Plaintiffs refer WGII to the Loss Report for the Livers property drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.

**<u>INTERROGATORY NO. 6</u>:**

Identify and describe every time any Plaintiff has seen a physician, psychologist, psychiatrist, or other medical professional as a result of any injuries or damages alleged in this

lawsuit or otherwise relating to Hurricane Katrina.  Include in your response the name and address of each such medical professional, the date of the visit, the reason for the visit, the diagnosis by the medical professional as a result of the visit, and the medications, if any, that were prescribed as a result of the visit.

**ANWER TO INTERROGATORY NO. 6:**

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing.  Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Plaintiffs also object to the extent that this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  Plaintiffs also object to this interrogatory as overly broad, unduly burdensome and request information that is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to these objections, the only plaintiff that has visited with a mental health professional is Clifford Washington.  While in Houston, Texas, seeking assistance, it was requested that Mr. Washington visit with a mental health professional.  At this time, Mr. Washington cannot remember the organization that requested he visit with the mental health professional and does not remember the name of that mental health professional.  He only visited with the mental health professional once.

**INTERROGATORY NO. 7:**

Identify and describe in detail the circumstances if any of the Plaintiffs in this lawsuit suffer from any mental or physical illness, disability, or impairment that was diagnosed and/or existed prior to August 29, 2005, whether or not claimed as damages in this lawsuit.

**ANWER TO INTERROGATORY NO. 7:**

Plaintiffs object to this interrogatory because it seeks information regarding matters prior to the timeframe at issue in this litigation and such information is not relevant to the subject matter or issues raised in this action. This interrogatory is overly broad, unduly burdensome and request information that is not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 8:**

Identify and describe any mathematical or formulaic calculations or other models that you contend may be used to determine the cause(s) of alleged injuries to each Plaintiff in this lawsuit, and explain how such calculations or models would be legally sufficient in any trial of this lawsuit.

**ANWER TO INTERROGATORY NO. 8:**

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions. Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case. This information will be available by way of expert discovery.

**INTERROGATORY NO. 9:**

Identify and describe any mathematical or formulaic calculations or other models that you contend may be used to determine the type or amount of damages sustained by each Plaintiff in this lawsuit, and explain how such calculations or models would be legally sufficient in any trial of this lawsuit.

**ANWER TO INTERROGATORY NO. 9:**

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

**INTERROGATORY NO. 10:**

Identify and describe in detail the circumstances if any of the Plaintiffs have ever been convicted of a crime, filed for bankruptcy, and/or been subject to a claim of breach of fiduciary duty.

**ANWER TO INTERROGATORY NO. 10:**

Plaintiffs object to this interrogatory as overly broad, unduly burdensome and request information that is not reasonably calculated to lead to the discovery of admissible evidence.  Whether any plaintiff has "ever been convicted of a crime, filed for bankruptcy, and/or been subject to a claim of breach of fiduciary duty" is irrelevant and immaterial to the subject matter or issues raised in this action.  Subject to that objection, none of the Plaintiffs been convicted of a crime, filed for bankruptcy, and/or been subject to a claim of breach of fiduciary duty.

**INTERROGATORY NO. 11:**

Identify and describe every source of water and/or flooding that entered the "Greater New Orleans" area, as that term is used by you in your Complaint, and caused injury or damage to the Plaintiffs, including a description of the geographical area(s) affected by each source of water and/or flooding.

**ANWER TO INTERROGATORY NO. 11:**

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions. Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case. This information will be available by way of expert discovery.

**INTERROGATORY NO. 12:**

For each source of water and/or flooding identified in your response to Interrogatory No. 11, identify all persons and/or entities, including persons and/or entities that are not currently parties to this lawsuit, that you contend caused the water and/or flooding to enter the "Greater New Orleans" area, as that term is used by you in your Complaint.

**ANWER TO INTERROGATORY NO. 12:**

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions. Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case. This information will be available by way of expert discovery.

**INTERROGATORY NO. 13:**

Specify in detailed narrative form the factual basis for allegations made by you against WGII for alleged violations of any legal duties, statutes or regulations, and/or any architectural, engineering, construction, or other type of protocol, guideline, practice, convention, or other applicable code or provision included in the standard of care, and identify any and all documents,

evidence, or other similar materials in your possession or under your control to support such factual basis.

**ANWER TO INTERROGATORY NO. 13:**

Plaintiffs object to this interrogatory as overbroad.  Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

Subject to these objections, Plaintiffs identify the following engineering manuals and engineering regulations that the Army Corps and/or WGI violated in the course of performing or overseeing work that gave rise to this lawsuit: ER 1110-2-1150, EM 1110-2-1913, EM 1110-2-2502, EM 1110-2-2504, EM 1110-2-5027.   See Doc. No. 20105, Armstrong Plaintiffs' Supplemental Submission In Opposition To Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment.  Furthermore, the Corps and/or WGI violated the following in the course of performing any work: the River and Harbor Act of 1945, P.L. 79-14, 50 Stat. 10 (March 2, 1945); 33 CFR §§ 335-38, particularly 33 CFR § 336.1(c)(4) and 33 CFR § 320.4(b) and Executive Order 11990.

**INTERROGATORY NO. 14:**

Specify in detailed narrative form the factual basis for allegations made by you that WGII undermined, damaged, caused, contributed to, or otherwise played a part in the breach, overtopping, or other failure of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal," as set forth in Paragraphs 31 through 42 of your Complaint, and identify

any and all documents, evidence, or other similar materials in your possession to support such factual basis.

## ANWER TO INTERROGATORY NO. 14:

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

Subject to these objections, Plaintiffs state that the excavation work that undermined the integrity of the flood protection structures along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish included at least the following: the demolition and removal of abandoned industrial structures on the east side of the canal; removal of underground structures described as "extensive excavation and subsurface activity;" abatement of vegetation, including numerous oak trees; removal of canal side obstructions; removal of the Jordan Street wharf, which included the removal of a concrete deck and support pilings to a depth of 36 feet below mean water level; removal of all electrical, sewer, gas, water, and telephone facilities on the site; removal of the concrete structure at Boland Marine referred to as the "wedding cake" structure; removal of the sewer lift station at Saucer Marine; bank removal that included the vibratory extraction of bulkheads along the canal water's edge; removal of more than fifty structures and more than forty concrete slabs; grid trenching of the entire East Bank Industrial Area; removal of approximately ten sunken or partially sunken barges; removal of barges that served as building foundations; removal of an estimated 3,000 pilings at the site, both on land and in the canal, by use of a vibratory extractor (to a depth of 30

feet for land-based pilings and 40-50 feet for canal/water based pilings); and grading and hydro-mulching the site.  In addition, the failure to perform any geotechnical analyses on the potential impact the excavations and other work described above could have on the adjacent flood control structures, along with the selection of backfill material for the excavated areas—as well as the compaction method employed for this backfill material—undermined the integrity of the flood protection structures along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish.

**INTERROGATORY NO. 15:**

Identify any and all persons or entities, including eyewitnesses, who you believe have knowledge regarding the breach, overtopping, or other failure of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal," as set forth in Paragraphs 31 through 42 of your Complaint.  For each person or entity, provide his/her name, employer, title, address, telephone number, and a brief description of his/her presumed knowledge.

**ANWER TO INTERROGATORY NO. 15:**

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered. Plaintiffs further object to the extent the interrogatory seeks information regarding the knowledge of persons, entities or parties other than Plaintiffs.

Subject to these objections, Plaintiffs refer WGI to Plaintiffs' witness lists filed with the Court. Plaintiffs also refer WGI to the trial transcripts (commencing June 21, 2010), witness lists, and exhibit lists for the Barge litigation, including at least Documents 18227, 18728, 19419, and 19709 (Cases 05-5531, 5724, 5342, 6299, 7516, 3500, 5178, 4459 and 06-7516).

**INTERROGATORY NO. 16:**

Identify any and all persons or entities who you contend have knowledge or other evidence of ponding and/or pooling of water, leaks, and/or sand boils on any residential and/or commercial property near the levees and/or floodwalls abutting the IHNC/Industrial Canal prior to August 29, 2005.  For each person or entity, provide his/her name, employer, title, address, telephone number, and a brief description of his/her presumed knowledge.

**ANWER TO INTERROGATORY NO. 16:**

Plaintiffs object to this interrogatory as premature because liability discovery in this case is ongoing.  Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered. Plaintiffs further object to the extent the interrogatory seeks information regarding the knowledge of persons, entities or parties other than Plaintiffs.

Subject to these objections, Plaintiffs refer WGI to Plaintiffs' witness lists filed with the Court. Plaintiffs also refer WGI to the trial transcripts (commencing June 21, 2010), witness lists, and exhibit lists for the Barge litigation, including at least Documents 18227, 18728, 19419, and 19709 (Cases 05-5531, 5724, 5342, 6299, 7516, 3500, 5178, 4459 and 06-7516).

**INTERROGATORY NO. 17:**

Identify any and all persons or entities who you contend expressed complaints and/or concerns of any kind regarding demolition and/or remediation activities conducted by or on behalf of the United States Army Corps of Engineers at the East Bank Industrial Area.  For each person or entity, provide his/her name, employer, title, address, telephone number, and a brief description of his/her complaint and/or concern.

**ANWER TO INTERROGATORY NO. 17:**

Plaintiffs object to this interrogatory as overbroad and as premature because liability discovery in this case is ongoing.  Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered. Plaintiffs further object to the extent the interrogatory seeks information regarding the knowledge of persons, entities or parties other than Plaintiffs.

Subject to these objections, Plaintiffs refer WGI to Plaintiffs' witness lists filed with the Court. Plaintiffs also refer WGI to the trial transcripts (commencing June 21, 2010), witness lists, and exhibit lists for the Barge litigation, including at least Documents 18227, 18728, 19419, and 19709 (Cases 05-5531, 5724, 5342, 6299, 7516, 3500, 5178, 4459 and 06-7516).

**INTERROGATORY NO. 18:**

Specify in detailed narrative form the factual basis for allegations made by you of "negligent acts and omissions" against WGII under each Louisiana Civil Code Article referenced by you in Paragraphs 62 through 65 of your Complaint, and identify any and all documents, evidence, or other similar materials in your possession to support such factual basis.

**ANWER TO INTERROGATORY NO. 18:**

Plaintiffs object to this interrogatory as overbroad and as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

Subject to these objections, Plaintiffs contend that WGI's acts and/or omissions include the failure to perform any geotechnical analyses on the potential impact the excavation work (or non-excavation work) could have on the adjacent flood control structures, as well as the selection of backfill material and the compaction method for this backfill material; all of which undermined the integrity of the flood protection structures along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish.

## INTERROGATORY NO. 19:

Specify in detailed narrative form the factual basis for allegations made by you of "strict liability" against WGII as alleged in the Introduction to your Complaint, and identify any and all documents, evidence, or similar materials in your possession or under your control to support such factual basis.

## ANWER TO INTERROGATORY NO. 19:

Plaintiffs object to this interrogatory as overbroad and as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.   Subject to these objections, Plaintiffs refer WGII to their response in Interrogatory No. 18.

## INTERROGATORY NO. 20:

Specify in detailed narrative form the factual basis for allegations made by you of "*Res Ipsa Loquitur*" against WGII as alleged in Paragraph 67 of your Complaint, and identify any and all documents, evidence, or similar materials in your possession to support such factual basis.

**ANWER TO INTERROGATORY NO. 20:**

Plaintiffs object to this interrogatory as overbroad and as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.   Subject to these objections, Plaintiffs refer WGII to their response in Interrogatory No. 18.

**INTERROGATORY NO. 21:**

Specify in detailed narrative form the factual basis for allegations made by you that the Plaintiffs suffered "PROPERTY AND OTHER SPECIAL DAMAGES" as alleged in Paragraph 68 of your Complaint, including "loss of property (real and personal), immovable and movable; diminution of property value; loss of income; costs of relocation; loss of business opportunities and business interruption; evacuation expenses; and other special damages to be proven at trial," and identify any and all documents, evidence, or similar materials in your possession to support such factual basis.

**ANWER TO INTERROGATORY NO. 21:**

Plaintiffs object to this interrogatory as it is overbroad and as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of

expert discovery.  Subject to these objections, Plaintiffs refer WGII to their response in Interrogatory No. 5.

**INTERROGATORY NO. 22:**

Specify in detailed narrative form the factual basis for allegations made by you that the Plaintiffs suffered "PERSONAL INJURY AND OTHER GENERAL DAMAGES" as alleged in Paragraph 68 of your Complaint, including "wrongful death, survival damages, fear, fright and emotional distress, grief, mental anguish, inconvenience, pain and suffering, loss of the capacity to enjoy life; loss of consortium; and costs of suit," and identify any and all documents, evidence, or similar materials in your possession to support such factual basis.

**ANWER TO INTERROGATORY NO. 22:**

Plaintiffs object to this interrogatory as it is overbroad and as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this interrogatory as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.  Subject to these objections, Plaintiffs refer WGII to their response in Interrogatory No. 5.

**INTERROGATORY NO. 23:**

Identify each and every person or entity who answered, participated in answering, or provided information or documents utilized in answering these Interrogatories, Requests for Production of Documents, and Requests for Admissions, including specifically for the separate Requests for Admissions served today on each individual Plaintiff.

**ANWER TO INTERROGATORY NO. 23:**

Plaintiffs object to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege or is information prepared in anticipation of litigation that is privileged. Further, Plaintiffs object on work product grounds to the extent this request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy. Without waiving their rights to assert their privileges, Plaintiffs Responses to Defendant WGII's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions were prepared by counsel with the assistance of Fred Holmes, Jr., Clifford Washington, Jeannine Armstrong, Kenneth Armstrong, Alvin Livers and Nathan Morgan.

**INTERROGATORY NO. 24:**

For each Request for Admission that you deny, or for which you qualify your answer in any way other than "admitted," provide: (1) a list of all persons, by name and title, you contacted, discussed your response with, or who in any way participated in formulating your response; (2) a description of the information those persons provided to you in formulating your response; and (3) an explanation of the basis for your denial or qualification of your response.

**ANWER TO INTERROGATORY NO. 24:**

Plaintiffs object to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege or is information prepared in anticipation of litigation that is privileged. Further, Plaintiffs object on work product grounds to the extent this request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy. Without waiving their rights to assert their privileges, Plaintiffs Responses to Defendant WGII's First Set of Interrogatories, Requests for Production of

Documents and Requests for Admissions were prepared by counsel with the assistance of Fred Holmes, Jr., Clifford Washington, Jeannine Armstrong, Kenneth Armstrong, Alvin Livers and Nathan Morgan.

## INTERROGATORY NO. 25:

For each Request for Admission served today on each individual Plaintiff that you deny, or for which you qualify your answer in any way other than "admitted," provide: (1) a list of all persons, by name and title, you contacted, discussed your response with, or who in any way participated in formulating your response; (2) a description of the information those persons provided to you in formulating your response; and (3) an explanation of the basis for your denial or qualification of your response.

## ANWER TO INTERROGATORY NO. 25:

Plaintiffs object to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege or is information prepared in anticipation of litigation that is privileged. Further, Plaintiffs object on work product grounds to the extent this request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy. Without waiving their rights to assert their privileges, Plaintiffs Responses to Defendant WGII's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions were prepared by counsel with the assistance of Fred Holmes, Jr., Clifford Washington, Jeannine Armstrong, Kenneth Armstrong, Alvin Livers and Nathan Morgan.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Produce each and every Standard Form 95 submitted by any Plaintiff in this lawsuit from August 29, 2005, to the present that is in the possession, custody, or control of the Plaintiffs or their attorneys.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Plaintiffs refer WGII to documents bates numbers LIVERS 001–003, HOLMES 001-002, WASHINGTON 001-002, COATS 001-003, and ARMSTRONG 001–006.

**REQUEST FOR PRODUCTION NO. 2:**

Produce all documents, materials, or other information identified in your responses to these Interrogatories and Requests for Admissions, and in your responses to the separate Requests for Admissions served today on each individual Plaintiff, as well as all documents, materials and/or other information used by you to respond to the Interrogatories and Requests for Admissions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

The following documents, materials, or other information were used to respond to the Interrogatories and Requests for Admissions:

1. Documents previously produced, bated numbered LIVERS 001-015; WASHINGTON 001-002, 004 – 082, 087-091, 093-115, 124-136, 141-176; HOLMES 001-002.

2. Documents currently being produced, bates numbers LIVERS 016-04; COATS 001-003 and ARMSTRONG 001-012.

3. Videos, bates numbers ARMSTRONG 013-014.

4.  Loss Reports for all plaintiffs drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.

5.  Documents received by WGII from the Louisiana Office of Community Development (Road Home), Allstate Insurance Company, Alliance Insurance, AAA Insurance, Louisiana Citizens Property Insurance Company, State Farm Insurance, and American Security Insurance Company in response to subpoena duces tecum.

6.  The deposition transcripts of the depositions of Mr. and Mrs. Armstrong in this matter held on July 9, 2007.

7.  The deposition transcript of the deposition of Ethel Coats in this matter held on July 17, 2007.

**REQUEST FOR PRODUCTION NO. 3:**

Produce all photographs and/or videos of any Plaintiff's real/immovable property, including photographs and/or videos taken before and after Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i). Subject to these objections, Plaintiffs refer Defendant to the Photo Sheet attached to the Loss Report for each plaintiff drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011. Plaintiffs refer WGII to cd's with video, bates numbers ARMSTRONG 013-014.  Plaintiffs refer WGII to photographs of the Armstrong property at bates number ARMSTRONG 007-012.  Plaintiffs refer WGII to photographs of the Livers property at bates number LIVERS 016 – 041.

**REQUEST FOR PRODUCTION NO. 4:**

Produce all photographs and/or videos of rain, flooding, evidence of flooding, and the effect of flooding at or near any Plaintiff's property as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiffs refer WGII to cd's with video, bates numbers ARMSTRONG 013-014.

**REQUEST FOR PRODUCTION NO. 5:**

Produce all contracts, agreements, reports, notes, photographs, drawings, evaluations, and/or other documents that refer or relate to the inspection, examination, testing, and/or appraisal of each and every piece of property that the Plaintiffs claim sustained damage as a result of Hurricane Katrina, including but not limited to lands, homes, commercial buildings, improvements, movables, and/or other tangible things.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Plaintiffs object to this request as overbroad and as premature because discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions. Plaintiffs also object to this request as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case. This information will be available by way of expert discovery.

Plaintiffs further object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs refer WGII to the Loss Report for all plaintiffs drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011. Plaintiffs also refer WGII to the documents received by WGII from the Louisiana Office of Community

Development (Road Home), Allstate Insurance Company, Alliance Insurance, AAA Insurance, Louisiana Citizens Property Insurance Company, State Farm Insurance, and American Security Insurance Company in response to subpoena duces tecum.   Plaintiffs also refer WGII to photographs of the Armstrong property at bates number ARMSTRONG 007-012.  Plaintiffs also refer WGII to photographs of the Livers property at bates number LIVERS 016 – 041.

**REQUEST FOR PRODUCTON NO. 6:**

Produce all contracts, agreements, reports, notes, photographs, drawings, evaluations, and/or other documents that refer or relate to any improvements made to the real/immovable property that the Plaintiffs claim sustained damage as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs object to this request as overbroad and as premature because discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this request as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

Plaintiffs further object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs refer WGII to the Loss Report for all plaintiffs drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Plaintiffs also refer WGII to the documents received by WGII from the Louisiana Office of Community Development (Road Home), Allstate Insurance Company, Alliance Insurance, AAA Insurance, Louisiana Citizens Property Insurance Company, State Farm Insurance, and American Security

Insurance Company in response to subpoena duces tecum.  Plaintiffs also refer WGII to photographs of the Armstrong property at bates number ARMSTRONG 007-012.  Plaintiffs also refer WGII to photographs of the Livers property at bates number LIVERS 016 – 041.

**REQUEST FOR PRODUCTON NO. 7:**

Produce all contracts, deeds, titles, acts of sale, and/or other documents that evidence each Plaintiff's ownership rights to the real/immovable property that the Plaintiffs claim sustained damage as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).

**REQUEST FOR PRODUCTION NO. 8:**

Produce all documents, materials or other information that refer or relate to any foreclosure proceedings instituted against any Plaintiff in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

No foreclosure proceedings have been instituted against any Plaintiff in this lawsuit.

**REQUEST FOR PRODUCTION NO. 9:**

Produce all documents, materials or other information that refer or relate to any Plaintiff's evacuation, relocation, and if applicable, return to New Orleans as a result of Hurricane Katrina, including but not limited to lease agreements, rental agreements, and records of expenses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiffs object to this request as overbroad and as premature because discovery in this case is ongoing.  Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered. Subject to the above objections, Plaintiffs refer WGII to the Loss Report for each of the plaintiffs drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Plaintiffs also refer WGII to the deposition transcript of the deposition of Ethel Coats in this matter held on July 17, 2007. Plaintiffs also refer WGII to the deposition transcripts of the depositions of Mr. and Mrs. Armstrong in this matter held on July 9, 2007.

**REQUEST FOR PRODUCTION NO. 10:**

Produce all medical records for each Plaintiff in this lawsuit from August 2000 to the present, whether or not such Plaintiff(s) claim medical damages.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiffs object to this request for "all medical records for each Plaintiff in this lawsuit from August 2000 to the present" as overly broad, unduly burdensome and not relevant to the issues in this lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this request as premature as liability discovery is ongoing. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

**REQUEST FOR PRODUCTION NO. 11:**

Produce all mathematical or formulaic calculations or other models (computer or otherwise) that refer or relate to determining the cause(s) of injury to any Plaintiff in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiffs object to this request as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this request as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

**REQUEST FOR PRODUCTION NO. 12:**

Produce all mathematical or formulaic calculations or other models (computer or otherwise) that refer or relate to calculating damages for any Plaintiff in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Plaintiffs object to this request as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this request as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

**REQUEST FOR PRODUCTION NO. 13:**

Produce all documents, materials, or other information that refer or relate to administrative claims to any governmental body or agency, including but not limited to Road Home claims, and/or insurance claims, made by any Plaintiff or on his/her behalf relating to Hurricane Katrina or Hurricane Rita.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiffs object to this request as overbroad and as premature because discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and

subsequent depositions.  Plaintiffs also object to this request as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

Plaintiffs further object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).

Subject to the above objections, Plaintiffs refer WGII to the Loss Report for all plaintiffs drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011. Plaintiffs also refer WGII to the documents received by WGII from the Louisiana Office of Community Development (Road Home), Allstate Insurance Company, Alliance Insurance, AAA Insurance, Louisiana Citizens Property Insurance Company, State Farm Insurance, and American Security Insurance Company in response to subpoena duces tecum. Plaintiffs further refer Defendants to documents previously produced, bates numbers LIVERS 004 – 015.

## REQUEST FOR PRODUCTION NO. 14:

Produce all documents, materials, or other information that refer or relate to any payment, insurance proceed, settlement, loan disbursement, government assistance, benefit, or other funds paid to any Plaintiff or on his/her behalf relating to Hurricane Katrina or Hurricane Rita.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Plaintiffs object to this request as overbroad and as premature because discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions.  Plaintiffs also object to this request as an improper invasion of the

work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case.  This information will be available by way of expert discovery.

Plaintiffs further object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs refer WGII to the Loss Report for all plaintiffs drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.  Plaintiffs also refer WGII to the documents received by WGII from the Louisiana Office of Community Development (Road Home), Allstate Insurance Company, Alliance Insurance, AAA Insurance, Louisiana Citizens Property Insurance Company, State Farm Insurance, and American Security Insurance Company in response to subpoena duces tecum.

**REQUEST FOR PRODUCTION NO. 15:**

Produce all documents, materials, or other information that refer or relate to any legal proceedings regarding Hurricane Katrina or Hurricane Rita, other than this lawsuit, in which any Plaintiff has been involved, including all written discovery responses and documents produced by the Plaintiffs in connection with those legal proceedings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy.

Further, Plaintiffs object to this interrogatory as unduly burdensome and request information that irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to these objections, Plaintiff Fred Holmes, Jr. was involved in the following legal proceedings regarding Hurricane Katrina or Hurricane Rita:

1. *Jeneen Holmes and Fred Holmes, Jr., versus AAA Insurance, Fidelity National Property and Casualty Insurance Company, Standard Mortgage Corporation, Louis Noah*, 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana, Docket No. 106484-B.

2. *Jeneen Holmes and Fred Holmes, Jr., versus Club Insurance Agency Incorporated,* 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana, Docket No. 110615-A.

3. *Jeneen Holmes and Fred Holmes, Jr., versus Standard Mortgage Corporation*, 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana, Docket No. 106484-B.

Subject to the above objections, Plaintiff Clifford Washington was involved in the following legal proceedings regarding Hurricane Katrina or Hurricane Rita:

1. *Clifford Washington versus Louisiana Citizens Property Insurance Corporation*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2007-8207.

2. *Clifford Washington versus Safeco Insurance Company of America, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 2007-11311 "N."

3. *Clifford Washington versus Safeco Insurance Company of America, et al.*, United States District Court for the Eastern District of Louisiana, Civil Action No. 07-8904, Section "A" (1).

See documents previously produced, bates numbers WASHINGTON 004 – 082, 087-091, 093-115, 124-136, 141-176.

Subject to the above objections, Plaintiffs Jeannine and Kenneth Armstrong were involved in the following legal proceedings regarding Hurricane Katrina or Hurricane Rita:

1. *Jeannine Armstrong and Kenneth P. Armstrong versus Liberty Mutual Insurance Company*, 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana, Docket No. 109700-C.

2. *Armstrong, et al. versus Liberty Mutual Insurance Company*, United States District Court for the Eastern District of Louisiana, Civil Action No. 07-05683, Section "C."

**REQUEST FOR PRODUCTION NO. 16:**

Produce all documents, materials, or other information that refer or relate to your contention that WGII breached legal duties owed to the Plaintiffs, with respect to the allegations made by you against WGII in your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy.

Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action. Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 17:**

Produce all documents, materials, or other information that refer or relate to your contention that WGII violated any state, federal, or local statute or regulation, with respect to the allegations made by you against WGII in your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action. Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 18:**

Produce all documents, materials, or other information that refer or relate to your contention that WGII violated any architectural, engineering, construction, or other type of protocol, guideline, practice, convention, or other applicable code or provision included in the standard of care, with respect to the allegations made by you against WGII in your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far.

Subject to these objections, Plaintiffs refer WGI to the documents identified in response to Request 13 and to those identified in connection with summary judgment proceedings in this action. Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 19:**

Produce all documents, materials, or other information that refer or relate to allegations made by you against WGII that its actions or inactions played any part or role in causing any failure, breach, or overtopping of any portion of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal," as set forth in Paragraphs 31 through 42 of your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 20:**

Produce all documents, materials, or other information that refer or relate to any and all persons or entities, including eyewitnesses, who you believe have knowledge regarding the breach, overtopping, or other failure of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal" as set forth in Paragraphs 31 through 42 of your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent the request encompasses fact work product or requires production of documents would

reveal counsel's mental impressions and trial strategy.  Plaintiffs also object on grounds that discovery is ongoing.

Subject to these objections, Plaintiffs refer WGI to the documents identified in response to Interrogatories 15-17 and to those identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 21:**

Produce all documents, materials, or other information that refer or relate to any and all persons or entities who you contend have knowledge or other evidence of ponding and/or pooling of water, leaks, and/or sand boils on any residential and/or commercial property near the levees and/or floodwalls abutting the IHNC/Industrial Canal prior to August 29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent the request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy.  Plaintiffs also object on grounds that discovery is ongoing. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in response to Interrogatories 15-17 and to those identified in connection with summary judgment

proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 22:**

Produce all documents, materials, or other information that refer or relate to any and all persons or entities who you contend expressed complaints and/or concerns of any kind regarding demolition and/or remediation activities conducted by or on behalf of the United States Army Corps of Engineers at the East Bank Industrial Area.


**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent the request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy.  Plaintiffs also object on grounds that discovery is ongoing. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in response to Interrogatories 15-17 and to those identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 23:**

Produce all documents, materials, or other information that refer or relate to your allegation in Paragraph 35 of your Complaint that WGII's work "undermined the integrity of the levee, and/or flood wall along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action. Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 24:**

Produce all documents, materials, or other information that refer or relate to your allegation in Paragraph 36 of your Complaint that WGII's work along the eastern shoreline of

the IHNC/Industrial Canal, between Florida and Claiborne Avenues, resulted in "underseepage-induced erosion and other damage to the levee and/or floodwall(s)."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action. Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 25:**

Produce all documents, materials, or other information that refer or relate to the "proper procedures," "appropriate regulations and standards," and "appropriate authorities" you contend apply to WGII's work at the IHNC/Industrial Canal, as set forth in Paragraph 37 of your Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

## REQUEST FOR PRODUCTION NO. 26:

Produce all documents, materials, or other information that refer or relate to each of the conclusions set forth in Paragraph 37 of your Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy.

Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

## REQUEST FOR PRODUCTION NO. 27:

Produce all documents, materials, or other information that refer or relate to allegations made by you of "negligent acts and omissions" against WGII under each Louisiana Civil Code Article referenced by you in Paragraphs 62 through 65 of your Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 27:

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 28:**

Produce all documents, materials, or other information that refer or relate to allegations made by you of "strict liability" against WGII as alleged in the Introduction to your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy.  Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 29:**

Produce all documents, materials, or other information that refer or relate to allegations made by you of "*Res Ipsa Loquitur*" against WGII as alleged in Paragraph 67 of your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGI's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs object on work product grounds to the extent production of documents would reveal counsel's mental impressions and trial strategy. Plaintiffs also object on grounds that discovery is ongoing and Plaintiffs continue to review thousands of documents obtained over the course of discovery thus far. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered.

Subject to these objections, Plaintiffs refer WGI to the documents identified in connection with summary judgment proceedings in this action.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already.

**REQUEST FOR PRODUCTION NO. 30:**

Produce all documents, materials, or other information that refer or relate to allegations made by you that the Plaintiffs suffered "PROPERTY AND OTHER SPECIAL DAMAGES" as alleged in Paragraph 68 of your Complaint, including "loss of property, (real and personal), immovable and movable; diminution of property value; loss of income; costs of relocation; loss

of business opportunities and business interruption; evacuation expenses; and other special damages to be proven at trial."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Further, Plaintiffs object to this request as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent depositions. Plaintiffs also object to this request as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case. This information will be available by way of expert discovery.

Subject to these objections, Plaintiffs refer WGII to the Loss Report for each plaintiff drafted by Scott Taylor Adjusting Services and submitted to defense counsel on July 18, 2011.

**REQUEST FOR PRODUCTION NO. 31:**

Produce all documents, materials, or other information that refer or relate to allegations made by you that the Plaintiffs suffered "PERSONAL INJURY AND OTHER GENERAL DAMAGES" as alleged in Paragraph 68 of your Complaint, including "wrongful death, survival damages, fear, fright and emotional distress, grief, mental anguish, inconvenience, pain and suffering, loss of the capacity to enjoy life; loss of consortium; and costs of suit."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Plaintiffs also object to this request as premature because liability discovery in this case is ongoing, and because it improperly accelerates the deadlines for expert reports and subsequent

depositions. Plaintiffs also object to this request as an improper invasion of the work-product doctrine because it calls for legal and factual conclusions formulated by counsel in preparing Plaintiffs' case. This information will be available by way of expert discovery.

**REQUEST FOR PRODUCTION NO. 32:**

Produce all logs, journals, diaries, or other writings by the Plaintiffs that refer or relate to the Plaintiffs' allegations against WGII in your Complaint and/or any damages or injuries allegedly sustained by the Plaintiffs as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Plaintiffs object to this request as overbroad and as premature because liability discovery in this case is ongoing. Plaintiffs reserve the right to supplement, modify, or amend this response as more information and documents are discovered. Plaintiffs also object to the extent that it seeks information that is protected by the attorney-client privilege or is information prepared in anticipation of litigation that is privileged. Further, Plaintiffs object on work product grounds to the extent this request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy.

**REQUEST FOR PRODUCTION NO. 33:**

Produce all statements and/or transcriptions of recorded statements, audio or video recordings, photographs, pictures, maps, diagrams, models, and/or other materials by the Plaintiffs that refer or relate to the Plaintiffs' allegations against WGII in your Complaint and/or any damages or injuries allegedly sustained by the Plaintiffs as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Plaintiffs object to this request as overbroad and object to the extent it seeks information and documents that are in the WGII's possession, custody, or control, or otherwise publicly

available and/or obtainable from some other source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Further, Plaintiffs object to this request to the extent that it seeks information that is protected by the attorney-client privilege or is information prepared in anticipation of litigation that is privileged. Further, Plaintiffs object on work product grounds to the extent this request encompasses fact work product or requires production of documents would reveal counsel's mental impressions and trial strategy.

Subject to these objections, Plaintiffs refer WGII to the documents identified in connection with summary judgment proceedings in this action and to exhibits used during the Barge trial, including those identified in response to Interrogatories 15-17.  Plaintiffs further state that, to the extent non-privileged and non-protected responsive documents exist, they will be produced if not produced already. Additionally, Plaintiffs refer WGII to the Loss Report for each plaintiff drafted by Scott Taylor Adjusting Services submitted and to defense counsel on July 18, 2011. Plaintiffs also refer WGII to the deposition transcripts of the depositions of Jeannine Armstrong, Kenneth Armstrong and Ethel Coats in this matter held in July of 2007.  Plaintiffs also refer WGII to cd's with video, bates numbers ARMSTRONG 013-014.  On the video bates labeled ARMSTRONG 013, the residence of Mr. and Mrs. Armstrong at issue in this litigation can be seen on, or around, the cd time-stamp of 27:48.  Plaintiffs refer WGII to photographs of the Armstrong property at bates numbers ARMSTRONG 007-012.  Plaintiffs refer WGII to photographs of the Livers property at bates numbers LIVERS 016 – 041.

## RESPONSES TO REQUESTS FOR ADMISSIONS TO ALL PLAINTIFFS

## REQUEST FOR ADMISSION NO. 1:

Admit that the Plaintiffs are seeking only the following categories of damages, which are specifically identified by you in Paragraph 68 of your Complaint:

    a.  Loss of property (real and personal), immovable and movable;

    b.  Diminution of property value;

    c.  Loss of income;

    d.  Costs of relocation;

    e.  Loss of business opportunities and business interruption;

    f.  Evacuation expenses;

    g.  Personal injury;

    h.  Wrongful death;

    i.  Survival damages;

    j.  Fear;

    k.  Fright;

    l.  Emotional distress;

    m.  Grief;

    n.  Mental anguish;

    o.  Inconvenience;

    p.  Pain and suffering;

    q.  Loss of capacity to enjoy life;

    r.  Loss of consortium, and

    s.  Costs of suit.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Admitted that no plaintiff seeks any category of damages not listed in Request for Admission No. 1.

**REQUEST FOR ADMISSION NO. 2:**

Admit that at no time relevant to this lawsuit did WGII have responsibility for, or control over, the authorization, specification, design, or construction of any part of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal," as set forth in Paragraphs 31 through 42 of your Complaint and alleged by you to have failed and/or caused damage to the Plaintiffs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Admitted based upon information and belief, subject to further discovery in this action. Denied to the extent this request is meant to encompass the EBIA or work performed therein.

**REQUEST FOR ADMISSION NO. 3:**

Admit that at no time relevant to this lawsuit did WGII fail to ensure the use of proper materials in constructing any portion of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal," as set forth in Paragraphs 31 through 42 of your Complaint and alleged by you to have failed and/or caused damage to the Plaintiffs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Admitted based upon information and belief, subject to further discovery in this action. Denied to the extent this request is meant to encompass the EBIA or work performed therein.

**REQUEST FOR ADMISSION NO. 4:**

Admit that at no time relevant to this lawsuit did WGII fail to preserve, maintain, rebuild, or otherwise exercise appropriate care for marshes, wetlands, forests, or other land masses that act as a buffer against storm surges, as those terms are used by you in your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Admitted based upon information and belief, subject to further discovery in this action. Denied to the extent this request is meant to encompass the EBIA or work performed therein.

**REQUEST FOR ADMISSION NO. 5:**

Admit that at no time relevant to this lawsuit did WGII have a duty to evaluate the potential damage to the levees and/or floodwall structure by storm surges for any portion of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal," as set forth in Paragraphs 31 through 42 of your Complaint and alleged by you to have failed and/or caused damage to the Plaintiffs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that at no time relevant to this lawsuit did WGII fail to correct known defects, or act upon any warnings or notices for any portion of "the hurricane protection levees and flood walls of the IHNC/Industrial Canal," as set forth in Paragraphs 31 through 42 of your Complaint and alleged by you to have failed and/or caused damage to the Plaintiffs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that WGII is not "strictly liable," as that term is specifically used by you in the Introduction of your Complaint, for any allegations made against WGII by you in your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied

**REQUEST FOR ADMISSION NO. 8:**

      Admit that at no time relevant to this lawsuit did WGII "dredge," or engage in "dredging" or "dredging activities," as those terms are specifically used by you in Paragraphs 16 and 22 of your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

      Denied as written.  To the extent WGI seeks an admission that dredging done by it or on its behalf was not a potential cause of harm to Plaintiffs the request is denied.  Likewise, any and all digging, excavation work or dredging along the IHNC or within the EBIA are outside the scope of paragraphs 16-22 of Plaintiffs' Complaint.

**REQUEST FOR ADMISSION NO. 9:**

      Admit that at no time relevant to this lawsuit did WGII create a "nuisance" under either Louisiana and/or federal law, as that term is specifically used by you in Paragraphs 28 through 30 of your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

      Plaintiffs admit they did not bring an action for nuisance against WGI.

**REQUEST FOR ADMISSION NO. 10:**

      Admit that at no time relevant to this lawsuit did WGII have "the care, custody, and control, and thus the *garde* of the IHNC/Industrial Canal . . . and the levees/floodwalls adjacent thereto, including such other levees/floodwalls and/or spoil banks in Orleans Parish (East of the IHNC/Industrial Canal)," as those terms are specifically used by you in Paragraph 64 of your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that the doctrine of "*Res Ipsa Loquitor*," as that term is specifically used by you in Paragraph 67 of your Complaint, is inapplicable to WGII for allegations made against it by you in your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that at no time relevant to this lawsuit did WGII own or was WGII the proprietor of, within the meaning of La. C.C. Art. 667, the land upon which the East Bank Industrial Area is located.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Denied.  "The term 'proprietor' as used in Article 667, while commonly interpreted to refer to landowners, 'has been expansively interpreted by the courts to apply not only to a landowner, but also to a person whose rights derive from the owner. . . . Not only has the term 'proprietor' been expanded from its traditional meaning of simply 'landowner,' the 'work' to which Article 667 refers includes not only constructions but also activities that may cause damage."  *Yokum v. 615 Bourbon St., L.L.C.,* 977 So. 2d 859, 874 (La. 2008); See also: *9 to 5 Fashions v Spurney*, 538 So.2d 228, 234 (La. 1989); and *Inabnet v Exxon Corp*, 642 So.2d 1243 (La. 1994).

**REQUEST FOR ADMISSION NO. 13:**

Admit that WGII's work at the IHNC/Industrial Canal as described in your Complaint did not involve "abnormally dangerous activity" as that term is defined in La. C.C. Art. 667.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied.

Dated:  August 5, 2011

> **Respectfully Submitted,**
> **PLAINTIFFS LIAISON COUNSEL**
>
> _____/s/ Joseph M. Bruno
> JOSEPH M. BRUNO (La. Bar # 3604)
> Bruno & Bruno, LLP
> 855 Baronne Street
> New Orleans, Louisiana 70113
> Telephone: (504) 525-1335
> Facsimile: (504) 561-6775
> Email: jbruno@brunobrunolaw.com
>
> **MR-GO PLAINTIFFS SUB-GROUP LITIGATION**
> **COMMITTEE**
>
>
> **MR-GO PLAINTIFFS SUB GROUP LITIGATION**
> **COMMITTEE**
>
> Jonathan Andry (The Andry Law Firm, New Orleans, LA)
> Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
> James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served upon all counsel of record by ECF on August 5, 2011.

 /s/ Joseph M. Bruno