# Exhibit A

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | | |
|---|---|---|
| Armstrong, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   05-4182 (10-866) |
| United States, et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Cajun Industries, LLC, c/o CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment "A"

| Place:  The Law Offices of Bruno & Bruno<br>855 Baronne Street<br>New Orleans, LA 70113 | Date and Time:<br><br>04/06/2012 10:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographically

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See attachment "B"

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   03/22/2012

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    Andrew P. Owen
The Trial Law Firm, 800 Wilshire Blvd., Suite 500, LA, CA 90017        , who issues or requests this subpoena, are:
213.347.0290; aowen@oslaw.com; admitted pro hac vice

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  05-4182 (10-866)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                                        _____
                                                                                   *Server's signature*

                                                                                   _____
                                                                                   *Printed name and title*

                                                                                   _____
                                                                                   *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT "A"

Cajun Industries, LLC must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters:

1.      Whether the records and documents produced by Cajun Industries, LLC on or about February 24, 2012 are records and documents, or copies thereof, made by the personnel or staff of Cajun Industries, LLC and/or its subsidiaries, in the regular course of business at the time of the act, transaction, or occurrence or event recorded therein, and that it was the regular course of business to make such records and documents.

2.      Whether any records and documents produced by Cajun Industries, LLC in response to this subpoena and described in the accompanying Attachment "B" are records and documents, or copies thereof, made by the personnel or staff of Cajun Industries, LLC and/or its subsidiaries, in the regular course of business at the time of the act, transaction, or occurrence or event recorded therein, and that it was the regular course of business to make such records and documents.

## ATTACHMENT "B"

## DEFINITIONS

As used herein, the words and phrases set forth below shall have the meaning or meanings prescribed for them.  The term "electronically stored information," abbreviated herein as "ESI," has the same meaning and scope in these Requests as it has in the Federal Rules of Civil Procedure.

1.      "And/Or," the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

2.      "Cajun Industries, LLC" includes your agents, contractors, sub-contractors, experts, officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

3.      "IHNC" means the Inner Harbor Navigation Canal, or Industrial Canal, and concerns the area along east side of the IHNC between Florida Avenue and Claiborne Avenue, including the floodwalls, sheet pile, and levees therein.

4.      "Implemented" means designed, constructed, built, and installed.

5.      "Work" means demolition, removal, construction, remediation, replacement, repairs, analyses, surveys, designs, installations, investigations, and studies.

## REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1

The original, unaltered photographs, JPEGs, TIFF files, or BITMAPs of the images produced by Cajun Industries, LLC on or about February 24, 2012, attached hereto as Exhibit 1, and given the following names on the production CD-ROM:

mvc-001s (8)

MVC-008S (13)

mvc-018s

mvc-019s (4)

mvc-020s (3)

mvc-020s

mvc-021s (3)

mvc-021s

Photos 013

## REQUEST FOR PRODUCTION NO. 2

The final as constructed drawings, plans or renderings of any temporary flood control protection plan implemented by Cajun Industries, LLC at the IHNC after Hurricane Katrina.

## REQUEST FOR PRODUCTION NO. 3

The final as constructed drawings, plans or renderings of any temporary flood control protection plan implemented by Cajun Industries, LLC at the IHNC after Hurricane Rita.

## REQUEST FOR PRODUCTION NO. 4

The final as constructed drawings, plans or renderings of any temporary flood control protection plan implemented by Cajun Industries, LLC at the IHNC pursuant to Contract No. W912P8-06-C-0022 (*see, e.g.*, Exhibit 2 attached hereto).

## REQUEST FOR PRODUCTION NO. 5

All photographs and videos of any work described in Requests for Production No. 2, 3 and 4 above.

# Exhibit 1



USAEC-IHNC EAST SIDE FLOOD WALL REPAIR
JOB # 06-083
W/E 04-08-06
16 H-PILE @ MONO #68



mvc-001s (8)



MVC-008S (13)



mvc-018s



mvc-019s (4)



mvc-020s



mvc-020s (3)



mvc-021s



mvc-021s (3)



Photos 013

# Exhibit 2

**To:** Bertucci, Anthony J MVN
**Cc:** Vicky LeBlanc; David Packard; Euclid Michel
**Subject:** IHNC Eastside - Temporary Flood Protection Plan

Anthony:

Attached you will find CAJUN's Temporary Flood Protection Plan for this project.  Sealed hardcopies will be forwarded to you as well. Please review and notify us as soon as possible upon completion of your review.

If you have any questions or need any further information, please feel free to contact me.  Thanks for your help in this matter.

Jamey

Jamey Sandefur
Cajun Constructors, Inc.
Phone: 225-753-5857
Fax:    225-753-9622
E-Mail: jameys@cajunusa.com

11/18/2005

MEB-018-000001248



November 15, 2005

Mr. Anthony Bertucci
USACE New Orleans District
Post Office Box 60267
New Orleans, Louisiana 70118

RE:     Lake Pontchartrain & Vicinity
        IHNC East Side N. Claiborne to Florida Avenue
        Contract No. W912P8-06-C-0022

SUBJECT:     Temporary Flood Protection Plan

Dear Mr. Bertucci:

Attached for your review you will find a copy of Cajun Constructors, Inc.'s (CAJUN) Temporary Flood Protection Plan as designed by Mr. Jesse L. Arnold, P.E. This plan will employ an earthen levee to Elevation 10.0 NAVD in accordance with Specification Section 02111 and as detailed in the attached design.

It is CAJUN's intent to construct the earthen levee as shown to protect the work area prior to degrading the existing levee / I-wall. The materials to begin this levee will either come from a USACE approved borrow site (J.P. & Sons, 8233 River Road, Westwego, LA 70094 or other approved site) or from the existing limestone material placed in the breaches, or a combination thereof. The temporary protection levee will remain in place until the new T-wall is complete in the protected area. Any openings left in the temporary flood protection levee (i.e. access to Inner Harbor Navigation Canal to unload materials from barges) will be limited to a size that CAJUN will be capable of closing within twenty four (24) hours in accordance with Specification 02111-3.1. Methods of construction, compaction, embankment, etc. will be in accordance with the USACE specifications referenced in the attached design.

The Temporary Flood Protection Plan includes a method to quickly bring flood protection up to Elevation 14.0 if so directed by the Contracting Officer in accordance with Specification 02111-1.5.1. This would be accomplished by driving sheetpiles in the temporary protection levee with the top of the sheetpiles at Elev. 14.0 and tip elevation at -6.0 or below. The materials to accomplish this would come from existing sheets in good condition that CAJUN has removed and stockpiled or new sheets purchased for installation in the new T-wall and diverted to the temporary flood protection, or some combination thereof.

Should you have any questions please do not hesitate to contact me at 225-753-5857.

Very truly yours,
CAJUN CONSTRUCTORS, INC.

Jamey Sandefur
Project Manager

JS/vpl

CC:   Chron
      File 1.20 (06-083)

P.O. Box 104
Baton Rouge, LA 70821-0104

225/753-5857

FAX 225/751-9777

www.cajunusa.com

# J.L. Arnold, Inc.

November 14, 2005

Mr. Jamey Sandefur
CAJUN Constructors
P.O. Box 104
Baton Rouge, LA 70821-0104

Re:  Geotechnical Recommendations
Temporary Flood Protection
IHNC East Side Floodwall Repairs
JLAI No. 05209

Dear Mr. Sandefur,

Transmitted herein are my design and construction recommendations for the Temporary Flood Protection structure planned for this project. This information is being provided for inclusion in your submittals to the U.S. Army Corps of Engineers, New Orleans District.

Background
The floodwall on the east side of the Inner Harbor Navigation Canal in New Orleans suffered damage during the passage of Hurricane Katrina. Subsequently, the USACOE issued plans and specifications describing repairs to be made. A key component of that work is to construct a Temporary Flood Protection structure to provide protection to the neighborhood while the floodwall is being repaired. Specification Section 02111 describes the design requirements for this structure. In brief, a minimum crest elevation of 10 is required. During the designated storm period, June 1 through November 30, the capacity to quickly raise the impounding level to elevation 14 is required. Cajun Constructors has chosen to construct an earthen levee offset about 70 feet west of the floodwall to provide protection to at least elevation 10. If the level of protection is raised to elevation 14 by the USACOE, then Cajun plans to install sheet piles to meet their directive.

Levee Design
The proposed earthen levee configuration is illustrated on Figure 1 attached. Note that other configurations and alignments were considered and abandoned in favor of this one.

Geotechnical Information
The stratification on which the levee will rest is characterized in a series of 7 boring logs provided by the USACOE. A map showing the location of borings is attached as Figure 2. Copies of the upper portion of those logs are attached as Figures 3 through 9. The logs describe alluvial deposits consisting of fat clays bedded with organic material deposits and some lean clay layers. These materials are typically normally consolidated and weak except for a thin desiccation crust.

The following stratification is interpreted from the textural descriptions and the pattern of moisture content variation. Figure 10 depicts the stratification as a series of horizontal layers. At or near surface grade is a layer of fill attributable to development of the property along the IHNC. Based on the project plans, the elevation of this stratum varies from about 2 to 6 along the alignment of the proposed levee. However, it appears that most of the area is at or near elevation

MEB-018-000001250

J.L. Arnold, Inc.

3. These elevations should be confirmed once a benchmark is established on the project site. Since most of the neighborhood has subsided, the natural ground surface is interpreted to be at or below sea level. For the purposes of this design, that elevation is interpreted to be at 0. The buried native soil material below elevation 0 is fat clay. This material is described as medium to stiff, indicating that it was subject to desiccation when exposed. At progressively greater depth the material becomes soft to very soft. In most of the borings, the clays transition to a stratum of clay bedded with wood and organic material. This stratum is represented to occur between elevations –4 to –14, although significant deviations are noted. Below elevation –14, another stratum of fat clay is logged. This stratum extends to depths below elevation –40. The stratification below elevation –40 includes beds of fine sand and lean to fat clays. These materials are considered to be the lower limit of interest in stability analyses for this levee.

Since there is little strength test data reported on the logs, the assignment of strength parameters to the strata was based on my experience in the area and broad correlations. Additional, more detailed strength information should be requested in order to verify the accuracy of my judgments.

Levee Stability
The stability of the proposed levee configuration was analyzed using the foregoing stratification as inputs to the USACOE program, Stability with Uplift. Multiple runs were performed for various levee configurations and potential surfaces of slip. The slip surface drawn on Figure 10 represents the least factor of safety found for this particular levee configuration. That factor of safety value is 1.55. In my opinion, this value is acceptable. Therefore, I recommend that the levee be configured as illustrated on Figure 1. To accommodate settlement that is expected to occur while the levee is in service, I recommend that the crest be overbuilt about 6 inches (i.e., to elevation 10.5). The crest elevation should also be checked by level survey about 30 days after completion to confirm that the minimum elevation, 10, is not violated. Subsequent checks at intervals to be determined are recommended.

Construction Recommendations
Methods and materials for construction of the levee are presented in the several sections of the Specifications relevant to embankment, particularly 02231, 02332, and 02922. Note is made that spoil materials from the floodwall construction excavation are likely to meet the requirements of paragraph 1.7.2. Likewise, materials from USACOE approved borrow sources could also be delivered. Note is also made that a temporary protection levee consisting of crushed limestone exists on-site. Although this material is not listed among those in paragraph 1.7.2, it is evident that this construction was acceptable to the USACOE. Therefore this segment could continue in service until repairs in that reach are complete. Otherwise, the material can be mined for use in project road paving and other applications.

Sheet Piled Extension
If the USACOE requires additional protection upon the approach of a storm, a sheet pile wall will be installed by Cajun to achieve the required crest elevation 14. The configuration of this installation is illustrated on Figure 11. This configuration was found to be stable by analysis using the concepts presented in Teng, W.C., Foundation Design, Prentice-Hall, Englewood Cliffs, NJ, 1962, pp.358ff. Note that this design addresses the extreme case of pending

MEB-018-000001251

J.L. Arnold, Inc.

overtopping. Specifications Section 02315 is noted to be relevant to the methods and materials to be employed for this work.

I appreciate the opportunity to assist in progressing the construction of this floodwall repair work. If I can be of further assistance, then please call.

Very truly yours,
J.L. Arnold, Inc.

Jesse L. Arnold, P.E.

P.O. Box 45212-494   •   Baton Rouge, Louisiana 70895-4212   •   Phone: 225-751-9954

MEB-018-000001252



PROPOSED TEMPORARY
PROTECTION LEVEE
CROSS-SECTION

FIGURE 1

MEB-018-000001253



FIGURE 2

MEB-018-000001254



29^58'9.426"   90^1'23.07"
BOR. 17-U (68-542)
STA. INTERSECTION JOURDAN + DERBIGNY ST

Date: 7/29/1968

**FIGURE 3**

MEB-018-000001255



29^58'12.202"   90^1'25.392"
BOR. IHNCES-2U (99-20)
STA. SEE MAP

Date: 7/14/1999

FIGURE 4

MEB-018-000001256



FIGURE 5

MEB-018-000001257

29°58'24.06"    90°1'23.502"
BOR. 4-AU (78-67)
STA. STA. 57+70
EXISTING LOCK
330 FT. EAST C/L CHANNEL
Date: 11/8/1979



FIGURE 6

MEB-018-000001258



29^58'24.478"   90^1'16.993"
BOR. 18-U (68-542)
STA. STA. 100 FT. EAST OF C/L JOURDAN AVE.
12 FT. SO. OF C/L N. GALVEZ ST.

Date: 8/5/1968

FIGURE 7

MEB-018-000001259



29^58'32.452"   90^1'16.939"
BOR. 6-U (67-521)
STA. 14 FT. W OF C/L DESLONDE ST.
46 FT N OF C/L
ST CLAUDE AVE IN DITCH
Date: 5/22/1967

FIGURE 8

MEB-018-000001260



FIGURE 9

MEB-018-000001261



FIGURE 11

MEB-018-000001262



FIGURE 10

MEB-018-000001263



CONSTRUCTORS, INC.

November 15, 2005

Mr. Anthony Bertucci
USACE New Orleans District
Post Office Box 60267
New Orleans, Louisiana 70118

RE:     Lake Pontchartrain & Vicinity
        IHNC East Side N. Claiborne to Florida Avenue
        Contract No. W912P8-06-C-0022

SUBJECT:     Temporary Flood Protection Plan

Dear Mr. Bertucci:

Attached for your review you will find a copy of Cajun Constructors, Inc.'s (CAJUN) Temporary Flood Protection Plan as designed by Mr. Jesse L. Arnold, P.E. This plan will employ an earthen levee to Elevation 10.0 NAVD in accordance with Specification Section 02111 and as detailed in the attached design.

It is CAJUN's intent to construct the earthen levee as shown to protect the work area prior to degrading the existing levee / I-wall. The materials to begin this levee will either come from a USACE approved borrow site (J.P. & Sons, 8233 River Road, Westwego, LA 70094 or other approved site) or from the existing limestone material placed in the breaches, or a combination thereof. The temporary protection levee will remain in place until the new T-wall is complete in the protected area. Any openings left in the temporary flood protection levee (i.e. access to Inner Harbor Navigation Canal to unload materials from barges) will be limited to a size that CAJUN will be capable of closing within twenty four (24) hours in accordance with Specification 02111-3.1. Methods of construction, compaction, embankment, etc. will be in accordance with the USACE specifications referenced in the attached design.

The Temporary Flood Protection Plan includes a method to quickly bring flood protection up to Elevation 14.0 if so directed by the Contracting Officer in accordance with Specification 02111-1.5.1. This would be accomplished by driving sheetpiles in the temporary protection levee with the top of the sheetpiles at Elev. 14.0 and tip elevation at -6.0 or below. The materials to accomplish this would come from existing sheets in good condition that CAJUN has removed and stockpiled or new sheets purchased for installation in the new T-wall and diverted to the temporary flood protection, or some combination thereof.

Should you have any questions please do not hesitate to contact me at 225-753-5857.

Very truly yours,
CAJUN CONSTRUCTORS, INC.

Jamey Sandefur
Project Manager

JS/vpl

CC:  Chron
     File 1.20 (06-083)

P.O. Box 104
Baton Rouge, LA 70821-0104

225/753-5857

FAX 225/751-9777

www.cajunusa.com

MEB-018-000001249

# J.L. Arnold, Inc.

November 14, 2005

Mr. Jamey Sandefur
CAJUN Constructors
P.O. Box 104
Baton Rouge, LA  70821-0104

Re:   Geotechnical Recommendations
      Temporary Flood Protection
      IHNC East Side Floodwall Repairs
      JLAI No. 05209

Dear Mr. Sandefur,

Transmitted herein are my design and construction recommendations for the Temporary Flood Protection structure planned for this project. This information is being provided for inclusion in your submittals to the U.S. Army Corps of Engineers, New Orleans District.

Background
The floodwall on the east side of the Inner Harbor Navigation Canal in New Orleans suffered damage during the passage of Hurricane Katrina. Subsequently, the USACOE issued plans and specifications describing repairs to be made. A key component of that work is to construct a Temporary Flood Protection structure to provide protection to the neighborhood while the floodwall is being repaired. Specification Section 02111 describes the design requirements for this structure. In brief, a minimum crest elevation of 10 is required. During the designated storm period, June 1 through November 30, the capacity to quickly raise the impounding level to elevation 14 is required. Cajun Constructors has chosen to construct an earthen levee offset about 70 feet west of the floodwall to provide protection to at least elevation 10. If the level of protection is raised to elevation 14 by the USACOE, then Cajun plans to install sheet piles to meet their directive.

Levee Design
The proposed earthen levee configuration is illustrated on Figure 1 attached. Note that other configurations and alignments were considered and abandoned in favor of this one.

Geotechnical Information
The stratification on which the levee will rest is characterized in a series of 7 boring logs provided by the USACOE. A map showing the location of borings is attached as Figure 2. Copies of the upper portion of those logs are attached as Figures 3 through 9. The logs describe alluvial deposits consisting of fat clays bedded with organic material deposits and some lean clay layers. These materials are typically normally consolidated and weak except for a thin desiccation crust.

The following stratification is interpreted from the textural descriptions and the pattern of moisture content variation. Figure 10 depicts the stratification as a series of horizontal layers. At or near surface grade is a layer of fill attributable to development of the property along the IHNC. Based on the project plans, the elevation of this stratum varies from about 2 to 6 along the alignment of the proposed levee. However, it appears that most of the area is at or near elevation

P.O. Box 45212-494   •   Baton Rouge, Louisiana 70895-4212   •   Phone: 225-751-9954

MEB-018-000001250

J.L. Arnold, Inc.

3. These elevations should be confirmed once a benchmark is established on the project site. Since most of the neighborhood has subsided, the natural ground surface is interpreted to be at or below sea level. For the purposes of this design, that elevation is interpreted to be at 0. The buried native soil material below elevation 0 is fat clay. This material is described as medium to stiff, indicating that it was subject to desiccation when exposed. At progressively greater depth the material becomes soft to very soft. In most of the borings, the clays transition to a stratum of clay bedded with wood and organic material. This stratum is represented to occur between elevations –4 to –14, although significant deviations are noted. Below elevation –14, another stratum of fat clay is logged. This stratum extends to depths below elevation –40. The stratification below elevation –40 includes beds of fine sand and lean to fat clays. These materials are considered to be the lower limit of interest in stability analyses for this levee.

Since there is little strength test data reported on the logs, the assignment of strength parameters to the strata was based on my experience in the area and broad correlations. Additional, more detailed strength information should be requested in order to verify the accuracy of my judgments.

Levee Stability
The stability of the proposed levee configuration was analyzed using the foregoing stratification as inputs to the USACOE program, Stability with Uplift. Multiple runs were performed for various levee configurations and potential surfaces of slip. The slip surface drawn on Figure 10 represents the least factor of safety found for this particular levee configuration. That factor of safety value is 1.55. In my opinion, this value is acceptable. Therefore, I recommend that the levee be configured as illustrated on Figure 1. To accommodate settlement that is expected to occur while the levee is in service, I recommend that the crest be overbuilt about 6 inches (i.e., to elevation 10.5). The crest elevation should also be checked by level survey about 30 days after completion to confirm that the minimum elevation, 10, is not violated. Subsequent checks at intervals to be determined are recommended.

Construction Recommendations
Methods and materials for construction of the levee are presented in the several sections of the Specifications relevant to embankment, particularly 02231, 02332, and 02922. Note is made that spoil materials from the floodwall construction excavation are likely to meet the requirements of paragraph 1.7.2. Likewise, materials from USACOE approved borrow sources could also be delivered. Note is also made that a temporary protection levee consisting of crushed limestone exists on-site. Although this material is not listed among those in paragraph 1.7.2, it is evident that this construction was acceptable to the USACOE. Therefore this segment could continue in service until repairs in that reach are complete. Otherwise, the material can be mined for use in project road paving and other applications.

Sheet Piled Extension
If the USACOE requires additional protection upon the approach of a storm, a sheet pile wall will be installed by Cajun to achieve the required crest elevation 14. The configuration of this installation is illustrated on Figure 11. This configuration was found to be stable by analysis using the concepts presented in Teng, W.C., Foundation Design, Prentice-Hall, Englewood Cliffs, NJ, 1962, pp.358ff. Note that this design addresses the extreme case of pending

MEB-018-000001251

J.L. Arnold, Inc.

overtopping. Specifications Section 02315 is noted to be relevant to the methods and materials to be employed for this work.

I appreciate the opportunity to assist in progressing the construction of this floodwall repair work.  If I can be of further assistance, then please call.

Very truly yours,
J.L. Arnold, Inc.


Jesse L. Arnold, P.E.

MEB-018-000001252



70' TO WEST FACE OF
EXISTING FLOODWALL

5'

EL. 10'

3(H):1(V)

3(H):1(V)

EXISTING GRADE
ELEVATION VARIES
IN THE RANGE OF 2'-6'.

PROPOSED TEMPORARY
PROTECTION LEVEE
CROSS-SECTION

FIGURE 1

MEB-018-000001253



FIGURE 2

MEB-018-000001254



29^58'9.426"   90^1'23.07"
BOR. 17-U (68-542)
STA. INTERSECTION JOURDAN + DERBIGNY ST

Date: 7/29/1968

FIGURE 3

MEB-018-000001255



29^58'12.202"   90^1'25.392"
BOR. IHNCES-2U (99-20)
STA. SEE MAP

Date: 7/14/1999

FIGURE 4

MEB-018-000001256



29^58'22.001"    90^1'23.2"
BOR. IHNCES-1U (99-19)
STA. SEE MAP

Date: 6/21/1999

FIGURE 5

MEB-018-000001257



29^58'24.06"    90^1'23.502"
BOR. 4-AU (78-67)
STA. STA. 57+70
EXISTING LOCK
330 FT. EAST C/L CHANNEL
Date: 11/8/1979

FIGURE 6

MEB-018-000001258



FIGURE 7

MEB-018-000001259



29^58'32.452"   90^1'16.939"
BOR. 6-U (67-521)
STA. 14 FT. W OF C/L DESLONDE ST.
46 FT N OF C/L
ST CLAUDE AVE IN DITCH
Date: 5/22/1967

FIGURE 8

MEB-018-000001260



FIGURE 9

MEB-018-000001261



FIGURE 11

MEB-018-000001262



FIGURE 10