UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: | § | |
| ARMSTRONG, C.A. No. 10-866 | § | |
| _____ | § | |

**United States' Memorandum in Support of its
Motion to Strike Portions of Dr. Robert Bea's "Rebuttal" Report**

Under Rule 37, the United States moves to strike those portions of Dr. Robert Bea's so-called "rebuttal" expert report that do not rebut Defendants' expert reports, but instead offer new analyses and opinions. Courts have consistently limited rebuttal evidence to that which critiques or rebuts the opposing party's evidence and stricken any new analyses from experts rebuttal reports. The first fifty-three pages of Dr. Bea's report is entitled "Additional Analyses" and plainly violates the limitations on rebuttal evidence. Under the Court's scheduling order, there is no way to cure the prejudice that Defendants suffer by having to assess such new analyses and opinions days before discovery closes and *Daubert* motions must be filed. Accordingly, Dr. Bea's additional analyses and any opinions derived therefrom should be stricken from his rebuttal report.

## Argument

**1. Dr. Bea's expert report is not limited to rebuttal and those portions of the report that offer new analyses should be stricken.**

Rule 26(a)(2)(D)(ii) contemplates that expert testimony, if "intended solely to contradict or rebut evidence on the same subject matter identified by another party" may be made after the other party's expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). This Court allowed such rebuttal reports and set deadlines for them after both Plaintiffs and Defendants submitted their expert reports. After some extensions, this Court ordered that Dr. Bea produce his rebuttal report by April 3, 2013. 3/23/12 Minute Entry (Doc. 20722). On that date, Dr. Bea submitted a 144-page "rebuttal" report.

The scope of proper rebuttal evidence has been well defined. The Fifth Circuit has explained that "rebuttal evidence is generally admissible only to meet the evidence brought out in defendant's case in chief." *McVey v. Phillips Petroleum Co.*, 288 F.2d 53, 54 (5th Cir. 1961). Rebuttal, therefore, is "not to be used as a continuation of the case-in-chief." *Cates v. Sears, Roebuck & Co.* 928 F.2d 679, 685 (5th Cir. 1991). Instead, the purpose of rebuttal "is to explain, repel, counteract or disprove evidence of an adverse party." *United States v. Lamoreaux,* 422 F.3d 750, 755 (8th Cir. 2005).

With the boundaries of rebuttal evidence clearly defined, courts have commonly rejected attempts at masquerading new opinions in the form of a "rebuttal" report. A case in point is the recent decision in, *D'Andrea Bros. LLC v. United States*, No.

2

08–28C, 2012 WL 644010 (Fed. Cl. Feb. 10, 2012). There, the plaintiff initially decided not to submit an expert on damages and instead submitted a one-page summary of its damages calculations. The United States submitted an expert report in response to those calculations. Later, the plaintiff submitted a rebuttal expert witness report which "included new damages calculations" and criticized the United States' expert's report. *Id.* at *1. The United States moved to strike the rebuttal report, arguing that it was improper to use a rebuttal report to submit new damages calculations. Citing a parade of cases holding that a rebuttal report must be limited to address the adverse party's evidence and cannot address new analysis, the court determined that "attempts to tie … new calculations to [the rebuttal] report are improper." *Id.* at *4. The court therefore struck the portions of the rebuttal report that contained new calculations.

Similarly, in *Noffsinger v. The Valspar Corp.*, No. 09-C-916, 2011 WL 9795 (N.D. Ill. Jan. 3, 2011), the court rejected a rebuttal-expert's report which offered new analysis on the issue of causation. The court noted the principle that "a party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Id.* at *6. That is, however, what the rebuttal expert did by opining "on issues for which [the plaintiff] bears the burden of proof as part of his prima facie case." *Id.* Accordingly, the court concluded that such an attempt to "bolster his case in chief" was improper and struck that portion of the rebuttal report. *Id.*

Finally, in *Procter & Gamble Co. v. McNeil–PPC,* 615 F.Supp.2d 832 (W.D. Wis. 2009), the court needed only to examine the heading of a rebuttal report to determine it was improper. The rebuttal report contained the heading, "Supplementation of My Opinion of Infringement." *Id.* at 838. The court tersely concluded, "because rebuttal reports are limited to responding to the issues raised by the opposing parties' experts, I will dismiss these paragraphs because they are improper… ." *Id.*

Under Rules 16 and 37, this Court may exclude improper rebuttal testimony that is not in compliance with its scheduling order. *See Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). Four factors are to be considered in determining whether to exclude expert testimony in violation of a scheduling order: (1) the explanation, if any for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of a curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony." *Id.*; *Moussazadeh v. Texas Dep't of Criminal Justice*, No. 6-07-574, 2011 WL 4376482, (S.D. Tex. Sept. 20, 2011). In examining expert reports that contain both proper rebuttal evidence and improper new analyses, courts have stricken the improper portions of the report. *See, D'Andrea,* 2012 WL 644010 at *4; *Donell v. Fidelity Nat'l Title Agency of Nevada*, No. 2:07-cv-00001 2012 WL 170990 at * 5 (D. Nev. Jan 20, 2012); *Noffsinger*, 2011 WL 9795 at * 7; *Procter & Gamble*, 615 F.Supp.2d, at 838.

4

This Court need go no further than did the *Proctor & Gamble* court to strike Dr. Bea's new analysis in his "rebuttal" report—an examination of the headings makes plain he impermissibly conducted additional analyses. Indeed, "Additional Analysis" is the title of the first 54 pages of his "rebuttal" report. *See* 4/3/12 Report of Dr. Robert Bea (Ex. 1). This markedly contrasts with the second section of his report, called "Preliminary Defense Expert Report Review Observations." On its face, it could not be more apparent that the first part of Dr. Bea's report is not rebuttal but improperly attempts to buttress the opinions in his expert report. If more were needed, Dr. Bea's introductory descriptions supply it. He introduces his report by stating that it "contains additional information I have developed since I submitted by Expert report on February 1, 2012, regarding my forensic engineering findings, opinions and conclusions relative to the causes of the two breaches (North and South Breach) that occurred … during Hurricane Katrina." By contrast, in the next sentence he states that the remainder "also summarizes results from my initial review of the Defense Expert Reports." Both the structure of this new report and the description of its contents leaves no room for doubt that the rebuttal begins on page 54 and not before.

    The substance of Dr. Bea's report bear out that his own introduction accurately describes the contents of the first 53 pages of his report; it sets forth new analyses intended to support the opinions in his first expert report. The "Additional Analyses" section opens with new Geographic Information System (GIS) models that "were developed based on the EBIA Lock Expansion Site Clearing Project." Bea

4/3/12 Report at 3, ¶ 5. "These 3D GIS graphic models detail the general aggregate extents [sic] of the excavation work—location, aerial extent, depth, and general type of backfill."[1] *Id.* at 4, ¶ 6. Dr. Bea labels the three GIS figures "EBIA Swiss Cheese Excavations and Backfill," a clear reference to the assertion in his initial report that "the surface soils of the EBIA became like Swiss cheeze" [sic].  Bea 2/1/12 Report 52, ¶ 53. (Ex. 2). "The intent of these [new] 3D graphic models is to show depths of excavations relative to the local ground elevation associated with the excavation." Bea 4/3/12 Report 4, ¶ 7. They "detail the general aggregate extents of the excavation work—location, aerial extent, depth, and general type of backfill." *Id.* ¶ 6. He concludes his discussion of the new GIS by explaining that "[m]y interpretation of the Swiss Cheese GIS EBIA excavation and site clearing activities is that there exists a very high correlation of these activities with the local features identified in my Expert Report . . . ." *Id.* 7, ¶ 17. The new GIS and the "interpretation" of it should be stricken in their entirety, as they are intended to buttress opinions set forth in the initial report, not rebut opinions expressed by the defendants' experts.

The new GIS discussion fills the first 15 of 53 pages of new material intended to support the opinions in Dr. Bea's initial report. The next 22 pages attempts to

---

[1] This new GIS apparently supplements the GIS that Dr. Bea relied on in preparing his first report. Bea 2/1/12 Report, App. C, at 24. At his deposition Dr. Bea stated that the GIS was not created by the plaintiffs' testifying GIS expert, Chad Morris, but by someone who he had not even met and whose name he did not know.  Bea 3/27/12 Deposition (Ex. 3) 236:1–26.

validate his conclusion that "the '*Steady Flow*' hydraulic conductivity pressure analyses results . . . provide acceptably accurate results to use in Forensic Engineering evaluations . . . ." *Id.* 37, ¶ 45. But as Dr. Bea points out in the very first paragraph of this section, "[t]he hydraulic conductivity analyses [were] summarized in my February 1, 2012 Expert Report and  . . . documented in Appendix D of the Bea Expert Report . . . ."  Pages 16 to 38 should also be stricken as improper supplementation of the initial report.

The third section of the "rebuttal report" likewise should be stricken, as it merely elaborates and expands the standard-of-care opinions expressed in the initial report. Here, again, the plain language of this section shows that this is not rebuttal but mere expansion of a topic inadequately set forth in the first report. Paragraph 47, which opens the discussion following a recitation of the "Engineers' Creed," posits that "[a]ny analysis of the standard of care must begin with an understanding of the fundamental principles of the scientific method."  A footnote directs the reader not to any of the defendants' expert reports but to "my February 1, 2012 Expert Report that addresses application fo the scientific method in my Forensic Engineering causation analyses" (capitalization as in original). The succeeding 27 paragraphs merely elaborate Dr. Bea's opinion that WGI did not meet the standard of care. No mention is made of the defendants' experts or their opinions.  The time and place for this discussion was the February 1 report.  It is untimely and improper here.

7

Thus, it is clear, that Dr. Bea presents new analyses and opinions intended to extend the opinions previously expressed. This is exactly what that the courts rejected in *D'Andrea Bros* and *Noffsinger*. This new material is not permissible in a rebuttal report. *See D'Andrea Bros.*, 2012 WL 644010 at *4; *D.G. v. Henry*, No. 08-cv-74, 2011 WL 2881461 at * 1 (N.D. Okla. July 15, 2011) ("additional expert evidence Plaintiffs seek to add is more properly viewed as strengthening or bolstering the testimony of Plaintiffs' own experts"). Dr. Bea should not be allowed to "offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *See Noffsinger*, 2011 WL 9795 at *6.  A rebuttal report cannot be used to fill the holes in Dr. Bea's first expert report.

The time for experts to make substantive conclusions has passed. (Doc. 20592). The plaintiffs have violated this Court's scheduling order by offering a "rebuttal" report that is not "intended solely to contradict or rebut evidence on the same subject matter identified by another party."  Fed. R. Civ. P. 26(a)(2)(D)(ii).

These four factors determining whether to strike evidence are met here. First, Dr. Bea offers no explanation as to why he could not set forth this new GIS in his first report. Indeed, it is befuddling why Dr. Bea would rely such new analyses this late into the discovery process when he already had the aid of GIS information and opinions conducted by Plaintiffs' own testifying GIS expert, Mr. Morris. Nor is their any explanation as to why Dr. Bea could not have included, in his first expert report, the additional analyses he presents in the first 53 pages of his "rebuttal" report.  No argument can be made that his standard-of-care analyses could not be

set forth within the Court's schedule. Nor can there be any justification for attempting to prop up his "steady flow" opinions with conclusions "substantiated by the guidelines published by the USACE during 2011." Bea 4/3/12 Report 37, ¶ 45.

Second, allowing Dr. Bea's additional analyses and opinions will be highly prejudicial to Defendants. The "purpose of Rule 26(a)(2) is to eliminate unfair surprise to the opposing party." *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160,167 (D.C. Cir. 2007). Little more than a fortnight before the close of all discovery, Dr. Bea has now produced new analyses and opinions on the issues of causation and negligence. For the first time he adduces GIS data not contained within Plaintiffs' GIS report, but conducted by an unnamed person, someone who, unlike Mr. Morris, the testifying expert, will not be made available for cross-examination. This prejudice is amplified by the tight schedule under which the parties must complete discovery. No time remains for the defendants' experts to address these new analyses and opinions in a systematic way. Their experts have submitted their reports, and the calendar does not allow time for them to submit their own rebuttal of Dr. Bea's newly expressed analyses and opinions. Moreover, *Daubert* motions are due at the end of the month, severely limiting the defendants' ability to address Dr. Bea's untimely new opinions.

The procedural protections that allowed Defendants to assess Plaintiffs' GIS data and any conclusions drawn from it have vanished—Dr. Bea appears no longer to rely on Mr. Morris's GIS analyses. Reliance on the new GIS now appears to be paramount to his opinions on causation. It is prejudicial for the new causation and

9

negligence analyses to be foisted on the Defendants this late in the game. Defendants simply cannot digest entirely new analyses and mount a *Daubert* challenge in the two weeks they have to do so. The rules governing expert disclosures are designed to prevent exactly this type of surprise.

   Third, this Court has made clear that there is no possibility of a continuance. As the court has reiterated, "the previously issued scheduling order, Record Doc. No. 20592, concerning expert disclosures and discovery will not be altered." 2/24/12 Minute Entry (Doc. 20661) (emphasis in original). To cure the above prejudices, any continuance would have to be lengthy. Defendants' experts would have to be given adequate time to examine and respond, by their own rebuttal reports, to Dr. Bea's new analyses. Time would have to be given to assess the accuracy and opinions of Plaintiffs' new GIS expert who now supplies crucial information on which Dr. Bea relies. And the *Daubert* schedule would have to be significantly pushed back to allow for all these extensions.

   This is all assuming that Dr. Bea does not produce any more analyses and opinion, which he now says he will: "I will submit to the Court to document the new important updated results from my ongoing forensic engineering analyses"; 4/2/12 Bea Rpt. at 55, ¶ 79; "I will include the results of this [new analysis] in a future report to the Court." *Id.* at 66, ¶ 66; "given the provision of additional time, I will complete and more thoroughly document the results from my analyses."*Id.* at 106, ¶ 142. Any future analyses of Dr. Bea would start the cycle all over again, and expert discovery would continue *ad infinitum*. But as the Civil Rules provide, and this

...

Court has recognized in its scheduling order, the parties are entitled to final opinions from expert witnesses.

Even assuming Dr. Bea does not write another word, the submission of 53 pages of new analyses and opinions thwarts the orderly conduct of discovery set forth in the Court's scheduling orders. Allowing the "rebuttal report" to stand as submitted would certainly require an enlargement of the existing deadlines—something that neither the Court nor the parties desire. The Court should enforce the scheduling orders and strike the non-rebuttal portions of Dr. Bea's "rebuttal" report.

Fourth, although Dr. Bea's new conclusions address the central issue of causation, it is not as if striking these new conclusions will leave Plaintiffs without a causation theory—Dr. Bea opined as to causation in his first report. Thus, striking the new opinions simply returns the parties to the *status quo ante*; all experts' initial opinions remain as they were. Furthermore, striking the first section of Dr. Bea's report does not affect his ability to rebut Defendants' expert reports.

## Conclusion

Unlike a Victorian author, Dr. Bea's expert report cannot be serialized—he cannot substantively add to his prior analyses, create new opinions, nor foreshadow of more to come. The deadline for all of Dr. Bea's substantive opinions has passed. He cannot add new analyses in his rebuttal report that he should have included before. Under the Court's deadlines, the prejudice to defendants is incurable and Dr. Bea's new analyses and opinions should be stricken from his rebuttal report.

        Respectfully submitted,

        STUART F. DELERY
        Acting Assistant Attorney General

        PHYLLIS J. PYLES
        Director, Torts Branch

        JAMES G. TOUHEY, JR.
        Assistant Director, Torts Branch

        ROBIN D. SMITH
        Senior Trial Attorney

         s/ John A. Woodcock
        JOHN A. WOODCOCK
        Trial Attorney, Torts Branch, Civil Division
        U.S. Department of Justice
        Benjamin Franklin Station, P.O. Box 888
        Washington, D.C.  20044
        (202) 616-4400/ (202) 616-5200 (Fax)

        Attorneys for the United States

Dated: April 6, 2012

**CERTIFICATE OF SERVICE**

    I, John A. Woodcock, hereby certify that on April 6, 2012, I served a true copy of the foregoing upon all parties by ECF. Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic-filing system. Parties may access this filing through the Court's system.

                                                     s/ John A. Woodcock
                                                     JOHN A. WOODCOCK