**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE KATRINA CANAL BREACHES                    CIVIL ACTION
CONSOLIDATED LITIGATION
                                                                NO. 05-4182

PERTAINS TO:                                            SECTION "K"(2)
   *Armstrong*, C.A. No. 10-866


Before the Court is Defendant Washington Group International, Inc.'s Motion to Exclude

Evidence Regarding Economic Loss Claims (Doc. 20611).  It seeks to exclude evidence

pertaining to the economic loss claims of plaintiffs Fred Holmes, Jeneen Holmes[1] and Jeannine

Armstrong as irrelevant.   In essence, Washington Group International, Inc. ("WGI") contends

that since the economic loss claims do not arise from damage to these plaintiffs' property or

persons, they are precluded from recovering these damages by the "economic-loss rule" and thus

any evidence relating to these claims is not probative as to any fact or issue that is to be

determined by the Court in trial. (Doc. 20611-1 at 1).

Plaintiffs maintain that they have indeed stated a claim for damages sustained as a direct

consequence of the devastation of their homes and that the ultimate value of these claims

requires the court to assess and valuate their pre- and post-Katrina comparative earnings.  As

such, plaintiffs contend that this motion should be denied as procedurally inappropriate and

should be treated as a Motion to Dismiss under Rule 12(b)(6).  Furthermore, plaintiffs argue that

the damages sought are foreseeable and should not be excluded or eliminated from the Court's

consideration at trial.

---

[1] Apparently, Jeneen Holmes is referred to as a plaintiff; however, Mrs. Holmes has never been added as a party to this litigation. See Doc. 20611, Motion to Exclude, n.2.

**Background**

On August 28, 2005, Mr. and Mrs. Holmes resided at 1250 Perrin Drive, Arabi, Louisiana, 70032.  Mr. Holmes was employed as an office supply manager at the University of New Orleans ("UNO").   Mrs. Holmes worked at Delgado Community College ("Delgado"). Their home was destroyed in the aftermath of Katrina.  They were allowed to continue their respective jobs from their temporary home in Houston, Texas.  Plaintiffs testified that they applied for a FEMA trailer using three different methods but were never availed of one.

In January of 2006, both employers demanded that each either return to New Orleans or lose their respective positions.  UNO informed Mr. Holmes that as a condition of his employment, he would have to return to work at its campus in New Orleans.  Likewise, Delgado informed Mrs. Holmes that she needed to return to work at its campus as a condition of her employment.   Claiming to not be able to find adequate housing in the devastated area, they did not return and both were terminated.  The Holmes maintain that the reason they were furloughed was due to the fact that they were not able to move back home.

The Holmes relocated to Houston and sold their Louisiana home through the Road Home program.  They are now both employed at Rice University. Plaintiffs maintain that these facts go to the assessment of the value of their claims–mitigation and the like–not whether such damages are recoverable as a matter of law as WGI contends.

Jeannine Armstrong was employed by Universal Health Services, Inc. as a registered nurse at Chalmette Medical Center.  On August 29, 2005, her Chalmette residence was damaged and made uninhabitable by the effects of Katrina as well.  The Chalmette Medical Center was likewise damaged and has not reopened.

The Armstrongs lived for a month in Baton Rouge,  in Prairieville for two months, and then lived in Gonzales for approximately six months until June of 2006.  Mr. Armstrong was able to maintain his job by commuting to Metairie during this time period; however, Mrs. Armstrong "was reluctant to obtain employment, as she knew her living situation was temporary and had no idea where she would be in another six months."  (Doc. 20656 at 10 citing Exhibit C at 48:12-19).

 After moving to various temporary locations, the Armstrong family moved to Covington, Louisiana in June of 2006.  Shortly thereafter, Mrs. Armstrong had an illness which prevented her from returning to work until the summer of 2007.  In August of 2007, she began work at Houma Outpatient Surgery Center and has continued there to the present.  She stated in her deposition that she wanted to work part-time because she has only one child that is at home, but that there is not a full-time position available if she wanted to work full-time. (Doc. 20611-2 Exh. A at 50-51).

Based on all of this deposition testimony, Dr. G. Randolph Rice has calculated and produced reports concerning  the present value of both the Holmes and Mrs. Armstrong's economic losses and diminished earning capacity.  For the Holmes, it includes lost wages and retirement benefits they would have received over their work-lives had they returned to their respective employers in January.  Likewise as to Mrs. Armstrong, he has calculated her damages as the wages and retirement benefits she would have received over her work-life had she continued to be employed at Chalmette Medical Center.

**Standard of Review**

WGI seeks to exclude Dr. Rice's testimony, opinion and all evidence regarding all three plaintiffs' alleged economic losses based on WGI's contention that such testimony is irrelevant under Fed. R. Evid. 402 as a plaintiff may not recover economic losses when the alleged damage did not arise from injury to the plaintiff's person or property. The lynchpin of this relevance inquiry is whether these economic claims for damages are recoverable as embodied in the "economic-loss rule."

As noted in the seminal case, *PPG Indus., Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984), Louisiana courts in the past used a mechanical *per se* approach which depended on a claimant having some proprietary interest in the damaged property in order to recover indirect economic losses caused by a negligent injury to property that interfered with a contractual relation. *Id.* at 1060. However, in the *PPG* decision, the Supreme Court for the State of Louisiana found that such a bright-line approach was not appropriate. Instead, a duty-risk analysis must be employed to make this determination. *See also Phillips v. G&H Seed Co.*, ___ So.3d ___, 2012 WL 716193, *6 (La. App. 3rd Cir. March 7, 2012) (duty-risk analysis, rather than the per se exclusionary/proprietary interest rule must be applied by district court to determine the scope and extent of duties of insecticide marketer and sellers of rice seed to crawfish buyers, processors and resellers  harmed when defendants' actions allegedly caused the destruction of the 1999-2000 farm-raised  crawfish crop). As the Louisiana Supreme Court stated in *PPG*:

> Rules of conduct are designed to protect *some* persons under *some* circumstances against *some* risks. Malone, *Ruminations on Cause-in-Fact,* 9 Stan. L. Rev. 60 (1956). Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of

injury, and the loss sought to be recovered. *Hill v. Lundin & Assoc., Inc.* 260 La. 542, 256 So.2d 620 (1972) A judge, when determining whether the interest of the party seeking recovery of damage is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in terms of the moral, social and economic values involved, as well as with a view toward the ideal of justice. See *Entrevia v. Hood*, 427 So.2d 1146 (La. 1983).

*PPG*, 447 So.2d at 1061.

In the *PPG* case, the Supreme Court found that damages to the economic interest of a customer caused by a dredging contractor's negligent injury to a pipeline which prevented the pipeline owner's performance of contract to supply natural gas to that customer did not fall within the scope of protection intended by the law's imposition of a duty on dredging contractors not to damage pipelines negligently.   The court stated:

> There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by Texaco because of the damage to its property.  As noted however, a rule of law is seldom intended to protect *every* person against *every* risk.  It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner.  It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer and economic loss.

*Id.* The court also reasoned that imposition of that kind of responsibility on the tortfeasor could create liability "'in an indeterminate amount for an indeterminate time to an indeterminate class.'" *Id.* citing *Ultramares Corp. v. Touche* 225 N.Y. 170, 179, 174 N.E. 441, 444 (1931).

As this Court noted in *Anderson v. T&D Machine Handling, Inc.*, 1996 WL 684449 (E.D.La. Nov. 22, 1996), when confronted with a similar inquiry:

In *Babin v. Texaco, Inc.*, the defendant drilling company pierced the shaft of a salt mine causing it to flood.  449 So.2d 718 (La. App. 3d Cir.), *writ denied*, 456 So.2d 165 (La. 1984).  The employees of the mine, who were laid off as a result of the flood, sued for loss of income, retirement benefits, and fringe benefits.  *Id.* at 719.  Citing *PPG*, the court held that the defendant's duty to avoid damage to another party's property did not encompass the risk that the party's employees might be laid off and lose wages as a result of that defendant's negligence.  *Id.* at 720.  The plaintiffs attempt to distinguish their action as negligent interference with the contractual relationship was rejected.  *Id.*  at 720.  The court stated:

> As we read the Supreme Court decision in *PPG*, it is based purely on the policy consideration under a duty-risk analysis that the damages to the economic interest of a contract purchaser of natural gas did not fall with the scope of protection intended by the laws' imposition of a duty.

*Id.*

*Anderson* at *2.  This Court in the *Anderson* found that as a matter of law, employee plaintiffs could not recover for indirect consequential damages under a duty-risk analysis because the economic loss resulting from a reduction in sales was not within the scope of the defendant's duty to operate a forklift in a non-negligent manner when the defendant  was replacing equipment at the injured business.

In *Wiltz v. Bayer Cropscience, Limited Partnership*, 645 F.3d 690 (5th Cir. 2011), the Fifth Circuit applied the Louisiana Supreme Court's approach in *PPG* .  In *Wiltz*, defendant Bayer's product  had allegedly destroyed the crawfish crop owned by crawfish farmers in 1999-2000 season, and that as a result, the farmers were unable to supply crawfish to the plaintiff crawfish buyers/processors.  Those plaintiffs sued for their loss.  The Fifth Circuit upheld the district court's dismissal of those claims on summary judgment as it found that plaintiffs had suffered purely economic losses that are not recoverable in tort based on its interpretation and application of *PPG*'s duty-risk analysis.

In the case at bar, while the "property" allegedly harmed by WGI were the homes owned by the three persons seeking the instant economic damages, the damages sought are not tied directly to the homes.  As such, there is no "ease of association" or the requisite "moral, social and economic values" involved to justify placing these damages within the duty owed to plaintiffs by WGI.  As to the Holmes plaintiffs, their employment contracts were not tied to or contingent upon plaintiffs' residence; there was nothing intrinsic to their home that was inextricably linked to the performance of their respective jobs.  Indeed, this claim is even more removed from the facts of *PPG* since at least there the pipeline was directly connected to Texaco's delivery of  the contracted-for gas.  In this instance, the only requirement for employment was that each of the Holmes needed to live close enough to work physically at UNO and Delgado respectively by January, 2006.  Plaintiffs' contention that because their homes were destroyed, they are entitled to pursue damages for the loss of their jobs and benefits due to the fact that they could not return to their homes in order to continue in the employ of their respective employers is simply too attenuated.

Thus, in the instance of the Holmes',  the employment contracts that were impaired have nothing to do with the Holmes' injured property other than the attenuated contention that the Holmeses could not find a place to live so as to be able to enjoy their respective employment contracts.  In the case of Jeannine Armstrong, the ease of association is even more attenuated given the fact that her place of employment did not ever reopen.  To find that WGI is responsible for lost wages and retirement benefits because of the destruction of these homes does not comport with an ease of association between the rule of conduct, the risk of injury, and the loss

sought to be recovered.   As such, the Court finds this evidence irrelevant, and all proof as to these damages shall be excluded.  Accordingly,

**IT IS ORDERED** that Defendant Washington Group International, Inc.'s Motion to Exclude Evidence Regarding Economic Loss Claims (Doc. 20611) is **GRANTED**.

New Orleans, Louisiana, this 10th day of April, 2012.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**