# E$^x$ponent®

*Civil Engineering*

**Katrina Canal Breaches
Standard of Care Review
Washington Group
International, Inc.**



tabbies® EXHIBIT 4

# Katrina Canal Breaches
# Standard of Care Review
# Washington Group International, Inc.

Prepared for

Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA 70130-3588

&

Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Prepared by

Exponent
9 Strathmore Road
Natick, MA 01760

March 9, 2012

© Exponent, Inc.

1104393.000 A0T0 0312 R017

> *down the buildings and pull out piles and remediate soil...They didn't hire us for engineering expertise on flood control.*

The lead Corps employees confirmed the fact that WGI did not provide geotechnical engineering services. Mr. Guillory agreed that the Corps never requested/required geotechnical support from WGI relating specifically to the levees and floodwalls of the EBIA.[118] He also did not recall any individual at WGI who was introduced as the project geotechnical engineer for Task Order #26.[119] Furthermore, he stated that he never specifically requested/required geotechnical support from WGI relating to the levees and floodwalls at the EBIA.[120] This was confirmed by Mr. Dicharry who testified that WGI was neither hired to provide input regarding stability or design of levees and floodwalls on the east bank nor were they expected to provide analysis and review regarding geotechnical stability of levees or floodwalls at the east bank.[121]

Therefore, in conclusion, the evaluation for Standard of Care for WGI must be based on its role as a general contractor performing demolition and environmental restoration work on a federal civil works project. WGI should not be held to the standard of care of a government contractor with geotechnical engineering duties relative to flood control or to the standard of care of a geotechnical engineering firm generally.

## Orleans Levee Board

OLD is required by the CFR to operate and maintain the levees and floodwalls constructed by the Corps.[122] In turn, the Operations Manager for Completed Works at NOD conducts an annual compliance inspection of OLD's operations and maintenance.[123] As part of its responsibilities, OLD administers a permit program for construction activities close to levees

---

[118] Deposition, L. Guillory, 8/22/2008: 55:18-56:5; 254:4-255:20.

[119] Deposition, L. Guillory, 6/30/2008: 85:7-11.

[120] Deposition, L. Guillory, 8/22/2008: 56:6-57:22.

[121] Deposition, G. Dicharry, 10/2/2008: 42:7-43:3.

[122] U.S. Government, 1944. Code of Federal Regulations, Corps of Engineers, Dept. of the Army, DoD, §208.10 of Title 33: "Local flood protection works; maintenance and operation of structures and facilities," pgs. 107-111.

[123] Deposition, G. Colletti, 3/10/2009 (in Barge litigation): 6:3-15.

a. The Corps used engineering judgment in the field to determine which technical items should be assessed by the Corps' Engineering Division.

b. Geotechnical assessments and evaluations were directed to, and made by, the Corps' Engineering Division for issues deemed important by the Corps' construction personnel.

c. WGI had no role or responsibility to provide geotechnical engineering services.

d. Engineering analysis of wall stability, seepage, and global stability are not mandatory for every excavation being made on the canal side of the levee. Rather, the Corps' policy is to assess each situation on a case-by-case basis.

e. There is no NOD policy that a formal engineering analysis is required for all excavations within 300 feet of the IHNC floodwall.

f. Guidance in Corps Engineer Manuals is not mandatory unless specifically stated as being mandatory. And, in any event, none of the Corps' EMs cited by Plaintiffs' experts were referenced in, or incorporated into the TERC or the Delivery Order for Task Order #26. Thus, from an engineering perspective, I see no reason why they would be applicable to WGI, as a TERC contractor on the project.

g. The Corps' field construction staff, including one or more of the COR, PM, PE, and Inspectors were present during all of the work performed by WGI.

h. The Corps' levee manual does not require that all fill used beyond the toe of a levee meet Category 1 (compacted fill) requirements.

25. Dr. Bea's approach of using inductive reasoning, which is the basis for his justification to assume that a 20-foot-deep excavation had been made at the toe of the levee precisely next to each breach, is inconsistent with the scientific method and, therefore, does not