# EXHIBIT 4

## <u>DECLARATION OF ROBERT G. BEA</u>

Robert G. Bea, under penalty of perjury, states as follows:

1.        This Declaration is submitted on behalf of the Plaintiffs in *Robinson v. United States*. As detailed below, this Declaration constitutes a summary of my review, and documentation of and responses (completed as of January 29, 2009) to the Defense's Expert Reports written by Mr. B. Ebersole, Dr. D. Resio, Dr. R. Mosher, and Dr. T. Wolff (cited Defense Expert Reports dated December 2008). My Declaration relates to the studies conducted to evaluate performance of the man-made flood protection structures along Reach 2 of the Mississippi River Gulf Outlet (MR-GO) and at the portion of the MR-GO Reach 1 adjacent to the Lower 9th Ward. This performance has been evaluated for two sets of Hurricane Katrina environmental conditions (surge, waves, currents): 1) the 'MR-GO As Was' conditions, and 2) the 'MR-GO Neutral' ("do no harm") conditions. I incorporate by reference here all previous Declarations and Expert Reports I have prepared for the Plaintiffs in *Robinson v. United States*. If called to testify, I could and would testify competently as follows:

2.        My Declaration is divided into four sections. Section I provides an overview of my analyses of the major issues raised in the cited Defense Expert Reports and discussed herein. Section II provides a summary of my responses to the cited Defense Experts analyses of the work contained in my previous Declarations and Expert Reports pertaining to analyses of the performance of the hurricane flood protection structures along Reach 2 of the MR-GO that developed during Hurricane Katrina (As Was and conditions; Scenarios 1 and 2C, respectively). Section III provides a summary of my responses to the cited Defense Expert's analyses of the work documented in my previous Declarations and Expert Reports pertaining

181.   Returning to the permeability characterizations applied in my studies of the breaches at the Lower 9th Ward, contrary to statements made by the cited Defense Experts, we did not base our results on a horizontal insitu permeability of $10^{-2}$ cm/sec. Our analyses were based on a much wider range in horizontal 'free field' (removed from overburden effects of soil levee component of the flood protection structure) permeabilities – $10^{-2}$ to $10^{-6}$ cm/sec (range of values between the 'lower bound' and 'higher bound' values). The vertical permeabilities were defined as a factor of 10 smaller than these values to recognize the layering characteristics found in samples of these soils during the ILIT studies. We reduced both vertical and horizontal permeabilities by a factor of 10 in the area under the soil levee that comprised part of the flood protection structure to recognize the overburden pressures effects developed by the levee.

182.   The Defense Experts correctly observed that in my July 2008 Expert Report, I presented detailed results that referenced the seepage results associated with a 'best estimate' 'free-field' insitu horizontal permeability of $10^{-3}$ cm/sec. I analyzed the effects of the potential ranges in these results using a formal reliability based analysis of the Type I uncertainties (natural variabilities) of the soil properties. Details of these analyses are included as an appendix in my July 2008 Expert Report Technical Report (III). Most important, we based all of the stability analyses Factors of Safety on similar reliability based analyses that incorporated explicit analyses of the Type I uncertainties associated with the soil characteristics. The Factors of Safety that are portrayed are those based on the Mean Factors of Safety that were defined as a result of these analyses. The detailed analyses also resulted in definition of the uncertainties associated with the calculated Factors of Safety.

conclusions and opinions can only be resolved when the differences in 'inputs' conditions and characteristics and analytical methods used to evaluate and assess performance characteristics of the flood protection structures – the 'outputs' are resolved.

206.    My analyses, evaluations, assessments and conclusions have been based on reviews I made of the information provided in the cited Defense Expert Reports and supporting documentation during the period December 29 through January 13, 2009.  The 12 working days available for these reviews, development of responses, and the documentation contained in this Declaration have not permitted a complete evaluation of either the contents of the cited Expert Reports nor preparation of a complete response to the contents of these Expert Reports.  Consequently, I reserve the right to modify my analyses, evaluations, assessments, and conclusions as more time is provided to develop and document these elements and in the case that new or additional information becomes available in the future.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2009 in Moraga, California.

Robert Bea, Ph.D, PE