# EXHIBIT 38

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES * CIVIL ACTION
CONSOLIDATED LITIGATION      * NO. 05-4182
                             * Consolidated
PERTAINS TO: MRGO            * SECTION K(2)
                             *
Armstrong, No. 10-866        * JUDGE DUVAL
                             * MAG. WILKINSON
* * * * * * * * * * * * * * * *

          Deposition of THOMAS L. BRANDON,
Ph.D., P.E., taken in the above-entitled
cause, pursuant to the following stipulation,
before Dawn H. Hymel, Certified Court
Reporter, at the offices of Bruno & Bruno, 855
Baronne Street, New Orleans, Louisiana, on
Friday, the 13th of April, 2012, commencing at
9:21 a.m.

Page 2

 1   APPEARANCES:
 2   Appearing on Behalf of Plaintiffs:
 3      O'DONNELL & ASSOCIATES, PC
        BY:  ANDREW P. OWEN, ESQ.
 4      800 Wilshire Boulevard
        Suite 500
 5      Los Angeles, California 90017
             -and-
 6      BARON & BUDD, P.C.
        BY:  THOMAS SIMS, ESQ.
 7      701 Brazos Street
        Suite 500
 8      Austin, Texas 78701-3232
             -and-
 9      LEWIS SCOTT JOANEN, ESQ.
        4905 Freret Street
10      Suite B
        New Orleans, Louisiana 70115
11           -and-
        DOMENGEAUX WRIGHT ROY & EDWARDS, LLC
12      BY:  ELWOOD C. STEVENS, JR., ESQ.
        556 Jefferson Street
13      Suite 500
        Lafayette, Louisiana 70501
14
15   Appearing on Behalf of the United States of
     American through its agency, U.S. Army Corps
16   of Engineers:
17      UNITED STATES OF AMERICA
        BY:  ROBIN D. SMITH, ESQ.
18      Benjamin Franklin Station
        P.O. Box 888
19      Washington, D.C. 20004
20
     Appearing on Behalf of Washington Group
21   International:
22      STONE, PIGMAN, WALTHER, WITTMANN L.L.C.
        BY:  JAMES C. GULOTTA, JR., ESQ.
23          HEATHER LONIAN, ESQ.
            WILLIAM D. TREEBY, ESQ.
24      546 Carondelet Street
        New Orleans, Louisiana 70130
25

Page 3

 1   ALSO PRESENT:
 2      FRANCISCO SILVA-TULLA, Sc.D., P.E.
 3
 4   REPORTED BY:
 5      DAWN H. HYMEL
        Certified Court Reporter #81016

Page 4

 1               I N D E X
 2                                    PAGE
 3   EXAMINATION BY:
 4      Mr. Owen                         5
 5
 6          E X H I B I T S
 7
 8   Brandon 1  Resume' of Thomas L
                Brandon, Ph.D., P.E.      8
 9
     Brandon 2  3/9/2012 Technical Report of
10              Dr. Thomas L. Brandon, P.E.   17
11   Brandon 3  Appendix 11, Analysis of
                Performance of the Inner
12              Harbor Navigation Canal    34
13   Brandon 4  Chapter Six:  The St.
                Bernard and Lower Ninth
14              Ward Protected Area        40
15   Brandon 5  Expert Report of Joseph
                B. Dunbar, Ph.D., RPG      56
16
     Brandon 6  Excerpt from Dr. Marr's
17              Report                    92
18   Brandon 7  Excerpt from Dr. Marr's
                Report                    94
19
     Brandon 8  Boring Logs              104
20
     Brandon 9  Appendix B, Development of
21              Lower 9th Ward Floodwall
                Analysis Cross Sections  119
22
     Brandon 10 Discussions and Closures 158
23
     Brandon 11 Circular No. 1110-2-6066  173
24
     Brandon 12 Rebuttal Report of Robert
25              Glenn Bea, Ph.D., P.E.   207

Page 229

1  pressure, and that's a common -- That's
2  actually the crux of an undrained strength
3  analysis for stability is relating changes in
4  pore pressure to changes in total stress.
5       But I guess, so there's two issues here:
6  One, the analysis given us doesn't match this
7  analysis right here; and two, this phenomena
8  can be explained with simple soil mechanics.
9  You don't have to have this.
10      There's actually some other issues with
11 this analysis, too.  If you compare his
12 hydraulic boundary conditions with every other
13 seepage analysis he's got, he's moved this
14 boundary in about 800 feet, and that's odd,
15 because --
16 Q.  Which boundary?  I'm sorry.
17 A.  The vertical Y boundary.
18 Q.  Okay.
19 A.  On all the other ones from the I-wall,
20 that boundary is 1,000 to 1,500 feet, it's
21 only a matter of a hundred feet or so, I guess
22 it's at 340 on this diagram here, so that's a
23 big difference in his results.
24      Another thing he does is, to make sure
25 that this pressure is transmitted quickly, he

Page 230

1  uses a compressibility of zero, which would be
2  the center of a neutron star, for the buried
3  swamp material, which makes this pressure felt
4  quicker, and that's contained in the data
5  file, so I have a lot of issues with the way
6  he did that analysis there.
7  Q.  Okay.  Is there anything to make in terms
8  of -- Or what conclusions do you draw, if any,
9  between the close connection between the rise
10 in the IHNC floodwaters and the readings, and
11 the simultaneous reaction of the piezometers
12 in the EBIA area?
13 A.  It's my opinion that it's just a
14 reflection of the change in total stress due
15 to the water being on the ground surface, and
16 then, after a certain level, you flood your
17 piezometer, and the way these electronic
18 piezometers work, you have to have a vent
19 tube.  It's a diaphragm that measures
20 differential pressure, and it's got to be
21 vented to atmosphere to measure correctly, and
22 so once you've ponded water over these things,
23 I forget what the top of the thing is, six
24 feet or something, then the readings get wacky
25 anyway because you're losing your atmospheric

Page 231

1  vent.  But to me, it seems simple is that
2  you've increased your vertical stress, there's
3  a pore pressure parameter we use called B bar
4  where it means the change in pore pressure is
5  equal to the change in vertical stress times B
6  bar, and it explains that increase in pore
7  pressure.  I don't think it's any sign at all
8  of a hydraulic connection.
9  Q.  Okay.
10 A.  Well, but I do say that he added a
11 hypothetical hydraulic connection in his data
12 files that's not shown on this report.
13 Q.  Okay.  And is there any specific data
14 file that you can recall?
15 A.  It's in -- It's in his -- On his reliance
16 material, it's under modeling under PZ-3.
17 Q.  Under PZ-3.
18 A.  I think there's only one file, frankly,
19 that he's got for PZ-3 and you can find it
20 there.  All you have to do, it's all SLOPE/W
21 files, so double click on it and you'll see
22 it.
23 Q.  Okay.  Let me ask you this:  Are flow
24 volume and hydraulic pressures different
25 things?

Page 232

1  A.  Yes.
2  Q.  Okay.  Can you explain the difference to
3  me?
4  A.  A volume's in units of -- A flow volume
5  normally is represented by Q and it's units of
6  volume per time, like gallons per minute is a
7  thing.
8  Q.  Right.
9  A.  Pressure is in pounds per square foot or
10 psi or kilopascals or something like that, so
11 they're completely different things.
12 Q.  Is it your opinion that Dr. Bea's
13 analyses are only concerned with flow volume?
14 A.  No, my opinion is is that he's completely
15 ignored flow volume in almost everything he's
16 submitted since 2008 when that's an output
17 from CW.  I mean, every time you calculate
18 pressures, you calculate flow volumes.  He's
19 got minuscule flow volumes.  You could have
20 been on the flood side and the material that
21 flowed under the levee you could have bailed
22 with a coffee cup in real-time based on the
23 flow volumes that he calculates from his
24 analysis, but he never reports flow volumes in
25 his analysis.

Page 269

1  looking at it.  And Dave being a geologist,
2  they like to look at things, and -- But I
3  think, even now, having ability to look at
4  that data, he might want to change some of his
5  conclusions about the makeup of the EBIA and
6  also these hydraulic connection conclusions
7  he's got.
8  Q.  Okay.  Is it more valuable pulling out
9  the soil that you just described, is that more
10 valuable looking at it, you know, in the field
11 versus looking at it in a lab?
12 A.  Well, we actually look at it in the lab.
13 We take a big tube sample, you know, it's five
14 inches in diameter, it's 54 inches long, but
15 it's got 48 inches of soil in it, and we take
16 it back to the lab and then we extrude it, and
17 it's just sitting out there in front of us,
18 and we lop it off into four one-foot pieces
19 and take pictures of it.  But just looking at
20 the soil as it comes out of the ground is
21 invaluable, particularly when you're looking
22 at, you know, drained versus undrained
23 behavior and coming up with assessments of
24 probable permeabilities.
25 Q.  Okay.  Okay.  Why don't we take a brief

Page 270

1  break and I'll come back to see if there's
2  anything, any more questions to wrap up.  Is
3  that fair?
4  A.  Sure.
5     MR. OWEN:
6        Okay.  Off the record.
7        (A recess was taken from 4:07-
8  4:14).
9     MR. OWEN:
10       Back on the record.
11 BY MR. OWEN:
12 Q.  Okay.  Dr. Brandon, last question is, are
13 there any answers that you gave today that you
14 would like to change or supplement?
15 A.  No.
16    MR. OWEN:
17       Okay.  Then we're done.
18       (Whereupon, the deposition concluded
19 at 4:15 p.m.)

Page 271

WITNESS' CERTIFICATE

    I, THOMAS L. BRANDON, Ph.D., P.E., do
hereby certify that the foregoing testimony
was given by me, and that the transcription of
said testimony, with corrections and/or
changes, if any, is true and correct as given
by me on the aforementioned date.

_____      _____
DATE SIGNED               SIGNATURE

_____Signed with corrections as noted.

_____Signed with no corrections noted.

DATE TAKEN:  April 13, 2012

Page 272

C E R T I F I C A T E

    This certification is valid only for a
transcript accompanied by my original
signature and original blue stamp on this
page.
    I, Dawn H. Hymel, Certified Court Reporter
in and for the State of Louisiana, as the
officer before whom this testimony was taken,
do hereby certify that THOMAS L. BRANDON,
Ph.D., P.E., after having been duly sworn by
me upon authority of R.S. 37:2554, did testify
as set forth in the foregoing 270 pages; that
this testimony was prepared and transcribed by
me or under my personal direction and
supervision; and is a true and correct
transcript to the best of my ability and
understanding; that I am not related to
counsel or to the parties herein, nor am I
otherwise interested in the outcome of this
matter.

                    _____
                    DAWN H. HYMEL, #81016
                    Certified Court Reporter