UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: MRGO | * | |
| *Armstrong*, No. 10-866 | * | SECTION "K"(2) |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF SCOTT TAYLOR**

**NOW INTO COURT**, through undersigned counsel, come the Armstrong Plaintiffs, who in opposition to Defendant, Washington Group International, Inc.'s, Motions to Exclude Testimony and Opinions of Scott Taylor (Rec. Doc. 20819), do state as follows:

**I.   INTRODUCTION**

With the Court's consent, the parties prior to trial in the related Katrina Litigation known as the *Robinson* case wisely agreed to defer all *Daubert* challenges to the merits and simply have the court evaluate and adopt or reject proffered expert testimony based upon a full evidentiary record.  The insight in entering into this logical deferment of the *Daubert* challenges was further strengthened by the opinion in the related Katrina Litigation known as the *Barge* case in which this Court opined that the *Daubert* motions filed by defendants, "for the most part, appear to be an outrageous expenditure of time, effort and expense, in the context of a non-jury, judge-tried case such as this one." *In re Katrina Canal Breaches Consol. Litigation,* 2010 WL 199843, at 1 (E.D. La. 2010).  It is unfortunate that defendant in the case now at bar has refused the wisdom of the parties in *Robinson* in favor of judicial inefficiency.

1

As a general rule, in determining the reliability of an expert's opinion at a *Daubert* hearing, the factual basis for the opinion goes to the credibility of the testimony, not its admissibility. Under such circumstances, it is up to the opposing party to examine the factual basis of each opinion in cross-examination of the experts. This is precisely why all *Daubert* challenges were deferred to the merits in *Robinson.*

## II.    BACKGROUND

Scott Taylor, a damages expert with vast experience as an adjustor and appraiser of damages to property, was asked to provide a report for each Plaintiff regarding damages attributable to flood waters following Hurricane Katrina. In each of his reports, Mr. Taylor included an estimate of replacement or repair cost for the structure, a value for damage to contents and a value for additional living expenses.

Here, Scott Taylor employed similar analytical steps in his assessment and evaluation of damages to those he used in reaching his expert opinion in *Robinson*, including but not limited to:

1. Inspecting sites;
2. Reviewing photographs of the residence (both exterior and interior where available) prior to and after Katrina;
3. Speaking to plaintiff's concerning damages to their homes, contents and their additional living expenses;
4. Creating drawings of residences – based on inspections of the properties, his review of photographs, and interviews with plaintiffs – depicting number of rooms, square footage, etc.;
5. Using standard insurance industry practices – including use of the Xactimate program – for valuation of damage to plaintiffs' homes;
6. Using standard insurance industry practices – including the Xactimate program – for valuation of contents based on a baseline percentage and lists of contents and values compiled by the homeowners; and
7. Using a twenty percent rule concerning additional living expenses.

Completed reports were provided by Mr. Taylor in July of 2011. These reports were then

2

revised in October of 2011, to correct some oversights and/or typographical errors that were made evident following Plaintiffs' depositions.  Then in April of 2012, Mr. Taylor provided rebuttal reports to Defendants' damages experts' reports that had been provided to Plaintiffs in March of 2012.[1]

Damages experts for Defendants, J.P. Du Plessis and Karl Schneider, provided similar reports, with J.P. Du Plessis giving testimony as to valuation of structural damage and Karl Schneider giving an opinion as to the value of damage to the contents and additional living expenses.  Although Plaintiffs find the defense damage experts to be lacking in qualification and disagree with the opinions provided by these experts concerning methodology and factual support, such arguments are appropriately made on cross-examination rather than in the form of a motion to exclude.  Accordingly, the arguments made in Defendant's Motion to Exclude Opinions and Testimony of Scott Taylor are little more than attacks on the factual basis upon which Mr. Taylor relies and are improperly brought before this court in the form of the current motion.  For these reasons, Defendant's Motion to Exclude Opinions and Testimony of Scott Taylor should be denied.

**III    LAW AND ARGUMENT**

As this Court recently noted: "*Daubert* requires a binary choice admit or exclude—and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves."  *In re Katrina Canal Breaches Consol. Litig. (Barge)*, 2010 WL 199843 at 1 (E.D. La. 2010) (quoting *Thompson v. Rowan Cos.*, 2007 WL 724646 at 1 (E.D. La. 2007)).  Likewise, "[c]ourts should not [be] lured by arguments

---

[1] WGI Exhibit 4 to Karl Schneider Deposition. WGI Exhibit 5 to Karl Schneider Deposition.  The attached emails signify an informal extension on the revised reports of JP Du Plessis and Jim Danner and Plaintiffs' rebuttal reports to same (Exh. 1).

disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility." *Id.* (quoting *General Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495590 at 4 (W.D. Tex. 2004)). *Daubert* challenges attacking the factual basis of an expert opinion, as here, generally go to weight, rather than admissibility, and are appropriately attacked by cross-examination rather than motion practice. *Id.* The Court's task here is only to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 113 S. Ct. 2786 (1993)).

This Court is familiar with the background facts of this case and with the facts particular to the claims brought against WGI and the USA. The Court is also familiar with and has accepted the opinions of Scott Taylor and the methodology by which he reached his opinions when it considered his testimony in *Robinson*. The Fifth Circuit in its holding in *Robinson* spoke glowingly of this Court's opinion -- which included its determination of damages -- in stating, "The district court's careful attention to the law and even more cautious scrutiny of complex facts allow us to uphold its expansive ruling in full…" *In re Canal Breaches Consol. Litig.*, 673 F.3d 381 (5th Cir. 2012).

**A.**   ***Daubert* motions should seldom be used in a bench trial and in the case at bar is a waste of judicial resources.**

This matter is set for a bench trial. Judge Barbier addressed *Daubert* motions and their use in bench trials in *Thompson v. Rowan Companies, Inc.*,:

4

"The purpose of a *Daubert* motion is to ensure that only reliable and relevant expert testimony is presented to the jury. *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir.1999) (superseded by rule on other grounds), *citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Thus, most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir.2000). *Daubert* requires a binary choice - admit or exclude - and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves. *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D.Ill.2003)."

*Thompson v. Rowan Companies, Inc.*, 06-3218, 2007 WL 724646 (E.D. La. 2007). Citing Judge Barbier's above reasoning for denying a *Daubert* motion, this Court stated, "these *Daubert* motions for the most part, appear to be an outrageous expenditure of time, effort and expense, in the context of a non-jury, judge-tried case such as this one." *In re Katrina Canal Breaches Consol. Litig.*, 05-4182, 2010 WL 199843 (E.D. La. 2010).

Defendant's *Daubert* motion should not be allowed to substitute for a thorough factual development by the parties and analysis of those facts by the trier of fact. Though such motions are founded in the court's authority to manage the order and efficiency of the trial set out generally in the Federal Rules,[2] this authority is most often exercised as a way of regulating the quality and quantity of evidence allowed to be presented to a; Jury.[3] Thus, as is the case here, *Daubert* motions are not appropriate when the judge is the trier of fact and where most of the issues are simply ***attacks on the underlying facts upon***

---

[2] Rule 16 of the Federal Rules of Civil Procedure implicitly recognizes in limine motions in federal courts. The rule provides the judge with pre-trail procedures for considering matters that will aid in the disposition of the action. (*See* "TO ARGUE IS HUMAN, TO EXCLUDE, DIVINE: THE ROLE OF MOTIONS IN LIMINE AND THE IMPORTANCE OF PRESERVING THE RECORD ON APPEAL", Jennifer M. Miller, 32 Am. J. Trial Advoc. 541, at page 543. (Exh. 2)

[3] The rules of evidence are also a foundation for the in limine motion. Federal Rule of Evidence 403, which provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." has been referenced as such a foundational pronouncement. *See* "TO ARGUE IS HUMAN, TO EXCLUDE, DIVINE: THE ROLE OF MOTIONS IN LIMINE AND THE IMPORTANCE OF PRESERVING THE RECORD ON APPEAL," Jennifer M. Miller, 32 Am. J. Trial Advoc. 541, at page 544. (Exh. 2)

*which the opinion is based.* In the case now before the court, the challenges – whether concerning typographical errors, oversights corrected or which allegedly need to be corrected – challenge underlying facts, not methodology, and therefore should not be considered for purposes of exclusion.

### B. Scott Taylor's methodology has previously been accepted by this court.

Prior qualification as an expert is a factor to be considered by the District Court when determining whether an expert's testimony should be allowed. *State v. Craig*, 699 So. 2d 865 (La. 1997), cert. denied, 522 US. 935, 118 S. Ct. 343, 139 L. Ed. 2d 266 (1997). This Court has previously accepted Scott Taylor's approach to determining damages using standard insurance industry practices for valuation of contents based on a baseline percentage and lists of contents and values compiled by the homeowners. *In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644 (E.D. La. 2009).

In *Robinson*, Mr. Taylor's testimony included valuation of plaintiffs' damages for the residence, contents, and additional living expenses. In accepting the methodology Mr. Taylor used to reach his opinions, this court called the methods "inherently imprecise," but cited to *Pete v. Trent*, 583 So. 2d 574 (La. App. 3d Cir. 1991), wherein the expert's valuation of damages, determined in the same method as Mr. Taylor's damage estimates, was admitted into evidence and submitted to the jury for a determination of damages. *Robinson*, 647 F. Supp. 2d 644.

Defendants in the *Barge* litigation cited above, made similar attacks concerning the factual basis upon which certain expert opinions relied. This Court stated, "[t]he vast majority of these motions were based on attacks concerning the underlying facts upon which each opinion was based. That approach is not contemplated under a *Daubert*

challenge." *In re Katrina Canal Breaches Consol. Litig.*, 05-4182, 2010 WL 199843 (E.D. La. 2010). "[T]he reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion. *See, Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 392-93 (5th Cir. 2002)." Id.; *General Electric Capital Business Asset funding Corp. v. S.A.S.E. Military Ltd.,* 2004 WL 5495590 at 4 (W.D.Tex. 2004). Defendant here is simply disguising its attack on the weight of Mr. Taylor's opinions with a veil of inadmissibility in hopes of excluding important testimony.

Given the nature of Plaintiffs' claims, the damages aspect of this case – like all other aspects – is inherently complex and imprecise. This Court took the complexity of the damages aspect of the case into account when it heard Mr. Taylor's testimony regarding his expert opinion on valuation of damages in *Robinson*. The Fifth Circuit in upholding *Robinson* agreed with this Court's determination of the credibility of Mr. Taylor's opinion. Mr. Taylor's testimony should likewise be considered during a full trial on the merits in the present case.

    **i.**    **Scott Taylor's methodology is relevant and reliable.**

Scott Taylor relied on his experience and training to determine the values of the homes destroyed in the flooding. Mr. Taylor is a licensed independent adjuster who has appraised thousands of properties,[4] and has taught courses in appraisal of property.[5] He has the skill, knowledge, and experience in appraising property and valuing damages

---

[4] Taylor Deposition, Page 20 (Exh. 3).
[5] Taylor Deposition, Pages 40-43 (Exh. 3).

necessary to be an expert in this matter, just as he was in *Robinson*.[6]  Furthermore, Mr. Taylor has vast experience concerning evaluation of Katrina related damages to homes and their contents. As stated above, Mr. Taylor relied on visits to the affected properties, photographs of the properties prior to the Hurricane and after the Hurricane, as well as conversations with the homeowners about the structure and materials of the properties to determine the value of the properties.[7] This information was entered into Xactimate, a program widely used by adjusters and appraisers to determine the precise cost of rebuilding and/or repairing the properties.[8] Scott Taylor engaged in the same level of intellectual rigor and employed the same level of professional skill, knowledge and experience that he and others in his field ordinarily apply in non-litigation related evaluations and assessments to determine the values of the homes and other expenses incurred by Plaintiffs herein. Therefore, his expert opinions and conclusions should be admitted at trial.

To determine the value of the contents of their properties, Mr. Taylor relied on the homeowners' descriptions and values of the contents of their homes at the time of the Hurricane for his ultimate valuation of the amount of damages,[9] just as he did in the *Robinson* case.[10]  A homeowner is qualified to give testimony as to the property's value. *LaCombe v. A-T-O, Inc*. 679 F.2d 431 (5th Cir. 1982). Accordingly, Mr. Taylor's valuations are reliable because he relied on the homeowner's list. The value of the contents by Scott Taylor should be admitted and left for the trier of fact to determine the

---

[6] "Test of competency of proffered expert testimony is whether the witness has such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. U.S. v. Collins, 395 F. Supp. 629 (M.D. Pa. 1975).
[7] Taylor Deposition, Page 91, 126-27 (Exh. 3).
[8] Taylor Deposition, Page 236 (Exh. 3).
[9] Taylor Deposition, Page 132-36(Exh. 3).
[10] In re Katrina Canal Breaches Consolidated Litigation
   (Robinson C.A. 06-2268) 647 F. Supp. 2d 644 (2009)

actual value of damages sustained by the Plaintiffs.

Calculation of Additional Living Expenses ("ALEs") is preferably based on actual expenses and receipts of the plaintiffs for their time and expenses away from their home.[11] However, when receipts are not available, standard practice in the industry is to use a baseline twenty percent of the plaintiff's property damage.[12] This method was used in *Robinson.* Since Mr. Taylor used a method widely accepted by the insurance and appraising industry, his testimony should be admitted into the record at trial.

Defendant also claims that Scott Taylor's reports are unreliable and inaccurate because he did not apply depreciation to the contents of the home. It is plaintiffs' claim that Replacement Cost Value is the appropriate measure for damages, rather than depreciation.[13] As it did in *Robinson*, this court can apply depreciation if it finds that depreciation is necessary, after all evidence is of record and analyzed in context.

### ii. Scott Taylor's testimony will assist the trier of fact in determining damages.

Expert testimony on damages is admissible when it will assist the trier of fact in understanding a contested issue. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176 (5th Cir. 1995). Scott Taylor's testimony will provide the trier of fact with a professionally calculated estimate of the damages sustained by the Plaintiffs after Hurricane Katrina. The trier of fact can then balance the competing theories and proffered conclusions and then determine the weight of all testimony and credibility of all experts to determine the best and most reliable estimate of the actual damages sustained by the Plaintiffs. *Mannino*

---

[11] Taylor Deposition, Page 139-41 (Exh. 3).
[12] Taylor Deposition, Page 142, 294-95 (Exh. 3).
[13] As Mr. Taylor explains in his deposition on Pages 224-25, the Replacement Cost Value is the cost to replace the Plaintiffs' property. Depreciation is not considered in this formula because the property is being replaced by a new item (Exh. 3).

*v. International Mfg. Co.*, 650 F.2d 846 (6th Cir. 1981). An expert's testimony is admissible for damages when it is based on sufficient facts or data, was produced by reliable principles and methods, and the principles and methods were applied reliably. *Pioneer Hi-Bred Intern., Inc. V. Ottawa Plant Food, Inc.*, 219 F.R.D. 135 (N.D. Iowa 2003).

As previously stated, Scott Taylor used widely accepted methods in the insurance and appraising industry, along with his knowledge, skill and experience, to render his report. Mr. Taylor fits squarely within the boundaries of *Daubert*, requiring the denial of Defendant's motion to exclude his testimony.

**C.     Causation is an issue of fact to be determined after a trial on the merits.**

At the trial on this matter, both Plaintiffs and Defendants will present evidence through numerous experts qualified in a variety of areas, including damages, causation, hydrology, etc. The testimony of these experts will be presented to assist the trier of fact in determining the cause of the flood waters as well as the percentage of damages that are attributable to each cause. While Defendant argues that Mr. Taylor's reports are unreliable and irrelevant because he attributed all damages sustained by the Plaintiffs to flood waters, rather than apportioning a percentage to wind and rain, Defendant's own experts have done the same.[14] Defendant's claims that Mr. Taylor's reports are unreliable and irrelevant are conclusory and assume facts that plaintiffs vehemently deny and that have not been presented to this court. A legal determination as to causation has not been made. As a matter of law, the statements of counsel are not evidence and should not be considered.

---

[14] Deposition of Karl Schneider at 152 ("I won't be testifying as to causation relative to wind and rain and flood.") Deposition of J.P. Duplesis, Page 126 ("I am not being asked to opine on flood versus wind and I am not opining on that.") (Exh. 4)

After a legal determination of causation has been made, Mr. Taylor's valuations of damages will assist the trier of fact in determining an award of damages. Once this Court determines the cause of the flood waters and the connexity of those waters to the damages sustained by Plaintiffs, Mr. Taylor's reports will aide in the determination the value of the property losses and ALE damages actually sustained by the Plaintiffs as a result of the negligence of Defendants.[15]

## IV.   CONCLUSION

Scott Taylor's reports and expert testimony are reliable, relevant, and will assist the trier of fact in determining damages sustained by the Plaintiffs. Mr. Taylor has previously been recognized by this Court as an expert on damages using the same methodology as he does herein. The claims Defendant's make in their motion and supporting memorandum are little more than attacks on the factual basis upon which Mr. Taylor opinion relies, making the motion a wasteful expenditure of time, effort and expense in this bench trial. As such, Defendant's Motion to Exclude the Opinions and Testimony of Scott Taylor should be denied.

**RESPECTFULLY SUBMITTED,**
**PLAINTIFFS LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

---

[15] Taylor Deposition, Pages 256-57 ("Q. If the court were to determine in this case that some of the damage to the Armstrong' house was not caused by flood waters, would the court still be able to utilize your estimate to determined [sic] the damages? . . . The Witness: Well, I think they should be able to. I don't see why they wouldn't . . . . They could use it if they wanted to Certainly.") (Exh. 3).

**MR-GO PLAINTIFFS SUB GROUP LITIGATION COMMITTEE**

Jonathan Andry (The Andry Law Firm, New Orleans, LA), Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL), James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served upon all counsel of record by ECF on May 21, 2012.

 /s/ Joseph M. Bruno