**KARL SCHNEIDER**                                                               **April 16, 2012**

---

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:
KATRINA CANAL BREACHES       CIVIL ACTION
CONSOLIDATED LITIGATION      NO. 05-4182 "K"(2)

PERTAINS TO: MRGO            JUDGE DUVAL
Armstrong, No. 10-866        MAG. WILKINSON

Deposition of KARL G. SCHNEIDER, Madsen, Kneppers & Associates, Inc., Suite 370, 3300 Irvine Avenue, Newport Beach, California 92660-3113, given at the offices of BRUNO & BRUNO, L.L.P., 855 Baronne Street, New Orleans, Louisiana 70113, on Monday, April the 16th, 2012, at 9:00 a.m.

---

Page 2

```
 1   APPEARANCES:
 2
 3
 4   REPRESENTING THE PLAINTIFFS:
 5
 6     DeGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE,
 7     LLP
 8     (BY:  JOSHUA M. PALMINTIER, ESQ.)
 9     618 Main Street
10     Baton Rouge, Louisiana  70801-1910
11     225-344-3735
12
13
14   REPRESENTING THE UNITED STATES OF AMERICA:
15
16     U.S. DEPARTMENT OF JUSTICE
17     (BY:  JAMES F. McCONNON, JR., ESQ.)
18     Torts Branch, Civil Division
19     Post Office Box 888
20     Benjamin Franklin Station
21     Washington, D.C.  20044
22     202-353-2604
23
24
25
```

---

Page 3

```
 1   APPEARANCES CONTINUED:
 2
 3
 4   REPRESENTING WASHINGTON GROUP INTERNATIONAL,
 5   INC.:
 6
 7     STONE PIGMAN WALTHER WITTMANN, L.L.C.
 8     (BY:  JAMES C. GULOTTA, JR., ESQ.
 9     And AGNIESZKA A. McPEAK, ESQ.)
10     546 Carondelet Street
11     New Orleans, Louisiana 70130
12     504-581-3200
13
14
15   REPORTED BY:
16
17     MARY E. NELSON, CCR
18     Certified Court Reporter
19
20
21
22
23
24
25
```

---

Page 4

```
 1          E X A M I N A T I O N   I N D E X
 2
 3   EXAMINATION BY:                       PAGE
 4
 5   Mr. Palmintier                         12
 6   Mr. Gulotta                           249
 7   Mr. Palmintier                        254
 8
 9             E X H I B I T   I N D E X
10
11   EXHIBIT NO.                           PAGE
12
13   WGI 1                                   8
14   WGI 2                                   8
15   WGI 3                                   9
16   WGI 4                                   9
17   WGI 5                                  10
18   Schneider 1                            43
19   Schneider 2                            43
20   Schneider 3                           152
21   Schneider 4                           176
22   Schneider 5                           207
23   Schneider 6                           226
24   Schneider 7                           237
25
```

1 (Pages 1 to 4)

Page 149

1  based upon the contents listing that they
2  initially gave as wind and rain.  Is that
3  correct?
4      A.   Why wouldn't I rely on that?
5      Q.   I'm really not trying to be
6  argumentative or anything.  I'm just trying
7  to -- Did you consider that there was a flood
8  damage claim with certain contents and there
9  was a wind and rain damage claim with certain
10 contents?
11     A.   Yes.
12     Q.   And some of the contents were listed
13 on both.
14     A.   Correct.
15     Q.   It seems like every time that
16 something was on wind and rain, you did not
17 consider that they listed it under flood.  Is
18 that true?
19         MR. GULOTTA:
20             Object to the form of the
21         question.
22         THE WITNESS:
23             That's not true because when you
24         look at the matrix that I put together
25         taking Scott Taylor's inventory which

Page 150

1          was the basis for my matrix, I
2          identified those items that I could
3          with the Armstrongs' wind and rain
4          claim and noted it under the MKA
5          comment column as wind and rain and
6          gave no consideration for it as for
7          flood because this matrix is based on
8          flood damage, not wind and rain
9          damage.
10             So if the homeowner said it's
11         wind and rain, why would I think
12         differently?
13 BY MR. PALMINTIER:
14     Q.   Is there a possibility that the
15 homeowner --
16     A.   Hypothetically possibility?
17     Q.   Let me ask the question.  Is there a
18 possibility that the homeowner did not know
19 whether it was caused by wind and rain or
20 flood?
21         MR. GULOTTA:
22             I'll object to the form of the
23         question.  Let me just object to the
24         form of the question.  I've leave it
25         there.

Page 151

1          THE WITNESS:
2              Is that a question?
3  BY MR. PALMINTIER:
4      Q.   Yes.
5      A.   My answer to that question is I don't
6  know what their state of mind is or was at the
7  time that they made the list, so I can only
8  work with what was presented as documentation.
9          THE WITNESS:
10             Can we take a break?
11         MR. PALMINTIER:
12             That's fine.
13 (A short recess was taken).
14 BY MR. PALMINTIER:
15     Q.   When we broke, you had made a
16 statement that you weren't sure whether you
17 would be testifying as to causation in this
18 matter, but that you had made a determination
19 as to whether certain items were affected by
20 wind and rain as opposed to flood.
21             What qualifications do you have
22 to testify as to causation in this matter if
23 indeed asked to do so?
24         MR. GULOTTA:
25             Object to the form of the

Page 152

1          question.
2          THE WITNESS:
3              Relative to contents or the
4          matter as a whole?
5  BY MR. PALMINTIER:
6      Q.   The fact that there is causation
7  here, whether it be damage caused by flood or
8  wind and rain is what I'm talking about here.
9      A.   I won't be testifying as to causation
10 relative to wind and rain and flood.
11         MR. PALMINTIER:
12             I will attach as Schneider 3 the
13         Armstrong Residence Contents and ALE
14         Report dated November 14th, 2011.
15 BY MR. PALMINTIER:
16     Q.   Mr. Schneider, we've gone over this
17 to a great degree basically because we used
18 this as an example for you to explain your
19 methodology in general.  Isn't that correct?
20     A.   Correct.
21     Q.   And thus far we've discussed the
22 methodology for your contents loss.  Is that
23 correct?
24     A.   Correct.
25     Q.   For your opinion on contents loss.

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES    CIVIL ACTION
CONSOLIDATED LITIGATION
                NO. 05-4182
                   "K" (2)
PERTAINS TO:  MRGO          JUDGE DUVAL
FILED IN: 05-4181, 05-4182,   MAG. WILKINSON
05-5237, 05-6073, 05-6314,
05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885,
06-2152, 06-2278, 06-2287,
06-2824, 06-4024, 06-4065,
06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155,
06-5159, 06-5161, 06-5162,
06-5260, 06-5771, 06-5786,
06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285

DEPOSITION OF
JEAN-PRIEUR DU PLESSIS,
717 Woodridge Boulevard, Mandeville, Louisiana 70471, taken in the offices of Bruno & Bruno, 855 Baronne Street, New Orleans, Louisiana 70113, on Thursday, April 12 and Friday, April 13, 2012.

## Page 2

```
 1   APPEARANCES:
 2   PALMINTIER LAW
       (BY: JOSHUA M. PALMINTIER, ESQ.)
 3   818 Main Street
     Baton Rouge, Louisiana 80801
 4       FOR THE PLAINTIFFS
 5
 6   STONE PIGMAN WALTHER WITTMANN
       (BY: JAMES C. GULOTTA, JR., ESQ.
 7        AGNIESZKA A. MCPEAK, ESQ.)
     546 Carondelet Street
 8   New Orleans, Louisiana 70130-3588
         ATTORNEYS FOR WASHINGTON GROUP
 9           INTERNATIONAL, INC.
10
     UNITED STATES DEPARTMENT OF JUSTICE
11     (BY: JAMES F. MCCONNON, JR., ESQ.)
     Torts Branch, Civil Division
12   Post Office Box 888
     Ben Franklin Station
13   Washington, D.C. 20044
         ATTORNEY FOR UNITED STATES OF
14           AMERICA
15
16
17
18
19
20
     REPORTED BY: ROGER D. JOHNS, RMR, CRR, CSR
21       Certified Court Reporter,
         State of Louisiana
22
23
24
25
```

## Page 3

```
 1           S T I P U L A T I O N
 2
 3       It is stipulated and agreed by and between
 4   counsel for the parties hereto
 5   that the deposition of the aforementioned
 6   witness is hereby being taken under the
 7   Federal Rules of Civil Procedure, for all
 8   purposes, in accordance with law;
 9       That the formalities of reading and
10   signing are specifically not waived;
11       That the formalities of certification and
12   filing are specifically waived;
13       That all objections, save those as to the
14   form of the question and the responsiveness of
15   the answer, are hereby reserved until such
16   time as this deposition, or any part thereof,
17   may be used or sought to be used in evidence.
18
19           * * * *
20
21       ROGER D. JOHNS, RDR, CRR, Certified Court
22   Reporter for the State of Louisiana,
23   officiated in administering the oath to the
24   witness.
25
```

## Page 4

```
 1             I N D E X
 2                              PAGE
     Exhibit 1.................................. 5
 3   Exhibit Du Plessis 2....................... 6
     Du Plessis 3............................... 8
 4   Exhibit Du Plessis 4....................... 11
     Exhibit Du Plessis 5....................... 46
 5   Exhibit 6.................................. 94
     Du Plessis 7............................... 154
 6   Du Plessis Exhibit 8....................... 191
     Du Plessis 9............................... 213
 7   Du Plessis 10.............................. 274
     Exhibit 11................................. 297
 8   Du Plessis 11.............................. 309
     Du Plessis 12.............................. 309
 9   Du Plessis 13.............................. 310
     Exhibit 14................................. 349
10   Exhibit 15................................. 356
     Exhibit 16................................. 356
11   Exhibit 17................................. 364
     Exhibit 18................................. 372
12   Exhibit 19................................. 383
     Exhibit 20................................. 388
13
14
15
16
         EXAMINATION BY MR. PALMINTIER:.............. 5
17
18
19
20
21
22
23
24
25
```

Page 125

in Mr. Taylor's report, and we can -- I don't have the page numbers off the top of my head, but it's -- Let's look at the Coats report, for example. If I recall correctly, and this is -- my statement is very generalized throughout these reports, and I wasn't asked to analyze these reports in detail --

Q. Okay.

A. -- so I did not do it in detail. But I looked, I was asked to look at it and give you my letter, you know, these -- this letter as to my opinion of what I saw there.

Q. Okay.

A. So I looked at it and so I am looking -- Thank you. And I looked at this report and -- This is the Coats report. Okay? So it says "Cause and origin" there at one place in the report and it says the loss is a result of flood in this report. Okay? Then I go back to his detail report and I look at remove slate roofing, 11 squares, 11.71 squares, which is 1,171 square feet, which is the whole roof, and install -- where he doesn't use the word "install", but it's slate roofing, he's putting slate roofing into his

Page 126

cost estimate and, in my opinion, that was not damaged by flood. So I am saying this is overstated scope of work.

Q. Understood. So when you state what you mean in the letter, in this paragraph of this letter, --

A. Yes.

Q. -- it's that you don't agree with his determination of what was caused by flood and what was caused by wind and rain? Is that correct?

A. No, that's not what I said.

Q. Okay. I know. I know it isn't exactly what you said. I thought that's what you were saying, though. Explain why that's not the same thing.

A. I am just saying -- He's saying in his cause -- causation that this property was damaged by flood, and yet when I look at photographs, that roof was not damaged by flood. Because the roof is still there and -- especially not the entire roof. I think there was a few ridge tiles missing. And I looked at some photographs, right after the storm I think it was, and I said the roof is still

Page 127

there. So how could it have been damaged according to this estimate (indicating)? That's all I am saying. It is overstated scope. But I don't know how -- If he -- I am not analyzing his determination of flood versus wind and all of that stuff. No, I am not saying that.

Q. Okay.

A. I am just saying that that house, after the storm, the roof was still there. Whether the flood damaged it or not, I don't know. But I can still see it there, you know.

Q. Right. I understand.

A. You know?

Q. You still see the roof.

A. Yes.

Q. You are not giving an opinion as to the determination of causation; correct?

A. No, I am not testifying to that.

Q. So you weren't asked to say that it was flood rather than wind and rain or wind and rain rather than flood?

A. Yes. Yes.

Q. Okay. So when you state that you completely disagree with the scopes, maybe I

Page 128

am not understanding. That could very well be the case. If you could, maybe it's through another example, because I think your testimony is that as an example to show why you greatly disagreed with the scope, you gave the example of the Coats roof and the fact that you saw photographs afterwards and the roof was still there. So -- And I am just -- I believe I am just repeating you. I am not -- I really am not trying to put words in your mouth at all. Okay? So is it your opinion that the roof was not damaged by flood?

A. Yes, it's obvious it's not damaged by flood.

Q. But that's not what you -- But that's not your expert opinion.

A. No.

Q. That's just an opinion that you have because of photographs you have observed. Is that correct?

A. Yes. I saw the roof was not damaged, so, therefore, this is overstated.

Q. Okay. When you say you saw the roof and it wasn't damaged, you saw the roof in