UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| | * | |
| PERTAINS TO: MRGO | * | SECTION "K" (2) |
| | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |

**REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE TESTIMONY AND OPINIONS OF SCOTT TAYLOR**

Washington Group International, Inc. ("WGI") respectfully submits this reply memorandum in support of its Motion to Exclude the Testimony and Opinions of Scott Taylor. In their opposition, Plaintiffs wrongly characterize WGI's motion as an attack on his credibility rather than his methodology.[1] While the factual basis of an expert's opinion can be grounds for challenging an expert's credibility, here it is the ***absence*** of any factual basis to support Mr. Taylor's opinions that fatally undermines their reliability and relevance. When, as here, an expert's opinion is unsupported by a factual predicate, that opinion is precisely the sort of ipse dixit that Rule 702 and *Daubert* were intended to exclude. Plaintiffs incorrectly assert that WGI's motion is a "wasteful expenditure of time, effort and expense".[2] On the contrary, judicial and party resources are wasted by the presentation of unreliable, irrelevant evidence at trial rather than by its exclusion.[3]

---

[1] WGI explicitly reserves its right to challenge Mr. Taylor's credibility in due course in the event the Court denies WGI's motion.

[2] Pls.' Opp. At 11.

[3] In the Barge litigation, the Court rightly criticized *both* the plaintiffs and defendant (rather than just the defendant, as Plaintiffs contend in their opposition) for engaging in what appeared to be a tit-for-tat strategy in

I.    **LAW & ARGUMENT**

   A.   **Even in Bench Trials, Expert Testimony Must Be Reliable and Relevant in Order to Be Admissible.**

Although the safeguards provided by *Daubert* "are of lesser import in a bench trial, where no screening of the factfinder can take place, the *Daubert* requirements of relevance and reliability…must nevertheless be met." *Seaboard Lumber Co. v. U.S.*, 308 F.3d 1283, 1302 (Fed. Cir. 2002); *see also Metavante Corp. v. Emigrant Sav. Bank.*, 619 F.3d 748, 760 (7th Cir. 2010)("Although we have held that the court in a bench trial need not make reliability determinations before evidence is presented, the determinations must still be made at some point.")(internal citations omitted); *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009).  Thus, while the Court has greater discretion and flexibility with regard to the timing of a *Daubert* determination in a bench trial, Plaintiffs are still required to satisfy their burden of establishing that Mr. Taylor's opinions are relevant and reliable.

Indeed, district courts in this Circuit and others have granted pre-trial motions excluding evidence pursuant to Rule 702 in the context of a bench trial.  In *Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681 (E.D. La. 2008), Judge Vance granted the plaintiff's motion to exclude the defendant's compliance expert on the grounds that his methodology was so flawed as to render his conclusions unreliable.  Finding, *inter alia*, that the proposed expert had made no effort to verify any of the information contained in the interviews that formed the basis of opinions, the court stated:  "When an expert uses his supposed expertise to serve up such dross as [the expert]

---

(continued…)

which each side filed *Daubert* motions against nearly all of other side's experts. *See* Rec. Doc. 19551.  WGI has done nothing of the sort, having filed *Daubert* motions as to only two of the seven experts identified on Plaintiffs' Final Witness list. *See* Rec. Doc. 20811. (Although Plaintiffs list Dr. Randy Rice on their Third Amended Final Witness List, the Court has already ordered that all proof regarding Plaintiffs' economic losses is excluded.  Rec. Doc. 20766.)  And even in the Barge litigation, the Court granted those portions of the various pre-trial motions which it determined to be meritorious.

has offered up here, this Court is under no obligation to entertain any of his opinions[…]". *Id*. at *19-20.  *See also CIT Group/Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 678 (S.D.N.Y. 2011)(excluding proposed expert who "based his opinions on the conclusory statements of [his client] and not his independent evaluation of the facts"); *see also French v. Allstate*, 637 F.3d 571 (5th Cir. 2011)(district court conducting bench trial did not abuse discretion by excluding evidence under Rules 702 and 403 when it determined that such evidence would not assist it to understand the evidence or determine a fact).

In the instant case, the Court included a filing date and hearing deadline for *Daubert* motions in its Scheduling Orders that were issued after Plaintiffs withdrew their jury demand. *See* Rec. Doc. 20200.   Additionally, the Court's Scheduling Orders, as amended, have consistently allowed for months in between the *Daubert* hearing and the start of the trial, presumably in order to permit the Court the option of considering and ruling upon any such motions in advance of trial.  WGI respectfully submits that these facts undermine Plaintiffs' assertion that *Daubert* motions in a bench trial are an "outrageous expenditure of time, effort, and expense" and a "waste of judicial resources".

Moreover, Plaintiffs' opposition offers no compelling justification for deferring a ruling on WGI's motion until trial.  While Plaintiffs make vague references to "a thorough factual development"[4] that will take place at trial, the facts concerning Mr. Taylor's methodology are not going to change between now and September.  To the extent that the Court desires to develop a more through factual record concerning Mr. Taylor's methodology, it can hold an evidentiary hearing on WGI's motion.  Given the extensive number of fact and expert witnesses that will be

---

[4] Pls.' Opp. at 5.

presented at trial, WGI respectfully submits that judicial economy will be furthered, rather than hampered, by the pre-trial resolution of these issues.

  **B. Plaintiffs Have Failed to Satisfy Their Burden of Demonstrating That Mr. Taylor's Opinions Are Reliable and Relevant.**

    **1. The Fact That Mr. Taylor Was Previously Recognized as an Expert in *Robinson* Does Not Preclude His Exclusion in This Case.**

In their opposition, Plaintiffs repeatedly refer to the fact that the Court accepted Mr. Taylor's opinions in the *Robinson* litigation, but that does not render his opinions relevant or reliable in the instant case. The fact that an expert has previously testified as an expert is not dispositive of the issue of whether his or her testimony is admissible. "It would be absurd to conclude that one can become an expert simply by accumulating experience in testifying." *Kline v. Lorrillard*, 878 F.2d 791 (4th Cir. 1989)(Pre-*Daubert* ruling reversing trial court's qualification of an expert on the basis of prior qualification where the expert's testimony failed to satisfy Rule 702); *see also Elcock v. Kmart Corp.,* 233 F.3d 734, 744, n.5 (3d Cir. 2000)("We note that the mere fact that [the expert] was previously admitted as an expert witness qualified to give testimony on vocational rehabilitation is irrelevant to the determination whether he is qualified to give such testimony in this case."); *Taylor v. Ouachita Parish Sch. Bd*., 648 F.2d 959, 970 (5th Cir. 1981)(expert previously qualified in other cases properly excluded due to unfamiliarity with facts of present case); *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 8, n. 4 (1st Cir. 2001)("Circumstances change from trial to trial, and admissibility rulings may also change from judge to judge and trial to trial.") The parties in this case have presented the Court with a far more developed factual record regarding Mr. Taylor's methodology than was provided in the *Robinson* case.[5] Moreover, WGI should not be prejudiced by prior evidentiary rulings in cases to which it was not a party. Plaintiffs must establish that

---

[5] And, unlike in *Robinson*, the Defendants will be offering expert testimony regarding damages.

Mr. Taylor's opinions are reliable and relevant in *this* case, and their efforts in that regard are woefully inadequate.

### 2. Mr. Taylor's Opinions, Derived from a Fatally Flawed Methodology, Will Not Assist the Trier of Fact.

Mr. Taylor's opinions are so wholly unsupported by facts that they can offer no assistance to the Court. "An expert's opinions must be excluded if the proposed testimony 'is so fundamentally unsupported that it can offer no assistance to the [trier of fact].'" *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009)(citations omitted); *see also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

> Both *Daubert* and *Kumho-Tire* make clear that the day of the expert, who merely opines, and does so on the basis of vague notions of experience, is over. Experts are now held to a level of accountability that requires factual predicates, in historical fact, or in competent evidence, which allows a fact-finder to independently verify the accuracy of the expert's results. Absent such reliable verification, the expert's testimony is not admissible.

*Solheim Farms, Inc. v. CNH Am. LLC*, 503 F. Supp. 2d 1146, 1151 (D. Minn. 2007)(citation omitted). As WGI demonstrated repeatedly in its original memorandum, Mr. Taylor could not provide any facts to substantiate his calculations.

With regard to his conclusion that all the damage to Plaintiffs' property was caused by flooding, Mr. Taylor did not review the available evidence and reach that conclusion based upon his independent evaluation of the facts. Rather, he did not consider other potential causes of damage because he was not asked to do so.[6] WGI moves to exclude Mr. Taylor's conclusion not because it disputes the facts on which the conclusion is based, but rather because there are no facts on which this conclusion is based. Because Mr. Taylor's conclusions lack the necessary

---

[6] *See, e.g.*, Dep. of Scott Taylor, attached to WGI's Mot. as Ex. 6, at 445:6-10.

factual predicate, they will not assist the Court in its determination of the facts and issues and should therefore be excluded.

In their Opposition, Plaintiffs state that the Defendants' experts, like Mr. Taylor, attributed all damage to flooding rather than using the available evidence to delineate flood damage from wind/rain damage and to apportion damages accordingly.[7] This statement is blatantly false and misleading. While Plaintiffs selectively cite to the testimony of Defense experts Karl Schneider and J.P. Duplessis, they conveniently fail to mention the reports and testimony of Defense expert James Danner of Denson Engineering, upon whom both Messrs. Scheneider and DuPlessis relied for the scope of flood and wind-rain damage to the houses.[8] In addition to questioning Messrs. Schneider and DuPlessis about their reliance on Mr. Danner (and the other available evidence) at their respective depositions, Plaintiffs also deposed Mr. Danner regarding his opinions and reports.[9] Thus, Plaintiffs' representations to the Court on this matter are puzzling.

The fact that Mr. Taylor used Xactimate does not render his estimates reliable. Xactimate is a computer program that is only as reliable as the information that is input:

> Q.   But you'd agree, wouldn't you, that the software is only as good as the information that's input into the software?
>
> A.   Of course.
>
> Q.   And in preparing claims using the software, it's critically important to input accurate information relating to the claim that you're adjusting relating to the property that you're looking at?
>
> A.   I would agree with that.

---

[7] Pls.' Opp. at 10.

[8] *See* Excerpts of Dep. of Karl Schneider, attached hereto as Exhibit 24, at 70:21-72:25; Excerpts of Dep. of J.P. Du Plessis, attached hereto as Exhibit 25 at 84:8-85:1.

[9] Excerpts of Dep. of James Danner, dated April 18, 2012 attached hereto as Exhibit 26 at 80:18-81:16.

> Q. And you need to have the right materials for the property; like for a home, whether it's brick or if it's siding, you need to have all of those correct inputs?
>
> A. Yes.[10]

As noted in WGI's original memorandum, Mr. Taylor used Xactimate to prepare estimates for the Coats property as a double, when in fact the Coats property was a single at the time of Katrina.[11] Similarly, Mr. Taylor originally used Xactimate to produce an estimate for the Washington house that reflected the "significantly upgraded" post-Katrina rebuild rather than the more modest house that existed prior to Katrina.[12] These errors were not produced by Xactimate; rather, they resulted from the fact that Mr. Taylor entered incorrect inputs and made no effort to verify his estimates and floor plans prior to submitting them. Xactimate is simply a tool, and when used properly, it can yield useful results. Xactimate, however, cannot guarantee the soundness of his calculations, and did not alert him to the substantial errors contained in his estimates.

Similarly, the flawed methodology Mr. Taylor used to prepare his contents calculations resulted in numerous errors, and Plaintiffs' efforts to rehabilitate these calculations are unavailing. In fact, it remains unclear exactly what Mr. Taylor did with regard to the contents calculations that required or exhibited expertise of any kind. As noted in WGI's original memorandum, Mr. Taylor did not apply depreciation, even though the Court criticized his calculations in its decision in *Robinson*. *In re Katrina Canal Breaches Litig.*, 647 F. Supp. 2d 644, 636 n. 57 (E.D. La. 2009), *aff'd* 673 F.3d 381 (5th Cir. 2012). Although Plaintiffs argue that the Court is free to apply depreciation itself, Mr. Taylor opines that the only proper means of applying depreciation is on an item-by-item basis (taking into an item's account age, condition,

---

[10] Ex. 6 at 43:23-44:15.

[11] WGI's Orig. Mem. at Section I(A).

[12] *Id*.

functionality, etc.).[13]  But his reports do not assist the Court because they do not provide it with sufficient information in order to apply item-by-item depreciation.

In their Opposition, Plaintiffs state "Mr. Taylor's valuations are reliable because he relied on the homeowner's list.  The value of the contents by Scott Taylor should be admitted and left for the trier of fact to determine the actual value of damages sustained by the Plaintiffs."[14]  As an initial matter, Mr. Taylor has no idea whether the typed spreadsheets provided to him by Plaintiffs' counsel are reliable or not because he never even reviewed the original handwritten lists prepared by the Plaintiffs in order to verify that the spreadsheets accurately reflected what Plaintiffs wrote.[15]  Nor did Mr. Taylor conduct any meaningful scrutiny of the lists or submit the lists to Plaintiffs for their review prior to the submission of his report.  Had he done so, he might have discovered that his original contents list for Mr. Livers had a margin of error of nearly 30%.[16]  That is not "imprecise", an "oversight", or a "typographical error".[17]  It is simply indisputably erroneous, by an egregiously high order of magnitude.

Moreover, Plaintiffs, rather than Mr. Taylor, determined the valuations for the contents items.  At his deposition, Mr. Taylor was unable to answer any meaningful questions as to factual basis underlying the valuations given for each line item.  Nor could he describe in any detail how Plaintiffs determined the value of any given item on their list; indeed, in the case of Ms. Coats, he never even spoke to anyone who compiled any portion the list.[18]  In summary, Mr. Taylor did not create or substantively review these lists, but simply rubber-stamped lists

---

[13] *See* WGI's Orig. Memo. at Section II(C).

[14] Pls.' Opp. at 9-10.

[15] *See* WGI's Orig. Memo. at Section II(D).

[16] *Id*. at Section I(B).

[17] *See* Pls.' Opp. at 6.

[18] Ex. 6 at 411-412:3; 422:23-423:7.

generated by Plaintiffs and their counsel. Because Mr. Taylor's methodology is so flawed as to render his opinions unreliable, the Court should grant WGI's motion and exclude Mr. Taylor's opinions and testimony.

Additionally, Mr. Taylor's additional living expenses should also be excluded because they are textbook ipse dixit. As WGI demonstrated repeatedly in its original memorandum, Mr. Taylor could not provide any facts to substantiate his calculations for additional living expenses.[19] Nor does Mr. Taylor cite to any authority to support his interpretation of "industry standards". In their Opposition, Plaintiffs essentially urge the Court to assume Mr. Taylor's calculations and assumptions are correct on the basis of his professional experience. Rule 702 requires a trial court to do more than "tak[e] the expert's word for it," Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments, and an expert's testimony should be excluded where it is based on subjective beliefs and unreliable guesswork. *See U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). (Tellingly, while Plaintiffs and Mr. Taylor embrace this purported "insurance industry standard", they emphatically reject the application of depreciation.) They also suggest that no receipts for Plaintiffs' living expenses are available, ignoring the fact that several of the Plaintiffs submitted receipts or information to their insurance companies in the aftermath of Hurricane Katrina detailing at least some of their expenses.[20] Mr. Taylor did not review these documents or use them (or the Plaintiffs' deposition testimony) to extrapolate Plaintiffs' actual living expenses.[21] Most importantly for the purposes of this motion, Mr. Taylor has no facts to support his conclusion that Plaintiffs' actual additional living expenses correspond

---

[19] *See id*. at 143:6-20.

[20] *See, e.g.*, Armstrong Additional Living Expense Receipts, attached hereto in globo as Exhibit 27; Excepts of Holmes Insurance Mediation Worksheet, attached hereto as Exhibit 28. Excerpts of Livers Insurance Policy, attached hereto as Exhibit 29.

[21] *See, e.g.*, Ex. 6 at 157:8-16.

1093067v.1

to his calculations.  Thus, there is no disputed factual basis underlying Mr. Taylor's opinions.  On the contrary, it is undisputed that there is no factual basis to support his calculations.  Because Mr. Taylor's calculations are unreliable and irrelevant, the Court should grant WGI's motion and exclude his testimony and opinions.

## II.     CONCLUSION

For the foregoing reasons and those set forth in WGI's original memorandum, the Court should grant WGI's motion to exclude testimony and opinions of Scott Taylor.

Dated:  May 30, 2012                    Respectfully submitted,


*/s/ William D. Treeby*
William D. Treeby, 12901
James C. Gulotta, Jr., 6590
Heather S. Lonian, 29956                           and
     Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Adrian Wager-Zito
Debra S. Clayman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3891
Facsimile:  (202) 626-1700

*Attorneys for Washington Group International, Inc., a division of URS Corporation*


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion in Limine to Exclude Testimony and Opinions of Scott Taylor has been served upon all counsel of record by electronic notice via the Court's CM/ECF system this 30th day of May, 2012.

*/s/ William D. Treeby*

1093067v.1