# EXHIBIT 26

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL
    BREACHES              CIVIL ACTION
CONSOLIDATED LITIGATION   NO. 05-4182 K2
              JUDGE DUVAL
PERTAINS TO MRGO     MAG. WILKINSON
FILED IN:

   05-4181, 05-4182, 05-5237, 05-6073,

   05-6314, 05-6324, 05-6327, 05-6359,

   06-0225, 06-0886, 06-1885, 06-2152,

   06-2278, 06-2287, 06-2824, 06-4024,

   06-4065, 06-4066, 06-4389, 06-4634,

   06-4931, 06-5032, 06-5155, 06-5159,

   06-5156, 06-5162, 06-5260, 06-5771,

   06-5786, 06-5937, 07-0206, 07-0621,

   07-1073, 07-1271, 07-1285

            * * *

   Deposition of JAMES R. DANNER, JR.,
P.E., taken on April 18, 2012, in the Law
Offices of Bruno & Bruno, LLP, 855 Baronne
Street, New Orleans, Louisiana 70113.

REPORTED BY:  LESLIE L. NICOSIA
              CERTIFIED COURT REPORTER; AND
              PATRICIA O. ENGLISH,
              CERTIFIED COURT REPORTER

Page 2

 1              A P P E A R A N C E S
 2
 3   REPRESENTING THE PLAINTIFFS:
 4     THE LAW OFFICES OF deGRAVELLES,
       PALMINTIER, HOLTHAUS & FRUGE
 5     (BY: JOSHUA M. PALMINTIER, ESQ.)
       618 Main Street
 6     Baton Rouge, Louisiana 70801
 7
     REPRESENTING WASHINGTON GROUP
 8   INTERNATIONAL, INC.:
 9     THE LAW OFFICES OF STONE PIGMAN WALTHER
       WITTMANN
10     (BY: JAMES C. GULOTTA, JR., ESQ. AND
       AGNIESZKA A. MCPEAK, ESQ.)
11     546 Carondelet Street
       New Orleans, Louisiana 70130
12
13   REPRESENTING THE UNITED STATES OF AMERICA:
14     U.S. DEPARTMENT OF JUSTICE
       (BY: JAMES F. MCCONNON, JR., ESQ.)
15     1331 Pennsylvania Avenue, NW
       Room 8012N
16     Washington, D.C. 20004
17
18
19
20
21
22
23
24
25

Page 3

 1              I N D E X
 2                          PAGE
 3   Title............................  1
 4   Appearances......................  2
 5   Index............................  3
 6   Stipulation......................  5
 7   EXAMINATION BY:
 8     MR. PALMINTIER..................  6
 9
              E X H I B I T S
10
     Exhibit 1.......................   6
11
     Exhibit 2.......................   7
12
     Exhibit 3.......................  10
13
     Exhibit 4.......................  18
14
     Exhibit 5.......................  51
15
     Exhibit 6.......................  77
16
     Exhibit 7....................... 138
17
     Exhibit 8....................... 144
18
     Exhibit 9....................... 144
19
     Exhibit 10...................... 145
20
     Exhibit 11...................... 156
21
     Exhibit 12...................... 177
22
     Exhibit 13...................... 179
23
     Exhibit 14...................... 182
24
     Exhibit 15...................... 217
25

Page 4

 1        E X H I B I T S (Continued)
 2                          PAGE
 3   Exhibit 16...................... 217
 4   Exhibit 17...................... 217
 5   Exhibit 18...................... 219
 6   Exhibit 19...................... 231
 7   Exhibit 20...................... 242
 8   Exhibit 21...................... 242
 9   Exhibit 22...................... 244
10   Exhibit 23...................... 248
11   Exhibit 24...................... 248
12   Exhibit 25...................... 248
13   Exhibit 26...................... 281

Page 77

```
 1   home?
 2      A.  They asked me to go out and do an
 3   inspection.  They didn't know what was out
 4   there.  All they had was addresses back
 5   then.  We had an address to go out and look
 6   at it, do your normal inspection, do what
 7   you normally do.  Nobody talked about, you
 8   know, other than my normal inspection, is
 9   causation, whether I wrote many reports,
10   says the same thing, no different.
11          BY MR. PALMINTIER:
12              I will attach as Exhibit 6
13          the October 31, 2011 report that
14          is stated at the top that it's
15          filed 14899B2 MRGO Katrina Canal
16          Breaches Civil Litigation, USDC
17          Eastern District; owner, Kenneth
18          Armstrong, 4016 Hamlet Place,
19          Chalmette, Louisiana.
20   EXAMINATION BY MR. PALMINTIER:
21      Q.  Is this your report that you
22   provided on October 31, 2011 to Mr. Treeby?
23      A.  It looks like it, yes, sir.
24      Q.  Do you have a copy to refer to?
25      A.  Yes, sir.
```

Page 78

```
 1   I need to take a break.
 2          BY MR. PALMINTIER:
 3              I'm going to attach this as
 4          Exhibit 6.  We will take a short
 5          break.
 6              (BREAK TAKEN)
 7   EXAMINATION BY MR. PALMINTIER:
 8      Q.  I've just attached as Exhibit 6
 9   your second Armstrong report, I believe,
10   dated October 31, 2011.  Is that your
11   second Armstrong report?
12      A.  Yes, sir.
13      Q.  You've given testimony that you
14   were instructed for the first report.  It's
15   my understanding you were instructed to
16   give an opinion on causation of damages,
17   just generally speaking?
18      A.  I was asked to give an opinion of
19   what caused the damage from a general
20   standpoint because I didn't have any more
21   information from that point in time to
22   better define it.
23      Q.  You did provide that opinion,
24   correct?
25      A.  Yes, sir.
```

Page 79

```
 1      Q.  For the October 31st report, what
 2   were you instructed in terms of scope of
 3   your work?  If you don't like that term, I
 4   can change that phrase.
 5      A.  Scope of work doesn't get into
 6   the problems until we get into the
 7   conclusions.  The scope of work is
 8   everything, go out and --
 9      Q.  You're given instructions by
10   someone who has hired you to do a certain
11   job, correct?
12      A.  In this circumstance, yes.
13      Q.  What was that?  What were you
14   instructed to do in reference to the
15   October 31, 2011 Armstrong report?
16      A.  Essentially, this is a subsequent
17   report.  Because of litigation, it's a
18   little bit different.  It's not a
19   subsequent report.  It's a standalone
20   report.  There's many aspects in this
21   report that's in the earlier report.
22          I was asked to go back out to the
23   property again and see if there's been any
24   changes.  Then I was given lots of stuff to
25   review, as delineated and listed on the
```

Page 80

```
 1   next six pages.
 2      Q.  I don't mean to interrupt you.  I
 3   would like to get into those things in
 4   greater detail.  What were you instructed
 5   to do by --
 6      A.  That's what I was doing.  I was
 7   to go look at the property again and to
 8   review these documents.
 9      Q.  In order to do what?
10      A.  In order to render an opinion at
11   this point in time.
12      Q.  Maybe I didn't make myself clear.
13   You were instructed to render an opinion,
14   were you not?
15      A.  Yes, sir.
16      Q.  What was that opinion?
17      A.  A series of opinions.
18      Q.  What opinions -- I'm not saying
19   you were instructed to give a specific
20   opinion.  What areas were you to give an
21   opinion in?
22      A.  I was asked -- You are right.  I
23   was not asked or instructed to give a
24   particular opinion, but to review these
25   documents, and if I have any -- Again, you
```

JAMES DANNER                                                                  April 18, 2012

Page 81

1  have to go through the opinions to be able
2  to say -- Nobody asked me to comment on
3  Mr. Taylor's report, which I did.
4       I gave a conclusion as far as
5  what I found and a critique in that report,
6  but I did that myself; then based on
7  critiquing the reports of Mr. Taylor and
8  Mr. Crawford, if I had opinions about what
9  they said or did not say, and to try to do
10 a better determination, if possible, of
11 what was damaged by wind versus water.
12    Q.  State that last part again.
13    A.  What was damaged by wind versus
14 water.
15    Q.  Wind and rain versus flood?
16    A.  Yes.
17    Q.  When you spoke with either
18 Mr. Treeby or someone else that was the
19 representative, the attorney for the
20 defense in this case, they told you -- they
21 instructed you to write a report concerning
22 the Armstrong home and whether the cause of
23 damages to the Armstrong home were wind and
24 rain or flood?
25    A.  No.  Again, I will go through it.

Page 82

1  They asked me if I would take a look at it,
2  to review these documents and write a
3  report based on what I found in those
4  documents.
5     Q.  And the inspection?
6     A.  Yes.  No one instructed me what
7  to put on Page 7.  I'm not saying they did
8  or did not.  I'm just saying, this is what
9  I produced to them based on --
10    Q.  If I'm understanding you
11 correctly, and I'm probably not, they asked
12 you to do an inspection, review some
13 documents and write a report?  They had no
14 -- Other than that, you had no instruction
15 as to what the report was to say?
16    A.  We knew at that point in time we
17 didn't have the hydrological data, so I
18 said, "Don't get into that until we get
19 that data."  Generally speaking, they give
20 me the data, and I read it and I come up
21 with my own conclusions or critique in this
22 case.  No one is telling me --
23    Q.  No one instructed you to -- as to
24 give a critique of the Taylor or Crawford
25 reports?  Is that your testimony?

Page 83

1     A.  No, they did not tell me to do
2  that.
3     Q.  Did they tell you to -- They did
4  ask you if you could read the reports,
5  correct?
6     A.  No.  They gave me the reports to
7  read.  They provided me with those reports.
8  I don't even know if they told me to read
9  them.  Normally, if somebody gives me a
10 report, they may have said, "Review these
11 reports."
12    Q.  It was your understanding they
13 gave you the reports for a purpose?  It was
14 probably to read them, to review them?
15    A.  I don't know what the purpose
16 was.  They gave me reports, and I reviewed
17 them and I wrote a report based on what I
18 read, and the other things as well.  To
19 deal with wind at this point in time,
20 hydrologic later or flooding later.
21    Q.  If you flip to Page 7 of this
22 report, the October 31, 2011 Armstrong
23 report, the first conclusion is the damage
24 to the Armstrong residence related to the
25 passage of Hurricane Katrina was caused by

Page 84

1  a combination of flooding, wind, and rain.
2  That is kind of what your opinion is in
3  your 2007 report that is incorporated in
4  the conclusions here; is that correct?
5     A.  Yes, sir.  Having read everything
6  else, my opinion in 2007 stands as written.
7  Sometimes it changes, but not in this case.
8     Q.  On Page 5 of the report, under
9  "Additional Living Expenses" you state,
10 "Mr. Taylor made no allotment of
11 depreciation of the residence or betterment
12 for repairs."  Why was that included in
13 your report?
14        BY MR. GULOTTA:
15           What section?
16        BY MR. PALMINTIER:
17           Page 5.  At the top,
18        there's "Additional Living
19        Expenses."  What I read was
20        directly what he states.
21        BY THE WITNESS:
22           That's in the end of No.
23        10, which starts over on Page 4.
24        BY MS. MCPEAK:
25           If you read the sentence,

21 (Pages 81 to 84)

Page 285

```
  1
  2
                    C E R T I F I C A T E
  3
         I, Patricia O. English,
  4   Certified Court Reporter, in and for the
      State of Louisiana, do hereby certify that
  5   JAMES R. DANNER, JR., after having been
      first duly sworn to testify to the truth,
  6   the whole truth, and nothing but the truth,
      did testify as hereinbefore set forth in the
  7   foregoing (182) pages;
  8         That the testimony was reported
      by me in shorthand and transcribed by means
  9   of computer-aided transcription, and is a
      true and correct transcript, to the best of
 10   my ability and understanding, at the time of
      the production of said transcript.
 11
            That I cannot, however, certify
 12   or attest to the accuracy or validity of any
      copy not produced under my direct
 13   supervision or control, and, further, do not
      lend certification to any such copies unless
 14   they bear my original imprinted seal or
      signature.
 15
            That I am not of counsel, not
 16   related to counsel nor to the parties
      hereto, and am in no way interested in the
 17   outcome of this event.
 18
 19
 20   -----------------------------
         PATRICIA O. ENGLISH
 21      Certified Court Reporter
         State of Louisiana
 22
 23
 24
 25
```

Page 286

```
  1
  2
  3        W I T N E S S'  C E R T I F I C A T E
  4
  5      I, JAMES R. DANNER, JR., P.E., do
  6   hereby certify that I have read or have had
  7   read to me the foregoing testimony, and it
  8   is true and correct to the best of my
  9   ability and understanding.
 10
 11   (Please check one of the following)
 12         I AM RETURNING THE TRANSCRIPT:
 13         ___ Without corrections.
 14         ___ With corrections and/or additions
 15   attached hereto.
 16
 17
 18
 19         _____
 20            JAMES R. DANNER, JR., P.E.
 21
 22
 23
 24
 25
```

Page 287

```
  1            READ & SIGN INSTRUCTIONS
  2   DEADLINE: TRANSCRIPT MUST BE RETURNED AS
              SOON AS POSSIBLE
  3
      To: James R. Danner, Jr.
  4   Date: May 2, 2012
      Re: Deposition taken on April 18, 2012
  5
            Enclosed you will find the transcript
  6   of your deposition which is being sent to
      you for reading and signing.
  7       This is an official document. Please
      guard it carefully to see that it is not
  8   damaged. Please do not make corrections or
      mark on the typewritten transcript. Make
  9   any changes or corrections on the correction
      sheet provided. For example: Page 22
 10   Line 7 "write" should be "right."
            Please sign the witness certificate
 11   attached to this instruction letter and
      indicate in the space provided whether or
 12   not any corrections were made on the
      correction sheet. A pre-addressed envelope
 13   is included; however, postage must be
      affixed before you mail the transcript,
 14   correction sheet and Witness' Certificate
      back to our office.
 15       As stated in Article 1445 of the Code
      of Civil Procedure, if the deposition is not
 16   signed within thirty (30) days of its
      submission to you, the deposition may then
 17   be used as fully as though signed.
            This transcript MUST BE RETURNED TO ME
 18   even if the time allotted to complete
      reading and signing has elapsed.
 19       Your prompt attention to this matter
      is appreciated.
 20
 21         Sincerely,
 22
 23
 24         Leslie L. Nicosia, C.C.R.
            Patricia O. English, C.C.R.
 25
```

Page 288

```
  1              C O R R E C T I O N  S H E E T
  2
      PAGE    LINE    DESCRIPTION
  3   ____    ____    _____
  4   ____    ____    _____
  5   ____    ____    _____
  6   ____    ____    _____
  7   ____    ____    _____
  8   ____    ____    _____
  9   ____    ____    _____
 10   ____    ____    _____
 11   ____    ____    _____
 12   ____    ____    _____
 13   ____    ____    _____
 14   ____    ____    _____
 15   ____    ____    _____
 16   ____    ____    _____
 17   ____    ____    _____
 18   ____    ____    _____
 19
      RE: USDC, EASTERN DISTRICT OF LA., IN RE:
 20   KATRINA CANAL BREACHES CONSOLIDATED
      LITIGATION, PERTAINS TO: MRGO, ARMSTRONG NO.
 21   10-866, C.A. NO. 05-4182"K" (2), JUDGE
      DUVAL, MAG. WILKINSON -- DEPOSITION OF JAMES
 22   R. DANNER, JR.
 23
 24
 25
```