# EXHIBIT 19

```
                                                                      2698
 1                      UNITED STATES DISTRICT COURT
 2                      EASTERN DISTRICT OF LOUISIANA
 3
 4
 5       IN RE:  KATRINA DREDGING       *   Civil Action
         LIMITATION ACTION              *
 6       CONSOLIDATED LITIGATION        *   No. 05-4182
                                        *
 7                                      *   Section K(2)
         PERTAINS TO:                   *
 8       BARGE                          *   New Orleans, Louisiana
                                        *
 9       MUMFORD, C.A. NO. 05-5724, AS  *   July 8, 2010
         TO PLAINTIFFS JOSEPHINE        *
10       RICHARDSON AND HOLLIDAY        *   Afternoon Session
         JEWELERS, INC., ONLY           *
11       AND                            *
         BENOIT, C.A. NO. 06-7516, AS   *
12       TO PLAINTIFFS JOHN ALFORD AND  *
         JERRY ALFORD ONLY              *
13       * * * * * * * * * * * * * * *
14                           DAY TWELVE
                        BENCH TRIAL BEFORE THE
15                HONORABLE STANWOOD R. DUVAL, JR.
                     UNITED STATES DISTRICT JUDGE
16
17       APPEARANCES:
18       For the Plaintiffs:         Best Koeppel
                                     BY:  LAURENCE E. BEST, ESQ.
19                                   BY:  PETER S. KOEPPEL, ESQ.
                                     2030 St. Charles Avenue
20                                   New Orleans, Louisiana 70130
21
22       For the Plaintiffs:         Law Offices of Brian A. Gilbert
                                     BY:  BRIAN A. GILBERT, ESQ.
23                                   2030 St. Charles Avenue
                                     New Orleans, Louisiana  70130
24
25
              JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
```

## 2731

```
14:26          THE WITNESS:  It's called "giddyup."
14:26          THE COURT:  Thank you.
14:26   BY MR. RAFFMAN:
14:26   Q.  The low soil that he creates affects the results because
14:26   it cuts off seepage and adds strength that otherwise wouldn't
14:26   be there; isn't that right?
14:26   A.  That's correct.
14:26          MR. RAFFMAN:  All right.  I thank Your Honor's
14:26   patience.
14:26   BY MR. RAFFMAN:
14:26   Q.  Permeability.
14:26          MR. RAFFMAN:  And I promise this is my last issue,
14:26   permeability.
14:26          THE COURT:  But an important one.  Go ahead, sir.
14:26          MR. RAFFMAN:  RB-119.
14:26   BY MR. RAFFMAN:
14:26   Q   Describe for the Court the difference in the permeability
14:26   values that Dr. Marino used versus those that you used.
14:26   A.  Well, the first thing I'd like to do is try and clear up
14:26   for this Court what in the hell permeability is.
14:27          As shown on this first scale are the numbers that the
14:27   Court was having difficulty understanding:  10-to-the-minus-2,
14:27   3, 4; 10-to-the-minus-8, and so forth.  This is an engineer's
14:27   way of quantitively expressing the rate at which water can
14:27   penetrate through the soil.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 2732

```
14:27          To an engineer, the numbers mean a lot; but to a
14:27   normal person, they mean nothing.  But where the something
14:27   starts to come from is in this column is talking about pervious
14:27   materials.  An example of a very pervious material would be a
14:27   well-graded gravel.  Well-graded gravel would have a
14:27   permeability that falls in this range.  A pervious soil would
14:28   be a sand, and sand would fall in this range.
14:28          Semi-pervious would be something like a silt with
14:28   some sand in it.  It could be a marshy material that has some
14:28   silt and sand in it, so it begins to fall in this semi-pervious
14:28   range.
14:28          When you get to impervious, this would be things like
14:28   fat clays.  And the fat clays, because there's not very much
14:28   conduits for water to get through, are essentially impervious.
14:28          As shown with the cartoons that I located and
14:28   incorporated in this graphic by showing the water that would
14:28   come through, this styrofoam perforated cup, that has 1 year
14:29   material, the water would completely get through the gravel in
14:29   2 minutes.  In 2 hours, it would be an inch above the top of
14:29   the sand.  But the silt, in 200 days, it would be very little
14:29   through; and for clay, for 200 years, there would be no water
14:29   through it.
14:29   Q.  Now, which permeability values did you use and which did
14:29   Dr. Marino use?
14:29   A.  For the best estimate --
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 2733

```
14:29   Q.  For the marsh layer.  For the marsh layer.
14:29   A.  The marsh layer is critical.  But for our analyses, the
14:29   primary results were done for 10-to-the-minus-4, to
14:29   10-of-the-minus-5.  We were heavily criticized for the
14:29   10-to-the-minus-2.  Consequently, we re-examined that after we
14:29   had some field experience.
14:29          But Dr. Marino used 10-to-the-minus-8.  That's
14:29   equivalent to trying to get water through a brick.
14:30          THE COURT:  And mathematically, a 10-to-the-minus-2
14:30   would be --
14:30          THE WITNESS:  Approaching that of sand.
14:30          THE COURT:  It would be between semi-pervious and
14:30   pervious?
14:30          THE WITNESS:  Yes.
14:30          THE COURT:  And, of course, 10-to-the-minus-8 is
14:30   impervious.
14:30          THE WITNESS:  That's what we -- that's what we build
14:30   dams out of.
14:30          THE COURT:  I knew some judges who were
14:30   10-to-the-minus-8.  Go ahead.  Go ahead.
14:30          MR. RAFFMAN:  You will never hear that from me, Your
14:30   Honor.
14:30          THE COURT:  Oh, no.  I know.  I can say that now.
14:30   That's one of the great things about being in this position.
14:30   Go ahead.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

## 2734

```
14:30          THE WITNESS:  My wife thinks I'm impervious.
14:30   BY MR. RAFFMAN:
14:30   Q.  All right.  Permeability.  So we've got marsh layer that's
14:30   the permeability of a brick on the one hand versus a marsh
14:30   layer that's the permeability of something else from
14:30   Professor Bea.
14:31          So, Professor Bea, which one is correct, yours or
14:31   Dr. Marino's?
14:31   A.  I think the ones I used are correct --
14:31   Q.  All right.
14:31   A.  -- or I wouldn't present them in court.
14:31   Q.  We have a few more slides on permeability, and I'm going
14:31   to ask Dr. Bea to be -- summary in your treatment of the slides
14:31   to get the gist of what they show, and then we'll move forward.
14:31          THE COURT:  Well, I think these are important issues,
14:31   I really do.
14:31          MR. RAFFMAN:  Oh, okay.  All right.
14:31          THE COURT:  Because these are the core -- I hate to
14:31   use that word -- the core differences in this case vis-à-vis
14:31   the theories of the case.
14:31          MR. RAFFMAN:  All right.  Then we'll proceed at pace,
14:31   and we are approaching the end of the examination, Your Honor.
14:31   But thank you.
14:31          THE COURT:  Yes.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA