# EXHIBIT 25

**JOSEPH DUNBAR, PH.D.**                                                           **March 23, 2012**

---

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES    CIVIL ACTION
CONSOLIDATED LITIGATION
              NO. 05-4182
                "K" (2)
PERTAINS TO: MRGO           JUDGE DUVAL
FILED IN: 05-4181, 05-4182,   MAG. WILKINSON
05-5237, 05-6073, 05-6314,
05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885,
06-2152, 06-2278, 06-2287,
06-2824, 06-4024, 06-4065,
06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155,
06-5159, 06-5161, 06-5162,
06-5260, 06-5771, 06-5786,
06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285

           DEPOSITION OF
         JOSEPH B. DUNBAR,
3956 Mount Alban Road, Vicksburg, Mississippi
39183, taken in the offices of Bruno & Bruno
855 Baronne Street, New Orleans, Louisiana
70113, on Friday, March 23, 2012.

---

Page 2

1  APPEARANCES:
2     DUDENHEFER LAW OFFICE
       (BY: FRANK DUDENHEFER, ESQ.)
3      Suite 1000
       601 Poydras Street
4      New Orleans, Louisiana 70130
            FOR THE PLAINTIFFS
5
6
       STONE PIGMAN WALTHER WITTMANN
7     (BY: HEATHER LONIAN, ESQ.)
       546 Carondelet Street
8      New Orleans, Louisiana  70130-3588
         ATTORNEYS FOR WASHINGTON GROUP
9        INTERNATIONAL, INC.
10
     UNITED STATES DEPARTMENT OF JUSTICE
11    (BY: RUPERT MITSCH, ESQ.)
       Torts Branch, Civil Division
12     Post Office Box 888
       Ben Franklin Station
13     Washington, D.C. 20044
         ATTORNEY FOR UNITED STATES OF
14       AMERICA
15
16  REPORTED BY:  ROGER D. JOHNS, RMR, CRR, CSR
           Certified Court Reporter,
17         State of Louisiana

---

Page 3

1        S T I P U L A T I O N
2
3        It is stipulated and agreed by and between
4  counsel for the parties hereto
5  that the deposition of the aforementioned
6  witness is hereby being taken under the
7  Federal Rules of Civil Procedure, for all
8  purposes, in accordance with law;
9        That the formalities of reading and
10 signing are specifically not waived;
11       That the formalities of certification and
12 filing are specifically waived;
13       That all objections, save those as to the
14 form of the question and the responsiveness of
15 the answer, are hereby reserved until such
16 time as this deposition, or any part thereof,
17 may be used or sought to be used in evidence.
18
19       *  *  *  *
20
21       ROGER D. JOHNS, RDR, CRR, Certified Court
22 Reporter for the State of Louisiana,
23 officiated in administering the oath to the
24 witness.
25

---

Page 4

1            I N D E X
2                       PAGE
3  Dunbar 1................... 21
4  Dunbar 2................... 27
5  Dunbar 2................... 27
6  Dunbar-78.................. 33
7  Dunbar 3................... 68
8  Dunbar 4................... 138
9  Dunbar 4-A................. 152
10 Dunbar 4-B................. 152
11 Dunbar 5................... 231
12 Dunbar 6................... 259
13
14 Portion marked per request of
15 Counsel.................... 59

---

1 (Pages 1 to 4)

**JOHNS, PENDLETON COURT REPORTERS**                                              **504 219-1993**

Page 25

 1  represented in my report.
 2      Q.  All right.  I am going to ask you
 3  the converse of the question.  Based on your
 4  review of the deposition, do you now see where
 5  some of the issues that you took with Dr.
 6  Rogers really are not issues, but he clarified
 7  some of your concerns during the course of the
 8  deposition?
 9      A.  What was the -- Rephrase that, I
10  guess.
11      Q.  Sure.  You took certain issues with
12  Dr. Rogers in your report; correct?
13      A.  Yes.
14      Q.  All right.  You have read his
15  deposition; correct?
16      A.  Yes.
17      Q.  Having read his deposition, do you
18  now think that any of the issues you took with
19  Dr. Rogers ought to be revisited and/or
20  modified?
21      A.  I think my report speaks for
22  itself.  I mean, I -- I kind of glanced
23  through it, so I can't really say I did a
24  detailed study of his deposition where I would
25  critique it line by line.  I think the main

Page 26

 1  points of contention are described in my
 2  report.
 3      Q.  And we'll get to those.
 4      A.  Yeah.
 5      Q.  But again, I am simply trying to
 6  understand what, if anything, you may think
 7  differently today, having read the deposition,
 8  than from what you expressed in your report.
 9      A.  I think I'm still -- I believe he
10  was in error on the stratigraphy and sort of
11  the whole permeability of the marsh, the swamp
12  deposits there.  But as I point out in my
13  report on Dr. Rogers, he doesn't provide like
14  specific cross sections, whereas in the work
15  that I did, I had specific cross sections that
16  are tied to specific borings.
17      Q.  And I understand that and we'll try
18  and get to those in a few minutes.  But you
19  disagree -- when you said you disagree with
20  Dr. Rogers' permeability conclusions of the 10
21  to the minus 4, 10 to the minus 6 range -- Is
22  that what you just told me, you disagree with
23  him on that?
24      A.  ==I disagree with his notion in his==
25  ==figure 211 where he shows these organic soils==

Page 27

 1  ==as being more pervious, more permeable than==
 2  ==they are.  And I think I do a fairly good job==
 3  ==of laying out the basis for my opinions and==
 4  ==judgment in that.==
 5      Q.  What do you mean, more permeable?
 6  Let's look at 211 in Dr. Rogers' report and I
 7  guess it's a good time -- I am referring to
 8  page 223 from Dr. Rogers' report.
 9      A.  Did you mean to give me this copy
10  that is marked up with --
11      Q.  Oh, I'm sorry.  I'll take that
12  back.  It doesn't make a lot of difference,
13  but that's fine.  I'll mark that as Dunbar 2.
14  Do you agree with me that the top section
15  showing various horizons is schematic --
16      A.  What do you mean?
17      Q.  -- and illustrative as opposed to an
18  exact replication of what Dr. Rogers believes
19  is extant there?
20      A.  I don't believe it's schematic.  I
21  thought it was supposed to be very specific
22  since it notes specific borings, boring 4,
23  boring 4T.  It's -- I believe it's to scale.
24  Now, the bottom cartoon here, or the bottom
25  figure is representative of what I believe

Page 28

 1  he's trying to illustrate for that marsh
 2  horizon.
 3      Q.  So the way that you read this report
 4  then is that that's a replication of what he
 5  believes the marsh horizon looks like all
 6  across that schematic?
 7      A.  The inference that I believe Dr.
 8  Rogers was trying to make was that he wanted
 9  to portray a case for these organic peats,
10  these organic fabric of sedge peats and the
11  idea that you can promote water flow through
12  them in the horizontal direction.  I mean, his
13  figure is -- describes exactly what his intent
14  was.  And I have said in my report that the
15  stratigraphy of this area, that the
16  depositional history is such that you get
17  mostly organic clays and -- in clays, and you
18  would have not a permeable strata that is
19  being depicted here, but it would be mostly
20  impermeable.
21      Q.  What you have called a cartoon is
22  really intended to simply demonstrate the fact
23  that sedge peats can promote water flow more
24  strongly in the horizontal as opposed to the
25  vertical.  Isn't that correct?

Page 261

1   a depth of 1 meter of soils and then in the
2   other, maybe a meter and a half.  You said you
3   would need to be --
4          MR. MITSCH:
5              I think that misrepresents what
6          he stated.  Mischaracterizes the
7          testimony.
8   EXAMINATION BY MR. DUDENHEFER:
9      Q.  Let's go back.  I'll ask you so that
10  it's not my testimony.  What's the depth, what
11  is the reasonable depth you could evaluate
12  based on your first photograph, which your
13  first photograph --
14     A.  As I told you --
15     Q.  -- has the Igloo?
16     A.  As I told you earlier, we would have
17  to scale off the Igloo and we'd have to know
18  precisely how long that Igloo cooler is with
19  -- Let's get the specific photo -- With this
20  view, you know, depending on how deep we're
21  looking here, I mean, I can clearly see the
22  embankment materials and I can see what I
23  thought was anywhere from a meter to a meter
24  and a half, but I was uncertain because I had
25  never scaled it off, this one view.

Page 262

1              This other one, clearly you can
2   see much deeper the depth.  And I have
3   indicated or mentioned that we would have to
4   scale this photo off to see exactly how deep
5   it was.  I don't believe I rendered an opinion
6   on that one.
7      Q.  Do you think on that one, that is,
8   the one on page 67, it would be deeper than a
9   meter and a half?
10     A.  Clearly it would be.
11     Q.  Figure 27, the top of that material
12  would begin at just where that grassy area
13  was, or is that what you would expect, that
14  that line would come straight across?
15     A.  I see two -- I see fresh kind of
16  concrete and I also see another line up there,
17  so I don't -- I don't know where the ground
18  surface was.
19     Q.  It would be somewhere along the
20  concrete?
21     A.  I would believe so, yes.
22     Q.  It's not below the concrete?
23     A.  I would believe it would be
24  somewhere around the concrete.
25     Q.  Can you tell me how much above the

Page 263

1   concrete, looking at these figures, either
2   that figure 27 or figure 26?
3      A.  There's a photograph in figure 28
4   that it could be very easily determined where
5   the precise maybe ground surface elevation
6   would be.  You know, the photo speaks for
7   itself.  I -- I didn't measure it, so we can
8   scale it off at some point, and someone can do
9   that.  That's figure 28.
10     Q.  Okay.  What would you consider to be
11  the maximum depth that you believe you could
12  demonstrate with your photographs the
13  consistency that's soil?  2 meters, 3 meters?
14  A meter and a half?
15     A.  I don't know.  Each photo would be
16  different depending on the -- if you could
17  scale objects in the photo and look.
18     Q.  Would you agree with the line which
19  says "Approximate 2005 ground surface where it
20  intersects with the concrete section of the
21  floodwall"?
22     A.  No, I would not.
23     Q.  Why not?
24     A.  Well, I mean, I'd want to verify --
25  I'd want to verify it.  I would want to look

Page 264

1   at the data that I have and figure out where
2   it is in relationship -- Not calling in
3   question any of the -- but there are clearly
4   inconsistencies and errors in this drawing.
5   It's -- I would think that there may be an
6   error here with some of the elevation data
7   that's shown.  So I'd want to verify with my
8   data.
9      Q.  ==Would you agree with me that to
10  whatever the maximum depth your photographs
11  would demonstrate a consistent soil
12  stratigraphy, beyond that point you have no
13  further information as to what's under that
14  particular layer?==
15         MR. MITSCH:
16             ==Asked and answered.  Go ahead.==
17     ==THE WITNESS:==
18             ==No, I -- I mean, we're asked all
19  the time to make judgments between
20  borings, to make judgments where we
21  have point data that we know something
22  about, and the evidence clearly
23  indicates to me that the conditions
24  that are shown near this wall do not
25  exist.==  And there's also a comment