# EXHIBIT 24

|  | Page 1 |
|---|---|
|  | UNITED STATES DISTRICT COURT |
|  | EASTERN DISTRICT OF LOUISIANA |
|  |  |
| IN RE: |  |
| KATRINA CANAL BREACHES | CIVIL ACTION |
| CONSOLIDATED LITIGATION | NO. 05-4182 "K"(2) |
| PERTAINS TO: MRGO | JUDGE DUVAL |
| Armstrong, No. 10-866 | MAG. WILKINSON |

Deposition of KARL G. SCHNEIDER, Madsen, Kneppers & Associates, Inc., Suite 370, 3300 Irvine Avenue, Newport Beach, California 92660-3113, given at the offices of BRUNO & BRUNO, L.L.P., 855 Baronne Street, New Orleans, Louisiana 70113, on Monday, April the 16th, 2012, at 9:00 a.m.

---

Page 2

```
 1   APPEARANCES:
 2
 3
 4   REPRESENTING THE PLAINTIFFS:
 5
 6     DeGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE,
 7     LLP
 8     (BY:  JOSHUA M. PALMINTIER, ESQ.)
 9     618 Main Street
10     Baton Rouge, Louisiana  70801-1910
11     225-344-3735
12
13
14   REPRESENTING THE UNITED STATES OF AMERICA:
15
16     U.S. DEPARTMENT OF JUSTICE
17     (BY:  JAMES F. McCONNON, JR., ESQ.)
18     Torts Branch, Civil Division
19     Post Office Box 888
20     Benjamin Franklin Station
21     Washington, D.C.  20044
22     202-353-2604
23
24
25
```

---

Page 3

```
 1   APPEARANCES CONTINUED:
 2
 3
 4   REPRESENTING WASHINGTON GROUP INTERNATIONAL,
 5   INC.:
 6
 7     STONE PIGMAN WALTHER WITTMANN, L.L.C.
 8     (BY:  JAMES C. GULOTTA, JR., ESQ.
 9     And AGNIESZKA A. McPEAK, ESQ.)
10     546 Carondelet Street
11     New Orleans, Louisiana 70130
12     504-581-3200
13
14
15   REPORTED BY:
16
17     MARY E. NELSON, CCR
18     Certified Court Reporter
19
20
21
22
23
24
25
```

---

Page 4

```
 1          E X A M I N A T I O N   I N D E X
 2
 3   EXAMINATION BY:                      PAGE
 4
 5   Mr. Palmintier                        12
 6   Mr. Gulotta                          249
 7   Mr. Palmintier                       254
 8
 9             E X H I B I T   I N D E X
10
11   EXHIBIT NO.                          PAGE
12
13   WGI 1                                  8
14   WGI 2                                  8
15   WGI 3                                  9
16   WGI 4                                  9
17   WGI 5                                 10
18   Schneider 1                           43
19   Schneider 2                           43
20   Schneider 3                          152
21   Schneider 4                          176
22   Schneider 5                          207
23   Schneider 6                          226
24   Schneider 7                          237
25
```

1 (Pages 1 to 4)

Page 69

```
 1        reports, depositions, all
 2        documentation for each one of the
 3        individual files and sat down and
 4        reviewed everything and got a feel for
 5        what Katrina was all about.
 6   BY MR. PALMINTIER:
 7        Q.   You were asked to create a report
 8   based on the claimants in this case regarding
 9   their loss of contents and their additional
10   living expenses.  Is that correct?
11        A.   Correct.
12        Q.   And in evaluating the claim, you
13   reviewed certain materials.  Is that correct?
14        A.   Correct.
15        Q.   One of the materials, the first one
16   you mentioned, I believe, in this deposition it
17   was the first one you mentioned, was the Scott
18   Taylor report and, like I said, specifically as
19   they related to contents and additional living
20   expenses.  Is that correct?
21        A.   Correct.
22        Q.   Okay.  In addition you reviewed
23   depositions of the homeowners.  Is that
24   correct?
25        A.   I believe so, correct.
```

Page 70

```
 1        Q.   Did you also review or read the
 2   depositions of other people other than the
 3   homeowners?
 4        A.   I would say yes.
 5        Q.   What depositions did you read other
 6   than those of the homeowners?
 7        A.   Scott Taylor's.
 8        Q.   Did you read John Crawford's
 9   deposition?
10        A.   I don't recall.
11        Q.   You read through the homeowners'
12   depositions for what purpose?
13        A.   To find and locate information
14   relative to contents, claims, ownership,
15   location if it was discussed, location
16   referring to specific areas in the home, value
17   if an item was discussed for value purposes,
18   any compensation they may have received for
19   items claimed damaged or claims that may have
20   been made for wind and rain versus flood.
21        Q.   Did you make a determination on
22   whether certain items were affected by wind and
23   rain as opposed to affected by flood?
24        A.   No.
25        Q.   But you reviewed certain documents
```

Page 71

```
 1   that you felt were relevant because they made a
 2   distinction between wind and rain, that which
 3   was affected by wind and rain and that which
 4   was affected by flood?
 5        A.   In response to that, I would say that
 6   that's not the only reason I was looking at the
 7   documents.  That's information that's available
 8   in the documents that I noted.
 9        Q.   Can you tell me --  Give me a list of
10   those documents.  When I say those documents, I
11   mean those documents that you reviewed for
12   purposes of coming to your, reaching your
13   opinion as to contents and additional living
14   expenses.  That would be other than the Scott
15   Taylor report and the depositions of the
16   homeowners and possibly other depositions.
17        A.   Insurance company files.
18        Q.   Anything else?
19        A.   I believe that would be it.  Well,
20   no.
21        Q.   And I'm really not trying to trick
22   you up.  Did you read --
23             MR. GULOTTA:
24                Let me object.  You're asking him
25             obviously from his memory today as to
```

Page 72

```
 1             what he reviewed for his engagement.
 2             Is that correct?
 3             MR. PALMINTIER:
 4                That is correct.  When you say
 5             this engagement, I'm talking about in
 6             preparation for the creation of his
 7             reports.
 8   BY MR. PALMINTIER:
 9        Q.   So what materials did you rely on?
10   And you can reference --
11        A.   May I reference --
12        Q.   Absolutely.
13        A.   In my Armstrong report dated November
14   14th, 2011, on Page 2 of 13, the caption
15   Documentation, documents available for my
16   review, the Denson Engineering Report.  Do you
17   want dates?
18                The revised loss report from
19   Scott Taylor Adjusting Service, deposition and
20   exhibits of Kenneth Armstrong, deposition and
21   exhibits of Jeannine Armstrong, final report by
22   Scott Taylor, flood damage assessment by
23   Crawford Engineering, Liberty Mutual claim,
24   Allstate Insurance flood claim, and Road Home
25   file.
```

Page 257

WITNESS' CERTIFICATE

I, KARL G. SCHNEIDER, do hereby certify that the foregoing testimony was given by me, and that the transcription of said testimony, with corrections and/or changes, if any, is true and correct as given by me on the aforementioned date.

_____     _____
DATE SIGNED              KARL G. SCHNEIDER

DATE TAKEN: April 16, 2012

Page 258

REPORTER'S CERTIFICATE

I, MARY E. NELSON, CCR, CERTIFIED COURT REPORTER in and for the State of Louisiana, do hereby certify that the aforementioned witness, after having been first duly sworn by me to testify to the truth, did testify as hereinabove set forth.
That said deposition was taken by me in computer shorthand and thereafter transcribed under my supervision, and is a true and correct transcription to the best of my ability and understanding.
I further certify that I am not of counsel, nor related to counsel or the parties hereto, and am in no way interested in the result of said cause.

_____
MARY E. NELSON, CCR
CERTIFIED COURT REPORTER