# EXHIBIT 25

**JEAN-PRIEUR DUPLESSIS**                                                      **April 12, 2012**

---

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES    CIVIL ACTION
CONSOLIDATED LITIGATION              NO. 05-4182
                                                      "K" (2)
PERTAINS TO:  MRGO              JUDGE DUVAL
FILED IN:  05-4181, 05-4182,   MAG. WILKINSON
05-5237, 05-6073, 05-6314,
05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885,
06-2152, 06-2278, 06-2287,
06-2824, 06-4024, 06-4065,
06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155,
06-5159, 06-5161, 06-5162,
06-5260, 06-5771, 06-5786,
06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285

DEPOSITION OF
JEAN-PRIEUR DU PLESSIS,
717 Woodridge Boulevard, Mandeville, Louisiana
70471, taken in the offices of Bruno & Bruno,
855 Baronne Street, New Orleans, Louisiana
70113, on Thursday, April 12 and Friday, April
13, 2012.

---

Page 2

1   APPEARANCES:
2     PALMINTIER LAW
         (BY: JOSHUA M. PALMINTIER, ESQ.)
3     818 Main Street
       Baton Rouge, Louisiana 80801
4         FOR THE PLAINTIFFS
5
6     STONE PIGMAN WALTHER WITTMANN
         (BY: JAMES C. GULOTTA, JR., ESQ.
7           AGNIESZKA A. MCPEAK, ESQ.)
       546 Carondelet Street
8     New Orleans, Louisiana  70130-3588
            ATTORNEYS FOR WASHINGTON GROUP
9             INTERNATIONAL, INC.
10
     UNITED STATES DEPARTMENT OF JUSTICE
11     (BY: JAMES F. MCCONNON, JR., ESQ.)
       Torts Branch, Civil Division
12     Post Office Box 888
       Ben Franklin Station
13     Washington, D.C. 20044
            ATTORNEY FOR UNITED STATES OF
14             AMERICA
15
16
17
18
19
20
     REPORTED BY:  ROGER D. JOHNS, RMR, CRR, CSR
21         Certified Court Reporter,
             State of Louisiana
22
23
24
25

---

Page 3

 1             S T I P U L A T I O N
 2
 3        It is stipulated and agreed by and between
 4    counsel for the parties hereto
 5    that the deposition of the aforementioned
 6    witness is hereby being taken under the
 7    Federal Rules of Civil Procedure, for all
 8    purposes, in accordance with law;
 9        That the formalities of reading and
10    signing are specifically not waived;
11        That the formalities of certification and
12    filing are specifically waived;
13        That all objections, save those as to the
14    form of the question and the responsiveness of
15    the answer, are hereby reserved until such
16    time as this deposition, or any part thereof,
17    may be used or sought to be used in evidence.
18
19                    * * * *
20
21        ROGER D. JOHNS, RDR, CRR, Certified Court
22    Reporter for the State of Louisiana,
23    officiated in administering the oath to the
24    witness.
25

---

Page 4

 1                    I N D E X
 2                               PAGE
     Exhibit 1.................................. 5
 3   Exhibit Du Plessis 2...................... 6
     Du Plessis 3............................... 8
 4   Exhibit Du Plessis 4...................... 11
     Exhibit Du Plessis 5...................... 46
 5   Exhibit 6................................. 94
     Du Plessis 7............................. 154
 6   Du Plessis Exhibit 8................. 191
     Du Plessis 9............................. 213
 7   Du Plessis 10........................... 274
     Exhibit 11............................... 297
 8   Du Plessis 11........................... 309
     Du Plessis 12........................... 309
 9   Du Plessis 13........................... 310
     Exhibit 14............................... 349
10   Exhibit 15............................... 356
     Exhibit 16............................... 356
11   Exhibit 17............................... 364
     Exhibit 18............................... 372
12   Exhibit 19............................... 383
     Exhibit 20............................... 388
13
14
15
16
17   EXAMINATION BY MR. PALMINTIER:............. 5
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**JOHNS, PENDLETON, FAIRBANKS & FREESE**                         **504 219-1993**

JEAN-PRIEUR DUPLESSIS                                          April 12, 2012

Page 81

1      Q.  Okay.  That's great.  That brings us
2  a long way.  So the way in which you relied
3  upon any type of insurance documents or the
4  way in which you relied upon any Road Home
5  documents, was as to the types of materials or
6  the overall design of the house.  Is that
7  correct?
8      A.  Absolutely.  Yes.  Photographs.
9      Q.  Photographs.
10     A.  Especially.  Yes.
11     Q.  I was going to get into the
12 supplemental and revised reports when you
13 asked about that, but I am not of a
14 militaristic background, but it's good to try
15 to keep time, especially since we already
16 started an hour late.  So let's do that.
17     MR. PALMINTIER:
18         We're going to stop here.  And
19     what do you think?  1:00 o'clock?
20     MR. GULOTTA:
21         That will be fine.  Yes.
22     (Recess.)
23 EXAMINATION BY MR. PALMINTIER:
24     Q.  Okay.  We ready?
25     A.  Yes.

Page 82

1      Q.  I think when we left off you had
2  discussed just generally a couple of things
3  and a couple of issues in reference to
4  deciphering between whether there was flood
5  damage or wind and rain damage, and that you
6  had stated that that was not a determination
7  that you made; that you relied upon others'
8  determination.  Is that correct?
9      A.  Correct.
10     Q.  Okay.  And we were talking generally
11 about the different reports and we had
12 discussed how the original reports -- what you
13 were asked to do in the original reports.
14     A.  Yes.
15     Q.  And what you were asked to do in the
16 original reports, if you could just state
17 again what it is that you did originally for
18 each property.
19     A.  Back in November?
20     Q.  Yes.
21     A.  Yes.
22     Q.  Yes.
23     A.  Those reports were essentially
24 two-fold.  The first report would be -- And I
25 am talking in general now for all the

Page 83

1  properties.
2      Q.  Okay.
3      A.  They may not apply exactly to each
4  property in the same way as I am going to
5  describe now, but generally I would prepare a
6  repair cost estimate.  Within that repair cost
7  estimate I would have a total repair cost
8  estimate and I would have a repair cost
9  estimate attributable to flood water and a
10 repair cost estimate attributable to wind.
11 Then, in addition to that, I would prepare a
12 cost estimate as if the entire house,
13 residence needs to be demolished and then what
14 the cost would be to rebuild the house,
15 totally rebuild the house.
16     Q.  And I think those reports were
17 called replacement --
18     A.  Cost estimate.
19     Q.  -- cost estimates; correct?
20     A.  Correct.
21     Q.  But you did the same for the
22 replacement cost estimates as well; you had a
23 total, then you had flood and then you had
24 wind; is that correct?
25     A.  That's correct.

Page 84

1      Q.  And tell me step-by-step how you
2  came to those opinions or how you completed
3  the report.  Like what did you do first and
4  then go from step A to step Z.
5      A.  I would determine or find out what
6  the scope of work is and then --
7      Q.  How did you do that?
8      A.  By reading Mr. Danner's report as to
9  how to go about determining the quantification
10 of the scope.  I would rely on that and I
11 would then use his drawing to quantify the
12 scope.  So now I have the scope of work to be
13 done to repair that house or replace that
14 house.
15     Q.  Okay.  And I think, just for
16 purposes of keeping a clean record, you
17 initially said, "I used Danner's report for
18 the quantification --" I mean, just now you
19 said for the quantification of the scope and
20 then the drawings to quantify the things --
21 Maybe if we could change the language from
22 that first thing.  Are you talking about you
23 used Danner's report as a way to determine
24 whether something was flood as opposed to wind
25 and rain?

JOHNS, PENDLETON, FAIRBANKS & FREESE                          504 219-1993

1    A.  That as well, yes.
2    Q.  Okay.  And then you used the report
3  and the drawings in terms of being able to
4  calculate your total break-out?
5    A.  Yes, my quantities --
6    Q.  Right.
7    A.  -- for each damage component.
8    Q.  And if I understood your testimony
9  earlier today before lunch, you had said that
10  you also used photographs and drawings that
11  were provided for you as a way of determining
12  maybe materials and/or -- well, in determining
13  materials; is that correct?
14    A.  The only -- The only drawing I used
15  was those of Mr. Danner's.  The other reports
16  I used to look at photographs and look at
17  finishes.
18    Q.  And the photographs, you said to
19  observe or look at photographs, how did the
20  photographs help you?
21    A.  To tell me what the finishes were in
22  that residence.
23    Q.  So the photographs were used to
24  determine finishes?
25    A.  Correct.

1    Q.  And did you have photographs of --
2  Did you have pre-Katrina photographs of the
3  homes?
4    A.  I don't recall if I had pre-Katrina
5  photographs.  I don't recall that.  There may
6  have been, but I don't recall if they were
7  pre-Katrina.
8    Q.  Okay.  So what was the next step?
9    A.  Okay.  I would then, now that I have
10  quantified the scope, and the scope, if we can
11  maybe -- and can we define "scope", the word
12  "scope" --
13    Q.  I think --
14    A.  -- as we speak about it?
15    Q.  I think you defined "scope" as
16  quantification.
17    A.  Yes, that's part -- that's one
18  evidence.  I mean, that's not exactly an exact
19  synonym.  Scope -- Scope of work is how many
20  or how much of each component of the
21  building.  That's what scope is.
22    Q.  How many or how much of each
23  component of the building --
24    A.  Right.
25    Q.  -- that you are then going to

1  estimate the cost of --
2    A.  Correct.
3    Q.  -- is "scope" --
4    A.  Correct.
5    Q.  -- as you define it?
6    A.  Yes.  Then I will take that scope
7  and apply a unit cost to each line item of the
8  scope of work.  Then -- I just want --
9    Q.  Sure.
10    A.  I'm just giving you a chance to
11  write.
12    Q.  Go ahead.
13    A.  Then, of course, the multiplication
14  of the quantity times the unit cost will give
15  us the total cost for that item, for that line
16  item.  And I will -- Before I start to build
17  my estimate, I would have -- I would set up
18  areas and locations.  In other words, I will
19  have each room set up in my estimate and I
20  would have the exteriors, the roof, and then
21  I'll go to the interiors, the structure, et
22  cetera, et cetera.  I'll have areas and
23  locations assigned for each structure based on
24  the drawing that was provided to me.  So then
25  I would apply the scope of damage for each of

1  those areas that were damaged, if at all.
2    Q.  And you did this in terms of a total
3  damage?  You did this in terms of -- in terms
4  of a flood, or damage caused by flood?  And
5  you did this in terms of damage caused by
6  wind?
7    A.  Yes.
8    Q.  And you did this for both repair and
9  for replacement?
10    A.  Not for each building exactly like
11  that, but yes, in general that's how I
12  approached it.
13    Q.  Okay.  How did you determine the
14  unit cost of each line item?
15    A.  By determining what the cost of
16  materials are for that line item.  I would add
17  -- Okay?
18    Q.  Go ahead.  I'm sorry.
19    A.  I would add then the cost of labor
20  to perform that task for that one unit.
21    Q.  Okay.  But let's go back to how you
22  determined unit cost.  Because I think you
23  have said you determined unit cost by
24  determining what the cost of the unit was?  Is
25  that what you said?

Page 413

```
 1
 2              REPORTER'S CERTIFICATE
 3
 4      I, ROGER D. JOHNS, RMR, RDR, CRR,
 5   Certified Court Reporter, do hereby certify
 6   that the above-named witness, after having
 7   been first duly sworn by me to testify to the
 8   truth, did testify as hereinabove set forth;
 9   that the testimony was reported by me in
10   shorthand and transcribed under my personal
11   direction and supervision, and is a true and
12   correct transcript, to the best of my ability
13   and understanding; that I am not of counsel,
14   not related to counsel or the parties hereto,
15   and not in any way interested in the outcome
16   of this matter.
17
18
19
20              ROGER D. JOHNS
21         CERTIFIED COURT REPORTER
22            STATE OF LOUISIANA
23
24
25
```