# EXHIBIT 26

**JAMES DANNER**                                                **April 18, 2012**

---

**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL
    BREACHES      CIVIL ACTION
CONSOLIDATED LITIGATION    NO. 05-4182 K2
    JUDGE DUVAL
PERTAINS TO MRGO      MAG. WILKINSON
FILED IN:

    05-4181, 05-4182, 05-5237, 05-6073,

    05-6314, 05-6324, 05-6327, 05-6359,

    06-0225, 06-0886, 06-1885, 06-2152,

    06-2278, 06-2287, 06-2824, 06-4024,

    06-4065, 06-4066, 06-4389, 06-4634,

    06-4931, 06-5032, 06-5155, 06-5159,

    06-5156, 06-5162, 06-5260, 06-5771,

    06-5786, 06-5937, 07-0206, 07-0621,

    07-1073, 07-1271, 07-1285

    * * *

    Deposition of JAMES R. DANNER, JR.,
P.E., taken on April 18, 2012, in the Law
Offices of Bruno & Bruno, LLP, 855 Baronne
Street, New Orleans, Louisiana 70113.

REPORTED BY:  LESLIE L. NICOSIA,
        CERTIFIED COURT REPORTER; AND
        PATRICIA O. ENGLISH,
        CERTIFIED COURT REPORTER

---

**Page 3**

I N D E X
                    PAGE
Title.............................. 1
Appearances........................ 2
Index.............................. 3
Stipulation........................ 5
EXAMINATION BY:
    MR. PALMINTIER.................. 6

E X H I B I T S

Exhibit 1........................ 6

Exhibit 2........................ 7

Exhibit 3........................ 10

Exhibit 4........................ 18

Exhibit 5........................ 51

Exhibit 6........................ 77

Exhibit 7........................138

Exhibit 8........................144

Exhibit 9........................144

Exhibit 10.......................145

Exhibit 11.......................156

Exhibit 12.......................177

Exhibit 13.......................179

Exhibit 14.......................182

Exhibit 15.......................217

---

**Page 2**

A P P E A R A N C E S

REPRESENTING THE PLAINTIFFS:
    THE LAW OFFICES OF deGRAVELLES,
    PALMINTIER, HOLTHAUS & FRUGE
    (BY: JOSHUA M. PALMINTIER, ESQ.)
    618 Main Street
    Baton Rouge, Louisiana 70801

REPRESENTING WASHINGTON GROUP
INTERNATIONAL, INC.:
    THE LAW OFFICES OF STONE PIGMAN WALTHER
    WITTMANN
    (BY: JAMES C. GULOTTA, JR., ESQ. AND
    AGNIESZKA A. MCPEAK, ESQ.)
    546 Carondelet Street
    New Orleans, Louisiana 70130

REPRESENTING THE UNITED STATES OF AMERICA:
    U.S. DEPARTMENT OF JUSTICE
    (BY: JAMES F. MCCONNON, JR., ESQ.)
    1331 Pennsylvania Avenue, NW
    Room 8012N
    Washington, D.C. 20004

---

**Page 4**

E X H I B I T S (Continued)
             PAGE
Exhibit 16.......................217
Exhibit 17.......................217
Exhibit 18.......................219
Exhibit 19.......................231
Exhibit 20.......................242
Exhibit 21.......................242
Exhibit 22.......................244
Exhibit 23.......................248
Exhibit 24.......................248
Exhibit 25.......................248
Exhibit 26.......................281

---

1 (Pages 1 to 4)

**JOHNS, PENDLETON, FAIRBANKS & FREESE**                    **504 219-1993**

**JAMES DANNER**                                                    **April 18, 2012**

Page 77

```
 1   home?
 2       A.   They asked me to go out and do an
 3   inspection.  They didn't know what was out
 4   there.  All they had was addresses back
 5   then.  We had an address to go out and look
 6   at it, do your normal inspection, do what
 7   you normally do.  Nobody talked about, you
 8   know, other than my normal inspection, is
 9   causation, whether I wrote many reports,
10   says the same thing, no different.
11           BY MR. PALMINTIER:
12               I will attach as Exhibit 6
13           the October 31, 2011 report that
14           is stated at the top that it's
15           filed 14899B2 MRGO Katrina Canal
16           Breaches Civil Litigation, USDC
17           Eastern District; owner, Kenneth
18           Armstrong, 4016 Hamlet Place,
19           Chalmette, Louisiana.
20   EXAMINATION BY MR. PALMINTIER:
21       Q.   Is this your report that you
22   provided on October 31, 2011 to Mr. Treeby?
23       A.   It looks like it, yes, sir.
24       Q.   Do you have a copy to refer to?
25       A.   Yes, sir.
```

Page 78

```
 1           I need to take a break.
 2           BY MR. PALMINTIER:
 3               I'm going to attach this as
 4           Exhibit 6.  We will take a short
 5           break.
 6               (BREAK TAKEN)
 7   EXAMINATION BY MR. PALMINTIER:
 8       Q.   I've just attached as Exhibit 6
 9   your second Armstrong report, I believe,
10   dated October 31, 2011.  Is that your
11   second Armstrong report?
12       A.   Yes, sir.
13       Q.   You've given testimony that you
14   were instructed for the first report.  It's
15   my understanding you were instructed to
16   give an opinion on causation of damages,
17   just generally speaking?
18       A.   I was asked to give an opinion of
19   what caused the damage from a general
20   standpoint because I didn't have any more
21   information from that point in time to
22   better define it.
23       Q.   You did provide that opinion,
24   correct?
25       A.   Yes, sir.
```

Page 79

```
 1       Q.   For the October 31st report, what
 2   were you instructed in terms of scope of
 3   your work?  If you don't like that term, I
 4   can change that phrase.
 5       A.   Scope of work doesn't get into
 6   the problems until we get into the
 7   conclusions.  The scope of work is
 8   everything, go out and --
 9       Q.   You're given instructions by
10   someone who has hired you to do a certain
11   job, correct?
12       A.   In this circumstance, yes.
13       Q.   What was that?  What were you
14   instructed to do in reference to the
15   October 31, 2011 Armstrong report?
16       A.   Essentially, this is a subsequent
17   report.  Because of litigation, it's a
18   little bit different.  It's not a
19   subsequent report.  It's a standalone
20   report.  There's many aspects in this
21   report that's in the earlier report.
22           I was asked to go back out to the
23   property again and see if there's been any
24   changes.  Then I was given lots of stuff to
25   review, as delineated and listed on the
```

Page 80

```
 1   next six pages.
 2       Q.   I don't mean to interrupt you.  I
 3   would like to get into those things in
 4   greater detail.  What were you instructed
 5   to do by --
 6       A.   That's what I was doing.  I was
 7   to go look at the property again and to
 8   review these documents.
 9       Q.   In order to do what?
10       A.   In order to render an opinion at
11   this point in time.
12       Q.   Maybe I didn't make myself clear.
13   You were instructed to render an opinion,
14   were you not?
15       A.   Yes, sir.
16       Q.   What was that opinion?
17       A.   A series of opinions.
18       Q.   What opinions -- I'm not saying
19   you were instructed to give a specific
20   opinion.  What areas were you to give an
21   opinion in?
22       A.   I was asked -- You are right.  I
23   was not asked or instructed to give a
24   particular opinion, but to review these
25   documents, and if I have any -- Again, you
```

**JOHNS, PENDLETON, FAIRBANKS & FREESE**                    **504 219-1993**

**JAMES DANNER**                                          **April 18, 2012**

Page 81

```
 1    have to go through the opinions to be able
 2    to say -- Nobody asked me to comment on
 3    Mr. Taylor's report, which I did.
 4              I gave a conclusion as far as
 5    what I found and a critique in that report,
 6    but I did that myself; then based on
 7    critiquing the reports of Mr. Taylor and
 8    Mr. Crawford, if I had opinions about what
 9    they said or did not say, and to try to do
10    a better determination, if possible, of
11    what was damaged by wind versus water.
12       Q.   State that last part again.
13       A.   What was damaged by wind versus
14    water.
15       Q.   Wind and rain versus flood?
16       A.   Yes.
17       Q.   When you spoke with either
18    Mr. Treeby or someone else that was the
19    representative, the attorney for the
20    defense in this case, they told you -- they
21    instructed you to write a report concerning
22    the Armstrong home and whether the cause of
23    damages to the Armstrong home were wind and
24    rain or flood?
25       A.   No.  Again, I will go through it.
```

Page 82

```
 1    They asked me if I would take a look at it,
 2    to review these documents and write a
 3    report based on what I found in those
 4    documents.
 5       Q.   And the inspection?
 6       A.   Yes.  No one instructed me what
 7    to put on Page 7.  I'm not saying they did
 8    or did not.  I'm just saying, this is what
 9    I produced to them based on --
10       Q.   If I'm understanding you
11    correctly, and I'm probably not, they asked
12    you to do an inspection, review some
13    documents and write a report?  They had no
14    -- Other than that, you had no instruction
15    as to what the report was to say?
16       A.   We knew at that point in time we
17    didn't have the hydrological data, so I
18    said, "Don't get into that until we get
19    that data."  Generally speaking, they give
20    me the data, and I read it and I come up
21    with my own conclusions or critique in this
22    case.  No one is telling me --
23       Q.   No one instructed you to -- as to
24    give a critique of the Taylor or Crawford
25    reports?  Is that your testimony?
```

Page 83

```
 1       A.   No, they did not tell me to do
 2    that.
 3       Q.   Did they tell you to -- They did
 4    ask you if you could read the reports,
 5    correct?
 6       A.   No.  They gave me the reports to
 7    read.  They provided me with those reports.
 8    I don't even know if they told me to read
 9    them.  Normally, if somebody gives me a
10    report, they may have said, "Review these
11    reports."
12       Q.   It was your understanding they
13    gave you the reports for a purpose?  It was
14    probably to read them, to review them?
15       A.   I don't know what the purpose
16    was.  They gave me reports, and I reviewed
17    them and I wrote a report based on what I
18    read, and the other things as well.  To
19    deal with wind at this point in time,
20    hydrologic later or flooding later.
21       Q.   If you flip to Page 7 of this
22    report, the October 31, 2011 Armstrong
23    report, the first conclusion is the damage
24    to the Armstrong residence related to the
25    passage of Hurricane Katrina was caused by
```

Page 84

```
 1    a combination of flooding, wind, and rain.
 2    That is kind of what your opinion is in
 3    your 2007 report that is incorporated in
 4    the conclusions here; is that correct?
 5       A.   Yes, sir.  Having read everything
 6    else, my opinion in 2007 stands as written.
 7    Sometimes it changes, but not in this case.
 8       Q.   On Page 5 of the report, under
 9    "Additional Living Expenses" you state,
10    "Mr. Taylor made no allotment of
11    depreciation of the residence or betterment
12    for repairs."  Why was that included in
13    your report?
14            BY MR. GULOTTA:
15              What section?
16            BY MR. PALMINTIER:
17              Page 5.  At the top,
18            there's "Additional Living
19            Expenses."  What I read was
20            directly what he states.
21            BY THE WITNESS:
22              That's in the end of No.
23            10, which starts over on Page 4.
24            BY MS. MCPEAK:
25              If you read the sentence,
```

                                          21 (Pages 81 to 84)

**JAMES DANNER**                                                    **April 18, 2012**

Page 285

```
1
2                C E R T I F I C A T E
3
        I, Patricia O. English,
4   Certified Court Reporter, in and for the
    State of Louisiana, do hereby certify that
5   JAMES R. DANNER, JR., after having been
    first duly sworn to testify to the truth,
6   the whole truth, and nothing but the truth,
    did testify as hereinbefore set forth in the
7   foregoing (182) pages;
8           That the testimony was reported
    by me in shorthand and transcribed by means
9   of computer-aided transcription, and is a
    true and correct transcript, to the best of
10  my ability and understanding, at the time of
    the production of said transcript.
11
            That I cannot, however, certify
12  or attest to the accuracy or validity of any
    copy not produced under my direct
13  supervision or control, and, further, do not
    lend certification to any such copies unless
14  they bear my original imprinted seal or
    signature.
15
            That I am not of counsel, not
16  related to counsel nor to the parties
    hereto, and am in no way interested in the
17  outcome of this event.
18
19
20  -----------------------------
    PATRICIA O. ENGLISH
21  Certified Court Reporter
    State of Louisiana
22
23
24
25
```

Page 286

```
1
2
3           W I T N E S S'  C E R T I F I C A T E
4
5       I, JAMES R. DANNER, JR., P.E., do
6   hereby certify that I have read or have had
7   read to me the foregoing testimony, and it
8   is true and correct to the best of my
9   ability and understanding.
10
11  (Please check one of the following)
12      I AM RETURNING THE TRANSCRIPT:
13      ___ Without corrections.
14      ___ With corrections and/or additions
15  attached hereto.
16
17
18
19  _____
20      JAMES R. DANNER, JR., P.E.
21
22
23
24
25
```

Page 287

```
1   READ & SIGN INSTRUCTIONS
2   DEADLINE:  TRANSCRIPT MUST BE RETURNED AS
              SOON AS POSSIBLE
3
    To:  James R. Danner, Jr.
4   Date:  May 2, 2012
    Re:  Deposition taken on April 18, 2012
5
        Enclosed you will find the transcript
6   of your deposition which is being sent to
    you for reading and signing.
7       This is an official document.  Please
    guard it carefully to see that it is not
8   damaged.  Please do not make corrections or
    mark on the typewritten transcript.  Make
9   any changes or corrections on the correction
    sheet provided.  For example: Page 22
10  Line 7  "write"  should be  "right."
        Please sign the witness certificate
11  attached to this instruction letter and
    indicate in the space provided whether or
12  not any corrections were made on the
    correction sheet.  A pre-addressed envelope
13  is included; however, postage must be
    affixed before you mail the transcript,
14  correction sheet and Witness' Certificate
    back to our office.
15      As stated in Article 1445 of the Code
    of Civil Procedure, if the deposition is not
16  signed within thirty (30) days of its
    submission to you, the deposition may then
17  be used as fully as though signed.
        This transcript MUST BE RETURNED TO ME
18  even if the time allotted to complete
    reading and signing has elapsed.
19      Your prompt attention to this matter
    is appreciated.
20
21      Sincerely,
22
23
24      Leslie L. Nicosia, C.C.R.
        Patricia O. English, C.C.R.
25
```

Page 288

```
1
2                C O R R E C T I O N  S H E E T
3   PAGE      LINE      DESCRIPTION
4   _____  _____  _____
5   _____  _____  _____
6   _____  _____  _____
7   _____  _____  _____
8   _____  _____  _____
9   _____  _____  _____
10  _____  _____  _____
11  _____  _____  _____
12  _____  _____  _____
13  _____  _____  _____
14  _____  _____  _____
15  _____  _____  _____
16  _____  _____  _____
17  _____  _____  _____
18
19
20  RE:  USDC, EASTERN DISTRICT OF LA., IN RE:
    KATRINA CANAL BREACHES CONSOLIDATED
    LITIGATION, PERTAINS TO: MRGO, ARMSTRONG NO.
21  10-866, C.A. NO. 05-4182"K" (2), JUDGE
    DUVAL, MAG. WILKINSON -- DEPOSITION OF JAMES
22  R. DANNER, JR.
23
24
25
```

72 (Pages 285 to 288)