UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: MRGO | * | |
| *Armstrong*, No. 10-866 | * | SECTION "K"(2) |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO LIMIT
DUPLICATIVE TESTIMONY BY DEFENDANTS' EXPERT WITNESSES**

PLAINTIFFS seek an order requiring Defendants to eliminate duplicative expert testimony

and to clarify which experts will testify on which topics at trial.  Such an order would streamline the

trial, conserve the parties' and the Court's time and resources, and permit Plaintiffs' counsel to

prepare properly for the subject matters each expert will actually testify upon.  Otherwise, Plaintiffs'

counsel must spend countless hours preparing numerous lines of cross-examination on topics that

Defendants either do not intend to elicit from a given expert or that eventually Defendants will be

foreclosed from offering because the testimony is duplicative.

1.   Defendants interests are aligned.  Both posit essentially the same breach causation

theories—that the North Breach was due to hydrostatic pressure causing differential movement, that

the South Breach was caused by overtopping-induced erosion and consequent flood wall instability,

and that Dr. Bea's underseepage and uplift-pressure causation opinions are flawed.

2.   The Defendants have named a dozen testifying experts. (Doc. 20920.)  The defense

1

experts' testimony overlaps considerably on numerous subject matters.  Plaintiffs focus this motion on the three most important (and most duplicative) of those subjects.  While each expert may have opinions distinct from others (hence Plaintiffs do not seek to strike the experts themselves), Plaintiffs and the Court should know before trial which expert will actually be called to testify and the distinct subject matter on which that expert will offer opinions.

2a.  **Soil Stratigraphy & Soil Properties.**  The following defense experts offer substantive opinions regarding the soil stratigraphy and general properties of the soils at the site, opining similarly on the stratigraphy itself and opining on the permeability of the soils (examples are given in the footnotes)[1]:

- Dr. Thomas Brandon (USA)[2]
- Dr. Joseph Dunbar (USA)[3]
- Dr. Patrick Lucia (USA)[4]
- Dr. Allen Marr (USA)[5]

---

[1] Because the parties will be filing expert reports, the excerpts cited in support of this motion are not attached, as they would be voluminous and duplicative of what is being filed separately.

[2] *Soils (Brandon)*: Brandon Expert Rep. at 1-9 (addressing stratigraphy and stating his report "investigate[s] the engineering properties of the various soils that lay beneath the surge"); 9-16 (discussing character and permeability of soils at EBIA site); 23-27 (four sections devoted to soil permeability in the context of seepage analysis); 44 ("An assortment of field and laboratory permeability tests was evaluated to determine the permeability of the lower organic clay material.")

[3] *Soils (Dunbar)*: Dunbar Expert Rep. at 1-2 ("Fine-grained natural levee and inland swamp deposits are characteristic of this area. Permeable depositional environments capable of producing underseepage conditions do not occur at this location."); *Id.* ("A wealth of boring and geologic data ... identifies the soils on the east side of the IHNC as being predominantly clay and organic clay soils."); 5-12 (sections including "IHNC Subsurface Geology, Classification of Peats and Organic Clays, Swamp and Marsh Deposits in the IHNC, and Peat Thickness Mat"); 27 ("[T]he stratigraphy consists of clay and organic clay....")

[4] *Soils (Lucia)*: Lucia Expert Rep. at 69 ("[T]he soils beneath the base of the sheet pile wall along the EBIA are classified as 'fat clay'...."); *Id.* ("[A] review of all the available data that could identify the nature of backfill material were reviewed. The results of that review are shown...."); 75 (ostensibly testifying re standard of care, but observing "There is no information available in the documents relative to this project that indicates that these soils had permeable pathways under the levees and floodwalls.")

[5] *Soils (Marr)*: Marr Expert Rep. at 41-47 § 3.3 ("Subsurface Profiles"); 48 § 3.4.4 ("Soil Profiles at Representative Sections"); 50 § 4.1 ("Subsurface Soils"); *Id.* ("In the overall picture, the clay fill, upper organic clay, lower organic clay, and interdistributary clay are all plastic soils with permeability less than $10^{-5}$ cm/sec.... [As to

·  Dr. Thomas Naymik (USA)[6]
·  Dr. Francisco Silva-Tulla (WGI)[7]
·  Dr. Tim Stark (USA)[8]

2b. **Underseepage/Flow.** The following defense experts perform seepage analyses or offer substantive opinions regarding actual or potential seepage from the canal side to the land side during Katrina (often overlapping with testimony on soils, as identified above, given the role permeability plays in seepage analysis):

·  Dr. Thomas Brandon (USA)[9]
·  Dr. Joseph Dunbar (USA)[10]

---

behavior of these soils,] Dr. Brandon and Dr. Stark consider this point in much more detail and arrive at the same conclusion.")

[6] *Soils (Naymik)*: Naymik Expert Rep. at 1-2 ("Boring logs indicate abundant clay deposits throughout the tested area with interspersed layers of organic-rich clay.  These organic clay layers are discontinuous throughout the area...."); 25 ("The geological deposits of the study area consists of water lain, deltaic, clay-rich materials consistent with the swamps, lakes and other slow moving surface water bodies of the current day clay depositions in the Mississippi Delta. The continuity of the organic clay deposits in the subsurface was determined by 40 soil borings....""); § 4.1 (entitled "Subsurface Geologic Cross Sections, Permeability Distribution, and Presence of Discontinuous Organic Material"); 26 ("Boring logs indicate abundant clay deposits throughout the tested area with interspersed layers of organic clay.")

[7] *Soils (Silva)*: Silva Expert Rep. at 34 ("Figures IV-3 and IV-4 show the surface topography and subsurface stratigraphy for the North Breach and South Breach study sections."); 37 ("Appendices C and D summarize our evaluation of the IHNC-EBIA soil properties [448 pages]. Tables IV-2 and IV-3 present the properties selected for flow analyses."); 43 ("The EBIA soils did not exhibit a high degree of permeability anisotropy – unequal permeability in different directions....").

[8] *Soils (Stark)*: Stark Expert Rep. at 112-153 § 6 ("Stratigraphic Interpretations" including "Subsurface Investigation" (17 pages), "North Breach Soil Stratigraphy" (20 pages), "South Breach Soil Stratigraphy" (8 pages)); 159-212 § 7 ("Soil Hydraulic Properties").

[9] *Underseepage (Brandon)*: Brandon Expert Rep. at 1 ("no significant flow could have traveled through the soil deposits during the brief time between the onset of storm-surge loading and floodwall-failure); 22-42 (several sections devoted to underseepage analysis); 43 ("An assessment of the stability and seepage conditions of the north and south failures of the IHNC is provided in this report."); *Id.* ("There is no evidence of hydraulic connections through pervious soil layers from the canal side of the wall to the low permeability organic clay."); 44 ("[T]he total amount of seepage under the levees that occurred as a result of Hurricane Katrina was less than 150 gallons."); *Id.* ("[F]low beneath the I-wall was virtually non-existent.")

[10] *Underseepage (Dunbar)*: Dunbar Expert Rep. at 1 ("[F]ield study of the physical and stratigraphic evidence from this area does not support underseepage as a valid mechanism contributing to these two levee failures."); *Id.* ("These types of [soil] deposits are not capable of producing the seepage conditions necessary to

·      Dr. Patrick Lucia (USA)[11]
·      Dr. Allen Marr (USA)[12]
·      Dr. Thomas Naymik (USA)[13]
·      Dr. Francisco Silva-Tulla (WGI)[14]
·      Dr. Timothy Stark (USA)[15]

2c. **Excavation Causation.** The following experts opine that WGI's site-clearing activities did not cause or substantially contribute to the breaches:

·      Dr. Thomas Brandon (USA)[16]

---

cause the levee failures by this mechanism . . . . [T]he field evidence from this are does not directly support underseepage as a valid and viable mechanism contributing to these failures.")

[11] *Underseepage (Lucia)*: Lucia Expert Rep. at 75 ("To further evaluate the reasonableness of this assessment by the USACE, seepage analyses were performed as part of this study of each of the excavations in the Boland and Saucer Marine areas."); *Id.* ("I find no negligence on the part of the USACE in the assessment of the seepage conditions...."); *Id.* ("no seepage problems could be identified from excavations and backfill in the Boland and Saucer Marine areas."); 72 (Fig. 4-4 "Seepage Analysis").

[12] *Underseepage (Marr)*: Marr Expert Rep. at 59 ("My seepage analysis comprises two analysis cases: steady-state seepage and transient seepage. Both cases require representative values of permeability."); 66 ("my group performed flow analysis using the computer program PLAXIS."); 65-73 § 5.2 ("Potential Causes of Failure of the North Breach ... Excessive Seepage Beneath I-Wall"); 92-106 § 6.2 ("Potential Causes of Failure of the South Breach ... Excessive Seepage Beneath I-Wall"); 117 (regarding North Breach: "Flow analyses show that the duration of high head differential was short relative to the time it takes for water to flow within the soil from the canal to the land side. Little change in pore water pressure occurred in the soils on the land side...."); *Id.* (same quote regarding South Breach).

[13] *Underseepage (Naymik)*: Naymik Expert Rep. at 1 ("The horizontal hydraulic conductivity (permeability) values of subsurface deposits as determined by in situ and laboratory testing are low...."); 1-2 ("The discontinuous nature of the subsurface organic clay deposits, do not provide migration pathways to enhance groundwater movement through the units investigated."); 23 ("Samples of the subsurface deposits were obtained from 40 soil borings conducted at the EBIA and tested for horizontal and vertical permeability.") (summarizing testing "methods of hydraulic conductivity determination"); 26 ("The discontinuous nature of the subsurface organic clay deposits do not provide migration pathways to enhance groundwater movement....)"

[14] *Underseepage (Silva)*: Silva Expert Rep. at 53 ("Neither shear slides through foundation soils nor seepage-induced mechanisms, were involved in the failure of the EBIA levees."); 70 ("Based on his incorrect and misleading flow analyses, Dr. Bea reach incorrect and invalid conclusions about the cause of the EBIA failures....")

[15] *Underseepage (Stark)*: Stark Expert Rep. at 5 ("Results of steady state and transient seepage analyses are presented to show the effect of the excavations created and backfilled by WGI."); 213-55 § 8 ("North Breach Seepage Analysis") 256-72 § 9 ("South Breach Seepage Analysis").

[16] *Causation (Brandon)*: Brandon Expert Rep. at 1 ("WGI's site-clearing activities did not cause or contribute in any way to the breaches in the floodwall at the eastern edge of the EBIA."); 44 ("It is my opinion, to a reasonable degree of scientific certainty, that WGI's site-clearing activities did not cause or contribute in any way to

·   Dr. Patrick Lucia (USA)[17]
·   Dr. Allen Marr (USA)[18]
·   Dr. Francisco Silva-Tulla (WGI)[19]
·   Dr. Tim Stark (USA)[20]

3.  Of course the Court may prohibit cumulative expert testimony; and it may do so before

trial begins:

> It is well within the discretion of a district court to limit the number of expert
> witnesses who testify at trial. A trial judge can exercise this discretion before trial,
> see F.R.Civ.P. Rule 16(4), or during trial, after one party has put all its experts on the
> stand.

*Aetna Cas. & Sur. Co. v. Guynes*, 713 F. 2d 1187, 1193 (5th Cir. 1983) (upholding trial court's

exclusion of defense experts after plaintiffs' experts had testified) (citations omitted); *see also Leefe*

*v. Air Logistics, Inc.*, 876 F.2d 409, 410-11 (5th Cir. 1989) ("It is within the power of the district

court to exclude testimony that is repetitious and cumulative of testimony already before the court.

---

the breaches in the floodwall at the eastern edge of the EBIA.")

[17] *Causation (Lucia)*: Lucia Expert Rep. at 74 ("In regard to the evaluation of the impacts of the excavation and backfill work ... I find no negligence on the part of the USACE."); 74-75 (stating the excavations "are outside the MCL and would have no effect on the global stability of the wall"); 75 ("I find no negligence on the part of the USACE in the excavation and placement of backfill in the work under Task Order 26....")

[18] *Causation (Marr)*: Marr Expert Rep. at Title Page ("What Caused the I-Wall Failures at the EBIA North and South Breaches?"); 72-73 (describing his modeling of North Breach excavations and his conclusion that even worst-case excavations would have no impact on subsurface flow); 92-105 (same for South Breach); 116-18 (summarizing opinions on what caused both breaches).

[19] *Causation (Silva)*: Silva Expert Rep. at 1 ("This report presents my assessment of the cause of failure for the North Breach ... and the South Breach..... This report also examines the relationship, if any, between the activities of an environmental remediation project, completed by Washington Group International, Inc. (WGI) under contract to the U.S. Army Corps of Engineers (USACE) three months before Katrina."); 47 ("The excavations performed by WGI during the EBIA environmental remediation project did not contribute to the cause of the failure."); 70 ("The excavations performed by WGI during the EBIA environmental remediation project did not contribute to the cause of the EBIA failures during Hurricane Katrina.")

[20] *Causation (Stark)*: Stark Expert Rep. at Title Page ("Effect of WGI Excavations on Floodwall Breaches...."); 5 ("[T]he WGI Excavations: did not create a rapid hydraulic connection between the Hurricane Katrina storm surge and the relevant soil foundation soil strata; did not cause detrimental seepage or hydraulic uplift to the floodwall; and did not cause either breach of the floodwall....")

This court can reverse a district court's exclusion of testimony for abuse of discretion only if we find that the ruling was manifestly erroneous.") (citations omitted).

4. <u>Plaintiffs seek more than a pronouncement that cumulative testimony will not be allowed</u>. By over-designating experts the Defendants nullify Rule 26(a)(2), which requires disclosure of <u>opinions intended to be offered at trial</u> so that opposing parties can meaningfully and efficiently prepare for trial. By designating a half-dozen experts to cover a given issue, Defendants skirt their obligation to identify who will testify as to what—i.e., who actually will be called to testify at trial and who will address a specific topic at trial—thus requiring Plaintiffs to prepare broad cross examinations just so they can be sure to cover the one or two topics a given defense expert actually will cover. The defense approach thus causes a tremendous amount of needless, expensive, time-consuming preparation by Plaintiffs' counsel; it otherwise injects cumulative and redundant testimony into the trial; and it unfairly requires Plaintiffs to reserve a disproportionate portion of their allotted trial time for cross-examination.

**WHEREFORE**, Plaintiffs seek an Order in limine that **(i)** prohibits the presentation of cumulative expert testimony at trial, and that **(ii)** requires Defendants to specifically identify which of their experts are expected to offer trial testimony on the subjects of (a) soils and soil stratigraphy, (b) underseepage, and (c) excavation causation.

Respectfully Submitted,

PLAINTIFFS' LIAISON COUNSEL

/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar No. 3604)
BRUNO & BRUNO, L.L.P.
855 Baronne Street

6

New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE

/s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
Domengeaux Wright Roy & Edwards LLC
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

MR-GO PLAINTIFFS SUB GROUP LITIGATION COMMITTEE
Jonathan Andry (The Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 10th day of August, 2012.

/s/ Joseph M. Bruno
Joseph M. Bruno