UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: MRGO | * | |
|     *Armstrong*, No. 10-866 | * | SECTION "K"(2) |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE INSURANCE CLAIM FILES AND UNRELATED LEGAL PROCEEDINGS**

**MAY IT PLEASE THE COURT:**

Plaintiffs submit this memorandum in support of their motion *in limine* for an order excluding evidence of, and reference to, insurance claim file documents (including adjusters' reports), as well as documents compiled in unrelated legal proceedings as set forth in greater detail below. The information in these files and reports fails a host of evidentiary requirements including those for hearsay, expert testimony, relevance, and unfair prejudice.

**I. FACTS**

It is undisputed that the Plaintiffs suffered catastrophic flooding that destroyed or severely damaged their homes. Plaintiffs were displaced and required financial assistance to survive and rebuild their lives. In the aftermath of the storm, Plaintiffs turned to various sources

1

for financial assistance including federal grants, gratuitous gifts from charitable organizations, private donors, friends and family members, and insurance proceeds under applicable insurance policies. Plaintiffs filed insurance claims under various insurance policies they maintained on their properties.

Plaintiffs anticipate that Defendants will rely on many of the insurance documents generated during the filing of these insurance claims, as well as documents compiled during the litigation of unrelated legal proceedings. It is anticipated that Defendants will attempt to use these documents to prove or disprove the cause of Plaintiffs' damages as well as to try to minimize the amount of Plaintiffs' damages claims. There is no legal basis for the admissibility of either category of evidence. Accordingly, Plaintiffs seek an Order from this Court excluding evidence of, and reference to, any of the following:

1) Wind and rain as well as flood insurance claims files including but not limited to adjusters' estimates, and insurance payments;

2) Legal documents including but not limited to petitions for damages, pleadings and receipt and release documents in unrelated causes of action used for the purpose of determining causation and/or damages in the matter now before the court.

The unreliable hearsay and impermissible opinions contained in these documents do not have any probative worth to the issues before the Court. They are not legal determinations as to causation and, if admitted, would be unfairly prejuducial to the fact finder when determining that issue. Further the individuals performing inspections and/or offering settlements of claims (1) are not witnesses either lay or expert in the case, (2) do not have a rational basis for the assertion of their opinions, and (3) fail to meet any jurisprudential standards which would allow the testimony contained in these documents to be admissible.

## II.  LAW AND ARGUMENT

A.  <u>**INSURANCE CLAIM FILES ARE INADMISSIBLE HEARSAY.**</u>

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid 801. The reports and insurance claims files are out-of-court statements by the insurance adjusters as well as the out-of-court statements of the insureds, on which the adjusters rely.  Thus, the documents are inadmissible unless they fall under a specific hearsay exception enumerated in Rule 803.  Fed. R. Evid 802.  No exceptions apply here.

The insurance claims files and adjusters' reports at issue here do not meet the requirements of the one exception under Rule 803 that, on its face, may look applicable—the business records exception.  Under the business records exception out-of-court statements are admissible if they are "Records of regularly conducted activity," defined as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, **made at or near the time by, or from information transmitted by, a person with knowledge**, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, **unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.**

Fed. R. Evid. 803(6) (emphasis added).

The records at issue fail all three of Rule 803(6)'s most pivotal requirements:

(1)   They fail to meet the temporal requirement, because the records were not created "at or near the time" of the events, but much later;

(2)   They fail to meet the knowledge requirement, because the record was created by persons with no direct knowledge of the events – because neither Plaintiffs nor the adjusters were present at the time; and

  (3) They fail to meet the trustworthiness requirement, because neither Plaintiffs nor the adjusters were equipped with the training and expertise necessary to reach the causation conclusions and impressions transcribed in their reports.[2]

The claims forms and adjusters' files do not meet the requirements of the business record exception for additional reasons. For one, "business records are admissible if . . . they are not themselves mere accumulations of hearsay." *Capital Marine Supply, Inc. v. M/V Roland Thomas, II*, 719 F.2d 104, 106 (5th Cir. 1983); *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980); *United States v. Fendley*, 522 F.2d 181, 184 (5th Cir. 1975), *rev'd. on other grounds*, 425 U.S. 435 (1976). The information contained in these reports is accumulation of hearsay. It was derived from two different hearsay sources:

  1) Conversations with the insured claimants, i.e., persons neither present during nor immediately after the damage sustained in Katrina and otherwise unqualified (based on education and experience) to speculate as to such causation or damages without first-hand knowledge; and

  2) The hearsay statements of the adjusters which were incorporated into their reports and the insurance claims documents.[3]

What's more, the insurance claim files amount to hearsay within hearsay, i.e. double hearsay. In order for the files to be admissible, each part of the combined statement must conform with an exception to the hearsay rule provided in these rules." Fed. R.Evid. 805. The reports of these independent adjusters were based upon the insureds' unqualified statements when making their claims. For example, if a report was based on a statement by an insured claimant such as: "I believe this item was damaged by wind and rain," such a statement is hearsay and inadmissible. It is an out-of-court guess (statement) of the insured, transcribed by

---

[2] It is of significance that Defendant's Final Witness list does not contain a single witness from the insurance claims files or unrelated legal proceedings.

[3] The adjusters are not slated to be called at trial, thus their out-of-court written statements, offered to prove the truth of the matters they assert, are considered hearsay. Fed. R. Evid. 801.

4

the insurer, and without any hearsay exception under Rule 806 to justify its admission. Since such statements were used as a basis for the insurance claims and reports they are inadmissible hearsay for this additional reason.

In summary, because the initial information supplied to the insurance adjusters came from a source (1) without first-hand knowledge and (2) not qualified (trustworthy) to draw the kind of conclusion regarding causation, and (3) the record was created only well after the relevant events, the insurance claim files do not fall within the business records exception of Rule 803(6), and hence are inadmissible.

### B. THE INSURANCE ADJUSTERS IN QUESTION ARE NOT THEMSELVES QUALIFIED EXPERTS.

The insurance records at issue also are inadmissible because none of the independent adjusters qualify as experts that would allow them to introduce their reports and statements into evidence as expert testimony. The adjusters do not meet the stringent requirements for lay or expert witnesses under the Federal Rules of Evidence. Rule 701 outlines the qualifications for lay witnesses:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Rule 702 provides for the qualification of an expert witness:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Rule reflects the Supreme Court's decisions of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. at 147.

> The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

*Matthews v. Allstate Ins. Co.*, 731 F. Supp. 2d 552, 555-56 (E.D. La. 2010).

In the case at bar, the reports of the independent adjusters are themselves inadmissible as they are unsupported non-expert opinions. No adjuster who made initial inspections and recommendations has been qualified as an expert, nor have any of the adjusters been listed as expert or lay witnesses before this Court. Therefore, their reports would not be admitted via their testimony as either experts under Federal Rule of Evidence 702 or as lay witnesses under Rule 701.

**C.** **EVIDENCE RELATED TO SETTLEMENT OF CLAIMS IS INADMISSIBLE.**

Evidence or references to the settlements themselves is inadmissible. Federal Rule of Evidence 408 states the instances in which settlements are not admissible:

> **(a) Prohibited uses.**—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was

> disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
>> **(1)** furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>>
>> **(2)** conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408. In regards to these settlements, not only are the settlements themselves excluded, but any references to determinations, opinions, or other statements of relevant facts are also excluded. Any evidence contained in the settlements regarding damage sustained by wind and rain versus flooding is inadmissible. *See, e.g., Verdin v. Texaco, Inc.*, No. CIV. A. 92-3405, 1995 WL 232667, at *1-2 (E.D. La. Apr. 18, 1995) (Vance, J.) (holding check in payment of claims prior to initiation of litigation constituted a settlement under Rule 408 and was inadmissible); *See also Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986) (holding disclosure of settlement terms, including settlement amount, is inadmissible under Rule 408).

**D.** **THE INSURANCE CLAIM FILES ARE INADMISSIBLE AND UNDULY PREJUDICIAL.**

The insurance claim files also are irrelevant and prejudicial. Of course, only relevant evidence is admissible; irrelevant evidence is not. Fed R. Evid. 402. The scope of relevant evidence is provided by Federal Rule of Evidence 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if relevant, evidence may still be inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Trial courts must "weigh the evidence's contribution to the case against any potential prejudice or confusion." *F.D.I.C. v. Wheat*, 970 F.2d 124, 131 (5th Cir. 1992).

The probative value of the adjusters' reports and claims files here is outweighed by the waste of time required by hearing that evidence.  As discussed above, significant questions remain regarding the adjusters' expertise and whether they had the necessary foundation to render any opinions regarding the cause of damage to Plaintiffs' residences.  Therefore, the probative value of the reports is fundamentally limited.  The wasted time required to authenticate, argue, cross-examine upon, and if need be, admit these reports outweighs their probative value.  Further, evidence of the adjusters' reports carries the added risk of confusing the fact issues in this case.  Therefore, any mention of the adjusters' reports will unfairly prejudice the causation analysis, so they should be excluded.

### III. CONCLUSION

Defendants' attempt to use insurance claims files and documents compiled in unrelated legal proceedings in the case at bar is improper.  Defendants should not be permitted to introduce this evidence in an effort to absolve themselves of liability and/or to diminish the damages incurred by plaintiffs for which they are responsible.  Plaintiffs respectfully request this Court enter an Order excluding Plaintiffs' insurance claims files as well as documents compiled in unrelated legal proceedings.

Respectfully Submitted,

PLAINTIFFS' LIAISON COUNSEL

/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar No. 3604)
BRUNO & BRUNO, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE

/s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
Domengeaux Wright Roy & Edwards LLC
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

MR-GO PLAINTIFFS SUB GROUP LITIGATION COMMITTEE
Jonathan Andry (The Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 10th day of August, 2012.

/s/ Joseph M. Bruno
Joseph M. Bruno