UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 |
| | * | |
| | * | SECTION"K" (2) |
| | * | |
| | * | JUDGE DUVAL |
| PERTAINS TO: MRGO | * | |
|     *Armstrong*, No. 10-866 | * | MAGISTRATE WILKINSON |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
<u>DIMINUTION OF VALUE AS AN APPROPRIATE MEASURE OF DAMAGES</u>**

**MAY IT PLEASE THE COURT:**

   The Armstrong, Holmes, and Livers Plaintiffs submit this motion *in limine* to exclude any evidence or expert testimony, relating to diminution in value of their family homes as the appropriate measure of the extensive damages caused by Katrina flood waters. Under applicable Louisiana law, when property has been destroyed, a plaintiff is entitled to elect as damages either (1) the cost of restoration or replacement of the property or (2) the difference in property value before and after the occurrence. Courts have held that the replacement/restoration cost measure of damages is the only proper measure of damages when there is a reason personal to the

1

plaintiff for replacing/restoring the property. Indeed, there can be no more personal reason as the restoration of a family home.

Here, all Plaintiffs have elected to receive restoration/replacement damages to their family homes. Evidence relating to diminution in value as an appropriate method to calculate Plaintiffs' damages should be excluded.

### I. The Court Should Exclude Evidence of Damages Calculated Using Diminution in Value Because Replacement Cost is the Only Proper Measure of Damages Under the Circumstances.

Plaintiffs anticipate that defendants, Washington Group International, Inc. and the U.S. Army Corps of Engineers (collectively, "Defendants") will seek to introduce evidence and expert testimony that damages should be calculated using the diminution in value method, which involves using an estimated pre-Katrina value of the property less the post-Katrina sale value of the empty lot or, more generally, the value of the property post-Katrina. Such evidence is improper under the circumstances and must be excluded.

Under Louisiana law, "'when property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage.'" *Hornsby v. Bayou Jack Logging*, 2004-1297, p. 5 (La. 5/6/05), 902 So. 2d 361, 365 (quoting *Coleman v. Victor*, 326 So. 2d 344, 346 (La. 1976)). When property has been destroyed, an owner is "entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, *at his election*, the difference between the value of the property before and after the harm." *Roman Catholic Church v. La. Gas Serv. Co.*, 618 So. 2d 874, 879-80 (La. 1993) (emphasis added); *see also, e.g.*, *Mayer v. McNair Transport, Inc.*, 384 So. 2d 525, 526-27 (La. App. 2d Cir. 1980) ("[The defendants] contend replacement cost is not a legally permissible method of computing damages where the value of

2

the thing destroyed can be determined. We do not agree."). While diminution in value may be appropriate in some circumstances where, for example, the cost of restoration or replacement is disproportionate to the value of property, if the property is a family home, obviously personal to the owner, replacement costs are the only appropriate measure of damages even if the cost to restore is "economically wasteful." *See Corbello v. Iowa Prod.*, 2002-0826, pp. 7-8 (La. 2/25/03), 850 So. 2d 686, 694; *Roman Catholic Church*, 618 So. 2d at 878-80. Above all, any rule regarding assessment of property damages should not be mechanically applied; the facts and circumstances surrounding each case should be examined to determine the appropriate method of measuring damages. *Coleman*, 326 So. 2d at 347; *Banks v. New Orleans City*, 620 F. Supp. 2d 741, 745 (E.D. La. 2009).

### II. **Under the Facts of This Case, the Diminution in Value Method Is Grossly Unfair, Because it Again Victimizes Plaintiffs, and Allows Defendants to Profit from Their Torts by Avoiding $434,000.00 in Damages at the Expense of Plaintiffs.**

Defendants use a market value appraisal approach (MV) employing values of comparable properties, based on sales transactions through 2009, to establish post–Katrina values as of 2009. The proper date to measure the loss is circa September, 2005, the date of loss and a time when there was no market available for comparison. As of September, 2005, no other valuation save replacement value was available as a method to calculate the Plaintiffs' damages. A market value appraisal as of 2009 is irrelevant as the law requires that the loss be measured when sustained, not some seven years later.

Using only a comparable sales data, WGI ignores Plaintiffs' election of measuring their damages by using the cost of restoration or replacement of their family home. Plaintiffs observe the WGI cannot properly support such an appraisal based upon the skewed real estate market

post-Katrina exacerbated by Road Home sales that had little or no relationship to true value. Many were no more than a Hobson's choice, giving no indication of the true value.

Under applicable law, Plaintiffs are entitled to elect restoration/replacement damages. Moreover, only Plaintiffs' methodology will adequately compensate the Plaintiffs for the destruction of their family homes and avoid the windfall the tortfeasors will reap if Defendants' proposed value method were allowed.

The following chart demonstrates that if the diminution of value approach favored by WGI and the Government was adopted, Plaintiffs' damages of $434,000.00 (MV/ACV differential) would be without compensation. Adopting this view, advocated by the Defendants experts, Messrs. Truax, would turn decade upon decade of Louisiana damage law and jurisprudence on its head.

|  | 1. Truax pre-K, MV | 2. Truax post-K, MV | 3. Taylor pre-K, RCV | 4. Taylor post-K, ACV | 5. MV/ACV post-K differential |
|---|---|---|---|---|---|
| Holmes | $115,000. | 30,000. | 180,000. | 180,000. | 150,000. |
| Armstrong | 146,000. | 30,000. | 197,000. | 197,000. | 167,000. |
| Livers | 140,000. | 46,000. | 163,000. | 163,000. | 117,000. |
|  | $401,000 | $106,000. | $540,000 | $540,000 | $434,000. |

(N.B. Taylor values, Plaintiffs' expert, are rounded off to the nearest thousands).

Simply put, this diminution in value approach unfairly deprives the victims of WGI and USAC negligence a fair measure of compensation. . Each plaintiff "is entitled to recover damages including the cost of restoration that has or may be reasonably incurred," if he so elects. *Roman Catholic Church*, 618 So. 2d at 879-80.

If you translate these transactions to a balance sheet, the day before Katrina each of these Plaintiffs had an asset, a family home. Once destroyed, its asset value is zero. By awarding replacement value damages, the Plaintiff is whole; his asset side of the balance sheet is increased in an amount equal to what it was before the loss. He is whole but only whole, he has had no windfall. His assets are the same pre and post-Katrina, all that has been accomplished is a change in the nature of the asset from real property to cash. If diminution were the limit of damages, the balance sheet would never return to where it was pre-Katrina, Louisiana case law consistently holds that, under the circumstances here, where a family home is destroyed , the value method proposed by Defendants is not a proper method for calculating property damages. *See, e.g., Brown v. Williams*, 36,863, p. 11 (La App. 2 Cir. 7/31/03), 850 So. 2d 1116, 1124 ("[T]he record shows that the plaintiff's home and contents were damaged beyond repair so that a fair market value of plaintiff's property could not be assessed at the time of the accident. Consequently, the only reasonable approach remaining to determine the amount of plaintiff's damages was the use of replacement cost less depreciation."); *Kalmn, Inc. v. Empiregas Corp.*, 406 So. 2d 276, 281 (La. App. 3d Cir. 1981) (holding that where house was destroyed in gas explosion and fire and there was no evidence as to value of the house prior to the damage, "the plaintiffs should be awarded the costs of replacing the home new, less reasonable depreciation").

Additionally, the circumstances here dictate that owners of homes that were destroyed should be given as damages the replacement cost of their homes, to which they have self-evident personal attachments. *See Banks*, 620 F. Supp. 2d 741, 746 ("[H]omeowners, who have a personal attachment to their long-term residences, are often entitled to full repair cost, even if that cost is disproportionate to the underlying value of the homes, as long as the cost is not exorbitant."); *Roman Catholic Church*, 618 So. 2d at 878,  ("Reasons 'personal to the owner'

5

frequently are pointed to as justification for allowing high damage awards, often in excess of diminution in market value. . . . In only a few cases have courts refused to award the full cost to restore because the expense was truly exorbitant.").[1]

Moreover, the state's use of pre-Katrina property values when awarding Road Home grants to homeowners, rather than the use of the higher cost to rebuild, was recently alleged to have "a disparate impact on African-American homeowners, who tend to live in New Orleans neighborhoods with lower property values than those predominately white neighborhoods." *Greater New Orleans Fair Housing Action Ctr. v. U.S. Dept. of Housing & Urban Dev.*, 639 F.3d 1078, 1081 (D.C. Cir. 2011).[2] Part of the reason the injunction sought in that case was denied was because by the time the suit was filed, the state had ceased its use of pre-Katrina home values as a measure in grant distribution – indicating the program's presumptive determination that its procedures did, in fact, create a disparate impact. *See id.* at 1087. This potentially discriminatory result will be avoided here by the use of the replacement cost, rather than diminution in value.

---

[1] The Louisiana Supreme Court in *Roman Catholic Church* noted that restoration costs are also appropriate where "there is a reason to believe that the plaintiff will, in fact, make the repairs." *Id.* at 879. A court has never held that a plaintiff who ultimately sells his home is not entitled to restoration cost damages on this basis, and the three out of five plaintiffs here who did eventually sell their property to Road Home did so because they did not receive sufficient insurance funds to rebuild their homes, were concerned about the lack of police, fire, medical services or rather the lack thereof but would have if they had a real option.

[2] Though the court ultimately held that there was not enough evidence of a disparate impact to justify upholding an injunction, this was because by the time the suit was brought the state had ceased its use of pre-Katrina home values as a measure in grant distribution and because "no court has applied disparate impact theory to the formulae used administering a grant program." *Id.* at 1085-88.

### III. Conclusion

For these reasons, diminution in value is an inappropriate measure of Plaintiffs' damages. Instead, replacement/restoration cost is the proper method to determine damages where, as here, the plaintiffs have elected to receive replacement/restoration cost damages, and the plaintiffs have personal reasons for desiring the replacement cost because the damaged properties were their family homes. The potential for a discriminatory impact by using the diminution in value method only further solidifies the replacement cost as the appropriate measure of damages. Therefore, any evidence or expert testimony presented by Defendants relating to the estimated pre-Katrina value of properties less the sale value of the property as the proper measure of damages is inapplicable here and should be excluded. To do otherwise would be to hold WGI and the Government only partially accountable for their fault, allowing the Defendants a windfall at the expense of Plaintiffs.

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*/s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, LA. 70502

        Telephone: (337) 593-4190 or (337) 233-3033
        Facsimile: 337-233-2796
        Email: jimr@wrightroy.com

        for

        **MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**

        Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
        Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
        James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 10th day of August, 2012.

        */s/ Joseph M. Bruno*
        JOSEPH M. BRUNO