UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO. 05-4182 "K" (2) |
| PERTAINS TO: MRGO | JUDGE DUVAL<br>MAG. WILKINSON |
| FILED IN:  *Armstrong* (10-866) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION TO EXCLUDE TESTIMONY AND EVIDENCE CONCERNING MELVIN MCELWEE**

Defendant Washington Group International, Inc. ("WGI") respectfully submits the following memorandum on behalf of all defendants[1] in support of their Joint Motion to Exclude the testimony of Melvin McElwee in its entirety.  Mr. McElwee's testimony should be excluded because he has no knowledge of any salient facts relevant to this litigation.  Additionally, the following documents on Plaintiffs' Exhibit List related to Mr. McElwee should be stricken:  PX-0106, PX-0109, PX-0151, PX-0331, PX-0686, PX-0687, PX-1007, PX-1236, PX-1237, PX-1238, PX-1239, PX-2764, PX-3552, PX-3711, PX-3811, PX-4033, and PX-4557.

---

[1] The United States is filing a concurrent Motion to Join WGI's Motions in Limine to Exclude Testimony and Evidence Concerning Melvin McElwee, to Exclude Evidence and Testimony Regarding Repair or Replacement Costs for Certain Plaintiffs Immovable Property, to Exclude Evidence Regarding Dr. Robert Bea's 3D Seepage Analyses and "Dilatational Wave Velocity" Theory, and to Strike Certain Exhibits From the Master Exhibit List.

I.      **STATEMENT OF FACTS**

     A.      **McElwee Bros.' Contract.**

In the Proposed Pre-Trial Order (Rec. Doc. 20920), Plaintiffs state that they will call Mr. McElwee to "provide testimony regarding soil conditions within the IHNC region, and the response of the buried swamp/marsh layer within that region when it is penetrated."[2] Mr. McElwee is the sole proprietor of a construction firm named McElwee Brothers, Inc. ("McElwee Bros.").[3] In 2001, McElwee Bros. was hired as a general contractor by the U.S. Army Corps of Engineers to perform certain improvements on the Dwyer Road pumping station and related discharge canals, including, *inter alia*, the design, furnishing, installation, operation, and removal of a dewatering system.[4] The Dwyer Road station is located near the intersection of Dwyer and Jourdan Rd. in New Orleans East, north of Interstate 10 and approximately 2.8 miles north of the East Bank Industrial Area.[5] Prior to the completion of the work, the Corps terminated McElwee Bros.' contract due to default.[6]

In his deposition testimony and written discovery responses, Mr. McElwee repeatedly stated that he had never worked in EBIA or in the Lower Ninth Ward at any point in his career. Pursuant to a subpoena, WGI asked Mr. McElwee to produce, *inter alia*, "documents reflecting the location of any excavations you, or anyone acting on your behalf, made along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne

---

[2]    Rec. Doc. 20920 at 62.

[3]    *See* Dep. of Melvin McElwee Vol. I, dated April 23, 2008, PX-0686, attached hereto as Exhibit 1, at 12:14-13:10; Dep. of Melvin McElwee Vol. II, dated April 24, 2008, PX-0687, attached hereto as Exhibit 2, at 371:7-372:14; 376:1-8.

[4]    Ex. 1 at 100:10-19; 117:5-8; 261:17-22.

[5]    Ex. 1 at 261:3-11.

[6]    Ltr. from D. Pecoul, U.S. Dept. of the Army to McElwee Bros., dated June 24, 2003, PX-109, attached hereto as Ex. 3. Ex. 1 at 266:11-267:3.

Avenues along the east side of the Industrial Canal."[7] In his written responses, Mr. McElwee stated: "McElwee Bros. has not conducted or attempted to conduct excavation along the Industrial Canal's east bank between Florida and Claiborne avenues."[8] In his deposition, Mr. McElwee stated: "McElwee Brothers has not performed any work south of Interstate 10."[9]

### B. Bea Mischaracterizes McElwee's Work in ILIT Report.

In the aftermath of Hurricane Katrina, Mr. McElwee contacted Dr. Bea in order to discuss the various floodwall failures in the greater New Orleans area, and the two remained in contact for some time thereafter. As a result of his communications with Mr. McElwee, Dr. Bea later cited Mr. McElwee as a source for the Independent Levee Investigation Team ("ILIT") Report, of which Dr. Bea was a co-author. (Mr. McElwee had no contact with any members of the ILIT team other than Dr. Bea.[10])

In its Final Report dated July 31, 2006, ILIT states that

> persistent reports of underseepage and ponding of waters along this IHNC frontage [along or near what has been referred to as the South Breach] at the west edge of the Lower Ninth Ward, and contractor's significant problems with dewatering of excavations along this same frontage, all bespoke of high lateral permeability within these strata."[11]

The ILIT Report explicitly identifies McElwee Brothers as a source of the alleged reports:

> Demonstration that underseepage occurred at [the site of the breaches of the floodwalls on the East Bank of the Industrial Canal]....can also be based on the observed difficulties encountered by McElwee Construction [sic] in dewatering an excavation near the breach site immediately to the north (due to massive

---

[7] Subpoena from WGI to McElwee Bros., dated November 19, 2007, PX-4033, attached hereto as Exhibit 4, at Request No. 7.

[8] McElwee Bros. Responses to Subpoena Requiring the Production of Documents, dated December 19, 2007, PX-3711, attached hereto as Exhibit 5, at Response No. 7.

[9] Ex. 1 at 251:11-14.

[10] Ex. 1 at 237:4-22.

[11] Excerpts of ILIT Report, PX-1200, attached hereto as Exhibit 6, at 6-12.

underseepage flow through the marsh depositions that were not adequately cut off at that site either.[12]

The ILIT Report further states: "The site [of what has been referred to as the North Breach] has a well-documented history of underseepage problems; McElwee Construction [sic] had great difficulty dewatering an excavation at this site during earlier construction, and residents of the neighborhood had also previously reported problems with seepage at the inboard toe."[13]

Mr. McElwee's deposition testimony and written discovery responses clearly establish that none of the above-quoted passages are true. In response to a request to produce "documents reporting underseepage, ponding, or pooling of waters along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal,"[14] Mr. McElwee responded: "***McElwee Bros. has not reported underseepage, ponding, or pooling of waters along the Industrial Canal's east bank between Florida and Claiborne avenues.***"[15]  In response to a request to produce "documents reflecting any dewatering procedures conducted or attempted by you or anyone acting on your behalf, along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal,"[16] Mr. McElwee replied that ***"McElwee Bros. has not conducted or attempted to conduct dewatering procedures along the Industrial Canal's east bank between Florida and Claiborne avenues."***[17]

---

[12]    *Id*. at 6-15.

[13]    *Id*. at 6-18.

[14]    Ex. 4 at Request No. 8.

[15]    Ex. 5 at Response No. 8.

[16]    Ex. 4 at Request No. 6.

[17]    Ex. 5 at Response No. 6.

Nor did McElwee Bros. receive any alleged reports from residents in the Lower Ninth Ward or St. Bernard Parish (which is not surprising in light of the fact that McElwee Bros. never worked in those areas). In response to a request to produce "reports or other documents evidencing complaints or expressions of concern from residents of the Lower Ninth Ward and/or St. Bernard Parish neighborhoods concerning underseepage, ponding, or pooling of waters along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal,"[18] Mr. McElwee responded that ***"McElwee Bros. has not received any complaints or expressions of concern from residents of the Lower Ninth Ward and/or St. Bernard Parish concerning underseepage, ponding, or pooling of waters along the Industrial Canal."***[19]  In his deposition, Mr. McElwee confirmed that his written responses to the subpoena were correct.[20] He further testified that, to the best of his recollection, he had never informed Dr. Bea that he had received any such reports from residents.[21]

In his 2012 deposition, Dr. Bea acknowledged that the ILIT's descriptions of McElwee's work and experiences with regard to the EBIA had no basis in fact.[22] Yet this has not discouraged Dr. Bea or Plaintiffs from continuing to cite Mr. McElwee in order to attempt to bolster their spurious theories. In his expert report, Plaintiffs' expert Dr. Robert Bea states:

> All of these excavations encountered severe water intrusion difficulties. Constant attention had to be paid to dewatering the excavations. Water intrusion was most severe at depths below the ground in the range of –15 feet to as deep as –30 feet. The greatest water intrusion was associated with excavations that encountered

---

[18]  Ex. 4 at Request No. 10.

[19]  Ex. 5 at Request No. 10.

[20]  Ex. 1 at 242:3-244:15; Ex. 2 at 408:18-409:2.

[21]  Ex. 2 at 408:6-16.

[22]  Deposition of Dr. Robert Bea, dated March 28, 2012, attached hereto as Exhibit 7, at 45:11-50:10.

significant layers of buried swamp – marsh deposits. The experience with seepage and water intrusion associated with the deep EBIA excavations and those associated with another similar site to the north at Dwyer Road (Rosenberg 2008, McElwee 2008) clearly indicate the pervasive nature of this problem.[23]

Thus, instead of the EBIA, Plaintiffs propose to have Mr. McElwee discuss the soil conditions of the undefined "IHNC region".  In other words, Plaintiffs are simply moving the goalposts several miles from the EBIA to New Orleans East.  (Tellingly, Plaintiffs and their experts did not consider the Dwyer Road site sufficiently relevant to their theories to justify inclusion within the soils testing protocol.)

Dr. Bea and Plaintiffs have already wasted the parties' time and resources by requiring them to depose a man who has no knowledge of any facts relevant to this litigation.  Now they want to waste the Court's time as well by calling a fact witness to testify regarding soils conditions when it is undisputed that he has no personal knowledge regarding any soils found at the EBIA (which are the only soils relevant to this litigation).  A thorough examination of the relevant evidence will require several weeks, and neither the Court nor the parties should waste valuable time on irrelevant testimony from Mr. McElwee.  The Court should therefore grant this motion and exclude any evidence regarding Mr. McElwee's work at Dwyer Rd.

## II.  LAW & ARGUMENT

### A.  Standard of Review.

Federal Rule of Evidence 402 prohibits the admission of evidence that is not relevant.  An item of evidence is relevant if it "tends to prove or disprove the matter sought to be proved." Fed. R. Evid. 401 advisory committee's note.  To be admissible, evidence must have some "tendency to make the existence of any fact that is of consequence to the determination of

---

[23] February 1, 2012 Bea Report at p. 48, ¶50.  A hard copy of Dr. Bea's February 1, 2012, Expert Report ("Bea Report"), and an electronic version of the same, were provided to the Court pursuant to Court Order on August 10, 2012.  This memorandum cites to the Bea Report by reference.

the action more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "Implicit in that definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action."  *U.S. v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981).  "The grant or denial of a motion in limine is considered discretionary, and thus will be reversed only for an abuse of discretion and a showing of prejudice."  *Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 64-44 (5th Cir. 2005) (quoting *Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994)); *Kirksey v. City of Jackson*, 663 F.2d 659 (5th Cir. 1981) (judge conducting bench trial did not abuse discretion by excluding testimony of three witnesses).

      **B.**      **Mr. McElwee's Testimony Is Irrelevant Because He Is a Fact Witness Who Has No Personal Knowledge Regarding Any Relevant Fact.**

"Under Rule 602, lay witnesses may offer opinion testimony about matters of which they have personal knowledge."  *Hart v. O'Brien*, 127 F.3d 424, 438 (5th Cir. 1997).  Mr. McElwee has repeatedly acknowledged under oath that he performed no work in the EBIA, and therefore has no personal knowledge regarding the properties of its soils.  Plaintiffs wish to burden the Court and Defendants with fact testimony regarding the nebulous "IHNC region" (which necessarily extends several miles from the EBIA if it includes the Dwyer Road worksite, and may very well extend throughout the entire State of Louisiana), but Mr. McElwee is prohibited from testifying as a fact witness to the soils conditions in the EBIA because he lacks personal knowledge.

Plaintiffs have not designated Mr. McElwee as an expert, and they cannot now circumvent the Rules of Evidence by essentially allowing a fact witness to opine regarding matters about which he has no personal knowledge.  Under Rule 701, "[i] If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally

based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. *See, e.g., United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997) (rejecting government's assertions that witness was functioning merely as a fact witness when he testified on general banking industry practices and finding such testimony properly excluded as falling outside scope of Rule 701); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459-60 (5th Cir. 1996) (affirming district court's exclusion of fact witness's testimony about "'toxic chemicals and other toxic substances'" as beyond the scope of Rule 701 due to testimony being outside either witness's "or any other ordinary person['s]" personal knowledge and thus more appropriately addressed through Rule 702 expert testimony, if at all).

Rule 701 was drafted with the intention of furthering the "traditional objective of putting the trier of fact in possession of an accurate reproduction of the event" and protecting against "the risk the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 Advisory Committee Notes.

As an initial matter, Mr. McElwee's testimony is not rationally based on his perception. This requirement "is itself divisible into two parts: (1) the witness must have perceived with his senses the matters on which his opinion is based, and (2) there must be a rational connection between the witness' opinion and his perceptions." 29 Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold, Michael H. Graham, *Federal Practice and Procedure* §6254 (1st ed. 2012). Mr. McElwee, having never been to the EBIA, clearly never

perceived its soils with his own senses, and thus there can be no rational connection between his opinions regarding the EBIA and his non-existent perceptions thereof.

Furthermore, Mr. McElwee's testimony will not be helpful to clearly understanding the witness's testimony or to determining a fact in issue in this litigation. The soils at the Dwyer Road worksite are irrelevant to this litigation. Plaintiffs' own experts did not deem it of sufficient interest to justify the cost of performing soils tests there. Mr. McElwee's testimony as to what he did or didn't experience at Dwyer Road will only serve to cause delay and waste the resources of the Court and parties.

Additionally, Mr. McElwee's proposed testimony regarding "the response of the buried swamp/marsh layer within that region when it is penetrated" is clearly based upon the scientific, technical, or other specialized knowledge within the scope of Rule 702. In *DVL Inc. v. Niagara Mohawk Power Corp.*, 811 F.Supp.2d 579 (N.D.N.Y. 2010), *aff'd* 2012 WL 3125570 (2nd Cir. Aug. 2, 2012), the court excluded a declaration on the grounds that it constituted impermissible expert testimony from a fact witness. In that case, a landowner filed suit against the defendant power companies seeking to recover remediation costs arising from contaminants the defendants allegedly placed at the site. The declaration in question was offered by a former employee of the state regulatory body charged with overseeing environmental contamination at the site, and purported to offer his opinions regarding contaminants found there based upon his prior work experience there and at other sites located throughout the state of New York. The court correctly found that the "'observations' and essentially all of the 'conclusions' that [the witness] offers are not rationally based on his first hand perceptions, but are rather based on scientific, technical, or specialized knowledge." *Id*. at 590. "[The witness's] testimony offers the opinion of a highly qualified individual drawing upon his expertise to reach conclusions

surpassing his own experience of the events at issue." *Id*. Mr. McElwee would clearly be drawing upon knowledge not possessed by the typical layperson to reach conclusions that clearly surpass his own experience of the events at issue (because Mr. McElwee has no experience of the events at issue). Although the witness in *Niagara Mohawk* was permitted to testify regarding certain personal observations at the site, Mr. McElwee has never even worked at the EBIA and has no first-hand knowledge regarding the properties of its soils. His testimony should therefore be excluded in its entirety.

Admitting Mr. McElwee's testimony would also violate both Rule 26(a) and the Court's scheduling order regarding expert disclosures, since Plaintiffs seek the introduction of expert testimony without the mandatory disclosures required under the Federal Rules of Civil Procedure. *See id*. at 590 (the fact that the plaintiff identifies the witness as a fact witness does not alleviate its duty to comply with Rule 26(a)). Plaintiffs' attempts to call Mr. McElwee are clearly an effort to circumvent Rules 602 and Rule 701, and his testimony should be excluded.

**III. CONCLUSION**

Mr. McElwee's testimony is clearly irrelevant, and would waste the precious time and resources of the Court and parties. The Court, therefore, should grant this motion and exclude Mr. McElwee's testimony in its entirety. Additionally, the following documents on Plaintiffs' Exhibit List related to Mr. McElwee should be stricken: PX-0106[24], PX-0109, PX-0151[25], PX-0331[26], PX-0686, PX-0687, PX-1007[27], PX-1236[28], PX-1237[29], PX-1238[30], PX-1239[31], PX-2764[32], PX-3552[33], PX-3711, PX-3811[34], PX-4033, and PX-4557[35].

---

[24] Attached hereto as Exhibit 8.
[25] Attached hereto as Exhibit 9.
[26] Attached hereto as Exhibit 10.
[27] Attached hereto as Exhibit 11.
[28] Attached hereto as Exhibit 12.
[29] Attached hereto as Exhibit 13.
[30] Attached hereto as Exhibit 14.
[31] Attached hereto as Exhibit 15.
[32] Attached hereto as Exhibit 16.
[33] Attached hereto as Exhibit 17.
[34] Attached hereto as Exhibit 18.
[35] Attached hereto as Exhibit 19.

Dated: August 10, 2012                                              Respectfully submitted,

                                                    /s/ *William D. Treeby*
William D. Treeby, 12901
James C. Gulotta, Jr., 6594
Heather S. Lonian, 29956
    Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

and

Adrian Wager-Zito
Debra S. Clayman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Attorneys for Washington Group International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Washington Group International, Inc.'s Motion in Limine to Exclude Testimony and Evidence Concerning Melvin McElwee has been served upon the Court via hand-delivery pursuant to the Court's July 26, 2012 Minute Entry (Doc. 20927) this 10th day of August, 2012. Notice of this filing will be sent by e-mail to all counsel of record.

                                                    /s/ *Heather S. Lonian*
Heather L. Lonian

1101628v.1