## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES   CIVIL ACTION
CONSOLIDATED LITIGATION         NO. 05-4182 K2
                                JUDGE DUVAL
PERTAINS TO MRGO        MAG. WILKINSON
FILED IN: 05-4181, 05-4182, 05-5237, 05-6073,
    05-6314, 05-6324, 05-6327, 05-6359,
    06-0225, 06-0886, 06-1885, 06-2152,
    06-2278, 06-2287, 06-2824, 06-4024,
    06-4065, 06-4066, 06-4389, 06-4634,
    06-4931, 06-5032, 06-5155, 06-5159,
    06-5156, 06-5162, 06-5260, 06-5771,
    06-5786, 06-5937, 07-0206, 07-0621,
    07-1073, 07-1271, 07-1285
            * * *
        (V O L U M E  II)
Deposition of ROBERT G. BEA, PH.D., given at the offices of Stone Pigman Walther Wittmann, LLC, 546 Carondelet Street, New Orleans, Louisiana 70130, on March 28th, 2012.
REPORTED BY:
    JOSEPH A. FAIRBANKS, JR., CCR, RPR
    CERTIFIED COURT REPORTER #75005

## Page 2

APPEARANCES:
REPRESENTING THE PLAINTIFFS:
    BRUNO & BRUNO
    (BY: JOSEPH M. BRUNO, ESQUIRE)
    (BY: SCOTT JOANEN, ESQUIRE)
    855 Baronne Street
    New Orleans, Louisiana 70113
    504-525-1335
- AND -
    DOMENGEAUX, WRIGHT, ROY & EDWARDS
    (BY: ELWOOD C. STEVENS, JR., ESQUIRE)
    556 Jefferson Street, Suite 500
    Lafayette, Louisiana 70501
    337-233-3033

REPRESENTING THE UNITED STATES OF AMERICA:
    U.S. DEPARTMENT OF JUSTICE
    (BY: ROBIN DOYLE SMITH, ESQUIRE)
    (BY: RUPERT MITSCH, ESQUIRE)
    (BY: JACK WOODCOCK, ESQUIRE)
    Torts Branch, Civil Division
    P.O. Box 888
    Benjamin Franklin Station
    Washington, D.C. 20044
    202-616-4289

## Page 3

REPRESENTING WASHINGTON GROUP INTERNATIONAL, INC.:
    JONES DAY
    (BY: DEBRA S. CLAYMAN, ESQUIRE)
    (BY: ADRIAN WAGER-ZITO, ESQUIRE)
    (BY: CHRISTOPHER N. THATCH, ESQUIRE)
    51 Louisiana Avenue, N.W.
    Washington, D.C. 20001-2113
    202-879-4645
- and -
    STONE PIGMAN WALTHER WITTMANN, L.L.C.
    (BY: WILLIAM D. TREEBY, ESQUIRE)
    546 Carondelet Street
    New Orleans, Louisiana 70130
    504-581-3200

ALSO PRESENT:
    FRANCISCO SILVA-TULLA
    TIMOTHY STARK
    TOM BRANDON

VIDEOGRAPHER: GILLEY DELORIMIER (DEPO-VUE)

## Page 4

EXAMINATION INDEX

EXAMINATION BY:                PAGE
MR. TREEBY ..............................8
MR. SMITH   ..............................171

EXHIBIT INDEX
EXHIBIT NO.                    PAGE
Bea Exhibit 26 ...............8
Bea Exhibit 27 ..............21
Bea Exhibit 28 ..............22
Bea Exhibit 29 ..............25
Bea Exhibit 30 ..............30
Bea Exhibit 31 ..............31
Bea Exhibit 32 ..............34
Bea Exhibit 33 ..............45
Bea Exhibit 34 ..............84
Bea Exhibit 35 ..............85
Bea Exhibit 36 ..............90
Bea Exhibit 37 ..............96
Bea Exhibit 38 ..............126
Bea Exhibit 40 ..............155
Bea Exhibit 41 ..............246
Bea Exhibit 42 ..............267
Bea Exhibit 43 ..............276

Page 5

1  Bea Exhibit 43A ...........................279
2  Bea Exhibit 44 ............................304

Page 6

```
 1              S T I P U L A T I O N
 2        IT IS STIPULATED AND AGREED by and
 3  among counsel for the parties hereto that the
 4  deposition of the aforementioned witness may be
 5  taken for all purposes permitted within the
 6  Federal Rules of Civil Procedure, in accordance
 7  with law, pursuant to notice;
 8        That all formalities, save reading
 9  and signing of the original transcript by the
10  deponent, are hereby specifically waived;
11        That all objections, save those as to
12  the form of the question and the responsiveness
13  of the answer, are reserved until such time as
14  this deposition, or any part thereof, is used
15  or sought to be used in evidence.
16
17
18                  * * *
19
20
21
22        JOSEPH A. FAIRBANKS, JR., CCR, RPR,
23  Certified Court Reporter in and for the State
24  of Louisiana, officiated in administering the
25  oath to the witness.
```

Page 7

```
 1             ROBERT G. BEA, PH.D.
 2  60 Shuey Drive, Moraga, California 94556, a
 3  witness named in the above stipulation, having
 4  been first reminded of his oath, was examined
 5  and continued testifying on his oath as
 6  follows:
 7        MR. STEVENS:
 8            Okay.  Bill, you asked Dr. Bea to
 9        do some homework.  He did the
10        homework.  The dog ate it at the
11        hotel, but he did it again this
12        morning.
13        MR. TREEBY:
14            Hard drive crashed again, huh?
15        MR. STEVENS:
16            No hard drive crashed.
17            In his own handwriting, the list
18        of publications that you requested
19        yesterday. (Tendering.)
20        THE WITNESS:
21            Part 2.
22        MR. TREEBY:
23            These are the non-refereed
24        publications?
25        THE WITNESS:
```

Page 8

```
 1            Correct.
 2        MR. STEVENS:
 3            What's your next sticker number?
 4        You want to at attach it?
 5        MR. TREEBY:
 6            That's fine.  Let's make it an
 7        exhibit.
 8        MR. STEVENS:
 9            Then there's no dispute over what
10        he said.
11        MR. TREEBY:
12            What number did we mark that?
13        26.  Okay.
14        (Bea Exhibit 26 was marked for
15  identification and is attached hereto.)
16  EXAMINATION BY MR. TREEBY:
17     Q.  Okay.  Good morning.
18     A.  Good morning.
19     Q.  Dr. Bea, if you would turn to Page 16
20  of your report, Paragraph 28 C?  For the
21  record, your report is Exhibit 1.
22     A.  Yes.
23     Q.  28C describes multiple engineering
24  analyses I have performed.  And I want to limit
25  my question to whatever engineering analyses
```

Page 45

1    it the way I did.  Okay?  So I would appreciate
2    it if I would also give me that permission and
3    we don't spend time with that kind of nonsense.
4    Okay?
5        A.  I agree.
6        MR. STEVENS:
7            We can stipulate to that, Bill.
8        MR. TREEBY:
9            Good.
10   EXAMINATION BY MR. TREEBY:
11       Q.  On Page 6 through 18 of the final ILIT
12   report which I'm going to show you as
13   Exhibit 33 -- I said 6 through 18, I meant
14   6-18.
15       MR. STEVENS:
16           What number is this going to be,
17   33?
18       MR. TREEBY:
19           Yes, it is.
20       MR. STEVENS:
21           Thank you.
22       (Bea Exhibit 33 was marked for
23   identification and is attached hereto.)
24   EXAMINATION BY MR. TREEBY:
25       Q.  It's the last page of this excerpt

Page 46

1    from ILIT.  You there?
2        A.  Yes, sir.
3        Q.  Are you there?
4        A.  Yes, sir.
5        Q.  Okay.  This -- there is a paragraph
6    down as the third full paragraph, if you don't
7    count the numbers as separate paragraphs,
8    there's a paragraph that begins, this site.
9            Do you see that?
10       A.  Yes, sir.
11       Q.  And in this section of this report,
12   we're talking about the East Bank Industrial
13   Area.  Isn't that true?
14       A.  That's true.
15       Q.  And there, you say, quote -- or ILIT
16   says, and you were one of authors -- quote,
17   This site has a well-documented history of
18   under seepage problems, semicolon; McElwee
19   Construction had great difficulty dewatering an
20   excavation at this site during earlier
21   construction, and residents of the neighborhood
22   also had previously reported problems with
23   seepage at the inboard toe, close quote.
24           You see that?
25       A.  Yes, sir.

Page 47

1        Q.  Those statements in ILIT are
2    completely without foundation; isn't that
3    correct?
4        A.  The connection in ILIT in this
5    paragraph is incorrect.
6        Q.  Thank you.  At the time those were
7    written, these statements were untrue; isn't
8    that correct?
9        A.  Um -- the statements concerning the
10   local residents I don't have knowledge of.  My
11   associates were talking to those people, so I
12   can't attest to that portion.  But the
13   connection of Mr. McElwee and his work at the
14   Dwyer Road site drainage site is incorrect.
15       Q.  So you are now aware that the site
16   Mr. McElwee was referring to was three to four
17   miles north of the East Bank Industrial Area,
18   north of the Gulf Intracoastal Waterway and
19   north of I-10 at the Dwyer Road pumping
20   station.  Isn't that correct --
21       A.  That's right.
22       Q.  Are you aware that Melvin McElwee, the
23   proprietor of McElwee Brothers was previously
24   deposed in this litigation?
25       A.  Yes.

Page 48

1        Q.  Have you read this deposition?
2        A.  No.
3        Q.  Are you aware that Mr. McElwee
4    testified in this deposition that McElwee
5    Brothers had never performed work in the East
6    Bank Industrial Area?
7        A.  That makes sense.
8        Q.  Do you have any basis by which to
9    dispute his testimony on that fact?
10       A.  No.
11       Q.  Are you aware that in November 2007,
12   way issued a subpoena to him asking -- McElwee
13   Brothers, asking it to provide, among other
14   things, documents reflecting any dewatering
15   procedures or excavations conducted or
16   attempted by McElwee Brothers between Florida
17   and Claiborne Avenues along the Industrial
18   Canal.  Were you aware of that?
19       A.  No.
20       Q.  In response to that subpoena,
21   Mr. McElwee stated that McElwee Brothers has
22   not conducted or attempted to conduct
23   excavation along the Industrial Canal's east
24   bank between Florida and Claiborne Avenues.
25   And that doesn't surprise you, does it?

Page 49

1    A.  No.  It doesn't.  I've spent two days
2  with Melvin McElwee --
3    Q.  Object.  It's nonresponsive.  I don't
4  have much time today.
5    A.  I'm sorry, sir.
6    Q.  Okay?  So.
7    A.  My apology.
8    Q.  Are you also aware that Mr. McElwee
9  later confirmed in this deposition that McElwee
10  Brothers had never reported to anyone that he
11  observed under seepage, ponding, or pooling of
12  waters between Florida and Claiborne Avenue
13  bridges?  Are you aware of that?
14    A.  No.
15    Q.  Are you aware that in further written
16  response to Washington Group 's subpoena,
17  Mr. McElwee stated that McElwee Brothers had
18  never, quote, received complaints or
19  expressions of concern from residents in the
20  Lower Ninth Ward about under seepage or ponding
21  along the Industrial Canal?  Are you aware of
22  that?
23    A.  No.
24    Q.  Do you deny that?
25    A.  No.

Page 50

1    Q.  And are you also aware that in further
2  written response, Mr. McElwee stated McElwee
3  Brothers had no evidence of sink holes along
4  the Industrial Canal?  Are you aware of that?
5    A.  No.
6    Q.  Do you deny that?  That he observed --
7  he says he didn't observe them.  ILIT says he
8  said he did.  That's the point.
9    A.  Well, I made the point earlier that
10  the statement in ILIT is wrong.
11    Q.  It really is.
12        Paragraph 48, Paragraph 51.  On Page
13  48 of your report, Paragraph 51, you state, The
14  fill used to backfill the excavation ranged
15  from imported sand, Figures 30 and 31, to,
16  quote, reworked fill materials from the EBIA,
17  and you cite to Rogers 2012.  You see that?
18    A.  Yes, sir.
19    Q.  What do you mean by reworked fill
20  materials?
21    A.  For example, materials taken from the
22  McDonough borrow pit and transported to other
23  locations and used as unpolluted backfill
24  material, in some cases with native materials
25  that were produced during the excavation.

Page 51

1    Q.  And you previously state in your
2  report that the borrow pit contained, quote,
3  predominantly cohesive clayey soils, is that
4  right?
5    A.  Correct.
6    Q.  That would also be true of the native
7  soils, isn't that correct?
8    A.  No, that's not necessarily correct,
9  because some of the native soils had heavy
10  shell, sand, silt characteristics.
11    Q.  I think we need to change the tape.
12        (Brief recess.)
13  EXAMINATION BY MR. TREEBY:
14    Q.  Dr. Bea, when you refer to reworked
15  fill in Paragraph 51 on Page 48 of your report,
16  you cite to David Rogers' report.
17    A.  Yes.
18    Q.  Where exactly in Rogers' report is
19  that a reference to?
20    A.  His report.
21    Q.  I understand.  It's a long report.
22    A.  Yes.  It is.
23    Q.  Where in that report is this reworked
24  fill?
25    A.  It's the portion of the report where

Page 52

1  he is reviewing the phase of East Bank
2  Industrial Area site clearing.  I can't cite to
3  a specific page or paragraph at this time.
4    Q.  We did a search of that entire report.
5  We never saw the words reworked fill.  Or
6  reworked, for that matter.
7    A.  Uh-huh.
8    Q.  Does that surprise you?
9    A.  Yes.
10    Q.  Okay.
11    A.  But, um -- yes.
12    Q.  Are you aware of the type of sand that
13  was imported to backfill the excavations at the
14  East Bank Industrial Area?
15    A.  In a general way, yes.
16    Q.  It was river sand; right?
17    A.  Correct.
18    Q.  Have you read Dr. Rogers' testimony in
19  this case about what that sand consisted of?
20    A.  No.
21    Q.  He said, and I'm quoting him on his
22  deposition, volume 2, Page 158, 8 through 15,
23  for the benefit of the record and counsel.  He
24  said, It's usually dredge spoil out of the
25  river.  It is the most common source of it.