SECTION 00700

CONTRACT CLAUSES

1    52.252-2        CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the
same force and effect as if they were given in full text.  Upon request,
the Contracting Officer will make their full text available.  Also, the
full text of a clause may be accessed electronically at these addresses:
                        http://www.arnet.gov/far
                        http://farsite.hill.af.mil
                        http://www.dtic.mil/dfars
                              (End of clause)

2    52.201-7000
                 CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991)
                 (Reference 01.602-70)
3    52.202-1 IDEFINITIONS (OCT 1995)--ALTERNATE I (APR 1984)
                 (Reference 2.201)
4    52.203-3 GRATUITIES (APR 1984)
                 (Reference 3.202)
5    52.203-5 COVENANT AGAINST CONTINGENT FEES (APR 1984)
                 (Reference 3.404)
6    52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1995)
                 (Reference 3.503-2)
7    52.203-7 ANTI-KICKBACK PROCEDURES (JUL 1995)
                 (Reference 3.502-3)
8    52.203-8 CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER
                 ACTIVITY (JAN 1997)
                 (Reference 3.104-9(a))
9    52.203-10 PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997)
                 (Reference 3.104-9(b))
10   52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JUN
                 1997)
                 (Reference 3.808(b))
11   52.203-7001
                 PROHIBITION ON PERSONS CONVICTED OF FRAUD OR OTHER
                 DEFENSE-CONTRACT-RELATED FELONIES (MAR 1999)
                 (Reference 03.570-5)
12   52.204-4  PRINTING/COPYING DOUBLE-SIDED ON RECYCLED PAPER (JUN 1996)
                 (Reference 4.304)
13   52.205-7000
                 PROVISION OF INFORMATION TO COOPERATIVE AGREEMENT HOLDERS (DEC 1991)
                 (Reference 05.470-2)
14   52.209-6 PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS
                 DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUL 1995)
                 (Reference 9.409(b))
15   52.209-7002
                 DISCLOSURE OF OWNERSHIP OR CONTROL BY A FOREIGN GOVERNMENT (SEP 1994)
                 (Reference 09.104-70(b)
16   52.211-18 VARIATION IN ESTIMATED QUANTITY (APR 1984)
                 (Reference 11.703(c))
17   52.211-7000
                 ACQUISITION STREAMLINING (DEC 1991)
                 (Reference 11.002-70)
18   52.214-27 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS--
                 SEALED BIDDING (OCT 1997)
                 (Reference 14.201-7(b))
19   52.214-28 SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING
                 (OCT 1997)
                 (Reference 14.201-7(c))
20   52.219-5 IVERY SMALL BUSINESS SET-ASIDE (MAR 1999)--ALTERNATE I (MAR 1999)
                 (Reference 19.905(a))
21   52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (OCT 1999)
                 (Reference 19.708(a))
22   52.219-9 ISMALL BUSINESS SUBCONTRACTING PLAN (JAN 1999)--ALTERNATE I (JAN 1999)
                 (Reference 19.708(b))

McElwee00353

EXHIBIT
10

PX-0331-0001

INDEX

## SECTION 02140 – DEWATERING

1. SCOPE..............................................................................................................1
2. QUALITY CONTROL......................................................................................1
3. SUBMITTALS....................................................................................................1
4. GENERAL .........................................................................................................2
5. DEFINITIONS....................................................................................................3
6. DESIGN..............................................................................................................3
7. DEWATERING REQUIREMENTS .................................................................4
8. INITIAL TESTING.............................................................................................5
9. OPERATION .....................................................................................................6
10. MAINTENANCE AND SERVICING ...............................................................6
11. REMOVAL..........................................................................................................6
12. MEASUREMENT AND PAYMENT..................................................................6

McElwee00354

PX-0331-0002

# SECTION 02140 - DEWATERING

## PART 1 - GENERAL

1. SCOPE. The work provided for herein consists of furnishing all plant, equipment, labor, and materials; performing all operations required for designing, furnishing, installing, and operating a system to dewater the excavated area or area inside of temporary retaining structures; maintaining these areas free from water during construction operations; rewatering the area under controlled conditions at the termination of the dewatering and removing the system.

2. QUALITY CONTROL.

2.1 General. The Contractor shall establish and maintain quality control for all dewatering operations to assure compliance with contract requirements and maintain records of his quality control for all construction operations, including but not limited to the following:

(1) Designing.

(2) Fabrication and workmanship.

(3) Installation, operation, and removal.

(4) Monitoring phreatic surface and piezometric elevations.

(5) Measuring effluent from dewatering system.

(6) Monitoring of sanding.

2.2 Reporting. An original and two (2) copies of these records and tests, as well as the corrective action taken, shall be furnished the Government daily. Format of the report shall be as prescribed in Section 01451 - "CONTRACTOR QUALITY CONTROL". Reports of operation and inspection shall include the following data: piezometric elevation, stages, time of operation and each pump, time of operation of each wellpoint segment and/or each well, effluent discharge, sanding rates, problems encountered, proposed actions, and any other pertinent data.

3. SUBMITTALS. Submittals shall be in accordance with Section 01330 "SUBMITTAL PROCEDURES". The Contractor shall submit an original and 9 copies of its complete dewatering design package with details of the proposed dewatering facilities to the Contracting Officer for review and approval by the Contracting Officer. These details must be presented in the form of shop drawings, including the type of system, planned layout and sizes of wells, jet eductors and/or wellpoints, headers, including all lengths requiring burial, collectors, ditches, piezometers, sumps and

pumps; number, type, location, elevation, proposed method of installation, and proposed methods of testing of piezometers; facilities for measuring the flow of water pumped from each well and/or wellpoint segment of the dewatering system; facilities and proposed schedule for monitoring of sanding; provisions for disposal of water from the dewatering system; and plan of operation including flooding and rewatering plans. This submittal shall include the design capacity of each well and/or wellpoint segment at the design stage, and shall be submitted no later than 60 days prior to installation of the system. The Contracting Officer's initial review of the Contractor's proposed dewatering facilities will not exceed thirty (30) calendar days and will be for the purpose of determining (1) the acceptability of the general design concept and layout of the system; (2) the gross capacity of the system at the design state; and (3) the acceptability of the flooding and rewatering plans. The design and installation procedure of the individual components of the system need not be submitted for review as the performance of the complete system remains a responsibility of the Contractor. If the Contracting Officer determines, based on the above-mentioned review, that the system appears adequate to accomplish the required results, the system will be approved for installation. If the Contracting Officer's review determines that the Contractor's proposed dewatering facilities are either inadequate or inappropriate to accomplish the required results, the Contractor will be so notified in writing, and the basis for rejection will be included. Subsequent approval of the plan for installation, either as submitted or revised as a result of the review, should not be interpreted as the Government accepting responsibility for the performance of the dewatering system and shall not relieve the Contractor of full responsibility for the proper design, installation, maintenance, operation and actual performance of both the individual system components and the entire system. After approval of installation, the Contractor shall install the entire dewatering system and shall make no alteration to the planned system without the prior written approval of the Contracting Officer. If, during the progress of the work, the installed dewatering system proves inadequate to meet the requirements specified, including piezometers, the Contractor shall, at its expense, furnish, install, and operate such additional dewatering facilities and/or make such changes, either in features of the system or the plan of operation, as may be necessary to perform the required dewatering without additional cost to the Government.

3.1 All modifications to the design presented above shall be designed and stamped by a Registered Professional Engineer and submitted for review and approval. The Registered Professional Engineer shall be present at the Contractor Quality Control preparatory and initial inspections. The Contractor shall, as a part of the Quality Control, furnish a signed statement by the design Professional Engineer stating that the installation is in conformance with the approved design.

4. GENERAL. All permanent work under this contract, except as otherwise specified, shall be carried on in areas free of water. The Contractor shall design, furnish, install, operate, and maintain such facilities necessary to accomplish the following:

PX-0331-0004

(1) Collect and dispose of all surface water in the protected area regardless of source.

(2) Control and dispose of all surface water around the periphery of the excavation areas to prevent such water from entering the excavation.

(3) Lower and maintain the water table at least 3 feet below the excavation slopes and at least 3 feet below the bottom of the excavation, but not more than 6 feet within the confines of the temporary retaining structures or excavated area.

(4) Install and monitor six construction piezometers inside the temporary retaining structure or excavated area. A detail of a typical piezometer is included at the end of this section.

(5) Relieve excess hydrostatic pressures in all foundation layers below elevation 5.0 Cairo Datum (CD), within the confines of the temporary retaining structures or excavated area to prevent upheaval of, or any form of damage to, the foundation.

5. DEFINITIONS.

(1) Dewatering defines the lowering of the ground water below the slopes and bottom of the excavation to ensure dry, firm working conditions and the reduction to safe levels of any hydrostatic uplift pressures in any confined foundation strata and/or aquifers which is necessary to ensure the stability and integrity of the foundation.

(2) Dewatering system defines the machinery, equipment, and appurtenances necessary for and related to the accomplishment of dewatering, and the collection and disposal of all surface water within the protected area.

(3) Flooding of the excavation is defined as the controlled process of filling the excavation with water to a specified elevation and at a specified rate.

(4) Unwatering is defined as the process of removing all water within an excavation.

(5) Rewatering is defined as the controlled process of placing water in the completed structure and/or excavation to its natural occurring elevation at a specified rate when the construction is completed and the dewatering system is no longer required.

6. DESIGN. The dewatering system shall be designed and stamped by a Registered Professional Engineer. The dewatering system shall be designed using accepted professional methods of engineering design consistent with the best current practice.

PX-0331-0005

7. DEWATERING REQUIREMENTS. The dewatering system shall be of a type and capacity to accomplish all requirements specified herein.

(1) The dewatering system shall be designed, installed, and operated to dewater the excavation for canal stages up to and including elevation 25.50 CD within the confines of the temporary retaining structure at the construction site. The dewatering system must also include standby pumping and power supply such that a continuously operable system is available during power outages, pump failures, etc.

(2) The dewatering system shall be of such capacity that it will lower and maintain the free-water and hydrostatic pressures in the foundation and piezometric levels to an elevation at least 3 feet below all earth slopes and excavation surfaces lying within the area, inclusive of the interior slopes of the temporary retaining structure embankments proper. The system shall have sufficient capacity to accomplish this desired result, allowing for normal variation in soil properties and foundation conditions.

(3) The water level shall be maintained continuously as specified above so that construction operations can be performed without interruption due to wet conditions.

(4) No upward or vertical or lateral flow of ground water into the excavated area will be permitted at any time. The dewatering system shall be designed, constructed/installed, and operated at all times, including unwatering, rewatering, and/or flooding so as to prevent movement and/or piping of the foundation, excavation slopes, and fill materials. The system shall be operated as necessary during dewatering, unwatering, flooding, and rewatering so as to maintain piezometric levels, within the dewatered area, at or beneath the elevation of the water level in the excavation.

(5) The system shall consist of wells, jet eductors, wellpoints, pumps, standby pumps, sumps, sump pumps, ditches, and necessary appurtenances capable, at all canal stages less than or equal to the design stage defined in (1), of intercepting seepage before it exits on any interior surface or excavation face and of providing control of surface water. The system shall be operated as required in (3) above to prevent flooding filter materials and fresh concrete, and shall be designed to control a rainfall intensity from a 10-year return frequency storm. Protection of all slopes will be required to prevent erosion under normal surface runoff and construction conditions. Slope protection may include proper drainage, mulching, vegetation, geosynthetics, etc.

(6) Unwatering of an excavation need not be accomplished by sumping alone, but may utilize sumping in addition to positive dewatering accomplished with a system meeting the requirements of (5) above. Unwatering shall at all times fulfill the requirements of (4) above.

(7) Rewatering and/or flooding of the area shall be accomplished by directing surface and ground water into the area. The dewatering system shall be kept operating at full capacity during such conditions, with dewatering effluent being directed into the

02140-4

ED 98-072

McElwee00358

PX-0331-0006

excavation. Protection of slopes and excavation surfaces shall be provided as necessary to prevent erosion during flooding operations. No upward or lateral flow of ground water into the excavation will be permitted.

(8) Burying of headers will be allowed only in areas and to depths absolutely necessary for protection against damage at construction equipment crossings.

(9) A piezometer system consisting of six piezometers within the confines of the temporary retaining structure shall be installed by the Contractor, as shown on the drawings, to monitor free water-surface elevations and to monitor piezometric elevations to evaluate the effectiveness of the dewatering system in fulfilling the requirements specified herein. The Contractor shall take a minimum of two readings per piezometer, per 24-hour period, a minimum of 8 hours apart, based on a 7-day week. These piezometer readings, along with corresponding canal stage readings, shall be recorded and reported to the Contracting Officer within 12 hours after they are obtained.

(10) The system shall include mechanical means, such as an in-line Venturi meter for measuring the effluent from each wellpoint segment and/or each well as well as the total effluent of the dewatering system. Devices and techniques used in measurement shall be standard in the industry.

(11) The dewatering system shall be designed, installed, and operated in a manner which will preclude removal of materials from the foundation by the pumping operation (hereafter referred to as "sanding"). After installation, each well or jet eductor, or wellpoint segment shall be individually pump tested at maximum design flow rate to verify acceptability with respect to sanding. The dewatering system shall be designed and constructed so as to permit periodic measuring of sanding characteristics of each well and/or wellpoint segment. Any well or wellpoint segment found sanding at a rate exceeding 1 pint per 25,000 gallons of effluent at any time during this contract shall be replaced at no additional cost to the Government.

(12) The rate of dewatering the excavation shall be 1 foot per hour and the rate for rewatering the excavation shall be 4 feet per hour. Additional provisions and requirements for emergency flooding are specified in paragraph 01100-23.

8. INITIAL TESTING. Upon installation of the system, the Contractor shall test and evaluate the completed system to demonstrate that the system is, in fact, capable of performing the intended dewatering operation as outlined herein. This testing shall include complete falling-head tests to be conducted on each piezometer. The Contractor shall give 24-hour advance notice of its intention to perform testing to the Contracting Officer. The documentation of results of the test must be provided to the Contracting Officer within 48 hours of completion.

## PART 2 - PRODUCTS (NOT USED)

## PART 3 - EXECUTION

9. OPERATION. The Contractor shall perform such dewatering and maintain the work areas in a dry condition as long as is necessary for the work under this contract. Once an area is dewatered, it shall be maintained in a dewatered condition until all work in that area is completed, unless flooding is directed by the Contracting Officer. In the event that flooding is deemed necessary by the Contracting Officer, the protected area shall be flooded in accordance with the sequence of flooding proposed by the Contractor and approved by the Contracting Officer. However, the Contractor shall not flood the protected areas without approval to do so by the Contracting Officer. If flooding is directed by the Contracting Officer, the Contractor will be compensated for damages in accordance with the General Provision entitled "DAMAGE TO WORK" and the Contract Clause entitled "CHANGES" as applicable. If flooding occurs because of the Contractor's fault, negligence, or convenience, all costs resulting from such flooding will be borne by the Contractor. Commencement of dewatering subsequent to flooding shall be subject to prior approval of the Contracting Officer.

10. MAINTENANCE AND SERVICING. The Contractor shall be responsible for the maintenance, servicing, and repairs of the entire dewatering system and appurtenances during the life of the contract, including replacement of any and all wells, jet eductors, wellpoints, and piezometers found performing unsatisfactorily.

11. REMOVAL. The dewatering facilities required to maintain a dry condition within the protected area shall be maintained until completion of the work within the protected area, and then shall be completely removed. However, no dewatering facilities of any kind shall be removed without prior approval of the Contracting Officer. All wells, jet eductors, wellpoints, pumps, and appurtenances employed in the dewatering system and all materials other than earth shall remain the property of the Contractor and shall be removed by him from the site of the work. All holes created by removal of dewatering facilities shall be plugged in accordance with LADOTD water well closure criteria as stated in Chapter III of "Water Well Rules, Regulations, and Standards, State of Louisiana, dated November 1985". Any approvals of the implementation and/or removal of plans by the Contracting Officer do not shift the responsibility for the removal of the system from the Contractor to the Government. Nor does it relieve the Contractor of his responsibility to provide a removal plan, which comports with industry standards and prudent construction practices.

12. MEASUREMENT AND PAYMENT. No measurement will be made for dewatering. Payment for dewatering will be made at the contract lump sum price for "Construction Dewatering." Price and payment shall constitute full compensation for furnishing all plant, labor, material, and equipment; designing, furnishing, installing, maintaining, operating, flooding, rewatering, and removing the dewatering facilities; maintaining the dewatered area; and all work incidental thereto including construction of dikes, sumps, installation of wellpoints, jet eductors, wells and piezometers, plugging

ED 98-072

McElwee00360

holes, maintaining protection dikes and closure dams, protection of slopes and all other work which may be necessary to accomplish the specified dewatering results and which is not specified to be paid for separately. Fifty percent of the lump sum price will be paid when installation of the dewatering system has been completed, tested, evaluated, and the piezometric level of the ground water has been lowered to the limits and elevations as specified. Forty percent of the lump-sum price will be prorated on the basis of the estimated number of months that dewatering will be required and will be paid monthly. The remaining 10 percent of the lump-sum price will be paid when the dewatering system has been removed as required herein and cleanup in connection therewith has been completed.

ED 98-072

McElwee00361

PX-0331-0009



FEB 1-15 1998

DAILY W.S. ELEVATIONS
IN THE I.H.N.C
by Orleans Levee District

NOTE: ELEVATIONS BASED ON 1991 DATUM, NGVD
B.M. B-3130   ELEV. 10.23 NGVD
UNDER WEST SIDE DANZIER BRIDGE NEXT TO 2ND
ROW OF BRIDGE PIERS, JUST EAST OF FRANCE ROAD.

McElwee00362

PX-0331-0010



FEB 15-26   1998

McElwee00363



JAN 1-12   1998

McElwee00364



DEC. 1-11   1997

McElwee00365

PX-0331-0013



DEC. 11 - 31   1997

McElwee00366

PX-0331-0014



Nov. 1-11   1997

McElwee00367

PX-0331-0015



Nov. 11. 30    1997

McElwee00368

PX-0331-0016



Industrial Canal

Oct. 1-12    1997

McElwee00369

PX-0331-0017



Industrial Canal

OCT, 12 - 31   1997

McElwee00370

PX-0331-0018



Sept. 1-11   1997

McElwee00371

PX-0331-0019



Sepl. 12 - 30   1997

PX-0331-0020



Aug 1- 12   1997

McElwee00373

PX-0331-0021



Industrial Canal

Aug 13-31   1997

McElwee00374

PX-0331-0022



July 1- 12   1997

McElwee00375

PX-0331-0023



July 12-31 1997

McElwee00376

PX-0331-0024



JuNE 1- 11  1997

McElwee00377

PX-0331-0025



JunE 12-30   1997

PX-0331-0026



MAY 1-12  1997

McElwee00379

PX-0331-0027



MAY 13-31   1997

McElwee00380

PX-0331-0028



Industrial Canal

APRIL 1-10 1997

McElwee00381

PX-0331-0029



APRIL 11 - 30 1997

PX-0331-0030



MAR. 1-11  1997

McElwee00383

PX-0331-0031



Industrial Canal

MAR. 12-31 1997

McElwee00384

PX-0331-0032