

DEPARTMENT OF THE ARMY
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF:

January 7, 2003

SELA Orleans Resident Office

SUBJECT: Contract Number DACW29-01-C-0035, Southeast Louisiana, Dwyer Road Drainage Pumping Station Improvements, Discharge Tubes and Canal, Orleans Parish, Louisiana

McElwee Bros., Inc. & Tri-State Design Const. Co., Inc. (A Joint Venture)
P. O. Box 1410
Independence, Louisiana  70443

Gentlemen:

This letter constitutes the formal minutes of the biweekly status and submittal meeting held at 2:00 p.m. in the New Orleans Area Office Conference Room on December 19, 2002, for the above subject contract. The following individuals were in attendance:

| Name | Org | Code | Title |
|---|---|---|---|
| Tim Roth | COE | CD-NO-O | Resident Engineer |
| Domingo Elguezabal | COE | CD-NO | Area Engineer |
| Glenn Gremillion | COE | CD-NO-O | Project Team Leader |
| William Rossignol | COE | CD-NO-O | Project Engineer |
| Steve Falati | COE | CD-NO-O | Project Inspector |
| Rob Dauenhauer | COE | ED-T | Engineering |
| Lori Wingate | COE | | Project Management |
| Diane Pecoul | COE | CT-E | Contracting Officer |
| Ronald Davis | | | McElwee Brothers/Tri-State |
| Ross Leslie | | | McElwee Brothers/Tri-State |
| Todd Jacquet | | | McElwee Brothers/Tri-State |
| Melvin McElwee | | | McElwee Brothers/Tri-State |
| Ellis Jackson | | | McElwee Brothers/Tri-State |
| Jim Lumsden | | | Design Engineering INC |
| Jim Legendre | | | ILSI |

The meeting began when I asked you to give an overview of the current safety situation for the jobsite. Mr. McElwee began by stating that he turned in the job hazard analysis for Double Aught as a supplement to the Accident Protection Plan. Mr. Jackson stated that the handrails in temporary retaining structure (TRS) IA are complete and handrails should be constructed in phase III shortly. Mr. Jackson also stated that he is continuing to go over various components of jobsite safety at the weekly safety meetings. I asked if you planned on using the staircases to enter and egress the TRS IA, III, and IV as was used in TRS I. Mr. McElwee responded that he

McElwee00438                                              GAIC003675

EXHIBIT
**14**

PX-1238-0001

had planned on using the staircases again. I then asked about the employee that may have had a heart attack. Mr. McElwee responded that the man did indeed have a heart attack and that he was doing ok. Mr. Rossignol explained that Mr. McElwee had contacted Mr. Plaisance of the safety office prior to notifying any of the quality assurance personnel. Mr. Rossignol continued that he would like Mr. McElwee to use the proper chain of command i.e. Mr. Falati, Mr. Rossignol, Mr. Gremillion, or myself prior to contacting the safety office. Mr. McElwee explained that his intent was to get some information not to report the heart attack. I explained that even though it was just for information, the proper way to approach anything on the jobsite is through the chain of command. Mr. McElwee responded that Mr. Falati had been notified of the heart attack. Mr. Falati responded that one of your employees had told him that the worker had chest pains, but nothing further was brought to Mr. Falati's attention nor was it ever mentioned that the worker had indeed suffered a heart attack.

I then discussed the current dewatering situation on the jobsite. I brought to your attention that several of the piezometers are reading above the excavations in their respective TRS'. I explained that the dewatering system has to be functional before any further excavation can take place, and I asked about your plans to correct the current dewatering situation. Mr. McElwee stated that discussions are ongoing with Mr. Burns and Mr. Dixon to see if more wells will be needed. I then asked if all 12 piezometers are working. Mr. McElwee responded that he wasn't sure how many were working and that 4 piezometers are not needed yet. I then directed Mr. McElwee to get the 8 that are installed to function properly, so that the systems could be monitored. I then asked about the corner bracing that has not been installed in phase III. Mr. Jackson said that additional struts would be added. I explained that you should follow your excavation plan. There was some additional discussion on the piezometers. I summarized this discussion by explaining that the dewatering plan should be followed to eliminate any problems.

At this time, I asked you to present a summary of the progress and upcoming work.

1. 84" Discharge Tubes:

   I explained that there was a meeting held on December 9, 2002, to discuss the Value Engineering Change Proposal (VECP), and at this meeting you said that you would provide a plan from Tri-State boring and the information on the field coating. Mr. McElwee responded that he was currently working to provide these items to the Government. Ms. Pecoul asked if the VECP had been accepted. I explained that there are still some outstanding items. Mr. Rossignol asked if a target date had been set to start the tubes. Mr. Leslie stated that he hoped to start on the 13th of January. Mr. Lumsden stated that the New Orleans Sewerage and Water Board had some concerns on the field coating. Mr. Leslie asked what items needed to be resolved so that work could start. I responded that the cost and joint coating were the two most important items left to resolve.

2. Cofferdam and Dewatering System:

   This was discussed earlier.

3. Dolphin System:

   Mr. Jackson stated that all of the piling had been driven and some of the bracing had been installed. Mr. Jackson also stated that the piles will be filled with concrete on Tuesday. Mr. Rossignol stated that he needed the submittals on the formwork for the concrete caps. Mr. Leslie explained that the beacon on the drawings is outdated and that a different one would be needed. Mr. Rossignol stated that the beacon needs to be submitted so that if this is the case the new beacon can be approved. Mr. Falati stated that a preparatory is needed for the concrete work prior to work beginning.

With no further comment on the status or schedule of the work, the required submittals were reviewed as follows:

1. Submittal 0094 Welded Steel Discharge Tubes; Additional coating.

   This submittal is currently in process.

2. Submittal 0095 Welded Steel Discharge Tubes; Field Coating of Joints.

   This submittal is currently in process. Need additional information as discussed at meeting.

3. Submittal 0097 Reinforcing Steel; Manhole.

   This submittal is currently in process.

4. Submittal 0098 Manhole Covers;

   This submittal is approved.

5. Submittal 0100 Temporary Retaining Structure; Pits for Jacking and Receiving.

   This submittal is currently in process.

6. Submittal 0101 Reinforcing Steel; Dolphin.

   This submittal is currently in process.

JV 001797

McElwee00440

GAIC003677

PX-1238-0003

7. Submittal 0103 As-built of box culvert.

Need to have Government and contractor surveyors meet to discuss further.

I then asked Mr. McElwee about the surveys of the floodwalls and railroad. Mr. McElwee asked Mr. Jacquet to provide those to Mr. Falati. Mr. Rosignol asked Mr. Jackson if he had attended the class given by Entergy on high voltage lines. Mr. Jackson responded that he had attended the class. Mr. Rossignol also asked if you had gotten in touch with the distribution line point of contact. Mr. Jackson stated that these lines are not a concern at the present time. I then asked about the modifications for the job. Mr. McElwee pointed out that he turned in the network analysis earlier and that this could be used to project the impacts associated with the modifications. Mr. Leslie stated that he was not ready at this time to settle the impact cost of the modifications. I then pointed out that the Government withheld interest on the last pay estimate due to your not paying the supplier of the welded discharge tubes within seven days as prescribed by contract. Mr. McElwee asked if the retainage withheld on all materials could be refunded similar to the retainage refunded on the welded steel discharge tubes, and if the $18,000.00 retainage that was refunded on the welded steel discharge tubes was considered when calculating interest. I explained that I was not sure but would get an answer to him shortly. Mr. Falati asked the contractor to work on submitting daily logs more timely.

With no further comments or questions, the next meeting was scheduled for January 7, 2002, at 2:00 p.m. at the Area Office conference room and this meeting was adjourned.

Point of contact on this matter is Mr. William Rossignol or Mr. Glenn Gremillion, 861-2439.

Sincerely,

Timothy J. Roth
Administrative Contracting Officer

CF:
Mr. Ross Leslie
Tri State Design Construction Company, Inc.
7401 Old York Road
Elkins Park, PA 19027

Mr. Jim Lumsden
Design Engineering, Inc.
3330 W. Esplanade Avenue South
Suite 205

JV 001798

McElwee00441

GAIC003678

PX-1238-0004

Metairie, Louisiana 70002

Mr. Jim Legendre
ILSI Engineering
4300 S. I-10 Service Road, Suite 113
Metairie, Louisiana 70006

JV 001799

McElwee00442                                                      GAIC003679

**PX-1238-0005**