# EXHIBIT 57



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | |
| | * | SECTION "K"(2) |
| PERTAINS TO: MRGO | * | |
| *Armstrong*, No. 10-866 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

## DECLARATION OF FRANCISCO SILVA-TULLA, Sc.D., P.E.

I, Francisco Silva-Tulla, Sc.D., P.E., hereby declare as follows:

1. I am a civil engineer with over 41 years of professional experience in engineering and environmental work, including geotechnical engineering related to earth structures such as embankments, dams, levees, dikes, slopes, landfills, and excavations. I am an expert witness for Defendant Washington Group International, Inc. ("WGI") in the above-referenced matter.

2. This declaration is submitted in support of WGI's Reply Memorandum to Plaintiffs' Opposition to Motion to Exclude Testimony and Opinions of Dr. Robert Glenn Bea.

3. I am familiar with numerical methods to solve flow analyses including the computer software program SEEP/W, and I have a license for the SEEP/W software program that Dr. Bea's expert team used to conduct its groundwater seepage analyses. I am also familiar with the SEEP/W user manual, the procedure for inputting data into the program, and the process by which the program computes those values to solve groundwater seepage problems. The engineer using SEEP/W must input into the program all of the relevant geometry, soil properties, and boundary conditions for the problem to be analyzed.

4.  In their Opposition Brief to WGI's Motion to Exclude Testimony and Opinions of Dr. Bea, Plaintiffs state "the SEEP/W model recognizes that greater emphasis should be placed on 'the state of the pore-water pressure in the ground' instead of how much water is flowing through the ground."[1] Neither the SEEP/W manual nor any known instruction for using the SEEP/W program indicates that greater emphasis should be placed on the state of the pore-water pressure in the ground instead of how much water is flowing through the ground. SEEP/W is simply a numerical tool used by engineers to analyze groundwater seepage and pore-water pressure dissipation problems. The program does not emphasize any one parameter over another beyond what the flow equations dictate.

5.  Plaintiffs' Opposition Brief also states, regarding the input parameter describing soil compressibility, that "[t]o model a soil region that will always remain below the phreatic surface, the SEEP/W manual indicates that a user should input a value close to zero to produce steady flow conditions because the model is addressing that compression of the soil-water system."[2] I could not find support anywhere in the SEEP/W manual for Plaintiffs' statement.

6.  In addition, Plaintiffs' Opposition Brief states "[o]ne of the benefits of the SEEP/W program is that it allows the engineer to determine pressure without determining flow."[3] By design, SEEP/W uses both parameters in the calculations and provides outputs for both parameters when analyzing groundwater seepage problems.

7.  Along with my familiarity with SEEP/W, I was the principal geotechnical expert representative for WGI during the parties' joint soils investigation at the East Bank Industrial Area ("EBIA") during the summer of 2011. As part of the joint soils investigation, experts for

---

[1] Opp. Br. at 26.

[2] *Id.* at 27.

[3] *Id.* at 29.

WGI and the United States discussed with Plaintiffs' experts the possibility of performing geophysical exploration at the EBIA, which could have included measuring dilatational wave velocities. At that time, Plaintiffs' experts were not interested in geophysical exploration and decided not to perform any geophysical tests.

8. Experts for WGI and the United States also decided not to proceed with geophysical exploration, in part because dilatational wave velocity measurements are not appropriate for determining the compressibility of the organic clays at the EBIA. The EBIA organic clays are located below the water table, where the soil is, for practical purposes, completely saturated. Below the water table, dilatational wave velocity measurements reflect mostly the compressibility of the fluid (water) in the soil pores; in fact, any soil located below the water table will reflect mostly the compressibility of water. By contrast, the compressibility of the soil skeleton itself cannot be measured by dilatational wave velocity below the water table. The compressibility of the soil skeleton is the soil property that relates to the $m_v$ value required to perform a correct flow analysis for the EBIA under the relevant Hurricane Katrina conditions, not the compressibility of water.

9. When measured using geophysical techniques, saturated clays like those at the EBIA generally yield a dilatational wave velocity in the vicinity of the velocity of sound in water, or approximately 5,000 ft/sec. That dilatational wave velocity roughly corresponds to an $m_v$ value of $2 \times 10^{-8}$ 1/psf. By contrast, the $1 \times 10^{-9}$ 1/psf $m_v$ value that Mr. Diego Cobos-Roa input into SEEP/W to conduct Dr. Bea's seepage analyses corresponds to a dilatational wave velocity of about 17,000 ft/sec, which is equivalent to the velocity of sound within solid rock. The 0.00 1/psf (zero) $m_v$ value, also used by Mr. Cobos-Roa in Dr. Bea's seepage analyses, corresponds to a wave velocity equal to infinity, or faster than the speed of light. All of the preceding wave

-3-

velocity values and calculations were computed using a total unit weight for the soil of 105 lb/ft$^3$ and formulas well known to qualified engineers and geologists.

10. Moreover, the 17,000 ft/sec dilatational wave velocity that corresponds to the 1 x 10$^{-9}$ 1/psf $m_v$ value used by Mr. Cobos-Roa to conduct Dr. Bea's seepage analyses is attributable to a loading time of a fraction of a second, as opposed to the 30-hour loading time experienced during the Hurricane Katrina storm surge. That type of immediate loading time is most often found in dynamic events such as nuclear explosions, conventional explosive blasts, or earthquakes. No such dynamic event occurred during Hurricane Katrina.

11. Further, there is no evidence that steady flow conditions existed in the EBIA organic clay layer during the Katrina storm surge. Although the organic clay layer was almost completely saturated, saturation is just one component used by geotechnical engineers to determine whether steady or non-steady flow occurs. Other components include the rate at which the load is applied to the soil, as well as—depending upon the soil's compressibility—the rate of soil consolidation, i.e., the extent to which the soil changes in volume when the load is applied. In reality, it would have taken more than one year to reach steady flow conditions at the EBIA if the storm surge had remained constant during that time, significantly longer than the 30-hour Katrina storm surge.

12. Plaintiffs' Opposition Brief includes several references to the textbook *Soil Mechanics* by Drs. William T. Lambe and Robert V. Whitman, published in 1969. Dr. Lambe supervised my graduate studies in engineering at the Massachusetts Institute of Technology. I am a co-author of the upcoming second edition of *Soil Mechanics*, now under preparation. Excerpts from *Soil Mechanics* are attached to this Declaration as Exhibit A.

13.     Plaintiffs' Opposition Brief cites Part IV of *Soil Mechanics* as evidence of "Long-Established Principles"[4] that support Dr. Bea's decision to model steady flow conditions at the EBIA.[5] However, Part IV of *Soil Mechanics* cited by Plaintiffs applies to situations where "loads are applied slowly compared to the rate of consolidation and at some time (long compared to consolidation time) after a rapid loading"—in other words, situations where applied loads change slowly or well after the end of a rapid loading.[6] Hurricane Katrina, by contrast, caused water levels to rise rapidly compared to the consolidation time for the soil, producing varying loads at the EBIA over a relatively short period of time. Therefore, Part IV of *Soil Mechanics* is applicable to steady flow conditions, whereas the flow conditions that existed during Hurricane Katrina were transient or non-steady. Nothing in Part IV of *Soil Mechanics* supports modeling steady flow conditions at the EBIA during Hurricane Katrina as steady flow.

14.     Plaintiffs' Opposition Brief also states:

> "Dr. Bea's selection of soil characteristics (1x10(-8) to 1x10(-9)/psf) was corroborated by calculations identified by Lambe and Whitman where the coefficient of volume change with a constrained modulus was defined by the equation $Mv = 1/D$. Calculations established by Lambe and Whitman show the symbol 'D' in the compressibility equation as the dilatational modulus. The importance of this equation is brought forth by Lambe and Whitman when they expressly recognize that 'water is only relatively incompressible;' the result being that the 'dilatational velocity through saturated soil is typically about 5,000 feet per second.'"[7]

15.     The above statement erroneously implies that Lambe and Whitman endorse using dilatational wave velocity to measure compressibility in organic clays like those at the EBIA. In reality, Lambe and Whitman make clear in *Soil Mechanics* that "[d]ilatational velocity, which

---

[4] Opp. Br. at 24.

[5] *Id.* 25-27.

[6] Ex. A, Lambe & Whitman, *Soil Mechanics* (1969), at 239.

[7] Opp. Br. at 27-28 (internal citations omitted).

can be measured easily in the field, unfortunately does not provide useful information regarding the stiffness of the mineral skeleton."[8] The compressibility or "stiffness" of the soil skeleton relates directly to the $m_v$ value that is required to perform a correct transient flow analysis for the EBIA under the relevant Katrina conditions. The Opposition's alleged "corroboration" by Lambe and Whitman is a sham.

16. Finally, Plaintiffs' Opposition Brief states:

> "[P]ressure is influenced by permeability, but much more influenced by the compressibility characteristics of water. In developing modeling parameters to capture the effect of such forces, the SEEP/W manual refers the user to Lambe and Whitman's *Soil Mechanics* to identify the appropriate seepage forces. The purpose of the reference to Lambe and Whitman's work is clear: seepage analysis calculating the existence of excess pore water pressure due to external loading utilizes the fundamental mathematical equations utilized in the Soil Mechanics textbook."[9]

17. The above statement is ambiguous and misleading. Certainly SEEP/W and *Soil Mechanics* use the same fundamental equations to analyze flow through porous media. Those equations are used by all geotechnical engineers and hydrogeologists. But Dr. Bea misuses the equations in his analyses. Although water is generally considered essentially incompressible in soil mechanics groundwater problems, a transient flow analysis utilizes incompressible water *and* a compressible soil skeleton. It is partly because of the compressibility of the soil skeleton that transient conditions develop in a saturated soil, not because of the compressibility characteristics of water. Dr. Bea ignores the compressibility of the soil skeleton in his seepage analyses of the EBIA organic clay layer. The deformations in the soil skeleton prevent the

---

[8] Ex. A, Lambe & Whitman (1969), at 455.

[9] Opp. Br. at 26-27 (internal citations omitted).

-6-

immediate transmission of pressure that Dr. Bea incorrectly postulated and then instructed Mr. Cobos-Roa to force his SEEP/W model to produce.

18. Furthermore, the statements cited by Dr. Bea from the SEEP/W manual are provided simply as a source of further support for their argument. The Plaintiffs fail to include the real reason that the SEEP/W manual refers to *Soil Mechanics*:

> "*Soil Mechanics* by Lambe and Whitman (1969, John Wiley and Sons Inc.) has a detailed discussion on seepage forces and when they are or are not relevant. The discussion that follows is based on their work.
>
> If you have concern regarding seepage forces then you should read this section. If you are not concerned or aware of seepage forces, then please skip over this section… you don't need to know about seepage forces in GeoStudio because it is important to understand that a rigorous seepage analysis can be done without any reference to seepage force if the analysis formulation uses a consistent approach which considers total unit weight and boundary forces as do all GeoStudio models."[10]

19. An excerpt from the SEEP/W manual is attached to this Declaration as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Executed on: May 30, 2012  
               Date                          Francisco Silva-Tulla, Sc.D., P.E.

---

[10] Ex. B, SEEP/W manual, 4th ed., May 2009, at 208-210.