# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| | § | |
| PERTAINS TO: | § § § | |
| MRGO *Armstrong*, No. 10-866 | § § § | |

## DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE EVIDENCE REGARDING DR. ROBERT BEA'S 3D SEEPAGE ANALYSES AND "DILATATIONAL WAVE VELOCITY" THEORY

Defendant Washington Group International, Inc. ("WGI"), on behalf of all defendants[1], respectfully submits this memorandum in support of its motion to exclude all evidence at trial regarding: (1) Plaintiffs' expert Dr. Robert Bea's "lost" or "stolen" three-dimensional ("3D") seepage analyses, including JX-1384[2] and any testimony or other evidence about the 3D seepage analyses; and (2) Dr. Bea's recently proffered "dilatational wave velocity"

---

[1]    The United States is filing a concurrent Motion to Join WGI's Motions in Limine to Exclude Testimony and Evidence Concerning Melvin McElwee, to Exclude Evidence and Testimony Regarding Repair or Replacement Costs for Certain Plaintiffs Immovable Property, to Exclude Evidence Regarding Dr. Robert Bea's 3D Seepage Analyses and "Dilatational Wave Velocity" Theory, and to Strike Certain Exhibits From the Master Exhibit List.

[2]    Exhibit JX-1384 is attached hereto.

theory.  All of this evidence was improperly disclosed under Rule 26—indeed, the 3D seepage analyses were ***never*** disclosed—and should therefore be excluded from trial.

## I.      LEGAL STANDARD

The Federal Rules prohibit a party from using at trial any information that the party was required to provide under Rule 26(a) but failed to disclose, unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c).  This includes the disclosures required for expert witnesses under Rule 26.  *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir.1996); *Avondale Industries, Inc. v. Tyco Valves and Controls, Inc.*, 2003 WL 22723025, *2 (E.D. La. Nov. 18, 2003).

Rule 26 requires that an expert witness provide "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as the "facts or data considered by the witness in forming his opinions."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  The purpose of the rule is to "eliminate the former process of 'trial by ambush,' and mandate full disclosure of relevant information necessary to evaluate the case or to prepare for trial at an early stage of the proceedings."  *Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).  As amended, Rule 26 requires initial expert reports to be "'detailed and complete,'" and it is intended to prevent "the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule."  *Sierra Club*, 73 F.3d at 571 (quoting Fed. R. Civ. P. 26 advisory committee's notes).  In fact, expert reports must be so complete that they "shorten or decrease the need for expert depositions and

thus [] conserve resources." *Denley v. Hartford Ins. Co. of Midwest*, 2008 WL 2951926, *4 (E.D. La. July 29, 2008) (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 516 U.S. 822 (1995)).

The Fifth Circuit examines four factors to determine whether the exclusion of expert testimony for failure to comply with Rule 26 is an appropriate sanction under Rule 37:  (1) the party's explanation, if any, for its failure to comply with the Rule or the applicable scheduling order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witness's testimony.  *Barrett*, 95 F.3d at 380; *Smith v. Progressive County Mut. Ins. Co.*,  2012 WL 702061, *3 (E.D. La. Mar. 1, 2012) (citing *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007)); *Avondale Industries*,  2003 WL 22723025, *2.

## II.    ARGUMENT

### A.    Any Evidence Concerning Dr. Bea's 3D Seepage Analyses Must be Excluded From Trial Because the Analyses Have Never Been Disclosed and Are Prejudicial to the Defendants.

First, WGI respectfully moves this Court to exclude any evidence regarding Dr. Bea's 3D seepage analyses, including JX-1384.  Despite Dr. Bea's reliance on what he claims to be "important" 3D analyses to support his opinions, the analyses have never been produced, and as a result, WGI cannot properly examine Dr. Bea's work.  Any evidence regarding the analyses should therefore be excluded.

#### 1.    The "Lost" 3D Seepage Analyses.

In his initial expert report, Dr. Bea relies on the following documents to support his opinions: **(1)** Bea, R.G., and Cobos-Roa, D. (2009). 2D and 3D Seepage Analyses: Lower 9th

Ward Breaches, Report for Katrina Canal Breaches Consolidated Litigation, Civil Action Number: 05-4182 "K" (2), United States District Court, Eastern District of Louisiana; and **(2)** Cobos-Roa, D. and Bea, R.G. (2008). "Three-Dimensional Seepage Effects at Three New Orleans Levee Breaches During Hurricane Katrina," Electronic Journal of Geotechnical Engineering, Stillwater, OK.[3]  These two documents represent the results of 3D seepage analyses that Dr. Bea and his graduate student, Diego Cobos-Roa, allegedly performed several years ago.[4] Dr. Bea claims that, "because time resources to perform these very complex analyses were limited," he was unable to perform them for this particular litigation.[5]

        Dr. Bea and Mr. Cobos-Roa did, of course, perform two-dimensional ("2D") seepage analyses for this case.  Dr. Bea's 2D seepage analyses—the modeling files and other

---

[3]      Expert Report of Dr. Robert Bea, February 1, 2012, at 133-134.  A hard copy of Dr. Bea's February 1, 2012, Expert Report ("Bea Report"), and an electronic version of the same, were provided to the Court pursuant to Court Order on August 10, 2012.  This memorandum cites to the Bea Report by reference.

[4]      WGI notes that the Defendants included both of these documents on the Master Exhibit List as a precautionary measure in the event Dr. Bea is permitted to testify about his 3D seepage analyses at trial.  Only the first document was included on the Master Exhibit List by the Plaintiffs.  The first document is Exhibit JX-1384, and the second document is Exhibit DX-01559.  WGI moves to exclude the first document, JX-1384.  If WGI's motion is granted with respect to the 3D seepage analyses, DX-01559 will also be excluded, and Defendants will withdraw DX-01559 from the Master Exhibit List.  Additionally, WGI moves to exclude at trial any testimony concerning either of these two documents, as well as any reference to any other 3D seepage analyses.  Finally, in the event WGI's motion is not granted, WGI reserves the right to assert a "Category 2" objection at the end of trial to both of these documents and any other evidence related to Dr. Bea's 3D seepage analyses.  Exhibit DX-01559 is attached hereto for the Court's reference.

[5]      Bea Report at 76.

data that make up Dr. Bea's and Cobos-Roa's work—were produced to the Defendants with Dr. Bea's Rule 26 materials. However, when WGI sought production of the 3D seepage analyses, it learned that the analyses had apparently been misplaced not once, but twice. According to Mr. Cobos-Roa, he stored one copy of the analyses on his laptop hard drive and another copy on a backup external hard drive, along with the modeling files for all of the seepage analyses that he and Dr. Bea performed in connection with Hurricane Katrina before this case.[6] The laptop was stolen from his apartment in the fall of 2009.[7]  *Id.*  Shortly thereafter—in fact, during the same semester—Mr. Cobos-Roa lost the backup hard drive somewhere on campus at the University of California Berkeley.[8]  Despite the amount of material contained on the hard drives, as well as the time and resources that went into performing the work contained on the drives, Mr. Cobos-Roa did not report them stolen to any authorities or insurers.[9]

He did, however, take one precautionary measure: Before the analyses disappeared, Mr. Cobos-Roa sent the input parameters, cross-sections and other data that he used to run the 3D seepage analyses to Dr. Bea.[10]  That information could have been used to re-create

---

[6]  Deposition of Diego Cobos-Roa, April 10, 2012, excerpts attached hereto as Exhibit 1, at 181:1-191:5.

[7]  *Id.*

[8]  *Id.*  Interestingly, Dr. Bea has a different story for how the 3D seepage analyses were misplaced.  According to Dr. Bea, Mr. Cobos-Roa's laptop was stolen, then the hard drive that contained the back-up files was dropped and damaged, and ***then*** the hard drive was stolen.  Deposition of Dr. Robert Bea, March 27, 2012, excerpts attached hereto as Exhibit 2, at 147:8-21.

[9]  Ex. 1 at 181:1-191:5.

[10]  *Id.* at 188:5-189:15.

1101673v1

the 3D seepage analyses in one month, but Mr. Cobos-Roa was not asked to re-run the analyses.[11]   Nor have Plaintiffs agreed to replicate the analyses, despite the Defendants' insistence that the analyses be produced.

According to Dr. Bea, the "three-dimensional (3D) flow effects" from his 3D seepage analyses "were recognized to be important for one of the analytical cases studied at the South Breach site"—in particular, his South Breach Case 2 cross-sections, which modeled "a narrow backfilled pipeline abandonment excavation trench."[12]  Dr. Bea claims that the "[r]esults from the 3D hydraulic conductivity model indicates there is a 30% increase in the gradients near the landside toe in the cross section through the filled excavation, compared to the section outside this area."[13]  Based on those results, Dr. Bea opines that "the hydraulic gradients for the South Breach Case 2-1 were increased by 30% to recognize the 3D flow effects," leading him to conclude that "hydraulic effects were developed at the South Breach between 8:00 AM and 9:00 AM on August 29, 2005" and "a typical lateral instability failure surface developed at the South Breach site."[14]  Dr. Bea also states, in summary fashion, that "[t]he hydraulic seepage analyses show that pore pressures develop rapidly and near-steady state conditions are reached within less than 30 hours of the initiation of the surge starting on August 28, 2005.  Results from current studies indicate that the two-dimensional seepage analyses will produce conservative results

---

[11]      *Id.* at 189:16-190:4.

[12]      Bea Report at 76.

[13]      *Id.* at 100.

[14]      *Id.* at 101-102.

1101673v1

compared with the three-dimensional conditions – the two-dimensional analyses will produce underestimates of the hydraulic effects."[15]

### 2.     Evidence Regarding the 3D Seepage Analyses Must be Excluded.

The law is clear that any "facts or data" considered by an expert witness to form his opinions must be disclosed to the opposing party.  Rule 26(a)(2)(B)(ii).  That includes Dr. Bea's lost 3D seepage analyses, which he relies on to opine that WGI's work contributed to the South Breach.  To be sure, every geotechnical expert who performed 2D seepage analyses in this case, including Dr. Bea, produced not only the results of their analyses, but also the underlying modeling files and other data that make up the analyses.  Without that data, the experts could not have properly tested their respective results.  Dr. Bea's 3D seepage analyses are no different.

The law is also clear that, based on the four-factor test articulated by the Fifth Circuit and this Court, excluding evidence regarding the 3D seepage analyses would be an appropriate sanction under Rule 37.  *Barrett*, 95 F.3d at 380; *Progressive County*,  2012 WL 702061, *3.  *First*, there is no real explanation for Plaintiffs' failure to disclose Dr. Bea's analyses.  While the analyses were allegedly lost twice, Dr. Bea has been in possession of the data necessary to re-run the analyses for almost three years,[16] and he is confident that "certainly

---

[15]     *Id.* at 126.

[16]     Ex. 1 at 188:5-189:15.

1101673v1

with the assistance of Diego Cobos-Roa [and] Dr. Storesund, we could repeat those analyses."[17] To do so would have taken just one month's time.[18]

*Second*, permitting evidence of the 3D seepage analyses would be highly prejudicial because Dr. Bea is using the analyses as a shield to prevent the Defendants from properly scrutinizing his South Breach Case 2 cross-sections. This Court knows that Dr. Bea created several cross-sections that he claims "present reasonable representations of the geotechnical and floodwall conditions that existed" at the time of Hurricane Katrina, and that "illustrate the processes by which the backfilled excavations in the EBIA induced and enhanced the geotechnical processes that led to the development of the North Breach and South Breach."[19] The cross-sections are necessary to demonstrate how and why the EBIA failures occurred in Dr. Bea's analyses.[20]

Defendants maintain—and Dr. Bea concedes—that he has no evidence of the "backfilled pipeline abandonment excavation trench" in his South Breach Case 2 cross-sections.[21] And Plaintiffs do not dispute that, when the excavation trench is analyzed as a 2D feature, the trench appears as a 99-foot wide excavation that runs across the length of the entire

---

[17]     Ex. 2 at 149:10-24.

[18]     Ex. 1 at 188:5-189:15.

[19]     Bea Report, App. B at 3.

[20]     Deposition of Dr. Robert Bea, March 28, 2012, excerpts attached hereto as Exhibit 3, at 202:13-203:2; Ex. 1 at 144:2-16.

[21]     WGI Mem. in Support of Mtn. to Exclude Dr. R. Bea at 25-26 (Rec. Doc. 20822-1).

8

floodwall, leading to absurd and unrealistic results.[22]   Nevertheless, Plaintiffs insist that the

excavation trench is somehow reliable because it was "first analyzed as a two-dimensional

feature," and then the results from the 3D seepage analyses were "used to interpret the results

from the two-dimensional analyses."[23]   This "interpretation" from the 3D analyses, according to

Dr. Bea, shows "important concentration and intensified hydraulic flow effects" associated with

the excavation trench that support "a 30% increase in the gradients near the landside toe in the

cross section through the filled excavation, compared to the section outside this area."[24]

Defendants' experts maintain that Dr. Bea's "30% increase in the gradients" is impossible, and in

fact, any change in gradient must be a ***decrease***, according to basic principles of engineering and

science.  But without access to the 3D seepage analyses, Defendants have no way to examine Dr.

Bea's claims.  Plaintiffs cannot be allowed to hide behind the "lost" analyses and use the same

analyses to purportedly enhance their case.

Dr. Bea's pronouncement that "the two-dimensional analyses will produce

underestimates of the hydraulic effects" as compared to the 3D seepage analyses is equally

troubling.[25]   Whether this statement refers only to the South Breach Case 2 cross-sections or is

meant to apply to all of Dr. Beas's conclusions is unclear.  Regardless, without access to the 3D

seepage analyses, WGI is unable to test, and invalidate, Dr. Bea's claim that the analyses support

---

[22]      *Id.* at 22.

[23]      Opp. to Mtn. to Exclude Dr. R. Bea at 22 (Rec. Doc. 20849-2).

[24]      Bea Report at 99-100.

[25]      *Id.* at 126.

9

1101673v1

rapid pore pressure development at the EBIA during Hurricane Katrina.  Rule 26 requires discovery of such evidence, and Plaintiffs have failed to meet that requirement, to the Defendants' detriment.

      *Third*, there is no possibility of curing the prejudice by granting a continuance. Certainly a continuance would be necessary—with just one month before trial, there is barely enough time to recreate the 3D seepage analyses, let alone for the Defendants' experts to review the analyses and question Dr. Bea about them.  But this Court has been firm in its position that the scheduling order for expert disclosures "will <u>not</u> be altered,"[26] and the same is true for modifications to the trial schedule.  Six months ago, when Dr. Bea's first report was submitted, Plaintiffs could easily (indeed, should) have replicated the analyses and left plenty of time for expert discovery.  Now, however, the time for curative action has passed.

      *Fourth*, although Dr. Bea considers the 3D seepage analyses "important," and he uses the analyses in an attempt to buttress his opinions, excluding evidence of the analyses will not gut Dr. Bea's testimony.  His overall opinions regarding causation, while flawed, will survive this motion, and he will not be prohibited from testifying about the 2D seepage analyses that Mr. Cobos-Roa performed for ***this case.***  WGI simply asks that the Plaintiffs be held to the same standard that the other parties have strained to meet, and the standard that is articulated in the Federal Rules—that Dr. Bea properly disclose all "facts or data" that he considered so the Defendants are afforded an opportunity to examine them.  Rule 26(a)(2)(B)(ii); *Beller*, 221

---

[26]    Feb. 24, 2012, Minute Entry (Rec. Doc. 20661 (emphasis in original)).

F.R.D. at 693.  This is what the law requires.  Because Dr. Bea has not met that standard, all evidence related to his 3D seepage analyses should be excluded at trial.

> **B.    Dr. Bea's "Dilatational Wave Velocity" Theory Was Not Properly Disclosed and Should Be Excluded.**

WGI also moves this Court to prohibit Dr. Bea from offering any evidence at trial regarding "dilatational wave velocity."  As the Court is well aware, Dr. Bea recently suggested for the first time that he used "dilatational wave velocity" to determine the compressibility of the organic clay layer at the EBIA.[27]  Dr. Bea's "dilatational wave velocity" theory was not included in his original expert report or in either of his so-called rebuttal reports.  The "theory" is of interest to Dr. Bea now because he is desperate to find an explanation for his decision to treat the EBIA organic clays as virtually incompressible during the Katrina storm surge, a position that Defendants' experts have established is not based in reality.[28]  Dr. Bea's "theory" should have been disclosed as part of his "complete statement of all opinions the witness will express and the basis and reasons for them," pursuant to Rule 26(a)(2)(B)(i).  It was not, and it must therefore be excluded from trial.

Like with the 3D seepage analyses, Dr. Bea has no convincing explanation for why "dilatational wave velocity" was not disclosed in his reports.  *Barrett*, 95 F.3d at 380; *Progressive County*,  2012 WL 702061, *3.  If he truly used "dilatational wave" to formulate his

---

[27]    Reply to Opp. to Mtn. to Exclude Dr. R. Bea at 20-26 (Rec. Doc. 20865-2).

[28]    *Id.* at 20-33; WGI Mem. in Support of Mtn. to Exclude Dr. R. Bea at 32-42 (Rec. Doc. 20822-1).

1101673v1

opinions about the compressibility of the EBIA organic clays, then the theory was familiar to him well before he filed anything in this case.  It strains credulity to suggest otherwise.

There is also obvious prejudice here.  Dr. Bea's "dilatational wave velocity" theory was disclosed during his rebuttal deposition—just a few days before the close of discovery, and more than three weeks after the deadline for Dr. Bea's rebuttal report.  This is precisely the type of "trial by ambush" approach that Rule 26 is designed to prevent.  *See Sierra Club*, 73 F.3d at 571.  Indeed, Rule 26 requires a complete statement of opinions for the purpose of streamlining expert depositions, not prolonging them with inquiry into matters that have never been revealed.  *Denley*, 2008 WL 2951926, *4 (E.D. La. July 29, 2008).  If it were otherwise, experts would simply invent new opinions to make their positions appear more credible, at the expense of honest analysis.

That is exactly what Dr. Bea is doing with his "dilatational wave velocity" theory.  Despite analyzing the EBIA failures countless times prior to this case, not once in any of those analyses did Dr. Bea refer to "dilatational wave velocity."  The same is true in this case.  In his own report, WGI's geotechnical expert Dr. Francisco Silva-Tulla explicitly criticized Dr. Bea's compressibility value, the very value that Dr. Bea claims he determined using "dilatational wave velocity," but Dr. Bea's rebuttal report said nothing about the wave "theory" in response.  Dr. Bea even had an opportunity to measure "dilatational wave velocity" at the EBIA in connection with the parties' Joint Soils Investigation, but he decided not to do so.[29]  The sum total of this

---

[29]     WGI Reply Mem. to Opp. to Mtn. to Exclude Dr. R. Bea at 22 (Rec. Doc. 20865-2).

1101673v1

evidence is clear:  "Dilatational wave velocity" surfaced only when the absurdity of Dr. Bea's compressibility value was exposed by the Defendants, and it is being used to distract, not inform. Such tactics are an offense to the Federal Rules and to this Court.

As to the third factor under *Barrett*, curing the violation is no more plausible here than with the 3D seepage analyses.  Finally, regarding the fourth factor, "dilatational wave velocity" was never really important to Dr. Bea's analysis, and it isn't important now.  In fact, Defendants have shown that "dilatational wave velocity" is entirely irrelevant to the EBIA soils, and under no circumstances should the theory be used to compute the compressibility of organic clays under the storm surge conditions that existed during Katrina.[30]  Excluding the theory will do infinitely more good than harm in this case.

---

[30]     *Id.* at 20-26.

## III.   CONCLUSION

For all of the foregoing reasons, WGI respectfully moves this Court to exclude all evidence at trial regarding Dr. Bea's 3D seepage analyses, including JX-1384, as well as Dr. Bea's "dilatational wave velocity" theory.

Dated: August 10, 2012                                          Respectfully submitted,

                                          /s/ William D. Treeby
                                          William D. Treeby, Bar No. 12901
                                          James C. Gulotta, Jr., Bar No. 6590
                                          Heather S. Lonian, Bar No. 29956
                                          STONE PIGMAN WALTHER WITTMANN LLC
                                          546 Carondelet Street
                                          New Orleans, LA 70130
                                          Phone:  504-581-3200
                                          Fax:  504-581-3361

                                          Adrian Wager-Zito
                                          Debra S. Clayman
                                          JONES DAY
                                          51 Louisiana Avenue, N.W.
                                          Washington, D.C. 20001-2113
                                          Phone:  1-202-879-3939
                                          Fax: 1-202-626-1700

                                          *Attorneys for Defendant*
                                          *Washington Group International, Inc.*

14

1101673v1

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the above and foregoing Memorandum in Support of Washington Group International, Inc.'s Motion to Exclude Evidence Regarding Dr. Robert Bea's 3D Seepage Analyses and "Dilatational Wave Velocity" Theory has been served upon the Court via hand-delivery pursuant to the Court's July 26, 2012 Minute Entry (Doc. 20927) this 10th day of August, 2012.  Notice of this filing will be sent by e-mail to all counsel of record.


          */s/ Heather S. Lonian*
          Heather S. Lonian

1101673v1