# Unreported Cases

Not Reported in F.Supp.2d, 2003 WL 22723025 (E.D.La.)
**(Cite as: 2003 WL 22723025 (E.D.La.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
AVONDALE INDUSTRIES, INC.
v.
TYCO VALVES AND CONTROLS, INC., et al.

No. Civ.A.01–2923.
Nov. 18, 2003.

Darrell K. Cherry, Kristen Michael Baumer, Deutsch, Kerrigan & Stiles, John Francis Fay, Jr., Ewell E. Eagan, Jr., Donna Phillips Currault, Gordon, Arata, McCollam, Duplantis & Eagan LLP, New Orleans, LA, for Plaintiffs.

Craig L. Weinstock, Kenneth H. Holt, Locke Liddell & Sapp, LLP, Houston, TX, Edward Henry Arnold, III, Omer Frederick Kuebel, III, Locke Liddell & Sapp, LLP, New Orleans, LA, for Defendants.

ORDER & REASONS

FALLON, J.

**\*1** Pending before the Court is the Defendants' Motion *in Limine.* This matter is set to come before the Court for a bench trial beginning Monday, December 1, 2003. The Defendants have filed this Motion *in Limine* to exclude evidence of a number of issues. The Court addresses each issue in turn.

1. Evidence of Other Lawsuits

The motion to exclude evidence of other lawsuits is GRANTED, except for the purpose of impeachment if introduced by witness of the movant. *See* Fed.R.Evid. 401, 402.

2. Evidence Supporting Claims that are No Longer Being Pursued

Tyco moves the Court to exclude evidence of claims that Avondale no longer is pursuing. Judge Wilkinson ordered that Avondale is "precluded from introducing at trial any evidence concerning delayed delivery." Minute Entry of July 11, 2003 at 19 (Rec.Doc. No. 60). Avondale objects to the exclusion of evidence of the $50,000 demurrage damages. According to the Avondale, its contract with ARCO contained a liquidated damages clause that obligated Avondale to pay ARCO $50,000 per day for each day that Avondale failed to meet the delivery deadline of the ARCO tankers. Avondale contends that it should be permitted to present evidence of the $50,000 in demurrage damages to demonstrate the reasonableness of its conduct in replacing the valves.

Avondale avers that the looming liquidated damages deadline made its speedy replacement of the valves reasonable. This assertion is different, argues Avondale, from the abandoned claims for delay damages. A rose by any other name is still a rose. Avondale's argument about the "reasonableness of its conduct" requires the Court to assume that no other construction delay prevented Avondale from meeting ARCO's deadline. Tyco sought to challenge this assumption and asked Judge Wilkinson to compel discovery of information relating to other construction delays. Unwilling to permit discovery, Avondale successfully argued to Judge Wilkinson that "other reasons for delay of the delivery of the ship are no larger (*sic*) relevant." Pl.'s Mem. in Opp'n to Defs.' Mot. to Compel at 1 (Rec.Doc. No. 42). Avondale informed Judge Wilkinson that evidence of other ship construction problems would only be relevant to the issue of delay damages. Faced with these arguments, Judge Wilkinson denied Tyco's motion to compel and precluded Avondale from introducing evidence of delayed delivery.

Avondale chose to deny Tyco the opportunity to discover information related to other construction delays—information that may have called into question the reasonableness of Avondale's quick actions. Avondale cannot now ask the Court to assume that replacing the valves was necessary to

Not Reported in F.Supp.2d, 2003 WL 22723025 (E.D.La.)
**(Cite as: 2003 WL 22723025 (E.D.La.))**

meet the ARCO deadline and avoid delay damages. The Defendants' motion to exclude evidence supporting claims that are no longer being pursued is GRANTED. Avondale may not introduce evidence of the $50,000 demurrage charge in an attempt to demonstrate the reasonableness of its conduct.

3. Financial Status or Relative Wealth of Parties

**\*2** The motion to exclude evidence of financial status or wealth is GRANTED. See Fed.R.Evid. 402, 403.

4. Discovery Disputes or the Alleged Failure of the Defendant to Provide Required Discovery

The Court shall reserve ruling on this motion until it becomes an issue at trial.

5. No Reference to Religion

The motion to exclude any reference pertaining to the religion or religious and spiritual practices of any witness or other person involved in this lawsuit is GRANTED.

6. Hypothetical Questions Without Adequate Foundation

The motion to exclude any opinions or testimony concerning hypothetical scenarios unsupported by admissible evidence is GRANTED.

7. Privilege Objections

The motion to exclude any reference to any claims of the attorney-client privilege, the work product privilege, the consulting expert privilege, or any other privilege that Defendant has asserted in this action is GRANTED.

8. No or Limited Expert Testimony of Gregg Perkin

This motion is duplicative of the Defendants' Motion to Exclude Expert Testimony Under Rule 702. The Court shall address this motion in its ruling on the *Daubert* motion.

9. No Expert Testimony of Douglas Tymkiw

This motion is duplicative of the Defendants' Motion to Exclude Expert Testimony Under Rule 702. The Court shall address this motion in its ruling on the *Daubert* motion.

10. No Evidence of Tests Conducted After Plaintiff's Expert Reports Were Submitted

The motion to exclude evidence from any tests conducted after Plaintiff's expert reports were submitted is GRANTED. The Plaintiff shall not introduce any "supplementary or corrected" expert testimony that was not disclosed in accordance with Rule 26(e).

Rule 37 provides "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial ... any witness or information not so disclosed." Fed. R. Civ. Pro. 37(c)(1). Supplemental and rebuttal disclosures may not be used as tools to extend the deadlines in which a party may supply the "lion's share of its expert information." Sierra Club v. Cedar Point Oil Co. Inc., 73 F.3d 546, 572 (5th Cir.1996).

The record indicates that Avondale had exclusive possession of the disputed valves for several years. Avondale had a sufficient opportunity to have its experts test the valves and utilize the data to produce comprehensive reports of its experts' opinions. Given the circumstances, Avondale cannot ignore the rules governing supplemental and rebuttal disclosures and argue that Tyco had sufficient notice that it might expand the scope of the expert testimony at trial.

11. Undisclosed Experts or Expert Opinions.

The motion to exclude any expert or opinion testimony from any person not properly and fully identified as an expert in compliance with this Court's orders is GRANTED.

12. Evidence of Settlement Negotiations

**\*3** The motion to exclude evidence regarding settlement negotiations is GRANTED. Fed.R.Evid. 408.

13. Evidence Plaintiff did not Produce in Discovery

The motion to exclude any evidence the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22723025 (E.D.La.)
**(Cite as: 2003 WL 22723025 (E.D.La.))**

Plaintiff did not produce in discovery is reserved until such time as such evidence is introduced.

E.D.La.,2003.
Avondale Industries, Inc. v. Tyco Valves and Controls, Inc.
Not Reported in F.Supp.2d, 2003 WL 22723025 (E.D.La.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Not Reported in F.Supp.2d, 2008 WL 2951926 (E.D.La.)
**(Cite as: 2008 WL 2951926 (E.D.La.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Cynthia Butler DENLEY
v.
HARTFORD INSURANCE COMPANY OF the MIDWEST.

Civil Action No. 07-4015.
July 29, 2008.

J. Douglas Sunseri, Edward C. Vocke, IV, Svetlana V. Crouch, Nicaud & Sunseri, LLC, Metairie, LA, for Cynthia Butler Denley.

Simeon B. Reimonenq, Jr., Ralph Shelton Hubbard, III, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, Christopher W. Martin, Martin R. Sadler, Patrick M. Kemp, Martin, Disiere, Jefferson & Wisdom, LLP, Houston, TX, for Hartford Insurance Company of the Midwest.

## ORDER AND REASONS [FN1]

FN1. Samantha Kennedy, second year law student at Loyola University New Orleans, College of Law, assisted in the research and preparation of this Order.

HELEN G. BERRIGAN, District Judge.

*1 Before the Court are the motions filed of defendant, Hartford Insurance Company of the Midwest ("Hartford") for summary judgment and to exclude the Elite Homes by Wirth ("Elite") report and the testimony of the Plaintiff's ("Denley") expert witnesses, Kevin Manale ("Manale") and Ronnie Wirth ("Wirth"), pursuant to Federal Rules of Evidence 702 and Federal Rule of Civil Procedure 37. Having considered the arguments of counsel, the record and the applicable law, the Court finds that the motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion to exclude experts and the expert report GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

The Plaintiff, Denley, was living in her home in New Orleans East at the time of Hurricane Katrina in August of 2005. Her home, garage, and personal belongings sustained damage due to the storm, at least some from wind specifically. (Rec Doc 20-12; 29-5). Denley evacuated to Jennings, Louisiana and ultimately Shreveport, Louisiana. (Rec.Doc. 29-3, 2).

On November 19, 2005, the independent adjusting firm, Premier Catastrophe Services ("Premier"), sent Dale Sands ("Sands") to inspect Denley's premises. *Id.* Sands took photos of damaged areas of the premises. Hartford argues photographs of the roof show a power attic vent in place, which Hartford suggests went missing after the inspection, creating a hole in the roof. This hole, Hartford asserts, is both largely the cause of the damages that Denley now claims and the *basis* of Denley's argument for damages. (Rec.Doc.20-12, 2). On November 26, 2005, Sands prepared an inspection report and its delivery date to Denley is in dispute. Hartford insists the report was provided to the Plaintiff on December 2, 2005 and Denley argues she did not receive the report until May of 2008. (Rec. Docs. 20-12, 2; 29-5 at 3; 29 at 2). Sands report found $1038.25 in wind or wind-driven rain above the 6 .5 foot flood line in Denley's house, amounting to damages that fall well below Denley's insurance deductible. (Rec.Doc. 20-7, 13). Denley argues that the report is inaccurate because it lists the flood line of the house at 6.5 feet, where the photos depict a flood line at 4.5 feet. (Rec.Doc. 29-5). Furthermore, Denley argues that Sands did not photograph all of the damage, nor the undamaged areas, so as to record a comprehensive picture of the damaged property. *Id.* at 2. Denley hired Elite to inspect and prepare a damage estimate for her home in June 2007. According to Denley, Manale and Wirth inspected the property to-

Not Reported in F.Supp.2d, 2008 WL 2951926 (E.D.La.)
**(Cite as: 2008 WL 2951926 (E.D.La.))**

gether for Elite. Manale and Wirth's report, the Elite report, found $55,005.00 in wind or wind-driven rain damage to the insured structures, above the 4.5 foot flood line. (Rec.Doc. 29-3).

On August 7, 2007, the district court received Denley's petition for damages. Denley is suing Hartford for wind and wind-driven rain damage, failure to pay insurance claim, breach of duty, and breach of contract. (Rec.Doc.1-2). Hartford sent Denley a Request for Admission on December 6, 2007. (Rec. Doc 20-11). The Request was not returned until March of 2008. (Rec.Doc.20-12). In the meantime, on January 22, 2008, Denley's attorneys sent Hartford's attorneys a letter listing all the damages under the policy and an estimate as determined by Manale.[FN2] (Rec. Doc 29-3). On May 20, 2008, Premier re-inspected the house and noted the missing power attic vent, a hole in the vent's place, windows that were open, and a rear door that was not secured well. Hartford alleges that the unsecured door and open windows, along with a hole in the roof, allowed for high humidity levels, and presumably, that if the windows were shut, the door secure, and the power attic vent in place, the house would withstand humid air. (Rec.Doc. 20-2, 10).

> FN2. The letter also included damages for personal property, falling under Section I, Coverage C of the policy and Additional Living Expenses, falling under Section I Coverage D amounting to $64,180.50, for a total of $114,157.47 (minus the $4,240.00 deductible). (Rec.Doc. 29-3, 2).

**\*2** On June 10, 2008, Hartford filed a Motion *in limine,* to exclude the testimony of both Wirth and Manale and the Elite report. (Rec.Doc. 21-2). Hartford also filed a Motion for Summary Judgment on all of Denley's claims. (Rec.Doc. 20).

**II. Defendant's Motion to Exclude Expert Witness**

Federal Rule 702 governs the admissibility of expert testimony and reports. It states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Rule 702 was amended in 2000 to reflect the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). The *Daubert* decision changed the criteria for the admissibility of expert testimony, charging trial courts to act as "gatekeepers" to ensure that proffered testimony is both relevant and reliable. *Daubert,* 509 U.S. at 589. In *Kumho Tire,* the Supreme Court held that the relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony. *Kumho Tire,* 526 U.S. at 147.

In *Daubert,* the Supreme Court created a two-prong test for trial judges to determine the admissibility of expert testimony. To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592. Additionally, both prongs of the Daubert test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Id.* Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology, not on the conclusions that they generate."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Id.* at 595. Several factors which may be considered in determining the soundness of the scientific methodology include: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards; and (4) whether the theory or technique used has been generally accepted. *Id.* at 593-94. These factors do not constitute a definitive checklist or test. *Kumho Tire,* U.S. at 144. Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology the expert employed. *Id.* The applicability of each factor depends on the particular facts of the case. *Id.*

**\*3** The second prong, whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert,* 509, U.S. at 591. *Daubert* described this examination as a question of whether expert testimony proffered in this case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.* (citing *United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir.1985)). As noted in *Cunningham v. Bienfang,* 2002 WL 31553976 (N.D.Tex. Nov. 15, 2002), Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is not of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Therefore, expert testimony is not relevant, and thus inadmissible, if it is not helpful. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters v. Five Star Marine,* 898 F.2d 448, 450 (5th Cir.1990). The Court in *Peters* ruled that it is within the discretion of the trial judge to decide "that the [fact-finder] could adeptly assess the situation using only their common experience and knowledge," and thus exclude expert testimony on that basis. If the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded. *In Re Midland Enterprises, Inc.,* 2002 WL 31780156 at *3 (E.D.La. Dec. 11, 2002).

When expert testimony or reports are challenged under *Daubert,* the Court's role as gatekeeper does not replace the traditional adversary system, or the jury's place within the system. *Scordill v. Louisville Ladder Group, L.L.C.,* 2003 WL 22427981 at *3 (E.D.La. Oct. 24, 2003). As the *Daubert* court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. As a general rule, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land, More or Less S. in County, Miss.,* 80 F.3d 1074, 1077 (5th Cir.1996)(citing *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987)).

Hartford argues that Manale and Wirth should not be permitted to testify as experts because there is no evidence that they have qualifications to speak on causation and lack a reliable methodology for evaluating damage. (Rec.Doc. 21-2, 6-7). To assess Manale and Wirth's expertise, the Court must determine whether the witnesses, because of specialized knowledge, skill, experience, training, or education in the relevant field, is qualified to express an opinion on the topic at issue. *Daubert,* 509, U.S. at 590. Manale's resume demonstrates that he is a licensed insurance adjuster in Florida and Texas, has been an estimator since 2006,[FN3] has performed inspection and repair with the U.S. Department of Housing and Urban Development ("HUD") and has worked in the construction industry. (Rec.Doc.27-4). Wirth is a licensed contractor, was a lead home inspector for HUD, has built more than 150 homes, and is certified in Xactimate, the tool used to generate the damage estimates. (Rec.Doc. 27-2). Wirth's resume reflects knowledge and ex-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2951926 (E.D.La.)
**(Cite as: 2008 WL 2951926 (E.D.La.))**

perience in inspection, and that he understands the construction industry and how houses are constructed. Both Manale and Wirth have the requisite knowledge and experience to testify to damage, repair and costs.

> FN3. According to Denley, Manale has conducted approximately 700 inspections since Hurricane Katrina. (Rec.Doc. 27, 3).

***4** Hartford takes issue with Manale and Wirth's qualifications to discern the causation of the damage to Denley's property. Denley directed "Wirth to prepare a wind-only estimate, therefore, excluding damages that would have been caused by flood waters." (Rec.Doc. 29-3, 1). The Court agrees that Manale and Wirth's experience with building homes does not necessarily mean they are qualified to ascertain the causation of damages. In light of the continuance of the trial, Manale and Wirth shall be permitted to supplement their qualifications with more specific information that they claim allows them to reliably determine causation.

Manale and Wirth's methodology for determining damage was using the Xactimate tool, which Wirth is certified to use. This tool is widely recognized and used in the insurance industry to estimate damage. (Rec.Doc. 27, 5). Using the Xactimate as an estimate tool, this methodology meets the soundness criteria.

The Court finds Manale and Wirth qualified to testify as experts as to the scope of damage to Denley's property. As to causation, they must supplement their qualifications to demonstrate sufficient expertise before such testimony will be permitted. Hartford's motion to exclude Manale and Wirth as experts is GRANTED IN PART and DENIED IN PART.

### III. Defendant's Motion to Exclude Expert Report

Federal Rule of Civil Procedure 12(a)(2)(B) governs expert reports. In accordance with this Rule, an expert report must contain:

i) a complete statement of all opinions the witness will express and the basis and reasons for them; ii) the data and other information considered by the witness in forming them; iii) any exhibits that will be used to summarize or support them; iv) the witness's qualifications including a list of all publications authored in the previous ten years; v) a list of all other cases in which, during the previous four years, the witnessed testified as an expert at trial or by deposition; and vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B). According to the advisory committee's note, 26(a) expert reports must be "detailed and complete." FED.R.CIV.P. 26 Advisory Committee Note; see also *Sierra Club v. Cedar Point Oil Co.,* 73 F.3d 546, 571 (5th Cir.1996). A complete report must include the substance of the testimony that an expert is expected to give on direct examination together with the reasons. *Id.; Walsh v. McCain Foods Ltd.,* 81 F.3d 722, 727 (7th Cir.1996). Furthermore, the report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,* 516 U.S. 822 (1995). Essentially, expert reports must not be preliminary in nature. FED.R.CIV.P. 26 Advisory Committee Note; *Sierra Club,* 73 F.3d at 571. Also, expert reports must include "how" and "why" the expert reached a particular result, not merely the experts conclusory opinions. *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J.1996).

***5** Hartford argues that the Elite report is based on erroneous facts (Rec.Doc. 21-2, 1). Hartford cites *Sigur v. Emerson Process Management,* where the court found that the expert's reliance on an untrue assumption, rendered the report irrelevant. 2007 WL 1893632 (M.D. La. April 25, 2007). In this case, Hartford proposes that the Elite report erroneously relies on the assumption that the attic

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

vent blew off during the hurricane, whereby exposing the house to weather through that particular hole in the roof. (Rec.Doc.21-2, 9). Denley has not claimed that the power attic vent is the sole or even the largest source of the damage [FN4] to the structures, neither is this alleged by Manale or Wirth. The report simply lists the attic vent as an item that requires replacement.

> FN4. The attic vent is listed as one roof opening among the many, through which wind or wind-driven rain entered the house. (Rec.Doc. 27, 4). Denley, not Manale nor Wirth, listed under "Personal Property" damages, that art and fur coats located in the attic were damaged under the hole from where the vent was. (Rec.Doc. 29-3, 2).

Furthermore, Hartford argues that because of its erroneous factual basis, the report is irrelevant and inadmissible. (Rec.Doc. 21, 1). Federal Rule of Evidence 401 defines relevant evidence as "that which has the tendency to make the existence of any fact that is of consequence as to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401. The issues in this case are the determination of the extent and cost to repair or replace damage to Denley's property. Manale and Wirth were asked to record damage above the 4.5 foot flood line of the house. (Rec.Doc.29-3, 1). The report includes a detailed assessment of each room and clearly lists the purpose of the report as a record of the damage on both the first and twelfth pages. (Rec.Doc. 27-2, 1, 2).

The Elite report speaks directly to the issues of the extent of the damage and the cost of repair and replacement because it provides the trier of fact with evidence relating to damage and the costs associated with the damage. Whether some of the damage calculations were derived from an alleged erroneous fact may be raised at trial. The Court finds that the report is relevant as to damages and admissible.

However, the report is seriously flawed in that it does not set forth the basis for why and how Manale and Wirth conclude the damage was caused by wind from the hurricane. This is the key issue in the case and unless and until their report is supplemented to set forth those facts and also supplemented to justify finding them qualified to give such testimony as to causation, they may not so testify.

The motion to exclude the expert report is GRANTED IN PART and DENIED IN PART.

**IV. MOTION FOR SUMMARY JUDGMENT**

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir.2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir.1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994); *Lujan v. Nat'l. Wildlife Fed'n.,* 497 U.S. 871, 871-73 (1990); *Don-*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2951926 (E.D.La.)
**(Cite as: 2008 WL 2951926 (E.D.La.))**

*aghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir.1992).

***6** Hartford argues that the Court must find that it is not liable for any damages from flooding and/or water arising from the levee breaches, citing to the Fifth Circuit's opinion in *In re: Katrina Breaches Litigation,* 495 F.3d 191, 222 (5th Cir.2007) (holding that an exclusion for loss from "flood" such as that in the instant policy unambiguously precluded coverage for losses caused by flooding due to breached levees). Hartford also argues that the allegation in ¶ VII of Denley's complaint must be rejected because the VPL does not apply to the instant homeowner's policy, and even if it did, where there are two causes that contribute to a total loss of a home, the VPL will not apply. *See Chauvin v. State Farm Fire and Cas. Co.,* 450 F.Supp.2d 660, 669 (E.D.La.2006). Denley now acknowledges that the scope of the homeowner's policy does not include flooding. *See also Sher v. Lafayette Ins. Co.,* ---So.2d ----, 2008 WL 928486 (La.2008), and further stipulates that her claim is not for the policy limits under the VPL. (Rec. Doc. 29 at 8). Accordingly, the Court finds that summary judgment should be granted with regard to these particular allegations. The Court does note, however, that Hartford's argument that the VPL applies only to fire insurance policies, and not a policy such as the homeowner's policy at issue in this case, has been soundly rejected by courts in this district. *See, e.g., Caruso v. Allstate Ins. Co.,* 2007 WL 625830 (E.D.La.2/26/07) (Vance, J.).

Hartford next argues that Denley's allegations, that winds from Hurricane Katrina blew the power vent off the roof causing a hole and allowing water to enter and destroy the ceilings, resulting in damage of $54,216.97 and $55,005 in loss to personal property, should fail because photographs taken on November 19, 2005 conclusively demonstrate that the vent was still intact and undamaged at that time. Hartford's argument presupposes that it is Denley's theory that this hole, and this hole alone, through which the alleged wind damage occurred. However, the petition no where specifies that the wind damage was caused solely as a result of this hole, and in her answers to interrogatories, Denley's claims that her "residence and several personal property items were destroyed by wind or from rain water intrusion through wind-created *openings* ." (Rec. Doc. 20-10 at 4). Denley argues that water infiltrated through the attic vent, damaged seal tab shingles, displaced ridge tiles and temporary uplift of the roof decking. Denley points to evidence of wind damage in photographs taken by Hartford's adjuster on November 19, 2005, showing damaged ridge tiles through which water could have infiltrated, damaged shingles at various elevations, imbedded debris in the seal tab shingles, and broken windows above the flood line. (Rec.Doc.29, Ex. C). Denley also argues that while the photographs show the vent in place at that time, they do not show that it was uncompromised.

***7** The case cited by Hartford, *Southern Hotels,* in which the court determined that the plaintiff had failed to show a causal nexus between Hurricane Andrew and a loss of revenue to plaintiff's hotel, involved significantly more attenuated issues of causation than the relatively straightforward dispute here over whether physical damage above the flood line resulted from Hurricane Katrina's winds. *Southern Hotels Ltd. Partnership v. Lloyds's Underwriters,* 1996 WL 592732 (E.D.La.1996). Reviewing the facts and drawing all inferences most favorable to Denley here, the Court finds that a reasonable jury could conclude on evidence in the record that damage caused to her home and personal property was caused by wind and wind-driven rain. The Court acknowledges that some of Denley's claims may be weaker in light of the photographs that show the vent intact two months after the hurricane. But such concerns are to be appropriately raised, through cross-examination and contrary evidence, for the jury to ultimately determine at trial.

Hartford argues that Denley is precluded from recovery because she breached conditions of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

policy by her failure to protect the property from further damage and failure to give prompt notice of her damage claims. According to Hartford, Denley failed to protect her property from further damage as required by the policy because for more than two years after Katrina she allowed continuous water penetration to the dwelling by leaving windows and leaving an unsecured door at the rear entry open and not covering the hole left by the missing power attic vent. Additionally, she further breached the contract through her failure to give prompt notice of her claim to Hartford. Hartford relies in large part on the disputed estimate and inspection made in November of 2005. The Court notes that there is a dispute as to when that report was provided to Denley. Issues of mitigation of damages and whether plaintiff fulfilled her obligation to make "reasonable and necessary repairs" to the property (Rec.Doc. 20-4), depend in large part on the factual determination of when certain damages occurred, and what was reasonable under the circumstances. The Court finds that such fundamental disputed issues of fact are not appropriately determined by summary judgment.

Hartford next argues that summary judgment should be granted on all of Denley's claims because she has admitted that Hartford owes her nothing because she failed to timely respond to its December 6, 2007 requests for admissions, and no extensions of time were requested of the Court or granted. Hartford's requests for admission include the following: 1) Admit that Hartford owes you nothing more for Additional Living Expenses and loss of use under the terms of the policy; 2) Admit that Hartford owes you nothing more for damage to personal property under the terms of the Policy; 3) Admit that Hartford owes you nothing more for damage to appurtenant structures under the terms of the Policy; 4) Admit that Hartford owes you nothing more for damage to the dwelling under the terms of the Policy; 5) Admit that the Residence Premises was not untenable due to damage caused by the direct force of wind from Hurricane Katrina. (Rec.Doc. 20-12). Denley responded denying the requests for admission on March 2, 2008. *Id.* In addition, on January 22, 2008, the plaintiff submitted her demand for $114,157.42 for losses under the policy for each type of damage addressed in the request for admissions.

**\*8** Under FED.R.CIV.P 36(a)(3), a party must respond to a request for admission within 30 days of being served, or the matter will be deemed admitted. The purpose of allowing requests for admission is not, like other discovery devices, to elicit facts and information or obtain production of documents, but rather to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial. *See* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 36.02[1], at 36-6-36-7 (3d ed.2008); *American Auto. Ass'n v. AAA Legal Clinic,* 930 F.2d 1117, 1121 (5th Cir.1991); *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 123 F.R.D. 97, 102 (D.Del.1988). While summary judgment may be granted based on admissions or deemed admissions, such a drastic remedy should receive special scrutiny from the court. *See* MOORE'S, ¶ 3 6.03[4], at 36-19; *Printy v. Crotchet & Borel Serv.,* 196 F.R.D. 46 (E.D.Tex.2000).

In the instant case Denley did respond to the requests, approximately two months late, and additionally submitted her demand for payment on January 22, 2008. This demand, made only about two weeks after her responses were due, at least answered the substance of the defendant's requests. A late response may be treated as an amendment to an admission, *see Chancellor v. City of Detroit,* 454 F.Supp.2d2d 645, 666-67 (E.D.Mich.2006), and considered under the two-prong test under Rule 36(b). *Id.* On motion, and subject to Rule 16(e), a court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. FED.R .CIV.P. 36(b). Notably, preparation of a summary judgment motion does not constitute prejudice under this test.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*North La. Rehab. Ctr. Inc. v. United States,* 179 F.Supp.2d 658, 663 (W.D.La.2001)(finding that the necessity of having to convince the trier of fact of the truth of a matter erroneously admitted does not constitute sufficient prejudice). In this case, the specific requests for admission at issue, which essentially ask Denley to broadly admit that none of her claims have any merit, hardly seem to be calculated to narrow the actual disputed issues and expedite trial in any meaningful way. Although Denley has not moved for amendment, permitting amendment of the deemed admissions, particularly to such generic and unhelpful requests, would serve the presentation of the case on its merits. Likewise, especially in light of the demand Denley made on January 22, 2008, and again considering the nature of the requests at issue, it can hardly be argued that Hartford was prejudiced in presentation of its case. As a result, the drastic remedy of summary judgment is inappropriate. *See Printy,* 196 F.R.D. 46 (finding that extreme and drastic measure of summary judgment was not justified and allowing withdrawal of plaintiff's default admissions even where counsel had failed to formally request permission to amend or withdraw them, because of the federal rules' direction to courts to construe all pleadings so as to do substantial justice) (citing FED.R.CIV.P. 8(f)).

***9** The Court does note that it does not take failure to comply with the discovery rules lightly, and Denley has not raised any legitimate excuse for the failure to timely respond to the Hartford's requests for admissions. Moreover, Denley's counsel has never moved for amendment or leave to respond late, or attempted to explain the failure to timely respond. However, because of the lack of any perceivable prejudice to the defendant, and because Denley substantively answered the requests and made clear they were denied with the January demand, the Court does not find that sanction warranted here.

Finally, Hartford argues that Denley's extra-contractual claims under LA.R.S. 22:658 and 22:1220 must fail because it has established that no additional payments are due to Denley. Because Hartford's arguments here depend primarily on its other arguments, which the Court finds do not merit summary judgment, summary judgment on this ground is also not justified. Although Hartford raises arguments that suggest that Denley's success on her extra-contractual claims is unlikely, whether Hartford's actions were arbitrary and capricious is an issue for which there are genuine issues of fact that should be determined by the jury.

Accordingly,

IT IS ORDERED that the motion for summary judgment is GRANTED IN PART with respect to plaintiff's flood and VPL claims, and DENIED in all other respects.

IT IS FURTHER ORDERED that the motion to exclude the expert witnesses and the expert report is GRANTED IN PART and DENIED IN PART.

E.D.La.,2008.
Denley v. Hartford Ins. Co. of Midwest
Not Reported in F.Supp.2d, 2008 WL 2951926 (E.D.La.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 702061 (E.D.La.)
**(Cite as: 2012 WL 702061 (E.D.La.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Beatriz M. SMITH
v.
PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, et al.

Civil Action No. 11–872.
March 1, 2012.

Scott Eric Silbert, Robert Justin Garon, Silbert & Garon, LLP, Waldon Michael Hingle, Michael Hingle & Associates, Inc., New Orleans, LA, for Beatriz M. Smith.

Tasha W. Hebert, Charles V. Giordano, Hebbler & Giordano, LLC, Metairie, LA, for Progressive County Mutual Insurance Company, et al.

### ORDER & REASONS

ELDON E. FALLON, District Judge.

**\*1** The Court has pending before it Plaintiff Beatriz M. Smith's Motion in Limine (Rec.Doc.11–872) to exclude opinion testimony from a Louisiana State Trooper. Having reviewed the briefs and the applicable law, the Court now issues this Order and Reasons.

### I. Background

This case arises out of car accident between Plaintiff Beatriz M. Smith, a resident of Kenner, Louisiana, and Defendant José L. Paez, a resident of Miami, Florida. Plaintiff alleges that on June 26, 2010, she was driving north on U.S. Route 61 in St. Charles Parish when the vehicle driven by Defendant Paez, negligently made a U-turn in front of her. In response, Plaintiff slammed on her brakes and swerved into the right lane, and in doing so struck the rear of Paez's truck before being struck herself by the dump truck behind her; the driver of the dump truck is not a party. Louisiana State Trooper Kory Borcherding investigated the accident and issued a citation to Plaintiff.

Plaintiff filed suit in this court against Paez and Progressive County Mutual Insurance Company, Paez's automobile liability insurer. Plaintiff seeks $960,000 in damages. Defendants have answered, denying liability and asserting that Plaintiff was at least in part at fault for the accident.

### II. Present Motion

Plaintiff Smith has filed a motion *in limine* regarding the expected testimony of Trooper Borcherding. Plaintiff seeks to prohibit him from offering opinion testimony, including opinions regarding the cause of the accident and who was at fault or failed to comply with the law. Defendants oppose the motion, contending that Trooper Borcherding is qualified to offer expert opinion testimony as an accident investigator.

### III. Law & Analysis

At the outset, the Court carefully notes the scope of Plaintiff's motion in limine. Plaintiff does not object "to Trooper Borcherding testifying about facts within his knowledge, such as his observations when he arrived on the scene, any measurements that he took, any photographs that he took, the steps he took during his investigation, who he spoke to, what those witnesses said, and who reported injuries at the accident scene." (Rec. Doc. 17–1 at 2). FN1 Instead, Plaintiff seeks to exclude opinion testimony of Trooper Borcherding's conclusions as to witness credibility, causation of the accident, and who was at fault. With that in mind, the Court will analyze whether any opinion testimony from Trooper Borcherding might be admissible.

> FN1. This is consistent with the Rules of Evidence and with case law. *E.g., Iglinsky v. Player,* 2010 WL 4925000 at \*4 (M.D.La. July 16, 2010) ("... Trooper Bordelon is permitted to testify as to other facts and circumstances surrounding the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

subject accident that he personally observed (such as where the vehicle was located when he arrived and any damage to the vehicle....").

The Federal Rules of Evidence divide opinion testimony into two categories: lay opinion and expert opinion. Lay opinion testimony is governed by Rule 701:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

**\*2** Fed.R.Evid. 701. Expert opinion testimony, on the other hand, is governed by Rule 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) (a) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702. The Court will address whether Trooper Borcherding's anticipated testimony regarding the cause of the accident and similar opinions is admissible as either lay or expert testimony.

First, courts routinely hold that a law enforcement officer not otherwise qualified as an expert may not offer lay opinion testimony regarding accident causation. Thus, in *Duhon v. Marceaux,* the Fifth Circuit affirmed the district court's exclusion of a law enforcement officer's opinion testimony regarding the cause of a car accident. 33 F. App'x 703, 2002 WL 432383 at \*4 (5th Cir.2002). The officer in *Duhon* was not qualified as an expert in accident reconstruction and did not personally witness the accident, and therefore the Fifth Circuit affirmed exclusion on the basis of the "general rule" that "police officers' **lay** opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene are excluded under **Rule 701**." *Id.* (quotations omitted); *accord Graves ex rel. W.A. G. v. Toyota Motor Corp.,* 2011 WL 4590772, at \*9 (S.D.Miss. Sept.30, 2011) ("The reconstruction opinion testimony of law enforcement officers, who are not competent to testify as accident reconstructionists, violates the evidentiary standards of Rule 701 ....") (citing *Duhon).* The case cited by Defendant is not to the contrary. *See Martin v. Pride Offshore Co.,* 1999 WL 4921, at \*1 (E.D.La. Jan.6, 1999) (denying motion to strike affidavit of sergeant who "was competent to testify as an expert in this area"). Accordingly, Trooper Borcherding's opinions regarding the cause of the accident are not proper lay opinion testimony and cannot be admitted under Rule 701.

The dispute, then, is whether Trooper Borcherding may offer expert opinion testimony. This inquiry implicates both Rule 702 and Federal Rule of Civil Procedure 26, which governs disclosure of witnesses offering expert opinion testimony. To a certain extent, the parties argue past each other: Defendants argue in terms of Rule 702 that Trooper Borcherding is qualified as an expert in "accident investigation," while Plaintiff argues in terms of Rule 26 that Defendants never identified him as offering expert opinion testimony.

The Court will address the procedural issue

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

first.[FN2] Federal Rule of Civil Procedure 26 requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed.R.Civ.P. 26(a)(2)(A). In addition to disclosing the identity, if the witness is retained or specially employed to provide expert testimony in the case the disclosure must include a written report complying with certain requirements. Fed.R.Civ.P. 26(a)(2)(B). If the witness does not fall into that category and is not required to provide a written report, the disclosure need only state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed.R.Civ.P. 26(a)(2)(C).

> FN2. The Court does not view Plaintiff's motion as a *Daubert* motion challenging the admissibility of Trooper Borcherding's expert testimony. Rather, it is a motion to prohibit a disclosed fact witness from offering inadmissible expert testimony. Accordingly, the Court does not construe this motion as untimely per the pretrial deadline for motions "regarding the admissibility of expert testimony."

**\*3** Trooper Borcherding was the investigating officer on the scene of the accident. Thus, he has not been retained or employed by any party and falls within the scope of Rule 26(a)(2)(C), rather than (a)(2)(B). He is in a position similar to "physicians or other health care professionals and employees of a party who do not regularly provide expert testimony." Fed.R.Civ.P. 26 advisory committee's note to 2010 amendments. Accordingly, if Defendants intended to use Trooper Borcherding to present expert testimony, Defendants were required to disclose that they might use him in that manner, state the subject matter of that expert testimony, and provide a summary of the facts and opinions to which he is expected to testify. Fed.R.Civ.P. 26(a)(2)(A), (a)(2)(C). The Court's scheduling order does not expressly address Rule 26(a)(2)(C) disclosures, and thus the disclosure should have been accomplished at least 90 days before trial. Fed.R.Civ.P. 26(a)(2)(D)(i).

The record does not reflect that Defendants made the requisite disclosures regarding Trooper Borcherding, timely or otherwise. Their witness list, filed on January 3, 2012, does not contain any indication that he would offer expert opinion testimony. (Rec.Doc.16). Plaintiff argues that no other disclosure was made, and Defendants have not provided any evidence that this was done.

Failure to make the required Rule 26(a) disclosures prevents a party from using the undisclosed material, "unless the failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). In deciding whether to exclude untimely-disclosed expert witness testimony, the Court should consider four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." Betzel v. State Farm Lloyds, 480 F.3d 704, 707 (5th Cir.2007) (quoting Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir.1990)).

The parties have not addressed these four factors. The Court is without a sufficient basis to assess Defendants' explanation for failing to disclose Trooper Borcherding's intended expert testimony, the importance of that testimony, the prejudice to Plaintiff,[FN3] or whether a continuance is appropriate. The Court notes that the parties have apparently retained accident reconstruction experts, and thus are fully aware of their expert disclosure obligations. Moreover, with the availability of that expert testimony, Trooper Borcherding's personal opinions may be of less importance to Defendants. On the state of this record, the Court is inclined to exclude Trooper Borcherding from offering expert opinion testimony as a result of Defendants' procedural failure to disclose that he would do so. If Defendants can make a showing that the testimony

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

should be permitted, the Court may later reconsider. Because Trooper Borcherding's testimony is restricted on procedural grounds, the Court does not reach whether he is qualified to offer expert testimony.

> FN3. Defendants assert that "Plaintiff will not be prejudiced by Trooper Borcherding testifying as an expert in the field of accident investigation as plaintiff scheduled and deposed Trooper Borcherding ." (Rec. Doc. 19 at 3). The Court attributes little weight to this conclusory statement, particularly because the investigating officer will almost always be deposed whether or not a party is aware that the opposing party may intend to elicit expert testimony at trial.

**\*4** A related issue is whether Trooper Borcherding, or any other witness, may testify that Plaintiff was issued a citation in connection with the accident. The issuance of a citation after the accident is a fact and the parties have not drawn the Court's attention to any authority holding that such a fact must be kept from the jury. But Trooper Borcherding will not be permitted to testify as to why he issued the citation or his expert opinions regarding the cause of the accident. To the extent that any other expert witnesses have relied on Trooper Borcherding's opinions or accident report, the Court will address that matter in the fuller context of trial pursuant to Federal Rules of Evidence 703 and 705.

**IV. Conclusion**

For the foregoing reasons, IT IS ORDERED that Plaintiff's motion in limine (Rec.Doc.17) is GRANTED IN PART as set forth herein; Trooper Borcherding will be permitted to testify as to the facts he observed, but may not offer expert opinion testimony.

E.D.La.,2012.
Smith v. Progressive County Mut. Ins. Co.
Slip Copy, 2012 WL 702061 (E.D.La.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.