UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | §<br>§<br>§<br>§ | CIVIL ACTION NO. 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| | §<br>§ | |
| PERTAINS TO:  MRGO | §<br>§ | |
| *Armstrong*, No. 10-866 | §<br>§<br>§ | |

**DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE CERTAIN EXHIBITS
FROM THE MASTER EXHIBIT LIST**

Defendant Washington Group International, Inc. ("WGI") respectfully submits

this Memorandum in Support of its Motion to Strike Certain Exhibits from the Master Exhibit

List.[1]  None of these exhibits sheds any light on the salient facts of this litigation, and many of

---

[1] Specifically, WGI respectfully requests that the Court strike PX-0059, PX-0203, PX-0204, PX-0205, PX-0206, PX-0207, PX-0208, PX-0209, PX-0210, PX-0211, PX-0212, PX-0213, PX-0214, PX-0215, PX-0216, PX-0217, PX-0218, PX-0219, PX-0220, PX-0221, PX-0222, PX-0223, PX-0224, PX-0225, PX-0226, PX-0227, PX-0228, PX-0229, PX-0230, PX-0231, PX-0232, PX-0233, PX-0234, PX-0269, PX-0270, PX-0271, PX-0273, PX-0274, PX-0275, PX-0276, PX-0277, PX-0278, PX-0279, PX-0280, PX-0281, PX-0282, PX-0283, PX-0742, PX-0905, PX-0931, PX-0940, PX-0947, PX-1296, PX-1297, PX-1298, PX-1299, PX-1300, PX-1301, PX-1302, PX-1303, PX-1304, PX-1305, PX-1306, PX-1307, PX-1308, PX-1309, PX-1310, PX-1311, PX-1312, PX-1313, PX-1314, PX-1315, PX-1316, PX-1317, PX-1318, PX-1319, PX-1320, PX-1321, PX-1322, PX-1323, PX-1324, PX-1325, PX-1326, PX-1327, PX-1328, PX-1329, PX-1330, PX-1331, PX-1332, PX-1333, PX-2688, PX-2712, PX-2740, PX-2745, PX-2746, PX-2764, PX-2801, PX-2908, PX-2911, PX-2920, PX-2921, PX-2922, PX-2955, PX-2987, PX-3260, PX-3290, PX-3552, PX-3711, PX-3770, PX-3772, PX-3773, PX-3774, PX-3783, PX-3784, PX-3785, PX-3786, PX-3787, PX-3788, PX-3789, PX-3790, PX-3791, PX-3792, PX-3793, PX-3794, PX-3795, PX-3796, PX-3798, PX-3858, PX-3860, PX-3861, PX-3862, PX-3863, PX-3864, PX-3865, PX-3867, PX-3868, PX-3869, PX-3870, PX-3871, PX-3872, PX-3873, PX-3874, PX-3875, PX-3876, PX-3877, PX-3878, PX-3879, PX-3880, PX-3881, PX-3882, PX-3883, PX-3884, PX-3885, PX-3886, PX-3887, PX-3888, PX-3889, PX-3890, PX-3891, PX-3892, PX-3893, PX-3894, PX-3895, PX-3896, PX-3897, PX-3898, PX-3899, PX-3900, PX-3901, PX-4023, PX-4058, PX-4172, PX-4173, PX-

them contain inadmissible hearsay.[2]  For these reasons, and for the reasons set forth below,

Defendants[3] respectfully request that this Court strike these exhibits from the Master List.[4]

---

(continued…)

4174, PX-4175, PX-4176, PX-4177, PX-4178, PX-4179, PX-4180, PX-4181, PX-4182, PX-4183, PX-4184, PX-4185, PX-4186, PX-4187, PX-4188, PX-4494, PX-4539, PX-4563, PX-4565, PX-4567, PX-4571, PX-4580, PX-4582, PX-4603, and PX-4604.  Hard copies of these exhibits have been submitted concurrently with WGI's Motion, with the exception of PX-4604, a copy of which has been submitted on CD.  As discussed at p. 10, *infra*, this document consists of 4,000 pages of "trash tickets" from a subcontractor on Task Order 26.  Plaintiffs provided Defendants with an electronic copy of this exhibit this afternoon, and Defendants did not have sufficient time to prepare a hard copy for timely submission by 5:00 p.m.  Defendants will provide the Court with a hard copy of PX-4604 on Monday, August 13, 2012, unless the Court informs them otherwise.

[2] In two additional motions filed today, WGI also seeks the exclusion of the following exhibits:  PX-0106, PX-0109, PX-0151, PX-0331, PX-0686, PX-0687, PX-1007, PX-1236, PX-1237, PX-1238, PX-1239, PX-2764, PX-3552, PX-3711, PX-3811, PX-4033, PX-4557, and JX-1384.  In a separate motion, the United States seeks exclusion of certain deposition and trial testimony given in *United States v. Robinson*.  WGI hereby adopts and incorporates the arguments set forth in those motions as if fully set forth herein.

[3] By separate motion, the United States joins WGI's Motion in its entirety.

[4] Following the parties' meet-and-confer on August 7, 2012, Plaintiffs agreed to withdraw the following exhibits from the Master Exhibit List: JX-1718, JX-1725, JX-1833, PX-0107, PX-0136 - PX-0138, PX-0185, PX-0245, PX-0246, PX-0249, PX-0268, PX-0309, PX-0310, PX-0336 - PX-0342, PX-0401, PX-0403, PX-0685, PX-0733, PX-0735, PX-0738, PX-0743 - PX-0745, PX-0801, PX-0802, PX-0805, PX-0817, PX-0916 - PX-0923, PX-1021, PX-1046, PX-1077 - PX-1081, PX-1100, PX-1101, PX-1248 - PX-1251, PX-1261, PX-1293, PX-1334 - PX-1350, PX-1401 - PX-1403, PX-2706, PX-2707, PX-2717, PX-2718, PX-2722, PX-2731 - PX-2734, PX-2760 - PX-2763, PX-2832 - PX-2841, PX-2902, PX-2903, PX-2962, PX-2986, PX-2992, PX-3018 - PX-3020, PX-3071, PX-3084, PX-3474, PX-3678, PX-3679, PX-3703, PX-3727, PX-3813, PX-3927, PX-3972, PX-4019, PX-4021, PX-4022, PX-4024 - PX-4026, PX-4041, PX-4050, PX-4052, PX-4055, PX-4057, PX-4061, PX-4095, PX-4123, PX-4124, PX-4137, PX-4156, PX-4162, PX-4163, PX-4397, PX-4400, PX-4544, PX-4545, PX-4546, PX-4551, PX-4552, PX-4561, PX-4564, PX-4566, PX-4568, PX-4569, PX-4570, PX-4579, PX-4581, PX-4586, PX-4594, PX-4595, PX-4609 - PX-4614, PX-4616, PX-4617, PX-4618, PX-4619, PX-4626, PX-4661.  Defendants agreed to revise their objections to the following exhibits from Category 4 to Category 1 ("Conditional relevance"): JX-1693, PX-0272, PX-0935, PX-0961, PX-0962, PX-3775 - PX-3782, PX-3859, PX-3866, PX-3902, PX-3903, PX-4287 - PX-4345.  Defendants further agreed to revise their objections to the following exhibits from Category 4 to Category 2 ("Hearsay, portions of which may satisfy exceptions to the hearsay rule"): PX-3906.

## I.      LEGAL STANDARD

Federal Rule of Evidence 402 prohibits the admission of evidence that is not relevant.  An item of evidence is relevant if it "tends to prove or disprove the matter sought to be proved."  Fed. R. Evid. 401 advisory committee's note.  To be admissible, evidence must have some "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "Implicit in that definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action."  *U.S. v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981).

Federal Rule of Evidence 802 prohibits the admission of hearsay unless the hearsay statement fits a recognized exception.  As this Court is aware, hearsay statements are inadmissible because they are untrustworthy: "oath, personal appearance at trial, and cross-examination are the best mechanisms to ensure truthful and accurate testimony."  Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1306 (5th Cir. 1991).  Exceptions to the hearsay rule exist only for when the statement "possess[es] circumstantial guarantees of trustworthiness . . . ."  Fed. R. Evid. 803 advisory committee notes.

"The grant or denial of a motion in limine is considered discretionary, and thus will be reversed only for an abuse of discretion and a showing of prejudice."  *Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 64-44 (5th Cir. 2005) (quoting *Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994)); *Kirksey v. City of Jackson*, 663 F.2d 659 (5th Cir. 1981) (judge conducting bench trial did not abuse discretion by excluding testimony of three witnesses).

## II.     ARGUMENT

The exhibits discussed below are neither probative nor consequential to the determination of the salient issues in this litigation, and their admission would only serve to waste the parties' – and the Court's – limited time in an already complex trial.  Moreover, a number of Plaintiffs' exhibits on the Master Exhibit list not only have no relevance to the salient factual issues in this case, they also contain inadmissible hearsay and in some cases their admission will unfairly prejudice Defendants.  The Federal Rules prohibit the admission of such materials, and the exhibits should therefore be excluded from trial.

### A.     Documents Relating to Unsubstantiated Allegations of Improper Handling of Contaminated Materials at the EBIA During Task Order 26.

Plaintiffs seek to introduce into evidence documents relating to two separate allegations by third parties that Defendants improperly handled contaminated materials discovered at the EBIA during the environmental remediation work on Task Order 26.  Not only do these documents – which did not appear on Plaintiffs' exhibit list until months after the close of discovery – have no relevance to the factual disputes at the heart of this litigation, they present a very real possibility of unfairly prejudicing Defendants.

The first group of exhibits – PX-0940, PX-0947, PX-2688, PX-2911, PX-2920, PX-2921, and PX-2922 – relate to allegations made in October 2003 by Daniel Turlington, an employee of a WGI subcontractor on Task Order 26 from October 2001 to May 2003, and WGI's subsequent investigation of those allegations.  In an October 2003 e-mail to a WGI employee (PX-0947), Mr. Turlington claimed that WGI had merely "pretended" to remediate unspecified areas of the EBIA, that it had "buried" contaminated soils, and that it had improperly disposed of contaminated materials found at the EBIA site.  Setting aside the fact that WGI conducted a thorough investigation of Mr. Turlington's allegations and conclusively determined that they

were baseless, the question whether WGI properly disposed of contaminated material at the EBIA bears no relation to whether WGI backfilled the excavations in the EBIA in accordance with the applicable standard of care, or whether WGI's excavations or the improper backfilling thereof was a cause in fact of the levee and floodwall failures at the EBIA during Hurricane Katrina.   Indeed, the plaintiffs did not ask a single witness about these documents (or the allegations contained therein) during discovery.   Moreover, the allegations themselves are a textbook example of inadmissible hearsay.  Plaintiffs are not calling Mr. Turlington at trial, and he was never deposed in this matter.   His unsworn out-of-court statements do not fit any exception to the hearsay rule.

The second category of exhibits – PX-0905, PX-0931, PX-2740, PX-2745, PX-2746, PX-2908, PX-2987 – concern the departure of Jim Blazek, an employee of Materials Management Group ("MMG"), another environmental remediation subcontractor on Task Order 26.  Following a September 4, 2001,  petroleum spill at the Mayer Yacht site, Mr. Blazek left the project, in the process accusing WGI and the USACE of failing to properly notify regulatory authorities of the spill.  Here again, these unsubstantiated allegations have no probative value with respect to the central factual disputes in this case.  And here as well, plaintiffs did not take any discovery relating to these allegations.

The fact that the Turlington and Blazek allegations bear no relation to the salient issues in this litigation also strengthens the argument that these exhibits should be excluded from evidence under Rule 403:  their nonexistent probative value is far outweighed by the fact that both sets of allegations seek generally – and impermissibly – to depict Defendants as bad actors. Permitting their introduction at trial would be akin to allowing the introduction of evidence of a defendant's alleged prior bad acts in violation of Rule 404.  *See, e.g.*, *Bair v. Callahan*, 664 F.3d

1225, 1227 (8th Cir. 2012) (defendant's other acts not admissible unless (i) "relevant to a material issue," (ii) other acts are proven by a preponderance of the evidence, (iii) evidence is "higher in probative value than in prejudicial effect," and (iv) prior act is "similar in kind and close in time to the event at issue"); *accord DiRico v. City of Quincy*, 404 F.3d 464, 468 (1st Cir. 2004) ("single, unsubstantiated claim" of a prior act has limited probative value).

      **B.**      **Testimony of Reed Mosher in *Robinson v. United States*.**

      Plaintiffs also seek admission of the deposition and trial testimony of Dr. Reed Mosher taken in *Robinson v. United States*.  PX 0742, PX 4023.  These statements, made outside of this proceeding and outside of the presence of WGI are inadmissible hearsay.  As with Mr. Turlington, Plaintiffs are not calling Dr. Mosher at trial, and he was never deposed in this matter. Consequently, WGI has never had the opportunity to examine Dr. Mosher or to test any of his expert opinions in *Robinson*.

      Admitting Dr. Mosher's testimony in this proceeding would also violate both Rule 26(a) and the Court's scheduling order regarding expert disclosures.  Dr. Mosher testified as an expert in *Robinson*, but he has never been included on any party's witness list in this matter.  He has not submitted an expert report in this matter.  Plaintiffs therefore seek the introduction of expert testimony without the mandatory disclosures required under this Court's orders and the Federal Rules of Civil Procedure.

      **C.**      **The "Kansas City Guidelines."**

      Plaintiffs' Exhibit 2712 is a document entitled "Guidance for Work Proposed Near or Within a Federally Constructed Flood Control Projects [*sic*]" created by the Kansas City Division of the USACE (the "Kansas City Guidelines").  In their deposition designations, Plaintiffs also seek to introduce the testimony of USACE and WGI personnel relating to the Kansas City Guidelines.  *See* Plaintiffs' Deposition Designations for Walter Baumy at 234:22-

235:5; 237:24-238:18; Plaintiffs' Deposition Designations for John Grieshaber (Vol. 1) at 42:2 –
43:3; 45:19 – 46:12; 47:15 - 48:17; 56:7 – 56:25; 58:19 – 62:22; Plaintiffs' Deposition
Designations for Stephen Roe at 153:23-159:2; 154:5-6; 154:8-13; 154:17-23; 155:2-8; 155:11-
12; 156:2-18; Plaintiffs' Deposition Designations of Richard Varuso at 158:16-159:18; 164:22-
165:4; 174:3-8; 175:14-177:3; 191:21-194:16.   But neither the Guidelines themselves nor the
testimony Plaintiffs attempted to elicit relating to them has any relevance to the issues in this
case.  On the contrary, admission of this irrelevant document and related testimony will not tend
to make the existence of any consequential fact any more or less probative; it will only serve to
waste this Court's valuable time.

Plaintiffs seek to introduce into evidence guidelines developed by USACE's
Kansas City District, which covers the northern half of Kansas, as well as parts of Missouri,
Iowa, Nebraska, and Colorado.[5]  The Guidelines purport to "provide general guidance regarding
engineering, operation, and maintenance aspects of construction within the critical area of flood
control projects."[6]  In particular, the Kansas City Guidelines define the "critical area" for work
performed on or near a federal flood control project as "the area from 300 feet riverward to 500
feet landward of a flood control project centerline."[7]  But this "general guidance" promulgated by
the Kansas City District simply does not apply to work performed in connection with Task Order
26, or indeed to any work performed in the New Orleans District.  Each USACE District has

---

[5] *See* Kansas City District Map, *available at* http://www.nwk.usace.army.mil/Portals/29/
siteimages/districtmaps/district-map.pdf (last accessed Aug. 8, 2012).

[6] PX-2712 at 3.

[7] PX-2712 at 3.

1101718v1

distinct and separate engineering authority, and the New Orleans District has never adopted the Kansas City Guidelines.[8]

Even if, contrary to these facts, the Kansas City Guidelines somehow did apply to the work at the EBIA, the description of 300-foot "buffer zone" was not included in the Kansas City Guidelines until 2006 – well after work on Task Order 26 had been completed.  The version of the Kansas City Guidelines promulgated in 1998 and in effect during the work on Task Order 26 did not provide any explicit definition of the "critical area."  In the absence of any such definition, engineering judgment would be required to determine where that area lies with respect to a flood control project, and it is beyond dispute that any such judgment would need to take into account local conditions – conditions that vary greatly between the Midwest and New Orleans.[9]  Accordingly, it should come as no surprise that each of the witnesses Plaintiffs attempted to question about the Kansas City Guidelines and the so-called "300-foot zone" indicated that they were not familiar with them, and that they had ever even heard of them prior to Plaintiffs' questions.[10]

The Kansas City Guidelines were developed for a different region of the country by an independent and distinct District of the USACE, and have never been adopted by the USACE's New Orleans District.  As an administrative matter, they do not apply to WGI's work

---

[8] Expert Report of David Sykora at 52 (attached hereto as Exhibit A); *accord* Grieshaber Dep. (Vol. 1) at 52:4-11 (noting that "[i]t may be that there are things that are unique in Kansas City that require them to have certain process and procedures in place that [do] not necessarily have to be in place in Little Rock District or some other districts.") (attached hereto as Exhibit B).

[9] *See* Exhibit A (Expert Report of David Sykora) at 52; Lucia Dep. at 326:11-16 (noting that "geotechnical engineering is local") (attached hereto as Exhibit C); *accord* Exhibit B (Grieshaber Dep. (Vol. 1)) at 52:4-11.

[10] *See, e.g.*, Exhibit B (Grieshaber Dep. (Vol. 1)) at 47:15-23; Varuso Dep. at 154:14-155:9 (attached hereto as Exhibit D).

at the EBIA, and as a practical matter, the language in the Guidelines on which Plaintiffs rely was inserted after work on Task Order 26 had been completed.  Indeed, this Court has already found that WGI had no duty to comply with the Kansas City Guidelines:  "As these requirements are not Corps requirements in New Orleans, there is no imposition on WGI to comply with them."  *In re Katrina Canal Breaches*, 2008 WL 5234369 at n.5 (E.D. La. 2008), *rev'd on other grounds* 620 F.3d 455 (5th Cir. 2010).  The Kansas City Guidelines are clearly irrelevant and should be excluded.

> **D.     Documents and Expert Reports Relating to Flooding and Flood-Control Projects in Areas Other Than New Orleans.**

The same principles also compel the exclusion of other exhibits on Plaintiffs' list because to the extent they relate at all to flooding or flood-control projects, it is in an area other than the EBIA – and more often than not, outside of New Orleans altogether.  For example, PX-4058 is a technical document created by the Vicksburg District of the USACE.  The other two documents are papers by Dr. Robert Bea that relate to or describe studies performed on Sherman Island in the California Delta,[11] and the failure of the flood protection structures at the 17th Street Canal during Hurricane Katrina.[12]  None of these exhibits has any relevance to the salient issues in this litigation.  Plaintiffs cannot seriously contend that the soils at the 17th Street Canal have any bearing on this litigation since their own experts did not deem it of sufficient interest to justify the cost of performing soils tests there.  None of these documents has any connection to the soils or flood control structures at the EBIA. They are therefore without any relevance to the issues in this case, and allowing their admission will only confuse the already complex issues at play in this litigation, and will needlessly prolong the duration of trial, wasting the resources of

---

[11] PX-0059, PX-0234, PX-3260, PX-3290, PX-3798.

[12] PX-4494.

the parties and Court.  Here, as well, Rules 401 and 403 require that these documents be excluded at trial.

### E.    Subcontractor Documents Unrelated to Excavations at the EBIA.

Plaintiffs also seek to admit thousands of pages of documents produced by third parties who at various points in time served as subcontractors to WGI in connection with Task Order 26. These documents, however, do not relate in any appreciable way to the salient issues in this litigation.  Instead, Plaintiffs seek to overwhelm this Court with <u>thousands</u> of pages of documents relating to:

- "Trash tickets" and related documents from two waste-disposal subcontractors (more than 12,000 pages);[13]

- Subcontractors' employee payroll and timesheets (1,600 pages);[14]

- Subcontractors' invoices, estimates, equipment rental agreements and purchase orders (more than 1,700 pages);[15]

- Subcontractor bids and other contract-related documents (250 pages);[16]

- The disposal of asbestos removed from the EBIA (more than 4,000 pages);[17] and

---

[13] PX-4063- PX-4064 ("Trash Tickets" produced by Stranco, Inc.); PX-4172 – PX-4188 ("Trash-Related Tickets" and other "Documents related to waste disposal" from Waste Management, Inc.).

[14] PX-1307–PX-1309 (Gill Industries); PX-3773–PX-3775 (Shavers-Whittle); PX-3867-PX-3869 (Stewart Construction)

[15] PX-0269-PX-0271, PX-0273-0283 (Coastal Environmental Services); PX-1312–PX-1313, PX-1333 (Gill Industries); PX-3870–PX-3896, PX-3898 – PX-3901 (Stewart Construction); PX-3783-PX-3784, PX-3786-PX-3793, PX-3795-PX-3796 (Shavers-Whittle).

[16] PX-2070-PX-2071 (Coastal Environmental Services); PX-1296 (Gill Industries); PX-2801 (Lewis Environmental); PX-3772 (Shavers-Whittle); PX-3858, PX-3860-PX-3865 (Stewart Construction).

[17] PX-1297–PX-1305, PX-1310-PX-1311, PX-1314–PX-1332 (Gill Industries)

- One document relating to the 1966 plans for the power plant at a sulfur mine in Jefferson Parish, Louisiana.[18]

None of this evidence makes it more or less likely that WGI backfilled the excavations in the EBIA in accordance with the applicable standard of care, or whether WGI's excavations or the alleged improper backfilling thereof was a cause in fact of the levee and floodwall failures at the EBIA during Hurricane Katrina.  All such documents are completely without probative value and are therefore inadmissible.  Fed. R. Evid. 401, 402.  Even if one assumes (wrongly) that these documents have some probative value, it is marginal at best and more than made up for in "confusion of the issues, . . . undue delay, [and] waste of time." Fed. R. Evid. 403.

### F.    Documents Relating to the Elevation of the 40 Arpent Levee.

PX-4539, PX-4563, PX-4565, PX-4567, PX-4571, PX-4580, and PX-4582, which are contracts, plans, and other documents relating to the construction and/or repair of the 40 Arpent Levee from Arabi to Violet, should also be excluded because they are irrelevant, and because their admission would waste the Court's time by focusing on an undisputed issue.  No portion of the 40 Arpent Levee has any relevance to the issues in this litigation.  Indeed, the only possible connection that any of these levees and floodwalls have to this matter is that the parties' hydrological models accounted for the elevations of these structures in order to accurately model the flooding of the Lower Ninth Ward and portions of St. Bernard Parish during Hurricane Katrina.  But there is no disagreement between the parties regarding the elevation of this reach – or any other portion of – the 40 Arpent Levee.[19]  These exhibits have no probative value for the

---

[18] PX-1306.

[19] The elevation of the 40 Arpent Levee from Paris Road to Violet in the numerical modeling simulation described in the March 21, 2012, expert report of WGI's hydrology expert,

issues in this case; their only purpose would be to create controversy where none exists.  Fed. R. Evid. 401, 403.

G.     **Documents Relating to Post-Katrina Work Performed by Third Parties at the EBIA.**

Defendants also ask that the Court bar the admission of documents relating to Cajun Constructors, Inc.'s work to construct temporary flood protection structures at the EBIA following Hurricane Katrina.[20]  Again, none of this evidence – documents created by a third party after WGI had demobilized from the EBIA and after the IHNC breaches had already occurred – makes it more or less likely that WGI did not carry out its duties under Task Order 26 in conformance with the applicable standard of care.  Under Fed. R. Evid. 402, these documents cannot be admitted into evidence.

H.     **Sewerage and Water Board Standard Drawings.**

Plaintiffs have marked as PX-3770 a book of "Standard Drawings" published by the Sewerage and Water Board of New Orleans.  These documents appear to be the S&WB's standard plans for manholes, catch basins, sewer pipe installations, water mains, and other structures administered by the S&WB.  These documents were never discussed in the Rule 30(b)(6) deposition of the S&WB's representative, and were not included on any of Plaintiffs'

---

(continued…)

Dr. Robert A. Dalrymple, was based on a survey of the levee conducted in November 2011. During Dr. Dalrymple's deposition in April 2012, it was demonstrated that at the time of Hurricane Katrina, the elevation of the levee was lower than that used in Dr. Dalrymple's report, and that the levee had been raised prior to the 2011 survey.  Dr. Dalrymple incorporated this new information, which accords with the elevations Plaintiffs' expert used, into his model and supplemented his report in accordance with Fed. R. Civ. P. 26(e)(2).  Moreover, at no point have the Plaintiffs raised any dispute about the elevation of the portion of the 40 Arpent Levee between Arabi and Paris Road (PX-4539).

[20] PX-0203-PX-0233.

1101718v1

prior exhibit lists.  Moreover, the document clearly states that it was revised in March 2011, nearly six years after WGI demobilized from the EBIA.  Clearly, the documents are completely without probative value and are therefore inadmissible.  Fed. R. Evid. 401, 402.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court strike the following exhibits from the Master Exhibit List: PX-0059, PX-0203, PX-0204, PX-0205, PX-0206, PX-0207, PX-0208, PX-0209, PX-0210, PX-0211, PX-0212, PX-0213, PX-0214, PX-0215, PX-0216, PX-0217, PX-0218, PX-0219, PX-0220, PX-0221, PX-0222, PX-0223, PX-0224, PX-0225, PX-0226, PX-0227, PX-0228, PX-0229, PX-0230, PX-0231, PX-0232, PX-0233, PX-0234, PX-0269, PX-0270, PX-0271, PX-0273, PX-0274, PX-0275, PX-0276, PX-0277, PX-0278, PX-0279, PX-0280, PX-0281, PX-0282, PX-0283, PX-0742, PX-0905, PX-0931, PX-0940, PX-0947, PX-1296, PX-1297, PX-1298, PX-1299, PX-1300, PX-1301, PX-1302, PX-1303, PX-1304, PX-1305, PX-1306, PX-1307, PX-1308, PX-1309, PX-1310, PX-1311, PX-1312, PX-1313, PX-1314, PX-1315, PX-1316, PX-1317, PX-1318, PX-1319, PX-1320, PX-1321, PX-1322, PX-1323, PX-1324, PX-1325, PX-1326, PX-1327, PX-1328, PX-1329, PX-1330, PX-1331, PX-1332, PX-1333, PX-2688, PX-2712, PX-2740, PX-2745, PX-2746, PX-2764, PX-2801, PX-2908, PX-2911, PX-2920, PX-2921, PX-2922, PX-2955, PX-2987, PX-3260, PX-3290, PX-3552, PX-3711, PX-3770, PX-3772, PX-3773, PX-3774, PX-3783, PX-3784, PX-3785, PX-3786, PX-3787, PX-3788, PX-3789, PX-3790, PX-3791, PX-3792, PX-3793, PX-3794, PX-3795, PX-3796, PX-3798, PX-3858, PX-3860, PX-3861, PX-3862, PX-3863, PX-3864, PX-3865, PX-3867, PX-3868, PX-3869, PX-3870, PX-3871, PX-3872, PX-3873, PX-3874, PX-3875, PX-3876, PX-3877, PX-3878, PX-3879, PX-3880, PX-3881, PX-3882, PX-3883, PX-3884, PX-3885, PX-3886, PX-3887, PX-3888, PX-3889, PX-

3890, PX-3891, PX-3892, PX-3893, PX-3894, PX-3895, PX-3896, PX-3897, PX-3898, PX-

3899, PX-3900, PX-3901, PX-4058, PX-4172, PX-4173, PX-4174, PX-4175, PX-4176, PX-

4177, PX-4178, PX-4179, PX-4180, PX-4181, PX-4182, PX-4183, PX-4184, PX-4185, PX-

4186, PX-4187, PX-4188, PX-4494, PX-4539, PX-4563, PX-4565, PX-4567, PX-4571, PX-

4580, PX-4582, PX-4603, and PX-4604.


Dated: August 10, 2012                                         Respectfully submitted,



                                                    /s/ William D. Treeby
                                                    William D. Treeby, 12901
                                                    James C. Gulotta, Jr., 6594
                                                    Heather S. Lonian, 29956
                                                           Of
                                                    STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                    546 Carondelet Street
                                                    New Orleans, Louisiana  70130
                                                    Telephone:  (504) 581-3200
                                                    Facsimile:   (504) 581-3361

                                                    and

                                                    Adrian Wager-Zito
                                                    Debra S. Clayman
                                                    Christopher R. Farrell
                                                    JONES DAY
                                                    51 Louisiana Avenue, N.W.
                                                    Washington, D.C. 20001-2113
                                                    Telephone:  (202) 879-3939
                                                    Facsimile:  (202) 626-1700

                                                    Attorneys for Washington Group
                                                    International, Inc.

                                                                              1101718v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Memorandum in Support

of WGI's Motion to Strike Certain Exhibits from the Master Exhibit List has been served upon

the Court via hand-delivery pursuant to the Court's July 26, 2012 Minute Entry (Doc. 20927)

this 10th day of August, 2012.  Notice of this filing will be sent by e-mail to all counsel of record

*/s/ Heather S. Lonian*
Heather S. Lonian

1101718v1