UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER:  05-4182 "K"(2) JUDGE Duval MAG. Wilkinson |
| PERTAINS TO:   MRGO *Armstrong*, No. 10-866 | |

**ARMSTRONG PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO EXCLUDE TESTIMONY AND EVIDENCE CONCENRING MEVLIN MCELWEE**

**I.      INTRODUCTION**

Defendants' motion is based upon the faulty premise that Melvin McElwee will somehow testify about excavations at the EBIA, even though there is no dispute that Mr. McElwee, and his company, McElwee Brothers, Inc., ever performed any work at the EBIA.  To the contrary, Plaintiffs will offer Mr. McElwee's testimony of his own personal experiences at the Dwyer Road project in order to lay a foundation for portions of opinions of Plaintiffs' experts, Dr. Bea and Dr. Rogers.  Dr. Bea is expected to testify about how McElwee Brothers' work at Dwyer Road informed his parametric analyses of other levee and floodwall failures in the Greater New Orleans area during Hurricane Katrina.[1]  Both Dr. Bea and Dr. Rogers will also use Mr. McElwee as an example of actions a reasonably prudent contractor working in IHNC region would take in order to ensure his work does not impact the adjacent flood protection structure.

---

[1] These analyses also included Dr. Bea's study of the failures at the 17th Street and London Avenue Canals, as well as Sherman Island levee failures in the California Delta.  *See* JX-1389, Bea Report (Feb. 2012) at p. 10, 16, ¶ 28(c); JX-1414, Bea Rebuttal Report (April 3, 2012) at pp. 27-38.

As a result, Mr. McElwee's testimony is not expert testimony, it is entirely relevant to Dr. Bea and Dr. Rogers' analyses in this case, and should not be excluded.

## II.   STATEMENT OF FACTS

Melvin McElwee was a Quality Assurance Representative for the Corps from 1988-1993.[2]   As a Quality Assurance Representative, Mr. McElwee's required class work included Soil Quality Verification, where the Corps instructed him—and other Quality Assurance Representatives—about seepage and groundwater control during earthwork and excavation activities.[3]   After leaving the Corps in 1993, Mr. McElwee formed McElwee Brothers, Inc., a civil construction firm.[4]

In 2001, the Corps hired McElwee Brothers to install improvements at the Dwyer Road Pumping Station intended to increase drainage capacity.[5]   The Dwyer Road Pumping Station is located in the IHNC, approximately 2.8 miles north of the EBIA.   As the contractor responsible for providing engineering services to the Dwyer Road Project, McElwee Brothers was aware of, and prepared to address, certain subsurface conditions that were expected at that location including underseepage, uplift, and hydraulic pressure associated with subsurface excavations adjacent to flood protection structures.[6]

The Dwyer Road excavation was approximately 26-30 feet deep.[7]   McElwee Brothers was required to supply a dewatering system for the excavation work adjacent to the floodwall.[8] The excavations encountered deposits of branches and tree trunks, and soil akin to "old coffee

---

[2] PX-0686 (McElwee Depo. Vol. I) at 14:20-17:25.
[3] PX-0686 (McElwee Depo. Vol. I) at 23:24-25:13; 26:6-40:19.
[4] PX-0686 (McElwee Depo. Vol. I) at 12:14-14:2; 97:5-11.
[5] PX-0151, Bea Tech. Report No. VI (July 2008) at p. 6; PX-0686 (McElwee Depo. Vol. I) at 113:23-117:8.
[6] PX-0686 (McElwee Depo. Vol. I) at 44:13-57:7; 64:16-66:15; 174:21-180:17.
[7] PX-0687 (McElwee Depo. Vol. II) at 378:12-25.
[8] PX-0686 (McElwee Depo. Vol. I) at 174:21-180:17.

ground material."[9]  Once this organic layer was reached, McElwee Brothers was forced to reevaluate its excavation procedure in order to make sure it did not destabilize the adjacent T-wall.[10]  The concern was that there were various piles within the excavation that extended into the organic sand deposits and it was unknown what type of response would occur when the piles were removed.[11]  Because the organic layer was hydraulically charged with the water from the adjacent IHNC, there was a risk that removing the piles would result in flooding the excavation and possibly the city.[12]  As the principal contractor, McElwee Brothers alerted the Corps' geotechnical department about the potential for significant damage to the floodwall.[13]  In an attempt to minimize this substantial risk, McElwee Brothers injected bentonite[14] into the voids created when certain piles were pulled.[15]  Due to the significant underseepage at this location, the bentonite injection simply flowed into one hole and was ejected two to three holes down.[16]  In order to abate the underseepage at this location, the Corps ultimately had to design a new floodwall system.[17]

## III.   ARGUMENT

### A.   Mr. McElwee's Testimony Is Relevant To The Analyses Of Plaintiffs' Experts

Mr. McElwee's testimony concerning his first-hand experiences at the Dwyer Road project directly informed portions of Dr. Bea and Dr. Rogers' expert analyses.  The cases cited by Defendants center around the unremarkable proposition that lay opinion testimony can only be elicited if it is based on the witness's first-hand knowledge.  (Mtn. at 8-10.)  This is precisely

---

[9] PX-0686 (McElwee Depo. Vol. I) at 194:5-194:19.
[10] PX-0686 (McElwee Depo. Vol. I) at 190:21-25; 193:4-194:19.
[11] PX-0686 (McElwee Depo. Vol. I) at 198:19-199:17.
[12] PX-0686 (McElwee Depo. Vol. I) at 198:19-202:13.
[13] PX-0686 (McElwee Depo. Vol. I) at 199:18-203:22.
[14] Bentonite is a man-made type clay used to prevent underseepage.  *See* JX-1712 (Varuso Depo.) at 188:2-189:13.
[15] PX-0686 (McElwee Depo. Vol. I) at 201:2-206:8.
[16] PX-0686 (McElwee Depo. Vol. I) at 206:10-208:19.
[17] PX-0686 (McElwee Depo. Vol. I) at 210:2-215:1.

what Plaintiffs intend to solicit from Mr. McElwee:  his first-hand knowledge of the hydraulic uplift and seepage issues McElwee Brothers encountered at Dwyer Road, and the steps they took as the contractor in charge to mitigate these risks, and make certain their work did not harm the floodwall.

Moreover, Plaintiffs are not attempting to circumvent Rule 26(a) or the Court's scheduling order concerning expert testimony because Mr. McElwee's testimony is about his particularized knowledge acquired during his company's work at Dwyer Road.  As the Fifth Circuit has recognized, the amendment to Rule 701 "did not place any restrictions on the preamendment practice of allowing *business owners*…to testify based on *particularized knowledge* derived from their position."  *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685-86 (5th Cir. 2003) (emphasis in original) (citing *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.,* 320 F.3d 1213, 1222-23 (11th Cir. 2003) (permissible lay testimony of business practices based upon "their particularized knowledge garnered from years of experience within the field."))

Mr. McElwee's particularized knowledge is also directly relevant to this case because Dr. Bea specifically relied on information supplied by Mr. McElwee concerning his personal experiences at Dwyer Road in analyzing the failure modes at the EBIA and other locations adjacent to St. Bernard Parish.  In particular,

> Demonstration that underseepage occurred at [St. Bernard Parish/Lower 9th Ward] can be based on arguments of analogous conditions and levee performance at this site, and at the London Avenue drainage canal breach sites, as well as at the site immediately to the north [New Orleans East].  It can also be based on the observed difficulties encountered by McElwee Construction in dewatering an excavation *near the breach site immediately to the north (due to massive underseepage flow through the marsh deposits that were not adequately cut off at that site either.*).[18]

---

[18] PX-1200, ILIT Report, Chp. 6 at 6-15 (emphasis added).

Dr. Bea also detailed his analysis of Mr. McElwee's work at Dwyer Road in various Technical Reports in order to illustrate how "[t]his drainage improvements project provided important information concerning seepage and soil heaving associated with excavations into the same geologic sequence as present at the Lower 9th Ward."[19]   This analysis was further emphasized in Dr. Bea's February 2012 expert report in which he again cited Mr. McElwee's work.   Dr. Bea describes the Dwyer Road location as "similar" to the EBIA location and discusses how both locations experienced seepage and water intrusion at excavations between -15 to -30 feet, which "clearly indicate[s] the pervasive nature of this problem."[20]

### i.   Defendants' EBIA Work Also Included Studying Surrounding Areas

Defendants' argument that the study of areas outside the immediate vicinity of the EBIA is irrelevant is belied by their own conduct.   The Corps and WGI engaged in the exact same analytical process as Dr. Bea by reviewing other areas within the near vicinity of the subject location, and drawing inferences about the subject location based on certain similarities.

For example, in 1997, the Corps authored the New Lock and Connecting Channels Evaluation Report that detailed, among other things, the Corps' decision-making process for locating and constructing a new replacement lock in the IHNC to facilitate and accommodate increased barge traffic.[21]   One of the more important aspects of the Corps' investigation was the soil geology that would be encountered when installing the new lock.   Volume 3 of this report included the engineering evaluations for the project.   Generally, soil conditions *in the vicinity of the EBIA* were identified as "natural levee deposits underlain by marsh and intradelta deposits

---

[19] JX-1376, Bea Tech. Report No. III, "Analyses of the Effects of the IHNC Lock Expansion Project East Bank Industrial Area Site Clearing Excavations on Development of the Breaches at the Lower 9th Ward During Hurricane Katrina" (July 2008) at pp. 34-37; *see also* PX-0151, Bea Tech. Rep. No. VI, "Case Study of the SELA Dwyer Road Drainage Pumping Station Improvements, Discharge Tubes and Canal," D. Rosenberg (July 2008) at p. 1.
[20] JX-1389, Bea Report (Feb. 2012) at p. 48, ¶ 50.
[21] JX-0022, New Lock & Connecting Channels Vol. 1 (March 1997) at MVD 150-155.

[consisting] of very soft to medium clays and some silt lenses."[22]   The soils were also classified as being level, poorly drained, somewhat poorly drained, having a clayey or loamy surface layer, a clayey subsoil, or being loamy throughout.[23]   Not surprisingly, Dr. Bea described the EBIA soils in the same manner.[24]

Volume 5 of the report, entitled Assessment of Potential Hazardous, Toxic, and Radiological Wastes provided additional geotechnical guidance to both the Corps *and* WGI as Appendix C, Part II was specifically provided to WGI in conjunction with the Corps' presentation of the initial Statement of Work on June 1, 1999.[25]   In this section, substantial concern was given to subsurface migration of contaminations below the EBIA floodwall. Conceding that "hydraulic conductivities of the soils underlying the IHNC were not examined in detail," the Corps engineers "evaluated a recent *investigation of similar soils underlying a nearby site*, the CSXT Gentilly Yard site" to determine the rate of migration through different classifications of soils.[26]   The Gentilly Yard is only about one mile south of the Dwyer Road project, and approximately two miles from the Lower Ninth Ward pump station.[27]

Accordingly, the analysis of regions beyond the EBIA is entirely appropriate and Mr. McElwee's testimony about Dwyer Road should be allowed.

---

[22] JX-0025, New Lock & Connecting Channels Vol. 3 (March 1997) at p. B-130, § B.3.14.a; NED-143-000001481.

[23] JX-0025, New Lock & Connecting Channels Vol. 3 (March 1997) at p. B-139, § B.3.346; NED-143-000001490.

[24] *See, e.g.*, JX-1389, Bea Report (Feb. 2012) at p. 45, ¶ 47; p. 60, Table 1; JX-1414, Bea Rebuttal Report (April 3, 2012) at p. 71, ¶ 106, pp. 101-103.

[25] PX-3836, Statement of Work (June 1, 1999), at p. 2 (WGI000006).

[26] JX-0027, New Lock & Connecting Channels Vol. 5 (March 1997) at p. 32, § 10.1.2; NPM-006-000001732 (emphasis added).

[27] The Gentilly Rail Yard is located at 6701 Almonaster Road, north of and across the GIWW from the EBIA, just near the down slope of the I-10 high rise headed east.  The Lower 9th Ward pump station, located at 4801 Florida Avenue, is approximately two miles south of the Gentilly Rail Yard.

### ii. Mr. McElwee's Testimony Provides Foundation for Plaintiffs' Experts' Opinions on the Applicable Standard of Care

One of the issues to be determined at trial is whether the Corps and WGI followed the proper standard of care when they undisputedly failed to perform any geotechnical analysis of their excavations at Boland and Saucer Marine. Both Dr. Bea and Dr. Rogers address the standard of care Defendants were required to follow to make certain their work did not jeopardize adjacent flood protection. To make certain the McElwee Brothers' work did not jeopardize the floodwall, Mr. McElwee alerted the Corps' geotechnical branch once they discovered the risk that their excavations could release underseepage and uplift pressures from the nearby IHNC.[28] The reason Mr. McElwee requested this was because he was the contractor in charge of the excavation work and he feared that when these piles were pulled out of the hydraulically charged soils, it could create an unstoppable leak that could damage the floodwall and the city it protected.[29]

As Dr. Bea and Dr. Rogers will opine, Mr. McElwee's actions—altering the Corps of the potential seepage problem and taking affirmative steps to prevent it—are the types of actions a reasonably prudent contractor undertakes when he engages in significant excavations next to flood protection structures.[30]

## IV.   CONCLUSION

Because Mr. McElwee's testimony is based upon first-hand knowledge of his experiences at the Dwyer Road project, and because this testimony provides a foundation for portions Plaintiffs' experts' opinions on issues that are directly relevant to this litigation, Defendants' motion to exclude should be denied.

---

[28] PX-0686 (McElwee Depo. Vol. I) at 199:18-203:22.
[29] PX-0686 (McElwee Depo. Vol. I) at 198:19-202:13.
[30] *See, e.g.*, JX-1389, Bea Report (Feb. 2012) at pp .120-125; JX-1414, Bea Rebuttal Report (April 3, 2012) at pp. 38-53; JX-1580, Rogers Report (Jan. 2012) at pp. 228-237.

Dated:  August 17, 2012

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*/s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

**MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**
Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 17th day of August, 2012.

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO