UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | NO. 05-4182 |
| | * | SECTION "K"(2) |
| | * | |
| | * | Judge Duval |
| PERTAINS TO: MRGO | * | Mag. Wilkinson |
| *Armstrong, No. 10-866* | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CERTAIN EXHIBITS FROM THE MASTER EXHIBIT LIST**</u>

**MAY IT PLEASE THE COURT:**

Plaintiffs submit this opposition to Defendants' Motion to Strike Certain Exhibits from the Master Exhibit List. For the reasons set out below, Defendants' motion should be denied in its entirety.[1]

**I.     BACKGROUND**

Defendants move to strike a large number of exhibits on the Master Exhibit list for purported lack of relevance, prejudice and hearsay. Defendants' motion should be denied in its entirely. Most fundamentally, this Court should resist yet another of Defendants' attempts to control Plaintiffs' case – this time by requesting from the Court what amounts to a blanket

---

[1] The Motion to Strike was filed by defendant Washington Group International, Inc. ("WGI"). Defendant U.S. Army Corps of Engineers, "[b]y separate motion, . . . joins WGI's Motion in its entirety." (Defs.' Mem. at 2 n.3.)

1

pretrial advisory ruling on the relevance of a large number of Plaintiffs' exhibits. Substantively, Defendants' motion also is without basis. First, the exhibits Defendants seek to strike are relevant because they are probative of and important to prove Plaintiffs' case. Second, the exhibits neither are prejudicial to Defendants for the purposes for which they will be used nor will they waste the Court's time. Third, the exhibits are not hearsay to the extent they are not introduced for the truth of the matter asserted.

## II.  LAW AND ANALYSIS

### A. Documents Pertaining to Improper Handling of Contaminated Materials at the EBIA Are Relevant, Are Not Unduly Prejudicial, And Are Not Hearsay.

Defendants seek to exclude all exhibits relating to two former employees of two WGI subcontractors, Daniel Turlington and Jim Blazek. Defendants claim that those documents are irrelevant and prejudicial because they describe Defendants' improper handling of contaminated soil and response to an oil spill during remediation work in the EBIA.[2] Defendants are mistaken for several reasons.

Most fundamentally, the documents are highly relevant for a variety of reasons. First, they give further credence to Plaintiffs' assertion that WGI both failed to perform a proper engineering analysis of the EBIA project prior to commencing its work, and failed in its obligation as the Corps' architect-engineer-contractor to properly recommend the appropriate scope of work.

---

[2] The exhibits referenced in the motion are: PX-0940, PX0947, PX-2688, PX-2911, PX-2920, PX-2921, PX-2922, PX-0905, PX-0931, PX-2740, PX-2745, PX-2746, PX-2908, and PX-2987.

2

WGI has already admitted that it was unfamiliar with the soil characteristics of the region, and of the EBIA in particular, but that its specialized subcontractor, MMG, would provide adequate assistance in overcoming this lack of knowledge. WGI then assigned Dennis O'Conner to review the documentation provided by the Corps and to develop its Recommendation Report. Plaintiffs will prove at trial that Mr. O'Conner was incompetent to adequately assess the engineering needs of a project that would include substantial excavations near a flood control project. WGI's other ranking on-site person, construction manager Phillip Staggs, has already testified that he (and WGI) were clueless as to the engineering needs of a project performed next to a flood project. The contemporaneous presentation of the documents WGI seeks to exclude will prove that, as the project progressed, and the extent and depths of excavations within the "critical area" of the flood wall increased many fold, WGI, and thus the Corps, exhibited contumacious disregard for the structural integrity of the floodwall.

From the beginning of the project, WGI touted the assistance of MMG for its expertise in local/regional environmental construction. The Corps' scope of work, WGI's recommendation report, and WGI's financial proposals required that MMG would support the work with a project engineer. Further, MMG would be involved in the permitting process. MMG was such an integral part of the project at the outset, that its president and Jim Blazek were assigned the responsibility of meeting with the Lower Ninth Ward's City Council representative member to explain that extensive engineering controls would be in place to ensure the health and safety of the neighborhood. Interestingly, it appears that no Corps representatives were present.

3

By April 23, 2001, Jim Blazek was requesting a meeting to address problems between MMG and WGI, including interference with its work by WGI personnel, the inability of WGI to supply proper equipment, the bad attitude of WGI toward MMG, MMG not getting paid, and WGI's practice of only correcting errors in WGI's favor.

By September 5, 2001, Blazek's concern about WGI's shoddy work habits and disregard for environmental issues motivated him to leave the work site and return to MMG's home office to continue his work. The documentation following this event provides insight into the dysfunctional nature of the relationship between the Corps and WGI, even before the substantial work of excavating in the "critical area" of the floodwall commenced. The probative nature of the documentation will be illustrated during the cross examination of Mr. Staggs and WGI's standard of care expert, Dr. Sykora.

Likewise, the context of the interaction will have greater clarity as the timeline of WGI's work is presented to the Court at trial. Mr. Staggs reported a petroleum spill at Mayer Yacht, which was released into the canal. This was reported to the Corps on site representative, James Montegut, who deferred reporting this spill to Mr. O'Conner. Mr. O'Connor did not want to report to regulatory agencies, and evicted Mr. Blazek from the site. In less than two months, Mr. Blazek had been released and Daniel Turlington was brought in to replace him. Lesson learned from this: do not cross WGI. Thereafter, the documentation will prove that WGI did all it could to have MMG removed from the project completely.

By the time the remediation excavation efforts were in full effect, Mr. Turlington had been on site for some time and was familiar with WGI's practices. When he was no longer on

4

the project, he wrote an informal email to a colleague about the inner workings of WGI's on-site practices. WGI clearly felt that a response was in order, and in conjunction with inner office revisions of the allegations to enhance the plausibility of its denial, it was recommended that the project's technical oversight be enhanced and that greater supervision of its subcontractors be enacted. Of particular interest in WGI's denial is that it distances itself from the Project Work Plan, indicating that it was "prepared by a third party," and presented analytical data from the site's initial characterization. Thus, it could be properly concluded that "hazardous wastes were restricted to either the above ground inventory of materials or were restricted to a relatively small subsurface portion" of the EBIA.

Most disturbingly, WGI admits that the analysis of the scope of excavations would be performed within the RECAP documents. Testimony to be presented at trial will reveal that no engineering analysis was done in preparation of the RECAP documents. Worse still, in the RECAP documents, WGI assured the Corps that underseepage at the EBIA would not be a concern as the sheet pile tip depth was at -25 feet. Evidence proves that this "assurance" was flat out wrong as the sheet pile was only at -10 feet. This evidence directly rebuts the testimony of WGI's standard of care expert, Dr. Sykora.

Likewise, WGI indicated in its response to the Turlington email that it advocated to have its own environmental manager in on the project. Recall that MMG was highly touted at the outset of the project. These events took place contemporaneously with a slow down at the project site, at a time when Mr. O'Conner was indicating in a September 22, 2003 email to Mr. Staggs that field activity plans and log books that would contain plot plans for recordable

5

excavation depths and dimensions were to be improved as they had "not been adequately attended to" following Mr. O'Conner's transfer to Denver.

Here again, we see Mr. O'Conner blame MMG, its environmental manager for the deficiencies in properly recording excavation depths and dimensions. As Mr. O'Conner succinctly stated in one of his emails, such information would be important for Mr. Staggs to refer to when asked by the Corps, "what are y'all doing out there?"

Against this background, there is no doubt that the documents Defendants seek to exclude are highly relevant. These materials are clear examples of contemporaneous events that will refute the revisionist history that Defendants' experts and project personnel will attempt to present to the court at trial.

Apart from its substance, Plaintiffs' argument for excluding the materials is flawed for additional reasons. For example, to the extent the documents will not be introduced for the truth of the matter asserted, the hearsay rule Defendants invoke is inapplicable. As this Court is well aware, "[h]earsay under Federal Rule of Evidence 801(c) is defined as 'a statement . . . offered in evidence *to prove the truth of the matter asserted.*' A statement is not hearsay if offered for another reason, for example, to prove that certain statements were made." *Rivers v. MEBA/Nat'l Mar. Union of Am., AFL-CIO*, No. A. 89-4603, 1990 WL 109294, at *1 (E.D. La. July 23, 1990) (emphasis added) (citing *United States v. Moore*, 748 F.2d 246, 248 (5th Cir. 1984)); *see also, e.g., United States v. Watkins*, 591 F.3d 780, 787 (5th Cir. 2009) ("[W]hen evidence is offered for some purpose other than the truth of the matter asserted therein, it is not hearsay.").

Likewise, Defendants' assertion that the introduction of these documents is unduly prejudicial is equally erroneous and ignores long-established Fifth Circuit law. The Fifth Circuit has consistently held that "Rule 403's weighing of probative value against prejudice . . . has no logical application to bench trials" and that "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure" in bench trials. *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981); *see also, e.g., Savarese v. Pearl River Nav., Inc.*, No. CIV.A. 09-129, 2010 WL 3070376, at *1 (E.D. La. Aug. 2, 2010) (Vance, C.J.) ("In the context of a bench trial, excluding relevant evidence under Rule 403 on the basis of unfair prejudice is a useless procedure." (quotation omitted)). This Court has held the same considerations apply under Rule 404. *See, e.g., Cowen v. Allstate Ins. Co.*, No. CIV.A. 11-118, 2012 WL 10591, at *3 (E.D. La. Jan. 3, 2012) (Vance, C.J.) (holding that, under Rule 404(b)'s balancing test, "any danger of unfair prejudice is negated by the fact that this is a bench trial"). Against this background, Defendants' assertion that the documents are unduly prejudicial under Rule 403 or "akin to . . . the introduction of evidence of a defendant's alleged prior bad acts in violation of Rule 404" (Defs.' Mem. at 5), is baseless.

### B. Testimony of Reed Mosher in *Robinson* Is Admissible.

Plaintiffs incorporate the arguments set forth in their Opposition to the Corps' Motion to Strike Dr. Reed M. Osher's *Robinson* Testimony from the Master Exhibit List.

### C. The "Kansas City Guidelines" Are Relevant And Admissible.

Defendants also wish to exclude the Kansas City Guidelines, including any testimony about the guidelines, as "irrelevant" and "wast[ful]." (Defs' Mem. at 7.) Defendants' request is

7

baseless for several reasons. For one, Defendants mischaracterize Plaintiffs' intended use of the Kansas City Guidelines. Contrary to Defendants' erroneous assertion, Plaintiffs never intended to introduce the Kansas City Guidelines as specific *requirements* applicable, without more, to the Corps' New Orleans office.[3] Instead, the Kansas City Guidelines are one source that establishes the duties of reasonably prudent contractors in the shoes of WGI and the Corps. Indeed, highly indicative of the fact that the Kansas City Guidelines memorialize the applicable industry standard of care here, the guidelines – just like several of Defendants deposition witnesses – state that a geotechnical engineering evaluation is necessary for excavation work within a 300-foot zone of a levee. (*See* PX-2712 at 3 (requiring that "the Corps of Engineers provide[] engineering review to ensure that any work within or near the flood control unit does not reduce the level of protection and to assure continued integrity of the flood control system" and defining "the critical area" as "the area from 300 feet riverward to 500 feet landward of a flood control project centerline").)

While Defendants try to downplay their own employees' statements by grossly mischaracterizing their deposition testimony, asserting "that they were not familiar with" "the so-called '300-foot zone'" (Defs's Mem. at 8), several of those witnesses unequivocally testified – consistent with the Kansas City Guidelines requirements – that any excavation work within the

---

[3] Plaintiffs are mindful of the Courts' pronouncement in *Robinson*, that "specific regulations employed in Kansas City by the Corps" "are not Corps requirements in New Orleans. . . ." *In re Katrina Canal Breaches Consol. Litig.*, No. CIV A 05-4182, 2008 WL 5234369, at *9 n.5 (E.D. La. Dec. 15, 2008).

8

300-foot zone of a levee required a geotechnical evaluation.[4]  Against this background, Defendants' assertion that "[t]he Kansas City Guidelines are clearly irrelevant" (Defs.' Mem. at 9), rings hollow.  Defendants' request has no merit and should be denied.

### D. Documents and Expert Reports Relating to Flooding and Flood-Control Projects in Areas Other Than New Orleans Are Relevant and Are a Crucial Foundation of Plaintiffs' Expert Testimony.

Defendants next attack the relevance of any documents pertaining to "area[s] other than the EBIA." (Defs. Mem. at 9.)  While Defendants' request for a blanket pretrial advisory ruling determining that all documents that do not directly pertain to the EBIA are irrelevant should be grounds enough to reject Defendants' request out of hand, Defendants' substantive arguments for exclusion of those documents are even more specious.  For example, Defendants describe PX-4058 as "a technical document created by the Vicksburg District of the USACE" and claim it has no "relevance to the salient issues in this litigation." (*Id.*)  But Defendants omit that the "technical document" addresses the use of "I walls" that the "New Orleans District (NOD) uses . . . to provide: (a) flood protection . . . and (b) hurricane protection. . . ." (PX-4058 at 13.)  Moreover, the very first page of the "September 1989 Final Report" identifies the "US Army Engineer District, New Orleans" as sponsoring organization. (*Id.* at 1.)  By any measure, PX-4058 meets the test of Rules 401 and 403.

---

[4] JX 1670 (Baumy 30(b)(6) Depo.) at 237:24-239:13; JX 1663 (Colletti Depo.) at 32:21-35:9; 40:17-43:9; 103:12-105:1; JX 1668 (Pinner Depo.) at 30:19-31:10; 35:2-23; 36:24-39:2; 39:14-41:13; 41:20-43:11; 47:7-48:4; 50:1-14; 62:12-63:2; 66:16-24; 67:20-69:1; *see also* JX 1580, Rogers Report (Jan. 2012) at pp. 228-237; JX 1389, Bea Report (Feb. 2012) at pp. 120-125; JX 1414, Bea Rebuttal Report (April 2012) at pp. 39-40.

9

Defendants also challenge the relevance of documents underlying Dr. Bea's expert reports because they supposedly do not have "any connection to the soils or flood control structures at the EBIA." (Defs.' Mem. at 9.) These materials form a crucial part of Dr. Bea's expert opinions and he will provide the necessary foundation in his testimony at trial, to the extent the Court requires it.

Moreover, this Court, in rejecting Defendants' *Daubert* motions preliminarily ruled that Dr. Bea's materials and opinions are relevant. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) ("The Federal Rules of Evidence . . . assigned to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). To challenge the relevance and foundation of documents underlying Dr. Bea's expert opinions again at this stage amounts to yet another "late-filed 'Daubert' motion . . . [that] appears to be an unnecessary expenditure of time, effort and expense, in the context of a non-jury, judge-tried case such as this one." *St. Joseph Abbey v. Castille*, No. 10-2717, 2011 WL 2182046, at *1 (E.D. La. June 3, 2011) (Duval, J.). Defendants' attempt to limit Dr. Bea's testimony and materials on which he may rely through the backdoor should be rejected.

### E. Subcontractor Documents Supposedly Unrelated to Excavations at the EBIA Are Relevant and Admissible.

Defendants also seek to exclude various documents pertaining to work performed by WGI sub-contractors because they supposedly are not directly related to WGI's excavation work in the EBIA. (Defs.' Mem. at 11.) But all of these documents are directly relevant to removal of soil and other materials from the EBIA excavation areas and are hence inextricably intertwined

with WGI's work in the EBIA. The materials are probative for the depths of excavations and volume of materials removed from the EBIA. Plaintiffs' dispute the veracity of defense experts' conclusions relative to the depths of excavations, and the volume of materials removed will provide support to cross examine Defendants' experts.

Further, both the Corps' Jim Montegut and WGI's Dennis O'Conner have testified that strict supervision of the comings and goings at the EBIA was maintained, and that accurate documentation of these events was maintained in the quality assurance/quality control documents. Plaintiffs' examination of separate documents such as the ones WGI now seeks to exclude reveal flaws in the WGI/Corps record keeping and contradicts the statements from Messrs. Montegut and O'Conner.

In any event, even if Defendants' request turns out to have merit, it is premature. As the Court is aware, the parties have agreed on a specific procedure to exclude evidence from the record to the extent it is not used during the trial. The documents pertaining to work performed by WGI sub-contractors are no exception. Thus, if any of the materials Defendants challenge remain unused, they may follow that procedure to attempt to exclude them from the record.

Defendants' request for yet another blanket pre-trial ruling on the relevance of all documents they do not believe tie into Plaintiffs' case is not only premature but also without merit.

**F. Documents Relating to the Elevation of the 40 Arpent Levee Are Relevant.**

Defendants further seek the exclusion of materials pertaining to the 40 Arpent Levee as "irrelevant" and a "waste [of] the Court's time." (Defs. Mem. at 11.) Those materials, of course,

11

are directly relevant to this dispute. Indeed, Defendants concede – in the same sentence in which they are contesting the materials' relevance – that "the parties' hydrological models accounted for the elevations of these structures in order to accurately model the flooding of the Lower Ninth Ward and portions of St. Bernard Parish during Hurricane Katrina." (*Id.*)

The documents pertaining to the 40 Arpent Levee are also relevant because they show that WGI's expert, Dr. Dalrymple, used inaccurate levee heights of 8 to 10 feet in his initial ADCIRC numerical modeling of 40 Arpent Levee based on a post-Katrina levee survey of the post-storm reconstructed levee.[5] Indeed, Dr. Dalrymple's errors occurred because he had not studied the very documents WGI now seeks to exclude. Dr. Dalrymple did not find out that he had relied upon the wrong heights of the post-storm reconstructed levee until his deposition by Plaintiffs' counsel. Plaintiffs of course will require the materials Defendants seek to exclude to adequately test Dr. Dalrymples' theories and models at trial, and any exclusion would be prejudicial to the presentment of their case.

Conceding Dr. Dalrymple's mistake, Defendants assert that the documents nonetheless should be excluded because there no longer "is [a] disagreement between the parties regarding the elevation of this reach – or any other portion of – the 40 Arpent Levee." (*Id.*) Although an undisputed fact does not make an exhibit irrelevant, Defendants also err in claiming there is no longer a dispute over the levee heights.

---

[5] Dr. Dalrymple's inaccurate modeling and its correction in an untimely supplemental report is currently the subject of a motion *in limine* by Plaintiffs.

12

In sum, Defendants' contention that "[t]hese exhibits have no probative value for the issues in this case" (*id.* at 11-12), is belied by their own admission that the documents are crucial components of the parties' flood models and continue to be at the center of a dispute over the proper height of portions of the 40 Arpent Levee.

### G. Documents Relating to Post-Katrina Work Performed by Third Parties at the EBIA Are Relevant and Admissible.

In yet another attempt to limit Plaintiffs' expert testimony, Defendants also challenge the admissibility of documents relating to post-storm construction work at the EBIA. (Defs.' Mem. at 12.) Defendants' request is without basis. The Court is well aware of the substantial efforts undertaken to repair and replace the floodwall at the EBIA after Katrina. Plaintiffs' expert, Dr. Rogers, is aware of this work as well. In considering the scope of the joint soils testing program undertaken by the parties for this litigation, Dr. Rogers believed that the extensive work and changing loads upon the EBIA soils would preclude an accurate analysis of soils characteristics as they appeared at the time of the storm. As a result, the records that WGI now seeks to exclude both substantiate Dr. Rogers' selections of testing locations, and substantiate his position that Defendants' exploration locations have little validity. Clearly, these materials are admissible under Rule 402.

### H. The Sewerage and Water Board Standard Drawings Are Relevant and Admissible.

Defendants have maintained that flooding of Plaintiffs' homes was a result of rainfall during hurricane Katrina, yet they seek to exclude documents that will aid Plaintiffs in overcoming Defendants' erroneous claim. (Defs.' Mem. at 12-13.) Plaintiffs already have

13

conclusively established that hurricane Katrina was not a heavy rain event in the New Orleans metropolitan region, and that both the Orleans and St. Bernard Parish pumping capacities were fully capable of and were in fact effectively pumping out the street water until the levees failed. The records WGI now seeks to exclude are part and parcel of the evaluation substantiating the Orleans and St. Bernard pumping agencies' testimony that, had the levees not failed, there would have been no flooding sufficient to damage Plaintiffs' homes. The documents, hence, are highly relevant to Plaintiffs' case.

### III. CONCLUSION

All documents Defendants seek to exclude from evidence are relevant to Plaintiffs' case, are admissible, and will neither prejudice Defendants nor waste the Court's time. For these reasons, Defendants' Motion to Strike should be denied in its entirety.

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

**MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**

Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 17th day of August, 2012.

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO

15