## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES    CIVIL ACTION
CONSOLIDATED LITIGATION
                NO. 05-4182
                "K" (2)
PERTAINS TO:  MRGO          JUDGE DUVAL
FILED IN:  05-4181, 05-4182,   MAG. WILKINSON
05-5237, 05-6073, 05-6314,
05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885,
06-2152, 06-2278, 06-2287,
06-2824, 06-4024, 06-4065,
06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155,
06-5159, 06-5161, 06-5162,
06-5260, 06-5771, 06-5786,
06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285

DEPOSITION OF
ROBERT ANTHONY DALRYMPLE, III,
1902-A Indian Head Road, Towson, Maryland,
21204, taken in the offices of Bruno & Bruno,
855 Baronne Street, New Orleans, Louisiana
70113, on Wednesday, April 18, 2012.

## Page 2

1
   APPEARANCES:
2
3    LAW OFFICES OF JOSEPH M. BRUNO
        (BY:  JOSEPH BRUNO, ESQ.
             SCOTT JOANEN, ESQ.)
4    855 Baronne Street
     New Orleans, Louisiana 70113
5        PLAINTIFFS LIAISON COUNSEL
6
7    STONE PIGMAN WALTHER WITTMANN
        (BY:  WILLIAM D. TREEBY, ESQ.
8    546 Carondelet Street
     New Orleans, Louisiana  70130-3588
9        AND
     JONES DAY
10      (BY:  CHRISTOPHER FARRELL, ESQ.
            ADRIAN WAGER-ZITO, ESQ.)
11   51 Louisiana Avenue N.W.
     Washington, D.C. 20001-2113
12       ATTORNEYS FOR WASHINGTON GROUP
             INTERNATIONAL, INC.
13
14   UNITED STATES DEPARTMENT OF JUSTICE
        (BY:  JACK WOODCOCK, ESQ.)
15   Torts Branch, Civil Division
     Post Office Box 888
16   Ben Franklin Station
     Washington, D.C. 20044
17       ATTORNEY FOR UNITED STATES OF
             AMERICA
18
19   ALSO PRESENT:
         STEVE FITZGERALD
20
21
     REPORTED BY:  ROGER D. JOHNS, RMR, CRR, CSR
22       Certified Court Reporter,
            State of Louisiana
23
24
25

## Page 3

1        S T I P U L A T I O N
2
3        It is stipulated and agreed by and between
4    counsel for the parties hereto
5    that the deposition of the aforementioned
6    witness is hereby being taken under the
7    Federal Rules of Civil Procedure, for all
8    purposes, in accordance with law;
9        That the formalities of reading and
10   signing are specifically not waived;
11       That the formalities of certification and
12   filing are specifically waived;
13       That all objections, save those as to the
14   form of the question and the responsiveness of
15   the answer, are hereby reserved until such
16   time as this deposition, or any part thereof,
17   may be used or sought to be used in evidence.
18
19            * * * *
20
21       ROGER D. JOHNS, RDR, CRR, Certified Court
22   Reporter for the State of Louisiana,
23   officiated in administering the oath to the
24   witness.
25

## Page 4

1              I N D E X
2                         PAGE
   Dalrymple Number 1......................... 17
3  Dalrymple Number 2......................... 18
   Dalrymple 3................................ 19
4  Dalrymple Number 4......................... 20
   Dalrymple 5................................ 26
5  Dalrymple Number 5......................... 30
   Dalrymple 6................................ 50
6  Dalrymple 7................................ 80
   Dalrymple 8................................ 145
7  Dalrymple Number 9......................... 152
   Dalrymple 9-A.............................. 152
8  Dalrymple 9-B.............................. 152
   Dalrymple Number 10........................ 157
9  Exhibit Number 11.......................... 159
   Exhibit Dalrymple 12....................... 165
10 Dalrymple 13............................... 166
   14......................................... 175
11 page 86.................................... 190
   15......................................... 196
12
13
14
   EXAMINATION BY MR. BRUNO:.................. 5
15 EXAMINATION BY MR. FARRELL:............... 207
   EXAMINATION BY MR. BRUNO:................. 208
16
17
18
19
20
21
22
23
24
25

**ROBERT DALRYMPLE**                                         **April 18, 1980**

Page 37

1  since we don't know as you and I are sitting
2  here today whether or not this document at
3  page 2 of Dalrymple 4 is describing the
4  earthen levee or not, I am going to ask you to
5  assume just for the sake -- just for the
6  purposes of these questions that the profile
7  along the center line of the existing levee
8  LIDAR survey dated 29 September '05 is in fact
9  the crown of the levee. Okay? Just assume
10  that.
11      A.  You want me to assume that. Yes.
12      Q.  Yes. Assume that. I am not asking
13  you to agree with me.
14      A.  Okay.
15      Q.  I am just -- Because we don't know
16  either way. If we ultimately find out that
17  there's no sheet pile wall, then obviously
18  these questions may have some importance for
19  the Judge. So that's why I am going to ask
20  the questions, in fairness to you.
21      A.  But on sheet 2 we know that in fact
22  the floodwall was there. So --
23      Q.  I'm sorry. On sheet 2 we know the
24  floodwall was there? You mean the sheet pile
25  wall was there?

Page 38

1      A.  The sheet pile wall was there,
2  correct.
3      Q.  At least a section, because we don't
4  know where it begins and where it ends.
5      A.  Yes.
6      Q.  Okay. I understand that. But
7  again, I am asking you to make an assumption.
8  And I have asked you to assume that the
9  profile along the center line of the existing
10  levee in fact describes the crown of a levee
11  without a sheet pile wall. Okay?
12      A.  Yes.
13      Q.  Okay. And we already know that this
14  measurement utilized NAVD because we have
15  already established that the Corps was using
16  NAVD in 2005. Correct?
17      A.  Yes.
18      Q.  So, in fact, that if this is a LIDAR
19  measurement, the actual height of the levee
20  would be lower than what's depicted on sheet
21  number 2 of Exhibit Number Dalrymple 4. Isn't
22  that true?
23      A.  If there's no floodwall, yes. Under
24  the assumptions.
25      Q.  And so if this is accurate, and if

Page 39

1  this is accurate, this would be, this
2  indication of levee height as of the date of
3  the hurricane would be closer to the Dutch
4  number that they use than it would be to the
5  number you use in your model. Isn't that
6  true?
7      A.  That would be true.
8      Q.  Okay. Now, again, another
9  assumption. Okay?
10      A.  Uh-huh (affirmatively).
11      Q.  Let's assume that this work was
12  done, they spent the $3 million and they
13  raised the levee. Let's also assume that
14  there was actually a decent contractor, which
15  is a big assumption. And I say that because
16  if the intent was to raise it to 10, your
17  survey shows they didn't get it to 10. Right?
18      A.  Uh-huh (affirmatively).
19      Q.  Now, we know in fact that in this
20  area there is a lot of subsidence, don't we?
21      A.  Yes.
22      Q.  Okay. So if we had a competent
23  contractor, and that's a big if, and if the
24  contractor in fact did the work, and if the
25  work was done properly and they got the levee

Page 40

1  to 10 feet, your survey shows that, if that
2  were true, the levee has sunk a little bit
3  from the 10 feet. Isn't that true? If it's
4  not an I-wall. Let me preface it that way. If
5  it's not the measurement of an I-wall but the
6  measurement of a levee crown.
7      A.  That would be true, yes.
8      Q.  And, Tony, finally, if the height of
9  the levee was closer to what the Dutch used
10  than the number that you used, then your
11  model, it doesn't accurately depict the
12  flooding of St. Bernard and the Lower Ninth
13  Ward. Isn't that true? That's an "if", now.
14      A.  No, in fact, that would not be true,
15  because of the fact that -- the way both sets
16  of modeling efforts were carried out.
17  Comparisons were made between the water coming
18  over the MRGO levee, flooding into the central
19  wetlands, going over the 40 Arpent levee and
20  then arriving in St. Bernard Parish. And so
21  in both modeling efforts comparisons are made
22  to hydrographs --
23      Q.  Sure.
24      A.  -- that were observed at the site.
25  So the fact that our model predicts the

**JOHNS, PENDLETON COURT REPORTERS**                    **504 219-1993**

**ROBERT DALRYMPLE**                                    **April 18, 1980**

1  arrival of the water at the hydrographs
2  correctly in St. Bernard Parish says that the
3  model is correct in terms of water coming from
4  the MRGO into the St. Bernard Parish.  So the
5  way that's possible is due to the fact that we
6  don't quite know when the breaching occurred
7  and so it depends on how the central wetlands
8  were flooded and the water goes over the 40
9  Arpent levee east of Paris Road.
10     Q.  Well, utilizing your words, you say
11 that the Sobek model incorrectly predicts
12 flooding solely because the elevation of the
13 40 Arpent levee is significantly lower.
14 That's what you say.
15     A.  Uh-huh (affirmatively).
16        MR. FARRELL:
17         Objection.  Mischaracterizes what
18       the report says.
19 EXAMINATION BY MR. BRUNO:
20     Q.  Well, let me read it to you.
21 "Flooding of the Lower Ninth Ward and St.
22 Bernard Parish in the Plaintiffs' Sobek model
23 is incorrectly predicted, as the elevation of
24 the 40 Arpent levee, including the Florida
25 Avenue levee, is significantly lower, on the

1  order of 3 to 6 feet, in the Sobek model than
2  in reality, as are the MRGO levee
3  elevations".  Did I read that correctly?
4      A.  Yes.
5      Q.  All right.  Insofar as the sentence
6  refers to the 40 Arpent levee, if in fact --
7  I'm sorry.  You are saying that the incorrect
8  40 Arpent levee elevation in fact
9  demonstrates, without any other sentences
10 here, that it's wrong; right?
11     A.  Well, don't forget that it also says
12 Florida Avenue levee, and we know there's a
13 floodwall there.
14     Q.  No, I understand that.  But if I am
15 reading this correctly, it sounds like if
16 there are incorrect elevations, then you are
17 likely to get an incorrect result.  Right?
18     A.  That is correct, except that there
19 are other factors that go into finding the
20 answer, and that is such factors as breach
21 times, heights of the MRGO, friction factors
22 that you use in your model.
23     Q.  Right.  So help me understand.  What
24 makes yours better than the Dutch if you got
25 the 40 Arpent levee height wrong?

1      A.  Well, "if", that's -- that's the
2  "if".  If we got that wrong, what makes it
3  better would be comparisons to actual
4  hydrographs within St. Bernard Parish, better
5  representation of the wind fields, more
6  realistic representation of the bathymetry and
7  topography in the study area, finer detailing
8  of the canals and drainage canals and the
9  central wetlands and so forth.  So finer grid
10 resolution, better wind fields and so forth.
11 So there are a variety of factors that make
12 the model better.
13     Q.  In fact, you used the same
14 topography and bathymetry as the Dutch; right?
15     A.  Well, except that we modified the
16 topography with some feature analysis to take
17 raised roadbeds and so forth, or railroads,
18 and modify the topography to take into account
19 those features and the floodwall.
20     Q.  Well, I know that you had different
21 floodwall heights, and the only -- I thought
22 the only other change you made was to Paris
23 Road.  Were there other roads that you
24 changed?  I didn't see that in your report.
25     A.  Well, there's a map of the features

1  in here that are included.
2      Q.  May we go to that, please?
3      A.  Page 51.
4      Q.  Okay.
5      A.  So there are a variety of features
6  here, six of them, showing where the
7  topographic grid based on LIDAR was changed to
8  recognize these sharp features.
9      Q.  So other than these six or seven
10 vertical features indicated on 51, in fact,
11 you used the same topography as did the
12 Dutch.
13     A.  We used a -- This is in the Lower
14 Ninth Ward.  We used the LIDAR.  It's been
15 treated a little bit to smooth it out.  But
16 basically we used the same LIDAR source.
17     Q.  Okay.  Let's take a little break.
18 Is that okay with you?
19     A.  That's fine with me.
20        (Recess.)
21        MR. BRUNO:
22         We can do this on the record or
23        off the record, but what I would like
24        to do is to go on Google Earth and let
25        you look at it.  Is that okay?  Bill

**JOHNS, PENDLETON COURT REPORTERS**              **504 219-1993**

**ROBERT DALRYMPLE**                                    **April 18, 1980**

1   reported here, 12.5 or lower?
2       A.  That's a little bit lower.  I don't
3   know exactly what that number is.  But it's
4   about 12 and looks like 12.2 or something like
5   that.
6       Q.  Okay.  So we have overtopping for
7   one, two, -- about three hours over a wall at
8   that height; right?
9       A.  Correct.
10      Q.  In fact, if it's linear, we have
11  overtopping for a wall that's 13 feet high for
12  at least two hours.
13      A.  Correct.  Yes.
14      Q.  Solid overtopping, this pouring on
15  the back side of that wall.
16      A.  Yes.
17          MR. BRUNO:
18          Let me visit with Scott.  That
19      may be all we have.
20          (Whereupon a discussion was held
21      off the record.)
22          MR. BRUNO:
23          I forgot to do one thing.  I just
24      want to put this into the record
25      because, you know, it's not so much

1       that --
2           MR. FARRELL:
3           This is 14?
4           MR. BRUNO:
5           No, I mean, this -- It's just
6       that I want -- Mark this as 16.
7           MR. FARRELL:
8           I'm sorry.
9           MR. BRUNO:
10          This is testimony -- This is the
11      testimony --
12          MR. FARRELL:
13          I am afraid it may have been
14      marked already.  Because this was
15      marked as 14 earlier.
16          MR. WOODCOCK:
17          Yes, you have already put this
18      in, Joe.
19          MS. WAGER-ZITO:
20          You didn't say anything about
21      it.  You handed it out and --
22          MR. FARRELL:
23          And then we moved on.
24          MR. BRUNO:
25          That's because, okay, -- So it's

1       14.
2           MR. FARRELL:
3           Yes.
4           MR. BRUNO:
5           Then for the record, this is just
6       testimony from the barge trial
7       regarding the bridge being down.
8       That's all it is.  And since the
9       exhibit cut-off is over, I needed to
10      do that to get it in through the
11      deposition.
12          So anyway, that's all the
13      questions we have.
14  EXAMINATION BY MR. FARRELL:
15      Q.  Dr. Dunbar, I have two questions for
16  you for the record this afternoon.  First is,
17  what was your basis, your factual basis for
18  the belief that the 40 Arpent levee was not
19  raised to a new height after Hurricane
20  Katrina?
21      A.  Post-Katrina.  We had been told that
22  from the Levee District, it's Lake Borgne
23  Levee District, that there was no subsequent
24  raising of the levee after Katrina.
25      Q.  My second question is what effect,

1   if any, does a lower 40 Arpent levee east of
2   Paris Road, lower than in your current model,
3   have on the results of your model?
4       A.  Well, I think it may have no
5   results, no effect on the results because of
6   the fact that what we used for the flooding of
7   the Lower Ninth Ward was the actual measured
8   water level in the IHNC and in St. Bernard
9   Parish by adjusting the -- you know, in our
10  attempt to figure out when the breaching
11  occurred based on the physics, the comparison
12  was made to the Couget and Palmisano
13  properties, and so by making the model correct
14  at that location, that meant that we had the
15  water flowing over the 40 Arpent in the right
16  quantities to do the flooding in those
17  locations.  So the error, any error in wall
18  height would have been compensated by an error
19  in the MRGO breaches scenarios.  So that I
20  think the water levels that would go over
21  Paris Road into the Lower Ninth Ward in our
22  study area are likely to be exactly the same.
23          MR. FARRELL:
24          Okay.  Thank you.  We're done.
25  EXAMINATION BY MR. BRUNO:

**JOHNS, PENDLETON COURT REPORTERS**              **504 219-1993**

**ROBERT DALRYMPLE**                                    **April 18, 1980**

Page 209

1      Q.  A couple of follow-ups.  Surprise,
2   surprise.  We have already established that
3   there really is no difference between your
4   opinion and the Dutch opinion with regard to
5   when water arrived at these particular
6   locations from the various sources with the
7   exception of the Armstrong property.  Isn't
8   that true?
9      A.  Yes.
10     Q.  We have also established the heights
11  of the water that were produced by each of
12  those sources; right?
13     A.  Yes.
14     Q.  Now, having said that, given the
15  quality that you intended to bring to this
16  exercise, wouldn't it be better to rerun this
17  whole thing with the correct levee heights?
18     A.  I think that would be a more
19  complete way of doing it, to see if my
20  supposition is correct.
21     MR. BRUNO:
22        Thank you.  No further
23     questions.
24              *  *  *
25

Page 210

1
2          WITNESS'S CERTIFICATE
3
4       I, ROBERT A. DALRYMPLE, read or have
5   had the preceding testimony read to me, and
6   hereby certify that it is a true and correct
7   transcription of my testimony, with the
8   exception of any attached corrections or
9   changes.
10
11
        _____
12      (Witness' Signature)
13  _____
    DATE SIGNED
14
15  DEPONENT PLEASE INITIAL ONE:
16
    _____ Read with no corrections
17
18  _____ Read and correction sheet attached
19
20
    DATE TAKEN:  APRIL 18, 2012
21
22
23
24
25

Page 211

1
2          REPORTER'S CERTIFICATE
3
4       I, ROGER D. JOHNS, RMR, RDR, CRR,
5   Certified Court Reporter, do hereby certify
6   that the above-named witness, after having
7   been first duly sworn by me to testify to the
8   truth, did testify as hereinabove set forth;
9   that the testimony was reported by me in
10  shorthand and transcribed under my personal
11  direction and supervision, and is a true and
12  correct transcript, to the best of my ability
13  and understanding; that I am not of counsel,
14  not related to counsel or the parties hereto,
15  and not in any way interested in the outcome
16  of this matter.
17
18
19
20          ROGER D. JOHNS
21      CERTIFIED COURT REPORTER
22          STATE OF LOUISIANA
23
24
25

**JOHNS, PENDLETON COURT REPORTERS**                **504 219-1993**