UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO: MRGO<br>*Armstrong* No. 10-866 | * * * * * * | SECTION "K" (2)<br><br>JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

**MEMORANDUM IN OPPOSITION TO MOTION IN
LIMINE TO PRECLUDE DEFENDANT'S EXPERTS FROM
OFFERING OPINIONS QUANTIFYING DAMAGE ATTRIBUTABLE
TO WATERS FROM THE INNER HARBOR NAVIGATION CANAL (IHNC)**

Defendant Washington Group International, Inc. ("WGI") respectfully submits this brief in opposition to Plaintiffs' Motion to Preclude Defendant's Experts from Offering Opinions Quantifying Damage Attributable to Waters from the Inner Harbor Navigation Canal (IHNC).[1] Contrary to Plaintiffs' claims, Dr. Robert Dalrymple's report describes the effects of the waters of the IHNC alone. Although Dr. Dalrymple does not include a dedicated hydrograph depicting the "IHNC-only" scenario, he describes this scenario in the text of his report. Furthermore, Defendants' causation expert, James Danner, consulted the reports of both Dr. Dalrymple and Plaintiffs' hydrology expert, Prof. Johannes Vrijling, in forming his opinions in this matter. He has expressed opinions regarding the quantum of damages attributable to an IHNC-only scenario, which Defendants' damages expert Jean-Prieur Du Plessis relied on in estimating repair costs to Plaintiffs' immovable properties. Mr. Danner and Mr. Du Plessis, along with Dr. Dalrymple, should not be restricted from offering opinions which are detailed in

---

[1]   Rec. Doc. 20949.

their expert reports provided to the Court in this matter. Therefore, Plaintiffs' motion should be denied.

## I. ARGUMENT

In the March 17, 2011 Order, the Court ordered that it would only determine negligence and damages arising from the activity at the EBIA.[2] The Court further ordered: "In determining whether damages occurred as a result of the IHNC floodwall breaches, defendants may show that damages were the result of other causes including, but not limited to, the waters that relate to the hydrodynamic effects of the MRGO and of any breaches of the MRGO levees."[3] One way of determining the comparative effects of damages from the floodwaters associated with IHNC and MRGO is to present a hypothetical IHNC-only scenario, as Plaintiffs' hydrology expert, Prof. Johannes Vrijling did in this case. Another way to determine the comparative effects of the floodwaters is to display all causes and demonstrate the relative contribution of the IHNC and MRGO to flooding at each of the properties, which Defendants' expert, Dr. Dalrymple did.

In his Expert Report, Dr. Dalrymple provides, for each Plaintiff's location, hydrographs depicting the elevations of floodwaters on August 29, 2005. These hydrographs describe the following scenarios: "All causes" (IHNC and MRGO breaches), "No North Breach" (IHNC South Breach and MRGO breaches), "No South Breach" (IHNC North Breach and MRGO Breaches), "MRGO Only" (No IHNC Breaches), and "No Breaching". Dr. Dalrymple does not include a scenario in his hydrographs representing waters from the IHNC breaches in the absence of the MRGO breaches. However, in the text of his report, he does describe the levels that the floodwaters from the IHNC alone reached for the Plaintiffs' properties. In the case

---

[2]   March 17, 2011 Order (Rec. Doc. 20200) at 3.

[3]   *Id.* at 2-3.

1101771v.1

of Plaintiffs Coats, Holmes, Livers, and Washington, Dr. Dalrymple discusses the flooding attributable to the IHNC floodwaters prior to the arrival of waters from the MRGO.[4] For example, in the discussion of the Coats property, Dr. Dalrymple writes:

> In the All Causes scenario, flood waters arrive from the IHNC South Breach about 7:45 am, rising up to just over 9 feet at roughly 9:20. As the storm surge in the IHNC subsides from its peak elevation at 9:00 am, less water flows through the IHNC breaches and the flowing of the IHNC flood waters to the east causes the water level to drop slightly until about 10 am, when the flood waters from the IHNC breaches meet with MRGO flood waters in the area west of Paris Road. The influence of the MRGO waters causes the water level to rise again, because neither body of water is able spread out laterally.[5]

It is clear from this paragraph and the hydrograph provided on page 94 with regards to the Coats property that it is Dr. Dalrymple's opinion that waters from the IHNC alone rose to a level of "just over 9 feet" before subsiding and before experiencing the influence of floodwaters from the MRGO. Dr. Dalrymple's text and hydrographs provide similar analysis related to the source and timing of the flooding from the IHNC for Plaintiffs Holmes, Livers and Washington.[6] In the case of the Armstrong residence, Dr. Dalrymple opines that the floodwaters from the IHNC and MRGO arrived at the residence nearly simultaneously, and his hydrographs indicate that the IHNC and MRGO breaches contributed approximately equally to the floodwaters at the Armstrong residence.[7] Despite the absence of a line for "IHNC Only", Dr. Dalrymple's hydrographs and report do offer opinions related to the maximum level of floodwaters attributable to the IHNC alone, and his opinion should not be excluded.

Additionally, Defendants' causation expert, James Danner, quantified damages attributable to IHNC floodwaters. In so doing, he expressly relied not only on Dr. Dalrymple's

---

[4]  Report of Dr. Robert A. Dalrymple at 93-98.

[5]  *Id.* at 93.

[6]  *Id.* at 95-98.

[7]  *Id.* at 92.

report in forming his opinions, but also on the report provided by Plaintiffs' own hydrology expert (which as Plaintiffs themselves note, included hydrographs for IHNC-only scenarios).[8] In turn, Jean-Prieur Du Plessis, Defendants' damages expert, relied on Mr. Danner's reports in offering his opinions regarding the repair costs associated with floodwaters from the IHNC only.[9] Plaintiffs' contention that Defendants' experts do not quantify the damages attributable to floodwaters from the IHNC is plainly without merit.

---

[8] *See* Supplemental Report of James Danner for Armstrong, dated March 21, 2012 at 1-2; Supplemental Report of James Danner for Coats, dated March 21, 2012 at 1-2; Supplemental Report of James Danner for Holmes, dated March 21, 2012 at 1-2; Supplemental Report of James Danner for Livers, dated March 21, 2012 at 1-2; Supplemental Report of James Danner for Washington, dated March 21, 2012 at 1-2.

[9] *See* Supplemental Report of Jean-Prieur Du Plessis for Coats, dated March 21, 2012 at 6; Supplemental Report of Jean-Prieur Du Plessis for Livers, dated March 21, 2012 at 6; Supplemental Report of Jean-Prieur Du Plessis for Washington, dated March 21, 2012 at 6. In the case of Armstrong, Mr. Danner opined that the IHNC and MRGO floodwaters contributed approximately equally to the flood damage; thus, Mr. Du Plessis did not provide a supplemental Armstrong report. In the case of Holmes, Mr. Danner opined that all of the damage attributable to flood may be attributed to the earlier arrival of IHNC waters; thus, Mr. Du Plessis did not provide a supplemental Holmes report.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion in Limine to Preclude Defendant's Experts from Offering Opinions Quantifying Damages Attributable to Waters from the Inner Harbor Navigation Canal (IHNC) should be denied.

Dated:  August 17, 2012

Respectfully submitted,

/s/William D. Treeby
William D. Treeby, 12901
James C. Gulotta, Jr., 6594
Heather S. Lonian, 29956
   Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:   (504) 581-3361

and

Adrian Wager-Zito
James E. Gauch
Debra S. Clayman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Attorneys for Washington Group International, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2012, a copy of the above and foregoing Memorandum in Opposition was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing has been forwarded to all known counsel of record by operation of the court's electronic filing system or by e-mail.

/s/William D. Treeby

1101771v.1