UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NUMBER: 05-4182 "K"(2)<br>JUDGE Duval<br>MAG. Wilkinson |
| PERTAINS TO: MRGO<br>*Armstrong*, No. 10-866 | |

**ARMSTRONG, HOLMES, AND LIVERS OPPOSITION TO WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING REPAIR OR REPLACEMENT COSTS FOR CERTAIN PLAINTIFFS' IMMOVABLE PROPERTY**

**MAY IT PLEASE THE COURT;**

**I.  Introduction**

Before the Court are cross Motions *in Limine* seeking the determination of the appropriate methodology by which damages are to be calculated and awarded to the Armstrong, Holmes, and Livers plaintiffs for the total destruction of their family homes caused by the fault of Defendants, Washington Group International, Inc. ("WGI") and the United States.[1] Plaintiffs intend to offer the testimony of Scott Taylor regarding the replacement costs of the Armstrong, Holmes, and Livers family homes both pre-Katrina and post-Katrina. WGI will offer the testimony of Michael Truax regarding the diminution in fair market value of each of these three family homes. The United States has filed a joinder motion to this WGI motion.[2]

---

[1]  On August 10, 2012 the Armstrong, Holmes, and Livers Plaintiffs filed their Motion In *Limine* to Exclude Evidence of Diminution of Value, etc. (R. Doc. 20955)

[2]  Hard copies and electronic versions of the Taylor and Truax Reports were provided to the Court

1

WGI's motion is based on the Truax Appraisal of diminished market value is unsupportable since:

1. **Replacement damages for a family home are always appropriate, even where such damage are greater than the entire value of the homes**

2. **Louisiana damage law does not allow market value methodology to assess damages for destroyed property.**

3. **The family home has been rebuilt, albeit at another location.**

4. **Rebuilding in the same location was not a reasonable or practicable possibility. Circumstances demanded relocation of the family home.**

## II.   LAW AND ARGUMENT

### A.   Replacement Damages For A Family Home Is Always Appropriate, Even Where Such Damages Are Greater Than The Entire Value Of The Home

WGI's appraiser, Mr. Truax, reconstructs total fair market before Katrina of $401,000.00 for the three properties at issue and a post-Katrina market value totaling $106,000.00. If these diminution values were adopted as the measure of damages, approximately 75% of the Plaintiffs' losses would uncompensated and WGI's loss exposure reduced by a like amount. To impose such a harsh remedy simply because of a forced sale to Road Home, considered to be the best available alternative to rebuilding on the same footprint, is inflexible, arbitrary, unfair, and does not do substantial justice as the law mandates. It is all the more onerous because following this sale, each rebuilt their family home at another location.

Replacement cost is an acceptable measure of damages when property such as a home has been destroyed, even where the difference in value of property before and after the damage can be determined. *See Roman Catholic Church*, 618 So. 2d at 879-80 (concluding that a plaintiff is

---

pursuant to Court's Order of August 10, 2012.

entitled to costs of restoration but may elect the difference in value); *Mayer v. McNair Transport, Inc.*, 384 So. 2d 525, 526-27 (La. App. 2d Cir. 1980) ("[The defendants] contend replacement cost is not a legally permissible method of computing damages where the value of the thing destroyed can be determined. We do not agree."); *Womack v. Travelers Ins. Co.*, 258 So. 2d 562, 569 (La. App. 1st Cir. 1972) ("Generally speaking, if property or improvements cannot be restored, the value to be established as damages should be the cost of replacement, less depreciation.").

Additionally, the Louisiana Supreme Court has stated that even if the costs of restoration or replacement are disproportionate to the value of the damaged or destroyed home, it is the appropriate measure of damages because the home is personal to the owner—**"if a building such as a homestead is used for purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building."** *Roman Catholic Church*, 618 So. 2d at 880; *see also Banks*, 620 F. Supp. 2d at 746 (noting that where plaintiff's gutted home, which they were about to restore, was accidentally torn down, "homeowners, who have a personal attachment to their long-term residences, are often entitled to the full repair cost, even if that cost is disproportionate to the underlying value of the homes, as long as the cost is not exorbitant").

The Louisiana Supreme Court has stated that such a remedy comports with the principles established by the Civil Code and the state constitution that one should "compensate a victim to the full extent of the loss and restore him to as good a position as he held prior to the damage." *Roman Catholic Church*, 618 So. 2d at 879. Thus, our constitution does not simply require that the owner of condemned or damaged property to be compensated with the market value of the property taken and severance damage to his remainder, but that he be "compensated to the full extent of his loss" and "placed in as good a position pecuniary as [he] enjoyed prior to the taking." *Article I, § 4 of the Louisiana*

*Constitution of 1974*. See also, *State v. Bitterwolf*, 415 So. 2d 196, 199 (La. 1982), quoting *State v. Constant*, 369 So. 2d 699, 702 (La. 1979).

Damages under Louisiana tort law are meant to place an injured party in "as good a position as before his property was damaged, but not in a superior position." *Mossy Motors, Inc. v. Sewerage and Water Bd. of New Orleans*, 1998-0495, p. 17 (La. App. 4 Cir. 5/12/99), 753 So. 2d 269, 280. Therefore, "when property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage." *Hornsby v. Bayou Jack Logging*, 2004-1297, p. 5 (La. 5/6/05), 902 So. 2d 361, 365 (quoting *Coleman v. Victor*, 326 So. 2d 344, 346 (La. 1976)). Replacing a family home at another location can never place a victim in a superior position; the victim is made whole by an award of replacement value, but only so. A family home for a family home of approximately the same replacement costs is not a prohibited windfall.

The Taylor Report submitted by the Plaintiffs establishes a replacement value for Plaintiffs residences both before and after destruction. Replacement value is a well understood, accepted appraisal methodology. Replacement value is a clearly superior method of calculation damages to a victim's family home. The opposite, unfair result is advocated by WGI, by limiting Plaintiffs recovery to diminution damages, the defendants in the superior position---a defense windfall in the range of a minimum of $295,000.00 using both before and after Truax values. Comparing the after wall failure values of Truax to those Taylor replacement values; the uncompensated loss to the Plaintiffs is $435,000.000, a WGI windfall in an equal amount.[3]

In the context of commercial property, *Roman* Catholic and the other authorities discussed by WGI recoganizes that in some instances, not all, and not always, where the cost of restoration is

---

[3] A table summarizing the Truax and Taylor report is contained in Plaintiff Motion, Id.

"economically wasteful," the difference in value may be more appropriate, **unless there is a reason personal to the owner for replacing or restoring the property.** *Id.*

The present effort of WGI asks the Court to establish a mechanical rule, one size fits all regardless of the nature and use of the property to apply to Plaintiffs' homes flooded by INHC waters. Yet "no mechanical rule can be applied with exactitude in the assessment of property damage under article 2315." *Coleman*, 326 So. 2d at 347. Instead, the facts and circumstances surrounding each case must be examined to determine which method is appropriate. *See id.*; *Banks v. New Orleans City*, 620 F. Supp. 2d 741, 745 (E.D. La. 2009). Such limits proposed by WGI ignores the reality of the post – Katrina world these Plaintiffs found themselves in, a world of uncertain police, medical, educational services, a market dominated by Road Home sales and grants. These Plaintiffs had a family home, they are entitled to a family home at the cost of these tortfeasors., not a nickel more than the replacement value but not a penny less.

**B. Louisiana Damage Law Does Not Allow Market Value Methodology To Assess Damages For Destroyed Property.**

Further, when property has been destroyed and the value of the destroyed property is unreasonable or impossible to ascertain, as it is here, restoration costs or replacement cost less depreciation is the proper measure of damages. *See Corbello*, 02-0826, p. 8, 850 So. 2d at 694 ("[T]he cost of replacement new, less reasonable depreciation, if the value before and after the damage cannot be reasonably determined . . . ."). In *Brown v. Williams*, a neighbor's tree fell on the plaintiff's home during a storm, completely demolishing it. 36,863, p. 1 (La App. 2 Cir. 7/31/03), 850 So. 2d 1116, 1119-20. The court held that because "the plaintiff's home and contents were damaged beyond repair, so that a fair market value of plaintiff's property could not be assessed at the time of the accident . . . , the only reasonable approach remaining to determine

the amount of plaintiff's damages was the use of replacement cost less depreciation." *Id.* at p. 11, 850 So. 2d at 1124; *see also Kalmn, Inc. v. Empiregas Corp.*, 406 So. 2d 276, 281 (La. App. 3d Cir. 1981) (holding that where house was destroyed in gas explosion and fire and there was no evidence as to value of the house prior to the damage, "the plaintiffs should be awarded the costs of replacing the home new, less reasonable depreciation"); *Cenac v. Duplantis Moving & Storage Co.*, 407 So. 2d 424, 427 (La. App. 1st Cir. 1981) ("It is clear from the record that the building was damaged beyond repair, no fair market value could be placed on the building immediately prior to the accident, and the different in value prior to and after the accident, was not determinable. Therefore, the only reasonable approach left to determine the plaintiff's damages is by using replacement cost less depreciation.").

The defendants' expert's proposed method looking at the pre and post-Katrina market value of the homes (which likely cannot be concretely obtained and must be roughly estimated using actual sales of different homes in the same or similar neighborhoods) less the sale value of the lot is too speculative a method to be feasible, especially in light of Louisiana jurisprudence that provides an alternative method of determining damages when the difference in value cannot be reasonably obtained. *See Brown*, 36,863 at p. 11, 850 So. 2d at 1124 ("[T]he record shows that the plaintiff's home and contents were damaged beyond repair so that a fair market value of plaintiff's property could not be assessed at the time of the accident. Consequently, the only reasonable approach remaining to determine the amount of plaintiff's damages was the use of replacement cost less depreciation."). It is unreasonable, given the chaotic post-Katrina real estate market to expect that a reliable market value can be calculated using comparable sales. In such an upside down market, the only appraisal methodology that is fair and sensible is to establish value based on replacement costs.

6

C. **The Family Home Has Been Rebuilt, Albeit At Another Location.**

While the Louisiana Supreme Court in *Roman Catholic Church* did quote from Dobbs, *Handbook on the Law of Remedies § 5.1 (1973)* as stating that where a plaintiff does not plan on selling damaged property, "repair or restoration is the only remedy that affords full compensation,", neither did it or Dobbs say that a sale of the destroyed family home limits the damage claim to one of diminution value. Significantly, there is no Louisiana holding the opposite, i.e., that a plaintiff is not entitled to restoration or replacement costs if he does sell his family home and then replaces it at another site. 618 So. 2d at 877.

D. **There Is No Windfall.**

Even if *Roman Catholic Church* did not exempt a family home from its reach, ("… if a building such as a homestead is used for purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building."), the holding would then require a further evaluation of whether or not a particular damage model would be "economically wasteful".

WGI creates an artificial windfall by comparing apples to grapes. WGI contrasts the post-Katrina difference in asset valuation in a destroyed condition with an asset valuation based on restoration costs, a difference of $435,000.00. Based on this falsely premised calculation, WGI to be submits it would be "economically wasteful" to award Plaintiffs the replacement costs. How can replacing a roof over one's head ever be economically wasteful when, as here, the pre and post-Katrina replacement costs are the same?

WGI further argues that by selling their homes to Road Home, each plaintiff has elected to forgo replacement damages and is limited to diminution damages. It is clear that these Plaintiffs were offered no real choice---for their safety and welfare they chose to abandon their decades old homes, reestablishing their lives in homes elsewhere. The Livers home had no mortgage pre-Katrina and

7

these plaintiffs had to use their personal funds to acquire another residence. The Armstrong's had one year left on their mortgage, now they have fifteen. Assuming the law requires an election, which it does not, the choices to sell were no real choices and thus not an election to forego restoration damages,

   1. **The Livers**

In 1971, Mr. and Mrs. Livers purchased a home with the physical address of 4924 St. Claude Avenue in New Orleans, Louisiana. They paid off the mortgage and retired prior to Hurricane Katrina. The Livers home and all of their belongings were destroyed. Although they intended to return and rebuild – the Livers had begun repairs on their house – they at the time faced insurmountable challenges. Their old neighborhood was engulfed by lawlessness; violence was widespread and stealing construction materials from homes that were being rebuilt was rampant. Under these circumstances, the Livers were too afraid to return, believing the community was no longer safe. Thus, as a last resort, they sold their family home of 35 years to the Road Home Program. Using retirement funds and Road Home collateral source payments, they purchased a home in Gonzales, Louisiana, at I13492 Paces Point in Gonzales, Louisiana. (See Exhibit "1", Affidavit of Alvin Livers.)

   **2. The Holmes**

The Holmes were lifelong residents of St. Bernard Parish, proud to finally have a house of our own in the place we intended to live out the rest of our years. Their family home and all of their belongings were destroyed. They evacuated to Texas. Efforts to find suitable housing in St. Bernard were unsuccessful. Sometime thereafter, each was furloughed by their employers for being unable to work remotely.

By January of 2006 the Holmes had no home and no employment in St. Bernard. There was no St. Bernard or Lower Nine within which to live at this time. They were left with no choice but to try to start a life over in Texas. The Holmes found employment through Rice University shortly after being furloughed by our respective employers in Louisiana. The Holmes "… sold our home to the Road Home program because we felt we had no other viable option but to stay in Texas where we were receiving so much help from local charities…". The Holmes then purchased a home at 30231 Glenboro Drive, Spring Texas. (See: Exhibit "2", Affidavit of Fred Homes).

### 3. The Armstrongs

In July of 2006, Mrs. Armstrong was diagnosed with a rare fungal pneumonia believed to be airborne fungus caused by soil and mold in the front yard of their destroyed home which they had begun to clean. In August of 2006, it was discovered the fungus had migrated to her vertebrae. These were replaced with titanium rods. Mrs. Armstrong was hospitalized for two weeks and on antibiotics for three months.

Rather than risk continued health risks associated with cleaning their home, the Armstrong's elected to demolish their home. However, no one rebuilt in that neighborhood. Mr. Armstrong describes his former neighborhood as having "… no life left in the neighborhood and is dark, lonely and unsafe. We had no choice but to sell our lot to the Road Home Program in January of 2008".

Today their former neighborhood is mostly empty or industrial. There are overgrown and empty lots. The Armstrong's opted to purchase a home in a nearby neighborhood in Meaux, Louisiana, located at 2400 Aramis Drive. Prior to hurricane Katrina, they only had one year left

on their mortgage.  They now have a mortgage for $1000.00 a month for fifteen years. . (See: Exhibit "3", Affidavit of Kenneth Holmes).

WGI argues that awarding these Plaintiffs replacement damages, under these circumstances is "economically wasteful.  WGI argues that the decision to sell to Road Home was elective, creating a windfall. Such  arguments and such results is clearly unjust, unfair, and not appropriate under  the law.

### III.    CONCLUSION

As the Truax Reports are limited to a diminution of value approach, contrary to Louisiana Law, these reports do not provide a basis for determining replacement values of Plaintiffs properties and, hence, an adequate measure of Plaintiffs' damages. Accordingly, the Truax Reports cannot assist the Court in estimating the appropriate value of damages to the Armstrong, Livers, or Holmes residences. Such opinions and testimony regarding diminution values associated with these residences are counter to applicable law, irrelevant and should be excluded as requested in Plaintiffs Motion in *Limine* to Exclude Evidence of Diminution of Value, etc. (R$.Doc.20955)

The actual, compensable loss sustained by Armstrong, Holmes, and Livers consists of the replacement costs to rebuild the family home equal to its replacement value prior to Katrina as quantified in the Taylor Report.

Because Plaintiffs Armstrong, Holmes, and Livers have elected to  recover replacement value damages related to the restoration of their family homes on another footprint and because there is no windfall, evidence of diminution of value damages as reported by Mr. Truax, is irrelevant and must be excluded and the Plaintiffs Motion in *Limine* to Exclude Evidence of Diminution of Value, etc. (R..Doc.20955), be granted.

For the very same reasons, WGI's Motion *in Limine*, joined in by the Government, must be denied.

Dated:  August 17, 2012

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*/s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

**MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**

Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 17th day of August, 2012.

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO