# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION § § § § § PERTAINS TO: § § MRGO § *Armstrong*, No. 10-866 § § | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |

**DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY BASED ON UNPRODUCED GIS MODEL OR, IN THE ALTERNATIVE, TO COMPEL PRODUCTION OF THE MODEL TO PLAINTIFFS**

Defendant Washington Group International, Inc. ("WGI") respectfully submits this brief in opposition to Plaintiffs' motion to preclude testimony based on the Defendants' "GIS model," or to compel production of the same.[1]  Plaintiffs are wrong that any expert in this case relied on the Defendants' "GIS model" to form his opinions.  As a result, there is no basis to exclude evidence related to the "GIS model."  Nor is there any basis for this Court to compel production of the "GIS model" in response to the Plaintiffs' untimely discovery request.  Their motion should therefore be denied.

**I.    ARGUMENT**

**A.    The "GIS Model" Was Not Relied Upon or Considered Under Rule 26.**

At the outset, it is important to note that ***none*** of the parties in this case produced "GIS models" in connection with their Rule 26(a)(2) expert disclosures.  That is because, contrary to Plaintiffs' misrepresentations, the Defendants' experts did not actually rely on or

---

[1]    Mtn. to Exclude or Order Production of GIS Model (Rec. Doc. 20950).

consider Dr. Silva-Tulla's "GIS model" to form their opinions. Assumedly, the Plaintiffs' experts did not rely on or consider their own "GIS model" either. If they had—and in order to comply with the disclosure requirements of Rule 26(a)(2)—Plaintiffs no doubt would have produced the "GIS model." They have not.

In truth, Dr. Silva-Tulla's "GIS model" is simply a database of spatial information (*e.g.*, locations, elevations, depths, etc.) obtained from documents produced in this case, including Task Order 26 project documents, U.S. Army Corps of Engineers daily quality assurance reports, maps and aerial images of the EBIA, and other materials. This GIS database is used to organize that information and create graphics that are based on the information. ***All*** of the underlying information stored in the GIS database that the Defendants' experts considered to form their opinions was produced to the Plaintiffs in connection with Rule 26(a)(2). Similarly, ***all*** of the graphics from the GIS model that the Defendants' experts considered, along with the underlying documents that make up those graphics, were produced as part of the experts' reports. The GIS database itself—in essence, a repository for a portion of Dr. Silva-Tulla's reliance materials—was not considered by Dr. Silva-Tulla or any other Defense expert in this case.[2]

Plaintiffs advance several arguments for why they believe Defendants' experts relied on the Defendants' GIS database. All of those arguments fail. For instance, Plaintiffs highlight the "excavation spreadsheet" created by Dr. Silva-Tulla's team and provided to Dr.

---

2   Dr. Silva-Tulla explained it best when he testified that the GIS database is "a collection of the underlying documents" used to "summarize all of the information available to us." Memo. in Support of Mtn. to Exclude or Order Production of GIS Model at 3 (Rec. Doc. 20950-1). While the purpose of the database was "to help [the experts] do analysis," the experts performed their analysis by considering the "various information that's available" from "aerial photographs . . . AutoCAD drawings . . . various reports including the NFAATT [] reports, the RECAP [] reports," and other underlying materials produced in this case that make up the GIS database. *Id.* at 4.

Allen Marr.[3] That spreadsheet is nothing more than a collection of information taken from the Task Order 26 No Further Action At This Time ("NFAATT") Reports, showing excavation dimensions at the EBIA, and pre-Katrina digital image models ("DIMs") taken from the IPET website, showing EBIA elevations. The spreadsheet does not include any analyses or independent data; indeed, Dr. Marr could have reviewed the NFAATT Reports and IPET DIMs without the spreadsheet and come up with the same information. Moreover, all of the NFAATT Reports and IPET DIMs were produced to the Plaintiffs during discovery.[4]

On a related note, Plaintiffs complain that their examination of the Defendants' work is somehow hindered because the "Defendants have produced information generated from the GIS model, but never the GIS model itself (i.e., their set of underlying data)," including "illustrations and screenshots (such as the plan views and site geometry illustrations appended to expert reports)."[5] *First*, this is a wholly inaccurate description of the database. The GIS database and the "set of underlying data" that populates the database are two different things entirely. More importantly, all of the "underlying data" from the database that the Defendants' experts considered was produced, including the source material that supports the "illustrations and screenshots" from the experts' reports. *Second*, and incredibly, the Plaintiffs created their own "illustrations and screenshots" in connection with Dr. Robert Bea's testimony—the now

---

[3] Memo. in Support of Mtn. to Exclude or Order Production of GIS Model at 1-3 (Rec. Doc. 20950-1)

[4] Plaintiffs make much of Dr. Silva-Tulla's testimony that the spreadsheet was "exported" from the GIS database. *Id.* at 2 n.4 & 6. But Dr. Silva-Tulla's expert team could have produced the same spreadsheet by pulling the information directly from the NFAATT Reports and IPET DIMs and manually entering it into a Microsoft Excel spreadsheet or similar file. "Exporting" the information directly from the GIS database simply expedited the data-entry process.

[5] *Id.* at 5-6.

stricken "Swiss Cheese Graphics"—but the Plaintiffs have *never* produced the "GIS model" that they used to generate those images, as they now insist the Defendants do with their own GIS database.[6] Their hypocrisy knows no bounds.

Finally, Plaintiffs cite the Defendants' demand for the analyses underlying Dr. Bea's Sherman Island Study as a situation "analogous" to their request for the Defendants' GIS database.[7] This is comparing apples to oranges. The modeling files and computer runs that make up the Sherman Island analyses are no different than the files that make up the flow analyses that were performed by every party's expert in this case. Those seepage and stability computer files were produced by the parties.[8] The GIS database, by contrast, is not an "analysis" at all, but rather a repository of information. If Plaintiffs truly wish to test the "validity, completeness" and "coherence" of the Defendants' GIS graphics, they will consult the data that actually underlies the graphics—the myriad reliance documents that are contained in the GIS model, *all of which have been produced.*

Simply put, like the Plaintiffs' own "GIS model," which they have not produced in connection with their own Rule 26(a)(2) expert disclosures, the Defendants' GIS database was

---

[6] Just days ago, Plaintiffs submitted a supplement to the "Swiss Cheese Graphics" and a host of purported underlying materials under the guise of "summary evidence." Notice of Intent to Introduce Summ. Evidence (Rec. Doc. 20971). Those graphics and related materials were submitted in direct violation of this Court's Order and Reasons of June 29, 2012, and they should be stricken in their entirety, as explained in WGI's Opposition to Plaintiffs' Notice of Intent to Introduce Summary Evidence filed concurrently with this brief.

[7] Memo. in Support of Mtn. to Exclude or Order Production of GIS Model at 6 (Rec. Doc. 20950-1).

[8] Of course, the 3D seepage analyses regarding the EBIA breaches that Dr. Bea and Mr. Cobos-Roa performed before this case, although relevant to Dr. Bea's expert opinions, were *not* produced. WGI has filed a separate motion to exclude any results from these "missing" analyses.

not considered to form the Defendants' experts' opinions in this case and therefore is not subject to Rule 26.[9]

B.  **Plaintiffs' Request to Exclude Evidence Related to the GIS Model and Their Request to Compel Production of the GIS Model are Improper and Should be Denied.**

Because the Defendants' GIS database was not "relied upon" in this case, Plaintiffs' request to strike evidence relating to the database has no legal basis and should be denied. Likewise, Plaintiffs' alternative request for an order compelling production of the GIS database is untimely and should not be granted by this Court.

1.  **Plaintiffs' Motion to Exclude Evidence Has No Support in Law.**

It is not clear exactly what Plaintiffs seek to exclude—"defense expert testimony that relies on Defendants' GIS model," the "graphics (demonstrative aids or substantive evidence) generated from Defendants' GIS model," or both.[10] Regardless, Plaintiffs have identified no legal basis for their motion. Defendants assume that Plaintiffs are relying on Federal Rule of Civil Procedure 37(c)(1), which allows for the exclusion of evidence where "a party fails to

---

[9] Plaintiffs claim that they are only now seeking production of the GIS database because "Defendants apparently updated their GIS model with information produced by the USA in June, prompting the submission of several supplemental and revised reports by defense experts: Silva-Tulla, Dalrymple, Sykora, and Marr." Memo. in Support of Mtn. to Exclude or Order Production of GIS Model at 6 n.17 (Rec. Doc. 20950-1). This is a red herring. The information produced by the Government was properly disclosed to the Plaintiffs, and it does not change any of the experts' opinions in this case. The supplemental reports filed by Drs. Silva-Tulla, Dalrymple, Sykora and Marr make that very clear. Futher, the GIS database was "updated" only to the extent that the new information was added to all of the other underlying materials that are stored in the database, and the graphics appended to the experts' reports were properly amended to reflect the new information. All of those graphics were also produced.

[10] Mtn. in Support of Mtn. to Exclude or Order Production of GIS Model at 1 (Rec. Doc. 20950); Memo. in Support of Mtn. to Exclude or Order Production of GIS Model at 1, 7 (Rec. Doc. 20950-1).

provide information or identify a witness pursuant to Rule 26(a)." *Id.*; *see Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir.1996)  But WGI was not obligated to produce Dr. Silva-Tulla's GIS database pursuant to the Rule 26 expert witness disclosure requirements.  Therefore, Rule 37(c)(1) does not apply, and it provides no support for Plaintiffs' motion.

Defendants are aware of no other rule or law that could be used to justify Plaintiff's motion to exclude evidence related to the GIS database.  As such, Plaintiffs' motion should be denied.

### 2. Plaintiffs' Alternative Motion to Compel Production is Untimely and Therefore Should Not Be Granted.

Plaintiffs' demand for production of the GIS database comes well after the April 20, 2012, close of discovery in this case—in fact, just weeks before trial—and there is no prior discovery request or other disclosure obligation related to the GIS database pending that the Defendants' have failed to meet.  *See* Fed. R. Civ. P. 37(a)(3) (allowing for a motion to compel where a party fails to make a disclosure pursuant to Rule 26(a), to compel a response to a discovery request made by the moving party, or to compel disclosure related to a deposition). For those reasons alone, Plaintiffs' motion to compel should be denied.

At its discretion, this Court may amend its scheduling order and grant Plaintiffs' untimely production request only upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4).  To determine whether Plaintiffs have provided good cause to seek discovery beyond the deadline set in the scheduling order, four factors are considered: (1) the party's explanation for the untimely conduct; (2) the importance of the requested untimely action; (3) the potential prejudice in allowing the untimely conduct; and (4) the availability of a continuance to cure such prejudice. *Jackson v. Wilson Welding Service, Inc.*  2012 WL 14265, *1 (E.D. La. Jan. 4, 2012) (citing *S & W Enters., LLC v. S. Trust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir.2003)).

6

Courts have also considered other "good cause" factors within the specific context of an untimely motion to compel, including the length of time since the expiration of the discovery deadline; the length of time that the moving party has known about the discovery; whether the discovery deadline has been extended; whether dispositive motions have been scheduled or filed; the age of the case; and disruption of the court's schedule. *Rollins v. St. Jude Medical, Inc.*, 2010 WL 1751822, *2 (W.D. La. Apr. 28, 2010) (citing *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 398 (N.D. Tex. 2006)).

Plaintiffs cannot show good cause in this case. *First*, they have provided no explanation for their tardy discovery request, and no reasonable explanation exists. *Second*, Plaintiffs' request for the GIS database is not important in the least. All of the underlying information from the database that was relied on by Defendants' experts has already been produced. The database itself adds nothing. *Third*, requiring that anything be produced at this late stage would be prejudicial to the Defendants, let alone a "GIS model" that the Plaintiffs are not even sure how to describe or explain. *Fourth*, considering this Court's insistence that deadlines not be changed, there is no availability for a continuance in response to a production request made on the eve of trial.

The specific motion to compel factors also weigh in favor of this Court finding no good cause. Almost five months have passed since the close of discovery. Considering that Plaintiffs possess their own "GIS model," as well as all of the underlying materials that were available to create that database, there is no reason why they would not have been aware of Dr. Silva-Tulla's GIS database such that a discovery request could have been made much sooner. With the age of this case, the now well-expired deadlines leading into trial, and the extent to which requiring production of the GIS database would completely disrupt the Court's pre-trial

7

schedule, there is no good reason why this Court should compel production in response to the Plaintiffs' request.

Good cause simply does not exist to justify modifying the discovery deadlines in this case under Rule 16(b)(4) and granting Plaintiffs' untimely request for discovery. As with the motion to exclude, then, Plaintiffs' motion to compel production of Defendants' "GIS model" should be denied.

## II. CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiffs' Motion in Limine to Preclude Testimony Based on Unproduced GIS Model or, in the Alternative, to Compel Production of the Model to Plaintiffs.

Dated: August 17, 2012

Respectfully submitted,

/s/ William D. Treeby
William D. Treeby, Bar No. 12901
James C. Gulotta, Jr., Bar No. 6590
Heather S. Lonian, Bar No. 29956
STONE PIGMAN WALTHER WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361

Adrian Wager-Zito
Debra S. Clayman
Christopher N. Thatch
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: 1-202-879-3939
Fax: 1-202-626-1700

*Attorneys for Defendant
Washington Group International, Inc.*

8

1102361v1

## CERTIFICATE OF SERVICE

I hereby certify that, on August 17, 2012, I served a true copy of the foregoing upon all parties via Electronic Court Filing ("ECF"). Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic-filing system.

                                                 */s/ William D. Treeby*
                                                 William D. Treeby

1102361v1