**ALVIN L. LIVERS, SR.**                                             **September 14, 2011**

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES   CIVIL ACTION
CONSOLIDATED LITIGATION         NO. 05-4182 K2
                JUDGE DUVAL
PERTAINS TO MRGO         MAG. WILKINSON
FILED IN: 05-4181, 05-4182, 05-5237, 05-6073,
     05-6314, 05-6324, 05-6327, 05-6359,
     06-0225, 06-0886, 06-1885, 06-2152,
     06-2278, 06-2287, 06-2824, 06-4024,
     06-4065, 06-4066, 06-4389, 06-4634,
     06-4931, 06-5032, 06-5155, 06-5159,
     06-5156, 06-5162, 06-5260, 06-5771,
     06-5786, 06-5937, 07-0206, 07-0621,
     07-1073, 07-1271, 07-1285

                * * *

     Deposition of ALVIN L. LIVERS, SR.,
given at the offices of Bruno & Bruno, 855
Baronne Street, New Orleans, Louisiana 70113,
on September 14th, 2011.
REPORTED BY:
     JOSEPH A. FAIRBANKS, JR., CCR, RPR
     CERTIFIED COURT REPORTER #75005

Page 2

1  APPEARANCES:
2
3  REPRESENTING THE PLAINTIFFS:
4      LAW OFFICE OF GERALD N. ANDRY, JR.
5      (BY: GERALD N. ANDRY, JR., ESQUIRE)
6      710 Carondelet Street
7      New Orleans, Louisiana 70130
8      504-581-4334
9  - AND -
10     DEGRAVELLES, PALMINTIER, HOLTHAUS &
11     FRUGE, L.L.P.
12     (BY: JOSHUA M. PALMINTIER, ESQUIRE)
13     618 Main Street
14     Baton Rouge, Louisiana 70801-1910
15     225-344-3735
16 - AND -
17     ANDRY LAW GROUP, LLC
18     (BY: MICHELLE PURCHNER, ESQUIRE)
19     610 Baronne Street
20     New Orleans, Louisiana 70113
21     504-586-8899

Page 3

1  REPRESENTING THE UNITED STATES OF AMERICA:
2      U.S. DEPARTMENT OF JUSTICE
3      (BY: JAMES F. MCCONNON, JR., ESQUIRE)
4      Torts Branch, Civil Division
5      P.O. Box 888
6      Benjamin Franklin Station
7      Washington, D.C. 20044
8      202-616-4289
9
10 REPRESENTING WASHINGTON GROUP INTERNATIONAL,
11     INC.:
12     JONES DAY
13     (BY: CHRIS FARRELL, ESQUIRE)
14     51 Louisiana Avenue, N.W.
15     Washington, D.C. 20001-2113
16     202-879-4645
17 - and -
18     STONE PIGMAN WALTHER WITTMANN, L.L.C.
19     (BY: WILLIAM D. TREEBY, ESQUIRE)
20     546 Carondelet Street
21     New Orleans, Louisiana 70130
22     504-581-3200
23
24 VIDEOGRAPHER: GEORGETTE RINKUS (HART VIDEO)
25 ALSO PRESENT: BARBARA LIVERS

Page 4

          E X A M I N A T I O N   I N D E X

EXAMINATION BY:                        PAGE
MR. FARRELL ................................8
MR. MCCONNON ..............................247
MR. ANDRY   ...............................257

          E X H I B I T   I N D E X

EXHIBIT NO.                           PAGE
EXHIBIT 1    ..............................37
EXHIBIT 2    ..............................39
EXHIBIT 3    ..............................56
EXHIBIT 4    ..............................57
EXHIBIT 5    ..............................71
EXHIBIT 6    ..............................72
EXHIBIT 7    ..............................85
EXHIBIT 8    .............................146
EXHIBIT 9    .............................160
EXHIBIT 10   .............................174
EXHIBIT 11   .............................217
EXHIBIT 12   .............................222
EXHIBIT 13   .............................225
EXHIBIT 14   .............................226
EXHIBIT 15   .............................227

Page 233

1   A. Not for North Claiborne.
2   Q. Not for North Claiborne?
3   A. No.
4   Q. So it's not your property?
5   A. No.
6   Q. Okay. All right. Mr. Livers, now I
7   want to talk briefly about the Road Home.
8       MR. ANDRY:
9           You have this one, the 2/26/07?
10      MR. MCCONNON:
11          Can I see it?
12      MR. ANDRY:
13          Sure. (Tendering.) I thought
14  that's what you were handing me. It's
15  a duplicate of the other one except
16  it's not stamped, it's signed.
17      MR. MCCONNON:
18          I've never seen this one. Was
19  this actually filed?
20      MR. ANDRY:
21          I think so.
22      MR. MCCONNON:
23          I ran the Army's claims operation
24  for Hurricane Katrina, I had our staff
25  checked twice, this doesn't show up in

Page 234

1   the database.
2       MR. ANDRY:
3           It may not. It came from this
4   office -- from Bruno and Bruno. We
5   asked earlier to review the SF-95s,
6   and.
7       MR. MCCONNON:
8           Yeah, well, we produced --
9       MR. ANDRY:
10          The ones that were actually
11  failed.
12      MR. MCCONNON:
13          Yeah, we produced the ones to
14  Plaintiffs' counsel, and all of them
15  would have Bates stamp numbers at the
16  bottom with this information
17  confidential. This has none of that,
18  so I'm not sure where this came from.
19      MR. ANDRY:
20          That's fine.
21      MR. MCCONNON:
22          It doesn't matter. We've got the
23  claim in the file, but --
24      MR. ANDRY:
25          It's the same number. It's just

Page 235

1   a different date.
2       MR. MCCONNON:
3           Yeah. I know. I've not seen
4   that. So.
5       MR. ANDRY:
6           That's fine.
7   EXAMINATION BY MR. FARRELL:
8   Q. All right. Mr. Livers, like I said, I
9   want to ask you just a few questions about the
10  Road Home now.
11      Can you tell me what the Road Home
12  was? Or is?
13  A. What? Can you speak up little louder?
14  Q. Sure. What is Road Home?
15  A. It's supposed to be a company that
16  help you when you're in a disaster.
17  Q. Okay. After Hurricane Katrina, you
18  applied for assistance from Road Home; correct?
19  A. Correct.
20  Q. Okay. And did you get money from Road
21  Home?
22  A. Yes.
23  Q. And how much money did you get?
24  A. Um -- a ballpark figure? I'll get
25  close. I think it was 120,000 maybe 800.

Page 236

1   Q. I want to show you some documents
2   about that, too.
3   A. Okay.
4   Q. Do you know how -- before I show you
5   that, do you know how Road Home came up with
6   the dollar amounts, the money they were going
7   to give people who asked them for assistance?
8   A. I have no idea.
9   Q. Okay, Mr. Livers, I'm going to show
10  you now a document that's been marked as
11  Exhibit 18. (Tendering.) There you go.
12          (EXHIBIT 18 was marked for
13  identification and is attached hereto.)
14  A. No. It's less than what I said.
15  EXAMINATION BY MR. FARRELL:
16  Q. No, that's all right. We're going to
17  walk through all this in a moment.
18  A. Uh-huh.
19  Q. So have you ever seen this document
20  before?
21  A. This?
22  Q. Yes.
23  A. Yes, I have.
24  Q. You have? And what is it?
25  A. It's a calculation sheet.

Page 237

1   Q.  Okay.  And it's calculation sheet by
2   the Road Home?
3   A.  Yes.  Pre-storm value.  Whatever.
4   Q.  Okay.  So let's start there.
5   Pre-storm value.  It says that the Road Home
6   has the pre-storm value for your property at
7   4924 St. Claude at $95,000.  Is that what it
8   says?
9   A.  That's what it says.
10  Q.  All right.  And it looks like it says
11  the estimated cost of damage --
12  A.  Again, what I just said?
13  Q.  Right.  312 --
14  A.  -- 12840.
15  Q.  And that's what you put on the revised
16  Form 95?
17  A.  The Road Home.  The Road Home put this
18  on here.  They the one went out there and
19  evaluated the damage.
20  Q.  Right.  I understand.  But you had
21  mentioned earlier in the Form 95s that we were
22  looking at, these forms --
23  A.  Uh-huh.
24  Q.  -- there was that amended form that
25  had the 312 number on it.  It's Exhibit 16.

Page 238

1   A.  That's not right.
2   Q.  So that -- as you said, that's where
3   you got the number from.
4   A.  That's where I got the number from.
5   Q.  Okay.  Great.  Then it says, estimated
6   elevation cost.  Do you know what that meant?
7   A.  That meant if you elevated your home.
8   Q.  Okay.  So they would give you $35,000
9   to elevate your home?
10  A.  Yes.
11  Q.  Okay.  Or that's how much it would
12  cost, I should say?
13  A.  That's what they say.
14  Q.  Okay.  And then it goes through Other
15  Compensation.
16  A.  Uh-huh.
17  Q.  First is FEMA IA, $10,500.
18  A.  Uh-huh.
19  Q.  Is that the money that you got from
20  FEMA --
21  A.  Correct.
22  Q.  -- $10,000?
23  A.  Correct.
24  Q.  And then private insurance.  Like you
25  said a moment ago, $13,947?  Correct?

Page 239

1   A.  That's what it says.
2   Q.  All right.  And then it looks like
3   Road Home gives you three options.  Can you
4   tell me what those are?  What that --
5   A.  What the three options it is?
6   Q.  Yeah.
7   A.  I can remember what they is, I don't
8   see them on this paper here.  I remember.
9   Q.  Tell me what they are.  You don't need
10  to read them off the paper.
11  A.  Um -- Option 1, I think it was that
12  they would repair your house if you stayed in
13  New Orleans.
14  Q.  Okay.  So the first option is you can
15  stay in the house and they would give you money
16  to fix it.
17  A.  Fix the house.  Repair it.
18  Q.  And what's the second option?
19  A.  Option 2 was an option that you would,
20  um -- that you can -- the Road Home would buy
21  your home, and -- long as you buy another home
22  in the state of Louisiana.
23  Q.  Okay.  So the Option 2, sell your home
24  to Road Home and buy another house in
25  Louisiana.

Page 240

1   A.  Right.
2   Q.  That's exactly what you said.
3       And what's the third option?
4   A.  Third option, if you choose to sell
5   the Road Home your home and move to another
6   state, you would get I think $3500 -- $35,000.
7   Q.  Okay.  What option did you and your
8   wife choose when you applied to Road Home?
9   A.  2.
10  Q.  2.  And that's the sell your home to
11  Road Home and stay in Louisiana.
12  A.  Definitely.
13  Q.  Okay.  Do you remember when you did
14  that, when you made that choice?
15  A.  When I made that choice?
16  Q.  Uh-huh.
17  A.  I can't remember the exact date when I
18  made that choice.
19  Q.  That's okay.  I've got a document that
20  might be able to help you.
21  A.  Okay.
22  Q.  Let me give you a document that I'm
23  marking as Exhibit 19.  Do you recognize this
24  document, Mr. Livers? (Tendering.)
25      (EXHIBIT 19 was marked for

Page 241

```
 1   identification and is attached hereto.)
 2      A.  I remember this document, but
 3   thoroughly reading it, with so much -- it has
 4   so much literature in my form, but I do
 5   remember it being stated just what I stated, if
 6   you stay in the -- if you stay in your own home
 7   for a certain length of time -- yeah, I can
 8   remember this.
 9   EXAMINATION BY MR. FARRELL:
10      Q.  Okay.  And so like you said, now, it
11   says in this Box Option 2, relocate as a
12   homeowner.  There's a check box in that.
13      A.  Uh-huh.
14      Q.  All right.
15      A.  This check was saying elevation is not
16   required.  That's what they got a checkmark in
17   that box.  Elevation is not required for this
18   property.
19      Q.  I see that.  But a little further down
20   there's some initials and then check box and
21   Option 2, relocate as a homeowner.
22      A.  Okay.
23      Q.  Okay?  And then turn to the next page.
24   You can see that there are signatures on that
25   document.
```

Page 242

```
 1      A.  That's my signature.
 2      Q.  Okay.  And looks like you made that
 3   choice on April 18 th, 2007?  You signed the
 4   document?
 5      A.  Yeah.
 6      Q.  Is that right?
 7      A.  That's when I signed the document.
 8      Q.  Okay.  Let me just break this out,
 9   too:  It says, Option 2, relocate as a
10   homeowner.  There's a compensation grant.  You
11   see that?  It's really small.  You might want
12   to put your glasses back on.  In fact --
13      A.  Yes.
14      Q.  And it's on this other Exhibit 18,
15   also.  And it says compensation grant, $70,552?
16      A.  Wait, wait, wait, wait, wait.  Where
17   you at?
18      Q.  The writing is really small.  Let's
19   try here on Exhibit 18 instead.
20      A.  Okay.
21      Q.  Under Option 2, Relocate, there's a
22   compensation grant amount, $70,552.07?
23      A.  So what are you asking me?
24      Q.  First off, is that what it says for
25   the compensation grant amount?
```

Page 243

```
 1      A.  What is a compensation grant?
 2      Q.  Um -- let me -- I'm just going to
 3   leave that.  So you --
 4         MR. ANDRY:
 5            We'll stipulate the document says
 6         what it says.
 7         MR. FARRELL:
 8            Yeah.  That's fine.  We can do
 9         that.
10   EXAMINATION BY MR. FARRELL:
11      Q.  The document also includes a loan.  It
12   says under that, affordable loan calculation,
13   $50,000?
14      A.  Correct.
15      Q.  What's your understanding of that
16   loan?
17      A.  My understanding of that loan?
18      Q.  Uh-huh.
19      A.  The understanding of that loan was
20   when -- to purchase another home in the state
21   of Louisiana.
22      Q.  Uh-huh.
23      A.  I had to stay in that home for three
24   years or five years, and stipulate to -- I mean
25   give them literature on my Act of Sale,
```

Page 244

```
 1   homeowner's insurance, flood insurance.
 2   That's -- that's -- that's -- and after these
 3   provisions are met, then they would exsolve
 4   [sic] me.
 5      Q.  Okay.  You mentioned the documents of
 6   the sale of your house.  Let me just show
 7   you -- okay.  Mr. Livers, this one is Exhibit
 8   Number 20.  (Tendering.)
 9         (EXHIBIT 20 was marked for
10   identification and is attached hereto.)
11      A.  Uh-huh.
12   EXAMINATION BY MR. FARRELL:
13      Q.  I would ask you to look it over and
14   tell me if you recognize it.
15         MR. ANDRY:
16            The writing is really small.  Can
17         you just tell him maybe what it
18         purports to be?
19         MR. FARRELL:
20            Sure.  Certainly.
21   EXAMINATION BY MR. FARRELL:
22      Q.  This is document the says Act of Cash
23   Sale, Barbara Deplush Livers and Alvin
24   Livers --
25      A.  Uh-huh.
```

Page 261

```
 1   long I got.  But I'll tell you what, I really
 2   miss -- really miss my friends.  And most of
 3   all, you know, you couldn't put him down as no
 4   human being, but my dog.  And it really -- it
 5   really hurt me.  It really hurted me to know
 6   that I couldn't take him.  I couldn't take him.
 7   And I tried.  I tried.  But much as he loved
 8   me, he would have bit me if I tried to get him
 9   in that van.  He wouldn't get in that van.  I
10   miss him.  I miss him for so -- every time I
11   plant something where I'm at now, I think about
12   him, because he would let me plant whatever I
13   want, and the next day he be done dug it up and
14   run behind the shed and peep out because he
15   know I'm coming behind him for what he done.
16        That's all.
17        Q.  Mr. Livers, do you have a mortgage on
18   your house now?  I know you said earlier that
19   you paid off the mortgage on your house on
20   St. Claude.
21        A.  No.  I had to take -- I had to take --
22   whatever they gave me, I took some of my
23   savings, because I had to pay it -- I had to
24   pay it off.  I'm at an age I can't pay -- I
25   can't go for no thirty years mortgage.  I ain't
```

Page 262

```
 1   got that kind of time left.  So I took whatever
 2   they gave me I took and put the rest with and
 3   paid my house off -- paid the house off that
 4   I'm living in now.  Because I couldn't afford
 5   no 30-year mortgage and 20 years -- not even 20
 6   years.  So I just paid -- I just took that,
 7   what I had left in my savings, and I just took
 8   that, and when I did, I paid it off.
 9        I even had -- the lady at the bank was
10   telling me about some -- how you get money if
11   you -- you know, for escrow and all the kind of
12   stuff to not pay it.  And I told her, I can
13   probably do that.  Oh, I'm sorry.  I done got
14   too emotional.
15        Q.  You're still hooked up, and they may
16   have a couple of follow-ups.
17           (Off the record.)
18
```

Page 263

```
 1                WITNESS' CERTIFICATE
 2
 3        I, ALVIN L. LIVERS, SR., do hereby
 4   certify that the foregoing testimony was given
 5   by me, and that the transcription of said
 6   testimony, with corrections and/or changes, if
 7   any, is true and correct as given by me on the
 8   aforementioned date.
 9
10   _____    _____
11   DATE SIGNED       ALVIN L. LIVERS, SR.
12
13   _____ Signed with corrections as noted.
14
15   _____ Signed with no corrections noted.
16
...
25   DATE TAKEN:  September 14th, 2011
```

Page 264

```
 1                REPORTER'S CERTIFICATE
 2        I, JOSEPH A. FAIRBANKS, JR., CCR, RPR,
 3   Certified Court Reporter in and for the State
 4   of Louisiana, do hereby certify that the
 5   aforementioned witness, after having been first
 6   duly sworn by me to testify to the truth, did
 7   testify as hereinabove set forth;
 8        That said deposition was taken by me
 9   in computer shorthand and thereafter
10   transcribed under my supervision, and is a true
11   and correct transcription to the best of my
12   ability and understanding.
13        I further certify that I am not of
14   counsel, nor related to counsel or the parties
15   hereto, and am in no way interested in the
16   result of said cause.
...
23          _____
24          JOSEPH A. FAIRBANKS, JR., CCR, RPR
25          CERTIFIED COURT REPORTER #75005
```