# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| | § § | |
| PERTAINS TO: | § § | |
| MRGO *Armstrong*, No. 10-866 | § § § § | |

## DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' NOTICE OF INTENT TO INTRODUCE SUMMARY EVIDENCE

Defendant Washington Group International, Inc. ("WGI") respectfully submits this memorandum in support of its motion to exclude Plaintiffs' Notice of Intent to Introduce so-called "Summary Evidence."[1]  After the Court struck Dr. Robert Bea's then-incomplete "Swiss Cheese Graphics" and related opinions from his April 3, 2012, Rebuttal Report, Plaintiffs now make a second attempt to proffer a new version of this very same evidence under the guise of a Rule 1006 "summary."  By submitting this "summary evidence," Plaintiffs have deliberately disobeyed a direct Order of this Court, and they have violated (once again) the expert disclosure requirements under Rule 26.  The Notice of Intent to Introduce Summary Evidence should be stricken in its entirety, and this Court should enter an Order prohibiting Plaintiffs from relying on the information contained therein at trial.

## I.      BACKGROUND

As the Court is well aware, in his April 3, 2012, Rebuttal Report, Dr. Bea introduced for the first time a "3D GIS graphic model," also known as the "EBIA Swiss Cheese

---

[1]      Notice of Intent to Introduce Summ. Evid. (Rec. Doc. 20971).

Graphics," to "show depths of excavations relative to the local ground elevation associated with the excavation."[2] Using his "Swiss Cheese Graphics," Dr. Bea intended to opine that some "number of these excavations would have exacerbated the hydraulic conductivity pressure 'connections' with the underlying saturated, high water content swamp-marsh deposits."[3] The "Swiss Cheese Graphics" contained in his Rebuttal Report, however, did not show the depths of any excavations in the EBIA.[4]

Moreover, when WGI tried during discovery to ascertain which excavations, in Dr. Bea's opinion, "exacerbated the hydraulic conductivity pressure connections" in the EBIA, Dr. Bea testified, simply, "[a]ny excavation that was deep enough and poorly backfilled."[5] Truth be told, Dr. Bea could not know which excavations were "deep enough" without performing "a correlation for you to identify specific excavations, then connect that to their depth, then correlate that with the contact elevation for the varied swamp-marsh deposit, and you could produce a table that would portray that information."[6] As of his rebuttal deposition on April 16, 2012, he had not done that correlation.[7] Nor had he identified in the "Swiss Cheese Graphics" all of the excavations he claimed were "poorly backfilled."[8] All of that information, Plaintiffs'

---

[2] Rebuttal Report of Dr. Robert Bea, April 3, 2012, at 4 ¶ 7 & Figures 1-3 ("Bea Rebuttal Report") Dr. Bea's Reports were provided to the Court pursuant to Court Order on August 10, 2012. This memorandum cites to the Bea Rebuttal Report by reference.

[3] *Id.*

[4] WGI PowerPoint Slide No. 14, Mtn. to Strike Hearing, June 28, 2012 (quoting Deposition of Dr. Robert Bea, April 16, 2012, at 72:24-76:9), attached hereto as Exhibit 1.

[5] Deposition of Dr. Robert Bea, April 16, 2012, at 85:7-16, excerpts attached hereto as Exhibit 2.

[6] *Id.* at 87:1-15.

[7] *Id.* at 87:14-15.

[8] *Id.* at 92:5-13 ("To provide the level of detail [regarding backfill] that you're requesting, I'd have to produce this correlation that you are asking about.").

1102364v1

counsel claimed, would be produced by the time of trial because it was still incomplete, and it was just "demonstrative evidence."[9]

The Defendants moved to strike portions of Dr. Bea's "Rebuttal" Report relating to the "Swiss Cheese Graphics" because those portions were not proper rebuttal or supplementation under Rule 26.[10]  On June 28, 2012, this Court heard arguments on Defendants' motions to strike, including arguments concerning the propriety of the Plaintiffs' plan to file an untimely table showing correlations of specific excavations, depths and backfill with citations to source materials, as Dr. Bea offered to do in his deposition.  The Court specifically asked WGI:

> The Court:  "So is it your anticipation, Mr. Treeby, that there's ostensibly more to come?"
> Mr. Treeby:  "Absolutely.  That's what's promised.  We'll see that."
> The Court:  "When?"
> Mr. Treeby:  "On the eve of trial, Mr. Joanen told me. . . ."
> The Court: "That's not going to happen . . . Well, not on the eve of trial, that's not going to happen."[11]

The Court similarly questioned Plaintiffs as to whether they actually intended to produce this "correlation" or "table" to supplement the incomplete "Swiss Cheese Graphics" in Dr. Bea's "Rebuttal" Report, and Plaintiffs' counsel acknowledged that "yes . . . there is more to come."[12]  The Court then stated:  "Then it might not be coming. . . .You understand I've said I don't want anything else."[13]

---

[9]     *Id.* at 95:9-96:4.

[10]    WGI's Mtn. to Strike Dr. Robert Bea's Rebuttal Report (Rec. Doc. 20764); U.S.'s Mtn. to Strike Dr. Robert Bea's Rebuttal Report (Rec. Doc. 20759).

[11]    Mtn. to Strike Hearing Tr., June 28, 2012, at 29 (Rec. Doc. 20903).

[12]    *Id.* at 71; *see also id.* at 63, 77, 85-86.

[13]    *Id.* at 72.  *See* Order, Apr. 11, 2012, at 2 (Rec. Doc. 20775) ("The Court [will] strike immediately any further reports filed by Dr. Bea as time barred.").

3

The very next day, on June 29, 2012, this Court issued an Order striking Dr. Bea's "Swiss Cheese Graphics."[14] According to the Court:

> During oral argument, the Court learned that the underlying materials for [the Swiss Cheese Graphics] have not been provided to the defendants.  Moreover, and more disturbingly, the actual model runs have not been provided, if not even completed, and the necessary "supplemental" report to the Rebuttal Report has not been prepared for the conclusions reached in the "Swiss Cheese Demonstrative."  Indeed, in the Rebuttal Report itself, Dr. Bea opines, "Due to the Court's scheduling order, and the very tight time constraints associated with writing his Rebuttal Report, not all pertinent data sources could be incorporated into the 3D GIS graphic models."  (Doc. 20764-2 Exh 1 at 5 of 145).  In essence, then, it appears to the Court that this portion of the "Rebuttal Report" is in essence a place holder for a more precise, if not actual report to be produced according to counsel within the next 10 to 14 days.  As such, the Court finds that the material concerning the 3D GIS graphic models is not proper rebuttal in that it is not even complete.  Filling a "place holder" in lieu of a properly completed report cannot be accepted.  In essence, the true Rebuttal Report concerning 3D Graphics has yet to be finalized or produced.[15]

The Court further held that it would not permit the "Swiss Cheese Graphics," which were still a "work in progress," to be submitted as a supplemental expert report.[16]  According to the Court, "the basic materials are not 'newly discovered.'  . . . There is simply no excuse that can justify the unraveling of the discovery schedule as contemplated and the extreme prejudice that would be imposed upon defendants."[17]

---

[14]   Order and Reasons, June 29, 2012 (Rec. Doc. 20890).

[15]   *Id.* at 3.

[16]   *Id.* at 4.

[17]   *Id.*

1102364v1

## II.    ARGUMENT

### A.    Plaintiffs Have Submitted New "Swiss Cheese Graphics" for Dr. Bea Under the Guise of "Summary Evidence."

On August 10, 2012, Defendants received Plaintiffs' purported Notice of Intent to Introduce Summary Evidence; the so-called "summary evidence" was provided on August 13.[18] Despite its title, this submission is nothing more than an expanded version of the previously stricken "Swiss Cheese Graphics," along with Dr. Bea's long-promised "correlation" table.

Exhibit A-1 to the Notice of Summary Evidence is a "Major WGI EBIA-IHNC Excavation Activities Summary Table."[19]   It includes 151 rows of different excavations performed in the EBIA with columns identifying the maximum depth of the excavation, the average depth of the excavation, the type of material used as backfill, the method of compaction used, and supporting document references, such as daily QARs, NFAATT Reports and other WGI and Government-produced field records.[20]   The maximum depths are color coded to correspond to two sets of graphics overlaid on aerial images of Boland Marine—attached to the "notice" as Exhibits B-1 through B-16[21]—and Saucer Marine—attached as Exhibits C-1 through C-16.[22] These graphics identify locations of specific excavations, excavation depths, areas of "predominantly sand backfill," and piling voids—precisely the information that Figures 1-3 of

---

[18]    Notice of Intent to Introduce Summ. Evid. (Rec. Doc. 20971); Notice of Manual Attachment (Rec. Doc. 20971-1); Manual Attachment, Exs. A through D (received Aug. 13, 2012).

[19]    Manual Attachment, Ex. A-1.

[20]    *Id.* Many of the rows are partially blank, so it is unclear whether in fact this is a final version of the Table or whether there is still more to come before or during trial.

[21]    *Id.* at Exs. B-1 through B-16.

[22]    *Id.* at Exs. C-1 through C-16.

1102364v1

Dr. Bea's April 3 Rebuttal Report were supposed to contain.[23]  Plaintiffs' Notice also attaches a chart of WGI photographs as Exhibit D, which appear to "link" somehow to Dr. Bea's new graphics, but there is no explanation of the "link" or any other correlation provided in the Plaintiffs' filing.[24]  Finally, Exhibits A, B and C are lists of the documents that Plaintiffs allege support the Exhibit A-1 "Major WGI EBIA-IHNC Excavation Activities Summary Table," as well as the Boland and Saucer Marine excavations that are purportedly reflected in the new graphics.[25]

In essence, Plaintiffs' Notice of Intent to Introduce Summary Evidence—produced barely a month before trial begins—contains exactly what Dr. Bea claimed he contemplated but failed to provide in the stricken portions of his Rebuttal Report, and precisely what Plaintiffs' counsel promised they would produce at a later date—before they received this Court's June 29 Order striking the "Swiss Cheese Graphics" in its entirety:

> Your Honor, this will also confirm that I made inquiry about the current status of the final revisions to the Swiss Cheese graphics.  It is my understanding that what the Court and opposing counsel have is "The Swiss Cheese Graphic" but that "Minimum Elevation" depths are being revised to reflect actual depths as opposed to the average depths contained in the NFAATT Reports.  Efforts are also being made to link each excavation area with the associated:  Photos, LiDar, Daily QAR Reports, GIS data and/or NFAATT Report (which will hopefully allow "hyperlinks" directly from the graphic to those underlying data sources).  These efforts are nearing completion and will be made available immediately upon receipt.[26]

---

[23]    Bea Rebuttal Report at 4 ¶ 7 & Figures 1-3.

[24]    *See* Manual Attachment, Ex. D.

[25]    *Id.* at Exs. A, B, C.

[26]    Lt. from E. C. Stevens, Jr. to Judge Duval, June 29, 2012, at 3-4, attached hereto as Exhibit 3.

1102364v1

There can be no question that Plaintiffs' recently-filed "summary evidence" consists of the very information that this Court previously struck from Dr. Bea's Rebuttal Report and has already determined would impose "extreme prejudice" on the Defendants."[27]

**B.      Plaintiffs' Notice of Intent to Introduce Summary Evidence Was Filed in Direct Violation of This Court's Order and Should Therefore Be Stricken.**

The Federal Rules of Civil Procedure grants this Court broad powers to enforce its own orders.  *Futurewei Technologies Inc. v. E. Oliver Capital Group, LLC*, 2012 WL 2462300, *2 (E.D. Tex. June 27, 2012) (citing Fed. R. Civ. P. 11, Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37); *see RLI Ins. Co. v. Shell Offshore, Inc.*, 2008 WL 504051, *1 (E.D. La. Feb. 21, 2008) ("Fed. R. Civ. P. 16(f) provides that a District Court may issue any just orders, including those authorized by Rule 37 if a party fails to obey a pretrial order.").  Pursuant to Rule 16(f), this Court, "[o]n motion or on its own . . . may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  Fed. R. Civ P.  16(f)(1)(C).  In the event a party fails to obey a discovery order, Rule 37(b) authorizes the Court to issue a variety of sanctions, including "striking pleadings in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(iii).

It is abundantly clear that, by filing the "notice of intent to introduce summary evidence" and its attachments, Plaintiffs have violated this Court's June 29, 2012, Order striking Dr. Bea's "Swiss Cheese Graphics" and related expert opinions.[28]  The Court initially disposed

---

[27]      Order and Reasons, June 29, 2012, at 4 (Rec. Doc. 20890).

[28]      In a similar Order, this Court declared that it will "strike immediately any further reports filed by Dr. Bea as time barred."  Order, Apr. 11, 2012, at 2 (Rec. Doc. 20775).  To the extent Plaintiffs' "notice of intent to introduce summary evidence" can properly be considered a supplemental "report" from Dr. Bea, it was submitted in direct violation of the Court's April 11 Order and should be stricken as a result.

1102364v1

of Dr. Bea's Graphics because they were not proper rebuttal or proper supplemental expert disclosures.[29]  That has not changed.  As the Court explained then, the "Swiss Cheese Graphics" were not timely or proper rebuttal because they were not even complete, and they were not a supplement because they are based solely on underlying information that has been available now for years.[30]  Had Dr. Bea correctly filed these same new and improved "Swiss Cheese Graphics" as a now third rebuttal report or even a supplemental report, surely they would have been rejected outright.  Plaintiffs cannot escape this Court's Order simply by repackaging Dr. Bea's "Swiss Cheese Graphics" as a "summary of evidence."

Notably, the Court also struck Dr. Bea's original "Swiss Cheese Graphics" and opinions on account of the "extreme prejudice" that would have been imposed on the Defendants had the "graphics" been permitted.[31]  That was almost two months ago.  Now, with mere weeks before trial and far more information from the Plaintiffs to sift through as a result of the new "graphics," that "extreme prejudice" is a reality.  Indeed, this "summary evidence" is ***the first time*** Plaintiffs have pointed to specific documents identifying what Dr. Bea contends are the maximum depths, locations and backfill of excavations in the EBIA.  Of course, without questioning Dr. Bea about his new "Swiss Cheese Graphics," it is still not clear which of the 151 holes (on all six sites in the EBIA) he claims contributed to the North and South breaches by "exacerbating the hydraulic conductivity pressure connections with the underlying swamp-marsh deposits," and why.  Now Defendants and their experts not only need time to review Plaintiffs' new submission, but as the Court recognized in June, Defendants may need to take additional

---

[29]    Order and Reasons, June 29, 2012, at 3-5 (Rec. Doc. 20890).

[30]    *Id.* at 4 (citing *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109-110 (D.D.C. 2005)).

[31]    *Id.*

1102364v1

depositions, and possibly file a supplement to their own experts' reports.[32]   Moreover, Defendants may need to reconsider their witness and exhibit lists, as well as their Proposed Findings of Facts, to address any new issues raised by these untimely graphics and correlations.

In its Order striking the original "Swiss Cheese Graphics," this Court acknowledged the "Pandora's box of prejudice . . . had these rebuttal materials been allowed into evidence."[33]  Plaintiffs' faux "summary of evidence" has opened that Pandora's Box of prejudice.  Their submission and its attachments must be stricken in their entirety.

**C.   Plaintiffs' Notice of Intent to Introduce Summary Evidence Also Violates Rule 26 Expert Disclosure Requirements and Must Be Excluded from Evidence at Trial Pursuant to Rule 37.**

Pursuant to Rule 26, an expert witness must provide "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as the "facts or data considered by the witness in forming his opinions."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  Rule 26 is meant to "eliminate the former process of 'trial by ambush,' and mandate full disclosure of relevant information necessary to evaluate the case or to prepare for trial at an early stage of the proceedings."  *Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).   Expert reports must be "'detailed and complete,'" to prevent "the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule*.*"  *Sierra Club*, 73 F.3d at 571 (quoting Fed. R. Civ. P. 26 advisory committee's notes).

Rule 37 mandates compliance with the Rule 26 expert disclosure requirements.  Indeed, if a party fails to provide such information, "the party is not allowed to use that

---

[32]    *Id.* at 4-5.

[33]    *Id.* at 5.

information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ Pr. 37(c)(1); *see Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 380 (5th Cir.1996); *Avondale Industries, Inc. v. Tyco Valves and Controls, Inc.,* 2003 WL 22723025, *2 (E.D. La. Nov. 18, 2003). This Court has examined four factors to determine whether the exclusion of expert testimony for failure to comply with Rule 26 is an appropriate sanction under Rule 37: (1) the party's explanation, if any, for its failure to comply with the Rule or the applicable scheduling order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witness's testimony. *Barrett*, 95 F.3d at 380; *Smith v. Progressive County Mut. Ins. Co.*, 2012 WL 702061, *3 (E.D. La. Mar. 1, 2012) (citing *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007)); *Avondale Industries*, 2003 WL 22723025, *2.

Plaintiffs are in clear violation of Rule 26 with their eleventh-hour Notice of Intent to Introduce Summary Evidence. As set forth above, the submission and its attachments are a brazen extension of Dr. Bea's stricken "Swiss Cheese Graphics" and therefore should have been produced with his expert report on February 3, 2012—more than six months ago. This is the very definition of "trial by ambush," and it is precisely the type of situation that the Rule 26 expert disclosure requirements—which "mandate full disclosure" at an "early stage of the proceedings"—were meant to address. *Beller*, 221 F.R.D. at 693; *Sierra Club*, 73 F.3d at 571.

Moreover, excluding the Notice of Summary Evidence and attachments in their entirety is a proper sanction under Rule 37. *First*, Plaintiffs have offered no explanation for their failure to file the submission within the Court's scheduling deadlines for expert disclosures— except for Dr. Bea's admission that, due to the Court's scheduling order, he simply ran out of

time.[34]  That is not good enough.  *Second*, this Court has acknowledged that the prejudice is obvious.[35]  Defendants have not had an opportunity to depose any of Plaintiffs' experts about these documents, they do not know how the documents fit into Plaintiffs' theories, and they have not had an opportunity to analyze the documents or Plaintiffs' "summaries" of such documents to determine whether the materials are factually accurate.  *Third*, there is no possible cure for the prejudice that Defendants will suffer if Plaintiffs are permitted to submit this evidence with just 24 days remaining before trial begins.  *Lastly*, Plaintiffs may claim that Dr. Bea's testimony is important, but the detriment to the Defendants in allowing the evidence far outweighs any negative consequences the Plaintiffs might suffer from the exclusion of this evidence.  Further, Dr. Bea will not be foreclosed from opining at trial about other of his expert materials, save for the "summary" submission and the related opinions stricken from his Rebuttal Report.

Plaintiffs' Notice of Summary Evidence and its attachments are expert materials, plain and simple.  Those materials should have been produced in accordance with Rule 26, and because they were not, this Court must exclude them from trial.

---

[34]     Bea Rebuttal Report at 5.  During the June 28, 2012, argument regarding the Defendants' motions to strike Dr. Bea's Rebuttal Report(s), Plaintiffs admitted that Dr. Silva-Tulla had already produced his own charts and maps showing excavations, by number, by depth, etc.  Mtn. to Strike Hearing Tr., June 28, 2012, at 64-65 (Rec. Doc. 20903).  In addition, the Court recognized that the Defendants' experts had already correlated their own information into a GIS database.  *Id.* at 75.  Given the other parties' diligence, there is no reason Plaintiffs should be excused from abiding by this Court's deadlines.

[35]     Order and Reasons, June 29, 2012, at 4-5 (Rec. Doc. 20890).

1102364v1

**D.**   **Plaintiffs' Alleged Rule 1006 "Summary" Is a Calculated Attempt to Side-Step This Court's Order on the "Swiss Cheese Graphics—the Rule Is Completely Inapposite to This Case.**

Finally, Plaintiffs' attempt to make an end-run around the Court's Order striking the "Swiss Cheese Graphics" by disguising their expert submission as "summary evidence" is an offense to this Court and wholly improper.

Federal Rule of Evidence 1006 allows "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  The Rule creates an exception to the Best Evidence Rule proscribed by Rule 1002, which requires originals to be used to prove the content of writings, recordings, or photographs.  *U.S. v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006). Rule 1006 is often employed in cases involving financial crimes or other fraud, in which it would be inconvenient for the trier of fact to distill and digest a voluminous number of documents involving financial transactions.  *See U.S. v. Whitfield*, 590 F.3d 325, 335 (5th Cir. 2009) (involving mail and wire fraud); *U.S. v. Fullwood*, 342 F.3d 409, 411 (5th Cir. 2003) (involving conspiracy to commit mail fraud, violate the False Claims Act, and make false statements to the Government); *U.S. v. Hart*, 295 F.3d 451, 454 (5th Cir. 2002) (involving fraud and knowingly making material false statements to the Government).

As a threshold matter, "[s]ummary evidence, must have an adequate foundation in evidence that is already admitted . . . ."  *Whitfield*, 590 F.3d at 364.  To introduce evidence pursuant to Rule 1006, the proponent must demonstrate "that the summary accurately summarizes the source materials," *Milkiewicz*, 470 F.3d at 396, and "fairly represent[s] the underlying documents."  *Id.* at 398.

The Fifth Circuit "has properly expressed some reluctance to generally endorse the use of summary evidence." *Whitfield*, 590 F.3d at 364 (citing *Fullwood*, 342 F.3d at 411). The Court carefully examines summary evidence to distinguish between that which appropriately "synthesize[s]" voluminous records, *id.*, and that which "goes beyond the scope of a summary," *U.S. v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001), or seeks to improperly admit evidence "under the guise of a 'summary' presentation." *Hart*, 295 F.3d at 457.

Plaintiffs seek to do precisely that—they have repackaged previously-excluded expert materials as "summary evidence" in an attempt to evade this Court's clear instruction on the "Swiss Cheese Graphics." In reality, the exhibits attached to Plaintiffs' "notice of summary evidence" are not summaries at all under Rule 1006. For instance, Plaintiffs purport to "summarize" fewer than 100 total documents in their exhibits; many of the bates numbers listed are duplicates, document excerpts, or simply blank pages.[36] Indeed, Exhibits B and C purport to summarize fewer than 50 documents each.[37] This is hardly the voluminous, inconvenient amount of information contemplated by the Rule and often seen in cases involving complex financial transactions.

Further, half of the documents referenced in the exhibits are not on the parties' Master Exhibit List, so as it stands, the exhibits will not be admitted into evidence at trial, a threshold requirement for summary evidence in the Fifth Circuit. *See Whitfield*, 590 F.3d at 364. Plaintiffs make no attempt to demonstrate the admissibility of these documents, nor do they make any effort to show that their exhibits fairly and accurately summarize the underlying source material. *See Milkiewicz*, 470 F.3d at 396, 398.

---

[36]    Manual Attachment, Exs. A, B, C.

[37]    *Id.*

Moreover, and importantly, Plaintiffs' Notice of Intent to Introduce Summary Evidence and the corresponding exhibits have already been excluded by this Court in connection with Dr. Bea's original "Swiss Cheese Graphics."   Therefore, any attempt to introduce the materials pursuant to Rule 1006 is not only improper under the clear requirements for "summary" evidence, but it is in direct contravention of this Court's Order.

At the June 28, 2012, Hearing regarding Defendants' motions to strike Dr. Bea's "rebuttal" reports, and with respect to Dr. Bea's still evolving "Swiss Cheese Graphics," this Court succinctly stated:  "[Y]ou can call it whatever it is.  It's going to be another report.  That's what it is. . . ."[38]  Defendants could not agree more.  Plaintiffs can call their August 13, 2012, expert submission whatever they like, but in the end, their "summary" is *not* a summary.  Rather, it is exactly what Plaintiffs intended to provide all along, what Plaintiffs should have provided months ago in connection with Dr. Bea's initial expert disclosures, and what this Court has explicitly held *cannot* be provided.  The Notice of Intent to Introduce Summary Evidence and exhibits must therefore be stricken.

## III.    CONCLUSION

Because Plaintiffs filed their Notice of Intent to Introduce Summary Evidence in direct violation of this Court's Orders, because Plaintiffs' filing of this information is untimely pursuant to Federal Rule of Civil Procedure 26, and because their alleged "summary" is not a summary at all, the Court should exclude Plaintiffs' Notice of Intent to Introduce Summary Evidence and enter an Order prohibiting Plaintiffs from relying on the information contained therein at trial.

---

[38]    Mtn. to Strike Hearing Tr., June 28, 2012, at 85 (Rec. Doc. 20903).

1102364v1

Dated: August 17, 2012                          Respectfully submitted,

                                                  */s/William D. Treeby*
                                                  William D. Treeby, Bar No. 12901
                                                  James C. Gulotta, Jr., Bar No. 6590
                                                  Heather S. Lonian, Bar No. 29956
                                                  STONE PIGMAN WALTHER WITTMANN LLC
                                                  546 Carondelet Street
                                                  New Orleans, LA 70130
                                                  Phone:  504-581-3200
                                                  Fax:  504-581-3361

Adrian Wager-Zito
Debra S. Clayman
Christopher N. Thatch
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone:  1-202-879-3939
Fax: 1-202-626-1700

*Attorneys for Defendant*
*Washington Group International, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that, on August 17, 2012, I served a true copy of the foregoing upon all parties via Electronic Court Filing ("ECF").  Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic-filing system.

                                                     */s/ William D. Treeby*
                                                    William D. Treeby