UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| | * |
| IN RE:  KATRINA CANAL BREACHES | * CIVIL ACTION |
| CONSOLIDATED LITIGATION | * |
| | * NO. 05-4182 |
| | * |
| PERTAINS TO:  MRGO | * SECTION "K" (2) |
| | * |
| | * JUDGE DUVAL |
| | * |
| | * MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE TO EXCLUDE INSURANCE
CLAIM FILES AND UNRELATED LEGAL PROCEEDINGS**

Washington Group International, Inc. ("WGI") respectfully submits the following

memorandum in opposition to Plaintiffs' Motion in Limine to Exclude Insurance Claim Files and

Unrelated Legal Proceedings.  (Rec. Doc. 20953).  The fact that Plaintiffs not only actively

sought, but received compensation for damage to their property on the basis that the damage was

caused by wind and/or rain is highly relevant to these proceedings.  Plaintiffs cannot and should

not recover twice for the same damage under mutually exclusive theories of causation.  The

Court, therefore, should deny Plaintiffs' motion.[1]

A.      **Background**

Nearly all of the Plaintiffs filed claims under their homeowners policies for

Katrina-related wind and rain damage to their movable and immovable property, and for

additional living expenses.  The documents contained in Plaintiffs' homeowners files have

significant evidentiary value, especially in light of the fact that many years elapsed between the

---

[1]      In order to avoid duplication and because these exhibits were required to be attached to the Plaintiffs
motion, WGI did not attach copies of the Exhibits that are the subject of Plaintiffs' motion.  WGI will
readily provide copies at the Court's request.

date of the damage and the property inspections conducted by the parties' experts.  Indeed, certain properties were demolished before any party's expert could examine them, and the experts must necessarily rely upon photographs and other contemporaneous documents to assist them in making determinations regarding the causes of damage to Plaintiffs' movable and immovable property.  Certain plaintiffs also submitted estimates (prepared by contractors of their own choosing) that estimated the cost of repairing wind and rain damage to their property.

Plaintiffs' insurance claim files contain not only contemporaneous photographs of Plaintiffs' Katrina-related damage, but also invoices demonstrating certain Plaintiffs' post-Katrina living expenses, including housing and utility costs.  Because Plaintiffs' memories regarding the exact amounts of their post-Katrina expenses cannot be expected to be exact seven years later, these documents are not only relevant, but invaluable.

### 1.    The Armstrongs

The Armstrongs filed claims under their homeowners insurance for wind damage to their house and contents, and for additional living expenses.[2]  Believing that the insurance company's initial payment for wind and rain damage to be insufficient, they contacted their homeowners insurer and requested a re-inspection.[3]  They also obtained two estimates for wind and roof damage from contractors and submitted these to their homeowners insurer.[4]  In his deposition, Mr. Armstrong identified the estimates that he sent to the insurance company.[5]  As a result of these communications, their homeowners insurer re-inspected the Armstrong house, found

---

[2]      Excerpts of Dep. of Kenneth Armstrong, dated July 9, 2007, attached hereto as Exhibit 1, at 21:12-22:25. Mr. Armstrong testified that he understood that the claim under his homeowners insurance was for wind and wind-driven rain damage.  Excerpts of Dep. of Kenneth Armstrong, dated September 12, 2011, attached hereto as Exhibit 2, at 271:3-6 (Mr. Armstrong knew that his homeowners insurance covered wind and rain damage).

[3]      Ex. 2 at 260:8-263:10.

[4]      *Id*. at 265:4-266:25; JX-1454.

[5]      Ex. 2. at 265:4-266:25

1102373v.1

additional wind and rain-damage to the structure, and issued a payment of approximately $35,000.[6]  Following this additional payment, the Armstrongs submitted a letter detailing additional, uncompensated damage to the contents in their attic that they insisted were damaged by wind and wind-driven rain.[7]  In her deposition, Mrs. Armstrong identified a copy of the letter from the insurance claim file as having been written in her handwriting.[8]

In support of their claim for additional living expenses, the Armstrongs submitted receipts and invoices to their homeowners insurer establishing their post-Katrina living expenses.[9]  In her deposition, Mrs. Armstrong identified copies of the invoices and the handwritten enclosure letter that were contained in the insurer's claim file.[10]  The Armstrongs subsequently sued their homeowners insurer, alleging that Hurricane Katrina "caus[ed] major winds and wind-driven waters that destroyed plaintiffs' property and contents."[11]  They ultimately reached an out-of-court settlement with their homeowners insurer, and as a result received an additional $16,000 for wind and rain damage to the contents of their attic.[12]  During their depositions, the Armstrongs also identified photographs contained in their insurance claim files as photographs that they themselves took of their immovable and movable property in the aftermath of Hurricane Katrina.[13]

---

[6]      Ex. 1 at 21:12-22:25; DX-02461.

[7]      Ex. 2 at 278:19-281:4; JX-1456.  (JX-1430 is a duplicate of JX-1456 that was inadvertently included in the Master Exhibit List.)

[8]      Excerpts of Dep. of Jeannine Armstrong, dated September 13, 2011, attached hereto as Exhibit 3, at 146:22-149:25.

[9]      JX-1457.

[10]     Ex. 3. at 150:15-151:25.

[11]     JX-1431 at Ex. A.

[12]     Ex. 3 at 13:20-15:2.

[13]     JX-1447; Ex. 2 at 161:18-162:13.

### 2.     Fred Holmes

Mr. Holmes also made a claim against his homeowners insurer for wind and rain damage, and for additional living expenses, and filed suit after his claim was denied.   Mr. Holmes prepared a list of contents that he contended were damaged by wind and/or rain.   This list was included within interrogatory responses that the Holmeses served on their homeowners insurer in a Katrina-related coverage lawsuit.[14]   In his deposition, Mr. Holmes identified the list and enclosure letter, and testified that he created the list with his wife's assistance.[15]   The Holmeses ultimately reached an out-of-court settlement that resulted in their homeowners insurer paying $20,000 for wind and/or rain-related damage.[16]   In his deposition, Mr. Holmes identified the settlement documents that bear his signature, and confirmed that the amounts stated therein accurately reflected what he was paid under his homeowners claim.[17]   He was also able to identify copies of correspondence that he had previously received, and testified that the correspondence accurately reflected payments he had received.[18]

### 3.     Alvin Livers

Mr. Livers also made a claim under his homeowners policy for Katrina-related wind and rain damage to his immovable and movable property, and for additional living expenses.   He received approximately $15,000.00 from his homeowners insurer for damage to his immovable property that was caused by Katrina-related wind and/or rain, and $1,676.89 for prohibited use/additional living expenses arising from Katrina-related wind and/or rain damage

---

[14]      JX-1481; JX-1482.

[15]      Excerpts of Dep. of Fred Holmes, dated September 24, 2011, attached hereto as Exhibit 4 at 266:25-267:22; 269:14-25.

[16]      JX-1479, JX-1483.

[17]      Ex. 4. at 258:4-259:5; 270:16-271:18.

[18]      JX-1478; Ex. 4 at 254:19-256:19.

to their immovable property.[19]  In his deposition, Mr. Livers was shown copies of letters taken from his insurance claim file that reflected Katrina-related payments under his homeowners policy.  He identified the letters and confirmed that they accurately reflected payments he had received.[20]  In addition, Mr. Livers was also able to identify several photos from his homeowners insurance claim file as photographs taken of his house that reflected Katrina-related damage.[21]  He was also able to identify a copy of a check he and his wife received from an insurance adjuster, and testified that it accurately reflected the amount of the payment.[22]  In her deposition, Mrs. Livers was able to identify a copy of a list of movable property that she prepared and sent to the insurance company.[23]  In addition, Mr. Livers also identified copies of documents from his Road Home file that he had previously seen in the process of applying for and receiving Road Home assistance (which contain information regarding the purported pre-storm valuation of the house and Mr. Livers' payments under his insurance policies for Katrina-related damage)[24], including documents that he himself completed and that bear his signature.[25]

### 4.    Clifford Washington

Mr. Washington also made a claim under his homeowners insurance policy for damage Katrina-related wind and rain damage to his immovable and movable property, and for additional living expenses. After the adjustment of his claim, Mr. Washington received $13,922.42 for wind and rain damage to his immovable property and $1,500.00 for additional

---

[19]    JX-1500; JX-1492.

[20]    Excerpts of Dep. of A. Livers, attached hereto as Exhibit 5, at 56:25-58:20; 222:1-224:23.

[21]    JX-1495; Ex. 5 at 85:19-89:2.

[22]    JX-1499; Ex. 5 at 217:19-219:2.

[23]    JX-1511; Excerpts of B. Livers Dep., attached hereto as Exhibit 6 at 24:14-25:17.

[24]    JX-1506; Ex. 5 at 236:9-237:3.

[25]    JX-1507; Ex. 5 at 240:22-242:1;

living expenses.[26]   Dissatisfied with this payment, Mr. Washington filed suit against his homeowners insurer, alleging, *inter alia*, that his immovable and movable property was "totally destroyed" as a result of "Hurricane Katrina's wind forces".[27]  He ultimately settled this lawsuit out of court for an additional $17,892.30 for wind and rain damage to his immovable property, $4,800.00 for wind and rain damage to other structures (i.e., fencing), $5,575.00 for wind and rain damage to his movable property, and $5,710.00 for wind and rain-related additional living expenses.[28]  During his deposition, Mr. Washington was shown copies of checks taken from his homeowners insurance claim file.[29]  He testified that he had received and deposited the checks.[30]

### 5.   Ethel Mae Coats

Similarly, Ms. Coats made a claim under her homeowners policy.  She received approximately $1,733.00 from her homeowners insurer for damage to her immovable property that was caused by Katrina-related wind and/or rain.[31]

## II.   Law & Argument

### A.   The Insurance Files and Litigation Pertaining to Plaintiffs' Homeowners Claims Are Relevant and Admissible.

Under the liberal discovery rules of the federal courts, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." F.R.E. 402. "Relevance" is broadly defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

---

[26]    JX-1545.

[27]    JX-1523.

[28]    JX-1545.

[29]    *Id*.

[30]    Excerpts of Dep. of C. Washington, attached hereto as Exhibit 7, at 297:1-299:7.

[31]    Excerpts of Dep. of E.M. Coats, dated July 17, 2007, attached hereto as Exhibit 8, at 59:5-15.

1102373v.1

less probable than it would be without the evidence." F.R.E. 401.  Because Plaintiffs' insurance claim files and litigation arising therefrom are clearly relevant to various claims of damages in this case, and to the source of those damages, the Court should deny Plaintiffs' motion.

### 1.     Plaintiffs Are Not Entitled to a Windfall.

Plaintiffs bear the burden of proving both the existence and quantum of their damages, and any damages awarded must be supported by evidence in the record.  *Borden, Inc. v. Howard Trucking Co.*, 454 So. 2d 1081, 1092 (La. 1983).  Plaintiffs also bear the burden of proving by a preponderance of the evidence that all of the damages they seek from WGI are attributable to the conduct of WGI.  *Servicios-Expoarma, C.A. v Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998).   As WGI briefed more fully in its Motion to Exclude the Testimony of Scott Taylor (Rec. Docs. 20819, 20867), Plaintiffs' damages expert Scott Taylor does not purport to segregate wind or rain damage from flood damage, but instead simply assumes that all of their damages were caused by floodwaters.

"[T]he proper measure of damages in a tort action is compensation.  'The purpose of compensatory damages ... is to place the injured person as nearly as possible in the condition he would have occupied if the wrong had not occurred.'"  *Pizani v. M/V Cotton Blossom,* 669 F. 2d 1084, 1088 (5th Cir. 1982) (quoting *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976).   "The purpose of tort damages is to make the victim whole. This goal is thwarted, and the law is violated, when the victim is allowed to recover the same element of damages twice." *Bellard v. Am. Cent. Ins. Co.,* 980 So. 2d 654, 668 (La. 2008).

In the aftermath of Hurricane Katrina, courts in the affected areas were called upon to resolve the question of whether an insured could recover under both a flood and homeowners insurance policy for the same damage.  As with tort damages, the purpose of an insurance contract is to restore the injured person to the position he occupied prior to the loss.

*See* 12 Lee R. Russ & Thomas F. Segallas, *Couch on Insurance* § 175:5 (3d ed. 2006)("[h]ence, both the extent and the limitation of recovery is found in the concept of making good the loss which the insured has sustained").  These cases are therefore instructive on the issue of whether Plaintiffs can now re-cast their wind damage as flood damage.

Numerous Sections of this court that have addressed the issue have expressly rejected a homeowner's attempts to re-characterize the cause of damage in order to make a second recovery for the same damage.  In *Esposito v. Allstate Insurance Co*., 2007 WL 1125761 (E.D. La. 2007)(Zainey, J.), the plaintiff had previously recovered $185,265 under his flood policy for damage to his immovable property.  He then sued his homeowners insurer "contend[ing] that wind caused a total loss of the property and . . . seek[ing] the full policy limits on his homeowner's policy."  *Id.* at *1.  The court granted the insurer's motion for summary judgment, explaining:

> [The plaintiff] is entitled to recover in this lawsuit any *previously uncompensated* losses that are covered by his homeowner's policy *and which when combined with his flood proceeds do not exceed the value of his property*.  [The plaintiff] is not entitled to obtain a windfall double recovery by now recharacterizing as wind damage those losses for which he has already been compensated by previously attributing them to flood waters.

*Id.* at *2 (emphasis added);  *see also Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.)(plaintiff in suit against homeowners insurer can recover only for that wind damage it proves to be separate and distinct from the flood damage for which it has been previously compensated); *Wellmeyer v. Allstate Ins. Co*., 2007 WL 1235042 (E.D. La. 2007) (Feldman, J.)(plaintiffs "may not enjoy a double recovery for the same lost property" under their flood and homeowners policies); *Ragas v. State Farm Fire & Casualty Co*., 2008 WL 425536 (E.D. La. 2008) (Engelhardt, J.)(while it is common for a plaintiff "to have both wind *and* flood damages, and coverages for both, this does not entitle the plaintiff to double

1102373v.1

recovery in the event of a given loss").  Plaintiffs actively sought and received payment for wind and rain damage.  These payments were not "mistakenly made", and Plaintiffs should not be "not [be] permit[ted] to retain those funds while seeking damages…for the very same losses for which she has already been compensated" under a different theory of causation.  *See id*. at *6.

WGI does not contend that it is entitled to an offset for any payments Plaintiffs received under their flood insurance policies, as that would be a classic example of a true collateral source.  But even though Plaintiffs paid premiums under their homeowners policies in exchange for insurance coverage against losses caused by wind and rain, the payment of such premiums does not entitle them to recover twice for the same damage on mutually inconsistent factual theories.  By seeking such a double recovery, Plaintiffs are demanding a windfall, and WGI should be permitted to introduce evidence demonstrating this fact.

### 2.    The Insurance Files Contain Numerous Materials That Plaintiffs Prepared and Submitted to Their Respective Insurers.

In their motion, Plaintiffs contend that Plaintiffs' insurance files should be excluded in their entirety because they consist of out-of-court statements by the insurance adjusters as well as out-of-court statements by the insureds, on which the adjusters rely.  As WGI demonstrated above, within Plaintiffs' respective insurance files are copies of numerous documents that Plaintiffs prepared themselves and/or submitted to their insurers as part of the claim adjustment process.   Plaintiffs were able to identify these documents during their depositions, and clearly have personal knowledge as to their contents.  As such, these documents are admissible as non-hearsay admissions pursuant to Rule 801, and WGI should be permitted to examine Plaintiffs about documents that they themselves prepared and/or submitted to their insurers.  Specifically, these exhibits include, but are not limited to:  JX-1454; DX-02461; JX-1456; JX-1457; JX-1447; JX-1481; JX-1482; and, JX-1511.

Additionally, Plaintiffs were able to identify correspondence and other documents from their claim files that they received during the adjustment of their insurance claims, and further testified that these documents were consistent with their recollection of events. These documents are not hearsay because they are not being offered for the truth of the matter asserted within the documents themselves, but rather to show that Plaintiffs received the letters and responded in certain ways (i.e., they sought additional payments or filed lawsuits). Specifically, these exhibits include, but are not limited to: JX-1479; JX-1483; JX-1495; JX-1500; JX-1492; JX-1499; and, JX-1545.

### 3. Plaintiffs Made Admissions in Their Lawsuits Against Their Homeowners Insurers.

Pleadings from Plaintiffs' lawsuits against their respective insurers are admissible as statements of party-opponents. "When offered by the adverse party, answers to interrogatories and requests for admission usually are not considered hearsay insofar as they fall under the exception for admissions by a party opponent." *Underbergh v. U.S.*, 362 F.Supp.2d 1278, 1283 (D. N.M. 2005)(citing Rule 801(d)(2). In his deposition, for example, Mr. Holmes testified that he had reviewed the responses to requests for production of documents prepared on his behalf[32] and discussed them with the attorney representing him in that case.[33] He had also not only reviewed the interrogatory responses[34] served on his behalf, but testified that he believed the responses and the underlying petition to have been true and correct when filed.[35] He also personally prepared a list of items that he contended were damaged by wind and/or rain, and this

---

[32]    JX-1473; DX-1685.

[33]    Ex. 4 at 225:6-228:6.

[34]    JX-1481.

[35]    Ex. 4 at 262:23-265:3.

list was attached to a supplemental set of interrogatory responses together with invoices produced in support of the Holmeses' claim for losses to their movable property.[36]

Because the pleadings from Plaintiffs' insurance litigation are statements of party-opponents, they are admissible.  Specifically, these exhibits include, but are not limited to:   JX-1431; JX-1473; JX-1477; JX-1480; JX-1481; JX-1482; JX-1490; JX-1522; JX-1523; JX-1621; JX-1622; DX-01685; and, DX-01703.

### 4.       Plaintiffs Are Not Prejudiced by the Admission of This Evidence.

Plaintiffs' conclusory statement that they are prejudiced by the admission of evidence regarding Plaintiffs' insurance claims is meritless.  The Fifth Circuit has noted that "unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.  The prejudice must be 'unfair.'" *Ballou v. Henru Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir.1981) (emphasis added).  Plaintiffs urge the Court to grant this motion because it would alleviate their burden of having to prove what caused their damages.  Their own expert, Mr. Taylor, has made no effort to segregate wind or rain damage from flood damage, and now Plaintiffs are attempting to hamstring the Defendants from doing so by seeking to exclude highly relevant evidence that provides relevant evidence to that end.  The Court should reject Plaintiffs' self-serving arguments and deny their motion.

### B.       Even If the Court Determines That This Evidence Is Inadmissible, Defendants' Damages Experts May Still Rely Upon It.

Even if the Court determines that evidence from Plaintiffs' insurance claim files and litigation is inadmissible, this should not preclude Defendants' damages experts, James Danner, Karl Schneider, and Jean-Prieur Du Plessis, from relying upon the evidence contained therein.  As noted above, several of the Plaintiffs' residences were demolished long before any

---

[36]       JX-1482; Ex. 4 at 265:12-267:22; 268:22-269:25.

expert in this case was able to inspect them.  In their motion, Plaintiffs erroneously contend that Defendants are offering the opinions of the insurance adjusters as expert testimony in this matter. Defendants' experts are not simply adopting the conclusions of the adjusters as their own.  On the contrary, Defendants' experts have reviewed the notes, photographs, and documents prepared by adjusters and the Plaintiffs themselves, and, relying upon their own training and professional experience, have drawn their own conclusions about the causes and/or quantum of Plaintiffs' damages.  Messrs. Du Plessis and Schneider relied upon Mr. Danner, an engineer, to provide causation determinations regarding wind/rain versus flood.

Federal Rule of Evidence 703 allows an expert to base his opinion on facts or data perceived or made known to him.  "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."  Fed. Rule of Evid. 703.  The information taken from the claim files is precisely the sort of information Defendants' experts would have relied upon had they had the opportunity to inspect all the properties themselves in the immediate aftermath of Katrina.  Defendants' experts should be allowed to testify about their reliance upon this highly relevant evidence, and Plaintiffs will be free to cross-examine Defendants' experts at trial about said reliance.

**C.    Certain Exhibits to Which Plaintiffs Object Do Not Even Pertain to Insurance Claim Files or Other Legal Proceedings.**

Certain exhibits to which Plaintiffs object do not even pertain to insurance claim files or other legal proceedings, and are clearly relevant and admissible.  For example, Plaintiffs object to JX-1429,[37] which is the handwritten list of damaged contents that the Armstrongs prepared at Mr. Taylor's behest.  Mrs. Armstrong identified the list during her deposition as one

---

[37]    JX-1615 is a duplicate of JX-1429 that was inadvertently included on the Master Exhibit List.

that she and her husband prepared for this litigation.[38]  Similarly, Mr. Livers identified JX-1498 as the handwritten list of contents prepared by his wife for Mr. Taylor.[39]  These lists, which set forth items for which Plaintiffs seek recovery from WGI, were prepared by the Plaintiffs, and are clearly relevant and admissible.

JX-1435 and JX-1486 are correspondence between Plaintiffs and the United States Army Corps of Engineers regarding Plaintiffs' respective Form-95.  While these exhibits are not relevant to Plaintiffs' claims against WGI, they are relevant and admissible as to Plaintiffs' claims against the United States.

DX-01705 is a set of discovery responses provided by Plaintiffs in this litigation. These responses are clearly admissible as statements by party-opponents.  DX-01699 is the deposition of Mrs. Holmes.  Mr. Holmes was present throughout the entirety of Mrs. Holmes' deposition, and the transcript can be used during his examination.

Exhibits JX-1508, JX-1528, and JX-1538 are Acts of Sale pertaining to certain Plaintiffs' properties.  To the extent the Court determines that the diminution of value is the true measure of damages, these documents are relevant, and fall within the public records exception to hearsay under Rule 803.

**D.    Certain Exhibits Are Already Excluded Pursuant to the Court's Order Regarding Plaintiffs' Economic Loss Claims.**

WGI does not object to the exclusion of the following exhibits because they pertain to Plaintiffs' economic loss claims and are already excluded pursuant to the Court's Order dated April 10, 2012 (Rec. Doc. 20766):  JX-1432; JX-1469; JX-1470; JX-1487; JX-1470; DX-01702; and, JX-1428.

---

[38]     Ex. 3 at 116:14-118:7.

[39]     Ex. 5 at 174:9-175:3.

WGI also does not object to the exclusion of JX-1531 and JX-1532, which are lists of movable property belonging to Plaintiff Clifford Washington.  Mr. Washington has withdrawn his claim for movable property with prejudice, and these exhibits are therefore irrelevant.[40]  Additionally, WGI does not object to the exclusion of JX-1426, which consists of sensitive personal information belonging to Mrs. Armstrong that is no longer relevant to these proceedings.

Dated:  August 17, 2012                          Respectfully submitted,


                                                 /s/William D. Treeby
                                                 William D. Treeby, 12901
                                                 James C. Gulotta, Jr., 6594
                                                 Heather S. Lonian, 29956
                                                     Of
                                                 STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                 546 Carondelet Street
                                                 New Orleans, Louisiana  70130
                                                 Telephone:  (504) 581-3200
                                                 Facsimile:   (504) 581-3361

                                                 and


                                                 Adrian Wager-Zito
                                                 Debra S. Clayman
                                                 JONES DAY
                                                 51 Louisiana Avenue, N.W.
                                                 Washington, D.C. 20001-2113
                                                 Telephone:  (202) 879-3939
                                                 Facsimile:  (202) 626-1700

                                                 Attorneys for Washington Group
                                                 International, Inc.

---

[40]     Rec. Doc. 20920 at Uncontested Material Facts Nos. 152-53.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2012, a copy of the above and foregoing Memorandum in Opposition to Plaintiffs' Motion in Limine to Exclude Insurance Claim Files and Unrelated Legal Proceedings has been served upon the Court via hand-delivery pursuant to the Court's July 26, 2012 Minute Entry (Doc. 20927) this 17th day of August, 2012. Notice of this filing will be sent by e-mail to all counsel of record

*/s/William D. Treeby*

1102373v.1