**FRED NELSON HOLMES JR.** September 24, 2011

---

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES   CIVIL ACTION
CONSOLIDATED LITIGATION     NO. 05-4182 K2
                            JUDGE DUVAL
PERTAINS TO MRGO      MAG. WILKINSON

FILED IN: 05-4181, 05-4182, 05-5237, 05-6073,
05-6314, 05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885, 06-2152,
06-2278, 06-2287, 06-2824, 06-4024,
06-4065, 06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155, 06-5159,
06-5156, 06-5162, 06-5260, 06-5771,
06-5786, 06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285

* * *

VIDEOTAPED DEPOSITION OF
FRED NELSON HOLMES, JR.,
30231 Glenboro Drive, Spring, Texas 77386,
given at The Woodlands Waterway Marriott Hotel
and Convention Center, 1601 Lake Robbins
Drive, The Woodlands, Texas on Saturday,
September 24, 2011.

---

Page 2

1  APPEARANCES:
2
3  REPRESENTING THE PLAINTIFFS:
     LAW OFFICE OF GERALD N. ANDRY, JR.
     (BY:  GERALD N. ANDRY, JR., ESQUIRE)
4    710 Carondelet Street
     New Orleans, Louisiana 70130
5    504-581-4334 (NOT PRESENT)
   - AND-
6    DEGRAVELLES, PALMINTIER, HOLTHAUS &
     FRUGE, L.L.P.
7    (BY: JOSHUA M. PALMINTIER, ESQUIRE)
     618 Main Street
8    Baton Rouge, Louisiana 70801-1910
     225-344-3735
9  - AND-
     THE ANDRY LAW GROUP, LLC
10   (BY: JONATHAN B. ANDRY, ESQUIRE)
     610 Baronne Street
11   New Orleans, Louisiana 70113-1004
     504-525-5535 (NOT PRESENT)
12
13
14 REPRESENTING THE UNITED STATES OF AMERICA:
     U.S. DEPARTMENT OF JUSTICE
15   (BY: CONOR KELLS, ESQUIRE)
     Torts Branch, Civil Division
16   P.O. Box 888
     Benjamin Franklin Station
17   Washington, D.C. 20044
     202-616-4289
18
19 REPRESENTING WASHINGTON GROUP INTERNATIONAL,
     INC.:
20   JONES DAY
     (BY: CHRISTOPHER THATCH, ESQUIRE)
21   51 Louisiana Avenue, N.W.
     Washington, D.C. 20001-2113
22   202-879-4645
23
   ALSO PRESENT:
24   JENEEN MARIE BAUDOIN-HOLMES
25

---

Page 3

1  APPEARANCES CONTINUED:
2
3
4
5
6  VIDEOGRAPHER:  KEN HART (HART VIDEO)
7
8
9
10 REPORTED BY:
11   ROGER D. JOHNS, CCR
12   CERTIFIED COURT REPORTER
13   STATE OF LOUISIANA

---

Page 4

1          S T I P U L A T I O N
2
3      It is stipulated and agreed by and between
4  counsel for the parties hereto
5  that the deposition of the aforementioned
6  witness is hereby being taken under the
7  Federal Rules of Civil Procedure, for all
8  purposes, in accordance with law;
9      That the formalities of certification and
10 filing are specifically waived;
11     That the formality of reading and signing
12 of the transcript is specifically not waived;
13     That all objections, save those as to the
14 form of the question and the responsiveness of
15 the answer, are hereby reserved until such
16 time as this deposition, or any part thereof,
17 may be used or sought to be used in evidence.
18
19          * * * *
20
21     ROGER D. JOHNS, RDR, CRR, Certified Court
22 Reporter, for the State of Louisiana,
23 officiated in administering the oath to the
24 witness.
25

---

Page 225

1   ACFIC-001232 to 1242.  I am going to hand you
2   copies of those documents now.
3        A.  Okay.
4            (Document marked as F. Holmes
5        Exhibit 9 attached to transcript.)
6        Q.  Okay, Mr. Holmes.  Let's start with
7   the document that is Bates stamped at the
8   bottom right corner ACFIC-000206.  Do you see
9   that document?
10       A.  Yes, sir.
11       Q.  Do you recognize this document?
12       A.  I may have seen it before.
13       Q.  Do you recall where you may have
14  seen it?
15       A.  It would have been during the time
16  whenever we were dealing with the insurance.
17       Q.  Do you recall if you discussed this
18  document with anyone?
19       A.  I believe so, yes, sir.
20       Q.  Who did you discuss the document
21  with?
22          MR. PALMINTIER:
23            Other than his attorney?
24          THE WITNESS:
25            I believe it would be his -- my

Page 226

1   attorney.
2   EXAMINATION BY MR. THATCH:
3        Q.  I am not asking for the substance of
4   conversations, but just --
5        A.  Yes, sir.  I mean, just my
6   attorneys.
7        Q.  Now, with this document that's
8   numbered ACFIC-000206, this looks to be
9   answers to discovery, written discovery
10  requests that were filed in your lawsuit
11  against your homeowner's insurer, Auto Club
12  Family.  Is that correct?
13       A.  Yes, sir.
14       Q.  And then at the back of that list --
15  I'm sorry, at the back of that document there
16  is a, on the Bates number 211, there's a list
17  of expenses.  Do you see that?
18       A.  Yes, sir.  211.  Oh, wow.  I'm way
19  off.  Okay.  Thank you.
20       Q.  And if you go -- I'm sorry, tell me
21  when you're there.
22       A.  211; correct?
23       Q.  Yes.
24       A.  Okay.
25       Q.  You got it?

Page 227

1        A.  Yes, sir.
2        Q.  Okay.  A few pages before that, 208,
3   at the bottom of page 208 you'll see there's a
4   request for production of documents number
5   10.  Do you see that?
6        A.  Yes, sir.
7        Q.  It says "Any and all statements,
8   invoices, receipts, or other documents which
9   reflect any additional living expenses you
10  incurred as a result of Hurricane Katrina".
11       A.  Yes, sir.
12       Q.  The answer directly below that
13  request for production says "See attached".
14       A.  Yes, sir.
15       Q.  Do you understand this list at the
16  back of the document that begins on Bates
17  number 211 to be the list of additional living
18  expenses that you incurred as a result of
19  Hurricane Katrina that were provided in
20  response to this request for production?
21       A.  Yes, sir, it looks familiar.
22       Q.  And in the second documents that we
23  marked, the document that begins ACFIC-001232,
24  do you have that in front of you?
25       A.  Yes, sir, I do.

Page 228

1        Q.  That list appears to be the same
2   list that's attached to the back of this
3   discovery response that we just mentioned.
4   Does that look correct to you?
5        A.  Yes, sir, it looks -- it looks to
6   be.  Yes, sir.
7        Q.  Now let's refer then, with respect
8   to specific questions, to the document, the
9   document list at the back of the discovery
10  requests.  The first page is ACFIC-000206.
11       A.  Okay.
12       Q.  Now, on that list, the expense list
13  at the back, at the top it says "Expenses for
14  the period August 26th, 2006 through September
15  30th, 2006".
16       A.  Yes, sir.
17       Q.  I assume that the August 26th, 2006
18  date here is incorrect?
19       A.  I'm wanting to say it would have
20  included actual fuel just before.
21       Q.  Well, what I am referring to simply
22  is the title here of the document.
23       A.  I think -- Again, I think that we
24  may have based that on making preparations
25  before.  I don't --

Page 253

1    A.  I believe they went beyond the terms
2    that I could file suit.  It wasn't that he
3    wasn't in error.  It was just a matter of the
4    timing.
5    Q.  I think you misunderstood my
6    question.  Let me ask it again.
7    A.  Okay.  I'm sorry.
8    Q.  That's fine.  That's fine.  Let me
9    just ask it again.  Do you know what the
10   current status of your lawsuit against these
11   parties is?  In other words, has the lawsuit
12   ended?  Is it still going?
13   A.  I believe it has ended.
14   Q.  Okay.  And do you know if the
15   lawsuit has ended with respect to each of
16   those parties that you sued in that lawsuit?
17   A.  I believe, but I'm not sure.
18   Q.  Let me, just so we're clear, let me
19   just show you a couple of documents.
20       (Document marked as F. Holmes
21       Exhibit 13 attached to transcript.)
22       Have you ever seen this document,
23   Mr. Holmes?
24   A.  I'm sure I have.
25   Q.  I'll tell you without giving you the

Page 254

1    pleasure of reading through each and every
2    page --
3    A.  I appreciate it.
4    Q.  -- there, unless you would like to,
5    that this is an order in that case that we
6    just discussed that you filed against Fidelity
7    in connection with your flood insurance claims
8    dismissing Auto Club Family and Louis Noah
9    from the case.
10   A.  Okay.
11   Q.  Does that sound correct to you?
12   A.  I think so.
13   Q.  Now, do you recall Standard Mortgage
14   was also involved as a defendant in that
15   case?  Do you recall what happened to your
16   claim against Standard Mortgage?
17   A.  I -- I think we may have settled
18   outside.
19   Q.  Let me show you a document here just
20   to make sure the record is clear.
21       (Document marked as F. Holmes
22       Exhibit 14 attached to transcript.)
23   A.  Okay.  Okay.
24   Q.  Do you recognize this document, Mr.
25   Holmes?

Page 255

1    A.  I believe so, yes, sir.
2    Q.  Can you tell me what it is?
3    A.  It is basically a -- looks like a
4    settlement with Standard.
5    Q.  Up at the top of this document
6    there's the name V. J. -- I am going to have a
7    hard time pronouncing the last name --
8       MR. PALMINTIER:
9       You want to help him out?
10   EXAMINATION BY MR. THATCH:
11   Q.  D A U T E --
12   A.  Dauterive.
13   Q.  Dauterive?
14   A.  Dauterive.
15   Q.  V. J. Dauterive, Jr.  He was your
16   lawyer in your lawsuit against Fidelity for
17   your flood insurance claims?
18   A.  Regrettably, yes, sir.
19   Q.  Was he also your lawyer in your
20   lawsuit which you filed, which we'll talk
21   about in a minute, against Auto Club Family
22   under your home insurer's claims?
23   A.  Initially.
24   Q.  Do you recall the name of your
25   lawyer after Mr. Dauterive?

Page 256

1    A.  That would have been David Jarrell.
2    Q.  Can you spell that last name for me?
3    A.  J A R R E L L.
4    Q.  And I am going to butcher this name
5    again, but why did Mr. Dauterive -- Dauterive?
6    A.  Dauterive.
7    Q.  Dauterive?
8    A.  Uh-huh (affirmatively).
9    Q.  Why did Mr. Dauterive stop working
10   on the case?
11   A.  He was disbarred.
12   Q.  Now, in this letter there is an
13   amount here for $6,700.  Do you see that?
14   A.  Yes, sir.
15   Q.  Do you understand that to be the
16   settlement amount that you made with Standard
17   Mortgage in connection with this lawsuit?
18   A.  Yes, sir.  That's correct.  That
19   sounds correct.
20   Q.  The last party here I want to talk
21   about specifically is Fidelity themselves, and
22   you understand that the case against Fidelity
23   has -- is no longer moving?
24   A.  I understand that, yes, sir.  I
25   believe so.

Page 257

1  Q. Okay. Let's talk about the
2  insurance claims that you made under your
3  homeowner's policy to Auto Club.
4  A. Uh-huh (affirmatively).
5  Q. You made claims under your policy
6  with Auto Club for damage to the Perrin Drive
7  house and its contents in connection with wind
8  and wind-driven rain. Is that correct?
9  A. That's what the attorney -- Yes,
10 sir.
11 Q. And those claims that you made for
12 damages to the Perrin Drive house and the
13 contents of the house were denied by Auto Club
14 Family? Is that correct?
15 A. I am not sure. I don't know.
16 Q. Let me show you a letter here.
17 A. I'm not sure how -- unless I'm
18 misunderstanding the question.
19      MR. PALMINTIER:
20      Are we talking about the initial
21      homeowner's?
22 EXAMINATION BY MR. THATCH:
23 Q. The initial claims made under the
24 home insurance policy for insurance coverage.
25 A. Yes, sir. Yes, sir. I'm sorry. I

Page 258

1  misunderstood.
2  Q. No, that's all right. Just wanted
3  to make sure we're clear.
4      Let me show you a document here.
5  This is just to inform me more than anything
6  else. Do you recognize this document, Mr.
7  Holmes?
8      (Document marked as F. Holmes
9      Exhibit 15 attached to transcript.)
10 A. It looks familiar, yes, sir. Yes,
11 sir, I have seen this one.
12 Q. Now, down at the bottom -- Well, can
13 you describe the document for me?
14 A. It's an agreement for -- to take out
15 the insurance signed by myself and my wife.
16 Q. Down at the bottom of the page it
17 says here, "According to ACFIC's records, thus
18 far ACFIC has made the following payments to
19 you on account of the claim you have made
20 against ACFIC arising out of Hurricane
21 Katrina." And then there's a total listed
22 there under coverage C and D for $2,750. Do
23 you see that?
24 A. Yes, sir.
25 Q. Can you explain to me what that

Page 259

1  payment was for?
2  A. I don't recall right offhand.
3  Q. Do you recall receiving that payment
4  from Auto Club Family?
5  A. Yes, sir, I do.
6  Q. Okay. Let's talk for a minute about
7  the lawsuit that you filed against Auto Club
8  Family Insurance in connection with Hurricane
9  Katrina.
10 A. Yes, sir.
11 Q. Can you tell me why you filed that
12 lawsuit?
13 A. In regards to the homeowner's --
14 Q. Correct?
15 A. -- insurance?
16 Q. Correct.
17 A. Okay. I mean, they -- it was -- it
18 was something that we had filed. We didn't
19 know exactly to what extent, what damages.
20 Q. Can you explain then the claims that
21 you made in that lawsuit against Auto Club?
22 A. I mean, it's what -- whenever my
23 attorney, that's how it was filed.
24 Q. So you claimed that -- and this was
25 your homeowner's insurance. You claimed that

Page 260

1  a portion of your house and several of your
2  personal property items were damaged by wind
3  or wind-driven rain. Is that correct?
4  A. That's what was filed, yes, sir.
5  Q. And you also sought additional
6  living expenses in connection with the wind
7  and wind-driven rain damage to Perrin Drive
8  and its contents?
9  A. I'm sorry, what are you referring
10 to? I'm sorry.
11 Q. I'll rephrase. You also sought
12 additional living expenses in connection with
13 Hurricane Katrina on your home insurance
14 policy.
15 A. Yes, sir. I'm sorry.
16 Q. I'll show you a couple of documents
17 here.
18      (Document marked as F. Holmes
19      Exhibit 16 attached to transcript.)
20      Do you recognize this document,
21 Mr. Holmes?
22 A. I believe so.
23 Q. Can you tell me what it is?
24 A. It's the Petition For Damages
25 against Club Insurance.

Page 261

1  Q. So you understand this to be the
2  Petition For Damages filed in your lawsuit
3  against Auto Club Family?
4  A. Yes, sir, that's correct.
5  Q. If you look on that first page at
6  the bottom, under what's labeled as paragraph
7  Roman numeral IV, do you see that?
8  A. Yes, sir.
9  Q. It says "That on August 29, 2005,
10 the immovable property located at 1205 Perrin
11 Drive, Arabi, Louisiana, in the Parish of St.
12 Bernard, suffered extensive wind damage as a
13 result of Hurricane Katrina". Do you see
14 that?
15 A. Yes, sir.
16 Q. It says "More particularly, damages
17 include, but are not limited to, the
18 following: roof damage, wind damage to the
19 front door, wind-blown rain, mold, and
20 additional living expenses." Do you see that?
21 A. Yes, sir.
22 Q. And those were claims that you made
23 in this lawsuit in connection with your
24 insurance claims -- I'm sorry, rephrase.
25 These were claims that you made at the time

Page 262

1  against Fidelity under your homeowner's
2  insurance policy with respect to the house at
3  Perrin Drive?
4       MR. PALMINTIER:
5          I object to form.
6       THE WITNESS:
7          No. Against Fidelity?
8  EXAMINATION BY MR. THATCH:
9  Q. I'm sorry. It's getting late.
10 A. Okay. I'm sorry. I thought I
11 misheard.
12 Q. No, no, no, I'm glad you corrected.
13 These were claims for wind damage and
14 wind-driven rain damage to your house at
15 Perrin Drive and its contents against your
16 homeowner's insurance policy, Auto Club
17 Family?
18 A. It's what I filed with my attorney,
19 yes, sir.
20 Q. Let's look at another document
21 here.
22     (Document marked as F. Holmes
23     Exhibit 17 attached to transcript.)
24 A. Thank you.
25 Q. Do you have it, Mr. Holmes?

Page 263

1  A. Yes, sir.
2  Q. Do you recognize this document?
3  A. I'm not sure. I believe so.
4  Q. And can you describe it for me?
5  A. It would be a response to
6  interrogatories with Club Insurance.
7  Q. So these were responses that you
8  made to Auto Club Family's interrogatories in
9  connection with the case against Auto Club
10 Family?
11 A. Correct.
12 Q. Now, do you recall reviewing these
13 responses before they were filed in this
14 case?
15 A. I believe so, but I really don't
16 recall. It's been a little while.
17 Q. If you go to the page that's marked
18 ACFIC-000156, and then if you see at the
19 middle it says "Answer to Interrogatory number
20 4"? Do you see that?
21 A. Yes, sir.
22 Q. It says "We contend that there was
23 extensive wind damage to the exterior of the
24 house as well as a majority of the contents of
25 the household." Do you recall as we sit here

Page 264

1  today what portions of the exterior of the
2  house you claimed were damaged by wind as part
3  of this lawsuit?
4       MR. PALMINTIER:
5          I object to form.
6       THE WITNESS:
7          No, sir, I don't know.
8  EXAMINATION BY MR. THATCH:
9  Q. Do you recall what contents within
10 the house were damaged by wind?
11      MR. PALMINTIER:
12         I object to form.
13      THE WITNESS:
14         Again, I don't recall.
15 EXAMINATION BY MR. THATCH:
16 Q. Do you understand these discovery
17 responses to have been true and correct when
18 filed?
19      MR. PALMINTIER:
20         I object to form.
21      THE WITNESS:
22         I believe so, yes, sir.
23 EXAMINATION BY MR. THATCH:
24 Q. And the same question with respect
25 to the Petition For Damages that we looked at

Page 265

1 a couple of minutes ago?
2     MR. PALMINTIER:
3         I object to form.
4 EXAMINATION BY MR. THATCH:
5     Q. Do you understand that document to
6 have been true and correct when filed?
7     MR. PALMINTIER:
8         I object to form.
9     THE WITNESS:
10        Again, I believe so.
11 EXAMINATION BY MR. THATCH:
12    Q. Okay. Let me hand you another
13 document here.
14        (Document marked as F. Holmes
15    Exhibit 18 attached to transcript.)
16    A. Thank you.
17    Q. All right, Mr. Holmes. Do you
18 recognize this document?
19    A. I believe so.
20    Q. Can you tell me what it is?
21    A. A response to interrogatories
22 against Club Insurance.
23    Q. And do you recall having ever seen
24 this document before?
25    A. I'm not sure. I may have, I

Page 266

1 believe.
2    Q. Well, if you look on page 1 of this
3 document, under Interrogatory number 1 it says
4 "Utilizing the three-page contents list you
5 provided to ACFIC in your discovery responses"
6 -- Do you see that?
7    A. Yes, sir.
8    Q. Do you recall providing a three-page
9 contents list as part of your discovery
10 responses to Auto Club Financial in this case?
11    A. I recall providing documentation. I
12 don't recall.
13    Q. If we go back a couple of pages
14 here, it's actually page 175 is the Bates
15 number.
16    A. Okay.
17    Q. You have it?
18    MR. PALMINTIER:
19        Which one?
20    MR. THATCH:
21        Page 175.
22    MR. PALMINTIER:
23        Yes, I've got it.
24 EXAMINATION BY MR. THATCH:
25    Q. Have you seen this document before,

Page 267

1 this page in this document that's Bates
2 stamped ACFIC-000175?
3    A. Yes, sir.
4    Q. Can you tell me what it is?
5    A. A -- Looks like a letter sent to V.
6 J. Dauterive.
7    Q. And was this letter -- this is the
8 letter that you sent the V. J. attaching the
9 list of contents that we described a few
10 minutes ago?
11    A. Correct.
12    Q. And it says here "V. J., I have
13 included a listing of items that were damaged
14 either by the wind or wind-driven rain that
15 was allowed to come into the house prior to
16 the flood waters through the front door being
17 blown off of its hinges. The rear porch and
18 attached shed was lifted and dislodged,
19 effectively destroying all contents." Is that
20 correct?
21    A. That's -- That's what we wrote, yes,
22 sir.
23    Q. If you go back a couple of pages
24 more, there's a Bates that's ACFIC-000185. Do
25 you see that document?

Page 268

1    A. Yes, sir.
2    Q. Can you tell me what that is?
3    A. Just a listing of items.
4    Q. Do you understand this to be the
5 listing of contents from your home on Perrin
6 Drive that you provided to V. J. that was
7 referred to on page 175 in that brief letter?
8    A. I don't think it's complete.
9    MR. PALMINTIER:
10        I object to form.
11    THE WITNESS:
12        I don't think it's a complete
13    listing.
14 EXAMINATION BY MR. THATCH:
15    Q. I see three pages here. Do you
16 believe there are more than three pages?
17    A. I don't recall.
18    Q. Now, this contents list here that's
19 provided, did you provide this list to Scott
20 Taylor at any point?
21    A. I don't recall. I really don't
22 recall.
23    Q. And if you look back a couple of
24 pages, starting at 188 -- Well, it looks like
25 what happened here is this list was created in

Page 269

```
 1   an Excel spreadsheet and then some of these
 2   pages, the columns bled into additional
 3   pages.
 4       A.  Okay.
 5       Q.  But on pages 188 through 190 you
 6   have listed throughout all three of those
 7   pages wind-driven rain and mold.  Is that
 8   correct?
 9            MR. PALMINTIER:
10               I object to form.
11            THE WITNESS:
12               That's what's written, yes, sir.
13   EXAMINATION BY MR. THATCH:
14       Q.  Now, do you recall -- First of all,
15   you recall creating this list?
16       A.  I recall providing information.  I
17   don't recall exact, but I remember providing.
18       Q.  Well, my question is did you create
19   the list?
20       A.  Yes, I believe so.
21       Q.  And did you create it on your own or
22   did you create it with other -- with your
23   wife's help, for instance?
24       A.  I'm sure I would have had my wife's
25   help.
```

Page 270

```
 1       Q.  And at the time that you created
 2   this list and provided it to V. J. in your
 3   case against Auto Club Financial, you
 4   understood that the contents listed here in
 5   this document were damaged by wind-driven
 6   rain?
 7            MR. PALMINTIER:
 8               Object to form.
 9   EXAMINATION BY MR. THATCH:
10       Q.  And/or wind?
11            MR. PALMINTIER:
12               I object to form.
13            THE WITNESS:
14               I don't know.
15   EXAMINATION BY MR. THATCH:
16       Q.  Now, your lawsuit against Auto Club
17   Financial was ultimately settled.  Is that
18   correct?
19       A.  Correct.
20       Q.  Do you recall the settlement
21   amount?
22       A.  Not right offhand, no, sir.
23       Q.  Let me see if this helps.
24            (Document marked as F. Holmes
25         Exhibit 19 attached to transcript.)
```

Page 271

```
 1            Do you recognize this document,
 2   Mr. Holmes?
 3       A.  I believe so, yes, sir.
 4       Q.  If you go to the last page, which is
 5   ACFIC-000010, that's your signature on that
 6   page?
 7       A.  Yes, sir.
 8       Q.  Correct?
 9       A.  On the last page, yes, sir.
10       Q.  If you go back to the first page, at
11   the top it says "Amount of payment".
12       A.  Yes, sir.
13       Q.  "$20,000".  Do you see that?
14       A.  Yes, sir.  Okay.
15       Q.  Do you understand that to have been
16   the amount that you settled with Auto Club
17   for?
18       A.  Yes, sir.
19       Q.  Okay.  Let's talk for a minute about
20   your Road Home claim.  We talked about a
21   little bit earlier that following Katrina you
22   applied for assistance to the Road Home
23   Program.  Is that correct?
24       A.  That's correct.
25       Q.  And am I correct that Road Home
```

Page 272

```
 1   offered you four different options as part of
 2   its recovery program in connection with that
 3   assistance?
 4       A.  I don't recall a fourth.  I remember
 5   three.  I don't remember four.
 6       Q.  Well, it may just be that I am being
 7   particular and specific when I include the
 8   fourth option, which was decline assistance
 9   from Road Home.
10       A.  Oh, very good.
11       Q.  Do you remember the first three
12   options?
13       A.  I believe so.
14       Q.  Okay.  I'll show you a couple of
15   documents just to clarify.
16            (Document marked as F. Holmes
17         Exhibit 20 attached to transcript.)
18            Do you recognize this document,
19   Mr. Holmes?
20       A.  I believe I have seen this before,
21   yes, sir.
22       Q.  Can you tell me what it is?
23       A.  It looks like the Road Home
24   information.
25       Q.  On the page that's numbered at the
```

Page 293

```
 1       -- they're incomplete.  So I
 2   have those forms with me.  And instead
 3   of doing it today, we can at some
 4   point tomorrow fill those out, because
 5   I need your authorizations and then
 6   we'll file them and get the
 7   documents.
 8     MR. PALMINTIER:
 9       We will fill those out tomorrow.
10     MR. THATCH:
11       Perfect.
12     MR. PALMINTIER:
13       All right.
14     MR. THATCH:
15       All right.  That's it for me.
16     VIDEO OPERATOR:
17       We're now going off the record.
18          *   *   *
```

Page 294

```
 2         WITNESS'S CERTIFICATE
 4        I, FRED NELSON HOLMES, JR., read or
 5   have had the preceding testimony read to me,
 6   and hereby certify that it is a true and
 7   correct transcription of my testimony, with
 8   the exception of any attached corrections or
 9   changes.

12          _____
             (Witness' Signature)
13   _____
     DATE SIGNED

15   DEPONENT PLEASE INITIAL ONE:

        _____ Read with no corrections

18      _____ Read and correction sheet attached

     DATE TAKEN:  SEPTEMBER 24, 2011
```

Page 295

```
 2         REPORTER'S CERTIFICATE

 4        I, ROGER D. JOHNS, RMR, RDR, CRR,
 5   Certified Court Reporter, do hereby certify
 6   that the above-named witness, after having
 7   been first duly sworn by me to testify to the
 8   truth, did testify as hereinabove set forth;
 9   that the testimony was reported by me in
10   shorthand and transcribed under my personal
11   direction and supervision, and is a true and
12   correct transcript, to the best of my ability
13   and understanding; that I am not of counsel,
14   not related to counsel or the parties hereto,
15   and not in any way interested in the outcome
16   of this matter.


20             ROGER D. JOHNS
21         CERTIFIED COURT REPORTER
22            STATE OF LOUISIANA
```