## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES    CIVIL ACTION
CONSOLIDATED LITIGATION          NO. 05-4182 K2
                                 JUDGE DUVAL
PERTAINS TO MRGO                 MAG. WILKINSON
FILED IN: 05-4181, 05-4182, 05-5237, 05-6073,
         05-6314, 05-6324, 05-6327, 05-6359,
         06-0225, 06-0886, 06-1885, 06-2152,
         06-2278, 06-2287, 06-2824, 06-4024,
         06-4065, 06-4066, 06-4389, 06-4634,
         06-4931, 06-5032, 06-5155, 06-5159,
         06-5156, 06-5162, 06-5260, 06-5771,
         06-5786, 06-5937, 07-0206, 07-0621,
         07-1073, 07-1271, 07-1285

              * * *

Deposition of BARBARA JEAN LIVERS,
given at the offices of Bruno & Bruno, 855
Baronne Street, New Orleans, Louisiana 70113,
on September 15th, 2011.
REPORTED BY:
    JOSEPH A. FAIRBANKS, JR., CCR, RPR
    CERTIFIED COURT REPORTER #75005

## Page 2

APPEARANCES:

REPRESENTING THE PLAINTIFFS:
    LAW OFFICE OF GERALD N. ANDRY, JR.
    (BY:  GERALD N. ANDRY, JR., ESQUIRE)
    710 Carondelet Street
    New Orleans, Louisiana 70130
    504-581-4334
- and -
    ANDRY LAW GROUP, LLC
    (BY:  MICHELLE PURCHNER, ESQUIRE)
    610 Baronne Street
    New Orleans, Louisiana 70113
    504-586-8899

REPRESENTING THE UNITED STATES OF AMERICA:
    U.S. DEPARTMENT OF JUSTICE
    (BY:  JAMES F. MCCONNON, JR., ESQUIRE)
    Torts Branch, Civil Division
    P.O. Box 888
    Benjamin Franklin Station
    Washington, D.C. 20044
    202-616-4289

## Page 3

REPRESENTING WASHINGTON GROUP INTERNATIONAL,
    INC.:
    JONES DAY
    (BY:  CHRIS FARRELL, ESQUIRE)
    51 Louisiana Avenue, N.W.
    Washington, D.C. 20001-2113
    202-879-4645
- and -
    STONE PIGMAN WALTHER WITTMANN, L.L.C.
    (BY:  WILLIAM D. TREEBY, ESQUIRE)
    546 Carondelet Street
    New Orleans, Louisiana 70130
    504-581-3200

VIDEOGRAPHER:
    GEORGETTE RINKUS (HART VIDEO)

ALSO PRESENT:
    ALVIN L. LIVERS, SR.

## Page 4

E X A M I N A T I O N   I N D E X

EXAMINATION BY:                        PAGE
MR. FARRELL  ...............................6
MR. MCCONNON ..............................84
MR. ANDRY    ..............................87

    E X H I B I T   I N D E X

EXHIBIT NO.                            PAGE
Exhibit 1   ...............................24
Exhibit 2   ...............................25
Exhibit 3   ...............................65
Exhibit 4   ...............................84
Exhibit 5   ...............................93

Page 21

1   Q.  How much would you say you spent on
2   food in a week?
3   A.  Before Katrina?
4   Q.  Before Katrina.
5   A.  Um -- I would say approximately
6   $110 -- well, say $100 a week.  That sound
7   close.
8   Q.  Okay.  Okay.  How many nights a week
9   would you go out to eat dinner?
10  A.  Once or twice.
11  Q.  And then you prepared the other meals
12  at home?
13  A.  Yes.
14  Q.  Did you ever take clothes to the dry
15  cleaners or the pressers?
16  A.  Yes.
17  Q.  How often would you do that?
18  A.  Um -- maybe twice a month.
19  Q.  And can you tell me how much that
20  cost?
21  A.  Let's see.  I'm doing a guess.  I
22  would say about $6.  At that time, it wasn't
23  that expensive.  I'd say $6 a week.  I mean, I
24  say twice a week.  $12.  I'd say $12.
25  Q.  $12 a week?

Page 22

1   A.  Every two weeks.
2   Q.  I'm sorry.  You're right.  Every two
3   weeks.  Any other monthly expenses around the
4   house that we haven't discussed before the
5   storm?
6   A.  I don't think so.  I think you have
7   them all.
8   Q.  Okay. Mrs. Livers, you and your
9   husband and your mother-in-law, together,
10  evacuated from New Orleans --
11  A.  Yes.
12  Q.  -- for Katrina, right?  Can you
13  remember what day that was that you did that?
14  A.  I think it was Saturday.
15  Q.  Saturday?
16  A.  Uh-huh.
17  Q.  And was it in the morning?
18  A.  I think it was around twelve o'clock.
19  Q.  Around twelve o'clock?
20  A.  I think it was 12:00, because I did my
21  home (inaudible) first.
22  Q.  When you evacuated, did you take any
23  valuables with you, jewelry or anything?
24  A.  No.  We thought we was coming back the
25  next day.

Page 23

1   Q.  Were you wearing any jewelry when you
2   left?
3   A.  No.
4   Q.  Did you ever return to the home on
5   St. Claude Avenue after Hurricane Katrina?
6   A.  Yes.
7   Q.  When did you do that?
8   A.  It may have been a couple of weeks
9   afterwards.  I didn't go right away because I
10  didn't want -- I didn't want to go.  Um -- I
11  think it was about two or three weeks later,
12  after my husband cleaned up most of the debris.
13  Q.  Okay.  So just so I'm clear, it was --
14  I think I understand you -- it was not two
15  weeks after Katrina --
16  A.  I would say three.  I would say three.
17  Three weeks.
18  Q.  Three weeks after your husband first
19  went back?
20  A.  Yes.
21  Q.  Okay.  Mrs. Livers, do you remember
22  ever making a list of the contents for your
23  home for State Farm Insurance Company?
24  A.  Yes.
25  Q.  And when did you do that?

Page 24

1   A.  I want to say a year after the storm.
2   I mean when -- I don't know.  See, I never
3   handled that.  My husband handled that.
4   Q.  But you remember putting --
5   A.  I made the list.
6   Q.  And is it fair to say when you made
7   this list you tried to make it as complete as
8   possible?
9   A.  Yes.
10  Q.  And as accurate as possible?
11  A.  Yes.
12  Q.  Okay.
13  A.  Most of it is estimation.
14  Q.  Sure.  I understand.  Let me introduce
15  an exhibit.  Mrs. Livers, I'm handing you
16  what's been marked as Exhibit 1.  Can you take
17  a look at this, tell me if you recognize it?
18      (Exhibit 1 was marked for
19  identification and is attached hereto.)
20  A.  Yes.
21  EXAMINATION BY MR. FARRELL:
22  Q.  What is this?
23  A.  My daughter sent this.  I was
24  wondering why AmSouth was on here.  I know why
25  now.  My daughter made copies.  State Farm

```
                                                    Page 25
 1   inventory list.
 2      Q.  Okay.  You just mentioned, as you were
 3   flipping through it -- you said you didn't
 4   understand at first why AmSouth was on there?
 5      A.  Oh, yeah.  My daughter faxed it for
 6   me.
 7      Q.  Okay.
 8      A.  Yeah.  I was still over in Marrero.
 9      Q.  Okay.  And it looks like the date on
10   this is October 19th, 2005?
11      A.  That's right.  That's what they have,
12   yes.
13      Q.  Okay.  And this is your daughter's
14   handwriting on the first page?
15      A.  Yes.  First page.
16      Q.  Okay.  And then the rest is yours?
17      A.  Yes.
18      Q.  Okay.  Mrs. Livers, um -- I'd like you
19   to set this document aside for a moment.  Keep
20   it handy.  And I'd like to introduce another
21   exhibit for you.  (Tendering.)  I'm showing you
22   what's been marked as Exhibit 2.
23          (Exhibit 2 was marked for
24   identification and is attached hereto.)
25      A.  Uh-huh.

                                                    Page 26
 1   EXAMINATION BY MR. FARRELL:
 2      Q.  Do you recognize this document,
 3   Mrs. Livers?
 4      A.  Yes.  Yes.
 5      Q.  And what is this?
 6      A.  This is the contents of the flood -- I
 7   mean after the flood.  Um -- I'm not sure who
 8   it's for, but it's contents after the flood.
 9      Q.  You said you're not sure who this is a
10   contents list for?
11      A.  Yeah.
12      Q.  Do you recognize the handwriting?
13      A.  That's my handwriting.
14      Q.  Okay.  What do you mean when you say
15   you don't recognize who it's a contents list
16   for?
17      A.  Well, I don't see anything on the
18   front.  We filled out so many forms at that
19   time I really don't know which ones, you know,
20   I did and which ones I didn't.
21      Q.  Okay.  Do you know who Scott Taylor
22   is?
23      A.  Yes.  I've heard of him.
24      Q.  Who is he?
25      A.  Um -- my husband spoke with him, um --

                                                    Page 27
 1   I'm not sure.  Names I don't know.
 2      Q.  Okay.  You've never spoken with
 3   Mr. Taylor?
 4      A.  No.  My husband.
 5      Q.  He never reached out to speak with
 6   you?
 7      A.  Not that I know of.
 8      Q.  Okay.  And I'm sorry.  What do you
 9   mean not that you know of?
10      A.  I mean I don't remember.
11      Q.  You don't remember speaking with him?
12      A.  I don't remember speaking with him.
13      Q.  Okay.  But this is your handwriting?
14      A.  It is my handwriting.
15      Q.  And do you remember filling this out?
16      A.  Yes.  When?  Don't ask me.  I don't
17   know.  I don't know.  But you said -- okay.
18   All right.
19      Q.  Okay.  Do you know what your
20   handwriting is listing out here?
21      A.  I didn't understand.
22         MR. ANDRY:
23            Objection to the form.
24   EXAMINATION BY MR. FARRELL:
25      Q.  That was a bad question.  I'll make it

                                                    Page 28
 1   a better question.
 2         You said you don't know what this list
 3   is.  Can you look through it quickly, does this
 4   look like a list of the contents of your home?
 5      A.  It is.  But when I said that, I meant
 6   who it's for.  You know what I'm saying?
 7      Q.  I see.
 8      A.  Who sent it to us to --
 9      Q.  I understand.  I understand now.
10      A.  Right.
11      Q.  What I'd like to do is I want to ask
12   you -- you said that this is your
13   handwriting --
14      A.  (Nods affirmatively.)
15      Q.  -- and, um -- that you filled this
16   out.  Do you remember -- you said you didn't
17   remember exactly when you filled it out.  Did
18   you fill it out this year?
19      A.  I'm not sure.
20      Q.  Okay.
21      A.  I remember having something on the
22   dresser for a while, and I think it was -- I
23   had to get it done, so I went on and did it,
24   but I -- I don't remember how long it's been.
25   There are no dates on this, and I don't know.
```

Page 93

1  THE WITNESS:
2      Sure.  (Tendering.)
3  MR. FARRELL:
4      Thank you.
5      (Exhibit 5 was marked for
6  identification and is attached hereto.)

Page 95

1         REPORTER'S CERTIFICATE
2      I, JOSEPH A. FAIRBANKS, JR., CCR, RPR,
3  Certified Court Reporter in and for the State
4  of Louisiana, do hereby certify that the
5  aforementioned witness, after having been first
6  duly sworn by me to testify to the truth, did
7  testify as hereinabove set forth;
8      That said deposition was taken by me
9  in computer shorthand and thereafter
10 transcribed under my supervision, and is a true
11 and correct transcription to the best of my
12 ability and understanding.
13     I further certify that I am not of
14 counsel, nor related to counsel or the parties
15 hereto, and am in no way interested in the
16 result of said cause.
17
18
19
20
21
22
23     _____
24     JOSEPH A. FAIRBANKS, JR., CCR, RPR
25     CERTIFIED COURT REPORTER #75005

Page 94

1         WITNESS' CERTIFICATE
2
3      I, BARBARA JEAN LIVERS, do hereby
4  certify that the foregoing testimony was given
5  by me, and that the transcription of said
6  testimony, with corrections and/or changes, if
7  any, is true and correct as given by me on the
8  aforementioned date.
9
10 _____    _____
11 DATE SIGNED     BARBARA JEAN LIVERS
12
13 _____ Signed with corrections as noted.
14
15 _____ Signed with no corrections noted.
16
17
18
19
20
21
22
23
24
25 DATE TAKEN: September 15th, 2011

24 (Pages 93 to 95)