ETHEL COATS                                                                                      7/17/2007

### Page 1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES    CIVIL ACTION
CONSOLIDATED LITIGATION
               NO. 05-4182 "K"(2)
PERTAINS TO: MRGO         JUDGE DUVAL
FILED IN: 05-4181, 05-4182,    MAG. WILKINSON
05-5237, 05-6073, 05-6314,
05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885,
06-2152, 06-2278, 06-2287,
06-2824, 06-4024, 06-4065,
06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155,
06-5159, 06-5161, 06-5162,
06-5260, 06-5771, 06-5786,
06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285
```

Videotaped deposition of ETHEL COATS, 756 Louisiana Avenue, New Orleans, Louisiana 70115, taken in the offices of Bruno & Bruno, 855 Baronne Street, New Orleans, Louisiana 70113, on Tuesday, the 17th day of July, 2007, beginning at 9:28 a.m.

APPEARANCES:
   ARTHUR W. LANDRY AND JEANNE ANDRY LANDRY
    (BY:  ARTHUR W. LANDRY)
   710 Carondelet Street
   New Orleans, Louisiana 70130

     ATTORNEYS FOR THE PLAINTIFFS

### Page 2

1  APPEARANCES CONTINUED:
2    DUPLASS, ZWAIN, BOURGEOIS, MORTON, PFISTER
    & WEINSTOCK
3     (BY:  NICOLE M. BOYER)
   Suite 2900
4    3838 North Causeway Boulevard
   Metairie, Louisiana 70002
5
     ATTORNEYS FOR THE BOARD OF
6      COMMISSIONERS FOR THE LAKE BORGNE
    BASIN LEVEE DISTRICT
7
  STONE PIGMAN WALTHER WITTMANN
8    (BY:  CARMELITE M. BERTAUT)
  546 Carondelet Street
9    New Orleans, Louisiana 70130-3588
10     AND
11   JONES DAY
   (BY:  AMY PAYNE)
12   2727 North Harwood Street
   Dallas, Texas 75201-1515
13
     ATTORNEYS FOR WASHINGTON GROUP
14     INTERNATIONAL, INC.
15 ALSO PRESENT:
16   EMMA I. DiANNA
  STONE PIGMAN WALTHER WITTMANN
17   546 Carondelet Street
  New Orleans, Louisiana 70130-3588
18
19 VIDEOTAPED BY:
20   GILLEY DeLORIMIER, C.L.V.S.
  Depo-Vue, Inc.
21   Suite 205
  3200 Ridgelake Drive
22   Metairie, Louisiana 70002
  (504) 828-8856 or (888) 337-6883
23
  REPORTED BY:
24
   CAROL VALLETTE SLATER
25   Certified Court Reporter
   Registered Professional Reporter

### Page 3

1           I N D E X
2
3   EXAMINATION BY:                        PAGE
4    MS. PAYNE                              5
5
6
7
8
9   EXHIBITS:
10  Coats Exhibit Number 1                 66
   Coats Exhibit Number 2                 67
11  Coats Exhibit Number 3                 68
   Coats Exhibit Number 4                 82
12  Coats Exhibit Number 5                 83
   Coats Exhibit Number 6                 96
13  Coats Exhibit Number 7                 96
   Coats Exhibit Number 8                 98
14  Coats Exhibit Number 9                144

### Page 4

1          S T I P U L A T I O N
2       IT IS STIPULATED AND AGREED by and
3   between counsel for the parties hereto that the
4   deposition of the aforementioned witness is
5   hereby being taken under the Federal Rules of
6   Civil Procedure, for all purposes, in accordance
7   with law;
8       That the formalities of reading and
9   signing are specifically not waived;
10      That the formalities of sealing,
11  certification and filing are specifically waived;
12      That all objections, save those as
13  to the form of the question and the responsiveness
14  of the answer, are hereby reserved until such
15  time as this deposition, or any part thereof, may
16  be used or sought to be used in evidence.
17
18        * * * *
19
20      CAROL VALLETTE SLATER, Certified
21  Court Reporter, Registered Professional Reporter,
22  in and for the Parish of Orleans, State of
23  Louisiana, officiated in administering the oath
24  to the witness.
25

Page 57

```
 1      Q.   Before Hurricane Katrina, you had
 2  never had any blood pressure problems?
 3      A.   No.
 4      Q.   Is that correct?
 5      A.   Right.
 6      Q.   And then the nerve pills to help
 7  calm you down --
 8      A.   Right.
 9      Q.   -- that was something that you
10  started taking after the storm?
11      A.   Yes.
12      Q.   Had you ever taken any kind of nerve
13  pills or --
14      A.   No.  No.
15      Q.   Okay.  We're starting to talk over
16  each other a little bit again.
17      A.   I'm sorry.
18      Q.   It's okay.  It's hard to remember
19  because in a normal conversation, it's natural to
20  talk back and forth like that.  We just have to
21  remember she's taking down what we say.
22           Okay.  This is just another preview,
23  overview question.  We can get into more details
24  later.  But I want to get a preliminary list of
25  any type of claims you made for assistance or
```

Page 58

```
 1  insurance claims, anything like that, to recover
 2  for the storm, and I know you said earlier you
 3  had your flood insurance with Alliance; is that
 4  right?
 5      A.   Yes.
 6      Q.   And your homeowner's insurance also
 7  with Alliance?
 8      A.   Yes.
 9      Q.   Did you have any other kind of
10  insurance?
11      A.   No.
12      Q.   What about The Road Home Program,
13  did you make a claim for assistance under that?
14      A.   Yes.
15      Q.   How much did The Road Home Program
16  pay you -- or have you received money from The
17  Road Home Program yes?
18      A.   Well, they say 76,000.
19      Q.   They paid -- The Road Home Program
20  paid you $76,000?
21      A.   Yes.
22      Q.   And how much did your flood
23  insurance pay?
24      A.   One twenty-five.
25      Q.   A hundred twenty-five thousand?
```

Page 59

```
 1      A.   Yes.
 2      Q.   Was that the policy limit, the
 3  maximum amount you were insured for?
 4      A.   Yes.
 5      Q.   What about your homeowner's
 6  insurance, how much did that pay?
 7      A.   Thirty-three dollars.
 8      Q.   It sounded like you said $33.
 9      A.   Thirty-three dollars for -- let me
10  see -- one was 33 and one was 1,017 -- 1,700.
11  One check was for 33 and one check for was for
12  17 -- 1,700.
13      Q.   Seventeen hundred?
14      A.   Uh-huh.  One thousand, seven hundred
15  dollars.
16      Q.   So, they sent you one check for only
17  $33?
18      A.   Thirty-three dollars.
19      Q.   What was that check for $33 for?
20      A.   My fence.
21      Q.   Oh, the fence.  But it probably cost
22  more than $33 to repair it, right?
23      A.   That's what they say.  Yeah.
24  Thirty-three dollars.  Yes.
25      Q.   Okay.  And what was the 1,700 for?
```

Page 60

```
 1      A.   To fix the damage on the roof.
 2      Q.   So, the maximum you got from your
 3  homeowners was $17,033.
 4  MR. LANDRY:
 5           Object.  Seventeen hundred.
 6  MS. PAYNE:
 7           My mistake.  Thank you,
 8  Counsel.
 9  MR. LANDRY:
10           Sure.
11  EXAMINATION BY MS. PAYNE:
12      Q.   One thousand, seven hundred
13  thirty-three dollars was the maximum you got for
14  your homeowner's insurance?
15      A.   Yes.
16      Q.   What about FEMA?  Did you get any
17  assistance from FEMA?
18      A.   No.  All but the 2,500 they send you
19  when it first happened.
20      Q.   Twenty-five hundred?
21      A.   I think it was 2,500 they give
22  everybody.
23      Q.   Did you apply for additional
24  assistance from FEMA?
25      A.   I did, but they say I wasn't
```

Page 169

1  A.  What I said was my daughter, she
2  would give me a helping hand, like, $200 a month,
3  but that was it.
4  Q.  Did she give you $200 every month?
5  A.  No, not every month, no.  Just
6  something to -- you know, sometimes she would
7  help me if my light bill be kind of high or
8  something like that, you know.
9  Q.  Was there a set amount that she paid
10 you, a minimum and then sometimes paid you more,
11 or did it just depend?
12 A.  It was just -- depend on, you know,
13 how high was the light bill, the water bill or
14 something like that.
15     MS. PAYNE:
16         I don't have anything else.
17 Thank you very much, Mrs. Coats.
18 Thank you.
19     MS. BOYER:
20         Nothing.
21     MR. LANDRY:
22         Finished?
23     MS. BOYER:
24         Oh, no.  No.  I said no.
25     MS. BERTAUT:

Page 170

1         Okay.  We're done.
2     MR. LANDRY:
3         Thank you.
4     THE VIDEOGRAPHER:
5         This concludes this
6  deposition.  It's 2:09 p.m.
7         (Whereupon, the testimony of
8  the witness was concluded.)

Page 171

1              WITNESS' CERTIFICATE

5      I, ETHEL COATS, read or have had the
6  foregoing testimony read to me and hereby certify
7  that it is a true and correct transcription of my
8  testimony, with the exception of any attached
9  corrections or changes.

15         (Witness' Signature)

Page 172

1              REPORTER'S CERTIFICATE

4      I, CAROL VALLETTE SLATER, Certified
5  Court Reporter, Registered Professional Reporter,
6  in and for the State of Louisiana, as the officer
7  before whom this testimony was taken, do hereby
8  certify that ETHEL COATS, after having been duly
9  sworn by me upon authority of R.S. 37:2554, did
10 testify as hereinbefore set forth in the
11 foregoing pages; that this testimony was reported
12 by me in the stenotype reporting method, was
13 prepared and transcribed by me or under my
14 personal direction and supervision, and is a true
15 and correct transcript to the best of my ability
16 and understanding; that I am not related to
17 counsel or the parties herein, nor am I otherwise
18 interested in the outcome of this matter.

21     CAROL VALLETTE SLATER (CCR 78020)
       CERTIFIED COURT REPORTER
22     REGISTERED PROFESSIONAL REPORTER