UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO | § | |
| *Armstrong,* No. 10-866 | § | |
| _____ | § | |

**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE
DUPLICATIVE TESTIMONY BY DEFENDANTS' EXPERT WITNESSES**

The plaintiffs move for an order prohibiting cumulative testimony and compelling the defendants to identify which of their experts are expected to testify on three broad topics. The ostensible grounds for the motion are "streamline the trial, conserve the parties' and the Court's time and resources, and permit Plaintiffs' counsel to prepare properly for the subject matters each expert will actually testify upon."[1]  The motion should be denied because it would accomplish none of these.

The Court has already limited the parties' trial presentations by imposing a time limit and by requiring the parties to present their experts' direct testimony summarily.  These restrictions will accomplish the goals cited by the plaintiffs.  Further, the notion that cumulative testimony can be prevented by carving up broad topics and distributing the pieces to individual experts is untenable.   The three topics listed by the plaintiffs overlap, and the experts—both parties' experts, not just the defendants'—will not be able to explain

---

[1]Plt. Mem. 1.

-1-

and support their opinions if they are categorically precluded from testifying about certain topics on which their testimony would otherwise touch. This case requires testimony by experts from interrelated disciplines—geology, geotechnical engineering, hydrogeology, and hydrology. To be sure, the geologists in this case—the plaintiffs' and the United States'—will be testifying about the EBIA soils, as will each party's geotechnical engineers. The plaintiffs have two experts addressing standard-of-care issues; each defendant has only one. Plaintiffs' motion, if granted, would prevent either Washington Group or the United States from defending itself against the plaintiffs' negligence allegations. In other areas the motion would pit the defendants against one another by forcing them to negotiate over which party's expert would be allowed to present a defense to allegations aimed at both defendants.

Sufficient incentives to streamline direct expert testimony and avoid repetitious testimony are now in place. Because the Court has imposed time and testimony restrictions that will even-handedly eliminate needless presentation of cumulative evidence, the plaintiffs' motion should be denied.

## ARGUMENT

**I. The Court need not impose additional limits on the presentation of evidence.**

"Under Rule 403, evidence, though relevant, may be excluded if its probative value is substantially outweighed 'by considerations of . . . needless presentation of cumulative evidence."[2] "[I]t is well within the discretion of the trial court to limit the number of

---

[2]*French v. Allstate Indem. Co.,* 637 F.3d 571, 578 (5th Cir. 2011) (quoting Fed. R. Evid. 403).

witnesses who testify at trial."[3]  Nevertheless, the court's powers under Rule 403 "should be used only sparingly."  They should not be used "to 'even out' the weight of evidence."[4]

The Court has exercised its Rule 403 powers by prescribing time limits and summary presentation of expert testimony.[5]  At the pretrial conference the Court made it clear that these restrictions are aimed at streamlining the presentation of expert testimony and eliminating the needless presentation of cumulative evidence.  This is a trial to the Court.  The parties are under no illusions about the Court's limited patience if cumulative evidence is needlessly presented.

Mindful of the caution with which Rule 403 should be used to exclude relevant evidence, courts have declined to define expert testimony as needlessly cumulative when that testimony differs in small but definable ways from other expert testimony. In *Johnson v. United States*, the Eleventh Circuit ruled that a district court committed reversible error by excluding an expert witness from testifying in a medical-malpractice suit.[6]  The excluded expert analysis was not duplicative, because it differed in some respects from other experts' analyses and was based on some evidence not considered by the other experts.[7]  The court of appeals also cited the excluded expert's unique qualifications as a point of differentiation that distinguished his testimony from that of the other experts.

---

[3]*Aetna Cas. & Surety Co. v. Guynes,* 713 F.2d 1187, 1193 (5th Cir. 1983).

[4]*United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

[5]*See also* Fed. R. Evid. 703.

[6]780 F.2d 902 (11th Cir. 1968).

[7]*Id.* at 906.

Similarly, in *Banks v. United States,* the court recognized that the "unique educational backgrounds" of three expert witnesses enabled them to view the evidence from different perspectives.[8] On that basis the court concluded that their opinions, which overlapped to a degree, were not "unnecessarily cumulative pursuant to FRE 403."[9] Other courts have also determined that the mere overlap of expert opinions does not warrant exclusion under Rule 403.[10]

The United States has assembled a team of experts who have *complementary, not redundant,* areas of expertise. Dr. Thomas Naymik, Ph.D., P.G., is a hydrogeologist. He monitored the pumping tests performed by Fugro Consultants last summer and fall. He evaluated the pumping-test data to determine the permeability of the soils near the EBIA on behalf of the United States. Among the parties' experts, he is uniquely qualified by his training and experience. Prior to receiving a Ph.D. from the Ohio State University, he garnered an M.S. from Louisiana State University, where his studies and research focused on deltaic sedimentation on the Mississippi Delta and clay mineralogy. In 2009, Dr. Naymik reinterpreted the surface water and groundwater data at a site south of Lake Charles, Louisiana. He analyzed the connectivity of flow paths via surface water and groundwater that could create a complete pathway for the migration of contaminated groundwater. Results of his analysis were submitted to Louisiana DEQ. Also in 2009, Dr. Naymik provided a geological interpretation of a site near Ville Platte, Louisiana, based on

---

[8] 93 Fed.Cl. 41, 51 (Fed. Cl. 2010).

[9] *Id.*

[10] *See, e.g., Piskura v. Taser Int'l,* No. 1:10-cv-248, 2012 WL 1267990 at *3 (S.D. Ohio April 13, 2012); *Rodriguez v. County of Stanislaus,* No. 1:08-cv-00856, 2010 Wl 2720940 at *2 (E.D. Cal. July 8, 2010).

groundwater monitoring wells and surface-water impoundments, for submission to LDEQ. In the past five years he has provided expert reports or testimony in three Louisiana state-court cases.

Dr. Thomas L. Brandon, Ph.D., P.E., is one of the foremost experts on soil strength and slope stability. The Director of the W. C. English Geotechnical Engineering Research Laboratory at the Virginia Polytechnic Institute and State University (Virginia Tech), Dr. Brandon has taught seepage and slope-stability analysis for nearly three decades. He has consulted on more than a score of dam and levee projects in the Western Hemisphere and Asia. Like Dr. Bea, he was among the earliest investigators of the floodwall failures along the outfall canals and the IHNC. He is the principal author of the only published paper describing the tension-gap formation that results when storm surge rises up against I-walls. He frequently performs levee and floodwall assessments in Louisiana and elsewhere. Dr. Brandon will be a keynote speaker at the American Society of Civil Engineers 2013 GeoCongress, presenting his views on shear strength. Dr. Brandon analyzed seepage and slope stability using SEEP/W and SLOPE/W software.

Dr. W. Allen Marr, Ph.D., P.E., an elected member of the prestigious National Academy of Engineering, has also been selected to address the 2013 GeoCongress. His familiarity with Louisiana soils dates to the late 1980s, when he advised Eustis Engineering on methods to measure the stiffness of clay soils. Recently Dr. Marr has been engaged by private-sector and governmental entities who are repairing, improving, and replacing flood-protection structures along the Gulf coast. The Louisiana Office of Coastal Protection and Restoration selected Dr. Marr to lead the development of a new system for real-time monitoring of the

levees surrounding New Orleans.  Dr. Marr used PLAXIS, a finite-element computer program, to analyze the stability of the floodwall.

Dr. Patrick C. Lucia, Ph.D., P.E., has more than 25 years of professional experience and practice directing and evaluating a broad range of projects requiring expertise in foundations and soils. Dr. Lucia performed a comprehensive review of the Corps's design of the EBIA floodwall, the proposed New Lock project and associated design reports, and the work proposed and performed at the EBIA under Task Order 26, including all documented excavations and backfilling, to determine whether the Corps of Engineers correctly evaluated the potential effects of underseepage and met the standard of care in approving WGI's workplans and subsequent operations.  He is the United States' only standard-of-care expert.

Dr. Timothy D. Stark, Ph.D., P.E., has authored 96 refereed papers related to geotechnical and geoenvironmental engineering. A professor of Geotechnical Engineering in the Department of Civil and Environmental Engineering at the University of Illinois, Dr. Stark has received numerous awards for research, teaching and professional service, including a 2012 ASCE geotechnical award.   Dr. Stark was frequently in the field during the Fugro soils investigation last year.  He will present a "boots on the ground" exposition of the work conducted by Fugro and will detail WGI's excavation and backfilling operations, focusing on the location and extent of excavations and the soils used to fill them.  He will contrast these actual excavations with the fictional excavations analyzed by the plaintiffs' expert.

Dr. Joseph B. Dunbar, Ph.D., is an expert in the geologic history of the New Orleans area. Like Drs. Brandon and Bea, Dr. Dunbar has conducted numerous studies related to the

levee and floodwall failures in New Orleans, including the impacts of woody vegetation on levees and the use of airborne and ground-based geophysics to assess levees. Over the last two decades he has participated in and led projects to map historic wetland change in coastal Louisiana and develop a web portal for obtaining Lower Mississippi Valley Engineering Geology Map data.

The testimony provided by these witnesses will be complementary, not needlessly cumulative. Although the testimony will overlap at points, the probative value of the cumulative evidence provided by these experts, with their diverse backgrounds and perspectives, will far exceed the time needed to present this relevant evidence. Their testimony will not cause any confusion of the issues or unfair prejudice. This is a trial to the Court, and the Court will benefit from a full presentation of the evidence within the time limits already established.

## II. Imposing additional restrictions on the defendants' presentation of evidence is unnecessary because Plaintiffs know the scope of the defendants' experts' testimony through discovery, expert reports, and depositions.

Plaintiffs have requested an unnecessary order that would unfairly limit the defendants' ability to respond to the plaintiffs' case. By proposing that the defendants (*only* the defendants) be required to spell out before trial the precise contours of each expert's testimony, they seek to gain a unilateral advantage.[11] Far from streamlining the presentation of evidence, the plaintiffs' proposal would have the opposite effect. It can reasonably be anticipated that objections to the scope of the defendants' testimony would

---

[11] The proposed asymmetrical order would necessitate the preparation of a written summary of each defense expert's direct testimony. The Court has ordered that direct expert testimony be presented *orally* in summary fashion. The Court expressly considered and rejected a written summary of direct expert testimony, and that decision was conveyed to counsel by the judge's law clerk.

arise, requiring the Court to discern whether the testimony being offered matches the descriptions drafted before trial. Such objections would almost certainly provoke a straining-at-the gnat linguistic analysis of the written descriptions and thus foster the very vices—waste of time, needless delay—that Rule 403 aims to avoid.

The assertion that the defendants are hiding the ball from the plaintiffs is poppycock. The plaintiffs have deposed the defendants' experts and know the experts' opinions and the bases therefore. Through discovery the plaintiffs learned "the distinct subject matter on which [each] expert will offer opinions."[12] The assertion that "Plaintiffs' counsel must spend countless hours preparing numerous lines of cross-examination" does no more than point out the complexity of the issues that lie at the heart of this case.[13] Each and every party's attorneys will spend long hours in trial preparation, and some of that preparation will be directed at events that never transpire. Such is the work we do.

## CONCLUSION

In their brief, the plaintiffs concede that "each expert may have opinions distinct from others."[14] In fact, as the plaintiffs well know, the defendants' experts *do* have distinct opinions: "hence Plaintiffs do not seek to strike the experts themselves."[15] This concession is fatal to the plaintiffs' motion. The motion is aimed not at duplicative, needlessly cumulative evidence but at putting the defendants in a straightjacket that would give the

---

[12]Plt. Mem. 2.

[13]*Id.* at 1.

[14]*Id.* at 2.

[15]*Id.*

plaintiffs an unfair advantage.  Granting the motion would not avoid trial delays but would in all likelihood cause them.  For these reasons, the motion should be denied.

    Respectfully submitted,
STUART F. DELERY
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

/s/ Robin Doyle Smith
ROBIN DOYLE SMITH
Senior Trial Counsel, Torts Branch
Civil Division
U.S. Department of Justice
Benjamin Franklin Station,
Washington, D.C.  20044
(202) 616-4400
robin.doyle.smith@usdoj.gov
Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that, on August 17, 2012, I served a true copy of the foregoing upon the Court via hand-delivery pursuant to the Court's July 26 Minute Entry. Notice of this filing will be delivered electronically via CM/ECF to all counsel of record.

/s/ Robin Doyle Smith  
ROBIN DOYLE SMITH
