UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES          *
CONSOLIDATED LITIGATION                *          CIVIL ACTION
                                       *          NO. 05-4182
                                       *          SECTION "K"(2)
                                       *
                                       *          Judge Duval
PERTAINS TO: MRGO                      *          Mag. Wilkinson
          *Armstrong, No. 10-866*      *
                                       *
**************************************************

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
### TO EXCLUDE EVIDENCE REGARDING PLAINTIFFS'
### NOTICE OF INTENT TO INTRODUCE SUMMARY EVIDENCE

Plaintiffs utilized Rule 1006 to streamline the presentation of this case by summarizing thousands of pages of Defendants' own business records. WGI asks this Court to exclude the summaries of documents their own experts have summarized in preparing to testify.[1] The motion should be denied for the reasons set forth below.[2]

---

[1] The motion was filed by WGI. The USA has joined.

[2] WGI filed its motion *ex parte*. The docket entry for the Motion to Exclude Evidence Regarding Plaintiffs' Notice of Intent to Introduce Summary Evidence should reflect this *ex parte* filing, but does not. (*See* Doc. 20996). Local Rule 7.3 forbids WGI's proposed order for an *ex parte* motion, and Plaintiffs oppose WGI's motion.

## I.  <u>INTRODUCTION</u>

On August 10, 2012, Plaintiffs submitted their Notice of Intent to Introduce Summary Evidence to which they attached four summary exhibits (Exhibit A1, B1-B16, C1-C16 and D) summarizing, pursuant to Rule 1006, 2,340 pages of Defendants' own business records.  The records summarized document the work performed at the EBIA (such as daily work reports, summaries of work performed, etc.). The documents have been cited extensively before this Court, relied upon and cited by experts on both sides of the case, and used as exhibits in depositions.  The Defendants' experts long ago distilled these documents into a GIS database that formed the basis for their work in this case.[3]  Defendants responded to Plaintiffs' notice by accusing Plaintiffs of "deliberately disobey[ing]" this Court's Order and Reasons on the Motion to Strike Portions of Dr. Robert Bea's Rebuttal Report (Doc. 20890) (the "Order"), as well as "violat[ing] (once again)" this Court's Scheduling Order (Doc. 20592) and Rule 26. Accordingly, Defendants seek an order from the Court striking the Notice of Intent to Introduce Summary evidence "in its entirety."   But Defendants do not stop there; they also seek to bar Plaintiffs from introducing even the underlying facts the summary was meant to encompass by requesting an order "prohibiting Plaintiffs from relying on the information contained therein [the summary evidence] at trial."  (Defs.' Mem. at 1.)  The summary encompasses Defendants' work

---

[3]  *See* Plaintiffs' Motion *in Limine* to Preclude Testimony Based on Unproduced GIS Model or, in the Alternative, To Compel Production of the Model to Plaintiffs (Doc. 20950) and accompanying memorandum (Doc. 20950-1) (detailing the extent to which defense experts have analyzed, summarized, and relied upon the documents in question).

at the EBIA.  To be clear, then, Defendants want this Court to forbid Plaintiffs from introducing any evidence of the work performed at the EBIA.

Defendants stray from the real issue, and the only issue, this Court must address: Have Plaintiffs properly utilized Rule 1006?  If so, the summary exhibits should be permitted.  If not, they should be excluded.  Defendants attempt to misdirect the Court into asking whether one of the summaries is an attempt to "back door" the "Swiss cheese" GIS model previously excluded by the Court.  Because Plaintiffs' "Swiss cheese" GIS model was not disclosed in time for Defendants to depose Dr. Bea on its contents, Defendants believe Plaintiffs are forbidden to discuss (or summarize) any document the Swiss cheese model might have reflected (which is, in short, all the evidence of their work at the EBIA).  For the Court to accept Defendants' arguments and grant this motion, it must accept the argument that the order excluding the Swiss cheese GIS model was meant to exclude all of Defendants' business records of the work performed at the EBIA.  Of course, it was not.

This attempt to gag Plaintiffs' experts and to keep Plaintiffs from introducing and relying on Defendants' own business records misconstrues the substance and reach of this Court's previous order, grossly mischaracterizes Plaintiffs' summary evidence, and misapplies the rules of evidence.  If Plaintiffs' summary evidence "prove[s] the content of voluminous writings, recordings, [and] photographs that cannot be conveniently examined in court," then it is proper. Fed. R. Evid. 1006.  It does; and that should end the inquiry.[4]

_____

[4]   Defendants' gamesmanship is apparent.  If the Court grants WGI's motion, Plaintiffs will spend hours grinding page by page through thousands of pages of business records that WGI

II.     <u>BACKGROUND</u>

As the Court knows, Defendants have produced literally millions of documents which pertain to the work done by these entities to demolish and remediate the EBIA site over a five-year period.  Typical of any litigation, Defendants produced these documents in random order with no specific key as to the logic of how they were arranged in production.

Obviously, Plaintiffs bear the burden of proof.  One of the most fundamental facts that Plaintiffs intend to establish is the nature of the work done by Washington Group over a five-year period on the EBIA site.  That work is documented by voluminous documents.  Plaintiffs have reviewed Defendants' productions and culled the documents that best describe their remediation and demolition activities.

Defendants have objected to the documents which describe their work activities.  (*See* Master Trial Exhibit List, for example JX-0123 and JX-1223).  The objection articulated was "conditional relevance."  WGI takes the position that a document cannot be offered into evidence unless an expert or witness mentions or refers to it.

Plaintiffs have produced four summary documents.  The first summary exhibit is labeled A-1.[5]  A-1 is a chart.  This chart summarizes the documents which describe the major WGI excavation activities.  This chart separates the work activity by parcel (column A), which are

---

created and Plaintiffs already have efficiently summarized.  WGI apparently wants Plaintiffs to waste their allotted trial time in this fashion, but Rule 1006 is meant to avoid exactly that.  Plaintiffs' summary furthers the intent of Rule 1006 and the intent of the rules generally, which is "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

[5]     Defendants do not object to the admissibility of summary exhibits A-1 and D.

Boland, McDonough Marine, Indian Towing, Mayer Yacht, Saucer Marine, and International Tank Terminal. The second column (column B) identifies the type of work that was performed, which includes RECAP work, foundation work, utility work, investigation work, and roadway work. The third column (column C) identifies the location within the parcel where the work was done. The fourth column (column D) is the maximum depth of each excavation. The fifth column (column E) indicates the average depth of the excavation. The sixth column (column F) identifies the total (in tons) of the material excavated. The seventh column (column G) identifies the type of backfill. The eighth column (column H) identifies the type of compaction. The last column (column I) identifies the documents which support the information in columns A-H. Lists of all of the documents summarized are found in Exhibits A, B, and C to the original Notice.[6]

The second and third summary documents are identified as Exhibits B1 through B16 and C1 through C16. These exhibits are essentially maps of the location of the major excavations layered on an aerial photo of the Boland and Saucer EBIA parcels. Additionally, these maps can be layered over the site aerial photographs to show the orientation of the site to North on the compass, the borrow pits locations, E-parcels location, fiber optic cable location, future lock alignment location, grid trenching location, NFAATT location, NOPSI location, pile location, Sewerage and Water Board connection location, site inventory, and Surekote Road location. The Boland Marine summary exhibit includes layers for the North breach location and the Wedding

---

[6]   Defendants have alleged that the documents summarized are not on the exhibit list. Attached hereto is a chart identifying the exhibit number which has been assigned by the parties to each of the summarized exhibits. (Exhibit A).

Cake location. The Saucer Marine summary exhibit includes layers for the South breach location and the sewer lift station location. These maps were made using documents and auto cad files produced by Defendants. No analyses were performed to generate these figures; they are merely a visual compilation of information provided by Defendants (and identified in Plaintiffs' Exhibit List). A GIS computer program was not used. No computer models were used to produce these images.

The fourth summary document labeled merely as Exhibit D to the original motion puts in date order the voluminous photographs produced by Defendants. These photographs were produced by Defendants randomly. This summary document will enable the Court to select an image based upon the date a photograph was taken.

### III.   LAW AND ANALYSIS

#### A.  The Admission of Summary Evidence Is Within the Court's Discretion.

There is only one question properly before the Court: Does Rule 1006 permit the Plaintiffs' summary? The rule permits the contents of voluminous writings, recordings, or photographs that cannot conveniently be examined in court to be presented in the form of a chart, summary, or calculation. The party offering such summary exhibits is required to make the underlying materials reasonably available to the other parties. Fed. R. Evid. 1006.[7] There is no

_____

[7]   Rule 1006 of the Federal Rules of Evidence provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The Court may order that they be produced in court.

dispute the documents here are voluminous, that they cannot conveniently be examined in court, and they are Defendants' own business records that Defendants themselves have summarized; so there is no question they are and always have been "reasonably available" to Defendants.

Although Defendants say the test under Rule 1006 is a strict one, the opposite is true. *See, e.g., United States v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991). Defendants cite *United States v. Whitfield* to say "[t]he Fifth Circuit has properly expressed some reluctance to generally endorse the use of summary evidence," (Defs.' Mem. at 13 (citation and quotation marks omitted)), but in fact the opinion supports Plaintiffs in stating "a district court does not abuse its discretion by admitting summary testimony where the evidence is voluminous and complex." 590 F.3d 325, 364 (5th Cir. 2009).[8]

---

Fed. R. Evid. 1006.

[8]  Contrary to Defendants' assertion, courts have allowed Rule 1006 summaries in a wide variety of cases involving records apparently less voluminous and less complex than the thousands of pages involved here. *See, e.g., United States v. Weaver*, 281 F.3d 228, 232 (D.C. Cir. 2002) (admitting Rule 1006 chart comparing dates that certain postal employees worked with dates of alleged crimes); *Martin v. Funtime, Inc.*, 963 F.2d 110, 116 (6th Cir. 1992) (admitting Rule 1006 summaries of employment records documenting age and hours worked for certain employees in suit over Fair Labor Standards Act); *United States v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991) (admitting Rule 1006 charts created by government's witness in kidnapping and conspiracy trial which summarized documentary and testimonial evidence of events in sequential order); *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991) (admitting Rule 1006 summaries of documentary information from three bus accidents summarizing RTA files, drivers' reports, supervisors' reports, claim adjustors' reports, and medical reports); *Harris Mkt. Research v. Marshall Mktg. & Communications, Inc.*, 948 F.2d 1518, 1525 (10th Cir. 1991) (admitting Rule 1006 summary of costs incurred in designing computer software in a licensing and breach of contract action); *Coates v. Johnson & Johnson*, 756 F.2d 524, 550 (7th Cir. 1985) (admitting Rule 1006 summaries of disciplinary memoranda containing employee behavior, competence in the completion of work assignments, and reasons for termination maintained by company in Title VII action).

In determining the admissibility of summary evidence, courts employ a four-prong test to ascertain that:

> "(1) the charts [summaries] are based on competent evidence. . . ; (2) the primary evidence used to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested; (3) the person who prepared the charts is available for cross-examination; and (4) the jury is properly instructed concerning their consideration of the charts."

*United States v. Impastato*, No. CRIM A 05-325, 2007 WL 2463310, at *6 (E.D. La. Aug. 28, 2007) (Duval, J.) (quoting *Winn*, 948 F.2d at 159 (collecting Fifth Circuit authorities)). Moreover, courts have further relaxed the strict adherence to the standards of Rule 1006 for bench trials.  *See Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567-68 (7th Cir. 1987) (Posner, J.) (rejecting insistence on strict application of Rule 1006 in bench trial as "hollow" and noting "[a] district judge can be trusted in general . . . to give evidence its proper weight without regard to the technical rules of evidence . . . which insofar as they relate to matters of probative force rather than to privilege are designed primarily for the control of juries." (citing McCormick on Evidence § 60, at 153-54 (3d ed. 1984)).[9]  Defendants challenge only whether the proffered summaries are based on competent evidence (factor (1)).

---

[9]   *See also United Mine Workers of Am. v. Am. Commercial Lines Transp. Services, L.L.C.*, No. 4:08CV1777 SNLJ, 2010 WL 3721544, at *4 (E.D. Mo. Sept. 15, 2010) ("As for statements seeking to 'summarize' documents presently before the Court, the Court will not strike these statements as 'irrelevant' or improper under Rule 1006.  Since this is now a bench trial, the Court adheres to the judicial belief that 'the documents speak for themselves' and will simply accord whatever weight it believes such 'summaries' deserve in assisting the Court when reviewing these documents.").

**B.  Plaintiffs Have Submitted Proper Summary Evidence.**

Defendants first charge that the documents summarized are "hardly the voluminous, inconvenient amount of information contemplated by the Rule."  (Defs.' Mem. at 13.)   But Defendants' assertion has no basis in the case law.  The Fifth Circuit has long held that "Rule 1006 does not require that 'it be literally impossible to examine the underlying records' before a summary chart may be introduced."  *United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985) (quoting *United States v. Scales*, 594 F.2d 558, 562 (6th Cir.1978)); *see also id.* at 239 ("The evidence was undisputably complex as it involved hundreds of exhibits."); *see also Winn*, 948 F.2d at 158 ("In *United States v. Stephens*, . . . this Court rejected defendant's argument herein, that Federal Rule of Evidence 1006, which allows for summary evidence, should be interpreted literally and restrictively as to the "voluminous document" requirement." (footnote omitted)).  Given Plaintiffs' summaries are based on over two thousand pages (selected from a universe comprising over 20,000 pages) of Defendants' business records, the complexity and volume of the summaries' underlying materials is hardly in dispute and this may well be a case where it <u>would</u> be "literally impossible to examine the underlying records," putting it well beyond the standard for admissibility.

Next, Defendants say the summarized documents are not on the parties' Master Exhibit List, and they fault Plaintiffs for not "mak[ing] an effort to show that their exhibits fairly and

accurately summarize the underlying source material." [10] (Pls.' Mem. at 13.)  Defendants are mistaken on both points.  First, Defendants overstate applicable law by contending that the admission of the underlying exhibits is a "threshold requirement for summary evidence in the Fifth Circuit."  (*Id.*)  Defendants cite *United States v. Milkiewicz*, but it says only that "[e]vidence admitted under Rule 1006 must be otherwise *admissible*" – not that it is actually admitted into evidence.  470 F.3d 390, 396 (1st Cir. 2006) (emphasis added).  Indeed, the Fifth Circuit has long held that, "[f]or the purposes of Fed. R. Evid. 1006, the [underlying documents] need not have been introduced into evidence but only 'made available.'"  *United States v. Clements*, 588 F.2d 1030, 1039 (5th Cir. 1979).  Given the documents underlying Plaintiffs' summaries are Defendants' own, they of course cannot contend that the materials were not available to them.  Likewise, Defendants do not dispute that their own business records are not *admissible*.  Defendants do not and cannot dispute they are admissible as business records.

Second, "although summaries must 'accurately reflect the underlying records or testimony," they cannot be excluded simply because they *might* be inaccurate."  *Right of Way Maint. Co. v. Gyro-Trac Inc.*, 303 F. App'x 229, 230 (5th Cir. 2008) (emphasis in original) (quoting *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir.2000)) (citing Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 1006.07[1] (Joseph M. McLaughlin ed., 2d

---

[10]   Defendants have alleged that the documents summarized are not on the exhibit list. Attached hereto is a chart identifying the exhibit number which has been assigned by the parties to each of the summarized exhibits.

ed.2007)).[11]   Defendants have not shown any inaccuracies in Plaintiffs' summaries, and none

exists.  In fact, Defendants' one attempt at showing inaccuracies shows just how utterly baseless

their claim is.  While Defendants contend that some of the documents summarized are "simply

blank pages" (Defs.' Mem. at 13.), they are, in reality, WGI's own graphic maps of the EBIA

(*see* Bates Nos. WGI257522, WGI251279 and WGI251280) created and produced by WGI.[12]

(*See* Exhibit B.)[13]

        As to the core question before this Court – whether the summary is admissible under

Rule 1006 – Plaintiffs clearly prevail.

### C.  Plaintiffs' Summary Evidence Does Not Violate This Court's Order and Reasons on the Motion to Strike Portions of Dr. Robert Bea's Rebuttal Report.

        The Court need go no further to admit the summary.  However, Plaintiffs must address

the tangential arguments Defendants raise under the guise of attacking the admissibility of the

summary exhibits.  Here Defendants depart from the pure admissibility question and veer into

the frankly absurd argument that "Plaintiffs' Notice of Intent to Introduce Summary Evidence

and the corresponding exhibits have already been excluded by this Court in connection with Dr.

Bea's original 'Swiss Cheese Graphics.'"  (Defs.' Mem. at 14 (emphasis added).)  In  other

---

[11]   Indeed, "[a] summary may include only evidence favoring one party, so long as the witness does not represent to the jury [court] that he is summarizing all the evidence in the case." *Whitfield*, 590 F.3d at 364.

[12]   Presumably WGI forgot to use the special viewer software to view this type of file (which WGI created and produced to Plaintiffs).

[13]   Moreover, even if they were blank pages contained within the substantive records actually summarized, Plaintiffs are content to accept this as the best objection contrived from thousands of pages of summarized documents.

words, Defendants seek to convert the ruling on the Swiss cheese model into an order *in limine*

precluding the admission of any evidence of work performed at the EBIA.

First, WGI says that by excluding the Swiss cheese model from Dr. Bea's rebuttal, the

Court meant to exclude any future summary exhibit touching upon any of the underlying

evidence embraced by the Swiss cheese model. In other words, because the GIS model was not

furnished before Dr. Bea's deposition, any evidence it portrayed in GIS format may never be

entertained at trial (keeping in mind here that Defendants seek not only to exclude the summary,

but the underlying "information  contained therein.")  Is this what the Court intended when it

excluded the GIS model?  Surely not.  This Court held:

> [T]hat the material concerning the 3D GIS graphic models is not proper rebuttal
> in that it is incomplete.  Filing a 'place holder' in lieu of a properly completed
> report cannot be accepted.  In essence, the true Rebuttal Report concerning 3D
> Graphics has yet to be finalized.

*Id*.  Consequently, the Court struck the portions of Dr. Bea's report relying on the GIS model.

*Id*. at 4.

Moreover, while the Court specifically faulted Plaintiffs for not timely completing the

GIS models although "all of the documents necessary for its generation have been available for

more than two years," *id*., it did not exclude from trial those documents themselves – hundreds

of Defendants' Quality Assurance Reports, the RECAP documents, the NFAATTs, the Technical

Completion Report, and so on (documents cited by this Court in previous Orders, relied upon by

experts on both sides, and familiar to everyone involved in this case).  This Court had good

reason not to exclude the underlying documents; they are entirely separate from the proffered

expert testimony (and from any Rule 1006 summaries for that matter). *See United States v. Williams*, 264 F.3d 561, 574-75 (5th Cir. 2001) (noting Rule 1006 summary is evidence in its own right).[14]   And the underlying documents for the stricken portions of Dr. Bea's Rebuttal Report hardly were untimely given the Court noted that "all of the documents necessary for its generation have been available for more than two years."   Order at 4.   Of course, they were availabe to Defendants from the moment of their creation.   They were obtained from them in discovery.

Defendants step further afield from the admissibility of the summary evidence and try to wedge in a ruling that Dr. Bea should not be permitted to testify to the underlying facts and documents.   Dr. Bea can testify to the underlying documents regardless of whether the summaries are permitted.   He relied on and testified to the underlying materials well before the drafting of his Rebuttal Report.   This not only thwarts Defendants' efforts to turn this into a ruling on the scope of Dr. Bea's trial testimony, it actually undercuts their motion because Dr. Bea's deposition testimony refutes Defendants' assertion that the summary evidence is "the first time" Plaintiffs properly identified "the locations and backfill of excavations in the EBIA." (Defs.' Mem. at 8.) In Dr. Bea's deposition regarding his original report:

---

[14]   To the extent that Plaintiffs contend the underlying documents were not properly authenticated, they are equally mistaken: "Rule 1006 is 'a special exception to the hearsay rule,' and does not require an authenticating witness."   *Right of Way Maint. Co.*, 303 F. App'x at 230 (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 1006.05[4] (Joseph M. McLaughlin ed., 2d ed. 2007)).   The documents are self-authenticating in any event.

- Dr. Bea identifies "three principal sources of information" he "worked with" as: "sequential aerial photography," "ground photography," and "records that WGI provided in boxes." (Bea Depo. Vol. I at 112:10-17 (emphasis added).)

- Dr. Bea defines "nearby excavations" as the source of seepage pressures and clarifies that "nearby" excavations include those within 500 feet of the floodwall that were poorly backfilled. (*Id*. at 206:12-208:10.)

- In response to a request for more specificity from defense counsel, Dr. Bea identifies several excavations along the North Breach and the South Breach, "associated with contaminated soils," "excavations that were developed west of Surekote Road . . . associated with grid trenching and Transite removal," "excavation activity associated with grid trenching, road removal and utility line removal." (*Id*. at 208:7-209:10.)

- Dr. Bea identifies "multiple excavations," noting "the most important ones are close to the floodwall," where "contaminated soil areas" were "removed" and "backfilled with sands," as well as removal of "piles" that "were not backfilled." (*Id*. at 209:20-211:10.)

- Dr. Bea describes the fills used to backfill the excavations as "materials taken from the McDonough borrow pit" and "native materials produced during the excavation," some of which contained "heavy shell, sand and silt characteristics." (Bea Depo. at Vol. II at 50:12-51:10.)

- Dr. Bea identifies specific excavations of depths beyond 25 feet, including the underground storage tank (railroad car) at Saucer, the "wedding cake" excavation at Boland, and the piling extractions. Dr. Bea further identifies the "sewer lift station" excavation. (*Id*. at 62:17-66:22.)

- Dr. Bea describes the contents of backfill soils used for the excavations as imported river sand containing "shells" "used at several of the excavations," which are "part of the native materials on the EBIA site" and "endemic to this area." (*Id*. at 70:23-71:21).

Against this background, Defendants' contention that Plaintiffs never previously specified the relevant excavations in the EBIA rings hollow. This is all the more true because Defendants' own documents supply all the answers: the dimensions, depths, locations, proximity to the floodwall, backfill, and compaction of every excavation at the EBIA.

14

Defendants nonetheless insist the summary evidence is in fact Plaintiffs' long-promised "Swiss Cheese Graphics" in violation of the Court's Order striking same.  (Defs.' Mem. at 6.) Notably, Defendants do not assert that the charts and graphic summaries of the excavation activities in the EBIA (Exhibits A1, B1-B16, C1-C16, and D to Plaintiffs' Notice of Intent to Introduce Summary Evidence and Notice of Manual Attachments, Rec. Doc. 20971 and 20971-1), are in fact "Swiss Cheese Graphics" that should be excluded; Defendants use the terms "graphics," "aerial images," and "photographs," but know fully well that the graphics summary documents Exhibits B1-B16 and C1-C16 are not GIS models. (Defs.' Mem. at 5-6.)  Defendants do not put the graphics themselves (Exhibits B1-B16 and C1-C16)  at issue.  The Court could exclude summary documents B1-B16 and C1-C16 from evidence (e.g., ruling them proper only as demonstratives) while admitting the summary document A-1 and D.  But it need not do so; Exhibits B1-B16 and C1-C16 are proper summary evidence pursuant to Rule 1006. They are not, and are not claimed to be, "Swiss Cheese" evidence.

The Plaintiffs summary exhibits and the so-called "Swiss Cheese Graphics" are entirely separate and distinctly different things. The "Swiss Cheese Graphics" were to be 3-dimensional graphics of the holes that resulted from WGI's excavation activities that demonstrated the connection of the holes to geological stratifications below the surface.  The creation of such a graphic would have required the use of GIS or a GIS data base.  "Swiss Cheese Graphics" would have used starting ground elevations to generate the images of the excavation holes.

"Swiss Cheese Graphics" would be nothing like the summary exhibits produced by the Plaintiffs.  No computer programs or GIS were used at all in the creation of these summaries.

The first summary exhibit is simply a graph summarizing the work activity by parcel, identifying the type of work, maximum depth, average depth, backfill, amount of material removed, and form of compaction.  The chart also includes the documents summarized, identifying them by Bates numbers.  The second and third summary exhibits are essentially maps of the location of the major excavations layered on a satellite image of the parcels of the two EBIA site, the Boland parcel and the Saucer parcel.  The fourth summary exhibit organizes the photographs taken by WGI and produced by WGI in random order.

### D.  The Remaining Requirements of Rule 1006 Also Are Satisfied.

Plaintiffs' summary evidence also meets the three remaining requirements, which Defendants do not challenge.  *See Impastato*, 2007 WL 2463310, at *6.  First, as noted, "the primary evidence used to construct the [summaries] is available to the other side for comparison in order that the correctness of the summary may be tested," *id.*, given Plaintiffs summarized Defendants' business records which were available to them all along.  Second, "the person who prepared the [summaries] is available for cross-examination," *id.*, as Dr. Storesund will be readily available at trial.  Third, a special jury instruction will not be necessary given this is a bench trial.  *See id.*

In sum, Defendants' assertion that Defendants' summary evidence does not meet the requirements of Rule 1006 or is otherwise improper and untimely expert testimony is baseless.  Defendants' motion should be denied.[15]

---

[15]  Moreover, even if this Court were not to admit Plaintiffs' summaries under Rule 1006, the materials are nonetheless admissible as demonstrative charts or pedagogical aides –

IV.    **CONCLUSION**

Plaintiffs' summary evidence is in compliance with all requirements of Rule 1006.  It is based entirely on Defendants' own business records describing work performed by WGI and its subcontractors at the EBIA.  It is not an untimely expert report in an attempt to sidestep the Court's Order.  For these reasons, Defendants' motion should be denied in its entirety.

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

---

controlled by Rule 611(a), *see United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000) (collecting Fifth Circuit case law):

> [E]ven if charts are not proper under Rule 1006, summary charts are, in the trial court's discretion, ordinarily admissible when: (1) the charts are based on competent evidence before the jury; (2) the primary evidence used to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested; (3) the person who prepared the charts is available for cross-examination; and (4) the jury is properly instructed concerning their consideration of the charts.

*Winn*, 948 F.2d at 159.

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

**MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**

Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 24th day of August, 2012.

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO

18