UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION<br><br>NO. 05-4182<br><br>SECTION"K" (2)<br><br>JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**SUR-REPLY BY ARMSTRONG, LIVER, AND HOLMES TO DEFENDANT
WASHINGTON GROUP INTERNATIONAL, INC.'S MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF DIMINUTION OF VALUE AS MEASURE OF DAMAGES**

**MAY IT PLEASE THE COURT:**

**I.   INTRODUCTION**

Washington Group International ("WGI") grudgingly concedes that *Roman Catholic Church v. La. Gas Serv. Co.*, 618 So. 2d 874, 879-80 (La. 1993) and its progeny do not prohibit an "economic advantage" to the Plaintiffs and a corresponding and equal "economic disadvantage" to WGI resulting from replacement costs as a damage measure, where a homestead or family home is destroyed.

1

In the face of such an obstacle, WGI creates the illusion that, by selling their property to Road Home, an award of replacement damages to the Armstrong, Liver, and Holmes Plaintiffs is "economically wasteful". It posits that these replacement costs greatly exceed the market value of the destroyed homes. Further, WGI asserts that if awarded replacement costs, the award will never be spent on replacement of their destroyed home since it was sold to the Road Home Program. (Def.s' Mem. at 3. (citing *Roman Catholic*, 879-80; DAN B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES 317 (1973), and other authorities).)

But yet, not one of the authorities cited by WGI permit an award that makes a plaintiff less than whole. Replacement damages were denied only where a plaintiff was made more than whole. WGI asks the Court to assume that, since the properties were sold, unspent replacement damages creates an "economic disadvantage", without any examination as to whether or not such replacement damages makes the Plaintiffs whole or conveys something more, an "economic advantage" in excess of that which makes these Plaintiffs whole. To the contrary, Plaintiffs are entitled to be made whole and can only be made whole by an award of replacement damages.

## II.   LAW AND ARGUMENT

### A. WGI FAILS TOADDRESSES THE FACT THAT THESE PLAINTIFFS WILL NEVER BE MADE WHOLE OR FULLY COMPENSATED FOR THEIR LOSS BY AN AWARD OF DIMINUTION DAMAGES.

Louisiana damage law is clear, a victim "is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm." *Roman Catholic Church*, 618 So. 2d at 879-80. Plaintiffs suggest that since *Roman Catholic Church* clearly exempts ones home from any discussion of advantage or disadvantage further discussion is meaningless and the issue resolved, replacement damages are the appropriate damage model.

WGI persists as if this clear exception does not exist. Assuming for the sake of this argument that such exemption did not exist, WGI still fails in its effort to limit damages to diminution values. Once Plaintiffs have chosen replacement value as their damages calculation methodology, the burden is on WGI to demonstrate that such an award results in an "economic disadvantage" to it. To be at an "economic disadvantage", WGI must demonstrate that the replacement damages sought by the Plaintiffs make them more than whole, a bonus for want of a better term. WGI would have the Court believe that if the replacement cost is not spent, there is a de facto bonus. Such linkage is illogical, where as here, the Plaintiff net worth does not change.

The Taylor Report tendered by the Plaintiffs demonstrates that replacement costs for all three properties are the same both before and after the INHC flood wall failure. An award of sufficient replacement costs as demonstrated by Taylor necessary to make Plaintiffs whole and but no more is not a bonus, a windfall, or an advantage.. That WGI is not at a prohibited economic disadvantage by being required to make a Plaintiff whole is self-evident.

*Roman Catholic Church* does not stand for the proposition that it is acceptable to leave a plaintiff less than whole, nor does Dobbs, nor the legacy cases cited by the WGI, as WGI suggests. The Court in *Roman Catholic Church* went to great lengths to examine both damage methodologies, finding one to be fair in making the Plaintiff whole, the other overly compensating the Plaintiff. It affirmed an award equal to the lesser of the two but still sufficient to make the plaintiff whole.

At bottom, Plaintiffs' election of restoration damages must meet one of two requirements, even if WGI is successful in proving that their damages are economically wasteful:

> If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, **unless there is a reason personal to the owner for restoring the original condition *or* there is a reason to believe that the plaintiff will, in fact, make the repairs**,

damages are measured only by the difference between the value of the property before and after the harm Roman Catholic Church, 618 So. 2d at 879-80.

Plaintiffs here meet either of those requirements because they have rebuilt their houses and have had great personal attachment to their family homes.

According to WGI's proffered Truax Report, the pre-IHNC flood, market values of $401,000 were reduced to a post-flood market value of $106,000.00.[1] WGI concedes that the plaintiffs will have uncompensated market value losses equal to $295,000.00. WGI must also concede these Plaintiffs will never be made whole, even under its best case damage scenario. Thus, WGI would have the Court adopt a damage model that leaves the Plaintiffs less than whole.[2]

### B. THE SALE TO ROAD HOME DOES NOT PRECLUDE AN AWARD OF REPLACEMENT DAMAGES----IT IS A STRAWMAN AND NOT EVIDENCE OF A WINDFALL.

Absent a demonstration by WGI that damages measured by replacement costs create an economic disadvantage by requiring it to pay more than that which will make a plaintiff whole, the sale to Road Home is a canard. WGI grudgingly recognizes that the law and Constitution of Louisiana mandate awards of such damages as will fairly and fully compensate a victim for the destruction of its property. It boldly asks this Court to ignore this well settled law and limit

---

[1] Overarching this entire discussion is the validity, if any, of post-Katrina market value appraisals, given the wide spread destruction referred to as the Jack-O-Lantern effect, , lack of available public services, such as fire, medical facilities, schools, and police protection in the Lower Nine and St. Bernard Parish. When Road Home impact is added to this mix, any market value appraisal or valuation is necessarily biased in favor of lower values, making replacement values a more accurate representation of Plaintiffs damages and what replacement costs will make these Plaintiffs whole. To use skewed market valuations gives WGI an unfair advantage by giving it a market value starting point lower than it would otherwise be. In other words, the more damages it caused, the lower the diminution damages will be.

[2] Plaintiffs have demonstrated in earlier memoranda on these issues the lack of real choice each had in deciding to sell. For some it was a matter of safety, for others employment elsewhere, and for some quality of life issues. To now say that these well founded and intended decisions will result in the results urged by WGI is to penalize these Plaintiffs and benefit WGI. To turn the decision to sell into an economic advantage to WGI is to reward a wrongdoer, result wholly inconsistent with Louisiana law.

Plaintiffs' damages to an award that will not make the Plaintiffs whole. WGI argues that the sale of Plaintiffs property means that replacement costs if awarded will never be spent to repair the Plaintiffs' home.'Banking the award" becomes an economic advantage to these Plaintiff at the economic disadvantage of WGI. Such an argument makes no economic or legal sense.

The pre-Katrina Taylor replacement value of the Plaintiffs' homes is $540,000.00 and would be noted as a balance sheet real estate asset of a similar amount. Once destroyed, the real estate asset value would be written down to zero and the net worth reduced by an equal amount. The net effect is a decrease in net worth of $540,000.00.

When these replacement damages are awarded and the property not yet repaired or the property sold, the balance sheet would continue to report real estate values at zero, but it would record an increase in cash and net worth of $540,000.00.[3] The before and after loss net worth is the same, only the character of the assets change. The sale to Road Home neither increases nor decreases the dollars WGI must pay to make these Plaintiffs whole. Only the asset changes, real property to cash. Net worth returns to what it was pre-destruction.

In attempting to justify what are clearly inequitable and unfair results implicit in its diminution argument, i.e., the Plaintiffs will never be made whole; WGI faces its own contrary admission. It concedes that diminution damages are not sought with respect to the Coats and Washington home since they "currently own the property at issue and demonstrated their 'personal reasons' for restoring the properties by actually making repairs to their property." Like the Coats' and Washingtons', the Armstrongs', Livers', and Holmes' each rebuilt their homes

---

[3] Roman Catholic Church recognizes that the second exception to an award of "economically wasteful" damages recognized by Roman is "... where there is a reason to believe that the plaintiff will, in fact, make the repairs..." The Court has every reason to believe the Plaintiff will make the repairs; they already did at their expense, albeit on another footprint.

5

using their personal financial resources and live in them today. By rebuilding, the Armstrong, Liver, and Holmes Plaintiffs demonstrated identical personal reason as did the Coats and Washington Plaintiffs.  The Armstrong, Livers, and Holmes Plaintiffs are entitled to the same damage remedy, replacement damages, as the Coats and Washington Plaintiffs and as conceded by WGI.. That these three Plaintiffs rebuilt their homes on another footprint, whereas the Coats' and Washingtons' rebuilt on their flooded lot is a distinction without a difference.

### III.    CONCLUSION

WGI seizes on the Plaintiffs well-reasoned and well-intended decision to sell what little remained of their former homes to Road Home, a transaction between entities of unequal bargaining power.  From there, it makes the illogical assumption that unspent replacement damages will be an 'economic advantage" to the Plaintiffs at WGI's "economic disadvantage". To reach this point, WGI fails to acknowledge the efforts of these Plaintiffs to replace their homes, with their own resources, upon another footprint.

More to the point, WGI fails to show that an award of replacement damages is neither an advantage nor a disadvantage. Such an award can be neither as it does no more than replace an asset, the family home, with a  cash asset of equal but not greater value.

For all of these reasons, Plaintiffs urge the Court to deny WGI's Motion in *Limine* which seeks to limit Plaintiffs' damages to diminution damages and grant Plaintiffs Motion in *Limine* which seeks to limit Plaintiffs damages to replacement costs.

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*/s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

**MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**

Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 24th day of August, 2012.

/s/ Joseph M. Bruno
JOSEPH M. BRUNO

.