# Unreported Cases

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.   See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.  (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff—Appellee–Cross–Appellant
v.
Conrad P. SEGHERS, Defendant—Appellant–Cross–Appellee.

No. 06–11146.
Oct. 28, 2008.

**Background:** Securities and Exchange Commission (SEC) brought civil enforcement action against co-founder and control person for hedge funds. The United States District Court for the Northern District of Texas, upon a jury verdict, entered judgment in favor of SEC, enjoined co-founder from future securities fraud, and imposed civil fine. Co-founder appealed and SEC cross-moved rulings limiting co-founder's liability and denying disgorgement of co-founder's gains.

**Holdings:** The Court of Appeals, E. Grady Jolly, Circuit Judge, held that:
(1) any prejudice in admitted into evidence summary chart prepared by SEC employee was countered by cross-examination, rebuttal testimony, and limiting instruction;
(2) sufficient evidence supported finding that co-founder made material misrepresentations and omissions;
(3) sufficient evidence supported finding that co-founder acted with necessary scienter and mental state for securities fraud violations;
(4) sufficient evidence supported finding that co-founder had necessary mental state for securities fraud violations even prior to broker-dealer's letter documenting presence of errors; and
(5) finding that co-founder was not unjustly enriched, based on fact that co-founder lost money in funds, was error requiring remand.

Affirmed in part, vacated in part, and remanded.

West Headnotes

**[1] Federal Courts 170B ⇐896.1**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)6 Harmless Error
            170Bk896 Admission of Evidence
               170Bk896.1 k. In general.  Most Cited Cases

Any prejudice in admitting into evidence a summary chart prepared by Securities and Exchange Commission (SEC) employee to compare values of funds reported to investors with values listed in statements of banks and brokers who held fund assets was countered by co-founder's cross-examination and rebuttal testimony and court's limiting instruction in civil enforcement action against co-founder and control person for hedge fund. Securities Act of 1933, § 17(a), 15 U.S.C.A. § 77q(a); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Investment Advisers Act of 1940, § 206(1, 2), 15 U.S.C.A. § 80b–6(1, 2); 17 C.F.R. § 240.10b–5.

**[2] Securities Regulation 349B ⇐27.50**

349B Securities Regulation
   349BI Federal Regulation
      349BI(B) Registration and Distribution
         349BI(B)6 Fraudulent Transactions
            349Bk27.50 k. Evidence.  Most Cited

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

Cases

**Securities Regulation 349B ⚜︎60.63(2)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.60 Evidence
                    349Bk60.63 Weight and Sufficiency
                        349Bk60.63(2) k. Misrepresentation, nondisclosure, and insider trading. Most Cited Cases

    Evidence supported finding in civil enforcement action that co-founder and control person for hedge funds made material misrepresentations and materially misleading omissions in reporting value of fund assets, as required to demonstrate securities fraud violations, despite arguments that he was not responsible for valuations and that he relied on numbers provided by broker-dealer, which were later found to be incorrect; co-founder was responsible, through the fund administrator, for making monthly statements to investors and made misrepresentations about errors by broker-dealer that harmed fund and made their valuation difficult. Securities Act of 1933, § 17(a), 15 U.S.C.A. § 77q(a); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Investment Advisers Act of 1940, § 206(1, 2), 15 U.S.C.A. § 80b–6(1, 2); 17 C.F.R. § 240.10b–5.

**[3] Securities Regulation 349B ⚜︎27.50**

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)6 Fraudulent Transactions
                349Bk27.50 k. Evidence. Most Cited Cases

**Securities Regulation 349B ⚜︎60.63(2)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.60 Evidence
                    349Bk60.63 Weight and Sufficiency
                        349Bk60.63(2) k. Misrepresentation, nondisclosure, and insider trading. Most Cited Cases

    Evidence supported finding in civil enforcement action that co-founder and control person for hedge funds acted with necessary scienter and mental state required for securities fraud violations; co-founder knew the market values of fund assets and chose to report higher values, co-founder had been warned about inventing accounting method not accepted in accounting profession, fund's investors did not agree to accounting method, and co-founder eventually sent out disclosure explaining non-market-value accounting method and disclaiming responsibility for valuing assets. Securities Act of 1933, § 17(a), 15 U.S.C.A. § 77q(a); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Investment Advisers Act of 1940, § 206(1, 2), 15 U.S.C.A. § 80b–6(1, 2); 17 C.F.R. § 240.10b–5.

**[4] Securities Regulation 349B ⚜︎27.50**

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)6 Fraudulent Transactions
                349Bk27.50 k. Evidence. Most Cited Cases

**Securities Regulation 349B ⚜︎60.63(2)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.60 Evidence
                    349Bk60.63 Weight and Sufficiency
                        349Bk60.63(2) k. Misrepresentation, nondisclosure, and insider trading. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

Sufficient evidence supported finding in civil enforcement action that co-founder and control person for hedge funds had mental culpability for securities fraud prior to date on which fund broker-dealer sent letter documenting presence of errors in statements sent to investors; broker-dealer had informed co-founder of errors and co-founder had met with broker-dealer to discuss errors, and co-founder made monthly statements to investors through fund administrator that misled investors as to account value and fund performance prior to letter. Securities Act of 1933, § 17(a), 15 U.S.C.A. § 77q(a); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Investment Advisers Act of 1940, § 206(1, 2), 15 U.S.C.A. § 80b–6(1, 2); 17 C.F.R. § 240.10b–5.

[5] Securities Regulation 349B ⚷ 88

349B Securities Regulation
    349BI Federal Regulation
        349BI(D) Securities and Exchange Commission and Proceedings
            349Bk88 k. Judicial review and enforcement of decisions. Most Cited Cases

Finding in civil enforcement action that co-founder and control person for hedge funds was not unjustly enriched, based on fact that co-founder lost money in funds, was error and remand was required to determine whether co-founder derived profit from securities fraud, as would warrant disgorgement of those profits. Securities Act of 1933, § 17(a), 15 U.S.C.A. § 77q(a); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Investment Advisers Act of 1940, § 206(1, 2), 15 U.S.C.A. § 80b–6(1, 2); 17 C.F.R. § 240.10b–5.

**\*321** Steve J. Korotash, U.S. Securities & Exchange Commission, Fort Worth District Office, Fort Worth, TX, Karen Matteson, U.S. Securities & Exchange Commission, Los Angeles, CA, Susan K. Straus, Leslie E. Smith, U.S. Securities & Exchange Commission, Washington, DC, for Plaintiff–Appellee–Cross–Appellant.

Carl A. Generes, Dallas, TX, Charles B. Manuel, Jr., Shira Yael Rosenfeld, Manuel & Rosenfeld LLP, New York, NY, for Defendant–Appellant–Cross–Appellee.

Appeals from the United States District Court for the Northern District of Texas, USDC No. 3:04–CV–1320.

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[FN*]

    FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**\*\*1** This appeal arises out of a civil enforcement action brought by the Securities and Exchange Commission against Conrad Seghers for securities fraud relating to Seghers's involvement with three hedge funds that he founded. Seghers appeals the jury verdict and the district court's judgment in favor of the Commission, enjoining him from future securities fraud and imposing a civil fine. The Commission cross-appeals, seeking reversal of the district court's ruling that Seghers was not liable for the entire period alleged. The Commission further seeks reversal of the district court's denial of disgorgement of the gains from Seghers's fraudulent activity. We affirm the judgment against Seghers, vacate the finding limiting the period of Seghers's liability, vacate the denial of disgorgement, and remand for further proceedings not inconsistent with this opinion.

I.

Conrad Seghers was a co-founder and control person of Integral Investment Management, L.L.C., which was the general partner of Integral Investment Management, L.P. Integral Investment Management, L.P., was the general partner of three hedge funds: Integral Arbitrage, L.P.; Integral

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

Equity, L.P.; and Integral Hedging, L.P. (collectively, "the Integral *322 Funds" or "the Funds"). Investors were limited partners in the Funds. Seghers and partner James Dickey offered and sold limited partnership interests in the Integral Funds to individual and institutional investors. Seghers promoted the Funds as low risk investments which, through a hedging strategy, were able to provide steady growth with limited downside risk.

By June 2000, the majority of the Integral Funds' assets were invested in the Galileo Fund, L.P., a separate investment fund managed by Seghers's associate, Samir Bizri. Bizri conducted trading for the Galileo Fund. Seghers and Bizri agreed to a contract titled "Risk–Adaptive Portfolio Structures Agreement" ("RAPS agreement"). The RAPS agreement called for Bizri to use his proprietary hedging strategy to trade the Funds' assets in the Galileo Fund. The agreement also called for Bizri to calculate, on a monthly basis, the value of the Galileo Fund account. The agreement contemplated investments in securities and derivatives that matured at fixed time periods. The assets were to be valued monthly according to what Seghers and Bizri have called an "amortization" method. Under this method, the value of the RAPS agreement is calculated according to assets' historical cost plus or minus the value that the assets would have at expiration if markets remain at the same prices at expiration as on the valuation date, divided by the number of months remaining before maturation.

Olympia Capital Associates, L.P., was hired in June 2000 as the fund administrator for the Integral Funds. Among its other duties, Olympia sent monthly and quarterly statements to the Funds' investors, showing the value of each investor's interest in the Funds. It was Seghers, however, who sent to Olympia monthly valuations of the Funds' assets, including values for the Galileo Fund. Under the Integral Funds' limited partnership agreements, Integral Investment Management, L.P., received certain fees and distributions based on the value of the Funds and the profit attributed to each investor's account. Seghers, a principal of Integral Investment Management, received income based on the value and performance of the Funds, as reported to investors.

**\*\*2** Morgan Stanley Dean Witter ("Morgan Stanley") was the broker-dealer for the Integral Funds and the Galileo Fund. In February 2001, Bizri discovered significant errors by Morgan Stanley in the Galileo Fund's account. These errors included positions in the account at incorrect prices, unauthorized trades, duplicative trades, and margin calculation errors. Due to errors in the account, Morgan Stanley mistakenly made margin calls, forcing the liquidation of some of the assets in the Galileo Fund. A June 6, 2001 letter to Seghers from an assistant vice-president at Morgan Stanley documented that the statement values for Integral Equity, Galileo Fund, and Galileo Fund Offshore [FN1] had been incorrect since February 2001. None of these troubles were reported to investors at the time they occurred.

> [FN1]. Galileo Fund Offshore was a separate fund established for investment by Integral Investment Management.

In July 2001, the Funds' assets in the Galileo Fund account were transferred from Morgan Stanley to another broker-dealer, Spear, Leeds & Kellogg, L.P. Seghers did communicate the change to investors, but without explaining the details or extent of the errors that Morgan Stanley had made.

After September 11, 2001, the Funds collapsed and Integral Hedging and Integral Equity lost most of their value. *323 Olympia distributed statements to investors providing their account values as of September 30, 2001. Each statement contained a new disclaimer stating that the Fund is largely invested in RAPS Contracts, the net asset value of which is calculated on an amortization formula that spreads realized gains or losses over the time period until the expiration of the contract. The statement also disclosed that, if the Fund's assets were calcu-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

lated on the basis of a mark-to-market or liquidation value, the value of the Fund would be down by over 90%.

## II.

The Commission, charging securities fraud, brought a civil enforcement action against Seghers, alleging violations of § 17(a) of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 thereunder, and §§ 206(1) and 206(2) of the Investment Advisers Act. The Commission alleged that Seghers committed fraud from June 1 through November 30, 2000 and March 1 through September 30, 2001 because he knowingly caused Olympia to overstate the value of investors' interests in the Funds by anywhere from 13% to 77% per month and because he did not disclose errors by Morgan Stanley that affected valuation of the Funds. The Commission sought an injunction against further securities fraud, a civil penalty, and disgorgement of Seghers's ill-gotten gains. After a fourteen-day trial, the jury found by a preponderance of the evidence that Seghers had violated each securities fraud provision alleged. FN2

> FN2. The Commission also brought claims against Seghers for selling unregistered securities under §§ 5(a) and 5(c) of the Securities Act. The jury found that Seghers's offerings of interests in the Funds were exempt from the registration requirements of § 5 of the Securities Act under Rule 506 of SEC Regulation D. The Commission does not appeal this finding.

Seghers moved for judgment as a matter of law. The district court denied Seghers's motion, but found that the Commission had only presented proof of Seghers's mental culpability from June 6, 2001 through September 30, 2001. FN3 The district court noted, as evidence of Seghers's mental culpability, the June 6, 2001 letter Seghers received from Morgan Stanley documenting errors in the account statements for Integral Equity, Galileo Fund, and Galileo Fund Offshore. The court also noted a June 15, 2001, email from Seghers to Morgan Stanley stating that "every day" there were new errors, that "our web pages [ ] are incorrect so frequently that they can never be trusted," and that Morgan Stanley accounts are "continually full of multi-million dollar errors."

> FN3. The district court's finding that the evidence did not support liability prior to June 6, 2001 appears to have no palpable effect on the ultimate judgment entered. In other words, the final judgment in this case, which enjoins Seghers from further securities fraud and imposes a civil fine, remains the same with or without the district court's finding that the evidence of scienter was not sufficient for the entire period at issue.

**\*\*3** The district court permanently enjoined Seghers from committing securities fraud and imposed a civil penalty in the amount of $50,000. The district court denied the Commission's motion to order disgorgement, finding that Seghers had lost over $900,000 of his own money along with the investors and was therefore not unjustly enriched by any ill-gotten gains.

## III.

Both Seghers and the Commission appeal.

Seghers argues on appeal that the district court erred in admitting the testimony **\*324** of the Commission's summary witness, Nina Yamamoto, and an accompanying summary chart. Seghers also contends that the evidence establishes that he made full and fair disclosures of material facts to investors as they were known to him, that the evidence is insufficient to sustain the verdict against him and, consequently, that the district court erred in denying his motion for judgment as a matter of law.

The Commission, on cross-appeal, disputes the district court's ruling limiting Seghers's mental culpability to the period after June 6, 2001. The Commission also argues that the district court erred in denying disgorgement.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

We hold that the district court did not err in admitting the Commission's summary evidence. We further hold that the jury's findings that Seghers violated the relevant securities laws are supported by legally sufficient evidence. More specifically, the jury's verdict is supported by ample evidence that Seghers knowingly made materially misleading statements and knowingly withheld material facts about errors by the Funds' broker, Morgan Stanley, that affected the valuation of the Funds' assets and materially harmed investors. Consequently, we affirm the denial of Seghers's motion for judgment as a matter of law and affirm the judgment of the district court.

With respect to the cross-appeal, we hold that the district court erred in limiting the period for which Seghers was mentally culpable. We also conclude that there was sufficient evidence for the jury to find that Seghers acted knowingly or recklessly before June 6, 2001. Finally, we vacate and remand for further consideration the district court's denial of disgorgement. Seghers's personal losses in the Integral Funds do not, standing alone, insulate him from disgorgement.

We now turn to the arguments of the parties.

IV.

[1] Before addressing the substance of the evidence supporting the verdict, we will first consider the court's evidentiary ruling concerning the summary chart. Nina Yamamoto, a Commission employee, prepared a summary chart to compare the total values of the Integral Funds reported to investors each month with the total values listed in statements of the banks and brokers who held the Funds' assets. Yamamoto created the chart by reviewing two boxes of documents containing records from Olympia and the various banks and brokers used by Integral Funds, the Galileo Fund, and Galileo Fund Offshore. For each month, the total value reported to investors was substantially higher than the value reported by the banks and brokers. FN4 Yamamoto's summary chart was admitted into evidence. The court instructed the jury that

FN4. Yamamoto's chart displayed five items for each month from June though November 2000 and February through September 2001:(1) the statement date; (2) the Funds' asset value reported by Olympia to investors; (3) the Funds' asset value calculated using reports by brokers and banks; (4) the difference in the preceding values; and (5) the difference expressed as a percentage.

**\*\*4** Summary exhibits are not evidence in and of themselves. You must determine whether the evidence that is summarized in such an exhibit is credible or worthy of belief. You may give a summary exhibit entire weight, some weight, or no weight at all, depending on your assessment of the underlying evidence.

Seghers argues that the summary was prejudicial and made an argument that was not otherwise proven, and that Yamamoto was proffered as an expert in disguise. He also contends that the underlying evidence Yamamoto used to produce **\*325** the summary is inaccurate, because of errors in account statements produced by Morgan Stanley. Seghers contends that the chart is inconsistent with the underlying evidence because it alleges that Seghers overstated the value of the Integral Funds.

We review the district court's evidentiary rulings for abuse of discretion. *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 265 (5th Cir.2007).

Federal Rule of Evidence 1006 provides that

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

We have held that summary charts in particular

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

are admissible when
> (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, and (3) the jury is properly instructed concerning the use of the charts.

*United States v. Bishop,* 264 F.3d 535, 547 (5th Cir.2001).

Although district courts must use caution when admitting summary evidence, "[f]ull cross examination and admonitions to the jury minimize the risk of prejudice." *Id.*; *see also United States v. Smyth,* 556 F.2d 1179, 1184–85 (5th Cir.1977) (holding that jury instruction neutralized possible prejudice from argumentative summary chart headings).

Seghers contends that the summary chart asserted that he fraudulently overstated the value of the Funds and that the accounting method used by the Funds is necessarily fraudulent. But neither the chart nor Yamamoto's testimony contains such an allegation. The Commission argued that the summary showed the extent to which Seghers had knowingly reported inflated values to investors, but Yamamoto's testimony and chart only summarized the contents of account statements.[FN5]

> FN5. Seghers does not contend on appeal that Yamamoto's summary chart is not based on evidence before the jury, that the underlying evidence was not voluminous, or that the evidence was not available to his counsel.

Seghers relies on our decision in *United States v. Hart,* 295 F.3d 451 (5th Cir.2002). In *Hart,* we held that the admission of summary charts was reversible error because the government had not presented any independent testimony to support assumptions that the witness's characterization of the evidence was proper. *Id.* at 458–59. Here, the Commission presented independent evidence that values reported to the Integral Funds' investors were substantially higher than those that appeared on the statements sent to the Integral Funds and the Galileo Fund. Daniel Jackson, a receiver appointed to control the Integral Funds, testified that he had examined the values reported to the Funds' investors and those reported to the Funds by banks and brokers and found that the values reported to investors were often inflated.[FN6] Moreover, Seghers testified that **\*326** Bizri used an accounting method that would result in values that were different from mark-to-market values. And unlike the chart offered in *Hart,* Yamamoto's chart did not purport to indicate that certain values ought to have been reported or that they were "overstated," but only totaled values found in other records.

> FN6. Seghers contends in a footnote to his discussion of Yamamoto's testimony and chart that "These points apply equally to the testimony of the Funds' receiver, Daniel Jackson." However, because Jackson was not a summary witness and because Seghers did not adequately brief this argument, we do not address it. "A single conclusory sentence in a footnote is insufficient to raise an issue for review." *United States v. Charles,* 469 F.3d 402, 408 (5th Cir.2006).

**\*\*5** Yamamoto's testimony did not require that she be qualified as an expert because the production of the chart required her only to add values listed on various statements and divide the totals to calculate a percentage. We have held that "when a chart does not contain complicated calculations requiring the need of an expert for accuracy no special expertise is required in presenting the chart." *United States v. Jennings,* 724 F.2d 436, 443 (5th Cir.1984). Although Yamamoto's preparation of the chart may have been tedious, it was not so complicated as to require special expertise.

Seghers's more serious contention is that some of the statements Yamamoto used to prepare her summary contained errors. Seghers has not shown, however, that the statements used to prepare the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

chart were inadmissible. They were the same statements that were sent to the Integral Funds and the Galileo Fund at the time Seghers was communicating the Funds' values to Olympia. Seghers testified that he also received monthly summaries showing the total value of the Galileo account from the brokers. Seghers was permitted to cross-examine Yamamoto concerning the accuracy of the statements she used to prepare her summary. Seghers also testified as a rebuttal witness concerning the accuracy of that evidence and testimony. In addition, the district court gave a cautionary instruction similar to one that we have previously approved. See *Bishop,* 264 F.3d at 547. Any prejudice that may have arisen from the Commission's use of the chart was countered by Seghers's cross-examination and rebuttal testimony and by the court's limiting instruction.

We have often emphasized, and do so once again, that district courts must be very cautious when admitting summary evidence and charts because of their potential to carry undue weight with the jury. *See, e.g., Hart,* 295 F.3d at 455. But the district court here did not abuse its discretion in admitting Yamamoto's testimony and chart, especially since it allowed full cross-examination and rebuttal testimony and gave an appropriate limiting instruction.

V.
A.

We now turn to Seghers's argument that the evidence was insufficient to show fraud. Although several separate arguments are made, he does not focus on any specific statutory violation. Instead, he globally contends that the evidence was insufficient for the jury to find fraud with respect to any and all counts of the verdict. Seghers moved for judgment as a matter of law, a challenge to the legal sufficiency of the evidence. We treat Seghers's claim of insufficient evidence as an appeal of the district court's denial of his motion. We review the district court's ruling on the motion *de novo,* applying the same standard of review as the district court. *Flowers v. Southern Reg'l Phys. Serv. Inc.,* 247 F.3d 229, 236 (5th Cir.2001). Judgment as a matter of law is proper where "there is no legally sufficient evidentiary basis for a reasonable jury to have found for [a] party with respect to [an] issue." *Id.* (quotation marks omitted). Although our review is *de novo,* we recognize that "our standard of review with respect to a jury verdict is especially deferential." *Brown v. Bryan County,* 219 F.3d 450, 456 (5th Cir.2000). As such, judgment as a matter of law should not be granted unless the facts and inferences **\*327** point "so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1322 (5th Cir.1994).

**\*\*6** The jury found that Seghers violated § 10(b) of the Exchange Act [FN7] and Rule 10b–5, [FN8] and § 17(a) of the Securities Act. [FN9] To prove a violation of § 10(b) on the basis of false or misleading statements or misleading omissions, the Commission must show (1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter. [FN10] *See Aaron v. Sec. & Exch. Comm'n,* 446 U.S. 680, 695, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). [FN11] To show a violation of § 17(a)(1), the Commission must prove (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter. See *id.* at 697, 100 S.Ct. 1945. To show that a defendant has violated § 17(a)(2) or § 17(a)(3), the Commission need only show that the defendant acted with negligence. See *id.* at 702, 100 S.Ct. 1945.

> FN7. Section 10, 15 U.S.C. § 78j, provides, in relevant part:
>
> > It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 21015-4   Filed 08/31/12   Page 10 of 19

Page 9

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

....

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

FN8. Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

FN9. Section 17(a), 15 U.S.C. § 77q(a), provides:

It shall be unlawful for any person in the offer or sale of any securities ... by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

FN10. Seghers does not contest that his statements to Olympia and his and Olympia's statements to investors were made by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails. *See* 15 U.S.C. § 77q(a), 17 C.F.R. § 240.10b, 15 U.S.C. § 78j(b); 15 U.S.C. § 80b–6.

FN11. The scope of liability under Section 10(b) and Rule 10b–5 is the same. *See SEC v. Zandford,* 535 U.S. 813, 816 n. 1, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002).

The jury also found that Seghers violated §§ 206(1) and 206(2) of the Investment Advisers Act.<sup>FN12</sup> The language of the anti-***328** fraud provisions of § 206 of the Investment Advisers act is drawn from § 17(a)(1) and (3) the Exchange Act, and conduct falling within § 17(a)(1) and (3) will fall within the analogous provisions of § 206 when committed by an investment adviser against a client or prospective client.<sup>FN13</sup> *See Steadman v. Sec. & Exch. Comm'n,* 603 F.2d 1126, 1134 (5th Cir.1979). The parties stipulated at trial that Seghers acted as an investment adviser. Scienter is required to show a violation of § 206(1). *See id.* Negligence is sufficient to show a violation of § 206(2). *Id.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

FN12. Section 206, 15 U.S.C. § 80b–6, provides, in relevant part:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

FN13. Although we have held that an investment adviser's fiduciary status may be considered in assessing liability under Rule 10b–5, *see Laird v. Integrated Resources, Inc.,* 897 F.2d 826, 837 (5th Cir.1990), the Commission does not rely upon any heightened duty, but contends that Seghers violated the usual standards for assessing fraud under Rule 10b–5.

The case was submitted to the jury in the form of six questions, each asking whether the Commission had met its burden of proof by a preponderance of the evidence that Seghers had violated a specific statutory provision. As we have indicated, Seghers does not direct his appeal at any particular allegation or statute, but argues more generally that he did not commit any species of fraud, either because he did not make certain statements or because the Commission did not prove that he acted with the requisite state of mind. Correspondingly, we address his challenge to the sufficiency of the evidence in generality, holding that the Commission presented sufficient evidence to support its theory that Seghers made misrepresentations and misleading omissions that violated § 17(a) of the Securities Act, § 10 of the Exchange Act, Rule 10b–5, and § 206 of the Investment Advisers Act.

B.

[2] We begin review of the sufficiency of the evidence by considering whether the Commission presented sufficient evidence that Seghers made material misrepresentations or materially misleading omissions to support allegations that Seghers violated § 17(a) of the Securities Act, § 10 of the Exchange Act, Rule 10b–5, and § 206 of the Investment Advisers Act. We have stated that "the standard for misrepresentation is whether the information disclosed, understood as a whole, would mislead a reasonable potential investor." *Trust Co. of Louisiana v. N.N.P. Inc.,* 104 F.3d 1478, 1490 (5th Cir.1997). "[A] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 359 (5th Cir.2002) (quotation marks and citation omitted).

**\*\*7** The Commission presented evidence that beginning in June 2000 Seghers was responsible for making monthly statements to investors, through the Funds' manager Olympia, that were misleading to investors about the value of their account and the performance of the Funds. The Commission also presented evidence that Seghers made misrepresentations to investors about errors by Morgan Stanley that harmed the Funds and made their valuation difficult. The Commission contends that, in combination, this evidence is sufficient to support the jury's finding that **\*329** Seghers violated the securities fraud provisions of the statutes charged.

The Commission presented evidence reflecting that Seghers made materially false or misleading statements of the Funds' values. The initial limited partnership agreements for each of the Funds provided that the general partner, Integral Investment Management, would use either the cash or accrual method of accounting to keep the Fund's books and that each limited partner's account would be valued according to certain principles. Listed securities would be valued based on the last reported

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

sales price, that is, at market value. Bizri's testimony indicated that the Funds' assets in the Galileo Fund were invested in stocks and options that are listed on exchanges. At various times, including the summer and fall of 2000, the Galileo Fund was invested in money market accounts and government bonds. Based on the Funds' initial limited partnership agreement, the jury could have found that investors would expect their investments to be valued at their market value for at least part of the period at issue.

There is significant evidence, however, that the assets in the Galileo Fund were not valued at market value. Daniel Jackson, the Funds' receiver, testified that the investors' monthly statements did not report the market value of the Funds' assets. Bizri testified similarly that he used a valuation method that differed from mark-to-market or market value accounting. And, as discussed above, the Commission introduced evidence showing that, in each month at issue, the investors' statements reflected values significantly higher than those reported by the banks and brokers who held the Funds' assets. The evidence established that Seghers discussed the valuations of the Galileo Fund with Bizri, and that Seghers alone sent those values to Olympia, who used them as the basis for the investors' monthly reports. There is therefore evidence from which the jury could reasonably find that Seghers's statements of the Funds' value would be misleading to a reasonable investor.

The Commission also presented evidence that Seghers failed to disclose and misrepresented errors by Morgan Stanley, the broker for the Integral Funds and the Galileo Fund. Bizri testified that he informed Seghers in March 2001 of errors in Morgan Stanley's statements for the Galileo Fund, including incorrect pricing, unauthorized trades, duplicative trades, and margin calculation errors. Bizri testified that, as a result, he "didn't know what positions we had in the account." Bizri testified that he used broker statements to calculate the value of the Galileo Fund and that, because of the errors, he could not value the account between March and June of 2001. He testified that, on Seghers's urging, he attempted to value the Galileo Fund by reconstructing the individual trades made "by hand." Seghers testified that, in April 2001, he flew to California to meet with Morgan Stanley to discuss the errors. Notwithstanding his knowledge of Morgan Stanley's errors and Bizri's difficulty valuing the Galileo Fund, Seghers continued to communicate valuations of the Integral Funds to Olympia for reporting to investors.

**\*\*8** The Commission presented evidence that some of Morgan Stanley's errors triggered margin calls, for which Morgan Stanley mistakenly forced early liquidation of some of the Galileo Fund's assets. Bizri and Jackson testified that an improper margin call around April 2001 caused actual losses to the Galileo Fund. Jackson testified that the loss was approximately one million dollars.

Seghers emailed Morgan Stanley on June 15, 2001, stating that "Morgan Stanley's continued inaccuracies with respect to **\*330** our account positions and incorrect order fills continue to materially damage our funds and the respective investors," and that the Morgan Stanley accounts are "continually full of multi-million dollar errors." Seghers did not disclose any of this information to investors but continued to report values for the Funds to Olympia, who reported to investors.

The evidence against Seghers is clearly sufficient to support the jury's verdict, notwithstanding his explanations and arguments to the contrary, which we discuss below. Seghers made statements of the value of the Funds' assets that were significantly higher than the market values of those assets. The jury reasonably could have concluded that those statements were misleading in the light of the total mix of information available, including limited partnership memoranda indicating that Integral Investment Management would use cash or accrual accounting and value investors' accounts using market values for all investments for which market values were available. In addition, Seghers's state-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW Document 21015-4 Filed 08/31/12 Page 13 of 19

Page 12

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

ments to investors were inconsistent with statements he made to Morgan Stanley concerning the effects of Morgan Stanley's errors and inconsistent with Bizri's testimony that Bizri could not effectively value the Galileo Fund.

The evidence also supports the finding that Seghers's misrepresentations and omissions were material. The value of an investor's account and the month-to-month performance of the Funds are indisputably relevant to the investor's investment decision. Likewise, information that the Funds' broker was making substantial errors in the Funds' accounts and the account for the Galileo Fund could have affected investors' decisions to invest or to remain invested in the Funds. Seghers's own statement that Morgan Stanley's errors "continued to materially damage" the Funds' investors confirms that investors could consider knowledge of the errors important in making investment decisions.

Substantial evidence supports the jury's verdict that the Commission had proven Seghers's violations of the charged statutes by a preponderance of the evidence. Nevertheless, Seghers makes several arguments against the conclusion that he committed any securities fraud. We consider his arguments below, but ultimately find that the jury's verdict was adequately supported by the evidence.

First, Seghers contends that he did not perform any valuations for the Galileo Fund, but that Bizri was solely responsible for such calculations. This argument is immaterial because, even if Seghers did not perform the calculations, there was sufficient evidence for the jury to find that he made statements of the Galileo Fund's values to Olympia, who in turn sent those statements to investors after it was hired in June 2000, and that Olympia had no other source for those values. Similarly, Seghers's contention that he did not receive detailed account statements from Morgan Stanley showing the individual trades conducted on behalf of the Galileo Fund is irrelevant. Seghers testified that he received a monthly summary from Morgan Stanley showing the total value of the Galileo Fund account. Bizri also testified that he and Seghers discussed the Galileo Fund's value in detail before Seghers reported it to Olympia and that Seghers critiqued and suggested changes to the valuations before he reported them.

**\*\*9** Second, we turn to Seghers's primary argument explaining a non-fraudulent basis for the difference in the values reported to investors and market values. He contends that the value of the Galileo Fund was calculated by Bizri according to the "amortization method" of accounting. Seghers contends that values calculated on a mark-to-market basis should not be expected to match values calculated using **\*331** this method.[FN14] According to Seghers, the district court's judgment should be reversed because the Commission impermissibly relied upon the theory that the use of the amortization method was fraudulent because it was in violation of generally accepted accounting principles ("GAAP"). Seghers also contends that the Commission was required to show a violation of GAAP by expert testimony. It is certainly true that we have held that a violation of GAAP, without more, does not establish securities fraud. See *Lovelace v. Software Spectrum,* 78 F.3d 1015, 1020 (5th Cir.1996); *Fine v. Amer. Solar King,* 919 F.2d 290, 297 (5th Cir.1990). "[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter. The party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information." *Id.* Other courts have held that securities fraud may be proved, even where improper accounting is alleged as the basis for misrepresentation, without showing violations of GAAP. See *United States v. Rigas,* 490 F.3d 208, 221 (2d Cir.2007); *United States v. Ebbers,* 458 F.3d 110, 125–26 (2d Cir.2006).

> FN14. According to the year 2000 audit of Integral Arbitrage, the Galileo Fund was valued as follows: "Management of Galileo values the underlying securities such as swaps and other derivative contracts

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 21015-4   Filed 08/31/12   Page 14 of 19

Page 13

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
(Not Selected for publication in the Federal Reporter)
(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))

monthly at cost plus or minus a monthly allocation of the appreciation or depreciation in value that will be achieved upon expiration of the positions at the present market pricing." The audit report, prepared by Deloitte and Touche, L.L.P., stated that this method of accounting is not in accordance with GAAP and that "[a]ccounting principles generally accepted in the United States of America require that such underlying securities be accounted for at fair value."

In short, GAAP violations are neither necessary nor sufficient to prove securities fraud. It is possible to violate GAAP, yet not commit fraud, and it is possible to commit fraud without violating GAAP. As discussed above, the necessary elements of fraud in this case are materially misleading statements or omissions made with scienter. For the relevant periods in 2000 and 2001, the Commission presented evidence from which a jury could reasonably infer that Seghers knew he was causing Olympia to report to investors account values in excess of the market values reported by the Integral and Galileo Funds' broker. The Commission's proof of Seghers's misrepresentations and omissions does not depend on compliance with GAAP, but instead depends on evidence that Seghers's statements and omissions were false or misleading to investors. Furthermore, because a violation of GAAP was not necessary to the Commission's case, a lack of expert testimony regarding GAAP does not require reversal here. FN15

> FN15. The Nebraska district court found in *In re Guenthner,* that expert testimony is required to prove a violation of GAAP, just as it is generally necessary to establish the relevant standard of care applicable to a professional. 395 F.Supp.2d 835, 846 (D.Neb.2005). Some courts have disagreed, holding that expert testimony is helpful to show GAAP violations, but that the government need not always present expert testimony regarding GAAP. *See United States v. Rigas,* 490 F.3d 208, 221 (2d Cir.2007); *United States v. Goyal,* 2008 WL 755010, *3 (N.D.Cal. March 21, 2008)*. We do not address this issue.

Third, Seghers contends that Bizri's use of the amortization method to value the Galileo Fund was "fully disclosed to investors in the Funds' prospectuses and the Deloitte & Touche audits." FN16 The audit ***332** reports for the fiscal year 2000 provided by Deloitte & Touche, L.L.P., do disclose that the Integral Funds invested in an entity that values its assets under an amortization method and not according to fair value. However, the audit report is dated May 11, 2001. The report could not therefore provide notice of any use of the so-called amortization method of accounting prior to the time the report was distributed to investors.

> FN16. Seghers also contends that the valuation method was approved by investors in limited partnership agreements the investors executed, citing six exhibits submitted in a motion to supplement and correct the record Seghers filed after oral argument was heard in this case. Seghers, however, misidentified the exhibits with which he sought to supplement the record. Despite the confusion, we discovered in our own review of the record that the exhibits were in fact admitted at trial. Given that the exhibits were a part of the trial record, we dismiss Seghers's motion to supplement as moot. Nevertheless, the agreements did not provide adequate notice to investors that the amortization method would be used to value the Funds' assets.

**\*\*10** Seghers points to amended limited partnership agreements that provide that for "any structured equity without a quoted market value, such as a swap or forward contract or limited partnership investment or for any security that is not listed or traded on an exchange, the value of these securities will be determined monthly by the General Part-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

ner." The agreement then details an accounting method resembling the so-called amortization method for "Total Portfolio Swaps which are Bullet Swaps and only receive their appreciation or depreciation in value at the end of their term." This evidence does not show that Seghers's statements were not misleading. The Funds' receiver, Daniel Jackson, testified that there was no evidence that the Funds' investors agreed to modified partnership agreements allowing for the use of an amortization accounting method. In addition, the record does not make clear whether the Funds' investments in the Galileo Fund fall under the category for which the limited partnership agreements provide for an alternative accounting method. There is evidence that the Galileo Fund was, at various times, invested in conventional assets such as government bonds, that had listed market values. Even during those periods, there was substantial difference in the market value and the value reported to investors. Therefore, even taking into account the limited partnership agreement language to which Seghers points, the jury could have found it misleading to provide investors with monthly statements listing only account values calculated on a non-market basis, without clear disclosures that they were calculated on an alternative basis.

Fourth, Seghers contends that the Commission's evidence that he reported inflated values to Olympia is flawed because it relied upon Morgan Stanley's monthly account statements, which the parties stipulated contained numerous errors from February 2001 onward. Seghers testified at trial that there were other errors in statements during the period from June through November 2000, but did not testify about their frequency or magnitude, mentioning specifically only two errors in August 2000. Seghers contends on appeal that the "Morgan Stanley Data has been hopelessly confused and misleading since mid–2001." But for at least an earlier period in June through November 2000, the Commission presented evidence of the monthly values of the assets of the Integral Funds that, the jury could find, approximates their mark-to-market values.

Fifth, with regard to the errors by Morgan Stanley, Seghers contends that he made adequate disclosure to investors in a June 20, 2001 letter stating, "we have made a change from Morgan Stanley to Spear, Leeds & Kellogg, L.P., a division of Goldman Sachs. As we have switched to Spear, Leeds, & Kellogg, errors from Morgan Stanley are being resolved and the monthly performance figures and statements should be available in a more timely manner." A July 31, 2001 investor update **\*333** letter stated that the Integral Funds retained Spear, Leeds & Kellogg "due to their specialization in derivatives and market leading risk management systems" and that "[w]e are also still in the process of resolving outstanding issues with Morgan." Seghers's references to unspecified "errors" and "issues" do not preclude a finding that the statements were misleading and that Seghers omitted information necessary to make his relatively benign explanation for switching brokers not misleading. Seghers did not disclose to investors that the Integral Funds' previous broker, Morgan Stanley, had been making serious errors since February of 2001. Seghers threatened to sue Morgan Stanley, making a settlement demand of $35 million on August 1, 2001. Yet, he continued providing valuations of the Funds' assets to Olympia without informing investors of these developments or of the errors relating to the Funds' accounts.

**\*\*11** After considering Seghers's various arguments, we certainly cannot say that a reasonable jury could only exonerate Seghers of the securities fraud alleged. There was evidence to support findings that Seghers made statements that would mislead a reasonable investor and that he made omissions that would have the effect of misleading investors. The jury reasonably could have rejected Seghers's testimony and found that reasonable investors would be misled by Seghers's statements concerning the value of the Funds and his failure adequately to disclose Morgan Stanley's errors. There was evidence that Seghers not only reported

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 21015-4   Filed 08/31/12   Page 16 of 19

Page 15

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

values based on an unfamiliar accounting method, but that he did so knowing that the errors made by the Funds' broker made the accounting method less reliable and materially damaged the value of the Funds. Viewing this evidence in combination and in the light most favorable to the verdict, there is sufficient evidence for the jury reasonably to have found that Seghers made material misrepresentations and materially misleading omissions.

C.

[3] The next question is that of scienter and whether the evidence supports the jury's finding that Seghers acted with the mental state required for the securities fraud violations at issue.[FN17] Scienter is a mental state that embraces an intent to deceive, manipulate or defraud, and includes severe recklessness. See *Nathenson v. Zonagen Inc.,* 267 F.3d 400, 408 (5th Cir.2001). Severe recklessness is

> FN17. The parties stipulated that limited partnership interests in the Integral Funds are securities. Seghers does not contest on appeal that his statements to investors and monthly account statements sent to investors were in and in connection with the offer and sale of these securities.

limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Fine,* 919 F.2d at 296–97. Scienter may be found if a reasonable jury can conclude that the defendant knew his statements were false when made. See *id.* at 297.

There was ample evidence that Seghers acted with the knowledge that he was misleading investors. Despite his protestations to the contrary, Seghers and Bizri's testimony provided evidence that Seghers knew the market values of the Funds' assets and chose to report higher values. Indeed, one of the accounting firms Seghers approached in August 2000 warned **\*334** him that an unusual accounting technique would be misleading to investors. Seghers was also given the prescient warning that attempting to "invent" a method of accounting not accepted in the accounting world would mislead investors and expose Seghers to potential litigation. Another accounting firm advised Seghers that, if he used an "amortization" method of accounting, he would need to have all financial statement users explicitly agree to the method of accounting. As discussed above, the evidence does not support a finding that all of the Funds' investors agreed to the method of accounting that was actually used. And, tellingly, Olympia and Seghers ultimately decided to include a disclosure in investors' statements for September of 2001, explaining that the Galileo Fund used non-market value accounting, and disclaiming Olympia's responsibility for valuing those assets. This disclosure was not included in the many preceding months. Based on this and other evidence, the jury reasonably could have found that Seghers knowingly and intentionally misled investors.

**\*\*12** We have already made reference to the evidence that Seghers was aware of the presence and extent of Morgan Stanley's errors. Bizri testified that he told Seghers of the errors in March of 2001. Bizri testified that, when he informed Seghers that he could not value the Galileo Fund, Seghers threatened him by referencing their contractual agreement and Bizri's immigration status. Jackson, the receiver for the Funds, testified about an email from Seghers to Bizri confirming Seghers's knowledge of errors, including the improper April 2001 margin call that caused losses to the Galileo Fund that were not reported to investors. A reasonable jury could conclude that Seghers knew about the effects that Morgan Stanley's errors were having on the assets of the Integral Funds and on the ability to produce accurate valuations, and that he knowingly or recklessly misled investors by omitting this information when communicating valuations for the

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

Funds and when disclosing a change in the Funds' broker.

The jury also could have reasonably found that Seghers had a motive to overstate the value of the Integral Funds and to conceal problems with the Funds. We have held that motive, although not alone sufficient, is relevant to showing scienter. *See Nathenson,* 267 F.3d at 410–11. *See also R2 Investments LDC v. Phillips,* 401 F.3d 638, 644–45 (5th Cir.2005) (holding that circumstantial evidence of scienter must be greater where a clear motive for alleged misstatements or omissions is not alleged). Integral Investment Management received fees and distributions that varied directly with the profits attributed to the investors' accounts. Seghers, as a principal of Integral Investment Management, stood to gain financially in direct proportion to reporting high valuations of the Funds and from attracting new investments from existing or prospective clients and increasing the size of the Funds.

We therefore hold that the Commission presented sufficient evidence for a reasonable jury to find that Seghers acted with scienter in making material misrepresentations and omissions to investors.

D.

In summary, the Commission presented sufficient evidence that Seghers made material misrepresentations and omissions and that he did so knowingly or recklessly. Viewing the evidence in the light most favorable to the verdict, Seghers has failed to demonstrate that no reasonable jury could find that he violated securities laws. We therefore AFFIRM the district court's judgment against Seghers for violations of § 17(a) of the Securities Act, § 10 of the Exchange Act, Rule 10b–5, and § 206 of **\*335** the Investment Advisers Act, and its denial of his motion for judgment as a matter of law.

VI.

[4] We now turn to the Commission's argument on cross-appeal that the district court erred, in its ruling on Seghers's motion for judgment as a matter of law, when it concluded that the evidence was insufficient for the jury to find Seghers mentally culpable before June 6, 2001. As we have earlier noted, this conclusion had no ultimate effect on the verdict and the judgment, which only adjudged Seghers generally liable for committing securities fraud, under the specifically named statutes, and additionally imposed a civil penalty of $50,000 and an injunction against further such conduct. The Commission, however, contends that, although the district court did not overrule any part of the jury verdict and did not grant judgment as a matter of law in favor of Seghers as to any violation, it effectively granted partial judgment as a matter of law on each jury finding of securities fraud by concluding that Seghers was not mentally culpable for a segment of the time during which fraud was alleged to have been perpetrated. As noted above, judgment as a matter of law should not be granted unless the facts and inferences point "so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Omnitech,* 11 F.3d at 1322.

**\*\*13** We first note that it is not entirely clear that the Commission is aggrieved by the district court's legal conclusion that there was insufficient evidence to find fraud before June 6, 2001. The jury was not asked to pin down its findings to a particular date. The jury was only asked to find whether the Commission had met its burden of proof for each statutory provision of which a violation was alleged. The stipulated facts, however, provided that the "relevant time periods [the jury] should consider are June 1, 2000 through November 30, 2000; and March 1, 2001 through September 30, 2001." Accordingly, the jury was not required to find that Seghers committed fraud for every segment of the entire period. The district court's memorandum opinion, although it found the evidence lacking for a portion of the relevant time period, did not necessarily conflict with the jury's general finding of securities fraud.

Nevertheless, the Commission argues that it is aggrieved in the sense that the district court's con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

clusion can affect the amount of disgorgement that Seghers may be required to pay. Thus, we do hold that, given the deferential standard by which we review a jury verdict, the district court's conclusion that the evidence was not legally sufficient to support the jury's finding for any period before June 6, 2001 is erroneous. The district court apparently found that Seghers did not act with negligence or scienter before June 6, 2001 because that was the date of the letter from Morgan Stanley documenting the presence of errors in Morgan Stanley's statements since February 2001. However, as discussed above, Bizri testified that he told Seghers of the errors before June 6. Seghers also testified that he traveled to California in April 2001 to meet with representatives from Morgan Stanley to discuss errors in the Integral and Galileo Fund accounts. Furthermore, apart from the errors in Morgan Stanley's statements, there was significant evidence that beginning in June 2000 Seghers made monthly statements to investors, through the Funds' manager Olympia, that were misleading to investors about the value of their account and the performance of the Funds. Because there was sufficient evidence that Seghers was mentally culpable for events during this period of time, the jury reasonably could have found that Seghers knew of significant Morgan Stanley errors before receiving the June 6 ***336** letter documenting them. Therefore, we VACATE that part of the district court's judgment limiting Seghers's mental culpability to the period after June 6, 2001. The Commission presented sufficient evidence that Seghers acted with scienter or negligence to defraud investors before that date.

## VII.

[5] We next consider the Commission's further argument on cross-appeal that the district court erred in denying disgorgement on the grounds that Seghers lost his own money in the Integral Funds.

The Commission sought disgorgement in the amount of $952,896, plus prejudgment interest. In denying disgorgement, the district court noted that "[t]he primary purpose of disgorgement is to deprive securities law violators, like Seghers, of their ill-gotten gains." The court reasoned that "[b]ecause Seghers lost over $900,000 of his own money with the investors, he was not unjustly enriched by any ill-gotten gains. The Court finds that the Permanent Injunction will sufficiently deter Seghers from committing further securities fraud, and the imposition of a Civil Penalty will sufficiently punish him for securities violations proved at trial."

**\*\*14** The district court has broad discretion whether to order disgorgement and to determine the amount of the award. *See Sec. and Exch. Comm'n v. AMX, Int'l, Inc.,* 7 F.3d 71, 73 (5th Cir.1993). However, the district court abuses its discretion when it bases its decision on an error of law. *E.g., Hodges v. Mack Trucks, Inc.,* 474 F.3d 188, 199 (5th Cir.2006). We have stated that the purpose of disgorgement is to deprive the wrongdoer of his ill-gotten gains and deter future violations of the law. *AMX,* 7 F.3d at 76 n. 8. Other courts have rejected defendants' arguments that disgorgement may not be ordered where the defendant has lost funds in his fraudulent scheme. *See Sec. & Exch. Comm'n v. JT Wallenbrock & Assoc.,* 440 F.3d 1109, 1116 (9th Cir.2006) (affirming order of disgorgement notwithstanding that the defendant lost money in his Ponzi scheme); *Sec. & Exch. Comm'n v. First Pacific Bancorp,* 142 F.3d 1186, 1192 n. 6 (9th Cir.1998) ("[n]or does the fact that [the defendant]'s scheme ultimately failed and he lost a $1,000,000 of his own funds release him from his obligations toward the defrauded investors"); *Sec. & Exch. Comm'n v. Commonwealth Chem. Sec. Inc.,* 574 F.2d 90, 102 (2d Cir.1978) (rejecting the defendants' argument that losses in manipulated stock wiped out profits).

We have held that "[t]he court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing." *Sec. & Exch. Comm'n v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978). If the Commission shows a causal relationship between the defendant's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)))**

wrongdoing and the amount by which he was unjustly enriched, that amount of money may be disgorged even if the defendant has otherwise disposed of, reinvested, or spent the particular assets that he wrongfully obtained. *See Sec. & Exch. Comm'n v. Banner Fund Int'l,* 211 F.3d 602, 617 (D.C.Cir.2000). A defendant is not immune from disgorgement merely because he has spent or lost the proceeds of his fraudulent scheme. *See id.* Any profits that Seghers obtained by wrongdoing are ill-gotten gains whether he retained them or lost them in the Integral Funds or another investment.

We hold that the district court erred in finding that Seghers was not unjustly enriched merely because he lost money in the Integral Funds. Seghers contends that he did not profit from any fraudulent activity, and we make no conclusion as to whether he actually did profit from fraud. But if the district court finds that Seghers **\*337** did, in fact, profit from the securities fraud for which he is liable, any such profits may be subject to disgorgement. Seghers's profits, fees, and other compensation derived from wrongdoing, if any, are not diminished by how he chose to continue to invest these ill-gotten profits.

Because the district court based its decision not to order disgorgement on the erroneous conclusion that Seghers was not unjustly enriched because of his losses in the Integral Funds, we VACATE the district court's judgment denying disgorgement and REMAND for reconsideration by the district court. We do not hold that an order of disgorgement necessarily is required in this case, but only that the matter must be reconsidered by the district court. We repeat that the district court enjoys broad discretion to order and determine the amount of disgorgement.[FN18]

> FN18. For example, the district court may, in its discretion, take into account Seghers's ability to pay a disgorgement order. *See Sec. & Exch. Comm'n v. Huffman,* 996 F.2d 800, 803 (5th Cir.1993).

### VIII.

**\*\*15** For the foregoing reasons, the judgment against Seghers for violations of § 10(b) of the Exchange Act and Rule 10b–5, § 17(a) of the Securities Act, and §§ 206(1) and 206(2) of the Investment Advisers Act is AFFIRMED. The district court's ruling on Seghers's motion for judgment as a matter of law is AFFIRMED in part and VACATED in part. On remand, the district court will disregard its conclusion that Seghers was not liable before June 6, 2001. The district court's denial of disgorgement is VACATED. The case is REMANDED for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.

C.A.5 (Tex.),2008.
S.E.C. v. Seghers
298 Fed.Appx. 319, 2008 WL 4726248 (C.A.5 (Tex.)), Fed. Sec. L. Rep. P 94,889

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.