UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * * * * * | CIVIL ACTION |
| | | NO. 05-4182 |
| PERTAINS TO: MRGO *Armstrong*, No. 10-866 | | SECTION "K"(2) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' RESPONSE TO DEFENDANT USA OBJECTIONS TO CERTAIN TESTIMONY IN THE DEPOSITION DESIGNATIONS SUBMITTED BY THE PARTIES

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs in the above enumerated action, who, attach hereto the Plaintiffs' responses to Defendant, the United States, objections to certain testimony in the deposition designations submitted by the parties.

### I. Ethel Coats

a. p. 22: to the extent Ms. Coats links any of the debris she describes as causing damage to her home or other personal property, it is relevant testimony.

b. p. 26 (two objections): (response for both objections) this testimony is probative of the fact that she actually suffered property damage, as well as the scope of those damages (e.g., "Everything was destroyed in that home." (52:01)); ("Just to walk in my home to see everything just gone." (52:5-6)).

c. p. 27: (two objections): plaintiffs withdraw both designations on this page concerning her Mr. Coats' nerve pills.

1

d. p. 34: this testimony is probative of the fact that she actually suffered property damage, as well as the scope of those damages (e.g., "I had different things in my house.... I lost his flag. I lost his uniform because he was in the service. It was just a whole lost [sic] different things I had in that home I can't back." (131:12)). The testimony also goes to Ms. Coats' efforts to mitigate her damages (e.g. "I tried to look for them, but the water took them away." (131:11-12).

e. p. 34: this testimony is probative of the fact that she actually suffered property damage, as well as the scope of those damages (e.g., "If I could only just get his flag, his pictures, my mother's pictures, my father's pictures.... I can't get them back." (131:20-23))

f. p. 35: this testimony is probative of the fact that she actually suffered property damage, as well as the scope of those damages (e.g., "But my kids' pictures. Everything is gone. It's not like-if the water just would have taken some of the things of value to me".... [I]t just took everything from me.... I wish I could get [my husband's] pictures back....I had [my mother's] big pictures on the wall, my dad's pictures.... We married on our knees in that home...[t]he pillows that we kneeled on to get married...I had it, but it's gone.... Please forgive, but I lost a whole lot. The house is sticks." (132:18-133:18)).

## II. John Grieshaber

a. p. 5: Plaintiffs understand that the United States designated Mr. Greishaber for these specific topics. All of the deposition designations for Mr. Greishaber fall within these broad categories.

### III.    Lee Guillory

a. p. 56: Court has already admitted the underlying evidence concerning this objection; namely the testimony of WGI's 30(b)(6) witness, Stephen Roe, who testified to the exact same subject matter as is being asked of Mr. Guillory in this deposition excerpt. WGI also waived this objection with respect to Mr. Guillory as there was no privilege objection asserted during this specific line of questioning. Moreover, Mr. Guillory is merely being asked whether he knew of this testimony already in evidence.

### IV.    Jack Huerkamp

a. p. 15: ***Relevance:*** The testimony is relevant to show that Station 19 remained operational and generating power during the storms and sending power to Station 5. Mr. Villavasso's deposition testimony is ambiguous relative to time, and the post storm investigation of the pump performance provides an accurate assessment of the EBIA breach time.

Concerning the *hearsay* objection, Mr. Huerkamp is the Sewerage and Water Board's 30(b)(6) witness whose testimony recounts his post-event investigation, which is a Sewerage and Water Board business record. This business record is comprised of conversations with others concerning pump stations' operations, which is further substantiated by the pump station log books, which are also business records kept in the ordinary course and scope of the Sewerage and Water Board's business.

b. p. 16: ***Relevance***: The testimony is relevant to show that Station 19 remained operational and generating power during the storms and sending power to Station 5. Mr. Villavasso's deposition testimony is ambiguous relative to time, and the post storm investigation of the pump performance provides an accurate assessment of the EBIA breach time.

Concerning the *hearsay* objection, Mr. Huerkamp is the Sewerage and Water Board's 30(b)(6) witness whose testimony recounts his post-event investigation, which is a Sewerage and Water Board business record. And this business record is comprised of conversations with others concerning pump stations' operations, which is further substantiated by the pump station log books, which are also business records kept in the ordinary course and scope of the Sewerage and Water Board's business.

    c.    p. 19: *Relevance*: The testimony is relevant to show that Station 19 remained operational and generating power during the storms and sending power to Station 5. Mr. Villavasso's deposition testimony is ambiguous relative to time, and the post storm investigation of the pump performance provides an accurate assessment of the EBIA breach time.

Concerning the *hearsay* objection, Mr. Huerkamp is the Sewerage and Water Board's 30(b)(6) witness whose testimony recounts his post-event investigation, which is a Sewerage and Water Board business record. This business record is comprised of conversations with others concerning pump stations' operations, which is further substantiated by the pump station log books, which are also business records kept in the ordinary course and scope of the Sewerage and Water Board's business.

    d.    p. 21: *Relevance*: The testimony is relevant to show that Station 19 remained operational and generating power during the storms and sending power to Station 5. Mr. Villavasso's deposition testimony is ambiguous relative to time, and the post storm investigation of the pump performance provides an accurate assessment of the EBIA breach time.

Concerning the *hearsay* objection, Mr. Huerkamp is the Sewerage and Water Board's 30(b)(6) witness whose testimony recounts his post-event investigation, which is a Sewerage and

Water Board business record. This business record is comprised of conversations with others concerning pump stations' operations, which is further substantiated by the pump station log books, which are also business records kept in the ordinary course and scope of the Sewerage and Water Board's business.

                Respectfully Submitted,

                PLAINTIFFS' LIAISON COUNSEL

                s/Joseph M. Bruno
                Joseph M. Bruno (La. Bar No. 3604)
                Bruno & Bruno, L.L.P.
                855 Baronne Street
                New Orleans, Louisiana 70113
                Telephone: (504) 525-1335
                Facsimile: (504) 561-6776
                Email: jbruno@brunobrunolaw.com

                MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE

                /s/James Parkerson Roy
                MR-GO PSLC Liason Counsel
                Domengeaux Wright Roy & Edwards LLC
                P.O. Box 3668
                Lafayette, LA 70502
                Telephone: (337) 593-4190 or (337) 233-3033
                Facsimile: 337-233-2796
                Email: jimr@wrightroy.com

                for

                MR-GO PLAINTIFFS SUB GROUP LITIGATION COMMITTEE
                Jonathan Andry (The Andry Law Firm, New Orleans, LA)
                Clay Mitchell (Levin, Papantonio, et. al. Pensacola, FL)
                James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 14th day of September, 2012.

       /s/Joseph M. Bruno
       Joseph M. Bruno