UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES            CIVIL ACTION
CONSOLIDATED LITIGATION

                                                               NO. 05-4182

**PERTAINS TO:**                                      SECTION "K"(2)
       *Armstrong*, C.A. No. 10-866

### ORDER

At the conclusion of trial on October 3, 2012, the Court determined that it would issue an Order outlining matters to be undertaken post-trial. Accordingly,

**IT IS ORDERED** that:

**EXHIBITS**

1. The parties shall file **no later than October 27, 2012**, a table listing:

   a. Exhibits admitted at trial with no objection;

   b. Exhibits admitted at trial in "Category 1" which should be admitted without objection;

   c. Exhibits sought to be admitted at trial in Category 2 with each objection listed in one column, response in another column and a column provided in which the Court will rule on the objection.

2. To the extent that any of the exhibits to which objection is made may not be the exhibit so identified in the volumes of exhibits provided to the Court, the parties are responsible to make sure that the Court has in chambers those documents on which it is to rule.

3. No later than **7 working days** after the Court renders its decision as to Category 2 documents, the parties respective designated individual(s) shall confer with Sheena Demas to insure that the documents admitted are culled from those which are not admitted. The parties shall dispose of the documents not admitted at trial and shall sign an affidavit that the exhibit record as constituted after such meeting contains all admitted record exhibits. The parties shall contact Ms. Demas to set up an appropriate time within this framework to accomplish this task.

**BRIEFING SCHEDULE/PAGE LIMITATION**

4.  As discussed at the conclusion of the trial, the Court finds that simultaneous briefing is in order. The parties shall file its/their respective Post-Trial Brief that will be no longer that **120 pages in length** no later than **December 12, 2012.** Responses to such memoranda that will be no longer than **60 pages in length** shall be filed no later than **January 21, 2013.**

**PREFERRED FORM**

5.  In order to insure that each party's arguments are succinctly made and are easily ascertained by the Court, each Post-Trial Brief shall begin with a single listing of "bullet points" of the major arguments made by that party which can be in outline form. The remainder of the brief shall conform to that outline with the respective bullet point serving as a heading for each section of full briefing thereon.

**TOPICS TO BE INCLUDED**

6.  The Court envisions the following topics as informing these briefing "bullet points." These are not considered mandatory or required; however, the Court believes such an approach most helpful.

    a.  Immunity with Respect to the Corps
    b.  Negligence of WGI
    c.  Negligence of Corps
    d.  Causation
    e.  Damages

    In the briefing of these areas, be certain to pinpoint cite to the transcript and significant exhibits that support the point being made. Multiple citations is not necessary; the Court would prefer the optimum testimony and exhibits be cited. Remember that the Court will have read and summarized the entire transcript of the trial before the briefs are received. The major components of the discussion as to each of these topics should also follow the bullet point format discussed above.

**ISSUES TO BE DISCUSSED WITH RESPECT TO SUCH TOPICS**

   a.  **Immunity with Respect to the Corps**

       1.  With regard to Corps' immunity, incisive discussion as to what effect if any does the recent decision in Robinson has in this case should be included.

    b.    **Negligence of WGI**

        1.    With respect to negligence of WGI, the Court is interested in as to why WGI was or was not negligent if the Corps was aware of all activities and approved. In essence, if WGI complied with its contract in a good and workmanlike manner why is it negligent?

        2.    Why or why not was WGI obligated to provide geotechnical engineering if it was not requested to do so by the Corps?

    c.    **Negligence of the Corps**

        1.    With respect to negligence of the Corps, was there a protocol to have a geotechnical evaluation with respect to any excavation 250 to 300 feet from the floodwall? If so, was the Corps negligent in not following that protocol?

The above is simply illustrative and not exclusive.

    d.    **Causation**

The central issue presented as to causation is whether the excavations done at the EBIA were a substantial cause of the North and/or South breaches. To that end, the following consists of issues which the Court finds informative as to that issue:

    A.    **Overtopping**: explain clearly using exhibits and citations to the trial transcript why or why not overtopping was a substantial cause of the failure of each breach, including:

        1)    what evidence supports that a minimal difference in the height of the floodwall could or could not cause failure,

        2)    approximately what time did the breaches occur and what was the depth of the scour trench at the place of failure at the time of failure, and

        3)    state at what time on August 29, 2005, would the scour trench reach its maximum depth having been neutralized by the tailwater at the point of the floodwall immediately north of the failed section of the South Breach.

    B.    **Structural failure or improper design**:

       1)      why or why not was global or lateral instability a substantial cause of the North Breach considering the joining of the longer sheet pile to a shorter sheet pile, the distance of the soil on the land side of the levee from the top of the floodwall.

C. **Hydraulic conductivity and/or uplift pressures**:

       1)      why or why not was hydraulic conductivity and/or uplift pressure was or was not a substantial cause of each failure.

       2)      Discuss why or why not a steady state analysis is valid rather than a transient state analysis.

       3)      Discuss the differences between a drained and undrained condition and further why Dr. Bea's opinion that it would not make a significant difference in the failure analysis is right or wrong.

       4)      Discuss what specific excavations, if any, were used to determine that the excavations did or did not contribute to the failure of each breach.

       5)      Discuss whether any specific excavations were used in Dr. Bea's failure analyses or were the excavations were idealized. If so, how do the idealized excavations conform to the actual geometry of the area on the canal side of each breach.

       6)      Explain why or why not the use of incompressible soil skeleton in Dr. Bea's analysis was valid or not valid and explain why or why not the excavations were a factor of such compressibility

       7)      Explain why or why not pressures can be transmitted laterally through the soil skeleton virtually instantaneously and therefore affect the protected side of the flood wall in a very short time. In other words, why or why not would the soil skeleton act more like sandstone than clay or silt–i.e. like a porous rock?

       8)      Explain why the factors of safety analysis of Dr. Bea at the Near Breach site was correct or incorrect.

       9)      In general, explain why or why not the piezometer readings at the 17th Street Canal, etc., and the EBIA support or do not support Dr. Bea's testimony concerning hydraulic conductivity.

        10) Explain whether Dr. Silva's opinion that there can be no uplift pressure without flow is valid or invalid and does the speed that sound travels through water relate to a saturated soil skeleton which is incompressible. Note: the Court is aware the parties disagree as to whether the soil skeleton was compressible or incompressible, but this discussion would assume incompressibility.

        11) Detail which excavations penetrated into swamp/marsh/organic clay layer. (This can be done with a summary table and contain any explanation is required.)

    D. **General**

        1) Briefly explain pore pressure and how it relates to each party's expert's explanation of failure.

The Court expects all explanations, if given, to be to the point and not polemical or prolix and must be supported by exhibits and/or citation to trial transcript.

    e. **Damages**

7. This section should be relatively short and the Court would prefer a summary in table form with as brief an explanation as possible. The Court does expect an incisive discussion as to whether it should apply diminution in value or reconstruction or restoration if damages are found.

## SPECIFIC EXHIBITS TO INCLUDE IN BRIEFING

8. The Court has not had time to review all of the exhibits it would like specifically discussed, however, the Court points to a few:

    A. Dr. Marr's graph showing the time of scour.

    B. The aerial photograph of the scour trench which was in a slide presented by Dr. Silva.

    C. Dr. Bea's so called "smoking gun" exhibits which to the best of the Court's knowledge are JX-409 and 406 which are diagrams showing grid-trenching which allegedly fit over the unusual hole at the South breach and JX-507 and 506 which are also diagrams which allegedly show excavation which allegedly fit over a hole at the North Breach. (These holes appeared in photographs taken after Katrina.)

Again, the Court reiterates that other than the page limits and the dates briefing and responses are due, this minute entry sets forth suggestions and is not a mandate from the Court.

New Orleans, Louisiana, this 4th day of October, 2012.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**