1       UNITED STATES DISTRICT COURT

2      EASTERN DISTRICT OF LOUISIANA

3

4

5 IN RE: KATRINA CANAL BREACHES* CIVIL ACTION
  CONSOLIDATED LITIGATION  *
6            * NO. 05-4182
            *
7            * SECTION K(2)
  PERTAINS TO: MRGO    *
8  ARMSTRONG NO. 10-CV-866  * NEW ORLEANS, LOUISIANA
            *
9            * SEPTEMBER 13, 2012
  * * * * * * * * * * * * * * * *

10
      DAY TWO, AFTERNOON SESSION
11      BENCH TRIAL BEFORE THE
    HONORABLE STANWOOD R. DUVAL, JR.
12     UNITED STATES DISTRICT JUDGE

13
  <u>APPEARANCES</u>:
14
  FOR THE PLAINTIFFS:   BRUNO & BRUNO
15          BY: JOSEPH M. BRUNO, ESQ.
          855 BARONNE STREET
16          NEW ORLEANS, LOUISIANA 70113

17

18          THE ANDRY LAW FIRM
          BY: JONATHAN B. ANDRY, ESQ.
19          610 BARONNE ST.
          NEW ORLEANS, LOUISIANA 70113
20

21          BARON & BUDD
          BY: THOMAS SIMS, ESQ.
22          3102 OAK LAWN AVE.
          SUITE 1100
23          DALLAS, TEXAS 75219

24

25

1    APPEARANCES CONTINUED:

2    FOR THE PLAINTIFFS:              DEGRAVELLES, PALMINTIER,
                                        HOLTHAUS & FRUGE
3                                    BY: MICHAEL C. PALMINTIER, ESQ.
                                     BY:  JOSHUA M. PALMINTIER, ESQ.
4                                    618 MAIN STREET
                                     BATON ROUGE, LOUISIANA 70801
5

6
                                     DOMENGEAUX, WRIGHT, ROY & EDWARDS
7                                    BY: ELLWOOD C. STEVENS, JR., ESQ.
                                     BY: BONNIE KENDRICK, ESQ.
8                                    P. O. BOX 3668
                                     556 JEFFERSON ST.
9                                    LAFAYETTE, LOUISIANA 70502

10

11                                   THE DUDENHEFER LAW FIRM, LLC
                                     BY: FRANK DUDENHEFER, JR., ESQ.
12                                   601 POYDRAS ST.
                                     SUITE 2655
13                                   NEW ORLEANS, LOUISIANA 70130-6004

14

15                                   FAYARD & HONEYCUTT
                                     BY: CALVIN C. FAYARD, JR., ESQ.
16                                   519 FLORIDA AVE., S.W.
                                     DENHAM SPRINGS, LOUISIANA 70726
17

18
                                     JOANEN LAW FIRM
19                                   BY: SCOTT JOANEN, ESQ.
                                     4905 FRERET ST.
20                                   SUITE B
                                     NEW ORLEANS, LOUISIANA 70115
21

22
                                     LEVIN, PAPANTONIO, THOMAS,
23                                     MITCHELL, RAFFERTY & PROCTOR
                                     BY: MATTHEW D. SCHULTZ, ESQ.
24                                   316 S. BAYLEN ST.
                                     SUITE 600
25                                   PENSACOLA, FLORIDA 32502

1   APPEARANCES CONTINUED:

2   FOR THE PLAINTIFFS:              THE TRIAL LAW FIRM PC
                                     BY: ANDREW P. OWEN, ESQ.
3                                    800 WILTSHIRE BLVD.
                                     SUITE 500
4                                    LOS ANGELES, CALIFORNIA 90017

5

6                                    J. ROBERT WARREN, II, A PLC
                                     BY: J. ROBERT WARREN, II, ESQ.
7                                    1718 SHORT ST.
                                     NEW ORLEANS, LOUISIANA 70118

8

9
    FOR THE DEFENDANT WASHINGTON
10  GROUP INTERNATIONAL, INC.:       STONE PIGMAN WALTHER WITTMANN
                                     BY:  WILLIAM D. TREEBY, ESQ.
11                                   BY:  JAMES C. GULOTTA, JR., ESQ.
                                     BY:  HEATHER S. LONIAN, ESQ
12                                   BY:  MAGGIE A. BROUSSARD, ESQ.
                                     546 CARONDELET STREET
13                                   NEW ORLEANS, LOUISIANA 70130

14

15

16

17

18

19

20

21

22

23

24

25

1    APPEARANCES CONTINUED:

2    FOR THE DEFENDANT WASHINGTON
     GROUP INTERNATIONAL, INC.:        JONES DAY
3                                      BY:  ADRIAN WAGER-ZITO, ESQ.
                                       BY:  DEBRA S. CLAYMAN, ESQ.
4                                      BY:  CHRISTOPHER N. THATCH, ESQ.
                                       BY:  CHRISTOPHER R. FARRELL, ESQ.
5                                      BY:  JULIA CRONIN, ESQ.
                                       BY:  BRIAN KERWIN, ESQ.
6                                      51 LOUISIANA AVENUE, N.W.
                                       WASHINGTON, D.C. 20001
7

8

9    FOR THE DEFENDANT UNITED
     STATES OF AMERICA:                U.S. DEPARTMENT OF JUSTICE
10                                     CIVIL DIVISION, TORTS BRANCH
                                       BY:  ROBIN D. SMITH, ESQ.
11                                     BY:  JAMES F. MCCONNON, JR., ESQ.
                                       BY:  RUPERT MITSCH, ESQ.
12                                     BY:  CONOR KELLS, ESQ.
                                       BY:  JOHN A. WOODCOCK, ESQ.
13                                     BENJAMIN FRANKLIN STATION
                                       P.O. BOX 888
14                                     WASHINGTON, D.C. 20044

15

16
     OFFICIAL COURT REPORTER:          JODI SIMCOX, RMR, FCRR
17                                     500 POYDRAS STREET
                                       ROOM HB-406
18                                     NEW ORLEANS, LOUISIANA 70130
                                       (504) 589-7780
19                                     JODI_SIMCOX@LAED.USCOURTS.GOV

20

21   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

22   PRODUCED BY COMPUTER.

23

24

25

1                          I N D E X

2                                                    PAGE

3

MELVIN MILLARD LOUIS MCELWEE, SR.
4       DIRECT EXAMINATION BY MR. JOANEN:          376
        CROSS-EXAMINATION BY MR. TREEBY:           401
5       CROSS-EXAMINATION BY MR. SMITH:            419
        REDIRECT EXAMINATION BY MR. JOANEN:        433
6
STEVAN GEORGE SPENCER
7       DIRECT EXAMINATION BY MR. JOANEN:          438
        CROSS-EXAMINATION BY MR. TREEBY:           476
8       REDIRECT EXAMINATION BY MR. JOANEN:        482

9  CLIFFORD A. WASHINGTON, SR.
        DIRECT EXAMINATION BY MS. PURCHNER:        491
10      CROSS-EXAMINATION BY MS. LONIAN:           493
        CROSS-EXAMINATION BY MR. MCCONNON:         500
11
JEANNINE ARMSTRONG
12      DIRECT EXAMINATION BY MR. ANDRY:           513
        CROSS-EXAMINATION BY MR. TREEBY:           532

13

14

12:39:27  15

12:40:06  16                AFTERNOON SESSION

12:40:06  17              (SEPTEMBER 13, 2012)

12:40:59  18                 *  *  *  *  *

12:41:27  19        THE DEPUTY CLERK:  ALL RISE.

13:02:35  20            COURT'S IN SESSION.  PLEASE BE SEATED.

13:02:36  21        THE COURT:  YES, SIR.

13:02:38  22        MR. JOANEN:  GOOD AFTERNOON, YOUR HONOR.

13:02:39  23            WE'D LIKE TO CALL MELVIN MCELWEE TO THE STAND,

13:02:41  24  PLEASE.

13:02:41  25        THE COURT:  OF COURSE, THE COURT NOTES THAT HE IS

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:02:42   1   CALLED SUBJECT TO THE MOTION IN LIMINE THAT WAS FILED AND ALL

13:02:47   2   OBJECTIONS THEREIN ARE PRESERVED.

13:02:48   3             (WHEREUPON, **MELVIN MILLARD LOUIS MCELWEE, SR.**, HAVING

13:02:48   4   BEEN DULY SWORN, TESTIFIED AS FOLLOWS.)

13:02:49   5             **THE DEPUTY CLERK:**  PLEASE STATE YOUR FULL NAME AND

13:02:49   6   CORRECT SPELLING FOR THE RECORD.

13:03:18   7             **THE WITNESS:**  MELVIN MILLARD LOUIS MCELWEE, SR.

13:03:23   8                  M-E-L-V-I-N, M-I-L-L-A-R-D, L-O-U-I-S,

13:03:35   9   M-C-E-L-W-E-E, SR.

13:03:38  10             **MR. JOANEN:**  AND, YOUR HONOR, CONSISTENT WITH WHAT

13:03:45  11   WE'VE DONE IN THE PAST, WE'RE CALLING MR. MCELWEE TO GIVE THE

13:03:47  12   COURT AN UNDERSTANDING OF A FIRST-PERSON EXPERIENCE OF DOING

13:03:51  13   GENERAL CONTRACTING WORK IN THE SOUTHEASTERN LOUISIANA AREA.

13:03:54  14             **THE COURT:**  THANK YOU, SIR.

13:03:54  15                      **DIRECT EXAMINATION**

13:03:55  16   BY MR. JOANEN:

13:03:56  17   **Q.**   WELL, YOU STATED YOUR NAME FOR THE RECORD, MR. MCELWEE.

13:03:58  18             COULD YOU GIVE THE COURT YOUR BACKGROUND, STARTING

13:04:02  19   WITH YOUR EDUCATION?  WHERE DID YOU GO TO HIGH SCHOOL?

13:04:04  20   **A.**   I'M A 1983 GRADUATE OF BONNABEL HIGH SCHOOL IN METAIRIE,

13:04:08  21   LOUISIANA.

13:04:09  22             I WENT TO THE AIR FORCE, STATIONED AT BARKSDALE AIR

13:04:10  23   FORCE BASE IN SHREVEPORT, LOUISIANA, WHERE I DID AN ACTIVE DUTY

13:04:13  24   TOUR OF FOUR YEARS.  I CAME OUT AND STARTED WORKING FOR THE

13:04:17  25   CORPS OF ENGINEERS.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:04:18   1        WHILE I WAS IN THE AIR FORCE, I ALSO TOOK COLLEGE

13:04:21   2   COURSES AT LOUISIANA TECH, TRANSFERRED TO UNO, WHERE I -- I

13:04:25   3   DIDN'T COMPLETE MY DEGREE, BUT I HAVE SENIOR STATUS WITH 15

13:04:29   4   HOURS LEFT.

13:04:30   5        I WORKED FOR THE CORPS OF ENGINEERS FOR FIVE YEARS.

13:04:33   6   I LEFT THE CORPS OF ENGINEERS AND STARTED MY OWN FIRM, MCELWEE

13:04:36   7   BROTHERS, INCORPORATED, NAMED AFTER MY SONS, WHERE I DID U.S.

13:04:40   8   NAVY WORK, CORPS OF ENGINEERS WORK, LOUISIANA DEPARTMENT OF

13:04:44   9   TRANSPORTATION AND DEVELOPMENT WORK.

13:04:46  10        I'M A LICENSED HIGHWAY, ROADS AND BRIDGE CONTRACTOR

13:04:50  11   AND ALSO BUILDING CONSTRUCTION, AND CURRENTLY SIT AS A SUBJECT

13:04:54  12   MATTER EXPERT FOR THE MUNICIPAL EXAM AND WILL BE QUALIFIED IN

13:04:57  13   THAT SHORTLY.

13:05:00  14   Q.   LET ME DRAW YOUR ATTENTION BACK TO YOUR TIME WITH THE

13:05:03  15   CORPS OF ENGINEERS.

13:05:03  16        WHAT YEAR DID YOU START WORKING WITH THE CORPS OF

13:05:05  17   ENGINEERS?

13:05:06  18   A.   I STARTED WORKING FOR THE CORPS OF ENGINEERS IN 1988,

13:05:09  19   WORKED FIVE YEARS.

13:05:10  20   Q.   IN WHAT DIVISION WITH THE CORPS OF ENGINEERS?  WERE YOU

13:05:13  21   LOCAL HERE IN THE NEW ORLEANS DISTRICT?

13:05:14  22   A.   I WAS IN THE NEW ORLEANS DISTRICT OFF OF LEAKE AVENUE,

13:05:17  23   WORKING IN THE CONSTRUCTION DIVISION AS A QUALITY ASSURANCE

13:05:22  24   REPRESENTATIVE.

13:05:22  25   Q.   AND COULD YOU EXPLAIN TO THE COURT WHAT A QUALITY

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT

13:05:24   1   ASSURANCE REPRESENTATIVE IS AND WHAT YOUR RESPONSIBILITIES

13:05:26   2   WERE?

13:05:26   3   **A.**   A QUALITY ASSURANCE REPRESENTATIVE MONITORED THE

13:05:30   4   CONSTRUCTION PROJECTS OF CONTRACTORS IN THE AREA TO ASSURE THAT

13:05:33   5   THE GOVERNMENT WAS GETTING QUALITY WORK ON TIME AND WITHIN THE

13:05:38   6   CONSTRUCTION BUDGET, TO LOOK AT ALL THE TECHNICAL FEATURES

13:05:45   7   GOING TOGETHER AS FAR AS CONCRETE, SOILS, AND THE LIKE.

13:05:50   8            **MR. JOANEN:**  YOUR HONOR, CONSISTENT WITH THAT, I'D

13:05:51   9   LIKE TO JUST OFFER, FILE AND INTRODUCE INTO THE RECORD TWO OF

13:05:54   10  MR. MCELWEE'S EXHIBITS.  THEY'RE -- ONE IS -- THEY BOTH SEEM TO

13:05:59   11  BE RÉSUMÉS.  ONE IS DX-02698, THE OTHER WOULD BE DX-02699.

13:06:08   12            **THE COURT:**  ANY OBJECTIONS, SUBJECT TO THE OBJECTION

13:06:10   13  YOU INITIALLY LODGED TO THE RÉSUMÉS?

13:06:22   14                 NO OBJECTION?  LET THEM BE ADMITTED.

13:06:26   15            **MS. LONIAN:**  WELL, DO WE --

13:06:26   16            **THE COURT:**  OH, I'M SORRY.

13:06:26   17            **MS. LONIAN:**  DO WE -- I DON'T BELIEVE WE -- DO WE

13:06:27   18  HAVE COPIES OF THE EXHIBITS THAT YOU'RE USING?

13:06:32   19            **THE COURT:**  OH, NO, IF YOU HAVEN'T SEEN THEM.

13:06:35   20            **MR. JOANEN:**  YOUR HONOR, THEY'RE DX NUMBERS.  THAT'S

13:06:38   21  WHY --

13:06:39   22            **MS. WAGER-ZITO:**  WE DIDN'T KNOW THAT.  CAN YOU GIVE

13:06:41   23  US THE NUMBERS NOW, SCOTT?

13:06:45   24            **THE COURT:**  OKAY.  LET'S . . .

13:06:50   25                 THAT DOESN'T MEAN THEY'RE ALL MEMORIZED.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:07:03   1        **MR. JOANEN:**  I'M SORRY?

13:07:03   2        **THE COURT:**  YOU KNOW, YOU MUST . . .

13:07:03   3        **MR. JOANEN:**  YOUR HONOR, THEY'RE JUST HIS RÉSUMÉS

13:07:06   4   THAT WERE ATTACHED TO HIS DEPOSITION.

13:07:07   5        **THE COURT:**  I UNDERSTAND, BUT THEY HAVE A RIGHT TO

13:07:07   6   LOOK AT THEM.  THAT DOESN'T MEAN JUST BECAUSE THEY ARE

13:07:12   7   DEFENDANTS' EXHIBITS THAT THEY HAVE COMMITTED ALL -- ALL THE

13:07:15   8   THOUSANDS OF EXHIBITS TO MEMORY.  SO JUST AS A COURTESY.

13:07:16   9        **MR. SMITH:**  NO OBJECTION, YOUR HONOR.

13:07:20  10        **THE COURT:**  THANK YOU, MR. SMITH.

13:07:19  11        **MR. TREEBY:**  NO OBJECTION.

13:07:20  12        **THE COURT:**  THANK YOU, MR. TREEBY.

13:07:21  13             LET THEM BE ADMITTED.

13:07:23  14   **BY MR. JOANEN:**

13:07:23  15   **Q.**  MR. MCELWEE, WHEN YOU WERE WITH THE CORPS OF ENGINEERS,

13:07:24  16   DID YOU RECEIVE ANY SPECIALIZED TRAINING?

13:07:26  17   **A.**  YES, SIR.

13:07:26  18   **Q.**  WHAT TYPE OF TRAINING DID YOU RECEIVE IN ORDER TO BECOME A

13:07:31  19   BETTER QUALITY ASSURANCE REPRESENTATIVE?

13:07:33  20   **A.**  I'VE HAD QUALITY CONTROL VERIFICATION COURSES, SUCH AS

13:07:38  21   SOIL -- SOILS, CONCRETE, PIPING SYSTEMS, WELDING.

13:07:48  22   **Q.**  AND WHAT WAS PURPOSE FOR YOU HAVING TO UNDERGO THAT

13:07:51  23   TRAINING?  WAS THAT SOMETHING YOU ELECTED YOURSELF OR WAS THAT

13:07:54  24   SOMETHING THAT THE CORPS OF ENGINEERS IN THE NEW ORLEANS

13:07:55  25   DISTRICT ASKED YOU TO UNDERTAKE?

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT

13:07:56  1  **A.**   IT WAS A CORPS OF ENGINEERS REQUIREMENT FOR ALL OF THEIR

13:07:59  2  EMPLOYEES, ENGINEERS, AND QUALITY ASSURANCE REP AND

13:08:02  3  CONSTRUCTION PERSONNEL.

13:08:05  4  **Q.**   CONSISTENT WITH THAT, WHAT TYPE OF KNOWLEDGE DID YOU

13:08:08  5  OBTAIN RELATIVE TO THE GEOTECHNICAL CONSIDERATIONS IN THE LOCAL

13:08:15  6  NEW ORLEANS AREA IN ORDER TO FURTHER YOUR POSITION AS A QUALITY

13:08:20  7  ASSURANCE REPRESENTATIVE?

13:08:20  8  **A.**   THE KNOWLEDGE OBTAINED WAS SOIL BORINGS, SOIL

13:08:23  9  CLASSIFICATION, SOIL ANALYSIS, CONCRETE TESTING, SOIL

13:08:29 10  STABILIZATION, PILES, SUBSURFACE EXPLORATION, AND THE LIKE.

13:08:35 11  **Q.**   AS IT RELATES TO SUBSURFACE EXPLORATION, WHAT TYPE OF

13:08:40 12  FACTORS WOULD YOU RUN INTO WHILE PROJECTS WERE GOING ON THAT

13:08:44 13  INVOLVED SUBSURFACE EXPLORATION?

13:08:48 14  **A.**   WHAT TYPE OF FACTORS?

13:08:49 15  **Q.**   YES, SIR.

13:08:50 16      WHAT DID YOU HAVE TO LOOK FOR WHEN YOU WERE A QUALITY

13:08:51 17  ASSURANCE REPRESENTATIVE?

13:08:53 18  **A.**   AS A QUALITY ASSURANCE REPRESENTATIVE, WE HAD TO KNOW THE

13:08:56 19  CONTRACT DOCUMENTS.  WE HAD TO KNOW SOIL BORINGS, SO WE'D KNOW

13:09:00 20  WHAT THE CONTRACTOR AT THAT TIME WHAT SHOULD HAVE BEEN --

13:09:01 21  SHOULD HAVE HAD KNOWLEDGE OF IN THE PERFORMANCE OF HIS WORK.

13:09:07 22      IN THE SOIL CLASSIFICATION SYSTEM, IT TALKS ABOUT THE

13:09:10 23  DIFFERENT TYPES OF SOILS:  HUMUS SOIL, SAND, CLAY, ROCK ITSELF.

13:09:15 24      WE ALSO TOOK GEOTECHNICAL COURSES IN GEOLOGY TO

13:09:22 25  DETERMINE WATER TABLE LEVELS AND DEPTHS OF SOILS IN THE

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT

13:09:26    1    PERFORMANCE OF CONSTRUCTION.

13:09:26    2    **Q.**   WHAT'S THE SIGNIFICANCE OF KNOWING WHAT THE WATER TABLE

13:09:29    3    LEVEL WAS?

13:09:31    4             **MR. TREEBY:**  YOUR HONOR, PLEASE.  IT SOUNDS TO ME

13:09:32    5    LIKE WE'RE ASKING OPINION ALREADY, AND THIS WITNESS HAS BEEN

13:09:35    6    DISQUALIFIED -- OR YOU ORDERED THAT HE'S NOT GOING TO TESTIFY

13:09:38    7    AS TO OPINIONS.

13:09:41    8             **MR. JOANEN:**  I'M JUST ASKING ABOUT HIS PERSONAL

13:09:42    9    EXPERIENCE, YOUR HONOR, THAT WOULD LEAD TO HIS THEN-PERSONAL

13:09:47   10    EXPERIENCE WHILE OPERATING A CONSTRUCTION PROJECT NOT FAR FROM

13:09:50   11    THE EBIA PROJECT.  AND IT HAS NOTHING TO DO WITH THE EBIA

13:09:53   12    PROJECT; BUT, AS I SAID ORIGINALLY, HE WOULD GIVE FIRSTHAND

13:09:57   13    EXPERIENCE OF WHAT A GENERAL CONTRACTOR IN THIS AREA WOULD

13:10:01   14    EXPERIENCE AND, BASICALLY, SHOULD KNOW.

13:10:02   15             **MR. TREEBY:**  YOUR HONOR, IT'S IRRELEVANT.

13:10:03   16             **THE COURT:**  ALL RIGHT.  THE COURT'S RULED ON THE

13:10:05   17    RELEVANCE.  THE COURT NEEDS TO HEAR ALL OF THE TESTIMONY FROM

13:10:08   18    THE EXPERTS AND EVERYONE ELSE TO TRULY DETERMINE WHETHER IT'S

13:10:11   19    RELEVANT OR NOT, BECAUSE THERE IS SOME INTIMATION THAT THE

13:10:15   20    EXPERTS, TO SOME EXTENT, RELIED ON THIS WITNESS.

13:10:18   21             I'LL HAVE TO LET THE WHOLE THING PLAY OUT.  YOUR

13:10:21   22    OBJECTION IS NOTED AND HE MAY CONTINUE.

13:10:24   23             **MR. SMITH:**  THANK YOU, YOUR HONOR.

13:10:24   24             **THE WITNESS:**  SIR, WOULD YOU REPEAT THE QUESTION?

13:10:24   25             **MR. JOANEN:**  CAN WE HAVE IT READ BACK, PLEASE?

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:10:24   1          (WHEREUPON, THE REQUESTED PORTION OF THE RECORD WAS

13:10:24   2   READ BY THE COURT REPORTER.)

13:10:40   3          **THE WITNESS:**  WHAT IS THE SIGNIFICANCE?

13:10:41   4              IN THE PERFORMANCE OF CONSTRUCTION IN SOUTH

13:10:42   5   LOUISIANA, BECAUSE THE WATER TABLE IS SO SHALLOW, MANY OF THE

13:10:48   6   DEEP EXCAVATION SYSTEMS DEALING WITH FLOODWALLS, CONSTRUCTING

13:10:53   7   SLABS, ALSO DRIVING PILES AND DOING EXCAVATION, THE

13:10:57   8   SIGNIFICANCE OF THE TABLE IS TO DETERMINE WHAT TYPE OF SYSTEM

13:11:00   9   WOULD YOU PUT IN PLACE TO DO YOUR DEWATERING AND KEEP THE SOIL

13:11:04   10  STABLE WHILE THE WORK IS BEING PERFORMED.

13:11:07   11             IT'S VERY SIGNIFICANT IN THIS PART OF THE

13:11:10   12  COUNTRY.

13:11:10   13  **BY MR. JOANEN:**

13:11:10   14  **Q.**   AND YOU MENTIONED THAT THAT HAS SOME SIGNIFICANCE AS IT

13:11:14   15  RELATES TO A FLOODWALL.  WHY WOULD THAT BE?

13:11:16   16         **MR. TREEBY:**  YOUR HONOR, PLEASE.

13:11:17   17         **MR. SMITH:**  EXCUSE ME, YOUR HONOR.

13:11:17   18         **THE COURT:**  I'M SORRY.  I WAS READING SOMETHING AND I

13:11:20   19  DID NOT GET THE QUESTION.  LET ME --

13:11:21   20         **MR. TREEBY:**  THE WITNESS ANSWERED -- IS TALKING ABOUT

13:11:24   21  SOMETHING BEING SIGNIFICANT, IS WHY SOMETHING IS SIGNIFICANT.

13:11:26   22  THAT'S AN OPINION.  THAT'S AN EXPERT OPINION.

13:11:29   23             THIS MAN HAS NOT BEEN QUALIFIED AS AN EXPERT, WE

13:11:33   24  DIDN'T GET AN EXPERT REPORT, AND HE SHOULDN'T BE ALLOWED TO

13:11:36   25  OFFER EXPERT OPINION.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:11:39  1        **MR. SMITH:**  HIS TESTIMONY, YOUR HONOR -- THE

13:11:41  2   QUESTIONS AND HIS ANSWERS ARE NOT TIED TO ANY PARTICULAR

13:11:44  3   EXPERIENCE.  HE'S BEING ASKED TO STATE GENERAL OPINIONS ABOUT

13:11:47  4   CONDITIONS THAT EXIST IN THIS AREA.

13:11:51  5        **THE COURT:**  YOU MIGHT WANT TO TALK ABOUT THE PROJECT

13:11:53  6   THAT HE WAS -- TENDED TO DO AND HIS FIRSTHAND EXPERIENCE WITH

13:11:57  7   THOSE.  TO THE EXTENT THAT THAT IS RELEVANT, THE COURT HAS YET

13:11:59  8   TO DETERMINE.

13:12:00  9        **MR. JOANEN:**  I UNDERSTAND, YOUR HONOR.  AND I THOUGHT

13:12:02  10  I WAS TYING THAT TO HIS EXPERIENCE WITH THE CORPS OF ENGINEERS

13:12:05  11  AS A QUALITY ASSURANCE REPRESENTATIVE, WHICH THEN HE CARRIED

13:12:07  12  OVER TO HIS OWN PERSONAL EXPERIENCE WITH THE PROJECT.

13:12:10  13        I'M ULTIMATELY --

13:12:11  14        **THE COURT:**  TELL ME WHY THIS -- YOU UNDERSTAND THAT

13:12:14  15  IF IT INVOLVES TECHNICAL, SCIENTIFIC, OR SIMILAR INFORMATION

13:12:17  16  THAT, UNDER THE AMENDMENTS TO THE FEDERAL RULES OF EVIDENCE

13:12:20  17  SEVERAL YEARS AGO, A LAY WITNESS CANNOT PUT ON THE CLOTHING OF

13:12:26  18  AN EXPERT WITNESS WITHOUT HAVING RENDERED A REPORT.

13:12:31  19        SO I GUESS THE OBJECTION IS -- TO RESPOND TO THE

13:12:34  20  OBJECTION, WHY ISN'T THIS OPINION TESTIMONY THAT WOULD BE

13:12:38  21  SCIENTIFIC, TECHNICAL, OR SPECIALIZED?

13:12:43  22        **MR. JOANEN:**  I GUESS I UNDERSTAND THE OBJECTION,

13:12:44  23  YOUR HONOR, IF WE WERE SAYING THAT UNDERSTANDING THAT WHEN

13:12:47  24  YOU'RE DIGGING IN THE GROUND IN THE NEW ORLEANS REGION, YOU'RE

13:12:50  25  GOING TO HIT THE WATER TABLE, IT TAKES AN EXPERT TO KNOW THAT.

                    MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:12:53    1   I COULD UNDERSTAND THE POSITION.

13:12:54    2            THE COURT:  WELL, IF THAT'S YOUR QUESTION, YOU CAN

13:12:56    3   SAY, "DO YOU KNOW THE WATER TABLE AT A CERTAIN POINT," BECAUSE

13:13:02    4   IF YOU'VE SEEN IT AND EXPERIENCED IT, YES.

13:13:05    5                 I'M NOT SURE THAT'S HOW THE QUESTION WAS

13:13:07    6   PHRASED.

13:13:08    7            MR. JOANEN:  IT MAY NOT HAVE BEEN.  IF YOU DIDN'T

13:13:09    8   HEAR IT LIKE THAT, I OBVIOUSLY DIDN'T AND I WITHDRAW IT.

13:13:11    9            THE COURT:  WELL, I DIDN'T HEAR IT ALL, TO BE FRANK

13:13:13   10   WITH YOU.  I WAS -- I WAS READING SOMETHING.

13:13:15   11            MR. SMITH:  YOUR HONOR, I WOULD SAY THAT AN OPINION

13:13:17   12   IS AN OPINION, EVEN IF IT'S JUST BASED ON HIS EXPERIENCE.

13:13:21   13            THE COURT:  WELL, NO.  IF HE SAID, "I DUG HERE AND IT

13:13:24   14   WAS SEVEN FEET," THAT'S -- THAT'S FACT TESTIMONY.

13:13:26   15            MR. SMITH:  RIGHT.  EXACTLY.

13:13:28   16            THE COURT:  THAT HE, AS A LAY WITNESS, CAN GIVE.  I

13:13:29   17   DIDN'T HEAR WHAT THE QUESTION WAS.

13:13:29   18            MR. TREEBY:  HE WAS -- HE WAS TALKING ABOUT HOW

13:13:30   19   SIGNIFICANT -- HOW SIGNIFICANT IT WAS TO KNOW WHERE THE WATER

13:13:33   20   TABLE IN SOUTH LOUISIANA IS.  IT'S VERY SIGNIFICANT BECAUSE OF

13:13:37   21   X, Y, AND Z.  THAT'S OPINION TESTIMONY.

13:13:40   22            MR. JOANEN:  IT'S GENERALLY AS A FIRST-PERSON

13:13:42   23   EXPERIENCE AS A CONTRACTOR.  WHEN YOU'RE A CONTRACTOR, AS HE'S

13:13:46   24   GOING TO TESTIFY TO, THESE ARE THE THINGS THAT I KNOW I'M GOING

13:13:48   25   TO RUN INTO.  THERE'S A WATER TABLE WHEN I DIG DOWN A

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT

13:13:51   1   CERTAIN --

13:13:51   2           **THE COURT:**  WELL, I KNEW -- I COULD TELL THAT WE WERE

13:13:53   3   GOING TO HAVE THIS ISSUE.  IT DOESN'T COME AS A SURPRISE TO ME,

13:13:56   4   AND THAT'S WHY I TRIED TO MAKE IT CLEAR, SO THAT THE QUESTIONS

13:13:59   5   WOULD BE HONED NOT TO VIOLATE RULE 701 OR 702, AND SOMETIMES

13:14:05   6   THEY GET -- IT'S VERY CLOSE.

13:14:08   7           SO THE QUESTION IS:  DOES IT REQUIRE SPECIALIZED

13:14:11   8   KNOWLEDGE TO KNOW WHAT THE SIGNIFICANCE OF A WATER TABLE IS?

13:14:17   9           INTUITIVELY, THE COURT UNDERSTANDS, AT BOTTOM,

13:14:21  10   THIS CASE IS ABOUT EXCAVATIONS, SEEPAGE, AND UPLIFTING, AND THE

13:14:28  11   CONDITIONS OF THE SOILS AND THE SUBSTRATA SOILS, AND THE

13:14:32  12   ABILITY OF THE -- OF THE HYDRAULIC MATTER OR SOIL MATTER TO BE

13:14:39  13   PUSHED FROM ONE SIDE TO THE OTHER.

13:14:41  14           I UNDERSTAND THAT'S THE BASIC CASE, AND I'M SURE

13:14:44  15   WE'RE GOING TO HEAR PLENTY, PLENTY, HOPEFULLY, TESTIMONY ABOUT

13:14:49  16   WHERE THE WATER TABLE IS.  I'VE READ SOME ALREADY IN THE

13:14:51  17   DEPOSITIONS.

13:14:54  18           SO -- AND I UNDERSTAND THAT THE DEFENSE IS GOING

13:14:59  19   TO BE VERY CAREFUL IN TRYING TO HAVE ME ENFORCE RULE 701 AND

13:15:06  20   702, WHEN IT BORDERS ON OPINION.

13:15:11  21           WHY DON'T YOU RESTATE THE QUESTION FOR ME SINCE

13:15:13  22   I REALLY DIDN'T HEAR IT.

13:15:14  23           **MR. JOANEN:**  I CAN SOLVE THE PROBLEM, YOUR HONOR.  I

13:15:16  24   CAN MOVE, AS THEY ASKED FOR, TO THE PROJECT ITSELF, AND IT'S

13:15:18  25   GOING TO INCORPORATE A LOT OF HIS OBSERVATIONS.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:15:21   1        **THE COURT:**  THAT'S WHAT I WAS TRYING TO PROMPT YOU TO

13:15:22   2   DO.

13:15:23   3        **MR. JOANEN:**  WELL STATED.  THANK YOU.

13:15:25   4   BY MR. JOANEN:

13:15:26   5   **Q.**   MR. MCELWEE, YOU WERE RETAINED BY THE CORPS OF ENGINEERS

13:15:28   6   TO PERFORM AN EXCAVATION PROJECT IN THE DWYER ROAD AREA IN THE

13:15:35   7   EARLY 2000S; CORRECT?

13:15:37   8   **A.**   THAT IS CORRECT.  A COMPETITIVE BID, YES.

13:15:39   9   **Q.**   AND HOW DID YOU FIRST GET THAT CONTRACT?  WAS THAT AN

13:15:42  10   ADVERTISED-TYPE CONTRACT?

13:15:44  11   **A.**   IT'S AN ADVERTISED CONTRACT.

13:15:46  12   **Q.**   AND WOULD YOU REFER TO THAT AS A FIXED/FIRM PRICE

13:15:50  13   CONTRACT?

13:15:50  14   **A.**   THAT WAS A FIXED/FIRM -- FIXED/FIRM PRICE CONTRACT.

13:15:53  15   **Q.**   AND CAN YOU COMPLAIN TO THE COURT HOW YOU CAME ABOUT TO

13:15:56  16   SECURING THAT CONTRACT?

13:15:58  17   **A.**   THE CORPS OF ENGINEERS ADVERTISES CONTRACTS OUT FOR BID

13:16:02  18   AND ASKS CONTRACTORS TO PLACE THEIR BIDS AND THEY HAVE TO MEET

13:16:06  19   CERTAIN QUALIFICATIONS.

13:16:07  20        THIS PARTICULAR CONTRACT WAS WHAT'S CALLED AN 8(A)

13:16:10  21   CONTRACT.  AND THEN IN THE 8(A) PROGRAM WITH THE SMALL BUSINESS

13:16:12  22   ADMINISTRATION, IT ALLOWS A SMALL CONTRACTOR THAT IS NOT AS

13:16:16  23   COMPETITIVE AS THE LARGER CONTRACTORS TO PLACE AD BY, PUT IT

13:16:20  24   TOGETHER, OBTAIN BONDING ASSISTANCE, INSURANCING AND OTHER

13:16:26  25   EXPERTISE WITH THE AID OF THE U.S. SMALL BUSINESS

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:16:28   1   ADMINISTRATION TO PERFORM THE WORK.

13:16:30   2           THEN DURING THAT CONTRACT, YOU'RE EVALUATED, BECAUSE

13:16:34   3   YOU'RE NOT AS BIG AS THE OTHER CONTRACTORS, BY THE DEFENSE

13:16:38   4   LOGISTICS AGENCY AND THE DEFENSE CONTRACT AUDITING AGENCY TO

13:16:44   5   SEE IF YOU HAVE THE CAPABILITIES TO PERFORM THAT CONTRACT.

13:16:48   6           IT WAS DETERMINED THAT MCELWEE BROTHERS HAD THE

13:16:50   7   CAPABILITIES BECAUSE OF MY EXPERIENCE WITH THE CORPS OF

13:16:51   8   ENGINEERS AND BEING FROM ME WITH DOING SOME WORK IN THIS AREA

13:16:54   9   AS A CONTRACTOR.  SO I DIDN'T JUST WALK UP ON THE SCENE AND

13:16:56   10  SAY, "GIVE ME THAT JOB."

13:16:58   11  **Q.**   WERE THERE PLANS AND SPECIFICATIONS PROVIDED TO YOU TO

13:17:02   12  DETERMINE WHAT TYPE OF BID YOU SHOULD PUT IN?

13:17:04   13  **A.**   YES.  ON ALL FIRM/FIXED PRICE CONTRACTS, THE CORPS OF

13:17:12   14  ENGINEERS PREPARES THE DOCUMENTS FOR BID.  AND THE CONTRACTOR

13:17:16   15  LOOKS AT THOSE DOCUMENTS AND PREPARES HIS PRICE BASED ON THOSE

13:17:20   16  DOCUMENTS AND HIS OBSERVANCE OF THE SITE.

13:17:24   17  **Q.**   AND WERE THOSE PLANS AND SPECIFICATIONS WHAT YOU

13:17:29   18  DETERMINED TO BE THE SCOPE OF THE WORK THAT YOU WERE SUPPOSED

13:17:31   19  TO PERFORM?

13:17:32   20  **A.**   THEY DEFINE THE EXACT SCOPE OF WORK.

13:17:34   21  **Q.**   ARE YOU FAMILIAR WITH THE TERM AN *INDEFINITE -- DELIVERY*

13:17:39   22  *INDEFINITE QUALITY CONTRACT*?

13:17:40   23  **A.**   YES, SIR.

13:17:41   24  **Q.**   HAVE YOU HEARD THAT BEFORE?

13:17:41   25          HAVE YOU HEARD THAT BEFORE?  I'M SORRY.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:17:42   1    **A.**   YES, SIR, I HAVE.

13:17:44   2    **Q.**   THE TERM IDIQ CONTRACT HAS BEEN USED.  HAVE YOU HEARD THAT

13:17:50   3    TERM BEFORE?

13:17:50   4    **A.**   I'VE HEARD THAT TERM BEFORE.

13:17:51   5    **Q.**   YOUR UNDERSTANDING OF WHAT THAT TYPE OF CONTRACT IS, IS

13:17:53   6    THAT DIFFERENT THAN THE TYPE OF CONTRACT THAT YOU SIGNED WITH

13:17:56   7    THE CORPS OF ENGINEERS FOR THE DWYER ROAD PROJECT?

13:17:58   8    **A.**   YES, IT'S TOTALLY DIFFERENT.

13:17:59   9    **Q.**   NOW, WHEN YOU FIRST STARTED -- I KNOW WE GOT -- CONFIRMED

13:18:03  10    THAT YOU DID RECEIVE THAT CONTRACT.

13:18:04  11         WHEN YOU MOBILIZED ONTO THE SITE AND BEGAN WORK, WHAT

13:18:09  12    TYPE OF CONSIDERATIONS DID YOU TAKE INTO ACCOUNT TO DO THE WORK

13:18:14  13    THAT YOU WERE TASKED TO PERFORM?

13:18:16  14    **A.**   AS THE CONTRACTOR, MY RESPONSIBILITY WAS STRICTLY THAT, TO

13:18:19  15    LOOK AT THE PLANS AND SPECS, LOOK AT WHAT WAS SPECIFIED, TAKE

13:18:23  16    IT OUT TO THE JOB, TAKE SOME PHOTOS, AND THEN PREPARE A BID FOR

13:18:27  17    THAT WORK AS WRITTEN IN THE DOCUMENTS.

13:18:31  18         I WAS NOT NO ASSUME ANYTHING.  IF I HAD QUESTIONS

13:18:33  19    PRIOR TO BID, I WAS TO CONTACT THE OWNER AND ASK FOR

13:18:38  20    CLARIFICATION, WHICH MANY CONTRACTORS DID.

13:18:39  21         BUT AS FAR AS ASSUMING AN ENGINEERING ROLE AND DOING

13:18:43  22    SOME RESEARCH, THAT IS NOT THE CONTRACTOR'S RESPONSIBILITY IN A

13:18:46  23    FIRM/FIXED PRICE CONTRACT.

13:18:48  24    **Q.**   AND YOUR CONTRACT DID INVOLVE SUBSURFACE WORK; IS THAT

13:18:53  25    CORRECT?

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:18:53   1   **A.**   IT DID INVOLVE SUBSURFACE WORK WHERE BORINGS WERE

13:18:56   2   PERFORMED BY THE CORPS OF ENGINEERS AND THEY WERE PLACED IN THE

13:18:59   3   DOCUMENTS FOR BID.

13:19:00   4   **Q.**   WHAT TYPE OF SUBSURFACE WORK WERE YOU GOING -- WAS MCELWEE

13:19:04   5   BROTHERS GOING TO BE PERFORMING?

13:19:07   6   **A.**   MCELWEE BROTHERS WAS EXCAVATING A COFFERDAM SYSTEM THAT

13:19:10   7   WAS 600 FEET LONG, 25 FEET DEEP, DRIVING SOME PILES THAT WERE

13:19:14   8   76 FEET DEEP IN THE GROUND TO HOLD A SECTION OF THE FLOODWALL

13:19:18   9   SYSTEM, AND ALSO TO INSTALL 84-INCH -- THREE 84-INCH DISCHARGE

13:19:21   10   TUBES FROM A PUMP STATION OUT TO THE INNER HARBOR NAVIGATIONAL

13:19:26   11   CANAL.

13:19:27   12   **Q.**   YOU HAD MENTIONED EARLIER IN YOUR TESTIMONY THAT YOU --

13:19:29   13   THERE WAS SOME CONCERN ABOUT THE GROUNDWATER TABLE BEING

13:19:34   14   INVOLVED IN ANY SUBSURFACE EXPLORATIONS -- OR SUBSURFACE

13:19:40   15   EXCAVATIONS.

13:19:41   16          DID YOU EXPERIENCE ANY SUCH CONDITIONS IN YOUR

13:19:43   17   PROJECT?

13:19:43   18   **A.**   YES.

13:19:44   19   **Q.**   AND WHAT IS YOUR UNDERSTANDING OF WHY YOU WOULD RUN INTO

13:19:47   20   THOSE SITUATIONS?

13:19:48   21   **A.**   THE PROJECT ITSELF WAS LOCATED RIGHT OFF THE INNER HARBOR

13:19:52   22   NAVIGATIONAL CANAL.  AND THE WATER SITUATION THERE CREATES

13:19:57   23   GREAT HYDRAULIC PRESSURES ONTO ANY OPEN EXCAVATION NEXT TO IT,

13:20:03   24   AND THAT'S WHERE WE WERE.

13:20:05   25          SO WE HAD TO HIRE A CONSULTANT TO DO A DEWATERING

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:20:09   1   SYSTEM TO DEWATER THE WATER AROUND THE EXCAVATION SO THAT THAT

13:20:14   2   VOID COULD REMAIN OPEN WHILE THE WORK WAS BEING CONSTRUCTED, TO

13:20:18   3   INCLUDE DRIVING TIMBER FILES, DRIVING CONCRETE PILES, PLACING A

13:20:22   4   CONCRETE SLAB FOR THE BOX CULVERT CANAL SECTIONS, AND THEN

13:20:28   5   INSTALLING THE BOX CULVERT CANAL SECTIONS.

13:20:32   6   Q.   AS AN 8(A) CONTRACTOR, LIKE MCELWEE BROTHERS WAS, WHAT

13:20:37   7   TYPE OF INFORMATION WOULD YOU HAVE TO BE CONCERNED ABOUT

13:20:40   8   REGARDING WHAT YOU REFERRED TO AS HYDRAULIC PRESSURES?

13:20:44   9   A.   WHAT TYPE OF INFORMATION?  IN THAT PARTICULAR CONTRACT AND

13:20:49   10  THOSE DOCUMENTS, SOIL BORINGS WERE ONE.

13:20:52   11          THE LEVEL OF THE INNER HARBOR NAVIGATIONAL CANAL,

13:20:54   12  MONITORING IT WHILE WE'RE DOING THE WORK.

13:20:58   13          RAIN IN THE AREA, PREDICTION OF STORMS COMING AROUND.

13:21:02   14  AND ALSO MONITORING THE SOIL AROUND THE EXCAVATION UP TO ALMOST

13:21:09   15  300 FEET AWAY TO DETERMINE IF THERE WAS SOME SUBSIDENCE

13:21:13   16  RELATIVE TO THE WORK WE WERE PERFORMING.

13:21:15   17  Q.   AND AS AN 8(A) CONTRACTOR, WHAT ARE THE CONCERNS THAT YOU

13:21:19   18  DO HAVE ABOUT THESE HYDRAULIC PRESSURES?  WHAT DIFFERENCE DOES

13:21:23   19  IT MAKE WHETHER THERE'S HYDRAULIC PRESSURE OR NOT?

13:21:25   20  A.   IT MAKES A GREAT DIFFERENCE.  IN MY PARTICULAR CASE, WE

13:21:27   21  WERE ON DRY GROUND -- THE AREA WAS PRETTY MUCH DRY GROUND, BUT

13:21:29   22  NEXT TO THE CANAL.  THE WATER PRESSURE WAS ON OUR COFFERDAM

13:21:35   23  SYSTEM.

13:21:38   24          IN OUR PARTICULAR CASE, WE STOOD THE POSSIBILITIES

13:21:41   25  OF, NUMBER ONE, THOSE PRESSURES CREATING, ONE, IF THE

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:21:44    1    DEWATERING SYSTEM WASN'T IN PLACE TO DROP THE WATER TABLE BELOW

13:21:47    2    THE SHEET PILE TIP, THE SHEETS WOULD START LEANING AND CAVING

13:21:49    3    IN.  IT ENDANGERED LIVES.  THE PEOPLE WERE WORKING IN -- THERE

13:21:53    4    WAS A POTENTIAL FOR ENDANGERING LIVES.  THERE WAS A POTENTIAL

13:21:56    5    FOR LOSING THE WORK WITH ALL OF THESE PRESSURES AND EVERYTHING

13:22:00    6    CAVING IN BECAUSE OF THE VOID THAT WAS IN PLACE.

13:22:02    7    **Q.**   YOU SAID THAT YOU WERE NEAR THE INDUSTRIAL CANAL; CORRECT?

13:22:10    8    **A.**   WE WERE ON IT, NOT NEAR IT.  THE WATER FROM THE CANAL WAS

13:22:13    9    IN CONTACT WITH OUR COFFERDAM SYSTEM.

13:22:15   10    **Q.**   AND THERE'S A STREET THAT ARE RUNS ALONG THE PROJECT

13:22:20   11    PARALLEL WITH THE INDUSTRIAL CANAL; IS THAT CORRECT?

13:22:20   12    **A.**   THAT IS CORRECT.  JOURDAN ROAD.

13:22:23   13    **Q.**   ROAD.  OKAY.

13:22:23   14          AND THAT WOULD BE DIFFERENT THAN JOURDAN AVENUE,

13:22:26   15    WHICH IS PARALLEL TO THE INDUSTRIAL CANAL IN THE LOWER NINTH

13:22:29   16    WARD; CORRECT?

13:22:32   17    **A.**   BEING DIFFERENT --

13:22:32   18    **Q.**   THE NAME.  ONE IS JOURDAN ROAD --

13:22:34   19    **A.**   AND ONE'S JOURDAN AVENUE.  THAT IS CORRECT.

13:22:35   20    **Q.**   -- ONE IS JOURDAN AVENUE.  DOES THAT REFRESH YOUR

13:22:35   21    FAMILIARITY?

13:22:36   22    **A.**   YES.

13:22:36   23    **Q.**   NOW, THE INFORMATION THAT YOU HAVE REGARDING THE HYDRAULIC

13:22:38   24    PRESSURES AND THE THINGS THAT YOU'VE LEARNED IN YOUR EXPERIENCE

13:22:41   25    AS AN 8(A) CONTRACTOR, IS THAT THE TYPE OF THINGS THAT YOU

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:22:43   1   WOULD KNOW IN THE GENERAL SENSE OF YOUR JOB RESPONSIBILITIES AS

13:22:46   2   A GENERAL CONTRACTOR?

13:22:47   3   **A.**   AS A GENERAL CONTRACTOR HERE IN THE SOUTH AND SOUTH

13:22:50   4   LOUISIANA, YES.  BECAUSE WE LIVE HERE AND WE DEAL WITH, YOU

13:22:54   5   KNOW, GRAVEYARDS THAT HAVE TO BE ABOVE GROUND BECAUSE OF THAT

13:22:58   6   REASON.  SO IT'S SOMETHING THAT WE WOULD PARTICULARLY KNOW.

13:23:02   7          NOW, ANY OTHER CONTRACTORS COMING FROM DIFFERENT

13:23:03   8   REGIONS WOULD NOT KNOW ABOUT THE --

13:23:06   9          **MR. TREEBY:**  OBJECTION, YOUR HONOR.  HE DOESN'T KNOW

13:23:08  10   WHAT OTHER CONTRACTORS FROM OTHER AREAS KNOW.  THIS IS WELL

13:23:11  11   BEYOND THE QUESTION AND OUTSIDE --

13:23:12  12          **THE COURT:**  WELL, THE COURT UNDERSTANDS HE'S

13:23:14  13   SPEAKING -- THAT -- WILL ACCEPT HIS ANSWER.  BECAUSE HE IS A

13:23:18  14   CONTRACTOR IN SOUTH LOUISIANA, HE'S PARTICULARLY AWARE OF THE

13:23:23  15   WATER SITUATION.  THAT CERTAINLY DOES NOT NEGATE EQUAL OR

13:23:27  16   SUPERIOR KNOWLEDGE TO ANYONE IN ANY OTHER PART OF THE WORLD.

13:23:31  17          SO THAT PART OF THE ANSWER, I UNDERSTAND.

13:23:34  18   **BY MR. JOANEN:**

13:23:34  19   **Q.**   MR. MCELWEE, THE WORK THAT YOU WERE PERFORMING ON BEHALF

13:23:36  20   OF THE CORPS OF ENGINEERS, WAS THAT NEAR A FEDERAL HURRICANE

13:23:43  21   PROTECTION STRUCTURE?

13:23:44  22   **A.**   IT WAS THROUGH A FEDERAL HURRICANE PROTECTION STRUCTURE.

13:23:47  23   **Q.**   AND THESE HYDRAULIC PRESSURES THAT YOU WERE TALKING ABOUT

13:23:49  24   THAT YOU WERE FAMILIAR WITH AS AN 8(A) CONTRACTOR, DID YOU HAVE

13:23:51  25   TO HAVE ANY CONSIDERATION FOR THOSE HYDRAULIC PRESSURES AS IT

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:23:53   1   RELATED TO THAT FLOODWALL?

13:23:55   2   **A.**   YES.

13:23:56   3   **Q.**   AND WHAT TYPE OF PRESSURES WOULD YOU HAVE -- WHAT TYPE OF

13:23:59   4   EFFECTS OF THE PRESSURES WOULD YOU HAVE TO WORRY ABOUT AS AN

13:24:02   5   8(A) CONTRACTOR?

13:24:03   6   **A.**   ON THIS PARTICULAR PROJECT, THERE WAS SOME EXISTING PILING

13:24:06   7   AND THERE WAS AN EXISTING FLOODWALL WE HAD TO REMOVE.  AND IN

13:24:11   8   EXTRACTING THE PILING, THERE WERE SOME CONCERNS ABOUT THE VOIDS

13:24:14   9   THAT WERE IN THE SOILS AND WATER TRAVELING THROUGH THE VOIDS AS

13:24:17   10  WE WERE EXTRACTING THE PILES.

13:24:21   11         IN FACT, WE -- ACTUALLY, WHEN WE BEGAN EXTRACTING THE

13:24:24   12  EXISTING SYSTEM AND STARTED PLACING THE BENTONITE SLURRY, WHICH

13:24:29   13  THE CONTRACT CALLED FOR, IN SOME OF THE HOLES, ABOUT 40 FEET

13:24:32   14  OVER WE COULD SEE BENTONITE COMING UP IN THE OTHER EXISTING

13:24:36   15  HOLES THAT WERE CREATED.

13:24:38   16         THE SAME METHODOLOGY THAT THE SLURRY TRAVELED THROUGH

13:24:42   17  THE SOILS AND CAME UP WAS WHAT WE WAS CONCERNED ABOUT THE WATER

13:24:44   18  FROM THE CANAL TRAVELING AND COMING UP ALSO.

13:24:47   19  **Q.**   THE PILES THAT YOU'RE TALKING ABOUT, ARE THOSE PILES THAT

13:24:50   20  ARE DRIVEN INTO THE GROUND OR IS THAT A SHEET PILE APRON THAT

13:24:53   21  WOULD BE UNDER A FLOODWALL?

13:24:54   22  **A.**   WE DROVE BOTH TYPE.

13:24:56   23  **Q.**   OKAY.

13:24:56   24  **A.**   THE PILES I'M TALKING ABOUT NOW ARE THE CONCRETE PILES

13:24:59   25  HOLDING THE FLOODWALL.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT

13:25:00   1   **Q.**   THE FLOODWALL, THE FEDERAL HURRICANE PROTECTION STRUCTURE

13:25:06   2   THAT YOU WERE WORKING NEAR AND THROUGH, DO YOU KNOW WHAT TYPE

13:25:08   3   OF WALL THAT WAS, WHETHER IT BE AN I-WALL OR A T-WALL?

13:25:12   4   **A.**   THAT WAS A T-WALL.

13:25:12   5   **Q.**   OKAY.  DID THAT T-WALL HAVE A SHEET PILE APRON THAT WENT

13:25:17   6   UNDER IT?

13:25:17   7   **A.**   IT HAD A SHEET PILE CUTOFF BENEATH THE BASE OF THE WALL,

13:25:21   8   YES.

13:25:21   9   **Q.**   AND AS AN 8(A) CONTRACTOR, WHAT IS YOUR UNDERSTANDING OF

13:25:24   10   THE NEED FOR HAVING A SHEET PILE CUTOFF?

13:25:29   11         **MR. SMITH:**  OBJECTION, YOUR HONOR.  THE QUESTION IS

13:25:30   12   NOT WHAT HE KNOWS AS AN 8(A) CONTRACTOR.  THE QUESTION IS WHAT

13:25:34   13   DID HE EXPERIENCE ON THIS PROJECT AT DWYER ROAD?

13:25:39   14         **THE COURT:**  I UNDERSTAND THAT.  I'M GOING TO -- I

13:25:44   15   DON'T THINK IT REQUIRES SCIENTIFIC, TECHNICAL, OR SPECIALIZED

13:25:48   16   KNOWLEDGE, AS I UNDERSTAND THE COMMENTS UNDER -- UNDER

13:25:53   17   RULE 407 -- EXCUSE ME -- RULE 701.

13:25:59   18         SO TO THAT EXTENT, I'M GOING TO LET HIM ANSWER

13:26:01   19   THE QUESTION.  I'LL OVERRULE YOUR OBJECTION AND NOTE IT.  IT

13:26:06   20   CAN BE URGED AGAIN.

13:26:09   21         **THE WITNESS:**  COULD YOU REPEAT THAT QUESTION AGAIN?

13:26:11   22         **MR. JOANEN:**  COULD YOU READ IT BACK, PLEASE?

13:26:11   23         (WHEREUPON, THE REQUESTED PORTION OF THE RECORD WAS

13:26:11   24   READ BY THE COURT REPORTER.)

13:26:26   25         **THE WITNESS:**  THE NEED FOR HAVING A SHEET PILE CUTOFF

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:26:28   1   WAS TO CUT OFF THE FLOW OF WATER BENEATH THE T-WALL AT A

13:26:35   2   CERTAIN DEPTH.  THE AREA WE WERE IN HAD A STRATA OF SAND, AND

13:26:40   3   SO THE SHEET PILE WENT THROUGH THE STRATA OF SAND TO CUT OFF

13:26:44   4   THE WATER FLOWING FROM IN THE GROUND FROM THE FLOOD SIDE TO THE

13:26:47   5   PROTECTION SIDE OF THE STRUCTURE.

13:26:48   6   **BY MR. JOANEN:**

13:26:48   7   **Q.**  AS AN 8(A) CONTRACTOR, DO YOU KNOW WHY IT'S IMPORTANT THAT

13:26:53   8   THERE WOULD BE SUCH A CUTOFF, A SHEET PILE CUTOFF?

13:26:57   9           **THE COURT:**  I THINK HE JUST ANSWERED THAT.

13:26:58  10   **BY MR. JOANEN:**

13:26:58  11   **Q.**  DO YOU KNOW THE RESULT THAT THERE IS -- AS AN 8(A)

13:27:01  12   CONTRACTOR, DO YOU KNOW THE RESULT OF WHAT HAPPENS IF THERE IS

13:27:04  13   WATER PASSING UNDER A SHEET PILE?

13:27:06  14   **A.**  YEAH.

13:27:07  15           **THE COURT:**  ALL RIGHT.  ALL RIGHT.  THAT'S --

13:27:09  16           **MR. SMITH:**  OBJECTION, YOUR HONOR.

13:27:12  17           **MR. JOANEN:**  I UNDERSTAND, YOUR HONOR.

13:27:14  18           **THE COURT:**  I DON'T THINK IT REQUIRES -- BUT WE CAN

13:27:17  19   LEAVE THAT.  THAT'S A -- THAT'S WHAT THIS WHOLE CASE IS ABOUT.

13:27:22  20   I THINK EVERYBODY ACKNOWLEDGES THAT IT'S NOT GOOD FOR WATER TO

13:27:26  21   BE ABLE TO UNDERMINE AND PASS THROUGH THE SHEET PILE, AND

13:27:30  22   CERTAINLY IN CERTAIN AMOUNTS.  BUT WE KNOW THAT.  WE KNOW THAT.

13:27:34  23           **MR. JOANEN:**  THANK YOU, YOUR HONOR.

13:27:34  24           **THE COURT:**  DO YOU KNOW THE DEPTH OF THE SHEET PILE

13:27:36  25   IN THE AREA YOU WERE WORKING IN, MR. MCELWEE?  THE TIP -- WHERE

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:27:39   1   THE TIP WAS, HOW DEEP IT WAS?

13:27:40   2             THE WITNESS:  WHERE THE TIP WAS?

13:27:41   3             THE COURT:  YES.

13:27:42   4             THE WITNESS:  SIR, I'D HAVE TO REMIND MYSELF AND LOOK

13:27:44   5   BACK AT THE REPORT THAT WAS DONE.

13:27:47   6             THE COURT:  WELL, YOU'RE NOT -- YOU CAN'T RECALL IT?

13:27:49   7             THE WITNESS:  I CAN'T RECALL IT, YEAH.  BECAUSE WE --

13:27:50   8   IT WAS SHALLOWER EXISTING AT FIRST THAN WHAT DROVE IT WHEN WE

13:27:56   9   PUT THE NEW WALL IN.

13:27:57   10            THE COURT:  I GOT YOU.

13:27:58   11                 AND ONE OTHER QUESTION.  ABOUT HOW FAR IS -- I

13:28:01   12  DON'T KNOW IF YOU ASKED HIM THIS IS, BUT THIS IS FROM MY

13:28:03   13  MEMORY.  HOW FAR WAS IT WHERE YOU WERE WORKING FROM THE --

13:28:06   14  WHERE WGI REMEDIATION SITE IS, APPROXIMATELY?

13:28:11   15            THE WITNESS:  NO MORE THAN, I'M THINKING, TWO MILES.

13:28:13   16            THE COURT:  ALL RIGHT.  OKAY.  AND THAT WOULD BE

13:28:17   17  NORTH OR --

13:28:18   18            THE WITNESS:  NORTH, YES, SIR.  CLOSER TO THE LAKE.

13:28:20   19            THE COURT:  ALL RIGHT.  GO AHEAD, SIR.

13:28:21   20            MR. JOANEN:  JUST A FEW MORE QUESTIONS, YOUR HONOR.

13:28:23   21  BY MR. JOANEN:

13:28:25   22  Q.   WHEN YOU FIRST GOT INVOLVED IN THE PROJECT AND YOU STARTED

13:28:29   23  DIGGING INTO THE SOILS, HOW WOULD YOU DESCRIBE THE TYPES OF

13:28:32   24  SOILS YOU WERE FINDING?

13:28:34   25  A.   THEY WERE HUMUS SOILS.  *HUMUS* MEANING ORGANICS THAT

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:28:40   1   DECAYED OVER THE YEARS, TREE TRUNKS, TREE BRANCHES.  IN FACT,

13:28:44   2   WHEN WE EXCAVATED FOR THE FIRST MAYBE 1O FEET, THAT'S WHAT WE

13:28:49   3   WERE DIGGING OUT.  NOTHING THAT COULD BE USED AGAIN.

13:28:53   4        COFFEE GROUNDS IS WHAT WE KIND OF CLASSIFIED IT IN

13:28:56   5   THE CONSTRUCTION INDUSTRY THROUGHOUT NEW ORLEANS.

13:28:59   6   **Q.**   CAN YOU DESCRIBE THAT FURTHER?  WHAT DOES THAT MEAN?

13:29:01   7   **A.**   COFFEE GROUNDS?

13:29:03   8   **Q.**   YES.

13:29:03   9   **A.**   IT IS THE -- OVER THE YEARS, SINCE THE MISSISSIPPI RIVER

13:29:09  10   HAS BEEN SWITCHING BACK AND FORTH IN LOUISIANA, IT'S BEEN

13:29:13  11   DEPOSITING SWAMP TREES THAT HAVE DECAYED.  AND WHEN YOU DIG IT

13:29:17  12   NOW, IT'S BLACK MUSHY SOIL.

13:29:20  13        **MR. TREEBY:**  IF, YOUR HONOR, PLEASE, THAT'S OPINION,

13:29:21  14   AND IT'S NOT BASED ON HIS EXPERIENCE AT DWYER ROAD.

13:29:25  15        IF HE'S TALKING ABOUT WHAT HE ENCOUNTERED THERE,

13:29:29  16   THAT'S FINE.  BUT HE'S TALKING ABOUT THE MISSISSIPPI RIVER AND

13:29:31  17   WHAT IT DOES AND ALL THE PLACES IT DOES IT.  HE'S NOT AN

13:29:35  18   EXPERT.

13:29:35  19        **THE COURT:**  I UNDERSTAND.  LET'S GET DOWN TO WHAT HE

13:29:37  20   SAW.

13:29:38  21        I'M GOING TO SUSTAIN THE OBJECTION INSOFAR AS IT

13:29:39  22   RELATES TO THE CAUSE OF THE HISTORICAL, GEOLOGICAL, AND

13:29:45  23   TOPOGRAPHICAL INCIDENTS THAT HAVE TAKEN PLACE OVER HUNDREDS AND

13:29:50  24   THOUSANDS OF YEARS TO CREATE THE SOIL CONDITION THAT'S THERE.

13:29:53  25   THAT IS EXPERT TESTIMONY.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:29:54    1              I'M NOT SAYING THIS MAN DOESN'T KNOW IT, BUT

13:29:56    2    HE'S NOT BEEN QUALIFIED AS AN EXPERT HERE.  SO WHAT I -- WHAT I

13:30:01    3    ASSUME YOU'RE ASKING HIM IS:  WHAT DID HE SEE THERE?

13:30:04    4              **MR. JOANEN:**  CORRECT.  AND I THOUGHT THAT'S WHAT HE'D

13:30:05    5    SAID, THAT THE COFFEE GROUNDS WERE IN THAT SITE.

13:30:07    6              **THE COURT:**  HE DID SAY THAT.

13:30:08    7              **MR. JOANEN:**  AND I ASKED HIM IF HE CAN DESCRIBE MORE

13:30:09    8    WHAT HE MEANS BY COFFEE GROUNDS.

13:30:10    9              **THE COURT:**  RIGHT.  AND HE WAS TRYING TO GIVE,

13:30:11   10    ACTUALLY, A MORE DETAILED EXPLANATION, AND THAT'S WHEN THE

13:30:15   11    OBJECTION CAME IN.

13:30:17   12              SO IF HE CAN JUST DESCRIBE WHAT THE COFFEE

13:30:19   13    GROUNDS ARE.  IS IT -- WHAT DOES IT LOOK LIKE?  WHAT DOES IT --

13:30:21   14    **BY MR. JOANEN:**

13:30:21   15    **Q.**   YEAH.  WHAT DOES IT LIKE?  WHAT DOES IT FEEL LIKE?  HOW

13:30:24   16    DOES IT WORK WHEN YOU'RE IN --

13:30:26   17    **A.**   THERE -- I WAS GOING TO SAY WHAT IT LOOKS LIKE, THERE'S A

13:30:29   18    PICTURE IN THE EXHIBIT I BELIEVE THAT WAS DONE ON THE PROJECT

13:30:32   19    THAT SHOWS EXACTLY WHAT IT LOOKS LIKE.  IT'S DARK-COLORED BLACK

13:30:39   20    MATERIAL.

13:30:40   21    **Q.**   OKAY.

13:30:41   22    **A.**   NO CONSISTENCY, SPONGY LIKE, CHARCOAL COLORED.

13:30:53   23              WHAT IS IT LIKE WORKING IN IT?  YOU JUST -- YOU DIG

13:30:56   24    IT UP AND YOU GET RID OF IT.  THERE'S NOTHING YOU CAN DO WITH

13:30:58   25    IT.  IT HAS NO USE BUT TO FILL UP A LANDFILL.

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT


13:31:01    1   **Q.**   OTHER THAN CALLING IT COFFEE GROUND MATERIAL, DO YOU KNOW

13:31:04    2   WHAT IT CONSISTS OF, WHETHER IT BE SAND, SILTS, CLAYS, ANYTHING

13:31:10    3   OF THAT NATURE?

13:31:11    4   **A.**   THERE ARE NO SANDS, SOME SILT, NO CLAYS IN IT.  IT'S JUST

13:31:17    5   DECAYED PLANT MATERIAL, OR LIFE MATERIAL.

13:31:23    6            **MR. TREEBY:**  MOVE TO STRIKE THAT.  NONRESPONSIVE, NOT

13:31:27    7   WHAT HE OBSERVED.  HE'S TRYING TO TESTIFY ABOUT SOME COURSE HE

13:31:30    8   TOOK FOR THREE WEEKS WITH THE CORPS OF ENGINEERS.

13:31:33    9            **THE COURT:**  I'M GOING TO OVERRULE YOUR OBJECTION.

13:31:39   10   **BY MR. JOANEN:**

13:31:39   11   **Q.**   WHEN YOU FOUND -- JUST -- FIRST, JUST A QUICK FOLLOW-UP ON

13:31:43   12   WHAT -- WITH YOUR PROJECT.

13:31:47   13            AS YOU DISCOVERED ALL THESE CONDITIONS THAT WERE IN

13:31:50   14   THE WORK AREA, DID YOU REPORT THESE TO YOUR EMPLOYER, THE CORPS

13:31:54   15   OF ENGINEERS?

13:31:56   16   **A.**   THE OWNER OF THE PROJECT, YES.

13:31:59   17            **THE COURT:**  THAT'S A BETTER STATEMENT.  NOT EMPLOYER,

13:32:00   18   BUT OWNER OF THE PROJECT.

13:32:02   19            **THE WITNESS:**  OWNER OF THE PROJECT, YES.

13:32:03   20   **BY MR. JOANEN:**

13:32:03   21   **Q.**   OWNER OF THE PROJECT.

13:32:04   22   **A.**   I WAS NOT EMPLOYED BY THE CORPS WHEN I BECAME A

13:32:08   23   CONTRACTOR.  COULDN'T DO IT.  IT'S AGAINST THE LAW.

13:32:11   24   **Q.**   OKAY.  SO AS THE OWNER OF THE PROJECT, WERE YOU OBLIGATED

13:32:14   25   TO INFORM THEM OF THE CHANGE IN CONDITIONS OR THE CONDITIONS

400

MELVIN MILLARD LOUIS MCELWEE, SR. - DIRECT

13:32:17    1    THAT YOU WERE FINDING ON A REGULAR BASIS?

13:32:20    2    **A.**   I WAS -- YES.  DAILY REPORTS, THAT'S STUFF WITH THE

13:32:25    3    QUALITY CONTROL ON BEHALF OF THE CONTRACTOR.  I HAD TO HAVE A

13:32:28    4    QUALITY CONTROL STAFF OUT THERE, HIRE PERSONNEL TO -- TO REPORT

13:32:32    5    EVERYTHING.

13:32:32    6    **Q.**   AND THAT WAS MY NEXT QUESTION.

13:32:34    7            HOW DID YOU INFORM THE CORPS, AND HOW OFTEN WOULD YOU

13:32:37    8    DO IT?

13:32:37    9    **A.**   DAILY.  DAILY.  WE TURNED REPORTS IN TO THEM DAILY, ALONG

13:32:41    10   WITH PHOTOS, YOU KNOW, ALONG WITH MEASUREMENTS.  WE HAD TO

13:32:45    11   MEASURE PIEZOMETERS FOR THE DEWATERING SYSTEM.

13:32:48    12           LEVELS OF THE CANAL ITSELF, WE HAD TO REPORT THAT ON

13:32:52    13   A -- WHAT'S CALLED A DAILY CONTRACTOR'S QUALITY CONTROL REPORT.

13:32:56    14   **Q.**   AND ON YOUR PROJECT, WHEN YOU WERE INFORMING SOMEONE WITH

13:32:58    15   THE CORPS OF ENGINEERS, WHAT TYPE OF TITLE DID THE PERSON THAT

13:33:01    16   YOU WERE REPORTING TO HAVE?  WAS IT A QUALITY ASSURANCE PERSON

13:33:04    17   OR WAS IT SOMEONE HIGHER UP IN THE HIERARCHY?

13:33:09    18   **A.**   A QUALITY ASSURANCE PERSON WAS ON SITE.  THE CONTRACTOR

13:33:14    19   WAS REQUIRED TO PROVIDE A TRAILER FOR QUALITY ASSURANCE

13:33:17    20   PERSONNEL THAT WERE THERE DAILY TO COLLECT THE REPORTS.

13:33:20    21           BUT THE COMMUNICATION PROCESS FOR THE PROJECT TOOK

13:33:24    22   PLACE FROM THE QUALITY ASSURANCE PERSON ALL THE WAY UP TO THE

13:33:28    23   CONTRACTING OFFICER.

13:33:29    24   **Q.**   AND WOULD YOU HAVE MEETINGS WITH THOSE INDIVIDUALS GOING

13:33:31    25   UP TO THE CONTRACTING OFFICER?

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

13:33:32  1  **A.**  YES.

13:33:33  2  **Q.**  I MEAN BY FACE-TO-FACE MEETINGS?

13:33:37  3  **A.**  YES.

13:33:38  4  **Q.**  AND HOW OFTEN WOULD THOSE FACE-TO-FACE MEETINGS TAKE

13:33:40  5  PLACE?

13:33:40  6  **A.**  IT ALL VARIED, DEPENDING ON THE CONTRACTING OFFICER'S

13:33:44  7  DESIRE.  INITIALLY, ON THE PROJECT, IT WAS MONTHLY.  WHEN

13:33:46  8  HURRICANE SEASON CAME AROUND, IT WAS WEEKLY.

13:33:55  9          **MR. JOANEN:**  ONE MOMENT, YOUR HONOR.

13:34:02  10          **THE COURT:**  SURE.

13:34:03  11          **MR. JOANEN:**  I'LL TENDER THE WITNESS, YOUR HONOR.

13:34:04  12          **THE COURT:**  OKAY.

13:34:05  13              COUNSEL?

13:34:05  14                  **CROSS-EXAMINATION**

13:34:09  15  BY MR. TREEBY:

13:34:12  16  **Q.**  GOOD AFTERNOON, MR. MCELWEE.  MY NAME IS BILL TREEBY.

13:34:15  17  WE'VE MET BEFORE.  I JUST HAVE A FEW QUESTIONS FOR YOU.

13:34:20  18  **A.**  GOOD AFTERNOON.

13:34:20  19  **Q.**  AND I'M GOING TO SKIP THROUGH THE THINGS THAT HAVE ALREADY

13:34:33  20  BEEN COVERED, SO I MIGHT PAUSE FOR A MOMENT.

13:34:34  21              IT'S TRUE, IS IT NOT, THAT NEITHER YOU NOR YOUR

13:34:37  22  COMPANY, MCELWEE BROTHERS, HAVE EVER PERFORMED ANY WORK SOUTH

13:34:40  23  OF I-10?  IS THAT CORRECT, IN THE NEW ORLEANS AREA?

13:34:45  24  **A.**  SOUTH OF I-10?  THAT'S NOT CORRECT.

13:34:47  25  **Q.**  ON THE INDUSTRIAL CANAL.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:34:49   1   **A.**   OH, THAT IS CORRECT.

13:34:52   2   **Q.**   AND YOU HAVE NOT PERFORMED ANY WORK IN THE EAST BANK

13:34:56   3   INDUSTRIAL AREA BETWEEN FLORIDA AVENUE AND NORTH CLAIBORNE

13:34:59   4   AVENUE, ALONG THE EAST SIDE OF THE INDUSTRIAL CANAL, RIGHT?

13:35:03   5   **A.**   THAT IS CORRECT.

13:35:03   6   **Q.**   AND YOU HAVE NO FIRSTHAND KNOWLEDGE AS TO WHAT THE SOIL

13:35:06   7   CONDITIONS ARE IN THAT AREA; ISN'T THAT RIGHT?

13:35:08   8   **A.**   THAT'S NOT CORRECT.  BECAUSE WHEN I WAS A QUALITY

13:35:10   9   ASSURANCE REP WITH THE CORPS OF ENGINEERS, I WORKED PROJECTS IN

13:35:14  10   THOSE AREAS.

13:35:15  11   **Q.**   WHERE DID YOU WORK IN THOSE AREAS WHEN YOU WERE A QUALITY

13:35:17  12   ASSURANCE REPRESENTATIVE?

13:35:20  13   **A.**   DREDGING ALONG THE INNER HARBOR NAVIGATIONAL CANAL WITH

13:35:23  14   THE CORPS, DREDGING.

13:35:26  15   **Q.**   IN THE CANAL?

13:35:27  16   **A.**   YES, SIR.  DREDGING.

13:35:28  17   **Q.**   DID YOU WORK ON THE SHORE OF THE CANAL FOR THE CORPS OF

13:35:31  18   ENGINEERS?

13:35:32  19   **A.**   NO, SIR.

13:35:35  20   **Q.**   AFTER LOOKING AT THE DISTANCE -- AND I THINK I HEARD YOU

13:35:37  21   JUST TESTIFY THAT IT WAS TWO SHORT MILES FROM THE EAST BANK

13:35:41  22   INDUSTRIAL AREA TO THE DWYER ROAD PROJECT.  IS THAT WHAT I

13:35:45  23   HEARD?

13:35:46  24   **A.**   I DIDN'T SAY "TWO SHORT MILES."  I SAID I DON'T THINK IT

13:35:48  25   WAS ANY MORE THAN TWO MILES.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:35:50  1           **THE COURT:**  THAT'S WHAT HE SAID.

13:35:50  2   **BY MR. TREEBY:**

13:35:50  3   **Q.**  WELL, DO YOU REMEMBER AT YOUR TESTIMONY TELLING US THAT IT

13:35:53  4   WAS 2.8 MILES?

13:35:54  5   **A.**  IT'S BEEN SOME YEARS AGO.  I'M SORRY ABOUT THAT.  I

13:35:57  6   COULDN'T REMEMBER EXACTLY WHAT I SAID.

13:36:01  7   **Q.**  AT YOUR DEPOSITION, VOLUME II AT 375, LINE 19, DO YOU

13:36:16  8   RECALL THAT WE PULLED OUT A SCALE, LOOKED AT A MAP AND

13:36:19  9   DETERMINED THE DISTANCE?  DO YOU RECALL THAT?

13:36:27  10  **A.**  ACTUALLY, I CAN'T REMEMBER -- I THINK WE DID.  I THINK A

13:36:33  11  MAP WAS PULLED OUT AT THAT TIME.  I DON'T KNOW WHO PULLED THE

13:36:37  12  MAP OUT.

13:36:38  13          "AND EXACTLY WHAT WE SAW AT THAT TIME, I GET

13:36:44  14  ALMOST -- YEAH.  I GOT ALMOST 2-POINT -- I WOULD SAY 2.8 IS

13:36:48  15  WHAT I WOULD GET, YES.  AT THAT -- ON THAT MAP AT THAT TIME

13:36:51  16  WHEN IT WAS PRODUCED, YES."

13:36:52  17  **Q.**  THANK YOU.

13:36:52  18          **MR. JOANEN:**  YOUR HONOR, IF I --

13:36:52  19  **BY MR. TREEBY:**

13:36:52  20  **Q.**  IN PREP- --

13:36:53  21          **MR. JOANEN:**  JUST BRIEFLY, IF YOU PUT THAT BACK UP.

13:36:55  22          MY OBJECTION IS NOT SO MUCH OF AN OBJECTION,

13:36:57  23  JUST CLARIFICATION.

13:36:59  24          YOU'LL SEE THAT MR. BRUNO IS PUTTING THE 2.8

13:37:01  25  MILES IN THAT.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:37:02    1            **THE COURT:**  THE COURT DID OBSERVE THAT.  I AM

13:37:03    2   OBSERVING WHO SAID IT.

13:37:04    3            **MR. JOANEN:**  I JUST WANTED THE RECORD TO REFLECT

13:37:06    4   THAT.  THANK YOU.

13:37:07    5            **MR. TREEBY:**  YES.  THAT WAS AFTER WE --

13:37:09    6   **BY MR. TREEBY:**

13:37:09    7   **Q.**   DO YOU RECALL THAT EPISODE WHERE WE WERE LOOKING AT MAPS

13:37:12    8   AND MEASURING AND MR. BRUNO WAS SCALING AND WE WERE DISCUSSING

13:37:15    9   IT.  AND YOU -- YOU AGREED IT WAS 2.8 MILES, DID YOU NOT?  DO

13:37:23   10   YOU RECALL?

13:37:24   11   **A.**   I DON'T RECALL.

13:37:25   12   **Q.**   OKAY.  AFTER LOOKING AT -- IN PREPARATION FOR ITS WORK AT

13:37:33   13   THE DWYER ROAD SITE, THE MCELWEE BROTHERS RECEIVED SOIL BORING

13:37:38   14   INFORMATION THAT WAS PROVIDED BY EUSTIS ENGINEERING; ISN'T THAT

13:37:41   15   RIGHT?

13:37:41   16   **A.**   EUSTIS ENGINEERING PROVIDED THE SOIL BORINGS FOR THE

13:37:44   17   CORPS, THAT IS CORRECT, IN THOSE DOCUMENTS.

13:37:45   18   **Q.**   AND THEY WERE MADE AVAILABLE TO YOU; IS THAT RIGHT?

13:37:48   19   **A.**   YES.

13:37:48   20   **Q.**   AND THE SOIL BORINGS WERE TAKEN SOME 165 FEET FROM THE

13:37:53   21   CORPS' FINAL DESIGNATED SITE FOR MCELWEE BROTHERS WORK; ISN'T

13:37:59   22   THAT RIGHT?

13:38:03   23   **A.**   SIR, THAT, I DON'T KNOW.  I CAN'T REMEMBER THAT REALLY.

13:38:06   24   **Q.**   OKAY.

13:38:07   25   **A.**   I CAN'T REMEMBER THAT.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

| | | |
|---|---|---|
| 13:38:07 | 1 | **Q.**   WELL, LET ME REFRESH YOUR RECOLLECTION. |
| 13:38:10 | 2 | **A.**   THAT MAY BE TRUE. |
| 13:38:11 | 3 | **Q.**   YEAH.  WELL, LET'S MAKE SURE, BECAUSE I KNOW IT WAS |
| 13:38:14 | 4 | CLOSE -- YOU KNOW, THAT WAS 2008 WHEN YOUR DEPOSITION WAS |
| 13:38:15 | 5 | TAKEN.  YOU REMEMBERED IT BETTER THEN THAN NOW; IS THAT |
| 13:38:20 | 6 | CORRECT? |
| 13:38:20 | 7 | **A.**   THAT'S CORRECT. |
| 13:38:21 | 8 | **Q.**   OKAY.  WELL, LET'S JUST REFRESH YOUR RECOLLECTION. |
| 13:38:23 | 9 | IF YOU WOULD PULL UP PAGE 298, LINE 17. |
| 13:38:36 | 10 | IT NEEDS TO GO ON DOWN.  WE NEED MORE -- THIS PASSAGE |
| 13:38:41 | 11 | GOES QUITE A WAYS.  LET ME FIND THE EXACT LOCATION HERE. |
| 13:38:47 | 12 | DX-2700. |
| 13:38:59 | 13 | DO YOU RECALL -- THIS IS PART OF A COMPLAINT THAT |
| 13:39:02 | 14 | YOU -- THAT WAS AN APPEAL THAT YOU HAD BEFORE THE ARMED |
| 13:39:06 | 15 | SERVICES BOARD OF CONTRACT APPEALS.  DO YOU RECALL THAT CASE? |
| 13:39:11 | 16 | **A.**   YOU SAID THIS WAS AN APPEAL?  WHAT IS THE APPEAL?  WHAT |
| 13:39:14 | 17 | ARE YOU SAYING IS THE APPEAL? |
| 13:39:15 | 18 | **Q.**   OKAY.  LET'S GO BACK. |
| 13:39:16 | 19 | **MR. TREEBY:**  BRING UP THE COMPLAINT WHICH IS AT |
| 13:39:17 | 20 | 001 -- |
| 13:39:18 | 21 | **THE COURT:**  WHAT WAS -- |
| 13:39:19 | 22 | **MR. TREEBY:**  -- 2700-001.  I WAS TRYING TO CUT RIGHT |
| 13:39:24 | 23 | TO IT. |
| 13:39:25 | 24 | **THE COURT:**  ARE WE GOING -- ARE WE GOING -- I |
| 13:39:26 | 25 | THINK -- |

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:39:27   1        **MR. TREEBY:**  I'M SORRY.  YES.  I'M GOING AWAY FROM

13:39:29   2   THE DEPOSITION.  I'M SORRY, YOUR HONOR.

13:39:30   3        **THE COURT:**  ALL RIGHT.  OKAY.  SO WE'RE LEAVING THAT.

13:39:31   4   WE'RE GOING SOMEWHERE ELSE.

13:39:32   5        **MR. TREEBY:**  DX-2700-0001.

13:39:38   6   **BY MR. TREEBY:**

13:39:39   7   **Q.**   THIS IS THE CASE I'M TALKING ABOUT.  DO YOU RECALL THIS

13:39:41   8   CASE, MR. MCELWEE?

13:39:42   9   **A.**   YES.  THERE WAS A CASE FILED WITH THE ARMED SERVICES BOARD

13:39:46  10   OF CONTRACT APPEALS.  THAT IS CORRECT.

13:39:57  11   **Q.**   DO YOU RECALL IN THIS CASE COMPLAINING THAT THE SOILS

13:40:00  12   INFORMATION YOU HAD BEEN GIVEN WAS TOO FAR AWAY FROM THE

13:40:03  13   LOCATION OF YOUR WORK?

13:40:07  14   **A.**   WHAT YOU'RE SPEAKING OF IN PARTICULAR IS THE SOIL BORING

13:40:12  15   WAS OVER 300 FEET AWAY FROM THE FLOODWALL, BUT IT WAS IN THE

13:40:17  16   WORK AREA.  AND THE COMPLAINT WAS THAT THE BORING WASN'T CLOSE

13:40:23  17   ENOUGH TO DESCRIBE THE SOIL CONDITIONS THAT WE ENCOUNTERED WHEN

13:40:30  18   WE EXTRACTED THE PILES.

13:40:32  19   **Q.**   RIGHT.

13:40:34  20        AND YOU, I BELIEVE, CONCLUDED THAT THAT WAS TOO FAR

13:40:38  21   AWAY FROM YOUR JOB SITE TO BE REPRESENTATIVE OF THE SOIL

13:40:43  22   CONDITIONS AT YOUR JOB SITE; RIGHT?

13:40:45  23   **A.**   NO.  I JUST SAID IT WAS ON THE JOB SITE.  IT WAS OVER

13:40:50  24   200 FEET AWAY.  BORINGS ARE GOOD FOR A CERTAIN DISTANCE.

13:40:56  25   **Q.**   OKAY.  WHAT DISTANCE ARE THEY GOOD FOR?

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:41:02   1       **THE COURT:**  NOW, OF COURSE, THIS IS A SCIENTIFIC,

13:41:05   2  TECHNICAL AND SPECIALIZED KNOWLEDGE.  BUT YOU CAN ASK HIM, AS A

13:41:08   3  CONTRACTOR, WHEN DOES HE FEEL COMFORTABLE WITH THE INFORMATION

13:41:10   4  PROVIDED.

13:41:11   5       **MR. TREEBY:**  THANK YOU, YOUR HONOR.

13:41:13   6  **BY MR. TREEBY:**

13:41:14   7  **Q.**  DIDN'T YOU -- DIDN'T MCELWEE BROTHERS BELIEVE THAT THE

13:41:16   8  SOIL CONDITIONS WITHIN THE WORK SITE WOULD BE MORE PROPERLY

13:41:19   9  DETERMINED BY SOIL BORINGS TAKEN WITHIN 100 FEET OF THE WORK

13:41:23  10  SITE?

13:41:28  11  **A.**  MCELWEE BROTHERS NEVER QUESTIONED ANYTHING OUTSIDE OF THE

13:41:33  12  WORK SITE WHEN BIDDING THE PROJECT.  WE WERE GIVEN THE SOIL

13:41:37  13  BORINGS AND THE ANTICIPATION WAS THAT THEY WERE REPRESENTATIVE

13:41:39  14  OF THE WORK SITE.

13:41:42  15       **MR. TREEBY:**  PLEASE CALL UP DEPOSITION VOLUME II,

13:41:45  16  PAGE 300, LINES 4 THROUGH 10.

13:42:32  17       (WHEREUPON, THE VIDEO CLIP WAS PLAYED AS FOLLOWS:)

13:42:35  18       "Q.  IN OTHER WORDS, YOU AND I GUESS MR. JACKSON,

13:42:35  19    WHOEVER, COMMISSIONER GOURA (PHONETIC) BELIEVED THAT THE

13:42:35  20    SOIL CONDITIONS WITHIN THE WORK SITE WOULD BE MORE

13:42:35  21    PROPERLY DETERMINED BY SOIL BORINGS TAKEN WITHIN THE WORK

13:42:35  22    SITE?

13:42:45  23       "A.  THEY MUST BE SOMEWHERE IN CLOSE PROXIMITY, AT

13:42:48  24    LEAST 100 FEET.

13:42:49  25       (WHEREUPON, THE VIDEO CLIP CONCLUDED.)

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

1  **BY MR. TREEBY:**

13:42:49  2  **Q.**  DO YOU RECALL THAT TESTIMONY NOW?

13:42:50  3  **A.**  YES.

13:42:51  4  **Q.**  DO YOU STILL AGREE WITH THAT?

13:42:53  5  **A.**  THAT'S ME TELLING THAT TESTIMONY.

13:42:56  6  **Q.**  RIGHT.

13:43:06  7  DURING YOUR -- I BELIEVE YOU'VE TESTIFIED THAT THE

13:43:09  8  CORPS WAS ON-SITE PRETTY MUCH EVERY DAY THAT WORK WAS PERFORMED

13:43:14  9  AT THE DWYER ROAD SITE; IS THAT RIGHT?

13:43:16  10  **A.**  THAT IS CORRECT.

13:43:18  11  **Q.**  AND THERE WAS AN ARMY CORPS QAR AT THAT SITE WHOSE ROLE IT

13:43:26  12  WAS TO BE ABREAST OF THE PLANS AND SPECS AND THE WORK EFFORTS

13:43:30  13  TAKING PLACE ON A DAILY BASIS; RIGHT?

13:43:33  14  **A.**  THAT IS CORRECT.

13:43:33  15  **Q.**  IT WAS ALSO THE JOB OF THE ARMY CORPS' QAR TO MONITOR ALL

13:43:38  16  PROCESSES AND ALERT HIS PROJECT ENGINEER OF ANY IMPERFECTIONS

13:43:41  17  OR THINGS THAT HE NEEDED TO BE CONCERNED ABOUT; RIGHT?

13:43:44  18  **A.**  THAT IS CORRECT.

13:43:45  19  **Q.**  NOW, BEFORE BEGINNING WORK ON THAT JOB, MCELWEE BROTHERS

13:43:50  20  SUBMITTED A CONTRACT QUALITY CONTROL PLAN TO THE CORPS FOR ITS

13:43:53  21  REVIEW AND APPROVAL; CORRECT?

13:43:55  22  **A.**  THAT IS CORRECT.

13:43:56  23  **Q.**  AND IN YOUR EXPERIENCE, ON THAT JOB, DOCUMENTS WENT BACK

13:43:59  24  AND FORTH BETWEEN MCELWEE BROTHERS AND THE CORPS EVERY DAY; IS

13:44:02  25  THAT RIGHT?

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:44:04    1    **A.**   THAT IS CORRECT.

13:44:05    2    **Q.**   AND THE CORPS HAD A GEOTECHNICAL ENGINEER ON THAT SITE,

13:44:09    3    DID THEY NOT, A MR. VOICHOVICH (PHONETIC)?

13:44:12    4    **A.**   MR. VOICHOVICH (PHONETIC) IS A GEOTECHNICAL ENGINEER THAT

13:44:14    5    WORKS IN THE NEW ORLEANS DISTRICT, BUT HE WASN'T ON THAT SITE

13:44:17    6    EVERY DAY, NO.

13:44:18    7    **Q.**   NOT EVERY DAY.  BUT HE WAS ON -- HE CAME TO THE SITE, DID

13:44:21    8    HE NOT?

13:44:22    9    **A.**   HE CAME A FEW VISITS, YES.

13:44:33   10    **Q.**   AND THERE CAME A TIME ON THAT JOB WHEN YOU DISAGREED,

13:44:36   11    MCELWEE BROTHERS DISAGREED -- MCELWEE BROTHERS, PARDON ME.  I

13:44:41   12    KNOW THAT'S THE WAY YOU PRONOUNCE IT -- DISAGREED WITH THE

13:44:43   13    DECISION BY THE ARMY CORPS TO PULL SHEET PILINGS BECAUSE OF

13:44:47   14    YOUR CONCERN THAT THAT WOULD -- IF YOU PULLED A PILE THAT --

13:44:51   15    AND THERE COULD BE SEEPAGE, THAT IT COULD TURN INTO SOMETHING

13:44:55   16    UNCONTROLLABLE RIGHT AT THE FLOODWALL.

13:44:58   17              AM I REMEMBERING THAT RIGHT?

13:45:00   18    **A.**   IT WASN'T SHEET PILING, IT WAS THE CONCRETE PILING WE'RE

13:45:03   19    TALKING ABOUT THAT THAT WAS THE CONCERN, BECAUSE THEY

13:45:07   20    PENETRATED LAYERS OF SOIL THAT WERE SATURATED WITH WATER FROM

13:45:12   21    THE CANAL.  AND ONCE THEY WERE REMOVED, THERE WAS A CONCERN

13:45:14   22    THAT WATER WOULD BEGIN TO FLOW AND WASH ITS WAY BACK TOWARDS

13:45:20   23    DWYER ROAD.  YES.

13:45:21   24    **Q.**   AND -- BUT YOU -- BUT THE CORPS INSISTED THAT YOU PULL

13:45:23   25    THEM AND YOU WENT AHEAD AND PULLED THEM, RIGHT?

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

| | | |
|---|---|---|
| 13:45:26 | 1 | **A.**   THAT IS CORRECT. |
| 13:45:27 | 2 | **Q.**   BECAUSE THAT'S WHAT THE CORPS TOLD YOU TO DO? |
| 13:45:29 | 3 | **A.**   THAT IS CORRECT. |
| 13:45:55 | 4 | **Q.**   ARE YOU FAMILIAR WITH THE INDEPENDENT LEVEE INVESTIGATION |
| 13:45:56 | 5 | TEAM THAT WAS HEADED UP BY DR. ROBERT BEA? |
| 13:46:04 | 6 | **A.**   I'M FAMILIAR WITH DR. ROBERT BEA AND DAVID ROSENBERG.  YOU |
| 13:46:09 | 7 | SAY *THE TEAM*.  I DON'T KNOW NOTHING ABOUT THE REST OF ANY OTHER |
| 13:46:13 | 8 | INDIVIDUALS. |
| 13:46:13 | 9 | **Q.**   BUT YOU KNEW THAT DR. BEA HEADED UP AN INDEPENDENT LEVEE |
| 13:46:17 | 10 | INVESTIGATION TEAM; RIGHT? |
| 13:46:18 | 11 | **A.**   I HEARD THAT IN THE NEWS, YES. |
| 13:46:21 | 12 | **Q.**   OKAY.  AND YOU KNEW -- YOU LEARNED, JUST PRIOR TO YOUR |
| 13:46:27 | 13 | DEPOSITION, ISN'T IT TRUE, THAT MCELWEE BROTHERS WAS MENTIONED |
| 13:46:32 | 14 | IN THAT ILIT, INDEPENDENT LEVEE INVESTIGATION TEAM REPORT -- |
| 13:46:38 | 15 | **A.**   YES -- |
| 13:46:38 | 16 | **Q.**   -- IS THAT CORRECT? |
| 13:46:38 | 17 | **A.**   -- THAT'S CORRECT. |
| 13:46:39 | 18 | **Q.**   YOU DIDN'T KNOW IT BEFORE THAT; IS THAT RIGHT? |
| 13:46:41 | 19 |         BEFORE THE SUBPOENA THAT WAS SENT TO YOU IN WHICH IT |
| 13:46:43 | 20 | WAS MENTIONED THAT HAD INTERROGATORIES DIRECTED TO YOU. |
| 13:46:46 | 21 | **A.**   YOU MEAN BEFORE MY DEPOSITION? |
| 13:46:48 | 22 | **Q.**   BEFORE YOUR DEPOSITION YOU GOT INTERROGATORIES; DO YOU |
| 13:46:51 | 23 | RECALL THAT? |
| 13:46:52 | 24 | **A.**   YES, I DO. |
| 13:46:54 | 25 | **Q.**   ISN'T IT TRUE THAT BEFORE YOU GOT THAT -- THOSE |

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:46:59   1   INTERROGATORIES, YOU DIDN'T KNOW THAT MCELWEE BROTHERS WAS

13:47:03   2   MENTIONED IN THE ILIT REPORT?

13:47:08   3   **A.**   I CAN'T RECALL MY ANSWER BACK THAT FAR AWAY AND HOW I

13:47:13   4   RESPONDED.  AND, REALLY, I CAN'T REMEMBER NOW HOW I ANSWERED

13:47:16   5   THAT.

13:47:19   6           **THE COURT:**  WHEN IS THE FIRST TIME YOU RECOLLECT

13:47:22   7   BEING AWARE THAT MCELWEE BROTHERS WAS MENTIONED IN THE ILIT

13:47:27   8   REPORT?  DO YOU RECALL?

13:47:29   9           **THE WITNESS:**  NO, SIR.

13:47:32   10          **MR. TREEBY:**  IF YOU WOULD PULL UP -- I BELIEVE IT'S A

13:47:35   11  VIDEO CLIP, VOLUME I, 325, 7 THROUGH 19.  325, 7 THROUGH 19.

13:42:32   12          (WHEREUPON, THE VIDEO CLIP WAS PLAYED AS FOLLOWS:)

13:47:51   13          "Q.  DID PROFESSOR BEA ASK YOU TO BE INVOLVED IN WHAT

13:47:55   14      HE HAS SUBSEQUENTLY CALLED THE ILIT INVESTIGATION AND

13:47:57   15      REPORT?

13:48:00   16          "A.  IS THAT FOR THE LEVEE INVESTIGATION TEAM, THAT

13:48:03   17      BIG REPORT THAT WE'RE TALKING ABOUT?

13:48:06   18          "Q.  YES.

13:48:06   19          "A.  NO, HE DIDN'T.  IN FACT, I DIDN'T EVEN KNOW

13:48:09   20      MCELWEE BROTHERS WAS IN THAT REPORT UNTIL YOU MENTIONED IT

13:48:12   21      DURING A DISCOVERY REQUEST AND YOU SAID DR. BEA MENTIONS

13:48:15   22      THIS COMPANY AT THIS PAGE.  THAT WAS MY FIRST TIME EVER

13:48:17   23      KNOWING THAT MCELWEE BROTHERS WAS INVOLVED IN THAT REPORT.

13:48:19   24          (WHEREUPON, THE VIDEO CLIP WAS CONCLUDED.)

           25

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:48:19  1  **BY MR. TREEBY:**

13:48:21  2  **Q.**  DOES THAT REFRESH YOUR RECOLLECTION?

13:48:22  3  **A.**  YES, IT DOES.

13:48:24  4  **Q.**  OKAY.  NOW, IN FACT, YOU COMMUNICATED WITH DR. ROBERT BEA

13:48:29  5  PERSONALLY PRIOR TO THE PUBLICATION OF THE ILIT REPORT; IS THAT

13:48:33  6  RIGHT?

13:48:33  7  **A.**  THAT'S CORRECT.

13:48:40  8  **Q.**  AND DR. BEA WAS, IN FACT, THE ONLY MEMBER OF THE ILIT TEAM

13:48:45  9  THAT YOU EVER HAD ANY FACE-TO-FACE CONTACT WITH; ISN'T THAT

13:48:48  10  CORRECT?

13:48:50  11  **A.**  I MENTIONED DR. BEA AND DAVID ROSENBERG.

13:48:53  12  **Q.**  BUT DAVID ROSENBERG ISN'T MENTIONED AS A PARTICIPANT IN

13:48:56  13  THE ILIT REPORT.  THAT WOULD MEAN THEN THAT DR. BEA WAS THE

13:49:02  14  ONLY PERSON YOU PERSONALLY HAD FACE-TO-FACE CONTACT WITH?

13:49:05  15  **A.**  YOU HAVE BETTER KNOWLEDGE OF THAT THAN I DO.

13:49:07  16  **Q.**  OKAY.  I'M TELLING -- I'M REPRESENTING IF THAT'S TRUE,

13:49:10  17  THEN HE WOULD BE THE ONLY ONE THAT YOU HAD PERSONAL CONTACT

13:49:12  18  WITH, DR. BEA.

13:49:14  19  **A.**  I HAD PERSONAL CONTACT WITH DR. BEA.

13:49:15  20  **Q.**  OKAY.

13:49:16  21      **MR. TREEBY:**  I'M GOING TO ASK THAT YOU PUT UP

13:49:19  22  JX-02032-0200 ON THE SCREEN IF YOU WOULD.

13:49:29  23  **BY MR. TREEBY:**

13:49:32  24  **Q.**  THAT'S THE FIRST PAGE OF THE REPORT.  AND WE'RE GOING TO

13:49:35  25  GO THEN TO PAGE 6-15 OF THE ILIT REPORT.  AND I'VE HIGHLIGHTED

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:49:44   1   SOME -- A SECTION HERE THAT I WOULD ASK BE PULLED UP.  IT'S

13:49:46   2   NEAR THE BOTTOM.

13:49:50   3           **MR. TREEBY:**  YES.  PULL THAT UP.

13:49:52   4   **BY MR. TREEBY:**

13:49:52   5   **Q.**   OKAY.  JUST FOR CONTEXT, THE PARAGRAPH ABOVE THE PARAGRAPH

13:49:58   6   BEGINNING "DEMONSTRATION," IT'S TALKING ABOUT:

13:50:01   7           "THE IHNC AT THE WEST END OF THE LOWER NINTH WARD

13:50:06   8   DISCUSSED IN THIS CURRENT SECTION AND IN SECTION 6.3.2" -- THE

13:50:10   9   NEXT WORD IS PROBABLY A TYPO.  I WON'T TRY TO PRONOUNCE IT --

13:50:14   10  "OF UNDERSEEPAGE DANGERS SHOULD BE DISCONTINUED IMMEDIATELY AND

13:50:19   11  UNDERSEEPAGE ANALYSES SHOULD BE REQUIRED FOR THE FULL REGIONAL

13:50:24   12  FLOOD PROTECTION SYSTEM."

13:50:25   13          AND HERE'S WHERE I WANTED TO TAKE YOU.  THIS NEXT

13:50:25   14  SECTION.

13:50:26   15          "DEMONSTRATION THAT UNDERSEEPAGE OCCURRED AT THIS

13:50:29   16  SITE CAN BE BASED ON ARGUMENTS OF ANALOGOUS CONDITIONS AND

13:50:33   17  LEVEE PERFORMANCES AT THIS SITE AND AT THE LONDON AVENUE

13:50:35   18  DRAINAGE CANAL BREACH SITES, AS WELL AS AT THE SITE IMMEDIATELY

13:50:41   19  TO THE NORTH, AS DESCRIBED IN THE NEXT SECTION."

13:50:43   20          AND WE'LL GET THERE IN A MINUTE.  THAT'S THE NORTH

13:50:43   21  BREACH.

13:50:44   22          "IT CAN ALSO BE BASED ON THE OBSERVED DIFFICULTIES

13:50:48   23  ENCOUNTERED BY MCELWEE CONSTRUCTION IN DEWATERING AN EXCAVATION

13:50:53   24  NEAR THE BREACH SITE IMMEDIATELY TO THE NORTH" -- THE BREACH

13:50:56   25  SITE AT THE NORTH BREACH SITE -- "DUE TO MASSIVE UNDERSEEPAGE

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:50:58   1   FLOW THROUGH THE MARSH DEPOSITS THAT WERE NOT ADEQUATELY CUT

13:51:04   2   OFF AT THAT SITE EITHER."

13:51:06   3           THAT WAS FROM THE ILIT REPORT.  AND I ASKED YOU THIS

13:51:07   4   AT YOUR DEPOSITION, BUT LET ME ASK YOU THIS NOW:  THAT

13:51:09   5   STATEMENT, AS IT PERTAINS TO MCELWEE BROTHERS, ISN'T TRUE, IS

13:51:14   6   IT?

13:51:15   7           **THE COURT:**  DO YOU WANT TO LEAVE IT UP THERE SO HE

13:51:17   8   CAN LOOK AT IT?

13:51:18   9           **MR. TREEBY:**  YEAH.  SURE.

13:51:20  10           **THE COURT:**  IT DISAPPEARED.  I KNOW YOU DIDN'T DO

13:51:22  11   ANYTHING, IT'S JUST GONE.  BUT HE OUGHT TO BE ABLE TO LOOK AT

13:51:26  12   IT.

13:51:26  13           **MR. TREEBY:**  YES.

13:51:26  14           **THE WITNESS:**  THAT STATEMENT AS IT RELATES TO MCELWEE

13:51:28  15   BROTHERS, I DIDN'T DO THAT REPORT.  AND WHATEVER THE TEAM WAS

13:51:31  16   TRYING TO EXPLAIN, I THINK THEY CAN PROBABLY GIVE YOU THE

13:51:34  17   BETTER ANSWER OF WHAT THEY WERE DOING AT THAT TIME.

13:51:38  18           I DON'T KNOW.

13:51:38  19   BY MR. TREEBY:

13:51:39  20   **Q.**  DO YOU RECALL ANSWERING INTERROGATORIES THAT WE SUBMITTED

13:51:43  21   TO YOU, DISCOVERY REQUESTS THAT WE SUBMITTED TO YOU?

13:51:45  22   **A.**  YES.

13:51:45  23           **MR. TREEBY:**  OKAY.  WOULD YOU PULL UP, PLEASE,

13:51:48  24   JX-02032-0197?

13:52:03  25           OH, THAT IS IT.  OKAY.  THAT'S -- I'M SORRY.  I

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:52:05   1   GAVE YOU THE WRONG -- LET'S NOT -- I'VE GOT A WRONG REFERENCE

13:52:11   2   THERE.  I'M SORRY.

13:52:12   3        LET'S PULL UP VOLUME I OF HIS DEPOSITION.  LET ME

13:52:17   4   MAKE SURE.  242, 18 THROUGH -- THAT'S GOING TO BE THE WRONG

13:52:23   5   REFERENCE AS WELL.  I NEED THE DISCOVERY RESPONSE.

13:52:26   6   **BY MR. TREEBY:**

13:53:20   7   **Q.**   THIS IS YOUR RESPONSE NO. 7.

13:53:21   8        **MR. TREEBY:**  AND I'M GOING TO ASK THE OPERATOR TO

13:53:24   9   HIGHLIGHT THAT AND PULL IT UP.

13:53:26   10  **BY MR. TREEBY:**

13:53:30   11  **Q.**   DO YOU RECALL THAT BEING YOUR RESPONSE TO OUR REQUEST?

13:53:33   12  **A.**   YES, I DO.

13:53:35   13        "MCELWEE BROTHERS HAS NOT CONDUCTED OR ATTEMPTED TO

13:53:40   14  CONDUCT EXCAVATION ALONG THE INDUSTRIAL CANAL'S EAST BANK

13:53:44   15  BETWEEN FLORIDA AND CLAIBORNE AVENUES.  MCELWEE BROTHERS HAS

13:53:48   16  CONDUCTED EXCAVATIONS ALONG THE INDUSTRIAL CANAL'S EAST BANK

13:53:52   17  NORTH OF FLORIDA AND CLAIBORNE AVENUES.  MCELWEE BROTHERS" --

13:53:56   18  **Q.**   OKAY.

13:53:57   19  **A.**   THAT'S THE DWYER ROAD PROJECT NORTH OF --

13:54:04   20  **Q.**   RIGHT.  OKAY.

13:54:08   21        **MR. TREEBY:**  NOW, LET'S PULL UP JX-02032-0197.  THIS

13:54:14   22  IS FROM THE ILIT REPORT, SECTION 6-12.

13:54:47   23  **BY MR. TREEBY:**

13:54:47   24  **Q.**   THIS IS -- AND I'LL READ IT.  I THINK YOU CAN READ IT,

13:54:50   25  TOO.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


13:54:51   1        "IN ADDITION, PERSISTENT REPORTS OF UNDERSEEPAGE AND

13:54:53   2  PONDING OF WATERS ALONG THIS IHNC FRONTAGE" -- I REPRESENT TO

13:54:57   3  THE COURT THAT THIS IS IN THE REPORT REFERRING TO THE SOUTH

13:55:00   4  BREACH FRONTAGE -- "AT THE WEST EDGE OF THE LOWER NINTH WARD

13:55:06   5  AND CONTRACTOR'S SIGNIFICANT PROBLEMS WITH DEWATERING OF

13:55:09   6  EXCAVATIONS ALONG THIS SAME FRONTAGE, ALL BESPOKE OF HIGH

13:55:13   7  LATERAL PERMEABILITY WITHIN THESE STRATA."

13:55:17   8        NOW, IF THE ILIT REPORT THERE IS REFERRING TO WHAT

13:55:19   9  THE MCELWEE BROTHERS DID AT DWYER ROAD, THAT WOULD NOT BE A

13:55:23  10  CORRECT STATEMENT; ISN'T THAT TRUE?

13:55:24  11  **A.**  I DID NOT WRITE THAT REPORT.  WHOEVER WROTE IT CAN EXPLAIN

13:55:28  12  IT BETTER.  I CAN'T MAKE THAT INTERPRETATION OF WHAT THEY WERE

13:55:29  13  TALKING ABOUT.

13:55:29  14        **THE COURT:**  WELL, I'M TRYING TO FIGURE OUT WHAT'S NOT

13:55:32  15  CORRECT.  ARE YOU TALKING ABOUT THE LOCATION OR THE FACT --

13:55:35  16        **MR. TREEBY:**  THE LOCATION.

13:55:36  17        **THE COURT:**  OKAY.  THE COURT UNDERSTANDS THAT THE

13:55:37  18  ONLY -- AS HE'S TESTIFIED SEVERAL TIMES, THAT THE ONLY WORK

13:55:40  19  HE'S DONE WOULD BE NORTH -- AS MCELWEE BROTHERS IS NORTH 2.8

13:55:49  20  MILES ALONG THE DWYER ROAD PROJECT.

13:55:53  21        **MR. TREEBY:**  RIGHT.  AND I GUESS THE PURPOSE OF THIS,

13:55:53  22  AND WE CAN USE IT WITH SOMEONE ELSE.  LET ME CALL UP ONE MORE

13:55:59  23  PAGE AND -- JUST TO ILLUSTRATE.  THE BASIS FOR THESE STATEMENTS

13:56:02  24  IN THE ILIT REPORT WERE ATTRIBUTED TO MCELWEE BROTHERS.

13:56:05  25        AND LET'S PULL UP 6 -- 0203-- JX-02032-0203.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

13:56:15   1   **BY MR. TREEBY:**

13:56:16   2   **Q.**   PERHAPS THIS IS THE CLEAREST STATEMENT TAKEN -- EVEN TAKEN

13:56:21   3   OUT OF CONTEXT.

13:56:22   4          "THIS SITE HAS A WELL DOCUMENTED HISTORY OF

13:56:30   5   UNDERSEEPAGE PROBLEMS.  MCELWEE HAD GREAT DIFFICULTY DEWATERING

13:56:36   6   AN EXCAVATION AT THIS SITE," SPEAKING OF THE SOUTH BREACH.

13:56:40   7          ACTUALLY, THIS IS SPEAKING OF NORTH BREACH.  I'M

13:56:42   8   SORRY.  THIS IS SPEAKING OF THE NORTH BREACH IN THAT SECTION OF

13:56:46   9   THE ILIT REPORT.

13:56:47   10         AND LET ME JUST ASK YOU THIS:  AWAY FROM THE ILIT

13:56:51   11  REPORT, YOU DIDN'T HAVE ANYBODY IN THE NEIGHBORHOOD OF THE

13:56:55   12  LOWER NINTH WARD, AM I CORRECT, REPORTING PONDING OR SEEPAGE AT

13:57:00   13  THE FLOODWALL IN THE -- ADJACENT TO THE EAST BANK INDUSTRIAL

13:57:08   14  AREA BETWEEN FLORIDA AND CLAIBORNE AVENUE?  ISN'T THAT TRUE?

13:57:11   15  **A.**   I BELIEVE I ANSWERED THAT IN THE INTERROGATORY.

13:57:12   16  **Q.**   RIGHT.

13:57:12   17  **A.**   I'VE BEEN SAYING THAT ALL ALONG.  I -- THE PROJECT THAT

13:57:15   18  MCELWEE BROTHERS DEALT WITH WAS NORTH OF CLAIBORNE AVENUE.

13:57:21   19  **Q.**   OKAY.

13:57:21   20         **THE COURT:**  THE COURT'S GOT THE -- GOT THE POINT.

13:57:30   21  **BY MR. TREEBY:**

13:57:31   22  **Q.**   NOW, WOULD I BE CORRECT IN CONCLUDING, MR. MCELWEE, THAT

13:57:38   23  YOU MIGHT HAVE SOME PERSONAL ANIMOSITY AGAINST THE CORPS OF

13:57:42   24  ENGINEERS?

13:57:43   25  **A.**   YOU WOULD BE INACCURATE IN SAYING THAT.  IN FACT, I'VE

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

| | | |
|---|---|---|
| 13:57:46 | 1 | WORKED WELL WITH THE CORPS.  CURRENTLY, I WORK FOR JAMES |
| 13:57:50 | 2 | CONSTRUCTION GROUP AND WE DO FLOODWALL PROJECTS WITH THE CORPS |
| 13:57:53 | 3 | WITH SOME OF THE SAME PERSONNEL. |
| 13:57:54 | 4 | **Q.**   ISN'T IT -- |
| 13:57:55 | 5 | **A.**   SO I HAVE NO ANIMOSITY AGAINST THE CORPS.  I'M A RETIRED |
| 13:57:59 | 6 | U.S. ARMY ENGINEER, SO I HAVE NO ANIMOSITY AGAINST THE ARMY. |
| 13:58:02 | 7 | **Q.**   ISN'T IT TRUE THAT YOU LOST OVER -- ALMOST $2 MILLION IN |
| 13:58:06 | 8 | CONNECTION WITH BEING TERMINATED OFF THIS DWYER ROAD PROJECT BY |
| 13:58:10 | 9 | THE CORPS? |
| 13:58:11 | 10 | **A.**   THERE WAS A FINANCIAL LOSS WHEN DEALING WITH THAT PROJECT. |
| 13:58:14 | 11 | **Q.**   ABOUT $2 MILLION? |
| 13:58:14 | 12 | **A.**   BECAUSE OF THE DISPUTE OF SOIL CONDITIONS, YES. |
| 13:58:17 | 13 | **Q.**   AND THAT WAS WITH THE CORPS; IS THAT CORRECT? |
| 13:58:19 | 14 | **A.**   THAT IS CORRECT.  UH-HUH. |
| 13:58:20 | 15 | **Q.**   AND, IN FACT, YOU THEN HAD LITIGATION THAT INVOLVED THE |
| 13:58:24 | 16 | CORPS OF ENGINEERS; ISN'T THAT CORRECT? |
| 13:58:27 | 17 | **A.**   THAT IS CORRECT. |
| 13:58:28 | 18 | **Q.**   AND YOU ALSO HAD LITIGATION WITH YOUR BONDING COMPANY; |
| 13:58:31 | 19 | ISN'T THAT CORRECT? |
| 13:58:32 | 20 | **A.**   THAT IS CORRECT. |
| 13:58:33 | 21 | **Q.**   AND THAT ALL CAME OUT OF THIS DWYER ROAD PROJECT; RIGHT? |
| 13:58:37 | 22 | **A.**   THAT ALL CAME OUT OF THE DISPUTE OF SOIL CONDITIONS ABOUT |
| 13:58:40 | 23 | THIS PROJECT, YES. |
| 13:58:41 | 24 | **Q.**   AND, IN FACT, YOU HAVE SAID THAT YOU HAVE BEEN CRIPPLED AS |
| 13:58:44 | 25 | A RESULT OF WHAT HAPPENED WITH THE CORPS; ISN'T THAT RIGHT? |

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

13:58:48   1   **A.**   PLEASE REMIND ME.  IT'S BEEN A WHILE SINCE I SAID THAT.

13:58:53   2   **Q.**   I'LL BE HAPPY TO.

13:42:32   3           (WHEREUPON, THE VIDEO CLIP WAS PLAYED AS FOLLOWS:)

13:58:53   4           "A.  I'VE BEEN CRIPPLED AS A RESULT OF WHAT'S

13:58:56   5       HAPPENED WITH THE CORPS."

13:58:57   6           (WHEREUPON, THE VIDEO CLIP WAS CONCLUDED.)

13:42:32   7   **BY MR. TREEBY:**

13:59:09   8   **Q.**   DO YOU RECALL BEING SANCTIONED, IN FACT BY THIS VERY

13:59:12   9   COURT, AND PAYING $10,000 IN SANCTIONS FOR -- IN CONNECTION

13:59:14   10  WITH THAT LITIGATION?

13:59:16   11  **A.**   I RECALL THAT VERY WELL.

13:59:18   12          **MR. TREEBY:**  NO FURTHER QUESTIONS, YOUR HONOR.

13:59:20   13          **THE COURT:**  SIR, REDIRECT?

13:59:22   14              OH, I'M SORRY.  EXCUSE ME, MR. SMITH.  I

13:59:24   15  APOLOGIZE.

13:59:26   16          **MR. SMITH:**  THANK YOU, YOUR HONOR.

13:59:27   17          **THE COURT:**  YOU'VE BEEN SO QUIET.  I KNEW THAT WASN'T

13:59:31   18  GOING TO LAST.  I MISSED YOU.  I MISSED YOU.  GO AHEAD.

13:59:43   19          **MR. SMITH:**  YOUR HONOR, I WAS GOING TO GIVE TO YOUR

13:59:44   20  LAW CLERK SOME OF THE IMPEACHMENT MATERIALS.

13:59:47   21          **THE COURT:**  YEAH.  THAT WOULD BE HELPFUL.

13:59:47   22          **MR. SMITH:**  WE DIDN'T EXPECT THIS WITNESS THIS EARLY,

13:59:50   23  AND SO WE DIDN'T PROVIDE IT TO YOU.

13:59:50   24          **THE COURT:**  RIGHT.  I KNOW.  HE WAS LISTED FOR --

           25

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

|  |  |  |
|---|---|---|
| 13:59:52 | 1 | **CROSS-EXAMINATION** |
| 13:59:56 | 2 | **BY MR. SMITH:** |
| 13:59:57 | 3 | **Q.**   GOOD AFTERNOON.  IS IT MR. MCELWEE? |
| 13:59:59 | 4 | **A.**   THAT'S GOOD.  THAT'S FINE. |
| 14:00:00 | 5 | **Q.**   MY NAME IS ROBIN SMITH. |
| 14:00:02 | 6 | **A.**   YES, SIR. |
| 14:00:02 | 7 | **Q.**   AND I REPRESENT THE UNITED STATES. |
| 14:00:03 | 8 |      WE HAVE NOT MET BEFORE, HAVE WE? |
| 14:00:05 | 9 | **A.**   NO, SIR.  NOT TO MY KNOWLEDGE. |
| 14:00:07 | 10 | **Q.**   I WAS NOT AT YOUR DEPOSITION. |
| 14:00:09 | 11 | **A.**   OKAY.  WE'VE NEVER MET BEFORE. |
| 14:00:12 | 12 | **Q.**   I DON'T EXPECT YOU TO REMEMBER EVERYBODY WHO WAS IN THE |
| 14:00:14 | 13 | ROOM, BUT I WAS NOT THERE, AND THIS IS THE FIRST TIME WE'VE |
| 14:00:17 | 14 | MET.  IT'S GOOD TO MEET YOU, SIR. |
| 14:00:18 | 15 | **A.**   YES, SIR. |
| 14:00:19 | 16 | **Q.**   YOU CONTACTED DR. BEA SHORTLY AFTER HURRICANE KATRINA; |
| 14:00:21 | 17 | ISN'T THAT CORRECT? |
| 14:00:22 | 18 | **A.**   THAT IS CORRECT. |
| 14:00:23 | 19 | **Q.**   AND YOU REACHED OUT TO DR. BEA BECAUSE OF STATEMENTS BY |
| 14:00:28 | 20 | PEOPLE IN THE MEDIA SAYING THEY DIDN'T KNOW WHY THE LEVEES HAD |
| 14:00:32 | 21 | FAILED; ISN'T THAT CORRECT? |
| 14:00:36 | 22 | **A.**   I'M NOT SURE, BUT I BELIEVE IT WAS, YES. |
| 14:00:42 | 23 | **Q.**   OKAY.  IN FACT, YOU FOUND THOSE STATEMENTS TO BE |
| 14:00:48 | 24 | PREPOSTEROUS; DIDN'T YOU? |
| 14:00:50 | 25 | **A.**   YES. |

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


14:00:51   1   **Q.**   BECAUSE YOU THOUGHT EVERYBODY WHO DEALT WITH THE CORPS WAS

14:00:54   2   VERY FAMILIAR WITH WHAT HAD HAPPENED, DIDN'T YOU?

14:00:56   3   **A.**   THEY WERE AWARE, YES.

14:00:57   4   **Q.**   AND YOU -- IN FACT, WHEN YOU CONTACTED DR. BEA, YOU TOLD

14:00:59   5   HIM THAT YOU CONSIDERED THAT TO BE FOOLISHNESS.

14:01:02   6   **A.**   WHAT TO BE FOOLISHNESS?

14:01:04   7   **Q.**   PEOPLE IN THE MEDIA SAYING THEY DIDN'T KNOW WHAT HAD

14:01:06   8   CAUSED THE LEVEES TO FAIL.

14:01:10   9   **A.**   PEOPLE IN THE MEDIA -- I'M NOT GOING TO SAY THAT.  IT

14:01:14  10   WAS -- IF THE STATEMENTS WERE MADE BY CORPS OF ENGINEERS

14:01:20  11   PERSONNEL, THAT THEY WERE UNAWARE OF WHY THOSE LEVEES FAILED, I

14:01:23  12   MAY HAVE MADE THAT STATEMENT.  YES.

14:01:25  13   **Q.**   AND, IN FACT, YOU SAID TO DR. BEA, "DR. BEA, WE'RE ALL

14:01:28  14   TRAINED IN THIS.  HOW CAN SOMEBODY NOT KNOW?"

14:01:33  15           DO YOU RECALL SAYING THAT TO DR. BEA?

14:01:35  16   **A.**   YES.

14:01:38  17   **Q.**   AND THAT WAS WITHIN -- THAT WAS BEFORE THE MIDDLE OF

14:01:42  18   OCTOBER OF 2005; CORRECT?  THAT WAS SHORTLY AFTER THE

14:01:45  19   HURRICANE?

14:01:47  20   **A.**   THAT WAS SHORTLY AFTER THE HURRICANE.  THAT'S CORRECT.

14:01:54  21   **Q.**   AND HOW DID YOU FIRST MAKE CONTACT WITH DR. BEA?

14:01:56  22   **A.**   I CAN'T RECALL EXACTLY HOW.  I DON'T KNOW IF IT WAS E-MAIL

14:02:00  23   OR A TELEPHONE CALL.  THAT, I DON'T KNOW.

14:02:02  24   **Q.**   YOU DIDN'T KNOW DR. BEA PRIOR TO HURRICANE KATRINA, DID

14:02:04  25   YOU?

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


14:02:04   1   **A.**   NO, I DIDN'T.

14:02:06   2   **Q.**   DID YOU REACH OUT TO HIM OR DID HE REACH OUT TO YOU

14:02:09   3   INITIALLY?

14:02:14   4   **A.**   I BELIEVE THAT WHEN HE CAME DOWN AND THE MEDIA MENTIONED

14:02:19   5   AN INVESTIGATION TEAM LOOKING, I SAW DR. BEA ON THE TELEVISION.

14:02:24   6       WHEN I SAW HIM ON THE TELEVISION, SOMETHING ABOUT HE

14:02:26   7   WAS LOOKING FOR -- DOING SOME ANALYSIS WITH SOME WORK ALONG THE

14:02:37   8   LEVEE PROTECTION SYSTEMS, AND THAT'S WHEN I MADE CONTACT WITH

14:02:39   9   HIM.

14:02:39  10   **Q.**   AND THAT LED YOU TO CONTACT HIM BECAUSE YOU THOUGHT YOU

14:02:42  11   MIGHT HAVE SOME INFORMATION THAT COULD ASSIST HIM IN HIS

14:02:44  12   INVESTIGATION; CORRECT?

14:02:46  13   **A.**   WHAT LED ME TO CONTACT HIM WAS MY PRIOR -- WORKING WITH

14:02:49  14   THE CORPS OF ENGINEERS, AND AS AN EMPLOYEE, WHENEVER HURRICANES

14:02:55  15   WERE COMING AND THREATENING THE NEW ORLEANS AREA, ALL THE

14:02:57  16   ENGINEERS WOULD LEAVE.

14:02:58  17       AND THEY FULLY EXPLAINED THAT, "MELVIN, THESE ARE

14:03:03  18   SURGE PROTECTION LEVEES AND THEY'RE NOT FOR HIGH WATERS TO BE

14:03:07  19   SITTING UP AGAINST THEM FOR LONG PERIODS."

14:03:09  20       AND I FIGURED IF THE CORPS KNEW THAT, THEN THE PUBLIC

14:03:12  21   SHOULD HAVE KNOWN IT.  AND HOW COULD SOMEBODY BE IN THE MEDIA

14:03:15  22   SAYING THEY DIDN'T KNOW WHAT WAS GOING ON, AND THEY KNEW

14:03:18  23   EXACTLY WHAT THE POTENTIALS COULD RESULT -- WHAT THE POTENTIAL

14:03:23  24   COULD BE.

14:03:23  25   **Q.**   RIGHT.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


14:03:24    1              AND WHAT YOU THOUGHT THE POTENTIAL WAS, THAT HAD BEEN

14:03:27    2     REALIZED, WAS THAT UNDERSEEPAGE HAD UNDERMINED THESE LEVEES AND

14:03:31    3     CAUSED THE BREACH; ISN'T THAT CORRECT?

14:03:36    4     **A.**   UNDERSEEPAGE?

14:03:38    5     **Q.**   SEEPAGE UNDER THE LEVEE HAD CAUSED THE BREACH FAILURES IN

14:03:42    6     NEW ORLEANS DURING HURRICANE KATRINA.  THAT'S WHAT YOU THOUGHT

14:03:45    7     EVERYBODY KNEW -- SHOULD KNOW, AND THAT'S WHY YOU CONSIDERED IT

14:03:50    8     FOOLISHNESS?

14:03:50    9     **A.**   YOU SAID *EVERYBODY*.  THE CORPS OF ENGINEERS' EMPLOYEES,

14:03:52   10     ENGINEERS, AND QUALITY ASSURANCE REPS, YES.

14:03:56   11     **Q.**   AND THAT'S WHAT YOU THOUGHT HAD HAPPENED; CORRECT?  YOU

14:04:01   12     THOUGHT THAT WAS OBVIOUS.  YOU THOUGHT EVERYBODY ASSOCIATED

14:04:03   13     WITH THE CORPS SHOULD KNOW THAT; CORRECT?

14:04:06   14              **THE COURT:**  THE QUESTION IS:  UNDERSEEPAGE -- YOU

14:04:07   15     THINK EVERYBODY IN THE CORPS SHOULD HAVE KNOWN THAT

14:04:09   16     UNDERSEEPAGE WAS THE PRINCIPAL CAUSE OF THE FAILURE OF THE

14:04:11   17     LEVEES IN NEW ORLEANS?  THAT'S THE QUESTION.

14:04:14   18              **THE WITNESS:**  THAT WAS A POSSIBILITY.  SEEPAGE IS A

14:04:15   19     POSSIBILITY, YES.  BECAUSE THE LEVEES ARE CONSTRUCTED ABOVE

14:04:19   20     UNSTABLE SOILS.  SOME OF THEM ARE CONSTRUCTED ON GEO-TEXTILE

14:04:24   21     BLANKETS, WHICH THE LEVEES ARE CLAY MATERIAL, AND THE CLAY

14:04:27   22     DOESN'T GO DOWN DEEP ENOUGH, AND NEITHER DOES THE SHEET PILE GO

14:04:31   23     DOWN DEEP ENOUGH.

14:04:32   24              SO, YES, ANYONE WORKING IN THE CORPS THAT WAS A

14:04:35   25     QUALITY ASSURANCE REP AND AN ENGINEER SHOULD HAVE HAD KNOWLEDGE

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


| 14:04:39 | 1 | THAT THERE WAS A POTENTIAL FOR UNDERSEEPAGE OF THE FLOOD |

14:04:39   1   THAT THERE WAS A POTENTIAL FOR UNDERSEEPAGE OF THE FLOOD

14:04:43   2   PROTECTION SYSTEM.

14:04:43   3   **BY MR. SMITH:**

14:04:43   4   **Q.**   AND THAT'S WHAT LED YOU TO CONTACT DR. BEA, TO MAKE HIM

14:04:47   5   AWARE OF THAT KNOWLEDGE THAT YOU HAD; CORRECT?

14:04:51   6   **A.**   NO, NOT TO MAKE HIM AWARE OF THE KNOWLEDGE.  IT WAS THE

14:04:53   7   STATEMENTS BEING MADE IN THE MEDIA THAT NOBODY KNEW WHAT WAS

14:04:57   8   GOING ON.

14:04:58   9        IN FACT, YOU KNOW, LOOK AT HURRICANE ISAAC RIGHT NOW.

14:05:03   10   THERE'S SOME STUDIES DONE BY THE CORPS ON WHAT COULD FLOOD AND

14:05:06   11   WHAT COULD NOT FLOOD.  THEY KEEP FLOOD MAPS.  AND THEY KNOW WAY

14:05:10   12   AHEAD OF TIME.  NOW, WHETHER THEY LET THE PUBLIC KNOW, THAT'S

14:05:13   13   THEM.

14:05:14   14   **Q.**   IN FACT, AFTER YOU CONTACTED DR. BEA BY PHONE, YOU

14:05:18   15   CONTACTED HIM BY E-MAIL.  AND THEN YOU SENT HIM A PORTION OF A

14:05:22   16   TRAINING MANUAL THAT YOU HAD IN YOUR POSSESSION FROM A COURSE

14:05:28   17   YOU HAD TAKEN AS A CORPS EMPLOYEE; ISN'T THAT CORRECT?

14:05:30   18   **A.**   I BELIEVE THAT SOME OF THAT TRAINING MANUAL HAS BEEN PUT

14:05:33   19   IN AS AN EXHIBIT, YES.

14:05:34   20   **Q.**   RIGHT.

14:05:35   21        AND THAT CHAPTER THAT YOU SENT TO HIM, DO YOU RECALL

14:05:36   22   WHAT THE TITLE OF THAT CHAPTER WAS?

14:05:40   23   **A.**   NO, I DON'T.  COULD YOU REMIND ME?

14:05:47   24   **Q.**   WELL, LET'S PUT IT UP ON THE SCREEN.

14:05:50   25        **MR. SMITH:**  THAT'S MCELWEE EXHIBIT NUMBER 8.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


14:05:55    1        I'M SORRY.  THAT'S THE WRONG EXHIBIT NUMBER.

14:05:55    2  TAKE THAT DOWN.

14:05:56    3        IT'S EXHIBIT NUMBER 5, YOUR HONOR.

14:06:23    4        **THE COURT:**  YES, SIR.

14:06:29    5        **MR. SMITH:**  TURN TO PX-109, PAGE 17.

14:06:45    6  **BY MR. SMITH:**

14:06:45    7  **Q.**  DOES THIS REFRESH YOUR MEMORY AS TO WHAT YOU SENT TO

14:06:48    8  DR. BEA?

14:06:49    9  **A.**  I'M FAMILIAR WITH THAT CHAPTER, YES.

14:06:50   10  **Q.**  AND THAT'S, IN FACT, A CHAPTER THAT YOU SELECTED TO SEND

14:06:53   11  TO DR. BEA AFTER YOU MADE CONTACT WITH HIM, ISN'T IT?

14:07:01   12  **A.**  I CAN'T RECALL EXACTLY WHAT I SENT AT WHAT TIME; BUT I

14:07:04   13  REMEMBER THAT CHAPTER AND I REMEMBER THAT EXHIBIT, YES.

14:07:13   14        AND I DON'T KNOW IF I SENT IT TO HIM DURING ANY TIME,

14:07:17   15  UNLESS HE SAW IT WHEN HE CAME IN.  BECAUSE THERE WAS A TIME HE

14:07:20   16  CAME IN TO SEE DOCUMENTS.

14:07:33   17        **MR. SMITH:**  LET'S TURN TO HIS EXHIBIT -- HIS

14:07:35   18  DEPOSITION TESTIMONY, PAGE 37, LINES 10 TO 22.

14:07:57   19        WE COULD ACTUALLY GO TO THE TOP OF THAT PAGE.

14:07:58   20  FRANKLY, LET'S JUST GO TO THE TOP OF THAT PAGE, DOWN TO 22.

14:08:02   21  THAT SETS THE CONTEXT.

14:08:03   22  **BY MR. SMITH:**

14:08:04   23  **Q.**  "DURING THAT TIME FRAME THERE WAS A BUNCH OF FLUFF IN THE

14:08:09   24  MEDIA.  PEOPLE WERE SAYING THEY DIDN'T KNOW IT.  AND I HAD

14:08:12   25  MENTIONED TO DR. BEA, 'EVERYBODY KNOWS THIS.'"

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

14:08:15  1          THEN LINE 13 YOU WERE ASKED:  "DO I GATHER THAT YOUR

14:08:20  2   SELECTION OF THESE PAGES, WHICH I HAVE ALREADY MARKED AS

14:08:22  3   EXHIBIT NO. 5, REPRESENT, IN YOUR MIND, A PORTION OF THAT

14:08:25  4   TRAINING?"

14:08:26  5          YOU SAY, "YES, THAT'S CORRECT."

14:08:27  6          AND THEN LOWER DOWN TO NUMBER 22:  "ALL RIGHT.

14:08:32  7   LET'S, IF YOU DON'T MIND, LOOK AT PAGE VII.1.1.  IT'S ENTITLED

14:08:40  8   'SEEPAGE AND GROUNDWATER CONTROL.'"

14:08:43  9          THE ANSWER IS:  "YES."

14:08:45  10          AND DO YOU SEE IN LINE 10 WHERE YOU SAY:  "AS AN

14:08:53  11   EXAMPLE, I SENT HIM OUR TRAINING -- A COPY OF WHAT WE'VE BEEN

14:08:57  12   TRAINED ON"?

14:08:59  13   A.   I SEE THAT, YES.

14:09:01  14   Q.   IN FACT, THIS IS THE CHAPTER THAT YOU SENT TO DR. BEA,

14:09:03  15   ISN'T IT?

14:09:06  16          THE COURT:  WELL, HE'S NOT LOOKING AT THAT NOW.  THE

14:09:09  17   ONE THAT YOU JUST SHOWED HIM.

14:09:10  18          THE WITNESS:  THE ONE YOU JUST SHOWED, YES.

14:09:12  19   BY MR. SMITH:

14:09:12  20   Q.   YES.

14:09:13  21          AND THAT'S WHAT YOU'RE REFERRING TO HERE IN YOUR

14:09:15  22   TESTIMONY, CORRECT, EXHIBIT NO. 5?

14:09:28  23          THE COURT:  THE SCREEN'S BLANK.

14:09:30  24          DO YOU WANT TO LOOK AT IT AGAIN?

14:09:33  25          THE WITNESS:  YEAH, I WANT TO LOOK AT IT.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


14:09:35   1          **MR. SMITH:**  DO YOU NEED TO SEE -- DO YOU NEED TO SEE

14:09:36   2  THE DOCUMENT?

14:09:37   3          **THE COURT:**  YEAH.  CAN YOU JUST PUT EXHIBIT NO 5 --

14:09:38   4  YEAH.

14:09:40   5          **MR. SMITH:**  YEAH.  LET'S PUT EXHIBIT 5 BACK UP.

14:09:42   6          **THE COURT:**  IS THAT THE DOCUMENT THAT YOU WERE

14:09:43   7  REFERRING TO IN THE DEPOSITION?

14:09:45   8          **THE WITNESS:**  YES, SIR.

14:09:46   9          **MR. SMITH:**  THANK YOU.

14:09:54  10  BY MR. SMITH:

14:09:55  11  **Q.**   BEFORE THAT -- DID YOU TELL DR. BEA ABOUT YOUR EXPERIENCE

14:10:02  12  AT DWYER ROAD DURING THAT FIRST PHONE CALL?

14:10:07  13  **A.**   IN THE FIRST PHONE CALL, I DIDN'T TELL HIM A LOT OF

14:10:11  14  ANYTHING.  DR. BEA CAME UP AND VISITED AND THAT'S WHEN HE

14:10:16  15  SAW -- WE DID A LOT OF TALKING.  WE SPENT A COUPLE OF HOURS

14:10:21  16  TOGETHER IN THE CONFERENCE ROOM HAVING SOME DISCUSSIONS.

14:10:24  17          BUT WE DIDN'T DO A LOT OF TALKING -- YOU SAY *THE*

14:10:26  18  *FIRST PHONE CALL.*  I CAN'T REMEMBER WHETHER IT WAS A PHONE CALL

14:10:29  19  OR AN E-MAIL THAT WE FIRST INITIALLY MADE CONTACT WITH.  I'M

14:10:32  20  NOT POSITIVE OF THAT.  BUT THERE WAS NO LONG DISCUSSIONS IN

14:10:35  21  THAT FIRST CONTACT.  IT WAS ONLY AFTER WE MET AND WE SAT FOR A

14:10:40  22  COUPLE OF HOURS AND WE TALKED.

14:10:41  23  **Q.**   SO YOU MADE ARRANGEMENTS AFTER YOU CONTACTED DR. BEA TO

14:10:44  24  GET TOGETHER WITH HIM IN THE NEW ORLEANS AREA?

14:10:47  25  **A.**   YEAH -- WELL, HAMMOND.  HAMMOND, LOUISIANA, YEAH.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

14:10:50  1  **Q.**  AND YOU MET IN A CONFERENCE ROOM IN HAMMOND; RIGHT?

14:10:54  2  **A.**  YES, SIR.

14:10:55  3  **Q.**  AND YOU TOOK FILING CABINETS FULL OF MATERIALS FOR

14:10:57  4  DR. BEA; RIGHT?  AND YOU LAID THEM ALL OUT FOR HIM TO LOOK AT;

14:11:02  5  CORRECT?

14:11:03  6  **A.**  I TOOK MCELWEE BROTHERS' DOCUMENTS, YES.

14:11:05  7  **Q.**  IN FILING CABINETS; CORRECT?

14:11:07  8  **A.**  FILING CABINETS -- IT WAS BOXES OR WHATEVER.  YOU KNOW, I

14:11:11  9  DON'T KNOW IF YOU -- I TOOK FILING CABINETS TO THE BONDING

14:11:14  10  COMPANY WHEN THEY WERE DOING THEIR DISCOVERY REQUEST.

14:11:17  11         WHAT I TOOK TO DR. BEA DURING THAT TIME, I CAN'T

14:11:21  12  REMEMBER IF IT WAS BOXES OR FILING CABINETS.

14:11:24  13  **Q.**  WELL, LET'S SEE IF WE CAN REFRESH YOUR MEMORY.

14:11:26  14         **MR. SMITH:**  LET'S GO TO PAGE --

14:11:26  15         **THE COURT:**  DOES IT MAKE A DIFFERENCE?  IT WAS A LOT

14:11:29  16  OF STUFF.

14:11:29  17  **BY MR. SMITH:**

14:11:29  18  **Q.**  OKAY.  SO YOU TOOK A LOT OF STUFF --

14:11:30  19  **A.**  A LOT OF STUFF, YES.

14:11:32  20  **Q.**  YOU LAID IT ALL OUT IN FRONT OF DR. BEA?

14:11:34  21  **A.**  YES.

14:11:35  22  **Q.**  YOU HAD A LOT OF COMMUNICATIONS BACK AND FORTH WITH

14:11:36  23  DR. BEA; RIGHT?  E-MAILS, PHONE CALLS?

14:11:39  24  **A.**  YES.

14:11:39  25  **Q.**  YOU MET WITH HIM AT A PUBLIC MEETING; CORRECT?

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

| | | |
|---|---|---|
| 14:11:42 | 1 | **A.**   IN A PUBLIC MEETING?  NO. |
| 14:11:44 | 2 | **Q.**   YOU DIDN'T MEET WITH DR. BEA -- |
| 14:11:46 | 3 | **A.**   OH, I DID.  I'M SORRY.  THERE WAS A TIME AT A PUBLIC |
| 14:11:48 | 4 | MEETING IN NEW ORLEANS AT LAKEVIEW.  HE ASKED ME TO COME TO THE |
| 14:11:53 | 5 | MEETING, YES. |
| 14:11:53 | 6 | **Q.**   RIGHT. |
| 14:11:54 | 7 |         HE ASKED YOU TO COME TO THAT MEETING, DIDN'T HE? |
| 14:11:56 | 8 | **A.**   YES. |
| 14:11:57 | 9 | **Q.**   AND YOU TOOK YOUR WHOLE FAMILY WITH YOU TO THAT MEETING, |
| 14:12:00 | 10 | DIDN'T YOU? |
| 14:12:00 | 11 | **A.**   YES. |
| 14:12:00 | 12 | **Q.**   WHEN YOU GOT TO THAT MEETING, HE INTRODUCED YOU TO ALL OF |
| 14:12:04 | 13 | HIS COLLEAGUES, DIDN'T HE? |
| 14:12:07 | 14 | **A.**   I CAN'T REMEMBER HOW MANY EXACTLY, BUT, YES, HE DID.  HE |
| 14:12:10 | 15 | ACKNOWLEDGED THAT I WAS THERE, YES. |
| 14:12:20 | 16 | **Q.**   AT SOME POINT DURING THOSE CONTACTS WITH DR. BEA, YOU MADE |
| 14:12:22 | 17 | IT CLEAR, DIDN'T YOU, THAT YOUR KNOWLEDGE ABOUT UNDERSEEPAGE |
| 14:12:26 | 18 | WAS KNOWLEDGE THAT YOU HAD OBTAINED AT THE DWYER ROAD PROJECT; |
| 14:12:29 | 19 | CORRECT? |
| 14:12:31 | 20 | **A.**   IT WAS KNOWLEDGE I OBTAINED THROUGHOUT MY CAREER WORKING |
| 14:12:35 | 21 | WITH THE CORPS AND WORKING IN COLLEGE -- I MEAN, GOING TO |
| 14:12:38 | 22 | COLLEGE AND STUDYING GEOTECHNICAL COURSES.  IT WASN'T JUST |
| 14:12:44 | 23 | DWYER -- THROUGH THE DWYER ROAD PROJECT. |
| 14:12:45 | 24 | **Q.**   NOT JUST DWYER ROAD, BUT YOU DID TELL HIM ABOUT YOUR DWYER |
| 14:12:49 | 25 | ROAD PROJECT EXPERIENCES; CORRECT? |

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

14:12:49   1   **A.**   WELL, THE STUFF TOLD HIM ABOUT THE DWYER ROAD EXPERIENCES,

14:12:52   2   YES.

14:12:53   3   **Q.**   AND YOU EXPLAINED THAT STUFF TO HIM, DIDN'T YOU, IN YOUR

14:12:57   4   CONVERSATIONS WITH HIM?

14:12:58   5   **A.**   YES.

14:13:03   6   **Q.**   LET'S TALK A LITTLE BIT ABOUT THE DWYER ROAD PROJECT.  YOU

14:13:06   7   TESTIFIED ON DIRECT EXAMINATION WHEN YOU WERE ASKED BY COUNSEL

14:13:12   8   TO DESCRIBE THE TYPE OF SOILS THAT YOU WERE FINDING AND YOU

14:13:16   9   SAID, "ORGANICS, TREE TRUNKS, TREE BRANCHES FOR THE FIRST TEN

14:13:23   10   FEET"; IS THAT CORRECT?

14:13:24   11   **A.**   YES.

14:13:24   12   **Q.**   AND THEN YOU COMPARED IT TO COFFEE GROUNDS; CORRECT?

14:13:28   13   **A.**   YES.

14:13:30   14   **Q.**   AND THEN YOU WERE ASKED, "WHAT ELSE DID IT CONSIST OF?"

14:13:35   15           AND YOU SAID, "THERE ARE NO SANDS, SOME SILT, NO

14:13:40   16   CLAYS IN IT, JUST DECAYED PLANT MATERIAL."  DO YOU RECALL THAT

14:13:44   17   TESTIMONY?

14:13:45   18   **A.**   THAT'S WHEN EXPLAINING *COFFEE GROUNDS*, YES, THE

14:13:48   19   DEFINITION.

14:13:49   20   **Q.**   SO THAT'S JUST THE FIRST TOP TEN FEET.  YOU'RE JUST

14:13:52   21   DESCRIBING THE FIRST LAYER OF SOILS?

14:13:54   22   **A.**   I SAID APPROXIMATELY 10 FEET, UNLESS I'M LOOKING AT A SOIL

14:13:58   23   BORING AND LOOKING AT THE PHOTO FROM THE DWYER ROAD PROJECT,

14:14:01   24   THEN I CAN GIVE YOU THE PARTICULARS ON EXACTLY WHAT THE

14:14:04   25   DIMENSIONS WERE.

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS

14:14:05  1  **Q.**  OKAY.  AND DID YOU HAVE SOIL BORINGS; CORRECT?

14:14:08  2  **A.**  THAT IS CORRECT.

14:14:09  3  **Q.**  AND THOSE SOIL BORINGS WOULD TELL YOU WHAT THE VARIOUS

14:14:12  4  STRATA OF SOILS WERE AT THAT WORK SITE; CORRECT?

14:14:15  5  **A.**  YES.

14:14:15  6  **Q.**  AND THOSE WERE CREATED BY EUSTIS, I BELIEVE.  DO YOU

14:14:20  7  REMEM- -- RECALL THOSE?

14:14:21  8  **A.**  YES.

14:14:23  9  **Q.**  EUSTIS ENGINEERING?

14:14:24  10  **A.**  YES.

14:14:26  11  **Q.**  OKAY.  LET'S JUST LOOK AT THOSE SOIL BORINGS, IF WE MAY.

14:14:35  12  THOSE SOIL BORINGS ARE IN EXHIBIT 8.  AND THOSE PAGE NUMBERS

14:14:39  13  ARE -- THIS IS PX-109.  AND THESE ARE PAGES -- STARTS AT PAGE

14:15:11  14  93.

14:15:24  15       **MR. SMITH:**  I'M WONDERING IF WE COULD JUST BLOW UP

14:15:26  16  THE FIRST 20 FEET.  IF WE COULD JUST BLOW UP THE FIRST 20 FEET.

14:15:42  17            THERE WE GO.  THAT'S GOOD.  JUST BRING IT OVER

14:15:45  18  SO WE CAN SEE THE FIRST COUPLE OF COLUMNS.

14:15:51  19            THAT'S GOOD.  YEAH.  WE NEED TO SEE THE FEET.

14:15:58  20  THERE WE GO.

14:15:59  21  BY MR. SMITH:

14:16:00  22  **Q.**  IN FACT, WHAT WE DO SEE AT THIS PROJECT IS THAT THE FIRST

14:16:05  23  FIVE, EIGHT, TEN FEET, AS YOU DESCRIBED, ARE FULL OF ORGANICS;

14:16:09  24  CORRECT?

14:16:10  25  **A.**  THAT'S WHAT THIS BORING SHOWS.  AND I THINK THIS IS MAYBE

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


14:16:13   1   ONE OF THE BORINGS THAT WAS A LITTLE BIT FURTHER AWAY FROM THE

14:16:16   2   FLOODWALL, MORE THAN 100 FEET AWAY FROM THE FLOODWALL.

14:16:19   3   Q.   WITHIN THE TOP TEN FEET THERE'S SOME SILTY SAND WITH SHELL

14:16:22   4   FRAGMENTS.  DO YOU SEE THAT?

14:16:24   5   A.   I SEE THE DESCRIPTION OF THAT BORING, YES.

14:16:27   6   Q.   OKAY.  AND THEN THERE'S SOME SOFT GRAY CLAY WITH ROOTS AND

14:16:31   7   ORGANIC MATTER THAT'S DOWN AROUND 12 TO 20 FEET.  DO YOU SEE

14:16:35   8   THAT?

14:16:36   9   A.   LOOSE GRAY SILTY SAND, YES.  ROOTS DOWN TO 10, 11, 12,

14:16:44  10   13 -- ALMOST 14 FEET.  ROOTS AND ORGANIC MATTER, YES, I SEE

14:16:50  11   THAT.

14:16:51  12   Q.   IT GOES ALMOST DOWN TO ABOUT 20 FEET, IF I'M READING THAT

14:16:53  13   CORRECTLY.

14:16:54  14   A.   YES, THAT'S A LITTLE BIT MORE THAN 10 FEET.  I APOLOGIZE.

14:16:57  15   Q.   AND THEN BELOW THAT THERE'S A THICK LAYER OF SAND, IS THAT

14:17:02  16   CORRECT, FROM 20 FEET ALL THE WAY DOWN BELOW 30 FEET?  ALL THE

14:17:06  17   WAY DOWN -- LET'S GO ALL THE WAY DOWN.  KEEP GOING DOWN.  SAND,

14:17:11  18   SAND, SAND.  ALL THE WAY DOWN TO ALMOST 50 FEET, NOTHING BUT

14:17:15  19   SAND.

14:17:19  20        DO YOU RECALL THAT SAND AT THAT WORK SITE,

14:17:21  21   MR. MCELWEE?

14:17:22  22   A.   DO I RECALL THAT SAND?

14:17:24  23   Q.   YES.

14:17:25  24   A.   NO, BECAUSE I DIDN'T HAVE TO EXCAVATE THAT DEEP.

14:17:27  25   Q.   WELL, I DIDN'T ASK YOU IF YOU HAD TO EXECUTIVE.  I ASKED

MELVIN MILLARD LOUIS MCELWEE, SR. - CROSS


14:17:30    1   YOU IF YOU RECALLED IT.  BECAUSE YOU WERE CONCERNED ABOUT THAT

14:17:34    2   SAND, WEREN'T YOU?

14:17:35    3   **A.**   YES, I WAS.

14:17:35    4   **Q.**   IN FACT, YOU WERE CONCERNED ABOUT THAT SAND BEFORE YOU

14:17:38    5   EVER BID ON THAT PROJECT, WEREN'T YOU?

14:17:39    6   **A.**   YES.

14:17:40    7   **Q.**   BECAUSE YOU KNEW IF THERE WAS SAND THERE, YOU MIGHT HAVE A

14:17:42    8   DEWATERING PROBLEM; CORRECT?

14:17:44    9   **A.**   THAT IS CORRECT.

14:17:44   10   **Q.**   AND SO YOU WANTED TO FIND OUT WHERE THE SAND WAS BEFORE

14:17:47   11   YOU BID ON THAT PROJECT, DIDN'T YOU?

14:17:50   12   **A.**   I THINK MCELWEE BROTHERS DID QUESTION THE CORPS ON THAT,

14:17:53   13   YES.

14:17:54   14   **Q.**   THAT'S RIGHT.

14:18:06   15        AND, IN FACT, AT THAT SITE YOU NEEDED A DEWATERING

14:18:09   16   SYSTEM TO KEEP WATER OUT OF THE EXCAVATED AREA, TO KEEP WATER

14:18:13   17   FROM CREATING SAND BOILS IN THE EXCAVATED HOLE; ISN'T THAT

14:18:16   18   CORRECT.

14:18:16   19   **A.**   THAT IS CORRECT.

14:18:16   20   **Q.**   AND THE PROJECT PLANS CALLED FOR THE REMOVAL OF SOME

14:18:20   21   PILES, DIDN'T THEY?

14:18:22   22   **A.**   THAT IS CORRECT, UNDERNEATH THE FLOODWALL.

14:18:23   23   **Q.**   AND YOU WERE CONCERNED -- YOU WANTED TO FIND OUT WHETHER

14:18:26   24   THOSE PILES EXTENDED INTO THAT SAND LAYER, DIDN'T YOU?

14:18:29   25   **A.**   THAT IS CORRECT.

MELVIN MILLARD LOUIS MCELWEE, SR. - REDIRECT

14:18:29    1    **Q.**   BECAUSE YOU KNEW IF THEY EXTENDED INTO THAT SAND LAYER,

14:18:34    2    YOU MIGHT HAVE THAT SEEPAGE PROBLEM YOU WERE CONCERNED ABOUT;

14:18:37    3    CORRECT?

14:18:37    4    **A.**   THAT'S A GREAT POTENTIAL, YES, SIR.

14:18:45    5              **MR. SMITH:**   I HAVE NO FURTHER QUESTIONS OF THIS

14:18:46    6    WITNESS, YOUR HONOR.

14:18:46    7              **THE COURT:**   THANK YOU, MR. SMITH.

14:18:48    8              I THINK WE -- MAKE SURE I DON'T BEGRUDGE ANYBODY

14:18:50    9    ON THE DEFENSE.  EVERYBODY HAS HAD THEIR SHOT?

14:18:53   10              ALL RIGHT.  REDIRECT?

14:18:55   11              **MR. JOANEN:**   JUST A FEW QUESTIONS, YOUR HONOR.

14:18:56   12                        **REDIRECT EXAMINATION**

14:18:57   13    BY MR. JOANEN:

14:18:58   14    **Q.**   MR. MCELWEE, JUST SOME FOLLOW-UP TO SOME OF THE QUESTIONS

14:19:00   15    THAT WERE BROUGHT OUT ON CROSS-EXAMINATION.

14:19:02   16              WE KNOW THAT YOU WERE GIVEN PLANS AND SPECIFICATIONS

14:19:04   17    BY THE CORPS OF ENGINEERS TO DO THE PROJECT ACCORDING TO THOSE

14:19:08   18    PLANS AND SPECIFICATIONS; CORRECT?

14:19:10   19    **A.**   THAT IS CORRECT.

14:19:11   20    **Q.**   AND THEN YOU COME ACROSS THESE UNEXPECTED HYDRAULIC

14:19:15   21    PRESSURES AND FORCES THAT WERE CAUSING YOU SOME TROUBLE.

14:19:18   22              MY CURIOSITY WAS AROUSED.  WHY DIDN'T YOU NOT JUST

14:19:24   23    SAY ANYTHING AND FOLLOW THE PLANS AND SPECIFICATIONS AND BE

14:19:27   24    HAPPY WITH IT?

14:19:28   25    **A.**   TO DO THAT IS INCOMPETENCY OF A CONTRACTOR.  YOU DON'T

MELVIN MILLARD LOUIS MCELWEE, SR. - REDIRECT


14:19:37   1   JUST DO SOMETHING IF YOU KNOW THAT THERE'S A POTENTIAL PROBLEM.

14:19:39   2   YOU PRESENT IT TO THE OWNER, BECAUSE THE OUTCOME WOULD HAVE

14:19:43   3   BEEN WAY MUCH MORE TRAGIC.  THAT CANAL BEGINNING TO FLOW BACK

14:19:50   4   INTO DWYER ROAD WOULD HAVE BEEN SOMETHING, WITHOUT A HURRICANE,

14:19:52   5   THAT WAS A PROBLEM.

14:19:55   6          SO THAT IS WHY WE DIDN'T PURSUE AND JUST KEEP GOING

14:19:58   7   AND NOT WORRY ABOUT IT.

14:19:59   8   Q.   AND BY BRINGING THIS INFORMATION UP TO YOUR CORPS

14:20:03   9   CONTRACTING OFFICER, AREN'T YOU, IN FACT, GIVING HIM A FIGHTING

14:20:07  10   CHANCE TO ADDRESS THESE ISSUES BEFORE THEY GET OUT OF CONTROL?

14:20:09  11   A.   YES.

14:20:11  12          MR. JOANEN:  NO MORE QUESTIONS, YOUR HONOR.

14:20:12  13          THE COURT:  THANK YOU, MR. MCELWEE.

14:20:12  14          MR. TREEBY:  YOUR HONOR, IF YOUR HONOR, PLEASE, I

14:20:14  15   FAILED TO DO THIS.  I APOLOGIZE.  I WANT TO OFFER THE

14:20:18  16   EXHIBITS --

14:20:19  17          THE COURT:  I'M GOING TO LET MR. MCELWEE STEP DOWN.

14:20:21  18          MR. TREEBY:  OKAY.

14:20:22  19          THE COURT:  YOU CAN GET UP AND STEP DOWN.

14:20:24  20          THE WITNESS:  THANK YOU.

14:20:25  21          THE COURT:  AND YOU'RE FREE TO STAY OR FREE TO GO.

14:20:28  22          MR. TREEBY:  I WANTED TO OFFER DX-02700-0001 THROUGH

14:20:36  23   0005, WHICH WERE THE RESPONSES TO DISCOVERY.

14:20:42  24          THEN PX-371 -- I'M SORRY, I MISSTATED THAT.  LET

14:20:48  25   ME GET MY NUMBERS RIGHT.

14:20:51   1            THAT'S ACTUALLY THE COMPLAINT, AND IT'S 0001

14:20:54   2   THROUGH 0027.  THAT'S THE COMPLAINT ON BEHALF OF MCELWEE THAT

14:20:58   3   WE REFERRED TO BEFORE THE BOARD OF CONTRACT APPEALS.

14:21:02   4            THEN PX-3711 THROUGH -- 0001 THROUGH 5,

14:21:08   5   RESPONSES TO DISCOVERY.

14:21:10   6            AND THEN JX-02032, THE FOUR PAGES FROM ILIT THAT

14:21:15   7   WE REFERRED TO, 0001, 0197, 0200, AND 0203.

14:21:23   8            **THE COURT:**  ANY OBJECTION?

14:21:24   9            **MR. JOANEN:**  THE ONLY OBJECTION WOULD BE, YOUR HONOR,

14:21:26   10  TO THE ILIT REPORT, THAT IT'S HEARSAY.

14:21:27   11           **MR. TREEBY:**  THERE WAS NO OBJECTION TO IT.  IT WAS ON

14:21:29   12  THE LIST AND IT WAS --

14:21:30   13           **THE COURT:**  THE COURT'S GOING TO ALLOW IT -- GOING TO

14:21:32   14  ADMIT IT.

14:21:34   15           **MR. JOANEN:**  NO OTHER OBJECTIONS, YOUR HONOR.

14:21:40   16           **THE COURT:**  ADMIT ALL OF THE EXHIBITS.

14:21:42   17           **MR. BRUNO:**  WHICH REMINDS ME, I FAILED TO MOVE INTO

14:21:46   18  EVIDENCE ANY EXHIBIT DURING THE EXAMINATION OF MR. COLLETTI

14:21:47   19  THAT HADN'T PREVIOUSLY BEEN MOVED INTO EVIDENCE, YOUR HONOR.  I

14:21:51   20  APOLOGIZE.

14:21:52   21           **MR. SMITH:**  NO OBJECTION, YOUR HONOR.

14:21:54   22           **MR. BRUNO:**  YOUR HONOR, I ALSO HAVE, IN A CRUDE FORM,

14:21:56   23  A FORMAL PLEADING, MY RESPONSES TO THOSE OBJECTIONS.  MAY I

14:22:00   24  GIVE THOSE TO JANET?

14:22:02   25           **THE COURT:**  WHAT ARE THOSE?  I COULDN'T QUITE HEAR

14:22:03   1  YOU.

14:22:04   2          **MR. BRUNO:**  THIS IS MY RESPONSES TO THOSE

14:22:05   3  OBJECTIONS --

14:22:06   4          **THE COURT:**  OH, OKAY.

14:22:06   5          **MR. BRUNO:**  -- WHICH I FAILED TO ADDRESS.

14:22:08   6          **THE COURT:**  OH, GOOD.  THANKS.  I APPRECIATE IT.

14:22:09   7          **MR. BRUNO:**  I JUST WANTED TO GIVE IT TO YOU AS SOON

14:22:11   8  AS POSSIBLE.

14:22:11   9          **THE COURT:**  ALL RIGHT.  AND YOU'LL GIVE A COPY TO

14:22:13  10  MR. TREEBY AND WE'RE GOOD.

14:22:18  11          YEAH.  AND WE SHOULD FILE THEM INTO THE RECORD

14:22:20  12  AS WELL, IF YOU -- MR. BRUNO, WE NEED YOU TO FILE THAT INTO THE

14:22:26  13  RECORD AS WELL.

14:22:27  14          **MR. BRUNO:**  I WILL.  DID I COLLATE IT PROPERLY?  IS

14:22:30  15  IT TWO PAGES OR THREE?

14:22:33  16          **MS. DALEY:**  I ONLY GOT TWO.

14:22:51  17          **MR. BRUNO:**  THANK YOU, JUDGE.  AND I'LL FILE THIS AS

14:22:53  18  A FORMAL PLEADING.

14:22:54  19          **THE COURT:**  I APPRECIATE THAT.

14:22:54  20          WE'LL PROBABLY GIVE YOU A RECESS.

14:22:56  21          WHO'S YOUR NEXT WITNESS, MR. BRUNO?

14:22:59  22          **MR. BRUNO:**  I'M GOING TO CALL MR. SPENCER, OUT OF

14:23:01  23  DEFERENCE TO HIM.

14:23:01  24          **THE COURT:**  OKAY.

14:23:02  25          **MR. BRUNO:**  HE'S BEEN WAITING.

| | | |
|---|---|---|
| 14:23:03 | 1 | **THE COURT:** DOES HE HAVE TO -- CAN WE TAKE A RECESS |
| 14:23:05 | 2 | OR DO YOU WANT -- |
| 14:23:05 | 3 | **MR. BRUNO:** OH, YEAH, YEAH, YEAH.  NO PROBLEM. |
| 14:23:07 | 4 | **THE COURT:** HOW LONG WILL HE TAKE, APPROXIMATELY? |
| 14:23:09 | 5 | **MR. BRUNO:** IT'S SCOTT'S WITNESS.  I DON'T THINK -- |
| 14:23:10 | 6 | IT'S THE FELLOW FROM THE OLD WHO TAKES THE PERMITS. |
| 14:23:14 | 7 | **THE COURT:** OKAY.  WELL, WE'LL TAKE A RECESS. |
| 14:23:14 | 8 | **MR. BRUNO:** I DON'T THINK VERY LONG. |
| 14:23:15 | 9 | **THE COURT:** TEN MINUTES IS THAT -- TEN MINUTES. |
| 14:23:19 | 10 | **THE DEPUTY CLERK:** ALL RISE. |
| 14:23:19 | 11 | (WHEREUPON, THE COURT TOOK A RECESS.) |
| 14:42:49 | 12 | **THE DEPUTY CLERK:** ALL RISE. |
| 14:42:50 | 13 | COURT IS IN SESSION.  PLEASE BE SEATED. |
| 14:42:50 | 14 | **THE COURT:** YES, SIR? |
| 14:43:03 | 15 | **MR. JOANEN:** YOUR HONOR, AT THIS TIME I'D LIKE TO |
| 14:43:05 | 16 | CALL MR. STEVAN SPENCER WITH THE ORLEANS LEVEE DISTRICT TO THE |
| 14:43:10 | 17 | STAND. |
| 14:43:12 | 18 | **THE COURT:** YES, SIR. |
| 14:43:12 | 19 | (WHEREUPON, **STEVAN GEORGE SPENCER**, HAVING BEEN DULY |
| 14:43:12 | 20 | SWORN, TESTIFIED AS FOLLOWS.) |
| 14:43:34 | 21 | **THE DEPUTY CLERK:** PLEASE STATE YOUR FULL NAME AND |
| 14:43:34 | 22 | CORRECT SPELLING FOR THE RECORD. |
| 14:43:41 | 23 | **THE WITNESS:** YES.  IT'S STEVAN, S-T-E-V-A-N, GEORGE, |
| 14:43:46 | 24 | G-E-O-R-G-E, SPENCER, S-P-E-N-C-E-R. |
| | 25 | |

STEVAN GEORGE SPENCER - DIRECT


| 14:43:48 | 1 | **DIRECT EXAMINATION** |

14:43:54   2  **BY MR. JOANEN:**

14:43:55   3  **Q.**   MR. SPENCER, BY WHOM ARE YOU CURRENTLY EMPLOYED?

14:43:58   4  **A.**   SOUTHEAST LOUISIANA FLOOD PROTECTION AUTHORITY EAST.

14:44:03   5  **Q.**   AND WHAT IS YOUR POSITION WITH THAT ORGANIZATION?

14:44:06   6  **A.**   REGIONAL CHIEF ENGINEER.

14:44:08   7  **Q.**   PRIOR TO BECOMING THAT ENTITY, WAS -- WERE YOU EMPLOYED BY

14:44:11   8  THE ORLEANS LEVEE DISTRICT?

14:44:13   9  **A.**   YES.

14:44:14   10  **Q.**   AND WHEN WAS THE TRANSFER FROM THE ORLEANS DISTRICT --

14:44:16   11  ORLEANS LEVEE DISTRICT TO THE ENTITY THAT YOU'RE NOW EMPLOYED

14:44:19   12  BY?

14:44:20   13  **A.**   MARCH 19TH, 2009.

14:44:21   14  **Q.**   YOU WERE EMPLOYED BY THE ORLEANS LEVEE DISTRICT DURING THE

14:44:24   15  TIME OF HURRICANE KATRINA, AUGUST OF 2005?

14:44:26   16  **A.**   YES, SIR.

14:44:27   17  **Q.**   AND WHAT WAS YOUR POSITION IN 2005 AT THE TIME OF

14:44:32   18  HURRICANE KATRINA?

14:44:32   19  **A.**   I WAS THE CHIEF ENGINEER FOR THE ORLEANS LEVEE DISTRICT.

14:44:37   20  **Q.**   AND HOW LONG HAD YOU HELD THAT POSITION PRIOR TO -- WHAT

14:44:41   21  WAS THE TIME FRAME THAT YOU HELD THAT POSITION?

14:44:44   22  **A.**   I STARTED AS THE CHIEF ENGINEER IN APRIL OF 1993.

14:44:47   23  **Q.**   AND WHAT WERE THE JOB RESPONSIBILITIES OF THE CHIEF

14:44:51   24  ENGINEER FROM THE TIME PERIOD OF 1993 TO 2005?

14:44:56   25  **A.**   TO COORDINATE THROUGH THE CORPS OF ENGINEERS ON THE LAKE

STEVAN GEORGE SPENCER - DIRECT

14:44:59   1   PONTCHARTRAIN VICINITY HURRICANE PROTECTION PROJECT, RUN THE

14:45:05   2   DAILY PROJECTS THAT WERE DONE IN-HOUSE FOR CAPITAL

14:45:10   3   IMPROVEMENTS, REVIEW PERMITS.

14:45:12   4   **Q.**   AND I KNOW THE COURT IS AWARE OF THIS, BUT FOR ANYONE ELSE

14:45:16   5   WHO WOULD READ THE TRANSCRIPT, AT THAT TIME WHAT WERE THE

14:45:20   6   RESPONSIBILITIES OF THE ORLEANS LEVEE DISTRICT?  WHAT WAS THE

14:45:23   7   PURPOSE OF THE ORLEANS LEVEE DISTRICT?

14:45:25   8   **A.**   TO MAINTAIN THE HURRICANE AND TIDAL AND THE RIVER LEVEE

14:45:30   9   SYSTEM AROUND ORLEANS PARISH.

14:45:35   10   **Q.**   NOW, IS THAT RESPONSIBILITY REGULATED BY A STATUTE OR SOME

14:45:38   11   TYPE OF LOCAL MANDATE?

14:45:40   12   **A.**   TITLE 38 IS THE STATE STATUTE.

14:45:49   13   **Q.**   NOW, WHEN YOU TALK ABOUT FLOOD CONTROL STRUCTURES, I

14:45:52   14   UNDERSTAND THERE ARE TWO DIFFERENT TYPES OF FLOOD CONTROL

14:45:54   15   STRUCTURES.  ONE WOULD BE A RIVER STRUCTURE, ONE WOULD BE A

14:45:56   16   HURRICANE PROTECTION STRUCTURE; IS THAT CORRECT?

14:45:58   17   **A.**   WELL, THOSE ARE MORE SYSTEMS, THE RIVER SYSTEM AND THE

14:46:02   18   HURRICANE SYSTEM.

14:46:03   19   **Q.**   ARE THE RESPONSIBILITIES OF THE OLD AT THAT TIME DIFFERENT

14:46:06   20   AS THEY RELATED TO A RIVER SYSTEM VERSUS A HURRICANE PROTECTION

14:46:10   21   SYSTEM?

14:46:13   22   **A.**   I THINK THE ONLY DIFFERENCE WOULD BE MAYBE A COST SHARE,

14:46:18   23   FINANCIAL RESPONSIBILITIES.

14:46:18   24           **THE COURT:**  WE NEED TO STOP FOR JUST A MINUTE.  IT'S

14:46:21   25   A LITTLE DISTRACTING.

STEVAN GEORGE SPENCER - DIRECT


14:46:24   1          **MR. ANDRY:**  I'M SORRY, YOUR HONOR.

14:46:26   2              MR. ARMSTRONG WAS TRYING TO COME INTO THE

14:46:28   3   COURTROOM AND HE WAS TOLD HE HAD TO LEAVE, AND HE'S THE

14:46:31   4   PLAINTIFF.

14:46:32   5          **MR. BRUNO:**  I'M SORRY, JUDGE.

14:46:33   6          **THE COURT:**  EXCUSE ME FOR INTERRUPTING, BUT IT WAS --

14:46:35   7          **MR. BRUNO:**  I APOLOGIZE, YOUR HONOR.

14:46:36   8          **MR. ANDRY:**  I'M SORRY, YOUR HONOR.

14:46:39   9          **MR. BRUNO:**  I'M TRYING TO MAKE SURE THE SCHEDULE

14:46:40  10   RUNS, AND I APOLOGIZE TO THE COURT.

14:46:41  11          **THE COURT:**  OKAY.  NO PROBLEM.  EVERYTHING'S FINE AND

14:46:44  12   WE CAN MOVE ON.

14:46:44  13              SORRY TO INTERRUPT.

14:46:46  14   **BY MR. JOANEN:**

14:46:46  15   **Q.**  I WANT TO FOCUS MOSTLY ON THE HURRICANE PROTECTION SYSTEM

14:46:50  16   AS IT WAS IN 2005.  DID THE OLD ACTUALLY OWN THAT PROTECTION

14:46:59  17   SYSTEM?

14:46:59  18   **A.**  NOT IN PROPERTY FEET OUTRIGHT.  IT WAS -- IN LOTS OF

14:47:02  19   PLACES IT WAS A SERVITUDE.  SOME PLACES IT WAS -- THEY OWNED

14:47:05  20   THE LAND UNDERNEATH, THE LEVEE PORTION, IS MY UNDERSTANDING.

14:47:08  21   I'M NOT A LAWYER TO MAKE THAT CALL, BUT . . .

14:47:11  22   **Q.**  I UNDERSTAND.

14:47:12  23              I'M GOING TO DRAW YOUR ATTENTION TO THE HURRICANE

14:47:16  24   PROTECTION SYSTEM THAT WOULD HAVE BEEN AT THE EAST BANK

14:47:20  25   INDUSTRIAL AREA.  ARE YOU FAMILIAR WITH THAT AREA?

STEVAN GEORGE SPENCER - DIRECT


14:47:23  1   **A.**   YES.

14:47:24  2   **Q.**   DO YOU KNOW, DID THE ORLEANS LEVEE DISTRICT OWN THAT FLOOD

14:47:28  3   PROTECTION STRUCTURE THERE?

14:47:29  4   **A.**   THE FLOODWALL, I BELIEVE IT JUST HAD A SERVITUDE

14:47:34  5   UNDERNEATH IT.

14:47:34  6   **Q.**   OKAY.  AND AS I UNDERSTAND IT, AS SOME OF THE EVIDENCE WAS

14:47:38  7   PRESENTED TO THE COURT, THAT FLOOD PROTECTION SYSTEM RIGHT

14:47:45  8   THERE INCLUDED BOTH AN EARTHEN BERM WITH A SHEET PILE FLOODWALL

14:47:48  9   DRIVEN IN THE MIDDLE OF IT.  IS THAT CONSISTENT WITH YOUR

14:47:52  10  UNDERSTANDING, IF YOU KNOW?

14:47:53  11  **A.**   WELL, IT WAS A SHEET PILE AND FLOOD I-WALL THERE.  I'M NOT

14:47:56  12  SURE HOW MUCH OF A BERM IT WAS ON.  BUT . . .

14:47:59  13  **Q.**   AND SO HOW -- IF YOU WERE TO TALK TO A MAN ON THE STREET

14:48:01  14  AND SOMEONE SAID WHAT THE AUTHORITY OF THE ORLEANS LEVEE -- HOW

14:48:08  15  EXPANSIVE THE AUTHORITY OF THE ORLEANS DISTRICT WAS TO REGULATE

14:48:10  16  THAT FLOODWALL, WHAT WOULD YOU TELL THAT PERSON?

14:48:15  17  **A.**   THE ORLEANS LEVEE DISTRICT'S RESPONSIBILITY WAS TO

14:48:18  18  MAINTAIN THE FLOODWALL, INSPECT IT, LOOK FOR SAND BOILS, MASS

14:48:24  19  MOVEMENT, SEEPAGE, ANY KIND OF LEANING AND, YOU KNOW, CUT THE

14:48:29  20  GRASS ALONG THERE SO THAT YOU COULD BE ABLE TO IDENTIFY

14:48:32  21  ANYTHING THAT WAS HAPPENING.

14:48:35  22  **Q.**   AND WHEN YOU USE THE TERM "TO MAINTAIN," WHAT DOES THAT

14:48:37  23  MEAN IN ORLEANS LEVEE DISTRICT PARLANCE?

14:48:41  24        AND FOR CLARITY OF THE RECORD, I WANT TO TALK ABOUT

14:48:44  25  IT DURING THE PERIOD OF 2005, IF WE COULD.

STEVAN GEORGE SPENCER - DIRECT


14:48:45   1          WHAT WAS -- WHEN YOU USE THE TERM "MAINTAIN," WHAT'S

14:48:48   2   THAT ENTAIL?

14:48:50   3   **A.**   CERTAINLY CUTTING THE GRASS, MAKING SURE THERE WASN'T ANY

14:48:55   4   DEFECTS IN THE FLOODWALL.

14:48:59   5   **Q.**   WHEN YOU SAY THERE WEREN'T ANY DEFECTS IN THE FLOODWALL,

14:49:02   6   CAN YOU DESCRIBE WHAT YOU WOULD MEAN BY THAT?

14:49:05   7   **A.**   SHOULD IT BE LEANING, SHOULD THE EXPANSION JOINTS BETWEEN

14:49:09   8   THE PANELS NOT BE THERE OR BE DAMAGED, THAT KIND OF THING.

14:49:15   9   **Q.**   HOW OFTEN WOULD THE ORLEANS LEVEE DISTRICT PERFORM THOSE

14:49:18  10   TASKS TO MAKE SURE THAT THOSE TYPES OF DEFECTS, AS YOU NAMED

14:49:23  11   THEM, WERE NOT TAKING PLACE, WERE NOT --

14:49:27  12   **A.**   WHEN OUR MAINTENANCE PEOPLE WERE IN THE FIELD CUTTING

14:49:32  13   GRASS, THAT TYPE OF THING, THEY WERE OUR EYES AND EARS IN THE

14:49:35  14   FIELD.  AND DEPENDING ON THE FREQUENCY OF THE GRASS CUTTING,

14:49:38  15   THEY WOULD BE LOOKING FOR THINGS LIKE THAT.

14:49:40  16   **Q.**   AND SO TYPICAL NEW ORLEANS, YOU WOULD CUT THE GRASS MORE

14:49:44  17   IN THE SUMMERTIME WHEN IT RAINS THAN YOU DO IN THE WINTERTIME?

14:49:47  18   **A.**   YES, SIR.

14:49:48  19   **Q.**   WAS THERE ANY OFFICIAL INSPECTION THAT WOULD TAKE PLACE BY

14:49:51  20   PEOPLE WITH -- PERHAPS WITH MORE RESPONSIBILITY OR HIGHER UP

14:49:55  21   THE HIERARCHY OF THE OLD TO INSPECT THOSE LEVEES OF THAT

14:50:00  22   PARTICULAR FLOODWALL?

14:50:00  23   **A.**   IF THERE HAD BEEN SOME NOTIFICATION FROM THE FIELD, HAD

14:50:03  24   THERE BEEN A PROBLEM OR SOMETHING, AN ENGINEER WOULD HAVE GONE

14:50:06  25   OUT AND LOOKED AT IT.

STEVAN GEORGE SPENCER - DIRECT


14:50:08   1    **Q.**   WERE THERE ANY YEARLY INSPECTIONS THAT WOULD TAKE PLACE?

14:50:14   2    **A.**   AS SPECIFIC TO LOOKING AT THAT WALL?

14:50:17   3    **Q.**   IF YOU RECALL.  I KNOW IT'S BEEN A NUMBER OF YEARS.

14:50:22   4    **A.**   WE'D HAVE YEARLY INSPECTIONS WITH THE CORPS, BUT THEY MAY

14:50:26   5    NOT HAVE GONE TO THAT AREA, NO.

14:50:30   6    **Q.**   IF -- AGAIN, IF SOMEONE JUST ON THE STREET ASKED YOU, AS

14:50:34   7    THE CHIEF ENGINEER, "WHAT'S THE IMPORTANCE OF THAT FLOODWALL AT

14:50:37   8    THE EBIA," OR ANY HURRICANE PROTECTION SYSTEM IN THE NEW

14:50:42   9    ORLEANS REGION, WHAT WOULD YOU TELL THAT PERSON IN LAYMEN'S

14:50:45   10   TERMS?

14:50:45   11   **A.**   IT WAS DESIGNED BY THE CORPS TO KEEP OUT THE STANDARD

14:50:51   12   PROJECT HURRICANE.

14:50:52   13   **Q.**   AND HOW WOULD IT KEEP OUT THE STANDARD PROJECT HURRICANE?

14:50:55   14   **A.**   JUST BY ITS HEIGHT AND SIZE, IT WOULD KEEP THE WATER FROM

14:51:00   15   COMING OUT OF THE CANAL INTO THE ADJACENT NEIGHBORHOODS.

14:51:06   16   **Q.**   NOW, ARE THERE CERTAIN RULES THAT THE ORLEANS LEVEE

14:51:09   17   DISTRICT MAINTAINS TO ASSURE THAT THE HURRICANE FLOOD

14:51:14   18   PROTECTION SYSTEM IN THE WHOLE REGION WOULD NOT BE DAMAGED?

14:51:18   19   **A.**   NO SPECIFIC RULES.

14:51:20   20   **Q.**   OKAY.  WHAT ARE THE REGULATIONS THAT PREVENT SOMEONE FROM

14:51:29   21   HURTING THE LEVEE OR DAMAGING THE LEVEE?  HOW DOES SOMEONE LIKE

14:51:32   22   ME KNOW NOT TO DO SOMETHING THAT WOULD HARM THE LEVEE?

14:51:39   23   **A.**   I BELIEVE THERE'S A STATE LAW AGAINST DAMAGING FLOOD

14:51:43   24   CONTROL FEATURES.

14:51:43   25   **Q.**   OKAY.  WHAT TYPES OF THINGS COULD DONE TO DAMAGE A FLOOD

STEVAN GEORGE SPENCER – DIRECT


14:51:47   1   CONTROL FEATURE?

14:51:53   2   **A.**   CERTAINLY, WE'VE HAD MANY FLOODGATES THAT HAVE BEEN RUN

14:51:58   3   INTO AND THE FLOODGATE'S BEEN DAMAGED, THE SAME THING WITH

14:52:04   4   FLOODWALLS.

14:52:05   5         ANYTHING THAT COULD, YOU KNOW, THREATEN THE PHYSICAL

14:52:08   6   INTEGRITY OF THE FLOODWALL ITSELF, YOU KNOW.  ANY UNDERMINING

14:52:18   7   OF THE WALL, THINGS OF THAT NATURE.

14:52:19   8   **Q.**   AND WHAT TYPES OF THINGS WOULD LEAD TO AN UNDERMINING OF

14:52:23   9   THE WALL?

14:52:25  10   **A.**   HAD THERE BEEN, YOU KNOW, ANY EXCAVATION TOO CLOSE TO THE

14:52:29  11   WALL.

14:52:32  12   **Q.**   WHEN YOU TALK ABOUT ANY EXCAVATIONS CLOSE TO THE WALL, CAN

14:52:36  13   YOU TELL THE COURT WHAT YOU MEAN BY "CLOSE"?

14:52:38  14   **A.**   WELL, IT ALL DEPENDS ON HOW DEEP, THE SOIL CONDITIONS.

14:52:43  15   **Q.**   OKAY.  HOW DOES THE ORLEANS LEVEE DISTRICT KNOW THAT CLOSE

14:52:47  16   WOULD BE TOO CLOSE OR NOT CLOSE ENOUGH TO POTENTIALLY UNDERMINE

14:52:50  17   THE WALL?

14:52:52  18   **A.**   WE DEPEND ON THE CORPS, THROUGH A PERMIT PROCESS, FOR

14:52:59  19   ANY -- TO APPROVE THE WORK.  IT WOULD GO THROUGH THE CORPS OF

14:53:01  20   ENGINEERS, THEIR TECHNICAL REVIEW, AND DOTD AT THAT TIME, THEIR

14:53:06  21   TECHNICAL REVIEW.

14:53:06  22   **Q.**   CAN YOU EXPLAIN TO THE COURT, FROM YOUR UNDERSTANDING AS

14:53:09  23   THE CHIEF ENGINEER IN 2005, AND GOING THROUGH THE ENTIRE TIME

14:53:13  24   THAT YOU WERE THE CHIEF ENGINEER, WHAT WAS THE PERMIT PROCESS

14:53:16  25   THAT THE ORLEANS LEVEE DISTRICT HAD IN PLACE?

STEVAN GEORGE SPENCER - DIRECT

14:53:23   1   **A.**   AT THAT TIME WHEN WE WOULD GET A REQUEST FOR CONSTRUCTION

14:53:26   2   AND IT WAS WITHIN THE LIMITS THAT WE LOOKED AT FOR SOMETHING TO

14:53:31   3   BE ADJACENT TO A FLOOD CONTROL FEATURE, WE WOULD GET THAT

14:53:37   4   REQUEST, AND THEN COPIES WOULD BE SENT BY THE PERMITTEE OR THE

14:53:40   5   REQUESTER TO THE CORPS OF ENGINEERS AND THE DOTD FOR THEIR

14:53:44   6   REVIEW, COMMENT, AND THEIR -- HOPEFULLY, AN ISSUANCE OF A

14:53:49   7   LETTER OF NO OBJECTION TO THE LEVEE DISTRICT.

14:53:52   8           AND THEN THE LEVEE DISTRICT WOULD ISSUE A PERMIT TO

14:53:54   9   BE SIGNED AND RETURNED TO THEIR OFFICES.

14:53:58  10   **Q.**   AND IS THAT FOR EVERYONE WHO WANTS TO DO ANY WORK WITHIN

14:54:02  11   SOME SPECIFIED DISTANCE FROM THE LEVEE?

14:54:05  12   **A.**   YES.

14:54:06  13   **Q.**   OKAY.  WHAT WOULD THAT SPECIFIED DISTANCE BE FROM THE TIME

14:54:11  14   WHEN YOU WERE PROJECT ENGINEER?

14:54:15  15   **A.**   IT WAS EITHER 250 OR 300 FEET, DEPENDING ON WHO YOU TALKED

14:54:20  16   TO.

14:54:21  17   **Q.**   HOW WOULD SOMEONE KNOW THAT?  IS THERE -- DID YOU ALL HAVE

14:54:25  18   AN INTERNET WEB SITE UP?  I THINK THE INTERNET WAS UP AND GOING

14:54:29  19   IN 2003.

14:54:31  20   **A.**   NONE.

14:54:31  21   **Q.**   DID YOU ALL HAVE AN INTERNET WEB SITE THAT SOMEONE COULD

14:54:35  22   GO TO AND FIND THAT OUT?

14:54:36  23   **A.**   NO, SIR.

14:54:36  24   **Q.**   HOW WOULD SOMEONE, ANYONE IN THE COMMUNITY, FIND OUT WHAT

14:54:39  25   THOSE REGULATIONS WERE FOR THE ORLEANS LEVEE DISTRICT?

STEVAN GEORGE SPENCER - DIRECT


14:54:43   1   **A.**   GENERALLY, THE CONSULTANT OR ENGINEER THAT WAS DOING THE

14:54:49   2   DESIGN WOULD KNOW ABOUT THAT REQUIREMENT AND BE LOOKING FOR,

14:54:53   3   YOU KNOW, ANY KIND OF PERMITS THAT HAD TO BE APPLIED FOR AHEAD

14:54:57   4   OF TIME.

14:54:58   5   **Q.**   AND IS THAT INFORMATION THAT IS KNOWN GENERALLY IN THE

14:55:01   6   COMMUNITY?

14:55:02   7   **A.**   I THINK -- YEAH.  WITHIN THE COMMUNITY, YES.

14:55:04   8   **Q.**   AND BY "COMMUNITY," I MEAN PEOPLE WHO DO WORK IN THE AREAS

14:55:07   9   AROUND YOUR HURRICANE PROTECTION SYSTEMS, NOT NECESSARILY

14:55:11  10   SOMEONE FROM OUT OF STATE WHO'S NEVER WORKED HERE BEFORE.

14:55:14  11   **A.**   WITHIN THE COMMUNITY, YES.

14:55:15  12   **THE COURT:**  A QUICK QUESTION, SIR.  IN THE EVENT THAT

14:55:19  13   THE ENTITIES YOU MENTIONED, SUCH AS DOTD, AND MORE PARTICULARLY

14:55:25  14   THE CORPS, ISSUED A LETTER OF NO OBJECTION, WOULD YOU THEN --

14:55:33  15   WOULD THAT BE SUFFICIENT FOR YOU TO ISSUE THE PERMIT?

14:55:38  16   IN OTHER WORDS, DO YOU RUBBER STAMP THE LETTERS

14:55:41  17   OF NO OBJECTION, I GUESS IS MY QUESTION, WITHOUT MEANING TO BE

14:55:44  18   DEMEANING.

14:55:45  19   **THE WITNESS:**  WE WOULD CHECK TO MAKE SURE IT WASN'T

14:55:47  20   GOING TO LIMIT ACCESS OR, YOU KNOW, REDUCE OUR EFFECTIVENESS IN

14:55:51  21   GETTING IN THERE AND MAINTAINING THE FEATURE.

14:55:54  22   **THE COURT:**  YOU WOULD NOT DO AN INDEPENDENT

14:55:56  23   ENGINEERING EVALUATION ON THE PROJECT?

14:55:58  24   **THE WITNESS:**  NO, SIR.

14:55:59  25   **THE COURT:**  YOU WOULD DEPEND ON THE CORPS FOR THAT;

STEVAN GEORGE SPENCER - DIRECT


14:56:00   1   IS THAT CORRECT?

14:56:01   2            **THE WITNESS:**  YES, SIR.

14:56:01   3            **THE COURT:**  ALL RIGHT.

14:56:03   4            **MR. JOANEN:**  YOUR HONOR, IN LAYING THAT GROUNDWORK, I

14:56:04   5   HAVE SOME EXHIBITS THAT I'M GOING TO PULL UP THAT WILL GIVE

14:56:07   6   SOME GUIDANCE FOR THIS.

14:56:09   7            IF WE COULD CALL UP JX-1940-0076.

14:56:23   8            AND THIS IS A LETTER THAT'S ADDRESSED FROM THE

14:56:25   9   BOARD OF COMMISSIONERS, ORLEANS LEVEE DISTRICT, MARCH 2005, TO

14:56:30  10   THE CITY OF NEW ORLEANS DEPARTMENT OF SAFETY AND PERMITS,

14:56:33  11   MR. MICHAEL CENTINEO.

14:56:38  12            AND IF YOU'D GO TO THE NEXT PAGE REAL QUICKLY.

14:56:40  13   **BY MR. JOANEN:**

14:56:41  14   **Q.**  DO YOU SEE THAT RIGHT THERE, MR. SPENCER?  IS THAT YOUR

14:56:48  15   SIGNATURE?

14:56:48  16   **A.**  YES, SIR.

14:56:48  17            **MR. JOANEN:**  IF WE'D GO BACK TO THE FIRST PAGE.

14:56:51  18   **BY MR. JOANEN:**

14:56:51  19   **Q.**  THIS WAS ADDRESSED TO THE CITY OF NEW ORLEANS, DEPARTMENT

14:56:54  20   OF SAFETY AND PERMITS.

14:56:56  21            WHY IS IT THAT THE ORLEANS LEVEE DISTRICT WOULD SEND

14:57:00  22   SUCH A LETTER TO THE CITY OF NEW ORLEANS PERMITS?

14:57:03  23   **A.**  THIS WAS TO MAKE SURE THAT SHOULD SOMEBODY GO INTO THE

14:57:08  24   CITY AND GET A PERMIT, THAT THE CITY -- OR APPLIED FOR A PERMIT

14:57:14  25   THAT THE CITY WOULD KNOW THAT THEY WERE SUPPOSED TO HAVE HAD A

STEVAN GEORGE SPENCER - DIRECT


14:57:17   1   PERMIT FROM THE FLOOD PROTECTION -- I MEAN, THE ORLEANS LEVEE

14:57:19   2   DISTRICT PRIOR TO THEIR GETTING THE CITY BUILDING PERMIT.

14:57:23   3   **Q.**   OKAY.  AND AS OF 2005, IF YOU LOOK AT THE SECOND

14:57:26   4   PARAGRAPH, YOU'LL SEE IT INDICATES THAT THE 250 FEET OF

14:57:32   5   HURRICANE FLOOD PROTECTION STRUCTURE IS THAT AREA THAT YOU

14:57:35   6   WOULD SAY IS ADJACENT TO THE FLOOD CONTROL STRUCTURE; CORRECT?

14:57:39   7   **A.**   YES.

14:57:40   8            **MR. JOANEN:**  AND SO IF YOU COULD GO TO THE NEXT PAGE,

14:57:43   9   CARL.

14:57:47   10  **BY MR. JOANEN:**

14:57:47   11  **Q.**   THIS IS PAGE 77.  IN THE FIRST PARAGRAPH, THE SECOND

14:57:59   12  SENTENCE:  "OLD" -- AND THE SECOND SENTENCE READS:  "OLD

14:58:09   13  PERMITS ARE REQUIRED BEFORE BEGINNING WORK IN AREAS SPECIFIED."

14:58:12   14           WHEN YOU REFERENCE "AREAS SPECIFIED" THERE, YOU MEAN

14:58:16   15  THE 250 FEET WITHIN THE FLOOD CONTROL STRUCTURE?

14:58:19   16  **A.**   YES.

14:58:19   17  **Q.**   AND IT'S YOUR DIRECTIVE TO THEM THAT -- AND THIS, I GUESS,

14:58:21   18  IS BASED UPON THE LAW AS YOU UNDERSTAND IT, THAT NO CITY

14:58:24   19  PERMITS SHOULD BE ISSUED WITHOUT AN OLD PERMIT HAVING BEEN

14:58:28   20  ISSUED?

14:58:32   21  **A.**   I DON'T KNOW OF ANY LAW THAT THAT WOULD BE INTERPRETING,

14:58:38   22  NO.

14:58:39   23  **Q.**   WHY ARE YOU SAYING THAT OLD PERMITS ARE REQUIRED BEFORE

14:58:41   24  BEGINNING WORK IN THE AREAS SPECIFIED?  WHY WOULD YOU HAVE TO

14:58:45   25  BE TELLING THE CITY OF NEW ORLEANS THAT?

STEVAN GEORGE SPENCER - DIRECT


14:58:51   1   **A.**   BECAUSE IF THEY GRANT A PERMIT FOR SOMETHING THAT'S --

14:58:55   2   THAT COULD IMPACT THE LEVEE, IT COULD BE THREATENING THE LEVEE

14:59:00   3   INTEGRITY.  SO THEY NEED TO BE NOTIFIED THAT THEY SHOULDN'T BE

14:59:03   4   ALLOWING THAT WITHOUT OUR PERMISSION.

14:59:06   5   **Q.**   AND OLD HOLDS GREAT IMPORTANCE TO THE INTEGRITY OF THE

14:59:09   6   LEVEE; CORRECT?

14:59:10   7   **A.**   YES.

14:59:10   8           **MR. JOANEN:**  IF WE COULD GO TO THE NEXT EXHIBIT.

14:59:12   9   THAT'S GOING TO BE JX-1940-0078.

14:59:19   10               IF WE CAN GO TO THE SECOND PAGE.

14:59:20   11   **BY MR. JOANEN:**

14:59:21   12   **Q.**   AGAIN, THIS IS A LETTER TO THE BOARD OF COMMISSIONERS,

14:59:26   13   ORLEANS LEVEE DISTRICT.

14:59:27   14           JUST TO SHOW YOU DOWN HERE, IS THAT ALSO YOUR

14:59:30   15   SIGNATURE?

14:59:32   16   **A.**   YES, SIR.

14:59:32   17   **Q.**   AND THIS IS IN 2005.

14:59:36   18           AND JUST TO DRAW YOUR ATTENTION ON THE PAGE -- THE

14:59:38   19   FIRST PAGE, THE IDENTIFICATION OF THESE NUMBERS.  IN THIS

14:59:49   20   LETTER, ARE YOU INDICATING THAT THESE ARE THE TYPES OF PROPOSED

14:59:55   21   WORKS --

14:59:56   22           **MR. JOANEN:**  ACTUALLY, IF YOU GO A LITTLE BIT HIGHER,

14:59:59   23   CARL, A FEW SENTENCES UP.  I GUESS WE'LL GO WITH THAT WHOLE

15:00:04   24   PARAGRAPH AND THIS.

         25

STEVAN GEORGE SPENCER - DIRECT

15:00:05   1   BY MR. JOANEN:

15:00:06   2   Q.   IN HERE -- AND FEEL FREE TO READ IT.  I DON'T WANT TO PUT

15:00:10   3   WORDS IN YOUR MOUTH.  BUT I'LL DRAW YOUR ATTENTION TO THE THIRD

15:00:15   4   LINE RIGHT HERE WHERE IT TALKS ABOUT PROPOSED WORKS.

15:00:18   5           ARE NUMBERS 1 THROUGH 7 EXAMPLES OF THE TYPES OF

15:00:22   6   PROPOSED WORKS WITHIN 250 FEET THAT THE ORLEANS LEVEE DISTRICT

15:00:27   7   BELIEVES SHOULD BE CONSIDERED FOR PERMIT?

15:00:30   8   A.   YES, YES.

15:00:31   9   Q.   AND THEN IF WE CAN GO TO THE NEXT PAGE, I WANT TO DRAW

15:00:38   10   YOUR ATTENTION TO THE CAPTION UP HERE, WHERE YOU HAVE THE

15:00:45   11   "ORLEANS LEVEE DISTRICT, PERMITTING PROCESS."

15:00:48   12           YOU TALK ABOUT THE AREAS WHERE IT WOULD HAVE TO BE,

15:00:51   13   AND THE INNER HARBOR NAVIGATIONAL CANAL IS ONE OF THE AREAS

15:00:54   14   THAT IS OF IMPORTANCE TO YOU.  AND YOU HAVE THE DATE HERE OF

15:00:58   15   2005.

15:00:59   16           DO YOU KNOW WHETHER THIS LETTER WOULD HAVE BEEN SENT

15:01:02   17   OUT PRIOR TO MARCH 2005, WHILE YOU WERE THE CHIEF ENGINEER?

15:01:12   18           IN ESSENCE, I'M ASKING YOU:  WERE THESE REGULATIONS

15:01:17   19   IN PLACE PRIOR TO MARCH OF 2005?

15:01:19   20   A.   I BELIEVE WE SENT PREVIOUS VERSIONS OF THIS LETTER TO THE

15:01:23   21   CITY.  I DON'T REMEMBER WHEN THEY STARTED.

15:01:28   22           MR. JOANEN:  AND IF I CAN, I'LL -- IF I CAN, CARL, IF

15:01:39   23   WE CAN TURN TO JX-1940-022.

15:01:45   24   BY MR. JOANEN:

15:01:45   25   Q.   AND, MR. SPENCER, I WANT YOU TO REMEMBER THE WAY THAT PAGE

STEVAN GEORGE SPENCER - DIRECT


15:01:51   1   LOOKED.  THIS WAS A BOARD OF COMMISSIONERS, ORLEANS LEVEE

15:01:55   2   DISTRICT FAX SENT TO DENNIS O'CONNOR OF WGI.

15:02:01   3            **MR. JOANEN:**  WE CAN SHOW THE WHOLE PAGE, CARL.

15:02:06   4              THEN WE'LL TURN FROM THERE TO JX-1940-0025, JUST

15:02:14   5   THREE PAGES AWAY.

15:02:15   6   **BY MR. JOANEN:**

15:02:16   7   **Q.**   AND, AGAIN, IF YOU'LL FOCUS ON THIS PARAGRAPH RIGHT HERE

15:02:19   8   AND THE TOP PART.

15:02:20   9            **MR. JOANEN:**  IF YOU CAN CATCH THAT CAPTION.

15:02:23  10   **BY MR. JOANEN:**

15:02:29  11   **Q.**   THIS PARAGRAPH ALONG WITH THE TOP WHERE IT SAYS:  "PAGE 2,

15:02:37  12   ORLEANS LEVEE DISTRICT, PERMITTING PROCESS," AND THAT'S DATED

15:02:40  13   FROM MARCH -- I MEAN, I'M SORRY -- FOR 2000 -- APRIL OF 2000.

15:02:41  14            WOULD THIS LEAD YOU TO BELIEVE THAT THAT PROCESS THAT

15:02:44  15   WE SHOWED IN THE 2005 LETTER WAS IN PLACE AS OF 2000?

15:02:49  16   **A.**   IN GENERAL, YES.

15:02:50  17   **Q.**   OKAY.  WITH THAT BEING SAID, DO YOU RECALL WHEN THE FIRST

15:02:55  18   TIME YOU WERE CONTACTED BY A COMPANY CALLED WASHINGTON GROUP

15:02:58  19   INTERNATIONAL THAT WAS GOING TO DO WORK IN THE EAST BANK

15:03:01  20   INDUSTRIAL AREA?

15:03:04  21            AND LET ME ASK YOU -- LET ME QUALIFY THAT.  I

15:03:07  22   APOLOGIZE.

15:03:08  23            WHEN WE USE THE TERM "EAST BANK INDUSTRIAL AREA," DO

15:03:11  24   YOU KNOW WHERE THAT IS?

15:03:13  25   **A.**   I BELIEVE IT'S WHERE WE'RE TALKING ABOUT, IN THE FLORIDA

STEVAN GEORGE SPENCER - DIRECT


15:03:16   1   AVENUE AREA.

15:03:17   2   **Q.**   YES, SIR.  IT'S THE AREA BETWEEN THE INDUSTRIAL CANAL AND

15:03:21   3   THE FLOODWALL ADJACENT TO THE LOWER NINTH WARD BELOW FLORIDA

15:03:26   4   AVENUE ABOVE CLAIBORNE.

15:03:27   5            ARE YOU FAMILIAR WITH THAT AREA?

15:03:29   6   **A.**   YES.

15:03:29   7   **Q.**   THAT'S WHERE WE'RE TALKING ABOUT.  THERE'S A FLOODWALL

15:03:33   8   STRUCTURE THERE; CORRECT?

15:03:34   9   **A.**   YES.

15:03:34  10   **Q.**   DO YOU RECALL WHEN THE FIRST TIME YOU WERE CONTACTED BY

15:03:36  11   ANYONE FROM WGI, YOU OR YOUR AGENCY, ABOUT THIS PROCESS THAT

15:03:41  12   WGI WOULD HAVE TO DO IF THEY WERE PROPOSING ANY TYPES OF WORKS

15:03:46  13   THAT WERE CONTAINED IN THAT LETTER, "EXCAVATIONS WITHIN

15:03:50  14   THREE FEET," ET CETERA, WITHIN THAT CRITICAL AREA OF THE

15:03:54  15   FLOODWALL, WHAT THEY WERE INQUIRING ABOUT?

15:03:57  16            DO YOU RECALL WHEN THAT WOULD HAVE BEEN?

15:04:00  17   **A.**   NOT SPECIFICALLY, NO.

15:04:01  18   **Q.**   IF I CAN, I'LL SHOW YOU TO TRY AND REFRESH -- SORRY -- TO

15:04:08  19   REFRESH YOUR RECOLLECTION, IF WE CAN.

15:04:09  20            **MR. JOANEN:**  THIS WOULD BE JX-1246-0001.

15:04:14  21   **BY MR. JOANEN:**

15:04:15  22   **Q.**   THIS YOU PROBABLY WON'T RECOGNIZE, MR. SPENCER.

15:04:18  23            IF WE CAN TURN TO THE NEXT PAGE, WHICH IS PAGE 2 OF

15:04:22  24   THIS.  YOU'LL SEE IT'S DATED NOVEMBER 7TH, TO YOU BY AN

15:04:27  25   INDIVIDUAL BY -- AND IT INDICATES -- WELL, YOU CAN READ IT.

STEVAN GEORGE SPENCER - DIRECT


15:04:35  1      IT INDICATES THAT AN INDIVIDUAL BY THE NAME OF BOBBY

15:04:38  2  SMITH OF THE WASHINGTON GROUP INTERNATIONAL CONTACTED THE LEVEE

15:04:41  3  BOARD ON OCTOBER 18TH, 2000, TO INQUIRE ABOUT PERMITS AND

15:04:45  4  NOTIFICATIONS.

15:04:46  5      DO YOU RECALL SPEAKING WITH A MR. BOBBY SMITH?

15:04:52  6  A.   THAT'S -- I DID TALK TO SOMEBODY.  I DON'T REMEMBER WHO,

15:04:56  7  THOUGH.

15:04:57  8  Q.   OKAY.  DO YOU REMEMBER WHEN YOU TALKED TO THAT PERSON WHAT

15:04:59  9  THE SUBSTANCE OF THAT CONVERSATION WAS?

15:05:02  10  A.   JUST OVERALL WORK THAT THEY WERE PLANNING ON DOING.

15:05:06  11  Q.   OKAY.  ALL RIGHT.

15:05:08  12      MR. JOANEN:  IF WE COULD TURN TO JX-1243-0001.

15:05:20  13  BY MR. JOANEN:

15:05:20  14  Q.   AND I'LL EXPRESS TO YOU THIS IS SOMETHING THAT WAS

15:05:21  15  PRODUCED BY WASHINGTON GROUP INTERNATIONAL IN THIS LITIGATION.

15:05:24  16      IT'S A MEMO BETWEEN THOSE TWO.  YOU MAY NOT HAVE SEEN

15:05:29  17  THIS, BUT I JUST WANTED TO POINT OUT --

15:05:32  18      MR. JOANEN:  IF WE COULD CAPTURE A LITTLE BIT MORE OF

15:05:32  19  THAT FIRST PARAGRAPH WHERE IT INDICATES --

15:05:35  20  BY MR. JOANEN:

15:05:36  21  Q.   AND YOU CAN READ IT, THAT THIS INDIVIDUAL, BOBBY SMITH,

15:05:39  22  WOULD HAVE TALKED TO STEVE SPENCER OF THE LEVEE BOARD -- WE

15:05:42  23  KNOW THAT TO BE YOU -- "AS WE NEEDED A PERMIT FOR THE

15:05:47  24  CONSTRUCTION OF A FENCE."

15:05:49  25      DO YOU REMEMBER TALKING TO A MR. BOBBY SMITH ABOUT

STEVAN GEORGE SPENCER – DIRECT


15:05:51   1   THE CONSTRUCTION OF A FENCE?

15:05:53   2   **A.**   NOT SPECIFICALLY, NO.

15:05:54   3   **Q.**   OKAY.  AND SO IF HE ALSO INDICATES THAT HE ASKED ABOUT A

15:05:57   4   LIFT STATION AND ANYTHING NEEDED TO BE DONE WITH THAT, DO YOU

15:06:01   5   RECALL THAT BEING BROUGHT UP TO YOU IN THAT CONVERSATION?

15:06:05   6   **A.**   NO.

15:06:05   7   **Q.**   OKAY.  WOULD YOU BELIEVE THERE WAS ANYTHING MORE BROUGHT

15:06:09   8   UP IN THAT INITIAL CONVERSATION IN OCTOBER OF 2000 ABOUT WGI

15:06:14   9   HAVING TO OBTAIN A PERMIT FOR WORK IT PROPOSED TO DO IN THE

15:06:18   10   EAST BANK INDUSTRIAL AREA?

15:06:20   11   **A.**   I DON'T RECALL SAYING YES OR NO ON THE PERMIT PORTION OF

15:06:28   12   IT.

15:06:29   13   **Q.**   AND WOULD YOU RECALL TELLING TO MR. BOBBY SMITH, "JUST

15:06:32   14   SEND A LETTER AND LET US KNOW WHAT YOU'RE PLANNING TO DO"?

15:06:35   15   **A.**   WELL, I SAID TO SEND A LETTER, I'M SURE.  SO . . .

15:06:40   16   **Q.**   OKAY.  BUT FROM THE BEST OF YOUR RECOLLECTION, THAT'S

15:06:44   17   PROBABLY WHAT THEY WERE REFERENCING; RIGHT?  AND THAT'S WHY YOU

15:06:48   18   WOULD HAVE SAID, "WELL, SEND A LETTER TO THAT EFFECT," IF YOU

15:06:52   19   RECALL?

15:06:53   20   **A.**   NO.  I DO NOT RECALL ANY OF THE CONVERSATION.

15:06:56   21   **Q.**   OKAY.  FAIR ENOUGH.

15:06:56   22           **MR. JOANEN:**  IF WE CAN GO BACK TO JX-1240-02.

15:07:07   23               I'M SORRY, 1246.  1246.

15:07:10   24   **BY MR. JOANEN:**

15:07:15   25   **Q.**   THIS IS THE LETTER THAT WOULD HAVE BEEN SENT TO YOU.

456

STEVAN GEORGE SPENCER - DIRECT


15:07:18    1   THAT'S PROBABLY ONE THAT WAS REFERENCED BY THAT TELECON REPORT.

15:07:23    2            **MR. JOANEN:**  IF WE CAN HIGHLIGHT THIS LOWER PART

15:07:26    3   RIGHT HERE.

15:07:26    4   **BY MR. JOANEN:**

15:07:28    5   **Q.**   THIS WOULD INDICATE THAT THE -- WHATEVER -- WHOEVER'S

15:07:32    6   CONTACTING YOU, WOULD YOU BELIEVE THIS IS WHERE THEY WERE

15:07:35    7   LOCATED, ON GENERAL DEGAULLE, ON THE WEST BANK OF NEW ORLEANS?

15:07:41    8   **A.**   IF THEY'VE GOT IT DOWN HERE FOR A LOCAL CONTACT, YES.

15:07:45    9            **MR. JOANEN:**  OKAY.  WE CAN CLOSE THAT, CARL.

15:07:48   10            IF WE CAN HIGHLIGHT THE -- WHAT DID THEY SAY,

15:07:50   11   THE FACILITIES?  THIS PARAGRAPH RIGHT HERE.

15:07:52   12   **BY MR. JOANEN:**

15:07:56   13   **Q.**   NOW, THIS DISCUSSES A NUMBER OF THINGS THAT WERE GOING TO

15:07:59   14   TAKE PLACE, MORE THAN JUST THE INSTALLATION OF A FENCE AND THE

15:08:01   15   REMOVAL OF A LIFT STATION; CORRECT?

15:08:05   16   **A.**   YES.

15:08:06   17            **MR. JOANEN:**  OKAY.  WE CAN CLOSE THAT AND GO TO THE

15:08:08   18   NEXT PAGE, CARL.

15:08:14   19            AND THEN THE REMAINDER OF THIS PAGE --

15:08:17   20            CAN WE ENLARGE THAT?

15:08:18   21   **BY MR. JOANEN:**

15:08:20   22   **Q.**   AND THIS IS, AGAIN, MORE INFORMATION THAT WAS BEING

15:08:24   23   PRESENTED TO YOU, CORRECT, OR TO THE ORLEANS LEVEE DISTRICT AS

15:08:28   24   TO WHAT THEY PROPOSED TO DO?

15:08:29   25   **A.**   YES.

STEVAN GEORGE SPENCER - DIRECT


15:08:33   1   **Q.**   NOW, I WANT TO DRAW YOUR ATTENTION TO WHERE IT SAYS RIGHT

15:08:37   2   HERE, "REMOVAL OF ALL ELECTRICAL, SEWER, GAS IDENTIFIED ITEM

15:08:41   3   114 ON FIGURE 3-5 AND TABLE 3-5."

15:08:51   4          DO YOU SEE THAT?

15:08:51   5   **A.**   YES.

15:08:51   6   **Q.**   DO YOU RECALL IN PARTICULAR FIGURING OUT WHAT ALL OF THAT

15:08:54   7   WAS ALL ABOUT BACK THEN?

15:08:56   8   **A.**   NO.

15:08:56   9   **Q.**   IF I COULD CALL YOUR ATTENTION TO -- AND WHEN THEY

15:09:00   10   REFERENCE FIGURE 3.5 ON THERE, I'LL CALL YOUR ATTENTION --

15:09:07   11          **MR. JOANEN:**  IF WE CAN CALL UP JX-1246-0009.

15:09:12   12          IF WE CAN ROTATE IT?

15:09:15   13   **BY MR. JOANEN:**

15:09:19   14   **Q.**   NOW, THIS IS THE WAY IT WAS PRODUCED TO US, AND I DON'T

15:09:21   15   KNOW HOW TO TELL YOU TO DO THIS.  BUT CAN YOU TELL ME WHERE

15:09:26   16   FIGURE 114 IS ON THAT?

15:09:31   17   **A.**   ZOOM WAY IN AND LOOK AT THE CROSSHATCH SERIES TO FIND OUT

15:09:35   18   WHEREVER IT IS.

15:09:36   19   **Q.**   IT'S DIFFICULT TO DETERMINE, WOULD YOU SAY?

15:09:40   20   **A.**   YES, WITHOUT BLOWING IT UP QUITE A BIT.

15:09:48   21          **MR. JOANEN:**  NOW, IF WE COULD REAL QUICKLY, CARL, GO

15:09:50   22   TO PX-3132-0001.

15:09:54   23   **BY MR. JOANEN:**

15:09:55   24   **Q.**   YOU DISCUSSED, WHEN YOU HAD TO SEND THE LETTERS TO THE

15:09:59   25   CITY OF NEW ORLEANS, ANYONE WANTING TO DO WORK THAT OBTAINED

STEVAN GEORGE SPENCER - DIRECT


15:10:02   1   PERMITS FROM THE CITY OF NEW ORLEANS SHOULD GET SOME INPUT FROM

15:10:05   2   THE ORLEANS LEVEE DISTRICT.

15:10:05   3          I WANTED TO SHOW THIS TO YOU, AND WE CAN SHOW -- IT'S

15:10:11   4   A CHECK TO THE DEPARTMENT OF CITY PERMITS FOR $4,800.

15:10:20   5          **MR. JOANEN:**  AND I WILL TELL THE COURT THERE ARE

15:10:21   6   MANY, MANY OF THESE.

15:10:23   7   **BY MR. JOANEN:**

15:10:23   8   **Q.**  BUT I PUT IT IN JUST TO SHOW THAT THERE WERE SAFETY

15:10:25   9   PERMITS OBTAINED FROM THE CITY OF NEW ORLEANS.

15:10:27   10          WOULD YOU HAVE BEEN INVOLVED IN ANY OF THE

15:10:29   11   INTERACTION BETWEEN WGI IN THIS CASE AND THE CITY OF NEW

15:10:32   12   ORLEANS IN OBTAINING THEIR PERMITS?

15:10:36   13   **A.**  NO.

15:10:37   14   **Q.**  AND BY THAT I MEAN, WOULD THE CITY OF NEW ORLEANS HAVE

15:10:39   15   CONTACTED YOU TO SAY, "WE HAVE SOMEONE COMING IN HERE WITH

15:10:41   16   THIS"?

15:10:42   17   **A.**  THEY GENERALLY DIDN'T.

15:10:43   18   **Q.**  THEY DID NOT?

15:10:45   19   **A.**  RIGHT.  YES.

15:10:50   20   **Q.**  NOW, WHEN YOU RECEIVED THAT LETTER OF NOVEMBER 7TH, 2000,

15:10:54   21   THAT WE WERE JUST LOOKING AT, DO YOU RECALL WHAT THE ORLEANS

15:10:59   22   LEVEE DISTRICT DID WITH THAT LETTER WHEN THEY RECEIVED IT?

15:11:02   23          AND I KNOW YOU'VE GIVEN A PREVIOUS DECLARATION WHERE

15:11:05   24   YOU SAID YOU TOOK THAT AS A REQUEST FOR A PERMIT.  THAT BEING

15:11:08   25   THE CASE, WHAT WOULD THE ORLEANS LEVEE DISTRICT HAVE DONE?

STEVAN GEORGE SPENCER - DIRECT


15:11:11    1    **A.**   WELL, WE WOULD ASK THAT IT BE SENT TO THE CORPS AND THE

15:11:14    2    DOTD FOR REVIEW.

15:11:20    3    **Q.**   IF WE CAN, I'LL DRAW YOUR ATTENTION TO JX-1940-0022.

15:11:52    4         AGAIN, MR. O'CONNOR, THIS IS FROM YOU TO DENNIS --

15:11:56    5    I'M SORRY, MR. SPENCER.  THIS IS FROM YOU TO DENNIS O'CONNOR OF

15:12:03    6    WGI INFORMING THEM THAT THEY ARE SUPPOSED TO TAKE ADDITIONAL

15:12:05    7    STEPS IN THIS PERMIT PROCESS; CORRECT?

15:12:07    8    **A.**   I ASKED THAT THEY FORWARD THEM, YES.

15:12:15    9    **Q.**   AND IF YOU CAN EXPLAIN --

15:12:17   10         **MR. JOANEN:**  IF WE CAN ENLARGE THIS MESSAGE.

15:12:19   11    **BY MR. JOANEN:**

15:12:19   12    **Q.**   WHAT WAS YOUR INTENTION, AS THE CHIEF ENGINEER FOR THE

15:12:23   13    CORPS OF ENGINEERS -- FOR THE ORLEANS LEVEE DISTRICT, IN

15:12:25   14    TELLING WGI WHAT THEY WERE SUPPOSED TO DO NEXT?

15:12:29   15    **A.**   I ASKED THAT THEY FORWARD THIS TO -- TO THE CORPS OF

15:12:34   16    ENGINEERS, WHICH WAS BRIAN KELLER WITH OPERATIONS, AND GENEVA

15:12:38   17    GRILLE, WHO'S WITH DISTRICT 2 WITH DOTD, FOR STARTING THE

15:12:44   18    PERMIT PROCESS.

15:12:45   19    **Q.**   AND THAT WOULD INCLUDE THE LETTER, AS IT WAS PRODUCED TO

15:12:49   20    YOU, WITH THE ATTACHMENTS?

15:12:50   21    **A.**   YES.

15:12:50   22    **Q.**   DID YOU GIVE WGI ANY ADDITIONAL INSTRUCTIONS THAT THEY

15:12:53   23    SHOULD PROVIDE ANYTHING ELSE TO THE CORPS OF ENGINEERS?

15:12:57   24    **A.**   NO.

15:12:58   25    **Q.**   WERE YOU ABLE TO DETERMINE, BASED UPON THE INFORMATION

STEVAN GEORGE SPENCER - DIRECT


15:13:00  1  THAT WAS PROVIDED TO YOU, WHETHER THERE WAS GOING TO BE ANY

15:13:04  2  EXCAVATIONS THAT EXCEEDED THREE FEET, AS YOUR LETTER SEEMS TO

15:13:08  3  INDICATE IS AN IMPORTANT CRITERIA, WITHIN 250 FEET OF THE

15:13:14  4  FLOODWALL?

15:13:16  5  **A.**   NO, I DON'T RECALL LOOKING FOR THAT.  IT WAS JUST SENT FOR

15:13:22  6  TECHNICAL REVIEW TO THE CORPS AND DOTD.

15:13:24  7  **Q.**   SO THE ORLEANS LEVEE DISTRICT WON'T DO ANY OF ITS OWN

15:13:28  8  ENGINEERING ANALYSIS FOR THAT; CORRECT?

15:13:29  9  **A.**   CORRECT.

15:13:31  10  **Q.**   AND YOU'RE RELYING UPON THE DEPARTMENT OF TRANSPORTATION

15:13:34  11  AND DEVELOPMENT TO DO THAT; IS THAT CORRECT?

15:13:36  12  **A.**   AND THE CORPS OF ENGINEERS.

15:13:38  13  **Q.**   AND THE CORPS?

15:13:40  14       OKAY.  DO YOU AT ANY POINT, AS THE PROJECT

15:13:43  15  ENGINEER -- OR THE CHIEF ENGINEER FOR THE ORLEANS LEVEE

15:13:45  16  DISTRICT, EVALUATE THE DOCUMENTATION THAT'S PROVIDED TO YOU,

15:13:48  17  THAT YOU THEN TELL THE CONTRACTOR, LIKE WGI, TO SEND TO THE

15:13:52  18  CORPS TO MAKE SURE THERE'S ENOUGH INFORMATION IN THERE FOR THE

15:13:55  19  CORPS OF ENGINEERS TO MAKE AN APPROPRIATE ENGINEERING

15:13:59  20  EVALUATION?

15:14:00  21  **A.**   IN GENERAL, LOOKING TO MAKE SURE THERE'S A LOCATION PLAN

15:14:04  22  AND, YOU KNOW, ITS RELATION TO THE FLOOD PROTECTION FEATURE AND

15:14:08  23  THAT KIND OF THING, TO MAKE SURE THAT'S THERE FOR THE CORPS TO,

15:14:11  24  YOU KNOW, LOOK AT.  BECAUSE, OTHERWISE, THE CORPS WILL COME

15:14:14  25  BACK TO THE PERMITTEE AND ASK FOR ADDITIONAL INFORMATION.  AND

STEVAN GEORGE SPENCER - DIRECT


15:14:16   1   YOU TRY TO GET RID OF THAT BACK-AND-FORTH BUSINESS.

15:14:24   2   **Q.**   ON THIS PARTICULAR INSTANCE, YOU DIDN'T GET INVOLVED IN

15:14:28   3   THAT, TRYING TO ELIMINATE THAT BACK-AND-FORTH PROCESS, YOU JUST

15:14:31   4   TOLD THEM TO GO AHEAD AND SEND IT ON ITS WAY; CORRECT?

15:14:34   5   **A.**   WELL, WE DID SEE WHAT THEY HAD PROVIDED, AND SO -- AND

15:14:36   6   THEY FORWARDED IT ON TO THE CORPS AND DOTD.

15:14:43   7   **Q.**   NOW, WHEN YOU SAID THERE WAS A REMOVAL OF A SEWER LIFT

15:14:50   8   STATION, DO YOU KNOW WHAT A SEWER LIFT STATION IS?

15:14:51   9   **A.**   YES.

15:14:52   10   **Q.**   WHAT IS A SEWER -- WHAT IS YOUR UNDERSTANDING OF WHAT A

15:14:53   11   SEWER LIFT STATION IS?

15:14:54   12   **A.**   GENERALLY, IT'S SOMETHING THAT A SEWER -- A SANITARY SEWER

15:14:58   13   THAT'S FED INTO A MANHOLE VIA GRAVITY FLOW, AND THEN IT'S

15:15:03   14   PICKED UP TO A HIGHER ELEVATION SO IT CAN START THE PROCESS OF

15:15:09   15   GRAVITY FLOW AGAIN.

15:15:14   16   **Q.**   AND YOU'LL REMEMBER, IN THAT LETTER, IT TALKED ABOUT --

15:15:17   17   YOU MAY NOT REMEMBER, I CAN SHOW IT TO YOU -- IT TALKS ABOUT A

15:15:17   18   BOLAND LIFT STATION.  DO YOU KNOW WHAT "BOLAND" WOULD RELATE TO

15:15:22   19   IN THIS CONTEXT?

15:15:24   20   **A.**   NO.

15:15:38   21   **Q.**   OKAY.

15:15:39   22        **MR. JOANEN:**   IF WE COULD CALL UP -- THIS WOULD BE

15:15:40   23   JX-1576-0007.

15:15:46   24             AND, YOUR HONOR -- IF WE CAN ENLARGE THIS --

15:15:47   25   THIS WAS IN MR. CHAD MORRIS' EXPERT REPORT THAT'S BEEN PRODUCED

STEVAN GEORGE SPENCER - DIRECT


15:15:53   1   INTO EVIDENCE.

15:15:53   2           **THE COURT:**  YES.

15:15:53   3   **BY MR. JOANEN:**

15:15:53   4   **Q.**   SIR, JUST TO GIVE YOU SOME PERSPECTIVE, BOLAND MARINE IS

15:15:57   5   AN AREA WITHIN THE EBIA, AND IT WAS NAMED THAT BECAUSE THERE

15:16:00   6   USED TO BE AN ENTITY THAT WAS THERE.  SO AS YOU UNDERSTAND

15:16:03   7   WHERE WE ARE NOW --

15:16:03   8           **MR. JOANEN:**  IF WE CAN CLOSE THAT, AND WE'RE GOING TO

15:16:09   9   GO NEXT TO JX-00286-008.

15:16:23  10           **MS. DALEY:**  WOULD YOU REPEAT THAT, PLEASE?

15:16:28  11           **MR. JOANEN:**  OH, SURE.  JX-00286-008.

15:16:33  12           **MS. DALEY:**  THANK YOU.

15:16:35  13           **MR. JOANEN:**  AND IF WE CAN HIGHLIGHT THIS AREA RIGHT

15:16:37  14   HERE.

15:16:37  15   **BY MR. JOANEN:**

15:16:38  16   **Q.**   AND HERE THEY'RE TALKING ABOUT REMOVING AN UNDERGROUND

15:16:42  17   LIFT STATION FROM THE NORTH SIDE OF NUMBER 11.

15:16:45  18           **MR. JOANEN:**  AND SO IF WE CAN GO BACK TO THE PREVIOUS

15:16:48  19   SLIDE OF THE BOLAND SITE.

15:17:05  20              IF WE CAN ENLARGE THAT?

15:17:06  21           **MR. TREEBY:**  IF YOUR HONOR, PLEASE.  FOR THE RECORD,

15:17:08  22   THIS IS FROM CHAD MORRIS' EXPERT REPORT.  IT'S NOT IN EVIDENCE.

15:17:11  23           **THE COURT:**  I DON'T KNOW IF IT WAS INTRODUCED OR NOT.

15:17:13  24   I DON'T RECALL.

15:17:14  25           **MR. JOANEN:**  MINE IS SAYING THIS WAS.  THESE TWO MAPS

STEVAN GEORGE SPENCER - DIRECT


15:17:17  1  WERE.

15:17:17  2          BUT IF THEY WEREN'T -- BUT IF NOT, I WILL MOVE

15:17:20  3  TO INTRODUCE THEM INTO EVIDENCE AT THE END OF THIS IF THAT'S

15:17:23  4  OKAY.

15:17:24  5          **THE COURT:**  ALL RIGHT.

15:17:26  6          **MR. BRUNO:**  YOUR HONOR, IT'S FIGURE 3-2.  I MOVED IT

15:17:27  7  INTO EVIDENCE DURING COLLETTI, JUST SO YOU KNOW.

15:17:28  8          **MR. JOANEN:**  OKAY.  THANK YOU.

15:17:39  9          **MR. WOODCOCK:**  THAT WAS NEVER TALKED ABOUT IN

15:17:40  10  COLLETTI.

15:17:40  11          **MR. BRUNO:**  YES, IT WAS.  I SHOWED IT --

15:17:41  12          **THE COURT:**  WAIT, WAIT.  LET'S NOT TALK TO EACH

15:17:41  13  OTHER.  TALK TO THE COURT.

15:17:41  14          **MR. BRUNO:**  I APOLOGIZE.

15:17:41  15          **MR. WOODCOCK:**  I APOLOGIZE.

15:17:41  16          **THE COURT:**  AND IT'S GOING TO GET INTO EVIDENCE

15:17:43  17  REGARDLESS, IF SOMEBODY MOVES IT.

15:17:45  18          SO DID SOMEBODY MOVE IT INTO EVIDENCE?

15:17:48  19          **MR. BRUNO:**  I DID, JUDGE.  IF YOU REMEMBER, AND MAYBE

15:17:50  20  COUNSEL FORGOT, ATTACHED TO THE PERMIT WERE HALF COPIES OF THE

15:17:53  21  MAPS.  AND I SAID, "HERE ARE THE WHOLE COPIES OF THE MAPS."

15:17:56  22          ON THE PERMIT IT SAYS, FIGURE 3-1, 3-2, 3-3,

15:18:01  23  3-4, AND I GAVE THEM THE RIGHT NUMBERS.  AND THAT WAS ALL MOVED

15:18:04  24  INTO EVIDENCE.  OKAY?  JUST SO YOU KNOW.

15:18:06  25          **THE COURT:**  LOOK, I DON'T HAVE AN INDEPENDENT

STEVAN GEORGE SPENCER – DIRECT

| | | |
|---|---|---|
| 15:18:08 | 1 | RECOLLECTION OF THAT.  I DON'T KNOW.  BUT -- |
| 15:18:11 | 2 | **MR. TREEBY:**  LET'S MAKE SURE IT'S IN EVIDENCE. |
| 15:18:13 | 3 | **THE COURT:**  EXACTLY.  I AGREE.  I AGREE. |
| 15:18:16 | 4 | **MR. BRUNO:**  WE WILL DO THAT, JUDGE, FOR YOU. |
| 15:18:19 | 5 | **THE COURT:**  OKAY.  THANK YOU. |
| 15:18:19 | 6 | GO AHEAD. |
| 15:18:20 | 7 | **MR. JOANEN:**  I'M MOVING A LITTLE SLOW, HERE, YOUR |
| 15:18:22 | 8 | HONOR. |
| 15:18:22 | 9 | **BY MR. JOANEN** |
| 15:18:23 | 10 | **Q.**  BUT JUST TO POINT OUT FOR YOU, MR. SPENCER, NUMBER 11 HERE |
| 15:18:27 | 11 | IS AN AREA.  WOULD THIS HAVE BEEN THE TYPE OF THING THAT YOU |
| 15:18:30 | 12 | WOULD HAVE LOOKED INTO BEFORE YOU FORWARDED THIS ON TO THE |
| 15:18:33 | 13 | CORPS OF ENGINEERS AND THE DEPARTMENT OF TRANSPORTATION AND |
| 15:18:36 | 14 | DEVELOPMENT? |
| 15:18:38 | 15 | **A.**  WELL, WE WOULD LOOK FOR A LOCATION MAP THAT WOULD SHOW |
| 15:18:41 | 16 | WHERE EVERYTHING WAS IN RELATION TO THE FLOOD PROTECTION. |
| 15:18:45 | 17 | **Q.**  AND THE MAP THAT WE CALLED UP BEFORE, AND I ASKED YOU TO |
| 15:18:49 | 18 | FIND A PARTICULAR LOCATION, YOU WERE UNABLE TO DO SO; CORRECT? |
| 11:37:58 | 19 | **A.**  (NO VERBAL RESPONSE.) |
| 11:37:59 | 20 | **Q.**  AND I WANT TO ASK YOU:  WITH THE PHOTOGRAPH THAT WE SHOWED |
| 15:18:59 | 21 | YOU, ARE YOU PRODUCED THINGS IN THE SAME SIZE, ON 8 1/2 BY 11, |
| 15:19:05 | 22 | OR ARE YOU GIVEN THOSE LARGER ENGINEERING MAPS? |
| 15:19:08 | 23 | **A.**  I'M NOT SURE WHAT WE RECEIVED AT THAT TIME.  WE TRIED TO |
| 15:19:10 | 24 | GET THE SMALLER 8 1/2 BY 14? |
| 15:19:16 | 25 | **Q.**  8 1/2 BY 11 WOULD BE REGULAR PAPER, 8 1/2 BY 14 WOULD BE |

STEVAN GEORGE SPENCER – DIRECT


15:19:24    1   LEGAL SIZE.

15:19:25    2   **A.**   WE ASK FOR THOSE, BUT I'M NOT SURE WHAT WE GOT IT IN

15:19:28    3   ORIGINALLY, NO.

15:19:29    4           **MR. JOANEN:**  IF WE CAN, WE'LL TURN -- MOVING ON TO

15:19:30    5   JX-1940-0027.

15:19:37    6              AND IF WE CAN ENLARGE THIS RIGHT HERE.

15:19:43    7   **BY MR. JOANEN:**

15:19:44    8   **Q.**   I'LL EXPRESS TO YOU THAT THIS IS AN ORLEANS LEVEE DISTRICT

15:19:52    9   FORM OF NO OBJECTION REGARDING THIS DATE OF REQUEST,

15:19:56   10   NOVEMBER 7TH, 2000.

15:20:02   11           **MR. JOANEN:**  GO TO THE NEXT PAGE.

15:20:04   12              CAN YOU ENLARGE THIS?

15:20:04   13   **BY MR. JOANEN:**

15:20:06   14   **Q.**   DO YOU RECOGNIZE WHO THESE PEOPLE WOULD HAVE BEEN WITH

15:20:11   15   DOTD?

15:20:12   16   **A.**   MR. PATTERSON.  I'M NOT FAMILIAR WITH MR. WEBRE.

15:20:19   17   **Q.**   AND MY QUESTION, MORE DIRECTLY:  THIS WOULD BE THE TYPE OF

15:20:20   18   INFORMATION THAT YOU WOULD BE LOOKING TO RECEIVE FROM THE

15:20:22   19   DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT THAT WOULD GIVE

15:20:25   20   YOU INPUT TO DETERMINE WHETHER YOU WOULD ISSUE A PERMIT TO A

15:20:29   21   CONTRACTOR SUCH AS WGI; CORRECT?

15:20:30   22   **A.**   YES.

15:20:30   23   **Q.**   NOW, DO YOU RECALL WHETHER THERE WAS ANY INTERACTION

15:20:33   24   BETWEEN THE ORLEANS LEVEE DISTRICT AND THE DEPARTMENT OF

15:20:34   25   TRANSPORTATION AND DEVELOPMENT REGARDING THE SUFFICIENCY OF

STEVAN GEORGE SPENCER - DIRECT


15:20:38   1   INFORMATION PROVIDED TO THE DEPARTMENT OF TRANSPORTATION AND

15:20:39   2   DEVELOPMENT?

15:20:42   3   **A.**   NO.

15:20:43   4   **Q.**   TO YOUR KNOWLEDGE WAS ANY ADDITIONAL INFORMATION GIVEN TO

15:20:45   5   THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT OVER AND ABOVE

15:20:49   6   WHAT WAS PROVIDED TO YOU IN THAT LETTER OF NOVEMBER 7TH, 2000,

15:20:52   7   WITH THE ATTACHMENTS?

15:20:54   8   **A.**   NOT THAT I'M AWARE OF.

15:20:56   9   **Q.**   THE -- AT THE TIME THIS WAS GOING ON, THE EBIA AREA WAS

15:21:02  10   OWNED BY THE PORT OF NEW ORLEANS.  DO YOU RECALL THAT?

15:21:05  11   **A.**   NO.

15:21:05  12   **Q.**   WOULD THAT MAKE ANY DIFFERENCE AS TO WHO OWNED THE LAND

15:21:09  13   ADJACENT TO THE -- YOUR FLOOD CONTROL STRUCTURE?

15:21:15  14   **A.**   I'M --

15:21:15  15          **THE COURT:**  WHEN YOU SAY "MAKE ANY DIFFERENCE," IN

15:21:18  16   OTHER WORDS, IS A PERMIT REQUIRED REGARDLESS OF THE OWNER OF

15:21:22  17   THE PROPERTY?

15:21:24  18          **MR. JOANEN:**  YES, SIR.

15:21:25  19             IF SOMEONE OWNS THE PROPERTY --

15:21:26  20          **THE COURT:**  THAT'S WITHIN THE --

15:21:28  21          **MR. JOANEN:**  CORRECT.

15:21:29  22   **BY MR. JOANEN:**

15:21:29  23   **Q.**   IF SOMEONE OWNS PROPERTY WITHIN 250 FEET OF YOUR FLOOD

15:21:38  24   CONTROL STRUCTURE, THEY OWN IT.  CAN THEY START DIGGING DOWN

15:21:40  25   WITHOUT REGARD FOR THE FLOOD CONTROL PROJECT WHICH IS ADJACENT

STEVAN GEORGE SPENCER - DIRECT


15:21:44   1   TO THE PROPERTY THAT THEY ACTUALLY OWN?

15:21:49   2   **A.**   THEY'RE NOT SUPPOSED TO.

15:21:51   3   **Q.**   WHAT'S THE PROCESS OF THE ORLEANS LEVEE DISTRICT TO ASSURE

15:21:52   4   THAT A PROPERTY OWNER, IN THIS CASE THE PORT OF NEW ORLEANS,

15:21:56   5   DOESN'T START DIGGING AROUND YOUR LEVEE WITHIN THAT 250-FOOT

15:22:01   6   SPACE AND ENDANGER THE LEVEE?

15:22:03   7   **A.**   WELL, THE PORT KNOWS THAT THEY'RE SUPPOSED TO GET A PERMIT

15:22:06   8   FOR WORK LIKE THAT.

15:22:10   9   **Q.**   OKAY.

15:22:11  10   **A.**   SO I JUST DON'T THINK THEY WOULD.

15:22:15  11   **Q.**   OKAY.  ASSUMING, HYPOTHETICALLY, I OWNED THE LAND, NOT THE

15:22:18  12   PORT OF NEW ORLEANS, AND I DON'T KNOW ANYTHING ABOUT WHAT I'M

15:22:20  13   SUPPOSED TO DO WITH LEVEES AND I WANTED TO PUT A SWIMMING POOL

15:22:23  14   NEXT TO THE LEVEE BECAUSE I THINK IT'S GREAT PROPERTY.  HOW --

15:22:25  15   AND I HIRE A CONTRACTOR TO DO THAT BECAUSE I DON'T KNOW HOW TO

15:22:29  16   PUT IN A POOL.  HOW WOULD THEY KNOW TO NOT DO THAT?

15:22:33  17           OR IF THEY DID KNOW AND STARTED DOING IT, HOW WOULD

15:22:36  18   THE ORLEANS LEVEE DISTRICT FIND OUT TO PROTECT THEIR LEVEE?

15:22:40  19           **THE COURT:**  THE COURT TAKES COGNIZANCE THAT THE

15:22:42  20   ORLEANS LEVEE DISTRICT IS NOT A DEFENDANT IN THIS SUIT.

15:22:47  21           **MR. JOANEN:**  ABSOLUTELY, YOUR HONOR.

15:22:48  22           **THE COURT:**  SO I'M TRYING TO -- AND THE COURT HAS

15:22:49  23   GLEANED THAT THIS IS AN AMORPHOUS, AT BEST, PROCESS, IN THE

15:22:54  24   COURT'S MIND.

15:22:55  25           SO I'M WONDERING WHERE WE'RE GOING AS TO THE

STEVAN GEORGE SPENCER - DIRECT

15:22:59    1   ALLEGED NEGLIGENCE OF THE DEFENDANTS HERE, WHATEVER --

15:23:03    2   WHATEVER -- HOW ANYONE WOULD KNOW TO DO IT.

15:23:06    3             I MEAN, THESE PEOPLE DID KNOW, APPARENTLY,

15:23:10    4   SOMETHING, BECAUSE THAT IS THE DEFENDANT, BECAUSE THEY DID MAKE

15:23:15    5   SOME EFFORT.  SO I WONDER WHAT RELEVANCE IT HAS.

15:23:18    6             I HATE TO MAKE AN OBJECTION, BUT I'M WONDERING

15:23:20    7   WHERE WE'RE GOING WITH THIS.

15:23:23    8        **MR. JOANEN:**  I'M TRYING TO TIE IT IN BECAUSE

15:23:25    9   MR. COLLETTI TALKED ABOUT THE FACT THAT YOU HAVE A RIGHT OF

15:23:28   10   ENTRY, AND THAT'S WHERE I'M GOING NEXT, SO I'LL MOVE TO THAT.

15:23:31   11             IF WE COULD CALL UP PX-0932-1.  AND JUST TO BE

15:23:40   12   QUICK, I'M JUST GIVING BACKGROUND FOR THIS, YOUR HONOR.

15:23:50   13             IF WE CAN, JUST ENLARGE THE "TO/FROM," IN THE

15:23:54   14   FIRST PARAGRAPH.

15:23:59   15   **BY MR. JOANEN**

15:23:59   16   **Q.**   AND I'LL EXPRESS TO YOU, MR. SPENCER, THIS IS FROM STEPHEN

15:24:03   17   ROE, WHO IS WITH WGI.  AND HE INDICATES ON HERE THAT AN

15:24:08   18   INDIVIDUAL BY THE NAME OF DENNIS O'CONNOR, WHO WAS WITH WGI,

15:24:12   19   AND LEE GUILLORY, WHO WAS WITH THE CORPS OF ENGINEERS, NEW

15:24:15   20   ORLEANS DISTRICT.

15:24:15   21        DO YOU KNOW THAT INDIVIDUAL?

15:24:17   22   **A.**   I BELIEVE SO.

15:24:17   23   **Q.**   OKAY.  AND THEY INDICATE UP HERE THAT THEIR PROJECT IS

15:24:20   24   BEING HELD UP AND SAID THAT THE TRANSFER OF OWNERSHIP WOULDN'T

15:24:23   25   TAKE PLACE.

STEVAN GEORGE SPENCER - DIRECT


15:24:24  1        WOULD THAT BE THE TYPE OF THING THAT YOU, AS A CHIEF

15:24:26  2   ENGINEER FOR THE ORLEANS LEVEE DISTRICT, WOULD BE INVOLVED WITH

15:24:30  3   UNDERSTANDING AT THAT TIME?

15:24:35  4   **A.**   NO, I WOULDN'T BE INVOLVED.

15:24:38  5   **Q.**   DO YOU UNDERSTAND RIGHTS OF ENTRY AND WHAT THEIR

15:24:41  6   SIGNIFICANCE ARE IN RELATIONSHIP TO PEOPLE BEING ALLOWED TO DO

15:24:45  7   WORK NEXT TO YOUR LEVEE?

15:24:47  8   **A.**   WELL, RIGHT OF ENTRY FOR WORK ON A SPECIFIC AREA, WHEREVER

15:24:51  9   IT IS.

15:24:53  10       **MR. JOANEN:**  OKAY.  YOUR HONOR -- IF WE COULD CALL

15:24:56  11  UP, CARL, PX-4592-0001.

15:25:01  12       **THE COURT:**  IS THERE AN ISSUE ABOUT THE RIGHT OF

15:25:03  13  ENTRY IN THIS CASE?

15:25:04  14       **MR. JOANEN:**  I'M NOT QUITE SURE, YOUR HONOR.

15:25:06  15  MR. COLLETTI HAS NOW SAID THAT THE RIGHT OF ENTRY IS THE WAY

15:25:09  16  THAT THEY GO ABOUT GETTING TO DO WORK.

15:25:12  17       **THE COURT:**  NOBODY'S GOING TO TRUST THIS.

15:25:14  18       **MR. JOANEN:**  NO.

15:25:14  19       **THE COURT:**  I'M JUST WONDERING HOW IT RELATES TO

15:25:17  20  NEGLIGENCE.  MAYBE SOMEBODY WILL CLUE ME IN LATER.

15:25:20  21          BUT GO AHEAD.

15:25:21  22       **MR. JOANEN:**  I'M JUST POINTING OUT, YOUR HONOR, THIS

15:25:24  23  IS THE RIGHT OF ENTRY -- IT JUST GIVES US SOME TIME FRAMES.

15:25:28  24  THIS IS THE RIGHT OF ENTRY THAT GOES FROM JANUARY 2000 TO

15:25:32  25  OCTOBER OF 2002.

STEVAN GEORGE SPENCER – DIRECT


15:25:44    1          **THE COURT:**  ALL RIGHT.

15:25:56    2          **MR. JOANEN:**  AND THEN WE'LL ALSO, IF WE CAN, CARL,

15:25:56    3   LET'S GO TO JX-1251-001.

15:25:57    4                AND, YOUR HONOR, I THINK THIS EXHIBIT WILL GIVE

15:25:59    5   SOME CLARIFICATION, IF WE GO TO THE NEXT PAGE REAL QUICKLY.

15:26:02    6          **THE COURT:**  OKAY.

15:26:02    7   BY MR. JOANEN:

15:26:04    8   **Q.**  MR. COLLETTI TALKED ABOUT THE REAL ESTATE DIVISION, YOU

15:26:09    9   SEE RIGHT HERE.  THIS IS THE MEMO.  WE'LL GO BACK TO THE FIRST

15:26:14   10   PAGE AFTER THIS.  THIS IS MR. SELLERS IN THE REAL ESTATE

15:26:17   11   DIVISION.

15:26:17   12          **MR. JOANEN:**  GO BACK TO THE FIRST PAGE.

15:26:18   13   BY MR. JOANEN:

15:26:19   14   **Q.**  AND YOU'LL SEE RIGHT HERE THAT THERE'S A MEMORANDUM MAKING

15:26:24   15   ITS WAY, ULTIMATELY, TO THE CORPS OF ENGINEERS.  I'M ASSUMING

15:26:28   16   LEE GUILLORY, BUT WE DON'T KNOW FOR SURE YET.  WE'LL FIND OUT

15:26:33   17   LATER IN THE TRIAL.

15:26:35   18          **MR. JOANEN:**  AND IF WE THEN GO DOWN TO NUMBER 4.

15:26:38   19   BY MR. JOANEN:

15:26:38   20   **Q.**  IT INDICATES HERE THAT THE PORT OF NEW ORLEANS PRIVATELY

15:26:41   21   OWNS SUREKOTE ROAD.  AND THE REASON I WANTED TO GET WITH THIS

15:26:48   22   TO YOU, MR. SPENCER, DO YOU KNOW WHERE SUREKOTE ROAD WAS IN

15:26:52   23   RELATIONSHIP TO THIS EBIA PROJECT?

15:26:55   24   **A.**  NO.

15:26:55   25   **Q.**  OKAY.  IS THERE A PARTICULAR LOCATION IN THE FLOODWALL

STEVAN GEORGE SPENCER - DIRECT

15:26:59  1  LEVEE AREA ALONG THE EBIA THAT WOULD ALLOW FOR SUREKOTE ROAD TO

15:27:04  2  BE ON IT?

15:27:04  3          AND MY QUESTION TO YOU IS:  WHEN YOU'RE INSPECTING

15:27:07  4  AND CUTTING GRASS AND MAKING SURE THAT PEOPLE AREN'T DOING

15:27:11  5  THINGS THAT AFFECT THE INTEGRITY OF THE LEVEE, THIS SUREKOTE

15:27:14  6  ROAD WOULD FALL WITHIN A CERTAIN AREA.

15:27:17  7          IS THERE A STANDARD GUIDANCE THAT YOU WOULD USE TO

15:27:21  8  UNDERSTAND HOW THE OWNERSHIP OF THAT ROAD WOULD BE IMPORTANT

15:27:23  9  FOR YOUR LEVEE PROTECTION?

15:27:26  10  **A.**  I DON'T KNOW WHERE THAT ROAD IS.

15:27:29  11          **MR. WOODCOCK:**  I'M SORRY, YOUR HONOR.  I DON'T

15:27:30  12  UNDERSTAND THAT QUESTION.

15:27:32  13          **THE COURT:**  I DON'T EITHER.  IN OTHER WORDS, YOUR

15:27:34  14  OBJECTION IS THAT THE QUESTION IS INSUFFICIENTLY COHERENT TO BE

15:27:38  15  ASKED?

15:27:39  16          **MR. WOODCOCK:**  YES.

15:27:39  17          **THE COURT:**  I'M NOT SURE THAT'S IN THE FEDERAL RULES,

15:27:41  18  AND YOU DON'T MEAN IT, BUT I'M INCOHERENT MANY TIMES MYSELF.

15:27:45  19          **MR. JOANEN:**  NO OFFENSE TAKEN.

15:27:45  20          **THE COURT:**  I DON'T MEAN TO DEMEAN ANYONE, BUT IT IS

15:27:47  21  A BIT, SHALL WE SAY, ILL-CONSTRUCTED.

15:27:52  22          **MR. JOANEN:**  AND I'LL APOLOGIZE BECAUSE THERE ARE A

15:27:53  23  FEW MORE COMING, I'M SURE.

15:27:54  24          **THE COURT:**  I WOULD JUST LIKE -- I'D LIKE TO KNOW

15:27:54  25  WHERE -- I'M HOPING SOMEBODY WILL TELL ME WHERE WE'RE GOING

STEVAN GEORGE SPENCER - DIRECT

15:27:58  1  WITH ALL OF THIS IN THE OVERALL -- AS TO THE ISSUES I NEED TO

15:28:04  2  RESOLVE IN THIS CASE.

15:28:06  3  **BY MR. JOANEN:**

15:28:07  4  **Q.**   QUITE HONESTLY, MY QUESTION, A LITTLE MORE DIRECTLY WAS:

15:28:11  5  WOULD THE ORLEANS LEVEE DISTRICT ALLOW A ROAD TO BE ON ITS

15:28:13  6  LEVEE; OR IF THERE WAS A ROAD THERE, WOULD IT HAVE TO BE OFF

15:28:16  7  YOUR LEVEE?

15:28:17  8  **A.**   WE HAVE FLOODGATES WITH ROADS THAT GO THROUGH FLOODWALLS.

15:28:26  9         **THE COURT:**  AND, AGAIN, MAYBE I'M OPAQUE, BUT I'M NOT

15:28:28  10  SURE HOW THAT RELATES TO WHETHER WGI AND/OR THE CORPS WERE

15:28:33  11  NEGLIGENT IN CAUSING THE UNDERMINING OF THE EBIA -- THE LEVEE

15:28:38  12  IN THE EBIA AREA THEREBY CAUSING THE NORTH AND SOUTH BREACHES

15:28:42  13  WE'VE TALKED ABOUT.

15:28:43  14         **MR. JOANEN:**  WELL, WE'LL SEE FROM SOME OF THE -- BOTH

15:28:45  15  IN THE TRANSCRIPT TESTIMONY AND THE --

15:28:48  16         **THE COURT:**  I HAVE READ THE TRANSCRIPTS.

15:28:49  17         **MR. JOANEN:**  THEY INDICATE 15 FEET AS BEING A VERY

15:28:52  18  IMPORTANT NUMBER THAT THEY WANT TO BE INVOLVED WITH.

15:28:55  19         **THE COURT:**  I UNDERSTAND.

15:28:55  20         **MR. JOANEN:**  AND I'M TRYING TO DETERMINE WHERE THAT

15:28:59  21  COMES FROM.

15:29:00  22         **THE COURT:**  ALTHOUGH THAT WASN'T A STABILITY CONTROL

15:29:01  23  LINE, IT WAS AN ARBITRARY LINE.  I'VE READ IT IN THE DEPOS.

15:29:05  24         **MR. JOANEN:**  AND I WAS TRYING, FROM THIS WITNESS,

15:29:06  25  MAYBE TRYING TO DISCERN WHETHER IT CAME FROM THE ORLEANS LEVEE

STEVAN GEORGE SPENCER - DIRECT


15:29:12    1    DISTRICT.

15:29:12    2             THE COURT:  DID YOU EVEN ASK HIM?  DID HE ESTABLISH

15:29:14    3    ANY KIND OF 15-FOOT -- I KNOW YOU WANT SOME FOREPLAY, BUT THIS

15:29:19    4    IS A LOT OF IT.

15:29:23    5             MR. BRUNO:  I THOUGHT THAT WAS GOOD, JUDGE.

15:29:24    6             THE COURT:  I'M SORRY.  I JUST HAPPENS TO BE AROUND

15:29:27    7    3:00.  I APOLOGIZE.

15:29:29    8             MR. JOANEN:  MOVING ON TO CASES, YOUR HONOR, I'LL ASK

15:29:32    9    TO CALL UP JX-1940-30.

15:29:35   10    BY MR. JOANEN:

15:29:42   11    Q.   AND YOU'LL SEE THIS IS A LETTER ADDRESSED TO YOU FROM THE

15:29:45   12    CORPS OF ENGINEERS.

15:29:47   13             MR. JOANEN:  AND IF WE CAN GO TO THE SECOND

15:29:50   14    PARAGRAPH, AND THEN NO. A.

15:29:56   15    BY MR. JOANEN:

15:29:57   16    Q.   THIS REFERENCES THE JANUARY 17TH, 2001 LETTER THAT YOU

15:30:01   17    WILL RECEIVE AND WE'LL GET TO NEXT.

15:30:03   18             BUT IT INDICATES HERE THAT THEY ARE ASKING -- OR

15:30:07   19    THEY'RE TELLING YOU SOMETHING THAT REFERENCES A LETTER FROM

15:30:09   20    JANUARY 17TH, AND THAT THEY'RE RELYING UPON CERTAIN

15:30:14   21    DOCUMENTATION THAT THEY HAVE IN THEIR POSSESSION.

15:30:17   22             IS THAT YOUR UNDERSTANDING OF WHAT IS BEING SAID

15:30:18   23    HERE?

15:30:18   24    A.   YES.

15:30:19   25    Q.   OKAY.  WHEN YOU RECEIVE A LETTER -- WHEN THE ORLEANS LEVEE

STEVAN GEORGE SPENCER - DIRECT


15:30:22   1   DISTRICT RECEIVES A LETTER LIKE THIS, IS THERE ANYTHING THAT IT

15:30:26   2   DOES TO ENSURE THAT THE INFORMATION THAT WAS PROVIDED TO YOU

15:30:31   3   WAS EVALUATED?

15:30:33   4          IS THERE A CHECKS AND BALANCES, I GUESS, IS A BETTER

15:30:35   5   QUESTION?

15:30:35   6          **THE COURT:**  YOU CAN'T SEE THE OBJECTION, SIR, BUT

15:30:38   7   THERE IS ONE, BECAUSE MR. TREEBY IS STANDING.

15:30:41   8          YES, SIR?

15:30:41   9          **MR. TREEBY:**  YOUR HONOR, AS YOUR HONOR HAS POINTED

15:30:43   10  OUT THIS AFTERNOON, THE ORLEANS LEVEE DISTRICT IS NOT A

15:30:45   11  DEFENDANT IN THIS CASE.  THIS CAN'T HAVE -- IT'S IRRELEVANT TO

15:30:48   12  THE ISSUES BEFORE YOUR HONOR.

15:30:50   13         **THE COURT:**  IT DOES SEEM TO BE.  AND I'VE YET TO SEE

15:30:52   14  HOW IT'S GOING TO TIE IN, I MUST ADMIT.  I'M NOT SURE.

15:30:55   15         I'M GIVING YOU AN OPPORTUNITY TO TELL ME, AND WE

15:30:59   16  DON'T HAVE TO DO IT AT SIDEBAR SINCE THIS IS A NONJURY TRIAL,

15:31:02   17  HOW IT'S RELEVANT TO THE ISSUES AT HAND, OTHER THAN YOU

15:31:07   18  MENTIONED SOMETHING ABOUT -- AND I'M WELL AWARE OF THE 15-FOOT

15:31:11   19  PROTOCOL THAT I'VE READ IN THE DEPOSITIONS AND IN THE BRIEFS,

15:31:14   20  AND I KNOW THAT -- WHATEVER WE CALL THAT.

15:31:19   21         AND OTHER THAN THAT, I'M NOT SURE -- AND THE

15:31:23   22  ENTIRE -- THE ENTIRE PERMITTING PROCESS, WHICH RELEVANCE WE'LL

15:31:30   23  DETERMINE AT A LATER DATE, WHETHER FAILURE TO GET A PERMIT HAS

15:31:34   24  ANY EFFECT ON THIS CASE OR NOT OR WHETHER THERE WAS A

15:31:38   25  REQUIREMENT FOR A PERMIT.

STEVAN GEORGE SPENCER - DIRECT


15:31:38    1              BUT I GUESS I'M WONDERING WHERE WE'RE GOING WITH

15:31:41    2    THIS.  AND I'M SURE YOU'LL HAVE SOMETHING.

15:31:47    3           **MR. JOANEN:**  I'M RIGHT THERE.  I'M LITERALLY RIGHT

15:31:48    4    THERE, YOUR HONOR.

15:31:48    5           **THE COURT:**  ALL RIGHT.  I'LL TRUST YOU.  I TRUST YOU

15:31:53    6    TO MANIFEST RELEVANCE.

15:31:55    7              RIGHT NOW I AGREE WITH MR. TREEBY, BUT I'M GOING

15:31:57    8    TO TRUST YOU THAT YOU'LL SOMEHOW MAKE IT RELEVANT.

15:32:00    9           **MR. JOANEN:**  IT'S JUST A --

15:32:03   10           **THE COURT:**  BUT IT WOULD BE NICE TO BE ABLE TO

15:32:05   11    EXPLAIN IT.  BUT GO AHEAD.

15:32:06   12           **MR. JOANEN:**  I WILL.  I'LL START FROM BACK AND JUST

15:32:09   13    FINISH UP REAL QUICK.

15:32:11   14           **THE COURT:**  ALL RIGHT.

15:32:13   15           **MR. JOANEN:**  IF WE CAN GO TO JX-01940-0033.

15:32:18   16    **BY MR. JOANEN:**

15:32:19   17    **Q.**  AND JUST FOR THE RECORD, TO REFRESH YOUR RECOLLECTION,

15:32:21   18    MR. SPENCER, YOU DID RECEIVE A LETTER OF NO OBJECTION FROM THE

15:32:24   19    CORPS OF ENGINEERS BASED UPON THE INFORMATION THAT WAS PROVIDED

15:32:25   20    TO IT AT THE TIME; CORRECT?

15:32:27   21    **A.**  YES.

15:32:28   22    **Q.**  AND YOU GAVE THEM THIS -- SENT THIS LETTER, WHICH YOU

15:32:32   23    BELIEVED TO BE A PERMIT IF IT'S SIGNED BY THE CONTRACTOR AND

15:32:37   24    THE ORLEANS LEVEE DISTRICT; CORRECT?

15:32:39   25    **A.**  THAT'S THE GRANTING OF A PERMIT, YES.

STEVAN GEORGE SPENCER - DIRECT


15:32:41   1   **Q.**   AND THAT'S APRIL 11TH, 2001; CORRECT?

15:32:43   2   **A.**   YES.

15:32:44   3   **Q.**   AND THIS -- TO YOUR KNOWLEDGE, THIS WAS NEVER SIGNED;

15:32:47   4   CORRECT?

15:32:48   5   **A.**   NOT THAT I'M AWARE OF, NO.

15:32:50   6   **Q.**   CORRECT.

15:32:50   7        BUT IT WAS SENT TO THEM AT THE GENERAL DEGAULLE

15:32:53   8   ADDRESS WHICH WE SHOWED ORIGINALLY WHEN THEY CONTACTED THE

15:32:57   9   ORLEANS LEVEE DISTRICT WAS WHAT THEY GAVE YOU AS THEIR ADDRESS;

15:33:00  10   CORRECT?

15:33:01  11   **A.**   YES.

15:33:01  12   **Q.**   AND IN THIS PERMIT PROCESS, IT PRETTY CLEARLY SAYS THAT

15:33:04  13   THIS WOULD ONLY BE GOOD FOR ONE YEAR; CORRECT?

15:33:07  14   **A.**   YES.

15:33:07  15   **Q.**   OKAY.  NOW, IF THE -- FROM THE ORLEANS LEVEE DISTRICT'S

15:33:12  16   POSITION, IF THIS PERMIT IS ISSUED FOR A SCOPE OF WORK THAT'S

15:33:16  17   GIVEN TO YOU, THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT,

15:33:17  18   AND THE CORPS OF ENGINEERS IN NOVEMBER OF 2000, IT'S GOING TO

15:33:21  19   ONLY BE GOOD UNTIL APRIL OF 2002.  WOULD THERE BE A NEED FOR

15:33:28  20   WGI TO RESUBMIT FOR A PERMIT?

15:33:35  21   **A.**   THEY WOULD ASK -- IN GENERAL, WHEN SOMETHING LIKE THAT

15:33:36  22   HAPPENED, THEY WOULD ASK FOR AN EXTENSION.  THEY WOULD CALL AND

15:33:39  23   ASK AND WE WOULD SAY, "YOU HAVE TO REQUEST AN EXTENSION."

15:33:43  24   **Q.**   I WANT YOU TO ASSUME THAT THEY DO CALL AND ASK FOR AN

15:33:46  25   EXTENSION, BUT THE WORK THAT THEY'RE DOING IS COMPLETELY

STEVAN GEORGE SPENCER - CROSS

15:33:48  1  DIFFERENT.  WHATEVER MINIMAL AMOUNT OF WORK THEY MAY HAVE BEEN

15:33:51  2  DOING ORIGINALLY, NOW IT'S GOTTEN TO BE A LOT MORE INVOLVED AND

15:33:55  3  IT MAY HAVE, POTENTIALLY, GREATER IMPACT ON THE STABILITY OF

15:33:58  4  YOUR LEVEE.

15:33:59  5          WOULD YOU REQUIRE THEM TO RESUBMIT TO A PERMIT

15:34:01  6  APPLICATION OR WOULD YOU LET THEM JUST CONTINUE ON?

15:34:04  7  **A.**  NO, THEY WOULD HAVE TO RESUBMIT.

15:34:06  8          **MR. JOANEN:**  THAT WAS MY POINT, YOUR HONOR.

15:34:08  9          **THE COURT:**  GOT IT.

15:34:12  10         **MR. JOANEN:**  I'LL TENDER THE WITNESS.

15:34:13  11                      **CROSS-EXAMINATION**

15:34:17  12  **BY MR. TREEBY:**

15:34:25  13  **Q.**  I HOPE I WILL BE VERY BRIEF BECAUSE A LOT OF THIS HAS BEEN

15:34:32  14  COVERED.

15:34:34  15          DURING THE PERIOD JANUARY --

15:34:36  16          MY NAME IS BILL TREEBY AND I REPRESENT WASHINGTON

15:34:38  17  GROUP INTERNATIONAL, MR. SPENCER.  I JUST HAVE A COUPLE OF

15:34:41  18  QUESTIONS.

15:34:42  19          DURING THE PERIOD OF JANUARY 2001 THROUGH AUGUST OF

15:34:46  20  2005 -- AND I KNOW THIS HAS BEEN ANSWERED, BUT THIS JUST SETS

15:34:51  21  UP THE NEXT TEN QUESTIONS, SO -- WHAT WAS THE OLD'S

15:34:59  22  RESPONSIBILITY, IF ANY, WITH RESPECT TO LEVEES AND FLOODWALLS

15:35:02  23  ALONG JOURDAN AVENUE BETWEEN FLORIDA AVENUE AND CLAIBORNE

15:35:05  24  AVENUE?

15:35:06  25  **A.**  TO MAINTAIN THEM AND MAKE SURE THEIR STRUCTURAL INTEGRITY

STEVAN GEORGE SPENCER - CROSS


15:35:10   1   WAS ALWAYS MAINTAINED.

15:35:12   2   **Q.**   AND DID THAT INCLUDE INSPECTIONS?

15:35:14   3   **A.**   YES.

15:35:15   4   **Q.**   HOW DID SUCH INSPECTIONS OCCUR?

15:35:18   5   **A.**   OUR FIELD PERSONNEL, WHEN THEY'RE OUT IN THE FIELD, FOR

15:35:22   6   WHATEVER REASON, INCLUDING MAINTAINING, CUTTING GRASS, THEY

15:35:26   7   WOULD -- YOU KNOW, BE AWARE OF THE FLOODWALLS AND NOTE ANY

15:35:29   8   CHANGES SHOULD THERE BE ANYTHING GOING ON.

15:35:34   9   **Q.**   DURING ROUGHLY THAT TIME FRAME, HOW OFTEN WOULD THE GRASS

15:35:39  10   BE CUT IN THAT AREA BETWEEN CLAIBORNE AVENUE AND FLORIDA

15:35:44  11   AVENUE, IN GENERAL?

15:35:46  12   **A.**   WELL, CERTAINLY DURING THE SUMMER, DEPENDING ON THE

15:35:48  13   WEATHER, PERSONNEL, STORMS, AND ALL THE REST OF THAT KIND OF

15:35:51  14   THING, IT COULD HAVE BEEN EVERY ONE TO TWO MONTHS DURING THE

15:35:56  15   SUMMER.

15:35:58  16   **Q.**   AND WHEN -- IF THE INSPECTION -- THESE MOWERS AND

15:36:06  17   INSPECTIONS SEE ANY PROBLEMS, WHAT ARE THEY INSTRUCTED TO DO?

15:36:10  18   **A.**   WELL, THEY REPORT IT TO THEIR SUPERVISORS, WHO WOULD

15:36:15  19   CONTACT THE ENGINEERING DEPARTMENT.  AND WE WOULD SEND SOMEBODY

15:36:17  20   TO LOOK AT IT, IF IT WAS -- YOU KNOW, WHEN IT WAS REPORTED.

15:36:23  21   **Q.**   ARE YOU AWARE OF ANY PROBLEMS THAT WERE REPORTED ALONG THE

15:36:27  22   LEVEES AND FLOODWALLS BORDERING WHAT WE'VE IDENTIFIED AS THE

15:36:31  23   EAST BANK INDUSTRIAL AREA ON THE LAND SIDE OF THE FLOODWALL

15:36:34  24   BETWEEN 2001 AND JULY OF 2005?

15:36:39  25   **A.**   NO, SIR.

STEVAN GEORGE SPENCER - CROSS


15:36:39   1   **Q.**  WERE ANY WRITTEN RECORDS MAINTAINED OF THOSE INSPECTIONS

15:36:42   2   AND/OR THAT WORK DONE BY THE ORLEANS LEVEE DISTRICT EMPLOYEES

15:36:47   3   DURING THAT TIME?

15:36:48   4   **A.**  ON A DAILY BASIS, THE SUPERVISORS KEPT TRACK OF THEIR

15:36:51   5   PERSONNEL, WHERE THEY WERE, WHAT AREAS THEY WERE CUTTING GRASS

15:36:55   6   IN.

15:36:55   7   **Q.**  OKAY.  I'M GOING TO SHOW A GROUP OF DOCUMENTS.  WE'RE NOT

15:37:00   8   GOING TO GO THROUGH ALL OF THEM.  IT'S JX-1940.

15:37:06   9       LET'S JUST START AT 0042.  IT GOES THROUGH 0074.

15:37:11  10       **MR. TREEBY:**  AND I'M GOING TO ASK THAT ALL OF THESE

15:37:14  11   BE PUT INTO EVIDENCE, BUT I'M NOT GOING TO LOOK AT ALL OF THEM.

15:37:16  12       **THE COURT:**  ALL RIGHT.

15:37:19  13       **MR. TREEBY:**  WOULD YOU BLOW UP JUST THE TOP OF THAT

15:37:21  14   DOCUMENT?

15:37:27  15   **BY MR. TREEBY:**

15:37:27  16   **Q.**  HAVE YOU SEEN DOCUMENTS LIKE THIS BEFORE?

15:37:29  17   **A.**  YES, SIR.

15:37:30  18   **Q.**  WHAT IS IT?

15:37:30  19   **A.**  IT'S A DAILY LISTING OF WHERE THE GRASS WAS CUT, WHERE

15:37:33  20   THE -- YOU KNOW, WHERE THE FIELD PERSONNEL WERE ON THE VARIOUS

15:37:37  21   CREWS, YOU KNOW, ON A DAILY BASIS.

15:37:39  22   **Q.**  THERE'S A SECTION DOWN NEAR THE BOTTOM OF THIS FORM FOR

15:37:44  23   REMARKS.  DO YOU SEE THAT?

15:37:46  24   **A.**  YES.

15:37:47  25   **Q.**  WHAT -- IF THERE WAS A PROBLEM, WOULD THAT BE REPORTED

STEVAN GEORGE SPENCER - CROSS


15:37:50    1   THERE?

15:37:50    2   **A.**    YES.

15:37:54    3   **Q.**    AND I COULD HAND YOU THIS PACK OF DOCUMENTS, AND I WILL IF

15:37:59    4   THE COURT OR COUNSEL WANTS ME TO.  BUT THESE HAVE BEEN

15:38:03    5   ACCUMULATED BEFORE, AND HAVE YOU LOOKED AT A GROUP OF THESE

15:38:07    6   DOCUMENTS BEGINNING WITH THIS ONE?

15:38:09    7   **A.**    YES.

15:38:14    8   **Q.**    DO THEY EVIDENCE -- THAT WHOLE GROUP OF DOCUMENTS, THOSE

15:38:17    9   PAGES, DO THEY EVIDENCE ANY DEFECTS OR PROBLEMS ENCOUNTERED BY

15:38:20   10   THE ORLEANS LEVEE DISTRICT EMPLOYEES AT THE JOURDAN AVENUE ROAD

15:38:26   11   SEGMENT -- JOURDAN AVENUE SEGMENT OF THE LEVEES AND FLOODWALLS

15:38:30   12   WHILE THEY WERE PERFORMING THEIR WORK?

15:38:32   13   **A.**    NO.

15:38:36   14   **Q.**    NOW, GIVEN YOUR RESPONSIBILITY AS CHIEF ENGINEER DURING

15:38:39   15   THIS PERIOD, WOULD YOU HAVE BEEN MADE AWARE OF ANY PROBLEMS OF

15:38:43   16   PONDING, SEEPAGE, DAMAGE TO FLOODWALLS, OR SAND BOILS IN THIS

15:38:47   17   AREA?

15:38:47   18   **A.**    YES, SIR.

15:38:48   19   **Q.**    WERE YOU MADE AWARE OF ANY SUCH PROBLEMS?

15:38:51   20   **A.**    NO.

15:38:55   21   **Q.**    DO YOU RECALL THE NAMES -- WE SAW ONE UP THERE -- THE

15:38:58   22   NAMES OF THE ORLEANS LEVEE DISTRICT EMPLOYEES WHOSE JOB IT WAS

15:39:02   23   TO SUPERVISE THE MAINTENANCE OF THE EAST BANK LEVEES AND

15:39:05   24   FLOODWALLS BETWEEN 2001 AND JULY 2005?

15:39:07   25   **A.**    YES.

STEVAN GEORGE SPENCER - CROSS

15:39:08  1  **Q.**  WHO WERE THEY?

15:39:09  2  **A.**  IT WAS DENNIS TROCCHIANO AND ALFRED MADER (PHONETIC).

15:39:19  3  **Q.**  YOU'VE BEEN ASKED ABOUT -- QUITE A FEW QUESTIONS ABOUT THE

15:39:21  4  PERMITTING PROCESS, AND I'M NOT GOING TO ASK YOU VERY MANY

15:39:24  5  MORE.

15:39:24  6          LET ME ASK YOU THIS:  DID ANY FAILURE BY WASHINGTON

15:39:27  7  GROUP INTERNATIONAL TO SEND BACK A SIGNED PERMIT TO OLD, IF WE

15:39:33  8  ASSUME ONE WAS REQUIRED, CONTRIBUTE TO THE FLOODWALL FAILURES

15:39:38  9  DURING KATRINA?

15:39:42  10          **MR. JOANEN:**  OBJECTION, YOUR HONOR.

15:39:43  11          **MR. BRUNO:**  IT CALLS FOR AN OPINION.

15:39:45  12          **THE COURT:**  THAT IS -- THAT DOES REQUIRE AN EXPERT

15:39:48  13  OPINION, AND HE'S NOT BEEN QUALIFIED, SO I'M GOING TO SUSTAIN

15:39:51  14  IT.

15:39:52  15          **MR. TREEBY:**  LET ME APPROACH IT THIS WAY, YOUR HONOR.

15:39:55  16  I AGREE.  IT WAS A WELL-TAKEN OBJECTION.

15:39:57  17  **BY MR. TREEBY:**

15:39:57  18  **Q.**  DOES THE OLD RELY WHOLLY ON THE CORPS AND ITS ENGINEERING

15:40:02  19  DEPARTMENT TO DETERMINE WHETHER CERTAIN ACTS IMPACT THE FLOOD

15:40:05  20  CONTROL PROJECT?

15:40:06  21  **A.**  ON TECHNICAL REVIEW, YES, AND ALONG WITH DOTD IN THE PAST.

15:40:16  22          **MR. TREEBY:**  I WANT TO CALL UP THAT LETTER THAT'S --

15:40:18  23  I JUST HAVE ONE, MAYBE TWO MORE QUESTIONS.

15:40:23  24          THE NOVEMBER 7TH, 2000 LETTER, WHICH IS JX-1246,

15:40:27  25  AND IT BEGINS THERE AND GOES ON TO PAGE 2 AND 3.

STEVAN GEORGE SPENCER - CROSS


15:40:30    1   **BY MR. TREEBY:**

15:40:33    2   **Q.**   THIS IS A LETTER, AND WE HAVE BOTH PAGES UP HERE THAT

15:40:38    3   WE'VE --

15:40:38    4           **MR. TREEBY:**  WOULD YOU BLOW UP THE ADDRESS AT THE

15:40:41    5   TOP?  THE ADDRESSEE?  YEAH.

15:40:45    6   **BY MR. TREEBY:**

15:40:45    7   **Q.**   THIS WAS ADDRESSED TO YOU.  WE'VE LOOKED AT IT BEFORE.

15:40:48    8           DO YOU RECALL THIS DOCUMENT?  YOU'VE BEEN SHOWN IT

15:40:51    9   SEVERAL TIMES?

15:40:53   10   **A.**   YES, SIR.

15:40:54   11   **Q.**   MY QUESTION IS SIMPLY:  DID YOU INTERPRET THIS LETTER AS A

15:40:56   12   PERMIT REQUEST?

15:40:59   13   **A.**   YES.  I MEAN, AS MUCH DETAIL AS IT'S GONE INTO.

15:41:04   14   **Q.**   OKAY.  HAD YOU EVER, PRIOR TO THIS LETTER DURING YOUR

15:41:08   15   EMPLOYMENT WITH THE ORLEANS LEVEE DISTRICT SINCE '93, RECEIVED

15:41:11   16   A REQUEST FOR PERMISSION FROM A CONTRACTOR TO THE CORPS OF

15:41:15   17   ENGINEERS OR THE CORPS OF ENGINEERS ITSELF, TO PERFORM WORK

15:41:20   18   NEAR LEVEES OR FLOODWALLS IN ORLEANS PARISH THAT WAS UNRELATED

15:41:24   19   TO A FLOOD CONTROL PROJECT?

15:41:26   20           **MR. JOANEN:**  YOUR HONOR, I OBJECT.  THIS GOES WELL

15:41:28   21   OUTSIDE THE SCOPE OF WHAT THIS LETTER IS, THAT IT GOES TO

15:41:30   22   CONTRACTUAL DETERMINATIONS.

15:41:32   23           **THE COURT:**  OVERRULED.

15:41:34   24           **THE WITNESS:**  SO ANSWER IT?

           25

STEVAN GEORGE SPENCER – REDIRECT


15:41:36    1   BY MR. TREEBY:

15:41:36    2   Q.   YES.

15:41:37    3   A.   NO.

15:41:37    4   Q.   SO THIS WAS A UNIQUE OCCASION IN YOUR EXPERIENCE; IS THAT

15:41:41    5   RIGHT?

15:41:41    6   A.   YES.

15:41:42    7           MR. TREEBY:  THANK YOU.

15:41:47    8           MR. WOODCOCK:  NO QUESTIONS FROM THE UNITED STATES,

15:41:50    9   YOUR HONOR.

15:41:58   10           MR. JOANEN:  JUST A FEW QUESTIONS, YOUR HONOR.

15:41:59   11                   REDIRECT EXAMINATION

15:42:00   12   BY MR. JOANEN:

15:42:01   13   Q.   THE LETTER WE JUST LOOKED AT, THE ONE THAT YOU FELT WAS A

15:42:05   14   REQUEST FOR PERMIT, FROM THAT, HOW WOULD YOU KNOW THAT WGI IS A

15:42:08   15   CONTRACTOR FOR THE CORPS OF ENGINEERS?

15:42:17   16   A.   I DON'T -- I DON'T RECALL.  DID THE DRAWINGS HAVE CORPS

15:42:20   17   LOGOS ON THEM?

15:42:23   18   Q.   IT WAS A QUESTION.  AS YOU RECALL HERE, YOU WOULDN'T KNOW?

15:42:28   19   A.   I DON'T RECALL.

15:42:28   20           MR. TREEBY:  I'M SORRY, YOUR HONOR.  I'M A LITTLE

15:42:29   21   HARD OF HEARING.  I DIDN'T HEAR THE QUESTION.

15:42:31   22           THE COURT:  THE QUESTION WAS, HOW WOULD HE KNOW THAT

15:42:34   23   THAT LETTER WAS FROM A CONTRACTOR OR SUBCONTRACTOR WHO WAS

15:42:40   24   CONTRACTED WITH THE CORPS DIRECTLY?

15:42:42   25           MR. TREEBY:  I HEARD THAT PART.  BUT I THINK THERE

STEVAN GEORGE SPENCER - REDIRECT

15:42:44   1   WAS SOMETHING AFTER THAT.

15:42:45   2            **THE COURT:**  OH, YOU DIDN'T HEAR THE ANSWER OR --

15:42:49   3            **MR. TREEBY:**  NO, I DIDN'T HEAR WHAT HE ASKED AFTER

15:42:51   4   THAT.

15:42:52   5            **THE COURT:**  I THINK THAT'S THE QUESTION, BUT I MAY --

15:42:58   6            WHY DON'T WE START AGAIN?  IN OTHER WORDS, YOU

15:43:01   7   CAN SIMPLY ASK HIM:  AT THE TIME HE RECEIVED THAT WAS HE AWARE

15:43:05   8   THAT WGI WAS A CONTRACTOR WITH THE CORPS?

15:43:08   9   **BY MR. JOANEN:**

15:43:08   10  **Q.**  AT THE TIME YOU RECEIVED THAT, WERE YOU AWARE THAT WGI WAS

15:43:12   11  A CONTRACTOR WITH THE CORPS OF ENGINEERS?

15:43:14   12  **A.**  I DON'T RECALL.

15:43:14   13  **Q.**  AND YOU MENTIONED THAT MR. TROCCHIANO, WHO CUTS GRASS,

15:43:17   14  WOULD LOOK FOR THINGS SUCH SAND BOILS; CORRECT?

15:43:21   15  **A.**  YES.

15:43:21   16  **Q.**  AND I TAKE IT THAT MR. TROCCHIANO IS NOT AN ENGINEER; IS

15:43:25   17  THAT CORRECT?

15:43:26   18  **A.**  CORRECT.

15:43:26   19  **Q.**  SOMETHING LIKE A SAND BOIL IS PRETTY EASY TO DETERMINE IF

15:43:29   20  IT'S THERE; CORRECT?

15:43:30   21  **A.**  YES.

15:43:31   22  **Q.**  OKAY.  YOU WOULD ALSO KNOW THAT THERE'S NO SUCH THING AS A

15:43:34   23  CLAY BOIL; CORRECT?

15:43:36   24  **A.**  CORRECT.

15:43:36   25            **MR. JOANEN:**  I HAVE NO OTHER QUESTIONS, YOUR HONOR.

STEVAN GEORGE SPENCER - REDIRECT


15:43:38   1          **THE COURT:**  THANK YOU.

15:43:39   2                  SIR, YOU MAY STEP DOWN.

15:43:42   3          **MR. JOANEN:**  YOUR HONOR, I'M FINISHED WITH THIS

15:43:44   4   WITNESS, BUT I WANTED TO MOVE INTO EVIDENCE THE EXHIBITS THAT

15:43:46   5   WE DISCUSSED.

15:43:47   6          **THE COURT:**  OKAY.  LET'S NOT FORGET TO DO THAT.

15:43:50   7          **MR. JOANEN:**  THAT WOULD BE JX-1940-0076 AND 77.

15:44:02   8          **MR. TREEBY:**  YOUR HONOR, PLEASE.  I NEED ALL THE HELP

15:44:02   9   I CAN GET, AND I JUST GOT SOME.  IF YOU WOULD WAIT,

15:44:04  10   MR. SPENCER, JUST FOR A SECOND.

15:44:06  11                  I WOULD LIKE TO SHOW, IN LIGHT OF WHAT THE

15:44:08  12   QUESTION -- THE LAST QUESTION THAT I WAS HAVING TROUBLE

15:44:10  13   HEARING, FRANKLY.  THERE IS A DOCUMENT IN THERE THAT HAS A

15:44:13  14   CORPS LOGO ON IT AND -- IN THAT PACKAGE, I'M TOLD.  SO I WOULD

15:44:19  15   LIKE TO SHOW MR. SPENCER.

15:44:21  16          **THE COURT:**  HE SAID HE DIDN'T RECALL.

15:44:24  17          **MR. TREEBY:**  THAT'S RECROSS.

15:44:25  18          **THE COURT:**  I'M NOT GOING TO ALLOW RECROSS UNLESS

15:44:28  19   IT'S SOMETHING -- UNLESS IT'S SOMETHING SO FUND- -- I'VE TOLD

15:44:31  20   YOU WHEN I'M GOING TO ALLOW IT, BUT I'M GENERALLY NOT GOING TO

15:44:34  21   ALLOW IT, BECAUSE THEN WE WOULD HAVE REDIRECT.  AND SO I'M

15:44:37  22   GOING TO END IT HERE.

15:44:40  23                  AND YOU CAN POINT THAT OUT TO ME -- IF THE

15:44:42  24   EXHIBIT'S IN EVIDENCE, YOU CAN POINT THAT OUT TO ME IN A BRIEF,

15:44:45  25   BECAUSE HE DIDN'T HAVE ANY INDEPENDENT RECOLLECTION.

STEVAN GEORGE SPENCER - REDIRECT


15:44:48   1              GO AHEAD, SIR.

15:44:49   2              **MR. TREEBY:**  OKAY.  WELL, WE WILL MOVE INTO EVIDENCE

15:44:53   3   ALL OF THE DOCUMENTS THAT WERE REFERRED TO IN HIS TESTIMONY.

15:44:55   4              **THE COURT:**  OKAY.  YOU'LL DO THAT WHEN THE TIME COMES

15:44:57   5   OR . . .

15:44:59   6              **MR. TREEBY:**  I'D LIKE TO JUST MOVE THEM ALL INTO

15:45:01   7   EVIDENCE RIGHT NOW JUST SO WE DON'T FORGET IT, YOUR HONOR.

15:45:05   8   BECAUSE I THINK -- I'M A LITTLE UNCERTAIN AT THIS POINT WHICH

15:45:07   9   ONES ARE IN AND WHICH ONES AREN'T IN.  IT'S IMPORTANT TO ME

15:45:11  10   THAT ALL OF THESE BE IN EVIDENCE.

15:45:12  11              **THE COURT:**  FROM A RECORD STANDPOINT, I JUST WANT TO

15:45:17  12   MAKE SURE WE KNOW WHAT THOSE ARE.

15:45:19  13              **MR. TREEBY:**  OKAY.  I'LL PROVIDE A LIST.

15:45:21  14              **THE COURT:**  OKAY.  THAT WOULD BE HELPFUL.

15:45:30  15              FIRST, I THINK MR. JOANEN WAS ABOUT TO MOVE SOME

15:45:35  16   THINGS INTO EVIDENCE.

15:45:36  17              **MR. JOANEN:**  YES.  I CAN EITHER IDENTIFY THEM

15:45:36  18   INDIVIDUALLY OR WE CAN JUST RELY UPON A LIST, WHATEVER THE

15:45:41  19   COURT PREFERS.

15:45:42  20              **THE COURT:**  DO YOU HAVE A LIST?

15:45:44  21              **MR. JOANEN:**  WE TURNED IT OVER, BUT, YES, I DO.

15:45:44  22              **THE COURT:**  YES.  AND DOES THE DEFENDANT HAVE ANY

15:45:45  23   OBJECTION TO WHAT'S ON THE LIST?

15:45:47  24              **MR. JOANEN:**  ALL THE ONES THAT ARE ON THE LIST, ALL

15:45:48  25   OF THEM ARE NOT CALLED UP.  SO I WAS JUST GOING TO READ THEM

STEVAN GEORGE SPENCER - REDIRECT


| | | |
|---|---|---|
| 15:45:54 | 1 | IN. |
| 15:45:54 | 2 | **THE COURT:**  ALL RIGHT. |
| 15:45:54 | 3 | **MR. JOANEN:**  WHATEVER WORKS BEST FOR THE COURT. |
| 15:45:58 | 4 | **MS. DALEY:**  WAIT ONE SECOND. |
| 15:45:59 | 5 | **(OFF THE RECORD)** |
| 15:46:56 | 6 | **THE COURT:**  ONE THING WE NEED TO MAKE CLEAR.  WE'VE |
| 15:46:58 | 7 | BEEN GIVEN LISTS WHERE THERE ARE NUMBERS ON IT -- EXHIBIT |
| 15:47:01 | 8 | NUMBERS THAT WEREN'T MENTIONED.  AND SO THE COURT DOESN'T HAVE |
| 15:47:07 | 9 | A PROBLEM, IF THERE'S NO OBJECTION, TO MOVE INTO EVIDENCE |
| 15:47:09 | 10 | WHATEVER IS ON THE LIST.  AS LONG AS THE OTHER SIDE DOESN'T |
| 15:47:13 | 11 | OBJECT, IT CAN COME IN AND WE'LL SORT THROUGH IT WHEN WE HAVE |
| 15:47:17 | 12 | TO. |
| 15:47:17 | 13 | IF THE OTHER SIDE HAS AN OBJECTION, WAIT, WE |
| 15:47:20 | 14 | DON'T KNOW WHAT THESE ARE, THEN I'VE GOT TO WORK THROUGH IT. |
| 15:47:24 | 15 | SO YOU CAN MOVE THE LISTS AS LONG AS EVERYBODY AGREES. |
| 15:47:27 | 16 | NOW -- AND THEN WE -- EVENTUALLY, SOMEBODY'S |
| 15:47:29 | 17 | GOING TO HAVE TO COLLATE ALL THIS AND DETERMINE WHAT'S WHAT. |
| 15:47:33 | 18 | WE DON'T JUST WANT IT TO BE TOO BURDENSOME ON ANYBODY, |
| 15:47:36 | 19 | INCLUDING US. |
| 15:47:37 | 20 | SO WE JUST ASK THAT IT BE DONE -- IF YOU HAVE A |
| 15:47:42 | 21 | LIST OF EXHIBITS, EVEN THOUGH ALL OF THEM WEREN'T BROUGHT UP, |
| 15:47:45 | 22 | I'LL ALLOW THEM TO COME IN AS LONG AS THE OTHER SIDE DOESN'T |
| 15:47:49 | 23 | OBJECT.  IF THE OTHER SIDE OBJECTS, I'LL HEAR IT. |
| 15:47:52 | 24 | **MR. WOODCOCK:**  YEAH.  WE HAVE NO OBJECTION TO THE |
| 15:47:53 | 25 | ONES THAT WE'VE SEEN.  BUT, OBVIOUSLY, WE HAVEN'T SEEN -- WE |

STEVAN GEORGE SPENCER - REDIRECT


15:47:56   1   JUST CAN'T MAKE THAT REPRESENTATION NOW.

15:47:59   2            **THE COURT:**  ALL RIGHT.  AND ANOTHER THING.  IF THEY

15:48:02   3   WEREN'T OBJECTED TO IN LIMINE, I'M GOING TO ALLOW THEM TO COME

15:48:05   4   IN BY AND LARGE.

15:48:07   5            **MR. TREEBY:**  WE UNDERSTAND THAT, JUDGE.

15:48:08   6            **THE COURT:**  NOW, I KNOW SOMETIMES THERE ARE

15:48:11   7   CONDITIONAL OBJECTIONS.

15:48:11   8            **MR. TREEBY:**  RIGHT.

15:48:12   9            **MR. JOANEN:**  JUST SO I UNDERSTAND, YOUR HONOR, THE

15:48:14  10   DOCUMENTS THAT I WAS GOING TO REFERENCE, OR DID REFERENCE, ARE

15:48:17  11   IN THIS BINDER.

15:48:19  12            I ALSO HAVE A SIMPLE LIST, WHICH IS JUST ONE

15:48:22  13   PAGE, OF ALL THE THINGS THAT ARE IN HERE.  SO I COULD EITHER --

15:48:24  14            **THE COURT:**  THE LIST WOULD BE A LOT BETTER, BUT THE

15:48:26  15   OTHER SIDE HAS TO LOOK AT IT TO MAKE SURE THAT IF THERE ARE

15:48:29  16   ONES YOU HAVEN'T MENTIONED THAT THERE'S NOT SOMETHING IN THERE

15:48:33  17   THAT'S UNTOWARD.

15:48:35  18            **MR. JOANEN:**  WELL, IF YOU'D LIKE, WE CAN DEFER UNTIL

15:48:38  19   THE END OF THE DAY.

15:48:39  20            **THE COURT:**  ALL RIGHT.  AND MAYBE TOMORROW YOU CAN

15:48:41  21   GIVE US A LIST AS TO -- WELL, I'M NOT SURE WHAT -- LET'S SEE IF

15:48:47  22   WE CAN RECTIFY THIS RIGHT NOW.

15:48:53  23            JUST A MINUTE.

15:48:55  24            **(OFF THE RECORD)**

15:49:46  25            **MR. BRUNO:**  JUDGE, WE'LL DO THIS ON OUR TIME.  IT'S

STEVAN GEORGE SPENCER - REDIRECT


15:49:49   1   ALMOST -- IT'S A QUARTER -- TEN TO 4:00, AND I -- EXCUSE ME.  I

15:49:51   2   WANT TO STAY ON MY SCHEDULE.  I'VE GOT TWO WITNESSES I WANT TO

15:49:55   3   PUT ON BEFORE THE END OF THE DAY.

15:49:57   4            **THE COURT:**  WE JUST NEED TO MAKE SURE WE HAVE A

15:50:00   5   COHERENT WAY OF GETTING THESE THINGS INTO EVIDENCE WHERE

15:50:02   6   EVERYBODY IS PROTECTED AND THE RECORD IS CLEAR.

15:50:04   7            RIGHT NOW, WE'RE A LITTLE -- RIGHT NOW, THE

15:50:05   8   RECORD IS MAYBE NOT CLEAR.

15:50:09   9            **MR. BRUNO:**  RIGHT.  AND WHAT I PROPOSE WE DO IS THAT

15:50:10  10   WE PREPARE A LIST OF DOCUMENTS, WE SHOW IT TO THE OTHER SIDE,

15:50:13  11   THEY SHOW US THEIR SIDE, AND WE DO IT THAT WAY.  WE'LL DO IT

15:50:16  12   TOMORROW ON OUR CLOCK.

15:50:18  13            **THE COURT:**  ALL RIGHT.  THAT'S FINE.

15:50:19  14            **MR. BRUNO:**  THANK YOU, JUDGE.

15:50:20  15            **THE COURT:**  ALL RIGHT.  WE'LL DO THAT.  SO I WILL

15:50:21  16   DEFER ADMITTING THOSE EXHIBITS AT THIS TIME.

15:50:23  17            **MR. BRUNO:**  AND I'LL DO THE SAME THING WITH COLLETTI.

15:50:26  18   SO WE'LL --

15:50:26  19            **THE COURT:**  RIGHT.

15:50:26  20            **MR. BRUNO:**  AND THE SAME THING WITH MORRIS.  WE'LL

15:50:29  21   JUST START FROM SCRATCH RIGHT NOW AND MAKE SURE YOU'RE HAPPY.

15:50:32  22   I WANT TO MAKE SURE YOU'RE HAPPY.

15:50:35  23            **THE COURT:**  OKAY.  ALL RIGHT.  AND WGI AND THE

15:50:36  24   GOVERNMENT CAN DO THE SAME THING.

15:50:38  25            **MR. TREEBY:**  YES, YOUR HONOR.  WE JUST NEED TO GET

STEVAN GEORGE SPENCER - REDIRECT


15:50:39   1   THAT MASTER LIST FIXED.

15:50:43   2            **THE COURT:**  RIGHT.

15:50:43   3            **MR. TREEBY:**  AND THEN WE'LL KNOW.  BECAUSE IF THERE'S

15:50:46   4   BEEN NO OBJECTION OR YOU'VE RULED ON AN OBJECTION AND IT'S

15:50:50   5   ADMITTED, WE DON'T HAVE THIS ISSUE.

15:50:52   6            **THE COURT:**  RIGHT.  I AGREE.

15:50:53   7            **MR. TREEBY:**  WE JUST NEED TO GET THAT DONE.

15:50:55   8            **THE COURT:**  OKAY.  I REALIZE IT'S DIFFICULT.  OKAY.

15:50:56   9   WE JUST WANT TO MAKE SURE THAT YOU'RE ALL PROTECTED IN THE

15:50:59  10   RECORD AND THAT WE ARE FAIRLY CLEAR.

15:51:02  11            OKAY.  MR. BRUNO?

15:51:05  12            **MR. BRUNO:**  YES, YOUR HONOR.  WE CALL NEXT.

15:51:31  13            **MS. PURCHNER:**  MR. CLIFFORD WASHINGTON, PLEASE.

15:51:35  14            (WHEREUPON, **CLIFFORD A. WASHINGTON, SR.,** HAVING BEEN

15:51:35  15   DULY SWORN, TESTIFIED AS FOLLOWS.)

15:51:37  16            **THE DEPUTY CLERK:**  PLEASE STATE YOUR FULL NAME AND

15:51:37  17   CORRECT SPELLING FOR THE RECORD.

15:51:55  18            **THE WITNESS:**  CLIFFORD WASHINGTON.  CLIFFORD A.

15:51:58  19   WASHINGTON, SR.

15:52:08  20            **MS. PURCHNER:**  YOUR HONOR, I'M SURE YOU'VE NOTICED ED

15:52:10  21   THAT MR. WASHINGTON HAS ON A PAIR OF SUNGLASSES.

15:52:12  22            **THE COURT:**  I DID.

15:52:12  23            **MS. PURCHNER:**  I JUST WANTED TO LET YOU KNOW THAT

15:52:14  24   MR. WASHINGTON HAS HAD SEVERAL MEDICAL PROCEDURES DONE TO HIS

15:52:17  25   EYES, INCLUDING A TRANSPLANT.  ONE OF THE RESULTING SIDE

CLIFFORD A. WASHINGTON, SR. – DIRECT

15:52:20   1   EFFECTS IS LIGHT SENSITIVITY.

15:52:23   2                SO I WOULD ASK YOUR HONOR, IF YOU DON'T MIND, TO

15:52:25   3   ALLOW HIM WEAR THEM THROUGHOUT THE DIRECT EXAMINATION AND THE

15:52:27   4   CROSS SO HE CAN BE COMFORTABLE.

15:52:29   5           THE COURT:  THIS COURT IS NOT SARTORIALLY RIGID.  I

15:52:33   6   UNDERSTAND HIS MEDICAL CONDITIONS.

15:52:33   7           MS. PURCHNER:  OKAY.  THANK YOU SO MUCH.  APPRECIATE

15:52:34   8   THAT, YOUR HONOR.

15:52:35   9                YOUR HONOR, WE ALSO HAVE COMPILED A LIST OF

15:52:37  10   EXHIBITS, JUST AS WE HAVE FOR THE OTHER PLAINTIFFS.  AND I'VE

15:52:40  11   GIVEN IT TO THE DEFENSE COUNSELS FOR ANY OBJECTIONS.

15:52:43  12                BUT WE WOULD LIKE TO OFFER THEM INTO EVIDENCE AS

15:52:45  13   WASHINGTON NO. 1 IN GLOBO.

15:52:49  14           THE COURT:  ANY OBJECTION FROM THE DEFENDANTS?

15:52:56  15           MS. LONIAN:  NO OBJECTION, YOUR HONOR.

15:52:57  16           THE COURT:  THANK YOU.

15:52:58  17           MR. MCCONNON:  NONE FOR THE UNITED STATES,

15:52:59  18   YOUR HONOR.

15:53:00  19           THE COURT:  THANK YOU, SIR.

15:53:00  20                LET THEM BE ADMITTED.

15:53:01  21           MS. PURCHNER:  THANK YOU, YOUR HONOR.

15:53:01  22                          DIRECT EXAMINATION

15:53:03  23   BY MS. PURCHNER:

15:53:03  24   Q.   MR. WASHINGTON, CAN YOU PLEASE STATE YOUR FULL NAME FOR

15:53:07  25   THE RECORD?

CLIFFORD A. WASHINGTON, SR. - DIRECT

15:53:08   1   **A.**   CLIFFORD WASHINGTON -- CLIFFORD A. WASHINGTON, SR.

15:53:10   2   **Q.**   THANK YOU VERY MUCH.

15:53:10   3        AND WHAT IS THE CURRENT ADDRESS IN THE HOUSE THAT YOU

15:53:11   4   LIVE?

15:53:12   5   **A.**   1910 CHARBONNET.

15:53:20   6   **Q.**   DO YOU KNOW OWN THAT HOME OR ARE YOU RENTING IT?

15:53:25   7   **A.**   I OWN THE HOME.

15:53:27   8        **MS. PURCHNER:**   YOUR HONOR, I WOULD LIKE TO REMIND

15:53:29   9   THIS COURT THAT WE'RE ONLY BRINGING A CLAIM TODAY FOR THE HOME

15:53:31  10   THAT HE JUST DESCRIBED AT 1910 CHARBONNET.

15:53:36  11        **THE COURT:**   THE COURT RECALLS THE STIPULATION THAT

15:53:37  12   WAS, I THINK, GOING TO BE -- IS THIS ONE GOING TO BE REDUCED?

15:53:37  13   DO WE HAVE A STIPULATION?  WE HAVE A STIPULATION.  YES.  THANK

15:53:38  14   YOU.

15:53:39  15        **MS. PURCHNER:**   THANK YOU, YOUR HONOR.

15:53:40  16   **BY MS. PURCHNER:**

15:53:40  17   **Q.**   DID YOU OWN THIS HOME IN AUGUST OF 2005 AT THE TIME OF

15:53:44  18   HURRICANE KATRINA, MR. WASHINGTON?

15:53:45  19   **A.**   YES, I DID.

15:53:46  20   **Q.**   WAS THIS HOME DAMAGED DUE TO HURRICANE KATRINA?

15:53:49  21   **A.**   100 PERCENT DAMAGED.

15:53:53  22   **Q.**   CAN YOU TELL US A LITTLE BIT ABOUT THE DAMAGE?

15:53:54  23   **A.**   OH, THE WATER WENT OVER TO THE ROOFTOP, AND IT WAS MOVED

15:53:59  24   FROM OFF THE KETTLES AND I HAD TO TEAR IT DOWN AND REMODEL -- I

15:54:03  25   MEAN, REBUILD IT.

CLIFFORD A. WASHINGTON, SR. - CROSS


15:54:05   1   **Q.**   DID YOU REBUILD ON THE SAME SITE WHERE THE OLD HOME WAS?

15:54:07   2   **A.**   YES, I DID.

15:54:08   3   **Q.**   DID YOU MAKE A CLAIM FOR -- AGAINST YOUR HOMEOWNERS

15:54:11   4   INSURANCE FOR THE HOME?

15:54:12   5   **A.**   YES, I DID.

15:54:13   6   **Q.**   OKAY.  DID YOU HAVE A LAWYER THAT HELPED YOU WITH THAT

15:54:17   7   CLAIM, MR. WASHINGTON?

15:54:18   8   **A.**   YES, I DID.

15:54:19   9   **Q.**   DID YOU RECEIVE ANY MONEY FROM THE ROAD HOME PROGRAM?

15:54:22  10   **A.**   YES, I DID.

15:54:23  11   **Q.**   WAS THE MONEY THAT YOU RECEIVED FROM YOUR HOMEOWNERS

15:54:26  12   INSURANCE AND FROM THE ROAD HOME PROGRAM ENOUGH TO REBUILD YOUR

15:54:30  13   HOME?

15:54:31  14   **A.**   NO, MA'AM.

15:54:31  15   **Q.**   OKAY.  THANK YOU, MR. WASHINGTON.

15:54:34  16          **MS. PURCHNER:**  NO FURTHER QUESTIONS, YOUR HONOR.

15:54:36  17          **THE COURT:**  THANK YOU.

15:54:36  18                    **CROSS-EXAMINATION**

15:54:47  19   BY MS. LONIAN:

15:54:48  20   **Q.**   GOOD MORNING, MR. WASHINGTON.

15:54:49  21          MY NAME IS HEATHER LONIAN.  WE MET AT YOUR DEPOSITION

15:54:53  22   ALMOST EXACTLY A YEAR AGO.

15:54:53  23          I WANT TO FOLLOW UP ON A QUESTION MS. PURCHNER ASKED

15:54:55  24   YOU.  YOU DID, IN FACT, REBUILD YOUR NOME AT 1910 CHARBONNET

15:54:59  25   STREET; IS THAT CORRECT?

CLIFFORD A. WASHINGTON, SR. - CROSS


15:55:00   1   **A.**   WOULD YOU REPEAT THE QUESTION?

15:55:02   2   **Q.**   YOU DID REBUILD YOUR HOUSE AT 1910 CHARBONNET; ISN'T THAT

15:55:05   3   CORRECT?

15:55:05   4   **A.**   YES, MA'AM.

15:55:06   5   **Q.**   AND THE HOUSE THAT YOU REBUILT -- OR LET ME START OVER.

15:55:10   6       THE HOUSE THAT EXISTED AT 1910 CHARBONNET AT THE TIME

15:55:13   7   OF KATRINA WAS A ONE-STORY HOUSE; ISN'T THAT RIGHT?

15:55:16   8   **A.**   YES, MA'AM.

15:55:17   9   **Q.**   AND THE HOUSE THAT YOU REBUILT AFTER KATRINA IS NOW A

15:55:19   10   TWO-STORY HOUSE?

15:55:21   11   **A.**   YES, MA'AM.

15:55:21   12   **Q.**   AND IT'S, GENERALLY SPEAKING, A LARGER HOUSE THAN WAS

15:55:25   13   THERE AT THE TIME OF KATRINA; ISN'T THAT RIGHT?

15:55:29   14   **A.**   I DIDN'T UNDERSTAND WHAT YOU SAID.

15:55:30   15   **Q.**   IS THE HOUSE THAT IS CURRENTLY AT 1910 CHARBONNET BIGGER

15:55:34   16   THAN THE HOUSE THAT WAS THERE PRIOR TO KATRINA?

15:55:37   17   **A.**   THE HOUSE THAT ORIGINALLY WAS BIGGER.

15:55:43   18       **THE COURT:**   YOUR ONE-STORY HOUSE WAS MORE SQUARE FOOT

15:55:48   19   THAN THE SECOND HOUSE THAT YOU BUILT -- THAN THE NEW HOUSE?

15:55:51   20       **THE WITNESS:**   YES, SIR.

15:55:52   21   BY MS. LONIAN:

15:55:53   22   **Q.**   LET ME ACTUALLY PULL UP A PHOTO -- I KNOW YOU HAVE VISION

15:55:57   23   PROBLEMS.   I BROUGHT PAPER COPIES IN CASE --

15:56:03   24       **THE COURT:**   SURE.   COUNSEL, WHATEVER YOU NEED TO DO.

15:56:06   25       **MS. LONIAN:**   OKAY.   CAN YOU PLEASE, ERIC, PULL UP

CLIFFORD A. WASHINGTON, SR. - CROSS


15:56:11   1   HOUSE -- DOCUMENT NUMBER JX-1540-0006.

15:56:18   2             **THE COURT:**  AND, SIR, IF YOU HAVE TROUBLE SEEING, YOU

15:56:21   3   LET ME KNOW AND WE'LL DO WHAT WE CAN.

15:56:23   4             **MS. LONIAN:**  CAN YOU ZOOM IN ON THE TOP PART OF IT?

15:56:24   5   **BY MS. LONIAN:**

15:56:25   6   **Q.**  MR. WASHINGTON, WAS THAT THE HOUSE THAT EXISTED AT 1910

15:56:28   7   CHARBONNET PRIOR TO KATRINA?

15:56:30   8   **A.**  YES, IT IS.

15:56:30   9             **MS. LONIAN:**  AND CAN YOU, ERIC, PULL UP JX-1542-0007?

15:56:56  10   CAN YOU BLOW UP THE --

15:56:59  11   **BY MS. LONIAN:**

15:56:59  12   **Q.**  IS THAT ALSO A PICTURE OF YOUR HOUSE THAT WAS AT 1910

15:57:03  13   CHARBONNET PRIOR TO KATRINA?

15:57:05  14   **A.**  YES, IT IS.

15:57:08  15             **MS. LONIAN:**  AND, ERIC, CAN YOU PULL UP JX-1613-0038?

15:57:18  16             CAN YOU HIGHLIGHT THE TOP PAGE?

15:57:21  17   **BY MS. LONIAN:**

15:57:21  18   **Q.**  AND THAT IS THE HOUSE THAT EXISTS AT 1910 CHARBONNET

15:57:24  19   TODAY; ISN'T THAT RIGHT?

15:57:25  20   **A.**  YES, IT IS.

15:57:33  21   **Q.**  AND MS. PURCHNER ASKED YOU ABOUT SOME PAYMENTS YOU

15:57:38  22   RECEIVED FROM YOUR HOMEOWNERS INSURANCE POLICY AFTER KATRINA.

15:57:44  23             **MS. LONIAN:**  ERIC, CAN YOU PULL UP JX-1545?

15:57:54  24             AND THE FIRST -- CAN YOU HIGHLIGHT -- MOVING UP

15:58:01  25   TO THE TOP -- THE TOP OF THE DOCUMENT.

CLIFFORD A. WASHINGTON, SR. - CROSS


15:58:05   1   **BY MS. LONIAN:**

15:58:05   2   **Q.**   AND THAT IS A COPY OF A CHECK PAID TO CLIFFORD WASHINGTON

15:58:11   3   AND MR. CHARLES LAVIS.

15:58:13   4         WHO IS CHARLES LAVIS?

15:58:16   5   **A.**   HE WAS THE LAWYER THAT HANDLED MY INSURANCE CLAIM.

15:58:19   6   **Q.**   CAN YOU ACTUALLY --

15:58:21   7         **MS. PURCHNER:**   YOUR HONOR, I WOULD LIKE TO OBJECT TO

15:58:23   8   THIS LINE OF QUESTIONS.  HE REBUILT HIS HOUSE.  I'M NOT SURE

15:58:26   9   HOW THIS IS RELEVANT.  HE REBUILT IT ON THE SAME LOCATION.

15:58:30  10         **THE COURT:**   OKAY.

15:58:30  11         **MS. LONIAN:**   JUST AS THE COURT HAS PREVIOUSLY RULED

15:58:31  12   THAT WIND PAYMENTS WOULD BE ADMISSIBLE.  AND THESE ARE JUST --

15:58:36  13         **THE COURT:**   THIS IS WIND PAYMENT?  YES, IT IS.  IT'S

15:58:38  14   ADMISSIBLE.

15:58:39  15         **MS. LONIAN:**   IF YOU WILL HIGHLIGHT THE BOX WITH THE

15:58:42  16   AMOUNT IN IT.  IT SAYS --

15:58:43  17         **THE COURT:**   THE OBJECTION IS OVERRULED IN REFERENCE

15:58:47  18   TO THIS BEING A WIND PAYMENT.

15:58:49  19   **BY MS. LONIAN:**

15:58:49  20   **Q.**   YOU RECEIVED A CHECK FOR WIND PAYMENT IN THE AMOUNT OF

15:58:53  21   $17,892.30 FROM YOUR HOMEOWNERS INSURER?

15:59:00  22   **A.**   I RECEIVED SOME PAYMENTS.

15:59:03  23         **MS. LONIAN:**   ERIC, CAN YOU ACTUALLY PULL UP THE

15:59:04  24   SECOND -- THE BACK COPY OF THE CHECK?

          25

CLIFFORD A. WASHINGTON, SR. - CROSS

15:59:06   1   BY MS. LONIAN:

15:59:11   2   Q.   IS THAT YOUR SIGNATURE ON THE ENDORSEMENT LINE?

15:59:14   3           THE COURT:  YOU CAN POINT IT OUT.

15:59:15   4           THE WITNESS:  YES, IT IS.

15:59:16   5           THE COURT:  OH, HE SEES IT.  OKAY.

15:59:18   6           MS. LONIAN:  AND CAN YOU PULL UP PAGE 5 OF THE SAME

15:59:28   7   EXHIBIT?  AND CAN YOU, AGAIN, HIGHLIGHT THE BOX WITH THE

15:59:32   8   AMOUNT?

15:59:32   9   BY MS. LONIAN:

15:59:36   10   Q.   AND THIS IS A PAYMENT THAT IS JUST MADE OUT TO YOU,

15:59:39   11   MR. WASHINGTON.  YOU CAN SEE WE'VE HIGHLIGHTED THAT.  AND THE

15:59:42   12   AMOUNT IS FOR $13,922.42.

15:59:47   13           DID YOU, IN FACT, RECEIVE THAT PAYMENT?

15:59:49   14   A.   YES, I DID.

15:59:51   15   Q.   OKAY.

15:59:52   16           MS. LONIAN:  AND, ERIC, CAN YOU PULL UP THE SAME

15:59:55   17   DOCUMENT, PAGE NUMBER 7?

15:59:59   18           IF YOU CAN PULL UP THE AMOUNT WITH THE BOX.  THE

16:00:11   19   BOTTOM DOCUMENT, THERE'S A -- YEAH.

16:00:15   20   BY MS. LONIAN:

16:00:16   21   Q.   AND THIS IS A CHECK MADE OUT TO YOU, MR. WASHINGTON, FOR

16:00:19   22   THE AMOUNT OF 1,500, AND THE WINDSTORM PARTIAL PAYMENT; ISN'T

16:00:25   23   THAT RIGHT?

16:00:26   24   A.   YES, IT IS.

16:00:27   25           MS. LONIAN:  OKAY.  AND CAN YOU -- SAME DOCUMENT,

CLIFFORD A. WASHINGTON, SR. - CROSS


16:00:30   1   ERIC, PULL UP PAGE NUMBER 2.

16:00:32   2   **BY MS. LONIAN:**

16:00:38   3   **Q.**   AND, MR. WASHINGTON, THIS IS A CHECK MADE OUT TO YOU, AND

16:00:41   4   AGAIN MR. LAVIS, FOR OTHER STRUCTURES FOR THE AMOUNT OF $4,800.

16:00:46   5          DID YOU RECEIVE THIS PAYMENT FROM YOUR HOMEOWNERS

16:00:50   6   INSURER?

16:00:50   7   **A.**   I RECEIVED SOME PAYMENTS.

16:00:52   8          **MS. LONIAN:**   BUT CAN YOU PULL UP THE BOX AGAIN, THE

16:00:55   9   ENDORSEMENT?

16:00:56   10   **BY MS. LONIAN:**

16:00:58   11   **Q.**   IS THAT, IN FACT, YOUR SIGNATURE ON THE ENDORSEMENT PAGE,

16:01:00   12   MR. WASHINGTON?

16:01:01   13   **A.**   YES, IT IS.

16:01:02   14          **THE COURT:**   WHEN YOU SAY "OTHER STRUCTURES," DID YOU

16:01:04   15   HAVE ANOTHER STRUCTURE OTHER THAN YOUR HOME ON THAT LOT THAT

16:01:10   16   YOUR HOME WAS ON?

16:01:11   17          **THE WITNESS:**   NO, SIR.

16:01:12   18   **BY MS. LONIAN:**

16:01:12   19   **Q.**   DO YOU RECALL IF YOU HAD A FENCE ON THE PROPERTY,

16:01:14   20   MR. WASHINGTON, AT THE TIME OF KATRINA?

16:01:18   21   **A.**   EXPLAIN YOUR QUESTION.

16:01:19   22   **Q.**   DID YOU HAVE A FENCE AROUND YOUR HOUSE AT THE TIME OF

16:01:22   23   KATRINA ON --

16:01:23   24   **A.**   YES, I DID.

16:01:24   25   **Q.**   OKAY.  DO YOU RECALL IF THIS WAS, IN FACT, A PAYMENT FOR

CLIFFORD A. WASHINGTON, SR. - CROSS


16:01:28   1   DAMAGE TO YOUR FENCE CAUSED BY WIND AND RAIN?

16:01:32   2   **A.**   I RECEIVED SOME PAYMENTS.

16:01:34   3           **THE COURT:**  BUT DO YOU RECOLLECT IF THAT WAS FOR YOUR

16:01:36   4   FENCE?  YOU MUST HAVE HAD A SUBSTANTIAL FENCE.  I'M JUST

16:01:44   5   CURIOUS.  DO YOU KNOW IF THAT WAS FOR YOUR FENCE?

16:01:48   6           **THE WITNESS:**  I CAN'T REALLY SEE, JUDGE.

16:01:50   7           **THE COURT:**  ALL RIGHT.

16:01:52   8   **BY MS. LONIAN:**

16:01:53   9   **Q.**   AND, MR. WASHINGTON, YOU -- I BELIEVE COUNSEL HAS

16:01:57  10   ALREADY -- MS. PURCHNER HAS MOVED INTO EVIDENCE COPIES OF YOUR

16:02:02  11   FORM 95 -- OF THE VARIOUS FORMS 95 YOU FILED.

16:02:07  12           **MS. LONIAN:**  ERIC, CAN YOU PULL UP JX-1537?

16:02:14  13               AND CAN YOU HIGHLIGHT BOX NUMBER 9?

16:02:18  14   **BY MS. LONIAN:**

16:02:22  15   **Q.**   WELL, FIRST OF ALL, MR. WASHINGTON --

16:02:24  16           **MS. LONIAN:**  CAN YOU PULL UP THE SIGNATURE BOX, ERIC?

16:02:26  17   **BY MS. LONIAN:**

16:02:28  18   **Q.**   MR. WASHINGTON, THAT IS YOUR SIGNATURE, IS IT NOT?

16:02:31  19   **A.**   YES, IT IS.

16:02:32  20           **MS. LONIAN:**  OKAY.  NOW, CAN YOU PULL UP BOX NUMBER

16:02:37  21   9?

16:02:43  22               I'M SORRY -- ACTUALLY, THE BOX RIGHT BENEATH

16:02:47  23   THAT.  ACTUALLY, THE BOX RIGHT BENEATH THAT.

16:02:52  24   **BY MS. LONIAN:**

16:02:59  25   **Q.**   AND IN THE THAT SAYS "BRIEFLY DESCRIBE THE PROPERTY, THE

CLIFFORD A. WASHINGTON, SR. - CROSS


16:03:02  1  NATURE AND THE EXTENT OF DAMAGE AND THE LOCATION WHERE THE

16:03:05  2  PROPERTY MAY BE INSPECTED," YOU WROTE "WIND AND WATER"; ISN'T

16:03:08  3  THAT RIGHT?

16:03:11  4  **A.**   WHAT?  WHAT YOU SAID?

16:03:13  5  **Q.**   IN THIS BOX, THE TYPING SAYS -- OR YOU WERE ASKED TO

16:03:19  6  BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE

16:03:22  7  AT THE LOCATION WHERE THE PROPERTY MAY BE INSPECTED.

16:03:25  8         AND THEN IN THAT BOX YOU WROTE "WIND AND WATER";

16:03:29  9  ISN'T THAT RIGHT?

16:03:32  10  **A.**   I DID.  I JUST WROTE WHAT I THOUGHT WAS WHAT THEY WANTED

16:03:37  11  ME TO WRITE.

16:04:10  12  **Q.**   AND JUST TO CLARIFY FOR THE RECORD, YOU HAVE, IN FACT --

16:04:13  13         **MS. LONIAN:**  I BELIEVE MR. WASHINGTON HAS MOVED TO

16:04:15  14  DISMISS ALL CLAIMS FOR ANYTHING BUT THE IMMOVABLE PROPERTY THAT

16:04:23  15  WAS LOCATED AT 1910 CHARBONNET STREET.  SO ALL CLAIMS FOR

16:04:28  16  CONTENTS AND ADDITIONAL LIVING EXPENSES HAVE BEEN DISMISSED

16:04:32  17  WITH PREJUDICE.

16:04:33  18         **MS. PURCHNER:**  THAT IS CORRECT.

16:04:33  19         **THE COURT:**  I UNDERSTAND THAT.

16:04:36  20         **MS. LONIAN:**  I HAVE NO FURTHER QUESTIONS.

16:04:39  21         **THE COURT:**  OKAY.  THANK YOU, COUNSEL.

16:04:41  22         **MS. PURCHNER:**  I HAVE ONE FURTHER QUESTION, YOUR

16:04:42  23  HONOR.

16:04:43  24         **THE COURT:**  OH, WAIT.  WE HAVE A -- THE GOVERNMENT'S

16:04:43  25  GOING TO --

CLIFFORD A. WASHINGTON, SR. - CROSS


| 16:04:44 | 1 | **MS. PURCHNER:**  OH, I'M SO SORRY. |
| 16:04:46 | 2 | **THE COURT:**  -- WANT TO WEIGH IN HERE, TOO. |
| 16:04:49 | 3 | **CROSS-EXAMINATION** |
| 16:04:53 | 4 | BY MR. MCCONNON: |
| 16:04:53 | 5 | Q.  GOOD AFTERNOON, MR. WASHINGTON.  MY NAME IS JIM MCCONNON. |
| 16:05:01 | 6 | I REPRESENT THE INTERESTS OF THE UNITED STATES.  AND I BELIEVE |
| 16:05:02 | 7 | I WAS AT THE SAME DEPOSITION THAT YOU HAD WITH HEATHER A YEAR |
| 16:05:04 | 8 | OR SO AGO. |
| 16:05:06 | 9 | DO YOU REMEMBER SEEING ME? |
| 16:05:07 | 10 | **MR. BRUNO:**  THAT'S THE WRONG QUESTION TO ASK A GUY |
| 16:05:10 | 11 | WITH BAD EYESIGHT. |
| 16:05:17 | 12 | **MR. MCCONNON:**  I'LL TAKE THAT AS A YES. |
| 16:05:20 | 13 | BY MR. MCCONNON: |
| 16:05:20 | 14 | Q.  MR. WASHINGTON, I UNDERSTAND FROM YOUR PRIOR TESTIMONY |
| 16:05:22 | 15 | THAT YOU RECEIVED MONEY FROM THE ROAD HOME PROGRAM; IS THAT |
| 16:05:25 | 16 | CORRECT? |
| 16:05:25 | 17 | A.  YES, I DID. |
| 16:05:29 | 18 | Q.  WHEN HURRICANE KATRINA HIT, WHAT WAS YOUR PRIMARY |
| 16:05:33 | 19 | RESIDENCE? |
| 16:05:35 | 20 | A.  1910 CHARBONNET. |
| 16:05:37 | 21 | Q.  THAT'S WHERE YOU WERE LIVING -- |
| 16:05:39 | 22 | **MS. PURCHNER:**  OBJECTION, YOUR HONOR. |
| 16:05:40 | 23 | BY MR. MCCONNON: |
| 16:05:40 | 24 | Q.  -- PRIOR TO KATRINA? |
| 16:05:41 | 25 | **MS. PURCHNER:**  WHERE HE WAS LIVING IS IRRELEVANT TO |

CLIFFORD A. WASHINGTON, SR. - CROSS


16:05:44   1   HIS CLAIM FOR PROPERTY DAMAGE TO THE CHARBONNET PROPERTY.  HE

16:05:46   2   OWNED THE PROPERTY THAT WAS DAMAGED.

16:05:48   3          **MR. MCCONNON:**  YOUR HONOR, IT GOES TO THE ISSUE OF

16:05:49   4   CREDIBILITY, AND IT'S RELEVANT.

16:05:51   5          **THE COURT:**  WHAT CREDIBILITY?

16:05:53   6          **MR. MCCONNON:**  WELL, WE'LL SEE IN A MINUTE.

16:05:56   7          **MS. PURCHNER:**  IT WAS ADDRESSED IN THE MOTION IN

16:05:57   8   LIMINE, YOUR HONOR.

16:05:59   9          **MR. MCCONNON:**  NO.  WHAT WAS ADDRESSED IN THE MOTION

16:06:00  10   FOR LIMINE IS WHETHER WE COULD BRING UP ROAD HOME PAYMENTS AS

16:06:04  11   THE PURPOSE OF OFFSETS.  THAT'S NOT WHAT I'M --

16:06:07  12          **THE COURT:**  WELL, YOU JUST HAVE TO ADDRESS YOURSELF

16:06:08  13   TO THE COURT, SIR.

16:06:09  14          **MR. MCCONNON:**  YES, SIR.

16:06:09  15          **THE COURT:**  SO YOU ARE SAYING IT'S IRRELEVANT WHERE

16:06:12  16   HE LIVED.  IT'S -- IT WAS HIS HOUSE.  THAT'S WHAT HE'S

16:06:16  17   CLAIMING, AND HE'S MAKING A CLAIM FOR THE DAMAGE TO THAT HOUSE

16:06:20  18   AND FOR THE COST TO REPLACE THE HOUSE.

16:06:21  19          **MS. PURCHNER:**  THAT'S CORRECT, YOUR HONOR.

16:06:22  20          **THE COURT:**  AND SO WHAT'S THE RELEVANCE, COUNSEL.

16:06:26  21          **MR. MCCONNON:**  THE RELEVANCE IS HE MADE A ROAD HOME

16:06:29  22   APPLICATION WHEN IT WAS FOR A PROPERTY OTHER THAN HIS PRIMARY

16:06:32  23   RESIDENCE.

16:06:33  24          **MS. PURCHNER:**  THAT'S IRRELEVANT, YOUR HONOR.

16:06:35  25          **THE COURT:**  WHAT CREDIBILITY ARE WE ATTACKING?  ARE

CLIFFORD A. WASHINGTON, SR. - CROSS


16:06:37    1   YOU SAYING --

16:06:37    2             **MR. MCCONNON:**  HIS TRUTHFULNESS, YOUR HONOR.

16:06:40    3             **THE COURT:**  BUT ABOUT WHAT?  ABOUT THE FACT THAT

16:06:42    4   THERE WAS A STORM OR THE FACT THAT HIS HOUSE WAS DAMAGED AND

16:06:45    5   THE FACT THAT HE DID OWN THAT -- THE PARTICULAR PROPERTY THAT'S

16:06:45    6   BEFORE THE COURT?  WHAT OTHER CREDIBILITY -- WHAT OTHER

16:06:49    7   STATEMENT HAS BEEN MADE TO THE COURT THAT WOULD BE SUBJECT TO

16:06:51    8   THE CREDIBILITY ATTACK?

16:06:53    9             **MR. MCCONNON:**  WELL, SOME MAY CONSIDER FILING AN

16:06:56   10   APPLICATION FOR A PIECE OF PROPERTY WHICH IS NOT YOUR PRIMARY

16:06:59   11   RESIDENCE AS BEING FRAUD, YOUR HONOR.

16:07:03   12             **THE COURT:**  WELL, SO WHAT?  I MEAN, HOW DOES THAT

16:07:05   13   RELATE TO THE DAMAGE TO HIS HOUSE?  I'M SAYING HOW IS IT

16:07:08   14   RELEVANT?

16:07:08   15             LET'S ASSUME HE'S AN AX MURDERER.  WHAT

16:07:12   16   DIFFERENCE DOES THAT MAKE?  YOU TELL ME WHY IT'S RELEVANT.  I

16:07:17   17   DON'T CARE.  BUT LEGALLY, IF YOU GIVE ME A LEGAL REASON, I

16:07:22   18   SHOULD.

16:07:22   19             WHAT HAS HE TESTIFIED TO TODAY THAT YOU ARE

16:07:23   20   ATTACKING HIS CREDIBILITY ABOUT?  AND IF YOU ARE, I'M ALL EARS.

16:07:26   21             DOES HE NOT OWN THE HOUSE, WAS IT NOT DAMAGED,

16:07:30   22   ET CETERA?  HE'S TESTIFIED TO THE PAYMENTS HE RECEIVED.  I

16:07:34   23   GUESS I'M WONDERING WHERE WE'RE GOING WITH THIS.

16:07:36   24             **MR. MCCONNON:**  WELL, THE ONLY DIRECTION I WAS HEADING

16:07:38   25   ON, YOUR HONOR, WAS THE ISSUE OF CREDIBILITY AND HIS ABILITY TO

CLIFFORD A. WASHINGTON, SR. - CROSS


16:07:41   1   TELL THE TRUTH.

16:07:41   2           **THE COURT:**  BUT YOU HAVE TO TELL ME -- ARTICULATE TO

16:07:44   3   ME, WHAT HAS HE STATED HERE IN THIS COURT, BASED ON THE CLAIM

16:07:47   4   THAT'S BEFORE THIS COURT, THAT MAY BE NOT CREDIBLE THAT YOU ARE

16:07:54   5   ATTACKING?

16:07:56   6           **MR. MCCONNON:**  MAY I HAVE A MOMENT WITH MY

16:07:57   7   CO-COUNSEL, YOUR HONOR?

16:07:58   8           **THE COURT:**  YOU MAY.  YES, SIR.

16:08:54   9           **MR. MCCONNON:**  YOUR HONOR, THE PLAINTIFF IS, OF

16:08:57  10   COURSE, REQUESTING COMPENSATION FOR MONEY FOR A PIECE OF

16:09:00  11   PROPERTY FOR WHICH HE'S ALREADY BEEN AT LEAST ONCE COMPENSATED

16:09:05  12   FOR BY THE UNITED STATES, IS NOW -- AND, AGAIN, IS ATTEMPTING

16:09:11  13   TO REQUEST COMPENSATION ONCE AGAIN --

16:09:12  14           **THE COURT:**  SO IS EVERYBODY ELSE WHO'S RECEIVED ROAD

16:09:15  15   HOME MONEY.  I'VE ALREADY RULED THAT THAT IS NOT GOING TO BE

16:09:18  16   DEDUCTED BY MY RULING.  YOU'RE CERTAINLY ENTITLED TO PROFFER

16:09:22  17   THAT, AND IT'S COME IN.

16:09:23  18           AND IF I'VE LET IT COME IN IN OTHER CASES WHERE

16:09:28  19   THERE WAS NO REBUILD, YOU CAN PROFFER IT HERE.  AND YOU CAN

16:09:30  20   CERTAINLY MAKE THAT ARGUMENT.  I DON'T KNOW HOW THAT GOES TO

16:09:35  21   CREDIBILITY.  EVERYBODY -- VIRTUALLY -- WELL, HUNDREDS OF

16:09:36  22   THOUSANDS OF PEOPLE IN LOUISIANA MADE ROAD HOME CLAIMS AND

16:09:42  23   RECEIVED -- AND ARE FILING SUITS AGAINST THE GOVERNMENT.

16:09:44  24           IF THAT'S A DEFENSE, I'VE RULED THAT THE ROAD

16:09:47  25   HOME PAYMENTS FOR VARIOUS REASONS -- AND I'LL LOOK AT IT AGAIN

CLIFFORD A. WASHINGTON, SR. - CROSS


16:09:51   1   WHEN WE BRIEF IT, BUT I DON'T KNOW HOW THAT GOES TO

16:09:54   2   CREDIBILITY.  IT DOESN'T, TO ME.

16:09:56   3                AND THE FACT THAT ONE MADE A ROAD HOME CLAIM AND

16:10:00   4   IS ALSO SUING UNDER THE FEDERAL TORTS CLAIM ACT, I'M NOT SURE

16:10:05   5   HOW THAT GOES TO CREDIBILITY.  IN FACT, IT DOESN'T.

16:10:07   6           **MR. MCCONNON:**  I UNDERSTAND, YOUR HONOR.  THE UNITED

16:10:09   7   STATES WILL MAKE A PROFFER.

16:10:11   8           **THE COURT:**  OKAY.  NOW, YOU CAN GO AHEAD AND MAKE

16:10:12   9   YOUR PROFFER ON THE ROAD HOME -- DO YOU WANT TO DO THAT NOW?

16:10:15   10  DO YOU WANT TO MAKE YOUR PROFFER NOW?

16:10:17   11          **MR. MCCONNON:**  NO, YOUR HONOR.  I'M GOING TO WAIT

16:10:19   12  UNTIL ALL THE PLAINTIFFS HAVE GIVEN THEIR TESTIMONY AND THEN

16:10:21   13  I'LL MAKE A PROFFER.

16:10:23   14          **THE COURT:**  WELL, TO THE PLAINTIFFS WHO DID NOT

16:10:25   15  REBUILD, I'VE ALLOWED IT TO THE EXTENT THAT IT MAY GO -- IT MAY

16:10:29   16  GO TO, COULD THEY HAVE REBUILT AND DIDN'T, AND THAT'S A LEGAL

16:10:33   17  ISSUE.  SO I'VE ALLOWED IT TO THOSE WHO HAVE NOT -- WHO DID NOT

16:10:37   18  REBUILD.  I'VE ALLOWED IT TO COME IN FOR THAT PURPOSE.

16:10:40   19                YOU MAY NOT HAVE BEEN HERE, AND I APOLOGIZE IF

16:10:42   20  YOU WEREN'T.  BUT -- SO I'VE ALLOWED IT ON THE CATH- -- THE

16:10:48   21  *ROMAN CATHOLIC CHURCH* ISSUE, DIMINUTION OR RECONSTRUCTION FOR

16:10:54   22  THOSE WHO DID NOT REBUILD.

16:10:56   23          **MR. MCCONNON:**  UNDERSTOOD, YOUR HONOR.

16:10:58   24          **THE COURT:**  OKAY.

16:10:59   25          **MS. LONIAN:**  I JUST WANT TO MOVE THE DOCUMENTS I

CLIFFORD A. WASHINGTON, SR. - CROSS


16:11:00    1  SHOWED INTO EVIDENCE -- ARE WE DOING A LIST OR . . .

16:11:04    2          **MS. PURCHNER:**  I'M NOT GOING TO HAVE ANY FURTHER

16:11:05    3  QUESTIONS.  SO IF YOU'D LIKE TO --

16:11:08    4          **MS. LONIAN:**  I'M SORRY.

16:11:09    5          **THE COURT:**  JUST ADDRESS THE COURT.

16:11:11    6          **MS. LONIAN:**  I JUST, AS A HOUSEKEEPING MATTER, WANTED

16:11:13    7  TO INTRODUCE --

16:11:13    8          **THE COURT:**  CERTAINLY.

16:11:13    9          **MS. LONIAN:**  -- THE EXHIBITS THAT I SHOWED.

16:11:16   10          THAT WOULD BE JX-1540-0006, JX-01542-0007,

16:11:29   11  JX-001545-0001, JX-01545-0002, JX-01545-0007, AND-JX

16:11:51   12  01545-0007, AND THE SAME PAGE 5.  I'M NOT SURE.  I MIGHT HAVE

16:12:06   13  MISSPOKEN OR REPEATED MYSELF.  BUT THAT'S --

16:12:08   14          **MS. PURCHNER:**  YOUR HONOR, THAT'S --

16:12:09   15          **THE COURT:**  ANY OBJECTION?

16:12:10   16          **MS. PURCHNER:**  NO OBJECTION.  BUT NOW THAT SHE'S

16:12:11   17  ENTERED THEM INTO EVIDENCE, I HAVE ONE LAST QUESTION, PLEASE.

16:12:13   18          **THE COURT:**  CERTAINLY.

16:12:15   19          **MS. PURCHNER:**  THANK YOU.

16:12:15   20          **THE COURT:**  AND BY THE WAY, JUST TO LET EVERYONE

16:12:18   21  KNOW, BECAUSE I DON'T WANT ANYBODY -- THE ASSIGNMENTS, THOSE

16:12:23   22  WHO RECEIVED ROAD HOME MONEY, I ASSUME THEY'RE GOING TO HAVE

16:12:26   23  THEIR ASSIGNMENTS IN EVIDENCE, IF THERE WERE ASSIGNMENTS.

16:12:30   24          **MR. BRUNO:**  YES.  I MEAN -- ACTUALLY, YOUR HONOR, WE

16:12:42   25  WILL DO THAT.  I MEAN, WE HAVE THEM.  WE'LL PUT THEM IN.

CLIFFORD A. WASHINGTON, SR. - CROSS


16:12:47    1              I GUESS WHAT I WAS THINKING TO MYSELF, OUT LOUD,

16:12:50    2    IS THE EVIDENCE, LIKE IN THIS CASE, THERE REALLY IS NO SPECIFIC

16:12:53    3    EVIDENCE AS TO WHAT HE RECEIVED.

16:12:55    4              **THE COURT:**  I CAN'T HEAR YOU, SIR.

16:12:57    5              **MR. BRUNO:**  I SAID HIS ROAD HOME GRANT IS IRRELEVANT

16:12:59    6    TO HIS CLAIM BECAUSE HE REBUILT.  SO THERE'S NOTHING THERE, BUT

16:13:03    7    I'LL PUT THEM IN, IN ANY CASE.

16:13:06    8              **THE COURT:**  BUT THE COLLATERAL SOURCE RULING --

16:13:08    9              **MR. BRUNO:**  RIGHT.

16:13:08   10              **THE COURT:**  -- IS PARTIALLY BASED ON THE ASSIGNMENT.

16:13:11   11              **MR. BRUNO:**  ALL RIGHT, YOUR HONOR.  WE WILL MOVE

16:13:13   12    THOSE INTO EVIDENCE.  WE HAVEN'T DONE THAT YET, BUT WE WILL.

16:13:16   13              **THE COURT:**  I JUST DON'T WANT ANYBODY TO BE

16:13:18   14    TECHNICALLY --

16:13:21   15              **MR. BRUNO:**  NO, YOU'RE RIGHT.

16:13:23   16              **MR. TREEBY:**  YOUR HONOR, IF IT WOULDN'T BE TOO MUCH

16:13:26   17    TROUBLE, COULD WE APPROACH THE BENCH?

16:13:56   18              **THE COURT:**  YES.

12:28:47   19              (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT

12:28:47   20    THE BENCH.)

16:13:57   21              **MR. TREEBY:**  THIS IS A TOUCHY ISSUE.  THIS GENTLEMAN

16:14:03   22    DID FILE A CLAIM FOR ROAD HOME ON THIS PROPERTY.  IT WAS -- HE

16:14:07   23    ALSO TESTIFIED UNDER OATH THAT IT WAS NOT HIS PRIMARY

16:14:11   24    RESIDENCE.  THAT'S WHERE MR. MCCONNON WAS GOING.  HE TESTIFIED

16:14:16   25    UNDER OATH IT WAS NOT HIS PRIMARY RESIDENCE.  IT WASN'T.  HE

CLIFFORD A. WASHINGTON, SR. - CROSS


16:14:19   1   ESCAPED FROM THE DERBIGNY PROPERTY THAT WAS FORECLOSED ON.  HE

16:14:23   2   LIVED IN THE DERBIGNY PROPERTY UNTIL KATRINA HIT.

16:14:26   3            NOW, THAT'S A TOUCHY SUBJECT.  I DON'T WANT --

16:14:29   4        THE COURT:  BUT I'M NOT SURE WHAT IT MEANS FOR HIS

16:14:31   5   CLAIM, LEGALLY.

16:14:32   6        MR. TREEBY:  HERE'S HOW IT MIGHT MEAN SOMETHING.

16:14:32   7        THE COURT:  IF THE GOVERNMENT WANTS THEIR MONEY

16:14:34   8   BACK --

16:14:34   9        MR. BRUNO:  THAT'S RIGHT.

16:14:34  10        THE COURT:  -- THEY CAN PROSECUTE HIM.  THEY CAN SURE

16:14:36  11   DO THAT.

16:14:38  12        MR. TREEBY:  HE MADE -- THE ONLY WAY IT'S POTENTIALLY

16:14:40  13   RELEVANT, AND I'M JUST BRING THIS UP, IS THAT HE GOT THE OPTION

16:14:43  14   1, OKAY, INSTEAD OF OPTION 2.  HE DIDN'T REBUILD WHERE HE WAS.

16:14:49  15   SO IT DOES POTENTIALLY COME UNDER *ROMAN CATHOLIC*.  THAT'S THE

16:14:52  16   POINT.

16:14:53  17        MR. BRUNO:  NO, NO, NO.  *ROMAN CATHOLIC* DOESN'T

16:14:55  18   RELATE TO --

16:14:56  19        MR. TREEBY:  WE DISAGREE.  I'M NOT GOING TO ARGUE --

16:15:00  20        THE COURT:  ROMAN CATHOLIC DOESN'T -- LET ME SAY

16:15:00  21   THIS.  IF IT'S ALREADY ESTABLISHED IT'S NOT HIS PRIMARY

16:15:04  22   RESIDENCE, SO YOU CAN ARGUE THAT.  THAT'S ALL WE NEED TO ARGUE.

16:15:07  23        MR. TREEBY:  IT HASN'T BEEN ESTABLISHED, BECAUSE

16:15:08  24   YOUR HONOR WOULDN'T LET MR. MCCONNON ASK THE QUESTION.

16:15:12  25        MR. BRUNO:  OH, NO, NO, NO, NO.  THAT'S NOT WHY.

CLIFFORD A. WASHINGTON, SR. - CROSS


16:15:12   1          **THE COURT:**  HE DID SAY HE WAS LIVING IN THE OTHER

16:15:14   2    HOME.

16:15:15   3          **MR. TREEBY:**  HE DID?

16:15:16   4          **THE COURT:**  YES.

16:15:16   5          **MR. BRUNO:**  YES, HE DID.

16:15:18   6          **MR. TREEBY:**  IT'S ON THE RECORD?

16:15:20   7          **MR. MCCONNON:**  NO.  I ASKED HIM WHAT HIS PRIMARY

16:15:22   8    RESIDENCE AT THE TIME --

16:15:23   9          **THE COURT:**  AND YOU WILL STIPULATE HE WAS LIVING IN

16:15:23  10    THAT HOME -- WILL YOU STIPULATE THAT HE WAS LIVING IN THE OTHER

16:15:27  11    HOME AT THE TIME?  HOLD ON.  WILL YOU STIPULATE THAT HE WAS

16:15:28  12    LIVING IN THE OTHER HOME AT THE TIME?

16:15:28  13          **MR. BRUNO:**  YES, JUDGE.

16:15:28  14          **THE COURT:**  ALL RIGHT.  THAT'S STIPULATED.

16:15:29  15          **MR. TREEBY:**  IF WE HAVE A STIPULATION, THAT'S FINE.

16:15:31  16    BECAUSE HE TESTIFIED IT WAS CHARBONNET JUST NOW IN ANSWER TO

16:15:38  17    HIS QUESTION.  HE SAID IT WAS 1910 CHARBONNET JUST NOW IN

16:15:39  18    ANSWER TO MR. MCCONNON'S QUESTION.

16:15:41  19          **UNIDENTIFIED SPEAKER:**  THIS IS WAY OVER HIS HEAD.

16:15:41  20    WE'LL STIPULATE HE --

16:15:43  21          **THE COURT:**  THERE IS A STIPULATION THAT THIS

16:15:47  22    GENTLEMAN, MR. WASHINGTON, WAS NOT LIVING IN THE HOME THAT HE

16:15:51  23    IS SEEKING RECOMPENSE FOR IN THIS LAWSUIT AT THIS TIME.

16:15:55  24               ANY OTHER ISSUES WITH THE ROAD HOME AND THE

16:15:57  25    CRIMINAL COURT, THAT'S NOT UP TO ME.

CLIFFORD A. WASHINGTON, SR. - CROSS


16:16:00     1          **MR. BRUNO:**  EXACTLY.  AND THE FACT OF THE MATTER IS,

16:16:02     2  THOUGH, THAT THE CASE REQUIREMENTS IS TO ADDRESS WHETHER OR NOT

16:16:05     3  HE, IN FACT, REBUILT, WHICH HE DID.

16:16:08     4          AND THE ONLY REASON WHY YOU ALL KEPT INSISTING

16:16:11     5  IN BRINGING UP THE MONEY ISSUE WAS IN THE CASE WHERE HE DIDN'T

16:16:14     6  REBUILD.  SO THE MONEY ISSUE IS NOT RELEVANT.

16:16:17     7          **THE COURT:**  I UNDERSTAND WHAT THEY'RE SAYING.  WE'RE

16:16:18     8  GOING TO ARGUE THAT, IN BRIEF, UNDER *ROMAN CATHOLIC*, AND ALL

16:16:22     9  THE OTHER APPROPRIATE CASES.  IS THAT OUR UNDERSTANDING?

16:16:24    10          **MR. BRUNO:**  YES.

16:16:24    11          **MR. TREEBY:**  YES.

16:16:24    12          **THE COURT:**  ALL RIGHT.  THAT'S WHAT I UNDERSTAND.

16:16:24    13  THANK YOU.

16:16:24    14          (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD IN

16:16:24    15  OPEN COURT.)

16:17:01    16          **THE COURT:**  DID COUNSEL HAVE ONE MORE QUESTION?

16:17:04    17          **MR. BRUNO:**  YES, SHE DID.

16:17:05    18  BY MS. PURCHNER:

16:17:06    19  **Q.**   MR. WASHINGTON, I HAVE ONE MORE QUESTION, AND THAT'S ALL.

16:17:08    20          **MS. PURCHNER:**  I'D LIKE TO PULL UP, PLEASE, THE

16:17:08    21  EXHIBIT THAT DEFENSE COUNSEL SHOWED.  IT'S JX-1545, PLEASE.

16:17:22    22          IF YOU COULD PLEASE ZOOM IN ON THE BOTTOM

16:17:24    23  PORTION OF THE CHECK WHERE IT HAS THE DEPOSIT AND THE SIGNATURE

16:17:27    24  THERE.

            25

CLIFFORD A. WASHINGTON, SR. - CROSS

16:17:27   1  **BY MS. PURCHNER:**

16:17:27   2  **Q.**  MR. WASHINGTON, UNDER YOUR SIGNATURE, SIR, DOES THAT NOT

16:17:33   3  SAY "DEPOSIT ONLY TO DAVIS LAW FIRM"; IS THAT CORRECT?

16:17:37   4  **A.**  SAY THAT AGAIN.

16:17:39   5  **Q.**  UNDER YOUR SIGNATURE, DO YOU SEE WHERE IT SAYS "FOR

16:17:43   6  DEPOSIT ONLY, DAVIS LAW FIRM"; IS THAT CORRECT?

16:17:47   7  **A.**  YES.

16:17:48   8  **Q.**  OKAY.  MY QUESTION IS FOR YOU, SIR:  YOU STATED EARLIER IN

16:17:53   9  YOUR TESTIMONY THAT YOU HAD A LAW FIRM THAT HELPED YOU WITH

16:17:57  10  YOUR WIND CLAIM; CORRECT?

16:17:59  11  **A.**  YES, I DID.

16:18:00  12  **Q.**  DID YOU HAVE TO PAY ATTORNEYS' FEES FOR THAT ASSISTANCE?

16:18:04  13  **A.**  YES, MA'AM.

16:18:05  14  **Q.**  OKAY.  THANK YOU.

16:18:13  15        **MS. PURCHNER:**  NO FURTHER QUESTIONS.

16:18:15  16        **THE COURT:**  MR. WASHINGTON, YOU MAY STEP DOWN.  BE

16:18:16  17  VERY CAREFUL.  SOMEBODY MIGHT ASSIST HIM SO HE DOESN'T TRIP.

16:18:24  18  SOMEBODY?

16:18:36  19        MR. BRUNO, I'M ASKING YOU, I GUESS, WHO'S THE

16:18:40  20  NEXT WITNESS?

16:18:40  21        **MR. BRUNO:**  YES.  SHE'S SITTING RIGHT HERE.

16:18:41  22        **MR. ANDRY:**  IT'S MS. JEANNINE ARMSTRONG.

16:18:44  23        **THE COURT:**  WOULD YOU LIKE TO TAKE A BREAK OR WOULD

16:18:44  24  YOU LIKE TO JUST ROLL ON?  IT'S UP TO YOU.  I'M GAME.

16:18:46  25        **MR. BRUNO:**  WE MAY FINISH EARLY IF WE JUST GET HER

CLIFFORD A. WASHINGTON, SR. - CROSS


16:18:49   1    ON.  IT'S A PLAINTIFF.  I DON'T ANTICIPATE IT BEING TOO LONG.

16:18:53   2    WE ARE ON SCHEDULE.

16:18:54   3              **THE COURT:**  OKAY.  GOOD.

16:18:56   4              **MR. BRUNO:**  SO I THINK LET'S JUST ROLL, JUDGE.  THANK

16:18:59   5    YOU SO MUCH.

16:19:02   6              **MR. ANDRY:**  TO ADD TO THAT, YOUR HONOR, IT'S JONATHAN

16:19:04   7    ANDRY ON BEHALF OF THE PLAINTIFFS.

16:19:06   8              WE CALL MS. JEANNINE ARMSTRONG TO THE STAND.

16:19:10   9              FOR THE COURT'S INFORMATION, MS. ARMSTRONG IS A

16:19:12   10   PLAINTIFF, AS IS HER HUSBAND.  AND FOR BREVITY, AS I UNDERSTAND

16:19:16   11   THE COURT'S CONSTANT INSTRUCTIONS THROUGHOUT THE TRIAL SO FAR,

16:19:18   12   I WILL ELICIT TESTIMONY FROM HER ABOUT HER CIRCUMSTANCES.  MOST

16:19:23   13   OF THE FINANCIAL INFORMATION, AS I UNDERSTAND IT, WAS HANDLED

16:19:26   14   BY MR. ARMSTRONG, AND HE'LL TESTIFY TO THAT WHEN HE TESTIFIES.

16:19:29   15             SO SHE SHOULD BE SHORT AND WE SHOULD BE ABLE TO

16:19:31   16   GET FINISHED EARLIER.

16:19:33   17             **THE COURT:**  OKAY.  ALL RIGHT.

16:19:33   18             (WHEREUPON, **JEANINE ARMSTRONG**, HAVING BEEN DULY

16:19:33   19   SWORN, TESTIFIED AS FOLLOWS.)

16:19:56   20             **THE DEPUTY CLERK:**  PLEASE STATE YOUR FULL NAME AND

16:19:56   21   CORRECT SPELLING FOR THE RECORD.

16:19:58   22             **THE WITNESS:**  JEANNINE ARMSTRONG, J-E-A-N-N-I-N-E,

16:20:05   23   A-R-M-S-T-R-O-N-G.

16:20:19   24             **MR. ANDRY:**  YOUR HONOR, FOR HOUSEKEEPING PURPOSES, AS

16:20:19   25   WE'VE DONE WITH ALL THE PLAINTIFFS, I'VE PROVIDED THE

CLIFFORD A. WASHINGTON, SR. - CROSS

16:20:21   1   DEFENDANTS A LIST OF EXHIBITS THAT WE'LL USE WITH

16:20:24   2   MRS. ARMSTRONG.  AND ASSUMING THEY DON'T HAVE ANY OBJECTIONS,

16:20:26   3   WE WOULD LIKE TO OFFER, FILE, AND INTRODUCE THOSE IN JEANNINE

16:20:33   4   ARMSTRONG 1 IN GLOBO.

16:20:35   5              **THE COURT:**  AND THAT'S IN A LIST THAT MY COURTROOM

16:20:35   6   DEPUTY CAN KEEP?

16:20:35   7              **MR. ANDRY:**  YES, YOUR HONOR.  I HAVE A BINDER -- I

16:20:35   8   HAVE A LIST.

16:20:35   9              **THE COURT:**  ARE THERE ANY OBJECTIONS FROM THE

16:20:37  10   DEFENDANTS?

16:20:38  11              **MR. TREEBY:**  I DOUBT IT.  BY THE TIME I GET UP TO ASK

16:20:41  12   A FEW QUESTIONS, I'LL PROBABLY BE ABLE TO SAY I HAVE NO

16:20:44  13   OBJECTION.  I JUST WANT TO FLIP THROUGH THEM.  IT'S A LOT.

16:20:47  14              **THE COURT:**  DO YOU WANT TO DO THAT NOW, OR DO YOU

16:20:49  15   WANT TO -- DO YOU WANT TO FLIP THROUGH THEM NOW OR DO YOU WANT

16:20:50  16   TO --

16:20:51  17              **MR. TREEBY:**  I CAN DO IT RIGHT NOW.  JUST GIVE ME A

16:20:53  18   SECOND.

16:20:54  19              **THE COURT:**  YEAH.  TAKE YOUR TIME.

16:21:46  20                         **(OFF THE RECORD)**

16:21:47  21              **MR. TREEBY:**  NO OBJECTION.

16:21:49  22              **MR. WOODCOCK:**  THE UNITED STATES HAS NO OBJECTIONS,

16:21:50  23   YOUR HONOR.

16:21:51  24              **THE COURT:**  THANK YOU, SIR.  LET THEM BE ADMITTED.

16:21:54  25              **MR. ANDRY:**  THANK YOU, YOUR HONOR.

JEANINE ARMSTRONG - DIRECT


16:21:54   1          **DIRECT EXAMINATION**

16:21:54   2   **BY MR. ANDRY:**

16:21:55   3   **Q.**   MRS. ARMSTRONG, WHERE DID YOU LIVE IN AUGUST OF 2005?

16:22:00   4   **A.**   I LIVED IN CHALMETTE, AT 4016 HAMLET PLACE.

16:22:04   5   **Q.**   WAS THAT THE FIRST TIME YOU EVER LIVED ON HAMLET PLACE?

16:22:08   6   **A.**   NO.  I LIVED THERE AS A CHILD.

16:22:10   7   **Q.**   WHEN DID YOU FIRST MOVE TO HAMLET PLACE?

16:22:14   8   **A.**   WE MOVED THERE IN THE '70S.

16:22:17   9   **Q.**   HOW OLD WERE YOU AT THE TIME?

16:22:19  10   **A.**   PROBABLY ABOUT 10, 10 YEARS OLD.

16:22:21  11   **Q.**   WHAT WAS THE ADDRESS?

16:22:22  12   **A.**   4032 HAMLET.

16:22:25  13   **Q.**   AND DID YOU GROW UP ON HAMLET STREET?

16:22:28  14   **A.**   YES, I DID.

16:22:29  15   **Q.**   WHERE DID YOU GO TO SCHOOL?

16:22:30  16   **A.**   I WENT TO GRAMMAR SCHOOL AT OUR LADY OF PROMPT SUCCOR IN

16:22:33  17   CHALMETTE, AND I WENT TO HIGH SCHOOL AT ANDREW JACKSON HIGH

16:22:35  18   SCHOOL IN CHALMETTE.

16:22:36  19   **Q.**   AND AT THE TIME YOU WERE IN SCHOOL, IN HIGH SCHOOL,

16:22:39  20   CHALMETTE AND ANDREW JACKSON WERE THE TWO CO-ED SCHOOLS, WITH

16:22:44  21   ANDREW JACKSON BEING THE GIRLS' SCHOOL AND CHALMETTE BEING THE

16:22:50  22   BOYS' SCHOOL; IS THAT RIGHT?

16:22:50  23   **A.**   THAT'S RIGHT.

16:22:50  24   **Q.**   DID YOU -- WHAT DID YOU DO AFTER HIGH SCHOOL, WORK-WISE?

16:22:54  25   **A.**   I WORKED AS A RECEPTIONIST AT A FEW PLACES, AND WENT BACK

JEANINE ARMSTRONG – DIRECT

16:22:58   1   TO SCHOOL AND BECAME A REGISTERED NURSE.

16:23:00   2   **Q.**   WHEN DID YOU BECOME A REGISTERED NURSE?

16:23:03   3   **A.**   IN 1994.

16:23:04   4   **Q.**   HAVE YOU BEEN A REGISTERED NURSE SINCE THEN?

16:23:06   5   **A.**   YES.

16:23:07   6   **Q.**   WHERE HAVE YOU WORKED AS A REGISTERED NURSE?

16:23:10   7   **A.**   RIGHT OUT OF SCHOOL I WORKED AT CHARITY HOSPITAL FOR A FEW

16:23:13   8   MONTHS.  THEN I GOT A JOB AT CHALMETTE MEDICAL CENTER.

16:23:18   9   **Q.**   WHERE IN CHALMETTE MEDICAL CENTER DID YOU WORK?

16:23:22  10   **A.**   I WORKED IN THE OPERATING ROOM AND I WORKED IN SPECIAL

16:23:26  11   PROCEDURES.

16:23:26  12   **Q.**   AND DID THAT CHANGE FROM THE TIME YOU STARTED THERE UNTIL

16:23:29  13   SOMETIME IN 2005?

16:23:31  14   **A.**   I WORKED THERE THE ENTIRE TIME.

16:23:35  15   **Q.**   ARE YOU MARRIED?

16:23:35  16   **A.**   YES.

16:23:36  17   **Q.**   WHEN DID YOU GET MARRIED?

16:23:38  18   **A.**   IN 1982.

16:23:39  19   **Q.**   WHO DID YOU MARRY?

16:23:43  20   **A.**   KENNETH ARMSTRONG.

16:23:44  21   **Q.**   HOW OLD IS MR. ARMSTRONG?

16:23:46  22   **A.**   48.

16:23:47  23   **Q.**   AND HOW LONG HAVE YOU-ALL BEEN MARRIED?

16:23:49  24   **A.**   30 YEARS.

16:23:50  25   **Q.**   AND THAT WOULD MEAN YOU GOT MARRIED SOMETIME AROUND THE

JEANINE ARMSTRONG - DIRECT


| | | |
|---|---|---|
| 16:23:53 | 1 | TIME HE WAS 19; RIGHT? |
| 16:23:54 | 2 | **A.**  I WAS 19, TOO. |
| 16:23:57 | 3 | **Q.**  WAS HE YOUR HIGH SCHOOL SWEETHEART? |
| 16:23:59 | 4 | **A.**  YES. |
| 16:24:00 | 5 | **Q.**  NOW, LET ME SHOW YOU A DOCUMENT, MRS. ARMSTRONG, THAT IS |
| 16:24:05 | 6 | -- IT'S JX-1425-0002, AND ASK IF YOU COULD IDENTIFY THAT |
| 16:24:14 | 7 | DOCUMENT. |
| 16:24:54 | 8 | WHILE WE'RE WAITING, I'LL KEEP -- DO YOU HAVE ANY |
| 16:24:56 | 9 | CHILDREN WITH KENNY? |
| 16:24:57 | 10 | **A.**  YES.  WE HAVE THREE CHILDREN. |
| 16:24:59 | 11 | **Q.**  HOW OLD ARE THEY NOW? |
| 16:25:01 | 12 | **A.**  NOW?  THEY'RE 29, 26, AND 21. |
| 16:25:06 | 13 | **Q.**  ALL RIGHT.  DID THEY LIVE WITH YOU AT THE TIME OF KATRINA? |
| 16:25:09 | 14 | **A.**  YES, THEY DID. |
| 16:25:10 | 15 | **Q.**  WERE ALL THREE OF THEM LIVING WITH YOU AT THE TIME? |
| 16:25:14 | 16 | **A.**  THE OLD- -- MY SON, THE OLDEST ONE, WAS LIVING WITH US. |
| 16:25:17 | 17 | THE MIDDLE ONE WAS STARTING HER SECOND YEAR AT LSU, AND THE |
| 16:25:21 | 18 | YOUNGEST ONE WAS A FRESHMAN IN HIGH SCHOOL. |
| 16:25:23 | 19 | **Q.**  WHAT ARE THEIR NAMES? |
| 16:25:24 | 20 | **A.**  MY SON IS KENNETH.  MY DAUGHTER -- MY MIDDLE DAUGHTER IS |
| 16:25:29 | 21 | KATIE, AND MY YOUNGEST DAUGHTER IS RENEE. |
| 16:25:32 | 22 | **Q.**  DOES YOUR HUSBAND WORK? |
| 16:25:33 | 23 | **A.**  YES, HE DOES. |
| 16:25:34 | 24 | **Q.**  YOU ALL WERE WORKING PARENTS RAISING THREE CHILDREN? |
| 16:25:38 | 25 | **A.**  YES. |

JEANINE ARMSTRONG - DIRECT


16:25:38    1   **Q.**   WHERE DID YOU ALL LIVE WHEN YOU FIRST GOT MARRIED?

16:25:41    2   **A.**   WE LIVED IN A DOUBLE IN BUCCANEER VILLA NORTH.

16:25:51    3          **MR. ANDRY:**  IS THERE A REFRESH BUTTON THAT NEEDS TO

16:25:53    4   BE PRESSED?  WE'RE NOT ABLE TO GET A PICTURE.  I'M SORRY,

16:25:56    5   JUDGE.

16:26:13    6          **THE COURT:**  WAIT A MINUTE.  WE'VE GOT IT, BECAUSE

16:26:16    7   SOMETHING MIGHT HAVE BEEN PUSHED.  THAT SHOULD DO IT.

16:26:24    8          **MR. ANDRY:**  THE DOCUMENT IS -- IT'S 1425-02, I

16:26:33    9   BELIEVE, WITH 02 BEING THE PAGE.

16:26:36   10   **BY MR. ANDRY:**

16:26:37   11   **Q.**   IN LOOKING AT THAT DOCUMENT.  DO YOU RECOGNIZE THAT

16:26:39   12   DOCUMENT, MRS. ARMSTRONG?

16:26:43   13   **A.**   I'VE SEEN IT BEFORE, YES.

16:26:45   14   **Q.**   AND IS THAT DOCUMENT THE FORM 95 THAT YOU AUTHORIZED ME TO

16:26:49   15   FILE FOR YOU TO PUT THE CORPS ON NOTICE THAT YOU HAD A CLAIM

16:26:57   16   AGAINST THEM?

16:26:59   17   **A.**   YES.

16:26:59   18   **Q.**   IN LOOKING AT THE NEXT PAGE, WHICH IS 03 -- EXCUSE ME --

16:27:02   19   WHICH IS JX-1425-01, HAVE YOU EVER SEEN THAT DOCUMENT?

16:27:17   20   **A.**   I DON'T REMEMBER SEEING IT.

16:27:20   21   **Q.**   IT'S THE ACKNOWLEDGMENT LETTER FROM THE CORPS OF ENGINEERS

16:27:21   22   IN RECEIPT OF YOUR FORM 95.

16:27:25   23   **A.**   OKAY.

16:27:31   24   **Q.**   AND GOING BACK, YOU LIVED IN BUCCANEER VILLA NORTH WITH

16:27:35   25   MR. ARMSTRONG ONCE YOU ALL GOT MARRIED?

JEANINE ARMSTRONG - DIRECT

| | | |
|---|---|---|
| 16:27:36 | 1 | **A.**  YES. |
| 16:27:37 | 2 | **Q.**  WHAT YEAR WOULD THAT HAVE BEEN? |
| 16:27:39 | 3 | **A.**  1982. |
| 16:27:39 | 4 | **Q.**  AND DID YOU MOVE SINCE THEN? |
| 16:27:41 | 5 | **A.**  YES.  WE BOUGHT A HOUSE IN BUCCANEER VILLA. |
| 16:27:44 | 6 | **Q.**  HOW FAR -- |
| 16:27:44 | 7 | **A.**  WE LIVED IN A DOUBLE WHEN WE FIRST GOT MARRIED, AND THEN |
| 16:27:47 | 8 | WE BOUGHT A HOUSE. |
| 16:27:48 | 9 | **Q.**  HOW FAR IS THE HOUSE FROM WHERE YOU LIVED PRIOR? |
| 16:27:51 | 10 | **A.**  ABOUT A MILE. |
| 16:27:52 | 11 | **Q.**  HAVE YOU MOVED SINCE THAT TIME? |
| 16:27:54 | 12 | **A.**  NOT BEFORE THE HURRICANE, NO. |
| 16:27:56 | 13 | **Q.**  WHEN DID YOU MOVE -- DID YOU LIVE AT 4016 HAMLET IN |
| 16:28:01 | 14 | ST. BERNARD? |
| 16:28:01 | 15 | **A.**  YES. |
| 16:28:02 | 16 | **Q.**  WHEN DID YOU MOVE TO 4016 HAMLET? |
| 16:28:05 | 17 | **A.**  WHEN? |
| 16:28:05 | 18 | **Q.**  YES. |
| 16:28:06 | 19 | **A.**  1985. |
| 16:28:08 | 20 | **Q.**  AND DID YOU HAVE A 30-YEAR MORTGAGE? |
| 16:28:09 | 21 | **A.**  YES. |
| 16:28:09 | 22 | **Q.**  SO, IN 2005, YOU WOULD HAVE ALMOST PAID THAT OFF; IS THAT |
| 16:28:11 | 23 | RIGHT? |
| 16:28:11 | 24 | **A.**  WELL, WE HAD A 30-YEAR REFINANCE TO A 15.  SO . . . |
| 16:28:15 | 25 | **Q.**  WELL, HOW MUCH LEFT -- SINCE I DID THE MATH BAD, HOW MUCH |

JEANINE ARMSTRONG - DIRECT

16:28:18   1   LEFT DID YOU HAVE ON YOUR MORTGAGE AT THE TIME OF KATRINA,

16:28:20   2   WHICH WOULD HAVE BEEN IN AUGUST OF 2005?

16:28:23   3   **A.**   I OWED, LIKE, 18,000.  SO IT WAS, LIKE, A YEAR AND A HALF,

16:28:29   4   TWO YEARS TO PAY ON THE HOUSE.

16:28:31   5   **Q.**   SO YOU HAD ABOUT 18 TO 24 MONTHS OF PAYMENTS LEFT?

16:28:34   6   **A.**   YES.

16:28:34   7   **Q.**   AND THEN YOU WOULD HAVE OWNED THE HOUSE?

16:28:36   8   **A.**   YES.

16:28:36   9   **Q.**   AND WAS THAT HOUSE DOWN THE STREET THERE WHERE YOU GREW

16:28:39   10  UP?

16:28:40   11  **A.**   IT WAS FOUR DOORS AWAY FROM WHERE I GREW UP.

16:28:44   12  **Q.**   OKAY.

16:28:44   13          **MR. ANDRY:**  AND CALLING UP, IF YOU WOULD -- IT'S

16:28:48   14  JX-1446-01.  COULD YOU ROTATE IT?

16:28:57   15  **BY MR. ANDRY:**

16:28:58   16  **Q.**   IS THAT A PICTURE OF THE HOUSE THAT YOU LIVED IN --

16:29:01   17  **A.**   YES, IT IS.

16:29:01   18  **Q.**   -- PRIOR TO KATRINA?

16:29:04   19  **A.**   YES, IT IS.

16:29:05   20  **Q.**   FROM WHAT VANTAGE POINT IS THAT PICTURE TAKEN?

16:29:10   21  **A.**   WELL, IF IT WAS STANDING IN FRONT OF THE HOUSE, IT WAS

16:29:14   22  FROM THE RIGHT-HAND SIDE.

16:29:17   23  **Q.**   SO YOUR HOUSE WOULD BE THE HOUSE TO THE LEFT?

16:29:19   24  **A.**   THAT'S CORRECT.

16:29:19   25  **Q.**   AND THAT TREE IS IN YOUR FRONT YARD?

520

JEANINE ARMSTRONG – DIRECT

16:29:21   1   **A.**   YES.   THE BIG OAK TREE WAS IN MY FRONT YARD.

16:29:26   2   **Q.**   AND THEN IN LOOKING AT O2, IF YOU WOULD.

16:29:31   3              **MR. ANDRY:**   WOULD YOU ROTATE THAT?

16:29:38   4   BY MR. ANDRY:

16:29:39   5   **Q.**   IS THAT THE BACK OF YOUR HOUSE?

16:29:40   6   **A.**   NO, THAT'S THE FRONT.

16:29:41   7   **Q.**   OKAY.   THAT'S THE OTHER SIDE?

16:29:43   8   **A.**   YES.

16:29:44   9   **Q.**   AND THAT STRUCTURE TO THE RIGHT.   IT LOOKS LIKE A BROWN

16:29:47  10   BRICK STRUCTURE.   IS THAT A TWO-STORY HOUSE NEXT TO YOURS?

16:29:51  11   **A.**   YES.

16:29:53  12   **Q.**   OKAY.

16:29:53  13              **MR. ANDRY:**   AND THEN GO TO NUMBER 3, PLEASE.

16:30:00  14                    AND COULD YOU ROTATE THAT?

16:30:01  15   BY MR. ANDRY:

16:30:01  16   **Q.**   THAT WOULD BE THE BACKYARD?

16:30:03  17   **A.**   YES.   THAT'S THE BACKYARD.

16:30:04  18   **Q.**   APPROXIMATELY, HOW BIG WAS THAT HOUSE THAT YOU ALL LIVED

16:30:07  19   IN?

16:30:09  20   **A.**   17-, 1800 SQUARE FEET.

16:30:11  21   **Q.**   WAS THAT THE HOME THAT YOU ALL PLANNED TO RETIRE IN?

16:30:14  22   **A.**   YES.

16:30:14  23   **Q.**   AND TO SPEND YOUR GOLDEN YEARS IN?

16:30:16  24   **A.**   YES.

16:30:18  25   **Q.**   MRS. ARMSTRONG, WOULD IT BE FAIR TO SAY THAT YOU LIVED

JEANINE ARMSTRONG - DIRECT


16:30:21    1  YOUR ENTIRE LIFE IN ST. BERNARD PARISH?

16:30:23    2  **A.**   YES.

16:30:24    3  **Q.**   WOULD IT BE FAIR TO SAY THAT YOU INTENDED TO SPEND THE

16:30:27    4  REMAINDER OF YOUR LIFE IN ST. BERNARD PARISH?

16:30:29    5  **A.**   YES.  WE HAD NO INTENTIONS OF LEAVING.

16:30:32    6  **Q.**   WOULD YOU HAVE EVER MOVED OUT OF ST. BERNARD PARISH?

16:30:34    7  **A.**   NO.

16:30:35    8  **Q.**   DID YOU HOPE THAT YOUR KIDS WOULD COME BACK AND LIVE WITH

16:30:37    9  YOU IN ST. BERNARD PARISH?

16:30:38   10  **A.**   YES.

16:30:38   11  **Q.**   IS THAT A PHENOMENA THAT REGULARLY OCCURS IN ST. BERNARD

16:30:44   12  PARISH?

16:30:44   13  **A.**   YES.  TWO OF MY CHILDREN HAVE BOUGHT HOUSES DOWN IN

16:30:48   14  ST. BERNARD, SO WE'RE ALL DOWN THERE.

16:30:53   15  **Q.**   AND AT THE TIME OF KATRINA, WHAT DID YOUR HOUSE LOOK LIKE?

16:31:01   16  **A.**   IT WAS A NICE LITTLE HOUSE.

16:31:03   17  **Q.**   I MEAN, AS FAR AS FURNISHINGS, DID YOU HAVE IT WELL

16:31:05   18  FURNISHED?

16:31:06   19  **A.**   YES.

16:31:07   20  **Q.**   DID YOU-ALL SPEND A BUNCH OF TIME THERE WITH FAMILY AND

16:31:10   21  FRIENDS IN THE NEIGHBORHOOD?

16:31:11   22  **A.**   YES.  WE ALWAYS HAD ALL KINDS OF STUFF GOING ON IN THE

16:31:15   23  NEIGHBORHOOD.  EVERYONE KNEW EACH OTHER.  I KNEW MOST OF THE

16:31:19   24  PEOPLE BECAUSE I GREW UP ON THE STREET.  A LOT OF PEOPLE I'VE

16:31:22   25  KNOWN SINCE I WAS A LITTLE BITTY KID, THEY ALL STILL LIVED

JEANINE ARMSTRONG - DIRECT


| 16:31:26 | 1 | THERE. |

16:31:30   2   **Q.**   DID YOUR PARENTS STILL LIVE DOWN THE STREET?

16:31:33   3   **A.**   YES.  THEY LIVED FOUR HOUSES AWAY.

16:31:35   4   **Q.**   HOW CLOSE WAS KENNY'S PARENTS?

16:31:37   5   **A.**   HIS MOM LIVED ABOUT TWO MILES AWAY.

16:31:45   6   **Q.**   WHEN DID YOU ALL FIRST NOTICE THAT HURRICANE KATRINA WAS

16:31:46   7   IN THE GULF OF MEXICO?

16:31:48   8   **A.**   ON THE FRIDAY BEFORE.

16:31:50   9   **Q.**   AND WHAT DID YOU ALL DECIDE TO DO?

16:31:54   10   **A.**   WELL, THAT FRIDAY, OUR YOUNGEST DAUGHTER, SHE WAS A

16:31:58   11   FRESHMAN IN HIGH SCHOOL, MADE THE CHEERLEADERS, SO WE WERE

16:32:03   12   GOING TO HER FIRST FOOTBALL GAME THAT FRIDAY.  WE HADN'T HAD

16:32:08   13   ANY PLANS ON LEAVING THAT FRIDAY.

16:32:10   14        AND THEN WHEN WE WATCHED THE NEWS THAT NIGHT WHEN WE

16:32:13   15   GOT HOME FROM THE FOOTBALL GAME, WE WERE ALL OF A SUDDEN IN THE

16:32:16   16   CONE OF THE HURRICANE.

16:32:17   17   **Q.**   AND DID YOU ALL DECIDE -- DID YOU EVACUATE FOR THE STORM?

16:32:21   18   **A.**   YES.  WE EVACUATED ON SUNDAY.

16:32:23   19   **Q.**   WHERE DID YOU ALL GO?

16:32:24   20   **A.**   WE WENT TO BATON ROUGE.

16:32:26   21   **Q.**   AND COULD YOU DESCRIBE FOR US WHAT THE EVACUATION PROCESS

16:32:29   22   TO BATON ROUGE WAS LIKE?

16:32:30   23   **A.**   WE GOT A CALL FROM OUR FRIEND AT ABOUT 2:00 IN THE MORNING

16:32:34   24   SAYING IT WAS NOW A CATEGORY 5, BECAUSE WE WERE PLANNING ON

16:32:38   25   LEAVING EARLY IN THE MORNING, NOT IN THE MIDDLE OF THE NIGHT.

JEANINE ARMSTRONG - DIRECT


16:32:41  1  BUT THE HURRICANE JUST EXPLODED OVERNIGHT.

16:32:44  2          SO WE STARTED PACKING UP ALL OF OUR STUFF, PUTTING IT

16:32:48  3  IN THE CARS AND WE HEADED TO BATON ROUGE AT ABOUT 4:00 IN THE

16:32:51  4  MORNING.

16:32:52  5  **Q.**   WHAT TIME DID YOU GET TO BATON ROUGE?

16:32:53  6  **A.**   ABOUT 6:00 SOMETHING.  BETWEEN 6:00 AND 7:00.

16:32:56  7  **Q.**   AND THAT WOULD HAVE BEEN ON AUGUST 28TH OR AUGUST 29TH?

16:33:00  8  **A.**   THAT WAS THE 28TH.  THAT WAS SUNDAY.

16:33:03  9  **Q.**   AND YOU -- SO YOU WEATHERED THE STORM IN BATON ROUGE?

16:33:07  10  **A.**   YES.

16:33:08  11  **Q.**   AFTER THE STORM, WHEN DID YOU FIRST DISCOVER ANY NEWS

16:33:11  12  ABOUT YOUR PROPERTY?

16:33:14  13  **A.**   WE WERE IN A HOTEL, AND SOMEONE ON THE COMPUTER HAD A

16:33:20  14  PICTURE AND WE COULD SEE THE ST. BERNARD CULTURAL CENTER.

16:33:26  15          AND OUR SUBDIVISION WAS ACTUALLY, LIKE, BEHIND THE

16:33:29  16  CULTURAL CENTER, AND YOU COULD SEE THE WATER HAS HALFWAY UP ON

16:33:34  17  THAT BUILDING.

16:33:34  18  **Q.**   LET ME SHOW YOU A DEMONSTRATIVE, JUST TO KIND OF RELATE

16:33:37  19  YOUR PROPERTY TO THE OTHER S.

16:33:39  20          **MR. ANDRY:**  AND COULD YOU PULL UP 4671, PLEASE?

16:33:41  21  **BY MR. ANDRY:**

16:33:42  22  **Q.**   AND ON THIS IT'S A PICTURE OF ST. BERNARD PARISH.  AND ON

16:33:49  23  THIS THERE'S A PIN THAT SAYS "ARMSTRONG."  IS THAT THE

16:33:52  24  APPROXIMATE LOCATION OF WHERE YOUR HOUSE WAS ON HAMLET PLACE?

16:33:58  25  **A.**   YES.

524

JEANINE ARMSTRONG - DIRECT


16:33:59   1   **Q.**   AND SO THE CULTURAL CENTER IS THERE, THAT GREEN STRIPE

16:34:03   2   KIND OF IN THE MIDDLE?  THE CULTURAL CENTER IS, LIKE, RIGHT IN

16:34:05   3   THAT AREA?

16:34:06   4   **A.**   YES.

16:34:06   5   **Q.**   IT'S THAT LIGHT BUILDING -- THAT'S THE GOVERNMENTAL

16:34:08   6   COMPLEX, AND THEN RIGHT NEXT TO THAT IS ACTUALLY THE CULTURAL

16:34:12   7   CENTER?

16:34:13   8   **A.**   YES.

16:34:13   9   **Q.**   IS THAT ABOUT RIGHT?  SO YOU WERE BEHIND THAT AREA OFF TO

16:34:15  10   THE NORTHEAST, IT LOOKS LIKE; IS THAT RIGHT?

16:34:20  11   **A.**   YES.

16:34:20  12   **Q.**   OKAY.  AND HOW DID THAT AFFECT YOU AT THE TIME?

16:34:25  13   **A.**   HOW DID WHAT AFFECT ME?

16:34:28  14   **Q.**   HOW DID IT AFFECT YOU WHEN YOU SAW A PICTURE OF THE

16:34:31  15   CULTURAL CENTER AND YOU STARTED TO DISCOVER THAT YOUR HOME HAD

16:34:36  16   BEEN AFFECTED BY THE STORM?

16:34:38  17   **A.**   IT WAS -- WHEN YOU SEEN THE CULTURAL CENTER WITH THE WATER

16:34:41  18   YOU WERE STILL LIKE, "WELL, WHAT ABOUT MY HOUSE?  HOW IS MY

16:34:45  19   HOUSE?"  BECAUSE YOU JUST COULDN'T FATHOM THAT THERE WAS REALLY

16:34:48  20   THAT MUCH WATER COVERING EVERYTHING.

16:34:52  21   **Q.**   AND WHEN DID YOU FIRST DISCOVER THE DAMAGE TO YOUR HOUSE?

16:34:59  22   **A.**   WHEN WE WENT BACK TO IT.

16:35:01  23   **Q.**   WHEN DID YOU GO BACK?  TELL US ABOUT THAT.  WHEN DID

16:35:05  24   YOU -- WERE YOU ABLE TO JUST GO BACK?

16:35:07  25   **A.**   NO, NO.

JEANINE ARMSTRONG - DIRECT


16:35:08  1  **Q.**  WHEN WERE YOU ABLE TO GO BACK?

16:35:10  2  **A.**  WE WEREN'T ABLE TO GET TO OUR HOUSE UNTIL OCTOBER, THE

16:35:14  3  MIDDLE OF OCTOBER OF '05.

16:35:16  4  **Q.**  WHY WAS THAT?

16:35:17  5  **A.**  THERE WAS STILL SOME WATER.  THERE WAS STILL STANDING

16:35:20  6  WATER.  AND THEN A SECOND HURRICANE CAME THROUGH, AND WE JUST

16:35:22  7  NEVER COULD GET BACK.  THERE WAS STILL STANDING WATER.

16:35:24  8  **Q.**  AND SO WHEN YOU WENT BACK, WHAT WAS THAT LIKE?

16:35:28  9  **A.**  YOU CAN'T EVEN DESCRIBE IT.

16:35:31  10  **Q.**  LIKE, HOW DID YOU GO IN?

16:35:33  11  **A.**  WELL, WE HAD BOOTS.  YOU HAD TO WEAR LONG SLEEVES, LONG

16:35:39  12  PANTS.  AND IT WAS LIKE AT LEAST TWO FOOT OF MUD, THAT WHEN YOU

16:35:44  13  WERE WALKING, YOUR FOOT WOULD ALMOST GET PULLED OUT OF THE BOOT

16:35:47  14  BECAUSE IT WOULD SINK INTO THE MUD.  AND IT WAS JUST MUD AND

16:35:50  15  WATER AT LEAST TWO-FEET DEEP IN THE HOUSE.

16:35:52  16  **MR. ANDRY:**  AND COULD YOU CALL UP 1447-01, THE

16:35:57  17  PICTURE IN THE UPPER LEFT CORNER?

16:36:00  18  EXCUSE ME.  JX-1447-01, THE PICTURE IN THE UPPER

16:36:11  19  LEFT CORNER.

16:36:12  20  **BY MR. ANDRY:**

16:36:12  21  **Q.**  WHEN YOU FIRST DROVE UP TO YOUR HOUSE, IS THAT WHAT IT

16:36:14  22  LOOKED LIKE?

16:36:15  23  **A.**  YES.  THAT'S WHAT IT LOOKED LIKE.

16:36:18  24  **MR. ANDRY:**  AND COULD YOU CONTRAST THAT, IF YOU

16:36:20  25  WOULD, TO 1446-01?

JEANINE ARMSTRONG - DIRECT


16:36:27   1   **BY MR. ANDRY:**

16:36:35   2   **Q.**   SO ON THE RIGHT, THAT'S WHAT IT LOOKED LIKE -- THAT'S WHAT

16:36:38   3   IT LOOKED LIKE WHEN YOU GOT BACK?

16:36:40   4   **A.**   YES.

16:36:40   5            **MR. ANDRY:**   AND THEN ON THE RIGHT, IF YOU WOULD,

16:36:41   6   CARL, THE OTHER ONE.

16:36:44   7   **BY MR. ANDRY:**

16:36:44   8   **Q.**   THAT'S WHAT IT LOOKED LIKE WHEN YOU LEFT?

16:36:45   9   **A.**   YES.

16:36:46   10  **Q.**   WHEN YOU GOT BACK AND SAW THAT, WHAT DID -- THAT IMAGE,

16:36:48   11  WHAT DID THAT MAKE YOU FEEL?

16:36:51   12  **A.**   IT WAS DEVASTATING.

16:36:53   13  **Q.**   WHO WAS WITH YOU AT THE TIME?

16:36:56   14  **A.**   IT WAS KENNY AND I, MY TWO OLDER CHILDREN, KENNY AND

16:37:00   15  KATIE, AND MY BROTHER-IN-LAW.

16:37:07   16  **Q.**   AND DID YOU FIND -- WHEN YOU LEFT -- I'M SORRY.  I DIDN'T

16:37:10   17  ASK YOU THAT QUESTION.

16:37:11   18            WHEN YOU EVACUATED, WHAT DID YOU ALL TAKE WITH YOU?

16:37:15   19  **A.**   WELL, WE TOOK A DUFFLE BAG OF CLOTHES WITH, LIKE, THREE

16:37:19   20  CHANGES OF CLOTHES.  THAT WAS IT.  WE TOOK SOME PICTURES THAT

16:37:24   21  WE HAD -- THAT I HAD IN A LITTLE BOX THAT I JUST GRABBED.  WE

16:37:29   22  TOOK -- THAT WAS ABOUT IT.

16:37:33   23  **Q.**   AND DID YOU HAVE, LIKE, WEDDING PICTURES AND BABY PICTURES

16:37:38   24  AND OTHER MOMENTOS IN YOUR HOUSE, ALONG WITH SOFAS, CHAIRS, AND

16:37:42   25  EVERYTHING ELSE THAT YOU LEFT, JEWELRY, TVS?  YOU ALL LEFT ALL

JEANINE ARMSTRONG - DIRECT


16:37:45   1   OF THAT BEHIND?

16:37:47   2   **A.**   RIGHT, RIGHT.  IN FACT, I LEFT MY ENGAGEMENT RING.

16:37:51   3   **Q.**   WHEN YOU LOOK AT THE PICTURE ON THE RIGHT AND YOU HAVE

16:37:54   4   GRASS IN YOUR FRONT YARD, AND THEN WHEN YOU LOOK AT THE PICTURE

16:37:57   5   ON THE LEFT --

16:37:57   6        **MR. ANDRY:**  THE ONE IN THE UPPER RIGHT CORNER,

16:38:00   7   PLEASE.

16:38:01   8   **BY MR. ANDRY:**

16:38:01   9   **Q.**   -- WAS THAT MUD IN ADDITION TO THE GRASS THAT WAS IN YOUR

16:38:07  10   FRONT YARD?

16:38:08  11   **A.**   YES.

16:38:08  12   **Q.**   AND THAT'S THE MUD THAT YOU HAD TO WALK THROUGH TO GET

16:38:10  13   INTO YOUR HOUSE?

16:38:11  14   **A.**   YES.  YOU CAN SEE IT STILL LOOKS WET ON THE SIDE OF THE

16:38:14  15   HOUSE.

16:38:15  16   **Q.**   WAS THERE MUD INSIDE OF YOUR HOUSE?

16:38:17  17   **A.**   OH, YES.  OH, YES.

16:38:19  18   **Q.**   AND DID -- WHAT DID IT SMELL LIKE?

16:38:21  19   **A.**   IT WAS A STENCH THAT ANYBODY WHO EVER WENT THROUGH IT,

16:38:27  20   IT'S THE KATRINA SMELL.  YOU CAN STILL SMELL IT ON STUFF.

16:38:31  21   **Q.**   WERE YOU ABLE TO SALVAGE -- AND LET ME ASK YOU:  WHEN --

16:38:39  22   THERE IS --

16:38:41  23        **MR. ANDRY:**  WELL, PICTURE 1448-01.

16:38:44  24   **BY MR. ANDRY:**

16:38:50  25   **Q.**   IS THAT WHAT YOUR KITCHEN LOOKED LIKE WHEN YOU GOT BACK?

JEANINE ARMSTRONG - DIRECT

16:38:53   1   **A.**   THAT'S IT.

16:38:54   2   **Q.**   WERE YOU ABLE TO SALVAGE ANYTHING IN YOUR HOUSE?

16:38:58   3   **A.**   NO.  WE WENT THROUGH AND -- LIKE WE GOT THERE, AND IT WAS

16:39:03   4   OVERWHELMING.  AND I CAN REMEMBER MY DAUGHTER SAYING -- I WAS

16:39:08   5   CRYING ON THE FRONT PORCH.  AND MY DAUGHTER WAS, LIKE, "MOMMA,

16:39:13   6   WHAT DID YOU THINK YOU WERE GOING TO FIND?"  AND I REALLY

16:39:16   7   THOUGHT I COULD FIND SOME LITTLE TRINKET TO TAKE OUT OF THERE.

16:39:20   8   YOU COULDN'T FIND ANYTHING.

16:39:22   9   **Q.**   AND HOW LONG -- IN THE PHOTOGRAPHS -- I'M SORRY ABOUT

16:39:25  10   THAT.  BUT THE PHOTOGRAPHS, PARTICULARLY THE ONES 1447-01,

16:39:30  11   APPEAR TO HAVE A DATE ON THEM OF NOVEMBER 4TH OF 2005.  IS THAT

16:39:35  12   THE FIRST DAY THAT YOU ALL WENT BACK TO THE HOUSE?

16:39:38  13   **A.**   NO, WE WENT BACK IN OCTOBER.

16:39:40  14   **Q.**   AND SO IT STILL LOOKED LIKE THIS WHEN YOU WENT BACK A

16:39:42  15   MONTH LATER?

16:39:43  16   **A.**   YES, YES.

16:39:45  17   **Q.**   DID YOU ALL TRY TO REBUILD THAT HOUSE?

16:39:47  18   **A.**   NO, WE DIDN'T.

16:39:49  19   **Q.**   DID YOU TRY TO GO BACK AND SALVAGE DIFFERENT THINGS?

16:39:51  20   **A.**   YES.  WE WENT BACK A FEW TIMES AND JUST -- JUST TRYING TO

16:39:56  21   DIG OUT ANYTHING THAT YOU COULD POSSIBLY FIND THAT YOU COULD

16:40:00  22   SALVAGE.

16:40:01  23   **Q.**   DID YOU HAVE HEALTH ISSUES AFTER THE STORM?

16:40:03  24   **A.**   YES.

16:40:04  25   **Q.**   AND COULD YOU BRIEFLY DESCRIBE THOSE?

JEANINE ARMSTRONG - DIRECT


| 16:40:06 | 1 | **A.**   IN NOVEMBER, AFTER THE HURRICANE, I WAS DIAGNOSED WITH A |
| 16:40:13 | 2 | BRAIN TUMOR. |
| 16:40:15 | 3 | **Q.**   COULD YOU TELL US ABOUT THAT, BRIEFLY? |
| 16:40:17 | 4 | **A.**   IT WAS A ROUGH TIME.  LOSING EVERYTHING THAT YOU EVER |
| 16:40:20 | 5 | OWNED AND THEN FINDING OUT THAT NOW YOU HAVE A HEALTH ISSUE ON |
| 16:40:25 | 6 | TOP OF EVERYTHING ELSE THAT YOU HAD TO GO THROUGH, AND ALL |
| 16:40:27 | 7 | THESE DIFFERENT HOOPS YOU HAD TO JUMP THROUGH, IT WAS A |
| 16:40:30 | 8 | HORRIBLE TIME. |
| 16:40:32 | 9 | **Q.**   AND WAS THAT -- WHERE DID YOU ALL LIVE POST-KATRINA? |
| 16:40:38 | 10 | WHERE WERE YOU LIVING -- |
| 16:40:38 | 11 | **A.**   WE -- |
| 16:40:38 | 12 | **Q.**   I'M SORRY.  WHERE WERE YOU LIVING AT THE TIME THAT YOU GOT |
| 16:40:41 | 13 | DIAGNOSED WITH A BRAIN TUMOR? |
| 16:40:42 | 14 | **A.**   WE WERE STAYING AT MY SISTER'S HOUSE IN PRAIRIEVILLE, |
| 16:40:47 | 15 | WHICH IS RIGHT OUTSIDE OF BATON ROUGE. |
| 16:40:48 | 16 | **Q.**   AND SO YOU WEREN'T ABLE TO COME BACK TO NEW ORLEANS? |
| 16:40:51 | 17 | **A.**   NO. |
| 16:40:51 | 18 | **Q.**   NOW, DID YOU TRY TO COME BACK TO NEW ORLEANS? |
| 16:40:53 | 19 | **A.**   YES. |
| 16:40:53 | 20 | **Q.**   AND TELL THE COURT WHAT YOU DID TO TRY TO COME BACK TO |
| 16:40:56 | 21 | NEW ORLEANS. |
| 16:40:57 | 22 | **A.**   THERE WAS NOWHERE TO STAY.  ST. BERNARD, THERE WASN'T ONE |
| 16:41:01 | 23 | STRUCTURE IN ST. BERNARD THAT WASN'T HIT BY THE HURRICANE. |
| 16:41:03 | 24 | THERE WASN'T ONE BUILDING THAT WASN'T FLOODED.  THERE WASN'T |
| 16:41:06 | 25 | ONE CAR THAT -- SCHOOL BUSES, POLICE CARS, EVERYTHING. |

JEANINE ARMSTRONG - DIRECT


16:41:11  1  EVERYTHING WAS DEVASTATED.  THERE WAS NOTHING LEFT.

16:41:17  2  **Q.**   DID YOU HAVE ANY -- WHAT IS -- WHAT HAPPENED TO THE BRAIN

16:41:20  3  TUMOR?  ARE YOU OKAY NOW?

16:41:22  4  **A.**   I HAVE -- I TOOK RADIATION TREATMENT AND I HAVE TO GET AN

16:41:25  5  MRI EVERY SIX MONTHS TO A YEAR TO CHECK ON THE STATUS OF IT.

16:41:30  6  **Q.**   OKAY.  DID YOU HAVE ANY OTHER HEALTH ISSUES AFTER THE

16:41:32  7  STORM?

16:41:32  8  **A.**   YES, I DID.  I HAD -- I WOUND UP GETTING A FUNGAL

16:41:38  9  PNEUMONIA, AND THEN THE FUNGAL INFECTION SETTLED INTO VERTEBRA

16:41:44  10  IN MY SPINE.

16:41:45  11  **Q.**   OKAY.  AND DID YOU HAVE TO HAVE SURGERY TO REMOVE THOSE

16:41:48  12  VERTEBRA?

16:41:49  13  **A.**   YES.  I WAS IN THE HOSPITAL FOR OVER FIVE WEEKS, TWO MAJOR

16:41:53  14  SURGERIES.  THEY HAD TO REMOVE TWO OF THE VERTEBRA THAT WERE

16:41:58  15  INFECTED.  I HAVE TWO RODS IN MY BACK AND A CAGE WHERE THE TWO

16:42:03  16  VERTEBRA USED TO BE.

16:42:06  17  **Q.**   AND WHAT IS -- AT THE TIME, I TAKE IT MR. ARMSTRONG WAS

16:42:09  18  THE ONLY FAMILY INCOME?

16:42:11  19  **A.**   YES, YES.

16:42:13  20  **Q.**   AND WHERE WERE YOU LIVING AT THAT TIME?

16:42:21  21  **A.**   WE WERE LIVING IN COVINGTON.

16:42:23  22  **Q.**   OKAY.  AND SO YOU HAD MOVED FROM PRAIRIEVILLE TO

16:42:26  23  COVINGTON?

16:42:27  24  **A.**   YES.

16:42:27  25  **Q.**   DID -- WAS THAT A FUNGAL PNEUMONIA?  IS THAT A -- BEING A

JEANINE ARMSTRONG - DIRECT


16:42:32  1  NURSE, IS A FUNGAL PNEUMONIA A RARE TYPE OF PNEUMONIA?

16:42:36  2  A.   YES, IT IS.

16:42:36  3  Q.   AND DID YOU LEARN ANYTHING ABOUT WHERE THAT MIGHT HAVE

16:42:39  4  COME FROM?

16:42:40  5  A.   WELL, THE TYPE OF BUG THAT I HAD IN MY SPINE IS FOUND IN

16:42:45  6  FUNGUS AND SPORES, AND THAT'S WHAT IT WAS.

16:43:02  7  Q.   MRS. ARMSTRONG --

16:43:03  8       **MR. ANDRY:**  COULD YOU PULL UP JX-1439-01, THE TOP

16:43:10  9  PICTURE?

16:43:10  10 **BY MR. ANDRY:**

16:43:12  11 Q.   DO YOU KNOW WHAT THAT'S A PICTURE OF?

16:43:14  12 A.   THAT IS THE NEIGHBOR -- THAT IS OF THE NEIGHBOR'S HOUSE,

16:43:17  13 AND THAT WAS OUR SLAB WHERE THE HOUSE WAS.

16:43:20  14 Q.   OKAY.

16:43:21  15      **MR. ANDRY:**  AND COULD YOU SHOW US THE BOTTOM PICTURE?

16:43:25  16 **BY MR. ANDRY:**

16:43:28  17 Q.   IS THAT THE PICTURE OF YOUR NEIGHBORHOOD POST-KATRINA?

16:43:32  18 A.   YES, IT IS.

16:43:32  19 Q.   AND IS THAT HOUSE STILL THERE, THAT TWO-STORY HOUSE?

16:43:35  20 A.   NO.  IT'S TORN DOWN.

16:43:36  21 Q.   AND GOING BACK, FOR THE COURT'S REFERENCE, IN LOOKING AT

16:43:43  22 1446-01, THAT TWO-STORY STRUCTURE IS THE WHITE SHUTTER NEXT TO

16:43:52  23 THE OAK TREE, IS THAT CORRECT, TO THE RIGHT OF THE OAK TREE?

16:43:57  24 A.   THAT'S CORRECT.

16:43:58  25 Q.   AND THEN IF YOU GO TO 1447-01 THAT WOULD BE THE STRUCTURE

JEANINE ARMSTRONG - DIRECT


16:44:04   1   IN THE UPPER RIGHT-HAND CORNER?

16:44:06   2   **A.**   THAT'S CORRECT.

16:44:07   3   **Q.**   OKAY.  AND THE OTHER PHOTOGRAPH, THE BOTTOM RIGHT-HAND

16:44:12   4   CORNER, THAT IS A PICTURE OF YOUR HOUSE; IS THAT CORRECT?

16:44:14   5   **A.**   YES.

16:44:15   6   **Q.**   OKAY.  BUT GOING BACK TO THE LAST ONE I HAD SHOWED YOU,

16:44:20   7   WHICH IS 1439-01, ARE THERE ANY OTHER HOUSES IN THAT

16:44:34   8   NEIGHBORHOOD NOW?

16:44:35   9   **A.**   NO.  THE WHOLE BLOCK IS GONE.  THERE'S NOT ONE HOUSE

16:44:40   10   STANDING.

16:44:41   11   **Q.**   IS THAT THE NEIGHBORHOOD THAT YOU LEFT IN AUGUST 2005?

16:44:46   12   **A.**   IT'S THE SAME NEIGHBORHOOD AS IN LONGITUDE AND LATITUDE,

16:44:51   13   BUT THAT'S NOT THE SAME NEIGHBORHOOD WE LEFT.

16:44:53   14   **Q.**   AND WHY IS THAT?

16:44:54   15   **A.**   THE NEIGHBORHOOD WE LIVED IN WAS A THRIVING COMMUNITY.  IT

16:44:59   16   WAS BIG SENSE OF COMMUNITY.  THERE WAS KIDS PLAYING, KIDS

16:45:05   17   RIDING THEIR BIKES.  MY KIDS WOULD RIDE THEIR BIKES AND LEAVE

16:45:10   18   THEM ON THE FRONT PORCH.  IT WAS A GREAT PLACE TO RAISE A

16:45:13   19   FAMILY.

16:45:13   20   **Q.**   AND IS THAT WHAT EXISTS THERE NOW.

16:45:17   21   **A.**   NO, NOT AT ALL.

16:45:20   22   **Q.**   AND SO NOTWITHSTANDING THE FINANCIAL SIDE, BUT CONSIDERING

16:45:25   23   YOUR HEALTH SITUATION AND WHAT'S THERE NOW, WOULD YOU HAVE

16:45:29   24   CHOSE TO MOVE BACK THERE IF YOU COULD HAVE?

16:45:32   25   **A.**   THAT WASN'T EVEN A CHOICE TO GO BACK THERE.

JEANNINE ARMSTRONG - CROSS

16:45:35    1            **MR. ANDRY:**  THANK YOU.  I HAVE NO FURTHER QUESTIONS.

16:45:38    2            **THE COURT:**  I ASSUME THE FINANCIAL ASPECTS OF THIS

16:45:39    3   WILL BE BROUGHT OUT BY MR. ARMSTRONG?

16:45:44    4            **MR. ANDRY:**  YES, YOUR HONOR.  IN AN EFFORT NOT TO

16:45:45    5   DUPLICATE THINGS, SINCE HE HANDLED MOST OF THAT --

16:45:49    6            **THE COURT:**  ALL RIGHT.

16:45:49    7            **MR. ANDRY:**  -- HE'LL TESTIFY TO ALL OF THAT.

16:45:51    8            **THE COURT:**  ALL RIGHT.

16:45:52    9                        **CROSS-EXAMINATION**

16:45:53   10   BY MR. TREEBY:

16:46:17   11   **Q.**   MS. ARMSTRONG, I THINK WE'VE MET BEFORE.  BILL TREEBY.

16:46:22   12            AND I -- LET ME SAY THIS:  I SYMPATHIZE VERY MUCH

16:46:26   13   WITH YOUR SITUATION, AND I DON'T WANT TO ASK ANY QUESTIONS THAT

16:46:30   14   WOULD DISTRESS YOU.  I JUST HAVE TO ASK A FEW QUESTIONS ABOUT

16:46:34   15   THINGS THAT YOU TESTIFIED TO SO THAT WE CAN MAKE A FULL RECORD,

16:46:38   16   SO THAT WE CAN KNOW IN CASE ANYBODY IS RESPONSIBLE FOR YOUR

16:46:41   17   DAMAGE HOW MUCH YOUR DAMAGE WAS.

16:46:45   18            AND SO -- BUT I WANT TO -- I LIVED THROUGH KATRINA,

16:46:50   19   TOO, AND I HAVE A LOT OF FRIENDS THAT LIVED THROUGH KATRINA AND

16:46:53   20   LOST EVERYTHING AS WELL.  SO I AM SYMPATHIC WITH YOUR POSITION.

16:46:59   21            LIBERTY MUTUAL INSURANCE COMPANY WAS YOUR HOMEOWNERS

16:47:01   22   INSURER PRIOR TO KATRINA FOR THE HAMLET PROPERTY; IS THAT

16:47:05   23   RIGHT?

16:47:05   24   **A.**   YES.

16:47:07   25   **Q.**   AND YOU DID PROVIDE RECEIPTS AND RECORDS TO LIBERTY MUTUAL

JEANNINE ARMSTRONG - CROSS


16:47:11   1   WHEN YOU MADE A CLAIM?

16:47:13   2           **MR. ANDRY:**  YOUR HONOR, THIS -- OBJECTION.  IT'S

16:47:16   3   BEYOND THE SCOPE OF THE DIRECT.  WE SPECIFICALLY STAYED AWAY

16:47:18   4   FROM THE FINANCIALS, TO BE ADDRESSED BY HER HUSBAND.

16:47:22   5                   WE COULD HAVE DONE IT AND BEEN REDUNDANT.

16:47:26   6           **THE COURT:**  I'M JUST WONDERING.  YOU ARE GOING TO

16:47:27   7   BRING MR. ARMSTRONG?

16:47:29   8           **MR. ANDRY:**  YES, YOUR HONOR.

16:47:30   9           **THE COURT:**  CAN THIS BE BROUGHT OUT THROUGH

16:47:33  10   MR. ARMSTRONG, MR. TREEBY, BECAUSE --

16:47:34  11           **MR. TREEBY:**  IT CAN, YOUR HONOR, BUT I JUST NEED TO

16:47:38  12   MAKE A RECORD.  BUT WE --

16:47:38  13           **THE COURT:**  WELL, YOU'LL BE ABLE TO MAKE THAT SAME

16:47:40  14   RECORD WITH MR. ARMSTRONG, I TAKE IT.

16:47:42  15           **MR. TREEBY:**  I THINK I CAN, BUT I'M NOT SURE.  SO

16:47:44  16   IF -- LET'S TRY THAT.  AND I HAVE A FEW QUESTIONS, AND THAT

16:47:47  17   WILL ELIMINATE A LOT OF QUESTIONS.

16:47:50  18                   I HAVE NO ASSURANCE, BUT I DO NOW HAVE COUNSEL'S

16:47:53  19   ASSURANCE THEY ARE GOING TO BRING MR. ARMSTRONG TO THE STAND.

16:47:55  20           **THE COURT:**  I'M GOING TO LET YOU -- IF HE'S NOT, I'M

16:47:57  21   GOING TO LET YOU STIPULATE THAT'S WHAT YOU'RE GOING TO DO INTO

16:48:00  22   THE RECORD.  BUT I'M ASSUMING YOU ARE.

16:48:04  23           **MR. ANDRY:**  YOU WILL HAVE MY ASSURANCE.  THE REASON

16:48:04  24   WHY I DID IT WAS FOR THE COURT'S BENEFIT AND THE DEFENDANTS'

16:48:06  25   BENEFIT SO WE DIDN'T COVER THE SAME STUFF TWICE, PARTICULARLY

16:48:11   1   WHEN SHE'S NOT MOST KNOWLEDGEABLE OF TWO TO TESTIFY AS TO THOSE

16:48:14   2   THINGS.

16:48:15   3           **THE COURT:**  I UNDERSTAND.  SO THE FINANCIAL

16:48:17   4   INFORMATION, YOU WILL PRESENT MR. ARMSTRONG SO MR. TREEBY WILL

16:48:19   5   HAVE AN OPPORTUNITY TO MAKE --

16:48:22   6           **MR. ANDRY:**  YES, SIR.

16:48:22   7           **THE COURT:**  ALL RIGHT.  WHY DON'T WE TRY THAT, AND I

16:48:24   8   PROMISE YOU, YOU WILL BE PROTECTED IN THE EVENT THAT DOES

16:48:28   9   OCCUR.

16:48:28  10           **MR. TREEBY:**  WITH THAT AGREEMENT, I HAVE NO

16:48:29  11   QUESTIONS.

16:48:30  12           **THE COURT:**  THANK YOU, SIR.

16:48:32  13           **MR. MCCONNON:**  THE UNITED STATES HAS NO QUESTIONS,

16:48:36  14   YOUR HONOR.

16:48:36  15           **MR. TREEBY:**  BUT I WOULD LIKE TO MOVE THESE EXHIBITS

16:48:38  16   IN.

16:48:39  17           **THE COURT:**  OH, YES.  PLEASE DO.

16:48:40  18           **MR. ANDRY:**  WHAT ARE THEY?

16:48:40  19           **MR. TREEBY:**  WELL, MOST OF THEM -- THEY'RE ALL JOINT

16:48:42  20   EXHIBITS.  THEY'RE ALL ON THE JOINT EXHIBIT LIST.  NONE OF

16:48:45  21   THEM, EXCEPT POSSIBLY DX-1777 HAVE BEEN -- NONE OF THEM HAVE

16:48:51  22   BEEN OBJECTED TO EXCEPT PERHAPS DX-1777.

16:48:55  23           **MR. ANDRY:**  I DON'T HAVE ANY REDIRECT, YOUR HONOR,

16:48:56  24   AND I THINK WE CAN --

16:48:59  25           **THE COURT:**  WHY DON'T YOU TAKE A FEW MINUTES, AND I

16:49:01   1   WON'T ADJOURN.

16:49:02   2                   MA'AM, YOU CAN STEP DOWN, AND BE CAREFUL WHEN

16:49:05   3   YOU STEP DOWN.

16:49:06   4                   AND WHILE YOU'RE DOING THAT, THE COURT WOULD

16:49:09   5   LIKE TO MAKE -- I GUESS TO RECTIFY, THE COURT MADE AN INCORRECT

16:49:15   6   STATEMENT ON THE RECORD, AND I APOLOGIZE FOR IT.

16:49:17   7                   DURING THE TESTIMONY OF MR. WASHINGTON, I WENT

16:49:22   8   BACK, AND THERE IS NO CLEAR EVIDENCE IN THE RECORD THAT HE

16:49:29   9   WAS -- ABOUT WHAT HIS PRINCIPAL RESIDENCE WAS.  IN FACT, IT

16:49:32   10  MIGHT BE JUST TO THE CONTRARY OF WHAT I SAID.  SO I APOLOGIZE

16:49:34   11  FOR THAT.  THE STIPULATION IS RECTIFIED, IF THAT'S CLEAR.

16:49:39   12                  IN OTHER WORDS, THE STIPULATION THAT HE WAS

16:49:40   13  NOT -- THAT, IN FACT, THE PROPERTY THAT -- FOR WHICH HE IS

16:49:46   14  SEEKING RECOMPENSE HE WAS NOT LIVING IN AS HIS PRINCIPAL

16:49:51   15  RESIDENCE AT THE TIME OF THE HURRICANE.

16:49:53   16                  **MR. TREEBY:**  THANK YOU, YOUR HONOR.

16:49:53   17                  **THE COURT:**  BUT I JUST WANTED TO RECTIFY THAT I HAD

16:49:56   18  MADE AN INCORRECT STATEMENT.  WHEN I DO, I LIKE TO BE OPEN

16:50:03   19  ABOUT IT.

16:50:04   20                  **MR. BRUNO:**  THANK YOU, JUDGE.  IF YOU'LL GIVE US A

16:50:06   21  FEW SECONDS, WE'LL TRY TO RECTIFY THE EXHIBITS.

16:50:10   22                  **THE COURT:**  SURE.

16:50:10   23                  **MR. BRUNO:**  I DON'T EVEN KNOW IF WE NEED YOU,

16:50:12   24  YOUR HONOR.  IT'S -- YOU KNOW, WE --

16:50:14   25                  **THE COURT:**  WELL, YOU MAY NEED ME FOR THE

16:50:15   1   INTRODUCTION.  I'LL TAKE ABOUT A 10-MINUTE RECESS, COME BACK,

16:50:18   2   AND WE'LL GET THAT DONE.

16:50:19   3            **MR. BRUNO:**  YEAH.  WE'RE ON SCHEDULE.  WE'VE DONE --

16:50:20   4   WITH THE WITNESSES WE PROPOSED TO DO, SO WE'RE IN GOOD SHAPE.

16:50:23   5            **THE COURT:**  AND TOMORROW YOU HAVE?

16:50:25   6            **MR. BRUNO:**  WE HAVE MR. ROGERS.

16:50:31   7            **THE COURT:**  O'DOWD?

16:50:32   8            **MR. BRUNO:**  AND O'DOWD.  AND WE CAN ALWAYS PUT

16:50:34   9   ANOTHER PLAINTIFF ON IF WE NEED TO, SO WE'RE DOING WELL.

16:50:37  10            I JUST DON'T KNOW HOW LONG ROGERS IS GOING TO

16:50:41  11   BE.  AND I ANTICIPATE, JUDGING FROM THE DEFENDANTS TELLING ME,

16:50:42  12   THEY'RE GOING TO SPEND FOUR HOURS ON CROSS, THAT WE CAN

16:50:45  13   PROBABLY SPEND THE DAY ON HIM.

16:50:45  14            **THE COURT:**  IS PROFESSOR VRILING COMING HERE TO

16:50:47  15   TESTIFY?

16:50:48  16            **MR. BRUNO:**  NO.  NO, NO.  WE HAVE A STIPULATION --

16:50:49  17            **THE COURT:**  OKAY.

16:50:49  18            **MR. BRUNO:**  THAT IF HE WERE CALLED TO TESTIFY, HE

16:50:52  19   WOULD TESTIFY SUBSTANTIALLY IN ACCORDANCE WITH THE

16:51:00  20   HYDROGRAPHS --

16:51:01  21            **THE COURT:**  WAIT.

16:51:02  22            **MR. BRUNO:**  GIVE ME ONE MORE SECOND, YOUR HONOR.

16:51:02  23            IN RESPONSE TO YOUR QUESTION, WE HAVE A

16:51:05  24   STIPULATION, YOUR HONOR, THAT IF PROFESSOR VRILING WERE CALLED

16:51:10  25   TO TESTIFY, HE WOULD TESTIFY SUBSTANTIALLY IN ACCORD WITH THE

16:51:14  1  HYDROGRAPHS WHICH HE HAS MADE FOR EACH OF THESE DIFFERENT

16:51:18  2  PROPERTIES.

16:51:19  3           AND AS I INDICATED BEFORE, YOU ARE ABLE TO

16:51:23  4  ASCERTAIN THE WATER THAT CAME FROM NORTH BREACH ONLY, WATER

16:51:26  5  THAT CAME FROM SOUTH BREACH ONLY, WATER THAT CAME FROM BOTH

16:51:29  6  BREACHES ONLY, AND THE WATER THAT CAME FROM THE MRGO ONLY.

16:51:32  7           SO YOU CAN DO ANY PERMUTATION THAT YOUR HONOR

16:51:36  8  CHOOSES TO DO.  IT WILL TELL YOU WHEN THE WATER GOT THERE, IT

16:51:40  9  WILL TELL YOU HOW HIGH THE WATER GOT AT THAT LOCATION.

16:51:44  10          **THE COURT:**  ALL RIGHT.

16:51:45  11          **MR. BRUNO:**  THANK YOU, JUDGE.

16:51:47  12          **THE COURT:**  I'LL TAKE A TEN-MINUTE RECESS AND LET YOU

16:51:49  13  TRY TO GET THAT DONE.  OTHERWISE, THEN WE WILL ACTUALLY

16:51:52  14  ADJOURN.

16:51:53  15          THANK YOU.

16:51:56  16          **THE DEPUTY CLERK:**  ALL RISE.

16:51:56  17          (WHEREUPON, THE COURT TOOK A RECESS.)

         18          (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

         19                      *****

         20                   **CERTIFICATE**

         21          I, JODI SIMCOX, RMR, FCRR, OFFICIAL COURT REPORTER
             FOR THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF
         22  LOUISIANA, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND
             CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY AND
         23  UNDERSTANDING, FROM THE RECORD OF THE PROCEEDINGS IN THE
             ABOVE-ENTITLED AND NUMBERED MATTER.

         24
                              S/ JODI SIMCOX, RMR, FCRR
         25                   JODI SIMCOX, RMR, FCRR
                              OFFICIAL COURT REPORTER