UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: | * | |
| | * | SECTION"K" (2) |
| *Armstrong*, C.A. No. 10-866 | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MEMORANDUM BY THE ARMSTRONG PLAINTIFFS
TO THE MOTION OF THE UNITED STATES OF AMERICA
AND WASHINGTON GROUP INTERNATIONAL, INC. TO
COMPEL PLAINTIFFS TO PAY THEIR OWN COSTS

MAY IT PLEASE THE COURT:

I.      INTRODUCTION

Washington Group International, Inc. (WGI) and The United States of America (United States) seek to enforce contractual obligations owed by the Plaintiffs, not to them, but directly to Fugro Consultants, Inc. (Fugro), pursuant to an Agreement dated June 20, 2011.[1]  This Agreement contemplates that Fugro will provide site preparation and soils testing services as directed by the parties.  Several modifications were agreed to with corresponding cost increases.

---

[1]Four Party Agreement, R.Doc.21187-2.

Plaintiffs have timely paid $548,710.64 to Fugro pursuant to Fugro's invoicing. A disputed balance of $30,861.30 invoiced by and payable to Fugro remains unpaid. WGI and the United States now seek an order that the Plaintiffs pay Fugro the disputed balance. The motion lacks merit as this Court lacks jurisdiction, Movers lack standing to proceed, and the Agreement gives the Plaintiffs the unfettered right to withdraw without payment of labor costs associated with future pump testing costs.

## II.  THIS COURT LACKS JURISDICTION FOR SEVERAL INDEPENDENT REASONS

WGI and the United States fail to demonstrate how the order sought, compelling the Plaintiffs to pay Fugro, is in aid of the "….execution of the judgment of the Court dismissing Plaintiffs claims and ordering Plaintiffs to pay their own cost…" (*See* R. Doc. 14). The authorities cited by the Defendants at Page 2 of their Memorandum say what they say, though there is one inconvenient difference here—neither the Judgment nor the cases cited make reference to third party vendor costs, such as those alleged to be due to Fugro. The cited authorities make reference to issues other than non-taxable costs and do not establish a jurisdictional foothold. The referenced Judgment refers to taxable cost. To include vendor costs such as Fugro's would be to make the Court a debt collection agency. The directive to pay "costs" (read: taxable costs) does not create continuing jurisdiction post-dismissal.[2]

A second, independent basis for a finding that this Court lacks jurisdiction is imbedded in the Agreement of the parties. General Condition No. 12 provides that the if litigation becomes

---

[2] A District Court has statutory authority, and thus jurisdiction, to tax certain categories of litigation costs. Third party vendors such as Fugro are not included in this statutory scheme.

necessary, the parties consent to the jurisdiction of the United States District Court for the Southern District of Texas or in the State District Court of Harris County, Texas.[3]

> 12. <u>Governing Law and Dispute Resolution</u>...the parties shall resolve all disputes by litigation in the United States District Court for the Southern District of Texas, or if jurisdiction cannot be established therein, in the District Courts of the State of Texas, in Harris County, Texas, **and each party hereby consents** to the jurisdiction of such courts and waives any objection to venue.  (Emphasis Added)

Consenting to jurisdiction elsewhere divest this Court of any jurisdiction that might remain.

## III. NEITHER WGI NOR USACE HAS STANDING TO SEEK RELIEF UNDER TEXAS LAW. WGI AND THE UNITED STATES ARE SELF-APPOINTED AND THUS, UNAUTHORIZED SURROGATES OF FUGRO

WGI and the United States seek an order that the Plaintiffs pay Fugro the disputed balance.  Neither has standing to seek such an order.  Neither has paid the disputed balance and thereby become an assignee or subrogee of Fugro. Neither is an agent or successor in interest. Neither is a guarantor of Plaintiffs' debt.  Neither has a claim upon which relief can be granted. WGI and the United States are strangers to this dispute.  To the extent there is a dispute, it is only between Fugro and the Plaintiffs.  That WGI or USAC may be compelled at some future, unspecified time, to pay this disputed balance is speculative at best.  Movers fail to cite to any Texas law which creates standing to maintain such a speculative claim.  The parties have agreed that Texas law controls the rights and obligations of the parties.[4]   Interestingly, Fugro has taken no affirmative action to enforce this alleged debt.

---

[3]General Conditions for Technical Services, Paragraph 12 at page 14, R.Doc.21187-2**.**
[4]General Conditions for Technical Services, Paragraph 12 at page 14, R.Doc.21187-2.

## IV. PLAINTIFFS HAVE THE CONTRACTUAL RIGHT TO TERMINATE THIS AGREEMENT AT WILL

Pursuant to the directive of the District Court, the parties were instructed to retain the services of a third party vendor for the purpose of conducting soils analysis at and adjacent to the Industrial Canal in the area of the several levee failure sites. In satisfaction of this order, the parties entered into the agreement with Fugro. Initially, WGI and the United States insisted the cost be shared equally. The Plaintiffs protested and the Court ordered that a party would be charged for such testing which that party requested to occur or to which that party requested access. The agreement is, in effect, a "no pay, no play" agreement.

This cost sharing agreement provided that any each party could request a certain test activity be undertaken at it sole cost and expense. If parties choose to share in the test results contemporaneously with the testing, then the testing cost would be shared. Otherwise, disclosure, without sharing costs, would be made only as a part of the subsequently scheduled defense expert disclosure process, in other words, after the Plaintiffs expert disclosures. This insured that the Plaintiffs had no access to that for which it did not pay to use as part of its initial expert disclosure.

It is true that initially the Plaintiffs elected to participate in Defense Pump Tests and did pay in full their portion of the site preparation and other Fugro charges up to October 25, 2011. For good reasons, on October 25, 2011 the Plaintiffs notified all parties that they elected to withdraw and not participate in the actual testing scheduled to commence on the following day. Instead, for reasons not explained, Fugro ignored this unambiguous directive, did not stand down and demobilize as the Agreement required, but proceeded with the testing. As a result, the Plaintiffs have been charged $27,600.00 in associated labor cost necessary to complete the

testing in November of 2011. Plaintiffs consider any obligation to pay these labor test charges on and after October 26, 2011, to be a null and void obligation.

The Fugro Agreement granted the Plaintiffs the right to withdraw at any time and for any reason. The Plaintiffs were considered a party standing alone with independent and distinct rights and obligations, including withdrawal and termination.

> 1. <u>Parties to This Agreement</u> CLIENT as used herein is the entity who authorizes performance of services by Fugro Consultants, Inc. ("FUGRO") under the conditions stated herein. **If more than one entity comprises CLIENT then CLIENT shall refer to each of them…** (Emphasis supplied)

Upon Plaintiffs' withdrawal, Fugro was obligated to suspend the work and demobilize.

> 11. <u>Termination of Contract</u> CLIENT and FUGRO may terminate services at any time upon ten (10) days written notice. In the event of termination, CLIENT agrees to fully compensate FUGRO for services performed including reimbursable expenses to the termination date, as well as demobilization expenses. FUGRO will terminate services without waiving any claims or incurring any liability.[5]

Since the Plaintiffs is by definition a Client, the right to withdraw vests in them alone or in concert with others. This contractual right is to be exercised without limit, restraint, or dependent on cause. It is a unilateral right, exercised for cause or exercised without cause.[6] As of the 25th, the parties were at an impasse. The Plaintiffs believed that insufficient well development had taken place; WGI and the United States were of a differing opinion. Plaintiffs

---

[5] General Conditions for Technical Services, Paragraph 11 at page 14, R.Doc.21187-2.
[6] Movers have argued that Plaintiffs' decision to withdraw was ill founded and thus, its withdrawal a nullity. Paragraph 11 requires nothing more than intent to withdraw. No cause need be shown.

elected to terminate their participation and withdraw, allowing the parties to proceed at their election and cost.  That Plaintiffs offered an explanation of their reasons for termination, was a gratuitous gesture not in any way necessary to effectuate its right of termination. Confronted with the Plaintiffs' election to terminate this portion of the Agreement, Paragraph 11 required Fugro to cease work on behalf of the Plaintiffs and demobilize or proceed with only WGI and the United States participating.  WGI and the United States then had several choices, to give similar notice to terminate or proceed at its own risk and cost.  The Defendants obviously chose the latter.  Withdrawal on October 25, 2011 was at a point where WGI and the United States were ready to move to the next sequenced testing activity, and Plaintiffs costs readily determinable.  No harm came to any party by Plaintiffs' withdrawal.  The financial windfall of Plaintiffs' participation ceased and the Plaintiffs forfeited the right to participation and test result access until defense expert disclosure.  It was clear from the outset that WGI and the United States were committed to these pump test regardless of Plaintiffs' participation.

A further right to withdraw or terminate these jointly designated Pump Tests is found in the INHC-EBIA Pump Test Protocol, Sec.1.0 which provides that Defense Pump Test can only precede where there is "…agreement with Plaintiff's expert", assuming Plaintiffs are participating. (Exhibit 1, attached).  Absent Plaintiffs consent that the well was properly developed, this test could not proceed absent Plaintiffs withdrawal.  Plaintiffs' withdrawal advanced the interest the defendants by allowing the test to proceed in face of the approaching completion deadline.

Email traffic from WGI and the United States confirms Plaintiffs withdrawal and therefore, the Plaintiffs could not "test samples. (*See*: Exhibit 2).  If Plaintiffs remain bound as

now argued, this refusal would have been a breach of the Agreement further relieving Plaintiffs of any further duty to participate, assuming one existed in the first place.

WGI and the United States argue that these test result were furnished to the Plaintiffs as part of the overall project final report.[7] By having access to this date justifies the labor expenses incurred after October 25 levied against the Plaintiffs. First, the Plaintiffs did not ask that this data be included in the report since Plaintiff had no control over its contents. Moreover, Plaintiffs received this report only and after their original expert disclosures were delivered in January and February of 2012. Thus, it is not surprising that neither Dr. Bea nor Dr. Rogers referred to the test results in this first round of Plaintiffs expert disclosures; they did not have this final Report. By this point in time, even had the Plaintiffs never elected to participate, the defendants had the obligation to deliver all reliance materials which included this test data.

Under the totality of these circumstances, Fugro has no lawful or contractual right to insist that Plaintiffs' termination was contrary to the terms of the Agreement. Therefore, Fugro does not have any contractual right to insist that labor cost beyond October 25, 2011 are due and owing by the Plaintiffs. It follows then that neither WGI nor the United States can have greater rights vis-à-vie the Plaintiffs then does Fugro.[8]

## VI. EXCAVATION CHARGES

WGI and the United States ask that the Plaintiffs be ordered to pay $3,261.80 in excavation charges. From the outset, Plaintiffs believe that a backhoe should have been used to excavate the area. However, defense experts objected and other methods adopted. After several days, these excavation methods were found inadequate and a backhoe was brought on site to

---

[7] Geotechnical Data Report dated March, 2012, R. Doc. 21187-4
[8] Those rights being limited to seeking reimbursement of demobilization costs.

complete the task.  These charges were unnecessary and should be paid by the parties insisting on using the methods, WGI and the United States.

## VI.     CONCLUSION

For all of these reasons, Plaintiffs urge the Court to deny WGI and the United States the relief it seeks as an unauthorized surrogate of Fugro.

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com
**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*/s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, Louisiana 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

**MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**

Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 9th day of June, 2013.

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO