UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 |
| | * | |
| | * | SECTION "K" (2) |
| PERTAINS TO: | * | |
| *Armstrong*, C.A. No. 10-866 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

SUR-REPLY MEMORANDUM OPPOSING
THE MOTION OF UNITED STATES AND
WASHINGTON GROUP INTERNATIONAL, INC.
TO COMPEL PLAINTIFFS TO   PAY THEIR OWN COSTS

The Reply Memorandum (Rec. Doc. 21191) filed by the United States of America (United States) and Washington Group International, Inc. (WGI) to Compel Plaintiffs to Pay Their Own Costs attempts to assert rights to damages in the form of labor costs incurred after October 25 on behalf of Fugro which do not now exist under the guise of asserting rights on their own behalf. For lack of jurisdiction and standing, this Motion to Compel should be denied. Moreover, this Court cannot order a payment to Fugro which is not due and owing since Plaintiffs had the right to terminate the Agreement or whole in part, the Agreement providing for a series of tests that were separable, one for the other.

1

I.     **JURISDICTION**

The Court's March 17, 2011 Scheduling Order required only that the parties jointly hire a contractor to undertake a Joint Soils Investigation.  Whatever issues that may or could have arisen under this Order were extinguished by virtue of the Court's dismissal of the litigation. No case authority exists to support the argument that any Fugro issue survived dismissal. Furgo balances are not statutorily taxable costs. That the Court could have made Fugro charges a taxable cost, does not make them so today.

Boilerplate language such as "…each pay its own cost…" is not a declaration of continuing jurisdiction for the Court to act as a credit collection vehicle. All that this language accomplishes is to make clear that no party may recover taxable costs.

Since October 24/25 2011, WGI,  the United States, and Fugro were on notice that the Plaintiffs withdrew from further pump test participation and unambiguously rejected any further cost participation. WGI and the United States had immediate access to the Court and thereafter, over 18 months to place this issue before the Court at a time when this Court lack post-dismissal jurisdiction. Had WGI, the United States, and Fugro timely placed the issue before this Court, the Court may, in the absence of the Order of Dismissal and General Condition 12, have had jurisdiction over these issues. Instead, the Defendants and Fugro did nothing to enforce payment, allowing the litigation to be dismiss and allowing whatever rights WGI and the United States may have had **in this Court** to expire

WGI and the United States acknowledge that the Court ordered the parties "to meet and confer to agree upon a **boring and sampling contractor** and establish a **joint sampling and boring**

**protocol**…." (Rec. Doc. 20200 at 6, *emphasis in original*). Note the critical admission, the parties are free to "…agree to…" the contractor and the terms of the contract, not some terms, but all of the contract terms. The parties were free to agree on any competent contractor, agree to set their own testing protocols, agree on the scope of the work, agree on test sites, and agree to any other term or condition that was encompassed under the umbrella of the of the Joint Soils Investigation.

Thus, the parties were free to waive any jurisdiction vested in this District by stipulating that disputes involving payment, performance, etc. be resolved in a foreign jurisdiction, here Texas. The parties were free to agree that any party could terminate the Agreement. (See Paragraph 11 and 12 of the General Terms). This Agreement of the parties must be considered as **now** superseding the Court's jurisdiction now asserted by WGI and the United States. Any jurisdiction asserted in this Court **now** fails in light of the prior dismissal of the action and the stipulation of jurisdiction elsewhere by Fugro, WGI, and the United States. Simply put, this Court is without jurisdiction for a variety of reasons.

**II.    STANDING**

WGI and the United States argue both have an interest as they may be called upon to pay what Plaintiffs have yet to pay. Such a suggestion by the United States is false, since under the Fugro agreement, its share is capped at a certain percentage which it has paid. WGI offers no evidence that it has or will be called on to pay, it offers speculation and conjecture that at some time in the distant future such a demand may be made.

Movers assert, without citation to any authority that "…Fugro is involved in this proceeding because of the Court's scheduling order. The Court has jurisdiction to protect Fugro's interests,

which originated with the Court's own order." If true, why is Fugro the party in the back room and not before the Court?

Fugro is not subject to the Court's Order mandating a joint effort and at no time has it been subject to the jurisdiction of the District Court.  Thus, it has none of the rights under the Order asserted by Movers. The net result is that any effort by Fugro to collect this past due balance for testing labor cost post October 25 must be filed in Texas, where it will fail since any party has the right to terminate for any reason.  Fugro's claim will then be limited to a recovery of demobilization costs, which were not incurred as the testing proceeded.  Even in the absence of a contractual right to terminate, issues of Fugro failing to mitigate its damages by failing to demobilize would also be a bar to recovery in litigation between Furgro and the Plaintiffs.

Fugro is the real party in interest. If WGI and the United States are successful, Fugro will be unjustly enriched at Plaintiffs expense by the recovery of labor costs to which it is not entitled if it were before a Texas Court.

Plaintiffs do not contend that defendants should assume or pay the costs plaintiffs opted not to pay. Plaintiffs contend that the Plaintiffs have valid defenses against Fugro and thus, the Plaintiffs should not pay the sum now in dispute,( in addition to the approximately $550,000.00 previously and timely paid), WGI and the United States have the very same defenses to assert. This makes the current motion practice highly unusual and somewhat suspect. Why is WGI and the United States advocating for Fugro? Why is it not a bystander?

### III. PLAINTIFFS DID HAVE THE RIGHT TO TERMINATE SOME OR ALL OF TESTS FOR WHICH THEY INITIALLY AGREED TO PAY.

The Court will recall that the original view of WGI and the United States was that all costs for whatever testing any party requested be shared equally by the parties, a one-third share each. The Plaintiffs successfully argued and the Court then directed that costs for any testing be borne by the party requesting such testing and any other party requesting access to the test results. This effectively created a series of test specific sub-contracts, each subject to the agreed test protocols, the Letter Agreement, and the General Terms and Conditions. Since the Court ultimately recognized the rights of the Parties to participate in less than the universe of all testing proposed by all parties but only with a concurrent cost commitment as to the test in which a party elected to participate, n**o cost commitment equaled no participation as to a particular test.** Mystery solved. The nature of the effort, different tests for different parties, makes each separate test subject to the General Terms and Conditions.[1]

The pump test requested by the defendants is an example of one such sub-contract. The Plaintiffs could have elected to not participate in these defense efforts. But it did to a point where the well preparation was terminated prematurely, in their view, and testing would begin the next day. Interestingly, WGI and the United States offer only unproved arguments, opinions, and allegations that Plaintiffs decision on October 25 was not well founded and reasonable. That in hindsight Plaintiffs may have made the incorrect decision is not evidence that their October 25 decision was

---

[1] The suggestion is made that chaos would result if Plaintiffs were to withdraw completely or piecemeal. Upon withdraw, complete or partial, the Defendants had the right to proceed or abandon some or all of the ongoing testing. The Plaintiffs had no right to conduct independent testing without Court approval, a highly unlikely event. This assertion lacks any merit whatsoever.

unreasonable. Plaintiffs' decision was not without penalty, they forfeited concurrent tests results.

WGI and the United States from day one were committed to these pump test and the Plaintiffs withdrawal did not change that commitment. All that changed is that a windfall created by Plaintiffs initial participation ceased. If the Plaintiffs could elect not to participate then what harm or damage befell the Defendants when the Plaintiffs withdrew. Movers had the option to withdraw as well but it elected to continue at its sole cost or seek assistance from the Court. By continuing Fugro, WGI and the United States failed to mitigate their losses (test labor costs) and are barred from now seeking payment to Fugro.

The Exhibits appended to the Reply by WGI and the United States make clear that SOP's were subject to agreement of all parties not just the parties participating in a particular test. As discussed in this email traffic, the lack of full compliance with the protocols made the test results questionable in the view of the Plaintiffs. In the face of this good faith effort to comply with existing protocol, the Plaintiffs offered to seek additional time from the Court to complete this field work and further develop the well.  Movers rejected this offer and made clear its intention to proceed with testing. Having reached an impasse, Plaintiffs withdrew.

By not agreeing to further development and proceeding with testing, without the necessary approval of the Plaintiffs, WGI and the United States were in breach of the agreed upon SOPs. This breach gave Plaintiffs the right to withdraw. Arguing that WGI and the United States proceeded under similar circumstances and did not withdraw from Plaintiffs' pump testing is not instructive. WGI and the United States had the right to waive this breach and elected not to do so. Plaintiffs chose nort to waive this breach and withdrew

Plaintiffs elected to withdraw based on a good faith belief that the well had not been fully developed. The Defendants have not that on October 25, this withdrawal was unreasonable or in bad faith. That hindsight later demonstrated, in the view of the defendants, which the well was fully charged and valid results obtained may be measured. It may be a matter of just good luck based on a hunch or demonstrated that the defense decision was correct. Either does not make the Plaintiffs withdrawal unreasonable or lacking in merit months earlier. Hindsight is not the prism through which the October 25 decision is to be measured.

## IV.    CONCLUSION

This Motion requires dismissal as this Court lacks jurisdiction for the several, independent causes noted above. Dismissal is also appropriate WGI and the United States lack standing to bring this Motion

Any right to compel payment for post-withdrawal labor charges is barred by the failure of Fugro, WGI, and the United States to mitigate losses by ceasing to incur such further labor costs.

Lastly, Plaintiffs withdrawal from further defense pump testing on October 25 is lawful for several independent causes.  The terms of the Agreement permitted withdrawal from all of part of the multiple testing efforts contemplated by the Furgo Agreement.[2]

While Plaintiffs do not agree that cause was a condition of withdrawal, good faith cause existed to support Plaintiffs decision to withdraw  on October 25 , i.e., the well was not adequately charged. Further, the breach by WGI and the United States of it obligation to proceed with development and testing SOPs approved by all, was a breach of the Agreement entitling Plaintiffs to

---

[2] That Plaintiffs did not refer to the Paragraph 11, *verbo* Termination in October of 2011 does not extinguish their right to now assert that Plaintiffs withdrawal was consistent with and authorized by the General Terms and Conditions.

withdraw.

Respectfully submitted,

PLAINTIFFS' LIAISON COUNSEL

*s/ Joseph M. Bruno*
JOSEPH M. BRUNO (La. Bar No. 3604)
**BRUNO & BRUNO, L.L.P.**
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com
**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

*s/ James Parkerson Roy*
JAMES PARKERSON ROY (La. Bar No. 11511)
MR-GO PSLC Liaison Counsel
**Domengeaux Wright Roy & Edwards LLC**
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

for

**MRGO PLAINTIFFS SUBGROUP LITIGATION COMMITTEE**

Jonathan Andry (The Andry Law Group, LLC, New Orleans, LA)
Clay Mitchell (Levin, Papantonio, et al., Pensacola, FL)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above referenced pleading upon all known counsel for all parties by filing the foregoing with the Clerk of Court by using the CM/ECF system, this 16th day of June, 2013.

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO
