UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 |
| | * | |
| PERTAINS TO: MRGO | * | SECTION "K" (2) |
| | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

### JOINT MOTION TO SET STATUS CONFERENCE
### TO ADDRESS COST SHARING AND DATA SHARING ISSUES

**NOW INTO COURT** comes Washington Group International, Inc. ("WGII"),

the United States, and Plaintiffs who jointly move the Court for entry of an Order setting a status

conference in order to address issues pertaining to the sharing of costs and data associated with

*in situ* tests and laboratory testing of soil samples taken in and near the East Bank Industrial Area

("EBIA"). Pursuant to direction from the Court, this motion sets forth the nature of the dispute

and the parties' respective positions. As is set forth more fully below, WGII and the United

States contend that WGII, the United States, and Plaintiffs should each pay one-third of the costs

of this testing, whereas Plaintiffs maintain that they should only be required to pay for those tests

that their experts have designated.

### I.      FACTUAL BACKGROUND

On March 17, 2011, the Court ordered the parties, *inter alia*, to meet and confer to

select a boring and sampling contractor, and to establish a joint sampling and boring protocol

("the protocol"). The parties and their experts conferred and agreed upon the selection of Fugro

Consultants, Inc. ("Fugro") to perform all field tests and soils sampling as well as most of the

laboratory testing. The parties and their experts also established a protocol that includes sampling and testing required by each party, regardless of whether any other party requested that such work be performed.[1] For example, WGII requested that certain borings be taken from certain locations within the EBIA that Plaintiffs do not deem necessary to the work of their expert(s), while Plaintiffs sought borings from locations outside of the EBIA that were not requested by WGII or the United States.

Because the desired sampling and testing of the parties only overlap in minor ways, a dispute has arisen as to how the costs of the sampling and testing will be allocated between the parties. The current estimate is that the sampling and testing set forth in the protocol will cost approximately $1.4 million. Plaintiffs maintain that they should not be required to pay for borings and/or laboratory work that they do not believe is necessary to the work of their experts, but they do contend that all parties should be granted immediate access to the results of every test, regardless of whether or not that party paid for that individual test.

WGII and the United States contend that the costs of all the work set forth in the protocol should be divided equally between the parties, with each party to receive immediate access to the results of all testing. In the alternative, WGII and the United States maintain that each party be allowed to designate those tests for which it will pay an equal share of the costs (regardless of which party initially requested the test), and that immediate access to testing results be made available only to those parties that paid their share of the cost of the work. Access to non-paying parties would be made available later through the expert discovery process as required by the Federal Rules of Civil Procedure.

---

[1] The soils investigation work consists generally of soils boring to secure samples for laboratory testing, geo probes, drilling pumping wells, drilling observation wells, placement and observation of piezometers, performing seismic piezo-cone penetration tests, and performing field shear vane tests.

1059238v.1

The remaining issues that have not been agreed upon are cost sharing and contemporaneous data sharing.

## II.   POSITIONS OF THE PARTIES

### A.   Plaintiffs' Position

Plaintiffs assert that the work they have included in the protocol is relatively small relative to the work sought by WGII and/or the United States.  In reviewing the protocol, Plaintiffs and/or their experts estimate that the work they seek to have performed is approximately 16% of the total sampling and testing set forth in the protocol.

Plaintiffs assert that they should not have to pay for work that their experts have not requested, especially when the work that they have requested is relatively small when compared to the work of the other parties.  If other parties deem the additional work necessary to the work of their experts, then they, rather than Plaintiffs, should have to bear its full cost. Indeed, to contribute disproportionately to the cost of this effort would be contrary to the fiduciary obligations owed to the parties that the MRGO committee is charged to protect by incurring costs that will not benefit or advance their interest.

Plaintiffs dispute Defendants' suggestion that the contemporaneous sharing of test data should be conditioned up the equal division of test costs. The Court's March 17 Order envisions that any information gathered during the sampling program will be shared contemporaneously among the parties, and nowhere does the Order suggest that this should be tied to cost sharing.  Plaintiffs should be afforded the same timely access to the data that Defendants seek for themselves, as any other result would be unfair and prejudicial.  *Cf. California ex rel. Wheeler v. Southern Pac. Transp. Co.*, 1993 U.S. Dist. LEXIS 21128, 31-32 (E.D. Cal. 1993) ("common sense" supports the view that test data should be shared as it is created "so that all can assess its significance prior to trial.").

The question of data sharing isn't simply a matter of convenience. In order to properly assess and evaluate the work requested by Defendants, Plaintiffs' experts will require contemporaneous access to the field data as it is being collected. For example, Defendants have requested a number of soil borings that will collect continuous soil samples. These samples are "read" on-site by the contractor in order to document the soil characteristics of the sample. The ability to monitor the reading of continuous samples in real time is crucial to understanding the contractor's methodology for characterizing the samples. The provision of split samples will not cure the inability to "ground truth" observations made at the site when the samples are actually collected.

In summary, Plaintiffs do not believe that they should be required to subsidize work that was requested by Defendants. Any dispute over cost sharing, however, should not be used as a basis to prevent the parties from fully evaluating the progress of the field work, which can only be done by contemporaneous sharing of data.

**B.     WGII and the United States' Position**

While WGII and the United States acknowledge that the work requested and/or deemed "necessary" by the Plaintiffs may be lower than that requested by the other parties, they contend that Plaintiffs overstate this difference significantly and that, based upon their experts' review of the protocol, Plaintiffs have reduced the portion of the work they have requested no doubt expecting that they will have a free ride on similar work that WGII and the United States have designated as necessary to their opinions.

The Court's March 17 Order does not mention cost sharing. However, WGII and the United States understood the Order to contemplate a joint plan, and a joint plan has been agreed upon. It was the belief of WGII and the United States that a "joint" plan would

- 4 -

contemplate an equal one-third division of costs, and that differences in the parties' proportional shares do not outweigh the principles of equity at stake.

WGII and the United States assert that this stage of the litigation is not furthered by quibbles over whether any given party's designations regarding the work is one percentage or another,, or whether any given test is "necessary" or "relevant". (While WGII and the United States believe many of Plaintiffs' tests to be "unnecessary" and irrelevant, they will make those arguments in the *Daubert* and/or trial phase, not in the protocol.) The fairest and most reasonable option is for each party to pay one-third of the costs and for each party to receive immediate access to all test results as they become available.

In the alternative, no party should receive immediate access to the results from tests for which it is unwilling to pay. While Plaintiffs argue that work sought by WGII and/or the United States is not "necessary" to their case, they tellingly do not waive the right to immediate access of the results. Fugro advises that the results of some of the testing sought by WGII and the United States may become available as early as the week of June 13, 2011, and thus Plaintiffs would be free to incorporate any or all of these results into their experts' analysis even though they are unwilling to pay for these tests.

If Plaintiffs wish to disclaim a need for the data derived from tests designated by WGII and the United States, as they have, then Plaintiffs should be barred from receiving or using that data except to rebut the expert opinions offered by WGII and the United States. Plaintiffs should be required to make a choice: do they or do they not need the data from the tests designated by WGII and the United States, since they assert that they need it, but only for rebuttal or assaying the validity of those tests.

1059238v.1

As the Court is well aware, in a typical case, the Federal Rules of Civil Procedure generally require that each side pays for its own experts and any testing or work required for the preparation of their reports. To the extent that the opposing party believes that the expert's report does not accurately reflect the testing or that the expert's test results cannot be replicated, that party is free to pursue that line of inquiry at the appropriate time through expert discovery. Generally speaking, the immediate sharing of an expert's test results is as foreign to the traditional rules of litigation as the cost-sharing that Plaintiffs decry. The tests proposed by WGII and the United States are not "destructive" because the protocol would preserve extra material, in the possession of the agreed contractor, thus potentially providing each side with an equal share of any given boring for whatever future testing a party deems necessary. Thus, a test performed by WGII or the United States would not "destroy" Plaintiffs' sample. If Plaintiffs are contending that there should be no cost-sharing, then there should likewise be no immediate sharing of results. They can't have it both ways.

In summary, WGII and the United States believe that the most straightforward, equitable resolution to this dispute is for each party to pay one-third of the costs associated with the sampling and laboratory work to be performed by Fugro, with Fugro to make all test results available simultaneously to all parties in due course. In the alternative, WGII and the United States assert that each party should be allowed to designate those tests for which it will pay its equal share, and that each party should be permitted immediate access only to those tests for which it did pay its equal share.

1059238v.1

## III.   CONCLUSION

The parties request that the Court grant the parties an audience at a telephone status conference scheduled for June 9, 2011 at 2:30 p.m. in order that the parties may receive the Court's guidance regarding resolution of the aforementioned dispute.

Dated: June 8, 2011

Respectfully submitted,

/s/Joseph M. Bruno
Joseph M. Bruno, 3604
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

Plaintiffs' Liaison Counsel

and

/s/Robin D. Smith
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
Benjamin Franklin Station
P.O. Box 888
Washington, D.C. 20044
Telephone: (202) 616-4289
Facsimile: (202) 616-5200

Attorney for the United States

/s/Heather S. Lonian
William D. Treeby, 12901
James C. Gulotta, Jr., 6594
Heather S. Lonian, 29956
    Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

and

Adrian Wager-Zito
James E. Gauch
Debra S. Clayman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Attorneys for Washington Group
International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Joint Motion To Set Status Conference To Address Cost Sharing and Data Sharing Issues has been served upon all counsel of record through the Court's CM/ECF electronic filing system, this 8th day of June, 2011.

/s/Heather S. Lonian

- 7 -

1059238v.1