UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182"K"(2) |
| | § | |
| | § | JUDGE DUVAL |
| Pertains to:  MRGO | § | MAG. JUDGE WILKINSON |
| 07-3173, 07-0621, 07-4906, | § | |
| 07-4914, 07-5022, 07-5074, | § | |
| 07-5096, 07-5128, 07-5174 | § | |

_____

**DEFENDANT UNITED STATES' REPLY MEMORANDUM IN SUPPORT
OF UNITED STATES' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

In a series of rulings this Court and the Court of Appeals have determined that all claims against the United States in the consolidated litigation either are beyond this Court's jurisdiction or lack merit.  Plaintiffs in these nine cases disagree, asserting that their claims of flood damage from negligent dredging of the Mississippi River-Gulf Outlet are not foreclosed.  They would distinguish their cases from *Robinson,* the bellwether MRGO case, by ignoring the negligent-dredging claims asserted there and characterizing *Robinson* as nothing more than a challenge to the tardy installation of foreshore protection.  Based on this mischaracterization of *Robinson,* Plaintiffs argue that the Court of Appeals' ruling*,* which held that the *Robinson* claims of negligent maintenance must be dismissed for lack of subject-matter jurisdiction, does not require dismissal of the negligent-dredging claims asserted in these nine cases.  But as this Court well knows, the negligent-dredging claims in these

- 1 -

cases do not differ in any meaningful way from the *Robinson* claims. Threats to the hurricane-protection levee posed by the MRGO's expanding top width—and what the Army Corps of Engineers did or did not do to address the ongoing expansion—were the gravamen of the *Robinson* complaint. The attempt to distinguish *Robinson* fails.

The attempt to cabin the Court of Appeals ruling also fails. The Court of Appeals held that the Corps' decisions about how to remediate channel expansion are "susceptible to policy considerations" and therefore "shielded by the [discretionary function exception]." *In re Katrina Canal Breaches Consol. Lit.,* 696 F.3d 436, 451 (5th Cir. 2012, *cert. denied sub nom. Lattimore v. United States,* 133 S.Ct. 2855 (2013). One of those protected decisions was whether to maintain hurricane protection by installing foreshore protection or, alternatively, by "dredging and levee 'lifts.'" *Id.* The *Robinson* plaintiffs focused on the delay in implementing foreshore protection. Plaintiffs here would focus on the alternative remedy that *was* implemented (*i.e.,* dredging and levee lifts). But as Court of Appeals observed, "there is ample record evidence indicating the public-policy character of the Corps' various decisions contributing to the delay in armoring Reach 2." *In re Katrina Canal Breaches Consol. Lit.,* 696 F.3d 436, 451 (5th Cir. 2012). Plaintiffs' negligent-dredging claims are indeed foreclosed and must be dismissed for lack of subject-matter jurisdiction.

ARGUMENT

I. PLAINTIFFS' NEGLIGENT DREDGING CLAIMS ARE INDISTINGUISHABLE FROM THE DREDGING CLAIMS ASSERTED IN *ROBINSON*.

Plaintiffs assert that their "cases are different than the *Robinson* case" because the *Robinson* plaintiffs "argued that the Corps was negligent in not installing foreshore protection instead of constantly dredging the MRGO." Plt Opp. 2. "In contrast," Plaintiffs allege that the Corps violated federal and state regulations "while performing maintenance **dredging** activities on the MRGO." *Id.* (emphasis in original). But the distinction that Plaintiffs draw simply does not exist. The cases are legally indistinguishable, as demonstrated by Plaintiffs' own characterization of their cases: "Plaintiffs filed these suits to recover damages suffered . . . when various levee systems failed and flooding occurred as a result of environmental damage to protective wetlands caused by maritime dredging activities conducted by the government and its subcontractors in the Mississippi River Gulf Outlet ('MRGO')." Plt. Opp. 3.

This description fits *Robinson*. The Court long ago observed that application of the discretionary-function exception in *Robinson* required analysis of whether "the dredging of the MRGO [was] simple maintenance that was improperly done under standard engineering dictates . . . ." Doc. 2994, at 23. At trial the *Robinson* plaintiffs relied on experts who detailed the extent of wetlands lost or degraded as a result of MRGO dredging. *See generally Robinson* JX-0199 (Day-Shafer report); JX-0195 (FitzGerald report). The causal link between dredging and channel expansion was a fact set forth in the Court's post-trial opinion. *See* Doc. 19415, at 41 (finding that "maintenance

- 3 -

dredging causing bank slumping" was one of the reasons why "the width of the channel increas[ed] by more than 3 times its authorized width").

Inasmuch as wetlands loss from maintenance dredging was thoroughly litigated in *Robinson,* there is no need to give Plaintiffs "an opportunity to develop their cases and present evidence." Plt. Opp. 20.

II. THE COURT OF APPEALS' APPLICATION OF THE DFE IN *ROBINSON* INSULATES THE GOVERNMENT FROM LIABILITY FOR DAMAGES STEMMING FROM THE MRGO'S MAINTENANCE DREDGING.

Plaintiffs assert that the Fifth Circuit's application of the discretionary-function exception in *Robinson* does not apply to their claims because the court's holding is limited to "'decisions contributing to the delay in **armoring'** the channel," and does not apply to "improper **dredging**." Plt. Opp. 10 (emphasis in original). In support of this assertion, they point out that the *Robinson* plaintiffs accused the government of violating NEPA, while Plaintiffs here allege violations of dredging statutes. *Id.* Here again the supposed distinction is chimerical. Both this Court's opinion and the Fifth Circuit's show that the protected decisions occurred during the Corps' lengthy consideration of how to deal with the problems posed by the MRGO's ongoing bank erosion. *See* Doc. 19415, at 15-32, 103-21; *In re Katrina Canal Breaches Consol. Lit.,* 696 F.3d at 442-43, 449-51. That decision-making process considered not only the feasibility of installing foreshore protection but also "dredging and levee 'lifts'" as an alternative solution. *In re Katrina Canal Breaches Consol. Lit.,* 696 F.3d at 451. The Court of Appeals found "ample record evidence indicating the public-policy character" of these decisions. *Id.*

Plaintiffs argue that the first prong of the DFE test is not satisfied because the Corps' maintenance dredging violated statutes, rules, and regulations, an issue that supposedly "has not been addressed by any court." Plt. Opp. 10. This argument fails for two reasons. First, it is not true that no court has addressed the propriety of the MRGO dredging. The *Robinson* plaintiffs alleged that improper maintenance dredging "ensured" the "destruction of the surrounding wetlands." *Robinson* Complaint (Doc. 1-1) ¶¶ 53-54. This Court extensively addressed the *Robinson* plaintiffs' improper dredging claim in ruling on the parties' competing motions for summary judgment on the application of the discretionary-function exception. *See* Doc. 18212, at 15-63.

Here is the second reason why Plaintiffs' argument fails: it does not undercut the Fifth Circuit's opinion that the Corps' maintenance of the MRGO involved the exercise of policy-based discretion. Despite devoting a third of their brief to an exposition of the directives that supposedly prevent dismissal of their cases, they fail to adduce a single mandatory directive that prohibited the "box cutting" that Plaintiffs single out as an impermissible method of maintaining the MRGO. *See* Plt. Opp. 11-17. Instead they assemble a group of directives that required the Corps to exercise judgment and choice in pursuing policy goals. Tell-tale words and phrases—"to the maximum extent practicable," "should be discouraged," "guidance," "all reasonable efforts," "general information that must be considered, "using the best practical techniques"—leave no doubt that these statutes and regulations did not eliminate judgment and choice. *See id.* For example,

Plaintiffs rely on an Executive Order that aims "to avoid to the extent possible the long and short term adverse impacts associated with the destruction or modification of wetlands" and, in furtherance of that policy requires federal agencies to "consider factors relevant to a proposal's effect on the survival and quality of wetlands. Among these factors are: (a) public health, safety, and welfare . . . ." *Id.* at 13. Like the dredging-permit regulations cited by the *Anderson* plaintiffs, this Order left ample room for the exercise of policy-based discretion in deciding how to maintain the channel. *See In re Katrina Canal Breaches Consol. Lit.,* 696 F.3d at 452 (citing *Freeman v. United States,* 556 F.3d 326, 336–37 (5th Cir. 2009)).

## CONCLUSION

Because the Corps' maintenance dredging of the MRGO was a matter of judgment and choice, susceptible to policy analysis, and on the basis of the rulings by this Court and the Court of Appeals, the United States' motion to dismiss should be granted.

    Respectfully submitted,

    STUART F. DELERY
    Assistant Attorney General
    JAMES G. TOUHEY, JR.
    Director, Torts Branch
    /s/ Robin Doyle Smith
    ROBIN DOYLE SMITH
    Senior Trial Counsel
    Torts Branch, Civil Division
    U.S. Department of Justice
    Ben Franklin Station, P.O. Box 888
    Washington, D.C. 20044
    (202) 616-4400/616-5200 (fax)
    robin.doyle.smith@usdoj.gov
    Attorneys for the United States

CERTIFICATE OF SERVICE

I certify that the foregoing was served on all counsel of record by ECF.

/s/ Robin Doyle Smith